**Norman E. Siegel**
siegel@stuevesiegel.com

Phone: (816) 714-7112
Fax: (816) 714-7101

460 Nichols Road, Suite 200
Kansas City, Missouri 64112

June 21, 2018

**FILED VIA ECF**
The Honorable Vince Chhabria
United States District Court
Northern District of California
450 Golden Gate Avenue, Courtroom 4
San Francisco, California 94102

> Re:   **Application of Norman E. Siegel for Appointment as Lead Counsel**
>        **MDL 2843:** *In re Facebook, Inc., Consumer Privacy User Profile Litigation*

Dear Judge Chhabria:

Pursuant to this Court's Pretrial Order No. 1, I submit this application for appointment as lead counsel for plaintiffs in this MDL. Given my personal experience leading many of the major data breach and privacy cases litigated to date—including the *Equifax*, *Home Depot*, and *Target* MDLs—I am perhaps uniquely qualified to lead this litigation. I am currently co-lead counsel in only one other major active MDL, the *Equifax Data Breach* litigation pending in the Northern District of Georgia before the Honorable Thomas W. Thrash, Jr. As explained below, I and the talented team within my firm have the time and human and financial resources to manage this important dispute impacting tens of millions of Americans.

This letter addresses the criteria set forth in the Court's Pretrial Order No. 1 and the requirements of Rule 23(g)(1)(A), which dictate that in appointing interim class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

For the last five years, I have devoted much of my practice to leading the largest privacy and data breach cases in the country, including the pending *Equifax* MDL, the *Home Depot* MDL, and the *Target* MDL, and have worked alongside leadership in several other large data breach MDLs, including *Anthem* and *Office of Personnel Management*. As co-lead consumer counsel in *Equifax* and *Home Depot*, I was responsible for all aspects of the litigation, including working with other plaintiffs' counsel to consolidate the claims into a single consolidated complaint, negotiating with the defendants on various matters related to the efficient prosecution of the cases, drafting and presenting argument on key substantive issues, and managing the time and expenses expended prosecuting the claims.

In *Target*, *Home Depot*, and *Anthem*, my firm took the lead in creating a proprietary database and handling intake and vetting of thousands of plaintiffs from all 50 states for consideration as class representatives in the consolidated proceedings. My firm primarily briefed and argued against the motion to dismiss in *Home Depot*, and I was the lead negotiator of the settlement in that matter that the court called an "exceptional result" and "the most comprehensive settlement achieved in large-scale data breach litigation." As detailed in the attached résumé, I have also handled numerous other privacy-related cases, published articles on data breach litigation strategy, argued and won a reversal in an important Article III standing appeal in the Fourth Circuit (*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 17-1506 (4th Cir. June 12, 2018)), and was the founding co-chair of the American Association for Justice's Consumer Privacy and Data Breach litigation group.

My firm and I have the present and future ability to commit to what will be time-consuming litigation before this Court, and have ample available resources to prosecute this case in a timely manner. Other Stueve Siegel lawyers and staff working on this case, including partner Barrett Vahle, counsel Lindsay Todd Perkins, and associates Austin Moore and Emily Smith, have worked extensively in the privacy field, and are well-versed in all aspects of pleadings, motion practice, discovery, appeals, settlement, and claims administration. In addition to the firm's well-credentialed trial attorneys, Stueve Siegel employs a full-time information-technology specialist, and counsel Stephanie Walters, a dedicated e-discovery attorney who will be a critical resource in this litigation involving international data-aggregating, technology, and advertising companies.

Stueve Siegel also has a sophisticated, onsite, enterprise-level document management and e-discovery system, and has invested in technology and software comparable to or more advanced than that of most large national law firms. The firm regularly handles cases where millions of documents are exchanged and the firm has advanced millions of dollars in litigation costs in the prosecution of large class or multi-party cases, on a purely contingency basis. The firm has never sought funding or financing from a litigation funding company and will not do so here.

Although early settlements in data breach litigation are common and are to be encouraged, my firm is also uniquely qualified to take this case through trial. Stueve Siegel is one of the few firms in the country that have successfully tried to verdict multiple class actions against Fortune 100 companies and multinationals, having secured multi-million dollar jury verdicts for class plaintiffs three times in the past five years. Earlier this month I secured a $34.3 million jury verdict as lead trial counsel on behalf of State Farm policyholders in *Vogt v. State Farm Life Ins. Co.*, No. 16-cv-4170 (W.D. Mo. 2018). Other recent jury verdicts in class actions include *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591 (D. Kan. 2017) and *Garcia v. Tyson Foods, Inc.*, No. 06-cv-2198 (D. Kan.), *aff'd* 770 F.3d 1300 (10th Cir. 2014).

I am intimately familiar with the claims before this Court. Stueve Siegel filed in the Northern District on behalf of California resident Howard O'Kelly on March 28, 2018. Leading up to and since that time, we have investigated and compiled exhaustive factual information that will allow us to promptly draft and serve a comprehensive consolidated complaint. Moreover, my experience in other data breach and privacy litigation has provided access to the top technical experts in the field, which will put plaintiffs on the best possible footing from the start of the case.

Perhaps most importantly from the Court's perspective, I have a consistent track record of working cooperatively with others, including counsel on both sides of the aisle. As with most MDLs and consolidated proceedings, my leadership appointments have included other qualified firms from around the country. In every instance, Stueve Siegel has cooperated effectively with co-counsel. In over 17 years of litigating MDLs and class actions, my firm has never had to burden a court with a disagreement among co-counsel. The firm prizes its working relationships with co-counsel and takes pride in cooperatively litigating cases in the spirit of Fed. R. Civ. P. 1 and the guidelines set forth in the Manual for Complex Litigation. I am privileged to have had the opportunity to work collaboratively with most of the firms involved in this case.

Our ability to maintain reasonable fees and expenses has been and will be demonstrated through periodic reporting to the Court. Here, as in many recent cases, Stueve Siegel would propose regular *in camera* reporting of time so that there is complete and contemporaneous transparency regarding the amount of time dedicated to the case. Our lawyers and staff are thoroughly trained to limit work to necessary personnel and monitor and report as often as monthly on our own time and expenses and those of any number of other firms. As lead counsel I would personally review time and expense submissions and exercise billing judgment to delete duplicative, unassigned or inefficient work. I would establish rigorous best practices for time and expense records in a form to be submitted to the Court promptly upon its appointment of lead counsel.

Finally, I recognize that in addition to zealously representing the plaintiffs in this action, lead counsel must manage the litigation and provide a single point of contact to the Court to ensure the case is handled as diligently and efficiently as possible. In that respect, I respectfully offer the following references pursuant to Rule 23(g)(1)(B)—federal judges who have overseen multi-district litigation in which I and my firm have served as lead counsel: The Honorable Fernando J. Gaitan, Jr. (W.D. Mo.); The Honorable John W. Lungstrum (D. Kan.); and The Honorable Thomas W. Thrash, Jr. (N.D. Ga.). I look forward to addressing the Court and answering any questions regarding my application.

Respectfully submitted,

*[signature]*

Norman E. Siegel

## NORMAN E. SIEGEL

Norman E. Siegel is a founding partner of Stueve Siegel Hanson, an AV rated firm with 23 lawyers. The firm has attracted an outstanding roster of lawyers who were trained at major defense firms and have served at high levels of government and public service to represent consumers nationwide. Over the last 25 years, Norm has gained a reputation as a stand-out trial lawyer both locally and nationally. He has successfully tried to verdict a wide range of cases including obtaining multi-million dollar jury verdicts in both class actions and individual disputes. Norm has also been recognized for obtaining some of the largest and most creative settlements in the country, successfully securing relief for tens of millions of class members in a wide variety of cases over the course of his career. Recent accolades include:

- Super Lawyers (2006-2017) Top 50 Attorneys in Kansas City
- US News Tier 1 rankings in 3 categories including Class Action Litigation
- Lawdragon Magazine's 500 Leading Plaintiffs' Lawyers in America
- Benchmark Plaintiffs Litigation Star

Norm was born in Baltimore, Maryland. He received a degree in political science from Tufts University, and his J.D. from Washington University in St. Louis. Prior to starting Stueve Siegel in 2001, Norm served as a Missouri Assistant Attorney General and as a partner at what is now Dentons. Norm has recently served on the Boards of the Healthcare Foundation of Greater Kansas City, the Kansas City Bar Foundation, and the Negro Leagues Baseball Museum. He was the founding co-chair of the American Association for Justice's Consumer Privacy and Data Breach litigation group.

## SELECTED PRIVACY AND DATA BREACH LITIGATION EXPERIENCE

**In re: Equifax, Inc., Customer Data Security Breach Litig. (N.D. Ga.)** As plaintiffs' co-lead counsel and interim class counsel, Norm oversees all aspects of the pending consumer class MDL concerning the largest data breach in American history. Norm and his team recently filed a 575-page consolidated complaint synthesizing the factual allegations and claims from hundreds of cases filed nationwide.

**In re: Home Depot Customer Data Security Breach Litig. (N.D. Ga.)** Norm, along with Stueve Siegel partner Barrett Vahle, were named lead counsel and participated in all aspects of this case including leading negotiations resulting in a settlement that provided a multi-million dollar cash fund, identity theft protection, and injunctive relief to the settlement class. The case was resolved one year after appointment of lead counsel.

**In re: Target Corp. Customer Data Security Breach Litig. (D. Minn.)** Norm was named to the Plaintiffs' Steering Committee and represented dozens of named plaintiffs whose data was compromised in the Target data breach. Stueve Siegel drafted large portions of the brief that resulted in the denial of Target's motion to dismiss, and Norm worked with the leadership team to mediate the case to a successful resolution. The Eighth Circuit recently affirmed the class judgment in all respects.

**In re: Anthem Data Breach Privacy Litig. (N.D. Cal.)** Stueve Siegel represents a dozen named plaintiffs in this nationwide class action stemming from the largest healthcare data breach in history. Stueve Siegel participated in many aspects of the litigation and Norm worked with lead counsel in connection with the negotiations leading to a $115 million settlement.

**In re: U.S. Office of Personnel Management Data Security Breach Litig. (D.D.C.)** Stueve Siegel represents numerous named plaintiffs in this data breach that impacted over 21 million government employees and job applicants. The stolen records contain a wide range of data including social security numbers, findings from interviews conducted by background investigators, and approximately 5.6 million fingerprints. The case is currently on appeal.

**National Board of Examiners in Optometry Data Breach Litig. (D. Md.)** Stueve Siegel is prosecuting this action against NBEO—the testing organization for optometrists in the United States. NBEO did not concede that it was subject to a breach, resulting in dismissal for lack of standing. Norm argued the appeal to the Fourth Circuit, which reversed the dismissal in June 2018, announcing new guidelines to establish standing in data breach litigation.

**Academy of Art University Data Breach Litig. (Sup. Ct. Cal., San Francisco)** Stueve Siegel represents current and former employees of Academy of Art University who had their personal and W2 information, including wage data and social security numbers, compromised in a "phishing" scheme. The case was settled and is pending final approval.

**CareCentrix Data Breach Litig. (D. Kan.)** Stueve Siegel represented plaintiffs in this phishing case compromising the social security numbers of thousands of CareCentrix employees. The case was settled in December 2017 and included automatic cash payments to class members with fraudulent tax returns, believed to be the first data breach settlement to include this feature.

### SELECTED RECENT CLASS TRIALS AND SETTLEMENTS

- In June 2018, Norm secured a $34.3 million jury verdict as lead trial counsel in a class action on behalf of Missouri owners of State Farm life insurance policies related to improper charges assessed under the policies. **Vogt v. State Farm Life Ins. Co.**, No. 16-cv-4170 (W.D. Mo.).

- In 2017, Stueve Siegel partner Patrick Stueve obtained a $217.7 million jury trial verdict as lead trial counsel on behalf of a class of Kansas farmers against biotech giant Syngenta related to the sale of genetically modified corn seed, leading to a nationwide settlement of $1.51 billion. **In re: Syngenta AG MIR 162 Corn Litig.**, No. 14-md-2591 (D. Kan.).

- Stueve Siegel won a landmark $220 million settlement for all Missouri residents who purchased the prescription pain reliever Vioxx before it was removed from the market. **Plubell v. Merck & Co.**, No. 04CV235817-01 (Mo. Cir. Ct.).

- Norm was appointed lead counsel and secured a $44.5 million settlement to resolve a class action accusing U.S. Bank of facilitating the theft of customer funds at a now-bankrupt futures merchant. **In re: Peregrine Financial Group Customer Litig.**, No. 12-cv-5546 (N.D. Ill.).

- As co-lead counsel, Norm obtained $75 million in settlement relief for purchasers of Hyundai vehicles for Hyundai's overstatement of horsepower in vehicles. **Roy v. Hyundai Motor America**, No. 05-483 (C.D. Cal.).

- As co-lead counsel, Norm obtained a $35 million settlement for consumer fraud and antitrust claims brought on behalf of retail purchasers of pre-filled propane tanks. **In re: Pre-Filled Propane Tank Sales Practices Litig.**, No. 09-md-2086 (W.D. Mo.). Norm is co-lead and liaison counsel in a subsequent pending MDL. **In re: Pre-Filled Propane Tank Antitrust Litig.**, No. 14-md-0567 (W.D. Mo.).

- Norm was lead counsel and obtained a $25.4 million settlement for purchasers of H&R Block's Express IRA product related to allegedly false representations made during the sales presentation. **In re: H&R Block, Inc., Express IRA Mktg. Litig.**, No. 06-md-1786 (W.D. Mo.).

# ATTACHMENT REGARDING SUPPORT
# OF APPLICATION FOR LEAD COUNSEL

The Court's Pretrial Order No. 1 states that "[a]pplications may also include an attachment indicating the names of other counsel who have filed cases in this MDL and who support the applicant's appointment as lead counsel." I have made no attempt to accumulate "votes" to support this application, which often take the form of "I will support you, if you support me" arrangements that offer little insight as to the counsel most qualified to lead the litigation under the requirements set forth in Fed. R. Civ. P. 23(g). However, I can report that I have worked alongside Michael W. Sobol of Lieff Cabraser Heimann & Bernstein, LLP and Eric H. Gibbs of Gibbs Law Group in the early days of this litigation to organize plaintiffs' counsel to chart an efficient course for this case. I have also cooperatively worked with most of the applicants seeking to lead this litigation in other major data breach and privacy cases including Andrew N. Friedman of Cohen Milstein Sellers & Toll PLLC, John Yanchunis of Morgan & Morgan Complex Litigation Group and several others who will likely be applying for lead counsel. I likewise believe these firms would expressly support my application if considered by the Court.