Lesley E. Weaver, Partner
415 445 4004 direct
lweaver@bfalaw.com

June 21, 2018

**VIA E-FILING**

The Honorable Vince Chhabria
United States District Court, San Francisco Courthouse
Courtroom 4, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re: Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-02843

Dear Judge Chhabria,

Pursuant to Pretrial Order No. 1 (ECF No. 2), and Category 6 of that Order, I respectfully apply for a leadership position in this action.

Facebook has been revolutionary, connecting billions of people around the world. Its success and its collection of personal data have had enormous global impact. Both in the U.S. and abroad, jurists and legislatures are endeavoring to understand Facebook's operations to establish critical, reasonable limits to ensure this unleashed power does not cause further harm.

This case seeks redress for significant damage caused by Facebook's refusal to adhere to its agreements with the government or with its own consumers, and our declaratory relief cause of action seeks transparency so that consumers and governments can understand the public policy implications of Facebook's collection and secret sale of personal data to undisclosed parties. The rulings in this action are likely to have profound effects reaching far beyond the issues litigated here. Plaintiffs and the public will therefore benefit from appointment of counsel with the skill, experience and temperament to negotiate simple answers to complex questions. It would be an honor to be selected, and I will serve in whatever capacity the Court deems appropriate.

Professional Experience with MDLs and with the Subject Matter of this Litigation

I am the Partner-In-Charge of the Oakland, California office of Bleichmar Fonti & Auld ("BFA"). In 2016, Judge Breyer appointed me to the Plaintiffs' Steering Committee ("PSC") in *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices and Prods. Liability Litig*. In that case, I acted as a liaison to certain state Attorneys General and regulatory agencies on critical issues. I also played a leading role in pursuing claims against Bosch and participated in settlement discussions involving the Department of Justice, state Attorneys General and the Federal Trade Commission ("FTC"). The remarkable outcome in the case can be attributed in part to firm judicial leadership, a high-functioning and well-staffed PSC, and the extraordinary collaboration between the government and private counsel, all of which apply to similar complexities in this action.

In 2017, Judge Chen appointed me to the PSC of *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices and Prods. Liability Litig.*, another consumer class action with important national and international ramifications. The same year, Judge Breyer appointed me again to the PSC of *In re: German Auto. Mfrs. Antitrust Litig.*, a case that has called upon my foreign language

skills and contacts in Europe, including with European regulators, as we negotiate the complexities of ongoing domestic and international investigations. Most recently, Judge Davila appointed our firm co-lead class counsel on behalf of direct purchasers in *In re: Inductors Antitrust Litig.*

I have litigated complex cases from soup to nuts, managing and directing teams of attorneys; deposing CEOs, CFOs, COOs, venture capitalists and general counsels of Fortune 500 companies; presenting opening and closing statements at trial; managing relationships with government regulators, defense counsel and the plaintiffs' bar; working closely with renowned experts; negotiating complex settlements; mentoring those working with me; and navigating my career so that I am afforded opportunities like this to seek a leading role. To accomplish the latter, I left the safety of successful careers at two of the largest, and most accomplished, plaintiffs' firms in the country to forge my own way. My resume is attached as Exhibit A.

Part of my practice has been the litigation of CCP § 17200 cases, including the original MasterCard/Visa currency conversion case, and numerous other consumer actions. In 2014, I tried an action in Santa Clara County against an internet company that violated the terms of its confidentiality agreement with its subscribers, precisely the claims asserted here.[1] The jury awarded the class a 100% economic recovery, with a punitive damages award of fifteen times economic damages. This is one of very few data privacy actions to reach trial.

Familiarity with the Claims before this Court

This is not a typical data breach case. It involves questions relating to economic damage as well as the recidivist behavior of Facebook in the face of an FTC consent decree. Early reports that the breach only related to Cambridge Analytica viewed the harm too narrowly. Facebook's entire business model is premised on the exchange of "free" services for apparently unlimited collection and sale of personal attributes, connections, photos, videos and information.[2] Facebook's contracts with app companies and others reaped billions of dollars for Facebook and inflicted harm that can't be unwound. This is in fact a new, digital version of identity theft, but inflicted by a single organization rather than rogue individuals. One consideration before this Court, and indeed before Facebook, will be whether this is a fair economic exchange of disclosed terms, and/or whether Facebook should consider a new business model, as Tim Cook of Apple has suggested.[3]

Furthermore, because of the global reach of Facebook's network, no resolution can be reached without consideration of growing impact of the EU's General Data Protection Regulation ("GDPR"), which took effect on May 25, 2018. If proven true that Facebook's data collection reached users in other countries where stricter data privacy rules adhere, the leaders of this action must understand the potential application of such rules in the U.S. Leadership in this action should be able to engage meaningfully on this issues with various regulatory and governmental agencies.

---

[1] *Doe v. Successful Match.com*, No. 11-cv-21120 (Cal. Superior Court, Santa Clara Cty.).

[2] *See, e.g.*, Will Oremus, *The Real Scandal Isn't What Cambridge Analytica Did: It's What Facebook Made Possible*, SLATE (Mar. 20, 2018), https://slate.com/technology/2018/03/the-real-scandal-isnt-cambridge-analytica-its-facebooks-whole-business-model.html.

[3] *See, e.g.*, Avi Selk, *Apple's Tim Cook: I Would Have Avoided Facebook's Privacy Mess*, WASH. POST, Mar. 29, 2018, https://www.washingtonpost.com/news/the-switch/wp/2018/03/29/apples-tim-cook-i-would-have-avoided-facebooks-privacy-mess.

Present and Future Ability to Commit to Time-Consuming Litigation

We are a firm that carefully selects the cases it pursues only after evaluating the matters we are litigating and personnel available to manage them. I commit to managing this matter personally, and I have the time to do so.

Ability to Work Cooperatively with Others

Collaboration and collegiality are core values for me, and are critical components of successfully leading a complex action like this one.[4] The list of attorneys supporting my application as lead counsel (attached as Exhibit B) is not a list of favors owed, but rather a genuine reflection of mutual respect by and among individual attorneys and their firms. I am quite mindful of the pool of significant talent applying for positions in this case, and if selected for any position, it would be my honor to work with any of them.

Resources Available to Prosecute this Litigation in a Timely Manner

BFA has had extraordinary success since its inception. Since 2014, the firm has recovered more than $600 million for its clients, excluding *Clean Diesel*. In 2015, BFA was recognized as one of the top ten plaintiffs' securities firm in the nation.[5] The firm has the resources and the grit to advance millions of dollars and the significant time this case will require, without litigation funding. In response to the recent appointments noted above, our Oakland office has expanded once again. If appointed, we will not hesitate to expend all resources necessary to prevail.

Ability to Maintain Reasonable Fees and Expenses

If appointed, I will run this case efficiently, instructing firms to do discrete assignments, monitoring work carefully, and capping rates for attorney tasks best performed by more junior lawyers. It is a best practice for accumulated lodestar to be reported periodically to the Court, submitting only contemporaneously recorded and accurate attorney hourly records. A billing protocol *and* periodic reporting to the Court can help prevent any issues from arising, and a sample of the one submitted to and approved by Judge Davila in *In re Inductors Antitrust Litig*. is attached as Exhibit C.

Respectfully submitted,

Lesley E. Weaver, Esq.

---

[4] David Rock and Heidi Grant, *Why Diverse Teams Are Smarter*, HARV. BUS. REV., Nov. 4, 2016, https://hbr.org/2016/11/why-diverse-teams-are-smarter. I am a team leader drafting Standards and Best Practices for Increasing Diversity in Mass Tort and Class Action Leadership for the Duke Law School Center for Judicial Studies and have served as a panelist at related conferences. *See Panel 1: Data on and Barriers for Women and Diverse Lawyers Attaining Leadership Positions*, DUKE LAW BOLCH JUD. INST., https://judicialstudies.duke.edu/conferences/diversify-leadership-positions/panelists/.

[5] *See* ISS, *Top 50 for 2015* (May 2, 2016), https://www.issgovernance.com/library/securities-class-action-services-top-50-2015/#download.