

1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: 412.322.9243
Fax: 412.231.0246
www.carlsonlynch.com

June 21, 2018

The Honorable Vince Chhabria
United States District Court
Northern District of California
450 Golden Gate Avenue, Courtroom 4
San Francisco, CA 94102

        **RE:**   *In re: Facebook, Inc., Consumer Privacy User Profile Litig.,* **MDL No. 2843, Case No. 18-md-02843-VC (N.D. Cal.)**

Dear Judge Chhabria:

    I am counsel for plaintiffs in *Gennock et al v. Facebook, Inc. et al*, 3:18-cv-01891-VC, which is now part of MDL No. 2843. Pursuant to this Court's June 7, 2018 Pretrial Order No. 1, please accept my application for appointment as plaintiffs' lead counsel, or for any other leadership position that the Court may deem appropriate. My resume is attached hereto as **Exhibit A**. Additionally, fifteen other counsel in this multi-district litigation ("MDL") support my application. These counsel are identified on **Exhibit B**. Below is a summary of my qualifications, specifically addressing the topics set forth in Pretrial Order No. 1.

    I am the founding partner in a sixteen-attorney firm dedicated to representing plaintiffs in consumer, employment, financial services, and civil rights litigation. Our firm has its main office in Pittsburgh, Pennsylvania and a secondary (four attorney) office in San Diego, California. For the past several years, my individual practice has focused almost exclusively on privacy and data breach litigation on behalf of consumers, as well as financial institutions, throughout the United States. I have served (or am serving) in a lead counsel or executive committee role in many of the most noteworthy data breach and privacy cases of the last several years, including the Target, Home Depot, Wendy's, and Equifax data breach cases. I have nearly thirty years of experience representing plaintiffs in class and collective litigation, and am very familiar with multi-district litigation. I believe my experience with privacy and data breach litigation, coupled with my proven ability to work collaboratively with co-counsel in significant multi-district litigation, in both leadership and executive committee roles, uniquely qualify me to lead this case on behalf of plaintiffs.

    **I.**    **Professional Experience with MDLs and the Subject Matter of this Litigation**

    Throughout my career, I have served as counsel for plaintiffs in numerous MDLs, many of which involved privacy violations and/or data breaches, especially in recent years. By way of illustration, I am currently Co-Lead Counsel on behalf of the financial institution plaintiffs in *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL 2800 (N.D. Ga.); *In re: Home Depot, Inc., Customer Data Security Breach Litig.*, MDL No. 2583 (N.D. Ga.); and *First Choice Federal Credit Union v. The Wendy's Co., et al.*, No. 2:16-cv-0506 (W.D. Pa.). Additionally I was appointed to the five-member overall executive committee responsible for both the

consumer and financial institution plaintiff tracks in *In re: Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) and serve as Chair of the Executive Committee for the financial institution plaintiffs in *Midwest Am. Fed. Credit Union v. Arby's Restaurant Group., Inc.*, No. 17-cv-00514-AT (N.D. Ga.). I also serve or have served on the court-appointed executive committees in several other data breach/privacy cases, including: *In re Vizio, Inc. Consumer Privacy Litig.*, MDL No. 2693 (C.D. Cal.); *In re: Community Health Systems, Inc. Customer Data Security Breach Litig.*, MDL No. 2595 (N.D. Ala.), *Greater Chautauqua Fed. Credit Union v. Kmart Corp.*, No. 1:15-cv-02228 (N.D. Ill.); *In re: Ashley Madison Customer Data Security Breach Litig.*, No. 4:15-md-2669 (E.D. Mo.); and *Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01102 (D. Colo.). I also represent plaintiffs in several cases brought under Michigan privacy laws, two of which recently resulted in class settlements: *Sullivan v. Wenner Media LLC*, No. 1:16-cv-960 (W.D. Mich.); *Friske v. Bonnier Corp.*, No. 2:16-cv-12799 (E.D. Mich.).

From my work in the above-referenced privacy and data breach litigation, I gained considerable knowledge regarding the legal and factual issues which will arise in this case. I have worked successfully with many of the liability and damages experts who are typically used in this type of litigation, and have grappled with the concomitant legal issues. In April 2018, I argued before the Pennsylvania Supreme Court regarding the parameters of common law duty and the economic loss doctrine in the context of an employer data breach of employees' payroll and tax records. This case, *Dittman et al v. UPMC*, No. 43 WAP 2017 (Pa.), is currently awaiting decision.

## II.   Familiarity with the Claims Before the Court

As set forth above, I have been litigating privacy claims, like those in this case, for many years and spent a significant amount of time researching the factual allegations related to this action. As a result, I am well versed in the currently known facts of this case. I also researched the legal claims themselves, and generally keep apprised of changes in the law pertaining to privacy and data breach litigation as part of my day-to-day practice.

My understanding of the specific claims in this case is best- demonstrated in the allegations set forth in the complaint I drafted and filed. The legal claims in the privacy/data breach landscape continue to evolve. I have been asked to edit and propose language for proposed data breach legislation on both the state and federal level, and am continuing to advise one of the major stakeholders regarding pending federal legislation

## III.   Present and Future Ability to Commit to Time-Consuming Litigation

As mentioned above, for the last several years, my personal practice has been devoted almost entirely to privacy and data breach litigation. With the near conclusion of the *Home Depot* data breach MDL, in which I serve as Co-Lead Counsel on behalf of the financial institutions, I am presently involved in less than five cases which require appreciable amounts of my time. If appointed as lead counsel, I will be able to devote 50% or more of my personal work time to this case, and will not take on any additional work which might prevent me from doing so.

### IV. Ability to Work Cooperatively with Others

Perhaps the greatest challenge in serving as plaintiffs' lead counsel in an MDL is working cooperatively and collaboratively with other plaintiffs' counsel in the prosecution of the case.  I have a proven track record of successfully managing MDLs and a documented history of working collaboratively with co-counsel.  Indeed, I worked successfully in the past with many of the counsel and/or law firms seeking leadership appointment in this case.  These counsel have indicated their support for my application, as I have theirs.  *See* Exhibit B.  Privacy and data breach litigation has risen dramatically in the last several years.  Many of the lawyers which handle this type of litigation on behalf of plaintiffs have formed healthy and productive working relationships with one another.  I respectfully and proudly submit that I am part of that group of lawyers, and am fully capable of working with, and/or coordinating the work of, any of the lawyers in this case.

### V. Resources Available to Prosecute this Litigation in a Timely Manner

Carlson Lynch began in 2004 and has grown to be a sixteen-attorney firm with offices in Pittsburgh, Pennsylvania and San Diego, California.  Carlson Lynch's attorneys are assisted by a full service support staff of paralegals and assistants and the firm maintains a nationwide practice.  The firm has the necessary support and financial resources to prosecute this matter and to support my service as lead counsel in this action.

### VI. Ability to Maintain Reasonable Fees and Expenses

Undeniably, plaintiffs' counsel fees in large MDLs like this one is a growing concern.  I believe it is incumbent upon lead counsel, in the first instance, to oversee and control fees and expenses through active management of both the work that is performed, as well as how that work is billed.  In the MDLs in which I previously served as lead counsel, I implemented two strategies, without court mandate, to maintain reasonable fees and expenses.  First, I required that lead counsel expressly approve all work <u>before</u> it is performed.  This prevents "mission creep" and avoids duplication of effort.  Second, I required that any attorney performing work submit his or her time to lead counsel (and to the court if so directed) on a monthly basis and I reviewed such time throughout the litigation to ensure that it was commensurate with the needs of the case and the overall tasks being performed.  If appointed, I would utilize the same or similar controls in this case.

For all of the reasons detailed above, I respectfully request appointment as lead counsel on behalf of Plaintiffs in this multi-district litigation.  I am also willing to serve in any other leadership capacity that the Court deems appropriate.  Thank you for your consideration.

Truly Yours,

Gary F. Lynch