

**AHDOOT & WOLFSON, PC**
ATTORNEYS

June 21, 2018

VIA ECF
The Honorable Vince Chhabria
United States District Judge

***In re Facebook, Inc., Consumer Privacy User Profile Litigation*, No. 3:18-md-2843-VC**
**Application of Tina Wolfson for Lead Counsel for Consumer Plaintiff Class**

Dear Judge Chhabria,

On behalf of plaintiff Audrey Diaz Sanchez, I request that Your Honor appoint me and my firm to serve the consumer plaintiff class as Lead Counsel. I have dedicated twenty years of my career to protecting the fundamental right to privacy on behalf of American consumers. I meet all of the requirements set out in Pretrial Order No. 1 (Dkt. 2) and am eager to dedicate my extensive skills and experience to this important case, should the Court allow me the opportunity to do so.

**Professional Experience with MDLs and with the Subject Matter of This Litigation and Familiarity with Claims Before the Court**

Ahdoot & Wolfson enjoys the reputation of being one of the most well-respected plaintiffs' firms, renowned for the high quality of its work product, its unwavering, zealous advocacy, and its staunch commitment to ethics and collegial cooperation with co-counsel and opposing counsel.

As a founder, I have spent twenty years prosecuting complex cases and class actions, as well as serving on the leadership teams of many MDL cases. I am imminently qualified to lead this MDL. My experience in privacy class actions is extensive and difficult to match and has lent me familiarity with both the legal landscape and the evolving technology necessary to lead a case of this nature.

I have had a long-standing passion for cases involving the right to privacy and have been prosecuting e-privacy cases on behalf of consumer classes since the late 1990s, before the term "big data" became part of the everyday vernacular. I was among the first group of attorneys who successfully litigated the privacy rights of millions of consumers against major financial institutions (Chase Manhattan Bank, American Express, MBNA America Bank, Discover Bank, FleetBoston, and Washington Mutual Bank, among others) based on the compilation and sale of detailed personal financial data to third party telemarketers without the consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, at the time we were prosecuting these cases before the Hon. Richard R. Kramer (Ret.) in the complex department of San Francisco Superior Court, such practices were hidden from public scrutiny.

AW and I continue to spearhead consumer privacy rights through novel cases, including those involving the right to control the collection and use of biometric information, as in *Rivera v. Google, Inc.*, No. 1:16-cv-02714 (N.D. Ill.) (Hon. Edmond E. Chang) and *Monroy v. Shutterfly, Inc.*, No. 1:16-cv-10984 (N.D. Ill.) (Hon. Robert W. Gettleman). There, we successfully opposed the motions to dismiss based on lack of standing on the same grounds that Facebook is likely to assert here. We have also enjoyed success in cases prosecuting consumer rights to be left alone by telemarketers pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) ($10 Million non-reversionary fund and significant injunctive relief settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02240-VEC (S.D.N.Y.) ($14.5 million non-reversionary settlement; final approval under appeal). The discovery in these cases involves a high level of technical expertise.

My extensive experience in data breach cases has further prepared me to lead this case. Data breach cases involve some of the most challenging legal issues of privacy-related claims that are likely to come up in this case, such as class certification and damages, as well as a high level of technical expertise. I am currently serving as Co-Lead Counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.), before the

Hon. Andrew J. Guilford, who appointed me after contested applications and a hearing. Plaintiffs' counsel had voluntarily transferred these cases, originally filed across the nation, to the Central District of California, as a result of my coordination efforts early in the case. This result speaks to my ability to organize my colleagues, who respect my thinking. After two and a half years of intense but efficient litigation, and concurrent settlement discussions that began in March 2017 and included three full-day mediations, the parties reached a class-wide settlement in principle, which remains confidential for the short future. At our last CMC, Judge Guilford praised counsel's efforts, commenting "You folks have truly done a great job, both sides. I commend you." (Tr. 06/11/18 at 5:14-16.)

My leadership in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (final settlement approval, which creates a non-reversionary fund and provides for a $100 payment to each class member whose credit card was compromised in the breach, is pending before the Hon. Sharon Johnson Coleman), where colleagues from seven other firms elected me as Co-Lead Class Counsel, resulted in the seminal standing decision from the Seventh Circuit. My partner Theodore Maya and I briefed and argued the appeal from the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in virtually every standing case, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). The defense bar had advocated that in light of *Clapper*, plaintiffs in data breach cases generally lack standing unless they suffered unreimbursed fraudulent charges. As a result of our work, the Seventh Circuit adopted the plaintiffs' reasoning, rejected this narrow view of *Clapper*, and established that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes. *Remijas v. Neiman Marcus Group, LLC*, 794 N.E.3d 688 (7th Cir. 2015) (reversed and remanded). We at AW are thus not only familiar with legal precedent relevant to this case but are at the forefront of creating it.

My other data breach experience includes serving on the PSC in *The Home Depot Customer Data Security Breach Litigation*, No. 14-md-2583-TWT (N.D. Ga.) (Hon. Thomas Thrash), which resulted in a $29 million settlement plus robust injunctive relief; on the EC in the *Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-md-02633-SI (D. Or.) (Hon. Michael H. Simon), where our motion to certify the class is due in July; on the PSC in the *U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 1:15-mc-01394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), where I briefed and argued, in part, the voluminous motion to dismiss, as well as the appeal from the order of dismissal to the D.C. Circuit; and as Lead Counsel in the *YapStone Data Breach*, No. 4:15-cv-04429-JSW (N.D. Cal.) (Hon. Jeffrey S. White) (settlement provided for credit monitoring and identity theft services to claimants, valued at approximately $4.5 million annually in perpetuity, a *cy pres* fund to non-profit organizations, and injunctive relief in the form of YapStone implementing significant and costly data security measures), among many other data breach cases outlined in my curriculum vitae.

My other recent complex litigation achievements include a $295 Million settlement in *Eck v. City of Los Angeles*, No. BC577028 (Cal. Super. Ct., Los Angeles Cty.) (Hon. Ann I. Jones), based on alleged unlawful utility tax increases without voter approval; a settlement making $80 Million available to the settlement class in *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon Edward J. Davila), including injunctive relief addressing the alleged unlawful false discount and auto-renew policies; a preliminarily approved $36 Million non-reversionary fund settlement for alleged misrepresentations of laminate flooring durability and formaldehyde emissions in the *Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practices Litig.*, No. 1:16-md-02743-AJT-TRJ (E.D. Va.) (Hon. Anthony J. Trenga); a class settlement establishing a non-reversionary fund of $32.5 million returning allegedly hidden "safe ride" fees that Uber unfairly charged its customers in *McKnight v. Uber Techs., Inc.*, No. 3:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar, final approval pending); and a preliminarily approved $22 million non-reversionary fund class settlement in *Pantelyat v. Bank of Am., N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan), which is 80% of total revenues gleaned by Bank of America's allegedly unlawful overcharge fees.

**Present and Future Ability to Commit to Time-Consuming Litigation and Resources Available to Prosecute This Litigation in a Timely Manner**

I fully understand both the time and financial commitments that this type of high stakes litigation demands and that the Court expects the litigation to move promptly and efficiently. I do not take these obligations lightly

and would not ask the Court to appoint me Lead Counsel unless I were certain that we could meet these obligations. Without equivocation, I assure the Court that AW has both the staff and the financial resources to lead and manage this case promptly and efficiently to a successful conclusion.

As a testament to the firm's financial health and sound judgment, AW has never borrowed funds from any parties, but has thrived and grown on the proceeds it brings in through its members' efforts. Such financial health is the result of AW's principals never overextending their financial commitments. AW has always promptly met its litigation fund assessment obligations in every case and will continue to do so.

### Ability to Work Cooperatively with Others

I am proud of my reputation as one who works amicably, cooperatively, and efficiently with other plaintiffs' counsel, whether in a lead or supporting capacity, despite the fact that we sometimes compete. I enjoy collaborating for the benefit of the class and believe that a good leader listens to all viewpoints with respect and an open mind. I also enjoy mentoring younger attorneys and believe that, as lawyers, we owe that to our profession and our society. In this matter, I have already reached out to every counsel who filed a case in the MDL (whether or not I have previously worked with them) and discussed many aspects of the case with the majority of them. Many plaintiffs' counsel in this MDL have indicated their support for my leadership application here, as reflected in the attached Appendix. Recently, I have been nominated to the Board of Public Justice, which evidences the nationwide respect of the plaintiffs' bar that I am fortunate to enjoy.

I believe that zealous advocacy must be accompanied by professionalism, civility, and ability to work cooperatively with opposing counsel as well. My reputation for working well with defense counsel is evidenced by the fact that they often invite me to participate in professional development events. My active membership and leadership positions in the Federal Bar Association, the California Bar, and the Association of Business Trial Lawyers have further solidified my relationships with many defense attorneys. I have had the privilege of working with attorneys from Gibson Dunn on several previous and current matters and have established a mutually respectful and cooperative relationship with them.

### Ability to Maintain Reasonable Fees and Expenses

Although we typically face the most formidable opponents who enjoy unlimited resources, no Court has ever criticized me or my firm for overreaching on plaintiffs' attorney fees. Rather, Courts have routinely approved my requested fees over objections (*e.g.*, *Eck v. City of LA*, *Kirby v. McAfee*, *Chimeno-Buzzi v. Hollister*), and have often praised our performance as class counsel. For example, Judge Ursula Ungaro in *West v. ExamSoft*, No. 14-cv-22950 (S.D. Fla.) noted that "this case was novel [and] required significant legal effort and acumen from skilled and experienced counsel and . . . counsel's performance in this case has been excellent in the face of stiff and ardent opposition." Dkt. 62 at 10. Likewise, when preliminarily approving the $4 million settlement in *Trammel v. Barbara's Bakery*, No. 12-cv-2664 (N.D. Cal.), the Hon. Charles R. Breyer commented that the result was an "excellent settlement" and that both sides did "an excellent job of resolving the case," doing a "superb job" and presenting "a model of good lawyering on both sides"; when granting final approval to the settlement, Judge Breyer reiterated that the settlement was "very good" and that the case was "quite a successful class action."

If appointed, I will implement strict efficiency protocols to govern the work of all plaintiffs' counsel on the matter, in order to avoid duplication and inefficiencies, review time submissions periodically, and submit them to the Court for review in camera periodically if the Court so chooses. In any event, all bills will be reviewed and inefficiencies removed prior to any request for attorney fees.

I sincerely thank Your Honor for your considerations.

Respectfully,

Tina Wolfson