# GIBBS LAW GROUP
L L P

June 21, 2018

Honorable Vince Chhabria
United States District Judge
450 Golden Gate Avenue
Courtroom 4 – 17th Floor
San Francisco, California 94102

Re:   MDL No. 2843 – *In re Facebook, Inc., Consumer Privacy User Profile Litigation*

Dear Judge Chhabria:

As founding partner of Gibbs Law Group LLP and a leader in the class action privacy bar, I respectfully apply for appointment as lead counsel, with the endorsement of distinguished firms throughout the country and the plaintiff in *King v. Facebook, Inc.*, No. 3:18-cv-02276.

***Professional Experience.*** Consumer privacy litigation occupies a central role in my practice. A noteworthy example is *In re Vizio, Inc., Consumer Privacy Litigation*, MDL No. 2693. Judge Josephine L. Staton of the Central District of California appointed me and Joe Cotchett as co-lead counsel for consumers after a competitive process. The *Vizio* multidistrict litigation concerns allegations that a major manufacturer of internet-connected televisions installed software that collects consumers' viewing histories. The company allegedly sold this information—along with highly specific information about consumers' digital identities—to data brokers, without consumers' knowledge or consent.

My firm's work to understand the personal data ecosystem and the commodification of data for a wide range of behavioral analytics and targeted advertising would benefit consumers in this case. So too would our familiarity with national and international privacy norms, and our ability to unpack dense contracts among data brokers and software or hardware developers. Equally important is our experience developing economic valuations of personal data. In these regards, we have worked with top-flight technologists, including a former chief technologist at the Federal Trade Commission, as well as privacy experts and economists. We stand ready to leverage our knowledge and connections for consumers in this case.

An example of my privacy work that changed the law for consumers is *In re Adobe Systems Privacy Litigation*, in which I served as lead counsel. Back then, district courts had concluded that data breach victims could rarely establish Article III standing for prospective relief. The *Adobe* court issued a watershed ruling favoring data breach victims, 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014), which over 60 courts have cited. *E.g., Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

More recently, I was part of a four-firm team that resolved the largest healthcare data breach class action in history—producing a $115 million settlement. *In re Anthem, Inc. Data Breach Litigation*, MDL No. 2617 (N.D. Cal.) (Koh, J.) (final approval pending). There, I did not seek a lead position. Instead, I supported highly qualified lead counsel and sought a position on a committee. I felt comfortable in that role because of the strength of our proposed leadership team. In appointing me, Judge Koh noted

that, among the "eighteen separate motions to serve as lead plaintiffs' counsel," Gibbs in particular "had considerable experience litigating privacy cases." *Anthem*, Doc. 284 at 3.

More recently still, I was appointed to a committee of counsel for consumers in three separate data breach cases: *In re Equifax, Inc. Consumer Data Security Breach Litigation*, MDL No. 2800 (N.D. Ga.); *In re Banner Health Data Breach Litigation*, No. 2:16-cv-02696 (D. Az.); and *Fero v. Excellus Health Plan*, No. 6:15-cv-06569 (W.D.N.Y.). These appointments are the culmination of a career as a leader in consumer privacy litigation. This includes *Smith v. Regents of the Univ. of Cal., San Francisco*, No. RG-08-410004 (Cal. Sup. Ct., Alameda Cnty.), in which I certified a litigation class under California's Confidentiality of Medical Information Act, and obtained a court–approved stipulated permanent injunction which conferred "a substantial benefit to the entire class and the public at large." 7/21/2011 Case Management Order, *Smith*, No. RG-08041004, at 1. And it includes *Whitaker v. Health Net of Cal., Inc.*, No. 11-cv-00910 (E.D. Cal.), and *Shurtleff v. Health Net of Cal., Inc.*, No. 34-2012-00121600 (Cal. Sup. Ct., Sacramento Cnty.), in which I was appointed co-lead in coordinated federal and state litigation concerning a health care data breach affecting 2.2 million subscribers to an HMO. The court ultimately approved a comprehensive settlement providing credit monitoring, establishing a $2 million fund for identity theft losses, and improving security protocols. I have also cultivated best practices among the consumer privacy bar, including by co-founding the American Association for Justice's Consumer Data Breach and Privacy Litigation Group, and organizing seminars and webinars. *See* Ex. A (Resume).

My professional experience managing complex and multidistrict litigation extends beyond these matters and includes financial fraud, product defect, and false advertising cases. *E.g.*, *In re Chase Check Loan Litig.*, MDL No. 2032 (N.D. Cal.) (leading settlement negotiations which resulted in a $100 million settlement eight weeks before trial); *In re Am. Honda Motor CR-V Vibration Litig.*, MDL No. 2661 (S.D. Ohio) (Doc. 15, at 5) (appointed co-lead in a competitive process because I was "best able to represent the interests of the putative class"); *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, MDL No. 2086 (W.D. Mo.) (appointed co-lead); *Browne v. Am. Honda Motor Co.*, No. 2:09-cv-6750 (C.D. Cal.) (negotiated class settlement in automotive defect case, with over 200,000 claimants—a level of participation rarely achieved).

**Familiarity with Claims.** A key litigation hurdle in *Vizio* was pleading federal and state privacy claims. Defendants argued that no court had applied federal privacy laws, such as the Electronic Communications Privacy Act of 1986 or the Video Privacy Protection Act of 1988, to prohibit digital tracking and profiling using processed data, as in unique identifiers or internet protocol addresses. When Congress enacted these laws, defendants insisted, it scarcely imagined the complex technologies and data-sharing arrangements prevalent today, let alone ventured to authorize liability for statutory damages for the sale of "anonymized" consumer data. Defendants similarly cast privacy torts, whether by statute or common law, as outmoded in the cyber age. As co-lead, I and my firm assumed a lead role in drafting the complaint, briefing dispositive motions, and presenting oral argument in an effort to beat back successive motions to dismiss. The district court issued pathmarking decisions sustaining federal and state privacy claims (as well as consumer protection claims) and later denied a request for interlocutory appeal.

We are also familiar with the interplay between a federal agency's enforcement authority and

private litigation. We have successfully resisted efforts by defendants to invoke primary jurisdiction doctrine or to seek dismissal based on a consent decree with a federal agency. In a recent favorable ruling, the court in *Vizio* refused to dismiss claims for injunctive relief after defendants entered into a consent decree with the Federal Trade Commission. This litigation experience may benefit the class given the 2011 consent decree between Facebook and this agency, which continues to investigate Facebook's privacy practices.

**Willingness and Ability to Serve.** No commitments will interfere with my ability to lead. I appreciate the personal commitment necessary for effective leadership and have the capacity to assume a lead role here.

I also welcome the opportunity to work with whomever the Court chooses.

**Working Cooperatively.** Judge George Wu's comments in *In re Hyundai & Kia Fuel Economy Litigation* attest to my ability to work cooperatively with counsel for plaintiffs and defendants. MDL No. 2424 (C.D. Cal.) (Doc. 437, at 8) (recognizing that, as court-appointed liaison counsel, Gibbs "efficiently managed the requests from well over 20 different law firms and effectively represented the interests of Non-Settling Plaintiffs throughout this litigation"). So too does the widespread support experienced attorneys have offered for my appointment as lead counsel—support I received despite making no promises in exchange. *See* Ex. B.

**Access to Resources.** Gibbs Law Group possesses the necessary resources to lead. We have a deep bench, including a 2017 recipient of Law360's Top Cybersecurity and Privacy Attorneys Under 40, who successfully certified nationwide and California litigation classes in *In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.), which is now in settlement mode. Our bench is diverse, reflecting my personal commitment to promoting the advancement of those underrepresented in the class action bar. And we persist. Against Intel, for example, I oversaw litigation lasting ten years and through the start of trial, requiring over 130 depositions across the country and the advancement of millions of dollars in expenses. *See* Order of Final Approval and Judgment 7-8, *Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cnty.) ("Class Counsel invested an incredible amount of time and costs . . . [for] approximately 10 years with no guarantee that they would prevail").

**Reasonable Fees and Expenses.** My firm's hourly rates and billable hours are routinely approved as reasonable. Active management by lead counsel of *everyone's* time, however, is imperative. In *Equifax*, I joined several attorneys in championing protocols to ensure that the litigation would be pursued efficiently, without unnecessary effort and duplication, and in a manner that facilitates the court's active management. This included protocols for time keeping, monthly submission of time records, quarterly reports to the court, and other administrative tasks. If appointed here, I would work with this Court and counsel to develop and propose these same or similar measures.

\* \* \*

Thank you for considering my application for lead counsel.

Very truly yours,

Eric H. Gibbs