

T 206.623.7292    F 206.623.0594

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
steve@hbsslaw.com

June 21, 2018

The Honorable Vince Chhabria
United States District Court, Northern District of California

      Re: *In re: Facebook, Inc., Consumer Privacy User Profile Litigation*

Dear Judge Chhabria:

    We at Hagens Berman represent the plaintiffs and proposed class in *Johnson v. Facebook, Inc.*, 3:18-cv-02127 (N.D. Cal.), one of the 30+ federal cases transferred to this Court for MDL proceedings. Per the Court's Pretrial Order No. 1, I respectfully apply for lead counsel in this matter.

    By way of introduction, I have dedicated myself to complex class-action work for over 30 years. I am honored to have been named to *Law360*'s Titans of the Plaintiffs' Bar for 2018 and to have been named MVP of the Year for 2017. I also recently received *The National Law Journal*'s 2017 Plaintiffs' Trailblazer Award, which highlighted my work in corporate reform, groundbreaking cases, and novel settlement-distribution methods. Additionally, our firm has been recognized on numerous occasions for its outstanding accomplishments. For example, it was named a firm of Elite Trial Lawyers by *The National Law Journal* in 2016. It also has been chosen as Global Law Experts' Class Actions (Plaintiff) Law Firm of the Year for two years running. These awards, among others, speak to our dedication to, and outstanding results on behalf of, those we have served.

    The Court has expressed its "tentative[] view that nothing is needed by way of structure other than lead counsel." PTO No. 1, ¶ 7.i. My extensive experience in MDL leadership tells me that I can serve effectively as sole lead in this case.

    If, however, the Court ultimately opts for a larger structure, I believe that a total of two to three co-leads could serve effectively while keeping the efficiencies of a tight structure. The Court might also choose to appoint a small Plaintiffs' Steering Committee. In any event, if appointed, I would propose to identify and ask the Court to approve a small slate of smart, energetic, and effective counsel from outside my firm to serve as well. I'd also plan to identify similarly qualified Hagens Berman colleagues to work on the case at my direction. In this way, plaintiffs would enjoy the benefit of well-qualified talent dedicated to their cause, but also, the lawyers would have heeded this Court's wise signal that the leadership structure must be as lean and efficient as it is experienced.

    In light of recent news reports detailing other instances of defendant Facebook allowing third-party access to enormous volumes of user data,[1] and with other American and foreign defendants already joined in some complaints, this is a case that could sprawl out of control if not led wisely. Taking our first substantive task as an example—the drafting of a consolidated complaint—my approach would be to listen hard to counsel with varying views but to question hard, too, and then to vet other potentially viable claims that we ourselves chose not to plead. In this way, we'd arrive at the right focus for this MDL. It is my view that these proceedings should not become a vehicle for every data-sharing grievance that Facebook users may have against the company, however legitimate.

    Substantively, this matter involves the normal complexities attendant to litigating a multi-claim, nationwide case against a large, sophisticated, and well-resourced organization. It also involves technical issues related to Facebook's Graph API, as well as economic issues related to the monetization of user data. Further, it involves foreign entities. And it involves a key American player, Cambridge Analytica LLC, that recently filed for bankruptcy protection (as have several of its affiliates).[2] These characteristics call for leaders whose track records show that they are up to the

---

[1] *See, e.g.*, Steven Musil, *Facebook gave Huawei special access to user data*, C|NET (June 6, 2018), https://www.cnet.com/news/facebook-reportedly-gave-huawei-special-access-to-user-data/.

[2] Where bankruptcy is concerned, I have extensive recent experience in dealing with a bankrupt entity—old G.M.—in *In re General Motors Ignition Switch MDL*, in which I am a co-lead.

challenge—that they are counsel the putative class would hire if it were a company looking for representation in a case of this type and magnitude.

With the following in mind, I turn to the six topics the Court has raised in its order:

**(i) Professional experience with MDLs and with the subject matter of this litigation.**

As the list below indicates, I have extensive leadership experience with MDLs.  I am honored to have been appointed lead or co-lead counsel in many of the largest cases in history.  My MDL experience includes the following, along with other examples cited in our attached resume:

- *Volkswagen "Clean Diesel" MDL* (N.D. Cal.). As lead counsel for the Volkswagen Franchise Dealers, we received final approval of a settlement of $1.2 billion, representing a result of nearly full damages for the class. I also serve on the Plaintiffs' Steering Committee and played a role in obtaining a settlement of $14.7 billion on behalf of consumers that included injunctive relief in the form of an optional buyback of the affected vehicles.

- *In re Stericycle, Inc. Steri-Safe Contract MDL* (N.D. Ill.).  As lead counsel in this contract-based case involving pricing for medical-waste services, we recovered $295 million for the class after intensive discovery, litigation, and economic modeling.  The late Judge Milton Shadur, a true lion of the bench, deeply honored my firm and me by observing: "[I]t must be said that the track record of Hagens Berman and its lead partner Steve Berman is . . . impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big-ticket results."  *In re Stericycle, Inc.*, 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013).

- *Carrier iQ MDL* (N.D. Cal.).  As co-lead counsel, we litigated against 10 defendants, including foreign device manufacturers and their U.S. affiliates, in this consumer-privacy case regarding the interception of SMS text messages.  Among other notable case events, we survived a motion to refer the case to arbitration, and in the course of litigating that motion, we added to the body of law regarding arbitration demands based on equitable estoppel.  The case involved discovery from all defendants and third-parties, including cellular carriers and Google Inc.  We settled the case in 2016.

- *Toyota SUA MDL* (C.D. Cal.). As co-lead counsel for the economic loss classes, we challenged a defect causing dozens of Toyota models spanning an 8-year period to undergo sudden, unintended acceleration. The resulting $1.6 billion settlement included $500 million in cash payments to class members, many of whom received checks for thousands of dollars; a program that substantially extended warranties for millions of consumers; and, most importantly, installation of a safety-enhancing brake override system on millions of vehicles (a fix that I proposed and that, since implementation, has dropped reports of sudden unintended acceleration to near-zero).  The practice of sending checks directly to class members is an innovation that I am proud to have helped pioneer.

- *AWP MDL* (D. Mass.). As a co-lead and lead trial counsel, I and the firm proved that the nation's major drug companies fraudulently inflated their prices by billions of dollars. A bellwether trial resulted in a verdict against three defendants, and the cases concluded with $338 million in settlements, with consumers receiving three times actual damages.

Of course, not all of our cases are MDLs.  For example:

- *Attorneys General Tobacco Litigation*. In the historic litigation against the tobacco industry, I represented 13 states and advanced groundbreaking legal claims to secure a global settlement worth $260 billion, still the largest recovery in history. Only two law firms, including Hagens Berman, went to trial in these actions, and I served as co-lead trial counsel.

As for my experience with the subject matter of this litigation, my service as co-lead counsel in the *Carrier iQ* MDL acquainted me and my team with, *inter alia*, privacy laws including the Electronic Communication Privacy Act of 1986, which includes the Stored Communications Act cited in some of the pending complaints.  Also, many of our cases, including *In re Stericycle*, have involved claims for breach of contract and unjust enrichment—two theories that are strongly apt here.

**(ii) Familiarity with the claims before the Court.**

We have conducted a survey of all complaints pending in cases transferred here, or soon to be transferred here, for consolidated pretrial proceedings. We have a good grasp of what others have pled. But also, we think that our own complaint is meticulously researched and well-pled. We have continued to monitor events related to our clients' claims, and we have definite ideas as to the composition of a consolidated amended complaint.

**(iii) Present and future ability to commit to time-consuming litigation.**

As illustrated by the cases referenced above and in the attached short resume, we willingly take cases through years of discovery and motions practice and settle only if we position the case to a point where class members obtain real relief. Recently, Judge Griesa lauded Hagens Berman's commitment through ten years of litigation where the risk of non-recovery was "extremely high":

> Even when recovery seemed unlikely…, Hagens Berman steadfastly continued to represent the class…. Hagens Berman's willingness to take this case on a contingency basis in spite of the risks involved, and to continue to represent the class even when success appeared unlikely, is a testament to its commitment.[3]

Also, unlike many class-action firms, we take cases to trial. In lead roles, we did so in the *Tobacco* trial, in the successful three-month *AWP* trial, and in the successful *In re Neurontin* trial. If appointed lead here, I will dedicate whatever time is necessary to manage and prosecute this case. This is what Facebook users deserve and what the Court expects.

**(iv) Ability to work cooperatively with others.**

I have worked (and am currently working) effectively with many, many others while occupying leadership positions in numerous large, complex cases. For example, I have worked closely and effectively with Lieff Cabraser Heimann & Bernstein, LLP in the *Toyota SUA* and *GM Ignition Switch* MDLs (see attached resume); with James Cecchi of Carella, Byrne, Cecchi, Olstin, Brody & Angello, P.C., in the *VW "Clean Diesel"* MDL and in the Mercedes BlueTEC Emissions case pending in the District of New Jersey (Case No. 2:16-cv-00881-JLL-JAD) (see attached resume); and with Cohen Milstein Sellers & Toll PLLC in the *In re Electronic Books Antitrust Litig.* MDL (see attached resume) and *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Litig.* MDL pending in E.D. Virginia (Case No. 1:15-md-02627). Our successes in these cases, whether the matters are completed or ongoing, speak strongly to my ability to work cooperatively with colleagues in service to classes.

**(v) Resources available to prosecute the litigation in a timely manner.**

Hagens Berman has substantial, national litigation power that includes 85 firm attorneys. We commit these resources to prosecute class actions in an efficient and timely manner. Because we are prudent managers, we are able to fund litigation costs over many years of litigation and trial, often alone. We do not cut-and-run from cases, as several firms did in *Toyota* when the odds looked long. We stay and fight.

**(vi) Ability to maintain reasonable fees and expenses.**

If appointed, we expect to submit a detailed protocol for the Court's consideration regarding case assignments, timekeeping, and cost controls. But also, we think that establishing a tight leadership structure such as that suggested by the Court's order is over half the battle in ensuring efficiency.

Thank you, your honor, for considering my application.

Very truly yours,

Steve W. Berman

---

[3] *Brecher v. Argentina*, No. 1:06-cv-15297, ECF No. 148 (S.D.N.Y. Apr. 27, 2017).