

T 206.623.7292    F 206.623.0594

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
steve@hbsslaw.com

June 28, 2018

The Honorable Vince Chhabria
United States District Court, Northern District of California

Re: *In re: Facebook, Inc., Consumer Privacy User Profile Litigation*

Dear Judge Chhabria:

The Court has an impressive array of attorneys before it. I have worked personally with many of them in nationwide MDLs where I served as lead or co-lead counsel.

It bears noting that several applicants cite their work on data-breach cases. At least one applicant touts his leadership of a data-privacy group within his firm. But this is not a data-breach case such as *Anthem* or *Adobe Systems*. It does not concern a breach aimed at stealing Social Security numbers, credit-card numbers, or other financial data. Hackers did not break in through the back door. Rather, this is a matter in which defendant Facebook allowed third parties to walk through the front door and carry out passels of its users' personal information for dark purposes. Thus, experience with data-breach investigation, prosecution, and settlement is of limited importance here.

My experience and expertise in leading a privacy-related MDL in this district is the *Carrier iQ* matter cited in my application. There, as here, there was no *Anthem*-like break-in alleged; instead, plaintiffs challenged third-party access to private content. My experience in *Carrier iQ* will aid me if I am appointed to leadership in this case.

Importantly, what plaintiffs face in this MDL are the sorts of challenges they face in any large consumer or commercial class action. And respectfully, as a comparison of short (or long) resumes will show, my firm and I are second to none in successfully litigating class cases of this magnitude.

Hagens Berman offers both: (1) a core team for this litigation who are attorneys with significant class-action expertise in technologically intense cases; and (2) the ability to augment that team as needed from the 85 lawyers at the firm, all of whom have complex class-action expertise. The core team members—myself, Shana Scarlett, Rob Lopez, and Thomas Loeser—all have substantial experience in this District. My credentials are noted in my application. Ms. Scarlett is a 17-year veteran of the Bay Area bar with an extensive record in technology matters. Mr. Lopez is a 13+-year class-action veteran with significant experience prosecuting cases against large technology companies such as Google, HTC, and Samsung. And Mr. Loeser is a former technology analyst, Silicon Valley technology attorney, and federal cyber-prosecutor with extensive technological expertise. These attorneys can assist me with expertise, knowledge, and energy that no other applicants can match, and they can do it efficiently, without the need for layer-upon-layer of committees and inter-firm complexities.

The first major task here will be to draft a consolidated amended complaint. Our *Johnson* complaint stands up to any complaint on file, exceeds most in detail, and demonstrates our understanding of the key issues uncovered by our investigation and analysis. It's a strong start towards what will be filed on behalf of all plaintiffs.

The strength of the *Johnson* complaint is based not only on the investigation we completed and the facts we have alleged, but also on the claims and theories we have presented. As any experienced practitioner will acknowledge, personal-information cases are not easy, whatever the egregiousness of the defendant's actions (or inaction). Demonstrating that a practice breached trust and failed to protect information is merely the first step. Demonstrating liability under cognizable theories is still only part of the journey. Demonstrating the right to recover money, or to require action by way of injunctive relief, presents yet more serious challenges—challenges that my team is ready, willing, and able to meet.

Having thought these challenges through, we've pled two theories for recovery in *Johnson* that we think are uniquely apt here—and we didn't look to preceding complaints to develop them. These relate to our particular iterations of claims for quantum meruit/unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing.

First, we think that Facebook breached its duties to protect its users' data by consciously devoting inadequate resources to the mission, and by willfully adopting policies and practices designed to monetize that data no matter the invasions of privacy, all with the aim of maximizing its own income. Under these circumstances, Facebook must not be permitted to retain profits that should have been spent on protecting its users' data and privacy, per its promises to those users. This quantum of funds ought to be part of the prospective class's recovery in this matter.

Second, we have explicitly pled entitlement to statutory nominal damages for Facebook's breaches of its contractual and implied-contractual duties. This a powerful and *credible* means to help ensure that justice can and will be done in this case. Facebook itself admits that over 70 million of its U.S. users had their data collected by Dr. Kogan for transfer to Cambridge Analytica. We know that we can demonstrate breaches of Facebook's duties to its users under its agreements with them, but collecting damages is always an entirely different matter in data-privacy cases.[1] The serious potential of a bare-minimum $70-million-plus recovery is something that Facebook cannot ignore as this case goes forward (though of course it must also reckon with the possibility that it will be ordered to pay much, much more for its injurious actions and omissions).

I ask the Court to allow me to push forward with these theories, and others, as a leader in this important case. As we have alleged, Facebook opened the door and stood by idly while foreign actors and others absconded with enormous volumes of users' private data. We have the right core team at our firm. and we have engaged the right consulting expert to understand thoroughly, and demonstrate exactly, what occurred and how it should have been presented.

Already it is plain that those who accessed data via Facebook's systems meant to exploit this personal information to influence our elections. Yet even as it noticed its pipelines choking on the sheer volume of data being pulled through them, Facebook did not protect its users; instead, it allowed the collection process to conclude. I want to do the work this case demands, not only on behalf of the three *Johnson* plaintiffs and the class they seek to represent, but also specifically on behalf of those prospective class members who have contacted us via our dedicated web page: *over 3,100 of them to date*. We are honored that they have reached out to us and have trusted us to work on their behalf. Further, these Facebook users, who hail from all 50 states, represent an important source of new plaintiffs if and when needed, as well as a sampling of users whom we can query respectfully if we need the opinion of affected persons regarding aspects of this case or its potential resolution.

I have the experience, expertise, and drive to litigate this case thoroughly and to bring it to as successful a result as possible. My firm has resources at least on par with, if not exceeding, those of any applicant before the Court. And this is true whatever the wendings through Cambridge Analytica's bankruptcy proceedings or the usual challenges of a well-financed opponent with excellent representation. (As noted in my application, I am experienced with MDL consumer class forays into bankruptcy court. As co-lead in the *General Motors Ignition Switch* MDL, I appeared there in efforts to achieve justice for those persons economically injured by callous engineering decisions made by GM prior to its 2009 Chapter 11 reorganization.)

In the short-form resume attached to my application, I have included the telephone numbers for judicial contacts in the referenced matters. I recognize that some courts reach out to their judicial colleagues when making leadership decisions such as the instant one. Judge Shadur did that in *In re: Stericycle, Inc., Steri-Safe Contract Litigation*, an MDL referenced in my application.

---

[1] For example, the *Campbell v. Facebook* case, No. 13-cv-5996 (N.D. Cal.)—cited by Mr. Sobol and another applicant—settled with no monetary recovery for the class. As we understand it, an objector has appealed approval of the settlement and attorneys' fee to the Ninth Circuit.

In appointing Hagens Berman as sole interim lead counsel in a leadership contest, Judge Shadur cited the "high praise of attorney Berman's skills" that inquiry to his Northern District of Illinois colleagues had elicited. And while the court noted a competitor's "wealth of trial experience," including in class actions, it also stated: "it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big-ticket results."[2] As Judge Shadur put it, these "sterling credentials" were to be considered pursuant to Rule 23(g)(1)(B).[3]

Judge Shadur's decision to choose me and my firm as sole lead was vindicated when we settled the case for $295 million,[4] together with changes to the company's pricing practices.[5] If the Court were to reach out to its colleagues to ask about my previous performance and the ability to lead a case such as this one, I am confident the report would be favorable.

But I also recognize that favorable reports would issue for my esteemed fellow applicants regarding various cases, and that some would also be identified as having demonstrated the ability to lead a case of this magnitude. As Mr. Sobol states in his application, "the interests of the class members may be served by appointing Co-Lead Counsel, rather than a single Lead Counsel . . . ." (Dkt. No. 48 at 3.) On this point, I would agree with Mr. Sobol. As stated in my application, I believe that I have the ability, experience, and resources to be sole lead if the Court wishes to adhere to its initial inclination. But I also would be happy to share leadership with one or two co-leads or a small PSC. (I do think it very wise, however, for the Court to avoid a large structure such as that which evolved in *Anthem*. There, as the Court is no doubt aware, objections and inquiries are holding up resolution of the case, to the detriment of the class.)

In closing, I am ready and eager to get to work in this matter with a select group of well-suited and talented attorneys both from within my firm and outside it if the Court so orders. If appointed to leadership in this case, I pledge to serve effectively and efficiently.

Thank you again, your honor, for considering my application.

> Very truly yours,
>
> Steve W. Berman

---

[2] *In re Stericycle, Inc.*, 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013). As the court noted further: "In that respect District Judge James Selna went out of his way, at the windup of the case, in describing the settlement as truly extraordinary—indeed unique—in terms of the benefits conferred on the plaintiff class." *Id.* n.4.

[3] *See id.* The court was offered a "multilayered format" by other firms but declined it, noting that it "is not one that fosters efficiency—instead it tends to promote a duplication of effort via conferencing, as well as overlapping work assignments and other inefficiencies too often attendant on such a structure. And that of course inevitably tends to increase the lodestar figure without any corresponding increase in meaningful lawyer output." *Id.*

[4] At the preliminary approval hearing, Judge Shadur commended both sides for their "professionalism of the highest order" and commented that "the current submission [papers in support of plaintiffs' motion for preliminary approval of the class settlement] contains . . . an impeccable covering of all the necessary bases, demonstrating the type of high quality work product that this Court anticipated when it designated Hagens Berman and its lead partner Steve Berman as Class Counsel." *In re Stericycle, Inc.*, 2017 WL 4864874, at *1 (N.D. Ill. Oct. 26, 2017).

[5] Notice of Proposed Settlement of Class Action Involving Stericycle, Inc., available at http://www.stericycleclassaction.com/docs/LFN.pdf (last visited June 27, 2018).