Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LIMITED DISCOVERY**<br><br>Fed. R. Civ. P. 26(d)<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor<br>Hearing Date: August 23, 2018<br>Hearing Time: 10:00 a.m. |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF ALLEGATIONS .............................................................................2

III. LEGAL STANDARD ................................................................................................4

IV. ARGUMENT .............................................................................................................5

    A.     Discovery Should Not Be Stayed Because Facebook's Motion to Dismiss Is Unlikely to Succeed. ......................................................................................5

    B.     Plaintiffs' Requests for Targeted Discovery Should Be Granted. ..........................7

    C.     Courts Regularly Order Production of Limited Discovery Before a Consolidated Complaint Is Filed .........................................................................9

    D.     There Is Good Cause for Plaintiffs' Limited Requests for Documents and Information to Be Granted ...............................................................................10

V. CONCLUSION .........................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In Re: 21st Century Oncology Customer Data Security Breach Litig.*,
No. 8:16-md-2737-MSS-AEP (M.D. Fla. Nov. 18, 2016) ......................................................9

*In re Adobe Systems, Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014)....................................................................................6

*In re Anthem, Inc. Data Breach Litigation*,
No. 15-md-02617-LHK, 2015 WL 7874238 (N.D. Cal. July 31, 2015) ..........................4, 7, 8

*In re Anthem, Inc. Data Breach Litigation*,
No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...............................6

*In Re: Apple Inc. Device Performance Litig.*,
No. 18-md-02827-EJD (N.D. Cal. July 13, 2018) .................................................................7

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637, 2017 WL 4322823 (N.D. Ill. Sept. 28, 2017).........................................7

*In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*,
No. 3:17-md-02777-EMC (N.D. Cal. Aug. 9, 2017................................................................8

*Garcia v. Enter. Holdings, Inc.*,
No. 14-cv-596-SBA-KAW, 2014 WL 4623007 (N.D. Cal. Sept. 15, 2014).......................5, 6

*In re Google Inc. Gmail Litig.*,
No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ............................6

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990)..............................................................................................7

*Hatamian v. Advanced Micro Devices, Inc.*,
NO. 14-cv-00226-YGR (JSC), 2015 WL 7180662 (N.D. Cal. Nov. 16, 2015) .....................4

*In re High Tech Employee Antitrust Litig.*,
No. 5:11-cv-02509-LHK (N.D. Cal. Oct. 26, 2011) ..............................................................9

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
No. 16-md-2687-JLL-JAD (D.N.J. July 5, 2016)...................................................................9

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420-YGR, 2013 WL 2237887 (N.D. Cal. May 21, 2013) ...........................9, 10

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420-YGR (N.D. Cal. May 21, 2013) ............................................................7, 9

*Mandel v. Bd. of Tr. of Cal. State Univ.*,
No. 17-03511, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018) ..................................................6

*Nobelbiz, Inc. v. Wesson*,
No. 14CV0832 ......................................................................................................................5, 11

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*,
No. 5:16-cv-06370-EJD (N.D. Cal. Feb. 16, 2018) ...............................................................7

*In re Platinum & Palladium Commodities Litig.*,
No. 10-cv-3617-WHP (S.D.N.Y. Nov. 30, 2010) ..................................................................8

*In re Resistors Antitrust Litig.*,
No. 5:15-cv-03820-RMW (N.D. Cal. Feb. 2, 2016) ...............................................................9

*Semitool, Inc. v. Tokyo Elec. Am., Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) .........................................................................................10

*Singh v. Google, Inc.*,
16-cv-03734-BLF, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016)................................ 4, 5, 7

*Singh v. Google, Inc.*,
No. 16-cv-03734-BLF (N.D. Cal. Nov. 4, 2016) ...................................................................7

*In Re Sony Gaming Networks and Customer Data Security Breach Litigation*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ....................................................................................6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices &
Prods. Liab. Litig.*,
No. 8:10-md-02151 (C.D. Cal. June 1, 2010).........................................................................9

*In re Viagra (Sildenafil Citrate) Products Liability Litigation*,
No. 16-md-2691-RS (N.D. Cal. Sept. 26, 2016)....................................................................8

*In Re: Yahoo! Inc. Customer Data Security Breach Litigation*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..............................6

**Other Authorities**

Fed. R. Civ. P. 26(d)(1) ...............................................................................................................5

Fed. R. Civ. P. 26(f) ...............................................................................................................5, 10

Fed. R. Civ. Pro. 12(b)(6)............................................................................................................5

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, upon the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Limited Discovery; the Declaration of Derek W. Loeser in Support of Plaintiffs' Motion for Limited Discovery ("Loeser Decl."); and other papers and proceedings herein, the plaintiffs in the actions consolidated in this multidistrict litigation ("Plaintiffs") hereby move this Court for an order directing defendant Facebook, Inc. ("Defendant" or "Facebook") to produce the following limited discovery to Plaintiffs by August 31, 2018.

## STATEMENT OF RELIEF REQUESTED

Plaintiffs respectfully request an Order directing Facebook to produce the following limited discovery by August 31, 2018:

1. Information sufficient to identify all apps, app developers, and other third parties, in addition to Cambridge Analytica, that Facebook has identified as having accessed or obtained the Personal Data[1] of Facebook users.

2. Copies of any agreements between Facebook and each of the apps, app developers, and other third parties identified in Category 1, relating to the access, use, transmission, receipt, collection or analysis of Facebook users' Personal Data and identification of all consideration, including payments, received by Facebook, by quarter, arising out of each such agreement, from 2009 forward.

---

[1] As used herein, Personal Data refers to information about an individual that can be used to distinguish or trace an individual's identity, such as name, race, gender, orientation, education, compensation, social security number, date and place of birth, mother's maiden name, and biometric records, as well as information linked to that individual, including activities such as likes, shares, associations, relationships and status, as well as political, religious, financial data or emotions relating to receipt of news or advertisements.

3. For each of the apps, app developers, and other third parties identified in Category 1, a written description of each type of Personal Data, described categorically, that Facebook has identified as having been accessed or obtained.

4. For each of the apps, app developers, and other third parties identified in Category 1, information sufficient to identify how each app, app developer, and any other third parties accessed or obtained the Personal Data of Facebook users.

5. For each of the apps, app developers, and other third parties identified in Category 1, information sufficient to identify how each app, app developer, and any other third party used the Personal Data it accessed or obtained.

6. A copy of each version of each form of communication that in or since March 2018 has been transmitted to Facebook users relating to whether Facebook users' Personal Data was accessed or obtained by apps, app developers, and other third parties.

7. Reproductions of all documents provided to federal and state regulators in the United States, and regulators in the United Kingdom, in response to inquiries and investigations of the conduct alleged in the underlying complaints.[2]

---

[2] Investigations have been launched by Australia, Brazil, Canada, the European Commission, Germany, India, Indonesia, Italy, Mexico, Papua New Guinea, the Philippines, the Netherlands, Spain, France, and Belgium, in addition to sub-national inquiries by municipalities and state subdivisions of various nation states. By limiting this request to two investigations at this time, Plaintiffs here seek only the most pertinent documents at the core of the investigation of Facebook and Cambridge Analytica.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

This litigation was triggered by revelations in March 2018 that Cambridge Analytica, a company based in Britain, gained access to Personal Data of more than 50 million Facebook users, seeking to identify the personalities of voters and influence their behavior.  It has since become clear that numerous third parties have used the Facebook platform to collect the Personal Data of Facebook users, and even of non-Facebook users, on a wide-scale basis. Because this data was used to develop psychographic profiles—profiles that then can be used to influence the behavior of individuals—the data is potentially worth billions of dollars.

Thirty lawsuits are now consolidated before this Court.  The gravamen of the claims are consistent:  Facebook collected Plaintiffs' Personal Data and disseminated it to third parties and the public, without notice and in violation of any terms of agreement.

Indeed, Facebook has admitted, but only when forced by Congressional and international governmental inquiries, that it is investigating "thousands" of third parties who have had access to users' Personal Data. But Facebook has declined to identify those third parties publicly. Nor has Facebook informed the public what Personal Data has been accessed, how it has been used, or how much money Facebook has made thereby.

Accordingly, Plaintiffs seek discovery targeted to discover the identities and activities of the companies that are at the heart of this privacy litigation—information highly relevant to Plaintiffs' consolidated complaint and the anticipated motion-to-dismiss briefing. Plaintiffs ask for information that Facebook has largely already reviewed and collected, requiring little to no burden for Facebook to produce. Plaintiffs request this information to assess what steps need to be taken in the short term to protect the public from ongoing harm, to determine the scope of potential claims, and to begin discovery now so that this complex action may proceed expeditiously.

## II.      SUMMARY OF ALLEGATIONS

Facebook is an online social networking platform.  Users communicate with other persons of their choice by designating them as Facebook friends.  Users can control who can access their information, distinguishing among friends and the public, for example.  After agreeing to Facebook's terms of service and a code of conduct, among other requirements, users enter Facebook's closed environment.  On Facebook, users often share with their Facebook friends intimate details about their personal lives, and other biographical details that comprise crucial aspects of their identities, including affiliations and preferences in politics, religion, entertainment, and consumer products. This Personal Data can be monetized. Third parties that have paid Facebook to access this information include media companies, digital marketing companies, mobile carriers and other communication companies, leading manufacturers of consumer goods, hardware and software manufacturers, insurance companies, and any number of other companies. As the Cambridge Analytica scandal shows, Personal Data can be harvested by third parties and weaponized to manipulate users.

Facebook users provide their Personal Data conditioned upon assurances by Facebook that it will safeguard that information and share it only with the persons, entities, and groups to whom users consent. Facebook's January 2015 Data Use Policy, for example, states: "We do not share information that personally identifies you (personally identifiable information is information like name or email address that can by itself be used to contact you or identifies who you are) with advertising, measurement or analytics partners unless you give us permission."[3] In the wake of this scandal, CEO Mark Zuckerberg has repeatedly assured the public that Facebook cares about privacy, stating, for example, "[w]e have a responsibility to protect your data, and if we can't then we don't deserve to serve you."[4]

---

[3] Facebook, *Data Policy* (Jan. 30, 2015),
https://web.archive.org/web/20150304031737/https://www.facebook.com/full_data_use_policy.
[4] Sara Salinas, Zuckerberg on Cambridge Analytica: 'We Have a Responsibility to Protect Your Data, and If We Can't Then We Don't Deserve to Serve You," CNBC (Mar. 21, 2018, updated 5:14 PM ET), https://www.cnbc.com/2018/03/21/zuckerberg-statement-on-cambridge-

Despite these promises, Facebook sells users' PD to unidentified third parties.  Facebook has "data-sharing partnerships" with at least 60 makers of electronic devices, including Apple, Amazon, BlackBerry, Microsoft, and Samsung that allowed access to data of users' friends and non-Facebook users. These partnerships have affected millions of citizens, many of whom were unaware that their friends may have unwittingly provided access to their Personal Data.  In addition, Facebook allowed a great many software developers to obtain users' friends personal information, even where a user's profile was set to private.[5]

Moreover, Facebook apparently has not effectively monitored the Personal Data that they have permitted third-parties to access.  Facebook platform operations manager Sandy Parakilas told a British newspaper his "concerns were that all of the data that left Facebook servers to developers could not be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data." Mr. Parakilas also asserted that Facebook "did not use enforcement mechanisms, including audits of external developers, to ensure data was not being misused."[6]

Facebook has publicly identified only a few of the third parties that obtained access to Facebook users' Personal Data.  In June 2018, the Company admitted to Congress that "thousands of apps have been investigated and around 200 apps have been suspended pending a thorough investigation into whether they did in fact misuse any data."[7]

At least five U.S. state and federal regulatory and governmental entities have now launched investigations of Facebook:  the Department of Justice, the Federal Trade Commission

---

analytica.html.
[5] Gabriel J.X. Dane et al., Facebook Gave Device Makers Deep Access to Data on Users and Friends, N.Y. Times (June 3, 2018), https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html.
[6] Paul Lewis, *'Utterly Horrifying': Ex-Facebook Insider Says Covert Data Harvesting Was Routine*, The Guardian (Mar. 20, 2018 7:46 AM EDT), https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas.
[7] Ime Archibong, VP of Product Partnerships, *An Update on Our App Investigation and Audit* (May 14, 2018), https://newsroom.fb.com/news/2018/05/update-on-app-audit/.

("FTC"), a state Attorneys General task force, the Department of Housing and Urban

Development, and others.[8]  Facebook is also being investigated by the government of the United

Kingdom.[9]

### III.      LEGAL STANDARD

Where an action raises claims of irreparable ongoing harm, early revelation of the scope

and nature of a defendant's ongoing actions are critical. *In re Anthem, Inc. Data Breach*

*Litigation*, No. 15-md-02617-LHK, 2015 WL 7874238 (N.D. Cal. July 31, 2015) (permitting

discovery as soon as lead counsel was appointed). Facebook, however, seeks a blanket stay of all

discovery pending decisions on the motions to dismiss they intend to file.  Plaintiffs, on the other

hand, believe that—consistent with the Federal Rules and several decisions from this District—

discovery should commence, with certain documents and information produced immediately.

Since Facebook's position is that discovery should be halted in its entirety, Plaintiffs

suggest that it makes the most sense to evaluate this motion under the standard applicable to

stays of discovery. Under that standard, Facebook "carries the heavy burden of making a 'strong

showing' why discovery should be denied." *Singh v. Google, Inc.*, 16-cv-03734-BLF, 2016 WL

10807598, at *1 (N.D. Cal. Nov. 4, 2016) (citation omitted). That standard is consistent with the

more general principle that the party resisting discovery bears the burden of showing that

discovery should be limited. *E.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, NO. 14-cv-00226-

YGR (JSC), 2015 WL 7180662, at *1 (N.D. Cal. Nov. 16, 2015).

---

[8] *See* Cecilia Kang et al., *Facebook Faces Broadened Federal Investigations over Data and Privacy*, N.Y. Times (July 2, 2018), https://www.nytimes.com/2018/07/02/technology/facebook-federal-investigations.html; Dell Cameron, *Facebook Is Under Investigation for Alleged Housing Discrimination (Again)*, Gizmodo (Apr. 18, 2018 7:00 pm), https://gizmodo.com/hud-reopens-investigation-into-facebook-over-alleged-ho-1825371406; Elec. Privacy Info. Ctr., *State AGs Launch Facebook Investigation* (Mar. 26, 2018), https://epic.org/2018/03/state-ags-launch-facebook-inve.html;
[9] Kate Holton & Paul Sandle, *UK Investigates Facebook over Data Breach, to Raid Cambridge Analytica*, Reuters (Mar. 20, 2018 2:01 am), https://www.reuters.com/article/us-facebook-cambridgeanalytica/uk-investigating-facebooks-response-to-alleged-data-breach-idUSKBN1GW0WX?il=0.

Although this motion precedes a formal Rule 26(f) conference, Plaintiffs believe it makes less sense to evaluate it under the "good cause" standard applicable to pre-conference discovery motions since the conference can occur as soon as the Court orders it. *See* Fed. R. Civ. P. 26(d)(1); *Nobelbiz, Inc. v. Wesson*, No. 14CV0832 W (JLB), 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014); *see also* Fed. R. Civ. P. 26(f)(1) (directing the parties to "confer as soon as practicable"). Regardless, even if the "good cause" standard were to govern this motion, Plaintiffs amply meet it.

## IV.    ARGUMENT

### A.    Discovery Should Not Be Stayed Because Facebook's Motion to Dismiss Is Unlikely to Succeed.

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Singh v. Google, Inc.*, 16-cv-03734-BLF, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016) (internal quotation marks and citation omitted). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect"—instead, "such a notion is directly at odds with the need for expeditious resolution of litigation." *Id.* "However, a district court does have wide discretion in controlling discovery," but "[a] party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Id.* Such stays are the exception, not the rule.

In *Singh*, Judge Labson Freeman noted that courts in this district apply a two-part test "to determine whether discovery should be stayed pending resolution of a dispositive motion." *Id.* First, the party seeking a stay must show that its motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Id.* In addition, it must show that the motion "can be decided absent discovery." *Id.* The test is conjunctive:  if either prong is not satisfied, discovery must proceed. *Id.* For a motion to dismiss to be "dispositive" under this standard, Defendants must at least show that it is likely to be successful. *See Garcia v.*

*Enter. Holdings, Inc.*, No. 14-cv-596-SBA-KAW, 2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014) ("Defendants have not convinced the Court that their motion is meritorious or that it will otherwise be granted without leave to amend, which courts grant liberally," and therefore "the Court cannot conclude that the pending motion, … will be potentially dispositive of the entire case."). If leave to amend will likely be granted, a motion to dismiss will not be "dispositive." *Id.* at *2 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Res. Dev. Servs., Inc.*, No. C 10-1324, 2010 WL 3746290, at *1 (N.D. Cal. Sept. 18, 2010)). Because of this demanding legal standard, "a pending motion to dismiss does not typically stay discovery." *Mandel v. Bd. of Tr. of Cal. State Univ.*, No. 17-03511, 2018 WL 1242067, at *24 n.19 (N.D. Cal. Mar. 9, 2018).

Facebook's motion will not be "dispositive" under this standard because it is unlikely to prevail in its entirety and without opportunity for Plaintiffs to amend. The facts already known support claims not only of a widespread and egregious data breach, but also of Facebook's deliberate participation in collecting and disseminating highly personal information to third parties for profit and without informed consent. Plaintiffs' injuries are at least as significant as those in other data privacy cases in which plaintiffs were held to have standing and their pleadings were sustained. *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (holding plaintiffs to have standing and denying motion to dismiss Wiretap Act and CIPA section 631 claims); *In Re: Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) (holding plaintiffs to have standing and denying in part motion to dismiss UCL claims, and denying motion to dismiss claim for violation of implied covenant of good faith and fair dealing); *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) (holding plaintiffs to have standing and denying motion to dismiss CRA Section 1798.81.5, declaratory relief, and UCL injunction and restitution claims); *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) (denying motion to dismiss on standing grounds as well as motion to dismiss breach of contract and UCL claims); *In*

*Re Sony Gaming Networks and Customer Data Security Breach Litigation*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) (holding plaintiffs to have standing and denying motion to dismiss CLRA claims). Moreover, even in the unlikely event Defendants' motion to dismiss were granted, dismissal with prejudice would not be warranted. *Singh v. Google, Inc*., 2016 WL 10807598, at *1 ("[E]ven if Defendant were correct that Plaintiff's claims must be dismissed as alleged, the Court would consider whether leave to amend should be granted, rendering Google's motion not dispositive.").  A stay is not warranted here.

**B.      Plaintiffs' Requests for Targeted Discovery Should Be Granted.**

Besides the fact that Facebook cannot meet its burden of showing that a stay is appropriate, there are several other reasons that Plaintiffs' targeted discovery requests should be granted.

*First,* the modest discovery Plaintiffs seek is entirely consistent with "the Federal Rules' liberal discovery provisions" and "the need for expeditious resolution of litigation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Just as in other similar cases, discovery should go forward during the pendency of a motion to dismiss. *See Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, No. 5:16-cv-06370-EJD (N.D. Cal. Feb. 16, 2018), ECF No. 58 (denying motion to stay discovery during pendency of motion to dismiss) (Loeser Decl. Ex. B); *In re Anthem, Inc. Data Breach Litig.*, 2015 WL 7874238 (ordering that discovery commence immediately after the appointment of lead counsel); *Singh v. Google, Inc.*, No. 16-cv-03734-BLF (N.D. Cal. Nov. 4, 2016), ECF No. 41 (denying motion to stay discovery during pendency of motion to dismiss) (Loeser Decl. Ex. C); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR (N.D. Cal. May 21, 2013), ECF No. 200 (ordering limited discovery prior to resolution of motion to dismiss) (Loeser Decl. Ex. D); *In Re: Apple Inc. Device Performance Litig.*, No. 18-md-02827-EJD (N.D. Cal. July 13, 2018), ECF No. 163 (same) (Loeser Decl. Ex. E); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 WL 4322823 (N.D. Ill. Sept. 28, 2017) (ordering limited production of documents already produced

to the Florida Attorney General before resolution of any motions to dismiss); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617-WHP (S.D.N.Y. Nov. 30, 2010), ECF No. 59 (ordering defendants to produce 250,000 pages of documents already produced to government authorities before the decision on the motion to dismiss) (Loeser Decl., Ex. F).

   *Second,* in high-profile litigation alleging ongoing harm, as here, there is an even more acute need for early discovery. When presented with similar facts, courts in this District have directed discovery to proceed at the earliest stages of litigation.  *See In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, No. 3:17-md-02777-EMC (N.D. Cal. Aug. 9, 2017) (Loeser Decl. Ex. G); *In re Anthem, Inc. Data Breach Litigation*, 2015 WL 7874238 ("[D]iscovery will start in this case as soon as lead Plaintiffs' counsel has been appointed"); *In re Viagra (Sildenafil Citrate) Products Liability Litigation*, No. 16-md-2691-RS (N.D. Cal. Sept. 26, 2016) (ordering initial discovery "to conserve judicial resources, eliminate duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation") (Loeser Decl., Ex. H). Early discovery regarding the apps, app developers, and other third parties that improperly obtained or accessed Plaintiffs' personal information will not only assist the parties and the Court in framing the disputed issues, but will also help to identify as soon as possible how the Personal Data has been—and may still be—harvested and disseminated.  Counsel can then analyze whether and to what extent preliminary injunctive relief or other measures are needed to protect the Class.

   *Third,* limited discovery will allow Plaintiffs to determine whether to amend the complaint to add additional Defendants, define the scope of the class and determine which ancillary claims to pursue, if at all, and in what order, among other strategic decisions. Allowing Plaintiffs to make these determinations early on promotes efficiency and preserves judicial resources.

**C.    Courts Regularly Order Production of Limited Discovery Before a Consolidated Complaint Is Filed**

In complex litigation, courts commonly order the production of documents before a consolidated complaint is filed, especially documents already prepared or produced in connection with an investigation. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2013 WL 2237887, at *3–4 (N.D. Cal. May 21, 2013) (ordering production of documents previously made available to the DOJ or a grand jury ); *In re Resistors Antitrust Litig.*, No. 5:15-cv-03820-RMW (N.D. Cal. Feb. 2, 2016), ECF No. 112 (ordering production of documents previously produced to the DOJ prior to filing consolidated complaint) (Loeser Decl., Ex. I); *In re High Tech* Employee *Antitrust Litig.*, No. 5:11-cv-02509-LHK (N.D. Cal. Oct. 26, 2011), ECF No. 88 (ordering production of document previously produced to the DOJ prior to filing of amended complaint) (Loeser Decl., Ex. J); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, No. 8:10-md-02151 (C.D. Cal. June 1, 2010), ECF No. 180 (ordering production of 75,000 to 100,000 pages of documents produced to governmental entities prior to the filing of the consolidated complaint) (Loeser Decl., Ex. K); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL-JAD (D.N.J. July 5, 2016), ECF No. 209 (order by Magistrate Judge Dickson requiring production of DOJ documents prior to filing amended consolidated complaint) (Loeser Decl., Ex. L); *In Re: 21st Century Oncology Customer Data Security Breach Litig.*, No. 8:16-md-2737-MSS-AEP (M.D. Fla. Nov. 18, 2016), ECF No. 81 (ordering production of internal investigative report as well as other documents and information prior to filing consolidated complaint) (Loeser Decl., Ex. A).

As in *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420-YGR, 2013 WL 2237887 (N.D. Cal. May 21, 2013), Facebook has argued "that discovery is premature[,] as there is no operative complaint from which to gauge the relevance of a discovery request," and also that the Rules "do not countenance pre-complaint discovery." *Id.* at *2. For the same reasons as in *In re Lithium Ion Batteries*, this argument should be rejected. Given that approximately 30 complaints have been consolidated in this multidistrict litigation—each premised on substantially

similar allegations and numerous overlapping claims—it is not credible for Facebook to argue "that there are no pleadings from which to measure the relevance of the requested discovery or that the Plaintiffs are seeking pre-complaint discovery." *Id.* Facebook is well aware of the core allegations in the underlying complaints, having already testified to Congress about its transgressions and apologized for breaching its customers' trust in numerous U.S. and international forums.

The notion that Facebook does not know enough about Plaintiffs' claims also conflicts with its argument, previewed twice already before this Court, that it will defeat those claims in their entirety based on its standing and other arguments. That contradiction aside, resolving this discovery motion does not require this Court to resolve a future, not yet filed motion to dismiss, particularly when so much about Facebook's actions have yet to be revealed. *Cf. Lithium Ion Batteries*, 2013 WL 2237887, at *3 ("With no motion to dismiss pending, it is premature to disallow discovery on the basis that a yet-to-be filed complaint may fail to state a plausible claim for relief.")

## D.      There Is Good Cause for Plaintiffs' Limited Requests for Documents and Information to Be Granted

As Plaintiffs have noted, this motion should be evaluated under the standard for discovery stays rather than the standard for pre-conference discovery. Even if that standard applies, however, Plaintiffs satisfy it.

A "good cause" standard applies to discovery that precedes a Rule 26(f) conference. *Semitool, Inc. v. Tokyo Elec. Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). In evaluating whether good cause exists to grant expedited discovery, courts consider whether the request is "reasonable," and balance the need for the discovery to prejudice to the responding party. *Id.* When evaluating reasonableness and good cause, courts commonly consider five factors: "(1) Whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [party opposing expedited

discovery] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Nobelbiz*, 2014 WL 1588715, at *1.

As to the first good-cause factor, while there is no motion for preliminary injunction pending, this is case involving irreparable harm, as discussed above.  Regarding the second and third good-cause factors, these requests are narrowly tailored to what Plaintiffs do not know, but wish to know, before filing a pleading.  Category 1 seeks the identity of apps, app developers, or other third parties.  This request relates to the scope of injury to potential class members, as well as the identity of potential Doe Defendants.  Categories 2, 4, and 5 seek agreements between and among Facebook and third parties and ask how third parties accessed and used Personal Data, address whether disclosure of Plaintiffs' Personal Data was deliberate or negligent, and also have some bearing on the issues of economic value, disclosure, intent, and the extent of the intrusion into privacy, among other issues.  Category 3 requests express identification of the Personal Data compromised, also highly relevant to the nature and scope of injury.  To address ongoing harms, assess imminent threats and any admissions Facebook may have made, Category 6 seeks communications to Facebook users. Category 7, finally, seeks documents that Facebook has provided to a limited subset of governmental and regulatory authorities arising from the Cambridge Analytica revelations, which by nature are highly relevant.

As to the fourth good-cause factor, the requests seek information that Facebook has either (a) already identified, or (b) already produced to a governmental or regulatory authority. There is no burden associated with the production of documents already collected. Any concerns about confidentiality can be addressed by a Protective Order, which the parties are endeavoring to reach agreement upon. Finally, on the fifth good-cause factor, requests for this kind of discovery are not only typical but routinely granted.

Perhaps most fundamentally, by enabling Plaintiffs to integrate highly relevant information into their consolidated complaint, the discovery would enable any motion to dismiss to be decided based on more rather than less information. This would allow this litigation to

proceed more speedily than otherwise and potentially allow the parties to avoid having to amend the complaint to add information that could have been included in the first place, and then having to brief a second motion to dismiss. Plaintiffs' Limited Requests are reasonable and impose minimal burden on Facebook.  For these and the other reasons discussed above, good cause exists to provide the discovery requested by Plaintiffs at this time.

## V.      CONCLUSION

Granting the limited discovery sought by Plaintiffs would serve the interests of sound case management and judicial efficiency. Plaintiffs therefore respectfully request that the Court order Facebook to provide the requested categories of discovery by August 31, 2018.

Dated: August 8, 2018

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By:  */s/ Derek W. Loeser*
        Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

BLEICHMAR FONTI & AULD LLP

By:  */s/ Lesley E. Weaver*
        Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
Emily C. Aldridge (SBN 299236)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com
ealdridge@bfalaw.com

*Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of August, 2018, at Seattle, Washington.

*/s/ Derek W. Loeser*
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on August 8, 2018, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Derek W. Loeser*
Derek W. Loeser
