# Exhibit L

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Chambers of
**Joseph A. Dickson**
United States Magistrate Judge

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973-645-2580)

## LETTER ORDER

July 5, 2016

*All counsel of record via ECF*

**Re:  In re Liquid Aluminum Sulfate Antitrust Litigation**
      **No. 16-MD-2687 (JLL) (JAD)**

Counsel:

There are multiple preliminary discovery and case management issues pending before the Court: (1) the parties' dispute regarding whether Defendants should be made to provide Plaintiffs' counsel with documents Defendants previously produced to the United States Department of Justice ("DOJ") in connection with a government investigation; (ECF Nos. 140, 141, 144, 149, 168, 175, 183, 187); (2) a proposed stipulation, entered into by the DOJ and counsel for Plaintiffs, that would impose a partial stay of discovery for a period of nine months; (ECF No 167); (3) Defendants Brian Steppig and Vincent Opalewski's joint motion to stay this matter as to them pending resolution of a parallel criminal proceeding (and a proposed stipulation resolving that motion); (ECF Nos. 148, 152, 155, 170, 172, 173, 176); and (4) the parties' dispute regarding whether the Court should enter a preservation order in this matter. (ECF Nos. 178 and 179). Most of these matters have become, to some extent, interrelated and the Court will resolve them simultaneously.

## I. The Status of Discovery and Plaintiffs' Request for Documents that Defendants Previously Provided to the Government

This case is still in its relative infancy and remains in the pleadings phase. Plaintiffs are required to file a consolidated amended complaint on or before July 19, 2016. (ECF No. 153). Defendants are required to "answer or otherwise move with respect to the consolidated amended complaint on or before 60 days after a consolidated amended complaint is filed." (March 9, 2016 Order at 2, ECF No. 72). Defendants anticipate filing motions to dismiss that amended pleading, and the parties disagree as to whether the Court should permit any discovery until the pleadings have become fixed.

The parties' dispute centers on Plaintiffs' request that the Court immediately compel Defendants to turn over any documents that Defendants previously produced to the DOJ in response to certain subpoenas (the "Government Productions"). (Pl.'s April 22, 2016 Letter at 1, ECF No. 149) ("Plaintiffs are not suggesting going forward with full-blown discovery at this time. What we are requesting is to simply produce another copy of what [Defendants] have already produced to the Government.").[1] Defendants' argument against providing Plaintiffs with copies of the Government Productions is narrow, and now focuses exclusively on whether Plaintiffs are entitled to any discovery prior to the District Court's resolution of Defendants' potential motions to dismiss Plaintiffs' forthcoming consolidated amended complaint. (See, e.g., Tr. of April 26, 2016 Conf. at 13:23-15:5).

---

[1] The Court notes that, during the March 3, 2016 conference in this matter, Plaintiffs also suggested that the parties proceed with full discovery as soon as Plaintiffs file their consolidated amended pleading. (Tr. of March 3, 2016 Conf. at 10:14-7; 11:22-24, ECF No. 130). The Court will address the propriety of such discovery below.

2

While it appeared, at one time or another, that Defendants may have had certain other arguments against turning over their Government Productions, those issues have since been resolved. For instance, during the March 3, 2016 conference in this matter, the Court recognized that the DOJ might have confidentiality concerns given the nature of the subpoenas in question. (Tr. of March 3, 2016 Conf. at 27:25-28:4, ECF No. 130). Plaintiffs have since advised, however, that they conferred with the DOJ on that issue, and the DOJ indicated that it did not oppose the Defendants' provision of their Government Productions to Plaintiffs in this case. (Pls.' April 14, 2016 Letter, ECF No. 141). The Court further acknowledges that, by letter dated April 19, 2016, certain Defendants requested that they "be permitted to make confidential submissions regarding the Government Productions prior to any order regarding discovery." (Defs.' April 19, 2016 Letter at 3, ECF No. 144). Counsel for Kemira Chemicals, Inc. reiterated that request during the April 26, 2016 conference in this matter. (Tr. of April 26, 2016 Conf. at 19:23-20-4) (noting that, if the Court decides to "have all defendants consider producing their documents, Kemira and I'm sure the other defendants are more than willing to meet with [the Court] . . . to make sure you understand the scope of the production, et cetera."). The Court advised that it would like to "have those meetings in the context of this issue obviously, because we're running up on the clock a little bit now", (id. at 20:19-21), and directed that defense counsel could set up such a meeting either by identifying themselves at the conference or by contacting chambers *ex-parte* (Plaintiffs' counsel having no objection). (Id. at 20:11-18). To date, only one Defendant, Geo Specialty Chemicals (which, the Court understands, has already provided certain documents to Plaintiffs) requested such a meeting. To the extent that Defendants have concerns regarding the size or scope of their

3

Government Productions or, in fact, any issue <u>other</u> than the traditional timeframe for discovery, they have not brought them before the Court. Finally, to the extent that any Defendant contended that provision of the Government Productions would subject them to a significant burden (an unlikely proposition, considering that Defendants have already assembled all of the materials in question in connection with the DOJ's investigation), the Court would certainly have considered such an argument. No Defendant has done so and, in fact, one Defendant, Kemira Chemicals, Inc., has explicitly disclaimed such a position. (<u>Id.</u> at 13:23-14:2) ("Your Honor, it's not a burden issue and we're not making a burden argument. But it has to do with the proper staging of litigation and at what point do the plaintiffs and their lawyers have a right to access our files."). Having addressed these potential concerns, the Court will turn to Defendants' argument regarding the timing of Plaintiffs' requested productions.

As noted above, Defendants anticipate filing motions to dismiss Plaintiffs' forthcoming consolidated amended complaint, and contend that the parties should not engage in discovery of any kind (including provision of the already compiled Government Productions) until after the District Court has resolved those motions. The Court may, in its discretion, stay discovery during the pendency of a motion to dismiss. <u>See</u> <u>In re Orthopedic Bone Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 365 (3d Cir. 2001). Such stays, however, are neither automatic nor mandatory. While this Court is mindful of the Court of Appeals' guidance that motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) "should typically 'be resolved before discovery begins,'" <u>Levey v. Brownstone Inv. Group, LLC</u>, 590 F. App'x 132, 137 (3d Cir. 2014) (quoting <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997)), that concern is most applicable in

4

situations where a pleading contains limited factual information and the plaintiff seeks to use the discovery process as a "fishing expedition" to try to manufacture a cause of action, id. ("Given what little the complaint tells us, there is nothing reasonable about Levey's expectation that taking discovery would reveal any infringement . . . Indeed, 'were we to reverse the dismissal to here to allow for discovery,' all we would be doing would be providing [him] the opportunity 'to conduct a fishing expedition in order to find a cause of action.'") (citations omitted), and is particularly acute in cases where the costs of discovery figure to be massive (e.g., antitrust cases). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558-560 (2007).

The Court does not believe that Plaintiffs seek discovery as part of a "fishing expedition" intended to uncover a previously unknown cause of action. Indeed, the Court understands that multiple defendants have either pled guilty or sought leniency from the government regarding the very misconduct Plaintiffs allege. Two individual Defendants are currently involved in a related criminal proceeding pending in this District. While the Court is not making any findings regarding the potential merit of either Plaintiffs' forthcoming amended pleading or Defendants' anticipated motions to dismiss, it appears that Plaintiffs' claims may very well survive, in some form, past the pleadings phase. The Court also recognizes, however, that many Defendants have not admitted to wrongdoing, that certain of Plaintiffs' claims may be subject to dismissal, and that this case is likely to involve the sort of extensive discovery costs that the Supreme Court envisioned in Twombly. The Court has, therefore, declined to endorse the "stipulation" (not signed by any defendant in this case) that Plaintiffs entered into with the DOJ providing for a partial stay of discovery. (ECF No. 167). Plaintiffs' proposed stay, which would curtail interrogatories and

depositions but permit full document discovery, (id.), is akin to no stay at all, as much, if not most, of the discovery expenses in this matter, at least in the initial stages, will be related to document discovery. This Court is also mindful of the importance of protecting "the integrity of parallel criminal prosecutions involving common legal and factual issues," as the DOJ and Plaintiffs articulated in their joint letter dated May 17, 2016. (ECF No. 167). This Court, in its discretion, therefore finds that the parties shall not conduct <u>any</u> discovery in this matter, <u>other than that expressly permitted in this Letter Order</u>, pending further Order of the Court.

The Court's concerns regarding the timing, scope, and expense of discovery in this matter (i.e., the same concerns the Supreme Court articulated in <u>Twombly</u>) do not apply with regard to the Government Productions. As Defendants have already compiled that material and produced it to the DOJ, there would be little burden (in effort or expense) associated with making a second copy and producing it to Plaintiffs' counsel. Defendants have not raised any other persuasive arguments in opposition to production. Similarly, the Court is not concerned that allowing Plaintiffs access to the Government Productions will impede any ongoing criminal investigations, as the DOJ has advised that it has no objection to such dissemination. (Pls.' April 14, 2016 Letter, ECF No. 141). Therefore, while the Court will not permit the parties to engage in full discovery, it will require all Defendants (other than Defendants Brian Steppig and Vincent Opalewski) to turn a copy of their Government Productions, if any, over to lead counsel for Plaintiffs.

The Court must first, however, address Plaintiffs' obligation to update the Court regarding the status of their review of documents Plaintiffs previously received from certain Defendants. As multiple Defendants pointed out in their letter dated May 31, 2016, (ECF No. 175), this Court

6

acknowledged, during the April 26, 2016 conference in this matter, that Plaintiffs had already received approximately two million pages of documents. (Tr. of April 26, 2016 Conf. at 24:2-7). The Court directed Plaintiffs to review those documents and to "see whether there's more forthcoming information from the ACPERA discussions", and observed that "[Plaintiffs] may not need [the Government Productions] to build [their] new complaint." (Id.). By letter dated June 10, 2016, Plaintiffs argued that "the Court did not . . . 'instruct Plaintiffs to review those [previously produced] documents to help determine if, in fact, further production of documents by other defendants is necessary or appropriate.'" (ECF No. 183 at 1) (citation omitted). Plaintiffs are mistaken. That is precisely what the Court directed Plaintiffs to do. (Tr. of April 26, 2016 Conf. at 24:2-7). In any case, the Court did not set a deadline for Plaintiffs to provide that analysis and the Court is mindful that, given the size of the document production in question, it would take a significant amount of time for Plaintiffs to review and digest that information. More importantly, upon further reflection, the Court believes that such a report would be of little utility. Obviously, Plaintiffs' counsel can only speculate as to whether additional, relevant information might be contained in Defendants' Government Productions, or to what extent such information might assist Plaintiffs in drafting their amended pleading. Plaintiffs' counsel would therefore necessarily seek to obtain as much information as possible before filing that pleading, essentially rendering the requirement that Plaintiffs submit a status report expressly reiterating their production request a formality. Therefore, while the Court finds that Plaintiffs failed to comply with the directive to advise the Court regarding their review of the approximately two million pages of documents Plaintiffs' already received in connection with this matter, this does not alter the Court's

7

conclusion. All Defendants (other than Defendants Brian Steppig and Vincent Opalewski) shall turn a copy of their Government Productions, if any, over to lead counsel for Plaintiffs **on or before July 15, 2016.**

## II. Defendants Steppig and Opalewski's Motion to Stay

On April 25, 2016, individual Defendants Brian Steppig and Vincent Opalewski filed a joint motion seeking "to stay [this] litigation as to them until the resolution of the parallel criminal case against them currently pending [in this District] . . . *United States v. Vincent Opalewski and Brian Steppig*, Case No. 2:16-cr-0065 (D.N.J.)." (Motion to Stay at 1, ECF No. 152). To date, no party has filed any opposition to that motion. Indeed, by letter dated June 2, 2016 Plaintiffs' lead counsel submitted a proposed stipulation (signed by counsel for Plaintiffs and counsel for Defendants Steppig and Opalewski) to address that motion by, among other things, staying all litigation as to Defendants' Steppig and Opalewski for a period of nine months. The Court cannot, however, endorse that proposed stipulation in its current form as it: (1) relies on and is intertwined with the proposed, partial stay of discovery that Plaintiffs and the DOJ presented to the Court. (ECF No. 167). As noted above, the Court has rejected that proposal; and (2) would result in the motion to stay remaining unadjudicated on the Court's docket indefinitely.

Instead, mindful of the agreement between Plaintiffs and Defendants Steppig and Opalewski to stay all litigation against those Defendants for a period of nine months, and considering that no other party has filed any response to the motion to stay, this Court crafts the following resolution: First, this civil litigation is completely stayed as to Defendants Steppig and Opalewski through and including March 31, 2017. Second, prior to the expiration of the stay, the

8

parties shall meet and confer to discuss whether the stay should continue, and Defendants Steppig and Opalewski may make an application, whether on consent or otherwise, to continue the stay. Third, if the parallel criminal proceeding against them should resolve prior to March 31, 2017, Defendants Steppig and Opalewski shall so advise the Court. Finally, any party shall have the right to make an application to terminate or modify the stay.

### III. Plaintiffs' Request for Entry of a Preservation Order

By Order dated February 16, 2016, (ECF No. 2), the Hon. Jose L. Linares, U.S.D.J. reminded the parties "of their duty to preserve evidence that may be relevant to this action," confirmed that "[a]ny evidence preservation order previously entered in any of the transferred actions shall remain in full force and effect until further order of the Court", and directed the parties to "take reasonable steps to preserve all evidence that may be relevant to this litigation" "[u]ntil the parties reach an agreement on a preservation plan or the Court orders otherwise." (Id. at 5). By letter dated June 8, 2016, Plaintiffs advised that they prepared a proposed preservation order and that the parties engaged in a meet and confer to discuss its terms. (Pls.' June 8, 2016 Letter at 1, ECF No. 178). Plaintiffs contend that Defendants refused to meaningfully participate in those discussions, and that Defendants indicated "they would reevaluate their refusal to discuss any plan after Plaintiffs file a Consolidated Amended Complaint." (Id.). Plaintiffs argue that "[a]bsent the immediate entry of [Plaintiff's proposed order] . . . it may be too late to stop the destruction of evidence that could easily have been preserved had the parties discussed the issue." (Id. at 2).

In their response dated June 9, 2016, certain Defendants argued that Plaintiffs' proposed preservation order was unnecessary (as Defendants have already taken adequate steps to preserve

9

potentially relevant documents, as explained in Paragraph E of the parties' February 25, 2016 Joint Status Update (ECF No. 3)), premature (as Plaintiffs have not yet filed their consolidated amended pleading), and unfairly overbroad and one-sided. (See generally Defs.' June 9, 2016 Letter, ECF No. 179).

The Court starts with the basic premise that parties have an ongoing obligation to preserve potentially relevant information, regardless of whether a court separately orders preservation or the litigants work out a mutually agreeable preservation protocol. See Fed. R. Civ. P. 26(f)(2); L. Civ. R. 26.1(d)(3)(a); see also, e.g., Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 336 (D.N.J. 2004) ("Samsung had notice that this litigation had begun and therefore had an affirmative obligation to preserve potentially relevant evidence, including technical e-mails."). "This obligation, backed by the court's power to impose sanctions for the destruction of such evidence, is sufficient in most cases to secure the preservation of relevant evidence." Young v. Facebook, Inc., No. 10-cv-3579 (JF), 2010 WL 3564847, *1 (N.D. Cal. Sept. 13, 2010). The entry of a separate preservation order is, therefore, the exception rather than the rule.

The Court notes that the United States Court of Appeals for the Third Circuit has not yet addressed the factors a court should consider when determining whether to enter a discovery preservation order. Case law from various District Courts that have considered the issue, however, provides helpful guidance and reveals a common theme: the party requesting the order must establish its necessity.

For instance, in Capricorn Power Co., Inc. v Siemens Westinghouse Power Corp., 220 F.R.D. 429 (W.D. Pa 2004), the United States District Court for the Western District of

10

Pennsylvania created a three-factor balancing test for use "when deciding a motion to preserve documents, things and land." Id. at 433. Specifically, the Capricorn Power court found it necessary to consider:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

Id. at 433-34. The Western District of Pennsylvania formed this test "by molding the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery." Id. at 433. The United States District Court for the Northern District of California has adopted an essentially identical test. Bright Solutions for Dyslexia, Inc. v. Doe 1, No. 15-cv-1618 (JSC), 2015 WL 5159125, *2 (N.D. Cal. Sept. 2, 2015). In Am. LegalNet, Inc. v. Davis, 673 F. Supp. 2d 1063 (C.D. Cal. 2009), the United States District Court for the Central District of California resolved an application for a preservation order by applying a "streamlined two-pronged standard that 'requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome.'" Id. at 1071-72 (quoting Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 135-36 (2004)). The United States District Court for the Northern District of Indiana has described preservation orders as "'injunctive remed[ies]'" that are only appropriate "upon an adequate showing that equitable relief is warranted.'" Chandler v. Buncich, No. 12-cv-175, 2012 WL 4343314, *2 (N.D. Ind. Sept. 22, 2012) (quoting In re African-American Slave Descendants'

11

Litig., No. 02-cv-2264, 2003 WL 24085346, *2 (N.D. Ill. July 15, 2003)). The Chandler court went on to note that "'[i]n making this determination, the court considers: 1) whether [the movant] can demonstrate that [the non-movant] will destroy necessary documentation without a preservation order; 2) whether [the movant] will suffer irreparable harm if a preservation order is not entered; and 3) the burden imposed upon the parties by granting a preservation order.'" Id. (quoting In re African-American Slave Descendants' Litig., 2003 WL 24085346 at *2). As noted above, the common theme running through each of these tests is that the party seeking a preservation order must make an affirmative showing establishing that the order is necessary.

This Court finds that the Capricorn Power court's three-factor test strikes an appropriate balance in that it requires the moving party to establish the need for a preservation order but also maintains the level of judicial discretion and flexibility necessary for effective case management. Indeed, the Court notes that one Judge in this District previously applied that test in resolving a motion to preserve documents and other information. LaSala v. Marfin Popular Bank Pub. Co., No. 09-cv-968 (JAP), 2009 WL 2449902, at *2 (D.N.J. Aug. 7, 2009) (Arpert, U.S.M.J.). Here, the Court's application of the Capricorn Power test is straightforward, as Plaintiffs have not made a sufficient showing regarding why a preservation order is necessary in this case. Plaintiffs have not presented any facts that would give the Court concern "for the continuing existence and maintenance of the integrity of the evidence in question,"[2] Capricorn Power, 220 F.R.D. at 433, or

---

[2] Plaintiffs simply articulate their "fear" that "[a]bsent the immediate entry of [their proposed order] . . . it may be too late to stop the destruction of evidence that could easily have been preserved had the parties discussed the issue." (Pls.' June 8, 2016 Letter at 2, ECF No. 178). Plaintiffs do not identify any basis for their concern.

12

that they might face some irreparable harm in the event the Court declines to enter a preservation order. Id. Indeed, the Court notes that Judge Linares has already Ordered both parties to "take reasonable steps to preserve all evidence that may be relevant to this litigation." (Feb. 16, 2016 Order at 5, ECF No. 2). Plaintiffs have not addressed why another, more detailed order is necessary at this point. As Plaintiffs have not met their burden, their application for a preservation order is **DENIED WITHOUT PREJUDICE**.

While the record for this matter cannot currently justify the entry of a detailed preservation order, the Court believes that a protocol that sets forth the litigants' preservation obligations would benefit all parties. The Court will therefore Order the parties to meet and confer in good faith regarding the preparation of an appropriate preservation protocol (not Order) for this matter. The Court reminds the parties that, regardless of whether they are, in fact, able to create a mutually agreeable protocol or whether the Court enters a preservation Order at some later date, the parties are already subject to an existing, affirmative obligation to preserve relevant information, in accordance with both Judge Linares's February 16, 2016 Order and governing case law. See, e.g., Nissan World, LLC v. Mkt. Scan Info. Sys., No. 05-cv-2839 (MAH), 2014 U.S. Dist. LEXIS 59902, *62, n. 10 (D.N.J. Apr. 30, 2014) ("A litigant is 'under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation'") (quoting Scott v. IBM Corp., 196 F.R.D. 233, 249 (D.N.J. 2000)). To the extent any party discards, destroys or otherwise loses such information, it acts at its own peril.

13

## IV. CONCLUSION

Based on the foregoing, it is on this 5th day of July, 2016,

**ORDERED** that, on or before July 15, 2016, all Defendants (other than Defendants Steppig and Opalewski), shall provide Plaintiffs' lead counsel with a copy of their Government Productions, if any; and it is further

**ORDERED** that Plaintiffs' informal request that the Court Order a partial stay of discovery in this matter (in a form agreed by Plaintiffs and the DOJ), (ECF No. 167), is **DENIED**; and it is further

**ORDERED** that all discovery, other than certain Defendants' provision of a copy of their Government Productions to Plaintiffs' lead counsel, is hereby stayed pending further Order of the Court; and it is further

**ORDERED** that Defendants Steppig and Opalewski's Motion to Stay, (ECF No. 152), is **GRANTED IN PART AND DENIED IN PART**. This civil litigation is completely stayed as to Defendants Steppig and Opalewski through and including March 31, 2017. Prior to the expiration of the stay, the parties shall meet and confer to discuss whether the stay should continue, and Defendants Steppig and Opalewski may make an application, whether on consent or otherwise, to continue the stay. If the parallel criminal proceeding against them should resolve prior to March 31, 2017, Defendants Steppig and Opalewski shall so advise the Court. Any party shall have the right to make an application to terminate or modify the stay; and it is further

**ORDERED** that Plaintiffs' informal request that the Court enter a discovery preservation order in this matter, (ECF No. 178), is **DENIED WITHOUT PREJUDICE**; and it is further

14

**ORDERED** that the parties shall meet and confer in an attempt to reach a mutually agreeable protocol for the preservation of potentially relevant information.

**SO ORDERED**

*[signature]*

**JOSEPH A. DICKSON, U.S.M.J.**

cc:  Hon. Jose L. Linares, U.S.D.J.