# EXHIBIT 5

| | |
|---|---|
| Clayeo C. Arnold, California SBN 65070<br>Email: carnold@justice4you.com<br>Joshua H. Watson, California SBN 238058<br>Email: jwatson@justice4you.com<br>**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORPORATION**<br>865 Howe Avenue<br>Sacramento, California 95825<br>916-777-7777 Telephone<br>916-924-1829 Facsimile | STEVEN W. TEPPLER (Pro Hac Vice to be filed)<br>Fla. Bar No. 14787<br>steppler@abbottlawpa.com<br>**ABBOTT LAW GROUP, P.A.**<br>2929 Plummer Cove Road<br>Jacksonville, FL 32223<br>T: 904.292.1111<br>F: 904.292.1220 |

John A. Yanchunis (Pro Hac Vice to be filed)
Patrick A. Barthle II (Pro Hac Vice to be filed)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813/223-5505
813/223-5402 (fax)
*jyanchunis@ForThePeople.com*
*pbarthle@ForThePeople.com*

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lauren Price on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>  v.<br><br>Facebook, Inc., and Cambridge Analytica,<br><br>                      Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

      Plaintiff Lauren Price, on behalf of herself and all others similarly situated, alleges the following against Defendants Facebook, Inc. ("Facebook") and Cambridge Analytica

("CA") ("Defendants"), based on personal knowledge as to Plaintiff and Plaintiff's own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's undersigned counsel:

## SUMMARY OF THE CASE

1. Facebook operates a social networking website that allows people to communicate with their family, friends, and coworkers. Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos. Facebook users have the ability to share and restrict information based on their own specific criteria. By the end of 2017, Facebook had more than 2.2 billion active users. The company's mission is "to give people the power to build community and bring the world closer together. People use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them."

2. Cambridge Analytica is a privately held company that combines data mining and data analysis with strategic communication for use in the electoral process.

3. As part of the sign up process and while interacting with the network, Facebook users create profiles containing significant amounts of personal information, including their name, birthdate, hometown, address, location, interests, relationships, email address, photos, and videos, amongst others, referred to herein as Personal Information.

4. This case involves the absolute disregard with which Defendants have chosen to treat Plaintiff's Personal Information. While this information was supposed to be protected, and used for only expressly disclosed and limited purposes, CA, without authorization, or by exceeding whatever limited authorization it, or its agents, had, improperly collected the Personal Information of nearly 50 million Facebook users. Facebook, for its part, knew this improper data aggregation was occurring and failed to stop it, or actively avoided discovering such knowledge in order to profess supposed ignorance. Plaintiff brings this suit to protect her privacy interests and those of the class.

# JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Facebook to permit the information aggregation and CA's collection of the information..

# PARTIES

**A. Class Representatives**

7. Plaintiff Lauren Price is a citizen and resident of Maryland. Plaintiff has held a Facebook account for approximately eight years. Plaintiff recalls that during the 2016 Presidential election, she was frequently targeted with political ads while using Facebook.

**B. Defendants**

8. Facebook is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

9. Cambridge Analytica ("CA") is a privately held company that combines data mining and data analysis with strategic communication for the electoral process. CA was created in 2013 by its British parent company SCL Group, Limited, and Robert Mercer, reported to be a "secretive hedge fund billionaire" participating in American politics. The Mercer family, known for its far-right conservative positions, reportedly invested millions of dollars in the company, and Rebekah Mercer (Robert Mercer's daughter) sits on CA's Board

of Directors.[1] CA co-founder Christopher Wylie stated the company's mission as: "[they] want to fight a culture war in America."[2] The CA website discloses that it has offices in Washington, DC and in New York[3], but upon information and belief, it is neither registered to do business nor is licensed to conduct business in either jurisdiction. In 2015, CA became known as the data analysis company retained by the Ted Cruz presidential primary campaign, but after that campaign faltered in 2016, CA worked for the Donald Trump presidential campaign.[4] An interview with CA's CEO (Alexander Nix) confirms that the Trump campaign paid for CA's services and that then-candidate Trump was "a good businessman."[5].

## FACTUAL BACKGROUND

10. On March 17, 2018, both the *New York Times* and *The Guardian* reported on CA's use of Personal Information obtained from Facebook without permission, and under the pretext of claiming to be collecting and using it for academic purposes. The reports revealed that Cambridge Analytica, a firm brought on by the Trump campaign to target voters online, used the data of 50 million people obtained from Facebook without proper disclosures or permission. The report further stated, in part

> **[T]he firm harvested private information from the Facebook profiles of more than 50 million users without their permission**, according to former Cambridge employees, associates and documents, making it one of the largest data leaks in the social network's history. The breach allowed the company to exploit the private social media activity of a huge swath of the American electorate, developing techniques that underpinned its work on President Trump's campaign in 2016.
> ***
> **But the full scale of the data leak involving Americans has not been previously disclosed — and Facebook, until now, has not acknowledged it**. Interviews with a half-dozen former employees and contractors, and a review of the firm's

---

[1] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump
[2] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html
[3] https://cambridgeanalytica.org/
[4] https://en.wikipedia.org/wiki/Cambridge_Analytica
[5] https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/#674008da535f

4
Class Action Complaint

emails and documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.

(Emphases added.)

11. CA did this by posting a survey app on Facebook called "MyDigitalLife," in 2014. Billed as a "research app used by psychologists" and designed by a Cambridge academic, it promised to help users better understand their own personalities.

12. Approximately 270,000 people downloaded MyDigitalLife, giving Cambridge Analytica a backdoor to their data and that of all their friends, more than 50 million other people who, according to Facebook, "had their privacy settings set to allow it."[6]

13. A former contractor with Cambridge Analytica, Christopher Wylie, revealed how the data mining worked: "With their profiles, likes, even private messages, [Cambridge Analytica] could build a personality profile on each person and know how best to target them with messages."[7]

14. Mr. Wylie stated that he had receipts, invoices, emails, legal letters and records that "showed how, between June and August 2014, the profiles of more than 50 million Facebook users had been harvested."[8] These profiles "contained enough information, including places of residence, that [CA] could match users to other records and build psychographic profiles."[9]

15. In effect, CA was mounting a campaign of psychological warfare on millions of hapless victims, without their knowledge or consent. Indeed, of the 50 million Facebook users victimized by this scheme, "only about 270,000 users – those who had participated in the [mydigitallife] survey"[10] – had even consented to having their data harvested, and then

---

[6] https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/#674008da535f

[7] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump

[8] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump

[9] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html

[10] Id.

only for research purposes, and without any authorization to having their data used to promote CA's (and the Mercer's), political goal to engage in cultural warfare. Indeed, Mr. Wylie stated that "…the Facebook data…was 'the saving grace' that let his team deliver the models it had promised the Mercers."[11]

16. Yet, Facebook itself lies within the penumbra of blame.

17. Sandy Parakilas, a "former Facebook platforms operations manager for policing data breaches by third party software developers between 2011 and 2012," stated that as many as hundreds of millions of Facebook users are likely to have had their private information harvested by companies that exploited the same terms as the firm that collected data and passed it on to Cambridge Analytica."[12]

18. Parakilas stated that he warned senior executives at the company that its lax approach to data protection risked a major breach: "[Parakila's] concerns were that all of the data that left Facebook servers to developers could not be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data" and that the company did not use enforcement mechanisms, including audits of external developers, to ensure data was not being misused.[13]

19. Incredibly, Facebook's "trust model" was rife with security vulnerabilities and a near total abnegation of its responsibility to audit its own rules limiting use of Facebook data by third parties. Or, in Parakilas' own words, "[Facebook] felt that it was better not to know."[14]

20. That company philosophy apparently has carried on since Mr. Parakila's departure from Facebook, as amply evidenced by the hijacking of more than 50 million of the company's profiles by the Cambridge Analytics Defendant. Facebook's stated position—that "Protecting people's information is at the heart of everything we do"[15]—is a far cry from the

---

[11] *Id.*
[12] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas
[13] *Id.*
[14] *Id.*
[15] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html

truth: In fact, Facebook had known about this security breach for two years, but did little or nothing to protect its users.[16]

21. On March 19, 2018, *Bloomberg* published an article entitled "FTC Probing Facebook For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission ("FTC") is "probing whether Facebook violated terms of a 2011 consent decree of its handling of user data that was transferred to Cambridge Analytica without [user] knowledge." Under the 2011 settlement with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal chargers that is deceived consumers and forced them to share more Personal Information than they intended." The article further stated that "if the FTC finds Facebook violated terms of the consent decree, it has the power to fine the company more than $40,000 a day per violation."

22. At all relevant times, Facebook has maintained a Data Use Policy on its website. At all relevant times, the Data Use Policy advised Facebook users, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless we have:***
> - ***received your permission***
> - ***given you notice***, such as by telling you about it in this policy; or
> - removed your name and any other personally identifying information from it.

(Emphases added) (https://www.facebook.com/full_data_use_policy).

23. The incident has violated the privacy of millions of people in every state. The privacy and personal, sensitive information of 50 million people is now at high risk for identity theft and compromise, and will continue to be at risk as a direct result of the acts of Defendants.

---

[16]https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html; https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas

7
Class Action Complaint

.

## CLASS ACTION ALLEGATIONS

24. Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who registered for Facebook accounts in the United States and whose Personal Information was obtained from Facebook by Cambridge Analytica without authorization or in excess of authorization.

25. Excluded from the Class are Defendants and any entities in which any Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees. Also excluded from the Class are the judge assigned to this action, and any member of the judge's immediate family.

26. **Numerosity:** The members of each Class are so numerous that joinder of all members of any Class would be impracticable. Plaintiff reasonably believes that Class members number fifty (50) million people or more in the aggregate and well over 1,000 in the smallest of the classes. The names and addresses of Class members are identifiable through documents maintained by Defendants.

27. **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

   i. Whether Facebook represented that it would safeguard Plaintiff's and Class members' Personal Information and not disclose it without consent;

   ii. Whether CA improperly obtained Plaintiff's and Class members' Personal Information without authorization or in excess of any authorization;

  iii. Whether Facebook was aware of CA's improper collection of Plaintiff's and Class members' Personal Information;

  iv. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

  v. Whether Defendants breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

  vi. Whether Class members' Personal Information was obtained by CA;

  vii. Whether Defendants' conduct violated Cal. Civ. Code § 1750, *et seq.*;

  viii. Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

  ix. Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

  x. Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

  xi. Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

28. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the members of the class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

29. **Typicality:** Plaintiff's claims are typical of the claims of the other members of their respective classes because, among other things, Plaintiff and the other class members were injured through the substantially uniform misconduct by Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and

9
Class Action Complaint

those of other Class members arise from the same operative facts and are based on the same legal theories.

30. **Adequacy of Representation:** Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

31. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other members of their respective classes are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

32. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

33. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Class members' Personal Information was obtained by CA;

b. Whether (and when) Facebook knew about the improper collection of Personal Information;

c. Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

d. Whether Facebook's representations that they would secure and not disclose without consent the Personal Information of Plaintiff and members of the classes were facts that reasonable persons could be expected to rely upon when deciding whether to use Facebook's services;

e. Whether Facebook misrepresented the safety of its many systems and services, specifically the security thereof, and their ability to safely store Plaintiff's and Class members' Personal Information;

f. Whether Facebook failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

g. Whether Defendants' acts, omissions, misrepresentations, and practices were and are likely to deceive consumers;

h. Whether Defendants' conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

i. Whether Defendants failed to adhere to their posted privacy policy concerning the care they would take to safeguard ' and Class members' Personal Information in violation of California Business and Professions Code § 22576;

j. Whether Defendants negligently and materially failed to adhere to their posted privacy policy with respect to the extent of their disclosure of users' data, in violation of California Business and Professions Code § 22576;

**CLAIMS ALLEGED ON BEHALF OF ALL CLASSES**

**First Claim for Relief**

**Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

34. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 333 as though fully stated herein.

35. By reason of the conduct alleged herein, Defendants engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

36. Facebook represented that it would not disclose user's Personal Information without consent and/or notice. It also required application developers, like CA, to obtain and utilize users' Personal Information in specified, limited ways.

37. Defendants failed to abide by these representations. Facebook did not prevent improper disclosure of Plaintiff's and the Class' Personal Information.

38. CA obtained Plaintiff's and the Class' Personal Information either wholly without authorization or in excess of any authorization it—or its agents—may have obtained.

39. Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a result of Facebook failing to comply with its own posted policies).

40. Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendants' unlawful business practices. In particular, Plaintiff and Class members Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

41. As a result of Defendants' unlawful business practices, Plaintiff and the class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Second Claim for Relief

## Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

42. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 3 as though fully stated herein.

43. By reason of the conduct alleged herein, Defendants engaged in unfair "business practices" within the meaning of the UCL.

44. Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Defendants represented to Plaintiff and members of the classes that their Personal Information would remain private. Defendants engaged in unfair acts and business practices by representing that they would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

45. Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendants' unfair business practices. In particular, Plaintiff and Class members Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

46. As a result of Defendants' unfair business practices, violations of the UCL, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## Third Claim for Relief

### Negligence

47. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 3 as though fully stated herein.

48. Defendants owed a duty to Plaintiff and the Class to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

49. Defendants knew that the Personal Information of Plaintiff and the Class was personal and sensitive information that is valuable.

50. By being entrusted by Plaintiff and the Class to safeguard their Personal Information, Facebook had a special relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. But, Facebook did not. Facebook failed to prevent CA's improper obtaining of Plaintiff's and the Class' Personal Information.

51. CA had a duty to refrain from obtaining Plaintiff's and the Class' Personal Information in without their consent or authorization.

52. Defendants breached their duties by failing to adopt, implement, and maintain adequate security measures to safeguard the Personal Information, or by obtaining that Personal Information without authorization.

53. Facebook also breached their duty to timely disclose that Plaintiff's and the other class members' Personal Information had been, or was reasonably believed to have been, improperly obtained.

54. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and the Class, their Personal Information would not have been improperly obtained. Defendants' negligence was a direct and legal cause of the theft of the Personal Information of Plaintiff and the Class and all resulting damages.

55. The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other class members' Personal Information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

(a) Certifying the United States Class and appointing Plaintiff as Class Representative;

(b) Finding that Defendants' conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(c) Enjoining Defendants from engaging in further negligent, deceptive, unfair, and unlawful business practices alleged herein;

(d) Awarding Plaintiff and the Class members nominal, actual, compensatory, and consequential damages;

(e) Awarding Plaintiff and the Class members statutory damages and penalties, as allowed by law;

(f) Awarding Plaintiff and the Class members restitution and disgorgement;

(g) Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

(h) Awarding Plaintiff and the Class members reasonable attorneys' fees costs and expenses, and;

(i) Granting such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this First Amended Consolidated Amended Class Action Complaint so triable.

Dated: March 20, 2018

*/s/ Joshua H. Watson*
Joshua H. Watson

*Attorney for Plaintiffs*