Clayeo C. Arnold, California SBN 65070
carnold@justice4you.com
Joshua H. Watson, California SBN 238058
jwatson@justice4you.com
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, California 95825
T: 916-777-7777
F: 916-924-1829

John A. Yanchunis (*Pro Hac Vice* to be filed)
jyanchunis@ForThePeople.com
Ryan J. McGee (*Pro Hac Vice* to be filed)
rmcgee@ForThePeople.com
Marisa Glassman (*Pro Hac Vice* to be filed)
mglassman@ForThePeople.com
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505
F: 813-223-5402 (fax)

*Attorneys for Plaintiff and the Class\**
*\*(additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | MDL NO. 2843<br>CASE NO. 3:18-md-02843-VC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO CO-LEAD COUNSEL'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO LOCAL RULE 3-12.**<br><br>RELATED CASES:   4:18-CV-05357-JSW,<br>                                      3:18-CV-05350-VC<br><br>NOT RELATED:      MDL 2843 |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF THE CASE ................................................................................ 1

III. ISSUES TO BE DECIDED ................................................................................. 3

IV.  LEGAL STANDARD .......................................................................................... 3

V.   ARGUMENT ....................................................................................................... 3

VI.  CONCLUSION .................................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**

*Evolutionary Intelligence, LLC v. Yelp, Inc.*, Case No. C-13-03587-DMR,
2013 WL 12173933 (N.D. Cal. Oct. 8, 2013) .................................................... 6, 7, 9

*Hodges v. Akeena Solar, Inc.*,
Case No. CV-09-02147-JW, 2010 WL 2756536 (N.D. Cal. July 9, 2010) ............ 8

*Hwang v. Facebook, Inc.*, Case No. 4:18-cv-05357-JSW (N.D. Cal.) ........................... passim

*In re: Facebook, Inc. Consumer Privacy User Profile Litigation*,
Case No. 3:18-md-02843-VC (N.D. Cal.) ............................................................ passim

*In re: Facebook, Inc. Consumer Privacy User Profile Litigation*,
MDL No. 2843 (J.P.M.L. 2018) .......................................................................... 1, 3, 8

*In re Jamster Marketing Litigation*,
C-05-0819-JM, 2008 WL 4482307 (S.D. Cal. Sept. 29, 2008) ................................. 3–5, 7, 9

*In re Jamster Marketing Litigation*, 427 F.Supp.2d 1366 (J.P.M.L. 2006) ........................ 4

*Pacific Coast Fed. of Fisherman's Ass'n v. Locke*,
Case No. C-10-04790-CRB, 2011 WL 289927 (N.D. Cal. Jan. 27, 2011) ................ 1

*Rankin v. Facebook, Inc.*, Case No. 3:18-cv-05350-VC (N.D. Cal.) ............................... passim

*Target Therapeutics, Inc. v. Scimed Life Sys.*, Case No. C-94-20775-RPA,
1996 WL 241692 (N.D. Cal. May 2, 1996) ........................................................... 6, 7, 9

**Statutes, Rules, and Other**

Civil Local Rule 3-12 ..................................................................................... 1, 2, 3, 8

Civil Local Rule 7-11 ............................................................................................... 1, 2

i

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

# INTRODUCTION

*"These [device] partnerships work very differently from the way in which app developers use our platform."* Ime Archibong, Vice President of Partnerships at Facebook.[1]

Pursuant to Rules 3-12(b) and 7-11, United States District Court, Northern District of California, Civil Local Rules ("Civil L.R."), Plaintiff, Susan Hwang ("Plaintiff") respectfully responds in opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12 (the "Motion"). (Doc. No. 135).

This case is not related to *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843-VC (N.D. Cal.) (the "Facebook MDL"), and should remain separate and apart therefrom. Prior to Co-Lead Counsel's Motion, Plaintiff filed with this Court her Administrative Motion to Consider Whether Cases Should be Related, and specifically addressed why her (and her admittedly related) cases *were not* related to the Facebook MDL. Motion, *Rankin v. Facebook, Inc.*, Case No. 3:18-cv-5350-VC (the "*Rankin* Case"), Doc. No. 15. Accordingly, Plaintiff requests this Court deny the Motion.

# SUMMARY OF THE CASE

Although this action is against Facebook, Inc. ("Facebook"), it is starkly and substantially different in nature, scope, and requested relief from the Facebook MDL. In the unambiguous and clear words of Ime Archibong, Vice President of Partnerships at Facebook, the "*[device] partnerships work very differently from the way in which app developers use our platform.*"[2] The Facebook MDL involves third parties unlawfully taking Personal Information by exploiting Facebook's security vulnerabilities and Facebook failing to protect Personal Information from the acts of those third parties, while this case involves Facebook

---

[1] Gabriel Dance, Nicholas Confessore, and Michael LaForgia, *Facebook Gave Device Makers Deep Access to Data on Users and Friends*, THE NEW YORK TIMES (June 3, 2018) https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html (last visited August 30, 2018).
[2] *Id.*

1

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

actively marketing, selling, and providing Personal Information to third parties. In the Facebook MDL, Cambridge Analytica (and other third parties) "*exploited* Facebook's platform to obtain user data, and that *Facebook should have imposed more robust controls on the use of data by third party applications to prevent this conduct*." Transfer Order, *In re Facebook*, MDL No. 2843 (J.P.M.L. June 6, 2018), ECF No. 140 (emphasis added).

From the clear and unambiguous language in the JPML's Transfer Order, the Facebook MDL concerns Cambridge Analytica and other third party *applications* that *exploited* Facebook's security to *obtain* user data; the Facebook MDL's scope does not include Facebook's *actively soliciting and providing* Personal Information to third-party *device manufacturers* such as Apple, Samsung, and others, which are neither *applications* nor *application developers* for the purposes of this litigation. *Id.*

In the *Hwang* and *Rankin* cases, Facebook absolutely and intentionally disregarded Plaintiff's and the Class members' privacy by seeking relationships with Apple, Samsung, and other third-party device manufacturers, then shared users' Personal Information with those *third-party device manufacturers* in violation of laws and FTC consent decrees. *See* Complaint, *Hwang v. Facebook, Inc.*, Case No. 4:18-cv-05357-JSW (N.D. Cal.) (the "*Hwang* Case), Doc. No. 1, at ¶¶1–3 (the "*Hwang* Complaint"); Complaint, *Rankin* Case, Doc. No. 1, at ¶¶1–8 (the "*Rankin* Complaint"). Neither the *Hwang* nor *Rankin* Cases allege any hacking, fraudulent data exfiltration, or any other illegal activity on the part of Apple, Samsung, and other third-parties (certainly not any third party applications)—only Facebook engaged in the illegal activity, and both *Hwang* and *Rankin* seek to hold Facebook responsible for that abhorrent conduct.

2

## ISSUES TO BE DECIDED

Whether the *Hwang* and *Rankin* cases are related, pursuant to Civil L.R. 3-12. Whether the *Hwang* and *Rankin* cases are related, pursuant to Civil L.R. 3-12, to the Facebook MDL.

Plaintiff concedes *Hwang* and *Rankin* are related, but opposes Co-Lead Counsel's Motion to relate *Hwang* and *Rankin* are not related to the Facebook MDL.

## LEGAL STANDARD

An action in the Northern District of California is related to another action when:

>  (1) The actions concern substantially the same parties, property, transaction or event; *and*
>
>  (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges

Civil L.R. 3-12(a). When a party knows or learns that an action is related, the party is required to "file in the lowest-numbered case an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11." Civil L.R. 3-12(b). The moving party bears the burden of demonstrating why and how cases are related under Civil L.R. 3-12(a). *See, e.g.*, *Pacific Coast Fed. of Fisherman's Ass'n v. Locke*, Case No. C-10-04790-CRB, 2011 WL 289927, at *2 (N.D. Cal. Jan. 27, 2011) (declining to relate cases).

## ARGUMENT

Plaintiff does not dispute the *Hwang* and *Rankin* Cases (collectively, the "Device Manufacturer Cases") are related. *Rankin*, Doc. No. 15. The Device Manufacturer Cases undoubtedly concern the same factual bases, the same immoral, unethical, and illegal conduct, and should be ordered related, pursuant to Civil L.R. 3-12(a), (f). *Rankin*, Doc. No. 15. However, while the news concerning Cambridge Analytica and other third-party *applications' exploitation* of Facebook's lackluster security and resulting governmental

3

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

investigations may have caused Facebook to elaborate on its data collection and sharing policies, the conduct complained of in the Device Manufacturer Cases is significantly and substantially different from that of the Facebook MDL: in the Facebook MDL, Facebook *failed to protect* the Personal Information from disclosure to third parties; in the Device Manufacturer Cases, Facebook marketed and *knowingly and actively disclosed* the Personal Information to third parties. Therefore, these cases should not be related to the MDL.

**A. The Device Manufacturer Cases do not Concern Substantially the Same Parties, Property, Transaction, or Event**

The analysis fails the first prong of Civil L.R. 3-12(a) because the complained of conduct in the Device Manufacturer Cases is significantly and substantially different from that arising in the Facebook MDL. Co-Lead Counsel first argues there is "no meaningful difference between Facebook selling the use of Personal Information to third party applications as opposed to device makers." (Doc. No. 135, at 3). This argument, however, significantly and substantially broadens the scope of the Facebook MDL well beyond the JPML's order: the JPML consolidated and centralized the Facebook MDL based on conduct of third parties that "*exploited* Facebook's platform to obtain user data," on allegations that "*Facebook should have imposed more robust controls on the use of data by third party applications to prevent this conduct*." Transfer Order, *In re Facebook*, MDL No. 2843 (J.P.M.L. June 6, 2018), ECF No. 140 (emphasis added). It is clear and unambiguous the JPML's decision to centralize the litigation was based on Facebook's failure to impose more robust controls to prevent third party applications from exploiting Facebook's platform. *Id.* The Device Manufacturer Cases, however, *do not involve exploitation* because Facebook *permitted* the third-party device manufacturers to access users' Personal Information.

*In re Jamster Marketing Litigation* provides guidance and illustrates why these cases should not be related. "The primary purpose of MDL proceedings is to provide efficiencies in

4

coordinated pretrial discovery and other material matters—*not to use the MDL proceedings as a means to expand the scope of the litigation beyond the core issues identified by the JPML*." C-05-0819-JM, 2008 WL 4482307, at *6 (S.D. Cal. Sept. 29, 2008) (emphasis added). In *Jamster*, the JPML ordered centralization of lawsuits related to the practices of mobile carriers. *Id.*; *see In re Jamster Mktg. Litig.*, 427 F.Supp.2d 1366, 1367–68 (J.P.M.L. 2006) (original order granting centralization). The JPML centralized the lawsuits on the unified theory that defendants made false representations to entice cellular phone customers to sign up for "free" goods and services, but the customers instead received repeated text messages for which they were charged money. 427 F.Supp.2d at 1368.

Following centralization, but before filing a coordinated class action complaint ("CACC"), the actions comprising the MDL centered on classes of individuals who: 1) responded to Verisign's advertisements; 2) were subjected to third party providers who sponsored advertisements run on cable television channels targeting children and young adults; and 3) were subjected to advertisements offering a free mobile content product or service. *In re Jamster Mktg. Litig.*, 2008 WL 4482307, at *3 (internal marks omitted). As the district court summarized, "the predominate focus of the complaints is the false advertising for mobile content which resulted in the improper billing for such mobile content." *Id.*

After centralization, but *three months prior* to the filing of the CACC in the *Jamster* MDL, an unrelated plaintiff brought an action against a mobile carrier for charging customers based on the carrier's "failure to remove services and charges to recycled mobile telephone numbers." *Id.* at *4. Similarly, a second set of unrelated plaintiffs brought actions against the same mobile carrier for those subscribers "who suffered losses or damages as a result of [the carrier's] billing for mobile content products and services not authorized by the subscriber." *Id.* Those subsequent, unrelated cases were combined, with "the focus center[ing] on

5

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

allegations that [the mobile carrier] possessed insufficient internal controls to prevent unauthorized billing practices by mobile content providers and aggregators." *Id.*

Although the *Jamster* court did not explicitly rule on whether the cases were related for purposes of consolidation, the court did opine that the actions in their original form were not sufficiently related because

> the genesis of the claims is fundamentally different for the [subsequent filed case] and MDL actions. The focus of the MDL claims, as they relate to [the mobile carrier], is that class members were misled through false advertising. The focus of the [subsequent filed case], in contrast, is that [the mobile carrier] did not require adequate proof of customer authorization prior to billing for third party mobile content.

*Id.* The *Jamster* court went on to analyze whether a stay would be appropriate in the subsequent filed case because both cases had "morphed beyond their original scope of the complaints and merged into substantially similar actions," and the subsequent filed case sought to settle claims that overlapped. *Id.* at **4–5. The *Jamster* court analyzed and contrasted the JPML's original consolidation order with the "morphed" class definition, and found that the substantially expanded class definition—from deceptive marketing claims to "all persons who were charged and paid for unauthorized products or services by a Wireless Provider during the class period"—was a "sweeping expansion of the scope of the MDL mandate." *Id.* at *6. The *Jamster* court concluded that analysis by finding that claims unrelated to the original scope of the MDL do not share the common facts or issues of the core cases comprising the MDL litigation, and the MDL transferee court lacked authority over those unrelated claims due to the JPML's instructions as to the limits placed on the exercise of a transferee court's jurisdiction. *Id.*

The plaintiffs in the Device Manufacturer Cases seek to represent those individuals in the United States who had Facebook accounts, used those accounts on third-party devices,

6

and Facebook shared their Personal Information with those third-party device manufacturers. *See, e.g.*, *Hwang* Complaint, ¶36; *Rankin* Complaint, ¶44. By contrast, the Facebook MDL scope concerns hacking, fraudulent data exfiltration, and other *illegal activity by third-party applications*. It is clear from the class definitions, factual allegations, and causes of action advanced in the Device Manufacturer Cases that the conduct did not exploit, hack, employ fraud to exfiltrate, or otherwise access user data by any *illegal* means; instead, Apple, Samsung, and other third-party device manufacturers obtained this data with Facebook's full knowledge, and Facebook *disregarded* the need for obtaining, or exceeded any obtained, authorization to access and share the class members' Personal Information with Apple, Samsung, and other third-party device manufacturers.

In *Target Therapeutics, Inc. v. Scimed Life Systems*, the district court declined to relate cases involving catheter technology because the cases involved "significantly different" property or transactions. Case No. C-94-20775-RPA, 1996 WL 241692, at *13 (N.D. Cal. May 2, 1996) (vacated on other grounds, 113 F.3d 1256 (Fed. Cir. 1997)). In denying the motion to relate, the *Target Therapeutics* court held, *inter alia*, the products at issue were "significantly different" between the cases sought to be related because the catheters were constructed differently and operated in different manners. *Id.*

In *Evolutionary Intelligence, LLC v. Yelp, Inc.*, the district court declined to relate eight cases one plaintiff filed against eight different corporate defendants for patent infringement. Case No. C-13-03587-DMR, 2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013). Although the eight cases concerned the same collection of patents (i.e., the same property), the accusations concerned different products or services and, thus, the cases were substantially different. *Id.* Further, the *Evolutionary Intelligence* court determined the

7
Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

discovery would differ among the eight cases, requiring unique inquiries in each case to assess the conduct complained of and damages flowing therefrom. *Id.*

Here, like with the *Target Therapeutics* and *Evolutionary Intelligence* cases, and following the guidance of *In re Jamster Marketing Litigation*, the Facebook Device Manufacturer Cases and Facebook MDL litigation involve significantly and substantially different transactions and events: the former involves Facebook's knowingly and willfully sharing users' Personal Information with third-party device manufacturers—brought to light some three months after the Cambridge Analytica scandal—while the latter concerns third parties that circumvented Facebook's lax cybersecurity safeguards to obtain users' Personal Information. One set of cases involves Facebook knowingly granting permission to access Personal Information, while the other involves circumvention and Facebook's failure to safeguard its users from hacking, fraudulent data exfiltration, and other illegal activity.

Additionally, the allegations contained in Co-Lead Counsel's Class Action Complaint further illustrate and frame the scope and nature of the Facebook MDL:

> Only after public outcry has Facebook proposed remedial measures. Yet, these proposed measures remain feeble and hollow. None of these stopgap measures adequately remedy or prevent the improper and illegal conduct alleged. In fact, users' data remains dangerously unprotected and open to further abuse *by third party app developers and anyone to whom these third party app developers distribute the users' data*.

Facebook MDL, Doc. No. 136-3, at ¶7 (emphasis added). Co-Lead Counsel clearly limited the scope to third party application developers that abused Facebook's platform to obtain users' Personal Information and shared that Personal Information with others.

Moreover, the parties from the Facebook MDL are illustrative of the scope and nature of the Facebook MDL. In addition to Facebook, the parties involved were: Cambridge Analytica, LLC; Cambridge Analytica Holdings, LLC; Cambridge Analytica Political, LLC;

8

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

Cambridge Analytica Commercial, LLC; Cambridge Analytica (UK) Ltd.; SCL Elections Ltd.; SCL Group Limited; and SCL USA, Inc. Transfer Order, *In re Facebook*, MDL No. 2843 (J.P.M.L. June 6, 2018), ECF No. 140, at n.3. These are the defendants the JPML considered when centralizing the Facebook MDL, and it is apparent from those defendants that the JPML intended to limit the centralization to exploitation, hacking, fraudulent data exfiltration, and other illegal conduct—not the conduct alleged in *Hwang* and *Rankin*.

### B. There is No Likelihood of Unduly Burdensome Duplication of Labor and Expense or Conflicting Results

The analysis fails the second prong of Civil L.R. 3-12(a) because the Device Manufacturer Cases and the Facebook MDL are before this Court, and there is no likelihood of unduly burdensome duplication of labor and expense. Co-Lead Counsel argues "relating *Hwang* and *Rankins* to the MDL would 'prevent unduly burdensome duplication of labor and expense *or conflicting results if the cases are conducted before different judges*.'" (Doc. No. 135, at 4) (emphasis added). The likelihood of conflicting results is moot—this Court will manage both litigations, including discovery, dispositive motions practice, injunctive relief, requests for class certification, fairness hearings, and any other matters to come before the Court. Therefore, the only plausible consideration to satisfy Civil L.R. 3-12(a)(2) would be a likelihood of "an *unduly* burdensome duplication of labor and expense." (emphasis added).

In *Hodges v. Akeena Solar, Inc.*, the district court denied an *unopposed* motion to relate a securities class action with a shareholder derivative class action, despite finding the two cases concerned substantially the same transaction and events. Case No. CV-09-02147-JW, 2010 WL 2756536, at *1 (N.D. Cal. July 9, 2010). Although the two separate actions arose from similar conduct, the different legal claims, actors, and procedural histories inured against relating the cases. *Id.* The difference in discovery and other needs of the Device Manufacturer Cases from the Facebook MDL is clearly illustrated by Facebook's Vice

9

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

President of Partnerships: "***[device] partnerships work very differently from the way in which app developers use our platform.***"[3] The Device Manufacturer Cases do not seek to hold Facebook accountable for insufficient data security practices resulting in the surreptitious hacking and exfiltration of Personal Information like in the Facebook MDL; rather Plaintiff is pursuing claims against Facebook for knowingly and willfully sharing her and others' Personal Information with third-party device manufacturers. Because of the significantly and substantially different theories of liability and relief sought, this would, necessarily, involve different discovery, motions practice, and other litigation. *See Evolutionary Intelligence*, 2013 WL 12173933, at *1 (N.D. Cal. Oct. 8, 2013) (declining to relate eight cases that concerned the same patents, finding that discovery would differ among the cases due to unique inquiries in each case to assess the conduct and damages).

Simply because Plaintiff chose to pursue similar causes of action as the Facebook MDL (e.g., violation of California's Unfair Competition Law for Unfair Business Practices, violation of the Stored Communications Act) does not mean the cases should be related. *See, e.g.*, *Evolutionary Intelligence*, 2013 WL 12173933, at *1 (declining to relate eight cases involving patent violations); *Target Therapeutics*, 1996 WL 241692, at *13 (declining to relate cases involving patent violations). While the mechanism to impute liability may be similar, the underlying bases for enforcement through that mechanism are starkly different: the Facebook MDL concerns a failure to protect Personal Information from third-party application developers, while the Device Manufacturers Cases concern Facebook's knowing and willful dissemination of users' Personal Information. *See In re Jamster Mktg. Litig.*, 2008 WL 4482307, at *6 (finding cases not related because factual bases for liability differed, despite similar legal causes of action).

---

[3] *Id.*

10

# CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12, and allow the *Hwang* and *Rankin* cases to proceed separately from the Facebook MDL.

Respectfully Submitted: September 14, 2018        /s/ *Joshua H. Watson*
                                                  Joshua H. Watson

Clayeo C. Arnold, California (SBN 65070)
carnold@justice4you.com
Joshua H. Watson, California (SBN 238058)
jwatson@justice4you.com
**CLAYEO C. ARNOLD, A**
**PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, California 95825
T: 916-777-7777
F: 916-924-1829

John A. Yanchunis (*Pro Hac Vice* to be filed)
jyanchunis@ForThePeople.com
Ryan J. McGee (*Pro Hac Vice* to be filed)
rmcgee@ForThePeople.com
Marisa Glassman (*Pro Hac Vice* to be filed)
mglassman@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505
F: 813-223-5402 (fax)

Kevin S. Hannon (*Pro Hac Vice*)
khannon@hannonlaw.com
**THE HANNON LAW FIRM, LLC**
1614 N. Downing Street
Denver, CO 80218
T: 303.861.8800
F: 303.861.8855

Steven W. Teppler (*Pro Hac Vice* to be filed)
steppler@abbottlawpa.com
**ABBOTT LAW GROUP P.A.**
2929 Plummer Cove Road

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12

```
```

Jacksonville, FL 32223
T:  904.292.1111
F: 904.292.1220

Briana Kim (SBN 255966)
Briana@BrianaKim.com
249 East Ocean Blvd., Suite 814
Long Beach, CA 90802
T: 714-482-6301
F: 714-482-6302

Response in Opposition to Co-Lead Counsel's Administrative Motion to Consider Whether Cases Should be Related Pursuant to Local Rule 3-12