| | |
|---|---|
| Lesley E. Weaver (SBN 191305) | Derek W. Loeser (admitted *pro hac vice*) |
| BLEICHMAR FONTI & AULD LLP | KELLER ROHRBACK L.L.P. |
| 555 12th Street, Suite 1600 | 1201 Third Avenue, Suite 3200 |
| Oakland, CA 94607 | Seattle, WA 98101 |
| Tel.: (415) 445-4003 | Tel.: (206) 623-1900 |
| Fax: (415) 445-4020 | Fax: (206) 623-3384 |
| lweaver@bfalaw.com | dloeser@kellerrohrback.com |

*Plaintiffs' Co-Lead Counsel*

Additional counsel listed on signature page

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **[PROPOSED] REPLY IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES ARE RELATED** |

     In opposing the Administrative Motion, Hwang and Rankins argue that the misconduct in their cases differs from the misconduct that gave rise to this consolidated litigation. Hwang and Rankins repeatedly quote a Facebook executive as support for their argument that Facebook's partnerships with device makers "work very differently from the way in which app developers use our platform." But the fact is that device makers, like app developers, use application programming interfaces ("APIs") to collect Facebook user data. The technicalities of how device makers do so, as opposed to third party applications, do not warrant a separate litigation track.

     Experts and the national and international regulators investigating these issues agree on this point. Sandy Parakilas, a whistleblower and a former operations manager at Facebook, asserts that the same "feature" is behind both the Cambridge Analytica scandal and Facebook's data sharing with device makers. In both cases, "developers had access" to a user's friend data—

and "[a]llowing access to data from friends of the user is the same feature that let Aleksandr Kogan get access to 87M profiles with only 270k people using his app, which he then passed on to Cambridge Analytica."[1] Indeed, Parakilas *equated* device makers to "apps." Criticizing Mark Zuckerberg for testifying that apps no longer had access to information about users' friends, Parakilas stated, "This statement to Congress was not correct. Some apps (*these device makers*) still have access to friend data."[2]

Likewise, the Federal Trade Commission and other investigating entities have not distinguished between device makers and app developers. Just eight days after the Cambridge Analytica revelations, the FTC stated: "Companies who have settled previous FTC actions must also comply with FTC order provisions imposing privacy and data security requirements. Accordingly, the FTC takes very seriously recent press reports raising substantial concerns about the privacy practices of Facebook. Today, the FTC is confirming that it has an open non-public investigation into these practices.'"[3] Both this consolidated litigation and *Hwang* and *Rankins* raise the question whether Facebook complied with the FTC's 2012 consent decree that barred it from sharing user content and information with third parties without users' explicit consent, including Facebook's resulting audits.

Even if one believed Facebook's self-serving description of the differences between app developers and device makers, the differences would be skin-deep only. The crux of plaintiffs' claim is that Facebook allows third parties to siphon large amounts of users' personal information, as well as users' friends' personal information, from Facebook's platforms, and to use it in ways that violate the agreements between Facebook and its users.  That app developers

---

[1] Sandy Parakilas (@mixblendr), Twitter (June 4, 2018, 12:44 am), https://twitter.com/mixblendr/status/1003542895507501057 and https://twitter.com/mixblendr/status/1003542896732237824.

[2] Sandy Parakilas (@mixblendr), Twitter (June 4, 2018, 12:44 am), https://twitter.com/mixblendr/status/1003542899181654016 and https://twitter.com/mixblendr/status/1003542900532240384 (emphasis added).

[3] FTC, *Statement by the Acting Director of FTC's Bureau of Consumer Prortection Regarding Reported Concerns About Facebook Privacy Practices*, Mar. 26, 2018, https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.

collected data through one kind of API as opposed to another API specific to device makers is hair splitting. To users, it does not matter how the data was collected.

Of course, Facebook will argue that how and when third parties collected user's content and information—including from apps on devices and websites—is key to consent, and it will be the subject of intense discovery in this MDL.[4] And although Hwang and Rankins will argue that no consent was given, surely Facebook will not concede this. Facebook will delve into the eighty different policies it has posted on its site over the last thirteen years, claiming that their practices comply with various disclosures. The parties will litigate in each case what agreement is operative, what law applies, and if any damages attach to harms proven. All of these issues overlap, including the primary issue raised by this Court to date: Article III standing.

Hwang and Rankins attempt to distinguish their cases as concerning Facebook's active misconduct, while this litigation, they say, involves only omissions. Hwang Resp. at 2; Rankins Resp. at 1.[5] As the Consolidated Complaint in this action will make clear, plaintiffs here allege that Facebook is guilty of more than a mere failure to act. Facebook actively enabled the unprecedented and unauthorized sharing and use of its users' data, and the data of those users' friends, without their explicit consent. That is also why it is wrong to describe this litigation as arising from "hacking" or "fraudulent data exfiltration." Hwang Resp. at 7. Apps were not hackers—their misconduct made use of a platform that Facebook engineered to serve relationships it fostered for the very purpose of sharing user content and information. The same is true for Facebook's relationships with device makers.

Creating separate litigation tracks would also generate practical difficulties. For example, Hwang and Rankins focus only on device makers, but in fact Facebook identified fifty-two companies with whom it has agreements to share user content and information.[6] The list

---

[4] For example, whether data is "stored" or "intercepted" will be an issue in all cases asserting claims under the Stored Communications Act or the Wiretap Act.

[5] Rankins and Hwang cite complaints filed by single firms before these particular factual revelations were public and these actions were coordinated.

[6] Natasha Lomas, *Facebook Gives US Lawmakers the Names of 52 Firms It Gave Deep Data Access to*, Techcrunch, https://techcrunch.com/2018/07/02/facebook-gives-us-lawmakers-the-

includes device makers, but also names Yahoo, Alibaba, Amazon, Mozilla, and companies such as software makers, security firms, etc. If Hwang and Rankins's arguments hold, then separate litigation should be tracked for software makers, security firms and websites as well. Doing so would not be efficient, and would run the significant risk of inconsistent rulings as well.

*   *   *

For the reasons given here and in Co-Lead Counsel's Administrative Motion, the *Hwang* and *Rankins* cases should be related to this litigation.

Dated: September 17, 2018                                           Respectfully submitted,

| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
|---|---|
| By:  */s/ Derek W. Loeser*<br>    Derek W. Loeser | By:  */s/ Lesley E. Weaver*<br>    Lesley E. Weaver |
| Derek W. Loeser (admitted *pro hac vice*)<br>Lynn Lincoln Sarko (admitted *pro hac vice*)<br>Gretchen Freeman Cappio (admitted *pro hac vice*)<br>Cari Campen Laufenberg (admitted *pro hac vice*)<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel.: (206) 623-1900<br>Fax: (206) 623-3384<br>dloeser@kellerrohrback.com<br>lsarko@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>claufenberg@kellerrohrback.com | Lesley E. Weaver (SBN 191305)<br>Matthew S. Weiler (SBN 236052)<br>Emily C. Aldridge (SBN 299236)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com<br>mweiler@bfalaw.com<br>ealdridge@bfalaw.com |

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

---

names-of-52-firms-it-gave-deep-data-access-to ("The listed companies are also by no means just device makers — including also the likes of mobile carriers, software makers, security firms, even the chip designer Qualcomm. So it's an illustrative glimpse of quite how much work Facebook did to embed into services across the mobile web — predicated upon being able to provide so many third party businesses with user data.").

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of September, 2018, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser
