# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** ex. Rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois, <br><br>*Plaintiff*, <br>v. <br><br>**FACEBOOK, INC., SCL GROUP LIMITED, and CAMBRIDGE ANALYTICA LLC,** <br><br>*Defendants*. | § § § § § § § § § § § § § § § § § | Removed from the Circuit Court of Cook County, Illinois, County Department, Chancery Division No. 2018-CH-03868 <br><br><br>**Civil Action No. _____** |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Facebook, Inc. ("Facebook"), with the written consent of the other Defendants, SCL Group Limited ("SCL"), and Cambridge Analytica, LLC ("Cambridge Analytica"), as indicated by the signature of its counsel for SCL and Cambridge Analytica below, hereby removes the state court action described below. By filing this Notice of Removal, Facebook does not intend to waive, and hereby reserves, any and all objections as to venue, personal jurisdiction, or the legal sufficiency of the claims alleged in the Action, and all other objections and defenses. Facebook reserves the right to supplement and/or amend this Notice. As grounds for removal, Facebook states as follows:

### A. BACKGROUND

1. Plaintiff Cook County ("Cook County" or "Plaintiff"), through its County State's Attorney, Kimberly M. Foxx, on March 23, 2018, filed the instant action in the Circuit Court of

Page 1

Cook County, Illinois, County Department, Chancery Division, with the caption *People of the State of Illinois v. Facebook, Inc., SGL Group Limited, and Cambridge Analytica LLC*, 2018-CH-03868 (the "Action").

2. The Complaint alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq ("ICFA") and seeks monetary fines and declaratory and injunctive relief.

3. A copy of the as-served Complaint and Summons is attached hereto as Exhibit A.

4. Plaintiff served Facebook with the Summons and Complaint on March 27, 2018. Exhibit A.

5. Following this removal, Facebook intends to seek a stay of this action pending a decision from the Judicial Panel on Multidistrict Litigation (JPML) on whether to establish a multidistrict litigation for pretrial proceedings in this and other cases. *See In re: Facebook User Profile Litigation*, MDL No. 2843. Facebook filed a response in support of transfer by the JPML to the Northern District of California on April 6, 2018. *See* MDL No. 2843, Dkt. 19.[1]

B. GROUNDS FOR REMOVAL

6. This case is removable pursuant to 28 U.S.C. §§ 1332(a)(1), (a)(2), and (c)(1) and 28 U.S.C. §§ 1441(a) and (b).

7. This Court has original jurisdiction under 28 U.S.C. § 1332(a) and (c)(1) because there is complete diversity between the parties and the amount in controversy requirement is

---

[1] Facebook is headquartered in the Northern District of California and many relevant witnesses are likely to be located there. In addition, all Facebook accountholders, by signing the Statement of Rights and Responsibilities, agreed that any claims, causes of actions, or disputes with Facebook would be resolved exclusively in the Northern District of California or in a state court located in San Mateo County. Facebook's Statement of Rights and Responsibilities is available at https://www.facebook.com/terms.php.

Page 2

satisfied. Plaintiff is a citizen of Illinois, and none of the Defendants is a citizen of Illinois. Defendant Facebook is a citizen of Delaware (its state of incorporation) and California (its principal place of business). Defendant SCL is a citizen of the United Kingdom. Defendant Cambridge Analytica is a limited liability company, so its citizenship status follows that of its owners, each of which is a citizen of the United Kingdom. And, as set forth more fully below, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## The Parties Are Diverse

8. The Plaintiff and real party in interest in this case is Cook County, Illinois, which is a citizen of the State of Illinois.

9. The State's Attorney for Cook County, Kimberly M. Foxx, filed this action under a provision of the ICFA that allows counties, by and through their county State's Attorneys, to bring *parens patriae* lawsuits for violations of the ICFA. *See* 815 ILCS 505/7; *Ashton v. Cook Cty.*, 384 Ill. 287, 297 (1943) (The "State's Attorney is … a county officer.").

10. For diversity purposes, counties are citizens of the state in which they are located. *Moor v. County of Alameda*, 411 U.S. 693, 717–718 (1973); *Goros v. Cty. of Cook*, 489 F.3d 857, 859 (7th Cir. 2007) (noting that, under *Moor*, "a county is a 'citizen' of its state for purposes of diversity jurisdiction"); *see also See* Ill. Const. art. VII, § 1, *et seq.* (setting out independent status of counties and municipalities). Accordingly, Cook County is a citizen of Illinois. Cook County is regularly treated as a citizen of Illinois. *See, e.g.*, *Blackmon-Mooring Steamatic Catastrophe, Inc. v. County of Cook, Ill.*, 04-CV-3517, 2004 WL 1794936, at *3 (N.D. Ill. Aug. 5, 2004); *County of Cook v. Philip Morris, Inc.*, 97-CV-3295, 1997 WL 667777, at *1 (N.D. Ill. Oct. 17, 1997); *County of Cook v. Mellon Stuart Co.*, 812 F. Supp. 793, 796 (N.D. Ill. 1992).

11. This conclusion is unaffected by the nature of this action as having been brought by the Cook County State's Attorney on behalf of the People of the State of Illinois. When a governmental entity in Illinois brings a *parens patriae* suit under the ICFA, the real party in interest is the governmental entity itself, not the group whose interests it seeks to protect. *See Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1049 (C.D. Ill. 2009); *People of State of Illinois v. LiveDeal, Inc.*, 2009 WL 383434, at *1 (C.D. Ill. Feb. 12, 2009). Thus, although Cook County has brought this action, pursuant to statute, in the name of the People of the State of Illinois, *see* 815 Ill. Comp. Stat. Ann. 505/7, the County itself is the real party in interest: it purports to be vindicating its own interest in the wellbeing of the citizens and marketplace of Illinois. *See SDS West Corp.*, 640 F. Supp. 2d at 1050.

12. None of the Defendants is a citizen of the State of Illinois and all are citizens of other states or of a foreign nation, or take the citizenship of entities that are citizens of a foreign nation. As the Complaint alleges, Defendant Facebook is incorporated in the State of Delaware, with its principal place of business in California. Facebook is not a citizen of Illinois. Defendant SCL, a Private Limited Company, is a corporation organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom, and therefore is a citizen of the United Kingdom. *See* 28 U.S.C. §1332(c)(1); *Simon Holdings PLC Group of Companies U.K. v. Klenz*, 878 F. Supp. 210, 211, 213 (M.D. Fla. 1995); *Chok v. S&W Berisford, PLC*, 624 F. Supp. 440, 441 (S.D.N.Y. 1985). SCL is not a citizen of Illinois. Defendant Cambridge Analytica is a limited liability company that is 100% owned by SCL Elections Limited and Emerdata Limited, each of which is a Private Limited Company that is a corporation organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. Each owner of Cambridge Analytica, therefore, is a citizen of the United Kingdom. *See Carden v. Arkoma*

*Associates*, 494 U.S. 185 (1990); *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003). Neither of the owners of Cambridge Analytica is a citizen of Illinois; thus, Cambridge Analytica is not a citizen of Illinois.

13. Based on these facts, there is complete diversity between the parties. 28 U.S.C. §§ 1332(a)(1), (a)(2) & (c)(1).

**The Amount in Controversy Exceeds Seventy-Five Thousand Dollars**

14. The amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

15. In determining whether the amount in controversy requirement is satisfied, courts "consider the pecuniary result to either party which the judgment would directly produce." *Smith Prod. Co. v. Baldwin*, 106 F.3d 403 (7th Cir. 1997). Claims for civil penalties count toward the amount in controversy. *ABM Sec. Services, Inc. v. Davis*, 646 F.3d 475, 477 (7th Cir. 2011) (statutory penalties calculated as part of the amount in controversy); *Tremback v. MONY Life Ins. Co.,* 12-cv-5901, 2013 WL 1849517, at *4 (N.D. Ill. May 1, 2013) ("[w]hen a statutory penalty is sought … it is properly considered part of the amount in controversy"). Claims for enhanced civil penalties also count if the enhancement is recoverable under governing law, and unless it is certain that the plaintiff cannot recover them. *See LM Ins. Corp. v. Spaulding Ent. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008).

16. Count I of the Complaint asserts claims against Cambridge Analytica and SCL[2] for civil fines that exceed $75,000. The Complaint asserts that "the penalty for violating the [ICFA] is a sum not to exceed $50,000," but that, "if the Court finds that [Cambridge Analytica's and

---

[2] Plaintiff pleads Count I as against both Cambridge Analytica and SCL. Although the allegations in the Count refer to "Cambridge Analytica," Plaintiff defines that term to include both Cambridge Analytica LLC and SCL Group Limited." (Compl. at 1).

Page 5

SCL's] ... practices were intended to defraud Illinois residents, $50,000 per violation." Compl. ¶ 75. As Plaintiff alleges in its Complaint, this enhancement is authorized by the Illinois statute. *Id*. ¶ 87, citing 815 ILCS 505/7(b). And Plaintiff's Prayer for Relief specifically demands that Cambridge Analytica and SCL be fined "$50,000 for violating the ICFA or, if the Court finds that Defendants engaged in the above-described conduct with intent to defraud, $50,000 for each such violation" (Compl. at 24 ¶ B), as well as "an additional $10,000 for each of the alleged violations that involves an Illinois resident 65 years of age or older "for each day such violation has existed and continues to exist" (*id*. at 24 ¶ C).

17. The Complaint also asserts that Cambridge Analytica and SCL acted with the intent to defraud. It alleges that defendants Cambridge Analytica and SCL engaged in a "fraudulent scheme to harvest the data of millions of U.S. voters" (Compl. at 7), and "engineered a deceptive scheme to surreptitiously siphon that data from Facebook" (*id*. ¶ 24). The scheme, it alleges, involved the use of "false pretenses" to deceive an initial group of 270,000 Facebook users to provide their own personal data, and then used that deception to access the data of some "50 million Facebook users in the United States, including millions of users in Illinois." (*Id*. ¶ 33; *see also* ¶¶ 40, 67). The Complaint further alleges that Cambridge Analytica and SCL "intended that Facebook and the public, including Illinois residents, rely on [their] deceptive representations and communications." (*Id*. ¶ 68).

18. The Complaint asserts multiple violations of the ICFA by Cambridge Analytica and SCL: it alleges that the conduct of these defendants "violated the personal privacy rights of millions of Illinois residents" (Compl. at ¶ 71), and that Cambridge Analytica and SCL committed multiple wrongful acts, including at least two distinct acts of fraud: "posing as an academic researcher" (*id.* ¶ 70), and making "false representations about the ... purposes for which the data

Page 6

was being collected and would be used" (*id.* ¶ 67). The Complaint also alleges other wrongful practices by Cambridge Analytica and SCL, including "using such data for psychographic analysis and electioneering, harvesting users' friend lists for psychographic analysis and electioneering, disclosing all collected and harvested user data to its affiliates and clients, and reaping substantial profits therefrom." (*Id.*).

19. Based on these allegations, the Complaint asserts, for purposes of Section 1332(a), that Cambridge Analytica and SCL are liable for statutory fines in the amount of at least $50,000 per violation, that Cambridge Analytica and SCL have committed multiple violations, and that the predicate exists for the "per violation" multiplier under the ILCS. (815 ILCS 505/7(b)). As for the initial 270,000 individuals whose data the Complaint alleges was obtained by Cambridge Analytica and SCL under "false pretenses," the Complaint does not indicate the number of those individuals who reside in Illinois. But it does allege that "millions" of Illinois residents were in the second group, whose data was obtained through the access granted by the first group. Assuming that a "violation" would occur when the data of each such resident was improperly obtained or accessed, the requested fine calculated by reference to even two million residents would be billions of dollars.[3] And even if the "per violation" provision means only separate acts, not separate individual injuries, Plaintiff had pled multiple acts of deception, as set out above, so the amount in controversy would be in excess of $100,000.

---

[3] As noted above, the Complaint further alleges that the Court may impose additional fines of "$10,000 per violation" if "the violation was committed against a person 65 years of age or older," (Compl. ¶ 76), and it seeks damages on this basis against Cambridge Analytica and SCL in the Prayer for Relief. The Complaint does not state how many Illinois residents within the referenced groups would fall within this category, so Facebook has not included this enhancement in the above calculations, but it reserves the right to reference this allegation and prayer in the event that information on this point becomes available.

20. The same conclusion applies to Count II, asserted against Facebook. In that Count, the Complaint again recites that the "penalty for violating [the ICFA] is a sum not to exceed $50,000," and that "if the Court finds that Facebook's … practices were intended to defraud Illinois residents, $50,000 per violation" (Compl. ¶ 76), and the corresponding demand in the Prayer for Relief seeks recovery against Facebook on that basis (*id*. at 24 ¶ B). The Complaint alleges that Facebook made "representations to consumers that were knowingly false" (*id*. ¶ 79) and "concealed the breach from its users" (*id*. ¶ 82). Indeed, the Complaint alleges that Facebook's entire operation is intended to manipulate consumers: according to Plaintiff, Facebook purports to be a social media website, but is in fact "the largest data mining operation in existence," a "data aggregation machine disguised as a social network—to manipulate users into making the decisions that Facebook and its business partners want them to make." (*Id*. ¶¶ 5, 8). Plaintiff also asserts multiple violations of the ICFA by Facebook, including multiple "misrepresentations" and false "representations" such as representing "that [users'] personal data would be protected in accordance with its user and development agreements" and "conceal[ing] the [Cambridge Analytica] breach from its users and do[ing] nothing more than quietly (and unsuccessfully) asking Cambridge Analytica to delete the data." (*Id*. ¶¶ 79, 82; *see also id*. ¶ 80, 83). Plaintiff further alleges that "millions of [Facebook] users in Illinois" were affected. (*Id*. ¶ 1).

21. Based on these allegations, Plaintiff asserts, for purposes of Section 1332(a), that Facebook is liable for statutory fines in the amount of at least $50,000 per violation, that Facebook has committed multiple violations, and that the predicate exists for the "per violation" multiplier under the ILCS. (815 ILCS 505/7(b)). Although Facebook denies all of these allegations—and fully reserves its right to contest their adequacy for pleading purposes or otherwise—the value of Plaintiff's claims against Facebook as pled in the Complaint would again be well in excess of

$75,000. And, again, even if the "per violation" calculation is performed by reference to acts, not persons affected, the Complaint asserts multiple violations, so the amount in controversy would be $100,000 or more.

22. That the amount in controversy requirement is satisfied is confirmed by the claim for injunctive relief in Count III. *See* 28 U.S.C. § 1446(c)(2)(A)(i). Where a complaint seeks injunctive relief, the value of that relief counts toward the amount in controversy requirement. *See also Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003); *see also City of Milwaukee v. Saxbe*, 546 F.2d 693, 702 (7th Cir. 1976) ("where the complaint seeks injunctive or declaratory relief … the amount in controversy is … the value of the right to be protected or the extent of the injury to be prevented.").

23. Under Section 1446(c)(2)(A)(i), a Notice of Removal may assert the amount in controversy with respect to a claim for nonmonetary relief. Generally, the value of a claim for injunctive relief may be calculated by measuring either the benefit to the plaintiff or the cost to the defendant. *Golin v. Neptune Mgt. Corp.*, 704 Fed. App'x 591, 595 (7th Cir. 2017).

24. Here, the Complaint asserts as its principal basis for injunctive relief that "Defendants remain in possession of the highly personal Facebook user data that it [sic] unlawfully obtained," and that "[m]illions of Illinois residents will continue to suffer or be vulnerable to injury, unless this is rectified through injunctive relief." (Compl. ¶ 93). Plaintiff requests that the Court order Defendants "to address, remedy, and prevent harm to Illinois residents." (*Id*. at ¶ 10). Assuming the truth of these allegations, the value of an injunction from Plaintiff's viewpoint clearly would be greater $75,000. *See generally Midland Mgt. Co. v. Am. Alt. Ins. Corp.*, 132 F. Supp. 3d 1014, 1019–20 (N.D. Ill. 2015) (denying motion to remand where value of harm alleged "could easily exceed $75,000"). Again, "millions" necessarily means at least two million, so that

even a minimal alleged "benefit" per individual would yield a value of well over $75,000. Although Facebook denies these allegations and also denies the assertion of harm to Illinois residents, Plaintiff's own allegations make clear that, viewed from its perspective, the request for injunctive relief is worth well in excess of the jurisdictional amount.

25. Alternatively, the value of the injunctive relief Plaintiff seeks can be calculated, for purposes of Section 1441, by considering the "cost" of the injunction from the defendant's viewpoint. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997) ("Looked at from the defendants' standpoint, the minimum amount in controversy would be present if the injunction sought by the plaintiffs would require some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum amount"); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996) ("the amount in controversy requirement may be satisfied … if either party can gain or lose the jurisdictional amount" based on the relief sought). The cost to Facebook of implementing a statewide injunction to "address, remedy, and prevent harm to Illinois residents" (*id.* ¶ 10)—whatever that vaguely worded demand may mean—unquestionably would clear the amount-in-controversy threshold.

### C. CONSENT OF OTHER DEFENDANTS

26. All Defendants who have been properly served join in or consent to the removal of this case to federal court. Attached hereto as <u>Exhibit B</u> is a written consent to removal of this action signed by counsel for SCL and Cambridge Analytica—which, together with Facebook, constitute all of the Defendants in this action. *See* 28 U.S.C. § 1446(b)(2)(A). By joining in or consenting to this removal of this case to federal court, as indicated by the signature of their counsel below, the joining Defendants do not intend to waive, and hereby reserve, any and all objections

as to venue, personal jurisdiction, or the legal sufficiency of the claims alleged in the Action, and all other objections and defenses.

### D. PROCEDURAL REQUIREMENTS AND NOTICE

27. In accordance with 28 U.S.C. § 1446(a), copies of the Complaint and all other process, pleadings, and other papers served on Facebook in the state court action are attached hereto as Exhibit A.

28. This removal to the Northern District of Illinois, Eastern Division is proper under 28 U.S.C. § 1441(a) because the state court action is pending in the Circuit Court of Cook County, Illinois, which is located in this district and division.

29. Pursuant to 28 U.S.C. § 1446(d), written notice of removal is being promptly provided to Plaintiff and a Notice of Removal, together with a copy of this Notice of Removal, is being filed with the Clerk of the Circuit Court of Cook County, Illinois, Chancery Division. Copies of these documents are attached hereto as Exhibits C and D, respectively.

### E. TIMELINESS

30. Plaintiff served Facebook with a copy of the Summons and Complaint on March 27, 2018, and Facebook is seeking removal within 30 days of that date. Accordingly, this Notice of Removal is timely filed. 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, though service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based").

### F. JURY DEMAND

31. Plaintiff's Complaint in the state court action demands a trial by jury. (Compl. at 24.).

DATED:  April 12, 2018.  Respectfully submitted,

**EIMER STAHL LLP**

By: */s/ Nathan P. Eimer*
Nathan P. Eimer
Susan M. Razzano
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
SRazzano@eimerstahl.com

**GIBSON, DUNN & CRUTCHER, LLP**

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
Osnyder@gibsondunn.com

Joshua S. Lipshutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
Jlipshutz@gibsondunn.com

Kristin A. Linsley (*pro hac vice* forthcoming)
Brian M. Lutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
Blutz@gibsondunn.com
Klinsley@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

# CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of April, 2018, the foregoing Notice of Removal was sent by electronic mail and filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Kent S. Ray
Assistant State's Attorney
kent.ray@cookcountyil.gov
COOK COUNTY STATE'S
ATTORNEY'S OFFICE
69 West Washington Street, Suite 3130
Chicago, Illinois 60602
Tel: 312.603.8600

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
David I. Mindell
dmindell@edelson.com
Alfred K. Murray II
amurray@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

*/s/ Nathan P. Eimer*