# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, § <br> ex. rel. Kimberly M. Foxx, State's Attorney § <br> of Cook County, Illinois, § <br> § <br> *Plaintiff*, § <br> v. § <br> § <br> FACEBOOK, INC., § <br> SCL GROUP LIMITED, and § <br> CAMBRIDGE ANALYTICA LLC, § <br> § <br> *Defendants*. § <br> § <br> § | Case No. 1:18-cv-02667 <br><br> Hon. Robert M. Dow, Jr. |

## FACEBOOK, INC.'S OPPOSITION TO MOTION FOR REMAND

Plaintiff argues that this case should be remanded to state court because "a case brought by a State cannot be removed to federal court on diversity grounds." Plaintiff's Memorandum in Support of Motion to Remand to State Court ("Mot.") at 2. But this case was *not* brought by the State of Illinois; it was brought by the Cook County State's Attorney, a locally elected official who is "separate and distinct from the state" and therefore a citizen of Illinois for diversity purposes. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109–10 (7th Cir. 1983). Indeed, the case is being directed and financed by private attorneys with *no* accountability to the State or Illinois voters, pursuant to a contract of questionable validity that awards them a significant contingent interest in any recovery. Under well-established Supreme Court precedent, this case was properly removed to federal court.

*First*, contrary to Plaintiff's characterization, the issue is not whether Illinois law authorizes the State's Attorney to bring this suit. Rather, as in any case involving a governmental entity, the

issue is whether the State's Attorney is so indistinguishable from the State that she effectively is the State's alter ego. Although Plaintiff cites cases holding that the *Illinois Attorney General's* presence as a party will destroy diversity jurisdiction, no courts have reached a similar conclusion regarding State's Attorneys. That is because the State's Attorney is merely the "chief prosecuting and advising attorney of *the county*," and her "actions and policies [are those] of the County." *Boyd v. Vill. of Wheeling*, 1985 WL 2564, at *15 (N.D. Ill. Sept. 12, 1985). Because the State's Attorney is separate from and independent of the State, her presence as a party does not deprive this Court of jurisdiction.

*Second*, Supreme Court precedent makes clear that any purported governmental or "quasi-sovereign" interests of the State are irrelevant for purposes of diversity jurisdiction. *Missouri, Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59–60 (1901). Reliance on such interests to avoid diversity jurisdiction "has never been suggested or endorsed by the Supreme Court" and is, in fact, "contradictory to the very language of" binding Supreme Court precedent. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737–38 & n.2 (9th Cir. 2011). Because purported sovereign interests are the only state interests Plaintiff identifies, the State is not a real party.

*Third*, under the Supreme Court's decision in *Hickman*, a state is a real party in interest for diversity purposes "only if 'the relief sought is that which inures to it *alone*.'" *Lucent*, 642 F.3d at 737 (quoting *Hickman*, 183 U.S. at 59). There is no indication in any of Plaintiff's pleadings that the State would be the exclusive beneficiary of any recovery in this suit. To the contrary, it is undisputed that the private attorneys prosecuting and financing this suit will reap a significant portion of any recovery.

For these reasons, Facebook, Inc. ("Facebook") respectfully requests that the Court deny Plaintiff's motion to remand.

2

## ARGUMENT

**I.   The State's Attorney is not the State for purposes of diversity jurisdiction**

The parties do not dispute that Cook County is a citizen of Illinois, that the defendants are not citizens of Illinois, or that the amount in controversy exceeds $75,000. Notice of Removal, Dkt. No. 1 at 2–3. They dispute only one jurisdictional fact: whether the Cook County State's Attorney—the "chief prosecuting and advising attorney of the county" (*Boyd*, 1985 WL 2564, at *15)—is the alter ego of the State, such that the State is the plaintiff.[1] But as longstanding Supreme Court precedent establishes, the fact that an Illinois statute authorizes the State's Attorney to bring suit to enforce state law does not mean that the State is the plaintiff. *Hickman*, 183 U.S. at 59–60.

A governmental official or entity that is "separate and distinct from the state"—that is, one that is not the State's "alter ego"—is a citizen of the State for diversity purposes, and its presence as a party will not destroy diversity jurisdiction. *Bethlehem Steel*, 702 F.2d at 109–10. That an official or agency is an "instrumentality or agency of the state" is in no way determinative; what matters is whether the party actually "*is* … the state in its sovereign corporate capacity." *Id.* (citation omitted); *see also PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996) ("[I]f the agency is an independent one, separate and distinct from the state, the district court can properly proceed to the merits."); *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979) ("That a state, a state agency, or its officers may have been named as parties … is not dispositive" for diversity purposes (citation omitted)).

Although this separateness inquiry is informed by state law, "[u]ltimately, … the question whether a particular state agency has the same kind of independent status as a county or is instead

---

[1] Plaintiff also argues that the *People of Illinois* are not the real parties in interest here. Mot. at 4-5. Facebook agrees and has never contended otherwise.

3

an arm of the State, … is a question of federal law." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997); *see also PYCA Indus.*, 81 F.3d at 1416 ("A state statute characterizing the agency as an arm of the state is only one factor to consider …."); *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1204 (1st Cir. 1993) (state statute creating "State-related entity is not necessarily dispositive on the issue of its autonomy, either for immunity or diversity purposes"); *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990). The answer to the federal jurisdictional question turns on the party's "degree of local autonomy" and "whether [it] is concerned with local, as opposed to statewide problems." *PYCA Indus.*, 81 F.3d at 1416; *see also, e.g., Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *A.W. Chesterton Co.*, 2 F.3d at 1203–07 (university board's operational and financial autonomy meant that it was not alter ego of state, even though governor appointed vast majority of board members).

Plaintiff erroneously collapses this inquiry into a single step, reasoning that if the State's Attorney purports to bring suit on behalf of the State, the State must be the true plaintiff. Mot. at 3–4. But under longstanding Supreme Court precedent, the mere fact that state law empowers a person or agency to bring suit to enforce state law does not make the State a party for federal diversity purposes. *See Hickman*, 183 U.S. at 59–60 (Missouri not party in interest in suit brought by State board pursuant to its statutory authority to enforce state law). Citing this precedent, courts have rejected Plaintiff's all-or-nothing approach in closely analogous cases, holding that the State was not a party even where a state statute expressly authorized the nominal party to sue on behalf of the State. *See, e.g., Lucent*, 642 F.3d at 738–39 & n.6 (rejecting argument that state agency's presence as party destroyed diversity even where statute authorized agency to sue); *California v. N. Tr. Corp.*, 2013 WL 1561460, at *3 (C.D. Cal. Apr. 10, 2013) (although California's Unfair Competition Law allows City Attorneys to sue "in the name" of the State, "this statutory language

4

does not require the Court to find that the State is in fact the real party in interest for diversity purposes" in such a suit); *Merrill Lynch, Pierce, Fenner & Smith v. Cavicchia*, 311 F. Supp. 149, 155–56 (S.D.N.Y. 1970) (rejecting New York Attorney General's argument that New York was the real party in interest because a state statute gave him "power to bring an action in the name of the state," citing *Hickman*, 183 U.S. at 59–60). Were it otherwise, a state legislature could substantially curtail the scope of federal diversity jurisdiction by authorizing inferior state actors (such as municipalities or local prosecutors) or even non-state actors (such as private attorneys or citizens), to bring suit on behalf of the State. *Lucent*, 642 F.3d at 739 n.6 ("[T]he state cannot possess the ability to defeat federal jurisdiction … merely by enacting legislation pursuant to its police powers.") (citing *Hickman*, 183 U.S. at 60); *California v. N. Tr. Corp.*, 2012 WL 12888851, at *2 (C.D. Cal. Dec. 19, 2012).[2]

Tellingly, the federal decisions on which Plaintiff relies concern suits brought by the *Attorney General*, not a State's Attorney. *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845 (N.D. Ill. 2011); *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047 (C.D. Ill. 2009); *People of Illinois v. LiveDeal, Inc.*, 2009 WL 383434 (C.D. Ill. Feb. 12, 2009). There is no dispute that a State's

---

[2] The California Attorney General recently made this same point in *City of Oakland v. B.P., P.L.C.*, 3:17-CV-06011-WHA (N.D. Cal.), Dkt. No. 236-1, where the Oakland City Attorney brought a nuisance action under a California statute authorizing "the district attorney or county counsel of any county in which the nuisance exists" to bring a civil action "in the name of the people of the State of California." *Id.*, Dkt. No. 199; Cal. Civ. Proc. Code § 731. As the Attorney General explained, the fact that the suit was brought in the name of the People did not make the State a party. *City of Oakland*, Dkt. No. 236. Rather, "[w]hile the Cities have authority to bring a public nuisance action in the name of the People of the State of California, that authority does not extend their jurisdiction beyond their municipal or county border." *Id.*, Dkt. No. 236-1 at 2 n.1. "Jurisdiction to bring a 'statewide' claim on behalf of the People of the State of California lies with the State." *Id.*

5

Attorney General is, in most circumstances, an alter ego of the State itself.[3]  He or she is the State's chief legal officer and generally speaks for the State in litigation brought on the State's behalf. *People v. Massarella*, 72 Ill. 2d 531, 534 (1978).  Indeed, the Illinois Supreme Court has repeatedly "reaffirm[ed] the *exclusive right* of the Attorney General to represent the state in all matters when the state is the real party in interest." *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 476–77 (2005) (emphasis added); *see also Lyons v. Ryan*, 201 Ill. 2d 529, 540 (2002) ("[T]he Attorney General possesses the *exclusive* constitutional power and prerogative to conduct the state's legal affairs."); *Fuchs v. Bidwill*, 65 Ill. 2d 503, 510 (1976) (the Attorney General "is the only officer empowered to represent the State in litigation in which it is the real party in interest").  Plaintiff's federal cases are therefore unremarkable; they simply hold that the State is a party in certain suits brought by the Attorney General, and that diversity jurisdiction does not exist over such suits.  Notably, no similar case holds that the presence of a county *State's Attorney* as a party destroys diversity.

This lack of authority is unsurprising given the substantial differences under Illinois state law between the Attorney General and a State's Attorney.  Those differences make clear that, unlike the Attorney General, State's Attorneys are *not* alter egos of the State because they are accountable only to county voters, rather than the voters of the State, and because they have a high "degree of local autonomy" and are "concerned primarily with local, as opposed to statewide problems." *PYCA Indus.*, 81 F.3d at 1416.

The differences begin with the Illinois Constitution itself.  Under that enactment, the Attorney General is "*the* legal officer of the State." *Bear Stearns*, 215 Ill. 2d at 476–77 (quoting

---

[3]  Facebook notes that this is not always the case. *See, e.g.*, *People of Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 766 (7th Cir. 1986) (State was not a real party in interest in Illinois Attorney General's RICO action against insurance company).

6

Ill. Const., art. V, § 15 (emphasis added)); *see id.* (Attorney General has the "*exclusive right* … to represent the state in all matters when the state is the real party in interest"). The Attorney General holds an office established by the constitutional article creating the Executive Branch, reports to the Governor, and is elected by and accountable to all the voters in the State. Ill. Const. art. V, § 1. "By contrast, the provision creating the office of State's Attorney," which appears in the constitutional article pertaining to the Judiciary, not the Executive, "only sets out the manner of election and the qualifications for the office"—"[i]t contains no reference to the powers and duties of the office." *Bear Stearns*, 215 Ill. 2d at 476–77 (quoting Ill. Const., art. VI, § 19). Unlike the Attorney General, "[t]he Cook County State's Attorney is not elected by the people of the entire State of Illinois, but by the people of Cook County." *Boyd*, 1985 WL 2564, at *15. The State's Attorney therefore is "an elected official of the county, and his staff are employees of the county." *Id.* As a representative of a county, the State's Attorney cannot be removed by the Attorney General or the Governor. Ill. Const., art. IV, § 14.

These significant differences between the two offices are confirmed by the Illinois statutes delineating their respective spheres of authority. It is the very job description of the Attorney General to represent the interests of the State; thus, for example, the Attorney General has a mandate "[t]o institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer." 15 ILCS 205/4. The Attorney General's duties also include "consult[ing] with and advis[ing] the governor and other State officers," and giving "written opinions upon all legal or constitutional questions relating to the duties of such officers." *Id.*; *see also People ex rel. Scott v. Briceland*, 65 Ill. 2d 485, 494 (1976) (Attorney General "is the sole official adviser of the executive officers and of all boards, commissions and departments of the State government… ." (citation omitted)). By

7

contrast, the duties of State's Attorneys are set out in the *Counties Code*, are geographically circumscribed, and largely pertain to representing the county. *See* 55 ILCS 5/3-9005; *Staten v. Neal*, 880 F.2d 962, 966 (7th Cir. 1989) ("State's attorneys in Illinois work for their respective counties, not the State Attorney General."). Thus, the State's Attorney is responsible for "commenc[ing] and prosecut[ing] all actions and proceedings brought by any county officer in his official capacity." 55 ILCS 5/3-9005; *see Bear Stearns*, 215 Ill. 2d at 482 ("Under the Counties Code, the State's Attorney has exclusive authority to prosecute all actions on behalf of the County."). Whereas the Attorney General advises *state* officers, the State's Attorney's duties include "giv[ing] his opinion … to any *county officer in his county*." 55 ILCS 5/3-9005. In sum, the Cook County State's Attorney is the "chief prosecuting and advising attorney of *the county*," and her "actions and policies [are those] of the County."[4] *Boyd*, 1985 WL 2564, at *15.

Indeed, the Illinois Consumer Fraud Act—the very statute under which Plaintiff has brought suit—highlights the divergent roles of the State's Attorneys and the Attorney General under Illinois law. State's Attorneys do not "share[] co-extensive authority with the Illinois Attorney General pursuant to the Consumer Fraud Act." *People ex rel. Devine v. Time Consumer Mktg., Inc.*, 336 Ill. App. 3d 74, 81 (1st Dist. 2002). Consistent with the Attorney General's role as "*the* legal officer of the State," "certain powers [under the Act] are granted exclusively to the Illinois Attorney General," including the authority to accept an Assurance of Voluntary

---

[4] The website of the Office of the Cook County State's Attorney confirms that the State's Attorney represents the interests of citizens of the County in civil litigation. "In addition to criminal prosecutions and related programs that promote public safety, the Office of the Cook County State's Attorney must thoughtfully and proactively work through its Civil Division to protect the interests of the County, in civil matters, and to advocate for County residents through proactive civil litigation." Cook County State's Attorney, *Protecting the Interests of the County and Its Residents*, https://bit.ly/2ryexqo (last visited May 9, 2018); *see also* Cook County State's Attorney, *Civil Actions Bureau*, https://bit.ly/2I5OOwM (last visited May 9, 2018) ("The Civil Actions Bureau represents the interests of Cook County.").

8

Compliance with respect to objectionable practices and to release any claims relating to such practices. *Id.* at 79–81 (citing 815 ILCS 5/6.1). The State's Attorney has no such power. The Act likewise grants the Attorney General exclusive investigatory powers. 815 ILCS 505/3.

Plaintiff notes that some Illinois decisions have referred to the State's Attorney as a "state officer." Mot. at 3–4. But other decisions, including decisions by the Illinois Supreme Court, have characterized the State's Attorney as a "county officer." *Ashton v. Cook Cty.*, 384 Ill. 287, 297 (1943) ("[T]he State's Attorney is an officer provided for by the constitution and … a county officer."); *Cook Cty. v. Healy*, 222 Ill. 310, 316 (1906) ("The state's attorney is a county officer" and "is not distinguished in any manner from the clerks of the courts, the sheriff, coroner and other officers connected with the administration of justice within the county"); *accord People v. Pohl*, 47 Ill. App. 2d 232, 239 (Ill. App. Ct. 1964); *Boyd*, 1985 WL 2564, at *15 ("[T]he actions and policies of the Cook County State's Attorney are tantamount to official policies of the County."). These two lines of precedent can be reconciled; as a practical matter, State's Attorneys' duties make them county officers, even if they are technically "state officers" for certain limited purposes—for example, in the narrow sense that the legislature has constitutional authority to set their pay. *See Hoyne v. Danisch*, 264 Ill. 467, 470–73 (1914); *but see Bear Stearns*, 215 Ill. 2d at 474–78 (rejecting notion that "the legislature can reduce a State's Attorney's constitutionally derived power to direct the legal affairs of the county"). But that does not shed light on whether, as a practical matter, a State's Attorney's duties are such that he or she is an alter ego of the state, which is the determinative question here. *Cf. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (party is not an alter ego of the state if it is "more like a county or city than it is like an arm of the State").

9

The case on which Plaintiff principally relies, *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, has no bearing on that critical issue. *See* Mot. at 3 (citing *Gaughan*, ¶ 27). *Gaughan* addressed only whether "the State's Attorney of Cook County … has … standing to bring a *mandamus* action in [the Supreme Court] to seek correction of a sentence not authorized by statute." 2016 IL 120110, ¶ 22; *see also People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill. 2d 1, 31–32 (1991) (addressing State's Attorney's standing to sue). But whether a State's Attorney has *standing* is irrelevant here, as a party may have standing to sue in place of the State and still not be an alter ego of the State for diversity purposes. *See, e.g.*, *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008); *Davis v. Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007); *Cf. Lucent*, 642 F.3d at 738 n.5 ("[A] state can possess standing," "but lack status as a real party in the controversy for the purposes of diversity jurisdiction.").

In sum, the Cook County State's Attorney's high degree of autonomy, her accountability only to the county electorate, and her primarily local duties show that she is not an alter ego of the State. Her presence as a party therefore does not destroy diversity.[5]

---

[5] Even more telling, the State's Attorney has decided to turn over the keys to this litigation to a group of private attorneys with *no* accountability to the state electorate or any state officials. The purported basis for this appointment is the State's Attorney's alleged lack of "the required legal expertise" to litigate the case. *In re Petition for Appointment of a Special State's Attorney*, Circuit Court of Cook County, No. 18 CH 3869, Order of April 11, 2018 (attached as Exhibit A). But that is not a basis for appointing private attorneys to fulfill the State's Attorney's duties. The relevant statute authorizes private appointments only where the State's Attorney "is sick, absent, or unable to fulfill his or her duties." 55 ILCS 5/3-9008; *see also* Cook County Code of Ordinances, Sec. 2-331. The phrase "unable to fulfill his or her duties" cannot be construed to authorize private appointments whenever the State's Attorney does not feel he or she has the subject matter expertise to pursue the specific litigation. *Cf. People ex rel. Elliott v. Benefiel*, 405 Ill. 500, 504 (1950) ("the words 'unable to attend,'" as used in prior version of the statute, did not "extend[] to a situation where the State's Attorney is unable to attend because he is not qualified to hold the office"). Were it otherwise, State's Attorneys could deputize private plaintiffs' attorneys to litigate a wide array of civil actions—like this one— that the Legislature has explicitly determined should *not* be litigated by private parties. *Martin*

10

## II. Under longstanding Supreme Court precedent, "quasi-sovereign interests" do not make the State the real party in interest

Plaintiff's only other argument is that the State is a real party in interest because it has "sovereign or quasi-sovereign interests" in the litigation. Mot. at 6. That argument is foreclosed by Supreme Court precedent holding that a State's governmental or sovereign interests do not inform the real-party-in-interest determination for purposes of diversity jurisdiction. *Hickman*, 183 U.S. at 60. Because such interests are the *only* state interests identified by Plaintiff, the State is not a real party in interest.

Plaintiff argues that the State's interests in "protecting [its] citizens" and enforcing its laws make it the real party in interest, such that diversity is lacking. Mot. at 6. But the Supreme Court rejected that precise argument in *Hickman*, 183 U.S. at 60. There, the Missouri Board of Railroad and Warehouse Commissioners brought suit against a railroad to enforce Missouri's laws regulating rail rates. *Id*. at 54. The railroad sought removal to federal court on grounds of diversity jurisdiction. *Id*. at 57. The state court refused to order removal[6] and entered a decree in favor of the commissioners, and the Missouri Supreme Court affirmed.

The U.S. Supreme Court reversed, holding that Missouri was not a party in interest even though the suit was brought by the commissioners of a state-created board, pursuant to express statutory authority, to enforce Missouri law. *Hickman*, 183 U.S. at 59–60. The Court rejected the argument that Missouri's sovereign interests bore upon diversity jurisdiction, explaining that although "the state has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws," that

---

*v. Eggert*, 174 Ill. App. 3d 71, 76 (1988) ("[U]nder the [Illinois Consumer Fraud] Act injunctive relief is not available to private citizens.").

[6] *Hickman* pre-dated the current procedure for removal by notice.

11

type of governmental interest "is not that which makes the state, as an organized political community, a party in interest in the litigation." *Id*. at 59–60. "[I]f that were so the state would be a party in interest in all litigation," because "the purpose of all litigation is to preserve and enforce rights and secure compliance with law of the state, either statute or common." *Id*. at 60. Instead, "[t]he interest must be one in the state as an artificial person." *Id*.

Federal courts of appeals have consistently followed *Hickman*. *See*, *e.g.*, *Lucent*, 642 F.3d at 737 ("'general governmental interest[s]' will not satisfy the real party to the controversy requirement for the purposes of defeating diversity" (quoting *Hickman*, 183 U.S. at 60)); *Ramada Inns*, 598 F.2d at 1307 ("If a federal judgment will have no effect other than to implicate the state's general 'governmental interest in the welfare of all its citizens … and in securing compliance with all its laws,' … then the state is not a real party in interest." (quoting *Hickman*, 183 U.S. at 60)); *id*. at 1311 (Seitz, C.J., concurring) (finding "no evidence in later decisions of the Court signaling a retreat from [*Hickman*]"); *Blease v. Safety Transit Co.*, 50 F.2d 852, 854 (4th Cir. 1931) (state's general interest in "compelling obedience to the legal order of [state] officials and in securing compliance with [the state's] laws" does not "'make[] the state … a party in interest in the litigation.'" (quoting *Hickman*, 183 U.S. at 60)); *see also N. Tr. Corp.*, 2013 WL 1561460, at *3; *Nw. Pub. Commc'ns Council ex rel. Oregon v. Qwest Corp.*, 877 F. Supp. 2d 1004, 1012 (D. Or. 2012); *Cavicchia*, 311 F. Supp. at 155–56.

In asserting that the State's sovereign interests destroy diversity, the State's Attorney again relies on inapposite case law governing when a State has *standing* to bring a parens patriae action. Mot. at 3 (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982)). But the law is clear that whether a state has parens patriae standing and whether it is a real party in interest for federal diversity purposes are fundamentally different questions governed

12

by separate lines of Supreme Court precedent. *Lucent*, 642 F.3d at 738 n.5. "[A] state can possess standing to bring forth a claim"—for example, it may have a sufficient sovereign interest in the litigation to bring suit—"but lack status as a real party in the controversy for the purposes of diversity jurisdiction." *Id.* at 738 n.5 (the state interests that will destroy diversity under *Hickman* "are more limited than those" that suffice to give the state standing). Although "quasi-sovereign interest[s]" may be sufficient to give a state standing to bring an action, the notion that such interests also destroy diversity jurisdiction "is contradictory to the very language of [*Hickman*]" and "has never been suggested or endorsed by the Supreme Court"; indeed, "other circuit courts have declined such an understanding, as it would effectively render [*Hickman*] moribund." *Id.* at n.2 (collecting cases). Because quasi-sovereign interests are the *only* State interests that Plaintiff claims the State has, the State is not a real party in interest.

This conclusion is confirmed by the fact that the relief being sought in this litigation would not benefit the State exclusively, but rather would benefit the County and its private attorneys. Under *Hickman*, a State is a real party in interest for diversity purposes "only if 'the relief sought is that which inures to it *alone*.'" *Lucent*, 642 F.3d at 737 (quoting *Hickman*, 183 U.S. at 59). If a nominal party purporting to bring suit on the State's behalf also has an interest in the outcome, diversity jurisdiction will not be destroyed. *Port of Seattle v. Oregon & Washington Railroad Co.*, 255 U.S. 56, 71 (1921); *Parks v. Carriere Consol. Sch. Dist.*, 12 F.2d 37, 38 (5th Cir. 1926) (although the state may be the ultimate beneficiary of a recovery, "this does not make [the state] a party to the record"); *Qwest Corp.*, 877 F. Supp. 2d at 1013 (diversity jurisdiction existed where penalties that a trade organization sought to recover on behalf of the State of Oregon did "not inure to the State of Oregon alone"); *Reinhardt v. Montana Human Rights Bur.*, 2010 WL 5391280, at *2 (D. Mont. Dec. 17, 2010) ("A state is a real party in interest when the 'benefit enures to it

13

alone.'"); *see also Missouri v. Homesteaders Life Ass'n*, 90 F.2d 543, 549 (8th Cir. 1937) ("The mere fact that the state has a beneficial interest in the ultimate recovery does not make it a party."); *Cavicchia*, 311 F. Supp. at 155 (same).

The Supreme Court's decision in *Port of Seattle* further confirms that a State is not a party in interest to a suit brought to enforce state law if the party bringing suit has an independent interest in the result. There, the Port of Seattle, a municipal corporation created by Washington state laws, sued a railroad to enforce a Washington statute regulating improvements to lands abutting certain state waterways. 255 U.S. at 58, 61–62. The statute required the owners of such lands to apply for "a permit authorizing the improvement and use of such area under conditions to be prescribed by the state authorities," and to pay "an annual rental" to the state. *Id*. at 61. The defendant railroad "leased a part of its land …, and purported to authorize the construction of wharves, piers and other structures upon the adjoining water area," without applying for the necessary permit. *Id*. Pursuant to its authority under state law, the port commissioner sued in state court to enjoin the railroad's use of the waterway and to quiet title in favor of the state. *Id*. The defendant removed the case to federal court over the port's objection that the State was the real party in interest. *Id*. at 70. The district court declined to remand the case and entered a decree in the defendant's favor. *Id*. at 62.

The Supreme Court affirmed. Citing *Hickman*, the Court rejected as "clearly unsound" the port's argument that the State, as the owner of the waterway, was the real party in interest. *Port of Seattle*, 255 U.S. at 70–71. It noted that the port was a citizen of Washington, and that "it had a direct financial interest in the result" because a portion of the rental allegedly due under Washington law would be paid to the county. *Id*. at 71. Tellingly, the Supreme Court acknowledged that the State *also* had a financial interest in the outcome (both as owner of the waterway and a potential beneficiary of the rental). *Id*. But that financial interest did not destroy

14

diversity. Given the port's own interest in the outcome, the Supreme Court had "no occasion to consider" "[w]hat effect the judgment … will have upon the state's interest." *Id*.

Nothing in Plaintiff's complaint or motion to remand suggests that *any* of the requested monetary judgment—let alone *all* of it—would run to the State, as *Hickman* and *Port of Seattle* require.[7] There is no assertion, for example, that any and all recovery will be remitted to the State treasury. Although it is unclear who would receive penalties imposed at the conclusion of this case (if any), one thing is certain: A group of six private attorneys employed by Edelson P.C. would receive twenty percent of any such recovery. *See* Ex. A (Appointment Order) (granting the private attorneys an award of "20% due to the [purportedly] specialized nature of the work and the complexity of the litigation").[8] That arrangement—which gives private attorneys a direct and substantial financial interest in this supposed parens patriae action—destroys any pretense that the State is to be the exclusive beneficiary of the recovery, and thus destroys any argument that the State is the real party in interest for diversity purposes.

## CONCLUSION

Facebook respectfully requests that the Court deny Plaintiff's Motion to Remand.

---

[7] Some district courts have declined to follow *Hickman*'s clear directive "that *only* the state can benefit from the relief sought" if it is to be a real party in interest. *See, e.g.*, *SDS W. Corp.*, 640 F. Supp. 2d at 1051. These decisions rely exclusively on certain district court decisions that have rejected a "literal application" of the decision. *See, e.g.*, *People of California v. Universal Syndications, Inc.*, 2009 WL 1689651, at *4 (N.D. Cal. June 16, 2009), *overruled by Lucent*, 642 F.3d at 739. But none of those decisions addressed the Supreme Court's later decision in *Port of Seattle*, which unambiguously endorsed a "literal application" of the rule announced in *Hickman*. *Port of Seattle*, 255 U.S. at 70–71. Because neither *Hickman* nor *Port of Seattle* has been overruled, this Court is bound by them.

[8] Facebook requests that the Court take judicial notice of the April 11, 2018, Order of the Circuit Court of Cook County appointing six attorneys employed by Edelson P.C. as Special Assistant State's Attorneys. Courts regularly take judicial notice of similar state-court orders. *See, e.g.*, *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000).

15

DATED:  May 9, 2018                     Respectfully submitted,

**EIMER STAHL LLP**

By: */s/ Nathan P. Eimer*
Nathan P. Eimer
Susan M. Razzano
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
SRazzano@eimerstahl.com

**GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/  Orin Snyder*
Orin Snyder (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
OSnyder@gibsondunn.com

Joshua S. Lipshutz (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
JLipshutz@gibsondunn.com

Kristin A. Linsley (*pro hac vice*)
Brian M. Lutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
KLinsley@gibsondunn.com
BLutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

16

## CERTIFICATE OF SERVICE

    I hereby certify that on this 9th day of May, 2018, the foregoing Opposition to Motion for Remand was electronically filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                          */s/ Nathan P. Eimer*