# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois,<br><br>   *Plaintiff*,<br><br> v.<br><br>FACEBOOK, INC., a Delaware corporation, SCL GROUP LIMITED, a United Kingdom private limited company, and CAMBRIDGE ANALYTICA LLC, a Delaware limited liability company,<br><br>   *Defendants*. | Case No.: 1:18-cv-02667<br><br>Honorable Robert M. Dow, Jr. |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND TO STATE COURT**

  This case is an enforcement action that Cook County State's Attorney Kimberly M. Foxx (the "State's Attorney") brought on behalf of the State of Illinois pursuant to § 505/7 of the Illinois Consumer Fraud Act, an Illinois statute which expressly authorizes the State's Attorney to bring suit to seek injunctive relief and civil penalties on behalf of the People. On the one hand, Facebook does not dispute that the State's Attorney has statutory and constitutional authority to bring this action and indeed, recognizes the breadth of authorities—including from this Court[1]—holding that where an enforcement action is brought on behalf of the People, the State is the real party in interest and diversity is lacking. On the other hand, Facebook advances a phantom distinction that supposedly applies here: when a State's Attorney (as opposed to the Attorney

---

[1]  *See Illinois v. AU Optronics*, 794 F. Supp. 2d 845 (N.D. Ill. 2011).

General herself) pursues such an enforcement action, the State somehow loses its status as the "real party in interest." That position does not withstand scrutiny.

To reach its novel conclusion, Facebook first re-writes the rules on the "real party in interest" analysis, and in the process, even asks this Court to disagree with its own prior holding in *Illinois v. AU Optronics*, 794 F. Supp. 2d 845 (N.D. Ill. 2011). In any event, it is well-established that the analysis requires courts to "look to the complaint as a whole" to assess "the essential nature and effect of the proceeding." *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 773 (7th Cir. 2011) (internal quotation marks omitted). Where, as here, the State has a "substantial stake" in the outcome of the proceeding, it is the real party in interest. *See id.*, *see also AU Optronics*, 794 F. Supp. 2d at 849–50. Rejecting this straightforward inquiry, Facebook instead invents two new requirements.

As to the first, Facebook claims that in order for the State to be the real party in interest, the person or entity acting for the State must be its "alter ego." But the "alter ego" inquiry is actually just a method that courts use to assess the *extent* of a State's interests in cases where an agency or political subdivision is involved in a suit that involves the agency's own interests. *E.g., Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 108–09 (7th Cir. 1983). The inquiry has no application here, where the State's Attorney is solely pursuing State interests—indeed, the only relief sought in this case is for the People.

Second, Facebook rejects the "substantial stake" analysis that this Court adopted in *AU Optronics* in favor of a hardline: if any individual or entity other than the State stands to benefit from the litigation, the State is no longer the true party in interest. Facebook's argument on this point is a patchwork of dicta, relying primarily on two older decisions of the Supreme Court, which fails to address a century's worth of otherwise on-point precedent. As that precedent

2

makes clear, where, as here, civil penalties and injunctive relief are sought in furtherance of the State's sovereign interest in protecting its citizens—by an officer of the State indisputably authorized to seek such relief—the State is the true party in interest, and the case must be remanded.

**I.      Although the State's Attorney need not establish that she is an "alter ego" of the State, she is actually representing the entire State's interests in this action and is therefore, the State's "alter ego."**

>   a.   The "alter ego" analysis is not a requirement; rather, it is a method used to determine the *extent* of parties' interests in certain types of cases.

Facebook now accepts that the State's Attorney has authority to bring this suit on behalf of the State. (Def.'s Resp. Br. at 1 ("[C]ontrary to Plaintiff's characterization, the issue is not whether Illinois law authorizes the State's Attorney to bring this suit.").) Notwithstanding, it makes a contradictory leap to conclude that the State nevertheless cannot be considered the true party in interest here because the State's Attorney is not the "alter ego" of the State.

One of the primary problems with this argument is that the "alter ego" analysis is not a separate and required inquiry, but rather, a method of examining the extent of the State's interests in cases, unlike this one, where a state agency or subdivision is present in an action asserting its own interests, most commonly as a defendant. *E.g., Moor v. Alameda Cty.*, 411 U.S. 693, 717–22 (1973) (in § 1983 action brought against a county for injuries caused by deputy sheriff, holding that State was not true party in interest because county was not an "alter ego" of the State under California law); *PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1416–17 (in breach of contract action against state agency arising out of construction of wastewater treatment plant, finding agency was not alter ego of state); *see also Indiana Port Comm'n*, 702 F.2d at 109–10 (7th Cir. 1983) (in case brought by commission to collect fees for

3

use of harbor, Port was not "alter ego" but "an independent corporate entity seeking to assert its own rights in this action").[2] Hence, the analysis really has no applicability to the present situation.

The relevant inquiry is whether the State has a "substantial stake" in this litigation, with the Court "examin[ing] 'the essential nature and effect of the proceeding, as it appears from the entire record.'" *AU Optronics*, 794 F. Supp. 2d at 849 (citing *In re New York*, 256 U.S. 490, 500 (1921)). Here, such a substantial stake undoubtedly exists, where the State, through its State's Attorney, is enforcing its own interests in obtaining civil penalties and injunctive relief. Such requested relief "affects the economic well-being of its citizens broadly," making the State the real party in interest. *Id*. at 852.

While Facebook accuses Plaintiff of "collapsing" the inquiry into a single step, its opposition brief makes clear that the alter ego analysis is not a separate inquiry. Immediately after insisting on this two-step analysis, Facebook turns directly to a discussion of a series of cases that make no mention of an "alter ego" requirement and instead point to a unitary rule focused on the benefits the State will obtain. (*See* Def.'s Resp. Br. at 4, citing *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 59 (1901) (in case brought by railroad commission, no mention of "alter ego" analysis and states unitary rule that "state is such real party when the relief sought is that which inures to it alone . . . ."); *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 738 (9th Cir. 2011) (in case brought by department, no "alter ego" analysis, and discussing whether the remedies sought by the agency would actually benefit the State versus a judgment that would operate solely "in favor of the person claiming to be

---

[2] Qui tam cases can serve as a useful guide here. In that context, a relator may advance a State's interests in a *qui tam* action. *See, e.g., Scachitti v. UBS Fin. Servs.*, 215 Ill. 2d 484, 504 (2005). In *Scachitti*, for example, the Illinois Supreme Court held that a relator could bring a statutory whistleblower action on behalf of Illinois because the action was subject to the Illinois Attorney General's oversight. *Id*. at 515. Significantly, even though the relator prosecuted the action, Illinois was deemed the real party in interest. *Id*.

4

aggrieved."). Put simply, interposing the "alter ego" analysis as a separate requirement for establishing whether the State is a real party in interest finds no support in the law. Even still, the State's Attorney can be considered the "alter ego" of the State for the purposes of this case.

> b. <u>A State's Attorney is permitted to act as the "alter ego" of the State in an action enforcing the Illinois Consumer Fraud Act.</u>

Facebook argues that, though the State's Attorney has authorization to bring this suit in the name of the People, she nevertheless is not the alter ego of the State because she is a "county officer." Read to its logical conclusion, Facebook's position is that no action brought by a State's Attorney can be one in which the State is the true party in interest because she is incapable of representing the entire State's interests, even where statutorily authorized to do so. This position—if it is coherent at all—is not supported by the few cases that Facebook unearths to describe the State's Attorney as a "county officer," each of which are directly contradicted by recent Illinois Supreme Court decisions. Nor is it supported by Facebook's examination of the respective responsibilities of the Attorney General and the State's Attorney—there is no daylight between the two that is relevant to the question before the Court.

Turning first to the case law, Facebook cites two Illinois Supreme Court cases—the latest from 1943 and the other, 1906—that observe solely in *dicta* that a State's Attorney is a county officer, and the latter was directly overruled on this point. *Ashton v. Cook County*, 384 Ill. 287, 297 (1943) (noting State's Attorney was "county officer" in case finding that State's Attorney had sole authority to collect county taxes, to the exclusion of County Board's effort to collect them directly through private attorneys); *Cook County v. Healy*, 222 Ill. 310, 316–17 (1906), *overruled by Hoyne v. Danisch*, 264 Ill. 467 (1914). In *Ingemunson v. Hedges*, the Illinois Supreme Court noted that in *Healy* and another older case, *People v. Williams*, 232 Ill. 519 (1908), state's attorneys were held to be county officers. 133 Ill. 2d 364, 369 (1990). *Ingemunson*

5

then observed that those cases had been overruled by *Hoyne*, which established that "State's Attorneys are State officers under the language of the [Illinois] constitution, not, as the court had concluded in *Williams*, county officers." *Ingemunson*, 133 Ill. 2d at 369, *citing Hoyne*, 264 Ill. at 470–72. *Accord McGrath v. Gillis*, 44 F.3d 567, 572 (7th Cir. 1995) (noting that *Ingemunson* recognized that the holdings in *Healy* and *Williams* did not survive *Hoyne*). As *Ingemunson* shows, *Healy* has not been good law in Illinois for over a century, since the Illinois Supreme Court decided *Hoyne* in 1914. Thus, *Healy* offers no aid to Facebook. Neither does *Ashton*, which on its facts recognizes the State's Attorneys' independence from the county. *See* 384 Ill. at 297.

Facebook's argument that the Illinois Constitution makes the Attorney General the only official capable of representing the State's interests is misplaced. In fact, the State's Attorney's capacity to represent the State's interests as a whole is a longstanding feature of Illinois government. During one period after the passage of the 1848 Constitution, there was no Attorney General at all and only State's Attorneys, ILL. CONST., Art. 5, § 28 (1848), who were directed to represent the State in "all business . . . in which the state or any county may be interested," Ill. Laws 1849 (2nd Sess.), p. 7.[3] More importantly, recent cases make clear that Illinois has not changed its position on this question with the 1870 or 1970 constitutions. *See People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 27 (State's Attorneys are state officers with powers "largely coincident" with Attorney General); *see also County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 475 (2005) (noting longstanding Illinois law that State's

---

[3] This document is available at https://ia601405.us.archive.org/21/items/lawsofstateofillinois16illi/lawsofstateofillinois16illi.pdf.

Attorneys are "state, rather than county, officers").[4] Accordingly, the State's Attorney's ability to represent the interests of the State is primarily a question of their statutory authority to do so, which is not in question here. *See People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 455 (1980) (where the legislature gives concurrent authority to the Attorney General and the State's Attorney, the Attorney General may not usurp the State's Attorney's authority); *see also People ex rel. Devine v. Time Consumer Marketing, Inc.*, 336 Ill. App. 3d 74, 81 (1st Dist. 1992).

Facebook also relies centrally on *Boyd v. Village of Wheeling*, No. 83 C 4768, 1985 WL 2564 (N.D. Ill. 1985), and the case's observation—in finding that the County could be liable in a § 1983 case for the policies of a State's Attorney—that the State's Attorney is the "chief prosecuting and advising attorney of the county . . ." and her "actions and policies [are those] of the County." (*See* Def.'s Br. at 2, 3, 7, 8, 9). True enough, the court held as much, but it's telling that essentially every court since 1985 has reached the opposite conclusion: holding that the State's Attorney is a state officer. *See Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) (Eleventh Amendment barred Section 1983 claim for damages against the State's Attorney because he was a State officer); *see also Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999) (same); *Manos v. Caira*, 162 F. Supp. 2d 979, 987 (N.D. Ill. 2001) (same); *Patterson v. Burge*, 328 F. Supp. 2d 878, 899 (N.D. Ill. 2004) (finding that counties are not liable for State's Attorneys "[i]n light of ample precedent concluding that state's attorneys are state officials and not county employees," and collecting cases); *Houston v. Cook County*, 758 F.

---

[4] Facebook also cites a Seventh Circuit case—preceding *Ingemunson, Gaughan* and *Bear Stearns*—which holds that a State's Attorney without statutory jurisdiction over a crime may not grant immunity that binds other State's Attorneys, because State's Attorneys do not always "speak" for the State. *Staten v. Neal*, 880 F.2d 962, 966–67 (7th Cir. 1989). The court's reasoning turns on the State's Attorney's lack of statutory authority to act as the State's agent in that context, *id.* at 965–66, which is not missing here. The court's broad observation that a State's Attorney does not work for the State, *id.* at 966, is not necessary to the holding and should not survive the later Illinois cases on point.

7

Supp. 1225, 1227 (N.D. Ill. 1990); *Stokes v. City of Chicago*, 660 F. Supp. 1459, 1462 (N.D. Ill. 1987); *Jones v. City of Chicago,* 639 F. Supp. 146, 154 (N.D. Ill. 1986). The Seventh Circuit's more recent reasoning in the Eleventh Amendment context, upon which these cases rely, renders the district court's holding in *Boyd* legally untenable and all but overruled. *See Garcia*, 24 F.3d at 969 ("Whether a particular official is the legal equivalent of the State itself is a question of that State's law . . . and the Illinois Supreme Court decided in 1990 that State's Attorneys are state officials.").

Facebook's lengthy examination of the statutory and constitutional duties of State's Attorneys and the Attorney General similarly adds nothing to this debate. It is an unremarkable proposition that the Attorney General is the State's primary legal officer and, in certain instances, has responsibilities to the State that the State's Attorney does not. *E.g.*, 15 ILCS 205/4 (must advise and issue written opinions on the duties of the governor and other state's officers). And Facebook rightfully observes that many cases in which courts must examine the State's interests arise when the Attorney General has brought suit. *E.g., AU Optronics*, 794 F. Supp. 2d at 845. But it does not follow that the State's Attorney is therefore not a state officer or that the authority to represent the State in this action expressly granted to her by the Illinois Legislature in ICFA is somehow nullified.

Not surprisingly, Facebook's primary authority on this point, *People ex rel. Devine v. Time Consumer Marketing, Inc.*, doesn't speak to the issue. 336 Ill. App. 3d at 81. In that case, the court found—after acknowledging that ICFA "authorizes either the Illinois Attorney General or any State's Attorney to bring an action on behalf of the People of the State of Illinois for a violation of the act"—that the statute gives the power to enter into an "Assurance of Voluntary Discontinuance" to the Attorney General alone. *Id.* (citing 815 ILCS 505/6.1). Nowhere does the

8

court suggest, as Facebook contends, that because the Attorney General has certain exclusive powers, that a State's Attorney is *per se* prohibited from representing the State's interests as a whole.

Facebook's argument, at the end of the day, is that a State's Attorney is never truly acting for the State, and accordingly, any case brought by the State's Attorney on behalf of the State is one brought by a citizen of Illinois. But such a rule is wholly contrary to Illinois law and would have far-reaching and absurd effects, considering the other major context in which the State's Attorney brings actions on behalf of the State: criminal prosecutions, all of which are—*purportedly*, in Facebook's estimation—brought on behalf of the People of the State. *E.g., People of the State of Illinois v. Sammy Smith*, 2018 IL App (1st) 151402; *People of the State of Illinois v. Norman Brown*, 2017 IL App (1st) 150203. If the State's Attorney is a citizen of Illinois when she brings those actions, they are removable when brought against non-residents, 28 U.S.C. § 1332(a)(1), and when brought against non-citizens of the United States, 28 U.S.C. § 1332(a)(2), provided the amount in controversy requirement is met. But, such cases are not actually removable, because there—just like here, where the action is brought to protect the well-being of citizens broadly—the State is the real party in interest.

**II.     The State is the true party in interest in this action seeking civil penalties and injunctive relief.**

Next, it is important to remember that in this case, the State seeks solely civil penalties and injunctive relief, and does not seek relief for any private individual. It's settled law that the Court need not "pierce" the pleadings to determine if a benefit is inuring to any party other than the State where the action seeks relief on behalf of the State as a whole in furtherance of its sovereign interests. In *LG Display Co.*, the Seventh Circuit expressly declined such an invitation:

> [D]efendants argue that if we consider what's *really* going on in this suit, we will see that Illinois resident purchasers are the real parties in interest and, building on

9

> that premise, conclude that the 100 or more plaintiffs, minimal diversity, and amount-in-controversy requirements are met. To reach the conclusion that Illinois resident purchasers are the real parties in interest, however, the petitioners ask us to separately determine the parties in interest in each of the Attorney General's claims.

665 F.3d 768, 772–73 (7th Cir. 2011). The Seventh Circuit refused, citing the longstanding principle that a State's case should stay in state courts "unless some clear rule demands it." *Id.* at 773–74 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,* 463 U.S. 1, 21 n. 22 (1983)). In other words, it is settled law that even where a State seeks to recover benefits directly for individual citizens, the State maintains its interest in the case. *AU Optronics Corp.*, 794 F. Supp. 2d at 856; *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1051–53 (C.D. Ill. 2009); *People of the State of Illinois v. LiveDeal, Inc.*, No. 08-3287, 2009 WL 383434, at *3 (C.D. Ill. Feb. 12, 2009). In a case like this one, where *all* of the relief sought relates solely to government enforcement, the Court should not find that the State's paying its attorneys somehow vitiates its interest in the case. Certainly, Facebook fails to provide any legal authority to support the proposition.

Facebook supposes that the Court should trace every dollar of relief sought to its final destination—contrary to the above decisions, including this Court's, which it dismisses in a footnote—because that examination is required by two cases decided about a century ago. *Hickman*, 183 U.S. at 59 (1901); *Port of Seattle v. Or. & Wash. R. R. Co.*, 255 U.S. 56, 71 (1921). *Hickman* held that a case brought by a railroad commission, seeking to enjoin a railroad company from charging excessive rates for passage over the Boonville Bridge across the Missouri river, 183 U.S. at 57, was not one in which the State was the true party in interest, *id.* at 59. The Court held that the railroad commission's case was solely for the benefit of Boonville Bridge railroad passengers, that it was "not an action to recover any money for the state," and the

10

State was accordingly not the true party in interest. *Id.*

Facebook latches on to the rule as the *Hickman* court stated it, which is that "the state is the real party when the relief sought is what *inures to it alone*, and in its favor the judgment or decree, if for plaintiff, will effectively operate." *Id.* (emphasis added); *see also Port of Seattle*, 255 U.S. at 71 (where port authority sought injunction to prevent railroad's use of waterway, in part to protect authority's right to collect 75% of rental permit revenues, State was not real party in interest). Facebook's rule is that *any* benefit that runs to a citizen or an agency's interest and not the State's voids the State as a real party.

That rule just doesn't square with the facts of *Hickman* or *Port of Seattle*, or any case decided since. As the court in *SDS West Corp.* observed in distinguishing *Hickman*, 640 F. Supp. 2d at 1051, virtually none of the relief sought in these older cases went to the State. *Hickman*, 183 U.S. at 59 ("It is not an action to recover any money for the state. Its results will not inure to the benefit of the state as a state in any degree."); *Port of Seattle*, 255 U.S. at 71 (rental charges would largely go to the Port).[5] And in every case cited by Facebook as a supposed vindication of the every-penny-to-the-State rule, the governmental action found not to be in the State's interests was for the sole benefit of a handful of people or entities:

- *Lucent*, 642 F.3d at 735–36 (suit by Department of Fair Employment and Housing for reinstatement, back pay, and equitable relief for Steven Carauddo, allegedly discriminated against by his employer);

- *Nw. Pub. Commc'ns Council ex rel. Oregon v. Qwest Corp.*, 877 F. Supp. 2d 1004, 1013 (D. Or. 2012) (suit by trade organization for refunds to members owed

---

[5] Facebook also cites a Fifth Circuit case from around this time in a different posture, *Parks v. Carriere Consolidated School District*, in which a school district sued an individual for breach of contract with the district. 12 F.2d 37 (5th Cir. 1926). The court concludes that the recovery would go to the state, but because the school district was suing to enforce its own contract it was the true party in interest. *Id.* at 38. Here, the State's Attorney represents the State's interests (as a whole) in an action to benefit the State. If this case is still good Fifth Circuit law, it has no applicability to these facts.

11

by defendant corporations);

- *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F. Supp. 149, 157 (S.D.N.Y. 1970) (action arising from suit by state to appoint receiver for funds to be distributed to crime victims); and

- *California v. Northern Tr. Corp.*, No. CV 12–01813 DMG (FMOx), 2013 WL 1561460 (C.D. Cal. 2013) (suit by city attorney for defendant defrauding the Los Angeles City Employee's Retirement System ("LACERS"), seeking restitution to LACERS).[6]

*Lucent*, the case that Facebook relies on most for modern support of its rule, ultimately proves why it's wrong. Though the Ninth Circuit in *Lucent* cited the *Hickman* "inures to it alone" dicta, the court considered the possibility that equitable relief benefitting other individuals—not just Mr. Carauddo—could render the State an interested party. While the court ultimately rejected the relief as "tangential" to the individual relief sought, 642 F.3d at 739, the fact that it was willing to engage in the inquiry demonstrates that even Facebook's leading case doesn't support its legal position.

If there were any lingering doubt, it was put to rest about a year later when the Ninth Circuit clarified its position on the issue. In *Nevada v. Bank of America Corp.*, which Facebook fails to cite, the Ninth Circuit remanded a *parens patriae* action brought by the Nevada attorney general against Bank of America, which alleged that Bank of America misled Nevada consumers about home loan modification and foreclosure processes. 672 F.3d 661, 664–65 (9th Cir. 2012).[7]

---

[6] Facebook produces a few other cases, none of which remotely support its proposition that any benefit running to a non-state party deprives the State of a true interest in the case. *Reinhardt v. Montana Human Rights Bureau* is in a different posture where the State agency defendants had no liability or recovery available; Facebook cites it solely for the fact that it favorably quotes the *Hickman* dicta in this millennium, which is rather hard to come by. No. CV 10-27-H-CCL, 2010 WL 5391280, at *2 (D. Mont. Dec. 17, 2010). *Missouri v. Homesteaders Life Association* turns on the fact that the state officer claiming to bring suit on behalf of the State lacked authority to do so, 90 F.2d 543, 545 (8th Cir. 1937), an argument Facebook disclaims here.

[7] The purported basis for removal in *Bank of America* was CAFA, but minimal diversity is defeated by a State's presence just as traditional diversity is. 672 F.3d at 669.

12

The attorney general in *Bank of America* sought restitution for individual consumers, but the Ninth Circuit found that the relief sought for non-State parties did not "[diminish] Nevada's sovereign interest in protecting its citizens and economy from deceptive mortgage practices . . . ." *Id.* at 671. Instead, that sovereign interest was what made the State the true party in interest. *Id.* The *Bank of America* court, in distinguishing *Lucent*, made quite clear that the case does not stand for an all-or-nothing proposition about relief to the State: instead, the State's interests in *Lucent* were simply too "tangential." *Id.* at 671–72.

Here, the State seeks *only* civil penalties and injunctive relief, in support of its sovereign interests "in protecting its citizens and economy from deceptive [data] practices." No court—not even the Ninth Circuit upon which Facebook so heavily relies—suggests that this Court must "pierce" the pleadings in a search for unnamed parties that stand to benefit alongside the State. This Court's refusal to do so in *AU Optronics* remains good law, *see* 794 F. Supp. 2d at 852–53, and is vindicated by later holdings of the Seventh and Ninth Circuits. Examining the complaint as a whole, this Court can easily conclude that the State is the party in interest: all relief, both civil penalties and injunctive, would flow to the People of the State of Illinois as a whole, and the State's "substantial stake" in this case is self-evident.[8]

Undeterred by the precedent set by this and other courts, and in a desperate attempt to deflect from the issues, Facebook resorts to attacking the appointment of private attorneys to pursue this action. Facebook does not take genuinely take issue with the State's Attorneys'

---

[8] Facebook asserts that the State has alleged interests sufficient only to substantiate standing in this *parens patriae* action, but not a genuine interest as a party in the case. Plaintiff doubts that a State can have standing to assert a *parens patriae* action while lacking status as a real party in interest. *See LG Display Co.*, 665 F.3d at 773–74 (discussing *parens patriae* and interests analysis together); *see also People of State of Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 765 (7th Cir. 1986). To the extent that these are different things, the State has met both: a quasi-sovereign interest in protecting its citizens and direct interest in the relief that it seeks.

13

ability to seek appointment of private attorneys to pursue cases like this.[9] Rather, all roads lead back to Facebook's argument that unless every single dollar sought can be traced to benefit the state as a whole, then the State loses its status as the real party in interest. In truth, for all the hype surrounding this argument—indeed, it's in the first paragraph of its opposition brief—Facebook produces no citation or reasoning, beyond imagined support from two relics of the Supreme Court, to support its novel theory that hiring counsel with special expertise vitiates the State's interest in the case. That the State has agreed to pay its attorneys—on a contingent rather than guaranteed hourly basis—is neither a remarkable fact nor one that alters whether the State has a substantial stake in the outcome of the case such that it is the real party in interest. Accordingly, Plaintiff is not a citizen for the purposes of diversity jurisdiction, and the Court must grant Plaintiff's motion to remand the action.

## III. Conclusion

The State respectfully requests that this Court remand this action to the Circuit Court of Cook County, Illinois, and grant any additional relief as may be just and proper.

---

[9] Facebook quickly loses its nerve as to this half of its opening salvo, relegating its advertised attack on the validity of the special assistant state's attorneys' appointment to a footnote. Plaintiff must commend Facebook for realizing that this argument—besides being a collateral attack on a state court order, as well as a transparent effort to undermine the power of the State to go after actors like Facebook—had nothing to do with the issues before the Court.

Dated: May 16, 2018                                          Respectfully submitted,


**KIMBERLY M. FOXX,**                                        **Special Assistant State's Attorneys**
**State's Attorney of Cook County**

By: /s/ Kent S. Ray                                          By: /s/ Rafey S. Balabanian

Kent S. Ray                                                  Jay Edelson
Assistant State's Attorney                                   jedelson@edelson.com
kent.ray@cookcountyil.gov                                    Benjamin H. Richman
COOK COUNTY STATE'S ATTORNEY'S OFFICE                        brichman@edelson.com
69 W. Washington Street, Suite 3130                          Ari J. Scharg
Chicago, Illinois 60602                                      ascharg@edelson.com
Tel: 312.603.8600                                            Alfred K. Murray II
Fax: 312.603.9830                                            amurray@edelson.com
                                                             EDELSON PC
                                                             350 N. LaSalle Street, 14th Floor
                                                             Chicago, Illinois 60654
                                                             Tel: 312.589.6370
                                                             Fax: 312.589.6378

                                                             Rafey S. Balabanian
                                                             rbalabanian@edelson.com
                                                             EDELSON PC
                                                             123 Townsend Street, Suite 100
                                                             San Francisco, California 94107
                                                             Tel: 415.212.9300
                                                             Fax: 415.373.9435

## CERTIFICATE OF SERVICE

  I, Rafey S. Balabanian, an attorney, hereby certify that I caused to be served the above and foregoing *Plaintiff's Reply in Support of Motion for Remand to State Court* by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system, on this the 16th day of May 2018.

/s/ Rafey S. Balabanian