# EXHIBIT 5

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,**<br>**ex. rel. Kimberly M. Foxx, State's Attorney**<br>**of Cook County, Illinois,** | §<br>§<br>§<br>§ | |
| *Plaintiff*, | §<br>§ | **Case No. 1:18-CV-02667** |
| **v.** | §<br>§ | |
| **FACEBOOK, INC.,**<br>**SCL GROUP LIMITED, and**<br>**CAMBRIDGE ANALYTICA LLC,** | §<br>§<br>§<br>§ | |
| *Defendants*. | §<br>§<br>§<br>§ | |

---

## FACEBOOK, INC.'S MOTION FOR LEAVE TO FILE SURREPLY IN SUPPORT OF OPPOSITION TO MOTION FOR REMAND

---

Facebook, Inc. ("Facebook") respectfully moves for leave to file a brief surreply in further opposition to Plaintiff's Motion for Remand.

As this Court has noted, "[t]he decision whether to grant a motion for leave to file a surreply is within the Court's discretion." *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (Dow, J.) (citing *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 439 (7th Cir. 1999)). The Court may grant leave to file a surreply if it believes that doing so will help it "to make an informed decision," *Sawyer v. Columbia Coll.*, 2010 WL 3081260, at *1 n.1 (N.D. Ill. Aug. 5, 2010), or "help[] to clarify the issues before the Court," *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1008 (N.D. Ill. 2011) (Dow, J.).

Facebook believes that a brief surreply on the jurisdictional issues raised by Plaintiff's remand motion will help clarify the issues for the Court. This case involves an important issue of federal jurisdiction—whether a civil suit brought by a Illinois County State's Attorney against an

out-of-state corporation may be removed to federal court. *Cf. Martin*, 784 F. Supp. 2d at 1008 (granting leave to file surreply that "helped to clarify" federal preemption issue). Facebook submits that such clarification will be particularly helpful here, because Plaintiff's reply has confused the jurisdictional issue by mischaracterizing certain points of law and statements in Facebook's opposition. *See, e.g.*, *Prather v. AT&T Inc.*, 996 F. Supp. 2d 861, 865 n.2 (N.D. Cal. 2013) (granting leave to file sur-reply intended to correct "mischaracterization of the facts"); *Tube City IMS, LLC v. Severstal U.S. Holding, LLC*, 2013 WL 828175, at *2 (N.D. W. Va. Mar. 6, 2013) (granting leave to correct mischaracterizations of party's arguments); *Hall v. Lexington Ins. Co.*, 2009 WL 10688711, at *2 (N.D. Ohio Sept. 23, 2009) (granting leave where "Plaintiff seeks to bring to the court's attention an alleged misstatement in Defendant's Reply").

DATED: May 21, 2018                Respectfully submitted,

**EIMER STAHL LLP**

By: */s/ Nathan P. Eimer*
Nathan P. Eimer
Susan M. Razzano
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
Telephone: 312.660.7600
Facsimile: 312.692.1718
NEimer@eimerstahl.com
SRazzano@eimerstahl.com

**GIBSON, DUNN & CRUTCHER, LLP**

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
Osnyder@gibsondunn.com

Joshua S. Lipshutz (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
Jlipshutz@gibsondunn.com

Kristin A. Linsley (*pro hac vice*)
Brian M. Lutz (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
Klinsley@gibsondunn.com
Blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2018, the foregoing Motion for Leave to File Surreply in Support of Opposition to Motion for Remand was filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Nathan P. Eimer*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | § | |
| **ex. rel. Kimberly M. Foxx, State's Attorney** | § | |
| **of Cook County, Illinois,** | § | |
| | § | **Case No. 1:18-cv-02667** |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **FACEBOOK, INC.,** | § | |
| **SCL GROUP LIMITED, and** | § | |
| **CAMBRIDGE ANALYTICA LLC,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

---

## FACEBOOK, INC.'S SURREPLY IN FURTHER OPPOSITION TO REMAND MOTION

---

Facebook, Inc. respectfully submits this brief surreply to address five flawed contentions raised in Plaintiff's Reply in Support of the Motion to Remand.[1]

1. Plaintiff contends that "where an enforcement action is brought on behalf of the People, the State is the real party in interest and diversity is lacking." Reply at 1. That is simply not correct. The rule that a State's "'substantial stake' in the outcome" destroys diversity, *see id*. at 2, has been applied when the State (or its alter ego, the Attorney General) is the plaintiff, as was true in *AU Optronics*. In such cases, the removing defendant asks the court to look beyond the pleadings to examine whether the true parties in interest are private citizens or other non-state parties, such that the State is only a nominal party. *E.g.*, *LG Display Co. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845 (N.D. Ill. 2011); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047 (C.D. Ill. 2009); *People of Illinois v. LiveDeal,*

---

[1] Facebook has separately moved the Court for leave to file this sur-reply.

*Inc.*, 2009 WL 383434, at *2 (C.D. Ill. Feb. 12, 2009). Courts are reluctant to second-guess whether the State really has an interest in litigation that the State itself has chosen to file on its own behalf. *See LG Display*, 665 F.3d at 772. The rule is very different where, as here, the State is *not* the party bringing suit. *See Port of Seattle v. Oregon & W. R. Co.*, 255 U.S. 56, 71 (1921) (State's interest in action brought by municipal port to quiet title in favor of the state did not destroy diversity jurisdiction). In such cases, what matters is whether the entity that brings the suit has independent litigating authority, and diversity jurisdiction will be destroyed only if, unlike here, the relief "inures to [the State] alone." *Missouri, Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59 (1901); *see also Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737-38 (9th Cir. 2011); Opp. at 13-14 (citing cases). That is precisely why federal courts have held that a non-state litigant does not become the "State" for diversity purposes merely because that litigant— whether a city, a county, or a private citizen—is authorized by state law to sue in the name of the "People." *See*, *e.g.*, *California v. N. Tr. Corp.*, 2013 WL 1561460, at *2 (C.D. Cal. Apr. 10, 2013) (noting that, although California's UCL authorizes City Attorneys to bring actions "in the name" of the State, "this statutory language does not require the Court to find that the State is in fact the real party in interest for diversity purposes"); *In re: Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 730 (E.D. Pa. 2017) (finding that, even though underlying statute authorized county to sue in the name of the "People," the county, not the state, was the real party in interest where "the relief sought would not inure to the benefit of the state alone").

2.      In this case, the State itself is not the plaintiff and is not "enforcing its own interests." Reply at 4. We know that, not only because the Cook County State's Attorney is the plaintiff, but also because the Illinois Attorney General herself has been in contact with Facebook regarding the very same events underlying Plaintiff's claims. On March 26, 2018, 36 Attorneys

General, including Illinois Attorney General Lisa Madigan, sent Facebook a letter seeking answers to various questions concerning Cambridge Analytica and the use of Facebook users' personal information. Illinois Attorney General, "Madigan & Other Attorneys General Demand Answers from Facebook" (Mar. 26, 2018), *available at* https://bit.ly/2IUaOeT (last visited May 18, 2018); *see also* Letter from Nat'l Assn. of Attorneys General to Mark Zuckerberg (Mar. 26, 2018) (attached as Exhibit A). Discussions between Facebook and those Attorneys General, including the Illinois Attorney General, remain ongoing as the Attorneys General gather facts about what transpired. This independent activity by the Attorney General underscores the reality that the present action is being pursued not by the State, but by a Cook County official and a group of private lawyers working on a contingency fee basis on behalf of the County—and confirms that the Cook County State's Attorney is acting for its own interests and not those of the State. *Cf. Avandia*, 238 F. Supp. 3d at 731 (state's resolution of related claims against the defendants confirmed that the state was not a real party in interest to county's pursuit of separate claim, albeit in the name of the "People" of the state). Indeed, the website of those private attorneys, a screenshot of which is attached as Exhibit B, confirms that their client is "Cook County"—not the State. Ex. B at 1 (Edelson "is … leading Cook County's suit against Facebook"), 2 (Edelson is "[r]epresenting Cook County, Illinois in its suit against Facebook").

3.       Plaintiff asserts that "the State's Attorney's ability to represent the interests of the State is primarily a question of their statutory authority to do so." Reply at 7. That may be true as a matter of state law, but statutory authorization to sue does *not* control the question whether diversity jurisdiction exists; states cannot insulate cases from federal jurisdiction merely by authorizing parties who are not the State to sue on the State's behalf. *See* Opp. at pp. 4–5 (collecting cases).

4.      Plaintiff also asserts that Illinois cases recognizing that State's Attorneys are characterized as county officers for purposes of state compensation laws have been overruled. This mischaracterizes Facebook's Opposition, which simply noted that Illinois cases have gone both ways on that question—citing the very case that Plaintiff now cites as the "overruling" case—and that the "two lines of precedent can be reconciled."  *See* Opp. at 9.  Specifically, although a State's Attorney may act as a "state officer" for some purposes—such as prosecuting criminal defendants, *see Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994)—it does not follow that a State's Attorney stands in the shoes of the State where, as here, he or she "advocate[s] for County residents through proactive civil litigation." Cook County State's Attorney, *Protecting the Interests of the County and Its Residents*, https://bit.ly/2ryexqo (last visited May 20, 2018); *see Staten v. Neal*, 880 F.2d 962, 966 (7th Cir. 1989) ("State's attorneys in Illinois work for their respective counties, not the State Attorney General."); Opp. at 8 n.4.  In any event, for federal diversity purposes—which is the only question relevant here—the "question [is] whether [the State's Attorney's Office] has the same kind of independent status as a county or is instead an arm of the State," and that is ultimately "a question of federal law."  *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997).  Thus, contrary to Plaintiff's argument, Reply at 8, it is critical to "examin[e] … the statutory and constitutional duties of State's Attorneys and the Attorney General"—and counsel's own representations that "Cook County" is the client—to evaluate whether the State is, in fact, a party here.

5.      Finally, Plaintiff offers the absurd and incorrect suggestion that exercising diversity jurisdiction in this matter would mean that even *criminal* prosecutions brought by the Cook County State's Attorney would be subject to removal.  Reply at 9.  That is simply incorrect, as Section 1332 creates jurisdiction only for "civil actions."  28 U.S.C. § 1332.  Federal courts cannot

exercise jurisdiction over criminal prosecutions brought in state court, except for those brought against federal officers and agencies. *Id*. § 1442. Keeping this case in federal court would therefore not have the "far-reaching and absurd effects" Plaintiff describes. Reply at 9.

DATED: May 21, 2018                    Respectfully submitted,

                                       **EIMER STAHL LLP**

                                       By:  */s/ Nathan P. Eimer*
                                       Nathan P. Eimer
                                       Susan M. Razzano
                                       EIMER STAHL LLP
                                       224 South Michigan Avenue
                                       Suite 1100
                                       Chicago, IL 60604
                                       Telephone:  312.660.7600
                                       Facsimile:  312.692.1718
                                       NEimer@eimerstahl.com
                                       SRazzano@eimerstahl.com

                                       **GIBSON, DUNN & CRUTCHER, LLP**

                                       By:  */s/  Orin Snyder*
                                       Orin Snyder (*pro hac vice*)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       200 Park Avenue
                                       New York, NY 10166-0193
                                       Telephone:  212.351.4000
                                       Facsimile:  212.351.4035
                                       Osnyder@gibsondunn.com

                                       Joshua S. Lipshutz (*pro hac vice*)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, DC 20036-5306
                                       Telephone:  202.955.8500
                                       Facsimile:  202.467.0539
                                       Jlipshutz@gibsondunn.com

                                       Kristin A. Linsley (*pro hac vice*)
                                       Brian M. Lutz (*pro hac vice* forthcoming)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       555 Mission Street, Suite 3000
                                       San Francisco, CA 94105-0921

Telephone:  415.393.8200
Facsimile:  415.393.8306
Klinsley@gibsondunn.com
Blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

_/s/ Nathan P. Eimer_

**Exhibit A**



**National Association**
*of* **Attorneys General**

PRESIDENT
**Derek Schmidt**
*Kansas Attorney General*

PRESIDENT-ELECT
**Jeff Landry**
*Louisiana Attorney General*

VICE PRESIDENT
**Tim Fox**
*Montana Attorney General*

IMMEDIATE PAST PRESIDENT
**George Jepsen**
*Connecticut Attorney General*

EXECUTIVE DIRECTOR
**Chris Toth**

March 26, 2018

Mark Zuckerberg
Facebook, Inc.
1601 Willow Road
Menlo Park, California 94025

Dear Mr. Zuckerberg:

The undersigned State and Territory Attorneys General are profoundly concerned about the recently published reports that personal user information from Facebook profiles was provided to third parties without the users' knowledge or consent. As the chief law enforcement officers of our respective states, we place a priority on protecting user privacy, which has been repeatedly placed at risk because of businesses' failure to properly ensure those protections. Most recently, we have learned from news reports that the business practices within the social media world have evolved to give multiple software developers access to personal information of Facebook users. These reports raise serious questions regarding consumer privacy.

Early reports indicate that user data of at least 50 million Facebook profiles may have been misused and misappropriated by third-party software developers ("developers"). According to these reports, Facebook's previous policies allowed developers to access the personal data of "friends" of people who used applications on the platform, without the knowledge or express consent of those "friends." It has also been reported that while providing other developers access to personal Facebook user data, Facebook took as much as thirty (30) percent of payments made through the developers' applications by Facebook users.

Facebook apparently contends that this incident of harvesting tens of millions of profiles was not the result of a technical data breach; however, the reports allege that Facebook allowed third parties to obtain personal data of users who never authorized it, and relied on terms of service and settings that were confusing and perhaps misleading to its users.

These revelations raise many serious questions concerning Facebook's policies and practices, and the processes in place to ensure they are followed. Were those terms of service clear and understandable, or buried in boilerplate where few users would even read them? How did Facebook monitor what these developers did with all the data that they collected? What type of controls did Facebook have over the data given to developers? Did Facebook have protective safeguards in place, including audits, to ensure developers were not misusing the Facebook user's data? How many users in our respective states were impacted? When did Facebook learn of this breach of

1850 M Street, NW
Twelfth Floor
Washington, DC 20036
Phone: (202) 326-6000
http://www.naag.org/

privacy protections?  During this timeframe, what other third party "research" applications were also able to access the data of unsuspecting Facebook users?

In addition to responses to these questions, we request an update about how Facebook will allow users to more easily control the privacy of their accounts. Even with the changes Facebook has made in recent years, many users still do not know that their profile—and personal data—is available to third-party vendors. Facebook has made promises about users' privacy in the past, and we need to know that users can trust Facebook. With the information we have now, our trust has been broken.

Users of Facebook deserve to know the answers to these questions and more. We are committed to protecting our residents' personal information.  More specifically, we need to understand Facebook's policies and procedures in light of the reported misuse of data by developers.  We appreciate the information you have provided to date and expect your full cooperation going forward in our inquiries into your business practices.  To that end, we expect a full accounting for what transpired and, answers to the questions we raised above. We look forward to your prompt response.

Sincerely,

George Jepsen
Connecticut Attorney General

Tim Fox
Montana Attorney General

Ellen F. Rosenblum
Oregon Attorney General

Josh Shapiro
Pennsylvania Attorney General

Marty J. Jackley
South Dakota Attorney General

Steve Marshall
Alabama Attorney General

Eleasalo V. Ale
American Samoa Attorney General

Xavier Becerra
California Attorney General

Cynthia H. Coffman
Colorado Attorney General

Matthew P. Denn
Delaware Attorney General

Karl A. Racine
District of Columbia Attorney General

Elizabeth Barrett-Anderson
Guam Attorney General

Russell A. Suzuki
Hawaii Acting Attorney General

Lawrence Wasden
Idaho Attorney General

Lisa Madigan
Illinois Attorney General

Tom Miller
Iowa Attorney General

Derek Schmidt
Kansas Attorney General

Andy Beshear
Kentucky Attorney General

Janet Mills
Maine Attorney General

Brian Frosh
Maryland Attorney General

Maura Healey
Massachusetts Attorney General

Bill Schuette
Michigan Attorney General

Lori Swanson
Minnesota Attorney General

Jim Hood
Mississippi Attorney General

Josh Hawley
Missouri Attorney General

Gordon MacDonald
New Hampshire Attorney General

Gurbir S. Grewal
New Jersey Attorney General

Hector Balderas
New Mexico Attorney General

Eric T. Schneiderman
New York Attorney General

Josh Stein
North Carolina Attorney General

Wayne Stenehjem
North Dakota Attorney General

Mike DeWine
Ohio Attorney General

Peter F. Kilmartin
Rhode Island Attorney General

Herbert H. Slatery III
Tennessee Attorney General

T.J. Donovan
Vermont Attorney General

Mark R. Herring
Virginia Attorney General

Robert W Ferguson
Washington Attorney General

**Exhibit B**

# Edelson



## Jay Edelson

**Founder & CEO**  |  (312) 589-6375  |  Chicago  |  jedelson@edelson.com

I graduated *cum laude* with a degree in philosophy from Brandeis University and received my J.D. from the University of Michigan Law School. I primarily handle class, mass and governmental actions and complex general commercial litigation matters.

**FAVORITE CLASS** — Philosophy of Law

**LEGAL SHOW** — LA Law

**PERFECT VACATION** — on the beach with the family

**FAVORITE SPORT(S)** — Beach volleyball



Favorite Emoji   Desired Superpower   Cups of Coffee 2  How I Get Around 




## Q

### What was the first class action you ever brought?

## A

When I was a young associate at a terrific firm named Plotkin, Jacobs & Orlofsky, I brought a case called Ramlow v. Family Health Plan (Wisc. Cir. Ct., WI). Our lawsuit challenged an insurance company's decision to terminate the health insurance to groups of self-insureds. Days before the termination would have gone into effect, we won a temporary injunction, which was sustained on appeal, prohibiting the company from terminating anyone's health insurance. We eventually settled the case ensuring that each class member would remain insured.

## CURRICULUM VITAE

JAY EDELSON is the Founder and CEO of Edelson PC. He is considered one of the nation's leading plaintiff's lawyers, having secured over $1 billion in settlements and verdicts for his clients. law360 described Jay as a "Titan of the Plaintiffs' Bar".

Of Counsel explained that Jay has made a career out of "battling bullies":

> Big banks. Big tech firms. Big Pharma. The big business that is the NCAA. Plaintiff's attorney Jay Edelson wages battle against many of the nation's most fortified institutions. Not only does he refuse to back down to anyone, regardless of their stature or deep pockets, he welcomes the challenge.

> Edelson earned a monumental victory in the US Supreme Court in what's been characterized as one of the most important consumer privacy cases of the last several years, Robins v. Spokeo. He and his team are leading the charge against the NCAA in representing former college football players who suffered concussions, and their families. And, on behalf of labor unions and governmental bodies, he's elbow-deep in litigation against pharmaceutical companies and distributors for their pivotal role in the opioid crisis.

> Simply put, he's a transformational lawyer.

Other commentators have similarly singled out Jay's willingness to tackle problems other lawyers shy away from and his creativity in finding winning strategies that were not readily apparent. He successfully litigated cases of first impression against the national banks in the wake of the housing collapse, leading to the reinstatement of over $3 billion in home credit lines. Through his privacy cases, he has "fostered a reputation for his uncanny ability to come up with creative standing and damages arguments" leading to "momentum-shifting rulings in challenges to the data security and information-gathering practices of companies."

The American Bar Association recognized Jay Edelson as one of the "most creative minds in the legal industry." law360 noted that he has "taken on some of the biggest companies and law firms in the world and has had success where others have not." Yet another put it more even more simply, explaining "when it comes to legal strategy and execution, Jay is simply one of the best in the country."

Jay has received special recognition for his success in taking on Silicon Valley. The national press has dubbed Jay and his firm the "most feared" litigators in Silicon Valley and, according to the New York Times, tech's "babyfaced ... boogeyman." Most recently, Chicago Lawyer Magazine dubbed Jay "Public Enemy No. 1 in Silicon Valley." In the emerging area of privacy law, the international press has called Jay one of the world's "profiliertesten (most prominent)" privacy class action attorneys. The National Law Journal has similarly recognized Jay as a "Cybersecurity Trailblazer" — one of only two plaintiff's attorneys to win this recognition.

Jay was recently appointed Special Assistant Corporation Counsel for the City of Chicago and Special Assistant State's Attorney for Cook County, Illinois in their consolidated data breach/failure to notify lawsuit against Uber Technologies. He is also leading Cook County's suit against Facebook and Cambridge Analytica over their alleged misuse of consumer data. Jay has been appointed to represent over 2 dozen municipalities and other governmental entities in prosecuting fraud claims relating to the opioid crisis.

Jay is a frequent speaker and writer on class and mass action issues, the practice of law more generally, and training and law firm management. In recognition of the fact that his firm runs like a start-up that "just happens to be a law firm," Jay was recently named to "Chicago's Top Ten Startup Founders over 40" by Tech.co and was recognized by The Unicorn in the Room's "The 45 Over 45: Entrepreneurs Over Age 45 Who Are Disrupting the Way We Do Business."

Jay has taught class actions and negotiations at Chicago-Kent College of Law and privacy litigation at UC Berkeley School of Law. He has written a blog for Thomson Reuters, called Pardon the Disruption, where he focused on ideas necessary to reform and reinvent the legal industry and has contributed opinion pieces to TechCrunch, Quartz, the Chicago Tribune, law360, and others. He also serves on law 360's Privacy & Consumer Protection editorial advisory board.

Jay was recently included in Angeion Group's 'Leading Litigator' Series, where, in a 2-part interview (here and here), he provides expansive thoughts on his views of class action practice and law firm management.

Jay currently serves on Chicago's 47th Ward Democratic Organization Judicial Recommendation Committee, which is responsible for interviewing, vetting and slating Cook County Judicial Candidates for election.

## Representative General Class, Mass, and Governmental Cases

- Co-lead counsel in *National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation – Single Sport/Single School (Football)* multi-district litigation, bringing personal injury lawsuits against the NCAA, conferences, and its member institutions over concussion-related injuries. This case is considered to be "one of the largest actions pending in the country, a multi district litigation … that currently included about 100 personal injury class actions filed by college football players[.]"
- Representing labor unions and over 2 dozen governmental entities from throughout the country in lawsuits against the drug manufacturers and distributors over the opioid crisis.
- Lead counsel in several class actions against the major banks for suspending home credit lines in the wake of the financial crash. Settlements collectively restored billions of dollars in credit lines.
- Lead counsel in *Wigod v. Wells Fargo*, which was the first case in the country to allow consumers standing to sue over claims over the failure to honor home loan modification agreements. After the Court of Appeals noted that "prompt resolution" of the case was necessary "for the good of the country," the case settled, resulting in loan forgiveness and substantial cash payments.
- Lead counsel in $30 million class action settlement involving lead-infused Thomas the Tank Engine children's toys.
- Part of a U.S. and Canadian class action mediation team obtaining a $24 million settlement involving the 2008 contaminated pet food recalls.
- Part of a team successfully representing personal injury claimants suffering from effects of second hand smoke while working at a riverboat casino.
- Part of team representing public housing residents in environmental class action brought against the city. Suit settled for over $10 million.
- Obtained an injunction preventing an insurance company from canceling the health insurance of thousands of self-employed individuals, later reaching settlement guaranteeing them insurance for the future.

## Representative Privacy and Technology Cases

- Recognized as one of the "pioneers" of privacy class action litigation, having successfully litigated cases involving claims of privacy breaches or intrusive behavior against companies such as Netflix, Amazon, Facebook, Microsoft, Bauer Publishing and Sears and reaching settlements collectively totaling over $300 million.
- C0-lead counsel in In re Facebook Biometric Information Privacy Litigation, claiming Facebook violated Illinois state biometric law in collecting face templates. Court certified an over 6 million person class in this multi-billion dollar suit and and set trial for July 2018.
- Appointed Special Assistant Corporation Counsel for the City of Chicago and Special Assistant State's Attorney for Cook County, Illinois in their consolidated data breach/failure to notify lawsuit against Uber Technologies.
- Representing Cook County, Illinois in its suit against Facebook and Cambridge Analytica over their alleged misuse of consumer data
- Lead counsel in *Robins v. Spokeo*, where the United States Supreme Court held that "intangible" harms can satisfy Article 3 standing requirements
- After winning seminal decision in the 11th Circuit, reached the first three data breach class action settlements that provided class members cash without any showing of identify theft or other post breach injury.
- Lead counsel in over a half-dozen nationwide class action settlements collectively worth hundreds of millions of dollars involving claims of unauthorized charges on cellular telephones.
- Lead counsel in *Birchmeier v. Caribbean Cruise Line, Inc.*, resulting in a $76m settlement — the largest ever cash privacy settlement to date.
- Nicknamed the "Spam Slammer" by the Chicago Sun-Times after developing the law to prevent unsolicited text messages being sent to cellular telephones. Total 'text spam' settlements exceed $130 million.
- Representing putative classes in over a dozen biometric privacy cases. Only attorney to reach a class settlement of a biometric privacy case.

## Representative Commercial Litigation Matters

- Brought in as lead negotiator in dispute on behalf of a tech company against a VC firm alleging fraud and violations of the Securities & Exchange Act. Case resolved successfully pre-suit.
- Represented tech company in legal malpractice dispute, resulting in multi-million dollar settlement — well in excess of the 'hard' damages suffered.
- Represented start-up in legal malpractice dispute, resulting in multi-million dollar settlement.
- Advised company that faced a class action in related malpractice claims it had against its law firm, leading to a significant decrease in fees owed.
- Brought in to negotiate potential class action against brought against a nationwide nutritional food company. Case resolved prior to suit being filed for a fraction of even the nuisance value of the case.

- Advised start-up on host of legal issues, including reformulating their business plan to ensure compliance with myriad state regulatory schemes. Company later became recognized as one of the fastest growing businesses in Chicago.
- Consulted with successful mid-west technology company, also recognized as one of the fastest growing in the area.
- Consulted with med tech start up, including help with product launch, negotiation of licensing agreement,  and general strategic issues.
- Consultant on several tech start-ups, providing legal and strategic advice.

### Representative Mediations

- Lead negotiator in over 100 mediations collectively involving multi-billions of dollars at issue.  The mediations included consumer and employment class actions, individual multi-party, mass and class personal injury lawsuits, and individual cases ranging from business to business disputes to employment claims to civil rights matters.
- Served as a private mediator in successful resolution of 8-figure class action lawsuit.
- Served as an informal mediator in several class action disputes involving fee issues and objections.

### Awards and Honors

- Recognized as a "Cybersecurity Trailblazer" by the National Law Journal, 2016.
- Won the first ever "President's Award" given by the Illinois Bar Foundation, 2016.
- Finalist for the 2016 World Technology Awards in the law category.
- Named one of "Chicago's Top Ten Startup Founders over 40" by Tech.co, 2016.
- Name to The Unicorn in the Room's "The 45 Over 45: Entrepreneurs Over Age 45 Who Are Disrupting the Way We Do Business."
- Named a "Titan of the Plaintiffs Bar" by Law360, 2014.
- Selected as an Illinois Super Lawyer, 2012-2018.
- Selected as a "Leading Lawyer" in the areas of plaintiff's class and mass actions, data privacy, consumer protection, and technology law, 2016-2018.
- Benchmark Litigation: Top Illinois Plaintiff class action lawyer, 2013, 2014.
- Named to Top 100 Trial Lawyers, by the National Trial Lawyers, 2013.
- Twice received official commendation from the City of Lancaster, California for "exemplif[ing] the skill of a true litigator;" first for reaching a $47 million settlement with Jiffy Lube and, second, for reaching a $9 million settlement with Netflix.
- Named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin's 2009. In that award, Jay was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution."
- Included in the American Bar Association "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.
- Presented with the Annual Humanitarian Award for his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

### Teaching and Appointments

- Appointed to Chicago's 47th Ward Democratic Organization Judicial Recommendation Committee.
- Former adjunct professor at UC Berkeley School of Law, Privacy Litigation Seminar.
- Former adjunct professor at The Chicago-Kent College of Law, Class Action Litigation and Negotiation Seminar.
- Guest lecturer at Northwestern University Law School, the University of California, Hastings School of Law, Georgetown Law and The John Marshall Law School on consumer, privacy, and class action issues.
- Faculty for The Sedona Conference Cooperation Training Program (Feb. 21-22, 2014) (clinical training on negotiation and cooperation techniques).
- Appointed to be the founding co-chair of the Sedona Conference's Working Group (11) on Data Security and Privacy Liability.

### Media

- Appeared on dozens of local, national, and international television and radio programs, including The Today Show, ABC World News, Politics Nation, Your World With Neil Cavuto, Big Story with John Gibson, CNN, CBS Radio and NPR.
- Appeared in thousands of newspapers, magazines, and other publications.
- Numerous regional, national, and international profiles, including cover story on New Times' Sunday Business section, wherein the Times dubbed him tech's "babyfaced" "boogeyman" and a profile in Die Ziet where he was called "der gäger im hoodie (the hunter in the hoodie)".
- Featured in a PIVOT TV documentary show entitled "Data Vampires."
- Included in PetFooled, a documentary detailing our class action suit on behalf of pet owners whose pets died as a result of contaminated pet food.
- Nicknamed the "Spam Slammer" in Chicago Sun-Times front-page cover article after reaching the first ever class action settlement for text message spam.

- Panelist for the IAPP Privacy Bar Section Forum, "The State of U.S. Data Privacy and Cybersecurity Litigation Today" (March 29, 2018)
- Panelist for City Club of Chicago's "The Opioids Epidemic," (Dec. 6, 2017).
- Panelist for Retail Industry Leaders Association's Litigation Conference, "Strategies Concerning TCPA Claims" (Oct. 11, 2017).
- Panelist for HarrisMartin's Smart Device Litigation Conference: Issues Arising from the Internet of Things, "IoT Risks – Theories of Liability and Defenses" (June 28, 2017).
- Panelist for ABA's Second Annual Cybersecurity Institute Conference, "Ethics: The Cybersecure Practice of Law; Application of Privilege in the Data Security Context" (June 22, 2017).
- Panelist for Class Action Money & Ethics Conference 2017, "Implications of the Proposed Changes to Rule 23" (May 1, 2017).
- Panelist for ACI's 15th National Forum on Cyber & Data Risk Insurance "The Changing Landscape of Cyber Liability Litigation: Data Misuse, Ransomware, Class Action Following Spokeo, and More" (March 30, 2017).
- Testified at Illinois House of Representatives' Cybersecurity, Data Analytics & IT Committee Subject Matter Hearing on "Privacy implications and transparency issues associated with new and emerging surveillance and data collection technologies" (March 1, 2017).
- Panelist for PLI's "Advanced Data Privacy, Cybersecurity Breach and TCPA Class Action Litigation Strategies and Defenses 2017" Conference, "Standing After Spokeo: Effects on Privacy, Security Breach and TCPA Litigation" (Jan. 20, 2017).
- Panelist for Golden State Institute's Panel "Assessing Damages in Privacy Cases and Settlements," (Nov. 3, 2016).
- Panelist for IAPP's "Privacy, Security, Risk, 2016" Conference, "Privacy Litigation:  Defining Privacy Harm," (Sept. 16, 2016).
- Panelist for Georgetown Law's 4th Annual Cybersecurity Law Institute, "Litigation Trends in Data Breaches," (May 25, 2016).
- Panelist for Today's General Counsel, "The Exchange" Data Privacy and Cybersecurity Forum, "The Presumption of Litigation," (May 11, 2016).
- Panelist for The International Association of Defense Counsel's Corporate Counsel College, "What is the Other Side Thinking," (April 28, 2016).
- Panelist for the Privacy Bar Section of the IAPP, "Privacy Litigation," (April 7, 2016).
- Panelist for PLI's Defending Data Privacy, Security Breach and TCPA Class Action Suits 2016, "Advanced Issues in Class Certification and the Management of Class Action Litigation," (January 22, 2016).
- Guest Speaker for University of Chicago Jewish Law Student's Association's dinner, "The Most Feared Lawyer in Silicon Valley" (January 15, 2016).
- Panelist for National Conference of Jewish Lawyers, "Privacy in the Google and Facebook Era" (August 26, 2015).
- Participant in MER's National Conference on Managing Electronic Records, "How to Win (or Lose) Your Data Breach Class Action" (representing data breach class in mock argument before the Honorable James F. Holderman (N.D.Ill.)), (May 20, 2015).
- Guest Speaker for Shook Hardy & Bacon's "Conversations in Privacy" Teleconference, (May 19, 2015).
- Panelist for Chicago Bar Association's Panel, "Challenges to Class Membership: Ascertainability, Standing, and Injury," (May 14, 2015).
- Panelist for Perrin's Class Action Litigation Conference, "Privacy and Data Breach Issues," (May 6, 2015).
- Panelist for the Mortgage Broker Association's Legal Issues and Regulatory Compliance Conference, "Class Action Roundtable," (May 5, 2015).
- Panelist for PLI's Defending Data Privacy, Behavioral Advertising and Security Breach Class Actions Suits 2015, "Class Certification and Settlement in Data Privacy, Behavioral Advertising and Security Breach Class Actions", (January 23, 2015).
- Panelist for Northwestern Law School Sports Seminar, "NCAA Concussion Litigation Panel" (October 24, 2014).
- Panelist for ABA Business Law Section Annual Meeting, "Virtual & Digital Currencies – the Path to Legitimacy and the Need (or Not) for a Regulatory Framework for Consumer Protection" (September 12, 2014).
- Panelist for National Association of Attorneys General 2014 Spring Consumer Protection Seminar, "Data Breach and Privacy Panel" (May 19, 2014).
- Panelist for Perrin Webinar, "Sports Concussion Litigation- Latest NCAA and High School Research, Developments and Findings" (May 14, 2014).
- Panelist for Law Seminar International's Conference on Technology Law, "Plaintiff's Perspective on the Use of Big Data Class Actions as a Privacy and Security Enforcement Tool" (Dec. 12, 2013).
- Panelist for Law Seminar International's Conference on Litigating Class Actions, "Evolving Issues in Privacy Class Actions" (Dec. 10, 2013).
- Panelist for Pennsylvania Bar Institute seminar, "The FCC Cracks Down on Telemarking Again: The Regulatory and Litigation Climate of the Telephone Consumer Protection Act" (Dec. 10, 2013).
- Panelist for the NCLC Class Action Symposium, "Data Privacy Class Action Session" (Nov. 10, 2013).
- Panelist for The Sedona Conference on Cyber Liability (participated in three panels: "Private Data Breach Incidents," "Telecommunications & The Internet," and "Pushing the Boundaries of Cyber Liability") (Oct. 24-25, 2013).
- Panelist for NetDiligence 2013 Cyber Risk & Privacy Liability Forum – West Coast: "Data Breach Litigation Update," (Oct. 10, 2013).
- Panelist for ABA Dispute Resolution Conference: "Getting Arbitration Back on Track," (April 5, 2013). Panelist for PLI's conference: "Defending Privacy and Behavioral Advertising Class Action Suits 2013: What Every Litigator and In-House Lawyer Needs to Know," (January 22, 2013).
- Panelist discussing privacy class actions during for American Bar Association's 16th Annual National Institute on Class Actions (October 25, 2012).
- Panelist for ITT Chicago-Kent College of Law's "Conference on Internet Privacy, Social Networks and Data Aggregation" (March 23, 2012).
- Panelist for Chicago-Kent College of Law's "Class Dismissed? How the Supreme Court's Recent Decisions Have Shifted the Balance Between Individuals and Corporations" (November 2, 2011).
- Panelist for Daily Deal Media Conference 2011, Roundtable on Legal Landscape of the Daily Deal Industry (September 8, 2011).
- Panelist for Chicago Bar Association's Committee on Cyber Law and Data Privacy, Seminar on Consumer Privacy (June 10, 2011).

- Co-chair of CLE International's 2011 national multi-day conference on consumer class actions (May 12-13, 2011)
- Co-chair of CLE International's 2010 national multi-day conferences on consumer class actions (June 14-15, 2010)
- Panelist for Law Seminar International's "Trends in Federal Circuit Class Certification Rulings" (Nov. 4, 2010).
- Panelist at Decalogue Society of Lawyers' Symposium on "Representing Celebrity Clients" (Jan. 28, 2010).
- Panelist at DePaul University College of Law & The International Institute for Animal Law's symposium, "How Much is Fido/Fluffy Worth? Animal Valuation Issues Raised by the Pet Food Recall and Other Litigation" (Oct. 25, 2007).

## Publications

- "Uber's CEO was brought down by a God complex—and that should scare the rest of Silicon Valley," Quart, June 23, 2017.
- "Learning The Limits (And Irony) Of Spokeo," law360, Dec. 12, 2016 (second author).
- "Trump's wall misses the mark: We need a cyber wall, not a physical one," TechCrunch, May 27, 2016.
- "Peter Thiel proves Silicon Valley only hates lawsuits when it's the one getting sued," Quartz, May 27, 2016.
- "Theranos exposes the perverse incentives at work in Silicon Valley," Quartz, April 29, 2016.
- "The FBI has a Big Ulterior Motive in its Fight with Apple," Quartz, Mar. 18, 2016.
- "Why Apple is Right to Tangle with the FBI," Chicago Tribune, Feb. 24, 2016.
- "Pick-Offs After *Campbell-Ewald*: Some Predictions," Law360, Jan. 21, 2016.
- "What's Past is Prologue: Snowden Leaks, New Domains, Global Jockeying For Internet Governance Role Still Dominate Cyberlaw Hot Topics in 2014," Bloomberg/BNA Electronic Commerce & Law Report, Feb. 3, 2014 (contributor).
- "Pardon the Disruption," Thomson Reuters Legal Blog, 2013-2104.
- "The ATL Interrogatories: 10 Questions with Jay Edelson from Edelson PC," Above the Law, Oct. 16, 2013.
- "Beyond the Ping Pong Table: Lessons for Lawyers From Startup Companies," National Law Journal, Sept. 30, 2013.
- "End the Summer Associate Sideshow (and Start Treating Them Like the Almost-Lawyers They Are)," Bloomberg Law, Aug. 21, 2013.
- "Cyberlaw Predictions: Privacy Litigation in the United States," Bloomberg/BNA, Jan. 2, 2013 (contributor).
- "Preventing Your Daily Deals From Becoming Permanent Targets, Daily Deal Media, 2012 Daily Deal Industry Report.
- "9 Mistakes Companies Make In Defending Themselves Against Consumer Class Action Lawsuits," Law360 (Jan. 2011).
- "Trust Young Lawyers and They Won't Let You Down," ABA Journal's Legal Rebels – Remaking the Profession (Oct. 15, 2009).
- "The YouTube Generation: Implications for Medical Professionalism," Perspectives in Biology and Medicine, Vol. 51, No. 4 (2008), pp. 517-524 (Contributor).

BACK TO OUR TEAM

© 2017 COPYRIGHT EDELSON PC. ALL RIGHTS RESERVED. ATTORNEY ADVERTISING.   TERMS OF SERVICE   YOUR PRIVACY RIGHTS