Rafey S. Balabanian
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Special Assistant State's Attorney*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL NO. 2843 |
| | Case No. 18-md-02843-VC |
| | Hon. Vince Chhabria |
| This document relates to: *People of Illinois ex rel. Kimberly M. Foxx v. Facebook, Inc., et al.*, 18-cv-2667 (N.D. Ill.) | **PLAINTIFF'S SUPPLEMENTAL BRIEF ON MOTION TO REMAND** |
| | Hearing Date: December 6, 2018 at 10:00 AM |

The People of the State of Illinois bring this action by and through Kimberly M. Foxx, the State's Attorney of Cook County, Illinois to levy civil penalties against Facebook, Cambridge Analytica and SCL Group Limited, as well as secure injunctive relief. It is well-established that an action brought by a State cannot be removed based on diversity jurisdiction, which is Facebook's asserted basis for removal here. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014). The question before the Court is whether the State is rendered a nominal party because the State's Attorney is its representative, rather than the Attorney General of Illinois, despite the fact that it only seeks remedies that serve the State's consumer protection interests by punishing those who have harmed its consumers.

As virtually every district court in the Ninth Circuit has held on all-but-identical facts, a case brought by a local prosecutor seeking civil penalties and injunctive relief—as authorized by the relevant state statute—is one that serves the interests of the State. *E.g., People v. Boehringer Ingelheim Pharm., Inc.*, No. SACV 17-00923 AG (KSx), 2017 WL 3269074, at *3 (C.D. Cal. July 31, 2017). Consistent with the Ninth Circuit's "strict" construction of the removal statute that "reject[s] federal jurisdiction if there is any doubt as to the right of removal in the first instance," *see Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (internal quotation marks omitted), the State's action must be remanded.

**I.     The parties agree that the State's Attorney has constitutional and statutory authority—under Illinois law—to represent the interests of the People of the State of Illinois in this suit.**

In the already substantial briefing on this question, at least one conclusion can be drawn: there is no question that the State's Attorney has the statutory and constitutional authority under Illinois law to represent the State's interests in this case. 815 ILCS 505/7 ("[T]he Attorney General or State's Attorney may request and the Court may impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under this Act."); *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 32 (summarizing role and authority of State's Attorneys in Illinois). To the extent any debate remains about the authority that the State of Illinois has given to its State's Attorneys to

represent its interests in this case, Ninth Circuit law has no bearing on it. *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 738 (9th Cir. 2011) ("Thus, we will consider what interest California has in this litigation pursuant to its laws.").

> II.     There is no "alter ego" requirement under Ninth (or Seventh) Circuit law; the question is whether the State's interests are represented in the case.

Though Facebook accepts that the State's Attorney has the authority to represent the State in this case, it seeks to interpose a confusing requirement: that in order to represent the State, the State's Attorney must be an "alter ego" of the State. The "alter ego" analysis, as Plaintiff has explained (Reply Br. 3–5, dkt. 172-6), is a way of assessing whether the State is the interested party in a case brought by an agency or unit of government sued or suing in its own name to enforce its own interests. *See, e.g., Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) (county being sued for actions of sheriff under 42 U.S.C. § 1983); *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109–10 (7th Cir. 1983) (in case brought by commission to collect harbor fees, Port was not "alter ego" of the State but was "assert[ing] its own rights in this action."). That analysis breaks down where the State's Attorney is—and is authorized to—bring suit in the name of the People and seek civil penalties. In other words, consistent with the Ninth Circuit's handling of this issue, the analysis to be performed is an examination of the State's interests in the case, not one that is cabined to the ill-fitting "alter ego" test. *E.g., Lucent*, 642 F.3d at 736–40 (in case brought by California state agency, no mention of alter ego analysis).

That said, it's worth noting that in the Eleventh Amendment context—the genesis of the "alter ego" analysis—the Seventh Circuit has held in no uncertain terms that Illinois State's Attorneys are state officials when prosecuting cases arising under state statutes. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994) ("Whether a particular official is the legal equivalent of the State itself is a question of that State's law . . . and the Illinois Supreme Court decided in 1990 that State's Attorneys are state officials."). The State would, accordingly, be the party in interest under this test. (*See generally* Reply Br. 5–9.)[1] Notwithstanding, Ninth Circuit

---

[1]   Plaintiff pointed out, in earlier briefing, the absurdity of Facebook's view that a State's Attorney is not representing the interests of the State when it is performing these essential law enforcement functions; such reasoning would mean that criminal prosecutions are not in the

law—like the Seventh Circuit—requires a more fulsome analysis of the State's interest in the particular case in question.

### III. The State's interests are the only ones represented in the case.

This action, which seeks civil penalties and an injunction, is a law enforcement action that does not seek relief for any private individual. Facebook's argument on this point simply barks up the wrong tree: there are many cases examining the nuanced question of the State's interests where restitution or other relief is sought for private parties, *see, e.g., Lucent*, 642 F.3d at 735–36 (suit by Department of Fair Employment and Housing for reinstatement, back pay, and equitable relief for Steven Carauddo, allegedly discriminated against by his employer)*,* but that is not the remedy sought here. As virtually every district court in the Ninth Circuit to consider this question has held, a local prosecutor seeking civil penalties and injunctive relief pursuant to a state statute is a case that serves the interests of the State.

#### A. The rule Facebook advances is not the correct one, under either Ninth or Seventh Circuit law.

Facebook relied in its previous briefing on dicta in a century-old case, *Missouri, K. & T. Railway Co. of Kansas v. Hickman*, in which the Supreme Court explained that a State is the party in interest only if the relief sought "inures to it alone." 183 U.S. 53, 59 (1901). But no court, including the Ninth Circuit, applies that language literally; that is, no court looks to whether every dollar of relief will flow into state coffers and, finding otherwise, holds that the State is a nominal party in the case.

To be sure, the "inures to it alone" language is quoted in Facebook's leading case in the earlier briefing. *See Lucent*, 642 F.3d at 737. But as Plaintiff also earlier explained, the Ninth Circuit has made crystal clear that is not the literal rule: in *Nevada v. Bank of America Corp.*, the fact that a State sought relief even on the face of the complaint for private individuals does not diminish the State's interests in the case. *See* 672 F.3d 661, 664–65 (9th Cir. 2012). *Lucent* did not, in short, signal an adoption of the "inures to it alone" rule. *See California v. Purdue Pharma*

---

interests of the State, either. (Reply Br. 9.) While that point stands, Plaintiff acknowledges that criminal prosecutions by a State's Attorney would not be removable under 28 U.S.C. § 1332.

*L.P.*, No. SACV 14-1080-JLS DFM, 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) ("Indeed, literal application of [the *Hickman*] language would raise serious questions about the Ninth Circuit's decision in *Nevada* [*v. Bank of America*].").

### B. Civil penalties and injunctive relief are the quintessential remedy that benefits the State.

Ultimately, the real question with regard to the State's interests is this: looking at "the essential nature and effect of the proceeding as it appears from the entire record," are the State's interests nominal in the case? *Bank of Am. Corp.*, 672 F.3d at 670–71 (quoting *Lucent*, 642 F.3d at 740). In *Bank of America*, the Ninth Circuit held that Nevada's interest in "protecting the integrity of mortgage loan servicing" was sufficient, because Nevada had been hard hit by the mortgage crisis, *id.* at 670, and the State was seeking remedies that were not available to private consumers: civil penalties and injunctive relief at a lower statutory standard specific to the government, *id.* at 672. It is precisely that posture—seeking penalties and injunctive relief to punish and deter wrongdoing—that has led numerous district courts to find that the State is the real party in interest in cases like this one.

District courts in the Ninth Circuit have uniformly held that local prosecutors seeking civil penalties under state law substantiate the State's interest in a case. In *Boehringer Ingelheim Pharmaceuticals, Inc.*, for example, the court held that the State was the real party in interest where the Orange County District Attorney brought suit under California's Unfair Competition Law (UCL), alleging that the defendant pharmaceutical company schemed to keep a generic version of a drug off the market. 2017 WL 3269074, at *1. The District Attorney sought civil penalties and restitution. *Id.* The Court found that the State was not a nominal party, noting that the UCL "explicitly authorized district attorneys . . . to bring civil enforcement actions on behalf of the People," and finding that State had a substantial interest in enforcing consumer protection laws, and that the relief sought was "designed to benefit the public as a whole." *Id.* at *3. Other district courts have not deviated from this view, reaching the same holding where another State law enforcement officer or agency is seeking civil penalties pursuant to a statute:

- A District Attorney and County Counsel sued pharmaceutical companies under the UCL for fraudulent marketing of opioids leading to the opioid addiction epidemic. *California v. Purdue Pharma L.P.*, 2014 WL 6065907, at *1. The court held that the suit vindicated the State's interests in protecting its residents from entities that had jeopardized California's health, and that civil penalties and abatement of a public nuisance—remedies available only to governmental actors—served the State's law enforcement interests. *Id.* at *3. Similar cases, holding that a district attorney or other law enforcement actor seeking civil penalties under the UCL is an action in which the State is the true party in interest, are legion. *Cty. of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, No. 5:12-CV-03256-EJD, 2012 WL 4189126, at *2–4 (N.D. Cal. Sept. 17, 2012); *California v. Universal Syndications, Inc.*, No. C 09-1186 JF (PVT), 2009 WL 1689651 (N.D. Cal. June 16, 2009); *California v. Time Warner, Inc.*, No. CV 08-4446 SVW (RZX), 2008 WL 4291435 (C.D. Cal. Sept. 17, 2008); *California v. Check 'N Go of Cal.*, No. C 07-02789 JSW, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007); *California v. Steelcase Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992).

- Pursuant to Health and Safety Code authority to bring an action in the name of the State, the South Coast Air Quality Management District sued the owner of a facility that produced toxic emissions that exposed California residents to health risks. *California v. Exide Techs. Inc.*, No. CV 14-1169 ABC (MANx), 2014 WL 12607708, at *1 (C.D. Cal. Apr. 9, 2014). The court held that the suit was "fundamentally a law enforcement action" because it sought only civil penalties, and the State had an interest in preventing ambient air quality threats. *Id.* at *2.

The State's case here, like those above, is different than one in which the relevant unit of government seeks to vindicate the interest of some private party, as in *Lucent* or *California v. Northern Trust Corp.*, No. CV 12–01813 DMG (FMOx), 2013 WL 1561460 (C.D. Cal. 2013) (suit by city attorney to recover restitution owed to city retirement fund). Instead, the State's Attorney, as a law enforcement officer, seeks only to vindicate the interests of the State: penalizing wrongdoers and protecting consumers from fraud in the multibillion dollar industry that is its citizens' privacy and digital lives. The remedies that the State seeks solely serve those

interests, and not any private party. In these circumstances, the overwhelming weight of persuasive authority holds that a State can empower its officers to serve its interests in this way.[2] And when they do so, the State is not a nominal party.

Last, one of Facebook's primary arguments in its earlier briefing was that the compensation of the Special Assistant State's Attorneys vitiated the State's interests. The success of this argument hinged on the non-existent rule that a State must be the exclusive recipient of recovery. (*See* Reply Br. 10–11.) Regardless, attorney compensation is inconsequential for this analysis under Ninth Circuit law—indeed, many of the governmental entities prosecuting the cases outlined above were represented by private counsel. *Boehringer Ingelheim Pharm.*, 2017 WL 3269074, at *1; *Purdue Pharma L.P.*, 2014 WL 6065907, at *1. In the end, the law is clear that civil penalties and injunctive relief are remedies that overwhelmingly benefit the State and its interests; that its attorneys will be paid does not override that interest.

### IV. Concerns about efficiency of the MDL or Co-Lead Counsel's control over this case are not relevant to whether this Court has subject matter jurisdiction.

Co-Lead Counsel have, remarkably, stated their intent to file an opposition to the State's request for remand. (Dkt. 178.) On the question of this Court's subject matter jurisdiction, Co-Lead Counsel appear to have mistaken certain issues—whether the State's claims are adequately represented (or represented at all) in the Consolidated Complaint, whether the State can pursue bankrupt parties differently than their private citizen clients can, and purported inefficiencies that might arise in the MDL should remand be granted—as relevant to remand. (*Id.* at 3.) Quite simply, they are not. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (noting that federal courts' jurisdiction is limited by Constitution and statutes).

---

[2] The only case Facebook cited in earlier briefing holding otherwise was *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 725 (E.D. Pa. 2017), but the *Avandia* court faced unusual facts: a county filed a motion to remand from an MDL five years into the litigation, even though it had filed in federal court to begin with. *Id.* at 725. The *Avandia* court distinguished many of the above cases because the case was *originally filed* in federal court, and unlike the cases above, the county was not entitled to the presumption against removal. *Id.* at 729. Furthermore, the county sought restitution for individuals, which the Court held outweighed the civil penalties it sought. *Id.* at 730. While the court's holding does not comport with the weight of authority on this question, it is distinguishable for the reasons the opinion itself states.

What is incredible, however, is that the private litigants and their counsel seek to oppose the choice of the State's *elected official* and court-appointed counsel to seek remand in this action. Without even feigning that they wish to understand the interests that the State has in the case and the defense of its sovereign powers, Co-Lead Counsel purport to speak for—and represent the interests of—the sixth-largest State in the nation. And in their single-minded focus on control of this action, they have not hesitated to actively undermine the State's powers in their Opposition to the administrative motion (Dkt. 178 at 3), and have signaled their intent to do so in further briefing. That is improper, and obviously inconsistent with the duties they would owe to the State should they control this case as they evidently seek to do.[3]

*         *         *

As a final matter, the State respectfully requests clarification as to the status of its complaint. Although the Court granted the State's motion to be heard on remand (Dkt. 179), it has also granted Co-Lead Counsel's motion to supersede the individual complaints. (Dkt. 190.) The two orders can, of course, be reconciled—the State's complaint must, as a necessity to be heard on remand, retain its separate legal existence—but out of an abundance of caution, the State requests that Pre-Trial Order 12 be clarified as to whether the State's complaint has been superseded. As the State has previously suggested, the role of the State in the MDL is a matter that should be addressed if it becomes necessary after the current motion is decided.

## CONCLUSION

Plaintiff People of the State of Illinois respectfully requests that this Court grant Plaintiff's Motion to Remand this action to the Circuit Court of Cook County, Illinois, and grant any further relief as may be appropriate and just.

Respectfully submitted,

**PEOPLE OF THE STATE OF ILLINOIS ex rel. KIMBERLY M. FOXX**,

Dated: November 16, 2018                      By: /s/ Rafey S. Balabanian

---

[3] To be clear, the State, of course, does not concede that Co-Lead Counsel can or should exercise any sort of control over its claims or interests in this litigation. The ways in which such an exercise of control is problematic need not—as indicated above—be fleshed out here.

*One of Plaintiff's Attorneys*

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Alfred K. Murray II
amurray@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Special Assistant State's Attorneys*