Exhibit A

1   Orin Snyder (*pro hac vice forthcoming*)
      osnyder@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
3   New York, NY 10166-0193
    Telephone: 212.351.4000
4   Facsimile: 212.351.4035

5

6   Joshua S. Lipshutz (SBN 242557)
      jlipshutz@gibsondunn.com
    Kristin A. Linsley (SBN 154148)
7     klinsley@gibsondunn.com
    Brian M. Lutz (SBN 255976)
8     blutz@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
9   555 Mission Street, Suite 3000
    San Francisco, CA 94105-0921
10  Telephone: 415.393.8200
    Facsimile: 415.393.8306
11
    *Attorneys for Defendant Facebook, Inc.*
12

**ENDORSED FILED**

SAN MATEO COUNTY

JUL 2 7 2018

Clerk of the Superior Court
By: COLLEEN LANGSJOEN
Deputy Clerk

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                          **COUNTY OF SAN MATEO**

15

16  LEAH BALLEJOS, AUDREY ELLIS, and       CASE NO. 18-CIV-03607
    TAMEIKA MARTIN,
                                           **DEFENDANT'S NOTICE OF MOTION AND**
17                  Plaintiffs,            **MOTION TO STAY PROCEEDINGS**
                                           **PENDING MULTIDISTRICT LITIGATION;**
18        v.                               **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES**
19  FACEBOOK, INC., a Delaware corporation,
    and DOES 1 through 100,                *[Declaration of Joshua Lipshutz and [Proposed]*
20                                         *Order Granting Defendant's Motion to Stay*
                    Defendants.            *Proceedings Pending Multidistrict Litigation*
21                                         *Filed Concurrently]*

22                                         Department:      Not assigned

23                                         Honorable Judge: Not assigned

24                                         Complaint Filed: July 11, 2018

25                                         Hearing Date:    August 20, 2018
                                           Hearing Time:    9:00 a.m.
26

27                                         Trial Date:      None set

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 20, 2018 at 9:00 a.m., or as soon thereafter as the matter can be heard in the San Mateo County Superior Court, Southern Branch, located at 400 County Center, Redwood City, California 94063, Defendant Facebook, Inc. will and hereby does move for an order staying proceedings in this action pending the completion of a related multidistrict litigation currently pending in the United States District Court for the Northern District of California.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Joshua Lipshutz and exhibits thereto, all records and pleadings on file with the Court in this matter, all other matters of which the Court may take judicial notice, and all further evidence and argument that may be presented in Reply to any Opposition to this Motion or at or before the hearing on this matter.

Dated:  July 27, 2018                                GIBSON, DUNN & CRUTCHER LLP


                                                    By:  ___/s/ Joshua Lipshutz_____
                                                             Joshua Lipshutz

                                                    *Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Facebook, Inc. respectfully requests that the Court stay this action pending the conclusion of pretrial proceedings in the federal multidistrict litigation, *Facebook, Inc. Consumer Privacy User Profile Litigation*, 18-MD-2843-VC (the "MDL"), currently pending in the United States District Court for the Northern District of California, before the Hon. Vince Chhabria.

The California Supreme Court has made clear that "a strong policy of comity" favors staying a California state court action where a parallel action raising the same claims is already pending in a federal district court, especially where the federal action is also in California. (*Thomson v. Cont'l Ins. Co.* (1967) 66 Cal.2d 738, 747.) A stay of this action pending the concurrent federal MDL would further these comity interests because Plaintiffs' claims are substantially similar to, and subsumed within, the consolidated set of consumer class actions that are currently being handled by Judge Chhabria through the federal MDL.

The present action covers the identical subject matter to that addressed by the federal MDL, and asserts the same claims and bases for relief.  Following recent press reports describing Cambridge Analytica's alleged misuse of Facebook user data, dozens of complaints were filed in various federal district courts against Facebook and others.  Almost all of those cases have now been consolidated in the MDL and are pending in the Northern District of California before Judge Chhabria.  The actions included in the MDL invoke the same legal theories, founded on the same factual allegations that Plaintiffs present here, and those actions include claims for the same declaratory and injunctive relief that Plaintiffs seek in this action.  Plaintiffs also fall squarely within the class definitions of the federal court actions, which assert putative *nationwide* classes of Facebook users like the three California Plaintiffs here.  Like the complaint here, most of the federal MDL actions allege violations of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.* ("UCL"), and many also assert misrepresentation claims indistinguishable from Plaintiffs' claim under Business & Professions Code § 17500.  Given the overlapping nature of these actions, pretrial proceedings in the MDL will address and resolve the same threshold legal and discovery issues that this action presents.  Allowing this nearly identical action to proceed in parallel

1  with the federal proceedings would raise serious comity concerns, including by defeating the

2  efficiency and fairness interests that the federal MDL statutes are designed to promote.

3       As the Supreme Court made clear in *Thompson*, this Court has the inherent power to stay

4  cases before it, and this Court should exercise its discretion to stay this case.  This case is a perfect

5  candidate for a stay given the substantial overlap between its allegations and the allegations in the

6  first-filed MDL actions, and the absence of any inconvenience or prejudice to the plaintiffs in this

7  action.  All of the relevant factors counsel in favor staying this action pending resolution of the MDL:

8  The parallel federal forum is also in California, where 20 of the MDL actions were originally filed, so

9  there would be no need for any parties to travel to another state to monitor the MDL proceedings; a

10  stay would help prevent conflicts between state and federal courts; the federal forum is well-

11  positioned to determine the rights of the parties; and a stay would promote judicial economy.  And

12  there is no prejudice to Plaintiffs:  The MDL involves at least one identical claim against the same

13  defendant based on the same alleged conduct, and when the MDL concludes—either after pretrial

14  dismissal or upon remand of the consolidated cases to their original jurisdictions for trial, *see* 28

15  U.S.C. § 1407(a)—Plaintiffs may pursue any remaining claims against Facebook at that time.

16  **RELEVANT FACTUAL BACKGROUND**

17       Plaintiffs, three California individuals who allege that they are Facebook users, filed this

18  action on July 11, 2018, asserting claims against Facebook pursuant to the UCL and California's false

19  advertising law, Bus. & Prof. Code §17500 *et seq.*  Plaintiffs' claims arise out of recent press reports

20  describing Cambridge Analytica's alleged misuse of Facebook user data.  In connection with their

21  claims, Plaintiffs seek declaratory and injunctive relief against Facebook for allegedly failing to take

22  sufficient steps to protect user data.  Plaintiffs do not seek monetary damages.

23       These claims asserted by Plaintiffs here are identical to those included within the federal

24  MDL, which consists of dozens of virtually identical actions filed against Facebook arising out of

25  these same facts.  To date, 31 consumer actions alleging harm to Facebook users from the alleged

26  misuse of their data already have been filed in federal courts around the country.  Due to the near-

27  complete overlap among these consumer cases, on March 30, 2018, the plaintiffs in one of the

28  consumer actions moved to establish an MDL in the Northern District of California, where 20

consumer actions eventually were filed. (MDL No. 2843, Dkt. 1 (J.P.M.L. Mar. 30, 2018).) On June 6, 2018, the Judicial Panel for Multidistrict Litigation granted the motion and transferred eight actions[1] to the Northern District of California for coordinated or consolidated pretrial proceedings, and assigned the MDL to Judge Vince Chhabria. (Ex. A [J.P.M.L. Transfer Order].)[2] On June 8, 2018, the Panel issued a conditional transfer order, transferring six additional cases[3] to the Northern District of California (MDL No. 2843, Dkt. 142 (J.P.M.L. June 8, 2018) and later transferred two more cases[4] (*id.*, Dkt. 156 (J.P.M.L. July 5, 2018)). The MDL is now pending before Judge Chhabria, who already has held a case management conference to address the appointment of lead counsel and the schedule for the filing of a consolidated complaint and motions to dismiss. (See Ex. B [MDL Pre-Trial Order No. 1].)

This action and the MDL actions arise from the same alleged facts. Each alleges that Cambridge Analytica and/or a third-party app developer named Aleksandr Kogan obtained data from Facebook users when they agreed to take a personality test offered by Kogan's app. (See, e.g., *Ballejos* Compl. ¶¶ 43–44; Ex. C [*Price* Compl.] ¶¶ 11–13; Ex. D [*Beiner* Compl.] ¶ 26.) Almost all of the complaints assert that this data allegedly was obtained via that app, which was called "thisisyourdigitallife." (See, e.g., *Ballejos* Compl. ¶ 2; Ex. C [*Price* Compl.] ¶ 11; Ex. D [*Beiner* Compl.] ¶ 27.) Each alleges that Cambridge Analytica later obtained Facebook user data relating to the individuals who agreed to take the personality test, as well as data relating to their Facebook "friends"—all contrary to Facebook's terms and policies prohibiting apps such as Kogan's from

---

[1] *Price v. Facebook, Inc.*, No. 3:18-CV-01732 (N.D. Cal.) (filed Mar. 20, 2018); *Rubin v. Facebook, Inc.*, No. 3:18-CV-01852 (N.D. Cal.) (filed Mar. 26, 2018); *Gennock v. Facebook, Inc.*, No. 3:18-CV-01891 (N.D. Cal.) (filed Mar. 27, 2018); *O'Kelly v. Facebook, Inc.*, No. 3:18-CV-01915 (N.D. Cal.) (filed Mar. 28, 2018); *Beiner v. Facebook, Inc.*, No. 3:18-CV-1953 (N.D. Cal.) (filed Mar. 29, 2018); *Comforte v. Cambridge Analytica*, No. 1:18-CV-02120 (N.D. Ill.) (filed Mar. 22, 2018); *Malskoff v. Facebook, Inc.*, No. 2:18-CV-04451 (D.N.J.) (filed Mar. 27, 2018); *Lodowski v. Facebook, Inc.*, No. 4:18-CV-00907 (S.D. Tex.) (filed Mar. 23, 2018).

[2] "Ex." refers to the exhibits attached to the Declaration of Joshua Lipshutz filed concurrently.

[3] *Williams v. Facebook, Inc.*, 2:18-CV-00535 (N.D. Ala.) (filed April 4, 2018); *O'Hara v. Facebook, Inc.*, 8:18-CV-00571 (C.D. Cal.) (filed April 4, 2018); *Redmond v. Facebook, Inc.*, 1:18-CV-00531 (D. Del.) (filed April 10, 2018); *Skotnicki v. Facebook, Inc.*, 1:18-CV-00655 (D. Del.) (filed April 31, 2018); *Burton v. Facebook, Inc.*, 2:18-CV-02105 (C.D. Ill.) (filed April 12, 2018); *Foxx v. Facebook, Inc.*, 1:18-CV-02667 (N.D. Ill.) (filed April 12, 2018).

[4] *Reninger v. Facebook, Inc.* 1:18-CV-04332 (N.D. Ill.) (filed June 21, 2018); *Kopecky v. Facebook, Inc.*, 18-CV-02573 (E.D. Pa.) (filed June 19, 2018).

1    selling or transferring data obtained from Facebook users.  (See, e.g., *Ballejos* Compl. ¶¶ 48, 75;

2    Ex. C [*Price* Compl.] ¶ 15; Ex. D [*Beiner* Compl.] ¶ 4.)  Each alleges that Facebook took insufficient

3    steps to confirm that Kogan and/or Cambridge Analytica deleted this data as demanded by Facebook.

4    (See, e.g., *Ballejos* Compl. ¶¶ 46–47; Ex. C [*Price* Compl.] ¶¶ 18–19; Ex. D [*Beiner* Compl.] ¶ 52.)

5    And each alleges that Cambridge Analytica apparently used the data to target advertisements in

6    connection with the 2016 U.S. Presidential election.  (See, e.g., *Ballejos* Compl. ¶ 48; Ex. C [*Price*

7    Compl.] ¶¶ 7, 10; Ex. D [*Beiner* Compl.] ¶ 52).  The nearly identical factual allegations in these

8    complaints all appear to be copied from the same two news reports—articles in *The New York Times*

9    and *The Guardian* published on March 17, 2018.

10        In addition to sharing common factual allegations, this action asserts the same underlying

11   legal theories as the MDL actions.  All of the actions name Facebook as a defendant.  All actions

12   allege that Cambridge Analytica and other actors wrongfully exploited Facebook's platform to obtain

13   data that they used for unauthorized purposes, that Facebook should have done more to prevent these

14   wrongs, and that Facebook users were harmed as a result.  (See, e.g., *Ballejos* Compl. ¶¶ 2, 3, 72;

15   Ex. C [*Price* Compl.] ¶¶ 4, 40; Ex. D [*Beiner* Compl.] ¶¶ 1, 53–56, 67).  And most actions allege

16   violations of state consumer protection laws—including, in the majority of cases, the same California

17   statute being invoked by Ballejos.  (See, e.g., *Ballejos* Compl. ¶¶ 66–72 [alleging UCL violation];

18   Ex. C [*Price* Compl.] ¶¶ 34–41 [same]; Ex. D [*Beiner* Compl.] ¶¶ 98–104 [same]; Ex. E [*Rubin*

19   Compl.] ¶¶ 83–91 [same]; Ex. F [*O'Kelly* Compl.] ¶¶ 45–52 [same].)  And although many of the

20   federal actions also name Cambridge Analytica itself as a defendant, that entity is now in bankruptcy,

21   so the automatic stay triggered by the bankruptcy filing has stayed all of those claims, and would

22   preclude the assertion of these claims here absent bankruptcy court approval.

23        This action also seeks the same relief as is sought in the MDL actions.  Like this action, all of

24   the MDL complaints request injunctive relief.  (See, e.g., *Ballejos* Compl. at pp. 28–29 [requesting

25   injunctive relief based on alleged UCL violation]; Ex. C [*Price* Compl.] ¶ 46 [same]; Ex. F [*O'Kelly*

26   Compl.] ¶ 52 [same]; Ex. E [*Rubin* Compl.] ¶¶ 70–71, 89 [requesting nearly identical specific

27   injunctive relief as Ballejos].)  And, like this action, many MDL complaints seek declaratory relief.

28   (See, e.g., *Ballejos* Compl. ¶ 10, p. 28 [seeking "declaration that Facebook has engaged in unlawful

1  conduct" and declaration of "data breach" pursuant to Civil Code § 1798.80 *et seq.*]; Ex. E [*Rubin*

2  Compl.] ¶ 89 [seeking declaration related to UCL and Civil Code § 1798]; Ex. D [*Beiner* Compl.]

3  ¶ 137 [seeking declaration of violation of UCL].)  Other actions do seek monetary damages, unlike

4  this one, but all of the relief sought here is subsumed within the relief sought in the MDL.

5       Finally, there is no dispute that the three Plaintiffs—who allege that they are Facebook users

6  who reside in California and assert that their Facebook data was compromised by the Cambridge

7  Analytica events (see *Ballejos* Compl. ¶¶ 11−13)—fall squarely within the class definitions at issue in

8  the MDL, such that they would be bound by any judgment in the event that class certification is

9  granted.  Thus, if the Court stays this action, Plaintiffs are not left without a remedy—the same

10  remedies they seek here will be available to them as putative class members in the MDL.

**ARGUMENT**

12       California courts have inherent power to stay proceedings in the interests of justice and to

13  promote judicial efficiency.  (*Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489.)

14  The California Supreme Court has made clear that these interests are particularly strong when a

15  previously-filed federal action pending in California covers the same subject matter involved in a

16  California state court action.  (*Thomson*, *supra*, 66 Cal.2d at p. 747.)  In such circumstances, "a

17  strong policy of comity" favors entry of a stay.  (*Ibid.*)  Courts have long recognized that "the rule of

18  comity"—wherein courts of concurrent jurisdictions created by different sovereignties yield to the

19  first-filed action—"rests upon principles of wisdom and justice" and "prevent[s] . . . conflicting

20  judgments, confusion, and unseemly controversy between the litigants and courts."  (*Simmons v.

21  Superior Court* (1950) 96 Cal.App.2d 119, 124.)  These considerations are all the more powerful

22  when "the federal court is of equal convenience to the parties and witnesses as is the state court"

23  because it is located in the same state.  (*Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.*

24  (1993) 15 Cal.App.4th 800, 807.)  Under *Thompson*, the existence of a federal action pending "in

25  California [and] not some other state" is a "critical factor" favoring a stay.  (*Id.* at p. 804.)

26       In considering whether to enter a stay, California courts consider whether: (1) the parallel

27  federal action is in California, such that any prejudice to California parties will be minimized; (2) a

28  stay will help avoid "unseemly conflicts" between state and federal courts, (3) the federal court can

1  adequately determine the rights of the parties, and (4) a stay will promote judicial economy. (*Id.* at

2  pp. 806–07; *Thomson*, *supra*, 66 Cal.2d at 746–47; *Berg v. MTC Elecs. Techs. Co.* (1998) 61

3  Cal.App.4th 349, 353, 363.) Each factor compels entry of a stay here.

4  **I.    This Action Involves the Same Subject Matter as the Federal Actions and the Legal**

5  **Claims and Requested Relief Here are Subsumed Within the Federal MDL**

6  As noted above, California courts strongly favor staying a pending action in favor of a

7  substantially similar action pending in a California federal court. (*See, e.g.*, *Thomson*, *supra*, 66

8  Cal.2d at p. 747; *Caiafa*, *supra*, 15 Cal.App.4th at p. 804 [California action properly stayed in favor

9  of federal action pending in the Southern District of California]; *Berg*, *supra*, 61 Cal.App.4th at p.

10  363 [California action filed by California resident properly stayed in favor of pending MDL in New

11  York federal court].) A stay is appropriate in these circumstances because the "strong interests of

12  comity" between the state and federal systems prevail over convenience concerns that otherwise

13  might be present if the state court plaintiff were forced to coordinate with a federal action in another

14  state.

15  Here, this action and the MDL actions are substantially similar to the actions that have been

16  consolidated into the federal MDL. As explained above, both sets of actions arise from the recent

17  allegations involving Cambridge Analytica. The MDL actions alleged California statutory causes of

18  action similar to those alleged here, and the requests for injunctive and declaratory relief that

19  Plaintiffs assert here are fully subsumed within the broader such requests encompassed within the

20  federal MDL. (See *supra* at pp. 4–6.) Indeed, as in the MDL actions, Plaintiffs here allege that

21  "other [third parties] exploited Facebook's platform to obtain user data, and that Facebook should

22  have imposed more robust controls on the use of data." (See Ex. A [J.P.M.L. Transfer Order].)

23  There can be no dispute that, had this action been filed in federal court, it would have been included

24  in the MDL. This action thus satisfies the threshold stay requirement.

25  **II.    The Stay Factors Weigh Heavily In Favor Of Staying This Action Pending The MDL**

26  **A.    The Parallel Federal MDL in California Is a Crucial Factor Favoring a Stay**

27  The California Supreme Court has stated that when—as here—the parallel federal action is

28  also in California, "a strong policy of comity" favors entry of a stay. (*Thomson*, *supra*, 66 Cal.2d at

1   p. 747.)  Indeed, this policy is so strong that, where the prior action is pending in California federal

2   court, courts have said that the stay is not simply "a matter of discretion" but rather "a rule of law."

3   (*Ibid.* [citing *Simmons, supra* 96 Cal.App.2d at p. 124].)  As a result, a federal action pending "in

4   California [and] not some other state" is a "critical factor" favoring a stay. (*Caiafa, supra*, 15

5   Cal.App.4th at p. 804.)

6         This rule applies with equal force when the federal case is a class action brought by a different

7   named plaintiff, so long as the state court plaintiff is within the class definition in the federal action

8   and would be afforded relief though that action. (See Ex. G [*Van Zant v. Apple Inc.* (May 19, 2011)

9   Santa Clara Super. Ct. No. 1-10-CV-177571, Order Granting Defendant Apple Inc.'s Motion to Stay

10  and Granting in Part Defendant Apple Inc.'s Request for Judicial Notice ("*Apple Order*")] at p. 3

11  [staying state court action pending an MDL in the Northern District of California because, in part,

12  "the federal action is pending in California, not some other state"].)

13        In this case, the "critical factor" favoring a stay is met.  The federal MDL is pending in

14  California, and includes 20 actions originally filed in the Northern District of California and 1 action

15  originally filed in the Central District of California.  Accordingly, "a strong policy of comity"

16  supports a stay. (*Thomson, supra*, 66 Cal.2d at p. 747.)

17  **B.     This Case Presents an Imminent and Pervasive Risk of Conflicting Rulings and**
18          **Duplicative, Inefficient Litigation**

19        A stay of this action pending the MDL also would avoid "unseemly conflicts with the courts

20  of other jurisdictions." (*Caiafa, supra*, 15 Cal.App.4th at p. 806; see also *Thomson, supra*, 66 Cal.2d

21  at p. 747.)  Overlapping actions in federal and state courts present a "quite likely scenario" of conflict

22  if the federal and state courts will adjudicate the same issues. (*Caiafa, supra*, 15 Cal.App.4th at

23  p. 807.)  When a state court action and an ongoing federal MDL share "substantial similarities in

24  allegations and issues … , there is a real potential for conflicts with the MDL action"—a concern that

25  "weighs strongly in favor of staying the [state court] matter." (Ex. G [*Apple Order*] at p. 3.)  A stay

26  pending the outcome of parallel federal litigation is appropriate, even if claims are not identical, when

27  the state court claims "aris[e] out of the same circumstances" as the federal action. (*Thomson, supra*,

28  at p. 747, fn. 5.)  That is particularly true where, as here, the whole point of the federal MDL is to

1  resolve similar actions in an efficient and fair manner—interests that would be defeated if parallel

2  state court proceedings were allowed to create an end run around the federal MDL process.

3        Here, there is a significant chance that conflicts between state and federal courts will occur if

4  the federal MDL and this action proceed simultaneously.  As discussed above, these actions arise out

5  of identical allegations, are premised on the same legal theories, and seek overlapping relief.

6  Adjudication of these claims will involve resolution of common legal and factual questions and

7  identical requests for discovery.  On a motion to dismiss (in the MDL) or on a demurrer (in this

8  Court), a central issue will be whether plaintiffs have standing to assert claims under Sections 17200

9  and 17500 because they have not "suffered injury in fact and … lost money or property" as a result of

10  the alleged misappropriation of their data by third parties who misused Facebook's platform.  (See

11  Bus. & Prof. Code §§ 17204, 17535.)  Allowing this action to proceed risks inconsistent rulings on

12  that fundamental threshold issue.  These overlapping issues also create a significant risk that, if these

13  cases proceed beyond a motion to dismiss or demurrer, this Court and the MDL court may enter

14  conflicting rulings on discovery disputes:  for example, this Court could rule that Facebook must

15  disclose certain information or produce certain witnesses for deposition while the MDL court rules

16  that it should not.  The potential for conflict on legal issues and discovery burdens favors a stay.

17        **C.**    **The MDL Will Resolve the Rights of the Parties to This Action**

18        A stay is appropriate when the federal action "almost certainly would determine" the state

19  court issues.  (*Caiafa*, *supra*, 15 Cal.App.4th at p. 806.)  That is the case here.  At the outset, there is

20  no dispute but that the Plaintiffs here are members of the MDL class:  each Plaintiff alleges that she

21  "has a Facebook account and received notification that her personal data may have been accessed by

22  the [thisisyourdigitiallife] [a]pp without her consent, (*Ballejos* Compl. ¶¶ 11–13)—allegations that

23  fall squarely within the MDL class definitions encompassing "[a]ll persons who registered for

24  Facebook accounts in the United States and whose Personal information was obtained from Facebook

25  by Cambridge Analytica without authorization or in excess of authorization" (*e.g.*, Ex. C [*Price*

26  Compl.] ¶ 24).  Any certified class in the MDL would encompass Plaintiffs' claims here, and would

27  entitle Plaintiffs to the same relief (including injunctive and declaratory relief) that may result from

28  the MDL and that they seek here.

Gibson, Dunn &
Crutcher LLP

8

1    Any merits ruling in the MDL also would address the claims at issue here.  Most of the

2    federal actions in the MDL include the same UCL claims Plaintiffs assert here, and those actions also

3    include broad claims for declaratory and injunctive relief that fully encompass the more specific

4    topics that Plaintiffs list in their Complaint.  (*See* Ex. C [*Price* Compl.] ¶ 46 [seeking injunctive relief

5    based on alleged UCL violation]; Ex. E [*Rubin* Compl.] ¶ 89 [same]; Ex. F [*O'Kelly* Compl.] ¶¶ 52,

6    57 [same]; Ex. D [*Beiner* Compl.] ¶ 137 [seeking declaration of violation of UCL]; Ex. E [*Rubin*

7    Compl.] ¶ 89 [same].)  And Plaintiffs' allegations under § 17500 allege that Facebook's statements

8    regarding its data policies were "untrue and/or misleading," (*Ballejos* Compl. ¶ 75), are encompassed

9    by the common law misrepresentation claims alleged in some of the MDL complaints, (*see* Ex. F

10   [*O'Kelly* Compl.] ¶¶ 65–69).

11   Adjudication of the federal actions contained in the MDL will resolve most if not all of the

12   legal and factual issues underlying Plaintiffs' claims and, if successful, would provide Plaintiffs with

13   the same declaratory and injunctive relief that they seek here.  For example, the *Rubin* Complaint

14   seeks virtually identical injunctive relief as Plaintiffs seek here, including stopping allegedly unlawful

15   and unfair business practices and submitting to third-party audits.  (See Ex. E [*Rubin* Compl.] ¶¶ 70–

16   71, 89.)  If the MDL court ultimately certifies a nationwide class, Plaintiffs would be entitled to

17   whatever relief is awarded to class members.  The likelihood that adjudication of the federal actions

18   will resolve most, if not all, of the issues relevant to Plaintiffs' claims, weighs heavily in favor of a

19   stay pending resolution of the MDL.  (Cf. *Berg, supra*, 61 Cal.App.4th at p. 363 [noting that federal

20   MDL would "likely . . . determine at least some of the key issues among the parties"]; *Simmons,*

21   *supra*, 96 Cal.App.2d at pp. 125, 128 [finding it "manifest" that the Superior Court "abused its

22   discretion in not staying, as a matter of comity, further proceedings in the California action under the

23   final determination of the Texas action" when "[t]he Texas action and the California action are

24   between the same parties and involve the same subject matter"].)

25   **D.      A Stay Will Promote Judicial Economy**

26   Considerations of judicial economy also favor a stay.  Both the federal MDL procedure and

27   California's analogous provision presume that coordinating materially identical actions before a

28   single judge saves resources of the judiciary as a whole.  (*See* 28 U.S.C. § 1407(a) [requiring

1  consolidation for pretrial proceedings when doing so would "promote the just and efficient conduct

2  of such actions"]; *McGhan Med. Corp v. Superior Court* (1992), 11 Cal.App.4th 804, 813–14

3  [addressing Cal. Code Civ. Proc. § 404].)  In a perfect world, this action too could be consolidated

4  within the MDL to proceed alongside its materially identical siblings.  As the rules do not allow that

5  outcome, the most efficient alternative—and the one that affords appropriate respect to the ongoing

6  federal proceedings and the policies underlying the federal MDL process—is to stay this case

7  pending resolution of the federal MDL.  (*Berg*, *supra*, 61 Cal.App.4th at pp. 353, 363.)  Absent a

8  stay, there would be two courts deciding identical issues on motions to dismiss/demurrers, two courts

9  deciding similar discovery disputes, and two courts deciding whether the identical discovery was

10  sufficient to survive motions for summary judgment.  This Court should not devote its limited

11  resources to adjudicate this copy-cat action.  Judicial economy favors a stay.

## CONCLUSION

13       In considering the relevant factors as a whole, and finding that all of them favored a stay, the

14  *Caiafa* court stated that it was "difficult … to see how the trial court could have exercised its

15  discretion in any other way but to grant [the defendant's] request for a stay of the state court

16  proceedings … pending the outcome of the federal … action." (*Caiafa*, *supra*, 15 Cal.App.4th at

17  p. 807.)  The same is true here.  All of the factors counsel in favor of a stay "pending the result of the

18  first-filed MDL action." (Ex. G [*Apple Order*] at p. 3.)  For these reasons, this Court should stay this

19  action pending a resolution of the MDL proceedings.

21  Dated:  July 27, 2018             GIBSON, DUNN & CRUTCHER LLP

23               By:      */s/* Joshua Lipshutz

24                      Joshua Lipshutz

25               *Attorney for Defendant Facebook, Inc.*