# Exhibit C



1  Orin Snyder (*pro hac vice forthcoming*)
    osnyder@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
3  New York, NY 10166-0193
   Telephone: 212.351.4000
4  Facsimile: 212.351.4035

5

6  Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
7  Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
8  Brian M. Lutz (SBN 255976)
    blutz@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
9  555 Mission Street, Suite 3000
   San Francisco, CA 94105-0921
10 Telephone: 415.393.8200
   Facsimile: 415.393.8306

11

12 *Attorneys for Defendant Facebook, Inc.*

**FILED**
SAN MATEO COUNTY
SEP 0 4 2018
Clerk of the Superior Court
By _____
DEPUTY CLERK



18 – CIV – 03607
MPAR
Memorandum of Points and Authorities in Repl
1359695

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| LEAH BALLEJOS, AUDREY ELLIS, and TAMEIKA MARTIN,<br><br>    Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation, and DOES 1 through 100,<br><br>    Defendants. | CASE NO. 18-CIV-03607<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING MULTIDISTRICT LITIGATION**<br><br>Department: ~~Not assigned~~ LAW AND MOTION<br>Honorable Judge: Not assigned<br>Complaint Filed: July 11, 2018<br>Hearing Date: September 11, 2018<br>Hearing Time: 9:00 a.m.<br>Trial Date: None set |

Gibson, Dunn & Crutcher LLP

REPLY ISO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING MULTIDISTRICT LITIGATION
CASE NO. No. 18-CIV-03607

**FILED BY FAX**

# INTRODUCTION

Plaintiffs' Opposition brief ("Opp.") confirms that this case should be stayed. The injunctive relief Plaintiffs seek under the UCL is already being pursued in the federal multi-district litigation pending before Judge Chhabria in the Northern District of California. As the California Supreme Court has held, a "strong policy of comity" favors a stay in this situation. (*Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 747.)

Plaintiffs provide no meaningful distinction between their claims and those pending in the parallel MDL. Instead, they argue that a stay should be denied here because the federal MDL plaintiffs may lack Article III standing to pursue their claims. (Opp. at pp. 6, 11.) This argument fails. The very same absence of injury that portends problems for the federal MDL plaintiffs poses identical problems for Plaintiffs in this case, as the injury requirement for a private plaintiff asserting a UCL claim under California law is at least as stringent, if not more so, than the Article III injury requirement. As Judge Chhabria observed during a pretrial hearing in the MDL on August 23, 2018:

> [I]t's not obvious to me how Facebook violated the law. And if Facebook violated the law, it's not obvious to me how people were 'injured' by it, in the Article III, Federal Court sense of the word.

(Ex. A [Aug. 23, 2018 Hearing Tr.] at p. 5:8–11.)[1] Judge Chhabria has already started to consider this issue, has ordered limited discovery from Facebook to inform this issue, and has set a date for a hearing (January 23, 2019) to resolve this issue. Under these circumstances—where there is a pending federal MDL based in California addressing identical claims, seeking identical relief, and posing identical problems for the plaintiffs—the proper course of action is to stay the state-court case.

# ARGUMENT

**A.   Plaintiffs Provide No Meaningful Distinction Between This Action And The Federal MDL.**

A stay is appropriate where, as here, the first-filed action covers the same subject matter as the later-filed action. (*Thomson, supra*, 66 Cal.2d at pp. 746-47.) There is no question that this Action covers the same subject matter as the federal MDL. As outlined in Facebook's motion, both

---

[1] "Ex." refers to the exhibits attached to the Declaration of Joshua Lipshutz filed concurrently.

cases center around Cambridge Analytica's alleged receipt of Facebook user data from app developer Aleksandr Kogan and Cambridge Analytica's alleged misuse of that data. (See Mot. at 3-4.)[2] All of Plaintiffs' causes of action here are also asserted in the MDL, including their claim for broad injunctive relief under the UCL. (Mot. at 4-5.)

Plaintiffs contend that their allegations differ from the MDL action because they "allege[] developments that post-date the March 17, 2018 news reports" that broke the Cambridge Analytica story. (Opp. at p. 10 [citing Compl. ¶¶ 5, 37, 38, 58].) All three of the "developments" that Plaintiffs cite relate to news reports about data-sharing arrangements that Facebook had with device manufacturers. (*Id.*)[3] But the MDL covers that topic. For example, in the MDL Plaintiffs' Joint Case Management Statement, the MDL Plaintiffs alleged that, "[i]n June 2018, it was revealed that Facebook also had current, ongoing 'data sharing partnerships' with as many as sixty device makers, such as cell phone manufacturers, including Apple, Amazon, Microsoft, Samsung, Lenovo, and known national security risk Huawei Technologies Co." (Ex. B [MDL Plaintiffs' Case Management Statement] at p. 5.) The MDL Plaintiffs repeated this allegation in connection with their motion for discovery, arguing that "Facebook has 'data-sharing partnerships' with at least 60 makers of electronic devices, including Apple, Amazon, BlackBerry, Microsoft, and Samsung that allowed access to data of users' friends and non-Facebook users." (Ex. C [Plaintiffs' Motion for Discovery] at p. 3.) And when asked by Judge Chhabria during an August 23, 2018 hearing to articulate their theory of injury, the MDL Plaintiffs' counsel offered the device-sharing partnerships as an example: "Facebook has reached data-sharing partnerships with at least 60 device makers." (Ex. A [August 23, 2018 Hr'g Tr.] at p. 9:4-6.)

Plaintiffs' allegations overlap with the MDL in other ways, too. Plaintiffs here assert that "Facebook has failed to uphold its obligations arising from a 2012 consent decree with the Federal Trade Commission." (Compl. ¶ 62.) But the complaints that were consolidated into the MDL also

---

[2] "Mot." refers to Facebook's Motion to Stay filed on July 27, 2018.

[3] The principal article publicizing these allegations was Gabrial J.X Dane et al., Facebook Gave Device Makers Deep Access to Data on Users and Friends, N.Y. Times (June 3, 2018), https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html.

refer to the FTC's investigation and consent decree (See, e.g., Mot. Ex. F [*O'Kelley* Compl.] ¶ 34). Plaintiffs rely on allegations by former Facebook employee Sandy Parakilas regarding Facebook's ability to monitor "what app developers were doing with the [user] data." (Compl. ¶¶ 60-61.) The MDL complaints do the same. (Mot. Ex. C [*Price* Compl.] ¶¶ 17-18; *id.* Ex. D [*Beiner* Compl.] ¶ 54; Mot. Ex. F [*O'Kelley* Compl.] ¶ 15). At bottom, there is no distinction at all—let alone a meaningful one—between this case and the federal MDL cases. And the very purpose of the MDL is to consolidate and coordinate all such actions, so they can be litigated at once in an efficient and effective manner. (28 U.S.C. § 1407(a) [authorizing transfer and consolidation where doing so "will promote the just and efficient conduct of such actions"].) Thus, proceeding with this action while the MDL is pending would frustrate the purpose of the MDL and waste judicial and party resources.

**B.   All Relevant Factors Favor Staying This Proceeding Pending the Federal MDL**

All relevant factors support a stay of this action "pending resolution of a related case in a federal court." (MANUAL FOR COMPLEX LITIG., FOURTH, § 20.14.) Specifically, (1) the parallel federal litigation is pending in California; (2) a stay will minimize the risk of "unseemly conflicts" between the two actions; (3) the federal court can adequately determine the rights of the parties; and (4) a stay will promote judicial economy. (*Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 806–807; *Berg v. MTC Elecs. Techs. Co.* (1998) 61 Cal.App.4th 349, 353, 362-63; *Thomson, supra*, 66 Cal.2d at pp. 746–747; see also Mot. at 5). Plaintiffs' arguments confirm that a stay is appropriate.

**1.   The Parallel Federal MDL in California is a Crucial Factor Favoring a Stay**

Plaintiffs concede that "Facebook has presented the correct policy" regarding California-based actions (Opp. at p. 5)—*i.e.*, that the pendency of the parallel federal MDL in California is a "crucial factor" favoring a stay in light of California's "strong policy of comity." (*Thomson, supra*, 66 Cal.2d at p. 747; see also *Caiafa, supra*, 15 Cal.App.4th at p. 807 [staying case pending Southern District of California action].) Plaintiffs' response is to argue that "[o]nly a California state court can adequately effectuate the intent of the California legislature." (Opp. at pp. 1, 11). But that is the opposite of comity. Just as state courts are competent to apply federal law, federal courts are competent to apply state law, including the California UCL statute. And even if a federal court

encounters a novel issue of California law, it can certify a question to the California Supreme Court. (See *L.A. Unified Sch. Dist. v. Garcia* (9th Cir. 2012) 669 F.3d 956, 963.)[4]

Plaintiffs next argue that this case should proceed because the MDL plaintiffs have Article III standing problems that will " pose a realistic threat to achieving injunctive relief." (Opp. at p. 11.) But the difficulties the MDL plaintiffs will face in proving that they suffered a concrete injury for Article III purposes are the same difficulties that Plaintiffs here will face in showing, as the UCL requires, that they suffered "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury." (Cal. Bus. & Prof. Code § 17204 ["Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction ... by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."]; see also *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.) As the California Supreme Court held in *Kwikset*, the phrase "injury in fact" was "intended to incorporate the established federal meaning" under Article III jurisprudence. (*Id.* at p. 322.) Indeed, it was "the intent of the California voters in enacting [Proposition 64] to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution." (*Ibid.*, quoting Prop. 64, § 1, subd. (e).) If anything, the UCL standing requirements are even *more* stringent than Article III because they require economic injuries—a loss of money or property—and can never be satisfied by intangible injuries. (*Kwikset, supra*, 51 Cal.4th at p. 324; see also *Van Patten v. Vertical Fitness Grp., LLC* (9th Cir. 2017) 847 F.3d 1037, 1043, 1047-48 [plaintiff with Article III standing lacked UCL standing because he had not alleged a loss of money or property].) Accordingly, the standing issue here is not meaningfully different from the Article III standing issue the MDL court must decide.

Plaintiffs' suggestion that only the state court can address their request for injunctive relief (Opp. at p. 1), fails as well. Of course, federal courts are fully capable of resolving claims for injunctive relief; there is no support whatsoever for Plaintiffs' assertion that only a state court can do

---

[4] Plaintiffs' assert that allowing federal courts to adjudicate UCL claims would "gut[]" the effectiveness of the UCL (See Opp. at p. 5 [citing *Davidson v. Kimberly-Clark Corp.* (9th Cir. 2017) 873 F.3d 1103]), but the *Davidson* decision was superseded to exclude the quoted language. (*Davidson v. Kimberly-Clark Corp.* (9th Cir. 2018) 889 F.3d 956].)

justice to their UCL claims. (See, e.g., *Haas Automation, Inc. v. Denny* (C.D. Cal. July 1, 2014) 2014 WL 2966989, at *7 ["[T]he Court grants Plaintiff an injunction based on Defendants' violation of the California UCL."].) Plaintiffs call into question the motives and capabilities of co-lead counsel for the MDL Plaintiffs, Derek Loeser, based on another case he handled before Judge Chhabria that resulted in substantial monetary damages. (Opp. at 7-8.) But Plaintiffs' aspersions are highly improper and, in any event, irrelevant to this case. Plaintiffs have no reason to doubt that co-lead counsel for the MDL Plaintiffs will zealously represent their clients' quest for injunctive relief against Facebook. (See Ex. A [Aug. 23, 2018 Hr'g Tr.] at p. 19:20-25 [MDL Co-Lead Counsel Lesley Weaver discussing alleged "irreparable harm"].)

### 2. This Action Presents the Risk of Conflicting Rulings and Duplicative Litigation

Plaintiffs do not dispute that, if this action were to proceed, this Court would be required to rule on issues that are identical to those in the federal MDL. (See Opp. at pp. 11–12.) They attempt to gloss over this issue by suggesting that this Court could "coordinate or interact with [its] federal counterpart[] to minimize problems," stating that Plaintiffs "remain committed to coordinating these cases to avoid unnecessary burdens from arising." (*Id.* at p. 12.) But the most efficient way to accomplish these ends is to stay this case pending the federal MDL. This is exactly what the Superior Court did in *Van Zant v. Apple*: It stayed the state-court action pending a California-based federal MDL because the cases shared "substantial similarities in allegations and issues," thus creating "a real potential for conflicts with the MDL action," which "weigh[ed] strongly in favor of staying the [state court] matter." (Mot. Ex. G [*Apple Order*] at p. 3.) Plaintiffs provide no reason this Court should not follow the same course and stay proceedings pending the California-based federal MDL.[5]

### 3. The MDL Will Resolve the Rights of the Parties to This Action

As Facebook explained in its opening brief (Mot. at p. 9), the federal MDL will resolve the rights of the Plaintiffs here: Plaintiffs fall within the class definition in most of the MDL complaints,

---

[5] Plaintiffs quote the Ninth Circuit's decision in *Briggs v. Merck Sharp & Dohme* (9th Cir. 2015) 796 F.3d 1038, 1045, "that effective coordination effectively moots concerns over unseemly conflicts or inconsistent rulings." (Opp. p. 12.) But that quote comes from the portion of the opinion quoting the *district court's* ruling, which the Ninth Circuit proceeded to *reverse*. (*Briggs*, 796 F.3d at 1052.)

many of which also seek the same exact injunctive relief that Plaintiffs seek here. Plaintiffs do not address any of the California case law holding that two cases need not be identical to warrant a stay, as long as the parties are "substantially identical" and the actions "affect[] the same subject matter." (*Caiafa, supra*, 15 Cal.App.4th at 803; see also *Thomson, supra*, 66 Cal.2d at p. 746 fn. 5; *Berg, supra*, 61 Cal.App.4th at 363; Mot. Ex. G [*Apple Order*] at p. 3.) Instead, they assert that class certification issues will derail efforts to obtain injunctive relief because "class certification problems are even more pronounced when injunctive relief is sought in federal courts." (Opp. at p. 6-7.) But their authorities do not support this claim. In *Pecover v. Elec. Arts Inc.* (N.D. Cal. Dec. 21, 2010) 2010 WL 8742757, at *15), the plaintiffs' claims for injunctive relief failed due to "their lack of attention to the issue," not the law of class certification. And Plaintiffs' quotation of *Davis v. Astrue* (N.D. Cal. 2012) 874 F. Supp. 2d 856, 868 omits the key language that "injunctive relief generally should be limited to apply only to named plaintiffs *where there is no class certification*." (emphasis added).

### 4. A Stay Will Promote Judicial Economy

Finally, a stay of this action will further the efficiency of the federal MDL, which is moving at a swift pace. Indeed, in the last several weeks, Judge Chhabria has appointed lead counsel (Ex. E), heard argument on discovery issues (Ex. A), ordered the filing of a consolidated MDL complaint (Ex. F), and ordered limited discovery in connection with that consolidated complaint (Ex. G). The consolidated amended complaint is due on September 21, 2018, and Facebook's motion to dismiss will be fully briefed by the end of the year. (Ex. F.) This is precisely the type of efficiency the federal MDL process was designed to promote, and that would be disrupted if parallel proceedings were allowed to go forward in this Court. (See 28 U.S.C. § 1407(a) [transfer of cases to MDL intended to "promote the just and efficient conduct of such actions"].)

Plaintiffs deride concerns for economy as "[d]elay for the sake of delay" (Opp. at p. 13), but offer no support for this view. Indeed, Plaintiffs misrepresent language from concurrences and dissents as holdings from the U.S. Supreme Court. They quote from Justice White's concurrence in *United States v. Stauffer Chemical Co.* (1984) 464 U.S. 165, 178, but ignore the rationale of the opinion for the Court, which expressly cited policies promoting judicial economy. (*Id.* at 172-73

[policy of "protecting litigants from burdensome relitigation and of promoting judicial economy"]). And the passage from *Perry v. MSPB* (2017) 137 S.Ct. 1975, 1991, appears in Justice Gorsuch's dissent. None of these inapposite, non-authoritative snippets can undermine the fact that efficiency is a critical factor supporting a stay of an action in this Court in deference to a pending MDL action in a California federal court. (See *Berg, supra*, 61 Cal.App.4th at 363.)

## CONCLUSION

For the foregoing reasons and those in Facebook's moving papers, the Court should stay this action pending resolution of the MDL proceedings.[6]

Dated: September 4, 2018                          GIBSON, DUNN & CRUTCHER LLP

                                                  By: _____/s/ Joshua Lipshutz_____
                                                              Joshua Lipshutz

                                                  *Attorney for Defendant Facebook, Inc.*

---

[6] Contrary to Plaintiffs' suggestion (Opp. at p. 12), Facebook has dealt in good faith with Plaintiffs' counsel throughout this litigation. On July 24, 2018, Facebook inquired whether Plaintiffs would consent to a stay. (Ex. D at 3-4.) Plaintiffs indicated telephonically the following day that they would not, but asked whether Facebook would consider a step short of a stay. Facebook advised Plaintiffs that it planned to seek a stay and asked whether Plaintiffs would stipulate to extend the deadline for Facebook to file its responsive pleading (at that time due on August 13, 2018) until 30 days after the Court rules on the motion to stay. (Ex. D at 2-3.) When Plaintiffs did not respond within 48 hours, Facebook filed its motion to stay on July 27, 2018. (Ex. D at 1-2.) That same day, Facebook asked Plaintiffs again whether they would stipulate to extend the deadline for Facebook to file its responsive pleading until 30 days after the Court rules on the motion to stay. (*Ibid.*) On July 30, 2018, when Plaintiffs again had not responded, Facebook advised them, pursuant to CRC 3.1204, that it would file an ex parte request for an extension of time for its response to the complaint. (Ex. D at 1.) Only after this communication did the parties ultimately agree to extend Facebook's response deadline without other conditions attached.