| | |
|---|---|
| **BLEICHMAR FONTI & AULD LLP** <br> 555 12th Street, Suite 1600 <br> Oakland, CA 94607 | **GIBSON DUNN & CRUTCHER, LLP** <br> 555 Mission Street <br> San Francisco, CA 94105 |

**KELLER ROHRBACK LLP**
1201 Third Avenue, Suite 3200
Seattle, WA 98101

November 29, 2018

VIA ECF
The Honorable Vince Chhabria
United States District Court Judge
San Francisco Courthouse
Courtroom 4, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*,
                No. 3:18-cv-02843-VC

Dear Judge Chhabria:

      Plaintiffs and Defendant Facebook, Inc. jointly submit this letter to resolve the following disputes: (1) Plaintiffs seek production of additional documents and responses to Request for Production No. 2 and Interrogatory Nos. 2 and 3; (2) Plaintiffs ask that Facebook be ordered to produce unredacted versions of the PricewaterhouseCoopers LLP ("PwC") assessment reports prepared pursuant to the Consent Decree by the Federal Trade Commission ("FTC") (*see* Consolidated Complaint at ¶¶ 297-98); and (3) Plaintiffs seek leave to serve a third party subpoena on PwC seeking documents relating to those reports.[1]

**I.**    **Plaintiffs' Position:**

      The very narrow discovery Plaintiffs seek bears directly on the threshold issues of standing and injury, and other core claims that Facebook challenges in its Motion to Dismiss (ECF No. 184). Facebook's refusal to appropriately respond to Plaintiffs' discovery requests violates Pretrial Order No. 11 (ECF No. 130) ("PTO No. 11" or "the Order").

      **A.  Facebook Should Be Compelled to Produce Documents Responsive to Requests for Production No. 2; Responses to Interrogatories Nos. 2 & 3:**

      PTO No. 11 ordered Facebook to produce "documents and information relating to the type and amount of user data MyDigitalLife would have been able to obtain (with or without

---

[1] Consistent with Paragraph 21 of the Court's standing order, the discovery requests at issue and Facebook's response to them are attached as Exhibits 1 through 2 to the Declaration of Lesley E. Weaver, submitted herewith.

Facebook's permission) as a result of this relationship...." Following the issuance of PTO No. 11, Plaintiffs served discovery requests on Facebook largely mirroring the Court's language. *See* Weaver Decl. Exs. 1 & 2. Importantly, Plaintiffs' discovery requests asked Facebook to identify (via interrogatories) and produce documents relating to what user data Kogan and his app "***obtained***" as opposed to what "***would have been obtained***."

Specifically, RFP No. 2 seeks: "All documents relating to the type and amount of user data that Aleksandr Kogan or his app, thisisyourdigitallife, obtained…" in an effort to understand what data was *actually* obtained by Kogan and his app. Similarly, ROG No. 2 requests that Facebook "identify and describe by type and volume all user data that Aleksandr Kogan or his app, thisisyourdigitallife, obtained...." ROG. No. 3 asks Facebook to "state when and how the user data was obtained, when Facebook first became aware that Aleksandr Kogan obtained it, and whether such data is still in the possession of Aleksandr Kogan." Weaver Decl. Ex. 2. Facebook argues that because what Kogan "obtained" is not the same as what he "would have been able to obtain," it need not produce responsive documents or provide complete responses to these discovery requests.

The plain terms of PTO No. 11 require Facebook's compliance with this discovery. The information *actually* obtained is necessarily included in the data that Kogan's app would have been able to obtain because the app may not have obtained all of the user data that "would have been" available. Thus, Plaintiffs seek discovery which is clearly narrower than that ordered pursuant to PTO No. 11.

Despite multiple discussions, Facebook's position has remained unchanged. Facebook has provided partial answers to ROG Nos. 2 and 3 but has not described what data was *actually* obtained. Because Facebook has failed to specifically identify what content and information it provided to Kogan or his app, which Facebook users are impacted or who now possesses users' data, Plaintiffs seek judicial relief ordering immediate production of this discovery.

### B. Plaintiffs' Request for Production of the Unredacted PwC Reports Bears Directly on Disputed Factual Issues Central to the Motion to Dismiss

Under the express terms of the FTC Consent Decree, Facebook was required to retain an outsider auditor to analyze its privacy control settings and report to the FTC regarding Facebook's handling of user data. CC 152-2 at ¶ 297. It hired PwC to do so. The Consent Decree further required the preparation of quarterly assessment reports ("Reports"). PwC's "inquiry, observation, and inspection/examination procedures to assess the effectiveness of the Facebook privacy controls implemented" are described in the Reports from years 2012-2017. These Reports have been produced to Congress but are only available publicly in highly redacted form.[2] Facebook did not produce any such Report, in redacted or unredacted form, in its production to Plaintiffs.

There can be no dispute that the Reports are highly relevant to questions of injury, damage, gross negligence, willful knowledge of breach, and many other issues before the Court

---

[2] Plaintiffs can provide an example of one such redacted Report at the Court's request.

raised by Facebook's Motion to Dismiss.[3] Facebook does not contest the relevance of the Reports, but takes the position that PTO No. 11 does not permit discovery of the Reports because no third party discovery is allowed, and the Reports are beyond the scope of allowable discovery under PTO-11. However, PTO No. 11 requires Facebook to produce "documents and information relating to the type and amount of user data Kogan or his app would have been able to obtain" and "documents and information relating to any efforts Facebook made to enforce such restrictions against Kogan or his app." PTO No. 11 at 2. The Reports examine the efficacy of Facebook's privacy controls and thus concern the type of information third party apps "would have been able to obtain," as well as Facebook's efforts to enforce its privacy policies with third-party apps such as Kogan's. PwC's investigation and Reports are thus central to the discovery ordered by PTO No. 11.

### C. Plaintiffs Seek Leave to Serve a Subpoena on Third Party PwC

Because Facebook does not possess all of the materials PwC relied on in connection with preparing its Reports, Plaintiffs further seek leave to issue a subpoena to PwC for the purpose of ensuring preservation as well as to obtain limited discovery (at this time) from PwC regarding PwC's investigation that led to the Reports. Facebook objects that third-party discovery is not within the scope of PTO No. 11, but this is also error. PTO No. 11 is framed in terms of subject matter and issues, not parties.

To the extent the Court agrees that PTO No. 11 does not permit Plaintiffs to serve third party discovery on this issue, Plaintiffs contend that there is "good cause" to grant Plaintiffs leave to serve a subpoena on PwC given the central role these issues play in addressing Facebook's Motion to Dismiss. Moreover, allowing Plaintiffs to serve this subpoena will not cause Facebook to suffer prejudice because it bears no burden in responding to the subpoena. *See Lewis v. Denver Fire Dept.*, 09-CV-00004-PAB-MJW, 2009 WL 5126545, at *1 (D. Colo. Dec. 18, 2009). As such, Plaintiffs seek leave to promptly serve a subpoena on PwC seeking production of documents related to its investigation.[4]

## II.   Defendants' Position:

Pursuant to this Court's order, all discovery in this action is "stayed pending a ruling on Facebook's upcoming motion to dismiss," other than "limited discovery" on certain "narrower issue[s]." PTO No. 11. The Court allowed this limited discovery to assist Plaintiffs in filing a comprehensive consolidated complaint, enabling the parties to litigate a single motion to dismiss. *See* Aug. 23, 2018 Tr. 29:9-11 (Mr. Loeser: "So if we focus on that information, I think we can get you a Complaint that has the facts that we would [otherwise] have to amend

---

[3] PwC "found only 'limited evidence' that Facebook had monitored or checked its partners' compliance with its data use policies." Nicholas Confessore, Michael LaForgia and Gabriel J.X. Dance, *Facebook Failed to Police How its Partners Handled User Data*, NY Times, Nov. 12, 2018, available at https://www.nytimes.com/2018/11/12/technology/facebook-data-privacy-users.html.

[4] Plaintiffs have prepared a draft subpoena and will make it available for the Court's inspection at the Court's request.

and add after we got that information."). Thus, following this Court's order, Plaintiffs sent Facebook discovery requests and interrogatories and requested a response within 10 days, prior to the filing of their consolidated complaint. Facebook complied, sending Plaintiffs nearly 10,000 pages of documents and 17 pages of detailed interrogatory responses covering all five categories permitted by PTO No. 11.

Now, nearly two months after filing their consolidated complaint and the same week as their deadline for opposing Facebook's motion to dismiss, Plaintiffs have decided to ask for more. But the additional discovery they seek is beyond the scope of PTO-11, has no bearing on the issues being decided on the motion to dismiss, and would be unduly burdensome on Facebook at this stage of litigation. This Court should deny Plaintiffs' requests.

### A. Facebook's Discovery Responses Properly Limited Their Production To Categories of User Data that Kogan "Would Have Been Able To Obtain."

PTO No. 11 permitted limited discovery of "documents and information relating to the type and amount of user data Kogan or thisisyourdigitallife *would have been able to obtain* (with or without Facebook's permission) as a result of this relationship [with Facebook]." (Emphasis added.) Facebook's discovery responses complied with that order: its interrogatory responses described the categories of data that Kogan could have obtained and provided estimates for the "amount" of user data by estimating the number of affected users. *See* Weaver Decl. Ex. 1 at 8-12; *see also* FB-CA-MDL-00007317.

This Court's focus on the *categories* of available data was consistent with the discussion about Article III standing at the August 23 hearing. As this Court will recall, Plaintiffs' counsel said (incorrectly) that Facebook provided app developers with users' credit card information, an assertion that supposedly gave rise to Plaintiffs' need to procure identity-theft protection. Aug. 23, 2018 Tr. 21:2-24. Facebook's documents and interrogatory responses established the falsity of this allegation, Weaver Decl. Ex. 1 at 10, and the allegation appears nowhere in the consolidated complaint.

Plaintiffs' first ground for relief now seeks something quite different: an accounting of all user data that Kogan *actually* obtained and whether Kogan still possess such data. As an initial matter, any such discovery should be sought from Kogan himself. Indeed, both Plaintiffs and Facebook are seeking that very information as part of the Cambridge Analytica bankruptcy proceedings. Second, to the extent Plaintiffs are seeking to learn whether Kogan might have obtained *their* data, Facebook already provided such information, as demonstrated by Plaintiffs' own allegations. Compl. ¶¶ 21-88, 154-156. And, because Facebook has already informed Plaintiffs which categories of information Kogan *would have* been able to obtain, Plaintiffs know the outer limits of the data Kogan might have. Nothing more is required to litigate Article III standing or any of the other legal defenses set forth in Facebook's motion to dismiss.

### B. The PwC Reports Are Outside the Scope of PTO No. 11, Are Not Relevant to the Motion to Dismiss, and Contain Sensitive Information

The PwC Reports do not fall under any of the discovery categories permitted by PTO No. 11.  As Plaintiffs as aware,[5] the reports were prepared as part of Facebook's compliance with a 2012 FTC Consent Order, which requires Facebook to establish a comprehensive privacy program, and separately to "obtain initial and biennial assessments and reports ('Assessments') from a qualified, objective, independent third-party professional" regarding the adequacy of the program.  The reports are not about Kogan or thisisyourdigitallife—the only subjects covered by PTO No. 11—or even Cambridge Analytica.[6]  Rather, they are broad assessments of Facebook's privacy program, including topics as wide-ranging as Facebook's employee training and onboarding procedures.  The assessments concluded that Facebook's privacy program was "operating with sufficient effectiveness to provide reasonable assurance to protect the privacy of covered information."

To the extent anything in the reports is relevant to the *merits* of Plaintiffs' claims, *none* of it is relevant to the legal arguments presented in Facebook's motion to dismiss, which do not address Plaintiffs' factual allegations regarding the adequacy of Facebook's privacy program.  Nonetheless, in order to resolve this issue amicably and without imposing on the Court, Facebook offered (without waiving its position that these reports, in whole or in part, are not responsive to PTO No. 11) to make a voluntary production of the portion of the assessments related to Facebook's controls vis-à-vis the third-party developer API accessed by Mr. Kogan (specifically, the relevant portions in the "Third-Party Developers" section of the assessment), if Plaintiffs would commit to maintaining the confidentiality of this information pursuant to the parties' Protective Order.  Plaintiffs rejected this compromise and continue to seek the entire reports, citing their purported relevance to the broader allegations made in their complaint (not the topics set forth in PTO No. 11).

Plaintiffs' request for leave to subpoena PwC for "the materials PwC relied on in connection with preparing its Reports" is also improper.  In addition to the reasons set forth above regarding the PwC Reports themselves having nothing to do with Kogan or his app and being beyond the scope of PTO No. 11, PTO No. 11 does not permit third-party discovery at this time—and rightly so, as broad discovery, including third party discovery, would divert the attention of the parties and the Court from the resolution of Facebook's pending motion to dismiss.  And, again, these materials have no bearing on the motion to dismiss and could reveal sensitive information about Facebook's systems and processes and PwC trade secrets.  Moreover, prior to sending Facebook their portion of this letter, Plaintiffs never expressed any interest in obtaining these materials, as opposed to the PwC reports themselves.

---

[5] Plaintiffs already have access to redacted versions of the assessments that have been disclosed pursuant to FOIA requests.  (Am. Compl. ¶ 338).

[6] The article Plaintiffs cite in footnote 3 above does not address app developers, but rather "device manufacturers" that do not include Kogan or his app.

Dated: November 29, 2018

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By: */s/ Lesley E. Weaver*
    Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
Emily C. Aldridge (SBN 299236)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
mweiler@bfalaw.com
ealdridge@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

KELLER ROHRBACK LLP

By: */s/ Derek W. Loeser*
    Derek W. Loeser

Derek Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497

cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By:  */s/ Joshua S. Lipshutz*
       Joshua S. Lipshutz


Orin Snyder (*pro hac vice pending*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley (SBN 154148)
Brian M. Lutz (SBN 255976)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*


Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document

has been obtained from each of the other signatories above.

Date: November 29, 2018

                                                             */s/ Lesley E. Weaver*
                                                               Lesley E. Weaver