| | |
|---|---|
| Lesley E. Weaver (SBN 191305) | Derek W. Loeser (admitted *pro hac vice*) |
| BLEICHMAR FONTI & AULD LLP | KELLER ROHRBACK L.L.P. |
| 555 12th Street, Suite 1600 | 1201 Third Avenue, Suite 3200 |
| Oakland, CA 94607 | Seattle, WA 98101 |
| Tel.: (415) 445-4003 | Tel.: (206) 623-1900 |
| Fax: (415) 445-4020 | Fax: (206) 623-3384 |
| lweaver@bfalaw.com | dloeser@kellerrohrback.com |

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **DECLARATION OF LESLEY E. WEAVER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT FACEBOOK, INC. TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: January 23, 2019<br>Hearing Time: 10:00 a.m. |

I, Lesley E. Weaver, declare and state as follows:

    1.    I am an attorney licensed in the State of California and admitted to the United States District Court for the Northern District of California. I am a partner in the Oakland office of Bleichmar Fonti & Auld LLP ("BFA"), Co-Lead Counsel for Plaintiffs in the above-captioned matter. I am a member in good standing of the bar of the State of California and of this Court. I submit this declaration in support of Plaintiffs' Opposition to Motion of Defendant Facebook, Inc. to Dismiss Plaintiffs' Consolidated Complaint.

2. Attached hereto as Exhibit 1 is a true and correct copy of a screenshot of an excerpt from the terms of service available today on Facebook's website, https://www.facebook.com/legal/terms, that was created at my direction on November 30, 2018. This exhibit has been highlighted for the Court's reference. If necessary and if given leave to amend, Plaintiffs would plead the fact that Facebook has included the highlighted term in its Terms of Service, which is a change from including this term in its Data Policy.

3. Attached hereto as Exhibit 2 is a true and correct copy of a screenshot from an article titled "Facebook: Cambridge Analytica warning sent to users" published by *BBC News* on April 9, 2018. This screen shot was created at my direction on November 30, 2018 at the following website: https://www.bbc.com/news/technology-43698733. If necessary and if granted leave to amend, Plaintiffs would cite this article for the propositions that Facebook's notices referenced keeping Plaintiffs' data "safe," acknowledged that "the website may have misused some of your Facebook information," and said Facebook was "committed to confronting abuse."

4. Since the time of the filing of Plaintiffs' Corrected Consolidated Complaint, numerous in-depth articles have been published that bear on Facebook's practices relating to its collection and dissemination of users' content and information, which relate to how users have been damaged by Facebook's actions. For example, attached hereto as Exhibit 3 is a true and correct copy of a *New York Times* article titled "Facebook Failed to Police How its Partners Handled User Data" published on November 12, 2018. If necessary and if given leave to amend, Plaintiffs would cite this article for the following propositions:

    a. Facebook was informed by PricewaterhouseCoopers in 2013 that its oversight of partnerships with device makers was detected by the company's government-approved privacy monitor, and problems in handling user data were not disclosed to users.

    b. Facebook had secret partnerships with device makers, but did not monitor what those device makers did with user data.

Of note, this article relies in part upon review and analysis of the unredacted versions of PricewaterhouseCoopers' assessment reports of Facebook's treatment of user data, pursuant to a 2011

Consent Decree Facebook entered into with the Federal Trade Commission. Plaintiffs have sought production of such documents from Facebook, but Facebook has refused to produce them.

5. Attached hereto as Exhibit 4 is a true and correct copy of a *New York Times* article titled "Delay, Deny and Deflect: How Facebook's Leaders Fought Through Crisis," published on November 14, 2018. If necessary and if given leave to amend, Plaintiffs would plead facts contained in this article, relating to Facebook's degree of transparency with users and regulators following the Cambridge Analytica revelations. Plaintiffs would also refer to the following quote from Elliot Schrage, former vice president for global communications, marketing and public policy at Facebook: "We failed to look and try to imagine what was hiding behind corners."

6. In addition to these examples, informative coverage by journalists worldwide and numerous ongoing investigations have generated significant additional information regarding Facebook's treatment of user content and information. Facebook has produced information to other litigants and to regulators around the world on these topics. These include, but are not limited to, the following proceedings, all of which have revealed further information relevant to Plaintiffs' claims:

    a. Lawmakers from nine countries, led by the United Kingdom, have convened to investigate Facebook's role in privacy, including Argentina, Belgium, Brazil, Canada, France, Ireland, Latvia and Singapore.[1]

    b. A group of at least 37 U.S. State Attorneys General are now investigating Facebook to determine whether Facebook complies with handling of personal content and information, and the Federal Trade Commission has re-opened its investigation of Facebook to determine if Facebook violated the 2011 Consent Decree.

    c. On July 10, 2018, the United Kingdom's Information Commissioner's Office ("ICO") announced findings of its investigation into Facebook for breaches of the UK data protection law. On October 24, 2018, the ICO issued a Monetary Penalty Notice summarizing

---

[1] https://techcrunch.com/2018/11/27/the-problem-is-facebook-lawmakers-from-nine-countries-tell-zuckerbergs-accountability-stand-in/

the findings of its investigation.[2] If necessary and if given leave to amend, Plaintiffs would cite the following portions of the Monetary Penalty Notice:

    i. "[T]o the extent that such processing of personal data was purportedly based on consent, any such consent was invalid and ineffective, since it was not freely given, specific, or informed: see the definition of 'consent' in Directive 95/46/EC, Article 2(h)." Monetary Penalty Notice at p. 15, ¶ 46.

    ii. "It was unfair for the Facebook Companies to rely on a Facebook user's privacy settings as enabling apps installed by the user's Facebook friends to collect extensive personal data from the user's account . . . The Facebook Companies ought instead to have ensured that, before access to such personal data took place, the Facebook user: was informed that the app wished to access such personal data; was told what data was sought, and how it would be used; and was given the opportunity to give or withhold their consent for such access." Monetary Penalty Notice at p. 16, ¶ 47.

    iii. "[T]he Facebook Companies failed to provide adequate information to Facebook users that this could occur, and as to the steps that they needed to take to prevent this. Individuals would not reasonably have expected their personal data to be collected in this way merely because of a choice made by other individuals to use a particular app." Monetary Penalty Notice at p. 16, ¶ 47.

    iv. "The Facebook Companies took no steps, or no adequate steps, to guard against such unauthorized or unlawful processing . . . ." Monetary Penalty Notice at p. 18, ¶ 53.

7. In addition to publicly available information, Plaintiffs would seek production of all materials responsive to this Court's Pretrial Order No. 11, including discovery relating to Facebook's agreements with its business partners, which Facebook has refused to produce, notwithstanding that it

---

[2] https://ico.org.uk/about-the-ico/news-and-events/news-and-blogs/2018/10/facebook-issued-with-maximum-500-000-fine/

has produced numerous materials regarding such agreements in other litigation and proceedings. Production of this material will also certainly bear on Plaintiffs' claims.  If necessary and if granted leave to amend, Plaintiffs will incorporate that evidence into an amended complaint.

    I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and to the best of my knowledge. This declaration was executed in Oakland, California.


DATED:  November 30, 2018                     */s/ Lesley E. Weaver*
                                                    Lesley E. Weaver


    Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories above.

Date: November 30, 2018

                                                                        */s/ Derek Loeser*
                                                                          Derek Loeser