Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | MDL No. 2843<br>Case No. 18-md-02843-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: January 23, 2019<br>Hearing Time: 10:00 a.m. |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................1

II.   LEGAL STANDARDS .......................................................................................................2

III.  PLAINTIFFS' OBJECTIONS ..............................................................................................3

      A.   Lipshutz Exhibit 1 Is Improperly Submitted by Facebook to Establish That
           Facebook Users Should Have Been Aware of Facts Underpinning Their
           Complaint in 2015 .....................................................................................................3

      B.   The Authenticity of the Duffey Exhibits Is in Question, and Facebook's
           Requested Inferences Regarding User Consent Are Not Grounded in Evidence. ....4

      C.   Facebook Improperly Proffers Facts Drawn from Exhibits 1-49. ..........................10

IV.   CONCLUSION ..................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ................................................................................................ 2

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ................................................................................................ 2

*Harris v. R.J. Reynolds Vapor Co.*
    2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) ....................................................... 9

*In re Blue Earth, Inc. Sec. Class Action Litig.*
    2015 WL 12001274 (C.D. Cal. Nov. 3, 2015) ........................................................ 9

*In re Tracht Gut, LLC*
    836 F.3d 1146 (9th Cir. 2016) .............................................................................. 11

*Khoja v. Orexigen Therapeutics, Inc.*
    899 F.3d 988 (9th Cir. 2018) .................................................................... 2, 3, 4, 11

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) .......................................................................... 2, 3, 4

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
    416 F.3d 940 (9th Cir. 2005) .................................................................................. 2

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) ................................................................................ 2

*SEC v. Mercury Interactive, LLC*
    2010 U.S. Dist. LEXIS 106019 (N.D. Cal. Sept. 27, 2010) ................................... 3

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) .................................................................................. 3

*Vinson v. Cal. Dep't of Corr. & Rehab.*
    2014 WL 4594208 (N.D. Cal. Sept. 15, 2014) ..................................................... 11

OPP. TO FACEBOOK'S REQUEST                    II                              MDL No. 2843
FOR JUDICIAL NOTICE                                                CASE No. 18-MD-02843-VC

## I. INTRODUCTION

Plaintiffs partially oppose Defendant Facebook, Inc.'s Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiffs' Consolidated Complaint (ECF No. 185) ("Request"). Facebook requests judicial notice and consideration under the incorporation by reference doctrine of a December 2015 article published in the *Guardian* (Exhibit 1 to the Declaration of Joshua Lipshutz, ECF No. 186) and documents it describes as versions of Facebook policy documents (Exhibits 1-49 to the Declaration of Michael Duffey, ECF No. 187), claiming that the Complaint references and relies on the documents. ECF No. 185 at 6-7.

Plaintiffs do not object to Facebook's Request that the Court judicially notice the *Guardian* article for the limited purpose of recognizing its existence. Plaintiffs also do not contest that Exhibits 1-49 were downloaded from Facebook's internal archive. However, Plaintiffs question whether Facebook has archived its policy documents in a manner that reflects accurate version dates, captures revisions, and ensures that the whole document is preserved. Notably, 38 policies Facebook attached to the Duffey Declaration were not produced to Plaintiffs in this action, of which 16 were expressly covered by PTO No. 11 (ECF No. 130) and Plaintiffs' Request for Discovery No. 5.[1]

Plaintiffs also oppose judicial notice of these documents to the extent Facebook asks the Court to rely on them for the truth of their contents, or, with regard to the policy documents, to the extent that Facebook asks the Court to draw improper inferences, such as whether they are "contractual documents," as the Request describes them. ECF No. 185 at 2. Plaintiffs specifically allege that policy documents like these are not incorporated into Facebook's agreement with users. *See*, *e.g.*, ECF No. 152-2 at ¶ 213. Other improper inferences would include accepting that these hard copy documents reflect how Facebook's disclosures appeared in the user experience when they joined Facebook; how policies were accessed; for what time period any specific policy was available for user review; or where such policies appeared on Facebook's site. These are all questions of fact that the Request cannot answer.

---

[1] The 16 policies are exhibits 15-22, 27, 37-43, and 49 to the Duffey Declaration.

For the reasons set forth below, the Request should be denied. Failing that, Facebook's motion to dismiss should be converted into a motion for summary judgment pursuant to Fed R. Civ. P. 56, and Plaintiffs should be permitted the opportunity to take meaningful discovery.[2] Fed. R. Civ. P. 12(d).

## II.     LEGAL STANDARDS

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Under Rule 12(b)(6), the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts should not make factual determinations on a motion to dismiss. *See*, *e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005).

There are two exceptions to the rule that district courts may not consider material outside the pleadings on a Rule 12(b)(6) motion: judicial notice under federal Rule of Evidence 201 and the incorporation-by-reference doctrine. Judicial notice is suitable only for a limited set of adjudicative facts that are "not subject to reasonable dispute," "generally known," or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). A court cannot take judicial notice of disputed facts contained in sources that are otherwise appropriate for judicial notice. *Lee*, 250 F.3d at 689.

Incorporation-by-reference is a "judicially created doctrine that treats certain documents

---

[2] Fed. R. Civ. P. 56 prevents a party from being "'railroaded' by a premature motion for summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Before summary judgment may be granted, the non-moving party must have an opportunity to take discovery of information that is essential to her opposition to the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (explaining that summary judgment may be entered against a plaintiff "as long as the plaintiff has had the full opportunity to conduct discovery.").

as though they are part of the complaint itself." *Orexigen*, 899 F.3d at 1002. Courts may consider a document under this doctrine if its content is alleged in the complaint, if the complaint refers extensively to the document, or if the document forms the basis of the plaintiff's claim. *Id.* (citing *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). While a court may consider documents that are submitted as part of a complaint, or that are necessarily relied upon therein, *and* whose authenticity is not contested, it should not consider those documents for the truth of the matters asserted, even if such documents are cited in the complaint. The incorporation-by-reference doctrine is not intended to allow a defendant to prevail on its own version of disputed facts. *SEC v. Mercury Interactive, LLC*, 2010 U.S. Dist. LEXIS 106019, at *19 (N.D. Cal. Sept. 27, 2010).

More generally, and as the Ninth Circuit recently noted, the overuse and improper application of exceptions to the consideration of extrinsic evidence can result in unintended and harmful results. *Orexigen*, 899 F.3d at 999. "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* (citations omitted).

### III.   PLAINTIFFS' OBJECTIONS

**A.   Lipshutz Exhibit 1 Is Improperly Submitted by Facebook to Establish That Facebook Users Should Have Been Aware of Facts Underpinning Their Complaint in 2015.**

Lipshutz Exhibit 1 purports to be a *Guardian* article dated December 11, 2015, titled "Ted Cruz using firm that harvested data on millions of witting Facebook users." Plaintiffs do not object to Facebook's Request to the extent that the Court takes judicial notice of Exhibit 1 to the Lipshutz Declaration for the limited purpose of "indicat[ing] what was in the public realm at the time." (quotation marks and citations omitted). But this means that Lipshutz Exhibit 1 may only be considered for the limited purpose of recognizing the existence of the document, "not [for] whether the contents of those articles were in fact true." *Id.* Nor can the Court take judicial notice of any inference arising from the contents of Exhibit 1 to contradict allegations in the

Complaint. *See Lee*, 250 F.3d at 690.

Plaintiffs also do not object to Facebook's request that the Court consider Lipshutz Exhibit 1 through the incorporation-by-reference doctrine for the same limited purpose. Again, the Court should reject Facebook's attempt to use Lipshutz Exhibit 1 to contradict the relevant allegations in the Complaint. The *Guardian* article did not reveal the facts that form the basis of Plaintiffs' claims. Facebook did not deign to give its users access to the information necessary to determine whether their content and information had been exposed by Facebook until 2017. As such, Plaintiffs could not have been on notice regarding their claims prior to that date. *See* ECF No. 152-2 at ¶¶ 336-337; *see also Orexigen*, 899 F.3d at 1003 ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint … consistent with the prohibition against resolving factual disputes at the pleading stage" (citations omitted)). Failing this, Facebook's motion to dismiss should be converted into a motion for summary judgment pursuant to Fed R. Civ. P. 56, and Plaintiffs should be permitted the opportunity to take meaningful discovery. Fed. R. Civ. P. 12(d).[3]

**B.    The Authenticity of the Duffey Exhibits Is in Question, and Facebook's Requested Inferences Regarding User Consent Are Not Grounded in Evidence.**

  **1.    The Authenticity of Exhibits 1-49 Is in Question.**

Facebook asserts that Exhibits 1-49 are documents whose authenticity cannot be reasonably disputed because (1) the documents are business records collected directly from Facebook's files by a Facebook employee (Duffey) with personal knowledge; and (2) historical versions of the exhibits are available on the Internet on Archive.org.[4] ECF No. 185 at 4-5. But Duffey's declaration does not provide information necessary to authenticate these documents.[5]

---

[3] *See supra* note 2.

[4] Archive.org provides a "digital archive of Internet content, consisting of snapshots of web pages across time." *What is the Wayback Machine and How Does it Work?*, KIVU (Nov. 14, 2014), at https://kivuconsulting.com/what-is-the-wayback-machine-and-how-does-it-work. While this archive provides a tool to examine the historical content posted on websites, it is not comprehensive. Indeed, "[t]he frequency of web page snapshots is variable . . . [t]here are sometimes intervals of several weeks or years between snapshots." *Id.*

[5] Facebook also claims that Exhibits 1-49 are appropriately noticeable because Plaintiffs concede that "these archived versions" are authentic by citing them in the Complaint. ECF No.185 at 6.

And there are problems with the Duffey Exhibits (*e.g.*, Exhibits 13, 26, and 45) that call into question the authenticity of the documents as what Facebook represents them to be.

### a. Duffey's Declaration is Inadequate.

The Duffey Declaration does not assert facts sufficient to establish that Mr. Duffey has personal knowledge of how, when, or in what form Exhibits 1-49 were archived after being posted onto Facebook's public website. Duffey says only that "[a]s part of [his] job responsibilities, [he] is aware of the manner in which Facebook stores archived versions of user policies that were, at one time, posted onto Facebook's public website" and that he "downloaded copies of the documents attached" to his declaration. (ECF No. 187 at 2.) Duffey's declaration does not explain how the policy versions were collected for archiving by Facebook such that the exhibits can be relied on as true and correct copies of the various policies as of a certain date. Plaintiffs object to Duffey's declaration under Fed. R. Evid. 602. Critically, Duffey also does not provide the web address where the documents were posted, thus failing to establish that these documents were available to users.

### b. The Duffey Exhibits Differ from Versions Available On Archive.org.

Facebook asserts that the authenticity of Exhibits 1-49 cannot be questioned because they are available elsewhere on the Internet, presumably because publicly available cached or archived versions, such as those captured by Archive.org, provide a means to externally verify the policies. But review of policies captured by Archive.org upon which Plaintiffs rely call into question the authenticity of Facebook's exhibits. At least two of the Duffey Exhibits lack a reliable revision date as compared to an Archive.org version. Despite bearing the same date, Facebook's exhibits and several versions of what appear to be the same policies available on Archive.org are substantively different (e.g., Exhibits 13 and 26). Another exhibit is incomplete as compared to a version available on Archive.org (e.g., Exhibit 45), and still others show other minor discrepancies. Given these discrepancies, other versions of policies available on

---

Not so. Exhibits 1, 4, 7, 8, 12, 15, 16, 17, 33, 35, 36, and 38 are not referenced in Plaintiffs' Complaint at all.

Archive.org do not support Facebook's claim that the authenticity of the Exhibits cannot reasonably be questioned.

### (i) Exhibits 13 and 26 Differ from the Archive.org Versions Bearing the Same Date.

Facebook does not appear to reliably include or update the "last revised" date on its policies, making it difficult to establish with any certainty whether the policies submitted by Facebook are true and correct copies as of a particular date. For example, Exhibit 13 purports to be an SRR dated May 1, 2009, but Exhibit 13 does not include any identifying date in the text of the document. What appear to be versions of the same policy on Archive.org reflect a "Date of Last Revision" at the top of each document.[6] Moreover, as compared to the Archive.org version, Exhibit 13 includes an additional sentence in Section 16 stating:

> "[w]e may enter into separate agreements that vary from and supersede certain provisions of this Statement so long as such agreements are consistent with your intellectual property rights under this Statement and no less protective of your privacy than this Statement and the Privacy Policy."

For comparison purposes, screenshots of the relevant section are included below.

Exhibit 13 (emphasis added):

**16. Other**

16.1 This Statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements.
16.2 If any portion of this Statement is found to be unenforceable, the remaining portion will remain in full force and effect.
16.3 If we fail to enforce any of this Statement, it will not be considered a waiver.
16.4 Any amendment to or waiver of this Statement must be made in writing and signed by us.
16.5 You will not transfer any of your rights or obligations under this Statement to anyone else without our consent.
16.6 All of our rights and obligations under this Statement are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.
16.7 Nothing in this Agreement shall prevent us from complying with the law.
16.8 **We may enter into separate agreements that vary from and supersede certain provisions of this Statement so long as such agreements are consistent with your intellectual property rights under this Statement and no less protective of your privacy than this Statement and the Privacy Policy.**
16.9 This Statement does not confer any third party beneficiary rights.

---

[6] *Statement of Rights and Responsibilities*, Facebook (Mar 1, 2009), at https://web.archive.org/web/20090826051726/facebook.com/terms.php (captured on Aug. 26, 2009). *See*, *e.g.* "Date of Last Revision: May 1, 2009" at the top of the document.

Whereas, the Archive.org version does not include this text:[7]

> **16. Other**
>
> 1. This Statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements.
>
> 2. If any portion of this Statement is found to be unenforceable, the remaining portion will remain in full force and effect.
>
> 3. If we fail to enforce any of this Statement, it will not be considered a waiver.
>
> 4. Any amendment to or waiver of this Statement must be made in writing and signed by us.
>
> 5. You will not transfer any of your rights or obligations under this Statement to anyone else without our consent.
>
> 6. All of our rights and obligations under this Statement are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.
>
> 7. Nothing in this Agreement shall prevent us from complying with the law.
>
> 8. This Statement does not confer any third party beneficiary rights.
>
> - If you would like us to notify you of any future changes to this Statement, visit our Facebook Site Governance Page and become a fan.

Exhibit 26 presents another example. Review of an Archive.org version of what appears to be the same SRR, dated January 30, 2015, reveals that at some point, Facebook edited the policy to include the following sentence in section 9.1, without updating the January 30, 2015 date affixed to the SRR:[8]

> If you are under the age of eighteen (18), you represent that a parent or legal guardian also agrees to this section on your behalf. (This language is included pursuant to a court-approved legal settlement [hyperlink].)

Exhibit 26, which purports to be a true and correct copy of the January 30, 2015 policy, does not include this added sentence. These insertions are, of course, material to Plaintiffs' claims on behalf of minor Plaintiffs.

### (ii) Exhibit 45 Is Incomplete.

Exhibit 45 purports to be a true and correct copy of Facebook's Data Use Policy, dated December 11, 2012; however, it appears to be incomplete as compared to a version available on

---

[7] *See supra* note 5.
[8] *Statement of Rights and Responsibilities*, Facebook (Jan. 30, 2015), at https://web.archive.org/web/20170720184410/https://www.facebook.com/legal/terms (captured on July 20, 2017).

Archive.org.[9] Exhibit 45 does not include information for users outside the United States and Canada or information regarding California privacy rights, which are included at the end of the policy available on Archive.org. For comparison purposes, screenshots of the relevant section are included below.

Exhibit 45:

**Notice of Changes**
If we make changes to this Data Use Policy we will notify you (for example, by publication here and on the Facebook Site Governance Page). If the changes are material, we will provide you additional, prominent notice as appropriate under the circumstances. You can make sure that you receive notice directly by liking the Facebook Site Governance Page.

**Opportunity to comment**
Unless we make a change for legal or administrative reasons, or to correct an inaccurate statement, we will give you seven (7) days to provide us with comments on the change. After the comment period, if we adopt any changes, we will provide notice (for example, on the

Archive.org version:[10]

**Notice of Changes**
If we make changes to this Data Use Policy we will notify you (for example, by publication here and on the Facebook Site Governance Page). If the changes are material, we will provide you additional, prominent notice as appropriate under the circumstances. You can make sure that you receive notice directly by liking the Facebook Site Governance Page.

**Opportunity to comment**
Unless we make a change for legal or administrative reasons, or to correct an inaccurate statement, we will give you seven (7) days to provide us with comments on the change. After the comment period, if we adopt any changes, we will provide notice (for example, on the Facebook Site Governance Page or in this policy) of the effective date.

**Information for users outside of the United States and Canada**
Company Information: The website under www.facebook.com and the services on these pages are being offered to users outside of the U.S. and Canada by Facebook Ireland Ltd., Hanover Reach, 5-7 Hanover Quay, Dublin 2 Ireland. The company Facebook Ireland Ltd. has been established and registered in Ireland as a private limited company, Company Number: 462932, and is the data controller responsible for your personal information.
Directors: Sonia Flynn (Irish), Theodore Ullyot (American).

**Your California privacy rights**
California law permits residents of California to request certain details about what personal information a company shares with third parties for the third parties' direct marketing purposes. Facebook does not share your information with third parties for the third parties' own and independent direct marketing purposes unless we receive your permission. Learn more about the information we receive and how it is used and other websites and applications. If you have questions about our sharing practices or your rights under California law, please write us at 1601 Willow Road, Menlo Park, CA 94025 or contact us through this help page: https://www.facebook.com/help/contact_us.php?id=173545232710000

| Mobile | Find Friends | Badges | People | Pages | Places | Apps | Games | Music |
| About | Create an Ad | Create a Page | Developers | Careers | Privacy | Cookies | Terms | Help |

Facebook © 2013 · English (US)

---

[9] *Data Use Policy*, Facebook (Dec. 11, 2012), at http://web.archive.org/web/20130415134127/facebook.com/full_data_use_policy (captured on Apr. 15, 2013).

[10] *See supra* note 9.

Given that Exhibit 45 appears to be incomplete, it calls into question whether it is a true and correct copy, and thus whether Facebook's method of archiving user policies was consistent or reliable. Courts frequently decline to take judicial notice of incomplete or truncated documents. *See Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415, at *3 (N.D. Cal. Sept. 30, 2016) (declining to judicially notice a document "missing key disclaimer language"); *In re Blue Earth, Inc. Sec. Class Action Litig.,* 2015 WL 12001274 (C.D. Cal. Nov. 3, 2015) (denying request for judicial notice of a single slide of a PowerPoint presentation because, "although the presentation is referenced in the [complaint] and would otherwise be a proper subject of judicial notice, Defendants failed to present the entire document for the Court's consideration").

### (iii)     Other Inaccuracies Raise Additional Questions.

Comparison of Facebook's other exhibits with versions available on Archive.org raises additional questions. For example, at some point, Facebook appears to have revised an error which appeared in the second sentence of an earlier iteration of the June 8, 2012 SRR. Review of the Archive.org version shows that Facebook revised the policy and fixed this error sometime in 2012 without updating the revision date or issuing a new publication date. Exhibit 24, which purports to represent this SRR, contains this apparent correction.[11]

Likewise, there is a discrepancy where Exhibit 37 displays an email address and the Archive.org version of the document displays "Help Center" hyperlinks.[12] And finally, with the exception of Exhibit 1, none of the versions of the policies that pre-date 2009 display any blue text, indicating where hyperlinks were embedded in the documents, while pre-2009 Archive.org versions include blue text which suggests the existence of hyperlinks.[13] Exhibits 4, 7, 8, 12, 15,

---

[11] *Statement of Rights and Responsibilities*, Facebook (June 8, 2012), at https://web.archive.org/web/20120614184508/http://www.facebook.com/legal/terms (captured on June 14, 2012) (containing the original error).

[12] *Privacy Policy*, Facebook (Nov. 26, 2008), at https://web.archive.org/web/20091109075502/facebook.com/policy.php (captured on Nov. 9, 2009).

[13] Exhibits 2-11, 28-40.

16, and 17 are not available on Archive.org, so there are no comparisons available.

Considering the lack of reliable versioning, and the discrepancies between the Duffey exhibits and Archive.org versions bearing the same dates, it appears that Facebook does not have any internally consistent method of archiving their policies to accurately reflect policies which were in effect as of a particular date. Given that Facebook failed to produce all of the policies called for by PTO No. 11, and submitted 16 of the policies it failed to produce as exhibits in support of its Motion to Dismiss, it appears that even Facebook doesn't know which of its policies were effective and made available to its users at any particular time. If Facebook cannot track its own policies, it is unreasonable for Facebook to expect users to do so. As Facebook has not submitted documents that can be accepted as true and accurate versions of Facebook policies as of any particular dates, without dispute as to their authenticity, Facebook's Request should be denied. *See Vinson v. Cal. Dep't of Corr. & Rehab.*, 2014 WL 4594208, at *2 (N.D. Cal. Sept. 15, 2014) (movant "must meet the burden of demonstrating that the facts . . . [are] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

**C.     Facebook Improperly Proffers Facts Drawn from Exhibits 1-49.**

Leaving aside the question of the authenticity of the Duffey Exhibits, the Court should disregard any facts asserted by Facebook that are based on Exhibits 1-49 to the Duffey Declaration. For example, Facebook asserts that the Data Use Policy is incorporated into the SRR, and that Plaintiffs consented through the SRR and the Data Use Policy to each practice alleged in the Complaint. ECF No. 184-1 at 23. Similarly, Facebook claims that documents incorporated-by-reference into the Complaint "demonstrate that Facebook users consent[ed] to their data being shared with third-party apps." *Id*. 184-1 at 24. But Facebook's factual contentions regarding its policies are not indisputable or "irrefutable" matters of public record, nor are they facts that the Court may appropriately embrace at this stage of the proceedings. *See Orexigen*, 899 F.3d at 1003 (citing *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the

complaint and draw all reasonable inferences in favor of the plaintiff.") (additional citations omitted)). Which policies (or version of a policy) were in effect for what time period, let alone whether any particular policy governed Plaintiffs' use of Facebook, is a question of disputed fact. Furthermore, Exhibits 1-49 do not establish where the policies appeared to users on Facebook's webpages, how accessible they were, or how they appeared to users, including font size and readability. Therefore, the Court should disregard Facebook's contention that Duffey Exhibits 1-49 can be considered to demonstrate Plaintiffs' consent to Facebook's handling of their content and information.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Request to Judicially Notice and incorporate-by-reference Duffey Exhibits 1-49. In the alternative, Facebook's motion to dismiss should be converted into a motion for summary judgment pursuant to Fed R. Civ. P. 56, and Plaintiffs should be permitted the opportunity to take meaningful discovery. Fed. R. Civ. P. 12(d).

Dated: November 30, 2018                                  Respectfully submitted,

KELLER ROHRBACK L.L.P.                                    BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*                              By:    */s/ Lesley E. Weaver*
       Derek W. Loeser                                           Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)                 Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)              Matthew S. Weiler (SBN 236052)
Gretchen Freeman Cappio (admitted *pro hac vice*)         Anne K. Davis (SBN 267909)
Cari Campen Laufenberg (admitted *pro hac vice*)          Emily C. Aldridge (SBN 299236)
1201 Third Avenue, Suite 3200                             555 12th Street, Suite 1600
Seattle, WA 98101                                         Oakland, CA 94607
Tel.: (206) 623-1900                                      Tel.: (415) 445-4003
Fax: (206) 623-3384                                       Fax: (415) 445-4020
dloeser@kellerrohrback.com                                lweaver@bfalaw.com
lsarko@kellerrohrback.com                                 mweiler@bfalaw.com
gcappio@kellerrohrback.com                                adavis@bfalaw.com
claufenberg@kellerrohrback.com                            ealdridge@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of November, 2018, at Seattle, Washington.

/s/ *Derek W. Loeser*
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on November 30, 2018, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Derek W. Loeser*
Derek W. Loeser