Exhibit B

William M. Audet  (SBN 117456)
  waudet@audetlaw.com
Gwendolyn R. Giblin  (SBN 181973)
  ggiblin@audetlaw.com
Ling Y. Kuang  (SBN 296873)
  lkuang@audetlaw.com
AUDET & PARTNERS, LLP
  711 Van Ness Avenue, Suite 500
  San Francisco, CA 94102-3275
  Telephone:   (415) 568-2555
  Facsimile:    (415) 568-2556

*Attorneys for Plaintiffs Leah Ballejos,
Audrey Ellis, and Tameika Martin*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| LEAH BALLEJOS, AUDREY ELLIS, and TAMEIKA MARTIN,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation, and DOES 1 through 100,<br><br>Defendants. | Case No:       18-CIV-03607<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PURSUANT TO THE COURT'S NOV. 16, 2018 ORDER**<br><br>Hearing Date:    December 10, 2018<br>Hearing Time:    10:00 a.m.<br><br>Place:      Dept. 10<br>Judge:      Honorable Gerald J. Buchwald<br><br>Complaint Filed:    July 11, 2018<br><br>Trial Date:      None Set |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

    I.    Whether Facebook's Conduct Is "Unfair" Under the UCL Is Subject To A Split Of Opinion Under California Law, Which Should Be Resolved By California State Courts ........................................................................................................................... 2

    II.   Principles of comity favor this Court adjudicating the UCL claims .................................. 3

    III.  Facebook cannot dispute that Article III roadblocks to injunctive relief, present in the federal MDL, are absent in the Ballejos case .............................................................. 4

    IV.  Additional cases referenced at the hearing further counsel against a stay ......................... 5

    V.   Staying this action will only increase the irreparable harm to the Ballejos plaintiffs and California residents ....................................................................................... 6

CONCLUSION .................................................................................................................................... 7

### TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Aceves v. Allstate Ins. Co.* (9th Cir. 1995) 68 F.3d 1160 .................................................................... 2

*Benitez v. Williams* (2013) 219 Cal.App.4th 270 ........................................................................... 3, 4

*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 .................................................................. 1

*Brown v. Moll* No. C 09-05881 SI, 2010 U.S. Dist. LEXIS 73875 (N.D. Cal. July 21, 2010) ............ 5

*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981 .......................................................................... 2

*Bush v. Palm Beach County Canvassing Bd.* (2000) 531 U.S. 70 .................................................. 1, 6

*Caifa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800 ............................ 1

*Campion v. Old Republic Home Prot. Co.* (S.D. Cal. 2012) 861 F. Supp. 2d 1139 ............................ 5

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
     (1999) 20 Cal.4th 163 ................................................................................................................ 1, 2

*Colorado River Water Conservation District v. United States* (1976) 424 U.S. 800 .......................... 5

*D'Elia v. D'Elia* (1997) 58 Cal.App.4th 415 ....................................................................................... 3

*Drum v. San Fernando Valley Bar Assoc.* (2010) 182 Cal.App.4th 247 ............................................ 2

*Fireman's Fund Ins. Co. v. Garamendi* (N.D. Cal. April 13, 1992) 790 F. Supp. 938 .................... 5, 6

*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594 ........................................................ 2

*In re Estevez* (2008) 165 Cal.App.4th 1445 ....................................................................................... 4

*In re Jose C.* (2009) 45 Cal.4th 534 .................................................................................................... 3

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
     (S.D. Cal. 2012) 903 F.Supp.2d 942 ............................................................................................. 4

*In re Thompson* (10th Cir. 1990) 894 F.2d 1227 ................................................................................ 4

*Intel Corp. v. Advanced Micro Devices* (9th Cir. 1993) 12 F.3d 908 .................................................. 5

*Klein v. United States* (9th Cir. 2008) 537 F.3d 1027 ......................................................................... 3

*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607 ............................................................... 3, 4

*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 ................................................................................... 1

*Moore v. Sims* (1979) 442 U.S. 415 .................................................................................................... 4

*People v. Brisendine* (1975) 13 Cal.3d 528 ........................................................................................ 3

| Cases | Page(s) |
|---|---|
| *People v. Buza* (2018) 4 Cal.5th 658 | 3, 7 |
| *Railroad Comm'n of Texas v. Pullman* (1941) 312 U.S. 496 | 5, 6 |

**Unpublished opinion**

*Abcarian v. Shelley* (9th Cir. Oct. 2, 2003) 77 Fed. Appx. 410 ............................................................ 6

# INTRODUCTION

***Deny, delay, and diffuse***—that is the strategy by which Defendant Facebook, Inc. ("Facebook") seeks to prevail, rather than litigating the *Ballejos* plaintiffs' claims expediently and on the merits. By ***denying*** California residents' pursuit of unique relief available under California's Unfair Competition Law ("UCL"), ***delaying*** progress of the litigation by asserting time-consuming and unnecessary procedural roadblocks, and ***diffusing*** any eventual impact of the injunctive relief by urging this Court to defer to the federal Multidistrict Litigation ("MDL"), Facebook palpably fears the swift and powerful relief this Court may allow if the *Ballejos* action proceeds.

Facebook's insinuation that the Court "must" stay this case in deference to the federal MDL is incorrect. "It is black letter law that…the California court has the discretion ***but not the obligation*** to stay the state court action." *Caifa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804 (emphasis added). In exercising that discretion, it is important to "consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter[.]" *Id.* And where the litigation involves an unsettled matter of state law, it is more appropriate for California state courts (not federal courts) to provide interpretation. *See generally, Bush v. Palm Beach County Canvassing Bd.* (2000) 531 U.S. 70, 76 ("As a general rule, this Court defers to a state court's interpretation of a state statute."). Here, in light of the California Supreme Court's decision in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, whether Facebook's conduct is an "unfair" business practice under the UCL is subject to an acknowledged split of opinion under California law, which should be resolved by California state courts.

Furthermore, the *Ballejos* plaintiffs undeniably have a right to seek broad public relief through an individual action heard in this Court. *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 960 (concluding that an individual plaintiff may seek injunctive relief under the UCL where "the primary purpose and effect of [which is] to prohibit and enjoin conduct that is injurious to the general public" (quoting *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077)). The *McGill* holding provides an important avenue of relief for plaintiffs, particularly in the context of this litigation. Time

– 1 –

PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO STAY     NO. 18-CIV-03607

is of the essence, given the nature of the alleged violations by Facebook and the privacy interests at stake. The only adequate remedy is to stop the unlawful conduct sooner rather than later.

Accordingly, Plaintiffs request that the Court deny Facebook's motion to stay in its entirety and that this action be permitted to proceed expeditiously toward a bench trial.

## ARGUMENT

### I. Whether Facebook's Conduct Is "Unfair" Under the UCL Is Subject To A Split Of Opinion Under California Law, Which Should Be Resolved By California State Courts

The UCL prohibits business practices that are unlawful *or* fraudulent *or* unfair. Bus. & Prof. Code §17200. Plaintiffs herein have pled violations under all three prongs of the UCL, including allegations that Facebook's conduct is "unfair." Complaint. ¶70. Adjudicating the claims of "unfair" conduct will require analysis of an unsettled area of California law, which is more appropriately addressed by this Court rather than the federal court.

What constitutes an "unfair" business practice has been a vigorously contested – yet unsettled – issue among California appellate courts for nearly 20 years. The debate began following the California Supreme Court's discussion of the UCL in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163. *Cel-Tech* involved allegations of below-cost sales in violation of antitrust laws. In an oft-cited footnote, the Court explained that its discussion was limited to the antitrust context. *Id.* at 187 fn. 12. Subsequently, California appellate courts have sharply disagreed regarding the appropriate definition of "unfair" conduct in consumer cases. "[A] split of authority developed among the Courts of Appeal, which have applied three different tests for unfairness in consumer cases." *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 613 (Fourth Appellate District); *Drum v. San Fernando Valley Bar Assoc.* (2010) 182 Cal.App.4th 247, 256 (Second Appellate District recognizing three-way split in authority); *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 991 (First Appellate District recognizing the split of authority between at least two lines of cases).

With respect to application of California law, and resolution of the split in authority, federal courts are bound by interpretation made by state courts. *See, e.g. Aceves v. Allstate Ins. Co.* (9th Cir. 1995) 68 F.3d 1160, 1164 (finding that district courts are bound by the holdings of the California

– 2 –

1  Supreme Court when applying California law); *Klein v. United States* (9th Cir. 2008) 537 F.3d 1027, 1030 (certifying question to the California Supreme Court where, "although there is some California case law in this area, we conclude that 'no controlling California precedent' squarely addresses the question before us"); *see also Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 626 ("consistent with principles of federalism and comity, requires that we **not automatically accept** the federal court's ruling on this **important state law issue**" (emphasis added)). The federal court should likewise arrive at this conclusion. *See D'Elia v. D'Elia* (1997) 58 Cal.App.4th 415, 422 ("Given the novelty of the problem, the Ninth Circuit observed that the federal district court's decision not to address the matter was **well supported by federal-state comity**" (emphasis added)).

Staying this action would be contrary to these principles and the action should be permitted to proceed.

**II.     Principles of comity favor this Court adjudicating the UCL claims**

"[I]t remains a basic tenet of our system of federalism that 'the nation as a whole is composed of distinct geographical and political entities bound together by a fundamental federal law but nonetheless **independently** responsible for safeguarding the rights of their citizens.'" *See People v. Buza* (2018) 4 Cal.5th 658, 648, quoting *People v. Brisendine* (1975) 13 Cal.3d 528, 551 (emphasis added). In other words, California state courts have a responsibility to adjudicate California legal issues to protect California residents. *See, e.g., Benitez v. Williams* (2013) 219 Cal.App.4th 270, 277 ("plaintiff was a California resident who sought to litigate California state law claims against California residents in California state court. Under these circumstances, the **superior court should have given plaintiff's choice of forum great deference**") (emphasis added); *see also, Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 620 ("As we recognized long ago, construction of a state statute [similar to the UCL] is purely a matter of state law, and an erroneous construction by a federal court does not preclude a state court from later rejecting the federal court's conclusion."); *In re Jose C.* (2009) 45 Cal.4th 534, 545 ("state courts retain jurisdiction under their own state laws to hear cases and impose punishment."); see also, *Buza,* 4 Cal.5th at 702 (Liu, J. dissenting) ("the crucial point is that **state courts** [are] the **ultimate arbiters of state law**" (emphasis added)). For nearly half

1  a century, this has remained undisturbed controlling precedent. *See Kopp*, 11 Cal.4th at 620 ("State
2  courts 'are the principal expositors of state law'"), quoting *Moore v. Sims* (1979) 442 U.S. 415, 429.
3        Facebook has articulated no exceptional circumstances that would warrant a stay given the
4  inherent power possessed by this Court to adjudicate this issue. *In re Estevez* (2008) 165 Cal.App.4th
5  1445, 1460 ("there are limits on a federal court's power to override state constitutional and statutory
6  provisions; principles of comity and state sovereignty require that such action be undertaken by a
7  court **only in exceptional circumstances**"), citing *In re Thompson* (10th Cir. 1990) 894 F.2d 1227,
8  1232–1233 (emphasis added). On the other hand, there are extremely strong reasons why this Court
9  needs to safeguard Plaintiffs' rights—this is a case brought by California residents, asserting violation
10 of a California statute, before a California court, with California **constitutional** implications. *Benitez*,
11 219 Cal.App.4th at 277 ("plaintiff was a California resident who sought to litigate California state
12 law claims against California residents in California state court. Under these circumstances, the
13 superior court should have given plaintiff's choice of forum great deference"). Comity is best
14 achieved when the state court adjudicates this issue.

**III.**    **Facebook cannot dispute that Article III roadblocks to injunctive relief, present in the federal MDL, are absent in the *Ballejos* case**

17       The Article III standing requirement to litigate a cause in federal court is distinct from that of
18 UCL standing. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* (S.D. Cal.
19 2012) 903 F.Supp.2d 942, 965 ("Although the requirements of federal standing under Article III and
20 the requirements of standing under California's consumer protection statutes overlap, there are
21 important differences"(citation omitted)). Notably, "under Article III a plaintiff must allege: (1) an
22 injury in fact; (2) causation; and (3) likelihood that the injury will be redressed by a favorable
23 decision. Conversely, under the UCL and FAL, Proposition 64 incorporates into Business and
24 Professions Code section 17204 only the first element (*i.e.*, an "injury in fact")." *Id*. (citation omitted).
25       Indeed, recognizing this potential defense, Facebook's opening salvo in its motion to dismiss
26 the federal case is that the federal court "Plaintiffs Lack Article III Standing." *See In Re: Facebook,*
27 *Inc. Consumer Privacy User Profile Litigation* (N.D. Cal. Nov. 2, 2018) No. 18-md-02843 at Dkt
28 No. 184-1, Section V. Argument, Subsection A. Thus, Article III standing requirements represent a

– 4 –

**separate** roadblock to achieving relief for California residents – an impediment indisputably absent here in the state court action. *See Campion v. Old Republic Home Prot. Co.* (S.D. Cal. 2012) 861 F. Supp. 2d 1139, 1149 ("Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect to Plaintiff's claim for injunctive relief, is not satisfied.").

This is yet another reason why this case should go forward and Facebook's motion to stay denied.

### IV. Additional cases referenced at the hearing further counsel against a stay

At the November 16, 2018 hearing, several federal court cases regarding comity and federal court abstention from presiding over claims were briefly discussed. Each of those cases either weigh in favor of allowing this action to proceed or involved circumstances not present herein.

In *Brown v. Moll* No. C 09-05881 SI, 2010 U.S. Dist. LEXIS 73875 (N.D. Cal. July 21, 2010), Judge Illston addressed principles of abstention under the *Colorado River* doctrine, arising from *Colorado River Water Conservation District v. United States* (1976) 424 U.S. 800. *Colorado River* abstention is considered where there is parallel litigation in state and federal courts to determine parties' rights regarding the same questions of law. Judge Illston recognized that "[o]nly exceptional circumstances justify such a stay, and whether these circumstances exist is determined by a complex of factors." *Id.* at *4, quoting *Intel Corp. v. Advanced Micro Devices* (9th Cir. 1993) 12 F.3d 908, 912. Such factors include "whether federal law or state law provides the rule of decision on the merits." *Id.* at *5. Judge Illston denied the motion to stay because the defendants failed to satisfy their burden of demonstrating that "exceptional circumstances" warranted staying the action. *Id.* at *8-9. Here, too, Facebook has not articulated any "exceptional circumstances" and there is no question that California state law governs analysis of Plaintiffs' UCL claim.

In *Fireman's Fund Ins. Co. v. Garamendi* (N.D. Cal. April 13, 1992) 790 F. Supp. 938, Judge Legge analyzed a request to stay under multiple abstention doctrines, including principles arising from *Railroad Comm'n of Texas v. Pullman* (1941) 312 U.S. 496 ("*Pullman*"). Under *Pullman*, "federal courts should abstain from deciding constitutional questions that 'touch a sensitive area of social policy' if the resolution of difficult and unsettled questions of state law could moot the federal constitutional claim." *Id.* at 959, quoting *Pullman*, 312 U.S. at 498. Judge Legge noted, "[b]y giving

– 5 –

state courts the opportunity to interpret state law firm, the federal court can avoid both 'needless friction with state policies' and unnecessary constitutional adjudications." *Id.,* citing *Pullman*, 312 U.S. at 498, 500. Judge Legge ultimately determined that abstention under the *Pullman* doctrine was unwarranted because there was "no clear issue of state law" (*id.* at 963), unlike the instant matter which involves only state law issues.

In *Bush v. Palm Beach County Canvassing Bd.* (2000) 531 U.S. 70, the U.S. Supreme Court began its discussion by recognizing that, "[a]s a general rule, this Court defers to a state court's interpretation of a state statute." *Id.* at *75. The *Bush* action involved tension between Florida state law and federal constitutional law applicable to Presidential elections. Similar concerns do not arise in the instant matter, as it is undisputed that interpretation of the UCL is a matter of California state law.

The opinion in *Abcarian v. Shelley* (9th Cir. Oct. 2, 2003) 77 Fed. Appx. 410 (unpublished opinion) also involved election issues, specifically a gubernatorial recall ballot. The California Supreme Court already had addressed the pertinent issue, which led the district court to deny the plaintiff's request for a temporary restraining order. The Ninth Circuit found that the "district court appropriately deferred to the California Supreme Court's interpretation of the California constitution." *Id.* at 411. The *Abcarian* opinion is instructive in the instant matter because it reinforces the principle that California state courts are the appropriate arbiters of California law, which should be respected by federal courts.

**V.      Staying this action will only increase the irreparable harm to the *Ballejos* plaintiffs and California residents**

Time is of the essence and the UCL claims in this case are capable of resolution much more quickly than the UCL claim asserted in the federal MDL action because there is no need for lengthy class certification proceedings, no request for a jury trial, and no distraction due to concurrent litigation of other claims brought under various state and federal laws. In an action for monetary damages, delays in providing relief can be addressed by requiring a defendant to pay interest on the amount ultimately awarded. Here, in an action seeking only equitable relief, there is no comparable mechanism for making Plaintiffs whole for any unnecessarily prolonged litigation. Thus, the

– 6 –

1  protracted MDL action is incapable of providing the same relief that this Court can provide by having
2  the action go to trial within the next year.
3    Indeed, every day this case is stalled is another day that a very real risk of harm is inflicted
4  on *Ballejos* Plaintiffs and other California residents. When Plaintiffs filed their opposition to
5  Facebook's motion to stay on August 27, 2018, they noted multiple developments post-dating the
6  Complaint's filing which demonstrated Facebook's egregious and continuing disregard for the
7  safety of users' privacy. *See* Opp. to Mot. to Stay at p. 3-4. Since that date, the barrage of troubling
8  news continues, including a new September 28, 2018 data breach that "was the largest in the
9  company's 14-year history" and exposed accounts of up to 50 million users. *See, e.g.,* Frenkel &
10 Isaac, *Facebook Security Breach Exposes Accounts of 50 Million Users*, NEW YORK TIMES,
11 available at: https://www.nytimes.com/2018/09/28/technology/facebook-hack-data-breach.html.)
12 Then, on November 22, 2018, indicative of Facebook's complete disregard for consequences and
13 further illuminating how Facebook wishes to address critics, "Facebook admitted it used [a] PR
14 firm as part of an effort to discredit people who raised questions whether it was good for society."
15 *See* Griffin, *Facebook Admits Using Controversial PR Firm To Attack George Soros After Latest*
16 *Scandal*, INDEPENDENT, available at: https://www.independent.co.uk/life-style/gadgets-and-
17 tech/news/facebook-mark-zuckerberg-definers-george-soros-scandal-latest-a8646366.html

18   For the *Ballejos* plaintiffs and other California residents to receive meaningful relief, it is
19 important Facebook's unlawful conduct be stopped as soon as possible. Waiting for the UCL claim
20 to be litigated and brought to final resolution in the MDL cannot provide the same expedient relief
21 that can be obtained in more streamlined proceedings in the Court.

## CONCLUSION

23   It has been five months since Plaintiffs filed their Complaint and time for California residents
24 to obtain the relief to which they are entitled. Thus, this Court should exercise its "independent
25 responsib[ility] for safeguarding the rights of their citizens." *See Buza*, 4 Cal.5th at 648. For these
26 and all the foregoing reasons, Plaintiffs respectfully request that this Court deny Facebook's motion
27 to stay.
28                Respectfully submitted,

AUDET & PARTNERS, LLP

December 5, 2018                    By: _____
                                         Gwendolyn R. Giblin
                                         Ling Y. Kuang
                                         William M. Audet

                                         *Counsel for Plaintiffs Leah Ballejos,
                                         Audrey Ellis, and Tameika Martin*

# PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is 711 Van Ness Avenue, Suite 500, San Francisco, California 94102-3275, hdarling@audetlaw.com, and on December 6, 2018, I served the following specifed document(s):

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PURSUANT TO THE COURT'S NOV. 16, 2018 ORDER**

To the person(s) set forth below:

| | |
|---|---|
| Orin Snyder *(pro hac vice forthcoming)*<br>osnyder@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: 212.351.4000<br>Facsimile: 212.351.4035<br><br>*Attorney for Defendant Facebook, Inc.* | Joshua S. Lipshutz (SBN 242557)<br>jlipshutz@gibsondunn.com<br>Kristin A. Linsley (SBN 154148)<br>klinsley@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105-0921<br>Telephone: 415.393.8200<br><br>*Attorneys for Defendant Facebook, Inc.* |
| Christopher B. Leach<br>cleach@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-5306<br>Telephone: 202.955.8228<br><br>*Attorney for Defendant Facebook, Inc.* | |

And the person(s) set forth above were served by the following means of service:

☒ **BY ELECTRONIC SERVICE.** Pursuant to an agreement between all parties that provides for the electronic service and distribution of documents under CCP § 1010.6, I caused the documents to be sent to the parties and their respective counsel via the electronic addresses associated with all counsel that have appeared in this matter to date.

☒ **BY UNITED STATES MAIL**: I placed a true copy in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 5, 2018     Signature: _____

Harold Darling