Pages 1 - 51

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE


| | | |
|---|---|---|
| IN RE FACEBOOK, INC. CONSUMER | ) | |
| PRIVACY USER PROFILE LITIGATION. | ) | NO. 3:18-md-02843-VC |
| _____ | ) | |
| | ) | |
| PEOPLE OF THE STATE OF ILLINOIS | ) | |
| ex rel. KIMBERLY M. FOXX, | ) | |
| State's Attorney of Cook County, | ) | |
| Illinois, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 3:18-cv-06486-VC |
| | ) | |
| FACEBOOK, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | San Francisco, California |
| _____ | ) | Thursday, December 6, 2018 |


### TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF PROCEEDINGS


FTR 10:29 a.m. - 11:31 a.m. =  62 minutes


**APPEARANCES**:

For Plaintiff People of the State of Illinois ex rel. Kimberly
M. Foxx:

                    Edelson, PC
                    350 North La Salle, 14th floor
                    Chicago, Illinois  60654
              BY:   **J. ELI WADE-SCOTT, ESQ.**


(Appearances continued on following page.)

Transcribed by:       Leo T. Mankiewicz, Transcriber
                      leomank@gmail.com
                      (415) 722-7045

**APPEARANCES**:   (cont.)


For Plaintiff People of the State of Illinois ex rel. Kimberly
M. Foxx:

                          Edelson, PC
                          123 Townsend Street
                          San Francisco, California  94107
                 BY:  **RAFEY S. BALABANIAN, ESQ.**
                      **TODD M. LOGAN, ESQ.**


For Plaintiffs:           Bleichmar, Fonti & Auld, LLP
                          555 12th Street, Suite 1600
                          Oakland, California  94607
                 BY:  **LESLEY ELIZABETH WEAVER, ESQ.**

                          Keller Rohrback, LLP
                          1201 Third Avenue, Suite 3200
                          Seattle, Washington  98101-3052
                 BY:  **DEREK WILLIAM LOESER, ESQ.**


For Defendant Facebook, Inc.:

                          Gibson, Dunn & Crutcher
                          555 Mission Street, Suite 3000
                          San Francisco, California  94105
                 BY:  **JOSHUA SETH LIPSHUTZ, ESQ.**

                          Gibson, Dunn & Crutcher LLP
                          333 S. Grand Ave.
                          Los Angeles, California 90071
                 BY:  **GREGORY SHERWOOD BOK, ESQ.**

<u>Thursday, December 6, 2018</u>

10:29 a.m.

P R O C E E D I N G S

**THE CLERK:**  Calling case number 18-md-2843, In re Facebook, Inc. Consumer Privacy User Profile Litigation, and case number 18-cv-6486, People of the State of Illinois ex rel. Kimberly M. Foxx versus Facebook, Inc., et al.

Counsel, please step forward and state your appearances for the record.

**MR. WADE-SCOTT:**  Good morning.  J. Eli Wade-Scott on behalf of the People of the State of Illinois.

**THE COURT:**  Good morning.

**MR. BALABANIAN:**  Good morning, your Honor.  Rafey Balabanian, also on behalf of the People of the State of Illinois.

**MR. LOGAN:**  Good morning, your Honor.  Todd Logan, also on behalf of the People of the State of Illinois.

**THE COURT:**  Good morning.

**MR. LIPSHUTZ:**  Good morning, your Honor.  Joshua Lipshutz on behalf of defendant Facebook.

**THE COURT:**  Good morning.

**MR. BOK:**  Good morning, your Honor.  Greg Bock on behalf of defendant Facebook.

**THE COURT:**  All right.

**MS. WEAVER:**  Good morning, your Honor.  Lesley

Weaver on behalf of the PFC.

    **THE COURT:**  Good morning.

    **MR. LOESER:**  Good morning, your Honor.  Derek Loeser on behalf of the MDL plaintiffs.

    **THE COURT:**  Good morning.  Okay.  I'll guess I'll start with -- is it Mr. Wade-Scott?

    **MR. WADE-SCOTT:**  Yes, your Honor.

    **THE COURT:**  I'll start with you.  So when I first saw this motion, my gut reaction to it was, oh, this is probably going to be an easy motion.  You know, the idea that you could have a federal multi-district litigation proceeding in San Francisco and then, you know, the District Attorney in Chicago files a lawsuit in the name of the State against the same defendant that's in the federal MDL, and files that lawsuit in state court, asserting violations of state law, the idea that that case could be dragged into federal court and then sent over to the federal MDL and languish in the federal MDL for however long, and it seems contrary to sort of our general understanding of federalism and, you know, federal-state comity, not comedy with a D, but comity with a T.

    **MR. WADE-SCOTT:**  That's right.

    **THE COURT:**  But then I started reading the cases and I read this case from 1901 from the Supreme Court, whatever year it was, I can't remember --

    **MR. WADE-SCOTT:**  It was 1901.

1          **THE COURT:**  *Hickman*, is that what it's called?

2          **MR. WADE-SCOTT:**  *Missouri Railway v. Hickman*.

3          **THE COURT:**  -- *v. Hickman*, and the Ninth Circuit

4    cases and all that, and I guess there is at least a -- those

5    cases are messy.  I mean, we can all agree that those cases are

6    messy, right, and that the courts don't use -- not just in

7    *Hickman* -- certainly in *Hickman*, but in other cases, the courts

8    don't use terribly precise language and, you know, there may be

9    some afterthoughts in those opinions that were not meant to

10   carry the significance that Facebook is now arguing that they

11   carry, but I think, at a minimum, it's fair to say that the

12   cases are messy, and there is at least a colorable argument,

13   I suppose, that *Hickman* stands for the proposition that when --

14   or could be read to stand for the proposition -- could

15   reasonably be read to stand for the proposition that when a

16   government actor is bringing an action on behalf of the State,

17   but the government actor is not the lead law enforcement

18   officer of the State -- the Attorney General, I think it would

19   be in most instances, right? -- the inquiry into whether the

20   State is a real party in interest is a little bit different,

21   and the test is somewhat more demanding.

22          So in a case where -- in the *Nevada* case, the Ninth

23   Circuit *Nevada* case about the mortgage fraud, you know, you

24   have -- it actually is the State of -- it was the Nevada

25   Attorney General who brought that case, right?

1          **MR. WADE-SCOTT:**  Yes, your Honor.

2          **THE COURT:**  So the Nevada Attorney General brought

3    that action on behalf of the State, seeking statewide relief on

4    behalf of the State's citizens, and you have sort of one test,

5    or one type of inquiry you engage in to make sure that the

6    State is, in fact, the real party in interest in a case like

7    that, and maybe you would say that there is more of a thumb on

8    the scales in favor of concluding that the State is the real

9    party in interest in that case because the Attorney General has

10   brought the lawsuit.

11          So it's still possible that the State is not the

12   real party in interest, right, if the Attorney General brings

13   an action on behalf of one individual and seeks to recover, on

14   behalf of that -- let's say, a wage and hour lawsuit or

15   something like that, right? -- and seeks to recover, you know,

16   back pay on behalf of that one individual, that even though the

17   Attorney General has brought the lawsuit, that still is not --

18   you know, the State is not the real party in interest in a

19   situation like that, but the test for whether the State is the

20   real party in interest isn't so stringent.

21          In contrast, where you have some sort of subsidiary

22   state entity, like a Railroad Commission or the Coastal

23   Commission or, you know, the Port Commission, or the State's

24   Attorney, or the City Attorney, that it's a different inquiry,

25   and it really -- I don't know exactly what the test would be.

1          We could talk a little bit about what the test ought

2    to be.  Maybe it's as simple as that one passage that they keep

3    quoting from the *Hickman* case from 1901, or maybe that's

4    over-simplifying it too much and that's placing more weight on

5    those words than they can bear, as the lawyers like to say, but

6    the main point, the larger point, is perhaps that is a

7    reasonable way to read the cases, that the test is different

8    depending on a whether it's a subsidiary state entity or a

9    subsidiary government entity bringing the action in the name of

10   the State as opposed to the State -- you know, the primary law

11   enforcement officer of the State.

12          So I have guess that's the sort of big picture

13   question I'd like to start with, with you.  Do you agree that

14   it's a different test, or have I read too much into this messy

15   case law?  Is it too much of an effort to bring sanity to this

16   sort of chaotic set of cases that have been handed down over

17   the last century plus?

18          **MR. WADE-SCOTT:**  Your Honor, unfortunately, the

19   cases are -- I do agree that they are a little bit messy.  I do

20   not think that *Hickman* stands for the proposition that there's

21   a different test when the Attorney General is bringing the

22   case.  What *Hickman* stands for is, we have to look at whether

23   the State is actually interested in case.  That's pretty easy

24   when the Attorney General, as in the *Nevada* case, the Attorney

25   General is present, pursuant to statutory authority, enforcing

1    some sovereign interest.

2          The better way to reconcile the cases is to, for

3    instance, take a look at *Nevada*.  There, the court does a

4    detailed analysis of what the State's interests are, and that's

5    the analysis that *Hickman* demands.  *Hickman* says, we have to

6    look at what the interests of the plaintiff here are, and then

7    the Railroad Commission.  It's not a sovereign interest of the

8    State to lower the rates for passage over this bridge.  That's

9    the Railroad Commission's interest.

10          But then on the other side of the spectrum is the

11   *Nevada* case, where the Ninth Circuit is very clear that

12   enforcing a state's consumer protection laws, protecting the

13   state's citizens from being defrauded, is a sovereign interest

14   that substantiates the State's interest in the case.

15          And also in the *Nevada* case, they look at what the

16   remedies are, not lowering the railroad rates, but saying the

17   State is looking for civil penalties and injunctive relief.

18   These are things that are consistent with the sovereign

19   interest of the State, going back a long way.

20          **THE COURT:**  So in the *Hickman* -- so you would say

21   that -- you would say that the *Hickman* case would have come out

22   the same if the Attorney General had brought the case, and in

23   fact, I think it may be -- I can't tell from *Hickman*, but

24   I think the Attorney General may have brought the case.

25          **MR. WADE-SCOTT:**  We have tried to figure that out,

1     your Honor.

2                    **THE COURT:**  Okay.

3                     **MR. WADE-SCOTT:**  It's not clear.

4                    **THE COURT:**  And I guess -- I'm guessing the briefs

5     from that 1901 case are not on Westlaw.

6                     **MR. WADE-SCOTT:**  (Laughs.)  We thought about

7     stopping by, you know, the Supreme Court or the Library of

8     Congress --

9                    **THE COURT:**  I'm not a hundred percent sure they

10    would be there, but let's assume for sake of argument that the

11    Attorney General didn't bring the case.  Even though it seems

12    like, from the statutory scheme that they were describing, that

13    it may have had to have been the Attorney General, but assuming

14    it wasn't the Attorney General, you would say it doesn't

15    matter -- if the Attorney General had brought the case, it

16    would have been the same outcome because it's based on the

17    Supreme Court's analysis of whether -- of the State, as a

18    state, its interest in the outcome of the case, its interest in

19    the lawsuit, and the Supreme Court in that case conducted an

20    analysis and concluded that it wasn't really a matter of

21    statewide interest.

22                    Maybe you could argue that the Supreme Court was

23    wrong in its analysis, but that's the analysis that you have to

24    conduct, and then you compare that to the *Nevada* case, and you

25    look at this case, and this case is more like the *Nevada* case

1    than the *Hickman* case.

2                **MR. WADE-SCOTT:**  Yes, your Honor, that's what we're

3    saying.  As an example, take *Lucent* as well.  If the Attorney

4    General had brought the *Lucent* case, I expect the outcome would

5    have been the same.  The problem is that you're seeking relief

6    there for one person.

7                **THE COURT:**  Which, the *Lucent* case was the one

8    that --

9                **MR. WADE-SCOTT:**  That's the --

10               **THE COURT:**  -- the DFEH brought --

11               **MR. WADE-SCOTT:**  Correct, your Honor.

12               **THE COURT:**  -- on behalf of an individual employee

13   who had been discriminated against?

14               **MR. WADE-SCOTT:**  Yes, and sought reinstatement and

15   back pay and that kind of thing.

16               **THE COURT:**  Right, right, right.

17               **MR. WADE-SCOTT:**  So what the court directs, in our

18   view, is a real analysis of what the interests are, but the

19   Ninth Circuit has set out what the interests are and they're

20   completely consistent with what the State's Attorney is seeking

21   on behalf of the State here.

22               A quick note about *Nevada*.  I think that it's

23   helpful to look at what the *Nevada* court says about the remedy,

24   the civil penalties and injunctive relief issue, because it's

25   not relief that is available to any private party.  The problem

with *Hickman*, I think, is that the Railway Commission is the one that's trying to get the rates for the passage over Boonville Bridge lowered, and that that goes to the passengers.

The remedy here that the State's Attorney seeks is one that is only available pursuant to this statutory authority granted by the State; that the County, for instance, can't bring this case, nor could the State's Attorney in her own name bring this case.  This is a remedy that's only available to the State.  We think, under *Nevada*, it's pretty straightforward.

THE COURT:  What is -- I mean, I kind of know how this works in California, but in Illinois, where does the money go?

MR. WADE-SCOTT:  Your Honor, it depends.  We think that the court who would award the money would have some discretion to disburse it between the State treasury or the County treasury.  It's actually not entirely clear.

THE COURT:  Huh.

MR. WADE-SCOTT:  Yeah.

THE COURT:  I mean, has there ever been a case in Illinois where the State's Attorney has brought an action pursuant to this statutory scheme in the name of the State, and the money has gone to the State treasury?

MR. WADE-SCOTT:  No, there's no cases that we could find going any particular direction, but our --

THE COURT:  I mean, I don't know how much it

1  matters.  I mean --

2             MR. WADE-SCOTT:  Well, that's our view.

3             THE COURT:  -- I was just curious.  I mean, the

4  point I assume you would make is that -- emphasize is that this

5  is money that is not going to some subset of private

6  individuals, or even the entire set of, you know, private

7  individuals in the State of Illinois or the people who use

8  Facebook in Illinois or whatever.  It's money that's going to

9  the State.

10             MR. WADE-SCOTT:  That's correct, your Honor.

11             THE COURT:  To the government.  It's money that's

12  going to either the State treasury or the County treasury.

13             Now, is there any limit in Illinois to what -- if

14  the money goes to the County, is there any limit to what the

15  money can be used for, as there is in California?

16             MR. WADE-SCOTT:  No, your Honor.

17             THE COURT:  Because in California, I think you --

18  you know, if the DA brings one of these actions and recovers

19  civil penalties, that money -- I don't remember the precise

20  contours of the restriction, but it has to be used -- that

21  money has to be used to -- in connection with further

22  enforcement of the consumer protection laws.

23             MR. WADE-SCOTT:  There's no statutory proscription

24  within the ICFA that says that.  We think -- when you're

25  looking at what the remedy is, and your Honor, you already got

1    at this point a little bit, what we're looking at is, this is a

2    law enforcement case, essentially.  The point is that the

3    money -- the point is where the money comes from, in our view,

4    though, you know, if that's a little facile, but the point is

5    that it's penalizing someone.  That's what the point of the

6    civil penalty is.

7           So the fact that Facebook -- this money is going to

8    go away from Facebook and go toward, you know, government

9    interests, and that we're seeking injunctive relief to protect

10   a broad swath of consumers, it's just -- *Nevada* is all -- on

11   all fours on the sovereign interest issue, and if you look at

12   the district courts that have followed it under the UCL cases,

13   we cite a host of them, and we think that *People v. Born*

14   (phonetic), *Dringleheim* (phonetic), and those are --

15          **THE COURT:**  Yeah, but those cases -- I think the

16   problem with those cases is that they don't meaningfully engage

17   on the question whether the test should be different, if it's a

18   subsidiary government entity.

19          I think, for the most part -- correct me if I'm

20   wrong, point me -- if you have cases that have meaningfully

21   engaged on that particular question, let me know, but I think

22   for the most part, they kind of assume without analysis that

23   because the case has been brought by the Orange County District

24   Attorney on behalf of the people, pursuant to this statutory

25   scheme, that it is the State, and that the same type of -- you

1  would engage in the same type of analysis that the court

2  engaged in in the -- the Ninth Circuit engaged in in the *Nevada*

3  case without stopping to ask, well, does it need to be a

4  different test because it's a subsidiary governmental entity.

5      **MR. WADE-SCOTT:** There's -- no, your Honor, but we

6  would advocate that if you look at the cases, I mean, *Hickman*

7  and forward, there's not really any evidence that this is a

8  two-step analysis. The question is, what are the State's

9  interests in the case?

10      If you've got a Railway Commission or the DFEH, that

11  prompts the question of, what is the State's interest in this

12  case? But it doesn't mean that, for instance, an entity has to

13  be the alter ego of the State and then you look at whether the

14  State's interests are present. It's just one analysis.

15  There's just no evidence for the "two" step, basically, in the

16  cases.

17      *Lucent*, the DFEH case, is actually kind of

18  interesting on that point. The court is looking at the relief

19  that's going to be sought, and clearly finds that most of it is

20  going to go to this individual employee, but the court does

21  acknowledge that the DFEH seeking injunctive relief, that is

22  something that the State is interested in, but they discard it

23  as tangential. But the fact that the DFEH is seeking the

24  injunctive relief, there's no "two" step there. The Court is

25  just asking, is this injunctive relief sought by this entity,

1    does that benefit a sovereign interest?  And we say, follow

2    that same analysis here.  You're looking for a sovereign

3    interest.

4                **THE COURT:**  Okay.  Couple other questions about

5    Illinois' statutory scheme.

6                It's clear, I gather, that, as in California, the DA

7    or the subsidiary government official in Illinois is empowered

8    to bring -- seek statewide relief under this statute.  Is that

9    sort of established in Illinois?

10               Because in California, there is a California Court

11   of Appeal opinion that was decided recently that says no, the

12   subsidiary government official only has the authority to seek

13   relief within the boundaries of that official's jurisdiction.

14               I think, as a matter of statutory construction, that

15   California Court of Appeal decision is almost certainly wrong,

16   and I think that the statute makes pretty clear that a local

17   government official authorized to bring actions under this

18   statute may seek statewide relief, and if the Attorney General

19   doesn't like it, the Attorney General can intervene and take

20   over the case and move the case in a different direction.

21               But how does it -- is that clearly established in

22   Illinois, that, you know, the State's Attorney in Cook County

23   can seek statewide relief in the name of the State under this

24   statute?

25               **MR. WADE-SCOTT:**  I would not say that it's clearly

1    established.  There is no appellate authority deciding it, nor,

2    as far as we know, no Supreme Court authority, of course.

3         There is no barrier within the State Attorney's

4    constitutional authority to represent the State to do that, and

5    the wording of the statute itself is -- we think cuts probably

6    the direction toward the State's Attorney being able to

7    represent the entire interests of the State.

8         However -- and we have some of the same features.

9    There's good reason to think that if it came down to it, the

10   Attorney General could get involved in a case like this brought

11   by the State's Attorney.

12        **THE COURT:**  That was the next question I was going

13   to ask.  So this case that you filed is a case that seeks

14   statewide relief, right?

15         **MR. WADE-SCOTT:**  We -- it certainly seeks relief

16   for the benefit of the entire state.  The injunctive relief

17   would run to the entire state.

18        **THE COURT:**  Right.

19         **MR. WADE-SCOTT:**  And we think the State's Attorney

20   has the authority to seek relief for the entire state at the

21   end of the day, yes.

22        **THE COURT:**  And you're saying that's not clearly

23   established in appellate case law, but that's what this

24   court -- this case seeks to do, and you believe that you have

25   the authority to do that.

1    Now, what about this issue of intervention?  Like,

2    could the -- let's say this case goes back to state court in

3    Illinois.  Could the Attorney General come in and kind of take

4    over for you in the case, and direct -- and move the case into

5    a different direction, in the way that I believe the California

6    Attorney General can do if a local or government official

7    brings a similar case?

8         **MR. WADE-SCOTT:**  That's not an issue that's clearly

9    resolved, but we think that as a matter of the Attorney

10   General's constitutional authority and the way this has been

11   looked at, *People ex rel. Devine* is a case that's cited pretty

12   frequently in the briefs that we think says -- that says the

13   most about what the Attorney General is able to do versus the

14   State's Attorney, and in that case, it cites some other Supreme

15   Court authority that certainly suggests that the Attorney

16   General could intervene in this case.

17        I don't know that the Attorney --

18        **THE COURT:**  Intervene and take it over, or just

19   intervene?

20        **MR. WADE-SCOTT:**  I don't -- there's --

21        **THE COURT:**  I mean, there's -- my understanding, and

22   I'm not a hundred percent sure this is right, but I believe

23   that in California, the Attorney General can not only

24   intervene, but can intervene and take over the case and say,

25   well, you know, sorry, on behalf of the People of California,

we are no longer seeking X relief, we're only seeking Y relief,

or whatever.

**MR. WADE-SCOTT:**  That particular question is not

resolved in Illinois.  Where the legislature grants concurrent

authority to the State's Attorneys and the Attorney General,

there is, at least in the criminal context, a case suggesting

that the Attorney General can't completely set the State's

Attorney aside.

The reason we don't have good authority on this is

because --

**THE COURT:**  Yeah, well, the criminal context is,

I assume, a little bit different.

**MR. WADE-SCOTT:**  Um-hum, but I can't stand here

today and tell your Honor exactly what would happen.  The one

very clear thing about what the Attorney General's authority --

and the reason I mention that *Devine* case is, the Attorney

General has the authority to settle the case out from a state's

attorney.  There's no question about that.

**THE COURT:**  Okay.

**MR. WADE-SCOTT:**  But we don't think -- just to very

briefly bring it back to what the analysis is supposed to be,

the State has set up a consumer protection scheme that can be

enforced both by its Attorney General and its state's

attorneys, and under the analysis as we would advocate it

exists following *Nevada*, the fact that the jurisdiction of the

1    State's agent is different does not answer the question of

2    whether there's a sovereign interest in the case, because --

3            **THE COURT:**  Could the State deputize by statute a

4    private citizen to bring an action in the name of the People of

5    Illinois against Facebook for violating the privacy rights

6    of -- what if the statute said, any citizen of -- any resident

7    of the State of Illinois could bring an action on behalf of the

8    people for violations much privacy rights, or whatever, and

9    some citizen brought a lawsuit in state court in the name of

10   the People against Facebook, and it got removed to federal

11   court, sent over to San Francisco.  Would you be taking the

12   same position, that that that -- that the State is the real party in

13   interest, even though it's just some random citizen who brought

14   the lawsuit?

15           **MR. WADE-SCOTT:**  The Ninth Circuit --

16           **THE COURT:**  That what matters is that the State

17   passed a statute authorizing that individual to represent the

18   interests of the State?

19           **MR. WADE-SCOTT:**  It depends on what remedies the

20   State authorized the individual to seek.  So if what the State

21   authorized the individual to seek is civil penalties and

22   injunctive relief, then the Ninth Circuit analysis would say,

23   look at that, look at what the sovereign interest in the case

24   is, and that's not....  There's a case, actually, that's cited

25   in the briefs called *Scachitti*.  It's an Illinois Supreme Court

1    case about relaters, and whether or not the State is the real

2    party in interest, and in a case like that -- and the Illinois

3    Supreme Court certainly thinks that it still is, because the

4    issue is not the individual that brings it, but what the

5    State's interests actually are.

6           But to the extent that those are edge cases, and I'm

7    sure there's an argument to be made about it, this is not.  The

8    state's attorneys are long-standing agents of the State in both

9    criminal and civil contexts, and can carry out the statutory

10   scheme as the State has decided.

11          I acknowledge there's an independent analysis that

12   this Court has to do under federal law, but that has to take

13   into account what the sovereign interests of the State are, as

14   the Ninth Circuit has laid it out, and that's -- it's just very

15   straightforward.

16          I'll say one last thing, which is, as your Honor

17   started this hearing by saying, one would think that a case

18   like this brought by an Illinois regulator, removed out of

19   state court and then sent over to a federal MDL, within

20   concerns of state sovereignty and how subject matter

21   jurisdiction works, this is a case that should go back.  The

22   default here is, there's no subject matter jurisdiction.

23          So to the extent this is messy, it's Facebook's

24   burden, and we think that just looking at the way Illinois

25   handles this and the way the Ninth Circuit does, this is a case

1　that does not belong here.

2　　　　　**THE COURT:**  Doubts need to be resolved in favor of

3　remand.

4　　　　　 **MR. WADE-SCOTT:**  Very much so, your Honor.

5　　　　　**THE COURT:**  Yeah.  What about the question I asked

6　you yesterday?  If -- let's say this goes back to state court

7　and let's say you pursue your action in state court against

8　Facebook and you lose on the merits, okay?  Would the Illinois

9　Attorney General then be allowed to bring the same lawsuit in

10　Illinois state court against Facebook and Cambridge Analytica?

11　　　　　 **MR. WADE-SCOTT:**  I have little doubt that Facebook

12　would argue yes.  I'm interested to hear.  In our view, that is

13　not resolved by the existing law.  There's certainly no

14　authority on point.

15　　　　　**THE COURT:**  Well, what do you think that -- well,

16　what's the analysis?  I mean, what would the -- what do you

17　think the answer is?  It's not been resolved by the cases.

18　What's the answer, and why?

19　　　　　 **MR. WADE-SCOTT:**  Your Honor, standing here today,

20　I can't be certain one way or the other.

21　　　　　**THE COURT:**  Well, that's why I didn't ask you the

22　question today.  That's why I asked you the question

23　yesterday --

24　　　　　 **MR. WADE-SCOTT:**  Yes, Judge.

25　　　　　**THE COURT:**  -- because I thought it was a

```
1    complicated question that you needed some time to think about

2    and research, maybe consult with people.  So what's the answer?

3              MR. WADE-SCOTT:  What you'd have to look at is

4    whether or not the arguments that we've made here, that the

5    State's interest are present in the case, means that the

6    State's Attorney is the very same party as the Attorney

7    General, or whether they're in privity.

8              So I think that Facebook can make arguments that a

9    loss on the merits in this case would preclude every other

10   State's agent from representing the State's interests, but

11   I can't say for certain that that would be true.

12             THE COURT:  What, and there's no case law in

13   Illinois on that question?

14             MR. WADE-SCOTT:  Not that I've been able to dig up,

15   your Honor.

16             THE COURT:  What about, I mean, there are other

17   states -- I mean, I know I just asked you the question

18   yesterday, but there are other states that have similar

19   schemes.  California is one, and there are other states.

20   I mean, has this question been addressed in other states, as

21   far as you're aware?

22             MR. WADE-SCOTT:  Not that I've been able to

23   determine since yesterday, your Honor.

24             THE COURT:  Uh-huh.

25             MR. WADE-SCOTT:  I was trying to figure out
```

Illinois, but I'm --

        **THE COURT:**  You know, I think, as a practical matter, you know, if you go -- if you go back to state court and you get trounced on the merits, the Illinois Attorney General is not likely to bring a case --

        **MR. WADE-SCOTT:**  That's why we -- yes.

        **THE COURT:**  -- but if the Attorney General could bring a case, were permitted to bring another case against Facebook, doesn't that seem relevant to the question of whether the State is the real party in interest in this case?

        **MR. WADE-SCOTT:**  Actually, I don't think it's relevant, following the interest analysis as we see it.

        **THE COURT:**  If the litigation doesn't bind the State -- I understand that none of the messy cases that have undertaken this analysis have engaged on the question of whether the action by the subsidiary government official would be binding on the State as a whole, so as to preclude the superior government official from bringing a later lawsuit, but it seems -- but my question to you is, doesn't that seem relevant to the question whether the State is the real party in interest in a case like this?

        I mean, whether the State would actually be bound by the case, isn't that relevant to whether the State is the real party in interest?

        **MR. WADE-SCOTT:**  Whether all of the State's

1    interests are present in an individual case does not answer the

2    question of whether the State's interests are present in a

3    case -- in this case.  So I don't think that it actually

4    resolves the question.

5         **THE COURT:**  So you would say -- okay, let's assume

6    that the State -- that the State is not bound by the outcome of

7    this lawsuit that you've brought, and the Attorney General

8    could, in the future, bring a lawsuit to -- even if you lost on

9    the merits.  How, in that case, could the State still be the

10   real party in interest in this case?

11        I mean, if the DFEH brings a lawsuit on behalf of an

12   employee who's been discriminated against, and we litigate

13   whether the discrimination occurred, and DFEH loses that

14   lawsuit, I assume -- I don't know, but I assume that the

15   employee is bound by that, that the employee then couldn't

16   bring another lawsuit alleging the same discrimination, right?

17   And that's part of why -- I assume that's part of why the

18   employee is the real party in interest in that case, and not

19   the State.

20        **MR. WADE-SCOTT:**  Sure.  If the question is -- it

21   goes back to the question of whether or not we can be sure that

22   the State's Attorney has the ability to seek statewide -- other

23   than injunctive -- well, we certainly have the ability to seek

24   statewide injunctive relief.  However, a loss by the State's

25   Attorney representing the State in this case would plainly bind

the State as to -- let's take the narrowest version of the
State's Attorney's authority.  He only represents the people of
the State of Illinois in Cook County.  We still think that
that's a case where the State's interests are presented, and a
loss there would bind as to the People of the State of Illinois
within Cook County.  That's clear.

THE COURT:  But theoretically, Cook County -- if she
loses in Cook County, then every other county can -- then the
next county can sue Facebook, and the next county after that
can sue Facebook, and the next county after, and then the
Attorney General can come clean up if all the counties lose,
theoretically.

MR. WADE-SCOTT:  Or if all the counties lost,
I would suspect that....  I think that as a practical matter --

THE COURT:  Or all three of the counties lose.

MR. WADE-SCOTT:  Yeah.  As a practical matter, your
Honor, that's why this question is not resolved.  I don't know
that a court would then, after a loss on the merits where
the -- pursuant to the ICFA authority a state's attorney is
bringing the case, that other state's agents could then bring
the case.  I just -- I can't be certain because we don't have
case law that's on point.

THE COURT:  Okay.

MR. WADE-SCOTT:  But as a -- I'm sorry.

THE COURT:  Sorry, go ahead.

1    **MR. WADE-SCOTT:**  As I said, the fact that, taking

2    the narrowest view of the State's Attorney's authority, that

3    the State has -- in this case, it's brought in the name of the

4    people of the State.  Looking at the interest analysis as the

5    Ninth Circuit looks at it, I don't think that all of the

6    interests of the State are -- every citizen that composes the

7    People of Illinois has to be present in the State in order for

8    the State to have a sovereign interest in the outcome.

9          Think about it, for example, as a criminal

10   prosecution.  The state's attorneys of the various counties

11   bring cases that are in the interest of the State, though they

12   concern only things that happened within their county, and the

13   way that the Ninth Circuit handles this, they look at what the

14   remedies are and whether or not they're essentially

15   government-facing.

16         The civil penalties and injunctive relief serve the

17   State's interest in enforcing their consumer scheme.  Whether

18   or not it's done by an agent in one county or whether it's done

19   by their Attorney General, the sovereign interest analysis is

20   not so cramped, and I don't think that you can find in the

21   existing case law anything that suggests that the State's

22   interests are precluded by having, for instance, an officer

23   with more limited jurisdiction bringing a case in the interests

24   of the State.  You just look at the State's interests as they

25   stand in *Nevada*.

1      **THE COURT:**  Okay, I understand the argument.

2       **MR. WADE-SCOTT:**  Thank you, your Honor.

3      **MR. LIPSHUTZ:**  Your Honor, surprisingly, maybe

4   unsurprisingly, I disagree with most of what was just said, but

5   as opposing counsel was presenting his argument, it struck me

6   that he's really proving our point here, which is that the

7   State of Illinois is not a party to this case, and many of the

8   positions that you just heard taken by opposing counsel would

9   be directly opposed by the Illinois Attorney General if she

10  were here today, I have no doubt.  We heard opposing --

11     **THE COURT:**  Well, why isn't she here?  I mean, why

12  hasn't she -- I mean, this sort of gets to the question that

13  I asked about whether the Attorney General has the authority to

14  intervene in a case like this and take it over.

15     **MR. LIPSHUTZ:**  The Illinois Attorney General is not

16  here because the Illinois Attorney General, together with

17  attorneys general from many other states around the country, is

18  investigating the very same activities that are the subject of

19  this lawsuit, and has decided, at least so far, not to bring a

20  lawsuit against Facebook, none of the attorneys general across

21  the country.

22     **THE COURT:**  Has there been an announcement, we've

23  completed the investigation, we've decided not to bring a

24  lawsuit against Facebook?

25     **MR. LIPSHUTZ:**  No, quite the contrary.  The

1    investigation is ongoing --

2              **THE COURT:**  Okay.

3              **MR. LIPSHUTZ:**  -- and the Illinois Attorney General

4    is part of that, and again --

5              **THE COURT:**  So to the extent -- I mean, I took what

6    you were saying to be an implication that the Attorney General

7    has made a decision not to sue Facebook, but I guess that's not

8    what you're saying.

9              **MR. LIPSHUTZ:**  No, my point is simply that that

10   decision has not been made yet.  The investigation is ongoing.

11   The Illinois Attorney General, like many other attorneys

12   general across the country, is deciding what to do with the

13   Cambridge Analytica situation.

14             Cook County decided to bring a case merely weeks

15   after the Guardian article came out in March of this year, and

16   the difference between Cook County bringing the case and

17   Illinois bringing the case is a critical one under the Ninth

18   Circuit's own jurisprudence, and if the Court looks at the

19   *Lucent* decision -- this is why we have this two-step analysis

20   in our brief.  If the Court looks at the *Lucent* decision,

21   page 739, footnote 6 --

22             **THE COURT:**  Hold on, let me pull it back up.

23             **MR. LIPSHUTZ:**  Sure.

24             **THE COURT:**  Okay.

25             **MR. LIPSHUTZ:**  In footnote 6, the Ninth Circuit

1  explains -- and this is quoting *Hickman* -- the Ninth Circuit

2  explains that the State -- this is a quote,

3              "The State cannot possess the ability to defeat

4          federal diversity jurisdiction over an action

5          between what would otherwise be two diverse

6          citizens -- "

7          THE COURT:  Wait, I'm sorry.  I want to get to the

8  footnote.  I'm having trouble.

9          MR. LIPSHUTZ:  Yes.

10         THE COURT:  Give me a quick second.

11         MR. LIPSHUTZ:  Of course.

12         THE COURT:  Oh, I see the problem.  I was On judge

13 Ikuda's dissent.

14         MR. LIPSHUTZ:  Don't read that one.

15          MR. WADE-SCOTT:  You're welcome to, your Honor.

16 (Laughter).

17         THE COURT:  I did read it.  I thought it was

18 interesting.

19         Okay, footnote 6.

20         MR. LIPSHUTZ:  In footnote 6, the Ninth Circuit

21 says,

22             "The State cannot possess the ability to defeat

23         federal diversity jurisdiction over an action

24         between what would otherwise be two diverse citizens

25         merely by enacting legislation pursuant to its

1          police powers."

2     And that is exactly what has happened here.

3          **THE COURT:**  But it's also true that you have to look

4     to state law to get a sense of whether their action is --

5     whether the State is the real party in interest.  It's

6     ultimately a federal question, and perhaps the State couldn't

7     pass a statute to give some random individual the ability to

8     file some lawsuit in the name of the State and call it, you

9     know -- call it a lawsuit in pursuit of state interests when

10    it's really not, but --

11         **MR. LIPSHUTZ:**  But respectfully, the distinction

12    between delegating an individual citizen to bring the suit and

13    delegating a county to bring the suit, or a county official to

14    bring the suit, is not a meaningful distinction.  It's not a

15    distinction at all with respect to what the Ninth Circuit is

16    saying here in that footnote.

17         **THE COURT:**  Well, I think he would agree with -- he

18    would probably agree with you on that, and he would say, what

19    matters is whether this is a lawsuit trawl actually on behalf

20    of the State, where the State is the real party in interest,

21    and just because it's a subsidiary government official who's

22    bringing the action doesn't mean the State is not the real

23    party in interest.

24         **MR. LIPSHUTZ:**  Well, a couple responses to that.

25         One, the fact that it's a county official bringing

the action, that is a difference, because a county official

does not have the same kind of immunity from suit in federal

court that the State itself has.  The County and the county

officials are citizens of Illinois, diverse citizens, for

purposes of --

THE COURT:  What do you mean, they don't have

immunity from -- in federal court, a county official?

MR. LIPSHUTZ:  Eleventh Amendment immunity does not

apply to sub-state actors.  So if the State of Illinois has --

THE COURT:  I think it applies -- I thought that it

applied to district attorneys.

MR. LIPSHUTZ:  In -- when they are prosecuting in

the criminal context, yes, it does.

THE COURT:  But when they're performing a state

function, right, when they're --

MR. LIPSHUTZ:  No.

THE COURT:  -- when they're performing a function on

behalf of the State.

MR. LIPSHUTZ:  When they're prosecuting in their

criminal capacity on behalf of the sovereign State of Illinois,

yes, they would have Eleventh immunity --

THE COURT:  Yeah.

MR. LIPSHUTZ:  -- but there is no case in which a

county, or the State's Attorney from the county, has brought a

civil action, and any court has said that there's no diversity

1  jurisdiction.

2          **THE COURT:**  But that's -- if but they are, again,

3  prosecuting them in the name of the People of Illinois, which

4  is what they are doing with this civil action --

5          **MR. LIPSHUTZ:**  Well, okay, so let's test that.

6          **THE COURT:**  -- why aren't they -- I mean, I don't

7  think -- you're saying that if Kimberly Foxx does something in

8  connection with her duties under state law to bring civil

9  actions along these lines, that -- and somebody sued her, she

10  wouldn't be entitled to immunity?

11          **MR. LIPSHUTZ:**  Eleventh Amendment immunity?  If this

12  was a civil suit?

13          **THE COURT:**  Yeah.

14          **MR. LIPSHUTZ:**  I don't think she would.

15          **THE COURT:**  Why not?

16          **MR. LIPSHUTZ:**  I don't think there's any case saying

17  that.

18          **THE COURT:**  Why not?  I mean, she is -- why is she

19  not serving in her capacity as a state official in the same way

20  that she's doing so when she's prosecuting criminal actions?

21          **MR. LIPSHUTZ:**  Because under the Illinois

22  Constitution, the Attorney General is the only person who is

23  eligible, as the exclusive representative of the State of

24  Illinois; and so the sovereign immunity of the State of

25  Illinois extends to the Attorney General, but does not extend

1    to a county official, where the County does not itself have

2    Eleventh Amendment immunity, which it would not here.

3           But even if you want to put that issue aside and we

4    want to look at whether this suit is being pursued to behalf of

5    the State -- what has been called the State's interests, it's

6    not, and I think the argument you heard here proves that's not.

7           The money that would be collected, as we just heard

8    from opposing counsel, the money that would be collected in

9    this suit will not go to the State treasury.  There is a

10   provision in the Illinois statute that's at issue here, the

11   consumer fraud statute, there is a piece of the policy, the

12   portion of the policy that deals with elder fraud, which is a

13   small piece of what they're bringing, there's a provision in

14   the statute that requires those penalties to go to the State

15   treasury.  There is no similar provision for the rest of the

16   penalties, the bulk of the penalties, and we just heard --

17          **THE COURT:**  And what -- so are you in agreement that

18   the law doesn't say anything about those penalties?

19          **MR. LIPSHUTZ:**  The law, the statute doesn't say

20   anything about those penalties, but by virtue of not saying

21   anything about those penalties, the money is going to go to the

22   plaintiff in this action.  The plaintiff is Kimberly Foxx, the

23   County Attorney, and we haven't heard anything to -- any

24   disagreement on that point.

25          **THE COURT:**  And by that you mean, not into her

1  pockets --

2          **MR. LIPSHUTZ:**  No, of course not.

3          **THE COURT:**  -- but into the DA's budget.

4          **MR. LIPSHUTZ:**  Into the DA's budget, to be used

5  however the DA wants, for purposes of benefiting the County.

6  So that's not a State interest.  The --

7          **THE COURT:**  Why is that not a State interest?

8          **MR. LIPSHUTZ:**  Because it's a County interest, and

9  again, it goes to this distinction between the State --

10          **THE COURT:**  But why is it not a State interest

11  for -- I mean, the DA is a subsidiary law enforcement officer

12  of the State.  Why is it not in the State's interest to empower

13  these subsidiary law enforcement officers to bring actions on

14  behalf of the State with the result being that penalties go

15  into the coffers of the subsidiary government actor?

16          **MR. LIPSHUTZ:**  Because the U.S. Supreme Court has

17  foreclosed that exact situation from being -- from destroying

18  diversity jurisdiction.  If your Honor reads the *Port of*

19  *Seattle* decision, which post-dated *Hickman*, 1921, the U.S.

20  Supreme Court addressed this exact situation, with no

21  complications.  It's actually quite a straightforward case

22  that's directly on point.  And it said, the Port, that was a

23  sub-state actor, the Port of Seattle, had a direct financial

24  interest in the result, and then it said diversity was not

25  destroyed even though, quote, "the State also has an interest."

1          So there, the money was going into the coffers of

2     the sub-state actor.  The State -- it was a quiet title action

3     in favor of the State of Washington and the Port of Seattle,

4     and yet even though the State was going to benefit from that

5     judgment by getting title to the property, the Supreme Court

6     said that does not destroy diversity jurisdiction because the

7     money was going into the coffers of the sub-state actor, not

8     directly into the State treasury.  That is exactly this

9     situation.

10         And so *Port of Seattle* -- forget *Lucent*, forget, you

11    know, the Ninth Circuit's disagreements between *Lucent* and

12    *Nevada v. Bank of America*.  Just look at the U.S. Supreme

13    Court, *Port of Seattle*, 1921.  It is squarely on point and has

14    never been overruled.

15         If you want to get into the obvious distinctions

16    between the *Lucent* case and the *Nevada v. Bank of America* case,

17    those distinctions, the reason the *Lucent* case was a much more

18    difficult case was because, again, it was a sub-state actor,

19    just like *Port of Seattle*.

20         *Nevada* is an easy case.  *Nevada v. Bank of America*

21    is an easy case because the Attorney General brought the

22    lawsuit.  This footnote 6 concern of the Ninth Circuit from

23    *Lucent* is not implicated because the State in that circumstance

24    is not bestowing its sovereign authority or bestowing the

25    ability to destroy diversity jurisdiction onto an actor who

1   would not otherwise have it.  It's simply the State bringing

2   the case --

3           THE COURT:  But this footnote doesn't say that, hey,

4   the State can't defeat diversity by bestowing authority to

5   bring an action on behalf of the State on subsidiary actors.

6   It's a much more general statement.

7           MR. LIPSHUTZ:  Well, it's a statement about

8   defeating diversity jurisdiction.  It says the State cannot --

9   so it's a command -- the State cannot defeat what would

10  otherwise be diversity jurisdiction by enacting legislation.

11          That's what's happened here.  If this was a suit

12  between the County of Cook and Facebook, those would be --

13  there would be diversity, we would remove that case, but

14  because the Illinois legislature has bestowed this authority on

15  the county official, suddenly they're destroying -- the

16  argument is that they've destroyed diversity jurisdiction.

17  That is the situation that is being addressed, and it cites

18  *Hickman*, which again, is a very similar situation.

19          But you asked -- your Honor asked the question

20  yesterday about preclusion.

21          THE COURT:  Yeah.

22          MR. LIPSHUTZ:  Well, the answer to that, under

23  Illinois law, as I read Illinois law, is that this suit, if

24  Cook County loses this suit, would not be preclusive on the

25  Illinois Attorney General, for a very simple reason.

1          The Illinois Constitution says that the Attorney

2     General has the exclusive authority to represent the State.

3     That's the *Bear Stearns* decision from the Illinois Supreme

4     Court, as well as many others.  The Illinois Supreme Court has

5     held --

6               **THE COURT:**  But that's not -- that doesn't come

7     directly from the Illinois Constitution, right?

8               **MR. LIPSHUTZ:**  It does, actually.

9               **THE COURT:**  That's a statement -- okay, show me

10    that.

11              **MR. LIPSHUTZ:**  It is -- right, the word "exclusive"

12    is not in the Constitution, but the Constitution says the

13    Attorney General is the law enforcement officer of the State.

14              **THE COURT:**  Right.

15              **MR. LIPSHUTZ:**  And the Illinois Supreme Court,

16    construing the Illinois Constitution, has said that that means

17    exclusive.  They've used the word "exclusive" many times.

18              **THE COURT:**  Well, I think they said -- I mean,

19    I don't think the question was posed whether the state's

20    attorneys, pursuant to this statutory authority, also were

21    authorized to act as law enforcement authority of the State.

22              **MR. LIPSHUTZ:**  Well, no, but in several other cases,

23    including the *Devine* case that was mentioned which was against

24    Time Marketing, and other cases like the *Briceland* case, 65

25    Illinois 2d. 485, the Illinois Supreme Court has held that the

1    legislature lacks the power to diminish the authority of the

2    Attorney General by, for example, delegating some of his

3    authority to another state actor.

4              So that's in *Briceland*, that's in *Time*, and it

5    actually --

6              **THE COURT:**  What case is that?

7              **MR. LIPSHUTZ:**  *Briceland*, 65 Illinois 2d. 485,

8    page 501, from 1976, but also in the People versus -- *People ex*

9    *rel. Devine v. Time* that was discussed earlier, 336 Illinois

10   Appellate 3d. 74, from 2002, and in that *Time* case, in *Devine*

11   *v. Time* case, that was an action under the same statute by a

12   state's attorney, and the Illinois Attorney General went out

13   and settled the case by getting an assurance of voluntary

14   compliance agreement with the defendant --

15             **THE COURT:**  Say that one more time.  Back up a

16   couple sentences --

17             **MR. LIPSHUTZ:**  Sure.

18             **THE COURT:**  -- and say that again.

19             **MR. LIPSHUTZ:**  So in the *Time* case, the *ex rel.*

20   *Devine v. Time* case, the Cook County official, the Cook County

21   State's Attorney, same official that's at issue here, brought a

22   case under the same statute.  While that case was pending, the

23   Illinois Attorney General went out and effectively settled the

24   case, went to Time, together with other attorneys general, and

25   entered into an assurance of voluntary compliance agreement,

basically getting Time's assurance that it will comply with
what the state law wanted, and settled the case and released
the claims.

And in the *Time* case, the Cook County State's
Attorney and the Attorney General of Illinois were actually
fighting with each other over whether the Illinois Attorney
General could settle the case out from under the Cook County
State's Attorney, and the Cook County State's Attorney's
position, much like you've heard here, is that the Illinois
Attorney General could not do that, and the Court said no, the
Attorney General has certain exclusive powers under this
statute, including, for example, the power to investigate,
which the Cook County State's Attorney does not have, and the
power to settle the case by means of an assurance of voluntary
compliance agreement, and because the Constitution prevents the
legislature from diminishing the Attorney General's power by
giving power to the State's Attorney, the Attorney General
retains exclusive authority to negotiate those deals on behalf
of the State, and the Attorney General's interest was not
aligned with the State's Attorney here, and that's --

**THE COURT:** But is that -- but it strikes me that
that case could cut against your argument in a certain sense,
which is that the Attorney General has the power -- if the
Attorney General wants to undercut Cook County in this case,
she can, and I'm presuming that the Attorney General could

1   intervene in the case if she wanted to, maybe to cause the case

2   to move in a different direction.  Maybe she could do an

3   intervene on behalf -- intervene and cause the case to be

4   dismissed.  I don't know.

5            **MR. LIPSHUTZ:**  Perhaps, your Honor --

6            **THE COURT:**  I think it's -- I think you need to move

7   the mike a little bit further away.

8            **MR. LIPSHUTZ:**  I was taking the advice too early.

9            **THE COURT:**  My new year's resolution is to get new

10  microphones in this courtroom.

11           **MR. LIPSHUTZ:**  Sounds like a good idea, your Honor.

12           That may be so, but it again establishes -- what it

13  actually establishes is that they are different parties.  They

14  are different parties with different interests.  The Illinois

15  Attorney General has her own interest in these matters, the

16  Cook County State's Attorney has her own interests in these

17  matters, and they are different parties.

18           **THE COURT:**  Well, that's one way to look at it, but

19  the other way to look at it is we, the State, want not only our

20  Attorney General but subsidiary law enforcement officers to be

21  empowered to bring actions in the name of the State.  In the

22  event of disagreement, the Attorney General can trump it, the

23  Attorney General can come in and settle the case out from under

24  the State's Attorney.  Perhaps the Attorney General can come in

25  and put a stop to the case or move the case in a different

1   direction.

2          So yeah, in the event of disagreement, the AG is the

3   boss, but we are nonetheless empowering more than just one of

4   our government officials to bring actions in the name of the

5   State, on behalf of the State.

6          **MR. LIPSHUTZ:**  And all that may be well and good,

7   but it doesn't destroy diversity jurisdiction, and that's the

8   difference.  That's what *Port of Seattle* says.  Because the

9   State of Washington and Port of Seattle could have come in and

10  said, we have no interest this property, we disclaim it.  But

11  it doesn't matter, because the money at issue in the case was

12  going to the subsidiary entity, not to the State.

13         **THE COURT:**  Right, but I mean, the assumption is the

14  that State of Seattle -- I mean, excuse me -- the State of

15  Washington, it is perfectly consistent with -- oh, I see,

16  that's your point.  You're going to say, that's my point,

17  right?

18         **MR. LIPSHUTZ:**  That's my point.

19         **THE COURT:**  Yeah.

20         **MR. LIPSHUTZ:**  That's exactly right.  So the

21  question is not whether the State could take over the case or

22  intervene in the case.  The question is whether they are one

23  and the same, and they are not, when there's an sub-state actor

24  that brings the action.

25         And there's another example of this.  There is an

1  MDL in the Eastern District of Pennsylvania, the *Avandia* MDL.

2  There, like here, the County of Santa Clara, from California --

3        **THE COURT:** Oh, is this the opioids?

4        **MR. LIPSHUTZ:** Yeah.  The County of Santa Clara came

5  in with an enforcement action, and it was removed and sent to

6  the MDL, and the MDL court there refused to remand the case

7  back to state court -- actually, denied the remand and

8  certified the question under 1292(b) to the Third Circuit.

9        **THE COURT:** So now the Third Circuit is deciding

10  this question implicating California's sovereignty, and this

11  court, and potentially the Ninth Circuit, may be deciding this

12  question relating to Illinois' sovereignty.

13        **MR. LIPSHUTZ:** Well, in a sense --

14        **THE COURT:** So --

15        **MR. LIPSHUTZ:** -- but not really, because --

16        **THE COURT:** So it's kind of messed up, but anyway,

17  I'm sorry --

18        **MR. LIPSHUTZ:** No, no, no.  I mean, the question is

19  one of federal law.  The question is what destroys diversity

20  jurisdiction.

21        **THE COURT:** Yes, but it's bound up in --

22        **MR. LIPSHUTZ:** Sure.

23        **THE COURT:** -- what the State's interests are and

24  the State's system for enforcing its own laws, I think.

25  I mean, I don't think you could --

1      **MR. LIPSHUTZ:**  Sure.

2      **THE COURT:**  -- disagree with that.

3      **MR. LIPSHUTZ:**  Well, unless you take *Hickman* at its

4  word and *Lucent* at its word when it quoted *Hickman* and said, in

5  this situation where it's not the State bringing the case, the

6  only question is whether the money inures solely to the benefit

7  of the State.

8      **THE COURT:**  But neither of those two cases said --

9      **MR. LIPSHUTZ:**  I know.

10     **THE COURT:**  -- in this situation where the State is

11 not bringing the case.  That's the problem, and I guess that

12 gets me to another question, which is, you have teased out what

13 I think is a colorable -- I won't even say interpretation of

14 the cases, but that you have presented a colorable way of

15 understanding these cases, a reasonable way of understanding

16 these cases, but the cases don't actually say what you're

17 saying, right?  You've proposed a reasonable way of

18 understanding them, but perhaps they have also proposed a

19 reasonable way of understanding them, and so the answer is, the

20 tie goes to remand.

21     **MR. LIPSHUTZ:**  No, because their way doesn't work

22 under *Port of Seattle*.  Their way of understanding the case

23 does not work under *Port of Seattle,* and actually, *Lucent*,

24 footnote 6, the language I quoted, does effectively say what

25 I'm saying.  It may not say it exactly the same way, but the

1    import of that footnote in *Lucent* is that where it's not the

2    State itself, where it's some actor that would be diverse from

3    the other side, like a county, that there is a concern that

4    state courts will seek to destroy diversity jurisdiction by

5    empowering those citizens -- and a county is a citizen -- with

6    the authority imbued by the State in order to destroy diversity

7    jurisdiction.

8            That is a concern that the Ninth Circuit has

9    identified, and it, in my view, perfectly explains the

10   distinction between the *Nevada v. Bank of America* case and the

11   *Lucent* case on the other hand, and the *Hickman* case on the

12   other hand, and the *Port of Seattle* case on the other hand.  So

13   it's more than a colorable interpretation.  I think it's the

14   best way of understanding the statutes.

15           And the -- we know, from counsel's own argument here

16   today, that the money that's recovered here is not going to go

17   to the State coffers, it's going to go to the County.  The

18   County has already given 20 percent of the money to a private

19   law firm.  They couldn't do that if it was the State's money.

20           **THE COURT:**  That's -- I don't think that's relevant

21   at all.

22           **MR. LIPSHUTZ:**  Well, I don't see how they could do

23   that consistent with the statutory scheme if it was truly the

24   State's money.  How can the County give away 20 percent of the

25   State's money to a private lawyer?

1          Anyway, we can agree to put that issue aside, but

2     I think it does raise questions as to whether this is really

3     the State's lawsuit.

4          And we know that this isn't the State's lawsuit also

5     because we know the Illinois Attorney General is still engaged

6     in communications and investigation on this very issue and has

7     not yet made a determination as to whether to bring a lawsuit.

8          **THE COURT:**  Let me ask you, you mentioned the

9     *Avandia* MDL and you said that it's been certified.  So I gather

10    it's pending in front of the Third Circuit now?

11         **MR. LIPSHUTZ:**  You know, I don't know whether the

12    Third Circuit granted the 1292 or not.  We don't know the

13    answer to that, but if they did, then it would presumably still

14    be pending there, *Avandia*.

15         And look, the reality is --

16         **THE COURT:**  And what --

17         **MR. LIPSHUTZ:**  I'm sorry, your Honor.

18         **THE COURT:**  Oh, I'm sorry, I just want to make sure

19    I don't forget to ask this question of you.

20         Have you found any other MDLs where this has come

21    up?  Because it's not uncommon -- I was going to go down the

22    hall and ask Judge Breyer if they came up in the *Volkswagen*

23    case.  I haven't done that yet, but it strikes me that it is

24    probably not uncommon for a local jurisdiction to file a

25    lawsuit against a defendant who's been pulled into a federal

MDL.

**MR. LIPSHUTZ:**  That's right, and it's also not uncommon for those cases to end up in the MDL, and that was --

**THE COURT:**  So what are some other examples of that?

**MR. LIPSHUTZ:**  I think the *Volkswagen* one did have one.  I think there was an *Apple* one --

**MR. WADE-SCOTT:**  Not with a fight on remand, just to clarify.

**THE COURT:**  What?

**MR. WADE-SCOTT:**  Not with a fight on remand.

**THE COURT:**  Just, they ended up there.

**MR. WADE-SCOTT:**  They're in the MDL, so --

**THE COURT:**  That is at least of some marginal relevance, I suppose.

**MR. LIPSHUTZ:**  Right.  No, not -- the fight over remand was in *Avandia*.

**THE COURT:**  Yeah.

**MR. LIPSHUTZ:**  And the local enforcement agency, the County of Santa Clara, lost that fight.

**THE COURT:**  So far.

**MR. LIPSHUTZ:**  So far, that's right.  There are other circumstances -- and we can send a supplemental letter if your Honor would like, but I've seen other circumstances, I think there was an *Apple* one, I think there was a *Volkswagen* one, where there were local enforcement actions.  We have

1    briefing on this in one of our earlier briefs in this case, but

2    I'll find it for your Honor.

3         **THE COURT:**  One of your 5,000 briefs that you've

4    filed in this case.

5         **MR. LIPSHUTZ:**  One of our 5,000 -- yes, your Honor,

6    where local enforcement actions wind up in the MDL, and they

7    stay there.

8              And if you think about it, it makes a lot of sense.

9    A State Attorney General action cannot end up in a federal MDL,

10   because it's unquestionably not removable, right?  A state --

11        **THE COURT:**  I think there was some -- in the

12   *Volkswagen* MDL, I think there were some State Attorney General

13   actions.

14        **MR. LIPSHUTZ:**  Well, I guess it's possible --

15   I guess if the State Attorney General is, to my opposing

16   counsel's point, is bringing the action specifically to achieve

17   restitution on behalf of somebody, some individual, maybe my

18   statement is too broad, but in most circumstances, a State

19   Attorney General action would not be removable, and therefore,

20   would not find its way into an MDL.

21             But think about how many local jurisdictions there

22   are all over the country.  If you had every local jurisdiction

23   with the ability to bring a state court action on the same

24   facts that are subject to the MDL and there was no mechanism

25   for getting all those actions into federal court and over to

1    the MDL, that alone would significantly undermine the whole

2    purpose of the MDL.  I mean, these are the same facts, the same

3    claims, and they could be pending in hundreds of local

4    jurisdictions around the country, based on my opposing

5    counsel's reading of removal law.

6              Now, that may not be --

7         **THE COURT:**  I mean, the idea of undermining the

8    purposes of the MDL, the purpose of the MDL is to get all the

9    federal cases decided by one federal court.  It's not to get

10   all cases filed throughout the country in front of one federal

11   court.  And MDLs -- all kinds of MDLs we have, we have the

12   federal MDL and then we have ongoing state court cases.

13   I mean, my other MDL is the *Monsanto* case --

14        **MR. LIPSHUTZ:**  Right.

15        **THE COURT:**  -- where just across the street in state

16   court there was, like, a 260 gazillion dollar verdict against

17   Monsanto.

18        **MR. LIPSHUTZ:**  Fair enough.  It doesn't solve the

19   problem, and there's --

20        **THE COURT:**  And there's nothing wrong with that.

21        **MR. LIPSHUTZ:**  And there's nothing wrong with that,

22   but whereas here, it is a local --

23        **THE COURT:**  And I mean, I'm not saying there's

24   nothing wrong with -- I'm not taking the position either way on

25   whether there's anything wrong with the verdict.  All I -- for

1  the record, in case -- (laughter) -- anybody wants to

2  misconstrue that.  I'm just saying there's nothing wrong with

3  litigation happening in state courts on the same issue that is

4  being dealt with in a federal MDL.

5            **MR. LIPSHUTZ:**  Of course, your Honor.

6            **THE COURT:**  Whew!

7            **MR. LIPSHUTZ:**  Record clarified.  My point is simply

8  that if states can start deputizing all different kinds of

9  local entities to bring these suits, and then they start

10 popping up in state courts all over the country, that does, in

11 a sense, undermine the MDL, because those suits should be

12 removable.  They're brought by actors who are diverse citizens

13 of their individual states.  They're not brought by the State

14 itself.  They should be removable and they should be part of

15 the MDL, because there is federal jurisdiction, federal

16 diversity jurisdiction, over those cases.

17           **THE COURT:**  Yeah, and I think that point kind of

18 begs the question, but you've adequately addressed the

19 question.  We have had a good discussion of the question, and

20 it's a very interesting issue, and I'll think about it for a

21 while, and --

22           **MR. LIPSHUTZ:**  And the last point I would make, your

23 Honor, is, it is an interesting issue.  I don't think either

24 side has found, your Honor, the case squarely on point, except

25 for *Port of Seattle*, which I think is squarely on point, as

1   I might have mentioned, but if your Honor, like the *Avandia*

2   court, thinks this is a very difficult question, I think one

3   option here would be to deny the remand and certify under 1292,

4   and we can find out what the Ninth Circuit -- how the Ninth

5   Circuit reconciles all these very seemingly irreconcilable

6   cases.

7          **THE COURT:**  Okay.

8           **MR. WADE-SCOTT:**  Your Honor, if I could, very

9   briefly, because I didn't talk about the *Port* case.  It's a

10  little bit difficult to parse, but the *Port* case is not on

11  point, because it's a case that concerned whether or not the

12  Port could collect rental fees, and the Court found that even

13  though the State would collect some money from the rental fees,

14  the State's interests were not the predominant ones in the

15  case, because it's the Port.

16          The fact is that you can reconcile *Hickman* and *Port*,

17  *Port of Seattle* and *Lucent* very easily by saying the State does

18  not have carte blanche to say that any individual can go forth,

19  and we have an interest in that individual's rights being

20  vindicated, or we have an interest in the port collecting its

21  rental fees.  The interests have to be the sovereign interests,

22  as *Nevada* thought about them, which is the interests of

23  protecting consumers, or not just those interests, but as

24  applicable here, interests in protecting a broad swath of

25  consumers.

1        The footnote in *Lucent* is saying California cannot

2   say that DFEH has -- the State has an interest in that

3   individual getting back pay.  That alone is not sufficient.

4        **THE COURT:**  Yeah.

5         **MR. WADE-SCOTT:**  So you can reconcile all these

6   quite easily with our interests of -- with our analysis of what

7   are the State's interests.

8        **THE COURT:**  Okay.  Very interesting, very helpful

9   argument.  Thank you.  And I'll give it some thought and put

10   out an opinion.

11         **MR. WADE-SCOTT:**  Thank you, your Honor.

12        **MR. LIPSHUTZ:**  Thank you, your Honor.

13        **THE COURT:**  Okay, thank you.

14                                                    <u>11:31 a.m.</u>

15                          ---o0o---

16

17

18

19

20

21

22

23

24

25

1

2

3 **CERTIFICATE OF TRANSCRIBER**

4

5          I, Leo Mankiewicz, certify that the foregoing is a

6 true and correct transcript, to the best of my ability, of the

7 above pages of the official electronic sound recording provided

8 to me by the U.S. District Court, Northern District of

9 California, of the proceedings taken on the date and time

10 previously stated in the above matter.

11          I further certify that I am neither counsel for,

12 related to, nor employed by any of the parties to the action in

13 which this hearing was taken; and, further, that I am not

14 financially nor otherwise interested in the outcome of the

15 action.

16

17 _____  12/07/2018

18          Signature of Transcriber          Date

19

20

21

22

23

24

25