Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
Todd Logan
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Special Assistant State's Attorneys*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843 |
| | Case No. 18-md-02843-VC |
| | Case No. 18-cv-06486-VC |
| This document relates to: *People of Illinois ex rel. Kimberly M. Foxx v. Facebook, Inc., et al.*, 18-cv-06486-VC | Hon. Vince Chhabria |
| | **PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REMAND** |

# **TABLE OF CONTENTS**

I.   The Attorney General may intervene in and control this case ............................. 1

II.  If Plaintiff loses this case on the merits, without the Attorney General ever opting to intervene or settle out the case, the Attorney General would likely be barred from filing a similar case against the same defendants ........................................ 4

    A.   The State's Attorney represents the State here because she has constitutional and statutory authority to obtain a statewide injunction and completely vindicate the State's interests under the Consumer Fraud Act ...................... 5

        1.   The State's Attorney has *constitutional* authority to represent all of the State's interests in this case ........................................................ 5

        2.   The State's Attorney has *statutory* authority to represent all of the State's interests in this case ................................................................ 7

            a.   The State's Attorney may obtain a statewide injunction ........... 7

            b.   The State's Attorney may seek civil penalties under the ICFA for all violations arising from Facebook's alleged conduct ....... 8

    B.   The ICFA regime proposed by Plaintiff is common and sensible.................... 9

    C.   Other states feature similar public enforcement regimes for their consumer protection laws, and those regimes lead to the same conclusions regarding preclusion of follow-on Attorney General suits.............................................. 10

    D.   Facebook's prior arguments raised up to this point are non-starters, and regardless, need not be resolved by this Court ............................................... 12

III. Other federal courts' handling of in-the-name-of-the-State cases in the MDL context support remand here .............................................................................................. 14

IV.  Conclusion .............................................................................................................. 15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Lightfoot v. Cendant Mortg. Corp.*,
    137 S. Ct. 553 (2017) ................................................. 13

**United States Appellate Court Cases**

*520 Michigan Ave. Assocs., Ltd. v. Devine*,
    433 F.3d 961 (7th Cir. 2006) ......................................... 7

*Corral v. Select Portfolio Servicing, Inc.*,
    878 F.3d 770 (9th Cir. 2017) ......................................... 13

*Dept. of Fair Emp't Housing v. Lucent Tech.*,
    642 F.3d 728 (9th Cir. 2011) ......................................... 13

*Garcia v. City of Chicago, Ill.*,
    24 F.3d 966 (7th Cir. 1994) .......................................... 15

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ......................................... 14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    859 F.3d 178 (2d Cir. 2017) .......................................... 12

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ..................................... 13, 15

*Staten v. Neal*,
    880 F.2d 962 (7th Cir. 1989) .......................................... 6

*United States v. Wanland*,
    830 F.3d 947 (9th Cir. 2016) ......................................... 12

**United States District Court Cases**

*Boyd v. Village of Wheeling*,
    No. 83 C 4768, 1985 WL 2564 (N.D. Ill. Sept. 12, 1985) ............ 15

*California ex rel. Herrera v. Check 'N Go of Cal., Inc.*,
    No. C 07-02789 JSW, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007) .......... 11

*California v. M & P Investments*,
    213 F. Supp. 2d 1208 (E.D. Cal.) ..................................... 11

*California v. Purdue Pharma L.P.*,
   No. 14-cv-1080, 2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) ....................................14

*City of New York v. Beretta U.S.A. Corp.*,
   315 F. Supp. 2d 256 (E.D.N.Y. 2004) ...........................................................................11

*In re Avandia Mktg, Sales Practices & Prods. Liab. Litig.*,
   238 F. Supp. 3d 723 (E.D. Pa. 2017)...............................................................................14

*In re Gen. Motors LLC Ignition Switch Litig.*,
   69 F. Supp. 3d 404 (S.D.N.Y. 2014).................................................................................15

*Oregon ex rel. Oregon State Treasurer v. Merck & Co.*,
   No. 05-cv-1463-PK (D. Or. Jan. 6, 2006) ......................................................................14

*People v. Boehringer Ingelheim Pharm., Inc.*,
   No. 17-cv-00923, 2017 WL 3269074 (C.D. Cal. July 31, 2017).............................. 13, 14

*New York v. Mountain Tobacco Co.*,
   No. 12-CV-6276(JS)(SIL), 2016 WL 3962992 (E.D.N.Y. July 21, 2016) ...................... 11

**State Supreme Court Cases**

*Abbott Labs. v. Superior Court*,
   424 P.3d 268 (Cal. 2018) .............................................................................................. 3, 10

*Carmichael v. Laborers' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chicago*,
   2018 IL 122793 .....................................................................................................................8

*Com. v. Schab*,
   477 Pa. 55 (1978) ..................................................................................................................4

*Cty. of Cook ex rel. Rifkin v. Bear Stearns & Co.*,
   215 Ill. 2d 466 (2005)............................................................................................................5

*Ex parte King*,
   59 So. 3d 21 (Ala. 2010)........................................................................................................3

*Fergus v. Russel*,
   270 Ill. 304 (1915)...............................................................................................................12

*Hudson v. City of Chicago*,
   228 Ill. 2d 462 (2008)............................................................................................................4

*People ex rel. Alvarez v. Gaughan*,
   2016 IL 120110 ........................................................................................................... 5, 9, 12

*People ex rel. Burris v. Progressive Land Developers, Inc.*,
   151 Ill. 2d 285 (1992)............................................................................................................5

*People ex rel. Cruz v. Fitzgerald,*
    66 Ill. 2d 546 (1977)..................................................................................5

*People ex rel. Hoyne v. Newcomer,*
    284 Ill. 315 (1918)...................................................................................6

*People ex rel. Scott v. Briceland,*
    65 Ill. 2d 485 (1976).........................................................................12, 13

*People v. Buffalo Confectionery Co.,*
    78 Ill. 2d 447 (1980)............................................................................2, 3

*People v. Flynn,*
    375 Ill. 366 (1940)...............................................................................2, 3

*People v. Gray,*
    214 Ill. 2d 1 (2005)..............................................................................6, 7

*Riley v. Cornerstone Cmty. Outreach, Inc.,*
    57 So. 3d 704 (Ala. 2010)........................................................................4

*Scachitti v. UBS Fin. Servs.,*
    215 Ill. 2d 484 (2005)..............................................................................3

*State ex rel. Attorney Gen. v. Reese,*
    254 Miss. 293 (1965)...............................................................................4

*State ex rel. Patterson for Use & Benefit of Adams Cty. v. Warren,*
    78 N.M. 241 (1967)................................................................................3

*Town of Burlington v. Dist. Attorney for N. Dist.,*
    381 Mass. 717 (1980)..............................................................................4

**State Appellate Court Cases**

*Abbott Labs. v. Superior Court,*
    24 Cal. App. 5th 1 (Ct. App. 2018) ...........................................3, 10, 11

*City of Miami Beach v. State ex rel. Gerstein,*
    242 So. 2d 170 (Fla. Dist. Ct. App. 1970) .................................................12

*Forest Pres. Dist. of Du Page Cty. v. Brown Family Tr.,*
    323 Ill. App. 3d 686 (2d Dist. 2001) ........................................................8

*Okla. ex rel. Pruitt v. Steidley,*
    2015 OK CR 6 (Okla. Crim. App. 2015)....................................................4

*People ex rel. Devine v. Time Consumer Mktg., Inc.,*
    336 Ill. App. 3d 74 (1st Dist. 2002)......................................................1, 2

*People ex rel. Difanis v. Boston*,
    92 Ill. App. 3d 962 (4th Dist. 1981) ...........................................................................7

*People v. Batterman*,
    355 Ill. App. 3d 766 (3d Dist. 2005). ........................................................................6

*People v. Hy-Lond Enters., Inc.*,
    93 Cal. App. 3d 734 (1979) .....................................................................................11

*People v. Staten*,
    158 Ill. App. 3d 971 (4th Dist. 1987) .........................................................................6

*People v. Wantland*,
    78 Ill. App. 3d 741 (4th Dist. 1979) ...........................................................................6

*People v. Williams*,
    361 Ill. App. 3d 723 (2d Dist. 2005) ..........................................................................7

*People v. Woods*,
    169 Ill. App. 3d 126 (2d Dist. 1988) ..........................................................................6

**Rules and Statutory Provisions**

28 U.S.C. § 1452 .........................................................................................................15

730 ILCS 5 ....................................................................................................................6

815 ILCS 505 .........................................................................................................*passim*

Cal. Bus. & Prof. Code § 16760 ................................................................................11

Cal. Bus. & Prof. Code § 17200 ..................................................................................3

Cal. Bus. & Prof. Code § 17204 .............................................................................3, 10

Cal. Bus. & Prof. Code § 17206 ................................................................................10

Okla. Stat. t. 15, § 756.1 ............................................................................................11

P.A. 84-748, H.B. 1656 ...............................................................................................8

**Other Authorities**

James Horner, Christine Kwon, *The Reach of Local Power*,
    128 YALE L.J. FORUM 610 (2018) ..........................................................................10

Stern, Cal. Practice Guide: Business & Professions Code,
    Section 17200 Practice (2018) ....................................................................................3

Transcript of Floor Debate, Senate, June 26, 1985,
    https://cite.law/B7K3-MPBF ...................................................................................8, 9

Plaintiff People of the State of Illinois, by and through Kimberly M. Foxx, submit the following brief in response to the Court's questions posed at dkt. 216. Because the Attorney General's ability to intervene in this action affects the preclusion analysis, Plaintiff addresses intervention first, followed by preclusion. Plaintiff then discusses other cases in the MDL context in a similar posture. Plaintiff's conclusions are, in brief:

*First*, the structure of the Illinois Consumer Fraud Act and the Attorney General's common-law powers indicate that the Illinois Attorney General may intervene in and take control of this case.

*Second*, if the State lost this case on the merits, without the Attorney General ever exercising her right to intervene in or settle out the case, the Attorney General would likely be barred from filing a similar case against the same defendants. In conjunction with the Attorney General's likely right to intervene, this regime makes sound policy sense: the State's Attorney exercises the State's consumer protection enforcement powers, but that power is subject to a variety of checks. Those checks include not only the threat of intervention, but also the Attorney General's absolute right to settle the case as well as the State's Attorney's ongoing duty to notify the Attorney General of substantive developments in the case. It is therefore unremarkable that this case might have preclusive effect over the Attorney General. By contrast, a conclusion that no preclusive effect exists would lead to absurd results and endless relitigation.

*Third*, and finally, while there are only a handful of on-point opinions, courts in the MDL context typically find jurisdiction to be lacking over cases brought in the name of the State by subordinate state officials and entities.

## I.     The Attorney General may intervene in and control this case.

The structure of the ICFA and the Attorney General's common-law powers both suggest that the Attorney General may intervene in this case. A dispute between the Attorney General and State's Attorney on these questions is rare, and there is correspondingly little law on the subject, but *People ex rel. Devine v. Time Consumer Marketing, Inc*. provides the best guide. *See* 336 Ill.

App. 3d 74, 80 (1st Dist. 2002).

In *Time*, the Illinois Appellate Court found that both statutory and constitutional analyses favored the Attorney General's ability to release the State's ICFA claims filed by the State's Attorney over that attorney's objection. First, the court observed that the ICFA itself places the exclusive ability to enter into an "Assurance of Voluntary Compliance" with the Attorney General, *id.* at 81–82, which is admissible as prima facie evidence of an ICFA violation in a future proceeding, 815 ILCS 505/6.1. Because "a legislative grant of authority carries with it, by implication, the powers necessary to exercise those powers expressly stated[,]" the court found a power to settle implied in the provision because no defendant would enter into such an Assurance without a release for past liability. *Time*, 336 Ill. App. 3d at 81. Second, the court found the common-law powers of Attorneys General included the ability "to control all litigation on behalf of the State *including intervention in and management of all such proceedings.*" *Id.* at 82 (emphasis added) (quoting *People v. Massarella*, 72 Ill. 2d 531, 534 (1978)). The Attorney General's common-law powers, accordingly, included the power to settle the State's claims.

The *Time* court's holding supports the Attorney General's ability to take charge of this case. First, the Attorney General's unilateral ability to settle means, in practical terms, that she exercises ultimate control over the litigation. Second, the Attorney General's common-law powers explicitly include "intervention in and management of" all proceedings brought on behalf of the State. This power is not without exception—for instance, where the Attorney General lacks statutory authority to convene a grand jury, she may not exclude the State's Attorney from the proceeding. *See People v. Flynn*, 375 Ill. 366, 368 (1940); *cf. People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 455 (1980) (observing, in dicta, that "the Attorney General lacks the power to take exclusive charge of the prosecution of those cases over which the State's Attorney shares [statutory] authority."). But in ICFA cases, the Attorney General's common-law power to take charge of litigation brought on behalf of the State is supported by the statutory scheme. In addition to the exclusive authority to settle, a State's Attorney must notify the Attorney General's office both when filing a complaint that includes an ICFA claim and upon any the entry of any

"judgment or order" in the case. 815 ILCS 505/6. Taken together, the statutory features indicate that this is a case where the Attorney General's common-law power to intervene is not limited. *See Time*, 336 Ill. App. 3d at 80 (distinguishing *Buffalo Confectionery* and *Flynn* on this basis); *see also Scachitti v. UBS Fin. Servs.*, 215 Ill. 2d 484, 512–13 (2005) (*qui tam* statute constitutional where Attorney General had authority to control actions). Accordingly, the Attorney General may take charge of the case if she elects to do so.

In this respect, Illinois' consumer fraud enforcement regime is unremarkable. For example, California's enforcement regime for its Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, functions the same way. The UCL explicitly confers enforcement authority upon not only the Attorney General, but also District Attorneys, County Counsel, and certain City Attorneys. *Id.* § 17204. No matter which officer signs the pleadings, the case is pursued "in the name of the people of the State of California." *Id.* Yet, "the Attorney General as the [S]tate's chief law enforcement officer always has the authority to intervene and take over the case." *Abbott Labs. v. Superior Court*, 24 Cal. App. 5th 1, 35 (Ct. App. 2018) (Dato, J., dissenting), *cert. granted*, 424 P.3d 268 (Cal. 2018)); *see also* Stern, Cal. Practice Guide: Business & Professions Code Section 17200 Practice (2018) ¶ 9:6 (Attorney General may always "intervene, assume jurisdiction, and take control of the investigation and proceeding where the matter is deemed sufficiently important to warrant it"). In essence, California's distributed UCL public enforcement regime is materially identical to Illinois' ICFA public enforcement regime.

While many other states have consumer protection schemes that empower subordinate state officers to bring cases, there is a paucity of on-point rulings resolving disputes of authority between the attorney general and those officers. The Alabama Supreme Court has held that the attorney general's statutory authority to "direct, control, and attend to civil litigation" permits an attorney general to settle a consumer protection action over the objections of the district attorney. *Ex parte King*, 59 So. 3d 21, 28 (Ala. 2010); *see also State ex rel. Patterson for Use & Benefit of Adams Cty. v. Warren*, 254 Miss. 293, 307 (1965) (Attorney General's common-law powers included ability "to control and manage all litigation on behalf of the state, and to intervene in all

actions which were of concern to the general public."). Other states strongly suggest that their attorneys general have the same authority, though the question has arisen only in the criminal prosecution context. *Okla. ex rel. Pruitt v. Steidley*, 2015 OK CR 6, ¶ 16 (Okla. Crim. App. 2015) (holding that Oklahoma attorney general to "take and assume control" of criminal prosecution and displace district attorney); *Town of Burlington v. Dist. Attorney for N. Dist.*, 381 Mass. 717, 720 (1980) (attorney general may "may supersede a district attorney as prosecutor[.]").

Those cases finding that state attorneys general may not intervene in and take charge of cases are largely inapplicable here. The Pennsylvania Supreme Court held that the attorney general lacked common law powers to supersede district attorneys in a criminal prosecution, but nevertheless held that pursuant to the statutory scheme that the attorney general could move for that relief. *Com. v. Schab*, 477 Pa. 55, 61, 62–65 (1978). New Mexico did not imbue its attorney general with common-law powers, and accordingly, the New Mexico Attorney General's ability to intervene in cases brought by district attorneys is limited by statute. *State ex rel. Attorney Gen. v. Reese*, 78 N.M. 241, 246 (1967). The Alabama Attorney General may not intervene in cases brought by the governor in the name of the state, but the case concerns the State's primary executive. *Riley v. Cornerstone Cmty. Outreach, Inc.*, 57 So. 3d 704, 723–24 (Ala. 2010). In sum, like California's UCL, the Illinois Attorney General may exercise her control over ICFA cases.

## II.    If Plaintiff loses this case on the merits, without the Attorney General ever opting to intervene or settle out the case, the Attorney General would likely be barred from filing a similar case against the same defendants.

"The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). So if Plaintiff here is *either* (1) the State, or (2) the State's privy, then this case would bar a materially identical follow-on suit brought by the Illinois Attorney General against the same defendants. Anticipating that the Court is likely more interested in the former sufficient condition than the latter, this brief focuses on the question whether the State's Attorney can represent all of

the State's interests in this case.[1] The answer is yes, consistent with the State's Attorney's broad

constitutional powers, paired with the statutory scheme of the ICFA.

A.    **The State's Attorney represents the State here because she has constitutional and statutory authority to obtain a statewide injunction and completely vindicate the State's interests under the Consumer Fraud Act.**

1.    **The State's Attorney has *constitutional* authority to represent all of the State's interests in this case.**

The Illinois Supreme Court has clearly confirmed the State's Attorney's status as a *state*,

rather than *county*, officer. *See People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 30. This

line of cases establishes that the State's Attorney is tasked with broad responsibilities to represent

the State's interests. *See id.* In *Gaughan*, for example, the Court addressed the very argument

Facebook makes here, which was that the Attorney General's primacy as the State's

representative precluded the State's Attorney from representing the State. *Id.* ¶¶ 30–32. The

Court rejected that argument, concluding that the State's Attorney's broad constitutional mandate

allowed it to represent the State's interests before the Court. *See id.* ¶ 32 ("[A] State's Attorney is

a constitutional officer with rights and duties analogous to or largely coincident with the

Attorney General.") (quoting *Cty. of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466,

476 (2005) (internal quotations omitted)).

In light of this constitutional mandate, a State's Attorney's authority outside of her

County is a question of statutory authorization. *See People ex rel. Cruz v. Fitzgerald*, 66 Ill. 2d

546, 551 (1977). In *Fitzgerald*, the Court held that pursuant to statute, one State's Attorney could

grant transactional immunity to a defendant, even though the subject matter included criminal

charges that were currently pending in another county. *Id.* at 548. The Illinois Supreme Court

rejected the argument that one State's Attorney could not bind another, holding that despite the

---

[1]    In Illinois, a litigant acts as privy to the State when it "adequately represent[s] the same legal interests" as the State. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296–97 (1992). This analysis is more holistic than the "same party" analysis, and would likely result in a holding that the State's Attorney's action precludes the Attorney General even where they do not exercise precisely the same powers. *See id.* (finding that private party precluded Attorney General's claims).

"mischievous result[]"—that the other prosecutor's already-pending case had to be dismissed—the statute permitted any State's Attorney to move for immunity. *Id.* at 550–51. Accordingly, there is no constitutional bar to the State's Attorney seeking statewide relief.

There is significant authority that suggests a State's Attorney may not act outside her county where she lacks *statutory* authority to do so, but those holdings are not of constitutional scope. *See, e.g., People v. Gray*, 214 Ill. 2d 1, 9–10 (2005) (where statute prevented State's Attorney from initiating prosecution for an offense occurring in another County, no statutory authority to enter into plea bargain on such charges); *see also People v. Staten*, 158 Ill. App. 3d 971, 980 (4th Dist. 1987) (finding State's Attorney's promise not to prosecute did not preclude other State's Attorney where promisor attorney could not have prosecuted the offense);[2] *People v. Woods*, 169 Ill. App. 3d 126, 130 (2d Dist. 1988) (holding that statute requiring approval of other State's Attorney in entering into plea bargain for offenses currently pending in other counties prevented, *a fortiori*, unilateral *nolle prosequi* of other State's Attorney's charges). Where no statute controls, a State's Attorney may bind the State on all matters related to a criminal prosecution with approval of the court. *People v. Wantland*, 78 Ill. App. 3d 741, 746 (4th Dist. 1979), *overruled on other grounds by Staten*, 158 Ill. App. 3d at 978; *see also People ex rel. Hoyne v. Newcomer*, 284 Ill. 315, 323 (1918) (holding that court could deny State's Attorney's discretion to *nolle prosequi* several hundred charges).[3] To the extent that Facebook relies on

---

[2]     The defendant in *People v. Staten* went on to seek habeas relief, resulting in *Staten v. Neal*, 880 F.2d 962, 966 (7th Cir. 1989). The Seventh Circuit denied relief, holding—as the Illinois Appellate Court did—that the State's Attorney who made the promise to the defendant lacked statutory authority to do so. *Id.* at 965–66. The Seventh Circuit also rejected the argument that the State's Attorney had "apparent authority" to bind the State because of this lack of statutory authorization, further observing in dicta that the State's Attorneys "act independently of each other and without a common sovereign." *Id.* at 966. It's difficult to reconcile this latter observation with well-established law holding that State's Attorneys cannot bring successive criminal prosecutions due to double jeopardy, precisely because their powers derive from the single State sovereign. *See People v. Batterman*, 355 Ill. App. 3d 766, 769 (3d Dist. 2005).

[3]     Notably, under Illinois' current statutory scheme, a State's Attorney may not enter a plea of guilty where charges are currently pending in other counties, 730 ILCS 5/5-4-2, which would be unnecessary if she were jurisdictionally limited as a matter of Illinois constitutional law.

these cases to demonstrate that a State's Attorney's scope is necessarily narrowed to her County, they do not stand for that proposition—each of them turns on the relevant statute. The State's Attorney possesses the power both to seek a statewide injunction and vindicate all of the State's ICFA interests under the ICFA as a matter of statute, discussed below, which is entirely consistent with her constitutional powers.

> **2.     The State's Attorney has *statutory* authority to represent all of the State's interests in this case.**

> **a.     The State's Attorney may obtain a statewide injunction.**

In this case, the State's Attorney seeks a statewide injunction. State's Attorneys may seek and obtain statewide injunctions in equity. *People ex rel. Difanis v. Boston*, 92 Ill. App. 3d 962, 968 (4th Dist. 1981) (rejecting defendant's argument that order enjoining him from "maintaining or permitting prostitution on any premises within his control in the State of Illinois[]" exceeded court's jurisdiction). This principle functions the same way in the other direction: An injunction entered against the State in an action defended by the State's Attorney of Cook County was found enforceable against the State's Attorney of Winnebago County over the Winnebago attorney's objection that the State was not the same party in both cases. *People v. Williams*, 361 Ill. App. 3d 723, 729 (2d Dist. 2005); *but see 520 Michigan Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 964 (7th Cir. 2006).[4] The State's Attorney's ability to represent the State in seeking injunctive relief is, accordingly, not territorially limited. Thus, because her claim for injunctive relief applies to the whole State, a later suit by the Attorney General for injunctive relief would likely be precluded.

---

[4]     *520 Michigan Avenue* stands for the unremarkable proposition that, under federal law, "judgments do not block public officials from seeking reconsideration of legal questions in future suits[,]" and thus the plaintiff had standing to seek declaratory judgment that a law was preempted even though the State had previously lost a similar action in district court. *Id.* at 964. In dicta, Judge Easterbrook observed that because Illinois State's Attorneys "may operate independently," that "implies" that no State's Attorney "is bound by a judgment against another." *Id.* That dicta does not follow from *Gray,* and is impossible to reconcile with *Williams*.

b.   **The State's Attorney may seek civil penalties under the ICFA for all violations arising from Facebook's alleged conduct.**

Illinois courts' "primary goal in construing a statute is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the language of the statute itself." *Carmichael v. Laborers' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chicago*, 2018 IL 122793, ¶ 35. A court will consider, as well, "the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another[,]" presuming that the legislature did not intend to create "absurd, inconvenient, or unjust results." *Id.* Nevertheless, "[a] court is not permitted to ignore the plain meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express." *Forest Pres. Dist. of Du Page Cty. v. Brown Family Tr.*, 323 Ill. App. 3d 686, 692 (2d Dist. 2001).

The ICFA's plain language suggests that the State's Attorney can seek civil penalties for violations occurring statewide. Nowhere in the enforcement provision does a geographic limitation on remedies appear. 815 ILCS 505/7. Indeed, ICFA's language itself commands that it be "liberally construed to effect the purposes thereof." *Id*. § 11a. The purpose of the government enforcement provision in the ICFA is to ensure that not only individual consumers can sue to vindicate their rights, but to ensure broader government enforcement to penalize wrongdoers that have defrauded the State's citizens. *See id.* § 7. That purpose requires that a State's Attorney be able to vindicate all of the State's interests when it brings suit.

The legislative history confirms that a State's Attorney may complete the State's case in one proceeding. The ICFA's government enforcement provision originally permitted only the Attorney General to enforce the Act, but was amended in 1986 to permit State's Attorneys to bring suit as well. *See* P.A. 84-748, H.B. 1656 § 1. The Senate sponsor, Senator Degnan, stated to the chamber immediately before the amendment unanimously passed:

> House Bill 1656 amends the Consumer Fraud and Deceptive Practices Act, authorizes the state's attorneys of any county to bring an action to enforce the Act on the same basis as the Attorney General. Also gives those state's attorneys the same investigative and subpoena powers as the Attorney General with regard to the Act.

Transcript of Floor Debate, Senate, June 26, 1985, p. 156, https://cite.law/B7K3-MPBF. Senator Degnan's views are consistent with the language that appears in the statute, which does not distinguish between the Attorney General and State's Attorneys' ability to seek injunctive relief and civil penalties. 815 ILCS 505/7. Thus, the State's Attorney may remedy all violations.

### B.  The ICFA regime proposed by Plaintiff is common and sensible.

The ICFA public enforcement regime set forth in this brief makes good sense: certain authority to represent the State as a whole has been given to the State's Attorneys consistent with their constitutional powers. *See Gaughan*, 2016 IL 120110, ¶ 30. In exchange, the State's Attorneys must notify the Attorney General of suit, 815 ILCS 505/6, must notify the Attorney General of the "entry of an order or judgment," *id.*, must cede control if the Attorney General exercises her unilateral right to intervene, and at all times must not run afoul of the Attorney General or else the Attorney General might simply settle the case, *see Time*, 336 Ill. App. 3d at 81. If the Attorney General chooses to neither intervene nor settle the case, despite notice and power to do so, she has constructively decided that the State will be bound by the results of the lawsuit. That is a sensible and just construction of the statute.

By contrast, if this case cannot have preclusive effect, absurd results would abound. A loss on the merits by the State's Attorney would nevertheless leave Facebook open to dozens more lawsuits from other State's Attorneys—not to mention the Attorney General—regarding the same subject matter. And a win by the State's Attorney would still require every other State's Attorney—*and* the Attorney General—to file a new suit just to determine penalties and secure statewide injunctive relief. Those results, which would lead to wasteful relitigation and the risk of inexplicably inconsistent results, are absurd. Accordingly, the ICFA should be interpreted to avoid those results and consistently with its purpose: to empower the State's Attorneys broadly to enforce the State's consumer protection interests.

C.   **Other states feature similar public enforcement regimes for their consumer protection laws, and those regimes lead to the same conclusions regarding preclusion of follow-on Attorney General suits.**

It is no surprise that other states share regimes similar to that of Illinois for public enforcement of consumer protection laws. California's UCL public enforcement regime, again, serves as a useful example. To rehash: the UCL explicitly confers enforcement authority upon not only the Attorney General, but also other public attorneys in the State. Cal. Bus. & Prof. Code § 17204. In any case in which a subordinate official wishes to pursue UCL claims on behalf of the State, the official must notify the Attorney General. And, "the Attorney General as the [S]tate's chief law enforcement officer always has the authority to intervene and take over the case." *Abbott Labs*, 24 Cal. App. 5th at 35 (Dato, J., dissenting).

Given that statutory framework, the only logical conclusion is that a UCL enforcement action filed in the name of the "People of the State of California" by, *e.g.*, the Los Angeles City Attorney, would preclude an identical follow-on suit from the California Attorney General. Plaintiff concedes that a California appellate court recently reached a contrary conclusion, concluding both that a subordinate state official's case could not preclude a follow-on suit by the Attorney General and that subordinate state officials may not obtain a statewide remedy. *See id.* at 26. But the California Supreme Court recently granted certiorari in that case. *See Abbott Labs. v. S.C.*, 424 P.3d 268 (Cal. 2018). And as a matter of both common sense and statutory interpretation, the intermediate court's analysis in *Abbott Labs* is incorrect. *See, e.g.*, James Horner, Christine Kwon, *The Reach of Local Power*, 128 YALE L.J. FORUM 610, 617 (2018). Indeed, the plain text of the UCL's public enforcement provisions make clear that subordinate officials can seek statewide remedies for violations of the UCL. For example, the UCL provision providing for civil penalties states clearly that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty" in an action brought "by the Attorney General, by *any* district attorney, ... [or] by *any* city attorney of a city having a population in excess of 750,000." Cal. Bus. & Prof. Code § 17206 (emphasis added). The provision's repeated use of the word "*any,*" absent any indication of a geographic limitation,

leads to the inescapable conclusion that *any* qualifying subordinate official may obtain statewide remedies in UCL cases.[5] *See Abbott Labs*, 24 Cal. App. 5th at 38 (Dato, J., dissenting) ("Nor should there be a problem with the court awarding civil penalties based on any statewide violations . . . If the violation is proved, the penalties are appropriately imposed."). As a logical matter, that *must* mean that the Los Angeles City Attorney's suit—whether successful or unsuccessful—would be preclusive of any follow-on suits by other subordinate officials or the Attorney General. In other words, a statewide remedy necessarily requires statewide preclusion.[6]

Other states have, largely, not made conclusive holdings about similar regimes. Oklahoma makes clear by statute the *res judicata* effect of an action brought by a district attorney. *See* Okla. Stat. t. 15, § 756.1 (first-filed action has preclusive effect). Otherwise, there is little case law that clarifies the preclusive effect of a subordinate entities' case on the Attorney General. New York has held that non-attorney general entities preclude the attorney general where they bring cases under the same statute. *See New York v. Mountain Tobacco Co.*, No. 12-CV-6276(JS)(SIL), 2016 WL 3962992, at *12 (E.D.N.Y. July 21, 2016) (collecting cases); *but see City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 265–74 (E.D.N.Y. 2004) (city's claims independent from state's *parens patriae* suit). Florida case law supports a finding

---

5       That other California statutes *do* geographically limit the remedial power of subordinate state officials confirms that California's UCL enforcement regime does not. For instance, the Cartwright Act permits district attorneys to file suit "in the name of the [P]eople" only when "activities giving rise to the prosecution or [their] effects ... occur primarily within that county." Cal. Bus. & Prof. Code §§ 16760(a),(g). Accordingly, where the California legislature wishes to place geographic limitations on a subordinate state official's power to obtain statewide relief, it knows how to do so. Conversely, where—as with the UCL—the legislature places no geographic limitations in the statute, it is because none were intended.

6       *People v. Hy-Lond Enters., Inc.*, 93 Cal. App. 3d 734 (1979), a case Facebook is likely to rely upon here, does not counsel otherwise. *Hy-Lond* stands for the unremarkable proposition that a local prosecutor overstepped when he made himself the sole enforcer of a statewide settlement agreement and waived liability for future-facing violations. *See Abbott Labs.*, 24 Cal. App. 5th at 36–37 (Dato, J., dissenting). It says little conclusive about the ability of subordinate state officials to seek statewide remedies or to preclude follow-on suits. Similarly, *California v. M & P Investments*'s holding, to the extent it can be analogized here, is distinguishable by the unusual circumstances faced by that court. *See* 213 F. Supp. 2d 1208, 1216 (E.D. Cal.), *see also California ex rel. Herrera v. Check 'N Go of Cal., Inc.*, No. C 07-02789 JSW, 2007 WL 2406888, at *5 (N.D. Cal. Aug. 20, 2007) (discussing *M&P Investments*).

that an injunction obtained by a state attorney precludes the attorney general from re-litigating the case. *City of Miami Beach v. State ex rel. Gerstein*, 242 So. 2d 170, 173 (Fla. Dist. Ct. App. 1970) (holding that attorney general could not seek order adjudicating right of City of Miami Beach to grant construction permits on seashore, injunction obtained by state attorney already "adjudicated [those] legal rights.").[7] California's similar regime, as well as the commonsense conclusion that follow-on suits by other government actors would be precluded on the same claims, suggest that the Attorney General would be precluded in a follow-on case.

> **D.** **Facebook's prior arguments raised up to this point are non-starters, and regardless, need not be resolved by this Court.**

Facebook contended at the December 6, 2018 hearing that the Attorney General is the sole officer with authority to represent the State, relying on *People ex rel. Scott v. Briceland*, 65 Ill. 2d 485, 500 (1976) (holding "that the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive."). Thus, Facebook's argument—as Plaintiff understands it—is that the Illinois Consumer Fraud Act is either unconstitutional or should be interpreted to avoid a constitutional problem.

For one, Facebook, in a recurring theme, wants these words to bear a load they cannot. *Briceland* appears in the line of cases making clear that the State's executive agencies cannot hire in-house counsel for representation to the exclusion of the Attorney General. *See, e.g., Fergus v. Russel*, 270 Ill. 304, 342 (1915). But the Illinois Supreme Court just two years ago held that the broad language of the *Briceland* and *Fergus* cases simply *does not refer* to the State's Attorneys, who similarly are constitutional officers of the State. *Gaughan*, 2016 IL 120110, ¶ 27

---

[7]     There are a handful of federal decisions determining whether government entities preclude one another, but they largely turn on one entities' bringing—or ability to bring—the same claim as the following suit. *E.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 859 F.3d 178, 186–87 (2d Cir. 2017) (holding that Orange County Water District not precluded by Orange County District Attorney's prior case because district attorney lacked authority to bring suit on behalf of water district); *United States v. Wanland*, 830 F.3d 947, 956 (9th Cir. 2016) (criminal enforcement proceedings not precluded by prior tax collection action). Application of these cases here would beg the question of the State's Attorney's authority.

("Neither *Briceland* nor *Fergus* addressed the powers of State's Attorneys *vis-à-vis* the Attorney General."). In light of that on-point holding, Facebook's continuing assertion that *Briceland* somehow controls the result here is clearly incorrect.

For another, Facebook's proposal that this Court resolve a constitutional problem of Illinois law in service of determining its subject matter jurisdiction should be rejected. Facebook has the burden of demonstrating that federal jurisdiction exists, and accordingly, the burden of demonstrating that the State is *not* the plaintiff in this case against a "strong presumption" in favor of remand to state court. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). A constitutional determination of this kind is a perfect example of why the burden exists, because a federal court should not have to decide this question. *See People v. Boehringer Ingelheim Pharm., Inc.*, No. 17-cv-00923, 2017 WL 3269074, at *1 (C.D. Cal. July 31, 2017) ("[S]tate courts are up to the task of adjudicating their own laws.") (quoting *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 565 (2017)).

Finally, Ninth Circuit law does not necessarily determine the State's interests in a case based upon the preclusive effect on the State's other agents. To be sure, an *affirmative* answer on preclusion—that all of the State's agents would be precluded from bringing suit after a final judgment in this case—would unambiguously make clear that the State is the plaintiff. But an answer in the *negative* does not answer the critical question of whether the State has the necessary interests in the case to be a party. Instead, the State's interests can be present in cases brought by its agents: following Ninth Circuit precedent, and consistent with Supreme Court precedent, the State's interests analysis focuses on the purpose and remedies of the suit. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (noting that the State's interests in *Department of Fair Employment Housing v. Lucent Technologies*, 642 F.3d 728 (9th Cir. 2011) were deficient because the remedy sought benefitted a single employee, versus the State's sovereign interests in protecting its consumers more broadly). There is no indication in the case law that an agent with limited jurisdiction cannot bring a suit that vindicates those interests, *e.g.*,

*Boehringer*, 2017 WL 3269074, at *3, and the interests here are perfectly in line with *Nevada*. Thus, the State's interests are present in this case, and the State is the plaintiff.

### III.    Other federal courts' handling of in-the-name-of-the-State cases in the MDL context support remand here.

There are MDLs that contain or contained cases filed by subordinate state entities in the name of the State, such as *In re Deepwater Horizon*, but jurisdiction is premised on a basis other than diversity. *See* 745 F.3d 157, 162 n.4 (5th Cir. 2014) (finding federal jurisdiction under Outer Continental Shelf Lands Act, and noting that ruling does not consider diversity jurisdiction). Decisions on contested motions to remand that are on point—in which the asserted basis is diversity jurisdiction—are few.

One case relied on heavily by Facebook is *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 238 F. Supp. 3d 723 (E.D. Pa. 2017). As Plaintiff has explained, that case is distinguishable for its unusual posture. *See id.* at 731 (county counsel was not entitled to presumption against removal jurisdiction, and State had settled the rest of the State's claims). Neither component is present here: the State's claims are not narrowed to a single county, and the presumption against removal applies. The many other cases considering this question are more on point, and counsel in favor of remand. *E.g.*, *Boehringer*, 2017 WL 3269074;[8] *California v. Purdue Pharma L.P.*, No. 14-cv-1080, 2014 WL 6065907 (C.D. Cal. Nov. 12, 2014).

Diversity jurisdiction was asserted and denied in two cases brought by State retirement funds while a conditional transfer order to an MDL was pending but before it was finalized. *Oregon ex rel. Oregon State Treasurer v. Merck & Co.*, No. 05-cv-1463-PK, dkt. 32 (D. Or. Jan. 6, 2006), *recommendation adopted*, dkt. 42; *Penn. Pub. Sch. Emps.' Ret. Sys. v. Citigroup, Inc.*, No. CIV.A. 11-2583, 2011 WL 1937737, at *3 (E.D. Pa. May 20, 2011). In *Merck*, the Treasurer on behalf of the Oregon Public Employee Retirement Fund (OPERF) asserted that Merck had defrauded OPERF, which owned Merck stock. *Id.*, dkt. 32 at 2. Because the case was brought to recover damages for OPERF, the court analyzed whether OPERF was an "alter ego" of the State.

---

[8]     *Boehringer* was a case that had been conditionally transferred to an MDL before remand.

*See id.* at 2–3, 7. In a detailed Eleventh Amendment analysis, *id.* at 6–22, the court held that

OPERF would be immune, and thus the State was the real party, *id.* at 21–22. The "alter ego"

analysis is a poor fit for analysis of the State's interests in this case—as Plaintiff has explained

throughout the briefing—but if it applies the State's Attorney is plainly the "alter ego" of the

State. *See Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994).[9]

Other courts have addressed remand motions within MDLs based on the federal court's

bankruptcy jurisdiction and the "police power" exception. 28 U.S.C. § 1452(a) (exempting "a

civil action by a governmental unit to enforce such governmental unit's police or regulatory

power" from bankruptcy jurisdiction). The Second Circuit held that a case brought in the name

of the State by the Sacramento County District Attorney fell into the police power exception and

accordingly remanded. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d

112, 132–34 (2d Cir. 2007); *accord In re Gen. Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d

404, 407 (S.D.N.Y. 2014). This action's claims against the bankrupt entities similarly fall into the

police power exception, *see id.*, though Facebook does not assert bankruptcy jurisdiction as the

basis for federal jurisdiction here.

## IV.    Conclusion

Because the State's interests in this case are consistent with those in *Nevada*, 672 F.3d at

670, and the State's Attorney is empowered to vindicate those interests here, 815 ILCS 505/7,

Plaintiff respectfully requests that this action be remanded to the Circuit Court of Illinois.

Respectfully submitted,

**PEOPLE OF THE STATE OF ILLINOIS
ex rel. KIMBERLY M. FOXX,**

Dated: December 14, 2018                    /s/ J. Eli Wade-Scott

---

[9]      Facebook, recognizing that its "alter ego" argument is effectively an attack on the State's Attorney's Eleventh Amendment immunity, argued that the State's Attorney was not Eleventh Amendment immune at the hearing. This argument has no support. *See id.* Facebook's arguments on this point are misguided, and premised on a case that is no longer good law, *Boyd v. Village of Wheeling*, No. 83 C 4768, 1985 WL 2564, at *15 (N.D. Ill. Sept. 12, 1985), as explained at Pl.'s Reply Br., 18-cv-6486, dkt. 49, at 7–8.

*One of Plaintiff's Attorneys*

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Alfred K. Murray II
amurray@edelson.com
J. Eli Wade Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
Todd Logan
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Special Assistant State's Attorneys*