Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc. and Non-Prioritized Defendants Mark Zuckerberg and Sheryl Sandberg*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>*People of Illinois ex rel. Kimberly M. Foxx v. Facebook, Inc., et al.*, 18-CV-06486-VC | CASE NO. 3:18-MD-02843-VC<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW REGARDING PLAINTIFF COOK COUNTY'S MOTION TO REMAND IN RESPONSE TO THE COURT'S DECEMBER 6, 2018 ORDER**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom 4, 17th Floor<br>Hearing Date: None<br>Hearing Time: None |

Defendant Facebook, Inc. ("Facebook") submits this supplemental brief to respond to the questions this Court posed in its December 6, 2018 Order. As set forth below, the answers to this Court's questions, in connection with the parties' prior arguments, confirm that Cook County—and not the State of Illinois—is the real party in interest here. That makes all the difference for diversity purposes because cities and counties (unlike States) are citizens of the State in which they are located. *See*, *e.g.*, *City of New York v. BP P.L.C.*, Case No. 1:18-cv-00182-JFK (S.D.N.Y.), Dkt. No. 1 (civil public-nuisance action filed by the City of New York in federal court based on diversity jurisdiction). As the Ninth Circuit has held, a state legislature "cannot possess the ability to defeat federal jurisdiction under 28 U.S.C. § 1332(a)(1), over an action between what would otherwise be two diverse citizens, merely by enacting legislation pursuant to its police powers." *Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 739 n.6 (9th Cir. 2011). Thus, the fact that the Illinois legislature has bestowed upon the Cook County State's Attorney the ability to bring suit "in the name of the People" does not destroy diversity jurisdiction.

**1. "If the State's Attorney were to pursue this case in state court and lose on the merits, would the Illinois Attorney General be barred from subsequently filing a similar action against the same defendants?"**

Allowing a lawsuit by a State's Attorney to bar a similar lawsuit by the Illinois Attorney General on behalf of the People of the State of Illinois would raise significant constitutional concerns. Thus, in accordance with the principle of constitutional avoidance, this Court and others should interpret the Consumer Fraud Statute in a manner that does not raise such concerns. The best way to accomplish that goal is to interpret the statute in a manner that recognizes that the Cook County State's Attorney has authority to represent *only* the People of Cook County in an action under the Consumer Fraud

Statute. Under such an interpretation, a judgment in this action would not bar a similar action by the Illinois Attorney General beyond the borders of Cook County.[1]

Under the Illinois Constitution, the Attorney General is "*the* legal officer of the state." Ill. Const., art. V, § 15 (emphasis added). The Illinois Supreme Court has repeatedly "reaffirm[ed] the *exclusive right* of the Attorney General to represent the state in all matters when the state is the real party in interest." *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 476–77 (2005) (emphasis added); *see also Lyons v. Ryan*, 201 Ill. 2d 529, 540 (2002) ("[T]he Attorney General possesses the *exclusive* constitutional power and prerogative to conduct the state's legal affairs."); *Fuchs v. Bidwill*, 65 Ill. 2d 503, 510 (1976) (The Attorney General "is the only officer empowered to represent the State in litigation in which it is the real party in interest."). The Illinois Supreme Court "has stated that neither the legislature nor the judiciary may deprive the Attorney General of his or her inherent powers under the Constitution to direct the legal affairs of the State." *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1107 (2001), *aff'd*, 201 Ill. 2d 529 (2002). And it "has consistently stated that the public interest is not served by allowing certain government agencies or private persons to assume the inherent powers of the Attorney General." *Id.*; *see also EPA v. Pollution Control Bd.*, 69 Ill. 2d 394, 402 (1977); *Fuchs*, 65 Ill. 2d at 509-10. Thus, as "the chief law officer of the state," the Attorney General is "the only officer empowered to represent the people in any suit or proceeding in which the state is the real party in interest, except where the Constitution or a constitutional statute may provide otherwise." *Fergus v. Russel*, 270 Ill. 304, 342 (1915).

The California Court of Appeal has addressed very similar circumstances several times and reached the same conclusion, holding that a judgment in a civil enforcement action brought by a local

---

[1] If, on the other hand, this Court or any other concludes that the Cook County State's Attorney *does* have authority under the Illinois Constitution to bring suit and recover penalties on behalf of the People of the entire State of Illinois, then a judgment in that action *would* likely have preclusive effect on the Attorney General because, among other reasons, a defendant cannot be subject to duplicative penalties payable to the State under the same statute and based on the same alleged events.

prosecutor *does not* bar the Attorney General from bringing the same claims on a statewide, rather than local, basis. In *People v. Hy-Lond Enterprises, Inc.*, 93 Cal. App. 3d 734 (1979), the Napa County District Attorney sued the operator of a nursing facility on behalf of the People of California, seeking injunctive relief and civil penalties under, among other things, California's Unfair Competition Law ("UCL"). *Id*. at 739. The district attorney and the defendant then stipulated to the entry of a judgment covering 18 facilities located in 12 counties. *Id*. at 741. The California Attorney General sought leave to intervene to set aside the judgment. *Id*. at 742. When the Superior Court denied leave, the Attorney General appealed, arguing that the judgment was void because it purported to preclude the Attorney General from performing his statutory duties. *Id*. at 739. The Court of Appeal held that the UCL's grant of authority to the district attorney to bring suit on behalf of the People of California did not include the right "to surrender the powers of the Attorney General and his fellow district attorneys to commence, when appropriate, actions in other counties." *Id*. at 753.

Notably, *Hy-Lond* "rejected the notion that the authority to restrain the Attorney General and other public agencies was conferred by the mere fact the district attorney was authorized to prosecute state law violations on behalf of the people." *Abbott Labs. v. Superior Court*, 24 Cal. App. 5th 1, 24 (2018). *Hy-Lond* "explained that though 'in conducting the prosecution of violations of state law on behalf of the people, the district attorney is acting as an agent of the state,' it only acted as such an agent 'within the territorial limits of the county for which he was elected.'" *Id*. (quoting *Hy-Lond*, 93 Cal. App. 3d at 751). Otherwise, State's Attorneys would be incentivized to race to litigate statewide claims in the hope of recovering all of the penalties for their county. *See id*. at 31 (warning that allowing local prosecutors to recover statewide penalties "would incentivize public prosecutors, acting in their respective county's financial self-interest, to withhold pertinent information from their sister agencies as to the scope of violations, then 'race[ ] [their colleagues] to the courthouse' … in hopes of obtaining all of the civil penalties" (citation omitted)).

The Court of Appeal expanded on these principles in *Abbot Laboratories v. Superior Court*, 24 Cal. App. 5th 1 (2018), holding that county district attorneys are not permitted to seek relief under the UCL for injuries occurring outside their counties. *Id*. at 9-10. Just like the Illinois Consumer Fraud Statute, the California UCL "expressly confers standing on district attorneys to bring civil law enforcement actions in the People's name when prosecuting UCL violations." *Id*. at 25. But the court found that this statutory grant of authority did not resolve the matter because it was subject to limitations imposed by the California Constitution. *Id*. Much like the Illinois Constitution, "[t]he California Constitution designates the Attorney General the 'chief law officer of the State.'" *Id*. at 10 (quoting Cal. Const., art. V, § 13). "[C]onsistent with this constitutional provision, the Attorney General 'has charge, as attorney, of all legal matters in which the State is interested' (Gov. Code, § 12511) and also 'shall ... prosecute or defend all causes to which the State ... is a party in his or her official capacity.' (Gov. Code, § 12512.)." *Id*. "The District Attorney, on the other hand, is a county officer whose territorial jurisdiction and power is limited accordingly." *Id*. Given these "constitutional … limitations," the UCL's statutory "grant of standing … cannot reasonably or constitutionally be interpreted as conferring statewide authority or jurisdiction to recover … monetary remedies beyond the county the district attorney serves, or restricting the Attorney General's constitutional power to obtain relief on behalf of the entire state." *Id*. at 25. "Under a contrary interpretation, a judgment in this case would bind the state under principles of res judicata and collateral estoppel, and prevent the Attorney General and other district attorneys from seeking further relief for violations occurring in their own communities." *Id*. at 26.

Illinois's constitutional and statutory structure is very similar to California's and should lead this Court to the same result here. Just like in California, the Illinois Attorney General's mandate is "[t]o institute and prosecute all actions and proceedings in favor of or for the use of the State" (15

ILCS 205/4), while the State's Attorney is responsible for "commenc[ing] and prosecut[ing] all actions and proceedings brought by any county officer in his official capacity." 55 ILCS 5/3-9005; *see Bear Stearns*, 215 Ill. 2d at 482 ("Under the Counties Code, the State's Attorney has exclusive authority to prosecute all actions on behalf of the County."). Thus, just like the California statutory scheme at issue in *Abbott* and *Hy-Lond*, Illinois's statutory grant of authority to local prosecutors to pursue relief on behalf of the "People" "cannot constitutionally … be interpreted to grant the[m] … power to seek and recover restitution and civil penalty relief for violations occurring outside the jurisdiction of the county in which [they are] elected." 24 Cal. App. 5th at 10.

Pursuant to the Court's order, we have reviewed the laws of other jurisdictions on this issue and have found little authority that is directly instructive.[2] The law in Mississippi appears to mirror the law in California. In *State ex rel. Patterson for Use and Benefit of Adams County v. Warren*, 254 Miss. 293, 307 (1965), the Mississippi Supreme Court explained that "the powers of district attorneys are statutory, not common law, and they cannot encroach upon the powers of the attorney general. A district attorney has no authority to represent the state in litigation outside counties of their district, or to represent the state in litigation in their district where the subject matter is of statewide interest, as distinguished from local interest. … The fact that the district attorney, with the consent of the attorney general, may bring a suit of this type, does not limit or exclude the latter's general authority." *Id.* at 299-300. This case did not directly address whether a suit by a local Mississippi law enforcement officer would bar a subsequent suit by the Mississippi Attorney General. In *State ex rel. Attorney*

---

[2] Decisions addressing whether local prosecutors or municipalities are bound by judgments in actions brought by the Attorney General do not shed light on whether the Attorney General would be bound if the roles were reversed. *See, e.g.*, *County of Boyd v. US Ecology, Inc.*, 48 F.3d 359 (8th Cir. 1995) (earlier suit by the State of Nebraska against entity intending to build a low-level radioactive waste dump barred subsequent suit by a county); *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004) (holding that New York City's "substantial degree of autonomy from the State" meant it was not barred from litigating a public nuisance claim against a gunmaker notwithstanding a prior judgment in an action brought by the New York Attorney General).

*General v. Reese*, 78 N.M. 241, 248 (1967), the New Mexico Supreme Court rejected the Attorney General's motion to intervene in an action brought by a district attorney, stating that it did not mean to "suggest that the district attorney has any powers outside his district," as "[t]he constitution and statutes clearly prescribe and delimit his authority."  There, too, the court did not directly address the extent to which a suit by the district attorney would bind the Attorney General.

**2.  "If a State's Attorney files a lawsuit like this in Illinois, does the Illinois Attorney General have the right to intervene and take charge of the case?"**

There does not appear to be a procedure under Illinois law that allows the Illinois Attorney General to intervene to direct a suit by a State's Attorney under the Consumer Fraud Act.  Under the Illinois Constitution, the State's Attorney does not answer to, and cannot be removed by, the Attorney General.  Ill. Const., art. IV, § 14.  State's Attorneys are the chief legal officers of their respective counties and are responsible only to their local electorates.  *Bear Stearns*, 215 Ill. 2d at 474-75; *Boyd v. Vill. of Wheeling*, 1985 WL 2564, at *15 (N.D. Ill. Sept. 12, 1985).  By statute, the Attorney General is authorized only to "*consult with and advise* the several State's Attorneys in matters relating to the duties of their office; and when, in his judgment, the interest of the people of the State requires it, he shall attend the trial of any party accused of a crime, and *assist* in the prosecution."  15 ILCS § 205/4 (emphasis added).

In criminal cases, the law is clear that the Attorney General lacks the power to supplant a State's Attorney.  *See People v. Flynn*, 375 Ill. 366, 368 (1940); *People v. Dasaky*, 303 Ill. App. 3d 986, 991-92 (1st Dist. 1999).  "The Attorney General lacks the power to take exclusive charge of the prosecution of those cases over which the State's Attorney shares authority."  *Dasaky*, 303 Ill. App. at 992; *see also People v. Buffalo Confectionery Co.*, 78 Ill. 2d 447, 455 (1980).

While the case law provides no clear answer in the civil context, the decision in *People ex rel. Devine v. Time Consumer Marketing, Inc.*, 336 Ill. App. 3d 74 (1st Dist. 2002), provides powerful

evidence that the Attorney General cannot assume direct control over a State's Attorney's suit under the Consumer Fraud Statue.  There, the State's Attorney of Cook County sued Time under the Consumer Fraud Act.  *Id.* at 76.  Just two months later, the Attorney General entered into a settlement and release of all the State's claims against Time, and Time then filed a motion to dismiss the State's Attorney's complaint on the basis of the settlement and release.  *Id.* at 77.  The State's Attorney resisted, arguing that the Attorney General lacked the power to release the claims and moot the lawsuit.  *Id.* at 77-78.  Tellingly, even in the face of this conflict between the Attorney General and State's Attorney, the Attorney General did *not* intervene to control the litigation.  If the Attorney General had the power to supplant the State's Attorney directly, the Attorney General could have simply intervened and dismissed the suit.  Instead, the court was left to determine the direction the litigation should take by reconciling the interests of the competing parties—ultimately concluding that the Attorney General's release barred further legal action by the State's Attorney.

In this case, the divergence of the State's Attorney's interests and those of the State are on full display:  The State's Attorney and her private lawyers have a direct interest in ensuring that any penalties go into the County Treasury, rather than the State Treasury.  Indeed, Cook County's counsel has taken the position that it would be appropriate for the money it recovers to be paid directly to the Cook County treasury.  *See* Transcript of December 6, 2018 Hearing at 11:13-16 ("We think that the court who would award the money would have some discretion to disburse it between the State treasury or the County treasury.").  And it has argued that under Illinois law, unlike California law, "if the money goes to the County," there is no "limit to what the money can be used for."  *See id*. at 12:13-16; *see Port of Seattle v. Oregon & W.R. Co.*, 255 U.S. 56, 70-71 (1921) (case was properly removed on diversity grounds where "[t]he port has … an independent financial interest in this controversy" even though "the state has also an interest").

We have searched for cases from other states that bear on this question, but have not found authority directly on point. In *Hy-Lond*, the California Court of Appeal held that the California Attorney General could intervene to ask the Court to vacate a judgment negotiated by a district attorney that purported to resolve claims brought on behalf of residents of other counties. 93 Cal. App. 3d at 739. But *Hy-Lond* does not suggest that the Attorney General has any right to intervene when a district attorney is *not* exceeding his powers and invading the prerogatives of the State or other counties. And although there is some case law regarding the ability of Attorneys General to intervene in criminal cases, those decisions vary from state to state, often depend on state statutes, and are not instructive on whether Attorneys General may intervene in civil enforcement actions. *See Commonwealth v. Schab*, 477 Pa. 55, 60 (1978) (overruling earlier cases holding that Pennsylvania Attorney General could supersede local prosecutors and noting "Pennsylvania seems to be the only jurisdiction which has approved the supersession of a District Attorney based on an Attorney General's common law powers"); *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980) (Oregon statute defining Attorney General's power to "not deprive the district attorneys of any of their authority, or relieve them from any of their duties to prosecute criminal violations of the law" (internal quotation marks omitted)); *State v. Robertson*, 886 P.2d 85, 91–92 & n.11 (Utah Ct. App. 1994) (Attorney General *does* have authority to supersede a district attorney); *Matter of Carey*, 416 N.Y.S.2d 904, 907 (1979) (New York law "authorizes the Governor to direct the Attorney General to supersede local District Attorneys" (citing N.Y. Exec. Law § 63(2))).

**3.   "Besides *In re: Avandia Marketing, Sales Practices and Product Liability Litigation*, are there other MDLs that contain cases brought by subordinate state officials or entities (such as district attorneys or commissions) under a state law authorizing them to sue in the name of the state, where the case was filed in state court, removed to federal court, and then transferred to the MDL proceeding? Of those cases, was removal and transfer contested? If so, what happened?"**

Facebook has located two cases that are responsive to the Court's question, but neither case involved diversity jurisdiction.[3]

In *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 247 F.R.D. 420, 421 (S.D.N.Y. 2007), the Sacramento County District Attorney brought an action on behalf of the People of the State of California against oil companies for their use and handling of MTBE.  The defendants removed the case to federal court.  *Id.*  The case was then transferred to an MDL in the Southern District of New York.  *Id.*  California moved to remand on the basis that removal violated its sovereign immunity, but the district court denied California's motion.  *Id.*  On appeal, the Second Circuit rejected California's sovereign immunity argument, but held that the case was improperly removed under the bankruptcy removal statute and federal officer removal statute.  *Id.*; *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("[S]overeign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court.").

---

[3]   In addition, we have located several federal MDLs that have included law enforcement actions brought by local government officials under state law, though not in the name of the State.  *See, e.g., In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 835 F. Supp. 2d 175, 179 (E.D. La. 2011) (Louisiana state-law claims brought by Louisiana District Attorney on behalf of coastal parishes); *In re Vitamins Antitrust Litig.*, 2001 WL 34088807, at *1 (D.D.C. Mar. 13, 2001) (*parens patriae* action by Alabama District Attorney for violation of the Alabama Deceptive Trade Practices Act).

In *In re General Motors LLC Ignition Switch Litigation*, 69 F. Supp. 3d 404, 408 (S.D.N.Y. 2014), the Orange County District Attorney sued GM in Orange County Superior Court for violations of California's Unfair Competition Law and False Advertising Law for concealing known defects in ignition switches.  The relevant complaint stated that this was a "law enforcement action which primarily seeks to protect the public safety and welfare, brought by a governmental unit in the exercise of and to enforce its police power." *Id*.  GM removed to the Central District of California on two bases: (1) the plaintiffs' claims arise under the Bankruptcy Code, 28 U.S.C. § 1334(b); and (2) federal question jurisdiction, 28 U.S.C. § 1331, because the UCL claim alleged a violation of a federal statute.  *Id.*  After the case was transferred to an MDL in the Southern District of New York, Orange County contested removal.  *Id.*  The court granted the plaintiff's motion to remand back to Orange County Superior Court, but only because (1) the case fell within the "police-power" exception to bankruptcy removal; and (2) the "substantial federal question doctrine" did not apply to the plaintiffs' UCL claim.  *Id.* at 412, 415.

To our knowledge, the only MDL case to have addressed the issue of diversity jurisdiction in the context of a local law enforcement action brought in the name of the state is *In re: Avandia Marketing, Sales Practices & Product Liability Litigation*, 238 F. Supp. 3d 723, 730 (E.D. Pa. 2017). There, even though the underlying statute authorized the county to sue in the name of the "People," the Court upheld diversity jurisdiction because the county, not the state, was the real party in interest where "the relief sought would not inure to the benefit of the state alone." *Id.*  This Court should reach the same result here.

| | |
|---|---|
| DATE:  December 14, 2018 | Respectfully submitted,<br><br>**GIBSON, DUNN & CRUTCHER, LLP**<br><br>By:  /s/  Orin Snyder<br>Orin Snyder (*pro hac vice*)<br>osnyder@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone:  212.351.4000<br>Facsimile:  212.351.4035<br><br>Joshua S. Lipshutz (SBN 242557)<br>jlipshutz@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone:  202.955.8500<br>Facsimile:  202.467.0539<br><br>Kristin A. Linsley (SBN 154148)<br>klinsley@gibsondunn.com<br>Brian M. Lutz (SBN 255976)<br>blutz@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105-0921<br>Telephone:  415.393.8200<br>Facsimile:  415.393.8306<br><br>*Attorneys for Defendant Facebook, Inc.* |