# EXHIBIT 2



November 8, 2018

**VIA ELECTRONIC MAIL**

Joshua Lipshutz, Esq.
Gibson Dunn & Crutcher
1050 Connecticut Ave NW
Washington, DC 20036

      Re:   *In re Facebook, Inc. Consumer Privacy User Profile*, (N.D. Cal.), Case No. 3:18-md-02843-VC

Dear Counsel:

This letter summarizes the substance of the meet and confer telephone call held Friday, November 2, 2018 related to ESI, Defendant Facebook, Inc.'s ("Facebook") responses to Plaintiffs' First Requests for Production ("RFP"), Plaintiffs' First Interrogatories, Facebook's September 7th production, and certain other matters addressed herein.

1. **Facebook's September 7th Production**

    a. **Facebook's Search for Responsive Documents**

    For the first time, Facebook explained in the meet and confer that in searching for documents responsive to Plaintiffs' request, Facebook did not conduct a search of all reasonably accessible potentially responsive documents, but rather limited its search to the set of documents previously produced to regulators. This was not a restriction proposed by the Court or agreed to by Plaintiffs. Plaintiffs do not agree that Facebook's unilateral decision to limit its search in this manner complied with Facebook's discovery obligations in this matter as ordered by the Court. *See* ECF 130. In responding to regulators, please identify (i) what sources Facebook searched including the custodians included in the collection; (ii) what Facebook means by "regulators" – including identifying the regulators to which Facebook produced documents; (iii) when the documents were produced to regulators; and (iv) the volume of documents produced to regulators.

    On the call, Facebook maintained that its search and production were "comprehensive," although Facebook also characterized its search as "not exhaustive." However, Facebook was not able to answer specific questions regarding what documents it collected for regulators or what procedures it followed in collecting these documents. For instance, it did not know whether e-mails were searched. Facebook stated that it would provide more detail regarding how it selected the produced documents this week. Please provide this information no later than this Friday, November 9, 2018.

Joshua Lipshutz, Esq.  **KELLER ROHRBACK L.L.P.**
November 8, 2018  **BLEICHMAR FONTI & AULD LLP**

### b. Responsive Materials Withheld on Grounds of Privilege

Facebook stated that it has not withheld any documents on the basis of privilege. Plaintiffs seek to know whether documents were withheld from production to regulators on grounds of privilege, and if so, whether privilege logs were created. Plaintiffs ask that such logs be produced.

### c. Archive.org

In response to Plaintiffs' inquiry about why documents in the September 7th production appear to come from websites outside of Facebook, Facebook explained that it was able to find these documents faster through Archive.org. Facebook also indicated that it will attempt to find these documents from within Facebook, but it does not dispute the authenticity of the Archive.org versions of these documents. Plaintiffs seek further information regarding whether Facebook maintains a master set of its own policies, and ask that Facebook identify all operative policies during the time period 2005 to the present. Please provide this information by Tuesday, November 13, 2018.

### d. Metadata

When asked to clarify why the metadata date on some documents was dated in 2018, Facebook informed Plaintiffs that this metadata may appear in documents pulled from Archive.org or from documents that were created through a print to pdf function. Plaintiffs asked that Facebook identify all documents bearing such a metadata date, indicate whether Facebook has preserved the original documents and produce replacement documents which bear a corrected document date. Please provide this information by Tuesday, November 13, 2018.

### e. Hyperlinks

Facebook acknowledged that it failed to produce all documents linked to hyperlinks in Facebook's various policies because it did not preserve all the hyperlinked documents. Facebook stated that it did not preserve hyperlinks that changed regularly. Please identify all documents referred to in hyperlinks that Facebook believes were operative contracts or policies during the time period 2005 to the present. Please provide this information by Tuesday, November 13, 2018.

### 2. Facebook's Response to Plaintiffs' Requests for Production:

The parties discussed Facebook's responses to Plaintiffs' Requests for Production.

**RFP No. 1** seeks "[a]ll documents relating to the relationship between Facebook and either Aleksandr Kogan or his app, thisisyourdigitallife."

Joshua Lipshutz, Esq.  **KELLER ROHRBACK L.L.P.**
November 8, 2018  **BLEICHMAR FONTI & AULD LLP**

Facebook stated that the production included all documents relating to the relationship between Facebook and Kogan. However, it did not provide all communication between the two parties. Rather, Facebook indicated it provided documents *governing* the relationship but not all documents *relating* to the relationship. Facebook's unilateral decision to limit the production in this manner is nonsensical and meritless. Plaintiffs seek immediate production of all documents relating to the relationship by no later than Friday, November 16, 2018. Given that these documents have already been produced to regulators, they should be readily available for production.

**RFP No. 2** seeks "[a]ll documents relating to the type and amount of user data that Aleksandr Kogan or his app, thisisyourdigitallife obtained (with or without Facebook's permission) as a result of the relationship between Facebook and either Aleksandr Kogan or his app, thisisyourdigitallife."

Facebook stated that it does not believe RFP No. 2 complies with PTO 11 (ECF 130). Accordingly, Facebook only produced information that Kogan and thisisyourdigitallife *would have been able to obtain* and has not produced information regarding the type and amount of user data that Kogan and his app actually *obtained*. Plaintiffs disagree and seek immediate production of materials reflecting what data Kogan and his app obtained no later than Friday, November 16, 2018.

Facebook also stated that it produced FB-CA-MDL-00007317, which identifies the number of users who installed Kogan's app, thisisyourdigitallife as of December 14, 2015. But this document does not include the total number of users (including friends of the installing users) or the permissions that that the app and Kogan had access to.

**RFP No. 3** seeks "[a]ll documents relating to any restrictions Facebook imposed on Aleksandr Kogan or his app, thisisyourdigitallife regarding the use or dissemination of user data."

Facebook explained that the app ID number 599050663475147 is the only app ID number for thisisyourdigitallife, and clarified that the second number, 68505932154094, which appears in FB-CA-MDL-00007318, is the number associated with Kogan's request for extended permissions for the app thisisyourdigitallife on May 6, 2014. Facebook denied Kogan's request for extended permissions on that date. Facebook stated that it produced all documents it was able to identify as responsive to this request – a total of two documents. If this is incorrect, please explain by Tuesday, November 13, 2018.

**RFP No. 4** seeks "[a]ll documents relating to any efforts Facebook made to enforce restrictions Facebook [made] against Aleksandr Kogan or his app, thisisyourdigitallife regarding the use or dissemination of user data."

Facebook provided that it produced every document responsive to this RFP that it is aware of from the collection of documents prepared for regulators. Facebook identified a total of

3

Joshua Lipshutz, Esq.  KELLER ROHRBACK L.L.P.
November 8, 2018  BLEICHMAR FONTI & AULD LLP

two responsive documents– an email to Kogan from Facebook and the resulting Settlement agreement. Plaintiffs understand that these are the only two documents Facebook possesses relating to restrictions imposed upon Kogan. If this is incorrect, please explain by Tuesday, November 13, 2018.

**RFP No. 5** seeks "[a]ny communications, agreements, or policies (including each updated or amended version thereof) that Facebook distributed or made available to its users about privacy or user data since November 2009."[1]

Facebook stated that it does not believe Pretrial Order No. 11 provided for the production of "communications" between Facebook and users. After Plaintiffs noted that it had found publicly available responsive policies that Facebook failed to produce, Facebook acknowledged that it had located policies it had not previously produced. Facebook indicated that it would not be producing those documents but, rather, would be including polices not yet produced as exhibits in support of its motion to dismiss. *See* Declaration of Michael Duffey in Support of Facebook's Motion to Dismiss. ECF 187.

Plaintiffs reassert that the Court clearly indicated in PTO 11 that communications with users about privacy or user data should be produced. Please explain whether or not Facebook itself has maintained a complete set of its communications with users. This would include any messages sent to users following the Cambridge Analytica scandal. Please provide these documents no later than Friday, November 16, 2018.

### 3. Supplemental Production

####   a. **Plaintiffs' RFPs**

In light of Facebook's statement that it conducted a "reasonable search of documents" limited to only those documents collected and produced to regulators, in order to expedite discovery and ensure production by September 7, 2018, Plaintiffs asked when Facebook would provide supplemental productions. Facebook responded that it did not understand that Plaintiffs had requested supplemental discovery despite that Plaintiffs' discovery request instructions state, "This is a continuing request for the production of documents and requires supplemental responses as provided for in the Federal Rules of Civil Procedure." *See* Plaintiffs' First Set of RFPs to Facebook, at 1, ¶ 4. Facebook's assertion that it has no ongoing obligation to supplement its production is not well taken. Plaintiffs seek all remaining responsive documents not included in the September 7, 2018 production, and ask that they be produced no later than November 16, 2018.

---

[1] Pretrial Order No. 11 states: "(v) any communications, agreements, or policies (including each updated or amended version thereof) that Facebook distributed or made available to users about privacy or user data since November 2009." ECF 130.

4

Joshua Lipshutz, Esq.  KELLER ROHRBACK L.L.P.
November 8, 2018  BLEICHMAR FONTI & AULD LLP

b. **Business Partners**

By letter dated October 12, 2018, Plaintiffs sought production from Facebook relating to the 52 business partners identified to Congress. Plaintiffs dispute that Facebook is not obligated to produce these materials and will raise this matter with the Court.

c. **PricewaterhouseCoopers LLP's Independent Assessor Reports**

Pursuant to the terms of the Consent Decree imposed by the Federal Trade Commission upon Facebook, Facebook engaged PricewaterhouseCoopers LLP ("PwC") to prepare biannual assessment reports relating to Facebook's handling of user content and information. Copies of heavily redacted reports are available in the public domain.

Plaintiffs asked Facebook to produce the unredacted Independent Assessor Reports on Facebook Privacy Programs created by PwC.[2] Facebook said it would evaluate this request and would provide Plaintiffs with a response to their request. Plaintiffs intend to move for permission to seek limited immediate discovery within the scope established by Pretrial Order No.11 from third party PwC. Please advise whether Facebook will oppose Plaintiffs' submission.

We remain available to meet and confer with you regarding any of these issues; however, should we not receive information responsive to the requests regarding Plaintiffs' September 7th, production by November 16, 2018, we will move to compel.

Regards,

Derek W. Loeser

dloeser@kellerrohrback.com

Lesley E. Weaver

lweaver@bfalaw.com

---

[2] These Reports include the following periods: (a) February 12, 2015 to February 11, 2017; (b) February 12, 2013 to February 11, 2015; and (c) February 12, 2011 to February 11, 2013.

5