# EXHIBIT A

2019 WL 1906087
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Christina MELITO, individually and on behalf
of all others similarly situated, Ryan Metzger,
Alison Pierce, Gene Ellis, Walter Wood,
Christopher Legg, on behalf of himself and all
others similarly situated, Plaintiffs–Appellees,
American Eagle Outfitters, Inc., a Delaware
Corporation, AEO Management Co, a
Delaware Corporation, Defendants–
Third-Party-Plaintiffs–Appellees,
v.
EXPERIAN MARKETING SOLUTIONS,
INC., Consolidated Defendant–
Third-Party-Defendant–Appellant,
Kara Bowes, Objector–Appellant,
eBay Enterprise, Inc., fka eBay Enterprise
Marketing Solutions, Inc., Defendant.

Docket Nos. 17-3277-cv (L), 17-3279-cv (Con)
|
August Term, 2018
|
Argued: November 5, 2018
|
Decided: April 30, 2019

**Synopsis**
**Background:** Persons who received unsolicited spam
text messages sent from or on behalf of retailer
filed putative class-action lawsuit against retailer and
marketer, claiming those text messages were sent in
violation of Telephone Consumer Protection Act (TCPA).
Retailer brought third party claims against marketer for
contractual indemnity, breach of contract, common-law
indemnity, and negligence based on marketer's handling
of alleged spam text messages. The United States District
Court for the Southern District of New York, No. 14-
cv-2440, Valerie E. Caproni, J., 2017 WL 3995619 and
2017 WL 6403883, approved settlement and certified
settlement class. Third-party defendant and class member
appealed.

**Holdings:** The Court of Appeals, Hall, Circuit Judge, held
that:

[1] non-settling third-party defendant did not have
standing to object on appeal to defendant's decision to
settle its dispute with plaintiffs;

[2] receipt of unsolicited text messages, sans any other
injury, was sufficient to demonstrate injury-in-fact in
action under TCPA, as required for Article III standing;
and

[3] district court did not abuse its discretion in determining
that $ 14.5 million settlement was fair, adequate, and
reasonable.

Affirmed in part and dismissed in part.

West Headnotes (15)

**[1]    Compromise and Settlement**
          👉 Fairness, adequacy, and reasonableness
          The factors for determining whether a class
          action settlement is fair, adequate, and
          reasonable are (1) the complexity, expense
          and likely duration of the litigation; (2)
          the reaction of the class to the settlement;
          (3) the stage of the proceedings and the
          amount of discovery completed; (4) the
          risks of establishing liability; (5) the risks
          of establishing damages; (6) the risks of
          maintaining the class action through the
          trial; (7) the ability of the defendants to
          withstand a greater judgment; (8) the range
          of reasonableness of the settlement fund in light
          of the best possible recovery; and (9) the range
          of reasonableness of the settlement fund to a
          possible recovery in light of all the attendant
          risks of litigation. Fed. R. Civ. P. 23.

          Cases that cite this headnote

**[2]    Federal Courts**
          👉 Standing

The issue of whether nonsettling parties have standing to bring an appeal is reviewed de novo. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

**[3]    Federal Courts**
    👈 **Particular persons**

Non-settling third-party defendant did not have standing to object on appeal to defendant's decision to settle its dispute with plaintiffs, since settlement in itself did not purport to deprive third-party defendant of its right to raise any of its defenses in third-party action or otherwise formally strip third-party defendant of any claim or defense.

Cases that cite this headnote

**[4]    Compromise and Settlement**
    👈 **Class, existence and determination;**
parties

Although a third-party defendant cannot be made to indemnify a defendant for nonexistent liability, it is not entitled to object to that defendant's decision to settle a claim made against it.

Cases that cite this headnote

**[5]    Compromise and Settlement**
    👈 **Class, existence and determination;**
parties

**Indemnity**
    👈 **Defenses**

Should a defendant, having settled its claim, pursue its action for indemnity against a third-party defendant, the latter may raise any defenses that it has, including any argument the defendant could have raised that it was not liable in the first place, but unless the settlement agreement itself purports to strip the third-party defendant of its defenses, all of that must await the development of the third-party action.

Cases that cite this headnote

**[6]    Federal Courts**
    👈 **Determination of question of jurisdiction**

**Federal Courts**
    👈 **Jurisdiction, venue, and forum non**
conveniens

The Court of Appeals on appeal has an independent obligation to satisfy itself of its jurisdiction and the court below. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

**[7]    Federal Courts**
    👈 **Standing**

A district court's decision as to a plaintiff's standing to sue based on the allegations of the complaint and the undisputed facts evidenced in the record is reviewed de novo. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

**[8]    Federal Civil Procedure**
    👈 **In general;injury or interest**

Standing to sue limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

**[9]    Federal Civil Procedure**
    👈 **In general;injury or interest**

**Federal Civil Procedure**
    👈 **Causation;redressability**

To satisfy Article III standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

**[10]    Federal Civil Procedure**
    👈 **In general;injury or interest**

A plaintiff establishes Article III injury in fact if he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

[11]  **Telecommunications**
    🔑 Persons entitled to sue

Receipt of unsolicited text messages, sans any other injury, was sufficient to demonstrate injury-in-fact in action under TCPA, as required for Article III standing, since nuisance and privacy invasion attendant on spam texts were very harms with which Congress was concerned when enacting TCPA and causes of action to remedy such injuries traditionally were regarded as providing bases for lawsuits in English or American courts. U.S. Const. art. 3, § 2, cl. 1; Communications Act of 1934 § 227, 47 U.S.C.A. § 227.

Cases that cite this headnote

[12]  **Federal Civil Procedure**
    🔑 In general; injury or interest

In determining whether an intangible harm, constitutes Article III injury in fact, both history and the judgment of Congress play important roles, although this does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. U.S. Const. art. 3, § 2, cl. 1.

Cases that cite this headnote

[13]  **Federal Courts**
    🔑 Class actions

Challenges to the fairness of a class settlement are reviewed for abuse of discretion. Fed. R. Civ. P. 23.

Cases that cite this headnote

[14]  **Compromise and Settlement**
    🔑 Particular applications

District court did not abuse its discretion in determining that $ 14.5 million settlement in class action against retailer, claiming that unsolicited text messages were sent in violation of Telephone Consumer Protection Act (TCPA), was fair, adequate, and reasonable; although one member herself stood to recover nearly $ 90,000 and retailer had ability to withstand greater judgment, litigation risks were real on both the law and facts. Communications Act of 1934 § 227, 47 U.S.C.A. § 227; Fed. R. Civ. P. 23.

Cases that cite this headnote

[15]  **Compromise and Settlement**
    🔑 Discharge from Liability

Class action releases may include claims not presented and even those that could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct. Fed. R. Civ. P. 23.

Cases that cite this headnote

Appeal from the United States District Court for the Southern District of New York, No. 14-cv-2440 – Valerie E. Caproni, *Judge*.

**Attorneys and Law Firms**

Meir Feder, Jones Day, New York, NY (John A. Vogt, Jones Day, Irvine CA, on the brief), for Consolidated Defendant–Third-Party-Defendant–Appellant Experian Marketing Solutions, Inc.

Eric Alan Isaacson, Law Office of Eric Alan Isaacson, La Jolla, CA (C. Benjamin Nutley, Pasadena, CA, on the brief), for Objector–Appellant Kara Bowes.

Beth E. Terrell, Terrell Marshall Law Group PLLC, Seattle, WA (Joseph A. Fitapelli, Fitapelli & Schaffer, LLP, New York, NY, on the brief), for Plaintiffs–Appellees.

Before: Hall and Lynch, Circuit Judges, and Engelmayer, District Judge. [*]

**Opinion**

Hall, Circuit Judge:

**\*1** Plaintiffs each received unsolicited spam text messages sent from or on behalf of American Eagle Outfitters ("AEO"). They then filed a putative class-action lawsuit against AEO, claiming that these text messages were sent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs alleged no injury other than the receipt of the unwanted texts.

Plaintiffs and AEO agreed to settle the class action and moved in district court for approval of the settlement and certification of the settlement class. Third-party defendant Experian Marketing Solutions, Inc. ("Experian") objected to certification, arguing that Plaintiffs lacked standing under *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Class member Kara Bowes objected to the class settlement as unfair. The district court (Caproni, *J.*) approved the settlement and certified the settlement class, and Experian and Bowes appeal.

The principal question we are tasked with deciding is whether Plaintiffs' receipt of the unsolicited text messages, sans any other injury, is sufficient to demonstrate injury-in-fact. We hold that it is. First, the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA. Second, history confirms that causes of action to remedy such injuries were traditionally regarded as providing bases for lawsuits in English or American courts. Plaintiffs were therefore not required to demonstrate any additional harm. Having concluded that Plaintiffs have satisfied Article III's standing requirement, we dismiss Experian's appeal for lack of appellate jurisdiction and affirm the judgment of the district court with respect to Bowes's appeal.

## I.

"In the interest of reducing the volume of unwanted telemarketing calls, the Telephone Consumer Protection Act, in relevant part, makes it 'unlawful ... to make

any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ ("ATDS") ] ... to any telephone number assigned to a ... cellular telephone service, ... unless such call is made solely to or guaranteed by the United States.' " *King v. Time Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). In enacting the Act, Congress found that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy" and that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] ... is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, §§ 5, 12, 105 Stat. 2394 (1991).

The TCPA delegated the authority to implement these requirements to the Federal Communications Commission (the "FCC"). *See* 47 U.S.C. § 227(b)(2). Although text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 14014, 14115 (July 3, 2003); *see also Campbell-Ewald Co. v. Gomez*, —— U.S. ——, 136 S.Ct. 663, 667, 193 L.Ed.2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).").[1]

**\*2** The TCPA provides for statutory damages of $ 500 per violation, which can be trebled "[i]f the court finds that the defendant willfully or knowingly violated" the statute. 47 U.S.C. § 227(b)(1)(A)(iii).

## A.

Plaintiffs Christina Melito, Christopher Legg, Alison Pierce, and Walter Wood (collectively, "Plaintiffs") brought a putative class-action lawsuit against American Eagle Outfitters, AEO Management Co. (collectively, "AEO"), and Experian Marketing Solutions, Inc. ("Experian"). Plaintiffs alleged that Experian, acting on behalf of AEO, sent spam text messages to their phones using an ATDS platform designed by nonparty Archer USA, Inc. Plaintiffs alleged only that they received the unconsented-to messages in violation of the TCPA.

The district court dismissed the claims against Experian, and AEO filed a third-party complaint against Experian, claiming contractual indemnity, breach of contract, common-law indemnity, and negligence based on Experian's handling of the alleged spam text messages.

Experian moved to dismiss the class-action complaint for lack of subject-matter jurisdiction. According to Experian, all of AEO's claims against it were derivative of Plaintiffs' claims against AEO. Therefore, Experian argued, pursuant to Federal Rule of Civil Procedure 14(a)(2)(c), it could assert any defense that AEO would have had against the Plaintiffs' claims. Experian asserted that Plaintiffs lacked standing under *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), because they alleged only a bare statutory violation and statutory damages cannot substitute for concrete harm. While Experian's motion was pending, Plaintiffs and AEO filed a notice of conditional settlement. The district court then denied Experian's motion as moot.

B.

Plaintiffs moved for preliminary approval of the class settlement and conditional certification of the settlement class. The district court granted the motion and conditionally certified the following class:

> The approximate[ly] 618,289 persons who, on or after April 8, 2010 and through and including the date of entry of the Preliminary Approval Order, received a text message from AEO or any entity acting on its behalf, to her or his [sic] unique cellular telephone number, and who did not provide AEO with appropriate consent under the TCPA. Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family, and all persons

who are validly excluded from the Settlement Class.

Sp. App. 3. The court appointed a claims administrator who compiled a list of class members consisting of 618,301 unique phone numbers. [2] The administrator provided class notice via email or postcard to those members for whom he had addresses and posted notice regarding the class settlement on a website. The notices explained the nature of the lawsuit. They informed the recipients that AEO had agreed to pay a total of $ 14,500,000 and explained that, after attorneys' fees, costs, and potential service awards, each claimant could expect to receive between $ 142 and $ 285. Further, the notices informed the class members that they could withdraw or object and explained how to do so.

**\*3** As relevant here, two objections were received. Experian objected to class certification, arguing that Plaintiffs failed adequately to allege injury, not all class members may have received text messages from an ATDS, and the class was unascertainable. Kara Bowes, a class member, objected to the reasonableness of the settlement, arguing that the award was too low, the notice was inadequate, and incentive awards were inappropriate.

C.

After a final approval hearing, the district court entered a final order approving the settlement. The court explained its reasoning in a subsequent memorandum. It first concluded, for the following reasons, that Plaintiffs did not lack standing. Under *Spokeo*, "alleging only a statutory violation, without alleging any *additional* harm *beyond* the one Congress has identified could be sufficient to establish a concrete injury," and "unwanted and unauthorized telephone contact by an automated system is precisely the harm that Congress was trying to avoid when it enacted the TCPA." Sp. App. 32 (internal quotation marks, citation, and alteration omitted).

The court then went on to conclude that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) were satisfied. With respect to Experian's ascertainability objection, the court ruled that Experian lacked standing to object because it was a nonsettling third-party defendant. Moreover, even if Experian did have standing to object,

its objection was meritless because the settling class was clearly ascertainable.

[1] Regarding the settlement, the district court determined that it was fair, adequate, and reasonable. In doing so, it analyzed the nine factors under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and concluded that all but one (the ability of AEO to withstand a greater judgment) weighed in favor of approving the settlement.[3] The district court overruled Bowes's objection to the adequacy of the settlement amount, noting that she overlooked the very real litigation risks that Plaintiffs would have faced. The court then concluded that notice was adequate and that attorneys' fees, costs, and an incentive award were appropriate. It entered an amended final order, certifying under Federal Rule of Civil Procedure 54(b) that there was "no just reason for delay of enforcement or appeal of the Final Approval Order." Sp. App. 62–63. These consolidated appeals follow.

II.

On appeal, Experian argues that it has standing to pursue its appeal of the district court's class-certification ruling and that, regardless of Experian's standing to appeal, Plaintiffs lack standing under *Spokeo* to bring this action. For her part, Bowes joins Experian's argument that Plaintiffs lack standing under *Spokeo*, albeit for different reasons, and additionally raises a host of challenges to the district court's approval of the class settlement. We first address Experian's standing to appeal. Next, we assure ourselves of our own (and the district court's) subject-matter jurisdiction. Finally, we turn to Bowes's class-settlement challenges.

A.

*4 [2] [3] "[W]e review *de novo* the issue of whether [nonsettling parties] have standing to bring this appeal." *Bhatia v. Piedrahita*, 756 F.3d 211, 217 (2d Cir. 2014) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 262 (2d Cir. 2006); *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004)). Plaintiffs urge that, as a nonsettling party, Experian lacks standing to appeal. Plaintiffs rely primarily, as did the district court, on *Bhatia*, in which we held that nonsettling defendants in a putative class

action did not have standing to challenge a provision in a settlement agreement that allegedly barred those defendants' rights. *Bhatia*, 756 F.3d at 215–16.

In *Bhatia*, we "observed that a non-settling defendant generally lacks standing to object to a court order approving a partial settlement because a non-settling defendant is ordinarily not affected by such a settlement." *Id.* at 218. We noted, however, an exception to the general rule: a nonsettling codefendant could appeal "where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.* We further explained that such prejudice "exists only in those rare circumstances when, for example, the settlement agreement *formally* strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Id.* Here, the district court concluded that Experian could not demonstrate formal legal prejudice because, although the court's approval of the settlement would necessarily decide the *Spokeo* issue against Experian, Experian had at least had an opportunity to press its argument.

Experian protests that a third-party defendant is a different creature than a codefendant. It relies on Rule 14's provision that a third-party defendant may "assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim," Fed. R. Civ. P. 14(a)(2)(C), to argue that, as a third-party defendant, it "enjoy[s] a broad range of procedural rights designed to protect [its] interests and ensure that [it is] not prejudiced by the original defendant's failure to exercise its rights." Experian Br. at 18. Among these rights, Experian insists, is the right to appeal a judgment against the original defendant. *See Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 738 n.1 (5th Cir. 1980).

While true enough, this argument misses the point. Experian still can appeal the district court's conclusion that Plaintiffs satisfied *Spokeo*—just not yet. As in *Kicklighter*, on which Experian relies, Experian can challenge that ruling on appeal from a final judgment *in the third-party proceeding. See id.* (noting that "it logically follows that the third-party defendant may assert on appeal errors in the main case" where the third-party defendant was appealing from a judgment entered in the third-party case).

**[4]**    **[5]**   In other words, that a third-party defendant cannot be made to indemnify a defendant for nonexistent liability does not entitle it to object to that defendant's decision to settle a claim made against it. Should the defendant, having settled its claim, pursue its action for indemnity against the third-party defendant, the latter may raise any defenses that it has, including any argument the defendant could have raised that it was not liable in the first place. But unless the settlement agreement itself purports to strip the third-party defendant of its defenses, all of that must await the development of the third-party action. Because the settlement in itself does not purport to deprive Experian of its right to raise any of its defenses in the third-party action, it lacks standing to object to AEO's decision to settle its dispute with Plaintiffs.

**\*5**   Accordingly, because Experian has not been "*formally* strip[ped]" of any claim or defense, it lacks standing to pursue its appeal, *see Bhatia*, 756 F.3d at 218, [4] which we therefore must dismiss. But as we discuss below, that does not mean that we are free to ignore the jurisdictional issue Experian raises.

Having concluded that Experian lacks standing to appeal, we next turn to whether Plaintiffs nonetheless lack standing to bring this case.

### B.

**[6]**    **[7]**   Experian asserts that, regardless of its standing to challenge Plaintiffs' standing, we must reach the *Spokeo* issue. We agree. It is fundamental that we have an "independent obligation to satisfy ourselves of the jurisdiction of this court and the court below." *In re Methyl Tertiary Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 121 (2d Cir. 2007). "We review *de novo* a [district court's] decision as to a plaintiff's standing to sue based on the allegations of the complaint and the undisputed facts evidenced in the record." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84–85 (2d Cir. 2014). We therefore proceed to address the question of Plaintiffs' standing to bring the underlying action. Because Experian's brief helpfully advances the argument that they do not, we treat that brief as, in effect, an *amicus curiae* submission and address the standing question in part through the lens of the arguments Experian presents.

**[8]**    **[9]**    **[10]**   Article III limits federal judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, and standing to sue "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong," *Spokeo*, 136 S.Ct. at 1547. To satisfy Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* A plaintiff establishes injury in fact if he suffered " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

**[11]**    **[12]**   Experian contends that Plaintiffs lack standing because they failed to allege a "concrete" injury in fact. We disagree. "In determining whether an intangible harm," as alleged here, "constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. To be sure, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Despite Experian's contrary protestations, however, Plaintiffs here do not "allege a bare procedural violation, divorced from any concrete harm." *Id.*

**\*6**   First, Plaintiffs allege "the very injury [the TCPA] is intended to prevent." *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (internal quotation marks omitted). As noted above, "nuisance and privacy invasion" were the harms Congress identified when enacting the TCPA. Pub. L. No. 102-243, §§ 5, 12. And text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same "nuisance and privacy invasion" envisioned by Congress when it enacted the TCPA. [5] *See id.*

Second, this injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English and American Courts." *See Spokeo*, 136 S.Ct. at 1549. As both the Ninth and Third Circuits have noted, the harms Congress sought to alleviate through passage of the TCPA closely relate to traditional claims, including claims for "invasions of privacy, intrusion upon

seclusion, and nuisance." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Susinno*, 862 F.3d at 351–52 (focusing on intrusion upon seclusion); *see also* Restatement (Second) of Torts § 652B (Am. Law Inst. 1977) (discussing intrusion upon seclusion). Neither Experian nor Bowes meaningfully contend otherwise, and we see no reason to diverge from our sister circuits on this point.

Because Plaintiffs have demonstrated a harm directly identified by Congress and of the same character as harms remediable by traditional causes of action, the district court correctly concluded that they "need not allege any *additional* harm beyond the one Congress has identified." *See Spokeo*, 136 S.Ct. at 1549. Experian protests this conclusion at length, relying on decisions including ours in *Katz v. Donna Karan Co., LLC*, 872 F.3d 114 (2d Cir. 2017), and *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016). These cases, however, concern the *risk* of harms attendant a statutory violation. *See, e.g., Katz*, 872 F.3d at 116–17 (no standing to pursue Fair and Accurate Credit Transactions Act claim because defendants' stores' provision of receipt containing first six digits of credit card did not necessarily entail "any consequence that stemmed from the display" of those numbers); *Strubel*, 842 F.3d at 188–95 (distinguishing between notice deficiencies that created a concrete and personal risk of harm and those creating only a general risk of harm). Here, by contrast, the receipt of unwanted advertisements *is itself* the harm.

 **\*7** Experian also contends that even the cases on which Plaintiffs rely involved allegations of harm beyond a statutory violation. For instance, Experian observes that the plaintiff in *Van Patten* alleged that the text messages sent by the defendants caused "actual harm, including the aggravation that necessarily accompanies wireless spam and that consumers pay their cell phone service providers for the receipt of such wireless spam." *See Van Patten*, 847 F.3d at 1041 (internal quotation marks omitted). This is inaccurate and irrelevant. First, the allegations to which Experian points concern harms that general "consumers" experienced; the only allegation of harm personal to the plaintiff that the Ninth Circuit noted was "that he received two text messages." *Id.* Second, and in any event, the Ninth Circuit's analysis in no way relied on allegations of harm beyond the statutory violations. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under

the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.' " *Id.* at 1043 (quoting *Spokeo*, 136 S.Ct. at 1549; *see also Susinno*, 862 F.3d at 352 ("For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo* .... Because we so hold, we need not address her additional arguments that her various tangible injuries provide alternative grounds for standing.")). [6]

Bowes purports additionally to raise a factual challenge to Plaintiffs' standing under *Spokeo*. Unlike Experian, she concedes that Plaintiffs have adequately alleged standing but protests that they have proffered no evidence in support thereof and urges that such evidence is required at the class-certification stage. *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F.Supp.3d 430, 530–31 (S.D.N.Y. 2018) (observing that "class certification does not always fit neatly into [*Lujan*'s] framework," which allows plaintiffs to rely on their allegations at the pleading stage but requires evidence in response to a motion for summary judgment). We have our doubts as to whether Bowes's challenge is properly considered a factual challenge as opposed to a facial challenge: her evidence that she received unsolicited text messages in no way calls into question Plaintiffs' allegations that they did as well. *See, e.g., Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("On appeal, we review the district court's decision on such a facial challenge *de novo*, accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff." (internal quotation marks, citations, and alterations omitted)); *accord John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). In any event, Plaintiffs have moved to supplement the appendix with evidence, submitted under seal in the district court, demonstrating that they did in fact receive the text messages in question. That motion is GRANTED. Thus, we need not, and do not, decide whether plaintiffs generally may rely on allegations in their complaint to establish standing at the class-certification stage. [7]

 **\*8** Accordingly, we hold that Plaintiffs have demonstrated injury-in-fact as required by Article III and that the district court therefore did not lack subject-matter jurisdiction. Having satisfied ourselves of our and the district court's jurisdiction, we turn finally to Bowes's challenges to the class settlement.

C.

**[13]** Bowes presses a potpourri of challenges to the fairness of the class settlement, each of which we review for abuse of discretion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Denney*, 443 F.3d at 263 (class notice); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d Cir. 2005) (discovery rulings); *Lobur v. Parker*, 378 F. App'x 63, 65 (2d Cir. 2010) (summary order) (incentive awards). We address them in turn.

First, Bowes argues that class notice was insufficient because it did not inform the class members of the potential payout if the case went to trial. To the contrary, our review of the record demonstrates that the class notice "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that [were] open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

**[14]** Second, Bowes argues that the district court erred in its weighing of the nine *Grinnell Corp.* factors. We disagree. The court carefully analyzed each of the factors. Bowes essentially argues that the settlement was just not enough. She contends that she herself stood to recover nearly $ 90,000, and that the "paltry" $ 14.5 million settlement could therefore in no way be reasonable, especially given the district court's purported failure to address AEO's ability to withstand a greater judgment. Bowes understandably believes that the number arrived at is insufficient given what she allegedly stood to collect. But the litigation risks in this case were real on both the law and the facts. Because of those uncertainties, it cannot be said "that the district court's well-reasoned conclusion constituted an abuse of discretion, especially given the deference we accord to trial courts in these situations." *See Charron v. Wiener*, 731 F.3d 241, 248 (2d Cir. 2013).

**[15]** Third, Bowes faults the district court for accepting a settlement that purports to release liability for claims accruing after the class period. But "[t]he law is well established in this Circuit and others that class action releases may include claims not presented and even

those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart*, 396 F.3d at 107 (quoting *TBK Partners, Ltd. v. W. Union Corp*, 675 F.2d 456, 460 (2d Cir. 1982)). Bowes does not realistically argue that text messages sent after the class period, as opposed to those sent during, are somehow different.

Fourth, Bowes contends that incentive bonuses here are unlawful, given that the case involves common funds. The cases cited by Bowes for this proposition are inapposite. Neither *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), nor *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881), provide factual settings akin to those here. *See Muransky v. Godiva Chocolatier, Inc.*, ––– F.3d –––, 2019 WL 1760292, at *14–15 (11th Cir. 2019) (summarily rejecting the same argument by Bowes's counsel as an objector).

**\*9** Fifth and finally, Bowes accuses the district court of "concealing" deposition transcripts of Plaintiffs in this case. But Bowes provided below (and has provided here) no reason why those transcripts are relevant to her settlement objections.[8] *See Wal-Mart*, 396 F.3d at 120 ("Generally, such a discovery request depends on 'whether or not the District Court had before it sufficient facts intelligently to approve the settlement offer. If it did, then there is no reason to hold an additional hearing on the settlement or to give appellants authority to renew discovery.' " (quoting *Grinnell Corp.*, 495 F.2d at 462–63)).

CONCLUSION

For the foregoing reasons, we hold that (1) Experian lacks standing to pursue its appeal, (2) Plaintiffs satisfied Article III's injury-in-fact requirement, and (3) the district court acted within its discretion in approving the class settlement. We DISMISS Experian's appeal and otherwise AFFIRM the judgment of the district court.

**All Citations**

--- F.3d ----, 2019 WL 1906087

Footnotes

\*    Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

1   In *Campbell-Ewald*, the parties did not dispute that text messages were covered based on prior Ninth Circuit precedent deferring to the FCC's interpretation of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952–54 (9th Cir. 2009).

2   The list of class members was submitted under seal in the district court. Plaintiffs have moved to supplement the appendix on appeal with redacted portions of the list showing that they are indeed among the class members.

3   The factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell Corp.*, 495 F.2d at 463 (citations omitted).

4   The other sources cited by Experian are in accord with our conclusion. Experian cites to 6 Fed. Prac. & Proc. Civ. § 1463 n.21 (3d ed.), for the proposition that "[t]he third-party defendant should be able to appeal from a judgment on the original claim against the third-party plaintiff ... since if no liability were established between the original plaintiff and defendant then the claim for secondary liability no longer would exist." However, the case citation supporting that footnote is *Tejas Dev. Co. v. McGough Bros.*, 167 F.2d 268 (5th Cir. 1948), a case where the main claims and third-party claims were tried together. *Accord United States for Use of Barber-Colman Co. v. U.S. Fid. & Guar. Co.*, 19 F.3d 1431 (4th Cir. 1994) (per curiam).

5   Experian argues in passing that it was the FCC, not Congress, that interpreted the TCPA to cover text messages. True, but irrelevant. We need not consider the impact of the FCC's interpretation of the TCPA, or whether the Hobbs Act bars our jurisdiction to consider that interpretation, *see* 28 U.S.C. §§ 2342, 2343; *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459 (4th Cir.), *cert. granted*, ––– U.S. ––––, 139 S.Ct. 478, 202 L.Ed.2d 374 (2018) (mem.); *Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 n.2 (2d Cir. 2014) (per curiam) ("Since neither party actually challenges the FCC's interpretation of the TCPA, we need not decide the extent to which the Administrative Orders Review Act, also known as the 'Hobbs Act,' limits our jurisdiction to review that interpretation."), because this argument concerns whether Plaintiffs have a cause of action under the TCPA, not whether a federal court has subject-matter jurisdiction over the action. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 & n.4, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014).

6   Experian's remaining arguments—whether the text messages in question were actually sent by an ATDS, whether absent class members ineffectively revoked consent, and whether the class is unascertainable—though framed as challenges to the district court's subject-matter jurisdiction, actually attack the merits of Plaintiffs' claims. Accordingly, we do not reach these issue.

7   Although Experian opposes the motion to supplement the appendix, its opposition relies on an understanding of *Spokeo*'s injury-in-fact requirement that we reject. Bowes also opposes the motion, but her objections are meritless. For instance, Bowes complains that the list provided by Plaintiffs does not include two of the named plaintiffs. To be sure, Plaintiffs' motion to supplement incorrectly lists six, rather than four, named plaintiffs. But as the operative complaint and settlement make clear, two of these individuals are no longer proceeding as named plaintiffs on behalf of the class. *See, e.g.*, App. 51. Finally, in a post-argument letter, Bowes called this Court's attention to the recent Supreme Court decision in *Frank v. Gaos*, ––– U.S. ––––, 139 S.Ct. 1041, ––– L.Ed.2d ––– (2019). But *Frank* merely reaffirms the holding of *Spokeo* and remands for the district court to reconsider the standing of the plaintiffs there. Nothing in *Frank* alters or elaborates on the *Spokeo* doctrine or casts any doubt on our analysis of the standing issue.

8   To the extent Bowes has argued that the deposition transcripts were relevant to her challenge to Plaintiffs' standing, this argument is unavailing given our disposition of that issue in this case.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   10