Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom 4, 17th Floor<br>Hearing Date:  November 14, 2019<br>Hearing Time:  10:00 a.m. |

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

## TABLE OF CONTENTS
I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARD ...................................................................................................... 1

III. ARGUMENT .................................................................................................................... 2

    A. **There Are Substantial Grounds For Difference of Opinion Regarding Plaintiffs' Article III Standing to Sue.** ....................................................... 2

    B. **The Order Raises Controlling Questions of Law, Resolution of Which Will Materially Advance the Litigation's Ultimate Termination** ................................... 7

IV. CONCLUSION ................................................................................................................. 8

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antman v. Uber Techs., Inc.*,
   2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ................................................................................2

*Asis Internet Servs. v. Active Response Grp.*,
   2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ....................................................................2, 7, 8

*Basset v. ABM Parking Servs., Inc.*,
   883 F.3d 776 (9th Cir. 2018) ........................................................................................................5

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ........................................................................................................6

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) ..........................................................................................1, 2, 7, 8

*Couch v. Telescope, Inc.*,
   611 F.3d 629 (9th Cir. 2010) ........................................................................................................2

*Deutsche Bank Nat'l Trust v. F.D.I.C.*,
   854 F. Supp. 2d 756 (C.D. Cal. 2011) ..........................................................................................2

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ................................................................................6

*Eichenberger v. ESPN*,
   876 F.3d 979 (9th Cir. 2017) ........................................................................................................5

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) .........................................................................................................1, 3, 4

*In re Google, Inc. Privacy Policy Litigation*,
   2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) .............................................................................3

*Hancock v. Urban Outfitters, Inc.*,
   830 F.3d 511 (D.C. Cir. 2016) .....................................................................................................6

*Heaton v. Social Fin., Inc.*,
   2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ................................................................................6

*In re iPhone Application Litigation*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................................................3

*Jeffries v. Volume Servs. Am., Inc.*,
   928 F.3d 1059 (D.C. Cir. 2019) ...................................................................................................5

Gibson, Dunn &
Crutcher LLP

ii

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

*Kamal v. J. Crew Grp., Inc.*,
    918 F.3d 102 (3d Cir. 2019).................................................................................................6

*Katz v. Donna Karan Co.*,
    872 F.3d 114 (2d Cir. 2017).................................................................................................6

*LaCourt v. Specific Media, Inc.*,
    2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .....................................................................3

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
    921 F. Supp. 2d 1059 (D. Haw. 2013) .................................................................................8

*U.S. ex rel. Madden v. Gen. Dynamics Corp.*,
    4 F.3d 827 (9th Cir. 1993)....................................................................................................7

*McMichael v. Napa Cty.*,
    702 F.2d 1268 (9th Cir. 1983)..............................................................................................7

*McShannock v. JP Morgan Chase Bank N.A.*,
    2019 WL 955289 (N.D. Cal. Feb. 27, 2019)........................................................................3

*Muransky v. Godiva Chocolatier, Inc.*,
    922 F.3d 1175 (11th Cir. 2019)............................................................................................6

*Patel v. Facebook*,
    932 F.3d 1264 (9th Cir. 2019)..............................................................................................4

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)................................................................................................2

*Ritz Camera & Image LLC v. Sandisk Corp.*,
    2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) ...............................................................2, 7, 8

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017)..............................................................................................1

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019)............................................................................................6

*Spokeo, Inc.* v. *Robins*,
    136 S. Ct. 1540 (2016) .........................................................................................................3

*U.S. Rubber Co. v. Wright*,
    359 F.2d 784 (9th Cir. 1966)............................................................................................2, 7

*Van Patten v. Vertical Fitness Group, LLC*,
    847 F.3d 1037 (9th Cir. 2017)..........................................................................................5, 6

*Wilton Miwok Rancheria v. Salazar*,
    2010 WL 693420 (N.D. Cal. Feb. 23, 2010)....................................................................7, 8

iii

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ................................................................................................ 6

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................................................ 1

Gibson, Dunn &
Crutcher LLP

iv
MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

## I.  INTRODUCTION

In its ruling on Facebook's motion to dismiss, this Court held that Plaintiffs did not sufficiently allege they suffered any economic harm or other tangible injury (Op. at 13), that the sharing of Plaintiffs' information did not plausibly result in a meaningfully heightened risk of identity theft (*id.*), and that Plaintiffs consented to their friends sharing their Facebook information with certain third parties, including "games, applications, and websites" (*id.* at 25-26).  Despite these rulings the Court determined that Plaintiffs adequately alleged "a simple 'privacy injury'" (*id.* at 13) arising from the mere disclosure of certain information to other third parties, and that this "privacy injury" "gives rise to Article III standing" "without [any] further consequences" (*id.* at 14).

Facebook respectfully requests that the Court certify its Article III standing analysis for interlocutory review under 28 U.S.C. § 1292(b).  The question whether alleged data privacy violations give rise to Article III standing is an evolving issue of increasing importance that already has drawn considerable attention from the nation's appellate courts, including the U.S. Supreme Court.  *See Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (remanding case involving settlement of claims that Google disclosed plaintiffs' search terms without consent in light of uncertainty regarding plaintiffs' Article III standing); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (*Spokeo II*) (noting that determining whether "intangible injuries . . . may be sufficient for Article III standing" is a "somewhat murky area").  And this Court's decision—that plaintiffs have standing to sue based on the alleged sharing of information that they shared on Facebook's platform, even in the absence of any further real-world consequences—stands in tension with decisions of the Supreme Court, the Ninth Circuit, other circuit courts, and other cases in this district.  Because there is a serious threshold question about Plaintiffs' standing to sue, the Ninth Circuit should have an opportunity to address that question before the parties undertake "protracted and expensive" litigation over the Plaintiffs' claims in this nationwide MDL.  *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026-27 (9th Cir. 1981).

## II.  LEGAL STANDARD

Certification of a non-final order for interlocutory appeal is appropriate where (i) an order involves a controlling question of law; (ii) there is a substantial ground for difference of opinion; and (iii) an immediate appeal may materially advance the termination of the litigation. 28 U.S.C. § 1292(b);

Gibson, Dunn & Crutcher LLP

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011); *Ritz Camera & Image LLC v. Sandisk Corp.*, 2011 WL 3957257, at *1 (N.D. Cal. Sept. 7, 2011) (certifying interlocutory appeal of order denying defendants' motion to dismiss for lack of standing); *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *1 (N.D. Cal. Sept. 16, 2008) (same).

"To determine if a 'substantial ground for difference of opinion' exists under section 1292(b), courts must examine the extent to which the controlling law is unclear." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Certification is appropriate if the appeal would involve "an issue over which reasonable judges might differ[.]" *Reese*, 643 F.3d at 688 (internal quotation marks omitted). Importantly, a "substantial ground for difference of opinion exists where reasonable jurists *might* disagree on an issue's resolution, not merely where they have already disagreed." *Id.* (emphasis added). "[N]ovel and difficult questions of first impression" generally provide "a substantial ground for difference of opinion." *Id.* (internal quotation marks omitted). "[F]or a question to be 'controlling'" "all that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement*, 673 F.3d at 1026; *see also Deutsche Bank Nat'l Trust v. F.D.I.C.*, 854 F. Supp. 2d 756, 768 (C.D. Cal. 2011). Under the section 1292(b) standard, interlocutory appeal is particularly appropriate where—as here—a successful appeal "would avoid protracted and expensive litigation." *In re Cement*, 673 F.2d at 1026 (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

### III.   ARGUMENT

**A.   There Are Substantial Grounds For Difference of Opinion Regarding Plaintiffs' Article III Standing to Sue.**

This Court held that Plaintiffs have Article III standing based on the alleged "disclosure of [their] sensitive private information, even without further consequence[.]" Op. at 14.[1] But other courts disagree, holding that Article III standing requires a showing of real-world consequences flowing from the sharing of data. *See, e.g., Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct.

---

[1] The allegations in this case involve information that Facebook users shared with others on the Facebook platform such as names, birthdays, education, photographs, status updates, and likes, Compl. ¶ 368; Op. at 7, but does not include information such as social security numbers, credit card numbers, or financial information.

Gibson, Dunn & Crutcher LLP

2

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

19, 2015) (holding there was no injury even where third party accessed plaintiffs' "personal information"); *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012) (holding that "Plaintiffs have not identified a concrete harm"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *4 (N.D. Cal. Sept. 20, 2011) (holding that plaintiffs failed to identify "what harm (if any) resulted from the access or tracking of their personal information"); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (holding that plaintiffs failed to show concrete harm "simply because their unspecified personal information was purportedly collected by a third party"). Indeed, in finding that the mere disclosure of information to certain third parties was sufficient to confer Article III standing in this case, this Court recognized that Facebook had "cite[d] a few cases that lean in the other direction." Op. at 15.[2]

Three years ago, in *Spokeo, Inc. v. Robins*, the Supreme Court addressed the circumstances in which intangible harms are sufficient to confer Article III standing to sue for statutory violations. 136 S. Ct. 1540, 1550 (2016). The Court emphasized that, for Article III purposes, any alleged intangible harm must be "concrete" and "actually exist," rather than being merely "abstract." *Id.* at 1548-50. In the wake of *Spokeo*, the question whether the alleged sharing of private information gives rise to Article III standing has been the subject of much debate in the appellate courts, including the U.S. Supreme Court and the Ninth Circuit. In *Frank v. Gaos*, 139 S. Ct. 1041 (2019), for example, the Supreme Court addressed whether the plaintiffs had Article III standing to assert a claim under the Stored Communications Act—one of the claims at issue here. The *Gaos* plaintiffs alleged that Google improperly and without consent shared with third parties all of the plaintiffs' private online search terms, which sometimes contained sensitive personal information. *Id.* at 1044; *see* Second Am. Compl., ECF No. 39 ¶ 89, No. 5:10-cv-04809-EJD (N.D. Cal. filed May 1, 2012). The United States took the position that it was "unclear" whether plaintiffs' allegations satisfied Article III because the plaintiffs did not "identify any particular injury that *actually resulted* from Google's conduct." U.S. Br. 14, *Frank v. Gaos*, Dkt. 17-961 (S. Ct. filed July 16, 2018) (emphasis added). The Supreme Court

---

[2] Even if the Court finds these decisions unpersuasive, a "divide in the district courts' treatment of th[e] issue . . . indicates the controlling law is unclear and illustrates that fair-minded jurists are in fact reaching contradictory conclusions." *McShannock v. JP Morgan Chase Bank N.A.*, 2019 WL 955289, at *2 (N.D. Cal. Feb. 27, 2019).

Gibson, Dunn & Crutcher LLP

3

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

ordered supplemental briefing on the standing issue and, at oral argument, several Justices questioned whether the plaintiffs had standing. Justice Breyer, for example, asked how "there was some kind of injury that would actually concretely and particularly hurt [the plaintiff] . . . [b]y somebody looking . . . at Google and discovering he made those searches[.]" Oral Arg. Tr. 20:9-16 (Oct. 31, 2018); *see also id*. 17:16-25, 20:24-25, 21:1-10 (Justice Gorsuch questioning whether plaintiffs had standing); *id.* 15:14-22 (same for Justice Kagan). The Court ultimately vacated and remanded the case for the Ninth Circuit to address the standing issue—and specifically whether the plaintiffs had suffered a harm that was "sufficiently concrete and particularized to support standing." *Id.* at 1046. If—as the Court concluded here—the mere sharing of private information was sufficient to constitute Article III injury, there would have been no need for supplemental briefing or a remand.[3]

Similarly, in *Patel v. Facebook*, 932 F.3d 1264 (9th Cir. 2019), the Ninth Circuit considered whether Facebook's use of facial recognition technology, allegedly in violation of the Illinois Biometric Privacy Act ("BIPA"), was enough for Article III standing. In considering "whether [such] an intangible injury is sufficiently concrete" for Article III purposes, the Court "consider[ed] both history and legislative judgment," *id*. at 1270, analyzed "the common law roots of the right to privacy," *id.* at 1271, and ultimately concluded that the Illinois General Assembly intended "'the statutory provisions at issue' in BIPA" "to protect an individual's 'concrete interests' in privacy," *id*. at 1274. As the Ninth Circuit's analysis shows, not every privacy violation is alike for Article III standing purposes, but rather must be judged in the context of analogous historical harms and legislative judgment.

The Ninth Circuit also is considering Facebook's petition for rehearing en banc in *Patel*—and has taken the uncommon step of ordering a response to the petition. Order, *Patel*, No. 18-15982 (9th Cir. Sept. 10, 2019), ECF No. 91. The petition has drawn considerable attention from *amici*, with four separate briefs being filed to discuss the important Article III considerations raised in the case. As these *amici* note, data privacy allegations raise important questions of Article III standing that require the Ninth Circuit's attention. The U.S. Chamber of Commerce, for example, explains that innovative

---

[3] *Gaos* also demonstrates that judicial economy weighs in favor of allowing interlocutory appeal to resolve the standing issue now. *Gaos* was litigated for nine years before the Supreme Court ordered the remand to clarify whether the plaintiffs have Article III standing. This Court can avoid similar inefficiencies and delay by allowing Facebook to take up the standing question now.

Gibson, Dunn & Crutcher LLP

4

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

companies face significant litigation risk if plaintiffs can "automatically support standing" whenever the case is "arguably related to privacy absent any real-world harm." Chamber of Commerce Br. 6; *see also* Consumer Data Indus. Ass'n Br. 4 (arguing that whether an alleged violation of "any statute that implicates privacy concerns" satisfies Article III should be decided by the full court); TechFreedom Br. 5 (examining history of privacy torts and concluding that an "alleged infringement of interests in controlling information available to others lacks constitutionally-required concreteness").

*Patel* is just the latest case in which the Ninth Circuit has grappled with alleged privacy violations and intangible harms. In several other cases, the Court carefully examined not only whether personal information was allegedly shared, but also allegations about the type of information that was shared, how it was shared, with whom it was shared, how the alleged sharing affected the plaintiffs, and whether a particular statute proscribed that precise type of sharing (and why)—all of which would have been unnecessary under this Court's logic. *See, e.g.*, *Basset v. ABM Parking Servs., Inc.*, 883 F.3d 776, 780 (9th Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Eichenberger v. ESPN*, 876 F.3d 979, 983 (9th Cir. 2017). In *Basset*, for example, the Ninth Circuit recognized that the inquiry into which privacy-based harms are sufficient for standing "can be a murky one." 883 F.3d at 782 n.2. The court held that a plaintiff whose credit card expiration date was wrongfully printed on a receipt did not suffer harm and could not bring a claim under the Fair Credit Reporting Act, despite the plaintiff's attempt to portray his harm as analogous to common law privacy torts. *Id.* at 780–83. The court focused on whether the publication of plaintiff's personal data was actually harmful to the plaintiff in the real world, *id.*, noting that although the statute might protect against "nondisclosure of a consumer's private financial information *to identity thieves*," *id.* at 782 (emphasis added), no such thief received the plaintiffs' information, and therefore the unlawful sharing of data "did not make an injury," *id.* at 783. Again, if the mere sharing of personal information were sufficient, the Court's analysis would have been unnecessary.

The Ninth Circuit is not alone in grappling with these challenging and evolving questions of data privacy standing; other federal circuit courts have "disagree[d]" when considering alleged privacy-based violations and intangible injuries. *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1069 (D.C. Cir. 2019) (Rogers, J., concurring in part and concurring in the judgment). For example, the Third

5

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

Circuit held that a plaintiff lacked standing under the Fair and Accurate Credit Transactions Act ("FACTA") where the exposure of part of the plaintiff's credit card number did not create a cognizable "invasion of privacy." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 112, 114 (3d Cir. 2019); *see also Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017) (same). The Eleventh Circuit, in contrast, compared the same alleged violation to a common-law breach of confidence and concluded that a plaintiff had standing to challenge a violation of FACTA. *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1190–92 (11th Cir. 2019) (en banc rehearing granted). And although the Ninth Circuit held that receiving unsolicited telemarketing calls or text messages constitutes an invasion of privacy sufficient for Article III standing, *Van Patten*, 847 F.3d at 1043, the Eleventh Circuit expressly disagreed. *Salcedo v. Hanna*, 936 F.3d 1162, 1167, 1173 (11th Cir. 2019) (recipient of text messages did not have standing based on alleged "invasion of Plaintiff's privacy"). The Eleventh Circuit "look[ed] closely" at the plaintiffs' allegations, including what types of messages were received, where they were received, and how plaintiffs' lives changed because of the messages. *Id.* at 1173. Noting that cases may "have differing outcomes depending on those inputs," the court concluded there was no "concrete harm." *Id*. These "split[s] of authority" are clear indications that "fair-minded jurists might reach contradictory conclusions" about whether plaintiffs claiming privacy-based injuries have Article III standing. *Heaton v. Social Fin., Inc.*, 2016 WL 232433, at *4-5 (N.D. Cal. Jan. 20, 2016). And because of these unsettled questions, there is substantial ground for difference of opinion. *See Salcedo*, 936 F.3d at 1165 (appeal under Section 1292(b)).

Indeed, for many years, courts examining alleged data breaches have analyzed Article III standing by examining whether any real-world consequences resulted from the breach. *See, e.g.*, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1025–26 (9th Cir. 2018) (finding standing where plaintiffs whose credit card numbers were taken in data breach were at imminent risk of identity theft and had already suffered financial losses); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (disclosure of information on laptop and pathology reports, "without more, cannot confer Article III standing"); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (no standing for consumer protection claim based solely on alleged disclosure of zip code "without any concrete consequence"); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *6 (S.D. Cal. Nov. 3,

Gibson, Dunn & Crutcher LLP

6

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

2016) (noting that plaintiffs did not face any "credible" harm because the type of information stolen was "far more limited" than other cases). If Article III standing were satisfied by third parties gaining allegedly unauthorized access to the plaintiff's data—regardless of the real-world consequences of such access—all of these analyses would have been unnecessary.

\* \* \*

Facebook understands that this Court disagrees with Facebook's analysis of *Spokeo* and the Article III jurisprudence set forth above. But there can be no dispute that these important and evolving data privacy issues are the subject of substantial attention and disagreement among the nation's courts. Facebook respectfully requests that this Court give the Ninth Circuit a chance to address these important issues before proceeding with this litigation.

**B.     The Order Raises Controlling Questions of Law, Resolution of Which Will Materially Advance the Litigation's Ultimate Termination.**

"Whether Plaintiffs have standing to bring the case is a controlling question of law." *Asis Internet Servs.*, 2008 WL 4279695, at \*3 (citing Coquillette et al., 19 *Moore's Federal Practice 3d* § 203.31(2); *U.S. ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 829 (9th Cir. 1993)); *see also Ritz Camera*, 2011 WL 3957257, at \*1–2. Standing is a threshold question in every federal case, *McMichael v. Napa Cty.*, 709 F.2d 1268, 1269 (9th Cir. 1983), and resolution of the issue of standing would "materially affect the outcome of the litigation," *In re Cement*, 673 F.2d at 1026, by determining whether Plaintiffs are entitled to pursue their claims at all. *See Wilton Miwok Rancheria v. Salazar*, No. 07-cv-2681, 2010 WL 693420, at \*12 (N.D. Cal. Feb. 23, 2010) (finding a "controlling question of law" where "dismissal is required" if the party seeking certification was correct). Resolution of this controlling issue does not depend on any factual disputes between the parties and can be resolved on the basis of the pleadings alone.

An interlocutory appeal on the question of Plaintiffs' standing will "materially advance the ultimate termination of the litigation," because it is "a question which would be dispositive of the litigation." *U.S. Rubber Co.*, 359 F.2d at 784, 785 n.2. If the Ninth Circuit agrees that Plaintiffs have not suffered a cognizable injury-in-fact based on an alleged intangible "privacy injury," that ruling will end the case. For this reason, district courts have held that standing and jurisdictional questions—such

Gibson, Dunn & Crutcher LLP

7

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

as those at issue here—are appropriate for certification under section 1292(b). *See, e.g.*, *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1068 (D. Haw. 2013) (certifying question of federal jurisdiction for interlocutory appeal); *Wilton Miwok Rancheria*, 2010 WL 693420, at *13 (certifying question of subject matter jurisdiction for interlocutory appeal); *Ritz Camera*, 2011 WL 3957257, at *3 (certifying standing question for interlocutory appeal); *Asis Internet Servs.*, 2008 WL 4279695, at *3 (same).

Considerations of judicial economy weigh strongly in favor of resolving the disputed standing issue now. With potentially expansive discovery on the horizon in a multidistrict litigation of this size and scope, the opportunity to resolve the threshold issue of standing presents an "exceptional situation[] in which allowing an interlocutory appeal would avoid protracted and expensive litigation," and would save the parties and the Court "the time, effort, [and] expense of conducting a lawsuit." *In re Cement*, 673 F.2d at 1026–27 (citations omitted); *Ritz Camera*, 2011 WL 3957257, at *3 (finding interlocutory appeal of standing issue appropriate to "avoid expensive and protracted discovery"). Under these circumstances, "on balance certification would further rather than frustrate resolution of the underlying dispute." *Ritz Camera*, 2011 WL 395 7257, at *3.

## IV.   CONCLUSION

Because an immediate appeal will resolve important questions of Article III standing that will materially advance the ultimate termination of the litigation, and as to which there are substantial grounds for difference of opinion, Facebook respectfully requests that this Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Gibson, Dunn & Crutcher LLP

8

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC

DATE:  October 8, 2019

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/* Orin Snyder
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn & Crutcher LLP

9

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FACEBOOK, INC. TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL - CASE NO. 3:18-MD-02843-VC