Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' OPPOSITION TO DEFENDANT FACEBOOK, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: November 14, 2019<br>Hearing Time: 10:00 a.m. |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. 28 U.S.C. § 1292(b) Establishes Demanding Requirements for Certification. ............................................................................................... 2

    B. *Eichenberger* Alone Prevents Facebook from Satisfying the Requirements of § 1292(b). ................................................................................................ 3

    C. *Eichenberger* Aside, Facebook Cannot Satisfy the Requirements of § 1292(b). .................................................................................................... 4

        1. Because the Ninth Circuit has established a clear legal rule to apply here, certification under § 1292(b) is inappropriate .............. 4

        2. Facebook fails to show that the law on this subject is unclear. ...... 7

III. CONCLUSION .................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antman v. Uber Techs., Inc.*,
   2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ........................................................................7

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) ................................................................................................2

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ............................................................................................2, 5

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ........................................................................................*passim*

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) .......................................................................................................7, 8

*In re Google, Inc. Privacy Policy Litig.*,
   2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ........................................................................7

*Hancock v. Urban Outfitters, Inc.*,
   830 F.3d 511 (D.C. Cir. 2016) (cited by Mem. ) ....................................................................9

*Heaton v. Social Fin., Inc.*,
   2016 WL 232433 (N.D. Cal. Jan. 20, 2016) (cited by Mem. ) ...............................................8

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......................................................................7

*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 (9th Cir. 2002) ................................................................................................2

*LaCourt v. Specific Media, Inc.*,
   2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ........................................................................7

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019), ...........................................................................................5, 8

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................................8

*United States v. $209,815 in U.S. Currency*,
   2015 WL 537805 (N.D. Cal. Feb. 9, 2015) ............................................................................3

*Van Patten v. Vertical Fitness Group, LLC*,
   F.3d 1037 (9th Cir. 2017) ............................................................................................. 5

*Zuniga v. United Can Co.*,
   812 F.2d 443 (9th Cir. 1987) ............................................................................... 3, 4, 5

**Statutes**

18 U.S.C. § 2710(b)(1) ............................................................................................................ 3

28 U.S.C. § 1292(b) ....................................................................................................... *passim*

Fair and Accurate Transactions Act ........................................................................................ 8

Telephone Consumer Protection Act ................................................................................. 5, 8

Video Privacy Protection Act, 18 U.S.C. § 2710 .......................................................... 1, 3, 4, 5

**Other Authorities**

U.S. Const., amend. IV ........................................................................................................... 6

I.  INTRODUCTION

In a comprehensive order, this Court upheld most of the prioritized claims in Plaintiffs' First Amended Consolidated Complaint. *See* Pretrial Order No. 20: Granting in Part & Dismissing in Part Mot. to Dismiss First Am. Compl. ("MTD Order" or "Order"), ECF No. 298. The Order rejected Facebook's position that "even if its users had a privacy interest in the information they made available only to friends, there is no standing to sue in federal court because there were no tangible negative consequences from the dissemination of this information." *Id.* at 2. Facebook now asks for an appeal under 28 U.S.C. § 1292(b) to challenge the Court's conclusion that the invasion of Plaintiffs' privacy interests constitute an injury-in-fact under Article III.

This request should be rejected for at least two reasons. First, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), holds that an alleged violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, invades a substantive privacy interest, thereby qualifying as an injury-in-fact. Given this binding authority, there can be no "substantial ground for difference of opinion" on whether Plaintiffs have standing to bring their VPPA claim. 28 U.S.C. § 1292(b). Because certification of that question cannot be granted, certifying the rest of the case will not "materially advance the ultimate termination of the litigation." *Id.*

Second, there is no "substantial ground for difference of opinion" on whether, under the facts alleged here, Plaintiffs have standing to bring privacy-based claims other than the VPPA. A line of binding Ninth Circuit case law holds that invasion of substantive privacy interests is sufficient to create Article III standing. At most, Facebook challenges this Court's *application* of that rule to the particular facts of this case, which is not a fit subject for certification under § 1292(b). This Court's application of that rule, in any event, should not be controversial outside Facebook headquarters.

In light of the scope of the content and information that Facebook disclosed to third parties, its repeated description of its actions as "mere disclosure" or "mere sharing" of private information takes neither its users' privacy rights nor binding case law seriously. Mem. of Law

in Supp. of Mot. of Def. Facebook, Inc. to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) ("Mem.") at 1, 3, 4, 5, ECF No. 318-1. As this Court explained: "To say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious enough to warrant the attention of the federal courts is to disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it." MTD Order at 16. Facebook's motion should be denied.

## II.     ARGUMENT

### A.     28 U.S.C. § 1292(b) Establishes Demanding Requirements for Certification.

28 U.S.C. § 1292(b) contains three jurisdictional requirements: "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "[R]ecogniz[ing] the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases," the Ninth Circuit has made it clear that these jurisdictional requirements are demanding. *Id.* at 1027; *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (noting that because § 1292(b) "is a departure from the normal rule that only final judgments are appealable," it "must be construed narrowly").

This means that "substantial ground for difference of opinion"—the prong to which Facebook's motion devotes the most attention—is a high bar to clear. "A party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation and alteration omitted). Nor is it sufficient that the parties disagree about how "settled law might be applied," or that that there is no binding precedent "address[ing] the precise questions at issue." *Id.* at 633-34 (citation omitted). The question, rather, is "to what extent the controlling law is unclear." *Id.* at 633.

Here, as Plaintiffs will explain, the controlling law is clear. That Facebook disagrees with that controlling law is not enough under any standard, let alone under § 1292(b).

## B. *Eichenberger* Alone Prevents Facebook from Satisfying the Requirements of § 1292(b).

As this Court recognized, *Eichenberger* holds that "an alleged violation of the Video Privacy Protection Act creates standing" because the VPPA protects substantive privacy interests. MTD Order at 15. *Eichenberger* is binding precedent, *see Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (noting that district courts within the Ninth Circuit are bound by Ninth Circuit precedent), and it controls the question whether Plaintiffs have standing to assert their claim under the VPPA. The case explicitly holds that a statutory violation of the kind Plaintiffs allege here is enough to create standing: "[T]he VPPA identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information." *Eichenberger*, 876 F.3d at 983-84; *see also id.* at 983 ("Congressional judgment leaves little doubt that 18 U.S.C. § 2710(b)(1) is a substantive provision that protects concrete interests."). Because binding circuit precedent squarely governs the question of Plaintiffs' standing under the VPPA, there cannot be substantial grounds for difference of opinion on that question. *See, e.g.*, *United States v. $209,815 in U.S. Currency*, 2015 WL 537805, at *2 (N.D. Cal. Feb. 9, 2015) (ruling that movant could not satisfy § 1292(b) "because his argument is foreclosed by binding precedent"). Tellingly, Facebook does not even address the VPPA claim in its motion.

Because the question of Plaintiffs' standing under the VPPA cannot be certified under § 1292(b), Facebook's case for certification collapses. Facebook argues that certification will "materially advance the ultimate termination of the litigation" because it would raise questions that "would be dispositive of the litigation." Mem. at 7 (citation omitted). Yet, because the question of Plaintiffs' standing under the VPPA cannot be certified, an appeal of any *other* standing questions could not dispose of the litigation. Instead, it would leave Plaintiffs' VPPA claim untouched. This claim spans the entire length of the class period and involves the release of private and personally identifiable information to app developers, whitelisted apps, and business partners. *See* MTD Order at 35 ("[T]he plaintiffs adequately allege that they did not consent within the meaning of the VPPA, and this applies to all the information-sharing, for all

time periods, discussed in this ruling."). An appeal that would not dispose of one of Plaintiffs' most expansive claims would not materially advance this litigation's ultimate termination.

### C. *Eichenberger* Aside, Facebook Cannot Satisfy the Requirements of § 1292(b).

Setting aside *Eichenberger*'s binding effect on the VPPA standing question, Facebook fails to show that the Court's ruling on *any* privacy-based standing question involves "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

The Court's ruling confirmed that, as "the Ninth Circuit has repeatedly explained[,] . . . intangible privacy injuries can be redressed in the federal courts." MTD Order at 14. The Court also ruled that "once it is understood that an intangible privacy injury *can* be enough" to create an injury-in -fact, "it becomes easy to conclude that the alleged privacy injury here *is* enough." *Id.* at 17. For "if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely." *Id.*

The question, then, is not whether "the mere sharing of personal information" or "the mere disclosure of certain information to other third parties" is enough to create Article III standing. Mem. at 1, 5. The Court did not—and had no reason to—address such a broad legal question. Instead, it addressed whether the disclosures alleged *here* are enough to create Article III standing. Here, Facebook collected a trove of content and information that users had expressly designated as private—including private messages, personal photographs, videos, and posts about sensitive subjects that users intended to share only with friends or even more limited audiences—and distributed it to thousands of businesses for them to use and analyze. Because it is not difficult to see that this misconduct created an injury-in-fact, it does not involve substantial grounds for difference of opinion within the meaning of § 1292(b).

**1. Because the Ninth Circuit has established a clear legal rule to apply here, certification under § 1292(b) is inappropriate.**

Ninth Circuit case law establishes a clear rule: invasions of privacy—including the unauthorized disclosure of private information—can create a concrete injury-in-fact, without additional harm. The Court's Order surveyed that case law and correctly concluded that the

PLS.' OPP'N TO MOT. CERTIFY ORDER
FOR INTERLOCUTORY APPEAL
4
MDL No. 2843
Case No. 18-md-02843-VC

invasion of privacy interests can constitute a concrete injury-in-fact. MTD Order at 14-15. *Patel v. Facebook, Inc.*, as the Court noted, held that Facebook's use of facial recognition technology, in violation of an Illinois statute, created standing. 932 F.3d 1264, 1274 (9th Cir. 2019), *reh'g en banc denied*, Order, No. 18-15982 (9th Cir. Oct. 18, 2019), ECF No. 105; *see* MTD Order at 14-15. *Eichenberger* held that the release of private and personally identifiable information in violation of the VPPA created standing. 876 F.3d at 983-84; *see* MTD Order at 15. And *Van Patten v. Vertical Fitness Group, LLC* held that receiving unsolicited text messages in violation of the Telephone Consumer Protection Act ("TCPA") also conferred Article III standing. 847 F.3d 1037, 1043 (9th Cir. 2017); *see* MTD Order at 15. In light of this case law, even Facebook does not openly deny the existence of a clear rule that invasions of privacy interests can qualify as injuries-in-fact.

Because this general rule is clear, the relevant question, as this Court recognized, is simply how that rule applies to these facts—that is, whether the alleged privacy injury *here* is enough to confer Article III standing. *See* MTD Order at 17 ("[O]nce it is understood that an intangible privacy injury *can* be enough, it becomes easy to conclude that the alleged privacy injury here *is* enough.").

That question, however, is not suitable for certification for at least two reasons. First, because certification under § 1292(b) is intended to be used when "the controlling law is unclear," *Couch*, 611 F.3d at 633, the fact that "settled law might be *applied* differently" to the facts of a case "does not establish a substantial ground for difference of opinion," *id.* at 634 (citation omitted and emphasis added). At most, Facebook disagrees with how the Court has applied settled law, rather than disputing what the controlling law is. A disagreement about the application of settled law is not a fit subject for § 1292(b) certification.

Second, as the Court recognized, applying Ninth Circuit law to this case is not particularly difficult. *See* MTD Order at 17 (finding it "easy to conclude that the alleged privacy injury here is enough" for standing (emphasis omitted)). Facebook's invasions of Plaintiffs' privacy interests were broader in scope and arguably more offensive than the privacy invasions

in *Patel*, *Eichenberger*, or *Van Patten*. Relying on Facebook's promises that users owned their content and that user privacy controls could limit who could access it, Plaintiffs shared personal photographs and videos and disclosed information about their health, family, political beliefs, religion, relationships, work, and precise location with limited audiences, including through Facebook Messenger, a private communication platform. *E.g.*, First Am. Consol. Compl. (FAC) ¶¶ 30, 38, 46, 96, 513, 516, 748, ECF No. 257, Feb. 22, 2019. As the public outcry and numerous national and international inquiries make clear, disclosing this sort of information to third parties without users' consent represents a substantial invasion of users' privacy interests and therefore constitutes an injury-in-fact.

Facebook does not really attempt to argue otherwise. At most, it notes that the disclosed information did not include "social security numbers, credit card numbers, or financial information." Mem. at 2 n.1. The taking of that kind of information in data breach cases tends to demonstrate the potential for imminent identity theft. Facebook apparently believes that if that kind of information is not disclosed, Plaintiffs lack standing in this privacy case. That argument holds no water. Facebook is conflating standing in data-breach cases with standing to bring privacy-related claims and is ignoring substantive privacy interests in non-financial information. The Fourth Amendment, for example, does not protect the right of the people to be secure in their "social security numbers, credit card numbers, or financial information," but their more general right to be secure "in their persons, houses, papers, and effects." U.S. Const., amend. IV. Indeed, the privacy of non-financial information is likely *more* important to the ability of citizens "to think and act creatively and constructively" than the privacy of their financial information. MTD Order at 16 (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001)). In any event, the information disclosed includes information that can contribute to identity theft and other forms of fraud, if not the very narrow kinds of financial information that Facebook focuses on. *See* FAC ¶ 784.

**2. Facebook fails to show that the law on this subject is unclear.**

Facebook collects decisions and other authorities in its attempt to show that the law on whether privacy violations give rise to Article III standing is "evolving." Mem. at 1; *see also id.* at 5 ("evolving questions"); *id.* at 7 ("evolving data privacy issues"). The law, however, is not unclear. Indeed, Facebook has not cited a single precedential decision that conflicts with this Court's ruling.

Facebook first cites several district court decisions,[1] Mem. at 2-3, but these decisions do not show a continuing divergence of opinion on whether an invasion of privacy can create standing, particularly given that the personal information in those cases was less rich in scale and scope than the information that Facebook disclosed here. Most importantly, all of these decisions preceded the Ninth Circuit's controlling opinions in *Patel*, *Eichenberger*, and *Van Patten*—as this Court recognized. *See* MTD Order at 16 (stating about a 2011 decision that "[w]hether or not [Judge Grewal] was right about precedent at the time, the cases cited above provide ample support for the conclusion that this type of privacy invasion alone creates standing"). More recent district court decisions directly support the Court's ruling. *See* MTD Order at 15 (citing district court decisions from 2014, 2017, and 2018).

Facebook next relies on *Frank v. Gaos*, 139 S. Ct. 1041 (2019), Mem. at 1, 3-4, but *Frank* does not cast doubt on whether an invasion of substantive privacy interests can qualify as an injury-in-fact. Rather, the Supreme Court simply remanded the case, noting that, when the district court had ruled on Google's motion to dismiss, it had relied on a now-superseded Ninth Circuit decision holding that "the violation of a statutory right automatically satisfies the injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right." *Frank*, 139 S. Ct. at 1046 (citation omitted). Since that time, the Court observed, no court had actually analyzed whether any named plaintiff had standing, and it directed the district court to do so. In

---

[1] *Antman v. Uber Techs., Inc.*, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015); *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012); *In re iPhone Application Litig.*, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).

short, *Frank* merely reaffirmed *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which this Court has faithfully followed. MTD Order at 13, 14. That is presumably why Facebook relies primarily on the oral argument and briefing filed in *Frank* rather than on the decision itself.

Next, Facebook suggests that the pending en banc petition in *Patel* provides a reason for this Court to certify its Order under § 1292(b). Mem. at 4-5. The Ninth Circuit, however, has now denied Facebook's en banc petition, mooting this argument. *Patel*, Order, No. 18-15982 (9th Cir. Oct. 18, 2019). Facebook also appears to rely on *Patel* itself, Mem. at 4, but it is not clear why. *Patel* does not conflict with—rather, it quite straightforwardly supports—the result this Court reached. *See* MTD Order at 14-15.

Facebook also cites cases decided by other circuits involving different laws, including the Fair and Accurate Transactions Act ("FACTA") and the TCPA. Mem. at 5-6. But whether "the exposure of part of [a] plaintiff's credit card number," the question raised under FACTA, invades a substantive right of privacy sufficient to create standing differs significantly from the question of standing raised here. This case does not merely involve a technical disclosure of ephemeral "data" like a partial credit card number. Rather, the case arises because Facebook widely distributed its users' highly personal content and information, violating its promise that the content and information would be accessible to a limited audience only. Further, a circuit split between the Ninth Circuit and the Eleventh Circuit on the TCPA cannot possibly support certification under § 1292(b), because it does not make the Ninth Circuit's case law any less binding on this Court. In any event, none of the out-of-circuit cases that Facebook cites conflicts with the result that this Court reached. *Cf. Heaton v. Social Fin., Inc.*, 2016 WL 232433, at *4-5 (N.D. Cal. Jan. 20, 2016) (cited by Mem. at 6) (ruling that there was a substantial ground for difference of opinion due to a direct conflict between the district court's order and decisions of other circuit courts).

Finally, Facebook cites a handful of data-breach cases that are simply irrelevant to the privacy issue raised here. Mem. at 6-7. These cases addressed standing based solely on claimed

*economic* injury.[2] Because they do not bear on, let alone conflict with, the Court's Order, they cannot support certification.

## III.   CONCLUSION

Facebook's motion for certification under 28 U.S.C. § 1292(b) is meritless and should be denied.

Dated: October 22, 2019                                              Respectfully submitted,

KELLER ROHRBACK L.L.P.                          BLEICHMAR FONTI & AULD LLP

By:   */s/ Derek W. Loeser*                                    By:   */s/ Lesley E. Weaver*
         Derek W. Loeser                                                    Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

---

[2] *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016) (cited by Mem. at 6), does not implicate a privacy invasion—it was about two Urban Outfitters customers who were asked for their zip code when doing so violated D.C. consumer protection laws. Significantly, the customers did "not allege . . . *any invasion of privacy*, increased risk of fraud or identity theft, or pecuniary or emotional injury." *Id.* at 514 (emphasis added).

PLS.' OPP'N TO MOT. CERTIFY ORDER            9            MDL No. 2843
FOR INTERLOCUTORY APPEAL                                        Case No. 18-md-02843-VC

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of October, 2019, at Seattle, Washington.

/s/ *Derek W. Loeser*
Derek W. Loeser

# CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on October 22, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via U.S. Mail:**

Robert Zimmerman
329 Sandpiper Lane
Hampstead, NC 28443

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
Keker Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

Anjeza Hassan
Ibrahim Hassan
Mirela Hysa
8349 Cretan Blue Lane
Las Vegas, NV 89128

Kosta Hysta
6877 Fox Lane
Waterford, MI 48327

**And via email:**

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
pmalhotra@keker.com
bwilliams@kvn.com
bwilliams@kvn.com

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs