Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*


Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

*Counsel for Defendant Facebook, Inc.*

*Additional counsel listed on signature page*

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor<br>Hearing Date: November 4<br>Hearing Time: 2:00 p.m. |

## JOINT CASE MANAGEMENT STATEMENT

The parties, by and through their counsel, submit this Joint Case Management Statement in anticipation of the Case Management Conference scheduled for November 4, 2019.

## I.      JURISDICTION AND SERVICE

**A.      Plaintiffs' Statement**

This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because this is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interests and costs, and most members of the proposed class are citizens of states different from Defendants. This Court also has subject-matter jurisdiction over their federal claims under 28 U.S.C. § 1331.

This Court has personal jurisdiction over Defendants because they reside or are headquartered in this district, and because Defendants have directed its complained-of conduct from its headquarters in this district.

Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims alleged in the Consolidated Complaint took place within this district.

All parties have been served.

**B.      Facebook's Statement**

Facebook contests that the Court has subject-matter jurisdiction over this case.  Plaintiffs lack Article III standing to bring their claims because, in Facebook's view, Plaintiffs have not suffered any concrete or particularized harm as a result of the claims alleged in the Consolidated Complaint.

Facebook confirms that it has been served.

## II.      FACTS

**A.      Plaintiffs' Statement**

Plaintiffs have adequately alleged that Facebook engaged in four kinds of misconduct: (1) it enabled third-party apps to access users' content and information through their friends and without their authorization prior to December 2009; (2) it enabled whitelisted apps to access

users' content and information through their friends without their authorization, even after it claimed it had ended the practice; (3) it enabled business partners to access users' content and information without their authorization; and (4) it failed to adequately control and monitor how third parties could use the user content and information they access via Facebook.

The principal factual questions, which relate to both merits and class discovery, include the following:

- The identity of the third parties who accessed or used Plaintiffs' private content and information, what, how and why it was accessed or used, and the agreements or commercial arrangements that Facebook had with those third parties which enabled or permitted such access or use.

- How the third parties used, disseminated and maintained Plaintiffs' private content and information once it was accessed or used.

- What Facebook knew about—and what actions it took or failed to take in connection with—third parties' access and use of Plaintiffs' private content and information, including Facebook's policies and actions relating thereto and why it has not expressly disclosed to Plaintiffs what private content and information has been accessed or used.

- Whether or to what extent Plaintiffs consented to Facebook's actions with regard to third party access and use of Plaintiffs' private content and information.

- What harm Plaintiffs suffered as a result of Facebook's actions, including the scope of such access to and use of Plaintiffs' private content and information, and what monetary gain Facebook accrued from its misconduct.

## B.    Facebook's Statement

Facebook is a social media service with more than two billion account holders worldwide. Facebook launched Platform in 2007, to create an open development platform where users could choose to share their Facebook data with developers creating new and innovative social products. Platform provided users with the ability to take their Facebook data off

Facebook to benefit from enhanced user experiences through a vibrant ecosystem of third-party applications ("apps"). These apps add value to users in a way that Facebook alone could not.

Since April 2010, the Graph Application Programming Interface ("API") has been the primary tool to allow Facebook users to share their information with third-party app developers. Specifically, the Graph API is an HTTPS3-based API that allows third-party apps to receive data from Facebook users and to write to Facebook on the user's behalf if authorized. The Graph API is named after the "social graph"—the network of connections between people and "objects" (posts, photos, etc.) that users have created on Facebook.

Since the launch of the Platform, whenever Facebook users download or authorize an app on the Platform, Facebook has informed them that by doing so, they are choosing to share information with that app. Users may choose to share information with apps because doing so has the benefit of enabling those apps to provide a broad range of personalized, social, innovative, and useful user experiences that are not available on Facebook directly. Since April 2010, Facebook has used a permissions model that enables users to control, on an app-by-app basis, which types of information they make available to their apps, and Facebook has also allowed users to control whether their information can be shared by their friends with third-party apps. Indeed, since at least May 2010, Facebook has continuously offered users the option to completely opt out of sharing any information through the Platform.

Just as Facebook informs users about how third-party apps collect and use their data, Facebook also informs users about how they may share information about their friends with third-party apps. These disclosures are found in a variety of mutually reinforcing sources, including Facebook's Data Policy and the Statement of Rights and Responsibilities; "in-product" disclosures that reinforce Facebook's policies on sharing, such as those in the Privacy Checkup feature, in the Privacy Shortcuts, in the Privacy Basics, and in the Help Center; and through other public communications. For their part, app developers create apps by registering to use Platform and affirmatively accepting and agreeing to comply with Facebook's Platform Policy, Statement of Rights and Responsibilities, and other policies governing developers. If developers do not

agree to those policies, then they cannot use Platform. After launch, Facebook also monitors apps' use of Platform to identify policy violations and to enforce its policies.

In 2014, Facebook largely deprecated use of Graph API v1 for apps, thereby ending the ability the vast majority of apps to access user data about their friends.  For an extremely small subset of apps—which Plaintiffs refer to as "whitelisted" apps—there was a period of time extending beyond 2014 during which Facebook continued to allow those apps to access some of the functionality that had previously been generally available to app developers through Graph API v1. This was because, for some developers, the transition to Graph API v2 required significant modification to their code base, testing of newly-developed Graph API v2 integrations, and rollout of the modified apps to their users. A transition period was necessary so that app developers could implement code, product, or business-model changes to allow their apps to function with Graph API v2. Furthermore, an immediate change in app functionality would not just affect developers—it would have a negative impact on the experiences of millions of consumers who could no longer use their selected apps in ways they had come to expect. During the time period that this very small subset of "whitelisted" apps continued to have access to some Graph API v1 functionality, users continued to consent to the sharing of their data with those apps—either directly or through their friends.

Plaintiffs also reference "integration partnerships." Integration partnerships began before iOS and Android had become the predominant ways people around the world accessed the Internet on their mobile phones. People went online using a wide variety of text-only phones, feature phones, and early smartphones, with varying capabilities. In that environment, the demand for Internet services like Facebook, Twitter, and YouTube outpaced the industry's ability to build versions of services that worked on every phone and operating system. As a solution, many Internet companies often engaged device manufacturers and other partners to build ways for people to access their experiences on a range of devices and products. Facebook partnered with select and typically well-known device manufacturers and technology companies to provide services for its users on those companies' devices, platforms, or products. To provide

those experiences, Facebook permitted partners to use certain Facebook application programming interfaces (or "APIs") to retrieve data on behalf of users who had authenticated themselves to the Facebook system. Under Facebook's contracts with those partners, the partners could use Facebook's APIs only to provide the Facebook-approved integrations to Facebook users on the partners' devices, platforms, or products. The partners were not permitted to use data received from Facebook for any independent purpose unrelated to the approved integration without additional user consent.

Notwithstanding Facebook's promulgation and enforcement of policies designed to protect user data, and the various privacy controls that Facebook provides to users, Plaintiffs contend that Facebook (1) failed to disclose how it was sharing user data with third parties, and (2) failed to enforce its policies and/or adequately identify policy violations by app developers with respect to their use of user data.  Facebook believes that Plaintiffs' contentions lack merit.

## III.    LEGAL ISSUES

### A.    Plaintiffs' Statement

The parties dispute numerous legal issues. The most salient legal disputes (including mixed questions of fact and law) include the following:

- Whether Facebook's invasions of Plaintiffs' privacy were sufficiently egregious to be tortious;

- Whether Facebook is a video tape service provider under the Video Privacy Protection Act;

- Whether Facebook's actions or omissions in controlling or monitoring how third parties used user content and information amount to negligence or gross negligence;

- Whether Facebook deceived users about the access to users' content and information it gave to third parties such as whitelisted apps and business partners;

- Whether Facebook's misconduct violated the terms of its contracts between it and Plaintiffs;

- Whether a class action may be maintained under Federal Rule of Civil Procedure 23;
- Whether and to what extent Plaintiffs' claims are barred by the applicable statutes of limitations; and
- Extent of damages and unjust enrichment associated with Facebook's misconduct.

Facebook's Case Management Statement contemplates a lopsided multiphase discovery and litigation schedule. Relying on its assertion that Plaintiffs lack standing, Facebook wants the first phase of the schedule focused solely on whether Plaintiffs have "personally experienced the alleged harms that remain at issue." Indeed, Facebook contends that the only litigation that should occur is the adjudication of standing apparently through summary judgment, with no other discovery during this phase. *See infra* Facebook Statement § III(B) ("Only in the event that one or more of these individual claims actually survive summary judgment will further discovery … be justified"). The Rules contemplate no such procedure.

Facebook's request attempts to sidestep the normal operation of Rule 23, which requires that class-action status be decided at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). But the dictates of Rule 23 cannot be waived aside merely because a defendant continues to believe that class representatives lack standing. Indeed, while class discovery sometimes precedes merits discovery (which Plaintiffs do not believe is appropriate in this case), Plaintiffs' counsel are aware of no case—and certainly no case involving Facebook—in which one-sided standing-related discovery and litigation, and no other kind of discovery and litigation, has preceded all else. Facebook's requested discovery and litigation sequence is also precisely contrary to *Fireside Bank v. Superior Court*, 155 P.3d 268 (Cal. 2007), the case Facebook quotes below. That court noted that an early version of Rule 23 allowed a court to postpone a decision on class certification. By contrast, it observed, the current version of Rule 23 ensures that class treatment is decided early on in the case, so that if class treatment is appropriate, the class claims rise and fall together, and the defendant cannot be "pecked to death by ducks." *Id.* at 274. Facebook is proposing precisely the opposite sequence here—it is invoking *Fireside Bank* simply to propose

that it do the pecking.

Facebook's discovery and litigation sequence also appears one-sided, allowing Facebook to scrutinize Plaintiffs but not vice versa. Determining the scope of Plaintiffs' injuries will require two-way discovery. Facebook is in the best position to produce documents and information that identify the scope of Plaintiffs' harms: who accessed their private content and information, when and how access was given, and how their content and information was used. Because these harms happened on Facebook's own platform through its own undisclosed agreements with third parties, Facebook possesses much more information about the scope of the unauthorized sharing than Plaintiffs themselves.

Facebook also asserts that because the Court narrowed some of Plaintiffs' claims, Facebook is entitled to a standing-only phase of discovery. This appears to be an argument that some of the named Plaintiffs may not have personally experienced some kinds of Facebook's misconduct. Even if that argument were correct, however, Facebook's request for an unprecedented discovery sequence would not be justified. As the Court pointed out in its Order, the breadth of Facebook's misconduct means that "it is virtually inevitable that some [business partners or app developers] obtained information on the named plaintiffs." Pretrial Order No. 20: Granting in Part and Denying in Part Mot. to Dismiss First Am. Compl. at 18. The most pertinent question at this stage, therefore, is not *whether* any named Plaintiff suffered from Facebook's misconduct, but *which kinds* of misconduct the named Plaintiffs experienced or did not experience. *Id.* at 6-9 (noting that Plaintiffs allege different kinds of misconduct in their complaint). This is not a question of standing. Rather, it is a question of class certification—i.e., whether the kinds of injuries that Plaintiffs suffered qualify them as adequate and typical class representatives. *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (holding that "'once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met'" (citations omitted)). For this reason, too, it makes little sense for the first discovery phase to focus solely on standing.

The rest of Facebook's phased discovery schedule should also be rejected. As discussed below in Section VIII.C, separating out the discovery process into more than one phase would be highly inefficient.

Finally, Plaintiffs oppose staying discovery until Facebook's motion under 28 U.S.C. § 1292(b) is decided. In Plaintiffs' view, that motion is sufficiently meritless that it would be inequitable to stay discovery while the motion is pending.

## B.      Facebook's Statement

On October 8, 2019, Facebook filed a motion for a certificate of appealability under 28 U.S.C. §1292(b) ("1292(b) Motion"), seeking an order certifying for immediate interlocutory appeal this Court's finding that Plaintiffs have adequately alleged a privacy injury sufficient to support Article III standing (see ECF No. 298).  That motion will be heard on November 4, 2019.  Facebook believes that resolution of that Motion is the most pressing legal issue presently before the Court in this case, since discovery can—and should—remain stayed during the pendency of that Motion and any resulting appeal.[1]

Following resolution of the 1292(b) Motion and any resulting appeal, Facebook believes there are a number of threshold issues relating to the Article III standing of the individual named plaintiffs that should be prioritized before more general discovery proceeds.  See ECF No. 298, p. 17 fn. 6 (noting that "Facebook will be given an opportunity to attempt to knock out individual named plaintiffs on standing grounds at a later stage").  In particular, given the manner in which this Court narrowed the scope of this case in its ruling on Facebook's motion to dismiss, it is uncertain whether any of the named plaintiffs have personally experienced any of the alleged harms that remain at issue in the case. Facebook should be given an opportunity to test the named plaintiffs' Article III standing through limited discovery and, if necessary, depositions before this case proceeds.

---

[1]      *See*, *e.g.*, *Ritz Camera & Image, LLC v. Sandisk Corp.*, No. 5:10-CV-02787-JF/HRL, 2011 WL 3957257, at *3 (N.D. Cal. Sept. 7, 2011) ("When considering a stay pending appeal pursuant to § 1292(b), the Court has broad discretion to decide what a stay is appropriate to promote economy of time and effort for itself, for counsel, and for litigants.") (Internal quotation marks omitted.)

In addition, early discovery should focus on the named plaintiffs' surviving individual claims, so that Facebook can determine whether to seek summary judgment with respect to those individual claims.  *See, e.g., Fireside Bank v. Superior Ct.*, 155 P.3d 268, 274 (Cal. 2007) (noting that the alternative would leave a defendant "open to being pecked to death by ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success.") Only in the event that one or more of these individual claims actually survive summary judgment will further discovery—aimed at ascertaining whether class certification is warranted—be justified.  And broader class-wide discovery will only be justified if one or more classes are ultimately certified following motion practice.

Contrary to Plaintiffs' assertion, Facebook does not suggest that the "Stage 1" discovery that it proposes in Section VII.D, infra, should be limited to the issue of establishing Plaintiffs' Article III standing, or that it should be unilateral in nature as between the parties.  Indeed, as plainly indicated in Sections VIII.D. and XVII.B, infra, Facebook has proposed that Stage 1 discovery should be focused *both* standing issues *and* on the merits of individual named plaintiffs' individual claims.  Consideration of these issues at the earliest stage of discovery will help to narrow the relevant issues in this case and further focus the scope of this litigation before the class certification stage.  *See* Fed. R. Civ. P. 23, Advisory Committee's Note, Subdivision (c) Paragraph (1) (2003) (observing that one appropriate consideration regarding the timing of class certification is that "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification"). Furthermore, Facebook anticipates that in this initial discovery phrase, *both* parties will likely seek—and produce— discovery relating to the surviving individual claims asserted by the individual named plaintiffs.

In addition, as a matter of law, Plaintiffs do not—and cannot—dispute that trial courts generally have "broad discretion to tailor discovery narrowly and dictate the sequences of discovery."  *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998).  That is *particularly* true in an action like this, where no class has yet been certified, because "[g]enerally no need arises for

discovery of class issues from the defendant before an initial class ruling." 2 Herbert Newberg and Alba Conte, *Newberg on Class Actions, Third Edition* §7.02 (1992) (citing cases). Indeed, "[w]hether or not pre class certification discovery will be permitted is in the sound discretion of the trial court." *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *4 (S.D. Cal. June 12, 2013). And with respect to the scope of any permitted discovery, "[c]ourts have wide discretion in limiting discovery prior to a hearing on class certification rules under Federal Rules of Civil Procedure 23 . . . [because s]imultaneous class discovery and merits discovery may generate 'extraordinary and unnecessary expense and burden' in that the parties may waste resources on merits discovery that turns out to be unnecessary either because the class is defined more narrowly than expected, or the plaintiffs decide to discontinue the case after a denial of certification." *Rosales, et al., v. Fitflop USA, LLC*, No. 11CV0973-W(KSC), 2013 WL 12416061, at *2 (S.D. Cal. Jan. 17, 2013) (internal citations omitted). Accordingly, "[i]n resolving discovery disputes [that arise] prior to class certification," a court "must balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Id*.

By way of one example: In *Mantolete v. Bolger,* 767 F.2d 1416 (9th Cir. 1985), plaintiffs brought an action for employment discrimination under the Rehabilitation Act of 1973 seeking, inter alia*,* to establish a nationwide class. The district court entered judgment for the defendant. On appeal from that judgment, plaintiffs asserted that the district court had abused its discretion by disallowing them from pursuing discovery for an alleged national class. The Ninth Circuit rejected this argument and affirmed the lower court's order, noting that "[a[lthough in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that [the requested] discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Id.* at 1424.

## IV.   MOTIONS

A motion to appoint lead plaintiff and lead counsel was filed June 21, 2018 (ECF No. 25), and ruled on by the Court on July 27, 2018 (ECF No. 102).

Plaintiffs moved for limited discovery on August 8, 2018 (ECF No. 112), a motion that the Court granted in part and denied in part on August 27, 2018 (ECF No. 130).

On September 12, 2018, Plaintiffs filed a motion to relate *Rankins v. Facebook, Inc.*, No. 3:18-cv-05350-VC, and *Hwang v. Facebook, Inc.*, No. 3:18-cv-05357-JSW, on September 12, 2018 (ECF No. 135), and later filed a motion for leave to file a reply in support of that motion (ECF No. 141). The court granted the motion for leave (ECF No. 142) and on October 3, 2018 granted the motion to relate (ECF No. 161).

On October 3, 2018, Plaintiffs moved for entry of a pretrial order addressing claim prioritization (ECF No. 156).  On November 9, 2018, the court stayed the non-prioritized claims pending resolution of the motion to dismiss. (ECF No. 190).

On October 17, 2018, Kimberly M. Foxx, the State's Attorney of Cook County, Illinois, moved to remand her action against Facebook to Illinois state court (ECF No. 172). This motion was granted on January 29, 2019 (ECF No. 241).

On November 2, 2018, Facebook filed a motion to dismiss the consolidated complaint (ECF No. 184) and Robert Mercer filed a motion for dismiss for lack of jurisdiction and failure to state a claim (ECF No. 183). Mercer's motion to dismiss was granted on January 28, 2019 (ECF No. 240). Because the Court, after a hearing, permitted Plaintiffs to file an amended complaint, Facebook's motion was terminated as moot on February 1, 2019 (ECF No. 247).

Plaintiffs filed their First Amended Complaint ("FAC") on February 22, 2019 (ECF No. 257). Facebook moved to dismiss Plaintiffs' FAC on March 15, 2019 (ECF No. 261). The matter was heard on May 29, 2019. On August 13, 2019 (ECF No. 290), and September 4, 2019 (ECF No. 294), Plaintiffs filed motions for leave to file supplementary material in opposition to Facebook's motion to dismiss. Plaintiffs also moved for leave to respond to Facebook's filing regarding Plaintiffs' first motion for leave to file supplementary material (ECF No. 292). On

September 9, 2019, the Court ruled on Facebook's motion to dismiss, granting it in part and denying it in part (ECF No. 298).  On September 12, 2019, the Court denied the motion for leave to respond to Facebook's filing.  (ECF No. 301).

On September 4, 2019, Plaintiffs filed a motion to consider whether *Hassan v. Facebook, Inc.*, No. 19-cv-01003-JT, should be related to this MDL. (ECF No. 293.) Facebook did not oppose. The parties stipulated that the *Hassan* Plaintiffs would have until September 16, 2019 to respond. The Court granted the motion on September 30, 2019.  (ECF No. 311.)  On September 23, 2019, Facebook filed an administrative motion to consider whether *Zimmerman v. Facebook, Inc.*, No. 3:19-cv-04591, should be related to this MDL.  (ECF No. 307.)  Plaintiffs did not oppose.  The Court granted the motion on October 9, 2019.  (ECF No. 320.)

On October 8, 2019, Facebook filed a motion for a certificate of appealability under 28 U.S.C. §1292(b).  That motion will be heard on November 4, 2019.

## V.      AMENDMENT OF PLEADINGS

### A.      Plaintiffs' Statement

In accordance with the Court's order on Facebook's motion to dismiss, Plaintiffs may seek to amend at a later point in time certain claims stayed by the Court, but do not presently intend to do so unless so required . *See* Pretrial Order No. 20 at 40, 41 & n.22 (ECF No. 298). Plaintiffs propose a deadline of October 2, 2020 for such amendment.

### B.      Facebook's Statement

Given that Plaintiffs will be required to seek leave of Court to amend their pleadings if they choose to do so at any point moving forward, Facebook hereby reserves all rights and will evaluate any such request to amend at the time that it is made.

## VI.      EVIDENCE PRESERVATION

The parties have reviewed this District's Guidelines for the Discovery of Electronically Stored Information ("ESI") and have followed the District's ESI checklist to comply with their obligations to preserve evidence relevant to the issues in this action. The parties have previously begun the meet and confer process on ESI matters and are continuing to engage in a dialogue

around such issues, including agreeing to the terms of a proposed ESI discovery order. Plaintiffs
have sought to further these discussions. Facebook has declined to do so.

## VII.    DISCLOSURES

### A.    Plaintiffs' Statement

Plaintiffs propose that the parties exchange initial disclosures on December 10, 2019.

### B.    Facebook's Statement

For all of the reasons articulated above, Facebook believes it would be premature for the
parties to make any initial disclosures at this time.  Facebook instead proposes that the deadline
to exchange initial disclosures should be keyed off of resolution of Facebook's pending 1292(b)
Motion—i.e., the deadline should be set for 30 days after either (a) a denial of that 1292(b)
Motion, or (b) a resolution of any resulting appeal.

## VIII.   DISCOVERY

### A.    Plaintiffs' Statement on Discovery Thus Far

On August 28, 2018, Plaintiffs propounded five interrogatories and five requests for
production seeking very limited discovery relating to Cambridge Analytica, in accordance with
the Court's Pretrial Orders Nos. 11 and 13 (ECF Nos. 130 and 232). Plaintiffs have proposed to
Facebook that supplemental responses may be required, given the events that have occurred
since responses were last provided, and the parties are meeting and conferring in this regard.

### B.    Facebook's Statement on Discovery Thus Far

Facebook agrees with Plaintiff's recitation immediately above, except to the extent that
Plaintiffs characterize the scope of the discovery requests they have propounded thus far as being
"very limited."

### C.    Plaintiffs' Statement on the Scope of Anticipated Discovery

Plaintiffs will now seek efficient, targeted discovery on certain topics, which include the
following:

- All documents Facebook possesses concerning the named Plaintiffs;

- Third parties' access to Facebook users' content and information, including the

identity of these third parties, what content and information was accessed and about whom, how it was accessed, , and how third parties used, disseminated or sold that content and information;

- What and when Facebook knew about—and what actions it took or failed to take in connection with—how third parties used user content and information;

- Which Facebook agreements and policies were effective during which portions of the class period, what those agreements and policies provided, in what manner did Facebook provide notice to users as to changes to Facebook's agreements and policies, and to what extent they were enforced; and

- How users were harmed by third party access to their content and information, what monetary gain Facebook accrued from its misconduct, and what remedies should attach to such misconduct.

In anticipation of the case management conference, Plaintiffs sought to meet and confer with Facebook about the scope and conduct of discovery, in the interest of ensuring an efficient, targeted and productive process. Among the issues Plaintiffs sought to discuss is whether Facebook objects to fast-tracking the production of relevant materials already collected and produced to government regulators and authorities, including but not limited to the Federal Trade Commission, state Attorneys General, the Department of Justice, the Securities and Exchange Commission, and other U.S. governmental entities pursuant to any inquiry on investigation relating to Facebook's treatment of and third party access to user content and information. To the extent responsive information has been collected and produced, re-production in this action may be an efficient way to begin the discovery process. While this action is not a re-litigation of actions other regulatory entities have brought, there are areas of clear overlap. Facebook would not entertain discussion on this topic.

In light of the complexity of this case, Plaintiffs believe it will likely be necessary to enlarge the presumptive ten-deposition limit of Rule 30(a)(2)(A)(i) and the presumptive 25-interrogatory limit of Rule 33(a)(1). Similarly, relief from the limit on the number of

interrogatories may also be warranted. Rather than an enlargement of those limits now, Plaintiffs suggest it may be more prudent for the Court to wait until discovery is underway, when the parties will have a better sense of how significant an enlargement may be required.

Further, Facebook has communicated its intent to seek extensive discovery of Plaintiffs, which presumably will include depositions. In responding to discovery and defending these depositions, Co-Lead Counsel will require the participation of lawyers who represent those clients, to the extent those plaintiffs were not initially and directly retained by Co-Lead Counsel. Plaintiffs intend to seek approval from the Court for such retained counsel to perform this common benefit work in an *in camera* submission detailing the specific tasks such counsel would perform.

Finally, Plaintiffs submit that dividing discovery into multiple phases would be inefficient. Plaintiffs have given some reasons for this position above. *See supra* § III. In addition, attempting to separate class discovery from merits discovery would likely be imprudent. There is significant overlap among class-related and merits-related issues. For instance, the same distribution of user content and information that Plaintiffs will use to prove the merits of their Video Privacy Protection Claim will also be used to show numerosity, commonality, adequacy, typicality, and predominance.

Where class and merits discovery are so interrelated, they should not be bifurcated. Other district courts addressing requests to bifurcate in cases under the Telephone Consumer Protection Act—a law that involves invasions of privacy, albeit less egregious invasions than Facebook's here—have declined to do so. *True Health Chiropractic Inc. v. McKesson Corp.,* No. 13-cv-02219-JT, 2015 WL 273188, at *2-3 (N.D. Cal. Jan. 20, 2015); *Ahmed v. HSBC Bank USA, Nat'l Ass'n,* No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018). When recently addressing a similar demand by Facebook in *Heeger v. Facebook*, No. 3:18-df-06338-JD (N.D. Cal. 2018), a case that concerns "Facebook's tracking, logging, and storage of users' private location data" regardless of purported privacy protections, Complaint ¶ 4, ECF No. 1, Judge Donato similarly denied the request, Minute Order, ECF No. 41. Plaintiffs also suspect that separating class

discovery from merits discovery would simply result in endless wrangling over what is class-related discovery and what is merits-related discovery.

**D.     Facebook's Statement on the Scope of Anticipated Discovery**

As stated above, Facebook believes that discovery should continue to be stayed pending resolution of its 1292(b) Motion.

If and when discovery reopens, Facebook believes that any discovery plan entered by the Court should take into account both (a) the limiting effect of the Court's ruling on Facebook's motion to dismiss on the factual and legal issues in this case, and (b) the fact that this is not yet a class action, and critical threshold questions still remain to be answered about the individual named plaintiffs' standing to bring any of the surviving claims as well as the merits of those claims.

Against this backdrop, Facebook believes it will be critical to structure any discovery plan in a way that is both logical and efficient, while making appropriate efforts to conserve party and judicial resources.  To that end, Facebook proposes structuring any future discovery plan along the following lines:

- **Stage 1:** Limited discovery into (a) whether any of the individual named plaintiffs actually have Article III standing to assert any of the surviving claims that remain at issue in this action, and (b) the merits of the individual claims being brought by the individual named plaintiffs—in order to allow Facebook to ascertain whether summary judgment may be appropriate with respect to some or all of those claims.

- **Stage 2:** If at least some of those individual claims survive summary judgment, then broader discovery aimed at ascertaining whether class certification is appropriate—in anticipation of further motion practice on that issue.

- **Stage 3:** If one or more classes are actually certified with respect to any surviving claims, then class-wide discovery proceeds.

For all of the reasons articulated above (*see* Section III.B, supra), it is entirely within the Court's discretion to both stage and limit the scope of discovery in this action—*particularly* at this early pre-certification stage. See *Mantolete,* 767 F.2d at 1424 (trial court's refusal to allow broad class discovery not an abuse of discretion).

## IX.    CLASS ACTION

### A.    Plaintiffs' Statement

Plaintiffs propose the following schedule for the class certification motion: (1) Plaintiffs file their motion for class certification by October 5, 2020; (2) Defendants file their opposition to class certification by December 7, 2020; and (3) Plaintiffs file their reply in support of class certification by February 8, 2021. Under this proposal, Plaintiffs would disclose any class certification experts and provide their Rule 26 reports when they file their class certification motion, and Defendants would have the right to depose those experts before filing its opposition. Likewise, Defendants would disclose any class certification responding experts and provide their Rule 26 reports when filing their opposition, and Plaintiffs would have the right to depose those experts before filing their reply. At the same time as they file that reply, Plaintiffs would disclose class certification rebuttal experts and provide their Rule 26 reports.

Plaintiffs make the following representations in accordance with Civil Local Rule 16-9(b):

1.    This action is maintainable as a class action pursuant to Federal Civil Rule of Civil Procedure 23(b)(2) and (b)(3).

2.    Plaintiffs seek to represent the following two classes. First, they seek to represent a Class defined as all Facebook users in the United States and in the United Kingdom whose content and information, generated when they were eighteen years of age or older, was collected by Facebook and published and/or disclosed to third parties without their authorization or consent from January 1, 2007 to the present. Second, they seek to represent a Minor Class defined as all Facebook users in the United States and in the United Kingdom whose content and

information, generated when they were less than eighteen years, was collected by Facebook and published and/or disclosed to third parties without their authorization or consent from January 1, 2007 to the present. Each of these Classes will likely contain a Subclass containing only those Facebook users who created an account before a certain date. *See* Pretrial Order No. 20 at 26-27. Refinements to the class definition, including subclasses, may be considered following receipt of relevant discovery.

3. This case is suitable for class treatment because Facebook instituted uniform policies and procedures that governed the access that third parties were given to user data, and those uniform policies and procedures applied in substantially identical ways to the class members, creating substantially similar injuries.

**B.    Facebook's Statement**

Facebook denies that class certification is proper in this action.  Furthermore, for all of the reasons articulated above, Facebook believes that it is premature to set any deadlines relating to a class certification motion in this case.

## X.    RELATED CASES

On September 4, 2019, Plaintiffs filed a motion to consider whether *Hassan v. Facebook, Inc.*, No. 19-cv-01003-JT, which has been pending before Judge Tiger for six months, should be related to this action (ECF No. 298).   Facebook did not oppose. The Court granted the motion on September 30, 2019.  (ECF No. 311.)  On September 23, 2019, Facebook filed an administrative motion to consider whether *Zimmerman v. Facebook, Inc.*, No. 3:19-cv-04591, should be related to this MDL.  (ECF No. 307.)  Plaintiffs did not oppose.  The Court granted the motion on October 9, 2019.  (ECF No. 320.)

## XI.    RELIEF

**A.    Plaintiffs' Statement**

Plaintiffs seek damages, restitution, disgorgement, attorneys' fees, and injunctive relief. In additional to damages accruing to specific causes of action, such as privacy violations, fraud

by deceit and contract damages, Plaintiffs also seek statutory damages as provided for by the Stored Communications Act and Video Privacy Protection Act, as well as punitive damages to the extent they apply to particular causes of action. Plaintiffs further seek remedies under their unjust enrichment claims to the extent that Facebook unlawfully profited by selling user content and information.

**B.    Facebook's Statement**

Facebook denies that Plaintiffs are entitled to any relief in this action.

## XII.    SETTLEMENT AND ADR

Plaintiffs and Facebook have not begun settlement negotiations and believe that a settlement conference would be premature at this time.

## XIII.    CONSENT TO MAGISTRATE JUDGE

Neither Plaintiffs nor Facebook consent to have a magistrate judge conduct all further proceedings.

## XIV.    OTHER REFERENCES

Plaintiffs and Facebook believe that this case is not suitable for reference to binding arbitration or a special master. The Judicial Panel on Multidistrict Litigation ("JPML") ordered the underlying actions transferred to and consolidated here.

## XV.    NARROWING OF ISSUES

At this early juncture, Plaintiffs and Facebook are unsure which issues can be narrowed by agreement or by motion. To the extent Plaintiffs and Facebook can expedite the presentation of evidence at trial without undue confusion, they are committed to doing so.

## XVI.    EXPEDITED TRIAL SCHEDULE

Plaintiffs and Facebook do not believe that this case can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

## XVII.    SCHEDULING

**A.    Plaintiffs' Statement**

Plaintiffs propose the schedule listed in the table below. For ease of reference, proposed

dates regarding a motion for class certification are also included. Plaintiffs also suggest that the Court hold case management conferences every six weeks beginning in November 2019.

| Event | Date |
|---|---|
| Initial disclosures | December 10, 2019 |
| Substantial completion of document production | August 31, 2020 |
| Deadline for amending pleadings | October 2, 2020 |
| Motion for class certification | October 5, 2020 |
| Disclosure of Plaintiffs' expert witnesses in support of motion for class certification and service of related expert reports | October 5, 2020 |
| Opposition to motion for class certification | December 7, 2020 |
| Disclosure of Defendants' expert witnesses in opposition to motion for class certification and service of related expert reports | December 7, 2020 |
| Reply in support of motion for class certification | February 8, 2021 |
| Disclosure of Plaintiffs' rebuttal expert witnesses in support of motion for class certification and service of related expert report(s) | February 8, 2021 |
| Close of fact discovery | March 4, 2021 |
| Disclosure of expert witnesses and service of related expert reports | March 29, 2021 |
| Disclosure of rebuttal expert witnesses and service of related expert reports | May 10, 2021 |
| Deadline for expert discovery (i.e., deadline for taking depositions of experts) | June 21, 2021 |
| Deadline for non-dispositive motions (expert) | July 19, 2021 |
| Deadline for dispositive motions | August 9, 2021 |
| Oppositions to dispositive motions | September 3, 2021 |

| | |
|---|---|
| Replies ISO dispositive motions | September 24, 2021 |
| Settlement conference | October 25, 2021 |
| Pretrial conference | December 20, 2021 |
| Trial | January 10, 2022 |

## B.    Facebook's Statement

For all of the reasons articulated above, Facebook believes it is premature to set a scheduling order in this case until Facebook's 1292(b) Motion and any resulting appeal have been resolved.  At that time, any subsequent deadlines should be focused initially on discovery and briefing pertaining to the individual named Plaintiffs' Article III standing and the merits of their surviving individual claims.  All other deadlines should follow a ruling on those issues.

Nevertheless, if the Court is inclined to set deadlines at this stage, Facebook proposes the following schedule (up through proposed dates regarding class certification briefing and argument):

| Event | Date |
|---|---|
| Initial disclosures due | Within 30 days of resolution of Facebook's pending 1292(b) Motion |
| Completion of "**Stage 1**" discovery (i.e., discovery into threshold standing issues relating to the individual named plaintiffs, as well the surviving claims being brought by the individual named plaintiffs) | June 26, 2020 |
| Completion of briefing and argument on summary judgment with respect to the individual named plaintiffs' surviving claims | August 31, 2020 |
| Completion of "**Stage 2**" discovery (i.e., broader discovery aimed at ascertaining whether class certification is appropriate with respect to any of the individual named plaintiffs whose individual claims have survived summary judgment motion practice) | March 12, 2021 |
| Completion of briefing and argument on class certification issues | June 11, 2021 |

Even if the Court is inclined to set some deadlines at this stage, Facebook believes that it would certainly be premature in any event to attempt to anticipate deadlines that extend beyond the class certification stage.

## XVIII. TRIAL

**A.     Plaintiffs' Statement**

Plaintiffs expect that this case will be tried to a jury, except to the extent that Plaintiffs seek equitable relief. Plaintiffs believe it is premature to estimate the length of trial, which will depend upon, among other things, the scope of class treatment, if any. Plaintiffs do not anticipate, however, that the trial would last more than four weeks.

**B.     Facebook's Statement**

Facebook intends to ask for a jury trial with respect to all issues in the event that this case reaches that stage of litigation.  For all of the reasons discussed above, Facebook believes it is premature to estimate the length of any trial that might ultimately occur.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

**A.     Plaintiffs' Statement**

Not applicable.

**B.     Facebook's Statement**

Facebook hereby certifies, through its counsel of record in this action, that it is a publicly traded corporation, that it has no parent corporation, and that no publicly traded corporation owns more than 10% of its stock.

## XX.   PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.


Dated: October 28, 2019                                    Respectfully submitted,


KELLER ROHRBACK L.L.P.                        BLEICHMAR FONTI & AULD LLP

By:   */s/ Derek W. Loeser*
      Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

By:   */s/ Lesley E. Weaver*
      Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

GIBSON, DUNN, & CRUTCHER LLP
By: */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306

Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley (SBN 154148)
Brian M. Lutz (SBN 255976)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Joshua S. Lipshutz, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of October, 2019, at Washington, District of Columbia.

*/s/ Joshua S. Lipshutz*
Joshua S. Lipshutz

## CERTIFICATE OF SERVICE

I, Joshua S. Lipshutz, hereby certify that on October 28, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Joshua S. Lipshutz*

Joshua S. Lipshutz