Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' BRIEF IN RESPONSE TO PRETRIAL ORDER NO. 28**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor |

# TABLE OF CONTENTS

A.   Because Facebook Has Refused to Waive the One-Way Intervention Rule, Cross-Motions for Summary Judgment Should Not Precede Class Certification. .................................................................................................2

B.   Discovery Focused Only on the Named Plaintiffs Will Not Advance This Litigation. ...........................................................................................3

C.   Facebook Has Already Collected or Produced Classwide Documents to Numerous Governmental Agencies. .............................................................5

D.   Discovery Needed for Class Certification .....................................................7

Topic 1: Discovery about third-party access. ................................................7

Topic 2: Discovery about Facebook's monitoring of third-party access. ........8

Topic 3: Unjust-enrichment discovery. ..........................................................8

Topic 4: The data format in which third parties accessed users' content and information. ...................................................................................9

Topic 5: How Facebook has structured its business so as to deliver audio visual materials to users...................................................................9

Topic 6: All policies, procedures, and other documents or information on which Facebook intends to rely to prove consent. .........................10

E.   Plaintiffs' Two Proposed Schedules ..........................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...........................................................................................2

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2015 WL 4397175 (C.D. Cal. June 8, 2015) ......................................................3

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................8

*In re High Tech Employee Antitrust Litig.*,
  No. 11-cv-2509 (N.D. Cal. Oct. 26, 2011), ECF No. 88.....................................5

*Hill v. NCAA*,
  865 P.2d 633 (Cal. 1994) .....................................................................................5

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-md-02143-RS (N.D. Cal. Apr. 7, 2011), ECF No. 379 .........................5

*Sanders v. Am. Broad. Cos.*,
  978 P.2d 67 (Cal. 1999)........................................................................................5

*Schwarzschild v. Tse*,
  69 F.3d 293 (9th Cir.1995) ...................................................................................3

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ..............................................................................10

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ..............................................................................................6

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ................................................................................7

**Statutes**

Stored Communications Act, 18 U.S.C. § 2702 ........................................................9

Video Privacy Protection Act, 18 U.S.C. § 2710............................................4, 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 23(f)........................................................................3

The Court has asked for briefing that will aid its decision on how to schedule discovery and motion practice in this proposed class action. *See* Pretrial Order No. 28: Case Management at 1, ECF No. 338, Nov. 13, 2019 (ordering the parties to provide briefing on "how to proceed with discovery"). In accordance with the Court's instructions at the November 4 case management conference, Plaintiffs will devote much of this brief to discussing "what [they] would seek" in discovery "that relates to class certification." Tr. of Proceedings ("Tr.") 35:19-20, Nov. 4, 2019; *see infra* § D. Also as instructed, *id.* at 51:3-16, Plaintiffs are submitting two alternative proposed schedules as Appendices to this brief. *See infra* § E.

The underlying issue, however, is how to structure discovery in this case. On that issue, Plaintiffs believe they can best assist the Court's deliberations by explaining why a standard or "traditional" approach to discovery makes the most sense here—and why a "named-plaintiffs-first" approach to discovery and litigation in this case will not save time or money.

*First*, Facebook has refused to explicitly waive the one-way intervention rule. This creates the risk that adopting a schedule in which summary-judgment motion practice comes first will squander substantial work by the Court and parties and prevent a class from *ever* being certified. For if, after cross-motions for summary judgment, Plaintiffs secure a partial or full judgment in their favor and later gain class certification, the Ninth Circuit could still decide on appeal that Facebook did not properly waive the one-way intervention rule. Such a result would make everyone worse off.

*Second*, resolving the individual named Plaintiffs' claims will require much of the same discovery as a classwide adjudication. At the case management conference, for example, Facebook claimed that it lacks specific information on a central question in this case: what user content and information third parties[1] accessed via a user's friends. Tr. at 10:24-11:5. If that is true, then the best way to understand how third-party access may have affected an individual Plaintiff is to focus discovery on Facebook's *general* practices, policies, and procedures

---

[1] As used here, the noun "third party" and adjective "third-party" refer collectively to apps and app developers, whitelisted apps, and business partners.

regarding information-sharing. *See id.* at 14:8-12. Other important questions likewise cannot be resolved by named-Plaintiffs-only discovery. *See infra* pp. 4-5. As a result, narrowing discovery to information unique to the named Plaintiffs will prevent adjudication of even the named Plaintiffs' own claims.

*Third*, Facebook has already collected and produced to numerous regulators significant amounts of material directly relevant to the claims in this case, thus reducing the burden of classwide discovery. The documents collected and produced in these investigations were not focused on particular individual users, let alone the named Plaintiffs here. They were focused instead on general Facebook practices, procedures, and conduct—the same focus for classwide discovery in this case. Sifting these already-collected materials for discovery unique to the named Plaintiffs would actually slow the litigation and impose unnecessary costs. It would also invite needless disputes as to what should and should not be pared from the regulatory productions.

*Fourth*, the discovery needed specifically for class certification substantially overlaps not only with classwide merits, but also with the merits of the named Plaintiffs' individual claims. *See infra* pp. 4-5, 8, 9, 10. In light of this overlap, a single stage of discovery is best suited to resolving this case. *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) ("[C]lass-certification analysis . . . may entail some overlap with the merits of the plaintiffs' underlying claim . . . ." (citation and quotation omitted)).

For all these reasons, a traditional approach to discovery is the most efficient way to conduct this litigation.

## A. Because Facebook Has Refused to Waive the One-Way Intervention Rule, Cross-Motions for Summary Judgment Should Not Precede Class Certification.

The Court's Standing Order encourages parties to consider whether discovery focused solely on the named plaintiffs, followed by cross-motions for summary judgment, should precede class certification. Standing Order for Civil Cases Before Judge Vince Chhabria ¶ 45. At the recent hearing, the Court noted that sometimes it may be efficient to litigate individual claims before class certification. Tr. 19:20-20:4. But the Court also noted that the benefits of such a

procedure only accrue where the defendant is "willing to live with the consequences of doing summary judgment as to the named plaintiffs first"—that is, the defendant "has to waive" the one-way intervention rule. *Id.* at 20:11-13, :20.

Facebook expressly confirmed at the hearing, however, that it will *not* waive the one-way intervention rule. *Id.* at 52:5-8. Facebook confirmed this again in a subsequent meet and confer session. Decl. of Lesley E. Weaver in Supp. of Pls.' Br. in Resp. to Pretrial Order No. 28 ("Weaver Decl.") ¶ 3. If Facebook maintains this position, this threshold issue precludes a ¶ 45-style procedure.

Even if Facebook consented to a schedule in which cross-motions for summary judgment precede class certification, legal risks would still remain.[2] The Ninth Circuit has not given "clear direction" on what constitutes waiver of the one-way intervention rule. *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, at *3 (C.D. Cal. June 8, 2015) ("This Court . . . analyzed the one-way intervention rule in the context of this case '[w]ithout clear direction from the Ninth Circuit[.]'" (citation omitted)).[3] Thus, the procedure involves some risk that even if Plaintiffs were victorious on the merits and then on class certification, the Ninth Circuit would conclude that the one-way intervention rule had not been properly waived. *But see Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir.1995) (noting that the rationale for one-way intervention "disappears when the defendant himself moves for summary judgment before a decision on class certification").

## B. Discovery Focused Only on the Named Plaintiffs Will Not Advance This Litigation.

Plaintiffs recognize that it makes sense to schedule individual merits litigation before class certification—provided that discovery focused solely on the named plaintiffs can resolve those plaintiffs' claims. Standing Order for Civil Cases Before Judge Vince Chhabria ¶ 45.

---

[2] Should Facebook do this, Plaintiffs respectfully request the opportunity to consider and respond.

[3] The district court made this statement while staying the case to allow the defendant to petition the Ninth Circuit under Federal Rule of Civil Procedure 23(f). A motions panel of the Ninth Circuit ultimately denied the petition in a summary order. Order, No. 15-80102 (9th Cir. Aug. 10, 2015).

Indeed, as the Plaintiffs understand it, that proviso must be satisfied before this Court will adopt a ¶ 45 procedure. *See* Tr. 21:4-12 (¶ 45 procedure will be adopted if "sufficient discovery" is "done to ensure that we can fully understand and adjudicate the named plaintiffs' claims").

Here, though, discovery focused solely on what is unique to the named Plaintiffs cannot resolve even those Plaintiffs' own claims. By way of example, at the CMC, Facebook stated that it lacks data on what third parties accessed the named Plaintiffs' content and information, and what content and information they accessed. *Id.* at Tr. 10:24-11:5. If that is true, then Facebook's proposed first stage—discovery limited to the named Plaintiffs—cannot resolve what is among the most important merits questions in this case. And, crucially, it cannot resolve that question *even for the named Plaintiffs themselves*. The best evidence Facebook has on what third parties accessed Plaintiffs' content and information, and what content and information they accessed, will come from Facebook's *general* practices, policies, and procedures on third-party access. *See id.* at 14:8-12. It is for this reason that there is very little daylight between discovery necessary to adjudicate individual and class claims. *Id.* at 24:13-15.

Facebook lacks an adequate response to this point. At the CMC, it responded that individual discovery can focus on "bilateral relationships"—i.e., what apps or business partners Plaintiffs authorized to access their content and information directly. *Id.* at 9:18. But a central issue in this case is the access that third parties had to users' content and information via those users' *friends*. On that issue, discovery on bilateral relationships can do little if anything to advance this litigation. *See id.* at 10:2-12. Moreover, even if all the named Plaintiffs had "authorized friend-sharing"—as Facebook hypothesized at the hearing, *id.* at 32:12-21—that fact would be irrelevant for business partners and whitelisted apps, for which no consent was sought or given.

Nor can Facebook's proposed first stage of discovery resolve other important questions. Discovery focused on what is unique to the named Plaintiffs cannot show how Facebook structured its business to provide audio visual materials, an issue relevant to the VPPA. *See* Pretrial Order No. 20: Granting in Part and Denying in Part Mot. to Dismiss First Am. Compl. at

35, ECF No. 298, Sept. 9, 2019. It cannot show how Facebook monitored or controlled third parties, since Facebook's monitoring and control of third parties, or its lack thereof, was a *systemic* issue. By its nature, discovery on that issue cannot concern merely the named Plaintiffs. It also seems unlikely that Facebook could provide useful discovery on unjust enrichment that is focused solely on the named Plaintiffs.

Finally, at the case management conference, Facebook appeared to suggest that discovery limited to the named Plaintiffs and to the apps they directly authorized may be able to show whether they had a reasonable expectation of privacy in their content and information. *Id.* at 12:22-13:5. This position rests on a legal misunderstanding. A "reasonable expectation of privacy" is an "objective entitlement founded on broadly based and widely accepted community norms." *Hill v. NCAA*, 865 P.2d 633, 655 (Cal. 1994). Whether Plaintiffs had a reasonable expectation of privacy, then, is judged by an objective, not a subjective, standard. It depends not on what the named Plaintiffs expected, but on what a "reasonable person" would expect. *Sanders v. Am. Broad. Cos.*, 978 P.2d 67, 78-79 (Cal. 1999). It is, in short, a classwide issue that discovery limited to the named Plaintiffs cannot resolve.

## C. Facebook Has Already Collected or Produced Classwide Documents to Numerous Governmental Agencies.

Because discovery focused only on the named Plaintiffs cannot advance this case's resolution, a more traditional litigation schedule is appropriate. Conveniently, the burden that traditional discovery will place on Facebook can be reduced by productions from other cases or investigations. This kind of reduced burden is likely why courts in this District routinely order production of materials produced in other investigations, even before ruling on a motion to dismiss. *See, e.g.*, *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509 (N.D. Cal. Oct. 26, 2011), ECF No. 88 (production of DOJ documents prior to resolution of motion to dismiss); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143-RS (N.D. Cal. Apr. 7, 2011), ECF No. 379 (order requiring production of DOJ documents prior to resolution of motions to dismiss).

Several governmental investigations have arisen out of the Cambridge Analytica scandal. The most significant of these is the FTC's extended investigation into Facebook's handling of

user content information, which has now resulted in two consent decrees. The FTC has confirmed that it has no objection to Facebook producing its demand letters and correspondence relating to the scope of discovery. Weaver Decl. ¶ 5. Plaintiffs have conveyed the FTC's position to Facebook and asked for production of that correspondence with the FTC. *Id.* ¶ 6. It has not yet been produced. *Id.*

This is not the only source of materials already collected. In the wake of the Cambridge Analytica scandal, Facebook launched a still-ongoing investigation into apps that may have misused users' content and information. *See id.*, Ex. 3. A declaration submitted by Facebook in a proceeding involving the Massachusetts Attorney General reveals that Facebook has identified a large number of "at risk" apps, and collected many of the policies, procedures, standards, and agreements governing third-party access.[4] *Id.*, Ex. 2. This investigation is obviously relevant here. Also relevant here are recent public requests for information issued by the California Attorney General's office, which are also attached. *Id.*, Exs. 4-5.

Facebook is in the best position to identify relevant investigations and Plaintiffs have asked that it do so. *Id.* ¶ 4. Plaintiffs believe that when Facebook identifies the relevant investigations and produces documents sufficient to show what was sought and produced in those actions, many will be focused on claims central to this litigation. And understanding what was previously collected and preserved is a reasonable, efficient starting point for discovery discussions.

For these reasons, Plaintiffs ask that Facebook identify all relevant investigations, and produce the requests for documents and related correspondence as soon as possible. Such production can be made consistent with the terms of the operative protective order in this action,

---

[4] Facebook has asserted a claim of work-product and attorney-client privilege over the results of the investigation. The Massachusetts Attorney General has challenged this claim, which will be adjudicated shortly by a Massachusetts court. Weaver Decl., Ex. 3. Even if Facebook's claim of privilege applies to conclusions and analyses, however, the underlying facts uncovered by the investigation are not privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 394–95, (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]")

should such communications be deemed confidential.

### D.   Discovery Needed for Class Certification

The Court has asked Plaintiffs to identify the major categories of discovery necessary for class certification. Accordingly, Plaintiffs provide the following list:

*Topic 1: Discovery about third-party access.* This category of discovery seeks to learn which third parties accessed user content, how they did so, for what purpose, how they used it, where it is now, and what steps Facebook took to ensure they abided by privacy settings. Specifically, it includes:

- Facebook's policies, procedures, standards, and agreements enabling third parties to access user content and information.
- Facebook's policies, procedures, standards, and agreements governing the fields or categories of user content and information that third parties could access.
- Communications about these policies, procedures, standards, and agreements.
- Facebook's data evidencing third parties' access to user content and information.

This discovery will help to show that major merits questions—what content and information third parties accessed, and who these third parties were—can be answered using classwide evidence. *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("Of course, uniform corporate policies will often bear heavily on questions of predominance and superiority.").

Plaintiffs emphasize that this discovery must include discovery about third parties' access to users' content and information via users' friends. Emphasis of this point is necessary because, at the case management conference, Facebook appeared not to understand how central this discovery is to Plaintiffs' allegations. To adopt the Court's football metaphor, discovery on this question is needed to "advance the ball." *See, e.g.*, Tr. 10:10, 11:17.

Notably, Plaintiffs are not seeking production of all data that Facebook has about third-party access. Indeed, Plaintiffs are mindful that the volume of potential data to be produced could be overwhelming for all parties. Rather, at the outset, Plaintiffs seek discovery on what

kinds of data, by category, Facebook has or lacks on third-party access. Plaintiffs are willing to engage in discussions about the most efficient methods to discover this information, including through deposition, interrogatories, or meetings of technical experts.

Finally, Plaintiffs note that much of the discovery in this category will also be relevant to merits questions related to third parties' access. Just as one example, Facebook's policies, procedures, standards, and agreements on access will be relevant not only to whether access can be proven classwide (a class-certification question), but also to what that access was (a merits question).

*Topic 2: Discovery about Facebook's monitoring of third-party access.* This category of discovery includes:

- Facebook's policies, procedures, and standards for monitoring and controlling third parties' access to, and use of, users' content and information.
- Communications about these policies, procedures, and standards.

This discovery will help to show whether Facebook pursued a unified course of conduct when it failed to properly monitor and control how third parties were accessing and using users' content and information. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (typicality depends in part on "whether other class members have been injured by the same course of conduct"). Plaintiffs again believe that many of the documents will already have been gathered and produced to regulators in response to investigations arising from the Cambridge Analytica scandal.

The discovery in this category will also be relevant to several merits questions, including whether Facebook was negligent or grossly negligent in its monitoring or control of third parties' use of user content and information.

*Topic 3: Unjust-enrichment discovery.* This category of discovery includes the following:

- Facebook's policies, procedures, and agreements governing the revenue or other things of value it gained from third-party access to users' content and information.

- Communications about these policies, procedures, and agreements.
- Facebook's data evidencing the revenue or other things of value it gained from third-party access to users' content and information.

This discovery will be used to show that classwide evidence can determine the amount of revenue or value Facebook gained from the access it gave third parties to user content and information.

As they did in their discussion of topic 1, above, Plaintiffs emphasize that this category of discovery does not require Facebook to produce *all* the data it may have about the revenue it gained via third-party access to users. At a minimum, however, Plaintiffs need discovery on what *categories* of data Facebook has or lacks on this subject. This will help the Court determine whether that data can be used to prove unjust enrichment on a classwide basis. Plaintiffs are ready to engage in discussions regarding efficient production of such information.

*Topic 4: The data format in which third parties accessed users' content and information.* Discovery related to the Stored Communications Act (SCA) claim will include whether Facebook enabled third parties to access user content and information when that content and information was "in electronic storage." 18 U.S.C. § 2702(a)(1). Similarly, to recover under the Video Privacy Protection Act (VPPA), Plaintiffs will need to prove that when third parties accessed data showing what audio visual materials that users had requested or obtained, that data contained "personally identifiable information." *Id.* § 2710(b)(1); *see also id.* § 2710(a)(3).

Thus, discovery on the data format in which third parties accessed users' content and information will help to show that classwide evidence can be adduced to prove whether the content and information was in electronic storage or contained personally identifiable information. This category of discovery will necessarily be relevant to the merits under the SCA and VPPA. Such discovery may be most efficiently accomplished following conferences between experts on both sides.

*Topic 5: How Facebook has structured its business so as to deliver audio visual materials to users.* In this category, Plaintiffs seek to determine, among other things, the ways in

which Facebook has delivered audio visual materials to users and the resources Facebook has devoted to that delivery. This discovery can then be used to show that Facebook's status as a video tape service provider under the VPPA has not varied from affected user to affected user and thus can be proven on a classwide basis. Note that this category of discovery also goes to the *merits* of whether Facebook is a video tape service provider. *See* Pretrial Order No. 20: Granting in Part and Denying in Part Mot. to Dismiss First Am. Compl. at 35 (noting that Facebook may be a video tape service provider if it "engages in the business of delivering audio visual materials" and "its business is significantly tailored to serve that purpose" (citation and quotation omitted)).

> ***Topic 6: All policies, procedures, and other documents or information on which Facebook intends to rely to prove consent.*** The nature of these documents will be relevant to whether consent is, as Plaintiffs strongly suspect, a classwide issue. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018) (noting that the kind of consent defense that a defendant puts forward may bear on whether class certification is appropriate).

## E.   Plaintiffs' Two Proposed Schedules

In accordance with the Court's instructions, Plaintiffs are submitting two proposed schedules with this briefing. The first, which envisions a traditional litigation schedule, is an amended version of the schedule Plaintiffs proposed in their Case Management Schedule. *See* App. A. After seeing the traditional litigation schedule that Facebook has proposed, Plaintiffs amended their proposed schedule in an effort to find a middle ground.

Plaintiffs' second proposed schedule envisions a ¶ 45-style schedule. *See* App. B. As Plaintiffs have noted, scheduling cross-motions for summary judgment before class certification will require both individual and classwide discovery. Because this will be time-consuming, Plaintiffs have proposed a relatively lengthy time for completion of that discovery before the deadline for cross motions for summary judgment. The fact that both individual and classwide discovery is necessary for the meaningful adjudication of even the named Plaintiffs' claims, in

our view, strongly supports adoption of the traditional schedule Plaintiffs have proposed instead of a phased schedule in which broad discovery will be necessary upfront but the adjudication based on that discovery will be limited solely to the named Plaintiffs.

*     *     *

For the reasons given here, the Court should adopt a single-phased litigation schedule. *See* App. A.

Dated: November 18, 2019                                        Respectfully submitted,


KELLER ROHRBACK L.L.P.                              BLEICHMAR FONTI & AULD LLP

By:     */s/ Derek W. Loeser*                              By:     */s/ Lesley E. Weaver*
          Derek W. Loeser                                                 Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)          Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)       Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*)  Joshua D. Samra (SBN 313050)
Cari Campen Laufenberg (admitted *pro hac vice*)   555 12th Street, Suite 1600
1201 Third Avenue, Suite 3200                      Oakland, CA 94607
Seattle, WA 98101                                  Tel.: (415) 445-4003
Tel.: (206) 623-1900                               Fax: (415) 445-4020
Fax: (206) 623-3384                                lweaver@bfalaw.com
dloeser@kellerrohrback.com                         adavis@bfalaw.com
lsarko@kellerrohrback.com                          jsamra@bfalaw.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com


*Plaintiffs' Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of November, 2019, at Seattle, Washington.

/s/ *Derek W. Loeser*
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on November 18, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via U.S. Mail:**

Robert Zimmerman
329 Sandpiper Lane
Hampstead, NC 28443

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
Keker Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

Anjeza Hassan
Ibrahim Hassan
Mirela Hysa
8349 Cretan Blue Lane
Las Vegas, NV 89128

Kosta Hysta
6877 Fox Lane
Waterford, MI 48327

**And via email:**

Robert Zimmerman
bobzimmerman@usa.com

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
pmalhotra@keker.com
bwilliams@kvn.com
bwilliams@kvn.com

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
_____
Sarah Skaggs

# APPENDIX A

**MDL Plaintiffs' Proposed Case Schedule**
**Single-Phase**

| Date | Event |
|---|---|
| December 10, 2019 | Initial disclosures |
| December 11, 2020 | Substantial completion of document production |
| February 2, 2021 | Deadline for amending pleadings |
| February 5, 2021 | Motion for class certification |
| February 5, 2021 | Disclosure of Plaintiffs' expert witnesses in support of motion for class certification and service of related expert reports |
| April 9, 2021 | Opposition to motion for class certification |
| April 9, 2021 | Disclosure of Defendants' expert witnesses in opposition to motion for class certification and service of related expert reports |
| June 9, 2021 | Reply in support of motion for class certification |
| June 9, 2021 | Disclosure of Plaintiffs' rebuttal expert witnesses in support of motion for class certification and service of related expert report(s) |
| July 9, 2021 | Close of fact discovery |

| Date | Event |
|---|---|
| July 30, 2021 | Disclosure of expert witnesses and service of related expert reports |
| September 10, 2021 | Disclosure of rebuttal expert witnesses and service of related expert reports |
| October 21, 2021 | Deadline for expert discovery (i.e., deadline for taking depositions of experts) |
| November 19, 2021 | Deadline for non-dispositive motions (expert) |
| December 10, 2021 | Deadline for dispositive motions |
| January 14, 2022 | Oppositions to dispositive motions |
| February 4, 2022 | Replies ISO dispositive motions |
| March 4, 2022 | Settlement conference |
| April 30, 2022 | Pretrial conference |
| May 21, 2022 | Trial |

# APPENDIX B

**MDL Plaintiffs' Proposed Case Schedule**
**Dual-Phase**

| Date | Event |
|---|---|
| **PHASE 1 – Individual Plaintiff Issues** ||
| December 10, 2019 | Initial Disclosures |
| February 10, 2021 | Close of Phase 1 Discovery |
| March 10, 2021 | Expert disclosures |
| April 10, 2021 | Rebuttal expert disclosures |
| May 10, 2021 | Deadline for Plaintiff's MSJ Opening Brief |
| June 25, 2021 | Deadline for FB's MSJ Opposition/Opening Brief |
| July 26, 2021 | Deadline for Plaintiff's MSJ Reply/Opposition Brief |
| August 12, 2021 | Deadline for FB's Reply Brief |
| August 26, 2021 | Hearing on MSJ |
| **PHASE 2 – Classwide Discovery (Both Class-Certification-Related and Merits-Related)** ||
| Immediately following order on MSJ (if any) | Phase 2 discovery begins |
| December 21, 2021 | Class Certification Motion and Disclosure of Class Certification Experts |

| Date | Event |
|---|---|
| January 28, 2022 | Class Certification Opposition and Disclosure of Class Certification Experts |
| February 28, 2022 | Class Certification Reply and Disclosure of Class Certification Rebuttal Experts |
| March 28, 2022 | Hearing on Class Certification |
| April 28, 2022 | Close of Phase 2 discovery |
| June 10, 2022 | Classwide Summary Judgment Motions |
| July 11, 2022 | Classwide Summary Judgment Oppositions |
| August 11, 2022 | Classwide Summary Judgment Replies |
| September 8, 2022 | Hearing on Classwide Summary Judgment |
| November 22, 2022 | Pretrial Conference |
| December 13, 2022 | Trial Start |