Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK'S SUPPLEMENTAL BRIEF REGARDING PROPOSED CASE SCHEDULE** |

**INTRODUCTION**

At the November 4, 2019 Case Management Conference ("CMC"), the Court asked Facebook to submit supplemental briefing regarding Facebook's request (i) to complete discovery in two stages and (ii) for an opportunity to move for summary judgment as to the named plaintiffs before class-wide discovery begins. The Court asked Facebook to explain its proposal in more detail, including by describing the specific discovery that Facebook would propose to occur during the first phase of discovery. The Court also ordered the parties to submit two proposed case schedules—one adopting Facebook's proposal for an early summary judgment phase directed to the named Plaintiffs, and the other contemplating that the parties would litigate class certification before, or in conjunction with, class-wide merits issues. Facebook's proposed schedules are attached as **Exhibit A**.

Under Facebook's first, and proposed, schedule, the parties would conduct preliminary discovery and Facebook would move for summary judgment as to the named Plaintiffs before class-wide discovery begins.[1] Before the parties commence discovery regarding potentially tens of thousands of app developers and the information that millions of different applications may have accessed, Facebook should have the opportunity to test the named Plaintiffs' standing and prove that the majority of their claims fail on the merits because each Plaintiff consented to the data-sharing practices that lie at the heart of their claims.

Preliminary discovery concerning the named Plaintiffs is consistent with the general rule that standing is a potentially dispositive "jurisdictional element that must be satisfied prior to class certification." *Nelsen v. King Cnty*, 895 F.2d 1248, 1249 (9th Cir. 1990). Here, discovery related to the named Plaintiffs' privacy settings, the information they shared on Facebook, and the apps and device manufacturers that they personally authorized may eliminate the standing of some or all of these Plaintiffs to pursue some or all of their claims. Even if discovery reveals that one or more of the named Plaintiffs do have standing, the Ninth Circuit similarly recognizes that courts properly "consider a Rule

---

[1] Although Facebook requests permission to move for summary judgment on targeted threshold issues before class certification, Facebook does not waive its "one-way intervention" protections and therefore does not consent to Plaintiffs' seeking dispositive relief before any class is certified. *See Hamm v. Mercedes-Benz USA*, No. 5:16-CV-03370-EJD, 2019 WL 4751911 (N.D. Cal., Sept. 30, 2019) (defendant does not waive its "one-way intervention" protections by moving for summary judgment before class certification.)

56 motion [before class discovery]," where, as here, "early resolution" of a narrow merits issue "h[olds] the promise of saving all of the parties considerable time and expense." *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984). The Court made clear in its Order on Facebook's Motion to Dismiss that many—and perhaps all—Facebook users consented to their friends' sharing their user data with third party app developers. Determining which named Plaintiffs consented to this practice could dispose of the vast majority of Plaintiffs' claims and the discovery necessary to litigate them on a class-wide basis. Accordingly, Facebook requests that the Court adopt its first proposed case schedule.

A.  **The Named Plaintiffs' Standing Should be Resolved Before Class Certification.**

Threshold jurisdictional questions regarding which, if any, individual named Plaintiffs have standing to pursue Plaintiffs' prioritized claims should be resolved before this case moves forward. In its Order on Facebook's Motion to Dismiss, the Court recognized that some of the named Plaintiffs may not have an actionable privacy injury "based on their own Facebook experiences," and stated that "Facebook will be given an opportunity to attempt to knock out individual named plaintiffs on standing grounds." Dkt. 298 at 17 n.6.

As noted, because standing is jurisdictional, it "'must be satisfied prior to class certification.'" *Nelsen*, 895 F.2d at 1249. For this reason, courts in this Circuit frequently delay any ruling as to class certification until the named plaintiffs' standing has been resolved. *See Easter v. American West Financial*, 381 F.3d 948, 962 (9th Cir. 2004) ("the district court correctly addressed the issue of standing before it addressed the issue of class certification."); *Jones v. Micron Technology Inc.*, --- F. Supp. 3d ----, 2019 WL 4232417 (N.D. Cal. Sept. 3, 2019) (dismissing claims for lack of standing and rejecting argument that named plaintiffs' standing should be resolved at the class certification stage); *Van Mourik v. Big Heart Pet Brands, Inc.,* No. 3:17-CV-03889-JD, 2018 WL 1116715 (N.D. Cal., March 1, 2018) (dismissing claim for lack of standing, noting that "[d]istrict courts in our circuit have dismissed state law class claims for lack of standing before the certification stage where no named plaintiff resides in or otherwise interacted with the state."); *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *2 (N.D. Cal. Aug. 15, 2016) ("The Court thus must consider [the named plaintiff's] standing to pursue his proposed class-wide declaratory, injunctive, and damages relief before anything else."); *See Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301

(N.D. Cal. Dec. 21, 2016) (addressing motion for summary judgment before class certification motion, noting that "Article III standing must be determined prior to consideration of the requirements for class certification."); *Larsen v. Trader Joe's Co.,* No. C 11-05188 SI., 2012 WL 5458396 at *4 (N.D. Cal. June 14, 2012) (dismissing claim and explaining that "before a class can be certified, the named plaintiffs must have standing individually"); *In re Abbott Labs. Norvir Anti-Trust Litig.*, No. 04-CV-1511-CW, 2007 WL 1689899, at *2 (N.D. Cal. June 11, 2007) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

Before the Court can certify a class at the behest of these named Plaintiffs, it must satisfy itself that they personally satisfy Article III's standing requirements as to each of the Plaintiffs' prioritized claims. Yet, at this stage, neither the Court nor Facebook knows <u>any</u> relevant details about the Plaintiffs or their experiences, such as whether they shared allegedly sensitive information on Facebook that was obtained by third parties without consent, and which Plaintiffs, if any, had a reasonable expectation of privacy. Facebook proposes that the parties engage in preliminary, precertification discovery on these issues and that the Court provide Facebook an opportunity to move for summary judgment regarding some or all of the named Plaintiffs' standing before class discovery begins. The specifics of this plan are detailed immediately below.

**The identities of the named Plaintiffs**. At the outset of discovery, Plaintiffs would properly identify themselves by providing Facebook with either the email address or the phone number associated with each named Plaintiffs' Facebook account. To date, the only identifying information that Plaintiffs have provided consists of the Plaintiffs' names, their states of citizenship, and the approximate year in which each Plaintiff joined Facebook. *See* Dkt. 257 ¶¶ 27-263. Given that Facebook has more than 2.5 billion users, this information is insufficient to identify particular users with accuracy, and it certainly will not be sufficient for Facebook to produce data regarding specific users' accounts during discovery regarding the named Plaintiffs' claims.[2]

---

[2] Many of the named Plaintiffs have common names. For instance, the named Plaintiffs include individuals named Samuel Armstrong (¶ 43), Anthony Bell (¶ 51), Olivia Johnston (¶ 136), Tyler King (¶ 144), William Lloyd (¶ 60), Scott McDonnel (¶ 176), Ian Miller (¶ 184), and Dustin Short

Each Facebook account is associated with a particular email address and/or phone number. If Plaintiffs provide Facebook with the email address or phone number associated with each of their accounts, Facebook can identify those accounts and locate and produce Plaintiff-specific discovery. To date, Plaintiffs have refused to provide such information to Facebook, which is essential to get the discovery process started.

**Plaintiffs' data-sharing practices**. Once Facebook is able to identify the named Plaintiffs accurately, it would propound written discovery and depose each named Plaintiff to learn:

- The type(s) of information each Plaintiff shared on Facebook and other social media platforms;

- The type(s) of shared information each Plaintiff understands to be private;

- The particular privacy settings that each Plaintiff selected on Facebook, including their general settings and settings on specific content, and the settings they selected on other social media platforms;[3]

- The size and composition of each Plaintiff's friend network and "friends of friends" network on Facebook including the nature of their relationships with these circles, as well as the size and composition of networks they share with on other social media platforms;

- Whether each Plaintiff is a member of any Facebook groups, the number of individuals in those groups, and what content, if any, they have posted in such groups;

- What efforts each Plaintiff took to keep his or her shared information private and whether that information was shared on other social media platforms;

- With what applications each Plaintiff interacts and has downloaded to any device;

- Whether each Plaintiff interacts with videos on Facebook and, if so, the nature of those videos and interactions; and

- What injuries each Plaintiff has suffered as a result of any private information having

---

(¶ 226). Numerous individuals with these names reside in each Plaintiff's home state. The named Plaintiffs also do not provide the names that they used to sign up for Facebook, which may not necessarily be their legal names. And the Plaintiffs' alleged states of residence may not help identify their accounts because users are not required to, and often do not, share their home towns or current cities on Facebook, and in other instances their location information is incorrect or outdated. To use one example, Plaintiffs allege that Plaintiff William Lloyd is a citizen and resident of New York. Facebook has no way to know whether this Plaintiff's Facebook profile uses the name William Lloyd, or instead uses Bill Lloyd, Billy Lloyd, Will Lloyd, W. Lloyd, or some other name. Nor does Facebook know whether William Lloyd's profile identifies New York as his home state.

[3]  As the Court noted in its Order on Facebook's Motion to Dismiss, "[i]t seems quite possible that a user whose settings allow information to be shared not only with friends, but friends of friends, loses any expectation of privacy." Dkt. 298 at 11 n.3.

been shared with additional third parties.

Discovery regarding these issues is essential—it will allow Facebook to understand the type of information underlying each of the named Plaintiff's claims, whether each Plaintiff had a reasonable expectation of privacy over that information, and whether any sharing of that information with third parties could have harmed each Plaintiff. This is the primary information that the Court would need to adjudicate the individual Plaintiffs' standing, and Facebook anticipates that the account information, discovery responses, and testimony alone will support a motion for summary judgment as to some or all of the named Plaintiffs.

**Plaintiffs' data and Facebook's enforcement actions**. During the first phase of discovery, Facebook would also produce relevant documents, to the extent they exist and are available,[4] in the following categories of materials in response to appropriate discovery requests from Plaintiffs:

- Available records regarding the named Plaintiffs' accounts on Facebook. This will include all existing records regarding the information Plaintiffs have shared on Facebook, each Plaintiffs' friend network, the applications with which each Plaintiff interacted through Facebook Login, and available information regarding each Plaintiff's privacy settings;

- Records showing which applications and integration partners each Plaintiff authorized and the specific permissions that were given;

- Records showing which categories of user data these applications and integration partners may have had authority to access;

- Records showing which of these applications, if any, received extensions after Facebook launched Graph API v2 in 2014 (the so-called "whitelisted apps") and the data that each of these applications had permission to access as a result of these extensions;

- Records showing which of the named Plaintiffs' device manufacturers had access to user data and what data these manufacturers had permission to access;

- Data regarding Facebook's enforcement actions against third party applications; and

- Additional non-privileged documents related to enforcement actions against specific applications with which the Plaintiffs interacted.

The information Facebook intends to produce will complement Plaintiffs' recollections regarding the information they chose to share on Facebook, and allow the parties better to assess the type of information underlying the Plaintiffs' claims, how broadly the Plaintiffs chose to share this

---

[4]  Information from these categories may only be available for certain timeframes or otherwise limited in scope. Facebook cannot determine the full scope of what records are available prior to conducting a full investigation, collection, and review of relevant documents.

information, and whether Plaintiffs had a reasonable expectation of privacy over any information that was disclosed to third parties. Facebook also will produce data allowing the parties to assess whether Plaintiffs could have been affected by any data sharing with Facebook's integration partners and device manufacturers or whether Facebook adequately enforced its data-use policies with regard to such third parties.

**B.  Plaintiffs' Consent to Friend Sharing Should be Resolved Before Class Certification.**

Before the parties embark on costly, burdensome, and time-consuming class-wide discovery regarding the friend-sharing practices of millions of individual third party applications, Facebook should have the opportunity to demonstrate that each of the named Plaintiffs consented to their friends' sharing of data with third party apps. If the facts demonstrate such consent, that would terminate Plaintiffs' claims based on friend sharing and substantially narrow this case to claims based on a discrete, identifiable group of whitelisted applications and device manufacturers. *See Wright*, 742 F.2d at 544 (approving district court's resolution of threshold merits questions before class certification "to protect both the parties and the court from needless and costly further litigation.")

In its Order on Facebook's Motion to Dismiss, the Court identified four theories of liability underlying Plaintiffs' claims: (i) that Facebook allowed third-party app developers—"the Aleksandr Kogans of the world," Dkt. 298 at 25—to access information about the friends of users who interacted with their applications; (ii) that Facebook allegedly allowed so-called "whitelisted apps" to continue accessing certain user data after Facebook announced new data-sharing practices in 2014; (iii) that Facebook allegedly allowed mobile phone manufacturers to access certain user data; and (iv) that Facebook allegedly failed to properly police apps' use of user data. *Id*. at 6-10.

The Court has held that users who registered for Facebook in 2009 or later consented to friend sharing with third-party app developers, and dismissed this first theory of liability as to those users. Dkt. 298 at 27. But the Court left open whether users who registered for Facebook before 2009 similarly consented to Facebook's updated terms in 2009 and thereby consented to friend sharing. *Id*. This issue should be resolved before class certification. Friend sharing with third party app developers concerns tens of thousands of app developers and millions of individual apps. If, as Facebook anticipates, the Court finds that each of the named Plaintiffs consented to their friends sharing data

with third party applications—no matter when they registered for Facebook—claims based on this theory of liability will be dismissed, and there will be no need for the parties to conduct class discovery regarding millions of standard third party apps. Class discovery would instead focus on a much smaller universe of identifiable whitelisted apps and device manufacturers and Facebook's enforcement actions.

Facebook proposes that the parties complete targeted discovery regarding pre-2009 users' consent to friend sharing before class discovery begins, including the following topics:

- Facebook's pre-2009 policies;
- Privacy-related disclosures, communications, and other materials provided to users during the pre- and post-2009 time period.
- Actions taken by the named Plaintiffs who joined Facebook pre-2009 that demonstrate their acknowledgement and acceptance of the post-2009 terms and conditions.

Specifically, Facebook believes it will be straightforward to demonstrate that users who signed up for Facebook pre-2009 consented to the updated terms in 2009. Discovery will show that in 2009, Facebook made changes to the privacy settings available to all users, and before rolling out these new settings, Facebook: (i) held a review and comment period for its new privacy terms, (ii) issued blog posts and other announcements explaining the terms; and (iii) required all existing users to affirmatively update their privacy settings using a Privacy Wizard.

Early resolution of this narrow threshold issue is likely to protect both the court and the parties from unnecessary protracted discovery and litigation regarding millions of individual third-party apps. Under these circumstances, the Court should stage discovery so that Facebook may move for summary judgment on this issue before the parties litigate class certification.

## CONCLUSION

For the reasons above, Facebook respectfully requests that the Court adopt a case schedule under which (i) the parties conduct preliminary discovery regarding the named Plaintiffs' standing, the merits of the named Plaintiffs' individual claims, and their consent to friend sharing and (ii) Facebook has the opportunity to move for early summary judgment on these issues before the parties litigate class certification.

DATE:  November 18, 2019           Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:   *s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*