Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE: FACEBOOK, INC., CONSUMER )
PRIVACY USER PROFILE LITIGATION.) **NO. 18-md-02843 VC**
_____ )

San Francisco, California
Wednesday, January 8, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          KELLER ROHRBACK LLP
                        1201 Third Avenue - Suite 3200
                        Seattle, Washington  98101
                   BY:  **DEREK W. LOESER, ATTORNEY AT LAW**
                        **CARI C. LAUFENBERG, ATTORNEY AT LAW**

                        BLEICHMAR FONTI & AULD LLP
                        555 12th Street - Suite 1600
                        Oakland, California  94607
                   BY:  **LESLEY E. WEAVER, ATTORNEY AT LAW**
                        **ANNE K. DAVIS, ATTORNEY AT LAW**
                        **JOSHUA D. SAMRA, ATTORNEY AT LAW**

For Defendant Facebook:

                        GIBSON, DUNN & CRUTCHER LLP
                        555 Mission Street - Suite 3000
                        San Francisco, California  94105
                   BY:  **JOSHUA S. LIPSHUTZ, ATTORNEY AT LAW**

                        GIBSON, DUNN & CRUTCHER LLP
                        1881 Page Mill Road
                        Palo Alto, California  94304
                   BY:  **MARTIE P. KUTSCHER, ATTORNEY AT LAW**

Also Present:  Katherine Martin, Facebook

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Reported By:        Marla F. Knox, RPR, CRR, Official Reporter

**APPEARANCES:** **(CONT'D)**

For Defendant Aleksandr Kogan:

               BECKAGE PLLC
               420 Main Street - Suite 1110
               Buffalo, New York  14202
     BY:  **JENNIFER A. BECKAGE, ATTORNEY AT LAW**
     BY:  **MYRIAH JAWORSKI, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | <u>**Wednesday - January 8, 2020**</u>                              <u>**2:14 p.m.**</u> |
| 2 |                          <u>**P R O C E E D I N G S**</u> |
| 3 |                               **---000---** |
| 4 |         **THE CLERK:**  Calling Case Number 18-MD-2843, In Re: |
| 5 | Facebook, Inc., Consumer Privacy User Profile Litigation. |
| 6 |     Counsel, please step forward to the podiums and state your |
| 7 | appearances for the record. |
| 8 |         **MR. LOESER:**  Derek Loeser for Plaintiffs.  Happy New |
| 9 | Year, Your Honor. |
| 10 |         **THE COURT:**  Hello. |
| 11 |         **MS. WEAVER:**  Lesley Weaver for Plaintiffs. |
| 12 |         **THE COURT:**  Hello. |
| 13 |         **MS. LAUFENBERG:**  Good afternoon, Your Honor, Cari |
| 14 | Laufenberg for Plaintiffs. |
| 15 |         **THE COURT:**  Hello. |
| 16 |         **MS. DAVIS:**  Anne Davis for Plaintiffs. |
| 17 |         **THE COURT:**  Hello. |
| 18 |         **MR. SAMRA:**  Josh Samra for Plaintiffs. |
| 19 |         **THE COURT:**  It seems like your team is growing. |
| 20 | I guess that makes sense.  And your team is -- |
| 21 |         **MR. LIPSHUTZ:**  Ours is shrinking, Your Honor. |
| 22 |         **MR. LOESER:**  This is a good trend.  We grow and they |
| 23 | shrink. |
| 24 |         **MR. LIPSHUTZ:**  Good afternoon, Your Honor, Josh |
| 25 | Lipshutz for Facebook. |

1          **THE COURT:**  I guess if you don't have Mr. Snyder here,

2   you have already shrunk.

3          **MR. LIPSHUTZ:**  In some elements, yes, Your Honor.

4          **MR. LOESER:**  And we were wondering how to make fun of

5   him in his absence, Your Honor.

6          **THE COURT:**  We will find a way.  Sorry.

7          **MS. KUTSCHER:**  Martie Kutscher --

8          **THE COURT:**  Sorry.

9          **MS. KUTSCHER:**  -- for Defendants.

10          **THE COURT:**  Sorry.  What was your name?

11          **MS. KUTSCHER:**  Martie Kutscher.

12          **MS. MARTIN:**  And Katherine Martin for Facebook.

13          **THE COURT:**  Okay.  And --

14          **THE CLERK:**  Hold on.  And Defense on the phone?

15          **MS. BECKAGE:**  Hi, good afternoon, Your Honor, Jennifer

16   Beckage of Beckage PLLC for non-prioritized Defendant Aleksandr

17   Kogan.

18          **MS. JAWORKSI:**  Your Honor, this is Myriah Jaworski

19   also on behalf of non-prioritized Defendant Aleksandr Kogan.

20          **THE COURT:**  So do you-all have anything on the agenda

21   or are you just here to kind of monitor it?

22          **MS. BECKAGE:**  Thank you, Your Honor.  This is Jennifer

23   Beckage.  Yes, we wanted to be available to the extent any

24   discussions may impact our clients.

25          **THE COURT:**  Okay.  Just chime in any time you need to

1    I just figured if you had anything in particular you wanted to

2    discuss, we would get that out of the way first.

3              **MS. BECKAGE:**  Not at this time.  Thank you,

4    Your Honor.

5              **THE COURT:**  So as you can see, you-all are not the

6    most interesting case I have today.

7                          (Laughter)

8              **MR. LOESER:**  We can see that.

9              **THE COURT:**  So I did read your case management

10   statement last night.  It sounds like you have some relatively

11   inconsequential beefs that maybe you have resolved by now about

12   how to proceed with discovery.  But what do you want to talk

13   about?

14             **MR. LOESER:**  I think we can start there, Your Honor,

15   and -- first of all, Happy New Year.

16             **THE COURT:**  You too.

17             **MR. LOESER:**  We are here and ready to move this case.

18    Discovery is going very, very slowly.  I think you

19   probably get a sense of that from the letters that we have been

20   bothering you with and Facebook as well.  And the disputes that

21   exist there in some sense they should be easy to resolve.  You

22   know, whether Facebook gives us the rest of the FTC letters,

23   that shouldn't be complicated.  Obviously that earlier

24   investigation is relevant to our case; but they signal to us

25   kind of a huge gap between Facebook's general understanding of

 1    what discovery it should be producing and our view of what we

 2    need to advance this case.

 3         And so every one of the disputes we are having kind of

 4    keep coming back to the same thing.  We are getting very, very

 5    little.  We have been at this case for a while.  We have 47

 6    pages of correspondence from the first FTC production, a

 7    smattering of materials that were produced in the preliminary

 8    discovery packet before the Motion To Dismiss.  And then we

 9    were going to get what was described as a substantial

10    production before this conference.  What we got was about 500

11    pages of information, much of which we didn't request.  They

12    sent us five different copies of their articles of

13    incorporation.

14         And the really big issues, the things that we have been

15    talking about that Your Honor featured at the last conference,

16    the general discovery about who they share with, who gets

17    access, who accessed the Plaintiffs' information generally or

18    specifically, we have none of that.

19         And so where we started last time was talking about

20    Government productions.  It has always seemed to us that if

21    Facebook has already produced something, you can make this a

22    lot more efficient for them; and they can make it more

23    efficient for themselves by starting with those productions.

24         Even there, we thought we were clear with Facebook that we

25    wanted the documents that show what they gave the FTC for all

1   of the documents they have given the FTC.  And what we found

2   out late in December was, in fact, they were only giving us the

3   documents for the later things.

4         So -- and we are just talking about the documents that

5   describe --

6         THE COURT:  What they said, if I recall correctly -- I

7   remember dealing with this on like, I don't know, January 2nd

8   or something like that -- they have said that they want to give

9   you all of the FTC document requests and correspondence with

10  the FTC about those document requests from 2012 forward.  They

11  have already given you the 2018/2019 stuff.  They just don't

12  think you should get the pre-2012 stuff.  Am I remembering that

13  accurately?

14        MR. LIPSHUTZ:  That's correct.

15        MR. LOESER:  That's correct.  And, frankly --

16        THE COURT:  And my inclination on that is that I don't

17  think it was important for you to get the pre-2018 stuff on an

18  expedited basis.

19        MR. LOESER:  Right.

20        THE COURT:  I don't think it is important for you to

21  get the pre-2012 stuff on an expedited stuff.  I also don't see

22  any reason you shouldn't get the 2012 -- pre-2012 stuff.  I

23  understand there is a lower likelihood that that stuff will be

24  relevant or lead to the -- lead to the discovery of material

25  that is relevant now, but it's -- there seems like enough of a

1  possibility that it is worth ordering them to provide it, and

2  it is not burdensome enough to be worried about it too much.

3      So I'm going to order Facebook to provide the pre-2012

4  stuff too, but I don't think it needs to be on an expedited

5  basis.

6          **MR. LIPSHUTZ:**  And to be clear, Your Honor, we never

7  said we wouldn't.  We said we would review those materials as

8  part of the ordinary process of responding to their discovery

9  request.  It was just a question of --

10         **THE COURT:**  Well, just to be clear, you are ordered to

11  provide the pre-2012 stuff as well in that category.

12     On the question of whether Facebook should be required

13  without doing any further review to turn over exactly what it

14  turned over to the Government, I don't think it would be

15  appropriate for me to order that.

16     If Facebook wants to go through the expense of reviewing

17  all that stuff again -- I mean, this is one although I have

18  relatively little experience as a lawyer or a judge, for that

19  matter, in discovery matters, one thing I do have experience in

20  is -- from back in the day -- is turning stuff over to the

21  Government.  And when you turn stuff over to the Government,

22  you worry -- you do worry less about relevance.  You do worry

23  less about privilege.  You do worry less about turning over

24  something that might not be subject to discovery because it is

25  not relevant at all but would be embarrassing because you are

1    dealing with the Government and you are trying to -- you know,

2    it is a different calculus.

3        So if Facebook wants to review all that stuff again, I

4    think it is helpful to have the requests from the FTC and maybe

5    other agencies too.

6        I don't know.  And it is helpful to have the dialogue that

7    occurred between the agency and Facebook about those requests.

8    If Facebook wants to review the stuff again, you know, and

9    wants to spend the time and money on that, I don't think I can

10   order them not to do that; to turn it over before doing that.

11       **MR. LIPSHUTZ:**  Again, Your Honor, we are in the

12   process of doing that and we are responding -- the very first

13   document request that we were obligated to respond to were due

14   on December 26th.  The responses were due on December 26th.  We

15   responded to those.  We turned over actually 3,200 pages of

16   documents, not 500 pages.

17       **THE COURT:**  Okay.  So that's -- that issue is now

18   resolved.

19       **MR. LOESER:**  With one caveat, Your Honor, that is

20   probably worth noting.  I certainly understand the idea that

21   Facebook if it wants to re-review things should.  There are

22   certain things in the Ninth Circuit the attorney-client

23   privilege is waived for documents produced to the Government.

24       So if what they are doing is reviewing for privilege, that

25   would seem unnecessary.  If they are reviewing for relevance,

1    that was the purpose of getting these letters so that --

2        **THE COURT:**  Well, but I'm assuming -- I don't know but

3    I'm assuming that you can have these -- you know, there could

4    still be an inadvertent production that wouldn't waive the

5    privilege, and they would want to be maybe more careful about

6    not making an inadvertent production to you, not the

7    Government.  I don't know.

8        **MR. LOESER:**  That's fine.  I guess our concern -- and

9    this will be the concern that goes through all of the

10   discussion we have today -- is how much time.  And we are --

11   you know, Your Honor entered a schedule that we are obviously

12   very aware of.  The substantial completion date is in October.

13   There is a tremendous amount we need to get from Facebook and

14   review and analyze.  So if we can have -- and maybe this is

15   something that Mr. Lipshutz and I should have discussed -- but

16   a timeframe for when this production review would occur would

17   be very helpful, not just for the later FTC production but the

18   earlier one as well.

19       **THE COURT:**  I trust that you-all are not going to do

20   what unfortunately I see in a lot of civil cases and that is,

21   wait until the eleventh hour and then start doing discovery.  I

22   assume you are not going to allow that to happen, and you are

23   going to come to me well in advance if you are concerned that

24   it is happening.  And I -- I'm hopeful that Facebook knows me

25   well enough not to try that.  So --

1          **MR. LIPSHUTZ:**  We do, Your Honor.  And we are well

2    underway.  We actually have three different meet-and-confers

3    set up for next week alone.  The process is underway.  We

4    suggested even cancelling this conference, and they wanted it

5    but everything is underway.

6          **THE COURT:**  Okay.  So in terms of -- you mentioned

7    that there is -- that we forgot to impose a due date for the

8    Answer.  When do you want to file your Answer?  I mean, it

9    shouldn't take long.

10          **MR. LIPSHUTZ:**  No.  We --

11          **THE COURT:**  The Complaint is not that long.

12                    (Laughter)

13          **MR. LIPSHUTZ:**  I sense the humor in your remarks.  It

14    won't come through on the transcript unless someone points it

15    out.

16      We would ask for thirty days, Your Honor.  And we would

17    ask we only have to respond to the prioritized claims.  We

18    haven't obviously moved on the non-prioritized claims yet.

19          **THE COURT:**  Any objection to that?

20          **MR. LOESER:**  Not really.  I guess I would like to see

21    an Answer to the whole Complaint; but if they want to parse it

22    that way, that's --

23          **THE COURT:**  Twenty-eight days from today and only

24    the -- only the prioritized claims.

25          **MR. LIPSHUTZ:**  Thank you, Your Honor.

1          MR. LOESER:  If --

2          THE COURT:  When in doubt -- I mean, there could be a

3    little ambiguity from my ruling about what is going forward and

4    what is not.  If there is any doubt, you answer it.

5          MR. LIPSHUTZ:  Understood, Your Honor.  To be clear, I

6    was only referring to the claims at the end.  We will respond

7    to the factual allegations but the claims at the end --

8          THE COURT:  All right.  Okay.  Sounds good.

9       And then I think there was one other thing that was maybe

10   hanging.

11         MR. LIPSHUTZ:  I don't know if this was it,

12   Your Honor, but we wanted to just raise, Your Honor, the

13   possibility of filing an early Summary Judgment Motion on the

14   2009 consent issue.  If you recall your Motion To Dismiss, Your

15   Honor expressed questions of whether the pre-2009 consents

16   consented to the post-2009 privacy policies.  That was

17   important because everybody post-2009 was found to have

18   consented to friend sharing.

19      We think we can resolve that issue pretty quickly in a

20   Summary Judgment Motion.  And it would basically mean that

21   everybody in this case will have consented to friend sharing

22   which will substantially narrow the issues at stake in this

23   case.

24         THE COURT:  Well, I mean, I think that's -- that's

25   probably a premature request because we -- we are going to do

1    all -- we are not going to have a Summary Judgment Motion on

2    that without doing all the discovery that we are contemplating

3    that relates to that issue.

4        So if you want to come back after you can establish that

5    you have turned over everything relating to those claims,

6    then --

7            **MR. LIPSHUTZ:**  Yes.

8            **THE COURT:**  -- we can talk about that.

9            **MR. LIPSHUTZ:**  Thank you, Your Honor.  That works

10   fine.

11           **MR. LOESER:**  And there is some irony in the request in

12   that it is the pre-2012 information that they seem particularly

13   unhappy about producing so --

14           **MR. LIPSHUTZ:**  No.  Actually, we agreed we would turn

15   over everything pre-2012 related to the issue I just mentioned.

16           **MR. LOESER:**  Right.  And that is another issue here is

17   that -- we received their responses to our second production

18   request.  And, you know, they really highlight the significant

19   issues we are going to have on the scope of discovery.

20       And just one issue to flag is that Facebook has decided

21   that -- with the limited exception of some pre-2012 policies

22   and information -- they are not interested in producing

23   documents, information, that are dated prior to 2012.  That is

24   clearly something we will be meeting and conferring on this

25   week.

1      In light of the Court's order and in reference to the

2   claims that predate that time period, we obviously need

3   discovery that predates that.

4          THE COURT:  Yeah, I mean, I certainly do and -- you

5   know, I'm not casting any judgment at this early stage on

6   either side in the way they are handling this; but, you know,

7   the only other comment I will make is it has seemed like I have

8   had to really pound into Facebook's head that there is going to

9   be discovery on the general practices relating to, you know,

10  friend sharing and all of that, right.  And hopefully I won't

11  have to continue doing that pounding.  I'm -- my sense is that

12  I probably won't.  And you should be in a position where you

13  can plow ahead.

14          MR. LIPSHUTZ:  Yeah.

15          THE COURT:  Oh, I remembered the other thing was

16  something about org charts.  Facebook really doesn't have any

17  org charts?  No org charts in the entire organization?

18          MR. LIPSHUTZ:  That is correct, Your Honor.  We faced

19  this issue in other litigations as well; but yes, that is

20  correct.

21          THE COURT:  Is there a philosophy behind that?

22          MR. LOESER:  Chaos.

23                    (Laughter)

24          MR. LIPSHUTZ:  I don't know, Your Honor.

25          THE COURT:  Chaos?  Disrupting?  An org chart would be

 1    too contrary to constantly disrupting --

 2          MR. LIPSHUTZ:  I don't know the answer.  We did offer

 3    to meet and confer and try to provide information to substitute

 4    for that, but we don't have those.

 5          THE COURT:  Okay.  Anything else?

 6          MR. LOESER:  A few other housekeeping things,

 7    Your Honor, and I will go through them pretty quickly because I

 8    know you have had a long day.

 9          One of the issues that we need a little guidance on:  A

10    number of the Plaintiffs -- the named Plaintiffs in the

11    Complaint -- have other counsel who represent them.  To date in

12    this case based upon Your Honor's instructions, we have not

13    involved any other firms or any other counsel.  We would like

14    to be able to authorize the firms that represent those folks to

15    be involved in representing their clients in discovery, so for

16    depositions and producing documents, things of that sort that

17    relate specifically to their representation.

18          THE COURT:  Does that mean you wouldn't be involved in

19    it?

20          MR. LOESER:  No.

21          THE COURT:  Does that mean that you wouldn't be

22    jointly representing those Plaintiffs in their depositions and

23    whatnot?

24          MR. LOESER:  No.  We would absolutely be there, but it

25    is generally speaking folks that have counsel that they have

1    hired to be involved in the case; want to have their counsel

2    there and those counsel want to be there.  We will -- we

3    understand the Court's concern about this issue generally and

4    an issue that has been raised in this district.  So we will be

5    very careful to make sure that the tasks that these folks are

6    authorized to do are limited specifically to as-needed tasks to

7    represent their clients.

8         **THE COURT:**  Any -- you seem like you want to say

9    something.

10        **MR. LIPSHUTZ:**  It is the first I'm hearing of this,

11   Your Honor.  I suppose if their own -- if they want separate

12   lawyers to be present for their depositions in addition to

13   Counsel here, that seems unobjectionable.  I guess, I would

14   object if their own lawyers start propounding discovery.  I

15   think that would be problematic.

16        **MR. LOESER:**  That won't be happening.

17        **MR. LIPSHUTZ:**  I think it's okay.

18        **THE COURT:**  Okay.  So I will authorize that, but could

19   I ask you to draft and submit a proposed order on that?

20        **MR. LOESER:**  Sure.

21        **THE COURT:**  And maybe it's worth creating some

22   parameters on this issue or some other issue that I haven't

23   thought about.

24        **MR. LOESER:**  Yeah.

25        **MR. LIPSHUTZ:**  We can add that to our meet-and-confer.

1          **MR. LOESER:**  That's a good idea.

2          **THE COURT:**  Yeah.

3          **MR. LOESER:**  And then another matter, Your Honor, we

4   do think these conferences are extremely helpful.  We think it

5   probably makes sense in this case to have them at some regular

6   interval.  We thought perhaps six weeks, telephonically or in

7   person.  I know people are obviously coming from different

8   places.  There certainly will be some that probably can be

9   cancelled because we have worked out all of our issues.  I

10  think it would be helpful to move things along if we have

11  something regular like that schedule.

12          **THE COURT:**  Sounds fine.

13          **MR. LIPSHUTZ:**  Always happy to see you, Your Honor.

14          **THE COURT:**  Always happy to see you guys.

15      I actually don't really want to do them telephonically.  I

16  think that this case is significant enough and the parties are

17  well resourced enough that we should have you in the courtroom.

18          **DEFENSE COUNSEL:**  Six weeks seems a little frequent to

19  me.

20          **THE COURT:**  Eight weeks?

21          **MR. LIPSHUTZ:**  That's fine.

22          **MR. LOESER:**  That's good.

23          **THE COURT:**  Okay.  Sounds good.  Let's plan on that

24  and let's schedule the next one.  Should be roughly mid-March,

25  early to mid-March.

1          **THE CLERK:**  It is working out to be like the first

2   week of March unless you want it the second week.

3          **THE COURT:**  Super Tuesday?

4                      (Laughter)

5          **MR. LOESER:**  What happens on Super Tuesday?

6          **THE COURT:**  California Primary.

7          **MR. LOESER:**  Does that matter?

8                      (Laughter)

9          **THE COURT:**  It matters in the primary.

10         **MR. LOESER:**  Sounds like a good day.

11         **THE COURT:**  Let's not do Super Tuesday because I have

12   other stuff -- well, actually Super Tuesday in the afternoon

13   would be fine or Wednesday afternoon, the 4th.

14         **MR. LIPSHUTZ:**  Your Honor, would it be possible to

15   propose -- I know we always get into these issues with these

16   conferences.  Since Mr. Snyder isn't here, can we just propose

17   some dates with Your Honor and work with your court staff to

18   set something up in the timeframe?

19         **THE COURT:**  Well, part of the problem is that you guys

20   have been kind of a pain in the-you-know-what on the issue of

21   scheduling.

22                      (Laughter)

23         **MR. LOESER:**  If you can look squarely at him when you

24   say that.

25         **MR. LIPSHUTZ:**  That's not fair.

1      **THE COURT:**  I actually don't remember who.  I wouldn't

2  be surprised if it was both of you, but a little bit too "I'm

3  not available for this.  I'm not available for that" and it is

4  starting to get a little time consuming for us to keep

5  searching for dates.

6      **MR. LOESER:**  We agree.

7      **THE COURT:**  So I think that we are going to schedule

8  something now.

9      **MR. LIPSHUTZ:**  That's fine, Your Honor.

10     **THE COURT:**  If Mr. Snyder can't make it, then you or

11  some subset of you can come.  Somebody -- just as long as

12  somebody is authorized to make decisions.

13          (Discussion held off the record.)

14     **THE COURT:**  So Thursday, March 5th in the afternoon.

15  Is afternoons -- is afternoon or morning better or does it

16  matter in terms of just general travel schedule?

17     **MR. LIPSHUTZ:**  For me the main issue is trying to

18  catch the 4:30 flight back east.  So as long as we get out of

19  here by 3:00 o'clock, that's fine.

20     **THE COURT:**  Okay.  Why don't we do, like, 1:00 o'clock

21  on the 5th of March.

22     **MR. LOESER:**  Okay.  You know, Your Honor, we are going

23  to walk out of here and meet and confer, and one of the topics

24  will be these FTC productions.  Just for the sake of clarity,

25  Facebook will be providing the letters that pertain to the

1    earlier production and -- but as to the production itself, I

2    assume that the point of the meet-and-confer will be for us to

3    confer on whether the earlier produced materials, as described

4    in these letters, is relevant to this action.  For matters that

5    the parties agree they are relevant, Facebook will be producing

6    those materials following some review; and that there may be

7    some dispute for the Court to resolve as to other matters that

8    we think are relevant but perhaps they don't think are

9    relevant.

10             **THE COURT:**  I think the way you have described it is

11   fine.  I mean, I was thinking of it on maybe one higher level

12   of generality which is that the prior requests from FTC and

13   dialogue that occurred about that would help inform the

14   documents that you want to request of Facebook.  Maybe that is:

15   Hey, I want all that stuff that they asked for as modified by

16   this subsequent exchange of letters that they had or whatever.

17             **MR. LOESER:**  Okay.

18             **THE COURT:**  So I think we are on the same page.

19             **MR. LOESER:**  I think we are.  That's helpful.  Thank

20   you.

21             **THE COURT:**  Anything else?

22             **MR. LIPSHUTZ:**  No, Your Honor.

23             **MR. LOESER:**  No.

24             **THE COURT:**  Thank you.

25                  (Proceedings adjourned at 2:35 p.m.)

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Monday, January, 13, 2020



_____
        Marla F. Knox, RPR, CRR
          U.S. Court Reporter