Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: March 5, 2020<br>Hearing Time: 1:00 p.m. |

**PLAINTIFFS' CASE MANAGEMENT STATEMENT**

Plaintiffs, by and through their counsel, submit this Case Management Statement in anticipation of the case management conference scheduled for March 5, 2020.

**A.    Summary**

Since the January 8, 2020 Case Management Conference, the parties have met and conferred on six different occasions over the course of five weeks for nearly fifteen hours in total. They have also exchanged extensive correspondence following up on these sessions. Despite these efforts, little substantive progress has been made on discovery. In many of these breakdowns, the same patterns appear and reappear.

***First***, Facebook has repeatedly taken devices meant to streamline discovery—agreeing on a protocol to govern electronically stored discovery ("ESI"); exchanging lists of search terms and document custodians; producing discovery requests from similar litigation—and used them to delay production. Facebook has failed to work with Plaintiffs to supply basic preliminary information that could ultimately *reduce* the discovery burden on Facebook.

For example, a confounding threshold issue is that Facebook still has not produced organizational charts or anything sufficient to identify who works in what department accomplishing what tasks. Because Facebook denies that such documents exist, Plaintiffs have asked for information about Facebook's proposed custodians (Facebook proposes just nine) and documents sufficient to identify who worked in relevant departments throughout the Class Period.[1] Facebook refuses to provide this information for the custodians Plaintiffs have identified.[2] In contrast, Facebook provided similar information to the Federal Trade Commission

---

[1] *See*, *e.g.*, Tr. of Proceedings 14:15-20, Jan. 8, 2020 (THE COURT: Oh, I remembered the other thing was something about org charts. Facebook really doesn't have any org charts? No org charts in the entire organization? MR. LIPSHUTZ: That is correct, Your Honor. We faced this issue in other litigations as well; but yes, that is correct.); Ltr. from M. Kutscher Clark to L. Weaver, February 24, 2020 ("As Facebook has informed Plaintiffs on numerous occasions, Facebook does not maintain organizational charts.")

[2] On February 24, 2020, Facebook responded that it "does not believe it will be practical or efficient for it to take on the guess-work of satisfying Plaintiffs through a vague writing assignment."

("FTC") in a matter of weeks.[3]

Further, Facebook proposes that it employ just twelve search strings across the documents of only nine custodians—an absurd proposal far out of step with the numbers of custodians and terms usually employed in complex, high-tech cases like this. Facebook has also failed to provide descriptions of where responsive materials likely reside, although on February 24, Facebook promised it would "endeavor" to provide that information by February 27, 2020. Plaintiffs have attempted to provide a list of topics that could be narrowed into search strings, but Facebook has rejected that approach and refuses to discuss them.

***Second***, rather than helping to identify discovery disputes promptly and bring them to the Court's attention early, Facebook has dragged its feet in providing definitive positions that would allow the deadlock to be broken with a joint letter to the Court. As a result, as of February 26, 2020, Facebook has produced 40,562 documents, with 24,848 (61%) produced this week. The vast majority (36,908, or 91%) appear to relate to just eight of the Named Plaintiffs. These productions do not appear to have been produced in the native form in which Facebook maintains these documents in the usual course of business. Crucial information, which would reflect users' privacy settings related to these posts is likewise missing. Rather, they are blurry .pdfs of certain platform postings.

Moreover, the vast majority of the documents appear to relate only to Named Plaintiffs' activity on the user platform. They have *no* bearing on what user content and information Facebook collected and shared with third parties. And before even beginning production of Named Plaintiffs' documents, Facebook served deposition notices on the Named Plaintiffs, with the first deposition noticed for March 2, 2020. Plaintiffs have agreed to produce all Named Plaintiffs for deposition and are meeting and conferring with Facebook regarding the timing and location of these depositions.

Facebook's production is not only paltry in terms of volume for a case of this scope, and

---

[3] Facebook's April 12, 2010 letter to the FTC provided such descriptions for a number of individuals. Plaintiffs have specifically referred to these descriptions when meeting and conferring with Facebook.

magnitude—but more importantly largely meaningless in terms of delving into the core issue in this case—Facebook's conduct with respect to its users' content and information. As of February 27, 2020, it appears that Facebook still has not completed production of the FTC correspondence that was the subject of the Court's Orders. (ECF Nos. 362, 366.) Facebook has also failed to make any substantive production from the documents produced to the FTC. In the face of a proposed joint letter to the Court, last week Facebook promised to complete production of FTC documents by March 31, 2020. However, Facebook refuses to identify any category of documents Facebook produced to the FTC that it will withhold, based on relevance, from production in this case. This is significant because the FTC correspondence confirms, in Plaintiffs' view, that the subject matter of both proceedings clearly falls within the scope of this case. However, because Facebook refuses to confer before producing, the parties will have no opportunity to agree beforehand on appropriate relevance standards. This will almost certainly lead to motion practice months from now and the possibility of second production in the event Plaintiffs prevail. In other words, Facebook is insisting on a less efficient, more time-consuming process for a production that at the outset was intended to decrease burden and increase efficiency.

In short, Facebook has accomplished by fiat the case management schedule the Court declined to endorse: it is producing documents only as to the Named Plaintiffs, and not producing merits documents. This approach prejudices Plaintiffs and jeopardizes the parties' ability to satisfy the October 2, 2020 substantial completion deadline.

To try to keep the parties on track, Plaintiffs proposed meet and confer deadlines and a specific procedure for bringing disputes to the Court, based on the procedures of certain Magistrate Judges in this District.[4] Facebook has rejected these proposals with no counteroffer.

---

[4] *See, e.g.,* Standing Order of Magistrate Judge Ryu ¶ 13 (https://www.cand.uscourts.gov/wp-content/uploads/judges/ryu-dmr/DMR-STANDING-ORDER.pdf) (requiring filing of joint discovery letters five days after the meet and confer); Standing Order of Magistrate Judge Beeler, ¶ 4, (https://www.cand.uscourts.gov/wp-content/uploads/judges/beeler-lb/LB_Standing-Order.pdf) (same); Standing Order of Magistrate Judge Kim, p. 4

While Facebook may believe that the current approach is sufficient, Plaintiffs disagree. Endless meet and confer sessions are not working. To meet the October 2, 2020 substantial completion deadline, Plaintiffs request the guidance of the Court so that disputes are presented to the Court in an efficient and effective manner.

Plaintiffs intended for the parties to submit a joint case management statement, a practice that is more efficient for the Court. Facebook refused to do so and claims Plaintiffs are to blame because they provided Facebook with their portion of the statement on the "literal eve" of the filing deadline.  Unfortunately, like so much else in Facebook's vitriolic statement, this is misleading. Plaintiffs had prepared their portion of the statement with the intent of sharing it on Tuesday, February 25.  However, at 9:19 PM on Monday night, Facebook emailed Plaintiffs a sixteen-page, single-spaced letter in which Facebook provided its position on numerous outstanding issues—some of which had been pending for months—for the first time. Facebook also produced documents after the close of business on both Monday and Tuesday in formats that were difficult to load and review in even a preliminary fashion. As Plaintiffs explained to Facebook on Tuesday, this required extensive revisions to Plaintiffs' portion of the statement. Plaintiffs invited Facebook to share its portion in the interim. Facebook did not respond and did not provide its own proposed inserts until 7:30 p.m. tonight.

Plaintiffs provided their portion on Wednesday February 26 at 6:04 PM. Facebook, of course, need not have waited for Plaintiffs' portion in order to share their own portion. Instead, Facebook informed Plaintiffs at 5:47 pm tonight that it would not file a joint statement.

Facebook  appears to believe that sending discovery letters and conducting hours-long meet and confers is progress. Plaintiffs look instead to what has been substantively produced and accomplished. Producing 40,000 pages of eight Named Plaintiffs platform and little else has not advanced discovery of the core facts of this case.  Plaintiffs still ask: what did Facebook do with

---

https://www.cand.uscourts.gov/wp-content/uploads/judges/kim-sk/SK-Standing-Order-General.pdf) (same);Standing Order of Magistrate Judge Corley (https://www.cand.uscourts.gov/wp-content/uploads/judges/corley-jsc/JSC-Standing-Order-3.7.19.pdf) (requiring initial telephone conference with the Court to obtain guidance on how to resolve the dispute); Standing Order of Magistrate Judge Hixson, p. 1

user content and information, and to what third parties did it sell access? How can Plaintiffs protect themselves from further incursion? We are no closer to those answers today than we were on January 8, 2020. In truth, Facebook has stymied meaningful discovery, and fallen far short of its obligations under the Federal Rules.

**B.      Document Requests.**

Plaintiffs propounded their second set of RFPs on November 25, 2019. Other than correspondence relating to the FTC actions, Facebook has only produced documents responsive to two additional requests. This means that Facebook has not produced any discovery responsive to 28 of Plaintiffs' 31 RFPs. The total production volume to date is 40,562 documents, the majority of which (approximately 91%) is related to the activity on Facebook of the Named Plaintiffs.

The failed meet and confer process relating to the FTC documents typifies Facebook's dilatory discovery practices. As of February 26, 2020, five months after Plaintiffs renewed their request for Facebook to do so, Facebook has yet to make a substantive production from the FTC production. Plaintiffs have discussed above Facebook's refusal to identify what Facebook is withholding from that production. A far more sensible and efficient approach would be to utilize the FTC correspondence to identify categories of information that the parties believe are relevant at the front-end, and to present to the Court at that time any disputes so that only one relevance review by Facebook will be necessary – as was intended by the sharing of the correspondence in the first place.

Similarly, Facebook has not yet produced the four PricewaterhouseCoopers ("PwC") assessment reports provided to the FTC. PwC created three biannual reports and one initial assessment report for years 2013-2019, collectively 194 pages in length discussing Facebook's sharing of user content with third parties. Plaintiffs first sought the PwC reports on August 22, 2018 and renewed production requests in September 2019. The reports have yet to be produced. On February 24, 2020, Facebook informed Plaintiffs it would not produce the reports until March 20, 2020. There is no reasonable explanation for this delay. These reports have been

produced to regulators and litigants around the world and there is no burden whatsoever in producing them here.

In addition, it took Facebook 45 days to provide a list of ten pending U.S.-based regulatory actions arising out of facts common to this lawsuit—actions which are plainly relevant to Plaintiffs' claims.[5] However, Facebook does not appear to have provided a complete list—excluding, for example, the California Attorney General investigation "into the social media giant's privacy practices including the mishandling of tens of millions of users' personal information in the Cambridge Analytica scandal"—and still refuses to provide this information for the U.K.[6] This, too, would go a long way toward identifying potential custodians and where responsive materials are likely to reside.

Facebook also claims that for a substantial number of Plaintiffs' RFPs, it has no responsive documents. For example, Facebook asserts that it possesses no documents related to its organizational structure or the value of Facebook data and user content and information. Facebook's response is dubious at best and publicly available information tells a different story.[7]

---

[5] Facebook identified: 1. Federal Trade Commission – *In the Matter of Facebook, Inc.*, No. 19-cv-2184 (D.D.C.); 2. Securities and Exchange Commissions – *SEC v. Facebook, Inc.*, No. 3:19-cv-04241 (N.D. Cal.); 4. *District of Columbia v. Facebook, Inc.*, 2018 CA 008715 B (D.C. Super. Ct.); 5. *People of the State of Illinois v. Facebook, Inc.*, 2018 CH 03868 (Ill. Cir. Ct.); 6. Multistate Attorneys General Investigation into Cambridge Analytica; 7. New York Attorney General Investigation into Cambridge Analytica; 8. New Jersey Attorney General Investigation into Cambridge Analytica; 9. Massachusetts Attorney General Investigation into Cambridge Analytica; 10. Congressional Briefings and Questions for the Record.

[6] Jessica Guynn, *California AG demands Facebook turn over documents in privacy probe*, ("California's attorney general Xavier Becerra asked a state court to force Facebook to turn over documents he says it has withheld from an ongoing probe into the social media giant's privacy practices including the mishandling of tens of millions of users' personal information in the Cambridge Analytica scandal.") USA Today (Nov. 6, 2019), https://www.usatoday.com/story/tech/2019/11/06/california-presses-facebook-to-turn-over-privacy-documents/2509775001/.

[7] For example, in its quarterly and annual public filings Facebook reports to investors average revenue per user. Those numbers must be generated from somewhere. Facebook itself has also alleged in its own lawsuit against app developer Rankwave, that the value of Facebook users' data on the Rankwave platform is $9.8 million. Nevertheless, Facebook has told Plaintiffs it "does not have any documents in its possession custody or control responsive" to Plaintiffs requests seeking these documents.

Plaintiffs have provided notice to Facebook of two third party subpoenas, including to PwC and to Facebook's auditor Ernst & Young, which has reviewed and approved Facebook's financial results, including revenue generated by selling access to user content and information. Plaintiffs anticipate propounding additional third-party subpoenas once Facebook identifies its business partners, white-listed apps, and other third parties, which it has not yet done.

As of February 26, Facebook has issued no document requests to Plaintiffs.

**C.     Depositions**

No depositions have been taken. In light of Facebook's failure to describe in any comprehensive way where responsive documents might be located, either by identifying custodians or electronic systems where they are stored, Plaintiffs have noticed one deposition pursuant to FRCP 30(b)(6) concerning Facebook's organizational structure and electronically stored information (ESI). Plaintiffs noticed this deposition for March 2, 2020, and are scheduled to confer with Facebook on Friday, February 28, 2020.

Facebook first raised the prospect of deposing the Named Plaintiffs on January 17, 2020. Plaintiffs agreed to discuss timing and location of those depositions with their clients, asked Facebook to provide its proposal regarding the possibility of conducting these depositions in various hubs throughout the country, and to propose a date to meet and confer on that proposal. Instead, on January 24, Facebook noticed the individual depositions of eighteen plaintiffs without seeking leave of Court or Plaintiffs' agreement to exceed the ten-deposition limit imposed by FRCP 30(a)(2)(A)(i). Facebook also noticed the depositions to be held in company counsel's offices in San Francisco, even though Plaintiffs live throughout the U.S. and in the U.K.[8]

Further, Plaintiffs are proposing a deposition protocol that will lift the deposition limit and set forth procedures for objections, admission of documents, and other related issues.

---

[8] Facebook's claim that Plaintiffs refused to confer about the depositions is just not true. Plaintiffs have agreed to produce the Named Plaintiffs for deposition and have asked to meet and confer further about timing and location for not just them, but also for two new U.K. Plaintiffs.

The content and scope of the information Facebook collects and shares with third parties is critical to determining consent and harm in this case. Facebook has not provided this information or given any indication that it intends to do so. Instead, as discussed above, Facebook has produced 37,782 documents that appear to pertain to eight Named Plaintiffs. The materials are far from complete and were produced in a manner that renders them virtually impossible to understand and evaluate. Indeed, it is not even clear when the production regarding one Named Plaintiff ends, and another begins. For this reason, Plaintiffs have asked Facebook to re-produce the materials in a standard format that includes metadata or otherwise allows Plaintiffs to identify the source and context of the information.

**D.    ESI**

Plaintiffs sent Facebook a proposed ESI protocol on November 6, 2019. The parties have conferred on this topic on four separate occasions, including exchanging multiple draft proposals, some of which Plaintiffs first sent to Facebook in 2018. Despite these efforts, the parties have not yet reached agreement, and may not reach agreement on some issues. Nonetheless, this is one area where the parties have made significant recent progress. During the parties' most recent ESI-focused meet and confer on February 14, Facebook promised responses on several provisions of the protocol, and provided those responses on February 24, 2020. Plaintiffs are evaluating Facebook's responses, which upon initial review appear to provide a basis for further productive meet and confer efforts.

**E.    Search Terms and Custodians**

Because Facebook already has reviewed and produced documents and information to the FTC that at the very least overlaps significantly with the discovery that is necessary and appropriate in this case, Plaintiffs asked Facebook to identify by January 31, 2020 the search terms and custodians utilized by Facebook for the FTC production as a precursor to an exchange of proposed search terms. This request was made on January 17, 2020 on a meet and confer call, and by letter on January 22, 2020. Facebook has refused to do so. Instead, on February 7, 2020, Facebook sent Plaintiffs its twelve proposed search strings and nine proposed custodians. In this

context it does not make any sense for Facebook to continue to conceal the custodians and search terms it used for the FTC production.[9]

Rule 34 contemplates the opposite—an exchange of information that grants Plaintiffs at least some visibility into Facebook's search and production methodology. *See* Fed. R. Civ. P. 34 Advisory Committee's Note to 2015 amendment ("This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. . . . An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."). While Facebook cites a Sedona Conference publication for the proposition that "discovery-on-discovery" is generally disfavored, the organization's publications also offer guidance to responding parties, like Facebook, on how to satisfy Rule 34(b)(2)(C): "When a responding party intends to produce a more limited scope of documents than requested, it can meet Rule 34's requirements by describing the scope of what it is willing to produce, which may include the parameters of a search for documents, such as custodians, sources, date ranges, and search terms (or search methodology)."). The Sedona Conference, *Federal Rule of Civil Procedure 34(b)(2) Primer: Practice Pointers for Responding to Discovery Requests*, 19 Sedona Conf. J. 447, 479 (2018). With this guidance in mind, and given the substantial overlap between the FTC investigation and this action, those search terms are a reasonable place to start the conversation. To the extent some terms or custodians are not relevant to this action, the parties could quickly determine that by discussing them.

---

[9] Facebook asserts in its case management statement that Plaintiffs' request would force it to unnecessarily duplicate its earlier collection for the FTC. To the contrary, if Facebook were to provide Plaintiffs with the search terms, custodians and non-custodial sources used in its collection for the FTC, Plaintiffs would be able to ascertain the fulsomeness of that collection effort, avoid any overlap with the discovery sought here by accepting production of documents already collected, thereby minimizing Facebook's burden.

Plaintiffs replied with their own proposed terms and custodians on February 21, 2020.[10] Plaintiffs' proposal was preliminary and was made without the benefit of information customarily provided by parties in Facebook's position. Specifically, parties ordinarily provide organizational charts and descriptions of where responsive materials are likely to be maintained. This regularly includes production of search terms and identification of custodians searched in prior related proceedings, which Facebook refuses to provide here.

In the absence of Facebook's meaningful participation in the search term and custodian process, Plaintiffs' proposal is by necessity both over- and under-inclusive. Plaintiffs relied on publicly-available organizational charts, limited information from the FTC correspondence, and other materials external to the discovery process to craft lists of proposed custodians and general topics. With meaningful participation by Facebook, Plaintiffs could more effectively target relevant terms and custodians, and also utilize Facebook-specific terminology and jargon that will streamline the identification of responsive documents. Plaintiffs have provided a list of topics for search terms – without the benefit of any information from Facebook about where materials are located or jargon that is used to refer to documents. Facebook apparently rejects discussing these topics, and offers no explanation as to why obvious terms – like "Cambridge Analytica" – should not be used.

As noted above, Plaintiffs have noticed a deposition regarding Facebook's organizational structure and internal systems.[11] Following the deposition, Plaintiffs will likely need to supplement or revise their proposed search terms and custodians to take into account the testimony of Facebook's 30(b)(6) witnesses.

---

[10] To be clear, Plaintiffs have not abandoned their request for the search terms and custodians utilized by Facebook for the FTC collection and production as Facebook suggests in its case management statement – rather, Plaintiffs have endeavored to continue to move the process forward by proposing search terms and custodians, and will seek production of the search terms and custodians from Facebook's production to the FTC if the parties' negotiations are not sufficiently productive.

[11] Facebook claims it is providing detailed written materials about its systems. But, despite promising this information for more than one month, Facebook has yet to provide these materials. Plaintiffs' proposed search terms and custodians, which Facebook insisted Plaintiffs provide, have been proposed without the benefit of this basic information.

**F.     Pending Motions**

Plaintiffs have filed a motion to establish the relevant time period for discovery and to set a protocol for the production of privilege logs. Plaintiffs anticipate motion practice regarding the FTC production; the ESI protocol to the extent the outstanding areas of disagreement are not quickly resolved; as well as substantive motions regarding Facebook's refusal to produce documents in response to most of Plaintiffs' RFPs.

**G.     Process Failures**

During the meet and confer process, Facebook has been reluctant, and has often refused, to articulate its positions on important issues. Instead, Facebook has generally claimed that Plaintiffs are being unrealistic and aggressive by proposing dates by which Facebook would provide its positions. As a result, numerous issues have dragged on for months without resolution. In order to address this problem, Plaintiffs propose: (1) if disagreements are unresolved following a meet and confer session (either in person or telephonic), any party seeking court intervention shall prepare a joint letter no later than five business days after the meet and confer session, unless the parties mutually agree that subsequent negotiation may lead to resolution and agree upon a further submission date; and (2) the responding party will provide its position within three business days.

A critical component to this proposed protocol is that the parties meet and confer in good faith, such that the positions they take when conferring are not radically altered in the briefing. Thus, a party that has taken consistent positions will not be at a disadvantage and need to respond to new arguments.

Plaintiffs further suggest that case management conferences continue to be held every four to six weeks to ensure that progress is made on discovery and disputes are promptly resolved.

Dated: February 27, 2020

Respectfully submitted,

| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
|---|---|
| By: */s/ Derek W. Loeser*<br>Derek W. Loeser | By: */s/ Lesley E. Weaver*<br>Lesley E. Weaver |

| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*)<br>Lynn Lincoln Sarko (admitted *pro hac vice*)<br>Gretchen Freeman Cappio (admitted *pro hac vice*)<br>Cari Campen Laufenberg (admitted *pro hac vice*)<br>David J. Ko (admitted *pro hac vice*)<br>Benjamin Gould (SBN 250630)<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel.: (206) 623-1900<br>Fax: (206) 623-3384<br>dloeser@kellerrohrback.com<br>lsarko@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>claufenberg@kellerrohrback.com<br>dko@kellerrohrback.com<br>bgould@kellerrohrback.com | Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909)<br>Joshua D. Samra (SBN 313050)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com<br>adavis@bfalaw.com<br>jsamra@bfalaw.com |

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of February, 2020, at Oakland, California.

/s/ Lesley E. Weaver
Lesley E. Weaver

# CERTIFICATE OF SERVICE

I, William Nervis, hereby certify that on February 27, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via U.S. Mail:**

Robert Zimmerman
329 Sandpiper Lane
Hampstead, NC 28443

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
Keker Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

Anjeza Hassan
Ibrahim Hassan
Mirela Hysa
8349 Cretan Blue Lane
Las Vegas, NV 89128

Kosta Hysta
6877 Fox Lane
Waterford, MI 48327

**And via email:**

Robert Zimmerman
bobzimmerman@usa.com

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
pmalhotra@keker.com
bwilliams@kvn.com
bwilliams@kvn.com

Anjeza Hassan
annie.sara@yahoo.com

/s/ *William Nervis*
William Nervis