Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
    blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650-849-5300
Facsimile:  650-849-5048

*Attorneys for Defendant Facebook, Inc.,*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK'S CASE MANAGEMENT STATEMENT** |

Facebook submits this Case Management Statement in advance of the case management conference scheduled for March 5, 2020.  Facebook would have preferred to participate in a joint submission to the Court, as is customary.  Unfortunately, on the literal eve of filing, Plaintiffs finally sent to Facebook their draft joint submission, which read more like a "burn book" than a court filing designed to give the Court an update on the progress that has *actually* been made and a preview of what is in the pipeline.  Because Plaintiffs seized on the Case Management Statement as a tactical opportunity to create a false narrative on a host of issues—presumably in the hopes of obtaining off-the-cuff discovery rulings on unripe and unbriefed issues—Facebook is separately submitting its own CMC statement, as there is not time for the parties to reach agreement on a joint submission.[1]  While Facebook does respond to some of Plaintiffs' more egregious mischaracterizations of the discovery record, Facebook does not address them all as this submission is not the proper forum to pre-litigate unripe discovery disputes.

Given Facebook's robust efforts over the last 50 days, it appears Plaintiffs' submission is following a plaintiffs' "playbook" to label defendants as non-compliant and uncooperative and has nothing to do with the realities of the progress made to date.  It is clear to Facebook that no matter how many benchmarks are met and attorney hours are dedicated to this action, Plaintiffs will not be satisfied.  Facebook's efforts over the last 50 days have included responding to Plaintiffs' 1400 paragraph complaint (which alone took approximately 30 days of work), producing nearly 150,000 pages of materials, engaging in more than 15 hours of meet and confer discussions, and exchanging more than 75 emails and approximately 25 letters with Plaintiffs.  Plaintiffs willfully ignore these accomplishments, which as discussed below, are just the tip of the iceberg.

---

[1]  Facebook provided a copy of this statement to Plaintiffs in advance of filing, and approximately 24 hours after receiving Plaintiffs' proposed joint submission.

I.     **Case Status**

Facebook is pleased with the progress the parties have made since the January 8 Case

Management Conference.  The following has occurred over the last 50 days:

- Facebook responded to Plaintiffs' **1400 paragraph** complaint;

- Facebook produced all document demands from the FTC's pre-2012 investigation, correspondence regarding the scope of those demands, and additional materials Plaintiffs requested from the FTC's 2018-2018 investigation;[2]

- Facebook produced nearly **150,000 pages of materials** responsive to Plaintiffs' RFPs and anticipates its total productions will exceed **200,000 pages** next week;

- Facebook committed to produce by March 31 relevant, non-privileged materials produced to the FTC and is actively reviewing those materials;

- The parties met and conferred over the course of approximately **12 hours** regarding the materials Facebook will produce responsive to Plaintiffs' RFPs;

- Facebook provided detailed proposed searches to collect materials responsive to Plaintiffs' RFPs;

- Facebook is drafting and providing to Plaintiffs detailed written materials about its systems to facilitate productive discussions concerning Plaintiffs' requests;

- Facebook noticed each of the Named Plaintiffs' depositions;

- The parties exchanged five drafts of their ESI Protocol and its proposed appendices and met and conferred over the course of approximately **seven hours** about its language;

- Facebook responded to a premature 30(b)(6) deposition notice and interrogatory;

- The parties exchanged drafts of **three joint discovery motions** and filed one;

- The parties exchanged **75 emails** and approximately **25 formal letters** on numerous discovery topics including (i) deposition dates, (ii) Plaintiffs' RFPs, (iii) Facebook's FTC productions, (iv) this Court's discovery-dispute process, (v) Facebook's organizational structure, and (vi) the appropriate role of the Named Plaintiffs' individual attorneys.

---

[2]  Plaintiffs contend Facebook has not completed production of certain FTC correspondence that the parties discussed with the Court.  This is untrue.  Facebook has produced all document demands and correspondence that it agreed to provide from the FTC proceedings.

II.     **Outstanding Discovery Disputes**

Although Plaintiffs highlight that some discovery disputes remain unresolved, the sheer volume of topics and disputes the parties have worked through and resolved to date reflect considerable work and progress by all parties.  Plaintiffs specifically raise concerns that the parties are currently unable to reach agreement on certain discovery issues because Plaintiffs lack information regarding Facebook's business and systems.  Plaintiffs' claims are either premature or incorrect.

1.      Facebook did not refuse to provide Plaintiffs the organizational information that Facebook provided the FTC.  On February 7, Facebook reproduced to Plaintiffs **the exact same materials** it created and produced in response to the FTC's requests for organizational information.  Those materials were deemed sufficient to identify custodians in that action.

2.      Facebook did not refuse to provide additional information about its proposed custodians.  Facebook informed Plaintiffs that its letter demand for detailed descriptions of **more than 90 employees** is overbroad and that: "Facebook is . . . amenable to informally responding to reasonable requests for information relating to its proposed custodians and organization, and will endeavor to answer such questions to the extent they are reasonably specific and tailored in good faith to facilitate a meaningful discussion regarding custodians."

3.      To further assist Plaintiffs, Facebook proposed that it informally provide Plaintiffs written materials explaining various technical aspects of its Platform.  Facebook is creating and providing these written materials in a good faith effort to facilitate the parties' ongoing discussions regarding available information in response to Plaintiffs' RFPs.

4.      Facebook agreed to produce all relevant, non-privileged materials produced to the FTC by the end of March.  Facebook anticipates that it will also produce materials provided to

other government entities on the same timeline.  Facebook is certain that Plaintiffs' review of these productions will be more than sufficient to educate Plaintiffs about Facebook's business and will facilitate the parties' ongoing discovery process.  That is why Facebook is prioritizing its review and production of these materials, and this process is well under way.

## III.    Document Productions

Facebook has made substantial efforts to move discovery forward while the parties continue to negotiate certain threshold issues.  Even though the parties have not agreed to search terms and custodians for many of Plaintiffs' RFPs—and Plaintiffs have declined to engage in these discussions—**Facebook is producing hundreds of thousands of pages of materials** in the interim that do not require these agreements.  As noted above:

- Facebook has produced nearly **150,000 pages** and anticipates its total production volume will exceed **200,000 pages** by next week.

- Facebook is actively reviewing the materials it produced to the FTC and other regulators and agreed to produce relevant, non-privileged documents produced to the FTC **by March 31**.

### A.    Facebook is producing materials regarding the Named Plaintiffs in response to Plaintiffs' request for these materials.

Facebook is perplexed by Plaintiffs' sudden suggestion that Facebook should not be producing materials related to the Named Plaintiffs.  Plaintiffs requested "[a]ll documents relating to each of the Named Plaintiffs," RFP 9, and on February 2, Plaintiffs emailed Facebook explicitly inquiring as to the timing of this production.  Given that these materials can be collected and produced without an agreement with respect to search terms, Facebook began producing these documents two weeks after it received Plaintiffs' email.  These productions are well under way, but are being produced on a rolling basis given their high volume.

Contrary to Plaintiffs' assertions, Facebook's productions of the Named Plaintiffs' materials contain all documents Facebook has been able to locate to date associated with each Named Plaintiff's account—they are not "far from complete." Facebook is also happy to identify which Bates Numbers pertain to which Named Plaintiff. Plaintiffs raised this issue for the first time last night. Similarly, if Plaintiffs have concerns about how the Named Plaintiffs' documents are formatted, they should raise those concern with Facebook directly—not in a Case Management Statement. For what it's worth, Facebook has reviewed the same exact documents and did not find any "blurry" or difficult to read.

### B.    Facebook is re-reviewing its FTC productions in good faith for relevance and privilege.

Plaintiffs say that Facebook should inform Plaintiffs of which documents produced to the FTC will not be produced in this action. The Court held at the last Case Management Conference that Facebook is entitled to re-review its FTC productions for relevance and privilege—citing various reasons that parties may produce documents to the government that need not be produced in civil litigation. *See* Trans. of Jan. 8, 2020 Case Management Conference at 8:12-9:10; *see also King County v. Merrill Lynch & Co., Inc.*, No. C10-1156-RSM, 2011 WL 3438491 at *3 (W.D. Wash. Aug. 5, 2011) (rejecting "'[c]loned discovery,' requesting all documents produced or received during other litigation or investigations."); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*, MDL No. 2672 CRB (JSC), 2017 WL 4680242 at *1 (N.D. Cal. Oct. 18. 2018).

Facebook is conducting this review with the utmost diligence and good faith, and Facebook has no obligation to detail for Plaintiffs the documents produced to the FTC that will not be produced here. The very premise of the Court's ruling that Facebook may re-review its FTC productions is that civil litigants are *not entitled* to view every last document that went to a

regulator. Without "evidence or support for the idea that [a party] has behaved improperly," its adversary "is not entitled to 'independently assess the adequacy'" of [its] discovery efforts," *Watkins v. Hireright, Inc.*, No. 13-CV-1432-MMA (BLM), 2013 WL 10448882 at *1 (S.D. Cal., Nov. 17, 2013), and "discovery on discovery" is generally disfavored, *see* The Sedona Conference, The Sedona Conference Journal, Vol. 19 at 118 (2018).

### C. Plaintiffs are unable to articulate a reasoned basis why they need the FTC search terms—which may be why Plaintiffs abandoned the joint letter motion they proposed on this issue

Plaintiffs also have no valid basis for demanding that Facebook provide Plaintiffs the search terms that were used to prepare the FTC productions. Plaintiffs raised this issue with Facebook one month ago and insisted the parties prepare a joint letter motion regarding Plaintiffs' demand for search terms used in the FTC action. Although Facebook prepared its portion of the letter, Plaintiffs declined to file it. A month later, Plaintiffs seek a preemptive ruling on this issue through a Case Management Statement.

Even worse, Plaintiffs now claim they are unable to propose searches for their own RFPs without reviewing the search terms that were used to collect materials responsive to a different set of document requests prepared by the FTC in a different matter. This makes no sense and is not how the Federal or Local Rules work. In any event, using search terms that Facebook applied to collect materials for the FTC will only hamper the discovery process—not streamline it.

1. The search terms that Facebook used to collect materials for production to the FTC were developed in response to different document requests that were served in a different action. Those terms are not targeted at identifying materials responsive to Plaintiffs' RFPs, which is what the parties must negotiate here. Indeed, Plaintiffs' Second Set of RFPs request all materials produced to the FTC (RFP 6) plus 24 categories of additional materials (RFPs 7-30). Facebook is in the process of reviewing its FTC productions and will produce in this case all non-privileged

documents produced to the FTC that are also relevant to the claims in this case. In order for Facebook to collect and produce materials responsive to Plaintiffs' 24 other categories of demands, the parties must meet and confer and agree to search terms and custodians tailored to those requests. We are confident that Plaintiffs will work with Facebook in good faith, and the parties can and will come to agreement on operative searches tailored to Plaintiffs' document requests.

2.      The Court has recognized that not all materials produced to the FTC are discoverable in this case. For this reason, the Court authorized Facebook to re-review its FTC productions for relevance before producing those documents. *See* Trans. of Jan. 8, 2020 Case Management Conference at 8:12-9:10. Using the same search terms in this action that were used in the FTC action would end run the Court's ruling.

3.      Given the low likelihood that the search terms used in the FTC proceeding would appropriately identify documents responsive to Plaintiffs' document requests, providing those terms would likely lead to unnecessary disputes and motion practice regarding which FTC search terms, if any, should be used in this case. There is no reason to complicate the parties' ESI negotiations, which allow litigants to effectively discuss and identify search terms tailored to the specific document requests, claims, and defenses at issue. *See* U.S. District Court for the Northern District of California, Guidelines for the Discovery of Electronically Stored Information, Guidelines 2.20 (instructing parties to "discuss "planned methods to identify discoverable ESI."); U.S. District Court for the Northern District of California, Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information.

4.      Facebook should not be required to collect from its custodians the exact same materials it collected for the FTC. Facebook already agreed to review the document productions provided to the FTC and to reproduce in this action all non-privileged materials that are relevant

to Plaintiffs' claims.  The purpose of that agreement is to allow for the efficient collection and production of documents that were produced previously.  There is no legitimate reason to duplicate those efforts by requiring Facebook to collect the exact same materials again—regardless of their relationship to Plaintiffs' document requests.

5.      To the extent Plaintiffs wish to better understand what was produced to FTC, Facebook has provided extensive information regarding its FTC productions, including all document demands from the FTC's pre-2012 investigation and 2018-2019 investigation, all correspondence defining the scope of those demands, and all correspondence from Facebook defining what was actually produced to the FTC.

Facebook is working to negotiate with Plaintiffs search terms that are tailored to Plaintiffs' specific document demands and will produce in good faith all discoverable materials identified from those terms.  That is what Rule 26(f) and the Northern District ESI Guidelines require.  Given that Plaintiffs cannot articulate any sound basis that they need search terms used in a prior government investigation—and declined to file the joint letter in which the parties briefed this issue—Facebook has serious concerns that Plaintiffs seek the FTC search terms as part of an improper fishing expedition to second-guess the FTC proceedings and not to further the parties' ongoing ESI negotiations.

## IV.    Coordinated Discovery

Plaintiffs have made various demands that Facebook search for, collect, review, and produce materials responsive to specific RFPs and informal discovery requests on a one-off, expedited basis.  While Facebook understands Plaintiffs are eager to receive materials responsive to each of their RFPs, these piecemeal and scattershot demands hinder—rather than facilitate— efficient discovery.

The most efficient way for Facebook to produce large numbers of documents to Plaintiffs in a timely manner is to conduct a consistent and unified document collection and review process—not to broadly search Facebook's systems for one-off categories of materials.  This approach is consistent with common practice and requires identifying appropriate custodians, collecting materials from those custodians in an e-discovery platform, and running agreed-upon searches within those materials for documents potentially responsive to Plaintiffs' requests and warranting review.

To that end, Facebook proposed that the parties focus their efforts on finalizing an ESI Protocol and agreeing to search terms and custodians to collect materials responsive to Plaintiffs' RFPs.

Facebook provided Plaintiffs its proposed search terms and custodians on February 7—an agreed-upon deadline to exchange proposals.  Facebook did not, as Plaintiffs state, propose "12 search terms."  Facebook proposed 12 different complex and lengthy Boolean strings to search for categories of materials responsive to Plaintiffs' RFPs.  Facebook further proposed that it conduct targeted collections for Plaintiffs' more specific document requests.

To Facebook's surprise, Plaintiffs declined entirely to propose searches for their requests.  Instead, two weeks after Plaintiffs' deadline to provide proposed searches, Plaintiffs sent Facebook a letter objecting to Facebook's proposal and continuing to argue that they cannot provide searches for their RFPs without receiving the FTC search terms.  Rather than provide proposed searches, Plaintiffs provided a list of over 230 broad and arbitrary words that Plaintiffs claim should be "included" in any search—including "academic research," "applications," "basic info," "compliance," "consent," "everyone," "likes," "news feed," "public," "tracking," "Steve Bannon," "valuation," "switcharoo," and "user content."  This obviously unreasonable and wildly over-

broad proposal does not appear to be a good faith effort to negotiate searches with Facebook but rather another attempt to support Plaintiffs' baffling position that—unlike plaintiffs in any other litigation—Plaintiffs here are not able to propose searches to locate documents responsive to their own RFPs without reviewing the searches used to locate documents in a prior government investigation.

Facebook has repeatedly encouraged Plaintiffs to engage in a meaningful discussion regarding the searches that would capture *their* RFPs. Plaintiffs have steadfastly resisted. Facebook has similarly made a number of compromises to date to facilitate agreement on an ESI Protocol, while Plaintiffs have shown little or no willingness to compromise—including refusing to include seemingly noncontroversial language regarding counsel's obligations to cooperate and act in good faith.

Once agreements on an ESI protocol, search terms, and custodians are in place, Facebook will be able to undertake a coordinated document collection, search, and review process. Until that time, Facebook is reviewing and producing materials that do not require these agreements—including materials associated with the Named Plaintiffs' accounts and materials produced to government entities.

## V.   The Court's Joint-Discovery Dispute Procedures

Facebook is committed to working collaboratively with Plaintiffs to resolve discovery disputes between the parties through the meet and confer process and without burdening the Court with unnecessary motion practice. To that end, Facebook has explained to Plaintiffs that its counsel has professional and ethical obligations to involve their client in strategic decisions. To meet and confer effectively, Facebook therefore requires advanced notice of topics Plaintiffs wish

to discuss, as well as a meaningful opportunity after a meet and confer discussion to work in good faith to resolve outstanding areas of dispute.

Although Facebook understands that Plaintiffs are keen to resolve discovery disputes quickly, Facebook is concerned that Plaintiffs' eagerness is undermining the Court's joint-discovery dispute procedures, the meet and confer process, and Facebook's counsel's ability to consult meaningfully with their client in good faith.  On numerous occasions, Plaintiffs have demanded positions from counsel on topics raised for the first time in a meet and confer discussion and declared the parties to be at an impasse when Facebook did not immediately capitulate to Plaintiffs' position.  More concerning, Plaintiffs have twice sent Facebook correspondence outlining Plaintiffs' position on a topic never previously discussed along with a proposed joint letter to the Court.  In these scenarios, Plaintiffs have demanded that unless counsel will agree within days to Plaintiffs' position, Facebook should fill out its half of the proposed letter for filing.

Plaintiffs now propose that the parties *stipulate* to a procedure under which the parties *must* submit a joint letter to the Court *within five days*, any time the parties do not reach agreement on an issue after a single meet and confer.  Plaintiffs' approach is troubling and it crystalizes a core disconnect between the parties regarding the Court's joint-discovery dispute procedures and expectations of the meet and confer process.

As Facebook understands, the Court's individual rules require the parties to undertake a "good faith effort" to resolve any discovery dispute before presenting it to the Court.  This commonsense requirement is meant to minimize the number of discovery disputes that require court intervention, and it often takes time and effort.  Indeed, working in "good faith" to resolve discovery disagreements often requires collaboration between counsel and their client, research, and ongoing discussions between the parties to reach a mutual understanding.  The meet and confer

process is meant to facilitate this process, not as an opportunity to present ultimatums and engage in brinksmanship. *See Sayta v. Martin*, Case No. 16-cv-03775-LB, 2019 WL 1102989, at *2 (N.D. Cal. Mar. 8, 2019).

A process in which one party may unilaterally declare an impasse after a single conversation and immediately seek judicial relief *does not* represent a good faith effort to meet and confer. *See, e.g.*, *Viteri-Butler v. Univ. of California*, Case No.: CV 12–02651, 2014 WL 60106, at *6 (N.D. Cal. Jan. 7, 2014) (remarking it was "rather unreasonable" to demand an "immediate resolution to outstanding discovery issues, instead of scheduling a further meet and confer" on dates opposing counsel had proposed).[3]   Facebook is working actively to collaborate with Plaintiffs on a realistic schedule that takes into account the scope, volume, and complexity of the issues the parties are trying to work through and is concerned that Plaintiffs' interpretation of this Court's dispute-resolution procedures undermines those efforts.   Facebook respectfully requests the Court's assistance in imposing fairness and order to the discovery process.

---

[3]   *See also Use Techno Corp. v. Kenko*, USA, No. C-06-02754, 2007 WL 3045996, at *2 (N.D. Cal. Oct. 18, 2007) (holding that filing a motion one day after meeting and conferring represented a "rush to file . . . without providing sufficient time to engage in meaningful meet and confer effort"); *Palmer v. Hatton*, No. C 05-358, 2006 WL 3365596, at *1 (N.D. Cal. Nov. 20, 2006) (denying a motion to compel, in part, because plaintiff "sent his motion to compel to the court just ten days after mailing the meet-and-confer letter(s), which did not allow reasonable time for any informal resolution of a discovery dispute"); *Collins v. Collins*, 2018 WL 4237951 (D. Nev. Sept. 5, 2018) (concluding that a "series of letters from Plaintiff to defense counsel expressing his demand for unequivocal answers to discovery" did not constitute meeting and conferring in good faith).

## VI.    Depositions

Facebook seeks to depose the Named Plaintiffs in the coming months.  On January 15, Facebook requested that the parties meet and confer regarding the Named Plaintiffs' depositions.[4]

Plaintiffs refused to meet and confer regarding deposition scheduling, contending that the parties cannot discuss depositions until they resolve all ESI-related disputes and Plaintiffs determine and declare that Facebook has produced a sufficient number of documents.[5]  After Plaintiffs refused Facebook's meet and confer efforts, Facebook noticed the Named Plaintiffs' depositions to begin on March 3, along with a letter reiterating Facebook's desire to meet and confer regarding mutually-agreeable dates and locations.

Approximately a month later—and 10 days before the first noticed deposition date— Plaintiffs sent a letter objecting wholesale to Facebook's deposition notices.  Among other things, Plaintiffs contend that Facebook should not be permitted to take *any* Named Plaintiff's deposition until 90 days after Plaintiffs determine Facebook has produced a sufficient volume of documents. Plaintiffs further object that none of the noticed depositions may move forward because Facebook noticed 24 depositions and Fed. R. Civ. P. 30(a)(2)(i) provides a 10-deposition limit—which, of course, may be expanded with leave of the Court or by stipulation, and is regularly expanded in cases of this magnitude.

---

[4]     Facebook assured Plaintiffs that it would not require each of the Named Plaintiffs to travel to the Northern District to be deposed.  It proposed instead that the parties agree to several central deposition hubs throughout the country and that each Plaintiff choose a convenient location.

[5]     Facebook also assured Plaintiffs that it would produce all materials associated with each Named Plaintiff's account—including any Facebook materials it intends to use at each deposition—at least two weeks in advance of each Plaintiff's deposition.  Facebook began producing the Named Plaintiffs' materials on February 15, and to date, Facebook has produced all documents it is has been able to locate for ten of the named Plaintiffs (corresponding to the first ten noticed deposition dates).  Facebook will produce the remaining Named Plaintiffs' materials over the course of the next four weeks.

The Named Plaintiffs' depositions are critical to the case, given that Facebook has no information regarding a host of critical issues, including what information the Named Plaintiffs believe to be private, the Named Plaintiffs' efforts to safeguard any purportedly private information, and how Plaintiffs believe they were damaged.  Given the volume of discovery Plaintiffs have sought, Facebook is troubled by Plaintiffs' refusal to participate in the discovery process themselves, and their position violates the well-settled rule that a party may not "condition its compliance with its discovery obligations on receiving discovery from its opponent." *Genentech, Inc. v. Trustees of University of Pennsylvania*, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011).

Facebook has now offered to depose the four in-state Named Plaintiffs on any mutually-agreeable dates in March in the California counties in which they reside, and to depose the remaining Plaintiffs on mutually-agreeable dates and in mutually-agreeable locations in April and May.  Plaintiffs have not provided a position on this proposal.

While refusing to discuss the Named Plaintiffs' depositions, on February 21, Plaintiffs purported to notice a 30(b)(6) deposition to take place 10 days later, on March 2.  Plaintiffs made no effort to meet and confer with Facebook as required by Local Rule 30-1 before noticing this deposition.  And, as Plaintiffs surely know, 10 days does not provide reasonable notice to identify and prepare a 30(b)(6) witness even for a narrow set of topics—much less the myriad topics listed in Plaintiffs' notice (many, if not all, of which are premature, beyond the scope of permissible discovery under Rule 26, or not described with "reasonable particularity").  Indeed, the proposed deposition goes well beyond ESI issues and seeks to explore issues ranging from document holds, to highly sensitive information related to Facebook's system architecture, and privileged issues related to counsel's work product in this action.

## VII.    Plaintiffs' Case Management Statement

Plaintiffs declined to prepare a joint statement and provide it to Facebook with sufficient time for Facebook to meaningfully provide input and work with Plaintiffs to provide a joint submission.  It is a plaintiff's obligation to prepare a joint case management statement and provide it to the defendant for input in advance of the filing deadline.[6]  This approach is consistent with the procedure the parties have followed in this case to date.  To that end, when Facebook had not received a draft case management statement from Plaintiffs on the afternoon of Friday, February 21, Facebook reached out to Plaintiffs' counsel asking if Facebook could expect to receive the draft for Facebook's input by Monday, February 24.  Counsel responded that the draft would be provided the morning of Tuesday, February 25.  Counsel later followed up that Facebook would receive the draft late in the day on Tuesday, February 25.  Counsel later promised the draft by Wednesday morning, February 26.  Facebook finally received Plaintiffs' draft last night, after the close of business.

Plaintiffs' stated reason for this delay is that Facebook continued to respond to letters from Plaintiffs and make document productions in the days leading up to the parties' filing deadline.  It

---

[6]    *See, e.g., Western Conference of Teamsters Pension Plan v. Jennings*, No. C-10-03629 EDL, 2011 WL 2609858, at *3 (N.D. Cal. June 6, 2011) (" Plaintiffs' counsel provided [Defendant] with a draft of the Joint Case Management Conference statement for her review and comment before the December 7, 2010 filing date."); *Board of Trustees of Laborers Health and Welfare Trust Fund for Northern California v. Kudsk Const., Inc.*, N. C 12-165 CW (MEJ), 2012 WL 5373371, at *8 (N.D. Cal. Oct. 4, 2012) ("Prior to the case management conference, Plaintiffs drafted a joint case management statement and sent it to Defendants for their input."); *Hartmann v. Hanson*, No. C 09-03227 WHA, 2010 WL 335677, at *3 (N.D. Cal. Jan. 22, 2010) ("A week before the December 10 case management conference, plaintiff's counsel . . . failed to meet and confer with defense counsel to draft and file their joint case management statement."); *Huston v. ME Capital LLC*, No. CV16-1921 PHX DGC, at *1 (D. Az. Nov. 15, 2016) ("On October 4, 2016, the Court entered an order setting a Rule 16 case management conference. Doc. 10. The conference was set for November 9, 2016, at 4:30 p.m. The order required the parties to prepare a joint case management report, and specifically directed that Plaintiff was to take the lead in preparing the report.").

is now clear why Facebook's continued litigation progress delayed Plaintiffs.  Rather than use the Joint Case Management Statement to provide the Court a useful update regarding this action's status, Plaintiffs use it to quibble about the parties' negotiations on nearly every outstanding discovery topic and to seek a plethora of rulings on issues that are not ripe and are the subject of ongoing meet and confer efforts.  Plaintiffs' positions are largely an inappropriate and unwarranted attack on Facebook and its Counsel and find no place in a joint case management submission.

## VIII.   Proposed Topics for Case Management Conference

At the March 5 Case Management Conference, Facebook would appreciate discussing with the Court and receiving the Court's guidance on the following four topics:

1.   The Court's expectations for its joint-discovery dispute procedure;

2.   The efficiencies attendant to a coordinated document collection and review process;

3.   Whether parties may evade depositions unless their unilateral demands are met; and

4.   The Court's expectations for the timing, preparation, and substance of joint case management statements.

\\

\\

Dated:  February 27, 2020          **GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Brian M. Lutz (SBN 255976)
blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650-849-5300
Facsimile:  650-849-5048

*Attorneys for Defendant Facebook, Inc.*