# EXHIBIT 2

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SUBMITTED UNDER SEAL

| | |
|---|---|
| Lesley E. Weaver (SBN 191305) | Derek W. Loeser (admitted *pro hac vice*) |
| BLEICHMAR FONTI & AULD LLP | KELLER ROHRBACK L.L.P. |
| 555 12th Street, Suite 1600 | 1201 Third Avenue, Suite 3200 |
| Oakland, CA 94607 | Seattle, WA 98101 |
| Tel.: (415) 445-4003 | Tel.: (206) 623-1900 |
| Fax: (415) 445-4020 | Fax: (206) 623-3384 |
| lweaver@bfalaw.com | dloeser@kellerrohrback.com |

*Plaintiffs' Co-Lead Counsel*

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT DISCOVERY LETTER REGARDING FTC SEARCH TERMS AND CUSTODIANS**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor |

**Redacted Version of Document Sought to be Submitted Under Seal**

March 10, 2020

**VIA ELECTRONIC FILING**

Honorable Vince Chhabria
United States District Court
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:   *In re Facebook, Inc. Consumer Privacy User Profile*,
>       Northern District of California Case No. 3:18-md-02843-VC

Dear Judge Chhabria:

Plaintiffs respectfully seek an order compelling Facebook to identify the search terms and custodians used for the Federal Trade Commission ("FTC") production in order to facilitate meaningful negotiation of search terms and custodians in this case.

## I. Plaintiffs' Position

At 3:35 pm today, Facebook offered to provide search term and custodians for the 2018 enforcement proceedings subject to certain unacceptable conditions discussed below, but refused to provide search terms and custodians for the original FTC investigation, claiming it would be "too burdensome" to identify this information. Plaintiffs rejected this proposal.

The FTC search terms and custodians will create transparency and meaningfully advance the parties' discussion of appropriate document production. *See, e,g, Russell v. Kronos Inc.,* No. 18-CV-04525-EMC (LB), 2019 WL 5485891, at *1 (N.D. Cal. Oct. 25, 2019); *see also Apple, Inc. v. Samsung Elecs. Co.,* No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (Grewal, J.) (requiring third party Google to produce search terms and custodians within 48 hours of order to "serve[] greater purposes of transparency in discovery"). The need for the information is particularly acute here in light of Facebook's refusal to provide organizational information that would enable Plaintiffs to zero in on search terms or engage in meaningful search term negotiations (Facebook claims that only 12 search strings are necessary in this large-scale, complex case).

The FTC's investigatory proceedings substantially overlap with this case. In 2012, Facebook settled allegations by the FTC that it shared users' content and information with third parties beyond the scope of users' consent[1] ("2012 Order"). Facebook agreed not to "misrepresent in any manner…the extent to which a consumer can control the privacy of any covered information maintained by [Facebook] and the steps a consumer must take to implement such controls; [and] the extent to which [Facebook] makes or has made covered information accessible to third parties." 2012 Order §§ I.B, C.[2] Facebook also agreed to maintain a privacy program designed to cure the risks of giving app developers access to user data. *Id.,* § IV. Facebook allegedly violated the 2012 Order, giving rise to a subsequent enforcement proceeding.

---

[1] *See*, First Am. Consol. Compl. (FAC) ¶ 675 (*citing* FTC Complaint, *In the Matter of Facebook, Inc.*, No. C-4365 (F.T.C. July 2012), https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookcmp).
[2] *See* https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf.

1

Like the FTC proceedings, this case is fundamentally "about Facebook's practice of sharing its users' personal information with third parties." *See* Pretrial Order No. 20, Granting in Part and Denying in Part Mot. to Dismiss First. Am. Compl. (PTO 20), ECF No. 298, (Feb. 22, 2019) at 1; *see also* 6-7, 22 n.10, 24-25, 26-29, 35. The 2018 FTC enforcement proceeding resulted in a $5 billion penalty for Facebook's *continuing* misconduct, including that (1) Facebook made users' private content accessible to apps used by users' friends even if users chose the most restrictive privacy settings; (2) Facebook allowed app developers to collect data about users' friends even after Facebook announced it would stop such access, taking less severe action against app developers that generated significant revenue for Facebook; (3) without permission, Facebook gave Whitelisted apps and Business Partners access to users' friends' data through June 2018; and (4) Facebook failed to address violations of users' privacy restrictions by third parties. These topics are encompassed by the four categories of misconduct this Court found viable in this action. *Compare* PTO 20, at 6-9 (defining categories of actionable misconduct) with FAC ¶ 680 (citing *Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns About Facebook Privacy Practices*, F.T.C. (Mar. 26, 2018)).[3] Plaintiffs have repeatedly asked Facebook to identify any category of those proceedings not relevant here. It has not done so.

The FTC correspondence produced (to date) further confirms the obvious relevance of the information Facebook provided to the FTC to this action.[4] For example, the FTC requested that Facebook provide (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (April 4, 2018 correspondence, FB-CA-MDL-00009462); (2) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*id.*, FB-CA-MDL-00009464); (3) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*id.*, FB-CA-MDL-00009466); and (4) internal and external communications regarding the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ April 4, 2018 correspondence, *id.*, FB-CA-MDL-00009467. *See also* March 25, 2010 Correspondence, FB-CA-MDL-00013421-34 (requesting substantially similar documents leading to the 2012 Order).

Despite this obvious overlap, Facebook refuses to identify all of the FTC search terms and custodians used to provide relevant documents to the FTC. Just five hours ago Facebook offered to identify *only* the terms and custodians relating to the 2018 enforcement proceedings.[5] We have been down this road before—in December, Facebook claimed to be shocked when Plaintiffs sought all of the correspondence with the FTC pertaining to the 2012 investigation and the 2018 enforcement proceeding. Plaintiffs have never entertained a meaningful distinction between the

---

[3] *See* https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureauconsumer-protection.

[4] Plaintiffs continue to believe that Facebook has not produced all correspondence it is required to by the Court's PTO No. 366. For example, no correspondence discussing search terms has been produced.

[5] Facebook first informed Plaintiffs at 3:35 pm this afternoon that it misunderstood Plaintiffs *only* to be requesting the search terms and custodians used to collected documents for the 2018 enforcement proceeding, *not* the underlying action that led to the consent decree Facebook violated. This is nonsensical and belied by the previous draft joint letter the parties exchanged on this topic. Facebook provided its entirely new portion of its brief to Plaintiffs at 8:12 pm the evening of this filing. Among other fabrications, the assertion in Facebook's footnote that Plaintiffs "asked for the first time in their joint letter" for such a list is untrue.

2

two and made this clear in December. Facebook claims this evening that Plaintiffs never asked for a final list of custodians and terms Facebook used to collect documents for both actions. This is just false. In a January 17, 2020 meet and confer, Plaintiffs directly asked for just that. In response, Facebook refused, and proposed just twelve extended Boolean search strings. These proposed terms do not even include the words "Cambridge Analytica." Each of the twelve is extensively conditioned with limiting modifiers and uses general base terms like the words "third party" or "developer" without reference to any specific third parties. These terms are grossly inadequate—and no doubt far more restrictive than the terms used for the largely overlapping FTC production. With the FTC search terms in hand, Plaintiffs will be able to offer more targeted and specific terms than they have thus far been able to propose – a demand that Facebook itself has made.[6] The FTC search terms are a burden-less starter kit to jumpstart meaningful search term negotiations in this case. Facebook's preferred course appears to be to hide the ball.[7]

Facebook also refuses to identify the custodians utilized for the FTC production. To move forward, Plaintiffs asked for more information about 33 potential custodians from the FTC's 2018 enforcement action correspondence (4 of whom are among the 9 custodians proposed by Facebook) and an additional 57 additional custodians identified through public sources.[8] Facebook refused to provide this information. Particularly in light of Facebook's failure to provide organization charts or other information that identifies key personnel, the names of all custodians used for the FTC production would shed much needed light on the appropriate custodians for this case.[9]

To surmount these obstacles, Plaintiffs respectfully seek an order requiring Facebook to: (1) identify all custodians from whom responsive materials were collected in the 2012 FTC investigation and 2018 FTC enforcement proceeding; (2) identify all search terms used in both actions; and (3) provide this information within three business days of this Court's order.

## II.     Facebook's Position

### A.     Plaintiffs refuse to commit to use FTC search information only to negotiate search terms and custodians, belying Plaintiffs' representation that they seek the information for that purpose.

Plaintiffs have repeatedly represented that they seek the search terms and custodians

---

[6] Facebook contends that it does not know if search terms were used for the 2012 investigation. Given that Gibson Dunn – including a lawyer previously at the firm and now in-house at Facebook – took the lead in both the 2012 and 2018 investigations, this seems dubious at best.

[7] Even as to the limited information Facebook now offers to provide, Facebook has asked for an attorneys' eyes only restriction. This would prevent Plaintiffs' experts and consultants from analyzing their efficacy. Plaintiffs did agree to accept production of those terms and custodians (in addition to all others used to collect materials responsive to the FTC proceedings) subject to the restrictions of the protective order in this case, which would prohibit any improper use of the information feared by Facebook.

[8] No correspondence produced to date discusses any custodian for the initial investigative FTC proceeding initiated in 2009. This list of 33 relates to the enforcement proceeding only and did not cover the entire Class Period.

[9] It appears that Facebook may have produced organizational information in another case. *See* Joint Letter Brief Regarding Rachel Tucker and Organizational Charts," *LLE One, LLC, et. al. v. Facebook, Inc.*, Case No. 4:16-cv-06232 (N.D. Cal. Apr. 22, 2019), ECF. No. 180. We have asked Facebook to produce the same information here. Facebook responded to this for the first time in its joint letter at 8:33 pm this evening. Whatever Facebook produced in that action should be produced here.

Facebook used to collect materials for the FTC's 2018-2019 investigation only "as a starting point" to negotiate search terms and custodians here. In view of these representations, Facebook agreed to provide Plaintiffs this information on the condition that Plaintiffs will use those materials only for counsel's search-term negotiations. Facebook specifically agreed to produce the requested information by March 13, on the following terms: (i) the information will be provided on an attorneys' eyes only basis; (ii) the information may be used only to negotiate search terms and custodians in this action and for no other purpose; and (iii) Plaintiffs will not take the position that providing the information waives any work product protection.

To Facebook's surprise, Plaintiffs rejected Facebook's proposal and insisted instead that Facebook provide Plaintiffs all information they demand without any restrictions on its use, beyond the protective order in this case (which does not address this circumstance). Although Plaintiffs suggest that they rejected Facebook's proposal on the basis of a dispute about pre-2012 search information, Plaintiffs explicitly stated that they "cannot agree to the conditions [on the search information] proposed." Plaintiffs' refusal to accept search term and custodian information only for use by attorneys to negotiate search terms belies their position that they seek these materials for this reason and raises serious concerns as to Plaintiffs' real motives for demanding this information. Indeed, Facebook has never understood Plaintiffs' baffling position that—unlike parties in any other case—they are not able to propose searches for their own RFPs without viewing searches used to collect materials during a government investigation.

*First,* Plaintiffs' Second Set of RFPs, which the parties are negotiating, demand Facebook's FTC productions *plus 24 other categories of materials*. Plaintiffs will receive the FTC productions at the end of this month. The only outstanding question is what searches should be used to collect materials responsive to Plaintiffs' *other requests*. Providing the FTC search terms would not answer this question.

*Second,* consistent with Rule 26(f) and the Northern District's ESI Guidelines, Facebook provided Plaintiffs a search-term and custodian proposal on February 7. Although Plaintiffs suggest the FTC search terms are necessary because Facebook proposed only "12 searches," in reality, Facebook proposed 12 Boolean strings, each of which contains multiple searches. Facebook also indicated that materials responsive to many demands will be collected through targeted collections—rather than through search terms. For instance, Facebook will not use search terms to collect materials responsive to Plaintiffs' request for the FTC productions—it is simply gathering and reviewing those productions.[10]

*Third,* Facebook invited Plaintiffs to negotiate its search-term proposal. Plaintiffs refused, taking the position that they cannot negotiate search terms without the FTC search terms. At the

---

[10] Facebook has not refused to consider providing Plaintiffs documents from more than nine custodians. Facebook agreed to produce all relevant materials produced to the FTC and all materials produced to regulators in related actions responsive to Plaintiffs' RFPs. With these agreements in mind, Facebook's initial search-term proposal included a list of nine proposed custodians to collect additional materials responsive to Plaintiffs' RFPs, in an effort to avoid recollecting an extensive set of materials that Facebook already collected and agreed to produce. Facebook made abundantly clear that it is open to negotiating additional custodians, and that it is happy to provide Plaintiffs additional custodial information in response to tailored questions. Facebook also previously provided Plaintiffs extensive information regarding the custodians used in the FTC's recent 2018-2019 investigation, including letters it sent the FTC providing descriptions of Facebook's proposed custodians. If Plaintiffs had asked for a final list of custodians used, Facebook would have provided it. Plaintiffs asked for the first time in their joint letter.

same time, Plaintiffs asserted that searches in this action must include more than 230 arbitrary words—including "academic research," "applications," "basic info," "compliance," "consent," "everyone," "likes," "news feed," "public," "Steve Bannon," "valuation," "switcharoo," and "user content." Plaintiffs' suggestion that they need searches from a prior government action because they are unhappy with Facebook's search term proposal is akin to a suggestion that Plaintiffs' counsel should provide searches they agreed to in prior actions as "a starting point" to push back on their egregiously overreaching demand.

*Fourth*, throughout the parties' negotiations on this issue, Plaintiffs have not been able to point to a single case allowing a party to view search terms used in a prior action, much less terms used to collect materials during a government investigation. To Facebook's knowledge no such authority exists. This is likely because the methods counsel uses to identify materials responsive to a third party's document requests are privileged work product. *See FCC v. Mizuho Medy Co.*, No. 07CV189 JAH (NLS), 2008 WL 11338402, at *3–4 (S.D. Cal. July 7, 2008) ("Discovery of an attorney's selection and compilation of documents is prohibited to the extent it would reveal 'an attorney's legal strategy'"). Even setting aside privilege concerns, it is obviously not the place of private litigants to conduct discovery regarding an ongoing government proceeding.

Plaintiffs refusal to accept the FTC search terms and custodians for use only by attorneys to negotiate search terms and custodians only underscores Facebook's prior concerns that Plaintiffs do not seek this information as part of a good faith effort to negotiate search terms and custodian here but as part of an improper fishing expedition to either (i) second-guess the FTC proceedings or (ii) conduct discovery on Facebook's review of its FTC productions. Plaintiffs even state they are needed for "transparency" and will require review by "consultants" and "experts" to determine their "efficacy."

In view of these concerns, the Court should deny Plaintiffs' request. However, if the Court is inclined to order Facebook to provide Plaintiffs the search terms and custodians it used to collect materials during the FTC's 2018-2019 investigation, Facebook respectfully requests that the Court issue an order clarifying that providing Plaintiffs search information from other matters will not operate as a waiver of any work product protection, and stating that the requested information: (i) should be provided on an Attorneys' Eyes Only basis, and (ii) may be used only to negotiate search terms and custodians in this action.[11]

### B.     Plaintiffs have no basis to demand search information from the FTC's pre-2012 investigation, and it cannot be collected on an expedited timeline.

Plaintiffs have seized on the Court's invitation to submit the briefing that had already been

---

[11] Plaintiffs contend that Facebook provided organizational information in an unrelated action entitled *LLE One, LLC, et. al. v. Facebook, Inc.*, Case No. 4:16-cv-06232 (N.D. Cal. Apr. 22, 2019).  Contrary to Plaintiffs' suggestion, Facebook did not produce organizational charts in that case.  In *LLE One*, Facebook agreed to use an interactive tool to *create current* organizational information on a custodian-by-custodian basis—the Court *denied* the cited motion to compel, which demanded that Facebook create additional organizational information.  *See id.* Dkt. No. 185.  Here, Facebook has agreed to generate written organizational descriptions in response to reasonably tailored requests, and it has shared the information it provided in response to the FTC's requests for organizational information.  Facebook is happy to discuss with Plaintiffs whether it would make sense for it to *create current reporting line* information for certain custodians like the information it created in *LLE One*.  But the Federal Rules do not require parties to create documents for use in litigation.  As stated numerous times, Facebook does not maintain organizational charts, and Facebook understands Plaintiffs seek historical information.

prepared on the more recent FTC search terms to rewrite their section and demand for the first time that Facebook provide search term and custodian information from the FTC's pre-2012 investigation. This additional demand concerns search information used to collect materials in 2010. It is even less likely that these searches would provide insight into appropriate searches to collect materials responsive to Plaintiffs' RFPs. Even if the Court were inclined to order Facebook to produce these older search materials, Facebook has explained to Plaintiffs that it cannot realistically produce them in a matter of days. Upon a preliminary re-review of Facebook's 2010 correspondence with the FTC, there does not seem to be a discussion regarding search terms and custodians.[12] While it is possible that Facebook would be able to locate records of the search terms and custodians used to collect materials for the FTC in 2010, any search for this information would be burdensome. Plaintiffs' request for this information should be denied. Otherwise the Court should provide Facebook a reasonable amount of time to search for it.

Dated: March 10, 2020                                         Respectfully submitted,


KELLER ROHRBACK L.L.P.                                        BLEICHMAR FONTI & AULD LLP

By:   /s/ Derek W. Loeser                                     By:   /s/ Lesley E. Weaver
      Derek W. Loeser                                               Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)                     Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)                  Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*)             Joshua D. Samra (SBN 313050)
Cari Campen Laufenberg (admitted *pro hac vice*)              Matthew P. Montgomery (SBN 180196)
David Ko (admitted *pro hac vice*)                            Angelica M. Ornelas (SBN 285929)
Adele A. Daniel (admitted *pro hac vice*)                     555 12th Street, Suite 1600
Benjamin Gould (SBN 250630)                                   Oakland, CA 94607
1201 Third Avenue, Suite 3200                                 Tel.: (415) 445-4003
Seattle, WA 98101                                             Fax: (415) 445-4020
Tel.: (206) 623-1900                                          lweaver@bfalaw.com
Fax: (206) 623-3384                                           adavis@bfalaw.com
dloeser@kellerrohrback.com                                    jsamra@bfalaw.com
lsarko@kellerrohrback.com                                     mmontgomery@bfalaw.com
gcappio@kellerrohrback.com                                    aornelas@bfalaw.com
claufenberg@kellerrohrback.com
bgould@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com

---

[12] Facebook has not withheld correspondence the Court ordered it to produce. On December 26, Facebook voluntarily produced document demands from the FTC related to its 2018-2019 investigation and correspondence from the FTC defining the scope of those demands. (Dkt. 358 at 3.) At the January 8, 2020 CMC, the Court ordered Facebook "to provide the pre-2012 stuff as well in that category." Trans. of 1/8/2020 CMC at 8:10-11. Facebook separately agreed with Plaintiffs to produce correspondence that Facebook sent the FTC further defining what it would produce in response to its 2018-2019 requests. Facebook produced these materials.

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley (SBN 154148)
Brian M. Lutz (SBN 255976)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of March, 2020, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I, Lesley E. Weaver, hereby certify that on March 10, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Lesley E. Weaver*
Lesley E. Weaver