Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: April 17, 2020<br>Hearing Time: 9:00 a.m. |

## JOINT STATUS UPDATE

The parties, by and through their counsel, submit this Joint Status Update pursuant to the Judge Corley's Order dated April 2, 2020 (DKT. No. 394) and in anticipation of the video conference addressing the status of the parties' ongoing discussions relating to the search for and production of electronically stored information ("ESI") scheduled for April 17, 2020 at 9:00 a.m.

## I.        PLAINTIFFS' STATEMENT

The bulk of this submission is devoted to a status report on ESI-related discovery. As the Court will see, the parties' negotiations about electronic discovery have eaten up a great deal of time—considerably more time with less progress than such negotiations usually do. And while COVID-19 has affected all of us, the problems we are having with ESI discovery did not start with COVID-19. Rather, they have been accruing since last year.

In addition to the ESI-related issues discussed below, Plaintiffs note that there are other, non-ESI discovery disputes in this case, many of which have been outstanding for some time as a result of lengthy and largely unsuccessful meet and confer efforts. While complex MDLs often involve substantial discovery disputes, this case is exceptional – despite Plaintiffs' best efforts, the vast majority of Plaintiffs' most basic discovery requests remain unanswered. In fact, Facebook has not yet produced documents responsive to 27 of Plaintiffs' 31 requests for production, and Facebook has only partially responded to the remaining four. Facebook contends that the parties must agree on search terms and custodians before it can respond to the outstanding requests, but it has slow walked those discussions, resulting in substantial delay. Facebook offers no excuse for failure to produce responsive materials that can be collected without search terms, such as materials previously produced to regulators investigating the subject matter of this action.

Plaintiffs believe an efficient mechanism is necessary for presenting the ever-growing list of disputes to the Court and will propose in a separate filing an approach to tracking and efficiently addressing discovery disputes that currently is being used successfully in the *National Opioids MDL*. It may also be helpful to schedule a separate conference next week to address

those issues.

Further, in light of the many pending disputes, Plaintiffs have asked Facebook to join us in proposing bi-monthly video conference with Your Honor, as suggested by Judge Chhabria in the parties' last case management conference. Facebook has declined. Nonetheless, Plaintiffs believe such conferences would significantly advance prompt and efficient resolution of disputes. Plaintiffs seek and will follow the Court's guidance on how best to proceed.

Plaintiffs appreciate the efforts of the Court and of Facebook to engage in conversations about how to proceed in light of the current pandemic. Plaintiffs are also sensitive to the demands and changes to the professional and personal lives of those involved in this litigation, and must balance these disruptions with the realities of Judge Chhabria's scheduling order, which among other things, requires substantial completion of discovery by October 2, 2020. Pretrial Order No. 32: Case Management Schedule, Dec. 13, 2019, DKT. No. 356. Without the Court's and parties' active and engaged involvement, Plaintiffs are concerned that this deadline will not be met.

## A.  Brief Overview of the Status of ESI Negotiations.

On ESI discovery, the parties exchanged only high-level search term proposals, exchanged lists of individuals likely to possess relevant information, and have negotiated nearly all of the terms of an ESI protocol. Alongside the ESI Protocol, the parties have also begun to negotiate a 502(d) stipulation, But much remains to be done. A glaring threshold problem is that the parties have not held meaningful discussions about where responsive materials are likely to reside in Facebook's electronic records, despite Plaintiffs' repeated efforts to engage on this issue—beginning in 2018. Another threshold problem is that, at least until the evening prior to this filing and after repeated requests, Plaintiffs lacked the sort of information about Facebook's organization that permits an informed selection of electronic custodians.[1] Facebook has declined to provide information about many potential custodians Plaintiffs have identified, to-date only

---

[1] Because Facebook waited until 10:30 p.m. last night to produce what appear to be organizational charts, Plaintiffs have been unable to review and analyze their contents. This is addressed further below.

providing it for the custodians Facebook proposed.

Because many months have passed and as set forth above, the deadline for the substantial completion of document production is October 2, 2020, Plaintiffs ask that the Court set a schedule for the parties to reach agreement on crucial ESI matters. If the parties have not reached an agreement by the dates set by that schedule, the Court should resolve disagreements between the Parties. Plaintiffs set out a proposed schedule below. *See infra* § I.A.6

### 1.      Status of Discussions as to Where Responsive ESI Is Likely to Reside.

Plaintiffs first asked Facebook to identify the location of potentially responsive ESI in August 2018, but Facebook declined. Plaintiffs renewed their request in September 2019, but Facebook declined to hold a Rule 26(f) conference until ordered to do so by the Court, following the parties November 4, 2019 Case Management Conference. Plaintiffs provided Facebook with a specific proposed ESI protocol on November 6, 2019, which provided for written ESI Disclosures, designed to determine, at least in part, the location of responsive ESI. Facebook has to-date refused to provide written ESI Disclosures. Thus, Plaintiffs have so far learned little about where responsive ESI is likely to be. They have not yet been told, for example, where data about Named Plaintiffs—let alone class members—resides.[2] In fact, Facebook has resisted Plaintiffs' attempts to take a Rule 30(b)(6) deposition inquiring into these basic and fundamental topics, as explained in further detail below.

Where responsive ESI resides is an essential threshold issue. Learning the location and format of responsive ESI enables a meaningful discussion of whether search terms are appropriate and, if so, what search terms should be used. For example, in order to search for documents related to the Named Plaintiffs, it may be possible simply to search using the Named Plaintiffs' Facebook UserIDs—provided that there is a data source that maps data about Facebook users to their UserIDs. If the relevant database has a different organizational architecture, however, search strings may be required. But because the parties have not had a

---

[2] The First Amended Complaint alleges—and the Order on Facebook's Motion to Dismiss finds it plausible—that Facebook maintains profiles on its users. *See, e.g.,* FAC, at ¶¶ 315-321, Dkt. No. 257; Pretrial Order No. 20 at 18, 29, Dkt. No. 298 (Sept. 9, 2019).

specific, substantive conversation about where ESI resides and in what format, search term and custodial discussions are hobbled.

### 2.    Status of Discussions Identifying Suitable Custodians.

To develop a list of electronic custodians, Plaintiffs propounded a request for organizational charts last November. Facebook expressly told the Court and Plaintiffs that Facebook does not possess organizational charts and so could not produce them. That statement turned out to be, at the very least, misleading. Facebook has now admitted that it has previously prepared organizational charts for other litigation and inquiries and *does* have the ability, using a tool it designed and has had available during the pendency of Plaintiffs' request, to create organizational charts. Indeed, because Facebook repeatedly claimed it did not have organizational charts, Plaintiffs developed a list of custodians through independent means. Relying on their own research, Plaintiffs identified 149 individuals of interest and provided that list to Facebook on April 3, 2020. At the same time, Plaintiffs pressed Facebook on its claim that it did not have organizational charts, based in part on public filings in separate litigation relating to video advertising that referred to such charts by Bates number. When asked, Facebook acknowledged that organizational charts do exist, but claimed they weren't relevant to this action. Yet this case clearly involves claims about Facebook's sale of information to advertisers related users' video views, including but not limited to the Video Privacy Protection Act claim. Finally, in the face of this hearing, Facebook produced last night at 10:30 p.m. what appear to be organizational charts. This admission is inconsistent with Facebook's repeated assertions that such charts do not exist.

Meanwhile, on February 7, 2020, Facebook proposed a total of *nine* individuals as custodians. Plaintiffs rejected this proposal and on February 21, despite the lack of organizational charts, made a preliminary proposal of 90 custodians. On February 24, which Facebook declined to provide information regarding Plaintiffs' proposed custodians- stating that the proposal was "extremely broad, would impose tremendous burdens on Facebook, and does not seem reasonably tailored in good faith." Plaintiffs' proposed number of custodians was

vindicated after Facebook produced documents that it had previously produced in related proceedings brought by the Federal Trade Commission (FTC). As it turns out, these documents were gathered from 91 custodians.

More recently, on April 7, 2020, Facebook proposed a new list of 59 custodians. But it has not yet explained why the list of custodians reflected in the FTC production is so much more expansive (91 versus 59 custodians), even though the legal and factual issues in the FTC proceedings overlap substantially with this case. Moreover, Facebook's proposed the list does not include many of the 149 individuals of interest Plaintiffs have painstakingly identified.

### 3.     Status of Discussions Concerning Search Terms.

In a case that Facebook has described as "bigger" and "more complicated case" than *Juul*,[3] Facebook provided Plaintiffs with just twelve proposed search strings on February 7, 2020. This proposal is simply not equal to the magnitude and complexity of this case. On February 21, Plaintiffs responded with proposed search terms of their own, again asking for the locations of responsive data so that Plaintiffs could craft search strings appropriate to the data sources. Pursuant to this Court's April 2, 2020 order, Plaintiffs have now received the search terms used in the 2018 FTC proceedings which appear to be much more comprehensive than those proposed by Facebook, but still no substantive information as to where these terms might be applied and more importantly where responsive materials reside. Using the FTC terms as a reference, Plaintiffs continue to craft additional search terms, but await Facebook's offer of a time to discuss the questions we have raised. Notably, although Facebook recently said that it cannot provide the search strings related to the initial enforcement proceedings, Plaintiffs note that counsel from Gibson Dunn involved in that process is now in-house counsel at Facebook and has appeared at hearings in this action. In any event, such an assertion should be supported by a declaration rather than counsel's argument. The reason that this is important is evidenced by our recent experience with the FTC search strings relating to the 2018 enforcement proceedings

---

[3] Facebook counsel's statement referencing *In Re: JUUL Labs, Inc., Marketing , Sales Practices, and Products Liability Litigation*, MDL No. 2913 (N.D. Cal.) during a March 27, 2020 meet and confer regarding various outstanding discovery disputes.

were produced. The FTC search strings from the enforcement proceeding identified technical terms and concepts not covered by the terms Facebook proposed using in this action, and providing plaintiffs with technical terms this will advance the parties' discussions about what will be efficient and effective in this action. We anticipate the similar usefulness from the search terms used to collect documents in the earlier investigation proceeding, which was much broader in scope. For this reason, Plaintiffs respectfully ask that Facebook be ordered to identify those search strings from the 2012 proceeding, or produce concrete evidence stating why this is not possible.

### 4.     Status of Negotiations Relating to Plaintiffs' Rule 30(b)(6) Notice.

A fourth related matter under discussion is whether Facebook will produce corporate designees to testify about Facebook's organizational structure and the location of responsive material. Such depositions are routine in complex litigation to advance the production of ESI. Notably, in this case, such testimony may also touch on merits issues relating to how Facebook maintained, preserved and disseminated user content and information, which would relate to causes of action such as negligence, breach of contract, or violations of user privacy. It is also Plaintiffs' hope that the taking of evidence on these topics will move this case forward.

Plaintiffs issued a Rule 30(b)(6) deposition notice to Facebook on February 21, 2020. Facebook broadly objected to each topic noticed, as well as whether such a deposition was appropriate at all. The parties then met and conferred regarding the scope of the notice. To accommodate Facebook's concerns, on April 3, 2020, Plaintiffs issued a revised notice, which significantly narrowed and clarified the topics, requesting that the deposition occur remotely within 45 days of the notice (beyond the current Bay Area shelter-in-place order's expiration on May 1, 2020). Despite these efforts and Plaintiffs' renewed request to further meet and confer on this topic, Facebook did not respond until late last night, and confirmed that they do not believe a Rule 30(b)(6) deposition is appropriate until counsel can undertake "in-person preparation."[4]

---

[4] In an effort to address concerns about conducting depositions during the COVID-19 pandemic, Plaintiffs proposed a comprehensive remote deposition protocol to Facebook on April 10.

### 5.      Status of Discussions Relating to the ESI Protocol

The parties have been conferring over an ESI protocol for more than five months and it is the one area where the parties have achieved the most agreement. Plaintiffs first sent Facebook a proposed ESI protocol on November 6, 2019. The parties have since conferred on this topic on six separate occasions, most recently on Wednesday April 15, and have exchanged multiple draft proposals. As a result of these efforts, the parties have reached agreement on the technical specifications for production, have agreed to separately meet and confer on a protocol for privilege log production, and are engaged in a productive meet and confer process regarding a Rule 502(d) stipulation. As for the remainder of the ESI Protocol itself, there are two primary areas remaining in dispute.

The first remaining issue is whether the parties should be permitted to make redactions for relevance—which Facebook has proposed should include "competitively sensitive information." and which Plaintiffs assert should be limited to narrowly defined information, such as that described in Fed. R. Civ. Proc. 5.2. Facebook has agreed to provide language more clearly identifying the information it may seek to redact, and Plaintiffs have agreed to consider that language when received.

The second remaining issue is whether the parties should produce individual emails rather than email threads. Plaintiffs and Facebook agree that the parties may use email threading to reduce their review burden and to increase the efficiency of document review, and Plaintiffs have proposed that a technical fix be deployed to rebuild individual emails for production in order to prevent the alteration of individual documents to merged documents and to avoid the accompanying loss of metadata and searchability that results from a threaded email production. Facebook has indicated that it will propose providing additional metadata to preserve searchability, but Plaintiffs have not yet evaluated this proposal. Plaintiffs may seek the Court's guidance on these issues.

### 6.      The Court Should Set an ESI Schedule.

Plaintiffs are concerned about the parties' lack of progress on ESI-related issues,

particularly given the tight timeframe for discovery set by Judge Chhabria. They propose, therefore, that the court set the following schedule relating to ESI:

> April 24, 2020 – Deadline for the parties to agree on custodians and non-custodial sources of responsive documents.
>
> May 8, 2020 – Deadline for the parties to agree on preliminary search terms.
>
> May 15, 2020 – Deadline for Facebook to provide initial hit reports for proposed search terms.
>
> June 26, 2020 – Rolling production of ESI begins.

Plaintiffs believe that this schedule would allow the substantial completion of document discovery by the October 2 deadline. On April 8, Plaintiffs proposed this schedule to Facebook, but as of this filing, Facebook has failed to respond substantively to Plaintiffs' invitation to discuss the proposal. In response to the request for deadlines, Facebook has suggested that Plaintiffs only be permitted to raise three "issues" per week. Plaintiffs have responded to Facebook that such an unprecedented proposal would further bottleneck matters previously raised that remain unresolved, and invite collateral litigation around what an "issue" is. Nearly all of the issues that Plaintiffs have raised in the past four weeks are continuing matters we have been seeking to resolve for months, including those identified in previous case management statements. Plaintiffs do not think the "issues" proposal is workable, but are developing an alternative proposal that may address Facebook's concerns, addressed below.

Plaintiffs are concerned that until the parties agree on the custodians, search terms and other sources to be searched, progress in this case will be thwarted. While the parties have made progress on the ESI protocol, that protocol is the last step in the process, not the first.

### B.    Other Outstanding Issues That May Require Court Intervention.

From the start of discovery in this case, routine litigation tasks, such as an ESI protocol, production of materials previously produced to government agencies (which notably often occurs at the start of discovery in many MDLs including in the *Opioid MDL* and the *JUUL MDL*), search terms and custodians, and a host of other matters have taken far longer than typically is

the case. For this reason, Plaintiffs respectfully request another conference with the Court next week concerning topics not related to ESI. They also propose discovery conferences with the Court every other week consistent with Judge Chhabria's comment at the last status conference. *See* March 5, 2020 Case Management Conference, Tr. at 12 (suggesting that the parties meet with a Magistrate Judge "once every two weeks to sort of make sure that things are still moving . . .").

## FACEBOOK'S STATUS UPDATE

Facebook respectfully submits this ESI Status Update in advance of the April 17 ESI Status Conference.  At Plaintiffs' request, the parties prepared their statements separately and exchanged them simultaneously one hour before the filing deadline, with Plaintiffs compiling the statements and filing them with the Court.  For this reason, Facebook has not seen or had an opportunity to respond to any issues or disputes raised in Plaintiffs' statement.  The parties agreed they would not include exhibits with their statements.

As set forth below, the parties have made substantial progress on discovery since the March 5 Case Management Conference before Judge Chhabria.  Facebook is committed to moving this action forward without delay.  To that end, our team has worked extraordinarily hard over the past several weeks to keep the case on track, even with the difficult circumstances we are all facing.  In spite of this, Facebook has endured an escalating barrage of discovery letters (at one point Plaintiffs sent ten letters within eight days addressing *fifty* different substantive issues) many of which demand immediate responses on non-urgent issues.  One of these letters, sent on April 4, asked counsel to address within days *seventeen* different complex questions regarding Facebook's organization and *149* current and former Facebook employees—*months after* Facebook first offered to provide information and create materials about its organization and potential custodians on an informal basis, and *five weeks after* Plaintiffs attempted to notice a 30(b)(6) deposition on these topics, rather than meet and confer in good faith, as the Northern District's Guidelines require.  This was just one of five letters Plaintiffs sent within 24 hours—the other four sought immediate responses on eleven additional discovery topics.

Plaintiffs' vexatious approach has impeded an orderly and sensible discovery process.  For example, by insisting that Facebook respond to dozens and dozens of questions about dozens and dozens of issues, Plaintiffs have impeded progress on threshold ESI issues, such as custodians and

search terms, resolution of which is necessary for Facebook to proceed further with document collection, search, and review. We have asked Plaintiffs repeatedly to focus attention on these threshold ESI issues, but Plaintiffs instead have persisted in their letter writing campaign addressing countless other non-urgent and often extraneous issues. Accordingly, Facebook would appreciate the Court's guidance on how to reign in and limit Plaintiffs' discovery letter writing and direct them to focus their resources on and attention to resolving the threshold ESI issues.

## I.    Progress Since March 5 CMC

Facebook is pleased with the progress the parties have made since the March 5 Case Management Conference before Judge Chhabria. Over the last six weeks:

- Facebook produced **more than 250,000 pages** of ESI, including **all Facebook ESI produced in response to the FTC's document requests** during its related investigations;

- Facebook proposed **59 custodians** to collect ESI responsive to Plaintiffs' remaining RFPs;

- Facebook **created** and produced **organizational reporting line information** for each of its **59 proposed custodians** to assist the parties' negotiations;

- The parties exchanged multiple drafts of their ESI Protocol and its proposed appendices and met and conferred over the course of approximately **three hours** about its language, which is now close to final;

- Facebook **served its first set of RFPs** on the Named Plaintiffs, in lieu of moving forward with depositions previously noticed to begin in March, in view of COVID-19;

- The parties negotiated and agreed to a **dispute-resolution protocol**;

- Facebook sent Plaintiffs at least **13 substantive letters**, providing positions on **more than 38 discovery issues**;

- The parties filed a **joint discovery motion** regarding the conditions on which Plaintiffs may have access to the search terms and custodians used to collect ESI in the FTC action, which the Court resolved;

- The parties met and conferred for more than **six hours** on a host of topics related to the parties' ESI negotiations and other discrete discovery issues;

- Facebook produced **26,000 pages of ESI** regarding the named Plaintiffs, including reproducing approximately **11,000** pages of materials to accommodate Plaintiffs' formatting preferences;

- Facebook produced to Plaintiffs the search terms and custodians used to collect ESI in the FTC's recent related investigation;

- Facebook **invited Plaintiffs for the fourth time** to work with Facebook so that it can create organizational materials that may be useful for the parties' ESI negotiations;

- The parties exchanged approximately **135 emails** and **35 formal letters** addressing more than **90 ESI and other discovery issues**.

The parties have made an incredible amount of progress over the last six weeks, particularly with respect to the ESI produced to date. Indeed, at the March 5 Case Management Conference, Judge Chhabria indicated that the documents Facebook produced to the FTC during its related investigations should "**cover the vast majority of the documents that the Plaintiffs would want in this litigation.**"[5] We are pleased to report that we have now fully reviewed and produced to Plaintiffs all of the Facebook documents produced to the FTC in the related actions.[6] Additionally, Facebook reviewed and produced to Plaintiffs tens of thousands of pages produced to other federal and state regulators in related investigations and litigation.

Plaintiffs' RFPs request additional materials to supplement the ESI that Facebook produced to the FTC and other regulators in related actions. Although the parties have not reached agreement on an ESI Protocol or agreements with respect to search terms or custodians for these supplemental materials, the parties' ESI Protocol is nearly final. Facebook has also provided Plaintiffs its search term and custodian proposals and produced to Plaintiffs the search terms and custodians used to collect ESI in the FTC action—Plaintiffs took the position that they could not

---

[5] Trans. of March 5, 2020 Case Management Conference at 4:14-17.

[6] Facebook has not produced approximately 700 pages of documents produced to the FTC in 2011, which are located at an off-site storage facility that we cannot access under the current COVID-19 restrictions. Once Facebook is able to access these materials, it will promptly review and produce them.

negotiate search terms and custodians for their RFPs without this information.  We are now awaiting Plaintiffs' proposals.

Facebook is hopeful that Plaintiffs' review of the hundreds of thousands of pages produced to regulators in related actions—including all Facebook documents and organizational information produced to the FTC—will assist Plaintiffs to provide meaningful proposals, appropriately tailor many of the very broad RFPs that they previously served, and approach collection and production of additional materials in a systematic manner.

## II.    ESI Negotiations

The parties appear to have different approaches to the collection and production of ESI, which, in Facebook's view, is creating unnecessary roadblocks.  Plaintiffs have taken the approach of issuing near-daily demands for immediate, piecemeal collection of materials responsive to individual RFPs—forcing extensive negotiations and countless disputes regarding the hypothetical bounds of each request, letter-writing campaigns, and scattershot collection efforts.

In Facebook's view, this is not an efficient or effective approach to collecting ESI in a case of this magnitude.  The most efficient way for Facebook to continue to produce large numbers of documents to Plaintiffs in a timely manner is to conduct a consistent and unified document collection and review process.  This approach is consistent with common practice and requires identifying appropriate custodians, collecting materials from those custodians in an e-discovery platform, and running agreed-upon searches within those materials for documents potentially responsive to Plaintiffs' requests and warranting review.  Putting this system in place requires the parties' time and focus to finalize their ESI Protocol and reach agreement on search terms and custodians.

Facebook has found it difficult for the parties to focus adequately on these gating agreements given the very high volume of letters, urgent requests, and meet and confer demands

we receive from Plaintiffs on a regular basis.  While Facebook is also eager to resolve all potential issues related to Plaintiffs RFPs and to provide certain documents as quickly as possible, Facebook has repeatedly expressed to Plaintiffs that the volume of inbounds it is receiving from Plaintiffs is impeding progress and making it difficult for the parties to dedicate the focus and resources needed to work through their ESI Protocol and custodian and search term agreements.[7]  To that end, Facebook has asked Plaintiffs to limit temporarily the number of discovery issues they raise each week—many of which would be mooted by search term and custodian agreements—so that the parties can focus adequately on finalizing an ESI Protocol and reaching agreements with respect to search terms and custodians.  Facebook would appreciate the Court's guidance on this issue.

*ESI Protocol and 502(d) stipulation*: As noted above, the parties have made substantial headway on negotiating the terms of an ESI Protocol and a related stipulation under Federal Rule of Evidence 502(d).  After a break in negotiations in late February and most of March, over the last two weeks the parties have resumed their meet-and-confer efforts in earnest.  Those efforts have been productive.  The parties have resolved a number of their disagreements and narrowed the bid-ask spread on most of the others.  Assuming that the meet-and-confer efforts continue at their current pace, Facebook anticipates that within a week or two the parties will be ready to submit either fully agreed or largely agreed versions of the ESI Protocol and 502(d) stipulation to the Court for approval.

---

[7] By way of example, Plaintiffs sent Facebook **ten substantive letters** over the course of 8 days (at one point, five in 24 hours), which demanded that Facebook engage in **nine different meet and confer discussions** and provide positions and answer questions on more than **50 topics** last week.  It would be unreasonable to expect any party to respond to this volume of inbounds even under normal circumstances.  Here the volume was particularly concerning, given that we are all doing our best to keep the case moving forward under difficult circumstances, the parties have outstanding gating issues that require our full focus to resolve, and Plaintiffs' contrived timing demands overlapped with two religious holidays.

It is Facebook's understanding that the parties are in agreement that they will turn their attention to finalizing a privilege-log procedure and a deposition protocol once the ESI Protocol and 502(d) stipulation have been submitted to the Court and that these issues are tabled in the interim.

***Search Terms:*** Facebook provided proposed search terms to Plaintiffs on February 7—an agreed-upon deadline to exchange proposals. Facebook proposed 12 complex and lengthy Boolean strings to search for additional ESI responsive to Plaintiffs' RFPs beyond the large volume of materials received by the FTC and other regulators, which has already been produced. Facebook further proposed that it conduct targeted collections for Plaintiffs' more specific document requests.

Plaintiffs have not provided proposed searches for their requests. Instead, Plaintiffs objected to Facebook's proposal and argued that they could not propose searches for their RFPs without reviewing the search terms used to collect ESI for the FTC.[8] Now that Facebook has provided Plaintiffs with the search terms used to collect materials in the FTC action—in addition to all of the documents produced to the FTC—Facebook hopes that Plaintiffs will offer a good faith proposal and that the parties will be able to quickly reach agreement on searches.

***Custodians***: On February 7, Facebook also proposed custodians to collect additional materials responsive to Plaintiffs' RFPs. On April 7—following its review of its FTC productions—Facebook updated its custodian proposal to include **59** current and former Facebook employees.

---

[8]  Plaintiffs did provide a list of over 230 broad terms that Plaintiffs claim should be "included" in any search—including "academic research," "applications," "basic info," "compliance," "consent," "everyone," "likes," "news feed," "public," "tracking," "Steve Bannon," "valuation," "switcharoo," and "user content."

Plaintiffs did not provide a custodian proposal on February 7 on the basis that they did not have enough information to do so. This position surprised Facebook, given that it had already provided Plaintiffs all organizational information that it provided the FTC in response to its similar requests for organizational information. Facebook also offered on at least four occasions to ***create*** organizational information for Plaintiffs. Facebook offered specifically to (i) answer reasonably tailored organizational questions to facilitate custodian negotiations, (ii) *create* organizational reporting line information for a reasonable number of potential custodians, and/or (iii) to create historical organizational information for specific teams or individuals. Even though Plaintiffs did not take Facebook up on these offers for more than three months, Facebook **created and produced** to Plaintiffs reporting line information for each of its **59 proposed custodians.** These materials show each custodian's direct reports, as well as the reporting line from that person to Facebook's CEO.

On April 3, Plaintiffs sent Facebook a perplexing letter attaching a company "org chart" they attempted to create themselves and asking Facebook to meet and confer within a week regarding **149** current and formal employees and 17 organizational topics. Facebook is currently evaluating Plaintiffs' request so that the parties can engage in a meaningful discussion. Although Facebook is pleased that Plaintiffs are now engaging in the meet and confer process that the Northern District's Guidelines require, Facebook is also concerned that Plaintiffs took this round-about approach rather than taking Facebook up on any one of its offers to create organizational information and answer reasonably tailored questions to facilitate early and productive custodial discussions. In any case, now that Plaintiffs have every Facebook document produced to the FTC in the related investigations, all organizational information created for the FTC, and a large volume of additional organizational information that Facebook created for Plaintiffs, Facebook is hopeful

that Plaintiffs will take the time to learn those materials, which should guide the parties' custodial discussions.

***Early 30(b)(6) Deposition on ESI Issues***:  On February 21, 2020, Plaintiffs served a Rule 30(b)(6) deposition notice on Facebook, seeking a deposition on March 2 (just 10 days later) on 13 extraordinarily broad topics on ESI issues, Facebook's organizational structure, and much more.  Plaintiffs made no effort to meet and confer with Facebook's counsel about the scheduling of the deposition, in violation of Civil L.R. 30-1.

We recognize that the informal ESI meet-and-confer process contemplated by the Northern District is hard work, and—at the time Plaintiffs served the deposition notice—Facebook and its counsel had already invested in excess of a hundred hours working through Plaintiffs' inquiries concerning ESI.  Facebook thus timely objected to Plaintiffs' deposition notice for a number of reasons, including the fact that Plaintiffs were seeking to abandon unnecessarily the Northern District's ESI Guidelines, which "strongly encourage[]" parties to meet and confer about the types of discovery issues were the subject of the notice instead of resorting to burdensome Rule 30(b)(6) depositions, *see* Guideline 2.03.  Moreover, none of the deposition topics were "describe[d] with reasonable particularity" as required by Rule 30(b)(6).

Facebook heard nothing further from Plaintiffs about the proposed Rule 30(b)(6) deposition until Plaintiffs raised the issue on a meet and confer call on March 27.  The parties scheduled a further meet and confer about the deposition notice, which was held on April 2.  During that call, the parties discussed extensively Facebook's objections to the notice.  Facebook also expressed serious concerns about the feasibility of educating a Rule 30(b)(6) witness remotely.  Facebook made clear, however, that it would continue informally providing information about ESI issues and the Company's organizational structure in the

meantime, and that Facebook would endeavor to respond as quickly as possible to any reasonable questions from Plaintiffs on those topics.

Instead of taking Facebook up on its offer to continue informal discussions, the next day, Plaintiffs served an amended deposition notice that addressed some, but not all, of Facebook's objections.  Plaintiffs also demanded that Facebook provide a date for the deposition in the next 45 days.

While these discussions have been taking place, Facebook has produced hundreds of thousands of pages of documents, including all Facebook documents that Facebook previously produced to the FTC and additional materials produced to other regulators (which include, among other things, information about Facebook's organizational structure that the Company previously created for the FTC).  Additionally, Facebook has created and produced to Plaintiffs organizational information for the Company's 59 proposed custodians.  Taken together with the extensive information Facebook has provided informally about ESI and organizational issues, these materials give Plaintiffs tremendous insight into the categories of ESI Facebook maintains and where it is maintained, as well as Facebook's organizational structure—insight that usually is unavailable at this early stage of a case.  Consistent with the Court's ESI Guidelines, Plaintiffs should review these documents and ask follow-up questions, if necessary, before imposing on Facebook the considerable burden and expense associated with a Rule 30(b)(6) deposition focused on ESI and organizational issues.

## III.    Production of ESI

Facebook has made substantial efforts to move discovery forward while the parties continue to negotiate threshold ESI issues.  Even though the parties have not agreed to search terms and custodians for many of Plaintiffs' RFPs, **Facebook is producing hundreds of thousands of pages of materials** in the interim that do not require these agreements.

Judge Chhabria lifted the discovery stay in this action fewer than five months ago, at which point Plaintiffs served their first RFPs.  Since that time, Facebook has produced approximately **400,000 pages** of ESI.[9]  Facebook is proud of this progress.  For the Court's convenience, we recap progress to date on the timeline below:

**November 2019**:

· Judge Chhabria lifts discovery stay.

**November 25, 2019** (the day before Thanksgiving):

· Plaintiffs serve 26 RFPs, including a request for Facebook's FTC productions.

**December 5, 2019**

· Facebook serves interrogatories seeking information sufficient to identify the Named Plaintiffs' accounts.

**December 10, 2019**

· The parties serve initial disclosures.

**December 26, 2019** (the day after Christmas):

· Facebook timely serves responses and objections to Plaintiffs' RFPs.

· Under an informal agreement, Facebook produces (i) the FTC's 2018-2019 document demands and (ii) FTC correspondence defining the scope of those demands.

**January 7, 2020:**

· Facebook makes an initial production of approximately 3,200 pages responsive to Plaintiffs' RFPs, ten days after serving its responses and objections.

**January-February 2020:**

· The parties exchange numerous drafts of their ESI Protocol and appendices to that agreement.

---

[9]     Facebook has produced 405,341 pages to date; approximately 11,000 of those pages are documents that Facebook later reproduced in a different format at Plaintiffs' request.

- The parties exchange drafts of three joint discovery motions and file one.

- The parties exchange 75 emails and 22 formal letters regarding discovery issues.

- The parties meet and confer numerous times and over approximately 12 hours regarding (i) the parties' ESI Protocol; and (ii) the scope of Plaintiffs' RFPs.

- Facebook offers during at least two meet and confer conversations to ***create organizational information*** in response to reasonably tailored requests, given that Facebook does not maintain the organizational charts Plaintiffs requested.

**January 24, 2020**:

- Facebook notices the Named Plaintiffs' depositions to begin the first week in March.  Facebook later agrees to postpone these depositions in view of COVID-19.

**February 7, 2020**:

- Facebook provides proposed search terms.

- Facebook provides proposed custodians.

- Under an informal agreement, Facebook produces all organizational information provided to the FTC in response to its requests for organizational information.

- Under an informal agreement, Facebook produces additional correspondence regarding the FTC's 2018-2019 document demands.

- Facebook produces (i) the FTC's pre-2012 document demands, (ii) correspondence from the FTC defining the scope of those demands, and (iii) Facebook correspondence defining what it agreed to produce in response to the FTC's pre-2012 demands.

**February 15, 2020**:

- **Facebook answers Plaintiffs' <u>1400</u> paragraph complaint.**

**February 15, 2020 – February 27, 2020**:

- Facebook produces approximately **140,000 pages** of materials related to certain named Plaintiffs in response to Plaintiffs' demands for immediate production of these materials.

- Facebook halts these productions at Plaintiffs' request in order to provide the materials in Plaintiffs' preferred format.

**February 24, 2020**

- Facebook addresses numerous outstanding discovery issues and again advises Plaintiffs that it is willing to work with Plaintiffs **to create organizational information** in response to reasonably tailored, good-faith requests.

**February 28, 2020**:

- Facebook timely serves responses and objections to a premature contention interrogatory.

**March 2, 2020**

- Facebook timely serves responses and objects to a premature 30(b)(6) deposition notice.

**March 4, 2020**

- Under an informal agreement, Facebook drafts and provides detailed written materials about its systems to facilitate productive discussions concerning documents responsive to Plaintiffs' requests.

**March 5, 2020**

- The parties appear before Judge Chhabria for a Case Management Conference.

**March 6, 2020 – March 31, 2020**

- **Facebook reviews all documents produced to the FTC during its related investigations and additional potentially-responsive materials produced to other regulators**.

- The parties exchange multiple drafts of their ESI Protocol and meet and confer on three occasions, nearing a final agreement.

- The parties file a joint discovery dispute regarding the conditions on Plaintiffs' ability to view the search terms and custodians used to collect materials in the FTC action.

  The parties negotiate and agree to a process for filing discovery motions.

**March 6, 2020 – April 16, 2020**

- The parties exchange approximately **135 emails** and **35 formal letters** addressing more than **90 ESI and other discovery issues.**

**March 21, 2020**

- Facebook produces 200 pages of PwC audits.

**March 26, 2020**

- Facebook provides Plaintiffs additional information regarding the organizational materials it is able to create and again encourages Plaintiffs to work with Facebook to identify individuals for whom Facebook could create organizational, reporting-line information for the purpose of negotiating custodians.

**March 31, 2020**

- Facebook produces **230,000** pages of materials, consisting of its FTC productions and additional materials produced to other regulators.

**April 2020**

- Facebook revises its custodian proposal to include **59** custodian and **creates organizational, reporting line information for each**.

- Facebook provides Plaintiffs the search terms and custodians used to collect ESI in the FTC action.

- Facebook **serves its first set of RFPs** on the Named Plaintiffs, in lieu of moving forward with depositions previously noticed to begin in March, in view of COVID-19

·   Facebook produces 26**,000 pages of ESI** regarding the named Plaintiffs, including reproducing

approximately **11,000** pages of materials to accommodate Plaintiffs' formatting preferences;

## IV.    Proposed Topics for Status Conference

As stated previously, at the April 17 ESI Conference, Facebook would appreciate discussing with the Court and receiving the Court's guidance on ways to temporarily limit the volume of inbound demands so that the parties are able to effectively direct their resources and attention to resolving gating ESI issues.

Dated: April 16, 2020                               Respectfully submitted,

KELLER ROHRBACK L.L.P.                 BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*_____       By:    */s/ Lesley E. Weaver*_____
        Derek W. Loeser                                   Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)         Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)      Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*) Joshua D. Samra (SBN 313050)
Cari Campen Laufenberg (admitted *pro hac vice*)  Matthew P. Montgomery (SBN 180196)
David J. Ko (admitted *pro hac vice*)             Angelica M. Ornelas (SBN 285929)
Benjamin Gould (SBN 250630)                       555 12th Street, Suite 1600
Adele Daniel (admitted *pro hac vice*)            Oakland, CA 94607
1201 Third Avenue, Suite 3200                     Tel.: (415) 445-4003
Seattle, WA 98101                                 Fax: (415) 445-4020
Tel.: (206) 623-1900                              lweaver@bfalaw.com
Fax: (206) 623-3384                               adavis@bfalaw.com
dloeser@kellerrohrback.com                        jsamra@bfalaw.com
lsarko@kellerrohrback.com                         mmontgomery@bfalaw.com
gcappio@kellerrohrback.com                        aornelas@bfalaw.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497

cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN & CRUTCHER, LLP

By:  */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Russell H. Falconer (*pro hac vice pending*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201
Telephone:  214.698.3170

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of April, 2020, at Oakland, California.


/s/ *Lesley E. Weaver*
Lesley E. Weaver

**CERTIFICATE OF SERVICE**

I, Lesley E. Weaver, hereby certify that on April 16, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Lesley E. Weaver*
Lesley E. Weaver