# EXHIBIT A

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Derek Loeser (admitted *pro hac vice*)
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

Additional counsel listed on signature page

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br><br>Case No. 18-md-02843-VC<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**<br><br>The Honorable Jacqueline Scott Corley |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**A.     PURPOSE**

This Order will govern discovery of electronically stored information ("**ESI**") and hard copy documents (collectively, "**Document**" or "**Documents**") in the above-captioned matter and all actions that are later consolidated with this matter (collectively, "**Litigation**"), as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored

1

Information ("**ESI Guidelines**"), and any other applicable orders and rules.

Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation, or whether a party has made a reasonable and diligent search for Documents. Nothing in this Order establishes any agreement to any search protocol, including which sources shall be searched. Such procedures or criteria are to be separately agreed upon.

This Order is subject to amendment or supplementation based upon the results of anticipated future meet and confers and by later agreement of the parties, if necessary, in light of further developments, including, the parties' engagement of document hosting vendors and associated technical requirements. References are made to the Federal Rules of Civil Procedure for ease of reference.

**B.      COOPERATION AND PROPORTIONALITY**

The parties are aware of the importance this Court places on cooperation in discovery, consistent with this Court's Guidelines for the Discovery of ESI.  The parties acknowledge that cooperation in  reasonably limiting ESI discovery requests and in reasonably responding to ESI discovery requests tends to reduce litigation costs and delay and commit to cooperation in good faith on issues relating to the preservation, collection, search, review, and production of ESI.

The parties acknowledge that the proportionality standard described in Guideline 1.03 and set forth in Fed. R. Civ. P. 26(b)(1) applies to the discovery of ESI in this action.  To further the application of the proportionality standard, the parties agree that the factors set forth in Guideline 1.03 shall be considered, and that all discovery requests for production of ESI and related responses should and will be reasonably targeted, clear, and as specific as practicable.

**C.      E-DISCOVERY LIAISONS**

The parties will rely on one or more e-discovery liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. Each e-discovery liaison will be, or have access to those who are:

1.      knowledgeable about the respective party's e-discovery efforts;

      2.      familiar with the respective party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

      3.      knowledgeable about the technical aspects of e-discovery, including the nature, location, storage, accessibility, format, collection, search methodologies, and production of ESI in this matter.

Plaintiffs have previously identified an ESI liaison. Defendant will identify an ESI liaison or liaisons within ten days of the entry of the order adopting of this Stipulation. In the interim, Defendant's counsel will be prepared to discuss any ESI issues within a reasonable time after notice by Plaintiffs' counsel. Each party will notify the other of any changes of its designated e-discovery liaison or liaisons.

**D.    PRESERVATION**

The parties and their counsel acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control consistent with the Federal Rules. In accordance with ESI Guideline 2.01(d), the parties will continue to meet and confer over their respective ESI preservation efforts and obligations.  If the parties are unable to resolve a preservation issue and one party wishes to raise the issue with the Court, that party shall do so promptly, consistent with the Court's order on Discovery Dispute Resolution Procedures (Dkt. No. 393).

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable, proportionate, and within the scope of production under FRCP 26(b)(1) and 26(b)(2)(B). To reduce the costs and burdens of preservation and to ensure discoverable ESI is preserved, the parties agree that:

    (a)    ESI created, modified, or received since January 1, 2007, will be preserved;

    (b)    Each party is responsible for taking reasonable and proportionate steps to preserve non-duplicative discoverable information currently in their possession, custody or control. However, parties shall not be required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data not subject to a litigation hold.

(c) Subject to and without waiving any protection described above, the parties agree that:

(1) The parties will meet and confer regarding the types of ESI they believe should be preserved, the custodians or general job titles or descriptions of custodians for whom they believe ESI should be preserved, and the custodial and non-custodial sources to be preserved. Nothing in this Order waives or modifies the attorney–client-privilege that attaches to custodial interviews.

(2) The parties shall agree to add or remove custodians and non-custodial sources to be preserved as reasonably necessary. Such requests must be made in good faith.

(3) The parties will meet and confer as fact discovery proceeds on whether an extension of time for fact discovery may be necessary.

(d) The parties agree that ESI from the following data sources is not reasonably accessible because of undue burden or cost and therefore that under Fed. 26(b)(2)(B) Facebook need not provide discovery of ESI from these sources (ESI from these sources will be preserved in accordance with Facebook's standard business practices but will not be searched, reviewed, or produced unless ordered by the Court):

(1) backup systems and/or tapes used for disaster recovery; and

(2) systems that are no longer in use and cannot be accessed.

(e) The parties agree, based on mutual representation of the parties' counsel, that the following sources of data are not reasonably accessible and need not be preserved, collected, processed, reviewed and/or produced:

(1) Deleted, slack, fragmented, or unallocated data generated on individual workstations, and only accessible by forensics;

(2) Random access memory (RAM), temporary files, or other ephemeral data generated on individual workstations and that are difficult to preserve without disabling the operating system;

(3) On-line data from the individual work stations of the employees of the producing party using internet browsers, such as temporary internet files, history, cache, cookies, and the like;

4

      (4)    Data in the following metadata fields, which are frequently updated automatically without end user intervention: last opened dates and times, last printed dates and times, last modified dates and times, and last modified by; and

      (5)    Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party and belonging to a custodian, to the extent such information is duplicative of information that resides in a reasonably accessible data source.

(f)    The parties agree that the burden and expense of preservation of the following sources of data for all agreed custodians is not proportionate to the needs of the case and therefore agree (i) to conduct custodial interviews and to determine in those interviews whether any of the following sources is likely to contain relevant data from that custodian; (ii) that if a custodian identifies any of the following sources as likely containing relevant data, that source will be preserved and collected; and (iii) that if a custodian does not identify any of the following sources as likely containing relevant data, these sources will not be preserved or collected:

      (1)    Voicemails and other voice messages;

      (2)    Sound recordings, including without limitation .mp3 and .wav files;

      (3)    Information contained on a mobile device that is not duplicative of information that resides in an another, more easily accessible data source;

      (4)    Instant messages and chats that are not chronicled to an email archive system; and

      (5)    Mobile device activity logs for the Producing Party's devices or the Producing Party's employees' devices.

E.    **SEARCH AND REVIEW**

The parties agree to meet and confer concerning search methodologies, including without

limitation, the use of keyword search terms and/or the use of technology assisted review ("**TAR**").[1]

The parties recognize that even though a document contains one or more of the search terms identified in accordance with the procedures listed below, such document may not be responsive to any document request. In such cases, the Producing Party is not required to produce such documents. If a document contains one or more of the search terms in accordance with the procedures listed below, and part but not all of the document is responsive to any document request, the Producing Party should produce the entire document without redacting the nonresponsive portions of the document, unless the nonresponsive portions of the document contain information (1) that would be redacted from a court filing under Fed. R. Civ. P. 5.2(a) or (2) the disclosure of which would threaten serious competitive harm to the Producing Party.  If either of those conditions is met, the parties will meet and confer to discuss the redaction of such information prior to the production of any redacted documents.  If the parties reach agreement regarding the redaction of such information and any portion of a document is subsequently produced in redacted form, this will be noted in the Redaction field, included in Table 1 of Appendix A, and, within 20 days of the production of such documents, the document(s) will be recorded on a cumulative log identifying the reason for the redaction (i.e. condition (1) or condition (2)) and the date upon which the parties reached agreement regarding the redaction.  If the parties are unable to reach agreement regarding redaction, the document should either be promptly produced without redaction, or the Producing Party shall promptly raise the issue with the Court, consistent with the Court's order on Discovery Dispute Resolution Procedures (Dkt. No. 393).

In addition to identifying documents pursuant to an agreed upon search protocol, the parties recognize that they are obligated to produce relevant, responsive, non-privileged documents of which they are aware, regardless of whether such documents contain any of the agreed upon or additional search terms.

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is

---

[1] The producing party will disclose to the receiving party if they intend to use Technology Assisted Review ("TAR") (including predictive coding or any other form of machine learning) to filter out non-responsive documents. The parties will meet and confer at that time to negotiate a suitable TAR protocol.

subject to production in discovery and filter out ESI that is not subject to discovery.

The parties understand the cost and complexity of reviewing and producing ESI and seek to engage in a cooperative, iterative process to limit costs but ensure relevant, responsive documents are likely discovered in any ESI search. As such, the parties will cooperate regarding the disclosure and formulation of appropriate search terms for use in the responsiveness review and production of ESI. The parties are not required to exchange privileged search terms.

The parties will each disclose a list of the most likely custodians of relevant documents, including the general job titles or descriptions of each custodian and will meet and confer regarding custodians, including how the relevant ESI is maintained and where, consistent with Discovery Order No. 1 (Dkt. No.404) and any subsequent orders entered by the Court.

The parties will meet-and-confer in good faith regarding search terms and custodians. As part of the meet-and-confer process to select search terms and custodians, the Producing Party will provide a hit report for proposed search terms if requested by the Requesting Party. If the Requesting Party objects to the sufficiency of the Producing Party's proposed search terms, the Requesting Party may propose modifications to the Producing Party's terms, or a list of additional terms, subject to the paragraph regarding Additional Terms for Good Cause below.  Any disputes over additional custodians or terms that cannot be resolved between the parties during meet and confer may be presented to the Court.

**Disputed Search Terms:** If the Producing Party contends that terms proposed by the Requesting Party would recall an excessive number of documents ("**Disputed Search Terms**"), the Producing Party will provide a Disputed Search Term hit list or hit report after global de-duplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each Disputed Term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). With respect to any search term for which the Producing Party believes there exists a modification that will reduce the number of irrelevant documents returned by the search term, the Producing Party will meet and confer with the Requesting Party to discuss in good faith any such modification. For any terms that a Producing Party believes are burdensome, overly broad, and/or

7

objectionable and for which there does not appear to be any modification that would resolve such issues, the Producing Party will meet and confer with the Requesting Party to discuss in good faith its objections to such search terms. As part of that process, the Producing Party will, upon request, provide the Requesting Party with the quantitative information discussed above. In the event that a dispute remains after quantitative information is evaluated, <<<*The parties continue to meet and confer regarding this provision*>>>.

**Additional Terms for Good Cause**: Once a search term list is finalized (either though agreement of the parties or Order of the Court) and all iterative searches for a custodian are complete, the Requesting Party may propose additional search terms for a Producing Party to consider, but the Producing Party will have no obligation to re-search the custodian's electronic data using such additional search terms without agreement or a court order. The Requesting Party must show good cause for any additional proposed search terms, such as, for example, that the proposed term, or the significance of the proposed term, was unknown to them as of the time the original list was formulated; provided, however, that this provision does not relieve a Producing Party of any obligation that may arise, pursuant to the Federal Rules of Civil Procedure or applicable case law, to conduct additional searches in the course of the litigation. If a Producing Party cannot meet any applicable deadlines for the production of documents as a result of this provision, the parties will negotiate in good faith a reasonable timeline for production or seek an order from the Court.

**Known Responsive ESI:** ESI that is known to a party to be responsive to a discovery request or subject to disclosure under Fed. R. Civ. P. 26(a)(1)A) may not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Order.

Discrete folders or collections of Documents that are identified by a custodian as likely to be responsive will be collected and preserved pursuant to standard business practices and processes that are reasonably designed to ensure all potentially responsive documents are identified and collected.

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

Nothing in this Order shall be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting party's request or is privileged.

F.     **PRODUCTION FORMATS**

Appendix A sets forth the technical specifications that the parties propose to govern the form of production of documents in this litigation, absent agreement by the parties or order by the Court.

The parties have agreed to specifications identifying the file formats under which Documents will be produced, as described in Appendix A. To the extent a party believes that a Document that has been produced should be produced in a different or alternative format, or a party raises any questions or concerns regarding a produced Document, the parties will meet and confer on the issue.

ESI will be deduplicated globally across all custodians using industry standard deduplication methods and software as set forth in Appendix A.

Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. System and program files defined on the NIST list need not be processed, reviewed, or produced. The parties may suppress container files (.ZIP, .PST, .RAR) that do not reflect substantive information prior to production, but must produce the remainder of those responsive, non-privileged document families found within the container file, including any emails to which that container file is attached. Similarly, the parties may suppress any non-substantive images extracted from email documents (e.g., logs, icons) prior to production.

E-mail thread analysis may be used to <<<*parties still working to reach agreement on this provision*>>>.

If a receiving party raises an issue regarding the usability or format of a produced Document, the parties the parties will meet and confer regarding whether an alternative form of production is necessary or appropriate and seek Court intervention only if necessary.

The parties recognize that certain information to be produced in discovery may reside in proprietary systems and formats. The producing party will take reasonable steps to produce documents from such sources in a reasonably usable format with appropriate metadata in line with how the information is kept in the usual course of business. If after reviewing the produced Documents a receiving party raises a specific issue or concern about a produced Document or data, the parties will meet and confer regarding whether an alternative form of production or additional metadata is necessary or appropriate.

### G.   DOCUMENTS PROTECTED FROM DISCOVERY

The provisions and protections of a Fed. R. Evid. 502 stipulation are being separately negotiated.  The parties will submit a proposed 502(d) stipulation in accordance with the Court's order (Dkt. No. 404).

### H.   PRIVILEGE LOGS

Where a document is withheld from production entirely or in part by redaction on the basis of the attorney-client privilege or work product doctrine, the Producing Party will produce a privilege log in Microsoft Excel format.  The parties will meet and confer to determine a separate protocol for the production of privilege logs.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

### I.   OBJECTIONS PRESERVED

Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents. Nothing in this Order waives the right of any party to petition the Court for an order modifying its terms upon sufficient demonstration that compliance with such terms is unreasonably burdensome or infeasible or that the production of particular Documents in a different format or with different metadata fields is reasonably necessary, provided, however that counsel for such party must first meet and confer with the counsel for the opposing parties and the parties shall use reasonable best efforts to negotiate an

exception from or modification to this Order prior to seeking relief from the Court.

J.   **RETENTION OF ORIGINAL DOCUMENTS**

Each party agrees to retain native electronic source documents for all ESI produced in this litigation unless another manner is mutually agreed upon by the parties. Each party agrees to use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these electronic materials at the time of collection.

K.   **MODIFICATIONS**

This Stipulated Order may be modified by agreement of the parties memorialized in a Stipulated Order of the parties or by the Court.

L.   **TIMING AND PHASING OF PRODUCTIONS**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI by producing documents on a rolling basis. Following the initial production, the parties will continue to meet and confer to prioritize the order of subsequent productions. Production in the Litigation is anticipated to be conducted with the parties making reasonable efforts to expedite the process.

M.   **EFFECTIVE DATE**

The provisions of this ESI Protocol will take effect upon the entry of an order of the Court approving and adopting this ESI Protocol <<<*and resolving any disputes between the parties over its terms*>>>.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: April 24, 2020                                              Respectfully submitted,

KELLER ROHRBACK L.L.P.                                BLEICHMAR FONTI & AULD LLP

By:   */s/*                                                              By:   */s/*
      Derek W. Loeser                                                      Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)            Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)         Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*)    Joshua D. Samra (SBN 313050)

11

Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice)*
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com

GIBSON, DUNN, & CRUTCHER LLP
By: */s/*
Joshua S. Lipshutz

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley (SBN 154148)
Brian M. Lutz (SBN 255976)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

Telephone: 415.393.8200
Facsimile: 415.393.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*

**IT IS SO ORDERED.**

Dated: _____, 2020

                                                The Honorable Jacqueline Scott Corley
United States Magistrate Judge