PAGES 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE**

| | | |
|---|---|---|
| IN RE: FACEBOOK CONSUMER | ) | NO. 18-MD-02843 VC (JSC) |
| PRIVACY USER PROFILE | ) | |
| LITIGATION, | ) | FRIDAY, APRIL 17, 2020 |
| _____ | ) | |
| | | SAN FRANCISCO, CALIFORNIA |
| | | DISCOVERY STATUS CONFERENCE |

**TRANSCRIPT OF ZOOM PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:58 A.M. - 10:40 A.M.**

**APPEARANCES:**

**FOR PLAINTIFFS:**               KELLER ROHRBACK LLP
                        1201 THIRD AVENUE, SUITE 3200
                        SEATTLE, WASHINGTON 98101
                   BY:  DEREK W. LOESER, ESQUIRE
                        CARI LAUFENBERG, ESQUIRE
                        DAVID KO, ESQUIRE


                        BLEICHMAR, FONTI & AULD LLP
                        555 12TH STREET, SUITE 1600
                        OAKLAND, CALIFORNIA 94607
                   BY:  LESLEY E. WEAVER, ESQUIRE
                        MATTHEW MONTGOMERY, ESQUIRE
                        ANNE K. DAVIS, ESQUIRE


                  (APPEARANCES CONTINUED)


**TRANSCRIBED BY:**          DIANE E. SKILLMAN, TRANSCRIBER
                        925-899-2812

2

```
 1

 2    FOR DEFENDANT:                 GIBSON, DUNN & CRUTCHER LLP
                                     200 PARK AVENUE
 3                                   NEW YORK, NEW YORK  10166
                               BY:  ORIN SNYDER, ESQUIRE
 4

 5                                   GIBSON, DUNN & CRUTCHER LLP
                                     1881 PAGE MILL ROAD
 6                                   PALO ALTO, CALIFORNIA 94304
                               BY:  MARTIE P. KUTSCHER, ESQUIRE
 7

 8                                   GIBSON, DUNN & CRUTCHER LLP
                                     555 MISSION STREET, SUITE 3000
 9                                   SAN FRANCISCO, CALIFORNIA 94105
                               BY:  JOSHUA LIPSHUTZ, ESQUIRE
10

11                                   GIBSON, DUNN & CRUTCHER LLP
                                     333 SOUTH GRAND AVENUE
12                                   LOS ANGELES, CALIFORNIA 90071
                               BY:  DEBORAH L. STEIN, ESQUIRE
13

14                                   GIBSON, DUNN & CRUTCHER LLP
                                     210 MCKINNEY AVENUE, SUITE 1100
15                                   DALLAS, TEXAS 75201
                               BY:  RUSSELL FALCONER, ESQUIRE
16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | <u>FRIDAY, APRIL 17, 2020</u>                    <u>9:58 A.M.</u> |
| 2 | Z O O M   P R O C E E D I N G S |
| 3 | O0O |
| 4 | **THE CLERK:**  OKAY.  CALLING CIVIL ACTION 18-MD-2843 IN |
| 5 | RE FACEBOOK CONSUMER PRIVACY USER PROFILE LITIGATION. |
| 6 | COUNSEL, STARTING WITH PLAINTIFFS, PLEASE MAKE YOUR |
| 7 | APPEARANCE FOR THE RECORD. |
| 8 | **MR. LOESER:**  GOOD MORNING, YOUR HONOR.  THIS IS DEREK |
| 9 | LOESER FROM KELLER, ROHRBACK FOR PLAINTIFFS. |
| 10 | **THE COURT:**  GOOD MORNING. |
| 11 | **MS. LAUFENBERG:**  GOOD MORNING, YOUR HONOR -- |
| 12 | (SIMULTANEOUS COLLOQUY) |
| 13 | **MS. LAUFENBERG:**  CARI LAUFENBERG OF KELLER, ROHRBACK |
| 14 | ON BEHALF OF PLAINTIFFS. |
| 15 | **THE COURT:**  GOOD MORNING. |
| 16 | **MR. KO:**  GOOD MORNING, YOUR HONOR, AND EVERYONE ELSE. |
| 17 | DAVID KO, KELLER, ROHRBACK, ALSO ON BEHALF OF PLAINTIFFS. |
| 18 | **THE COURT:**  GOOD MORNING. |
| 19 | **MS. WEAVER:**  GOOD MORNING.  THIS IS LESLEY WEAVER OF |
| 20 | BLEICHMAR, FONTI ON BEHALF OF PLAINTIFFS, AND TWO FOLKS FROM |
| 21 | MY FIRM ARE ON AS WELL. |
| 22 | **THE COURT:**  GOOD MORNING. |
| 23 | **MR. MONTGOMERY:**  MATTHEW MONTGOMERY FROM BLEICHMAR, |
| 24 | FONTI & AULD FOR PLAINTIFFS. |
| 25 | **MS. DAVIS:**  AND ANN DAVIS FROM BLEICHMAR, FONTI & |

1    AULD FOR PLAINTIFFS.

2              **THE COURT:**  ALL RIGHT.

3         AND FOR DEFENDANTS?

4              **MR. SNYDER:**  GOOD MORNING, JUDGE.  NICE TO MEET YOU.

5    THIS IS ORIN SNYDER FROM GIBSON, DUNN FOR FACEBOOK.  AND WITH

6    ME ON THE PHONE ARE MY COLLEAGUES DEBORAH STEIN, JOSH

7    LIPSCHUTZ, RUSS FALCONER, AND MARTIE KUTSCHER.

8              **THE COURT:**  ALL RIGHT.

9              **UNIDENTIFIED SPEAKER:**  GOOD MORNING.

10             **THE COURT:**  AND WE DO HAVE, IT LOOKS LIKE,

11   APPROXIMATELY 20 ATTENDEES, AND IT MAY GROW, WHO ARE WATCHING

12   THIS PUBLIC PROCEEDING.

13        SO THIS IS OUR DISCOVERY STATUS CONFERENCE, AND JUDGE

14   CHHABRIA HAS NOW REFERRED THE CASE TO ME TO MANAGE DISCOVERY.

15   HE GENERALLY LIKES TO KEEP DISCOVERY, BUT HE DECIDED IN THIS

16   CASE HE COULD USE SOME HELP.

17        I FIRST WANT TO BEGIN BY, OF COURSE, SAYING THAT I HOPE

18   ALL OF YOU ARE WELL AND SAFE.  AND I KNOW THAT EVERYBODY HAS A

19   LOT TO DEAL WITH RIGHT NOW, THAT WE'RE ALL OFF, IN A BIT TIMES

20   DISTRACTED.  AND I WILL CERTAINLY KEEP THAT IN MIND, AND WE

21   SHOULD ALL KEEP THAT IN MIND AS WE WORK TOGETHER OVER THE

22   COMING MONTHS TO GET THE DISCOVERY DONE IN THAT CASE.

23        THE NEXT THING, I WANT TO THANK YOU FOR YOUR STATUS

24   CONFERENCE STATEMENTS.  THEY WERE A BIT LIKE TWO SHIPS PASSING

25   IN THE NIGHT.

```
1              (LAUGHTER)

2         THE COURT:  SO... BUT HERE'S THE GOOD NEWS.  WE ARE

3    GOING TO THROW THEM OUT THE DOOR IN TERMS OF WHAT SOMEONE DID

4    OR DIDN'T DO, WHATEVER.  NONE OF IT MATTERS.  THERE'S NO POINT

5    IN ME TRYING TO FIGURE ANY OF THAT OUT.

6         WHAT WE'RE GOING TO DO GOING FORWARD IS, EVERY TWO WEEKS

7    WE'RE GOING TO HAVE A DISCOVERY STATUS CONFERENCE.  OUR NEXT

8    ONE WILL BE MAY 1ST AT 9:30 A.M. ABSENT SOME BIG CONFLICT.  NO

9    ONE IS TRAVELING.  I DON'T KNOW WHAT THAT WOULD BE.

10        WE'RE GOING TO DO THEM EVERY TWO WEEKS.  WE ARE GOING TO

11   DO THEM JUST LIKE THIS UNTIL WE CAN DO THEM IN PERSON.  I

12   DON'T KNOW WHEN THAT WILL BE, BUT WE WILL DO THEM THIS WAY

13   PROBABLY EVERY TWO WEEKS SO THAT I CAN HELP YOU MOVE THINGS

14   ALONG IN AN EFFICIENT WAY.  SO I DON'T WANT TO GO INTO THE

15   PAST.  LET'S PUT THAT ALL ASIDE, AND WE ARE STARTING FRESH

16   TODAY.

17        OKAY.  SO, JUST ONE SECOND.  MY LAW CLERK IS COMMUNICATING

18   WITH ME BY TEXT.  SO I NEED TO....

19              (PAUSE IN THE PROCEEDINGS.)

20        OKAY.  GREAT.  OKAY.

21        SO, MY FIRST QUESTION NOW, AND JUST TRYING TO FIGURE OUT

22   WHERE WE ARE IN TERMS OF WHAT'S BEEN PRODUCED, THE DEFENDANTS

23   REPRESENTED THAT THEY'VE PRODUCED ALL THE DOCUMENTS THAT THEY

24   HAD PREVIOUSLY PRODUCED TO THE FTC EXCEPT FOR, I THINK, MAYBE

25   ABOUT 700 DOCUMENTS WHICH ARE IN A WAREHOUSE SOMEWHERE.
```

```
1        DO THE PLAINTIFFS BELIEVE THEY NOW HAVE THOSE DOCUMENTS?

2            MR. LOESER:  YOUR HONOR, DEREK LOESER FOR THE

3    PLAINTIFFS.

4        IT IS OUR UNDERSTANDING THAT FACEBOOK HAS PRODUCED THE

5    MATERIALS THAT IT PRODUCED TO THE FTC.  WE -- THERE WAS A LOT

6    OF DISCUSSION ABOUT WHAT MAY OR MAY NOT BE REMOVED FOR

7    RELEVANCY CONSIDERATIONS.  OUR UNDERSTANDING IS NO DOCUMENTS

8    AT ALL HAVE BEEN REMOVED AND WE HAVE THE ENTIRETY OF THE

9    PRODUCTION.

10           THE COURT:  OKAY.

11           MR. LOESER:  CERTAINLY IF THAT'S NOT TRUE, IF

12   FACEBOOK COULD CLARIFY, THAT WOULD BE APPRECIATED.

13           THE COURT:  MR. SNYDER, CAN YOU CONFIRM THAT THAT IS

14   THE CASE, OR WHOEVER IS SPEAKING FOR FACEBOOK?

15           MR. SNYDER:  YES, YOUR HONOR.  WE... AS WE INDICATED,

16   WE PRODUCED OUR -- THE FTC PRODUCTION.  AND THAT IS 400,000

17   PAGES OR MORE THAT WE PRODUCED IN TOTAL TO DATE.

18       AND IN ADDITION, I BELIEVE, MARTIE, WE'VE ALSO PRODUCED

19   SOME DOCUMENTS THAT MAY HAVE BEEN PRODUCED TO OTHER

20   REGULATORS?

21       MAYBE YOU CAN CONFIRM THAT.

22           MS. KUTSCHER:  YES.

23       ALONG WITH THE FTC MATERIALS, WE ALSO PRODUCED TO THE

24   PLAINTIFFS TENS OF THOUSANDS OF ADDITIONAL PAGES THAT HAD GONE

25   TO OTHER REGULATORS LOOKING INTO SIMILAR ISSUES.
```

```
1              THE COURT:  OKAY.  SO THAT WAS MS. KUTSCHER WHO WAS

2       SPEAKING.

3          AND TO CONFIRM WHAT MR. LOESER SAID, NOTHING WAS WITHHELD

4       ON RELEVANCE GROUNDS; IS THAT CORRECT?

5              MS. KUTSCHER:  WE DID NOT WITHHOLD MATERIALS ON

6       RELEVANCE GROUNDS, NO.

7              MR. SNYDER:  AND, YOUR HONOR, JUST TO BE OF HELP TO

8       THE COURT, WE ALLUDED TO THIS IN OUR STATEMENTS, AND I REALLY

9       WELCOME THE NOT REHASHING THE PAST AND MOVING FORWARD

10      SENTIMENT, BECAUSE IN THIS CASE, AND I KNOW A LOT OF

11      DEFENDANTS SAY THIS, AND IF I WAS IN COURT I WOULD LOOK YOU IN

12      YOUR EYES AND SAY THIS, I WILL DO IT OVER ZOOM, WHICH IS THAT

13      WE, FACEBOOK, RECEIVED A VERY FAVORABLE MOTION TO DISMISS

14      DECISION FROM JUDGE CHHABRIA WHO IDENTIFIED FOUR SORT OF LIVE

15      ISSUES IN THE CASE.

16         AND WE, FACEBOOK, HAVE BEEN TRYING TO EXPEDITE DISCOVERY

17      BECAUSE WE ARE EAGER TO GET TO THE SUMMARY JUDGMENT AND CLASS

18      CERTIFICATION PHASE.  SO WE ARE NOT -- HAVE ANY INTEREST, LIKE

19      SOME DEFENDANTS MIGHT IN OTHER CASES, DRAGGING OUR FEET AND WE

20      REALLY WELCOME, YOU KNOW, EVERY TWO WEEKS SITTING DOWN AND

21      MOVING THIS FORWARD.

22         THE REASON WE PRODUCED ALL THOSE FTC DOCUMENTS IS BECAUSE

23      PLAINTIFFS' COUNSEL AT THE OUTSET SAID WHY DON'T WE JUST

24      PRODUCE ALL THE FTC DOCUMENTS; WON'T THAT BE MOST OF WHAT IS

25      RELEVANT IN THE CASE.
```

1      WE ACTUALLY OBJECTED TO THAT, AND WE SAID, WHY DON'T WE

2   JUST GO THROUGH THE OLD FASHION RFP PROCESS.  JUDGE CHHABRIA

3   DISAGREED WITH US, AGREED WITH THE PLAINTIFFS, AND ORDERED

4   THIS APPROACH.

5      AND THE REASON WE WENT WITH THIS APPROACH WAS BECAUSE, AS

6   JUDGE CHHABRIA SAID, THIS WOULD AVOID HAVING TO RE-INVENT THE

7   WHEEL AND WOULD CREATE AN EFFICIENCY IN THE DISCOVERY PROCESS,

8   AND MR. LOESER AGREED SAYING THAT WE CAN THEN --

9          **THE COURT:**  MR. SNYDER, I'M JUST GOING TO CUT YOU

10   OFF.  I DON'T NEED ANY EDITORIALIZING RIGHT NOW.  THEN

11   MR. LOESER IS GOING TO SAY, WELL, WE RECEIVED A FAVORABLE

12   RULING FROM JUDGE CHHABRIA --

13          **MR. SNYDER:**  OKAY.  I APOLOGIZE.

14          **THE COURT:**  I REALLY... I REALLY DON'T WANT TO BE

15   DOING THAT.  I DON'T WANT TO BE USING THESE AS PRESS

16   CONFERENCES.  YOU CAN DO THAT SEPARATE, APART FROM MY

17   HEARINGS.  OKAY?  I JUST WANT TO CONFIRM WHAT'S BEEN PRODUCED

18   OR NOT PRODUCED.

19      SO, OKAY.  YOU'VE PRODUCED ALL THAT.

20      MY NEXT QUESTION TO THE PLAINTIFFS IS, WHERE ARE YOU IN

21   THAT DOCUMENT REVIEW IN TERMS OF -- WELL, NO, NO.

22      MY NEXT QUESTION IS THIS:  AS I UNDERSTAND IT THEN, WHEN

23   WE ARE TALKING ABOUT FURTHER DOCUMENT PRODUCTION, IT'S FOR

24   DOCUMENTS THAT WERE NOT PRODUCED TO THESE AGENCIES SO YOU

25   DON'T HAVE THEM BECAUSE YOU WANT BROADER DISCOVERY.  AND,

```
 1    SECOND, IT'S DOCUMENTS THAT MAY HAVE BEEN CREATED -- BY

 2    DOCUMENTS -- WORDS IS WHAT WE ARE TALKING ABOUT, SINCE THEN;

 3    IS THAT RIGHT?

 4            MR. LOESER:  YOUR HONOR, A FEW THINGS.  IF YOU DON'T

 5    MIND, IF WE CAN JUST GET A LITTLE MORE CLARIFICATION FROM

 6    FACEBOOK ON WHAT HAS BEEN PRODUCED.

 7        OUR UNDERSTANDING OF WHAT'S BEEN PRODUCED ARE THE

 8    MATERIALS, THE FULL SET OF MATERIALS THAT WERE PRODUCED TO THE

 9    FTC.

10        IT IS NOT OUR UNDERSTANDING THAT FACEBOOK HAS PRODUCED THE

11    FULL SET OF MATERIALS IT'S PRODUCED TO THE MULTIPLE OTHER

12    REGULATORS THAT HAVE INVESTIGATED IT OVER THE PAST SEVERAL

13    YEARS.  AND SO IT MIGHT BE -- I THINK IT WOULD BE USEFUL TO

14    HEAR FROM FACEBOOK WITH REGARD TO THOSE OTHER MATERIALS

15    BECAUSE THAT IS A SUBJECT OF DISPUTE THAT'S ONGOING.

16        WHAT'S THE STATUS AND WHAT HAS BEEN PRODUCED AND WHAT HAS

17    NOT BEEN PRODUCED.  AND IF WE CAN JUST HAVE THAT CLARIFIED,

18    THEN I THINK WE CAN MOVE FORWARD WITHOUT HAVING CONFUSION AS

19    TO WHAT WE HAVE AND WHAT WE DON'T HAVE.

20            THE COURT:  MAYBE, MS. KUTSCHER, YOU CAN TELL US WHAT

21    AGENCIES YOU'VE PRODUCED, AND IF IT WAS ALL OF THEM OR JUST

22    SUBSETS OF THEM.

23            MS. KUTSCHER:  SURE.

24        THE QUESTION IS A LITTLE BIT DIFFICULT BECAUSE, AS I'M

25    SURE YOU UNDERSTAND, A LOT OF THE SAME MATERIALS WERE PRODUCED
```

1   TO VARIOUS AGENCIES.  SO IT'S NOT LIKE WE SIT THERE AND GO

2   THROUGH THIS AGENCY'S PRODUCTION AND THEN THAT AGENCY'S

3   PRODUCTION, AND ANOTHER AGENCY'S PRODUCTION.  IT'S MORE THAT

4   THE DOCUMENTS ARE SORT OF CENTRALLY LOCATED AND WE'RE GOING

5   THROUGH THEM THAT WAY.

6        WE HAVE NOT AGREED TO PRODUCE TO THE PLAINTIFFS EVERY

7   SINGLE DOCUMENT THAT WENT TO ANY REGULATOR IN ANY

8   INVESTIGATION THAT TOUCHES ON THIS SUBJECT MATTER.  INSTEAD,

9   WE AGREED TO RELEASE TO THE PLAINTIFFS DOCUMENTS THAT WENT TO

10  OTHER REGULATORS THAT ARE RESPONSIVE TO THE PLAINTIFFS'

11  DOCUMENT REQUESTS.  AND WE HAVE BEEN WORKING THROUGH THAT.

12       I BELIEVE WE HAVE PRODUCED THE VAST MAJORITY OF THE

13  DOCUMENTS THAT WOULD BE RESPONSIVE TO THE PLAINTIFFS' DOCUMENT

14  REQUESTS THAT WENT TO OTHER REGULATORS.  I CANNOT, THOUGH,

15  CONFIRM THAT WE WOULD HAVE PRODUCED EVERY SINGLE DOCUMENT

16  BECAUSE, YOU KNOW, OBVIOUSLY WE ARE DEALING WITH A LARGE

17  UNIVERSE.  I THINK WE ARE STILL CONTINUING TO REVIEW THOSE FOR

18  THAT PURPOSE.

19       BUT WHAT WE HAVE AGREED TO PRODUCE ARE THE DOCUMENTS THAT

20  WENT TO OTHER REGULATORS TO THE EXTENT THEY ARE RESPONSIVE TO

21  THE DOC REQUESTS WE RECEIVED.

22           THE COURT:  MR. LOESER, I DON'T KNOW IF THAT ANSWERS

23  YOUR QUESTION.

24           MR. LOESER:  IT DOES, BUT IT ALSO KIND OF HIGHLIGHTS

25  ONE OF THE CENTRAL PROBLEMS WE'RE HAVING, WHICH IS THAT

1    TYPICALLY WHEN A COMPANY IS REVIEWING A PRODUCTION TO

2    DETERMINE WHAT IS RESPONSIVE, BEFORE THAT HAPPENS THERE'S AN

3    AGREEMENT ON SEARCH TERMS AND CUSTODIANS SO THAT THERE'S SOME

4    MEETING OF THE MINDS ON WHAT IS AND IS NOT BEING EXCLUDED FROM

5    A PRODUCTION.

6        AND I THINK WE CAN GET BACK TO THAT LATER, BUT THAT DOES

7    SORT OF HIGHLIGHT ONE OF THE REAL PROBLEMS WE'RE HAVING ON THE

8    ESI NEGOTIATIONS.

9        BUT, YOUR HONOR, BACK TO YOUR QUESTION IN TERMS OF WHAT

10   WE'RE SEEKING IN ADDITION TO THE FTC PRODUCTION, YOU ARE

11   RIGHT, THE FTC PRODUCTION IS AN IMPORTANT COMPONENT OF THE

12   DISCOVERY IN THIS CASE.  IT IS CERTAINLY NOT ALL OF WHAT NEEDS

13   TO BE PRODUCED OR REALLY EVEN CLOSE TO WHAT NEEDS TO BE

14   PRODUCED.  AND WE ARE ENGAGED IN CONVERSATIONS WITH FACEBOOK

15   WHICH, AGAIN, HAVEN'T REALLY GONE VERY FAR, ABOUT CUSTODIANS

16   AND SEARCH TERMS PRECISELY SO WE CAN CAPTURE THE SIGNIFICANT

17   ADDITIONAL INFORMATION THAT IS RELEVANT AND IMPORTANT TO OUR

18   CASE.

19           **THE COURT:**  NO, BUT SO -- AND WHERE ARE YOU IN

20   REVIEW -- IN HAVING REVIEWED WHAT HAS BEEN PRODUCED?

21           **MR. LOESER:**  WE STARTED THE PROCESS AND WE'RE MAKING

22   OUR WAY THROUGH THOSE DOCUMENTS.

23           **THE COURT:**  I GUESS MY QUESTION IS THIS, IS SORT

24   OF -- THERE MAY BE CATEGORIES OF DOCUMENTS THAT YOU KNOW WERE

25   NOT PRODUCED, RIGHT?  SO YOU NEED TO ASK FOR THOSE

1    PARTICULARLY BY DATE, AND THINGS LIKE THAT.

2        THERE MAY BE OTHER THINGS THAT MAY HAVE BEEN PRODUCED BUT

3    YOU DON'T KNOW IF THEY HAVE BEEN PRODUCED UNTIL YOU'VE

4    COMPLETED YOUR REVIEW.  SO I'M WONDERING HOW WE ARE GOING

5    TO -- HOW DO YOU PROPOSE TO ADDRESS THAT?

6        IN OTHER WORDS, I WONDER IF WE SHOULDN'T PRIORITIZE THOSE

7    THINGS THAT ARE -- WE KNOW WERE NOT PRODUCED, GET THOSE BEGUN

8    SEARCHING FOR AND PRODUCING, AND -- FOR EXAMPLE, HOW IS THIS:

9    WE KNOW THERE WERE CUSTODIANS THAT -- FROM -- THAT FACEBOOK

10   SEARCHED AND PRODUCED TO THE FTC, RIGHT?

11           **MR. LOESER:**  RIGHT.

12           **THE COURT:**  SO WE DON'T NEED THEM TO SEARCH THOSE

13   CUSTODIANS, AT LEAST WITH THE SAME SEARCH TERMS, BECAUSE THOSE

14   WERE PRODUCED TO THE FTC.

15       SO I'M JUST WONDERING, GIVEN THE INFORMATION THAT WE HAVE,

16   HOW DO WE MOVE IT FORWARD WITH WHAT WE DON'T HAVE OR WE KNOW

17   WE DON'T HAVE?

18                   (SIMULTANEOUS COLLOQUY.)

19           **MS. KUTSCHER:**  YOUR HONOR --

20           **MR. LOESER:**  I THINK IT'S A REALLY IMPORTANT

21   QUESTION.  AND ON THE ONE HAND, AS TO THE FIRST POINT, WE HAVE

22   SEARCHED -- FIRST OF ALL, FACEBOOK HASN'T AGREED TO DO A

23   SEARCH ON THOSE SAME CUSTODIANS OR EVEN OFFERED THEM IN THIS

24   CASE.

25       BUT, EVEN IF WE WENT TO THOSE CUSTODIANS, THERE ARE TIME

1    PERIODS THAT ARE RELEVANT TO OUR CASE THAT WOULD NOT HAVE BEEN

2    INCLUDED IN THE SEARCH ON THOSE CUSTODIANS.

3        SO IF WE ARE GOING TO TAKE THOSE CUSTODIANS AND MAKE SURE

4    THAT WE HAVE ALL OF THE RESPONSIVE RELEVANT INFORMATION FROM

5    THEM, WHAT WE WOULD WANT TO DO IS UTILIZE THE SEARCH TERMS

6    THAT WERE USED BEFORE, BUT ALSO UTILIZE THE ADDITIONAL TERMS

7    THAT ARE NECESSARY BECAUSE OF THE WAY THIS CASE DOES NOT

8    ENTIRELY OVERLAP WITH THE FTC PRODUCTION.

9                    (SIMULTANEOUS COLLOQUY.)

10           **MS. WEAVER:**  YOUR HONOR, THIS IS LESLEY WEAVER.  IF I

11   MAY BE HEARD ON THIS, TOO.

12       THERE ARE SOME NOTABLE GAPS THAT WE CAN IDENTIFY RIGHT NOW

13   IF YOU WOULD LIKE SOME INFORMATION.  FOR EXAMPLE, THE

14   MASSACHUSETTS ATTORNEY GENERAL IS SEEKING INFORMATION RELATED

15   TO SOMETHING THAT IS REFERRED TO AS THE ADI, OR THE APP

16   DEVELOPER INVESTIGATION, I THINK THAT'S WHAT IT STANDS FOR.

17       WE HAVE ASKED FACEBOOK TO PRODUCE THOSE DOCUMENTS TO US.

18   THEY HAVE REFUSED.  WE KNOW -- OBVIOUSLY THAT'S NOT WITHIN THE

19   FTC DOCUMENTS.

20       THIS WAS AN INVESTIGATION LAUNCHED AFTER THE CAMBRIDGE

21   ANALYTICA SCANDAL BROKE AND WAS INTENDED REALLY, IN OUR VIEW,

22   PARTLY TO ASSUAGE THE PUBLIC AND OUR CLASS MEMBERS' BELIEF IN

23   FACEBOOK'S INVESTIGATION OF THE PROTECTION OF THEIR PRIVACY.

24       IT IS HIGHLY RELEVANT.  IT WASN'T PRODUCED TO THE FTC.  WE

25   HAVE BEEN TRYING TO FIGURE OUT HOW TO RAISE THIS AND WHEN IT

1    IS RIPE TO RAISE, BUT THAT'S ONE CATEGORY.

2         ANOTHER CATEGORY OF DOCUMENTS IS WE HAVE ASKED FACEBOOK TO

3    PRODUCE THE DOCUMENTS UNDERLYING PRICEWATERHOUSECOOPERS'

4    REPORTS.  THEY WERE NOT AUDITING BUT WRITING ASSESSMENT

5    REPORTS FOR THE FEDERAL TRADE COMMISSION.  IT TOOK THEM FOUR

6    MONTHS TO PRODUCE THOSE REPORTS.  WE HAVE THEM, BUT WE NEED

7    THE UNDERLYING DOCUMENTS THAT LED TO THOSE CONCLUSIONS.  AND

8    WE ARE TALKING IN BOTH OF THESE CASES, CONTEMPORANEOUS

9    DOCUMENTS THAT THE INVESTIGATORS FOUND.  SO NOT NECESSARILY

10   CLOAKED IN PRIVILEGED FOR THE FIRST SET, AND THEN WE WANT TO

11   HAVE A DISCUSSION ABOUT WHETHER THE ADI DOCUMENTS ARE

12   PRIVILEGED AS WELL.

13        A THIRD ISSUE IS THAT THE FTC PRODUCTION ENDED AT A

14   CERTAIN TIME PERIOD, BUT OUR CLASS PERIOD IS IN THE PRESENT

15   AND OUR INJUNCTIVE RELIEF IS AN IMPORTANT PART OF OUR CLAIMS.

16        SO CERTAIN CUSTODIANS MAY HAVE BEEN SEARCHED, BUT THEY

17   WILL HAVE TO BE RE-SEARCHED -- RE-SEARCHED AGAIN FOR THE

18   RECENT TIME PERIODS.

19        ANOTHER ISSUE IS THAT FACEBOOK IDENTIFIED TO THE FTC IN

20   CORRESPONDENCE THAT THEY HAVE NOT PRODUCED TO US WHAT TERMS

21   WERE USED FOR WHAT CUSTODIANS.  AND WE KNOW THIS BECAUSE WE

22   HAVE ONE LETTER THAT SAYS THEY WILL DO IT, BUT WE DON'T HAVE

23   THE CORRESPONDENCE WHERE THEY WILL DO IT.

24        AND WE KNOW THAT JUDGE CHHABRIA ORDERED THEM TO PRODUCE

25   ALL THE FTC CORRESPONDENCE.  WE RAISED THIS RECENTLY.

1   FACEBOOK'S POSITION UNTIL NOW HAS BEEN, WE'RE NOT GOING TO

2   GIVE YOU THE REMAINDER OF THAT CORRESPONDENCE, BUT THAT

3   CORRESPONDENCE WILL REALLY HELP US FIGURE OUT WHAT THEY DID

4   AND DID NOT SEARCH SO WE CAN LOOK AT THE DELTA BETWEEN WHAT WE

5   THINK WE WANT AND WHAT THEY HAVE ALREADY PRODUCED.

6       THE FINAL THING IS, WE STILL DON'T HAVE TODAY -- THIS WAS

7   NEWS TO US IN THIS HEARING -- THAT THE PRODUCTION INCLUDED

8   ANYTHING PRODUCED TO OTHER REGULATORS.  WE WILL MORE

9   SPECIFICALLY BE SEEKING WHAT WAS PRODUCED TO THE ICO AND THE

10  DCMS, WHICH ARE THE UK ENTITIES THAT INVESTIGATED.  THERE ARE

11  SIGNIFICANT PORTIONS OF OUR COMPLAINT RELYING ON ALLEGATIONS

12  AND FACTS FROM THOSE INVESTIGATIONS.  IF THEY OVERLAP, GREAT,

13  WE JUST NEED TO HAVE A DISCUSSION ABOUT IT BECAUSE WE WOULD

14  LIKE TO SEE WHAT THEY PRODUCED TO THOSE REGULATORS AS WELL.

15      **THE COURT:**  OKAY.  SO IT SOUNDS LIKE THERE ARE

16  CATEGORIES THAT WOULD AVOID DUPLICATIVE STUFF.

17      LET ME TURN TO THE ESI PROTOCOL.  BOTH SIDES ACTUALLY DID

18  AGREE THAT THEY HAD MADE GOOD PROGRESS THERE.  AND WHAT IF I

19  WERE TO ORDER THE PARTIES TO, BY NEXT FRIDAY, A WEEK FROM

20  TODAY, SUBMIT THE STIPULATED ESI PROTOCOL.  AND IF THERE ARE

21  AREAS THAT YOU CAN'T AGREE TO, THEN BY THAT MONDAY,

22  APRIL 27TH, YOU SUBMIT YOUR LETTERS, YOUR LETTER, JOINT LETTER

23  AS TO JUST THOSE NARROW ARROWS.  SO YOU GIVE ME A STIP ON

24  EVERYTHING YOU CAN STIP ON.  AND WHAT YOU DON'T STIP ON, YOUR

25  COMPETING PROPOSALS.  AND I MAY JUST DO BASEBALL ARBITRATION.

1    NOT SPLIT THE BABY.  I'LL JUST PICK WHICH ONE SO YOU ARE

2    BOTH -- I SAY "MAY," BECAUSE I'M NOT AN UMPIRE AND I HAVE -- I

3    MIGHT BE A LITTLE MORE FLEXIBLE.  BUT I MIGHT, YOU DON'T KNOW.

4    BUT MAYBE YOU CAN WORK IT OUT.  I WOULD ENCOURAGE YOU TO WORK

5    IT OUT AS OPPOSED TO FORCING ME TO CHOSE ONE OR THE OTHER BY

6    MONDAY.

7        DOES THAT WORK IF I DO THAT BY FRIDAY, BY A WEEK FROM

8    TODAY?  FOCUS ON THAT.

9        **MR. LOESER:**  YOUR HONOR, DEREK LOESER FOR THE

10    PLAINTIFFS.

11        WE WELCOME THE DEADLINES.

12        **THE COURT:**  OKAY.  FOR --

13        **MR. SNYDER:**  YES, YOUR HONOR --

14        **THE COURT:**  -- FACEBOOK?  ALL RIGHT.  SO THAT'S ONE

15    THING WE'LL GET DONE.

16        SO THEN LET'S TALK ABOUT NOW BETWEEN THEN AND MAY 1ST,

17    WHAT ELSE WE'RE GOING TO BE FOCUSING ON.

18        SO I GUESS I'M TRYING TO FIGURE OUT THE CONNECTION BETWEEN

19    SEARCH TERMS AND THESE OTHER DOCUMENTS.  AND I'M JUST

20    WONDERING... I'M JUST WONDERING IF WE CAN -- IF THE SEARCH

21    TERMS -- WELL, IT'S ALMOST IN A WAY -- IF WE DO IT IN AN

22    ITERATIVE PROCESS, THAT MEANS FACEBOOK MAY HAVE TO DO MORE

23    THAN ONE SEARCH, RIGHT?  SO THAT CAN BE BURDENSOME.

24        BUT ON THE OTHER HAND, I CAN SEE IF YOU -- YOU,

25    MS. WEAVER, IDENTIFIED THESE FIVE AREAS THAT ARE NOT

OVERLAPPING AND IT'S ALREADY BEEN DONE THAT DON'T SEEM TO

REALLY CALL FOR SEARCH TERMS AT ALL, IT'S JUST GIVE US WHAT

YOU GAVE TO THEM.  WHAT IF WE WERE TO FOCUS ON THAT NEXT?  AND

THEN AS YOU ARE REVIEWING THINGS, THAT WILL HELP SHAPE A

LITTLE BIT MORE THE DISCUSSION ON THE SEARCH TERMS.

**MR. SNYDER:**  YOUR HONOR, THIS IS MR. SNYDER.

THANK YOU FOR THAT.  YOU KNOW, THERE ARE LITERALLY DOZENS

AND DOZENS AND DOZENS OF ACTIVE AND INACTIVE INVESTIGATIONS.

OBVIOUSLY DIFFERENT ISSUES; SOME OVERLAP, SOME DON'T.  FOR

EXAMPLE, THERE ARE 46 ATTORNEYS GENERAL; EACH ONE HAS A

DIFFERENT INVESTIGATION REQUEST.

WHAT WE THINK MAKES SENSE IS, ONCE WE HAVE THE SEARCH

TERMS AND CUSTODIANS, WE OBVIOUSLY WILL REVIEW THE FULL

CONSTELLATION OF DOCUMENTS.  AND TO THE EXTENT IN THE PWC

CATEGORY, IN OTHER REGULATOR CATEGORIES THERE ARE RESPONSIVE

DOCUMENTS, WE WILL PRODUCE THEM.

AND MY SENSE IS THAT SOME OF WHAT WE GAVE -- A LOT OF WHAT

WE GAVE TO, FOR EXAMPLE, THE BRITISH LITIGATORS, WE ALSO GAVE

TO THE FTC.  TO THE EXTENT THERE ISN'T OVERLAP THERE, THEN WE

WILL PRODUCE NEW DOCUMENTS FROM, FOR EXAMPLE, THE BRITISH

REGULATOR DOCUMENTS THAT ARE RESPONSIVE TO THE SEARCH TERMS.

AND WE PROVIDED 59 -- WE PROPOSE 59 CUSTODIANS.

IF, DURING THE REVIEW OF 40,000 PAGES THEY HAVE, THE

PLAINTIFFS COME UP WITH ADDITIONAL CUSTODIANS, WE WILL

CONSIDER THOSE.  I THINK AN ITERATIVE PROCESS DOES MAKE SENSE

1    AND -- BUT IN ORDER TO AVOID, AS YOU SAID, PIECEMEAL

2    REPETITIVE REVIEWS AND PRODUCTIONS, I THINK THE ORDER THAT YOU

3    JUST DIRECTED MAKES THE BEST SENSE.

4        PICK OUR CUSTODIANS, PICK OUR SEARCH TERMS, THEY WILL HIT

5    ON THE TOPICS, THE PWC TOPICS, THE BRITISH REGULATOR TOPICS

6    THAT THEY ARE INTERESTED IN, AND WE'LL JUST PRODUCE THOSE.

7    AND I THINK THERE WILL BE SOME OVERLAP, BUT THERE WILL BE A

8    LOT OF NEW PRODUCTIONS AS WELL.

9                    (SIMULTANEOUS COLLOQUY.)

10           **MS. WEAVER:**  MAY I BE -- THIS IS LESLEY WEAVER.

11           **THE COURT:**  YES.

12           **MS. WEAVER:**  LET ME ANSWER YOUR QUESTION REALLY

13   QUICKLY BECAUSE THERE ARE AT LEAST TWO CATEGORIES THAT I LEFT

14   OUT.  AND ONE IS THE MOST CRITICAL ONE, WHICH IS, ORDINARILY

15   IN OUR EXPERIENCE, THE OUTSET OF LITIGATION LIKE THIS, WE TALK

16   WITH OPPOSING COUNSEL ABOUT WHERE RESPONSIVE MATERIALS ARE

17   LOCATED.

18       AND THERE'S A VERY CRITICAL PART OF OUR CASE THAT WAS NOT

19   IN THE FTC CASE BECAUSE WE HAVE TO SHOW DAMAGES.  AND THAT

20   MEANS UNDERSTANDING FACEBOOK'S BUSINESS MODEL AND

21   UNDERSTANDING HOW THEY MONETIZE AND HOW THEY USE THE CLASS

22   MEMBERS' CONTENT AND INFORMATION.

23       SO IT'S OUR UNDERSTANDING THAT THEY HAVE -- AND THIS WAS

24   REPORTED TO THE DCMS THAT THERE IS A PLACE CALLED THE HIVE, OR

25   DATA WAREHOUSE WHERE INFORMATION ABOUT USERS IS COLLECTED.

1   AND WE'VE TRIED TO HAVE CONVERSATIONS WITH FACEBOOK, BUT WE

2   DON'T HAVE AN ANSWER ABOUT THAT.

3       WE'VE TRIED TO TEE UP A DEPOSITION ON THE TOPIC.  WE

4   HAVEN'T REACHED AGREEMENT ON WHETHER THAT CAN OCCUR, BUT THERE

5   IS A WHOLE CATEGORY OF THAT INFORMATION THAT WE THINK IS VERY

6   CRITICAL TO OUR CASE.  AND SO THAT, THAT'S ONE AREA.

7       AND THEN THE OTHER ISSUE IS, THAT IN THE PROCESS OF OUR

8   SUBSTANTIVE MEET AND CONFERS ON RFP'S, FOR EXAMPLE, RFP'S 14

9   TO 17, FACEBOOK -- AND WE HAVE HAD DIFFERENT UNDERSTANDINGS OF

10  WHAT THOSE CALL FOR.  AND WE ANTICIPATE THAT WE'LL BE

11  PROPOUNDING A NEW SET OF RFP'S BASED ON WHAT HAS COME OUT OF

12  THOSE MEET-AND-CONFER SESSIONS.

13      AND SO WE HAVE THEM ALMOST READY TO GO AND WE HAVE BEEN

14  WORKING WITH EXPERTS TO GET THEM OUT, BUT IF WHAT THEY ARE

15  SAYING IS THAT THEY HAVE BEEN PRODUCING FOR OLD RFP'S, THERE

16  IS THAT ITERATIVE PROCESS.  SO WE DO AGREE -- AND THEN I'LL

17  DEFER TO DEREK THE POSITION ON YOUR OFFER, BUT I WANTED TO

18  IDENTIFY THOSE TWO OTHER CATEGORIES.

19          **THE COURT:**  WELL --

20              (SIMULTANEOUS COLLOQUY)

21      **MS. KUTSCHER:**  HEARING WHAT MS. WEAVER IS SAYING, I

22  JUST WANT TO HIGHLIGHT ONE OF THE DIFFICULTIES WE'VE HAD; IS

23  THAT THE RFP'S WERE SERVED PRETTY EARLY IN THE CASE, AND A LOT

24  OF THEM DIDN'T REALLY MAKE A LOT OF SENSE TO US, MAINLY

25  BECAUSE I THINK THE PLAINTIFFS DIDN'T UNDERSTAND FACEBOOK'S

1   SYSTEMS.  SO A LOT OF WHAT WAS REQUESTED WAS STUFF THAT, YOU

2   KNOW, DIDN'T REALLY EXIST.  JUST BECAUSE THE WAY THEY WERE

3   FRAMED DIDN'T REALLY JIVE WITH THE WAY THE SYSTEMS ACTUALLY

4   WORK.

5       AT THIS POINT WE HAVE NOW GIVEN THE PLAINTIFFS MORE THAN

6   400,000 PAGES.  THEY HAVE THE ENTIRETY OF WHAT WENT TO THE

7   FTC.  IT SOUNDS LIKE MS. WEAVER IS SUGGESTING THAT PERHAPS WE

8   SHOULD SCRATCH THE OLD RFP'S AND START AGAIN WITH A NEW SET

9   THAT MAYBE MAKES MORE SENSE.

10      AND WHAT MIGHT MAKE EVEN MORE SENSE THAN THAT IS FOR THEM

11  TO SPEND SOME TIME WITH THE DOCUMENTS THAT WENT TO THE FTC,

12  REALLY UNDERSTAND WHAT HAS BEEN PRODUCED ALREADY, UNDERSTAND

13  THE UNIVERSE A LITTLE BIT BETTER, AND THEN PROPOUND NEW RFP'S

14  BASED ON WHAT THEY HAVE AND WHAT THEY DON'T HAVE.

15          **MR. LOESER:**  YOUR HONOR, IF I MAY.  THIS IS DEREK

16  LOESER.

17          **THE COURT:**  YES.

18          **MR. LOESER:**  I WOULD LIKE TO GET BACK TO THE PROPOSAL

19  THAT YOU LAID OUT, AND I THINK WE SHOULD TALK ABOUT THAT FOR A

20  MINUTE.

21      OBVIOUSLY WE DON'T THINK IT MAKES SENSE TO SCRAP OLD RFP'S

22  OR NOT.

23      ONE OF THE THINGS I THINK IS IMPORTANT FOR WHAT YOU

24  SUGGESTED IS, THAT FACEBOOK HAS INDICATED WITH REGARD TO A

25  NUMBER OF THE RFP'S THAT WERE SERVED THAT THEY DON'T BELIEVE

1    SEARCH TERMS ARE NECESSARY OR -- OR WOULD WORK FOR CATEGORIES

2    OF PRODUCTION.

3         AND WE CONCEDED THAT'S VERY LIKELY TRUE.  FOR EXAMPLE,

4    PWC, IN ITS REPORTS THAT IT WAS DOING ON FACEBOOK'S PRIVACY

5    CONTROLS, REVIEWED A SUBSTANTIAL AMOUNT OF DOCUMENTATION AND

6    REFERRED TO THAT IN THEIR REPORTS.  WE FINALLY HAVE THOSE PWC

7    REPORTS FROM FACEBOOK, BUT WE DON'T HAVE ANY OF THE SUPPORTING

8    MATERIALS.  WE DON'T NEED SEARCH TERMS TO IDENTIFY ALL THE

9    SUPPORTING MATERIALS TO THE PWC REPORTS, THEY JUST NEED TO

10   HAND OVER THOSE MATERIALS.

11        IN FACT, IT WOULD BE VERY HARD TO WORK WITH THOSE

12   MATERIALS IF THEY CAME VIA SOME SEARCH TERM RESULT BECAUSE IT

13   WOULD BE HARD TO LINE THEM UP WITH THE REPORTS.  WHAT WE WANT

14   TO BE ABLE TO DO IS LOOK AT THE REPORT; SEE THE 2019, FOR

15   EXAMPLE, PWC DETERMINED THAT FACEBOOK'S PRIVACY CONTROLS WERE

16   LACKING AND THAT IT WAS DOING THINGS THAT IT SHOULDN'T HAVE

17   BEEN DOING.  WE WANT TO BE ABLE TO SEE WHAT ARE THE DOCUMENTS

18   THAT THEY LOOKED AT WHEN COMING TO THAT CONCLUSION.

19        THERE ARE A NUMBER OF OTHER CATEGORIES, AND I THINK,

20   FRANKLY, WE JUST NEED TO HAVE FACEBOOK TELL US SPECIFICALLY

21   WHEN THEY SAID SEARCH TERMS WEREN'T NECESSARY FOR CATEGORIES

22   OF DOCUMENTS, WHAT WERE THOSE CATEGORIES, LET'S GET THOSE

23   DOCUMENTS PRODUCED.

24        SEARCH TERMS AND CUSTODIANS WILL STILL, I THINK EVERYONE

25   RECOGNIZES, WILL BE VERY IMPORTANT FOR THIS CASE.  AND THE

1   PROCESS THAT'S BEEN UTILIZED HERE IS VERY DIFFERENT THAN ANY

2   PROCESS THAN CERTAINLY I HAVE EVER SEEN.  USUALLY IT'S

3   SOMETHING THAT HAPPENS RIGHT UP FRONT.  WE ARE VERY INVOLVED

4   IN THE OPIOID MDL.  YOUR HONOR'S ASSIGNED.  YOU WILL BE SEEING

5   A WHOLE LOT OF ISSUES, I AM SURE, IN THAT CASE.  THERE HAS

6   BEEN A MASSIVE VOLUME OF PRODUCTION.  THE FIRST THING THAT

7   HAPPENED WAS SEARCH TERMS.  THE *JUUL* CASE, WE ARE CO-LEAD

8   COUNSEL, THERE'S A HUGE PRODUCTION, BUT SEARCH TERMS HAPPEN

9   QUICKLY.  THE CUSTODIANS AS WELL.

10      SO I THINK THAT FOR US TO PROGRESS AND PRODUCE DEADLINES

11  TO BE MET, AND FOR THE PACE TO GET TO WHERE IT NEEDS TO BE FOR

12  US TO ACCOMPLISH THE MANY THINGS THAT JUDGE CHHABRIA WANTS US

13  TO ACCOMPLISH BY OCTOBER OF THIS YEAR, WE NEED SOME DEADLINES

14  ON THE COMPLETION OF THE SEARCH TERM AND CUSTODIAN

15  NEGOTIATIONS.

16      WE'VE OFFERED UP A PROPOSAL IN OUR SUBMISSION AND

17  OBVIOUSLY THOSE DATES CAN BE ADJUSTED, WE JUST THINK WE NEED

18  SOME DEADLINES.

19          **THE COURT:**  THAT'S WHY WE ARE GOING TO DO STATUS

20  EVERY TWO WEEKS.  AND WHAT I WANT TO DO, BECAUSE I WANT TO

21  SORT OF AVOID WHAT I SAW IN THOSE STATEMENTS, IS WE WILL HAVE

22  AN AGENDA FOR WHAT IS TO BE DONE WITHIN THOSE TWO WEEKS.

23      THAT TAKES CARE OF PLAINTIFFS' CONCERNS ABOUT THINGS ARE

24  BEING STALLED AND DEFENDANTS' CONCERNED ABOUT WE'RE GETTING

25  HIT WITH LETTERS LEFT, RIGHT ON THIS AND THAT.  WE ARE GOING

1    TO COME UP WITH AN AGENDA NOW, WHAT PROGRESS IS GOING TO BE

2    MADE BY MAY 1ST.  AND THEN ON MAY 1ST, WE WILL COME UP WITH

3    OUR NEXT AGENDA, AND WE'LL DO IT THAT WAY.

4        SO IT SEEMS LIKE MAYBE THE THING TO DO NOW IS, BECAUSE I

5    UNDERSTAND -- THE DEFENDANTS HAVE NOW PROPOSED 59 CUSTODIANS.

6    I THINK THE PLAINTIFFS HAD A LIST OF 124.  SO WHAT YOU NEED TO

7    NOW DO IS MEET AND CONFER BY ZOOM, BY VIDEO, NOT LETTERS, NOT

8    EMAILS, AND NOT TELEPHONE; JUST LIKE THIS.  JUST LIKE THIS,

9    WAY MORE PRODUCTIVE.  WAY MORE PRODUCTIVE.

10        IN FACT, GOING FORWARD, I MAY ORDER THIS IN EVERYTHING

11    EVEN AFTER THIS IS ALL DONE.

12        **MR. SNYDER:**  YOU CAN JOIN, JUDGE.  YOU CAN JOIN IF

13    YOU WANT.

14                    (SIMULTANEOUS COLLOQUY.)

15        **THE COURT:**  MAYBE WHEN I BECOME A SPECIAL MASTER SOME

16    DAY, THAT IS WHEN I CAN JOIN THEN.

17        **MR. LOESER:**  YOUR HONOR, ONE QUESTION ON THAT, WHICH

18    I THINK IS IMPORTANT IS, YOU KNOW, WE HAVE GONE OUT AND TRIED

19    TO IDENTIFY CUSTODIANS JUST FROM PUBLIC SOURCES BECAUSE

20    FACEBOOK CLAIMED IT DIDN'T HAVE ANY ORGANIZATIONAL CHARTS; AND

21    SO, FRANKLY, DIDN'T PROVIDE US WITH INFORMATION, TO BE MORE

22    SPECIFIC.

23        IT WOULD BE REALLY USEFUL FOR THOSE DISCUSSIONS IF

24    FACEBOOK WOULD SIMPLY PROVIDE US WITH THE ORGANIZATIONAL

25    INFORMATION IT HAS ABOUT ALL OF THE PEOPLE WE PROPOSE SO THAT

1    WE CAN ACTUALLY -- WE CAN NARROW THE LIST, BECAUSE WE CAN

2    IDENTIFY WHO ARE THESE PEOPLE AND ARE THEY LIKELY TO HAVE

3    RESPONSIVE MATERIALS OR NOT.

4        THEY HAVE ONLY PROVIDED THAT ORGANIZATIONAL INFORMATION

5    FOR THE 59 CUSTODIANS THAT THEY HAVE, THEMSELVES, HAVE

6    OFFERED, BUT FOR THE DISCUSSION TO BE MEANINGFUL, WE NEED THE

7    INFORMATION ON THE OTHER PEOPLE, TOO.  NOT THAT THEY ACTUALLY

8    NECESSARILY NEED TO BECOME CUSTODIANS, BUT WE NEED TO BE ABLE

9    TO FIGURE OUT IF THEY SHOULD BE CUSTODIANS.

10        THE COURT:  RIGHT.  THAT'S THE POINT OF THE

11   DISCUSSIONS, THOUGH.

12        MR. LOESER:  RIGHT, BUT WE HAVE BEEN HAVING THAT

13   FOR -- I DON'T WANT TO ARGUE.  WE WELCOME THE DISCUSSION.  WE

14   JUST THINK --

15        THE COURT:  RIGHT.  WHAT WE'RE GOING TO DO RIGHT NOW,

16   LIKE BY MAY 1ST, I WANT THE CUSTODIAN DISPUTE EITHER RESOLVED

17   OR ON MAY 1ST THEN WE ARE GOING TO LIKE FIGURE OUT -- GOING TO

18   RESOLVE, RIGHT?  SO I WANT, BETWEEN NOW AND MAY 1ST, THAT'S

19   YOUR TASK IS TO RESOLVE IT, THE CUSTODIAN DISPUTE.

20        AND LET'S -- RIGHT NOW, WHEN IS YOUR FIRST MEETING GOING

21   TO BE?  TODAY IS FRIDAY.  LIKE YOUR FIRST MEETING, HOW ABOUT

22   MONDAY?

23             (SIMULTANEOUS COLLOQUY.)

24        MR. LOESER:  HOW ABOUT TODAY?

25        MS. KUTSCHER:  IF I CAN JUST CHIME IN ON TIMING FOR A

1   MINUTE.

2       PLAINTIFFS HAVE ASKED ABOUT 150 CURRENT AND FORMER

3   EMPLOYEES.  WE RECEIVED THAT FAIRLY RECENTLY AS ONE OF OVER 50

4   ISSUES THEY HAVE ASKED US TO ADDRESS.

5       I THINK WE ARE GOING TO NEED SOME TIME TO MAKE SURE THAT

6   WE UNDERSTAND WHO ALL THESE PEOPLE ARE AND CAN MEANINGFULLY

7   TALK ABOUT THEM BEFORE WE REALLY ENGAGE IN THAT

8   CONVERSATION --

9           **THE COURT:**  RIGHT.  RIGHT.  BUT THAT'S WHY YOU DO THE

10  CALL MONDAY, THEY CAN TELL YOU.  AND YOU MIGHT BE ABLE TO

11  ELIMINATE PEOPLE OFF THE BAT WITHOUT EVEN HAVING TO GO THROUGH

12  IT.

13      IN OTHER WORDS, WHAT YOU NEED TO DO BEFORE ANYONE GOES

14  BACK AND DO ANY MORE WORK IS JUST TALK.

15          **MS. KUTSCHER:**  OKAY.

16          **THE COURT:**  FIND OUT FROM PLAINTIFFS WHY THEY PUT IT

17  ON THE LIST.  WHAT WAS THE PUBLIC INFORMATION THEY LOOKED AT?

18  THEN YOU CAN GO BACK.

19      YOU DON'T NEED TO -- IT'S FINE.  YOU PROBABLY WON'T KNOW.

20  AND NO ONE IS WORKING OVER THE WEEKEND.  AND PEOPLE MAY HAVE

21  KIDS RUNNING AROUND IN THEIR BACKGROUND.  SO --

22          **MR. LOESER:**  ALSO WEEKENDS.  DO WE HAVE WEEKENDS

23  STILL?

24          **MS. KUTSCHER:**  I JUST WANT TO BE CLEAR THAT WE WILL

25  NOT BE IN A POSITION ON MONDAY TO HAVE A MEANINGFUL DISCUSSION

1    ABOUT 150 DIFFERENT PEOPLE.

2         **THE COURT:**  MY... MY EXPECTATION IS THAT IS THE --

3    THAT IS THE BEGINNING OF THE CONVERSATION.

4      NOW THAT THESE CUSTODIAN LISTS HAVE BEEN EXCHANGED, NOW

5    LET'S JUST TALK IT -- LET'S JUST TALK IT THROUGH AND START

6    WORKING.  AND THE PLAINTIFFS WILL SAY, THIS IS WHY WE CAME UP

7    WITH THIS -- I HAVE NO IDEA WHAT THIS IS.  WHERE DID YOU FIND

8    IT?  AND THAT WILL HELP SAVE YOU TIME AND GOING BACK.

9      AND AT THAT MEETING ON MONDAY, YOU WILL SET YOUR TIME FOR

10   YOUR NEXT MEETING, WHICH MAY BE WEDNESDAY.  AND THEN YOUR NEXT

11   ONE, WHICH MAY BE FRIDAY, OR WHATEVER.  BECAUSE BY -- REALLY,

12   BY APRIL 30TH AT NOON, I'M GOING TO WANT -- RIGHT, THERE'S

13   ONLY 30 DAYS IN APRIL.  BY APRIL 30TH AT NOON, I WANT A JOINT

14   STATUS UPDATE WITH WHERE THESE THINGS ARE.

15     SO... SO THAT'S WHERE WE ARE GOING TO FOCUS ON THOSE

16   CUSTODIANS, RIGHT?  THAT'S THE FIRST THING.  SO BY MAY 1ST,

17   LET'S HOPEFULLY HAVE THAT RESOLVED.  AND THE ESI AS WELL,

18   RIGHT?

19         **MR. SNYDER:**  YOUR HONOR, WE WOULD JUST ASK THAT IN --

20   DIRECT US TO MEET AND CONFER; YOU DIRECT THAT AT LEAST ONE OF

21   THE MEET AND CONFERS NEXT WEEK IS ALSO A COCKTAIL ZOOM SO THAT

22   WE CAN KILL TWO BIRDS WITH ONE STONE.

23         **THE COURT:**  THAT IS AN EXCELLENT SUGGESTION,

24   MR. SNYDER.  EXCELLENT.  I... I WOULD ORDER IT IF I COULD, BUT

25   I CAN'T BECAUSE --

1          **MR. SNYDER:**  WE CERTAINLY WOULD GET A LOT OF MEDIA

2     ATTENTION FOR THAT.

3          **MR. LOESER:**  YOU KNOW, ORIN, WE CAN'T STOP YOU FROM

4     DRINKING DURING OUR MEET AND CONFERS.

5                    (LAUGHTER)

6          **MS. WEAVER:**  YOUR HONOR, THIS IS LESLEY WEAVER.  I

7     HAD ONE FOLLOW-UP.

8       IT WOULD ALSO BE REALLY HELPFUL IF THEY COULD IDENTIFY

9     WHERE RESPONSIVE ESI RESIDES LIKE WE USUALLY GET IN A CASE.

10         **THE COURT:**  YEAH.  WELL, AND TO -- THAT SHOULD BE

11    PART OF THE DISCUSSIONS, RIGHT?

12      SO NOW WHAT I WANT YOU GUYS TO DO IS, HAVE THESE REGULAR

13    VIDEO MEETINGS, MEET AND CONFERS WHERE YOU WILL JUST TALK AND

14    WORK COLLABORATIVELY.  SORT OF SLOW DOWN WITH THE EMAILS AND

15    THE LETTERS.  AND I KNOW EVERYBODY WANTS TO MAKE THEIR RECORD,

16    AND YOU WILL, WHEN YOU NEED TO, HAVE THAT OPPORTUNITY TO DO

17    SO.

18      SO LET'S JUST TRY TO DO IT A LITTLE BIT MORE INFORMALLY TO

19    BEGIN WITH, WHICH I KNOW YOU HAVE ALL DONE IN OTHER CASES AND

20    HAD IT WORK REALLY WELL.  IT'S WORKING VERY WELL IN *JUUL* RIGHT

21    NOW; I HAVE THE PRIVILEGE OF DOING DISCOVERY IN THAT CASE AS

22    WELL.  SO LET'S TRY THAT OUT FIRST, AND JUST ASK -- AND LET'S

23    STOP WITH THE EMAILS AND LETTERS.

24      LET'S DO THIS:  LET'S SAY EVERY OTHER DAY, RIGHT, YOU'LL

25    HAVE THESE ZOOM VIDEOS SCHEDULED AT A PARTICULAR TIME.  YOU

1   GUYS COME UP WITH WHAT THE TIME IS.  AND IT MAY BE FOR A LONG

2   TIME.  AND LET'S DO THAT SO THAT NO ONE NEEDS TO FEEL LIKE

3   THEY ARE CHASING THE OTHER DOWN OR THEY ARE GETTING BOMBARDED

4   OR ANYTHING ELSE.

5       SO WE ARE GOING TO FOCUS ON THAT ESI PROTOCOL.  WE'RE

6   GOING TO FOCUS ON THE CUSTODIANS.  AND LET'S START TALKING

7   ABOUT -- AND DEFENDANTS, YOU KNOW, INFORMALLY, BUT SAYING THIS

8   IS WHERE WE UNDERSTAND THESE RESIDE.  THIS IS WHERE WE

9   UNDERSTAND THE PLAINTIFFS -- THE NAMED PLAINTIFFS, RIGHT,

10  THEIR FILES OR WHATEVER.  I KNOW THAT'S A QUESTION THE

11  PLAINTIFFS HAD.  JUST START TALKING ABOUT WHAT YOU KNOW AND

12  THAT -- YOU KNOW, WHERE YOU CAN GET THAT, AND FIGURE THAT OUT.

13  AND THEN... AND THEN ALSO THE ESI PROTOCOL.

14      I THINK MAYBE... WELL, THEN THERE'S THESE OTHER THINGS.

15  YOU CAN TELL ME, DEFENDANTS, FOR EXAMPLE, THE PRICEWATERHOUSE,

16  THE UNDERLYING DOCUMENTS UNDERLYING THE REPORT, IS THAT

17  SOMETHING WE CAN PUT INTO THESE DISCUSSIONS AS WELL?

18          **MR. SNYDER:**  I MEAN, WE --

19              (SIMULTANEOUS COLLOQUY.)

20          **MR. SNYDER:**  GO AHEAD, MARTIE.

21          **MS. STEIN:**  THIS IS DEBORAH STEIN.  THANK YOU, YOUR

22  HONOR.

23      SO THERE ARE, I THINK, A NUMBER OF CATEGORIES WHERE THAT

24  MAY SOUND EASY, BUT ACTUALLY HAVE A LOT OF CHALLENGES

25  ASSOCIATED WITH THEM.

1    SO, THE PRICEWATERHOUSE DOCUMENTS, FOR EXAMPLE, WE CAN'T

2    NECESSARILY TELL FROM THE FACE OF THE REPORTS WHAT PWC RELIED

3    ON, SO WE HAVE BEEN WORKING TO TRY AND SOLVE THAT ISSUE.

4    ONE OF THE REASONS WHY WE HAVE BEEN REALLY PUSHING ON

5    CUSTODIANS AND SEARCH TERMS IS BECAUSE THERE'S SORT OF THIS

6    LAUNDRY LIST OF CATEGORIES.  BUT IF YOU LOOK AT ANY ONE

7    CATEGORY IN ISOLATION, THERE'S SORT OF LIKE, OH, THAT DOESN'T

8    SOUND LIKE A BIG DEAL.  BUT WHEN YOU GET TO THE SCALE OF IT,

9    WHAT ENDS UP HAPPENING IS, WE'RE GETTING SIDETRACKED RUNNING

10   DOWN ALL THESE DIFFERENT CATEGORIES, OFTEN LOOKING AT -- FOR

11   DOCUMENTS THAT IF WE JUST RAN SEARCH TERMS, REALLY WHAT THEY

12   WANT ARE THE FACEBOOK DOCUMENTS.

13   SO IT SEEMS LIKE THAT'S REALLY WHERE WE SHOULD BE FOCUSED.

14   I THINK THAT THERE IS WORK TO BE DONE ON THAT SO WE CAN GET

15   GOING.  THERE'S BEEN A BIT OF THE TAIL WAGGING THE DOG TRYING

16   TO DEAL WITH CATEGORIES AS OPPOSED TO SEARCHES.

17   **THE COURT:**  WELL, I DO WANT YOU TO -- PLAINTIFFS

18   REPRESENTED THAT IT WAS REPRESENTED TO THEM THAT THERE WERE

19   CERTAIN CATEGORIES THAT SEARCH TERMS WOULD NOT BE NEEDED, AND

20   THEY WANT TO KNOW.

21   SO WHAT I WOULD LIKE YOU TO DO IS, IN THE NEXT TWO WEEKS

22   IS EXPLAIN WHAT THOSE ARE AS WELL, AND SEE IF YOU CAN RESOLVE

23   THAT.

24   ALL RIGHT.  WE HAVE OUR ESI PROTOCOL.  WE HAVE OUR

25   CUSTODIANS.  WE HAVE WHAT THE DEFENDANTS THINK ARE THOSE

1    CATEGORIES THAT SEARCH TERMS WOULD NOT BE NEEDED NOR

2    NECESSARY.  AND THEN WE HAVE THE BEGINNING OF THE DISCUSSION

3    ABOUT HOW THINGS ARE STORED AT FACEBOOK, HOW -- YOU KNOW, HOW

4    IT WORKS, WHAT YOU KNOW, WHERE YOU NEED -- THOSE SHOULD BE

5    PART OF THE DISCUSSION.

6        AND THEN ON APRIL 30TH BY NOON, I WANT A JOINT -- AND SO I

7    WANT YOU TO SEE WHAT EACH OTHER HAS WRITTEN -- I WANT A JOINT

8    SUBMISSION ON WHERE THINGS ARE AT.  YOU DON'T HAVE TO AGREE,

9    BUT I WANT YOU AT LEAST TO RESPOND AND KNOW WHAT THE OTHER

10   PERSON HAS SAID BY NOON ON APRIL 30TH, AND THEN WE'LL

11   RECONVENE ON MAY 1ST AT 9:30.

12       AND THEN THE OTHER OBSERVATION I JUST WANT TO MAKE IS, I

13   DON'T KNOW ABOUT YOU, BUT I'M SURE THIS IS THE CASE WITH YOU

14   ALL:  WE'RE WORKING HARD BUT EVERYONE IS DISTRACTED.  LIKE

15   EVERYONE DOESN'T KNOW IF THEIR LAW FIRM IS EVEN GOING TO BE

16   HERE A YEAR FROM NOW OR WHAT THE WORLD IS GOING TO LOOK LIKE.

17   OR THEY HAVE THEIR KIDS RUNNING AROUND BEHIND THEM AND THEY

18   ARE TRYING TO HOME SCHOOL OR CRISIS SCHOOL AS SOMEONE ELSE --

19   THAT IS A BETTER WAY OF SAYING IT, AND LET'S ALL BE COGNIZANT

20   OF THAT.  LET'S BE COGNIZANT OF THAT; THAT THERE ARE THINGS

21   GOING ON HERE THAT ARE BEYOND OUR CONTROL AND, FRANKLY, ARE

22   BIGGER AND MORE IMPORTANT.  SO WE NEED TO KEEP THAT ALL IN

23   PERSPECTIVE.

24       IT'S A CASE; WE ARE GOING TO MOVE IT ALONG, BUT THESE ARE

25   UNPRECEDENTED TIMES.  UNPRECEDENTED, AND WE JUST HAVE TO

```
 1    ADJUST AND WORK TOGETHER.

 2        AND I THINK MR. SNYDER'S SUGGESTION OF YOUR MEET AND

 3    CONFERS BEING AS FRIENDLY AS POSSIBLE IS A GOOD ONE.  WE ARE

 4    ALL DOING OUR BEST AND WORKING UNDER INCREDIBLY TRYING

 5    CIRCUMSTANCES.

 6        AND JUST KEEP THAT IN MIND, THAT EVERYONE IS DOING THEIR

 7    BEST AT THIS TIME.  SO DOES THAT SOUND LIKE A PLAN THAT IS

 8    MOVING ALONG BUT DOABLE?

 9            MR. LOESER:  YES, YOUR HONOR.  AND I JUST WANT TO

10    THANK YOU FOR SAYING THAT.  IT MEANS A LOT TO ALL OF US TO

11    HEAR IT FROM THE JUDGE THAT IT'S OKAY TO CHILL OUT A LITTLE

12    BIT.  WE APPRECIATE THAT.

13            THE COURT:  NOT WEAR TIES, IT'S QUITE ALL RIGHT.

14    MR. LIPSCHUTZ, HE'S ALSO NOT WEARING -- AND MR. FALCONER,

15    YOU'RE NOT ALONE.  NONE OF US FEMALES ARE WEARING TIES EITHER.

16            MR. SNYDER:  YOUR HONOR, I WILL ADMIT THAT

17    MR. FALCONER, MR. LIPSCHUTZ AND I DID EMAIL THIS MORNING ABOUT

18    OUR ATTIRE.

19                    (SIMULTANEOUS COLLOQUY.)

20            THE COURT:  WAIT.  WAIT.  LET'S LET MR. LOESER SPEAK.

21            MR. LOESER:  I USUALLY HATE WEARING TIES, BUT I WAS

22    KIND OF HAPPY TO ACTUALLY PUT ONE ON AND MAKE THIS SEEM A

23    LITTLE BIT LIKE NORMAL WORK.

24        SO THANK YOU FOR THAT OPPORTUNITY.

25            THE COURT:  ALL RIGHT.
```

 1          **MS. WEAVER:**  YOUR HONOR?  THIS IS LESLEY WEAVER.  ONE

 2    QUESTION.

 3          FOR THE SUBMISSION, IT MIGHT HELP THE PARTIES IF WE HAD A

 4    LITTLE MORE GUIDANCE AND, FRANKLY, WE DON'T CARE WHAT IT IS,

 5    BUT --

 6          **THE COURT:**  YES.

 7          **MS. WEAVER:**  -- WE SHOULD EXCHANGE ON A CERTAIN DATE.

 8    DO YOU WANT ATTACHMENTS?  AND WHAT SHOULD THE LENGTH OF THE

 9    DOCUMENT BE?  I THINK THAT WOULD MAKE US ALL HAPPY.

10          **THE COURT:**  SURE.

11          SO WHAT I WOULD LIKE IT TO BE IS, WE IDENTIFIED FOUR

12    AREAS, RIGHT?  THE ESI PROTOCOL -- HOPEFULLY WHAT THAT -- AND

13    THAT SHOULD BE ONE PARAGRAPH AT THE MOST, WHICH IS, WE

14    SUBMITTED OUR STIPULATION BY APRIL 24TH OR WE SUBMITTED OUR

15    STIPULATION WITH -- AND THEN ON APRIL WITH -- ON APRIL 27TH A

16    FEW, VERY FEW AREAS OF DISAGREEMENT.

17          THE SECOND WILL BE, WE'VE RESOLVED ALL THE CUSTODIANS AND

18    THESE ARE CUSTODIANS, OR THIS IS WHERE WE'RE AT.  RIGHT?  AND

19    EACH SIDE, MAYBE IT'S JUST ONE PARAGRAPH, TWO AT THE MOST.

20          THREE WILL BE, THESE ARE THE DISCUSSIONS WE'VE HAD ON

21    WHERE THE ESI RESIDES, HOW IT IS STORED, WHAT IT IS WITH THAT.

22    THIS IS OUR PLAN GOING FORWARD.  MAYBE WE ARE GOING TO HAVE

23    OUR EXPERT TALK TO SOMEONE IN-HOUSE AT FACEBOOK OR WHATEVER.

24    IT CAN BE DONE INFORMALLY IN A WAY THAT GETS YOU THAT

25    INFORMATION BEFORE RESORTING TO THAT 30(B)(6).

1    FOURTH WILL BE, THIS IS THE AREAS THAT THE DEFENDANTS

2   ADVISED WE DON'T NEED SEARCH TERMS ON, AND THEY'RE GOING TO

3   PRODUCE IT BY NOW, OR WHENEVER IT IS.

4    SO JUST THOSE FOUR AREAS.  EACH SIDE CAN DO THEIR OWN

5   PARAGRAPH.

6    MAYBE WHAT YOU SHOULD DO IS, BY THE 29TH AT NOON, WHY

7   DON'T YOU EXCHANGE YOUR STATEMENTS.  AND THEN... AND THEN

8   LET'S SAY AT 9:00 A.M. ON THE 30TH, DO A CALL, DO A ZOOM AND

9   SEE IF YOU CAN AGREE ON WHAT ELSE YOU ARE GOING TO PUT IN

10   THERE BY NOON ON THE 30TH.

11    HOW'S THAT?

12        **MS. WEAVER:**  GOOD.  ATTACHMENTS?  I THINK WHAT WE

13   WOULD LIKE IS A LIMITED NUMBER OF ATTACHMENTS ONLY IF

14   NECESSARY.  I KNOW YOU DON'T WANT TO READ A THOUSAND LETTERS

15   OR EMAILS.

16        **THE COURT:**  NO, AND I WON'T.

17        **MR. SNYDER:**  HOPEFULLY WE WON'T BE WRITING LETTERS

18   AND EMAILS TO ONE ANOTHER.

19        **THE COURT:**  RIGHT.

20            (SIMULTANEOUS COLLOQUY.)

21        **MS. WEAVER:**  BUT ATTACHMENTS COULD BE USEFUL FOR

22   UNDERLYING EVIDENTIARY ISSUES IF WE ARE NOT IN AGREEMENT.

23        **THE COURT:**  I MEAN, I DON'T THINK -- I DON'T -- NO

24   MORE THAN TEN PAGES OF ATTACHMENTS.

25        **MS. WEAVER:**  OKAY.  GREAT.

1        **THE COURT:**  PICK YOUR TEN BEST, BUT MAYBE NONE.

2        **MS. WEAVER:**  RIGHT.

3        **THE COURT:**  MAYBE NONE.  ALL RIGHT?

4    BUT YOU HAVE MY PLEDGE.  I WILL WORK WITH YOU AS LONG AS

5    NEEDED, AND YOU CAN TELL YOUR CLIENTS MY RATE STAYS THE SAME.

6                    (LAUGHTER).

7        **MR. KO:**  YOUR HONOR, THIS IS DAVID KO ON BEHALF OF

8    PLAINTIFFS.  JUST ONE MORE QUESTION SPEAKING OF PAGE LIMITS.

9    WOULD YOU LIKE PAGE LIMITS ON THE JOINT STATUS UPDATE AS

10   WELL?

11       **THE COURT:**  NO MORE THAN FOUR PAGES EACH SIDE.  SO

12   EIGHT TOTAL.

13       **MR. KO:**  SOUNDS GOOD.

14       **THE COURT:**  THAT'S PROBABLY MORE EVEN THAN YOU NEED.

15   REALLY, I AM HOPING IT'S A NEW DAY AND WE'LL SEE THAT THINGS

16   ARE PROGRESSING AND YOU'RE GETTING STUFF DONE TOGETHER.

17   AND THE LAST THING I SHOULD SAY IS, I KNOW PLAINTIFFS ARE

18   CONCERNED ABOUT THAT OCTOBER DATE.  AND I WILL -- WE WILL WORK

19   HARD TO MEET IT.  BUT JUDGE CHHABRIA IS WELL AWARE THAT WE ARE

20   IN A DIFFERENT WORLD NOW AS WELL, AND HE'S NOT GOING TO DO

21   ANYTHING THAT'S GOING TO PREJUDICE -- PREJUDICE ONE SIDE OR

22   THE OTHER AT ALL.

23   AND HE ASKED ME IF I WOULD DO THIS FOR HIM, SO I FEEL

24   CONFIDENT THAT IF I TOLD HIM THE PARTIES HAVE BEEN WORKING

25   COOPERATIVELY AND DILIGENTLY BUT WE NEEDED MORE TIME, THAT WE

1    CAN GET IT.

2         **MR. FALCONER:**  YOUR HONOR, THIS IS RUSS FALCONER FOR

3    FACEBOOK.

4      CAN WE REQUEST THAT WE DO ONE MORE ISSUE ON THAT NEXT

5    STATUS UPDATE, WHICH IS THAT 502(D) STIPULATION THAT THE

6    PARTIES HAVE BEEN NEGOTIATING?  WE THINK THAT GOES HAND IN

7    GLOVE WITH THE ESI PROTOCOL --

8         **THE COURT:**  TRUE.  THE PLAINTIFFS PROBABLY DON'T HAVE

9    AN OBJECTION TO THAT.

10        **MS. WEAVER:**  NO, WE HAVE BEEN WORKING WITH THEM ON

11   THAT.

12                   (SIMULTANEOUS COLLOQUY.)

13        **MR. LOESER:**  WE'LL SEE WHAT HE PROPOSES ON BOTH OF

14   THEM.

15        **THE COURT:**  LET'S PUT THAT ON THE SAME DEADLINE ALONG

16   WITH THE ESI PROTOCOL.  SO LET'S GET THAT STIP.  I'M GOING TO

17   BE OPTIMISTIC.  LET'S GET THAT STIP BY FRIDAY.

18        **MS. KUTSCHER:**  THANK YOU, YOUR HONOR.  IT IS VERY

19   HELPFUL TO HAVE YOUR GUIDANCE ON THE ISSUES WE SHOULD BE

20   FOCUSING ON, AND WE THINK THAT'S REALLY GOING TO MOVE THINGS

21   FORWARD A LOT.

22      THE ONE QUESTION I WANTED TO CLARIFY, AND I THINK I

23   UNDERSTAND THE ANSWER, BUT IS THAT IN THE MEANTIME, WE ARE

24   GOING TO TABLE OTHER ISSUES AND NOT BE EXCHANGING LETTERS AND

25   EMAILS AND OTHER ISSUES, OTHER DISPUTES WHILE WE FOCUS ON

1    WORKING THROUGH THESE FOUR, NOW FIVE ISSUES IN THE NEXT COUPLE

2    OF WEEKS?

3          **THE COURT:**  THAT'S MY INTENT.  AND THEN ON THE 1ST,

4    WE WILL COME UP WITH OUR NEXT AGENDA FOR THE NEXT TWO WEEKS SO

5    THAT THINGS WILL ABSOLUTELY GET DONE.

6          **MS. KUTSCHER:**  THAT'S WONDERFUL.  THANK YOU SO MUCH.

7          **THE COURT:**  WE'LL DO THEM IN ORDER.

8     ALL RIGHT?  GREAT.

9          **MR. LOESER:**  THANK YOU, YOUR HONOR.  IT IS VERY, VERY

10   HELPFUL.

11         **MR. SNYDER:**  HAVE A GOOD WEEKEND, EVERYONE.

12         **THE COURT:**  I LOOK FORWARD TO WORKING WITH YOU.  WE

13   WILL GET TO KNOW EACH OTHER QUITE WELL.

14         **MR. LOESER:**  US, TOO, JUDGE.

15         **MS. WEAVER:**  THANK YOU VERY MUCH, YOUR HONOR.

16         **THE COURT:**  ALL RIGHT.

17         **THE CLERK:**  COURT IS IN RECESS.

18           (PROCEEDINGS CONCLUDED AT 10:40 A.M.)

19

20

21

22

23

24

25

### CERTIFICATE OF TRANSCRIBER

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*Diane E. Skillman*

DIANE E. SKILLMAN, TRANSCRIBER

TUESDAY, APRIL 28, 2020