Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: May 1, 2020<br>Hearing Time: 9:00 a.m. |

The parties, by and through their counsel, submit this Joint Status Update in advance of the Court's discovery conference scheduled for May 1, 2020 at 9:00 a.m.

# I.     PLAINTIFFS' STATEMENT

The parties have made material progress since the Court directed them to regularly meet and confer two weeks ago. The parties agreed on an ESI protocol and on a Rule 502(d) order with the exception of one provision. *See* Dkt. No. 410. The parties have discussed all of Facebook's proposed custodians to some extent, agreed that some document requests do not require search terms, and touched upon locations of relevant ESI. In short, the parties' regular Zoom meetings have been time-consuming but effective in encouraging constructive exchanges of information.

However, significant work remains. First, while Plaintiffs appreciate the information Facebook has verbally provided this week, Facebook has not yet described the organizational information for all of its proposed custodians, and has not provided any organizational information for the potential additional custodians Plaintiffs have identified.

Second, Facebook declines to discuss production of documents responsive to certain requests that the parties agree do not require search terms. These document requests seek information that is highly relevant to Plaintiffs' claims, so the parties' impasse about those requests needs the Court's resolution.

Finally, despite the Court's advice to involve ESI experts in the parties' discussions, no ESI liaison for Facebook has participated in a meet and confer. Among other benefits, the presence of an ESI expert would advance the parties' ongoing discussions regarding the location, maintenance, and retrieval of relevant noncustodial ESI.

Plaintiffs appreciate the efforts of the Court and opposing counsel to move discovery forward during this difficult time and are pleased that progress had been made since the last hearing. We believe additional guidance and continued cooperation will keep us on track.

## A.     Custodians to Be Searched

Because the parties are making progress identifying the appropriate custodians, Plaintiffs join Facebook's request for additional time to report to the Court on this topic, and propose an additional week—to May 8—as an appropriate extension.

On April 21, after reviewing organizational charts Facebook provided five days earlier, Plaintiffs narrowed focus to 59 individuals, sending Facebook an active Excel chart identifying those individuals, their likely titles over time, and hyperlinks to articles that substantiated their potential relevance. Plaintiffs also swiftly responded in writing to Facebook's request for descriptions of topics of information that custodians should cover. Conversations were significantly advanced Monday and Wednesday when Facebook verbally provided dates of employment and roles and responsibilities for its proposed custodians, and articulated why Facebook believes they are likely to possess relevant information. Once this process is complete, and Facebook provides similar information for the individuals identified by Plaintiffs (a list Plaintiffs will endeavor to narrow in light of information received Wednesday), Plaintiffs anticipate providing their custodian proposal. This list will include additional persons with knowledge about matters not captured by the FTC production or Facebook's proposals.

Resolving three straightforward, related issues will further advance this process. First, Facebook refuses to provide Plaintiffs with the list of Facebook employees interviewed in connection with the four assessment reports on Facebook's privacy controls prepared by PricewaterhouseCoopers ("PwC"). Facebook's 2012 Consent Decree with the FTC required Facebook to obtain biennial reports from a third party to examine the sufficiency of Facebook's privacy controls, which were conducted by PwC. *See* Secs. IV-V of the 2012 FTC Order.[1] Plaintiffs are aware that PwC conducted over 65 in-person meetings with key individuals in a variety of different groups and teams at Facebook over fifteen weeks for the 2013 report alone, but the PwC reports do not identify interviewees by name.[2] Disclosure of those names by May 5 will avoid having to add persons from that list later and the parties can discuss them on May 6.

Second, Plaintiffs have yet to receive all of Facebook's correspondence with the FTC relating to the scope of its production to the FTC—which is relevant to the parties' ESI and custodian discussions. For example, correspondence publicly released in redacted form by the

---

[1] https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf.
[2] *See* FB-CA-MDL-00149129.

FTC from late 2018 and early 2019 appears to refer to documents and custodians that were excluded from the FTC production. *See* Exhibit A. That is relevant here to understand the scope of Facebook's production to the FTC. Gibson Dunn represented Facebook in that proceeding, as here, but explains that it cannot locate these letters in Gibson Dunn's files.[3] Plaintiffs can discuss both issues at the Court's upcoming conference and are also prepared to brief them.

Finally, Facebook proposes providing additional organizational information for its own proposed custodians by May 15. But if the parties are to reach agreement on custodians by May 8, this must happen sooner. Plaintiffs ask that Facebook be required to provide reporting structure and organizational information by May 5.

## B.    Document Productions That Do Not Require Search Terms

The parties agree that certain of Plaintiffs' RFPs do not require search terms and largely reached agreement yesterday on deadlines for those productions—though Plaintiffs note that the scope of production in response to some of these RFPs is a matter of ongoing negotiation. For three categories of requests that do not require search terms, the parties are either at impasse or anticipate being at impasse as to whether Facebook must produce them at all.

First, Facebook asserts that RFPs 16-17, which ask for information related to the monetary value of Facebook users' data, seek irrelevant information. But the value of user data to both Facebook and to third parties is centrally relevant. Quantifying that value will, for example, show how much Facebook has been unjustly enriched by allowing third parties access to the class's data. Plaintiffs are prepared to brief this issue immediately.

Second, on RFP 6—which seeks all documents Facebook provided to regulators in connection with relevant U.S. and U.K. government and regulatory investigations—the parties are continuing to meet and confer to determine what Facebook will produce and when.

Third, the parties continue to discuss Facebook's response to RFP 19, which seeks certain

---

[3] *See, e.g.*, *Records Related to the $5 billion Facebook Settlement 2019*, at p. 111 (March 17, 2019 correspondence including discussion of incomplete response to document requests), excerpted and attached as Exhibit A; available at https://www.ftc.gov/system/files/documents/foia_requests/final_redacted_facebook_settlement_r ecords_opaque_9.30.19.pdf

App Developer Initiative ("ADI") documents. ADI is Facebook's ongoing investigation into third party apps that may have improperly accessed or used user data – an investigation that Facebook acknowledges began in March 2018 as part of Facebook's response to the Cambridge Analytica "episode" and addresses millions of apps.[4] Facebook asserts privilege, but such privilege claims were recently rejected in an action by the Massachusetts Attorney General.

For the latter two categories, Plaintiffs request a May 8 deadline to resolve these issues.

## C.      Locations and Sources of ESI and an ESI Liaison

Thus far, Plaintiffs have received only cursory information about the locations and sources of potentially relevant ESI—particularly noncustodial ESI. The "30-minute presentation" to which Facebook refers in its statement was a verbal description of the Hive database, but it did not address where all relevant ESI is located, what Facebook plans to retrieve from those locations, or how it plans to retrieve it. Nor did Facebook tell Plaintiffs *where* information about "coding language and database structures" was "publicly available," or how it can be extracted. Without specific information about relevant ESI content and locations, the parties' ongoing discussions are hindered.

Part of the problem, Plaintiffs suggest, is the lack of an ESI expert on Facebook's side. Plaintiffs have included an ESI Liaison when the location of ESI was on the agenda. (*See* Dkt. No. 404, ¶ 4 [encouraging each side "to include their experts (including in-house experts) to ensure that the conversations are robust and productive"].) Facebook has not done so. Plaintiffs request that the Court order Facebook to include an ESI Liaison in such discussions.

## D.      Plaintiffs' Requests and Proposed Agenda

In summary, Plaintiffs propose that the Court ask the parties to prioritize custodial negotiations, to continue to discuss ESI sources, to begin to discuss search terms, to continue to negotiate RFPs 6 and 19, and to brief the dispute regarding RFPs 16-17. Plaintiffs propose that the deadlines set forth in Exhibit B will structure the parties' discussions over the next two weeks.

---

[4] https://about.fb.com/news/2019/09/an-update-on-our-app-developer-investigation/

## II.     FACEBOOK'S STATEMENT

Facebook appreciates the Court's directive that the parties focus on threshold ESI negotiations, which facilitated substantial progress over the last two weeks.  Since the April 17 Conference, the parties have agreed on (i) an ESI Protocol, (ii) the substantial majority of a 502(d) Stipulation (Dkt. 410), and (iii) categories of materials that Facebook can produced without custodial searches.  Facebook also provided a comprehensive custodian proposal (**Exhibit C**), and detailed information regarding Facebook's proposed custodians, Plaintiffs' potential custodians, and sources of ESI.  While the parties have made significant progress, Facebook seeks the Court's guidance on an appropriate process for the parties to conclude their custodian negotiations.

**A.     Custodians:**     Facebook identified 67 proposed custodians—adding 8 since the last status conference.  Facebook created and produced detailed reporting line information for its original proposed custodians, and on April 24, provided Plaintiffs a detailed summary of its proposal (**Exhibit C**), which specifies: (i) whom Facebook proposes for each RFP, (ii) each custodian's job title and department, and (iii) if applicable, the date through which Facebook has already produced documents from that custodian.  The parties met and conferred for more than 5 hours regarding Facebook's proposal, during which Facebook provided each proposed custodian's dates of employment and job responsibilities, and explained why it selected each custodian.

Facebook urged Plaintiffs to work from **Exhibit C**, the organizational materials Facebook created, and the hundreds of thousands of pages that Facebook produced—including all documents produced in response to the FTC's document requests—to identify any gaps in Facebook's proposal.  Unfortunately, Plaintiffs are taking a different approach.  On April 3, Plaintiffs sent Facebook a list of 148 individuals for discussion.  After the April 17 status conference, Plaintiffs sent Facebook a list of the 55 individuals they wished to discuss first, including 25 individuals Plaintiffs had not identified previously and many employees with generic, entry-level job titles and no apparent relationship to Plaintiffs' RFPs.  Plaintiffs did not generate these lists based on a review of the documents Facebook produced or the reporting line information Facebook created. Instead, they identified potential custodians through news articles—many of which have no

connection to this case (one concerns Tinder dates)—and asked Facebook to answer detailed questions about each.  On April 27, Plaintiffs identified 15 more potential custodians.

Over the last two weeks, the parties met and conferred for more than 11 hours and Facebook answered literally hundreds of questions about specific employees, many of which are answered by the documents already produced and public information.  During these discussions, Plaintiffs only expanded the set of individuals they wish to consider (now 184).  To date, Plaintiffs decline to provide a concrete custodian proposal or identify any gaps in Facebook's proposal.

Facebook is concerned that an open-ended Q&A regarding more than 100 seemingly-random employees is inefficient and not likely to lead to a custodian agreement in the near term.  It also diverges from the standard process for negotiating custodians.  A party responding to discovery is entitled to deference in selecting custodians it deems most likely to possess responsive information, and it is the requesting party's burden to demonstrate that the proposal is deficient.[5]  Such deference should apply with even greater force here, given that Facebook already produced voluminous documents to a number of regulators and other parties on the topics at issue in this case and is particularly well-positioned to identify the individuals holding responsive information.

Plaintiffs should evaluate **Exhibit C**, the hundreds of thousands of documents produced to date, the organizational materials Facebook created, and the detailed information Facebook provided during the parties' meet and confers.  Working from those materials, Plaintiffs should then identify any specific gaps in Facebook's proposal and ask Facebook to fill them.

***Plaintiffs do not need additional FTC correspondence to facilitate the parties' negotiations.***  This issue appears to be an effort to rehash the past, criticize counsel, and improperly dig into settlement communications with the FTC that postdate the productions made to the FTC.  Facebook agreed informally to produce to Plaintiffs certain correspondence regarding its FTC document productions.  As Plaintiffs explained to Judge Chhabria, this was to facilitate a

---

[5]     The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2019 WL 4934477 at *2 (S.D. Cal. 2019); *See Mortgage Resolution Servicing, LLC v. JP Morgan Chase Bank*, 2017 WL 2305398 at *2 (S.D.N.Y. 2017); *In re EpiPen*, 2018 WL 1440923 at *2 (D. Kan. 2018).

negotiation regarding which materials produced to the FTC should be produced here.  *See* Trans. of March 5, 2020 Case Management Conference at 7:1-12.  These negotiations proved unnecessary.  Facebook produced to Plaintiffs all Facebook documents produced in response to the FTC's document demands.  It also provided the FTC search terms and custodians.

Plaintiffs appear to have obtained through FOIA requests redacted versions of a few emails and one letter to the FTC that Facebook did not provide,[6] and they demand that Facebook produce unredacted versions.  There is no basis for this request, given that Plaintiffs now have the FTC productions and the search terms and custodians used to prepare them.  Plaintiffs are focused on a March 2019 letter to the FTC that postdates Facebook's FTC productions.  This is a lengthy settlement letter marked "RULE 408 SETTLEMENT MATERIAL"—which is why it is heavily redacted.  While a few unredacted sentences in the 8-page letter refer to document productions, the settlement letter contains no information needed for the parties' custodian negotiations.

***Plaintiffs do not need a list of PwC interviewees***.  Plaintiffs now say that to negotiate custodians they require a list of every Facebook employee whom PwC interviewed between 2013 and 2019—regardless of whether the interview concerned privacy.  Facebook should not be required to identify these individuals, particularly in response to an informal request made during a meet and confer.  Facebook's custodian proposal includes **8 employees who were involved with PwC's audits**.  It also produced the audits themselves and approximately 6,200 pages of emails with PwC.  Plaintiffs should review these materials.

B.    **Sources of ESI**:  The parties made considerable progress on their discussions regarding sources of ESI.  These efforts date back to 2018.  Since then, Facebook produced substantial information, including its Electronic Message Retention Policy, and letters detailing its document retention policies, litigation hold, custodial interviews, custodial data sources being preserved, accessible data sources, where relevant information could reside, and the systems third

---

[6]    Counsel conducted a robust search to satisfy the parties' informal agreement and produced more than 30 letters and emails which Facebook understood to be the universe of relevant correspondence. The materials Plaintiffs identified (i) are not located in counsel's correspondence file from the FTC's 2018-2019 investigation, and/or (ii) do not fall within the scope of what Facebook agreed to produce.

parties use to access user data.  This information more than satisfies Facebook's  obligations under the ESI Guidelines to "consider discussing . . . systems that contain discoverable ESI."

Facebook has continued to work to satisfy Plaintiffs' additional and expanding requests for information.  On April 22, the parties met and conferred regarding sources of ESI.  Plaintiffs posed numerous questions primarily regarding the locations of user data, including how those databases are structured and coded and the coding language(s) employed.  After spending considerable time preparing for this discussion, Facebook's counsel provided an approximately 30-minute presentation regarding how Facebook's systems operate.  Counsel also explained that much of the information Plaintiffs sought is publicly available.  Plaintiffs indicated they preferred to receive information from Facebook directly rather than through independent research.

Plaintiffs also asked counsel to identify likely sources of ESI for each of Plaintiffs' RFPs. The parties have not completed these discussions.  While Plaintiffs ask the Court to order Facebook to appoint an ESI liaison, Plaintiffs have not identified a single issue regarding sources of ESI that counsel has been unable to address.  In any event, the parties' ESI Protocol addresses ESI liaisons.

**C.    Agenda**:  Despite making substantial progress, the parties did not complete discussions on the four topics the Court ordered them to address.  Facebook suggests that next two weeks be dedicated to completing the parties' discussions of custodians and relevant sources of ESI.  Facebook also has agreed to collect, review, and produce other materials during this time.

Plaintiffs suggest the parties also address various new issues, including (i) a complex privilege dispute that is the subject of a pending appeal, (ii) the precise materials Facebook will reproduce from each of its regulatory productions, and (iii) Facebook's objection to producing certain irrelevant, sensitive financial information.  This is the problem that has plagued our prior discovery discussions: when we make progress on one issue, Plaintiffs raise a panoply of new ones, creating an inefficient whack-a-mole process without real results.  Facebook respectfully submits that the parties should resolve gating ESI issues before turning to other, less pressing disputes.  In the event (unlikely, we hope) the parties cannot resolve the ESI issues by May 15, the Court should resolve them at that time and set an agenda for future meet and confers on new issues.

Dated: April 30, 2020                          Respectfully submitted,

KELLER ROHRBACK L.L.P.                         BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*_____            By:    */s/ Lesley E. Weaver*_____
       Derek W. Loeser                                Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)      Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)   Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*)  Joshua D. Samra (SBN 313050)
Cari Campen Laufenberg (admitted *pro hac vice*)   Matthew P. Montgomery (SBN 180196)
David J. Ko (admitted *pro hac vice*)          Angelica M. Ornelas (SBN 285929)
Benjamin Gould (SBN 250630)                    555 12th Street, Suite 1600
Adele Daniel (admitted *pro hac vice*)         Oakland, CA 94607
1201 Third Avenue, Suite 3200                  Tel.: (415) 445-4003
Seattle, WA 98101                              Fax: (415) 445-4020
Tel.: (206) 623-1900                           lweaver@bfalaw.com
Fax: (206) 623-3384                            adavis@bfalaw.com
dloeser@kellerrohrback.com                     jsamra@bfalaw.com
lsarko@kellerrohrback.com                      mmontgomery@bfalaw.com
gcappio@kellerrohrback.com                     aornelas@bfalaw.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By:  */s/ Orin Snyder*_____
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of April, 2020, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I, Lesley E. Weaver, hereby certify that on April 30, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Lesley E. Weaver*
Lesley E. Weaver