Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and<br>Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: May 15, 2020<br>Hearing Time: 9:00 a.m. |

The parties, by and through their counsel, submit this Joint Status Update in advance of the Court's discovery conference scheduled for May 15, 2020 at 9:00 a.m.

## I. PLAINTIFFS' STATEMENT

This statement updates the Court on the status of the parties' custodian negotiations and briefly discusses other outstanding discovery issues.

### A. Custodians to Be Searched

The parties' discussions on custodians are proceeding on two tracks. The first track arises from the Plaintiffs' review of both publicly available information and the documents that Facebook produced on April 1 of this year. The second track arises from the four audits that PricewaterhouseCoopers (PwC) performed on Facebook's privacy program from 2013 to 2019.

#### 1. *First track*

In line with the Court's order to propose a list of fewer than 58 additional custodians out of the 66 persons discussed at the last status conference, Plaintiffs sent Facebook a list of 40 proposed custodians on May 5, and were prepared to discuss them on May 6. Relying on the information available to Plaintiffs, the list indicated the custodians' job titles, dates of tenure, and publicly available information about why these custodians were relevant. *See* Ex. A.

Plaintiffs expected that the parties would exchange information per the Court's instructions: Plaintiffs would explain why they thought the custodians were needed and Facebook would explain their core job functions and any overlap with its own proposed custodians.

Plaintiffs' expectations of a collaborative exchange of information were disappointed. Once Facebook said a proposed custodian was duplicative, it claimed it had no obligation to provide Plaintiffs with information about the proposed custodians until Plaintiffs could establish—presumably to Facebook's satisfaction—that the additional proposed custodians were *not* duplicative.[1] While this position hamstrung the discussions, Plaintiffs explained—based on job titles, dates of tenure, publicly available information, and documents already produced—why their proposed custodians appeared to fill gaps or otherwise add to the custodians that Facebook

---

[1] In many instances, this requirement is impossible to satisfy using the information Plaintiffs currently have. Many of the proposed custodians on Plaintiffs' list were not custodians for the documents that Facebook has already produced. And if a newly proposed custodian was not a custodian for earlier productions, then by that very fact Plaintiffs cannot locate documents unique to the newly proposed custodian.

had proposed.

After four meet-and-confer sessions, Facebook agreed to just five of the forty proposed custodians. To try to reach resolution, Plaintiffs further winnowed their list of 35 to *only nine custodians* that most clearly fill gaps in Facebook's custodian list and are most likely to produce highly relevant information, while reserving their right to seek additional custodians as more information becomes available. The parties are currently briefing this custodian dispute.

**2. *Second track***

As previously discussed, the FTC's 2012 Consent Decree required biennial privacy audits of Facebook. PwC produced three complete audit reports of Facebook's privacy practices in 2013, 2015, and 2017, and an incomplete audit report in 2019 (the "Reports"). The Reports addressed many relevant issues, including privacy risks and the protection of private user information.

Two weeks ago, the Court instructed Plaintiffs to identify "the persons in the PwC Reports (by page number and paragraph and job title) that they believe may be appropriate custodians," and asked Facebook to tell Plaintiffs if it could locate a list of persons PwC interviewed. Discovery Order No. 2 at 1, May 1, 2020, ECF No. 420.

On May 5, 2020, Facebook notified Plaintiffs that it could not locate any list, complete or otherwise, of Facebook employees interviewed by PwC.[2] That same day, Plaintiffs provided Facebook with a detailed list identifying persons of interest in the Reports, with citations to page numbers, paragraphs, and, whenever available, job titles. *See* Ex. A. Plaintiffs' list includes three categories of individuals from: (1) the Privacy Governance Team; (2) the Privacy Cross Functional Team (referred to as the "XFN Team"); and (3) the "owners" of certain privacy-related systems or procedures.

*First,* the Privacy Governance Team is "directly responsible" for its Privacy Program. FB-CA-MDL-00149221. Members of this Team include the Chief Privacy Officer, the Chief

---

[2] This is puzzling, for Facebook's own lawyers—which included a lead lawyer working at Gibson Dunn through 2019—informed the FTC that PwC interviewed at least 65 Facebook employees in connection with the 2013 Report.

Marketing Officer, the Chief Security Officer, among others. Ex. A., ¶ 1. *Second*, Facebook's XFN Team is composed of employees with a wide array of expertise. FB-CA-MDL-00149211. This Team includes key representatives from Facebook's Privacy, Public Policy, Legal, Marketing, Product, Engineering, Security and Communications Departments and is charged with continuously scrutinizing the privacy issues raised by Facebook's products and services. The XFN Team also includes the Information Security Team, which was "responsible for ensuring that security for privacy programs, policies and procedures [were] implemented within the organization." Ex. A, ¶ 2.

*Third*, for each system or procedure that Facebook established under its Privacy Program, it has designated an "owner." Ex. A, ¶¶ 3-4. Plaintiffs focused on the most relevant of these systems or procedures—referred to as "controls" in the PwC Reports—and asked Facebook to identify the owner for each.

Facebook has responded to these potential custodians from the PwC Reports through two emails. In a May 9 email, it cited approximately 1,200 already-produced documents that it said might help Plaintiffs identify the potential custodians from the Reports. Plaintiffs are currently reviewing these documents.  In a May 12 email, Facebook further identified four members of the Privacy Governance Team, but said that while it might be able to identify a handful of others, it was unable to do more. No substantive information on this issue has been provided in the meet and confer sessions.

Thus, because the parties are still identifying potential custodians from the Reports, they have not even begun to negotiate if any of these should also be searched. In accordance with the process Facebook has proposed, Plaintiffs ask that they be permitted to supplement their proposal as the identities of these potential custodians are confirmed.

**B.      Other Outstanding Issues and Proposed Agenda.**

Because the Court expressed the desire to settle the custodian issue before moving onto other discovery disputes, Plaintiffs narrowed their focus to reaching consensus on custodians and have not spent time discussing other issues, with the exception of locations and sources of

noncustodial ESI. Unfortunately, on that last topic, despite at least eight hours of meet and confer sessions, Facebook still has not provided complete information in response to Plaintiffs' inquiries.

Facebook claims that it has met its ESI disclosure obligations but, as support, points to its production of numerous documents—which appear largely irrelevant to the identification of ESI sources—and its provision of information on document-retention polices, litigation holds, and preserved data sources. While this information fulfills certain aspects of Facebook's disclosure obligations, it has failed to provide fundamental and basic information about non-custodial ESI sources likely to contain responsive information. *See* Ex. B (setting out that information). In order to resolve this threshold issue, and to address mutual frustration with the meet and confer process,, Plaintiffs propose that (1) Facebook provide written ESI disclosures regarding all relevant locations and sources of noncustodial ESI responsive to the topics set forth in Exhibit B, or (2) Plaintiffs be permitted to conduct a remote Rule 30(b)(6) deposition to identify all such sources, consistent with the notice that Plaintiffs served on April 3, 2020. Ex. C.

Facebook incorrectly asserts that, under the parties' ESI protocol, it cannot begin conferring about search terms until it has conducted custodial interviews for the next 30 days (or more) and collected custodial documents. This is nonsensical on several fronts: (1) the parties' ESI protocol contains no such limitation; (2) custodial interviews should have little to no impact on search terms applied to non-custodial sources; and (3) Facebook *has already proposed search terms* despite not yet having conducted even one custodial interview.

Accordingly, Plaintiffs propose that over the next two weeks, the parties meet and confer on (a) search terms; (b) disputes regarding Plaintiffs' RFPs Nos. 16-17 (requests related to monetization and quantification of user data), 19 (requests related to Facebook's App Developer Investigation), and 22-23 (requests related to documents relevant to PwC's reports); (c) locations and sources of relevant noncustodial ESI; and (d) a privilege log protocol. To structure the discussions regarding search terms, Plaintiffs propose the schedule set forth as Exhibit D.

## II.   DEFENDANT'S STATEMENT

Facebook appreciates the Court's continued assistance focusing the parties' negotiations, which facilitated additional progress over the last two weeks. Since the May 1 Conference, the parties largely reached agreement on custodians—which Facebook addresses in separate briefing. Facebook continued its production of materials that do not require custodial searches, producing more than **250,000 additional pages** since the last conference. Plaintiffs also served a new set of RFPs, adding 19 new document requests and bringing their total number of requests to 56.[3]

**A.    Sources of ESI:** The ESI Guidelines suggest parties "consider discussing … systems that contain discoverable ESI." Facebook has gone well beyond this suggestion. Discussions about sources of ESI began in 2018. Since that time, Facebook provided Plaintiffs its Electronic Message Retention Policy and drafted numerous letters detailing its retention policies, litigation holds, custodial interviews, preserved custodial data sources, accessible data sources, where relevant information could reside, and the systems third parties use to access user data.

The parties engaged in extensive negotiations to form an ESI protocol and agreed disclosures would be provided through the meet and confer process and not through written disclosures. The parties have met and conferred extensively regarding sources of ESI. Over the last month alone the parties spoke for nearly 8 hours regarding ESI—including providing Plaintiffs a presentation regarding how Facebook's core systems operate. Facebook has also produced nearly **750,000 pages**, many of which provide further insight into Facebook's ESI practices.

The parties' ongoing ESI discussions have proven frustrating—not because they are occurring orally—but because the details Plaintiffs expect Facebook to provide go well beyond

---

[3] Plaintiffs indicated they intend to make substantial revisions to the statement they provided Facebook yesterday—which focused nearly exclusively on custodians. They have not provided those revisions in advance, as the parties have done for other joint filings.

the purpose of an ESI discussion.  ESI discussions are intended to ensure the parties understand the general systems that contain responsive data, so the parties may have a general idea of sources of responsive information that may be produced.[4]  Typically these discussions concern whether responsive materials will exist in the form of emails, text messages, chats, or in some other form.  The parties have long surpassed conversations of this nature.

The majority of Plaintiffs' ESI questions do not seem intended to obtain information about sources of ESI but at poking the merits of the case and asking Facebook to tell Plaintiffs what information they should be seeking.  As the Court observed previously, Facebook is an "incredibly large, complex[,] completely ESI company," (Dkt. 426 at 40: 10-11), and Plaintiffs' claims relate largely to the alleged use of that ESI.  Certainly there are dozens—if not hundreds—of questions that can be asked about Facebook's systems, functioning, intellectual property, and so forth, but not all fall within the scope of preliminary ESI discussions.

Because Facebook is a "completely ESI company," Plaintiffs are exploiting ESI disclosures to demand answers to substantive issues that should be the subject of formal discovery.  By way of example, some of Plaintiffs' claims relate to Facebook's relationships with business partners.  Plaintiffs indicated they expect Facebook to identify as an ESI disclosure the specific Facebook user data to which Blackberry has access and the process through which BlackBerry gained that access.  Plaintiffs said they expect Facebook to provide this same information for other companies mentioned in Plaintiffs' complaint.  Plaintiffs demanded that Facebook describe how it reviews and approves third party apps, how systems work that report security breaches on the platform, whether and how advertisers may access user data subject to varying privacy controls, and the manner in which Facebook provides data analytics to hosts of third parties.  Plaintiffs asked counsel to define Facebook's "products" and to list all of them.

Plaintiffs have also used ESI discussions to quiz counsel on minutiae that will not move the parties' negotiations forward.  On April 29, Facebook sent Plaintiffs proposed deadlines by which Facebook would produce responsive materials that do not require search terms and

---

[4] *See* Fed. R. Civ. P. 26(f), advisory committee's note to 2006 amendment.

custodians. Facebook agreed to produce materials in response to 9 requests—6 by the end of May, 2 by June 12, and 1 (all responsive materials produced to government entities) by July 3. After agreeing to Facebook's proposal, Plaintiffs inundated Facebook with questions about the materials.

Plaintiffs demanded to know the specific document review platforms on which counsel stores productions made to government entities, whether Facebook has reviewed documents from custodians it has not offered, and the location of a particular folder on Facebook's system that houses prior platform policies. In view of Facebook's agreement to create reporting line information for proposed custodians, Plaintiffs demanded that Facebook explain how all of its current and historical HR data is stored and how it could be queried outside of existing systems. Plaintiffs next suggested that Facebook should allow them to work directly with its data scientists to create materials that do not otherwise exist. With respect to Plaintiffs' request for documents transmitted to users regarding third party access to user data, Facebook identified that it has a repository of such notifications from which it can pull documents responsive to Plaintiffs' request. This information should have been sufficient but it led to an avalanche of follow up questions regarding the location of the repository, its form, how data is stored in the repository, and the format of the data. The parties discussed the collection of documents responsive to this single RFP on multiple meet and confers for nearly an hour.

Similarly, after Facebook provided Plaintiffs a presentation regarding how its two core systems (Graph and Hive) work, Plaintiffs barraged Facebook with questions regarding a decade-old blog post about the Hive, asking if technical functions described in the post had been implemented and, if so, how and when. Even a Facebook data scientist was not familiar with the 10-year-old post and did not have answers to Plaintiffs' questions. He suggested—as counsel has several times—that Plaintiffs' experts research Plaintiffs' questions in publicly available materials, given that Hive is open source and Facebook has published widely regarding its structure and use.

Plaintiffs have taken the ESI Guidelines' suggestion to discuss sources of ESI and

converted it into an opportunity to depose counsel on the merits of their case and a mandate that Facebook provide seminars on each of its systems. Requiring these discussions to occur in writing—as Plaintiffs suggest—will not solve the problem. They should simply come to a close.

**B.     Agenda:** Facebook has agreed to collect materials from 72 custodians. Facebook suggests that the next 30-60 days should be dedicated to conducting custodial interviews to identify sources of potentially responsive custodial data and information needed to negotiate search terms. Given the number of custodians, Facebook expects that conducting custodial interviews will be burdensome and time consuming. But it is a necessary next step, because interviews must be conducted before documents can be collected for search and review. For example, Facebook must speak with its custodians to understand the jargon particular teams used, and it must collect its custodians' materials in order to test any search terms the parties propose. Indeed, the parties' ESI Protocol requires Facebook to generate hit reports as part of the parties' search term negotiations, which it cannot do before it collects the documents at issue. See Dkt. 409 at § E.

This process will not impede progress on other fronts. Facebook has agreed to collect, review, and produce substantial other materials in the coming weeks, including additional documents related to the named Plaintiffs, user notifications, documents referenced in PwC's assessment reports on Facebook's privacy program, and a very large volume of documents produced to government entities. Facebook will also be working over the next two weeks on its responses to Plaintiffs' third set of RFPs, which were served on May 6, and its opposition to Plaintiffs' motion for leave to amend their complaint, which is due on May 19.

Plaintiffs' counsel should likewise use the coming weeks to interview their clients about sources of documents responsive to Facebook's first set of RFPs, for which Plaintiffs' responses are due on May 18. Facebook also continues to urge Plaintiffs to review the substantial production of documents produced to regulators that it made on March 31. Despite Plaintiffs' representations at the last status hearing, once the parties' and Judge Chhabria resolved what that production would include, Facebook reviewed and produced the materials within 30 days.

Plaintiffs have now had those documents for six weeks, yet Facebook has found itself frequently referring Plaintiffs to produced materials to answer questions directed at counsel.

Finally, Facebook submits that three two-hour meet and confers are not needed over the next two weeks. Regular meet and confers have been productive, but Facebook has found meeting and conferring for six hours each week to interfere with its ability to make meaningful progress between sessions. Facebook suggests the parties meet and confer two times each week, and that the upcoming meetings should address Plaintiffs' responses to Facebook's RFPs.

Dated: May 14, 2020

Respectfully submitted,

KELLER ROHRBACK L.L.P.

BLEICHMAR FONTI & AULD LLP

By: */s/ Derek W. Loeser*
    Derek W. Loeser

By: */s/ Lesley E. Weaver*
    Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz
Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Facsimile: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jlipshutz@gibsondunn.com

Kristin A. Linsley (SBN 154148)
Brian M. Lutz (SBN 255976)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
klinsley@gibsondunn.com
blutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*