GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom 4, 17th Floor<br>Hearing Date:  June 4, 2020<br>Hearing Time:  2:00 p.m. |

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 1

    A.     The amended complaint is futile because the U.K. Plaintiffs' claims are subject to dismissal. ............................................................................................ 2

        1.     The amended complaint is subject to dismissal under forum non conveniens because the U.K. Plaintiffs agreed not to bring suit in this Court. ................................................................................................. 2

        2.     The amended complaint is subject to dismissal under a contractual choice-of-law provision that bars the U.K. Plaintiffs from bringing claims under U.S. law. ............................................................................. 6

        3.     The complaint is subject to dismissal under the doctrine of international comity. ............................................................................................ 7

        4.     The constitutional and statutory claims are subject to dismissal because they arise under laws that do not apply extraterritorially. ................................ 9

    B.     The amended complaint is futile because the U.K. Plaintiffs cannot serve as class representatives for a class of U.K. Facebook users. ......................................... 11

        1.     A class-action judgment in favor of Facebook likely would not have binding, preclusive effect on absent U.K. class members. .............................. 11

        2.     Adding U.K. Plaintiffs would insulate some class members from discovery and trial testimony because they are outside this Court's subpoena powers.. .......................................................................... 14

III.   CONCLUSION ........................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
   657 F. App'x 661 (9th Cir. 2016) ............................................................................................5

*Aimsley Enters. Inc. v. Merryman*,
   2020 WL 1677330 (N.D. Cal. Apr. 6, 2020) ...........................................................................5

*Al Haramain Islamic Found., Inc. v. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012)....................................................................................................9

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ...............................................................................................................12

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...............................................................................................................15

*Ansari v. New York Univ.*,
   179 F.R.D. 112 (S.D.N.Y. 1998) ..........................................................................................13

*In re Apple & AT & TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................................................11

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
   262 F.R.D. 293 (S.D.N.Y. 2009) ..........................................................................................14

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
   571 U.S. 49 (2013)...................................................................................................................5

*Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.*,
   2013 WL 633202 (N.D. Cal. Feb. 20, 2013)...........................................................................7

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975)..............................................................................................11, 12

*C.M.D. v. Facebook, Inc.*,
   2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) ........................................................................7

*CL-Alexanders Laing & Cruickshank v. Goldfeld*,
   127 F.R.D. 454 (S.D.N.Y. 1989) .....................................................................................12, 13

*Coon v. Nicola*,
   21 Cal. Rptr. 2d 846 (Cal. Ct. App. 1993) ..............................................................................5

*Daugherty v. Experian Info. Sols., Inc.*,
   847 F. Supp. 2d 1189 (N.D. Cal. 2012) ..................................................................................6

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*,
    887 F.2d 275 (D.C. Cir. 1989) ......................................................................................9

*Endonovo Therapeutics, Inc. v. New Paradigm Ventures, Inc.*,
    2017 WL 3049560 (C.D. Cal. Jan. 5, 2017) .................................................................5

*Fenerjian v. Nongshim Co.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ......................................................................11

*Finkelstein v. AXA Equitable Life Ins. Co.*,
    325 F. Supp. 3d 1061 (N.D. Cal. 2018) .....................................................................6

*Finsa Portafolios, S.A. v. OpenGate Capital, LLC*,
    769 F. App'x 429 (9th Cir. 2019) ............................................................................2, 5

*In re Flash Memory Antitrust Litig.*,
    2010 WL 2332081 (N.D. Cal. June 9, 2010) ...............................................................2

*Gaby's Bags, LLC v. Mercari, Inc.*,
    2020 WL 1531341 (N.D. Cal. Mar. 31, 2020) .............................................................7

*Gbarabe v. Chevron Corp.*,
    2017 WL 956628 (N.D. Cal. Mar. 13, 2017) .........................................................12, 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ......................................................................................................14

*Gottlieb v. Wiles*,
    143 F.R.D. 235 (D. Colo. 1992) ................................................................................10

*Harris v. Best Buy Stores, L.P.*,
    2016 WL 6024556 (N.D. Cal. Oct. 14, 2016) ...........................................................14

*Harris v. CVS Pharmacy, Inc.*,
    2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) .....................................................9, 10, 11

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) .....................................................................................6

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) .....................................................................................4

*In re HP Inkjet Printer Litig.*,
    2008 WL 2949265 (N.D. Cal. July 25, 2008) ...........................................................11

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004) .....................................................................................1

Gibson, Dunn &
Crutcher LLP

ii

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

# TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*Lavigne v. Herbalife, LTD*,
  2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ................................................................6

*Lewis v. Liberty Mut. Ins. Co.*,
  953 F.3d 1160 (9th Cir. 2020) ....................................................................................5

*Lindsey v. Normet*,
  405 U.S. 56 (1972) .....................................................................................................14

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) .......................................................................................9

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) .......................................................................................8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .......................................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ...................................................................................................10

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ....................................................................................7, 8

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .........................................................................11

*Openshaw v. FedEx Ground Package Sys., Inc.*,
  731 F. Supp. 2d 987 (C.D. Cal. 2010) .......................................................................14

*Palomino v. Facebook Inc.*,
  2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ....................................................................7

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .....................................................................................................8

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)........................................................................................1

*Richards v. Lloyds of London*,
  135 F.3d 1289 (9th Cir. 1998)......................................................................................7

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
  969 F.2d 953 (10th Cir. 1992)......................................................................................7

*RJR Nabisco Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) ...............................................................................................10

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*Roby v. Corp. of Lloyd's,*
  996 F.2d 1353 (2d Cir. 1993) ........................................................................................ 7

*Rodriguez v. Instagram, LLC,*
  2013 WL 3732883 (N.D. Cal. July 15, 2013) .............................................................. 11

*Saleh v. Titan Corp.,*
  580 F.3d 1 (D.C. Cir. 2009) ........................................................................................... 8

*Sanchez v. Wal Mart Stores, Inc.,*
  2009 WL 1514435 (E.D. Cal. May 28, 2009) .............................................................. 15

*In re Search Warrant Issued to Google, Inc.,*
  264 F. Supp. 3d 1268 (N.D. Ala. 2017) ...................................................................... 10

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court,*
  482 U.S. 522 (1987) ...................................................................................................... 15

*Sullivan v. Oracle Corp.,*
  51 Cal. 4th 1191 (Cal. 2011) ....................................................................................... 10

*Tennecal Funding Corp. v. Sakura Bank,*
  87 F.3d 1322 (table) (9th Cir. 1996) (mem.) ................................................................ 3

*TradeComet.com LLC v. Google, Inc.,*
  435 F. App'x 31 (2d Cir. 2011) ..................................................................................... 4

*U.S. Vestor, LLC v. Biodata Info. Tech. AG,*
  290 F. Supp. 2d 1057 (N.D. Cal. 2003) ......................................................................... 3

*United States v. Lugo Morales,*
  2019 WL 1561901 (E.D. Tex. Mar. 21, 2019) ............................................................ 10

*United States v. Microsoft Corp.,*
  No. 17-2 (U.S. Dec. 13, 2017) ....................................................................................... 8

*In re Verisign, Inc. Derivative Litig.,*
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......................................................................... 4

*In re Vivendi Universal, S.A.,*
  242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ...................................................................................................... 14

*Warn v. M/Y Maridome,*
  169 F.3d 625 (9th Cir. 1999) ......................................................................................... 8

Gibson, Dunn & Crutcher LLP

iv

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*In re Warrant to Microsoft Corp.*,
    829 F.3d 197 (2d Cir. 2016) ................................................................................................10

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
    407 F. Supp. 3d 931 (S.D. Cal. 2019) ...................................................................................5

*Willcox v. Lloyds TSB Bank, PLC*,
    2016 WL 8679353 (D. Haw. Jan. 8, 2016) ..........................................................................12

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    101 Cal. Rptr. 347 (Cal. Ct. App. 1972) ..............................................................................4

*Wright v. Adventures Rolling Cross Country, Inc.*,
    2012 WL 12942824 (N.D. Cal. May 3, 2012) ....................................................................11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................................................................5

*Zbitnoff v. NationStar Mortg. LLC*,
    2014 WL 2119875 (N.D. Cal. May 21, 2014) .......................................................................9

**Statutes**

18 U.S.C. § 2710(a)(4) ...............................................................................................................10

18 U.S.C. § 2710(b)(2)(B) .........................................................................................................10

28 U.S.C. § 1783 ........................................................................................................................14

**Other Authorities**

Allison Amatuzzo, *Wherever We Go, We Leave A Trail*, 7 Penn St. J.L. & Int'l Aff. 489
    (2019) ....................................................................................................................................13

Erin F. Delaney, *Judiciary Rising: Constitutional Change in the United Kingdom*,
    108 Nw. U. L. Rev. 543 (2014) ...........................................................................................13

Rachael Mulheron, *The Recognition, and* Res Judicata *Effect, of a United States Class
    Actions Judgment in England: A Rebuttal of* Vivendi, 75 Mod. L. Rev. 180 (2012) ....................13

**Rules**

Fed. R. Civ. P. 45(b)(2)–(b)(3) ..................................................................................................14

Gibson, Dunn &
Crutcher LLP

v

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

## I.  INTRODUCTION

Plaintiffs' motion for leave to amend their complaint seeks to turn this multidistrict litigation into multi-country litigation by adding two named plaintiffs who are citizens and residents of the United Kingdom (the "U.K. Plaintiffs").  *See* Proposed Second Am. Compl. ¶¶ 77, 94.  Amending a complaint to substitute named plaintiffs ordinarily "is a common and legitimate practice in class actions," Pls.' Mot. for Leave to Amend 2–3, and Facebook does not object to the portion of the motion that seeks to substitute in additional U.S. named plaintiffs here.  But substituting plaintiffs from another country is anything but routine.  And the claims the U.K. Plaintiffs seek to bring are plagued by a host of issues that make amendment futile and improper.

This is the Court's first opportunity to consider issues that are unique to the U.K. Plaintiffs; the briefing and argument at the motion-to-dismiss stage focused on issues that cut across the whole case.  With the focus now squarely on the viability of a transnational class action, the insurmountable hurdles to expanding this case to include class members from another country are thrown into sharp relief.

For one thing, the U.K. Plaintiffs' claims are subject to dismissal on numerous grounds.  Their claims are barred by forum-selection and choice-of-law clauses in the contracts they entered into with Facebook.  The doctrine of international comity also counsels in favor of dismissal.  And the U.K. Plaintiffs lack standing to pursue many of their claims.

On top of that, any attempt by the U.K. Plaintiffs to represent a class of Facebook users who live in the U.K. would run afoul of the Due Process Clause and the Rules Enabling Act.

And as a practical matter, allowing the U.K. Plaintiffs to join this case would vastly complicate, and likely delay, every aspect of discovery in this case, all so they could pursue claims on which they have no chance of recovery.  The time to close the door on their claims is now.

## II.  ARGUMENT

Although multiple factors may be considered in deciding whether to grant leave to amend, "[f]utility alone can justify the denial of a motion to amend."  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (cleaned up).  "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

The portion of the motion for leave that seeks to substitute in the two new U.K. Plaintiffs is futile in two distinct ways.  First, the U.K. Plaintiffs' claims are legally infirm and would be subject to dismissal in this proceeding or any other proceeding in a U.S. court.  Second, and independently, it is futile to add the U.K. Plaintiffs as named plaintiffs in this putative class action because the U.K. Plaintiffs cannot serve as class representatives of a class of U.K. Facebook users.

**A.   The amended complaint is futile because the U.K. Plaintiffs' claims are subject to dismissal.**

A "court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason." *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *18 (N.D. Cal. June 9, 2010) (cleaned up).  All of the U.K. Plaintiffs' claims are subject to dismissal for at least three reasons (for the non-common-law claims, there is a fourth reason as well).

**1.   The amended complaint is subject to dismissal under forum non conveniens because the U.K. Plaintiffs agreed not to bring suit in this Court.**

Facebook users in the United Kingdom are bound by a mandatory forum selection clause that requires them to bring any claims related to their use of Facebook in a non-U.S. court.  As a consequence, the U.K. Plaintiffs' claims would be "subject to dismissal" under the "forum non conveniens" doctrine, and their proposed amendment is futile.  *Finsa Portafolios, S.A. v. OpenGate Capital, LLC*, 769 F. App'x 429, 432 (9th Cir. 2019) (affirming district court's denial of leave to amend where amendment was futile on forum non conveniens grounds).

In April 2018, Facebook introduced new terms of service to all European users, including United Kingdom users (the "2018 Terms"), that prohibit U.K. Facebook users from bringing claims against Facebook in U.S. courts.[1]  Under the 2018 Terms:

> If you are a consumer and habitually reside in a Member State of the European Union, . . . you may resolve [any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products] in any competent court in that Member State that has jurisdiction over the claim. In all other cases, you agree that the claim must be resolved in a competent court in the Republic of Ireland . . . .

Declaration of Michael Duffey ("Duffey Decl."), Ex. 1 ¶ 4.  Under this contractual forum selection

---

[1]   In the United Kingdom, Facebook's platform and services are provided to Facebook users by Facebook Ireland Limited, an Irish company headquartered in Dublin that is a wholly owned subsidiary of Facebook, Inc. (the publicly traded Delaware corporation that is headquartered in Menlo Park, California).  *See* Duffey Decl. ¶¶ 3–4.

Gibson, Dunn & Crutcher LLP

clause, the U.K. Plaintiffs have no right to bring their claims in U.S. courts and instead must pursue those claims in either the United Kingdom or Ireland.  Declaration of Brian Kennelly Q.C. ("Kennelly Decl.") ¶¶ 71–73, 79–80.[2]

The U.K. Plaintiffs are bound by this forum selection clause.  Before 2018, the terms of service applicable to U.K. users contained a forum selection clause that laid venue in California.  *Id.* ¶¶ 74–75; Pretrial Order No. 20 (Dkt. 298) App'x A ¶ 16(1).  The 2018 Terms "supersede[d] any prior agreements" between the user and Facebook and provided for mandatory venue in either the United Kingdom or Ireland.  Duffey Decl., Ex. 1, ¶ 5.1.  Facebook introduced the 2018 Terms on April 19, 2018, and the 2018 Terms became effective on May 25, 2018.  *Id.* ¶ 6.  Facebook made some clarifying changes to the 2018 Terms on July 31, 2019 (the "2019 Terms"), but none of those changes modified the forum selection clause.  *See* Duffey Decl ¶ 7; *id.* Ex. 3 ¶ 4.  The 2019 Terms remain in effect for U.K. Facebook users.  *Id.*[3]

As part of its introduction of the 2018 Terms to all European Facebook users, including U.K. users, Facebook launched a "GDPR user engagement flow" that introduced the 2018 Terms and other updated policies to users in the Europe region.  Duffey Decl. ¶ 8.  When European (including U.K.) Facebook users logged onto Facebook, a banner was displayed in their News Feed (viewable on both desktop and mobile versions of the Facebook Service) which encouraged them to launch and complete the GDPR user engagement flow and accept the 2018 Terms by May 24, 2018.  *Id.*  The user engagement flow included a screen that was titled "Please accept our updated Terms to continue using Facebook" and contained text stating "By tapping I Accept, you accept the updated Terms.  If you don't want to accept the Terms, see your options" along with an "I Accept" button that users had to

---

[2]  The U.K. leaving the European Union (Kennelly Decl. at 27 n.24) has no impact on where the U.K. Plaintiffs may bring suit.  At all material times, if the U.K. Plaintiffs are consumer users, EU law (until December, 31, 2020) and laws in the U.K. (thereafter) allow them to bring claims in the courts of their own domicile (i.e., somewhere in the United Kingdom).  Otherwise, all claims must be brought in Ireland.  Kennelly Decl. ¶¶ 82–87.

[3]  The Court may consider the copies of the 2018 and 2019 Terms attached to the Duffey Declaration, as well as the declaration itself, because the Court is not limited to the contents of the pleadings when deciding a forum non conveniens argument.  *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1062 n.1 (N.D. Cal. 2003); *accord Tennecal Funding Corp. v. Sakura Bank*, 87 F.3d 1322 (table), 1996 WL 341957, at *1 (9th Cir. 1996) (mem.).

Gibson, Dunn &
Crutcher LLP

click to proceed.  Duffey Decl., Ex. 4.  A user who clicked on the link to see their options was offered, as an alternative to accepting the updated Terms, the opportunity to download all their data off Facebook and delete their account.  *Id.* ¶ 8.  There was no option to continue using Facebook after May 24, 2018, without accepting the 2018 Terms.  *See id.*[4]

The allegations in the proposed second amended complaint establish that the U.K. Plaintiffs assented to the 2018 Terms.  The Court held in its motion-to-dismiss order that Facebook users are bound by provisions in Facebook's terms of service if they had actual notice of the terms and agreed to them contemporaneously.  Pretrial Order No. 20 (Dkt. 298) at 25–26.  Both U.K. Plaintiffs allege that they joined Facebook before 2018.  Proposed Second Am. Compl. ¶¶ 77, 94.  Each also alleges that they remain active Facebook users and maintain their "account[s] to the present day."  *Id.*  Their continued use of Facebook evidences that they agreed to the 2018 Terms by clicking the "I Accept" button in the GDPR user engagement flow.  Duffey Decl. ¶¶ 8–9.  As a result, the U.K. Plaintiffs are bound by the 2018 Terms, including the provision therein requiring them to pursue claims against Facebook in Ireland (or, to the extent that they are consumer users, under applicable law that sits on top of the Terms, in the U.K.).  *E.g.*, *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 350 (Cal. Ct. App. 1972)).

The forum selection clause in the 2018 Terms applies to the claims that the U.K. Plaintiffs seek to assert in this case.  The 2018 Terms govern "any claim, cause of action, or dispute [that U.K. users] have against" Facebook that arises out of or relates to the Terms or the Facebook Products and expressly "supersede any prior agreements" between Facebook and its users, Duffey Decl., Ex. 1 ¶¶ 4, 5.1, including older versions of the terms of service that laid venue in California.  Thus, the forum selection clause in the 2018 Terms applies even to claims as to which "all the events underlying the claims occurred before the parties executed the agreement."  *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007); *see also* Kennelly Decl. ¶¶ 76–78.  Contracting parties are free to agree to a forum selection clause that applies to preexisting claims.  *See TradeComet.com LLC v.*

---

[4]  A screenshot of the screen in the GDPR user engagement flow that prompted users to accept the 2018 Terms is attached to the Duffey Declaration as Exhibit 4.  Facebook also launched a few other new policies in the U.K. at the same time, but Facebook did not require consent to or acceptance of any document other than the 2018 Terms.  Duffey Decl. ¶ 8.

4

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

*Google, Inc.*, 435 F. App'x 31, 34–35 (2d Cir. 2011) (applying California law and enforcing forum selection clause as to preexisting claims); *Coon v. Nicola*, 21 Cal. Rptr. 2d 846, 855 (Cal. Ct. App. 1993) (enforcing arbitration agreement that covered pre-agreement claims).  And that is precisely what the parties did here.

Because the U.K. Plaintiffs are contractually obligated not to pursue any claims against Facebook in U.S. courts, the proposed second amended complaint is subject to dismissal and therefore futile.  Where, as here, a forum selection clause selects a foreign forum, the "appropriate way to enforce" the clause is dismissal under "the doctrine of forum non conveniens."  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60, 66 n.8 (2013).  Courts in this District and throughout the Ninth Circuit routinely find that "dismissal is appropriate" when "enforcement of a forum selection clause calls for venue in a foreign court."  *Aimsley Enters. Inc. v. Merryman*, 2020 WL 1677330, at *5 (N.D. Cal. Apr. 6, 2020) (dismissing claims where forum-selection clause provided for courts in Mexico to adjudicate claims).[5]  And this makes sense: When "the parties' contract contains a valid forum-selection clause," the "calculus" looks different than a normal forum non conveniens analysis.  *Atl. Marine*, 571 U.S. at 63.  The "plaintiff's choice of forum merits no weight," any "arguments about public-interest factors . . . will rarely defeat" a forum-selection clause, and a "court . . . should not consider arguments about the parties' private interests."  *Id.* at 63–65.  "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.* at 63.

By their own agreement, the U.K. Plaintiffs cannot bring their claims in this Court.  The addition of the U.K. Plaintiffs is futile for this reason alone.  *See Finsa Portafolios*, 769 F. App'x at 432 (affirming denial of motion for leave to amend where claims were subject to dismissal under forum non conveniens).

---

[5]  *Accord Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160 (9th Cir. 2020) (affirming dismissal under forum non conveniens to enforce Australian forum-selection clause); *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661 (9th Cir. 2016) (same, as to German forum-selection clause); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988) (same, as to Italian forum-selection clause); *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 944 (S.D. Cal. 2019) (enforcing forum-selection clause that bound plaintiffs to bring claims "exclusively" in the "jurisdiction of England and Wales"); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *51 (N.D. Cal. Aug. 30, 2017); *Endonovo Therapeutics, Inc. v. New Paradigm Ventures, Inc.*, 2017 WL 3049560, at *3 (C.D. Cal. Jan. 5, 2017).

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

**2.      The amended complaint is subject to dismissal under a contractual choice-of-law provision that bars the U.K. Plaintiffs from bringing claims under U.S. law.**

The 2018 Terms also contain a mandatory choice-of-law clause that, by its terms, requires U.K. Facebook users to bring claims related to their use of Facebook under non-U.S. law:

> If you are a consumer and habitually reside in a Member State of the European Union, the laws of that Member State will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim") . . . .  In all other cases, you agree that . . . Irish law will govern these Terms and any claim, without regard to conflict of law provisions.

Duffey Decl., Ex. 1 ¶ 4.[6]  The "Facebook Products" include the Facebook platform and services at issue in this litigation (Duffey Decl. ¶ 7; *id.* Ex. 2), so the choice-of-law provision applies to the claims the U.K. Plaintiffs seek to pursue in this case.  *See, e.g.*, *Lavigne v. Herbalife, LTD*, 2019 WL 6721619, at *11 (C.D. Cal. Oct. 22, 2019); *see also* Kennelly Decl. ¶¶ 73, 76, 79, 80.[7]

This choice-of-law provision is enforceable.  Under both California and federal law, there is a strong policy in favor of enforcing choice-of-law clauses as long as (1) the chosen law has a substantial relationship to the parties or their transaction and (2) applying the chosen law would not contravene any fundamental public policy.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194–95 (N.D. Cal. 2012).  That Facebook Ireland—the party with whom the U.K. Plaintiffs contracted, *see supra* note 1—is an Irish company "is sufficient to establish a substantial relationship between" Ireland and the parties, and the fact that the U.K. Plaintiffs are residents and citizens of the U.K. would establish a substantial relationship with the U.K.  *Hatfield*, 564 F.3d at 1183.  And applying U.K. or Irish law would not contravene any fundamental California policy.  Just the opposite—both U.K. and Irish law provide the U.K. plaintiffs with a robust set of privacy and data-protection rights.  *See* Kennelly Decl. ¶¶ 6–70.

---

[6]   To the extent the U.K. Plaintiffs are consumer users, under applicable EU and UK law they may also be able to bring certain claims under English (or, where relevant, Scots) law.  *See* Kennelly Decl. ¶ 87.

[7]   The Court may consider the choice-of-law clause in the 2018 and 2019 Terms because those Terms are a contract between Facebook and the U.K. Plaintiffs and the contract is incorporated by reference into the proposed amended complaint in a variety of ways (most notably, because the U.K. Plaintiffs have pleaded a claim for breach of contract).  *See* Pretrial Order No. 20 (Dkt. 298) at 23 n.12; *accord Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018).

Gibson, Dunn &
Crutcher LLP

6

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

Because the U.K. Plaintiffs contractually agreed not to bring claims against Facebook under U.S. law, the amended complaint—which pleads claims on their behalf exclusively under U.S. law—is subject to dismissal.  This Court routinely dismisses claims brought under one state's law when a choice-of-law provision renders that state's law inapplicable.  *E.g.*, *Gaby's Bags, LLC v. Mercari, Inc.*, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020) (where a mandatory choice-of-law provision selects one state's law, claims under another state's law "are extinguished"); *accord Palomino v. Facebook Inc.*, 2017 WL 76901, at *2–*5 (N.D. Cal. Jan. 9, 2017); *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *5 (N.D. Cal. Mar. 26, 2014); *Audio Mktg. Servs., S.A.S. v. Monster Cable Prods., Inc.*, 2013 WL 633202, at *5 (N.D. Cal. Feb. 20, 2013).  And when a choice-of-law clause chooses foreign law, claims under federal law are subject to dismissal as well.  *See, e.g.*, *Richards v. Lloyds of London*, 135 F.3d 1289, 1292–94 (9th Cir. 1998) (en banc); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360–61 (2d Cir. 1993); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 954–55 (10th Cir. 1992).

In short, the U.K. Plaintiffs' claims under U.S. law are barred by contract.  Their attempt to bring U.S. law claims in the proposed second amended complaint is futile.  *See Palomino*, 2017 WL 76901, at *5 ("Any amendment would be futile" where claims are barred by a choice-of-law provision).

### 3. The complaint is subject to dismissal under the doctrine of international comity.

The U.K. plaintiffs' claims are also subject to dismissal under the international comity doctrine. International comity—specifically, adjudicatory comity—"is a doctrine of prudential abstention" under which a U.S. court will dismiss a civil action when it concludes that the dispute is "properly adjudicated" by a court "in a foreign state." *Mujica v. AirScan Inc.*, 771 F.3d 580, 598, 599 (9th Cir. 2014) (quotation marks omitted).  Courts consider three factors when "deciding whether to abstain from exercising jurisdiction due to a past or potential judicial proceeding elsewhere":  (1) the domestic interest in the dispute; (2) the strength of the foreign sovereign's interest in the dispute; and (3) the adequacy of the alternative forum.  *Id.* at 600–01, 603.

Here, the domestic interest is minimal.  Although California may have an interest in regulating companies located in California, the Facebook platform and services were and are provided to the U.K. Plaintiffs by Facebook Ireland.  *See supra* note 1.  California's "general interest in good corporate

Gibson, Dunn &
Crutcher LLP

7

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

behavior . . . should not be overstated[] given that Plaintiffs are not California citizens" and that Face-book Ireland "is not a California resident corporation." *Mujica*, 771 F.3d at 610 (citing *Saleh v. Titan Corp.*, 580 F.3d 1, 12 (D.C. Cir. 2009)).

Meanwhile, the foreign interests are strong. The proposed U.K. Plaintiffs are governed by an entirely different privacy-law scheme than the U.S. plaintiffs. Before the GDPR's enactment in 2018, the U.K. Plaintiffs' privacy rights were primarily governed by Data Protection Act 1998, which implemented a European directive and provided a "significant number of rights in relation to [] personal information." Kennelly Decl. ¶¶ 28–39. Now, the U.K. Plaintiffs benefit from protections related to the processing of their personal data under the GDPR, which controls how personal data is processed to protect the rights of individuals in the European Union. *Id.* ¶¶ 7–27. The GDPR "is a comprehensive framework" that is designed to protect European Union citizens (which protection still extends, as a matter of law, to the U.K. Plaintiffs) and "their right to the protection of personal data." European Comm'n Amicus Br. 8, *United States v. Microsoft Corp.*, No. 17-2 (U.S. Dec. 13, 2017). It creates a wide range of rights, Kennelly Decl. ¶ 8, and confers a number of different remedies, *id.* ¶¶ 9–13. These protections have been incorporated into U.K. and Irish law. *Id.* ¶¶ 14–27. Equitable, tort, constitutional, and statutory claims are also available. *Id.* ¶¶ 45–70. This comprehensive constellation of rights and remedies embodies the U.K.s' significant interest in providing protection to, and allowing enforcement of, its citizens' rights to privacy and data protection.

Finally, the U.K. provides an adequate alternative forum to the U.S., as federal courts have repeatedly found. *See, e.g.*, *Warn v. M/Y Maridome*, 169 F.3d 625, 629 (9th Cir. 1999). And foreign plaintiffs' choice of forum deserves little deference, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981), especially where, as here, they seek to "represent[] a class" as the named plaintiff, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

All told, these factors show that the Court should "decline to exercise jurisdiction" over the U.K. Plaintiffs' claims because those claims are "properly adjudicated in a foreign state." *Mujica*, 771 F.3d at 599 (dismissing foreign plaintiffs' California claims against California corporation).

Gibson, Dunn &
Crutcher LLP

8

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

**4.      The constitutional and statutory claims are subject to dismissal because they arise under laws that do not apply extraterritorially.**

Finally, even though the Court has dismissed several of Plaintiffs' claims and substantially narrowed several others, the substance of the proposed second amended complaint is unchanged.[8] Nonetheless, the revised pleading should be read in view of the Court's motion-to-dismiss order, which leaves only the following prioritized claims alive in the case: one California constitutional claim (right to privacy), two claims under federal statutes (the Stored Communications Act ("SCA") and the Video Privacy Protection Act ("VPPA")), one California statutory claim (for deceit by concealment or omission), and a smattering of California common law claims.  As residents of a foreign country, the U.K. Plaintiffs do not have standing to bring the constitutional and statutory claims.  As to those claims, the proposed second amended complaint is futile.[9]

"As the party advocating for the application of" the law of a jurisdiction other than their own, the U.K. Plaintiffs "must make at least [a] prima facie showing that the [other states' laws] appl[y] to [them] such that [they] would have standing to bring that claim." *Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015).  The U.K. Plaintiffs have not made, and cannot make, that showing.

Start with the constitutional claim.  International plaintiffs who neither reside nor own property in the United States lack standing to bring constitutional claims against U.S. defendants, even if a U.S. plaintiff could do so.  *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 285 (D.C. Cir. 1989) (international plaintiffs lacked standing to bring First Amendment claim against U.S. agency); *Al Haramain Islamic Found., Inc. v. Dep't of Treasury*, 686 F.3d 965, 984 (9th Cir. 2012) ("a foreign entity without property or presence in this country has no constitutional rights" (quotation marks

---

[8]   The Court would be within its discretion to deny Plaintiffs' motion for leave without prejudice to Plaintiffs' refiling the motion with a proposed second amended complaint that conforms to the Court's motion-to-dismiss ruling.  *See, e.g.*, *Loos v. Immersion Corp.*, 762 F.3d 880, 890-91 (9th Cir. 2014); *Zbitnoff v. NationStar Mortg. LLC*, 2014 WL 2119875, at *2 (N.D. Cal. May 21, 2014).

[9]   Although this Court denied a motion to dismiss based on standing, the Court noted that Facebook "d[id] not single out any particular named plaintiff" at that stage, and acknowledged that it was "possible that a few of the named plaintiffs have not" "adequately alleged standing."  Pretrial Order No. 20 (Dkt. 298) at 17 n.6.  The Court confirmed that "Facebook will be given an opportunity to knock out individual named plaintiffs on standing grounds at a later stage."  *Id.*  The U.K. Plaintiffs' particularized standing problems are squarely raised now.

Gibson, Dunn &
Crutcher LLP

omitted)); *see also Gottlieb v. Wiles*, 143 F.R.D. 235, 237 n.2 (D. Colo. 1992) ("It is questionable whether Cal. Const., art. I, sec. 1 bestows privacy rights on nonresidents of the state.").

The federal statutory claims run headlong into the presumption against extraterritoriality. A plaintiff "must show that he actually had rights under [a statute] to begin with before he has standing to claim [that a defendant] violated those statutory rights." *Harris*, 2015 WL 4694047, at *6. And federal statutes are "meant to apply only within the territorial jurisdiction of the United States" absent "affirmative intention of the Congress clearly expressed" in the statute's text. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quotation marks omitted).

Numerous courts have held that "the SCA does not apply extraterritorially." *United States v. Lugo Morales*, 2019 WL 1561901, at *2 (E.D. Tex. Mar. 21, 2019), *R&R adopted*, 2019 WL 1560439 (E.D. Tex. Apr. 10, 2019); *In re Warrant to Microsoft Corp.*, 829 F.3d 197, 210 (2d Cir. 2016), *rev'd on other grounds*, *United States v. Microsoft Corp.*, 138 S. Ct. 356 (2017); *In re Search Warrant Issued to Google, Inc.*, 264 F. Supp. 3d 1268, 1271–72 (N.D. Ala. 2017) (collecting cases holding same).

The VPPA likewise contains no textual indications that it applies abroad. The statutory text provides that a "video tape service provider may disclose personally identifiable information concerning any consumer" only with the consumer's "informed, written consent." 18 U.S.C. § 2710(b)(2)(B). This language lacks a "clear indication of an extraterritorial application" and thus "it has none." *Morrison*, 561 U.S. at 255. And while the VPPA applies to persons engaged in "foreign commerce," 18 U.S.C. § 2710(a)(4), the Supreme Court has "emphatically rejected reliance on such language, holding that even statutes that expressly refer to 'foreign commerce' do not apply abroad," *RJR Nabisco Inc. v. European Cmty.*, 136 S. Ct. 2090, 2110 (2016) (cleaned up).

The same is true of the state-law claim for deceit under Cal. Civ. Code §§ 1709–10. The California Supreme Court "presume[s] the Legislature did not intend a statute to be operative" abroad "unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011). Neither section 1709 nor section 1710 contains any indication of extraterritorial reach. The presumption against extraterritoriality therefore applies, especially since the California legislature has "expressly provided for extraterritorial application" in *other* statutes, making its failure to do so here

Gibson, Dunn & Crutcher LLP

10

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC

"doubly telling."  *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 12942824, at \*5 (N.D. Cal. May 3, 2012); *see, e.g.*, *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) (applying the presumption against extraterritoriality to claims under the UCL); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1081–83  (N.D. Cal. 2014) (named plaintiffs lacked standing to assert claims under statutes enacted by states where named plaintiffs did not reside or suffer injury); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (same).

The U.K. plaintiffs—who allegedly suffered privacy harms in another country—cannot bring claims under federal and state laws that do not apply outside this country's borders.  "Absent an enforceable right" under the constitutional and statutory provisions they seek to invoke, they have not "suffered a claim-specific injury" sufficient to confer standing.  *Harris*, 2015 WL 4694047, at \*6.

**B.     The amended complaint is futile because the U.K. Plaintiffs cannot serve as class representatives for a class of U.K. Facebook users.**

In the class-action context, a court may also deny a motion for leave to amend "where even with the amendment class certification should be denied."  *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at \*7–\*8 (N.D. Cal. July 25, 2008) (denying a "motion to add a named Plaintiff" where the addition would not overcome the "substantial flaws" with class certification); *accord Rodriguez v. Instagram, LLC*, 2013 WL 3732883, at \*3 (N.D. Cal. July 15, 2013) (denying motion to amend on futility grounds "where plaintiff's overreaching will almost certainly be denied at the class certification stage").  The U.K. Plaintiffs cannot represent a class of other U.K. Facebook users because certification of such a class would violate the Due Process Clause and Federal Rule of Civil Procedure 23.

**1.     A class-action judgment in favor of Facebook likely would not have binding, preclusive effect on absent U.K. class members.**

A class of Facebook users in the U.K. cannot be certified because it is more likely than not that a class-action judgment in this case would not be binding on absent class members in the United Kingdom.  Certifying a class of U.K. residents thus would create a serious risk of a U.K. class member losing in this litigation only to later reassert their claims in a U.K. court, creating a "heads I win, tails you lose" situation.

Procedural due process requires the judgment in a class action to be equally binding on all parties:  "[I]f defendants prevail against a class they are entitled to a victory no less broad than a defeat

would have been." *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975), *abrogated on other grounds by Morrison*, 561 U.S. 247.  Likewise, Rule 23 does not "allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).

This requirement means a class whose members reside abroad should not be certified if those absent class members live in a country whose "law does not bar relitigation if defendants prevail in a class action lawsuit." *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 459 (S.D.N.Y. 1989) (denying class certification of British plaintiffs because "a British court will not recognize a foreign judgment in a United States 'opt-out' class action"); *accord Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 8679353, at *9 (D. Haw. Jan. 8, 2016) ("*res judicata* concerns" can preclude class certification if "a foreign court may not honor a domestic class judgment in a defendant's favor.").   In light of the potential for "'heads I win; tails you lose' asymmetries" in transnational class actions, the "trending approach of federal courts nationwide" is toward "evaluating the *res judicata* effects of class judgments with respect to groups of foreign plaintiffs and then excluding from the class those whose home countries would not honor a class judgment from the United States." *Willcox*, 2016 WL 8679353, at *9 (collecting cases); *see, e.g.*, *Bersch*, 519 F.2d at 996–97 (dismissing claims of non-U.S. residents where the evidence established that their home countries "would not recognize a United States [class-action] judgment in favor of the defendant as a bar to an action by their own citizens"); *Gbarabe v. Chevron Corp.*, 2017 WL 956628, at *35–*36 (N.D. Cal. Mar. 13, 2017) (same).

As explained in the attached Rule 44.1 affidavit of Brian Kennelly, it is "likely" that a U.K. court would determine that a class-action judgment in favor of Facebook in this case was not binding on absent class members and did not preclude them from bringing a second round of claims in the U.K. Kennelly Decl. ¶ 102.  This is true for two main reasons.[10]

First, under both English and Irish law, "for a foreign judgment to be treated as having a preclusive effect, the parties must be *identical* to the parties in the English action."  Kennelly Decl. ¶ 103 (emphasis added); *see id.* ¶ 107.  Here, that requirement creates problems on both sides of the

---

[10]   For similar reasons, it is unlikely that a U.K. court would find that subsequent litigation in the United Kingdom was barred as an abuse of process.  Kennelly Decl. ¶¶ 95–98, 105.

"v." On the defense side, the entity with whom U.K. Facebook users have a contractual relationship—Facebook Ireland, *see supra* note 1—is not a defendant in this action, so absent class members likely would not be precluded from bringing a second round of claims against Facebook Ireland.  On the plaintiff side, English and Irish law do not recognize opt-out class actions except in the context of competition law damages actions.  The Group Litigation Order system "requires parties to consent to involvement in the proceedings."  *Id.* at 34 n.34.  And under that system, "a represented person"—i.e., an absent class member who did not affirmatively opt into the class in a U.S. class action—"is not a party to the claim."  *Id.* ¶ 103 (quotation omitted).  As a consequence, it is unlikely that U.K. law would give Facebook "res judicata protection against class members in an 'opt-out' kind of class."  *CL-Alexanders*, 127 F.R.D. at 455 (denying certification of a class including U.K. plaintiffs); *accord Ansari v. New York Univ.*, 179 F.R.D. 112, 116–17 (S.D.N.Y. 1998).  Decisions from U.S. courts concluding otherwise have drawn criticism from U.K. legal scholars.  *See* Rachael Mulheron, *The Recognition, and* Res Judicata *Effect, of a United States Class Actions Judgment in England: A Rebuttal of* Vivendi, 75 Mod. L. Rev. 180, 210 (2012) (rebutting *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016) and similar cases and concluding that "a US class action judgment/settlement, which purports to bind [absent class members], would not be recognised by an English court, nor would it be given preclusive *res judicata* effect, if one (or a group) of those [class members] sought to re-litigate the same grievance against the same defendant in an English court.").

Second, *res judicata* would apply only if "the issues in dispute" in later litigation in the U.K. were "materially the same" as the issues in dispute in this case.  Kennelly Decl. ¶ 105.  But privacy rights in the U.K. flow from a set of laws that is fundamentally different from the American laws at issue in this case.  Kennelly Decl. ¶¶ 6–70; *see also* Allison Amatuzzo, *Wherever We Go, We Leave A Trail*, 7 Penn St. J.L. & Int'l Aff. 489, 493 (2019) ("the American and United Kingdom approaches to privacy differ").  This case involves a number of common-law claims, but in "English law, privacy never achieved the status of a common law right."  Erin F. Delaney, *Judiciary Rising: Constitutional Change in the United Kingdom*, 108 Nw. U. L. Rev. 543, 590 & n.275 (2014); *accord* Kennelly Decl. ¶ 6 ("There is no single overarching right to privacy or data protection under the English or Irish common law.").  Instead, "[t]he majority of the rights are provided under EU and domestic legislation governing data protection."

Kennelly Decl. ¶ 6.  The "centerpiece" of this "regulatory framework" is the GDPR, *id.* ¶ 7, which provides a robust, intricate set of rights and protections (*id.* ¶¶ 8–13).  These protections—and those available under other "data protection legislation that is in place in England and Ireland"—are "materially different in scope and effect than any of the causes of action pursued in the MDL." *Id.* ¶ 105.  As a result, it is more likely than not that a U.K. court would conclude that the issues being litigated in this case are not materially the same as the issues that would be litigated in follow-on U.K. litigation. *Id.*

Because a U.K. court likely would conclude that a judgment in favor of Facebook in this case did not preclude absent U.K. class members from bringing suit against Facebook in the U.K., allowing the U.K. Plaintiffs to represent a class of U.K. Facebook users would violate due process and Rule 23.

**2.      Adding U.K. Plaintiffs would insulate some class members from discovery and trial testimony because they are outside this Court's subpoena powers.**

Due process guarantees the right to "present every available defense."  *Lindsey v. Normet*, 405 U.S. 56, 66 (1972); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (the Rules Enabling Act "forbids interpreting Rule 23 to 'abridge . . . or modify any substantive right'"). Discovery is essential to the presentation of any defense grounded in fact, so in federal court "each party" to civil litigation "has the right to the discovery" of relevant, nonprivileged, and proportional materials.  *Harris v. Best Buy Stores, L.P.*, 2016 WL 6024556, at *1 (N.D. Cal. Oct. 14, 2016).  And discovery must be sufficient to allow each party "a fair opportunity to present" its claims and defenses. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *see Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 995 (C.D. Cal. 2010).

Allowing the U.K. Plaintiffs to serve as representatives of a class of U.K. Facebook users would thwart Facebook's right to adequate discovery because this Court lacks the power to subpoena "foreign nationals living abroad." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009); *see* 28 U.S.C. § 1783; Fed. R. Civ. P. 45(b)(2)–(b)(3).  That would mean that "the only class member testimony at trial" would be from "witnesses plaintiff wants or is able to proffer." *Gbarabe*, 2017 WL 956628, at *36 (compelled trial testimony is unavailable).

This lack of subpoena power would also hamstring document discovery.  The Hague Convention procedures for taking evidence abroad subject the "court hearing a case involving a

national of a contracting state to the internal laws of that state," which can interfere even with routine "document requests." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 539 (1987).  English courts have consistently held that they cannot make orders for discovery that go beyond what is permitted under English law, which is much narrower than U.S. law.  Kennelly Decl. ¶¶ 110–11.  Indeed, the statute that implements the Hague Evidence Convention in the U.K. effectively prohibits a U.K. court from ordering a U.K. resident to respond to the types of requests for production of documents that are the bread-and-butter of U.S. pretrial discovery.  *See id.* ¶ 112.

"[C]lass actions may 'achieve economies of time, effort, and expense,' but only when those goals can be achieved 'without sacrificing procedural fairness or bringing about other undesirable results.'" *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *4 (E.D. Cal. May 28, 2009) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).  Plaintiffs should not be permitted to build a case against Facebook using this Court's full discovery powers, then inflate the potential damages by adding U.K. class members, but shield those class members from discovery and appearance at trial.

## III.   CONCLUSION

For all of these reasons, Facebook asks the Court to deny the portion of Plaintiffs' motion for leave to file a second amended consolidated complaint that seeks to add two new U.K. Plaintiffs.

Gibson, Dunn &
Crutcher LLP

15

Defendant Facebook, Inc.'s Opposition to
Plaintiffs' Motion for Leave to File Second Amended Consolidated Complaint – Case No. 3:18-md-02843-VC

DATE:  May 19, 2020              Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/  Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED COMPLAINT – CASE NO. 3:18-MD-02843-VC