Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE

IN RE:  FACEBOOK, INC. CONSUMER          )
PRIVACY USER PROFILE LITIGATION          )
                                         ) No. 18-MD-2843 VC (JSC)
                                         )
                                         ) San Francisco, California
                                         ) Friday
                                         ) May 29, 2020
_____  ) 1:00 p.m.

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE**

**APPEARANCES**:

**For Plaintiffs:**          BLEICHMAR FONTI & AULD LLP
                             555 12th Street
                             Suite 1600
                             Oakland, California 94607
                     BY:  **LESLIE ELIZABETH WEAVER, ESQ.**
                          **ANNE KATHLEEN DAVIS, ESQ.**
                          **MATTHEW MONTGOMERY,ESQ.**
                          **ANGELICA ORNELAS, ESQ.**


                             KELLER ROHRBACK LLP
                             1201 Third Avenue
                             Suite 3200
                             Seattle, Washington 98101
                     BY:  **DEREK WILLIAM LOESER, ESQ.**
                          **DAVID J. KO, ESQ.**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

1  <u>APPEARANCES:   (CONTINUED)</u>

2

3  **For Defendants:**          GIBSON DUNN AND CRUTCHER LLP
                               200 Park Avenue
4                              New York, New York 10166
                        BY:  **ORIN SNYDER, ESQ.**
5

6                              GIBSON DUNN AND CRUTCHER LLP
                               1881 Page Mill Road
7                              Palo Alto, California 94304
                        BY:  **MARTIE P. KUTSCHER, ESQ.**
8

9                              GIBSON DUNN AND CRUTCHER LLP
                               2100 McKinney Avenue.
10                             Suite 1100
                               Dallas, Texas 75201
11                      BY:  **RUSSELL HARRIS FALCONER, ESQ.**

12                            —   —   —

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**Friday - May 29, 2020**</u>                                      <u>**1:02 p.m.**</u>

<u>P R O C E E D I N G S</u>

---oOo---

THE CLERK:  Calling Civil Action 18-MD-2843, In Re
Facebook, Inc. Consumer Private User Profile Litigation.

Counsel, starting with plaintiffs, please state your
appearance for the record.

MR. LOESER:  Good afternoon, Your Honor.  Derek
Loeser from Keller Rohrback.

MS. WEAVER:  Good afternoon.  Leslie Weaver from
Bleichmar Fonti also for plaintiffs.

MR. KO:  Good afternoon, Your Honor.  David Ko on
behalf of plaintiffs.

MR. MONTGOMERY:  Good afternoon, Your Honor.  Matthew
Montgomery for plaintiffs with BFA.

MS. DAVIS:  And Anne Davis also with BFA and also for
plaintiffs.

MS. ORNELAS:  Good afternoon, Your Honor.  Angelica
Ornelas also from BFA and for plaintiffs.

(Brief pause.)

THE CLERK:  Mr. Snyder, you're muted.

MR. SNYDER:  Sorry.  Orin Snyder, Martie Kutscher and
Russ Falconer from Gibson Dunn for Facebook.  Good afternoon,
Your Honor.

THE CLERK:  You just want to hold on a second?

 1            **THE COURT:**  Good afternoon.  Can you hear me?

 2            **THE CLERK:**  Yes.

 3       We lost your video.  There you go.

 4       (Brief pause.)

 5            **THE CLERK:**  Judge, can you hear us?  We can hear you.

 6            **THE COURT:**  Okay.  I can't hear you, so I'm going to

 7    turn my computer off and turn it back on again.

 8            **THE CLERK:**  Okay.

 9       (Brief pause.)

10            **THE COURT:**  All right.  Welcome, everyone.  Thank you

11    for your statements and for working so hard.

12       So having read it, I think there are some things we should

13    discuss and, of course, set new dates and a new hearing date.

14    I see you came up with the schedule with respect to the

15    custodians, but then the plaintiffs said that they agreed on

16    the schedule on the condition that you agree to a protocol and

17    information exchange.

18       So I didn't know what that means.  Do we need to set a

19    deadline for that so that the other schedule stays on track?

20            **MR. LOESER:**  Your Honor, Derek Loeser for the

21    plaintiffs, and happy Friday, and thank you again for fitting

22    us into your schedule.

23       We did make progress.  I think it's maybe cause for

24    celebration that these parties managed to submit an actual

25    joint statement.  So we hope you appreciate that.  And we will

1    take our accomplishments, small as they may be, in stride here.

2         It is a -- you know, these are kind of baby steps.  And I

3    think Your Honor is exactly right that what's missing right now

4    is -- and what plaintiffs noted in the statement are some

5    deadlines that would attach themselves to these different

6    custodian groups that have been presented to you.

7         We have made a proposal to Facebook that would include

8    deadlines for search term agreement for the different groups

9    and, also, deadlines for the beginning of rolling production

10   for those different groups.

11        We've also made an agreement with Facebook on when they

12   are going to respond to our proposal.  And so what will happen

13   is they have until next Wednesday to respond.  We have agreed

14   to meet-and-confer on Thursday.  And then on Friday we'll

15   either have an agreement or we will present to you the

16   competing proposals.

17        One thing I would like to suggest for that is it doesn't

18   really seem like something that should require a lot of

19   briefing.  I mean, if we don't have an agreement, it will be

20   our proposal with dates and their proposal with dates.  And we

21   think what might make sense is just to give you the two

22   proposals.  And, again, really hoping there is agreement.  But

23   if not, and you can decide.  And we're available if you want to

24   have a quick call or something.  If that works, we can just

25   quickly wrap that issue up.

 1          THE COURT:  Yeah.  I think that might be something
 2    easier to do in a conference.
 3          MS. KUTSCHER:  Yeah.  And we in large part agree with
 4    that.
 5      I would just like to request that there is at least some
 6    space for explanation, because there might be some reasons why
 7    we would propose one thing and they would propose a different
 8    thing.  And we wouldn't need lengthy briefing, but I think we
 9    should at least be able to explain a little bit why we might be
10    proposing something different.
11          THE COURT:  I mean, I don't know --
12      (Audio interference.)
13          THE COURT:  Is it better now?
14      We can have a hearing on that.  Maybe the best way to do
15    it is just have you explain it orally.
16          MS. KUTSCHER:  That's fine.  As long as there is
17    space for some explanation at some -- in some form.
18          MS. WEAVER:  And to clarify, Your Honor, what we had
19    sent over to Facebook is an actual form that lays out what
20    we're seeking.  So they would propose search terms and provide
21    hit reports or some kind of data analytics, and then we would
22    respond.  And it could be some kind of form that we could
23    exchange on a rolling basis for each RFP identifying proposed
24    terms.  And that's what we proposed to them, but they needed
25    time to talk to their clients.

1       So we could submit those to Your Honor by Friday at

2  10:00 a.m. perhaps, and you can look at them, and then we can

3  talk about them.  That's what we were envisioning.  At least

4  plaintiffs were envisioning.  We had talked about exchanging

5  something like that with Facebook, so.

6       **THE COURT:**  All right.  So what should we do today,

7  or what should I do today?  Should we --

8       **MR. SNYDER:**  Have a cocktail?

9       (Laughter.)

10       **THE COURT:**  So maybe -- we have a plan and maybe what

11  we need is a date then for our next hearing.  And if we were to

12  schedule something -- I'm actually doing a staycation that

13  week, but we can do something on that Thursday at 9:00 a.m.

14       **MS. KUTSCHER:**  Is that Thursday the 11th or the 4th?

15       **THE COURT:**  The 11th; right?  Because it's the

16  following Friday that you would have something to me.  So

17  Thursday, the 11th --

18       **MS. WEAVER:**  No.  Actually, Your Honor -- actually,

19  we were thinking this coming -- because we gave Facebook our

20  proposal this Wednesday.

21       **THE COURT:**  Isn't today Friday?

22       **MS. WEAVER:**  No, A week from -- sorry.  We gave them

23  our proposal last Wednesday.  They were going to get back to us

24  this coming Wednesday.  And then we would confer on the

25  Thursday, and we could get you something on Friday.  But we

1   could, if Facebook is willing, move it back by a day.

2       So maybe they could get back to us on Tuesday, and we

3   confer Wednesday, and then we could submit something to you

4   Thursday, next Thursday.

5           **THE COURT:**  But I'm proposing we get together on

6   Thursday, the 11th.

7           **MS. WEAVER:**  Okay.  That's two weeks out.

8           **THE COURT:**  Exactly.

9           **MR. SNYDER:**  That's fine, Judge.

10          **MS. KUTSCHER:**  That's fine.

11          **THE COURT:**  Does that leave enough time on your

12  schedule?

13          **MR. SNYDER:**  Yes, Your Honor.

14          **THE COURT:**  If you get it to me by the 4th -- the

15  5th?

16          **MS. WEAVER:**  Yes, yes.  I think the concern we might

17  have about that is that that bumps -- like, one of the first

18  deadlines that we agreed to was June 10th, but we agreed to

19  that date without having the substantive piece that plaintiffs

20  are really looking for.

21          **THE COURT:**  You don't want to wait.  I see.  I see.

22  So let me look at my thing, what I have on the 5th.

23          **MS. KUTSCHER:**  If it makes plaintiffs more

24  comfortable, I don't foresee there being major issues with the

25  template we're talking about.  And I think that's the major

1   thing that would affect the timing for the 10th.  So I don't

2   imagine that we're really going to have an issue there.

3        So if that's the source of the concern with the date, that

4   Judge Corley is proposing, I don't think that that should be a

5   problem.

6            **MS. WEAVER:**  It seems like the other issue, impasse

7   that was important for plaintiffs is that we had proposed that

8   Facebook begin a rolling production on July 3rd, and we don't

9   have agreement on that.  And we had proposed they begin

10  July 3rd with productions every two weeks following that.

11       I mean, the schedule that we've agreed to is every,

12  frankly, extended.  It's a four-month period of them conferring

13  with the custodians.  We're trying to be respectful of

14  scheduling for the custodians themselves, but it does seem like

15  we should be able to start getting documents in a rolling

16  fashion.

17           **THE COURT:**  Why don't we do this?  Why don't we set

18  aside Friday June 5th at 2:00 p.m.  Only if needed; right?

19  Because we're hopeful that you will come to an agreement on

20  your protocol and information exchange.  So only if needed.

21           **MS. WEAVER:**  Great.  Thank you, Your Honor.

22           **THE COURT:**  You can then submit it to me by Friday at

23  noon.  I'll just review it in real time and we'll have a

24  discussion; right?

25       I don't want briefing.  Then we'll have a discussion at

```
 1   2:00 o'clock by video, if needed.   If needed.

 2              MR. LOESER:  And, Your Honor, we're really hoping

 3   that our joint statement will become a streak, and we'll have

 4   two in row.

 5              THE COURT:  I see major improvement, major

 6   improvement.

 7         That's fine.  It's all great.  It's complicated.  It's a

 8   big, complicated case.

 9         So which leads me to, let me give you -- so for the

10   privilege log protocol, should have a deadline for that for you

11   to come to an agreement or not?

12              MS. WEAVER:  Yes, please.

13              THE COURT:  Okay.  And you guys are in the best

14   position to tell me what that deadline should be.

15              MR. KO:  Your Honor, this is David Ko on behalf of

16   plaintiffs.

17         I really think that deadline should be sooner rather than

18   later.  And I would suggest no later than two weeks from now.

19   And the reason I say that is because there are already, you

20   know, documents that have been produced by Facebook and we

21   expect substantial productions to occur.

22         You know, today there's a few deadlines that the parties

23   have agreed on that Facebook will proceed for RFPs that don't

24   require search terms, and there's several more coming in the

25   near future.  So there are, you know, based on what we can
```

1    tell, hundreds if not thousands of documents that have already

2    been identified as redacted and withheld.  So we just need to

3    be able to get a grasp on the privilege log sooner rather than

4    later before it gets too out of hand.

5         **THE COURT:**  And this is what?  What the form of the

6    privilege log would be?  Is that what we're talking about?

7         **MR. KO:**  Yes, Your Honor.  The form and, also, the

8    deadline for when Facebook -- you know, obviously it goes both

9    ways, but for when the parties would produce the privilege log.

10        **MR. SNYDER:**  This is Mr. Snyder.  Hi.

11        I think there's a fundamental disagreement at this point,

12   which maybe we can resolve, about whether we should, at the end

13   of the case as usual, produce privilege logs or whether, as

14   plaintiffs have suggested, there be serial -- seriatim separate

15   privilege logs either attached to each production or otherwise.

16   We've told the plaintiffs that we'll discuss the issue over the

17   next several weeks, and we'll either come to an agreement or

18   present it to Your Honor for consideration.

19        **THE COURT:**  When you say "as usual at the end of the

20   case" that's not my experience, "as usual."  The rule requires

21   that it be done within a certain amount of time and with

22   production.  So let me give you that guidance.

23        **MR. KO:**  Your Honor, what we've noted from

24   Facebook as well, just -- obviously, your standing order

25   indicates that the parties should produce protective logs 14

1   days after production, so we've noted that.

2        And I think, you know, they have noticed the practical

3   difficulty.  We're willing to be flexible with something that

4   makes sense, but I do think we need to have a privilege log

5   deadline.

6        **THE COURT:**  14 days is probably too short given the

7   volume of documents that are being produced.  But why shouldn't

8   I give you a deadline of two weeks to figure out if you can

9   come to agreement?

10        **MR. SNYDER:**  That's great, Judge.

11        **MS. KUTSCHER:**  Sure.

12        Just for context, we did litigate this issue before Judge

13   Chhabria previously, and he had rejected plaintiff's proposal

14   that we produce privilege logs within 30 days of each

15   production saying that was not enough time.

16        So I think that's sort of the starting point for this

17   conversation.

18        **THE COURT:**  Okay.  Definitely.  I'm not -- as much as

19   I would love to reconsider Judge Chhabria, I'm not going to do

20   that.

21        **MR. LOESER:**  There is a lot of no comments.

22        **THE COURT:**  Okay.  So just some other little guidance

23   that will help you in your discussions.

24        The issues about the interrogatories.  The default of 25

25   applies to every federal case, including a little FCRA case

 1   where there's $2,000 at stake.  This is a big case, big case.

 2   So probably not even -- I mean, if the plaintiffs propose 75,

 3   take it.  And then if within that 75 there is something that's

 4   really burdensome or not appropriate as an interrogatory, it

 5   seems to me that's where the discussion and the debate should

 6   be, as opposed to the number; right?

 7        The plaintiffs I don't think will make up interrogatories

 8   to get to that 75.  I would think they're going to have to

 9   eliminate a great deal.  But even within that 75 you may have

10   objections that they are not appropriate or too burdensome or

11   something.

12        I mean, that's not a ruling.  I'm just giving you my

13   reaction to that.

14        I don't have any reactions to anything else, other than I

15   guess you're going to talk about briefing a privilege issue on

16   some documents that have -- that Facebook contends are

17   privileged that are not search term documents.  So whatever you

18   guys decide about when to present that to me, that's fine.

19            **MR. LOESER:**  And, Your Honor, that may be one

20   where -- I mean, Facebook's position is that it's premature to

21   consider briefing, and ours is we think it's not.

22        So the first fight will simply be when should that be

23   presented to Your Honor, and this may be one of those where you

24   get two different dates.

25            **THE COURT:**  Okay.  So let me preview something.

1  Often privilege disputes, the letter brief format doesn't work

2  very well.  So if you want to do regular briefing, that's fine,

3  on whatever schedule you come up with.

4       But, you know, a letter -- privilege is more legal often

5  than some other stuff, and so regular briefing is fine.

6          MR. LOESER:  And this is an issue that Facebook has

7  briefed previously.  It's been an issue in some of the

8  regulatory actions.  There is an order compelling production,

9  which I think Facebook is challenging.

10      So I think the parties will be well positioned to brief

11  the issues, and we'll try and reach agreement on precisely when

12  that should happen.

13         THE COURT:  One question I had, because Facebook is

14  saying that it is up on appeal.  Is it up on appeal in the

15  state appellate court, California appellate court?

16         MS. KUTSCHER:  No.  The Massachusetts Supreme

17  Judicial Court recently granted extraordinary review of the

18  issue, and we expect a ruling on that soon.

19         THE COURT:  Is it a question in this case of

20  California law or federal law, the privilege issue?

21         MS. KUTSCHER:  I think that's probably one of the

22  issues we'll be discussing.

23         MR. LOESER:  One thing we're sure, it's not

24  Massachusetts law, but, you know, we'll see.  Maybe it should

25  be.

1          **MR. SNYDER:**  It's also the subject, Your Honor, of

2    litigation in Washington D.C. as well, this ADI issue.  And,

3    you know, Your Honor, this is one of the dozens of issues the

4    parties were negotiating when the Court focused us all in April

5    and said let's go to Your Honor and go in a logical order.

6          So I think our view is that, you know, there are a panoply

7    of issues.  This so-called ADI issue is one of dozens that

8    plaintiffs raised.  And we certainly believe that that, like

9    apex deposition -- apex witnesses and others should be briefed

10   and litigated in front of Your Honor, but, again, not as we're

11   trying to complete custodians and search terms.

12         We should do this, as Judge Chhabria directed, in a

13   logical sequence, as opposed to cherrypicking substantive

14   issues randomly and sort of pre-litigating them.

15         **THE COURT:**  All right.  We'll see.  We'll see.  If

16   you can't come to agreement, which maybe you can't based on

17   what I've heard, then you can just present it to me and we'll

18   figure that out.

19         Okay.

20         **MS. WEAVER:**  And, Your Honor, if I might.  Leslie

21   Weaver.

22         The reason that we are pushing on the ADI issue is

23   because, again, this is an area where we think key players were

24   identified in the course of their own internal investigation

25   identifying bad behavior by third parties.  So we would rather

 1  know sooner rather than later who was involved in that.

 2      So it does bear a little bit more on the instant

 3  discussion, as opposed to something down the road.

 4          **THE COURT:**  You'll all have the opportunity, I

 5  promise, to present --

 6      (Audio interference)

 7          **THE COURT:**  ...assuming you can't agree, on the most

 8  reasonable time frame.

 9          **MS. WEAVER:**  Okay.

10          **THE COURT:**  So we have June 5th, 2:00 p.m. as a

11  backup in case you're unable to agree to your protocol and

12  information exchange, which you already have a schedule among

13  yourselves that you agree to, how you're going to address that.

14      We have two weeks from today as a deadline for an

15  agreement on a privilege protocol.

16      You've identified a number of other things that you've

17  come to agree on as to meet-and-confer.

18      So I'm wondering then if maybe our next hearing should be

19  the third week of June instead of that June 11th date, since I

20  had -- yeah, everyone is shaking their head.  Yay, okay.  I can

21  take my staycation then.

22      And we can do it on  -- let me see here -- the 19th.  I

23  don't know if you guys like ending your week with these or not.

24  I could do 9:00 a.m. on the 19th.

25          **MR. SNYDER:**  That sounds great, Judge, for the

 1   New Yorkers here, who by 4:00 o'clock in the afternoon on a

 2   quarantine Friday are looking forward to peacing out.

 3              THE COURT:  Zoom fatigue.  Does that good work with

 4   plaintiff's, 9:00 a.m. on the 19th?

 5              MS. WEAVER:  Yes, Your Honor.

 6              THE COURT:  And a statement of whatever schedule I

 7   gave you for whatever the statement is.

 8              MS. WEAVER:  Perfect.

 9              THE COURT:  Great.

10              MR. LOESER:  Your Honor, just to flag the last issue

11   that we noted in our statement, number four on Page 3, which is

12   this issue of the scope of the search terms.

13         I do think this is something that's going to pop up.  It

14   will pop up when we're negotiating search terms because we'll

15   be suggesting terms that we know from prior discussion for some

16   topics that Facebook believes are not within the scope of the

17   case and we strongly believe are.

18         So I think the best way for us to handle that is to go

19   ahead.  Let that issue pop up.  It probably -- may come up in

20   the first set of search term discussions or global terms, but

21   it is something that's going to come up and we would be

22   prepared to present it to for -- you know, for your evaluation.

23              THE COURT:  And let me tell you, because this is a

24   referral for discovery and not settlement, I'll probably

25   consult with Judge Chhabria about that, because he's the trial

1  judge.  I'm essentially just adjunct of him here.

2      So just so you know that.  Maybe I'll invite him to one of

3  our hearings.

4          MR. LOESER:  We haven't seen him in so long, it would

5  be great to...

6          MR. SNYDER:  You can tell him -- you can tell him

7  that we would love to see him, and he can tease me -- he can

8  tease me mercilessly like he always does, and I've missed that.

9          THE COURT:  I can tell you he's been quite busy.  As

10  you probably know, we're opening up next month for some

11  criminal matters, just one courtroom at a time.  So that

12  involves coordinating among the district court judges and the

13  various criminal things, and Judge Chhabria has been elected

14  traffic cop.  I think it may be because he's the newest; right?

15  Just like the Supreme Court, the newest member of the court has

16  to open the (audio interference).

17          MR. KO:  Your Honor, that's some good progress up

18  here in the Western District of Washington.  They just

19  announced that there is no criminal trials until 2021.

20          THE COURT:  Yeah.  I mean, they are going to pretty

21  extraordinary lengths, and it's yet to be seen if we'll

22  actually be able to get a jury; right?  Because we don't know

23  if people will show up when called, understandably.  But they

24  are going to attempt.

25          MR. LOESER:  So they are talking about up here in

1    state court of taking the convention center, which has huge,

2    large open, and putting jurors, you know, spaced out in a room

3    large enough for them to socially distance and still hear a

4    case.

5          **MR. SNYDER:**  There is some question about the

6    constitutionality of, you know, bizarre plexiglassed remote

7    configurations where witnesses are far away from jurors and

8    jurors can't really read the demeanor.

9          You know, the Southern District of New York is working

10   hard on these safety protocols, and they are mindbogglingly

11   complex and expensive.  It's like putting jurors in plexiglass,

12   sequestered from one another.  Then what do you do the

13   deliberation room?  How does that impede deliberations?

14         So there's substantial constitutional issues about fair

15   trial for a defendant.

16         **THE COURT:**  The deliberations would likely be in

17   another courtroom.  It's extraordinarily complicated, but

18   particularly when you have in-custody defendants.

19         Okay.  Great.  Thanks everybody.  Have a good weekend --

20         **MS. KUTSCHER:**  Your Honor?

21         **THE COURT:**  Something else?  Ms. Kutscher.

22         **MS. KUTSCHER:**  This conversation gave me an

23   opportunity to look at my calendar for a second, and I'm

24   wondering if it might be possible for the parties to submit any

25   privilege log disputes before the hearing on the 19th rather

```
 1    than by the 12th?

 2         The reason being I think, as practical matter, the parties

 3    are going to spend much of next week meeting-and-conferring

 4    about the protocol we're putting together, and then we're going

 5    to spend much of the following week meeting-and-conferring

 6    about the first set of search terms.  And as a practical

 7    matter, I think we are going to need a lot of meet-and-confer

 8    time on the privilege log and when we have too many

 9    meet-and-confers in a week, it's very hard to get work done.

10    So I'm just wondering if we can space that out.

11              THE COURT:  That was going to be just the deadline to

12    see if you can reach agreement, was two weeks from today.  So

13    then you would have until the 18th to present it to me, and

14    then we could just it on the 19th.

15              MS. KUTSCHER:  Okay.  I think that's fine.  Okay.

16              THE COURT:  So by the deadline.  I just meant the

17    deadline for you to hopefully agree.

18              MS. KUTSCHER:  Okay.  I think that will work.  Thank

19    you.

20              THE COURT:  Okay.  Anything further?  All right,

21    thank you.

22              THE CLERK:  Court is in recess.

23         (Proceedings adjourned.)

24

25
```

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Monday, June 1, 2020