Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor<br>Hearing Date:  July 15, 2020<br>Hearing Time: 9:00 a.m. |

# PLAINTIFFS' STATEMENT

Since the last case management conference, the parties' efforts have been almost exclusively directed toward discovery. Following the March 10, 2020 order referring discovery matters to Magistrate Judge Corley, the parties have engaged in fruitful negotiations. Judge Corley's bi-weekly discovery conferences and discovery orders have provided helpful structure, jumpstarting a discovery process that was previously mired in impasse. The parties have now agreed on ESI, privilege log, Rule 502, and search term protocols; an initial custodian list has been identified; some but not all regulatory productions have been produced; and search term negotiations will begin on July 21, 2020. Yet substantial work remains, and the parties are fully engaged in resolving several threshold issues that will impact the scope of discovery. This statement summarizes what the parties have accomplished, the tasks at hand, and anticipated discovery, including any issues that might require this Court's involvement.

## A.   Progress of discovery

The parties continue to negotiate regarding responses to discovery propounded by each side. To date, Facebook has produced 256,811 pages of Facebook corporate documents, and 845,408 pages of documents from Plaintiffs' Facebook accounts.[1] Facebook first propounded its Request for Production to Plaintiffs on April 3, 2020 and Plaintiffs have already produced an initial batch of more than 4,000 pages. Both sides anticipate additional meaningful document productions in the coming months, with depositions to follow in late fall, if feasible given the current pandemic. The parties have been greatly assisted by Judge Corley's guidance and anticipate she will continue to be in high demand throughout the discovery process. A more granular description follows.

On April 1, Facebook produced approximately 230,000 pages of documents that Plaintiffs understand to have been previously produced to the FTC and other U.S. regulators. Plaintiffs have completed review of the April 1 production—with limited exceptions due to

---

[1] Facebook states that it has produced 1.2 million pages of documents. Plaintiffs, however, have approximately 1.1 million pages of Facebook's documents in their possession.

production defects—and have used what they learned to help move the discovery process forward.

Judge Corley held her first discovery conference in this case on April 17. Later that day, she issued her first discovery order, directing the parties to meet and confer every Monday, Wednesday, and Friday, and to limit their negotiations to the ESI protocol, an initial list of custodians, and document productions that would not require search terms. Discovery Order No. 1, ¶¶ 3, 5 (Dkt. 404). The parties have since agreed on an ESI protocol and, with Judge Corley's input, on a Rule 502(d) stipulation.

To develop a list of potential custodians, Plaintiffs reviewed organizational charts that Facebook produced in mid-April; Facebook's April 1 production, which was taken from 91 custodians; publicly available information; information from four reports prepared by PricewaterhouseCoopers ("PwC"), the entity that evaluated Facebook's Privacy Program implemented pursuant to Facebook's 2012 Consent Decree with the FTC; third-party document productions; and Plaintiffs' own extensive research, which included preparing their own organizational charts Plaintiffs provided to Facebook, complete with annotations as to the relevance of their proposed custodians.

In early May, Judge Corley established a schedule for the parties to complete their preliminary custodian discussions. Discovery Order No. 2, ¶ 2 (Dkt. 420). The parties were still required to meet and confer every Monday, Wednesday, and Friday unless they agreed it was unnecessary. *Id.* ¶ 4.

As part of the process ordained by Judge Corley, Facebook initially proposed a list of 67 custodians. By the May 15 discovery conference, the parties agreed that five more custodians should be added to Facebook's list, but disagreed on nine others. They briefed the disagreement in a letter to Judge Corley, who decided that all nine should be added, resulting in an initial group of 81 custodians. Discovery Order No. 3, ¶ 1 (Dkt. 436). Judge Corley also permitted Plaintiffs to seek more custodians after reviewing materials related to the PwC reports and documents produced to regulators. *Id.* Facebook has also consistently represented to Plaintiffs

and to Judge Corley that it is amenable to adding new custodians should the circumstances warrant doing so.

Prompted by two orders from Judge Corley, *see id.* ¶ 3; Discovery Order No. 4, ¶ 1 (Dkt. 453), the parties negotiated a protocol to govern search term discussions, *see generally* Stip. and Order (Dkt. 461). Under this protocol, the existing 81 custodians are divided into several groups. After Facebook interviews each group of custodians throughout the summer and into the fall, it will provide Plaintiffs with information about the custodians' ESI sources and later provide proposed search terms tested on document sets, including "hit reports" (i.e., how many documents each search term retrieved). Plaintiffs will then propose revisions to the search terms and be able to ask questions about the custodians' ESI sources, after which the parties will meet and confer about search terms and Facebook will provide answers to the Plaintiffs' ESI questions. The deadline for Facebook's to propose its first comprehensive set of search terms is due July 21; dates for additional terms are scheduled seriatim, ending on September 15.  Shortly thereafter, any unresolved disputes regarding either search terms or ESI sources will be brought to Judge Corley for decision.

Thus, under the schedule for search-term discussions, documents for a large portion of these custodians will not begin to be produced until late September at the very earliest. Indeed, the schedule contemplates that production of documents for the last group of custodians will not begin until at least early October.

Discovery of Plaintiffs is on a similar schedule.  Facebook first propounded Requests for Production to Plaintiffs on April 3, 2020. Facebook's first requested meet and confer session on Plaintiffs' responses was held on June 24, 2020.  Although the parties continue to negotiate regarding the scope of the requests, Plaintiffs have already produced more than 4,000 pages. However, this process is in its nascency.

Plaintiffs make note of the schedule for search-term discussions and the current status of discovery of Plaintiffs because they suggest that the parties, or at least Facebook, probably will not have substantially completed document production by October 2, 2020, the date required by

the Court's case management schedule. Some of this delay is no doubt attributable to COVID-19, which has affected this case as it has affected everything else. While Plaintiffs will do everything they can to meet the existing deadlines, it seems likely that the case management schedule will require modification. Plaintiffs believe it would be premature to propose a revised schedule until they have a better sense of Facebook's document-production schedule, but will work with Judge Corley and Facebook to do so.

Throughout the discovery process, Plaintiffs have attempted to get more information about what ESI is located in "noncustodial" locations, such as databases, and how that ESI may be retrieved. It is on this topic that, in Plaintiffs' view, the least progress has been made thus far. These data sources are critical because they are likely the only sources of discovery into the critical question of which third parties were given access to what kinds of user data and whether they accessed that user data.

Along with discovery into Facebook, Plaintiffs have actively pursued third-party discovery, issuing 18 subpoenas to auditors, app developers, and/or business partners and engaging in extensive meet and confer sessions with some of them. Some of these third parties have begun document production, while others are still negotiating the scope of responsive materials. This discovery may be relevant to, among other things, what kinds of user data business partners and app developers with whitelisted apps were receiving.

**B.     Other issues**

The parties are also conferring over several other issues that will affect the scope of discovery. For example, Plaintiffs have sought all documents relating to Facebook's ongoing App Developer Investigation ("ADI"), which the company publicly launched in 2018 in the wake of the Cambridge Analytica Scandal. According to Facebook's website, ADI was an attempt to "review all of the apps that had access to large amounts of information[,]" including identifying "apps for investigation based on how many users they had and how much data they could access."[2] This review has resulted in Facebook's suspension of tens of thousands of apps

---

[2] https://about.fb.com/news/2019/09/an-update-on-our-app-developer-investigation/

associated with approximately 400 developers. *Id.* Information regarding Facebook's ADI—which Facebook claims is largely privileged—is relevant to the four main categories of wrongdoing at issue in this case.[3]

In addition, Plaintiffs have also been conferring with Facebook regarding the scope of financial documents to be produced in discovery. Plaintiffs are entitled, among other things, to recover the gains Facebook realized from its improper conduct. MTD Order at 41. The Ninth Circuit reaffirmed this principle in its recent holding that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even when an individual has not suffered a corresponding loss." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (citing *Cty. of San Bernardino v. Walsh*, 69 Cal. Rptr. 3d 848, 856 (Ct. App. 2007)). On this basis, Plaintiffs are entitled to obtain all information about how Facebook has monetized and quantified user data, including revenue it has gained. While Facebook acknowledges that some of this discovery may be relevant, it has largely declined to produce financial information and the parties disagree about the scope of what should be produced.

Plaintiffs have been conferring with Facebook regarding these issues and have previously identified them for Judge Corley. If the parties cannot agree, Plaintiffs anticipate raising them for resolution with Judge Corley in the coming weeks.

## C.   Response to Facebook's Statement

While the parties have made progress in discovery under Judge Corley's direction, Plaintiffs do not share Facebook's rosy perspective that discovery is proceeding smoothly. Such a representation is premature at this stage of the proceedings, given the substantial work still to be done. The parties (and potentially the Court) must still resolve several fundamental issues affecting the scope of discovery. Plaintiffs have served a series of discovery requests on which the parties are still meeting and conferring, and they intend to issue more document requests and interrogatories based on their review of the discovery produced to date. Depositions have yet to

---

[3] This question of privilege is currently being litigated in both Massachusetts and the District of Columbia.

be taken, and probably will be not taken until later this year at the earliest. And while Plaintiffs have circulated drafts of stipulations to govern depositions and the expert discovery process, the parties have not yet meaningfully discussed them.

Plaintiffs are hopeful that Judge Corley's guidance will continue to propel the case forward, but the bulk of discovery remains unfinished. For the parties to accomplish their respective tasks, regular hearings before Judge Corley and Court-ordered meet-and-confers must continue.

## FACEBOOK'S STATEMENT

Facebook is grateful to the Court for referring discovery in this action to Judge Corley. Under Judge Corley's direction, the discovery process has been streamlined, the number of litigated issues has been significantly reduced, and the parties have concluded negotiated solutions to a host of issues. Discovery is smoothly proceeding full steam ahead, and tremendous progress has been made since the parties were last before the Court.

**Facebook has now produced approximately 1.2 million pages of documents**. These productions include: (i) the Facebook documents produced in response to the FTC's document requests, (ii) responsive Facebook documents produced in other related government actions,[4] (iii) documents Plaintiffs requested regarding the Named Plaintiffs' accounts, and (iv) documents the parties agree do not require custodial searches.

The parties are meeting and conferring regularly, often multiple times per week, by Zoom, and Facebook is pleased to report the following substantial progress since the last conference before the Court:

- Facebook's document productions reached approximately **1.2 million pages**;

- The parties met and conferred by Zoom at least **30 times** and for at least **50 hours**;

- The parties negotiated and agreed to 10 categories of documents that Facebook could collect without custodial searches, and Facebook collected and produced those documents;

---

[4] Facebook's productions to regulators remain ongoing. Facebook has collected and produced to Plaintiffs responsive materials produced to regulators as of April 29, 2020.

- The parties negotiated and agreed to an ESI Protocol, which Judge Corley entered;

- The parties negotiated and agreed to a 502(d) Stipulation, which Judge Corley entered;

- The parties negotiated and agreed to a privilege log protocol, which Judge Corley entered;

- The parties negotiated and agreed to a search term negotiation protocol, which Judge Corley entered;

- The parties negotiated custodians extensively, and **81 custodians** were selected for Facebook's supplemental document productions;

- Facebook conducted extensive custodial interviews of many of the selected custodians;

- Facebook served document requests on Plaintiffs, Plaintiffs served responses and objections, and the parties began negotiating the scope of Plaintiffs' preservation, collection, review, and production;

- The parties engaged in extensive discussions regarding Facebook's sources of ESI and Judge Corley held Facebook has provided sufficient information regarding its data sources;

- Facebook responded to Plaintiffs' third set of document requests;

- The parties briefed Plaintiffs' Motion for Leave to Amend;

- The parties litigated a discovery dispute regarding the conditions under which Facebook would provide Plaintiffs the search terms used to collect materials for the FTC;

- The parties litigated Plaintiffs' administrative motion regarding their proposed participating counsel order; and

- The parties negotiated and agreed to a dispute resolution protocol.

## A. Productions Made to Date

In an effort to move discovery forward while the parties have been negotiating threshold issues such as custodians and search terms, Facebook has produced more than one million pages of documents, accounting for 329,791 pages of company documents and 869,813 pages of materials *that Plaintiffs requested* regarding their accounts. These productions include documents responsive to 10 RFPs that the parties agreed could be collected and produced without custodial searches.

These productions also include the Facebook documents that Facebook produced in

response to the FTC's document requests.  In addition, Facebook has produced the Facebook documents produced to various other state and federal governmental entities (as of April 2020) in multiple related matters that are responsive to Plaintiffs' document requests.

Facebook made these productions in an effort to move the case forward expeditiously even though courts usually frown upon "cloned discovery"— "requesting all documents produced or received during other litigation or investigations," *King County v. Merrill Lynch & Co., Inc.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash., Aug. 5, 2011) (quotation omitted).  For one thing, "compelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome." *Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS-JLB, 2019 WL 6252499 *18 (S.D. Cal., Nov. 22, 2019); *accord In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods Liability Lit.*, MDL No. 2672, 2017 WL 4680242 (N.D. Cal., Oct., 18, 2017) (rejecting cloned discovery requests).  For another, cloned discovery "is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." *King County*, 2011 WL 3438491, at *3 (quotation omitted).

Those usual concerns are proving to be well-founded here.  Plaintiffs initially suggested that they were trying to streamline discovery by seeking productions made to government entities because those productions would contain most of the documents that would be relevant to the case.  But even though Facebook has now produced its FTC document productions and the documents produced in multiple other related government matters that are responsive to Plaintiffs' document requests, it seems that those productions are merely cumulative of other materials Plaintiffs continue to request.  On top of that, Plaintiffs are demanding every additional piece of paper that exchanged hands with any government entity in any related action (down to scheduling e-mails).  But the point of Facebook's production of regulatory documents was never completeness for completeness's sake—it was to facilitate production of materials that are relevant and responsive in this case.  Plaintiffs' continued focus on the ins-and-outs of the

government investigations is causing unnecessary collateral discovery (and potential disagreements). Facebook believes that the parties should be focusing on discovery in *this* case, not on what has or has not been produced elsewhere.

### B.     The Parties Are Negotiating Additional Productions

Facebook looks forward to continuing to work with Judge Corley as the parties move into the next phase of discovery.

The parties continue to negotiate the materials Facebook will produce to supplement the voluminous materials it already collected, reviewed, and produced. The set of 81 custodians referenced above was identified for this purpose, and custodial interviews of those individuals are in progress. The custodian list is both sizeable and comprehensive. And, while Facebook and Judge Corley have acknowledged that Plaintiffs may, of course, request the inclusion of additional custodians if they demonstrate a particular need for additional custodians at some later point in the case, it is by no means a foregone conclusion that there will be any such need. In other words, the 81-person custodian list is not an "initial" list but rather "the" list, subject to Plaintiffs' right to request (by consent or otherwise) additional custodians for good cause shown.

The parties agreed to a protocol and schedule to negotiate search terms to identify responsive materials. Under the parties' negotiated agreement, on July 21, Facebook will propose an initial set of search terms for the additional documents it will produce. Plaintiffs will provide any counter proposal ten days later. Facebook anticipates that, to the extent any disagreements arise concerning the scope of what Facebook will be searching for and producing, such disagreements will be crystallized during the parties' search term negotiations. If necessary, the parties can seek guidance and resolution from Judge Corley. Facebook has committed to Plaintiffs numerous times that Facebook will rely on the four potential theories of liability outlined in the Court's motion to dismiss order as a relevancy litmus test. (Dkt. 298.)

While Facebook has produced more than one million pages of documents to date, Plaintiffs did not make their first production of documents until late last night; it was a small production of about 4,000 pages.

C.  **The Additional Issues Plaintiffs Mention as Potential Future Disputes Before Judge Corley Are Not Ripe for Discussion at this Status Conference**

Facebook is mindful that previewing (or venting about) brewing discovery disputes in the hopes of eliciting some commentary from this Court has the potential to undermine Judge Corley's process and protocols. Because Plaintiffs raise two issues regarding the additional documents Facebook will produce, Facebook will address their status briefly.

*Financial Documents.* The parties are meeting and conferring regarding Plaintiffs' broad requests for financial information, which include requests for all information underlying Facebook's publicly reported revenue and all documents reflecting any revenue Facebook has received from third parties. While Facebook believes these requests are overboard, it has assured Plaintiffs that it will produce financial materials related to the four theories of potential liability that the Court outlined in its motion to dismiss order. (Dkt. 298.) The parties recently began discussing how, and at what stage, Facebook will be in a position to identify such materials.

*Privileged Materials.* Facebook agreed to produce materials to Plaintiffs related to its ongoing platform enforcement efforts, and—to date—it has produced thousands of documents regarding app enforcement. Plaintiffs also seek a separate set of materials from an investigation that outside counsel conducted. That investigation began following the Cambridge Analytica events and the commencement of several civil lawsuits (including this one) and investigations launched by state, federal, and international regulatory agencies. This legally protected investigation is retrospective in nature. It focuses on analyzing historic platform activity from before Facebook's transition to Graph API v.2.0 in 2015, and it operates separately from Facebook's routine monitoring, compliance, and enforcement efforts. The primary purpose of this investigation is to enable counsel to advise Facebook about legal risks and exposure, including how to respond to specific instances of misconduct. Plaintiffs seek to infiltrate counsel's investigation and have requested that Facebook produce every single document about or related to the investigation—including communications with outside counsel and counsel's legal analysis. Facebook has informed Plaintiffs that this request seeks a very large volume of inherently privileged information, but Facebook has agreed to produce non-privileged materials

from the investigation, including thousands of communications with third-party apps—many of which have already been produced.  The parties' meet and confer efforts regarding the materials Plaintiffs seek remain ongoing.

Once the parties complete their discussions regarding these issues, they will raise any disputes to Judge Corley.

Dated: July 8, 2020                                                                 Respectfully submitted,

KELLER ROHRBACK L.L.P.                                              BLEICHMAR FONTI & AULD LLP

By:     */s/ Derek W. Loeser*                                                   By:     */s/ Lesley E. Weaver*
          Derek W. Loeser                                                                       Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele A. Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

Fax: (602) 248-2822
efierro@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of July, 2020, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on July 8, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

    Paven Malhotra
    Matan Shacham
    Bryn Anderson Williams
    pmalhotra@keker.com
    bwilliams@kvn.com
    bwilliams@kvn.com

    Anjeza Hassan
    annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs