Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: July 31, 2020<br>Hearing Time: 8:30 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for July 31, 2020 at 8:30 a.m.

## I. PLAINTIFFS' STATEMENT

Although the parties have been working diligently to resolve them, outstanding issues relating to ongoing document productions and pending discovery requests are increasing in both number and significance. Accordingly, Plaintiffs request that the Court order the parties to resume meeting and conferring for up to two hours twice a week. Plaintiffs hope that by doing so the parties will be able to keep discovery moving forward at an appropriate pace.

**1. Issues the Parties Have Addressed Since the Last Discovery Conference**

Pursuant to the June 28, 2020 Stipulation and Order for Search Term Negotiation Schedule and Process and the July 10, 2020 Joint Status Update, the items on the parties' agenda since the last conference were: a) search terms for documents responsive to Plaintiffs' document requests, b) Plaintiffs' document production, c) documents concerning Facebook's App Developer Investigation ("ADI"), and d) defining the scope of remaining issues. The parties' progress on these issues has been as follows:

**a. Search Terms and Sources of ESI:** The parties continue to meet and confer about search terms, but the process may be delayed by recent developments. On June 5, the parties agreed to modify the schedule for search term negotiations to allow for Facebook to propose a *comprehensive* set of search terms that would apply to a broad spectrum of custodians by July 21. Dkt. No. 455. The parties also agreed that on July 21 Facebook would (i) propose search terms for the custodians in Groups 1-4, (ii) provide initial hit reports for each of the proposed terms, and (iii) identify sources of potentially responsive information for each custodian. Facebook provided a search term proposal and completed identification of sources of potentially relevant ESI by Group for Groups 1-4 on July 21, but Facebook's response departs from the parties' agreement in significant ways.

*First*, Plaintiffs do not believe Facebook propose a comprehensive set of search terms that can be applied for a broad spectrum of custodians. For example, the proposed list does not include any terms relating to the PwC assessment reports or search strings previously used to collect documents for production to the FTC (including those relating to certain API capabilities

through which Facebook transmitted user date to third parties—a core issue in this case). *Second*, Facebook proposed search terms only for email and Facebook's internal IM platforms, excluding other sources of ESI, including data repositories such as the Hive. Facebook informed Plaintiffs on July 27 that Facebook does not intend to employ search terms to collect potentially responsive ESI from other sources at this time. Consistent with the parties' agreement, Plaintiffs will pose questions regarding ESI sources on July 31.

Plaintiffs agreed to give Facebook more than six weeks to collect search term information to ensure that search term negotiations could be comprehensive rather than piecemeal. Unfortunately, the terms initially proposed by Facebook are far from comprehensive. In an effort to cure the deficiencies, Plaintiffs will provide Facebook with Plaintiffs' initial search term proposal July 31, consistent with the parties' agreement. The parties have agreed to an initial meet and confer in follow up on August 5.

   **b.**  **Plaintiffs' Document Production:** Plaintiffs are continuing to collect and review responsive materials and supplement their initial productions, including an additional production on July 28. Since the last discovery conference, the parties have continued to meet and confer regarding Plaintiffs' responses and objections. Plaintiffs have provided Facebook extensive information regarding sources of ESI, the custodial interview process, and manner of collection. Plaintiffs are testing search terms to run on email collections and anticipate providing a search term proposal to Facebook in the coming weeks.

   **c.**  **ADI:** Facebook initiated the App Developer Investigation ("ADI") in the wake of the Cambridge Analytical scandal to investigate some of the same misconduct that is at issue in this case and take action consistent with public statements by Facebook regarding third party access to user data. To test Facebook's claims of privilege over ADI documents, the parties are negotiating to identify a subset of materials out of the apparently tens of millions of total documents. The parties first conferred on July 20 in an attempt to do so. Then, on July 22, Plaintiffs requested that Facebook identify the apps that it suspended for substantive reasons, rather than because the apps had failed to respond properly to Facebook's requests for

information.[1]  Facebook informed Plaintiffs they will provide a response by Monday, August 1.

**2. Proposed Agenda**

In addition to the issues set forth above, Plaintiffs respectfully propose that the following items be included on the parties' agenda between this and the next discovery conference:

**a. Production of All Data Sets Facebook Possesses About the Named Plaintiffs:**  On November 25, 2019, Plaintiffs propounded RFP Nos. 9 and 10 seeking all Documents relating to each of the Named Plaintiffs, including all Content and Information collected about each of them or gained from business relationships or any other source.  These requests seek not only the Named Plaintiffs' platform activity, but also all data Facebook collects and analyzes to allow third parties to target users.  The Complaint specifically alleges that Facebook has unjustly enriched itself by mixing private content and information with other data collected.  FAC ¶¶ .  Accordingly, Plaintiffs have repeatedly asked Facebook to produce all information it possesses about the Named Plaintiffs (whether linked to Named Plaintiffs' Facebook IDs or another unique identifier).

Facebook has yet to confirm that it will produce any of this information, let alone indicate what that information will consist of, or what format it can be produced in.  Instead, Facebook contends that the information does not exist. Accordingly, Plaintiffs respectfully ask the Court to order Facebook to indicate by August 7, 2020 1) exactly what data Facebook maintains about the Named Plaintiffs, 2) what such data Facebook intends to produce, 3) when it intends to produce such data, and 4) in what format Facebook proposes to produce any such data.

**b. Plaintiffs' Third Set of Document Requests to Facebook.**  Plaintiffs issued their third set of document requests to Facebook on May 6 and Facebook timely responded to those requests on June 19.  The parties have since met and conferred about each of these requests.  On July 23, Plaintiffs sent Facebook a letter to confirm the parties' positions on the requests and identify issues that required further discussion. Facebook has objected that sending such a letter

---

[1] Plaintiffs proposed this as a way of identifying a subset of documents that could be used to test Facebook's claims of privilege. Their proposal is without prejudice to their ability to later seek all relevant and non-privileged information related to ADI.

is not in keeping with the meet and confer process envisioned by the Court.  Plaintiffs seek the Court's guidance in light of the need to establish a mutual understanding of what will and will not be produced.  For example, Plaintiffs have confirmed in writing to Facebook what documents it will and will not search for and produce.  Plaintiffs are open to reasonable proposals but do seek definitive, written positions in order that there be no misunderstanding, and propose that Facebook provide these by August 14, 2020.

## II.   FACEBOOK'S STATEMENT

Facebook appreciates the Court's continued assistance focusing the parties' discovery efforts and reports the following progress since the last status conference.

**Search Terms.**  Facebook is disappointed by Plaintiffs' characterization of the parties' incipient search term negotiations.  Under the parties' Search Term Protocol, Dkt. 461, search terms will be negotiated on a rolling basis for the 81 custodians selected for this matter, and on July 21, Facebook made a comprehensive search term proposal with hit count information for 38 custodians.  This proposal represents the culmination of hundreds of hours of work by Facebook and its counsel.  It is a 1336 row spreadsheet, which includes both a core set of search terms for all but one of the RFPs for which the parties are negotiating terms[2] and additional targeted searches for individual custodians who disclosed unique terms relevant to their data.

Facebook's proposed terms are also expansive.  When run on emails and chats collected for the 38 custodians at issue, they hit on **approximately one million documents** (including families), which Facebook estimates would require it to review **over four million pages**.[3]  And this is for fewer than **half of the custodians**—Facebook estimates that this hit count will expand significantly when the searches are run on the remaining 43 custodians.  These materials are also in addition to (i) the **1.2 million pages** Facebook already produced, (ii) the large volume of documents Facebook is reviewing from non-email and chat sources, and (iii) the materials Facebook will collect in response to **25 additional RFPs** Plaintiffs served recently.

Plaintiffs' primary complaint is that Facebook did not propose a few terms in its proposal that Plaintiffs would like to include.  But that is why the Protocol permits Plaintiffs to make a counterproposal, which is due on Friday.  While Plaintiffs raise a complaint about the format of Facebook's proposal, it was provided on a negotiated template, and in light of Plaintiffs' concerns, the parties agreed that Plaintiffs can provide a counterproposal in a different format.

---

[2] Facebook's proposal does not address one RFP for which none of the initial set of custodians were selected as custodians, which will be addressed by other custodians.

[3] This estimate is based on the average pages of company documents Facebook produced to date.

**Data Sources**: Plaintiffs say that Facebook proposed search terms only for emails and messages sent on Facebook's internal messaging platforms.  As Facebook explained to Plaintiffs, it is in the process of collecting other data sources (which have been disclosed), and has not yet identified any additional sources for which the volume of potentially-responsive data requires search terms.  If Facebook determines other data sources require search terms, it will disclose this and propose terms using the Protocol's procedures.  For Hive, Facebook explained numerous times that it is a complex database and any relevant tables cannot be identified through search terms.  Facebook is working with custodians and more broadly to identify any potentially relevant tables, and the Protocol has a process to raise questions about unique data sources.

**Named Plaintiffs Data**:  Plaintiffs suggest Facebook has not produced materials about their accounts.  In fact, Facebook has produced **800,000 pages** of information from Plaintiffs' accounts.  The information produced comprises the set of data Facebook maintains for each user's account and includes available data regarding **the information Plaintiffs shared on Facebook and their Platform activity**.  Given that this case is about whether Facebook shared with third parties information users intended to share only with their Facebook friends, it is unclear what additional user data would be relevant.

While Plaintiffs say their Complaint includes allegations on additional topics, Judge Chhabria dismissed or stayed all allegations unrelated to sharing sensitive data with third parties. Judge Chhabria's motion to dismiss order explains that Plaintiffs filed a kitchen-sink complaint which "sought to identify anything Facebook has ever been reported to have done wrong and then made sure to sprinkle in a few allegations about it." Dkt. 298 at 5-6. Judge Chhabria held that many of Plaintiffs' allegations could not proceed and that the case would move forward only on four theories of alleged wrongdoing regarding data-sharing, which he explained as follows:

1. **Friend sharing**: "[F]rom roughly 2009-2015" "when users accessed apps on the Facebook platform, the app developers were not merely able to obtain information about the users they were interacting with; they were also able to obtain any information about the users'

Facebook friends that the users themselves had access to." *Id*. at 6-7 (emphasis added).[4]

2. **Whitelisting**: In 2014 Facebook announced that it would end friend sharing, "but . . . continued to allow a preferred list of app developers to access the information of users' friends," while those apps adjusted their systems to Facebook's new policies. *Id*. at 7-8.

3. **Business Partner**: "Facebook shared information about its users with . . . business partners, and . . . those companies in turn shared data with Facebook." *Id*. at 8.

4. **Off-Platform Enforcement**: "Facebook purported to have a policy preventing app developers from using information for any purpose other than enhancing the interaction between the app and the person who was using the app . . . but Facebook [did not] enforce this policy," which Plaintiffs allege allowed the sale of data to Cambridge Analytica. *Id*. at 9.

Judge Chhabria further held these theories are actionable only to the extent they concern sharing "sensitive user data," which he explained as "substantive and revealing content that users intended only for a limited audience [i.e. their friends], such as their photographs, videos they made, videos they watched, their religious and political views, their relationship information, and the actual words contained in their messages." Dkt. 298. at 1. (emphasis added).

Facebook produced the currently available information Plaintiffs shared on Facebook in these categories, including their photos, videos, posts, comments, messages, and religious, political, and relationship information. In addition to these materials—which reflect the data Judge Chhabria identified as potentially relevant—the produced materials include ad topics most relevant to the user, advertisers who collected information from the user, information the user submitted to advertisers, and advertisers who uploaded a contact list with the user's information. They include the users' contact information, likes and reactions, friends, followers, groups, events, location information, search history, life events, hobbies, music preferences, marketplace activity, payment history, saved items, apps and websites visited using Facebook, and businesses and organizations followed. Finally, the materials include the users log-in locations, account

---

[4] The Court held that users who joined Facebook in 2009 or later consented to friend sharing and this claim is only potentially viable for users who joined before 2009. *Id*. at 25-27.

status changes, account activity, login and logout activity, IP addresses, and cookie information.

While Plaintiffs have the mistaken belief that Facebook maintains some other "dossier" on each user that they would like produced, Facebook produced the set of data it maintains for each account, including the information Plaintiffs shared on Facebook. Plaintiffs should review these materials. If after doing so they identify additional relevant information related to how "sensitive information" was shared with third parties through friend sharing, whitelisting, or business-partner arrangements, Facebook will, of course, work with Plaintiffs in good faith to locate it. But any additional information Plaintiffs seek needs to be identified more clearly.

**Ongoing Document Productions.** The parties' discussions regarding pending document requests are ongoing. Facebook notes that it did not object to Plaintiffs' letter memorializing a recent discussion regarding their RFPs. It told Plaintiffs that a lengthy email criticizing its search term proposal was reminiscent of the letters the Court ordered the parties to cease writing.

On July 27, Facebook responded to Plaintiffs' Fourth Set of Document Requests.

During next week's meet and confers, Facebook would like to address various questions and concerns about Plaintiffs' initial document production and future productions. Of note, while Plaintiffs represent that they disclosed all data sources they are searching, collecting, and producing, this is not correct, and Facebook has a number of unanswered questions regarding Plaintiffs' search and collection. Plaintiffs also indicated they intend to use search terms to identify materials responsive to Facebook's RFPs. Facebook would like to better understand the volume of data at issue so that it can assess whether search terms are appropriate.

**Privileged Legal Investigatory Files.** The Court instructed the parties to identify a process to address piecemeal the privileged materials Plaintiffs seek from Facebook's App Developer Investigation—an investigation designed and directed by Gibson Dunn (at Facebook's in-house counsel's direction) following the Cambridge Analytica events and the commencement of several civil lawsuits (including this one) and investigations. Plaintiffs provided a proposal on July 22, and the parties held a preliminary meet and confer on the proposal on July 27. Facebook will provide a counterproposal early next week.

| | |
|---|---|
| Dated: July 30, 2020 | Respectfully submitted, |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| By: */s/ Derek W. Loeser*<br>    Derek W. Loeser | By: */s/ Lesley E. Weaver*<br>    Lesley E. Weaver |
| Derek W. Loeser (admitted *pro hac vice*)<br>Lynn Lincoln Sarko (admitted *pro hac vice*)<br>Gretchen Freeman Cappio (admitted *pro hac vice*)<br>Cari Campen Laufenberg (admitted *pro hac vice*)<br>David J. Ko (admitted *pro hac vice*)<br>Benjamin Gould (SBN 250630)<br>Adele Daniel (admitted *pro hac vice*)<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel.: (206) 623-1900<br>Fax: (206) 623-3384<br>dloeser@kellerrohrback.com<br>lsarko@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>claufenberg@kellerrohrback.com<br>dko@kellerrohrback.com<br>bgould@kellerrohrback.com<br>adaniel@kellerrohrback.com | Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909)<br>Matthew P. Montgomery (SBN 180196)<br>Angelica M. Ornelas (SBN 285929)<br>Joshua D. Samra (SBN 313050)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com<br>adavis@bfalaw.com<br>mmontgomery@bfalaw.com<br>aornelas@bfalaw.com<br>jsamra@bfalaw.com |
| Christopher Springer (SBN 291180)<br>801 Garden Street, Suite 301<br>Santa Barbara, CA 93101<br>Tel.: (805) 456-1496<br>Fax: (805) 456-1497<br>cspringer@kellerrohrback.com | |
| Eric Fierro (admitted *pro hac vice*)<br>3101 North Central Avenue, Suite 1400<br>Phoenix, AZ 85012<br>Tel: (602) 248-0088<br>Fax: (602) 248-2822<br>efierro@kellerrohrback.com | |
| *Plaintiffs' Co-Lead Counsel* | |

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek Loeser, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed July 30, 2020, at Seattle, Washington.

                                                *s/ Derek Loeser*
                                                Derek Loeser

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on July 30, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

Paven Malhotra
Matan Shacham
Bryn Anderson Williams
pmalhotra@keker.com
bwilliams@kvn.com
bwilliams@kvn.com

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs