Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

IN RE FACEBOOK, INC., CONSUMER )
PRIVACY USER PROFILE           )
LITIGATION.                    )
                               )   **NO. 18-MD-02843 VC (JSC)**
                               )
_____)

San Francisco, California
Friday, July 31, 2020

**TRANSCRIPT OF PROCEEDINGS BY ZOOM**

**APPEARANCES BY ZOOM:**

For Plaintiffs:
                    KELLER ROHRBACK LLP
                    1201 Third Avenue - Suite 3200
                    Seattle, Washington  98101
              BY:   **DEREK W. LOESER, ATTORNEY AT LAW**
                    **DAVID J. KO, ATTORNEY AT LAW**


                    BLEICHMAR, FONTI & AULD LLP
                    555 12th Street - Suite 1600
                    Oakland, California  94607
              BY:   **LESLEY E. WEAVER, ATTORNEY AT LAW**
                    **MATTHEW P. MONTGOMERY, ATTORNEY AT LAW**
                    **ANGELICA M. ORNELAS, ATTORNEY AT LAW**
                    **ANNE K. DAVIS, ATTORNEY AT LAW**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendants:
                         GIBSON, DUNN & CRUTCHER LLP
 3                       200 Park Avenue
                         New York, New York  10166
 4                  BY:  ORIN SNYDER, ATTORNEY AT LAW

 5                       GIBSON, DUNN & CRUTCHER LLP
                         1881 Page Mill Road
 6                       Palo Alto, California  94304
                    BY:  MARTIE P. KUTSCHER CLARK, ATTORNEY AT LAW
 7
                         GIBSON, DUNN & CRUTCHER LLP
 8                       2100 McKinney Avenue - Suite 1100
                         Dallas, Texas  75201
 9                  BY:  RUSSELL H. FALCONER, ATTORNEY AT LAW

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**Friday - July 31, 2020**</u>                                    <u>**8:30 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---000---**

        **THE CLERK:**  Court is now in session.

    Calling Civil action 18-md-2843, In re Facebook, Inc.

    Counsel, starting with plaintiff, appearances for the

record.

        **MS. WEAVER:**  Leslie Weaver of Bleichmar Fonti.

        **THE COURT:**  Good morning.

        **MS. WEAVER:**  With me is Anne Davis and Angelica

Ornelas also of Bleichmar Fonti.

        **MR. MONTGOMERY:**  Also Matt Montgomery with Bleichmar

Fonti.

        **MS. WEAVER:**  Oh.  I'm sorry.  I apologize, Matt.

        **THE COURT:**  Good morning, Mr. Montgomery.

        **MR. MONTGOMERY:**  Good morning, Your Honor.

    **MR. LOESER:**  Derek Loeser from Keller Rohrback for

plaintiffs.  Pleased to be wearing a suit again today so thank

you for that opportunity.

        **THE COURT:**  Yes.  Good morning.  Happy Friday.

        **MR. KO:**  Good morning, Your Honor.  David Ko, Keller

Rohrback, also on behalf of plaintiffs, unfortunately not

wearing a suit.

        **THE COURT:**  Not wearing a suit.

        **MR. LOESER:**  I have to have at least one reason to get

1  the dust off the suits.  It's settling pretty thick at this

2  point.

3        **THE COURT:**  Yes.

4     And for Facebook?

5        **MR. SNYDER:**  Happy Friday and Happy July 31st, Judge.

6  Orin Snyder with my colleagues Martie Kutscher Clark and

7  Russell Falconer for Facebook.

8        **THE COURT:**  All right.  Good morning.

9        **MR. SNYDER:**  Hi, Judge.

10       **THE COURT:**  Okay.  All right.  Well, thank you,

11 everyone, for your statement.  I don't think we have too much

12 to talk about.  We'll start with sort of the order that

13 plaintiff went.

14    And with respect to the search terms, it sounds like today

15 the plaintiffs are going to respond to Facebook's proposal as

16 to search terms, and I assume the parties have scheduled meet

17 and confer for next week.

18       **MS. DAVIS:**  We've agreed to meet and confer on the 5th

19 and we'll get that time on the calendar soon.

20       **THE COURT:**  Okay.  All right.  So I think that's the

21 way the process is supposed to move forward.  It sounds like

22 the plaintiffs are going to have some things to say.

23       **MS. DAVIS:**  That's right.

24       **THE COURT:**  Okay.  Let's see, the next issue was

25 plaintiffs' document production.  They're working on it.  I

don't know if Facebook had anything to say.  Is there anything
I should address?

  **MS. KUTSCHER:**  The preliminary question we have -- I
mean, we have some more nuanced questions that I won't get into
today that we can discuss on a meet and confer, but the
plaintiffs have indicated that they would like to negotiate
search terms for the collection of plaintiffs' documents, and
we would really just like a preliminary understanding of the
volume of material so that we can get a sense of whether that's
the appropriate process here.

  **THE COURT:**  Yeah.  I'm sure they'll tell you.  That's
all part of the process and part of the information that should
be shared.

  Okay.  The ADI, you're working on a schedule for bringing
that to my attention; is that correct?  That's my
understanding.  Yes?

  **MR. KO:**  Yes, Your Honor -- this is David Ko on behalf
of the plaintiffs -- that is correct.

  One thing that we would ask, our proposal for how to
handle this has been pending since July 22nd, which is nine
days ago.  I think Facebook had told us that they endeavored to
get back to us by this week and no earlier than next Monday, so
I think it would be really helpful -- you know, deadlines and
orders are helpful for everyone so I think it would be great if
they could get back to us no later than Monday.

1          **THE COURT:**  I think that's what you meant.  Is that

2    right, Ms. Kutscher, you're going to get back to them by

3    Monday?

4          **MS. KUTSCHER:**  Yes, absolutely.  We're planning on

5    getting back to them on Monday.

6          **MR. KO:**  Thank you.

7          **THE COURT:**  Okay, so they shall.

8     All right.  So there were a few other things.  One is

9    Facebook raised a concern about letters, and I guess I would

10   say this, is I never said you can't send a letter.  What

11   Facebook's concern was earlier in the case was that plaintiffs

12   were sending letters and raising new issues.  The letter I

13   think you raised in your statement was just memorializing

14   Facebook -- I mean, plaintiffs' understanding of a meet and

15   confer.  That seems to me entirely appropriate, in fact good

16   practice.  So I think the plaintiffs said they wanted some

17   guidance.  That's my guidance on that.

18        Another issue plaintiffs wanted to put on the agenda for

19   next time, and maybe we should discuss a little bit now because

20   there seems to be a disconnect, is this plaintiffs' data

21   because Facebook says "We've given it to them" or "Are giving

22   it all to them," and plaintiff says "There's stuff missing."

23        I don't know -- or maybe I should just -- you should

24   just -- we should just put it on the agenda for next time so

25   that you can have some conversations about that because it

1    seems to be each side doesn't understand what the other side is

2    saying.  I don't know if anyone wants to comment on that.

3          **MR. SNYDER:**  Your Honor, I think I might comment

4    briefly, and I think it's a good idea to put it on for next

5    time.

6          The disconnect has to do, I think, with, frankly, a larger

7    fundamental disconnect about the scope of discovery in this

8    case, and we have produced everything the plaintiffs shared on

9    Facebook and all information about all their activities on the

10   platform, and that is everything that is relevant to the four

11   issues in the case that Judge Chhabria identified as the

12   actionable claims for which discovery is appropriate.

13         What we are concerned about is that the plaintiffs have

14   now identified other issues about how our platform operates,

15   other data privacy practices that have nothing to do with the

16   four issues in this case but more broadly our entire -- our

17   business.

18         And so just by way of example, there's an entire other

19   litigation, not this case, an entire other litigation called

20   the Facebook Tracking -- In Re Facebook Tracking; and the

21   plaintiffs want to know how, if at all, we track users, how we

22   target ads to them.  Again, nothing to do with this case.  They

23   want to know -- I'll give you another example.

24         Facebook rolled out a brand new videoconference system

25   called Rooms.  Plaintiffs wanted to know, you know, about its

1    privacy features.  A complaint was filed alleging that Zoom,

2    which we all know about now, shares information with Facebook.

3    Plaintiffs said they want to know about Zoom.

4        So the concern is that this lawsuit not turn into a roving

5    audit of our privacy and platform practices beyond the scope of

6    this case and be confined to what's at issue.

7        And what we produced -- now I'm going back to the issue --

8    what the plaintiffs' information we produced is everything that

9    is relevant to the issues in this case, which has to do with,

10   as Judge Chhabria explained in his decision, what sensitive

11   information -- photographs, videos, religious/political views,

12   relationship information -- that plaintiffs shared with

13   Facebook that then Facebook then shared with third parties

14   before 2009 because the Court held that after 2009 --

15        THE COURT:  Okay.  All right.  No, no, no.  So I think

16   maybe there's not a disconnect so much as a disagreement as to

17   relevant.  I don't know who of the plaintiffs want to --

18        MR. LOESER:  Your Honor, if I can --

19        THE COURT:  I'm not going to answer it right now, but

20   you may want to be heard.

21        MR. LOESER:  Your Honor, both Ms. Weaver and I have,

22   I'm sure, something to say about this so I'll start and then

23   Leslie can chime in as well.

24        I mean, this is a really important issue in the case, and

25   I think what I just heard kind of brings to mind the old

1    expression "I'm not paranoid.  It's just that people keep

2    following me."

3          And, you know, we've been very concerned in this case from

4    the start that Facebook's approach to discovery was going to be

5    to withhold critical information and try and win this case by

6    never producing critical information.  And we have asked from

7    the very beginning and made it very, very clear that we were

8    interested in all of the information, even information Facebook

9    collected, about the named plaintiffs, both their platform

10   activity and their off-platform activity, and there has been

11   nothing from Judge Chhabria that would rule out that discovery.

12         And so clearly there's a huge disagreement here.  It is a

13   discovery issue.  We have asked for this information in

14   discovery, specific discovery requests, seeking all plaintiff

15   information.  And what's really concerning -- there's two

16   things concerning here that I think the Court can address

17   immediately.

18         One is a process issue.  So we've been asking for this

19   information for months from our earliest discovery requests,

20   and as recently as last week we were told the information just

21   didn't even exist, that we were looked at like we were crazy

22   and there is no dossier, there is no other information;

23   Facebook just has information about what users post themselves

24   on the platform and that's what Facebook has produced.

25         So last week we were told doesn't even exist, and then we

hear for the very first time in a joint statement a detailed
description that acknowledges that this data does exist; it's
just not being produced.

And so as a procedural mechanism, it would be very helpful
if we tweaked the joint statement rules a little bit so we
exchange an initial four-page statement and then subsequently
that initial four pages doesn't change at all but the parties
can have a page to provide a reply.

Because what we had here was we sent in our statement, we
got a very plain vanilla statement from Facebook, and then a
complete rewrite which raises these issues for the very first
time and identifies information for the very first time that,
frankly, we've been asking about for months.  So I think, as a
procedural mechanism, it would be very helpful if we could
tweak that.

But substantively what we really want to do, since this is
a ripe discovery dispute, is we want to brief the issue.  We
think ten-page briefs with a three-page reply would be enough
to deal with the issue, and we'd like to get that heard because
it really does have a tremendous impact on the case, the
discovery, and everything that flows from here.

**MS. WEAVER:**  And if I may, Your Honor.

**THE COURT:**  Yes.

**MS. WEAVER:**  Thank you.

So just two more points.  We discussed with Your Honor at

1    the last hearing this concern we have that there are responsive

2    materials that are being withheld that have not been

3    identified, and this is the perfect example.  We propounded

4    RFPs 9 and 10 and 9 includes a request "including but not

5    all" -- so "all documents relating to each of the named

6    plaintiffs, including, but not limited to, all content and

7    information collected about each of them or gained from

8    business relationships or any other source.

9         Judge Chhabria's order at page 8 says (reading):

10            "The complaint alleges that Facebook shared

11            information about its users with this nonexclusive list of

12            business partners."

13        Business partner reciprocity data sharing is very clearly

14   within the scope of this case, just as separately the

15   information that Facebook has about our named plaintiffs.

16        You know, in the last hearing they complained that we

17   weren't identifying offensive ads.  Our understanding is that

18   Facebook maintains data precisely about what users -- ads users

19   are watching, how they respond, how to manipulate them.  All of

20   that information is in datasets about each of the users.

21   That's what we understand, and we would like to brief this

22   because we understand now that Facebook disputes that.

23        So the issue for us is we would like, first, what

24   Your Honor said they should do by the 5th, this Wednesday, we

25   would like them to tell us "This is the material that we

possess that is responsive to these RFPs seeking data about the

named plaintiffs."  Yes, there's their platform activity which

they've given to us, but they haven't even identified what

other data they have about the plaintiffs.

What they say in the statement here for the first time

(reading):

> "Given that this case is about whether Facebook
> shared with third parties information users intended to
> share only with their Facebook friends, it is unclear what
> additional user data would be relevant."

That's as specific as they -- what additional user data do

they have?  We don't know.  We want them to tell us and then

say, "We say this isn't relevant," and then we can put before

Your Honor this brief, and we proposed -- we would propose that

we brief it -- we can get a ten-page brief in by the 7th,

Friday the 7th --

**THE COURT:**  We're not going to go that quickly

because --

**MS. WEAVER:**  Okay.

**THE COURT:**  But let me hear from -- Ms. Kutscher

wanted to say something.

**MS. KUTSCHER:**  I'd appreciate the ability to respond

to that because I think a lot was miscommunicated in the last

few minutes.

First of all, I want to be very clear, the list of types

of data that was in our joint statement is what has already

been produced.  We have already produced about 800,000 pages

that includes everything we listed, all of the platform

activity, the advertising information, contact information,

likes, friends, followers, groups, searches, hobbies, music

preferences, marketplace activity, payment history.  Everything

that's listed there, that has already been produced.

We have been discussing this issue, as Mr. Loeser said,

for six, eight months.  At the very beginning plaintiffs asked

us to produce every single thing on the named plaintiffs.  We

told them at that point that it would be virtually impossible

to comb the entire company information about 2 billion users

for every single data point that might exist regarding a named

plaintiff.

And the reason for that is, as we've discussed previously,

the company runs millions and millions of analytics about its

platform so we have millions of tables, for instance, that

might include one data point on every user across the platform.

It would be impossible for us to collect all of that.

So what we told the plaintiffs at the very outset is we

will produce the data that's directly associated with the named

plaintiff, and we did produce that file and that's actually

what they're requesting, "What's the file you have on

everyone?"  We produced the file that we have on all the named

plaintiffs.  And this is the data that is aggregated about all

1  of the named plaintiffs in a single spot, and that's what we've

2  produced.

3       So what we've been trying to communicate and what I hoped

4  to communicate in our joint statement, and I apologize if

5  something was lost, but if there's something additional they

6  need, we're going to need to do a very specific one-off dig

7  across the entire company platform for that data point.  So we

8  need to know what they're looking for.  We can't simply search

9  a company with 2 billion users and trillions of pieces of data

10 for anything that might be related to any plaintiff.  We need

11 to know what they want.

12          **THE COURT:**  Okay.  So --

13          **MR. LOESER:**  Your Honor, might I just --

14          **THE COURT:**  No, no, no.  This is what I want you to

15 do.  So I think I'll take the plaintiffs' initial proposal in

16 their statement, which is this should be on your agenda to

17 discuss -- right? -- in detail in our statement for our next

18 conference.  And I'll also take Mr. Loeser's suggestion that

19 you have a chance, each side, to respond to what the other says

20 as well.

21      I want you each to recite where you believe those

22 discussions are, like, where your understanding is, so that we

23 can then have a robust discussion about it at our conference.

24 And I can even give you additional pages.  Not an argument,

25 just a recitation of where you believe the discussion is.

1          So the plaintiffs, you know, will summarize "This is what

2     we're asking.  This is what we understand the defendant's

3     position is."  And the defendants will say "This is our

4     position"; right?  So if there is stuff, Mr. Snyder said there

5     is stuff you believe not relevant -- I assume then you believe

6     it's requested or you wouldn't have to address it -- then

7     explain what it is or it's impossible to get; or whatever it

8     may be, have that, you know, and then lay that out and then

9     we'll talk about briefing it, but it's premature to do that

10    now.

11         But I also don't want it briefed until the plaintiffs have

12    reviewed all the files, and maybe you already have, that were

13    produced to you on the named plaintiffs.  Have you done that?

14         **MS. WEAVER:**  Yes, Your Honor.  This is Leslie Weaver.

15         What they have produced, and this is an important

16    distinction, is a subset of archived platform activity.  What

17    we are seeking is the datasets and data information that

18    Facebook exchanges with its business partners.  They haven't

19    even identified who the business partners are, let alone said

20    "These are the datasets."

21         And so how it functionally operates is that these data

22    points sit in a data source, which they have also not

23    identified all of those, and then algorithms are run when

24    people want to advertise or seek and reach out to them on top

25    of the datasets.

1      And our concept was -- and even Judge Chhabria mentioned

2  this -- give us the datasets, not just the platform activity,

3  the datasets that you have just for each of our named

4  plaintiffs.  This is what David Carroll's -- there are people

5  who have been trying to seek this through other actions.  This

6  is the forum.  This is the case where Facebook should be

7  saying, "This is what we have on you, named plaintiffs," and

8  then we can look at that and it goes to offensiveness.

9  Judge Chhabria says this in Footnote 17 of his order.

10         **THE COURT:**  All right.  We'll deal with what -- we'll

11  deal with that.

12         **MS. WEAVER:**  Yeah.  Good.

13         **THE COURT:**  So everybody quit saying "Judge Chhabria,"

14  "Judge Chhabria," "Judge Chhabria"; right?

15         **MS. WEAVER:**  Good.  Good.  Good.

16         **MR. LOESER:**  We're going to say "Judge Corley,"

17  "Judge Corley," "Judge Corley."

18         **THE COURT:**  I can consult with Judge Chhabria; right?

19  This isn't settlement.  There's nothing that prohibits me from

20  speaking with Judge Chhabria.  So just so you know, I will;

21  right?

22         **MS. WEAVER:**  Right.  But the point is --

23         **THE COURT:**  But, you know, I don't want to do

24  something and then you appeal and then -- I mean, that's

25  inefficient.  I mean, you can appeal, that's fine, to him, but

1    it would be inefficient if I wasn't coordinating with him at

2    the outset.

3           **MS. WEAVER:**  Of course, Your Honor, and let me just

4    finish the thought very quickly, though.  I apologize.

5      The point is that this goes to the offensiveness of the

6    privacy invasions.  I mean, there are all these data --

7           **THE COURT:**  I don't know.

8           **MS. WEAVER:**  Yeah.

9           **THE COURT:**  I don't know.  See, I'm trying to -- I

10   know you guys all want to, like, argue it now, but I'm telling

11   you it's going right through my head.

12           **MS. WEAVER:**  Okay.

13           **THE COURT:**  I'm going to deal with it in context

14   because it's complicated so I can really think about it and

15   delve into it, and I can't do that -- I'm not going to do that

16   right now.

17           **MS. KUTSCHER:**  I just want --

18           **MR. LOESER:**  Your Honor, the path that --

19           **THE COURT:**  Wait.  Wait.  Wait.  Ms. Kutscher is

20   speaking.

21           **MR. KUTSCHER:**  Oh, I'm sorry.

22           **THE COURT:**  No.  Go ahead.

23           **MS. KUTSCHER:**  Thank you.

24      I just want to be very clear that what we have produced

25   really is the dataset they're, quote/unquote, talking about.

**THE COURT:** I don't know.  I don't know.  I don't have it.  I can't see it and I don't know.  I understand that's your position.  That's what you said, they seem to be seeking more.  They said they reviewed what you produced.  That's why you need to talk -- right? -- and that's why you need to talk and figure it out so at least you understand each other's position clearly so then I can, you know, resolve it doing that.  So it should go on your meet and confer agenda.

**MR. SNYDER:** Yes, Judge.  Thank you.

**MR. LOESER:** Your Honor, I think the path makes sense and we will do that.  You'll be hearing a lot from the plaintiffs about the difference between platform and nonplatform activity.

I want to go back to --

**THE COURT:** Okay.  None of you can, like, stop arguing.  None of you can stop it.

**MR. LOESER:** To go back to the procedural point, which goes beyond this, and that's how the joint statements are prepared, it would really be helpful for this process if we had some direction.  I mean, what I think would work best is if -- and I think this is how Your Honor typically manages these statements -- the parties submit a joint statement.  They don't change what they've submitted to each other.  They just have a response to respond to what's been submitted.

That will then, I think, make it far less likely that

1  issues are presented for the very first time where the other

2  party has then no opportunity to address it other than orally

3  at the hearing.  I think it's just as a matter --

4          **THE COURT:**  I don't know.  Does Facebook have any

5  objection to that?  You would have the same opportunity.

6          **MS. KUTSCHER:**  Yes, that's absolutely fine.

7      And I just want to make clear, because there seems to be

8  some concern here, there was no effort to raise a new issue in

9  our joint statement.  We really were trying to respond to what

10  we received from plaintiffs, and obviously we can't predict

11  everything that would be in their statement so we responded to

12  it.

13          **THE COURT:**  No, that's fine.  I mean, it doesn't help

14  anyone.  These are just status conferences so I don't feel like

15  anyone's trying to sandbag anyone because I'm not deciding

16  anything now.

17      So just work out however you want to do it.  All I want

18  is, though, the statements to be complete by the deadline that

19  I gave before.  Don't cut out my time, which is pretty limited

20  as it is, so...

21          **MS. KUTSCHER:**  I'm sure we can work out a process.

22          **THE COURT:**  I know you can.

23      So the other issue the plaintiffs raised was wanting to

24  move up to two meet and confers a week of up to two hours.  You

25  don't have to take the two hours.  I think when we started this

1    process there were three.  Two seems appropriate.  Everyone's

2    shaking their head, so there you go.  Agreement again.

3    Agreement.

4         **MR. LOESER:**  Well, and I'm the one who -- I guess I'm

5    the happy cheerful one on this call.  The parties are getting

6    along very well.  I mean, we have some real serious

7    disagreements here, but I think that the meet and confers are

8    very helpful and effective and having two a week I think will

9    continue to move the case forward.

10        **THE COURT:**  No, no, they're so much more effective

11   than letter and e-mailing writing, so much more effective, and

12   you can really cut through things.  They save time.

13        And, yeah, you know, you have disagreements.  That is

14   completely fair and to be expected, particularly when you have

15   able counsel on both sides.  So I look forward to helping you

16   in resolving those disputes.  I just want to make sure they're

17   ripe and sharp by the time they get to me.

18        All right.  So we should pick another -- we've been

19   meeting about once a month; is that right?  So perhaps our next

20   one would be August 28th.

21        **MS. WEAVER:**  Actually, Your Honor, if we -- I think

22   we've been meeting once every two weeks.

23        **THE COURT:**  Oh.

24        **MS. WEAVER:**  I know, it feels longer, and I think it

25   is really helpful to have these deadlines so if --

1              **THE COURT:**  Yeah.  So August 14th then.

2              **MS. WEAVER:**  That would be helpful.

3      And, Your Honor, we're also mindful of how busy the Court

4      is.  I think it is helpful when you issue an order

5      memorializing what has occurred in the conferences for both

6      parties.  It just minimizes chatter.

7              **THE COURT:**  Sure thing.  Sure thing.

8      Okay.  All right.  So is everyone agreeable to August 14th

9      and does this time work well, 8:30?  11:30 for Mr. Snyder.

10             **MR. SNYDER:**  Perfect judge.  Thank you.

11             **MR. MONTGOMERY:**  And, Your Honor, this is Matt

12     Montgomery.

13     We haven't talked about it.  In our statement we mentioned

14     our third set of document requests, and we just ask that the

15     parties continue to meet and confer and reach their final

16     positions on those requests two weeks from today, the 14th.  I

17     just want to raise it in case you have any questions about that

18     or want to discuss that.

19             **THE COURT:**  Well, I don't have any questions.  I mean,

20     you know, I think you need to, like -- the first thing is the

21     search terms; right?  That's got to be your priority to get

22     that resolved.

23     It sounds like figuring out this data, the plaintiffs'

24     dataset, is super important as well, and then this would come

25     after that.  So I'm not going to say that you have to

1  necessarily get it resolved but it should be on your agenda.

2  You should meet and confer on it.  You're going to have two

3  weeks, four sessions at least.  You can always do more.

4            MR. MONTGOMERY:  Thank you, Your Honor.

5            MR. KO:  One thing that's worth noting about the third

6  RFPs -- this is David Ko again -- they are connected to the

7  search term process.  For example, there are many of the RFPs

8  for which Facebook has said "We can deal with these through the

9  search term process."  So it is important to kind of have that

10  process be part of the search terms to a certain degree, which

11  is why Mr. Montgomery was suggesting a more accelerated

12  deadline.

13            THE COURT:  Well, then it seems like it's part of it

14  then.  I mean, part of it.

15            MR. MONTGOMERY:  Yeah.  I think what he's saying is to

16  the extent that they're covered by search terms, it will be on

17  the search term part of our negotiations; but to the extent it

18  isn't about search terms, we'd like to get it resolved in a

19  couple weeks.

20            THE COURT:  Why?

21            MR. MONTGOMERY:  Because historically these things

22  have dragged on and on.  I'm not pointing fingers.  I'm just

23  saying that it tends --

24            THE COURT:  Well, but why?  Why is two weeks

25  necessary?  There's a lot of document production that's going

1 on.  And I have news for you, you're not going to trial anytime

2 soon but we're moving along.  I'm meeting with you every two

3 weeks, which is pretty extraordinary.  So this case is actually

4 moving on more than any other case, and I don't know that it's

5 more important than any other case but you're getting that

6 attention.

7 So I know you would like it, but there's a lot of

8 documents there to review.  If you told me "We've reviewed

9 every single piece of paper that they've produced and we're

10 just sitting here twiddling our thumbs waiting for more paper,"

11 I might think about it differently.  I don't think that's the

12 case; right?

13 **MR. MONTGOMERY:**  It is not the case.

14 **THE COURT:**  Okay.  All right.  Good.

15 All right.

16 **MR. LOESER:**  We're not twiddling our thumbs,

17 Your Honor.  We just aren't ever leaving our homes.

18 **THE COURT:**  Well, unfortunately, that's kind of what

19 we have to do for a little while.  For a little while we just

20 have to.  We just have to.

21 Okay.  I can't believe it's July 31st already.  I will see

22 you all at 8:30 on August 14th, and I'll issue an order today.

23 **ALL:**  Thank you, Your Honor.

24 (Proceedings adjourned at 8:56 a.m.)

25 ---oOo---

1

2

3                          <u>**CERTIFICATE OF REPORTER**</u>

4              I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Friday, July 31, 2020

8

9

10

11    _____

12         Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                   U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25