EXHIBIT B

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and<br>Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: August 14, 2020<br>Hearing Time: 8:30 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for August 14, 2020 at 8:30 a.m.

I.     **PLAINTIFFS' STATEMENT**

**1.  Issues the Parties Have Addressed Since the Last Discovery Conference**

Pursuant to the July 30, 2020 Joint Status Update and the Court's Discovery Order No. 5, the items on the parties' agenda since the last conference were: a) seeking to reach agreement on a set of comprehensive search terms to identify documents responsive to Plaintiffs' document requests, b) Plaintiffs' document production, c) identifying categories of documents relating to Facebook's App Developer Investigation ("ADI") over which Facebook claims privilege, and d) whether Facebook has produced all documents relating to Named Plaintiffs. The parties' progress on these issues follows.

a.     **Search Terms:** On July 31, Plaintiffs provided Facebook with proposed revisions to Facebook's search term proposal, including additional terms. The parties held their initial meet and confer on August 5 and the parties have continued to meet and confer. Plaintiffs await delivery of Facebook's hit reports so that the parties can meaningfully evaluate the results and determine which terms to apply. Plaintiffs hope Facebook will produce these no later than August 13. Plaintiffs anticipate the revised and additional terms should be applied to all custodians, consistent with the parties' intent that these search terms be as comprehensive as possible.

b.     **Plaintiffs' Document Production:** Plaintiffs continue to collect, review, and produce documents and ESI responsive to Facebook's first set of document requests ("1st RFPs"). Plaintiffs have produced 5,644 pages of documents thus far, including Plaintiffs' production of August 12. To date, Plaintiffs have collected 845,000 email items from custodians and are conducting preliminary search term testing. Plaintiffs anticipate completing search term testing this week and proposing search terms to Facebook by Friday, August 14, for subsequent discussion.

As part of the parties' discussions regarding Plaintiffs' responses and objections to

Facebook's First Set of RFPs, Plaintiffs have informed Facebook about two isolated preservation issues, both involving Plaintiffs who received repeated preservation instructions since the outset of the litigation. While investigation is underway, one plaintiff's old laptop may have been discarded by a family member when the laptop was not in her possession. A second plaintiff had emails removed automatically by his email service provider when his account was closed due to sustained hacking activity. Some of the facts surrounding the loss of those emails were included in both consolidated complaints. *See* FAC ¶¶ 59 ("Plaintiff . . . had to delete his email account and subsequently lost a large amount of information."), Dkt. No. 157; SAC ¶¶ 68, Dkt. No. 491. Plaintiffs are investigating whether the documents can be recovered. Counsel have thoroughly vetted and informed all 23 Named Plaintiffs of their ongoing obligations to preserve evidence. Plaintiffs are actively investigating these issues and will keep Facebook apprised.

      **c.**      **ADI:** In response to Plaintiffs' proposal made July 22, on August 3, Facebook outlined a framework for selecting a limited number of apps which could then be used to identify a sample of ADI-related documents to test Facebook's categorical claims of privilege. The following day, Plaintiffs made a detailed counterproposal consistent with that framework. Plaintiffs await Facebook's response and hope to receive it shortly.

      **d.**      **Named Plaintiffs' Data:** Consistent with this Court's Discovery Order No. 5, Plaintiffs have completed their review of all documents Facebook has produced regarding the Named Plaintiffs. This review confirms that significant amounts of data are missing from the production. Specifically, Facebook's production to date only includes the Named Plaintiffs' "archives." The archives are created through a Facebook tool which allows users to download certain subsets of activity on the Facebook platform. The download tool excludes numerous kinds of data including some off-platform activity and other important information about Facebook users – such as GPS information, cell tower information, and data analytics possessed by Facebook drawn from all Facebook activity – which allows Facebook to sell inferences about the Named Plaintiffs to business partners and whitelisted apps. Plaintiffs have repeatedly given specific examples, including data about how long each user watched specific videos and engaged

with other content and how they reacted, information which third parties use to target and trigger responses in users. As of the writing of this status update, Facebook has not informed Plaintiffs "precisely what is the data that is being withheld," as required by this Court's Discovery Order No. 5, or even identified the categories of data responsive to this request. Plaintiffs have reiterated their request that Facebook make a data scientist or other knowledgeable person available to discuss these issues with Plaintiffs' expert, which request Facebook has again refused. In the alternative, Plaintiffs seek to conduct a deposition pursuant to Fed. R. Civ. Proc. 30(b)(6) on this topic which has been pending since November 2019 (see Topic 6).

### 2. Proposed Agenda

In addition to the issues set forth above, Plaintiffs respectfully propose that the following item be included on the parties' agenda between this and the next discovery conference:

    **a.** **Procedure for exchanging Joint Statements**: Plaintiffs request entry of an order regarding submission of status updates as follows: the parties exchange four-page status updates on Tuesday at 4 pm (accommodating Facebook's request for more time to confer) and a one-page response is added and filed at 12:00 pm Thursday, with no changes to the preceding section. Notwithstanding the Court's last order that "[t]he joint statement process shall be modified to allow each side one additional page to respond to the opposing party's statement" (Dkt. No. 487, ¶ 5), Facebook has insisted that the parties exchange the four-page section on both Tuesday and Wednesday, with a reply on Thursday, also insisting that it can rewrite the previously exchanged sections. Plaintiffs do not think this proposal encourages transparency and cooperation, and therefore seek entry of the proposal above.

## FACEBOOK'S STATEMENT

Facebook appreciates the Court's continued assistance focusing discovery efforts.

**Plaintiffs' Data**: The Court ordered Facebook to describe the user data it maintains and produced. The user data Facebook collects falls into three categories:

• **Data about things people do and share on Facebook**. This includes data people share when they register for Facebook (like name, email address, age, and gender) and when they post (like text and photos). It also includes data about how they use Facebook, including content they view or engage with; the features they use; and the people, Groups, Events or Pages they interact with. It includes videos, posts, settings, comments, messages, likes, reactions, friends, followers, places lived, search history, hobbies, music preferences, marketplace activity, payment history, saved items, apps and websites visited using Facebook, businesses and organizations followed, and any religious, political, and relationship information people choose to share on Facebook.

• **Data from devices people use to access Facebook**. This includes data such as device attributes, IP addresses, and cookie information.

• **Data from third parties**. This includes data Facebook receives when another company uses its business tools, which Facebook uses to help website owners, app developers, and business partners integrate with Facebook.

Facebook produced the information from these three categories directly associated with each Plaintiff's account—including data relating only to dismissed or stayed theories[1]—totaling more than **800,000 pages** of user data related to Plaintiffs. This information does not consist only of users' "archive," as Plaintiffs suggest. The "archive" is where users can save stories they share for only-24 hours on Facebook, and it is a small portion of the data Facebook produced.

On Aug. 5, the parties met and conferred about this data. Facebook asked if Plaintiffs completed their review of the data in light of Plaintiffs' representation at the July 13 hearing that reviewing the data would not be "proportional" due to its volume. July 13, 2020 Trans. at 21:14-

---

[1] See Dkt. 298 at 6-10, staying all claims not based on four specific theories related to the information users intended to share with their friends on Facebook—noting that many of Plaintiffs' allegations were too "disparate and vague" to move forward, *id.* at 6.

22:7. Plaintiffs said they did, but during the parties' discussion Plaintiffs incorrectly stated that they had not yet received several types of data that were included in Facebook's production.

For example, Plaintiffs maintained incorrectly that Facebook produced only the data Plaintiffs *shared* on FB and asked when Facebook would produce information collected from third parties about off-Facebook activity. Facebook already did. Plaintiff Charnae Tutt is a good example. The data produced for Ms. Tutt includes **283** pages of off-Facebook activity. FB-CA-MDL_01004288-433, 01037123-261. It includes a list of more tha[n] ███ B-CA-MDL_010371231-130. It also shows the information provided by those third parties. ███ It shows that Ms. Tutt viewed content on ███ [T]hese are just examples.

Plaintiffs also asked when Facebook would produce information about Plaintiffs' interactions with advertisements. This information was also produced. The produced information contains a list of ad topics most relevant to the user (i.e. types of ads targeted to the user), advertisers who collected information from the user, and information the user submitted to advertisers ███ FB-CA-MDL_01037112-121.

Plaintiffs also wanted to know when information from Plaintiffs' devices would be

produced. It was. The materials produced include the users' logins, logouts, periods of time the user was active on Facebook, devices used to access Facebook, cookie information, and IP addresses. Ms. Tutt's data includes more than ▮▮▮ ▮▮▮ FB-CA-MDL_00926869-00926874. Plaintiffs also say GPS data was not produced. Again, it was. For Ms. Tutt, Facebook produced 86 pages listing more than ▮▮▮ ▮▮▮ FB-CA-MDL-01047308-93. For instance, the materials show that on August 18, 2015, Facebook estimates Ms. Tutt logged in ▮▮▮



When Facebook asked what additional information Plaintiffs seek, they demanded that Facebook produce all *internal* business analytics or analyses that include user information. Plaintiffs were unable to articulate how this information relates to a theory that survived dismissal and does not fall within the Court's discovery stay. Nonetheless, Facebook explained that it could not reasonably search for, collect, and produce it. As the Court observed: "The thing about Facebook . . . is [it's] an incredibly large, complex, completely ESI company. It is nothing but ESI. That's all it is." Trans. of May 1, 2020 Hearing at 40:9-12. Facebook employs thousands of data scientists and engineers who run analyses of Platform data as part of their job duties. For instance, Facebook uses aggregated user data to track how many users log onto Facebook, which is essential to scoping Facebook's infrastructure needs. It also analyzes user data to identify bugs, troubleshoot new products, detect and prevent spam, and promote safety and security. There is no way for Facebook to identify all data points contained within these analyses that may have originated from Plaintiffs. Facebook has many millions of data tables—many of which contain multiple terabytes or even petabytes of data. Those tables are not indexed and the data in them is anonymized within 90 days. To find the data Plaintiffs seek, Facebook would need to identify every single internal analysis that uses Platform data and

attempt to de-anonymize every data point within those analyses to determine if any information provided by the Named Plaintiffs is among the data. Even a large team of engineers working full time for several years likely could not identify all of the information Plaintiffs seek.

Rather than diligently review the data Facebook produced, Plaintiffs suggest they should take a 30(b)(6) deposition to learn what counsel has repeatedly told them—Plaintiffs have the materials they demand. To the extent Plaintiffs seek a 30(b)(6) regarding which internal analyses may contain anonymized data originating from their accounts, the Company could not feasibly put forth a 30(b)(6) deponent on this topic. Even if it could, such a deposition would violate the discovery stay and this Court's orders. Plaintiffs previously demanded an ESI deposition.[2] This Court denied that request, explaining: Facebook "is nothing but ESI." "[T]he likelihood that one person is knowledgeable on everything seems to me not likely." *Id.* at 40:9-12, 15-16. "On the ESI discussions, I'm not going to require any more . . . I'm not satisfied there's anything more in particular that you need." Trans. of May 15 Hearing at 6:16-22.

**Search Terms.** The Search Term Protocol provides for search terms to be negotiated on a rolling basis for Facebook's 81 custodians. On July 21, Facebook made a comprehensive proposal with hit counts for 38 of the 81 custodians, including 79 unique search strings that hit on **approximately one million documents,** with families. Facebook estimates its proposal would require review of **over 4 million pages,**[3] **for less than half of the custodians**.

Plaintiffs provided a counterproposal that expands dramatically the 79 search strings Facebook proposed and includes **455** additional search strings. Although Facebook carefully identified the custodians to which each of its proposed search strings would be applied, Plaintiffs did not. When Facebook asked Plaintiffs to identify the custodians for which each term should be applied, Plaintiffs instead insisted that Facebook run the 455 new searches on every single custodian—notwithstanding the specific RFPs for which each was selected, and without considering the custodians' diverse job responsibilities and knowledge.

---

[2] The notice at issue was served in April, not Nov., and does not include the topic Plaintiffs note.
[3] This estimate is based on the average pages of company documents Facebook produced to date.

Facebook is concerned by this position, which unwinds months' of work by both parties to identify 81 custodians likely to have materials related to specific issues in the case. Indeed, the Court allowed such a high number of custodians in this action on the basis that search terms would be tailored and custodian-specific. What is more, many of the searches Plaintiffs wish to apply to every custodian have no good faith basis—including a search consisting only of expletives (and various misspellings of the expletives) combined with terms like privacy or data.

Preparing hit counts for Plaintiffs' proposal was delayed by various formatting and syntax errors the parties worked together to resolve over two weeks. Facebook has now provided detailed hit reports, which show that the proposal hits on **more than 15 million documents**, which Facebook estimates would require it to review **more than 60 million pages for less than half the custodians**. The searches will require significant tailoring.

**Privileged Legal Files.** The Court instructed the parties to identify a process to address the privileged materials Plaintiffs seek from Facebook's App Developer Investigation. The parties have exchanged various proposals and are optimistic they will agree to a protocol shortly.

**Hearing/Joint Statement Schedule.** Facebook suggests the Court extend the time between hearings. Discovery has reached a new stage where many processes are on autopilot. An additional week or two between hearings would allow more progress between sessions.

The joint-statement process has also taken on an unintended life of its own. Facebook has two concerns about the new process Plaintiffs propose. *First*, it is clunky. The parties should each provide the Court a single coherent statement, rather than require the Court to dig through openings that cannot be changed and replies. *Second*, discovery is lopsided and most issues raised relate to Facebook's efforts. The process Plaintiffs propose allows Plaintiffs to use four pages to raise issues about Facebook, but provides Facebook only one page to respond to any issues it did not predict. The week of hearings, the parties should exchange joint statements not to exceed four pages. Then they should revise their statements to address any issues raised by the other party. If, after this, a party feels it needs to address something added to the second draft, it should do so, adding no more than an additional page to the appropriate section(s).

### III. PLAINTIFFS' RESPONSE

a.  **Named Plaintiffs' Data:** Facebook admits in its statement that it has only produced information "directly associated with each Plaintiff's account," but has neglected to explain what this means or what information about the Named Plaintiffs it maintains that is not directly associated with each Plaintiff's account. Plaintiffs have identified plaintiff data that Facebook maintains but has not produced – for example, detailed information available to advertisers about who clicks on their ads that is not available to users. Plaintiffs have repeatedly asked what else Facebook is not producing, but Facebook has failed to state, as this Court ordered, "precisely what is the data that is being withheld." Discovery Order No. 5, Dkt No. 487, ¶ 4. Until it does so, neither Plaintiffs nor the Court can assess whether Facebook is withholding relevant data.

Perhaps to distract the Court from its failure to identify the plaintiff data it is withholding, Facebook claims that Plaintiffs requested three categories of data it had already produced: data from third parties, data regarding interactions with advertisers, and data about devices. In fact, Plaintiffs gave Facebook specific examples of data from all three categories that it has not produced and asked what other responsive data the company is withholding. Facebook has not responded.

Finally, Facebook claims that Plaintiffs have demanded it produce every analysis that includes a single piece of data about the Named Plaintiffs. This is a strawman. Plaintiffs seek only those analyses relevant to their claims and have never asserted otherwise.

b.  **Search Terms:** Facebook objects to running search terms on all custodians, but doing so imposes virtually no additional burden. Further, it provides additional information about each custodian's knowledge that the parties can use to refine and target searches as appropriate. As such, there is no reason to limit the scope of hit reports at this time.

Dated: August 13, 2020

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By: /s/ *Derek W. Loeser*
    Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*


GIBSON, DUNN, & CRUTCHER LLP

By: /s/ *Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

BLEICHMAR FONTI & AULD LLP

By: /s/ *Lesley E. Weaver*
    Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed Friday, August 13, 2020, at Oakland, California.

*s/ Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I, Lesley E. Weaver, hereby certify that on August 13, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record. I also caused a copy of the under seal filings to be delivered to all counsel of record via electronic mail.

*s/ Lesley E. Weaver*
Lesley E. Weaver