GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS NAOMI BUTLER AND PETER CHRISTLEY AND MOTION TO STRIKE FROM SACC CLAIMS THAT HAVE BEEN DISMISSED WITH PREJUDICE**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom 4, 17th Floor<br>Hearing Date:  November 5, 2020<br>Hearing Time:  10:00 a.m. |

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS NAOMI BUTLER AND PETER CHRISTLEY AND MOTION TO STRIKE FROM SACC CLAIMS THAT HAVE BEEN DISMISSED WITH PREJUDICE– Case No. 3:18-md-02843-VC

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

      I.     Procedural History ................................................................................. 2

      II.    The 2018 Terms of Service ................................................................... 2

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

      I.     The Court should dismiss the U.K. Plaintiffs based on forum non conveniens ........... 5

            A.    The forum selection clause in the 2018 Terms precludes the U.K. Plaintiffs from pursuing claims before this Court. ............................................. 5

            B.    Forum non conveniens dismissal is warranted without the forum-selection clause ....................................................................................... 7

      II.    The choice-of-law clause requires dismissal ........................................................... 12

      III.   The Court should strike from the SACC claims dismissed with prejudice ................. 14

CONCLUSION ...................................................................................................................... 15

---

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
    657 F. App'x 661 (9th Cir. 2016) ...........................................................................................6

*Aimsley Enters. Inc. v. Merryman*,
    2020 WL 1677330 (N.D. Cal. Apr. 6, 2020) ...........................................................................5

*In re Air Crash Over Mid-Atl. on June 1, 2009*,
    760 F. Supp. 2d 832 (N.D. Cal. 2010) ...................................................................................11

*Ansari v. New York Univ.*,
    179 F.R.D. 112 (S.D.N.Y. 1998) ...........................................................................................10

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
    571 U.S. 49 (2013) ...........................................................................................4, 5, 6, 7, 8

*Ayco Farms, Inc. v. Ochoa*,
    862 F.3d 945 (9th Cir. 2017) ...........................................................................................5, 9, 11

*Bersch v. Drexel Firestone, Inc.*,
    519 F.2d 974 (2d Cir. 1975) ...................................................................................................9

*C.M.D. v. Facebook, Inc.*,
    2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) .......................................................................14

*Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*,
    2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) .....................................................................12

*CL-Alexanders Laing & Cruickshank v. Goldfeld*,
    127 F.R.D. 454 (S.D.N.Y. 1989) ...........................................................................................10

*Coon v. Nicola*,
    21 Cal. Rptr. 2d 846 (Cal. Ct. App. 1993) ............................................................................14

*Daugherty v. Experian Info. Sols., Inc.*,
    847 F. Supp. 2d 1189 (N.D. Cal. 2012) ................................................................................13

*Dibdin v. S. Tyneside NHS Healthcare Tr.*,
    2013 WL 327324 (C.D. Cal. Jan. 29, 2013) .........................................................................11

*Finkelstein v. AXA Equitable Life Ins. Co.*,
    325 F. Supp. 3d 1061 (N.D. Cal. 2018) ................................................................................13

*Gaby's Bags, LLC v. Mercari, Inc.*,
    2020 WL 1531341 (N.D. Cal. Mar. 31, 2020) .......................................................................14

ii

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................................5, 13

*Gbarabe v. Chevron Corp.*,
    2017 WL 956628 (N.D. Cal. Mar. 13, 2017) ....................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ..........................................................................................................9

*Globatrac LLC v. JB Squared Ltd.*,
    2016 WL 9045479 (C.D. Cal. Feb. 5, 2016) ................................................7, 9, 11, 12

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
    2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) ..................................................................5

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ......................................................................................13

*Heller v. Adobe Sys., Inc.*,
    2016 WL 1213762 (N.D. Cal. Mar. 29, 2016) .................................................................7

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ..................................................................................7, 13

*Homeland Housewares, LLC v. John Mills, Ltd.*,
    2014 WL 12588638 (C.D. Cal. June 5, 2014) .................................................................8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................5, 13

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) ........................................................................................15

*Lavigne v. Herbalife, LTD*,
    2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ...............................................................14

*Lewis v. Liberty Mut. Ins. Co.*,
    953 F.3d 1160 (9th Cir. 2020) ........................................................................................6

*Lightfoot v. MoneyonMobile, Inc.*,
    2019 WL 2476624 (N.D. Cal. June 13, 2019) .................................................................7

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ..........................................................................................................9

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ........................................................................................11

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
### (*continued*)

**Page(s)**

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ............................................................8, 9, 12

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ...........................................................................7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988).............................................................6, 7

*Mills v. Rogers*,
  457 U.S. 291 (1982) .........................................................................11

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014).............................................................12

*Openshaw v. FedEx Ground Package Sys., Inc.*,
  731 F. Supp. 2d 987 (C.D. Cal. 2010) ................................................9

*Palomino v. Facebook Inc.*,
  2017 WL 76901 (N.D. Cal. Jan. 9, 2017) .........................................14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) .....................................................................8, 11

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
  2014 WL 5422576 (N.D. Cal. Oct. 10, 2014).....................................8

*Richards v. Lloyd's of London*,
  135 F.3d 1289 (9th Cir. 1998).........................................................6, 14

*Richter v. CC-Palo Alto, Inc.*,
  2017 WL 4236992 (N.D. Cal. Sept. 25, 2017) ...................................15

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*,
  482 U.S. 522 (1987) ...........................................................................9

*Summa Res. Holdings LLC v. Carbon Energy Ltd.*,
  2016 WL 2593868 (N.D. Cal. May 5, 2016) .......................................12

*Sweet v. Google Inc.*,
  2018 WL 1184777 (N.D. Cal. Mar. 7, 2018) ....................................5, 13

*Teledyne Sci. & Imaging, LLC. v. Qioptiq Ltd.*,
  2010 WL 11598032 (C.D. Cal. July 19, 2010) ...................................8

*Tennecal Funding Corp. v. Sakura Bank*,
  87 F.3d 1322, 1996 WL 341957 (9th Cir. 1996) ...............................5

iv

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS NAOMI BUTLER AND PETER CHRISTLEY AND MOTION TO STRIKE FROM SACC
CLAIMS THAT HAVE BEEN DISMISSED WITH PREJUDICE– CASE NO. 3:18-MD-02843-VC

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*TradeComet.com LLC v. Google, Inc.*,
  435 F. App'x 31 (2d Cir. 2011).........................................................................14

*Trans-Tec Asia v. M/V HARMONY CONTAINER*,
  518 F.3d 1120 (9th Cir. 2008)............................................................................7

*Tyars v. Finner*,
  709 F.2d 1274 (9th Cir. 1983)..........................................................................11

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
  290 F. Supp. 2d 1057 (N.D. Cal. 2003) ........................................................5, 13

*In re Verisig, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .............................................................14

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009).............................................................................11

*Warlop v. Lernout*,
  473 F. Supp. 2d 260 (D. Mass. 2007) ...............................................................10

*Warn v. M/Y Maridome*,
  169 F.3d 625 (9th Cir. 1999)...............................................................................8

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
  407 F. Supp. 3d 931 (S.D. Cal. 2019)..................................................................6

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
  101 Cal. Rptr. 347 (Cal. Ct. App. 1972) .............................................................7

**Statutes**

28 U.S.C. § 1783 ....................................................................................................9

**Other Authorities**

Erin F. Delaney, *Judiciary Rising: Constitutional Change in the United Kingdom*, 108
  Nw. U. L. Rev. 543, 590 & n.275 (2014) ..........................................................10

European Comm'n Amicus Br., *United States v. Microsoft Corp.*,
  No. 17-2 (U.S. Dec. 13, 2017) ..........................................................................11

U.S. District Courts, *National Judicial Caseload Profile—California Northern* (Mar.
  21, 2020) ..........................................................................................................12

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

**Rules**

Fed. R. Civ. P. 12(f) ................................................................................................................15

Fed. R. Civ. P. 45(b) ................................................................................................................9

Gibson, Dunn &
Crutcher LLP

## INTRODUCTION

After more than two years of litigation and a revolving door of named plaintiffs, Plaintiffs have doubled down on their catch-as-catch-can plan to expand the scope of this lawsuit beyond any reasoned bounds.  Plaintiffs' Second Amended Consolidated Complaint (the "SACC") adds five new named plaintiffs, two of whom are citizens and residents of the United Kingdom (the "U.K. Plaintiffs") and bound by forum selection clauses that require the U.K. Plaintiffs to file suit in their home countries or Ireland.  Why Plaintiffs' counsel is intent on litigating claims on behalf of foreign plaintiffs in this U.S. multi-district litigation remains unanswered—but it is presumably *not* because a British newspaper reported the Cambridge Analytica story, as counsel suggested (Tr. at 6:18 (July 15, 2020)).  The United Kingdom has a substantial interest in protecting its citizens' privacy and adjudicating disputes involving those rights.  Its courts apply U.K. law every day.  And both U.K. Plaintiffs agreed to valid forum selection and choice-of-law clauses that require them to bring suit at home (or in Ireland).  As a matter of comity, competence, and contract, the U.K. Plaintiffs' claims should be dismissed for two reasons.

*First*, the Court should dismiss the U.K. Plaintiffs' claims under the doctrine of forum non conveniens.  The U.K. Plaintiffs assented to Facebook's 2018 Terms of Service ("2018 Terms"), which contain a forum selection clause that requires the U.K. Plaintiffs to bring any claim about the Facebook platform and services either in their home jurisdiction or in Ireland.  That forum selection clause is valid and enforceable.  Under binding Supreme Court precedent, the forum non conveniens analysis stops there.  The Court can dismiss the U.K. Plaintiffs' claims for this reason alone.

But the forum selection clause is only half the story.  Under the traditional forum non conveniens analysis, the United Kingdom provides a superior forum for the U.K. Plaintiffs to litigate their claims, and they would face no inconvenience if they were required to litigate in their home country or in Ireland.  By contrast, allowing them to pursue their claims in the U.S. presents significant due process concerns with respect to Facebook's ability to conduct discovery and enforce any judgment abroad.  The Court can and should dismiss the U.K. Plaintiffs' claims under forum non conveniens even if it declines to adjudicate the validity and enforceability of the contractual forum selection clause.

*Second*, the U.K. Plaintiffs' claims should be dismissed under Rule 12(b)(6).  The 2018 Terms contain a mandatory choice-of-law clause requiring the U.K. Plaintiffs to bring any claims related to

1

Defendant Facebook, Inc.'s Memorandum of Law in Support of Motion to Dismiss
Plaintiffs Naomi Butler and Peter Christley and Motion to Strike from SACC
Claims That Have Been Dismissed With Prejudice– Case No. 3:18-md-02843-VC

their use of Facebook under U.K. or Irish law.  The claims the U.K. Plaintiffs seek to pursue here are brought under U.S. state and federal law.  The parties' contract expressly bars these claims.

The Court recently observed that it had a "very hard time imagining that [it] would ever conclude that it's appropriate to bring claims on behalf of all Facebook users in the UK" or that such claims are "our business rather than the business of the court system in the UK."  Tr. 4:16-20 (July 15, 2020).  This observation was correct.  If a U.K. resident brought an individual action against Facebook in this Court, there is no doubt that a contractual agreement requiring the plaintiff to sue at home and under her own laws would bar the case.  That the U.K. Plaintiffs seek to piggyback onto an ongoing multi-district litigation cannot change that result.  The Court should dismiss their claims.

## BACKGROUND

### I.    Procedural History

Named plaintiffs have churned in and out of this case.  Within a year of filing the First Amended Complaint, fourteen named Plaintiffs dismissed their claims.  To deal with this exodus, on April 14, 2020, Plaintiffs moved for leave to file the SACC, which proposed adding five new named Plaintiffs— including the two U.K. Plaintiffs, Naomi Butler and Peter Christley.  Dkt. 397; Dkt. 398-2 ¶¶ 77, 94.

While Facebook did not oppose adding new U.S. Plaintiffs to the case, it opposed adding U.K. Plaintiffs who signed a forum selection clause requiring them to bring any claims against Facebook in the U.K.  After a hearing on Plaintiffs' motion for leave to amend, the Court found that it "seems very likely that the claims by the U.K. plaintiffs should be adjudicated in the U.K. rather than here, as a matter of both the 2018 revised terms of service and general principles of forum non conveniens."  Pretrial Order No. 38 (Dkt. 482) at 1.  The Court concluded, however, that it could not decide this issue "definitively" on a motion for leave to amend and invited a "motion to dismiss for forum non conveniens or other appropriate motion" if Plaintiffs included U.K. Plaintiffs in the SACC.

Two weeks later, Plaintiffs filed their SACC, which includes the two U.K. Plaintiffs.  The SACC does not conform to the Court's prior rulings.  It includes causes of action the Court dismissed with prejudice and is riddled with allegations relating only to dismissed or stayed theories.

### II.   The 2018 Terms of Service

U.K. Facebook users have agreed by contract to pursue any claims relating to their use of

Facebook in the United Kingdom or Ireland.  In April 2018, Facebook introduced new terms of service to all European users, including U.K. users.  Declaration of Michael Duffey ("Duffey Decl.") ¶¶ 4–6.[1]

The 2018 Terms prohibit U.K. Facebook users from bringing claims against Facebook in U.S. courts:

> If you are a consumer and habitually reside in a Member State of the European Union, . . . you may resolve [any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products] in any competent court in that Member State that has jurisdiction over the claim. In all other cases, you agree that the claim must be resolved in a competent court in the Republic of Ireland . . . .

Duffey Decl., Ex. 1 ¶ 4.[2]

The 2018 Terms also contain a mandatory choice-of-law clause that, by its terms, requires U.K. Facebook users to bring claims related to their use of Facebook under U.K. or Irish law:

> If you are a consumer and habitually reside in a Member State of the European Union, the laws of that Member State will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim") . . . .  In all other cases, you agree that . . . Irish law will govern these Terms and any claim, without regard to conflict of law provisions.

Duffey Decl., Ex. 1 ¶ 4.[3]  While prior terms of service applicable to U.K. users contained a California forum selection clause and a California choice-of-law clause, the 2018 Terms "supersede any prior agreements" between the user and Facebook.  Duffey Decl., Ex. 1 ¶ 5.1.  The 2018 Terms became effective on May 25, 2018—the same day that the General Data Protection Regulation ("GDPR") took effect.  Duffey Decl. ¶ 6.  Facebook made some clarifying changes to the 2018 Terms on July 31, 2019 (the "2019 Terms"), but those changes do not modify the forum selection clause.  *See* Duffey Decl ¶ 7; *id.* Ex. 3 ¶ 4.  The 2019 Terms remain in effect for U.K. Facebook users.  *Id.*

The forum selection and choice-of-law clauses apply to the U.K. Plaintiffs' claims.  As part of its introduction of the 2018 Terms to all European Facebook users, Facebook launched a "GDPR user

---

[1]   In the United Kingdom, Facebook's platform and services are provided to Facebook users by Facebook Ireland Limited, an Irish company headquartered in Dublin that is a wholly owned subsidiary of Facebook, Inc. (the publicly traded Delaware corporation that is headquartered in Menlo Park, California).  *See* Duffey Decl. ¶¶ 3–4.

[2]   The U.K. leaving the European Union has no impact on where the U.K. Plaintiffs may bring suit.  *See* Declaration of Brian Kennelly Q.C. ("Kennelly Decl.") at 28 n.28  At all material times, if the U.K. Plaintiffs are consumer users, E.U. law (until December 31, 2020) and laws in the U.K. (thereafter) allow them to bring claims in the courts of their own domicile (i.e., somewhere in the United Kingdom).  Otherwise, all claims must be brought in Ireland.  *Id.* ¶¶ 78–84.

[3]   To the extent the U.K. Plaintiffs are consumer users under applicable EU and UK law they may be able to bring certain claims under English (or, where relevant, Scottish) law.  Kennelly Decl. ¶ 79, 84.

engagement flow" that introduced the 2018 Terms and other updated policies to users in Europe. Duffey Decl. ¶ 8.  When European Facebook users logged onto Facebook, a banner was displayed in their News Feed (viewable on both desktop and mobile) that encouraged them to launch and complete the GDPR user engagement flow and accept the 2018 Terms by May 24, 2018.  *Id.*  The user engagement flow included a screen that was titled "Please accept our updated Terms to continue using Facebook" and contained text stating "By tapping I Accept, you accept the updated Terms.  If you don't want to accept the Terms, see your options."  Duffey Decl., Ex. 4.  A user who clicked on the link to see other options was offered, as an alternative to accepting the updated Terms, the opportunity to download all of her data off Facebook and delete her account.  Duffey Decl. ¶ 8.  There was no option to continue using Facebook after May 24, 2018, without accepting the 2018 Terms.  *See id.*

The allegations in the SACC establish that the U.K. Plaintiffs assented to the forum selection and choice of law clauses in the 2018 Terms. The U.K. Plaintiffs allege that they joined Facebook before 2018 (SACC ¶¶ 77, 85) and that they remain active Facebook users and maintain their "account[s] to the present day" (*id.*).  Their continued use of Facebook after May 24, 2018, establishes that they agreed to the 2018 Terms by clicking the "I Accept" button in the GDPR user engagement flow, thereby assenting to the 2018 Terms.  Duffey Decl. ¶ 8.

Facebook's records also confirm that U.K. Plaintiffs Butler and Christley accepted the 2018 Terms.  Butler accepted the GDPR user engagement flow, including the 2018 Terms, on April 24, 2018 and Christley did so on April 20, 2018.  Declaration of Thang Nguyen ¶¶ 5–6.  As this Court held previously, Facebook users are bound by provisions in Facebook's terms of service if they had actual notice of the terms and agreed to them.  Pretrial Order No. 20 (Dkt. 298) at 25–26.  The U.K. Plaintiffs had notice of and accepted terms containing a U.K. / Ireland forum selection and choice-of-law clause.

### STANDARD OF REVIEW

The U.K. Plaintiffs' claims should be dismissed under the doctrine of forum non conveniens. Dismissal under "the doctrine of forum non conveniens" is the "appropriate way to enforce" a forum selection clause selecting a foreign forum.  *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60, 66 n.8 (2013).  Even without a forum selection clause, dismissal on forum non conveniens grounds is appropriate where there is an adequate alternative forum outside the federal system and the balance of

4

private and public factors favors dismissal. *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017). A forum non conveniens motion is not a Rule 12 motion. *Atl. Marine*, 571 U.S. at 60. The Court is not limited to the contents of the pleadings when deciding a forum non conveniens argument; it may consider evidence, such as documents and declarations, and make findings of fact if necessary. *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1062 n.1 (N.D. Cal. 2003); *Tenneco Funding Corp. v. Sakura Bank*, 87 F.3d 1322 (table), 1996 WL 341957, at *1 (9th Cir. 1996) (mem.).

The U.K. Plaintiffs' claims are also subject to dismissal under Rule 12(b)(6) based on the parties' choice-of-law clause. In resolving a 12(b)(6) motion, the Court may consider a contract's formation and terms if the contract is incorporated by reference into the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Grouse River Outfitters Ltd v. NetSuite, Inc.*, 2016 WL 5930273, at *3 (N.D. Cal. Oct. 12, 2016). This includes documents and declarations establishing contractual assent to online terms of service. *Sweet v. Google Inc.*, 2018 WL 1184777, at *3 (N.D. Cal. Mar. 7, 2018); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

## ARGUMENT

## I.    The Court should dismiss the U.K. Plaintiffs based on forum non conveniens.

Claims are subject to dismissal under the doctrine of forum non conveniens where (1) the parties have agreed to a forum selection clause and there are no "exceptional" circumstances, or (2) there is an adequate alternative forum outside the federal system and both public and private interests favor dismissal. *Atl. Marine*, 571 U.S. at 62. Under this doctrine, the Court should require the U.K. Plaintiffs to bring their claims in the forum they agreed to, which is also the appropriate forum to decide their claims.

### A.    The forum selection clause in the 2018 Terms precludes the U.K. Plaintiffs from pursuing claims before this Court.

The U.K. Plaintiffs are contractually obligated not to pursue any claims against Facebook in U.S. courts. The forum selection clause in the 2018 Terms requires them to resolve any claim, cause of action, or dispute related to the terms of service or the U.K. Plaintiffs' use of Facebook's platform and services in their home jurisdiction or in Ireland, not in the U.S. *Supra* at 3; Duffey Decl., Ex. 1 ¶ 4.

Courts in this Circuit routinely find that "dismissal is appropriate" when "enforcement of a forum selection clause calls for venue in a foreign court." *Aimsley Enters. Inc. v. Merryman*, 2020 WL

1677330, at *5 (N.D. Cal. Apr. 6, 2020); *accord  Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1160 (9th Cir. 2020) (affirming dismissal under forum non conveniens to enforce forum selection clause choosing Australia); *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661 (9th Cir. 2016) (same, as to German forum); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988) (same, as to Italian forum); *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 944 (S.D. Cal. 2019) (same, as to England and Wales).  Indeed, in "all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain" regarding where they will litigate.  *Atl. Marine*, 571 U.S. at 66 (quotation marks omitted).  As the parties challenging the agreed-upon forum, the U.K. Plaintiffs "bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."  *Id.* at 64.  They cannot make the "strong showing" required to carry that burden.  *Lewis*, 953 F.3d at 1165 (quotation omitted)

The U.K. Plaintiffs do not allege the forum selection clause "is invalid due to fraud or overreaching."  *Lewis*, 953 F.3d at 1165 (quotation omitted).  Nor could they.  They received individual notice of the 2018 Terms.  They accepted those Terms.  And even after receiving explicit notice that Facebook intended to invoke the forum selection clause in this litigation,[4] the U.K. Plaintiffs declined to allege in their complaint that Facebook made any misrepresentation about the 2018 Terms or exerted undue pressure on them to agree to the Terms.

Likewise, the SACC does not allege that enforcing the forum selection clause "would contravene a strong public policy of the forum in which suit is brought."  *Lewis*, 953 F.3d at 1165 (quotation omitted).  Binding authority holds that public policy favors enforcement of forum selection clauses that select the United Kingdom as the forum.  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1293–95 (9th Cir. 1998) (en banc).  And, here, "trial in the contractual forum" would not be "so gravely difficult and inconvenient that the plaintiff will for all practical purposes be deprived of his day in court" as compared to a trial in California.  *Lewis*, 953 F.3d at 1165 (quotation omitted).  The 2018 Terms permit the U.K. Plaintiffs to sue in their home countries, under their own laws, and before their own courts.  Courts in the U.K. are best positioned to determine how the 2018 Terms—to which the U.K. Plaintiffs

---

[4]  *See* Facebook, Inc.'s Opp. to Pls.' Mot. for Leave to File Second Am. Consol. Compl. 2–5 (May 19, 2020) (Dkt. 442).

agreed while residing in the U.K.—apply and should be enforced under U.K. law (and the same applies for Irish courts). *See Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

The U.K. Plaintiffs affirmatively assented to the forum selection clause in the 2018 Terms, *supra* at 4–5, and it is therefore binding under U.K. and Irish law.  Kennelly Decl. ¶¶ 86–93.  It is binding under California law as well.  *See In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 350 (Cal. Ct. App. 1972)).  But the Court need not assess the validity of the 2018 Terms or the U.K. Plaintiffs' assent to those terms to conclude that the forum selection clause supports dismissal under forum non conveniens.  Under federal law a "forum selection clause is 'prima facie valid'" and sufficient to support dismissal.  *Lightfoot v. MoneyonMobile, Inc.*, 2019 WL 2476624, at *3 (N.D. Cal. June 13, 2019) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  Indeed, both the question of validity and the question of assent must be assessed under the law of the United Kingdom (the forum where the contracts were proposed, accepted, and where the U.K. Plaintiffs are domiciled) or Ireland.  *See Trans-Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120, 1124–25 (9th Cir. 2008); *Heller v. Adobe Sys., Inc.*, 2016 WL 1213762, at *2 (N.D. Cal. Mar. 29, 2016).  A court in the U.K. or Ireland is best situated to undertake that analysis.  *See Globatrac LLC v. JB Squared Ltd.*, 2016 WL 9045479, at *6 (C.D. Cal. Feb. 5, 2016) ("that the English courts are more adept at interpreting and applying English law" "weighs strongly in favor of dismissal").  A court in U.K. Plaintiffs' home forum should analyze the 2018 Terms in the first instance.

The Supreme Court has long held that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine*, 571 U.S. at 63.  To "change the bargain" after the fact "would completely contradict the policy of enforcing forum selection clauses."  *Manetti-Farrow*, 858 F.2d at 515.  The Court should dismiss the U.K. Plaintiffs' claims for this reason alone.

**B.      Forum non conveniens dismissal is warranted without the forum selection clause.**

Dismissal is also appropriate on forum non conveniens grounds because there is an adequate alternative forum overseas and the balance of private- and public-interest factors favors dismissal.

7

### 1.    There is an adequate alternative forum.

The U.K. Plaintiffs cannot argue that they lack an adequate alternative forum.  The U.K. Plaintiffs can sue in the courts of England, Wales, or Ireland if they are consumers, or Ireland if they are not consumers.  Kennelly Decl. ¶¶ 72, 84.  And they are able to pursue "judicial remed[ies]" in those courts.  *See, e.g.*, *id.* ¶¶ 11, 16, 22, 32, 45, 54, 67.  As one court explained, there is no "Ninth Circuit case that has found England [an] inadequate [forum], but there are a number finding England adequate."  *Homeland Housewares, LLC v. John Mills, Ltd.*, 2014 WL 12588638, at *5 (C.D. Cal. June 5, 2014); *see also Teledyne Sci. & Imaging, LLC. v. Qioptiq Ltd.*, 2010 WL 11598032, at *8 (C.D. Cal. July 19, 2010) (dismissing on forum non conveniens ground).  The Ninth Circuit has described the United Kingdom as providing "[an] adequate, if not superior, alternative forum[]."  *Warn v. M/Y Maridome*, 169 F.3d 625, 629 (9th Cir. 1999).  There is no basis to find otherwise here.

### 2.    The public and private interest factors favor dismissal.

A court deciding whether to dismiss on the basis of forum non conveniens may consider a number of "private interest factors," such as the parties' residence, whether witnesses can be compelled to appear, access to evidence, the enforceability of judgment, and all other practical problems associated with trial of a case.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).  The court also considers several "public interest factors," such as the local interests in the lawsuit, the court's familiarity with governing law, and court congestion and burdens.  *Id.*  Here, the factors favor dismissal.

### a)    The private interest factors favor dismissal.

With respect to the U.K. Plaintiffs' interests, when a party agrees to a forum selection clause, a "court . . . should not consider [the party's] private interests."  *Atl. Marine*, 571 U.S. at 63–65.  But, even if the Court were to consider the U.K. Plaintiffs' interests, their decision to sue in a country where they "do[] not reside" calls for "substantially reduced" deference.  *Rabinowitz v. Samsung Elecs. Am., Inc.*, 2014 WL 5422576, at *3 (N.D. Cal. Oct. 10, 2014); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (a "foreign plaintiff's choice [of forum] deserves less deference").  This is because it would be far *more convenient* for the U.K. Plaintiffs to bring claims in their own backyard, rather than in the U.S., and the U.K. Plaintiffs have offered no reason why they would be better off litigating their claims abroad.  Both the U.K. Plaintiffs' "residence" and the "forum's convenience to the litigants" tip

8

in favor of the U.K. Plaintiffs bringing their claims in the U.K. or Ireland.  *Lueck*, 236 F.3d at 1145.

As for Facebook, adding foreign plaintiffs to this multi-district litigation raises a number of due process concerns.  Due process guarantees the right to "present every available defense."  *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).  This right guarantees sufficient discovery to allow each party "a fair opportunity to present" its claims and defenses.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991); *see Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987, 995 (C.D. Cal. 2010).  It also requires the judgment to be equally binding on all parties.  *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).  Adding U.K. Plaintiffs to this case creates serious risks to Facebook's ability to subpoena witnesses, conduct document discovery, and enforce any judgment abroad.

**Witnesses could not be compelled to testify.**  If U.K. Plaintiffs were allowed to pursue their claims here, "many witnesses . . . could probably not be compelled to appear in California court."  *Ayco Farms*, 862 F.3d at 950–51.  Witnesses who "are located in Europe," such as non-party class members from the United Kingdom, are "outside of this Court's subpoena power."  *Globatrac LLC*, 2016 WL 9045479, at *5 (dismissing claims on forum non conveniens grounds where parties' contract selected "England" as the forum and "English" law); *see* 28 U.S.C. § 1783; Fed. R. Civ. P. 45(b)(2)–(b)(3).  As a result, "the only class member testimony at trial" would be from "witnesses plaintiff wants or is able to proffer."  *Gbarabe v. Chevron Corp.*, 2017 WL 956628, at *36 (N.D. Cal. Mar. 13, 2017).

**The Court's lack of subpoena power would hamstring document discovery**.  The Hague Convention procedures for taking evidence abroad subject the "court hearing a case involving a national of a contracting state to the internal laws of that state," which can interfere even with routine "document requests."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 539 (1987).  And U.K. courts cannot order a U.K. resident to respond to the types of requests for production of documents that are the bread-and-butter of U.S. pretrial discovery.  Kennelly Decl. ¶¶ 128–30.  The Court's lack of U.K. subpoena power would make "access to physical evidence and other sources of proof" difficult and create significant "practical problems."  *Lueck*, 236 F.3d at 1145.

**A judgment in this case would likely not bind absent U.K. class members**.  This is true

9

because neither the issues nor the parties in this case would be the same in U.K. litigation.[5]

Res judicata would apply only if "the issues in dispute" in later litigation in the U.K. were "materially the same" as the issues in dispute in this case.  Kennelly Decl. ¶¶ 122–23.  But privacy rights in the U.K. flow from a set of laws that is fundamentally different from the American laws at issue in this case.  Kennelly Decl. ¶¶ 6–70.  This case involves a number of common-law claims, but in "English law, privacy never achieved the status of a common law right."  Erin F. Delaney, *Judiciary Rising: Constitutional Change in the United Kingdom*, 108 Nw. U. L. Rev. 543, 590 & n.275 (2014); *accord* Kennelly Decl. ¶ 6.  Instead, "[t]he majority of the rights are provided under EU and domestic legislation governing data protection."  Kennelly Decl. ¶ 6.  The GDPR's protections—and those available under other "data protection legislation that is in place in England and Ireland"—are "materially different in scope and effect to any of the causes of action pursued in the MDL."  *Id*. ¶¶ 8–13, 123.  As a result, a U.K. court would likely conclude that the issues being litigated in this case are not materially the same as the issues that would be litigated in follow-on U.K. litigation.  *Id*.

Similarly, under both English and Irish law, "for a foreign judgment to be treated as having a preclusive effect, the parties must be *identical* to the parties in the English [or Irish] action."  Kennelly Decl. ¶ 120 (emphasis added); *see id.* ¶ 125.  That requirement likely would not be satisfied in any future action brought in a U.K. Court because English and Irish law do not recognize opt-out class actions except in the context of competition law damages actions.  Under the Group Litigation Order system, "a represented person"—i.e., an absent class member who did not affirmatively opt into the class in a U.S. class action—"is not a party to the claim."  *Id.* ¶ 120 & n.56 (quotation omitted).  As a consequence, it is unlikely that U.K. law would give Facebook "res judicata protection against class members in an 'opt-out' kind of class."  *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 455 (S.D.N.Y. 1989); *accord Ansari v. New York Univ.*, 179 F.R.D. 112, 116–17 (S.D.N.Y. 1998).  Because "[i]t is not clear that Europe would enforce a class action judgment," this "private factor[ ] strongly supports dismissal."  *Warlop v. Lernout*, 473 F. Supp. 2d 260, 263 (D. Mass. 2007).

Dismissing the U.K. Plaintiffs' claims would avoid these serious constitutional concerns and

---

[5]   For similar reasons, it is unlikely that a U.K. court would find that subsequent litigation in the United Kingdom was barred as an abuse of process.  Kennelly Decl. ¶¶ 112–15, 122, 124.

10

comport with the "settled policy" that courts should "avoid unnecessary decisions of constitutional issues." *Tyars v. Finner*, 709 F.2d 1274, 1283 (9th Cir. 1983) (quoting *Mills v. Rogers*, 457 U.S. 291 (1982)) (applying doctrine to avoid "due process" issue).

### b)      The public interest factors favor dismissal.

Public interest factors also favor dismissal.  As an initial matter, litigating the U.K. Plaintiffs' claims in this Court would require the Court to apply unfamiliar law because the 2018 Terms contain a mandatory choice-of-law clause that requires the U.K. Plaintiffs to sue under U.K. or Irish law.  *See infra*, at 12–14.  "[T]his factor weighs strongly in favor of dismissal because . . .  [t]here is no doubt that the English courts are more adept at interpreting and applying English law." *Globatrac LLC*, 2016 WL 9045479, at *6.  Even if there were questions regarding whether and how the choice-of-law clause applies—and there is not—a U.K. court would be best positioned to resolve it.  "[T]his Court need not definitively determine which law will apply . . . before dismissing on forum non conveniens grounds." *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 847 (N.D. Cal. 2010).  A "lack of familiarity with foreign law [alone] counsel[s] in favor of dismissal." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009); *Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324, at *6 (C.D. Cal. Jan. 29, 2013) ("The likelihood of applying English law weighs in favor of dismissal.").

The foreign interests in dismissal are also strong.  This dispute involves U.K. Plaintiffs who have used Facebook in the United Kingdom and whose data is handled by Facebook Ireland, an Irish company.  The "crux of the parties' dispute concerns a contract that was . . . signed . . . in" the United Kingdom. *Ayco Farms*, 862 F.3d at 950; *see Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664–65 (9th Cir. 2009) (affirming dismissal on forum non conveniens grounds a claim that "Starwood, operating in Mexico, caused [plaintiff's]" injury in Mexico").  There is an interest "in having localized controversies decided at home," *Piper Aircraft*, 454 U.S. at 260.  Here, the foreign interests are particularly strong because the U.K. Plaintiffs are governed by an entirely different privacy-law scheme, the GDPR, which "is a comprehensive framework" that is designed to protect European Union citizens and "their right to the protection of personal data."  European Comm'n Amicus Br. 8, *United States v. Microsoft Corp.*, No. 17-2 (U.S. Dec. 13, 2017); *see* Kennelly Decl. ¶¶ 7–27.  "[W]hat better court to consider those questions than the court in the U.K.?"  Tr. 16:20-23.

Conversely, "California has little interest [in] . . . and there is little reason to burden California jurors with hearing" the U.K. Plaintiffs' claims. *Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*, 2003 WL 22682483, at *8 (N.D. Cal. Nov. 10, 2003). Facebook, Inc. is a resident of this forum but the U.K. Plaintiffs' data relationship is with Facebook Ireland. California's "general interest in good corporate behavior . . . should not be overstated[] given that Plaintiffs are not California citizens" and that Facebook Ireland "is not a California resident corporation." *Mujica v. AirScan Inc.*, 771 F.3d 580, 610 (9th Cir. 2014) (citation omitted). Under these circumstances, the domestic interest is "slight compared to the time and resources the district court . . . would expend if it were to retain jurisdiction." *Lueck*, 236 F.3d at 1147. It would be "very strange [for] this court [to] decide what" U.K. citizens' "interests are and whether and how they should be vindicated." Tr. 14:10-14.

Finally, dismissing the U.K. Plaintiffs' claims would promote judicial efficiency. As the Court knows, this MDL already consumes substantial judicial resources, and adding foreign plaintiffs would only make the case more time-consuming and burdensome. Indeed, "the docket of this Court is heavily congested." *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, 2016 WL 2593868, at *7 (N.D. Cal. May 5, 2016). The median time from "filing to trial" in this District is 22 months. U.S. District Courts, *National Judicial Caseload Profile—California Northern* (Mar. 21, 2020). In contrast, "the average time to trial in English courts is 12 months." *Globatrac*, 2016 WL 9045479, at *6.

The Court should dismiss the U.K. Plaintiffs on forum non conveniens grounds.

## II.      The choice-of-law clause requires dismissal.

If the Court is not inclined to dismiss the U.K. Plaintiffs' claims on forum non conveniens grounds, it should dismiss them under Rule 12(b)(6). Even though the 2018 Terms contain a mandatory choice-of-law clause that requires the U.K. Plaintiffs to bring claims related to their use of Facebook under U.K. or Irish law, here they assert California and U.S. federal claims. The 2018 Terms provide:

> If you are a consumer and habitually reside in a Member State of the European Union, the laws of that Member State will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim") . . . . In all other cases, you agree that . . . Irish law will govern these Terms and any claim, without regard to conflict of law provisions.

Duffey Decl., Ex. 1 ¶ 4.

As the U.K. Plaintiffs seem to concede, they assented to the 2018 Terms by accepting them in

the GDPR engagement flow—as they must have done to maintain their accounts "to the present day," SACC ¶¶ 77, 85, and as confirmed by Facebook, Nguyen Decl. ¶¶ 5–6.  Under English and Irish law, affirmative assent to an online agreement is sufficient to form a contract.  Kennelly Decl. ¶¶ 90–91.  The U.K. Plaintiffs' actions were likewise sufficient to form a contract under California law.  "[C]onsumer online agreements" requiring affirmative asset are enforceable.  *In re Holl*, 925 F.3d at 1083–84.  The U.K. Plaintiffs are bound by the 2018 Terms, including the choice-of-law clause.[6]

This choice-of-law provision is also enforceable.  Under U.K. or Irish law, the choice-of-law clause is "drafted in plain English," is "not contrary to principles of good faith," and does not create an "imbalance" between the parties.  Kennelly Decl. ¶ 100; *see id.* ¶¶ 94–101 (concluding the Terms of Service would be enforceable under English or Irish law).  Under both California and federal law, there is a strong policy in favor of enforcing choice-of-law clauses as long as (1) the chosen law has a substantial relationship to the parties or their transaction and (2) applying the chosen law would not contravene any fundamental public policy.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194–95 (N.D. Cal. 2012).  That Facebook Ireland—the party that maintains Plaintiffs' data, *see supra* note 1—is an Irish company "is sufficient to establish a substantial relationship between" Ireland and the parties, and the fact that the U.K. Plaintiffs are residents and citizens of the U.K. would establish a substantial relationship with the U.K.  *Hatfield*, 564 F.3d at 1183.  Applying U.K. or Irish law would not contravene any fundamental California policy.  Just the opposite—both U.K. and Irish law provide the U.K. plaintiffs with a robust set of privacy and data-protection rights.  *See* Kennelly Decl. ¶¶ 6–70.

Finally, the choice-of-law provision applies to the claims the U.K. Plaintiffs seek to pursue.

---

[6]   The Court may consider the choice-of-law clause under Rule 12(b)(6) because the contract is incorporated by reference into the SACC (notably, because the U.K. Plaintiffs plead a breach-of-contract claim).  *See* Dkt. 298 at 23 n.12; *accord Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1066 (N.D. Cal. 2018).  Although the U.K. Plaintiffs do "not explicitly allege the contents of" the 2018 Terms, "incorporation by reference" "extend[s]" to this situation because Plaintiffs' claims "depend[ ] on the[ir] contents." *Knievel*, 393 F.3d at 1076.  This Court may also consider declarations establishing Plaintiffs' assent at the 12(b)(6) stage because mutual assent is an element of contract formation and the declarations show why the SACC's allegations establish consent. *See, e.g., Garcia*, 78 F. Supp. 3d at 1136 (declaration establishing plaintiff "necessarily had to agree with [defendant's] TOS"); *Sweet*, 2018 WL 1184777, at *3 (declaration explaining how users agreed to YouTube terms of service).  Even if this Court concludes it cannot consider the declarations under Rule 12(b)(6), it can under the forum non conveniens analysis.  *U.S. Vestor, LLC*, 290 F. Supp. 2d at 1062 n.1.

The 2018 Terms govern "any" claim that U.K. Plaintiffs have against Facebook arising out of or relating to the Terms of Facebook Products.  The "Facebook Products" include the Facebook platform and services at issue in this litigation.  Duffey Decl. ¶ 6; *id.* Ex. 2.  Accordingly, their claims "arise[ ] out of or relate[ ]" to the Terms of Service or the Facebook Products.  *See, e.g.*, *Lavigne v. Herbalife, LTD*,  2019 WL 6721619, at *11 (C.D. Cal. Oct. 22, 2019); *see also* Kennelly Decl. ¶¶ 76–77.

Under English and Irish contract-law principles, the 2018 Terms' choice-of-law clause applies to all claims the U.K. Plaintiffs might have arising out of their use of Facebook, regardless of whether those claims accrued before or after they agreed to the clause.  Kennelly Decl. ¶¶ 73–75.  When parties agree that all claims on a subject will be governed by a particular set of laws, the claims are not divided into time periods, unless the contract says so.  *Id.*  Although U.K. law governs this question, California law is consistent.  The choice-of-law clause in the 2018 Terms applies even if "all the events underlying the claims occurred before the parties executed the agreement."  *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007); *see* Kennelly Decl. ¶¶ 73–75.  Contracting parties are free to agree to a forum selection clause that applies to preexisting claims.  *See TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34–35 (2d Cir. 2011) (applying California law); *Coon v. Nicola*, 21 Cal. Rptr. 2d 846, 855 (Cal. Ct. App. 1993).  That is precisely what the parties did here.

Because the U.K. Plaintiffs agreed not to bring claims under U.S. law, the court must dismiss the federal and state claims that they assert, as courts in this circuit routinely do.  *E.g.*, *Richards*, 135 F.3d at 1292–94 (affirming enforcement of contract choosing English law); *Gaby's Bags, LLC v. Mercari, Inc.*, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020); *accord Palomino v. Facebook Inc.*, 2017 WL 76901, at *2–*5 (N.D. Cal. Jan. 9, 2017); *C.M.D. v. Facebook, Inc.*, 2014 WL 1266291, at *5 (N.D. Cal. Mar. 26, 2014).

## III.    The Court should strike from the SACC claims dismissed with prejudice.

Not only do Plaintiffs seek to expand the scope of the case, they also failed to conform the SACC to the Court's prior rulings.  The SACC includes causes of action the Court fully dismissed without leave to amend, such as Plaintiffs' California Unfair Competition Law ("UCL") and right of publicity claims.  *See* Pretrial Order No. 20 (Dkt. 298) at 41–42; *see also id.* at 32 n. 18 ("Unless stated otherwise, dismissal is without leave to amend").  It is also riddled with allegations relating only to

Defendant Facebook, Inc.'s Memorandum of Law in Support of Motion to Dismiss
Plaintiffs Naomi Butler and Peter Christley and Motion to Strike from SACC
Claims That Have Been Dismissed With Prejudice– Case No. 3:18-md-02843-VC

theories the Court dismissed without leave to amend.  For instance, the Court held that users who joined Facebook in 2009 or later "agreed that app developers could access their information" through interactions with their friends, *id.* at 25-26, and dismissed with prejudice Plaintiffs' claims as they relate to "allowing standard app developers to obtain user information through users' friends" "for users who established their Facebook accounts after that time," *id.* at 39; *see also id.* at 34, 40-41.  With respect to Plaintiffs' alleged injuries, the Court held that Plaintiffs plausibly alleged only "a simple 'privacy injury,'" *id.* at 13-14, and not any "lost money or property," *id.* at 42; *see also id.* at 13-14.  The Court also dismissed in part a number of Plaintiffs' causes of action, without leave to amend.  *See id.* 30-42.

Plaintiffs' nonconforming 1,388-paragraph SACC will serve only to complicate discovery and subsequent disputes regarding their claims (which perhaps is their intent).  To avoid confusion, the Court should at minimum strike Plaintiffs' UCL and right of publicity causes of action (SACC ¶¶ 915–38 and 953–62), which the Court dismissed in full with prejudice, under Rule 12(f).  Rule 12(f) permits a court to "strike . . . any redundant, immaterial, impertinent, or scandalous matter."  While Plaintiffs represent that they included dismissed claims to preserve their appellate rights, under Ninth Circuit law, there was no good faith basis to plead causes of action dismissed with prejudice.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  Allegations "previously dismissed without leave to amend" are "immaterial and impertinent" and should be stricken. *Richter v. CC-Palo Alto, Inc.*, 2017 WL 4236992, at *4–*5 (N.D. Cal. Sept. 25, 2017). With respect to the remaining allegations and theories that the Court dismissed with prejudice, the Court should hold that the SACC is limited by Pretrial Order 20.  Indeed, it would be highly prejudicial and a waste of expended judicial resources if Plaintiffs were permitted to end run the Court's prior rulings by reviving dismissed portions of their case by substituting named Plaintiffs in a nonconforming amended pleading.[7]

### CONCLUSION

The Court should dismiss the U.K. Plaintiffs' claims and strike claims dismissed with prejudice.

---

[7]  Facebook does not attempt to raise all issues raised in its prior motion, nor would it be practical for Facebook to address here all of the defects in Plaintiffs' 1,388-paragraph pleading.  Facebook reserves all rights with respect to dismissal arguments raised previously and any additional bases for dismissal—including grounds to dismiss individual named Plaintiffs—that the Court did not entertain or consider with respect to the FACC.

15

Gibson, Dunn & Crutcher LLP

DATE:  August 25, 2020                    Respectfully submitted,

                                          **GIBSON, DUNN & CRUTCHER, LLP**

                                          By:  */s/  Orin Snyder*
                                          Orin Snyder (*pro hac vice*)
                                          osnyder@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          200 Park Avenue
                                          New York, NY 10166-0193
                                          Telephone:  212.351.4000
                                          Facsimile:  212.351.4035

                                          Deborah Stein (SBN 224570)
                                          dstein@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          333 South Grand Avenue
                                          Los Angeles, CA 90071-3197
                                          Telephone:  213.229.7000
                                          Facsimile:  213.229.7520

                                          Joshua S. Lipshutz (SBN 242557)
                                          jlipshutz@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, DC 20036-5306
                                          Telephone:  202.955.8500
                                          Facsimile:  202.467.0539

                                          Kristin A. Linsley (SBN 154148)
                                          klinsley@gibsondunn.com
                                          Martie Kutscher (SBN 302650)
                                          mkutscherclark@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          555 Mission Street, Suite 3000
                                          San Francisco, CA 94105-0921
                                          Telephone:  415.393.8200
                                          Facsimile:  415.393.8306

                                          *Attorneys for Defendant Facebook, Inc.*