Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and<br>Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: September 4, 2020<br>Hearing Time: 8:30 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for September 4, 2020 at 8:30 a.m.

## I.   PLAINTIFFS' STATEMENT

**1.   Issues the Parties Have Addressed Since the Last Discovery Conference**

The items on the parties' agenda since the last conference were: a) seeking to reach agreement on a set of comprehensive search terms to identify documents responsive to Plaintiffs' document requests, b) Plaintiffs' document production, c) identifying categories of documents relating to Facebook's App Developer Investigation ("ADI") over which Facebook claims privilege, and d) whether Facebook has produced all documents relating to Named Plaintiffs. The parties' progress on these issues follows.

a.   **Search Terms:**  On August 13, Facebook provided Plaintiffs with hit counts on Plaintiffs' revisions to Facebook's search term proposal, applied across custodians. Following the parties' meet and confer on August 18, Plaintiffs agreed to provide a revised comprehensive proposal, including a targeted custodian proposal and refined terms in light of the hit counts across all custodians. This proposal was transmitted to Facebook on August 29. On September 1, Facebook provided its proposal for terms applicable to custodians in Groups 5-7, along with hit reports for those terms. Plaintiffs await delivery of Facebook's hit reports for Plaintiffs' August 29 proposal so that the parties can meaningfully evaluate the results and determine which terms to apply. Plaintiffs hope Facebook will identify disputed terms and produce hit reports no later than September 4.

b.   **Plaintiffs' Document Production:**  Plaintiffs sent Facebook their proposed set of search terms to be run across Plaintiffs' email collections on August 14 and await Facebook's feedback on that proposal. In the meantime, Plaintiffs continue to review and produce ESI responsive to Facebook's first set of document requests. Plaintiffs produced an additional 575 pages of documents to Facebook on September 2. Plaintiffs are also evaluating the interrogatories Facebook served on August 21 and have sought an extension of the deadline to serve responses and objection to those interrogatories.

c.      **ADI:**  The Court has instructed the parties to create a privilege log of sample documents related to Facebook's App Developer Investigation ("ADI"), Facebook's investigation of all of the apps on its platform that had large amounts of information. Plaintiffs initially made a sampling proposal to Facebook on July 22. Since then, the parties have gone back and forth without reaching a final agreement, but anticipate reaching an agreement shortly based on the parties' meet and confers this week.

d.      **Named Plaintiffs' Data:**  Facebook has indicated that there is voluminous information relating to the Named Plaintiffs but that it is not relevant to this action because it was not voluntarily disclosed on Facebook. In addition, Facebook has claimed this information is simply too burdensome to produce. The parties have met and conferred for months to understand what categories of data Facebook is withholding. Plaintiffs have given numerous specific examples of private data that Facebook collects and compiles but that was not included in Facebook's productions so far. Because the parties are at impasse, the Court instructed them to reach agreement on a briefing schedule on this issue. Consistent with the Court's guidance, Plaintiffs have proposed an opening brief, a response, a reply, and a surreply. Aug. 14 Tr. 17:13-17. Facebook has rejected this proposal, instead proposing simultaneous briefs and responses. The parties continue to meet and confer.

**2.      Proposed Agenda**

In addition to the issues set forth above, Plaintiffs respectfully propose that the following items be included on the parties' agenda between this and the next discovery conference:

a.      **Plaintiffs' Fourth Set of Interrogatories**:  Plaintiffs asked the Court to increase the interrogatory limit to 75 on May 29 and the Court advised that "if the plaintiffs propose 75, take it. And then if within that 75 there is something that's really burdensome or not appropriate as an interrogatory, it seems to me that's where the discussion and the debate should be, as opposed to the number; right?" May 29 Tr. 13:2-6.[1] Facebook would not agree to Plaintiffs propounding 75 interrogatories unless Facebook was allowed to propound 75 different

---

[1] The Court also made clear that "that's not a ruling."  May 29 Tr. 13:12.

interrogatories to each of the 23 Named Plaintiffs. Unwilling to agree to this condition, Plaintiffs issued their Fourth Set of Interrogatories on July 16, to which Facebook responded and objected on August 17. Facebook has refused to respond to any interrogatories after Interrogatory No. 11 on the grounds that Plaintiffs have supposedly exceeded the 25-interrogatory limit. In fact, Facebook counts every sub-part of its responses as though it were responding to a new interrogatory and claims to have issued 57 responses to Plaintiffs' 11 interrogatories. The parties continue to meet and confer on these interrogatories and will ask the Court to intervene if necessary.

   b. **Plaintiffs Third and Fourth Sets of Requests for Production ("RFPs")**: Plaintiffs issued their Third and Fourth sets of RFPs on May 6 and June 12, respectively. After initially meeting and conferring on both sets, Facebook declined to discuss them further without instruction from the Court. Without agreement on the scope of production regarding these RFPs, Facebook will not begin collecting and producing responsive documents for requests that do not require search terms, nor can the parties negotiate search terms for these RFPs. As such, Plaintiffs respectfully request that the Court order the parties to meet and confer regarding these RFPs and either agree on the scope of production or communicate their final positions regarding scope by the next discovery conference.

   c. **Case Management Schedule:** The schedule set forth in Pretrial Order Number 32 is no longer achievable in light of all that has occurred since it was entered on December 13, 2019. For example, it currently sets the deadline for the substantial completion of document production for October 2, 2020. Despite the parties' best efforts, this deadline cannot be met. The parties will have a much better idea of an appropriate schedule in mid-September after the search term process is further along. Accordingly, Plaintiffs respectfully request that the Court pause the current schedule and order the parties to submit joint or competing proposed schedules in the first Joint Status Report to the Court after September 23, 2020, at which time the parties will have exchanged initial search term proposals for all custodians.

## II. FACEBOOK'S STATEMENT

Facebook reports the following in advance of the September 4, 2020 Conference:

**Scope of Discovery Briefing/User Data.** The Court ordered the parties to brief their positions with respect to the scope of discovery. As Facebook understood, the Court asked the parties for simultaneous briefs setting forth their positions, followed by simultaneous responses. (Trans. of July 14, 2020 Hearing at 17, 9-10, "I probably want four briefs . . . first, second, first, second.") Consistent with this request, Facebook proposes the following schedule:

- **Opening briefs of no more than 20 pages to be filed on September 30;**
- **Response briefs of no more than 20 pages to be filed on October 28**.

Plaintiffs instead ask the Court to allow them to file an opening brief, to be followed by a response, reply, and sur-reply. Plaintiffs' proposal should not be adopted.

*First*, having four consecutive briefs would significantly extend the schedule and cause delay. As the Court recognized: "[I]t's a big issue. It kind of goes to the heart of the case." *Id*. Given the importance of this issue, Facebook should not be required to respond to Plaintiffs' briefs in one or two weeks, as Plaintiffs suggest. Facebook anticipates it will require several weeks to respond fully to Plaintiffs' arguments, particularly if they raise issues that require counsel to conduct factual investigations, identify and consult with various employees, or prepare and submit declarations. Plaintiffs' suggested briefing schedule would require at least four weeks between briefs, causing briefing to span four months, during which many aspects of discovery would remain stalled.

*Second*, this is not "Plaintiffs' motion." Recognizing that the parties have different views on the scope of discovery, the Court asked the parties to present those views. Each party should be able to file an opening brief laying out their position on their own terms, without devoting substantial space to responsive argument, which is the purpose of the second brief.

While Facebook agrees with the Court's original view that the parties should file simultaneous opening and response briefs, if the Court orders staggered briefing, Facebook respectfully requests the opportunity to file the first brief and four weeks to prepare a reply.

In the meantime, Facebook has continued to engage in extensive discussions with Plaintiffs—spanning hours of meet and confer time—regarding the categories of data Facebook collects, the information within those categories, and what information has been produced.

**Discovery Deadlines.**  Pretrial Order 32 (Dkt. 356) sets the Case Management Schedule in this case.  The Order sets deadlines of October 2, 2020 for substantial completion of document production and January 22, 2021 for the close of fact discovery.  The parties jointly request leave of the deadlines in Pretrial Order 32.  Facebook suggests the parties propose revised deadlines once they reach substantial agreement with respect to the search terms that will be used to locate documents responsive to Plaintiffs' RFPs.  Until such agreement is reached, Facebook cannot accurately predict how much time it will need to review and produce documents, as the current delta between the parties' search term proposals is tens of millions of documents.

**Privileged Files.**  The Court instructed the parties to identify a process to address the privileged materials Plaintiffs seek from Facebook's App Developer Investigation.  The parties have met and conferred extensively on this issue.  They are largely in agreement on the structure of a process through which Facebook will log a representative sampling of investigatory documents and are working to hammer out a few final details.

**Interrogatories.**  Plaintiffs say that Facebook did not respond to some of their interrogatories.  This is because Plaintiffs exceeded the number of permissible interrogatories without an agreement or Court order.  At the May 29 hearing, Plaintiffs asked the Court to expand the number of interrogatories to 75.  After the Court ordered the parties to discuss this request, Facebook informed Plaintiffs that it would agree to expand the number of interrogatories to 75, so long as the expansion would be mutual—particularly because Plaintiffs refuse to produce documents from their Facebook accounts and insist that Facebook issue interrogatories to obtain information related to Plaintiffs' allegations about their Facebook activity.

Plaintiffs rejected Facebook's offer but exceeded the permissible number of interrogatories anyway.  They have now served (by their count) 34.  Even then, many of the interrogatories contain discrete subparts and build upon each other.  One interrogatory alone

required Facebook to investigate and provide answers to more than 40 questions—Facebook's answer to this one interrogatory spans 17 pages. Discrete sub-parts embedded in interrogatories count against Rule 33's limit. *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, No. 07-00935-JF (HRL), 2009 WL 102816, at *6 (N.D. Cal. Jan. 14, 2009). Thus, after answering this 40-part interrogatory and 57 questions in total, Facebook provided substantive objections to Plaintiffs' remaining interrogatories, including the following objection:

> *Plaintiffs have exceeded the maximum number of permissible Interrogatories absent an agreement between the parties or Court order enlarging that number, neither of which are in place here. See Fed. R. Civ. P. 33(a)(1); Advisory Committee Note to 1993 Amendment to Rule 33(a)(1). Plaintiffs asked Facebook to enter a stipulated agreement to expand the number of interrogatories under Rule 33(a)(1) to 75. Facebook stated that it would agree, so long as the expansion would be mutual. Plaintiffs rejected this proposal but nonetheless served interrogatories that exceeded the Federal Rule's limits. Consistent with and without waiving these objections, and to the extent it is able, Facebook will respond to this Interrogatory if and when the parties reach an agreement (or a Court order is issued) expanding the number of interrogatories to include this Interrogatory.*

Facebook remains willing to agree to a mutual expansion of Rule 33(a)(1)'s interrogatory limit.

**Search Terms/Upcoming Agenda.** The parties' meet and confer discussions, again, have become unfocussed and ever-expanding. The parties should concentrate on reaching a search term agreement for Plaintiffs' second set of RFPs before addressing other issues, so the case can move forward efficiently and systematically.

Facebook has gone to great lengths to locate and produce piecemeal more than 1.2 million pages without a search term agreement. These efforts have been an inefficient approach to collecting ESI in a case of this size. The most efficient way for Facebook to continue to produce large numbers of documents in a timely manner is for the parties to focus on reaching a search term agreement, so that Facebook can finally conduct a coordinated search and review.

Search terms should be the parties' first priority, and Facebook is entitled to deference in identifying appropriate terms to locate responsive materials. Sedona Principle 6 "recognizes that a responding party is best situated to . . . search[] and produce its own ESI . . . without direction from the court or opposing counsel . . . unless a specific deficiency is shown. *See* The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018). This is consistent with the parties' search term protocol. (Dkt. 455). The protocol provides that the parties will

negotiate search terms for Plaintiffs' second set of RFPs on a rolling basis.  Facebook's 81 custodians are divided into 8 groups for this purpose.  Under the Protocol, Facebook is to "provide search terms for the custodians in each group." *Id.* at 2.  Plaintiffs may then provide "any proposed revisions to Facebook's search terms," *id*. at 2, for the parties to consider.

On July 21, Facebook made a comprehensive proposal with hit counts for 38 of the 81 custodians (Groups 1-4).  This proposal hit on **approximately one million documents,** with families, which Facebook estimates would require review of **over 4 million pages** for Groups 1-4.  On September 1, Facebook proposed searches for the next 33 custodians, which hit on more than **850,000** documents with families (approximately **3.5 million pages** for Groups 5-7).  These searches do not account for non-email and non-chat ESI sources, two sets of RFPs Plaintiffs served recently, or the 1.2 million pages Facebook already produced.  Facebook will propose search terms for Group 8 on September 15.

Rather than accept Facebook's proposal as a starting point and identify any gaps in that proposal that should be filled, Plaintiffs reinvented Facebook's proposal from scratch and now ask Facebook to disprove **hundreds of search strings hitting on literally tens of millions of documents**.  Plaintiffs provided a counterproposal for the 38 custodians in Groups 1-4 on July 31.  This proposal expanded dramatically the search strings Facebook proposed.  It also included **455** additional search strings.  Plaintiffs apparently spent "months"—before even receiving Facebook's proposal—drafting every conceivable search related to their case and then proposed them.  Plaintiffs also insisted that Facebook run each of the searches against every custodian.  At the July 14 hearing, the Court ordered Plaintiffs to tailor their additional proposed searches to the specific custodians.  Facebook encouraged Plaintiffs to narrow their proposal during this process.

Rather than focus on search terms, Plaintiffs raised a host of different and scattershot discovery issues over the last few weeks and took more than two weeks to identify custodians for their proposed searches.  They provided their revised counterproposal on August 29, and Facebook received initial hit counts from its vendor yesterday.  The revised proposal includes **673 search** strings that hit on nearly **13 million documents** (with families).  This would require

Facebook to review approximately **52 million pages for fewer than half of the custodians—** and this number does not include non-email and chat sources, two new sets of RFPs, or materials produced previously.  These unreasonably high hit counts are not surprising.  Plaintiffs continue to insist that hundreds of broad terms be run on large groups of custodians—in fact, Plaintiffs *expanded* certain custodian groupings.  They did not eliminate terms with no good-faith basis, such as a term consisting only of expletives combined with terms like privacy or data.  And the proposal includes a number of facially overbroad terms that do not appear tailored to any specific RFP such as "(CID OR 'Civil Investigative Demand')" and "(RFI OR 'Request for Information')."  Plaintiffs' approach has led to a disorganized and unwieldy negotiation process.

Facebook will respond to Plaintiffs' most recent proposal and consider any terms that appear to fill gaps in Facebook's proposal, but Facebook cannot do so in a matter of days.  Plaintiffs apparently drafted these terms over the course of months, and took two weeks to even identify the custodians they should be run against.  It will be extraordinarily time consuming for Facebook to evaluate these 673 search strings and how they apply across 38 custodians.  The parties will then need to engage in negotiations to reach agreement on these terms, followed by negotiations for the remaining 41 custodians.

Given the status of these efforts, the parties should focus on search terms before turning to other discovery issues.  So that the parties do not lose time on less pressing issues, Facebook respectfully asks the Court to order the parties to focus their attention over the coming weeks on the following issues: (i) a search term agreement; (ii) an ADI sampling agreement; (iii) briefing the scope of discovery; and (iv) briefing Facebook's Motion to Dismiss the UK Plaintiffs.

As for the RFPs Plaintiffs served after the current search-term process began, Facebook responded to these RFPs and met and conferred with Plaintiffs about them.  Facebook asked Plaintiffs numerous times to identify any RFPs in these sets that overlap topically with the RFPs for which the parties are currently negotiating searches, so that any such RFPs can be included in those discussions.  Plaintiffs have not done so, and any additional targeted collections Plaintiffs seek should be addressed only after a coordinated search and review process is in place.

II.     **PLAINTIFFS' RESPONSE TO FACEBOOK**

a.     **Named Plaintiffs' Data**: Regarding briefing over Named Plaintiffs' data, the parties have been unable to agree on what sort of briefing schedule the Court wants. That said, Plaintiffs are happy to structure it however the Court prefers. If the Court would like alternating briefs, Plaintiffs accept Facebook's proposal that they file the first brief and suggest the following schedule:

- Facebook files opening brief of no more than 20 pages on September 30;
- Plaintiffs file opposition brief of no more than 20 pages on October 13;
- Facebook files reply brief of no more than 10 pages on October 23
- Plaintiffs file surreply of no more than 10 pages on November 2.

If the Court wishes simultaneous briefing, Plaintiffs accept the schedule Facebook proposed (for the first time) in its section of the Joint Statement.

b.     **Search Terms:** The parties' disagreements regarding the scope of the case are reflected in their differing views on the search term proposals. Plaintiffs, informed by their review of documents previously produced to regulators, crafted a comprehensive set of terms tethered to the RFPs for which the parties agree search terms are appropriate, including intra-company jargon largely absent from Facebook's terms. Plaintiffs have since refined their proposal, resulting in 2.46 million fewer document hits (including families). In its portion of the joint status update, Facebook provides for the first time the aggregate hit count for Plaintiffs' August 29 proposal; however, this is not helpful without a breakdown of the results by search term. Plaintiffs agree that the best way to move forward on search terms is to meet and confer on the outstanding proposals—informed by both hit counts and by Facebook's identification of disputed terms.

c.     **Upcoming Agenda:** Facebook's proposal that the parties' efforts over the next two weeks should be limited to search terms, ADI, briefing the scope of discovery, and briefing

the pending Motion to Dismiss is ill-advised.  To be sure, search term negotiations will be extensive, but both sides have large teams of attorneys on this case, many of whom are not involved in the search term process.  As for the other three items on Facebook's list, the parties are near agreement on a path forward for ADI, Facebook does not propose the parties begin briefing the scope of discovery until September 30 at the earliest, and the motion to dismiss is already on file.  The parties have very little, if anything, to discuss on these matters.  In contrast, the Plaintiffs have only begun meeting and conferring on Plaintiffs' third and fourth set of document requests and fourth set of interrogatories.  Respectfully, the Court should decline Facebook's request to effectively stay other discovery and order the parties to continue to meet and confer so that this case can continue to progress on multiple fronts.

Dated: September 3, 2020

KELLER ROHRBACK L.L.P.

By: */s/ Derek W. Loeser*
      Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By: */s/ Lesley W. Weaver*
      Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com

JOINT STATUS UPDATE        10        MDL No. 2843
Case No. 18-md-02843-VC-JSC

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*


GIBSON, DUNN, & CRUTCHER LLP

By: /s/ Orin Snyder
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## **SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained.

DATED: September 3, 2020                                   By:  */s/ Orin Snyder*
                                                                                    Orin Snyder

## CERTIFICATE OF SERVICE

I, Orin Snyder, hereby certify that on September 3, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

By: */s/ Orin Snyder*
Orin Snyder
