**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

```
                                   )
                                   )
IN RE:   FACEBOOK, INC.            )   NO. 18-MD-02843 VC
         CONSUMER PRIVACY USER     )
         PROFILE LITIGATION.       )
                                   )
_____  )
```

                                      San Francisco, California
                                      Friday, September 4, 2020

**TRANSCRIPT OF REMOTE VIDEO PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
            KELLER ROHRBACK LLP
            1201 Third Avenue - Suite 3200
            Seattle, Washington 98101
    BY:  **DEREK LOESER, ESQ.**
         **CARI LAUFENBERG, ESQ.**
         **DAVID KO, ESQ.**

            KELLER ROHRBACK LLP
            555 12th Street - Suite 1600
            Oakland, California 94607
    BY:  **LESLEY WEAVER, ESQ.**
         **ANGELICA ORNELAS, ESQ.**
         **ANNE K. DAVIS, ESQ.**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
               Official Reporter, CSR No. 12219

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendants:
                         GIBSON, DUNN & CRUTCHER LLP
 3                       333 South Grand Avenue
                         Los Angeles, California 90071
 4                 BY:   DEBORAH STEIN, ESQ.

 5                       GIBSON, DUNN & CRUTCHER LLP
                         555 Mission Street - Suite 300
 6                       San Francisco, California 94105
                   BY:   MARTIE KUTSCHER CLARK, ESQ.
 7
                         GIBSON, DUNN & CRUTCHER LLP
 8                       2100 MCKINNEY AVENUE - SUITE 1100
                         Dallas, Texas 75201
 9                 BY:   RUSSELL FALCONER, ESQ.

10                       GIBSON, DUNN & CRUTCHER LLP
                         200 Park Avenue
11                       New York, New York 10166-0193
                   BY:   ORIN SNYDER, ESQ.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Friday - September 4, 2020**                                           **8:31 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:** Court is now in session. Calling Civil |
| 5 | Action 18-MD-2843, In Re: Facebook, Inc. Consumer Privacy User |
| 6 | Profile Litigation. |
| 7 | Counsel starting with plaintiffs, could you please state |
| 8 | your appearance. |
| 9 | **MS. WEAVER:** Good morning. Lesley Weaver, Bleichmar, |
| 10 | Fonti, Auld on behalf of plaintiffs. |
| 11 | **THE COURT:** Good morning. |
| 12 | **MS. DAVIS:** Anne Davis -- |
| 13 | **THE COURT:** Good morning. |
| 14 | **MS. DAVIS:** Pardon me. Anne Davis from Bleichmar |
| 15 | Fonti Auld, also on behalf of plaintiffs. |
| 16 | **MR. MONTGOMERY:** Good morning, Your Honor. Matthew |
| 17 | Montgomery, Bleichmar Fonti & Auld, on behalf of plaintiffs for |
| 18 | plaintiffs. |
| 19 | **THE COURT:** Good morning. |
| 20 | **MS. ORNELAS:** Good morning, Your Honor. Angelica |
| 21 | Ornelas also from Bleichmar Fonti & Auld for plaintiffs. |
| 22 | **THE COURT:** Good morning. |
| 23 | **MR. LOESER:** Good morning, Your Honor. Derek Loeser |
| 24 | from Keller Rohrback for the plaintiffs. |
| 25 | **THE COURT:** Good morning. |

1    **MR. KO:** Good morning, Your Honor. David Ko, Keller
2 Rorhback, also on behalf of plaintiffs. Good to see you again.
3    **THE COURT:** Good morning.
4    **MS. LAUFENBERG:** Good morning, Your Honor. Cari
5 Laufenberg, Keller Rorhback, also on behalf of plaintiffs.
6    **THE COURT:** Good morning. All right. And for --
7    **MS. STEIN:** Good morning, Your Honor.
8    We lost Mr. Snyder. He was here a moment ago. So,
9 hopefully, Mr. Snyder will be re-elevated back in, but Orin
10 Snyder, Deborah Stein, Russ Falconer, and Martie Kutscher Clark
11 for defendant Facebook.
12    **THE COURT:** All right. Good morning.
13    Well, thank you for your statement. What I want to do is
14 set certain deadlines so that things will move forward.
15    With respect to the ADI, what I would like -- tell me
16 why -- I would like the parties to submit a stip by
17 September 11th as to how that's going to be processed. So you
18 said you're close to agreement. Great. I want the stip. So
19 I'm actually ordering you to agree. I want a stip by
20 September 11th. Okay?
21    With respect to plaintiffs' data outside Facebook, that's
22 what the brief has to do with, right, about the scope of
23 discovery. You are aware, I assume, that I think as of January
24 Facebook added a tool that allows people to see their outside
25 Facebook data. I think it goes back only 180 days. Everyone

```
 1  is shaking their head.  Okay.
 2       And it seemed to me that plaintiffs' schedule would work.
 3  I just think, when we file simultaneously, that hasn't worked
 4  well.  What would be most useful for me is defendant,
 5  plaintiff, defendant, plaintiff; however, I don't see why the
 6  opening and opposition or response, 15 pages, and replies, 10
 7  pages.  I didn't understand Facebook's suggestion that they
 8  needed four weeks and declarations.  Isn't this just a legal
 9  question as to what the scope of the discovery is based on the
10  claims in Judge Chhabria's ruling?
11       I guess that's for you, Ms. Stein.
12          **MS. STEIN:**  Yes, Your Honor.  I think it was more
13  concern as to we don't know what we're going to be getting from
14  plaintiff.  And 10 days in response to their opening brief,
15  which may be framing issues in a different way than we're
16  framing issues, didn't see like a sufficient amount of time to
17  respond.
18          **THE COURT:**  Well, there is going to be no declarations
19  because it's my understanding this is just a legal question.
20  So it's not proportionality or over-breadth.  It's simply:
21  Here are the claims based on Judge Chhabria's ruling and so
22  this is what we believe the scope will be.
23       And quite honestly I'm going to consult with
24  Judge Chhabria on this as well because there is no point in me
25  ruling and then somebody appealing; right?  So we'll come up
```

1  with something that there is finality, and you can be sure it's
2  not just me saying it.
3      So I think that works well, but I want 15 pages, then 10.
4  You need to be pithy; right?
5          **MS. STEIN:**  Thank you, Your Honor.
6          **THE COURT:**  Mr. Snyder, before you joined you us, what
7  I was saying was that I thought that plaintiffs' proposal on
8  the briefing worked fine, only 15 pages instead of 20.  There.
9          **MS. STEIN:**  Your Honor, can I be a little greedy and
10 ask for two weeks instead of, I think, what's in the schedule,
11 10 days for the replies?
12         **THE COURT:**  For the reply?
13         **MS. STEIN:**  Yes.
14         **THE COURT:**  No.  You can, but I'm not going to give it
15 to you.  No, because it really -- and it's Facebook that's been
16 telling me all along:  This is just based on Judge Chhabria's
17 order.
18     Quite honestly, you should be able to dictate it to me
19 right now.
20         **MS. STEIN:**  Your Honor, we completely agree that it's
21 a legal question.  We're happy to hear you don't want
22 declarations.  It was just a question of making sure that we
23 have enough time to prepare, with everything else that's going
24 on.
25         **THE COURT:** Yeah.  Nope.  That'll be that.

1  **MR. KO:** And, Your Honor, just one question of
2  clarification that you wanted Facebook to go first, plaintiffs
3  to respond?
4  **THE COURT:** That was -- whatever your last proposal
5  was.
6  **MR. KO:** Okay. Understood. Thank you, Your Honor.
7  **THE COURT:** Whatever your last proposal was.
8  I would say this: You get to go last.
9  And I would hope everyone has enough confidence in me to
10 know that the order you go in will make no difference. And if
11 you don't, then we should just pick a robot to decide; right?
12 Okay.
13 All right. So the next thing is the document production.
14 And, of course, in December, Judge Chhabria had hoped that
15 document production would be substantially completed by October
16 that's not happening. But that's where we need to focus and we
17 need the search term stuff to come to finality.
18 So my first question for plaintiffs is: The new, new,
19 most recent document requests that you submitted, are the
20 search terms that the parties are negotiating, is that
21 encompassed within it?
22 I don't who that is for, Ms. Weaver or Mr. Loeser.
23 **MS. WEAVER:** That would be Ms. Davis from our firm.
24 **THE COURT:** Ms. Davis, okay.
25 **MS. DAVIS:** Thank you, Your Honor.

1    We have worked to craft some comprehensive terms that will cover, you know, the majority of the new RFPs, which are largely more specific or clarifying subsets. There is a small group that we think, you know, will require additional terms. But I think the parties can identify those fairly quickly and come up with a proposal.

**THE COURT:** Okay. So when we're talking about search terms, then, we're really talking about the vast majority of all the requests that are out there. That's what I wanted to make sure, that we're not going seriatim. Okay. All right.

So this is what I was thinking, perhaps, would help you with respect to the search terms and finality, and we'll move backwards, which is: By October 2nd, I want either a -- I want a list of the search terms agreed to, and where there is still a dispute, I want each of your submission as to why that search term should or should not be included.

Right? So I'm giving you a deadline of October 2nd.

Now, I'm reluctant, because I know nothing, to say that means, you know, you need to respond by X, Y date. I'll say this: To the extent it gets to October 2nd and somebody was left with no time because someone took two weeks to get back to them, then I may just arbitrarily say, "Fine, the other side gets what they want on this side." Right? In other words, just work it out, be reasonable so everyone has enough time to do it. But I think we need to bring some finality to this.

1   So then the submission on October 2nd -- and keep our
2   fingers crossed that you could agree on anything.  In the rare
3   event that doesn't happen, what the submission should be is
4   very specific.  For the plaintiffs:  We want this additional
5   search term, or phrases, or whatever it is because it's
6   relevant to this claim or this defense and not covered by
7   anything else.  And these are the hits that they say -- in
8   other words, so that I can make a decision based on what's in
9   the paper.
10      So I'm not telling you that I'm going to have a hearing on
11  that.  I'm thinking, actually, because I want really
12  comprehensive -- and I think by putting pen to paper, you'll
13  really think it through.  And so I want to decide it on the
14  papers so that I make sure I get something that's really
15  comprehensive like that, the whole kit and caboodle.
16          **MS. WEAVER:**  We can do that Your Honor.
17          **THE COURT:**  Great.
18          **MR. SNYDER:**  When Your Honor said October 2nd, I
19  thought:  Why is the judge giving us so long?
20      Then I realized that we lost two seasons and it's only
21  27 days from today.  It was shocking when I realized it's only
22  27 days from now.
23          **THE COURT:**  Summer is over after Monday, and I don't
24  know where it went.  I don't know where it went.  Yeah, no, I
25  know.

1   **MR. SNYDER:** We spent some of it with you, so that
2   will always be with memory.
3       **THE COURT:** We should be, like, gearing up for the
4   World Series, and yet I haven't had the foggiest idea where the
5   Giants, the standing; I don't think I have looked.
6       All right. So does that work? Great.
7       **MS. WEAVER:** Yes, Your Honor.
8       **THE COURT:** That takes care of all those document
9   productions. Ms. Davis said with respect to the small subset
10  of whether they need additional terms, they can figure that
11  out.
12      So here is the interrogatories. And my question to
13  Facebook is: When you say you want 75, have you drafted those
14  75 and are they identical for each plaintiff?
15      **MS. STEIN:** Your Honor, we have not drafted 75.
16  They -- the idea would be that if we needed them, they would
17  likely be identical for each plaintiff, but each plaintiff
18  would have different responses.
19      **THE COURT:** Right.
20      **MS. STEIN:** So we have served a number of
21  interrogatories. We don't necessarily know what we're going to
22  need to do. We just wanted to make sure that if the number of
23  rogs was extended that there would be reciprocity. We
24  certainly have no intention of serving rogs that are
25  unnecessary. It's work for us to prepare and serve for so many

1  different plaintiffs.  But, we did want to make sure that that
2  was available to us in light of the fact that plaintiffs with
3  our RFPs had asked us to do interrogatories instead, and there
4  is information to be accessed.
5          **THE COURT:**  Can you give me an example of what a rog
6  would look like?
7          **MS. STEIN:**  Yes, Your Honor.
8      Well, in response into the last hearings or several
9  hearings ago, there were rogs that were in line with:  What is
10 the -- what documents that were produced by Facebook were you
11 relying on in your -- to make the allegations in your
12 complaint?
13     And those documents produced by Facebook were from
14 plaintiffs' account.
15         **THE COURT:**  Okay.
16         **MS. STEIN:**  There are other -- things of that nature.
17         **THE COURT:**  So let me ask the plaintiffs:  Why
18 shouldn't I do what I did?  As long as they are identical for
19 each named -- how many named plaintiffs do we have?
20         **MR. MONTGOMERY:**  23.
21         **THE COURT:**  23.  And at the moment, you still intend
22 to put up each of them as a potential class representative.
23         **MR. MONTGOMERY:**  Yes, Your Honor.
24         **THE COURT:**  Okay.  If you eliminate someone, you
25 eliminate someone.  They don't have to answer a rog then.

1    As long as they are all there, I mean, why shouldn't I do
2  what I did with them which is say:  All right, up to 75, but if
3  within with those 75 there is something that's objectionable or
4  burdensome, well, then you bring that to my attention.
5    But if they are identical, right -- if they are identical,
6  then, you know, the answers for each plaintiff or named
7  plaintiffs are going to be different.
8        **MR. MONTGOMERY:**  Yes, Your Honor.  I have to say that
9  this is a different version than what we heard before.  When we
10 were negotiating originally we said:  We'll take 75
11 interrogatories.  You get 75 identical interrogatories.
12   And Facebook insisted on the right to have 75 different
13 interrogatories for every one of our plaintiffs.
14       **THE COURT:**  Oh, well, I came up with -- look at that
15 we are on the same page.
16   Ms. Stein --
17       **MS. STEIN:**  Well, Your Honor, I --
18       **THE COURT:**  I don't care.  Doesn't matter.  Doesn't
19 matter.  It doesn't matter.
20       **MR. LOESER:**  Your Honor, if I could just suggest
21 something that maybe you'll accept, maybe you won't.  But, you
22 know, the notion of 75, we came up with 75 because Facebook is
23 a massive company with a massive number of custodians and, as
24 they keep talking about, an incredible of information in a
25 complex case.  The 75 answer from Facebook was a reflexive

1    response to, well, you're asking us 75 --

2             **THE COURT:**  I agree.  So they might not be able to
3    come up with 75.  Right and if within their 75 there is
4    something that's stupid, then don't answer it; bring it to my
5    attention.  And that's not going to look good for them.  So
6    that's all I'm -- that's all I'm saying.

7        I mean, I actually don't like doing limits at all because
8    I think it really should just depend on this is an effective
9    way to get this information that is needed.  I'm just trying to
10   get past this impasse that the parties seem to have and so
11   that's all.

12       So, you know, they are not going to do it.  If they ask a
13   question that's burdensome -- but they are named plaintiffs,
14   you know --

15            **MR. LOESER:**  Right.  Absolutely right.  And I hope
16   that my measure of what is stupid and yours end up being the
17   same and not Facebook.  Because, frankly, it's -- you know,
18   it's 1,700 or something interrogatories we've used.

19            **THE COURT:**  No.  I wouldn't look at it that way.  If
20   you don't want to answer all of them, then have fewer named
21   plaintiffs then.  You have done your investigation.  You're
22   never going to move for class cert with 23 anyway.  Right?  I
23   mean, that's going to be unreasonable for Judge Chhabria.  So
24   maybe pick your five or whatever it's going to be now, and then
25   you don't have to answer it.

1   **MR. LOESER:** Okay.

2   **MS. WEAVER:** We don't have an objection to answering
3   them all. We will do that work. That's fine.

4   **THE COURT:** Okay.

5   **MS. WEAVER:** I think the issue is more on the other
6   end, and I think that's what Mr. Montgomery is going to
7   address.

8   **MR. MONTGOMERY:** Your Honor, if I may. The concern
9   is, even if we have 75, the way that Facebook has decided to
10  count every subpart as a separate interrogatory means that we
11  are at 75, by their version of counting, at number 12. And so
12  the standard is --

13  **THE COURT:** Give me -- so present to me -- present to
14  me an example, and I'll rule. I just think that's what I have
15  to start doing, is just ruling. So present to me and I'll
16  rule.

17       But, again, if you have a need and that is an efficient
18  and effective way of getting information that actually gets you
19  over 75, then I'll order it. It's not going to be some
20  arbitrary matter. What's going to matter is: Is this an
21  effective way to get information which you actually need? Is
22  it proportional?

23       That's how, in the end, how I'll be looking at it.

24  **MR. MONTGOMERY:** Just to be clear, Your Honor, if
25  there is an interrogatory where we have a dispute, we can bring

1   it to you, and you can rule on the relevance and whether it's
2   proportional to the needs of the case without a big argument
3   whether this is Number 58 or 59.
4           **THE COURT:**  Correct.
5           **MS. WEAVER:**  And should we use your -- the order that
6   was previously entered on how to brief disputes, your standard
7   procedure?
8           **THE COURT:**  Yes.  You mean, the standard letter brief,
9   right?  A joint --
10          **MS. WEAVER:**  Exactly.
11          **THE COURT:**  -- letter brief.  I'm not going have
12  hearings on them.
13          **MS. WEAVER:**  Okay.  Fine.
14          **MS. STEIN:**  And just to be clear, Your Honor -- and we
15  will certainly be reasonable and meet and confer with
16  plaintiffs so that we don't bring silly disputes to you -- but
17  I'm assuming that rules on subparts, you know, do apply so that
18  if an interrogatory has 40 subparts, that that doesn't
19  necessarily just count as one interrogatory.
20          **THE COURT:**  No.  The law is what the law is.  The rule
21  is what the rule is.
22      But in the end, though, Ms. Stein, if it's information
23  that the plaintiffs are entitled to, right, then the question
24  will be:  Okay.  This is 300 interrogatories.  That's a lot.
25  What is your proposal, then, as to how else they should get the

1  information, if it's information that they should have?
2     Right?  That's why I say, in a way, I don't like limits on
3  discovery.  There could be a case where 500 interrogatories is
4  a more efficient way of getting the information than something
5  else.  Maybe not.  Maybe 30(b)(6) depositions would be better
6  or something; right?  So I guess what I'm saying is if you're
7  going to object to something, but it's relevant information --
8  and even, if you say, with subparts -- and I agree with you --
9  they are now at 200, you should have an alternative way for
10 them to get the information.
11         **MS. STEIN:**  That makes sense, Your Honor.  Thank you.
12         **MR. LOESER:**  And, Your Honor, just two seconds on the
13 subpart thing.  Obviously, when we'll have disputes on these
14 things and we'll be presenting them to you --
15         **THE COURT:**  Not so obviously.  I'm hoping maybe you
16 won't.
17         **MR. LOESER:**  Well, hope springs eternal, even for us.
18     But, I mean, there is a really clear standard in the
19 district on what is or isn't a subpart and, obviously, that's
20 something I would say we, unfortunately, have to brief.  I'm
21 not sure why Facebook didn't cite that standard in their
22 materials.  But, it's a clear standard and I think that you'll
23 see that these things that are being counted as separate
24 subparts really are --
25         **THE COURT:**  I know.  But, I guess, what I'm trying to

1  convey is, I'm not so concerned about numbers.  What I'm
2  concerned about is each side getting the information that they
3  need in a fair and efficient manner.  Clearly, the default
4  Rules of Civil Procedure don't apply to a case of this
5  magnitude on either side.  On either side.
6        **MS. WEAVER:**  We understand, Your Honor.
7        **MS. STEIN:**  We hear you loud and clear, Your Honor.
8        **THE COURT:**  Okay.  All right.
9     So I think our next conference will be September 25th
10 at 8:30.  And so I'll be able to check in with you on the
11 search terms.
12       **MS. STEIN:**  Excellent.
13       **THE COURT:**  Check in with you.  But I'm not having the
14 search terms submitted before the hearing because, again, I
15 want really comprehensive written submissions.  And we can talk
16 a little bit on the 25th about what they will look like, so
17 they will be most useful to me so that I can rule without a
18 hearing.
19       **MS. KUTSCHER CLARK:**  One clarifying question on the
20 search terms.  The parties have a search term negotiation
21 protocol that sort of staggers are the negotiations.  The
22 custodian are split into eight groups.  Facebook proposed terms
23 for the second group a couple of days ago.  We're expecting a
24 response from plaintiffs, I believe, in about a week.  And we
25 don't even propose terms --

1  **THE COURT:** No, this is with respect to those 38 that
2  we started a long time ago. That's the one I want to bring to
3  an end. We'll bring that to an end and then we'll figure out a
4  deadline for the next group.
5  **MS. KUTSCHER CLARK:** Got it.
6  **THE COURT:** This is to at least get this group going.
7  **MS. KUTSCHER CLARK:** Thank you.
8  **THE COURT:** Okay. Did I cover everything?
9  **MS. WEAVER:** Yes, Your Honor. Would it be helpful if
10 we submitted a proposed order that both sides agreed on to you
11 or would you rather issue your own?
12 **THE COURT:** I'll save you the time. I'll do it. I
13 have all my notes here -- as I have been doing it. Are those
14 helpful?
15 **MR. MONTGOMERY:** Very.
16 **MS. STEIN:** Yes, Your Honor. Thank you.
17 **THE COURT:** I'll keep doing it. It's all right.
18 You're paying me the big bucks, so I'll do it.
19     All right. Happy Labor Day, everyone. Please take the
20 weekend off, spend it with your family in a socially distant
21 and safe way.
22          (Proceedings adjourned at 8:52 a.m.)
23                      ---o0o---
24
25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Wednesday, September 9, 2020



Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court