Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION

This document relates to:

ALL ACTIONS

MDL No. 2843
Case No. 18-md-02843-VC-JSC

**JOINT STATUS UPDATE**

Judges: Hon. Vince Chhabria and Hon. Jacqueline Scott Corley
Courtroom: VIA VIDEO CONFERENCE
Hearing Date: September 25, 2020
Hearing Time: 8:30 a.m.

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for September 25, 2020 at 8:30 a.m.

**I. PLAINTIFFS' STATEMENT**

**1. Issues the Parties Have Addressed Since the Last Discovery Conference**

**a. Search Terms:** On September 11, 2020, Facebook provided its response to Plaintiffs' proposed terms for the custodians in Groups 1-4, identifying, for the first time, which of Plaintiffs' proposed terms it disputes. In subsequent meet and confers, Facebook questioned many of Plaintiffs' proposed terms, claiming confusion regarding numerous terms derived from Plaintiffs' review of Facebook's own documents. In an effort to streamline further negotiations, Plaintiffs provided Facebook with detailed written responses—including document citations and descriptions which reference Facebook's own internal jargon—on September 19, 2020. In addition to continuing to negotiate terms for the custodians in Groups 1-4, the parties have pressed forward on terms for the custodians in Groups 5-8. Since the last discovery conference, the parties have exchanged proposals for the remaining custodians in keeping with the agreed-upon schedule., though the parties have not met and conferred on those terms.

The parties continue to engage in discussions regarding both disputed terms and the appropriate custodians for the agreed-upon terms. Plaintiffs anticipate that the parties will be able to reach agreement on a partial set of search terms and on the appropriate custodians for some of those terms, however, given the parties' contrasting views on the scope of the case and other proportionality factors, it appears likely that competing proposals will be submitted to the Court on October 2. Plaintiffs have proposed that the parties engage in more frequent subject matter-focused meet and confers. As of yet, Facebook has not taken Plaintiffs up on that offer.

**b. Plaintiffs' Document Production:** Plaintiffs have met and conferred with Facebook regarding their proposed search terms to run across Plaintiffs' email collections and continue to await any modifications Facebook wishes to propose. The parties also continue to meet and confer regarding Plaintiffs' responses and objections to Facebook's first set of document requests, and Plaintiffs continue to collect and review materials responsive to these

requests. To streamline discovery moving forward, Plaintiffs are preparing a proposal to discuss with Facebook that will allow the parties to prioritize discovery as to certain named plaintiffs who Co-Lead Counsel anticipate proffering as class representatives while deferring discovery as to the remaining named plaintiffs pending the Court's decision on class certification.

**c. ADI:** Pursuant to the Court's order, the parties submitted a stipulation setting forth a process for creating a sample privilege log of documents concerning Facebook's App Developer Investigation ("ADI"). The proposed stipulation anticipates that the parties enter a second stipulation this Friday, September 25, 2020 because Facebook represented to Plaintiffs it could not agree to a timetable for the production of these logs when the parties submitted their first stipulation. Plaintiffs anticipate this second stipulation will set forth deadlines for the production of these logs, as well as briefing related to these purportedly privileged documents. If Facebook cannot agree, Plaintiffs request the Court set deadlines for this production and briefing. The Court instructed the parties to execute this initial procedure in mid-July. There is no reason for any further delay.

**d. Named Plaintiffs' Data:** Plaintiffs are in the process of responding to Facebook's opening brief which asserts that remaining discovery of Named Plaintiffs' data is stayed by Judge Chhabria's order on the motion to dismiss.

**e. Plaintiffs' Fourth Set of Interrogatories**: In light of the Court's order granting each side 75 interrogatories, Facebook has agreed to amend its responses but has failed to indicate by when it will do so. Plaintiffs submit that four weeks after the Court's ruling from the bench should allow sufficient time and respectfully ask the Court to order Facebook to amend its responses by October 2, 2020.

**f. Plaintiffs' Third and Fourth Sets of Requests for Production ("RFPs")**: Plaintiffs issued their Third and Fourth sets of RFPs on May 6 and June 12, respectively. After initially meeting and conferring on both sets, Facebook has declined to discuss them further. Without agreement on the scope of production regarding these RFPs, Facebook has indicated that it will not begin collecting and producing responsive documents for requests that do not

require search terms, nor will it negotiate with Plaintiffs for those RFPs which do require search terms. As such, Plaintiffs respectfully request that the Court order the parties to meet and confer regarding these RFPs and either agree on the scope of production or communicate their final positions regarding scope by the next discovery conference.

**g. Case Management Schedule**: The schedule set forth in Pretrial Order Number 32 is no longer achievable in light of all that has occurred since it was entered on December 13, 2019. For example, the current deadline for the substantial completion of document production is October 2, 2020. Despite the parties' best efforts, this deadline cannot be met. The parties will have a much better idea of an appropriate schedule after the search term process is further along. Accordingly, Plaintiffs respectfully request that the Court pause the current schedule and order the parties to submit joint or competing proposed schedules in the next Joint Status Report.

**h. Expert Stipulation**: On June 10, 2020, Plaintiffs sent Facebook a draft stipulation to streamline and clarify the scope of expert discovery, as is customarily agreed to by parties in cases such as this. Because Plaintiffs have retained consultants to address arguments made by Facebook regarding its search for and production of responsive ESI, Plaintiffs are hoping that Facebook will agree to such terms at this point in the case. Facebook has not responded in substance.

**i. Confidentiality Designations:** Facebook has designated as confidential several documents that it produced in a related action and that have since been posted on the Internet in violation of the protective order in that case. Plaintiffs challenged the confidentiality of these documents on the grounds that they are publicly available, but Facebook has refused to revoke its confidentiality designations. Plaintiffs respectfully ask for the Court to hold that these documents need not be treated as confidential.

## II. FACEBOOK'S STATEMENT

### I. Search String Negotiations

The Court ordered the parties to focus on search string negotiations and, by October 2, to submit a list of agreed-upon terms and terms in dispute. A week before that deadline, Plaintiffs still insist that Facebook disprove 381 complex search strings that return over 10 million documents with families (~40 million pages) for 26 of Plaintiffs' 63 RFPs and fewer than half the custodians. Facebook already agreed to run 84 complex search strings that hit on about 1.5 million documents with families (~6 million pages) for these RFPs and custodians. To enable the parties to present a manageable number of disputed strings next week, Facebook respectfully requests an interim order narrowing the parties' negotiations to 39 additional searches.

***The volume of search strings Plaintiffs propose is unmanageable for the parties and the Court.*** Negotiating and running hit counts on nearly 400 complex search strings is unworkable. Given the size of Plaintiffs' proposal, Facebook's vendor has spent **over 130 hours** generating hit reports, which takes nearly **5 days** every time Plaintiffs revise their proposal. Facebook's attorneys have spent hundreds of hours analyzing Plaintiffs' searches. And although the parties have spent a dozen hours discussing them, they can often cover only a few strings during a 2-hour discussion.

There is no justification for such an overbroad proposal. Plaintiffs' 381 search strings cover **26 of their 63 RFPs** and hit on **10 million documents with families (~40 million pages)** for **less than half of the custodians**. If Plaintiffs' RFPs were particularized, an average of more than 18 complex searches would not be needed for each request. The scope of Plaintiffs' requested searches is also orders of magnitude greater than productions made to government regulators in related matters. Facebook produced the Facebook documents it produced to the FTC in response to its document requests in its two related investigations. Facebook also produced any Facebook documents produced to other regulators in related matters that are responsive to Plaintiffs' RFPs. These materials account for approximately 80,000 documents and 325,000 pages, and—as Judge Chhabria observed—should be the core material in this case. March 5, 2020 Hr'g Tr. at 4:14-15.

***The nearly-400 proposed strings are extraordinarily complex and difficult to assess and***

***discuss***. Below are examples of strings Facebook proposed and Plaintiffs' revisions.

| Facebook 7/21 Proposal | Plaintiffs 9/19 Proposed Revision |
|---|---|
| (Developer* OR "Third Party" OR "Third Parties" OR app OR apps OR partner OR (device w/2 manufacturer) OR (device w/2 integrat*) OR (device w/2 maker) OR (mobile w/2 partner) OR (mobile w/2 manufacturer )) w/3 GDP | ((“3d part*” OR 3P* OR “3rd part*” OR app* OR apps OR application OR applications OR BP* OR dev* OR devs OR developer OR developers OR partner* OR partners OR affiliat* OR “third part*” OR advertiser* OR client* OR “ad network*” OR broker* OR entity OR entities OR customer* OR “Platform User*” OR “tier 0” OR “tier 1” OR T0 OR T1 OR vendor* OR (device w/2 manufacturer*) OR (device w/2 integrat*) OR (device w/2 maker*) OR (mobile w/2 partner*) OR (mobile w/2 manufacturer* )) w/35 ((GDP OR perms OR permission* OR grant* OR whitelist* OR “whit* list” OR whitlist*) w/35 (misus* OR abus* OR risk* OR leak* OR problem* OR breach*)) OR creat* OR auth* OR deprecat* OR remov* OR delet* OR concern* OR risk* OR privacy* OR restrict* OR API* OR capabilit* OR Sitevar* OR “Talent Tool” OR COG OR “open graph” OR “v.1.0” OR “V2.1” OR “v2.0” OR “1.0” OR “2.0” OR “2.1” OR V2 OR “v2.11” OR “v1.0” OR “v1.x” OR “v2.x” OR “v2.1” OR “v2.2”)) |
| (audit OR investig* OR inquir* OR examin*) w/3 (misuse OR abuse OR violat* OR risk OR leak* OR problem) | (audit* OR investig* OR inquir* OR examin* OR assess* OR task*) w/10 (misus* OR abus* OR violat* OR risk* OR leak* OR problem* OR acquir* OR breach* OR emit* OR emissi* OR exploit* OR expos* OR hack* OR illegal* OR leach* OR crawl* OR sale* OR sell* OR sold OR delet* OR replicat* OR deprecat* OR ecrimes OR “final warning*” OR “high risk” OR “match rate*” OR complian* OR PDU OR “Privacy Data & Use” OR “Red Flag*” OR app* OR blackhole OR BH OR mislead* OR misbehav* OR robot* OR spider* OR “bad actor*” OR “terrible actor*” OR ban* OR disable* OR kill* OR “shut* down” OR suspen* OR “take down” OR “turn* off” OR restrict*) |

Like many of the 381 strings, these strings include dozens of “OR” connectors on both sides of a connector. These strings equate to **hundreds of searches** the parties must analyze and negotiate.

***The proposed strings broaden overbroad RFPs the parties agreed to narrow***. The parties spent months negotiating Plaintiffs' RFPs, most of which Facebook objected to as overbroad. Yet, the proposed search strings sweep **even broader** than the original RFPs. Plaintiffs propose:

> (plan* OR roadmap* OR report* OR audit* OR model* OR forecast* OR target*) w/20 (financ* OR rev or revenue* OR monetiz* OR price* OR pricing)

The RFPs identified for this search seek documents related to the value of Named Plaintiffs' content and information and documents relating to conditioning third parties' access to user data on payments. But the string targets general financial documents, including any document referring to a “financial plan,” “revenue forecast,” or that mentions “plan” within 20 words of “price.”

For RFPs relating to how Facebook investigates thirty party compliance, Plaintiffs propose the following string, which is nothing more than a wild goose chase for profane language:

> (Bllshit or bullshit or “bull shit” or corrupt or crap* or cya or dammit or damn or fcuk or “fu k” or fuck* or “red flag*” or “sh t” or shit* or wtf or asswip* or jackass* or moron or morons or moronic or dick or dicks or dickhead* or pussy or pussies or asshol* or arsehol* or (cover* w/3 ass*) or pissed or liar* OR frustrat* OR stupid* OR shady OR sketch* OR greed* OR weird* OR BS OR FFS OR corrupt*) AND ((privacy or shar* OR data OR consent*) w/10 (“3d part*” OR 3P* OR “3rd part*” OR api* OR app* OR BP* OR dev* OR partner* OR

> affiliat* OR “third part*” OR advertiser* OR client* OR “ad network*” OR broker* OR entity OR entities OR customer* OR User* OR “tier 0” OR “tier 1” OR T0 OR T1 OR vendor*))

Finally, Plaintiffs say the string below relates to users’ privacy controls, but it would hit on any document that mentions “app” within 10 words of “setting,” “content,” and other common words.

> ((priva* OR app* OR apps OR application OR applications OR user* OR “3d part*” OR 3P* OR “3rd part*” OR “third part*”) w/10 (setting* OR control* OR tool* OR "app* others use" OR "Platform opt out" OR "platform opt-out") w/10 (revis* OR edit* OR modif* OR updat* OR beta OR test* OR chang* OR adjust* OR evaluat* OR analy* OR limit* OR shar* OR secur* OR collect* OR data OR info* OR content OR “C&I” OR “personal info*” OR account* OR notic* OR notif* OR manag* OR basics OR ceiling OR check* OR commit* OR level* OR option* OR access* OR "x-out" OR approv* OR authoriz*))

***It is not Facebook’s obligation to disprove 381 search strings that Plaintiffs explained for the first time 5 days ago.*** Sedona Principle 6 recognizes that the producing party’s searches are entitled to deference “unless a specific deficiency is shown.” The agreed-upon Search Term Protocol (Dkt. 461) incorporates this principle, but Plaintiffs have turned this process on its head.

On July 21, Facebook proposed 79 search strings for **38 custodians** (there are 81), which returned nearly **one million documents (~4 million pages)**. Plaintiffs’ deadline to respond was August 1, and they could, for good cause, propose additions or revisions to Facebook’s strings. Yet, **Plaintiffs say they started writing a proposal from scratch months before receiving Facebook’s**. The resulting proposal included **455 new strings** and returned **over 15 million documents (~60 million pages)**. It contained no explanation for the hundreds of strings, nor did it identify the custodians for whom they should be applied. Yet, Plaintiffs demanded that Facebook spend hundreds of hours analyzing these searches and prove why each one should *not* be added.

Nearly a month later, and only after the Court directed Plaintiffs to identify the custodians for whom their proposed strings should be applied, on August 29, Plaintiffs identified custodians for each search but still did not provide any explanation for the proposed terms.

On September 11, Facebook accepted many of Plaintiffs’ revisions and new strings. This counterproposal increased Facebook’s original proposal by 50% and hits on **about 1.5 million documents with families (~6 million pages)** for 38 custodians. Though Plaintiffs did not provide explanations for their proposed strings, **Facebook wrote explanations for each string it rejected**.

Five days ago, on Saturday, September 19 (Rosh Hashanah), Plaintiffs sent Facebook a

new counterproposal. **For the first time Plaintiffs provided "explanations" for their proposed search strings,** which had been due *eight weeks earlier*. These explanations are inadequate. They fail to explain how searches relate to *specific RFPs* and, instead, generally reference broad topics Plaintiffs believe are relevant to the case—many are not. *See* Dkt. 515. Moreover, Facebook cannot meaningfully assess explanations for **381 complex strings** in a few days, nor would it be manageable for the court to **receive briefs on hundreds or strings.**

***"Jargon" is already incorporated***. Facebook spent months conducting interviews, in part, to incorporate into its searches the jargon its employees use, and Facebook proposed detailed terms incorporating language its employees identified. Many of Plaintiffs' explanations say the strings include "commonly used internal terms and jargon." While Facebook accepted some of these terms, much of this supposed "jargon" includes terms like "create," "give," "continue," and "need"—in addition to plainly irrelevant terms. When Facebook asked why these terms are significant, Plaintiffs said the words appear on at least one of the 1.5 million pages Facebook has produced and insisted Facebook *disprove* the relevance of each term. This is not Facebook's burden, and not every word or phrase appearing in a document Facebook has produced is "jargon."

***PWC documents were produced.*** Plaintiffs say hundreds of complex search strings are required to identify every document that might relate to audits PWC completed. These audits were conducted pursuant to an FTC consent decree at the FTC's request. Facebook already produced the materials relating to those audits that it produced to the FTC and to other regulators. PWC also produced to Plaintiffs the materials it provided the FTC. Facebook cannot conceive of what materials plaintiffs need from an audit completed at the FTC's request that the FTC did not receive.

***The Court should order Plaintiffs to narrow their proposal***. Plaintiffs' search proposal is the most convoluted, complex, and unworkable proposal Facebook's counsel has ever encountered, and its breadth and complexity will make it impossible for the parties to present the Court with a manageable dispute. Facebook's September 11 proposal includes 84 search strings and hits on 1.5 million documents with families for 38 of 81 custodians. By September 28, Plaintiffs should provide Facebook with **no more than 39 search strings** from Plaintiffs'

September 19 counterproposal (including any revisions to Facebook's strings) for Facebook to consider incorporating, along with Plaintiffs' final explanations of why each string is needed. This will allow Plaintiffs to propose 2 additional strings for half of the 26 RFPs for which they propose searches and 1 additional string for the other half. The parties should discuss these strings next week and on October 2 submit a list of agreed-upon strings and disputed strings. At that time, Facebook will respond to the explanations provided on September 28.

**II. Other Issues Plaintiffs Raise**

**ADI:** Facebook is proposing today a stipulation that provides a deadline to (1) review the thousands of documents potentially related to the exemplar apps Plaintiffs selected last week, and (2) log responsive privileged documents. The parties should then follow the privilege challenge procedure set forth in the governing order in this case concerning privilege logs and can determine an appropriate briefing schedule once the specific issues to be litigated have been framed.

**Interrogatories**: Plaintiffs' interrogatories contain hundreds of subparts that require Facebook to investigate more than a decade of data about hundreds, perhaps thousands, of entities and events. Facebook answered 57 questions and cannot reasonably respond to hundreds more in the next 10 days. Indeed, Plaintiffs requested **10 weeks** to respond to 10 interrogatories, and Facebook agreed to this extension. Facebook will meet and confer with Plaintiffs to set a schedule.

**RFPs**: Plaintiffs served two sets of RFPs after the search term process began. Contrary to Plaintiffs' representations at the last hearing, these include 21 RFPs for which Plaintiffs have not proposed search terms. Facebook timely responded to these requests and the parties met and conferred about them, but search terms must be prioritized over any additional targeted collections.

**Case Schedule:** The parties should propose revised case deadlines once search terms are in place, at which point they can better predict the time needed to review and produce documents.

**Expert Stipulation**: Facebook is assessing Plaintiffs' proposed stipulation and will endeavor to provide revisions next week. In the meantime, they may rely on Rule 26(b)(4).

**Confidentiality**: If the Court is inclined to order that materials leaked in violation of a protective order should not be treated as confidential, Facebook respectfully requests full briefing.

## III. PLAINTIFFS' RESPONSE TO FACEBOOK

Rather than engaging in the process agreed upon by the parties and ordered by the Court, Facebook presents an avalanche of complaints and new positions never before disclosed to Plaintiffs in an effort to avoid what it has refused to do during this entire process – have meaningful and specific discussions about proposed search terms in a complex case. Indeed, instead of continuing to confer with Plaintiffs over these terms, Facebook insists on an arbitrary cap of 39 additional terms that must be selected by Plaintiffs before Facebook will re-engage– a proposal Facebook never raised during meet and confers. There is no basis for this request. Plaintiffs remain committed to the meet and confer process and to reaching an agreement on as many search terms as possible by the Court's October 2 deadline.

Plaintiffs disagree with nearly every aspect of Facebook's characterization of the negotiations to-date, but rather than burdening the Court with rebuttals (unless the Court desires to hear from them on specific points), Plaintiffs provide an overview of their understanding of the process and progress to-date, and the best path forward:

**Process:** Plaintiffs reiterate their offer, made nine weeks ago and repeatedly since, to meet and confer with Facebook more frequently for shorter periods, to organize discussions by subject matter, to engage in discussions regarding individual terms, to provide information regarding any disputed terms, and in general, to talk with counsel in a productive manner. Plaintiffs also continue to invite Facebook to provide substantive responses in writing to Plaintiffs' proposed terms in which Facebook explains why it believes particular terms are overbroad. To date, Facebook has refused to do either.

**Facebook's Burden Arguments:** As Facebook admits, its employees rely nearly exclusively on electronic communications. And as recognized by the Court, Facebook itself is an ESI company. As such, the volume of responsive ESI from which responsive documents are to be selected is likely to be substantial, and certainly broader than is typical in cases against companies that rely less on ESI. At any rate, in cases of similar size and complexity, productions

often run in the tens of millions of documents, and require hundreds of search terms.[1] *See e.g.*, *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2009 WL 10694848, at *1 (N.D. Cal. July 13, 2009) (ordering 402 search terms). This is not to say that Plaintiffs do not want to streamline the production of documents, and eliminate irrelevant information. Plaintiffs have spent months reviewing documents produced by Facebook and by third parties in order to craft targeted search terms. Facebook's objections as to proportionality should be framed in the context of this case, the 13-year time period, and the amount of potentially relevant data. As Judge Chhabria has stated, this is a big case, involving significant issues.[2] Facebook's bare proportionality arguments do not apply.

**Path Forward:** Plaintiffs believe that significant progress has been and continues to be made. In keeping with the parties' agreements and shared goal to reduce the rounds of search term negotiations, Plaintiffs presented a comprehensive search term proposal applicable across custodians that addresses gaps in Facebook's proposal by including absent topics, internal jargon, terms commonly used by Facebook employees, and, where possible, addressing subject-matter-related RFPs for which search terms are appropriate. Plaintiffs' recent revisions trimmed the number of proposed terms by half, and reduced the number of document hits to 5.8 million documents (10.3 million, including families), according to hit reports provided by Facebook. This is a drop of 5 million documents from the total review population. For the next week, the parties should engage in good-faith, productive discussions and seek to agree on terms where possible. To the extent a dispute remains, they will submit their proposals to the Court on

---

[1] Characteristic of Facebook's misstatements about Plaintiffs' proposed search terms is its claim that Plaintiffs propose a search that targets "any communications that use profanity." In truth, that string – a common type that often identifies highly probative evidence –is appropriately tied with a w/10 limiter to privacy and data-focused terms, and to custodians involved in enforcement and oversight.

[2] "This is a big case. It is a significant issue. You know, and there is -- this is not the type of case where we are going to be saying: Well, that might end up -- that effort might end up uncovering some relevant information; but, you know, it is just too expensive or difficult, and so we are not going to make Facebook do it. This is really not one of those cases where that is very -- that type of argument is likely to carry the day." Tr. at 28:25-29:18. (Mar. 5, 2020).

October 2. To that end, Plaintiffs request the Court's guidance on the form of submission that would be most helpful.

Dated: September 23, 2020

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By: *Derek W. Loeser*
Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

BLEICHMAR FONTI & AULD LLP

By: *Lesley E. Weaver*
Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: *Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed Thursday, September 24, 2020, at Oakland, California.

_*Lesley E. Weaver*__
Lesley E. Weaver

4843-6311-5212, v. 1