# EXHIBIT 1

```
1         IN THE SUPERIOR COURTS OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SAN MATEO

3                         ---oOo---

4


5    SIX4THREE, LLC, A DELAWARE          C E R T I F I E D  T R A N S C R I P T
     LIMITED LIABILITY COMPANY,
6
                  PLAINTIFFS,
7
          VS.                           CASE NO. CIV533328
8
     FACEBOOK, INC., A DELAWARE
9    CORPORATION, ET AL.,

10                DEFENDANTS.

11   _____/

12
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
13
           BEFORE:  HONORABLE V. RAYMOND SWOPE, JUDGE
14
                         DEPARTMENT 23
15
                       NOVEMBER 30, 2018
16


17

18   A P P E A R A N C E S

19   FOR THE PLAINTIFFS:  STUART G. GROSS
                          ATTORNEY AT LAW
20
                          DAVID S. GODKIN
21                        ATTORNEY AT LAW

22   FOR THE DEFENDANTS:  JOSH H. LERNER
                          ATTORNEY AT LAW
23
                          SONAL N. MEHTA
24                        ATTORNEY AT LAW

25

26   REPORTED BY:  GERALDINE VANDEVELD, C.S.R. 8634
```

P R O C E E D I N G S

REDWOOD CITY, CALIFORNIA

NOVEMBER 30, 2018

--oOo--




        THE COURT:  GOOD AFTERNOON, EVERYONE.  CALLING CASE
NUMBER CIV533328.  THE MATTER OF SIX4THREE, LLC VERSUS
FACEBOOK, ET AL.  WILL COUNSEL, PLEASE, STATE YOUR APPEARANCES
FOR THE RECORD.
        MR. GODKIN:  GOOD AFTERNOON, YOUR HONOR.
DAVID GODKIN, BIRNBAUM & GODKIN FOR THE PLAINTIFF SIX4THREE.
        MR. GROSS:  GOOD AFTERNOON, YOUR HONOR.
STUART GROSS, GROSS & KLEIN FOR PLAINTIFF SIX4THREE.
        MR. GODKIN:  AND MR. KRUZER FROM MY OFFICE IS HERE,
YOUR HONOR, AS WELL.
        MR. THOREEN:  GOOD AFTERNOON, YOUR HONOR.
PETER THOREEN FROM ALTSHULER & BERZON ON BEHALF OF
THEODORE KRAMER.
        MS. MEHTA:  GOOD AFTERNOON, YOUR HONOR.  SONAL MEHTA
FROM DURIE TANGRI ON BEHALF OF FACEBOOK.  WITH ME JOSH LERNER,
LAURA MILLER, CATHERINE KIM AND ZACHARY ABRAHAMSON.  ALL FROM
THE LAW FIRM OF DURIE TANGRI.  AS WELL AS PAUL GREWAL, VICE
PRESIDENT DEPUTY GENERAL COUNSEL FOR LITIGATION FROM FACEBOOK.
        MR. GREWAL:  GOOD AFTERNOON, YOUR HONOR.
        MS. MEHTA:  AND NATALIE NAUGLE ASSOCIATE GENERAL

1   COUNSEL FOR LITIGATION AT FACEBOOK.

2   MS. NAUGLE:  GOOD AFTERNOON, YOUR HONOR.

3   THE COURT:  GOOD AFTERNOON.  THIS HEARING WAS

4   SCHEDULED BY THIS COURT ON TODAY'S DATE PURSUANT TO AN

5   EX PARTE APPLICATION BY DEFENDANT FACEBOOK, INC. FOR EXPEDITED

6   RELIEF REGARDING SIX4THREE'S DISOBEDIENCE OF A VALID COURT

7   ORDER.  FACEBOOK HAS FILED AN EX PARTE APPLICATION SEEKING AN

8   ORDER TO SHOW CAUSE AS TO WHY TERMINATING SANCTIONS AND

9   MONITORING SANCTIONS SHOULD NOT ISSUE AGAINST SIX4THREE, LLC

10  AND ITS COUNSEL.

11  GENERALLY EX PARTE PROCEEDINGS ARE NOT REPORTED.

12  HOWEVER, BECAUSE OF THE GRAVITY OF THE CONDUCT BY THE

13  PLAINTIFF'S PRINCIPAL MR. KRAMER, THIS COURT BELIEVES IT IS

14  ESSENTIAL THAT THESE PROCEEDINGS ARE REPORTED BY A COURT

15  REPORTER AND PRESERVED ON THE RECORD.

16  ON OCTOBER 25TH, 2016, THIS COURT ISSUED A

17  PROTECTIVE ORDER PURSUANT TO A STIPULATION OF THE PARTIES.

18  THIS ORDER WAS BINDING ON ALL PARTIES INCLUDING MR. THEODORE

19  KRAMER.  ON NOVEMBER 1ST, 2018, THIS COURT GRANTED A MOTION TO

20  SEAL CERTAIN CONFIDENTIAL DOCUMENTS AND ORDERED STRICKEN

21  CERTAIN EVIDENCE PROFFERED BY THE PLAINTIFF SIX4THREE.

22  LATER, ON NOVEMBER 19TH, 2018, THIS COURT RECEIVED

23  AN EMAIL FROM DEFENDANT FACEBOOK THAT THE HOUSE OF COMMONS

24  DIGITAL CULTURE MEDIA AND SPORT COMMITTEE OTHERWISE KNOWN AS

25  DCMS IN THE UNITED KINGDOM HAD ORDERED MR. KRAMER TO SUBMIT

26  UNREDACTED COPIES OF SIX4THREE'S OPPOSITION TO THE ANTI-SLAPP

1 | MOTION.  THIS OF COURSE WAS CONTRARY TO MY SEALING ORDER OF

2 | NOVEMBER 1ST.

3 |         ACCORDINGLY, I ISSUED A FURTHER ORDER ON

4 | NOVEMBER 20TH, 2018.  AND THAT ORDER STATED THE FOLLOWING,

5 | QUOTE "NO UNREDACTED COPIES OF PLAINTIFF'S OPPOSITION TO

6 | EITHER FACEBOOK'S SPECIAL MOTION TO STRIKE OR INDIVIDUAL

7 | DEFENDANT'S SPECIAL MOTION TO STRIKE SHALL BE TRANSMITTED,

8 | RELEASED OR SUBMITTED UNTIL FURTHER ORDER OF THE COURT.

9 |         FAILURE TO COMPLY WILL BE CONSIDERED AN ACT OF

10 | CONTEMPT.  NOTWITHSTANDING THESE THREE VALID ORDERS THAT WERE

11 | ISSUED BY THIS COURT, I'VE BEEN INFORMED THAT MR. THEODORE

12 | KRAMER HAS SUBMITTED THESE DOCUMENTS TO THE DCMS COMMITTEE OF

13 | THE HOUSE OF COMMONS.

14 |         NOW, THIS COURT SET A BRIEFING SCHEDULE ON THE

15 | DEFENDANT FACEBOOK'S EX PARTE APPLICATION.  AND THIS COURT HAS

16 | READ AND CONSIDERED THE PAPERS AND THE DECLARATIONS FILED

17 | THEREWITH.

18 |         GIVEN THAT THE DEFENDANT IS THE MOVING PARTY,

19 | COUNSEL FOR THE DEFENDANT WILL BE PERMITTED TO PRESENT ITS

20 | ARGUMENT FIRST FOLLOWED BY THE PLAINTIFF'S ARGUMENT.  BUT

21 | BEFORE WE BEGIN WITH THE ARGUMENTS BY COUNSEL, I HAVE A

22 | QUESTION FOR MR. KRAMER.  SO AT THIS TIME -- AND IT'S ONLY TWO

23 | QUESTIONS.  I ASK THAT THE -- MR. KRAMER STAND AND BE SWORN IN

24 | BY THE COURTROOM CLERK.

25 |         THE CLERK:  PLEASE STAND AND RAISE YOUR RIGHT HAND.

26 |         (WHEREUPON, THEODORE KRAMER WAS FIRST DULY SWORN.)

```
1              THE CLERK:  THANK YOU.  HAVE A SEAT.
2              THE COURT:  FIRST, MR. KRAMER, IS EVERYTHING SET
3   FORTH IN THE DECLARATION THAT YOU FILED ON NOVEMBER 26, 2018,
4   AND ALL OF THE ATTACHMENTS THERETO TRUE AND CORRECT UNDER
5   PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA?
6              MR. KRAMER:  YES, YOUR HONOR.
7              THE COURT:  MY SECOND QUESTION.  IS THE SUBJECT
8   LAPTOP THAT IS TO SAY YOUR LAPTOP THAT YOU USED TO TRANSFER
9   THE FILES TO THE USB THUMB-DRIVE IN WORKING ORDER?
10             MR. KRAMER:  YES, YOUR HONOR.
11             THE COURT:  IS YOUR LAPTOP FULLY FUNCTIONAL?
12             MR. KRAMER:  YES, YOUR HONOR.
13             THE COURT:  DO YOU HAVE IT WITH YOU TODAY?
14             MR. KRAMER:  I DO NOT, YOUR HONOR.
15             THE COURT:  OKAY.  WELL, AFTER I HEAR THE ARGUMENTS,
16  I'M GOING TO MAKE AN ORDER.  AND YOU ARE TO HAVE YOUR LAPTOP
17  PRESENTED TO MR. GROSS NO LATER THAN 8:00 P.M. TONIGHT.  DO
18  YOU UNDERSTAND THAT, SIR?
19             MR. KRAMER:  YES, SIR.
20             THE COURT:  THAT WILL BE AN ORDER OF THE COURT.
21  THAT'S ALL I HAVE TO SAY BEFORE THE ARGUMENTS BEGIN EXCEPT
22  THAT WHEN I ISSUE A VALID COURT ORDER GOVERNING THE CONDUCT OF
23  THE PARTIES IN THIS CASE OR ANY OTHER SUCH COURT ORDER, I
24  EXPECT THESE ORDERS TO BE FOLLOWED.  I DO NOT EXPECT A
25  COMPROMISE OF THE INTEGRITY OF THIS JUDICIAL SYSTEM WHICH HAS
26  BEEN DONE.
```

```
1              NOW, COUNSEL FOR THE DEFENDANT, ARE YOU READY TO
2    PROCEED WITH YOUR ARGUMENTS?
3              MS. MEHTA:  YES, YOUR HONOR.  THANK YOU.  AT THIS
4    POINT THERE IS NO DISPUTE THAT SIX4THREE, MR. KRAMER AND
5    COUNSEL VIOLATED MULTIPLE ORDERS OF THE COURT AND THAT
6    EVIDENCE HAS BEEN DESTROYED.  FACEBOOK'S HIGHEST PRIORITY AT
7    THIS POINT IS TO DETERMINE THE EXTENT OF THE VIOLATION OF THE
8    COURT'S ORDERS AND THE DISSEMINATION OF CONFIDENTIAL
9    INFORMATION, VIOLATION OF THE COURT'S ORDERS AND TO GET TO THE
10   BOTTOM OF WHAT REALLY HAPPENED HERE SO THAT THE COURT CAN
11   ISSUE APPROPRIATE REMEDIAL MEASURES AND APPROPRIATE SANCTIONS.
12             WHAT WE KNOW SO FAR, YOUR HONOR, IS BASED ONLY ON
13   THE DECLARATION OF MR. KRAMER.  NONE OF THE OTHER WITNESSES TO
14   THE EVENTS THAT HAPPENED TO THE UNITED KINGDOM OR THE LEAD UP
15   TO THOSE EVENTS HAS COME FORWARD.
16             THE COURT:  MS. MEHTA, WOULD YOU BE SO KIND TO SLOW
17   DOWN A LITTLE BIT FOR THE COURT REPORTER.
18             MS. MEHTA:  CERTAINLY, YOUR HONOR.
19             THE COURT:  THANK YOU VERY MUCH.
20             MS. MEHTA:  NONE OF THE OTHER WITNESSES TO THE
21   EVENTS IN THE UNITED KINGDOM HAVE STEPPED FORWARD, SO THE ONLY
22   ACCOUNT THAT WE HAVE AT THIS POINT IS MR. KRAMER'S ACCOUNT.
23   AND THAT ACCOUNT IS PRESUMABLY THE BEST VERSION OF THE FACTS
24   FOR MR. KRAMER.  EVEN THAT VERSION OF THE FACTS, THE BEST
25   VERSION THEY'VE BEEN ABLE TO COME UP WITH ESTABLISHES THE
26   FOLLOWING ACCORDING TO MR. KRAMER HIMSELF.
```

1           FIRST, THAT MR. KRAMER REACHED OUT TO MR. COLLINS OF

2   THE DCMS COMMITTEE AND SENT HIM A SUMMARY OF THE ALLEGATIONS

3   OF SIX4THREE'S ALLEGATIONS IN THIS CASE.  A SUMMARY WHICH WE

4   AND THE COURT STILL DO NOT HAVE AND WHICH PRESUMABLY HAS

5   CONFIDENTIAL INFORMATION IN IT.  AND THAT IS NOT WITHSTANDING

6   THE FACT THAT FACEBOOK HAS REPEATEDLY REQUESTED THAT SUMMARY

7   THIS WEEK AND SIX4THREE'S COUNSEL HAVE FAILED TO TURN IT OVER

8   TO US OR TO THE COURT.

9           BUT THAT IS ACCORDING TO THE DOCUMENT ATTACHED TO

10  MR. KRAMER'S EMAIL, I'M SORRY, TO HIS DECLARATION.  AN EMAIL

11  IN WHICH HE SENT THE SUMMARY TO MR. COLLINS.  ANOTHER DOCUMENT

12  TO MR. KRAMER'S OWN DECLARATION ESTABLISHES THAT HE SENT A

13  LIST OF DOCUMENTS THAT MR. COLLINS AND THE DCMS COMMITTEE

14  SHOULD REQUEST.  A LIST OF THE LITIGATION DOCUMENTS.  THAT

15  LIST IS ALSO SOMETHING THAT SIX4THREE AND ITS COUNSEL HAVE

16  FAILED TO DISCLOSE TO THE COURT AND TO FACEBOOK AND, AGAIN,

17  PRESUMABLY ITSELF INCLUDES CONFIDENTIAL INFORMATION.

18          AFTER PROVIDING MR. COLLINS WITH A SUMMARY OF

19  SIX4THREE'S ALLEGATIONS AND A LIST OF DOCUMENTS TO REQUEST

20  FROM THE LITIGATION, MR. KRAMER PROCEEDED OVER THE COURSE OF

21  WEEKS TO ENGAGE WITH THE COMMITTEE.  INCLUDING TO CONFIRM IN

22  AN EMAIL THAT HE HAD IN HIS POSSESSION CONFIDENTIAL AND HIGHLY

23  CONFIDENTIAL DOCUMENTS.  AND THEN TO DECLINE A VOLUNTARY

24  REQUEST FOR THE DOCUMENTS AND INSTEAD INVITE A FORMAL ORDER OF

25  THE COURT.

26          AFTER COORDINATING FOR WEEKS WITH THE DCMS

1    COMMITTEE, MR. KRAMER TRAVELED TO THE UNITED KINGDOM WITH

2    DOCUMENTS HE NEVER SHOULD HAVE HAD IN THE FIRST PLACE ON HIS

3    LAPTOP FOR SOME UNSPECIFIED BUSINESS AND CHECKED IN TO A HOTEL

4    1500 FEET AWAY FROM PARLIAMENT.  WHILE HE WAS THERE, HE

5    RECEIVED ORDERS FROM THE PARLIAMENT REQUESTING THE DOCUMENTS.

6         THOSE ORDERS -- AND THIS IS ALL BASED ON

7    MR. KRAMER'S ACCOUNT.  THOSE ORDERS MADE CLEAR THAT MR. KRAMER

8    WOULD STILL BE SUBJECT TO THIS COURT'S JURISDICTION AND ANY

9    VALID ORDER FROM THIS COURT.

10        THE COURT:  BEFORE WE GO ANY FURTHER WITH YOUR

11   ARGUMENTS, YOU SAID THAT MR. KRAMER HAD INVITED A FORMAL ORDER

12   OF THE COURT.  DID YOU MEAN PARLIAMENT?

13        MS. MEHTA:  THAT'S RIGHT.

14        THE COURT:  WE HAVE TWO GOVERNMENTAL ENTITIES HERE.

15   AND IT HAS IMPLICATIONS WITH REGARD TO THE HAGUE CONVENTION

16   AND THE LIKE.

17        MS. MEHTA:  YOU'RE PROBABLY RIGHT, YOUR HONOR.  WHAT

18   I MEANT TO SAY IS HE INVITED A FORMAL ORDER FROM THE U.K.

19   PARLIAMENT FROM THE DCMS COMMITTEE.

20        THE COURT:  THANK YOU.

21        MS. MEHTA:  AFTER HAVING RECEIVED THE REQUEST FOR

22   THE ORDERS FROM THE PARLIAMENT, HE SAYS THAT HE DECLINED TO

23   COMPLY WITH THEM.  THE SECOND ONE HE SAYS WAS DELIVERED TO HIS

24   HOTEL BY THE SERGEANT AT ARMS OF PARLIAMENT.  CONTRARY TO

25   PRESS REPORTS, MR. KRAMER'S OWN DECLARATION DOES NOT SAY THAT

26   THE SERGEANT AT ARMS ESCORTED HIM ANYWHERE OR COMPELLED HIM TO

1    DO ANYTHING.  RATHER, MR. KRAMER'S OWN DECLARATION SAYS THAT

2    THE SERGEANT AT ARMS SIMPLY DELIVERED THE SECOND ORDER ORDER

3    NUMBER TWO TO MR. KRAMER.

4          TWO HOURS LATER, HE WAS EMAILED THE THIRD ORDER

5    ORDER NUMBER THREE.  THEN ACCORDING TO MR. KRAMER'S OWN

6    ACCOUNT, HE VOLUNTARILY WENT 1500 FEET TO PARLIAMENT, SHOWED

7    UP UNANNOUNCED WITH NO APPOINTMENT AND ASKED TO SEE A MEMBER

8    OF PARLIAMENT.  HIS STATED INTENTION WAS TO PERSUADE THE

9    MEMBER OF PARLIAMENT THAT HE WOULDN'T BE TURNING OVER OR

10   SHOULDN'T HAVE TO TURN OVER THE DOCUMENTS.  NEVERTHELESS,

11   AFTER VOLUNTARILY SHOWING UP TO PARLIAMENT AND COLD-CALLING A

12   MEMBER OF PARLIAMENT, HE BROUGHT WITH HIM THE CONFIDENTIAL

13   DOCUMENTS ON HIS LAPTOP AND A THUMB-DRIVE FOR THE COPYING OF

14   THE DOCUMENTS.

15         AGAIN, ALL OF THIS ACCORDING TO MR. KRAMER'S OWN

16   DECLARATION WHICH IS PRESUMABLY THE MOST FAVORABLE SET OF

17   FACTS FOR HIM AND HAS NOT YET BEEN SUBJECT TO

18   CROSS-EXAMINATION.

19         THEN, AFTER TURNING OVER SOME UNSPECIFIED SET OF

20   CONFIDENTIAL AND HIGHLY CONFIDENTIAL DOCUMENTS TO THE DCMS

21   COMMITTEE, MR. KRAMER BY HIS OWN ACCOUNT LEFT THE UNITED

22   KINGDOM, DIDN'T CALL HIS LAWYERS TO LET THEM KNOW THIS HAD

23   HAPPENED, DIDN'T ADVISE THE COURT OR FACEBOOK THAT THIS HAD

24   HAPPENED.

25         INSTEAD, HE LEFT THE UNITED KINGDOM, FLEW HOME TO

26   NEW YORK, HAD THANKSGIVING WITH HIS FAMILY AGAIN WITHOUT

1   TELLING ANYONE THAT HE HAD VIOLATED THIS COURT'S ORDERS.  THEN

2   SPENT THE FOLLOWING MORNING COLLECTING HIS RECORDS ABOUT THE

3   VIOLATION OF THE COURT ORDER.  AND ONLY ON FRIDAY AFTERNOON,

4   TWO DAYS AFTER HE HAD TURNED THE DOCUMENTS OVER TO THE DCMS

5   COMMITTEE ON THIS VOLUNTARY VISIT TO PARLIAMENT DID HE EVEN

6   LET BY HIS OWN ACCOUNT HIS LAWYERS KNOW WHO THEN LET FACEBOOK

7   AND THE COURT KNOW.

8        THOSE ARE THE FACTS THAT WE HAVE NOW BASED ON

9   MR. KRAMER'S UNCONTESTED VERSION OF THE FACTS.  WHAT WE ARE

10   ASKING FOR, YOUR HONOR, IS DISCOVERY THAT WOULD ALLOW FACEBOOK

11   AND MORE IMPORTANTLY THE COURT TO GET TO THE BOTTOM OF WHAT

12   ACTUALLY HAPPENED HERE.  AND THE EXTENT WHICH FACEBOOK

13   CONFIDENTIAL INFORMATION REMAINS AT RISK OF IMPROPER

14   DISCLOSURE.  AND THE EXTENT TO WHICH INDIVIDUALS ASSOCIATED

15   WITH SIX4THREE HAVE VIOLATED THE COURT'S ORDERS INCLUDING

16   MR. KRAMER, MR. SCARAMELLINO, COUNSEL OF RECORD FOR SIX4THREE

17   AND POTENTIALLY OTHERS.

18        WE DON'T KNOW THE FULL EXTENT OF WHAT WAS BREACHED,

19   WHO BREACHED IT OR HOW INVOLVED ANY OF THESE INDIVIDUALS WERE

20   IN THE DECISION TO VIOLATE THIS COURT'S ORDER.  WE'VE MADE A

21   NUMBER OF REQUESTS FOR DISCOVERY IN TERMS OF WRITTEN DOCUMENTS

22   AND DEPOSITIONS OF THE RELEVANT PARTIES IN OUR EX PARTE

23   PAPERS.  I'M HAPPY TO GO THROUGH THOSE ALL.  IF YOU'D LIKE, I

24   COULD LIST THEM OR IF YOU PREFER, WE COULD REFER TO THE

25   VERSION OF THE DOCUMENT REQUEST AND DEPOSITION REQUEST IN THE

26   EX PARTE APPLICATION, YOUR HONOR.

```
1            THE COURT:  WHO DO YOU PLAN ON DEPOSING IN THIS

2   CASE?  ASSUMING, OF COURSE, THAT I REOPEN DISCOVERY FOR THE

3   EXPRESSED PURPOSE OF LIMITED DISCOVERY AS TO WHO IS

4   RESPONSIBLE FOR WHAT HAPPENED.

5            MS. MEHTA:  CORRECT, YOUR HONOR.  SO IF WE ARE GOING

6   TO REOPEN DISCOVERY NOT AS TO THE MERITS OF THE CASE BUT AS TO

7   THE QUESTION OF THE BREACH OF THE COURT'S ORDERS, WHICH WE

8   THINK IS APPROPRIATE AND WE'RE REQUESTING.  WHAT WE WOULD LIKE

9   FIRST IS DOCUMENT DISCOVERY AND FORENSIC INSPECTION OF

10  MR. KRAMER AND HIS COUNSEL'S LAPTOPS AND THE THUMB-DRIVE, IF

11  IT'S STILL IN HIS POSSESSION.

12            ONCE WE HAVE THE FORENSIC IMAGES OF ALL OF THOSE

13  ELECTRONIC REPOSITORIES, WE'D ALSO LIKE IN PARALLEL TO THAT

14  ANY LOGS OR RECORDS ASSOCIATED WITH THE DROPBOX ACCOUNT.  AND

15  WE'D LIKE THE FOLLOWING SETS OF THE DOCUMENTARY EVIDENCE

16  RELATING TO THESE EVENTS.

17            SO, FIRST, WE WANT WRITTEN COMMUNICATIONS BETWEEN

18  ANYONE ON THE SIX4THREE SIDE.  AND THAT WOULD INCLUDE

19  MR. KRAMER, MR. SCARAMELLINO WHO IS A PART OF THE LEGAL TEAM,

20  MR. GODKIN, MR. KRUZER, MR. GROSS AND ANYONE ELSE ASSOCIATED

21  WITH SIX4THREE.  AND ANYONE THAT THEY INTERACTED WITH WITH

22  REGARD TO FACEBOOK'S CONFIDENTIAL INFORMATION.

23            ALL THE EMAILS.  ANY WRITTEN COMMUNICATIONS WE'D

24  LIKE.  THAT WOULD INCLUDE AT A MINIMUM THE THREE ATTACHMENTS

25  TO MR. KRAMER'S OCTOBER 1ST EMAIL WHICH HAVE BEEN WITHHELD

26  FROM THE COURT AND FROM FACEBOOK.  PRESUMABLY THERE ARE OTHER
```

1    WRITTEN DOCUMENTS THAT WOULD FOLLOW IN THE SCOPE OF THAT THAT

2    WE THINK THE COURT IS ENTITLED TO AS WELL.

3            WE ALSO BELIEVE THAT DOCUMENTS AND PHONE LOGS

4    SHOWING ANY TELEPHONE OR VIDEO CONFERENCE COMMUNICATIONS

5    BETWEEN THE INDIVIDUALS ASSOCIATED WITH SIX4THREE AND THIRD

6    PARTIES WOULD BE APPROPRIATE.  BASED ON THE LIMITED WRITTEN

7    RECORD WE HAVE, IT APPEARS THAT THERE WOULD HAVE BEEN

8    TELEPHONE CONVERSATIONS THAT RELATED TO THIS BREACH OF THE

9    COURT'S ORDERS AND TELEPHONE LOGS OR OTHER DOCUMENTS SHOWING

10   THOSE CONVERSATIONS WOULD BE PROBATIVE TO THE COURT'S

11   INVESTIGATION INTO THE VIOLATION OF THE COURT'S ORDER.

12           WE'D ALSO LIKE TO KNOW THAT DOCUMENTS SUFFICIENT TO

13   SHOW ANY OTHER INDIVIDUALS OR ENTITIES TO WHOM SIX4THREE HAS

14   DISCLOSED OR DISCUSSED FACEBOOK'S CONFIDENTIAL INFORMATION.

15           THERE ARE ENOUGH RED FLAGS HERE ON THIS RECORD WITH

16   RESPECT TO THE DISREGARD OF CONFIDENTIALITY OBLIGATIONS THAT

17   WE BELIEVE AND WE EXPECT YOUR HONOR WOULD WANT TO CONFIRM THAT

18   THERE MAY HAVE BEEN OTHER BREACHES OF CONFIDENTIALITY.  AND WE

19   NEED TO FIGURE OUT WHAT THOSE WERE AND MAKE SURE THAT WE KNOW

20   THE FULL EXTENT OF THAT SO THAT YOUR HONOR CAN TAKE THE

21   APPROPRIATE MEASURES.

22           BEYOND THAT AND THE DROPBOX, WE'D ALSO LIKE TO ASK

23   FOR YOUR HONOR TO ORDER DEPOSITIONS.  AND THE DEPOSITIONS

24   WOULD INCLUDE MR. KRAMER, MR. SCARAMELLINO, MR. GODKIN AND

25   MR. GROSS.  DEPENDING ON WHAT WE LEARN THROUGH THE DOCUMENTS

26   AND THROUGH THE DEPOSITIONS, IT'S CONCEIVABLE THAT ADDITIONAL

1   PERSONS MIGHT NEED TO BE SUBJECT TO DEPOSITION.  BUT WE KNOW

2   FROM THEIR RECORD THAT THEY HAVE PRESENTED THAT AT LEAST THOSE

3   FOUR INDIVIDUALS WERE ACTIVELY INVOLVED IN THE VIOLATION OF

4   THIS COURT'S ORDER.  AND ONLY THEY WILL KNOW THE FACTS AS TO

5   HOW IT CAME ABOUT AND WHO WAS INVOLVED TO WHAT EXTENT.

6           SO THAT WOULD BE THE DISCOVERY THAT WE ARE

7   REQUESTING, YOUR HONOR.  AND WE'RE REQUESTING THAT THAT

8   DISCOVERY HAPPEN IMMEDIATELY.  AND BY "IMMEDIATELY," WE WOULD

9   RESPECTFULLY SUGGEST, YOUR HONOR, THAT WHEN MR. KRAMER TURNS

10  IN HIS LAPTOP, HE TURNS HIS LAPTOP OVER TONIGHT THAT IT BE

11  TURNED OVER NOT TO MR. GROSS WHO INSTRUCTED MR. KRAMER TO

12  DELETE EVIDENCE JUST LAST WEEK.  BUT INSTEAD TO A FORENSIC

13  RECOVERY FIRM THAT CAN TAKE POSSESSION OF MR. KRAMER'S LAPTOP,

14  THE LAPTOP OF COUNSEL, THE THUMB-DRIVE AND ANY OTHER

15  ELECTRONIC SYSTEMS THAT WERE INVOLVED IN THIS AND CAN START

16  THE PROCESS OF A FORENSIC RECOVERY SO THAT WE CAN TRY TO

17  DETERMINE WHAT EVIDENCE THERE IS THAT'S A VIOLATION OF THE

18  COURT'S ORDER.  RATHER THAN ALLOW FACEBOOK CONFIDENTIAL

19  INFORMATION TO REMAIN IN THE POSSESSION OF INDIVIDUALS WHO

20  HAVE ALREADY SHOWN A DISREGARD FOR THIS COURT'S ORDER AND

21  THEIR OBLIGATION UNDER THE COURT'S ORDERS.

22          THAT'S ONE THING THAT WE NEED IMMEDIATELY.  THE

23  OTHER THING THAT WE NEED IMMEDIATELY IS ALL OF THE DOCUMENTS

24  TO BE PRODUCED AND FOR THE DEPOSITIONS TO PROCEED PROMPTLY.

25  AND BY "PROMPTLY" WE MEAN IN THE NEXT WEEK.  AND THE REASON

26  FOR THAT IS, FIRST, THAT SIX4THREE AND ITS COUNSEL HAVE

1    ALREADY ADMITTED TO TAKING STEPS TO TRY TO DESTROY EVIDENCE OF

2    THE BREACH ITSELF THROUGH THEIR INSTRUCTION TO THEIR CLIENT TO

3    DELETE FROM THE LAPTOP RECORDS THAT MIGHT SHOW WHAT DOCUMENTS

4    WERE PROVIDED TO PARLIAMENT TO THE DCMS COMMITTEE.

5              SECONDLY, MR. KRAMER ALREADY CLAIMS THAT HE CAN'T

6    REMEMBER THINGS THAT HAPPENED JUST LAST WEEK.  WITH EVERY

7    PASSING DAY, WE RISK FURTHER CLAIMS OR SUGGESTIONS THAT THE

8    PEOPLE THAT WOULD KNOW WHAT HAPPENED HERE NOW CAN'T REMEMBER

9    WHAT HAPPENED.  AND THE FURTHER CLAIMS OF LOSS OF MEMORY

10   PREJUDICE THIS COURT'S ABILITY TO GET TO THE BOTTOM OF WHAT

11   HAS HAPPENED HERE.

12             AND, FINALLY, BECAUSE SIX4THREE AND ITS COUNSEL HAVE

13   SHOWN A CAVALIER DISREGARD FOR THE COURT'S ORDERS AND THE

14   CONFIDENTIALITY OBLIGATIONS THEY HAVE AS LITIGANTS AND MEMBERS

15   OF THE BAR, EVERY DAY EVERY MOMENT THAT THEY CONTINUE TO

16   POSSESS FACEBOOK CONFIDENTIAL INFORMATION, THERE IS A

17   HEIGHTENED RISK THAT WE WILL CONTINUE TO HAVE SUCH BREACHES.

18             SO WHAT WE WOULD PROPOSE, YOUR HONOR, IS THAT WE

19   IMMEDIATELY MEANING BY 5:00 O'CLOCK ON FRIDAY GET ALL OF THE

20   DOCUMENTS THAT WE HAVE REQUESTED WHICH SHOULD ALLOW THE COURT

21   TO GET TO THE BOTTOM OF WHAT HAD HAPPENED HERE.  DEPOSITIONS,

22   WE'RE READY TO GO AS SOON AS THOSE DOCUMENTS ARE PRODUCED.

23   TUESDAY, WEDNESDAY NEXT WEEK WE'RE READY TO TAKE THOSE

24   DEPOSITIONS.

25             AND THEN WE WOULD ASK THAT IMMEDIATELY AFTER THE

26   DEPOSITIONS, WE SET A BRIEFING SCHEDULE FOR EXPEDITED BRIEFING

1    ON THE IMPLICATIONS OF WHAT WE LEARN IN DISCOVERY.  THAT WOULD

2    INCLUDE BRIEFING ON THE EXTENT OF THE VIOLATION OF THE COURT'S

3    ORDER.  THE EXTENT OF EXFOLIATION OF EVIDENCE.  WHO WAS

4    INVOLVED, TO WHAT EXTENT AND WHAT THE APPROPRIATE REMEDIES

5    SHOULD BE INCLUDING, FOR EXAMPLE, TERMINATING IN MONETARY

6    SANCTIONS AND POTENTIALLY WHETHER CONTEMPT PROCEEDINGS SHOULD

7    BE INITIATED AT THAT POINT.

8         BUT THE BRIEFING SCHEDULE WOULD ALLOW US TO SHARE

9    WITH THE COURT EVERYTHING THAT WE LEARNED THROUGH DISCOVERY

10   AND THEN WHAT WE THINK POTENTIAL REMEDIES MIGHT BE SO YOUR

11   HONOR COULD CONSIDER THOSE AND TAKE THE APPROPRIATE STEPS.

12   THANK YOU, YOUR HONOR.

13        THE COURT:  THANK YOU, MS. MEHTA.  NOW, COUNSEL FOR

14   PLAINTIFF, MR. GODKIN, YOU MAY BEGIN YOUR ARGUMENTS.  BUT

15   BEFORE YOU PRESENT YOUR ARGUMENT, MR. GODKIN, YOU SUBMITTED A

16   THREE-PAGE LETTER THAT'S DATED NOVEMBER 29TH, 2016, THAT'S

17   THREE PAGES IN LENGTH.  AND I HAVE A FEW QUESTIONS WITH REGARD

18   TO THAT LETTER.  ALL RIGHT.

19        MR. GODKIN:  YES, YOUR HONOR.

20        THE COURT:  ALL RIGHT.  FIRST, WHY WAS THE DROPBOX

21   FOLDER CREATED?

22        MR. GODKIN:  YOUR HONOR, IT IS MY UNDERSTANDING THAT

23   SIX4THREE MAINTAINS ITS CORPORATE RECORDS ON THIS DROPBOX

24   ACCOUNT.  THE -- WE HAVE NOT ACCESSED THE DROPBOX ACCOUNT.

25        THE COURT:  WHO ARE "WE"?

26        MR. GODKIN:  ME, MY LAW FIRM.  I BELIEVE MR. GROSS

1    HAS ACCESSED IT ONE TIME FOR THE PURPOSE OF TRYING TO ASSESS

2    WHAT HAD HAPPENED HERE.  THE DROPBOX FOLDER IN QUESTION, IT IS

3    MY UNDERSTANDING THAT -- AND THIS IS WHAT WE LEARNED FOR THE

4    FIRST TIME LAST WEEK ON MONDAY OR TUESDAY THAT MR. KRAMER HAD

5    ACCESS TO IT.

6            YOUR HONOR, I WOULD LIKE TO BE -- I COMPLETELY AGREE

7    WITH YOUR HONOR THAT THIS IS AN EXTRAORDINARILY SERIOUS

8    MATTER.  AND TO THE EXTENT THAT YOUR ORDER STATED THAT COUNSEL

9    INSTRUCTED MR. KRAMER TO DESTROY EVIDENCE, I WANT TO BE CLEAR

10   THAT IT WAS NOT OUR INTENT THAT HE DESTROY ANY EVIDENCE.  AND,

11   IN FACT, IT'S OUR BELIEF THAT NO EVIDENCE WAS DESTROYED.

12           OUR REACTIONS TO THIS SITUATION BEGINNING LAST WEEK

13   AS SOON AS WE LEARNED OF IT WAS, FIRST, WHEN WE LEARNED THAT

14   MR. KRAMER WAS IN LONDON ON MONDAY, I BELIEVE, THE 19TH AND WE

15   LEARNED THAT INFORMATION WAS AVAILABLE TO HIM THAT WAS NOT

16   SUPPOSED TO BE AVAILABLE TO HIM, WE IMMEDIATELY TOOK STEPS TO

17   ATTEMPT TO PREVENT THE INAPPROPRIATE DISCLOSURE OF ANY OF THAT

18   INFORMATION TO PARLIAMENT OR ANYONE ELSE.

19           MS. MEHTA:  YOUR HONOR, I REALLY APOLOGIZE FOR

20   INTERRUPTING.  BUT AT THIS POINT MR. GODKIN IS TESTIFYING AS A

21   PERCIPIENT WITNESS AS OPPOSED TO PRESENTING ARGUMENT.  AND HE

22   SHOULD BE SWORN IN AND SUBJECT TO CROSS-EXAMINATION.

23           THE COURT:  I THINK SO TOO.

24           MR. GODKIN:  YOUR HONOR, I WAS TRYING TO ANSWER YOUR

25   QUESTION.

26           THE COURT:  WELL, AGAIN, THERE ARE A COUPLE OF

1    PROCEDURAL ISSUES THAT WE HAVE.  FIRST OF ALL, I HAVE SOME

2    QUESTIONS THAT I WANT TO HAVE ANSWERED REGARDING THE DROPBOX

3    BECAUSE SHOULDN'T THE FOLDER DROPBOX FOLDER REALLY BE ON

4    COUNSEL'S DROPBOX?  SHOULDN'T COUNSEL HAVE THEIR OWN DROPBOX

5    AND NOT THE PRINCIPAL PLAINTIFF IN THE CASE?

6              MR. GODKIN:  YES, I AGREE WITH YOU, YOUR HONOR.

7              THE COURT:  WHY WASN'T THAT DONE?

8              MR. GODKIN:  IT HAS BEEN DONE, YOUR HONOR.

9              THE COURT:  FIRST OF ALL, YOU HAVE DOCUMENTS THAT

10   WERE FOR ATTORNEY'S EYES ONLY PURSUANT TO THE CONFIDENTIALITY

11   AGREEMENT, THE PROTECTIVE ORDER THAT WAS ISSUED BACK IN 2016,

12   CORRECT?

13             MR. GODKIN:  YES, YOUR HONOR.

14             THE COURT:  AND BY DESIGN, THE PRINCIPAL WOULD NOT

15   HAVE ACCESS TO THOSE DOCUMENTS.

16             MR. GODKIN:  AND, YOUR HONOR, IT'S MY UNDERSTANDING

17   THAT HE DID NOT HAVE ACCESS TO THE FOLDERS ON WHICH THOSE

18   HIGHLY CONFIDENTIAL DOCUMENTS WERE PLACED.

19             THE COURT:  WELL, I'M TRYING TO UNDERSTAND HOW

20   FUNDAMENTALLY IF THAT PROTECTIVE ORDER LIMITS THE

21   ACCESSIBILITY TO THOSE DOCUMENTS TO COUNSEL ESSENTIALLY FOR

22   COUNSEL'S EYES ONLY.  AND THAT MR. KRAMER WOULD ONLY BE PRIVY

23   TO THOSE DOCUMENTS IN THE EVENT THAT THERE WAS SOMETHING

24   DURING THE COURSE OF THE LAWSUIT THAT WOULD TRIGGER HIS

25   PARTICIPATION OR SOMEHOW REQUIRE HIS REVIEW OF THOSE

26   DOCUMENTS; IS THAT CORRECT?

1          MR. GODKIN:  THAT'S CORRECT, YOUR HONOR.  BUT IN

2     ADDITION TO COUNSEL, I BELIEVE THE PROTECTIVE ORDER ALLOWS

3     COUNSEL TO ENGAGE CONSULTANTS WHO AGREE TO BE BOUND BY THE

4     TERMS.

5          THE COURT:  THAT'S TRUE BUT THAT'S NOT RELEVANT

6     HERE.  I READ IT.  I AM FULLY AWARE AND WELL VERSED IN WHO IS

7     ALL INVOLVED IN THE PROTECTIVE ORDER.  THAT IS TO SAY I

8     UNDERSTAND THAT THERE ARE OTHER INDIVIDUALS IF THEY NEED TO BE

9     CONSULTED THAT WOULD BE BOUND BY THE PROTECTIVE ORDER.

10          SO, COUNSEL, AT ISSUE YOU DIRECTED YOUR LEGAL STAFF

11     TO MOVE ANY FOLDERS THAT CONTAINED HIGHLY CONFIDENTIAL

12     DOCUMENTS FROM SIX4THREE'S DROPBOX ACCOUNT TO MR. GROSS'S

13     FIRM'S CLOUD FILE SYSTEM, CORRECT?

14          MR. GODKIN:  YOUR HONOR, AS SOON AS WE LEARNED THAT

15     DOCUMENTS HAD BEEN PLACED ON SIX4THREE'S DROPBOX WHICH WAS --

16     THIS WAS LAST WEEK, WE WERE NOT AWARE THAT THESE -- THESE

17     UNREDACTED BRIEFINGS AND DECLARATIONS AND EXHIBITS AND THE

18     LIKE HAD BEEN MOVED ANYWHERE.  AS SOON AS WE LEARNED THAT LAST

19     WEEK, WE TOOK STEPS TO MOVE EVERYTHING ONTO MR. GROSS'S BOX

20     SYSTEM WHICH IS AS I UNDERSTAND IT A SIMILAR TYPE OF SYSTEM TO

21     WHICH ONLY MR. GROSS HAS ACCESS.

22          THE COURT:  MR. SCARAMELLINO HAS BEEN INVOLVED IN

23     THIS CASE.  IS HE PART OF SIX4THREE'S LEGAL STAFF?

24          MR. GODKIN:  HE'S PART OF MY LEGAL TEAM, YOUR HONOR.

25     SIX4THREE DOES NOT HAVE A LEGAL STAFF, BUT HE HAS BEEN PART OF

26     THE LEGAL TEAM.  IN FACT, THAT ISSUE WAS RAISED IN FRONT OF

1   JUDGE WEINER.  AND SHE APPROVED MR. SCARAMELLINO BEING PART OF

2   THE TEAM GOING FORWARD.

3           THE COURT:  SO MR. SCARAMELLINO ACCESSED AND EDITED

4   FILES IN SIX4THREE'S DROPBOX?  IS THAT WHAT YOU SAID IN YOUR

5   LETTER?

6           MR. GODKIN:  I BELIEVE THAT'S THE CASE, YOUR HONOR.

7   WHAT WE DIDN'T LEARN UNTIL LAST WEEK WAS THAT MR. KRAMER HAD

8   ACCESS TO THOSE FILES.  AND THAT IS WHY WE IMMEDIATELY TOOK

9   STEPS TO TRY TO ELIMINATE MR. KRAMER'S ACCESS TO THINGS HE

10  WASN'T ENTITLED TO HAVE ACCESS TO.  AGAIN, ALL THIS BEFORE HE

11  TURNED ANYTHING OVER TO PARLIAMENT.  I WOULD SAY, YOUR HONOR,

12  ALSO I NEED TO SAY THAT THIS WHOLE SITUATION HAS CREATED

13  SERIOUS ISSUES FOR US UNDER THE RULES OF PROFESSIONAL

14  RESPONSIBILITY AS TO WHETHER WE CAN CONTINUE TO ACT AS COUNSEL

15  FOR SIX4THREE IN THIS MATTER.

16          AND IF WE HAVE CONCLUDED THAT WE CANNOT, WE ARE

17  STILL COUNSEL OF RECORD OF COURSE UNTIL SIX4THREE SHOULD

18  ENGAGE REPLACEMENT COUNSEL.  WE HAVE INFORMED THEM OF THAT

19  FACT AND ARE AWAITING INSTRUCTIONS.

20          MR. GROSS:  YOUR HONOR, TO BE CLEAR, THAT'S MY FIRM

21  AS WELL.

22          MR. GODKIN:  THAT'S BIRNBAUM & GODKIN AND GROSS &

23  KLEIN.

24          THE COURT:  MR. GODKIN, YOU REPRESENTED THAT THE

25  FILE TRANSFER TO MR. GROSS'S ACCOUNT OCCURRED FROM

26  NOVEMBER 20TH THROUGH NOVEMBER 27TH; IS THAT CORRECT?

```
 1              MR. GODKIN:  THAT'S MY UNDERSTANDING, YOUR HONOR.

 2              THE COURT:  DURING THIS TIME THAT IS DURING THIS

 3   TRANSFER PERIOD, WHAT ACTIONS DID YOU TAKE TO MAKE THE DATA

 4   UNAVAILABLE TO SIX4THREE'S DROPBOX, UNAVAILABLE TO MR. KRAMER

 5   AS THE ADMINISTRATOR?

 6              MR. GODKIN:  MAY I ASK MR. GROSS 'CAUSE HE ACTUALLY

 7   HANDLED THAT TO RESPOND TO THAT QUESTION?

 8              MR. GROSS:  I'M HAPPY TO RESPOND, YOUR HONOR.

 9   THE -- SO I GOT -- WHILE THIS WAS OCCURRING, ONE OF THE THINGS

10   THAT I DID WAS GO TO MR. KRAMER AND GET THE PASSWORD TO THAT

11   DROPBOX AND LOOK TO SEE IN THAT DROPBOX WHAT ITS SITUATION

12   WAS.  WHAT IT APPEARS TO BE I DID NOT WANT TO MODIFY ANYTHING

13   IN THAT DROPBOX THAT APPEARS TO BE THAT A NUMBER OF FILES HAD

14   BEEN MARKED AND FOLDERS HAD BEEN MARKED FOR DELETION.  NOW,

15   I -- I DIDN'T WANT TO DO ANY CHANGES WHATSOEVER.

16              BUT -- SO I GAVE INSTRUCTIONS.  WITHOUT WAIVING

17   PRIVILEGE, THERE'S INSTRUCTIONS WERE MADE TO RESTRICT ACCESS.

18   MY DESIRE WAS TO TAKE CONTROL OF THE DROPBOX ACCOUNT, BUT I

19   DID NOT WANT TO ROUGH FOUL OF THE COURT'S ORDER CONCERNING

20   MODIFICATIONS.  THE DOCUMENTS IN QUESTION DURING THE TRANSFER

21   WERE IN POSSESSION OF MR. SCARAMELLINO.  THEY WERE ON HIS

22   LOCAL MACHINE.  AND HE WAS IN CHARGE OF DOING THE UPLOADING TO

23   MY SYSTEM.

24              THE COURT:  OKAY.

25              MR. GROSS:  AND IN TERMS OF HIS -- MR. KRAMER COULD

26   NOT GET ACCESS TO MY SYSTEM BECAUSE HE IS NOT INVITED TO THAT,
```

1   AND YOU HAVE TO BE INVITED TO THAT LOCATION TO ACCESS IT.

2           THE COURT:  MR. GROSS, YOU SAID IN YOUR DECLARATION

3   EXECUTED ON NOVEMBER 26, 2018, AT PARAGRAPH 11 THAT YOU TOOK

4   FURTHER ACTIONS TO ENSURE THAT QUOTE "THE AFOREMENTIONED

5   FOLDER WAS IN FACT" -- "WAS DELETED FROM SIX4THREE'S DROPBOX"

6   CLOSE QUOTE WHEN MR. GODKIN STATES THAT THE DATA TRANSFER WAS

7   NOT COMPLETED UNTIL NOVEMBER 27TH SET FORTH IN THE FOOTNOTE

8   NUMBER 3 OF PAGE 2 OF MR. GODKIN'S LETTER DATED NOVEMBER 29TH,

9   2018.  SO IS THAT CORRECT?

10          MR. GROSS:  YEAH, I WAS GOING TO CLARIFY.  I

11  APOLOGIZE FOR TALKING OVER YOU.

12          THE COURT:  WHAT ACTIONS DID YOU TAKE TO DELETE THE

13  LOCAL FILES FROM MR. KRAMER'S LAPTOP?

14          MR. GROSS:  I DID NOT PERSONALLY TAKE THOSE ACTIONS.

15  BUT TO BE CLEAR, THE -- THERE WERE DOCUMENTS THAT WERE ON THE

16  DROPBOX THAT WE LEARNED PRIOR TO HIS DISCLOSURE TO PARLIAMENT.

17  SO PRIOR TO HIS DISCLOSURE TO PARLIAMENT, WE LEARNED THAT

18  THERE WERE DOCUMENTS ON AN ACCOUNT THAT HE COULD HAVE ACCESS

19  TO.  SO OUR IMMEDIATE IMPULSE AND BOOM BOOM WAS TO BRING HIM

20  INTO COMPLIANCE WITH THE COURT'S PROTECTIVE ORDER.  SO THE

21  INSTRUCTIONS WERE TO -- THE EFFORTS WERE TO GET THOSE

22  DOCUMENTS ONTO A LOCAL MACHINE BECAUSE THOSE TWO PROGRAMS DO

23  NOT TALK TO EACH OTHER.

24          SO GET THOSE -- WHAT I MEAN BY THAT, YOUR HONOR, IS

25  THERE'S NOT AN EASY AUTOMATED WAY TO SAY "FLIP SWITCH.

26  TRANSFER FROM ONE SYSTEM TO THE OTHER."  SO THEY NEED TO GET

1   DOWNLOADED ONTO MR. SCARAMELLINO'S MACHINE AND THEN ONTO MY

2   SYSTEM.

3           THE COURT:  I HATE TO BE REDUNDANT IN MY QUESTIONS.

4   I WANT TO RETURN TO THE FUNDAMENTAL QUESTION THAT I ASKED AT

5   THE BEGINNING OF THESE QUESTIONS TO THE PLAINTIFF'S COUNSEL

6   WHICH IS IF WE HAVE A PROTECTIVE ORDER THAT'S BEEN IN PLACE

7   FOR TWO YEARS AND IF THOSE DOCUMENTS ARE FOR THE ATTORNEY'S

8   EYES ONLY, HOW DID A PARTY THAT WAS NOT SUPPOSED TO BE PRIVY

9   TO THOSE DOCUMENTS COME INTO POSSESSION OF THOSE DOCUMENTS

10  THAT PARTY BEING THE PLAINTIFF'S PRINCIPAL MR. KRAMER?

11          MR. GROSS:  I DON'T HAVE PERSONAL KNOWLEDGE ABOUT

12  THAT, YOUR HONOR.  I -- I WAS INVOLVED --

13          THE COURT:  HOW CAN YOU NOT HAVE PERSONAL KNOWLEDGE

14  OF THAT OR HOW CAN THE FIRM NOT HAVE PERSONAL KNOWLEDGE WHEN

15  YOU'RE CHARGED WITH THE RESPONSIBILITY OF PROTECTING THOSE

16  DOCUMENTS?

17          MR. GROSS:  I UNDERSTAND, YOUR HONOR.  I CAME ON AS

18  LOCAL COUNSEL IN APRIL OR MAY OF THIS YEAR, AND SO I HAVE

19  LIMITED KNOWLEDGE.  AND I DON'T MEAN -- I'M JUST TRYING TO

20  MAKE CLEAR THE ONLY -- THE FIRST TIME I EVER HEARD OF THAT

21  ACCESS ISSUE WAS NOVEMBER 20TH.  AND MY IMMEDIATE AND SOLE

22  GOAL WAS TO CURE THAT.

23          THE COURT:  ALL RIGHT.  MR. GODKIN, I HAVE THE SAME

24  QUESTION FOR YOU.  WE WERE TALKING ABOUT THAT EARLIER.  YOU

25  NEVER REALLY ANSWERED THE QUESTION.  SO SPECIFICALLY IF YOUR

26  FIRM IS REPRESENTING SIX4THREE AND YOUR FIRM AND OTHERS SET

1    FORTH IN THAT PROTECTIVE ORDER ARE CHARGED WITH RESPONSIBILITY

2    OF PROTECTING THOSE CONFIDENTIAL DOCUMENTS AND THERE ARE ONLY

3    LIMITED CIRCUMSTANCES WHEREBY MR. KRAMER WOULD COME INTO

4    POSSESSION OF THOSE DOCUMENTS OR ALTERNATIVELY VIEW THOSE

5    DOCUMENTS, HOW DID HE BECOME IN POSSESSION OF THOSE DOCUMENTS?

6            MR. GODKIN:  YOUR HONOR, WHAT I LEARNED LAST WEEK

7    FOR THE FIRST TIME WAS THAT THE DOCUMENTS WOULD HAVE BEEN

8    PLACED ON SIX4THREE'S DROPBOX SYSTEM.

9            THE COURT: HOW?

10           MR. GODKIN:  I DON'T KNOW.

11           THE COURT:  WHY?

12           MR. GODKIN:  I DON'T KNOW THAT EITHER.  BUT THAT IS

13   PRECISELY THE PROBLEM HERE THAT HAS CAUSED US TO HAVE A

14   SERIOUS ISSUE.  YOU'RE ABSOLUTELY RIGHT THAT THE -- THE

15   DOCUMENTS THAT WERE PRODUCED BY FACEBOOK IN MY UNDERSTANDING

16   HAVE ALWAYS BEEN COMPLETELY SECURE FROM MR. KRAMER.  THE

17   MISTAKE THAT WAS MADE HERE WAS THAT PLEADINGS THAT REFERENCED

18   THOSE DOCUMENTS HAD BEEN PLACED WITHOUT MY FIRM'S KNOWLEDGE

19   ONTO SIX4THREE'S DROPBOX SYSTEM.  THAT IS I BELIEVE WHERE THE

20   MISTAKE WAS MADE.  AND MY FIRM OBVIOUSLY HAS TO TAKE

21   RESPONSIBILITY FOR FAILING TO ADEQUATELY PROTECT THAT FROM

22   HAPPENING AND WE DO.

23           THAT I BELIEVE IS WHAT HAPPENED.  WE DIDN'T LEARN OF

24   IT UNTIL LAST WEEK.  AND AS SOON AS WE LEARNED OF IT, WE

25   IMMEDIATELY TRIED TO TAKE STEPS TO FIX IT.  BUT I DO WANT TO

26   STRESS, YOUR HONOR, THAT WE WERE -- WE WERE IN NO WAY

```
1    INTENDING TO DESTROY EVIDENCE.  WHAT WE WERE INTENDING TO DO

2    IS CORRECT A PROBLEM THAT WE DISCOVERED THAT WAS SERIOUS.

3              THE COURT:  WOULDN'T IT BE INTERESTING TO FIND OUT

4    WHAT EXACTLY WAS TRANSMITTED TO THE DCMS FROM MR. KRAMER'S

5    COMPUTER OR FROM THE DROPBOX SUCH THAT IT COULD BE

6    RECONSTRUCTED FOR YOUR PURPOSES?

7              MR. GODKIN:  YES, YOUR HONOR.  AND I THINK TO THE

8    EXTENT THAT CAN BE DETERMINED IF MR. KRAMER CAN'T SHED LIGHT

9    ON THAT, PERHAPS HIS LAPTOP CAN AND PERHAPS THE DROPBOX FOLDER

10   CAN.  SO MY SUGGESTION IS THAT IN ADDITION TO THE LAPTOP, THAT

11   STEPS BE TAKEN IMMEDIATELY TO MAKE SURE THAT NO ONE HAS ACCESS

12   TO THE DROPBOX SYSTEM FOLDER ANY LONGER.  THE PASSWORD NEEDS

13   TO BE CHANGED, I BELIEVE.

14             THE COURT:  WHY WAS MR. SCARAMELLINO UPLOADING

15   DOCUMENTS ON SIX4THREE'S DROPBOX?  HE'S PART OF YOUR LEGAL

16   STAFF, CORRECT?

17             MR. GODKIN:  HE'S PART OF THE LEGAL TEAM AND I DON'T

18   KNOW THE ANSWER.  HE SHOULD NOT HAVE DONE THAT.  HE HAD COPIES

19   OF DOCUMENTS THAT HE WAS WORKING WITH.  IT WAS NOT MY

20   UNDERSTANDING THAT HE WAS PUTTING THEM ON A SIX4THREE SYSTEM

21   THAT MR. KRAMER HAD ACCESS TO.

22             THE COURT:  WAS HE AWARE OF THE PROTECTIVE ORDER?

23             MR. GODKIN:  ABSOLUTELY, YOUR HONOR.

24             THE COURT:  I REFER YOU TO PAGE 2, FOOTNOTE 4 OF

25   YOUR LETTER DATED NOVEMBER 29, 2018.  WHEN DID YOU LEARN

26   DROPBOX'S SYNCHING CAPABILITY?
```

1          MR. GODKIN:  JUST LAST WEEK, YOUR HONOR.  AND THAT'S

2    WHEN WE LEARNED THAT MR. KRAMER HAD A LOCAL COPY OF DOCUMENTS

3    ON HIS LAPTOP.  AND THAT'S WHY WE WERE CONCERNED THAT IF HE

4    STILL HAD A LOCAL COPY OF DOCUMENTS ON HIS LAPTOP THAT HE WAS

5    NOT ENTITLED TO HAVE ACCESS TO, THAT HE SHOULD NO LONGER HAVE

6    ACCESS TO THEM.

7          IT'S OUR UNDERSTANDING THAT IT'S A LOCAL COPY

8    MEANING THAT THE -- THERE IS AN EXACT COPY OF THOSE DOCUMENTS

9    THAT IS NOW HOUSED ON MR. GROSS'S BOX SYSTEM.  AND ALL WE DID

10   WAS WE ASKED MR. KRAMER TO DELETE THE LOCAL COPY WHICH WAS NOT

11   A DELETION OF EVIDENCE BECAUSE THE FILES THAT WERE THERE ARE

12   STILL AVAILABLE.  TO THE EXTENT IT'S POSSIBLE AND I DON'T KNOW

13   THE ANSWER TO THIS, IT'S A TECHNICAL MATTER.  BUT TO THE

14   EXTENT IT'S POSSIBLE TO DETERMINE WHAT HE COPIED FROM HIS

15   LAPTOP ONTO A THUMB-DRIVE, I BELIEVE THAT THOSE -- THAT

16   POSSIBLY CAN BE DETERMINED FROM SYSTEM DATA IN THE COMPUTER

17   ITSELF AS OPPOSED TO WHAT'S ON THE LAPTOP.

18          AND THEN THE OTHER THING WE COULD DO, YOUR HONOR, IS

19   WE COULD -- WE COULD ATTEMPT TO GET BACK FROM OR AT LEAST

20   COPIES FROM DCMS.  AS YOU KNOW, WE ASKED FOR THEM TO BE

21   RETURNED BUT THEY REFUSED.

22          THE COURT:  SO, AGAIN, HOW DID YOU LEARN ABOUT THIS

23   CAPABILITY?

24          MR. GODKIN:  WHEN WE WERE INVESTIGATING LAST WEEK

25   WHEN WE LEARNED OF THIS PROBLEM.

26          MR. GROSS:  YOUR HONOR, IF I CAN CLARIFY SLIGHTLY?

```
 1              THE COURT:  YES.
 2              MR. GROSS:  I KNOW THAT DROPBOX HAS THAT CAPABILITY.
 3   THE QUESTION WHAT WE DIDN'T KNOW AN ENTERPRISE ACCOUNT IS
 4   WHAT -- WE DID NOT UNDERSTAND WAS THAT MR. KRAMER HAD THE
 5   SETTING SUCH THAT IT WAS BEING POPULATED ON HIS COMPUTER.  SO
 6   TO BE CLEAR SO THERE'S NO MISUNDERSTANDING, I UNDERSTAND THAT
 7   IT HAS A SYNCHING CAPABILITY.  I DID NOT KNOW THAT THAT
 8   SYNCHING CAPABILITY HAD BEEN ACTIVATED FOR MR. KRAMER AS TO
 9   THE DOCUMENTS IN QUESTION.  AND THAT'S WHAT WE LEARNED ON THE
10   23RD WHEN WE LEARNED THAT THE DISCLOSURE HAD OCCURRED.
11              THE COURT:  WHO DECIDED MR. KRAMER HAD THE AUTOMATIC
12   SYNCHING CAPABILITY ENABLED?
13              MR. GROSS:  I DON'T KNOW.
14              THE COURT:  AND WHO BESIDES --
15              MR. GODKIN:  I'M SORRY.  I DON'T KNOW EITHER, YOUR
16   HONOR.
17              THE COURT:  THANK YOU.  SO WHO BESIDES MR. KRAMER
18   AND MR. SCARAMELLINO HAD ACCESS TO THE DROPBOX?
19              MR. GODKIN:  I DON'T KNOW.  I DON'T BELIEVE ANYBODY,
20   BUT I DON'T KNOW.
21              THE COURT:  ON THE THIRD FULL PARAGRAPH OF YOUR
22   LETTER DATED NOVEMBER 29TH, YOU STATE AND I QUOTE, "WE ALSO
23   UNDERSTOOD THAT A LOCAL COPY OF ALL THE FILES WAS LOCATED ON
24   MR. SCARAMELLINO'S COMPUTER WHICH WAS IDENTICAL TO THE FILES
25   THAT HAD BEEN ON MR. KRAMER'S COMPUTER."
26              WHAT FORMS THE BASIS FOR THAT DECLARATIVE STATEMENT
```

1    IN YOUR LETTER?

2            MR. GROSS:  MR. SCARAMELLINO WAS INSTRUCTED TO

3    EFFECT THE TRANSFER OF FILES FROM THE DROPBOX ACCOUNT, SO OUR

4    KNOWLEDGE IS BASED ON CONVERSATIONS WITH MR. SCARAMELLINO.  SO

5    WE UNDERSTOOD THAT THE METHOD THAT HE WAS TAKING WAS, AS I HAD

6    MENTIONED BEFORE, TO PULL THE DOCUMENTS FROM THE DROPBOX

7    ACCOUNT TO HIS MACHINE.  AND THEN FROM HIS MACHINE UP TO THE

8    LOCATION ON MY SYSTEM, YOUR HONOR.

9            THE COURT:  OKAY.  ON PAGE 3 OF YOUR LETTER,

10   MR. GODKIN.  THE FIRST FULL PARAGRAPH YOU STATE, "WE DO NOT

11   HAVE THE TECHNICAL EXPERTISE TO STATE FOR SURE.  HOWEVER, IT

12   DOES NOT APPEAR THAT MR. KRAMER'S DELETION OF LOCAL COPIES OF

13   THE DOCUMENTS FROM HIS COMPUTER WOULD AFFECT ANY ELECTRONIC

14   EVIDENCE OF HIS PROVISION OF DOCUMENTS, IF ANY EXISTED.

15   PERIOD.  IT APPEARS THAT THIS INFORMATION IF IT EXISTED WOULD

16   BE CONTAINED IN THE SYSTEM LOG OF HIS LAPTOP."  PERIOD AND

17   CLOSE QUOTE.

18           WHAT FORMS THE BASIS OF THAT DECLARATIVE STATEMENT,

19   SIR?

20           MR. GODKIN:  THAT IS AGAIN FOR MR. GROSS.

21           MR. GROSS:  I WILL SPEAK TO THAT, YOUR HONOR.

22           THE COURT:  THANK YOU.

23           MR. GROSS:  WHEN THIS SITUATION IN PREPARATION FOR

24   THIS SITUATION, I WAS TRYING TO FIGURE OUT.  AND MY GOAL HERE

25   IS TO TRY TO GET EVERY -- MAKE THESE THINGS AS CLEAR AS

26   POSSIBLE, BUT I AM NOT A TECHNICAL EXPERT.  BUT MY RESEARCH

1    INDICATES THAT WHEN WHAT YOU'RE TRYING TO FIGURE OUT IS

2    WHETHER A DOCUMENT WAS TRANSFERRED FROM AN INTERNAL LOCATION A

3    LOCAL LOCATION ON A PC TO A THUMB-DRIVE, THAT THAT METADATA,

4    IF YOU WILL, THAT IS IF IT EXISTS WOULD EXIST IN THE SYSTEM'S

5    LOG.  THAT IT DOESN'T ACTUALLY GET ATTACHED TO ANY INDIVIDUAL

6    FILE BECAUSE IT IS AN OPERATION OF THE SYSTEM THAT'S DOING

7    THAT.  SO THAT'S MY UNDERSTANDING IS THAT IF YOU ARE --

8            IN ORDER TO DO IT IN AN ELECTRONIC FORENSIC WAY TO

9    DETERMINE WHERE WERE -- WERE DOCUMENTS MOVED FROM A LOCATION

10   ON A COMPUTER TO A THUMB-DRIVE?  THAT WOULD BE SYSTEMS

11   INFORMATION.  IT WOULDN'T BE INFORMATION THAT IS ASSOCIATED

12   WITH ANY PARTICULAR FILE.  SO IF THAT FILE NO LONGER WAS

13   THERE, THAT WOULDN'T AFFECT THAT EVIDENCE BECAUSE THAT FILE

14   SIMPLY DOESN'T -- THAT IS NOT RECORDED ON THE METADATA OF THAT

15   FILE.  NOW TO BE CLEAR, YOUR HONOR, I'M NOT A FORENSIC EXPERT.

16   SO THIS IS HOW I UNDERSTAND THINGS.

17           THE COURT:  MR. GODKIN, YOUR LETTER ON PAGE 3 YOU

18   STATE THAT YOU RECENTLY REVIEWED THE CONTENTS OF THE SIX4THREE

19   DROPBOX ACCOUNT.  WHEN DID YOU REVIEW THE CONTENTS OF THIS

20   DROPBOX ACCOUNT?

21           MR. GODKIN:  I DID NOT REVIEW IT, YOUR HONOR.  I

22   BELIEVE MR. GROSS DID.

23           MR. GROSS:  THIS LETTER WAS -- IT WAS SUPPOSED TO BE

24   ALL OF US.

25           THE COURT:  A COLLABORATIVE EFFORT?

26           MR. GODKIN:  IT WAS A COLLABORATIVE EFFORT, YEAH.

```
1    WE WANTED TO GET YOUR HONOR THE INFORMATION WE HAD IN ADVANCE
2    OF THE HEARING.
3              THE COURT:  ALL RIGHT.
4              MR. GROSS:  WE --
5              THE COURT:  MR. GROSS, CAN YOU ANSWER THE QUESTION?
6              MR. GROSS:  ABSOLUTELY.  YES.  SO THAT WOULD HAVE
7    BEEN -- I BELIEVE IT WAS TWO DAYS AGO.  I ASKED -- I RECEIVED
8    THE PASSWORD AND LOGGED ON TO THE MACHINE -- I'M SORRY -- TO
9    THE DROPBOX ACCOUNT TO DETERMINE WHETHER DOCUMENTS STILL
10   EXISTED THERE OR IN FACT HAD BEEN COMPLETELY DELETED.
11             THE COURT:  OKAY.  ON PAGE 3 OF THIS LETTER, YOU
12   STATE QUOTE, "IT APPEARS THAT THE DOCUMENTS IN QUESTION HAVE
13   NOT IN FACT BEEN DELETED.  PERIOD.  THERE ARE A NUMBER OF
14   FOLDERS THAT HAVE BEEN MARKED FOR DELETION, BUT THEY MAY --
15   BUT THEY HAVE NOT ACTUALLY BEEN DELETED."  PERIOD.  CLOSE
16   QUOTE.  WHAT DOES THIS MEAN?
17             MR. GROSS:  YEAH.  I'LL EXPLAIN THAT, YOUR HONOR.
18   ON THESE SYSTEMS, IT'S SIMILAR.  MAYBE ONE WAY TO LOOK AT IT
19   IS LIKE A TRASH CAN.  SO WHEN YOU -- AND I'M SPEAKING HERE AS
20   A GENERAL MATTER AS SOMEONE WHOSE USED THESE SYSTEMS IN THE
21   PAST.  WHEN YOU USE THESE SYSTEMS AND YOU DELETE SOMETHING, IT
22   MARKS IT FOR DELETION.  AND DEPENDING ON THE SETTINGS OF THE
23   ACCOUNT WHICH IS ONE OF THE -- WELL, DEPENDING ON THE SETTINGS
24   OF THE ACCOUNT, THAT THOSE DOCUMENTS WILL EVENTUALLY BE
25   DELETED PERMANENTLY OR NOT.  SO THAT'S ONE OF THE REASONS WHY
26   I THINK SOMETHING THAT WE ARE -- WE VERY MUCH WANT TO RESOLVE
```

1    AS SOON AS POSSIBLE IS GETTING RID OF SOMEHOW IN A WAY THAT

2    THE COURT IS COMFORTABLE WITH THAT MARKING OF DELETION.

3                SO WHEN I WENT ON TO THE LOCATION WHICH IT'S A PLACE

4    ON THE SYSTEM THAT SHOWS YOU WHAT FILES HAVE BEEN DELETED, IT

5    SHOWS IN FOLDERS A WHOLE NUMBER OF FOLDERS THAT ARE DELETED.

6    AND I --

7                THE COURT:  I'M SORRY FOR INTERRUPTING.

8                MR. GROSS:  NO, I APOLOGIZE.

9                THE COURT:  ARE THERE SETTINGS THAT HAVE TIMING

10   INVOLVED 60 DAYS, 120 DAYS, 6 MONTHS, A YEAR?

11               MR. GROSS:  SO BECAUSE I WAS NOT THE ADMINISTRATOR

12   OF THIS ACCOUNT, I DO NOT KNOW THAT.  I'VE MADE INQUIRIES AND

13   I DON'T HAVE THAT INFORMATION YET, SO THIS IS SOMETHING

14   THAT -- AND I DID NOT WANT TO MYSELF GIVEN THE COURT'S ORDER

15   DO ANYTHING THAT WOULD MODIFY ANY PORTION OF THIS ACCOUNT.

16               THE COURT:  WELL, SOMETHING SHOULD BE DONE TO

17   PRESERVE EVERYTHING FOR THE PURPOSES OF THIS TRIAL OR THIS

18   HEARING.  THE DECLARATION THAT YOU FILED SAID THAT THE

19   DOCUMENTS WERE DELETED.  SO WHICH IS IT, COUNSEL?  EITHER THEY

20   WERE DELETED OR THEY ARE SET FOR DELETION?

21               MR. GROSS:  UNDERSTOOD, YOUR HONOR.  SO -- AND I

22   THINK IT'S IMPORTANT TO BACK UP.  WHAT -- WHAT WE -- AGAIN,

23   OUR INTENTION ON THE 23RD WHEN WE HAD LEARNED THAT MR. KRAMER

24   HAD IN FACT PROVIDED THESE DOCUMENTS AND HE HAD ACCESS TO

25   THESE DOCUMENTS, OUR CHIEF -- SO OUR PREVIOUS INTENTION

26   REMAINED THE SAME WHICH IS WE WANTED TO GET HIM IN COMPLIANCE

1  WITH THE PROTECTIVE ORDER.

2          AND IT WAS -- WE FOUND OUT THAT HE NOT ONLY REMAINED

3  OUT OF COMPLIANCE WITH THAT PROTECTIVE ORDER.  BUT HAD IN FACT

4  RELEASED DOCUMENTS IN VIOLATION OF OTHER ORDERS BY THE COURT.

5  SO THE INSTRUCTIONS WERE DELETE EVERYTHING THAT YOU HAVE

6  ACCESS TO.  NOW, I -- I FEEL LIKE I WAS IN A SOMEWHAT

7  IMPOSSIBLE SITUATION.  I'M NOT ASKING FOR ANYBODY'S SYMPATHY.

8  BUT ON THE ONE HAND I'VE GOT A CONTINUING VIOLATION OF AN

9  ORDER -- OF ORDERS THAT I WANT TO TAKE CARE OF AND RESOLVE.

10  AND THEN ON THE OTHER HAND, WE ARE IN THIS SITUATION.

11          MY PRIMARY THOUGHT IN THIS REGARD WAS I KNOW THERE'S

12  A VIOLATION AND WE NEED TO STOP IT.  SO THAT SAID, TO YOUR

13  QUESTION.  YOUR QUESTION WAS WHICH ONE IS IT?  I WAS NOT

14  INVOLVED IN THE ACTUATION OF THE DELETION.  BUT WHAT APPEARS

15  TO HAVE OCCURRED IS THEY WERE DELETED, BUT THEY WEREN'T

16  PERMANENTLY DELETED WHICH IS -- SEEMS TO BE A VERY GOOD THING.

17  SO THAT MARKING FOR DELETION THAT I REFERRED TO, THAT APPEARS

18  TO BE WHAT THE RESULT OF THAT WAS.

19          THE COURT:  ALL RIGHT.  THOSE WERE THE SEVERAL

20  QUESTIONS THAT WERE FOSTERED BY THIS LETTER.  AND I WANTED TO

21  HAVE SOME ANSWERS FROM YOU WITH REGARD TO THOSE, THE ISSUES

22  THAT WERE RAISED BY THE LETTER.

23          MR. GROSS:  I'M SORRY, YOUR HONOR.

24          THE COURT:  YOU MAY PROCEED.

25          MR. GROSS:  SO I WAS GOING TO SAY ONE THING AND I

26  DON'T MEAN TO SPEAK OUT OF TURN.  BUT AS TO THIS ISSUE OF

1    UNMARKING THESE FILES FOR DELETION, ONE POSSIBLE THING TO

2    CONSIDER IS AN INDEPENDENT THIRD PARTY COULD DO THAT.  SO WE

3    COULD AGREE ON AN INDEPENDENT THIRD PARTY WHO WOULD BE GIVEN

4    ACCESS TO THE ACCOUNT AND COULD UNDELETE THOSE.  AND I ONLY

5    BRING THAT UP BECAUSE I SHARE THE COURT'S CONCERN.  I'M NOT

6    COMFORTABLE WITH THOSE REMAINING MARKED FOR DELETION.  AND I

7    WANTED THAT SUGGESTION TO BE OUT THERE, YOUR HONOR.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9              MR. GODKIN:  YOUR HONOR, MAY I CONTINUE?

10             THE COURT:  YES.

11             MR. GODKIN:  I WANTED ALSO TO ADDRESS WHAT MS. MEHTA

12   IS ASKING FOR.  FIRST OF ALL, AS I THINK, WE ALREADY MADE

13   CLEAR.  WE THINK THAT IT IS ENTIRELY APPROPRIATE FOR THE COURT

14   TO ORDER ACTIONS TO BE TAKEN IMMEDIATELY FOR THE PURPOSE OF

15   PRESERVING THE EVIDENCE HERE.  AND THAT INCLUDES YOUR ORDER

16   THAT MR. KRAMER TURN OVER HIS LAPTOP.  AND YOU SAID YOU WERE

17   INCLINED TO TURN IT OVER TO MR. GROSS.

18             ANOTHER OPTION WOULD BE TO TURN IT OVER TO AN

19   INDEPENDENT FORENSIC PERSON WHO UNDERSTANDS THE TECHNOLOGY WHO

20   MIGHT BE ABLE TO TAKE A LOOK AT IT AND PRESERVE IT AND INFORM

21   ALL OF US WHAT ACTUALLY CAN BE LEARNED FROM IT.  WE DON'T --

22   WE DO NOT THINK THAT IT IS APPROPRIATE FOR THAT TO BE TURNED

23   OVER TO FACEBOOK OR FACEBOOK'S COUNSEL AT THIS POINT.  RATHER

24   IT'S MORE IMPORTANT TO BE TURNED OVER TO A NEUTRAL PERSON WHO

25   CAN FIGURE OUT EXACTLY WHAT THE FACTS ARE FOR THE COURT AND

26   FOR THE PARTIES SO THAT WE CAN TAKE IT FROM THERE.

1          THE COURT:  ALL RIGHT.  I THINK TIME IS OF THE

2     ESSENCE.  I DON'T THINK THERE'S REAL TIME FOR A THIRD PARTY TO

3     UNMARK FOR DELETION AT THIS POINT.

4          MS. MEHTA:  I'M SORRY, YOUR HONOR.

5          MR. GODKIN:  THAT'S A DIFFERENT ISSUE.  I MEANT THE

6     LAPTOP.

7          THE COURT:  OKAY.

8          MR. GODKIN:  THE UNMARKING FOR DELETION, I AGREE

9     TIME IS DEFINITELY.  THAT WAS WHAT WE ASKED FOR IN THE LETTER

10    IS IMMEDIATELY FOR THE PASSWORD OF THAT ACCOUNT TO BE PROVIDED

11    TO, I THINK, AN INDEPENDENT PERSON IS AGAIN SMART.  SO THAT IT

12    CAN BE CHANGED AND IS SAFE.  AND, ALSO, IF IN FACT IT TURNS

13    OUT THAT THINGS THAT ARE UNMARKED FOR DELETION CAN BE, THAT

14    CAN BE REVERSED SO THAT NOTHING IS DELETED.  I THINK THAT

15    WOULD BE PRUDENT AS WELL.

16         THE COURT:  HAVE COUNSEL BEEN IN DISCUSSION THAT IS

17    TO SAY DEFENSE COUNSEL AND PLAINTIFFS WITH REGARD TO HOW TO

18    REMEDY THIS PROBLEM?

19         MS. MEHTA:  YOUR HONOR, WE HAVE PROPOSED TWICE TO

20    THEM.  FIRST ON MONDAY AND AGAIN ON WEDNESDAY THAT A FORENSIC

21    INSPECTION OCCUR WITH RESPECT TO THE LAPTOP.

22         THE COURT:  AND IT SHOULD.

23         MS. MEHTA:  AND WE HAVE NOT HEARD ANY RESPONSE FROM

24    THEM.  WE HAVE AN INDEPENDENT FORENSIC FIRM STROZ FRIEDBERG

25    THAT IS AT READY TO -- SORRY -- STROZ FRIEDBERG IS READY TO

26    TAKE ON THIS PROJECT AS EARLY AS THIS EVENING.  SO RATHER THAN

1    HAVE MR. KRAMER TURN THE LAPTOP OVER TO COUNSEL, WE WOULD

2    PROPOSE THAT MR. KRAMER TURN AND COUNSEL TURN THEIR LAPTOPS

3    OVER TO THIS INDEPENDENT FIRM.  AND THE FIRM ALSO BE GIVEN

4    ACCESS TO THE DROPBOX, SO THEY CAN TAKE IMMEDIATE STEPS TO

5    PRESERVE ALL RELEVANT EVIDENCE.  AND THIS IS A WELL KNOWN

6    INDEPENDENT FORENSIC FIRM THAT HANDLES THIS SORT OF THING

7    REGULARLY.

8            MR. LERNER:  YOUR HONOR, IF I MAY QUICKLY ADD?

9    WHAT'S BEING PROPOSED IN TERMS OF THE NEUTRAL IS WHAT IS

10   PROPOSED WHEN PARTIES COMPLY WITH THE PROTECTIVE ORDER AND

11   PRESERVE EVIDENCE AND FOLLOW THE COURT'S ORDERS, AND THEN THE

12   PARTIES AGREE ON A NEUTRAL.  AND BECAUSE THAT PROCESS IS TIME

13   CONSUMING, PEOPLE PLAN AHEAD.  THAT IS NOT WHAT HAS HAPPENED

14   HERE.  AND THEY ARE TRYING TO ESSENTIALLY SET BACK THE CLOCK

15   AS THOUGH THIS VIOLATION DIDN'T TAKE PLACE.

16           WHAT MS. MEHTA AND I ARE DESCRIBING IS WHAT HAPPENS

17   WHEN YOU BREAK THE RULES WHICH IS THE FORENSIC FIRM WE ARE

18   TALKING ABOUT WILL TAKE AN IMAGE WHICH BY THE WAY, ALL OF THE

19   LAWYERS IN THIS CASE KNOW IS THE WAY YOU DO THIS.

20           WHEN A CLIENT CALLS YOU AND SAYS, "I FOUND

21   INFORMATION THAT I DON'T THINK I'M SUPPOSED TO HAVE," NOBODY

22   IN ANY OF THESE TABLES SAYS "DELETE IT."  EVERYBODY SAYS,

23   "TAKE AN IMAGE" BECAUSE OTHERWISE NOBODY IS GOING TO KNOW WHAT

24   HAPPENED.

25           AND THEN AFTER YOU'VE TAKEN THAT IMAGE, YOU CAN

26   CLEAN UP THAT COMPUTER.  BUT NOT BEFORE.  WHAT THEY'RE

1    PROPOSING TURNS IT ON ITS HEAD, WE WILL HAVE THE FORENSIC FIRM

2    TAKE THE IMAGE TONIGHT.  WE'RE PERFECTLY HAPPY TO SAY THAT

3    UNTIL FURTHER INSTRUCTION FROM YOUR HONOR, WE'RE NOT GOING TO

4    LOOK AT IT TONIGHT.  BUT OUR FIRM NEEDS TO TAKE THAT IMAGE.

5    THE LETTER THAT YOU JUST READ THROUGH SHOWS ERROR AFTER ERROR

6    AFTER ERROR AS TO HOW TO HANDLE THIS EVIDENCE.

7         AS OF RIGHT NOW WE DON'T KNOW WHAT EXISTS, WHO HAS

8    ACCESS TO IT AND WHERE THIS STUFF IS.  AND WHO ELSE PERHAPS,

9    BY THE WAY, IS TRAVELING AROUND WITH THIS STUFF.  WE DON'T

10   KNOW ANYTHING.  IT NEEDS TO BE HANDLED NOW AND WE CAN DO IT.

11        MR. GODKIN:  YOUR HONOR, I DON'T THINK WE HAVE ANY

12   PROBLEM WITH AS LONG AS IT'S AN INDEPENDENT FORENSIC EXPERT.

13   WE DO HAVE A PROBLEM, HOWEVER, HAVING INFORMATION IMMEDIATELY

14   TURNED OVER FACEBOOK BECAUSE THERE VERY WELL MAY BE

15   INFORMATION ON THAT COMPUTER THAT'S PROTECTED BY A PRIVILEGE.

16        IT NEEDS TO BE REVIEWED.  THERE ARE A LOT OF

17   POTENTIAL PRIVILEGE ISSUES HERE, YOUR HONOR, WHICH BRINGS ME

18   TO SOME OF THE OTHER REQUESTS THAT FACEBOOK HAS MADE FOR

19   TURNING OVER DOCUMENTS.  THEY ARE ESSENTIALLY -- AND I

20   COMPLETELY UNDERSTAND WHY, BUT THEY ARE ESSENTIALLY ATTEMPTING

21   TO BURY US HERE AND DO EVERYTHING SO QUICKLY THAT WE DON'T

22   HAVE TIME TO THINK LET ALONE MAKE SURE IT'S DONE PROPERLY.

23        THE COURT:  IF I MAY REMIND YOU, MR. GODKIN, THE

24   COURT WAS BURIED WITH MANY DOCUMENTS BEFORE WITH REGARD TO THE

25   MOTION TO SEAL THAT WE PREPARED FOR ON NOVEMBER 1ST.  SEEMS

26   SOMEWHAT IRONIC THAT SUDDENLY WE'RE ALL CONCERNED ABOUT BEING

1    BURIED.

2              MR. GODKIN:  YOUR HONOR, WHAT I MEAN BY THAT IS THE

3    REQUEST THAT THEY ARE MAKING CERTAINLY FOR THE LAPTOP, THE

4    DROPBOX AND ALL THAT IS PERFECTLY APPROPRIATE.  FOR THE THREE

5    DOCUMENTS THAT WERE ATTACHMENTS TO MR. KRAMER'S EMAIL, THOSE

6    CAN BE PRODUCED PROMPTLY.  THAT'S SIMPLE.

7              BUT THE REST OF THEIR REQUESTS ARE IN OUR VIEW

8    OVERLY BROAD.  THEY ARE ASKING FOR -- FIRST OF ALL, THERE HAVE

9    BEEN NO COMMUNICATIONS WITH THIRD PARTIES REGARDING FACEBOOK'S

10   CONFIDENTIAL INFORMATION.  THAT'S ONE OF THE THINGS THEY ARE

11   ASKING FOR.

12             ONE OF THEIR REQUESTS IS SO BROAD IT LITERALLY

13   COVERS EVERY COMMUNICATION BETWEEN AND AMONG ALL OF THE

14   LAWYERS REPRESENTING THE PLAINTIFF IN THIS CASE WHICH IS --

15   INCLUDES ATTORNEY/CLIENT PRIVILEGE MATERIALS, WORK PRODUCT

16   PRIVILEGE MATERIALS.  IT'S A -- NUMBER ONE, AN ENORMOUS AMOUNT

17   OF MATERIAL.  BUT, NUMBER TWO, IF THE COURT IS INCLINED TO

18   ORDER PRODUCTION OF DOCUMENTS THAT ARE PRIVILEGED, WE WOULD

19   RESPECTFULLY REQUEST A FULL BRIEFING ON WHETHER OR NOT THAT'S

20   APPROPRIATE.  WE BELIEVE IT IS NOT.  BUT IF THAT -- IF THE

21   COURT IS INCLINED TO ORDER RELIEF OF THAT BREATH, IT'S AN

22   ISSUE OF SUCH IMPORTANCE THAT WE WOULD -- WE WOULD LIKE AN

23   OPPORTUNITY TO FULLY BRIEF IT BEFORE IT HAPPENS.

24             THE REQUEST FOR IMAGING OF ATTORNEYS' LAPTOPS RAISES

25   ENORMOUS PROBLEMS.  FIRST OF ALL, WE ALL HAVE MULTIPLE CLIENTS

26   WHO ARE NOT INVOLVED IN THIS LITIGATION.  WE ALL HAVE MULTIPLE

1    PERSONAL MATTERS THAT HAVE NOTHING TO DO WITH THIS LITIGATION.

2    THAT WOULD APPEAR ON COMPUTERS.  SO THE REQUEST THAT THEY CAN

3    TAKE ACCESS TO ALL OF OUR COMPUTERS REGARDLESS OF WHETHER THE

4    INFORMATION HAS ANY BEARING ON THIS MATTER AND REGARDLESS OF

5    WHETHER ANYTHING IS PRIVILEGED IS SERIOUSLY OVERBROAD AND

6    RAISES VERY VERY SERIOUS QUESTIONS IF THAT WERE -- IF THE

7    COURT WERE INCLINED TO GRANT RELIEF OF THAT BREATH.

8              DEPOSITIONS OF ATTORNEYS, YOUR HONOR.  THAT RAISES

9    ADDITIONAL QUESTIONS.  AS I MENTIONED EARLIER, WE HAVE

10   CONCLUDED THAT WE HAVE ETHICAL ISSUES THAT ARE GOING TO

11   PRECLUDE US FROM REMAINING IN THIS CASE.  ALSO TO THE EXTENT

12   YOU ARE ORDERING US LAWYERS TO PRODUCE DOCUMENTS AND APPEAR

13   FOR DEPOSITION, WE WOULD WANT FIRST TO ENGAGE OUR OWN COUNSEL

14   TO REPRESENT US WITH RESPECT TO THAT AND TO DO THAT IN AN

15   ORDERLY WAY, IF APPROPRIATE.

16             SO THAT IS ANOTHER -- WE DON'T BELIEVE IT'S

17   APPROPRIATE.  WE DON'T THINK ANYTHING WE'VE DONE IS IN

18   DISPUTE.  WE'VE JUST BEEN REALLY TRYING TO DO OUR BEST HERE.

19   AND FACEBOOK, YOU KNOW, HAS BEEN VERY AGGRESSIVE FOR

20   UNDERSTANDABLE REASONS.  BUT TO GO AFTER US PERSONALLY AS WELL

21   AS MR. KRAMER.  BUT ONCE WE START HEADING IN THAT DIRECTION,

22   YOUR HONOR, THE ISSUES ARE VERY VERY SERIOUS AND NEED TO BE --

23   WE BELIEVE NEED TO BE TAKEN SERIOUSLY BEFORE YOU WERE TO ORDER

24   THAT.  SO WE WOULD REQUEST A FULL OPPORTUNITY TO BE HEARD ON

25   THAT ISSUE.  AND IF YOU'RE INCLINED TO GO THAT WAY, THEN WE

26   WOULD ENGAGE OUR OWN COUNSEL TO REPRESENT US IN THAT REGARD.

```
1            THE COURT:  ISN'T THIS A PROBLEM OF THE PLAINTIFFS

2    OWN MAKING?

3            MR. GODKIN:  YOUR HONOR, IT PROBABLY IS.  BUT --

4            THE COURT:  PROBABLY?  YOU EQUIVOCATE?

5            MR. GODKIN:  NO, YOUR HONOR.  IT'S A PROBLEM OF OUR

6    MAKING.  HOWEVER, IT RAISES VERY SERIOUS PROBLEMS THAT WE HAVE

7    TO GRAPPLE WITH.  YOU KNOW, THIS WHOLE ISSUE BEGAN LAST

8    MONDAY.  WE HAD THE THANKSGIVING HOLIDAY IN THE MIDDLE.  AND

9    YOU'VE ORDERED US HERE TODAY AND WE'RE HAPPY TO BE HERE, BUT

10   THIS IS GOING -- ONCE WE PRESERVE THE EVIDENCE WHICH IS

11   CRITICAL, THIS IS GOING TO HAVE TO GET SORTED OUT.  AND IT'S

12   GOING TO HAVE TO TAKE LONGER THAN, YOU KNOW, PRODUCING

13   DOCUMENTS TONIGHT AND HAVING DEPOSITIONS NEXT WEEK.  IT'S JUST

14   PHYSICALLY NOT POSSIBLE FOR THAT TO HAPPEN.

15           THE COURT:  I UNDERSTAND.  THIS WHOLE DISCLOSURE OF

16   DOCUMENTS TOOK PLACE INTERESTINGLY DURING THE THANKSGIVING

17   HOLIDAYS WHEN THE COURTS WERE NOT IN SESSION AND LAWYERS WERE

18   UNAVAILABLE.

19           MR. GODKIN:  WE WERE --

20           THE COURT:  I JUST FIND THAT RATHER IRONIC OR RATHER

21   INTERESTING.

22           MR. GODKIN:  YOUR HONOR, OBVIOUSLY I APOLOGIZE FOR

23   THAT.  I WAS NOT SUPPOSED TO BE WORKING EITHER.  AND I'M NOT

24   HAPPY ABOUT IT.

25           THE COURT:  WELL, THE PLAINTIFFS AGREE THAT

26   MR. KRAMER SHALL TURN OVER THE LAPTOP AND DROPBOX ACCESS TO
```

```
1    THE INDEPENDENT FORENSIC EXAMINER PROPOSED BY FACEBOOK?

2             MR. GODKIN:  AS FAR AS SIX4THREE IS CONCERNED, YES.

3             THE COURT:  ALL RIGHT.  DO YOU NEED TO MEET AND

4    CONFER WITH YOUR COUNSEL FOR A MOMENT?

5             MR. GROSS:  SO, YOUR HONOR, THE -- WE DON'T HAVE A

6    PROBLEM WITH THE INDIVIDUAL OR THE FIRM THAT THEY'VE DONE.  I

7    THINK WHAT'S IMPORTANT IS THAT THE COURT ORDER THAT NO ONE

8    INCLUDING FACEBOOK OR ANY OF THE DEFENDANTS.  AND WE COULD

9    JUST SAY, "NO PARTY OR ATTORNEY OF PARTIES HAS ANY ACCESS TO

10   THESE MATERIALS UNTIL FURTHER ORDER BY THE COURT."  WITH THAT,

11   WE HAVE NO PROBLEM AT ALL PROVIDING THAT PERSON.

12            I THINK I WOULD GO ONE STEP FURTHER AND REQUEST THAT

13   THAT -- THAT WE -- OR THAT THE COURT CONSIDER ORDERING THAT

14   INDEPENDENT THIRD PARTY TO TAKE WHATEVER ACTIONS OR THE

15   APPROPRIATE ACTIONS TO ENSURE THAT THE FILES ON THAT DROPBOX

16   WHICH ARE MARKED FOR DELETION DO NOT END UP ULTIMATELY

17   DELETED.  THAT MAY BE ABOUT OUR CHANGING THE SETTINGS.  BUT

18   REGARDLESS THE MOST IMPORTANT THING IS THAT IF THE COURT ORDER

19   INDICATES THAT IT IS TRULY AN INDEPENDENT PARTY AND WE GO FROM

20   THERE.

21            THE COURT:  ALL RIGHT.  SO I HEAR THAT THERE IS A

22   STIPULATION WITH SOME LIMITATIONS ON ACCESS; IS THAT RIGHT?

23   YOU AGREE TO TURN THESE DOCUMENTS OVER TO AN INDEPENDENT

24   FORENSIC EXAMINER, CORRECT?

25            MR. GODKIN:  THE LAPTOP AND THE ACCESS TO THE

26   DROPBOX.
```

1          THE COURT:  YES.  VERY WELL.

2          MS. MEHTA:  YOUR HONOR, I WOULD ADD TWO THINGS TO

3   THAT.  ONE IS WE STILL DON'T KNOW WHERE THE THUMB-DRIVE IS AND

4   WHETHER MR. KRAMER OR COUNSEL OR MR. SCARAMELLINO HAVE THE

5   THUMB-DRIVE IN THEIR POSSESSION.  SO IF THAT THUMB-DRIVE IS

6   ANYWHERE IN SIX4THREE OR ITS COUNSEL'S OR LEGAL TEAM'S

7   POSSESSION, WE ASK THAT THAT BE TURNED OVER THIS EVENING AS

8   WELL.

9          AND THEN WE ASK THAT MR. SCARAMELLINO'S LAPTOP ALSO

10  BE SURRENDERED.  MR. SCARAMELLINO ACCORDING TO THE LETTER WE

11  GOT YESTERDAY AND ACCORDING TO COUNSEL'S STATEMENTS TODAY WAS

12  AT THE HEART OF THIS IN TERMS OF GETTING THAT -- IN TERMS OF

13  GETTING THAT INFORMATION TO MR. KRAMER, SO HIS LAPTOP SHOULD

14  ALSO BE IMAGED SO EVIDENCE CAN BE PRESERVED AND THEN THE

15  DROPBOX PASSWORD.

16         THE COURT:  THAT RAISES THE ISSUES THAT MR. GODKIN

17  HAD JUST ARTICULATED ON THE RECORD WHICH IS THAT THERE IS

18  ATTORNEY/CLIENT PRIVILEGE ATTACHED TO OTHER CASES THAT MAY BE

19  ON HIS LAPTOP THAT HAVE NOTHING TO DO WITH THE INSTANT CASE.

20         MS. MEHTA:  NOT WITH REGARD TO MR. SCARAMELLINO.

21         THE COURT:  ALL RIGHT.  WELL, IS MR. SCARAMELLINO AN

22  INDEPENDENT CONTRACTOR OR SOMEONE ASSOCIATED WITH THE FIRM AND

23  NOT AN EMPLOYEE OF THE FIRM?

24         MR. GODKIN:  HE'S NOT AN EMPLOYEE OF THE FIRM, YOUR

25  HONOR.  HE IS THE INVESTOR IN SIX4THREE.  HE'S A YALE LAW

26  SCHOOL GRADUATE.  HE HAS PASSED THE CALIFORNIA BAR I

1  UNDERSTAND, BUT HE HAS NOT BEEN ADMITTED YET.  BUT HE HAS BEEN

2  WORKING WITH OUR FIRM IN THE CAPACITY OF A LAW CLERK.  IT IS

3  MY UNDERSTANDING, YOUR HONOR, THAT HE IS CURRENTLY IN

4  NEW YORK.  AND SO TO THE EXTENT THERE ARE ANY ORDERS REGARDING

5  HIS LAPTOP, IT'S GOING TO -- WE'RE GOING TO HAVE TO FIGURE OUT

6  HOW TO COMPLY WITH THEM PROMPTLY.

7          THE COURT:  YES.  PLEASE HOLD YOUR THOUGHT.  I'VE

8  GOT A SIGNAL FROM MY COURT REPORTER WE'VE BEEN ON THE RECORD

9  QUITE A WHILE AND THERE'S BEEN VIGOROUS DISCUSSION ON THE

10  RECORD.  WE'RE GOING TO TAKE ABOUT A 20-MINUTE BREAK FOR THE

11  COURT REPORTER.  AND WE WILL RECONVENE AT 3:35.  COURT IS IN

12  RECESS UNTIL 3:35.  THANK YOU VERY MUCH, EVERYONE.

13          (WHEREUPON, A RECESS WAS TAKEN.)

14          THE COURT:  ALL RIGHT.  WE ARE BACK ON THE RECORD.

15  THE RECORD SHALL REFLECT ALL COUNSEL ARE PRESENT AT THE

16  COUNSEL TABLE.  THE PLAINTIFF'S PRINCIPAL IS ALSO PRESENT WITH

17  HIS INDEPENDENT COUNSEL.  WE WERE IN THE MIDST OF THE

18  PRESENTATION OF ARGUMENT BY THE PLAINTIFF MR. GODKIN AND

19  MR. GROSS.  DO YOU HAVE ANYTHING FURTHER TO ARGUE AT THIS

20  TIME, SIR?

21          MR. GODKIN:  THE ONLY POINT, YOUR HONOR, IS YOU

22  ASKED ABOUT WHERE THE THUMB-DRIVE IS OR MAYBE MS. MEHTA ASKED.

23          THE COURT:  YES.  WHERE IS THE THUMB-DRIVE?

24          MR. GODKIN:  IT WAS SIMPLY A -- MR. KRAMER HAD A

25  NUMBER OF PERSONAL THUMB DRIVES IN HIS BACKPACK.

26          THE COURT:  YES.

1          MR. GODKIN:  HE WENT OUT AND HE GAVE IT TO

2     MR. COLLINS.  AND WHAT MR. COLLINS DID WITH IT WE DON'T KNOW.

3     IT'S STILL IN HIS POSSESSION, AS FAR AS WE KNOW.

4          THE COURT:  THAT THUMB-DRIVE WAS THE VEHICLE TO

5     TRANSMIT THE DOCUMENTS IN QUESTION, CORRECT?

6          MR. GODKIN:  THAT'S WHAT I UNDERSTAND.

7          THE COURT:  ALL RIGHT.  IS THERE ANYTHING FURTHER?

8          MR. GODKIN:  NO.  THANK YOU, YOUR HONOR.

9          THE COURT:  ALL RIGHT.  MS. MEHTA.

10          MS. MEHTA:  THANK YOU, YOUR HONOR.  MY COLLEAGUE

11     MR. LERNER IS GOING TO ADDRESS THE ISSUES THAT CAME UP WITH

12     MR. GODKIN'S PRESENTATION WITH YOUR HONOR'S INDULGENCE.

13          THE COURT:  ALL RIGHT.  MR. LERNER.

14          MR. LERNER:  THANK YOU, YOUR HONOR.  I FIND MYSELF

15     IN THE UNUSUAL POSITION OF STARTING BY ANSWERING THE QUESTIONS

16     THAT YOU ASKED OPPOSING COUNSEL BECAUSE I THINK THAT WE CAN

17     ACTUALLY ANSWER THEM MORE HONESTLY AND ACCURATELY.  BEFORE I

18     DO THAT, I WOULD LIKE TO EMPHASIZE THAT YOUR HONOR'S PUTTING

19     PEOPLE UNDER OATH SEEMS TO HAVE SHED SOME LIGHT ON THINGS IN

20     THE PAST.  AND I CONTINUE TO THINK IT WILL CONTINUE TO DO SO

21     TODAY.  I WILL OF COURSE FOLLOW YOUR LEAD.  BUT IF AFTER WE'RE

22     FINISHED WITH THIS SECTION OF THE ARGUMENT, THERE ARE ANY

23     OUTSTANDING QUESTIONS WHICH I THINK THERE WILL BE FOR OPPOSING

24     COUNSEL, WE WOULD AGAIN SUGGEST THAT SOME OF THOSE SHOULD BE

25     UNDER OATH.

26          SO YOUR FIRST QUESTION IS REALLY WHAT HAPPENED WITH

```
 1    THESE DOCUMENTS?  WHY DID THEY END UP ON THE DROPBOX THAT

 2    MR. KRAMER HAD ACCESS TO?  AND AS YOU NOTED DIDN'T GET A

 3    STRAIGHTFORWARD ANSWER.  THE VERY STRAIGHTFORWARD ANSWER

 4    IS THAT SIX4THREE'S LEGAL TEAM GAVE THOSE DOCUMENTS TO

 5    DR. KRAMER -- TO MR. KRAMER.  IF THE LEGAL TEAM HAD NOT

 6    BREACHED THE PROTECTIVE ORDER ENTERED BY THIS COURT,

 7    MR. KRAMER NEVER COULD HAVE DONE WHAT HE DID.  HE COULDN'T

 8    HAVE VIOLATED THE PROTECTIVE ORDER.  AND HE COULDN'T HAVE GONE

 9    ON TO VIOLATE YOUR HONOR'S ORDER OF NOVEMBER 20TH.  WE ARE

10    HERE BECAUSE OF THE SIX4THREE LEGAL TEAM'S DECISION TO PUT

11    THOSE DOCUMENTS ON THAT DROPBOX.

12          NOW, LET'S TALK ABOUT THE SIX4THREE LEGAL TEAM AND

13    WHAT YOU HAVEN'T BEEN TOLD.  YOU RECEIVED THE LETTER ON

14    NOVEMBER 29TH, WHICH YOU MENTIONED WHICH SAYS, "ON THE MORNING

15    OF NOVEMBER 20TH, 2018, WE FURTHER DISCOVERED THAT A MEMBER OF

16    SIX4THREE'S LEGAL TEAM THOMAS SCARAMELLINO HAD PREVIOUSLY

17    PLACED UNREDACTED DOCUMENTS IN THIS FOLDER."

18          MR. SCARAMELLINO IS, AS DISCUSSED, A THIRD PARTY

19    INVESTOR WHO IS NOT A LAWYER.  HE'S COME UP IN THIS CASE

20    BEFORE BECAUSE WHEN WE FOUND OUT ABOUT HIM, WE SAID, "WHY ARE

21    OUR DOCUMENTS BEING SHARED WITH A NONPARTY NONLAWYER?"  WHEN

22    WE RAISED THAT, SUDDENLY HE BECAME PART OF THE LEGAL TEAM.  WE

23    NEVER HEARD THAT BEFORE.  WE NEVER SEEN ANYTHING TO SUGGEST

24    THAT HE WAS A MEMBER OF THEIR LEGAL TEAM.  BUT WHEN WE SAID,

25    "LET'S SEE THE COMMUNICATIONS WITH HIM," SUDDENLY HE BECAME A

26    MEMBER OF HIS LEGAL TEAM.
```

1          NOW, HE DIDN'T JUST BECOME A MEMBER OF THE LEGAL

2     TEAM.  IN ORDER TO PRESERVE PRIVILEGE OVER COMMUNICATIONS WITH

3     MR. SCARAMELLINO, MR. GODKIN FILED A DECLARATION IN THIS COURT

4     SIGNED UNDER PENALTY OF PERJURY.  AND IN THAT DECLARATION, HE

5     SAID THE FOLLOWING.  "MR. SCARAMELLINO HAS BEEN WORKING WITH

6     ME AND MY FIRM AS A MEMBER OF THE LEGAL TEAM SINCE MY FIRM WAS

7     RETAINED BY SIX4THREE WITH SIX4THREE'S FULL KNOWLEDGE AND

8     APPROVAL.  MR. SCARAMELLINO IS PERFORMING LEGAL RESEARCH, FACT

9     INVESTIGATION, ASSEMBLY OF DATA AND INFORMATION AND

10    PREPARATION OF PLEADINGS AND ANY OTHER WORK THAT I DECIDE WILL

11    ASSIST ME AND MY FIRM IN CARRYING OUT THE REPRESENTATION OF

12    SIX4THREE.

13          ALL OF THE TASKS PERFORMED BY MR. SCARAMELLINO ARE

14    PERFORMED AT MY DIRECTION AND UNDER MY SUPERVISION.  ALL OF

15    THE WORK PERFORMED BY MR. SCARAMELLINO HAS BEEN REVIEWED BY ME

16    OR ANOTHER ATTORNEY AT MY FIRM AND MERGED INTO MY FIRM'S WORK

17    PRODUCT."

18          SO THE ANSWER TO YOUR HONOR'S QUESTION AS TO WHAT

19    HAPPENED HERE IS THAT SIX4THREE'S LEGAL TEAM INCLUDING

20    MR. SCARAMELLINO GAVE MR. KRAMER ACCESS TO THESE DOCUMENTS

21    FULL STOP AND THAT'S WHY WE'RE HERE.

22          YOU ALSO ASKED A SET OF QUESTIONS ABOUT THE

23    DESTRUCTION OF DOCUMENTS.  I ALREADY ADDRESSED WHAT WE ALL

24    KNOW WHICH IS LAWYERS PARTICULARLY IN THIS STATE ARE FAMILIAR

25    WITH THE TECHNOLOGY THAT HAS BEEN AROUND FOR QUITE A WHILE

26    ENOUGH TO KNOW THAT YOU DON'T SAY "DESTROY IT."  YOU SAY "TAKE

1    AN IMAGE AND THEN WE WILL FIGURE IT OUT."  WE COVERED THAT.

2            MR. GODKIN WILL NOT -- FROM THIS STATE IS ALSO AWARE

3    OF THIS.  HIS OWN WEBSITE UNDER HIS NAME FOR DIRECTIONS FOR

4    PEOPLE TELLS GENERAL COUNSEL THAT THE GOLD STANDARD IS THE

5    SYSTEM WIDE MERE IMAGE BACK-UP, SO IT'S NOT A SECRET TO HIM

6    EITHER.  YOU DON'T TELL PEOPLE TO DELETE STUFF.  SO THAT THEN

7    GETS US TO THE IDEA THAT YOU'VE HEARD UNDER OATH IN SOME OF

8    THESE DECLARATIONS THAT THEY DON'T THINK ANY DOCUMENTS WERE

9    DESTROYED OR EVIDENCE WERE DESTROYED.

10            OF COURSE WE CAN'T KNOW THAT, AS YOUR HONOR POINTED

11   OUT.  BUT IT'S ALSO DEMONSTRABLY INCORRECT THAT WHEN YOU

12   DELETE DOCUMENTS NOTHING IS LOST.  THERE WILL BE THE LOSS OF

13   INFORMATION, THE METADATA FROM THOSE DOCUMENTS.  THERE WILL IN

14   ALL LIKELIHOOD BE INFORMATION LOST.  AND THAT WAS DONE AT

15   COUNSEL'S DIRECTION.

16            I THINK IT IS TROUBLING THAT THE EXPLANATION YOU

17   HEARD WAS VERY SIMILAR TO THE EXPLANATION THAT MR. KRAMER

18   PROVIDED.  MR. COUNSEL -- MR. GROSS SAID, "I SUDDENLY FOUND

19   MYSELF IN AN IMPOSSIBLE POSITION, SO I DID IT."  IT'S A LOT

20   LIKE MR. KRAMER'S, "I PANICKED AND I DID IT."

21            ALL OF THIS IS TURNING OUT TO BE UNFORTUNATELY A

22   FLAWED EXPLANATION FOR WHY THESE DOCUMENTS ENDED UP IN

23   MR. KRAMER'S POSSESSION AND HE THEN DISCLOSED THEM WHEN THE

24   ANSWER IS VERY CLEAR.  THEIR LEGAL TEAM GAVE THEM TO

25   MR. KRAMER AND THEN MR. KRAMER DISCLOSED THEM.  AS FOR NOT

26   KNOWING ABOUT THIS PREVIOUSLY, THAT'S CONTRARY TO THE

1    DOCUMENTS THAT HAVE BEEN SUBMITTED TO YOUR HONOR ALREADY.

2             YOU CAN SEE THAT FROM THE DOCUMENTS THAT ARE ALREADY

3    IN FRONT OF YOU.  THEY SAY, "OH, WE ONLY LEARNED OF THIS JUST

4    THIS PAST WEEK."  THEY SAY THAT WE DIDN'T KNOW THAT MR. KRAMER

5    WAS AWARE OF ANY OF THESE DOCUMENTS UNTIL THE 19TH.  WELL, WE

6    CAN TELL FROM MR. KRAMER'S OWN EMAILS ATTACHED TO HIS

7    DECLARATION THAT HE WAS ALREADY SAYING IN MAY OF 2018 THAT

8    THESE DOCUMENTS WERE QUOTE "STORED ON A FILE SERVER IN THE

9    CLOUD."  KRAMER DECLARATION PARAGRAPH 3.

10            WE ALREADY KNOW THAT HE TOLD SOMEONE WORKING FOR THE

11   COMMITTEE, "I CAN CONFIRM THAT YOUR DESCRIPTION OF THE

12   DOCUMENTS IN MY POSSESSION IS ACCURATE."  NOT ONLY THAT, BUT

13   HE WENT ON TO SAY, "I THINK THEY'D BE HIGHLY RELEVANT TO YOUR

14   INVESTIGATION."

15            NOTABLY COUNSEL IS NOT SAYING HE NEVER HAS SAID THAT

16   THE LEGAL TEAM WAS UNAWARE OF THESE COMMUNICATIONS OR DIDN'T

17   KNOW ANYTHING ABOUT THEM.  AND TELLINGLY MR. SCARAMELLINO

18   ISN'T HERE.  SO, AGAIN, WHAT YOU SEE IS A SET OF DOCUMENTS

19   THAT WERE SHARED WITH MR. KRAMER IN VIOLATION OF THE

20   PROTECTIVE ORDER.  AND A SET OF DOCUMENTS, BY THE WAY, WAS PUT

21   AT ISSUE IN THIS CASE BY MR. GODKIN.  SO HE CREATES A

22   DECLARATION WITH HUNDREDS OF PAGES OF EXHIBITS.  MANY OF WHICH

23   YOUR HONOR HAVING GONE THROUGH THEM IN CAREFUL DETAIL POINTED

24   OUT DIDN'T HAVE ANYTHING TO DO WITH WHAT WE'RE TALKING ABOUT.

25            BUT SOMEHOW FOR SOME REASON THEY WERE ATTACHED TO

26   HIS DECLARATION.  AND THEN LOW AND BEHOLD, THAT DECLARATION

1   THAT THE ATTORNEYS DRAFTED WITH DOCUMENTS THAT DIDN'T HAVE

2   ANYTHING TO DO WITH THIS CASE IS DESCRIBED IN CAREFUL DETAIL

3   BY MR. KRAMER FOR THIRD PARTIES.  AND MR. KRAMER INITIALLY

4   INVITES THEM TO SERVE A SUBPOENA IN CALIFORNIA THAT SAYS, "BY

5   THE WAY IF YOU DO THAT, I'LL BE SUBJECT TO THE POWER OF THE

6   CALIFORNIA COURT."

7           AND THEN WHEN YOU ASK MR. KRAMER ARE YOU TELLING THE

8   TRUTH ABOUT EVERYTHING IN YOUR DECLARATION TODAY, IT'S ALSO

9   WORTH NOTING THAT WHILE MR. KRAMER'S DECLARATION SAYS, YEAH,

10  WHEN THE COMMITTEE CONTACTED ME I SAID UNEQUIVOCALLY, NO, I

11  CAN'T DO THAT.  IN FACT, WHAT HIS DECLARATION SHOWS IN THE

12  EMAILS THAT ARE ATTACHED IS WHAT HE TOLD THEM IS I CAN'T

13  VOLUNTARILY DO THAT.

14          AND LOW AND BEHOLD HE GETS SERVED WITH AN ORDER FOR

15  THE DECLARATION THAT COUNSEL CREATED WITH DOCUMENTS THAT HAVE

16  NOTHING TO DO WITH THIS CASE.  AND IT ALL GETS DISCLOSED WHEN

17  HE DECIDES TO WALK OVER TO PARLIAMENT WITH A COMPUTER THAT IN

18  A SOMEWHAT DISTURBING PATTERN OF DEFERENCE TO AND RESPECT FOR

19  THIS COURT, DOESN'T GET BROUGHT HERE TODAY.

20          HE CAN VOLUNTARILY BRING IT TO PARLIAMENT WHEN HE

21  THINKS HE'S GOING TO WALK IN AND MIRACULOUSLY COLD-CALL A

22  MEMBER OF PARLIAMENT AND GET THEM TO AGREE WITH THEM WITH A

23  THUMB-DRIVE.  BUT WHEN YOUR HONOR SCHEDULES A HEARING, THE

24  COMPUTER ISN'T HERE.

25          SO THAT ALL LEADS TO THE ARGUMENT ON THE LAWYERS.

26  TO BE VERY CLEAR, THERE IS NOT A PRIVILEGED ISSUE.  I DON'T

1   WANT TO TALK WITH THEM ABOUT THEIR PRIVILEGED COMMUNICATIONS.

2   ALL I NEED IS THREE HOURS WITH BOTH OF THESE GENTLEMEN TO

3   COVER THE ISSUES THAT THEY HAVE PUT IN FRONT OF YOUR HONOR.

4   THEY HAVE SUBMITTED DECLARATIONS TO YOU WITH EXHIBITS AND

5   THEY'VE SUBMITTED LETTERS TO YOU.

6            WE CAN ASK THEM ABOUT THAT INFORMATION AND NATURALLY

7   THE INFORMATION THEY OMITTED.  FOR EXAMPLE, YOU HEARD, I

8   HAVEN'T HAD ANY CONTACT WITH THE COMMITTEE.  THERE ARE NO

9   DOCUMENTS SHOWING CONTACT WITH THE COMMITTEE.  WHAT IF WE

10  ASKED MR. GODKIN TODAY DID MR. SCARAMELLINO OF YOUR LEGAL TEAM

11  WHO DOES EVERYTHING UNDER YOUR SUPERVISION AT YOUR DIRECTION?

12  DID HE HAVE CONTACT WITH THE COMMITTEE?  DID MR. SCARAMELLINO

13  HAVE CONTACT WITH ANY THIRD PARTIES LIKE MEMBERS OF THE MEDIA?

14           THOSE ARE NOT PRIVILEGED QUESTIONS.  THOSE ARE ABOUT

15  THE DISCLOSURE OF THIS INFORMATION IN VIOLATION OF YOUR

16  HONOR'S ORDERS TO THIRD PARTIES.  THAT CAN BE COVERED IN THREE

17  HOURS.  AND BY THE WAY, IF THEY ARE WORRIED ABOUT THE

18  PRIVILEGE, THEN WE ARE PERFECTLY HAPPY TO PROPOSE JUDGE KRAMER

19  OR OTHER FORMER STATE COURT JUDGES FROM THIS AREA WHO ARE NOW

20  WORKING AS REFEREES.  THEY CAN SIT THERE.  YOUR HONOR COULD

21  APPOINT THEM RIGHT NOW WITHOUT ANY BRIEFING OR ANYTHING ELSE

22  UNDER THE CIVIL CODE.  THEY COULD HEAR ANY DISPUTES DURING

23  THOSE DEPOSITIONS.

24           WITH RESPECT TO THE DOCUMENTS, WE CAN AND SHOULD

25  FOLLOW EXACTLY THE SAME PROCESS THAT WE ARE FOLLOWING FOR

26  MR. KRAMER AND MR. SCARAMELLINO.  WHY?  WE SHOULD FOLLOW IT

1   FOR A COUPLE OF REASONS.  FIRST OF ALL, AS MR. GODKIN ADVISES

2   PEOPLE, IT'S THE WAY YOU DO THIS.  SECOND, WE'RE NOT ASKING TO

3   SEE IT RIGHT NOW.  ALL WE WANT TO DO IS HAVE IT PRESERVED.

4   AND THE REASON THAT'S SO IMPORTANT IS THEY CAN'T EVEN ANSWER

5   YOUR QUESTIONS IN THIS COURT TODAY ABOUT WHERE THIS

6   INFORMATION IS CURRENTLY.  WHAT'S HAPPENING WITH IT.  WHAT THE

7   PROBLEMS ARE.  IF THEIR COMPUTERS ARE NOT IMAGED, THERE ARE NO

8   GUARANTEES ABOUT THE PRESERVATION OF THAT INFORMATION.  AND

9   IMPORTANTLY WITH RESPECT TO PEOPLE'S MEMORIES, I GUARANTEE IF

10  A WEEK OR TWO GOES BY, PEOPLE ARE GOING TO START SAYING I

11  CAN'T REMEMBER.  I'M SORRY I CAN'T RECALL WHAT

12  MR. SCARAMELLINO WAS DOING.

13          THOSE COMPUTERS NEED TO BE IMAGED.  IT'S NOT THE

14  SAME AS SAYING GIVE THEM TO ME, JOSH LERNER.  IT IS SAYING AS

15  A MATTER OF BASIC DOCUMENT PRESERVATION, LETS IMAGE THEM JUST

16  AS YOU ADVISE PEOPLE SHOULD BE DONE IN LITIGATION.  THEN THEY

17  CAN HOLD TIGHT AND PEOPLE DON'T NEED TO WORRY ABOUT IT, BUT

18  THAT SHOULD BE DONE.

19          WITH RESPECT TO THE DOCUMENTS THAT WE'VE BEEN

20  TALKING ABOUT, I WANT TO START WITH THE DOCUMENTS ATTACHED TO

21  MR. KRAMER'S DECLARATION WHICH YOU ASKED HIM ABOUT.

22  MR. KRAMER SENT AN EMAIL THAT HAS THREE ATTACHMENTS.  IF YOU

23  LOOK AT EXHIBIT 1 TO MR. KRAMER'S DECLARATION, YOU CAN SEE

24  THREE ATTACHMENTS.

25          THE COURT:  ICONS FOR ATTACHMENTS.

26          MR. LERNER:  CORRECT.  HE SAYS IN HIS EMAIL THAT

1    HE'S ATTACHING THEM FOR MR. COLLINS REVIEW.

2              THE COURT:  YES.

3              MR. LERNER:  WE HAVE ASKED FOR THOSE ATTACHMENTS.

4    AND AS YOU HEARD OPPOSING COUNSEL SAY "WE'LL PRODUCE THEM

5    EVENTUALLY."

6              THE COURT:  THERE'S NO EVENTUALITY ABOUT IT.

7              MR. LERNER:  RIGHT.  I DON'T KNOW HOW IT IS POSSIBLE

8    THAT WE ARE SITTING HERE RIGHT NOW WITHOUT THOSE DOCUMENTS.

9    BECAUSE WITHOUT THEM, IT'S IMPOSSIBLE FOR EXAMPLE FOR

10   MR. KRAMER OR ANYBODY ELSE TO TELL YOU THAT HIS DECLARATION IS

11   ACCURATE.

12             THE COURT:  YOU KNOW, I'VE BEEN VERY PATIENT OVER

13   THE PAST FEW WEEKS AND THE PAST FEW DAYS WITH REGARD TO THESE

14   MATTERS.  I MUST SAY, HOWEVER, WHAT HAS HAPPENED IS

15   UNCONSCIONABLE.  IT SHOCKS THE CONSCIENCE.  AND YOUR CONDUCT

16   IS NOT WELL TAKEN BY THIS COURT.

17             IT'S ONE THING TO SERVE OTHER NEEDS THAT ARE OUTSIDE

18   THE SCOPE OF THIS LAWSUIT, BUT YOU DON'T SERVE THOSE NEEDS OR

19   SATISFY THE CURIOSITIES OF INQUIRING PARTIES WHEN THERE'S A

20   COURT ORDER PREVENTING YOU TO DO SO.

21             IT IS RATHER CURIOUS THAT THE SAME LAPTOP THAT WAS

22   USED TO DOWNLOAD ONTO A THUMB-DRIVE CONFIDENTIAL INFORMATION

23   SUBJECT TO THE PROTECTIVE ORDERS OF MY SUBSEQUENT ORDERS TO

24   SEAL IS NOT AVAILABLE IN THIS COURT TODAY.  IT WAS AVAILABLE

25   TO THE HOUSE OF COMMONS DCMS BUT NOT TO ME.

26             AND THERE IS NO EXCUSE TO HAVE A LAPTOP AVAILABLE TO

1    A SUBCOMMITTEE OF THE HOUSE OF COMMONS INQUIRING ON MATTERS

2    THAT ARE NOT WITHIN THE FOUR CORNERS OF THIS LAWSUIT AND YET

3    MAKE IT UNAVAILABLE TO THIS COURT WHEN YOU HAVE A HEARING

4    TODAY AT 2:00 O'CLOCK WHICH I DULY NOTICED BY THE ORDERS THAT

5    I ISSUED.

6            MR. LERNER, YOU MAY CONTINUE.

7            MR. LERNER:  I THINK YOUR HONOR PUT IT BETTER THAN I

8    COULD HAVE.  AND I WANT TO CLOSE WITH THE FOLLOWING ON THIS

9    TOPIC.  WE ARE ASKING FOR THE TWO LIMITED DEPOSITIONS I JUST

10   DESCRIBED AND FOR FORENSIC IMAGES THAT JUST PRESERVE

11   INFORMATION.  WHY IS THAT SO IMPORTANT?  IF I CAN HUMBLY SPEAK

12   ON BEHALF OF LAWYERS IN THIS STATE, I HAVE LOOKED LONG AND

13   HARD FOR NOT JUST THE CASE IN THIS STATE BUT A CASE ANYWHERE

14   THAT INVOLVES SOMETHING LIKE THIS, AND I CAN'T FIND ONE.  I

15   HAVE FOUND SITUATIONS IN WHICH COUNSEL DISCLOSED THE PROFITS

16   OF A COMPANY IN VIOLATION OF A PROTECTIVE ORDER AND THERE WERE

17   SERIOUS CONSEQUENCES.  I HAVE FOUND SITUATIONS IN WHICH

18   INFORMATION WAS DISCLOSED TO EXPERTS, BUT NOT IN A WAY THAT IT

19   SAW THE LIGHT OF DAY AND THERE WERE SERIOUS CONSEQUENCES.

20           IF THERE ARE NOT CONSEQUENCES HERE, THE TRUST THAT

21   HAS BEEN ESTABLISHED OVER THE COURSE OF MY ENTIRE CAREER AND

22   PEOPLE LONG BEFORE ME THAT ENABLES ME TO TELL MY CLIENTS AND

23   ENABLES MY OPPOSING COUNSEL TO TELL THEIR CLIENTS, I

24   UNDERSTAND YOUR ENGINEERS ARE TERRIFIED ABOUT PRODUCING THIS

25   INFORMATION.  I UNDERSTAND YOUR EXECUTIVES, OF COURSE, HAVE TO

26   HAVE GROWN UP DISCUSSIONS AMONGST THEMSELVES WHERE THEY ARE

1   ABLE TO DELIBERATE HONESTLY AND OPENLY AND HAVE A MARKETED

2   PLACE OF IDEAS.

3           I UNDERSTAND YOU'RE WORRIED THAT ALL THAT COULD SEE

4   THE LIGHT OF DAY, BUT NO JUDGE HAS EVER LET THAT HAPPEN.  NO

5   LAWYER HAS EVER JUST GONE OUT AND PRODUCED ALL OF IT.  THAT'S

6   WHAT WE ALWAYS SAY IN ORDER TO MAKE PEOPLE COMFORTABLE WITH

7   DOCUMENT PRODUCTIONS THAT THIS COURT AND OTHER COURTS NEED IN

8   ORDER TO RULE ON CASES.

9           I CAN'T SAY THAT ANYMORE.  NEITHER CAN THEY.  AS A

10  RESULT OF WHAT HAPPENED HERE, LAWYERS CAN NO LONGER SAY --

11  IT'S NEVER HAPPENED.  PEOPLE DON'T GO OUT AND PRODUCE HUNDREDS

12  OF DOCUMENTS TO FOREIGN GOVERNMENT.  WE CAN'T SAY JUDGES

13  PROTECT THIS CONDUCT.  THIS HAPPENED IN OPEN DEFIANCE OF YOUR

14  HONOR'S ORDERS.

15          THE COURT:  THE ENDS DO NOT JUSTIFY THE MEANS.

16  WHATEVER YOU'RE TRYING TO ACCOMPLISH, THE ENDS DO NOT JUSTIFY

17  THE MEANS.  PARTICULARLY WHEN MY ORDERS ARE VIOLATED IN

18  RELATION TO THIS CASE.

19          ONE ORDER I'M GOING TO MAKE RIGHT NOW, MR. GODKIN

20  AND MR. GROSS, THE GROSS & KLEIN FIRM AND THE BIRNBAUM &

21  GODKIN FIRM AND COUNSEL STUART GROSS, DAVID S. GODKIN AND

22  JAMES KRUZER SHALL REMAIN IN THIS CASE AND SHALL NOT WITHDRAW

23  FROM REPRESENTATION OF PLAINTIFF UNTIL THE MATTERS IN RELATION

24  TO THE DISTRIBUTION OF THOSE CONFIDENTIAL DOCUMENTS IS

25  RESOLVED.  YOU'RE NOT GOING ANYWHERE.  AND YOU ARE ORDERED TO

26  REMAIN IN THIS CASE.

1          MR. GODKIN:  WE'VE ALWAYS HAD EVERY INTENTION OF

2    DOING SO FOR THE PURPOSE OF RESOLVING THESE ISSUES, YOUR

3    HONOR.

4          THE COURT:  THAT IS ONE OF THE ORDERS OF THIS COURT.

5    MR. KRAMER'S LAPTOP SHALL BE SURRENDERED TO THE FORENSIC

6    EXAMINER.  AND I'M GOING TO HAVE MORE DETAILED INSTRUCTIONS IN

7    MY ORDER.  BUT THAT FORENSIC EXAMINER WILL BE ORDERED NOT TO

8    DISCLOSE ANY FINDINGS OR EVIDENCE TO EITHER PARTY UNTIL

9    FURTHER ORDER OF THE COURT.

10          SINCE THE PARTIES HAVE AGREED TO STROZ FRIEDBERG,

11   MS. MEHTA IS ATTEMPTING TO OBTAIN THE ADDRESS FOR THE DELIVERY

12   OF THE LAPTOP.  AND WE NEED THAT ADDRESS SO THAT I CAN PREPARE

13   MY ORDER.  AND MIND YOU, EVERYONE, YOU'RE GOING TO REMAIN IN

14   THE COURTROOM UNTIL MY ORDER IS FINISHED.  AND IT'S GOING TO

15   TAKE A FEW MOMENTS TO COMPLETE THIS ORDER THAT I MAKE RULING

16   ON THE EX PARTE APPLICATION THAT FACEBOOK HAS MADE AS WELL AS

17   THE OTHER MATTERS THAT ARE RELATED TO THE PROCEEDINGS TODAY.

18          MS. MEHTA:  YOUR HONOR, I CAN DO IT NOW OR I CAN DO

19   IT LATER.  I WANTED TO ADDRESS THE LOGISTICS OF THE DELIVERY

20   OF THE LAPTOP --

21          THE COURT:  YES.

22          MS. MEHTA:  -- TO STROZ FRIEDBERG.  SO

23   STROZ FRIEDBERG HAS PEOPLE ON THE GROUND HERE IN

24   SAN FRANCISCO.  THEY ALSO HAVE PEOPLE ON THE GROUND IN

25   NEW YORK IN THE EVENT THAT YOUR HONOR WERE TO ORDER

26   MR. SCARAMELLINO'S LAPTOP BE IMAGED.  AND ALSO BOSTON IN THE

1    EVENT THAT WE NEED BIRNBAUM AND GODKIN'S INFORMATION TO BE

2    IMAGED FOR PRESERVATION PURPOSES.

3            THEY CAN HAVE PEOPLE AT MR. KRAMER'S WHATEVER

4    LOCATION MR. KRAMER'S LAPTOP IS AT AT MR. SCARAMELLINO'S

5    LOCATION FOR HIS LAPTOP AND THE BIRNBAUM & GODKIN LAW FIRM AND

6    ALL THE RELEVANT PLACES TONIGHT TO PICK UP THE DRIVES.

7            THE COURT:  WHERE?

8            MS. MEHTA:  SO WHAT WE WOULD NEED IS THE ADDRESSES

9    FROM SIX4THREE AND FOR MR. KRAMER AND FOR MR. SCARAMELLINO AS

10   TO WHERE THE RELEVANT DEVICES FOR MR. KRAMER, MR. SCARAMELLINO

11   AND COUNSEL ARE.  AND THEN THE INDEPENDENT FIRM STROZ

12   FRIEDBERG WILL HAVE SOMEONE GO AND PICK THEM UP.

13           THE COURT:  OKAY.  WHAT'S THE TIMEFRAME IN PICKING

14   THESE UP?

15           MS. MEHTA:  THEY CAN DO IT TONIGHT.

16           THE COURT:  WELL, THEY CAN DO IT TONIGHT BUT WHEN

17   TONIGHT?

18           MS. MEHTA:  I THINK WE COULD HAVE IT WITHIN A FEW

19   HOURS, YOUR HONOR.  CERTAINLY BY 8:00 P.M.

20           THE COURT:  WELL, WHAT I SUGGEST IS THAT

21   MR. SCARAMELLINO AND MR. KRAMER HAVE COUNSEL PRESENT WHEN

22   THESE LAPTOPS ARE HANDED OVER.  IN OTHER WORDS, I DON'T WANT

23   IT HANDED OVER WITHOUT THE SUPERVISION OF COUNSEL.  ALL RIGHT?

24           MS. MEHTA:  UNDERSTOOD.

25           THE COURT:  EACH COUNSEL ARE OFFICERS OF THE COURT.

26   AND THEY ARE HELD IN THE HIGHEST REGARD.  AT LEAST WITH REGARD

1    TO THIS COURT, THE EXPECTATIONS ARE HIGH BECAUSE THEY ARE

2    MEMBERS OF THE BAR.  AND THEIR SUPERVISION OF THE CLIENT

3    SHOULD BE DONE WHEN THE LAPTOPS ARE TURNED OVER TO THE

4    FORENSIC EXAMINERS.  SO LOGISTICALLY HOW DO WE MAKE THAT

5    HAPPEN?

6            MS. MEHTA:  SO, YOUR HONOR, WITH RESPECT TO

7    MR. KRAMER, THAT SHOULD BE EASY.  MR. KRAMER IS HERE.  HE

8    LIVES HERE.  PRESUMABLY THE LAPTOP IS SOMEWHERE IN THE

9    BAY AREA.  HE HAS COUNSEL WITH HIM TODAY, SO THEY SHOULD BE

10   ABLE TO ATTEND ANY INSPECTION.

11           THE COURT:  ALL RIGHT.  HOW ABOUT HAVING EVERYONE

12   CONGREGATE AT MR. GROSS'S FIRM.  AND THEN HAVING THE FORENSIC

13   EXAMINER MEET EVERYONE AT MR. GROSS'S FIRM.

14           MS. MEHTA:  THAT'S NO PROBLEM, YOUR HONOR.

15           THE COURT:  IT WOULD BE PROFICUOUS TO HAVE EVERYONE

16   IN ONE PLACE SO THAT THERE'S ONE STOP BY YOUR FORENSIC

17   EXAMINERS.

18           MS. MEHTA:  THE ISSUE IS MR. SCARAMELLINO WHO I TAKE

19   IS NOT IN CALIFORNIA EVEN THOUGH HE HAS A BUSINESS HERE, I

20   THINK HE'S CURRENTLY IN NEW YORK.  WE CAN HAVE THE INDEPENDENT

21   FIRM GO AND HAVE SOMEONE PICK UP THE DEVICES OR IMAGE THE

22   DEVICES FOR MR. SCARAMELLINO.  OBVIOUSLY GETTING COUNSEL THERE

23   BY TONIGHT IS GOING TO BE DIFFICULT SINCE EVERYONE IS HERE.

24           AND I ALSO THINK GIVEN HIS ROLE AT THE VERY HEART OF

25   ALL OF THIS, THAT DELAYING THE COLLECTION OF HIS DATA AND

26   IMAGE IS A RISK THAT WE OUGHT NOT TAKE.  AND SO THE QUESTION

1    IS WHETHER YOUR HONOR WOULD PERMIT THE COLLECTION OF

2    MR. SCARAMELLINO'S IMAGE DATA BY THE INDEPENDENT FIRM.

3    IRRESPECTIVE OF THE PRESENCE OF COUNSEL, HE WAS FUNCTIONING

4    UNDER A LEGAL TEAM SO PRESUMABLY HE'S IN A QUASI LEGAL

5    CAPACITY ANYWAY GIVEN WHAT THEY'VE DONE.  THAT ONE I THINK

6    NEEDS TO HAPPEN TONIGHT.  I DON'T KNOW THAT WE'RE GOING TO GET

7    EVERYONE THERE TONIGHT.

8            THE COURT:  I HAVEN'T MADE A DECISION ON

9    MR. SCARAMELLINO'S LAPTOP IN ANY EVENT.  AND I'M GOING TO HAVE

10   TO THINK ABOUT THAT AS I DRAFT THE REMAINDER OF THE ORDER.  IS

11   THERE ANYTHING FURTHER?  MR. GODKIN, DID YOU HAVE ANY

12   RESPONSES TO MR. LERNER'S ARGUMENTS?

13           MR. GODKIN:  YOUR HONOR, MR. LERNER'S ARGUMENT ABOUT

14   MAKING AN IMAGE OF MR. KRAMER'S LAPTOP WHILE HE WAS IN THE

15   U.K. LAST WEEK, THE WHOLE PROBLEM WAS HE -- WE LEARNED HE WAS

16   THERE.  HE WAS THERE BY HIMSELF.  WE WERE NOT THERE.  IT WAS

17   NOT POSSIBLE TO MAKE AN IMAGE OF HIS COMPUTER LAST WEEK, SO I

18   UNDERSTAND THAT YOU MAY THINK THAT WHAT WE DID WAS NOT ENOUGH

19   OR WAS WRONG.  BUT OUR INTENT WAS IN GOOD FAITH TO DO WHAT WE

20   COULD TO TRY TO AVOID THIS PROBLEM.

21           THE COURT:  ALL RIGHT.  THANK YOU.

22           MR. THOREEN:  IF I MAY BRIEFLY?

23           THE COURT:  YES.

24           MR. THOREEN:  JUST VERY BRIEFLY.  I WON'T BELABOR

25   THE POINT BECAUSE MR. KRAMER LEARNED YESTERDAY MORNING THAT

26   HIS COUNSEL FOR PLAINTIFFS IN THIS CASE COULDN'T REPRESENT HIM

1    IN THIS MATTER, SO I'VE BEEN ON BOARD FOR ABOUT 21 HOURS.

2              ONE THING THAT I DID WANT TO LET THE COURT KNOW THAT

3    IN THE LAST 24 HOURS, WE'VE ENGAGED DC INTERNATIONAL LAW FIRM

4    WHICH IS GOING TO UNDERTAKE WHATEVER EFFORTS IT CAN UNDER

5    BRITISH LAW TO EITHER OBTAIN THE DOCUMENTS THAT WERE PROVIDED

6    TO THE COMMITTEE OR TO AT LEAST SECURE AGREEMENT THAT THEY

7    WILL NOT BE RELEASED IN ANY FASHION.

8              THE COURT:  I CERTAINLY HOPE THAT THOSE DOCUMENTS

9    ARE RETRIEVED, BUT THEY PROBABLY HAVE BEEN COPIED TO OTHER

10   FLASH DRIVES OR THUMB DRIVES OR COMPUTERS.  AND THEY'RE IN THE

11   ETHER AND THEY MAY NOT BE -- IT MAY NOT BE POSSIBLE TO

12   RETRIEVE THIS INFORMATION.

13             MR. THOREEN:  I UNDERSTAND, YOUR HONOR.

14             THE COURT:  ALL RIGHT.  ANYTHING FURTHER BY COUNSEL?

15             MS. MEHTA:  NO, YOUR HONOR.  ON THAT LAST POINT, I

16   WILL SAY THAT THE DOCUMENTS HAVE ALREADY BEEN USED PUBLICLY.

17   THEY ARE ALREADY OUT THERE.  IT'S NOT A QUESTION OF WHETHER.

18   IT'S A QUESTION OF HOW MUCH NOW MORE IS GOING TO BE RELEASED

19   AND HAS ALREADY BEEN RELEASED.  AND I THINK THE FINAL POINT

20   JUST TO ECHO SOMETHING THAT MR. LERNER SAID AND, YOU KNOW, THE

21   FINAL REQUEST THAT WE WOULD MAKE TO YOUR HONOR AS YOU GO BACK

22   TO CONSIDER THIS IS TO -- WHEN YOU SCRUTINIZE THE DECLARATION

23   FOR MR. KRAMER AND FROM THE LAWYERS, TO THINK ABOUT WHETHER OR

24   NOT IT IS CREDIBLE THAT MR. KRAMER DID THIS ON HIS OWN GIVEN

25   HIS OWN STATEMENTS ABOUT THE INVOLVEMENT OF HIS LEGAL TEAM IN

26   ALL OF HIS COMMUNICATIONS WITH THE DCMS COMMITTEE AND WITH THE

1    MEDIA ENTITIES INVOLVED IN THIS.

2              AND GIVEN THAT AND GIVEN THE WAY THIS ALL CAME ABOUT

3    WHERE IT WAS DONE AT THE HANDS OF THE VERY PERSON THE LEGAL

4    TEAM SAID THEY WERE CLOSELY OVERSEEING, IT IS I THINK AT LEAST

5    SUBJECT TO SERIOUS QUESTION HOW MUCH KNOWLEDGE AND INVOLVEMENT

6    THE LAWYERS HAVE HAD THROUGHOUT THIS WHOLE PROCESS.

7              WE HAVE SEEN THE LAWYERS TALKING TO THE MEDIA

8    THROUGHOUT THIS CASE.  WE HAVE SEEN THEM INVOLVED IN THESE

9    ULTERIOR EXTRAJUDICIAL AVENUES OF WHATEVER RELIEF THEY'RE

10   TRYING TO GET.  THEIR INVOLVEMENT IS CENTRAL.  AND TO PRESERVE

11   THE EVIDENCE AND THEN TAKE THE LIMITED DEPOSITION TO GET TO

12   THE BOTTOM OF WHAT THEIR ROLE WAS IS INCREDIBLY IMPORTANT

13   HERE BEYOND MERELY THE INVOLVEMENT OF MR. KRAMER AND

14   MR. SCARAMELLINO.  THAT'S A GIVEN.  WE KNOW THEY VIOLATED THE

15   PROTECTIVE ORDER.

16             THE QUESTION IS TO WHAT EXTENT WAS COUNSEL INVOLVED

17   AND THERE IS -- THERE ARE RED FLAGS EVERYWHERE THAT SUGGEST

18   THAT COUNSEL WAS INVOLVED AND FROM OUR PERSPECTIVE VERY HUMBLY

19   IT IS INCREDIBLY IMPORTANT THAT THE COURT GET TO THE BOTTOM OF

20   THAT BECAUSE OF MR. LERNER'S FINAL POINT WHICH IS THE WHOLE

21   SYSTEM OF DISCOVERY BREAKS DOWN IF LAWYERS CAN'T BE TRUSTED

22   WITH CONFIDENTIAL INFORMATION OR FIND AVENUES TO END RUN

23   AROUND THE COURT'S ORDERS FOR WHATEVER TACTICAL GAME THEY

24   PERCEIVE THEY ARE GOING TO GET BY DISCLOSING INFORMATION TO

25   THE MEDIA OR TO OTHER ENTITIES.

26             IT IS NOT JUST MR. KRAMER AND MR. SCARAMELLINO THAT

1    HAVE UNDERMINED THAT VERY FUNDAMENTAL PREMISE SYSTEM.  THERE'S

2    AT LEAST A SUBSTANTIAL REASON TO BELIEVE THE LAWYERS HAD

3    KNOWLEDGE OF IT AND WERE INVOLVED IN THAT AS WELL, YOUR HONOR.

4             THE COURT:  THANK YOU.

5             MR. GODKIN:  YOUR HONOR, MAY I MAKE ONE FINAL POINT?

6             THE COURT:  YES, SIR.

7             MR. GODKIN:  TO REITERATE WHAT I SAID EARLIER, TO

8    THE EXTENT THAT YOU ARE INCLINED TO ORDER DOCUMENTS FROM THE

9    LAWYERS AND DEPOSITIONS FROM THE LAWYERS, I WOULD RESPECTFULLY

10   REQUEST THAT YOU GIVE US AN OPPORTUNITY TO BE HEARD.  SO THAT

11   WE CAN FULLY BRIEF PRIVILEGE ISSUES AS WELL AS GIVE US

12   SUFFICIENT TIME TO ENGAGE COUNSEL TO REPRESENT US AT ANY

13   DEPOSITIONS THAT MAY TAKE PLACE.

14           IN OTHER WORDS, MS. MEHTA AND MR. LERNER ARE ASKING

15   FOR A LOT OF THINGS TO HAPPEN NEXT WEEK.  AS A PRACTICAL

16   MATTER, THAT GIVES US NO TIME AT ALL TO ENGAGE COUNSEL AND

17   DEAL WITH ALL THESE ISSUES.  SO I WOULD JUST RESPECTFULLY

18   REQUEST THAT YOUR ORDER ALLOW SUFFICIENT TIME SO THAT WE CAN

19   TAKE CARE OF THOSE THINGS.

20           THE COURT:  OKAY.  THANK YOU, MR. GODKIN.  I WANT TO

21   REITERATE THE FACT THAT THE REASON THAT YOU ARE IN THIS FIX IS

22   BECAUSE AT THE VERY LEAST OF YOUR PRINCIPAL PLAINTIFF AND HIS

23   CONDUCT.  THANK YOU.

24           THE COURT IS GOING TO TAKE A RECESS WHILE IT

25   FASHIONS AN ORDER.  EVERYONE, REMAIN IN THE COURTROOM.  AND

26   THE COURT WILL EXECUTE THE ORDER, WILL READ THE ORDER INTO THE

1   RECORD AND EXECUTE THE ORDER SHORTLY.

2                  (WHEREUPON, A RECESS WAS TAKEN.)

3                  THE COURT:  THE RECORD SHALL REFLECT THAT THE COURT

4   HAS TAKEN SOME TIME TO REVISE ITS ORDER AND TO PREPARE A FINAL

5   ORDER CONCERNING THE MATTERS RELATING TO THIS HEARING TODAY.

6   THE COURT HAS READ AND CONSIDERED THE MOVING PARTIES AND THE

7   OPPOSITION PAPERS AND ARGUMENTS OF COUNSEL.  AND I WANT TO

8   REITERATE THE FOLLOWING BECAUSE THE NOTICE AND TIMING OF

9   CERTAIN EVENTS ARE SIGNIFICANT.

10                  WITH REGARD TO THE ORDER, ON NOVEMBER 19TH, 2018,

11  THIS COURT SET A BRIEFING SCHEDULE ON DEFENDANT FACEBOOK,

12  INC.'S EX PARTE APPLICATION FOR THE EXPEDITED BRIEFING ON A

13  MOTION FOR SANCTIONS AND CONTEMPT BY EMAIL.

14                  ON NOVEMBER 20TH, 2018, THIS COURT ISSUED AN ORDER

15  FOR BRIEFING AND STAYING SUBMISSION OF UNREDACTED COPIES OF

16  SEALED DOCUMENTS.

17                  ON NOVEMBER 26, THE COURT RECEIVED PLAINTIFF

18  SIX4THREE, LLC'S RESPONSE TO THE NOVEMBER 20TH ORDER AT

19  11:35 A.M., DEFENDANT'S EX PARTE AT 11:55 A.M., AND

20  PLAINTIFF'S "LIMITED RESPONSE" TO DEFENDANT'S EX PARTE AT

21  4:46 P.M.

22                  ON NOVEMBER 27, 2018, THIS COURT ORDERED AN ORDER

23  AND NOTICE OF HEARING SETTING A HEARING FOR NOVEMBER 30, 2018,

24  AT 2:00 P.M.

25                  ON NOVEMBER 28, 2018, THE COURT RECEIVED DEFENDANT'S

26  RESPONSE TO THE NOVEMBER 20TH ORDER AT 7:02 P.M. AND

1   PLAINTIFF'S RESPONSE TO DEFENDANT'S EX PARTE AT 7:06 P.M.

2            ON NOVEMBER 29TH, 2018, AT 2:31 P.M., MR. GODKIN

3   SENT A LETTER TO BOTH THE COURT AND THE PARTIES.  A COPY OF

4   WHICH IS ATTACHED TO MY ORDER AS EXHIBIT A.

5            IT IS HEREBY ORDERED AS FOLLOWS:

6            DEFENDANT'S EX PARTE IS GRANTED, IN PART, AND

7   DENIED, WITHOUT PREJUDICE, IN PART.

8            DEFENDANT'S EX PARTE REQUEST FOR EXPEDITED BRIEFING

9   AND HEARING ON TERMINATING SANCTIONS AND CONTEMPT SANCTIONS IS

10  PROCEDURALLY IMPROPER.  NOTICE MUST BE GIVEN PURSUANT TO CODE

11  OF CIVIL PROCEDURE SECTION 2023.030.

12           THE COURT, AFTER NOTICE TO ANY AFFECTED PARTY,

13  PERSON, OR ATTORNEY, AND AFTER OPPORTUNITY FOR HEARING, MAY

14  IMPOSE SANCTIONS AGAINST ANYONE ENGAGING IN CONDUCT THAT IS A

15  MISUSE OF THE DISCOVERY PROCESS.  PURSUANT TO THE CASE OF

16  SOLE ENERGY CO. V. HODGES.  THAT'S A 2005 CASE AT

17  128 CAL. APP. 4TH, 199 PINPOINT CITATION OF 208.  DISCOVERY

18  SANCTIONS MAY NOT BE ORDERED EX PARTE, AND AN ORDER PURPORTING

19  TO DO SO IS VOID.

20           DEFENDANT'S EX PARTE REQUEST FOR EXPEDITED REQUESTS

21  FOR DOCUMENT PRODUCTION IS PROCEDURALLY IMPROPER.  NO REQUESTS

22  HAVE BEEN SERVED ON PLAINTIFF AND THE RELIEF REQUESTED IS

23  PREMATURE.  FURTHERMORE, A MOTION IS REQUIRED.  NOW, PURSUANT

24  TO CODE OF CIVIL PROCEDURE SECTION 2031.260(A), THE RESPONSE

25  DEADLINE TO REQUESTS FOR PRODUCTION IS 30 DAYS UNLESS ON

26  MOTION OF THE PARTY MAKING THE DEMAND, THE COURT HAS SHORTENED

1    THE TIME FOR RESPONSE.

2            THERE ARE ALSO PROVISIONS SET FORTH IN WEIL & BROWN

3    WHICH ARE SECONDARY AUTHORITIES THAT ADDRESS THIS PROCEDURAL

4    ISSUE, AND I CITED THEM IN MY ORDER.  HOWEVER, THE COURT MAY

5    ISSUE AN ORDER SHORTENING TIME PURSUANT TO EX PARTE

6    APPLICATION ON ANY SUCH MOTION.  AND I'M GOING TO DO JUST

7    THAT.

8            THE DEFENDANT'S EX PARTE REQUEST TO SHORTEN NOTICES

9    OF DEPOSITION IS GRANTED TO FIVE DAYS UPON ELECTRONIC SERVICE

10   OR PERSONAL DELIVERY.  THIS IS PURSUANT TO CODE OF CIVIL

11   PROCEDURE SECTION 2025.270(D).  ALSO WEIL & BROWN AT

12   8:493.3.  NOTICES OF DEPOSITION ON PARTIES MAY INCLUDE

13   REQUESTS FOR PRODUCTION.  AND THAT'S PURSUANT TO CODE OF CIVIL

14   PROCEDURE SECTION 2025.220(A)(4).

15           DEFENDANT'S EX PARTE REQUEST TO REQUIRE DEPOSITIONS

16   OF PLAINTIFFS PRO HAC VICE COUNSEL IN SAN MATEO COUNTY IS

17   DENIED.  AND THAT'S PURSUANT TO CODE OF CIVIL PROCEDURE

18   SECTION 2025.250(A).

19           IN RULING ON THE EX PARTE APPLICATION, THIS COURT

20   TAKES NO POSITION ON THE ISSUES OF THE WAIVER OF

21   ATTORNEY-CLIENT PRIVILEGE OR THE TAKING OF DEPOSITIONS OF ANY

22   OF PLAINTIFF'S COUNSEL AS THAT ISSUE IS NOT RIPE FOR REVIEW.

23   NOTICES OF DEPOSITION, REQUESTS FOR PRODUCTION, AND OBJECTIONS

24   HAVE YET TO BE SERVED.

25           THE COURT IMMEDIATELY ORDERS THAT PLAINTIFF'S

26   COUNSEL STUART GROSS OF GROSS & KLEIN SHALL UNMARK ALL FOLDERS

1    AND FILES MARKED FOR DELETION IN THE SIX4THREE DROPBOX ACCOUNT

2    TO PRESERVE ALL FILES AND FOLDERS.  AFTER UNMARKING, MR. GROSS

3    SHALL THEN PROVIDE THE ADMINISTRATOR ACCESS LOG IN AND THE

4    PASSWORD TO THE THIRD PARTY FORENSIC EXAMINER AGREED TO ON THE

5    RECORD.  ERIC FRIEDBERG OF STROZ FRIEDBERG, OR HIS AGENTS, AT

6    (212)981-6536 WHICH IS THE OFFICE OR (914)329-9371 WHICH IS

7    THE MOBILE, OR EFRIEDBERG@STROZFRIEDBERG.COM WHICH IS THE

8    EMAIL FOR THE FORENSIC EXAMINER.

9         UPON RECEIPT OF SAID INFORMATION, THE COURT

10   IMMEDIATELY ORDERS THE FORENSIC EXAMINER TO MAINTAIN CHAIN OF

11   CUSTODY, TAKE ALL MEASURES TO RESTRICT ACCESS TO, AND PRESERVE

12   THE DATA FROM THE SIX4THREE DROPBOX ACCOUNT, INCLUDING BUT NOT

13   LIMITED TO IMAGING, FOR PRESERVATION OF THE EVIDENCE UNTIL

14   FURTHER ORDER OF THIS COURT.

15        THE COURT IMMEDIATELY ORDERS THAT MR. THEODORE

16   KRAMER SHALL NOT OPEN OR ACCESS, IN ANY WAY, THE LAPTOP HE

17   USED TO ACCESS DEFENDANT'S HIGHLY CONFIDENTIAL DOCUMENTS AND

18   TRANSFER THOSE FILES TO THE USB THUMB-DRIVE TO PARLIAMENT

19   UNTIL FURTHER ORDER OF THE COURT.

20        THE COURT IMMEDIATELY ORDERS THAT MR. KRAMER SHALL

21   NOT OPEN, ACCESS, MODIFY, OR DELETE ANY STORAGE OR BACK-UP

22   DEVICES FOR HIS LAPTOP, WHETHER IN PHYSICAL FORMAT THAT IS TO

23   SAY PHYSICAL STORAGE DEVICES.  FOR EXAMPLE, USB THUMB-DRIVE OR

24   IN THE CLOUD.  FOR EXAMPLE, CLOUD STORAGE.

25        MR. KRAMER, TO BE ACCOMPANIED BY PLAINTIFFS' COUNSEL

26   DAVID GODKIN AND STUART GROSS, SHALL MAKE AVAILABLE FOR PICK

1    UP AT GROSS & KLEIN, THE EMBARCADERO, PIER 9, SUITE 100,

2    SAN FRANCISCO, CA 94111 - THE LAPTOP, ALL PHYSICAL STORAGE

3    DEVICES, IDENTIFY IN WRITING ALL CLOUD STORAGE, AND PROVIDE

4    ANY LOG-IN INFORMATION NECESSARY FOR THE FULL AND COMPLETE

5    ACCESS TO ALL DATA IN THE AFOREMENTIONED FORENSIC TO THE

6    FORENSIC EXAMINER NO LATER THAN FRIDAY, NOVEMBER 30TH, 2018,

7    AT 9:00 O'CLOCK P.M.

8            DEFENDANT'S COUNSEL ARE PERMITTED TO BE PRESENT FOR

9    THIS PICK UP.  THE FORENSIC EXAMINER SHALL PICK UP, MAINTAIN

10   CHAIN OF CUSTODY, TAKE ALL MEASURES TO RESTRICT ACCESS TO, AND

11   PRESERVE THE DATA ON THE LAPTOP, ALL PHYSICAL STORAGE DEVICES,

12   AND CLOUD STORAGE, INCLUDING BUT NOT LIMITED TO IMAGING, FOR

13   PRESERVATION OF THE EVIDENCE UNTIL FURTHER ORDER OF THE COURT.

14           MR. KRAMER, TO BE ACCOMPANIED BY MR. GODKIN AND

15   MR. GROSS, SHALL MAKE HIS MOBILE DEVICES AVAILABLE AND PROVIDE

16   ANY LOG IN INFORMATION NECESSARY FOR THE FULL AND COMPLETE

17   ACCESS FOR PRESERVATION OF DATA ON THOSE DEVICES TO THE

18   FORENSIC EXAMINER AT GROSS & KLEIN NO LATER THAN FRIDAY,

19   NOVEMBER 30TH AT 9:00 O'CLOCK P.M.

20           THE FORENSIC EXAMINER SHALL TAKE ALL MEASURES TO

21   PRESERVE THE DATA ON THE MOBILE DEVICES, INCLUDING BUT NOT

22   LIMITED TO IMAGING, FOR PRESERVATION OF THE EVIDENCE UNTIL

23   FURTHER ORDER OF THIS COURT.  DEFENDANT'S COUNSEL ARE

24   PERMITTED TO BE PRESENT FOR THIS DATA PRESERVATION BY THE

25   FORENSIC EXAMINER.  UPON COMPLETION OF THE IMAGING OF THE

26   MOBILE DEVICES, THE FORENSIC EXAMINER SHALL RETURN THE MOBILE

1    DEVICES TO MR. KRAMER.

2             THE COURT ORDERS MR. KRAMER SHALL NOT DELETE ANY

3    DATA FROM HIS MOBILE DEVICES, WHATSOEVER, UNTIL FURTHER ORDER

4    OF THIS COURT.  IF ANY OF HIS MOBILE DEVICES ARE SET TO

5    AUTOMATICALLY DELETE ANY DATA, THE COURT INSTRUCTS MR. KRAMER

6    TO TURN OFF THAT SETTING.

7             THE COURT IMMEDIATELY ORDERS THAT MR. THOMAS

8    SCARAMELLINO, WHO IS A MEMBER OF SIX4THREE'S LEGAL TEAM, SHALL

9    NOT OPEN OR ACCESS, IN ANY WAY, THE LAPTOP OR COMPUTER HE USED

10   TO ACCESS SIX4THREE'S DROPBOX AND THAT MR. SCARAMELLINO SHALL

11   NOT OPEN, ACCESS, MODIFY, OR DELETE ANY PHYSICAL STORAGE

12   DEVICES OR CLOUD STORAGE FROM HIS LAPTOP OR COMPUTER.

13            MR. SCARAMELLINO SHALL MAKE AVAILABLE FOR PICK UP AT

14   THE ADDRESS PROVIDED BY MR. GODKIN, 2674 STATE ROUTE 42,

15   FORESTBURGH, NY 12777 - THE LAPTOP OR COMPUTER, HIS PHYSICAL

16   STORAGE DEVICES, AND IDENTIFY IN WRITING ALL CLOUD STORAGE AND

17   PROVIDE ANY LOG IN INFORMATION NECESSARY FOR THE FULL AND

18   COMPLETE ACCESS TO ALL DATA IN THE AFOREMENTIONED TO THE

19   FORENSIC EXAMINER NO LATER THAN SATURDAY, DECEMBER 1ST, 2018,

20   AT 12:00 O'CLOCK P.M. THE FORENSIC EXAMINER SHALL PICK UP,

21   MAINTAIN CHAIN OF CUSTODY, TAKE ALL MEASURES TO RESTRICT

22   ACCESS TO, AND PRESERVE THE DATA ON THE LAPTOP OR COMPUTER,

23   MR. SCARAMELLINO'S PHYSICAL STORAGE DEVICES, AND

24   MR. SCARAMELLINO'S CLOUD STORAGE, INCLUDING BUT NOT LIMITED TO

25   IMAGING, FOR PRESERVATION OF THE EVIDENCE UNTIL FURTHER ORDER

26   OF THE COURT.

1          THE COURT ORDERS THAT THE FORENSIC EXAMINER SHALL

2     NOT DISCLOSE ANY DATA PRESERVED OR COLLECTED IN THIS ACTION TO

3     ANY PARTY, NON-PARTY, PERSON OR ENTITY, UNTIL FURTHER ORDER OF

4     THE COURT.

5          MR. KRAMER SHALL AUTHENTICATE AND PRODUCE FULL

6     COPIES OF THE EMAILS AND ATTACHMENTS HE PRODUCED AS

7     EXHIBITS TO HIS DECLARATION FILED IN SUPPORT OF PLAINTIFF'S

8     BRIEF IN RESPONSE TO THE NOVEMBER 20TH ORDER, FILED

9     NOVEMBER 26, 2018, TO DEFENDANT NO LATER THAN DECEMBER 1ST,

10    2018, AT 9:00 O'CLOCK A.M.  THIS SHALL INCLUDE, BUT IS NOT

11    LIMITED, TO THE THREE ATTACHMENTS IN EXHIBIT 1 THAT IS QUOTE

12    "SUMMARY OF COMPLAINT.PDF," CLOSE QUOTE FILED CORRECTED

13    OPPOSITION TO INDIVIDUAL DEFENDANTS ANTI-SLAPP.PDF," CLOSE

14    QUOTE OR QUOTE "REQUESTS FOR PRODUCTIONSIX4THREE.PDF" CLOSE

15    QUOTE AND TEXT IDENTIFIED AS HIDDEN BY QUOTE "QUOTED TEXT

16    HIDDEN" CLOSE QUOTE AT EXHIBIT 2, PAGE 2 AND EXHIBIT 5,

17    PAGE 2.  REFER TO THE DEFENSE RESPONSE TO THE NOVEMBER 20TH

18    ORDER AT PAGE 6, LINES 20 TO 21.  THESE EMAILS AND ATTACHMENTS

19    SHALL BE BATES-STAMPED FOR EASE OF FUTURE REFERENCE FOR BOTH

20    PARTIES AND THE COURT.

21          THE PROVISION FOR PRESERVATION OF EVIDENCE IN THE

22    NOVEMBER 20TH ORDER REMAINS IN EFFECT AND IS ORDERED EXTENDED

23    TO APPLY TO ANY STORAGE OR BACK-UP DEVICES FOR ANY MOBILE

24    DEVICES, WHETHER IN PHYSICAL FORMAT OR IN THE CLOUD.  FOR

25    EXAMPLE, THE ICLOUD.

26          GOOD CAUSE APPEARS TO ORDER PRESERVATION OF THE

1   AFOREMENTIONED BASED ON MR. KRAMER'S ADMITTED ACTIONS, THE

2   CLOUD CAST BY PLAINTIFF'S COUNSEL, COUNSEL'S CHANGE IN

3   NARRATIVE IN THE NOVEMBER 29TH LETTER, WHICH IS NOT SUPPORTED

4   BY COMPETENT EVIDENCE.  PLAINTIFF'S COUNSEL'S ASSERTION THAT

5   QUOTE "IT DOES NOT APPEAR THAT MR. KRAMER'S DELETION OF LOCAL

6   COPIES OF THE DOCUMENTS FROM HIS COMPUTER WOULD AFFECT ANY

7   ELECTRONIC EVIDENCE OF HIS PROVISION OF DOCUMENTS, IF ANY

8   EXISTED.  PERIOD.  IT APPEARS THAT THIS INFORMATION, IF IT

9   EXISTED, WOULD BE CONTAINED IN THE SYSTEM LOG OF HIS LAPTOP."

10  PERIOD CLOSE QUOTE.  THAT IS THE NOVEMBER 29TH LETTER AT

11  PAGE 2.

12          MR. KRAMER'S ADMISSION THAT HE QUOTE "DOES NOT

13  RECALL THE EXACT FILES THAT HE TRANSFERRED."  CLOSE QUOTE.

14  THAT IS KRAMER'S DECLARATION IN SUPPORT OF PLAINTIFF'S

15  RESPONSE TO THE NOVEMBER 20TH ORDER, FILED NOVEMBER 26, 2018,

16  AT PAGE 5, LINES 23 TO 25.  AND FOR THE MATTERS DISCUSSED ON

17  THE RECORD.

18          FOR DISCOVERY DISPUTES, THE PARTIES ARE REMINDED OF

19  THE DISCOVERY PROCEDURES SET FORTH IN THE CASE MANAGEMENT

20  ORDER NUMBER 1, PARAGRAPH 11.  SEE THE CASE MANAGEMENT ORDER

21  14, PARAGRAPH 6.  ANY REQUEST FOR A DISCOVERY CONFERENCE SHALL

22  BE DELIVERED TO DEPARTMENT 23 BOTH ELECTRONICALLY AND IN

23  PHYSICAL FORM.

24          PLAINTIFF'S COUNSEL SHALL REMAIN IN THIS ACTION

25  UNTIL FURTHER ORDER OF THE COURT.

26          MR. GODKIN SHALL IMMEDIATELY PROVIDE A COPY OF THIS

1    ORDER TO MR. SCARAMELLINO UPON RECEIPT.

2            LASTLY, THE COURT FINDS THAT ALTHOUGH THE SUMMARY OF

3    FACTS PRESENTED BY DEFENDANT IN ITS EX PARTE AND RESPONSE TO

4    THE NOVEMBER 20TH ORDER IS COMPELLING, IT IS NOT IN AFFIDAVIT

5    FORM.  CODE OF CIVIL PROCEDURE SECTION 20 -- I'M SORRY.  CODE

6    OF CIVIL PROCEDURE SECTION 1211(A) CONTROLS THAT PARTICULAR

7    COMMENT.  AND YOU SHOULD SEE YOUR EX PARTE AT PAGE 2, LINES 24

8    TO 7, LINE 20.  SO THAT'S PAGES 2, LINE 24 THROUGH PAGE 7,

9    LINE 20.  AND THE DEFENSE RESPONSE TO THE NOVEMBER 20TH ORDER

10   AT PAGE 1, LINES 10 TO 4, LINE 5; PAGE 5, LINES 19 TO PAGE 6,

11   LINE 8; AND PAGE 9, LINES 3 TO PAGE 10:5.  FINALLY, PAGE 10,

12   LINE 16 TO PAGE 11, LINE 14.  I EXPECT PLAINTIFF AND THE

13   PLAINTIFF'S COUNSEL TO COOPERATE WITH THE EXPEDITED DISCOVERY.

14           FINALLY, THERE IS A PENDING MOTION FOR ATTORNEY'S

15   FEES THAT'S SCHEDULED FOR DECEMBER 7TH, 2018.  THAT HEARING

16   SHALL BE CONTINUED TO JANUARY 11TH, 2019, AT 9:00 A.M.  SO

17   THERE WILL BE NO DECEMBER 7 HEARING.  THAT HEARING IS

18   CONTINUED TO JANUARY 11, 2019, AT 9:00 A.M.

19           IT IS SO ORDERED.  THE COURT IS IN POSSESSION OF THE

20   ORDER THAT ITS JUST READ FROM.  AND THE COURT IS EXECUTING

21   THIS ORDER IN OPEN COURT.  IT IS SO ORDERED.  AND I'M ALSO

22   ORDERING MY COURTROOM CLERK TO CONFORM THESE ORDERS AND FILE

23   STAMP AND ENDORSE SEPARATE COPIES FOR DELIVERY TO COUNSEL.

24           THE COURT CAN AND WILL MAKE ITSELF AVAILABLE FOR A

25   DISCOVERY -- I'M SORRY -- DISCOVERY.  I'VE BEEN TALKING A LOT

26   TODAY, LADIES AND GENTLEMEN.  AND MY SINCERE APOLOGIES.  I

1    WILL MAKE MYSELF AVAILABLE FOR A DISCOVERY CONFERENCE ON

2    DECEMBER 7TH.  AT THE TIME THAT WE WERE GOING TO HEAR THE

3    MOTIONS.  THAT'S ABOUT AS EXPEDIENT AS I CAN BE.  AND WE'RE

4    TAKING FULL ADVANTAGE OF THAT TIME WE'RE ALLOCATING TO THE

5    ATTORNEY'S FEES MOTIONS.  IT IS SO ORDERED.

6         THANK YOU, EVERYONE.  COUNSEL STAND BY FOR THE

7    DISTRIBUTION OF THE ORDERS THAT HAVE BEEN FILED ENDORSED.  THE

8    COURT IS ALSO GOING TO POST A COPY OF THE ORDER THAT I JUST

9    READ FROM AND SIGNED ON THE DOOR.  THANK YOU VERY MUCH FOR

10   YOUR ATTENTION AND PATIENCE, EVERYONE.  COURT IS IN RECESS.

11        (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

12             ---O0O---

13

14

15

16

17

18

19

20

21

22

23

24

25

26

```
 1   STATE OF CALIFORNIA  )

 2                        )  SS.

 3   COUNTY OF SAN MATEO  )

 4           I, GERALDINE VANDEVELD, OFFICIAL COURT REPORTER,

 5   COUNTY OF SAN MATEO, STATE OF CALIFORNIA, DO HEREBY CERTIFY:

 6       THAT THE FOREGOING CONTAINS A TRUE, FULL AND CORRECT

 7   TRANSCRIPT OF THE PROCEEDINGS GIVEN AND HAD IN THE

 8   WITHIN-ENTITLED MATTER THAT WERE REPORTED BY ME AT THE TIME

 9   AND PLACE MENTIONED AND THEREAFTER TRANSCRIBED BY ME OR AT MY

10   DIRECTION INTO LONGHAND TYPEWRITING AND THAT THE SAME IS A

11   CORRECT TRANSCRIPT OF THE PROCEEDINGS.

12              DATED:  DECEMBER 3, 2018

13

14

15              GERALDINE VANDEVELD, C.S.R. #8634
                OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25

26
```