GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20** <br><br> Judge:  Hons. Vince Chhabria and Jacqueline Scott Corley <br> Courtroom 4, 17th Floor |

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.      The stay imposed by Pretrial Order 20 includes a discovery stay. ............................... 2

    II.     This case is about information users share with their friends on Facebook................. 3

          A.     The four live theories all concern data users shared with their Facebook friends................................................................................................................. 3

          B.     The threshold "global issues" addressed in the Order show that the actionable claims relate only to information users shared on Facebook........... 4

    III.    Facebook produced all data Plaintiffs shared on Facebook; no other user data is relevant. ...................................................................................................................... 6

    IV.    The Court should deny Plaintiffs' "Cross-Motion to Compel." ................................. 10

CONCLUSION ....................................................................................................................... 10

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Meyers v. Cty. of Sacramento*,
  2020 WL 207213 (E.D. Cal. Jan. 14, 2020)........................................................................................2

*Mujica v. AirScan, Inc.*,
  771 F.3d 580 (9th Cir. 2014)............................................................................................................3

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011)..........................................................................................................2

Gibson, Dunn &
Crutcher LLP

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

## INTRODUCTION

The lawsuit Plaintiffs describe is not this case.  This case is about ***information sharing***. Specifically, it concerns sensitive information ***that users shared with their Facebook friends*** and that third parties allegedly accessed as a result of friend sharing, whitelisting, and integration partner agreements.  Pretrial Order 20 is clear on this point, and Plaintiffs do not identify a single line in Judge Chhabria's comprehensive order, much less in their own allegations, that supports their description of the case that survived dismissal.

The Order explains on its first page:  "This lawsuit . . . is about Facebook's practice of ***sharing*** its users' personal information with third parties."  Dkt. 298 ("Order") at 1 (emphasis added).  It then says that each of the four live theories concerns "***substantive and revealing content that users intended only for a limited audience*** [*i.e.*, their Facebook friends], such as their photographs, videos they made, videos they watched, their religious and political views, their relationship information, and the actual words contained in their messages."  *Id*.; *see also id.* at 7, 13, 17.  The user data relevant to those theories consists of "***information [users] make available to their friends on [Facebook]***.  *Id*. at 1.

Plaintiffs do not dispute that Facebook produced all of the information the Named Plaintiffs ever shared on Facebook.  These productions consist of ***more than one million pages of data*** and necessarily include any data Facebook shared under the live theories.  But, Plaintiffs insist they are entitled to any other data that has ever crossed Facebook's servers that relates in any way to any Named Plaintiff and all derivative materials drawing on this data.  Plaintiffs seek these materials even if the underlying data is not associated with any user and even if they were never shared with any third party. Plaintiffs do not even attempt to explain why they would need such data in a case concerning information ***they shared on the Facebook platform*** and that Facebook allegedly shared beyond the audience Plaintiffs intended.  Instead, Plaintiffs openly admit that they seek these extraneous materials not to pursue live claims, but to resuscitate stayed and dismissed theories or to search for new ones.

Plaintiffs largely avoid the Court's instruction to brief "what the scope of discovery is based on the claims in Judge Chhabria's ruling [Pretrial Order 20]."  9/4/2020 Hr'g Tr. at 5:8-10.  Instead, Plaintiffs devote the majority of their brief to side issues and seek to compel Facebook to produce all documents responsive to five RFPs that are not before the Court.  The Court should disregard these diversions, conform discovery to the four operative theories, and deny Plaintiffs' motion to compel.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

**ARGUMENT**

**I.      The stay imposed by Pretrial Order 20 includes a discovery stay.**

Plaintiffs take the surprising position that Pretrial Order 20 sets virtually no bounds on the scope of discovery in this case and allows them to explore theories Judge Chhabria stayed or dismissed.[1]

Plaintiffs' position makes no sense.  When a stay is in place, it "include[s] a stay of discovery." *Meyers v. Cty. of Sacramento*, 2020 WL 207213, at *1 (E.D. Cal. Jan. 14, 2020).  Judge Chhabria stayed all but Plaintiffs' core theories because Plaintiffs filed a 1,440-paragraph pleading.  As he explained, "it seems the plaintiffs sought to identify anything Facebook has ever been reported to have done wrong . . . [and] the presence of so many disparate and vague allegations ma[de] it nearly impossible for Facebook to meaningfully respond to all of them, much less for the Court to effectively address them."  Order at 5-6.  In order to avoid "bogging the case down at the pleading stage for years," *id.* at 6, Judge Chhabria therefore issued an opinion regarding Plaintiffs' core allegations, without addressing most of their improperly pleaded theories, which he stayed, *id.*  Judge Chhabria surely did not intend to allow discovery on hundreds of "disparate and vague allegations" that did not satisfy Rule 8.  The very point of the stay was to focus this case—not to allow Plaintiffs to explore "anything Facebook has ever been reported to have done wrong" without stating cognizable claims.

Plaintiffs even suggest Pretrial Order 20 allows discovery to "reviv[e]" claims dismissed with prejudice.  Opp'n at 6 n.3.  To support this curious position, Plaintiffs cite a footnote in Judge Chhabria's analysis of Plaintiffs' deceit by concealment claim.  *Id*. (citing Order at 37 n.21).  Judge Chhabria held that Plaintiffs stated a plausible claim arising from Facebook's alleged practices concerning whitelisting and integration partners.  But he held the claim did not satisfy Rule 9(b)'s heightened pleading standard with respect to friend sharing and Facebook's enforcement measures.  He then said in a footnote that dismissal of a subset of the claim would not "preclude . . . plaintiff[s] from seeking revival if discovery reveals a factual basis that justified reconsideration."  Order at 37 n.21.  Judge Chhabria cited *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011), which holds a plaintiff who fails to satisfy the PLRA's heightened pleading standard may potentially seek revival if other case-related discovery later allows the plaintiff to satisfy the

---

[1]   In addition to the discovery Plaintiffs seek from Facebook, Plaintiffs have served overbroad subpoenas on 27 third parties.  These parties also require clear guidance as to the scope of discovery.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

PLRA's heightened pleading standard.  Judge Chhabria certainly did not intend this footnote to create a gaping hole allowing discovery on hundreds of allegations that did not survive dismissal.  *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014) ("To the extent [earlier cases] suggest[] that courts retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, it is simply incompatible with *Iqbal* and *Twombly*.").

Pretrial Order 20 plainly defines the scope of discovery in defining the scope of the case.

## II.      This case is about information users share with their friends on Facebook.

A plain reading of Pretrial Order 20 explains the scope of the case Judge Chhabria allowed to move forward.[2]  Plaintiffs say the Order describes this case as concerning any data Facebook receives or infers about users and how that data may be used to target them.  To support this position Plaintiffs quote vague passages from the Order stating the case concerns "sensitive information."  Plaintiffs then say Judge Chhabria did not define "sensitive" and ask the Court to interpret the term to include any data Plaintiffs believe to be personal—including information they provide to third parties, information third parties collect through cookies, public records, and even inferences Facebook draws.  Opp'n at 4.

Plaintiffs disregard what Pretrial Order 20 actually says.  It describes "sensitive information" to be "substantive and revealing content that users intended only for a limited audience," and clarifies that this data is "**information [users] make available to their friends on [Facebook]**."  Order at 1.  To read the ruling otherwise would expand the case far beyond what Judge Chhabria considered and would also raise a host of thorny legal questions his Order does not address.

### A.      The four live theories all concern data users shared with their Facebook friends.

As discussed, Pretrial Order 20 allows four theories of relief to move forward.  Each theory concerns information users shared with their Facebook friends.

*Friend sharing*.  Friend sharing was a capability through which users could share with apps information their friends posted and made available to their Facebook friends.  Plaintiffs do not dispute

---

[2]    Plaintiffs disingenuously argue that Facebook takes an "unduly narrow" view of discovery, citing a comment Judge Chhabria made before discovery began advising Facebook to produce materials regarding "friends' information and friends' of friends information."  Opp'n at 13.  Facebook has now produced nearly 1.5 million pages of documents, before the parties have even reached a search term agreement, including all information the Named Plaintiffs shared with their friends and friends of their friends.  Those productions also include all of the Facebook documents produced to the FTC in response to its document requests in two related investigations.  They also include documents produced to a host of other government actors in related actions responsive to Plaintiffs' RFPs.  In addition to these materials, Facebook proposed search terms hitting on millions of additional documents.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

this.  Friend sharing underlies the Cambridge Analytica events, it has been hotly litigated, and there is no dispute as to what it is about.  The Order explains: "[W]hen users accessed apps on the Facebook Platform, the app developers were not merely able to obtain information about the users they were interacting with; [but] were also able to obtain any information about the users' Facebook friends that the users themselves had access to," "such as photographs, videos they watched, religious preferences, posts, and even sometimes private one-on-one messages sent through Facebook." *Id*. at 6-7.

*Whitelisting*.  Whitelisting is an extension of friend sharing and is about the same data. *Id*. at 8.

*Integration Partner Agreements.*  Facebook allegedly "[s]har[ed] sensitive user information with business partners," through a list of "integration partnerships," to integrate Facebook with devices, websites, and social-media platforms.  *Id*. at 8-9.  As with the other theories, the "sensitive user information" at issue is "substantive and revealing content that users intended only for a limited audience [i.e. their Facebook friends]." *Id*. at 1.  The purpose of these agreements was to allow users to integrate their Facebook activities *that they shared* on Facebook with other platforms and sites.

Plaintiffs say the Order allows claims relating to integration partners to proceed as to some broader set of "sensitive information" that they find personal in nature.  Opp'n at 7.  Plaintiffs provide no support for this assertion; the Order describes this theory as involving the same "sensitive user data" underlying the other theories of relief.  And it must.  As discussed below, the Order holds that Plaintiffs demonstrated standing, a reasonable expectation of privacy, and a lack of consent only with respect to Facebook's alleged practice of sharing information users shared with their Facebook friends.

*Enforcement*.  This theory relates to how Facebook enforced its data-use policies with respect to data third parties obtained through friend sharing, whitelisting, and integration partner agreements, and it concerns the same data that users shared with their Facebook friends.  Order at 9.

**B.     The threshold "global issues" addressed in the Order show that the actionable claims relate only to information users shared on Facebook.**

Pretrial Order 20 addressed various "global issues" and holds Plaintiffs demonstrated a reasonable expectation of privacy, standing, and lack of consent only with respect to Facebook's alleged practice of sharing with third parties information users shared with their friends on Facebook.

*Expectation of privacy*.  Pretrial Order 20 addresses Facebook's argument that Plaintiffs were not injured, and therefore lack standing, because they did not have a reasonable expectation of privacy

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

over information they share with their Facebook friends. *Id*. at 1 ("Facebook argues that people have no legitimate privacy interest in information they make available to their friends on social media."). With respect to users' privacy expectations, Pretrial Order 20 holds: "the issue of whether users have a reasonable expectation of privacy ***in information they share with their social media friends*** is best understood as relating to the merits, not standing." *Id*. at 10-11 n.2 (emphasis added).  On the merits, the Order holds that "[w]hen you share sensitive information with a limited audience . . . you retain privacy rights and can sue someone for violating them." *Id*. at 2.  It then analyzes whether users retain a reasonable expectation of privacy over information ***they share with their friends***, *see id*. at 10-12, and concludes: "social media users can have their privacy invaded if sensitive information ***meant only for a few dozen friends*** is shared more widely," *id*. at 11.

Pretrial Order 20 is so clear that this case concerns information that users shared with their Facebook friends that it goes out of its way to say *sua sponte*:  "It seems quite possible that a user whose settings allow information to be shared not only with their friends, but friends of friends, loses any expectation of privacy." *Id*. at 11 n.3.  Nowhere does Pretrial Order 20 consider whether users maintain a reasonable expectation of privacy over information beyond what users share on Facebook (as Plaintiffs wrongly suggest) such as information users provide third parties, public records, information third parties obtain through cookies, or information Facebook "infers" about users.

***Standing***.  With respect to standing, Pretrial Order 20 holds:  "The alleged injury is 'concrete' largely for the reasons already discussed – if you use a company's social media platform ***to share sensitive information with only your friends***, then you suffer a concrete injury when the company disseminates that information widely." *Id*. at 17.  The Order goes on to say that Plaintiffs' injuries are sufficiently particularized with respect to which third parties allegedly received their data because, "[i]f, as alleged in the complaint, ***Facebook made users' 'friends only' information readily available*** to such a broad swath of companies . . . it is virtually inevitable that some of these companies obtained information on the named plaintiffs." *Id*. at 18.  The Order did not hold—or even consider—whether Plaintiffs have standing to sue Facebook with respect to information users did not share on Facebook.

***Consent***.  On the issue of consent, the Court addressed whether Plaintiffs consented to the conduct underlying their claims because they "agreed, when they signed up for their accounts, that

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Facebook could disseminate their 'friends only' information in the way it has done." *Id.* at 18.  Pretrial Order 20 holds that judicially noticeable materials demonstrate that a subset of users consented to sharing their "friends only" information through friend sharing, but do not establish at the pleading stage that all users consented to sharing friends-only information through friend sharing, whitelisting, and integration agreements.  *Id*. at 18-29.  The Order did not consider whether Plaintiffs consented to sharing information they did not share on Facebook.

The Order is clear that this case is about sensitive information users made available to their friends on Facebook and third parties allegedly accessed.  Discovery must conform to these theories.

III.     **Facebook produced all data Plaintiffs shared on Facebook; no other user data is relevant.**

Facebook produced ***more than one million pages of content and information*** related to the Named Plaintiffs.[3]  ***Those materials include everything each Named Plaintiff ever shared on Facebook*** (unless they deleted it).  This includes, but is not limited to, the "Download Your Information" ("DYI") file that Facebook makes available to users,[4] plus *additional* information.

Plaintiffs do not dispute that the produced materials include any data users shared with their Facebook friends (sensitive or otherwise).  Yet, Plaintiffs demand that Facebook search *millions* of disaggregated data sets for any data to have ever crossed Facebook's systems relating to a Named Plaintiff and any derivative materials drawing on that data—such as data sets tracking hours of peak user activity to monitor strains on Facebook's system.  They demand such materials without regard for whether they were **_shared_** with any third party, much less under a live theory.  To support this position, Plaintiffs misinterpret a handful of Facebook documents,[5] but their argument boils down to the following:  Facebook has documents drawing on data relating to users; therefore, Facebook must search

---

[3]  Since filing its opening brief, Facebook produced approximately 250,000 additional pages of information related to Named Plaintiffs who were added to the case in August.

[4]  Plaintiffs assert that the DYI data is not useful because it does not display on an item-by-item basis the audience that Plaintiffs set for each of their posts.  Facebook agreed to investigate whether it could produce this data for relevant posts—bearing in mind that the request involves granular data for *more than a million pages* of activity.  Facebook also reminded Plaintiffs that their accounts display this information.  If Plaintiffs believe the audience set to a particular post is critical evidence for their case, they could screen-shot that information from their accounts and produce it.  They could also identify particular posts to Facebook so that Facebook can produce the relevant information.

[5]  Because the Court ordered the parties not to submit declarations or evidence, 9/4/2020 Hr'g Tr. at 5:8-10, 18-22, Facebook does not here submit declarations or documents to dispute Plaintiffs' characterization of the materials they cite.  If the Court is inclined to issue a ruling relying on the exhibits Plaintiffs submitted, Facebook respectfully requests permission to do so.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn &
Crutcher LLP

for and produce any materials drawing upon any data it has ever collected or created that relates in any way to a Named Plaintiff.  The Court should reject this position, which largely asks Facebook to search for materials that are out of scope and consist largely of data already produced in other formats.

**Data the Named Plaintiffs did not share on Facebook is out of scope,** including public records, data Plaintiffs shared with third parties, and information created by Facebook.  Facebook produced all of the information the Named Plaintiffs shared on Facebook (sensitive or otherwise).  These productions necessarily include any information shared under the live theories.[6]

Plaintiffs say the case is about data Facebook creates and that third parties share with Facebook that is used to draw "inferences" about users.  For instance, Plaintiffs may allow websites to collect data about their shopping habits through cookies.  Those sites then might share this data with other parties (including Facebook) to better place the site's advertisements.  As discussed above, nothing in Pretrial Order 20 supports Plaintiffs' argument that this type of data is part of this lawsuit.  This would be a very different case if—as Plaintiffs say—it were about Facebook sharing information that third parties passed on to Facebook.  To establish this sort of "third party data" claim, Plaintiffs would have had to allege (and prove) the nature of each of their relationships with the specific third parties at issue, the circumstances under which those third parties obtained their data, whether each individual user consented to that third party sharing data with Facebook, the circumstances under which the data was provided to Facebook, and so on.  None of that is at issue here and nothing in Pretrial Order 20 suggests it is.  Nor could Plaintiffs conceivably establish facts of this nature on a class-wide basis.

Plaintiffs seem to concede they demand these materials because "the very purpose of collecting all of this data . . . is to use it to target users."  Opp'n at 12.  As Plaintiffs admit, Pretrial Order 20 dismisses their targeted advertising theory.[7]  To the extent any advertisers received sensitive user data through friend sharing, whitelisting, or integration agreements, that user data was already produced.

---

[6]   To describe the data Plaintiffs believe Facebook maintains, Plaintiffs cite their Exhibit B at page 9, which was prepared by an employee in 2014 and regards Facebook's ads platform.  The document does not reflect Facebook's standard terminology, nor does Facebook agree with Plaintiffs' character-ization of the document.  In any case, Facebook does not dispute that it receives data from third par-ties in connection with its ads platform and maintains internal analyses which rely on user data.

[7]   Plaintiffs walk back their position that they need discovery to pursue their dismissed "targeted advertising" and "psychographic marketing" theories.  Opp'n at 11.  But Plaintiffs have been arguing for a year that these theories justify their demands for every piece of information Facebook collects and infers about users and took this position in the recent joint status updates that prompted this brief-ing. *See* 8/13/2020 Status Update at 2-3, 9, Dkt. 495; 7/30/2020 Status Update at 3, Dkt. 484.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

In any case, as discussed in its opening brief and below, Facebook actually produced the majority of data it receives from third parties in the off-Facebook Activity portion of the DYI materials.

**Data not shared through one of the four theories is out of scope.**  Plaintiffs say they provide evidence that Facebook shares data beyond what users share on Facebook.  Opp'n at 9-10.  Even if that were true, it is not relevant to this lawsuit.  The live theories concern data users shared with their Facebook friends that third parties accessed via friend sharing, whitelisting, or integration agreements.

In any case, the documents Plaintiffs cite describe Facebook's data *sources*; they say nothing about whether or how Facebook *shares* information.  Of note, Plaintiffs claim their Exhibit C "confirms that Facebook shares [the data they seek] with third parties."  Opp'n at 9.  Exhibit C is an email outlining *hypothetical* platform capabilities—it does not discuss what data Facebook actually shared.

**The integration partner theory does not entitle Plaintiffs to all data from third parties.** Plaintiffs suggest Facebook must locate and produce all data points it has ever received from any third party regarding a Named Plaintiff because Facebook's integration partner agreements were built in part on "data reciprocity."  Opp'n at 11.  This argument is a red herring and misrepresents what "data reciprocity" means.  Facebook did not, as Plaintiffs suggest, have agreements with integration partners to trade user data.  Data reciprocity arrangements allowed users to post their Facebook activities to third-party platforms if the third-party platform also allowed its users to post their activities to Facebook.  Plaintiffs acknowledge this.  *See* SACC ¶ 657(g) ("'Reciprocity' agreements . . . requir[ed] Apps that used data from Facebook to allow their users to share their data back to Facebook"); *see also id.* ¶¶ 239, 745.  Any user data relating to that type of sharing was produced.  Again, Facebook produced everything the Plaintiffs shared on Facebook.  This includes any Facebook activities Plaintiffs *elected* to share on other platforms and any off-Facebook activities Plaintiffs *elected* to share on Facebook.  In any event, even if some other data from integration partners existed, only data received from *those partners* could even possibly be relevant—not data from thousands of other third parties.[8]

**Plaintiffs' SCA and VPPA claims do not require additional data.**  Plaintiffs contend this case concerns data beyond what they shared on Facebook because Pretrial Order 20 did not dismiss

---

[8]    Plaintiffs concede they seek any such data to prove damages.  If the Court is inclined to require broad discovery to support damages, Facebook respectfully requests the opportunity to submit briefing regarding why any such discovery should be bifurcated from liability-related discovery.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

their claims under the Stored Communications Act ("SCA") and Video Privacy Protection Act ("VPPA").  Opp'n at 4-5.  Plaintiffs highlight that their SCA claim turns, in part, on "whether the shared information includes the contents of an electronic communication."  *Id*. at 5.  But the sensitive data at issue includes "private one-on-one messages" sent on Facebook.  Order at 17; *see id*. at 1, 32.  Similarly, Plaintiffs' VPPA claim survived dismissal on the basis that Facebook shared "information about the videos that users received in their private [Facebook] messages and about videos they 'liked.'"  *Id*. at 34.  Plaintiffs' messages and any videos they shared or liked were produced.

**The additional data Plaintiffs seek cannot even be reasonably collected**.[9]  Facebook understands Plaintiffs seek two forms of data: (i) any additional data regarding users' off-Facebook Activity provided by third parties, and (ii) any derivative materials that draw from user data.  Again, these materials are not relevant to any live theory.  Facebook also cannot reasonably identify them.

With respect to off-Facebook Activity, as Facebook explained in its opening brief, the produced DYI materials include the vast majority of data Facebook receives from third parties.  It is not clear what else Plaintiffs seek or how it could be relevant.  Any off-Facebook Activity provided by third parties that is *not* included in the DYI materials is data Facebook has not linked to a particular user or data that is so granular that it is preserved only temporarily.  There is no centralized way to search for either type of data.  To the extent it exists, it is organized by the third parties who provided it.  Facebook would therefore need to review every data set it has received from thousands of third parties and then attempt to link to the Named Plaintiffs data points it previously did not associate with any user.  Such an exercise is unlikely to be fruitful or at all useful, particularly on a class-wide basis.

Facebook also explained that, within 90 days, any user data not included in the DYI materials is disassociated from the user's ID, anonymized entirely, or deleted (depending on the nature of the data and any business reasons for retaining it).  Plaintiffs argue that Facebook should *still* be able to find any derivative materials drawing from data relating to any Named Plaintiff because data disassociated from a user's ID can sometimes be linked back to the user's account.  Plaintiffs' explanation of this process is oversimplified, incorrect, and ignores that much of the data they demand

---

[9]   Plaintiffs say Facebook did not prove undue burden because it did not submit declarations or evidence.  The Court instructed the parties not to submit such materials.  9/4/2020 Tr. at 5:8-10, 18-22.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

is fully anonymized or not retained at all.[10]  The argument also misses the point.  There is no way for Facebook to run a centralized search for a user's ID, random ID, or any "hashed data" identifiers across millions of data sets, which are largely used for business analytics (like scoping infrastructure needs).  The only way to search these tables is to open all of them and search each to find any data relating to a particular user, whether by user ID or otherwise.  The issue is opening and searching each table.[11]

To be clear, Facebook is not—as Plaintiffs suggest—urging the Court to issue a ruling regarding the scope of discovery based on undue burden.  Facebook is highlighting that this is not a situation in which there are marginally relevant materials that are easy to sweep into an ongoing collection.  The user data Plaintiffs seek has nothing to do with the four operative theories, most of it was actually produced, and any additional data would be virtually impossible to locate.  If Plaintiffs are able to identify some specific type of data about user activity that is relevant to the case, Facebook will search for that data.  But Plaintiffs' position that Facebook must search the entire company for every document including any data relating to a Named Plaintiff is simply not reasonable.

**IV.     The Court should deny Plaintiffs' "Cross-Motion to Compel."**

Plaintiffs style their brief as a "cross-motion to compel" compliance with five RFPs and criticize Facebook for not submitting declarations and evidence about these requests.  The Court should disregard this diversion, which puts the cart before the horse.  The Court directed the parties to submit "no declarations," as this briefing is "just a legal question as to what the scope of discovery is based on the claims in Judge Chhabria's ruling."  9/4/2020 Tr. at 5:8-10, 18-22.  Facebook told Plaintiffs it will produce materials responsive to the RFPs they identify that are in Facebook's possession and relate to the operative theories.  The Court must resolve this threshold legal issue before it can consider (on a full evidentiary record) whether Facebook produced the relevant evidence responsive to specific RFPs.

**CONCLUSION**

The Court should enforce the stay Judge Chhabria imposed, allow discovery only on the four operative theories of relief detailed in Pretrial Order 20, and deny Plaintiffs' cross-motion to compel.

---

[10]  Plaintiffs' Exhibit B, which they cite on page 12 of their brief, describes the ability to reidentify data points that remain live on a user's Facebook page.  This live data has already been produced.

[11]  Plaintiffs did not ease the burden of searching millions of data sets by identifying 10 Named Plaintiffs they *intend* to identify as class representatives.  In any case, the other 14 Named Plaintiffs have not withdrawn their claims and have reserved their rights to proceed as class representatives.

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20

Gibson, Dunn & Crutcher LLP

DATE:  October 8, 2020

Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:  _Orin Snyder_
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS REQUEST TO ENFORCE THE
PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20