Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' RESPONSE IN REPLY TO DEFENDANT FACEBOOK, INC.'S REQUEST TO ENFORCE THE PARTIAL STAY OF DISCOVERY IN PRETRIAL ORDER NO. 20 AND IN SUPPORT OF CROSS-MOTION TO COMPEL**<br><br>Judges: Hon. Vince Chhabria and Hon. Jacqueline S. Corley<br>Hearing Date: TBD<br>Hearing Time: TBD |

I.  INTRODUCTION

This discovery dispute concerns sensitive user information that Facebook has shared with third parties without users' consent. The dispute is important but narrow now that Facebook has disclaimed any argument about undue burden. Dkt. 537 ("FB Reply") at 10 ("To be clear, Facebook is not—as Plaintiffs suggest—urging the Court to issue a ruling regarding the scope of discovery based on undue burden."). The legal question is whether the information Plaintiffs seek is relevant to any party's claim or defense.

The answer to this question is a straightforward "yes." As Judge Chhabria described in Pretrial Order No. 20, Dkt. 298 (the "Order"), this case is about whether Facebook acted unlawfully in making sensitive user information available to third parties and in failing to do anything meaningful to prevent third parties from misusing the information they obtained. Dkt. 298 ("Order") at 3. While it is true that the focus of the Order was sensitive information posted by users and then wrongfully shared by Facebook, the Court's reasoning applies equally to other forms of information about users wrongfully disclosed by Facebook to third parties, including information obtained by Facebook through its data sharing agreements with off-platform entities.

Documents that Facebook has produced show ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ yet Facebook has taken upon itself to exclude the second and third sources from discovery. This does not make sense. Information derived from a user's activity is relevant because if a user restricted access to private content, like a message about a medical condition, then it logically follows that information derived from that content—like the existence of a disease—was also meant to be private and not shared indiscriminately with third

parties. Equally relevant is sensitive information originally generated off-platform and then shared with or made available to third parties. Facebook cannot share such information without users' consent. Such improper sharing is thus actionable for precisely the same reasons as the sharing or making available of users' on-platform activity.

Discovery has shown that Facebook ██████████████████████████ ████████████████████████████████ Opp'n Ex. C at 2. Plaintiffs' request for this information, therefore, is entirely consistent with the four categories of wrongdoing recognized by the Court. Regardless of the source or how Facebook acquired it, sensitive user information is relevant if Facebook shared it without users' consent.

Seeking to make simple issues complicated, Facebook dramatically overstates what Plaintiffs seek. To be clear, Plaintiffs are not interested in every piece of data Facebook collected from and about them. Instead, for just ten Named Plaintiffs, Plaintiffs respectfully request that the Court rule that the sensitive information from and about them that Facebook shared with or made accessible to third parties is relevant to this action.

## II.     ARGUMENT

**A.     The discovery sought by Plaintiffs is directly relevant to their claims.**

According to Facebook, whether it collects and then wrongfully shares Plaintiffs' off-platform information or information that it derives from their on- and off-platform activity is categorically irrelevant to this case. At this juncture, the question before the Court is not whether certain discovery is disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *see also* FB Reply at 10 (noting that Facebook is not advancing an "undue burden" argument). Rather, the question is simply whether the discovery that Plaintiffs seek "is relevant to any party's claim or defense." *Id.*

With regard to off-platform activity, as Plaintiffs explained in their prior brief, the nature of their claims and the reasoning under which they were upheld make it relevant whether Facebook improperly shared Plaintiffs' off-platform information with third parties. Opp'n at 2-5. In short, the Order upheld claims not because of where information came from, whether on- or

off-platform, but because of the nature of the information and what Facebook did with it. *Id.* at 4. Facebook's arguments to the contrary hang on a very narrow and legally incorrect reading of the Court's Order.

   *1. The claimed discovery stay.* Facebook argues that Plaintiffs are trying to get around a discovery stay that the Order imposed when it stayed certain claims. But this argument assumes that Plaintiffs are seeking discovery relevant to *stayed claims*, and Facebook does not point to any stayed claims that Plaintiffs are trying to revive. The suggestion that Plaintiffs are seeking "discovery on hundreds of allegations that did not survive dismissal," Reply at 3, is similarly without merit; Facebook does not point to any dismissed allegations that Plaintiffs are trying to revive. And contrary to Facebook's arguments, the discovery Plaintiffs seek—exactly what information about these ten plaintiffs Facebook possesses and shared with third parties—will help establish (1) the threshold fact of sharing that sensitive data, which establishes the elements of the breach of contract and good faith and fair dealing claims, as well as statutory and privacy claims; (2) the scope of the harm inflicted upon the Plaintiffs, which also addresses elements of Plaintiffs' privacy claims; and (3) damages and unjust enrichment. All of these claims were sustained. Facebook's argument concerning the purported discovery stay is thus a red herring.

   *2. The Order's discussion of on-platform activity.* Next, Facebook says that in describing Facebook's wrongdoing, the Order confines itself to the improper sharing of what users did on the Facebook platform. Facebook considerably overstates its case. When discussing the sharing of information with business partners, for example, the Order referred simply to "information about [Facebook's] users" and "information about users' activity."[1] Order at 8. These phrases do not discriminate between on- and off-platform activity, and do not define "sensitive information" to encompass only information shared on Facebook's platform.

   The question, then, is whether the discovery is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). And here, as Plaintiffs have explained, Facebook's improper sharing of

---

[1] Rather than citing the Order's specific discussion of information-sharing with business partners, Facebook quotes the Order's general description of Facebook's misconduct from the introductory paragraph. Reply at 4 (quoting Order at 1).

user information, whether that information was derived from on- and off-platform activity or obtained from off the platform, is relevant to the legal theories upheld at the pleading stage, which turn not on how or where the information was originally generated, but on what kind of information it was and whether Facebook shared it with third parties. Opp'n at 2-5. Indeed, Facebook itself is seeking discovery from Plaintiffs about their activity on other social media sites, taking the position that users' off-platform activity is relevant to the claims and defenses here. Def. Facebook, Inc.'s 2d Set of Interrogs. to Pl. T. King Nos. 4-5. (No. 4, "Identify all Social Media Platforms other than Facebook that You have used to share personal family photographs or videos."; No. 5 "Identify all Social Media Platforms other than Facebook that You have used to share personal perspectives regarding politics, religion, relationships, work, or family.) As Facebook's own discovery requests demonstrate, Facebook believes information originally generated off platform is relevant here.

The most that can be said of the Order is that it does not focus on the sharing of information derived from off-platform activity. Discovery, however, has shown that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp'n Ex. B at FB-CA-MDL-00213424; Opp'n Ex. C, FB-CA-MDL-00178908 at 2. That such discovery should shape Plaintiffs' claims is entirely appropriate. *See Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) ("Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Accordingly, any sensitive information that Facebook shared with or made accessible to third parties is relevant here, regardless of its source.

    **3. *Legal questions.*** Facebook argues that its sharing of off-platform user information is irrelevant because it would raise legal questions that the Order did not consider. This argument is incorrect in several different respects. For one thing, Facebook does not justify the premise of the argument—it does not explain why off-platform activity is irrelevant to or not part of Plaintiffs'

claims merely because it may raise (some) distinct legal issues.

There are other flaws in Facebook's argument as well. While it asserts that off-platform activity raises hitherto unaddressed questions about a reasonable expectation of privacy, it forgets that a reasonable expectation of privacy is not even relevant to some of Plaintiffs' claims (for example, their claims under the VPPA, SCA, or their claim for breach of contract). Even for the claims that do involve a reasonable expectation of privacy, such as the invasion-of-privacy torts under California law, Plaintiffs do not claim that *all* off-platform information is relevant. Information would be relevant if—like Plaintiffs' on-platform activity—it was shared only with a "limited audience." Order at 1. Such sharing would be improper under the Order's reasoning without raising any new issues.

For similar reasons, the Court should reject Facebook's argument that off-platform information raises new issues about standing. Plaintiffs have standing, the Order concluded, not because of issues peculiar to Facebook posts, but for a more general reason: because their "sensitive information was disseminated to third parties in violation of their privacy." *Id.* at 14. That rationale applies equally to sensitive information generated off the Facebook platform that Facebook improperly shared with third parties.

Facebook also contends that the improper sharing of off-platform information would raise distinct legal issues about consent. This argument does not make sense. The Order's rulings about consent turned on what Facebook told its users about how their "information" could and could not be shared. *See* Order at 25-29. And Facebook's definition of information—"facts and other information about you, including actions taken by users and non-users who interact with Facebook," Order, App. A at 10—is capacious enough to include information generated off the platform. To show that data was shared beyond the scope of users' consent, Plaintiffs need to understand *what* was shared. Indeed, at trial, how can Plaintiffs point to data that was shared without their consent if Facebook has not produced it? Even with regard to the one source of data Facebook has produced—users' on-platform activity—Facebook has refused to produce discovery showing what it shared with third parties. Thus, Facebook's claim that it has shared all

user data that is relevant to Plaintiffs' claims is not remotely accurate.

    **4. *Information derived by Facebook*.** Finally, Plaintiffs note that one of the sources of discovery they seek—information derived by Facebook from both on- and off-platform activity and then improperly shared with third parties—goes mostly unaddressed in Facebook's reply. And Facebook is similarly almost wholly silent about information derived from *on-platform* activity—it simply fails to explain why discovery about such information is not fairly included in this case. It is easy to see why this information is relevant. If it was improper for Facebook to share a user's sensitive post, it was equally wrong for Facebook to share inferences and other information it derived from that post.

**B.  Discovery and publicly available information confirm Facebook has not produced information it collects and shares about the ten Named Plaintiffs.**

    Facebook contends that Plaintiffs were not permitted to submit any evidence in support of their opposition brief. *See* FB Reply at 6, n. 5; 9, n. 9;10 (citing 9/4/2020 Tr. at 5:8-10; 18-22). In fact, the Court did not prohibit either party from submitting discovery that would aid the Court's resolution of this issue. Rather, it rejected Facebook's argument that a four-month briefing schedule was necessary because of the purported need to obtain client declarations. Tr. at 5:7-22. Documents produced reflecting the types of data Facebook collects ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and shares with third parties is obviously helpful to the Court in making its determination of whether Plaintiffs are entitled to such data. The Court asked Plaintiffs what data they are seeking, and the exhibits submitted by Plaintiffs help answer that question.

    In any event, Facebook relies heavily on numerous factual assertions about what data it collects, how it does so, its volume, how it is used and conclusory statements about its relevance. But it provides no support for those assertions and few specifics. That is, Facebook concedes that it possesses data relevant to the Named Plaintiffs, but it has never even categorically described or given examples of that data, contrary to Fed. R. Civ. Proc. 34(b)(2)(C). It is thus left to Plaintiffs to piece together what Facebook is withholding, using both publicly available documents and

PLAINTIFFS' RESPONSE IN SUPPORT OF      6      MDL NO. 2843
CROSS-MOTION TO COMPEL      CASE NO. 18-MD-02843-VC-JSC

what Facebook has produced.


Opp'n Ex. C at 2 (emphasis added). The email also ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.*

Facebook's response to Exhibit C is that the email discussion is "hypothetical." FB Reply at 8. But a reasonable reading of this document is that it describes Facebook's then-existing data collection capabilities. And even if Facebook were correct, Plaintiffs would still be entitled to discovery to determine whether Facebook effectuated its supposedly hypothetical plan. Facebook's position is also contradicted by information in the public record. Specifically, in 2013 Facebook began to allow third parties to access user data only upon the condition that they send valuable *user data* back to Facebook.[2] This concept, known as data reciprocity, is a key component of Plaintiffs' claims. Facebook claims in its Reply that data reciprocity is an exchange of data only between users, but that is belied by its own documents. A document dated March 14, 2014 reports ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. F, FB-CA-MDL-00203262. Facebook's characterization of data reciprocity as an exchange between

---

[2] *"Facebook Earns $132.80 From Your Data per Year: But it's valuable in other ways, too"*; available at: https://slate.com/technology/2019/11/facebook-six4three-pikinis-lawsuit-emails-data.html; *see also "Facebook leaks: Zuckerberg turned data into dollars in ruthless battle with competitors"*; available at: https://www.computerweekly.com/news/252461895/Facebook-leaks-Zuckerberg-turned-data-into-dollars-in-ruthless-battle-with-competitors (detailing, among other things, Facebook employee complaints that "customer data and their own data was visible to others, after they had opted to keep it private").

users is also at odds with the Court's formulation of the issue. Order at 8 ("Facebook shared information about its users with this non-exclusive list of business partners and [] those companies in turn shared data with Facebook.") In fact, Facebook concedes that user data received from "integration partners" through data reciprocity is potentially relevant, thereby confirming that the discovery sought by Plaintiffs here for just ten Named Plaintiffs should be produced. FB Reply at 8. ("[E]ven if some other data from integration partners existed, only data received from those partners could even possibly be relevant…"). In short, it is relevant to the case what information about the ten Named Plaintiffs Facebook possesses, even if it received that data through its data reciprocity agreements.

Discovery also reveals that Facebook sent Requests for Information ("RFIs") to third party app developers as part of its App Developer Investigation ("ADI") ███████████ ███████████████████████████████████████████████████████████ These RFIs ask ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Furthermore, app developers ███████████████████████████████████████████████ ███████████████████████ E.g., FB-CA-MDL-01119012 at FB-CA-MDL-01119021. It is telling that while conducting the ADI investigation, Facebook asked ███████████████ ███████████████████████████████████████████████████████████

Facebook also claims that the discovery Plaintiffs seek "cannot even be reasonably collected," identifying numerous purported difficulties in collecting this discovery, even though it is just for ten individuals. FB Reply at 9. These unsupported assertions do not rebut the relevancy of the discovery Plaintiffs seek, and do not meet the required evidentiary showing to establish burden. See *Harris v. Best Buy Stores, L.P.*, No. 315CV00657-HSG-KAW, 2016 WL 6024556, at *1 (N.D. Cal. Oct. 14, 2016) (" … [T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence.") (quoting *La. Pac. Corp. v. Money Mkt.*

*1 Inst'l Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)). Indeed, the Court did not solicit briefing on burden, but only relevance. And in any event, Facebook expressly disclaimed its request to have the Court rule on burden. FB Reply at 10. The Court should ignore Facebook's unsupported claims that it would be too burdensome to search for this material when it has itself asked the Court not to rule on burden.

Facebook's sweeping and generalized statement also ignores huge pockets of data that Facebook can identify. For example, ██████████████████████████████████████████ ████████████████████ And surely Facebook can identify what data it shared with its business partners and white-listed apps through its data reciprocity agreements. Furthermore, to the extent that Facebook did not stop disassociating data regarding the Named Plaintiffs in this action, thereby making it more difficult to re-associate, that is a problem of its own making. Again, these are factual issues, not legal ones, and should be the subject of discovery.

Plaintiffs do not demand, as Facebook repeatedly claims, "that Facebook search *millions* of disaggregated data sets for any data to have ever crossed Facebook's systems relating to a Named Plaintiff and any derivative materials drawing on that data - such as data sets tracking hours of peak user activity to monitor strains on Facebook's system." Opp'n at 6. To the contrary, Plaintiffs seek only a holding that the sensitive data Facebook collected about *ten Named Plaintiffs* and *shared* with third parties is relevant. Plaintiffs do not contend that information that was not shared is relevant, which substantially narrows the information Facebook would be required to produce in this case.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs seek an order holding that all sensitive data about the ten Named Plaintiffs that Facebook shared with or made accessible to third parties is relevant to this action.

Dated: October 19, 2020                                    Respectfully submitted,

KELLER ROHRBACK L.L.P.                                     BLEICHMAR FONTI & AULD LLP

| | |
|---|---|
| By:     */s/ Derek W. Loeser*<br>        Derek W. Loeser | By:     */s/ Lesley E. Weaver*<br>        Lesley E. Weaver |

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)

555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of October, 2020, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2020, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. In accordance with Civil L.R. 5-1(h) and Civil L.R. 79-5(e), I also caused a copy of the under seal documents to be served via email on counsel of record for all parties. An electronic copy of the public redacted filings was also provided via email to the parties noted below:

  Anjeza Hassan
  annie.sara@yahoo.com

                    */s/ Lesley E. Weaver*
                    Lesley E. Weaver