# EXHIBIT 1

**Redacted Version of Facebook's Search String Proposal for Custodian Groups 1-4**

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **DEFENDANT FACEBOOK, INC.'S REQUEST TO APPROVE FACEBOOK'S SEARCH STRING PROPOSAL FOR CUSTODIAN GROUPS 1-4** <br><br> Judge:  Hons. Vince Chhabria and Jacqueline Scott Corley <br> Courtroom 4, 17th Floor |

## INTRODUCTION

Facebook is proposing a comprehensive and fair search string plan for the 38 custodians in Groups 1-4 (**Exhibit A**). The Proposal hits on **1.5 million documents** with families, which is approximately **6 million pages**[1]—nearly **2,500 bankers' boxes of documents**. Facebook makes this Proposal having litigated many of the issues in this case for years against parties around the globe, and with a deep understanding of the topics, relevant documents, and custodians at issue. The Proposal also is the result of significant negotiation and compromise. The Parties exchanged more than one dozen proposals, Facebook revised almost every one of its strings to accommodate Plaintiffs' shifting demands, and Facebook adopted 54 of Plaintiffs' proposed strings (with some modifications). Under these circumstances, Sedona Principle 6—which gives deference to a producing party's searches "unless a specific deficiency is shown"—is entitled to great weight. We respectfully submit that the Court should adopt Facebook's search string proposal in full.

It bears noting that the approximately 6 million pages Facebook agrees to review here are only a sliver of the document discovery that will occur in this case:

- The Proposal covers emails and chats from only **38 of 81 custodians**. Facebook made a similarly broad proposal for the remaining custodians. It also disclosed many other custodial data sources for the 38 custodians here that it will collect and review separately.
- The Proposal covers **only 26 of the 63 RFPs** Plaintiffs served. Plaintiffs maintain that 32 RFPs, which they served recently, require separate collections.

The 1.5 million documents and 6 million pages Facebook is agreeing to review here is also in addition to the **1.4 million pages Facebook *already* produced**. These productions include the Facebook documents produced to the FTC in response to its document requests in its two related actions. They also include documents produced to other regulators in numerous related matters responsive to Plaintiffs' RFPs. The documents Facebook reproduced from these government actions total more than **325,000** pages. Judge Chhabria expected these regulatory productions would "cover the vast majority of the documents that the Plaintiffs would want in this litigation." 3/5/2020 Hr'g Tr. at 4:14-15. Yet, Facebook is now proposing that it review **18 times** the number of documents in those productions for half of its custodians on a subset of RFPs. This is a breathtaking volume.

Nevertheless, Plaintiffs want more. But in saying that Facebook must do more, they do not

---

[1] Facebook assumes an average of four pages per document—the average number of pages of the Company documents produced to date, many of which come from the same custodians.

identify any gaps in Facebook's comprehensive proposal.  Instead, on October 13 Plaintiffs launched a new counterproposal that hits on **5 million documents** with families, which would require the review of nearly **20 million pages**, for fewer than half the custodians and RFPs.[2]  Plaintiffs' untethered proposal is consistent with Plaintiffs' approach throughout the parties' 3.5 month negotiations—seeking to extract an overbroad document review without regard for specific document requests, the subject-matter of this case, or any semblance of reasonableness. There are serious diminishing returns associated with this tactic, particularly given that the "core" documents have already been produced in this case.

Throughout the parties' negotiations, Plaintiffs have demanded that Facebook disprove literally hundreds of search strings touching on every topic under the sun, wholly unmoored from the RFPs or the four live theories of liability in this case—including terms filled with expletives.  Now that the parties reached the end of this first round of search string discussions, Plaintiffs attempt to defend their overboard terms by moving the goalposts.  Plaintiffs now say Facebook did not prove the overbreadth of Plaintiffs' proposed terms through statistical sampling.  It is not Facebook's burden to disprove additions to its already expansive proposal—the Court ordered Plaintiffs to explain to Facebook how their terms fill an identifiable gap, which they did not do.  The Parties' ESI Protocol even allowed Plaintiffs to request that Facebook sample specific terms, but they never made that request.  Even if they had, it would have been impossible for Facebook to sample Plaintiffs' proposal, which Plaintiffs revised until nearly midnight the day this briefing was due.[3]

The Court should also disregard any Facebook documents Plaintiffs cite in support of their proposed strings.  The Court ordered the parties to disclose any arguments and evidence they intended to raise in this briefing on October 9 so they would each have a fair opportunity to respond to any points raised.  Plaintiffs' October 9 proposal merely listed Bates Numbers for 280 documents produced in this case, which they said they "may rely upon" to prove their terms.  Plaintiffs provided no further explanation, leaving Facebook to guess as to which of the 280 documents Plaintiffs might cite and what they might say about them.  In any event, all of the documents Plaintiffs listed *have been produced* and many hit on Facebook's proposed terms, undermining any argument that

---

[2]  Plaintiffs revised certain terms and dropped others at 11:30 PM last night.  Facebook is not able to run new hit counts before this briefing is due, so cites the most recent numbers it has available.

[3]  If the Court determines sampling is needed to decide whether a particular string is warranted, Facebook respectfully requests the opportunity to conduct this analysis on an appropriate time frame.

Plaintiffs' overbroad searches are needed to capture them.

The Court should also reject Plaintiffs' incorrect and misleading approach to hit counts, which understates the volume of materials at issue. The relevant number for the Court to consider when evaluating the Parties' proposals is "hits with families."

***"Hits" versus "hits with families."*** Document "hits" refer to the number of documents a string actually hits. "Hits with families" refers to the number of documents a string hits plus those documents' family members. This is the number of documents Facebook must review. If a search hits on an email that has five attachments, Facebook has to review the email and all five attachments.

***"Unique hits."*** Plaintiffs often focus on "unique hits." "Unique hits" reveal the number of documents that hit on a given search string *and no other string*. This is not a useful metric. Many documents are not unique to *any string*—they hit on multiple search strings. Such documents are not included among *any string's unique hits* and are lost in the unique hit counts. Please note, unique hits should not be confused with deduplicated hits. The hit counts Facebook provides are deduplicated.

Facebook respectfully requests that the Court accept in full, Facebook's eminently reasonable proposal to review **1.5 million documents** and approximately **6 million pages** for the 38 custodians in Groups 1-4. If the Court finds that this Proposal should be supplemented, Facebook's brief is organized to allow the Court to easily track any strings it approves:

- Part I addresses **FB-proposed** terms for which the parties present competing versions.
- Part II addresses **Plaintiff-proposed** terms for which the parties present competing versions.
- Part III addresses Plaintiff-proposed terms that Facebook asks the Court to reject in full.
- Facebook's full proposal is **Exhibit A** to the Declaration of Martie Kutscher.
- The terms to which the parties agree are **Exhibit B** to the Declaration of Martie Kutscher
- The terms in dispute are **Exhibit C** to the Declaration of Martie Kutscher
- Plaintiffs' RFPs are **Exhibit D** to the Declaration of Martie Kutscher.
- Facebook provides a proposed order, on which the Court can either approve Facebook's proposal or check boxes for the specific strings it approves. Facebook also provides check boxes at the end of its analysis of each disputed string, for the Court to track its work.

Finally, after this dispute is resolved, the parties must negotiate search strings for 43 additional custodians. Those discussions should be guided by the Court's order here and should not start from square one. Of note, Plaintiffs proposed the same 650 strings for the remaining custodians that they proposed initially for the 38 custodians included in this briefing. The Court's order on this dispute should be the starting point for the parties' ongoing discussions, which should not start anew.

# CONTENTS

**INTRODUCTION**..............................................................................................................i

    **FB-12** ............................................................................................................. 2

    **FB-20** ............................................................................................................. 3

**Section II: Plaintiffs' proposed strings for which the parties have competing versions** .............. 5

    **Plaintiffs' 236** ............................................................................................... 6

    **Plaintiffs' 273** ............................................................................................... 7

    **Plaintiffs' 290** ............................................................................................... 8

    **Plaintiffs' 426** ............................................................................................... 9

    **Plaintiffs' 466** ............................................................................................. 10

    **Plaintiffs' 501** ............................................................................................. 11

    **Plaintiffs' 669** ............................................................................................. 12

**Section III: Plaintiffs' proposed strings that the Court should reject in full** ............................. 14

    **Plaintiffs' 41** ............................................................................................... 15

    **Plaintiffs' 117** ............................................................................................. 16

    **Plaintiffs' 118** ............................................................................................. 17

    **Plaintiffs' 194** ............................................................................................. 18

    **Plaintiffs' 216** ............................................................................................. 19

    **Plaintiffs' 223** ............................................................................................. 20

    **Plaintiffs' 244** ............................................................................................. 21

    **Plaintiffs' 313** ............................................................................................. 22

    **Plaintiffs' 422** ............................................................................................. 23

    **Plaintiffs' 458** ............................................................................................. 24

    **Plaintiffs' 467** ............................................................................................. 25

    **Plaintiffs' 481** ............................................................................................. 26

    **Plaintiffs' 673** ............................................................................................. 27

# Section I

# Facebook's proposed strings for which the parties have competing versions

**<u>FB-12</u>**

Plaintiffs' proposed revisions fill no gap and untether this string from the user data at issue.



1. **Plaintiffs identified no gap in Facebook's proposal that their revisions fill.**

2. **Plaintiffs' revision is not tailored to identify responsive documents and would hit on documents concerning any type of "data" or "information"**

   The Parties dispute whether the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to identify the types of data and information that are at issue in this case and responsive to Plaintiffs' requests, which seek documents regarding third-party sharing of **<u>user data</u>**.

   Facebook is a data company and its employees regularly discuss all sorts of data and information. The only data and information that is germane and responsive to Plaintiffs' RFPs is *user* data and information. Facebook expanded this string to accommodate additional terms and a broad ▮▮▮▮▮▮▮ proximity connector. It did so on the condition the terms ▮▮▮▮▮▮▮ be appropriately cabined to not draw non-responsive documents generally concerning any data or information.

3. **Plaintiffs' provided Facebook no reason for rejecting Facebook's revised string, beyond suggesting that adding ▮▮▮▮ lowers the hit count.**

4. **Plaintiffs' custodian proposal for this string is overbroad and not string-specific.**

   Plaintiffs propose running this string against 21 custodians. They did not provide *any* string-specific justification for this and identify no gap in Facebook's custodian proposal.

**<u>ORDER:</u>   INCLUDE FACEBOOK 12 ☐     INCLUDE PLAINTIFFS' REVISIONS ☐**

**FB-20**

Plaintiffs' revised string fills no gap and is not sufficiently targeted to relevant contracts.



1. **Plaintiffs identified no gap in Facebook's Proposal that their revisions fill.**

2. **Plaintiffs' revision is untethered from the RFPs and likely to produce non-responsive contracts unrelated to user data.**

   Adding the version of the string Plaintiffs request would add **nearly 180,000** documents with families **and nearly 720,000 pages** to its hit counts, expanding Facebook's already enormous Proposal significantly.

   This string targets documents responsive to RFPs 14, 16, and 17, which generally seek infor-mation about how Facebook "monetizes" user data. Facebook agreed to produce documents responsive to these RFPs to the extent they concern any monetization connected to sharing sensitive user data with third parties—the only potentially relevant sharing in this case. Add-ing ████████████████████████████████████ ensures this string re-turn contracts relating to providing user data to third parties.

3. **The only argument Plaintiffs provide for striking Facebook's case-specific language is that prior versions of Facebook's proposal did not include it.**

   Facebook proposed the current version of this string as part of its final proposal on October 9. The version of this string Facebook proposed at that time must be considered as part of Face-book's broader proposal, which captures more than 1.5 million documents and approximately 6 million pages. It should not—as Plaintiffs argue—be considered only as compared to prior proposed versions of the string. Indeed, Plaintiffs provide no argument that the prior version

of the string was more appropriately tailored or that the current version creates a gap (it does not).

Facebook's Proposal adopts revisions to nearly every one of Facebook's strings to accommodate Plaintiffs.  It also adopts 54 of Plaintiffs' strings.  Part of Facebook's agreement to make these concessions was narrowing this particular string, the prior version of which was overbroad and captured materials untethered to the RFPs as a result of numerous terms being added to the string during the parties' negotiations.  There is no reason for the Court to undue this careful balancing.

4. **Plaintiffs' custodian proposal is overbroad and includes internal-facing custodians.**

Plaintiffs propose running this string against 21 custodians.  They failed to provide *any* string-specific justification this proposal and identify no gap in Facebook's custodian proposal. They even include engineering custodians who are unlikely to possess any responsive agreements.

**ORDER:**        **INCLUDE FACEBOOK 20** ☐   **INCLUDE PLAINTIFF'S REVISIONS** ☐

# Section II

# Plaintiffs' proposed strings for which the parties have competing versions

**Plaintiffs' 236**

Plaintiffs' expansive revisions fill no gap and broadly targets non-responsive documents.



1.   **Plaintiffs' overbroad revisions add _200,000 documents_ and approximately _800,000 pages_**

2.   **Plaintiffs identify no gap in Facebook's Proposal that their revisions fill.**

The strings in this section were proposed by Plaintiffs, and Facebook agreed to incorporate modified versions into its Proposal. The parties now dispute the strings' scope.

Facebook notes that it accepted modified versions of Plaintiffs' strings in an effort to compromise and in doing so cabined overbroad language. It was not, however, Facebook's job to make Plaintiffs' terms perfect. It was Plaintiffs' obligation to propose reasonable terms.

3.   **Plaintiffs' revisions to the string untether it from the identified RFP**

The string was proposed for RFPs that request documents concerning Facebook's efforts to enforce its data-use policies with respect to third parties. Facebook agreed to produce documents responsive to these RFPs to the extent they concern data that is relevant to this case, such as user data shared due to friend sharing or whitelisting. For this reason, Facebook's proposed string is tailored to identify documents about these types of data.

By removing this limiting language, Plaintiffs' revisions target a broad array of documents that happen to use the term "control." Plaintiffs say this is necessary because "controls" are "sub-categories to the broader categories contained in" Facebook's privacy policy. To the extent such controls are responsive and relevant, they would be captured with Facebook's tailored language.

The revisions Plaintiffs seek would hit on any document in which the term ███████████ ████████████████████████████████████████████ without any other language connecting it to the identified RFP. These terms are commonly used in financial statement audits that have nothing whatsoever to do with this case.

4.   **Plaintiffs' revised string uses overbroad language.**

The revisions Plaintiffs seek remove critical limiting language and also add broad and untailored terms—such as ████████████████████ As a result, Plaintiffs' revisions add _200,000 documents_ and _800,000 pages_. That is because Plaintiffs' revisions cause this string to hit on any document discussing ██████████████████████████—even if the test or control has nothing at all to do with sharing user data. The string would also hit on discussions about "sunsetting" controls in any context, including due to product changes. Such documents are unrelated to the identified RFP (and the case).

**ORDER:   INCLUDE FACEBOOK'S STRING** ☐  **INCLUDE PLAINTIFFS' REVISION** ☐

**Plaintiffs' 273**

Plaintiffs' revised string fills no gap in Facebook's Proposal and would remove the terms that limit this string to issues relevant to this case.



1. **Plaintiffs identify no gap in Facebook's Proposal that their revisions fill.**

    Facebook accepted a modified version of Plaintiffs' term in an effort to compromise. Plaintiffs did not identify any gap in Facebook's Proposal that the broad term they propose fills.

2. **Facebook's proposal tailors the search to the identified RFPs.**

    The RFPs for which this string is identified (RFPs 22, 31, 32, 52, 56) primarily relate to Facebook's enforcement of its data-use policies with respect to third parties. *See* Kutscher Declaration **Exhibit D** (Plaintiffs' RFPs). The parties dispute whether this string should include a limiter that cabins the string to documents that mention ███████████████████████ ████████████████████

    Facebook's limiters are necessary because the other terms included in the string—such as ████████████████████—are internal tools that Facebook uses in many contexts for project management. Indeed internal projects throughout the Company are tracked in privatron. Documents referencing these tools are only responsive (and relevant) to the extent they concern third party misuse of the data at issue in this case—sensitive user data that users shared with their friends on Facebook and third parties allegedly accessed. By eliminating this limiter, Plaintiffs seek a broad array of nonresponsive documents.

3. **The proposed string has nothing to do with PwC.**

    Plaintiffs also claim this string is responsive to RFP 22, which targets certain meeting notes and agenda from meetings relating to PwC audits. This is obviously not correct—this string targets documents about internal compliance tools, not meeting notes.

    Even if this search did target PwC material, the PwC audits were conducted pursuant to an FTC consent decree at the FTC's request. Facebook already produced the materials relating to those audits that it produced to the FTC and to other regulators. PWC also produced to Plaintiffs the materials it provided the FTC.

4. **Plaintiffs' custodian proposal includes custodians unlikely to have used these tools.**

    Plaintiffs do not identify how any of their **20** proposed custodians for this string are likely to have materials related to the string. Indeed, many are from the Communications Department and have likely never used the internal tools the string targets.

**ORDER:   INCLUDE FACEBOOK'S STRING ☐   INCLUDE PLAINTIFFS' REVISION ☐**

### Plaintiffs' 290

Plaintiffs' revised string fills no gap in Facebook's Proposal and is untethered from the sensitive user data at issue.



1.  **Plaintiffs identify no gap in Facebook's Proposal that their revisions fill.**

    Facebook accepted a modified version of Plaintiffs' term in an effort to compromise. Plaintiffs did not identify any gap in Facebook's Proposal that the broad term they propose fills.

2.  **Facebook's Proposal tailors the string to responsive types of user data while Plaintiffs' proposal broadly seeks documents about any "data."**

    The parties dispute whether this string should focus on unauthorized access to any type of data or focus on unauthorized access to "friend data," "user data," or "sensitive data."

    This case concerns sensitive user information that users intended to share only with their friends on Facebook but that third parties allegedly accessed as a result of friend sharing, whitelisting, and integration partner agreements. See Dkt. 515 at 4-5; Pretrial Order 20. Facebook's proposal targets documents about this type of data. Plaintiffs' revisions targets documents about all types of data, including non-user data or public data.

3.  **Collection of any additional PwC materials should be limited.**

    Plaintiffs say their revisions are needed because they "reflect[] issues at the core of PwC's examination of [Facebook's Privacy Policy]." This case is not an audit of PwC's audits, and not all issues addressed by the audits are even relevant. For example, the PwC reports discuss risks associated with lost and stolen laptops.

    The PwC audits were conducted pursuant to an FTC consent decree at the FTC's request. Facebook already produced the materials relating to those audits that it produced to the FTC and to other regulators. PWC also produced the materials it provided the FTC. Facebook cannot conceive of what materials plaintiffs need from an audit completed at the FTC's request that the FTC did not receive. What is more, Plaintiffs told Judge Chhabria that if Facebook turned over the materials it provided the FTC on any given topic, they would "just take" those materials "because it is so efficient to just send that out." See Nov. 4, 2019 Hr'g Tr. at 41:9-13. To the extent any additional PwC searches are allowed, they should be narrowly tailored.

4.  **Plaintiffs' custodian list is not appropriately tailored.**

    Plaintiffs propose running this search on **20 custodians** without identifying why any is an appropriate custodian for this specific string. None are even from Facebook's privacy group—the custodians most knowledgeable about PwC's audits.

**ORDER:   INCLUDE FACEBOOK'S STRING** ☐ **INCLUDE PLAINTIFFS' REVISION** ☐

**Plaintiffs' 426**

Plaintiffs' revised string fills no gap in Facebook's Proposal and is overbroad, duplicative, and unrelated to the RFPs at issue.



1.   **Facebook accepted a modified version of Plaintiffs' term to compromise.  Plaintiffs did not identify any gap in Facebook's Proposal that the broad term they propose fills.**

2.   **Facebook's proposal is tailored to the identified RFPs.  Plaintiffs' revisions eliminate necessary limiters and add broad, general terms.**

This string was proposed for RFPs 11, 12, 22, 24, 25, 26, 53, and 56, which relate to third party data-sharing and monitoring of Facebook's Privacy Program.  The parties dispute whether this string should be limited to include only documents that include the term ███████ ████████████.  This limiter is needed.  Facebook agreed to produce materials responsive to these RFPs to the extent they concern the data at issue in this case.

**By removing this limiter, Plaintiffs increase the hits on this string by <u>300,000</u> documents with families, and <u>more than a million pages</u>.**  That is because their revisions target a broad range of documents regarding third parties and ██████ or third parties and ████████ ██████ without regard for whether they concern responsive and relevant topics.  This is made worse by the addition of general terms, like ███████████████████████████████ which Facebook uses in many contexts and often relate to issues other than sharing sensitive user data with third parties.  Indeed, the Privacy XFN team handles issues ranging from minors on Facebook's platform to physical access to data and stolen laptops.

Indeed, RFP 53 calls for documents regarding all "decisions made by the . . . Privacy Cross-Functional Team."  Facebook agreed to produce responsive materials only to the extent they relate to the specific forms of data sharing at issue in this case.

3.   **Plaintiffs did not refute Facebook's position that this string is duplicative.**

Many strings from Facebook's proposal address same topic that this string addresses, including FB-41; FB-42; FB-43; FB-44, FB-55, FB-67; FB-68; FB-69; FB-72.  In their October 9 proposal, Plaintiffs stated this string "is not duplicative of FB-44, FB-55, FB-68."  They provided no explanation for this statement.

<u>**ORDER:**</u>   **INCLUDE FACEBOOK'S STRING** ☐   **INCLUDE PLAINTIFFS' REVISION** ☐

## Plaintiffs' 466

Plaintiffs' revised string fills no gap in Facebook's Proposal and deletes the two terms that tie this string to the issues in the case.



1.  **Facebook accepted a modified version of Plaintiffs' term to compromise.  Plaintiffs did not identify any gap in Facebook's Proposal that the broad term they propose fills.**

2.  **Facebook's string is tailored to the identified RFPs. Plaintiffs' revision removes necessary limiters and adds broad, generic terms and an expansive proximity connector.**

    Plaintiffs say this string is "intended to capture information relating to third parties to which Facebook granted access to ███████████████ content and information."

    Facebook's proposed string specifically targets the sharing of, or the granting of third-party access to, non-app friends' sensitive or personal data—the type of data at issue and about which Facebook agreed to produce materials in response to the identified RFPs.

    Plaintiffs' proposed revisions remove the two terms that cabin this string to responsive and relevant concepts, expanding it to reach nearly any materials discussing ████████████ The string would hit on any document that happens to refer to ████████████████ ██████████████████    This is likely to hit on a large number of documents that merely mention ██████████ in passing and have no relevance.

3.  **Plaintiffs' document dump does not demonstrate any gap that their revision fills.**

    Plaintiffs provided Facebook a list of Bates Numbers for **280 documents** they "may rely on," including **4** for this string.  They did not explain which they would cite, the documents' significance, or how any show this string is needed.  Without such information, Facebook cannot meaningfully respond.  Facebook notes that **3** of the **4** documents Plaintiffs listed for this string hit on strings included in Facebook's proposal.

4.  **Plaintiffs' demand that Facebook run this string on 31 of 38 custodians without explanation is overbroad.**

**ORDER:    INCLUDE FACEBOOK'S STRING** ☐  **INCLUDE PLAINTIFFS' REVISION** ☐

Gibson, Dunn & Crutcher LLP

**Plaintiffs' 501**

The scope of this string should be tailored to capture documents related to sensitive user data.



1.   **Facebook accepted a modified version of Plaintiffs' term to compromise.  Plaintiffs did not identify any gap in Facebook's Proposal that the broad term they propose fills.**

2.   **Facebook's proposed string is tailored to the identified RFPs. Plaintiffs' revision removes necessary limiters, untethering it from the string's purpose.**

      This string is proposed for RFPs 11, 12, 24, 25, 26, and 55, which focus on sharing user data with third parties.  The parties dispute whether this string should be cabined so that it applies only to third parties being granted special access to user data, friend data, or sensitive data.

      Facebook agreed to produce materials in response to these broad requests to the extent they concern the type of data at issue—sensitive user data that users intended to share only with their friends but that third parties accessed as a result of friend sharing, whitelisting, or integration agreements.  *See* Dkt 298 Pretrial Order 20; Dkt. 515 at 4-5.  These are the only types of data at issue, and Facebook only agreed to produce responsive documents to the extent they concern those types of data.

      Yet, Plaintiffs string targets documents that simply mention ▮▮▮▮▮▮▮ and common words such as ▮▮▮▮▮▮▮▮  The string would therefore return documents discussing a ▮▮▮▮▮▮ to anything—not just the type of data at issue.  For instance, the string would hit on an email granting a partner ▮▮▮▮▮▮▮ to try a new Facebook product, or emails noting a developer's ▮▮▮▮▮▮ to an exclusive social event.  Facebook's string, in contrast, aligns the string with the issues germane to this action—▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3.   **Plaintiffs' custodian proposal is overbroad and revives Plaintiffs' effort to broadly run strings on all custodians.**

      Plaintiffs say this string should be run on 31 custodians (nearly all of the 38 custodians).  Plaintiffs do not explain why these custodians would likely possess documents the string targets, and many would not.  This proposal seeks to revive Plaintiffs' approach of indiscriminately running strings against all of the custodians, which the Court rejected.

**<u>ORDER:</u>   INCLUDE FACEBOOK'S STRING ☐   INCLUDE PLAINTIFFS' REVISION ☐**

Gibson, Dunn & Crutcher LLP

**Plaintiffs' 669**

Plaintiffs' overbroad revisions seek broad financial documents unrelated to the case.



1. **Plaintiffs' revisions target general financial documents without regard for the identified RFPs and scope of this case.**

   Plaintiffs proposed this string to target financial returns related to one of the live issues in this case—__whitelisting__.  They say it targets documents responsive to RFPs 14, 16, and 34, which generally seek materials sufficient to show the value of certain types of user information.  Facebook agreed to produce materials responsive to these RFPs to the extent they concern data monetization related to the third-party relationships that are at issue in this case.

   Facebook incorporated a modified version of this term into its proposal.  Plaintiffs now demand revisions to the string Facebook incorporated that go beyond financial documents related to whitelisting and target Facebook's financial metrics, predictions, or discussions that relate in any way to ██████████████████████████████████████████

   Plaintiffs' proposed strings adds __45,000 documents and approximately 180,000 pages__.  This is because it effectively seeks every financial document Facebook has drafted over the last 13 years, including materials analyzing Facebook's earnings calls, general business strategy, or potential acquisitions.  Unlike Facebook's proposed string, which focuses on returns from whitelisting, Plaintiffs' is far removed from the identified RFPs and issues in this case.

2. **Plaintiffs' revisions target financial documents relating to their dismissed targeted advertising theory.**

   Plaintiffs' revisions target documents related generally to ████████████████████ and all documents concerning return on advertising investment.  But Judge Chhabria dismissed Plaintiffs' advertising-related theories of liability, see Pretrial Order 20, Dkt. 298 at 6, which Plaintiffs concede, see Dkt. 526 at 9.  Plaintiffs nevertheless continue to pursue broad discovery related to targeted advertising (this string is just one example).  Plaintiffs should not be allowed to pursue discovery of documents that relate only to dismissed theories of liability.

3. **Damages discovery is premature and, at an appropriate time, should be conducted through targeted collections—not broad email searches.**

   Plaintiffs argue their revisions are needed because they relate to Plaintiffs' damages request.  Discovery related to damages is premature at this stage.  Indeed, the Court is yet to issue its Order regarding the scope of the case.  No class has been certified.  And Plaintiffs have not

even informed Facebook which third parties they believe improperly accessed their sensitive data and what data they believe was shared.  In the meantime, Plaintiffs are not entitled to broad financial discovery into every aspect of Facebook's business because they happened to include in their 1400 paragraph pleading an unjust enrichment cause of action (in addition to breach of contract claims).

In any event, broad email searches are not an appropriate way to seek revenue discovery in connection with damages.  At an appropriate time, any such discovery should be sought through targeted collections of financial materials.

4.     **Plaintiffs' demand that Facebook run each of this string on 21 custodians without any string-specific explanations is overbroad.**

<u>**ORDER:**</u>    **INCLUDE FACEBOOK'S STRING ☐   INCLUDE PLAINTIFFS' REVISION ☐**

# Section III

# Plaintiffs' proposed strings that the Court should reject in full

Gibson, Dunn &
Crutcher LLP

**Plaintiffs' 41**

Plaintiffs' proposed string does not target responsive documents and damages discovery is premature.



1.   **This wildly broad string adds nearly _1 million_ documents and nearly _4 million_ pages.**

2.   **Plaintiffs identify no gap in Facebook's Proposal that their overbroad string fills.**

Plaintiffs did not identify any gap this string fills. They merely listed Bates Numbers for **six documents** they "may rely on" to support this string, without providing any explanation for how the documents show the string is needed or appropriate.  Many of these documents actually hit on Facebook's proposed terms.

3.   **Plaintiffs' string relies on general terms like** ▬▬▬▬▬▬ **which are not tailored to the RFPs Plaintiffs identified and will return largely non-responsive documents.**

Plaintiffs say this string targets documents responsive to RFP 17, which calls for "the monetary or retail value of Users' Content and Information to Users."  Yet this string will hit on any document that includes ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

General discussions about services users or customers pay for or that concern both customers and "money" are not reasonably tailored to identify documents relating to "the monetary or retail value" to users of their content and information.  Instead, this string is likely to hit on emails discussing money (real or fake) that users spend in online games and emails concerning Facebook's internal costs for developing features for its users.

4.   **Targeted collection is the appropriate way to gather information on damages.**

Plaintiffs argue this string is required because it relates to Plaintiffs' damages "request that Facebook disgorge the value of the data access it sold and by which it was unjustly enriched." Any discovery related to damages is premature at this stage.  Indeed, the Court is yet to issue its Order regarding the scope of the case.  No class has been certified.  And Plaintiffs have not even informed Facebook which third parties they believe improperly accessed their sensitive data and what data they believe was shared.

In the meantime, Plaintiffs are not entitled to nearly **1 million documents and 4 million pages of financial discovery** about every aspect of Facebook's business because they happened to include in their 1400 paragraph pleading an unjust enrichment cause of action (in addition to breach of contract claims).  In any case, broad email searches are not an appropriate way to seek revenue discovery in connection with damages.  At an appropriate time, any such discovery should be sought through targeted collections of financial materials.

5.   **Plaintiffs say this string should be run against 21 custodians, but provided no string-specific explanation for any of the custodians in this large group.**

**ORDER:**          **DO NOT INCLUDE** ☐          **INCLUDE** ☐

**Plaintiffs' 117**

Plaintiffs' proposed string fills no gap and targets ███████ issues irrelevant to policy enforcement.



1.   **This overbroad string adds nearly <u>200,000</u> documents and nearly <u>800,000 pages</u>.**

2.   **Plaintiffs identify no gap in Facebook's Proposal that their string fills.**

3.   **As Plaintiffs acknowledge, this string is not tailored to the RFPs and instead targets documents about developer and user trust.**

     Plaintiffs say this string targets documents responsive to RFPs 28, 29, 30, 31, 32, 52, 63, all of which relate to Facebook's enforcement of, or monitoring of, third parties' compliance with Facebook's data-use policies.  Plaintiffs' string has nothing to do with these topics and instead targets  documents about users' and developers' trust.

     This string would hit on any document with ████████████████████████████████████
     ████████████████████████████████████████████████████████████████████

     During meet and confers, Plaintiffs acknowledged that the string is not tethered to their RFPs but insisted the 18 custodians they identify for the term somehow brings it into scope because each of the custodians—at some point over the last 13 years—was involved in some level of policy enforcement.  This argument makes no sense.  Both the search string *and* the custodians must be tailored to the RFPs.  Facebook's employees receive emails on a wide range of topics and, over the last 13 years, many have held a number of job titles.  The fact that the proposed custodians touched on enforcement at some point cannot save an untailored search.

4.   **Plaintiffs' document dump does not show the string is needed.**

     On October 9, Plaintiffs provided Facebook a list of Bates Numbers for **<u>280 documents</u>** they "may rely on," including **<u>13 documents</u>** for this string.  They provided no indication of which documents they would cite, the documents' significance, or how any of the listed documents show this string is needed.  Without such information, Facebook cannot meaningfully respond.

     Facebook notes that many of the documents Plaintiffs listed in support of this string hit on strings included in Facebook's proposal.  The documents also *were already produced* in this case, undermining any argument that they demonstrate a gap in Facebook's proposal or productions.

<u>**ORDER:**</u>          **DO NOT INCLUDE**  ☐          **INCLUDE**  ☐

## Plaintiffs' 118

This overbroad proposed string fills no identified gap and would return any document about data security compliance.



1.  **Plaintiffs identify no gap in Facebook's Proposal that their string fills.**

2.  **Plaintiffs' proposed string is unrelated to the identified RFPs and targets non-responsive documents about security and public relations.**

    Plaintiffs say this string targets documents responsive to RPS 30, 31, 52, 63, which relate to Facebook's enforcement of its data-use policies against third parties.

    Plaintiffs' string sweeps far broader than these RFPs. It would hit on any document mentioning ███████████████████████████████████████ This would hit on documents about the Company's internal data security protocols. It would also hit on any documents discussing any ████████████████████████████████—even if those documents have no bearing on Facebook's enforcement of its data-use policies.

3.  **Plaintiffs' string is duplicative of other enforcement strings in Facebook's Proposal.**

    To the extent this string targets documents regarding Facebook's enforcement of is data-use policies against third parties, Facebook's proposal includes numerous strings covering this same ground: FB-24, FB-25, FB-26, FB-33, FB-34, FB-35, 84, 88, 93, 105, 196, 234, 260, 366.

    The examples below demonstrate that this string is duplicative and fills no legitimate gap.



**ORDER:**       **DO NOT INCLUDE** ☐          **INCLUDE** ☐

**Plaintiffs' 194**

Plaintiffs' proposed string targets data ████████ which is not at issue in this case.

████████████████████████████████████████████████████████

1. **Plaintiffs' string has nothing to do with the cited RFP, which concerns enforcement.**

   Plaintiffs say this string "is focused on compliance and enforcement efforts, as well as misuse of data involving third-party data scraping." But terms related to those concepts—such as ████████████████—are absent from the string. Instead, the string targets any documents that discuss ████████ None of Plaintiffs' RFPs ask for materials relating to ████████ nor is the concept even at issue in the case.

2. **Plaintiffs' string is duplicative of numerous strings in Facebook's proposal and fills no identified gap.**

   To the extent this string seeks materials regarding sharing data with third parties and Facebook's efforts to enforce its data-use policies with respect to that data, numerous strings in Facebook's proposal target these topics, including FB-34, FB-35, FB-47, FB 56, FB-57, FB-59, FB-61, FB-63, FB-65, 334, 335, 336.

   For example, FB-35 targets investigations into misuse of data—which Plaintiffs say is the precise focus of Plaintiffs' proposed string:

   ████████████████████████████████████████████████████

   Plaintiffs identify no gap in Facebook's proposed strings that actually relates to an identified RFP (or the case).

3. **Plaintiffs' document dump does not demonstrate any gap that the proposed string fills.**

   On October 9, Plaintiffs provided Facebook a list of Bates Numbers for **280 documents** they "may rely on," including **10 documents** for this string. They provided no indication of which documents they would cite, the documents' significance, or how any of the listed documents show this string is needed. Without such information, Facebook cannot meaningfully respond.

   Facebook notes that many of the documents Plaintiffs listed in support of this string hit on strings included in Facebook's proposal. The documents also *were produced* in this case, undermining any argument that they demonstrate a gap in Facebook's proposal or productions.

**ORDER:**          **DO NOT INCLUDE** ☐          **INCLUDE** ☐

**Plaintiffs' 216**

The relevant aspects of Plaintiffs' proposed string are duplicative of a string Facebook proposed.



1.   **This broad string adds more than <u>50,000</u> documents and approximately <u>200,000 pages</u>.**

2.   **Plaintiffs' string is duplicative of FB-47 and Plaintiffs have identified no gap in Facebook's proposed string.**

     The proposed string targets documents relating to third parties' collection, disclosure, or use of Facebook users' friends' data.  Facebook-47 targets the same materials and includes nearly identical terms.



3.   **To the extent Plaintiffs' string is broader than FB-47, it targets non-responsive documents.**

     FB-47 is tailored to identify responsive documents concerning third parties' access to ▮▮▮ ▮▮▮ Plaintiffs' string, in contrast, would hit on nearly any document using the term ▮▮▮

     Plaintiffs also say this search string is needed because it has a broader proximity connector than FB-47 ▮▮▮ If this were true, Plaintiffs would have suggested broadening FB-47's connector.  Instead, they proposed an entirely separate (and much broader) search.  In any case, a broad ▮▮▮ proximity connector is not justified here and is likely to result in a large number of non-responsive documents.  The string seeks to identify documents discussing ▮▮▮ Documents in which terms like ▮▮▮ are not likely to relate to this topic.

<u>**ORDER:**</u>          **DO NOT INCLUDE** ☐          **INCLUDE** ☐

## Plaintiffs' 223

Plaintiffs' proposed string fills no identified gap in Facebook's Proposal and targets all ███████
██████████ —not just relevant ones.

1. **Plaintiffs identify no gap in Facebook's Proposal that their string fills.**

2. **Plaintiffs' string has nothing to do with the identified RFPs.**

    Plaintiffs say this string targets documents responsive to RFPs 31, 32, 55, and 56, which relate to Facebook's enforcement of, and monitoring of compliance with its data-use policies; RFP 53, which calls for documents regarding "privacy decisions made by the Privacy Governance Team"; and RFP 22, which calls for certain "notes or agenda relating to" meetings and "Privacy Summits" in connection with PwC's audits.

    This string has no connection to these RFPs. Instead it targets approvals concerning application programming interfaces ("APIs")—computing interfaces that define interactions between software intermediaries. The search also targets documents discussing any type of ██████ ████████████ Nothing about this string concerns Facebook's enforcement of its policies, data misuse, or "notes or agenda" from meetings or summits relating to PWC's audits.

3. **References to API approval in PwC's reports does not justify the search string.**

    Plaintiffs explained in their October 9 proposal that this string is needed because "[a]pproval of API access is repeatedly referenced in connection with PwC's audits of [Facebook's] Privacy Program, and these terms are clearly referenced in the PwC reports." This litigation is not an audit of PwC's audits. Plaintiffs were required to show how the search fills a gap in Facebook's proposal with respect to their RFPs—not that an audit mentions this concept.

    In any case, the PwC audits were conducted pursuant to an FTC consent decree at the FTC's request. Facebook already produced the materials relating to those audits that it produced to the FTC and to other regulators. PWC also produced to Plaintiffs the materials it provided the FTC. Facebook cannot conceive of what materials plaintiffs need from an audit completed at the FTC's request that the FTC did not receive. What is more, Plaintiffs told Judge Chhabria that if Facebook turned over the materials it provided the FTC on any given topic, they would "just take" those materials "because it is so efficient to just send that out." See Nov. 4, 2019 Hr'g Tr. at 41:9-13.

4. **Plaintiffs' string is overbroad and not limited to the type of data at issue.**

    The string is also overbroad. Facebook is a data company, and it uses APIs in various contexts and to transmit various types of data. Even if the proposed search were related to the identified RFPs, it is not appropriately tailored to target the types of data and APIs at issue in this case. It would even hit on documents analyzing APIs associated with other Facebook products, such as Instagram or Oculus, and even APIs that do not transmit user data.

**ORDER:**    **DO NOT INCLUDE** ☐        **INCLUDE** ☐

## Plaintiffs' 244

Plaintiffs' proposed string fills no identified gap and is untethered from the RFPs.



1.     **Plaintiffs' proposed string focusses on ███████ and not the identified RFPs.**

Plaintiffs say this string targets documents responsive to RFPs 31, 32, 52, and 56, which relate to Facebook's enforcement of, and monitoring of compliance with, its data-use policies, and RFP 22, which calls for "notes or agenda relating to" meetings and "Privacy Summits" in connection with PwC's audits.

Rather than target such materials, this string seeks documents discussing ████████ ██████████.

2.     **Plaintiffs do not identify a gap in Facebook's search string proposal that this string fills.**

Plaintiffs say this string fills a gap because Facebook "makes ongoing representations about ████████████" in its Privacy Policy.  This vague explanation makes little sense and says nothing about how the string relates to the identified RFPs, or even the case.  Indeed, consent could concern a number of things, many of which are not relevant to this action.

To this point, PwC's reports—which the string appears to target—mention consent in connection with a user's publicly available profile picture, an issue far afield from the third-party data sharing issues here.

3.     **Facebook already produced relevant documents relating to PwC's audits.**

The PwC audits were conducted pursuant to an FTC consent decree at the FTC's request.  Facebook already produced the materials relating to those audits that it produced to the FTC and to other regulators.  PWC also produced to Plaintiffs the materials it provided the FTC.  Facebook cannot conceive of what materials plaintiffs need from an audit completed at the FTC's request that the FTC did not receive.  What is more, Plaintiffs told Judge Chhabria that if Facebook turned over the materials it provided the FTC on any given topic, they would "just take" those materials "because it is so efficient to just send that out."  See Nov. 4, 2019 Hr'g Tr. at 41:9-13.

Plaintiffs now ask Facebook to run extraordinarily broad searches in an effort to find any last document even remotely concerning PwC, requiring a wasteful re-review of materials it has already reviewed for responsiveness for its FTC productions and then again when it turned over those productions to Plaintiffs.

4.     **Plaintiffs' custodian proposal is not tailored to identify responsive materials.**

Plaintiffs propose **20 custodians** for this search without identifying why any is an appropriate custodian for this specific search.  Indeed, none of the 20 custodians are from Facebook's privacy group, which is the core set of custodians knowledgeable about PwC's audits.

**ORDER:**         **DO NOT INCLUDE** ☐         **INCLUDE** ☐

## **Plaintiffs' 313**

Plaintiffs' proposed string fills no identified gap and goes far beyond the scope of the RFPs it purportedly relates to.



1.   **Plaintiffs' proposed string—which broadly targets documents about "consent"—is not tailored to the identified RFPs, which seek materials about user privacy controls.**

Plaintiffs provide this string for RFP 35, which seeks documents about how a user could "control how his or her data was shared through . . . Privacy Controls and App Settings;" RFP 35, which covers "testing, evaluation and analysis of Facebook's Privacy Controls and App Settings;" and RFP 55, which addresses Facebook's effort "to establish, implement, and maintain controls" on third parties' use of user data.

Rather than address those concepts, this string seeks documents about user consent and targets documents that mention ████████████████████████████████████ ████████████████ are common, broad terms.  The string would thus return documents discussing explicit consent for *anything*, as long as the term ████ appears in the sentence (e.g. these █████████████████████████████████).  It would also return all documents where ███████████ (e.g. ████████████████████████████████████████████████████████).  None of this is related to this case, much less the three RFPs at issue.

2.   **Plaintiffs' document dump does not demonstrate any gap that their proposed string fills.**

On October 9, Plaintiffs provided Facebook a list of Bates Numbers for **280 documents** they "may rely on," including **6 documents** for this string.  They provided no indication of which documents they would cite, the documents' significance, or how any of the listed documents show this string is needed.  Without such information, Facebook cannot meaningfully respond.

Facebook notes that documents Plaintiffs listed in support of this string hit on strings included in Facebook's proposal.  The documents also *were produced* in this case, undermining any argument that they demonstrate a gap in Facebook's proposal or productions.

**ORDER:**          **DO NOT INCLUDE** ☐          **INCLUDE** ☐

**Plaintiffs' 422**

Plaintiffs' proposed string is duplicative of other strings and prior document productions.



1.   **Plaintiffs' string is duplicative of productions Plaintiffs already received.**

Plaintiffs' proposed string targets documents about ████ or ████ regarding private APIs (computing interfaces that define interactions between software intermediaries).

Plaintiffs already received responsive documents on this topic that Facebook produced to the FTC. Over Facebook's objection, Plaintiffs demanded that Facebook produce all of the FTC's document requests and the documents Facebook produced to the FTC in its related investigations. Indeed, Plaintiffs told Judge Chhabria that if Facebook turned over the materials it provided the FTC on any given topic, they would "just take" those materials "because it is so efficient to just send that out." *See* Nov. 4, 2019 Hr'g Tr. at 41:9-13.

The FTC's requests call for documents about risks and concerns with respect to private APIs. *See* FB-CA-MDL-00009478. Facebook produced the documents it produced to the FTC in response to this request. Yet, Plaintiffs ask Facebook to search **31 custodians** on the same topic, over a 13 year period. This demand is extraordinarily duplicative and overbroad, especially given that the FTC documents Plaintiffs received are responsive to this exact topic.

2.   **Plaintiffs' string is duplicative of other strings focused on private APIs and permissions.**

Plaintiffs also say this string fills a gap because it relates to "permissions that Facebook was granting the third parties." This topic is addressed by FB-25, 41, 42, 43, 55, 67, 68, 69, & 72.

Indeed, FB-25 directly covers ████████████████████████ :



3.   **Plaintiffs' document dump does not demonstrate any gap that their proposed string fills.**

Plaintiffs provided Facebook a list of Bates Numbers for **280 documents** they "may rely on," including **10 documents** for this string. They provided no indication of which documents they would cite, the documents' significance, or how any of the listed documents show this string is needed.

**ORDER:**          **DO NOT INCLUDE** ☐          **INCLUDE** ☐

## Plaintiffs' 458

Plaintiffs' proposed string primarily targets irrelevant documents; any relevant documents would be captured by Facebook's Proposal.



1. **Plaintiffs identified no gap in Facebook's Proposal that this string fills.**

2. **Plaintiffs' string has nothing to do with the identified RFPs, which relate to partnership agreements and instead targets documents relating to a query language.**

   The RFPs Plaintiffs identify for this search concern third parties' access to certain types of user data. Plaintiffs even explained that they need the search to target "[p]artnership agreements entered into for" users' content and information.

   That is not what this search targets. As Plaintiffs concede in their October 9 proposal, the search targets documents about ███████████████████████████████████████████
   ██████" Discussions using an acronym for a general query language are not related to the RFPs at issue. Indeed, the search targets language used by technical employees to pull data from **databases**. Such materials do not relate to partnership agreements about user data.

3. **To the extent this string targets materials about collecting user data, the string is duplicative of strings in Facebook's proposal.**

   This string about ████ is not needed to identify materials about collecting user data. FB-47 has nearly identical language on this issue, as shown in the bolded language above and below.

   

4. **Plaintiffs' custodian list is not appropriately tailored.**

   Plaintiffs propose running this search on **31 out of 38 custodians** without identifying why any of the 31 is an appropriate custodian for this search. This request is overbroad.

**ORDER:**     **DO NOT INCLUDE** ☐          **INCLUDE** ☐

**Plaintiffs' 467**

The proposed string targets inflammatory materials, is not tailored to the RFPs, and is duplicative of similar (appropriately targeted) searches in Facebook's Proposal.



1. **The proposed string is a fishing expedition for inflammatory materials and is not tailored to the identified RFPs.**

   Plaintiffs say this string targets documents responsive to RFPs 11, 12, 24, 25, 26, 28, 29, 31, and 55.  Each of these RFPs, however, relates to (i) third parties' access to certain data, (ii) third parties' relationship with Facebook, and (iii) Facebook's efforts to enforce its data-use policies against third parties.

   This string is not tethered to these topics; there are no terms in the string that tie it to third-party issues.  Instead, it seeks inflammatory materials using the terms ███████████████
   █████████████████████████████

   To the extent materials responsive to the identified RFPs include the words ██████████
   ████████   they will be captured by appropriate substantive searches tailored to the specific RFPs.  Indeed, the string is so untethered that it would capture documents reflecting personal conversations and concerns about violence (e.g. ███████████████████████████████
   ███████████████████████████████████████████████████████████.

2. **Facebook already accepted a narrower version of this string.**

   In an effort to compromise with Plaintiffs, Facebook already accepted a more tailored version of this proposed string, Plaintiffs' string 196:

   

   This string targets the same documents—namely, those that describe something ████████ regarding privacy and sharing user data, but is tailored to the topics at issue.

3. **Plaintiffs' custodian proposal is overbroad.**

   Plaintiffs say this string should be run on 31 of the 38 custodians.  Yet Plaintiffs do not explain why any of these 31 custodians likely possesses the documents the string targets.  This proposal seeks to revive Plaintiffs' approach of indiscriminately running strings against all of the custodians, which the Court has already rejected.

**ORDER:**        **DO NOT INCLUDE** ☐        **INCLUDE** ☐

## **Plaintiffs' 481**

Plaintiffs' proposed string is duplicative; Facebook has agreed to 6 strings on the same topics.



1. **Plaintiffs identified no gap in Facebook's Proposal that this string fills.**

2. **Plaintiffs' string is duplicative of strings in Facebook's Proposal but is not tailored to the theories at issue.**

   This string targets documents on two topics: (i) automatic permissions related to how user data is shared and (ii) sharing user data. Facebook's proposal includes two, appropriately-tailored terms that cover auto-granted permissions to share user data with third parties as a result of the theories at issue in this case (friend sharing, whitelisting, and integration agreements providing for data reciprocity):

   

   Facebook also accepted Plaintiffs' string 424, which includes ⬛⬛⬛⬛⬛⬛⬛⬛⬛ Facebook refers to Court to **Exhibit A** to review this search, which is too lengthy to reproduce here.

   On sharing user data, Facebook accepted three strings addressing this topic: Plaintiffs' Strings 124, 466, and 480.

   

   Plaintiffs' string is redundant of these strings but declines to include appropriate limiters targeting the search to the types of sharing at issue—sensitive user data that was allegedly shared with third parties as a result of friend sharing, whitelisting, or integration agreements providing for data reciprocity. See Dkt. 515 at 4-5.

4. **Plaintiffs' demand that Facebook run this string on 31 of 38 custodians without explanation is overbroad.**

**ORDER:**         **DO NOT INCLUDE** ☐         **INCLUDE** ☐

## Plaintiffs' 673

Plaintiffs' expletive-laden proposal is the epitome of an impermissible fishing expedition.



1. **This overbroad string adds nearly <u>400,000</u> documents and nearly <u>1.6 million pages</u>.**

2. **Plaintiffs identified no gap in Facebook's Proposal that this string fills.**

3. **Plaintiffs' string is a fishing expedition for non-responsive, salacious materials.**

   This string transparently seeks documents that use profanities, such as █████████████████████████████████████ Plaintiffs do not explain how this approach targets responsive documents, nor could they.

4. **Plaintiffs' search for profane language is not tailored to the identified RFPs.**

   Plaintiffs say this string targets documents responsive to RFPs 31, 32, and 53, which relate to investigations into data misuse by third parties and Facebook's internal privacy team.

   This string has nothing to do with these topics.  To the extent substantive and responsive materials include the expletives in Plaintiffs' string, they will be captured by the numerous substantive searches Facebook has included for these RFPs, including FB-24, FB-25, FB-26, FB-33, FB-34, FB-35, 84, 88, 93, 105, 196, 234, 260, 366.  An additional search targeting documents that use profane language along with broad terms is not needed and serves no good-faith purpose.  Profanity is not a subject-matter limiter.

5. **Plaintiffs' document dump does not demonstrate any gap that their proposed string fills.**

   On October 9, Plaintiffs provided Facebook a list of Bates Numbers for <u>**280 documents**</u> they "may rely on," including <u>**5 documents**</u> for this string.  They provided no indication of which documents they would cite, the documents' significance, or how any of the listed documents show this string is needed.  Without such information, Facebook cannot meaningfully respond.

   Facebook notes that documents Plaintiffs listed in support of this string hit on strings included in Facebook's proposal and *were produced* in this case, confirming additional searches targeting foul language are not needed.

**<u>ORDER</u>:**     **DO NOT INCLUDE**  ☐                    **INCLUDE**  ☐

DATE:  October 16, 2020          Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:  _Orin Snyder_
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*