Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judges: Hon. Vince Chhabria and<br>Hon. Jacqueline Scott Corley<br>Courtroom: VIA VIDEO CONFERENCE<br>Hearing Date: October 30, 2020<br>Hearing Time: 8:30 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for October 30, 2020 at 8:30 a.m.

## I.     PLAINTIFFS' STATEMENT

### 1.  Issues the Parties Have Addressed Since the Last Discovery Conference

**a.     Search Terms:** Plaintiffs agree with Facebook that the search string negotiation process has been inefficient and propose a more streamlined process for the remainder of the process. The parties have had preliminary discussions that will need to take into account Discovery Order No. 8. The new search term process provided by Facebook in its statement does not take into account Discovery Order No. 8, nor the necessary modifications to balance the proposal. Plaintiffs ask the Court to allow the parties to consider its order and attempt to reach agreement on a new process, including resolution of outstanding disputes as to the custodians to which terms should be applied in Groups 1-4. However, if the Court is inclined to mandate a new process that takes into account Facebook's new proposal, Plaintiffs have attached proposed revisions to Facebook's statement as Exhibit A.

Plaintiffs have made every effort to accept Facebook's changing demands. For example, Plaintiffs accepted in near entirety Facebook's proposal as to timing and procedure of identifying custodians in order to avoid further litigation about process. This meant accepting Facebook's highly unusual demand for four months to conduct "custodial interviews." The parties jointly submitted a stipulation with the objective of "propos[ing] a comprehensive set of search terms that would apply to a broad spectrum of custodians…[which] is intended to minimize the need to revisit previously agreed-upon terms as the parties' negotiations progress." Stipulation and Order for Search Term Negotiation Schedule and Process, Dkt. No. 461 (the "Stipulation").

Unfortunately, immediately thereafter, Facebook deviated from this agreement. Instead, Facebook insisted on piecemeal negotiation of each search string and to apply them to specific individual custodians, rather than the agreed-upon custodians groupings set forth in the Stipulation. Additionally, at pivotal stages in the negotiation process, Facebook failed to provide Plaintiffs with necessary information as ordered by the Court, including custodial hit counts as to

their July 31 proposal. Further, Plaintiffs did not receive responses or counter proposals, leaving Plaintiffs to essentially negotiate both against themselves and in the dark. For example, Facebook refused to substantiate its burden claims by identifying even one document through sampling or otherwise that was irrelevant – a highly unusual approach to search string negotiations.

Facebook also repeatedly asserts that Plaintiffs proposed "more than 650 search strings." This is false. Facebook appears to have employed the same math here as it did when it disputed the number of interrogatories served by Plaintiffs by dividing Plaintiffs' proposed strings into multiple subparts and then counting each individual subpart. It is not helpful or appropriate for Facebook to criticize Plaintiffs for compromising, especially when the parties agreed upon 91 strings.

Both parties have suffered. For this reason, last week Plaintiffs introduced the idea of an amended process for negotiating the remaining search terms. Facebook rejected Plaintiffs' proposal, countering with an unworkable plan that includes preventing Plaintiffs from identifying any more strings, when strings for entire groups of custodians with different job functions have not been discussed. Plaintiffs believe the most efficient and simple path forward is to apply terms across custodians going forward as originally agreed by the Parties and to negotiate a limited set of additional terms specific to the unaddressed custodians and pending RFPs. We are hopeful the parties can find common ground in short order and present the Court with a reasonable and efficient proposal.

   **b.**  **Requests for Production ("RFPs") Still in Dispute**:  Plaintiffs issued their Third and Fourth sets of RFPs on May 6 and June 12, respectively. The parties have conferred on multiple occasions but Plaintiffs await Facebook's final positions on nearly all of them. As Facebook noted in its draft of this statement sent to Plaintiffs on Wednesday, Facebook has deferred nearly every aspect of discovery other than negotiating search terms: "Nearly every stage of this case—privilege disputes, depositions, experts, class certification and dispositive motions—is on pause until review occurs." Plaintiffs agree this is problematic. For example,

aside from 64 pages regarding the ADI investigation, Facebook has not produced any documents relating to Facebook's conduct in this case since April 1, 2020, focusing instead on producing .pdfs of Named Plaintiffs' platform activity available to them already through the Facebook DIY tool.

One solution is to focus on document productions that can be easily collected and produced. As the Court noted in an early discovery conference, there are a number of RFPs seeking documents for which the parties agree search terms are not necessary, such as requests for manuals about how Facebook maintains data; documents sufficient to show how Facebook recognizes revenue on user data; or even something as simple as documents Facebook relied on in responding to interrogatories. Documents that can be identified and produced without search terms should not be withheld until after production of documents that require running search terms. Sequencing discovery in this manner will result in unnecessary delay. To that end, Plaintiffs have proposed a timeline for addressing such requests in conjunction with its proposal regarding the search terms process. Plaintiffs anticipate following the steps set forth in the Stipulation and Order on Discovery Dispute Resolution Procedures entered by the Court on March 31, 2020 to resolve these disputes.

Finally, Plaintiffs do not understand Facebook's claim that Plaintiffs "seek to negotiate further collections for 26 additional RFPs." Plaintiffs have been and continue to be willing to meet and confer with Facebook regarding its concerns and suggest that Facebook participate in that process.

    **c.**    **Plaintiffs' Fourth Set of Interrogatories**:  Plaintiffs issued their fourth set of interrogatories on July 16, 2020. Facebook has still not provided substantive responses to many of these interrogatories. Among other threshold areas of discovery, these interrogatories ask Facebook to identify which third parties acquired users' private, sensitive information, as well as the identities of the whitelisted apps and the partners with whom Facebook had data reciprocity agreements. Facebook objected to many of Plaintiffs' interrogatories on the basis of numerosity and provided no substantive responses. The parties have met and conferred on the interrogatories

on multiple occasions. Following the last status conference, Facebook agreed to amend to provide substantive responses by November 20, but now hedges again, stating that it may not be able to amend its responses to all of the interrogatories by that date. Plaintiffs request that Facebook be ordered to provide complete responses on or before November 20, 2020.

   **d. Confidentiality Dispute:** Pursuant to this Court's October 7 order, the parties again met and conferred regarding the confidentiality of Exhibit C to Plaintiffs' Opposition to Defendants Facebook, Inc's Request to Enforce the Partial Stay of Discovery in Pretrial Order No. 20 and Cross-Motion to Compel Discovery Related to Requests for Production Nos. 9 through 13. Plaintiffs downloaded Exhibit C from the NBC public website four months before Facebook produced the same document and improperly designated it confidential in this action. Regardless of any sealing order this Court may issue, that document will remain in the public record, and the Protective Order in this case expressly states that the order does not apply to public documents. PTO No. 10, ¶ 3(a). For these reasons, Plaintiffs did not file the document under seal. Facebook disagrees, taking the position that it can designate public documents as confidential in this action. Because the parties were unable to come to an agreement, Plaintiffs submit the matter to the Court pursuant to the briefing already on file.

   **e. Additional Confidentiality Issues:** On August 21, 2020, Plaintiffs notified Facebook of 44 additional documents that were in the public domain before the company produced them in this action and asserted confidentiality over them, including a lesser-included email string containing the substance of Exhibit C. Pursuant to paragraph 6.3 of Pretrial Order No. 10, after such notice, "[f]ailure by the Designating Party to make such a motion [to retain confidentiality] including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation." Facebook did not make such a motion within 21 days of receiving notice.

   **f. Discovery of Named Plaintiffs.** Facebook issued interrogatories to all 23 Named Plaintiffs on August 21. Given the difficulties in obtaining responsive information for these interrogatories from individuals throughout the country during a pandemic, Facebook granted

Plaintiffs the courtesy of an extension to respond until November 5. Heeding the Court's suggestion that Plaintiffs propose fewer class representatives, Plaintiffs have advised Facebook that they will reduce the number of plaintiffs to be proposed as class representatives from 23 to 10. Plaintiffs are currently preparing a draft stipulation to voluntarily withdraw the remaining Named Plaintiffs.

      **g.**    **Privilege Log Challenge:** Plaintiffs challenged 1,599 of Facebook's 4,432 initial privilege log entries on October 2, 2020. Facebook has informed Plaintiffs they will take 60 days to respond to Plaintiffs' letter transmitting the challenges by December 2, 2020.

      **h.**    **Named Plaintiffs' Data:** The parties completed briefing of this issue on October 19.

      **i.**    **Amended Case Schedule:** Plaintiffs have raised numerous times with Facebook the need for an amended case scheduling order in light of the impact of COVID-19 and other delays on the parties' discovery process. Plaintiffs propose that the Court set specific short-term deadlines for the resolution of specific tasks, such as submitting a deposition protocol (Plaintiffs sent Facebook a proposal in June), an expert stipulation, responding to interrogatories, and substantial completion of document production. However, Plaintiffs ask that, to the extent any previously-ordered deadlines are lifted, new deadlines be established in their place.

## II. FACEBOOK'S STATEMENT

### I. Progress.

Facebook is pleased to report substantial progress. Over the last six weeks:

- The parties submitted extensive briefing regarding the scope of discovery;
- The parties briefed a motion to dismiss UK Plaintiffs from the case;
- The parties briefed 85 pages regarding the search strings to be run on 38 custodians;
- The parties negotiated more than 500 disputed search strings;
- Facebook produced the data it has located for the Plaintiffs added in August;
- The parties reached an agreement for Facebook to review and log exemplar materials from its App Developer Investigation ("ADI");
- Facebook reviewed and produced non-privileged ADI-related documents; and
- Facebook began logging thousands of exemplar privileged ADI documents.

In addition to this progress, in the coming weeks Facebook will: continue investigating dozens of issues to respond to Plaintiffs' interrogatories; log thousands of privileged documents for the ADI sampling exercise; respond to a letter from Plaintiffs regarding Facebook's first privilege log, which demands details on more than 1500 documents (most have minimal redactions); and continue negotiating with Plaintiffs on an expert stipulation and confidentiality designations.

On top of all of this, Plaintiffs ask to negotiate **26 RFPs** they served after the search term process began—and which they assured the Court were built into the negotiated search strings[1] —yet for which they now demand additional collections and review, adding to the millions of

---

[1] Facebook raised previously its concern that Plaintiffs seek substantial materials beyond those targeted by the parties' search string negotiations because Plaintiffs issued two sets of RFPs after the search term process was put in place. Plaintiffs assured the Court this concern was unfounded. The Court asked: "The new . . . most recent document requests that you submitted, are the search terms that the parties are negotiating, is that encompassed within it?" 9/4/2020 Tran. at 7:18-21. Plaintiffs responded: "We have worked to craft some comprehensive terms that will cover, you know, the majority of the new RFPs, which are largely more specific or clarifying subsets. There is a small group that we think, you know, will require additional terms." *Id*. at 8:1-6. The Court confirmed: "**Okay. So when we're taking about search terms, then, we're really talking about the vast majority of all the requests that are out there. That's what I wanted to make sure. That we're not going seriatim**." *Id*. at 8:7-10.
   Plaintiffs later clarified to Facebook that their proposal actually covered **only 26 of Plaintiffs' 63 RFPs**—including only 6 of the RFPs in their new requests. Plaintiffs now argue Facebook should undertake additional collections for *all* of their recent requests—including 20 for which they did not propose search strings and the 6 for which they did but say more collections are needed. Plaintiffs also refuse to identify the collections they request. Plaintiffs indicated that if the Court rules against them on certain strings, they will demand that Facebook collect the same materials through targeted collections. Plaintiffs should be held to their word that the negotiated search strings cover most RFPs and only a "small group" will require collections and review beyond the millions of documents identified through search strings.

documents to be identified through search strings.

## II.     Request for additional structure and deadlines.

Facebook respectfully seeks assistance to impose a streamlined process to complete the parties' negotiations regarding search strings and document collections. Facebook would like discovery to move forward promptly so the case does not linger in discovery for years and so the parties can litigate on the merits. But the parties have returned to a whack-a-mole process with no end in sight. The parties need structure to ensure an orderly and efficient process that does not allow backtracking or an open book on document collection for the indefinite future.

**The parties must conclude their search string and document negotiations so that Facebook can begin a coordinated document review.** Facebook has now produced more than **1.5 million** pages, largely through piecemeal, targeted collections. Facebook has been asking Plaintiffs since February to reach an agreement regarding custodians and searches so it can finally begin a unified document review. Nearly every stage of the case—privilege disputes, depositions, experts, class certification, and motions—awaits completion of this review. Yet, search strings have been negotiated for only half the custodians. Plaintiffs now demand more collections for 26 RFPs beyond the millions of documents identified through search strings. And they now reveal that they seek to double back by adding even more custodians to the case.

**Facebook requests a streamlined process to reach final agreement on search strings.** The parties' search string negotiations for the first 38 custodians required many hundreds of attorney hours to whittle *the more than 650 search strings originally in dispute to the 23 Plaintiffs chose to brief.* Facebook hopes the parties' ongoing negotiations will be more efficient. But Facebook is concerned because the parties exchanged proposals for the remaining 43 custodians in September before they negotiated searches in earnest for the first set of custodians. As a result, Plaintiffs' counterproposal *includes the same 500+ search strings they proposed originally for the prior custodians*—nearly all of which were later dropped or revised.

The Parties agree they should exchange new proposals for the remaining custodians. But Plaintiffs suggest they should be permitted to repropose strings that were dropped, renegotiate

strings on which the parties reached a compromise, draft entirely new strings, and even relitigate strings the court resolved. Facebook respectfully asks the Court to Order the parties to adopt the following process, under which the Court's Order on the parties' search string dispute for the first 38 custodians would be the starting point for ongoing discussions. Facebook notes it has received the Court's order and is evaluating it currently.

1. ***Facebook will make a new proposal based on the Court's Order.*** Within 10 days of the Court's Order on the parties' initial search string dispute, Facebook will make a revised search string proposal (with hit counts) for the remaining 43 custodians. Facebook will not revise any strings to which the parties agreed or the Court ordered for the prior custodians. If its proposal *excludes* any such strings, it will explain in writing why the string is excluded. Any string Facebook proposes that was not agreed to or ordered by the Court must come from Facebook's prior proposal for the remaining custodians. Facebook will explain why any such string is fitting for the proposed custodians even though it was not fitting for the prior custodians.

2. ***Plaintiffs will make a counterproposal, also based on the Court's Order.*** Within 7 days of receiving Facebook's proposal, Plaintiffs will make any counterproposal. Plaintiffs' counterproposal will not revise any strings to which the parties agreed or the Court ordered for the prior custodians. Any string Plaintiffs propose that was not agreed to or ordered by the Court must come from Plaintiffs' prior proposal for the remaining custodians. For any such string, Plaintiffs must explain in writing and with particularity (i) the gap in Facebook's proposal that the string fills, and (ii) why the string is fitting for the proposed custodians, even though it was not for the prior custodians. If Plaintiffs ask Facebook to run strings proposed by Facebook against the files of additional custodians, Plaintiffs will explain in writing and with particularity why each string should be run against each additional custodian's files

3. ***Negotiations will be limited to two weeks.*** Facebook will generate hit counts on Plaintiffs' counterproposal within 5 business days. The parties will then meet and confer for no more than two weeks, during which time Facebook will run hit counts on no more than one additional proposal from Plaintiffs. If disputes remain after that time, the parties will present

them to the Court in the same format as their prior search string submissions.

4. *Any other collections will be identified and limited*. Plaintiffs will identify by November 13 the "small group" of RFPs for which they seek additional collections, and explain in detail the additional materials they seek and why they are not covered by the search strings.

Without a focused process, search string discussions will likely continue for months.

**<u>Once the scope of documents to be reviewed is known, the parties should negotiate a case schedule within 2 weeks.</u>** Facebook understands and appreciates that the case schedule became unworkable and it has been difficult to set new deadlines given disputes regarding the volume of documents to be reviewed and uncertainty regarding when that process can begin. Unfortunately, the lack of goalposts is allowing discovery to expand daily to fill the time, and is being used to take unreasonable positions that unwind progress. A new schedule is needed.

**III.    Issues raised by Plaintiffs.**

Facebook is disappointed by Plaintiffs' use of status updates to seek off-the-cuff rulings on issues the parties have not discussed—frequently leaving Facebook and its counsel less than a day to prepare positions on multiple complex issues that were not on the agenda.

**<u>Plaintiffs may not end-run the Court's orderly process</u>**. Before this case was referred to Your Honor, the parties were in a morass of disputes and agreed to an expedited dispute process in an effort to make progress. As with any expedited dispute process, the problem was it allowed Plaintiffs to unilaterally interrupt the parties' progress by initiating fire-drill briefing on arbitrary matters. The process was never actually invoked. Instead, at the first hearing before Your Honor, the Court made clear it would work with the parties to set an orderly agenda between hearings. Plaintiffs indicate in their statement that they seek to abandon the order the Court has brought, so they can set off rapid-fire briefing on new sets of RFPs that have never even been on the agenda.

In any event, Facebook did not—as Plaintiffs say—stand on its objections to many of Plaintiffs' new RFPs. Facebook told Plaintiffs it understood that many of these RFPs were addressed by search strings and that the scope of relevant materials would be defined by the Court's order on the scope of discovery. Facebook also told Plaintiffs that their request to scour financial

materials in support of a damages theory is premature. The Court has not issued an Order regarding the scope of the case. No class is certified. And Plaintiffs have not even informed Facebook which third parties they believe accessed their data and what data they believe was shared. Plaintiffs are not entitled to fish through every aspect of Facebook's finances merely because their 1440 paragraph pleading includes an unjust enrichment claim (in addition to breach of contract claims).

**There is no basis to add additional custodians now**. After nearly a year of negotiations, the parties finally completed their custodian negotiations and one (excruciating) round of search string discussions, and Facebook will be reviewing **millions** of documents from **81 custodians'** files. Plaintiffs now say they want to backtrack to introduce *more* custodians. Plaintiffs' "never enough" approach keeps moving the case **backward** not forward. If, after Plaintiffs review the millions of documents to be identified through search terms, they identify a gap in Facebook's productions, the parties can discuss whether additional custodians are needed at that time.

**Documents leaked in violation of a protective order remain confidential**. Facebook is perplexed by Plaintiffs' request that the Court bless another party's violation of a protective order so that Plaintiffs can file the leaked documents publicly. Facebook is happy to submit full briefing on this issue—the only briefing filed is an emergency administrative motion to remove from the docket materials Plaintiffs filed improperly. Facebook did not waive its claim of confidentiality over these documents while the parties have been meeting and conferring on this topic.

**Facebook is timely responding to interrogatories**. Plaintiffs asked for **ten weeks** to answer **ten** discrete interrogatories regarding the bases of their own allegations. Facebook granted that request. Plaintiffs' interrogatories ask **hundreds** of complex questions on a broad range of topics. Facebook timely responded, providing substantive answers to 57 questions, without any extension. Facebook agreed to supplement by November 20. Some of Plaintiffs' interrogatories will take longer because answering requires investigations of issues spanning more than ten years and a review of the documents being identified currently through search strings.

**Hearing on the scope of discovery.** As Plaintiffs note, the parties finished briefing the scope of discovery. The Court indicated it would hold a hearing on this issue. Facebook

respectfully requests that the Court set a hearing date at the Court's convenience.

Dated: October 29, 2020                                      Respectfully submitted,

KELLER ROHRBACK L.L.P.                                       BLEICHMAR FONTI & AULD LLP

By:   */s/ Derek W. Loeser*                                  By:   */s/ Lesley E. Weaver*
       Derek W. Loeser                                              Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)                    Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*)             Anne K. Davis (SBN 267909)
David J. Ko (admitted *pro hac vice*)                        Matthew P. Montgomery (SBN 180196)
Benjamin Gould (SBN 250630)                                  Angelica M. Ornelas (SBN 285929)
Adele Daniel (admitted *pro hac vice*)                       Joshua D. Samra (SBN 313050)
1201 Third Avenue, Suite 3200                                555 12th Street, Suite 1600
Seattle, WA 98101                                            Oakland, CA 94607
Tel.: (206) 623-1900                                         Tel.: (415) 445-4003
Fax: (206) 623-3384                                          Fax: (415) 445-4020
dloeser@kellerrohrback.com                                   lweaver@bfalaw.com
claufenberg@kellerrohrback.com                               adavis@bfalaw.com
dko@kellerrohrback.com                                       mmontgomery@bfalaw.com
bgould@kellerrohrback.com                                    aornelas@bfalaw.com
adaniel@kellerrohrback.com                                   jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue

New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of October, 2020, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

# CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on October 29, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

Paven Malhotra
Bryn Anderson Williams
pmalhotra@keker.com
bwilliams@kvn.com

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs