| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*) <br> KELLER ROHRBACK L.L.P. <br> 1201 Third Avenue, Suite 3200 <br> Seattle, WA 98101 <br> Tel.: (206) 623-1900 <br> Fax: (206) 623-3384 <br> dloeser@kellerrohrback.com | Orin Snyder (admitted *pro hac vice*) <br> GIBSON, DUNN & CRUTCHER LLP <br> 200 Park Avenue <br> New York, NY 10166-0193 <br> Tel.: 212.351.4000 <br> Fax: 212.351.4035 <br> osnyder@gibsondunn.com |
| Lesley E. Weaver (SBN 191305) <br> BLEICHMAR FONTI & AULD LLP <br> 555 12th Street, Suite 1600 <br> Oakland, CA 94607 <br> Tel.: (415) 445-4003 <br> Fax: (415) 445-4020 <br> lweaver@bfalaw.com | Joshua S. Lipshutz (SBN 242557) <br> GIBSON, DUNN & CRUTCHER LLP <br> 1050 Connecticut Avenue, N.W. <br> Washington, DC 20036-5306 <br> Tel.: 202.955.8500 <br> Fax: 202.467.0539 <br> jlipshutz@gibsondunn.com |
| *Plaintiffs' Co-Lead Counsel* <br> *Additional counsel listed on signature page* | *Attorneys for Defendant Facebook, Inc.* <br> *Additional counsel listed on signature page* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843 <br> Case No. 18-md-02843-VC-JSC |
| This document relates to: <br><br> ALL ACTIONS | **JOINT STATUS UPDATE** <br><br> Judges: Hon. Vince Chhabria and <br> Hon. Jacqueline Scott Corley <br> Courtroom: VIA VIDEO CONFERENCE <br> Hearing Date: November 5, 2020 <br> Hearing Time: 11:00 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for November 5, 2020 at 11:00 a.m.

## I.   PLAINTIFFS' STATEMENT

### 1. Issues the Parties Have Addressed Since the Last Discovery Conference

a.   **Search Terms:** Plaintiffs agree with Facebook that the search string negotiation process has been inefficient. For this reason, two weeks ago Plaintiffs introduced the idea of an amended process for negotiating the remaining search terms. Plaintiffs believe the most efficient and simple path forward is to apply terms across the groups of custodians originally proposed by Facebook (e.g. Group 1) as contemplated in the Stipulation and Order for Search Term Negotiation Schedule and Process, Dkt. No. 461 (the "Stipulation") and to negotiate a limited set of additional terms specific to the unaddressed custodians and pending RFPs.

Following the Court's Discovery Order No. 8, the parties met and conferred on multiple occasions to reach agreement on such a revised protocol. They have been unable to reach complete agreement but appear to have agreed in principle that the parties will use the terms for the Group 1-4 custodians as a starting point for the Parties' negotiations of the search strings to apply to Group 5-8 custodians; that Facebook will provide its response to Plaintiffs' counterproposal; and that the parties will limit the negotiation period. In addition, Plaintiffs have proposed to offer no more than 35 additional terms in their counterproposal to be applied to the custodians in Groups 5-8 for this set of RFPs.

However, two issues remain unresolved. First, Facebook insists upon negotiating search terms for each individual custodian, which is inefficient and contrary to the previously entered Stipulation. In the Stipulation, Plaintiffs agreed to allow Facebook four months to engage in its "custodial interviews." Plaintiffs also agreed to Facebook's grouping of the 91 custodians into eight groups, sorted by Facebook into buckets relating to their knowledge that would be responsive to Plaintiffs' RFPs. The express goal was that search terms could be applied to all custodians within each specific group. Indeed, that is precisely the reason for the groups. Unfortunately, Facebook deviated from this agreement in the last round of negotiations, creating

a piecemeal process that required separately negotiating individual custodians for each search string as well as negotiating each of the strings themselves, rather than the agreed-upon custodians groupings set forth in the Stipulation. This significantly delayed the process, so much so that disputes still remain regarding the custodians for the first set of agreed upon search terms. Altering the agreed upon process eliminated the efficiency that was intended by the creation of custodian groups – groups that Facebook itself created.

Second, the parties disagree as to when Facebook should begin producing documents. Again, Facebook is deviating from the Stipulation, which requires Facebook to apply agreed-upon search terms on an iterative basis and begin producing documents within 30 days of agreement. Of course, the parties did not reach total agreement and the Court ordered some strings, but this should not alter the production schedule.  For this reason, Plaintiffs ask that Facebook begin its rolling productions 30 days from the Discovery Order No. 8, or November 30, 2020.  Facebook disagrees, and wishes to wait until there is agreement on all strings and custodians to begin producing documents, with no explanation as to why it is taking a different approach than its previous agreement.  This will delay production for months.

In light of these differences, Plaintiffs attach as Exhibit A their revised proposal for a path forward on search term negotiations and other outstanding issues pertaining to document discovery.  Plaintiffs respectfully request that the Court order the parties to adopt the procedures set forth in Exhibit A so that the remaining search terms and custodians can be negotiated in the more straightforward and efficient manner intended by the parties' initial Stipulation.  This would substantially streamline the process going forward.

b. **Requests for Production ("RFPs") Still in Dispute**:  Plaintiffs issued their Third and Fourth sets of RFPs on May 6 and June 12, respectively. The parties have conferred on multiple occasions but Plaintiffs await Facebook's final positions on nearly all of them. As Facebook noted in its previous discovery statement sent, Facebook has deferred nearly every aspect of discovery other than negotiating search terms: "Nearly every stage of this case— privilege disputes, depositions, experts, class certification and dispositive motions—is on pause

until review occurs." Plaintiffs agree this is problematic. For example, aside from 64 pages regarding the ADI investigation, and the re-production of documents previously produced to regulators, with its last substantial production in early July, Facebook has focused mostly on producing .pdfs of Named Plaintiffs' platform activity available to them already through the Facebook DIY tool.

One solution is to focus on document productions that can be easily collected and produced. As the Court noted in an early discovery conference, there are a number of RFPs seeking documents for which the parties agree search terms are not necessary, such as requests for manuals about how Facebook maintains data; documents sufficient to show how Facebook recognizes revenue on user data; or even something as simple as documents Facebook relied on in responding to interrogatories. Documents that can be identified and produced without search terms should not be withheld until after the entire production of documents identified by search terms is complete. Sequencing discovery in this manner will result in unnecessary delay. To that end, Plaintiffs have proposed a timeline for addressing such requests in conjunction with its proposal regarding the search terms process. Facebook suggests that Plaintiffs are seeking an end-run around the Court's framework for resolving discovery disputes. Not so. Plaintiffs anticipate following the steps agreed upon by Facebook and set forth in the Stipulation and Order on Discovery Dispute Resolution Procedures entered by the Court on March 31, 2020 to resolve these disputes.

    c.    **Plaintiffs' Fourth Set of Interrogatories**: Plaintiffs issued their fourth set of interrogatories on July 16, 2020. Facebook has still not provided substantive responses to many of these interrogatories. Among other threshold areas of discovery, these interrogatories ask Facebook to identify which third parties acquired users' private, sensitive information, as well as the identities of the whitelisted apps and the partners with whom Facebook had data reciprocity agreements. Facebook objected to many of Plaintiffs' interrogatories on the basis of numerosity and provided no substantive responses, despite lengthy conferences to discuss them. Following the last status conference, Facebook agreed to amend to provide substantive responses by

November 20, but now hedges again, stating that it may not be able to amend its responses to all of the interrogatories by that date. Plaintiffs have asked Facebook to provide complete responses on or before November 20, 2020 but Facebook has not so agreed.

      d.      **Confidentiality Dispute:**  Pursuant to this Court's October 7 order, the parties again met and conferred regarding the confidentiality of Exhibit C to Plaintiffs' Opposition to Defendants Facebook, Inc's Request to Enforce the Partial Stay of Discovery in Pretrial Order No. 20 and Cross-Motion to Compel Discovery Related to Requests for Production Nos. 9 through 13. As indicated in Plaintiffs' October 29 statement, Plaintiffs downloaded Exhibit C from the NBC public website four months before Facebook produced the same document and improperly designated it confidential in this action. Regardless of any sealing order this Court may issue, that document will remain in the public record. Because the parties were unable to come to an agreement, Plaintiffs submit the matter to the Court pursuant to the briefing already on file.

      f.      **Discovery of Named Plaintiffs.**  Facebook issued interrogatories to all 23 Named Plaintiffs on August 21. Given the difficulties in obtaining responsive information for these interrogatories from individuals throughout the country during a pandemic, Facebook granted Plaintiffs the courtesy of an extension to respond until November 5. Heeding the Court's suggestion that Plaintiffs propose fewer class representatives, Plaintiffs have advised Facebook that they will reduce the number of plaintiffs to be proposed as class representatives from 23 to 10. Plaintiffs are currently preparing a draft stipulation to voluntarily withdraw the remaining Named Plaintiffs.

      g.      **Privilege Log Challenge:** Plaintiffs challenged 1,599 of Facebook's 4,432 initial privilege log entries on October 2, 2020. Facebook has informed Plaintiffs they will take 60 days to respond to Plaintiffs' letter transmitting the challenges by December 2, 2020.

      h.      **Named Plaintiffs' Data:**  The Court's Discovery Order No. 9 identified the following three categories of user data to be discoverable: "(1) Data collected from a user's on-platform activity; (2) Data obtained from third parties regarding a user's off-platform activities;

and (3) Data inferred from a user's on or off-platform activity." ECF No. 557 at 2. Consistent with this Order, the parties have begun the process of meeting and conferring to determine how Plaintiffs can obtain these categories of information that are responsive to Plaintiffs' discovery requests. Plaintiffs submit that responsive information should begin being produced on a rolling basis no later than November 20, 2020.

    **i.**    **Amended Case Schedule:** Plaintiffs have raised numerous times with Facebook the need for an amended case scheduling order in light of the impact of COVID-19 and other delays on the parties' discovery process. Plaintiffs propose that the Court set specific short-term deadlines for the resolution of specific tasks, such as submitting a deposition protocol (Plaintiffs sent Facebook a proposal in June), an expert stipulation, responding to interrogatories, and substantial completion of document production. Further, Plaintiffs ask that, to the extent any previously-ordered deadlines are lifted, new deadlines be established in their place.

**FACEBOOK'S STATEMENT**

Facebook respectfully seeks the Court's assistance to keep this case on an orderly, forward-looking path. The parties are working hard, but Plaintiffs continue to undermine the Court's well-considered orders (intended to bring structure to the case) by insisting on an unfocused whack-a-mole process that would unwind past agreements and work. Facebook would like to move forward efficiently so the case does not linger in discovery for years and so the parties can litigate on the merits. First and foremost, the parties must finally complete their search string discussions and avoid the constant backtracking and diversions Plaintiffs demand. Facebook invites the Court to reiterate its direction that the parties focus on an orderly agenda.

**I.**    **Progress and upcoming agenda items.**

Over the last six weeks:
- The parties submitted extensive briefing regarding the scope of discovery;
- The parties briefed a motion to dismiss UK Plaintiffs from the case;
- The parties briefed 85 pages regarding the search strings to be run on 38 custodians;
- The parties negotiated more than 500 disputed search strings;

- Facebook produced the data it has located for the Plaintiffs added in August;
- The parties reached an agreement for Facebook to review and log exemplar materials from its App Developer Investigation ("ADI");
- Facebook reviewed and produced non-privileged ADI-related documents;
- Facebook began logging thousands of exemplar privileged ADI documents; and
- The parties exchanged draft proposals for ongoing search string negotiations.

In the coming weeks, Facebook will be setting up a review of the millions of documents identified through search strings for the first 38 custodians. The parties will negotiate search strings for the remaining 43 custodians. Facebook will conduct statistical sampling on disputed strings—which likely will involve the review of tens of thousands of documents—followed by further negotiations and briefing on any strings remaining in dispute. Facebook will continue investigating dozens of issues to respond to Plaintiffs' interrogatories and serve updated responses. It will log thousands of privileged documents for the parties' ADI sampling exercise. Facebook will respond to a letter from Plaintiffs regarding its first privilege log, which demands details on more than 1500 documents. And the parties will negotiate an expert stipulation.

The parties must complete their search negotiations and focus on these issues, rather than revisiting prior agreements, and before Plaintiffs' demands: (i) to negotiate 26 more RFPs, (ii) for additional "targeted collections," and (iii) to conduct expedited briefing on non-urgent topics.

## II.     The parties must complete their search negotiations and avoid backward progress.

Facebook has asked since February to reach a search string agreement so it can conduct a coordinated review and cease piecemeal collections. Almost a year later, search strings are identified for only half the custodians, and Plaintiffs already seek to unwind those negotiations.

The parties' search string negotiations for the first 38 custodians were difficult and required many hundreds of attorney hours to whittle ***the more than 500 search string disputes Plaintiffs raised initially to the 23 they chose to brief***.[1] Several months and an incredible amount of make-work went into negotiating terms Plaintiffs apparently did not intend to pursue.

---

[1] Plaintiffs' proposal included **461 complex strings** beyond what Facebook proposed and expansive revisions to **74 strings** Facebook proposed. These numbers do not, as Plaintiffs suggest, separately count the thousands of subparts within Plaintiffs' proposed strings.

Plaintiffs now seek to redo much of that work. Plaintiffs demand to negotiate additional collections and strings for **26 RFPs** they assured the Court were built into the searches for the first 38 custodians.[2] Although the parties submitted their disputes regarding those searches, Plaintiffs demand to negotiate additional strings to be run on those 38 custodians' files. They also seek to reopen discussions regarding the custodians' files on which the approximately 80 Facebook strings to which they agreed will be run. These strings—which Plaintiffs accepted— were proposed for specific custodians. Plaintiffs now demand Facebook run them on numerous additional custodians, unwinding the progress made and massively increasing the hit counts presented to the Court. Plaintiffs also seek to add more custodians to the 81 already in the case and begin search string negotiations anew for those custodians. Plaintiffs are causing the parties to move backwards. The parties must complete their search negotiations and move on.

### III. Request for additional structure around search string negotiations.

The parties need a streamlined process to complete their search negotiations that requires them to exercise discipline and avoid backtracking. Facebook proposes a streamlined process to leverage the work the parties and the Court already completed, attached as **Facebook Exhibit A**.

Facebook's proposal requires the parties to work from the approximately 100 search strings already agreed upon or ordered, unless a party *explains* why an additional search should be included or a prior search excluded. Most importantly, the process proposal requires the parties to exercise judgment in preparing search string proposals and not present extreme

---

[2] Facebook raised previously its concern that Plaintiffs seek substantial materials beyond those targeted by the parties' search string negotiations because Plaintiffs issued two sets of RFPs after the search term process was put in place. Plaintiffs assured the Court this concern was unfounded. The Court asked: "The new . . . most recent document requests that you submitted, are the search terms that the parties are negotiating, is that encompassed within it?" 9/4/2020 Tran. at 7:18-21. Plaintiffs responded: "We have worked to craft some comprehensive terms that will cover, you know, the majority of the new RFPs, which are largely more specific or clarifying subsets. There is a small group that we think, you know, will require additional terms." *Id*. at 8:1-6. The Court confirmed: "**Okay. So when we're taking about search terms, then, we're really talking about the vast majority of all the requests that are out there. That's what I wanted to make sure. That we're not going seriatim**." *Id*. at 8:7-10. Plaintiffs now take the position that their proposal actually covered only **26 of Plaintiffs' 63** RFPs—including only 6 of the RFPs in their 26 new requests. That's directly at odds with what they told the Court. Plaintiffs should be held to their word that the negotiated searches cover most new RFPs and only a "small group" (not 20+) require collections and review beyond the millions of documents identified through search strings.

positions meant to function as a bargaining chip and create unnecessary work.

Plaintiffs provided Facebook a counterproposal late last night, which unwinds the hard work completed to date and opens the door for unnecessary make-work and posturing.

1. **Plaintiffs disregard Discovery Order 8**. Their proposal *removes* language lifted from Discovery Order 8 stating the Order will be the starting point for the parties' negotiations.

2. **Plaintiffs *remove* language requiring the parties to make good-faith proposals**. Their proposal removes language stating the parties' proposals will "reflect their best judgment and discretion regarding the final searches to be run. All proposed searches shall be searches the parties would, in good faith, feel confident presenting to the Court."

3. **Plaintiffs' proposal reopens negotiations on strings/custodians the Court already ruled on**. After months of grueling negotiations, the Court ordered a process for resolving disputes about searches for the first 38 custodians. The parties submitted disputes through that process, which the Court resolved. That should end the negotiations. Plaintiffs' proposal double backs and would require the parties to *reopen* negotiations over the custodians on whose files the ~80 "agreed upon" strings should be run. Plaintiffs *accepted* these strings, which Facebook proposed *with custodians*, and *chose not to raise them as "disputed" in their search string briefing*—which relied on hit counts generated based upon the custodians for which Facebook proposed running the strings. The Court should not permit Plaintiffs to re-trade the parties' previously concluded agreements.

4. **Plaintiffs' proposal ignores the Court's directive that search strings must be custodian-specific and requires the parties to use artificial "custodian groups."** The Court rejected previously Plaintiffs' argument that search strings should be applied to all of the custodians in the groups being negotiated. *See* 8/14/2020 Trans. at 4:6-7. Plaintiffs' proposal that every proposed search string be

proposed for one or more "custodian groups" seeks to end-run the Court's ruling. It also makes no sense. The "custodian groups" Plaintiffs reference are groups Facebook prepared *to schedule custodian interviews* and stagger negotiations. They were not meant to be used substantively. One group is "miscellaneous." Others combine employees from unrelated departments who happened to be available for interviews the same week. There is no basis for Plaintiffs' suggestion that any search string proposed for a single custodian must be run against all of the custodians in the same group. Tailoring the search strings to particular custodians—which Facebook is well positioned to do thanks to information it sought out in follow-up custodial interviews—will yield more accurate results. Plaintiffs should do that work.

       5. **Plaintiffs seek an unreasonable number of strings**. Approximately 100 search strings will be run for the first 38 custodians. Facebook's proposal *expands* that number to allow the parties to negotiate approximately 120 search strings for the 43 remaining custodians. Plaintiffs expand that number even more, requiring the parties to negotiate nearly 140 strings.

       6. **Plaintiffs do not allow enough time for hit counts**. Facebook has agreed to provide Plaintiffs with hit counts as soon as they are prepared, but the hit reports are large and complex. It is often not feasible to prepare them within 5 days as Plaintiffs propose.

       7. **Plaintiffs' proposal does not allow the parties to provide the Court useful statistical sampling**. Facebook's proposal requires the parties to finalize their search proposals before statistical sampling is conducted so that the results can be presented to the Court with the parties' final positions. Plaintiffs remove this provision, allowing them to moot any sampling.

Facebook respectfully asks the Court to order the parties to adopt its process proposal.

IV. **Facebook is investigating the Named Plaintiffs' data that Plaintiffs seek.**

Plaintiffs clarified in their recent briefing that they only seek user data that was shared:

> Plaintiffs do not demand, as Facebook repeatedly claims, "that Facebook search *millions* of disaggregated data sets for any data to have ever crossed Facebook's systems relating to a Named Plaintiff. . ." To the contrary, Plaintiffs seek only a holding that the sensitive data Facebook collected about *ten Named Plaintiffs* and *shared* with third parties is relevant. **Plaintiffs do not contend that information that was not shared is relevant, which substantially narrows the information Facebook would be required to produce in this case.**

Dkt. 548 at 9. Consistent with that clarification and Discovery Order 9, Facebook will investigate whether data related to the ten identified Named Plaintiffs and not produced was shared with any third party under any non-stayed theory. Facebook will produce any such data.

V. **Plaintiffs may not end-run the Court's process.**

Before this case was referred to Your Honor, the parties were in a morass of disputes and agreed to an expedited dispute process in an effort to make progress. But the process was rife for abuse—it allowed Plaintiffs to initiate fire-drill briefing on a large number of arbitrary matters. At the first discovery hearing, the Court made clear it would set an orderly agenda between hearings. Plaintiffs now indicate they wish to abandon that approach and return to rapid-fire briefing on any issue they please. Plaintiffs should be required to follow the Court's agenda.

VI. **Issues raised by Plaintiffs.**

**Leaked documents remain confidential**. Facebook is perplexed by Plaintiffs' request that the Court bless another party's violation of a protective order so they can file leaked documents publicly. Facebook is happy to submit full briefing on this issue and will propose a briefing schedule to Plaintiffs that takes into account the many more urgent matters on the parties' agenda.

**Facebook is timely responding to interrogatories**. Facebook allowed Plaintiffs **ten weeks** to answer **ten** discrete interrogatories regarding the bases of their allegations. In contrast, Plaintiffs' interrogatories ask **hundreds** of complex questions. Facebook timely responded, providing substantive answers to 57 questions. Facebook agreed to supplement most by November

20.  Some of Plaintiffs' interrogatories will take longer because answering requires investigations of issues spanning a decade and a review of the documents being identified through search strings.

Dated: November 5, 2020                                              Respectfully submitted,

KELLER ROHRBACK L.L.P.                                               BLEICHMAR FONTI & AULD LLP

By:   */s/ Derek W. Loeser*                                              By:   */s/ Lesley E. Weaver*
       Derek W. Loeser                                                         Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)                            Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*)                     Anne K. Davis (SBN 267909)
David J. Ko (admitted *pro hac vice*)                                Matthew P. Montgomery (SBN 180196)
Benjamin Gould (SBN 250630)                                          Angelica M. Ornelas (SBN 285929)
Adele Daniel (admitted *pro hac vice*)                               Joshua D. Samra (SBN 313050)
1201 Third Avenue, Suite 3200                                        555 12th Street, Suite 1600
Seattle, WA 98101                                                    Oakland, CA 94607
Tel.: (206) 623-1900                                                 Tel.: (415) 445-4003
Fax: (206) 623-3384                                                  Fax: (415) 445-4020
dloeser@kellerrohrback.com                                           lweaver@bfalaw.com
claufenberg@kellerrohrback.com                                       adavis@bfalaw.com
dko@kellerrohrback.com                                               mmontgomery@bfalaw.com
bgould@kellerrohrback.com                                            aornelas@bfalaw.com
adaniel@kellerrohrback.com                                           jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*


GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of November, 2020, at Pacifica, California.

/s/ Lesley E. Weaver
Lesley E. Weaver

## CERTIFICATE OF SERVICE

I, Cesar Tamondong, hereby certify that on November 4, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

>Paven Malhotra
>Bryn Anderson Williams
>pmalhotra@keker.com
>bwilliams@kvn.com
>
>Anjeza Hassan
>annie.sara@yahoo.com

/s/ <i>Cesar Tamondong</i>
Cesar Tamondong

4840-7655-4705, v. 1