Pages 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

```
                              )
                              )
IN RE:  FACEBOOK, INC.        )   NO. 18-MD-02843 VC (JSC)
        CONSUMER PRIVACY USER )
        PROFILE LITIGATION.   )
                              )
_____)
```

San Francisco, California
Thursday, November 5, 2020

**TRANSCRIPT OF ZOOM TELECONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    KELLER ROHRBACK LLP
                    1201 Third Avenue - Suite 3200
                    Seattle, Washington 98101
            BY:  **DEREK LOESER, ESQ.**
                 **CARI LAUFENBERG, ESQ.**
                 **DAVID KO, ESQ.**

                    BLEICHMAR FONTI & AULD LLP
                    555 12th Street - Suite 1600.
                    Oakland, California 94607
            BY:  **LESLEY WEAVER, ESQ.**
                 **ANNE K. DAVIS, ESQ.**
                 **MATTHEW MONTGOMERY, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RDR, FCRR
              Official Reporter, CSR No. 12219

1   **APPEARANCES**:   (CONTINUED)

2   For Defendants:

3                          GIBSON, DUNN & CRUTCHER LLP
                           333 South Grand Avenue
                           Los Angeles, California 90071
4               BY:  **DEBORAH STEIN, ESQ.**

5                          GIBSON, DUNN & CRUTCHER LLP
                           555 Mission Street - Suite 300
6                          San Francisco, California 94105
                BY:  **MARTIE KUTSCHER CLARK, ESQ.**
7                    **JOSHUA LIPSHUTZ, ESQ.**

8                          GIBSON, DUNN & CRUTCHER LLP
                           2100 MCKINNEY AVENUE - SUITE 1100
9                          Dallas, Texas 75201
                BY:  **RUSSELL FALCONER, ESQ.**
10

                           GIBSON, DUNN & CRUTCHER LLP
11                         200 Park Avenue
                           New York, New York 10166-0193
12              BY:  **ORIN SNYDER, ESQ.**

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    Thursday - November 5, 2020                      11:00 a.m.

 2                        P R O C E E D I N G S

 3                            ---o0o---

 4         THE CLERK:  Are we ready?

 5         THE COURT:  I believe so.

 6         THE CLERK:  Calling Civil Action 18-MD-2843, In Re:

 7    Facebook, Inc.

 8        Counsel, starting with plaintiffs -- can one of you do all

 9    the appearances for the court reporter?

10         MS. WEAVER:  You can do the honors, Derek.

11         MR. LOESER:  You know, go ahead.  I'm trying to get my

12    gallery to work here.

13         MS. WEAVER:  He's not sure who all these people are.

14         MR. LOESER:  Wait.  No.  I got it working now.

15        Yes, this is Derek Loeser from Keller Rohrback for

16    plaintiffs.  With me is Cari Laufenberg and David Ko, also from

17    Keller Rohrback.  And from BFA, is Lesley Weaver and Anne Davis

18    and Matt Montgomery.

19         THE COURT:  Good morning.

20         MS. WEAVER:  Good morning.

21         MR. LOESER:  Good morning, Your Honor.

22         THE CLERK:  And for defendants, Ms. Stein?

23         MR. SNYDER:  It's Orin Snyder, Deborah Stein, Russ

24    Falconer, Josh Lipshutz, and Martie Kutscher Clark.  We have a

25    big group today because we needed to peel away from CNN or else
```

**PROCEEDINGS**

1    our brains were going to explode.

2         So good to see you, Judge.  Happy post-Election Day.

3         **THE COURT:**  All right.  Good afternoon.

4         Okay.  Everyone is -- well, I think there is unbelievable

5    chaos.  We have neglected to note that yesterday there were

6    over 100,000 new COVID cases diagnosed in the United States.

7    There is just a lot going on.  So we'll distract ourselves for

8    a little bit with this case.

9         So let's start with the search terms.  And plaintiffs

10   believe that you guys are mostly on the same page, except for

11   the two issues.  Facebook seemed to think they weren't.

12        I do have the exhibits in front of me, but let's start

13   with -- plaintiffs identified two issues.  One is the custodian

14   negotiations.  Let's just start with something.  I resolved --

15   for those first 38 custodians, we resolved the search terms.

16        **MS. WEAVER:**  Unfortunately, Your Honor, we do have

17   some open questions, notwithstanding your ruling, as to which

18   custodians the search terms applied.

19        **THE COURT:**  No, I understand that's your position.

20   I'm saying:  No, you don't.

21        It was presented to me by custodian; that's it.  That's

22   it.  We're now moving on to the next group.

23        **MS. WEAVER:**  Great.

24        **THE COURT:**  And the issue here with the next group is

25   the plaintiffs wanted the search terms, I guess, to apply to

1    each group, Group 5, Group 6, Group 7, or 8.  And Facebook

2    says:  No, it's custodian-specific.

3         I went back to Docket Number 461, which is what the

4    parties stipulated to.  And what that says is that parties

5    agreed to -- that Facebook would provide search terms for the

6    custodians in each group; not search terms for each group, for

7    the custodians in each group.

8         So I think, though, the plaintiffs' concern, namely, is

9    time.  We can address that and decide as to when it needs to be

10   done and presented.

11        I mean, the alternative -- I mean, frankly, I would think

12   that Facebook might want to just do it by group.  It may have

13   less yield; it seems it would be easier.  But for the

14   plaintiffs, it seems, for you, it may have less yield to do it

15   that way.  But, that's -- I think what the parties agreed to

16   was by custodian.

17            **MS. WEAVER:**  I mean, if I may just address that.

18        If we weren't doing it by groups, what was the purpose of

19   the grouping?

20            **THE COURT:**  Well, I think the plaintiffs said --

21   Facebook said what the purpose was.  I mean, that's why --

22            **MS. WEAVER:**  Which was?  I don't understand.

23            **THE COURT:**  -- in their views that -- their purpose of

24   doing it.

25        I mean, I guess, I don't understand why you want to do it

 1   by group if they are saying that group isn't going to hit the

 2   most yield.

 3          MS. WEAVER:  Because we think it's simpler.  Because

 4   we get bogged down.  We really just want to move through.

 5          We want to press forward, Your Honor.  And what we found

 6   is that haggling about individual people on top of the search

 7   terms themselves, and getting those hit reports, and then we

 8   would want an aggregate hit report -- and it just got very,

 9   very complicated.

10          And, frankly, we've never done it this way in any case.

11   So we were trying to find a way to streamline, but -- so if

12   that's what Your Honor orders, so be it.  We'll move in forward

13   as best we can.

14          THE COURT:  We're going to have deadlines so it will

15   reduce the ability to haggle --

16          MS. WEAVER:  Okay.

17          THE COURT:  -- as to that.

18          And the second issue you raised was starting the

19   production.  And the production starts now with those 38.  I

20   would have never agreed to that process if that was the case.

21   And I don't know if that's an issue, but it starts now.  So

22   Facebook should be moving now.

23          MR. SNYDER:  No issue, Judge.

24          THE COURT:  Okay.

25          MR. SNYDER:  No issue.

**PROCEEDINGS**

1          No, we're delighted.  The only reason we weren't able to

2     start is because we thought we were going to have to

3     renegotiate those 38; but, Your Honor, just clarified that.  So

4     we're ready to go and we are in unison with the plaintiffs that

5     we want to get agreement on everything, produce our documents,

6     and then move to the next stage of the litigation.

7          **THE COURT:**  Right.  But when you say "agreement on

8     everything," you're not waiting for production with respect to

9     the first 38 for agreement on everything?  Okay.  All right.

10          **MR. SNYDER:**  No, Your Honor.

11          **THE COURT:**  All right.  I need to -- all right.

12     So now what we need to, then, talk about are the

13     additional search terms for the additional custodians.

14          And as to request for production of documents, which was

15     filed, I guess, this summer, submitted this summer -- and

16     I believe which Mr. Loeser told me there was some amount that

17     wouldn't have been included in the initial search terms, but

18     that it wouldn't be a large amount; there was some.

19          It seems to me that when negotiating for these additional

20     custodians, those RFPs should be included.  It doesn't make any

21     sense, since these haven't been negotiated.  But it shouldn't

22     be that much.  But we -- I think it should be included in there

23     when you agree on certain terms, all those RFPs should be

24     there.  That's the most efficient thing.

25          Does anyone disagree with that?

1          **MS. KUTSCHER CLARK:**  Your Honor, the concern we have

2    is that plaintiffs had represented previously that those RFPs

3    were covered, in large part, by the search string that were

4    already negotiated.  And when we were negotiating the strings

5    last time, plaintiffs assured the Court that most of them were

6    incorporated in what we were negotiating.

7          And our concern was that, as soon as those negotiations

8    concluded, plaintiffs said:  Oh, wait.  We now have these 26

9    other RFPs.  We want to negotiate new strings for them.  We

10   want more targeted collection for them.

11         And we had understood, as was represented before, that

12   they were part of what had already been negotiated, or at least

13   most of them.

14         **MS. WEAVER:**  Your Honor, may I just respond?

15         **THE COURT:**  Right.  But didn't Mr. Loeser just say --

16   I think it was Mr. Loeser -- that there were some that were

17   not.  So it wasn't all, but there were some.

18         **MS. WEAVER:**  Just to clarify, Your Honor, we're a

19   little confused by what Facebook means by the 26 RFPs.

20         We did propound -- as a result of our meet and confer with

21   Facebook, sometimes they said to us, when we thought we could

22   do targeted document collections:  Oh, we should use search

23   terms or something like that.

24         So in the middle these negotiations, we propounded new

25   RFPs, RFP Sets 3 and 4.  And our under- -- the search terms we

1 drafted did encompass almost all of those, except for four

2 RFPs.

3         So we did invite Facebook to meet and confer about this

4 when we put in the statement last week, because we really

5 didn't understand what they mean by 26.  But we agreed, they

6 should be included.

7         We do think there is some additional topics also in these

8 custodial buckets because the custodians in Group 5 through 8

9 have different job positions that weren't previously covered.

10 So that's why we were proposing -- you know, we need to see

11 Facebook's counter-proposal, but that we would counter with 35

12 new strings limited to that, to cover these new topics.

13         **MS. KUTSCHER CLARK:**  Your Honor, if --

14         **MS. DAVIS:**  Your Honor, if I may --

15         **THE COURT:**  Okay.

16                 (Unreportable cross-talk.)

17         **MS. KUTSCHER CLARK:**  -- plaintiff's are saying that

18 all but four RFPs are covered by the strings that have already

19 been negotiated, we can certainly live with that.  That wasn't

20 our understanding based on our meet and confer earlier this

21 week.  But if there are only four RFPs that are not covered by

22 the previously negotiated search strings, we are fine with

23 that.

24         We would like to know what those four RFPs are.  I don't

25 think we know what they are.  But our concern was that

PROCEEDINGS

```
 1    plaintiffs wanted to negotiate new strings for many, many more
 2    RFPs than that.
 3              THE COURT:  The issue really is the number of new
 4    strings; right?  That's the issue.
 5              MS. WEAVER:  Yes.
 6              THE COURT:  All I'm saying is:  All those RFPs should
 7    be encompassed within it for these -- since we're just
 8    negotiating those now.
 9              MR. LOESER:  Thank you, Your Honor.
10              MS. DAVIS:  Your Honor, if I may.
11         There are, of course, some RFPs for which targeted
12    collections are appropriate.  And some sources of ESI that
13    Facebook has not proposed defined search terms to.
14         So, you know, I want to be very clear that while we
15    proposed search terms for those RFPs for which search terms are
16    appropriate, there are some where search terms are not
17    appropriate.  And there are some sources of ESI that Facebook
18    is not going to apply search terms to.
19              THE COURT:  Okay.  All I want to do is just get
20    through the search terms, and get that done, and get that
21    going.  And then we can address --
22              MS. WEAVER:  We agree.
23              THE COURT:  -- that other stuff.
24         Okay.  So then at the end -- then we need to go through
25    your proposals.  But I'll just tell you my views and then we
```

**PROCEEDINGS**

 1   can sort of figure it out.

 2        There was an issue -- well, let's do search terms then,

 3   because I think that takes care of discussing about it.  So

 4   let's look at your -- each proposal then and tell me, then,

 5   where there are other points of difference that we should

 6   address.

 7        So the paragraph 2, your each paragraph 2, it sounds like

 8   the plaintiffs are agreeing to start with the terms from the

 9   first 38.

10        **MS. WEAVER:**  Yes.

11        **MS. KUTSCHER CLARK:**  Yes.  And, Your Honor, I think

12   the main question we're talking about is how many new terms can

13   be proposed in addition to the 100-ish -- I think the number is

14   approximately 100 -- that the parties have already agreed to or

15   that the Court has ordered.  And the delta we're talking about

16   here might seem insignificant, so I think it's worth explaining

17   a little why we're concerned about it.

18        **THE COURT:**  Well, let me just -- stop.  Can I just

19   stop you?

20        I'm sorry to be short, but today is, like, just discovery

21   all day long.  And I just think you people need decisions, so

22   that's where I'm going to get.

23        **MS. KUTSCHER CLARK:**  Sure.

24        **THE COURT:**  To be candid, sometimes the decisions will

25   be arbitrary, but in the end it actually will make no

1  difference.  I promise.

2         MS. KUTSCHER CLARK:  Understood.

3         THE COURT:  Ms. Weaver, you said something about 35

4  additional search terms.

5         MS. WEAVER:  Yes.

6         THE COURT:  Is that what you're proposing in addition

7  to the hundred?

8         MS. WEAVER:  Yes.  We see two buckets: the 103 capped

9  at 103, and then the second bucket would be capped at 35.

10        THE COURT:  Okay.  That seems reasonable.  Okay.

11        MS. KUTSCHER CLARK:  Your Honor, where I would ask for

12 a little clarity is one of the concerns we raised to plaintiffs

13 was that we were concerned that they might take many of the

14 strings that had been proposed previously, add a bunch of

15 or-connectors, and propose them as a single string.  So we

16 would end up seeing what was previously 100 strings, now

17 proposed as 35 strings.

18     And we asked plaintiffs to clarify that they would not do

19 that, and they did not provide that certainty.  So that's part

20 of why we're a little concerned about the 35 strings.

21        MS. WEAVER:  I guess, what we would say, Your Honor,

22 is that we need the freedom -- some of -- in negotiating, we

23 agreed to forego certain search strings because we thought they

24 were coming up in this future buckets.  So to say anything that

25 was not included but earlier proposed, A, will just cause

**PROCEEDINGS**

 1   further dispute; and, B, really does a disservice to us.  We

 2   want to be able to pick whatever 35 strings we want that are

 3   new, that are not the 103.

 4         **THE COURT:**  But, in the end, I'm going to decide; so

 5   there we are.

 6         **MS. WEAVER:**  Okay.

 7         **THE COURT:**  So everybody has an incentive to be

 8   reasonable.

 9         **MS. WEAVER:**  Okay.

10         **THE COURT:**  Okay.  Well, I don't have to decide if you

11   agree; but in the end, I may have to decide.

12      All right.

13         **MR. SNYDER:**  Judge, we just rules and we want

14   deadlines.  And we will --

15         **MS. WEAVER:**  Exactly.

16         **MR. SNYDER:**  -- act accordingly.

17         **THE COURT:**  That's what we're doing.

18      So then paragraph 2, then, is there any disagreement now

19   that I need to resolve?

20         **MS. KUTSCHER CLARK:**  No.

21         **THE COURT:**  No.  Okay.  We have a court reporter; you

22   guys said, "no."  Okay.

23                          (Laughter.)

24      Paragraph 3 --

25         **MS. KUTSCHER CLARK:**  I speak for all of the parties.

**PROCEEDINGS**

 1          **THE COURT:**  How about paragraph 3?

 2          **MS. KUTSCHER CLARK:**  I think the one concern there

 3   that we have is the deadline for providing hit counts.

 4   Facebook is going to provide hit counts as soon as we have

 5   them, and as soon as they're ready.

 6          What we have found is that hit counts are extremely

 7   time-consuming and complex to prepare.  I know last round our

 8   vendor spent over 500 hours preparing hit counts, so sometimes

 9   they cannot feasibly be done within five days.  Our proposal

10   says we'll provide them as soon as they are available, and in

11   no case longer than 10 days; but we'll do them as soon as we

12   possibly can, and get them out the door.

13          **MS. WEAVER:**  We don't really understand why these

14   terms would take longer, especially when -- well, it seems like

15   there would be many fewer because we're starting with a venire

16   at this point of 103, plus 35 max, whereas before, we were

17   starting with a pool much larger.

18          Just, you know, we want to get through this.  We want to

19   move forward.  We want to be fair and give people the time they

20   need to do what they need to do; but we haven't really received

21   an explanation why a fewer number of strings would take twice

22   as long.

23          **THE COURT:**  I know, but we're talking about five days.

24   Not just -- fine.  10 days.  No more than 10 days.  Right?  I

25   mean, think about it.

**PROCEEDINGS**

1         **MR. SNYDER:**  Life is short.

2                (Unreportable cross-talk.)

3         **MS. KUTSCHER CLARK:**  If they are ready in five days,

4 we'll send them out.

5         **THE COURT:**  Yeah.  If we were -- they are working,

6 starting now, producing on those first 38, so it's not like

7 nothing is happening.  There should be stuff happening and at

8 the same time.

9      Okay.  So, then, paragraph 3, then, is resolved?  Okay.

10      It looks like --

11         **MS. WEAVER:**  I think.  So I want to hear affirmative

12 answers from Anne.

13         **THE COURT:**  Ms. Davis?  You're on mute.

14         **MS. WEAVER:**  Is it resolved?

15      You're still on mute.

16         **MS. DAVIS:**  It is my special gift.

17      I think, that's right, it's resolved with the

18 understanding that we're trying to move this forward.

19         **THE COURT:**  Okay.  All right.  Paragraph 4.  It looks

20 fine; right?

21         **MS. DAVIS:**  Hm-hmm.

22         **THE COURT:**  Okay.  Great.  Paragraph 5 is it -- when

23 does that one week or two weeks start?

24         **MS. WEAVER:**  Following Facebook's response to

25 plaintiffs' counterproposal; is that right?

1          **MS. KUTSCHER CLARK:**  That was my understanding, yes.

2          **MS. WEAVER:**  Okay.  We're okay with that, Ms. Davis?

3     You're on mute.

4          **MS. DAVIS:**  So I think it should start after Facebook

5     provides its response and, with that, the delivery of the hit

6     counts.

7          **THE COURT:**  Okay.  All right.

8     I think that one week is fine.  It will force compromise

9     and decision-making and all that.  So we'll do one week there.

10         But plaintiffs' paragraph 5 is longer.  So what else is in

11    dispute there?

12         **MS. DAVIS:**  We had shortened the period to one week.

13    We had sought updated hit counts on the competing proposals so

14    we had sufficient data to move forward.  And then I think we

15    had some differences in terms of statistical sampling.

16         **MS. WEAVER:**  We're not there yet.

17         **MS. DAVIS:**  Well, we included it in paragraph 5.

18         **MS. WEAVER:**  Right.  I see.

19         **MS. DAVIS:**  Yes.

20         **THE COURT:**  So I didn't mean to, like, muck anything

21    up with the statistical sampling.  So that's fine, if you -- so

22    all I was just -- what was concerning -- what I was concerned

23    about and wasn't sure was happening was that you get these hit

24    counts and then you see it's pulling up all these irrelevant

25    things; that's what I just meant, and that you narrow it

1   further.  It just wasn't clear to me that that was happening.

2       If that's happening fine.  Or if you don't want to do it,

3   I don't want to muck things up.

4       **MR. LOESER:**  Your Honor, Derek Loeser.

5       The sampling issue and it's -- there is different types of

6   sampling.  And, you know, where it's come up and been useful is

7   when, in other cases, when there is a dispute about a string

8   and a party is saying that this string is improper because it

9   will result in a large collection of irrelevant materials, you

10  can use random sampling to sort that out.

11      And what we would suggest is that this is something that

12  may not be necessary in this case; it depends how the

13  negotiations go on the strings.  But if there is a string and

14  if Facebook is claiming, based upon the hit count -- as it has

15  for many strings -- this will result it a huge pull of

16  irrelevant information, that would be the appropriate use of

17  the random sampling, just to determine if that's true or not.

18      **MS. WEAVER:**  And not to parse words, but random

19  sampling is different than, perhaps, what Facebook -- the ESI

20  protocol provides for an ESI procedure on random sampling.  And

21  we wouldn't want to open negotiations on to what statistical

22  sampling is and make it more complicated now.  So we would just

23  rely on the protocol.

24      Is that what you were going to say, Ms. Davis?  I'm sorry.

25      **MS. DAVIS:**  In part, yes.

**PROCEEDINGS**

 1        But also that, you know, that sampling can inform further

 2   narrowing or clarifying of terms, and we think it's useful in

 3   that way.  So I think if the parties can agree and it can be

 4   timely done, then we can, you know, discuss and come to an

 5   agreement on that, you know.  Or, perhaps, it won't end up

 6   being useful and we'll be in agreement; but I think that's the

 7   primary difference between our proposals.

 8        And, you know, if we can discuss it and come to agreement

 9   on the sort of random sampling, and move forward from there in

10   the negotiations, then it may be useful.  It may not.

11             **THE COURT:**  Ms. Kutscher, you wanted to say something?

12             **MS. KUTSCHER CLARK:**  Yeah.

13        Your Honor, we would like to do the statistical sampling;

14   we think it could be helpful.

15        Our concern on the last round was that the search terms or

16   the search strings themselves were shifting and changing,

17   literally, until the night before we submitted our dispute.  So

18   there was no opportunity where we could reliably do sampling

19   because the terms were constantly in flux.

20        So we would like a process by which there is a moment

21   where the strings are final enough that we have time to do the

22   sampling knowing that the strings are not still changing while

23   we're doing it.

24             **MR. LOESER:**  And, again, Your Honor, this would just

25   be something that's used if the parties can't resolve a

**PROCEEDINGS**

 1  particular type of dispute about a string.  So that would seem

 2  to be the time to utilize the procedure.  And -- yeah.

 3      And, again, you're hearing from a literature major now

 4  talking about statistics, but Mark Twain referred to them as

 5  "lies, damn lies, and statistics," so it is important to

 6  understand how the sampling is done, and here it would be

 7  random; but, you know, the parties can sort that out.

 8          **THE COURT:**  Can you?

 9                  (Laughter.)

10          **MR. LOESER:**  We can try.

11          **MS. WEAVER:**  Anything is possible.

12          **THE COURT:**  So just with paragraph 5, then, I guess I

13  don't -- is there a timing disagreement or what is the

14  disagreement?  So you're going to make your best and final

15  offers and then -- so that's it.  That's what it is.

16      And then Facebook then wants to do, at least for some of

17  them that they think, perhaps -- maybe not all as Mr. Loeser

18  says, some may agree, some may be fine.  But if you believe

19  that they're coming up with too many irrelevant documents, then

20  what?

21          **MR. LOESER:**  Then that would be -- yeah.  I'm sorry.

22  You're hearing from lots of different people on the issue, but

23  I'll be quiet for a minute.

24          **MS. DAVIS:**  Your Honor, if I may jump in.

25      I think our concern is that, you know, that sampling

1  should aid the parties in narrowing a term as appropriate,

2  instead of being used to simply knock out a term.

3         THE COURT:  Oh, yes.  Well, that was the point of the

4  sampling.  So I am --

5         MS. DAVIS:  Right.

6         THE COURT:  But I'm sensitive to Facebook's thing; we

7  shouldn't be changing the night before.  But, of course, the

8  sampling should result in narrowing, not "Gotcha.  You don't

9  get it."  Right?

10        So what would be, then, Ms. Kutscher, your proposal?

11        You do your sampling, where appropriate, not every one,

12  where appropriate; then what?

13        MS. KUTSCHER CLARK:  Right.  I think if a term is

14  revised, but Facebook continues to believe it's overbroad, we

15  would need an opportunity to do more sampling on it.  Because

16  what we don't want to happen is that we put a lot of time and

17  effort into sampling a particular string, it gets tweaked

18  slightly, and then the sampling is no longer accurate so we

19  can't rely on it.

20        So I think there would just -- and maybe this is something

21  the parties should meet and confer on, and maybe we can just

22  come to an agreement.  But I think there would need to be a

23  process whereby we have reliable sampling at the end of the

24  process, if we're in a position where we need to tee something

25  up to Your Honor.

PROCEEDINGS

1          **MS. WEAVER:**  Your Honor, I would make two proposals.

2      One is that when we refer to "sampling" here, we describe

3  it as "the sampling procedure negotiated by the parties already

4  in the ESI protocol," and I forget what docket number that is.

5      And, two, that we put a timeline, so that if they are

6  going to do statistical sampling, there is a deadline for it

7  and we move on or brief it.

8          **THE COURT:**  Yeah.  I think the timeline is fine.  So I

9  think maybe an agreement, but Facebook just doesn't want to be

10  precluded from presenting that evidence because of revision.

11      So I'm not going to resolve that now.  You try to revolve

12  it.  I'm going to give you a deadline to submit to me the stip

13  or competing proposals, so that we get this done, like, soon.

14          **MS. WEAVER:**  Good.

15          **MS. KUTSCHER CLARK:**  That's perfect.

16          **THE COURT:**  All right.  And so I think that

17  encompasses 6 then as well, paragraph 6.  Well, Facebook's

18  paragraph 6.  So this is plaintiffs' paragraph 6, is to

19  Ms. Davis's point about other sources of ESI that --

20          **MS. DAVIS:**  Your Honor, I think our paragraph --

21          **MR. LOESER:**  We have some numbering problems.

22          **MS. DAVIS:**  Yes, I think --

23          **MS. WEAVER:**  It's a little bit like the ballot counts,

24  we went from 6 to 5 to 6.

25          **THE COURT:**  Well, I hope the ballots are not like

1   that.

2          **MS. DAVIS:**  Our first paragraph 6 is the same as

3   Facebook's paragraph 7, I believe.

4          **THE COURT:**  Okay.

5          **MR. LOESER:**  Well, that's confusing.

6          **MS. DAVIS:**  Then our second paragraph 6 is the other

7   sources of ESI.

8          **THE COURT:**  Right.  So your second paragraph 5, then,

9   should be 7:  The parties will resume negotiations on the

10  remaining RFPs.

11      I think we took care of that.

12      And then your -- what should be your paragraph 8, we can

13  discuss that at the next one.  We just need to get these

14  additional custodians done, there.  Then we'll move on.

15      They are going to begin the production of these.

16      And now -- okay.  So I want you to submit your revised --

17  what's today, Thursday -- stip --

18          **MS. WEAVER:**  Yes.

19          **THE COURT:**  -- by Monday.

20          **MS. WEAVER:**  Okay.

21          **THE COURT:**  I mean, you should meet today and see if

22  you can resolve it -- by Monday, or competing proposals.  Then

23  I'll just pick and choose.  Okay.  By Monday.

24          **MS. WEAVER:**  If we could, Your Honor, we do have the

25  hearing in front of Judge Chhabria on Monday the 9th and we

**PROCEEDINGS**

1    might be a little preoccupied with that.  Can we submit on the

2    10th?

3             THE COURT:  Yes.

4             MS. WEAVER:  Okay.  Thank you.

5        Another issue was the -- so that's the search terms.

6    We're going to have a stip by Tuesday.  Maybe even a president

7    by Tuesday.

8                         (Laughter.)

9             MS. STEIN:  We'll see which comes first, Your Honor, a

10   stipulation or a president.

11            MS. WEAVER:  And if we want either.

12            MR. LOESER:  Hey, I'll bet we can find agreement on

13   who should be the president.

14            THE COURT:  Oh.  We are not going there, Mr. Loeser.

15   We are not going there.

16            MR. SNYDER:  We'll, we're not going there.  But I will

17   trade search strings for that.

18                         (Laughter.)

19            THE COURT:  We're not going there, Mr. Snyder.

20       Okay.  On the fourth set of interrogatories, Facebook is

21   going to amend the responses by November 20th.  This is pretty

22   key, important information, so this should be worked on

23   forthwith.

24            MS. STEIN:  Yes, Your Honor.  We're working hard on

25   those interrogatory responses.  They are quite substantial.

**PROCEEDINGS**

 1   And we did respond already to them; we're supplementing and

 2   responding to more.

 3          **THE COURT:**  Great.  Good.  Okay.

 4      On the confidentiality of that document, while I agree it

 5   seems highly unlikely that Facebook is going to be able to show

 6   that it should remain sealed, we have a procedure in the

 7   protective order if the plaintiffs disagree with a

 8   confidentiality designation, and I just want you to follow it.

 9   I mean, that's probably --

10                    (Unreportable cross-talk.)

11          **MS. WEAVER:**  Your Honor, we agree.  But, for us, it

12   was a public document that we got from the NBC website.  And

13   the concern is, there are so many public documents in this

14   case, that if we had public documents -- you know, are you

15   asking us to search what Facebook has produced and compare -- I

16   mean, we obtained this from an NBC website.  And, again,

17   Facebook has produced documents to regulators.

18      So we want to comply.  We don't have a dog in this fight.

19   If Facebook wants to designate these confidential, fine.  But

20   we're a little concerned about getting caught in a "gotcha"

21   where we're using documents that are in the public domain, and

22   Facebook produces them, after the fact, here, and calls them

23   confidential.  And --

24          **THE COURT:**  Well, let me ask Facebook:  Is there any

25   more than this that you anticipate there being an issue, than

1   this document?

2       MS. STEIN:  I would just say that there are more

3   documents that might be an issue.  The one that Your Honor

4   previously looked at did have a cover page that said that it

5   was under seal, which created, you know, certainly some of the

6   issue.

7       I think, at the end of the day, you know, Facebook just

8   wants to make sure we have an opportunity to brief this to

9   Your Honor, with respect to our designations, in a fair way.

10  Plaintiffs have been suggesting that we've waived the

11  opportunity to brief it to you, which we obviously don't think

12  that we have.

13      THE COURT:  So I just said that you can brief it to me

14  in accordance with.  But, I'm going to rule and then that will

15  give Facebook some guidance.

16      And to Ms. Weaver's concern, I'm just not going to let

17  that happen.

18      MS. WEAVER:  Okay.

19      THE COURT:  Because that's going to be wasting my time

20  and your time, and Facebook doesn't want to do that.

21      MS. STEIN:  Yes, Your Honor.

22      THE COURT:  So I think it's fair enough.  This

23  document seems to be a big issue for Facebook.  We'll let them

24  brief it and I'll rule on it.  So you should just follow the

25  procedure there.

1      **MS. WEAVER:**  Yes, Your Honor.

2      **MR. LOESER:**  Your Honor, just to -- I guess, a point

3    of clarification on that.  That all makes sense and I think

4    that that's a path for how to deal with this document.

5      I think, what kind of seems to have been kind of missed in

6    the process is that the protective order has a provision that

7    refers to documents obtained publicly.  So I just want to make

8    it clear:  We weren't -- we didn't view what we were doing as

9    somehow not complying with the protective order.  We were just

10   following the provision that guided us on how to deal with

11   documents not obtained from Facebook.

12      **THE COURT:**  Fair enough.  I mean, it's a somewhat

13   unusual situation.  That's fine.  I think everybody was

14   operating in good faith there.

15      **MR. LOESER:**  Okay.

16      **THE COURT:**  Let's see.

17      **MS. KUTSCHER CLARK:**  Your Honor, one point of

18   clarification there.  We would respectfully request the

19   opportunity to submit full briefing, on a full briefing

20   schedule on this issue, because it is quite significant, as

21   opposed to an expedited joint statement-type briefing.

22      **THE COURT:**  When you say "full briefing" -- well, you

23   mean, like a 35-day notice briefing, or how many pages, or -- I

24   mean --

25      **MS. KUTSCHER CLARK:**  I think we would request 10 to 15

**PROCEEDINGS**

 1   pages, as opposed to two.  Because the situation is quite

 2   complicated --

 3          **THE COURT:**  That's fine.

 4          **MS. KUTSCHER CLARK:**  -- and being litigated in the San

 5   Mateo Superior Court at the same time.  There are a lot of

 6   moving parts and it's a very complicated issue.

 7          **THE COURT:**  All right.  Do plaintiffs object to that?

 8          **MS. WEAVER:**  No, Your Honor.

 9          **THE COURT:**  Okay.  All right.

10          **MS. WEAVER:**  It does come up.  You know, it came up in

11   the *Constand v Cosby* case that we cited where, things like

12   this, they become public through ways that are not desirable,

13   and yet they are, then, public.  So we just viewed this as the

14   cat is out of the bag.  But we don't want to dispute this.  We

15   would rather not make this into a sideshow.  We would rather

16   litigate the case.

17          **THE COURT:**  All right.  So you can do it then with

18   regular briefing.

19          **MS. KUTSCHER CLARK:**  Thank you.

20          **THE COURT:**  Is there anything else we should discuss?

21          **MS. DAVIS:**  Your Honor, I have a question just about

22   the stipulation.

23      One thing we did not discuss -- or one thing I'm not

24   entirely clear on -- are the additional RFPs for which search

25   terms need to be proposed.

1      I understand your guidance that Facebook should include

2  those in their proposal.  We proposed a schedule for

3  identifying those RFPs.  And just to clarify, should that be

4  part of stipulation that we submit on Tuesday, or will that be

5  a separate process?

6          THE COURT:  Are we talking about this round that we're

7  negotiating?

8          MS. DAVIS:  Yes.

9          THE COURT:  Whatever you propose -- right -- should

10  encompass those RFPs -- which, I think, was represented to be

11  about an additional four --

12          MS. DAVIS:  So --

13          THE COURT:  -- and weren't already covered.  So those

14  should be included.

15          MS. DAVIS:  So those should be part of Facebook's

16  proposal then?

17          THE COURT:  To the extent that they feel like they can

18  do that.  I mean, I suppose, to the extent you can give them

19  some guidance, that would probably be helpful.

20          MS. DAVIS:  Okay.  Well, we'll include that schedule

21  in our discussion.  Thank you.

22          MS. WEAVER:  Your Honor, there were two other related

23  issues, I believe.  One is just really kind of the scope of

24  discovery that we're engaged in here.

25      With regard to RFPs that -- to which we believe documents

**PROCEEDINGS**

1    can be collected and produced that are not done with search

2    strings, we have met and conferred and there are kind of two

3    related issues.

4         One is, Facebook has actually, we understand, identified

5    documents that can be collected without search strings, but

6    they will not produce them until they produce documents

7    collected by search strings.  And we don't think that that's

8    proper.

9              **THE COURT:**  No.  I understand that.  That's why I said

10   I'll address that at the next meeting.

11             **MS. WEAVER:**  Okay.  Fine.

12             **THE COURT:**  I want to see that stip on the search

13   string.  I want that done.  We'll address it at the next one.

14             **MS. WEAVER:**  Okay.  Fine.

15             **MR. LOESER:**  Your Honor, one other matter that's

16   probably worth a brief mention, and that's the issue of the

17   relevant plaintiff user data.

18        And we've, obviously, read the order.  I'm sure Facebook

19   has read the order.  We've started the process of meeting and

20   conferring with Facebook.

21        Facebook has sometimes said that that other user

22   information is massive and voluminous, and other times said

23   nonexistent.  And I think it's incumbent upon the parties to

24   have substantive conversations about what they collect, what

25   exists, what they are withholding, so that we can have a

1    reasoned conversation about, of the relevant information, what

2    should be produced in this case.

3         **THE COURT:**  Yeah.  That needs to start moving now.

4    That's why we briefed that for a while.  Now you've got your

5    answers, so let's get moving.

6         **MR. SNYDER:**  And just to be clear, you know, we have

7    been consistent and intend to be consistent and transparent in

8    meeting and conferring about the user data.  And I think we

9    have already started those meet and confers, as I understand

10   it.  So, you know, certainly we agree that we should be meeting

11   and conferring, agreeing, and then incorporating that in the

12   search and production protocols.

13        There is another issue, Your Honor, I just want to raise,

14   but not resolve, but, again, on the radar screen.

15        You know, we understand and really appreciate the

16   deadlines and the clear rulings; it's very helpful.  And also

17   appreciate that the case schedule became unworkable, given the

18   volume of documents and the negotiations.  But, you know, the

19   lack of goalposts is allowing, you know, to a certain extent,

20   you know, a -- delays and inefficiency in the meet and confers.

21        And so we're going to start producing our documents and we

22   are going to produce the next tranche, once we agree on

23   everything there.  And then we're going to be asking Your Honor

24   to, you know, set a discovery end date, because we think

25   deadlines are helpful and productive and -- you know,

**PROCEEDINGS**

 1    litigation either loves or abhors a vacuum; but we, you know,

 2    think a vacuum is -- creates inefficiencies and delays.

 3        So once we conclude our search string negotiations and

 4    know the volume of the documents that we will need to review

 5    and produce, we're going to be then asking the Court to solicit

 6    a revised case calendar, where we can have end-dates for

 7    discovery, and a new schedule.

 8        **THE COURT:**  Sure.  And I think the plaintiffs want

 9    that as well.  And so, basically, you can identify all the

10    buckets that are left.  So Ms. Davis identified another bucket

11    which is these ESI that search terms aren't required for; there

12    is the plaintiffs' user information; there is depositions and

13    the like.

14        But I agree, we should get a new schedule.  You know, see

15    if you can jointly, to the extent you can, figure out a plan

16    realistically for how -- when depositions are going to happen,

17    how they are going to happen.  I think Facebook mentioned

18    they -- you are negotiating your expert stips or something.

19        But, no, I completely agree.  I would like to set a

20    realistic deadline that takes into account, and that we

21    identify all the buckets that are out there, then, left, and

22    how we can get that in.

23        **MR. LOESER:**  And, Your Honor, Derek Loeser.

24        I don't want to pass up the opportunity to say it's

25    wonderful when Orin and I can agree on something.  And we

1    certainly agree that orders from the Court are very helpful.

2    They provide clarity and guidance and should be adhered to by

3    the parties; and that moves this along very efficiently.  And

4    also that a schedule is very important, and we look forward to

5    having one.  And this has been a -- I would say a slow and

6    painful process for everyone, but we are getting there.

7              **THE COURT:**  Yeah.  We are getting there.  Progress is

8    being made and you're all getting along and -- nothing unusual.

9         I think the pandemic is, like -- it's been a long time now

10   that we have all been doing this.  Everything does seem to be

11   requiring a little bit more guidance right now.  This case is

12   not alone at all -- at all with that.  And we're just all tired

13   and there is so much uncertainty.

14        I mean, remember when we first met?  No one thought that

15   we would be sitting here today like this.  No one thought

16   that --

17             **MR. LOESER:**  No.

18             **THE COURT:**  -- at all.

19        And I'm certainly -- everything I'm setting, scheduling

20   now, I'm assuming it will be by video, you know, into next

21   year.  I'm just setting it by video.  I think that's the way

22   it's going to be.

23        But I do think, in a case like this, all that time and

24   money to avoid flying -- at least for some of you who aren't

25   here -- to San Francisco, it's a complete plus, and is a silver

**PROCEEDINGS**

1    lining of something that will enhance, I think, the

2    cost-effectiveness -- not cost-effectiveness, but reducing

3    unnecessary costs in litigation.

4         **MR. LOESER:**  I would say there are two other

5    significant pluses.  One is the carbon footprint benefit from

6    this, which is clear and wonderful; that's one silver lining.

7         The other is that I have learned to share much better with

8    my children who come in to my office all the time and use my

9    printer during hearings.

10                        (Laughter.)

11        **MR. MONTGOMERY:**  Your Honor, before we end, can I just

12   clarify something that, hopefully, will make things simpler?

13        For the stipulation that you're anticipating, do you

14   expect the parties to stipulate to the entire proposal that we

15   have just gone through?

16        **MS. WEAVER:**  What are we submitting on the 10th?

17        **THE COURT:**  Oh.  You each had submitted competing

18   search term proposals, both as Exhibit A's.  So it's that stip.

19        **MR. MONTGOMERY:**  Okay.  So it should be the whole --

20        **THE COURT:**  And plaintiffs included some additional

21   things that I said:  Ms. Davis, not now.

22        So that would be out.  Yeah.  So that's what it is.

23        **MR. MONTGOMERY:**  Okay.

24        **THE COURT:**  That's the stip.

25        And I think there is very little left for you left to

1   negotiate.  To the extent you can't resolve it, then just make

2   competing; but, hopefully, you can resolve it.

3         MR. LOESER:  One other, just, question for the Court

4   is, we have been at this for a while now, and you have received

5   a lot of joint statements from the parties.  And if there is

6   any guidance, if you feel the way it's being done is

7   appropriate; that you're getting the information that you need;

8   that it has too many adjectives or adverbs; any guidance you

9   want to provide, we would be happy to hear.

10        THE COURT:  No.  I think it's working pretty well.  I

11  think it's working pretty well.  Yeah, it's working.  I have

12  referred other cases, now, to this case to look at what you're

13  doing.

14        MS. WEAVER:  Who are those poor people?

15                      (Laughter.)

16        THE COURT:  I actually am fortune to have many MDLs

17  these days that I'm managing the discovery.

18        MR. SNYDER:  And, Judge, we want to express our

19  appreciation to you jointly because you have been incredibly

20  patient and helpful; and we know this can be mind-numbing and

21  onerous.  So we really do appreciate your helping us get

22  through this.

23        THE COURT:  You're welcome.

24        MS. WEAVER:  We do agree on that.

25        THE COURT:  Understand, I'm doing my best and you

**PROCEEDINGS**

1    won't always agree with it, but I truly am just doing my best.

2           **MR. LOESER:**  Thank you.

3           **THE COURT:**  So let's pick our next date.  Would

4    December -- Friday, December 4th, and we could do 8:30 a.m.?

5       I have closing arguments in a bench trial that I actually

6    conducted the last two weeks of October, at 10:00 a.m. that

7    day, which, by the way, the lawyering was excellent, and it

8    went in very smoothly.  Very smoothly.

9           **MS. WEAVER:**  Wow.

10          **THE COURT:**  Ms. Ekhaus is nodding.  She was one of our

11   court reporters.  So just in case your clients are wondering

12   about virtual -- at least bench trials, not a jury.  Very

13   smoothly.

14          **MS. WEAVER:**  Good to hear.

15          **MR. FALCONER:**  I did one this summer and it was

16   smoother than any of us expected.  It was great.  It was a

17   pleasant surprise how well the technology worked.

18          **THE COURT:**  Yeah.  So 8:30 on December 4th?

19          **MS. WEAVER:**  That's fine here.

20          **MS. KUTSCHER CLARK:**  That's fine, Your Honor.

21          **THE COURT:**  Yeah.  And the statement is due the day

22   before, so we're not mucking up anyone's Thanksgiving.

23       All right.  Happy Veteran's Day, Happy Thanksgiving, and

24   stay safe.

25          **MS. STEIN:**  Thank you, Your Honor.

PROCEEDINGS

```
1          MS. WEAVER:  Thank you, Your Honor.

2          MR. LOESER:  Thank you.

3          MS. KUTSCHER CLARK:  Thank you.

4               (Proceedings adjourned at 11:44 a.m.)

5                        ---o0o---

6

7                  CERTIFICATE OF REPORTER

8          I certify that the foregoing is a correct transcript

9     from the record of proceedings in the above-entitled matter.

10

11    DATE:    Saturday, November 7, 2020

12

13

14

15    _____

16          Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
                Official Reporter, U.S. District Court
17

18

19

20

21

22

23

24

25
```