Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

IN RE: FACEBOOK, INC. CONSUMER       )
PRIVACY USER PROFILE LITIGATION.     )   NO. 18-MD-2843 VC (JSC)
                                         San Francisco, California
                                         Monday, November 9, 2020

**TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS**


**1:33 P.M. TO 2:01 P.M.**


**APPEARANCES**:

For Plaintiffs:
                        BLEICHMAR FONTI & AULD LLP
                        555 12th Street
                        Suite 1600
                        Oakland, California  94607
                BY:     **LESLEY E. WEAVER, ESQ.**
                        **ANNE K. DAVIS, ESQ.**
                        **MATTHEW MONTGOMERY, ESQ.**


                        KELLER RORHBACK, LLP
                        1201 Third Avenue
                        Suite 3200
                        Seattle, Washington  98101
                BY:     **DEREK W. LOESER, ESQ.**
                        **ADELE AILEEN DANIEL, ESQ.**

                        KELLER ROHRBACK, LLP
                        300 Lakeside Drive
                        Suite 1000 --
                        Oakland, California  94612
                BY:     **BENJAMIN B. GOULD, ESQ.**


Transcribed by:  **BELLE BALL, CSR 8785, CRR, RDR**
                 Official Reporter, U.S. District Court


        (Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>:**

For Defendants:

                    GIBSON DUNN & CRUTCHER LLP
                    333 South Grand Avenue
                    Los Angeles, CA 90071-3197
          BY:  **DEBORAH L. STEIN, ESQ.**

                    GIBSON DUNN & CRUTCHER LLP
                    1881 Page Mill Road
                    Palo Alto, California  94304
          BY:  **MARTIE P. KUTSCHER, ESQ.**

                    GIBSON DUNN & CRUTCHER LLP
                    2100 McKinney Avenue
                    Suite 1100
                    Dallas, Texas  75201
          BY:  **RUSSELL H. FALCONER, ESQ.**

                    GIBSON DUNN AND CRUTCHER LLP
                    555 Mission Street
                    Suite 3000
                    San Francisco, California  94105
          BY:  **JOSHUA S. LIPSHUTZ, ESQ.**

| | |
|---|---|
| 1 | **Monday, November 9, 2020**                                    **1:33 p.m.** |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | **THE CLERK:**  Calling Case No. 18-md-2843, In Re: |
| 4 | Facebook, Inc. Consumer Privacy User Profile Litigation. |
| 5 | Counsel for the plaintiffs, please state your appearances |
| 6 | for the record. |
| 7 | **MR. LOESER:**  Good afternoon, Your Honor.  Derek |
| 8 | Loeser from Keller Rohrback. |
| 9 | **THE COURT:**  Good afternoon. |
| 10 | **MS. WEAVER:**  Good afternoon, Your Honor.  Lesley |
| 11 | Weaver, Anne Davis and Matt Montgomery from Bleichmar Fonti & |
| 12 | Auld. |
| 13 | **THE COURT:**  Good afternoon. |
| 14 | **MR. GOULD:**  Benjamin Gould from Keller Rohrback. |
| 15 | **THE COURT:**  Hello. |
| 16 | **MS. DANIEL:**  Adele Daniel from Keller Rohrback. |
| 17 | **THE COURT:**  Hi. |
| 18 | **THE CLERK:**  And for defendants? |
| 19 | **MS. STEIN:**  Good morning, Your Honor.  Deborah Stein |
| 20 | for Facebook. |
| 21 | I'm here today with Russ Falconer who will be arguing on |
| 22 | behalf of Facebook, Joshua Lipshutz, and Martie Kutscher. |
| 23 | **THE COURT:**  Hi, everybody. |
| 24 | Okay.  Let's see.  So we had some discussion about this |
| 25 | last go-round on the motion to file an amended complaint. |

1       And I guess I should start with -- who's arguing for the

2  plaintiffs?

3            **MR. LOESER:**  Yes, thank you, Your Honor.  Derek

4  Loeser.  Adele Daniel will be arguing for the plaintiffs.

5            **THE COURT:**  Okay.

6            **MR. LOESER:**  And there is one housekeeping matter

7  that I just wanted to bring to your attention before we get

8  started, if that's okay?

9            **THE COURT:**  Sure.

10           **MR. LOESER:**  You probably haven't seen, but a

11  stipulation was filed a few minutes ago that resolves the

12  motion-to-strike portion of Facebook's motion.  So the motion

13  to dismiss is still pending, and Ms. Daniel will be arguing

14  that.

15      But there was another portion of their motion that had to

16  do with the allegations in the consolidated amended complaint,

17  the second amended complaint.  The parties have resolved that

18  issue by stipulation, which has now been filed.

19      So what we have for today is the motion to dismiss.

20           **THE COURT:**  Was the -- the stipulation, I assume,

21  just says that my prior rulings apply to the allegations in

22  the complaint, which is what I was going to say anyway.

23           **MR. LOESER:**  Right.

24           **THE COURT:**  So, okay.

25      So Ms. Daniel, then, I should start with you, I think.

1    So I guess my -- my view of this is that there are certain

2    facts which, if they existed, could make this a difficult

3    question.

4    I think that for example, had Facebook foisted the

5    forum-selection clause upon its U.K. users in an effort to

6    undercut the class action, that could -- you know, that could

7    be an issue.

8    I also think that if the -- these new U.K. plaintiffs had

9    been named plaintiffs -- named plaintiffs -- in the original

10   lawsuit, that that could create problems for them.

11   Potentially, at least.  At a minimum, it would make this a more

12   difficult motion.

13   But I think that what we know now is that, you know,

14   Facebook did not foist this provision on its U.K. users in an

15   effort to undercut the class action.  I think that's

16   undisputed.  That it was -- it was doing so to comply with

17   European law.  And these new U.K. plaintiffs were members of

18   the proposed class, right, as absent -- as absent class members

19   when the lawsuit was originally filed.  But they were not

20   actual plaintiffs in the case.

21   And under those circumstances, and given the language of

22   the forum-selection clause and, I guess, the choice-of-law

23   provision, you know, it seems clear to me that it does apply to

24   the named -- the new named U.K. plaintiffs.  And that the

25   result of that is that I need to grant the motion to dismiss as

1    to the U.K. plaintiffs.

2        Of course, it's without prejudice to those U.K. plaintiffs

3    and anybody else in the U.K. who's a Facebook user, or who was

4    a Facebook user at the pertinent times, to file, you know,

5    their own lawsuit in the U.K.

6        And you know, I say that because the language of the

7    clause -- which I'm pulling up right now -- pretty clearly is

8    not limited to any dispute that arises, you know, after the

9    parties entered into the agreement.

10       And so I -- I think -- I think this is a fairly clear-cut

11   case, a clear-cut motion in Facebook's favor.  And so that's

12   the view I have of it, coming into the hearing.

13       Tell me where I went wrong in that analysis.

14           **MS. DANIEL:**  Well, I'll address the two issues in

15    turn.

16       First, even if they didn't foist this new agreement on the

17   U.K. plaintiffs, what they're doing is foisting the application

18   of the agreement on this lawsuit that -- that predated the new

19   term.

20       So --

21           **THE COURT:**  Right.

22           **MS. DANIEL:**  Right.  So it's the application.  It's

23    not the new terms, themselves; it's the application that's

24    unreasonable.

25       The language did not indicate to U.K. plaintiffs -- you

1    know, it says, you know, "will apply," "will govern," so we

2    read that language to be prospective.  And Facebook provided

3    U.K. plaintiffs no indication that it was going to turn around

4    and interpret these terms to extinguish a pre-existing lawsuit

5    that had been filed on their behalf.

6            **THE COURT:**  Well, but, I mean, I guess that's --

7    that's simply an issue of interpreting the language of the

8    agreement that Facebook entered into with its U.K. users in --

9    when was it?  2019?

10           **MS. DANIEL:**  May, 2018.

11           **THE COURT:**  May, 2018.

12           **MS. DANIEL:**  Uh-huh.

13           **THE COURT:**  And, you know, I guess I disagree with

14   you.  I mean, you have that first prefatory paragraph that,

15   you know, talks about what laws will apply, and if a dispute

16   does arise.

17       But, you know, the rest of the language seems to make

18   pretty clear that it's not limited to cases that will -- you

19   know, disputes that will arise in the future.

20       I mean, first it says -- you know, I'm looking at the

21   paragraph immediately below the one that you like to cite.  It

22   says -- you know, makes reference to (As read):

23               "...any dispute that you have against us that arises

24               out of or relates to these terms or Facebook

25               products."

1      Right?  And then further it specifies in the next

2  paragraph that:

3           "These terms supersede any prior agreements."

4      Right?  So what's the point of saying that these terms

5  supersede the prior agreements, if the prior agreements would

6  still apply to a lawsuit that's filed in the future about

7  something that happened in the past?

8      **MS. DANIEL:**  It's saying that, going forward, that

9   these clauses and these terms apply.  So they couldn't change

10  anything, for example, about what consent the plaintiffs had

11  made for the activities of Facebook prior to the agreement.

12  It's applying, going forward.  And we agree that the terms do

13  apply from May, 2018, on.

14      Where we disagree is that they apply to claims that were

15  already accrued prior to that.  But even if they apply to, you

16  know, claims that had accrued prior to that, it's something

17  altogether different to say that they apply in a lawsuit that's

18  already been filed.

19      And that's what --

20      **THE COURT:**  Well, that sort of gets to the second

21  point that I was making at the outset, which is that it's true

22  that the lawsuit was filed, but the lawsuit was filed by

23  somebody else.  Right?  And the lawsuit was not filed by the

24  U.K. plaintiffs who are now proposing to be the -- the class

25  representatives in this case.  The named plaintiffs in this

1    case.

2         To be sure, their claims relate back to the original

3    filing date for statute-of-limitations purposes.  But they

4    were, nonetheless, not the plaintiffs in the lawsuit back then.

5    And so if they had been the plaintiffs in the lawsuit back

6    then, I think that, like I said, that would make it a more

7    difficult question, and Facebook might very well be facing an

8    uphill battle.  But, they weren't in the lawsuit.  They hadn't

9    filed a lawsuit yet.

10        They're trying to file a lawsuit -- trying to file a

11   lawsuit against Facebook many months after they -- they entered

12   into this agreement about the forum and about the law that

13   applies.

14            MS. DANIEL:  So the courts recognize that they were

15   -- but they were putative class members.  And courts recognize

16    in the class-action context that when you're substituted in

17    (Inaudible) the plaintiff, they step into the shoes of the

18    former named representative.

19        So courts recognize, like in *Phillips v. Ford Motor

20   Company*, that substitution is common in class action.  That

21   often a plaintiff has to withdraw from a case for personal

22   reasons, and one of those putative class members who had been

23   waiting in the wings steps into their shoes for all purposes.

24        And courts recognize that it's true, as you said in the

25   relates-back context, as in *Immigrants Assistance Project*, but

 1   they also recognize it in *Graves*.  And we're talking about

 2   tolling of claims.  It's just a simple substitution.  It's not

 3   meant to muck anything up or change anything about the lawsuit.

 4   It's --

 5            **THE COURT:**  The tolling is about relation back.

 6    Right?

 7        I mean, it's all about making sure that -- I mean, the

 8   whole point of that in the class-action context is, you know,

 9   you have all these unnamed class members who can rely on the

10   fact that somebody is pursuing claims on their behalf.  So they

11   don't have to rush to court to file their own lawsuit.  Which,

12   if -- if that weren't the case, then we'd probably have a

13   gazillion individual lawsuits against Facebook right now,

14   for -- you know, by individuals who are trying to preserve, you

15   know, their own claims, and don't want the clock to run.  It

16   makes perfect sense in that context.

17        But when you're talking about somebody who is actually

18   bringing a lawsuit for the first time, it seems like a pure

19   fiction to say that -- to say that they brought the lawsuit

20   back when the prior named plaintiff brought the lawsuit.  They

21   didn't.  They brought it now.

22            **MS. DANIEL:**  I think what those cases say is that we

23    look back to the original complaint when we're talking about

24    when they brought the lawsuit.  So that's -- the same thing is

25    true of statute of limitations as is true here.  You look back

1    to when they brought the lawsuit.

2         So these putative plaintiffs, like the ones you mentioned,

3    they are waiting in the wings, like you said.  They don't need

4    to file their own lawsuit because their claims are on file,

5    California claims in a California forum.  They don't need to

6    rush everywhere and file new.  The same thing applies.  You

7    look back to that original pleading.

8         **THE COURT:**  But why -- I mean, I guess -- what are

9    your -- do you have cases that apply that concept outside the

10   context -- outside the statute-of-limitations or tolling

11   context?

12        **MS. DANIEL:**  No, but I think it's that principle, and

13   why relation back is spoken of so broadly.  It's the principle

14   of:  You have these putative class members; they're allowed to

15   rely on the original complaint.  We don't want them rushing

16   off to file their own litigation.  All of those principles

17   apply to --

18        **THE COURT:**  Well, why -- why do those principles

19   apply in a context like this?

20        I mean, it's sort of weird because the -- I mean, you are

21   sitting here arguing right now on behalf of people in the U.K.,

22   that they should not be allowed to file their lawsuits in the

23   U.K.  That they should be required to file their lawsuits in

24   California.

25        In other words, there was previously -- before this

forum-selection clause took effect for these U.K. citizens,
there was previously a forum-selection clause that took effect
that was far more onerous to people in the U.K., and said that
if you want to sue Facebook, you have to sue Facebook in the
Northern District of California -- or maybe it was just in
California, I can't remember -- and California law will apply.

So there was, like, no incentive before this new
forum-selection clause was adopted for people in the U.K. to
rush to the California courts to preserve their right to sue
Facebook in the California courts before they were entitled to
do so in the U.K. courts, was there?

**MS. DANIEL:** We believe that this is the best forum
for the U.K. plaintiffs to pursue their claims. We have a
class-action procedure here that is, we believe, better than
the class-action procedure available to people in the U.K. to
pursue their claims.

In this case, Facebook is here, the evidence is here, the
witnesses are here. Discovery is more transparent here.
That's why these plaintiffs belong in this forum, and should
want to preserve their California claims.

What we don't want to allow is for defendant in a
class-action case to change the operative agreement as to a
putative -- all putative class members, and prevent them from
having a lawsuit that's already on file.

Like --

1        **THE COURT:**  That's why I said --

2        **MS. DANIEL:**  Right.

3        **THE COURT:**  I mean, I think, you know, if it becomes

4    more difficult -- it would become more difficult for Facebook

5    if they had in fact (Inaudible) the forum-selection clause to

6    try to undercut the class action.  Right?  But they're

7    required by law to do it.

8        **MS. DANIEL:**  And I think the problem is that they're

9    applying the forum-selection clause here to extinguish a

10   preexisting lawsuit.

11       So going forward, May, 2018, and beyond, U.K. plaintiffs

12   could sue for Facebook's conduct in the U.K.  But prior to

13   that, the class that was on file as -- April, 2018, that

14   contract is the one that --

15       **THE COURT:**  Well, you're saying "extinguish a

16   preexisting lawsuit."  I mean, that's not correct.  Number

17   one, this lawsuit isn't going anywhere.  Right?  This lawsuit

18   on behalf of all U.S. Facebook users remains.

19       And number two, it's not even extinguishing the lawsuit on

20   behalf of U.K. plaintiffs.  It's dismissing this particular

21   lawsuit by these particular U.K. plaintiffs, and without

22   interfering with their ability to pursue their lawsuit in the

23   U.K. against Facebook.

24       **MS. DANIEL:**  But it does extinguish their opportunity

25   to pursue California claims in the California forum that they

1    were entitled to under the prior agreement, and that they

2    had --

3              **THE COURT:**  It all begs the question -- I mean,

4    everything you and I are discussing just begs the question

5    about what the new language means.

6         Does the new language, the -- the new forum-selection

7    clause, by its terms, apply to disputes that arose prior to its

8    adoption?

9         And I just don't see how you can say that the language

10   does not apply to disputes that arose prior to the adoption of

11   this agreement in May of 2018.

12             **MS. DANIEL:**  Under federal contract law, you look to

13   what a reasonable reader would read the contract to mean.  And

14   if there's any ambiguity, you apply it against the drafter.

15   There's nothing in the contract, though, that indicates to a

16   U.K. plaintiff reading it that:  Oh, I am, you know,

17   extinguishing my right to participate as a putative class

18   member in litigation that's already on file.

19        What we're worried about is there's no conversation

20   between the parties that:  Oh, I'm going -- by Facebook:  Oh,

21   I'm going to turn around and assert that this clause, you know,

22   extinguishes your participation in a putative class action.

23        I'm trying to be more careful about the "extinguishes"

24   language because it is more narrow.

25        And that's what's unreasonable.  So I think *AT&T* court

1    recognizes that it's odd for a party to be in litigation and

2    then agree to a new contract with a forum-selection clause and

3    a new choice of law, without any discussion of:  Oh, by the

4    way, this is going to apply to already-filed claims.  It's not

5    even already-accrued claims, it's already-filed claims.  That's

6    odd, and *AT&T* court says that's unreasonable.  And that's --

7    that's our view.

8              **THE COURT:**  But even as applied to -- let's just

9    change the facts a little bit and pretend that the prior U.K.

10   named plaintiffs never went away.  Okay?  And these new U.K.

11   plaintiffs who are now proposing to be named plaintiffs -- or

12   I guess they are named plaintiffs, because I granted the

13   motion for leave to amend the complaint.

14        Let's pretend that these new named plaintiffs from the

15   U.K. never came in as named plaintiffs, and just remained, you

16   know, members of the proposed class action who -- brought by

17   the prior U.K. plaintiffs.

18        And let's say we got to class certification, and Facebook

19   filed a motion to deny or partially deny class certification,

20   and said that, you know, you can't certify on behalf of the

21   U.K. class because the U.K. class members have since adopted --

22   have since entered into this agreement that they have to pursue

23   their claims in the U.K.

24        I mean, wouldn't the answer be the same?  That I would --

25   in other words, I would deny class certification for the U.K.

1    class, and -- but the members of the U.K. class would be free

2    to pursue their claims in the U.K.  Right?  Because they have

3    the forum-selection clause.

4        And presumably -- I mean, this may be a question of U.K.

5    law.  But if it were in the U.S., presumably the proposed class

6    members, the proposed U.K. class members would have the statute

7    of limitations tolled.  Because they were putative class

8    members in this action up until that point that class

9    certification was denied.

10        **MS. DANIEL:**  I don't think we disagree that U.K.

11    plaintiffs could, in theory, file a class action elsewhere.

12    But we're asking to preserve the class action that was filed

13    on their behalf in April, 2018, in the forum and under the

14    laws that they prefer, and under the contract that was

15    operative at the time we filed the lawsuit.  We don't disagree

16    there.

17        I do wonder:  Does Facebook's argument depend on the fact

18    that they're new?  Or, or, as you suggest, is it -- is it true

19    that these terms apply to all U.K. plaintiffs --

20        **THE COURT:**  Right.  And I think -- that's why I'm

21    emphasizing, I think it would be a much more difficult case if

22    either one of two facts were present.  One, that Facebook did

23    it not to comply with the law, but to try to undercut the

24    class action.  Or two, if -- if Facebook tried to do it to

25    plaintiffs who were named plaintiffs in the lawsuit prior to

the -- this new agreement being reached.   Right?

Because if you had a named plaintiff -- imagine if you had
-- maybe I should start talking -- why don't we use this
opportunity to see if Mr. Falconer briefly wants to respond to
any of this.

MS. WEAVER:  Thank you, Your Honor.  And may it
please the Court.

I had four points that I thought would be helpful to the
Court, based on the discussion so far.  I think textually the
clause is unambiguous that it applies to all claims, regardless
of when they accrued.

And the idea that we take relation back and use that to
somehow treat these unnamed class members as having filed at
the time other folks filed, I think it both proves our point,
and it proves too much.

I think it -- it proves our point because the concept of
relation back in the case law, how it's explained is plaintiffs
are treated as though they had filed a complaint, even though
they had not.  And that's all we're saying, is they had not, in
fact, filed a complaint yet.  So the relation-back concept,
that underscores that these folks were not yet parties and had
not yet filed claims.

I think that concept also, for the plaintiffs, proves too
much.  Because their view, if accepted, would preclude any
putative class member from filing their own individual claim

anywhere else.  Right?

That's the first-to-file doctrine I'm sure the Court's familiar with, that when you have a lawsuit involving parties and issues --

**THE COURT:**  If the law is going to treat you as already having filed a lawsuit, then you're filing kind of duplicative lawsuits if you --

**MR. FALCONER:**  Right.  I mean, under an aggressive first-to-file -- I mean, not even that aggressive, just the letter of the doctrine.  Once a person is named as a putative class member, first-to-file would preclude them from filing elsewhere if they were deemed to have filed and be a party to that class action.  I just think that can't be the law.

The third point, and one that I feel duty-bound to make but do not want to linger on, I do want to point the Court to the *Salgado* case that we cited in our reply brief, California Court of Appeal case, that clauses that are worded the way this forum-selection clause is worded are routinely applied even to already-filed claims.

So that -- you know, again, we don't need that, because these folks have not yet filed a claim, but --

**THE COURT:**  Yeah.  You don't need that, I think, is an important point there.  Because I -- you know, I wonder, these courts -- I was looking at that New Jersey District Court case just before the hearing.  And I read that *Salgado*

1    case yesterday.  And, and you know, I do question -- I

2    question whether those cases are missing something.

3        You know, I guess if I had a case with that fact pattern,

4    where it was a named plaintiff, right, who had previously filed

5    a lawsuit against Facebook, and then Facebook entered into an

6    agreement with them sometime thereafter -- a forum-selection

7    clause, let's say, or arbitration agreement -- and then a court

8    said -- and then it came to court, Facebook came to court and

9    said -- I think the first question I would ask Facebook is:

10   Well, did you have direct communications with the plaintiff who

11   sued you, when you reached this agreement with them?  Or did

12   you negotiate it with their lawyer?  Because if you directly

13   communicated with a named plaintiff who sued you, directly

14   negotiated with them, directly communicated with them, and

15   reached this agreement with them about their lawsuit without

16   the participation of their lawyer, you're probably in big

17   trouble.

18       And I didn't see -- the cases that I read that you cited

19   didn't seem to acknowledge that problem.  And I wonder if those

20   courts missed something.  But I don't know if it's -- I don't

21   know how relevant it is here, because of the fact that these

22   individuals were not named plaintiffs in the lawsuit at the

23   time that they entered into the agreement.

24           **MR. FALCONER:**  Right.  That's exactly right.  And

25   they weren't named plaintiffs.  And as Your Honor has noted,

it's undisputed here that this clause was executed for a proper purpose, and in good faith, for GDPR compliance.

The one case that the plaintiff cited invalidating a forum-selection clause, there was an express finding of bad faith, and a bad-faith attempt to defeat the obligation. There's nothing like that here.  And I think that's a controlling fact and circumstance.

The last point I wanted to alert the Court to is there's been some discussion of:  In theory, could another action be filed elsewhere.  There's been a development since we were together last that we wanted to let the Court know about.

About two weeks ago, a number of news outlets reported that Facebook has been sued in the U.K. in what's called a "group action," in a case arising out of the Cambridge Analytica events.  Now, Facebook hasn't been served yet in that case, so we don't have a copy of the claim document, and we don't know all of the specifics.

But the press is reporting -- they've been in touch with the plaintiffs' counsel, that's where they're getting their information -- that the case focuses on privacy issues and data collection by third-party apps.  And a group action is the U.K.'s closest equivalent to a U.S. class action.

The case reportedly seeks relief on behalf of more than a million Facebook users in the U.K.  So it's not just a theoretical question of:  Is there a preclusion problem if

1  these folks and other U.K. users like them are held to be bound

2  to a mandatory forum-selection clause that requires them to

3  litigate, thousands of miles from their home jurisdiction.

4  Like, this newly-filed case, based on what we know about it,

5  suggests that those are very real questions, and not

6  theoretical ones.

7      And as --

8      **THE COURT:**  Congratulations.

9      **MR. FALCONER:**  Yes.  So, lucky us, no doubt.

10     But I think in terms of comity, in terms of a court --

11  what court is already dealing with U.K. issues, deals with them

12  that -- on a daily basis, there is an action, as we understand

13  it, now pending in the U.K. raising very similar issues to the

14  issues raised here.  So some of the discussion about could they

15  file elsewhere, could they be part of a group action elsewhere,

16  it appears that those issues are no longer theoretical.

17     And we would submit that's another factor that weighs in

18  favor of dismissal under forum non-convenience.

19      **THE COURT:**  Okay.

20     Ms. Daniel, do you want to wrap up?

21      **MS. DANIEL:**  We also saw those news articles.  But I

22  don't think any case was actually filed in the U.K.  I think

23  it's another news article like we saw two years ago about

24  cases -- firms in the U.K. launching investigations against

25  Facebook.  But I'm not sure that we've seen one actually

1   filed, and perhaps that's why Facebook hasn't been served in

2   that case.

3       So one --

4           **THE COURT:**  I take it, you're not behind that

5   lawsuit?

6           **MS. DANIEL:**  No, I'm not.

7           **THE COURT:**  Got your hands full here, probably?

8           **MS. DANIEL:**  Plenty, plenty to do here.

9       I just want to emphasize again that putative class members

10  are just treated differently than a normal named plaintiff, for

11  the reasons that Your Honor identified.  So that they don't

12  have to go and quickly file their own litigation.

13      It's just simply a different beast that courts have to

14  deal with.  And that that's why we have these special rules

15  that only apply in class cases about relating back, or tolling,

16  or just recognizing that substitution of a plaintiff is

17  necessary in these cases, and shouldn't throw a wrench in the

18  entire litigation.

19      We don't want defendants to be able to renegotiate a

20  contract and then use it to extinguish a putative class's

21  claim.  It's not the same as extinguishing an individual

22  plaintiff's claim.  It really is -- or individuals just out

23  there, who's not in a putative class.  It's different when

24  they're using the new forum to extinguish a putative class in a

25  case.

1          **THE COURT:**  Okay.  I'll issue a ruling shortly.

2     This -- this discussion was helpful.  And, is there anything

3     else we need to discuss today?

4          Judge Corley has you all under control?

5          **UNIDENTIFIED MAN:**  She does, indeed, Your Honor.

6          **MS. WEAVER:**  Very much so.

7          **THE COURT:**  All right.  Thank you.

8          **MS. DANIEL:**  Thank you, Your Honor.

9          **MR. FALCONER:**  Thank you.

10         (Proceedings concluded)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

I, BELLE BALL, CSR 8785, CRR, RDR, hereby certify that the foregoing is a correct transcript, transcribed to the best of my ability from the official electronic sound recording of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Monday, November 23, 2020