GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S ADMINISTRATIVE MOTION TO PERMANENTLY SEAL** |

I, Alexander H. Southwell, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of New York. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP. I submit this declaration in support of Facebook's Administrative Motion to Permanently Seal. I make this declaration on my own knowledge, and I would testify to the matters stated herein under oath if called upon to do so.

2. Attached as **Exhibit 1** is a true and correct **redacted** copy of Facebook's Brief In Opposition To Plaintiffs' Request For Privileged Investigatory Materials. The redactions are of material that is confidential, and for which public disclosure would harm Facebook, as explained below and in Facebook's administrative motion to permanently seal.

3. Attached as **Exhibit 2** is a true and correct **unreacted** copy of Exhibit 1, which was previously filed under seal, Dkt. 612-3.

4. Attached as **Exhibit 3** is a true and correct **redacted** copy of Plaintiffs' Motion to Compel Production of Documents Related to Facebook' App Developer Investigation. The redactions are of material that is confidential, and for which public disclosure would harm Facebook, as explained below and in Facebook's administrative motion to permanently seal.

5. Attached as **Exhibit 4** is a true and correct **unredacted** copy of Exhibit 3, which was previously filed under seal, Dkt. 611-1.

6. On February 5, 2021, the parties filed briefing on Plaintiffs' request that Facebook produce privileged investigatory materials generated during Facebook's Application Developer Investigation ("ADI" or the "Investigation"). *See* Dkt. 611–613. Pursuant to Discovery Order 12, Dkt. 602, the parties' submissions address twenty privilege log entries that Plaintiffs challenge. These entries are associated with materials Facebook withheld because the materials are protected from disclosure by the attorney-client privilege and the work product doctrine. Facebook submitted the twenty documents that Plaintiffs specifically challenge to the Court for *in camera* review. Facebook's submission describes these documents in detail. Plaintiffs' submission directly quotes the challenged privilege log entries.

7. Facebook initiated the Investigation because, in the wake of the reporting of data misuse by Cambridge Analytica in March 2018, Facebook anticipated that it would have to respond to known and expected legal challenges in connection with applications and developers that may have had access to large amounts of user data because they were active before Facebook placed additional, significant limitations on the amount and type of data developers could request from users through the Facebook Platform in 2014.

8. To this end, Facebook retained outside counsel (Gibson, Dunn & Crutcher LLP) experienced with cybersecurity and data privacy internal investigations to design and direct a new investigation (ADI) that could, among other things, gather the facts necessary for providing legal advice to Facebook about litigation, compliance, regulatory inquiries, and other legal risks facing the company resulting from potential data misuse and activities by third-party app developers operating on the prior version of Facebook's platform.

9. I led the Gibson Dunn team engaged to develop and conduct the Investigation.

10. The Investigation was highly complex and addressed millions of applications operating before changes were made to Facebook's platform. There was no industry standard for how to conduct such an investigation. Rather, under Gibson Dunn's and in-house counsel's leadership, the ADI investigative team devised and tailored the ADI's methods, protocols, and strategies to address the specific risks posed by these legal challenges. These proprietary methods and techniques are valuable to Facebook.

11. The methods, techniques, and strategies employed during the Investigation are not only privileged but also highly confidential. Indeed, Facebook has taken numerous substantial steps to maintain the confidentiality of details regarding the Investigation. For example, details about the Investigation are disclosed to Facebook employees only on a need-to-know basis. As a result, a limited number of Facebook employees, counsel, and third-party experts have accessed this highly sensitive information.

12. The proposed redactions to the parties' submissions cover information that would reveal proprietary and highly confidential aspects of the Investigation. Facebook specifically

asks the Court to permanently seal (i) detailed descriptions of privileged and confidential documents generated during the Investigation, which Facebook submitted for the Court's *in camera* review, and (ii) names of Facebook employees and experts retained by Facebook's counsel, drawn from Facebook's privilege logs—which are themselves designated "CONFIDENTIAL," under the Protective Order in this action, Dkt. 122.  Facebook has provided this confidential information only to support its claim of privilege over the investigatory materials Plaintiffs demand.  Public disclosure of portions of the very information Facebook seeks to protect would cause Facebook to suffer irreparable harm by publicly disclosing aspects of Facebook's privileged legal Investigation that Facebook has diligently worked to keep confidential.

13.     The document descriptions Facebook asks the Court to seal reveal confidential information, and if the Court were to order Facebook to produce the documents it submitted for *in camera* review (over Facebook's objections), Facebook would designate each of the documents "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY" under the Protective Order.

14.     The summaries of documents Facebook submitted for *in camera* review are confidential for two primary reasons.  First, they reveal detailed information about the Investigation's novel methods, processes, and strategies designed and developed by counsel in anticipation of litigation.  The summaries reveal highly sensitive aspects of the Investigation, such as its mechanics, design, and day-to-day operation.  Public disclosure of the Investigation's methods, processes, and strategies would allow Facebook's competitors to copy these proprietary, innovative methods and techniques that Facebook and its counsel developed, which would cause Facebook competitive harm.

15.     Second, public disclosure of information about the Investigation could create security risks.  The Investigation was designed to identify applications that may have misused data before Facebook implemented additional platform protections.  Data misuse and other abuse practices by app developers can be adversarial in nature, meaning that bad actors commonly

attempt to evade technological, investigative and enforcement mechanisms designed to detect and disrupt abuse. As a result, Facebook has strictly maintained the confidentiality of the details of ADI not only because this information is privileged and covered by the work-product doctrine, but also in order to ensure bad actors cannot use that information in attempts to evade the additional restrictions on data access that Facebook has enacted, which would cause harm to Facebook and its users.

16. Facebook also asks the Court to permanently seal the names of specific Facebook employees and experts who assisted with the Investigation on a confidential basis, working at Gibson Dunn's direction. These names come directly from Facebook's privilege logs, which are designated "CONFIDENTIAL." If these names were disclosed publicly, competitors would have access to confidential information regarding Facebook's business relationships with third-party experts and may recruit employees who developed unique expertise developing and executing this novel Investigation.

17. For these reasons, the information redacted in the parties' submissions is "Confidential" under the Protective Order and protected from public disclosure by Federal Rule of Civil Procedure 26(c).

*   *   *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 16, 2021 in New York, New York.

Alexander H. Southwell