Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO FACEBOOK'S APP DEVELOPER INVESTIGATION**<br><br>Judge:  Hon. Jacqueline Scott Corley<br>Courtroom:  4, 17th Floor |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................4

    A.    Facebook's Enforcement Efforts ...............................................................4

    B.    Plaintiffs' Requests for the ADI Materials................................................7

    C.    Status of the Massachusetts Attorney General Action...........................9

III.  ARGUMENT .....................................................................................................10

    A.    The ADI Materials Are Not Protected by the Work Product Doctrine................10

        1.    Applicable Standard ........................................................................10

        2.    The ADI Materials Were Prepared to Assure the Public that Facebook Cared About User Privacy .......................................10

        3.    Even if Facebook Had Conducted the ADI Partially in Anticipation of Litigation, the ADI Materials Would Still Not Be Protected ..............11

        4.    Plaintiffs Have a Substantial Need for the ADI Materials and Cannot Obtain Their Substantial Equivalent by Other Means..............................13

    B.    The ADI Materials Are Not Protected by the Attorney-Client Privilege..............14

        1.    Applicable Standard ........................................................................14

        2.    The Underlying Facts and Information Part of the ADI Are Not Privileged .................................................................................15

        3.    Because the Attorney Client Privilege Does Not Protect Communications Made Primarily for Business Purposes, Facebook Cannot Claim Privilege Over All the ADI Materials. .............................16

        4.    Even if Facebook's Claim of Privilege is Accepted, Should Facebook Rely on the ADI as a Defense, the Privilege Is Waived...........19

IV.   CONCLUSION ..................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Marsh*,
312 F.R.D. 584 (E.D. Cal. 2015) .........................................................................12

*Attorney General v. Facebook, Inc.*,
No. SJC-12946 (Dec. 4, 2019),
https://boston.suffolk.edu/sjc/pop.php?csnum=SJC_12946 ..................................10

*In re Capital One Consumer Data Sec. Breach Litig.*,
No. 1:19MD2915, 2020 WL 2731238 (E.D. Va. May 26, 2020), *aff'd*, 2020
WL 3470261 (E.D. Va. June 25, 2020)...................................................................12

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ...............................................................................19

*Connolly Data Sys., Inc. v. Victor Techs., Inc.*,
114 F.R.D. 89 (S.D. Cal. 1987)..............................................................................10

*In re CV Therapeutics, Inc. Sec. Litig.*,
No. C-03-3709 .......................................................................................................17

*Datel Holdings Ltd. v. Microsoft Corp.*,
No. 09-cv-05535, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ...........................18

*District of Columbia v. Facebook, Inc.*,
No. 2018-CA-008715-B (D.C. Super. Ct. 2018) ...................................................10

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
402 F. Supp. 3d 855 (N.D. Cal. 2019).........................................................14, 16, 18

*F.D.I.C. v. Fid. & Deposit Co. of Md.*,
196 F.R.D. 375 (S.D. Cal. 2000)............................................................................10

*Fourth Age Ltd. v. Warner Bros. Dig. Distrib., Inc.*,
No. CV 12-09912 AB (SHX), 2015 WL 12720324 (C.D. Cal. Aug. 6, 2015)......16

*Healey v. Facebook, Inc.*,
Suffolk Superior Court Action No. 1984CV02597-BLS-1 (Jan. 17, 2020),
https://newenglandinhouse.com/files/2020/01/Short-Form-Decision-and-
Order-Regarding-AGs-Petition-to-Compel-Compliance-with-CID-Facebook-
Jan.-2020.pdf...............................................................................................5, 9, 10

*LightGuard Sys., Inc. v. Spot Devices, Inc.*,
281 F.R.D. 593 (D. Nev. 2012)..............................................................................17

ii

*Marceau v. IBEW,*
    246 F.R.D. 610 (D. Ariz. 2007) ......................................................................... 16

*MediaTek Inc. v. Freescale Semiconductor, Inc.,*
    No. 4:11–cv–05341 YGR (JSC), 2013 WL 5594474 (N.D. Cal. Oct. 10, 2013) .................. 18

*Neuder v Battelle Pac. Nw. Nat'l Lab.,*
    194 F.R.D. 289 (D.D.C. 2000) ............................................................................ 17

*Newport Pac. Inc. v. Cty. of San Diego,*
    200 F.R.D. 628 (S.D. Cal. 2001) ......................................................................... 10

*SanDisk Corp. v. Round Rock Research LLC,*
    No. 11-CV-05243-RS (JSC), 2014 WL 691565 (N.D. Cal. Feb. 21, 2014) ........................ 16

*Shopify Inc. v. Express Mobile, Inc.,*
    No. 20-MC-80091-JSC, 2020 WL 4732334 (N.D. Cal. Aug. 14, 2020) ....................... 17, 18

*Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.,*
    150 F.R.D. 648 (N.D. Cal. 1993) ......................................................................... 15

*Stevens v. Corelogic, Inc.,*
    No. 14-cv-1158-BAS(JLB), 2016 WL 397936 (S.D. Cal. Feb. 2, 2016) ............................ 17

*Thompson v. C & H Sugar Co.,*
    No. 12-CV-00391 NC, 2014 WL 595911 (N.D. Cal. Feb. 14, 2014) ................................. 13

*United Coal Cos. v. Powell Constr. Co.,*
    839 F.2d 958 (3d Cir. 1988) .............................................................................. 10

*United States v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) ............................................................................. 19

*United States v. Christensen,*
    828 F.3d 763 (9th Cir. 2015) ............................................................................. 17

*United States v. Martin,*
    278 F.3d 988 (9th Cir. 2002) ............................................................................. 14

*United States v. Richey,*
    632 F.3d 559 (9th Cir. 2011) ................................................................... 3, 11, 12, 14

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ....................................................................................... 15

*Vallabharpurapu v. Burger King Corp.,*
    276 F.R.D. 611 (N.D. Cal. 2011) ......................................................................... 14

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17CV00939WHAJSC, 2017 WL 2485382 (N.D. Cal. June 8, 2017) ............................13

**Other Authorities**

Facebook's Use and Protection of User Data: Hearing Before the H. Energy and
    Commerce Comm. ("Zuckerberg Statement"), 2018 WL 1757479 (Apr. 11,
    2018) ................................................................................................................................. 7, 11, 12

Fed.R.Civ.P. 26(b)(3) ................................................................................................................. 10, 13

LOCAL RULE 5-1(i)(3) ...............................................................................................................22

## I.    INTRODUCTION

In 2018, the world learned that Cambridge Analytica's app on the Facebook platform had misused a substantial and alarming amount of Facebook users' private information. In the wake of this scandal, Facebook publicly announced the App Developer Investigation ("ADI"), described as an effort to investigate whether other apps may have similarly misused users' information. Facebook said the ADI would review every app on the platform "that had access to large amounts of information," and that it would involve hundreds of people, including not just attorneys, but also "external investigators, data scientists, engineers, policy specialists, platform partners and other teams across the company."[1] The ongoing ADI has thus far resulted in the suspension of tens of thousands of apps for reasons including "inappropriately sharing data obtained from [Facebook], making data publicly available without protecting people's identity or something else that was in clear violation of [Facebook's] policies."[2]

Facebook has characterized the ADI as a new and distinct endeavor that was *entirely* lawyer-driven, and thus entirely privileged. In reality, the ADI was a continuation of Facebook's longstanding if lackluster investigative and enforcement efforts. Long before the ADI began, Facebook's DevOps team attempted—unsuccessfully—to enforce policies designed to prevent third party apps from misusing user information. Dressed up with a new name and trumpeted with repeated press releases, the stated purpose of the ADI was the same as FB's existing program: to protect users' data from misuse by third-party apps.

Given the clear relevance of the ADI to Plaintiffs' claims, Plaintiffs seek discovery related to the ADI that does not explicitly contain legal advice. But to date, Facebook has refused to produce virtually all documents generated or uncovered by the ADI ("the ADI Materials"), claiming that they are shielded from production by work product or attorney client privilege. Pursuant to this Court's instructions and the parties' agreement, Facebook has now produced

---

[1] *An Update on Our App Developer Investigation*, Facebook (Sept. 20, 2019), https://about.fb.com/news/2019/09/an-update-on-our-app-developer-investigation/
[2] *Id.*

privilege logs for six apps investigated as part of the ADI, containing over 6,000 entries.[3] These logs show that, other than correspondence with the app developers related to the Requests for Information ("RFIs") sent by Facebook, the Company is claiming work-product protection and attorney-client privilege over every email, chart, table, slide, image, diagram, agenda, task list, chart, and spreadsheet associated with the investigation. Facebook has asserted that every one of those documents in the logs is privileged in full and has withheld each of them in their entirety.

From these sample logs, Plaintiffs identified 400 entries that fail to identify an attorney as an author or recipient. From these 400, pursuant to Discovery Order No. 12, ECF No. 602, Plaintiffs selected 20 for *in camera* review.[4] Following that review, informed by the Court's review of the 20 documents as well as the arguments below, Plaintiffs respectfully ask the Court to rule that the ADI is not categorically work product or privileged. Importantly, Plaintiffs rely in this motion solely upon items in the public record, cognizant of this Court's admonition against declarations and evidentiary submissions.[5]

First, Facebook's blanket work-product claims fail both because the ADI was not conducted in anticipation of litigation and because the logs do not identify any such litigation. Rather, Facebook repeatedly and publicly stated that the purpose of ADI was not to prepare for litigation but to "make sure that people can continue to enjoy engaging social experiences on Facebook while knowing their data will remain safe."[6] Because the stated purpose of the ADI

---

[3] Joint Status Update at 4, ECF No. 599 (Jan. 24, 2021). These six are the apps the parties agreed upon as a sampling of the more than 100,000 apps Facebook identified as part of the ADI. *See* Facebook, Inc.'s Administrative Mot. to File Under Seal, ECF No. 514; *see also* Stipulation & Order re Process to Log Exemplar Materials from Facebook's App Developer Investigation, ECF No. 518; Further Stipulation & Order re Process to Log Exemplar Materials from Facebook's App Developer Investigation, ECF No. 533.

[4] Joint Status Update at 4. In addition, the electronic versions of the logs containing the 400 entries without an attorney and the 20 selected by Plaintiffs for *in camera* review were provided to the Court in connection with the parties' stipulation that the Court entered on the day of this filing, February 5, 2020. *See* ECF No. 610, ¶ 3.

[5] *See* Hr'g Tr. 11:2-16 (Jan. 15, 2021) ("*I don't want declarations. I don't want declarations … No declarations.*") (emphasis added). To the extent Facebook relies on declarations in its brief, Plaintiffs respectfully request the Court strike and ignore them.

[6] *An Update on Our App Developer Investigation*, *supra* note 1.

was to reassure users that Facebook would protect user data, not to prepare for litigation, it is not entitled to work-product protection.

Second, even if Facebook had an unstated litigation-related motive for conducting the ADI, the law is clear that to claim work-product protection over such dual-purpose documents, Facebook must establish that the documents at issue would not have been produced in substantially similar form absent the prospect of litigation. *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011). Here, Facebook has repeatedly claimed that it had been investigating third-party misuse of Facebook users' information since at least 2012. App reviews were business as usual and would have been performed whether litigation was anticipated or not. They are thus not work product.

Third, the ADI Materials are not categorically protected by the attorney-client privilege. The privilege does not apply to the underlying facts and information regarding the ADI, including the information Plaintiffs seek, including which third-party apps violated which policies over what period of time, and what user data and information these third parties obtained and ultimately misused. Plaintiffs are entitled to this information given the central relevance of the ADI to Plaintiffs' claims—and in particular to the fourth category of misconduct upheld by Judge Chhabria regarding Facebook's failure to monitor (*see* Pretrial Order No. 20 at 9-10, ECF No. 298).

Finally, the ADI Materials are not protected by the attorney-client privilege because the privilege does not protect communications made primarily for business purposes. The mere presence of attorneys does not change that fact, particularly where, as Facebook itself admits, the investigation involved hundreds of non-attorneys—many of whom were engaged in the effort before it was rebranded "the ADI." And where *no attorneys are present*, as is the case with respect to the entries submitted here, Facebook's argument is even weaker.

Thus, Plaintiffs respectfully request that, in addition to any guidance the Court sees fit to provide, the Court order that (1) the 20 documents selected for *in camera* review should be produced, (2) Facebook is not entitled to a categorical claim of privilege over the entirety of the

ADI, and (3) Facebook produce, at a minimum, all of the underlying facts and information regarding the ADI, including which third-party apps violated which Facebook policies over what period of time and what user information they obtained and misused.

Significantly, at 4:02 p.m. on the day this brief was due to be filed, Facebook sent Plaintiffs a letter (attached hereto as Exhibit A), stating that one of the 20 documents Plaintiffs selected for *in camera* review is not in fact privileged and seeming to suggest that the procedure agreed to by the parties and ordered by the Court should somehow be altered accordingly. This letter came on the day of filing even though Plaintiffs identified the document at issue to Facebook more than two weeks ago, on January 21, 2021, and Facebook had several weeks to review and log these documents. The letter itself demonstrates that there is little or no distinction between ADI and Facebook's other enforcement efforts. In any event, Plaintiffs insist that Facebook submit this document for *in camera* review along with the remaining selected entries in accordance with the parties' stipulation governing this process.[7]

## II.      STATEMENT OF FACTS

### A.      Facebook's Enforcement Efforts

Long before Facebook first announced the ADI, Facebook's purported promise to enforce privacy protections were critical to users and a key business strategy for the company. It had policies in place to attempt to enforce third-party app developers from misappropriating user data and information. For example, from at least 2010 to 2014, the Platform Policy, which governed the conduct of apps on the platform, stated that Facebook "can take enforcement action against you and any or all of your applications if we determine in our sole judgment that you or your application violates Facebook Platform Terms and Policies."[8] From 2014 to at least 2018, the Platform Policy stated that Facebook "may enforce against your app or website if we conclude

---

[7] *See* ECF No. 514, *supra* note 3.

[8] *Facebook Platform Policies* (Apr. 25, 2012),
https://web.archive.org/web/20120501025801/http://developers.facebook.com/policy/ (last visited Feb. 5, 2021).

that your app violates our terms or is negatively impacting the Platform."[9] The Platform Policy also indicated that "[e]nforcement is both automated and manual, and can include disabling your app, restricting you and your app's access to platform functionality, requiring that you delete data, terminating our agreements with you and any other action that we deem appropriate."[10] Facebook's Statement of Rights and Responsibilities ("SRR")—governing Facebook's relationship with users—affirmed this promise of enforcement, stating from at least August 2009 to April 2018 that Facebook would "require applications to respect your privacy, and your agreement with that application will control how the application can use, store, and transfer that content and information."[11] The SRR further stated that application developers must meet or comply with the requirements set out in Facebook's Platform Policies.[12]

Indeed, in 2012 Facebook claimed that it had "put in place an enforcement program to prevent and respond to potential developer misuse of user information" (the "Enforcement Program").[13] According to Facebook, its internal "Development Operations" or "DevOps" team "has consistently played a central role in enforcing Facebook's [P]olicies and protecting user data and Facebook's Platform."[14] This ongoing enforcement program included the "regular and proactive monitoring of apps" and investigations into "potential app violations."[15]  Facebook

---

[9] *Facebook Platform Policy* (Mar. 25, 2015),
https://web.archive.org/web/20160412175450/https://developers.facebook.com/policy/ (last visited Feb. 5, 2021).

[10] *Id.*

[11] *Second Amended Consolidated Complaint* ¶ 559, ECF No. 491 (citing *Statement of Rights and Responsibilities*, Facebook (June 18, 2010),
https://web.archive.org/web/20100618224059/http://www.facebook.com/terms.php (last visited Feb. 5, 2021).

[12] *Id.*

[13] Decision & Order re Attorney General's Petition to Compel Compliance with Civil Investigative Demand Pursuant to G.L. c. 93A, § 7 ("*Healey* Order") at 3 (citing the Petition to Compel Compliance with Civil Investigative Demand Pursuant to G.L. c. 93A, § 7 (the "Petition") ¶ 27), *Healey v. Facebook, Inc.*, Suffolk Superior Court Action No. 1984CV02597-BLS-1 (Jan. 17, 2020), https://newenglandinhouse.com/files/2020/01/Short-Form-Decision-and-Order-Regarding-AGs-Petition-to-Compel-Compliance-with-CID-Facebook-Jan.-2020.pdf.

[14] *Id.* (citing Petition ¶ 28).

[15] Letter from Facebook, Inc. to Chairman Chuck Grassley, Ranking Member Dianne Feinstein, U.S. Senate Committee on the Judiciary, *Facebook's Response to U.S. Senate Committee on*

also stated, "we regularly take enforcement action against apps.  For example, in 2017, we took action against about 370,000 apps, ranging from imposing certain restrictions to removal of the app from the platform."[16]

Thus, at least since 2012, Facebook has claimed that it was investigating, evaluating, and taking action against app developers that were violating its policies. Of course none of this was effective. Indeed, in the wake of the Cambridge Analytica scandal and the vast amounts of data being misused by this particular app, Facebook rechristened its enforcement efforts as the "ADI" and issued press releases seeking to reassure users that it was protecting their data. The first such press release, in March 2018, stated that the ADI involved a "review all of the apps that had large amounts of information."[17] Facebook touted the breadth of the effort, saying that:

> It has involved hundreds of people: attorneys, external investigators, data scientists, engineers, policy specialists, platform partners and other teams across the company. *Our review helps us to better understand patterns of abuse in order to root out bad actors among developers.*
>
> We initially identified apps for investigation based on how many users they had and how much data they could access. Now, we also identify apps based on signals associated with an app's potential to abuse our policies. *Where we have concerns, we conduct a more intensive examination. This includes a background investigation of the developer and a technical analysis of the app's activity on the platform.* Depending on the results, a range of actions could be taken from requiring developers to submit to in-depth questioning, to conducting inspections or banning an app from the platform.[18]

In September 2019, Facebook claimed that the ADI had investigated millions of apps, suspended tens of thousands, and that the ADI was "not yet complete" as Facebook continued to investigate and suspend apps.[19]

Facebook also launched a public-relations campaign led by CEO Mark Zuckerberg. Zuckerberg made public posts to users describing Facebook's ongoing efforts and

---

*the Judiciary Questions for the Record* at 121-22 ("Facebook's Response") (June 8, 2018), https://www.judiciary.senate.gov/imo/media/doc/Zuckerberg%20Responses%20to%20Judiciary%20Committee%20QFRs.pdf.

[16] *Id.* at 6.

[17] *An Update on Our App Developer Investigation*, *supra* note 1.

[18] *Id.* (emphasis added).

[19] *Id.*

acknowledging their continuation, noting that the Company took "important steps a few years ago in 2014 to prevent bad actors from accessing people's information . . . But there's more we need to do and I'll outline those steps here: First, we will investigate all apps that had access to large amounts of information before we changed our platform to dramatically reduce data access in 2014, and we will conduct a full audit of any app with suspicious activity."[20] In April 2018, Zuckerberg testified to Congress that "[w]e're now investigating every single app that had access to a large amount of people's information on Facebook in the past. And if we find someone that improperly used data, we're going to ban them from our Platform and tell everyone affected."[21] He admitted "that we didn't do enough" to protect users' data. "We didn't take a broad enough view of our responsibility," he said, "and that was a big mistake, and it was my mistake, and I'm sorry. I started Facebook, I run it, and I'm responsible for what happens here."[22]  Such public proclamations do not portray a confidential, lawyer-driven inquiry conducted for litigation purposes only.

## B.    Plaintiffs' Requests for the ADI Materials

In November 2019, Plaintiffs issued document requests for information related to the ADI, and, in particular, documents related to two phases of the ADI: Enhanced Examination and Enforcement. These phases, under which suspicious apps were "escalated" for special investigation or action, were disclosed in a declaration that Facebook submitted in the Massachusetts Attorney General's action against it. After meeting and conferring over this request for over four months, Facebook told Plaintiffs and the Court that the ADI was *categorically privileged* except for a limited set of documents related to RFIs that Facebook had sent to third-party app developers and to the apps' responses to those RFIs.  Plaintiffs then sought guidance from the Court in June and July 2020, asking to brief these issues.

The Court initiated the process that led to this briefing. The parties spent the next several

---

[20] Mark Zuckerberg ("Zuckerberg Post"), Facebook (Mar. 21, 2018),
  https://www.facebook.com/zuck/posts/10104712037900071
[21] *Facebook's Use and Protection of User Data: Hearing Before the H. Energy and Commerce Comm.* ("Zuckerberg Statement", 2018 WL 1757479 at 10 (Apr. 11, 2018).
[22] *Id.* at 9.

weeks negotiating a protocol to select apps for which Facebook could conduct a review, producing non-privileged documents and logging the rest. The parties selected six apps from three different categories: apps that were investigated but not suspended in the ADI; apps that were suspended for non-cooperation; and apps that were suspended for some reason other than non-cooperation.[23] The parties also agreed on a set of custodians for Facebook to review.[24]

Ultimately, in December 2020, Facebook produced six different privilege logs (one for each app) totaling over 6,000 entries.[25] Every single document identified in these logs is being withheld in its entirety. The entries included not just emails but excel files, agendas, chats, slides, images, tables, task trackers, diagrams, and reports.[26] And, despite Facebook's promise that Plaintiffs would receive a "cornucopia" of information about the six apps,[27] Facebook has produced only 65 pages of material reflecting Facebook's RFIs from these apps, and in some instances, the apps developers' RFI responses.

In reviewing Facebook's logs, Plaintiffs identified 400 entries that reflect no attorneys.[28] The attorney-free entries include a handful of emails conclusively stating that they reflect the sharing of legal advice, and also attachments such as agendas, images, tables, slides, diagrams, excel files, data files, graphics, task trackers, chat messages, and charts.[29] For instance, one of these entries indicates that it is an ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████[30]

---

[23] *See* Decl. of Martie Kutscher in Supp. of Facebook, Inc.'s Administrative Mot. to File Under Seal, ECF No. 514-1 at Ex. A(1)(B).

[24] *Id.*

[25] Joint Status Update at 4.

[26] *Id.*

[27] *See* Hr'g Tr. 30:6-8 (July 13, 2020) (Mr. Snyder: "And the plaintiffs are going to have a cornucopia of information about third-party apps. And I just respectfully suggest that they be a little patient.").

[28] Joint Status Update at 4.

[29] *Id.*

[30] *See* Plaintiffs' selections to Facebook Exemplar ADI-Related Privilege Logs ("Entry Log"), line 8 of 20 (FB-ADI-0000003177-3178). The electronic version of this log was provided to the

Another indicates that it is a "███████████████████████████"[31]Yet another indicates that is a ██████████████████████████[32]Notably, the attachments also include transmissions to and from third party ██████████ and a file that was created in September 2014, years before the ADI was started.[33]

Consistent with Discovery Order No. 12, Plaintiffs selected 20 of the 400 entries for an *in camera* review and notified Facebook of its selections on January 21, 2020. ECF No. 602 at 1.

## C.     Status of the Massachusetts Attorney General Action

Facebook's categorical claim of privilege over the ADI has already been considered and rejected by another court. In *Healey*, the Massachusetts Attorney General is investigating access and use of Facebook user data by third-party app developers and through that action seeks documents regarding the ADI.[34] The trial court in *Healey* rejected Facebook's work-product claim in its entirety and confined the attorney-client privilege to a small subset of documents (for which Facebook would produce a privilege log).[35] The *Healey* court specifically concluded that "Facebook's ADI is fairly described as 'business as usual.'"[36] The court continued, "[t]he record shows that Facebook, as part of its normal business operations, has been engaged in a continuous review of Platform apps for possible violations of its Policies since 2012, and that the ADI is just another iteration of that program . . The Court therefore concludes that Facebook's ADI is not being conducted 'in anticipation of litigation or for trial,' and would have been undertaken by the Company 'irrespective of the prospect of litigation.'"[37]

Facebook appealed this decision to the Massachusetts Supreme Court. The Court held

---

Court in connection with the parties' stipulation that the Court entered on the day of this filing, February 5, 2020. *See* ECF No. 610, ¶ 3.

[31] *See* Entry Log, line 9 of 20 (FB-ADI-0000004847-4850).

[32] *See* Entry Log, line 11 of 20 (FB-ADI-0000003217-3218).

[33] *See* Entry Log, line 14 of 20 (FB-ADI-0000002536-2537).

[34] *Healey* Order at 7-9.

[35] *Id.* at 16-18.

[36] *Id.* at 14.

[37] *Id.* at 14-15.

oral argument on December 4, 2020, and its decision is currently pending.[38] Notably, the Court inquired whether this Court had ruled on the ADI privilege issues. Facebook's counsel incorrectly suggested that "they may well be waiting for this Court."[39] The parties here are not and have never been waiting for any other court to rule on these issues.[40]

## III.    ARGUMENT

### A.    The ADI Materials Are Not Protected by the Work Product Doctrine

#### 1.    Applicable Standard

Federal law provides the governing law on the scope and extent of the attorney work-product doctrine in federal court. *Connolly Data Sys., Inc. v. Victor Techs., Inc.,* 114 F.R.D. 89, 95 (S.D. Cal. 1987*); F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 381 (S.D. Cal. 2000); *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d Cir. 1988) ("the work-product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3) . . ."). Under federal law, Federal Rule of Civil Procedure ("FRCP") 26(b)(3)(A) provides that, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial . . ." Fed. R. Civ. P. 26(b)(3)(A). Further, "[t]he party seeking to invoke the work-product doctrine bears the burden of establishing that any documents claimed as work product were prepared in anticipation of litigation." *Newport Pac. Inc. v. Cty. of San Diego*, 200 F.R.D. 628, 632 (S.D. Cal. 2001). As set forth below, Facebook has failed to meet its burden here.

#### 2.    The ADI Materials Were Prepared to Assure the Public that Facebook Cared About User Privacy

Facebook and its representatives have repeatedly and publicly stated that the ADI was conducted to protect user privacy *as promised to users*.  For example, Facebook announced the

---

[38] Oral Argument, *Attorney General v. Facebook, Inc.*, No. SJC-12946 (Dec. 4, 2019), https://boston.suffolk.edu/sjc/pop.php?csnum=SJC_12946.

[39] *Id.* at 16:50.

[40] In addition to the Massachusetts Attorney General action, the District of Columbia Attorney General has an action against Facebook and has also sought to compel production of materials associated with the ADI. *See District of Columbia v. Facebook, Inc.*, No. 2018-CA-008715-B (D.C. Super. Ct. 2018).

ADI to the public, in a press release which stated in part, "[w]e have a responsibility to everyone who uses Facebook to make sure their privacy is protected.  ***That's why*** we're making changes to prevent abuse."[41]  A subsequent public press release stated that reviewing apps as part of the ADI "helps us to better understand patterns of abuse ***in order to root out bad actors among developers.***"[42]  That press release continued, "our goal is to bring problems to light so we can address them quickly, stay ahead of bad actors and make sure that people can continue to enjoy engaging in social experiences on Facebook while knowing their data will remain safe."[43] Indeed, on April 10, 2018, Mark Zuckerberg, Facebook's CEO, testified to the U.S. House of Representatives that "to make sure no other app developers are out there misusing data, we're now investigating every single app that had access to a large amount of people's information on Facebook in the past."[44]  By these repeated public statements Facebook made very clear that the purpose of the ADI was to root out misbehaving apps and protect user information, not litigation. As such, the ADI Materials are not protected work product.

### 3. Even if Facebook Had Conducted the ADI Partially in Anticipation of Litigation, the ADI Materials Would Still Not Be Protected

Even if the ADI was initiated in part due to litigation—and there is no evidence in the public record that it was—there can be no doubt that any litigation purpose was, at most, in addition to the stated purpose of protecting user data.  Under the law of the Ninth Circuit, "where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *Richey*, 632 F.3d at 567–68(citation omitted).  "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id*. at 568 (citation omitted). The question, then, is whether Facebook can establish that the ADI Materials would

---

[41] *Cracking Down on Platform Abuse*, Facebook (Mar. 21, 2018),
  https://about.fb.com/news/2018/03/cracking-down-on-platform-abuse/ (emphasis added).
[42] *An Update on Our App Developer Investigation*, *supra* note 1 (emphasis added).
[43] *Id.*
[44] Zuckerberg Statement, 2018 WL 1757479 at 10.

not have been created in substantially similar form absent the prospect of litigation. It cannot.

The record shows that Facebook had been claiming to enforce its policies for years before the ADI began, albeit weakly and ineffectively, and these public relations campaigns were just the precursor to the widely-touted ADI. As established above, on April 11, 2018, Zuckerberg testified before the U.S. House of Representatives, stating that "[w]e've had a review process for apps for years.  We've reviewed tens of thousands of apps a year and taken action against a number of them."[45]  Facebook told the Senate Judiciary Committee that in 2017 alone, the year before the Cambridge Analytica scandal came to light, that it had taken enforcement action "against about 370,000 apps, ranging from imposing certain restrictions to removal of the app from the platform."[46]

This evidence makes clear that Facebook was claiming to investigate apps for potential violations of its privacy policies for public relations purposes long before such efforts were christened the "ADI."  Facebook cannot establish that the ADI Materials would not have been created in substantially similar form absent the prospect of litigation.  *See Richey*, 632 F.3d at 568 (appraisal report held not to be work product because there was no "evidence in the record that Richey would have prepared the appraisal work file differently in the absence of prospective litigation"); *Anderson v. Marsh*, 312 F.R.D. 584, 593 (E.D. Cal. 2015) (police department investigative report of a shooting incident held not to be work product because "these documents would have been created in substantially similar form regardless of the prospect of litigation"); *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915, 2020 WL 2731238, at *4 (E.D. Va. May 26, 2020), *aff'd*, 2020 WL 3470261 (E.D. Va. June 25, 2020) ("[T]he fact that the investigation was done at the direction of outside counsel and the results were initially

---

[45] Zuckerberg Statement, 2018 WL 1757479 at 43; *see also* Facebook's Answer to Pls.' First Am. Consolidated Compl. ¶ 564, ECF No. 373 ("Facebook admits that it implemented a comprehensive privacy program following its 2012 Consent Decree with the FTC.").
[46] Facebook's Response, *supra* note 15 at 6.

provided to outside counsel, does not satisfy the 'but for' formulation.").[47] The ADI Materials are thus not protected work product.

### 4. Plaintiffs Have a Substantial Need for the ADI Materials and Cannot Obtain Their Substantial Equivalent by Other Means.

Even if the ADI Materials were protected work product, Plaintiffs have sufficient need of them to overcome such protection for any fact work product involved. A party may obtain discovery of fact work product materials if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The fourth category of misconduct recognized by Judge Chhabria in his order on the motion to dismiss was Facebook's failure to properly enforce its policy prohibiting third party apps from using information about Facebook users for any purpose other than enhancing the interaction between the apps and the user. PTO No. 20 at 9-10, ECF No. 298. Such data misuse by third parties was precisely the focus of the ADI.[48] Thus, Plaintiffs have substantial need for the ADI Materials and cannot obtain them elsewhere. *Thompson v. C & H Sugar Co.*, No. 12-CV-00391 NC, 2014 WL 595911, at *4 (N.D. Cal. Feb. 14, 2014) (finding plaintiffs had demonstrated a substantial need for investigation documents where the investigation were relevant to the litigation and plaintiffs could not obtain the fact underlying the investigation from other sources); *Waymo LLC v. Uber Techs., Inc.*, No. 17CV00939WHAJSC, 2017 WL 2485382, at *13 (N.D. Cal. June 8, 2017) (M.J. Corley) (finding in dicta that plaintiff had "met its burden of showing a substantial need" for documents related to investigation by Stroz Friedberg hired by defendant).

Plaintiffs also cannot obtain these materials by other means without undue hardship. According to Facebook, the ADI "involved hundreds of people: attorneys, external investigators, data scientists, engineers, policy specialists, platform partners and other teams across the company" and that the "investigation has addressed millions of apps. Of those, tens of thousands

---

[47] Facebook has sought to distinguish the ADI from its earlier investigative and enforcement efforts by asserting that the ADI was "retrospective," but all investigations and enforcement actions are retrospective by nature.

[48] *Cracking Down on Platform Abuse*, *supra* note 41.

have been suspended . . ."[49] Conducting such an investigation without Facebook's unique insider knowledge would essentially be impossible and is clearly constitutes undue hardship. *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 618 (N.D. Cal. 2011) (M.J. Corley) (finding that plaintiffs had a right to the survey information performed by defendant where plaintiffs would incur significant cost and time to compile the information themselves and the surveys presented the only present source of the information.). Even if Plaintiffs could duplicate Facebook's investigation and issue thousands of third-party subpoenas, many of the app developers are now defunct. Accordingly, Plaintiffs either cannot obtain the ADI Materials by other means at all or cannot do so without undue hardship. Any fact work product in the ADI Materials is therefore discoverable.

## B.     The ADI Materials Are Not Protected by the Attorney-Client Privilege

### 1.     Applicable Standard

The attorney-client privilege protects "confidential communications between attorneys and clients," if they "are made for the purpose of giving legal advice." *Richey*, 632 F.3d at 566 (citation omitted). When (1) legal advice is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived. *See id.*

The federal courts apply the privilege strictly: "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). As a corollary, "the party asserting" the attorney-client privilege "bears the burden of proving that it applies." *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019) (citation omitted).  Facebook has failed to meet this burden here.

---

[49] *An Update on Our App Developer Investigation*, *supra* note 1.

### 2.     The Underlying Facts and Information Part of the ADI Are Not Privileged

It is axiomatic that "the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see also Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648, 663 (N.D. Cal. 1993) ("[T]he privilege . . . blocks access only to communications, not to underlying information, data, or documents."). A party invoking the privilege can only "prevent access to confidential communications, not to underlying evidence or facts, even if privileged communications alluded to such evidence or facts." *Sky Valley*, 150 F.R.D. at 663–64. Indeed, Gibson Dunn has authored articles about the attorney-client privilege in which it acknowledges that the privilege "protects the communication but not the underlying information."[50] As such, Plaintiffs are entitled to all of the underlying facts and information regarding the ADI, including which third-party app developers violated which Facebook policies over what period of time, and the information that these third parties obtained without user consent.

Nevertheless, Facebook has sought to cloak the entirety of the ADI under a claim of privilege excepting only a smattering of documents between Facebook and third parties related to RFIs sent by Facebook. This attempt to limit production to only communications with third parties is untenable. As a result of the ADI, Facebook has banned aps from its platform for "reasons including inappropriately sharing data obtained from us, making data publicly available without protecting people's identity or something else that was in clear violation of our policies."[51] These reasons represent the underlying facts and information that are not protected by the privilege. Documents concerning them should be produced.

Furthermore, Facebook's claims that Plaintiffs are in fact obtaining this discovery is belied by the record. For these six apps alone, Facebook produced just 65 pages of documents

---

[50] F. Joseph Warren, Daniel P. Chung & A. Syarief, *Privilege – United States* at 2, Gibson, Dunn & Crutcher (Nov. 2018), https://www.gibsondunn.com/wp-content/uploads/documents/publications/Warin-Chung-Know-how-US-Privilege-GIR-November-2016.pdf.

[51] *An Update on Our App Developer Investigation*, *supra* note 1.

consisting of RFIs sent by Facebook and to four of the six apps, and their responses to the RFIs. No information in these documents reflect what policies were violated, what specific data was obtained, or any of the reasons behind the action taken or not taken against these apps. On the other hand, Facebook seeks to withhold more than 6,000 documents for *just these six apps alone*. Thus, Facebook is attempting to protect the clear and overwhelming majority of these documents pursuant to the attorney-client privilege and Plaintiffs have no other source for that information.

**3.    Because the Attorney Client Privilege Does Not Protect Communications Made Primarily for Business Purposes, Facebook Cannot Claim Privilege Over All the ADI Materials.**

"[T]he attorney-client privilege does not protect business communications and advice." *SanDisk Corp. v. Round Rock Research LLC*, No. 11-CV-05243-RS (JSC), 2014 WL 691565, at *3 (N.D. Cal. Feb. 21, 2014). "When a communication may relate to both legal and business advice, the proponent of the privilege must make a clear showing that the primary purpose of the communication was securing legal advice." *Dolby Labs.*, 402 F. Supp. 3d at 873 (citation omitted); *see also SanDisk*, 2014 WL 691565, at *3 (when communications "serve both legal and business purposes, there is general agreement that the privilege applies where the *primary or predominant purpose* of the attorney-client consultation is to seek legal advice or assistance") (citation omitted).

As set forth above, since at least 2012, Facebook has engaged in an effort—albeit unsuccessfully—to monitor third-party apps and enforce its policies against them. This is a textbook example of a business purpose. As a further effort in the same vein, the ADI has as one of its goals "the business purpose of addressing issues of continuing concern to management." *Marceau v. IBEW*, 246 F.R.D. 610, 613 (D. Ariz. 2007).

Facebook has also failed to make the required clear showing that every ADI document has as its "primary or predominant purpose" the provision or seeking of legal advice or assistance. As many courts have recognized, determining "[t]he predominant purpose of a particular document" generally requires "document-by-document analysis to decide what information, document, or line the attorney client privilege applies to." *Fourth Age Ltd. v.*

*Warner Bros. Dig. Distrib., Inc.*, No. CV 12-09912 AB (SHX), 2015 WL 12720324, at *7 (C.D. Cal. Aug. 6, 2015) (citing *In re Cty. of Erie*, 473 F.3d 413, 420–21 (2d Cir. 2007)). For that reason, a "claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be strictly confined within the narrowest possible limits." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citation omitted); *see also LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 600 (D. Nev. 2012) ("When determining whether a document seeks legal advice, courts have examined the *nature*, *content*, and *context* in which the document was prepared.") (citing *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003)).

Facebook's blanket claim of privilege is justified by none of the reasons Facebook has advanced. It is not enough that the ADI involved the violation of Facebook's policies, because the policies are not themselves privileged. *See, e.g.*, *Stevens v. Corelogic, Inc.*, No. 14-cv-1158-BAS(JLB), 2016 WL 397936, at *5 (S.D. Cal. Feb. 2, 2016) (holding that corporation's legal compliance policies were not privileged). Nor is it enough that attorneys were involved in the ADI. *See, e.g.*, *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006) ("The mere fact that a document was sent to an attorney does not make it a privileged communication."), *as clarified on reconsideration*, No. C-03-3709 SI (EMC), 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006); *Shopify Inc. v. Express Mobile, Inc.*, No. 20-MC-80091-JSC, 2020 WL 4732334, at *3 (N.D. Cal. Aug. 14, 2020) (M.J. Corley) ("[T]he inclusion of an attorney on the communication does not itself bring a document within the privilege's ambit.").

Furthermore, the privilege does not apply if the legal advice is incidental. *See Neuder v Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000). Here, Facebook has repeatedly claimed that primary purpose of the ADI was to assess its prior risk and bring litigation against third party apps violating the Company's policies. But of the millions of apps and app developers it has reviewed and the tens of thousands it has suspended, Facebook has filed just two lawsuits

against three companies.[52] The statistics simply do not support Facebook's claim that the entire investigation was solely for a legal purpose. Instead, the primary purpose of the ADI is exactly what Facebook has publicly stated: to root out misuse of user data and enforce its data use policies. That purpose is a business one.

Especially dubious is Facebook's blanket claim of privilege over even those ADI communications or documents exchanged solely among non-attorneys. For example, a technical discussion among software engineers, even if prompted by a request from an attorney, is not itself privileged. *See Dolby Labs.*, 402 F. Supp. 3d at 867 (discussing *Datel Holdings Ltd. v. Microsoft Corp.*, No. 09-cv-05535, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011)). Similarly, if there is no evidence that a document is received or reviewed by counsel, the document is not privileged—again, even if the document was created at counsel's request. *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 4:11–cv–05341 YGR (JSC), 2013 WL 5594474, at *4 (N.D. Cal. Oct. 10, 2013); *see also Shopify Inc.*, 2020 WL 4732334, at *3 (declining to find documents were entitled to attorney-client privilege where they were prepared for simultaneous review by legal and non-legal attorney). To claim privilege over communications between non-attorneys, Facebook must clearly show that in them "the employees discuss or transmit legal advice given by counsel," or "an employee discusses her intent to seek legal advice about a particular issue." *Dolby Labs.*, 402 F. Supp. 3d at 866 (citation omitted). "A vague declaration that states only that the document reflects an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Id.* (citation omitted). The entries here fall in that category, as Facebook's descriptions of those that Plaintiffs selected for *in camera* review simply reflect that legal information was conveyed, shared, or relayed, without any further specificity, including

---

[52] *An Update on Our App Developer Investigation*, *supra* note 1 ("We've also taken legal action when necessary. In May, we filed a lawsuit in California against Rankwave, a South Korean data analytics company that failed to cooperate with our investigation. We've also taken legal action against developers in other contexts. For example, we filed an action against LionMobi and JediMobi, two companies that used their apps to infect users' phones with malware in a profit-generating scheme.").

with respect to the attachments that were selected for review.[53]

### 4.  Even if Facebook's Claim of Privilege is Accepted, Should Facebook Rely on the ADI as a Defense, the Privilege Is Waived

Finally, to the extent that the attorney-client privilege is found to apply to the ADI, any effort by Facebook to rely on the ADI as a defense in this case in the future would waive the privilege. "The privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted). Thus, when a party—through an affirmative act, such as a defense—puts privileged information at issue, such that "fairness requires disclosure of the protected communication" to the other party, the privilege is implicitly waived. *Id.*; *see also, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292–93 (2d Cir. 1991).

In its public statements, Facebook has often pointed to the ADI as evidence of how seriously it takes its users' privacy.[54] Should Facebook try to use the ADI as a legal defense—for example, to support its affirmative defense that it exercised reasonable efforts, Answer to Pls.' First Am. Consolidated Compl. at 128, ECF No. 373—Plaintiffs must in fairness be given an opportunity to probe what the ADI has done or failed to do. Facebook "cannot invoke the attorney-client privilege to deny [Plaintiffs] access to the very information that [they] must refute" to defeat a defense to liability. *Chevron*, 974 F.2d at 1163.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, in addition to any guidance the Court may provide, the Court grant Plaintiffs' Motion to Compel, and order that (1) the 20 documents selected for *in camera* review be produced in their entirety, (2) Facebook is not entitled to a categorical claim of privilege over the entirety of the ADI, and (3) Facebook produce all of the underlying facts and information regarding the ADI, including which third party apps violated which Facebook policies over what period of time and what Facebook user information they obtained and misused.

---

[53] ECF No. 602 at 1.
[54] *An Update on Our App Developer Investigation*, supra note 1.

Dated: February 5, 2021

Respectfully submitted,

KELLER ROHRBACK L.L.P.

BLEICHMAR FONTI & AULD LLP

By:  */s/ Derek W. Loeser*
      Derek W. Loeser

By:  */s/ Lesley E. Weaver*
      Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele A. Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this day of February, 2021, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

**CERTIFICATE OF SERVICE**

I, Sarah Skaggs, hereby certify that on February 5, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs