GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DEFENDANT FACEBOOK, INC.'S OPENING BRIEF IN SUPPORT OF ITS CLAIM OF CONFIDENTIALITY**<br><br>Judge: Hons. Vince Chhabria and Jacqueline Scott Corley<br>Courtroom 4, 17th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.     Facebook's Confidential Documents in the Six4Three Litigation are Wrongfully Leaked. ................................................................................................ 2

    II.    Some of the Leaked Documents are also Produced in this Litigation as Confidential. ................................................................................................................ 4

ARGUMENT ......................................................................................................................... 5

    I.     There is "Good Cause" to Maintain Confidentiality Over Facebook's Confidential Materials. ............................................................................................ 7

    II.    The Balance of Interests Favors Maintaining Confidentiality. ..................................... 9

          A.     Removing the Confidentiality Designations Would Prejudice Facebook. ........................................................................................................ 10

          B.     Plaintiffs Will Not be Harmed if the Documents Remain Confidential. ........ 12

          C.     There is no Countervailing Public Interest in Lifting Confidentiality. ........... 13

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIS GmbH Aachen Innovative Solutions v. Thoratec LLC*,
  2021 WL 292173 (N.D. Cal. Jan. 28, 2021) .................................................................................12

*Asetek Danmark A/S v. CMI USA, Inc.*,
  2015 WL 4511036 (N.D. Cal. July 23, 2015) .................................................................................6

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*,
  2018 WL 3930141 (N.D. Cal. Aug. 16, 2018) ...................................................................5, 12, 15

*Carrick v. Santa Cruz Cnty.*,
  2012 WL 6000308 (N.D. Cal. Nov. 30, 2012) ..............................................................................11

*City of Almaty v. Ablyazov*,
  2018 WL 1229730 (S.D.N.Y. Mar. 5, 2018) ....................................................................7, 8, 9, 10

*Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  2015 WL 12466532 (S.D. Cal. July 16, 2015) ..................................................................13, 14, 15

*Doherty v. State Farm Gen. Ins. Co.*,
  2020 WL 2510642 (C.D. Cal. Mar. 4, 2020) ................................................................................13

*Dukes v. Wal-Mart Stores, Inc.*,
  2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) .......................................................................7, 8, 9

*Eli Lilly & Co. v. Gottstein*,
  617 F.3d 186 (2d Cir. 2010) ............................................................................................................9

*In re Franklin Tr. Co.*,
  30 Pa. D. & C. 123 (Pa. Ct. Com. Pl. 1937) .................................................................................15

*Henkel v. Bradshaw*,
  483 F.2d 1386 (9th Cir. 1973) ......................................................................................................11

*In re Incretin-Based Therapies Products Liabilities Litig.*,
  2015 WL 11658712 (S.D. Cal. Nov. 18, 2015) ...............................................................................6

*Jang v. Bos. Sci. Corp.*,
  2006 WL 8430761 (C.D. Cal. July 13, 2006) ...............................................................................14

*Johnson v. City & Cnty. of San Francisco*,
  2012 WL 104635 (N.D. Cal. Jan. 12, 2012) ......................................................................8, 12, 13

*Juidice v. Vail*,
  430 U.S. 327 (1977) ......................................................................................................................11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) .......................................................................................... 5, 14

*In re Kaplan*,
    2016 WL 1321138 (Bankr. C.D. Cal. Apr. 1, 2016) .............................................................. 9

*Lesar v. Dep't of Justice*,
    636 F.2d 472 (D.C. Cir. 1980) .............................................................................................. 8

*M.H. v. City of San Bernardino*,
    2020 WL 7247341 (C.D. Cal. Nov. 10, 2020) ................................................................... 12

*Osen LLC v. Dep't of State*,
    360 F. Supp. 3d 258 (S.D.N.Y. 2019) ............................................................................... 8, 9

*Phillips v. Gen. Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002) .......................................................................................10, 14

*Pickett v. Sheridan Health Care Ctr.*,
    664 F.3d 632 (7th Cir. 2011) ............................................................................................... 10

*Pullman v. Alpha Media Pub., Inc.*,
    624 F. App'x 774 (2d Cir. 2015) ........................................................................................... 7

*Rosenthal v. Carr*,
    614 F.2d 1219 (9th Cir. 1980) ............................................................................................. 11

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ....................................................................................................5, 9, 14

*Smith v. Armour Pharm. Co.*,
    838 F. Supp. 1573 (S.D. Fla. 1993) ...................................................................................... 7

*Sprint Commc'ns, Inc. v. Jacob*,
    571 U.S. 69 (2013) .............................................................................................................. 11

*Strojnik v. Azul Hospitality Grp.*,
    2019 WL 6467494 (E.D. Cal. Dec. 2, 2019) ....................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 11736636 (N.D. Cal. May 5, 2011) .................................................................... 14

*In re Zyprexa Injunction*,
    474 F. Supp. 2d 385 (E.D.N.Y. 2007) ................................................................................. 15

# INTRODUCTION

Plaintiffs seek the Court's blessing to file 46 confidential Facebook documents on the public docket in this action. Facebook designated each of the documents "Confidential" or "Highly Confidential—Attorneys' Eyes Only" under the protective order entered by the Court in this case, which requires the materials to be filed under seal because they reflect Facebook's strategic plans, internal business analytics, and sensitive personnel information. According to Plaintiffs, however, Facebook may not use the protective order in this action to protect these confidential materials from disclosure because a company called Six4Three—a plaintiff in a separate litigation—leaked the documents in what the judge in that action described as an "unconscionable" violation of the San Mateo Superior Court's orders.

The Court should reject Plaintiffs' position. First, there is good cause to keep the documents confidential. Plaintiffs argue that once a document is leaked in violation of a court's orders, the horse is out of the barn, and the document can never again be considered confidential, no matter the circumstances. But how the horse got out of the barn matters. Courts have repeatedly recognized that a party's non-public and sensitive information is not stripped of its confidentiality because of someone else's bad act.

Second, the equities balance in favor of maintaining the documents' confidentiality. An order from this Court de-designating the challenged documents would compound Six4Three's misconduct and further harm Facebook by allowing Plaintiffs to publish a curated, one-sided set of confidential materials on the public docket in this case, based solely on another party's contemptuous violation of multiple San Mateo Superior Court orders. Unsealing the documents in this proceeding would also risk interfering with the San Mateo Superior Court's ongoing efforts to address, and Facebook's ability to obtain appropriate relief for, the underlying leak.

There is no countervailing interest favoring disclosure. Plaintiffs have the documents at issue and are subject to no restrictions on their ability to use those documents in this case. And there is no public interest in removing confidentiality designations from documents that have been filed only in connection with discovery motions or not at all. To the contrary, de-designating a cherry-picked set of documents would cause the public docket to reflect a misleading and one-sided narrative. More

fundamentally, allowing Plaintiffs to publish confidential documents to the public docket merely because another party leaked them in violation of a protective order threatens the integrity of the judicial system and of the protective orders upon which parties to litigation rely. As the Superior Court lamented, the "principles of confidentiality and stipulated protective orders go beyond this case," and implicate "our system of justice." Mehta Decl., Ex. 12 at 40:14–22 (hearing transcript). If courts and parties cannot "have confidence" in protective orders, "then we've all lost." *Id.* at 40:17–22.

This Court should reject Plaintiffs' blanket request for permission to file publicly materials that were leaked in violation of court orders, and hold that the documents at issue remain subject to the confidentiality and sealing provisions of this Court's protective order.

## BACKGROUND

**I.     Facebook's Confidential Documents in the Six4Three Litigation are Wrongfully Leaked.**

The 46 documents at issue were first produced in another action, *Six4Three, LLC v. Facebook, Inc.*, No. CIV533328 (Cal. Super. San Mateo Cnty.) ("Six4Three litigation"), in which an app developer alleges that Facebook wrongfully terminated access to API endpoints. Mehta Decl. ¶ 3. The San Mateo County Superior Court issued a protective order in that action in 2016 ("Six4Three Protective Order") prohibiting the Six4Three parties from disclosing or discussing "highly confidential" information to "any person" not specifically "entitled to receive such information" under the order. Mehta Decl., Ex. 1 ¶¶ 5, 6. In reliance upon the Six4Three Protective Order, Facebook produced over one million pages of confidential and highly confidential documents. Mehta Decl. ¶ 4. In the course of litigation, the Superior Court struck or sealed from the public docket all 46 documents at issue here. Mehta Decl., Ex. 6 at 13–14 (Nov. 1, 2018 Am. Order on Facebook's Motion to Seal).

In August 2018, this Court approved a similar protective order in this action. *See* Dkt. 122. The protective order prohibits filing on the public docket any document produced in discovery that is marked "Confidential" or "Highly Confidential—Attorneys' Eyes Only" without written permission from the producing party or a court order. *Id.* ¶ 12.3.

Three months later, in November 2018, Six4Three's principal committed what the presiding judge called an "unconscionable" act. Mehta Decl., Ex. 2 at 50:12–16 (hearing transcript). The Court found that Ted Kramer (the principal of Six4Three) and members of Six4Three's legal team

summarized and gave their "impressions and analysis of" Facebook's confidential information to various third parties, including journalists and government officials such as Damian Collins, a member of the United Kingdom Parliament. *See* Mehta Decl., Ex. 3 at 3–7 (Super. Ct.'s Mar. 15, 2019 Order). In November 2018, Mr. Kramer invited Mr. Collins to initiate a "mechanism" for Mr. Kramer to share Facebook's documents—even as he told Mr. Collins that the documents were "subject to confidentiality under a protective order entered in San Mateo Superior Court." *Id.* at 8–9. Mr. Kramer later traveled to London, where he received requests from Mr. Collins and a United Kingdom Parliament committee. *See* Mehta Decl., Ex. 4 (Ex. 1 to Super. Ct.'s Nov. 20, 2018 Order).

Facebook promptly informed the Superior Court of the document request. The Superior Court immediately ordered that the requested documents shall not be "transmitted, released, or submitted" to the committee, and that "[f]ailure to comply will be considered an act of contempt." Mehta Decl., Ex. 4 ¶ 1 (Super. Ct.'s Nov. 20, 2018 Order). In defiance of the Superior Court's orders, Mr. Kramer took his laptop to Parliament, where he copied thousands of pages of confidential Facebook documents to a thumb drive, which he delivered to Mr. Collins and the committee on November 21, 2018. Mehta Decl., Ex. 5 ¶¶ 16–18 (Nov. 26, 2018 Kramer Decl.); *see* Six4Three Protective Order ¶¶ 3, 5 ("Highly Confidential Information . . . shall not be disclosed to . . . officers or employees of a party . . . .").

The Superior Court found Mr. Kramer's act an "unconscionable" violation of the Six4Three Protective Order. Mehta Decl., Ex. 2 at 50:12–16; *see also* Mehta Decl., Ex. 3 at 10. The Superior Court also found the Six4Three attorneys' conduct was not permitted by the Rules of Professional Conduct. Mehta Decl., Ex. 3 at 7. The Superior Court ordered the destruction of any copies of Facebook's confidential data in the possession of Six4Three executives and a legal team member; granted Facebook discovery into the conduct of Six4Three executives and its counsel; and ordered forensic imaging of relevant devices. *See* Mehta Decl., Ex. 2 at 50:12–20, 60:2–69:10; *id.*, Ex. 7 at 3–5 (Nov. 30, 2018 Order); *id.*, Ex. 8 at 2:25–4:19 (Jan. 17, 2019 Order Re: Destruction).

Despite Facebook's—and the Superior Court's—efforts to prevent further disclosure of confidential materials, by November 2019, nearly 7,000 pages of documents sourced from Six4Three had been dumped online. Mehta Decl. ¶ 4. Discovery into violations of the Superior Court's orders

by Six4Three and its legal team is ongoing.  Mehta Decl., Ex. 3 at 10; Mehta Decl., Ex. 9 at 1 (Minutes of Super. Ct.'s July 17, 2020 Case Management Conference).

## II.     Some of the Leaked Documents are also Produced in this Litigation as Confidential.

Since late 2019, Facebook has produced under the protective order in this case 46 documents marked as "Confidential" or "Highly Confidential—Attorneys' Eyes Only" that Plaintiffs have identified as among the documents leaked by Six4Three in violation of court orders.  These documents account for 261 pages buried among the nearly 7,000 pages leaked online.

The protective order in this case requires a party wishing to challenge an opposing party's confidentiality designation to provide written notice of its challenge to the opposing party, meet and confer regarding each challenge, and continue to treat designated documents confidentially until this Court orders otherwise.  Dkt. 122 ¶¶ 6.1, 6.2, 7.1, 12.3.  Last August, Plaintiffs sent Facebook a letter challenging the confidentiality designation of 45 of these documents, claiming that the documents were made "publicly available" in violation of the Six4Three Protective Order.  *See* Kutscher Decl., Ex. 1 at 1 (Pls.' Aug. 21, 2020 Letter).  To support this claim, Plaintiffs' letter cited to a document repository that is linked to an NBC News Article.  *Id.* at 1–7.  The NBC News article itself does not directly quote, describe, or link to any of these documents.  *See* Dkt. 531-1 ¶ 3.  The following week, Plaintiffs asked this Court to rule that any leaked Facebook documents "not be treated as confidential" in this action. Dkt. 517 at 3.  The Court declined to take up this issue at the following discovery conference and has issued no such order.

While the parties were meeting and conferring regarding Plaintiffs' letter, and before their meet-and-confer efforts had concluded, Plaintiffs intentionally "circumvent[ed]" the Court's Protective Order in this matter.  Dkt. 534 at 1; *see also* Kutscher Decl. at 6.  About a month after they sent their challenge letter, Plaintiffs filed a brief that attached various exhibits, including four confidential Facebook documents.  Dkt. 526.  One of these confidential documents—"Exhibit C"—is a document produced confidentially in the Six4Three litigation.  The document was produced in this case as FB-CA-MDL-00178902 and designated confidential, *see* Kutscher Decl. ¶ 6, but it is not one of the 45 documents that Plaintiffs challenged in their August 21 letter.  Rather than filing under seal the version of the document produced in this case or raising the confidential designation with Facebook—as the

Protective Order requires, *see* Dkt. 122 ¶¶ 6.1, 6.2, 12.3—Plaintiffs disregarded the Protective Order and filed, on the public docket, the leaked version of the exhibit that is marked "Highly Confidential," and bears a cover page indicating it was lodged under seal in the Six4Three action. Dkt. 526-3.

Facebook filed an emergency administrative motion to remove from the public docket and seal Exhibit C along with certain confidential information contained in Plaintiffs' brief. Dkt. 530. The Court locked the relevant docket entry, explaining that a "party cannot simply circumvent" the Protective Order's procedures for challenging confidentiality designations "by using a version of a document that was publicly available if the same document was produced with the confidential designation in this action," and ordered the parties to meet and confer regarding Facebook's claim of confidentiality. Dkt. 534 at 1. The parties have met and conferred, and have not reached agreement regarding the confidentiality of Exhibit C or the 45 documents challenged in Plaintiffs' letter. Dkt. 617 ¶ 5.

## ARGUMENT

Courts have "substantial latitude" to ensure that confidential documents receive the "appropriate . . . degree of protection." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). When a party challenges confidentiality designations under a stipulated protective order, the court will maintain the confidentiality designations for "good cause," considering whether disclosure of information will cause particularized harm and then balancing the public interests in disclosure with the private interests in confidentiality. *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 2018 WL 3930141, at *6 (N.D. Cal. Aug. 16, 2018). Good cause is also sufficient to "preserv[e] the secrecy of sealed discovery material attached to non-dispositive motions." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quotation marks omitted).

Here, Facebook designated Exhibit C and each of the 45 documents challenged in Plaintiffs' letter as either Confidential or Highly Confidential—Attorneys' Eyes Only. Facebook did so because these materials contain conversations among Facebook executives and employees about "business decisions, financial information, business goals, potential acquisitions, [and] business partnerships," as well as "confidential business communications with third parties" and "sensitive identifying information about those third parties." Mehta Decl., Ex. 10 ¶¶ 5, 6 (May 30, 2018 Laura Miller Decl.

in Six4Three litigation). Public access to such information may cause Facebook competitive harm and encourage competitors to poach critical employees. *Id.* The risk of this type of competitive harm is sufficient to justify Facebook's claim of confidentiality over the documents. *See Asetek Danmark A/S v. CMI USA, Inc.*, 2015 WL 4511036, at *2 (N.D. Cal. July 23, 2015) (finding compelling reasons to seal business information where "competitors would be able to take advantage of . . . information that could cause [ ] competitive harm"); *In re Incretin-Based Therapies Prods. Liabs. Litig.*, 2015 WL 11658712, at *2 (S.D. Cal. Nov. 18, 2015) ("[C]ourts have maintained documents under seal where the information contained therein could permit competitors to gain access to operational and personnel information . . . ." (internal quotations omitted)); *see also, e.g.*, Kutscher Decl. ¶ 8. Indeed, in the Six4Three action, the San Mateo Superior Court described these same documents as "confidential" on numerous occasions.[1] *See* Mehta Decl., Ex. 3 at 3, 4, 6, 9, 10, 11, 13 (Super. Ct. Mar. 15, 2019 Order).

Because Facebook marked these materials Confidential or Highly Confidential—Attorneys' Eyes Only, the protective order entered by the Court in this action requires Plaintiffs to file them under seal, if Plaintiffs attach them to a public filing—to be followed by an appropriate affidavit from Facebook in support of sealing. Plaintiffs, however, seek permission to evade this procedure with respect to 46 documents on the basis that the documents were wrongfully leaked in violation of court orders in another litigation. *See* Pls.' Aug. 21, 2020 Letter at 1. But, as courts recognize in a variety of contexts, documents are not stripped of their confidentiality simply because a third party *wrongfully* caused their publication.[2]

The equities also balance in favor of maintaining confidentiality here. Disclosing the documents would prejudice Facebook, risk interfering with the state court's ongoing proceedings regarding the violation of its orders, and undermine the force of protective orders on which parties rely

---

[1] The Superior Court explicitly held that many of the leaked documents, including documents at issue here, "contain confidential or competitively sensitive information" and that "disclosure of each record would harm Facebook's business." Mehta Decl., Ex. 6 at 12–13 (Nov. 1, 2018 Amended Order on Facebook's Motion to Seal).

[2] Plaintiffs agreed with this premise when they asserted the confidentiality of the named Plaintiffs' Facebook profile information, even though they allege in this case that Facebook disclosed their profile information. *See* Dkts. 494, 500. Plaintiffs seek to have it both ways: They continue to assert confidentiality over information they say was disclosed wrongfully while requesting the Court's permission to disclose Facebook's confidential information on the basis that a third party misused it.

regularly when they produce documents in litigation. In contrast, maintaining the documents' confidentiality would not harm either Plaintiffs or the public.

## I. There is "Good Cause" to Maintain Confidentiality Over Facebook's Confidential Materials.

Plaintiffs seek a categorical ruling that documents may not be designated confidential once they have been leaked in violation of a protective order. No such categorical rule exists. To the contrary, numerous cases make clear that wrongful disclosures do not vitiate a claim of confidentiality.

Courts frequently find there is good cause to keep confidential a document that is disclosed *wrongfully* by a third party. This is because the good-cause inquiry is not limited to *whether* the proverbial horse got out of the barn, but also considers *how* the horse got out of the barn. In *City of Almaty v. Ablyazov*, 2018 WL 1229730 (S.D.N.Y. Mar. 5, 2018), for example, a deposition transcript was leaked "in violation of the Confidentiality Order" governing the case, and "the entire Transcript had been posted on the internet and was discussed in a news article [that] contained a link to the Transcript." *Id.* at *1, *6. After recognizing that "disclosures on the internet are potentially permanent," the court found there remained "good cause" to keep the document confidential, denied a motion to lift the confidentiality designation, and sanctioned the leaking parties. *Id.* at *4, *6. The Court explained there was "no compelling need for the Transcript to be made public" in light of the blatant subversion of the court's protective order. *Id.* at *5, *7; *see also Pullman v. Alpha Media Publ'g, Inc.*, 624 F. App'x 774, 778–79 (2d Cir. 2015) (affirming decision to seal settlement conference transcript even though "a third party posted the . . . transcript on a website" and it was "already in the public domain").

Similarly, in *Dukes v. Wal-Mart Stores, Inc.*, this Court recognized that a "leaked confidential memorandum" whose contents were "describe[d]" in the New York Times was not stripped of attorney-client privilege because the disclosure was "unauthorized and involuntary" and the defendant had taken "extensive efforts to maintain the Memo's confidentiality." 2013 WL 1282892, at *1, *5 (N.D. Cal. Mar. 26, 2013) (Corley, J.). The Court indicated the same would be true even if a "stolen" "confidential memorandum" had been "subsequently published in newspapers across the country." *Id.* at *4 (quoting *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1577 (S.D. Fla. 1993)).

Likewise, the government can withhold "confidential information" under the Freedom of

Information Act ("FOIA"), even if the information "has found its way into the public domain" through "news leaks," when the documents were provided to the government "with the explicit understanding that the[ ] documents would remain confidential" and the source "continued to object to the disclosure of the[ ] records." *Lesar v. Dep't of Justice*, 636 F.2d 472, 488, 491 (D.C. Cir. 1980); *see Osen LLC v. Dep't of State*, 360 F. Supp. 3d 258, 264 (S.D.N.Y. 2019) (holding that the unauthorized publication of documents online in the WikiLeaks incident did not preclude the government from withholding them as confidential under FOIA).

Even where a disclosure was merely inadvertent, this Court has held that documents remained confidential, even though they had been "publicly filed" on the docket for all to see, where the party asserting confidentiality "took prompt remedial action to preserve the confidentiality of the documents." *See Johnson v. City & Cnty. of San Francisco*, 2012 WL 104635, at *4–*5 (N.D. Cal. Jan. 12, 2012) (Corley, J.) (documents remained confidential even though parties filed the documents after an inadvertent failure to designate them as confidential).

There is similarly good cause to maintain confidentiality here.  The "leaked confidential" documents at issue were disclosed in an "unauthorized and involuntary" way.  *Dukes*, 2013 WL 1282892, at *1, *5.  The documents were provided to both the plaintiff in the Six4Three litigation and the Plaintiffs in this litigation with the explicit understanding that the documents would remain confidential, as evidenced by a confidentiality stamp on each page of the documents.  *See Lesar*, 636 F.2d at 488.  The 46 documents were wrongfully leaked in violation of multiple San Mateo Superior Court orders, and there is no compelling need for them to appear on the public docket.  *See City of Almaty*, 2018 WL 1229730, at *5, *7.

Facebook has, at all times, "continued to object to the disclosure of" the documents." *Lesar*, 636 F.2d at 491.  Once Facebook became aware that Six4Three intended to disclose the materials, Facebook immediately moved the Superior Court for an order precluding the Six4Three plaintiffs from doing so (which Six4Three ignored).  Facebook is pursuing sanctions in the Six4Three litigation.  *See City of Almaty*, 2018 WL 1229730, at *4, *7.  And, Facebook even filed an emergency administrative motion to keep Exhibit C under seal in this litigation after Plaintiffs circumvented the protective order in this case to file it publicly.  *See Johnson*, 2012 WL 104635, at *5 (crediting defendants' "prompt

remedial action to preserve" confidentiality). Despite Facebook's best efforts to "safeguard[ ]" the documents, it was ultimately powerless to prevent flagrant and intentional violation of court orders expressly prohibiting their disclosure. *Dukes*, 2013 WL 1282892, at *5; *see also Osen*, 360 F. Supp. 3d at 264.

If Plaintiffs had themselves leaked the documents at issue in violation of multiple court orders, there would be no question that they could not rely on their own misconduct to demand that Facebook remove its confidentiality designations. *City of Almaty*, 2018 WL 1229730, at *6; *cf. In re Kaplan*, 2016 WL 1321138, at *15 (Bankr. C.D. Cal. Apr. 1, 2016).

The result should be no different here. If it were, parties litigating separate actions against a common foe could join forces to eradicate a party's claim of confidentiality over its sensitive materials. One party could willfully violate the protective order in its case—as Six4Three did here. Meanwhile, a party in another action could use that violation to attack the documents' confidentiality and force the producing party to remove its confidentiality designations. If successful, the party in the second action could publicly republish the materials with confidentiality stamps removed, and the leaking party could point to those public documents as evidence that its own actions were harmless. All the while, both plaintiffs could rely on the misconduct to present a curated, one-sided view of events to the public.[3] The "threat" of sanctions "may deter this action in some cases," but not always, and allowing "third parties" to commit these sorts of end-runs around protective orders "would eviscerate courts' ability to manage discovery." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010). Discovery carries "a significant potential for abuse," and there is a "substantial interest in preventing" such abuse. *Seattle Times*, 467 U.S. at 34–35.

The Court should hold that the 46 leaked documents at issue remain subject to the confidentiality and sealing provisions of this Court's protective order for this reason alone.

## II.   The Balance of Interests Favors Maintaining Confidentiality.

The equities also balance in favor of maintaining confidentiality over the leaked materials because de-designating Facebook's confidential documents would prejudice Facebook, while

---

[3] This is not a hypothetical concern. Counsel for Plaintiffs regularly attend hearings in the Six4Three litigation, and Facebook understands that Plaintiffs may have entered into common interest or joint prosecution agreements with attorneys who are litigating other cases against Facebook.

maintaining their confidentiality would not harm Plaintiffs or the public.

### A.   Removing the Confidentiality Designations Would Prejudice Facebook.

If the Court ordered Facebook to remove its confidentiality designations from the materials produced in this action that were leaked in violation of court orders by Six4Three, Facebook would be severely prejudiced in at least three ways.

***An order allowing Plaintiffs to file Facebook's confidential materials publicly would compound Six4Three's wrongful dissemination.***  Even though Six4Three leaked the materials at issue in violation of court orders, there is significant value in slowing or reducing the dissemination of Facebook's confidential information.  The documents Plaintiffs challenge contain sensitive business information that could cause Facebook competitive harm if disclosed widely.  *See supra*, at 5.  Although the documents have been leaked in violation of court orders, the pages Plaintiffs challenge are not discussed in the news article reporting on the document leak cited by Plaintiffs and, as far as Facebook is aware, they are not specifically identified or curated publicly and would be difficult to specifically locate without having seen Facebook's productions.  "[T]he internet 'contains an unlimited supply of information with varying degrees of reliability, permanence, and accessibility.'"  *Strojnik v. Azul Hospitality Grp.*, 2019 WL 6467494, at *2 (E.D. Cal. Dec. 2, 2019) (quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011)).  If this Court de-designated the materials, the documents would become official judicial records and would be readily and permanently accessible to anyone with a PACER account, rather than appearing as unauthenticated documents online.

The Court should also exercise caution here because the proverbial horse could still go back in the barn.  For a number of reasons, the websites currently hosting leaked confidential information may not be hosting that same information tomorrow, next month, or next year—whether because of a Superior Court order in the Six4Three litigation, storage capacity limits, or even a change of heart.  *See City of Almaty*, 2018 WL 1229730, at *6 (internet postings of confidential materials are only "potentially" permanent).  "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders," so a "court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of [FRCP 26]."  *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002) (internal quotation marks omitted).  Just because

confidential materials were leaked in violation of court orders does not mean Plaintiffs should be allowed to exacerbate the disclosure.

***Removing the confidentiality designations would risk disrupting ongoing state court proceedings***.  Proceedings are also ongoing in the San Mateo Superior Court regarding the leaked documents.  In an exercise of its power to "vindicate[ ] the regular operation of its judicial system," *Juidice v. Vail*, 430 U.S. 327, 335 (1977), the Superior Court ordered Six4Three not to disclose Facebook's documents to Parliament (as threatened) and that a "[f]ailure to comply w[ould] be considered an act of contempt." Mehta Decl., Ex. 4 ¶ 1 (Super. Ct.'s Nov. 20, 2018 Order).  When that order was violated, the Superior Court authorized Facebook to take depositions and other discovery into the details of the leak.  *See* Mehta Decl., Ex. 3 at 10.  After discovery concludes, the Superior Court will consider anticipated motions for terminating sanctions, monetary sanctions, and any other appropriate remedies necessary to address the leak and violation of court orders.

This Court should abstain from entering an order that could interfere with the Superior Court's ongoing efforts to enforce and vindicate the protective order it entered.  The "far-from-novel" abstention doctrine is built around the idea that "federal courts refrain[ ] from interfering with pending [state court] civil proceedings involving certain orders," *Sprint Commc'ns, Inc. v. Jacob*, 571 U.S. 69, 77–78 (2013), including "case[s] in which the State's contempt process is involved," because contempt is a "power [that] lies at the core of the administration of a State's judicial system," *Juidice*, 430 U.S. at 335–36; *see Rosenthal v. Carr*, 614 F.2d 1219, 1220 (9th Cir. 1980) (noting that abstention doctrine "precludes federal court interference with pending state attorney disciplinary proceedings").

If this Court lifts confidentiality designations from the 46 documents at issue here—each of which was part of the Six4Three leak—before the Superior Court determines the best way to address the leak, it could disturb the state court's full menu of potential remedies in addressing the source of this problem.  In contrast, maintaining the documents' confidentiality in this matter adheres to the "notion of comity, that is, a proper respect for state functions." *Juidice*, 430 U.S. at 334; *see Henkel v. Bradshaw*, 483 F.2d 1386, 1388 (9th Cir. 1973) (allowing state court to decide the issue of right to counsel in ongoing state-court contempt proceedings as a matter of "comity and equity"); *Carrick v. Santa Cruz Cnty.*, 2012 WL 6000308, at *8 (N.D. Cal. Nov. 30, 2012) (declining to interfere with

"ongoing . . . [California state court] contempt proceedings").

***Facebook will be prejudiced in seeking sanctions in state court if the documents are de-designated in this Court.*** Facebook is also entitled to and wishes to pursue sanctions against Six4Three in connection with the leak. The Six4Three Plaintiffs have taken the position, however, that they should evade liability for their misconduct because—in their view—Facebook has not taken sufficient steps to protect the documents and their leak was harmless. Mehta Decl., Ex. 11 at 11–12 (Short Neutral Statement of the Case in Six4Three Litigation). But Facebook has at all times taken sufficient steps to protect its confidential materials, and it continues to do so—including by entering appropriate protective orders; seeking immediate judicial intervention when Six4Three threatened to disclose the materials; informing the Superior Court as soon as Facebook discovered the impending breach of the protective order; filing an emergency motion in this Court when Plaintiffs violated the protective order in this case and publicly filed Exhibit C on this Court's docket; and challenging Plaintiffs' ongoing requests to file the materials publicly. This Court should affirm Facebook's extraordinary and ongoing efforts to keep its materials confidential and be cautious not to issue an order rubber-stamping the acts of a wrongdoer. *See Johnson*, 2012 WL 104635, at *5 (crediting defendants' "prompt remedial action to preserve" confidentiality).

## B. Plaintiffs Will Not be Harmed if the Documents Remain Confidential.

While Facebook will be prejudiced if the Court orders it to de-designate the leaked documents, Plaintiffs would not be harmed if these documents remain confidential. Indeed, it is unclear what legitimate benefit—if any—Plaintiffs believe will result from de-designation of the documents.

Plaintiffs have received the documents at issue through the ordinary course of discovery and may use them consistent with the protective order entered by this Court. "This is not a situation" where Plaintiffs are moving into a new "phase of the case without important evidence" in hand. *AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*, 2021 WL 292173, at *5 (N.D. Cal. Jan. 28, 2021) (granting motion to retain confidentiality). Lifting the confidentiality designation therefore is not necessary to "promote fairness or efficiency in the current action, as both parties already have access to the information." *M.H. v. City of San Bernardino*, 2020 WL 7247341, at *9 (C.D. Cal. Nov. 10, 2020) (denying motion challenging confidentiality designation of report); *see also Cal. Parents*, 2018 WL

3930141, at *8 (noting that "Plaintiffs already have the information and seek only to make it public," which favors maintaining confidentiality).

Indeed, it is unclear what Plaintiffs have to gain from de-designation or why they are requiring the parties and the Court to focus on this issue now—when Plaintiffs claim to be concerned about the pace of discovery and their position conflicts with their general position in this case (with respect to information they believe to be confidential). Because Plaintiffs have "not even attempted to identify a legitimate purpose for its request to de-designate these documents and make them accessible to the public at this time," in the middle of discovery, their "request for public disclosure of these documents is, at best, premature." *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015) (maintaining confidentiality of documents that would be used merely to "publicly discredit defendant in the media before the information . . . becomes material to the case").

Plaintiffs' prior decision to "circumvent" the protective order in this case further cuts against any potential interest Plaintiffs may have in removing the confidentiality designation. *See* Dkt. 534 at 1; *see also Doherty v. State Farm Gen. Ins. Co.*, 2020 WL 2510642, at *3–4 (C.D. Cal. Mar. 4, 2020) (ordering sanctions against a party who filed information designated as confidential on public docket, notwithstanding party's argument that a *Los Angeles Times* article and other internet sources containing the information meant the information "was already in the public domain").[4]

### C. There is no Countervailing Public Interest in Lifting Confidentiality.

Removing the confidentiality designations from the challenged documents would not further any public interest; it would be *contrary* to the public interest. As the Superior Court recognized, the

---

[4] Plaintiffs' previously proffered explanation that the parties' protective order does not cover information "in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order" did not excuse its unilateral attempt to circumvent the Protective Order before, and does not justify disclosure now. *See* Pls' Opp. to Facebook's Emergency Mot. at 4 (Dkt. 531) (quoting Dkt. 122 ¶ 3(a)). Plaintiffs cannot argue in good faith that this language eviscerates confidentially over materials that were leaked deliberately ***after*** the protective order in this action was entered. Indeed, in *Doherty* the protective order applied to confidential information "maintained in a non-public manner," but the court nevertheless held that information published in the news was protected by the protective order and could not be unilaterally filed on the public docket. 2020 WL 2510642, at *3, *4. Even if the Court were to find the protective order does not textually cover the unforeseeable events that occurred here, there would be good cause for the Court to invoke its "inherent authority" to "modify [the] protective order," *Johnson*, 2012 WL 104635, at *1, so that it protects information in the public domain resulting from "a violation of this Order *or another court's protective order*," Dkt. 122 ¶ 3(a) (emphasis added to reflect proposed new language).

"integrity" of the judicial system, and of discovery as the foundation for how adversarial litigation is structured and proceeds, depends on parties having trust that protective orders will be followed by parties and, absent that, preserved and enforced by courts. Mehta Decl., Ex. 12 at 39:6–26. A court's role in promoting this public trust does not require blinding itself to bad acts that occurred in other courtrooms, "compromis[ing] the integrity of our litigation system" and "our system of justice." *Id.* at 40:13–16. To the contrary, courts have an institutional interest in ensuring that parties do not skirt *other* courts' protective orders. *See Jang v. Bos. Sci. Corp.*, 2006 WL 8430761, at *3 (C.D. Cal. July 13, 2006) ("This court will not order production of documents that are protected from disclosure by the [protective] order of another district court."). Otherwise, "[h]ow can anyone have any confidence in a stipulated protective order?" Mehta Decl., Ex. 12 at 39:14–15; *see id.* at 40:17–22 ("If lawyers cannot rely upon the agreement by another lawyer to keep things confidential . . . then we've all lost."). Lifting the confidentiality designations of the 46 documents here simply because they were published as a direct result of the violation of the Six4Three Protective Order would undermine those interests.

Further, Plaintiffs submitted Exhibit C only in connection with a non-dispositive discovery motion, and they have not submitted the other 45 documents in connection with any filing. There is no presumption of public access to the 45 unfiled documents. *See Seattle Times*, 467 U.S. at 32–33 (there is no "right of access" to "discovered, but not yet [filed], information"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 11736636, at *2 (N.D. Cal. May 5, 2011) (noting lack of right to access "raw discovery documents produced in civil discovery that have not been filed in court"). And any potential need to provide public access to Exhibit C is at its nadir, because documents "attached only to non-dispositive motions . . . are often unrelated, or only tangentially related, to the underlying cause of action." *Kamakana*, 447 F.3d at 1179 (internal quotation marks omitted); *see Phillips*, 307 F.3d at 1213 ("[W]hen a party attaches a sealed discovery document to a nondispositive motion, the usual presumption of the public's right of access is rebutted.").

Moreover, the "only discernible interest the public has in this litigation is to have it resolved on the merits, and this interest would not be advanced by the premature release of selected documents" while "discovery is still very much in process." *Crossfit, Inc.*, 2015 WL 12466532, at *7 (denying motion to strike confidentiality designations as "premature"). The general "presumption" that the

"public is entitled to every person's evidence" is "no countervailing public interest" to Facebook's legitimate "interest in keeping the documents confidential"—particularly because "Plaintiffs already have the information and seek only to make it public." *Cal. Parents*, 2018 WL 3930141, at *8 (finding the "balance of interests . . . weighs in favor of" maintaining confidentiality).

Finally, releasing the documents would not provide the public better insight into the merits of this case. The documents at issue were leaked in violation of court orders with a particular motive—they are cherry-picked and are inherently one-sided. Releasing these documents would present a skewed narrative, and the "harm faced by [Facebook] [would be] amplified by the fact that the protected documents . . . are segments of a large body of information, whose selective and out-of-context disclosure may lead to confusion . . . and undeserved reputational harm." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007). Stripping the 46 documents at issue of their confidentiality designations would serve only to allow access to sensitive information without context, which risks misleading the public and distorting the truth. It would also present Facebook with an untenable Hobson's choice: either allow the publication of a hand-selected set of one-sided documents or sacrifice additional confidential information to provide the public with a complete picture of the events underlying this case. *See Crossfit, Inc.*, 2015 WL 12466532, at *7 (finding good cause to keep documents confidential and avoid a situation where "one party to the litigation" uses the selected documents "to attempt to discredit another in the public arena").

## CONCLUSION

What "is and always should be fundamental" is "that no one . . . will be permitted to benefit by the wrongdoing of another, if the result will be to make effective the injury to the person wronged, and it is equitably possible to prevent such a result." *In re Franklin Tr. Co.*, 30 Pa. D. & C. 123, 135–36 (Pa. Ct. Com. Pl. 1937). The 46 leaked documents at issue here were leaked by Six4Three and its agents in contempt of two San Mateo Superior Court orders, and in seeking to strip those leaked documents of their confidential status in this case, Plaintiffs seek to benefit from that act of contempt and to visit on Facebook the very injury that protective orders are designed to prevent. That would be a perverse and unjust result. The Court should hold that the 46 leaked documents at issue remain subject to the confidentiality and sealing provisions of the parties' protective order.

| | | |
|---|---|---|
| 1 | DATE: March 19, 2021 | Respectfully submitted, |
| 2 | | **GIBSON, DUNN & CRUTCHER, LLP** |
| 3 | | By: */s/ Orin Snyder* |
| | | Orin Snyder (*pro hac vice*) |
| 4 | | osnyder@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 5 | | 200 Park Avenue |
| | | New York, NY 10166-0193 |
| 6 | | Telephone: 212.351.4000 |
| | | Facsimile: 212.351.4035 |
| 7 | | |
| | | Deborah Stein (SBN 224570) |
| 8 | | dstein@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 9 | | 333 South Grand Avenue |
| | | Los Angeles, CA 90071-3197 |
| 10 | | Telephone: 213.229.7000 |
| | | Facsimile: 213.229.7520 |
| 11 | | |
| | | Joshua S. Lipshutz (SBN 242557) |
| 12 | | jlipshutz@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 13 | | 1050 Connecticut Avenue, N.W. |
| | | Washington, DC 20036-5306 |
| 14 | | Telephone: 202.955.8500 |
| | | Facsimile: 202.467.0539 |
| 15 | | |
| | | Kristin A. Linsley (SBN 154148) |
| 16 | | klinsley@gibsondunn.com |
| | | Martie Kutscher (SBN 302650) |
| 17 | | mkutscherclark@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 18 | | 555 Mission Street, Suite 3000 |
| | | San Francisco, CA 94105-0921 |
| 19 | | Telephone: 415.393.8200 |
| | | Facsimile: 415.393.8306 |
| 20 | | |
| | | *Attorneys for Defendant Facebook, Inc.* |