# EXHIBIT 3



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| SIX4THREE LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC., et al.<br><br>　　　　　Defendants. | Case No. CIV533328<br><br>**ORDER RE: DEFENDANT FACEBOOK INC.'S MOTION TO OPEN DISCOVERY AND TO COMPEL**<br><br>Assigned for All Purposes to<br>Hon. V. Raymond Swope, Dept. 23<br><br>Dept.:　23<br><br>Action Filed:　April 10, 2015 |

Defendant FACEBOOK, INC.'s ("Facebook") Motion to Open Discovery and to Compel came on for hearing on March 15, 2019 at 10:00 a.m. in Department 23 of this Court before the Honorable V. Raymond Swope. Sonal Mehta, Joshua Lerner, Laura Miller, Catherine Kim, and Zachary Abrahamson of Durie Tangri and Natalie Naugle of Facebook, Inc. appeared for Defendants. David Godkin of Birnbaum & Godkin and Stuart Gross of Gross & Klein appeared for Plaintiff. James Murphy of Murphy, Pearson, Bradley & Feeney appeared on behalf of Mr. Godkin as personal counsel. Donald Sullivan of Wilson, Elser, Moskowitz, Edelman & Dicker appeared on behalf of Mr. Gross as personal counsel. Jack Russo of ComputerLaw Group appeared on behalf of individuals Theodore Kramer and Thomas Scaramellino as personal counsel..

Upon due consideration of the briefs and evidence presented, and the oral argument of counsel for the parties, and having taken the matter under submission,

/ / /

/ / /

IT IS HEREBY ORDERED as follows:

In its discretion, the Court *sua sponte* reconsiders its ruling on the record on December 17, 2018, in vacating its prior "order reopening discovery for the limited purpose of investigating the breach of the court orders" (Russo Dec. ISO Kramer Response, filed Jan. 17, 2019, Ex. 2, p. 5:3-5) and memorialized in the Order re: Discovery, issued on January 16, 2019, in light of new facts presented in this motion. (Code Civ. Proc. § 1008, subd. (c).)

The leaks of sealed or stricken court filings and the confidential documents attached outside of DCMS publication have continued. (See Am. CM Order no. 19, issued Mar. 4, 2019.)

**1. Crime-Fraud Exception**

Facebook has made a prima facie showing that the crime-fraud exception applies based on the instant facts.

> Evidence Code section 956 codifies the common law rule that the privilege protecting confidential attorney-client communications is lost if the client seeks legal assistance to plan or perpetrate a crime or fraud. [Citation.] The crime-fraud exception expressly applies to communications ordinarily shielded by the attorney-client privilege. (Evid. Code, § 954.)

(*BP Alaska Exploration, Inc. v. Sup.Ct.* (1988) 199 Cal.App.3d 1240, 1249 ("*BP Alaska*").)

> To invoke the crime-fraud exception, the proponent must make a prima facie showing that the services of the attorney were sought or obtained to aid someone in committing a crime or fraud. Evidence Code section 956 does not require a completed crime or fraud. It applies to attorney communications sought to enable the client to *plan to commit* a fraud, whether the fraud is successful or not. It is the intent of the client upon which attention must be focused and not that of the lawyers.

(*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 220 (internal citations, *quotations* omitted) (original emphasis).)

Plaintiff SIX4THREE, LLC's ("Six4Three") contention that "Facebook has taken a handful of quotations out of *context* in an attempt to spin a narrative-that Six4Three and its counsel have plotted for years to reveal Facebook's confidential information, notwithstanding the protective order" is belied by the evidence submitted in support of this motion, as discussed *infra*. (Six4Three Opp., filed Feb. 27, 2019, p. 3:24 - 4:3 (original emphasis).) Furthermore, Mr. Godkin's statement that "[t]he summary of 643's publicly-filed Fifth Amended Complaint that my firm sent to various

ORDER RE: FACEBOOK'S MOTION TO OPEN DISCOVERY AND TO COMPEL

media and government entities summarizes the complaint's allegations and cites to the Fifth Amended Complaint" is equally not well taken as discussed *infra*. (Godkin Dec. ISO Six4Three Opp., filed Feb. 27, 2019, ¶ 8 ("Godkin Dec."). *See* Six4Three Opp., *supra*, at p. 5:5-12.)

It is undisputed that certain information produced in this action are subject to a Stipulated Protective Order. Specifically, the parties stipulated,

> Any persons receiving Confidential Information or Highly Confidential Information shall not reveal or discuss such information to or with any person who is not entitled to receive such information, except as set forth herein.

(Stip. Prot. Order, issued Oct. 24, 2016, ¶ 6.) Facebook began producing "documents marked 'confidential' and 'highly confidential' in December 2016. (Godkin Dec., *supra*, at ¶ 5.)

Counsel for Six4Three have made multiple representations to the Court that "there have been no communications with third parties regarding Facebook's Confidential Information." (Miller Dec. ISO Motion, filed Jan. 9, 2019, Ex. 1, p. 36:8-10 ("Miller Dec."). See also Godkin Dec. ISO Godkin Resp. to Ex Parte, filed Feb. 28, 2019, ¶ 5 ("B&G only provided third parties with Facebook's confidential or highly confidential information in conformance with the Protective Order").)

These statements are directly contradicted by the communications Six4Three and its counsel had with third parties. The summaries at issue not only summarize the allegations, but also analyze in detail the confidential information obtained from Facebook. For instance, in an email exchange initiated by Mr. Godkin to the Information Commissioner's Office, with the subject line, "Extensive evidence regarding Facebook's treatment of friend data and user privacy," Mr. Godkin introduced himself and stated that he and his firm had "obtained extensive discovery of communications between Zuckerberg and numerous executives . . . that [they] believe[] is highly relevant to the Cambridge Analytica investigation . . . ." (Miller Dec., *supra*, at Ex. 2 (bates no. BG001353). See also *id.* at Ex. 12 (bates no. BG000152), 13 (BG000154), 14 (BG000156), 24 (BG001330), 25 (BG001357), 26 (BG001825).) Notably, Mr. Godkin initiated the email exchanges to: (1) California legislators (Miller Dec., *supra,* at Ex. 12 (bates no. BG000152)); (2) Oregon Department of Justice (Ex. 14 (BG000156)); (3) State of Massachusetts (Ex. 24 (BG001330)); and (4) Federal Trade Commission (Ex. 26 (BG001825).)

///

In the email, Six4Three's counsel explicitly writes that the summary is one of evidence and not the allegations. On their face, these emails demonstrate that the summary went beyond the four corners of the Fifth Amended Complaint, and included counsel's own impressions and analysis of Facebook's confidential information included in the summary. Counsel went further by inviting the recipient to find an "appropriate mechanism" to permit disclosure.

> This summary does not do the wealth of evidence we have obtained justice, which is why I'm hoping we can speak with your office to determine if there is an appropriate mechanism for your team to evaluate the evidence yourselves.

(Miller Dec., *supra*, at Ex. 2 (BG001353). See also *id.* at Ex. 12 (bates no. BG000152), 13 (BG000154), 14 (BG000156), 24 (BG001330), 25 (BG001357), 26 (BG001825).) The summary also summarizes the contents of "internal emails." (*Id.*) The closing paragraph of that email further demonstrates the summary revealed or discussed confidential information obtained from Facebook, and not the allegations of any complaint.

> As you can see, there is a lot here, and it would take months or even years for ICO to obtain discovery of this information from Facebook. We hope to identify an appropriate mechanism for your team to access it and determine its relevance to your current efforts.

(Miller Dec., *supra*, at Ex. 2 (BG001353). See also *id.* at Ex. 12 (bates no. BG000152), 13 (BG000154), 14 (BG000156), 24 (BG001330), 25 (BG001357), 26 (BG001825).) Lastly, the summary does not cite to the paragraphs of the Fifth Amended Complaint as asserted by Six4Three. (*Compare* Six4Three Opp., *supra*, at p. 5:9-12; *with* Miller Dec., *supra*, at Ex. 2 (BG001353), 12 (bates no. BG000152), 13 (BG000154), 14 (BG000156), 24 (BG001330), 25 (BG001357), 26 (BG001825.)

In addition to the summary of evidence, several written communications have been produced by Six4Three's counsel pursuant to stipulation that involve Six4Three, its principal Mr. Kramer, and its counsel, including Mr. Godkin, Mr. Gross, Mr. Kruzer, and Mr. Scaramellino, revealing or discussing confidential information produced by Facebook with third parties and using a retained expert as a source for the news media as follows:

(1) "We have uncovered evidence supporting these claims and believe Facebook's conduct also includes competitive restrictions against over 40,000 software applications" (Miller Dec., *supra*, at Ex. 3, (SIX4THREE00015917));

(2) "There is an opportunity to unseal about 3,000 pages of hot documents that we believe very clearly prove the allegations in our complaint" (Miller Dec., *supra*, at Ex. 6 (BG001308));

(3) "We are extremely eager to do the story now that there is an opportunity for the documents to be released. I understand that Collins said that will happen in a week, but I'm sure they could leak before – and of course we want to be first. The challenge is that until now we have only talked off the record, so it will be hard to use material from our conversations if I don't hear from you." (Miller Dec., *supra*, at Ex. 15 (BG000716));

(4) "We have obtained emails from Zuckerberg and numerous other Facebook executives and employees . . ." (Miller Dec., *supra*, at Ex. 16 (BG000425)); and

(5) The key thing with [redacted] is that if the article identifies him as an expert witness or bases his confirmation of the allegations on the fact that he has reviewed the evidence . . ." (Miller Dec., *supra*, at Ex. 19 (BG0006403); see Ex. 18 (BG006394).

Notably, Six4Three posits no argument or citation to evidence that the references to the evidence made in these communications came from non-confidential information or sources. Furthermore, these communications were mostly made prior to Mr. Kramer's disclosure to the DCMS or before DCMS publication. (See Six4Three Opp., *supra*, at p. 4:6-8) The exception is Miller Declaration, Exhibit 15, which is a communication between the Washington Post and Six4Three and its counsel made after Mr. Kramer's disclosure but before DCMS publication.

To that end, Mr. Gross' attempt to minimize his participation in these communications is not well taken. (See Six4Three Opp., *supra*, at p. 6:10-21.) First, Mr. Gross stated his firm, Gross & Klein LLP, is contractually obligated to follow the direction of lead counsel Birnbaum & Godkin, LLP in this action. In its retainer agreement with Six4Three,

> The Client acknowledges that any action taken by the Firm will be at the direction of Birnbaum & Godkin, LLP ("Lead Counsel"). It its [*sic*] role as local counsel, the Firm will not be responsible for developing legal strategy, implementing legal strategy, monitoring filing deadlines, or otherwise directing the litigation. If, at any point in the Client's representation by the Firm, the Client would like to modify this scope of representation, the Client shall advise the Firm and a new retainer agreement shall be negotiated.

(Gross Dec. ISO Withdraw, filed Jan. 24, 2019, Attachment 2, ¶ 4.) Mr. Gross states that the retainer agreement was never modified. (*Id.*) Accordingly, any communications with Six4Three would have

been at the behest of Birnbaum & Godkin. On November 27, 2018, Mr. Gross was cc:ed on an email from the Washington Post and to Mr. Kramer, principal of Six4Three, and Mr. Scaramellino, a member of Six4Three's legal team, wherein the author stated,

> I'm getting a bit worried since I have not heard from you in several days. We are extremely eager to do the story now that there is an opportunity for the documents to be released. I understand that Collins said that will happen in a week, but I'm sure they could leak before – and of course we want to be first. The challenge is that until now we have only talked off the record, so it will be hard to use material from our conversations if I don't hear from you. In addition, the trove is big as we know, and I know you had promised to offer some guidance on how to go through it. [¶] I would really appreciate if you could let me know what is happening either way – even if it is to say that you can't speak. You can reach me on my cell or on Signal at [redacted]."

(Miller Dec., *supra*, at Ex. 15 (BG000716).) Notably, Six4Three does not posit argument and Mr. Gross does not state in a declaration that he did not receive or read that email. (See Six4Three Opp., *supra*, at p. 6:10-24.) Six4Three did not file objections to the evidence proffered by Facebook. This email demonstrates that there were conversations with a third party prior to DCMS publication revealing or discussing Facebook's confidential information upon which Mr. Gross was a recipient to all or part of those communications. Although Mr. Gross was contractually responsible for submitting to the efforts of Birnbaum & Godkin, LLP as lead counsel, Mr. Gross nevertheless had an independent duty as local counsel.

Furthermore, from the outset of his firm's retention by Six4Three, Mr. Godkin required Mr. Scaramellino to work on Six4Three's legal team.

> Mr. Scaramellino, Mr. Kramer and I recognized that filing a lawsuit against Facebook would require substantial legal resources. Because my firm is small, and because 643 is a defunct startup with very limited resources, I concluded that it would be appropriate and helpful for Mr. Scaramellino to work with me and my firm as part of the legal team. . . . As such, Mr. Scaramellino's agreement to work with me on the litigation team was a condition of Birnbaum & Godkin's engagement with 643.

(Miller Dec., *supra*, at Ex. 9, ¶ 6.) Mr. Godkin has previously advised the Court of his direct supervision over Mr. Scaramellino in this action.

> Accordingly, Mr. Scaramellino has been working with me and my firm as a member of the legal team since my firm was retained by 643, with 643's full knowledge and approval. Mr. Scaramellino is performing legal research, fact investigation, assembly of data and information, and preparation of pleadings, and any other work that I decide will assist me and my firm in carrying out the representation of 643. All of

> the tasks performed by Mr. Scaramellino are performed at my direction and under my supervision. All of the work performed by Mr. Scaramellino has been reviewed by me or another attorney at my firm, and merged into my firm's work product. Mr. Scaramellino is not being paid for his work, His role is akin to that of a law clerk or paralegal, similar to his roles at Davis Polk and SDNY.

(Miller Dec., *supra*, at Ex. 9, ¶ 7.) The conduct of Mr. Scaramellino in this action is imputed on Birnbaum & Godkin, LLP.

Moreover, these communications with third parties fall outside of the ambit of Rules of Professional Conduct, rule 3.6(b)(1)-(5). (See Six4Three Opp., *supra*, at p. 5:17-22.) Rather, rule 3.6 permits the lawyer to state:

> (1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
>
> (2) information contained in a public record;
>
> (3) that an investigation of a matter is in progress;
>
> (4) the scheduling or result of any step in litigation;
>
> (5) a request for assistance in obtaining evidence and information necessary thereto;
> . . . .

(Rules of Prof. Conduct, rule 3.6(b)(1) – (5).) The aforementioned emails of Six4Three's counsel demonstrate that counsel's summary of evidence to third parties exceeds the scope of this rule.

The evidence reflects that Six4Three, through its principal Mr. Kramer, utilized the services of counsel to aid in committing a crime or fraud. Prior to traveling to the United Kingdom with documents containing Facebook's confidential information, Mr. Kramer communicated with Mr. Collins on finding an "appropriate mechanism" to disclose to DCMS similar to the communications of Six4Three's counsel to target third parties.

On October 1, 2018, Mr. Kramer initiated a communication to Mr. Collins by way of an email with the subject line, "Extensive evidence relevant to Facebook's data and privacy abuses." (Miller Dec., *supra*, at Ex. 45, ¶ 5, Ex. 1 ("Kramer Dec.").) Although Mr. Kramer stated that he was "summariz[ing] the public information from our case" for Mr. Collins, the summary is essentially the same as the one sent by Six4Three's counsel. (*Compare* Kramer Dec., *supra*, at ¶ 5, Ex. 1; *with*

Miller Dec., *supra*, at Ex. 2 (BG001353), 12 (bates no. BG000152), 13 (BG000154), 14 (BG000156), 24 (BG001330), 25 (BG001357), 26 (BG001825).)

On November 3, 2018, in response, Mr. Collins provided his personal email and mobile phone number to Mr. Kramer. (Kramer Dec., Ex. 2.) In that same email, Mr. Collins also inquired as to the documents in Mr. Kramer's possession. Specifically,

> Unredacted copy of Plaintiff Six4Three's Corrected Memorandum of Points and Authorities in Opposition to Defendants' Special Motions to Strike (Anti-SLAPP) filed on May 18, 2018;
>
> Unredacted copy of the Declaration of David S. Godkin in Support of Six4Three's Anti-SLAPP Opposition ("Godkin Anti-SLAPP Declaration") filed concurrently therewith on May 18, 2018;
>
> Exhibits 1-212 to the Godkin Anti-SLAPP Declaration filed on May 18, 2018;
>
> All documents containing summaries or analyses of any of the exhibits to the Godkin Anti-SLAPP Declaration filed on May 18, 2018.

(Kramer Dec., Ex. 2.) On November 4, 2018, Mr. Kramer confirmed his possession and shared his own personal view of those documents.

> Thanks for your note. I can confirm that your description of the documents in my possession is accurate.
> . . .
>
> My personal view is that the documents you list in your note contain information highly relevant to your investigation regarding Facebook's data practices, and further that it would be impossible for the investigation to reach any legitimate conclusions without a thorough review of this information.

(Kramer Dec., Ex. 3.) Mr. Kramer also invited Mr. Collins to start an "appropriate mechanism" for disclosure, the conversation of which implicates Six4Three's counsel.

> These documents are subject to confidentiality under a protective order entered in San Mateo Superior Court in California. Carole mentioned you may be seeking to subpoena the documents. I will agree to accept service of a subpoena mailed to my home address: [redacted]
>
> Upon receipt of any subpoena, I would be required to notify Facebook. If Facebook wishes to prevent my compliance, it will need to take action in appropriate fora.

> If you wish to speak, it is best we setup a phone call with a conference line. We always have a member of our legal team on the line to ensure we have witnesses of what was discussed in the event Facebook takes retributive action against us.

(Kramer Dec., *supra*, Ex. 3.) Approximately one week later on November 12, 2018, Mr. Kramer responded that he could not "voluntarily disclose" the documents. (*Id.* at Ex. 4.) On November 13, 2018, Mr. Collins emailed Mr. Kramer, "Would we be clear to publish what you have already sent us as written evidence without there being any repercussions for you? [Whilst we have immunity, you still need to consider your own position]" (*Id.* at Ex. 5.) On November 19, 2018, Mr. Kramer arrived in London. (*Id.* at ¶ 11.)

Still left unexplained is how Six4Three's counsel caused Facebook's confidential information and highly confidential received pursuant to the Stipulated Protective Order to be uploaded and available for viewing and download on its client, Six4Three's Dropbox account no later than October 1, 2018. Six4Three's counsel admits it was responsible for the safekeeping of that confidential information.

> Mr. Godkin: Your Honor, what I learned last week for the first time was that the documents would have been placed on Six4Three's Dropbox system.
>
> The Court: How?
>
> Mr. Godkin: I don't know.
>
> The Court: Why?
>
> Mr. Godkin: I don't know that either. But that is precisely the problem here that has caused us to have a serious issue. You're absolutely right that the – the documents that were produced by Facebook in my understanding have always been completely secure from Mr. Kramer. The mistake that was made here was that pleadings that referenced those documents had been placed without my firm's knowledge onto Six4Three's Dropbox system. That is I believe where the mistake was made. And my firm obviously has to take responsibility for failing to adequately protect that from happening and we do.

(Nov. 30, 2018 Transcript, p. 23:6-22.)

Notably, in a subsequent declaration, Mr. Godkin acknowledges only his firm and its employees had access to Facebook's confidential and highly confidential information.

> My firm has stored and maintained Facebook's confidential information on a password-protected document hosting platform (Relativity) and on the firm's secure server. [¶] Only firm employees have access to the firm's secure server. [¶] Thomas Scaramellino assisted with the litigation as an outside member of the legal team. He was not given access to the firm's secure server.

(Godkin Dec. re: CM Order no. 19, executed Mar. 5, 2019, p 5:17-18.) Notably, Mr. Godkin does not state the security of his firm's server or document hosting platform has been compromised. One can only conclude that Birnbaum & Godkin caused Facebook's confidential and highly confidential information to be uploaded on Six4Three's Dropbox.

Based on the foregoing, the Court finds that Facebook has made a prima facie showing that the services of the Six4Three's counsel was sought or obtained to aid Six4Three in committing a crime or fraud and the crime-fraud exception applies.

**2. Depositions of Six4Three's Counsel**

Despite being highly disfavored, Facebook has demonstrated the necessity of deposing Six4Three's counsel and members of its legal team given the incongruities in their statements when compared to the evidence of their communications revealing or discussing confidential information with third parties and their overall handling of Facebook's confidential information. (*Spectra-Physics, Inc. v. Sup.Ct. (Teledyne, Inc.)* (1988) 198 Cal.App.3d 1487, 1494-95.)

As a threshold matter, there is evidence of oral conversations revealing or discussing Facebook's confidential information between Six4Three's counsel, its legal team, retained experts, its principal Mr. Kramer and third parties in contravention of Stipulated Protective Order, paragraph 6, in documents produced by Birnbaum & Godkin, LLP pursuant to stipulation:

(1) The challenge is that until now we have only talked off the record, so it will be hard to use material from our conversations if I don't hear from you." (Miller Dec., *supra*, at Ex. 15 (BG000716));

(2) "Ted mentioned that [redacted] can confirm some of our allegations in the complaint. Would he or others be willing to do so on the record? We are very much hoping that the first reporting of this can verify at least a significant portion of the allegations to mitigate the impact of FB's counter punch. Since we don't want to reveal [redacted] we are wondering who might fill this gap" (Miller Dec., *supra*, at Ex. 18);

(3) "The key thing with [redacted] is that if the article identifies him as an expert witness or bases his confirmation of the allegations on the fact that he has reviewed the evidence . . ." (Miller Dec., *supra*, at Ex. 19 (BG0006403));

(4) "I think anonymous quotes from [redacted] would be fine so long as he isn't identified as an expert witness" (Miller Dec., *supra*, at Ex. 48 (BG006401));

(5) In response to an email stating "the investigation team directly dealing with the Cambridge Analytica/FB file" who "will be in touch shortly", Mr. Godkin responded, "I am in arbitration for the next several days but am copying my colleague Jim Kruzer who I believe will be in the office and can coordinate" (Kim Dec. ISO Facebook Opp. to Withdraw, filed Jan. 17, 2019, Ex. 1 (BG001357) ("Kim Dec."));[1]

(6) "Many thanks for the call just now. Please meet David Godkin, lead counsel in the litigation I mentioned" (Kim Dec., *supra*, at Ex. 2 (BG001330));

(7) In response to an email asking when "there [is] a good time tomorrow that [redacted] and I can touch base on this," Mr. Godkin provided the same summary as discussed *supra* and responded, "Unfortunately I will be in arbitration starting tomorrow for the next few days, but my colleague Jim Kruzer who is working with me on the Facebook litigation . . . will touch base with you" and Mr. Kruzer subsequently set up a conference call (Kim Dec., *supra*, at Ex. 2 (BG01330);

(8) Mr. Kramer sent the summary and the target third party recipient inquired, "How would you like to proceed," and Mr. Kramer responded, "I would suggest as a next step that we setup a phone call with one of the attorneys on the case, Jim Kruzer, whom I've copied on this note" (Kim Dec., *supra*, at Ex. 5 (BG007096); and

(9) In emailing the summary, Mr. Godkin wrote, "I'm know [sic] you must be extremely busy, but I watched you on the news yesterday and the media's narrative around Cambridge Analytica is all wrong. You are in a unique position to correct it. Here is the truth below. I hope you do find time to explore it at some point. You have my contact information if you or your team frees up." (Kim Dec., *supra*, at Ex. 10 (BG001868)).

The Court finds the above references in emails to conference calls and oral communications involving Six4Three's counsel, its legal team, and Mr. Kramer with targeted third parties pertaining to Facebook's documents warrant these depositions. Furthermore, in a declaration, Mr. Gross does not affirmatively state he did not receive or read the emails he was cc:ed on, but rather he "did not

---

[1] In the Notice of Motion, Facebook states, "This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, and the Declaration of Laura E. Miller in support thereof, and all other pleadings, records, and papers filed in this action, any on any other evidence and argument as may be considered by the Court prior to its decision on the Motion." (Not. Mot. to Open Discovery, filed Jan. 8, 2019, p. 1:16-19.) Neither Six4Three nor its counsel objected to this evidence proffered by Facebook in opposition to the motions to be relieved as counsel.

-11-
ORDER RE: FACEBOOK'S MOTION TO OPEN DISCOVERY AND TO COMPEL

pay much attention to these emails with the press on which I was simply copied." (Gross Dec. ISO Gross Resp. to Ex Parte, filed Feb. 28, 2019, ¶ 8.) The excuse of inattention does not shield Mr. Gross from deposition. It is apparent from the evidence that Six4Three's counsel was engaged in the "heavy lifting" of analyzing and summarizing Facebook's confidential information to third parties, and not merely acting in an advisory role to Six4Three.

Furthermore, this evidence is incongruous with statements made by Six4Three's counsel in declarations to the Court.

> At no time did my 'firm direct, authorize, condone, or otherwise sanction the release, disclosure, or commentary by Mr. Kramer, Mr. Scaramellino, experts and consultants of any confidential or highly confidential information to any third party.

(Godkin Dec. re: CM Order no. 19, *supra*, at p 5:17-18.)

> At no time did I, my employees or my firm direct, authorize, condone, or otherwise sanction the release, disclosure, or commentary by Mr. Kramer, Mr. Scaramellino, experts and consultants of any confidential or highly confidential information to any third party.

(Godkin Suppl. Dec. re: CM Order no. 19, executed Mar. 6, 2019, p. 2:12-15.).

Furthermore, Mr. Scaramellino, a member of the Six4Three legal team and law clerk for Birnbaum & Godkin, LLP, contradicts Mr. Godkin.

> At no time from my execution of the attached certification on December 1, 2016 have I provided information subject to the Protective Order to any unauthorized individuals or outside the scope of Mr. Godkin's supervision or without Mr. Godkin's knowledge.

(Scaramellino Dec. re: CM Order no. 19, executed Mar. 14, 2019, ¶ 3.)

Lastly, Mr. Godkin contradicts himself in two of his declarations as to his handling of Facebook's highly confidential information. "As set forth above, B&G only provided third parties with Facebook's confidential or highly confidential information in conformance with the Protective Order." (Godkin Dec. ISO Godkin Resp. to Ex Parte, *supra*, at ¶ 5.) However, in a subsequent declaration, Mr. Godkin admits he provided highly confidential information to Mr. Scaramellino despite Mr. Scaramellino striking out "highly confidential information" from the certification he executed. (Godkin Dec. re: CM Order no. 19, *supra*, at ¶ 5.) Mr. Scaramellino should not have

received highly confidential information without executing the certification.

**3. Order**

Based on the foregoing, the Court GRANTS, IN PART, AND DENIES, IN PART, Facebook's Motion to Open Discovery and to Compel. The opening of discovery is limited to the revealing or discussing of Facebook's confidential information pursuant to Stipulated Protective Order, paragraph 6 and disclosures or providing thereof. Discovery of the merits of the action remain stayed pending the cross-appeals of the order on the anti-SLAPP motions.

Facebook's request for discovery based on the Notices of Deposition is premature. On November 30, 2018, Facebook served notices of deposition with requests for production of documents, and thus, documents need not be produced prior to the deposition date. (Code Civ. Proc. § 2025.220, subd. (b)(4). See Miller Dec., *supra*, at Ex. 33 – 36.)

Accordingly, the Court grants Facebook leave to serve its requests for production or subpoena duces tecum, whichever is the appropriate method, on Mr. Gross, Mr. Godkin, Mr. Kramer, and Mr. Scaramellino as enumerated in Appendix A to Facebook's Memorandum of Points and Authorities, received Jan. 9, 2019. A copy of Appendix A is attached as **Exhibit A**.

The attorney-client privilege is waived pursuant to the crime-fraud exception. A work product log shall be served for any documents withheld on those grounds.

The requests to compel depositions are premature given Facebook is requesting production of the documents prior to the deposition. Scheduling of depositions are contingent on production, which shall be the subject of a further discovery conference on April 26, 2019 at 2:00 p.m.

Lastly, the Court acknowledges that Mr. Kramer and Mr. Scaramellino's response and production to Appendix A will be greatly curtailed given the orders of this Court and will require searches of their preserved data by the forensic examiner.

In earlier proceedings, Six4Three and its counsel have expressed concern that the forensic examiner, Stroz Friedberg, is not truly a neutral third party forensic examiner because Facebook has refused to relinquish seeking Stroz Friedberg's expertise in this and other matters. Although the Court previously ordered Stroz Friedberg to conduct a limited search of logs based on *ex parte* relief, a neutral third party forensic examiner shall now be appointed.

Accordingly, the parties' counsel (not personal counsel) shall meet and confer and propose three neutral forensic examiners to the Court no later than March 22, 2019 to conduct searches on Mr. Kramer and Mr. Scaramellino's data currently in the possession, custody, and/or control of Stroz Friedberg.

The cost of the neutral third party forensic examiner will be borne solely by Facebook given Six4Three's inability to pay.

The Court will issue an order appointing the neutral third party forensic examiner and the transfer of all data and documents pertaining to chain of custody from Stroz Friedberg so that it is no longer in the possession, custody, and/or control of Stroz Friedberg. Stroz Friedberg shall file and serve a declaration of compliance. Stroz Friedberg shall still maintain all documents pertaining to chain of custody. The order for Stroz Friedberg not to disclose, discuss, or reveal any information obtained from the data in its possession, custody, or control outside of further order of the Court shall remain in effect.

The parties shall also meet and confer on the parameters of searches for electronic documents in the possession, custody, or control of the neutral third party forensic examiner. A discovery conference on the limited issues of the opening of discovery is set for April 26, 2019 at 2:00 p.m.

IT IS SO ORDERED.

DATED: March 15, 2019

Honorable V. Raymond Swope
Judge of the Superior Court