# EXHIBIT 12

```
 1        IN THE SUPERIOR COURTS OF THE STATE OF CALIFORNIA

 2              IN AND FOR THE COUNTY OF SAN MATEO

 3                        ---O0O---

 4

 5   SIX4THREE, LLC,                CERTIFIED TRANSCRIPT

 6              PLAINTIFFS,

 7         VS.                      CASE NO. CIV533328

 8

     FACEBOOK, INC., ET AL.,
 9
                DEFENDANTS.
10
     _____/
11

12             REPORTER'S TRANSCRIPT OF PROCEEDINGS

13          BEFORE:  HONORABLE V. RAYMOND SWOPE, JUDGE

14                     DEPARTMENT 23

15                    MARCH 15, 2019

16   A P P E A R A N C E S

17   FOR THE PLAINTIFFS:
     STUART G. GROSS      DAVID S. GODKIN (VIA COURTCALL)
18   ATTORNEY AT LAW      ATTORNEY AT LAW

19   JAMES A. MURPHY
     ATTORNEY AT LAW
20
     FOR THE DEFENDANTS:
21   JOSH H. LERNER      LAURA E. MILLER      CATHERINE Y. KIM
     ATTORNEY AT LAW     ATTORNEY AT LAW      ATTORNEY AT LAW
22
     SONAL N. MEHTA      NATALIE NAGLE        ZACHARY ABRAHMSON
23   ATTORNEY AT LAW     ATTORNEY AT LAW      ATTORNEY AT LAW

24

25

26   REPORTED BY:  GERALDINE VANDEVELD, C.S.R. 8634
```

1  POINTS, YOUR HONOR.  THE FIRST ONE IS WHAT WE JUST HEARD FROM

2  MR. RUSSO IS PRECISELY THE SAME SORT OF GRANDSTANDING AND

3  ATTACK -- OR APPROACH TO COMPLETELY COLLATERAL MATTERS BECAUSE

4  THEY MAY BE INTERESTING TO THE PRESS AND THEY MAY MAKE

5  HEADLINES, BUT THEY HAVE NOTHING TO DO WITH THIS CASE.

6        THE COURT:  HOLD YOUR THOUGHT FOR A MOMENT, BUT IT

7  OCCURS TO ME.  AND I MAY HAVE A TREMENDOUS GRASP OF THE

8  OBVIOUS.  BUT HOW CAN ANY CORPORATION COUNSEL.  I MEAN

9  EVERYONE IN THE ROOM.  HOW CAN ANY CORPORATION HAVE CONFIDENCE

10  TO ENTER INTO A STIPULATED PROTECTIVE ORDER FOR THE PURPOSES

11  OF THE LITIGATION THAT THAT CONFIDENTIAL OR HIGHLY

12  CONFIDENTIAL INFORMATION WILL NOT BE BROADCAST TO THOSE

13  OUTSIDE THE LAWSUIT?

14        HOW CAN ANYONE HAVE ANY CONFIDENCE IN A STIPULATED

15  PROTECTIVE ORDER?  EVERYONE HAS ENTERED THEM.  I SIGN THEM ALL

16  THE TIME.  AND THIS CASE HAS BEEN POPPING UP IN THE BACK OF MY

17  MIND AS I SIGN THESE STIPULATED PROTECTIVE ORDERS IN MY

18  SIGNING RESPONSIBILITIES AS A CIVIL JUDGE IN THIS COURT.

19        I'M THINKING THESE PEOPLE MAY HAVE CONFIDENCE THAT

20  THE INFORMATION THAT THEY HAVE IS NOT GOING TO BE EXPOSED.

21  THEY'VE SIGNED IT.  AND I'M HOPING THAT THEIR INTENT IS TO

22  KEEP EVERYTHING CONFIDENTIAL OR HIGHLY CONFIDENTIAL, AS IT

23  WERE.

24        THIS COMPROMISES THE ENTIRE INTEGRITY OF STIPULATED

25  PROTECTIVE ORDERS AND BY EXTENSION TO AMERICAN JURISPRUDENCE.

26  ONE OF THE TENETS IS KEEPING CONFIDENCES OF A CLIENT

1  INVIOLATE, BUT THE OTHER IS HAVING AN UNDERSTANDING THAT

2  COUNSEL SHALL KEEP THINGS CONFIDENTIAL AND BEHAVE IN A MANNER

3  THAT IS APPROPRIATE UNDER THE RULES OF THE PROFESSIONAL

4  RESPONSIBILITY.

5          YOU KNOW, BENJAMIN CARDOZA ONCE SAID, "MEMBERSHIP IN

6  THE PREVENTION IS A PRIVILEGE BASED UPON CONDITIONS.  WE ENTER

7  INTO THIS FELLOWSHIP OF LAW FOR SOMETHING MORE THAN PERSONAL

8  GAIN.  IT IS TO ACHIEVE THE SYSTEM OF JUSTICE."

9          THAT IS SOMETHING THAT CARDOZA SAID.  AND THE COURT

10  HAD SAID IN IN RE SNYDER BACK IN 1985, 1986.  THE FEDERAL

11  COURT.  I THINK IT WAS THE SUPREME COURT ON A CONFIDENTIAL

12  ISSUE OR A PROFESSIONAL RESPONSIBILITY ISSUE.  I'M NOT SEEING

13  THAT HERE TODAY.  I'M NOT SEEING THE REVERENCE THAT THERE IS

14  TO THE RULE OF LAW TODAY.  WHAT I'M SEEING IS A COMPROMISE OF

15  THE INTEGRITY OF OUR LITIGATION SYSTEM.  OUR SYSTEM OF

16  JUSTICE.

17          IF LAWYERS CANNOT RELY UPON THE AGREEMENT BY ANOTHER

18  LAWYER TO KEEP THINGS CONFIDENTIAL PURSUANT TO A STIPULATED

19  PROTECTIVE ORDER, THEN WE'VE ALL LOST.  THE PRINCIPLES OF

20  CONFIDENTIALITY AND STIPULATED PROTECTIVE ORDERS GO BEYOND

21  THIS CASE.  AND I WILL LEAVE IT AT THAT AS A RESULT WITH

22  REGARD TO STIPULATED PROTECTIVE ORDERS.

23          AS I SAID ON WEDNESDAY ON THE MOTION TO WITHDRAW,

24  THIS CASE IS UNPRECEDENTED.  THIS CASE IS A MATTER OF FIRST

25  IMPRESSION TO THE COURT.  THERE ARE NO CASES THAT HAVE

26  SUMMARIES OF FACT PATTERNS LIKE THIS ONE.  REGARDLESS OF HOW

1    PEOPLE FEEL ABOUT FACEBOOK.  AND THIS COURT HAS NO OPINION

2    ABOUT THIS CORPORATION AT ALL.

3              ALL I'M SAYING IS A CORPORATION THAT SIGNED AN

4    AGREEMENT TO KEEP THINGS THAT ARE HIGHLY CONFIDENTIAL AND

5    CONFIDENTIAL IN PLACE UNTIL FURTHER ORDER OF THE COURT OR SOME

6    PROVISION OF THAT CONFIDENTIALITY AGREEMENT IS TRIGGERED.

7              SO THAT PRESENTATION THAT YOU MADE ABOUT FACEBOOK,

8    MR. RUSSO, IS EXHIBIT A FOR WHY YOUR CLIENTS DID WHAT THEY

9    DID.  THIS IS THEIR MOTIVATION FOR WHAT I HAVE READ AND

10   REASONABLE MINDS MAY DIFFER, BUT I THINK BY AT LEAST A

11   PREPONDERANCE OF THE EVIDENCE AND MAYBE IN MY OPINION IT'S

12   CLEAR AND CONVINCING THAT THAT MAY HAVE BEEN THE MOTIVATION TO

13   DISCLOSE THAT INFORMATION.  OTHERWISE, NO ONE WOULD BE SENDING

14   EMAILS THAT CAPTURE THAT PARTICULAR THOUGHT.

15             MS. MEHTA, YOU HAD A COMMENT TO MAKE?

16             MS. MEHTA:  YES, YOUR HONOR.  AND I DON'T WANT TO

17   BELABOR THE POINT.  I DO WANT TO DIRECT TO YOU TWO SPECIFIC

18   PIECES OF EVIDENCE.  I THINK THEY ARE GOING TO BE CRITICAL IN

19   ADDRESSING THE ARGUMENTS THAT WERE MADE BY THE OTHER SIDE.

20             THE FIRST ONE WAS THE SUGGESTION FROM MR. RUSSO THAT

21   IN FACT PEOPLE WERE CALLING HIS CLIENTS ASKING FOR

22   INFORMATION.  THAT IS NOT TRUE.  THE EMAILS FROM THE DCMS

23   DISCLOSURE AND THE OTHER 9,000 PAGES OF EMAILS THAT WE HAVE

24   SHOW THAT IT WAS MR. KRAMER, MR. SCARAMELLINO, MR. GODKIN AND

25   MR. GROSS THAT WERE ON A CAMPAIGN TO TRY TO GET MEDIA

26   ATTENTION.  THE DCMS DISCUSSIONS STARTED BECAUSE MR. KRAMER