Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS UPDATE**<br><br>Judge:  Hon. Vince Chhabria and Hon. Jacqueline Scott Corley<br>Courtroom:  VIA VIDEO CONFERENCE<br>Hearing Date: April 6, 2021<br>Hearing Time: 9:00 a.m. |

The parties respectfully submit this Joint Status Update in advance of the Court's discovery conference scheduled for April 6, 2021 at 9:00 a.m.

# I.     PLAINTIFFS' STATEMENT

**a.   Discovery Mediator.**  At the Court's direction, the parties have selected the Honorable Gail A. Andler of JAMS as their discovery mediator. *See* Dkt No. 644. The parties have exchanged several proposals for a stipulation and proposed order regarding the contours of Judge Andler's role and authority and have met and conferred regarding the proposals multiple times over the past three weeks. Plaintiffs had hoped to provide a joint submission reflecting agreement by today, but while the parties agree on the need for an order and some of what should be included, they were not able to agree on all the terms. Although the parties had discussed a joint submission, at 9:30 p.m. Pacific on April 4, Facebook informed Plaintiffs that it was premature to try to work through the issues before meeting with the Court and Judge Andler.

Attached as Exhibit A is Plaintiffs' proposal, which incorporates issues where the parties have reached agreement. During the parties' most recent meet and confer, Facebook identified two aspects of Plaintiffs' proposal with which it disagrees. First, Plaintiffs believe that, if and to the extent requested by the Court, the Discovery Mediator should be able to make recommendations regarding discovery disputes to the Court. This would allow the Court, at its discretion, to capitalize on the Discovery Mediator's expertise regarding specific disputes. Second, Plaintiffs' believe that the Discovery Mediator needs the authority to order individuals with decision-making authority to participate in conferences to streamline decision-making and the pace of discovery. It is common for mediators to insist that individuals with decision-making authority attend mediation sessions, especially if the absence of that authority would impair the ability of the parties to reach agreement.

Plaintiffs anticipate discussing their proposal with the Court on April 6, 2021. It is Plaintiffs' hope that the Court will be able to assist the parties in working through what Plaintiffs had believed, before late last night, were the limited disputes that remain  so that the parties may begin to work with the Discovery Mediator to begin sorting through the thicket of outstanding discovery issues and disputes. It appears to Plaintiffs, however, that the only way the parties will reach agreement on the Discovery Mediator's role anytime soon is with the Court's guidance.

Plaintiffs further propose that the Court and Judge Andler consider scheduling a "science day" or an equivalent to provide context for the discovery issues in this action. For example, with a better understanding of how data is collected and stored at Facebook, and how and to whom that data is shared and made accessible, the Court and Judge Andler can make more informed decisions about relevant and responsive discovery in this action.

**b.    Facebook's Document Production.**  Facebook's pace of document production remains a problem. On January 11, 2021, Facebook produced 1,561 documents.  On February 8, 2021, Facebook produced 5,492 documents. On March 8, 2021, Facebook produced 13,787 documents. Those productions comprise Facebook's total production of documents during calendar year 2021. Since the Court's October 29, 2020 Order finalizing search terms for Groups 1-4, Facebook has produced fewer than 20,000 documents identified by those terms. This represents a tiny fraction of the approximately 3 million documents Facebook stated those terms retrieved. Nearly all those documents are collections of news articles. Applying search terms to Groups 5-8 email and chats is likely to add approximately 2.6 million documents for potential production. The pace of production needs to increase by orders of magnitude.

On April 1, Facebook indicated that, in addition to the use of the search terms the parties negotiated over the better part of a year to ensure that the terms targeted only relevant documents, it is not only conducting a subsequent relevance review of each document surfaced by the search terms, but is also contemplating the use of technology assisted review ("TAR"). As recently as February, Plaintiffs asked Facebook whether it was using TAR, and its counsel replied that it was not. In any event, using TAR absent the negotiation with Plaintiffs of a suitable TAR protocol would violate the ESI protocol. Dkt. No. 416 at 6 n.1. Nevertheless, it is Plaintiffs' position that the strenuously negotiated search terms provide sufficient limits as to the universe of relevant documents, and that, in light of the slow pace of discovery over the past 18 months, all documents surfaced by running the terms against the custodial collections, except those protected from production by an applicable privilege, should be promptly produced.

**c.    Issues Related to the Recently Taken 30(b)(6) depositions.**  As set forth in

Plaintiffs' prior statement, the Court-ordered 30(b)(6) depositions regarding data and monetization occurred on February 23 and 24. Numerous issues following those depositions require follow up. This includes the need for additional testimony and documents, and motions that may arise if the parties are unable to agree on related issues. For example, in advance of both depositions, Plaintiffs repeatedly requested that Facebook produce documents used to prepare the designees for their depositions. Facebook refuses to do so and has also refused to produce documents the deponents referenced while testifying.

    **d.**   **Pending Motion re Sworn Testimony and Written Discovery Responses in Related Regulatory Actions:** At the March 4 discovery conference, the Court told Facebook to produce the deposition transcripts from the related regulatory actions and to inform Plaintiffs when that production would take place. March 4 Tr. 13:10-14. In response, Facebook informed Plaintiffs that: (1) it would produce transcripts only from testimony by presently-named custodians in this case, withholding transcripts from others; and (2) of the subset of transcripts it agrees to produce, it would produce some unknown number in early April and the rest in May. There is no reason for this attenuated process. Plaintiffs ask the Court to instruct Facebook to produce all the deposition transcripts from the regulatory actions Facebook itself deemed related by April 15. If the Court is not inclined to order Facebook to produce the transcripts from its employees who are not presently-named custodians, Plaintiffs ask that the Court order Facebook to identify those deponents by April 7, so that the parties may meaningfully meet and confer regarding whether Facebook should produce their transcripts.

    At the March 4 discovery conference, the Court also asked that Plaintiffs identify the FTC letters to which they would like Facebook's responses, *id*. at 22:15-21. Plaintiffs did so on March 15, 2021. Facebook has declined to produce the correspondence until the Discovery Mediator addresses the issue. Plaintiffs ask the Court to further instruct Facebook to produce the written discovery and discovery responses Plaintiffs have identified by the end of April.

    **e.**   **Pending Motion re ADI Materials:** Plaintiffs submitted the decision in the action by the Massachusetts Attorney General against Facebook in its Statement of Recent Authority on

March 25, 2021. No further briefing on this issue is anticipated and no hearing is scheduled. Facebook is withholding not only internal documents but also documents provided to it for review by one third party involved in the ADI process, who Plaintiffs served with subpoenas months ago, until the Court issues an order.

     **f.**   **Facebook's Response to Plaintiffs' Fourth Set of Interrogatories:** On February 1, 2021, the Court issued an Order re: Business Partners Discovery Dispute requiring Facebook to "identify all companies with which Facebook agreed to exchange information about users' activities with each other, regardless of whether such company is an 'integration partner.'" Dkt. No. 608 at 2. In response, Facebook stated it had already identified all such companies. Pltfs' Ex. C. However, the testimony of Facebook's corporate designees demonstrates that Facebook's identification of business partners remains substantially incomplete.

     During the 30(b)(6) depositions identified above, Facebook's designees testified that Facebook exchanged users' information with a wide variety of businesses Facebook has still not identified, including data brokers. Mr. Papamiltiadis testified that Facebook's partners include 1) device manufacturers and mobile operators; 2) developer partners; 3) publisher companies. Ms. Lee also testified that Facebook exchanged user data with data brokers. Facebook's amended interrogatory responses do not list any of these companies. Thus, Facebook has failed to comply with the Court's Order re: Business Partners Discovery Dispute.

     On March 4, 2021 and March 9, 2021, Plaintiffs sent a letter asking Facebook to amend its interrogatories and identifying other issues regarding Facebook's insufficient responses and objections to Plaintiffs' Fourth Set of Interrogatories. Facebook responded on April 1, 2021 by stating it would not amend its interrogatory responses. Plaintiffs anticipate briefing this issue in accordance with the Discovery Dispute Resolution Protocol.

     **g.**   **Search Terms:** After nearly a year, the search term negotiation process is nearing an end. Pursuant to the Parties' stipulated Search Terms Protocol (Dkt. 573), on February 3, the Parties exchanged their final proposals for Groups 5-8. Since that time, the parties have reached a resolution to remaining disputed terms and submitted a stipulation on March 31, 2021.

**h.   Discovery of Named Plaintiffs:** Since the last discovery conference, Plaintiffs have produced an additional 15,958 documents, totaling 73,385 pages. To date, Plaintiffs have produced 19,657 documents, totaling 84,938 pages including a production as recently as Thursday, April 1, 2021. Facebook has asked Plaintiffs to further supplement their responses and objections to Interrogatory No. 3, and Plaintiffs have committed to doing so.

**i.   Facebook's Privilege Logs:** Last October, Plaintiffs served Facebook with challenges to Facebook's 4,432-entry initial privilege log. In December, Facebook amended its privilege log and insisted that Plaintiffs provide revised challenges to its amended log. Plaintiffs served Facebook with revised challenges to 1,654 log entries on February 19. Facebook has informed Plaintiffs that it intends to provide its substantive response to Plaintiffs' challenges sometime between April 30th and May 31st.

## I.      FACEBOOK'S STATEMENT

Facebook is grateful for the Court's suggestion that the parties retain a mediator to assist the parties in negotiating discovery disputes.  The parties stipulated to retain the Honorable Gail Andler (Retired) of JAMS (Dkt. 644); Facebook looks forward to working with Judge Andler and Plaintiffs to move discovery forward and reduce the number of litigated disputes.  Below Facebook addresses Judge Andler's role, work completed since the March 4 hearing, the Massachusetts Supreme Judicial Court's recent ruling holding that Facebook's ADI materials are privileged and protected work product, and the disputes Plaintiffs raise.

## I.      Role of Discovery Mediator

Judge Andler will attend this week's status conference as the Court suggested.  *See* 3/4/2021 Trans. at 28:23-29:5 ("[W]hat if we were to meet again. . . And then [the mediator] should join us as well.  And then we could also talk about . . . their role.").  Facebook looks forward to discussing a role that will be helpful to the Court and move discovery forward.

Facebook conveyed to Plaintiffs several times its understanding of the Court's instruction that Judge Andler's role and responsibilities should be defined in collaboration with the Court and Judge Andler at tomorrow's hearing.  Yet, after the Court entered a stipulated order appointing Judge Andler as a "discovery mediator," Dkt. 644, Plaintiffs sent an 8-page Rule 53 stipulation to convert her into a Special Master.  Facebook responded (**FB Exhibit A**) explaining the stipulation undermined the parties' agreement and the Court's instructions to retain "a neutral who will help [the parties] work out these things . . . not a special master."  3/4 Trans. at 14:6-9; 14:25-15:2 (the role is "not a decider . . . I don't want to . . . create layers of appeal.").

Plaintiffs then insisted on negotiating an alternate stipulation.  At their request, Facebook sent Plaintiffs a simple agreement (**FB Exhibit B**), reflecting the Court's guidance that the discovery mediator would "help [the parties] talk things through" (*id*. at 15:5) and encourage the parties to "negotiate" their "laments and complaints" (*id*. at 14:21, 14:10).  Plaintiffs sent back wholesale revisions, which they told Facebook were intended to capture the essence of their Rule 53 stipulation.  Plaintiffs then insisted on submitting "competing stipulations" and indicated they would ask the Court to enter a version of their stipulation they have not shared with Facebook.

This back and forth dominated the parties' meet and confers for the better part of two weeks.

Facebook has not seen what Plaintiffs intend to submit, but notes three concerns:

1. Any agreement defining Judge Andler's role should be consensual and consistent with the Court's and Judge Andler's view of what would be most helpful. Facebook told Plaintiffs repeatedly that we did not think it was appropriate for the parties to define Judge Andler's role before speaking with the Court and Judge Andler.

2. Each of Plaintiffs' proposed stipulations has approached mediation as a box to be checked as quickly as possible before litigating a discovery dispute. Facebook intends to use mediation as a meaningful opportunity to resolve disputes through compromise and agreement and has serious concerns that Plaintiffs do not share this perspective.

3. Each of Plaintiffs' proposed stipulations would strip Judge Andler of discretion to work with the parties to address issues on an as-needed basis and to determine when an issue should be litigated. Plaintiffs' proposals include inflexible procedures around how to bring issues to Judge Andler and seek to grant Plaintiffs unilateral authority to abandon mediation in order to bring an issue to the Court.

Facebook looks forward to discussing Judge Andler's role at Tuesday's hearing and then, if needed, working to reach an agreement that reflects the Court's and Judge Andler's guidance.

Facebook has no objection to discussing a potential "science day" (as Plaintiffs suggest), at an appropriate time. But, the parties first need to bring Judge Andler up to speed on the case. Facebook suggests the parties provide Judge Andler background submissions next week. Then each party should meet with Judge Andler independently to address their current concerns, to be followed by a joint meeting to discuss a forward-looking path and an ongoing meeting schedule.

## II.      Progress Since March 4 Hearing

**Search Strings**: The parties reached an agreement on resolving outstanding search string disputes. Search strings will be finalized once the hit counts for email/chat data for Plaintiffs' revised proposal is the agreed-upon mid-way point between the parties' January proposals.

**Document Review**: Facebook now has more than 100 attorneys reviewing documents that hit on the negotiated search strings and is making productions every four weeks.

**Disputes**: Facebook spent an inordinate amount of time since the March hearing responding to a deluge of dispute letters from Plaintiffs raising at least a dozen issues. The parties should work with Judge Andler to narrow or resolve these issues, create an orderly process for raising new issues, and reduce time spent on unnecessary letter writing.

**Briefing**: On March 19, Facebook submitted extensive briefing regarding Plaintiffs' request that Facebook de-designate as confidential materials leaked by a third party.

**Case Schedule**:  Facebook proposed a detailed discovery schedule to Plaintiffs today, with specific timelines for specific tasks, to move the case forward efficiently.

## III.   App Developer Investigation

Plaintiffs told the Court they seek every document from, about, or relating to Facebook's attorney-driven App Developer Investigation.[1]  To support this demand, Plaintiffs relied on a decision from the Mass. Superior Court addressing Facebook's claim of privilege with respect to ADI materials.[2]  On March 24, the Mass. Supreme Judicial Court reversed the Superior Court's ruling about the privileged nature of ADI, holding: "[A]ny confidential communications relating to ADI among Facebook, Gibson Dunn, and other members of the ADI team would almost certainly be privileged."  Dkt. 647; *Attorney General v. Facebook,* Inc., 2021 WL 1115030 at *10 (Mass. Sup. Jud. Ct. Mar. 24, 2021).  The Court also reversed as to work product, holding "Facebook has established that the ADI was initiated . . . in anticipation of litigation." *Id.* at *13.

The Parties' recent briefing about certain ADI privilege log entries was submitted simultaneously.  The Court instructed the Parties to focus their briefs on 20 documents Plaintiffs identified for briefing from Facebook's sample ADI logs.[3]  Plaintiffs dedicated only a few lines to these documents and improperly waged a wholesale attack on Facebook's claim of privilege— to which Facebook has had no opportunity to respond.  *See* Dkt. 611.  The Mass. Supreme Court held definitively that the ADI communications and materials Plaintiffs demand are privileged and protected by the work-product doctrine.  To the extent the Court is inclined to depart from these clear holdings, Facebook requests an opportunity to respond to Plaintiffs' brief.

---

[1] *See* June 19, 2020 Trans. at 11:14-22 (Mr. Ko:  "[O]ur requests with respect to the documents related to the app developer investigation conducted by Facebook are much broader than [the Massachusetts requests]. . . It's documents related to what they've done in the wake of Cambridge Analytica from 2018 to present, ongoing.  You know, all documents related to that."); *see also* July 13, 2020 Trans. at 40:11-12 (The Court:  "Well, they actually do want everything.  They do want everything.")

[2] *See* June 19, 2020 Trans. at 9:1-20 (Mr. Loeser: "[T]hese are the documents that were subject to the order in Massachusetts where Facebook asserted that they were work-product privileged, and those arguments were rejected . . . [T]he order in Massachusetts [rejects] their arguments.")

[3] *See* Jan. 15, 2021 Trans. at 4:19-23 (The Court:  "I was going to say [Plaintiffs] pick 20 [entries].  And then let's just get simultaneous briefs . . . And then I'll review them"); *id.* at 6:15-16 (The Court:  "[S]o you know what to brief.  Whatever it is that meets your burden," as to the 20 entries); *id.* at12:13-15 (The Court: "[Y]ou already logged them.  Right?  It's merely putting down into more paper the analysis that's already been done); *see also id.* at 6:23-7:15.

IV.     **Issues Raised by Plaintiffs**

Facebook looks forward to working with Judge Andler and Plaintiffs to address the disputes Plaintiffs raise but responds briefly to these issues below.

**Document Review**:  Entering a case schedule should resolve any concerns about the pace of Facebook's productions, but Plaintiffs' statements are also wrong.  Since November Facebook has produced more than twice the number of documents Plaintiffs report, and after a production tomorrow Facebook will have produced nearly **250,000** pages since that time.

More importantly, the size of Facebook's recent productions does not reflect the pace of review.  Plaintiffs ignore that Facebook produced **1.5 million pages _before_ search strings were identified**.  These productions include the Facebook documents produced in response to the FTC's document requests in its two related investigations.[4]  Facebook also produced the documents provided to government entities in nine other matters as of April 2020, to the extent responsive to Plaintiffs' RFPs.  A large portion of responsive documents now identified through search strings were already produced.  Compounding this issue, at Plaintiffs' insistence, several search strings are nearly identical to search strings used in government matters.  _See_ Dkt. 388.

On top of this, Facebook is seeing an unusually high volume of plainly non-responsive materials.  This is a result of Plaintiffs' insistence that more than 100 broad Boolean strings be run on dozens of custodians' files from a 13-year period—even Boolean strings intended to target issues relating to data-sharing practices from discrete time periods.  For instance, one of Plaintiffs' primary live allegations is about alleged "whitelisting" practices that occurred for approximately one year around 2015.  But, at Plaintiffs' insistence, the whitelisting search strings are being run on documents collected from dozens of custodians from 2007 through 2020.

This is leading to more than 100 reviewers spending a tremendous amount of time reviewing non-responsive documents that are not even close calls—_e.g._ automated out-of-office messages, resumes, and individual employees' investment materials.  Once search strings are finalized (Dkt. 649), Facebook will assess the extent to which the completion of its review can be expedited by applying Technology Assisted Review to filter out nonresponsive documents.

---

[4] Plaintiffs have repeatedly represented that there is near-complete overlap between the issues in this case and the issues investigated by and settled with the FTC.  _See, e.g._ Dkt. 388.

**30(b)(6) Depositions:**  As Facebook explained in its submission for the March 4 hearing, Dkt. 631, Plaintiffs' complaints regarding the 30(b)(6) depositions are a result of Plaintiffs' refusal to use the depositions as ordered.  Plaintiffs' current demand for counsel's prep materials from the depositions is plainly improper, but Facebook is willing to meet and confer with Plaintiffs (with assistance from Judge Andler as appropriate) to reach a negotiated resolution.

**Materials from Regulatory Actions**:  The Court directed that if someone is "going to be a witness in the case, if they're going to be deposed" and has previously been deposed in one of 10 government matters, Facebook should produce the transcript of their deposition if the testimony covers "the same topics" that are at issue in this case.  (Tr. of Jan. 15 hearing at 31:12–15).  Facebook informed Plaintiffs it is willing to treat all 82 custodians in this case as potential deponents for purposes of this production and identified 11 transcripts from these custodians. Facebook told Plaintiffs it would produce the transcripts on a rolling basis in its monthly productions as it completes its review.  Several transcripts are included in Facebook's April production (to be served tomorrow).  The rest will be included in the May production.

Plaintiffs also sent Facebook a list of ***more than one hundred written discovery requests*** from government matters for which Plaintiffs demand Facebook's responses.  Facebook told Plaintiffs that it is willing to meet and confer with them about this request (with assistance from Judge Andler as appropriate) once Facebook has finished gathering the responses.

**Business Partners**:  Plaintiffs told Facebook they believe the Court intended her Discovery Order on Business Partners (Dkt. 608) to "expand the case" beyond theComplaint and Judge Chhabria's Motion to Dismiss Order to reach *every relationship Facebook has ever had with a third party*.  Plaintiffs now complain that Facebook has not disclosed every third-party relationship it has ever had.  Facebook corresponded extensively with Plaintiffs on this issue and is willing and prepared to continue working through it (with assistance from Judge Andler as appropriate) to avoid relitigating an issue that both Judge Chhabria and this Court have decided.

**Privilege Logs**:  Facebook informed Plaintiffs it would need 30-60 days to work through the 1,654 privilege log challenges they raised, which require Facebook to assess redactions in cloned productions, most of which were made years ago (some more than a decade ago).

Dated: April 5, 2021

Respectfully submitted,

KELLER ROHRBACK L.L.P.

BLEICHMAR FONTI & AULD LLP

By:   */s/ Derek W. Loeser*
     Derek W. Loeser

By:   */s/ Lesley E. Weaver*
     Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice)*
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (admitted pro hac vice)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of April, 2021, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

**CERTIFICATE OF SERVICE**

I, Sarah Skaggs, hereby certify that on April 5, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

Anjeza Hassan
annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs