Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' OPPOSITION TO FACEBOOK INC.'S MOTION IN SUPPORT OF ITS CLAIM OF CONFIDENTIALITY**<br><br>Judge: Hon. Vince Chhabria and Hon. Jacqueline Scott Corley<br>Courtroom: 4, 17th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY ........ 2

III. ARGUMENT ........ 4

A. The Protective Order Does Not Allow Materials in the Public Domain to Be Designated Confidential ........ 4

B. The Motion Is Moot Because the Court Cannot Grant Any Effective Relief ........ 5

C. The Balance of Interests Favors Disclosure ........ 8

1. The Public Interest Favors Access ........ 8

2. Facebook Would Not Be Prejudiced by Publicly Filing Documents in the Public Domain ........ 9

3. Plaintiffs and the Class Would Be Harmed by a Finding of Confidentiality ........ 10

IV. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## Cases

*Almaty v. Ablyazov*, 2018 WL 1229730 (S.D.N.Y. Mar. 5, 2018)....8

*Constand v. Cosby*, 833 F.3d 405 (3d Cir. 2016)....6

*Doe No. 1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012)....1, 5, 6

*Dukes v. Walmart Stores, Inc.*, 2013 WL 1282892 (N.D. Cal. Mar. 26, 2013)....7

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004)....7

*Johnson v. San Francisco*, 2012 WL 104635 (N.D. Cal. Jan. 12, 2012)....7

*Lesar v. U.S. Dept. of Justice*, 636 F.2d 472 (D.C. Cir. 1980)....8

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)....8

*Osen LLC v. U.S. Dept. of State*, 360 F. Supp. 3d 258 (S.D.N.Y. 2019)....8

*Pullman v. Alpha Media Publishing, Inc.*, 624 F. App'x 774 (2d Cir. 2015)....6

*Total Recall Techs. v. Luckey*, 2021 WL 1245357 (N.D. Cal. Mar. 25, 2021)....9

*U.S. v. Smith*, 123 F.3d 140 (3d Cir. 1997)....6

## I. INTRODUCTION

Facebook asks this Court to seal past and future references to 46 documents that are available on public websites, have been discussed in numerous articles in the media, and have been released in coordination with an investigation and report issued by the by U.K. House of Commons' Digital, Culture, Media and Sport Committee ("U.K. DCMS"). Thus, regardless of this Court's order, the contents of the 46 documents will remain publicly available. Facebook's motion burdens the Court in pursuit of a futile and symbolic gesture. As the Ninth Circuit ruled in *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012), the motion is moot because the Court cannot grant the relief requested. Moreover, the Protective Order in this action provides explicitly that its protections "do not cover . . . any information that is in the public domain." Dkt. No. 122, ¶ 3(a). Facebook's motion is meritless and distracts from many more important issues.

Facebook originally produced the documents at issue to Six4Three, an app that sued Facebook in San Mateo County Superior Court in 2015. Produced pursuant to a protective order, the documents include deposition transcripts and internal emails between Facebook's senior executives about its business strategies and their effect on user privacy. In 2018, the documents were produced to members of U.K.'s Parliament under U.K. law by the founder of Six4Three. Facebook has publicly stated that Six4Three's founder violated the terms of the state court protective order by disclosing them to Parliament. Plaintiffs and their counsel played no part in the documents' disclosure.[1]

The U.K. DCMS published some of the documents in 2019. The same documents provided to the U.K. DCMS were subsequently obtained by NBC News and published in a November 6, 2019 report that released almost 7,000 pages of documents from the San Mateo

[1] Though Facebook suggests that Plaintiffs' counsel in this case were involved in the documents' disclosure (see Mem. at 9 & n.3, Dkt. No. 643), the suggestion has no basis in fact and is sanctionable under Rule 11 for its lack of evidentiary support. Plaintiffs request that those references be stricken from Facebook's brief.

County case, including the 46 documents Facebook moves to keep confidential. Thus, these documents have been in the public domain for more than three years. Indeed, the documents remain available on the House of Commons and NBC News websites, and their contents have been discussed in scores of news reports published by national and international newspapers, magazines, and internet news sites. Plaintiffs obtained the single purportedly confidential document attached their earlier filing that animates Facebook's instant motion from the NBC News website more than four months before the same document was produced by Facebook in this action.[2]

Importantly, the documents are relevant to key issues in this case and undermine positions Facebook has taken here, including that CEO Mark Zuckerberg played no role in granular decisions about what private user information was shared with third parties. These are matters of public import and lie at the heart of Plaintiffs' claims. Facebook's request that the Court shroud public documents in secrecy in this action should be denied.

## II. PROCEDURAL HISTORY

On November 24, 2018, the Guardian published an article titled "Parliament seizes cache of Facebook internal papers." Melamed Decl. ¶ 4. The article stated: "Parliament has used its legal powers to seize internal Facebook documents in an extraordinary attempt to hold the US social media giant to account after chief executive Mark Zuckerberg repeatedly refused to answer MPs' questions." *Id.* "Damian Collins, the chair of the culture, media and sport select committee, invoked a rare parliamentary mechanism to compel the founder of a US software company, Six4Three, to hand over the documents during a business trip to London," the article explained. *Id.* "In another exceptional move, parliament sent a serjeant at arms to his hotel with a final warning and a two-hour deadline to comply with its order. When the software firm

[2] Facebook frames its motion as concerning 46 documents it designated confidential that Plaintiffs identified as publicly available. Plaintiffs have only attached or referenced one of the 46 documents in a filing in this action. Dkt. No. 526, Ex. C. Regardless, Plaintiffs respond to the motion as framed, as the rationale applicable to the single document they filed is equally applicable to the 45 other documents.

founder failed to do so, it's understood he was escorted to parliament. He was told he risked fines and even imprisonment if he didn't hand over the documents." *Id.*

On December 5, 2018, Damian Collins MP, Chair of the U.K. DCMS, published a "[s]ummary of key issues from the Six4Three files," which attached certain of the documents acquired by Parliament from Six4Three. *Id.* ¶ 5. On February 18, 2019, the Digital, Culture, Media and Sport Committee of the House of Commons published a report titled "Disinformation and 'fake news': Final Report." *Id.* ¶ 6. The Report quotes and discusses many of the documents Parliament acquired from Six4Three. *See id.* at ¶¶ 77-117 (section of the report titled "Facebook and the Six4Three case"). Links to certain of the documents remain available at the URL where the December 5, 2018 summary and February 18, 2019 Report are published. *Id.* ¶¶ 3, 5-6.

On November 6, 2019, NBC News published "almost 7,000 pages of leaked documents showing how Facebook treated user data as a bargaining chip with external app developers," which were produced in the San Mateo County action, most which were designated confidential or highly confidential by Facebook. *Id.* ¶ 7. The article notes that the documents "appear[] to be the same as items obtained by the British Parliament in late 2018." *Id.* Plaintiffs obtained the public versions of these documents from the NBC News website on November 19, 2019. *Id.*

The article remains available at the NBC News website, which continues to contain live links to the documents themselves. *Id.* ¶ 3. Numerous articles have linked to or described the documents in the Collins summary, the U.K. DCMS Report, and the NBC News article. *E.g. id*. ¶ 8. On April 3, 2020, Facebook separately produced documents including identical information and improperly designated them confidential and highly confidential, more than four months after Plaintiffs had publicly obtained them. *Id.* ¶ 11.

Pursuant to this case's operative protective order, Plaintiffs sent Facebook a letter on August 21, 2020 challenging the company's designation of 45 of the documents disclosed by the Report and NBC News as confidential or attorneys' eyes only. *Id.*, Ex. 1. The letter explained that each document was publicly available on the internet and provided a link to each separate document. *Id*. Although the Protective Order calls for the parties to meet and confer

within fourteen days of the date Plaintiffs sent their letter, Facebook did not respond. Dkt. No. 122, ¶ 6.2; *see also* Melamed Decl., Ex. 1 at 6 (Plaintiffs' August 21, 2020 letter) ("Paragraph 6.2 of the protective order requires the parties to meet and confer by phone o[r] videoconference within two weeks of this letter. Plaintiffs look forward to meeting and conferring on or before that date.").

On September 28, 2020, Plaintiffs filed one of the publicly available documents as Exhibit C to an opposition and cross-motion concerning discovery. Dkt. No. 526, Ex. C. The same day, Plaintiffs served Facebook with a motion to seal. Four days later, Facebook filed an emergency administrative motion to remove Exhibit C from the public docket and seal Exhibit C along with certain other information in Plaintiffs' brief. Dkt. No. 530. The Court locked the relevant docket entry and ordered the parties to meet and confer regarding Facebook's confidentiality claim. The parties did so but did not reach agreement. Facebook's motion followed.

## III. ARGUMENT

### A. The Protective Order Does Not Allow Materials in the Public Domain to Be Designated Confidential

The Protective Order resolves this dispute. It provides that "the protections conferred by this Stipulation and Order do not cover" "any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order[.]" Dkt No. 122, ¶ 3(a).

Facebook does not dispute that the 46 documents at issue (1) were in the public domain when they were disclosed to Plaintiffs and (2) became part of the public domain for reasons unrelated to a violation of the Protective Order. Either of these conditions is independently sufficient to waive the protections conferred by the Protective Order, so the 46 documents cannot be confidential. Nor can other documents that are in the public domain.

Facebook ignores not just the substance of the Protective Order in this case, but also its procedural requirements. The Protective Order requires that if a party challenges a

confidentiality designation, "the Designating Party shall file and serve a motion to retain confidentiality . . . within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier." Dkt. No. 122, ¶ 6.3. Failure to do so "shall automatically waive the confidentiality designation for each challenged designation." *Id.*

Plaintiffs sent Facebook a letter on August 21, 2020 challenging the confidentiality designation of 45 of the 46 documents at issue here and inviting the company to meet and confer.[3] Melamed Decl., Ex. 1. Despite that request, Facebook did not meet and confer with Plaintiffs. Nor did Facebook file or serve a motion to retain confidentiality within 21 days of the initial notice of the challenge. Rather, Facebook's first communication about these documents was the filing of an emergency administrative motion on October 2, 2020, 42 days after Plaintiffs' initial notice of challenge. Dkt. No. 530. Thus, Facebook's confidentiality designations for 45 of the 46 documents at issue is "automatically waive[d]." Dkt. No. 122, ¶ 6.3.

**B. The Motion Is Moot Because the Court Cannot Grant Any Effective Relief**

In addition to the Protective Order's prohibition against the 46 documents remaining secret, Facebook's request for secrecy is moot because the Court cannot grant any effective relief.

In analyzing a similar circumstance, the Ninth Circuit reached the commonsense conclusion that once a fact is widely available to the public, a court cannot grant any "effective relief" to a person seeking to keep that fact a secret. We doubt, because of the information's availability on the internet, that enjoining further disclosure by the parties will "narrow [any further] dissemination." *Reed*, 697 F.3d at 1240 (quoting *U.S. v. Smith*, 123 F.3d 140, 155 (3d

---

[3] Plaintiffs' August 21, 2020 letter inadvertently omitted one of the publicly available documents that Facebook's motion addresses. Thus, Facebook's waiver applies to 45 of the 46 documents at issue.

Cir. 1997)). Because the issue was moot, the Ninth Circuit lacked jurisdiction to consider the appeal. *Id.* at 1241.

The Third Circuit came to the same conclusion in *Constand v. Cosby*, 833 F.3d 405 (3d Cir. 2016). There, the New York Times obtained documents while litigation was pending regarding whether they should be designated confidential. *Id*. at 408. Within hours, four more news organizations had published stories regarding the contents of the documents. *Id.* Relying in part on Ninth Circuit law, the Third Circuit ruled Cosby's motion was moot; regardless of how the documents had entered the public domain, the court was powerless to remove them. *Id.* at 412. Just as in *Constand* and *Reed*, the materials as issue here are in the public domain, the Court is powerless to remove them, and Facebook's requested relief is therefore moot.

Indeed, a court recently rejected Facebook's contention that the exact documents at issue here should remain confidential. In *Styleform IT v. Facebook, Inc.*, Facebook argued that documents initially produced as confidential in the Six4Three litigation in San Mateo County, which have since been made public, should remain confidential in the *Styleform* action. Melamed Decl., Ex. 2 at 9. The court disagreed: "Documents that are in the public domain as a result of leaks in other litigation are in the public domain." Melamed Decl., Ex. 3 at 2.

The authority Facebook cites for the proposition that the Court should maintain the confidentiality of the 46 documents at issue is almost uniformly inapposite. The lone exception is that one of the cases on which Facebook relies, *Pullman v. Alpha Media Publishing, Inc.*, 624 F. App'x 774 (2d Cir. 2015), undermines its argument. While *Pullman* affirmed a district court's decision to redact the mention of a settlement amount in a settlement transcript despite its prior disclosure in an earlier transcript, it contrasted the situation to a public disclosure of a settlement that had been "'disseminated prominently' in a New York Times article." *Id.* at 779. In the latter circumstance, the court "had no means 'to put the genie back [in the bottle.]'" *Id.*

(modification in original) (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004)). So too here.[4]

The other cases Facebook relies on are inapt. In *Dukes v. Walmart Stores, Inc.*, the court merely held that the unauthorized disclosure of a legal memorandum did not waive attorney-client privilege. 2013 WL 1282892, at *1 (N.D. Cal. Mar. 26, 2013). Neither privilege nor waiver is at issue here. In *Johnson v. San Francisco*, the court held documents that were inadvertently filed and promptly removed were still confidential. 2012 WL 104635 at *4 (N.D. Cal. Jan. 12, 2012). Because the documents had been promptly removed, they did not remain publicly available, and the court was able to issue an order that provided effective protection. Here, in contrast, the 46 documents at issue remain publicly available and were not inadvertently

---

[4] The futility of any attempt to put the genie back in the bottle here is illustrated by the mere titles of some media reports covering the disclosure of Facebook's documents:

- *Facebook's Zuckerberg at Center of Emails Released by U.K. Parliament*
- *Facebook allegedly offered advertisers special access to users' data and activities, according to documents released by British lawmakers*
- *Facebook Emails Show Its Real Mission: Making Money and Crushing Competition*
- *Facebook let some companies exploit users' friends data, U.K. email dump alleges*
- *Internal Facebook documents highlight how valuable user data is*
- *Internal Facebook emails show how the company considered giving others special access to your personal data*
- *Facebook's UK Document Dump Suggests User Privacy Was Sacrificed for Growth*
- *Confidential emails sent by Facebook executives leaked online*
- *Facebook's Mark Zuckerberg used users' data as a bargaining chip to consolidate company's power, leaked documents reportedly reveal*
- *Facebook fought to keep a trove of thousands of explosive internal documents and emails secret. They were just published online in full.*

Melamed Decl. ¶ 8.

filed by one of the litigants. And in *Almaty v. Ablyazov*, the court found that two parties intentionally leaked confidential information to use it in a different action, then asked the court to lift the confidentiality designation due to the leak. 2018 WL 1229730 at *6 (S.D.N.Y. Mar. 5, 2018). The court denied their request and instead sanctioned them; lifting confidentiality in that circumstance would have rewarded their decision to leak confidential documents. *Id.* at *5, 7. Here, however, Plaintiffs here played no role in the disclosure of the documents at issue.

Facebook also cites two cases involving circumstances where courts found voluntary disclosure insufficient to waive valid FOIA exemptions. *Osen LLC v. U.S. Dept. of State*, 360 F. Supp. 3d 258 (S.D.N.Y. 2019); *Lesar v. U.S. Dept. of Justice*, 636 F.2d 472 (D.C. Cir. 1980). Facebook's motion does not concern FOIA. Nor is either case informative. Each found a public disclosure insufficiently matched to the relevant governmental documents to waive the applicable FOIA exemption. *See Osen*, 360 F. Supp. 3d at 265 ("the disclosed documents . . . by no means match or are as specific as the information" at issue); *Lesar*, 636 F.2d at 491 (only "some of the information in these records has found its way into the public domain"). In contrast, the documents at issue here are not merely "as specific as the information" widely and publicly published; they are one and the same.

**C. The Balance of Interests Favors Disclosure**

**1. The Public Interest Favors Access**

Courts have long recognized the public's strong interest in maintaining access to proceedings in the federal courts. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents") (citations omitted). To be sure, the general right does not reach information properly designated confidential under an appropriately narrow protective order. But the general right is also not limited by the designation of publicly available documents as confidential.

The public's strong interest in access to the 46 documents at issue here is demonstrated by the number of news organizations that have already reported on them. *E.g.*, Melamed Decl.,

¶¶ 4, 7-8. Indeed, the interest is even stronger in this specific case, which is the first instance where these documents are considered in the context of arguments that Facebook unlawfully disseminated the personal information of a putative class of tens of millions of U.S. citizens.

**2. Facebook Would Not Be Prejudiced by Publicly Filing Documents in the Public Domain**

Facebook asserts that it would be prejudiced if the confidentiality designation were removed because the materials at issue "contain sensitive business information that could cause Facebook competitive harm if disclosed widely." Mem. at 10. Thirty-five of the documents are from 2013 or before and the latest document is from 2015. Any information they contain is therefore almost certainly out of date and irrelevant to Facebook's current competitive position. *See, e.g., Total Recall Techs. v. Luckey,* 2021 WL 1245357, at *1 (N.D. Cal. Mar. 25, 2021) ("The information contained in the documents [from 2012] is stale, having occurred years ago. Even if the documents had a figment of needed privacy when they were fresh, that time has long since passed."). Regardless, even assuming that the documents are relevant to Facebook's present competitive position (they're not), its competitors, such as Google, Amazon, and Baidu, are among the most sophisticated enterprises in the world. It therefore strains credulity for Facebook to assert its competitors would find the documents "difficult to specifically locate without having seen Facebook's productions." Mem. at 10. To the contrary, it is all but certain that Facebook's competitors reviewed and digested the information contained in the documents when they were released by Parliament, NBC News, and other media.

Facebook also asserts that publicly filing the documents would compound Six4Three's wrongful dissemination because it would fail to slow or reduce the further dissemination of the confidential information. These documents have already been disseminated by Parliament and NBC News, and have been reported on by, among a long list of others, the Wall Street Journal, the Washington Post, the New York Times, the Chicago Tribune, the Guardian, the BBC, the New Yorker, CBS News, Fox News, Vox/Recode, Axios, the Associated Press, Slate, Huffington Post, Business Insider, Forbes, CNET, CNBC, the Columbia Journalism Review, and Wired. Melamed Decl., ¶ 8. The dissemination has already occurred. Publicly filing a

subset of the documents that were already released publicly will have a *de minimis* impact on the further dissemination of information Facebook continues to futilely call confidential.

Third, Facebook asserts that disclosure of the 46 documents here will risk disrupting the ongoing proceedings against Six4Three in San Mateo Superior Court. Mem. at 11. Facebook tries to force-fit this assertion into the abstention doctrine, whereby federal courts abstain from entering orders interfering with pending state court proceedings. *Id.* Facebook contends that lifting the confidentiality protections on these documents could "disturb the state court's full menu of potential remedies," but doesn't say how. *Id.* There is nothing preventing Facebook from seeking whatever sanctions it believes warranted against Six4Three in San Mateo Superior Court, but the "potential remedies" do not include revoking the publication and discussion of these documents by Parliament, NBC News, or any of the other sources where they are discussed or made available.[5]

Relatedly, Facebook asserts that it will be prejudiced in seeking sanctions in San Mateo Superior Court because Six4Three has argued that Facebook has not taken sufficient steps to protect the documents. *Id.* at 12. Facebook's motion itself provides it the ability to contend it has taken aggressive steps to protect the documents. But that does not mean the Court should indulge the fiction that the documents here are confidential despite being available to anyone with an internet connection.

**3. Plaintiffs and the Class Would Be Harmed by a Finding of Confidentiality**

Even though these documents are available to Plaintiffs and the public regardless of whether Facebook's confidentiality designation is upheld, harm will result in at least two ways if the documents remain sealed. First, Plaintiffs seek to represent a class of millions of individuals. Sealing the documents and references to them in the parties' briefing will make it

[5] Even if the Superior Court attempted to do so – a move that would have serious First Amendment implications – that attempt could not work for practical reasons, since it does not have authority over the U.K. House of Commons.

more difficult for non-named class members to understand the significance of the hidden information in context, which will impair their ability to be fully informed. On the other hand, permitting discussions of these documents in the parties' briefs will allow class members to learn how, while Facebook publicly boasted of its commitment to protecting its users' privacy, Mr. Zuckerberg privately determined that user privacy was less important to Facebook than its relationships with its business customers. Second, Plaintiffs fear that if the Court countenances this effort, it will implicitly give its imprimatur to Facebook's wholesale and unjustified designation of documents and testimony as confidential, highly confidential, and attorneys' eyes only. These designations increase the burdens on Plaintiffs of litigating this action while further unduly restricting class member (and public) access to information that should be made available in this litigation.

## IV. CONCLUSION

Facebook moves to keep confidential and sealed in this action documents that are already fully available to the public from a Parliamentary Report and scores of news organizations. Rather than grappling with that reality, Facebook's motion focuses on whether the documents were improperly disclosed by a company that is not a party here. That is not a question properly before this Court. Rather, the only question for the Court is whether it should grant a motion to maintain confidentiality designations and keep under seal documents produced in this case that are already a matter of public record. It shouldn't.

Dated: April 19, 2021

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By: */s/ Derek W. Loeser*
Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice)*

BLEICHMAR FONTI & AULD LLP

By: */s/ Lesley E. Weaver*
Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)

Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of April, 2021, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

**CERTIFICATE OF SERVICE**

I, Lesley E. Weaver, hereby certify that on April 19, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Lesley E. Weaver*
Lesley E. Weaver