# EXHIBIT 2

1  Christopher M. Burke (CA 214799)
   David H. Goldberger (CA 225869)
2  Kate Lv (CA 302704)
   **SCOTT+SCOTT**
3    **ATTORNEYS AT LAW LLP**
   600 W. Broadway, Suite 3300
4  San Diego, CA  92101
   Telephone: 619-233-4565
5  Facsimile:  619-233-0508
   cburke@scott-scott.com
6  dgoldberger@scott-scott.com
   klv@scott-scott.com
7
   Kristen M. Anderson (CA 246108)
8  **SCOTT+SCOTT**
     **ATTORNEYS AT LAW LLP**
9  The Helmsley Building
   230 Park Avenue, 17th Floor
10 New York, NY 10169
   Telephone: 212-223-6444
11 Facsimile:  212-223-6334
   kanderson@scott-scott.com
12
   *Counsel for Plaintiff Styleform IT*
13

Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (*pro hac vice*)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

ELECTRONICALLY
**D**
*Superio  Cour  o  California,*
*Count  o  Sa  Francisco*

**02/16/2021**
**Cler  o  th  Court**
BY JUDIT  NUNEZ
Deput  Clerk

14       [Additional counsel on signature page.]

15            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                   **COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| 17  STYLEFORM IT, a Swedish sole proprietorship,<br>18<br>19                    Plaintiff,<br>20        v.<br>21  FACEBOOK, INC., a Delaware corporation;<br>22  MARK ZUCKERBERG, an individual; and<br>    DOES 1 through 20, inclusive,<br>23                    Defendants. | Case No. CGC-18-571075<br><br>**JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS**<br><br>Dept.:           304<br>Judge:          Anne-Christine Massullo<br>SAC Filed:    September 8, 2020<br>Trial Date:    October 3, 2022 |

24

25

26

27

28

The Court held a Case Management Conference ("CMC") in the above-captioned case on February 4, 2021. Following the CMC, the Court issued an order, directing the parties to either (1) file a joint stipulation and proposed protective order that will govern this matter, or (2) file competing proposed protective orders accompanied by a joint statement addressing the differences between the two proposals. Plaintiff Styleform IT ("Styleform") and Defendants Facebook, Inc. ("Facebook") and Mark Zuckerberg have met and conferred on a proposed protective order and have not reached complete agreement on a joint proposal. Accordingly, the Parties hereby submit Styleform's proposed protective order as Exhibit A and Defendants' proposed protective order as Exhibit B. The Parties state their respective positions addressing the differences between the two proposals below. In addition, each Party has highlighted in its proposed protective order language that differs from the language proposed by the other Party's proposed protective order. The Parties request a ruling on these disputed matters.

## I.   **Preliminary Statement**

### a.   **Plaintiff's Position**

Plaintiff has sought to accommodate Defendants' concerns regarding the protection of their confidential information and, in doing so, agreed to provisions that go beyond those included in a standard protective order in a commercial dispute such as this. *See e.g.*, broad and permissive definitions of "Confidential Information" and "Highly Confidential Information" in §2 and heightened storage requirements outlined in §7.2. The remaining disputes center on Defendants' attempts to not only import, but extend, certain heightened requirements from the U.S. District Court for the Northern District of California's model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("N.D. Cal. Patent Model") (available at: https://www.cand.uscourts.gov/forms/model-protective-orders/).

The N.D. Cal. Patent Model, however, is not an appropriate precedent on which to base the present protective order, as this case does not necessitate the exchange of "extremely sensitive" confidential information upon which that model stipulation is predicated. *See* N.D. Cal. Patent Model, §2.8. As the Court noted at the February 4, 2021 case management conference, the theory of this case is relatively

straightforward, and discovery will focus upon "[Facebook's] platform[], what [Facebook] did, and creating a timeline about decisions that were made, when they were made, when they were made public, what was told to the developers, what was not told." Transcript of Remote Proceedings, 26:1-5. These issues do not, on their face, implicate the disclosure of trade secrets, sensitive research and development material, or other items that give rise to competitive concerns. Moreover, the principal events at issue here occurred several years ago and have been subject to significant public scrutiny in recent times, blunting potential competitive concerns. In these circumstances, it would be disproportionate to burden the Court, the Parties, and their vendors with highly restrictive, complicated, and overly technical obligations proposed by Defendants.

### b.   Defendants' Position

A clear protective order – one that does not contain loopholes that would allow for misuse – is essential to protecting Facebook's confidential and highly confidential information. While there is a need for a carefully-crafted and robust protective order in all cases where confidential and highly confidential information may need to be produced, the need is heightened given the history here.

In a lawsuit brought by another app developer, *Six4Three LLC v. Facebook, Inc. et al.*, Case No. CIV533328 (San Mateo Sup. Ct.), Six4Three and its former counsel – who originally represented Styleform in this matter – leaked thousands of pages of Facebook's confidential and highly confidential information in violation of both the stipulated protective order and other court orders (including an order specifically preventing disclosure of the documents). *See* Order re: Facebook's Motion to Open Discovery and to Compel ("Six4Three Mar. 15, 2019 Order"), *Six4Three LLC v. Facebook, Inc., et al.*, Case No. CIV533328 (San Mateo Sup. Ct. Mar. 15, 2019).[1] Those documents, which were designated under a protective order and leaked in violation of multiple orders, are now out in the "wild" and have been widely disseminated on the internet and in various media reports.

---

[1]    *California judge condemns startup for giving secret Facebook papers to UK*, The Guardian, available at https://tinyurl.com/4p3ru8wc (Nov. 30, 2018).

Although no protective order can provide absolute protections if litigants and lawyers are determined to leak protected information even in violation of court orders, a robust protective order that promotes transparency as to who is receiving protected information and that eliminates ambiguity as to what can be done with it is the first, critical step in curtailing abuse.  Indeed, it is a cornerstone of civil discovery that litigants have confidence that they can produce documents in discovery with adequate protections in place to prevent intentional or inadvertent misuse.

As explained further below, Styleform's proposed protective order contains numerous loopholes that would allow for misuse of Facebook's confidential and highly confidential information.  By contrast, Facebook's proposal would provide for appropriate protections while still enabling the Parties to make proper use of disclosed material in this litigation.  Facebook should not have to worry that its confidential information turned over in discovery will improperly find its way into the hands of the press or others, but experience has shown these concerns are well-founded.  Defendants respectfully request that the Court enter their proposed protective order.  Given the importance of these issues, Defendants additionally request that, if the Court is considering adopting Styleform's proposals, Defendants have an opportunity to be heard before the Court rules.

## II.  Definition of Expert and Procedure for Objecting to Disclosure of Protected Material to Experts

### a.  Plaintiff's Position (Sections 2.7, 7.3(c), 7.4(b), 7.5)

Plaintiff objects to Defendants' proposal to incorporate and extend various optional provisions from the N.D. Cal. Patent Model, which serve to grant it unwarranted advantage and control in the litigation, and over Plaintiff's experts in particular.  These provisions are unwarranted for at least five reasons.

First, the N.D. Cal. Patent Model clause relates to Ninth Circuit case law which is not generally accepted outside that federal judicial circuit.  *See e.g.*, *Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 CIV. 1559 RWS, 2015 WL 4597546, at *2 (S.D.N.Y. July 30, 2015) (collecting cases requiring "exceptional circumstances" for disclosure of consulting expert's identity); *MGP Ingredients, Inc. v.*

*Mars, Inc.*, No. CIVA 06-2318 JWLDJW, 2007 WL 756645, at *4 (D. Kan. Mar. 8, 2007) (party seeking disclosure of consulting expert's identity "carries a heavy burden" in demonstrating the existence of exceptional circumstances).

Second, Defendants' proposal does not accurately reflect Californian state law (which governs here) on the expert disclosure issue: "The identity and opinions of a party's retained experts are generally privileged unless they are going to testify at trial." *Schreiber v. Estate of Kiser*, 22 Cal. 4th 31, 37 (1999). *See also* Cal. Prac. Guide Civ. Pro. Before Trial, Ch. 8C-4, [8:213] ("identities and opinions of experts retained by counsel *solely* as a consultant . . . are entitled to qualified "work product" protection"); Cal. Civ. Ctrm. Hbook. & Desktop Ref. §33:1 (2020 ed.) (same, noting further that whether a parties' retained expert "will testify at trial need not be disclosed until shortly before trial."). By demanding the upfront disclosure of both testifying and non-testifying experts, Defendants propose that Plaintiff be required by court order to make disclosures earlier than required under the CCP, and to include in those disclosures information they are not entitled to under California law. What's more, Defendants' proposal grants to themselves a unilateral veto in the expert disclosure process, which would ensure that Plaintiffs will have no certainty that it can even work with an expert until after the objection process has played out. Not surprisingly, Plaintiff (despite searching) has not found a California state court case which imposed an obligation similar to that proposed by Defendants.

Third, the N.D. Cal. Patent Model optional provisions proposed by Defendants are designed to address the concern, highlighted by the Ninth Circuit, that an expert's receipt of protected material might give rise to "substantial risk" that the information will be misused, typically because of that expert's ongoing relationship's with the producing party's competitors. *See e.g.*, *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *13 (N.D. Cal. June 13, 2019). These concerns are not present here. As noted above, discovery will not likely entail extremely sensitive material of the kind that might give rise to competitive concerns. Moreover, the parties have already agreed that the one kind of information that might generate such concerns, Source Code, will be the subject of further meet and

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

confers regarding the terms of its disclosure in the event that it needs to be produced.  *See* §§2.19 and 14.6.

Fourth, Defendants seek to extend the N.D. Cal. Patent Model to place further restrictions on Plaintiff by including not just past, present and future "employees of a Party or of a Party's competitor", but also their "contractor[s]."  Given the size of Facebook, and its expansive views on which applications and businesses it competes with, this is a substantial and unwarranted restriction.  Defendants also drastically extend the disclosures the N.D. Cal. Patent Model calls for under §7.4(a)(2).

Fifth, Plaintiff's proposal provides an adequate framework to address Facebook's concerns that its information may be misused by Plaintiff's experts.  For any expert receiving Confidential or Highly Confidential Information, the Receiving Party providing the information shall first obtain in writing from expert her signature on the "Acknowledgment and Agreement to Be Bound" (Exhibit A), which includes the expert's agreement to be bound by the Protective Order and her agreement to submit to the Court's jurisdiction solely for the purposes of applying or enforcing the Protective Order. The Receiving Party's counsel is obligated to keep and maintain these written acknowledgments/agreements.  In the unlikely event of a dispute or other issue, Facebook would retain to ability to move to compel the production of the acknowledgement of the "Acknowledgment and Agreement to Be Bound" (Exhibit A). Similar protections were adopted in *Pep Boys - Manny, Moe & Jack v. Summit Tire & Auto Serv., Inc.,* No. 2:18-CV-02566, 2018 WL 6588530, at *2 (W.D. Tenn. Sept. 4, 2018).

### b.    Defendants' Position (Sections 2.7, 7.3(c), 7.4(b), 7.5)

Providing Confidential or Highly Confidential material to a past, current, or anticipated employee or contractor of a Party or a Party's competitor, solely because that person has been hired as an expert (broadly define to include not only expert witnesses, but also consultants and investigators) in this litigation, creates a substantial risk of Facebook's confidential information being used in violation of the protective order, whether intentionally or inadvertently.  The harm that would come from misuse of Protected Material – which, by definition, includes information involving trade secrets or confidential business or financial information – could be incalculable.  Moreover, it would be nearly impossible for

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

Facebook to police whether an expert disclosed or misused its Protected Material – especially because, under Styleform's proposal, Facebook would have no idea to whom Protected Material was being disclosed.  And once the harm is done, it cannot be undone.

For example, if Styleform retains an expert or investigator who works for a competitor of Facebook, it is unrealistic to assume that she will be able to mentally cordon off the Confidential or Highly Confidential information she receives and consider it only when working on this litigation; rather, there is a substantial risk that the expert or investigator – whether intentionally or inadvertently – would disclose or use Facebook's Confidential or Highly Confidential information at her job.  Similarly, Styleform's proposal could result in a Party receiving Highly Confidential Information that it would otherwise not be entitled to receive under the terms of the protective order.

Moreover, the risk of intentional misuse by experts is very real – as these parties well know.  In *Six4Three*, the plaintiff's former counsel – who also formerly represented Styleform in this matter – orchestrated a scheme with Six4Three's purported "expert" to leak Facebook's confidential information to the press.  See Defendants' Revised Statement of Contentions and Anticipated Proof at ¶¶51-54, *Six4Three LLC v. Facebook, Inc., et al.*, Case No. CIV533328 (San Mateo Sup. Ct. Aug. 6, 2020) ("Six4Three Contentions"); Six4Three Mar. 15, 2019 Order at 4 (describing evidence of Six4Three's principal and counsel "revealing or discussing confidential information produced by Facebook with third parties and using a retained expert as a source for the news media").  Facebook was not notified that this expert had been retained or was receiving Facebook's confidential and highly confidential information until after the documents had already been disclosed not only to the expert, but also to third-party news outlets.  See Six4Three Contentions ¶199 (quoting Six4Three's counsel as stating that the news article about the leaked documents could not identify as an expert the person they were using to disclose Facebook's confidential information and claiming, "We have no obligation right now to disclose a new expert witness to them").

Because the potential harms are so great, two protections are critical to safeguarding Facebook's confidential and highly confidential information.  First, Defendants propose that "expert" should be

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

defined to exclude past, current, or anticipated employees or contractors of a Party or a Party's competitor. Second, Defendants propose an efficient procedure for notice and an opportunity to object before Protected Material is disclosed to any expert. These provisions would not interfere with each Party's ability to retain appropriate experts and would not be burdensome to comply with. Provisions of the kind Defendants propose are commonplace. Merely by way of example:

- The Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("N.D. Cal. Model Order") defines expert (among other things) as someone who "is not a past or current employee of a Party or of a Party's competitor" and "at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor." It also contains a procedure for notice and objections substantially the same as that proposed by Defendants.[2]

- The San Mateo County model protective order with a double level of confidentiality ("San Mateo County Model Order") provides for notice and opportunity to object before disclosure of confidential information to an expert who is employed by the defendant or a competitor.[3]

- The protective order entered in *Blackberry Ltd. v. Facebook, Inc.*, Case No. 18-cv-01844-GW-KS, Dkt. No. 99 (C.D. Cal. Dec. 14, 2018) ("Blackberry Protective Order"), and the protective order stipulated to in *Ballejos v. Facebook*, Case No. 18-CIV-03607 (San Mateo Sup. Ct. Dec. 6, 2019) ("Ballejos Protective Order"), implemented similar limits on providing protected material to experts who are past, current, or anticipated employees of Facebook or a competitor and contained a procedure for notice and objections substantially the same as that proposed by Defendants.[4]

### III.    Scope

####    a.    Plaintiff's Position (Section 3)

The obligations imposed by this Protective Order should not apply to information that loses its confidential character through no fault of the Receiving Party. This is the standard approach, even under the N.D. Cal Patent Model meant for cases needing heightened protections. *See* N.D. Cal Patent Model, §3. Moreover, Defendants' proposal that the Protective Order continue to apply to information which becomes public through the breach of an order in another case is impracticable. The parties should not be required to assess how each and every piece of information came to be in the public domain before relying

---

[2]    N.D. Cal. Model Order, §§2.7, 7.4, *available at* https://tinyurl.com/1fdgatas (accessed Feb. 14, 2021).

[3]    San Mateo County Model Order, §4(c), *available at* https://tinyurl.com/s4exnxqu (accessed Feb. 14, 2021).

[4]    *Blackberry* Protective Order, §§2.6, 7.5; *Ballejos* Protective Order, §§2.8, 7.4.

1 upon it, particularly given the widespread reporting of the various regulatory investigations of Defendants'

2 activities.

3          **b.**      **Defendants' Position (Section 3)**

4         Confidential or Highly Confidential Information should not lose protection if it is in the public

5 domain only as a result of a violation of a court order. Specifically, Facebook's confidential information

6 should not lose protection merely because people have shown themselves to be willing to violate court

7 orders, and Styleform's proposal incentivizes the leaking of Facebook's confidential information. Here,

8 as noted above, Styleform's original counsel were responsible for leaking thousands of pages of

9 Facebook's confidential documents produced in another case, in violation of both the original protective

10 order in that case and a specific order by Judge Swope directing Six4Three not to provide Protected

11 Material to third parties. Styleform should not now get the benefit of its prior counsel's misconduct by

12 not having to maintain protections for those documents and by disseminating them further.

13    **IV.**      <u>**Inadvertent Production of Privileged or Otherwise Protected Material**</u>

14          **a.**      **Plaintiff's Position (Section 13(d))**

15         Plaintiff seeks to establish clear guidelines to avoid unnecessary motion practice in the case.

16 Plaintiff propose a provision requiring that any clawback of a document be asserted within 21 days of the

17 document's use. The clarity provided by Plaintiff's proposal will help both parties understand their

18 options, and will provide a framework to deal with the problems that result when clawbacks are asserted

19 months after a document is presented in a case. Plaintiff's proposal addresses this practical reality and

20 avoids a situation where a party could wait to claw back purportedly privileged documents until long after

21 discovery has closed. This requirement does not place any undue burden on the Parties, all of which have

22 the benefit of sophisticated counsel; has the benefit of bringing finality to the issue quickly; and reflects

23 the principle that clawback issues should be addressed in as prompt a manner as practicable.

24          **b.**      **Defendants' Position (Section 13)**

25         Styleform's proposal creates arbitrary rules under which a Party would be precluded from clawing

26 back privileged information if it does not take action within 21 days of certain events. A bright line rule

27

28

of that sort is not appropriate, and appears intended to exploit the disproportionate burdens of discovery (Defendants are likely to produce significantly more documents than Styleform) to create improper limitations on Defendants' rights to assert privilege and clawback inadvertently produced documents. Clawback of privileged documents should be handled under the simple procedures provided for by California law.

**V.     Export Control/Territorial Limits**

      **a.     Plaintiff's Position (Section 14.4)**

Plaintiff is committed to working with Defendants to ensure that materials actually subject to export control regulations are treated accordingly, and has consequently agreed to §14.3 (which is taken from optional clause §14.3 of the N.D. Cal. Patent Model).

However, proposed §14.4 goes beyond the N.D. Cal. Patent Model and effectively requires the Parties to assume that all Protected Material is subject to export regulation, and that those export regulations apply to every country other than the U.S. and Sweden.  Not only is this both unnecessary and unworkable, but it creates a significant risk that a Party may risk breaching the Protective Order through a multitude of acts that will not engage any relevant export regulation.  For, example, Plaintiff's Counsel would arguably breach the proposed section if such Counsel accessed his or her emails on a visit to Counsel's London, UK office, if any one of those emails contain a mere summary of a Protected Materials, notwithstanding the heightened email security agreed by the Parties.  *See* §§3 (Scope) and 7.2.

Defendants rejected Plaintiff's proposed compromise of limiting proposed §16.4 to those Protected Materials properly designated as being subject to export control.  In so rejecting Plaintiff's offer, Defendants have not sought to detail what material, likely to be disclosed in this matter, will be subject to export controls.

      **b.     Defendants' Position (Section 14.4)**

To balance the need to protect Facebook's Protected Material from being disseminated abroad by people who may not be within this Court's jurisdiction, while recognizing that Styleform is a Swedish entity, Defendants have proposed that Protected Material may not leave the territorial boundaries of the

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

United States or Sweden, and that Highly Confidential may not leave the territorial bounds of the United States.  Defendants have also proposed that, if a Receiving Party wishes to use at deposition any Protected Material that cannot be taken out of the United States, the Producing Party will make any associated witness within the Producing Party's control available for a deposition in the United States.  There is simply no legitimate reason why Protected Material in this case should have to leave the United States or Sweden.  And, to the extent a specific, legitimate need arises, Styleform would be permitted under the terms of the protective order to seek an exception.  *See* Protective Order Section 14.7 ("Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.").  Moreover, this approach avoids any potential issues that may arise should such materials be taken outside the United States.  For example, as discussed, the principal of Six4Three took Facebook's confidential materials to the United Kingdom, then disclosed to the DCMS Committee he had done so, and the UK Parliament then issued a subpoena for the documents.  *See Six4Three* Contentions, ¶51.  And finally, these provisions match the approach taken in the *Blackberry* Protective Order, which involved a Canadian plaintiff. [5]

VI.     **Final Disposition**

a.      **Plaintiff's Position (Sections 15.1, 15.2, 15.3)**

Plaintiff's proposal seeks to balance the interest of the Producing Party in the return or destruction of their Protected Material at the end of the matter, with: a) the practical and technological limitations that impact a Receiving Parties' ability to do so (particularly as they relate to the deletion of emails and similar communications); b) the need for Receiving Parties to retain certain materials related to their representation; c) the obligation of the Receiving Party to abide by the Protective Order in relation to any retained Protected Materials; and d) the reality that certain Protected Materials, through their legitimate use during the proceedings, cease to be confidential.  Moreover, while some of these exceptions to the obligation to return or destroy Protected Materials at the end of the matter are contained within the final

---

[5]     *Blackberry* Protective Order, §14.3.

sentence of Defendants' Proposed section 15.2, Plaintiff prefers its section 15.3, which provides further detail as to the scope of these exceptions, thus serving to reduce the possibility of disputes.

### b.      Defendants' Position (Section 15)

Defendants have proposed a straightforward provision for what Protected Material may and may not be retained after Final Disposition of the case; Defendants' proposal is drawn from the N.D. Cal. Model Order.[6] It is even broader than the approach in the San Mateo County Model Order, which permits parties to retain only Protected Material "which is contained in pleadings, correspondence, and deposition transcripts."[7] By contrast, Styleform has proposed an overly complicated provision that does not provide adequate protections. For example, Styleform's proposal would allow an attorney to "use his or her work product in subsequent litigation, provided that its use does not disclose Confidential or Highly Confidential Information." But that would allow counsel to re-use work product that uses or is based on Protected Material. And if he or she is permitted to do that, how would the Producing Party know how it is being used or whether its use "disclose[d] Confidential or Highly Confidential Information"? Styleform also proposes that counsel be permitted to keep Facebook's Confidential and Highly Confidential information in perpetuity so long as it is "stored in counsels' archives, back-up media, or disaster recovery media." This provision creates a substantial, unnecessary risk of disclosure – whether intentional or inadvertent – given the ever-present risks of security breaches (whether through failure to safeguard confidential information or hacking or otherwise). There is no reason to depart from Defendants' straightforward and standard language.

### VII.      Acknowledgement and Agreement To Be Bound

### a.      Plaintiff's Position (Exhibit A)

Defendants have proffered no meaningful justification for their insistence that all individuals required by §7 to sign Exhibit A before receiving Protected Material must, in addition to submitting to the

---

[6] *See* N.D. Cal. Model Order § 15. It also matches the approach taken in the *Blackberry* Protective Order, §15.

[7] San Mateo County Model Order, §11.

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

jurisdiction of this court, appoint a California agent for service of process.  Beyond the confines of N.D. Cal. Patent Model, which as noted above, is only warranted in cases revolving around "extremely sensitive" confidential information, counsel is not aware of any court requiring parties in receipt of Protected Material to appoint a service agent.  The Court should therefore decline to extend its standard practice here, particular where CCP § 415.10 et seq. provides a liberal service regime for both in and out-of-state residents (*see also* § CCP 413.10), and there is no indication that any of the Parties or their authorized agents are likely to breach the proposed Protective Order.

### b.   Defendants' Position (Exhibit A)

Defendants propose that each person signing Exhibit A must appoint a California agent for service of process in connection with this action or any proceeding related to enforcement of the Protective Order. Nearly identical language is used in the N.D. Cal. Model Order, the *Blackberry* Protective Order, and in the *Ballejos* Protective Order, among many others.[8]  This provision is necessary to ensure that the Parties are able to take appropriate action against any individuals who violate the protective order, a consideration that is particularly important here given that Styleform is a foreign entity, witnesses may reside outside the United States, and the history involving Styleform's prior counsel.  Indeed, in *Six4Three*, individuals responsible for the leaks of Facebook's confidential materials have successfully avoided service of process of subpoenas related to the enforcement of the stipulated protective order in that case, *see* Joint Submission No. 3, *Six4Three v. Facebook, LLC*, Case No. CIV 533328 (San Mateo Cty. Super. Ct.), which has unnecessarily dragged out the proceedings and has unfairly prejudiced Facebook.  Defendants' proposal would provide both Parties with a clear mechanism to enforce the terms of the protective order and would preclude this type of gamesmanship.  Further, this provision will not be unduly burdensome, as Receiving Parties will be able to designate the appropriate Outside Counsel of Record based in California as the agent for service of process.

---

[8]   *See* N.D. Cal. Model Order, Ex. A; *Blackberry* Protective Order, Ex. A; *Ballejos* Protective Order, Ex. A.

JOINT STATEMENT REGARDING COMPETING PROPOSED PROTECTIVE ORDERS
CASE NO. CGC-18-571075

1 | Dated:  February 16, 2021

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

s/ *Patrick J. McGahan*
Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Christopher M. Burke (CA 214799)
David H. Goldberger (CA 225869)
Yifan (Kate) Lv (CA 302704)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
dgoldberger@scott-scott.com
klv@scott-scott.com

Kristen M. Anderson (CA 246108)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
kanderson@scott-scott.com

**BATHAEE DUNNE LLP**
Yavar Bathaee
Edward M. Grauman (*pro hac vice* forthcoming)
Andrew C. Wolinsky (*pro hac vice* forthcoming)
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: 332-205-7668
yavar@bathaeedunne.com
egrauman@bathaeedunne.com
awolinsky@bathaeedunne.com

14

Brian J. Dunne (CA 275689)
633 West Fifth Street, Suite 2600
Los Angeles, CA 90071
Telephone: 213-462-2772
bdunne@bathaeedunne.com

*Counsel for Plaintiff Styleform IT*

**WILMER CUTLER PICKERING HALE
   AND DORR LLP**

s/ *Sonal N. Mehta*

Sonal N. Mehta (CA 222086)
2600 El Camino Real, Suite 400
Palo Alto, CA 94306 USA
Telephone: 650-600-5051
sonal.mehta@wilmerhale.com

Ari Holtzblatt (*pro hac vice*)
Molly M. Jennings (*pro hac vice*)
Ruth E. Vinson (CA 300118)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: 202-663-6000
ari.holtzblatt@wilmerhale.com
molly.jennings@wilmerhale.com
ruth.vinson@wilmerhale.com

Catherine S. Owens (CA 307626)
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
catherine.owens@wilmerhale.com

*Counsel for Defendants Facebook, Inc.
and Mark Zuckerberg*

15

# EXHIBIT A

Christopher M. Burke (CA 214799)
David H. Goldberger (CA 225869)
Kate Lv (CA 302704)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: 619/233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
dgoldberger@scott-scott.com
klv@scott-scott.com

Kristen M. Anderson (CA 246108)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
kanderson@scott-scott.com

*Counsel for Plaintiff Styleform IT*

[Additional counsel on signature page.]

Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (*pro hac vice*)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| STYLEFORM IT, a Swedish sole proprietorship,<br><br>    Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC., a Delaware corporation; MARK ZUCKERBERG, an individual; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. CGC-18-571075<br><br>**PLAINTIFF'S [PROPOSED] PROTECTIVE ORDER**<br><br>Department:  304<br>Judge:  Hon. Anne-Christine Massullo<br>Action Filed:  November 2, 2018<br>Trial Date:  Not Set |

1. **PURPOSE AND LIMITATIONS**

Disclosure and discovery activity in this Litigation are likely to involve production of confidential, proprietary, trade secret, and/or private information for which special protection from public disclosure, and from use for any purpose other than prosecuting this Litigation, may be warranted.  Accordingly, the Court hereby enters the following Protective Order.

2. **DEFINITIONS**

2.1    <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of Disclosure or Discovery Material under this Protective Order.

2.2    <u>"CONFIDENTIAL" Protected Material</u>: information (regardless of how it is generated, stored, or maintained) or tangible things that a Designating Party considers in good faith to contain information involving trade secrets, or confidential business or financial information, including personal financial information about any party to this Litigation, putative class members, or employee of any Party to this Litigation; information regarding any individual's banking relationship with any banking institution, including information regarding the individual's financial transactions or financial accounts; and any information regarding any Party not otherwise available to the public, subject to protection under Rules 2.550, 2.551, 2.580, 2.585, 8.46, and 8.490 of the California Rules of Court or under other provisions of California law.

2.3    <u>Counsel (without qualifier)</u>: Outside Counsel of Record and In-House Counsel (as well as their support staff).

2.4    <u>Days</u>: calendar days, unless otherwise specified.

2.5    <u>Designating Party</u>: a Party or Non-Party that designates Protected Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6    <u>Disclosure or Discovery Material</u>: all information and tangible things, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, documents, testimony, and transcripts), that are produced, disclosed, or used in this Litigation.

2.7    <mark>Expert: a person with specialized knowledge or experience in a matter pertinent to this Litigation who has been retained by a Party or its Counsel to serve as an expert witness, consultant, or investigator in this Litigation.</mark>

2.8    <u>Final Disposition</u>: the later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

2.9    <u>"HIGHLY CONFIDENTIAL" Protected Material</u>: "CONFIDENTIAL" Protected Material that the Designating Party considers in good faith to contain information involving highly sensitive trade secrets or confidential business or financial information, the disclosure of which would result in the disclosure of trade secrets or other highly sensitive research, development, production, personnel, commercial, market, financial, or business information.

2.10    <u>In-House Counsel</u>: attorneys who are employees of a Party.  In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    <u>This Litigation</u>: *Styleform IT v. Facebook, Inc. and Mark Zuckerberg*, Case No. CGC-18-781075, and direct appeals therefrom.

2.12    <u>Non-Party</u>:  any natural person, partnership, corporation, association, or other legal entity not named as a Party.

2.13    <u>Outside Counsel of Record</u>: attorneys who are not employees of a Party but are retained to represent or advise a Party and have appeared in this Litigation on behalf of that Party, as well as such attorneys' support staff (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators), to whom it is reasonably necessary to disclose Protected Material for purposes of this Litigation.

2.14    <u>Party</u>: any party to this Litigation, including all of its agents, officers, directors, employees, consultants, retained experts, and Counsel (and their support staffs).

2.15    <u>Producing Party</u>: a Party or Non-Party that produces Disclosure or Discovery Material in this Litigation.

2.16    <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.17    <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL."

2.18    <u>Receiving Party</u>: any Party or Non-Party that receives Disclosure or Discovery Material.

2.19    <u>Source Code</u>: extremely sensitive "Highly Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs.

**3.    <u>SCOPE</u>**

The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that reveals Protected Material.  This Protective Order pertains to all documents and materials provided by the Parties in connection with this Litigation, even if the documents or materials are not specifically requested by a request for production.

However, the protections conferred by this Protective Order do not cover information that is or becomes generally available to the public other than as a result of a Receiving Party's violation of a court order.

**4.    <u>DURATION</u>**

Even after Final Disposition of this Litigation, the obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court otherwise orders.

**5.    <u>DESIGNATING PROTECTED MATERIAL</u>**

5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party or Non-Party that designates Disclosure or Discovery Material for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

If it comes to a Designating Party's attention that Disclosure or Discovery Material that it designated for protection does not qualify for protection at all or does not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2 <u>Manner and Timing of Designations</u>. Designation of Disclosure or Discovery Material in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" to the first page of the document and to each page that contains protected material, and if such document is produced with a database load file, the load file shall include such designation in a field. A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL."

(b) for information produced by a Party other than the Designating Party, that the Designating Party designates Disclosure Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within 30 days of the Designating Party's receipt of the Disclosure Material by giving written notice with a further copy of the subject document, material, or testimony designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Such written notice should be as specific as possible in identifying the information subject to a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation.

(c) for testimony given in a court proceeding, that the Designating Party identify on the record, before the close of the proceeding, all protected testimony.

(d) for testimony given in deposition, that the Designating Party (1) declares on the record at the deposition that the entire transcript or that a specific item or category of information that is disclosed in the transcript is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or (2) gives

written notice to all other Parties that the entire transcript or that a specific item or category of information disclosed in the transcript is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within 30 days after the Designating Party's receipt of the final transcript.  If any portion of a deposition is designated, each page of the transcript containing designated material shall be labeled with the appropriate legend.  If any portion of a videotaped deposition is designated, the original and all copies of any videotape, DVD, or other media container shall be labeled with the appropriate legend.  Pending designation as set forth above, the entire transcript, including exhibits, shall be deemed "HIGHLY CONFIDENTIAL," and the Parties shall not file any such transcripts, excerpts, or exhibits in any filing, brief, motion, or other court document without complying with the requirements of Sections 8 and 9.  If no designation is made within the time period above, the transcript shall be considered not to contain any Protected Material.

(e) Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Order, along with the transcript pages and videotape of the deposition testimony dealing with such Protected Material.  Counsel for any Producing Party shall have the right to exclude from oral depositions any person who is not authorized by this Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

5.3     Inadvertent Failures to Designate.  An inadvertent failure to designate qualified Disclosure or Discovery Material does not waive the Designating Party's right to secure protection under this Protective Order for such material.

In the event that a Producing Party inadvertently fails to designate Protected Material, the Producing Party shall give written notice of such inadvertent production (the "Inadvertent Failure to Designate Notice") and shall reproduce copies of the Protected Material that are labeled with the appropriate confidentiality designation.

Upon receipt of an Inadvertent Failure To Designate Notice, the Receiving Party shall promptly

1   destroy the inadvertently produced Protected Material and all copies thereof or return such together with

2   all copies of such Protected Material to counsel for the Producing Party.  Should the Receiving Party

3   choose to destroy such inadvertently produced Protected Material, the Receiving Party shall notify the

4   Producing Party in writing of such destruction within 14 days of receipt of written notice of the Inadvertent

5   Production Notice.  In addition, upon receipt of an Inadvertent Failure to Designate Notice, the Receiving

6   Party must make reasonable efforts to assure that the material is treated in accordance with the provisions

7   of this Protective Order, which may require a Party to withdraw access to Protected Material that was

8   given to a person who is not authorized to have access under the new designation.   No Party shall be

9   found to have violated this Order solely for treating the Disclosure or Discovery Material based on its

10  original designation prior to receiving the Failure to Designate Notice, provided such Party complies with

11  the other terms of this paragraph and provides notice to the Designating Party of the steps taken to comply

12  with this paragraph.

13          This provision is not intended to apply to any inadvertent production of any document, material,

14  or testimony protected by attorney-client or work product privileges.

15  **6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS**

16          All challenges to confidentiality designations shall be resolved under the procedure set forth in

17  Exhibit A to the Court's September 23, 2020 Case Management Order.

18  **7.      ACCESS TO AND USE OF PROTECTED MATERIAL**

19          7.1     Basic Principles.

20          (a) A Receiving Party may use Protected Material only for prosecuting, defending, or

21  attempting to settle this Litigation.  Protected Material shall not be used for any commercial,

22  competitive, personal, or other purpose, including in any other anticipated or pending litigation

23  and associated appeals.

24          (b) Protected Material may be disclosed only to the categories of persons and under the

25  conditions described in this Protective Order.

26          (c) Nothing in this Protective Order shall limit a Party's use or disclosure of its own

27  information.

28

7

(d) When this Litigation reaches Final Disposition, a Receiving Party must comply with the provisions of Section 15 below (Final Disposition).

7.2     <u>Storage of Protected Material</u>.  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.  All computers and servers that contain Protected Material shall maintain AES 256-bit encryption (or comparable security) and servers are protected by Active Directory password. Emails that contain Protected Material shall be stored on and/or use Office 365 (or comparable) security measures.  If a Receiving Party discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to another party's Protected Material, the Receiving Party shall:  (1) promptly provide written notice to the Designating Party of such breach; (2) investigate and make reasonable efforts to remediate the effects of the breach, and provide the Designating Party with information on actions taken so that such breach shall not recur; and (3) provide sufficient information about the breach that the Designating Party can reasonably ascertain the size and scope of the breach.  The Receiving Party agrees to cooperate with the Designating Party and law enforcement in investigating any such security breach.  The Receiving Party shall also promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

7.3     <u>Disclosure of "CONFIDENTIAL" Protected Material</u>.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Litigation;

(b) the officers, directors, and employees (including In-House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Protective Order) of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

8

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) during their depositions, witnesses in the Litigation to whom disclosure is reasonably necessary, and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A). Outside Counsel of Record will request that witnesses who are employees of their client sign the "Acknowledgement and Agreement to be Bound" (Exhibit A). Requesting such signature will not preclude Outside Counsel of Record from asserting that disclosure is not reasonably necessary. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order. Witnesses shown Protected Material during their depositions shall not be permitted to retain copies;

(h) the author or recipient of a document containing the Protected Material or a custodian who otherwise possessed or knew the Protected Material, and to whom disclosure is reasonably necessary for this Litigation and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(i) any mediator who is assigned to hear this matter, and his or her staff, who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A);

(j) other persons only by written consent of the Designating Party or upon order of the Court and on such conditions as may be agreed or ordered.

7.4    Disclosure of "HIGHLY CONFIDENTIAL" Protected Material. The Parties agree that "HIGHLY CONFIDENTIAL" information or items shall not be disclosed to individual Parties or directors, officers, or employees of a Party. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Protected Material designated "HIGHLY CONFIDENTIAL" only to:

9

(a) the Receiving Party's Outside Counsel of Record in this Litigation;

(b) an Expert (as defined by this Protective Order) of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) the Court and its personnel;

(d) court reporters and their staff;

(e) professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) the author or recipient of a document containing the Protected Material or a custodian who otherwise possessed or knew the Protected Material, and to whom disclosure is reasonably necessary for this Litigation and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) any mediator who is assigned to this matter, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(h) other persons only by written consent of the Designating Party or upon order of the Court and on such conditions as may be agreed or ordered.

7.5     <u>Procedures for disclosure of Protected Material to Experts</u>.  Prior to disclosure of Protected Material to Experts, the Receiving Party shall obtain from the Expert a signed "Acknowledgment and Agreement to Be Bound" (Exhibit A), which shall be maintained by Outside Counsel for the Receiving Party.

7.6     <u>Advice to Parties</u>.  Nothing in this Order is intended to bar or otherwise prevent Outside Counsel from rendering advice to their respective clients with respect to this Litigation and, in the course of rendering such advice, from relying upon their examination or knowledge of "HIGHLY CONFIDENTIAL" and "CONFIDENTIAL" Protected Material.

7.7     <u>Copies of Protected Material</u>.  Protected Material shall not be copied or reproduced except to the extent such copying or reproduction is reasonably necessary to the conduct of this Litigation, and

all such copies and reproductions shall be subject to the terms of this Protective Order. If the duplicating process by which copies and reproductions of Protected Materials are made does not preserve the confidentiality designation legends that appear on the original documents, all such copies and reproductions shall be stamped or labeled appropriately in accordance with the terms of this Order.

**8.      USE OF PROTECTED MATERIALS IN DISCOVERY PROCEEDINGS**

In connection with discovery proceedings as to which a party submits Protected Material, all documents and chamber copies containing Protected Material which are submitted to the Court shall be filed with the Court in sealed envelopes or other appropriate sealed containers. On the outside of the envelopes, a copy of the first page of the document shall be attached. If Protected Material is included in the first page attached to the outside of the envelopes, it may be deleted from the outside copy. The word "CONFIDENTIAL" shall be stamped on the envelope and a statement substantially in the following form shall also be printed on the envelope:

> "This envelope is sealed pursuant to Order of the Court, contains Confidential Information and is not to be opened or the contents revealed, except by Order of the Court or agreement by the parties."

**9.      USE OF PROTECTED MATERIALS IN COURT OTHER THAN DISCOVERY PROCEEDINGS**

The following provisions govern the treatment of Protected Material submitted as a basis for adjudication of matters other than discovery motions or proceedings or trial. These provisions are subject to Rules 2.550, 2.551, 2.580, 2.585, 8.46, and 8.490 of the California Rules of Court and must be construed in light of those Rules.

9.1      A Party that files with the Court Protected Material, and who seeks to have the record containing such information sealed, shall submit to the Court a motion or an application to seal, pursuant to California Rule of Court 2.551.

9.2      A Party that files with the Court Protected Material that was designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by anyone other than itself, and who does not seek to have the record containing such information sealed, shall, at the time of filing the Protected Material,

submit the materials pursuant to the lodging-under-seal provision of California Rule of Court 2.551(d). Any affected Party or Non-Party may then file a motion to seal, pursuant to the California Rule of Court 2.551(b), within ten (10) business days after such lodging.  Documents lodged pursuant to California Rule of Court 2.551(d) shall bear a legend stating that such materials shall be unsealed upon expiration of ten (10) business days, absent the filing of a motion to seal pursuant to Rule 2.551(b) or Court order.

9.3     In connection with a request to have materials sealed pursuant to Section 9.1 or 9.2, the requesting party's declaration pursuant to California Rule of Court 2.551(b)(1) shall contain sufficient particularity with respect to the particular Protected Materials and the basis for sealing to enable the Court to make the findings required by California Rule of Court 2.550(d).

9.4     No information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall lose such status under this Protective Order as the result of the use of such document or information in any hearing or other court proceeding in this Litigation, provided that such use is consistent with the terms of this Protective Order.

9.5     Any use of Protected Material at trial shall be governed by a separate agreement or order.

**10.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

10.1    If a Party is served with a subpoena, court order, demand, or request issued in other litigation, administrative proceeding, legislative proceeding, investigation, or regulatory inquiry that compels disclosure of any Protected Material designated in this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL that Party must:

(a) within three business days, notify in writing the Designating Party.  Such notification must include a copy of the subpoena, court order, demand, or request;

(b) promptly notify in writing the Party or Non-Party who caused the subpoena, court order, demand, or request to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification must include a copy of this Protective Order; and

1    (c) cooperate with respect to all reasonable procedures sought to be pursued by the

2    Designating Party whose Protected Material may be affected.

3    10.2    Notice pursuant to Section 10.1 shall be made to the Party's Outside Counsel of Record.

4    10.3    If the Designating Party timely seeks a protective order or otherwise objects to the

5    disclosure, the Party served with the subpoena, court order, demand, or request must not produce any

6    Disclosure or Discovery Material designated in this Litigation as "CONFIDENTIAL" or "HIGHLY

7    CONFIDENTIAL" before a determination by the Court from which the subpoena or order was issued or

8    this court, unless the Party has obtained the Designating Party's permission to produce the subpoenaed

9    Protected Material.  For purposes of this subsection, a Designating Party's request for a protective order

10   or objection shall be considered timely if made within three business days of receiving notice under

11   paragraph 10.1(a) or, if made beyond three business days of receiving notice under paragraph 10.1(a), if

12   reasonably timely under the circumstances.  The Designating Party bears the burden and the expense of

13   seeking protection in that court of its confidential material.

14   **11.    NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS**

15   **LITIGATION**

16   11.1    Any discovery requests, including subpoena and deposition notices, propounded to Non-

17   Parties must be accompanied by a copy of this Protective Order.

18   11.2    The terms, remedies, and relief provided by this Protective Order are applicable to

19   Disclosure or Discovery Material produced by a Non-Party in this Litigation and designated as

20   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Such information produced by Non-Parties in

21   connection with this Litigation is protected by the remedies and relief provided by this Order.  Nothing in

22   these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

23   11.3    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's

24   confidential information in its possession, and the Party is subject to an agreement with the Non-Party not

25   to produce the Non-Party's confidential information, then the Party shall:

26   (a) promptly notify in writing the requesting Party and the Non-Party that some or all of

27   the information requested is subject to a confidentiality agreement with a Non-Party; and

28

(b) promptly provide the Non-Party with a copy of the Protective Order in this Litigation, the relevant discovery request(s), and a reasonably specific description of the information requested.

If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

**12.  <u>UNAUTHORIZED DISCLOSURE OR USE OF PROTECTED MATERIAL</u>**

12.1  <u>Unauthorized Disclosure</u>.  If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

12.2  <u>Knowledge of Unauthorized Use</u>.  If a Receiving Party has actual knowledge that Protected Material is being used or possessed by a person not authorized to use or possess that material, regardless of how the material was disclosed or obtained by such person, the Party shall provide immediate written notice of the unauthorized use or possession to the Party whose material is being used or possessed.  No Receiving Party shall have an affirmative obligation to inform itself regarding such possible use or possession.

13. **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

(a) In the event that privileged or attorney work product is inadvertently produced or disclosed ("Inadvertent Production Material"), such inadvertent production or disclosure shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, attorney work product protection, or other applicable protection in this case or any other federal or state proceeding, provided that the Producing Party shall timely notify the Receiving Party in writing of such protection or privilege after the Producing Party discovers such materials have been inadvertently produced.  California Code of Civil Procedure § 2031.285 governs such inadvertent disclosures.

(b) If a claim of inadvertent production is made, pursuant to this Protective Order and California Code of Civil Procedure § 2031.285, with respect to Discovery Material then in the custody of another Party, that Party shall:  (i) refrain from any further examination or disclosure of the claimed Inadvertent Production Material; (ii) promptly make a good-faith effort to return the claimed Inadvertent Production Material and all copies thereof (including summaries and excerpts) to counsel for the Producing Party; or destroy all such claimed Inadvertent Production Material (including summaries and excerpts) and certify in writing to that fact; or sequester the Inadvertent Production Material; and (iii) not disclose or use the claimed Inadvertent Production Material for any purpose until Court resolution of the protected nature of the Inadvertent Production Material.

(c) A Party may move the Court for an order compelling production of the Inadvertent Production Material on the ground that it is not, in fact, privileged or protected, pursuant to California Code of Civil Procedure § 2031.285.  The Producing Party retains the burden of establishing the privileged or protected nature of any inadvertently disclosed or produced information.  While such a motion is pending, the Inadvertent Production Material at issue shall be treated in accordance with Paragraph 13(b) above.

15

(d)   Nothing in this Paragraph 13 precludes a Party who challenges the clawback of Inadvertent Production Material from arguing under that the circumstances under which the information was disclosed or used amounted to an intentional waiver of privilege or that the Party who seeks to claw back the information failed to take reasonable steps to prevent disclosure or to rectify the error. Without limiting the foregoing, a Party seeking to claw back Inadvertent Production Material under this Paragraph shall be presumed to have lost the right to clawback under this Paragraph if (1) the Inadvertent Production Material, or document containing such information, is used by any Party in a deposition, hearing, or court filing in this Litigation (with the exception of a motion to determine the existence of any privilege), or specifically referred to in the body of an expert report served in this Litigation, (2) the Party seeking to claw back the information was represented at the deposition or hearing, was a party to the motion or other proceeding in connection with which the court filing was made, or was a subject of the opinions expressed in the expert report, and (3) such Party fails to claw back the information pursuant to this Protective Order within 21 calendar days of its use or, in the case of a document first used by a Party on an exhibit list, within the time prescribed by the trial court for objections to such pretrial filings, if less than 21 days.

(e)   If a Party, in reviewing Disclosure or Discovery Material it has received from any other Party or any Non-Party, finds anything the reviewing Party believes in good faith may be Inadvertent Production Material, the reviewing Party shall:   (i) refrain from any further examination or disclosure of the potentially Inadvertent Production Material; (ii) promptly identify the material in question to the Producing Party (by document number or other equally precise description); and (iii) give the Producing Party seven days to respond as to whether the Producing Party will make a claim of inadvertent production.  If the Producing Party makes such a claim, the provisions of Section 13(a)-(c) shall apply.

**14.   <u>MISCELLANEOUS</u>**

14.1   <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any Disclosure or Discovery Material on any ground not addressed in this Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3    <u>Export Control</u>.  Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

14.4    <u>Shipping Protected Material</u>.  Subject to all other provisions of this Protective Order, including but not limited to Section 7 (Access to and Use of Protected Material), Section 14.3 (Export Control), and Section 14.4, when any Receiving Party ships any physical media containing Protected Material via mail (including U.S.P.S., FedEx, UPS, DHL, or other services) to others designated in this Order as authorized to receive Protected Material, the Receiving Party will encrypt, to the extent practicable, any electronic data (if the Protected Material is in that format), supply the password in separate correspondence to the recipient, and use secure packaging and a tracking number.  If the Protected Material is in hard copy/paper form, the Receiving Party will ship the Protected Material using secure packaging and with a tracking number.  When any Receiving Party sends electronically any data-sets or document repositories containing Protected Material to others designated in this Order as authorized to receive Protected Material, the Receiving Party will encrypt, to the extent practicable, any electronic data (e.g., by using Secure File Transfer Protocol (SFTP) or by password-protecting an attached .zip file) and supply the password in separate correspondence to the recipient.  If the Receiving Party learns at any time that Protected Material may have been retrieved or viewed by unauthorized parties during shipment, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed Protected Material.  This Section shall not apply to shipping of Protected Material by the Court and its personnel or any mediator assigned to hear this matter or his or her staff.

14.5   <u>Source Code</u>.  The Producing Party shall promptly, in good faith, notify the Receiving Party if certain Source Code may be relevant to a Receiving Party's discovery requests.  To the extent Source Code becomes relevant and responsive, the parties agree to promptly meet and confer further to discuss how much Source Code materials may be produced.  The parties agree that no Source Code will be produced until the Parties agree to, and the Court enters, an addendum to this Protective Order providing additional terms relating to Source Code production.

14.6   <u>No Greater Protection of Specific Documents</u>.  Except on privileged grounds not addressed in this Protected Order and except as set out in Section 14.5 (Source Code), no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.  Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.

14.7   <u>Privilege Logs</u>.

(a) The production of privilege logs shall be governed by the pertinent language in an agreed upon ESI Protocol.

(b) The parties agree the privilege logs shall be inclusive of both ESI and non-ESI materials.

14.8   <u>Binding on Successors, Transferees, Heirs, and Assigns</u>.  This Protective Order shall be binding on all successors, transferees, heirs, and assigns of the Parties.

## 15.   <u>FINAL DISPOSITION</u>

15.1   Within 60 days after the Final Disposition of this Litigation, each Receiving Party must return all Protected Material to the Producing Party or destroy, to the extent practicable, such material unless: (1) the document has been offered into evidence or filed without restriction as to disclosure or (2) the document bears the notations, summations, or other mental impressions of the Receiving Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.

15.2   Upon request from the Producing Party or Designating Party, the Receiving Party must submit a written certification that (1) identifies (by category, where appropriate) all the Protected Material

that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material other than those permitted by this Order.

15.3 Notwithstanding the above requirements to return or destroy documents, Counsel may retain (1) email correspondence related to their representation; (2) attorney, consultant, and Expert work product that may incorporate Protected Material, including an index that refers or relates to designated Confidential or Highly Confidential Information so long as that work product is maintained in secured locations subject to security protocols applied in the regular course of business to other matters; and (3) all documents filed with or by the Court, including those filed under seal, all transcripts of depositions, including exhibits, all final expert witness reports and supporting materials.  An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose Confidential or Highly Confidential Information. Nothing in this Order shall be construed to require the destruction or return of Confidential or Highly Confidential Information stored in counsels' archives, back-up media, or disaster recovery media. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (Duration).

## 16. <u>VIOLATION OF PROTECTIVE ORDER</u>

Any violation of this Protective Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**EXHIBIT A:  ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND**

I, _____[print/type full name],

of  _____[print/type  full  address],

declare under penalty of perjury that I have read in its entirety and understand the Protective Order that

was issued by the Superior Court of California, County of San Francisco on _____[date] in the case of

*Styleform IT v. Facebook, Inc.*, Case No. CGC-18-571075.  I agree to comply with and to be bound by all

the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose

me to sanctions and punishment.  I solemnly promise that I will not disclose in any manner any information

or item that is subject to this Protective Order to any person or entity except in strict compliance with the

provisions of this Order.  I further agree to submit to the jurisdiction of the Superior Court of California,

County of San Francisco for the purpose of enforcing the terms of this Protective Order, even if such

enforcement proceedings occur after termination of this action.


Date: _____

City and State where sworn and signed: _____

Signature: _____

Printed name: _____

Dated:  February 16, 2021

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**


<u>s/ *Patrick J. McGahan*</u>
Patrick J. McGahan (*pro hac* vice)
Michael P. Srodoski (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone: 860/537-5537
Facsimile:  860-537-4432
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Christopher M. Burke (CA 214799)
David H. Goldberger (CA 225869)
Yifan (Kate) Lv (CA 302704)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
dgoldberger@scott-scott.com
klv@scott-scott.com

Kristen M. Anderson (CA 246108)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
kanderson@scott-scott.com


**BATHAEE DUNNE LLP**
Yavar Bathaee
Edward M. Grauman (*pro hac* forthcoming)
Andrew C. Wolinsky (*pro hac* forthcoming)
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: 332-205-7668
yavar@bathaeedunne.com
egrauman@bathaeedunne.com
awolinsky@bathaeedunne.com

Brian J. Dunne (CA 275689)
633 West Fifth Street, Suite 2600
Los Angeles, CA 90071
Telephone: 213/462-2772
bdunne@bathaeedunne.com

*Counsel for Plaintiff Styleform IT*

21

**[PROPOSED] ORDER**

**IT IS SO ORDERED** that the foregoing Protective Order is approved.


Dated:_____

_____
JUDGE OF SAN FRANCISCO SUPERIOR COURT

# EXHIBIT B

1   WILMER CUTLER PICKERING HALE AND
    DORR LLP

2   SONAL N. MEHTA (SBN 222086)
    sonal.mehta@wilmerhale.com

3   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306 USA

4   Telephone:   650 600 5051
    Facsimile:   650 858 6100

5   ARI HOLTZBLATT (*pro hac vice*)
    ari.holtzblatt@wilmerhale.com

6   MOLLY M. JENNINGS (*pro hac vice*)
    molly.jennings@wilmerhale.com

7   RUTH E. VINSON (SBN 300118)
    ruth.vinson@wilmerhale.com

8   1875 Pennsylvania Avenue NW
    Washington, DC 20006

9   Telephone:   202 663 6000
    Facsimile:   202 663 6363

10   CATHERINE S. OWENS (SBN 307626)
    catherine.owens@wilmerhale.com

11   350 South Grand Avenue, Suite 2400
    Los Angeles, CA 90071

12   Telephone:   213 443 5300
    Facsimile:   213 443 5400

13   Attorneys for Defendant
    Facebook, Inc. and Mark Zuckerberg

14

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                   COUNTY OF SAN FRANCISCO

17

18   STYLEFORM IT, a Swedish sole proprietorship,   |   Case No. CGC-18-571075

| STYLEFORM IT, a Swedish sole proprietorship, | Case No. CGC-18-571075 |
|---|---|
| Plaintiff, | **DEFENDANTS' PROPOSED PROTECTIVE ORDER** |
| v. | Dept:          304 |
| FACEBOOK, INC., a Delaware corporation; MARK ZUCKERBERG, an individual; and DOES 1-50, inclusive, | Complaint:    November 2, 2018<br>FAC:        January 15, 2020<br>SAC:        September 8, 2020<br>Trial Date:   Not Yet Set |
| Defendants. | |

1. **PURPOSE AND LIMITATIONS**

Disclosure and discovery activity in this Litigation are likely to involve production of confidential, proprietary, trade secret, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Litigation may be warranted.  Accordingly, the Court hereby enters the following Protective Order.

2. **DEFINITIONS**

2.1     <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of Disclosure or Discovery Material under this Protective Order.

2.2     <u>"CONFIDENTIAL" Protected Material</u>:  information (regardless of how it is generated, stored, or maintained) or tangible things that a Designating Party considers in good faith to contain information involving trade secrets, or confidential business or financial information, including personal financial information about any party to this Litigation, putative class members, or employee of any Party to this Litigation; information regarding any individual's banking relationship with any banking institution, including information regarding the individual's financial transactions or financial accounts; and any information regarding any Party not otherwise available to the public, subject to protection under Rules 2.550, 2.551, 2.580, 2.585, 8.46, and 8.490 of the California Rules of Court or under other provisions of California law.

2.3     <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and In-House Counsel (as well as their support staff).

2.4     <u>Days</u>:  calendar days, unless otherwise specified.

2.5     <u>Designating Party</u>:  a Party or Non-Party that designates Protected Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6     <u>Disclosure or Discovery Material</u>:  all information and tangible things, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, documents, testimony, and transcripts), that are produced, disclosed, or used in this Litigation.

2.7    Expert:  a person with specialized knowledge or experience in a matter pertinent to this Litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant, or investigator in this Litigation, (2) is not a past or current employee or contractor of a Party or of a Party's competitor, (3) is not a current employee or contractor of a Party's competitor, and (4) at the time of retention, is not anticipated to become an employee or contractor of a Party or of a Party's competitor.  For purposes of this paragraph, a person shall not be considered to be a past, current, or anticipated employee or contractor of a Party or of a Party's competitor solely due to his or her retention by a Party or its Counsel to serve as an expert witness or as a consultant in this Litigation.

2.8    Final Disposition:  The later of (1) dismissal of all claims and defenses in this Litigation, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Litigation, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

2.9    "HIGHLY CONFIDENTIAL" Protected Material:  "CONFIDENTIAL" Protected Material that the Designating Party considers in good faith to contain information involving highly sensitive trade secrets or confidential business or financial information, the disclosure of which would result in the disclosure of trade secrets or other highly sensitive research, development, production, personnel, commercial, market, financial, or business information.

2.10    In-House Counsel:  attorneys who are employees of a Party.  In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    This Litigation:  *Styleform IT v. Facebook, Inc. and Mark Zuckerberg*, Case No. CGC-18-781075, and direct appeals therefrom.

2.12    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party.

2.13    Outside Counsel of Record:  attorneys who are not employees of a Party but are retained to represent or advise a Party and have appeared in this Litigation on behalf of that Party,

as well as such attorneys' support staff (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators), to whom it is reasonably necessary to disclose Protected Material for purposes of this Litigation.

2.14    Party:  any party to this Litigation, including all of its agents, officers, directors, employees, consultants, retained experts, and Counsel (and their support staffs).

2.15    Producing Party:   a Party or Non-Party that produces Disclosure or Discovery Material in this Litigation.

2.16    Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.17    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL."

2.18    Receiving Party:  any Party or Non-Party that receives Disclosure or Discovery Material.

2.19    Source Code:  extremely sensitive "Highly Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs.

3.    **SCOPE**

The protections conferred by this Protective Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that reveals Protected Material.  This Protective Order pertains to all documents and materials provided by the Parties in connection

with this Litigation, even if the documents or materials are not specifically requested by a request for production.

However, the protections conferred by this Protective Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party not as a result of publication involving violation of a court order in this Litigation or other litigation, or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of a court order.

**4.    DURATION**

Even after Final Disposition of this Litigation, the obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court otherwise orders.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party or Non-Party that designates Disclosure or Discovery Material for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

If it comes to a Designating Party's attention that Disclosure or Discovery Material that it designated for protection does not qualify for protection at all or does not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    <u>Manner and Timing of Designations</u>.  Designation of Disclosure or Discovery Material in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" to the first page of the document and to each page that contains protected material, and if such document is produced with a database load file, the load file shall include such designation

in a field.  A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL."

(b) for information produced by a Party other than the Designating Party, that the Designating Party designate Disclosure Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within 30 days of the Designating Party's receipt of the Disclosure Material by giving written notice with a further copy of the subject document, material, or testimony designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."  Such written notice should be as specific as possible in identifying the information subject to a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation.

(c) for testimony given in a court proceeding, that the Designating Party identify on the record, before the close of the proceeding, all protected testimony.

(d) for testimony given in deposition, that the Designating Party (1) declares on the record at the deposition that the entire transcript or that a specific item or category of information that is disclosed in the transcript is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or (2) gives written notice to all other Parties that the entire transcript or that a specific item or category of information disclosed in the transcript is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" within 30 days after the Designating Party's receipt of the final transcript.  If any portion of a deposition is designated, each page of the transcript containing designated material shall be labeled with the appropriate legend.  If any portion of a videotaped deposition is designated, the original and all copies of any videotape, DVD, or other media container shall be labeled with the appropriate legend.  Pending designation as set forth above, the entire transcript, including exhibits, shall be deemed "HIGHLY CONFIDENTIAL," and the Parties shall not file any

such transcripts, excerpts, or exhibits in any filing, brief, motion, or other court document without complying with the requirements of Sections 8 and 9.  If no designation is made within the time period above, the transcript shall be considered not to contain any Protected Material.

(e) Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Order, along with the transcript pages and videotape of the deposition testimony dealing with such Protected Material.  Counsel for any Producing Party shall have the right to exclude from oral depositions any person who is not authorized by this Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

5.3     <u>Inadvertent Failures to Designate</u>.  An inadvertent failure to designate qualified Disclosure or Discovery Material does not waive the Designating Party's right to secure protection under this Protective Order for such material.

In the event that a Producing Party inadvertently fails to designate Protected Material, the Producing Party shall give written notice of such inadvertent production (the "Inadvertent Failure to Designate Notice") and shall reproduce copies of the Protected Material that are labeled with the appropriate confidentiality designation.

Upon receipt of an Inadvertent Failure To Designate Notice, the Receiving Party shall promptly destroy the inadvertently produced Protected Material and all copies thereof or return such together with all copies of such Protected Material to counsel for the Producing Party.  Should the Receiving Party choose to destroy such inadvertently produced Protected Material, the Receiving Party shall notify the Producing Party in writing of such destruction within 14 days of receipt of written notice of the Inadvertent Production Notice.  In addition, upon receipt of an

Inadvertent Failure to Designate Notice, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Protective Order, which may require a Party to withdraw access to Protected Material that was given to a person who is not authorized to have access under the new designation. No Party shall be found to have violated this Order solely for treating the Disclosure or Discovery Material based on its original designation prior to receiving the Failure to Designate Notice, provided such Party complies with the other terms of this paragraph and provides notice to the Designating Party of the steps taken to comply with this paragraph.

This provision is not intended to apply to any inadvertent production of any document, material, or testimony protected by attorney-client or work product privileges.

## 6. CHALLENGING CONFIDENTIALITY DESIGNATIONS

All challenges to confidentiality designations shall be resolved under the procedure set forth in Exhibit A to the Court's September 23, 2020 Case Management Order.

## 7. ACCESS TO AND USE OF PROTECTED MATERIAL

7.1 Basic Principles.

(a) A Receiving Party may use Protected Material only for prosecuting, defending, or attempting to settle this Litigation. Protected Material shall not be used for any commercial, competitive, personal, or other purpose, including in any other anticipated or pending litigation and associated appeals.

(b) Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order.

(c) Nothing in this Protective Order shall limit a Party's use or disclosure of its own information.

(d) When this Litigation reaches Final Disposition, a Receiving Party must comply with the provisions of Section 15 below (Final Disposition).

7.2     <u>Storage of Protected Material</u>.  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.  All computers and servers that contain Protected Material shall maintain AES 256-bit encryption (or comparable security) and servers are protected by Active Directory password.  Emails that contain Protected Material shall be stored on and/or use Office 365 (or comparable) security measures.  If a Receiving Party discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to another party's Protected Material, the Receiving Party shall:  (1) promptly provide written notice to the Designating Party of such breach; (2) investigate and make reasonable efforts to remediate the effects of the breach, and provide the Designating Party with information on actions taken so that such breach shall not recur; and (3) provide sufficient information about the breach that the Designating Party can reasonably ascertain the size and scope of the breach.  The Receiving Party agrees to cooperate with the Designating Party and law enforcement in investigating any such security breach.  The Receiving Party shall also promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

7.3     <u>Disclosure of "CONFIDENTIAL" Protected Material</u>.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Litigation;

(b) the officers, directors, and employees (including In-House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Protective Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this Litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and (3) as to whom procedures set forth in paragraph 7.5 have been followed;

---

8

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) during their depositions, witnesses in the Litigation to whom disclosure is reasonably necessary, and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).  Outside Counsel of Record will request that witnesses who are employees of their client sign the "Acknowledgement and Agreement to be Bound" (Exhibit A).  Requesting such signature will not preclude Outside Counsel of Record from asserting that disclosure is not reasonably necessary.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.  Witnesses shown Protected Material during their depositions shall not be permitted to retain copies;

(h) the author or recipient of a document containing the Protected Material, or a custodian who otherwise possessed or knew the Protected Material, and to whom disclosure is reasonably necessary for this Litigation and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(i) any mediator who is assigned to hear this matter, and his or her staff, who have signed the "Acknowledgement and Agreement to be Bound" (Exhibit A);

(j) other persons only by written consent of the Designating Party or upon order of the Court and on such conditions as may be agreed or ordered.

7.4     Disclosure of "HIGHLY CONFIDENTIAL" Protected Material.  The Parties agree that "HIGHLY CONFIDENTIAL" information or items shall not be disclosed to individual Parties or directors, officers, or employees of a Party.  Unless otherwise ordered by the Court or permitted

9

in writing by the Designating Party, a Receiving Party may disclose any Protected Material designated "HIGHLY CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Litigation;

(b) an Expert (as defined by this Protective Order) of the Receiving Party (1) to whom disclosure is reasonably necessary for this Litigation, (2) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.5 below, have been followed;

(c) the Court and its personnel;

(d) court reporters and their staff;

(e) professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) the author or recipient of a document containing the Protected Material, or a custodian who otherwise possessed or knew the Protected Material, and to whom disclosure is reasonably necessary for this Litigation and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) any mediator who is assigned to this matter, and his or her staff, who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

(h) other persons only by written consent of the Designating Party or upon order of the Court and on such conditions as may be agreed or ordered.

7.5    **Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Protected Material to Experts.**

(a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose any Protected Material to an Expert (as defined in this Protective Order) must first make a written request to the Designating Party that (1) identifies the general categories of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"

10

Protected Material that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies each employer or entity for whom the Expert has consulted or otherwise provided professional services at any time during the preceding five years, if any, (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services, including in connection with a litigation, at any time during the preceding five years and the Party to the litigation for whom such work was done, (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years, and (7) identifies any patents or patent applications in which the Expert is identified as an inventor or applicant, is involved in prosecuting or maintaining, or has any pecuniary interest.  With regard to the information sought through part (5) of such an Expert disclosure, if the Expert believes any of this information is subject to a confidentiality obligation to a Non-Party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert must be available to meet and confer with the Designating Party regarding any such engagement.

(b) A Party that makes a request and provides the information specified in paragraph 7.5(a) may disclose the subject Protected Material to the identified Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party to try to resolve the matter by agreement within 10 days of the written

*DEFENDANTS' PROPOSED PROTECTIVE ORDER*
CASE NO. CGC-18-571075

objection.  If no agreement is reached, the Party seeking to make the disclosure to the Expert may seek permission from the court to do so via the following expedited procedure: (1) the party moving for permission to make the disclosure may file an opening brief of no more than five (5) pages; (2) the party opposing the request may file a response of no more than five (5) pages within seven (7) days; and (3) the Court will hear any such requests as soon as reasonably practicable after the opposition is filed.  Any such request for relief shall, to the extent practicable, describe the circumstances and set forth in detail the reasons why the disclosure is reasonably necessary.  In addition, any such motion must be accompanied by a competent declaration describing the Parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and a copy of the Designating Party's objection and supporting materials.

In any such proceeding, the Party opposing disclosure to the Expert bears the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

7.6    <u>Advice to Parties</u>.  Nothing in this Order is intended to bar or otherwise prevent Outside Counsel from rendering advice to their respective clients with respect to this Litigation and, in the course of rendering such advice, from relying upon their examination or knowledge of "HIGHLY CONFIDENTIAL" and "CONFIDENTIAL" Protected Material.

7.7    <u>Copies of Protected Material</u>.  Protected Material shall not be copied or reproduced except to the extent such copying or reproduction is reasonably necessary to the conduct of this Litigation, and all such copies and reproductions shall be subject to the terms of this Protective Order.  If the duplicating process by which copies and reproductions of Protected Materials are made does not preserve the confidentiality designation legends that appear on the original documents, all such copies and reproductions shall be stamped or labeled appropriately in accordance with the terms of this Order.

8.    <u>**USE OF PROTECTED MATERIALS IN DISCOVERY PROCEEDINGS**</u>

In connection with discovery proceedings as to which a party submits Protected Material, all documents and chamber copies containing Protected Material which are submitted to the Court shall be filed with the Court in sealed envelopes or other appropriate sealed containers.  On the outside of the envelopes, a copy of the first page of the document shall be attached.  If Protected Material is included in the first page attached to the outside of the envelopes, it may be deleted from the outside copy.  The word "CONFIDENTIAL" shall be stamped on the envelope and a statement substantially in the following form shall also be printed on the envelope:

> "This envelope is sealed pursuant to Order of the Court, contains Confidential Information and is not to be opened or the contents revealed, except by Order of the Court or agreement by the parties."

**9.    USE OF PROTECTED MATERIALS IN COURT OTHER THAN DISCOVERY PROCEEDINGS**

The following provisions govern the treatment of Protected Material submitted as a basis for adjudication of matters other than discovery motions or proceedings or trial.  These provisions are subject to Rules 2.550, 2.551, 2.580, 2.585, 8.46, and 8.490 of the California Rules of Court and must be construed in light of those Rules.

9.1    A Party that files with the Court Protected Material, and who seeks to have the record containing such information sealed, shall submit to the Court a motion or an application to seal, pursuant to California Rule of Court 2.551.

9.2    A Party that files with the Court Protected Material that was designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by anyone other than itself, and who does not seek to have the record containing such information sealed, shall, at the time of filing the Protected Material, submit the materials pursuant to the lodging-under-seal provision of California Rule of Court 2.551(d).  Any affected Party or Non-Party may then file a motion to seal, pursuant to the California Rule of Court 2.551(b), within ten (10) business days after such lodging.  Documents lodged pursuant to California Rule of Court 2.551(d) shall bear a legend stating that

1    such materials shall be unsealed upon expiration of ten (10) business days, absent the filing of a

2    motion to seal pursuant to Rule 2.551(b) or Court order.

3          9.3      In connection with a request to have materials sealed pursuant to Section 9.1 or 9.2,

4    the requesting party's declaration pursuant to California Rule of Court 2.551(b)(1) shall contain

5    sufficient particularity with respect to the particular Protected Materials and the basis for sealing

6    to enable the Court to make the findings required by California Rule of Court 2.550(d).

7          9.4      No      information      designated      as      "CONFIDENTIAL"      or      "HIGHLY

8    CONFIDENTIAL" shall lose such status under this Protective Order as the result of the use of

9    such document or information in any hearing or other court proceeding in this Litigation, provided

10   that such use is consistent with the terms of this Protective Order.

11         9.5      Any use of Protected Material at trial shall be governed by a separate agreement or

12   order.

13   **10.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN**

14   **OTHER LITIGATION**

15         10.1    If a Party is served with a subpoena, court order, demand, or request issued in other

16   litigation, administrative proceeding, legislative proceeding, investigation, or regulatory inquiry

17   that compels disclosure of any Protected Material designated in this Litigation as

18   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" that Party must:

19               (a) within three business days, notify in writing the Designating Party.   Such

20         notification must include a copy of the subpoena, court order, demand, or request;

21               (b) promptly notify in writing the Party or Non-Party who caused the subpoena,

22         court order, demand, or request to issue that some or all of the material covered by the

23         subpoena or order is subject to this Protective Order.  Such notification must include a copy

24         of this Protective Order; and

25               (c) cooperate with respect to all reasonable procedures sought to be pursued by the

26         Designating Party whose Protected Material may be affected.

27

28

10.2     Notice pursuant to Section 10.1 shall be made to the Party's Outside Counsel of Record.

10.3     If the Designating Party timely seeks a protective order or otherwise objects to the disclosure, the Party served with the subpoena, court order, demand, or request must not produce any Disclosure or Discovery Material designated in this Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a determination by the Court from which the subpoena or order was issued or this court, unless the Party has obtained the Designating Party's permission to produce the subpoenaed Protected Material.  For purposes of this subsection, a Designating Party's request for a protective order or objection shall be considered timely if made within three business days of receiving notice under paragraph 10.1(a) or, if made beyond three business days of receiving notice under paragraph 10.1(a), if reasonably timely under the circumstances.  The Designating Party bears the burden and the expense of seeking protection in that court of its confidential material.

## 11.     NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

11.1     Any discovery requests, including subpoena and deposition notices, propounded to Non-Parties must be accompanied by a copy of this Protective Order.

11.2     The terms, remedies, and relief provided by this Protective Order are applicable to Disclosure or Discovery Material produced by a Non-Party in this Litigation and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Such information produced by Non-Parties in connection with this Litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

11.3     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(a) promptly notify in writing the requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party; and

(b) promptly provide the Non-Party with a copy of the Protective Order in this Litigation, the relevant discovery request(s), and a reasonably specific description of the information requested.

If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## 12. UNAUTHORIZED DISCLOSURE OR USE OF PROTECTED MATERIAL

12.1  <u>Unauthorized Disclosure</u>.  If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

12.2  <u>Knowledge of Unauthorized Use</u>.  If a Receiving Party has actual knowledge that Protected Material is being used or possessed by a person not authorized to use or possess that material, regardless of how the material was disclosed or obtained by such person, the Party shall provide immediate written notice of the unauthorized use or possession to the Party whose material

is being used or possessed.  No Receiving Party shall have an affirmative obligation to inform itself regarding such possible use or possession.

**13.**   **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

(a) In the event that privileged or attorney work product is inadvertently produced or disclosed ("Inadvertent Production Material"), such inadvertent production or disclosure shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, attorney work product protection, or other applicable protection in this case or any other federal or state proceeding, provided that the Producing Party shall timely notify the Receiving Party in writing of such protection or privilege after the Producing Party discovers such materials have been inadvertently produced.  California Code of Civil Procedure § 2031.285 governs such inadvertent disclosures.

(b) If a claim of inadvertent production is made, pursuant to this Protective Order and California Code of Civil Procedure § 2031.285, with respect to Discovery Material then in the custody of another Party, that Party shall:  (i) refrain from any further examination or disclosure of the claimed Inadvertent Production Material; (ii) promptly make a good-faith effort to return the claimed Inadvertent Production Material and all copies thereof (including summaries and excerpts) to counsel for the Producing Party; or destroy all such claimed Inadvertent Production Material (including summaries and excerpts) and certify in writing to that fact; or sequester the Inadvertent Production Material; and (iii) not disclose or use the claimed Inadvertent Production Material for any purpose until Court resolution of the protected nature of the Inadvertent Production Material.

(c) A Party may move the Court for an order compelling production of the Inadvertent Production Material on the ground that it is not, in fact, privileged or protected, pursuant to California Code of Civil Procedure § 2031.285.  The Producing Party retains

17

the burden of establishing the privileged or protected nature of any inadvertently disclosed or produced information.  While such a motion is pending, the Inadvertent Production Material at issue shall be treated in accordance with Paragraph 13(b) above.

(d) If a Party, in reviewing Disclosure or Discovery Material it has received from any other Party or any Non-Party, finds anything the reviewing Party believes in good faith may be Inadvertent Production Material, the reviewing Party shall:  (i) refrain from any further examination or disclosure of the potentially Inadvertent Production Material; (ii) promptly identify the material in question to the Producing Party (by document number or other equally precise description); and (iii) give the Producing Party seven days to respond as to whether the Producing Party will make a claim of inadvertent production.  If the Producing Party makes such a claim, the provisions of Section 13(a)-(c) shall apply.

## 14.    Miscellaneous

14.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2    Right to Assert Other Objections.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any Disclosure or Discovery Material on any ground not addressed in this Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3    Export Control.  Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

14.4    No Protected Material may leave the territorial boundaries of the United States of America or Sweden.  Without limitation, this prohibition extends to Protected Material (including

18

copies) in physical and electronic form. The viewing of Protected Material through electronic means outside the territorial limits of the United States of America or Sweden is similarly prohibited. Further, with respect to Defendants' materials designated as "HIGHLY CONFIDENTIAL," such materials (including copies) in physical or electronic form may not physically leave or be viewed through electronic means outside the territorial bounds of the United States of America. The restrictions contained within this paragraph may be amended through the express written consent of the Producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations. If a Receiving Party wishes to use at a deposition any Protected Material that cannot be taken out of the United States pursuant to export control laws and/or this Protective Order, the Producing Party will make any witness associated with it and within the Producing Party's control available for the deposition in the United States. Nothing in this paragraph is intended to remove any obligation that may otherwise exist to produce documents currently located in a foreign country.

14.5   <u>Shipping Protected Material</u>.   Subject to all other provisions of this Protective Order, including but not limited to Section 7 (Access to and Use of Protected Material), Section 14.3 (Export Control), and Section 14.4, when any Receiving Party ships any physical media containing Protected Material via mail (including U.S.P.S., FedEx, UPS, DHL, or other services) to others designated in this Order as authorized to receive Protected Material, the Receiving Party will encrypt, to the extent practicable, any electronic data (if the Protected Material is in that format), supply the password in separate correspondence to the recipient, and use secure packaging and a tracking number. If the Protected Material is in hard copy/paper form, the Receiving Party will ship the Protected Material using secure packaging and with a tracking number. When any Receiving Party sends electronically any data-sets or document repositories containing Protected Material to others designated in this Order as authorized to receive Protected Material, the Receiving Party will encrypt, to the extent practicable, any electronic data (e.g., by using Secure File Transfer Protocol (SFTP) or by password-protecting an attached .zip file) and supply the

password in separate correspondence to the recipient.  If the Receiving Party learns at any time that Protected Material may have been retrieved or viewed by unauthorized parties during shipment, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed Protected Material.  This Section shall not apply to shipping of Protected Material by the Court and its personnel or any mediator assigned to hear this matter or his or her staff.

14.6   <u>Source Code</u>.  The Producing Party shall promptly, in good faith, notify the Receiving Party if certain Source Code may be relevant to a Receiving Party's discovery requests. To the extent Source Code becomes relevant and responsive, the parties agree to promptly meet and confer further to discuss how much Source Code materials may be produced.  The parties agree that no Source Code will be produced until the Parties agree to, and the Court enters, an addendum to this Protective Order providing additional terms relating to Source Code production.

14.7   <u>No Greater Protection of Specific Documents</u>.  Except on privileged grounds not addressed in this Protected Order and except as set out in Section 14.6 (Source Code), no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection. Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.

14.8   <u>Privilege Logs</u>.

(a) The production of privilege logs shall be governed by the pertinent language in an agreed upon ESI Protocol.

(b) The parties agree the privilege logs shall be inclusive of both ESI and non-ESI materials.

14.9   <u>Binding on Successors, Transferees, Heirs, and Assigns</u>.  This Protective Order shall be binding on all successors, transferees, heirs, and assigns of the Parties.

---

20

**15.**    **FINAL DISPOSITION**

15.1    Within 60 days after the Final Disposition of this Litigation, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.

15.2    Upon request from the Producing Party or Designating Party, the Receiving Party must submit a written certification that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and Expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (Duration).

**16.**    **VIOLATION OF PROTECTIVE ORDER**

Any violation of this Protective Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

21

**EXHIBIT A:  ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND**

I, _____[print/type full name], of _____ [print/type full address], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the Superior Court of California, County of San Francisco on _____[date] in the case of *Styleform IT v. Facebook, Inc.*, Case No. CGC-18-571075.  I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.  I further agree to submit to the jurisdiction of the Superior Court of California, County of San Francisco for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____[print/type agent's full name] of _____[print/type agent's full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Signature: _____

Printed name: _____

22

Dated:  February 16, 2021

Respectfully submitted,

**WILMER CUTLER PICKERING HALE
  AND DORR LLP**

s/ *Sonal N. Mehta*

Sonal N. Mehta
2600 El Camino Real, Suite 400
Palo Alto, CA 94306 USA
Telephone: 650/600-5051
sonal.mehta@wilmerhale.com

*Attorney for Defendants Facebook, Inc. and
Mark Zuckerberg*

23

1

## [PROPOSED] ORDER

2   **IT IS SO ORDERED** that the foregoing Protective Order is approved.

3

4

5 Dated:_____    _____

6         JUDGE OF SAN FRANCISCO SUPERIOR COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*DEFENDANTS' PROPOSED PROTECTIVE ORDER*
CASE NO. CGC-18-571075

1

## **PROOF OF SERVICE**

2    I, Devin Colonna, declare as follows:

3    I am employed in the County of San Diego, State of California.  I am over the age of 18 years and

4   not a party to the within action.  My business address is Scott+Scott Attorneys at Law LLP, 600 W.

5   Broadway, Suite 3300, San Diego, CA 92101.

6    On February 16, 2021, I served a true and correct copy of the foregoing documents, on all parties

7   of record in this action, through File & ServeXpress.  The file transmission was reported as completed

8   and a copy of the "File & ServeXpress Filing Receipt" page(s) will be maintained with the original

9   document(s) in our office.

10    I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct to the best of my knowledge.

12    Executed on February 16, 2021, in Carlsbad, California.

13

14

15    _____

     Devin Colonna

16

17

18

19

20

21

22

23

24

25

26

27

28

16