GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS CLAIM OF CONFIDENTIALITY**<br><br>Judge: Hons. Vince Chhabria and Jacqueline Scott Corley<br>Courtroom 4, 17th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Protective Order Does Not Require De-Designation. ............................................. 2

        A.    Good Cause Exists to Maintain the Confidentiality Designation, Including by Modifying the Protective Order if Necessary. ............................ 2

        B.    Facebook Did Not Waive Protection Under the Protective Order .................... 5

    II.    This Dispute Is Not Moot. ............................................................................................. 6

    III.    The Balance of Interests Favors Maintaining Confidentiality. ..................................... 8

        A.    Plaintiffs Identify No Legitimate Interest in Forcing De-Designation. ............ 8

        B.    There Are Significant Interests That Support Maintaining Confidentiality. ..................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*,
    2021 WL 292173 (N.D. Cal. Jan. 28, 2021) ...................................................................8

*Al-Haramain Found., Inc. v. Bush*,
    507 F.3d 1190 (9th Cir. 2007) .........................................................................................4

*Cal. Parents for Equalization of Educ. Materials v. Torlakson*,
    2018 WL 3930141 (N.D. Cal. Aug. 16, 2018) ................................................................8

*Chafin v. Chafin*,
    568 U.S. 165 (2013) .......................................................................................................6

*Church of Scientology of Cal. v. United States*,
    506 U.S. 9 (1992) ...........................................................................................................7

*City of Almaty v. Ablyazov*,
    2018 WL 1229730 (S.D.N.Y. Mar. 5, 2018) ...............................................................4, 7

*Constand v. Cosby*,
    833 F.3d 405 (3d Cir. 2016) ...........................................................................................6

*Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
    2015 WL 12466532 (S.D. Cal. July 16, 2015) ...............................................................9

*Doe No. 1 v. Reed*,
    697 F.3d 1235 (9th Cir. 2012) ........................................................................................6

*Doherty v. State Farm Gen. Ins. Co.*,
    2020 WL 2510642 (C.D. Cal. Mar. 4, 2020) ..................................................................3

*Dukes v. Wal-Mart Stores, Inc.*,
    2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) ............................................................3, 7

*Jang v. Bos. Sci. Corp.*,
    2006 WL 8430761 (C.D. Cal. July 13, 2006) .................................................................9

*Johnson v. City & Cnty. of San Francisco*,
    2012 WL 104635 (N.D. Cal. Jan. 12, 2012) ...................................................................3

*Juidice v. Vail*,
    430 U.S. 327 (1977) .....................................................................................................10

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
    2013 WL 4475900 (N.D. Cal. Aug. 15, 2013) ................................................................7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*North Carolina v. Rice*,
   404 U.S. 244 (1971) ..................................................................................................................6

*In re People v. Bryant*,
   94 P.3d 624 (Colo. 2004) .......................................................................................................10

*Phillips v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ............................................................................................9, 10

*Pullman v. Alpha Media Publ'g, Inc.*,
   624 F. App'x 774 (2d Cir. 2015) .........................................................................................7, 10

*Revitch v. DIRECTV, LLC*,
   977 F.3d 713 (9th Cir. 2020) ....................................................................................................4

*Rosenthal v. Carr*,
   614 F.2d 1219 (9th Cir. 1980) ................................................................................................10

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ...................................................................................................................8

*Von Haar v. City of Mountain View*,
   584 F. App'x 297 (9th Cir. 2014) .............................................................................................7

# INTRODUCTION

Plaintiffs ask the Court to rule that any time a party's confidential information has been leaked wrongfully, it forever loses protection over that information—except in the specific lawsuit in which the information was improperly disclosed. This position makes no sense. Plaintiffs acknowledge that when a party to a litigation intentionally leaks confidential information, lifting confidentiality designations in *that case* is not required. Yet, they ask this Court to adopt the inconsistent and inequitable rule that the same party's intentional leak of confidential information requires confidentiality designations *on the same documents* to be lifted in *any other lawsuit* in which the same materials have been produced. This Court should decline to issue such a ruling, which would, as the San Mateo Superior Court cautioned, undermine the value of protective orders in this Court and others.

This case illustrates that danger. Facebook originally produced the documents at issue to government entities under confidentiality agreements. Plaintiffs then demanded that Facebook make cloned productions in this case of documents it had produced to the government. Facebook did so, again designating the documents confidential. *After* Facebook made these productions, and *after* Plaintiffs became aware of the Six4Three leak, Plaintiffs apparently scoured Facebook's cloned productions for materials that had been part of Six4Three's leak. Plaintiffs then demanded that Facebook remove confidentiality designations from 46 documents included in its government productions that Plaintiffs determined Six4Three had leaked in violation of court orders.

The law does not compel such a result. Courts have soundly rejected Plaintiffs' argument that a party cannot designate a document as confidential in any case if a third party has ever wrongfully disclosed it. So instead of engaging on the core issue—whether the Court should order Facebook to de-designate as confidential 46 documents because they were leaked by a third party in violation of multiple court orders—Plaintiffs use their brief to seize on meritless claims of mootness and waiver.

*First*, Plaintiffs argue the Protective Order resolves this dispute. But the Protective Order does not address or contemplate a scenario where, *after* the Protective Order was entered, a third party leaked documents also produced in this case in violation of another court's orders. This is why courts have "inherent authority" to modify protective orders. Plaintiffs decline to acknowledge this authority.

*Second*, Plaintiffs argue this dispute is moot. This position is surprising given that Plaintiffs—

not Facebook—raised this dispute, and they ask the Court to reach the merits to order Facebook to reproduce improperly leaked documents without confidentiality stamping. *See* Dkt. 643-2 (Pls' Aug. 21, 2020 letter). Facebook seeks only the status quo: an order rejecting Plaintiffs' requests that Facebook be required to reproduce documents without confidentiality stamping and that the Court unseal one document it sealed in October. This dispute does not raise an issue of Article III mootness, which Plaintiffs recognize by asking the Court to issue an order on the merits.

*Third*, Plaintiffs suggest the equities require de-designation. But Plaintiffs identify no legitimate interest in requiring de-designation—nor could they, since Plaintiffs have the documents in hand and may use them in this litigation. To the contrary, they make clear that they seek de-designation to more broadly paint Facebook in a negative light and avoid filing single-page sealing requests. These purported interests do not come close to overcoming the countervailing interests in securing the integrity of protective orders, avoiding interference with Superior Court proceedings, and preventing additional harms to Facebook caused by Six4Three's leak.

The Court should hold that the leaked documents are not stripped of confidentiality protections in this matter. With respect to these documents, the parties should continue to follow the sealing provisions set out in the Protective Order and Local Rules, under which documents marked "Confidential" or "Highly Confidential" are filed under seal, and the designating party provides appropriate support for sealing, considering the context in which the materials are filed.

**ARGUMENT**

**I.     The Protective Order Does Not Require De-Designation.**

Plaintiffs' lead argument—that the Protective Order resolves this dispute both substantively, because the documents at issue were "in the public domain at the time of disclosure" Opp. 4 (quoting Dkt. 122, ¶ 3(a)), and procedurally, because Facebook did not comply with the Order's meet-and-confer timing requirements—fails for a number of reasons.

**A.     Good Cause Exists to Maintain the Confidentiality Designation, Including by Modifying the Protective Order if Necessary.**

Plaintiffs' reliance on the language of the Protective Order to argue that Facebook is required to de-designate the documents ignores this Court's inherent authority to modify protective orders for good cause. Even if the documents Plaintiffs challenge were not considered confidential under a hyper-

technical reading of the Protective Order, there exists good cause for the Court to exercise its "inherent authority" here. *Johnson v. City & Cnty. of San Francisco*, 2012 WL 104635, at *6 (N.D. Cal. Jan. 12, 2012). An appropriate revision would modify the Protective Order so that it protects information in the public domain resulting from "a violation of this Order *or another court's protective order*." See Opening Br. 13 n.4.

This Court and others have recognized that documents "maintained in a non-public manner" are still entitled to protection, and their confidentiality preserved, even after they have entered the public domain, where they have become public only because of wrongful or inadvertent conduct. *Doherty v. State Farm Gen. Ins. Co.*, 2020 WL 2510642, at *3–*4 (C.D. Cal. Mar. 4, 2020); *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *1, *5 (N.D. Cal. Mar. 26, 2013). The Court has inherent authority to incorporate that principle into the Protective Order. *Johnson*, 2012 WL 104635, at *6.

Plaintiffs decline to address the Court's authority to modify protective orders for good cause. Instead, they argue no remedy is needed because Six4Three was justified in leaking the documents. Opp. 2–3. But the Superior Court explicitly rejected Plaintiffs' depiction of Six4Three's conduct, finding Six4Three's actions "unconscionable." Six4Three was not a passive player in a situation orchestrated by Parliament—Six4Three solicited Parliament's investigation. Six4Three's counsel and its principal, Ted Kramer, invited numerous journalists, legislators, and regulators to find a mechanism to bypass the Superior Court's protective order. Dkt. 643-6 at 3–8. One of these journalists connected Mr. Kramer with a member of Parliament. Dkt. 643-8 at ¶¶ 3–4, 9. Mr. Kramer informed the journalist that he would be traveling to London, and gave her the name of his hotel. *Id.* ¶ 10. Upon his arrival in London, Mr. Kramer was served with document requests from the U.K. House of Commons at his hotel, and the Superior Court ordered him **not to comply**. *Id.* ¶¶ 11, 13; Dkt. 643-7 ¶ 1. Mr. Kramer willfully violated that order. He voluntarily traveled to Parliament, accessed a folder of confidential documents on his laptop, copied a subset to a thumb drive, and handed it over to a member of Parliament—all in direct violation of the Superior Court's protective order and subsequent orders. Dkt. 643-8 ¶¶ 16, 18; Dkt. 643-6 at 9–10. Contrary to Plaintiff's assertion that "[Mr. Kramer] was escorted to parliament," which is sourced from the same journalist who precipitated the leak, Opp. 2–3, Mr. Kramer himself explains that he "concluded on [his] own that [he] needed to address this matter with

Mr. Collins directly," and "went to Parliament" voluntarily.  Dkt. 643-8 ¶¶ 15–16.

Although this misconduct occurred in a different case, it presents precisely the circumstances that provide good cause to modify a protective order.  *See* Opening Br. 13 & n.4.  Plaintiffs acknowledge that when a party to a litigation "intentionally leak[s] confidential information," lifting confidentiality designations in *that case* is inappropriate.  Opp. 8 (citing *City of Almaty v. Ablyazov*, 2018 WL 1229730, at *6 (S.D.N.Y. Mar. 5, 2018)).[1]  There is no reasoned basis to find that a party's intentional leak should have the inconsistent and inequitable result of requiring confidentiality designations *on the same documents* to be lifted in *other lawsuits*.  Such a rule would create perverse incentives, encouraging litigants to coordinate and create a "back door around" documents' confidentiality and render protective orders a "half-way proposition."  *Al-Haramain Found., Inc. v. Bush*, 507 F.3d 1190, 1193 (9th Cir. 2007) (discussing state secrets privilege).[2]

The Protective Order in this case, which the Court entered in August 2018, was not intended to give this Court's blessing to purposeful violations of other courts' orders.  And it certainly was not intended to force Facebook to automatically waive an otherwise valid confidentiality claim if a party to a different litigation willfully leaked materials produced in both cases, in violation of court orders (after the Protective Order was entered).  The Protective Order plainly protects against wrongful disclosures and simply did not address this scenario.  That is because, in August 2018, nobody expected a party in another case would willfully violate *multiple* court orders to leak confidential materials also produced in this case and that Plaintiffs would go out of their way to find the leaked documents.  "In California, a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting."  *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (quotation marks omitted).  If the Court finds that the Protective Order's text would call for Facebook

---

[1]  Given Plaintiffs' agreement with *City of Almaty*, it is strange they point to the San Francisco Superior Court's decision in *Styleform IT v. Facebook, Inc.* as controlling.  Melamed Decl. Ex. 3 at 2; *see* Opp. 6.  In any event, that court merely chose between competing proposals for a protective order based on limited briefing and did not address good cause to seal unlawfully leaked documents.  *See* Melamed Ex. 2 at 8–9.

[2]  Plaintiffs state that they were not involved in the initial wrongful disclosure of the Six4Three documents.  Opp. 1 n.1.  Of course, Facebook never said they were.  *See* Opening Br. 2–5, 9 n.3.  And Plaintiffs do not attempt to refute the concern Facebook raised about coordination between parties in different cases.  *See id.* at 9 n.3.

to de-designate the documents, the Order should be modified as needed so that it accomplishes what the parties intended and protects the confidentiality of information that is in the public domain only because of a violation of *any* court's order.

### B.     Facebook Did Not Waive Protection Under the Protective Order

Plaintiffs next argue Facebook waived confidentiality under the Protective Order by not filing this briefing earlier. Plaintiffs baldly state that after they sent their August 21 letter challenging the confidentiality of the documents at issue, "Facebook did not meet and confer" with them and that "Facebook's first communication about these documents was the filing of an emergency administrative motion on October 2, 2020." Opp. 5. Plaintiffs misrepresent the record, which their own filings confirm.

After Plaintiffs initially challenged some (but not all) of the documents at issue in a letter dated August 21, 2020, Facebook raised Plaintiffs' letter days later during a regularly scheduled videoconference meet and confer, where Facebook asked Plaintiffs whether they objected to Facebook's confidentiality designations solely on the basis that Six4Three leaked the documents. Plaintiffs indicated they had additional "substantive" objections, and Facebook encouraged Plaintiffs to put those objections in writing. When Plaintiffs did not follow up, Facebook raised the issue again during a September 15 meet and confer. Sept. 15, 2020 email from L. Mumm to M. Montgomery et al. ("Facebook will be prepared to discuss . . . Plaintiffs' August 21 letter regarding Facebook's confidentiality designations[.]"). During these discussions, Facebook made clear it would not waive its assertion of confidentiality over the documents, and Plaintiffs again indicated they intended to raise objections to the designations on additional grounds. Facebook did not file a motion while the parties' meet-and-confer efforts were ongoing, consistent with the Court's instructions that the parties should seek to resolve and narrow issues without judicial intervention.

Plaintiffs previously acknowledged these meet-and-confer efforts. In a September 24 joint statement, Plaintiffs reported: "Facebook has refused to revoke its confidentiality designations" for these documents. Dkt. 517 at 3. In response, Facebook requested "full briefing" if the "Court [were] inclined to order that materials leaked in violation of a protective order should not be treated as confidential." *Id.* at 8. The Court declined to take up the issue. Four days later, Plaintiffs intentionally

circumvented the Protective Order in this case and filed a leaked version of one of the confidential documents on the public docket.  Dkt. 526-3.  Attempting to justify their own violation, Plaintiffs argued—as they do here—that the Protective Order authorized it.  Dkt. 531 at 4–5.  The Court did not entertain this argument, locked the docket entry, and ordered the parties to continue their meet-and-confer efforts.  Dkt. 534.

It is simply not true that "Facebook's first communication about these documents was the filing of an emergency administrative motion on October 2, 2020."  Opp. 5.  Plaintiffs were well aware that Facebook opposed de-designation as early as late-August 2020 and long before Facebook filed its October 2 emergency motion.  Facebook did not waive the protections of the Protective Order.

## II.     This Dispute Is Not Moot.

In arguing that this dispute is moot, Plaintiffs seem to forget that it is *Plaintiffs* (not Facebook) who raised this issue and required the parties and the Court to invest substantial resources over the course of *nine months* to address it.  Indeed, Plaintiffs' frontline argument is that the Court should reach the merits to hold that the Protective Order "resolves this dispute."  Opp. 4.  In so asking, Plaintiffs seem to recognize the Court *can* "affect the rights of litigants" before it.  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  Otherwise, the Court could not issue the order Plaintiffs request.

Plaintiffs instead seem to argue Facebook's *position* is moot because Plaintiffs believe Facebook is not entitled to maintain the confidentiality of documents that are "in the public domain." *See* Opp. 6.  But mootness is about a federal court's "Article III" jurisdiction to hear "cases or controversies," not parties' positions.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  An argument about the "legal availability of a certain kind of relief" goes only to the merits of a dispute—not the Court's authority to hear it.  *Chafin*, 568 U.S. at 174.  *Doe No. 1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012) and *Constand v. Cosby*, 833 F.3d 405 (3d Cir. 2016)—which Plaintiffs cite—are not to the contrary.  The courts in those cases confronted appellate courts' Article III jurisdiction to hear appeals, in which parties sought to unwind lawful disclosures pursuant to district court orders.  These cases have nothing to do with a party's ability to mark documents confidential under a Protective Order.

If Plaintiffs' conception of mootness were correct, courts would *never* have jurisdiction to seal documents that have been disclosed—even due to inadvertence or bad faith.  But courts do so regularly.

Indeed, the Supreme Court has rejected a similar mootness challenge, holding that an appeal of an order disclosing "unlawfully" acquired documents to the government was not moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 10, 12–15 (1992). Even though the Court could not "withdraw all knowledge or information" of the materials or "provide a fully satisfactory remedy," it could still provide "meaningful relief." *Id.* at 12–13. Numerous other courts have reached the same conclusion.[3]

Rather than ask the Court to reverse the irreversible, Facebook asks the Court to preserve the status quo by not ordering Facebook to reproduce its documents without confidentiality stamping and declining to unseal one document the Court sealed previously. Maintaining the status quo would affect the parties' rights in several ways, which is all that is required for a live controversy. For one thing, maintaining the status quo would ensure Plaintiffs do not compound the harm resulting from Six4Three's misconduct. To that end, Plaintiffs badly misrepresent the degree to which the materials they challenge are available—none of the articles Plaintiffs cite links directly to any of the documents they challenge. And, as far as Facebook is aware, the 46 challenged documents are not specifically curated publicly and would be difficult to locate. There is also significant value in reducing Plaintiffs' ability to weaponize Facebook's confidential information.[4] Plaintiffs concede they wish to use these cherry-picked materials—which they already have access to and can use in this litigation as relevant to their claims—for non-litigation purposes, to publicly paint Facebook's CEO in a negative light, *see* Opp. at 11, which would only compound the leak by allowing Plaintiffs to use litigation materials to

---

[3] In *Dukes v. Wal-Mart Stores, Inc.*, this Court recognized that a "leaked confidential memorandum" whose contents were "describe[d]" in the New York Times was not stripped of attorney-client privilege because the disclosure was "unauthorized and involuntary" and the defendant had taken "extensive efforts to maintain the Memo's confidentiality." 2013 WL 1282892, at *1, *5 (N.D. Cal. Mar. 26, 2013) (Corley, J.). Similarly, documents can remain confidential even though they were "publicly disclosed when a third party posted [them] on a website," *Pullman v. Alpha Media Publ'g, Inc.*, 624 F. App'x 774, 778–79 (2d Cir. 2015), or "uploaded" in full to a "website" and excerpted in news media, *City of Almaty*, 2018 WL 1229730, at *4, *6. Although *Pullman* and *City of Almaty* did not discuss mootness, federal courts have an independent obligation to assure themselves of jurisdiction, including mootness. *Von Haar v. City of Mountain View*, 584 F. App'x 297, 297 (9th Cir. 2014).

[4] Plaintiffs belatedly argue the information is "almost certainly out of date and irrelevant to Facebook's current competitive position." Opp. 9. Plaintiffs did not raise this position in their August 21 letter, and have waived it. In any event, arguments that documents "should be disclosed because information in [them] is old . . . ignores the commercial reality that such information may still reveal [a party's] thought processes and strategies." *Muench Photography, Inc. v. Pearson Educ., Inc.*, 2013 WL 4475900, at *4 (N.D. Cal. Aug. 15, 2013). Indeed, the Superior Court found the documents contain "confidential" information. Mehta Decl., Ex. 3 at 3, 4, 6, 9, 10, 11, 13; *id.*, Ex. 10 ¶¶ 5, 6.

create one-sided publicity about the case.

Maintaining the status quo would also avoid undermining the integrity of the Superior Court's orders and ongoing proceedings. The Superior Court's protective order requires the documents to be maintained in confidence, and proceedings remain ongoing regarding Six4Three's violation of that order and a later order explicitly prohibiting the public disclosure of these materials. De-designating the same documents here would chip away at those orders and risk interfering with the Superior Court's ability to design equitable remedies to address Six4Three's misconduct. *See infra* at 10.

The Court does not lack subject matter jurisdiction to entertain this dispute.

### III.  The Balance of Interests Favors Maintaining Confidentiality.

#### A.  Plaintiffs Identify No Legitimate Interest in Forcing De-Designation.

Plaintiffs cannot claim any significant need to de-designate the documents because they "already have the information," *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 2018 WL 3930141, at *8 (N.D. Cal. Aug. 16, 2018), and they cannot claim any "prejudice[ ]" if the documents remain confidential because they are not missing "important evidence" they need to litigate this case, *AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*, 2021 WL 292173, at *5 (N.D. Cal. Jan. 28, 2021). Plaintiffs' other asserted interests fail to show otherwise.

**First,** filing under seal does not harm Plaintiffs. Plaintiffs argue that allowing Facebook to maintain its confidentiality designations harms Plaintiffs, because, if Plaintiffs choose to file these 46 documents at some point in the future, they would need to file them under seal. Opp. 10. This is not a legitimate harm. Filing materials under seal simply requires Plaintiffs to file a stock, one-page sealing request citing the Protective Order, check a box when they upload their filing, and email the unsealed documents to the Court. Facebook, not Plaintiffs, is required to follow up supporting the sealing request with appropriate evidence, considering the context in which the materials were filed. There is no harm in the parties continuing to follow this procedure for the documents at issue.

**Second,** the public does not have an interest in materials produced in discovery. Plaintiffs say the public has a "strong interest in access to the 46 documents." Opp. 8. But there is no "right of access" to "discovered, but not yet [filed], information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–33 (1984). Even "when a party attaches a sealed discovery document to a non-dispositive motion,

the usual presumption of the public's right of access is rebutted." *Phillips v. Gen. Motors*, 307 F.3d 1206, 1213 (9th Cir. 2002). Plaintiffs cite no authority suggesting class actions have different rules. Plaintiffs attached one document to a discovery motion, and never filed the other 45. There is no right of public access, and Plaintiffs have no right to publish the documents for non-litigation purposes.

**Finally,** Plaintiffs can use the documents in this litigation subject to the Protective Order and local rules, but say they prefer to share the documents publicly because they believe the materials show Facebook's CEO engaged in wrongdoing. Opp. at 11. Plaintiffs cite no authority supporting the view that purportedly unflattering documents are less confidential and available for use outside of the litigation in which they were produced. The exact opposite is true. Allowing a party to "publicly discredit [its adversary] in the media before the information . . . becomes material to the case" favors maintaining confidentiality. *Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2015 WL 12466532, at *7 (S.D. Cal. July 16, 2015).

**B.     There Are Significant Interests That Support Maintaining Confidentiality.**

As described above, significant public and private harms would result if the Court ordered Facebook to de-designate the documents, which Plaintiffs largely decline to dispute. *See supra* at 7–8. The public interest also balances strongly against requiring de-designating the documents.

**Requiring de-designation would undermine the integrity of protective orders.** As the Superior Court explained, the very "integrity of our litigation system" depends on parties trusting that protective orders mean what they say—and that courts will not erode their protections. Mehta Decl., Ex. 12 at 40:13–16; *see* Opening Br. 13–14. In commenting on Six4Three's leak, the Superior Court lamented, the "principles of confidentiality and stipulated protective orders go beyond this case," and implicate "our system of justice." Mehta Decl., Ex. 12 at 40:14–22. If courts and parties cannot "have confidence" in protective orders, "then we've all lost." *Id.* at 40:17–22.

This Court's role in promoting public trust does not require ignoring Six4Three's bad act in another courtroom. To the contrary, the Court has an institutional interest in ensuring that parties do not skirt *other* courts' protective orders. *See Jang v. Bos. Sci. Corp.*, 2006 WL 8430761, at *3 (C.D. Cal. July 13, 2006) ("This court will not order production of documents that are protected from disclosure by the [protective] order of another district court."). A wrongful leak is a wrongful leak,

and a document's confidentiality does not turn on the identity of the person who leaked it. *See Pullman*, 624 F. App'x at 779 (affirming district court decision to seal transcript after a "third party . . . posted the unredacted transcript" "online"). There is no basis to hold that when a party wrongfully leaks a document it remains confidential in *that case* but must be de-designated as confidential *in other cases*.

Plaintiffs are silent on this point. Opp. 8–9. This Court should not be.

**Requiring de-designation would risk interfering with ongoing state court proceedings**. Facebook should not be forced to de-designate documents that the Superior Court has ordered the parties to maintain confidentially in the Six4Three litigation. Nor should this Court risk interfering with ongoing state court proceedings regarding the leaked documents. There is nothing "force-fit" about such concerns here. Opp. 9. The San Mateo court ordered Six4Three not to disclose Facebook's documents on pain of "contempt," Mehta Decl., Ex. 4 ¶ 1, and federal courts abstain from stepping on state courts' toes where "the State's contempt process is involved," *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977), or where a state court is considering how to "displin[e]" attorneys, *Rosenthal v. Carr*, 614 F.2d 1219, 1220 (9th Cir. 1980). This Court should ensure the San Mateo court has discretion to issue appropriate remedies in the Six4Three litigation. For example, the San Mateo court could issue a properly narrowed order prohibiting parties from further disseminating the documents publicly, or fine Six4Three for each instance of wrongful republication—remedies that could be scuttled if this Court opens the front door and invites the public to access the documents through this Court's docket. *See In re People v. Bryant*, 94 P.3d 624 (Colo. 2004) (en banc) (affirming injunction against further media distribution of court documents incorrectly released to them).

## CONCLUSION

After forcing the parties to negotiate this issue for more than nine months, Plaintiffs have *never* explained why it matters to them or justified their request for permission to exacerbate another party's wrongdoing. "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders," so a "court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of [FRCP 26]." *Phillips*, 307 F.3d at 1211–12 (quotation marks omitted). Under the circumstances, the 46 leaked documents should remain subject to the confidentiality and sealing provisions of the Protective Order.

| | | |
|---|---|---|
| 1 | DATE:  May 25, 2021 | Respectfully submitted, |
| 2 | | **GIBSON, DUNN & CRUTCHER, LLP** |
| 3 | | By: */s/ Orin Snyder* |
| | | Orin Snyder (*pro hac vice*) |
| 4 | | osnyder@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 5 | | 200 Park Avenue |
| | | New York, NY 10166-0193 |
| 6 | | Telephone:  212.351.4000 |
| | | Facsimile:  212.351.4035 |
| 7 | | |
| | | Deborah Stein (SBN 224570) |
| 8 | | dstein@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 9 | | 333 South Grand Avenue |
| | | Los Angeles, CA 90071-3197 |
| 10 | | Telephone:  213.229.7000 |
| | | Facsimile:  213.229.7520 |
| 11 | | |
| | | Joshua S. Lipshutz (SBN 242557) |
| 12 | | jlipshutz@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 13 | | 1050 Connecticut Avenue, N.W. |
| | | Washington, DC 20036-5306 |
| 14 | | Telephone:  202.955.8500 |
| | | Facsimile:  202.467.0539 |
| 15 | | |
| | | Kristin A. Linsley (SBN 154148) |
| 16 | | klinsley@gibsondunn.com |
| | | Martie Kutscher (SBN 302650) |
| 17 | | mkutscherclark@gibsondunn.com |
| | | GIBSON, DUNN & CRUTCHER LLP |
| 18 | | 555 Mission Street, Suite 3000 |
| | | San Francisco, CA 94105-0921 |
| 19 | | Telephone:  415.393.8200 |
| | | Facsimile:  415.393.8306 |
| 20 | | |
| | | *Attorneys for Defendant Facebook, Inc.* |

Gibson, Dunn & Crutcher LLP

11
DEFENDANT FACEBOOK, INC.'S REPLY BRIEF IN SUPPORT OF ITS CLAIM OF CONFIDENTIALITY