**Pages 1 - 13**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE

IN RE: FACEBOOK, INC. CONSUMER ) NO. 18-MD-02843 VC (JSC)
PRIVACY USER PROFILE LITIGATION, )
_____ )
                                 San Francisco, California
                                 Wednesday, June 23, 2021

**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES**:

For Plaintiffs:
        KELLER ROHRBACK LLP
        1201 Third Avenue, Suite 3200
        Seattle, Washington  98101
  BY: **DEREK W. LOESER, ESQ.**
      **CARI C. LAUFENBERG, ESQ.**
      **DAVID J. KO, ESQ.**

        BLEICHMAR, FONTI & AULD LLP
        555 12th Street, Suite 1600
        Oakland, California  94607
  BY: **LESLEY E. WEAVER, ESQ.**
      **ANNE K. DAVIS, ESQ.**

      **MATTHEW P. MELAMED, ESQ.**

For Defendant:
        GIBSON, DUNN & CRUTCHER LLP
        200 Park Avenue
        New York, New York  10166-0193
  BY: **ORIN SNYDER, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:  Katherine Powell Sullivan, CSR #5812, CRR, RMR
             Official Reporter - U.S. District Court

```
 1   APPEARANCES:   (via Zoom Webinar; continued)

 2   For Defendant:
                               GIBSON, DUNN & CRUTCHER LLP
 3                             1881 Page Mill Road
                               Palo Alto, California 94304
 4                     BY:     MARTIE KUTSCHER CLARK, ESQ.

 5                             GIBSON, DUNN & CRUTCHER LLP
                               333 South Grand Avenue
 6                             Los Angeles, California 90071
                       BY:     DEBORAH L. STEIN, ESQ.
 7
                               GIBSON, DUNN & CRUTCHER LLP
 8                             2100 McKinney Avenue, Suite 1100
                               Dallas, Texas 75201
 9                     BY:     RUSSELL H. FALCONER, ESQ.

10   Also Present:             HONORABLE GAIL A. ANDLER
                               DANIEL B. GARRIE, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | **Wednesday - June 23, 2021**                                    **8:31 p.m.** |

2              **P R O C E E D I N G S**

3                        ---o0o---

4          **THE CLERK:** Court is now in session.  Calling Civil

5    action 18-md-2843, In re Facebook, Inc.

6          You don't have to state your name, but just state your

7    name before you speak.

8          **THE COURT:** All right.  Good morning, everyone.

9          And good morning, Judge Andler and Mr. Garrie.  Thanks for

10   being here this morning.

11         So I didn't receive a joint status update, so I'm going to

12   set my own agenda based on the last update that I got, because

13   I need a joint one.  If I don't have a joint one, then I'm not

14   going to do it.

15         So what I think I need to do is set -- the last update, on

16   May 17th, the parties said they would be submitting a case

17   schedule in short order.  I don't believe I've received that,

18   so I want to give you a deadline to give that to me.  And the

19   deadline I'm thinking about is July 2nd.

20         **MR. SNYDER:** That's fine for Facebook, Judge.

21         **THE COURT:** All right.  Mr. Loeser?

22         **MR. LOESER:** Yes, that's great, Your Honor.  Thank

23   you.

24         **THE COURT:** Okay.  All right.  So July 2nd.  Hopefully

25   you can work with Mr. Garrie and Judge Andler to get that in.

1  If you don't have an agreement or what you don't have agreement
2  on then just submit competing proposals.
3      So the next issue that was raised in that update was the
4  app developer materials, which, of course, I had given my
5  guidance on that.  There was definitely stuff that wasn't
6  privileged that could be produced.
7      We had our discussion, and it turned out what the
8  plaintiffs needed might be in there.  So has that been resolved
9  or not?
10         **MR. LOESER:**  That has not been resolved, Your Honor.
11         **THE COURT:**  All right.  July 2nd, then, I want either
12 it's resolved or give me -- you know, what I need to know,
13 because I believe we came away from that hearing with Facebook
14 saying there was stuff that they could produce, so I need to
15 know what it is you're producing, what are you not producing,
16 and the plaintiffs saying why they need what they're not
17 producing.  Because I've already looked at this stuff.
18     The next issue was TAR.  Have the parties reached any
19 agreement as to that?
20         **MR. LOESER:**  Your Honor, the parties have not reached
21 agreement as to TAR.
22         **MR. SNYDER:**  Your Honor, may I be heard?  Because I
23 appreciate the agenda and we agree with it.
24     Just very briefly, we were doing great in mediation on all
25 these issues.  Beautifully.  And it was a nice traveling rodeo

1   of mediation and parties because Mr. Garrie was in Greece,
2   another one was here, and we all were getting along great.  We
3   were following each other in ours travels, working diligently
4   multi times a week.  And then about a month ago or so it became
5   less so.
6       And, from our perspective, just very briefly, and I don't
7   want --
8       **THE COURT:**  No, Mr. Snyder.  I do not want to get into
9   it.  I'm setting deadlines.  The parties can work with Judge
10  Andler.  And you're seeing Judge Chhabria tomorrow.  Raise it
11  with Judge Chhabria.
12      **MR. SNYDER:**  I wanted to ask --
13      **THE COURT:**  No, no.  My question was about TAR.
14      **MR. SNYDER:**  Yes.
15      **THE COURT:**  I assume you were saying something about
16  TAR.
17      **MR. SNYDER:**  Yes, I'll cabin it to TAR.
18      **THE COURT:**  Okay.
19      **MR. SNYDER:**  What we think would be helpful, Your
20  Honor, because I share your frustration, is that all these
21  issues be required to be the subject of mediation; that if we
22  reach an impasse on any issue, because Judge Andler and
23  Mr. Garrie have been really neck deep in all these issues that
24  they send Your Honor a report and recommendation.
25      **THE COURT:**  No.  I already rejected that.  I already

1  rejected that, Mr. Snyder.

2      And this was the whole thing.  The whole thing about the
3  mediator was a suggestion to the parties.  And it wasn't an
4  order.  It was a suggestion to the parties.

5      I do not have the power in this MDL to order you guys to
6  select a mediator.  And the parties selected and agreed to
7  Judge Andler with Mr. Garrie, and had been making great
8  progress, and I assume will continue to make great progress.

9      I think that what will be helpful is if I give a deadline
10 that will compress and help with making that progress.

11         **MR. SNYDER:**  I'm not --

12         **THE COURT:**  But I'm not going to order --

13         **MR. SNYDER:**  That's fine.

14         **THE COURT:**  -- anything.  You can take it up with
15 Judge Chhabria.

16         **MR. SNYDER:**  We will.

17         **THE COURT:**  And I think you should.

18         **MR. SNYDER:**  We will.

19         **THE COURT:**  He needs to get involved with this, which
20 I will tell him.

21         **MR. SNYDER:**  Thank you.

22         **THE COURT:**  I do not have that power.  I do not have
23 that power.

24         **MR. SNYDER:**  Thank you, Judge.

25         **THE COURT:**  Okay.  All right.  So I already addressed

1    that.
2        The TAR, to the extent there's a dispute, July 2nd.  And
3    then the search strings on groups 5 through 8.  Has that been
4    resolved?
5        **MS. KUTSCHER CLARK:**  That has been resolved, Your
6    Honor.
7        **THE COURT:**  Excellent.  All right.  So there's enough
8    to do.
9        So now I think you have a good agenda.  And whatever
10   else -- but I don't want to hear about anything else because I
11   don't have a joint statement on that -- you take up with
12   Mr. Garrie and Judge Andler.
13       One more thing is the motion with respect to the
14   confidentiality designations.  I will issue an order, but let
15   me tell you, I've read through that, and this is my view, which
16   is, the conduct that occurred in that state case is the most
17   egregious conduct I have ever seen.  I'm just floored by it.
18       And to say, in my view -- and none of the cases really
19   address this type of situation.  In my view, to say that
20   because of that clearly contemptuous conduct that now that
21   they're out in the public that that means that for this
22   litigation they cannot designate it as confidential -- and
23   we'll address that -- would simply encourage and compound --
24   what the state court judge found was he found the crime-fraud
25   exception with respect to this.

1    Not going to do that.  And I don't think the plaintiffs
2  actually want that because you know what's going to happen in
3  every case going forward?  The companies are going to fight
4  tooth and nail, harder than they already do, about producing
5  documents.  You know, I don't think you want that at all.
6    So I'm inclined to amend the protective order to say that
7  public disclosure for violation of the protective order in this
8  case or another protective order doesn't mean they're publicly
9  available.
10    That doesn't mean that they're all confidential or should
11  stay confidential, as plaintiffs point out.  But I don't have
12  this in front of me and you haven't met and conferred on that.
13  Some of them may be old, no longer of any competitive risk if
14  they're produced.
15    But then we'll just address that as we address in every
16  other case that I do every day, which is, if you want to raise
17  it prefiling, you can do that.  Or you can file it under seal,
18  and it is Facebook's burden to show that it is confidential.
19    And, as you guys know from practicing in this district, we
20  do not just accept that at all.  Nearly every motion to seal we
21  reject some of the things.  We look at that very carefully.  We
22  don't just do it.
23    So that's my view, but I don't -- I frankly don't think
24  any of my colleagues would ever say, oh, because in this other
25  case they essentially stole these documents and got them out

1    there in the public that in this litigation we're going to say
2    they can't address whether they're confidential or not.
3         Now, the plaintiffs, of course, have access to those.
4    Well, they had access to them anyway.  It's not a matter of
5    access.  It's not like they're privileged; right?  It's just a
6    matter of how they're to be used in this litigation.
7         Anyway, that's my view.  I don't know if the plaintiffs
8    want to be heard.
9         **MR. LOESER:**  Your Honor, I just have a question, which
10   is, I think what makes this a difficult issue is that the
11   document that we obtained from the NBC website, that's not
12   something that was produced -- you know, Facebook didn't
13   produce that to us and we turned around and took some stamp
14   off.  It was a public document that we obtained from a website,
15   which is available, you know, on 20 different websites.
16        **THE COURT:**  Yes.  No, no, no, I understand that.  And
17   I'm not saying you did anything wrong.
18        **MR. LOESER:**  Right.
19        **THE COURT:**  I'm just clarifying it going forward,
20   which is this:  I can't control that.  All I can control is
21   what happens in this litigation.  And what I'm saying, in this
22   litigation plaintiffs should not use any documents that were
23   stolen in that other litigation.  That's what I'm saying.
24        You can use documents produced in this litigation, but no
25   filing, no use in this litigation of what you get that was

1   stolen from the other litigation.
2       I'll give you an example.  I have another case that I'm
3   managing in which I denied discovery of certain documents, and
4   the defendants cleverly, I must say, then did a FOIA request to
5   those third parties to get the same documents.
6       And the plaintiffs then moved me to like, you know, stop
7   the FOIA request.  I said I don't have any power to do that.
8   It was state law FOIA.  State law says what it says.  If they
9   have the FOIA, they can respond.
10      What I can say is you cannot use those documents in this
11  case.  And so that's what we did.
12      So that's essentially what I'm saying.  You can go to that
13  website and download and get what you want.  Obviously, they're
14  publicly available.  You can't use them in this case.
15          **MR. LOESER:**  We can't use them, or they have to be
16  filed under seal if we use them, which is what Facebook was
17  seeking?
18          **THE COURT:**  If you're filing it under seal, you're
19  filing what Facebook has produced.
20          **MR. LOESER:**  Well, there are some documents that are
21  widely available public documents that Facebook has not
22  produced.
23          **THE COURT:**  Well, and were they stolen -- well, that's
24  an issue then.  If they're responsive, then if you're going to
25  be using them then I would think they have been produced;

1    right?

2        **MR. LOESER:** Well, if only.

3        **THE COURT:** So, look, you know the state court judge
4    issued its very long finding that those documents were made
5    public in violation of that protective order.

6        You should not use them in this case unless they are filed
7    under seal with that confidential designation. And then the
8    burden will be on Facebook that they are unconfidential like it
9    always is.

10       **MR. LOESER:** Yeah, that's a very helpful bit of
11   additional information. Thank you, Your Honor.

12       **THE COURT:** Yeah. That's the case. There's just no
13   way -- there's no way I'm going to condone that conduct, which
14   is really detrimental to just conducting litigation in -- you
15   know, in general, when parties do that. It's really
16   detrimental, I think, going forward. And so we have to be
17   careful about what we do about that even in other cases.

18       I'll write something, eventually, because there weren't
19   any other cases out there. And I think it would be helpful for
20   lawyers to know what to do with those documents that are out
21   there. You can see them. They're there. It's not right, of
22   course.

23       Okay. So I think then we need another date. And I was
24   going to propose July 28th, at 8:30. And if you want me to
25   discuss anything other than my own agenda I suggest you submit

1  a joint status update.
2      **MR. SNYDER:**  We hear you loud and clear, Judge.
3      **MR. LOESER:**  That's always the goal, Your Honor.
4  You know, just very briefly on this issue of the
5  confidence with Judge Chhabria, we did want you to know that we
6  thought it would be useful to have Mr. Garrie authorized to
7  call some balls and strikes as sort of the technical special
8  master.
9      That's why we really wanted to have a statement go to you
10 in which you saw that so that you didn't simply read in the
11 transcript with our conversation with Judge Chhabria that was
12 something we were interested in.  We very much wanted you to
13 know that, as well, because I think it would be very helpful in
14 this case.
15     **THE COURT:**  If the parties agree -- however you want
16 to use Judge Andler and Mr. Garrie, if you agree I'm on board.
17 I will not disagree with that at all.  At all.
18     **MR. LOESER:**  And I think the challenge is the "if the
19 parties agree" part.  And that's why we really wanted to raise
20 it with Judge Chhabria, because it sounds like Facebook might
21 not agree, in which case we just want to file a motion with the
22 Court to have that authority provided to Mr. Garrie.
23     And, again, we just wanted you to know what we were
24 thinking.
25     **THE COURT:**  All right.  Well, that's going to be up to

```
 1  Judge Chhabria.  Okay.
 2          MR. LOESER:  Thank you.
 3          THE COURT:  Thanks, everyone.
 4          MR. LOESER:  Bye-bye.
 5          MR. SNYDER:  Thank you, Judge.
 6          THE COURT:  Thank you, Mr. Garrie.  Go back to your
 7  vacation.
 8          MR. GARRIE:  Thank you, Your Honor.
 9      (Counsel thank the Court.)
10      (At 8:43 a.m. the proceedings were adjourned.)
11                           - - - - -
12
13
```

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Wednesday, June 23, 2021

*Katherine Sullivan*

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter