Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

July 2, 2021

**VIA ELECTRONIC FILING**

Honorable Jacqueline Scott Corley
United States District Court
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re Facebook, Inc. Consumer Privacy User Profile*,
            Northern District of California Case No. 3:18-md-02843-VC

Dear Judge Corley:

      The Parties respectfully submit this letter in response to the Court's order that the parties "file a stipulation regarding the use of technology assisted review (TAR) to filter non-responsive documents out of Facebook's review set" or, "[i]f the parties are not in agreement, . . . file a discovery dispute letter regarding the issue."  Dkt. 693 ¶ 3.

I.      **Plaintiffs' Position**

The pace of Facebook's document production is holding back all discovery in this case. Similar to what Plaintiffs reported six months ago, Facebook continues to produce roughly 9,000 documents per month, while reporting that the search terms had only a 10% efficacy rate. Facebook has produced only 58,000 documents out of nearly 3 million identified by these terms. Moreover, these numbers mostly reflect production almost entirely from the first half of custodians the Court ordered Facebook to search on May 15, 2020. Dkt No. 436 at 1. As of now, it is unclear how many documents are yet to be reviewed or how Facebook will complete that review by the proposed substantial completion deadline.[1]

Facebook has lamented that "more than 100 reviewers" were "spending a tremendous amount of time reviewing non-responsive documents" (Dkt. No. 650 at 9), noted that this is "very costly," and stated that it looked forward to working with the discovery mediators "to get to the finish line so we can get to the next stage of the litigation" (Dkt. No. 657 at 9). In early April, Facebook informed Plaintiffs and the Court that the most sensible solution was to use technology assisted review ("TAR"). Plaintiffs agreed to work with Facebook to craft a mutually acceptable TAR protocol, and Plaintiffs ultimately agreed that the mediators could decide what proposal to impose. This negotiation process lasted approximately three months.[2]

Four days ago, after Plaintiffs agreed to accept a mediators' proposal for a TAR protocol, Facebook abruptly informed Plaintiffs, through the mediators, that it rejects TAR as a solution and is returning to manual review, without explanation as to whether or how it intends to increase the pace of its review and production. Facebook's total withdrawal from the negotiations it commenced is shocking, and its conduct is an abuse of the discovery and mediation process.

Why did Facebook change its tune? Because doing so avoided transparency into how Facebook is defining relevancy in this action. This overarching relevancy dispute needs to be addressed in short order. Facebook is withholding significant amounts of Plaintiffs' data and

---

[1] The pace of Facebook's production does not match the case schedule it proposes. As of June 30, Facebook had produced fewer than 50,000 documents during 2021. In total, Facebook has produced 394,483 documents since the start of discovery. In comparison to production in similar complex cases, Facebook's production remains shockingly small. Juul has already produced more than 5.7 million documents in *In re: Juul Labs Inc. Marketing, Sales Practices & Prods. Liab. Litig.*, which was consolidated one year after this action. And Facebook has already produced more than 12 million pages of documents—more than six times the number here—in a different action, *Klein v. Facebook*, which was filed just eight months ago. Something has to change.

[2] When Facebook was unable or unwilling to provide a working protocol during mediation, at the mediators' suggestion Plaintiffs provided a near-complete protocol in 4 days. Facebook responded to Plaintiffs' protocol 21 days later with a document merely highlighting several aspects of what it wanted an eventual protocol to include. It never provided more. After further discussions, Plaintiffs agreed to accept, without prior review, a mediators' proposal.

1

also information relating to business partners in violation of the Court's clear orders on these topics.

In order to work effectively, a TAR protocol requires cooperation into and disclosure of how the algorithm is trained to prioritize relevant documents. Pltfs' Ex. B ¶ 13; *see id.* ¶¶ 14, 16-21. "A long line of cases holds that TAR requires, 'an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests.'" *In re Valsartan, Losartan, and Irbesartan Products Liability Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020) (quoting *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467, at *10 (D. Nev. July 18, 2014)); *see also* Pltfs' Ex. B ¶¶ 13-14. Once it became clear that TAR required cooperation and transparency, Facebook decided it didn't want to use TAR after all. It was an abuse of the mediation process, and disrespectful of Plaintiffs and the mediators' time and resources, for Facebook to propose TAR if it would not agree to any transparency into its relevancy determinations.[3]

Once again, Facebook has effectively broken the discovery process. The parties are back where they were three months ago. Facebook is producing no more than a few thousand documents each month. Presumably, millions of custodial documents remain for it to review. Moreover, during the pendency of the parties' TAR discussions, Facebook was unwilling to discuss the collection or production of other highly relevant sources of discovery such as non-custodial ESI, custodial ESI that is neither email nor chats, or additional targeted searches of existing or new custodians based on the documents it has produced.

Plaintiffs believe the use of TAR is necessary—not just for custodial documents collected for groups 5-8, but also for many of the other sources of documents Facebook has been unwilling, so far, to discuss. Plaintiffs therefore ask the Court to order Facebook to use Plaintiffs' proposed TAR protocol, attached as Plaintiffs' Exhibit A. As set forth in the Declaration of Kelly Twigger, attached as Plaintiffs' Exhibit B, Plaintiffs' proposal is reasonable and fair.

***TAR is necessary.*** TAR is required for two primary reasons. First, it will increase the pace of production, which remains too slow to meet the needs of the case and, in particular, the parties' proposed substantial completion deadline of January 31, 2022. TAR yields more accurate results than manual review and costs far less. *See* Maura R. Grossman & Gordon V. Cormack, *Technology Assisted Review in E-Discovery Can be More Effective and More Efficient Than Exhaustive Manual Review*, 17 Rich. J.L. & Tech. 3, at 44 (cost), 48 (accuracy) (2011). Thus, an appropriate protocol will help address Facebook's concerns and speed document production by prioritizing relevant documents.

Second, an appropriate protocol will require the parties, a neutral, or the Court to conclusively address foundational issues regarding relevance that have plagued discovery from the outset. Disputes over relevance have divided the parties from the start. The Court has resolved disputes regarding the scope of relevant data Facebook accumulates about the Named Plaintiffs (Discovery Order No. 9, Dkt. No. 557) and the relevant definition of "business partners" (Order re: Business Partners Discovery Dispute, Dkt. No. 608), but these are mere exemplars of the parties' divergent understanding of relevance. Nevertheless, Facebook

---

[3] Since April, the mediators and Plaintiffs' counsel have spent substantial time, and Plaintiffs' ESI expert Kelly Twigger and her staff have spent more than 60 hours, on TAR. Pltfs' Ex. B ¶ 10.

continues to define relevance in ways the Court rejected, such as continuing its refusal to produce Named Plaintiffs' data "obtained from third parties regarding a user's off platform activities" or "inferred from a user's on or off-platform activity." Dkt. No. 557 at 2. Permitting Facebook to use an undisclosed and improper definition of relevance to continue its drawn-out, linear review defers this dispute to later, deeply prejudicing Plaintiffs' ability to develop their case and prepare it for trial.

***Plaintiffs' TAR proposal is fair, reasonable, and consistent with other TAR protocols.*** As Plaintiffs' ESI expert Kelly Twigger explains in her declaration, Plaintiffs' proposal is rooted in best practices, as reflected in TAR protocols entered by other courts, while including several provisions adopted to address issues that are uniquely challenging in this case. Pltfs' Ex. B ¶¶ 8, 14, 16-17, 19-21, 22, 24-26. Plaintiffs' proposed TAR protocol addresses the parties' ongoing dispute over relevance, and requires cooperation and transparency at key points in the process, including in the coding of a sample set, on the definition of relevance to be used by document reviewers, in the contribution of documents to the TAR training set (the set of documents used to start TAR's relevance training), and in evaluating the testing to confirm that review has been sufficiently thorough. It also empowers a neutral to resolve any disputes that arise in TAR's implementation, so that such disputes are addressed rapidly by a neutral with technical and case-specific knowledge. *See* Pltfs' Ex. A; Pltfs' Ex. B ¶¶ 12-26.

***In the alternative, the Court should order entry of a mediators' TAR proposal.*** Plaintiffs stand by their commitment to accept the mediators' TAR proposal. Judge Andler and Mr. Garrie possess extensive experience as trained neutrals, vast expertise in dispute resolution and e-discovery, and deep understanding of the parties' positions and the case. They have spent hours discussing the best use of TAR in this case's particular posture with each party and considering competing TAR proposals. Plaintiffs are confident that they will propose a neutral, effective protocol that will cure core issues plaguing the case: the pace of discovery and the relevance framing for that discovery. It is for this reason that Plaintiffs seek Rule 53 authority for them—so that this case, finally, can move forward at an appropriate pace.

## II. Facebook's Position

There is no discovery dispute over whether Facebook will use TAR to filter non-responsive documents out of Facebook's review set. When Facebook proposed to use TAR in this way, Plaintiffs objected. With Judge Andler and Mr. Garrie's assistance, the parties have successfully mediated this issue. Facebook has agreed not to use TAR to filter out non-responsive documents, and Plaintiffs have not objected to Facebook's plan to complete its document review using linear human review.

In light of this mediated resolution, Facebook's view was that the parties did not need to file a discovery dispute letter and that this issue should be addressed by stipulation. Plaintiffs disagreed and said they intended to file a letter, even though they represented to Facebook that they did not intend to seek any relief from the Court. Facebook provides this brief statement to summarize the course of negotiations that led the parties to agree, with the mediators' assistance, that Facebook would not use TAR to filter out non-responsive documents.

As Facebook has repeatedly told the Court, we are eager to complete discovery and move this case to class certification, summary judgment, and (if necessary) trial. As the parties' lengthy search-string negotiations were winding down, Facebook began considering different ways that it might be able to expedite its review and production of documents.

With that goal in mind, Facebook proposed to Plaintiffs and the Court that it use TAR to filter out some of the non-responsive documents from the set of nearly 6 million documents yielded by the search strings. Dkt. 650 at 9. Under the parties' ESI Protocol, neither party is required to use TAR to "filter out non-responsive documents," but if either party wants to do so, the parties must "meet and confer . . . to negotiate a suitable TAR protocol." Dkt. 416 at 6 n.2. Accordingly, Facebook raised this issue in discovery mediation.

The parties then worked with Judge Andler and Mr. Garrie to determine whether they could agree on a TAR protocol that would achieve Facebook's goal of accelerating the completion of its document review and production. While Plaintiffs had previously opposed the use of TAR, instead proposing that Facebook should simply be required to produce all non-privileged documents that hit on any search string (Dkt. 650 at 2),[4] they agreed to mediate the issue. During mediation, however, Plaintiffs presented a series of burdensome and time-consuming conditions they would require in any TAR protocol, including:

- Plaintiffs' participation in the drafting of Facebook's document review protocol, and the ability to seek the Court's intervention if Facebook did not accept Plaintiffs' edits;
- Plaintiffs being allowed to participate in training and assessing the TAR model, including by reviewing non-responsive documents; and,
- Plaintiffs being able to litigate disagreements over responsiveness calls made by Facebook as to individual documents.

Plaintiffs' conditions were problematic on several levels. They appeared to be inconsistent with Judge Chhabria's prior ruling that Plaintiffs do not have the right to second-guess Facebook's responsiveness determinations;[5] to ignore both case law and commentary that says a receiving party has no right to be involved in a producing party's document review;[6] and to demand information about (and involvement in) Facebook's use of TAR that goes far beyond what is reasonable or appropriate.[7]

But Facebook's most pressing concern—by far—was that Plaintiffs' requirements would slow down, rather than make more efficient, Facebook's review and production of documents. Discovery in this case has been plagued by contentiousness and delay, yet Plaintiffs' proposed requirements would have opened the door to more of the same at every

---

[4] This proposal was curious (to say the least) given that Plaintiffs stipulated in the ESI Protocol that Facebook is *not* required to produce a document merely because it hits on a search term. Dkt. 416 at 6, § E, ¶ 2. Plus, Plaintiffs' proposal would not have accelerated the completion of Facebook's document production in any meaningful way; Facebook still would have had to review everything for privilege (as Plaintiffs acknowledged).

[5] 3/5/20 Hr'g Tr. at 8:7-10 (the Court explaining Facebook "would never be required to do a log of the stuff that they pulled out [of a production] and determined was irrelevant or non-responsive to your request" and denying Plaintiffs' request that Facebook do so).

[6] *E.g.*, *Kaye v. N.Y. City Health & Hosps. Corp.*, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020) (absent "identifying some deficiency in the production," receiving party does not have "a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process.").

[7] *E.g.*, *Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) ("the responding party it is best situated to decide how to search for and produce emails responsive to . . . discovery requests," and the responding party's disclosure of the "TAR software . . . it intends to use and how it intends to validate the review results . . . is sufficient information to make the production transparent."); Kelly Twigger, *Use of TAR*, available at https://www.ediscoveryassistant.com/use-of-tar/ ("a very important takeaway" from *Livingston* "is that plaintiffs' insistence that the [defendant] must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules of discovery").

turn. Plaintiffs wanted the right to participate in drafting a written review protocol; to be involved in training and assessing the TAR model; and to litigate sideshow disputes over the responsiveness of individual documents. Each of these components of Plaintiffs' proposal would have injected contentiousness, complexity, motions practice, and delay that would have negated any efficiencies that might otherwise have been gained from TAR.

Facebook expressed all of these concerns to Plaintiffs through the discovery mediators. Plaintiffs made it clear that they would not agree to Facebook's use of TAR to filter out nonresponsive documents if Facebook would not agree to these conditions.

After mediating the issue, Facebook concluded it would be able to complete its document review and production more efficiently by using traditional human review and avoiding the discovery disputes Plaintiffs would inevitably seek to litigate under any mediated TAR protocol. Facebook is now working to achieve the January 2022 substantial completion date that Plaintiffs proposed without using TAR to filter out non-responsive documents. Facebook appreciates Judge Andler's and Mr. Garrie's assistance in guiding the parties to a resolution of this issue that did not end in a litigated dispute and enabled them to agree on a substantial-completion deadline of January 31, 2022.

Dated: July 2, 2021                                              Respectfully submitted,

| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
|---|---|
| By: */s/ Derek W. Loeser*<br>        Derek W. Loeser | By: */s/ Lesley E. Weaver*<br>         Lesley E. Weaver |

| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*)<br>Lynn Lincoln Sarko (admitted *pro hac vice*)<br>Gretchen Freeman Cappio (admitted *pro hac vice*)<br>Cari Campen Laufenberg (admitted *pro hac vice*)<br>David J. Ko (admitted *pro hac vice*)<br>Benjamin Gould (SBN 250630)<br>Adele Daniel (admitted *pro hac vice*)<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel.: (206) 623-1900<br>Fax: (206) 623-3384<br>dloeser@kellerrohrback.com<br>lsarko@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>claufenberg@kellerrohrback.com<br>dko@kellerrohrback.com<br>bgould@kellerrohrback.com<br>adaniel@kellerrohrback.com | Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909)<br>Joshua D. Samra (SBN 313050)<br>Matthew P. Montgomery (SBN 180196)<br>Angelica M. Ornelas (SBN 285929)<br>555 12th Street, Suite 1600<br>Oakland, CA 94607<br>Tel.: (415) 445-4003<br>Fax: (415) 445-4020<br>lweaver@bfalaw.com<br>adavis@bfalaw.com<br>jsamra@bfalaw.com<br>mmontgomery@bfalaw.com<br>aornelas@bfalaw.com |

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*