# Plaintiffs' Exhibit A

**PLAINTIFFS' PROPOSED PROTOCOL RELATING TO
USE OF TECHNOLOGY ASSISTED REVIEW ("TAR PROTOCOL")**

The following protocol will govern the use of technology assisted review (TAR) to identify and produce electronically stored information that is relevant to a party's claim or defense.

1.      **General Provisions**

a.      **Transparency**. The parties agree that the discovery standards in the Federal Rules of Civil Procedure, on engaging in a reasonable and proportionate process, also apply to the use of TAR. The parties recognize that cooperation and transparency about TAR's implementation are critical to its successful use.

2.      **Definitions**

a.      **Confidence Interval (Margin of Error) and Confidence Level.** The confidence interval and confidence level characterize the certainty of the point estimate.

b.      **Elusion**. Elusion estimates how many relevant documents are in the predicted non-relevant set. Elusion under this Protocol will be determined as set forth in § 11.

c.      **Precision**. Precision measures the percentage of documents that are relevant among all the documents the TAR software identified as potentially relevant. Precision is calculated by adding the number of documents that are coded as relevant and the number of documents predicted to be relevant by active learning, then dividing that sum by the number of documents that are predicted relevant.

d.      **Recall**. Recall measures the percentage of documents found to be relevant by human reviewers. Recall is calculated by adding the number of documents that are coded relevant and the number of documents that are predicted relevant by active learning, then dividing that sum by the number of documents which are coded relevant by human reviewers.

e.      **Richness**. Richness (or prevalence) is the estimated proportion of documents in a data set that are relevant. Richness is calculated by dividing the number of documents in the sample that were coded relevant by the number of documents in the sample.

f.      **TAR Set**. This is the total set of documents that the workflow (the document review) will be conducted on.

g.      **TAR Training.** The TAR Tool uses training (TAR Training) to produce a predictive model, and the predictive model will be used to define the predicted relevant set. The number of relevant and nonrelevant documents necessary to produce a predictive model with good effectiveness will depend on the nature of the documents in the TAR Set, the difficulty of the relevance definition, and the particular TAR Tool used. TAR Training under this Protocol will be carried out as set forth in § 6 (the Sample Set) and § 8 (TAR Training).

3.      **TAR Tool**

a.      The Parties will use [*insert name of provider*]'s licensed TAR Tool, TAR 2.0 Continuous Active Learning program through Relativity Analytics (Relativity Active Learning version 2019.3.16.0).

4.      **Identification of Documents Included in TAR Set**

a.      The following documents will be included in the corpus against which TAR will be run:

  i.    Unreviewed email and chat documents that hit upon the parties agreed upon search strings for Groups 5-8;

 ii.    Any additional documents from custodians that the parties agree on;

iii.    Any additional non-custodial documents identified, including but not limited to, documents from the following sources: Quip, Tasks, Facebook Workplace Groups, Facebook Wikis, Sharepoint, G Suite (Google Drive), Zoho and Dropbox

b.      To the extent the parties disagree about the corpus of documents or the process for adding additional documents to the corpus in accordance with the process set out in Paragraph 12 of this proposal, the parties agree that such disputes should be submitted to the neutral or Special Master for resolution as set forth in paragraph 15 of this proposal.

5.      **Documents Not Included in TAR Set**

a.      Certain documents will be excluded from the corpus of documents subject to TAR because they are ineligible for TAR. For such documents, targeted collections will be implemented. Ineligibility for TAR will be defined by the Relativity Analytics tool, but would include:

      i.      Full families with all documents less than 0.2KB

      ii.     Spreadsheets that do not hit on any search terms

      iii.    Large documents over 30MB

      iv.     Documents with little or no text

      v.      Documents with otherwise ineligible file extensions and file types (e.g., JPEG, .zip, .mp4)

**6.      Sample Set for Relevance Set Prior to TAR**

a.      The Parties' TAR approach will include, but is not limited to, the use of a Sample Set to help assure that the Parties have a sufficient level of agreement regarding what constitutes relevance and non-relevance. (Section 8(a) identifies other documents to be included prior to TAR to train TAR regarding what constitutes relevance and non-relevance.)

b.      The Sample Set will be created by drawing a simple random sample of 2000 documents from the TAR Set.

c.      Facebook will conduct the first review of the Sample Set, and code each document as (1) relevant or not relevant and (2) privileged or not privileged. Facebook will provide Plaintiffs with access to all not privileged documents in the Sample Set with text files and corresponding native files, images and metadata in a format that complies with the entered ESI protocol, and provide a privilege log for any documents withheld for privilege reasons. Documents coded as privileged will not be removed from the Sample Set for the purposes of model training. Plaintiffs' Counsel may designate up to four individuals (plus up to two consultants) to aid in the review ("Plaintiffs' Designated Sample Set Reviewers") to be given access to review the Sample Set. This review may take place at such dates and times as the

Parties mutually agree either (a) at the offices of Gibson & Dunn, or at such other location mutually agreed to by the Parties, or (b) via a secure web-based viewer. Any documents coded not relevant by Facebook to which Plaintiffs' Designated Sample Set Reviewers are provided access as part of this review are provided for the limited and sole purpose of raising and resolving disagreements, if any, regarding the coding calls made by Facebook. Any such disagreements shall be recorded on a TAR Protocol Classification Dispute Log (the "Log"), which shall be in a form agreed upon by the Parties. Once Plaintiffs' Designated Sample Set Reviewers complete their review of the Sample Set, the Parties shall meet and confer to resolve any differences in coding designation. The Parties' review of the Sample Set, and conferral to resolve any differences in coding designation, shall be completed by [*insert date*]. If the parties are not able to resolve any differences, the issue shall be submitted for resolution to the Court, or if appointed or otherwise agreed on by the parties, to a Special Master or third party neutral.

d.      Plaintiffs' Designated Sample Set Reviewers shall not remove from the offices of Gibson & Dunn, or other location mutually agreed to by the Parties, any documents to which they are provided access in connection with the Sample Set review process, and shall not copy, record, print, image, photograph, fax, scan, or otherwise capture, transmit or share any document or any information contained therein, in any way, with anyone beyond the other Plaintiffs' Designated Reviewers conducting the review. Any document in native format accessed via secured web browser and opened in a native application by any Plaintiffs' Designated Sample Set Reviewer will be immediately deleted after it has been viewed in the native application.

e.      Once the agreed upon sample set is confirmed by the Parties, Facebook will calculate the richness of the Sample Set and provide that richness calculation to Plaintiffs.

**7.      Description of Relevance Review Criteria for Use During Review**

a.      **In Review Manual.** Facebook will draft a document detailing what it will consider to be relevant information to be used in the review manual for reviewers to use as a guide in coding documents for relevancy during the TAR review process, and provide that

document to Plaintiffs. Plaintiffs will have 5 days to propose modifications to the guide. After providing any requested modifications within the 5-day period, the parties will meet and confer within 10 days of Facebook's provision of the draft to Plaintiffs to resolve the issue. If, after meeting and conferring, the parties are not able to resolve any disputes on the guide, they will seek resolution from the Court, special master or third party neutral, whether court appointed or agreed upon by the parties, as to what information will be considered relevant during the Predictive Coding process.

   b. **Reviewer Training.** Facebook will conduct training either in person or by video for reviewers coding documents for relevance. Plaintiffs will be permitted to participate in the Reviewer Training via video conference for the part of the training that discusses relevance.

**8.** **TAR Training Process**

   a. Facebook will start the TAR Tool's active learning process with: (1) the Parties' agreed-upon coded documents from the Sample Set; (2) such other relevant and non-relevant documents as Plaintiffs identify, including documents that may be selected from targeted collections or other sources not limited to the TAR Set; (3) and additional documents upon which the Parties mutually agree. Once those documents are provided, the TAR system will automatically select documents for review based on predicted relevance. To allow the TAR Tool to learn from all possible definitions of relevance, the system will select for review combined collections of highly ranked documents, non-highly ranked documents, and documents about which the TAR Tool is uncertain.

   b. Based on the reviewer coding of other documents, each document will eventually receive a score from 0-100 (the "Classification Score"), with documents with a Classification Score closer to zero being predicted as less likely to be relevant and documents with a Classification Score closer to 100 being predicted as more likely to be relevant.

   c. The predictive model the TAR Tool uses will update itself continuously without need for human intervention.

d.      The TAR Tool may automatically exclude duplicative content from the review queue in order to avoid delays in training the model. These documents will still receive a Classification Score. Suppressed documents above or equal to the lowest score of any document classified as relevant by a reviewer will be reviewed at the end of the process.

e.      Facebook will not conduct any additional relevance review on documents determined to be relevant during the TAR process prior to production.

**9.      Manual Review of Documents Not Subject to TAR**

a.      Facebook may conduct manual, linear review of all documents not subject to TAR with the exception of embedded or extracted images from TAR-eligible documents. Embedded or extracted images from TAR-eligible documents will be suppressed from review, as their content is incorporated into TAR-eligible documents.

b.      Facebook will conduct manual review of all unclustered clusters identified by the TAR Tool ranked at 50.

**10.     Productions and Privilege Log**

a.      Facebook will disclose to Plaintiffs the number of documents with scores above the Classification Cutoff not being produced or logged as privileged.

b.      Facebook will produce any non-privileged documents determined to be relevant by the TAR process along with any non-privileged family members in accordance with the Stipulation and Order Governing Privilege Logs on file in this Action (Dkt. No. 462).

c.      When relevant, non-privileged or partially privileged documents subjected to TAR are produced, the production deliverables shall include an additional metadata field populated with a "Y" and labeled "DOCUMENT RECEIVED CLASSIFICATION SCORE," together with the other available metadata delivered for each document, in accordance with the Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents on file in this Action (Dkt. No. 416). When relevant documents that are not subjected to TAR are produced, the "DOCUMENT RECEIVED CLASSIFICATION SCORE"

metadata field shall be populated with an "N." Defendants shall retain all information regarding the Classification Scores assigned to each document in the Corpus. Plaintiffs reserve the right to request Classification Scores at a later date, and Defendants reserve the right to object to any such request.

        d.     Facebook will not conduct any additional, second level relevance review of documents identified as relevant during either (1) TAR Training or (2) manual review identified in paragraph 9 for documents not subject to TAR.

        e.     Facebook will provide rolling productions every 4 weeks consistent with the parties' Search Term Protocol (Dkt. No. 461).

        f.     Facebook reserves the right to screen all documents for privilege.

        g.     Relevant documents that are determined to be privileged will be listed on a privilege log consistent with the Stipulation on Privilege Logs on file in this Action (Dkt. No. 462).

**11.      Classification Cutoff and Validation**

        a.     Following initial TAR Training, Facebook will continue to review the prioritized review queue, as prioritized and delivered by the TAR Tool, consistent with the coding designations agreed to among the Parties. After sufficient review of the prioritized review queue such that the relevance rate in the TAR Tool is below 10% and the relevancy rate flat lines and stays flat for several rounds, Facebook shall notify Plaintiffs that they believe it is appropriate to freeze training and declare a Classification Cutoff. The Parties shall cooperate in the exchange of information and subsequent conferral to determine whether it is appropriate to set a Classification Cutoff at that point.

        b.     Facebook shall then conduct an Elusion test using the TAR Tool as follows:

            i.     The training process shall be frozen.

           ii.     The Classification Cutoff will be set at the lowest score of any document manually classified as relevant.

iii.  A simple random sample of 1,750 documents will be drawn from those un-reviewed documents in the TAR Set with a Classification Score below the Classification Cutoff (the "Elusion Test Sample").

iv.  The Elusion Test Sample will be manually reviewed by Facebook to determine the relevance of the documents in the Elusion Test Sample.

v.  Facebook will instruct reviewers for the Elusion Test Sample to review according to the predetermined categories for relevance, and shall not inform the reviewers of the documents that these documents fell below the classification score during the TAR process.

c.  Once the Elusion test has been run, Facebook will report the following to the Plaintiffs:

i.  The Classification Cutoff that was used in connection with drawing the Elusion Test Sample.

ii.  The estimated elusion rate (the number of relevant documents in the Elusion Test Sample divided by the number of documents in the Elusion Test Sample).

iii.  The number of documents in the Elusion Test Sample.

iv.  The number of documents from the Elusion Test Sample determined by reviewers to be relevant.

v.  The number of documents from the Elusion Test Sample determined by reviewers to be non-relevant.

vi.  The number of un-reviewed documents from the Elusion Test Sample below the Classification Cutoff.

vii.  The number of un-reviewed documents from the Elusion Test Sample above the Classification Cutoff, if any.

viii.   The number of relevant documents (as determined by manual review) among the 1,000 documents in the prioritized review queue that were reviewed immediately prior to the freezing of training and proposing the Classification Cutoff.

d.   Plaintiffs' Designated Reviewers shall have the opportunity to review all of the documents included in the Elusion Test Sample, without any knowledge of how any individual documents were coded by Facebook, in order to perform a blind comparison of the recall estimates provided.

e.   Review of the documents included in the Elusion Test Sample will be conducted using the same process outlined for review of the Sample Set documents set out in paragraphs 6(c) and (d) of this Agreement.

f.   If the number of relevant documents in the Elusion Test Sample, or the character or nature of such documents designated as relevant, indicates that the TAR Tool's model of relevance was too limited, then Plaintiffs and Facebook will discuss potential remedial action to identify an adequate proportion of the remaining relevant documents classified as non-relevant (also called the null set) by additional rounds of training by the Parties, including selecting a deeper Classification Cutoff or supplemental and prioritized training of the TAR model.

g.   If the Elusion test confirms that the review has been sufficiently thorough, then Facebook will review all un-reviewed documents with a predicted relevance at or above the Classification Cutoff (or, if Facebook so elects, produce such documents un-reviewed). For the avoidance of doubt, documents identified for manual review in paragraph 9 of this Order shall be reviewed (or, if Facebook so elects, produced un-reviewed) without regard to whether the Classification Score assigned to any such document is at or above the Classification Cutoff.

h.   To the extent that Facebook conducts Elusion tests prior to setting the proposed Classification Cutoff, Facebook shall provide information concerning each such earlier Elusion testing, including date/time of the Elusion test, the size of the below-cutoff population sampled

from, the number of documents in the Elusion test sample, and the estimated Elusion rate (the number of relevant documents in the Elusion test sample divided by the number of documents in the Elusion test sample).

i.        Facebook will calculate Recall at the time of the Classification Cutoff using the Recipes included in the Relativity Active Learning Guide v10.3 at section 7.8.4.3, estimating recall with a Confidence Level of 95% and a margin of error of 2.5% for both TAR reviewed and manually reviewed documents.[1]

**12.     Rolling Corpus**

a.        To the extent that either party seeks to add documents to the TAR Set, the Parties agree to meet and confer regarding that request. If the Parties are unable to reach agreement, the Parties shall submit the matter to the Court, or to the Special Master or third party neutral if appointed or otherwise agreed to by the Parties, for resolution.

b.        To the extent that the TAR Set requires additional relevance training based on the addition of new custodians or documents not previously considered by the relevance training set forth in paragraphs 6 and 7 of this Protocol, the Parties will meet and confer on a reasonable process to identify documents to train the TAR Tool. If the parties cannot agree on whether additional relevance training is needed, the issue will be presented to the Court, or to the Special Master or third party neutral if appointed or otherwise agreed to by the Parties, for resolution.

**13.     Additional Considerations**

a.        To the extent Facebook identifies any types of documents (e.g., Excel files, image files) within the TAR Set that they have reason to believe are not being captured effectively by the TAR model, Facebook shall meet and confer with the Plaintiffs about the documents. The

---

[1] The Relativity Active Learning Guide is available online at:
https://help.relativity.com/PDFdownloads/10.3_PDF/Relativity%20-%20Assisted%20Review%20Active%20Learning%20Guide%20-%2010.3.pdf

Parties will meet and confer regarding any dispute related to types of documents they believe are not effectively being captured by the TAR model.

b.      To the extent that any aspect of this TAR Protocol is not feasible or effective in practice for any reason, including without limitation the low richness of the Corpus and/or the effectiveness of the TAR Tool as applied to a particular category or class of documents, then the Parties shall meet and confer regarding alternative approaches to achieve the objectives of that aspect of this Protocol that is not otherwise feasible or effective, including without limitation the possibility of using search terms or stratifying the collection at appropriate stages of the TAR process. If the Parties are unable to reach agreement regarding any appropriate alternative approach(es), then the Parties may submit the matter to the Court, or to the Special Master or third party neutral if appointed or otherwise agreed to by the Parties, for resolution.

## 14.     Disclosure of TAR Process Results

a.      After Facebook has validated the TAR process results, it will promptly disclose the following information:

i.      the total number of documents included in the TAR Set;

ii.     the final estimated richness of the TAR Set both at the outset and at the completion of the TAR process and the sampling method used to estimate richness;

iii.    the estimated recall for the TAR Set, with the corresponding confidence interval;

iv.     the total number of documents classified as relevant (not family complete);

v.      the total number of documents classified as non-relevant (null set) (not family complete); and

vi.     the total number of documents reviewed for validation, with a breakdown of the total number of relevant and non-relevant documents identified.

## 15.     Disputes about TAR

a.      Any dispute arising as a result of the implementation of TAR may be submitted to the Court or to the Court appointed Special Master or third-party neutral for resolution.

b.      If the TAR results omitted significant relevant and relevant information, the requesting party may request the court to resolve the dispute. In resolving a dispute about the TAR results, the Court, or the Special Master or third party neutral if appointed or otherwise agreed to by the Parties, should take into account: (1) an earlier request of the requesting party to modify the terms of the proposed TAR process and the responding party's response: (2) an earlier request of the requesting party under to modify the ongoing TAR process and the responding party's response; and (3) a request by the requesting party under for an additional search and the responding party's response. Alternatively, the parties can agree jointly to appoint a Special Master or other third-party neutral to sample a reasonable number of documents randomly selected from the TAR null set and determine whether the TAR's results omitted significant relevant information. If the Special Master or other third-party neutral finds that the responding party reasonably conducted the TAR process and significant relevant information was not omitted, the requesting party will pay the that individual's full compensation. If the Special Master or other third-party neutral finds that the responding party did not reasonably conduct the TAR process and significant relevant information was omitted, the responding party will pay that individual's full compensation and will conduct an additional search. The Special Master or other third party neutral may also impose additional costs on the responding party – in addition to but not to exceed the amount of that individual's compensation – after taking into account the responding party's failure to address or adopt earlier requests by the requesting party to modify the TAR process.

**16.     No Waiver of Any Right to Serve Additional Discovery Requests**

a.      Nothing in the TAR Protocol prevents a party from serving additional document requests or objecting to requests, consistent with the Federal Rules of Civil Procedure, this

Court's local rules or standing order, and any discovery or case management order issued by the presiding Judge.