# Plaintiffs' Exhibit B

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **DECLARATION OF KELLY TWIGGER**<br>Judge:  Hon. Vince Chhabria and<br>Hon. Jacqueline Scott Corley<br>Courtroom:  4, 17th Floor |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### **DECLARATION OF KELLY TWIGGER**

2

I, Kelly Twigger, hereby declare under the penalty of perjury:

3
4
5

1.      I provide this declaration in support of Plaintiffs' Proposal for Technology Assisted Review.  I base this declaration on facts within my personal knowledge and, if called upon to testify, I could and would testify competently to these facts.

6
7
8
9

2.      I am the Principal of ESI Attorneys LLC ("ESI Attorneys"), a law firm dedicated to advising clients on issues in electronically stored information, including ediscovery, and a licensed attorney admitted to the Supreme Courts of Colorado and Wisconsin for more than 24 years.  I have been retained by Plaintiffs' Counsel as an expert on ESI issues for this litigation.

10
11
12
13

3.      I am one of the co-authors of the book Electronic Discovery and Records and Information Management Guide:  Rules, Checklists and Forms published and updated annually since 2013 by Thomsen Reuters, and a nationally recognized speaker and author on issues in electronic discovery and information law.

14
15
16
17

4.      For the last six years, I have served on the Planning Committee for and been a presenter at the University of Florida eDiscovery Conference, one of the premier ediscovery events held annually to provide practical advice to lawyers and legal professionals supporting the ediscovery process.

18
19
20
21
22
23
24

5.      Over the past 12 years, I have served as discovery counsel,  ESI expert and ESI Liaison in dozens of cases in federal and state courts across the country for both plaintiffs and defense in matters involving government investigations, copyright and trademark infringement, breach of contract, class actions and many other areas of the law. I have utilized TAR, including the Relativity TAR 2.0 tool, in multiple matters and am familiar with the drafting and implementation of TAR protocols for both plaintiffs and defendants. I have also produced and reviewed productions from TAR and know and understand the functionality of the TAR process.

25
26
27

6.      Following discussions with Plaintiffs' Counsel, I reviewed Facebook's proposal and identified the areas of concern in the proposal as well as the need for the parties to agree on a specific, well drafted TAR protocol to govern the process. I addressed those issues during the

28

mediation on April 30, 2021 with Mr. Daniel Garrie, including Plaintiffs' concern about how relevance would be defined during review, as well as what documents would be added to train the Active Learning Tool on the multiple individual issues in the case.

7.     I also reviewed the ESI Protocol agreed to by the parties and on file with the Court, which states that "the parties agree to meet and confer concerning search methodologies, including without limitation, the use of keyword search terms and/or the use of technology assisted review. The producing party will disclose to the receiving party if they intend to use TAR to filter out non-responsive documents. The parties will meet and confer at that time to negotiate a suitable TAR protocol." Dkt. No. 416 at 6 n.1.

8.     During that same mediation on April 30, 2021, Plaintiffs' Counsel advised Mr. Garrie that Plaintiffs agreed to use TAR to move review forward faster. During a subsequent mediation on May 17, 2021, Mr. Garrie asked Plaintiffs to draft a proposed TAR protocol by May 21, 2021 that included provisions to address Plaintiffs concerns regarding the process. In cooperation with Plaintiffs' Counsel, I worked with my team to identify issues and draft a TAR protocol that was provided to Facebook on May 21, 2021. In drafting Plaintiffs' Proposed Protocol, I reviewed prior protocols, court approved protocols from *In Re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371 at (N.D. Ill. Jan. 3, 2018) ("*Broiler Chicken* Protocol") and *In Re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, ECF #472 at (N.D. Fla. July 1, 2019) ("*3M* Protocol") as well as recent case law on TAR protocols and the implementation of the process. I also reviewed the Protocol (Exemplar) Governing Production Of Relevant Information Using Technology Assisted Review published by the Bolch Judicial Institute at Duke Law School in March 2019.[1]

---

[1]  A copy of the Exemplar Protocol is available at https://judicialstudies.duke.edu/wp-content/uploads/2019/04/Draft-Protocol-Exemplar-Governing-Production-of-Relevant-Information-Using-Technology-Assisted-Review-Bolch-Judicial-Institute-Duke-Law-School-March-2019.pdf.

2

9.      Facebook responded on June 11, 2021.  I conducted a review of Facebook's proposal, and assisted with Plaintiffs' written and oral responses thereto in advance of and during subsequent mediation sessions.

10.     Since April 30, 2021, ESI Attorneys has spent in excess of 60 hours reviewing, drafting Plaintiffs' proposals and responding to Facebook's proposals as well as participating in mediations on the issue of TAR.

11.     The purpose of TAR is to allow a producing party to use technology to identify documents more likely to be relevant and to pull them to the top of the proverbial stack for review before other, less relevant, documents. That is referred to as predictive relevance. At a certain point in review, relevance percentages become smaller and smaller, and it makes sense to stop reviewing. The TAR process takes input from documents identified as being relevant to the issues in a case (a TAR sample set), analyzes the documents in the review set against those sample set relevant documents, and assigns a predicted relevance score to each unreviewed document from 0-100. Reviewers then review batches with the highest numeric scores, meaning documents closest to 100. With each decision that a reviewer makes, the system takes that relevancy decision and recalculates a predicted relevancy score number every 20 minutes for each document that has not yet been reviewed. For example, a document with a predicted score of 25 can suddenly jump to score of 80 when documents are coded relevant that contain similar language following a recalculation by the TAR Tool.

12.     Relevance is the most critical part of the determination in TAR and it plays out in two ways – first in defining the TAR Sample Set, and second, in the definition of relevance that reviewers use to code documents. Here, Plaintiffs seek to participate in both selecting documents for inclusion in the TAR Sample Set, and in defining relevance for reviewers. Both practices are standard in both Court adopted TAR protocols as well as the Exemplar Protocol adopted following the Duke Conference at the Bolch Judicial Institute.

13.     Successful use of TAR depends on transparency, cooperation and a thoughtful process that contemplates the challenges of a particular matter. Plaintiffs' proposed protocol for

1    TAR in this matter is fair, reasonable and consistent with other court approved TAR protocols

2    adopted in federal courts across the country. The following paragraphs discuss specific sections of

3    Plaintiffs' Proposed Protocol and their importance to defining the process.

4          14.    **Transparency.** Plaintiffs propose language that "The parties agree that the

5    discovery standards in the Federal Rules of Civil Procedure, on engaging in a reasonable and

6    proportionate process, also apply to the use of TAR. The parties recognize that cooperation and

7    transparency about TAR's are critical to its successful use." This language is consistent with and

8    drawn in part from the *Broiler Chicken* Protocol and the *3M* Protocol.  *See also Da Silva Moore v.*

9    *Publicis Group*, 287 F.R.D. 182, 192 (S.D.N.Y. 2012) ("While not all experienced ESI counsel

10   believe it necessary to be as transparent as MSL was willing to be, such transparency allows the

11   opposing counsel (and the Court) to be more comfortable with computer-assisted review."); *Rio*

12   *Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 128 (S.D.N.Y. 2015)("Where the parties do not agree to

13   transparency, the decisions are split and the debate in the discovery literature is robust"); *The*

14   *Sedona Conference TAR Case Law Primer*, 18 Sedona Conf. J. 1 (2017).

15         15.    **TAR Tool.** Plaintiffs propose that Facebook use TAR 2.0 Continuous Active

16   Learning program through Relativity Analytics (Relativity Active Learning version 2019.3.16.0)

17   as its TAR Tool, which is commonly used.  Plaintiffs understand that Facebook has access to this

18   tool.  Plaintiffs further propose Facebook identify the service provider who will provide access to

19   the TAR Tool in order to facilitate communication and create a transparent process.

20         16.    **Identification of Documents Included in TAR Set.**  Stating with clarity what

21   documents will be included in review via TAR is of critical importance and is a standard element

22   in any TAR protocol. *See, e.g., Broiler Chicken* Protocol, *3M* Protocol; Bolch Judicial Institute,

23   Protocol (Exemplar) Governing Production of Relevant Information Using Technology Assisted

24   Review (2019), p. 2 ("The producing party will disclose sources of custodial and non-custodial data

25   that will be subject to review using TAR and the names and titles of custodians, including the

26   custodian's group or department if that is not reasonably apparent from the job title").

27

28

17.     Although the parties have agreed on search terms for Groups 1-8, there are potentially additional custodians, additional search terms to be used on additional or existing custodians, and additional non-custodial sources of data about which Plaintiffs do not know enough to understand whether they may be appropriate for the TAR process. Due to the need to move review forward, Plaintiffs propose that Facebook "draft a detailed listing of the custodians, information sources and other parameters of the data to be included in the TAR set for Plaintiffs to review and provide comments. The list should also identify with specificity all documents that will not be included in the TAR set. If new documents are added to the TAR set, Facebook will promptly inform Plaintiffs the category of documents added, and the parties will meet and confer regarding whether additional training is required. The parties will then meet and confer with the final agreed upon language to be incorporated by reference to this Protocol." Plaintiffs ask Facebook to define the <u>full</u> corpus of documents that will be reviewed using TAR, as is common in drafting TAR protocols. Such a process is consistent with the *Broiler Chicken* and *3M* protocols. *See, Id.*

18.     Common sense requires that the parties agree on the full body of documents that will be reviewed before beginning the TAR process, and in fact the scope of documents to be included impacts the process to be employed when new documents or issues are added to TAR. TAR depends on having relevant documents on each of the issues raised in documents being reviewed; if new issues are raised in documents added to the review set and documents discussing those issues have not been used to train the algorithm on relevance, those documents will not rise to the top and be reviewed as being relevant. Instead, they will sit lower down on the scale of 1-100 and may never be seen by the reviewers who receive batches of documents based on the scores assigned by the TAR Tool. Any disputes over the corpus of documents to be included in the TAR Sample Set would be resolved by a neutral, as discussed below.

19.     **Sample Set for Relevance Set Prior to TAR**.  Defining the documents identified as relevant and not relevant on each issue for inclusion in the Sample Set is fundamental to the TAR process.  Plaintiffs must therefore be permitted to participate in the process. Courts adopting TAR protocols in both the *3M* and *Broiler Chicken* cases acknowledged that the Sample Set is

5

defined by *both* parties, not just the producing party. The standard process for TAR is for both parties to agree on documents to be marked relevant and not relevant to teach the TAR algorithm, and to then allow the system to begin assigning a numeric value of 100-0 for relevance based on the agreed upon documents. Documents with a higher score will be reviewed sooner and the TAR Tool in use here will re-evaluate the score of each document based on inputs it receives from reviewers every 20 minutes.

20.     Here, Plaintiffs propose a process to draw a Sample Set that is similar to the process outlined in the *Broiler Chicken* protocol by selecting a random sample of 2000 documents to review for relevance. Plaintiffs propose that they be allowed to review the relevancy determinations made by Facebook on those 2000 documents, after Facebook removes any privileged or otherwise protected documents, with their own reviewers to ensure the correct definition of relevance is being used by reviewers for the Sample Set. While Plaintiffs were not provided the ability to review the Sample Set in the *3M* and *Broiler Chicken* cases, neither of those cases included a dispute over the definition of relevance.  Disputes regarding the relevance of documents in the Sample Set would be resolved by the neutral, as discussed below.

21.     **Description of Relevance Review Criteria for Use During Review**. The description of relevance for reviewers is the second important key to ensuring TAR identifies relevant documents. In keeping with the proposed process from the Bolch Judicial Institute's Protocol (Exemplar) Governing Production of Relevant Information Using Technology Assisted Review (2019)[2], Plaintiffs propose that Facebook draft a document detailing relevance for each issue in the case, and allow Plaintiffs to provide input. Those definitions would then be incorporated into the Review Manual.  Any disputes regarding the definitions would be resolved by a neutral, as set forth below.

---

[2] "The producing party will prepare a document identifying the responsiveness criteria, including a list of the main issues (i.e., information that it considers responsive to the discovery requests and relevant to claims and defenses) that will be used as its guide in coding and reviewing documents for responsiveness during the TAR training or review process."

22. **Classification Cutoff and Validation**. This section defines when Facebook will stop reviewing documents and then validate the TAR process. Plaintiffs propose a specific, defined process similar to the process in both the *3M* and *Broiler Chicken* protocols that utilizes Elusion testing with a sample of documents below the cutoff score.

23. **Rolling Corpus**. This section of the protocol defines the process for when new documents are added to the corpus of documents to be reviewed. Plaintiffs propose a process by which the parties meet and confer to understand whether the new documents raise issues that require additional training for the TAR tool and, if they disagree, to submit the process to a neutral.

24. **Additional Considerations**. This section, included in the *3M* and *Broiler Chicken* protocols, outlines a process for the parties to meet and confer if problems arise in the TAR process or if TAR itself is not feasible for an unexpected reason.

25. **Disclosure of TAR Process Results**. Plaintiffs' proposal on the information to be provided following TAR comes from the Bolch Judicial Institute's Protocol (Exemplar) Governing Production of Relevant Information Using Technology Assisted Review as well as the *3M* and *Broiler Chicken* protocols.

26. **Disputes about TAR Implementation or Results**. Plaintiffs outline a process, consistent with the *3M* and *Broiler Chicken* protocols that allows a party to raise issues concerning TAR with a neutral.  The neutral should be someone with knowledge about TAR and the case. Based on my participation during mediation, I believe that the mediators are well-positioned to act as  neutrals for purposes of deciding disputes that arise regarding TAR.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 2nd day of July 2021, in Boulder, Colorado.


By:  */s/ Kelly Twigger*            
Kelly Twigger

7