Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc*.
*Additional counsel listed on signature page*

July 2, 2021

**VIA ELECTRONIC FILING**

Honorable Jacqueline Scott Corley
United States District Court
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *In re Facebook, Inc. Consumer Privacy User Profile*,
Northern District of California Case No. 3:18-md-02843-VC

Dear Judge Corley:

The Parties respectfully submit this letter in response to the Court's order that the parties "file a stipulation regarding Facebook's production of App Developer Investigation (ADI) documents by July 2, 2021" and "if the parties are not in agreement, then by that same date they shall file a discovery dispute joint letter which identifies the documents Facebook has agreed to produce and which additional documents Plaintiffs believe should be produced." Dkt. 693 ¶ 2.

I. **Facebook's Position**
   a. **Facebook agreed to provide Plaintiffs "underlying facts" about ADI.**

Facebook offered to provide Plaintiffs the "underlying facts" Plaintiffs said would resolve this dispute. But, after months of negotiations, Plaintiffs rejected Facebook's offer; demanded massive volumes of data that are the focus of unrelated discovery requests that the parties are separately mediating; resurrected their demand for nearly all ADI communications; and demanded a reservation of rights to seek any additional ADI materials they may want in the future. This request ignores the Court's instructions and unwinds more than one year of forward progress.

The parties have been discussing Plaintiffs' demands for ADI materials since March 2020. During that time, Facebook's goal has been to provide as much information as it can without intruding on or waiving privilege. It has produced a wealth of information: a list of **all** apps suspended as a result of ADI (with details about each); a list of apps suspended for reasons other than non-cooperation with ADI; Facebook's requests to and communications with the developers it investigated; and all information Facebook received from developers, including audit responses.

Plaintiffs initially insisted they also need every document relating to ADI. This demand was hopelessly overbroad. It also targeted privileged materials, given that ADI was directed by Gibson Dunn and in-house attorneys to advise Facebook on litigation risks and strategy.

The parties first attempted to narrow Plaintiffs' request through a sampling exercise— Facebook reviewed all ADI documents relating to six apps, produced non-privileged documents, and logged privileged documents. Plaintiffs challenged every entry that did not include an attorney, and the Court allowed them to select 20 for briefing. After the parties briefed the 20 documents, the Court indicated that even if it ruled on the 20 documents, any ruling likely would not resolve the dispute and the parties would be back before the Court on "every single document." 04/06/2021 Trans. at 17:15-21; *infra* at 3. The Court explained such an exercise would be wasteful: "I don't think Plaintiffs need every single document. There's certain information, like you say, that you need and maybe it's not even . . . privilege[d]. There's going to be other information that may be privileged and I actually think you don't even need." *Id.*

The Court asked: "So what is it precisely that the plaintiffs need from that investigation?" *Id*. at 17:22-23. Plaintiffs clarified they do not seek emails among Facebook employees. "[T]he facts underlying these communications are what we're really seeking." *Id*. at 18:13-15; *id*. at 18:1-4. Plaintiffs had taken a similar position in their brief: "[t]he privilege does not apply to the underlying facts and information regarding ADI." Dkt. 611 at 3. Plaintiffs told Facebook the facts they need are data points about approximately 3,700 suspended apps. FB Ex. A, at 2.

Facebook offered to resolve this dispute by providing data about these 3,700 apps and made a robust proposal, attached as **FB Exhibit A**. The list of information Facebook offered, in addition to the materials it already produced, is extensive, spans multiple pages (*id.*), and offers what Plaintiffs said they need. Plaintiffs said they seek "[u]nderlying facts and information regarding the ADI," and specifically wish to know which apps misused user data and what data they may have been able to access. *See* Dkt. 611 at 15. Facebook offered that exact information.

Facebook offered to identify every type of data each of the 3,700 apps was able to access ("permissions"). It offered to identify how many users used each app, and how many gave each app access to each type of data. It offered to identify when each app was created and suspended and whether each was suspended for non-cooperation with ADI or otherwise. It also offered to identify the developers and businesses associated with each app, and other technical data. **Ex. A**.

On top of all of this, Facebook offered to "**identify all apps Facebook suspended, banned, or otherwise took enforcement action against through ADI for misuse of user data**." It even offered that Plaintiffs could request additional information about 20 apps of their choosing.

1

Plaintiffs' most recent proposal (**FB Exhibit B**),[1] asks for three more data points for the 3,700 apps. Facebook already produced one; for another Facebook agreed to provide the closest available proxy.[2] As for the Application Programing Interface ("API") call data Plaintiffs request, Facebook offered two types of available API information for the 3700 apps. Plaintiffs also ask Facebook to investigate and provide the number of data requests per year by each of the 3700 apps, for each API permission, going back to 2007 and regardless of whether requests for data were granted. This API call data does not "relate to" ADI simply because Plaintiffs demanded it as a condition to reach an agreement about already overbroad ADI RFPs. Plaintiffs have a separate RFP (unrelated to ADI) that seeks massive volumes of API call data—that are orders of magnitude larger than the data Relativity hosts for every litigation in the U.S. combined. Much of the information Plaintiffs seek relating to API calls does not exist. But even for data that does exist, little would be reasonably accessible, much less probative of any live issue in this case. The parties are separately mediating what types of relevant API call data could reasonably be provided. If the parties cannot resolve the dispute over the API call data RFP, Facebook intends to seek a protective order.

### b. Plaintiffs continue to demand nearly all ADI-related communications.

Rather than identify additional "underlying facts" and why they need them, late in the day during Monday's mediation, Plaintiffs demanded all "internal and external communications" related to ADI either (1) "involving employees in Facebook's Developer Operations and Platform Operations Teams, regarding [each] categor[y] [of communications with app developers]," or (2) "related to Phase 2 and Phase 3 of the ADI process," including "communications with counsel that are discoverable as business advice or [] pursuant to the dual-purpose doctrine."[3]

Plaintiffs seem to be reviving their demand that Facebook produce all, or substantially all, documents relating to Facebook's privileged legal investigation, including communications to and from attorneys. In other words, after representing that they are "really seeking" "the facts underlying these [ADI-related] communications," not the communications themselves (04/06/21 Tr. at 18:13-15)—and mediating for months the data Facebook could provide for 3,700 apps—Plaintiffs no longer want only "underlying facts," rendering months' of negotiations over data wasted. Plaintiffs have not provided any justification for going back on their representations.

The Court advised Plaintiffs that their sweeping demand for ADI-related communications is unworkable and targets irrelevant materials. *See* supra at 1. What Plaintiffs are requesting would also waste significant resources and delay this case—it would likely lead to custodian/search string negotiations, review/logging of large volumes of documents not factored into the proposed substantial completion deadline, and a mountain of privilege disputes that could require an in camera review of unprecedented scale. *See* infra at 3. For context, during the parties' sampling exercise, Facebook logged as privileged 6,200 entries for 6 apps. ADI addressed *millions* of apps. The volume of privileged ADI documents is why the Court suggested a sampling exercise in the first place and then told Plaintiffs to narrow their request.

Rather than narrow, Plaintiffs now demand the underlying facts Facebook offered, API data the parties are negotiating for unrelated RFPs, nearly all ADI communications, and a reservation of rights to seek more ADI materials—effectively continuing this dispute indefinitely

---

[1] Facebook has not seen Plaintiffs' letter. If they request something different, Facebook has not seen it.

[2] Facebook already provided the date each app was suspended. Facebook apps do not have "publishers" (the most similar piece of information is the app's "developer," which Facebook offered to provide).

[3] Confidentiality and privilege protocols around ADI did not allow ADI team members to engage in external communications relating to ADI other than communications with app developers (which have been produced), outside counsel, and experts retained by Gibson Dunn to assist it in providing legal advice. Facebook is not aware of any violations of these confidentiality protocols.

and rendering any agreement the parties could have reached illusory. Facebook made a meaningful and sincere effort to resolve this dispute by offering the information Plaintiffs said they need. Plaintiffs have not conveyed how this data is inadequate. And it is difficult to imagine what else they require—particularly given that this lawsuit is *not* about how ADI was conducted.

### c. Alternatively, Facebook requests an opportunity to provide a full record.

If the Court is inclined to order production of additional ADI communications, Facebook requests an opportunity to brief why ADI was a privileged investigation and provide a full evidentiary record. Plaintiffs are wrong in saying the parties' positions on ADI were already fully briefed. The Court instructed the parties that their prior briefs should address 20 documents Plaintiffs identified, not all of ADI. 1/15/2021 Trans. at 4:15-11:19; *id*. at 12:13-15 ("one page per document"). The briefing was expedited and simultaneous and the Court did not allow evidence. *Id.* at 11:9-19 ("I don't want declarations." "If we need more [later] we can get it at that time"). Plaintiffs improperly used their brief to wage a wholesale attack on Facebook's claim of privilege over ADI. *See* Dkt. 611. Facebook has had no opportunity to submit evidence or address Plaintiffs' arguments—including with respect to waiver, the dual-purpose doctrine, and whether Plaintiffs have shown a "substantial need" for any fact work-product.

The Court also recognized that the briefs on the 20 documents could not resolve the broader ADI dispute: "I know before I said no affidavits, but now having looked at it all, I think that would be a mistake – an error on my part." 04/06/21 Tr. at 25:2-7. The Court also recognized it cannot make a categorical ruling about ADI based on the 20 documents the Court reviewed in camera. *See* supra at 1; *U.S. v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (the "dual-purpose doctrine," which Plaintiffs urge the Court to apply, requires a document-by-document analysis).

If the Court is inclined to order Facebook to turn over additional ADI communications, Facebook respectfully requests an opportunity to create the record that the Court needs to fairly address the dispute; to sustain its burden of proof with respect to privilege;[4] and that will be needed should there be an appeal. Due process requires an opportunity for Facebook to respond to any new arguments Plaintiffs raise. **Exhibit C** proposes a briefing schedule.

### II. Plaintiffs' Position

After countless meet and confers, a four-month-long exemplar logging process, extensive briefing, and an attempted resolution by two experienced mediators, the parties are largely in the same position as they were when Plaintiffs first served their ADI-related discovery requests more than nineteen months ago: Facebook refuses to produce nearly all of the relevant and responsive materials pursuant to its initial position that ADI is categorically privileged. This sweeping and meritless assertion improperly cloaks millions of documents in connection with ADI, and is impeding the progress of this case. Plaintiffs are clearly entitled to more than what Facebook proposes for the reasons set forth below.

*1. Attorney-client privilege.* The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *accord Attorney Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 886-87 (Mass. 2021). From the start, Plaintiffs have sought the relevant underlying facts about ADI—including, for example, which apps were in violation or in potential violation of which Facebook policies, over what period of time these violations occurred, and the specific conduct that constituted the violations. *See* Dkt. No. 611, Plaintiffs' ADI Brief at 3, 15-16; April 6 Hr'g Tr. 18:1-15; 19:16-20:18.

---

[4] The parties agreed not to prepare ADI submissions while they mediated this dispute, *see* Dkt. 662 ¶ 3.

Plaintiffs specifically seek a targeted production of underlying facts regarding ADI, an investigation that was a continuation of Facebook's attempt to purportedly identify data misuse on its platform since at least 2012. Dkt. No. 611 at 4-7 The investigative process consisted of three phases: (1) Detection and Identification, (2) Enhanced Examination, and (3) Enforcement. From the beginning, Plaintiffs sought documents related to Phases 2 and 3, which are plainly factual inquiries. *See* Plaintiffs' Request for Production No. 19 (attached as Ex. A). In the Enhanced Examination phase, technical experts and investigators—including two external forensic consulting firms that worked with, among others, Facebook's Developer Operations (DevOps) team—conducted intensive background and technical investigations and created reports that identified the potential for data misuse. *See* Stacy Chen Declaration, ¶¶ 17-18 (attached as Ex. B). In the Enforcement phase, Facebook determined whether to take additional enforcement action against an app, including conducting interviews or requesting audits of data security or storage infrastructure. *Id.*, ¶¶ 19-20. The facts underlying Phases 2 and 3 of ADI are relevant to Plaintiffs' claims, including whether Facebook breached the duty of care it owed users to safeguard their information. *See* Dkt. No. 298 at 36. These facts are not privileged.

2. *Work product.* Under Ninth Circuit law, "where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation," courts must "determine whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) (citation omitted) (citations omitted). Under this standard, as the Court has already noted, it is inconceivable that all ADI documents could be privileged, as Facebook would have undertaken this investigation in the absence of any potential litigation.[5]

Facebook's counsel agrees: "I think that because when [the ADI] was set up, it was set up for the reason you said because we wanted to assure our users that the platform, you know, was safe and had been safe in the past." April 6 Hr'g. Tr. 22:25-23:3. So does its CEO. In a lengthy post "shar[ing] an update of the Cambridge Analytica situation," Mark Zuckerberg framed the ADI as being a response to the company's "responsibility to protect your data." This well-publicized user-relations initiative was and is driven by business concerns.[6]

Nevertheless, Facebook refuses to produce the communications and documents related to ADI, including communications involving the DevOps Team and the two consulting firms Facebook retained as part of the process. Instead, Facebook proposes that it simply produce a

---

[5] *See* April 6 Hr'g. Tr. 24:15-24 ("THE COURT: Yeah, but don't forget what the test is in the Ninth Circuit is dual purpose and would the investigation have occurred anyway; and it's inconceivable to me that if Facebook had been immune from liability, that they wouldn't have gone in and investigated the apps to see if there were any other bad actors there. That's just – that's just inconceivable to me that, of course, they would have gone in and investigated those apps; and, therefore, my view is that those facts discovered, the facts, not the advice given, the facts would be discoverable.").

[6] *See* https://www.facebook.com/zuck/posts/10104712037900071 (posted Mar. 21, 2018). Though this post does not mention ADI by name, subsequent posts addressing ADI make clear that is what Zuckerberg was discussing. *See* https://about.fb.com/news/2018/05/update-on-app-audit/ (posted May 14, 2018) ("Here is an update on the app investigation and audit that Mark Zuckerberg promised on March 21.").

list of information regarding 3,734 apps and *some* responsive API call data. And it stresses that it has already produced communications with third parties regarding ADI, generating a long list of categories to describe this production.

The app information list and the API call data Facebook proposes to produce are of little utility to Plaintiffs without proper context, including the discussions and actions taken in response to this gathered information. For example, the reports prepared by Facebook's outside consultants in Phase 2 of the ADI process summarize and contextualize the data Facebook proposes to produce. And communications and documents related to whether Facebook pursued enforcement action against certain apps further contextualize this data. Facebook provides no justification for withholding these reports and communications, beyond a blanket assertion of work product protection. But under the dual-purpose doctrine, it is clear these summary reports and communications must be produced.

Facebook's production is also plainly insufficient. This purportedly "robust" production only consists of 26,000 pages, nearly all of which are initial Requests for Information (RFIs) sent by Facebook asking for background and preliminary information to third party app developers. The RFIs do not reveal Facebook's internal knowledge and deliberations regarding the obvious threats those third parties posed to users' privacy or the extent to which Facebook already knew about those threats. The RFIs also do not show which app developers violated or potentially violated which Facebook policies over what period of time. Nor do they show the underlying facts that led to escalation or enforcement.

Furthermore, these 26,000 pages of documents are a fraction of the millions of documents and communications Facebook previously represented have been generated as part of the ADI. *See* July 13, 2020 Hr'g Tr. 46:19-25 (Mr. Snyder: "And I just want to warn everyone or caution everyone, this was a massive investigation … that will probably be tens of millions of communications."). During the exemplar logging process last fall, approximately 12,000 documents totaling tens of thousands of pages were identified for six apps alone.

3. *Conclusion.* Facebook contends that all it needs to produce are a small sample of data related to ADI. But Plaintiffs are entitled to communications and documents reflecting the facts underlying the ADI investigation. Plaintiffs seek an order requiring production of communications and documents related to Phases 2 and 3 of the investigative process, including communications involving the DevOps team at Facebook and the forensic consultants retained by Facebook, as well as the summary reports these consultants and/or the DevOps team created. Facebook previously mentioned it wanted to provide an affidavit in support of its position. While Plaintiffs believe no further briefing or affidavit is needed, Facebook should have until July 9 to do so, and Plaintiffs should be allowed to respond to the affidavit by July 16. No further briefs should be permitted. The parties' positions are clear and the dispute has dragged on for too long. The issue is ripe for a ruling.

Dated: July 2, 2021

KELLER ROHRBACK L.L.P.

By: /s/ *Derek W. Loeser*
     Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Lynn Lincoln Sarko (admitted *pro hac vice*)
Gretchen Freeman Cappio (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By: /s/ *Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
Matthew P. Montgomery (SBN 180196)
Angelica M. Ornelas (SBN 285929)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com
mmontgomery@bfalaw.com
aornelas@bfalaw.com

GIBSON, DUNN, & CRUTCHER LLP

By:     */s/ Orin Snyder*
          Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*