# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

July 14, 2021

**VIA ELECTRONIC FILING**
Honorable Jacqueline Scott Corley
United States District Court
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
Northern District of California Case No. 3:18-md-02843-VC

Dear Judge Corley:

Plaintiffs' July 2, 2021 submission regarding TAR asks the Court to impose a unilaterally designed TAR process and protocol onto Facebook—after Facebook has already told Plaintiffs it no longer intends to use TAR to filter out non-responsive documents from its review universe. Since Facebook will not be using TAR to filter documents out of its review, a TAR protocol is not needed. Plaintiffs' request that the Court require Facebook to implement an invasive and time-consuming TAR process runs counter to both the Parties' ESI protocol and established case law.

Plaintiffs initially opposed any process that would allow Facebook to use TAR to filter non-responsive documents out of its review set. (Dkt. 650 and 2.) Over three months, the Parties attempted to find agreement on a way Facebook could use TAR in this manner, but the Parties were never able to reach agreement on even the fundamentals of how a TAR process would work, let alone the details of a protocol. This is because, throughout the Parties' TAR negotiations, Plaintiffs said they would agree to TAR only if Facebook implemented a series of non-negotiable requirements that would *complicate and delay*—not advance—document discovery. Plaintiffs made clear that they would only agree to a TAR process that allowed them to inject onerous conditions into every stage of Facebook's review, allow Plaintiffs to micromanage and challenge each step of the review, and permit Plaintiffs unwarranted access to privileged and non-responsive documents.

In view of these non-negotiable demands, Facebook determined it could only commit to the parties' proposed January 2022 substantial completion deadline if it withdrew its initial proposal to use TAR as a way to filter non-responsive documents out of its review and, instead, focused its resources and time on designing an efficient, prioritized process supported by analytics for completing human review of all documents. To that end, before the parties' negotiations even advanced far enough for Facebook to propose a detailed TAR protocol, Facebook told Plaintiffs it would no longer seek to use TAR to filter non-responsive documents out of its review. Now, Plaintiffs ignore the parties' heavily negotiated ESI protocol and well-established case law in an attempt to force Facebook to use a one-sided TAR process that would *impede* Facebook's ability to meet the already agreed-upon January 2022 substantial completion deadline by bringing Facebook's ongoing review to a grinding halt as the parties engage in lengthy negotiations and unnecessary disputes to stand up and execute an unprecedented and unreasonably burdensome TAR process.

# GIBSON DUNN

July 14, 2021
Page 2

The Court should not order Facebook to use TAR or to adopt Plaintiffs' TAR protocol for three compelling reasons:

**Existing authority is clear that a producing party cannot be forced to use a TAR process against its wishes**. Facebook, as the producing party, is presumed "best situated to evaluate the procedures, methodologies, and technologies appropriate for . . . producing [its] electronically stored information." *Hastings v. Ford Motor Co.*, 2021 WL 1238870, at *3 (S.D. Cal. Apr. 2, 2021) (quoting *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018)). For that reason, in every prior decision of which Facebook is aware "where the requesting party has sought to force the producing party to use TAR, the courts have refused." *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 n.1 (S.D.N.Y. 2015); *accord Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (refusing "to force the [defendant] as the responding party to use TAR when it prefers" not to on the ground that "Sedona Principle 6 controls").[1] The parties built this fundamental principle into their ESI protocol, pursuant to which the use of TAR is entirely voluntary and at the sole discretion of the producing party. (*See* Dkt. 416 at 6 n.1). In asking the Court to impose Plaintiffs' unilaterally drafted TAR protocol on Facebook, Plaintiffs are asking the Court to depart from the ESI Protocol that the Court entered in this case and from the sound reasoning of every other Court to have considered whether a producing party can be forced to use a TAR process over its objection.

**Timing and relevancy factor *against* Plaintiffs' proposal.** After the parties ceased negotiating a TAR protocol, and based on the progress of human review, the parties agreed to a substantial completion deadline of January 31, 2022. Dkt. 697 at 2. Plaintiffs do not argue their TAR proposal would allow Facebook to complete its document review more quickly or even assist Facebook in meeting that deadline.[2] To the contrary, Plaintiffs' proposal would *greatly complicate and slow down (or even halt )* Facebook's review. This is because every single stage of Plaintiffs proposed TAR process—sampling, training, review, production and validation—is designed to allow Plaintiffs to challenge Facebook's

---

[1] *See also Hastings*, 2021 WL 1238870, at *3 (relying on Sedona Principle No. 6 to reject the plaintiffs' request for an order "to compel Defendants to conduct discovery as directed by Plaintiff"); *In re Viagra (Sildenafil Citrate) Products Liab. Litig.*, 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016) (denying plaintiffs' motion to compel defendant "to use . . . TAR . . . and/or predictive coding with Plaintiffs' input"); *In re Bridgepoint Educ., Inc.*, 2014 WL 3867495, at *4 (S.D. Cal. Aug. 6, 2014) (denying plaintiffs' request that defendants be compelled to "run [certain documents] through the predictive coding software"); *In re Viagra (Sildenafil Citrate) Prod. Liab. Litig*, at *2 ("Even if predictive coding were a more efficient and better method, . . . it is not clear on what basis the Court could compel Pfizer to use a particular form of ESI, especially in the absence of any evidence that Pfizer's preferred method would produce, or has produced, insufficient discovery responses.").

[2] Plaintiffs misrepresent the pace of Facebook's productions. Facebook has produced nearly 2 million pages of documents. Facebook has also reported that random samples of the review population have had responsiveness rates of ***less*** than 10%, and tens of thousands of responsive documents hitting on the search strings were produced to Plaintiffs before the search strings were even finalized, as the review population overlaps with the government productions.

GIBSON DUNN

July 14, 2021
Page 3

processes, coding, and production decisions, including with respect to materials that have already been reviewed.

Plaintiffs' protocol would delay discovery by an indeterminate amount of time. The protocol mandates a series of negotiations that would take months to resolve. First, the protocol would require the parties to negotiate which documents would be included in the TAR set. *Id.* ¶ 4(b). From there, Facebook would be required to show its responsiveness determinations for 2,000 individual documents, and allow Plaintiffs to challenge them. *Id.* ¶ 6(c). Facebook would also be required to reveal the content of its reviewer manual and negotiate it with Plaintiffs. *Id.* ¶ 7(a). Plaintiffs would be permitted to explore, and once again challenge, the validation of the TAR model. *Id.* ¶ 7(f). Following a year of drawn out, contentious search term negotiations, it is unrealistic to expect that the negotiations mandated by the proposed TAR protocol *on any of these topics* could be completed even within 7 months, much less that Facebook would also be able to complete its review of documents using the TAR protocol in that time. Indeed, the parties tried getting to a place where they could even negotiate the details of a TAR protocol for three months to no avail.

Plaintiffs' TAR model is predominantly aimed at creating a vehicle for challenging and litigating relevancy disputes. Bringing to the court countless discovery squabbles and litigating document-by-document disputes in the context of TAR is not an efficient or effective discovery process. If a dispute arises about the scope of Facebook's production, the parties should mediate the dispute and, if they are not able to reach an agreement, file an appropriate motion to compel or for a protective order. Facebook continues to consider TAR a useful and effective tool when it creates efficiencies (*e.g.*, removing non-responsive documents without burdensome additional review), but it is not effective or worthwhile when it creates unnecessary discovery disputes and adds significant complexity and time to the review.

**Plaintiffs' protocol departs significantly from industry standard**. Plaintiffs claim that TAR requires "unprecedented" transparency but misstate the *type* of "transparency" TAR requires. As the cases Plaintiffs cite make clear, using TAR typically requires *procedural* transparency: "full disclosure about the technology used, the process, and the methodology." *In re Valsartan, Losartan, and Irbesartan Products Liability Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020).[3]

Plaintiffs' protocol demands something very different. It provides Plaintiffs an

---

[3] *Valsartan* concerned a scenario where the Court was seeking to remedy a party's violation of a court-ordered ESI protocol—the party had unilaterally used TAR to filter out non-responsive documents, without disclosing that it was doing so, even though the ESI protocol required it to disclose if it was using TAR in this manner. Under these facts, the Court ordered the party to use a previously negotiated TAR protocol and allow review of a sample of non-responsive documents, with a privilege screen. Here, Facebook disclosed its desire to use TAR to filter out non-responsive documents and then agreed *not* to use TAR in this manner, because the parties have not been able to agree upon the fundamentals of a TAR process. Moreover, the parties' ESI Protocol states explicitly that a party shall not be required to produce non-responsive documents. *See* Dkt. 416 at 6.

# GIBSON DUNN

July 14, 2021
Page 4

avenue to obtain *substantive* discovery beyond what would be permitted by the Rules, including discovery in the form of access to Facebook's privileged materials and work product regarding Facebook's review (Pls.' Ex. A ¶ 7(a)) and documents that are neither relevant to this case nor responsive to Plaintiffs' requests (*id.* ¶¶ 6(c) & 11(d)).  It then would allow Plaintiffs to micromanage and litigate every aspect of Facebook's review—from Facebook's attorney document review training materials to individual document coding and production determinations.  It could even allow Plaintiffs the ability to interject challenges into Facebook's review process pre-dating the use of TAR.  Facebook made clear throughout the parties' negotiations that it would not agree to requirements of this nature, which have no basis in the Federal Rules of Civil Procedure, industry guidance, the court's standing orders, or Local Rules.

Nor is Facebook aware of any case law allowing a party to reach in and micromanage another party's document review in this manner, much less a Court ordering it.  *See Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) (a party's disclosure of the "TAR software . . . it intends to use and how it intends to validate the review results . . . is sufficient information to make the production transparent.").  Plaintiffs cite no case law to support their position.[4]  Even Plaintiffs' ESI consultant, Kelly Twigger, has recognized that a receiving party's "insistence" that the reviewing party "must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules of discovery."[5]

Ms. Twigger's Declaration does not address the scenario here—where one party is moving the Court to impose a TAR protocol on the other over its objection—but instead she avers that Plaintiffs' protocol "is consistent with" TAR protocols from other cases ***that were negotiated and agreed to by the parties in those cases*** (presumably because the parties were better able to collaborate with each other).  Moreover, Ms. Twigger grossly misrepresents the degree of similarity between those protocols and Plaintiffs' proposal.  For instance, the *Broiler Chicken* protocol required disclosure of (1) the TAR software and vendor; (2) "a general description" of how the TAR process would work; (3) a "general description" of the document populations that would be subject to TAR; and (4) the quality control measure to be taken.  Facebook offered to provide the same types of disclosures—and to work with

---

[4] Facebook notes that Ms. Twigger's declaration largely provides extended advocacy for Plaintiffs' desired outcome based on her involvement as a hired legal consultant for Plaintiffs during the parties' mediation process, as opposed to any independent expert opinions based on the application of accepted industry standards to facts.  Such extended advocacy arguably violates the page limitations for letter briefing and, to the extent Ms. Twigger is suggesting legal conclusions on the acceptable uses of TAR in litigation or regarding relevance determinations, such legal opinions on issues of law should be disregarded as they usurp the province of the court.  *See* Fed. R. Evid. 702; *see, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y 2016) (noting that experts cannot provide "legal opinions," or "legal conclusions," nor can they interpret legal terms; courts also noted that the expert should not supplant the role of counsel in making arguments at trial).

[5] Kelly Twigger, *Use of TAR*, *available at* https://www.ediscoveryassistant.com/use-of-tar/ (quoting *Livingston v. City of Chicago*, 2020 WL 6781801 (N.D. Ill. 2020)).

GIBSON DUNN

July 14, 2021
Page 5

Plaintiffs to define their parameters—but the parties' negotiations did not proceed far enough to reach this issue. Ms. Twigger acknowledges that neither of the protocols she relies on permits the invasive elements of Plaintiffs' proposal. Neither allows the ability for the receiving party to review a sample set of nonresponsive and privileged documents or to dispute relevance determinations as to individual documents. Pls.' Ex. B ¶ 20. Indeed, the parties' ESI protocol states expressly that a party is **not** required to disclose non-relevant documents.[6]

* * * *

Facebook proposed using TAR to filter non-responsive documents out of its review set with the hope of making document review faster, less costly, and more efficient. But Plaintiffs' unreasonable demands over the course of three months undercut these goals and precluded the parties' negotiations from advancing far enough to even negotiate a fully developed TAR protocol. Against this backdrop, Facebook determined that this case does not lend itself to the use of TAR to filter any documents out of its review, and instead will continue implementing an efficient, prioritized process supported by analytics for completing human review of all documents, as it has been for many months, to avert unnecessary disputes and save time. Facebook's agreement to a January substantial completion deadline was based on this determination.[7]

The Court should deny Plaintiffs' legally deficient request to force Facebook to use an unnegotiated, uninformed, and unilaterally drafted TAR protocol. If the Court is inclined to consider Plaintiffs' unprecedented demand, Facebook respectfully requests an opportunity to draft and submit its own TAR proposal.

Respectfully submitted,

Orin Snyder

Deborah Stein

Russel Falconer

Martie Kutscher Clark

---

[6] Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents (Doc. 416, at p. 11, Section H ("Nothing in this Order shall be interpreted to require disclosure of irrelevant information...").

[7] Plaintiffs did not, as they contend, indicate they would agree to any mediator's proposal. *After* Facebook had already communicated that it was withdrawing its request to use TAR, and Mr. Garrie conveyed he would no longer be preparing a mediator's proposal, Plaintiffs stated that they would have accepted one.