Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


Before The Honorable Vince Chhabria, Judge


IN RE:  FACEBOOK, INC. CONSUMER )
PRIVACY USER PROFILE LITIGATION.)   **NO. 18-MD-02843 VC**
_____  )

                        San Francisco, California
                        Thursday, June 24, 2021


**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS OF THE OFFICIAL
ELECTRONIC SOUND RECORDING - 2:22 - 2:48 p.m.**


**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                        KELLER ROHRBACK LLP
                        1201 Third Avenue - Suite 3200
                        Seattle, Washington  98101
                BY:  **DEREK LOESER, ATTORNEY AT LAW
                        CARI LAUFENBERG, ATTORNEY AT LAW
                        DAVID J. KO, ATTORNEY AT LAW**

                        BLEICHMAR, FONTI & AULD LLP
                        555 12th Street - Suite 1600
                        Oakland, California  94607
                BY:  **LESLEY E. WEAVER, ATTORNEY AT LAW
                        ANNE K. DAVIS, ATTORNEY AT LAW
                        MATTHEW P. MELAMED, ATTORNEY AT LAW**


  **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**




Transcribed By:    Marla F. Knox, RPR, CRR, RMR
                   United States Official Court Reporter

1    <u>**APPEARANCES VIA ZOOM:**</u>   **(CONT'D)**

2    For Defendant:

3                              GIBSON, DUNN & CRUTCHER LLP
                             1881 Page Mill Road
                             Palo Alto, California  94304
4              BY:  **MARTIE KUTSCHER CLARK, ATTORNEY AT LAW**

5                              GIBSON, DUNN & CRUTCHER LLP
                             333 South Grand Avenue
6                              Los Angeles, California  90071
               BY:  **DEBORAH L. STEIN, ATTORNEY AT LAW**
7
                             GIBSON, DUNN & CRUTCHER LLP
8                              2100 McKinney Avenue - Suite 1100
                             Dallas, Texas  75201
9              BY:  **RUSSELL H. FALCONER, ATTORNEY AT LAW**

10                             GIBSON, DUNN & CRUTCHER LLP
                             200 Park Avenue
11                             New York, New York 10166
               BY:  **ORIN SNYDER, ATTORNEY AT LAW**
12

13   Also Present:         **HONORABLE GAIL A. ANDLER**
                           **DANIEL GARRIE**

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
1 | <u>Thursday - June 24, 2021</u>                                      <u>2:22 p.m.</u>

2                          **P R O C E E D I N G S**

3                              **---oOo---**

4          **THE CLERK:**  Calling case number 18-MD-2843, In Re:

5    Facebook Inc. Consumer Privacy User Profile Litigation.

6          Counsel for the Plaintiffs, please state your appearances

7    for the record.

8          And if one of you just wants to state the appearance for

9    everybody, that would be great.

10         **MR. LOESER:**  Sure.  Good afternoon, Ms. Melen,

11   Your Honor, Derek Loeser for Plaintiffs from Keller Rohrback.

12   With me also from Keller Rohrback are Cari Laufenberg and David

13   Ko.

14         And also from Bleichmar Fonti & Auld is Leslie Weaver,

15   Matt Melamed and Anne Davis.

16         **THE COURT:**  Hello, everybody.  Mr. Loeser, where is

17   your fancy Keller Rohrback background?

18         **MR. LOESER:**  You know, my floating -- I got tired of

19   my heading floating around.  It looked like a UFO.  So I

20   decided you can see my actual work space.

21         Notice, I cleaned it up.  I got a lot of complaints it

22   looked like a dorm room.  So now I --

23         **THE COURT:**  I sort of think it still looks a little

24   bit like a dorm room but anyway.

25         **MR. LOESER:**  It's better.  Trust me.

1          **THE COURT:**  All right.  Defendants.

2          **MR. SNYDER:**  Good afternoon, Your Honor, it is nice to

3    see you even though you were dreading seeing us.  It is Orin

4    Snyder for Facebook along with Deb Stein, Martie Kutscher-Clark

5    and Russell Falconer.

6          **THE COURT:**  Hello, everybody.  And we have some

7    special guests in the courtroom today.  Do you want to

8    introduce yourselves?

9          **MS. ANDLER:**  Good afternoon, Your Honor, Gail Andler.

10   I am the mediator, retired Judge, appointed by consent of the

11   parties by Judge Corley.  Thank you.

12         **THE COURT:**  And to specify, mediator for discovery

13   disputes; right?

14         **MS. ANDLER:**  That's correct.  Thank you, Your Honor.

15   And I'm co-mediating with Mr. Daniel Garrie.

16         **MR. GARRIE:**  Hello, Your Honor.

17         **THE COURT:**  Hello, Mr. Garrie.  I have heard good

18   things about Judge Andler and Mr. Garrie.

19         I'm hearing a lot of bad things about everybody else --

20                          (Laughter)

21         **THE COURT:**  -- and the way that they are sort of

22   conducting themselves in these discovery disputes.

23         So, it seems like we have some work to do on the discovery

24   side of things.

25         What -- first of all, on the -- the main reason I wanted

1  you-all to talk is because, you know, I had assumed that -- the

2  main reason I wanted to talk to you-all today is that I had

3  assumed that both sides were sophisticated enough to figure out

4  the issue of, you know, settlement discussions on their own and

5  find themselves a mediator and identify the right time to get

6  into settlement discussions.

7      Based on what I have seen and heard, I'm no longer sure

8  that both sides are -- or either side is kind of sober enough

9  to know when is the time to go into mediation.

10      So I wanted to talk to you about that and see if, you

11  know, I was able to force you to come up with a plan regarding

12  settlement discussions.

13      **MR. LOESER:**  Your Honor, Derek Loeser, if I may start

14  and respond to some of your concerns.

15      **THE COURT:**  Go ahead.

16      **MR. LOESER:**  So, we had some time to look at the

17  Northern District seal while we were waiting and noticed that

18  the eagle is holding an olive branch and also some arrows,

19  which I assume is not mistletoes and cupids arrows but

20  diplomacy and war.

21      And I do think you're right.  The parties are fighting a

22  lot.  We do have very significant disagreements about the scope

23  of relevant discovery.  We always have.  We still do.

24      I think that has been intensely frustrating for the

25  parties.  I think it is has been intensely frustrating for

1   Judge Corley, and I'm sure it's intensely frustrating for you.

2        Judge Corley came up with what I thought all of the

3   parties thought was a very good idea to try to deal with some

4   of these issues, which was to have us voluntarily agree to

5   discovery mediation.

6        Frankly, that is something that none of us had ever really

7   attempted before; but in my several -- almost three decades of

8   litigating cases like this, I have never seen discovery have so

9   many problems before.

10       And so we were willing to try this.  And, in fact, it has

11  been quite helpful.  Judge Andler and Mr. Garrie have done an

12  outstanding job attempting to bring the parties together.

13       I would say from the Plaintiffs' perspective the

14  problem -- again, I'm sure Mr. Snyder will disagree -- but

15  mediation doesn't do a great job of dealing with the situation

16  where one side is convinced the other side is utterly

17  incorrect, and there needs to be some type of ruling to move

18  the matter forward.

19       And so what we have seen is there are some limitations to

20  what -- in that type of situation -- what mediation can

21  resolve.

22       We have a solution that we think would really solve that

23  problem, and we think would really accelerate the pace of

24  discovery.

25       And that would be to add a special master -- particularly

1  a special master who is very familiar with the technological

2  issues in a case like this and to have that person able to call

3  some balls and strikes.

4       So we would like to modify the structure Judge Corley has

5  set up -- which, again, we fully support -- by introducing the

6  ability for a technical special master to simply look at the

7  parties -- having heard them; having seen whatever attempt to

8  mediate the issues, if the parties so choose to attempt it that

9  way -- and to call some balls and strikes.

10      Mr. Garrie, who has served in that exact capacity before

11 is perfectly suited for that.  He has already been selected by

12 the parties.  He has the mutual support of the parties to be a

13 mediator for discovery.  And we think if we can simply evolve

14 his role so he can look the parties in the eye after listening

15 to them and say:  Look, you are wrong.  You are right or there

16 is some solution there and I order it, that can then go to

17 Judge Corley.  If the parties want to challenge that decision,

18 they can.

19      I'm hopeful that they won't and that we won't and that

20 Facebook won't.  And then if there is some further need to

21 appeal that on, so be it.  That's usually how it works.

22          **THE COURT:**  Well, that's -- that last part is the part

23 that I have a problem with.

24      I mean, I think that what you are contemplating now is

25 a -- a scenario where there are basically three levels of

1  review at the trial court alone, right, where you have got the

2  special master making a ruling.

3      Then you take it to the magistrate judge.  And if you

4  don't like the -- what the magistrate judge says, you take it

5  to the district judge.

6      And knowing both sides here, I mean, that's -- it seems

7  like that is going to happen every time.  And it is going to

8  just delay things more.

9      I'm not -- I don't object in principle to your -- you

10  know, to the idea of appointing a special master even though I

11  think I'm generally quite reluctant to appoint special masters.

12      I think that, you know, given what has happened in this

13  case, it's sort of unavoidable.  But the multiple levels of

14  review is not going to work.

15      I'm happy to review Mr. Garrie's rulings or you can have

16  Judge Corley review Mr. Garrie's rulings and waive an appeal to

17  me.  But both does not make sense.

18      **MR. LOESER:**  I completely agree with you, Your Honor.

19  Let me just give you a little context from another case that

20  I'm spending a lot of time with, which is the national opioid

21  litigation.

22      There is a huge number of discovery disputes in that case.

23  Judge Corley is handling a piece of that case now because one

24  of the bellwethers has been remanded to San Francisco.

25      **THE COURT:**  Judge Corley handles everything.

1          **MR. LOESER:**  She does handle a tremendous amount.

2    That is for sure.

3          In that case -- in the centralized part of that case,

4    which is in the Northern District of Ohio, Judge Polster

5    appointed a Special Master.  It is David Cohen.  And he handles

6    an extraordinary number of disputes.

7          He issues rulings.  The parties sometimes like them.

8    Sometimes don't.  The parties have learned that if you appeal

9    one of his rulings and he is right, it does not get better.  It

10   gets a lot worse.

11         And I think that that is very good advice for all of us;

12   that if we get a ruling out of Mr. Garrie and we think we are

13   going to appeal every one, we should expect we are not going to

14   have a warm and fuzzy reception when it goes up on appeal.

15         And that's just the reality of it.  And we, as the

16   Plaintiffs, are willing to live with that.

17         And the reason why is we desperately want to move this

18   case forward faster, and we think we need to do this to make it

19   happen.

20         **MR. SNYDER:**  Your Honor, we agree with 98 percent of

21   what Mr. Loeser said.  We share everyone's frustration.  I can

22   see from the look on Your Honor's face that you are displeased.

23   We are frustrated, and we want the case to move forward as

24   well.

25         We would agree, Your Honor, to have Judge Andler and

1   Mr. Garrie as our special masters.  The parties mutually

2   selected Judge Andler.  She obviously is an esteemed

3   20-plus-year mediator with JAMS and before that, one of the

4   most respected judges in the commercial division, I think, in

5   Santa Barbara.

6       And she brought in as a technical expert, Mr. Garrie, who

7   is also incredibly talented.  He understands the technology.

8   Judge Andler has been a judge and a mediator for many years and

9   has incredible judicial temperament and judgment on these

10  issues and has been calling balls and strikes without authority

11  and very, very helpful in mediating disputes.

12      And so we would consent -- we think they both would be

13  excellent if it works because one is the Judge.  The other is

14  the technical.  And they compare notes and come to a consensus

15  in their rulings or determinations.

16      And it also helps as a tag-team because they are both very

17  busy, Your Honor.  So one is available for an hour.  Another

18  one is available for the other hour, and then they come back

19  for the last half hour.

20      So as a tag-team, we think they make an excellent special

21  master.  And given some of the technical issues, it is very

22  helpful to have someone with that technical background if not

23  judicial background.

24      We would agree, Your Honor, to their rulings being final

25  and not appealable to anyone; to save you and Judge Corley time

1    and preserve your scarce resources.

2        We would be happy with any level of appellate review to

3    Your Honor or Judge Corley that the Plaintiffs wish, and we

4    would consent to either.  And we believe that giving them that

5    final authority.

6        We would also agree to a cost shifting on an appeal;

7    losing party, to dissuade even further appeals.  Because

8    contrary to what I think Your Honor may believe respectfully,

9    we really are not in the dispute manufacturing business.  We

10   are in the, Let's get to class cert.  Let's get to summary

11   judgment.  Let's get this case on the road.

12       And, unfortunately, there are irreconcilable disputes

13   about the scope of discovery.

14       And Judge Andler and Mr. Garrie understand the case,

15   Your Honor, as well as the parties do.  They know every

16   in-and-out of the case by now, which is an incredibly helpful

17   resource to have.

18       So we think we can efficiently and effectively bring all

19   the disputes to them.  Again, we are happy for it to be final

20   under Rule 53, I think -- I think Your Honor has discretion to

21   order that.  That's how much trust and faith we have in these

22   two mediators/referees/special masters.

23       So whatever Your Honor and the Plaintiffs wish in terms of

24   review, we are happy to consent to it so long as it is both of

25   them because it's been a very effective and successful process.

1          But without teeth, Your Honor, I agree with Mr. Loeser, it

2     has had limited utility.

3          **THE COURT:**  Okay.  Speaking of class cert, has the

4     deadline to file a motion for class certification passed?

5          **MR. SNYDER:**  No, Your Honor.  Judge Corley has asked

6     for us to submit our case schedule on July 2nd.  And we are

7     going to be proposing -- hopefully on consent with the

8     Plaintiffs -- a case schedule that will include class cert

9     dates and the rest.

10          **THE COURT:**  Okay.

11          **MR. LOESER:**  I think, Your Honor, just to be fair to

12     the schedule, I guess, all of the deadlines have passed.  The

13     schedule you set has been blown in every way possible.

14          It is something we have raised with Judge Corley

15     repeatedly.  She has been asking the parties for a while to

16     submit case schedules.

17          We have proposed a schedule with dates for every important

18     item, and at the last hearing with Judge Corley, just

19     yesterday, she set a deadline for the parties to submit those

20     schedules by July 2nd.  If they can't agree with a schedule, to

21     submit competing schedules.

22          And it is a very good point.  We desperately need a

23     schedule in this case.  I think it will cause tremendous

24     movement.

25          But let me just respond very briefly to what Mr. Snyder

1   says about the structure of the special master situation.

2       We don't have any problem with having both Judge Andler

3   and Mr. Garrie serve in that capacity.

4       Our understanding is that -- it is probably worth asking

5   Judge Andler a question about her willingness to serve in that

6   capacity.  Our understanding was she preferred to remain in a

7   discovery mediator role; to help the parties in that way.  And

8   for Mr. Garrie, who has the more technological databased

9   expertise to call the balls and strikes.

10      But however Judge Andler and Mr. Garrie want to structure

11  that and set that up, we are fine with either.  We just want to

12  be respectful of what they have indicated they would like to do

13  in this case.

14          THE COURT:  What about the issue of appeal from their

15  rulings or Mr. Garrie's rulings, whatever the case may be?

16          MR. LOESER:  I think that's fine.  We don't have a

17  problem with that.

18          THE COURT:  What is fine?

19          MR. LOESER:  Not having any right to appeal their

20  rulings.  I think if they are final -- and that, again, speeds

21  this thing up -- we are willing to live with the result.  I'm

22  not sure how the rule --

23          THE COURT:  I'm not sure I'm comfortable with that.

24          MR. LOESER:  Yeah.

25          THE COURT:  I think that, you know, my instinct -- I

```
 1   mean, I will think about it a little more; but my instinct is

 2   that -- you know, this sort of goes back to my earlier comment

 3   about reluctance to turn over too much to special masters --

 4          MR. LOESER:  Yeah.

 5          THE COURT:  -- however good they may be.

 6      I -- I think that I would be -- I would think long and

 7   hard before agreeing that a ruling -- a discovery ruling that

 8   could be of great magnitude is not appealable to either Judge

 9   Corley or me.

10      Now, so -- you know, I guess what I would say is that --

11   you know, Judge Corley and I used to be co-clerks for Judge

12   Breyer.  And I, therefore, know to a certainty how much smarter

13   she is than me -- and we all know that she knows a lot more

14   about discovery than me.

15      So, I suppose if I were a lawyer in this case and I wanted

16   to make sure that everything was done really, really well, I

17   would want the appeal to go to Judge Corley.

18      But I am -- if for any reason -- sort of no questions

19   asked -- anybody thinks that it makes more sense for the

20   appeals to come to me, I will take them.

21          MR. LOESER:  Your Honor, without any comment or

22   response to which one of you is smarter, I would say --

23          THE COURT:  You don't want to get into that?

24          MR. LOESER:  I don't want to get into that

25   conversation, which it sounds like you have been having with
```

1   Judge Corley for maybe some time.

2       **THE COURT:**  She and I both agree on that question.

3       **MR. LOESER:**  Okay.  Well, be that as it may, we are

4   fine with having Judge Corley be the final arbiter of these

5   discovery disputes.

6       Frankly, our understanding from the ones that she has

7   already ruled on is she has been consulting with you on matters

8   that relate to the scope of the case and the scope of

9   discovery.

10      We are fully comfortable with having her issue decisions,

11  and we are fully comfortable living with the decisions that she

12  issues.

13      **THE COURT:**  So there would be -- so from your

14  perspective an appeal to Judge Corley with no further appeal of

15  the special master's decision is the way you would like to go?

16      **MR. LOESER:**  That would be fine with the Plaintiffs,

17  Your Honor.

18      **MR. SNYDER:**  That would be fine with Facebook as well,

19  Judge.

20      **THE COURT:**  Okay.  And -- okay.  So, Judge Andler, you

21  have been sitting there quietly and patiently.

22      **MS. ANDLER:**  Thank you, Your Honor.

23      I am happy to serve in whatever capacity you believe is

24  appropriate.  I would say that I am mindful even in a case

25  where people can pay the freight, so to speak.  I don't want to

1    add unnecessary cost and burden to anybody.

2        My calendar is quite impacted, but I always do my best to

3    find time for this.  I don't want to build in redundancy.

4        I'm happy to continue working with Mr. Garrie in a

5    collaborative matter.  He is a great partner on these cases.  I

6    have tremendous respect.

7        And although I haven't worked closely with you before --

8    so please don't be offended by this -- but everybody has one

9    person they say is the smartest person they know.  Mr. Garrie

10   is the smartest person I know, which is why I ask that he be

11   involved; and he would be outstanding in the role of a

12   technical special master.

13       I would not in any way be offended and would welcome the

14   opportunity to remain as a mediator.  I'm very grateful for the

15   kind comments of Mr. Snyder and his team.  And I'm not saying

16   no.  I'm just saying that my feelings won't be hurt if I'm not

17   given that expanded role to do reports and recommendations.

18           **THE COURT:**  Well, and I will think about all of this a

19   little bit and -- rather than making a decision right here; but

20   I guess my question is -- you know, when I was reading the

21   Plaintiffs' papers, there was sort of an implication in

22   there -- I don't know if it was intentional or not -- but there

23   was sort of an implication that you could do -- if you were not

24   the discovery special master issuing rulings, that you could

25   play -- you could help them sort of move things along

1  potentially in a mediator role and help prevent them from

2  getting to the point where they needed a ruling from

3  Mr. Garrie.

4       My response to that when I read it -- if that, in fact,

5  was the implication -- was wait a minute.  I see people like

6  Judge Corley all the time, you know, serving as the -- you

7  know, the discovery judge and they do both; right.

8       They do the hand holding and the babysitting.  And then if

9  the -- if that doesn't work, they issue a ruling on the

10  discovery dispute.

11       And, you know, my -- I guess, rather than create an even

12  more complicated bureaucracy where we have one person -- you

13  know, Judge Andler is the discovery mediator and Mr. Garrie is

14  the discovery master and then we have got Judge Corley and then

15  me --I mean, my gut tells me -- and it is just a gut because

16  I'm not particularly experienced in these matters -- is to just

17  have Judge Andler and Mr. Garrie be the special masters.  And

18  that would not preclude Judge Andler from doing the kind of

19  work that apparently she has been doing very well at mediating.

20       **MR. LOESER:**  Your Honor, we are fine with that.  And

21  originally when we were trying to come up with the ground rules

22  for the involvement of Judge Garrie -- Judge Andler and

23  Mr. Garrie, we very much wanted a Rule 53 appointment for both

24  of them.

25       So provided that Judge Andler is okay with that role, it

1   is kind of what we wanted in the first place; and we have

2   tremendous respect for both Judge Andler and Mr. Garrie.  And

3   we welcome their involvement.

4       I do think that, you know, if you look at the pace of

5   discovery here, we have about 394,000 documents after all this

6   time.  In the Juul case, where we are co-lead counsel, there is

7   something like 25 million documents -- pages, 7 million

8   documents.

9       I do think that their involvement will -- you will become

10  much happier with the parties because there will be a

11  tremendous speed-up on the pace of production, on depositions,

12  which we have only been able to take two -- not because we

13  didn't want to take more -- and on everything.  And the parties

14  will be able to meet a schedule that will get set.  And I think

15  that you won't be as unhappy to see us when you do see us.

16      **MR. SNYDER:**  We agree a hundred percent with all the

17  above, and we would enthusiastically join in the request,

18  Your Honor, for 53 special master appointment with an appeal

19  for Judge Corley for both Judge Andler and Mr. Garrie.

20      And we are thrilled with that outcome because we think it

21  is going to get discovery moving fast with an endpoint and a

22  schedule that we can be held to.  And the parties are in

23  complete agreement on that approach and outcome.

24      **MS. ANDLER:**  Your Honor, if I might just raise one

25  issue then, if it is to be a special master appointment, I

think there needs to be an understanding of the ground rules as it relates to mediation confidentiality.

I'm very sensitive to that.  I hold mediation confidentiality as something sacred, and I don't want there to be misunderstandings between the parties as to the ability to disclose to Judge Corley or anybody else those things that are discussed.

I also think there needs to be ground rules regarding ex parte contact by one side.  And I'm confident the parties will be able to work that out, but I did want to flag for you that the parties have had a difference of opinion as to the scope of confidentiality for discovery mediation as opposed to traditional mediation.

**MR. GARRIE:**  Sorry, Your Honor, I just want to echo what Judge Andler is saying.  I think it would be great, but I think having those rules for the road defined and delineated will make our jobs -- and ultimately your life -- a lot easier if we can just define confidentiality here.  This is how ex parte communication operates.  And this is the functional process Your Honor wants to transact.  We can then follow that, and everybody will have clarity there.

**MR. SNYDER:**  And, Your Honor, if Your Honor does order this approach, we will immediately contact Mr. Loeser and his team and negotiate -- agree on a stipulation that suggests protocols for all of those issues.  And I'm confident we can

1    reach agreement on that.

2              **THE COURT:**  Okay.  I think --

3              **MR. LOESER:**  Your Honor --

4              **THE COURT:**  Sorry.  Go ahead.

5              **MR. LOESER:**  I was just going to say, we obviously --

6    confidentiality is important in mediation.  That's well

7    understood by all the parties.

8         I think the one thing that is a little nuance here -- that

9    I think the parties are going to have to work through -- is

10   because it is discovery mediation and because we do need to

11   inform the Court of the status of discovery disputes and we do

12   need to be able to argue for the position that we want to take,

13   regardless of whether we mediated it, it is not going to be the

14   same type of confidentiality that you would see in the

15   settlement mediation context where, you know, the parties can

16   agree not to say anything about what happened in mediation

17   because --

18             **THE COURT:**  And I will just say that I haven't seen --

19   you know, in the stuff that I have read that you-all have

20   submitted in anticipation of this conference, I haven't seen

21   anything that I think anybody could reasonably describe as

22   objectionable or a breach or anything like that.

23        But -- and I also think that, you know, the issue of

24   confidentiality, when we are talking about mediating discovery

25   disputes, is just so much less of a big deal.  It just doesn't

1  seem like a big deal at all to me.  But that may be -- reflect

2  my lack of sophistication on these matters.

3      So I would like to do, if it is okay with everybody, is

4  think about it a little more and, perhaps, have an off-line

5  discussion with Judge Andler and Mr. Garrie and Judge Corley.

6  And then I will issue an order after doing that.

7      **MR. LOESER:**  That's excellent, Your Honor.  And if we

8  could start -- go back to where we started on this call, which

9  is to just very briefly talk about the settlement mediation.

10     **THE COURT:**  Yeah, that's what I have been wanting to

11 talk about.

12     **MR. LOESER:**  Right.  I figured you would want us to

13 address that.  We do appreciate your suggestion that the

14 parties consider that.

15     And the parties have agreed on a mediator and -- unless

16 Orin tells me right now I'm not supposed to say who it is -- I

17 think we can tell you who it is.  It is Judge -- former Judge

18 Gandhi.  We are working with him on dates.

19     **THE COURT:**  Cool.

20     **MR. LOESER:**  He has indicated availability in

21 September and October.  The parties are going to talk about

22 those dates.  And I do think this is going to be one of those

23 situations where it is very important that the litigation --

24     **THE COURT:**  You don't want to get former Judge Grewal

25 to do it?

1          **MR. LOESER:**  I'm sure he'd be willing to do it for

2   free, but maybe not the best choice for us.

3        But I do think it is critical.  There is a lot of

4   information that still needs to be produced.  There is a lot of

5   discovery.  I think that it is again back to the olive branch

6   and the arrows.  The parties are going to need to continue to

7   litigate.  But also we are capable of --

8          **THE COURT:**  That's fine.  I mean, I want to make clear

9   that I'm not -- I don't anticipate signing off on any delays in

10  the litigation for the purpose of conducting settlement

11  negotiations.

12       It seems to me that it's far past the time that you

13  started engaging in serious settlement negotiations, but I

14  don't anticipate delaying the litigation at all for that.

15         **MR. LOESER:**  And I think the parties are in complete

16  agreement on that.  And, frankly, I just want to assure you

17  that we can handle both of these -- you know, both the olive

18  branch and the arrows; and the parties will work in good-faith

19  and tirelessly to litigate this case.  If we can find a way to

20  resolve it, we will work to do that as well.

21         **THE COURT:**  Very good.  Unless anybody has anything

22  further, I will set up that off-line conversation.  And we will

23  go from there.

24         **MR. LOESER:**  Thank you, Your Honor.

25         **MR. SNYDER:**  Thank you, Judge.

1          **MS. ANDLER:**  Thank you, Your Honor.

2          **THE CLERK:**  Court is adjourned.

3              (Proceedings adjourned at 2:48 p.m.)

4                        ---oOo---

5                **CERTIFICATE OF REPORTER**

6          I certify that the foregoing is a true and correct

7   transcript, to the best of my ability, of the official

8   electronic sound recording provided to me by the U.S. District

9   Court, Northern District of California, of the proceedings

10  taken on the date and time previously stated in the

11  above-entitled matter.

12         I further certify that I am neither counsel for, related

13  to, nor employed by any of the parties to the action in which

14  this proceeding was taken; and, further, that I am not

15  financially nor otherwise interested in the outcome of the

16  action.

17

18  DATE:   Monday, July 12, 2021

19

20

21

22  _____

23          Marla F. Knox, RPR, CRR, RMR
            United States Court Reporter

24

25