UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | Case No. 18-md-02843-VC  (JSC)<br><br>**ORDER RE: MODIFICATION OF PROTECTIVE ORDER**<br><br>Re: Dkt. No. 643 |

Facebook asks to maintain the confidentiality of certain documents by modifying the operative protective order ("Protective Order") to cover documents made publicly available in violation of the Protective Order *or another court's protective order*. (Dkt. No. 643.)[1] The Court GRANTS Facebook's request to modify the Protective Order.

## BACKGROUND

**A. Background**

In 2016, Facebook produced one million pages of confidential documents ("Facebook documents"), including the 46 documents at issue here, pursuant to a protective order entered in *Six4Three, LLC v. Facebook, Inc.*, No. CIV533328 (San Mateo Cnty. Supr. Ct.). (Decl. of Sonal N. Mehta, Dkt. No 643-3 at ¶ 4.) These documents were later disclosed in violation of the protective order. (Sup. Ct.'s Mar. 15, 2019 Order, Dkt. No. 643-6 at 4.)

In particular, following Facebook's production, Six4Three's counsel emailed various government agencies with the subject line "Extensive Evidence regarding Facebook's treatment of friend data and user privacy." (*Id*. at 3-4) In these emails, Six4Three's counsel wrote that they

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

had "obtained extensive discovery of communications between Zuckerberg and numerous executives . . . that [they] believe[] is highly relevant to the Cambridge Analytica investigation," provided summaries of this discovery, and invited the recipients to find an "appropriate mechanism" for disclosure:

> This summary does not do the wealth of evidence we have obtained justice, which is why I'm hoping we can speak with your office to determine if there is an appropriate mechanism for your team to evaluate the evidence yourselves.

(*Id*. at 4-5.) The summaries counsel provided "went beyond the four corners of the Fifth Amended Complaint[] and included counsel's own impressions and analysis of Facebook's confidential information included in the summary." (*Id*. at 5.)

Theodore Kramer, Six4Three's Founder and Managing Director, sent a similar email to Damian Collins, a United Kingdom Member of Parliament and the Chair of the Digital, Culture, Media & Sport Committee ("DCMS"), who was investigating Facebook's management of third-party access to user data. (*Id*. at 8.) Mr. Kramer's email contained the subject line "Extensive evidence relevant to Facebook's data and privacy abuses." (*Id*.) Mr. Kramer later invited Mr. Collins to start a similar "appropriate mechanism" for disclosure. (*Id*. at 9.) This disclosure occurred on November 21, 2018 when Mr. Kramer shared the Facebook documents with Mr. Collins via USB drive while Mr. Kramer was in London for "business." (Decl. of Theodore Kramer, Dkt. No. 643-8 at ¶¶ 11, 16-18.) This disclosure was in direct violation of the Superior Court's protective order and a separate order issued on November 20, 2018 expressly forbidding Mr. Kramer "from providing any documents designated confidential or highly confidential by [Facebook] to DCMS or any other persons." (*Id*. at ¶ 12.)

After the disclosure, Mr. Kramer and Six4Three's counsel communicated with media outlets about the disclosure. Specifically, a Washington Post reporter wrote in an email to Mr. Kramer with Six4Three's counsel in copy:

> I'm getting a bit worried since I have not heard from you in several days. We are extremely eager to do the story now that there is an opportunity for the documents to be released. I understand that Collins said that Will happen in a week, but I'm sure they could leak before —and of course we want to be first. The challenge is that until now we have only talked off the record, so it Will be hard to use

> material from our conversations if I don't hear from you. In addition, the trove is big as we know, and I know you had promised to offer some guidance on how to go through it. [¶] I would really appreciate if you could let me know what is happening either way — even if it is to say that you can't speak. You can reach me 0n my cell or on Signal at [redacted].

(Dkt. No. 643-6 at 7.)

Immediately following Mr. Kramer's disclosure, the Superior Court ordered Mr. Kramer and Six4Three's counsel to preserve their electronics and files and ordered their transfer to a forensic examiner. (Sup. Ct.'s Nov. 30, 2018 Order, Dkt. No. 643-10 at 4-6.) The Superior Court called Mr. Kramer's conduct "unconscionable" and commented "[i]t's one thing to serve other needs that are outside the scope of this lawsuit, but you don't serve those needs or satisfy the curiosities of inquiring parties when there's a court order preventing you to do so." (Sup. Ct's Nov. 30, 2018 Tr., Dkt. No. 643-5 at 3.)

After Mr. Kramer shared the Facebook documents with Mr. Collins, the Guardian published an article about the DCMS's seizure of these documents. (Decl. of Matthew S. Melamed, Dkt. No. 660-1 at ¶ 4.) The following month, the DCMS published a "[s]ummary of key issues from the Six4Three files" and, in February 2019, it published a report linking some of the seized documents. (*Id*. at ¶¶ 5-6.) One year after the initial disclosure, NBC news published a report that released almost 7,000 pages of the disclosed Facebook documents, including the 46 documents at issue here. (*Id*. at ¶¶ 7-8.)

In granting discovery to investigate this disclosure, the Superior Court found Facebook made a prima facie showing that the crime-fraud exception applied. (Dkt. No. 643-6 at 3; Evid. Code, § 956.) In doing so, the Superior Court found "[t]he evidence reflects that Six4Three, through its principal Mr. Kramer, utilized the services of counsel to aid in committing a crime or fraud," and also found the conduct of Six4Three's counsel to "fall outside of the ambit of Rules of Professional Conduct." (Dkt. No. 643-6 at 8.) The Superior Court noted "[s]till left unexplained is how Six4Three's counsel caused Facebook's confidential information and highly confidential received pursuant to the Stipulated Protective Order to be uploaded and available for viewing and download on its client, Six4Three's Dropbox account." (*Id*. at 10.) In accordance with the Superior Court order, Facebook is currently conducting discovery into these events. (*See* Dkt. No.

3

643-5.) At this time, Facebook is not seeking contempt against Six4Three, Mr. Kramer, or his counsel, although Facebook has reserved the right to seek all other available sanctions and remedies. *See Six4Three, LLC v. Facebook, Inc.*, No. CIV533328, Am. Notice (San Mateo Cnty. Supr. Ct., June 1, 2021).

**B. Procedural History**

In August 2018, the Court issued the operative stipulated Protective Order in the present case. (Dkt. No. 122.) Over a year later, Plaintiffs obtained public versions of the at-issue 46 documents from the NBC News website. (Dkt. No. 660-1 at ¶ 7.) In April 2020, Facebook separately produced these 46 documents and designated them as "Confidential" and "Highly Confidential – Attorneys' Eyes Only." (Dkt. No. 660-1 at ¶ 11.) These 46 documents account for 261 pages out of the published 7,000. (Dkt. No. 643 at 8.)

Pursuant to the Protective Order, Plaintiffs sent Facebook a letter challenging the confidentiality of 45 of the 46 confidential documents on the basis that those documents are "publicly available." (Decl. of Martie Kutscher, Dkt. No. 643-1 at 2; Pls.' Aug. 21 Letter, Dkt. No. 643-2 at 2.) One month later, Plaintiffs filed one of the publicly available documents as Exhibit C to an opposition and cross-motion concerning discovery. (Dkt. No. 526, Ex. C; Dkt. No. 660 at 7.) Plaintiffs had not challenged the confidentiality designation of this document. (Dkt. No. 643 at 8.) Facebook moved to remove Exhibit C from the public docket and to seal Exhibit C along with other information in Plaintiffs' brief. (Dkt. No. 660 at 7.) The Court granted Facebook's request and ordered the parties to meet and confer regarding Facebook's confidentiality claim. (*See* Dkt. No. 534.) The parties met and conferred but did not reach agreement. (Dkt. No. 643 at 9; Dkt. No. 660 at 7.) The parties later filed a stipulation and proposed order regarding confidentiality briefing (*see* Dkt. No. 617), which the Court granted (*see* Dkt. No. 621). The matter is fully briefed, and Plaintiffs have filed an administrative motion for leave to file a sur-reply, which has also been fully briefed. (*See* Dkt. Nos. 643; 660; 681; 683; 684.)

The Court denies Plaintiff's motion to file a sur-reply. Under Civil Local Rule 7-3(d), once a reply has been filed, "no additional memorandum, papers or letters may be filed without

1  prior Court approval." However, pursuant to Rule 7-11, a party may file a motion for
2  administrative relief seeking leave to file a sur-reply. Here, Plaintiffs seek to file a sur-reply to
3  correct four "untrue statements" in Facebook's reply. (Dkt. No. 683 at 2.) However, because the
4  corrections and facts Plaintiffs seek to include have already been addressed in or disclosed by the
5  briefings, Plaintiffs proposed corrections are not the proper subject of a sur-reply. Accordingly,
6  Plaintiffs' motion is denied.

## LEGAL STANDARD

As a general rule, "the public is permitted access to litigation documents and information produced during discovery." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal citations and quotation marks omitted). However, pursuant to Federal of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The district court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Although courts generally make a finding of good cause prior to issuing a protective order, a court need not do so if the parties stipulate to entry of a protective order. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). If the parties stipulate to a protective order without making a good cause showing, then the burden of proof as to the confidentiality of the documents at issue remains with the party seeking protection. *See id*. at 1211 n.1. Where a party challenges the confidential designation of certain documents with particularity, then "the party opposing disclosure has the burden of establishing that there is good cause to continue the protection of the discovery material." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d at 424. The court has inherent authority to grant a motion to modify a protective order where good cause is demonstrated. *See Phillips*, 307 F.3d at 1213.

## DISCUSSION

As a threshold matter, the Court finds the 46 documents are not covered by the Protective Order. The Protective Order provides:

5

> [T]he protections conferred by this Stipulation and Order do not cover…any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise.

(Dkt. No. 122 at ¶ 3(a).)  As it is undisputed that the 46 documents were part of the public domain at the time of designation and were not disclosed in violation of "this Order," under the Protective Order's plain terms, the documents are not covered.  Accordingly, the Court will next consider whether Facebook has demonstrated good cause to modify the Protective Order.

The Court has inherent authority to grant a motion to modify a protective order where good cause is demonstrated.  *See Phillips*, 307 F.3d at 1213.  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Id*. at 1210-11. As the facts found by the Superior Court and outlined above show, Six4Three's conduct in connection with the public disclosure of the confidential documents was egregious.  To hold that such conduct means that the documents cannot be treated as confidential in this action (assuming Facebook otherwise meets its burden to establish confidentiality) would condone that conduct, encourage similar behavior by future litigants, and disincentivize defendants from producing confidential documents in litigation.  As the Superior Court observed, Six4Three's conduct "compromises the entire integrity of stipulated protected orders and by extension to American jurisprudence."  (Sup. Ct's Mar. 15, 2019 Tr., Dkt. No. 643-15 at 3.)  If parties cannot have confidence in protective orders "then we've all lost." (*Id*. at 4.)

While we cannot put the genie back in the bottle, this Court can limit the damage caused by Six4Three's violation of the state court protective order under its broad discretion to control discovery in this case.  Accordingly, the Court grants Facebook's request to modify paragraph 3(a) of the Protective Order as follows (additional language in italics):

> However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order *or another court's protective order*, including becoming part of the public record through trial or otherwise.

The modification of the Protective Order does not mean that disclosure of confidential documents in violation of another court's protective order can never lead to the loss of the confidentiality designation; it merely means that the documents do not automatically lose their ability to be designated confidential because a party violated a protective order in another case.

The Court declines to find that Facebook waived the confidentiality of the documents by failing to respond to Plaintiffs' challenge. The record reflects at least a dispute on those grounds, and it would be a waste of the parties' and the Court's resources to make the inquiry required to resolve that dispute—a dispute that does not involve the merits of the confidentiality designation nor the merits of the case.

Plaintiffs' argument that Facebook's request is moot is also unpersuasive. Mootness refers to a federal court's jurisdiction under Article III to hear cases or controversies. U.S. CONST. art. 3, §2. A case is moot if "no effective relief remains available." *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012). There is no Article III jurisdiction issue here. While the Court cannot provide complete confidentiality of these documents in the broader universe, it can control how the documents are treated in this case and it can decide, as it does, to not exacerbate the problem created by the egregious conduct in the state court litigation. To that end, as explained in open court, Plaintiffs may not circumvent Facebook's confidentiality designation by filing or using documents pulled from the NBC website. While Plaintiffs of course may access and review whatever information is publicly available, this Court controls the evidence and discovery in this case.

In their opposition brief, Plaintiffs contend that the documents do not qualify as confidential regardless of their public disclosure. Plaintiffs may be correct. However, the Protective Order requires the party challenging a confidentiality designation to initiate the challenge "by providing written notice of each designation it is challenging and describing the basis for each challenge." (Dkt. No. 122 at ¶ 6.2.) When they challenged the confidentiality designation, the only grounds they raised were the public disclosure of the documents. (Dkt. No. 643-2.) Accordingly, that is the only basis the Court considers now.

Finally, if and when the documents-at-issue are filed in court, Facebook will have the

7

burden of proving that they are in fact confidential and should remain under seal. *See* N.D. Cal. Civ. L.R. 79-5. All this Order addresses is whether they are not confidential because of the violation of the state court protective order.

## CONCLUSION

For the reasons discussed above, the Court finds that Facebook has shown good cause to modify the Protective Order as set forth in this Order.

This Order disposes of Docket Nos. 643 and 683.

**IT IS SO ORDERED.**

Dated: July 29, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge