# EXHIBIT E

**Exhibit E to the August 2, 2021 Declaration of Alexander H. Southwell**

Facebook's Proposed Path Forward

Facebook opposes Plaintiffs' request for additional ADI materials because, as explained in detail in the Declaration of Alexander H. Southwell, ADI was a privileged legal investigation, designed and led (at all stages) by counsel to advise Facebook on its litigation and regulatory risks.

If the Court is inclined to order Facebook, over its objection, to comply with Plaintiffs' additional ADI requests, the following three steps will need to take place to execute any such order: (1) Plaintiffs' requests will need to be clarified; (2) Facebook will need to collect and review responsive materials and categorize them consistent with the Court's instructions; and (3) the parties will then work with Mr. Garrie to resolve any outstanding disputes.

### 1. Plaintiffs' requests require clarification.

Facebook received three iterations of Plaintiffs' requests for additional ADI information, and it is not clear what Plaintiffs are requesting.

After negotiating for nearly four months regarding data points Plaintiffs sought for certain apps reviewed by ADI (*see* Dkt. 699-1)—information Plaintiffs indicated would satisfy their request for "underlying facts" from ADI—during the parties' final mediation about their ADI dispute, Plaintiffs provided Facebook the following additional request:

> Internal and external communications related to Facebook's App Developer Investigation involving employees in Facebook's Developer Operations and Platform Operations Teams, regarding categories 2.a – 2.v above [referring to categories of communications with developers Facebook produced previously], and related to Phase 2 and Phase 3 of the ADI process. This category includes communications with counsel that are discoverable.

Dkt. 699-2 at 4.

Then, in the parties' joint letter brief to the Court on July 2 (Dkt. 699), Plaintiffs made a materially different request, which Plaintiffs had not previously presented to Facebook. Plaintiffs wrote:

> Plaintiffs seek an order requiring production of communications and documents related to Phases 2 and 3 of the investigative process, including communications involving the DevOps team at Facebook and the forensic consultants retained by Facebook, as well as the summary reports these consultants and/or the DevOps team created.

Dkt. 699 at 5.

Finally, the Court's July 26 order regarding the parties' ADI dispute describes Plaintiffs' request as follows:

> Plaintiffs seek documents (not created by lawyers) from the "Enhanced Examination phase" that involve background and technical investigations to identify the potential for data misuse. (Dkt. No. 699 at 5.) They also seek documents from the "Enforcement phase," including Facebook conducted audits and interviews. (Id.) As the Court

1

understands, Facebook has not offered to produce any of this information. None of these documents were part of the in camera review the Court earlier conducted.

Dkt. 711.

If the Court is inclined to order Facebook to comply with Plaintiffs' additional ADI requests, Facebook needs to understand what those requests are and how they should be interpreted. The parties should work with Mr. Garrie to clarify the scope of materials at issue.

### 2. Facebook must then collect, review, and categorize materials consistent with the Court's instructions.

The Court explained at the April 6 hearing and in the Court's Order re ADI Privilege Dispute that the Court finds "underlying facts" discoverable (Dkt. 711) and that Facebook may withhold only documents that are "(a) attorney-client privilege[d]; or (b) attorney work product." April 6, 2021 Trans. at 16:22-25. The Court explained, "[f]or example, if Gibson Dunn made edits to requests for information or those kinds of things, that's classic work product that's not going to be discoverable. Any advice that was given is not going to be discoverable." *Id*. at 17:1-3. While Plaintiffs' requests for additional ADI materials are not clear, it is clear that they seek large volumes of emails and other documents that go well beyond "underlying facts."

If the Court rejects Facebook's position that all internal documents and communications created in the course of the legally driven investigation are categorically privileged, once Plaintiffs' requests are clarified, Facebook will need to collect and review the materials at issue and work to identify which materials constitute "underlying facts" and which are "classic work product" or "attorney-client privileged" consistent with the Court's guidance. Facebook would agree to report to Plaintiffs and Mr. Garrie any categories of materials it intends to withhold.

Facebook further notes that to the extent Plaintiffs seek underlying information about apps relevant to their claims (as Plaintiffs indicated they sought throughout the parties' mediations), it remains far more efficient for Facebook to produce that factual information directly in response to an appropriately scoped discovery request than it would be to review millions of pieces of ADI-related communications and documents to determine if they contain any factual information that can somehow be extracted from the accompanying privileged discussions and produced.[1]

### 3. The parties should resolve any further disputes about withheld materials with Mr. Garrie.

To the extent there are disputes regarding any types of materials Facebook intends to withhold or individual documents that are ultimately withheld, the parties should resolve any such disputes with Mr. Garrie.

---

[1] Plaintiffs' requests appear to potentially reach many millions of communications and documents. Collecting, reviewing, and categorizing these materials consistent with the Court's instructions would be burdensome and may take many months (if not more).