Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' RESPONSE TO DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S POSITION IN THE PARTIES' JULY 2, 2021 LETTER BRIEF REGARDING ADI PRIVILEGE DISPUTE** |

## I. INTRODUCTION

There is ample evidence that the ADI had a non-legal purpose. *See, e.g.*, Dkt. No. 657 at 24 (remarks of the Court). Indeed, counsel for Facebook has conceded it had a non-legal purpose.[1] To prevail on its claim of privilege, Facebook must carry its burden of showing that this non-legal purpose was *not* a sufficient motivation or important purpose behind the ADI. This requires an inquiry into both the ADI's legal purpose and its non-legal one.

The declaration from Alexander Southwell fails to carry Facebook's burden. The declaration, if credited, shows that a legal purpose for the ADI existed. It contains no evidence, however, to show that this legal purpose overshadowed the ADI's non-legal purpose. In fact, it does not even *try* to demonstrate that the ADI existed only because of the prospect of litigation or that the ADI's non-legal purpose was unimportant in comparison to its legal one.

When Mr. Southwell discusses specific categories of documents, his declaration effectively shows that the documents requested by Plaintiffs are not privileged. They contain facts collected from third parties, focus on technical aspects of Facebook's business, and appear not to discuss or mention legal advice.

These documents are not shielded from discovery. And the Court should reject Mr. Southwell's improper contentions that Plaintiffs' request for documents is somehow unclear or that the volume of documents is disproportionate (issues that the Court did not ask Mr. Southwell to opine on). Plaintiffs' requests have been consistent and clear. The volume of documents is proportionate to this complex litigation, especially given their central importance to resolving the issues here. It is past time that Facebook produce the requested documents.

## II. ARGUMENT

**A.   The Southwell Declaration Fails to Show That the Work-Product Privilege Applies.**

The Declaration fails to address whether ADI documents "would not have been created in

---

[1] Hr'g Tr. at 22:25-23:3 (Apr. 6, 2021) ("I think that because when [the ADI] was set up, it was set up for the reason you said because we wanted to assure our users that the platform, you know, was safe and had been safe in the past . . . .").

substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quotations and citations omitted).  Thus, Facebook fails to meet its burden of establishing that work-product protection applies.  *See Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830, at *2 (N.D. Cal. May 6, 2016) (the party asserting protection bears the burden).

As the Court previously observed, it is "inconceivable," even "if Facebook had been immune from liability, that they wouldn't have gone in and investigated the apps to see if there were any other bad actors there."  Dkt. No. 657 at 24.  Nothing in the Declaration makes that premise any less inconceivable.  Though it insists the ADI had a litigation purpose, nowhere does it state that the ADI would not have been conducted but for the prospect of litigation.  Indeed, Mr. Southwell acknowledges that "the ADI is in essence an historical investigation to try and identify any misuse of data in violation of Facebook's policies." Southwell Decl. ¶ 5. This is identical to Facebook's historical and continued mission to enforce their platform policies and identify data misuse. And to this day, Facebook's Developer Operations team claims one of its key roles is to "look[] into businesses to identify data misuse."[2]

Further, Facebook has repeatedly confirmed it would have conducted the ADI absent the threat of litigation.  In his first public statement after the Cambridge Analytica scandal broke, Mark Zuckerberg promised because Facebook has "a basic responsibility to protect people's data and if we can't do that then we don't deserve the opportunity to serve people," that "we're going to go now and investigate every app that has access to a large amount of information . . . [a]nd if we detect any suspicious activity we're going to do a full forensic audit."[3]  Mr. Zuckerberg continued by stating that the investigation of "thousands of apps," which would be "an intensive process," was "our responsibility to our community . . . to make sure that we secure the data

---

[2] https://www.facebook.com/careers/life/a-look-inside-developer-operations-at-facebook.
[3] CNN, *CNN Exclusive; Zuckerberg apologizes*, https://www.cnn.com/videos/cnnmoney/2018/03/22/facebook-zuckerberg-cambridge-analytica-long.cnnmoney.

they're sharing with us."[4]

Mr. Zuckerberg's statement—among many others made by Facebook to the public, including those referenced by Plaintiffs in prior briefing[5]—makes clear that Facebook would have created the ADI and the full forensic audit of any suspicious activity even absent the prospect of litigation. Mr. Southwell neither can nor does state otherwise. Thus, Facebook has not met its burden of establishing that work-product protection applies to the documents created during "intensive process" involving the investigation of "thousands of apps," including the "full forensic audit[s]" conducted during that process.

**B.    The Southwell Declaration Fails to Show That the Attorney-Client Privilege Applies.**

The attorney-client privilege shields "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *Richey*, 632 F.3d at 566 (citation omitted). As always, the proponent of privilege bears the burden of demonstrating that all the requisites of privilege are satisfied. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

The Southwell Declaration fails to carry that burden, both generally and with respect to each category of document that it discusses.

*1. Generally.* Communications are shielded only if—among other requirements—they "relat[e]" to the purpose of seeking "legal advice" from an attorney "in his capacity as such." *Id.* (citation omitted). It follows that the attorney-client privilege protects legal, but not business, communications and advice. *SanDisk Corp. v. Round Rock Research LLC*, 2014 WL 691565, at

---

[4] Also revealing is this exchange: "Q: Was it putting too much trust in developers? A: I mean, I think it did. And that's why—you know, we need to make sure that we don't make that mistake ever again. Which is why one of the things I announced today is that we're going to do a full investigation into every app that had access to a large amount of data from around this time . . . . And now we're not going to just take people's word for it when they give us a legal certification but if we see anything suspicious . . . we're going to do a full forensic audit." CNN, *supra* note 3, at 3:59 to 4:33. Note that in this discussion, Zuckerberg draws a distinction between a "legal certification" and "a full forensic audit," suggesting to the public that the ADI will not merely ensure that app developers comply with legal formalities.

[5] *See*, *e.g.*, April 30, 2020 Joint Status Report, Dkt. No. 413 at 5; July 8, 2020 Joint Case Management Statement, Dkt. No. 469 at 4; July 10, 2020 Joint Status Update, Dkt. No. 471 at 2 (and attached as Exhibit A); July 2, 2021 Joint Discovery Letter Brief re ADI, Dkt. No. 699 at 4.

*3 (N.D. Cal. Feb. 21, 2014). Where communications "serve both legal and business purposes, there is general agreement that the privilege applies where the *primary or predominant purpose* of the attorney-client consultation is to seek legal advice or assistance." *Id.* (quotation and citation omitted).

The untested Declaration, if credited, shows at most that the ADI's purpose may have been partly legal. But the asserted legal purpose is all that the Declaration discusses. It does not deny that the ADI also had an important customer-relations (i.e., a business) purpose or address the ample evidence Plaintiffs have put before the Court on this issue. *See supra* footnote 5. "Given these indicia of business purposes, it is [Facebook's] burden to clearly show that the primary purpose of" the requested communications was "to secure legal advice." *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019). "[C]onclusory statements" in a declaration "do not meet that standard," *id.*—especially where, as here, those conclusory statements claim that communications had a legal purpose without attempting to show that they *lacked* a business purpose. In short, Mr. Southwell fails to rebut the evidence of the ADI's business purpose, and for that reason alone fails to carry Facebook's burden.

Moreover, even where communications come from attorneys, they are not privileged if their primary or predominant purpose was not legal advice. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2016 WL 861019, at *7 (N.D. Cal. Mar. 7, 2016) ("[I]t appears that defendants have taken an overly expansive view of which documents are privileged simply because Ms. Manogue and other attorneys . . . drafted them or were copied on them."). Thus, Plaintiffs would be justified in seeking certain ADI communications transmitted by attorneys. Plaintiffs have chosen, however, to restrict their request to communications from non-attorneys. Each category of these communications that Mr. Southwell discusses is not privileged, for the reasons discussed below.

2. **Enhanced Examination: background and technical reports.** Two aspects of the attorney-client privilege are relevant to the Enhanced Examination documents that Mr. Southwell discusses. The first is that the privilege "protects only communications, and not underlying facts." *Dolby Labs.*, 402 F. Supp. 3d at 863 (citing *Upjohn v. United States*, 449 U.S. 383, 396

(1981)). The second is that a privileged communication must be "confidential" and be "between attorneys and clients" or "third parties who have been engaged to assist the attorney in providing legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

From Mr. Southwell's description, it appears that background reports contained information collected from developers. *See* Southwell Decl. ¶ 20.a (noting that the background reports varied in content depending on the information sought from the developers). The technical reports contained "technical information about apps and developers on Facebook's platform," presumably sourced from both developers themselves and data stored by Facebook. *Id.* ¶ 20.b. The information contained in the background and technical reports is not privileged for several independent reasons.

First, any factual document that was used to create a report, but was not actually reviewed by counsel, is not privileged.[6] *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 5594474, at *4 (N.D. Cal. Oct. 10, 2013) (holding that "conclusory testimony that the 'report was necessary to enable MediaTek's attorneys to render effective legal advice' . . . is insufficient given that the privilege log demonstrates that the report was never disseminated to counsel").

Second, the reports themselves are not privileged, since they are focused on technical aspects of Facebook's business.  Notably, Mr. Southwell's declaration does not assert that they actually refer to legal advice. *Dolby*, 402 F. Supp. 3d at 868-69.

Third, to the extent the information in the reports comes from developers, it is not privileged. A communication between an attorney and a third party who is not the agent of the attorney is not protected by the attorney-client privilege. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *accord, e.g.*, *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24-25 & n.22 (1st Cir. 2011) (stating that facts gathered from third parties are not privileged); *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("[W]hen an attorney conveys to his client facts acquired

---

[6] This includes any "internal communications" that may have been sent among non-attorneys. Southwell Decl. ¶ 20.d.

from other persons or sources, those facts are not privileged."); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002) ("As a general rule, the privilege does not extend to communications between either the client or its attorney and a third party."). The developers were in no way agents or extensions of Gibson Dunn, *see MediaTek*, 2013 WL 5594474, at *3, so communications with them are not privileged.

   3. ***Enforcement Phase: draft internal documents.*** When it addresses documents created during the Enforcement Phase of the ADI, the Southwell Declaration focuses on written memoranda and recommendations from Gibson Dunn. Since those documents come from attorneys, however, they fall outside Plaintiffs' requested documents.

   The only other category that Mr. Southwell mentions from the Enforcement Phase is "draft internal documents." Southwell Decl. ¶ 25.b. These documents are not categorically privileged. To the extent these documents came from non-attorneys, compiled factual information, and were never actually reviewed by Gibson Dunn, they are not privileged. *MediaTek*, 2013 WL 5594474, at *4. Even if transmitted to attorneys, the documents are not privileged to the extent they collect technical information and do not refer to legal advice. *Dolby*, 402 F. Supp. 3d at 868-69. And to the extent the documents contain "notes and impressions from conversations or other interactions with developers," Southwell Decl. ¶ 25.b, they are not privileged. *Lluberes*, 663 F.3d at 24-25; *Ackert*, 169 F.3d at 139; *Sealed Case*, 737 F.2d at 99.

C.   **Plaintiffs' Request for Documents Has Been Consistent and Is Proportional to the Needs of This Case.**

   Mr. Southwell asserts that the scope of Plaintiffs' requests is not clear and that compliance would be burdensome. *E.g.*, Dkt. No. 720, ¶ 27; Dkt. No. 720-5. These assertions are beyond the scope of the Court's order permitting Facebook to file Mr. Southwell's declaration, which limited the scope of Facebook's declaration to "its assertion that these investigatory materials are privileged from discovery." Dkt. No. 711 at 3. They should be stricken as procedurally improper.

   Mr. Southwell's complaints are also incorrect. The Court has articulated what Plaintiffs seek: (1) which apps were in violation or in potential violation of which Facebook policies and

over what period of time these entities were in violation of these policies and the specific conduct that caused them to be in violation; (2) "documents (not created by lawyers) from the 'Enhanced Examination phase'"; and (3) "documents from the 'Enforcement phase." Dkt. No. 711 at 2-3.  This is consistent with Plaintiffs' ADI briefing earlier this year (*see* Dkt. 611 at 19 and Proposed Order) and the discovery requests Plaintiffs originally served to Defendants more than 21 months ago.  *See* Joint Discovery Letter Brief re ADI, Dkt. No. 699-4, Plaintiffs' Ex. A (Request for Production No. 19, served November 25, 2019) (requesting documents related to "Phase Two of ADI for Enhanced Examination and/or Phase Three of ADI for Enforcement" as designed in the Stacy Chen Declaration).

The Southwell Declaration next argues that Plaintiffs already have the information they need regarding ADI through the "tens of thousands of pages of communications with developers regarding apps that were reviewed in the ADI through December 2019." Southwell Decl. ¶ 19. Not so. Nearly all of the approximately 26,000 documents at issue are limited to Requests for Information (RFIs) sent by Facebook and correspondence with some third parties regarding their suspension for non-compliance. As the Court is aware through the ADI exemplar process last fall, Facebook divided up the third-party apps they investigated into three categories: 1) apps investigated but not suspended; 2) apps suspended for non-cooperation; and 3) apps suspended for reason other than non-cooperation. *See* Dkt. No. 514. Nearly every single RFI and related correspondence produced by Facebook relates to third-party apps that were suspended for non-cooperation with ADI (i.e., failure to respond). As such, *virtually none* of Facebook's production provides any insight into which apps were violating or in potential violation of which Facebook policies for substantive reasons, over what period of time, or the underlying conduct regarding what data they were misusing to cause them to be in violation or potential violation of certain Facebook policies.

Further, the discussion, in Dkt. No. 720, ¶ 27 and Dkt. No. 720-5 at 3, of the burden of collection, review, and categorization of the materials to be produced ignores any consideration of the proportionality of that burden to the needs of the case. Fed. R. Civ. P. 26(b)(1).  Over a

year ago, Judge Chhabria expressed concern that Facebook has "often made statements reflecting an unduly narrow view of" discovery in this action. Mar. 5, 2020 Hr'g, 28:25-29:2. He continued: "[T]here is often a lot of talk about proportionality and whatnot. This is a big case. It is a significant issue. . . . [T]his is not the type of case where we are going to be saying . . . you know, it is just too expensive or difficult, and so we are not going to make Facebook do it." *Id.*, 29:3-10.

Despite Judge Chhabria's instruction, that is precisely what Facebook is saying. *See* Dkt. No. 720-5 at 2 n.1 ("Collecting, reviewing, and categorizing these materials consistent with the Court's instructions would be burdensome and may take many months (if not more).") The burden of producing documents highly relevant to Plaintiffs' claims is proportionate to the needs of this case. Warnings about further delays should not factor in the Court's resolution, except to emphasize that production of the requested documents is long overdue. Plaintiffs asked for these documents more than 21 months ago. They are not privileged. They should be produced.

### III. CONCLUSION

The Court should order Facebook to produce (1) the information Facebook has proposed to produce regarding each app it suspended as a result of the ADI; (2) which apps were in violation or in potential violation of which Facebook policies and over what period of time these entities were in violation of these policies and the specific conduct that caused them to be in violation; (3) documents (not created by lawyers) from the Enhanced Examination phase of the ADI; and (4) documents from the Enforcement phase of the ADI.

Dated: August 9, 2021                                                         Respectfully submitted,

| | |
|---|---|
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| By:  /s/ Derek W. Loeser      <br>       Derek W. Loeser | By:  /s/ Lesley E. Weaver      <br>       Lesley E. Weaver |
| Derek W. Loeser (admitted *pro hac vice*) <br> Cari Campen Laufenberg (admitted *pro hac vice*) <br> David Ko (admitted *pro hac vice*) <br> Adele A. Daniel (admitted *pro hac vice)* | Lesley E. Weaver (SBN 191305) <br> Anne K. Davis (SBN 267909) <br> Matthew S. Melamed (SBN 260272) <br> Angelica M. Ornelas (SBN 285929) |

Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Derek W. Loeser, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of August, 2021, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on August 9, 2021, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

**In addition, the following were served via email:**

> Anjeza Hassan
> annie.sara@yahoo.com

/s/ *Sarah Skaggs*
Sarah Skaggs