GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
 osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
 klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
 mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
 dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
 jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**STATEMENT IN SUPPORT OF FACEBOOK, INC.'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL** |

Pursuant to Civil Local Rules 7-11 and 79-5, and the parties' August 2, 2021 agreement (*see* Dkt. 719-2 ¶ 2), Facebook, Inc. ("Facebook") hereby submits the following Statement in Support of its Administrative Motion to File Under Seal three exhibits to the August 2, 2021 Declaration of Alexander H. Southwell in Support of Facebook's Position in the Parties' July 2, 2021 Letter Brief Regarding ADI Privilege Dispute. Dkt. 719.

In connection with Mr. Southwell's declaration, Facebook seeks to seal three confidential engagement agreements with third-party forensic consulting firms that its counsel (Gibson Dunn) retained to support it in providing legal advice to Facebook, as part of the App Developer Investigation ("ADI" or the "Investigation"). Aug. 9, 2021 Southwell Decl. ¶¶ 3–4; *see* Aug. 2, 2021 Southwell Decl. ¶ 9, Dkt. 720. Facebook submitted these confidential engagement agreements to provide the Court the facts necessary for it to evaluate whether materials Plaintiffs seek from ADI are protected by the attorney-client privilege and/or work-product protection. Aug. 2, 2021 Southwell Decl. ¶ 9. There is good cause to seal these agreements, which Facebook submitted pursuant to the Court's instructions (Dkt. 711) in connection with a non-dispositive discovery letter brief, and which contain: (i) highly confidential information regarding Facebook's consulting experts; and (ii) sensitive business information—the public disclosure of which may harm Facebook's current and prospective business engagements.

A.  **The Good Cause Standard Applies Because the Agreements Facebook Seeks To Seal Do Not Go To The Merits.**

The Court should seal engagement agreements with forensic experts Gibson Dunn retained to assist with ADI under the "good-cause" standard. When a party seeks to seal judicial records related to the merits of a case, there is a "strong presumption in favor of" public access to the records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). But this standard does not apply where, as here, the information a party seeks to seal is "unrelated or only tangentially related to the merits of a case." *Doe v. Walmart, Inc.*, 2019 WL 636362 at *1 (N.D. Cal. Feb. 11, 2019); *see also Kamakana,* 447 F.3d at 1179 ("[T]he public has less of a need for access to court

Gibson, Dunn & Crutcher LLP

records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action). Courts seal information submitted in connection non-dispositive motions so long as there is good cause to do so because public disclosure of the information would cause harm or prejudice, and the request is narrowly tailored. *Walmart*, at *1–*2.

Here, Facebook submitted the engagement agreements at issue in connection with a declaration the Court ordered Facebook to provide (Dkt. 711) to allow the Court to evaluate whether certain materials Plaintiffs requested through a non-dispositive discovery letter brief (Dkt. 699) are privileged and/or protected by the work-product doctrine. Because Facebook did not submit the letters in connection with a merits dispute, the good-cause standard applies, and—for the reasons explained below—there is good cause to permanently seal the engagement agreements.

**B.    The Engagement Agreements Should Be Sealed Because They Reveal Confidential Details About Facebook's Non-Testifying Consulting Experts.**

There is good cause to seal the engagement agreements at issue, because they reveal confidential details about Facebook's non-testifying experts. Because parties' relationships with non-testifying, consulting experts are confidential, courts regularly seal information about those relationships—including the types of information contained in the engagement agreements here. *See Zeiger v. WellPet LLC*, 2018 WL 3208160, at *4 (N.D. Cal. June 29, 2018) (finding good cause to seal identity of consulting expert); *Rouviere v. DePuy Orthopaedics, Inc.*, 496 F. Supp. 3d 811, 812 n.1 (S.D.N.Y. 2020) (filing identity of consulting expert and details of his consultancy under seal); *cf. Burt v. AVCO Corp.*, 2015 WL 12912366, at *4 (C.D. Cal. Nov. 17, 2015) ("[M]any courts have recognized that the identity of non-testifying consulting experts is not discoverable absent a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.").

In connection with the Investigation, Gibson Dunn retained two leading forensic consulting firms to serve as consulting experts to assist it in providing legal advice to Facebook about litigation, compliance, and regulatory inquiries, and other legal risks facing the company resulting from potential data misuse and activities by third-party app developers. Aug. 9, 2021 Southwell Decl.

¶¶ 3–4.  Counsel's engagement agreements with these non-testifying experts reveal confidential information about the experts, including their identities, the scope of their engagement, and even their investigatory tools.  Aug. 9, 2021 Southwell Decl. ¶¶ 7–8.  Indeed, in providing these details, the agreements reveal confidential information not only about the non-testifying experts counsel retained; they also reveal confidential information about the proprietary design and investigative techniques of the legal Investigation for which the experts were retained to assist.[1]

Gibson Dunn's agreements with Facebook's non-testifying experts should be sealed for this reason alone.

C. **The Engagement Agreements Should Be Sealed Because They Contain Confidential Business Information.**

The engagement agreements should also be sealed because they contain commercially sensitive information about the terms of the consultants' retention, including pricing information, details about compensation and reimbursement, security requirements, liability provisions, and details about the requested services.  Aug. 9, 2021 Southwell Decl. ¶ 8.

Public disclosure of information of this nature could harm Facebook's relationships and ability to negotiate with its current and potential vendors and partners.  Indeed, for this reason, "[c]ourts regularly find that litigants may file under seal contracts with third parties that contain proprietary and confidential business information," like the engagement agreements here, because public disclosure of this type of information creates "a risk of significant competitive injury." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4–*5 (N.D. Cal. June 30, 2015) (Corley, J.); *see also In re Elec. Arts, Inc.*, 298 F. App'x at 569 (granting writ of mandamus where district court did not seal "pricing terms" and "guaranteed minimum payment terms"); *Linex Techs., Inc. v. Hewlett-Packard*

---

[1] Publicly revealing confidential aspects of the Investigation's structure, tools, and capabilities could provide bad actors with information that they could employ to attempt to evade restrictions on data access causing harm to Facebook and its billions of users.  Public disclosure could also unfairly allow competitors to copy ADI's innovative techniques. *See, e.g.*, *In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26 (Aug. 9, 2015 N.D. Cal.) (granting a motion to seal a privilege log based on an affidavit that stated the log's descriptions "reflect[ed] and convey[ed] confidential, proprietary information about Endo's business operations as well as its strategies") (quoting *Liboderm*, Dkt. 464).

*Co.*, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8, 2014) (sealing entire exhibit containing "confidential, sensitive business information regarding . . . licenses and financial terms"); *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (finding "compelling reasons" to seal "exhibits that contain the various confidential business agreements executed among the parties" where the information within could "harm the parties in future negotiations with . . . third-parties[] and other entities with whom they do business"); *Loc. Access, LLC v. Peerless Network, Inc.*, 2015 WL 5307729, at *2–*3 (M.D. Fla. Sept. 10, 2015) (finding "good cause" to seal engagement letter between bank and brokerage firm, if not already filed on the public docket); *Krueger v. Ameriprise Fin., Inc.*, 2014 WL 12597948, at *13 (D. Minn. Oct. 14, 2014), *aff'd*, 2015 WL 224705 (D. Minn. Jan. 15, 2015) (sealing an engagement letter between a party and consulting firm).

Due to the sensitivity of confidential business agreements, including engagement agreements like the ones here, courts routinely seal such agreements in their entirety. *See, e.g.*, *Finisar Corp.*, 2015 WL 3988132, at *4 (sealing "in their entirety" exhibits that contain "confidential . . . business information which is not intended for public disclosure"); *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8, 2014) (sealing entire exhibit); *Loc. Access, LLC v. Peerless Network, Inc.*, 2015 WL 5307729, at *2–*3 (M.D. Fla. Sept. 10, 2015) (finding good cause to seal entire engagement letter).

\* \* \*

For these reasons, there is good cause to seal three confidential engagement agreements with forensic consulting firms that Facebook's counsel retained to support it in providing legal advice to Facebook, and Facebook respectfully requests that the Court permanently seal the agreements.

Dated: August 9, 2021          **GIBSON, DUNN & CRUTCHER, LLP**

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*