# EXHIBIT 1
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR PRIVILEGED INVESTIGATORY MATERIALS** <br><br> Judge:  Hons. Vince Chhabria and Jacqueline Scott Corley <br> Courtroom 4, 17th Floor |

1

**TABLE OF CONTENTS**

2

Page

3

INTRODUCTION .................................................................................................................. 1

4

BACKGROUND ................................................................................................................... 2

5

I.      In March 2018, The Media Reports Data Misuse by Cambridge Analytica ................ 2

6

II.     This Case and Dozens of Related Cases are Filed Against Facebook ......................... 2

7

8

III.    Facebook Hires Gibson Dunn to Design and Launch a Retrospective Internal
        Investigation to Assess Legal Risk ....................................................................... 3

9

IV.     The Investigation Is Distinct from Facebook's Regular Enforcement Efforts ............ 3

10

V.      Plaintiffs Demand Access to All of Facebook's ADI Materials .................................. 4

11

        A.      Facebook Produces Non-Privileged Materials.................................................. 4

12

        B.      The Court Orders the Parties to Identify Representative Materials ................. 5

13

        C.      Plaintiffs Challenge Privileged Documents Not Sent or Received by
                Attorneys ...................................................................................................... 5

14

ARGUMENT ........................................................................................................................ 6

15

I.      ADI is a Privileged Legal Investigation ...................................................................... 6

16

        A.      Investigation Materials are Protected by the Attorney-Client Privilege .......... 6

17

II.     Investigation Materials Fall Within the Work-Product Protection ............................. 8

18

        A.      The Materials Were Created Because of Actual and Anticipated
                Litigation ...................................................................................................... 9

19

20

        B.      Factual Investigatory Materials Are "Opinion" Work Product......................... 9

21

III.    Each of the Documents Plaintiffs Challenge is Independently Privileged ................. 10

22

        A.      Documents Summarizing, Reflecting, or Relaying Attorney Advice are
                Privileged ................................................................................................... 11

23

24

        B.      Communications With and Among Experts Operating at the Direction
                of Counsel are Privileged ............................................................................. 14

25

        C.      Images Used to Communicate in Privileged Communications are
                Privileged ................................................................................................... 17

26

        D.      Facts Collected at the Direction of Counsel are Privileged ........................... 18

27

CONCLUSION ................................................................................................................... 20

28

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4
5

*Admiral Ins. Co. v. U.S. District Court*,
   881 F.2d 1486 (9th Cir. 1989).........................................................................................9

6

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   306 F.R.D. 234 (N.D. Cal. 2015)....................................................................................9

7
8

*AT&T Corp. v. Microsoft Corp.*,
   2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ...........................................................7, 8

9
10

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992).........................................................................................9

11

*Dukes v. Wal-Mart Stores, Inc.*,
   2013 WL 1282892 (N.D. Cal. Mar. 26, 2013) ................................................................9

12
13

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*,
   180 F. Supp. 3d 1 (D.D.C. 2016) ...............................................................................8, 19

14
15

*Finjan, Inc. v. Sonicwall, Inc.*,
   2018 WL 4998149 (N.D. Cal. Oct. 15, 2018) .................................................................9

16

*Fosbre v. Los Vegas Sands Corp.*,
   2016 WL 183476 (D. Nev. Jan. 14, 2016) ........................................................7, 12, 19

17
18

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
   357 F.3d 900 (9th Cir. 2004)........................................................................................10

19
20

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) .......................................................................................7

21

*Mitchell Eng'g v. City & Cty. of S.F.*,
   2010 WL 1853493 (N.D. Cal. May 6, 2010) ...............................................................10

22
23

*Phoenix Techs. Ltd. v. VMware, Inc.*,
   195 F. Supp. 3d 1096 (N.D. Cal. 2016) ........................................................................10

24
25

*S.E.C. v. Schroeder*,
   2009 WL 1125579 (N.D. Cal. Apr. 27, 2009), *objections overruled*,
   2009 WL 1635202 (N.D. Cal. June 10, 2009) ..............................................................10

26
27

*Scalia v. Int'l Longshore & Warehouse Union*,
   336 F.R.D. 603 (N.D. Cal. 2020) .............................................................................1, 12

28

*Todd v. STAAR Surgical Co.*,
   No. CV-14-05263-MWF, 2015 WL 13388227 (C.D. Cal. Aug. 21, 2015)............1, 7, 15

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)......................................................................................1, 7, 15

*United States v. Richey*,
    632 F.3d 559 (9th Cir. 2011).............................................................................1, 7, 9, 11, 15

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020)......................................................................................7, 9, 19

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)......................................................................................................2, 7, 8

**Other Authorities**

https://www.facebook.com/zuck/posts/10104712037900071 ..............................................8

Restatement (Third) of the Law Governing Lawyers § 69 ................................................18

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ...............................................................................................15

**Treatises**

24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.) ...................................................................18

Gibson, Dunn & Crutcher LLP

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

**INTRODUCTION**

This brief addresses twenty privilege-log entries Plaintiffs challenge on the basis that the entries do not include the names of attorneys.  Plaintiffs offer no explanation for their position that communications among non-attorneys cannot be privileged.  And there is none.  The attorney-client privilege and work-product doctrine frequently protect communications between non-attorneys, including in the scenarios Plaintiffs challenge.  Indeed, the majority of the entries Plaintiffs dispute refer only to the top email on a chain that is otherwise among attorneys and explicitly summarizes or discusses counsel's legal advice.  *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 618 (N.D. Cal. 2020).   In other instances, Plaintiffs challenge log entries for materials created by experts whom counsel retained specifically to assist in providing Facebook with legal advice.  *See Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF (RZx), 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015) (citing *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) and *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).  Decades of well-established case law leaves no doubt that materials of this nature are privileged and protected from disclosure.

The entries Plaintiffs challenge are also protected from disclosure because each relates to materials from an internal legal investigation, designed and directed by Facebook's outside counsel, Gibson, Dunn & Crutcher.  This investigation—referred to as the App Developer Investigation ("ADI" or "Investigation")—was designed to assess legal risks as Facebook faced a storm of lawsuits and regulatory scrutiny in the wake of reporting on data misuse by Cambridge Analytica in March 2018. Based on its experience conducting these types of investigations, and with an eye toward litigation, counsel designed and developed a confidential, privileged investigation to gather the facts needed to provide advice to Facebook about litigation, compliance, regulatory inquiries, and other legal risks. The Investigation was retrospective in nature, its details were kept confidential, and, at all times, counsel worked toward a quintessentially legal goal: to identify and address potential legal exposure arising from other apps that posed risks similar to those unearthed in connection with Cambridge Analytica, before Facebook put additional safeguards in place in 2014.

Plaintiffs now seek to bypass the limits of discovery and demand that Facebook hand over its attorneys' assessment of the risks that certain apps and developers may pose for the Company in this lawsuit and others.  But that is precisely what the long-standing laws of privilege and work product are designed to prevent.  Indeed, in structuring and directing the Investigation, Facebook relied on the well-

Gibson, Dunn & Crutcher LLP

established protections for such legal investigations grounded in seminal cases like *Upjohn Co. v. United States*, 449 U.S. 383 (1981) and Rule 26(b)(3).  Communications and documents prepared in connection with the Investigation are privileged whether or not an attorney sent or received them.

This brief proceeds in two parts.  First, Facebook describes the Investigation and explains why Investigation materials—including those sent and received by non-attorneys, such as those challenged—are protected by the attorney-client privilege and work-product protection.  Second, Facebook addresses each of the specific log entries Plaintiffs challenge and details how each reflects counsel's legal advice or work prepared at counsel's direction to allow counsel to advise Facebook.

The Court should deny Plaintiffs' request and hold that materials from Facebook's Investigation conducted by and at the direction of counsel are protected by the attorney-client privilege and work-product protection and that each of the documents Plaintiffs challenge was properly withheld.

## BACKGROUND

### I.    In March 2018, The Media Reports Data Misuse by Cambridge Analytica

On March 17, 2018, media outlets broke the news that a company called Cambridge Analytica misappropriated data regarding millions of Facebook users from an app developer named Aleksandr Kogan.  Kogan had created a personality quiz app on Facebook's platform five years earlier called "thisisyourdigitallife."  SACC, Dkt. 491 ¶¶ 394, 397.  Through that app he obtained data from users who downloaded it.  Consistent with Facebook's pre-2014 policies, he also obtained limited data about those users' friends through "friend sharing," so long as those friends "had their privacy settings set to allow it."  *Id*. ¶¶ 397-99.  Kogan then violated Facebook's policies and terms of use and sold this data to Cambridge Analytica.  *Id.* ¶ 411.  Facebook changed its platform in 2014 to reduce data access (*e.g*., transitioned away from friend sharing)

### II.   This Case and Dozens of Related Cases are Filed Against Facebook

Three days after the media broke the Cambridge Analytica story, a nationwide consumer protection class action was filed against Facebook in this Court on March 20, 2018.  *See Price v. Facebook*, No. 3:18-cv-01732-VC (N.D. Cal.), Dkt. 1.  This was just the tip of the iceberg.  Given the nature of the news, Facebook anticipated it soon would face a flood of litigation.  And it was right.  Within weeks, a single class action morphed into nearly 40 (which were consolidated into this MDL) and Facebook faced dozens of other lawsuits and regulatory inquiries across the country.  At least sixty-five cases relating to the Cambridge Analytica events and information shared with third parties through

2

friend sharing have been filed since March 2018, in addition to inquiries from numerous regulators.

## III. Facebook Hires Gibson Dunn to Design and Launch a Retrospective Internal Investigation to Assess Legal Risk

To prepare for anticipated and actual litigation, Facebook's in-house legal team hired Gibson, Dunn & Crutcher, to conduct an internal investigation and advise the company on its litigation risks and strategy.  The Investigation was structured as a confidential, internal, retrospective, and legal-driven review into developers and apps that were active on Face..book before it changed its platform in 2014 to reduce data access and transition away from friend sharing.  The Investigation's primary purpose was to review apps that had access to large amounts of data before the 2014 platform changes, with the core goal of uncovering and assessing legal risks posed by other apps that obtained data through friend sharing and providing legal advice to Facebook about legal challenges those apps might present in this litigation and other related cases.

Gibson Dunn has extensive experience conducting cybersecurity and data privacy internal investigations, and with Facebook's in-house counsel, it managed and oversaw all stages of the Investigation.[1]  Under counsel's leadership, the team devised and tailored the Investigation's methods, protocols, and strategies.  Gibson Dunn also led the recruitment of and retained technical experts and investigators, including two leading forensic consulting firms with expertise in assisting with technology-focused investigations.[2]

Facebook attorneys, along with a core Investigation team, including employees with expertise from various departments, collaborated with Gibson Dunn to build out the Investigation.  Counsel also took steps to ensure that communications by and among individuals working on the Investigation remain confidential and privileged, including by limiting communications about the Investigation and restricting access to investigatory documents.

## IV. The Investigation Is Distinct from Facebook's Regular Enforcement Efforts

Consistent with its litigation purpose, the Investigation is fundamentally different than

---

[1]    See Decl. of Stacy Chen in Support of Respondent's Opposition to the Attorney General's Petition, *Attorney General v. Facebook, Inc.*, (Mass. Super. Jan. 17, 2020) (No. 1984cv02597-BLS-1, Dkt. 29) (hereinafter "Chen Decl.").  Facebook does not submit declarations in support of its brief pursuant to the Court's instructions but refers the Court to the January 17, 2020 Declaration of Stacy Chen, which addresses the factual assertions made in this brief.  *Id.*  If the Court would like additional declarations to support Facebook's factual representations, Facebook will submit them at the Court's request.

[2]    Gibson Dunn attorneys and members of the consulting firms at times used Facebook email accounts (@fb.com), rather than their own firm's email accounts, in order to access internal Facebook tools and information required for the Investigation.

Facebook's preexisting monitoring, compliance, and enforcement efforts. Facebook's ordinary policing of its platform is conducted by a team known as Developer Operations, or "DevOps." DevOps monitors, in real time, daily app and developer behavior with the aim of identifying abnormalities that might signal potential policy violations. DevOps enforces Facebook policies, and has developed its own rubrics and procedures for how to enforce those policies against bad actors. On occasion, DevOps may elevate an issue to attorneys for guidance, but it is generally not a legal-supervised effort.

By contrast, the Investigation was launched following the 2018 media reports about Cambridge Analytica specifically to address potential regulatory and litigation risks—*including in this case*— posed by apps that had been on the Facebook platform before it changed its policies in 2014. The Investigation is not a routine, ordinary course, or real-time policy monitoring effort. It is a retrospective legal lookback, focused on a finite, albeit large, set of apps and developers that may have had access to large sets of user data before 2014. Unlike DevOps, which operates under the guidance of non-lawyer employees, the Investigation is and always has been attorney-led and it has served primarily to inform legal decision-making. Indeed, Facebook's counsel has used information generated in the Investigation to advise the company about how to respond to numerous litigations—*including this one*—to mitigate legal risks, and to initiate lawsuits against developers.

## V.     Plaintiffs Demand Access to All of Facebook's ADI Materials

Plaintiffs now seek to improperly commandeer the fruits of Facebook's confidential, privileged internal Investigation. Like Facebook, Plaintiffs want to explore whether other bad actors may have misused Facebook user data before Facebook changed its data-sharing policies in 2014. But rather than investigate those issues through proper civil discovery tools, Plaintiffs demanded that Facebook produce every single document from, about, or relating to its Investigation, which was designed to identify legal risks and provide legal advice about those risks. *See* July 13, 2020 Hr'g Tr. at 40:11-12. This unrestrained request asked Facebook to hand over hundreds of thousands (perhaps millions) of privileged documents created specifically to assess legal risks, including in this case.

### A.     Facebook Produces Non-Privileged Materials

In response to Plaintiffs' blanket demand for Investigation documents, Facebook agreed to produce materials related to its regular platform enforcement efforts, consistent with the fourth live theory of this case—which concerns Facebook's efforts to enforce how certain third parties used user data. *See* Pretrial Order 20, Dkt. 298 at 9. Facebook already produced thousands of documents

regarding app enforcement, and the parties have also negotiated 25 search strings regarding platform enforcement that hit on hundreds of thousands of additional documents.

Facebook further agreed to collect and produce non-privileged materials relating to the Investigation and already produced more than 30,000 pages of non-privileged materials from the Investigation, which are communications with third parties about the Investigation.   These communications are largely with the apps Facebook investigated, and include, among other things, Facebook's Requests for Information, the apps' responses to those requests, and correspondence with the apps regarding the results of Facebook's Investigation, including if the app had been suspended.

Facebook objected only to producing Investigation materials that constitute attorney-client communications and documents reflecting its attorneys' strategy, mental impressions, conclusions, and legal theories.  It also made clear that—given the large number of privileged documents—it would be unduly burdensome for Facebook to review and log all privileged documents from the Investigation.[3]

## B.      The Court Orders the Parties to Identify Representative Materials

Recognizing the significant volume of documents at issue, the Court directed the parties to take this privilege dispute "in pieces," July 13, 2020 Hr'g Tr. at 41:22, and to devise an exemplar privilege log to provide Plaintiffs and the Court with representative entries to assess Facebook's privilege claim.

Facebook proposed, and the parties agreed to, a logging exercise that would provide a comprehensive and representative sampling to fully address this dispute.  *See* Dkt. 518, 518-A.  The parties agreed to six exemplar apps (of the *millions* addressed by ADI) falling into three categories and core ADI custodians against whose files Facebook would run the selected apps' names and ID numbers.

Facebook then reviewed the materials identified.  It produced responsive, non-privileged materials relating to the exemplar apps, which consist of third-party communications relating to the Investigation.  Facebook prepared and served six privilege logs—one for each exemplar app—which collectively contain about 6,100 entries.  These logs have been provided to the Court as Excel files.

## C.      Plaintiffs Challenge Privileged Documents Not Sent or Received by Attorneys

Under the parties' stipulation, Plaintiffs were required to "identify in writing *any particular privilege log entries* that it asserts are not privileged" and explain the challenges "with reasonable

---

[3]     Nor should Facebook have to.  The Parties stipulated that they need not log as privileged "[c]ommunications between a party and its outside counsel or inside counsel, or between inside and outside counsel, in connection with this Action (on or after the March 20, 2018 commencement of the Action), and work product material prepared in connection with this Action (after commencement of the Action)."  Dkt. 462 at ¶ C(5).

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR PRIVILEGED INVESTIGATORY MATERIALS

specificity . . . as to each privilege log entry." Dkt. 462 ¶¶ D(1)-(4).  In violation of this requirement, Plaintiffs challenged *every single entry on Facebook's logs that does not include the name of an attorney* (about 400 of the 6100 entries).  Plaintiffs provided no basis for their sweeping challenges and refused to meet and confer in an effort to narrow the parties' dispute, as their stipulation requires.  *Id.*

On January 15, the Court ordered Plaintiffs to "select 20 entries, from the previously identified 400" from which it would assess Facebook's privilege claim, Discovery Order 12, Dkt. 602 ¶ A, and advised "that should be the end of the matter." Jan. 15, 2021 Tr. at 6:2.  Plaintiffs identified 20 entries, but provided no basis for challenging them other than that they do not include the names of attorneys.

## ARGUMENT

## I.    ADI is a Privileged Legal Investigation[4]

Contrary to Plaintiffs' blanket challenge, communications and documents prepared in connection with the Investigation—which was created and led by attorneys to advise Facebook in actual and anticipated litigation—are privileged and protected by the work-product doctrine whether or not an attorney sent or received them.  Nearly all of the documents Plaintiffs challenge contain communications between an attorney and client for the purpose of giving legal advice, while others are communications containing information collected for purposes of seeking legal advice.  All were part of Facebook's attorney-driven Investigation and are protected from disclosure.

### A.    Investigation Materials are Protected by the Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn*, 449 U.S. at 389).  It is "the oldest of the privileges for confidential communications known to the common law," and its "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.  "More than three decades ago, the Supreme Court held that the attorney-client privilege protects confidential employee communications made during a business's internal investigation led by company lawyers." *In re*

---

[4]    Facebook anticipates Plaintiffs will cite a ruling regarding the Investigation from the Massachusetts Superior Court with respect to certain documents sought by the Massachusetts Attorney General in connection with an ongoing regulatory investigation.  This is a red herring.  First, this decision is on appeal to the Massachusetts Supreme Judicial Court, which granted direct review of the Superior Court's decision.  Second, while the Superior Court rejected Facebook's work-product assertion as to certain of the information requested by the Massachusetts Attorney General (which is being considered on appeal), the court recognized that many of the materials may be protected by the attorney-client communications privilege.

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

Gibson, Dunn &
Crutcher LLP

*Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014) (Kavanaugh, J.). Facebook relied upon these well-settled legal principles in designing and conducting the Investigation, and they decisively protect Facebook's Investigation documents.

### 1.    The Attorney-Client Privilege Protects Non-Lawyer Communications

Plaintiffs' primary argument is that the attorney-client privilege cannot apply to communications an attorney did not send or receive. This is not the law. The attorney-client privilege protects communications between non-attorneys in all of the scenarios Plaintiffs challenge. For example, documents and communications between non-attorneys that summarize, relay, or discuss obtaining legal advice are protected by attorney-client privilege. *See, e.g.*, *Fosbre v. Los Vegas Sands Corp.*, 2016 WL 183476, at *9 (D. Nev. Jan. 14, 2016). Likewise, communications containing information "compiled by [employees] for the purpose of seeking legal advice and later communicated to counsel are [also] protected by attorney-client privilege." *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003)). And, contrary to Plaintiffs' challenges, attorney-client privilege often applies to third parties retained by counsel. *Todd*, 2015 WL 13388227, at *5 (citing *Richey*, 632 F.3d at 566 and *Kovel*, 296 F.2d at 922). Plaintiffs' boilerplate challenge to every entry on Facebook's logs that does not include the name of an attorney ignores these well-settled rules.

### 2.    The Attorney-Client Privilege Protects Factual Communications

The Supreme Court has also long recognized that the attorney-client privilege extends to communications in which a client provides its lawyer with facts necessary to render legal advice. *See Upjohn*, 449 U.S. at 390. As the Court recognized in *Upjohn*, the attorney-client privilege exists "to protect not only the giving of professional advice to those who can act on it *but also the giving of information to the lawyer to enable him to give sound and informed advice*." *Id.* (emphasis added). Courts routinely hold that even purely factual exchanges involving nonlegal personnel are protected from disclosure so long as those facts are gathered at counsel's direction for the purpose of providing legal advice. *See AT&T*, 2003 WL 21212614, at *3; *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 30, 34 (D.D.C. 2016) (attorney-client privilege protects "factual material compiled during a corporation's internal investigations . . . . at counsel's request for later use in providing legal advice" and "extend[s] to communications between corporate employees who are working together to compile facts for in-house counsel to use in rendering legal advice").

Gibson Dunn and Facebook's legal team designed and conducted the Investigation specifically

to gather facts needed to provide legal advice about litigation and other legal risks.  The attorney-client privilege protects communications gathering and conveying these facts.

### 3.    Facebook's Public Statements Did not Waive Privilege

Plaintiffs previously suggested that Facebook waived privilege over the Investigation because it made high-level public statements disclosing that it was conducting an investigation.[5]  Given the highly publicized nature of the Cambridge Analytica events—and consistent with Facebook's ongoing commitment to transparency—Facebook has made occasional generalized public statements about the Investigation.  But these high-level statements mention only the Investigation's existence and general goals,[6] do not disclose the substance of attorney-client communications, and do not create waiver.

Courts in this Circuit have recognized implicit waivers of privileged communications only where a party has used the attorney-client privilege as both a "sword" and a "shield" to gain a litigation advantage.  *See, e.g.*, *Finjan, Inc. v. Sonicwall, Inc.*, 2018 WL 4998149, at *4 (N.D. Cal. Oct. 15, 2018) (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 241-43 (N.D. Cal. 2015)).  Nothing of the sort occurred here.  Facebook never affirmatively used statements about the Investigation as a sword to advance its case, nor have any of Facebook's statements put the substance of the communications Plaintiffs challenge at issue. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *6-9 (N.D. Cal. Mar. 26, 2013) (Corley, M.J.) (privilege not waived by generalized statements that provided "no information about the actual content" of a privileged memorandum, and the company had not attempted to use it in litigation).

## II.    Investigation Materials Fall Within the Work-Product Protection

The work-product protection also covers the materials that Plaintiffs seek.  The work-product doctrine, which is grounded in Federal Rule of Civil Procedure 26(b)(3), "protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *Sanmina Corp.*, 968 F.3d at 1119 (quoting *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  The doctrine "shelters the mental processes of the attorney . . . and protects both

---

[5]    Because this briefing is simultaneous, Facebook responds to the arguments it anticipates Plaintiffs will make.  If the court is inclined to make a ruling based on an argument Facebook has not anticipated, Facebook requests the opportunity to submit supplemental briefing on that issue before the Court issues a ruling.

[6]    For example, on March 21, 2018, Facebook's founder Mark Zuckerberg publicly announced the Investigation, explained its purpose as "investigat[ing] all apps that had access to large amounts of information before we changed our platform to dramatically reduce data access in 2014," and stated that the company would inform users if their personal data is found to have been abused.  *See* https://www.facebook.com/zuck/posts/10104712037900071.

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

Gibson, Dunn & Crutcher LLP

material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* (internal quotations and citation omitted). "The primary purpose of the work-product rule is to prevent exploitation of a party's efforts in preparing for litigation." *Id*.

Plaintiffs seek to end-run this doctrine. Rather than serve tailored discovery requests to develop their case, they seek to commandeer work conducted by Facebook's counsel in connection with assessing legal risks certain apps and developers may pose for Facebook in this case and other related actions. The Court should reject this transparent attempt to invade Facebook's attorney work product.

### A.    The Materials Were Created Because of Actual and Anticipated Litigation

The work-product protection extends to documents generated in connection with an investigation, so long as the materials were prepared "*because of* the prospect of litigation." *Richey*, 632 F.3d at 568 (emphasis added). This is true even if documents prepared at the direction of counsel to assist in defending against litigation also prove useful for other purposes, which is often the case. *See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908-09 (9th Cir. 2004). The key question in determining whether information was generated "because of" litigation is whether it "would not have been created in substantially similar form but for the prospect of that litigation." *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) (quoting *In re Grand Jury Subpoena*, 357 F.3d at 908).

The investigatory materials at issue were unquestionably created because of anticipated and actual litigation. When Facebook commenced the Investigation, it faced numerous lawsuits, including this one, and the prospect of many more to come—all concerning the issues on which the Investigation focused. Facebook's in-house and outside counsel designed the Investigation to gather the facts needed to provide legal advice to Facebook about litigation, compliance, regulatory inquiries, and other legal risks facing the Company. There is no question the materials at issue here would not have been created but for those actual and anticipated actions.

### B.    Factual Investigatory Materials Are "Opinion" Work Product

The work product protection covers factual materials created as part of a legal investigation. Investigatory materials created in connection with "a litigation-related investigation are likely to be permeated with the investigator's own impressions and possibly even attorney theories or strategy, and are therefore protected from discovery." *Mitchell Eng'g v. City & Cty. of S.F.*, 2010 WL 1853493, at *1 (N.D. Cal. May 6, 2010) (internal citations omitted). Attorneys "use[] their knowledge about the

facts and theories of the case to identify and filter which facts and comments [are] important to [an] investigation." *S.E.C. v. Schroeder*, 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009), *objections overruled*, 2009 WL 1635202 (N.D. Cal. June 10, 2009).  For this reason, even factual data can reflect counsel's opinions or legal theories, when compiled at an attorney's direction.  *See, e.g.*, *id.*

Some of the documents Plaintiffs challenge are factual in nature.  Those materials are the direct result of analyses involving attorney-derived criteria and judgment about legal risk, and thus reflect the thought processes of counsel concerning, among other things, the types of app features or activities counsel identified as indicating potential policy violations and where counsel would look for potential data and privacy vulnerabilities.  Without counsel's mental impressions, analysis, and legal advice, the information Plaintiffs seek would not exist.  Plaintiffs may serve proper discovery requests to develop facts in support of their case.  But they cannot simply piggyback on counsel's work.  *See Richey*, 632 F.3d at 567 ("The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation.").  The documents and information from the Investigation are quintessential examples of privileged materials protected from disclosure.

### III.    Each of the Documents Plaintiffs Challenge is Independently Privileged

As discussed above, the materials Plaintiffs seek are categorically protected under the attorney-client privilege and the work-product doctrine, which the documents Plaintiffs challenge illustrate.

Plaintiffs initially challenged wholesale every entry on Facebook's privilege logs that does not include the name of an attorney (about 400 of 6100 entries).  Plaintiffs then identified 20 of those entries to brief.  The entries Plaintiffs identified in fact confirm that the Investigation was directed by attorneys for the purpose of assessing legal risks.  Indeed, most of the entries Plaintiffs challenge are the top email on an email chain among attorneys, attachments originally circulated by or to attorneys, or materials created to seek legal advice.[7]

Facebook addresses the entries Plaintiffs identified for this briefing below, explaining how each entry is privileged.[8]  Facebook reminds the Court that Plaintiffs have not identified any bases for their

---

[7]     If Plaintiffs had fulfilled their obligation to meet and confer about the challenged documents, Facebook would have provided Plaintiffs with this context.  This would likely have avoided burdening the Court with this and other straightforward privilege disputes.

[8]     Facebook agreed to produce two documents it logged originally—a communication Plaintiffs identified (FB-ADI-0000003224) and its parent email.  These documents are not ADI-related and were inadvertently captured by the searches used for this exercise.  *See* Ex. A (letter from D. Stein).  Facebook confirmed it is not withholding other similar materials.  *Id.*  For this reason, Facebook discusses 19 documents (not 20) below.

Gibson, Dunn &
Crutcher LLP

challenges other than that no attorney appears on the challenged entries they dispute.   Because
Facebook is not aware of the specific arguments Plaintiffs intend to make, for each document, Facebook
describes the challenged entry, explains why the referenced document is facially privileged, and
provides surrounding context to better illustrate the document's privileged nature.   Facebook submits
each of the challenged documents as exhibits for *in camera* review, in addition to other documents,
such as the email chain by which challenged attachments were sent, to provide additional context.[9]

### A.   Documents Summarizing, Reflecting, or Relaying Attorney Advice are Privileged

Plaintiffs challenge a number of documents that summarize or relay counsel's legal advice,
which are addressed in this section.   Such materials are indisputably privileged—even when they are
sent by non-attorneys to other non-attorneys.   "Communications between non-attorney employees for
purposes of obtaining or relaying legal advice are protected by the attorney-client privilege."   *Fosbre*,
2016 WL 183476, at *9; *see also Scalia*, 336 F.R.D. at 618 (when "employees discuss or transmit legal
advice given by counsel," the communications are protected).

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 1 | FB-ADI-0000000541 | Attorney-client privilege; work product. |

Plaintiffs challenge an attachment, likely because it was sent by one non-lawyer to another non-lawyer, but this document is privileged on its face.   The context further confirms that the attachment was sent as part of a privileged conversation, pursuant to a privileged investigation directed by counsel, and originally circulated by an attorney.   Plaintiffs concede the attachment as originally circulated by an attorney is privileged by not challenging the underlying email.

**The challenged document plainly summarizes Gibson Dunn's advice on the investigation and its preliminary findings for its client, making it both a privileged communication and protected by the work-product doctrine.** The challenged document is a set of slides ███████ ████████████████████████████████████████████████.

**The full email chain further demonstrates that the challenged attachment is properly withheld as privileged.**   The email to which the challenged document is attached is the top email on a chain among attorneys.   The chain originates with ████████████   in-house attorney ████████████████████████████████████████████████████████ email is marked "A/C Priv" and "ATTORNEY WORK PRODUCT CREATED IN ANTICIPATION OF LITIGATION AT THE DIRECTION OF COUNSEL."   Plaintiffs do not dispute that ███████████████████ is privileged or that the slides are privileged as attached to ███████████ email.

**When Gibson Dunn's legal advice was forwarded again, it did not waive privilege.** ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████   subsequent discussion of this privileged email, ███████

---

[9]   On these materials Facebook highlights in yellow names of Gibson Dunn attorneys and consultants retained by Gibson Dunn, many of whom used "@fb.com" email addresses for their work on the Investigation.

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

Gibson, Dunn &
Crutcher LLP

██████████████████████████ remains privileged.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 2 | FB-ADI-0000000004 | Attorney-client privilege; work product. |

Plaintiffs challenge as Document 2 an earlier version of Document 1. As discussed above, this is a set of slides conveying counsel's advice and work product. Ex. 2A.

**The context of the full email chain—which contains a discussion of legal advice and is indisputably privileged—further demonstrates that the challenged document was properly logged and withheld.** ████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ As above, nothing about this discussion among core ADI team members, ████████████████████ waives privilege over slides providing a detailed description of counsel's advice and findings.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 3 | FB-ADI-0000004935 | Attorney-client privilege; work product. |

Plaintiffs challenge an image embedded in an email, likely because it was sent by one non-lawyer to another non-lawyer, but this image is privileged on its face. The surrounding context further shows the image was sent as part of a privileged communication, pursuant to an investigation directed by counsel and was circulated to Gibson Dunn attorneys. Plaintiffs concede the image as originally circulated to Gibson Dunn is privileged by not challenging the underlying email.

**The challenged image plainly summarizes Gibson Dunn's legal advice on the Investigation's focus and key priorities for its client, making it both a privileged communication and protected by the work-product doctrine.** The image summarizes Gibson Dunn's advice regarding the Investigation's scope and design, ████████████████████████.

**The full email chain—which details Gibson Dunn's findings and recommendations and solicits legal advice—further demonstrates the challenged image was properly withheld as privileged.** ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ [10] Plaintiffs do not dispute this email (or the images as embedded in it) is privileged. ████████████████████████████████████████ ███████████████████████████████ Plaintiffs again do not dispute that these communications seeking legal advice (with the images embedded lower on the chain) are privileged.

**Privilege still attaches when one core ADI team member responds directly to another on this chain.** Plaintiffs' challenge is presumably based on the fact that, in the top email on the chain, ████████████████████████████████████████████████ ████████████████████████████ This discussion among core Investigation

---

[10]   Due to the manner in which documents are processed and produced for litigation, the images appear as separate documents here, but they were not intended to be, and were not, freestanding.

Gibson, Dunn &
Crutcher LLP

team members regarding advice sought from counsel is plainly privileged and does render the privilege waived for an image that was originally circulated to counsel and provides a summary of counsel's advice and findings.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 4 | FB-ADI-0000004878 | Attorney-client privilege; work product. |

Plaintiffs challenge this email, presumably because it was a communication between non-lawyers, but the email is plainly privileged. The challenged email cannot be separated from the rest of the email chain, which was initially sent to in-house counsel ███████ and Gibson Dunn attorneys pursuant to a privileged investigation, and which Plaintiffs concede is privileged. **The challenged email relays Gibson Dunn's advice, making it both a privileged communication and protected by the work-product doctrine.** ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**The full email chain, which includes Gibson Dunn attorneys and summarizes their legal advice, further demonstrates that the email was properly withheld as privileged.** The challenged email is the top email on an email chain sent to numerous attorneys. *Id.* The chain ████████████████████████████████ is labeled "A/C PRIV" and "ATTORNEY WORK PRODUCT CREATED IN ANTICIPATION OF LITIGATION AT THE DIRECTION OF COUNSEL." Recipients include Gibson Dunn attorneys, as well as Facebook's lead in-house counsel on the Investigation at the time ███████. Plaintiffs do not dispute that this email is privileged. The subsequent communications on the email thread include a discussion about Gibson Dunn's legal advice and seek additional legal advice from Gibson Dunn. Plaintiffs also do not dispute that these emails are privileged. ████████[1]

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 5 | FB-ADI-0000006118 | Attorney-client privilege; work product. |

Plaintiffs likely challenge this attachment because it was sent by one non-lawyer to another non-lawyer, but the attachment is facially privileged. The email chain further shows it was originally sent by a Gibson Dunn attorney, in a privileged conversation, pursuant to the privileged Investigation. Plaintiffs concede the attachment as circulated by Gibson Dunn is privileged by not challenging the underlying email or its attachments (which include the challenged document).

**The challenged document relays Gibson Dunn's advice on the Investigation's design, status, and next steps, making it both a privileged communication and protected by the work-product doctrine.** ██████████████████████

████████████████████████████ It is labeled "Privileged & Confidential – Attorney Work Product – Attorney-Client Communication," and it is facially privileged. **The full email chain, which discusses a future meeting between Gibson Dunn and Facebook about ADI, further demonstrates the challenged document was properly withheld as**

---

[11]   The email contains a number of embedded images, which due to production format appear as grey boxes with separate email attachments. These images are attached for the Court's convenience as Exhibits 4B-E.

**privileged.** The email to which the challenged document is attached is the top entry in a chain among attorneys. The chain reflects that the challenged document was prepared and originally sent by a Gibson Dunn attorney in advance of a meeting with Gibson Dunn and Facebook personnel. Ex. 5B (second communication in thread). Plaintiffs do not dispute that earlier emails on the chain from Gibson Dunn attorneys (including the email circulating this document) are privileged.

**Forwarding Gibson Dunn's analysis to an ADI team member does not constitute waiver.** Plaintiffs' challenge is presumably based on the fact that a recipient of Gibson Dunn's analysis, forwarded it to another *original recipient* of Gibson Dunn's email for the purposes of providing instructions regarding the upcoming meeting. Nothing about this discussion among ADI team members to prepare for meeting with counsel waives privilege.

### B. Communications With and Among Experts Operating at the Direction of Counsel are Privileged

Plaintiffs challenge various communications with and documents prepared by experts retained by Gibson Dunn to assist it in providing legal advice to Facebook. These experts were engaged directly by Gibson Dunn to operate as an extension of counsel and to support counsel in investigating, understanding, and identifying apps and developers that could have potentially misused user data and advising Facebook about legal risk issues. The experts assisted in interpreting technical findings and data. They also assisted in developing an investigative framework that reflected counsel's assessment of risky app and developer profiles, how counsel should prioritize its review, and when Facebook should pursue further action.

The attorney-client privilege extends to "communications with a third party" where, as here, "that third party has been retained as an agent for the purposes of assisting a lawyer in providing advice to a client." *Todd,* 2015 WL 13388227 at *5 (citing *Richey*, 632 F.3d at 566 and *Kovel*, 296 F.2d at 922). "The vital element to the assertion of the privilege . . . is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*." *Id*. (internal quotations and citation omitted). Similarly, the work-product protection extends to the work and mental impressions of consultants retained by counsel to assist in the provision of legal advice. *See* Fed. R. Civ. P. 26(b)(3)(A) ("[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . .").

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 6 | FB-ADI-0000004849 | Attorney-client privilege; work product |
| Document 7 | FB-ADI-0000004850 | Attorney-client privilege; work product |
| Document 8 | FB-ADI-0000004851 | Attorney-client privilege; work product |
| Document 9 | FB-ADI-0000003218 | Attorney-client privilege; work product |

Plaintiffs challenge four attachments, presumably because they were attached to emails sent by a non-lawyer to other non-lawyers, but these documents are facially privileged. The context provided in the full email chains shows that the attachments were originally circulated to in-

house attorneys—███████—in a privileged communication, pursuant to the privileged Investigation. Plaintiffs concede the attachments as originally circulated are privileged by not challenging the underlying email or the challenged document as attached to it.

**The challenged documents reflect Gibson Dunn's legal advice and were prepared at the direction of counsel to facilitate a discussion about the Investigation's structure, making them both privileged communications and protected by the work-product doctrine.**

The first attachment (FB-ADI-0000004849) is an agenda prepared at Facebook Legal's direction to facilitate a discussion ███████████████████████████████████████████ ████████████ The agenda is labeled "AC PRIV," is privileged on its face as an attorney-client communication, and is also protected by the work-product doctrine.

The second attachment (FB-ADI-0000004850) is a table of investigative records ██████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████ for the continued provision of legal advice. It reveals the mental impressions of counsel, and it is privileged on its face and protected by the work-product doctrine.

The third attachment (FB-ADI-0000004851) is also a table of investigative records ██████ ██████████████████████████████████████████████ Again, the table conveys previously rendered legal advice ████████████████████████████████████████████████ ██████████████████████████████████████████████ and it is privileged on its face and protected by the work-product doctrine.

The fourth attachment (FB-ADI-0000003218) is a diagram depicting the Investigation's fact-development workflow that was created ██████ at the direction of Facebook Legal and Gibson Dunn ████████████████████████████████ for the continued provision of legal advice. Ex. 6-9D. For the same reasons as the first three attachments, it is privileged on its face and protected by the work-product doctrine.

**The email chain to which the four challenged documents are attached includes core ADI attorneys, reveals counsel's analyses and recommendations, and further demonstrates that its attachments are privileged.** Ex. 6-9E. The email to which the challenged documents are attached is the top entry in a chain originally sent to attorneys. █████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Plaintiffs do not dispute that this email, including the attachments (as originally transmitted) is privileged.

**Providing these privileged documents to other employees performing work on the Investigation does not constitute a waiver.** Plaintiffs appear to argue that the first three challenged attachments are not privileged because ███████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████ Informing other employees working on the Investigation about it does not constitute a waiver.

Plaintiffs also will likely argue that the fourth challenged attachment is not privileged because one of the employees who received ████████████ email then forwarded the message (with its attachments) to herself, using a different subject line. *See* Ex. 6-9F (top email showing same attachments). Nothing about this record-keeping action waives privilege.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 10 | FB-ADI-0000002534 | Attorney-client privilege; work product. |

████████████████████████████████████████████ the context of this email illustrates that it is a privileged communication sent at the direction of Gibson Dunn pursuant to the privileged Investigation.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████ Such internal communications ██████████████████
████████ are privileged communications sent at the direction of Gibson Dunn, pursuant to the Investigation, conducted by Gibson Dunn and Facebook Legal in order to address and advise on legal risks associated with third party developer access to and use of data.

**The challenged communication is between consultants acting at Gibson Dunn's direction in order to compile information to facilitate Gibson Dunn's ability to advise its client, making the email both privileged and protected by the work-product doctrine.** ████
████████████████████████████████ In the email, a consultant ████ working at the direction of counsel shared access to a document that was compiled in order to gather information needed for Gibson Dunn to provide legal advice.  To this end, the email includes an attached spreadsheet that reflects Gibson Dunn's advice related to specific apps and developers, and reveals information gathered by the investigative team at Gibson Dunn's direction for use in providing further advice regarding ongoing investigations. ████████ The email sharing this information is privileged and protected by the work-product doctrine.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 11 | FB-ADI-0000002537 | Attorney-client privilege; work product. |

████████████████████████████████████████████████
████████████ The context illustrates that this spreadsheet is a privileged communication between agents of Gibson Dunn sent at the direction of Gibson Dunn pursuant to ADI.

**The challenged document reflects Gibson Dunn's legal advice to its client on next steps in the Investigation, making it both a privileged communication and protected by the work-product doctrine.**  The challenged attachment was compiled by core ADI investigators, reflects the core investigative and enforcement efforts of the ADI, and was sent in furtherance of the ADI.  It is a tracker document that collects relevant information for the provision of legal advice, and reflects legal advice rendered by Gibson Dunn and the status of various app- or developer-specific investigations conducted as part of ADI.  The document reflects both a confidential attorney-client communication and opinion work product, and it is privileged on its face.

**The fact that the privileged table was sent to a consultant acting at Gibson Dunn's behalf does not waive privilege or the work-product doctrine.** ████████████████████████
████████████████ But as with Document 10, the email demonstrates that consultants working at the direction of Gibson Dunn merely shared access to a document that gathered information required

for the continued provision of legal advice by Gibson Dunn.  This exchange does not waive privilege over the table.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 12 | FB-ADI-0000002505 | Attorney-client privilege; work product. |

██████████████████████████████████████████████

██████████ in this context, the communication is privileged.  Ex. 12. ████████

██████████ This document reveals these processes and the ADI team's internal methods.  There are two attachments to the email, over which Facebook does not assert privilege because they were sent to external developers, and those have been independently produced. *See* Log Entry FB-ADI-0000002506, FB-ADI-0000002507.

### C.    Images Used to Communicate in Privileged Communications are Privileged

Plaintiffs challenge images used to convey substantive information during privileged discussions on Facebook's internal instant messaging platform.  Memes, emojis, and other images have become a hallmark of the way people communicate, particularly on instant-messaging platforms, and they provide a succinct way to convey substantive information.  For instance, a thumbs up can convey agreement or permission.  A thumbs down can convey disagreement, or displeasure.  Adding a smiley face to an otherwise rude comment may convey sarcasm.  When these images are used during privileged conversations they are privileged.  *See* Restatement (Third) of the Law Governing Lawyers § 69 (privilege reaches communications "in any form," including "communication through technologically enhanced methods" and "nonverbal communicative acts"); *see also* 24 Fed. Prac. & Proc. Evid. § 5484 (1st ed.) (finding privileged "objects . . . used as a method of communication.")

Plaintiffs challenge two embedded images, both of which were used during privileged discussions on Facebook's internal instant messaging platform.  During these discussions, the challenged images would have appeared in-line, alongside and as a substitute for substantive text.  But due to the manner in which documents are processed and produced, they appear as attachments to the chat messages (which themselves appear similar to emails).

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 13 | FB-ADI-0000000085 | Attorney-client privilege; work product. |

Plaintiffs likely challenge this image because it was sent by one non-attorney to another non-attorney, but the image was used to communicate in a privileged chat.

**The challenged image, Ex. 13A, communicates understanding in a chat conversation about Gibson Dunn's recommendations** ████████████████ **making it a privileged communication and protected by the work-**

17

Gibson, Dunn & Crutcher LLP

**product doctrine**.  The chat in which the challenged image was sent concerns counsel's recommended next steps for certain apps and developers discussed during a meeting with in-house counsel and Gibson Dunn.  *See* Ex. 13B at p. 4 (referencing a ".png").  The discussion between these ADI team members is privileged, including images used to communicate.  For additional context regarding this discussion, Facebook submits a separate email—that Plaintiffs do not challenge. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The image is privileged in this context.[12]

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 14 | FB-ADI-0000003178 | Attorney-client privilege; work product. |

Plaintiffs likely challenge this image because it was sent by one non-attorney to another non-attorney, but the image was used to communicate understanding in a privileged chat.

**The challenged embedded image, Ex. 14A, is used to communicate understanding in a message** ██████████████████████████ **making it both a privileged communication and protected by the work-product doctrine**.  *See* Ex. 14B.  Context demonstrates that the challenged image is facially privileged and protected by the work-product doctrine.  ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This conversation about enforcement measures performed at Gibson Dunn's direction is plainly privileged.  In this context, the image is privileged.

### D.    Facts Collected at the Direction of Counsel are Privileged

Finally, Plaintiffs challenge various documents reflecting facts compiled at the direction of counsel.  These materials are protected from disclosure.  The attorney-client privilege protects "factual material compiled during a corporation's internal investigation … at counsel's request for later use in providing legal advice" and "extend[s] to communications between corporate employees who are working together to compile facts for in-house counsel to use in rendering legal advice."  *Fosbre*, 2016 WL 183476, at *9; *see also Boehringer Ingelheim Pharms.,* 180 F. Supp. 3d at 30, 34.  The work-product protection similarly extends to work compiled by non-attorneys at counsel's direction.  The doctrine "shelters the mental processes of the attorney … and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself."  *Sanmina Corp.*, 968 F.3d at 1119 (internal quotation marks and citation omitted).

---

[12]  To the extent Plaintiffs challenge the image files in Documents 13 and 14 divorced from their context as part of privileged chats, the images have been produced independently in other, non-privileged contexts.

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

Gibson, Dunn &
Crutcher LLP

| Document # | Log ID # | Bases for Withholding |
|------------|----------|----------------------|
| Document 15 | FB-ADI-0000001051 | Attorney-client privilege; work product. |

Plaintiffs may have challenged this email because it was sent by one non-attorney to another non-attorney, but the email is privileged.  The rest of the chain, which includes Gibson Dunn attorneys and Plaintiffs concede is privileged by not challenging it, provides additional context that shows the email was sent at the direction of counsel pursuant to a privileged investigation.

**The challenged email was sent at the direction of Counsel and discusses the process for compiling information needed for Gibson Dunn to render legal advice, making it both a privileged communication and protected by the work-product doctrine.**  The challenged document is the second of two emails on a chain regarding counsel's recommendation ███. ███ It is marked "Attorney Client Privileged" and "Attorney [W]ork [P]roduct," and conveys that its contents should be kept confidential.  Plaintiffs concede ███ original email is privileged by not challenging it. ███ ███ This communication is plainly privileged because it is a communication between individuals working at "at the direction of" Facebook legal and Gibson Dunn, *id.*, discussing how to carry out these attorneys' fact-gathering directives.

| Document # | Log ID # | Bases for Withholding |
|------------|----------|----------------------|
| Document 16 | FB-ADI-0000001328 | Attorney-client privilege; work product. |

The challenged document is ███ response to the email ███ above and is privileged for the same reasons. ███ response also shows he is working with a Gibson Dunn attorney (Nathan Powell) on collecting investigation-related facts.

| Document # | Log ID # | Bases for Withholding |
|------------|----------|----------------------|
| Document 17 | FB-ADI-0000001325 | Attorney-client privilege; work product. |

Plaintiffs likely challenge this task message because it is sent to a non-attorney, but this task document is privileged. ███ ███ The contents of this task are privileged, and additional context confirms that the task was created at the direction of counsel pursuant to a privileged investigation.

**The challenged document provides significant detail on methods employed in the Investigation summarizing Gibson Dunn's advice, making it both a privileged communication and protected by the work-product doctrine.**  The task email ███ ███ ███.[13]

**Additional materials reveal that the task was created at counsel's direction, further demonstrating that it was properly withheld as privileged.**  This particular task was created ███ at counsel's direction, which the following additional documents (none of which are challenged) demonstrate:

---

[13]   Comments from "Task Reaper" and "Butterfly Bot" were generated automatically.

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 18 | FB-ADI-0000003275 | Attorney-client privilege; work product. |

Plaintiffs presumably challenge this excel spreadsheet because it was sent by one non-attorney to another non-attorney, but the spreadsheet is privileged. The timing of this document illustrates that it was compiled at the direction of counsel in order to prepare ADI.

**The challenged spreadsheet compiles data at the request of Facebook Legal in order to structure the Investigation, making it both a privileged communication and protected by the work-product doctrine.** ███████████████████████ It reveals counsel's impressions and determinations regarding which various criteria could be used by counsel to assess legal risk. This information is privileged and protected work product.

**Surrounding context reveals the spreadsheet was created as part of Facebook Legal's initial efforts to design the investigation.** The challenged spreadsheet is attached to an email ████████████████████████████████ The email is sent on March 21, 2018, four days after the Cambridge Analytica story broke, the day after this litigation began.

| Document # | Log ID # | Bases for Withholding |
|---|---|---|
| Document 19 | FB-ADI-0000004860 | Attorney-client privilege; work product. |

Plaintiffs presumably challenge this chat because it involves non-attorneys, but the chat is privileged because it reflects fact-gathering methods conducted at the request of Facebook Legal.

**The challenged chat exchange requests factual information necessary for Facebook Legal to render legal advice related to app enforcement, making it both a privileged communication and protected by the work-product doctrine.** ████████████████ gathered this information at the direction of Facebook Legal, and Facebook Legal used this information to advise on further enforcement measures. This factual discussion is privileged and, like each of the documents above, was properly withheld.

## CONCLUSION

The Court should deny Plaintiffs' request for Facebook's investigatory files, hold that materials from Facebook's Investigation are protected by the attorney-client privilege and work-product doctrine, and hold that each of the documents Plaintiffs challenge was properly withheld as privileged.

DATE:  February 5, 2021                    Respectfully submitted,

**GIBSON, DUNN & CRUTCHER, LLP**

By:  *Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

DEFENDANT FACEBOOK, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR
PRIVILEGED INVESTIGATORY MATERIALS

Gibson, Dunn &
Crutcher LLP