# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br><br> This document relates to: <br><br> ALL ACTIONS | MDL No. 2843 <br> CASE NO. 3:18-MD-02843-VC-JSC <br><br> Hon. Vince Chhabria <br> Courtroom 4 – 17th Floor <br> Special Master: Daniel Garrie, Esq. <br><br> **SUPPLEMENTAL ORDER REGARDING THE USE OF TAR** <br><br> **JAMS REF. NO: 1200058674** |

## BACKGROUND

1.     On August 18, 2021, Special Master Daniel Garrie ("Special Master Garrie") and Judge Gail Andler declared an impasse on the issue of whether Facebook should be compelled to use Technology Assisted Review ("TAR") in their review and production.

2.     Pursuant to the Protocol for Resolving Discovery Disputes, Plaintiffs submitted their opening brief regarding the use of TAR on August 30, 2021. Plaintiffs argue that requiring Facebook to implement TAR is within the Special Master's discretion and that Facebook should be compelled to use TAR because (a) TAR will increase the pace of discovery, which Plaintiffs assert is currently insufficient to meet the needs of the case; and (b) implementing a TAR protocol will increase cooperation and transparency in discovery, which Plaintiffs assert have been insufficient thus far as "Facebook has continued to assert an unduly narrow view of relevance". See Exhibit A (Plaintiffs' Brief Regarding the Use of TAR).

3.     Pursuant to the Protocol for Resolving Discovery Disputes, Facebook submitted their Opposition to Motion to Compel TAR on September 9, 2021. Facebook argues that (a) the ESI Protocol forecloses Plaintiffs' request that the Special Master compel TAR; (b) the case Law unanimously rejects Plaintiffs' request for an order compelling TAR; (c) Plaintiffs offer no justification for an order compelling Facebook to use TAR; and (d) compelling Facebook to use TAR at this stage would delay discovery. See Exhibit B (Facebook's Opposition to Motion to Compel TAR).

4.     Under the Protocol for Resolving Discovery Disputes, Plaintiffs submitted their Reply Brief Regarding the Use of TAR on September 14, 2021, in which they argue, among other things, that (a) implementing TAR will make discovery more efficient; (b) TAR will ad-

vance cooperation and transparency; (c) Plaintiffs have identified numerous deficiencies in Facebook's production; (d) Facebook is not on track to meet the substantial completion deadline; and (e) Facebook's governmental productions are the bare minimum of what's required. See Exhibit C (Reply Brief Regarding the Use of TAR).

5.      On September 22, 2021, Special Master Garrie issued an Order Regarding the Use of TAR in which he ordered Facebook (a) to provide responses regarding the tools and methodologies used in their review; and (b) to make available a technical knowledgeable in the analytics, review tools, and methodologies used in Facebook's production to guide Special Master Garrie through an in-camera review of samples of the documents reviewed and to explain the review process. See Exhibit D (Order Regarding the Use of TAR).

6.      On September 30, 2021, Facebook responded to the tools and methodologies used in its review according to the Order Regarding the Use of TAR. See Exhibit E (FB Supplemental Submission re: TAR).

7.      On October 5, 2021, Special Master Garrie held an ex parte hearing with Counsel for Facebook and a technical resource was available to discuss the FB Supplemental Submission re: TAR and Facebook's review process.

8.      On October 7, 2021, Facebook submitted the Declaration of Danny Thong ISO Facebook's Opposition to Plaintiffs' Motion to Compel TAR which clarifies Facebook's use of analytics and other tools in their review. See Exhibit F (Declaration of Danny Thong ISO Facebook's Opposition to Plaintiffs' Motion to Compel TAR).

//

//

**FINDINGS**

9.    Special Master Garrie finds that it is not appropriate to compel a party to use TAR without a "showing of gross negligence in the review and production process, the failure to produce relevant specific documents known to exist or that are likely to exist or other malfeasance." *Winfield v. City of New York,* No. 15-cv-05236, 2017 WL 5664852, *4 (SDNY November 27, 2017) at *9; see also *In re Mercedes-Benz Emissions Litig.*, No. 2:16-CV-00881, 2020 WL 103975, at *2 (D.N.J. January 9, 2020) (the court "left open the possibility of compelling the use of TAR "if Plaintiffs contend that Defendants' actual production is deficient.").

10.    Special Master Garrie finds that Plaintiffs do not offer sufficient justification for compelling Facebook to use TAR because there do not appear to be deficiencies in Facebook's production to date and Facebook appears to be on pace to meet the January 31, 2022 deadline for substantial completion of discovery.

11.    Special Master Garrie finds that implementing TAR at this stage is not likely to make discovery more efficient as Facebook has already completed over two thirds of its review and Facebook is on pace to meet the substantial completion deadline for discovery.

12.    Special Master Garrie finds that advancing cooperation and transparency is not sufficient justification for compelling TAR as Facebook's supplemental submissions regarding their review have clarified their use of analytics and other tools. See Exhibits E and F. Facebook has only used analytics and other tools to prioritize documents for review, not to filter nonresponsive documents, which is permitted by the ESI Protocol.

13.    Special Master Garrie finds that Facebook's production does not appear to date to be deficient based on Facebook's submissions, the ex parte hearing, and in-camera review of production samples.

14.    Special Master Garrie finds, based on Facebook's submissions, the ex parte hearing, and in-camera review of production samples, that Facebook appears to be on pace to meet the substantial completion deadline for discovery as they have already reviewed over two thirds of the documents in the review population.

15.    Special Master Garrie finds that Plaintiffs' argument that "Facebook's governmental productions are the bare minimum of what's required" fails because Facebook's governmental productions account for approximately 12% of the documents produced to date.

## ORDER

16.    Special Master Garrie denies the Plaintiffs' request to order Facebook to use TAR.

**IT IS SO ORDERED.**

October 9, 2021

Daniel Garrie
Discovery Special Master

ORDER REGARDING THE USE OF TAR

# EXHIBIT A

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley Weaver (Cal. Bar No.191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' BRIEF REGARDING THE USE OF TECHNOLOGY-ASSISTED REVIEW**<br><br>Judge:  Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom:  4, 17th Floor<br><br>JAMS Ref. No.: 1200058674 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................2

I.      PLAINTIFFS' SEPARATE STATEMENT ...............................................................1

II.     INTRODUCTION .........................................................................................................1

III.    RELEVANT BACKGROUND .....................................................................................2

IV.     ARGUMENT .................................................................................................................5

        A.  The Special Master Can Require Facebook to Implement TAR....................................5

        B.  The Special Master Should Compel Facebook to Implement TAR.............................7

            1.  Facebook Was Right—TAR Will Increase the Pace of Discovery........................7

            2.  An Appropriate TAR Protocol Will Facilitate Transparency and Cooperation.......9

        C.  The Special Master Should Enter a TAR Protocol Designed to Meet the Needs of the Case...................................................................................................................11

V.      CONCLUSION .............................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

*Cases*

*Actavis Holdco U.S., Inc. v. Connecticut*, 141 S. Ct. 124 (2020) ..................................................... 5

*Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996)............................................................ 5

Civil Minute Order, *Independent Living Center of Southern California v. City of Los Angeles*, CV 12-551-FMO (PJW) (C.D. Cal. June 26, 2014), ECF. No. 375 .................................................. 6

*Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182 (S.D.N.Y. 2012)...................................... 8, 9

Discovery Order, *EORHB, Inc. v. HOA Holdings LLC*, No. 7409-VCL (Del. Ch. May 6, 2013) .. 6

*In re Actavis Holdco, U.S., Inc.*, No. 19-3549, 2019 WL 8437021 (3d Cir. Dec. 6, 2019)............. 5

*In re Mercedes-Benz Emissions Litig.*, No. 2:16-CV-00881, 2020 WL 103975, at *2 (D.N.J. Jan. 9, 2020) ............................................................................................................................................ 7

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020).. 2

*Moore v. Publicis Groupe*, 287 F.R.D. 182 (S.D.N.Y. 2012)........................................................ 8

*Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-cv-00678-LRH-PAL, 2014 WL 3563467 (D. Nev. July 18, 2014)................................................................................................................................... 2

*Winfield v. City of New York*, No. 15-cv-05236, 2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017) ................................................................................... 5, 6, 9

*Statutes*

Fed. R. Civ. P. 1 ................................................................................................................. 1, 7, 11

*Secondary Sources*

Maura R. Grossman & Gordon V. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review*, 17 Rich. J.L. & Tech. 43, 48 (2011) ............................................................................................................................................ 8

U.S. Dist. Ct., N. Dist. of Cal., *Guidelines for the Discovery of Electronically Stored Information*, Guideline 1.02 (Cooperation), *available at* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf ............. 1, 9, 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    PLAINTIFFS' SEPARATE STATEMENT

Pursuant to ¶ 6 of the Protocol for Resolving Discovery Disputes—Order No. 1, ECF No. 733, Plaintiffs' Separate Statement Regarding the Use of Technology-Assisted Review is provided at Attachment A.

## II.   INTRODUCTION

Plaintiffs are in the strange posture of moving the Special Master to require Facebook to implement a tool it repeatedly told Plaintiffs, the Special Master, and the Court it wanted to use. The Special Master should compel Facebook to implement technology-assisted review (TAR).

Ordering the implementation of TAR will increase the pace of Facebook's production. As Facebook wrote in its May 6, 2021 discovery mediation submission, TAR will "allow Facebook to get responsive documents to Plaintiffs faster, allow the parties to complete document discovery more quickly, and relieve Facebook from reviewing large swaths of categorically non-responsive documents."[1] Plaintiffs agree. TAR will therefore advance the guiding purpose of the Federal Rules of Civil Procedure: "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Equally important, an appropriate TAR protocol will also require Facebook to meet the Court's "expect[ation of] cooperation on issues relating to the preservation, collection, search, review, and production of ESI." U.S. Dist. Ct., N. Dist. of Cal., *Guidelines for the Discovery of Electronically Stored Information*, Guideline 1.02 (Cooperation), *available at* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf. Among other failures to cooperate, the parties have disagreed about what is relevant (*i.e.*, the "review[] and production of ESI") since the onset of this case. *Id.* Each time a particular disagreement is adjudicated, the Court sides with Plaintiffs, finding Facebook's definition of relevance, as Judge Chhabria put it, "unduly narrow." Mar. 5, 2020 Case Mgmt. Conf. Tr., Ex. 1 at 28:25-29:5.[2] Nevertheless, Facebook continues to define relevance so as to withhold, not produce, a wide

---

[1] To reduce the amount of paper submitted in connection with this discovery dispute, Plaintiffs have not provided the parties' discovery mediation submissions referenced here. We are happy to provide them at the Special Master's request.
[2] Unless specified otherwise, all exhibit citations refer to the Declaration of Lesley Weaver filed herewith.

1   spectrum of relevant documents. Because "TAR requires 'an unprecedented degree of

2   transparency and cooperation among counsel in the review and production of ESI responsive to

3   discovery requests,'" *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610,

4   622 (D.N.J. 2020) (quoting *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-cv-00678-LRH-PAL,

5   2014 WL 3563467, at *10 (D. Nev. July 18, 2014)), requiring Facebook to use TAR will finally

6   enable the parties, with the assistance of the Special Master, to address—and *resolve*—

7   disagreements about relevance that have plagued discovery from the outset.

8   **III.    RELEVANT BACKGROUND**

9         On September 9, 2019, Judge Chhabria largely denied Facebook's motion to dismiss

10   Plaintiffs' first amended consolidated complaint. He upheld allegations on behalf of a putative

11   class of all U.S. Facebook users between 2007 and present related to four broad categories of

12   wrongdoing: (1) Facebook's improperly provision of access to users' friends' information to app

13   developers; (2) Facebook's continued, improper provision of such access to "whitelisted apps"

14   after announcing it would no longer provide apps access to users' friends' information; (3)

15   Facebook's improper provision of users' and users' friends information to its "business partners";

16   and (4) Facebook's failure to take action to prevent third parties from misusing the private user

17   information it allowed them to access.

18         Plaintiffs served their first, second, third, and fourth sets of requests for production of

19   documents on August 28, 2018, November 25, 2019, May 6, 2020, and June 12, 2020,

20   respectively. All told, Plaintiffs have served 63 requests for production.

21         In response to Plaintiffs' requests for production, Facebook has produced only 500,000

22   documents comprising fewer than 2 million pages. More than half of the documents consist of

23   data Facebook collected from current and former named plaintiffs that was available to those

24   plaintiffs themselves. (Plaintiffs continue to seek production of internal Facebook documents

25   reflecting information it has about the named plaintiffs that they can't access.) And more than

26   84,000 of the documents—another 17% of the total production—comprise embedded images,

27   such as .bmp files spun out from PowerPoint files, that appear to lack any meaningful content.

28

1    Meanwhile, Facebook's production of custodial documents, which didn't begin until December 7,

2    2020, averages fewer than 10,000 documents per month.

3         Facebook has been unwilling to discuss other sources of relevant discovery. It maintains

4    relevant documents and information in numerous non-custodial sources of ESI, including but not

5    limited to Quip, a collaborative software suite that Facebook employees used to create and edit

6    documents and spreadsheets as a group; Tasks, a series of files reflecting individual privacy and

7    other relevant decisions that are recorded in a standardized format; Privatron (also referred to as

8    Launch Cal), a tool which documents the Privacy XFN team's decisions; Hive, a database that,

9    among other things, stores data about Facebook's users and records relevant API calls; and

10   Scuba, a database from which Facebook employees were able to quickly pull data for internal

11   analysis. Despite Plaintiffs' repeated requests, Facebook has not identified the time period of the

12   records contained in these (or other) non-custodial sources, has not disclosed with any level of

13   specificity the type of information they contain, and has not discussed how such relevant

14   information can be extracted, processed, and produced.

15        The parties agree that the pace of production is too slow. In their April 5, 2021 Joint

16   Status Update, Facebook stated it would assess whether TAR could expedite its review process.[3]

17   During the parties' April 6 discovery hearing, Facebook lamented that linear document review

18   had become "very costly," with "a hundred people reviewing documents as we speak," and

19   looked forward to working with the discovery mediators "to develop the most flexible, efficient,

20   fluid, fair, reasonable, pragmatic approach" to "get discovery done."[4]

21        During discovery mediation, Facebook urged the implementation of TAR.  In its April 20

22   mediation submission, Facebook agreed that discovery is moving too slowly and suggested that

23   TAR may be a productive tool to expedite document production.  In its April 29 submission,

24   Facebook stated that "[u]sing TAR would make Facebook's review faster, relieve Facebook from

25   reviewing large swaths of categorically non-responsive documents, and allow the parties to

26   complete document discovery more quickly." In its May 6 submission, Facebook stated that "[a]

27

28   ---
     [3] Ex. 2 at 9 (Joint Status Update (Apr. 5, 2021), ECF No. 650).
     [4] Ex. 3 at 8:24-9:7 (Apr. 6, 2021 Discovery Conf. Tr.).

1   properly designed TAR protocol would benefit all parties" because "[i]t would allow Facebook to

2   get responsive documents to Plaintiffs faster, allow the parties to complete document discovery

3   more quickly, and relieve Facebook from reviewing large swaths of categorically non-responsive

4   documents." Facebook also accused Plaintiffs of categorically rejecting the use of TAR.  This

5   was never the case.  Plaintiffs simply sought more information about what TAR process would be

6   implemented and agreement on key facets of the process.

7        Starting in April, and continuing through the last days of June, the Parties and discovery

8   mediators, at Facebook's insistence, devoted long hours to discussing whether and how TAR

9   could be implemented to increase the pace of discovery. Though it was Facebook that proposed

10  TAR, the discovery mediators asked Plaintiffs to provide an initial draft protocol, which they did

11  within four days. Facebook then took three weeks to respond, and its response was a document

12  merely identifying several aspects of what it wanted an eventual protocol to include. After further

13  discussions, Plaintiffs agreed on June 23 to accept, without prior review, a mediators' proposal

14  for a TAR protocol.[5] Five days later, the discovery mediators informed Plaintiffs that Facebook

15  was no longer interested in using TAR.

16       These fruitless negotiations over a method aimed at increasing efficiency and reducing

17  costs were inefficient and costly. The discovery mediators prepared for and conducted numerous

18  mediation sessions, most lasting a half-day or more, during which TAR was the primary focus of

19  discussion. From April through June, it was negotiations over TAR that largely occupied the

20  discovery mediators and the parties, limiting their ability to address other disputed issues. All

21  told, the parties and discovery mediators collectively spent hundreds of hours working on TAR,

22  only for Facebook to pull out at the last minute. Plaintiffs engaged an ESI expert, Kelly Twigger,

23  to assist in the discussions of TAR; Ms. Twigger and her staff alone spent more than 60 hours on

24  TAR during this time period.[6]

25

26

27  [5] Ex. 4 at 1-2 (Plaintiffs' Opp. to Defendant Facebook, Inc.'s Admin. Mot. for Leave to File a Response to Joint Discovery Letter Brief Regarding TAR (July 19, 2021), ECF No. 707).
[6] Ex. 5 at ¶ 10 (Decl. of Kelly Twigger attached as Plaintiffs' Ex. B to the Joint Discovery Letter
28  Brief Regarding TAR (July 2, 2021), ECF No. 697-2).

Facebook has not proposed anything aimed at increasing the pace of production. Rather, it now asserts that "traditional human review," which has slowed the pace of production to a trickle, will enable it to complete document review and production more efficiently than an appropriate TAR protocol.[7] This is a reversal of its earlier, repeated statements, which find support in the literature and numerous judicial opinions, that TAR would lead to faster, more efficient, and less expensive completion of document production.

## IV.   ARGUMENT

### A.   The Special Master Can Require Facebook to Implement TAR

Requiring Facebook to implement TAR is within the Special Master's discretion.

It is axiomatic that "[t]he district court has wide discretion in controlling discovery." *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996) (internal quotation and citation omitted); *see In re Actavis Holdco, U.S., Inc.*, No. 19-3549, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019) (affirming MDL district court's "wide latitude in controlling discovery," including discretion to order the "production of documents without a manual relevance review") (collecting cases), *cert. denied sub nom. Actavis Holdco U.S., Inc. v. Connecticut*, 141 S. Ct. 124 (2020).

In exercising this discretion, courts have compelled recalcitrant parties to use TAR.

*Winfield v. City of New York* is instructive. There, the Court directed the City to begin using TAR "to hasten the identification, review, and production of documents responsive to Plaintiffs' document requests." *Winfield*, No. 15-cv-05236, 2017 WL 5664852, *4 (S.D.N.Y. Nov. 27, 2017). As here, "Plaintiffs have sought wide-ranging discovery, which the [Defendant] has resisted vigorously." *Id.* As here, "the parties disagreed as to the search terms that would be applied to the electronic documents collected from" custodians. *Id.* As here, the City "applied a set of search terms that was heavily negotiated by the parties, with some guidance from the Court, . . . then began reviewing the electronic documents from these custodians." *Id.* And as here, "Plaintiffs lodged numerous complaints about the pace of discovery and document review." *Id.* In response, "given the volume of documents collected, [the] Court directed the City . . . to begin

---

[7] Ex. 6 at 5 (Joint Discovery Letter Brief Regarding TAR (July 2, 2021), ECF No. 697).

1    using Technology Assisted Review ('TAR') software . . . to hasten the identification, review, and

2    production of documents responsive to Plaintiffs' document requests." *Id.*

3          *Independent Living Center of Southern California v. City of Los Angeles* provides another

4    example. As here, Los Angeles had several million documents it needed to search to respond to

5    Plaintiffs' requests for production. Ex. 7 at 1 (Civil Minute Order, *Independent Living Ctr.*, CV

6    12-551-FMO (PJW) (C.D. Cal. June 26, 2014), ECF No. 375). As here, the parties engaged in

7    "months of haggling" over search terms. *Id.* Echoing what Facebook earlier said in this case, the

8    Court determined that using search terms "would have resulted in both sides spending tremendous

9    amounts of time and money going through those documents." *Id.* Thus, "the Court ordered the

10   City to use predictive coding to locate the most relevant documents." *Id.*; *see* Ex. 8 (Discovery

11   Order, *EORHB, Inc. v. HOA Holdings LLC*, No. 7409-VCL (Del. Ch. May 6, 2013) (directing the

12   parties to use TAR *sua sponte* or show cause why TAR should not be used)).

13         While there are important differences between those cases and this, the differences

14   militate further in favor of compelling the use of TAR here. First, neither *Winfield*, nor

15   *Independent Living Center*, nor *EORHB* indicates that the party compelled to implement TAR

16   was ever in favor of its implementation. In contrast, Facebook previously advocated for the

17   implementation of TAR. *See infra* § IV.B.1. Second, *Independent Living Center* expressed

18   concern regarding the expense being imposed on the City of Los Angeles. *See* Ex. 7 at 2-3 (noting

19   that the Court's order had already resulted in Los Angeles spending $50,000 to hire a vendor to

20   implement TAR, and ordering cost splitting if the plaintiffs wanted quality assurance to test the

21   system's reliability). In contrast, Facebook sought to implement TAR because it would save

22   money, referring to linear document review as "very costly." Plus, Facebook reported more than

23   $29 billion in revenues for the second quarter of 2021 alone. Even if TAR is expensive, the

24   concerns are less acute for it than for Los Angeles.

25         Moreover, even where Courts have denied requests to impose TAR, they have done so

26   without prejudice, stating they would impose it later if production using other methods was

27   deficient. For example, in *In re Mercedes-Benz Emissions Litigation*, the Special Master noted

28

"wide acceptance that TAR is cheaper, more efficient and superior to keyword searching" and left open the possibility of compelling the use of TAR "if Plaintiffs contend that Defendants' actual production is deficient." *In re Mercedes-Benz Emissions Litig.*, No. 2:16-CV-00881, 2020 WL 103975, at *2 (D.N.J. Jan. 9, 2020). The deficiency of Defendants' production to date is a primary reason the Special Master should compel Facebook to implement TAR. *See infra* § IV.B.1.

Each of the orders discussed above is consistent with the foundational principle of the Federal Rules of Civil Procedure—namely, that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1. Discovery here has been neither just, nor speedy, nor inexpensive. Compelling Facebook to implement TAR will advance those goals.

## B.      The Special Master Should Compel Facebook to Implement TAR

### 1.      Facebook Was Right—TAR Will Increase the Pace of Discovery

Facebook was for TAR before it was against it.

In an April 20 mediation submission, Facebook agreed that discovery is moving too slowly and suggested that TAR may be a productive tool to expedite document production. In a submission nine days later, Facebook stated that "[u]sing TAR would make Facebook's review faster, relieve Facebook from reviewing large swaths of categorically non-responsive documents, and allow the parties to complete document discovery more quickly." In its May 6 submission, Facebook stated that "[a] properly designed TAR protocol would benefit all parties" because "[i]t would allow Facebook to get responsive documents to Plaintiffs faster, allow the parties to complete document discovery more quickly, and relieve Facebook from reviewing large swaths of categorically non-responsive documents." Facebook has been proven right.

The pace of discovery is insufficient to meet the needs of the case.  To date, Facebook has produced just over 500,000 documents comprising fewer than 2 million pages. Most of these documents were already available to plaintiffs or represent isolated embedded images that lack meaningful content or discovery value. Meanwhile, on average fewer than 10,000 documents a

month dribble out of Facebook's custodial production. Plaintiffs do not know for certain how many of the almost six million custodial documents remain for Facebook to review, but there are many other categories of documents even after this initial tranche of custodial documents are reviewed.

Production in similar proceedings illuminates how deficient Facebook's production has been here. In the *Juul* MDL, Juul has produced 7.5 million documents, comprising more than 23 million pages, in a case where the motion to dismiss order was issued on April 13, 2021—more than one-and-a-half years *after* Judge Chhabria's motion to dismiss order here.[8] In the *San Francisco Opioids Litigation*, Endo has produced more than 5.5 million documents, including call data extracted from CRM databases; and Teva has produced more than 3.2 million documents.[9] In the *Klein v. Facebook* antitrust case, Facebook itself produced over 12 million pages of documents, six times the number of pages produced here, before the motion to dismiss was even fully briefed.[10] The class period in this case is longer and the allegations upheld are broader than in *Juul* or *Klein*. And unlike defendants in *Juul* or the *San Francisco Opioids Litigation*, Facebook's entire business is premised on the collection, processing, and distribution of ESI. There is no legitimate reason Facebook's production is so deficient.

As Facebook stated, TAR will assist in resolving this problem. TAR "'can (and does) yield more accurate results than exhaustive manual review, with much lower effort.'" *Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182, 190 (S.D.N.Y. 2012) (quoting Maura R. Grossman & Gordon V. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review*, 17 Rich. J.L. & Tech. 43, 48 (2011)). It also

---

[8] Ex. 9 at 2 (Joint Discovery Status Report, *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913-WHO (N.D. Cal. Aug. 16, 2021), ECF No. 2255).

[9] Ex. 10 at 11, 12, & 16 (Joint Status Update, *The City and County of San Francisco and the People of the State of California, Acting by and through San Francisco City Attorney Dennis J. Herrera v. Purdue Pharma L.P.*, Case No. 3:18-cv-07591-CRB (N.D. Cal. Aug. 23, 2021), ECF No. 632).

[10] Ex. 11 at 10 (Second Joint Case Management Statement, *Klein v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal. June 30, 2021), ECF No. 114).

1    costs less. *Da Silva Moore*, 287 F.R.D. at 190; *see also Winfield*, 2017 WL 5664852, at *4; *cf.*

2    Ex. 7 at 1 (*Independent Living Ctr.*).

3        Facebook has complained about the burdens associated with the linear review of

4    documents for production in this case. It said it is employing "more than 100 reviewers" who are

5    "spending a tremendous amount of time reviewing non-responsive documents."[11] It lamented that

6    this is a "very costly" undertaking.[12] Requiring Facebook to implement TAR will address these

7    concerns.

8        Returning to linear review, as Facebook now proposes, won't. Nor will it increase the

9    pace of production. Facebook offers no alternative to accelerating the pace of production and

10   getting this case on track.

11              **2.      An Appropriate TAR Protocol Will Facilitate Transparency and
                          Cooperation**

12

13       Equally important, ordering Facebook to implement an appropriate TAR protocol will

14   also facilitate Facebook in meeting its obligation to cooperate with Plaintiffs regarding discovery.

15       Guideline 1.02 (Cooperation) of the Northern District's *Guidelines for the Discovery of*

16   *Electronically Stored Information* states that parties are expected to cooperate  "on issues relating

17   to the preservation, collection, search, review, and production of ESI." Cooperation means both

18   "reasonably limiting ESI discovery requests on the one hand, and in reasonably responding to ESI

19   discovery requests on the other hand." Doing so "tends to reduce litigation costs and delay."

20   Unfortunately, Facebook has not met these expectations.

21       Most pertinent to this motion, Facebook has not cooperated on issues related to the review

22   and production of ESI. Instead, it has consistently attempted to limit the production of ESI by

23   improperly narrowing the scope of relevance. During a March 5, 2020 case management

24   conference, Judge Chhabria repeated his previously stated concern about Facebook's "unduly

25   narrow view of what should be turned over to the Plaintiffs":

26       I have said it a number of times on the record already. . . . I am concerned that Facebook
         has, you know, often made statements reflecting an unduly narrow view of what should be

27

28   [11] Ex. 2 at 9 (Joint Status Update (Apr. 5, 2021), ECF No. 650).
     [12] Ex. 3 at 9:3 (Apr. 6, 2021 Discovery Conf. Tr.).

1  turned over to the Plaintiffs. And, you know, this is a big case. I mean, there is often a lot
   of talk about proportionality and whatnot. This is a big case. It is a significant issue. . . .
2  [T]his is not the type of case where we are going to be saying: Well, that might end up --
   that effort might end up uncovering some relevant information; but, you know, it is just
3  too expensive or difficult, and so we are not going to make Facebook do it.[13]

4      Nevertheless, Facebook has continued to assert an unduly narrow view of relevance. Each

5  time the Court has considered the parties' views on relevance, it has sided with Plaintiffs. Judge

6  Corley held that the production of named Plaintiffs' data is not limited to data which arose "from

7  user activity occurring on the Facebook platform," and that was "then overtly shared . . . with a

8  limited audience," as Facebook contended.[14] Rather, discoverable named plaintiffs' data includes

9  data collected from their on-platform activities, data obtained from third parties regarding the

10 named plaintiffs' off-platform activities, and data inferred from their on- or off-platform

11 activities.[15] Judge Corley similarly held that the definition of "business partners" was not limited,

12 as Facebook proposed, to "'integration partners and/or device manufacturers with whom

13 Facebook has entered into agreements that have been and/or will be produced in response to

14 Request for Production No. 24.'"[16] Instead, the Court defined "business partners" as "all

15 companies with which Facebook agreed to exchange information about users' activities with each

16 other[.]"[17] Notably, these examples of Facebook's unduly narrow definition of relevance reflect

17 only the positions it has been forced to disclose. Facebook has not disclosed, and has been

18 unwilling to discuss, how it is defining relevance for the purpose of document review.

19      An appropriate TAR protocol will require the parties, with the Special Master's

20 assistance, to conclusively address foundational issues regarding relevance that have plagued

21 discovery from the start. "A long line of cases holds that TAR requires 'an unprecedented degree

22 of transparency and cooperation among counsel in the review and production of ESI responsive to

23 discovery requests.'" *In re Valsartan,* 337 F.R.D. at 622 (quoting *Progressive Cas. Ins. Co.*, 2014

24

25

---

26 [13] Ex. 1 at 28:25-29:5 (Mar. 5, 2020 Case Mgmt. Conf. Tr.).
   [14] Ex. 12 at 1 (Discovery Order No. 9 (Oct. 20, 2020), ECF No. 557).
27 [15] *Id.*
   [16] Ex. 13 at 2 (Order Re: Business Partners (Feb. 1, 2021), ECF No. 608).
28 [17] *Id.* at 3.

WL 3563467 at *10). Plaintiffs have proposed a protocol that would provide for the level of transparency required by the particular needs of this case.[18]

Facebook's unilateral decision to withdraw from the TAR negotiations that it started furthers its efforts to keep Plaintiffs in the dark, to avoid the production of relevant documents, and to force Plaintiffs to toil for nearly every category of documents they seek. Doing so violates this District's Guideline 1.02 (Cooperation). It also violates Federal Rule of Civil Procedure 1. According to Facebook itself, linear review is inefficient, time-consuming, and *costly*. Moreover, it leads to deferred, piecemeal, seriatim disputes over relevance raised in the context of each of numerous facets of this case, leading to even more inefficiency, delay, and unnecessary costs. Compelling Facebook to implement an appropriate TAR protocol will force the cooperation it improperly seeks to avoid.

C.   **The Special Master Should Enter a TAR Protocol Designed to Meet the Needs of the Case**

If the Special Master agrees with Plaintiffs that Facebook should be compelled to implement TAR, the Special Master should implement a TAR protocol designed to meet the particular needs of this case.

Specifically, the protocol should account for Facebook's refusal to provide the required transparency or cooperation regarding ESI, including the definition of relevance it is providing document reviewers; the horde of relevant document sources, custodial and non-custodial, that Facebook has not yet been willing to discuss with Plaintiffs; the two years that this case has already been in discovery; and the broad scope of the allegations upheld by the Court. Plaintiffs have drafted a proposed protocol aimed at addressing those issues, and have provided an expert declaration explaining the basis for the provisions therein.[19] Alternatively, as they have informed Facebook, the Court, and the Special Master, Plaintiffs are willing to accept, sight unseen, a protocol designed by the Special Master.

---

[18] Ex. 14 (Plaintiffs' Proposed TAR Protocol attached as Plaintiffs' Ex. A to the Joint Discovery Letter Brief Regarding TAR (July 2, 2021), ECF No. 697-1); Ex. 5 (ECF No. 697-2) (declaration of Plaintiffs' ESI expert Kelly Twigger explaining the bases and needs for the provisions in the proposal). Decl. of Kelly

[19] Ex. 14; Ex. 5.

Plaintiffs respectfully ask the Special Master not to open the design of the TAR protocol to negotiations or further briefing. The parties spent almost three months attempting to negotiate a protocol before Facebook decided it was no longer interested in implementing TAR. That time was more than sufficient for the parties to put forward and negotiate their proposals. Moreover, the Special Master has already spent many hours discussing potential TAR provisions with each party *ex parte*, and is thus already fully aware of their positions. Past being prologue, further negotiations are (unfortunately) more likely to result in additional delay than in agreement, and additional briefing is unnecessary.

## V.      CONCLUSION

The Special Master should require Facebook to implement TAR, which will help the litigation of this action become more just, speedy, and inexpensive. Further, the Special Master should require Facebook to implement a TAR protocol that is designed to meet the specific needs of this case—either the protocol Plaintiffs have previously proposed or one designed by the Special Master.

Dated: August 30, 2021                                    Respectfully submitted,

KELLER ROHRBACK L.L.P.                        BLEICHMAR FONTI & AULD LLP

By:      */s/ Derek W. Loeser*                     By:      */s/ Lesley E. Weaver*
              Derek W. Loeser                                      Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)          Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*)   Anne K. Davis (SBN 267909)
David Ko (admitted *pro hac vice*)                 Matthew S. Melamed (SBN 260272)
Adele A. Daniel (admitted *pro hac vice*)          Angelica M. Ornelas (SBN 285929)
Benjamin Gould (SBN 250630)                        Joshua D. Samra (SBN 313050)
1201 Third Avenue, Suite 3200                      555 12th Street, Suite 1600
Seattle, WA 98101                                  Oakland, CA 94607
Tel.: (206) 623-1900                               Tel.: (415) 445-4003
Fax: (206) 623-3384                                Fax: (415) 445-4020
dloeser@kellerrohrback.com                         lweaver@bfalaw.com
claufenberg@kellerrohrback.com                     adavis@bfalaw.com
dko@kellerrohrback.com                             mmelamed@bfalaw.com
adaniel@kellerrohrback.com                         aornelas@bfalaw.com
bgould@kellerrohrback.com                          jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301

Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

# ATTACHMENT A

**PLAINTIFFS' SEPARATE STATEMENT
REGARDING THE USE OF TECHNOLOGY-ASSISTED REVIEW**

| *Written Discovery* | *Discovery Response* | *Relevant History* | *Opposition* | *Executive Summary* |
|---|---|---|---|---|
| N/A<br><br>(The dispute concerns the process by which documents are searched for, reviewed, and produced.) | N/A | 4/5/21: Joint Statement filed with Judge Corley; Facebook states it will assess whether TAR could expedite its review process.<br><br>4/6/21: Discovery hearing before Judge Corley; Facebook tells the Court it looks forward to working with the discovery mediators to develop a better approach for completing discovery.<br><br>4/15/21: Discovery mediation session at which the parties and mediators discuss TAR.<br><br>4/20/21: Discovery mediation submission in which Facebook states discovery is moving too slowly and suggests TAR may be a | Facebook's opposition is spelled out in the parties' discovery dispute letter regarding the use of TAR, Dkt. No. 697, at 3-5. | The Special Master has the discretion to require Facebook to implement TAR, and courts have compelled recalcitrant parties to do so.<br><br>As Facebook itself repeatedly stated, requiring Facebook to implement TAR here will increase the pace of Facebook's production, which is presently insufficient to meet the needs of the case. An appropriate TAR protocol will also enable the parties, with the assistance of the Special Master, to address and resolve foundational disagreements about relevance that have plagued discovery from the outset of this case.<br><br>Implementing TAR will thereby advance the |

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | productive tool to expedite production.<br><br>4/21/21: Discovery mediation session at which the parties and mediators discuss TAR.<br><br>4/29/21: Discovery mediation submission in which Facebook advocates for implementing TAR.<br><br>4/30/21: Discovery mediation session at which the parties and mediators discuss TAR.<br><br>5/6/21: Discovery mediation submission in which Facebook states TAR will benefit all parties.<br><br>5/7/21: Discovery mediation session at which the parties and mediators discuss TAR.<br><br>5/13/21: Discovery mediation session at | | purpose of the Federal Rules of Civil Procedure—"to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1—and promote cooperation on issues relating to the collection, search, review, and production of ESI, as required by Guideline 1.02 (Cooperation) of the Northern District's *Guidelines for the Discovery of Electronically Stored Information.* |

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | which the parties and mediators discuss TAR.<br><br>5/17/21: Discovery mediation session at which the parties and mediators discuss TAR; the mediators ask Plaintiffs to draft a proposed TAR protocol.<br><br>5/21/21: Plaintiffs circulate a proposed TAR protocol.<br><br>6/11/21: Facebook responds to Plaintiffs' proposed TAR protocol with a summary of key TAR provisions "not intended to be complete or final"; discovery mediation session at which the parties and mediators discuss TAR.<br><br>6/14/21: Discovery mediation session at which the parties and mediators discuss TAR. | | |

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | 6/21/21: Discovery mediation session at which the parties and mediators discuss TAR; discovery mediators propose a double-blind mediator's TAR proposal.<br><br>6/23/21: Discovery hearing during which Judge Corley orders the parties to submit positions jointly or individually on TAR by July 2.<br><br>6/23/21: Plaintiffs inform the discovery mediators that Plaintiffs will accept the mediator's proposed TAR protocol without prior review.<br><br>6/28/21: Discovery mediation session at which the parties and mediators discuss TAR; discovery mediators inform Plaintiffs that Facebook no longer | | |

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | wishes to implement TAR.<br><br>7/2/21: Joint statement regarding the parties' positions on whether TAR should be implemented is filed with Judge Corley.<br><br>7/20/21: Judge Chhabria issues order appointing Daniel Garrie as Special Discovery Master.<br><br>7/26/21: Judge Corley refers the issue to the Special Discovery Master for resolution. | | |

# EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

IN RE: FACEBOOK, INC. CONSUMER
PRIVACY USER PROFILE LITIGATION,

This document relates to:

ALL ACTIONS

CASE NO. 3:18-MD-02843-VC-JSC

**FACEBOOK'S OPPOSITION TO
MOTION TO COMPEL TAR**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

    A.    The ESI Protocol Forecloses Plaintiffs' Request That The Special Master
           Compel TAR ............................................................................................................ 2

    B.    The Case Law Unanimously Rejects Plaintiffs' Request For An Order
           Compelling TAR ...................................................................................................... 2

    C.    Plaintiffs Offer No Justification For Their Request For An Unprecedented
           Order ........................................................................................................................ 5

         1.    Facebook's Prior Exploration Into TAR Does Not Provide A Basis To
                Order Facebook To Use A TAR Process Over Its Objection ........................ 5

         2.    TAR Is Not Required Under The Northern District's Guidelines ................... 7

         3.    Plaintiffs Identify No Deficiencies In Facebook's Productions ...................... 9

               a.    Facebook Reproduced Productions From 10 Government
                      Matters ............................................................................................ 10

               b.    Facebook Is On Track To Meet the Substantial Completion
                      Deadline .......................................................................................... 10

               c.    The size of Facebook's Productions Do Not reflect the Pace
                      of Review ........................................................................................ 10

               d.    The Parties Have Had Extensive Negotiations About Non-
                      Custodial Data ................................................................................ 12

                e.    The ESI Protocol Requires Facebook To Produce Embedded
                      Images As Separate Records .......................................................... 12

          4.    The Court Does Not Consistently "Side with Plaintiffs" ............................... 13

    D.    Imposing A TAR Process Now Would Delay Discovery ......................................... 14

    E.    The Special Master Should Strike Section IV.C Of Plaintiffs Motion ..................... 15

CONCLUSION .................................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aurora Cooperative Elevator Co. v. Aventine Renewable Energy-Aurora West, LLC*,
    2015 WL 10550240 (D. Neb. Jan. 6, 2015) ...................................................................14

*In re Biomet M2a Magnum Hip Implant Prods Liability Lit.*,
    2013 WL 1729682 (N.D. Ind. Apr. 18, 2013) ..................................................................3

*Bresk v. Unimerica Ins. Co.*,
    No. CV 16-8893 ODW (SSX), 2017 WL 10439831 (C.D. Cal. Nov. 16, 2017)............................9

*In re Bridgepoint Educ., Inc.*,
    2014 WL 3867495 (S.D. Cal. Aug. 6, 2014) .....................................................................3

*Dynamo Holdings Ltd. P'ship v. Comm'r of Internal Revenue*
    143 T.C. 9, 2014 WL 4636526 (2014) .............................................................................3

*EORHB, Inc. v. HOA Holdings LLC*,
    2013 WL 1960621 (Del. Ch. May 6, 2013) .....................................................................5

*Hastings v. Ford*,
    2021 WL 1238870 (S.D. Cal., April 2, 2021) ...................................................................3

*Hyles v. New York City*,
    2016 WL 4077114 (S.D.N.Y Aug. 1, 2016) ................................................................3, 9

*Independent Living Center of Southern California v. City of Los Angeles*,
    No. 2:12-cv-551-FMO (PJW) (C.D. Cal. June 26, 2014). ..................................................4

*Kleen Products LLC v. Packaging Corp. of Am.*,
    2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) ..............................................................3, 4

*Rio Tinto PLC v. Vale S.A.*,
    306 F.R.D. 125 (S.D.N.Y. 2015) ...............................................................................2, 3

*In re: Viagra*,
    2016 WL 7336411 ..........................................................................................................3

*Winfield v. City of New York*,
    No. 15-CV-02536, 2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017) ...................................4, 9

Gibson, Dunn & Crutcher LLP

### INTRODUCTION

Plaintiffs ask the Special Master to take an unprecedented measure of compelling Facebook to use Technology Assisted Review (TAR) to cull non-responsive documents from the document universe that resulted from the parties' year-long negotiation of search strings, after Facebook dedicated nearly one year to reviewing the search-string hits manually.  After an exhaustive search, Facebook has found no opinion in which a court has imposed TAR on a producing party over its objection.  Rather, courts across the country have adhered to Sedona Principle 6 that producing parties are best situated to determine appropriate procedures and methodologies for reviewing and producing their own documents.  Rather than engage with this threshold legal issue, Plaintiffs cite cases out of context that make passing references to TAR orders, in what appears to be an effort to create a false impression that the courts in those cases ordered TAR over the producing party's objection.

Plaintiffs argue the Special Master should force Facebook to use TAR because—five months ago—Facebook suggested the parties try to reach an agreement to use TAR to expedite its review and reduce review costs.  Once it became clear that the parties could not agree to a TAR protocol that would remove non-responsive documents to streamline discovery, Facebook decided not to use TAR in this manner.   Instead, Facebook focused substantial resources into an efficient, prioritized process supported by analytics for completing human review on all documents.  That should have been the end of the matter:  Under the ESI Protocol, the use of TAR is Facebook's option, not Plaintiffs'.

Plaintiffs also make a series of unsubstantiated, false attacks on Facebook that—even if true (they are not)—would not come close to justifying the unprecedented order they seek.  The Court has repeatedly rejected these same accusations, advising Plaintiffs that Facebook has fulfilled its obligations to meet and confer about ESI; Facebook is entitled to review materials for responsiveness, relevance, and privilege; and Plaintiffs are not entitled to discovery regarding that review process.

Perhaps most concerning, Plaintiffs make clear that they ask the Special Master to compel TAR, not to expedite discovery but to slow it down and generate *more* disputes.  The order Plaintiffs seek would potentially require Facebook to set aside a full year of document review conducted under its efficient, prioritized process just four months before the substantial completion deadline.  Plaintiffs admit they want this detour for the improper purpose of challenging Facebook's relevance

Gibson, Dunn &
Crutcher LLP

determinations on a document-by-document basis.  There will be a time and a place for Plaintiffs to identify any perceived gaps in Facebook's productions.  Adopting a new review process now would only slow down (or even halt) Facebook's review—hijacking the schedule Judge Chhabria ordered and trapping the parties in endless disputes that would prevent this case from moving forward to the merits.

In asking the Special Master to compel TAR, Plaintiffs ask him to ignore the ESI protocol Judge Corley entered, Judge Chhabria's instructions that Plaintiffs are not entitled to backseat drive Facebook's responsiveness determinations, and the sound reasoning of every other court to have considered whether a producing party can be forced to use a TAR process over its clear objection. Facebook respectfully requests that the Special Master deny Plaintiffs' motion.

## ARGUMENT

### A.   The ESI Protocol Forecloses Plaintiffs' Request That The Special Master Compel TAR

Plaintiffs' request for an unprecedented order compelling Facebook to adopt a TAR process over its objection violates the ESI protocol that the parties agreed to and Judge Corley entered.  Under the ESI Protocol, TAR is completely voluntary.  The Protocol states:  "The producing party will disclose to the receiving party if they intend to use [TAR] to filter out non-responsive documents.  The parties will meet and confer at that time to negotiate a suitable TAR protocol."  Dkt. 416 at 6 n.1.

This language places the decision of whether to use TAR in the hands of the producing party; if the producing party elects to use TAR to filter out non-responsive documents, it must meet and confer about a protocol.  Facebook initially suggested the parties adopt an industry-standard TAR process to reduce its discovery burden by removing non-responsive documents from its review set.  After Plaintiffs repeatedly demanded a TAR process that would impermissibly intrude on Facebook's review processes and work product, Facebook retracted its election to use TAR to filter out non-responsive documents and opted for human review instead.  Nothing in the ESI Protocol allows Plaintiffs to challenge or second-guess that decision.

### B.   The Case Law Unanimously Rejects Plaintiffs' Request For An Order Compelling TAR

Every court to have considered this issue has concluded a producing party cannot be forced to use TAR against its wishes.  "[W]here a producing party wants to utilize TAR . . . courts will permit it."  *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 (S.D.N.Y. 2015).  But "where the requesting party

Gibson, Dunn &
Crutcher LLP

has sought to force the producing party to use TAR, the courts have refused." *Id*. at 127 n.1.  Facebook is not aware of any case where a court compelled a party to use TAR over its objection.

*Hyles v. New York City* is instructive.  In that case, the plaintiff urged the court to require the City of New York to use TAR to expedite discovery in a case that had been pending for six years. Judge Peck—a vocal proponent of TAR—explained:  "The key issue is whether, at plaintiff['s] request, the defendant . . . can be forced to use TAR . . . .  The short answer is a decisive 'NO.'"  2016 WL 4077114, at *1 (S.D.N.Y Aug. 1, 2016).  Judge Peck elaborated:  "If our focus were on paper discovery, we would not . . . be dictating to a party the manner in which it should review documents for responsiveness or privilege."  *Id*. (quoting *Dynamo Holdings Ltd. P'ship v. Comm'r of Internal Revenue* 143 T.C. 9, 2014 WL 4636526 at *3 (2014)).  He concluded, "the Court would have liked the City to use TAR in this case.  But the Court cannot, and will not, force the City to do so."  *Id*. at *3.

The court reached the same conclusion in *In re: Viagra,* observing the plaintiffs were not able to "cite to any case law in support of their proposal to require [the defendant], over its objection, to use TAR and/or predictive coding" and that "no court has ordered a party to engage in TAR and/or predictive coding over the objection of the party."  2016 WL 7336411, at *1.  The court explained "it is not up to the Court, or the requesting party . . . to force the . . . responding party to use TAR," nor is it "clear on what basis the Court could compel [a party] to use a particular form of ESI [review]."  *Id*.

Courts throughout the country have consistently reached the same conclusion.  *See, e.g.*, *In re Bridgepoint Educ., Inc.*, 2014 WL 3867495, at *4 (S.D. Cal. Aug. 6, 2014) (denying request to compel defendants to use "predictive coding software"); *Hastings v. Ford*, 2021 WL 1238870, at *3 (S.D. Cal., April 2, 2021) ("To the extent Plaintiff is seeking to compel Defendants to conduct discovery as directed by Plaintiff, the Court declines."); *In re Biomet M2a Magnum Hip Implant Prods Liability Lit.*, 2013 WL 1729682, at *2–3 (N.D. Ind. Apr. 18, 2013) (rejecting plaintiffs' request for defendants to use predictive coding after already using search terms); *Kleen Products LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *5 (N.D. Ill. Sept. 28, 2012) (rejecting request to impose TAR and emphasizing that the producing party is "best situated" to determine how to preserve and produce ESI).

Plaintiffs' cited authority does not support their request that the Special Master ignore the unanimous view that a producing party cannot be compelled to use TAR over its objections.  First,

Gibson, Dunn &
Crutcher LLP

Plaintiffs rely on *Winfield v. City of New York*, No. 15-CV-02536, 2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017), which in fact supports Facebook's position.  In *Winfield*, the plaintiff did not ask the court to compel TAR.  "[T]he Plaintiffs object[ed] to the [defendant's] continued use of its TAR system." *Id*. at *10-11.  Even though the court found the defendant had incorrectly withheld at least 20 responsive documents, it dismissed the plaintiffs' objection to the defendant's TAR process: "[T]he producing party is in the best position to 'evaluate the procedures methodologies, and technologies appropriate for preserving and producing their own [ESI].'"  *Id*. at 9.  The court wrote: "[T]here is nothing so exceptional about ESI production that should cause courts to insert themselves as super-managers of the parties' internal review processes, including the training of TAR software, or to permit discovery about such process, in the absence of evidence of good cause such as a showing of gross negligence in the review and production process, the failure to produce relevant specific documents known to exist or that are likely to exist or other malfeasance."  *Id*. at *9.

Plaintiffs say *Winfield* supports compelling TAR because, in reciting the history of the dispute, the Court wrote: "[G]iven the volume of documents collected, this Court directed the City to complete linear review as to certain custodians and begin using [TAR] to hasten the identification, review, and production of documents responsive to Plaintiffs' document requests."  *Id*. at *4.  While Courts may order parties to do things they agreed or stipulated to do, there is no indication that the defendant in *Winfield* objected to use TAR in this manner.  Indeed, the *Winfield* docket reveals the origin of TAR in that case; at a hearing seven months before the order Plaintiffs cite, the Court asked the City's counsel about the possibility of using TAR:  "I know from past experience [search strings] can sometimes bring in too many documents that aren't necessarily relevant . . .  Will the City be able to use prioritization software in their review?"  Trans. of Hr'g on Disc. Issues at 16: 6-10, No. 15-CV-02536 (S.D.N.Y. April 4, 2017), Dkt. 107.  Far from objecting, the City's counsel responded:  "[W]e are exploring that software and we have used it in the past.  So, we're exploring what would be the most appropriate for this case."  *Id*. at 16: 12-14.  The Court responded:  "It's not always appropriate in every review but if it is appropriate in this review it can accelerate the review process."  *Id*. at 16: 15-17.

Plaintiffs next rely on minutes from a hearing in *Independent Living Center of Southern California v. City of Los Angeles*.  The dispute before the Court was "whether quality assurance testing

4

Gibson, Dunn &
Crutcher LLP

should be used to test the reliability of" a TAR system the defendant was utilizing.  Min. of Tel. Conf. at 2, No. 2:12-cv-551-FMO (PJW) (C.D. Cal. June 26, 2014), Dkt. 375.  As in *Winfield*, in reciting the history of the dispute, the Court stated: "the Court ordered the City to use predictive coding to locate the most relevant documents."  *Id.* at 1.  Again, there is no indication that the Court ordered TAR over the City's opposition.  The docket indicates the Court held multiple telephonic hearings "to discuss . . . the possibility of shifting to a predictive coding approach for Defendants' future productions."  Min. of Tel. Conf. at 1, No. 2:12-cv-551-FMO (PJW) (May 30, 2014), Dkt. 360; *See also* Min. of Tel. Conf., 2:12-cv-551-FMO (PJW) (Jun. 11, 2014), Dkt. 367; Min. of Tel. Conf., 2:12-cv-551-FMO (PJW) (June 13, 2014), Dkt. 371.  Nothing in the record for this case suggests the City opposed doing so.

Finally, Plaintiffs say *EORHB, Inc. v. HOA Holdings LLC* supports their demand that the Special Master require TAR.  In that case, the Delaware Court of Chancery told the parties at a hearing: "[T]hese types of indemnification claims can generate a huge amount of documents . . . I would really encourage you all, instead of burning lots of hours with people reviewing [to use predictive coding]."  Trans. of Oral Arg. at 67: 7-13, Del. Ch. No. 7409, Laster, J. (Oct. 19, 2012), Dkt. 112.  The parties later agreed that the defendants would use TAR and the plaintiffs—at their election—would use "traditional methods" instead.  *See* 2013 WL 1960621, at *1 (Del. Ch. May 6, 2013).

The case law is clear:  a party cannot be ordered to use a TAR process over its objection.  The Special Master can and should deny Plaintiffs' motion for this reason alone.

**C.    Plaintiffs Offer No Justification For Their Request For An Unprecedented Order**

Plaintiffs largely use their brief to make extraneous accusations against Facebook.  Because the complaints Plaintiffs raise are false, we respond below.  In doing so, we emphasize that none of the issues Plaintiffs raise is relevant to this dispute; even if any were true, none (singularly or collectively) would justify Plaintiffs' demand that the Special Master depart from the sound reasoning of every court to have considered this issue by compelling Facebook to use TAR over its objection.

**1.    Facebook's Prior Exploration Into TAR Does Not Provide A Basis To Order Facebook To Use A TAR Process Over Its Objection**

Plaintiffs argue the Special Master should force Facebook to use TAR because Facebook attempted to negotiate a TAR protocol with Plaintiffs.  Of course, there is no authority indicating a

party should be forced to use a TAR process because it unsuccessfully attempted to reach a TAR agreement.  Plaintiffs' argument also paints a misleading picture.

After negotiating search strings for an entire year, Facebook explored ways it could expedite its review.  Days after the parties entered a stipulation resolving their search-string disputes, Dkt. 649, Facebook wrote:  "Facebook is seeing an unusually high volume of plainly non-responsive materials . . . Facebook will assess the extent to which the completion of its review can be expedited by applying Technology Assisted Review to filter out nonresponsive documents."  Dkt. 650 at 9.  Plaintiffs objected:  "[I]t is Plaintiffs' position that the strenuously negotiated search terms provide sufficient limits as to the universe of relevant documents . . . all documents surfaced by running the terms against the custodian collections . . . should be promptly produced."  *Id*. at 2.  Judge Corley dismissed Plaintiffs' request stating:  "Facebook raised an issue of there being a lot of nonresponsive hits.  [T]hat may . . . be something that [the discovery mediator] could work with all the parties in coming up with something that maybe reduces that that everyone's comfortable with."  Apr. 6, 2021 Trans. at 9:20-23.

Facebook then raised TAR in mediation.  Facebook explained TAR might make its review faster, less costly, and more efficient, but that lengthy negotiations would undercut that goal.  *See infra* at 7.  Ultimately, the parties were not able to reach agreement on even the fundamentals of how a TAR process would work.  Throughout the Parties' TAR negotiations, Plaintiffs said they would agree to TAR only if Facebook implemented a series of non-negotiable requirements that would *complicate and delay*—not advance—document discovery.  Indeed, Plaintiffs made clear they would only agree to a TAR process that allowed them to inject onerous conditions into every stage of Facebook's review, allow Plaintiffs to micromanage and challenge each step of Facebook's review, and permit Plaintiffs access to privileged and non-responsive documents.  *See* Plaintiffs' TAR Proposal (Plaintiffs' Ex. 14).  Throughout the parties' TAR mediations, Plaintiffs demanded participation in the drafting of Facebook's document review protocol, and the ability to seek the Court's intervention if Facebook did not accept Plaintiffs' edits.  Plaintiffs demanded the right to participate in training and assessing any TAR model, including by reviewing non-responsive documents.  And, Plaintiffs demanded the ability to litigate disagreements over responsiveness calls made by Facebook as to individual documents.

Facebook repeatedly expressed concern both in its written submissions and in several discovery

Gibson, Dunn & Crutcher LLP

mediation sessions that the parties were too far apart on the basic principles of a TAR model to justify wasting additional time negotiating the specifics of a written TAR protocol:

- "[T]he efficiencies of TAR will be lost if we invest months negotiating a protocol." *See* Facebook's April 29, 2021 Mediation Statement.

- "The efficiencies of using TAR will be lost . . . if the parties spend months negotiating and even potentially litigating aspects of a TAR protocol or if Plaintiffs will only agree to cumbersome processes intended to convert TAR into a litigation sword and added source of delay— rather than a tool to streamline document review." *See* Facebook's May 6, 2021 Mediation Statement.

- "[Facebook] hopes the parties will be able to come to ground quickly (within one-to-two sessions) on whether they are on the same page about a TAR model, the types of metrics and validation that will be shared with Plaintiffs, and the purpose TAR should serve." *Id.*

For this reason, Facebook suggested the parties refrain from drafting full TAR proposals and instead exchange term sheets outlining what they expected to see in a TAR protocol to determine if the parties could reach a common understanding on the basic principles first.  Plaintiffs instead drafted a detailed protocol based on their unilaterally designed TAR model.

      With the mediators' assistance, Facebook determined the parties would not be able to reach a TAR agreement and it could only meet the substantial completion deadline if it focused its efforts on its prioritized manual review process, supported by analytics.  Before the parties' negotiations even advanced far enough for Facebook to propose a TAR protocol, Facebook told Plaintiffs it would no longer be pursuing the possibility of using of TAR to filter non-responsive documents out of its review.

      Nothing about Facebook's suggestion that the parties explore the possibility of a TAR agreement justifies Plaintiffs' demand that the Special Master *impose* a TAR process that would unwind months' of work, increase Facebook's costs, and further delay this case.  *See infra* at 14-15. Facebook also notes it has invested more attorney hours litigating Plaintiffs' unfounded demand for a TAR order (to Judge Corley and now here) than Plaintiffs say they invested developing a TAR protocol.

### 2.    TAR Is Not Required Under The Northern District's Guidelines

      Plaintiffs next argue the Special Master should compel TAR because Facebook is "uncooperative," and the Northern District's *Guidelines for the Discovery of Electronically Stored Information* require cooperation and transparency.  Cooperation and transparency do not require TAR—if they did, it would be required in all cases.  Lacking any legal basis for their demands,

Plaintiffs resort to baseless and irrelevant accusations against Facebook.

Facebook has gone to great lengths to cooperate in a grueling discovery process for two years, and Judge Corley has rejected Plaintiffs' complaints that Facebook is uncooperative.  Facebook has produced 1.9 million pages of documents.  For one year, Facebook met and conferred with Plaintiffs for two hours, twice each week, during which Facebook answered hundreds of informal requests. Facebook has gone out of its way repeatedly to provide Plaintiffs with information to facilitate cooperative discussions.   To facilitate custodian negotiations, Facebook even *created* new documents—reporting line charts for the employees at issue.  Dkt. 400 at 11, 16.  To facilitate discussions about ESI, Facebook gave detailed presentations about its two core systems (Graph and Hive).  Dkt. 428 at 8.  To assist Plaintiffs in crafting discovery requests, Facebook wrote Plaintiffs lengthy explanations of how its systems operate.  *Id.* at 6.  Facebook has also made enormous efforts to reach negotiated compromises, and when the parties cannot resolve issues, it works hard to narrow disputes.  For instance, of the 82 custodians selected for this case, Facebook litigated 9.  Dkt. 431.  Of the more than 140 search strings, Facebook litigated 23.  Dkt. 553; *see also* Dkt. 654.

Plaintiffs previously argued to Judge Corley that Facebook has been uncooperative in ESI discussions and asked Judge Corley to order "written ESI disclosures" or a 30(b)(6) ESI deposition as a remedy.  Dkt. 428 at 5.  Judge Corley rejected these accusations and arguments.  "On the ESI disclosures, I'm not going to require any more – I'm not going to do what the plaintiffs proposed . . . I'm not satisfied there's anything more in particular you need."  May 15, 2020 Trans. at 6:16-22.  "**The Court is not ordering any further general ESI discussions at this time**."  Dkt. 436

With respect to transparency, there is no black box around Facebook's view of relevancy. Facebook has been crystal clear that pages 6 to 10 of Judge Chhabria's motion to dismiss order (Dkt. 298)—which describe the four theories of alleged misconduct that Judge Chhabria allowed to move forward—are Facebook's "relevancy North Star."  If a responsive document relates in any way to friend sharing or the "whitelisting," "business partner," or "enforcement" theories Judge Chhabria described, Facebook finds it relevant.  Facebook also offered to discuss interim deadlines to assure Plaintiffs that it will not provide a "document dump," at the end of the discovery period, *see* Dkt. 631-3 at 10, and Judge Corley suggested such an agreement would be a suitable resolution to this dispute.  Dkt. 712.

Gibson, Dunn & Crutcher LLP

To that end, Facebook has made ongoing rolling productions, at least once each month, and provides more detail about the status of its review below.

Facebook has gone above and beyond to cooperate with Plaintiffs, notwithstanding Plaintiffs' ongoing efforts to weaponize discovery in this case—not to obtain facts—but to impose costs and burdens and preclude a timely resolution on the merits.   Nothing about the cooperation and transparency described in the Northern District's *Guidelines for the Discovery of Electronically Stored Information* justifies or authorizes Plaintiffs' demand for an order compelling Facebook to use TAR.

### 3.   Plaintiffs Identify No Deficiencies In Facebook's Productions

Plaintiffs next argue the Special Master should compel TAR because Facebook's productions are deficient.   Again, every court to have considered whether a party can be compelled to use TAR over its objection has answered with "a decisive 'NO.'"   *Hyles*, 2016 WL 4077114, at *1.   Even where parties have sought a lesser degree of oversight over a party's review, courts have declined in the "absence of evidence of good cause such as a showing of gross negligence in the review and production process, the failure to produce relevant specific documents known to exist or that are likely to exist or other malfeasance."   *Winfield*, at *9.   Plaintiffs cannot even come close to satisfying that standard.

Plaintiffs' argument that Facebook's productions are deficient boils down to an observation that fewer documents have been produced in this case than in certain other lawsuits.   The number of documents produced in unrelated cases has nothing to do with whether Facebook is completing its document review in good faith.   While there no doubt have been cases in which more documents have been produced, the volume of documents produced in this case far exceeds the vast majority of lawsuits.   Of course, that is beside the point.   The search strings the parties negotiated and Judge Corley ordered yield approximately 5.6 million documents for Facebook to review for responsiveness, relevance, and privilege, so the Court surely did not expect Facebook to produce 7.5 million documents (as Plaintiffs say were produced in *Juul*) or even 5.5 million (as Plaintiffs say were produced in the opioids case).

Plaintiffs point to no actual deficiencies in Facebook's productions (which are ongoing).   "A plaintiff's mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel," *Bresk v. Unimerica Ins. Co.*, No. CV 16-8893 ODW (SSX), 2017 WL 10439831, at *5 (C.D. Cal. Nov. 16, 2017)—much less to take the extraordinary step of imposing TAR over a party's

Gibson, Dunn & Crutcher LLP

objection while its review is ongoing.  Facebook addresses several pertinent points below.

### a.      Facebook Reproduced Productions From 10 Government Matters

Before the parties even began search string negotiations, Facebook produced the Facebook documents it produced in response to the FTC's document requests during its related investigations—including its investigation stemming from Cambridge Analytica.  Plaintiffs have argued the theories at issue in this case are the same theories the FTC investigated, Dkt. 388-2 at 2, and Judge Chhabria expected the documents that were sufficient for the FTC, "**would cover the vast majority of the documents that the Plaintiffs would want in this litigation**."  March 5, 2020 Hr'g Tr. at 4:14-15.

It is difficult to conceive how Plaintiffs could argue Facebook committed some sort of discovery "malfeasance" or "gross negligence," when Facebook provided Plaintiffs—who are private parties—the same materials that the company's primary regulator found sufficient to investigate the same conduct.  Facebook also produced responsive documents from the document productions it provided to *nine* other government entities in related matters.  All subsequent productions in this case were intended to *supplement* Facebook's government productions.   To date, Facebook has produced **1,959,618** pages over 45 productions, in addition to more than **500 pages** of interrogatory responses.

### b.      Facebook Is On Track To Meet the Substantial Completion Deadline

Facebook has nearly 100 attorneys reviewing documents.  Once Facebook determined it would not use TAR to filter out nonresponsive documents, many reviewers began working overtime.  Facebook has also used analytics to front-load likely responsive documents to the beginning of the review queue, and the documents that have not yet undergone a first-level review are not as likely to be responsive. Facebook has now completed the majority of its review process, and is on track to meet the January substantial completion deadline.  As discussed more below, injecting a TAR protocol at this stage into Facebook's already enhanced and efficient linear review process would waste time and resources and delay the substantial completion deadline.[1]

### c.      The size of Facebook's Productions Do Not reflect the Pace of Review

Plaintiffs complain that Facebook's productions are smaller than they would like.  This is a

---

[1] To the extent the Special Master would like additional information about the current stage of review, Facebook is happy to provide additional information *in camera*.

Gibson, Dunn &
Crutcher LLP

product of Plaintiffs' boundless approach to discovery.  The volume of Facebook's productions reflects (i) a low responsiveness rate for the negotiated search string yield and (ii) that many relevant documents in the review set are duplicates of documents Facebook produced in its government productions.

At Plaintiffs' insistence, Facebook ran more than 140 extraordinarily overbroad search strings. Facebook submitted these strings with its April 29 mediation statement; a few examples are also below. As the Special Master will see, the strings capture things like any document over more than ten years from 26 custodians that includes any iteration of "problem" within five words of access* or polic*.

| ID | String | Custodians |
|---|---|---|
| FB-24 | ((misus* OR abus* OR violat* OR risk* OR leak* OR problem*) w/5 (access* OR "personal information" OR PII OR (friend* w/2 data) OR rule* OR TOS* OR "un TOS" OR "Non-TOS" OR untos* OR nontos* OR polic* OR term*)) | 26 |
| FB-25 | (("3d part*" OR 3P* OR "3rd part*" OR app OR apps OR application OR applications OR BP* OR dev* OR devs OR developer OR developers OR partner OR partners OR partnership OR partnerships OR affiliat* OR "third part*" OR client* OR entity OR entities OR customer* OR "Platform User*" OR "tier 0" OR "tier 1" OR T0 OR T1 OR vendor* OR (device w/2 manufacturer*) OR (device w/2 integrat*) OR (device w/2 maker*) OR (mobile w/2 partner*) OR (mobile w/2 manufacturer*)) w/5 (GDP OR perms OR permission* OR whitelist* OR "whit* list" OR whitlist*) w/5 (misus* OR abus* OR risk* OR leak* OR problem* OR breach*)) | 49 |

The strings were run on dozens of custodians' files over more than 10 years, even if intended to target discrete time periods.  For instance, one of the live theories is about alleged "whitelisting" that occurred for approximately one year around 2015.  But Plaintiffs demanded that the whitelisting strings be run on documents from 2007 through 2019, which yielded scores of non-responsive documents.

As a result of the overbroad search strings, Facebook is finding an unusually high volume of clearly non-responsive materials: e.g. out-of-office messages, resumes, spam, advertisements, reimbursement emails, hiring assessments, flight confirmations, information about events Facebook hosted, documents about providing free internet in developing countries, individual employees' investment materials—and, on one occasion, even a .pdf of a book about meditation.  Given Plaintiffs' year-long demand for egregiously overbroad search strings, they cannot now argue that the low responsiveness rate suggests a problem with Facebook's review. [2]

The ESI protocol further requires Facebook to exclude from its productions materials it already produced, Dkt. 416 at 9, 10; Dkt. 416 Ex. A at 6, and Facebook produced many of the relevant materials

---

[2] It is the very reason Facebook fought so hard to more narrowly tailor the search strings.

Gibson, Dunn & Crutcher LLP

in this review set through its government productions. This duplication should come as no surprise. Most custodians in this case were also custodians in the government matters, and several search strings are nearly identical to or overlap with strings that were used in those investigations and litigations.

> **d.** **The Parties Have Had Extensive Negotiations About Non-Custodial Data**

First and foremost, the parties' negotiations about *targeted* collections from non-custodial data sources has nothing to do with whether TAR should be run on Facebook's review population. In any case, Facebook has not been "unwilling" to discuss non-custodial data. As Judge Corley acknowledged, the parties spent dozens of hours meeting and conferring about non-custodial data. On this basis, Judge Corley denied Plaintiffs' demand for written ESI disclosures and a 30(b)(6) deposition about non-custodial data sources. *See supra* at 8. The parties even negotiated a schedule for production of certain non-custodial data that Facebook satisfied in July 2020. Plaintiffs rejected Facebook's suggestion that the parties negotiate a schedule for other non-custodial requests.

Plaintiffs recently raised certain data sources they describe as "non-custodial" in mediation. As Facebook explained, Quip and Tasks are *custodial* sources; Facebook is reviewing them currently. Privatron is a tool to locate certain Tasks. Scuba is not a data source; it is primarily a tool to analyze data. Facebook already produced certain Hive data and met and conferred extensively with Plaintiffs about Hive, which holds structured data not amenable to review in Relativity and is not a candidate for TAR. Facebook has repeatedly asked Plaintiffs to identify what data they seek from Hive, and it is mediating a dispute regarding the only Hive data Plaintiffs specifically requested (API call logs).

> **e.** **The ESI Protocol Requires Facebook To Produce Embedded Images As Separate Records**

Finally, Plaintiffs say Facebook's productions are deficient because they include many embedded images. The ESI Protocol *requires* Facebook to process and produce embedded files "as independent document records." Dkt. 416 ¶ F. Plaintiffs insisted on this provision. Again, Plaintiffs are complaining about a consequence of an unnecessary burden they imposed.

Plaintiffs' general gripes with the volume of Facebook's productions fall woefully short of justifying their demand that the Special Master issue an unprecedented order compelling TAR.

#### 4.     The Court Does Not Consistently "Side with Plaintiffs"

Because there is no legal support for Plaintiffs' demand, Plaintiffs next say TAR is needed to monitor Facebook's relevancy determinations because "each time a particular disagreement is adjudicated, the Court sides with Plaintiffs."  To support this egregiously false statement, Plaintiffs cite a hearing transcript and two orders out of context.

First, Plaintiffs note that at a CMC in March 2020—before Facebook made its government productions or the parties even began negotiating search strings—Judge Chhabria reminded Facebook that this is a large case.  Plaintiffs ignore that at the same hearing, Judge Chhabria told Plaintiffs he expected Facebook's FTC productions "would cover the vast majority of the documents that the Plaintiffs would want in this litigation." *Id.* at 4:14-15.  At the same hearing, Judge Chhabria also denied Plaintiffs' demand that Facebook log materials it may withhold on the basis of relevance, explaining Facebook "would never be required to do a log of the stuff that they pulled out [of a production] and determined was irrelevant or non-responsive to your request."  March 4, 2020 Hr'g Tr. at 8:7-10.  Judge Chhabria has declined to "side with Plaintiffs" on several other occasions.[3]

Plaintiffs are also wrong that Judge Corley's orders with respect to user data and "Business Partners" somehow show Facebook's productions are deficient.  Judge Corley *rejected* Plaintiffs' contention that Facebook was relying on an inappropriate definition of "Business Partners":  "The Court fails to see any material difference between the Parties' definitions [of Business Partners]."  Dkt. 608 at 2.  Judge Corley also did not hold that Facebook failed to produce relevant user data—she said the data relevant to this case is "sensitive data," including data falling in the categories Plaintiffs note, *to the extent it was "shared" with third parties*.  Dkt. 557 at 2.  Facebook confirmed to Plaintiffs that the productions it made six months before Judge Corley issued this ruling satisfy its obligations under her order.  Judge Corley has declined to "side with" Plaintiffs on various other issues.[4]

[3] *See* Dkt. 298 at 6-10 (narrowing 1440 paragraph complaint to four theories); Dkt. 571 (granting motion to dismiss claims by non-U.S. users); Dkts. 362, 374 (denying motions to compel).

[4] *See e.g.* Aug. 14, 2020 Hr'g Tr. 4:5-9 (requiring Plaintiffs to narrow hundreds of search strings to 50 they would be allowed to brief); Sept. 25, 2020 Hr'g Tr. 9:4-16 (rejecting Plaintiffs' position that all search strings should be run across all custodians); *see* Dkt. 650 at 2; Apr. 6, 2021 Hr'g Tr. 9:20-23 (rejecting Plaintiffs' demand that Facebook turn over all documents hitting on search strings without review); Jan. 15, 2021 Hr'g Trans. at 17:12-13 (quashing 30(b)(6) deposition notice); May 15, 2020 Trans. at 6:16-22 (rejecting request for ESI deposition); Dkt. 716 (rejecting demand that Facebook de-designate as confidential materials leaked by a third party); *see* Dec. 9, 2020 Hr'g Tr. at 48:8-11; Dkt. 588 at 2 (denying request to make Facebook's CEO and COO custodians).

Gibson, Dunn & Crutcher LLP

Plaintiffs do not and cannot point to a single ruling in this case even suggesting Facebook engaged in some misconduct, and even if they could, that would justify an unprecedented ruling compelling TAR.  Once again, Plaintiffs' argument that TAR is needed to oversee Facebook's relevance determinations exposes Plaintiffs' motive:  to weaponize TAR in an effort to slow discovery, increase costs, and demand a seat at Facebook's document-review table.

**D.     Imposing A TAR Process Now Would Delay Discovery**

Plaintiffs' demand that the Special Master compel TAR would also be counterproductive.  It is clear Plaintiffs do not seek TAR to expedite Facebook's review or reduce review costs, but instead to create a vehicle for Plaintiffs to litigate relevancy disputes.  Litigating document-by-document disputes in the context of TAR is not an efficient or effective discovery process, and Judge Chhabria has already advised Plaintiffs that they are not entitled to micromanage Facebook's review.  *See supra* at 13; *see also Aurora Cooperative Elevator Co. v. Aventine Renewable Energy-Aurora West, LLC*, 2015 WL 10550240 at *2 (D. Neb. Jan. 6, 2015) (courts will not require parties to "sit in adjoining seats while rummaging through millions of files" that include non-responsive documents.).  If a dispute arises about materials Plaintiffs identify as missing from Facebook's productions, the parties should mediate it and, if they are not able to resolve it, file an appropriate motion.  TAR is a useful and effective tool when it creates efficiencies.  TAR is not effective or worthwhile when it creates unnecessary disputes.

It is also too late for Facebook to implement an effective TAR process without significantly delaying its review and duplicating completed work.  Five months ago, Facebook hoped it would be able to use an industry-standard TAR process to remove non-responsive documents from its review set.  After it became clear that the parties would not reach a stage where they could even begin to successfully negotiate a TAR protocol, Facebook increased the size of its review team, authorized overtime for its reviewers, and implemented tools to prioritize its review.  Facebook has now completed its first-level human review of more than two-thirds of the documents that are most likely responsive. And because Facebook used analytics to prioritize its review, samples of unreviewed documents appear to have a responsiveness rate of approximately 3%.  Given its low richness, this remaining unreviewed population would likely be excluded from review by TAR, and any order that requires running TAR

Gibson, Dunn &
Crutcher LLP

on documents already manually reviewed would waste months' of work and cause significant delays.

Facebook's review continues to progress every day (including weekends), and is on pace to meet the substantial completion deadline.  An order requiring Facebook to upend the review it has been conducting for the last year and to set up a new review process just four months before the substantial completion deadline is entirely impractical—particularly given Plaintiffs' suggestion that any TAR process should allow for document-by-document disputes.  Plaintiffs seek delay, not forward progress.

**E.      The Special Master Should Strike Section IV.C Of Plaintiffs Motion**

Consistent with the Special Master's instructions, Facebook does not respond to the points made in Section IV.C of Plaintiffs' Motion—"The Special Master Should Enter a TAR Protocol Designed to Meet the Needs of This Case."  Facebook respectfully requests that the Special Master strike this section, along with Plaintiffs' TAR proposal and the declaration of Kelly Twigger.  The Special Master confirmed the only issue at impasse is whether Facebook should be compelled to use TAR.  He told the parties not to brief what any TAR protocol would look like and advised that he intended to "redline" any briefing going beyond the impasse topic.  Plaintiffs ignored this instruction by attaching a proposed TAR protocol to their submission supported by a 7-page declaration from their hired legal consultant.

Ms. Twigger's declaration is also improper because it provides extended advocacy for Plaintiffs' desired outcome.  This violates: (i) Local Rule 7-5(b), which limits the contents of declarations to facts and does not permit legal arguments or conclusions; (ii) Section 3 of the Special Master's Dispute Protocol, which prohibits "argument" in declarations and footnotes; and (iii) Federal Rule of Evidence 702, which precludes experts from providing legal opinions or conclusions.

Facebook reserves all arguments regarding Plaintiffs' proposed TAR process and the right to propose its own TAR process, should the Special Master compel TAR over Facebook's objection.

**CONCLUSION**

Facebook respectfully asks the Special Master to deny Plaintiffs' motion, which asks the Special Master compel a TAR process in violation of the ESI Protocol, the Court's instructions, and the sound reasoning of every other Court to have considered this issue, and would serve only to encourage disputes and further delay a resolution of this case on the merits.

Gibson, Dunn &
Crutcher LLP

1    Dated:  September 9, 2021            **GIBSON, DUNN & CRUTCHER, LLP**

2                                        By:  /s/ Russell H. Falconer
                                         Orin Snyder (*pro hac vice*)
3                                        osnyder@gibsondunn.com
                                         200 Park Avenue
4                                        New York, NY 10166-0193
                                         Telephone:  212.351.4000

5
                                         Deborah Stein (SBN 224570)
6                                        dstein@gibsondunn.com
                                         333 South Grand Avenue
7                                        Los Angeles, CA 90071-3197
                                         Telephone:  213.229.7000
8                                        Facsimile:  213.229.7520

9                                        Joshua S. Lipshutz (SBN 242557)
                                         jlipshutz@gibsondunn.com
10                                       1050 Connecticut Avenue, N.W.
                                         Washington, DC 20036-5306
11                                       Telephone:  202.955.8500

12                                       Russell H. Falconer
                                         rfalconer@gibsondunn.com
13                                       2001 Ross Avenue Suite 2100
                                         Dallas, TX 75201
14                                       Telephone:  214.698.3170

15                                       Kristin A. Linsley (SBN 154148)
                                         klinsley@gibsondunn.com
16                                       Martie Kutscher (SBN 302650)
                                         mkutscherclark@gibsondunn.com
17                                       555 Mission Street, Suite 3000
                                         San Francisco, CA 94105-0921
18                                       Telephone:  415.393.8200

19
                                         *Attorneys for Defendant Facebook, Inc.*
20

21

22

23

24

25

26

27

28

# EXHIBIT C

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley Weaver (Cal. Bar No.191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' REPLY BRIEF REGARDING THE USE OF TECHNOLOGY-ASSISTED REVIEW**<br><br>Judge: Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .....................................................................................................3

    A.  The ESI Order Does Not Foreclose the Special Master from Ordering Facebook to Implement TAR ...................................................................... 3

    B.  The Special Master Has the Authority to Require Facebook to Implement TAR ......... 3

    C.  Plaintiffs Offer Substantial Justification for TAR ....................................... 7

III.    CONCLUSION .................................................................................................10

1

# TABLE OF AUTHORITIES

2

*Cases*

3

*EORHB, Inc. v. HOA Holdings LLC*,
   No. 7409-VCL (Del. Ch. May 6, 2013) ........................................................ 4

4

*Hastings v. Ford Motor Co.*,
   2021 WL 1238870, at *2-3 (S.D. Cal. Apr. 2, 2021)................................... 7

5

*Hyles v. New York City*,
   2016 WL 4077114, at *1-2 (S.D.N.Y. Aug. 1, 2016).................................. 6

6

7

*In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*,
   2013 WL 1729682, at *2-3 (N.D. Ind. Apr. 18, 2013) ............................... 7

8

*In re Bridgepoint Educ., Inc.*,
   2014 WL 3867495, at *4 (S.D. Cal. Aug. 6, 2014) .................................... 6

9

10

*In re Mercedes-Benz Emissions Litig.*,
   2020 WL 103975, (D.N.J. Jan. 9, 2020). ............................................... 3, 4

11

*In re Viagra Products Liability Litigation*,
   2016 WL 7336411, at *2 (N.D. Cal. Oct. 14, 2016)................................... 6

12

13

Minute Order, *Indep. Living Ctr. of S. California v. City of Los Angeles*,
   CV 12-551-FMO (PJW) (C.D. Cal. June 26, 2014), ECF No. 375 ....................... 4, 5

14

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
   2012 WL 4498465, at *5 (N.D. Ill. Sept. 28, 2012).................................. 7

15

16

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
   982 F.2d 363, 368 (9th Cir. 1992)......................................................... 7

17

*Winfield v. v. City of New York*,
   2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017) ........................................ 4, 5

18

19

*Rules*

20

Fed.R. Civ.P. 26(c)(1)(B)................................................................................. 7

21

*Treatises*

22

8A FEDERAL PRACTICE AND PROCEDURE § 2035 (3d ed. 2021) ............................. 7

23

8A FEDERAL PRACTICE AND PROCEDURE § 2038 (3d ed. 2021) ............................. 7

24

*Articles*

25

Maura R. Grossman & Gordon V. Cormack, *E-Discovery Bulletin: Continuous Active
   Learning for TAR*, Thomson Reuters Practical Law (April/May 2016) ..................... 2

26

27

28

## I.       INTRODUCTION

Plaintiffs proposed TAR as a tool to address two longstanding issues impeding the progress of this litigation. First, Facebook's manual document review is too slow to meet the needs of the case. Second, TAR can be used to surface and resolve the longstanding, entrenched dispute regarding relevance.

A few months ago, Facebook thought TAR would solve the first issue. Plaintiffs' opening brief recounts Facebook's repeated statements advocating for TAR as a tool to make its document review more efficient, which would benefit all parties by enabling them to complete document discovery more quickly. Facebook's former arguments make sense. Facebook's opposition makes clear that it is the second issue, relevance, that resulted in its about-face: "Plaintiffs admit they want this detour"—TAR—"for the improper purpose of challenging Facebook's relevance determinations on a document-by-document basis." Facebook's Opposition (Opp.) at 1-2.

Plaintiffs make no such admission. Plaintiffs do *not* want to spend time challenging Facebook's relevance determinations document by document. Rather, Plaintiffs have stated that Facebook's definition of relevance is improperly narrow, and that it has not cooperated "on issues relating to the preservation, collection, search, review, and production of ESI," as expected by the Northern District's *Guidelines for the Discovery of Electronically Stored Information* ("*Guidelines*"). How have Plaintiffs drawn the conclusion that Facebook is defining relevance improperly? The Court has told it so, repeatedly. Judge Chhabria said "a number of times on the record" that Facebook has taken "an unduly narrow view of what should be turned over to the Plaintiffs." And Judge Corley disagreed with Facebook's definition of the scope of relevant named plaintiffs' data and business partners. Despite this repeated and consistent feedback, Facebook's definition of relevance has remained unchanged.

Regardless, Facebook presents a false choice: Plaintiffs' proposed TAR protocol or no TAR at all. While Plaintiffs believe their proposal is fair and appropriately responds to the challenges of this case, they have repeatedly stated that they would accept a mediator's or Special Master's TAR proposal sight unseen. The Special Master is an ESI expert, is familiar with the case, and has engaged in numerous communications with the parties concerning TAR. He is

uniquely well-situated to implement an appropriate TAR protocol for this case's needs with an eye to ensuring compliance with the case management schedule.

Given its reversal on TAR, how does Facebook now propose to resolve the first issue: the slow pace of production? It denies that it is an issue at all, saying it is now on track to meet the substantial completion deadline. Opp. at 10. That is a curious representation. In the before-times, when Facebook was insisting on TAR, there was no operative case management schedule. Since then, Judge Chhabria has issued a scheduling order requiring substantial document production to be complete by January 31, 2021. Notably, Facebook says now that it is using "an efficient, prioritized" review "process supported by analytics." Opp. at 1. The mention of "analytics" is troubling. It is not defined further, and suggests that Facebook may have implemented TAR, or something approaching it, after pulling out of the parties' negotiations over a suitable TAR protocol. This would violate the ESI Order. Dkt. No. 416 at 5-6 & n.1.

Plaintiffs remain convinced that a TAR protocol, appropriately implemented, is the tool best situated to increase production and efficiently surface (and resolve) foundational disputes about relevance. *See* Maura R. Grossman & Gordon V. Cormack, *E-Discovery Bulletin: Continuous Active Learning for TAR*, Thomson Reuters Practical Law (April/May 2016) (using continuous active learning with a TAR tool can "minimize the potential for disputes with requesting parties").[1] Facebook asserts two reasons the Special Master can't implement TAR against Facebook's wishes.

*First*, Facebook asserts the ESI protocol forecloses Plaintiffs' request. Not so. The ESI protocol provides that it "may be modified . . . by the Court." Dkt. No. 416 at 11.

*Second*, Facebook asserts that the caselaw unanimously rejects Plaintiffs' request for an order compelling TAR in these circumstances. Again, no. The caselaw is split on the issue, driven by the particular facts of each case, and none of it is binding. The cases where courts have compelled TAR bear striking resemblance to the facts here. And in none of those cases is there

---

[1] *Available at* https://plg.uwaterloo.ca/~gvcormac/caldemo/AprMay16_EdiscoveryBulletin.pdf.

1    evidence that the resisting party flipflopped on the issue as Facebook has here, which puts the

2    notion that Plaintiffs' seek to "compel" TAR implementation into a different framework.

3          The rest of Facebook's brief—the substantial majority of it—contends that Plaintiffs have

4    not justified the request that the Special Master implement TAR. This portion of the brief raises

5    red herrings (*e.g.*, "TAR is not required by the Northern District's Guidelines," an argument

6    Plaintiffs never made), meaningless detours ("Facebook Reproduced Productions From 10

7    Government Matters," productions that had already been collected and required no review), and

8    revisionist history ("The Parties Have Had Extensive Negotiations about Non-Custodial Data,"

9    which is simply untrue). Those contentions and others will be addressed briefly below.

10   **II.    ARGUMENT**

11        **A.    The ESI Order Does Not Foreclose the Special Master from Ordering
               Facebook to Implement TAR**

12   Facebook first contends that the ESI Order forecloses the Special Master from ordering

13   Facebook to implement TAR. Opp. at 2. But the ESI Order states that it may be modified by the

14   Court: "This Stipulated Order may be modified [1] by agreement of the parties memorialized in a

15   Stipulated Order of the parties or [2] by the Court." Dkt. No. 416 at 11. Plaintiffs' request simply

16   asks the Special Master to modify the ESI Order consistent with its terms to facilitate efficient

17   production of backlogged discovery to meet the case schedule Judge Chhabria entered. Because

18   the Special Master was appointed to "issue a ruling" on "any discovery dispute" not resolved

19   through mediation, the Special Master can modify the ESI Order. Dkt. No. 708 at 1.

20        **B.    The Special Master Has the Authority to Require Facebook to Implement
               TAR**

21   Facebook contends the caselaw uniformly holds that a party cannot be required to

22   implement TAR against its wishes. That is not correct. The cases cited in Plaintiffs' opening brief

23   hold that a judge, and therefore the Special Master here, may require Facebook to implement

24   TAR. Facebook's attempt to distinguish these cases cited is misguided and unsuccessful.

25        Before addressing those cases, however, it is worth noting the case Plaintiffs cite that

26   Facebook ignores, *In re Mercedes-Benz Emissions Litig.*, 2020 WL 103975 (D.N.J. Jan. 9, 2020).

27

28

1    While that case did not order implementation of TAR over defendants' objection, it stated that it

2    was open to doing so "if Plaintiffs contend that Defendants' actual production is deficient." *Id.* at

3    *2. As the Special Master is well aware in his role as a discovery mediator, and as discussed in

4    Plaintiffs' opening brief and again below, that is precisely what Plaintiffs contend here. Thus,

5    *Mercedes-Benz* clearly supports the conclusion that the Special Master may require Facebook to

6    implement TAR. Facebook's failure to address *Mercedes-Benz* in its brief is telling.

7         Facebook does address three other cases Plaintiffs rely on: *Winfield v. v. City of New York*,

8    2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017), Minute Order, *Independent Living Center of*

9    *Southern California v. City of Los Angeles*, CV 12-551-FMO (PJW) (C.D. Cal. June 26, 2014),

10   ECF No. 375, and *EORHB, Inc. v. HOA Holdings LLC*, No. 7409-VCL (Del. Ch. May 6, 2013).

11   Facebook's discussion of these cases does not rebut Plaintiffs' central point: a federal court,

12   including a special master duly appointed by a federal court, has the authority to require

13   recalcitrant parties to implement TAR.

14        Facebook contends that *Winfield* supports its position because the plaintiffs there objected

15   to the City's continued use of its TAR system. *Id.* at *9. But that dispute concerned whether TAR

16   was adequately trained, not whether it should be implemented. *See id.* ("Plaintiffs contend the

17   system is improperly trained" leaving it "unable to recognize and properly categorize responsive

18   documents"). *Winfield* did not concern whether to implement TAR, because, given plaintiffs'

19   "numerous complaints about the pace of discovery and document review" based on "a set of

20   search terms that was heavily negotiated by the parties," the court had already ordered the City to

21   begin using TAR. *Id.* at *4.

22        Facebook points out that, in a hearing seven months before it ordered the City to

23   implement TAR, the court had asked whether "'the City [would] be able to use prioritization

24   software in their review?'" and the City responded it had used such software in the past and was

25   exploring its use for *Winfield*. Opp. at 4. It is unclear whether the term "prioritization software"

26   meant TAR. Indeed, it sounds familiar to the "process supported by analytics" that Facebook only

27   now discloses it is using. In any event, Facebook's point backfires. Even more than the City's

28

1   willingness to explore whether prioritization software would be appropriate, Facebook here

2   actively sought permission to use TAR here and repeatedly touted its benefits. Regardless,

3   *Winfield* makes clear that the City was not using TAR before it was ordered to do so. *See*

4   *Winfield*, 2017 WL 5664852, at *4 (the City was ordered to collect documents from 50 custodians

5   and was applying search terms to electronic documents from them). Just as *Winfield* "directed"

6   the City to begin using TAR "to hasten the identification, review, and production of documents

7   responsive to Plaintiffs' document requests," the Special Master should do so here.

8   Regarding *Independent Living Center*, Facebook asserts that "there is no indication that the Court

9   ordered TAR over the City's opposition." Opp. at 5. That assertion requires an unduly cabined

10  reading of the order. In an order entered June 26, 2014, the court recounts that, in December

11  2012, it entered a scheduling order requiring the parties to complete discovery in September

12  2013. Ex. 7 at 1.[2] "Needless to say, the deadline was not met" for the primary reason that

13  keyword searches, resulting from "months of haggling," had proven unworkable. *Id.* (This sounds

14  familiar.) As a result of the months of delay, *Independent Living Center* "ordered the City to use

15  predictive coding to locate the most relevant documents," forcing it to hire and pay for an outside

16  vendor. *Id.* at 1-2; *see id.* at 3 ("the Court ordered the City to buy" the TAR service). That the

17  court "ordered" the City to implement and pay for TAR means that the City was required to

18  implement TAR over its objection.

19          Finally, Facebook points out that the parties in *EOHRB* "agreed that the defendants would

20  use TAR" and plaintiffs would not. Opp. at 5. That's because the court ordered the parties to use

21  TAR absent a modification of the order for good cause shown. Ex. 8 at 1-2. The defendants'

22  "willingness" to implement TAR was therefore a "willingness" to comply with the court's order.

23  Plaintiffs were able to show good cause why they should be exempted from the court's order to

24  use TAR—they had a low volume of relevant documents expected to be produced in discovery,

25  which meant the cost of implementing TAR would likely be outweighed by the benefit of its use.

26  *Id.* at 2. Facebook cannot say the same.

27  _____

28  [2] All exhibit citations refer to the Declaration of Lesley Weaver filed in support of Plaintiffs'
    opening brief.

1     Facebook's opposition relies on a number of cases for the proposition that a court cannot

2   require a party to implement TAR against its wishes, but those cases do not share the

3   circumstances present here and conflict with *Mercedes-Benz*, *Winfield*, *Independent Living*

4   *Center*, and *EOHRB*.

5     In *Hyles v. New York City*, plaintiffs moved for an order requiring the City to implement

6   TAR during the earliest months of the parties' ESI negotiations. *See* 2016 WL 4077114, at *1-2

7   (S.D.N.Y. Aug. 1, 2016) (noting that plaintiff requested defendants use TAR immediately after

8   the parties' initial discussions about the use of keyword searches). The court further noted that if

9   plaintiff later demonstrates deficiencies in the City's production, it may have to re-do its search

10  (citing Sedona Principle 7), but, due to the early stage of discovery, "that is not a basis for Court

11  intervention *at this stage of the case*." *Id.* at *3 (emphasis added); *see In re Viagra Products*

12  *Liability Litigation*, 2016 WL 7336411, at *2 (N.D. Cal. Oct. 14, 2016) (refusing to compel

13  implementation of TAR "especially in the absence of any evidence that Pfizer's preferred method

14  would produce, or has produced, insufficient discovery responses," and allowing plaintiff to

15  revisit the issue "if Plaintiff contends that Pfizer's actual production is deficient").

16    Here, the parties are more than two years into discovery, a year and a half after

17  implementation of the ESI protocol, and just over four months from the deadline for substantial

18  completion of discovery. Further, as the Special Master is aware, discovery has been and

19  continues to be bogged down by numerous lingering foundational discovery disputes, resulting in

20  the production of exponentially fewer documents than in other large MDL actions. *See* Plaintiffs'

21  Opening Brief at 8. Thus, unlike *Hyles* and *Viagra*, this case is at an appropriate stage for the

22  Special Master to intervene. *Hyles* further noted that "[t]here may come a time when TAR is so

23  widely used that it might be unreasonable for a party to decline to use TAR." *Id.* In the

24  circumstances present here, five years after *Hyles*, Facebook's declination is unreasonable.

25    The other cases on which Facebook relies are readily distinguishable or inapt. *See In re*

26  *Bridgepoint Educ., Inc.*, 2014 WL 3867495, at *4 (S.D. Cal. Aug. 6, 2014) (putting emails

27  already screened through predictive coding is likely to negatively impact the reliability of the

28

1  coding, a concern that can be addressed here in the TAR protocol, and noting that defendants are

2  willing to run additional search terms against the already screened documents, which Facebook is

3  not); *Hastings v. Ford Motor Co.*, 2021 WL 1238870, at *2-3 (S.D. Cal. Apr. 2, 2021) (does not

4  concern or otherwise address TAR); *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*,

5  2013 WL 1729682, at *2-3 (N.D. Ind. Apr. 18, 2013) (defendant was already using TAR; plaintiff

6  wanted it to re-run TAR on a broader set of documents); *Kleen Prods. LLC v. Packaging Corp. of*

7  *Am.*, 2012 WL 4498465, at *5 (N.D. Ill. Sept. 28, 2012) (plaintiffs agreed to withdraw their

8  demand that defendants apply TAR and agreed not to argue that defendants should be required to

9  implement TAR in the future).

10       None of the cases cited by either party is binding on the Special Master. To the doubtful

11  extent any of the cases suggest that a federal court—or a master duly appointed by a federal

12  court—lacks the power to require TAR, that suggestion should be rejected. For one thing, federal

13  courts' "inherent powers" give them the "broad discretion to make discovery" rulings. *Unigard*

14  *Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (citation and

15  quotation omitted). For another, Rule 26(c)(1)(B) gives courts the power to "specify[] terms,

16  including time and place or the allocation of expenses, for the disclosure or discovery." This

17  provision gives courts "great flexibility in devising appropriate terms or conditions for discovery

18  in a given case." 8A FEDERAL PRACTICE AND PROCEDURE § 2038 (3d ed. 2021); *see also id.*

19  § 2035 (noting that a party seeking discovery can make a motion under Rule 26(c)). The cases

20  supporting the Special Master's authority to require Facebook to implement TAR are more apt

21  and compelling than the cases going the other way.

22      **C.**    **Plaintiffs Offer Substantial Justification for TAR**

23       In contending that Plaintiffs offer no justification for implementing TAR, Facebook

24  ignores Plaintiffs' opening brief and erases the history of discovery in this case.

25       ***Facebook was right to advocate for TAR.*** Facebook contends that its prior advocacy for

26  TAR does not require the Special Master to implement TAR against Facebook's wishes now.

27  Opp. at 5. Whether true or not, Facebook's prior advocacy provides accurate and persuasive

28

1    reasons to use TAR. Plaintiffs agree with the points Facebook made in the before-times: TAR

2    will accelerate the pace of discovery and facilitate timely compliance with discovery obligations.

3        Moreover, Facebook's flipflop raises obvious questions about Facebook's credibility. If

4    Facebook believes its definition of relevance is appropriate, a process involving a discussion of

5    how it is defining relevance, conducted under the watchful eye of an informed Special Master,

6    should present no concerns. But Facebook is apparently very concerned. And Facebook's new

7    disclosure that the custodial documents it has collected have a responsiveness rate of 3% raises

8    questions about Facebook's "analytics" and how they define responsiveness. As Facebook has

9    made clear in both word and deed, it believes it is entitled to define relevance narrowly to

10   eliminate from production critical information that is plainly discoverable.

11       ***Implementing TAR will make discovery more efficient.*** Facebook contends that

12   implementing TAR now will delay discovery. Opp. at 14. It is widely agreed that TAR is more

13   efficient than manual review. *See, e.g.,* Plaintiffs' Opening Brief at 7, 8. Nevertheless, Facebook

14   asserts that "[l]itigating document-by-document disputes in the context of TAR" will be

15   inefficient and improperly enable Plaintiffs to "micromanage Facebook's review." Opp. at 14.

16   But it is precisely to *avoid* document-by-document disputes that Plaintiffs seek and have sought a

17   cooperative process to define relevance and train the TAR tool. *See, e.g.*, Exs. 5, 14.

18       ***TAR will advance cooperation and transparency.*** Facebook asserts that TAR is not

19   expressly required by the Northern District's *Guidelines*. Opp. at 7-8. That's true. But Guideline

20   1.02 (Cooperation) requires cooperation and transparency. Facebook has been neither cooperative

21   nor transparent. Discovery, rather, has been a hall of mirrors. Plaintiffs have pushed for

22   discussions for *years* on numerous issues, only to get nowhere. Plaintiffs have secured orders

23   telling Facebook to do things it still refuses to do. *See, e.g.*, Dkt. No. 559 (named plaintiffs' data);

24   Dkt No. 608 (business partners). *TAR* is merely a tool that can help advance the cooperation and

25   transparency that have been lacking.

26       ***Plaintiffs have identified numerous deficiencies in Facebook's production.*** Facebook

27   contends Plaintiffs have identified no deficiencies in Facebook's production. Opp. at 9. This is

28

untrue. Discovery in this case has largely proceeded in a step-by-step manner, whereby Plaintiffs were prohibited from raising certain disputes until other actions were complete. There remain a score or more of disputes that Plaintiffs are attempting to raise. Some concern the insufficiency of productions made to date (*e.g.*, the named plaintiffs' data). Others concern the addition of custodians or non-custodial sources based on the documents that have been produced (*e.g.*, Mark Zuckerberg's and Sheryl Sandberg's custodial files, non-custodial ESI like the Tasks, Privatron, and Quip databases and relevant internal group Walls). Still others concern discovery requests to which Facebook has not produced relevant documents at all.

***Facebook is not on track to meet the substantial completion deadline.*** Facebook says there's no need for TAR because it's on track to meet the substantial completion deadline. Opp. at 10. That is only true if it continues to define relevance in an improperly narrow manner and understands its obligation as being substantially complete once production from the currently agreed set of custodians ends. However, for the reasons set forth here, in Plaintiffs' opening brief, in Court filings, and in communications with the discovery mediators, Facebook has been using an improperly narrow definition of relevance and has yet to engage in discussions about a massive amount of discovery it must still produce. Indeed, Facebook addresses production from Quip, Privatron, Tasks, and Scuba for the first time in its opposition. Opp. at 12. Facebook says these were "recently raised . . . in mediation." *Id.* Yes, but Plaintiffs first raised them years ago, only for Facebook to refuse to discuss them until production from the initial custodians was complete.

***Facebook's governmental productions are the bare minimum of what's required.*** Facebook touts its reproduced production from ten government matters. Opp. at 10. Facebook deserves no plaudits for producing ready sets of relevant documents. While Judge Chhabria expressed his expectation that these documents would provide the vast majority of the documents Plaintiffs want here, that expectation has not been met. Plaintiffs bring a far wider range of claims than in the government actions, and have burdens of proof, including damages, that the governmental entities did not. Thus, Plaintiffs need a wider swath of production from Facebook.

1    Further, the governmental investigations revealed that Facebook consistently withheld relevant

2    documents. As Federal Trade Commissioner Rohit Chopra stated in dissenting from the FTC's

3    2019 order imposing a $5 billion penalty on Facebook: "In my view, there were multiple

4    inconsistencies and deficiencies in Facebook's responses to questions. I question[] whether the

5    company's document productions were truly complete."[3] *See also, e.g.*, Annie Palmer, *California*

6    *AG reveals Facebook probe, says company has been dragging its feet*, CNBC (Nov. 6, 2019)

7    (Facebook has "'refused to conduct a complete search for responsive documents'"). Plaintiffs are

8    entitled to the relevant documents withheld from governmental investigations.

9        **Responses to Facebook's remaining points.** Facebook makes several assertions that,

10   while not relevant, require brief responses. It asserts that the ESI Order requires it to produce

11   embedded images. Opp. at 12. That is incorrect, but the more salient point is that Facebook has

12   burned nearly a year, trickling out fewer than 10,000 custodial documents per month, and about a

13   quarter of those documents are essentially contentless images that needed no review at all.

14       Finally, Facebook moves to strike § IV.C of Plaintiffs' opening brief, which asks the

15   Special Master to implement a TAR protocol designed to meet the needs of this case. Plaintiffs

16   included this section to avoid unnecessary delays in the event the Special Master requires

17   Facebook to implement TAR. *Cf.* Opp., § D ("Imposing a TAR Process Now Would Delay

18   Discovery"). The exhibits referenced are already part of the record. Dkt. Nos. 697-1, 697-2. The

19   Special Master should deny the motion to strike.

20   **III.    CONCLUSION**

21       The Special Master has the discretion to require Facebook to implement TAR and should

22   do so.

23

24   Dated: September 13, 2021                      Respectfully submitted,

25   KELLER ROHRBACK L.L.P.                          BLEICHMAR FONTI & AULD LLP

26   By:    */s/ Derek W. Loeser*            By:    */s/ Lesley E. Weaver*
                Derek W. Loeser                           Lesley E. Weaver

27   _____

28   [3] *Available at* https://www.ftc.gov/system/files/documents/public_statements/1536911/
     chopra_dissenting_statement_on_facebook_7-24-19.pdf.

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com


*Plaintiffs' Co-Lead Counsel*

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE: FACEBOOK, INC. CONSUMER
PRIVACY USER PROFILE LITIGATION,


This document relates to:

ALL ACTIONS

MDL No. 2843
Case No: 18-MD-2843 VC (JSC) (N.D. Cal)

Hon. Vince Chhabria
Courtroom 4 – 17th Floor
Special Master: Daniel Garrie, Esq.

**ORDER REGARDING THE USE OF TAR**

JAMS Ref. No: 1200058674

## BACKGROUND

1.  On August 18, 2021, Special Master Daniel Garrie ("Special Master Garrie") and Judge Gail Andler declared impasse on the issue of whether Facebook should be compelled to use Technology Assisted Review ("TAR") in their review and production.

2.  Pursuant to the Protocol for Resolving Discovery Disputes, Plaintiffs submitted their opening brief regarding the use of TAR on August 30, 2021. Plaintiffs argue that requiring Facebook to implement TAR is within the Special Master's discretion and Facebook should be compelled to use TAR because (a) TAR will increase the pace of discovery, which Plaintiffs assert is currently insufficient to meet the needs of the case; and (b) implementing a TAR protocol will increase cooperation and transparency in discovery, which Plaintiffs assert have been insufficient thus far as "Facebook has continued to assert an unduly narrow view of relevance". See Plaintiffs' Brief Regarding the Use of TAR.

3.  Pursuant to the Protocol for Resolving Discovery Disputes, Facebook submitted their Opposition to Motion to Compel TAR on September 9, 2021. Facebook argues that (a) the ESI Protocol forecloses Plaintiffs' request that the Special Master compel TAR; (b) the case Law unanimously rejects Plaintiffs' request for an order compelling TAR; (c) Plaintiffs offer no justification for an order compelling Facebook to use TAR; and (d) compelling Facebook to use TAR at this stage would delay discovery. See Facebook's Opposition to Motion to Compel TAR.

## ORDER

4.  Special Master Garrie finds that additional information pertaining to Facebook's review is necessary to rule on the TAR related issues. Within 6 business days, Facebook is to provide the items below to Special Master Garrie.

ORDER REGARDING THE USE OF TAR

    i.  Facebook is to make available a technical resource (witness) knowledgeable in the analytics, review tools, and methodologies used in Facebook's production to guide Special Master Garrie through an in-camera review of samples of the documents reviewed and to explain the review process.

   ii.  Facebook is to provide Special Master Garrie a sample of 500 documents from the unreviewed documents claimed to have a 3% responsiveness rate. <u>See</u> Facebook's Opposition to Motion to Compel TAR, at 14.

  iii.  Facebook is to provide a list of the repositories that are included in the scope of their review, designating as follows: (a) which repositories have been collected and which remain to be collected, if any; (b) which repositories have been searched; (c) which repositories have been reviewed; (d) which repositories are custodial sources and which are non-custodial sources.

  iv.  Facebook is to provide written responses clarifying the following points from their Opposition to Motion to Compel TAR.

      1.  "Facebook has now completed its first-level human review of more than two-thirds of the documents that are most likely responsive." <u>See</u> Opposition to Motion to Compel TAR, at 14.

          a.  What does Facebook mean by "documents that are most likely responsive"?

          b.  How did Facebook determine that these documents are most likely to be responsive?

ORDER REGARDING THE USE OF TAR

2. "To date, Facebook has produced 1,959,618 pages over 45 produc-

tions, in addition to more than 500 pages of interrogatory responses."

<u>See</u> Opposition to Motion to Compel TAR, at 10.

    a. How many documents comprise the 1,959,618 pages stated

       above?

    b. Do the 1,959,618 pages stated above include documents from

       the government productions?

5.      Upon the filing by Facebook of the supplemental information requested, the mat-

ter will be taken under submission by the Special Master without further briefing or argument

except as deemed necessary by the Special Master.

**IT IS SO ORDERED.**

September 22, 2021

Daniel Garrie
Discovery Special Master

# PROOF OF SERVICE BY E-Mail

Re: In re: Facebook, Inc. Consumer Privacy User Profile Litigation (Special Master)
Reference No. 1200058674

I, Anne Lieu, not a party to the within action, hereby declare that on September 22, 2021, I served the

attached ORDER REGARDING THE USE OF TAR on the parties in the within action by electronic mail at El

Monte, CALIFORNIA, addressed as follows:

Martie P. Kutscher Clark Esq.
Gibson Dunn & Crutcher
1881 Page Mill Rd.
Palo Alto, CA  94304-1125
Phone: 650-849-5300
mkutscher@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Deborah L. Stein Esq.
Alexander P. Swanson Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA  90071-3197
Phone: 213-229-7000
dstein@gibsondunn.com
aswanson@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

David J. Ko Esq.
Derek W. Loeser Esq.
Cari C. Laufenberg Esq.
Keller Rohrback LLP
1201 Third Ave.
Suite 3200
Seattle, WA  98101-3052
Phone: 206-623-1900
dko@kellerrohrback.com
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Chris Springer Esq.
Keller Rohrback LLP
801 Garden St.
Suite 301
Santa Barbara, CA  93101
Phone: 805-456-1496
cspringer@kellerrohrback.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Lesley E. Weaver Esq.

Matthew S. Melamed Esq.

Ms. Anne Davis
Matthew Montgomery Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Orin S. Snyder Esq.
Gibson Dunn & Crutcher
200 Park Ave.
47th Floor
New York, NY   10166-0193
Phone: 212-351-4000
osnyder@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Russell H. Falconer Esq.
Gibson Dunn & Crutcher
2001 Ross Ave.
Suite 2100
Dallas, TX   75201
Phone: 214-698-3100
rfalconer@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Ms. Laura C. Mumm
Gibson Dunn & Crutcher
200 Park Ave.
New York, NY   10166
Phone: 212-351-4000

Angelica M. Ornelas Esq.
Joshua D. Samra Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Joshua S. Lipshutz Esq.
Gibson Dunn & Crutcher
1050 Connecticut Ave NW
Washington, DC   20036
Phone: 202-9558500
JLipshutz@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Colin B. Davis Esq.
Gibson Dunn & Crutcher
3161 Michelson Dr.
Irvine, CA   92612-4412
Phone: 949-451-3800
cdavis@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

LMumm@gibsondunn.com
  Parties Represented:
  Facebook, Inc.


     I declare under penalty of perjury the foregoing to be true and correct. Executed at El Monte,

CALIFORNIA on  September 22, 2021.

/s/ Anne Lieu
Anne Lieu
JAMS
alieu@jamsadr.com

# EXHIBIT E

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,

This document relates to:

ALL ACTIONS

CASE NO. 3:18-MD-02843-VC

**FACEBOOK'S SUPPLEMENTAL SUBMISSION IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL TAR**

Defendant Facebook, Inc. ("Facebook") hereby provides the following responses to the requests for information posed in paragraph 4 of the Special Master's September 22, 2021 Order Regarding the User of TAR (the "Order").

**Request (i):  Facebook is to make available a technical resource (witness) knowledgeable in the analytics, review tools, and methodologies used in Facebook's production to guide Special Master Garrie through an in-camera review of samples of the documents reviewed and to explain the review process.**

Facebook will make available to the Special Master at his convenience during his *in camera* review Gibson Dunn attorneys who are knowledgeable about Facebook's review process in this case, including the analytics, review tools, and methodologies used in Facebook's production.  Facebook will also ensure that an attorney from Facebook's in-house eDiscovery team and a representative from its vendor are available if needed by phone and email during the *in camera* review session.

**Request (ii):  Facebook is to provide Special Master Garrie a sample of 500 documents from the unreviewed documents claimed to have a 3% responsiveness rate.  See Facebook's Opposition to Motion to Compel TAR, at 14.**

Facebook will provide this sample to the Special Master on an *ex parte* basis for the Special Master's *in camera* review under separate cover.

**Request (iii):  Facebook is to provide a list of the repositories that are included in the scope of their review, designating as follows: (a) which repositories have been collected and which remain to be collected, if any; (b) which repositories have been searched; (c) which repositories have been reviewed; (d) which repositories are custodial sources and which are non-custodial sources.**

Facebook's review population includes just over 6 million documents collected from the repositories listed below (of which a little more than 5.6 million are the emails, chat documents, and family members that hit on the parties' search strings).  As detailed below, the vast majority of Facebook's document collections are complete.  Collections remain in progress from a few sources identified by a small number of custodians.

**Custodial Sources**:  The parties previously agreed that Facebook would investigate sources and collect documents from the custodial files of 81[1] custodians.  In June 2020, the parties agreed to a

---

[1]  On page 8 of its Opposition to Plaintiffs' Motion to Compel, Facebook stated that this number was

Gibson, Dunn & Crutcher LLP

process and schedule for Facebook to interview its custodians (where possible) in eight groups (as prioritized by Plaintiffs) and disclose relevant data sources for those groups on a rolling basis.  Dkt. 461.  Facebook disclosed its custodial data sources to Plaintiffs under that agreement last summer.

(a) A full list of those sources, along with their current status, is below.[2]

| Data Source | Collection Status[3] |
|---|---|
| Email | Complete |
| Workplace Chat | Complete |
| IRC | Complete |
| Workplace Groups | Complete |
| Internal Tasks | Complete |
| Box | Complete |
| OneDrive | Complete |
| Google Drive / G Suite | Complete |
| OneNote | Complete |
| Zoho | Complete |
| Internal Wikis | Complete |
| Quip | Complete |
| DropBox | Ongoing (in progress for 17 custodians) |
| Local Files | On hold for 9 custodians due to COVID restrictions[4] |

---

82, which was an inadvertent typographical error.  The correct number is 81.

[2]  Some data sources that Facebook disclosed to Plaintiffs last summer by source type (*e.g.*, instant messaging; online file storage) are listed here as specific repositories for purposes of providing increased transparency and precision.

[3] Facebook may need to perform targeted recollections to address technical issues encountered during review or make limited targeted collections based on information learned as review progresses.

[4]  Due to restrictions on travel and the work-from-home protocols adopted during the COVID-19 pandemic, Facebook has not yet been able to collect hard copy documents or locally stored electronic files from custodians who are not present in the office.  Facebook intends to complete these collections as soon as it can do so consistent with local orders and company policy.

(b) For custodial data source collections to which search terms are applied, the search process is completed for all documents as soon as they are processed and loaded into Facebook's review database.

(c) Documents from all of the custodial sources listed above are transferred to Facebook's document vendor and processed into a single review database promptly upon collection.  Facebook is reviewing the materials collected from these sources as part of a single consolidated review workflow, and this consolidated review remains ongoing.  Additional information on the status of  the review is provided below in response to request (iv)(1).

**Non-Custodial Sources**:  Facebook has also collected data and documents from non-custodial sources as necessary to respond to Plaintiffs' RFPs and information requests.  Where non-custodial collections have been necessary, Facebook either identified the specifically requested materials within a particular data source and collected them for production or, in cases where no existing materials were responsive to Plaintiffs' requests, created new materials for production.   These non-custodial collections are narrow in scope and tailored to particular RFPs, would not be fed into a TAR model for review, and remain ongoing.  To the extent that Facebook determines, or the parties agree, that additional non-custodial sources may contain responsive materials, Facebook will promptly collect from and review those sources.

(a) Facebook has collected from the following non-custodial sources of documents: historical versions of Facebook's public-facing web-pages through the Content Management System; notifications made to users from a repository of user notifications, correspondence between the Named Plaintiffs and Facebook, and internal training materials related to Facebook's data storage systems.

Facebook has collected from the following non-custodial sources of structured data: data relating to the Named Plaintiffs' privacy settings and authorized applications from tables in the Hive

Gibson, Dunn & Crutcher LLP

data warehouse; data from Facebook's HR database showing the organizational structure of relevant teams; and the Named Plaintiffs' DYI files.

(b) These non-custodial sources are identified for collection based on the content of the request or RFP to which they are responsive, so the search is complete upon collection.

(c) Documents and data collected from these non-custodial sources have been reviewed, QCed, and produced on a rolling basis as they have been identified.

**Request (iv)(1): "Facebook has now completed its first-level human review of more than two-thirds of the documents that are most likely responsive." See Opposition to Motion to Compel TAR, at 14. What does Facebook mean by "documents that are most likely responsive"? How did Facebook determine that these documents are most likely to be responsive?**

The quoted statement in Facebook's Opposition attempted to convey two separate ideas: (1) Facebook has completed its first-level review of two-thirds of all of the documents in its total review population, not just the documents that are likely be responsive; and (2) separately, Facebook has structured its review to maximize accuracy and efficiency by prioritizing, for both review and production, documents that are more likely to be responsive ahead of documents that are less likely to be responsive.

Facebook has used several methods and tools to inform and guide its human review process. To determine which documents are more likely to be responsive than others and prioritize likely responsive documents for review, Facebook has: (A) used the known responsive documents within the initial review population to develop targeted, narrowly tailored searches and applied those searches to other documents in the review population; (B) employed structured and conceptual analytics (specifically, email threading and conceptual clustering) to elevate documents for review that are in the same email thread as, feature the same concepts as, or have similar linguistic characteristics to documents identified as responsive;[5] and (C) streamlined review of non-substantive files as permitted

---

[5]  In connection with its last production, Facebook disclosed to Plaintiffs that it is suppressing lesser-inclusive thread members from its review and production, which is permitted under the ESI Protocol with the supplementation of metadata for the withheld lesser-inclusive documents.  Thus, the number

3

Gibson, Dunn & Crutcher LLP

by section F of the ESI Protocol.  Facebook has completed its review of the documents that these methods and tools elevated or prioritized for review as likely responsive.  And the use of threading and the presence of a high volume of non-substantive files substantially reduce the size of the remaining population requiring substantive review.

In anticipation of raising in mediation the possibility of using TAR to filter out non-responsive documents, Facebook trained an analytics model in Relativity to evaluate the potential effectiveness of TAR and confirm whether documents in the review set could be prioritized for review based on predicted responsiveness.  Facebook has completed its first-level review of the documents and inclusive threads that the model identified as likely to be responsive and is in the process of completing its review of the remaining documents and inclusive emails in the review population, which the model has identified as likely to be non-responsive.

Based on the application of these methods and tools and the sampling of remaining documents, Facebook anticipates that the remaining unreviewed documents will be largely non-responsive.

**Request (iv)(2):  "To date, Facebook has produced 1,959,618 pages over 45 productions, in addition to more than 500 pages of interrogatory responses."  See Opposition to Motion to Compel TAR, at 10.  How many documents comprise the 1,959,618 pages stated above?  Do the 1,959,618 pages stated above include documents from the government productions?**

The numbers quoted in this question have changed since Facebook filed its Opposition, as Facebook made an additional production to Plaintiffs on September 21, 2021.  Including that production, Facebook has now produced 516,837 documents to Plaintiffs, comprising 2,014,463 pages.  Those figures include Facebook's cloned productions of the documents produced to government regulators.

of email and chat documents that will be reviewed and potentially produced will be only a subset of the number of email and chat documents against which the search terms were run.

Gibson, Dunn &
Crutcher LLP

1

2      Dated:  September 30, 2021          **GIBSON, DUNN & CRUTCHER, LLP**

3                                         By:  /s/ Russell H. Falconer
                                          Orin Snyder (*pro hac vice*)
4                                         osnyder@gibsondunn.com
                                          200 Park Avenue
5                                         New York, NY 10166-0193
                                          Telephone:  212.351.4000
                                          Facsimile:  212.351.4035
6

7                                         Deborah Stein (SBN 224570)
                                          dstein@gibsondunn.com
8                                         333 South Grand Avenue
                                          Los Angeles, CA 90071-3197
9                                         Telephone:  213.229.7000
                                          Facsimile:  213.229.7520

10                                        Joshua S. Lipshutz (SBN 242557)
                                          jlipshutz@gibsondunn.com
11                                        1050 Connecticut Avenue, N.W.
                                          Washington, DC 20036-5306
12                                        Telephone:  202.955.8500
                                          Facsimile:  202.467.0539
13

14                                        Russell H. Falconer
                                          rfalconer@gibsondunn.com
15                                        2001 Ross Avenue Suite 2100
                                          Dallas, TX 75201
                                          Telephone:  214.698.3170
16

17                                        Kristin A. Linsley (SBN 154148)
                                          klinsley@gibsondunn.com
18                                        Martie Kutscher (SBN 302650)
                                          mkutscherclark@gibsondunn.com
19                                        555 Mission Street, Suite 3000
                                          San Francisco, CA 94105-0921
20                                        Telephone:  415.393.8200
                                          Facsimile:  415.393.8306

21

22                                        *Attorneys for Defendant Facebook, Inc.*

23

24

25

26

27

28

# EXHIBIT F

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **DECLARATION OF DENNY THONG IN SUPPORT OF FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL TAR** |

Gibson, Dunn &
Crutcher LLP

**CONFIDENTIAL**

1.      My name is Denny Thong.  I am a senior Director – eDiscovery – Americas at Ankura Consulting Group, LLC ("Ankura").  I have worked for Ankura for just under a year and have worked in the eDiscovery space for nearly 15 years.

2.      I am Senior Director in-charge of the project team working on the *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-MD-02843-VC (N.D. Cal.) (the "MDL") for our client Facebook, Inc. ("Facebook").  Facebook is represented by Gibson, Dunn & Crutcher LLP ("Gibson Dunn") in that matter.  My team works closely with Facebook and Gibson Dunn to manage document processing, review, and production in the MDL.

3.      Facebook provides the documents it collects for review in the MDL to Ankura for processing, accompanied by standardized instructions for processing, including whether the documents will be deduplicated against other documents.   Ankura stages and loads all documents it receives from Facebook into the processing database; Ankura does not use analytics or other tools to reduce the number of documents ingested into the processing database.

4.      In that processing database, Ankura processes and de-duplicates these documents using methods permitted by the Section L of Appendix A to the Stipulation and Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Protocol").  Ankura also filters out common system files as permitted by Section F of the ESI Protocol.  Ankura then applies the agreed-upon search strings to the agreed-upon  custodial documents in the processing database.  The resulting documents, including full families, are transferred to the Relativity database that is used to review documents.  Ankura does not use any other tools or analytics to reduce the number of documents that are transferred from the processing database to the review database.

5.      The total review population in the review database is approximately 6 million documents.  Ankura has not applied analytics or used any other tools to remove documents from the review database.  Ankura has only applied analytics or other tools to documents in the review database

**CONFIDENTIAL**

at the direction of Gibson Dunn or Facebook.

6.     At the direction of Gibson Dunn and Facebook, Ankura has applied Ankura's Cluster Analysis tool, Relativity's Assisted Review Active Learning tool, and Ankura's Email Thread Application to documents in the review database.  These tools have been used to prioritize and elevate documents for human review within the review database.  Ankura has not used any analytics or other methods or tools to remove documents from the review database.  Except as described in paragraphs 7 and 8 below, Ankura has not applied analytics or any other tools to remove documents from the queue for human review.

7.     As Facebook has disclosed to Plaintiffs, Ankura has used email threading analysis to suppress emails identified as being Lesser Inclusive thread members of Last In Time Emails, as defined in Section F of the ESI Protocol, from review batches.  These Lesser Inclusive emails have been suppressed from review, but they have not been removed from the review database.  Threading has only been applied to suppress Lesser Inclusive emails from review (as permitted by Section F of the ESI Protocol), not other types of documents.

8.     In addition, Ankura has worked with Gibson Dunn to identify certain categories of non-substantive documents, as defined under Section F of the ESI Protocol, including non-substantive embedded images and certain system files, and suppress them prior to production.  If a parent document of one of these types of non-substantive documents is included in a production, the non-substantive family members are produced along with it, as required by ESI Protocol.  While these non-substantive documents have been suppressed prior to production where consistent with Section F of the ESI Protocol, Ankura has not used analytics tools to remove these non-substantive documents from the review database.

9.     Ankura has not used any other tools or analytics to exclude or remove documents from the review database or exclude or remove documents within the review database from the queue for

CONFIDENTIAL

human review.

       I declare under penalty of perjury that the foregoing is true and correct, and that I executed this Declaration on October 7, 2021, in Irvine, California.

Denny Thong

_____

Senior Director – eDiscovery – Americas
Ankura

**CONFIDENTIAL**

## <u>PROOF OF SERVICE BY E-Mail</u>

Re: In re: Facebook, Inc. Consumer Privacy User Profile Litigation (Special Master)
Reference No. 1200058674

I, Anne Lieu, not a party to the within action, hereby declare that on  October 9, 2021, I served the

attached Supplemental Order Regarding The Use of TAR on the parties in the within action by electronic mail

El Monte, CALIFORNIA, addressed as follows:

Martie P. Kutscher Clark Esq.
Gibson Dunn & Crutcher
1881 Page Mill Rd.
Palo Alto, CA   94304-1125
Phone: 650-849-5300
mkutscher@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Deborah L. Stein Esq.
Alexander P. Swanson Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA   90071-3197
Phone: 213-229-7000
dstein@gibsondunn.com
aswanson@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

David J. Ko Esq.
Derek W. Loeser Esq.
Cari C. Laufenberg Esq.
Keller Rohrback LLP
1201 Third Ave.
Suite 3200
Seattle, WA   98101-3052
Phone: 206-623-1900
dko@kellerrohrback.com
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Chris Springer Esq.
Keller Rohrback LLP
801 Garden St.
Suite 301
Santa Barbara, CA   93101
Phone: 805-456-1496
cspringer@kellerrohrback.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Lesley E. Weaver Esq.
Ms. Anne Davis
Matthew Montgomery Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
   Parties Represented:
   Bridgett Burk
   Cheryl Senko
   Jason Ariciu
   Jordan O'Hara
   Rev. Anthony Bell
   Samuel Armstrong
   Steven Akins
   Terry Fischer
   Tyler King

Matthew S. Melamed Esq.
Angelica M. Ornelas Esq.
Joshua D. Samra Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com
   Parties Represented:
   Bridgett Burk
   Cheryl Senko
   Jason Ariciu
   Jordan O'Hara
   Rev. Anthony Bell
   Samuel Armstrong
   Steven Akins
   Terry Fischer
   Tyler King

Orin S. Snyder Esq.
Gibson Dunn & Crutcher
200 Park Ave.
47th Floor
New York, NY   10166-0193
Phone: 212-351-4000
osnyder@gibsondunn.com
   Parties Represented:
   Facebook, Inc.

Joshua S. Lipshutz Esq.
Gibson Dunn & Crutcher
1050 Connecticut Ave NW
Washington, DC   20036
Phone: 202-9558500
JLipshutz@gibsondunn.com
   Parties Represented:
   Facebook, Inc.

Russell H. Falconer Esq.
Gibson Dunn & Crutcher
2001 Ross Ave.
Suite 2100
Dallas, TX   75201
Phone: 214-698-3100
rfalconer@gibsondunn.com
   Parties Represented:
   Facebook, Inc.

Colin B. Davis Esq.
Gibson Dunn & Crutcher
3161 Michelson Dr.
Irvine, CA   92612-4412
Phone: 949-451-3800
cdavis@gibsondunn.com
   Parties Represented:
   Facebook, Inc.

Ms. Laura C. Mumm
Gibson Dunn & Crutcher
200 Park Ave.

New York, NY   10166
Phone: 212-351-4000
LMumm@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

       I declare under penalty of perjury the foregoing to be true and correct. Executed at El Monte,

CALIFORNIA on  October 9, 2021.


/s/ Anne Lieu
Anne Lieu
JAMS
alieu@jamsadr.com