# EXHIBIT A

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | MDL No. 2843<br>CASE NO. 3:18-MD-02843-VC-JSC<br><br>Hon. Vince Chhabria<br>Courtroom 4 – 17th Floor<br>Special Master: Daniel Garrie, Esq.<br><br>**ORDER REGARDING MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**<br><br>**JAMS REF. NO: 1200058674** |

# BACKGROUND

1.     In September of 2021, Special Master Daniel Garrie ("Special Master Garrie") and Judge Gail Andler declared impasse on the issue of whether Facebook should be compelled to add Mark Zuckerberg ("Zuckerberg") and Sheryl Sandberg ("Sandberg") as document custodians.

2.     Plaintiffs submitted their opening brief on this issue on September 23, 2021. Plaintiffs argue that Zuckerberg and Sandberg should be added as document custodians because (a) as the key decision maker on issues related to user privacy, Zuckerberg's documents are uniquely relevant to plaintiffs' claims; (b) Sandberg's documents are critical as she oversees Facebook's monetization of user data and Facebook's messaging regarding user data misuse; (c) adding Zuckerberg and Sandberg as document custodians is proportional to the needs of the case and will not cause undue burden; (d) Facebook should commence with searching the Zuckerberg and Sandberg files in time to meet the January 31, 2022 deadline for substantial completion of document production; and (e) the Apex Doctrine does not apply. <u>See</u> Exhibit A (Motion to Compel Mark Zuckerberg and Sheryl Sandberg as Document Custodians).

3.     Facebook submitted their opposition on October 4, 2021. Facebook argues that (a) Plaintiffs fail to show that Zuckerberg and Sandberg are likely to have documents that fill substantial gaps in Facebook's comprehensive document production; and (b) to the extent that any collections from Zuckerberg and Sandberg are deemed necessary, performing targeted collections after the January 31, 2022 deadline for substantial completion of document production would be appropriate and would not delay discovery as discovery does not close until June 2022. <u>See</u> Exhibit B (Opposition to Plaintiffs' Motion to Compel Mark Zuckerberg and Sheryl Sandberg as Document Custodians).

**ORDER REGARDING MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**

4.      Plaintiffs submitted their reply on October 13, 2021. Plaintiffs argue that (a) Zuckerberg and Sandberg are likely to possess unique and relevant information because their knowledge and statements are at the heart of Plaintiffs' allegations, including their detailed and intimate knowledge of friend sharing, whitelisting, business partners, and third party misuse of information; and (b) a targeted search of Zuckerberg's and Sandberg's files is appropriate. See Exhibit C (Reply in Support of Motion to Compel Mark Zuckerberg and Sheryl Sandberg as Document Custodians).

## FINDINGS

5.      Special Master Garrie finds that requiring a party to compel the designation of additional custodians requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated. *See Handloser v. HCL America, Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 7405686, at *2 (N.D. Cal. December 17, 2020) (refusing to order designation of additional custodians where plaintiffs failed to show why they "expect to discover information from these custodians that differs from discovery they have already obtained from the others"); see also In re EpiPen Mktg., Sales Practices and Antitrust Litigation No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kans. March 15, 2018) ("party moving to compel additional proposed custodians 'must demonstrate that the additional requested custodians would provide unique relevant information not already obtained'" (quoting *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013))).[1]

---

[1] This requirement flows from the prescriptions in Rule 26 that discovery must be proportional to the needs of the case and that "the frequency or extent of discovery" must be limited if it is "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b).

**ORDER REGARDING MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**

6.     Special Master Garrie finds that it is likely that Zuckerberg and Sandberg possess information relevant to the Plaintiffs' allegations and differs from discovery already obtained from other custodians.[2]

7.     Special Master Garrie finds that Zuckerberg and Sandberg are likely to possess unique, relevant information because they were key decision-makers related to issues at the heart of Plaintiffs' allegations, including friend sharing, whitelisting, business partners, and third-party misuse of information. For instance, in a 2012 email, Zuckerberg indicates that he was involved in both the high-level decision making and execution of a plan ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ See Exhibit 10 to Plain-tiffs' Motion to Compel Zuckerberg and Sandberg as Custodians; see also Exhibit 12 to Plain-tiffs' Motion to Compel Zuckerberg and Sandberg as Custodians ███████████████

████████████████████. Sandberg also indicated her involvement as a key deci-sion maker in her communications related to the above. See Exhibit 12 to Plaintiffs' Motion to Compel Zuckerberg and Sandberg as Custodians ███████████████████

███████████████████████████████████████████████████

██████████████████████.

8.     Special Master Garrie finds that Zuckerberg and Sandberg, as key decision mak-ers related to the issues of this case, are likely to possess at least some of the following categories of relevant information not available through other data sources:[3]

---

[2] As Facebook does not contend that Zuckerberg and Sandberg are likely to possess relevant documents, the findings herein will address only Facebook's argument that Zuckerberg and Sandberg do not possess information not available from other data sources.

i.  <u>Communications between Zuckerberg and Sandberg.</u> It is possible that Zuckerberg and Sandberg communicated with each other directly regarding issues relevant to Plaintiffs' allegations and did not include any of the other custodians in the communications.

ii.  <u>Communications between Zuckerberg and/or Sandberg and the board of directors.</u> Given Zuckerberg's and Sandberg's roles as key decision makers regarding issues relevant to Plaintiffs' allegations, it is possible that one or both of them communicated directly with members of the board of directors regarding these issues without including other custodians in the communications.

iii. <u>Communications between Zuckerberg and/or Sandberg and third parties.</u> Given Zuckerberg's and Sandberg's roles as key decision makers regarding issues relevant to Plaintiffs' allegations, it is possible that one or both of them communicated directly with relevant third parties, such as business partners, vendors, etc., regarding these issues without including other custodians in the communications.

iv. <u>Communications between Zuckerberg and/or Sandberg and non-custodian subordinates.</u> It is possible that Zuckerberg and/or Sandberg communicated with non-custodian subordinates regarding issues relevant to Plaintiffs' allegations and Zuckerberg and Sandberg without including other custodians in the communications.

9.  Special Master Garrie finds that the benefit of collecting, reviewing, producing the above information prior to the January 31, 2022 deadline for substantial document production outweighs the burden imposed on Facebook because Facebook has represented that over two-thirds of its review is complete, and there remains ample time for Facebook to complete this targeted collection and review with an appropriate protocol. See <u>Williams v. Apple, Inc.</u>, No. 19-cv-04700-LHK (VKD), 2020 WL 5107639, at *2 (N.D. Cal. August 31, 2020) ("[Defendant's] burden can be substantially mitigated by application of appropriately narrow search terms and de-duplication of ESI across custodians.").

---

[3] Special Master Garrie notes that it is not certain that any of the information listed below exists and Zuckerberg and Sandberg may possess other categories of relevant information not available through other sources. The parties are to meet confer regarding potential additional categories of relevant information not available through other sources as discussed in ¶ 8 below.

**ORDER REGARDING MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**

**ORDER**

10.     No later than November 19, 2021 the parties are to meet and confer and submit a joint proposed protocol for performing a search and collection targeting, at a minimum, the categories of communications identified above. The targeted search and collection of Zuckerberg's and Sandberg's files are to be completed prior to the January 31, 2022 deadline for substantial completion of document production. The parties may propose additional categories of relevant documents that are likely to be in Zuckerberg's or Sandberg's possession and not available through other data sources. The joint proposed protocol is to identify any areas of disagreement between the parties.

11.     Special Master Garrie may modify the proposed protocol at his discretion and hold a hearing to resolve any disputes related to the proposed protocol. Special Master Garrie will then issue an order with the final protocol.

**IT IS SO ORDERED.**

October 21, 2021

_____
Daniel Garrie
Discovery Special Master

**ORDER REGARDING MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**

# EXHIBIT A

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley Weaver (Cal. Bar No.191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**<br><br>Judge: Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I.      PLAINTIFFS' SEPARATE STATEMENT ........................................................................1

II.     INTRODUCTION ..........................................................................................................1

III.    RELEVANT BACKGROUND .......................................................................................2

IV.     LEGAL STANDARD .....................................................................................................3

V.      ARGUMENT ..................................................................................................................3

        A.  Mark Zuckerberg and Sheryl Sandberg Possess Relevant Information........................ 3

            1.  As the Key Decision Maker on Issues Related to User Privacy, Zuckerberg's
                Documents Are Uniquely Relevant to Plaintiffs' Claims ................................................ 5

            2.  Sandberg's Documents Are Critical as She Oversees Facebook's Monetization of
                User Data and Facebook's Messaging Regarding User Data Misuse ........................... 7

        B.  Adding Mark Zuckerberg and Sheryl Sandberg as Document Custodians Is
            Proportional to the Needs of the Case and Will Not Cause Undue Burden ................. 11

        C.  Given the Case Schedule, Facebook Should Commence with Searching These
            Custodial Files ............................................................................................................... 12

        D.  The Apex Doctrine Does Not Apply .......................................................................... 13

VI.     CONCLUSION ..............................................................................................................14

# TABLE OF AUTHORITIES

***Cases***

*Alta Devices, Inc. v. LG Elecs.*, Inc., No. 18-cv-00404-LHK-VKD, 2019 WL 8757255
(N.D. Cal. Feb. 20, 2019) ......................................................................................... 13

*Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2021 WL 2345972
(S.D.W. Va. June 8, 2021).......................................................................................... 13

*Dyson, Inc. v. Sharkninja Operating LLC*, No. 1:14-CV-0779, 2016 WL 1613489
(N.D. Ill. Apr. 22, 2016)............................................................................................. 13

*In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2020 WL 6750397
(M.D. Tenn. Nov. 16, 2020) ......................................................................................... 4

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*,
No. 17-md-2785-DDC-TJJ, 2018 WL 1440923 (D. Kan. Mar. 15, 2018)................... 4

*MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-CV-00366-JDL, 2016 WL 9459260
(D. Me. Aug. 9, 2016).................................................................................................... 4

*Oracle Am., Inc. v. Google Inc.*, No. 10-CV-03561-WHA-DMR, 2015 WL 7775243
(N.D. Cal. Dec. 3, 2015)............................................................................................... 3

*Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738 (E.D.N.C. 2017)................... 13

*Shenwick v. Twitter*, No. 16-CV-05314-JST (SK), 2018 WL 833085
(N.D. Cal. Feb. 7, 2018) ............................................................................................... 4

***Statutes***

Fed. R. Civ. P. 26(b)(1)............................................................................................. 3, 10

**I.       PLAINTIFFS' SEPARATE STATEMENT**

Pursuant to ¶ 6 of the Protocol for Resolving Discovery Disputes—Order No. 1, Dkt. No. 733, Plaintiffs' Separate Statement Regarding Mark Zuckerberg and Sheryl Sandberg as Document Custodians is provided at Attachment A.

**II.      INTRODUCTION**

Mark Zuckerberg (Facebook's Chairman, Chief Executive Officer, and controlling stakeholder) and Sheryl Sandberg (Facebook's Chief Operating Officer and a director) shaped Facebook's business decisions regarding the ways Facebook shared user information with and collected user information from third parties, devised and executed the plan for monetizing user information, and led the internal and external response to the Cambridge Analytica scandal. They each currently play and have played key roles as the public face of Facebook in response to repeated crises about privacy violations that are at the heart of Plaintiffs' allegations. Thus, they possess unique and critical information directly relevant to Plaintiffs' claims and Facebook's defenses. Under Federal Rule of Civil Procedure 26, they are proper custodians and their relevant custodial files should be produced.

Facebook does not contest that Zuckerberg's and Sandberg's custodial files contain relevant information. Nor could they credibly do so. Zuckerberg crafted the design of the open platform, through which Facebook first made users' content and information available to third party developers. He led the "Platform Simplification" transition in response to the FTC's 2012 Consent Order, whereby Facebook determined it would restrict the sharing of some aspects of user content and information, but would "whitelist" certain business partners and developers that reciprocated by providing content and information back to Facebook. The evidence shows that Zuckerberg was in the weeds, participating in decisions ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████. And Zuckerberg initiated the ADI, Facebook's response to the Cambridge Analytica scandal that resulted in the suspension of tens of thousands of other apps. He, thus, has detailed, specific and unique knowledge about critical facts in this case.

Sandberg also is directly involved in issues at the core of the case. She led Facebook's effort to monetize user data by making it available to developers and advertisers. She made numerous public statements about the importance of user privacy. And she was at the forefront of Facebook's response to the Cambridge Analytica scandal, sending internal emails ███████ ████████████████████████████████████████████████████████████ ████████ .

It is Plaintiffs' understanding that Facebook does not refuse to *ever* search Zuckerberg's and Sandberg's custodial files, but rather objects to doing so *now*, for two reasons. First, Facebook has raised the "apex doctrine." That doctrine, however, is inapt. The doctrine does not apply to whether high-ranking executives should be added as document custodians. Even if the doctrine were applicable, it would not shield Zuckerberg and Sandberg because of their direct involvement and unique knowledge regarding key events and facts at issue in this case. *See* Order Following April 14, 2021 Discovery Conference, *In re Juul Labs, Inc., Mktg. Sales Practices*, No. 19-md-02913-WHO (JSC) (N.D. Cal.), Dkt. No. 1704 (ordering deposition of Altria CEO), Ex. 1.[1] Second, Facebook has said Plaintiffs should wait. But Judge Chhabria has ordered substantial completion of document production in four months, and the parties continue to be at loggerheads regarding numerous core aspects of production (including, for example, the definition of relevance, the production of Plaintiffs' data and non-custodial ESI, and other issues not yet briefed to the Special Master). Delaying resolution of this issue will make meeting the substantial completion deadline all-but-impossible. In the end, this is likely Facebook's goal. If it is able to delay this issue long enough, it will run out the clock, preventing Plaintiffs from timely securing relevant custodial documents. But given their intimate involvement in the issues giving rise to Plaintiffs' allegations, it is already past time Zuckerberg and Sandberg were added as custodians and their relevant custodial files produced.

## III.   RELEVANT BACKGROUND

On February 21, 2020, in their first communication to Facebook about the custodians

---

[1] Unless specified otherwise, all exhibit citations refer to the Declaration of Lesley Weaver filed herewith.

whose files should be collected, reviewed, and produced, Plaintiffs identified Zuckerberg and Sandberg. Ex. 2 at 5-6.  The parties ultimately agreed on a set of 72 initial custodians, and the Court ordered the addition of nine others on May 15, 2020. Dkt No. 436, Ex. 3.

On November 2020, Plaintiffs again requested that Facebook add Zuckerberg and Sandberg as document custodians. Plaintiffs raised the issue to Judge Corley, who ordered that the "addition of further custodians for discovery purposes is premature at this time." Dkt. No. 588, Ex. 4 at 2.

On July 19, 2021, Judge Chhabria issued an Order Setting Case Schedule, with depositions set to begin on November 1, 2021 and document production to be substantially completed by January 2022. Dkt. No. 706, Ex. 5. Thus, there is now less than four months remaining for Facebook to complete production from the agreed custodians, non-custodial sources, and new custodians, such as Zuckerberg and Sandberg.

## IV.    LEGAL STANDARD

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In determining whether discovery is "proportional to the needs of the case," a Court must assess "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* This assessment applies to whether to add a document custodian. *Oracle Am., Inc. v. Google Inc.*, No. 10-CV-03561-WHA-DMR, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015).

## V.    ARGUMENT

### A.    Mark Zuckerberg and Sheryl Sandberg Possess Relevant Information

Zuckerberg and Sandberg possess unique information that is core to the claims at issue. As head of global policy management Monica Bickert publicly stated: "With anything that is very big that a lot of people are talking about, we will absolutely loop them in . . . . Any time that we're dealing with something that is close to the line or it's something where it's not really clear

1   how the policies apply or it's something that's particularly important, we will, at the very least,

2   send an email up to Mark and Sheryl so that they know what's going on[.]" Sissi Cao, Inside

3   Facebook: What's It Really Like to Work With Zuckerberg, Sandberg?, Observer (Sept. 10,

4   2019), https://observer.com/2019/09/facebook-execs-reveal-working-with-mark-zuckerberg-

5   sheryl-sandberg/, Ex. 6. She continued: "Very often, we will end up having a back-and-forth with

6   them about why we're making the decision we're making, and make sure they're OK with it." *Id.*

7   Evidence gathered to date from Facebook and public sources shows that  Zuckerberg and

8   Sandberg drove the decisions that gave rise to Plaintiffs' allegations.

9          Courts regularly add high-ranking executives as custodians where their files are likely to

10  contain relevant information. This is particularly true where, as here, the executive is intimately

11  involved in the business decisions at issue in the litigation. In *Shenwick v. Twitter*, for example,

12  the Court ordered Twitter CEO Jack Dorsey be added as a document custodian given his

13  involvement as Chair and CEO during the relevant class period, and because he—like Zuckerberg

14  and Sandberg with respect to the Cambridge Analytica scandal—was the person who "came

15  clean" to the public about the true state of affairs of Twitter's user metrics. No. 16-CV-05314-JST

16  (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018). Other courts have done the same. *See,*

17  *e.g.*, *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2020 WL 6750397, at *4

18  (M.D. Tenn. Nov. 16, 2020) (adding senior executives as custodians where they were likely to

19  possess relevant information); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices*

20  *and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *3-4 (D. Kan. Mar. 15,

21  2018) (adding two former CEOs as custodians who were "actively involved," provided

22  "guidance," and were part of the team making decisions regarding the defendant's operations);

23  *MariCal, Inc. v. Cooke Aquaculture, Inc.*, No. 1:14-CV-00366-JDL, 2016 WL 9459260, at *2 (D.

24  Me. Aug. 9, 2016) (adding the CEO as a custodian because he "likely was involved in

25  discussions" regarding the patents at issue).

26          Zuckerberg and Sandberg were intimately involved in Facebook's conduct at issue in this

27  litigation and should be added as document custodians.

28

### 1. As the Key Decision Maker on Issues Related to User Privacy, Zuckerberg's Documents Are Uniquely Relevant to Plaintiffs' Claims

News articles and produced documents offer glimpses of Zuckerberg's core role in the issues central to this litigation: privacy, consent, friend sharing, whitelisting, business partner access, and enforcement. His custodial files, including emails sent and received, are certain to be probative of Plaintiffs' claims.

For example, Zuckerberg decided whether to enforce Facebook's policies against apps taking users data. According to former Platform Operations Manager Sandy Parakilas, who led privacy and policy compliance in 2011-12, "any decision to ban an app" for violating Facebook's policies related to user information "required the personal approval of the chief executive." Paul Lewis, *'Utterly horrifying': ex-Facebook insider says covert data harvesting was routine*, The Guardian (Mar. 20, 2018) https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas, Ex. 7.

Internal documents demonstrate other instances of Zuckerberg's day to day involvement. For instance, Zuckerberg ███████████████████████████████████████████████ ███████████. *See* FB-CA-MDL-00185348, Ex. 8 at 5348 ███████████████████. Zuckerberg also ██████████████████████████████████████████ ███████████████████████████████████████████. FB-CA-MDL-00172723, Ex. 9 at 2723-2729.

Zuckerberg was also ██████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ FB-CA-MDL-00174292, Ex. 10 at 4293. His decision enabled Facebook to build substantially more robust user profiles.

More generally, Zuckerberg ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FB-CA-MDL-00183209, Ex. 11 at 3210. The same month,

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮ FB-CA-MDL-01681584, Ex. 12 at 1584. ▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮ *Id.*

7 　　　　Later internal documents show that Zuckerberg played a major role in Facebook's

8 investigation and response to the 2018 Cambridge Analytica scandal—▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮. In ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮. FB-CA-MDL-01136583, Ex. 13 at 6588-6589. On March 21, 2018, Zuckerberg

12 "share[d] an update on the Cambridge Analytica situation."

13 https://www.facebook.com/zuck/posts/10104712037900071, Ex. 14. He proclaimed Facebook's

14 duty to protect users' data from misuse by third-party developers, which is at the heart of this

15 case: "We have a responsibility to protect your data, and if we can't then we don't deserve to

16 serve you." *Id.* He also announced that Facebook "will investigate all apps that had access to

17 large amounts of information before we changed our platform" in 2014, "will ban any developer

18 from our platform that does not agree to a thorough audit," and banning "developers that misused

19 personally identifiable information[.]" *Id.* This statement initiated the App Developer

20 Investigation. Notably, Judge Corley recently ordered production of documents from the ADI,

21 relying heavily on Zuckerberg's public statements in her order. Dkt. No. 736, Ex. 15.

22 　　　　Zuckerberg's role in Facebook's response to Cambridge Analytica was widely publicized.

23 The Wall Street Journal has reported that Zuckerberg "in 2018 took on the role of a wartime

24 leader who needed to act quickly and, sometimes, unilaterally." Deepa Seetharaman and Emily

25 Glazer, *Mark Zuckerberg Asserts Control of Facebook, Pushing Aside Dissenters*, The Wall

26 Street Journal (Apr. 28, 2020) https://www.wsj.com/articles/mark-zuckerberg-asserts-control-of-

27 facebook-pushing-aside-dissenters-11588106984, Ex. 16. Other reporting confirmed that in the

28

immediate aftermath Zuckerberg and Sandberg took charge of communications: Zuckerberg "ordered staff to shut down external communications until he had a grasp of the situation [and] directed Sandberg and the legal and security teams to scour emails, memos, and messages among Facebook employees, Kogan, and Cambridge Analytica . . . ." Sheera Frenkel and Cecilia Kang, *An Ugly Truth,* at 155 (Harper Collins 2021). The actions consolidated in this MDL initially arose out of the Cambridge Analytica scandal; documents relating to Zuckerberg's leadership of and involvement in Facebook's response are highly relevant to Plaintiffs' claims.

Finally, Zuckerberg personally made numerous public commitments about Facebook's privacy practices that go directly to the heart of the claims and defenses in this case. For example: in a 2010 interview, he stated that "applications have to ask for permission for anything you've set to be private"; in a November 2011 post, he explained that "everyone needs complete control over who they share with [via Facebook] at all times"; he told shareholders that "giving people control over what they share is a fundamental principle" of the social graph; and he promised users Facebook had created "the kind of privacy that no one had ever seen before." *See Anita Balakrishnan et al., Mark Zuckerberg has been talking about privacy for 15 years—here's almost everything he's said, CNBC* (Apr. 9, 2018), https://www.cnbc.com/2018/03/21/facebook-ceo-mark-zuckerbergs-statements-on-privacy-2003-2018.html, Ex. 17.

Zuckerberg's documents will shed light on the consistency, or lack thereof, of Facebook's external representations with its internal practices. He knows what Facebook says and what Facebook does, and his files will shed light on Facebook's knowledge and intent in relation to its representations. Facebook's misrepresentations, and Zuckerberg's knowledge are central to Plaintiffs' privacy, contract, and negligence claims, as well as the punitive damages.

**2.    Sandberg's Documents Are Critical as She Oversees Facebook's Monetization of User Data and Facebook's Messaging Regarding User Data Misuse**

Around the same time Zuckerberg was exploring ways to ensure that users perceived Facebook as protective of their information while transitioning to a platform that allowed all app developers to access users' and friends' information, he hired Sandberg to figure out how to

1    monetize the content and information Facebook collected. In a 2009 article, Zuckerberg is quoted

2    as explaining that "'[Sandberg] handles monetization and works on different efforts with the ad

3    products; I spend more time on product and technical strategy.'" *Facebook's Sheryl Sandberg*,

4    Forbes (Aug. 20, 2009) https://www.forbes.com/forbes/2009/0907/power-women-09-facebook-

5    sheryl-sandberg.html?sh=5f37159f3873, Ex. 18. As the article explained, Zuckerberg's "efforts to

6    exploit user information provoked outrage among members, who felt their privacy was being

7    violated. . . . This is where Sandberg comes in—helping to put a more palatable façade on the

8    touchy business of selling user data." *Id.*

9          As former FTC technologist Ashkan Soltani testified before the U.K. Parliament,

10    Facebook's business model and priority is the "monetization of data" and "[Sandberg] is the one

11    who makes the monetisation calls and makes the priorities[.]" Ashkan Soltani Testimony to U.K.

12    House of Commons Digital, Culture, Media and Sport Committee (Nov. 27, 2018)

13    http://data.parliament.uk/writtenevidence/committeeevidence.svc/evidencedocument/digital-

14    culture-media-and-sport-committee/disinformation-and-fake-news/oral/92924.html, Ex. 19.

15    Soltani further testified that "[Sandberg] is who I would want to see [testify] on these business

16    decisions, and specifically on the monetisations and the decisions of what to prioritise." *Id.* at

17    Q4348. To state the obvious, the "touchy business of selling user data" is also at the heart of this

18    case. Users did not consent to the selling and unauthorized disclosure of their content and

19    information.

20          Sandberg will also have unique information about Facebook's decision to exempt certain

21    developers and strategic partners from its implementing restrictions on third parties' access to

22    users' private information. Facebook accomplished this through a process called "whitelisting"

23    after it told users that Facebook would cut off such access. *See*, *e.g.* FB-CA-MDL-00183225,

24    Ex. 20 at 3225 ███████████████████████████████████. For

25    example, ████████████████████████████████████

26    ███████████████████████████████████████████████

27    ███████████████████████████████████████

28

PLAINTIFFS' MOTION TO COMPEL       8       MDL NO. 2843
ZUCKERBERG AND SANDBERG AS       CASE NO. 18-MD-02843-VC-JSC
DOCUMENT CUSTODIANS

1 ██████████████████████████████████████████████, Ex. 21 at 6-7. ███████████

2 ████████████████████████████████████████████████████████████

3 ██████████████████████████████ *Id.* at 2.

4      In addition, Sandberg will have information about Facebook's violation of its duty to take

5 reasonable steps to protect users' information. For instance, ██████████████████████

6 ███████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 FB-CA-MDL-00161290, Ex. 22 at 1291. █████████████████████████████

10 ████████████████████████████████████████████████████ *Id.* █

11 ███████████████████████████████████████████████████████

12 █████████████████████████████████████████████████████████

13 ████████████████████████████████████████████ *Id.* █████████████

14 █████████████████████████████████████████████████████████

15 █████████████████████████████████████████████████████████

16 ████████████████████ *Id.* at 1290. ███████████████████████

17 █████████████████████████████████████████████████████ *See*

18 *also* FB-CA-MDL-00165325, Ex. 23 at 5326 ████████████████████████

19 ████████████████████████████████████████████████

20 ██████████.

21      Moreover, Sandberg's documents will shed considerable additional light on the

22 Cambridge Analytica scandal. Indeed, ██████████████████████████████

23 ████████████████████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████ FB-CA-MDL-01184406, Ex. 24 at 1045. Documents

4 from Sandberg's custodial files █████████████████████████████████

5 █████ should be produced given their relevance to Plaintiffs' claims.

6      Sandberg's core involvement in Facebook's response to the Cambridge Analytica scandal

7 ███████████████████████████████████████. Shortly after the scandal

8 became public, ██████████████████████████████████████

9 ████████████████████████████████████████

10 █████████████████████ FB-CA-MDL-01191045, Ex. 25 at Slide 1. █████

11 ████████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ████████████████████████████████████████████

14 █████████████████████████████████ *Id.* at Slides 4-5. ████

15 ████████████████████████████████████████████

16 ████████████████████████████ *Id.* at Slide 6.

17      Like Zuckerberg, Sandberg was personally involved in crafting and delivering Facebook's

18 message about users' privacy and their ability to control access to their content and information

19 on Facebook. She stated publicly that users' "trust is sacred, that privacy is the most important

20 thing we do," and that Facebook is "the most privacy-focused place for anyone to share

21 anything." Erick Schonfeld, *Zuckerberg Talks to Charlie Rose About Steve Jobs, IPOs, And*

22 *Google's "Little Version of Facebook"*, TechCrunch (Nov. 7, 2011)

23 https://techcrunch.com/2011/11/07/zuckerberg-talks-to-charlie-rose-about-war-ipos-and-googles-

24 little-version-of-facebook/, Ex. 26. ███████████████████████████

25 ████████████████████ *See* FB-CA-MDL-01815330, Ex. 27 at 5330 ████████

26 ██████████████████████████████████████████

27 ██████ ; FB-CA-MDL-01681668, Ex. 28 at 1670 ███████████████████

28

PLAINTIFFS' MOTION TO COMPEL            10              MDL NO. 2843
ZUCKERBERG AND SANDBERG AS                   CASE NO. 18-MD-02843-VC-JSC
DOCUMENT CUSTODIANS

1 ████████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 ███████████ ; FB-CA-MDL-01152648, Ex. 29 at 2648-2649 ████████████████

4 ██████████████████████ .

Given Sandberg led Facebook's efforts to monetize users' information while at the same time shaping Facebook's public façade of respecting users' privacy, her custodial files are all but certain to contain core information relevant Plaintiffs' claims.

### B. Adding Mark Zuckerberg and Sheryl Sandberg as Document Custodians Is Proportional to the Needs of the Case and Will Not Cause Undue Burden

Facebook cannot credibly claim that collecting, searching and producing Zuckerberg and Sandberg custodian files would be unduly burdensome, duplicative or disproportionate to the needs of the case. Their texts, chats, and ephemeral communications should have been preserved, as Plaintiffs discussed with Facebook in 2018 in the first 26(f) meet and confer.

Rule 26(b)(1) requires consideration of the following factors as part of the proportionality analysis: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Each of these factors weigh in Plaintiffs' favor.

First, the issues at stake are of paramount importance. This case concerns a proposed class period of over 13 years, affecting millions of Facebook users, concerning Facebook's core promise to its users—that *users* control who can see their information. More acutely, the case concerns the revelation that Facebook did nothing to prevent the user data it shared with third parties from being misused, and that a few hundred thousand users could unknowingly expose the content and information of more than 80 million users to a developer who sold the data collection to a political advertising outfit that targeted users with voter-suppression messaging and may have swung a U.S. presidential election. The stakes are high.

Second, Facebook has control of Zuckerberg's and Sandberg's custodial files. Plaintiffs do not.

1    Third, Facebook has nearly unparalleled resources. For 2020, it reported revenues of $86

2    billion and cash, cash equivalents, and marketable securities of $61.95 billion in 2020.

3    Fourth, discovery from Zuckerberg and Sandberg will substantially advance the resolution

4    of this case. The evidence shows that they have documents uniquely relevant to the intentional

5    creation of the perception that Facebook was and is committed to privacy and user control, as

6    well as the reality of how users' content and information was shared and monetized. Zuckerberg

7    and Sandberg also have unique knowledge of the way Facebook responded to the investigations

8    and outcomes of the FTC investigations that led to the 2012 and 2019 Consent Decrees, the

9    Cambridge Analytica scandal, the revelation of Facebook's business partnerships, and other

10   issues.

11   Fifth, the benefit of this discovery far outweighs its burden. As set forth above,

12   Zuckerberg and Sandberg possess information that goes to the very heart of Plaintiffs' claims. No

13   one else is better able to discuss the user content and information Facebook made available and

14   monetized, the privacy promises it made, and what happened with Cambridge Analytica.

15   Plaintiffs only seek the collection, review, and production of two critical custodial files. Facebook

16   has already collected, reviewed, and is producing the files of 81 custodians. As Judge Chhabria

17   instructed, this is not the kind of case where it is enough to assert that adding Zuckerberg and

18   Sandberg as custodians will be expensive or overly burdensome. Tr. of the Mar. 5, 2020 Case

19   Mgmt. Conference, Ex. 30 at 29:3-12. The burdens are substantially outweighed by the benefits.

20   **C.    Given the Case Schedule, Facebook Should Commence with Searching These**
21        **Custodial Files**

22   Facebook does not contest that Zuckerberg and Sandberg possess relevant information,

23   and do not necessarily contest that they should be added as document custodians in this litigation.

24   Rather, Facebook argues that Plaintiffs' request (and this impasse) is premature. Plaintiffs

25   disagree for three reasons.

26   First, the production of documents from existing custodians does not eliminate the need

27   for the addition of Zuckerberg and Sandberg, as the latter likely contain unique communications

28   directly relevant to the case. *See e.g.* Ex. 9 at 2723, Ex. 23 at 5326, and Ex. 29 at 2652. Their

1    communications should not be shielded merely because a search of their documents did not take

2    place with other custodians. Thus, the completion of document production from existing

3    custodians will not obviate the need to include Zuckerberg's and Sandberg's custodial files in this

4    action. Regardless, Facebook recently told the Special Master that its custodial production was

5    almost complete. As it wrote in its opposition to Plaintiffs' motion regarding TAR, "Facebook

6    has now completed the majority of its review process." Facebook's Opp. to Mot. To Compel

7    TAR at 10. Thus, the time is ripe.

8          Second, adding Zuckerberg and Sandberg as document custodians now should allow

9    Facebook to collect, search, review and produce documents from their custodial files in time to

10   meet the January 31, 2022 deadline for substantial completion of document production. Since

11   custodial document production commenced in December 2020, Facebook's production has

12   averaged fewer than 10,000 documents per month. Given the glacial pace of Facebook's

13   production, this dispute should be resolved now.

14         Third, Facebook should not benefit from its glacial pace of production by tying

15   completion of production from existing custodians to the addition of new custodians. Plaintiffs

16   have no reason to believe Facebook will ever consent to the addition of Zuckerberg's and

17   Sandberg's custodial files. Facebook should not be permitted to run out the clock by promising to

18   consider at a later date what it should be compelled to do now.

19         **D.    The Apex Doctrine Does Not Apply**

20         Facebook has also raised the "apex doctrine" as a reason to hold off on or refuse

21   production of Zuckerberg's and Sandberg's custodial files, but it is inapt. The apex doctrine does

22   not apply to this dispute, which concerns whether senior executives Zuckerberg and Sandberg

23   should be added as document custodians. *See e.g. Alta Devices, Inc. v. LG Elecs.*, Inc., No. 18-cv-

24   00404-LHK-VKD, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (disagreeing "that simply

25   because a prospective custodian happens to be a senior executive, such custodian is not subject to

26   collection of responsive ESI."); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236,

27   2021 WL 2345972, at *3, n. 5 (S.D.W. Va. June 8, 2021) (the apex doctrine "typically applies

28

1   only to protect senior executives from attending costly and distracting depositions rather than

2   from merely collecting and producing documents.") (citation omitted); *Rosinbaum v. Flowers*

3   *Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017) ("In no case of which the court is aware

4   has the apex doctrine successfully been invoked to shield an executive from a request for

5   production of documents.") (citation omitted); *Dyson, Inc. v. Sharkninja Operating LLC*, No.

6   1:14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (declining to apply the apex

7   doctrine to quash a request for production of documents). In any event, Zuckerberg and Sandberg

8   clearly meet the standard. Judge Corley explained earlier this year that "usually when [the Apex

9   Doctrine is] employed, it's because you will have an employment discrimination case and the

10  plaintiff's lawyer wants to take the CEO or something where they are not involved at all." Tr. of

11  Apr. 14, 2021 Discovery Conference at 6:22-7:1, *In re Juul Labs, Inc., Mktg. Sales Practices*,

12  Ex. 31. It does not apply where the person "was involved" in the conduct at issue in a "big"

13  MDL. *Id.* at 7:2-3.

14  **VI.   CONCLUSION**

15       Mark Zuckerberg and Sheryl Sandberg possess unique and critical information relevant to

16  this action. Facebook should be ordered to add them as custodians and produce their relevant

17  custodial files.

18

19  Dated: September 22, 2021                              Respectfully submitted,

20  KELLER ROHRBACK L.L.P.                                 BLEICHMAR FONTI & AULD LLP

21  By:    */s/ Derek W. Loeser*                           By:    */s/ Lesley E. Weaver*
           Derek W. Loeser                                        Lesley E. Weaver
22

23  Derek W. Loeser (admitted *pro hac vice*)              Lesley E. Weaver (SBN 191305)
    Cari Campen Laufenberg (admitted *pro hac vice*)       Anne K. Davis (SBN 267909)
24  David Ko (admitted *pro hac vice*)                     Matthew S. Melamed (SBN 260272)
    Adele A. Daniel (admitted *pro hac vice*)              Angelica M. Ornelas (SBN 285929)
25  Benjamin Gould (SBN 250630)                            Joshua D. Samra (SBN 313050)
    1201 Third Avenue, Suite 3200                          555 12th Street, Suite 1600
26  Seattle, WA 98101                                      Oakland, CA 94607
    Tel.: (206) 623-1900                                   Tel.: (415) 445-4003
27  Fax: (206) 623-3384                                    Fax: (415) 445-4020
    dloeser@kellerrohrback.com                             lweaver@bfalaw.com
28  claufenberg@kellerrohrback.com                         adavis@bfalaw.com

dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

ATTACHMENT A

**PLAINTIFFS' SEPARATE STATEMENT**
**ISO MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| N/A<br><br>(The Special Master defined the dispute as: "Adding Mark Zuckerberg and Sheryl Sandberg as custodians and producing their relevant custodial files.") | N/A | 02/21/20: Plaintiffs request Zuckerberg and Sandberg on their initial list of proposed custodians.<br><br>5/12/2020: The parties agree to a set of 72 initial document custodians. ECF No. 431 at 10.<br><br>5/15/2020: Judge Corley ordered the addition of nine other document custodians. ECF No. 436.<br><br>11/16/2020: Plaintiffs write Facebook to propose four additional document custodians, including Mark Zuckerberg and Sheryl Sandberg.<br><br>12/11/2020: Judge Corley issues a written order stating "The | It is Plaintiffs' understanding that Facebook does not argue that Zuckerberg and Sandberg do not possess relevant information, or that production of their relevant custodial files will cause undue burden.<br><br>Rather, it is Plaintiffs' understanding that Facebook's position is that the determination of whether to add them as document custodians and to produce their relevant custodial files is premature.<br><br>Facebook also raises the "apex doctrine" as a reason to delay or refuse to add Zuckerberg and Sandberg as custodians. | Mark Zuckerberg's and Shery Sandberg's custodial files contain information relevant to Plaintiffs' claims that cannot be obtained from any other sources. Given the importance of the information they possess and the stakes of this litigation, their addition is proportional to the needs of the case.<br><br>Zuckerberg and Sandberg should be added as custodians now. Facebook must substantially complete document production in four months. Adding them now will permit Facebook sufficient time to collect, review, and produce documents from their custodial files before that deadline. Continued delay will only allow Facebook to |

1

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | addition of further custodians for discovery purposes is premature at this time." ECF No. 588.<br><br>7/19/2021: Judge Chhabria issued an Order Setting Case Schedule, with deposition set to begin on 11/1/2021, and document production to be substantially completed by 1/31/2022. ECF No. 706.<br><br>7/26/2021: Judge Corley issued an order stating that "Facebook should be required to meet certain metrics by certain dates to avoid a disproportionate number of documents being produced toward the end of the document production period." ECF No. 712. | | run out the clock, by promising consideration at a later date with no intent of agreement.<br><br>The "apex doctrine" does not apply to custodial selection for the purpose of document production. |

| Written Discovery | Discovery Response | Relevant History | Opposition | Executive Summary |
|---|---|---|---|---|
| | | 9/9/2021: Facebook states that it "has now completed the majority of its review process." Facebook's Opp. to Mot. To Compel TAR at 10. | | |

# EXHIBIT B

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
   osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
   klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
   mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
   dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
   jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS** <br><br> Discovery Special Master: Daniel Garrie, Esq. |

Gibson, Dunn &
Crutcher LLP

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL M. ZUCKERBERG AND S. SANDBERG AS
DOCUMENT CUSTODIANS
CASE NO. 3:18-MD-02843-VC

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION                                                                    1

3   II.   PROCEDURAL BACKGROUND                                                           2

4   III.  ARGUMENT                                                                        4

5         A.    Plaintiffs fail to demonstrate good cause for compelling designation of Mr.
                Zuckerberg and Ms. Sandberg at this stage of discovery.                  4
6
                1.    Plaintiffs must show that Mr. Zuckerberg and Ms. Sandberg possess
7                     relevant *and* unique information unlikely to be found in the files of the
                      81 existing custodians.                                            5
8
                2.    Plaintiffs fail to show that Mr. Zuckerberg and Ms. Sandberg are likely
9                     to possess information that is both unique and relevant.           8

10                    a.    Facebook has been more than reasonably diligent in searching for
                            relevant, responsive documents.                             8
11
                      b.    Plaintiffs do not show that Zuckerberg and Sandberg are likely to
12                          have documents that fill substantial gaps in Facebook's
                            comprehensive document production.                          9
13
          B.    Following the Court-ordered document production process will not delay completion
14              of discovery.                                                           14

15  IV.   CONCLUSION                                                                     15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re EpiPen Mktg., Sales Practices and Antitrust Litigation*,
No. 17-md-2785-DDC-TJJ, 2018 WL 1440923 (D. Kans. March 15, 2018) ................................7

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ................................7

*Haggarty v. Wells Fargo Bank, N.A.*,
No. 10-2416 CRB (JSC), 2012 WL 3939321 (N.D. Cal. Sept. 4, 2012) ................................6

*Handloser v. HCL America, Inc.*,
No. 19-cv-01242-LHK (VKD), 2020 WL 7405686 (N.D. Cal. Dec. 17, 2020) ................................5

*Harris v. Union Pacific Railroad Co.*,
2018 WL 2729131 (D. Neb. June 6, 2018) ................................7

*Hastings v. Ford Motor Co.*,
No. 19-cv-2217-BAS-MDD, 2021 WL 1238870 (S.D. Cal. Apr. 2, 2021) ................................5

*Hickman v. Taylor*,
329 U.S. 495 (1947) ................................6

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
No. 12CV03844JST (MEJ), 2014 WL 5387936 (N.D. Cal. Oct. 21, 2014) ................................15

*Integritymessageboards.com v. Facebook, Inc.*,
No. 18-cv-05286-PJH, 2021 WL 3771785 ................................12

*Lauris v. Novartis AG*,
No. 116CV00393LJOSAB, 2016 WL 7178602 (E.D. Cal. Dec. 8, 2016) ................................5, 6

*Lutzeier v. Citigroup Inc.*,
No. 4:14-cv-00183-RLW, 2015 WL 430196 (E.D. Mo. Feb. 2, 2015) ................................6

*MariCal, Inc. v. Cooke Aquaculture, Inc.*,
No. 1:14-cv-00366-JDL, 2016 WL 9459260 (D. Me. Aug. 9, 2016) ................................7

*Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
No. 15 Civ. 0293 (LTS) (JCF), 2017 WL 2305398 (S.D.N.Y. May 18, 2017) ................................5

*Shenwick v. Twitter*
No. 16-CV-05314-JST (SK), 2018 WL 833085 (N.D. Cal. Feb 7, 2018) ................................7, 8

**RULES**

Fed. R. Civ. P. 26(b) ................................6

Fed. R. Civ. P. 26(c)(1) ................................6

ii

Gibson, Dunn &

Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

More than eighteen months into Facebook's rolling document production—which so far has included more than 500,000 documents from the files of 81 custodians and various non-custodial sources—Plaintiffs attempt to open a new front in discovery by moving to compel designation of Facebook's Chief Executive Officer, Mark Zuckerberg, and Chief Operating Officer, Sheryl Sandberg, as document custodians.   Mr. Zuckerberg and Ms. Sandberg are the two pinnacle executives responsible for operating a global company serving nearly 3 billion Facebook users.  Plaintiffs' motion does not satisfy the essential prerequisites for a request to compel Facebook to add two new document custodians.

As Sedona Principle 6 codifies and district courts across the country have recognized, where a requesting party seeks to compel modification of a producing party's strategy for conducting a reasonably diligent collection of documents and ESI—including its selection of custodians—the requesting party must demonstrate *both* that the additional custodians are likely to possess relevant documents *and also* that those documents are likely to be unique and unavailable from other sources. Plaintiffs devote most of their motion to arguing that Mr. Zuckerberg and Ms. Sandberg are likely to possess relevant documents.  But they make no serious effort to show that any such documents are unlikely to be captured by the current, broad scope of Facebook's collection and production.

Plaintiffs cannot possibly make that showing.  Facebook has collected documents and data from—in addition to various non-custodial sources—81 custodians and run more than 140 search strings against those custodial documents.  And it is not just that Facebook is collecting millions of documents from dozens of custodians—those 81 custodians include numerous high-ranking executives and managers who report directly to and work closely with Mr. Zuckerberg and Ms. Sandberg.  Given the identities of those custodians and the nature of their roles inside the company, there is no reason to expect that Facebook's production from their files has gaps that must be filled by adding Mr. Zuckerberg and Ms. Sandberg as custodians.  Just the opposite, in fact: the myriad documents Plaintiffs cite in their motion underscore the extent to which the documents that have already been produced from the 81 existing custodians are more than adequate to capture a full range of responsive materials.

Tellingly, Plaintiffs do not argue that they have identified any gaps or deficiencies in the

Gibson, Dunn & Crutcher LLP

documents Facebook has produced to date.  To the contrary, the Facebook documents Plaintiffs rely on demonstrate that, as expected for the apex leaders of one of the world's largest public companies, Mr. Zuckerberg and Ms. Sandberg provide high-level guidance and final approvals and rely on others (teams of other senior executives, managers, and engineers) to implement the policies they approve. 81 of those executives, managers, and engineers are already custodians.  Facebook's productions from their files plus various non-custodial sources, is more than sufficient to constitute a reasonably diligent search for relevant documents.

Plaintiffs' argument that Facebook is "running out the clock" on producing documents from Mr. Zuckerberg and Ms. Sandberg assumes the point at issue—that Mr. Zuckerberg and Ms. Sandberg should be added as custodians.  In reality, there is no need to search or collect from their custodial files—and certainly not with the overbroad scope of collection Plaintiffs demand.  In any event, time is not nearly as short as Plaintiffs suggest.  Discovery does not close until June 2022, and Facebook is on pace to meet the January 31, 2022 substantial completion deadline.  So Plaintiffs will have five months to review Facebook's production and identify any gaps that could justify a "very targeted" (Ex. 3 at 48:11) collection from Mr. Zuckerberg's and Ms. Sandberg's files.

## II.       PROCEDURAL BACKGROUND

Plaintiffs sought to compel the designation of Mr. Zuckerberg and Ms. Sandberg as document custodians on three occasions before the present motion, and each time Judge Corley correctly denied those requests.  *See* Facebook's Sep. State.  Judge Corley first rejected Plaintiffs' request to add Mr. Zuckerberg and Ms. Sandberg as custodians at a May 1, 2020 hearing.  Plaintiffs argued that they would be "seeking to have CEO Mark Zuckerberg and COO Sheryl Sandberg on a custodial list, particularly in this case where they have been so involved in making public statements and promises about what Facebook is doing to protect privacy."  Swanson Decl., Ex. 1 at 33:11-18.  Judge Corley denied their request, stating "[t]hat seems a dispute that's premature because . . . there [are] reams and reams and reams of unresponsive things."  *Id.* at 34:2-5.

On May 15, 2020, Plaintiffs again requested to add Mr. Zuckerberg and Ms. Sandberg as custodians, stating "we . . . think that they are integral to this" and pointing to an email in which "Mr. Zuckerberg is e-mailing directly with one of these custodians."  *Id.*, Ex. 2 at 13:10-16.  Judge Corley

2

Gibson, Dunn &
Crutcher LLP

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL M. ZUCKERBERG AND S. SANDBERG AS
DOCUMENT CUSTODIANS
CASE NO. 3:18-MD-02843-VC

1   again rejected the request, instructing Plaintiffs to "wait." *Id.* at 13:18. That same day Judge Corley

2   followed up with an order instructing Facebook to search the custodial files of 81 custodians. Dkt. 436.

3   Facebook's 81 custodians include C-level senior executives including its Chief Privacy Officer and

4   Chief Product Officer, as well as the Chief Operating Officer of Instagram who also serves as

5   Facebook's Vice President of Global Operations, more than twenty Vice Presidents, twenty-two

6   Directors, and six department heads among others. These custodians were involved in third party data

7   access issues, third party enforcement, Facebook's response to the Cambridge Analytica events,

8   platform and development issues, and user privacy.

9       Plaintiffs raised the issue of adding Mr. Zuckerberg and Ms. Sandberg for a third time during a

10  December 2020 status conference. Judge Corley again rejected their request, instructing them on the

11  record to "wait until all the documents are produced" and adding that any collections from Mr.

12  Zuckerberg and Ms. Sandberg "will be very targeted." Swanson Decl., Ex. 3 (Dec. 9, 2020 Hr'g Tr.)

13  at 48:8-11. Afterwards, Judge Corley entered an order that "memorializes the decisions made at the

14  hearing." Dkt. 588 at 1:10-11. As to Plaintiffs' request for "[a]dditional [p]roposed [c]ustodians," the

15  order recounts Judge Corley's ruling during the status conference that "[t]he addition of further

16  custodians for discovery purposes is premature at this time." *Id.* ¶ E. Under this ruling, which is

17  consistent with Sedona Principle 6 discussed below, if any documents need to be collected from Mr.

18  Zuckerberg and Ms. Sandberg and reviewed for potential production, it will be only after Facebook

19  substantially completes its document production, and only for the limited purpose of filling any

20  specific, narrow gaps Plaintiffs identify in Facebook's productions.

21      Plaintiffs then inserted their demand to designate Mr. Zuckerberg and Ms. Sandberg as

22  document custodians into their list of issues for discovery mediation in July 2021. Facebook's Sep.

23  State. Plaintiffs' mediation demands bore no resemblance to the "very targeted" discovery

24  contemplated by the Court. Instead, Plaintiffs insisted that addition of Mr. Zuckerberg and Ms.

25  Sandberg as custodians "[c]oncerns *substantially all* of Plaintiffs' Requests for Production," listing 34

26  RFPs as being related to Mr. Zuckerberg and Ms. Sandberg. Swanson Decl., Ex. 4 (emphasis added).

27

28

Gibson, Dunn &
Crutcher LLP

## III.   ARGUMENT

Nothing has changed since the last time Judge Corley denied Plaintiffs' request to add Mr. Zuckerberg and Ms. Sandberg as custodians.  The case law makes clear that a producing party can be compelled to add additional custodians to an already-reasonable collection effort only if the requesting party establishes that the new custodians are likely possess information that is both relevant and unique. That approach makes sense—especially in the context of apex custodians, where the burden of collection, the cumulative nature of their files, and the risk of harassment are elevated.  After all, if the information is not unique—if there is no gap in the existing production—the request is unreasonably cumulative and duplicative and therefore improper under Rule 26(b).  Judge Corley recognized as much when she instructed that a "very targeted" collection was the outer limit of what might be appropriate from Mr. Zuckerberg and Ms. Sandberg.   And Plaintiffs' motion fails to make the showing required to justify even a very targeted collection.  Their motion identifies no gap in Facebook's production that could only be filled by documents from Mr. Zuckerberg and Ms. Sandberg's files. Given the breadth (81 custodians plus various non-custodial sources), depth (more than 140 search strings), and quality (numerous custodians who work closely with Mr. Zuckerberg and Ms. Sandberg) of Facebook's collection in this case, there is no reason to expect that any such gap exists.

### A.   Plaintiffs fail to demonstrate good cause for compelling designation of Mr. Zuckerberg and Ms. Sandberg at this stage of discovery.

Plaintiffs apply the wrong standard in their attempt to derail the current Court-approved collection, production, and review process and fail to carry their burden to meet the correct standard. According to Plaintiffs, the fact that a handful of produced documents purportedly show Mr. Zuckerberg and Ms. Sandberg's involvement in issues related to this case is enough to justify sweeping, intrusive discovery of their files.  This claim ignores that Facebook has produced hundreds of thousands of documents on the same issues from the files of 81 other custodians who had direct managerial and day-to-day involvement in the specific, long-defunct data-sharing practices at issue in this case.  And Plaintiffs' demand that Facebook search Mr. Zuckerberg's and Ms. Sandberg's files for documents responsive to at least 34 different RFPs (Swanson Decl., Ex. 4) is a far cry from the narrow, gap-filling potential discovery that Judge Corley ordered would be the limit of what *might* be permissible *after*

4

Gibson, Dunn &
Crutcher LLP

Facebook had completed its production from other sources.

### 1. Plaintiffs must show that Mr. Zuckerberg and Ms. Sandberg possess relevant *and* unique information unlikely to be found in the files of the 81 existing custodians.

Facebook is entitled to deference in formulating its collection strategy, including in selecting custodians it deems most likely to possess responsive information, and it is Plaintiffs' burden to demonstrate that Facebook's selections are deficient. The Sedona Principles, 19 Sedona Conf. J. 1, Principle 6 ("Sedona Principle 6"), 118–124 (3d ed. 2018) ("A requesting party has the burden of proving a specific discovery deficiency in the responding party's production."); *accord Hastings v. Ford Motor Co.*, No. 19-cv-2217-BAS-MDD, 2021 WL 1238870, at *3 (S.D. Cal. Apr. 2, 2021). Litigants are not required to examine every last document in their files to comply with their discovery obligations. *Lauris v. Novartis AG*, No. 116CV00393LJOSAB, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016). They simply must "conduct a diligent search" based on "a reasonably comprehensive search strategy." *Id.* If Plaintiffs believe Facebook's document search and production are deficient, they have the burden to demonstrate good cause for imposing additional requirements, especially where, as here, Plaintiffs' demand would upset a carefully crafted, court-approved process. *See Handloser v. HCL America, Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 7405686, at *1–2 (N.D. Cal. Dec. 17, 2020); Sedona Principle 6 at 123–124.

Good cause to compel designation of additional document custodians generally requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated. *See Handloser*, 2020 WL 7405686, at *2 (refusing to order designation of additional custodians where plaintiffs failed to show why they "expect to discover information from these custodians that differs from discovery they have already obtained from the others"); *Lauris v. Novartis AG*, No. 1:16-cv-00393-LJO-SAB, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) (denying motion to compel additional custodians where plaintiff failed to show "that the discovery plan proposed by Defendants would not produce responsive documents," and requiring "more than mere speculation to order Defendants to include the apex custodians in its search protocol"). This good-cause requirement flows from the prescriptions in Rule 26 that discovery must be proportional to the needs of the case and that "the frequency or extent of discovery" must be limited if it is "is unreasonably

5

Gibson, Dunn & Crutcher LLP

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b).

Deference to the responding party's document search strategy is especially important where the requesting party attempts to force apex personnel to participate in document discovery, given the much higher risk that the discovery is improperly sought "to annoy, embarrass, or oppress the person subject to the inquiry." *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); Fed. R. Civ. P. 26(c)(1). That risk is particularly acute in this case. Mr. Zuckerberg and Ms. Sandberg run one of the largest, most prominent companies in the world. Their responsibilities are enormous, and their time is precious. Designating them as custodians would trigger custodial interviews and the other burdens of document identification, search, and collection that impose on that time and trade off with their focus on running Facebook's business, all in service of an impermissible fishing expedition. *See Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416 CRB (JSC), 2012 WL 3939321, at *1 (N.D. Cal. Sept. 4, 2012) ("[D]iscovery may not be used as a fishing expedition.") (cleaned up).

Judge Corley's decisions to deny Plaintiffs' repeated demands to designate Mr. Zuckerberg and Ms. Sandberg as custodians show that the Court appreciates and respects these considerations. Other courts, too, have refused to make apex personnel custodians in the absence of a showing that they possess relevant documents that cannot be obtained from other sources. *See, e.g.*, *Lutzeier v. Citigroup Inc.*, No. 4:14-cv-00183-RLW, 2015 WL 430196, at *6–7 (E.D. Mo. Feb. 2, 2015) (denying request to add high-level executives to a custodial list because "Plaintiff has not satisfied his burden to show that these high level executives have unique or personal knowledge of the subject matter that warrants their information"); *Harris v. Union Pacific Railroad Co.*, 2018 WL 2729131, at *1 (D. Neb. June 6, 2018) (denying motion to compel production of CEO's documents, finding there was not "a sufficient showing that this information is necessary and not cumulative of other materials").

Plaintiffs rely on cases that embrace the same principles. *See* Mot. at 4. Plaintiffs cite *In re EpiPen Mktg., Sales Practices and Antitrust Litigation*, which expressly adopts Sedona Principle 6 in holding that "unless the party's choice is 'manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient,' the court should not dictate the designation of ESI

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL M. ZUCKERBERG AND S. SANDBERG AS DOCUMENT CUSTODIANS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

custodians." No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kans. March 15, 2018). The court only ordered designation of a "senior executive" as an additional custodian where the requesting party met its burden to show that the custodian was "likely to have unique information and ESI, not available through other [] custodians" where no other executive-level employees were designated as custodians. *Id.* at *3; *see also id.* at *2 n.17 ("party moving to compel additional proposed custodians 'must demonstrate that the additional requested custodians would provide unique relevant information *not already obtained'"* (quoting *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (emphasis added))). Likewise, in *MariCal, Inc. v. Cooke Aquaculture, Inc.*, the court found good cause to designate an additional custodian because the requesting party showed that the disputed custodian's relevant information would not be accessible from the other designated custodians. No. 1:14-cv-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016). Here, Plaintiffs have not met their burden to show that Mr. Zuckerberg and Ms. Sandberg's custodial files are likely to contain substantial relevant information that does not appear in the files of one or more current custodians, including two dozen executive-level custodians.

Plaintiffs cite *Shenwick v. Twitter* as an example of a court ordering a CEO to be designated as a document custodian where the CEO was involved in events at issue in the litigation. No. 16-CV-05314-JST (SK), 2018 WL 833085 (N.D. Cal. Feb 7, 2018). But there, the parties had yet to begin document collection and there were just 25 custodians. *Id.* at *1. Here, by contrast, Facebook's document collection efforts are far more mature and comprehensive, with 81 custodians designated and hundreds of thousands of documents produced. As a result (and as discussed below), the possibility that Mr. Zuckerberg's or Ms. Sandberg's files could contain a very small number of relevant documents that are not also available in the files of one of the 81 existing custodians is vanishingly low, and insufficient to justify the intrusion of the broad, largely indiscriminate search Plaintiffs demand, especially given Plaintiffs' inability to identify any gaps in Facebook's production or demonstrate that Mr. Zuckerberg and Ms. Sandberg have unique documents. Moreover, Judge Corley's prior orders already account for the possibility that Mr. Zuckerberg or Ms. Sandberg might have some unique documents, which was the rationale for the court's decision in *Shenwick. Id.* ("It is always possible

7

Gibson, Dunn & Crutcher LLP

that one custodian will have a document or documents that other custodians have not retained.")

**2.** **Plaintiffs fail to show that Mr. Zuckerberg and Ms. Sandberg are likely to possess information that is both unique and relevant.**

Plaintiffs ignore Judge Corley's direction that any collection from Mr. Zuckerberg and Ms. Sandberg's custodial files should be narrowly tailored to fill any gaps identified in Facebook's already-substantial document production.  Instead, they take a blunderbuss approach that would require full-blown collection, search, and review of Zuckerberg and Sandberg's files (not merely targeted collections) on at least 34 separate RFPs.  But their motion makes no effort to identify specific gaps in Facebook's production, and it fails to show that Mr. Zuckerberg's and Ms. Sandberg's files are likely to contain a substantial volume of unique relevant information.

**a.** **Facebook has been more than reasonably diligent in searching for relevant, responsive documents.**

Even though Facebook has already produced more than 500,000 documents in this action, Swanson Decl., ¶ 3,  Plaintiffs' motion does not even attempt to identify any deficiency or gap in Facebook's production that can only be filled by making Mr. Zuckerberg and Ms. Sandberg custodians.

And there is no reason to expect that any such gap exists. Facebook has agreed to collect documents from the files of *81* document custodians who were carefully selected based on their involvement with the live issues in this case, such as Facebook's relationships with third-party app developers and so-called "business partners," data sharing, and Cambridge Analytica.  Many of these custodians are high-level executives in their own right who report directly to, or otherwise work closely with, Mr. Zuckerberg and Ms. Sandberg.  To name a few:

- Chris Cox, Facebook's Chief Product Officer, reports directly to Mr. Zuckerberg and was selected as a custodian in part because of his involvement in designing the Facebook Platform, which enables app development by third-parties.
- Justin Osofsky, Facebook's Chief Operations Officer of Instagram and Vice President of Global Operations, reports directly to Ms. Sandberg.
- Francisco Varela, Facebook's Vice President for Mobile Partnerships, works on third party integrations and private application programming interfaces (APIs).
- Erin Egan, Facebook's Vice President of Public Policy and Chief Privacy Officer, works on a wide range of privacy issues, including relating to data sharing.
- Mike Vernal worked at Facebook for eight years, eventually reporting directly to Mr. Zuckerberg as Vice President of Engineering.  Mr. Vernal was involved in the design and implementation of changes to Facebook's infrastructure, including with respect to availability of user data to third party app developers.

8

Gibson, Dunn & Crutcher LLP

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL M. ZUCKERBERG AND S. SANDBERG AS DOCUMENT CUSTODIANS
CASE NO. 3:18-MD-02843-VC

- Dan Rose, at Facebook from 2006 to 2019, reported directly to Ms. Sandberg as Facebook's Vice President of Partnerships.  Mr. Rose was selected as a custodian for his involvement in Facebook's relationships with integration partners.

As these examples illustrate, Facebook's long list of custodians contains a number of high-level management personnel who worked closely with Mr. Zuckerberg and Ms. Sandberg and were directly involved in the events Plaintiffs' claims are based on.  It is therefore highly unlikely that adding Mr. Zuckerberg and Ms. Sandberg as custodians will lead to discovery of non-duplicative information, much less any unique relevant documents or information that would be important to resolving the issues in this case.

> **b.**  **Plaintiffs do not show that Mr. Zuckerberg and Ms. Sandberg are likely to have documents that fill substantial gaps in Facebook's comprehensive document production.**

Most of Plaintiffs' motion is devoted to showing that Mr. Zuckerberg and Ms. Sandberg sometimes appear on responsive documents.  Plaintiffs' heavy reliance on documents Facebook has already produced from current custodians undermines any notion that Mr. Zuckerberg and Ms. Sandberg are likely to have a substantive volume of unique documents.  Plaintiffs' documents  do not reveal a CEO and COO with an unusually extensive level of personal involvement in the company's decision making and operations.  Rather, they show Zuckerberg and Sandberg in supervisory roles, providing high-level guidance and final approval on a small number of discrete issues, while trusting the details of execution to other personnel—personnel whose inclusion as custodians is more than enough to ensure that sufficient relevant documents will be produced in discovery.

For example, Plaintiffs quote Monika Bickert—Facebook's former Lead Security Counsel and Head of Global Policy Management now Vice President of Content Policy and a designated custodian in this case—explaining that Facebook employees "will absolutely loop in" Mr. Zuckerberg and Ms. Sandberg on important issues, by, for instance, "send[ing] an email to Mark and Sheryl so that they know what's going on."  Weaver Decl., Ex. 6.  Ms. Bickert's remarks do not show that Mr. Zuckerberg and Ms. Sandberg are likely to have unique information.  To the contrary, they indicate that Mr. Zuckerberg and Ms. Sandberg become involved when personnel *who are already custodians* provide updates on important issues or affirmatively solicit and receive their input.

Plaintiffs also focus on the claim of Sandy Parakilas—another designated custodian—that Mr.

Gibson, Dunn & Crutcher LLP

Zuckerberg had to approve "'any decision to ban an app' for violating Facebook's policies related to user information," such as ██████████████████████████████████████████████ ████████████████████████████████████████████ Mot. at 5, citing Weaver Decl., Exs. 7-8. But Mr. Zuckerberg's final signoff for such actions hardly demonstrates that he has unique documents or information reflecting Facebook's enforcement of its policies governing relationships with third party apps. Indeed, the email ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████—all of whom are designated custodians. Weaver Decl., Ex. 8; *see also id.*, Ex. 9 ████████████████████████████████████████ ██████████████████████████████████████.

Plaintiffs point to communications showing Mr. Zuckerberg's involvement in Facebook's efforts to ████████████████████████████████████████. Weaver Decl., Exs. 10-12. But these documents all show Mr. Zuckerberg working as a member of teams that included multiple designated custodians, such as Mike Vernal, Justin Osofsky, Dan Rose, Sam Lessin, Javier Olivan, Chris Cox, and Vladimir Fedorov. Far from suggesting the existence of unique, relevant information that only Mr. Zuckerberg has access to, these documents establish that relevant information, even high level strategic planning, was widely distributed to key personnel within Facebook (many of whom are already custodians) for them to work out the details.

Plaintiffs claim Ms. Sandberg's participation in an email chain ██████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Mot. at 9 (citing Weaver Decl., Ex. 22). But Ms. Sandberg's *influence* at Facebook is not at issue here. The issue is whether Plaintiffs have shown that Ms. Sandberg should be made a document custodian because she likely has a significant quantity of unique, relevant documents likely to be of importance to Plaintiffs' claims. The documents Plaintiffs cite here suggest she does not. Instead, they again show that Ms. Sandberg wields her influence through collaboration with teams of management personnel, many of whom, such as Dan Rose, Sam Lessin, and Justin Osofsky, are already custodians. *See* Weaver Decl., Ex. 22.

Plaintiffs argue that Ms. Sandberg's files are needed to ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████  Mot. at 10 (quoting Weaver Decl., Ex. 25).  This argument reflects Plaintiffs' general strategy of trying to shamelessly stuff every third-party relationship imaginable into the so-called "business partner" allegations that Judge Chhabria allowed to move forward.  Having found no gaps in Facebook's productions that collections from Ms. Sandberg could possibly fill, Plaintiffs are attempting to manufacture a gap by arguing that Ms. Sandberg may have documents relating to allegations that Judge Chhabria expressly said would not move forward.

One of the four categories of allegations Judge Chhabria allowed to move forward concerns Facebook's alleged unauthorized sharing of user data with certain "business partners."  Dkt. 298 at 8.  This category does not encompass every interaction between Facebook and another business involving some transfer of data; there is no way to read Plaintiffs' "business partner" allegations to be about anything other than what Plaintiffs described as entities with whom Facebook partnered to "develop and integrate Facebook's User Platform on multiple devices and operating systems" through the use of "private APIs."  *See* SACC ¶¶ 430-440.  In allowing this category of allegations to move forward, Judge Chhabria repeated that it concerned partnerships designed to "outsource[] to business partners 'the time, labor, and money required to build Facebook's Platform on different devices and operating systems.'"  Dkt. 298 at 8 (quoting Dkt. 491 at ¶ 433).

Plaintiffs' Exhibit 25, refers to something completely different—██████████████

████████████████████████████████████████████████████████████

██████████████████████████████.  Swanson Decl., Ex. 5 (Dep. of A. Lee), 194:13-18; see also *Integritymessageboards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2021 WL 3771785 at *2-3 (describing "Partner Categories" as part of Facebook's "Ads Manager website interface.")  As Facebook's 30(b)(6) deponent testified, ██████████████████████████████

██████████████████████████████, and Exhibit 25 does not show otherwise.  Swanson Decl., Ex. 5 at 200:4-16.  In fact, Plaintiffs' complaint expressly distinguishes "data brokers" from

11

Gibson, Dunn &
Crutcher LLP

"business partners," describing "data brokers" as parties with which Facebook worked to collect data about users for "psychographic marketing" and "targeted advertising." Compare Dkt. 491 at ¶ 433, with *id.* at ¶¶ 16, 263–69, 718, 800.  Consistent with those allegations, ███████████████████████

████████████, and Judge Chhabria made clear that Plaintiffs' targeted advertising and "psychographic marketing" allegations would not move forward.  *See* Dkt. 298 at 6.  The parties are separately litigating Plaintiffs' overbroad view of the "business partner" theory; if the Special Master is inclined to find the portions of Exhibit 25 that Plaintiffs cite relevant, Facebook respectfully requests the Special Master to refrain from doing so without the benefit of Facebook's full briefing on this issue, which it will submit on October 13.  But the Special Master need not reach this issue in connection with the current dispute.  Even if the details about targeted advertising in Exhibit 25 were relevant to data sharing—and again they are not—nothing about the document suggests that Ms. Sandberg has unique information about targeted advertising.

Plaintiffs' argument that Ms. Sandberg should be made a document custodian because media reports claim she leads Facebook's "monetization of data" fails for similar reasons.  Mot. at 7-8. Facebook's general business model of selling the opportunity to show advertisements to Facebook users is not at issue in this action.  *See* Dkt. 298 at 6.  Plaintiffs do not explain how "monetization" in general is relevant, much less that Ms. Sandberg's files on "monetization" would be relevant *and* not duplicative of documents held by, for example, designated custodians Deborah Liu, who worked as Director of Product Management for Platform Monetization, and Chemath Palihapitiya, a former Vice President for Platform Monetization.

Plaintiffs claim that Exhibit 20 to the Weaver Declaration (virtually identical to Exhibit 12) shows that Ms. Sandberg has unique information about "whitelisting," Mot. at 8, but that document simply shows Ms. Sandberg ██████████████████████████████████████

██████████████████████████████████.  So here again, Exhibit 20 does not merely fail to indicate that there is a gap in Facebook's existing production—it shows the opposite.

Plaintiffs further contend that Ms. Sandberg will have unique information about whitelisting because she ████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

█████████████████████████████████████ Mot. at 8 (citing Weaver Decl., Ex. 21).  In fact, Ms. Sandberg ████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████

Plaintiffs' exhibits showing Mr. Zuckerberg and Ms. Sandberg's role in Facebook's response to the Cambridge Analytica events also do not meet their burden to prove that there are gaps in Facebook's productions that would be filled by adding Mr. Zuckerberg and Ms. Sandberg as custodians.  Plaintiffs' litigation choices have reduced the Cambridge Analytica event to a mere sliver of this case.  And the documents Plaintiffs cite merely show Facebook's leaders providing high level guidance to large teams and show that discovery from the existing custodians is sufficient.  Mr. Zuckerberg and Ms. Sandberg's role as company spokespersons do not give rise to a presumption that either is likely to be the sole source of unique relevant documents on the Cambridge Analytica events.

Plaintiffs also note that Mr. Zuckerberg announced the launch of an investigation into app developers' use of the platform (the ADI), but Mr. Zuckerberg was not personally involved in conducting ADI, and, as Plaintiffs acknowledge, the Court has already ordered that certain ADI materials should be produced separately.  That order obviates any need to add Mr. Zuckerberg as a custodian on ADI issues. Mot. at 6, 9.

Plaintiffs contend that Ms. Sandberg has unique information because shortly after the Cambridge Analytica events, ██████████████████████████ Mot. at 9-10 (citing Weaver Decl., Ex. 24).  This argument is a red herring.  There has been no ████████ ██████████████████████████, and the ADI materials Judge Corley ordered Facebook to produce will show no data misuse akin to the Cambridge Analytica events.  Plaintiffs have made no showing that documents ███████████████████████████████ will be found among Ms. Sandberg's custodial files. Mot. at 10.  In any event, Ms. Sandberg was not involved in ADI, so there is no reason to believe relevant documents would be uniquely located in her

Gibson, Dunn & Crutcher LLP

files.  Plaintiffs cannot support their speculation that, contrary to her typical approach to management, Ms. Sandberg ███████████████████████████████████████████.

Plaintiffs cite documents related to Mr. Zuckerberg and Ms. Sandberg's role regarding Facebook's position on privacy issues in an attempt to argue that their files will reveal whether Facebook's internal policies diverged from their public messaging.  *See* Weaver Decl., Exs. 17, 27-29. But this case is not about privacy writ large.  It is about specific, long-defunct data-sharing practices, and the documents Plaintiffs cite contain nothing to suggest that Mr. Zuckerberg and Ms. Sandberg are likely to have unique materials about those practices.  To the contrary, the documents cited by Plaintiffs show that, while Mr. Zuckerberg and Ms. Sandberg may approve a general course developed and proposed by others, they depend on others—including many of the custodians in this case—to put Facebook's internal policies into practice.  The information held by those custodians is more than sufficient to illuminate the consistency between Facebook's external representations and internal practices, even if such consistency were relevant to Plaintiffs' claims (which it is not).

Plaintiffs fail to show that Mr. Zuckerberg's and Ms. Sandberg's files constitute the only, or even the best, sources of evidence of the Facebook conduct and policies that are at issue in this case.

**B.      Following the Court-ordered document production process will not delay completion of discovery.**

Plaintiffs put the cart before the horse when they urge the Special Master to scrap Judge Corley's Order on the timing and scope of document collection from custodians beyond the current list of 81 because they are afraid Facebook will deliberately run out the clock on discovery, leaving no time to collect documents from Mr. Zuckerberg and Ms. Sandberg.   For the reasons explained above, there is no need to collect and produce documents from Mr. Zuckerberg and Ms. Sandberg, so Plaintiffs' concern about the timing of that collection and production is misplaced.

But Plaintiffs' concern would be misplaced in any event.  The substantial-completion deadline is January 31, 2022, and discovery does not close until *June* 2022.  Dkt. 706.  So there would be several months to conduct targeted collections and make small productions from Mr. Zuckerberg's and Ms. Sandberg's files if Plaintiffs were able to make a compelling and particularized showing that doing so is necessary to fill gaps in Facebook's production.  Nor is Facebook's production proceeding at a

14

Gibson, Dunn & Crutcher LLP

"glacial" pace, as Plaintiffs contend.   Facebook has produced more than 100,000 documents in the last three months.  Swanson Decl., ¶ 3.  More to the point, the type of highly targeted gap-filling production Judge Corley's Order contemplates could typically be completed without significant delay.

Finally, while Plaintiffs' motion does not demand the depositions of Mr. Zuckerberg and Ms. Sandberg,[1] there is likewise no risk that a targeted collection of documents from Mr. Zuckerberg's and Ms. Sandberg's files after January 2022 would delay depositions.  Collection from their files need not occur before the depositions of other custodians commence; another custodian's interactions with Zuckerberg or Sandberg would be captured by the collection and production from that custodian's files. And if Zuckerberg and Sandberg's depositions are required over Facebook's objections, they will be the last of Facebook's witnesses to be deposed, since there is no question that they are apex personnel. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12CV03844JST (MEJ), 2014 WL 5387936, at *1 (N.D. Cal. Oct. 21, 2014) (explaining that the party seeking apex deposition bears the burden to show, *inter alia*, that the deponent has unique first-hand knowledge).

There is thus no reason to depart from Judge Corley's Order that Mr. Zuckerberg and Ms. Sandberg shall not be made custodians, certainly not before Facebook's document production is substantially complete, and certainly not for anything more than "very targeted" collections.  Swanson Decl., Ex. 3 at 48:8-11; Dkt 588.  If the Special Master nevertheless determines that Mr. Zuckerberg and Ms. Sandberg may possess unique relevant documents, Judge Corley's determination that searches of their files would be "very targeted," should still be respected.  The parties should then meet and confer regarding the specific and narrow subject matter of any such search based on any true gaps identified by Plaintiffs.

## IV.    CONCLUSION

Having already failed three times to convince the Court to designate Mr. Zuckerberg and Ms. Sandberg as document custodians, Plaintiffs seek a fourth bite at the apple.  But they have failed to make the required showing that Mr. Zuckerberg and Ms. Sandberg are likely to possess documents that are both relevant and unique.  Facebook respectfully asks the Special Master to deny Plaintiffs' motion.

---

[1] It is Facebook's position that depositions of Mr. Zuckerberg or Ms. Sandberg are not warranted in this case.

1    Dated:  October 4, 2021                **GIBSON, DUNN & CRUTCHER, LLP**

2                                            By: */s/ Orin Snyder*
                                             Orin Snyder (*pro hac vice*)
3                                            osnyder@gibsondunn.com
                                             200 Park Avenue
4                                            New York, NY 10166-0193
                                             Telephone:  212.351.4000
5                                            Facsimile:  212.351.4035

6                                            Deborah Stein (SBN 224570)
                                             dstein@gibsondunn.com
7                                            333 South Grand Avenue
                                             Los Angeles, CA 90071-3197
8                                            Telephone:  213.229.7000
                                             Facsimile:  213.229.7520

9

10                                           Joshua S. Lipshutz (SBN
                                             242557)jlipshutz@gibsondunn.com
11                                           1050 Connecticut Avenue, N.W.
                                             Washington, DC 20036-5306
12                                           Telephone:  202.955.8500
                                             Facsimile:  202.467.0539

13
                                             Kristin A. Linsley (SBN 154148)
14                                           klinsley@gibsondunn.com
                                             Martie Kutscher (SBN 302650)
15                                           mkutscherclark@gibsondunn.com
                                             555 Mission Street, Suite 3000
16                                           San Francisco, CA 94105-0921
                                             Telephone:  415.393.8200
17                                           Facsimile:  415.393.8306

18
                                             *Attorneys for Defendant Facebook, Inc.*
19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

FACEBOOK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL M. ZUCKERBERG AND S. SANDBERG AS
DOCUMENT CUSTODIANS
CASE NO. 3:18-MD-02843-VC

EXHIBIT C

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley Weaver (Cal. Bar No.191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL MARK ZUCKERBERG AND SHERYL SANDBERG AS DOCUMENT CUSTODIANS**<br><br>Judge: Hon. Vince Chhabra<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  FACEBOOK MISREPRESENTS THE RELEVANT HISTORY AND RECORD ...........2

III.  ARGUMENT ...............................................................................................................3

    A.  Zuckerberg's and Sandberg's Knowledge and Statements Are At the Heart of Plaintiffs' Allegations ......................................................................................... 4

    B.  The Evidence Shows Zuckerberg's and Sandberg's Detailed and Intimate Knowledge of Friend Sharing, Whitelisting, and Business Partners.................................. 5

    C.  The Evidence Shows Zuckerberg's and Sandberg's Detailed and Intimate Knowledge of Third-Party Misuse of User Information ................................................ 7

    D.  Facebook's Authority is Inapt ............................................................................. 9

    E.  A Targeted Search of Zuckerberg's and Sandberg's Files Is Appropriate .................. 9

IV.  CONCLUSION ..........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Handloser v. HCL Am., Inc.*,
    No. 19-cv-01242-LHK (VKD), 2020 WL 7405686 (N.D. Cal. Dec. 17, 2020) ........................ 9

*Hickman v. Taylor*, 329 U.S. 495 (1947) ......................................................... 9

*In re EpiPen Mktg., Sales Practices and Antitrust Litig.*,
    No. 17-md-2785-DDC-TJJ, 2018 WL 1440923 (D. Kan. Mar. 15, 2018) ................................ 3

*Lauris v. Novartis AG*,
    No. 116CV00393LJOSAB, 2016 WL 7178602 (E.D. Cal. Dec. 8, 2016)................................. 9

*Lutzeier v. Citigroup Inc.*,
    No. 4:14-cv-00183-RLW, 2015 WL 430196 (E.D. Mo. Feb. 2, 2015) ..................................... 9

*MariCal, Inc. v. Cooke Aquaculture, Inc.*,
    No. 1:14-cv-00366-JDL, 2016 WL 9459260 (D. Me. Aug. 9, 2016) ..................................... 3

*Shenwick v. Twitter*,
    No. 16-CV-05314-JST (SK), 2018 WL 833085 (N.D. Cal. Feb 7, 2018) ................................ 3

*Williams v. Apple, Inc.*,
    No. 19-cv-04700-LHK (VKD), 2020 WL 5107639 (N.D. Cal. Aug. 31, 2020)..................... 10

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................. 1

1

## I.   INTRODUCTION

2       Facebook asserts that "[n]othing has changed" since December 11, 2020, when Judge

3   Corley deferred Plaintiffs' request to add Mr. Zuckerberg and Ms. Sandberg as custodians, saying

4   it was "premature at this time." Opp. at 4; Dkt. No. 588. Not so. Ten months have passed and

5   Judge Chhabria has imposed a substantial completion deadline that is less than four months away.

6   According to Facebook, initial custodial production is almost complete. And Plaintiffs have

7   adduced substantial evidence demonstrating that Zuckerberg and Sandberg should be added as

8   custodians. Adding them is certainly not premature now.

9       Notably, Facebook does not contend that Zuckerberg's or Sandberg's custodial files are

10   irrelevant. And Facebook only gestures at Rule 26(b)(1)'s requirement that discovery be

11   proportional to the needs of the case, asserting that it somehow gives rise to a "good cause"

12   requirement to add executive custodians. Opp. at 5. That is not a Rule 26(b)(1) requirement and it

13   contradicts Judge Chhabria's admonishment that this is not the type of case where Facebook can

14   successfully argue that, though an "effort might end up uncovering some relevant information . . .

15   it is just too expensive or difficult, and so we are not going to make Facebook do it." Ex. 30 at

16   29.[1]

17       Rather, Facebook insists Plaintiffs must meet a contrived standard that none of

18   Zuckerberg's and Sandberg's custodial documents will be collected and produced through other

19   custodians. But even if this were the proper standard, given their unique roles and direct

20   involvement in formulating and implementing the privacy and data sharing practices at the heart

21   of this litigation, and Facebook's effort to investigate and manage the Cambridge Analytica crisis,

22   it cannot credibly be denied that Zuckerberg and Sandberg do have unique custodial documents.

23       Further, Plaintiffs have shown far "'more than mere speculation'" that Zuckerberg's and

24   Sandberg's custodial files will contain information "'that differs from discovery they have

25   already obtained from the other[]'" custodians. Opp. at 5 (citations omitted). Plaintiffs'

26

---

27   [1] All exhibit references are to the Declaration of Lesley E. Weaver in Support of Plaintiffs'
Motion to Compel Mark Zuckerberg and Sheryl Sandberg as Document Custodians or the
28   Declaration of Lesley E. Weaver in Support of Reply Regarding Plaintiffs' Motion to Compel
Mark Zuckerberg and Sheryl Sandberg as Document Custodians.

1   allegations draw extensively from statements made by Zuckerberg and Sandberg themselves, as

2   well as from evidence showing that Facebook employees informed Zuckerberg and Sandberg

3   about risks regarding third party access to users' information—risks they decided were

4   appropriate to bear in pursuit of profit. And Plaintiffs' opening brief identifies documents

5   Zuckerberg or Sandberg sent or received that indicate their intimate involvement in discussions

6   and decisions about the core issue in this case—access to and misuse of users' information—and,

7   thus, provide support that other relevant documents exist on these topics in Zuckerberg's and

8   Sandberg's files. This showing is more than sufficient to justify Zuckerberg's and Sandberg's

9   addition as custodians.

10   **II.     FACEBOOK MISREPRESENTS THE RELEVANT HISTORY AND RECORD**

11        Contrary to Facebook's implication, Judge Corley has not ever substantively denied

12   Plaintiffs' request to add Zuckerberg and Sandberg as custodians. Rather, she merely delayed

13   ruling on the issue, twice instructing Plaintiffs to wait and once calling the request "premature at

14   this time." Dkt. No. 588 at ¶ E. Notably, Judge Corley recently relied on Zuckerberg's public

15   statements about ADI in ordering production of those documents. Dkt. No. 742. Zuckerberg's

16   statements regarding privacy and Facebook's failure to prevent data misuse by app developers are

17   core to Plaintiffs' case, and Plaintiffs should be allowed to access discovery related to these

18   statements.

19        Facebook also substantially overstates its production. While literally true that Facebook

20   has produced more than 500,000 documents (515,092 to be exact), approximately 252,000 of the

21   documents comprise information about the activity of current and former named plaintiffs on the

22   platform that was already directly available to plaintiffs; approximately 113,000 lack meaningful

23   content, including .bmp or embedded images spun off from other documents and "document[s]

24   that cannot be converted"; and approximately 74,000 comprise documents previously produced to

25   governmental investigators. Relatedly, Facebook states that it has produced more than 100,000

26   documents in the last three months. Opp. at 15. The exact number is 120,258—but approximately

27   96,000 lack any meaningful content for the same reasons identified above (e.g. .bmp or embedded

28

1    images). In total, Facebook's custodial production resulting from the application of search strings

2    total *only 166,000 documents with any substantive content*.

3         It has taken Facebook almost a year and a half to produce these documents. After the 81

4    initial custodians were finalized on May 15, 2020, Facebook insisted on negotiating specific

5    search strings to apply to each custodian. This process significantly delayed production, causing a

6    years-long negotiation over the search strings to apply to the 81 custodians that was completed on

7    June 7, 2021. Yet, Facebook still has not completed production from their files.

8         Past being prologue, and contrary to Facebook's suggestion, it is unlikely Facebook would

9    be able to quickly complete production from Zuckerberg's and Sandberg's custodial files. Thus,

10   the suggestion that Zuckerberg and Sandberg be further deferred as custodians is impractical, as it

11   is highly unlikely that Facebook would be able to produce, and Plaintiffs would have the

12   opportunity to take further discovery based on information generated from this production, within

13   Judge Chhabria's discovery deadlines.

14   **III.    ARGUMENT**

15        Facebook should be compelled to add Zuckerberg and Sandberg as document custodians

16   because of their intimate involvement in the issues and exchanges at the heart of Plaintiffs'

17   claims. Courts routinely order the addition of custodians who, like here, are "involved in

18   discussions and decisions regarding" the facts at issue. *In re EpiPen (Epinephrine Injection, USP)*

19   *Mktg., Sales Practices and Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *3-

20   4 (D. Kan. Mar. 15, 2018) (adding former CEOs as document custodians); *see also Shenwick v.*

21   *Twitter*, No. 16-CV-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb 7, 2018) (granting

22   request to add Jack Dorsey given his involvement in the allegations); *MariCal, Inc. v. Cooke*

23   *Aquaculture, Inc.*, No. 1:14-cv-00366-JDL, 2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016)

24   (granting request to add custodian who were likely "involved in discussions regarding" the

25   patents at issue).

26        *Styleform IT v. Facebook, Inc. et al.*—a case alleging that Facebook and Zuckerberg

27   duped app developers to build apps that relied on users' and friends' data from Facebook's

28

platform but then limited access to that data to only whitelisted apps—serves as a prescient example. There, the court recently granted plaintiff's motion to compel Zuckerberg, Sandberg, and other executives as document custodians, finding they were likely to have unique and non-cumulative information relevant to plaintiff's allegations regarding Facebook's misrepresentations about API access. Order re Three Discovery Motions, No. CGC-18-571075 (S.F. Super. Ct. Sept. 14, 2021), Ex. 32 at 8.

Even more so than in *Styleform*, Zuckerberg and Sandberg are involved in the matters at issue in this litigation. Zuckerberg and Sandberg have made no secret of the critical roles they played in the practices at the heart of this case. They are both appropriate and necessary custodians.

### A. Zuckerbergp's and Sandberg's Knowledge and Statements Are At the Heart of Plaintiffs' Allegations

Facebook asserts that Zuckerberg's and Sandberg's relevant involvement was limited to "high-level guidance and final approvals," contending they weren't really involved in decisions at the heart of this case. Opp. at 2. That assertion is contradicted by Zuckerberg's own public statements and ignores Plaintiffs' allegations, which are based substantially on the specific statements and actions of Zuckerberg and Sandberg.

Zuckerberg himself promised that Facebook provided users with "'complete control over who they share with at all times'" by "'giving you tools to control who can see your information and then making sure only those people you intend can see it.'" SACC at ¶ 18 (citation omitted). And Zuckerberg himself said it was "'*my* mistake'" that Facebook didn't "'take a broad enough view of what our responsibility is'" to "'preven[t] abuse and think[] through how people could use these tools to do harm'" in the context of "'data privacy.'" *Id.* at ¶ 19 (citation omitted). Zuckerberg's promise and "'mistake'" are core to Plaintiffs' case, among other things animating the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, privacy, and negligence.

And Sandberg led Facebook's effort to monetize users' information, including that which was shared without their knowledge or consent. She not only echoed Zuckerberg's call for full

reciprocity as a means to generate revenue (*Id.* at ¶ 657(f)), but is also widely credited as the driver of Facebook's revenues. *See, e.g.*, Leslie Bradshaw, *The Sheryl Sandberg Effect: Rise of Female COOs*, NPR (Aug. 9, 2013) ("Zuck may have founded Facebook, but Sheryl Sandberg monetized it.").[2] The monetization of users' information that they did not consent to be shared with or made available to third parties is the basis for Plaintiffs' contract, breach of the implied covenant of good faith and fair dealing, privacy, and unjust enrichment claims.

**B.      The Evidence Shows Zuckerberg's and Sandberg's Detailed and Intimate Knowledge of Friend Sharing, Whitelisting, and Business Partners**

Plaintiffs' Motion demonstrates that Zuckerberg and Sandberg shaped Facebook's platform around friend sharing. For instance, ███████████████████████████████████ ████████████████████████████████████████████ Ex. 10; *see also* Ex. 12 ██████████████ ████████████████████████████. Likewise, Sandberg ████████████████████████████. *See, e.g. Id.* at FB-CA-MDL-01681584 ████████████████████████. Zuckerberg's and Sandberg's custodial files will assuredly contain additional relevant information regarding friend sharing on Facebook.

Facebook argues that Plaintiffs have not identified a gap in the production because these documents only show that Zuckerberg and Sandberg provided "high-level guidance" distributed to existing custodians, among others. Opp. at 9. To state the obvious, as Zuckerberg and Sandberg are not custodians, Plaintiffs are largely only able to view their contributions in the context of information shared with other custodians. While Facebook has produced some of Zuckerberg's and Sandberg's communications with existing custodians, Facebook has not provided other documents reflecting their thoughts. Indeed, despite evidence that both Zuckerberg and Sandberg communicated frequently by email and instant messages, Facebook has produced only a handful

---

[2] *Available at* https://www.npr.org/sections/alltechconsidered/2013/08/06/209483329/the-sheryl-sandberg-effect-rise-of-female-coos.

1    of documents reflecting their communications solely to one another or between them and the

2    board members.

3          Plaintiffs' Motion also demonstrates Zuckerberg's and Sandberg's ███████████████

4    ██████████████████████████████████████. *E.g.* Ex. 21 ████████████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████. And though Sandberg ████████████████████████████

7    ████████████████████████████████████████████████████████████████████

8    (Ex. 25), Facebook argues this document shouldn't be considered because it relates to ████████

9    ████████████████████. Opp. at 11. But Facebook misrepresents the document and its

10   relevance to Plaintiffs' business partner claims.

11         First, the document establishes Facebook's ████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ████████████████████████████. Opp. at 11 ██████████████████████████████████

14   ████████████████████████████████████████████████████. This document

15   reveals that Facebook, ███████████████████████████████████. The document states:

16   ████████████████████████████████████████████████████████████████ *Id.* at

17   Slide 5. This ██████████████████████████ fits squarely into the Court's definition of

18   business partners. Order re Business Partners, Dkt. No 608 at 2 (defining business partner in the

19   context of Facebook interrogatory responses to include "all companies with which Facebook

20   agreed to exchange information about users' activities with each other.").

21         Second, the ████████████████████████████████████████████████████████████

22   ████████████████████████. The presentation states that ████████████████████████████

23   ████████████████████████████████████████. Ex. 25 at Slide 6. Facebook argues it

24   "never sold its users' [PII] to 'data brokers'" (Opp. at 11), but its own 30(b)(6) witness testified

25   that ████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████. Swanson Decl., Ex. 5 at 200:21-25. Regardless, information in

27

28

1  Sandberg's possession regarding ██████████████████████████████████ is

2  relevant and should be produced.

3      Third, this ███████████████████████████████████████

4  ████████████████████████████. For example, Slide 8 discusses ██████

5  ████████████████████████████████████████████████████████████████

6  ██████████████████████████████ No matter how the Special

7  Master resolves the pending dispute regarding the definition of business partners, the presentation

8  clearly concerns other aspects of the case defined by Judge Chhabria.

9      **C.    The Evidence Shows Zuckerberg's and Sandberg's Detailed and Intimate
             Knowledge of Third-Party Misuse of User Information**

10     The evidence also shows Zuckerberg and Sandberg themselves initiated and shaped

11  Facebook's response to the Cambridge Analytica scandal, including ADI, which will help define

12  the true scope of Facebook's failure to monitor third party access to and use of friend information.

13     For example, the day of her first public interview after the Cambridge Analytica scandal

14  broke, Sandberg ████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ██████████████████████ Ex. 24 at FB-CA-MDL-01184406. While Facebook baldly

17  asserts that this document is a "red herring" because Sandberg was not involved in ADI (Opp. at

18  13), newly produced evidence shows otherwise. A ████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████ Ex. 33 at FB-CA-MDL-01950694; *see* Ex. 34 at FB-CA-MDL-

24  01950669 ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████.

26  ████████████████████████████████████████████████████████████

27                          *See* Ex. 14. These messages do not

28

1  reflect Sandberg's "high-level guidance." Opp. at 2. Rather, they reflect ████████
2  █████████████████████████████████████████████████████.

3        Likewise, the evidence demonstrates Zuckerberg's intimate involvement in Facebook's
4  enforcement against third parties, including deciding when, how, and against whom Facebook
5  should enforce. In the wake of the Cambridge Analytica scandal, Zuckerberg himself announced
6  that he was committed to uncovering the scope of the problem stating: "I've been working to
7  understand exactly what happened and how to make sure this doesn't happen again." Ex. 14.
8  Facebook asserts that Zuckerberg's "final signoff" on enforcement actions does not show he has
9  unique information. Opp. at 10. But the evidence shows Zuckerberg ████████████████████
10 █████████████████████████████████████ For instance, after ██████████████
11 ████████████████████████████████████████████████████████████████
12 ███ Ex. 9 at FB-CA-MDL-00172724; *see* also Ex. 7 ("[A]ny decision to ban an app" for
13 violating Facebook's policies related to user information "required the personal approval of the
14 chief executive, Mark Zuckerberg[.]"). Zuckerberg didn't merely grant final signoff; he was fully
15 briefed on the facts and evaluated them before making decisions.

16       Documents also show that Zuckerberg "took on the role of a wartime leader" in response
17 to the 2018 Cambridge Analytica scandal, locking down Facebook's external communications
18 until he had a grasp of the situation. Ex. 16. Wartime leaders are not executives who merely sign
19 off on decisions made by others; they are (as Zuckerberg was) the decision makers themselves.
20 And another recently produced document ███████████████████████████████████
21 ████████████████████████████████████████████████████████████████
22 █████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████
25 █████████████████████████ Ex. 35 at FB-CA-MDL-01950915. Zuckerberg's custodial files will
26 shed considerable new light, unavailable from other sources, on Facebook's decision-making
27 regarding enforcement with respect to third parties' access to and misuse of user information,

28

1    which are critical issues in this case. Moreover, what Zuckerberg knew about Facebook's failure

2    to protect and keep secure user content and information, and when he learned of Facebook's

3    failures are directly relevant to the relief Plaintiffs seek in this case.

4         **D.      Facebook's Authority is Inapt**

5         Because the evidence demonstrates Zuckerberg's and Sandberg's intimate involvement in

6    issues and exchanges at the heart of the allegations, the cases Facebook relies on do not support

7    shielding Zuckerberg's and Sandberg's files from discovery.

8         For one, Plaintiffs aren't asking Facebook "to examine every last document in their files."

9    Opp. at 5 (citing *Lauris v. Novartis AG*, No. 116CV00393LJOSAB, 2016 WL 7178602, at *4

10   (E.D. Cal. Dec. 8, 2016)). Rather, Plaintiffs simply seek relevant documents in the files of two

11   key custodians in a company that has more than 50,000 full-time employees. Plaintiffs' purpose is

12   not "'to annoy, embarrass, or oppress'" Zuckerberg and Sandberg. Opp. at 6 (citing *Hickman v.*

13   *Taylor*, 329 U.S. 495, 507-08 (1947)). And Facebook's own authority recognizes that a request to

14   add custodians "is not the type of discovery which would create the risk of abuse or harassment."

15   *Lauris v. Novartis AG*, at *3.

16        Rather, Plaintiffs' purpose is to gain access to evidence relevant to Plaintiffs' claims that

17   cannot be obtained from other sources. Unlike the cases to which Facebook cites, Plaintiffs *have*

18   identified why they "expect to discover information" from Zuckerberg and Sandberg "that differs

19   from discovery they have already obtained from the others," *Handloser v. HCL Am., Inc.*, No. 19-

20   cv-01242-LHK (VKD), 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020), and *have* "satisfied

21   [their] burden to show that these high level executives have unique or personal knowledge of the

22   subject matter that warrants their information." *Lutzeier v. Citigroup Inc.*, No. 4:14-cv-00183-

23   RLW, 2015 WL 430196, at *6-7 (E.D. Mo. Feb. 2, 2015) (citation omitted).

24        **E.      A Targeted Search of Zuckerberg's and Sandberg's Files Is Appropriate**

25        As previously stated, Facebook's concern that Plaintiffs are requesting the wholesale

26   production of Zuckerberg's and Sandberg's custodial files distorts Plaintiffs' request. In

27   accordance with Special Master Order No. 1, Plaintiffs identified several RFPs that this dispute

28

1    concerns. Together with either the Discovery Mediators or Special Master Garrie, the parties can

2    craft an appropriate search methodology for Zuckerberg's and Sandberg's custodial files. The

3    parties can discuss, for example, the application of search terms and/or the use of TAR, as well as

4    any other protocols suggested by the Discovery Mediators or decided by the Special Master. *See*

5    *Williams v. Apple, Inc.*, No. 19-cv-04700-LHK (VKD), 2020 WL 5107639, at *2 (N.D. Cal. Aug.

6    31, 2020) ("[Defendant's] burden can be substantially mitigated by application of appropriately

7    narrow search terms and de-duplication of ESI across custodians.").

8    **IV.    CONCLUSION**

9           Plaintiffs ask the Special Master to compel Facebook to designate Zuckerberg and

10   Sandberg as custodians because their knowledge, statements, and actions run to the very heart of

11   this case. Facebook should be required to collect Zuckerberg's and Sandberg's custodial files,

12   with the manner of review and production of their files subject to the parties' agreement or the

13   Special Master's direction.

14

15   Dated: October 12, 2021                        Respectfully submitted,

16   KELLER ROHRBACK L.L.P.                        BLEICHMAR FONTI & AULD LLP

17   By:    */s/ Derek W. Loeser*            By:    */s/ Lesley E. Weaver*
              Derek W. Loeser                          Lesley E. Weaver
18

19   Derek W. Loeser (admitted *pro hac vice*)      Lesley E. Weaver (SBN 191305)
     Cari Campen Laufenberg (admitted *pro hac vice*)  Anne K. Davis (SBN 267909)
20   David Ko (admitted *pro hac vice*)            Matthew S. Melamed (SBN 260272)
     Adele A. Daniel (admitted *pro hac vice*)      Angelica M. Ornelas (SBN 285929)
21   Benjamin Gould (SBN 250630)                   Joshua D. Samra (SBN 313050)
     1201 Third Avenue, Suite 3200                 555 12th Street, Suite 1600
22   Seattle, WA 98101                             Oakland, CA 94607
     Tel.: (206) 623-1900                          Tel.: (415) 445-4003
23   Fax: (206) 623-3384                           Fax: (415) 445-4020
     dloeser@kellerrohrback.com                    lweaver@bfalaw.com
24   claufenberg@kellerrohrback.com                adavis@bfalaw.com
     dko@kellerrohrback.com                        mmelamed@bfalaw.com
25   adaniel@kellerrohrback.com                    aornelas@bfalaw.com
     bgould@kellerrohrback.com                     jsamra@bfalaw.com
26
     Christopher Springer (SBN 291180)
27   801 Garden Street, Suite 301
     Santa Barbara, CA 93101
28   Tel.: (805) 456-1496

Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

## PROOF OF SERVICE BY E-Mail

Re: In re: Facebook, Inc. Consumer Privacy User Profile Litigation (Special Master)
Reference No. 1200058674

I, Anne Lieu, not a party to the within action, hereby declare that on  October 22, 2021, I served the attached Order Regarding Motion to Compel Mark Zuckerberg and Sheryl Sandberg as Document Custodians on the parties in the within action by electronic mail at El Monte, CALIFORNIA, addressed as follows:

Martie P. Kutscher Clark Esq.
Gibson Dunn & Crutcher
1881 Page Mill Rd.
Palo Alto, CA   94304-1125
Phone: 650-849-5300
mkutscher@gibsondunn.com
　　Parties Represented:
　　Facebook, Inc.

Deborah L. Stein Esq.
Alexander P. Swanson Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA   90071-3197
Phone: 213-229-7000
dstein@gibsondunn.com
aswanson@gibsondunn.com
　　Parties Represented:
　　Facebook, Inc.

David J. Ko Esq.
Derek W. Loeser Esq.
Cari C. Laufenberg Esq.
Keller Rohrback LLP
1201 Third Ave.
Suite 3200
Seattle, WA   98101-3052
Phone: 206-623-1900
dko@kellerrohrback.com
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
　　Parties Represented:
　　Bridgett Burk
　　Cheryl Senko
　　Jason Ariciu
　　Jordan O'Hara
　　Rev. Anthony Bell
　　Samuel Armstrong
　　Steven Akins
　　Terry Fischer
　　Tyler King

Chris Springer Esq.
Keller Rohrback LLP
801 Garden St.
Suite 301
Santa Barbara, CA   93101
Phone: 805-456-1496
cspringer@kellerrohrback.com
　　Parties Represented:
　　Bridgett Burk
　　Cheryl Senko
　　Jason Ariciu
　　Jordan O'Hara
　　Rev. Anthony Bell
　　Samuel Armstrong
　　Steven Akins
　　Terry Fischer
　　Tyler King

Lesley E. Weaver Esq.
Ms. Anne Davis
Matthew Montgomery Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
mmontgomery@bfalaw.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Orin S. Snyder Esq.
Gibson Dunn & Crutcher
200 Park Ave.
47th Floor
New York, NY   10166-0193
Phone: 212-351-4000
osnyder@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Russell H. Falconer Esq.
Gibson Dunn & Crutcher
2001 Ross Ave.
Suite 2100
Dallas, TX   75201
Phone: 214-698-3100
rfalconer@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Laura C. Mumm
Gibson Dunn & Crutcher
200 Park Ave.

Matthew S. Melamed Esq.
Angelica M. Ornelas Esq.
Joshua D. Samra Esq.
Bleichmar Fonti & Auld LLP
555 12th St.
Suite 1600
Oakland, CA   94607-3616
Phone: 415-445-4003
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com
    Parties Represented:
    Bridgett Burk
    Cheryl Senko
    Jason Ariciu
    Jordan O'Hara
    Rev. Anthony Bell
    Samuel Armstrong
    Steven Akins
    Terry Fischer
    Tyler King

Joshua S. Lipshutz Esq.
Gibson Dunn & Crutcher
1050 Connecticut Ave NW
Washington, DC   20036
Phone: 202-9558500
JLipshutz@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

Colin B. Davis Esq.
Gibson Dunn & Crutcher
3161 Michelson Dr.
Irvine, CA   92612-4412
Phone: 949-451-3800
cdavis@gibsondunn.com
    Parties Represented:
    Facebook, Inc.

New York, NY   10166
Phone: 212-351-4000
LMumm@gibsondunn.com
     Parties Represented:
     Facebook, Inc.

      I declare under penalty of perjury the foregoing to be true and correct. Executed at El Monte,

CALIFORNIA on  October 22, 2021.


/s/ Anne Lieu
Anne Lieu
JAMS
alieu@jamsadr.com