GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK, INC.'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS** |

Gibson, Dunn & Crutcher LLP

FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Pursuant to Civil Local Rules 7-11 and 79-5 and the Court's December 8, 2021 Order Re: Administrative Motion to Seal (Dkt. 764), Facebook, Inc. ("Facebook") hereby submits this Administrative Motion to File Under Seal limited portions of Special Master Garrie's November 8, 2021 Order Regarding Facebook's Motion for Protective Order Against Production of API Call Logs and supporting exhibits, which include the parties' briefing (the "Order"). Specifically, and in view of the Court's guidance in its December 8 Order, Facebook moves to permanently seal limited portions of the Order and the briefing contained within. For the reasons explained below, there is good cause to seal this information, and Facebook's request is narrowly tailored.

**I.     Background**

A description of the Special Master's Order and the discovery dispute from which it arose is set forth in Facebook's statement in support of its original motion to seal. *See* Dkt. 763 at 2.

**II.    The Good Cause Standard Applies Because The Motion Is Unrelated To The Merits.**

Courts seal information in non-dispositive motions if there is good cause to do so because public disclosure of the information would cause harm or prejudice, and the request is narrowly tailored. *Doe v. Walmart, Inc.*, 2019 WL 636362 at *1-3 (N.D. Cal. Feb. 11, 2019); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Here, the Order relates to a protective order in a discovery dispute regarding a protective order, not the merits of this action, so the good cause standard applies. *Id.*

**III.   There Is Good Cause To Seal Facebook's Narrowly Tailored Proposed Redactions**

Facebook asks the Court to permanently seal limited portions of the Special Master's Order that reveal Facebook's commercially sensitive business information and strategies, and has narrowed the information it seeks to seal in light of the Court's guidance in its December 8, 2021 Order. The remaining information Facebook seeks to seal appears in a few short instances in the Order and the underlying briefs, which the Special Master attached as exhibits to the Order (Exs. B, C, D, and E). There is good cause to seal the following particular categories of information.

***Facebook's internal names for the specific tables.*** The names Facebook uses internally for the tables discussed in the Order and briefing are confidential and should be sealed. *See e.g.*, Order ¶ 1; Ex. B ¶¶ 7, 53; Ex. C at 5:18; Ex. D at 8:5. Facebook's table naming structure sheds light on the

1

FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S
MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

specific locations where user data is stored at Facebook.  Swanson Decl. ¶ 6.  If this information were filed publicly, it would harm Facebook and, potentially, Facebook's users, by providing a roadmap to hackers seeking access to Facebook's internal systems.  *Id*.  *See also In re Elec. Arts, Inc.*, 298 F. App'x at 569-70 (Courts seal information when court files might otherwise "become a vehicle for improper purposes, such as the use of records to . . . release trade secrets" or to circumvent a company's security systems) (internal quotation omitted); *In re Google Inc. Gmail Litig.*, 2014 WL 10537440, at *4 (N.D. Cal. Aug. 6, 2014) (sealing appropriate where the disclosure of information "could lead to a breach in the security of the Gmail system"); *Adtrader, Inc. v. Google LLC*, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020) (finding compelling reasons to seal information that would make it easier to circumvent Google's detection systems).  Sealing Facebook's internal names for the tables would not affect the public's ability to understand the Order or briefing, as the straightforward and descriptive terms used for the tables in the Order and briefing – Mobile, Web, and Method tables – would remain public without threatening Facebook's security or its users' data.

*Information about the precise volume of data the tables contain.*  Figures detailing the data volume of each table appear throughout the Order and attached briefing are confidential and should be sealed,[1] along with equivalent measurements provided to shed light on these data volumes, from which the volumes of data in the tables could be derived.[2]  Disclosure of the specific volume of data in the tables would cause Facebook competitive harm by giving Facebook's competitors detailed insight into the internal functioning of its data management and storage systems.  Courts routinely seal information that would allow competitors to learn about a party's confidential business strategy that it could use to a party's competitive disadvantage.  *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *see also In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at *26 (granting a motion to seal document descriptions that "reflect[ed] and convey[ed] confidential, proprietary information about Endo's business operations as well as its strategies").  Information

---

[1] *See e.g.*, Order ¶¶ 5, 6; Ex. B ¶¶ 8, 21, 32, 60; Ex. C at 2:11, 5:5, 11-13; Ex. D at 9:17, 10:5; Ex. E at 5:7, 19-20, 7:28, 8:26.

[2] *See e.g.* Ex. C at 1:11-12 ("The volume of compressed data . . . [is] the equivalent of [number redacted] laptops [with 256 gigabytes of storage capacity]").

2
FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

about the data volume of the tables and the capacity needed to store them would also allow competitors to infer Facebook's costs of storage, storage methodologies, and storage capacity for its state of the art data storage network.  Swanson Decl. ¶ 7.  It would also assist competitors in building rival systems and better understanding, and exploiting, Facebook's capabilities and limitations.  *Id.*

*Details about the date ranges for the data in the tables.*  Confidential details relating to the date ranges for the data in the tables appear throughout the Order and attached briefing.  *See e.g.*, Order ¶ 5; Ex. B  ¶ 5, 10, 22-26, 29-32, 59; Ex. C at 5:11-13, 6:1.  These date ranges serve as a proxy for the size and data volume of the tables; as discussed above, this information is highly confidential.  Swanson Decl. ¶ 8.  Further, if publicly disclosed, these date ranges would also provide competitors with insight into how Facebook has processed, stored, and analyzed its API call log data over time, allowing these competitors to construct or improve a rival system.  *Id.*

*Information about how tables are partitioned.*  Information about how the tables are partitioned—specifically, the nature and number of the partitions and the volume of data they contain—is confidential and should be sealed.  *See e.g.*, Order ¶ 7; Ex. B ¶ 19; Ex. C at 8:22-25; Ex. D at 10:9, 13.  This information, which reflects the architecture of Facebook's proprietary and state-of-the-art data storage systems, could be used by competitors to make inferences about Facebook's data storage and processing capabilities, which, as explained above, could be used to help construct or improve a competing system.  Swanson Decl. ¶ 9.  Hackers could also use information about these data partitions to better understand how to navigate Facebook's internal systems architecture.  *Id.*

*References to, and samples of, the data fields contained in the tables.*  The names of the data fields contained in the tables described in the Order, samples from the tables, and information that describes the data fields is confidential and should be sealed.[3]  The data fields in the tables and details about those data fields, including their content, constitute "specific granular level information" that would put Facebook at a commercial or competitive disadvantage if publicly disclosed.  *See* Dkt. 764.  The names of the data fields, for example, would provide hackers with specific guideposts to locate confidential data within Facebook's internal systems.  Swanson Decl. ¶ 10.  The names of the

---

[3]  *See* Order at fn. 2; Ex. B ¶¶ 9, 33-34, 36, 41; Ex. B attaching Exs. A-F of Ji Decl.; Ex. C at 4:24-27; Ex. D at 8:6-9, 11:1-2

3

FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

data fields also represent confidential information about the types of data transferred through these API calls and how Facebook stores and processes this data. *Id.* Competitors could use this information to construct or improve their own data management and storage systems and to identify the types of information that Facebook considers important to track. *Id.*

***Descriptions of how Facebook uses the tables and processes their data.*** Descriptions of how Facebook's API call log data tables function, and how Facebook processes the data they contain, are confidential and should be sealed. This information breaks down into five subcategories: (i) how Facebook uses API call log data internally (Ex. B ¶¶ 27, 45; Ex. C at 4:11; Ex. D at 4:3-5, 11:6-28, 12:26-28, 13:16-18; Ex. E at 4:5-7, 9-10); (ii) how Facebook technically processes API call log data (Ex. B ¶ 45); (iii) reasons for why API calls may not be returned (Ex. B ¶ 16, Ex. C at 4:16-18); (iv) how the tables at issue compare to Facebook's others logs of API calls (Order ¶ 4; Ex. B ¶ 7; Ex. C at 5:26-27; Ex. D at 12:3-5); and (v) details about Facebook's data retention practices (Ex. B ¶¶ 14, 16, 17, 21; Ex. C at 5:7-9, 8:2-6). This information reveals Facebook's proprietary methods for tracking, analyzing and storing API calls. Swanson Decl. ¶ 11. If this information were publicly disclosed, competitors could use it to improve their own methods for managing high volumes of data from interactions with large numbers of third parties. *Id.* Further, information on Facebook's data retention practices sheds light on what types of data Facebook retains, how much data it retains, how it is kept, and how long it retains such data. Hackers and other bad actors could use this information to better understand Facebook's data architecture and subsequently target specific repositories of data. *Id.*

***Exact cost to store the tables.*** Facebook's annual expenses in storing the tables appears in a few isolated instances in the briefing attached to the Order and should be sealed. *See* Ex. B ¶ 21; Ex. C at 13:7; Ex. D at 9:18; Ex. E at 5:6, 8:25-26. This data sheds light on the nature of Facebook's proprietary data storage methods and Facebook's cost of business in storage. Swanson Decl. ¶ 12. Courts routinely find good cause to seal businesses' confidential financial information—revenues, profits, and costs—such as Facebook's data storage costs here. *See Sumotext Corp. v. Zoove, Inc.*, 2020 WL 836737, at *2-3 (N.D. Cal. Feb 20, 2020) (collecting cases). Further, public disclosure of this information could enable others to infer the volume of data in the tables at issue, which is harmful to Facebook for the reasons discussed above.

4

FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

***Communications relating to Facebook's App Developer Investigation.*** In their Opposition to Facebook's Motion for Protective Order, Plaintiffs referenced confidential internal Facebook communications produced in this litigation that relate to the App Developer Investigation (ADI). *See* Ex. D at 4:3-5, 11:19-23. Facebook seeks to seal these two short references to ADI because information relating to ADI is highly proprietary and confidential. The Investigation was extremely complex and addressed the operations of millions of applications before changes were made to Facebook's platform. *See* Southwell Decl. (Dkt. 743-2) ¶¶ 9-11. When the Investigation commenced, there was no industry standard for conducting such a large and complex investigation. Facebook and Gibson Dunn & Crutcher devised novel methods and processes to meet this challenge. *Id.* These methods and processes are highly valuable to Facebook as long as they remain confidential. *Id.* Accordingly, Facebook has taken numerous substantial steps to maintain the confidentiality of this information; only a limited number of Facebook employees, counsel, and third-party experts have accessed this highly sensitive information. *Id.* ¶ 11. Disclosure of such information also creates a security risk, as developers could use this information to evade Facebook's enforcement and investigative processes, hurting Facebook and its users. *Id.* ¶ 15.

## CONCLUSION

Facebook seeks to seal specific, highly confidential information related to or contained within proprietary data tables that constitute part of Facebook's state of the art system for storing and managing extremely large volumes of data associated with interactions between Facebook and other applications. This technology gives Facebook a competitive advantage, and protecting it from public disclosure is also important to maintaining Facebook's security from hackers and other bad actors. In response to the Court's December 8, 2021 Order, Facebook substantially narrowed its redactions related to this information, and has provided a particularized showing of the harm Facebook would suffer if information related to the tables falling into several specific and narrow categories were disclosed to the public simply because it was appended to the Special Master's order resolving a discovery dispute. Facebook respectfully requests the Court grant Facebook's motion to permanently seal limited portions of the Order.

5

FACEBOOK'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

| | |
|---|---|
| Dated: December 16, 2021 | **GIBSON, DUNN & CRUTCHER, LLP** |
| | By: /s/ *Martie Kutscher* |
| | Orin Snyder (*pro hac vice*) |
| | osnyder@gibsondunn.com |
| | 200 Park Avenue |
| | New York, NY 10166-0193 |
| | Telephone: 212.351.4000 |
| | Facsimile: 212.351.4035 |
| | |
| | Deborah Stein (SBN 224570) |
| | dstein@gibsondunn.com |
| | 333 South Grand Avenue |
| | Los Angeles, CA 90071-3197 |
| | Telephone: 213.229.7000 |
| | Facsimile: 213.229.7520 |
| | |
| | Joshua S. Lipshutz (SBN 242557) |
| | jlipshutz@gibsondunn.com |
| | 1050 Connecticut Avenue, N.W. |
| | Washington, DC 20036-5306 |
| | Telephone: 202.955.8500 |
| | Facsimile: 202.467.0539 |
| | |
| | Kristin A. Linsley (SBN 154148) |
| | klinsley@gibsondunn.com |
| | Martie Kutscher (SBN 302650) |
| | mkutscherclark@gibsondunn.com |
| | 555 Mission Street, Suite 3000 |
| | San Francisco, CA 94105-0921 |
| | Telephone: 415.393.8200 |
| | Facsimile: 415.393.8306 |
| | |
| | *Attorneys for Defendant Facebook, Inc.* |

Gibson, Dunn & Crutcher LLP

FACEBOOK'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER RE: FACEBOOK'S MOTION FOR PROTECTIVE ORDER AGAINST PRODUCTION OF API CALL LOGS
CASE NO. 3:18-MD-02843-VC