GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK, INC.'S RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL SPECIAL MASTER'S ORDER** |

Pursuant to Civil Local Rules 7-11 and 79-5, as well as the Court's December 8, 2021 Order Re: Administrative Motions To Seal, Dkt. 764, Facebook, Inc. ("Facebook") hereby submits this Renewed Administrative Motion to File Under Seal limited portions of Special Master Garrie's October 21, 2021 Order Regarding Motion To Compel Mark Zuckerberg And Sheryl Sandberg As Document Custodians and supporting exhibits (the "Order"). Specifically, Facebook moves to permanently seal five categories of information: (1) confidential information regarding Facebook's partners; (2) confidential communications with a consultant; (3) confidential communications discussing Facebook's privacy architecture; (4) confidential information regarding enforcement actions against specific developers; and (5) confidential business strategy and financial information. For the reasons explained below, there is good cause to seal permanently this information, and Facebook's request is narrowly tailored.

## I.  Background

A description of the Special Master's Order and the discovery dispute from which it arose is set forth in Facebook's statement in support of its original motion to seal. *See* Dkt. 752 at 2.

## II.  The Good Cause Standard Applies Because The Motion Is Unrelated To The Merits

Courts seal information in non-dispositive motions so long as there is good cause to do so because public disclosure of the information would cause harm or prejudice, and the request is narrowly tailored. *Doe v. Walmart, Inc.*, 2019 WL 636362 at * 1-3 (N.D. Cal. Feb. 11, 2019); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action). Here, the Order relates to a discovery dispute regarding a motion to compel documents, not the merits of this action, so the good cause standard applies. For the reasons explained below, there is good cause to permanently seal Facebook's limited proposed redactions.

## III.  There Is Good Cause To Seal Facebook's Six Categories of Confidential Information

Consistent with Special Master Garrie's instructions to file his Order under seal and in light of the guidance in the Court's December 8 Order, Facebook asks the Court to seal permanently (1) confidential information regarding Facebook's partners, (2) confidential communications with a

consultant, (3) confidential communications discussing Facebook's privacy architecture, (4) confidential information regarding enforcement actions against specific developers, and (5) confidential business strategy and financial information. There is good cause to seal this information.

*Confidential information regarding Facebook's partners.* There is good cause to seal limited portions of quotations and document descriptions within the parties' briefs that reveal the names of Facebook's partners and the terms of their relationships. Courts regularly seal information that would identify confidential business relationships or reveal the terms of business relationships that competitors would be able to use to a party's commercial disadvantage. *See, e.g.*, *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 2018 WL 3642177, at *6 (S.D. Cal. Aug. 1, 2019) (granting a motion to seal information that, if publicly disclosed, would have "identif[ied]" certain "business relationships"); *Asetek Danmark A/S v. CMI USA, Inc.*, 2015 WL 4511036 at *2 (N.D. Cal. July 23, 2015) (sealing information "competitors would be able to take advantage of" and use to cause "competitive harm"). Facebook's proposed redactions include the names of Facebook's partners, Order Ex. A at 5:22–23; Order Ex. C at 5:10–11, which, if publicly disclosed, could harm Facebook's relationships with these partners as well as Facebook's ability to separately negotiate with competitors of these partners. Swanson Decl. ¶ 6. The proposed redactions also include confidential communications between Ms. Sandberg and the leader of a partner, Order Ex. A at 8:25–9:3; Order Ex. B at 12:27–13:7; Order Ex. C at 6:4–6, which would reveal confidential information regarding Facebook's business relationship with this entity. Swanson Decl. ¶ 6. The redactions also include details regarding the terms of certain agreements with Facebook's partners. Order Ex. C at 6:25–26. Competitors could exploit knowledge of the confidential identities of Facebook partners and the terms of such relationships by attempting to undercut Facebook's agreements with those partners, or by undercutting Facebook's efforts to establish relationships with other entities in the same technology spaces as established business partners. Swanson Decl. ¶ 6.

*Confidential communications with consultants.* There is good cause to seal two instances in which portions of quotations and descriptions of communications with a consultant retained to provide strategic business advice were quoted in the parties' briefs. Courts regularly seal information

that reveals confidential information regarding business operations or confidential business relationships.  *In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26 (N.D. Cal. Aug. 9, 2015) (granting a motion to seal document descriptions that "reflect[ed] and convey[ed] confidential, proprietary information about Endo's business operations as well as its strategies"); *see also Obesity Rsch. Inst., LLC*, 2018 WL 3642177, at *6.  Facebook's proposed redactions reveal the name of a consultant hired to provide confidential strategic business advice and the substance of correspondence about that advice.  Order Ex. A at 2:4–6, 9:22–10:3; Order Ex. B at 13:21; Order Ex. C at 7:14–17.  If publicly disclosed, this information could damage Facebook's relationship with this consultant and discourage other consultants from working with Facebook for fear that their confidential communications and strategic advice will be disclosed.  Swanson Decl. ¶ 7.

*Confidential communications discussing Facebook's privacy architecture.*  There is good cause to seal a discussion regarding Facebook's privacy architecture, Order Ex. C at 8:20–25, and a discussion among Facebook leaders contemplating the best strategy for Facebook's privacy architecture and policy, Order Ex. A at 9:6–15.  Courts routinely seal information that would allow competitors to learn about a party's confidential business strategy or information that it could use to a party's competitive disadvantage.  *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *see also In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26.  Developing methods for protecting user privacy is an important need for any social media platform, including Facebook and its competitors.  If communications revealing how Facebook designed its platform and addressed these challenges were publicly disclosed, Facebook's competitors could use such discussions to shortcut development of their own methods and policies, unfairly using Facebook's own confidential experience and know how to compete with Facebook.  Swanson Decl. ¶ 8. Furthermore, disclosure of this information would also provide hackers and other malicious actors with a roadmap to evade or subvert some of Facebook's privacy protections, harming not only Facebook, but Facebook's users.  Swanson Decl. ¶ 8.

*Confidential information regarding enforcement actions against specific developers.*  There is good cause to seal a handful of confidential discussions regarding Facebook's enforcement of its

privacy and platform policy against certain developers. Order Ex. A at 5:14–18; Order Ex. B at 10:2–8; Order Ex. C at 8:10–12. Courts routinely seal information that would harm a party's business relationships, or would reveal a party's confidential business operations. *Obesity Rsch. Inst., LLC*, 2018 WL 3642177, at *6; *In re Qualcomm Litig.*, 2017 WL 5176922, at *2; *In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26. As discussed above, developing methods for protecting user privacy is important for any social media platform. Swanson Decl. ¶ 8. Disclosure of confidential discussions about Facebook's policy-enforcement efforts in which developers were punished would reveal confidential details of Facebook's internal business operations. *Id.* ¶ 9. Furthermore, publicly disclosing the identities of violating developers, and Facebook's internal discussions about them, will harm Facebook's relationships with those developers. This may compromise Facebook's ability to work constructively with developers in the future to ensure compliance with Facebook's policies. *Id.*

   ***Confidential business strategy and financial information***. Facebook seeks to seal a small number of discussions regarding the business strategy and financial information for a specific Facebook business program discussed with Facebook's board of directors, Order Ex. A at 10:9–16; Order Ex. B at 11:3-4, 11:20-23; Order Ex. C at 6:7-7:6, and opinions of Facebook's senior leaders regarding Facebook's strategy and contemplated business practices, Order at 3; Order Ex. A at 5:20–25, 6:4–6, 8:24, 9:6–15; Order Ex. C at 5:9–15. Courts routinely find good cause to seal confidential business strategies—particularly confidential financial information—that could reveal confidential information about a company's business model. *Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) (finding "sufficiently compelling reason to seal" documents containing "confidential business and financial information"). If publicly disclosed, this information would reveal to Facebook's competitors the approximate value of a specific business program, which would help competitors copy Facebook's practices or provide competitors leverage to negotiate agreements with Facebook's business partners. Swanson Decl. ¶ 10. Competitors could also use Facebook's confidential information about the value of certain business practices— developed by Facebook at its own risk and expense—to make better informed decisions about how to allocate resources with respect to similar practices, giving Facebook's competitors an unfair

advantage in the market. *Id.* Finally, discussions involving Mr. Zuckerberg and Ms. Sandberg concerning contemplated business strategies reveal the opinions of Facebook's senior leaders regarding Facebook's strategic priorities and the best methods to achieve Facebook's goals. *Id.* ¶ 11. Discussions such as these are valuable to Facebook's competitors, who could take advantage of this information to make better-informed business decisions and seize an unfair commercial advantage. *Id.*

Because of the particularized harm that would occur from public disclosure of this confidential information, limited portions of the Order and supporting exhibits are highly sensitive and should be sealed permanently.

### IV.   The Limited Proposed Redactions Are Narrowly Tailored

Facebook has substantially reduced the volume of proposed redactions as compared to its original motion to seal in light of the Court's guidance. In general, Facebook has endeavored to limit proposed redactions to particular names, business partners, and descriptions of specific sensitive and confidential business strategies and practices that Facebook's competitors could use against it. Thus, the remaining proposed redactions are narrowly tailored because Facebook's redactions are strictly limited to the specific confidential information that would cause Facebook harm if publicly disclosed. *See Dunbar v. Google, Inc.*, 2013 WL 12216625, at *1 (N.D. Cal. Aug. 18, 2014) (granting sealing requests that were "narrowly tailored to protect [a company's] proprietary information").

\*     \*     \*

For these reasons, Facebook respectfully requests that the Court grant this renewed administrative motion to file Special Master Garrie's Order under seal, consistent with Special Master Garrie's instructions.

Dated: December 16, 2021

**GIBSON, DUNN & CRUTCHER, LLP**

By: /s/ *Martie Kutscher*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*