GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **FACEBOOK, INC.'S STATEMENT IN SUPPORT OF SEALING SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS** |

Gibson, Dunn & Crutcher LLP

FACEBOOK, INC.'S STATEMENT IN SUPPORT OF SEALING SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Pursuant to Civil Local Rules 7-11 and 79-5, Facebook, Inc. ("Facebook") hereby submits this Statement In Support Of Sealing Special Master Garrie's (1) December 8, 2021 Order Regarding Production Of ADI Related Documents (the "Order"), Dkt. 765, and (2) December 20, 2021 Amended Ordering Regarding Production Of ADI Related Documents (the "Amended Order"), Dkt. 775.  Facebook's proposed redactions are limited to confidential information the Court has sealed previously and highly confidential investigative reports from its App Developer Investigation ("ADI" or "the Investigation") that were prepared at the direction of counsel and produced under compulsion. Public disclosure of Facebook's investigative reports would publicly reveal privileged and highly confidential information from Facebook's legal investigation; reveal highly sensitive information regarding non-parties; allow Facebook's competitors to copy ADI's proprietary methods; potentially compromise Facebook's security enforcement; and expose competitively sensitive information regarding Facebook's technical infrastructure and operations.  There is good cause to seal permanently this information, which the Special Master has indicated is not necessary to his ruling.

## I.    Background

On September 8, 2021, this Court granted Plaintiffs' motion to compel production of certain ADI materials over Facebook's objection.  Dkt. 736.  Pursuant to that Order and under compulsion, Facebook produced certain privileged materials.  These materials include nine background and technical reports prepared by its consulting experts during the Investigation at the direction of counsel and to assist counsel in providing Facebook with legal advice—including in this action.

The Court's Order also directed the Parties to "work with the Special Master regarding production of additional materials consistent with [the Court's] guidance."  *Id.* at 7.  Pursuant to that instruction, the parties exchanged correspondence regarding the scope of the Court's Order.  Order[1] Ex. B.  Then, at the Special Master's direction, the parties filed with JAMS statements identifying the issues they believed to remain in dispute.  Order Exs. C, D, E, and F.  Plaintiffs attached to their JAMS submission 373 pages of privileged background and technical reports prepared by Facebook's

---

[1]    The exhibits are identical for both the Special Master's Order and Amended Order. Accordingly, any citation to an exhibit of the Order should be construed as also citing the same exhibit to the Amended Order.

Gibson, Dunn & Crutcher LLP

consulting experts, as well as documents this Court previously sealed.

On December 8, the Special Master issued the Order resolving the parties' dispute, which attached as exhibits the parties' correspondence and JAMS submissions.  Southwell Decl. Ex. A.  On December 15, Plaintiffs filed an Administrative Motion To Consider Whether Another Party's Material Should Be Sealed, attaching a copy of the Order.  Dkts. 765, 766.  On December 20, the Special Master issued the Amended Order, attaching the same documents.  Southwell Decl. Ex. C. Plaintiffs filed another Administrative Motion To Consider Whether Another Party's Material Should Be Sealed, and attached a copy of the Amended Order.  Dkts. 775, 776.  The Special Master then issued another Amended Order on December 22, which was identical to his Amended Order except that it did not include the parties' underlying correspondence and JAMS submissions, which the Special Master determined were not significant to and did not need to be attached to his ruling.

## II.      The Good Cause Standard Applies Because The Motion Is Unrelated To The Merits

Courts seal information in non-dispositive motions if there is good cause to do so because public disclosure of the information would cause harm or prejudice, and the request is narrowly tailored.  *Doe v. Walmart, Inc.*, 2019 WL 636362 at * 1–3 (N.D. Cal. Feb. 11, 2019); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  The Order and Amended Order relate to a discovery dispute, not the merits of this action, so the good cause standard applies.

## III.     There Is Good Cause To Seal Facebook's Limited Proposed Redactions

Facebook asks the Court to permanently seal (i) limited information the Court has sealed previously; and (ii) privileged background and technical reports prepared by Facebook's consulting experts at the direction of counsel, which Facebook has produced to Plaintiffs under compulsion over its assertions of attorney-client privilege and work product protection.

***Information the Court has sealed previously.***  Facebook asks the Court to seal limited portions of documents containing information that it has previously sealed, including:

1.      The identities of consulting experts retained by Gibson Dunn to provide professional services related to ADI.  This information is confidential and commercially sensitive, Southwell Decl. ¶ 13, and the Court has previously found good cause to seal it.  Dkts. 737, 764.

2.      The identities of apps and developers investigated during ADI and actions taken

2

Gibson, Dunn & Crutcher LLP

against them, which the Court has previously found good cause to seal.  *See* Ex. D to Order Ex. F

(copy of Dkt. 513-1, sealed by the Court at Dkt. 519).  This information is not only confidential to

Facebook but also to third parties who would likely consider their app IDs, suspension status, and any

rationale for that suspension sensitive.  Southwell Decl. ¶ 14.  As explained previously, disclosure

that particular apps were suspended may also unfairly inflict reputational harms on parties that

Facebook suspended because they did not cooperate with ADI, as opposed to a specific finding of

wrongdoing on Facebook's platform.  Dkt. 514 at 1–2; Dkt. 514-1 ¶¶ 4–5; Southwell Decl. ¶ 14.

       3.     Limited redactions to Plaintiffs' Motion To Compel ADI Materials that include (i) the

identities of Facebook's consulting experts and (ii) privilege log entries describing confidential

materials.  Ex. F to Order Ex. F at 8–9.  These redactions are identical to redactions the Court has

approved previously.  Dkts. 743-5, 764.

       4.     The name and purpose of an email account created and used for ADI, *e.g.*, Order Ex.

D at 1:24, which the Court found good cause to seal previously, *see* Dkt. 743-4 at 16:3–19; Dkt. 744.

      Because of the harm that would occur from public disclosure of this confidential information,

Southwell Decl. ¶¶ 12–14, Facebook respectfully asks the Court to again seal this information.

      ***Privileged investigative reports generated by Facebook's consulting experts.***  There is good

cause to seal entirely privileged investigative reports that were prepared by Facebook's consulting

experts at the direction of counsel and to assist counsel in providing Facebook with legal advice.

Order Ex. E (pp. 46–419).  These reports were designed to capture information that counsel deemed

relevant to assessing Facebook's legal risks, Southwell Decl. ¶ 18, and Facebook produced them to

Plaintiffs only under compulsion.  These reports are not only privileged; they are also replete with

confidential information about Facebook, ADI, and the third parties that Facebook investigated.  *Id.*

¶ 22.  If disclosed, these reports would harm Facebook and third parties for four reasons.

      First, each report is focused on a specific developer and/or set of apps investigated by ADI

and includes substantial sensitive business information about third parties.  *Fed. Trade Comm'n v.*

*Qualcomm Inc.*, 2018 WL 6615298, at *3 (N.D. Cal. Dec. 17, 2018) (granting motion to seal

"competitively sensitive business information" of non-parties).  The background and technical reports

were intended to identify potential concerns about third-parties for counsel to investigate, and in

3

many cases, concerns identified were not confirmed or were later disproven based on additional evidence gathered by the ADI team.  Disclosure of any portion of these reports would reveal confidential and highly sensitive information about third parties and—in some cases—cause public disclosure of unverified (and in some cases disproven)  information about these parties.  Southwell Decl. ¶ 22.  The reports should be sealed to protect the rights of non-parties and for the same reasons the Court has sealed the identities of the apps and developers that Facebook investigated during ADI.  Indeed, disclosure of any portion of the reports would disclose publicly which apps were investigated (and substantial information about those apps), undermining the Court's prior ruling.

Second, if publicly disclosed, the information in Facebook's privileged background and technical reports could pose security risks to Facebook and its users by revealing ADI's methods, the information Facebook considered worthy of investigation, and the capabilities of Facebook's investigative team.  ADI was designed to identify applications that may have misused data before additional platform protections were implemented, and these reports were designed to capture the information counsel deemed significant in investigating potential data misuse.  Southwell Decl. ¶¶ 6, 7.  Every portion of the reports reveals what information Facebook's attorneys deemed relevant to assessing the potential for data misuse.  *Id.* ¶ 23.  They also reveal confidential information about Facebook's privacy and security architecture.  Publicly revealing what information Facebook's counsel considers significant in investigating apps, the tools and capabilities Facebook may use to uncover information about data misuse, and information regarding Facebook's privacy and security architecture could all provide bad actors with a roadmap to evade investigative and enforcement mechanisms Facebook has enacted to detect and disrupt abuse of its platform.  *Id.*

Third, disclosure of the reports would publicly reveal commercially sensitive information regarding Facebook's technical infrastructure and operations.  In investigating the potential for data misuse, reports include details about where certain Facebook data is stored and how it could be accessed, consistent with users' privacy selections.  Southwell Decl. ¶ 24.  Developing methods for protecting user privacy and storing user data are important needs for any social media platform, and if publicly disclosed, Facebook's competitors could use information revealing Facebook's proprietary methods for tracking, analyzing, and storing user information to improve their own methods of

Gibson, Dunn &
Crutcher LLP

FACEBOOK, INC.'S STATEMENT IN SUPPORT OF SEALING SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI
RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

1   storing user data to Facebook's competitive disadvantage.  *Id.*  For this reason, the Court recently

2   sealed information regarding how Facebook stores and processes user data, and it should do so here,

3   too.  *See* Dkt. 767 at 4 (sealing request); Dkt. 770 (order sealing such information).

4          Fourth, disclosure of any portion of the privileged, investigative reports would reveal

5   confidential information about the Investigation's innovative and proprietary design, structure,

6   techniques, and strategies.  There was no industry standard for investigating millions of applications

7   and the ADI team devised and tailored proprietary methods and techniques.  Southwell Decl. ¶ 10.

8   The reports are the result of proprietary analytics designed exclusively for ADI to score, rank, and

9   better understand available data about each app and developer.  *Id.* ¶ 19.  The topics of investigation

10  in each report—even including analyses of publicly-available information—reveal the criteria and

11  information that were important to the ADI team's innovative and proprietary analyses.  *Id.* ¶ 20.

12  Publicly disclosing this information would allow Facebook's competitors to copy ADI's methods and

13  techniques and use Facebook's investment and experience to gain an unfair competitive advantage.

14  *Id.* ¶ 25; *see, e.g.*, *In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26 (Aug. 9, 2015 N.D.

15  Cal.) (sealing privilege log descriptions that "reflect[ed] and convey[ed] confidential, proprietary

16  information about Endo's business operations as well as its strategies").

17  **IV.  The Limited Proposed Redactions Are Narrowly Tailored**

18         For the reasons above, Facebook's privileged and highly confidential background and

19  technical reports should be sealed in their entirety.  Sealing this information would not affect the

20  public's ability to understand the Special Master's rulings.  Indeed, the Special Master recently issued

21  a second Amended Order, which is identical to his first Amended Order except that it does not

22  include attachments, which he determined were not significant to his ruling.  For the remaining

23  materials, Facebook's proposed redactions are confined to information the Court has previously

24  found good cause to seal.  *See Dunbar v. Google, Inc.*, 2013 WL 12216625, at *1 (N.D. Cal. Aug. 18,

25  2014) (granting sealing requests that were "narrowly tailored to protect . . . proprietary information").

26                             \*     \*     \*

27         For these reasons, Facebook respectfully requests that the Court seal permanently the

28  confidential information contained within its limited proposed redactions to the Orders.

5

FACEBOOK, INC.'S STATEMENT IN SUPPORT OF SEALING SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI
RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

Dated:  January 4, 2021

**GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/ Martie Kutscher*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*