# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S AMENDED ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS** |

Gibson, Dunn & Crutcher LLP

SOUTHWELL DECLARATION ISO FACEBOOK'S STATEMENT ISO ADMINISTRATIVE MOTION TO FILE UNDER SEAL APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S AMENDED ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

I, Alexander H. Southwell, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of New York. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP. I submit this declaration in support of Facebook's Statement In Support Of Administrative Motion To File Under Seal Appellate Record Of Appeal Of Special Master's Amended Order Re: Production Of ADI Related Documents. I make this declaration on my own knowledge, and I would testify to the matters stated herein under oath if called upon to do so.

2. Attached as **<u>Exhibit A</u>** is a true and correct **redacted** copy of Facebook's Appellate Record For Facebook's Appeal Of Special Master's Amended Order Re: Production Of ADI Related Documents (the "Appellate Record"). The redactions are of material that is confidential, and for which public disclosure would harm Facebook, as explained below and in Facebook's Statement in Support.

3. Attached as **<u>Exhibit B</u>** is a true and correct **unreacted** copy of the Appellate Record. Facebook's proposed redactions are marked with red highlighting.

4. Facebook initiated the Application Developer Investigation ("ADI" or the "Investigation") because, in the wake of the reporting of data misuse by Cambridge Analytica in March 2018, Facebook anticipated that it would have to respond to known and expected legal challenges in connection with applications and developers that may have had access to large amounts of user data because they were active before Facebook placed additional, significant limitations on the amount and type of data developers could request from users through the Facebook Platform in 2014.

5. To this end, Facebook retained outside counsel (Gibson, Dunn & Crutcher LLP) experienced with cybersecurity and data privacy internal investigations to design and direct a new investigation (ADI) that could, among other things, gather the facts necessary for providing legal advice to Facebook about litigation, compliance, regulatory inquiries, and other legal risks facing the company resulting from potential data misuse and activities by third-party app developers operating on the prior version of Facebook's platform.

1

DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

6. I led the Gibson Dunn team engaged to develop and conduct the Investigation. I am a former federal prosecutor and have more than two decades of experience with large-scale, corporate investigations. The Gibson Dunn team worked with Facebook's in-house attorneys and members of Facebook's Partnerships, Data Policy, and DevOps teams on the ADI. I and my team at Gibson Dunn also led the recruitment and retention of technical experts and investigators for the ADI, including two leading forensic consulting firms with expertise in assisting with technology-focused internal investigations. These consulting experts operated as an extension of the Gibson Dunn team to support our provision of legal advice to Facebook, and the investigators worked under the direction of Gibson Dunn and Facebook Legal. The "ADI team," as used herein, is comprised of Gibson Dunn lawyers and paralegals, our consulting experts, and Facebook in-house counsel and internal partners including subject matter experts, all of whom operated at the direction of counsel. At its largest, the ADI team consisted of over 300 members.

7. Gibson Dunn and in-house counsel needed to partner with the outside expert consulting firms and Facebook personnel to effectively advise Facebook of legal risk. The ADI team worked at the direction of counsel, relied on counsel's input and guidance, and played a necessary role in facilitating legal advice by counsel and implementing that advice by the company. The ADI was an iterative process through which ADI team members, including counsel and subject matter experts, were able to learn as the investigation progressed. As such, documents initially drafted by members of the ADI team were generally prepared by or at the direction of counsel, and counsel edited or otherwise helped shape their contents to ensure they were serving the legal purpose for which they were created.

8. The Investigation was highly complex and addressed millions of applications operating before changes were made to Facebook's platform. There was no industry standard for how to conduct such an investigation. Rather, under Gibson Dunn's and in-house counsel's leadership, the ADI team devised and tailored the ADI's methods, protocols, and strategies to address the specific risks posed by these legal challenges. These proprietary methods and techniques are valuable to Facebook.

9. The methods, techniques, and strategies employed during the Investigation are highly confidential. Indeed, Facebook has taken numerous substantial steps to maintain the confidentiality of details regarding the Investigation. For example, details about the Investigation are disclosed to Facebook employees only on a need-to-know basis. As a result, a limited number of Facebook employees, counsel, and third-party experts have accessed this highly sensitive information.

10. The proposed redactions cover information that would reveal proprietary and highly confidential aspects of the Investigation. The Investigation was also privileged, and Facebook has produced ADI-related materials under compulsion over its assertions of attorney-client privilege and work product protection. Public disclosure of portions of the very information Facebook seeks to protect would cause Facebook to suffer irreparable harm by publicly disclosing aspects of Facebook's legal Investigation that Facebook has diligently worked to keep confidential and compromising Facebook's efforts to assert attorney-client privilege or work product protection over these materials on appeal or in other actions.

11. Facebook asks the Court to permanently seal the names of two consulting expert firms who assisted with the Investigation on a confidential basis, working at Gibson Dunn's direction. If these names were disclosed publicly, competitors would have access to confidential information regarding Facebook's business relationships with third-party experts. Public disclosure could undermine Facebook's and Gibson Dunn's current and future relationships with third-party vendors and be used to cause Facebook competitive harm. The Court has previously found good cause to seal this information. *See* Dkts. 737, 764.

12. Facebook also seeks to seal the identities of apps and developers that were investigated by ADI, as well as a document identifying actions taken against these apps and developers by ADI. Record at 0142–44, 0907–09 (Dkt. 513-1, under seal). If this information were publicly disclosed, these non-party apps and developers could suffer reputational harm because members of the public might infer that they had engaged in wrongdoing, when some apps were suspended for non-cooperation with ADI.

13. Facebook also seeks to seal limited portions of its Motion For Reconsideration Of Special Master's Order Regarding Production Of ADI Related Documents and my Declaration In

3

Gibson, Dunn & Crutcher LLP

DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Support Of The Motion For Reconsideration, Record at 0011–0032, that reveal confidential information that has not been publicly disclosed regarding (1) the number of audits and interviews conducted by the ADI team; (2) the number of background and technical reports generated by Facebook's consulting experts; and (3) the total numbers of apps and developers investigated and documents generated related to these reports, audits, and interviews. As previously stated, there was no industry standard for how to conduct the Investigation, and the ADI team devised proprietary methods, protocols, and strategies in conducting the Investigation that are valuable to Facebook. *Supra* ¶ 8. Public disclosure of the number of reports, audits, and interviews conducted by the ADI team, as well as the number of apps investigated and number of documents generated, would reveal confidential details of ADI's investigative methods and strategies for ranking the relative risks of apps and developers and determining what level of additional investigation is necessary. Facebook's competitors could use this information to Facebook's competitive disadvantage when conducting their own internal investigations into data misuse, gaining benchmarks for an appropriate level of investigation that Facebook developed through significant investment. Bad actors could also use this information to evade investigative and enforcement mechanisms Facebook has enacted to detect and disrupt abuse of its platform.

**Background and Technical Reports**

14. Facebook asks the Court to seal nine background and technical reports generated by Facebook's consulting experts during the Enhanced Examination phase of the Investigation. Record at 0424–0797. In the Enhanced Examination phase, apps were selected for further review by counsel through proprietary risk-based approaches based on counsel's assessment of where and how the greatest legal risk to the company might arise to provide legal advice to Facebook regarding potential risks and active and potential litigation. Once an app or developer had been identified for further review based on criteria that my team had devised, Gibson Dunn and in-house counsel directed our consulting experts to conduct intensive background and technical investigations, collect and compile specific evidence that counsel believed particularly salient to their legal analyses, and report their findings to counsel. Each report for a single developer could include extensive technical and other details and these reports were specifically tailored by counsel, in substance and format, so that

4

DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

counsel could evaluate the potential for data misuse and associated legal risks. Reports varied tremendously based on counsel's instructions and what counsel determined was needed to provide legal advice. Although the Court ordered Facebook to produce the nine reports included in the Appellate Record, Facebook continues to assert that these reports are attorney-client privileged and work product and has produced these reports under compulsion.

15. Enhanced Examination also included application of a proprietary model (called the Risk-Prioritization Formula) developed under the guidance and with the advice of counsel that assisted in assessing the risks related to access to data, and the associated legal risks to Facebook, based in part on the permissions granted to apps and the number of users that authorized specific permissions. The Risk-Prioritization Formula was used exclusively in the ADI to prioritize apps for review during the Enhanced Examination phase.

16. The nine background and technical reports included in the Appellate Record were created in the Enhanced Examination phase at the direction of counsel to assist counsel in the provision of legal advice and that contain or reveal the mental impressions and advice of counsel. Facebook has produced the nine background and technical reports under compulsion, over its privilege and work product objections. As noted above, Gibson Dunn worked directly with the rest of the ADI team to design ADI-specific investigation reports to contain information relevant to counsel's evaluation of the potential for data misuse and associated legal risk.

17. **Background reports.** Counsel designed the background reports to capture information counsel deemed relevant to assessing the risk of data misuse and legal risk to Facebook. These reports varied in content depending on the particulars of the investigation, as directed by counsel. For example, Gibson Dunn and Facebook's in-house legal team often sought different information from different types of developers (e.g., corporate vs. individual), when providing legal advice.

18. **Technical reports.** Counsel devoted substantial time with the rest of the ADI team, to work through the technical information available about apps and developers on Facebook's platform, understand the significance of that data, and weigh the value of various technical details to our legal risk analysis. With our ADI consulting experts, we identified which details were most relevant to our

5

Gibson, Dunn & Crutcher LLP

Declaration Of Alexander H. Southwell In Support Of Facebook's Statement In Support Of Sealing Appellate record Of Appeal Of Special Master's Orders Regarding Production Of ADI Related Documents
Case No. 3:18-md-02843-VC

legal risk analysis for inclusion in the reports. When we needed a more nuanced understanding about the data to render our legal advice to Facebook, working with our technical experts, we designed proprietary analytics (that had not before existed at Facebook and were used exclusively in ADI) in order to score, rank, and better understand the available data. Because our counsel team consistently had questions about certain data points to assist in the rendering of legal advice, over time, those questions were built into the structure of the reports, so that counsel would have the answer at their fingertips to streamline their legal decision-making process.

19.   To facilitate our attorney review at scale, we instructed the ADI team regarding the criteria and information that were important to us in rendering our opinion on legal risk, and requested that they, based on these attorney-selected criteria, include preliminary recommendations in their reports to facilitate Gibson Dunn's legal advice about the risk of data misuse. Therefore, the topics of investigation in each report—even including analyses of publicly-available information—reveal the criteria and information that were important to the ADI team's innovative and proprietary analyses.

20.   Although counsel may not have drafted each of these documents directly, the documents created as part of the Enhanced Examination phase were created at the direction of counsel, reflect attorney advice and mental impressions regarding the evidence counsel deemed important in rendering legal advice, and were directly used by counsel to provide legal advice to Facebook.

21.   Each background or technical report is focused on a specific developer or set of apps investigated by ADI and is replete with sensitive business information about third parties. The background and technical reports were intended to identify potential concerns about third-parties for counsel to investigate. In some cases, the concerns identified were disproven based on additional evidence gathered by the ADI team. Disclosure of any portion of these reports would reveal confidential and highly sensitive information about third parties and—in some cases—cause public disclosure of information that has not been subject to confirmation or verification. The reports should be sealed to protect the rights of non-parties.

6

DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

22. Public disclosure of the background and technical reports could also create security risks. The Investigation was designed to identify applications that may have misused data before Facebook implemented additional platform protections. Every portion of the background and technical reports reveals what information counsel deemed relevant to assessing the potential for data misuse, as well as the tools and capabilities of consulting experts in investigating that information. Data misuse and other abuse practices by app developers can be adversarial in nature, meaning that bad actors commonly attempt to evade technological, investigative and enforcement mechanisms designed to detect and disrupt abuse. As a result, Facebook has strictly maintained the confidentiality of ADI details to ensure bad actors cannot use that information in attempts to evade the additional restrictions on data access that Facebook has enacted. If publicly disclosed, this sensitive information could make Facebook's enforcement efforts less effective, which would cause harm to Facebook and its users.

23. The background and technical reports also contain commercially sensitive information regarding Facebook's technical infrastructure and operations regarding how Facebook stores data. In investigating the potential for data misuse, reports include details about apps accessing Facebook through API calls, consistent with users' privacy selections. Facebook's methods for protecting user privacy and storing user data are valuable. If information about Facebook's API call log system were publicly disclosed, competitors could potentially use it to improve their own competing methods for managing high volumes of data from interactions with large numbers of third parties.

24. The background and technical reports also are replete with confidential information about the Investigation's novel methods, processes, and strategies designed and developed by counsel in anticipation of litigation. Public disclosure of any portion of the reports would reveal highly sensitive information, such as (i) the identities of the apps and developers that were investigated during the Investigation, (ii) the information that counsel directed its consulting experts to investigate for each app or developer, (iii) the capabilities of the consulting experts in conducting their investigation, or (iv) the Investigation's risk assessment for each app. Public disclosure of the Investigation's targets, strategies, methods, and capabilities would allow Facebook's competitors to

7
DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

copy these proprietary, innovative methods and techniques that Facebook and its counsel developed, which would cause Facebook competitive harm.

25. For these reasons, the information redacted in the Appellate Record is "Confidential" under the Protective Order and protected from public disclosure by Federal Rule of Civil Procedure 26(c).

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2022 in New York, New York.

_____
Alexander H. Southwell

8

Gibson, Dunn & Crutcher LLP

DECLARATION OF ALEXANDER H. SOUTHWELL IN SUPPORT OF FACEBOOK'S STATEMENT IN SUPPORT OF SEALING APPELLATE RECORD OF APPEAL OF SPECIAL MASTER'S ORDERS REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC