GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK, INC.'S STATEMENT IN SUPPORT OF SEALING MATERIALS RE: SPECIAL MASTER'S ADI HEARING** |

Pursuant to Civil Local Rules 7-11 and 79-5, Facebook, Inc. ("Facebook") hereby submits this Statement In Support of Sealing documents submitted with Plaintiffs' Administrative Motion To Consider Whether Another Party's Material Should Be Sealed (Dkt. 794): (i) the transcript of the December 4, 2021 hearing before the Special Master (the "Transcript") regarding production of documents related to Facebook's App Developer Investigation ("ADI" or the "Investigation"); and (ii) Plaintiffs' presentation materials for the December 4, 2021 hearing (the "Presentation").

Facebook's proposed redactions are limited to (i) confidential information the Court has sealed previously, (ii) confidential details of ADI, and (iii) excerpts of highly confidential investigative reports from ADI that were prepared at the direction of counsel and produced under compulsion. Public disclosure of excerpts from Facebook's investigative reports would publicly reveal privileged and highly confidential information from Facebook's legal investigation; reveal highly sensitive information regarding non-parties; allow Facebook's competitors to copy ADI's proprietary methods; and potentially compromise Facebook's security enforcement. There is good cause to permanently seal this information.

## I. Background

Additional background regarding proceedings before the Special Master is included in Facebook's Statement In Support Of Sealing Special Master's Orders Regarding Production Of ADI Related Documents. Dkt. 788. On December 4, 2021, the parties appeared before the Special Master at a hearing to discuss their positions regarding production of documents related to ADI. Each party provided visual presentations to the Special Master, and the Special Master and parties discussed the issues related to the dispute for over three hours.

On December 23, 2021, Facebook filed a notice of appeal of the Special Master's order resolving the dispute. Dkt. 778. Plaintiffs sought to augment the appellate record with the transcript of the December 4 hearing and the parties' presentations. Dkt. 795 at 1. In connection with Facebook's appeal, Plaintiffs filed an Administrative Order To Consider Whether Another Party's Material Should Be Sealed, attaching a copy of the Transcript of the hearing and copies of the parties' visual presentations. Dkt. 794. Facebook submits this Statement in Support of sealing limited portions of the Transcript and Plaintiffs' Presentation to the Special Master.

**II.     The Good Cause Standard Applies Because The Motion Is Unrelated To The Merits**

Courts seal information in non-dispositive motions if there is good cause to do so because public disclosure of the information would cause harm or prejudice, and the request is narrowly tailored. *Doe v. Walmart, Inc.*, 2019 WL 636362 at * 1–3 (N.D. Cal. Feb. 11, 2019); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The documents at issue here relate to a discovery dispute, not the merits of this action, so the good cause standard applies.

**III.    There Is Good Cause To Seal Facebook's Three Categories of Confidential Information**

Facebook asks the Court to permanently seal (i) limited information the Court has sealed previously, as well as two categories of confidential information Facebook has sought to seal in previous motions on which the Court has not yet ruled (Dkts. 788, 804): (ii) confidential details of ADI, consisting of investigation and enforcement techniques, and the number of reports, audits, and interviews; and (iii) excerpts from privileged background and technical reports prepared by Facebook's consulting experts at the direction of counsel, which Facebook has produced to Plaintiffs under compulsion over its assertions of attorney-client privilege and work product protection.

***Information the Court has sealed previously.*** Facebook asks the Court to seal limited portions of documents containing information that it has previously sealed, including:

1.   The identities of consulting experts retained by Gibson Dunn to provide professional services related to ADI. *E.g.*, Transcript at 8:2; Presentation at 8. The Court has previously found good cause to seal this confidential and commercially sensitive information. Dkts. 737, 764.

2.   The identities of apps and developers investigated during ADI and actions taken against them, which the Court has previously sealed. *E.g.*, Transcript at 60:13, 65:6, 142:24; Presentation at 20. This information is not only confidential to Facebook but also to third parties who would likely consider their app IDs and information revealed in Facebook's background reports to be sensitive. Southwell Decl. ¶ 14. As explained previously, disclosure that particular apps were investigated or suspended may also unfairly inflict reputational harms on parties that Facebook suspended because they did not cooperate with ADI, as opposed to a specific finding of wrongdoing on Facebook's platform. Dkt. 514 at 1–2; Dkt. 514-1 ¶¶ 4–5; Dkt. 519 (sealing such information); Southwell Decl. ¶ 14.

3. The name and purpose of an email account created and used for ADI, *e.g.*, Transcript at 97:7; Presentation at 11, which the Court previously sealed, *see* Dkt. 743-4 at 16:3–19; Dkt. 744.

Because of the harm that would occur from public disclosure of this confidential information, Southwell Decl. ¶¶ 12–14, Facebook respectfully asks the Court to again seal this information.

***Confidential details revealing investigatory and enforcement techniques:*** There is good cause to seal information revealing ADI's investigatory and enforcement techniques. *E.g.*, Transcript at 82:14–83:2 (discussing how Facebook's consulting experts obtained data to conduct analyses), 104:14–25 (discussing findings and enforcement techniques), 123:23–124:25 (discussing process of auditing developers); Presentation at 12 (copy of enforcement communication sent to developer). There is also good cause to seal the number of reports, audits, and interviews related to the Investigation. *E.g.*, Transcript at 127:2–4.

There was no industry standard for investigating millions of applications before the ADI. The ADI team therefore devised and tailored proprietary methods and techniques for conducting the Investigation. Southwell Decl. ¶ 10. Public disclosure of ADI's techniques and the number of reports, audits, and interviews would reveal confidential details of the Investigation's strategies—developed at Facebook's expense—for ranking the risks of developers, determining how many warranted increased scrutiny, investigating developers, and enforcing Facebook policy against developers. *Id.* ¶ 15. Facebook's competitors could use this information to improve their own investigations into data misuse, to Facebook's competitive disadvantage. *Id.*; *see In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26 (N.D. Cal. Aug. 9, 2015) (sealing descriptions that "reflect[ed] and convey[ed] confidential, proprietary information"). Bad actors could also use this information to evade investigative and enforcement mechanisms Facebook has enacted to detect and disrupt abuse of its platform, potentially harming both Facebook and its users. Southwell Decl. ¶ 15.

***Excerpts of privileged investigative reports generated by Facebook's consulting experts.*** There is good cause to seal excerpts of privileged investigative reports that were prepared by Facebook's consulting experts at the direction of counsel and to assist counsel in providing Facebook with legal advice. *E.g.*, Transcript at 64:10–65:14 (excerpts of reports discussing findings of investigation); Presentation at 23 (same). These reports were designed to capture information that

counsel deemed relevant to assessing Facebook's legal risks, Southwell Decl. ¶¶ 19, 22, 24, and Facebook produced them to Plaintiffs only under compulsion.  The excerpts of these reports are not only privileged, they also contain confidential information about Facebook, ADI's techniques and findings, and the third parties that Facebook investigated.  *Id.* ¶ 23.  If disclosed, these excerpts would harm Facebook and third parties for three reasons.

First, excerpts of the reports include sensitive business information about third parties.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6615298, at *3 (N.D. Cal. Dec. 17, 2018) (granting motion to seal "competitively sensitive business information" of non-parties).  The background and technical reports were intended to identify potential concerns about third-parties for counsel to investigate, and in many cases, concerns identified were not confirmed or were later disproven based on additional evidence gathered by the ADI team.  Disclosure of these excerpts would reveal confidential and highly sensitive information about third parties and—in some cases—cause public disclosure of unverified (and in some cases disproven) information about these parties.  Southwell Decl. ¶ 23.  The excerpts of the reports should be sealed to protect the rights of non-parties and for the same reasons the Court has sealed the identities of the apps and developers that Facebook investigated during ADI.  *See* Dkt. 519.  Indeed, disclosure of these excerpts would disclose publicly which apps were investigated, undermining the Court's prior ruling.

Second, if publicly disclosed, the excerpts from Facebook's privileged background and technical reports could pose security risks to Facebook and its users by revealing ADI's methods, the information Facebook considered worthy of investigation, and the capabilities of Facebook's investigative team.  ADI was designed to identify applications that may have misused data before additional platform protections were implemented, and the reports were designed to capture the information counsel deemed significant in investigating potential data misuse.  Southwell Decl. ¶¶ 6–7.  The excerpts reveal what information Facebook's attorneys deemed relevant to assessing the potential for data misuse.  *Id.* ¶ 24.  They also reveal confidential information about Facebook's privacy and security architecture.  *E.g.*, Transcript at 64:18–23.  Publicly revealing what information Facebook's counsel considers significant in investigating apps, the tools and capabilities Facebook may use to uncover information about data misuse, and information regarding Facebook's privacy

and security architecture could all provide bad actors with a roadmap to evade investigative and enforcement mechanisms Facebook has enacted to detect and disrupt abuse of its platform. Southwell Decl. ¶ 24.

Third, disclosure of excerpts of the privileged investigative reports would reveal confidential information about ADI's innovative and proprietary design, structure, techniques, and strategies. As previously stated, there was no industry standard for investigating millions of applications, and the ADI team devised and tailored proprietary methods and techniques. Southwell Decl. ¶ 10. The reports are the result of proprietary analytics designed exclusively for ADI to score, rank, and better understand available data about each app and developer. *Id.* ¶¶ 17, 20. Excerpts from reports reveal the criteria and information that were important to the ADI team's innovative and proprietary analyses, such as which findings warranted further investigation or how Facebook enforced its policies against developers. *Id.* ¶ 21; *see, e.g.*, Transcript at 78:8–12; Presentation at 22. Publicly disclosing this information would allow Facebook's competitors to copy ADI's methods and techniques and use Facebook's investment and experience to gain an unfair competitive advantage. Southwell Decl. ¶ 24; *see, e.g.*, *In re Liboderm Antitrust Litig.*, 2016 WL 4191612, at * 26 (Aug. 9, 2015 N.D. Cal.) (sealing privilege log descriptions that "reflect[ed] and convey[ed] confidential, proprietary information about Endo's business operations as well as its strategies").

### IV.     The Limited Proposed Redactions Are Narrowly Tailored

Facebook's proposed redactions are confined to information the Court has previously found good cause to seal or only that information necessary to prevent competitive harm to Facebook or compromise Facebook's privacy and security enforcement efforts. *See Dunbar v. Google, Inc.*, 2013 WL 12216625, at *1 (N.D. Cal. Aug. 18, 2014) (granting sealing requests that were "narrowly tailored to protect . . . proprietary information").

*     *     *

For these reasons, Facebook respectfully requests that the Court permanently seal the confidential information contained within its limited proposed redactions to the Transcript and Presentation.

Dated: January 21, 2021

**GIBSON, DUNN & CRUTCHER, LLP**

By: */s Martie Kutscher*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*