# EXHIBIT A
# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

```
1                             JAMS

2                          ---o0o---

3   IN RE: FACEBOOK INC.,            )

    CONSUMER PRIVACY USER            )

4   PROFILE LITIGATION               )

    _____)

5

6

7

8

9

10

11                    HELD VIA ZOOM

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS:

13              JAMS Special Master Hearing

14              Saturday, December 4, 2021

15

16

17

18

19

20

21

22   REPORTED BY:

23   Katy E. Schmidt

24   RPR, RMR, CRR, CSR 13096

25   Job No.: 4980290
```

                                        Page 1

```
1                           JAMS

2                        ---o0o---

3    IN RE: FACEBOOK INC.,            )

     CONSUMER PRIVACY USER            )

4    PROFILE LITIGATION               )

     _____)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          JAMS Special Master Hearing on Saturday,

24    December 4, 2021, at 9:06 a.m., virtually before Kathryn

25    E. Schmidt, RPR, RMR, CRR, CSR 13096.
```

Page 2

```
 1   APPEARANCES:
 2
     For The Plaintiffs:
 3
                        (Appeared via Zoom)
 4
             KELLER ROHRBACK LLP
 5           BY: DEREK LOESER, Esq.
             BY: DAVID KO, Esq.
 6           BY: ADELE DANIEL, Esq.
             BY: CARI LAUFENBERG, Esq.
 7           BY: BENJAMIN GOULD, Esq.
             1201 Third Avenue, Suite 3200
 8           Seattle, Washington 98101-3052
             dloeser@kellerrohrback.com
 9
             BLEICHMAR FONTI & AULD LLP
10           BY: LESLEY WEAVER, Esq.
             BY: MATT MELAMED, Esq.
11           BY: ANNE DAVIS, Esq.
             555 12th Street, Suite 1600
12           Oakland, California 994607
             415.445.4003
13           lweaver@bfalaw.com
14   For The Defendants:
15                      (Appeared via Zoom)
16           GIBSON DUNN & CRUTCHER LLP
             BY: ORIN SNYDER, Esq.
17           BY: DEBORAH STEIN, Esq.
             BY: MARTIE KUTSCHER CLARK, Esq.
18           BY: ALEX SOUTHWELL, Esq.
             200 Park Avenue 47th Floor
19           New York, New York 10166
             212.351.4000
20           osnyder@gibsondunn.com
21                        ---o0o---
22
23
24
25
```

Page 3

```
1                      LOS ANGELES, CALIFORNIA
2                     FRIDAY, DECEMBER 4, 2021
3                          ---o0o---
4              SPECIAL MASTER GARRIE:  So just for the
5      purpose of the court reporter, just speak at a cadence
6      that she can type against.  If the court reporter --
7              Kathryn, if you need someone to repeat
8      something or say something, please let us know.  We will
9      do our best to accommodate accordingly.
10             With that all said and laid out, is there
11     anything from your end, Kathryn, you need to do?
12                 (Discussion held off the record.)
13             SPECIAL MASTER GARRIE:  All right.  So to get
14     this moving along, we're having a hearing today about
15     ADI, just ADI, and the ADI related materials.
16             We will not go into the litany of other things
17     that have traded in e-mail back and forth over the past
18     couple weeks.  This is very focused and very focused on
19     this one issue, which is, I think, fairly large in
20     itself.
21             So with that said, the first I wanted to do is
22     talk about the parties' interpretation of the scope of
23     Corely's order.  And --
24             But before we get into that, I wanted
25     plaintiffs to state what their position is succinctly,
```

1    limited adjectives, if possible or where possible, and
2    Facebook to state their position as well, and the relief
3    being sought from both sides.
4            So, Lesley -- or sorry.  Counsel Weaver or
5    Counsel Loeser, who would you -- or anybody from the
6    plaintiffs' side, who should I direct my questions to
7    for purposes of this?
8            MS. WEAVER:  Derek will be fielding questions.
9            MR. LOESER:  Good morning.
10           I'll start, Special Master Garrie, and answer
11   your questions, and there may be others that have
12   particular points they want to make based upon your
13   questions, but I'm certainly happy to start this ball
14   rolling.
15           SPECIAL MASTER GARRIE:  Counsel, we'll hear
16   from you.
17           And then from Facebook side -- sorry --
18   Counsel Snyder, Counsel Stein, or anybody -- who should
19   I direct the Facebook --
20           MR. SNYDER:  Me in the first instance, and
21   then when I need to pass the ball, I will.
22           SPECIAL MASTER GARRIE:  Okay.  Counsel Loeser,
23   the floor is yours.
24           MR. LOESER:  Thank you.  And thank you for
25   making yourself available today, Special Master Garrie.

Page 5

1    It's -- we all have other things to do, I'm sure, on

2    Saturday.  My hope is that we can cover the issues we

3    need to cover and not spend more time than we need to

4    and just get through this and get to a place where

5    materials that we think are long overdue are produced.

6              We put together a presentation to walk through

7    a variety of things.  I'm going to jump to one slide and

8    we'll probably be jumping around a bit just to show you

9    precisely what it is that we're seeking.  So bear with

10   me for one second while I attempt to use technology.

11             SPECIAL MASTER GARRIE:  Can we enter that in,

12   the presentation, into -- for -- as an exhibit so we

13   have our...

14             MR. LOESER:  Okay.  We're going to jump around

15   here.

16             So your question is what is it exactly that

17   we're seeking?

18             Here is our position in a nutshell,

19   Special Master Garrie.

20             There was a couple of years of briefing on the

21   issue of the ADI.  We've been seeking this material for

22   over two years.  There was a lengthy process set up by

23   Judge Corely resulting in a couple rounds of briefing

24   and ultimately an order.

25             And that order required Facebook to produce a

Veritext Legal Solutions
866 299-5127

1    variety of materials from the ADI.  Judge Corely
2    concluded that the basis for withholding the materials
3    which was the work product doctrine was not appropriate;
4    that the dual purpose rule meant that the materials were
5    not protected by work product.
6              Plaintiffs had also made clear that we were
7    not seeking attorney-client privileged communications.
8    We weren't seeking communications to or from the
9    attorneys.  And instead, we were seeking the underlying
10   factual information and materials relating to the ADI.
11             We won that motion to compel.  The order was
12   issued on September 8th.
13             Facebook has had since then to abide by the
14   order.  The order required production of specific
15   materials relating to the six exemplar apps and then had
16   this key language to the parties to work with you as
17   Special Master to produce other materials consistent
18   with the guidance.
19             Facebook had essentially ignored that
20   instruction.  Many efforts to meet and confer on this,
21   many efforts to get Facebook to state a position, all
22   unsuccessful.
23             So here's where we are today.  These are the
24   specific items we've asked Facebook to produce that are
25   consistent with Judge Corely's order.

```
 1              They are all memoranda prepared by
 2   ████████████ or ██████████████; all background
 3   reports, technical reports, audits and developer
 4   interviews; all internal Facebook communications
 5   relating to these first two items; all communications
 6   with ████████████ or ██████████████ related to
 7   items 1 and 2; and all third-party communications
 8   related to ADI.
 9              Each one of those is a category of information
10   that is entirely consistent with the order and should be
11   produced.
12              Now, Special Master Garrie, if you would like
13   us to go through and explain precisely why these things
14   are required, we can do so.  But I take your question to
15   just simply require us to tell you exactly what it is
16   we're seeking, and this is exactly what we are seeking
17   and has been what we are -- what we have sought for a
18   long time now.
19              Last thing I would note for Your Honor is that
20   as to what's in dispute here, I take from Facebook's
21   position that it -- in its papers it submitted on
22   November 4th, they really don't have a dispute as to
23   the ████████████ or ██████████████ memos.  Those are
24   what they produced for the six exemplar apps.  So
25   obviously they read Judge Corely's order to require the
```

1    production of those.

2             There's no basis for withholding the rest of

3    those memos.  It's long overdue.  You strongly

4    encouraged Facebook to produce this information or

5    explain why they would not.  They did neither.

6             Now, another month has passed and we still

7    don't have them.  We think it's imperative that there be

8    immediate order on production of those materials.

9             The other category here where there really

10   shouldn't be any -- any debate is the issue of

11   third-party communications related to ADI.  And that is

12   something that Facebook already said that it produced.

13   When we got the information from the six exemplar apps,

14   it was clear that it wasn't true.  There was

15   communication in there that was a third-party

16   communication that had not been produced previously.

17            Facebook has a fairly tortured explanation for

18   that.  And we don't really want to play games on it.  We

19   just want them to do what they said they were going to

20   do and produce those communications as well.

21            The crux of the debate appears to be whether

22   we're entitled to internal Facebook communications about

23   the ADI.

24            Your Honor certainly heard me talk for a long

25   time about why that material is important.  It is

Page 9

1    important, and it is also entirely consistent with

2    Judge Corely's order.

3                SPECIAL MASTER GARRIE:  Thank you.

4                Counsel Snyder?

5                MR. SNYDER:  Yes, Judge.  We've also prepared

6    a presentation that we think will shed light on the

7    record, including Judge Corely's order.

8                I'll give you the top line, and then -- and

9    then work through it I think in a way that will be

10   helpful.

11               MS. KUTSCHER CLARK:  Can I ask that plaintiffs

12   take down their presentation so I can put up our

13   presentation?

14               SPECIAL MASTER GARRIE:  Yeah.

15               Just as a general operating rule, when you're

16   done presenting, take down whatever you were presenting

17   so we can see everybody's face until someone else

18   presents.

19               Sorry for not letting you know.

20               MR. SNYDER:  So I'll give you sort of the

21   bottom line or executive summary, and then we can walk

22   through it because we have invested significant time to

23   work through this with Judge Corely over two years.

24   And plaintiffs want to now start from scratch but

25   fortunately we have a record and a long history that

1   will I think shed objective light on where we are.

2         Our position, bottom line, and then I'll back

3   up, is the order is clearly about three buckets or

4   categories of documents that Judge Corely found to be

5   relating to the underlying facts, which are not

6   privileged.

7         Our ask or the relief sought here with the

8   Special Master process is to enforce the order that

9   limits discoverable materials to the three buckets.

10        We've abided by that order.  A number of the

11  arguments that counsel just made, they've already

12  litigated and lost.

13        So let me go to the order.  And as you know,

14  just to set the factual context, this is about an

15  internal legal investigation that my law firm designed

16  and led to advise Facebook on risks after

17  Cambridge Analytica, and 60 lawsuits were filed,

18  including this one.  And so we conducted the app

19  developer investigation.

20        In November of 2019, this is now two plus

21  years ago, plaintiffs asked for every single document

22  that relates in any way, shape, or form to that

23  investigation.  And we have -- one thing I agree with

24  Derek on is we spent two years working to narrow and

25  rationalize that request.

Page 11

1           Their demand for ADI correspondence was

2     already litigated, and Judge Corely rejected it after an

3     extensive sampling and logging exercise and in-camera

4     review.

5           Judge Corely stated multiple times, and

6     plaintiffs even agree, that the only relevant and

7     discoverable materials are underlying facts about the

8     investigation.

9           She also issued an order that, as we all know,

10     identifies three buckets of documents relating to

11     underlying factual materials that she found

12     discoverable.  Those are the documents at issue here

13     today.

14           She didn't order production of a single ADI

15     document or communication or other materials from our

16     sample privilege logs.

17           So the three buckets are clearly identified in

18     Judge Corely's order.

19           One, background and technical reports prepared

20     by non-attorneys, audits conducted by non-attorneys,

21     and then interviews conducted by non-attorneys.  And we

22     already produced these materials to the extent they

23     exist for the six exemplars, as Judge Corely ordered.

24           And the only open issue is whether materials

25     in these three buckets are discoverable for other apps

1    beyond the six.  And if they are, how and when they

2    should be produced.

3              All the other requests, as I'll walk through

4    now, have already been rejected but Judge Corely.

5              So if you look at the record, which is -- I

6    think has to be our north star, we can walk through

7    briefly the procedural history here.  And slide 1, I

8    said they demanded all documents relating to ADI.

9              Judge Corely ordered a sample logging for six

10   apps.  She conducted in-camera review with extensive

11   briefing.  She expressed skepticism about the relevance

12   of ADI e-mails, saying only that facts are discoverable.

13   And then she -- she resolved the ADI motion, ruling that

14   e-mails are not required to be produced.

15             And let's continue.

16             SPECIAL MASTER GARRIE:  Sorry.  Before you

17   go -- what order was -- so there's a couple ADI orders.

18   There's --

19             MR. SNYDER:  Yeah.

20             SPECIAL MASTER GARRIE:  -- one on the motion

21   to compel.

22             So when you say order, which one are you

23   referring to?  Because I did read the -- your filings

24   and submissions.

25             MR. SNYDER:  Sure.  The -- the -- the order

                                              Page 13

```
1    that -- I'm not sure what the date of the order was.  I
2    know when the hearing was.
3              Martie, do you know the date of the order?
4              MS. KUTSCHER CLARK:  Yes.  It's the most
5    recent September order which says that it disposes of
6    all of the prior ADI motions, including the motions for
7    communications.
8              MR. SNYDER:  Right.
9              So what happened is after we spent months
10   collecting and logging the ADI communications,
11   Judge Corely reviewed a sample of those, of plaintiffs
12   choosing, by the way, and then she told plaintiffs,
13   quote, "A lot of it I don't think is relevant at all."
14   And then she said, "Some materials are privileged and I
15   actually think you don't even need."
16             And this was an important moment in the -- in
17   this process because after litigating the scope of the
18   plaintiffs' ADI request for more than a year,
19   Judge Corely realized that these weren't the types of
20   materials that contain discoverable facts; that is,
21   facts concerning app developers.  And she asked a bunch
22   of questions.  She said, "What precisely is it that the
23   plaintiffs need from the investigation?"
24             And they finally acknowledged, Your Honor --
25   Your Honor -- Mr. Garrie, that what they wanted was the
```

Page 14

1    facts underlying these communications.

2              And she did not issue a ruling at that time

3    but advised the parties, quote, "Facts underlying ADI

4    may be discoverable but not information that is

5    attorney-client privilege or attorney work product."

6              So she didn't -- there was no blanket

7    rejection of the work product doctrine.  There was a

8    recognition that some underlying facts will be

9    non-privileged, and then things may well be privileged,

10   will be privileged.  And she even said, you know, edits

11   and any advice that was given.

12             So she finally issued the order at issue

13   that resolved all of plaintiffs' motions to compel ADI

14   materials.  It was an omnibus final order addressing

15   and resolving these issues.

16             And so that's very important because there is

17   no more bite at the apple, unless, you know, they file

18   a new motion presumably that seeks relief from

19   Judge Corely's order, which they haven't done.  They

20   just have ignored and are asking you to invalidate her

21   order without styling it as a motion for reconsideration

22   or anything of the sort, assuming that will even be

23   appropriate to do in this proceeding rather than going

24   directly to Judge Corely.

25             So she didn't order any communications or

                                              Page 15

1   other materials from our privilege logs produced.  I

2   think that's very important to note.  But she made clear

3   that the plaintiffs were only seeking specific

4   underlying factual materials prepared by non-attorneys

5   that does not involve communications with lawyers or

6   content created by lawyers.

7           And she found that we, Facebook, had met our

8   burden of proving that the documents were prepared in

9   anticipation of litigation, but obviously said there

10  were a dual purpose.  So we're not necessarily --

11  necessarily protected by the work product doctrine.

12          So she ordered three categories of documents

13  produced on the basis that we've offered no special

14  reason why those particular documents are privileged.

15          So she said produce these three categories,

16  but to the extent there is a privilege, attorney-client

17  or work product, those privileges, if sustainable,

18  would -- would apply.  So there was no blanket ruling

19  that Facebook doesn't have privilege as to even the

20  underlying factual material --

21          SPECIAL MASTER GARRIE:  This is where I had a

22  question.

23          So you see where it says "chosen as Facebook

24  has offered no special reason"?

25          Do you see where it says "no special reason"?

Page 16

1           MR. SNYDER:  Yes.

2           SPECIAL MASTER GARRIE:  Is that what -- when

3     you're making the statement, is that what you're relying

4     on?

5           MR. SNYDER:  Yeah.  Well, it's that we had

6     only given her six sample apps chosen I think by the

7     plaintiffs, and as to those documents that we gave, she

8     said we've -- we have no reason why those particular

9     documents are privileged.  So she made that ruling,

10    which is her right.  But she didn't say categorically

11    that all of our documents within these three buckets

12    are not privileged because she didn't consider them.

13          In other words, she said the facts are not

14    privileged but attorney-client work product still

15    attaches.

16          And you'll see when we talk about the process

17    going forward, we believe, you know, and I think

18    Judge Corely's order makes clear, that to the extent

19    Facebook still has an assertion of privilege over new

20    documents, those are valid, actionable, and enforceable

21    under this order.

22          So the three -- there's no disagreement that

23    background technical reports prepared by nonlawyers,

24    audits conducted by nonlawyers, and interviews conducted

25    by nonlawyers, are within -- are within the ambit of

                                        Page 17

```
 1    what is producible.
 2              And Judge Corely directed us to work with
 3    you, Mr. Garrie, obviously regarding any additional
 4    productions but consistent with her order.  So --
 5              SPECIAL MASTER GARRIE:  This is my question:
 6    So I read her order and I -- when you look at page 2 of
 7    the order, I don't know -- sorry for interrupting you --
 8    but if you look at page 2 of the order, on lines 9 to
 9    12, this is where I -- where --
10              Counsel Kutscher, if you could -- Clark, if
11    you could bring it up by chance, or I can --
12              MS. KUTSCHER CLARK:  Yes.  If you give me one
13    second.
14              SPECIAL MASTER GARRIE:  And we'll go back to
15    the presentation.
16              MR. SNYDER:  Yeah.  And while she's getting
17    it -- there we go.  Good.
18              SPECIAL MASTER GARRIE:  If you look at line 9
19    where it starts with "While Facebook has agreed to
20    produce some information," and then she cites the
21    docket, right, and you go look at the docket, "it
22    refuses on privilege grounds to produce the reports,
23    audits, and interviews and non-attorney communications
24    related to the same."
25              She doesn't say that it's to the six; right?
```

```
 1    She says -- because if you go look at the docket and you
 2    look at it, it doesn't -- it's not -- where do you read
 3    in this -- that it's the six?  Because the part -- I
 4    mean, because if you then go through the analysis part,
 5    which is --
 6              MR. SNYDER:  It would be -- I'll tell you why.
 7    It would be -- it would make a mockery of her order and
 8    two years of work before her if -- to read this order as
 9    saying as to documents she hasn't even reviewed yet,
10    they're per se not privileged.
11              Because her order says "facts underlying ADI
12    may be discoverable but not information that is" --
13              SPECIAL MASTER GARRIE:  No.  I agree.
14              MR. SNYDER:  So -- so here she writes
15    "Facebook shall produce the background technical
16    reports," dot, dot, dot, "of the six exemplar apps
17    chosen by the parties, as Facebook has offered no
18    special reason why those particular documents are
19    privileged."
20              So inherent or implicit in that --
21              SPECIAL MASTER GARRIE:  So you're saying --
22    so two, then you read in six, and then say you guys are
23    going to work with me for the rest of them.
24              Is this what you're --
25              MR. SNYDER:  Correct.  Right.
```

Veritext Legal Solutions
866 299-5127

1              So implicit in this paragraph -- in this

2      sentence is to the extent documents producible in those

3      buckets are privileged, then obviously consistent with

4      the guidance offered by the order, those would not be

5      producible.

6              And don't get me wrong, we're not looking for

7      some fig leaf or cover to -- to, you know, redact

8      everything out on some -- on some bogus --

9              SPECIAL MASTER GARRIE:  No.  I'm just trying

10     to understand how you were narrowing -- so that's how

11     you get that narrowing.  Okay.

12             MR. SNYDER:  Yeah.

13             SPECIAL MASTER GARRIE:  Sorry.  You can go

14     back to your presentation.  I'm sorry.  I just wanted to

15     understand that point.

16             MR. SNYDER:  Right.

17             So -- so essentially, you know, obviously, you

18     know, our position was that we should produce nothing.

19     So to the extent that, you know, I need to make the

20     record, you know, any production we make will be under

21     compulsion, and obviously when the United States

22     Magistrate Judge orders us to produce something, that's

23     compulsion and we will of course abide by the order and

24     any -- any following orders that you issue.

25             We think the appropriate approach is that to

                                              Page 20

1    the extent we are ordered to produce, you know,

2    additional documents, it should be obviously consistent

3    with the order, which is in these three categories

4    documents would be produced, but we would obviously

5    have the right to assert privilege and redact anything

6    that is attorney-client privilege or attorney work

7    product consistent with the guidance.

8            And the language that you referenced also

9    from the order shows that Judge Corely considered

10   non-attorney communications but didn't order their

11   production.

12           So their -- plaintiffs' position that we

13   should be ordered to produce communications broadly also

14   runs headlong into and is inconsistent with the order,

15   and the two years of work before her.

16           If Judge Corely thought communications broadly

17   defined should be produced, she would have -- since that

18   was before her, she would have put them in the buckets,

19   and she didn't.  She talked about interviews, reports,

20   and audits, understanding that communications would be

21   too broad and, you know, involve, you know, millions

22   and millions and millions of pages of documents.

23           So the proportionality of this order or the --

24   to the extent the order seeks proportionality in the

25   result, it does so by limiting our production to

Page 21

1    reports, audits, and interviews.

2            And I think we had 6,000 log entries, right,

3    and not a single document from those were ordered

4    produced, which I think is -- which is pretty

5    exceptional, and also I think underscores our good faith

6    in the process that plaintiffs would have everyone

7    believe that we're trying to hide the ball.  If we were

8    trying to hide the ball, Judge Corely would have -- you

9    know, would have seen that and ordered productions

10   from --

11           And were the productions non-attorney

12   productions or were they attorney productions, Martie?

13           MS. STEIN:  The logs, those 6,000 log entries,

14   those were non-attorney communications.  She --

15   judge Corely conducted an in-camera review of the

16   non-attorney communications and did not order a single

17   non-attorney communication to be produced.

18           And she -- that was one of the -- that was the

19   big thing that was being resolved in -- and it's one of

20   the disputes that was resolved by her motion to compel.

21   It's listed out what it was resolving.

22           And she didn't order, after that extensive --

23   it took months and months for us to go through this

24   extensive sampling exercise.  We collected and logged

25   these documents.  We briefed them, submitted them for

1  in-camera review, and Judge Corely did not order a

2  single one of them produced.

3          And that was the -- that was the interim

4  hearing that Mr. Snyder referenced where Judge Corely

5  was kind of scratching her head because she had gone

6  through the in-camera review and didn't understand how

7  they were relevant.  And she thought -- she said, "Some

8  materials are privileged, and I don't think you need

9  them."

10          And that was how the whole conversation got

11  started about, "Well, what do you really need" -- you

12  know, "What do you really need, Counsel" to plaintiffs?

13          And plaintiffs said they wanted the facts

14  underlying the communications.  That's what they really

15  wanted.

16          And that brought us to mediation with you

17  and Judge Andler to talk about what could be done

18  instead of the communications.

19          SPECIAL MASTER GARRIE:  Just before we get

20  there, so talking about communications, and then Orin --

21  and then, Derek, I do have some questions for you but --

22          And I do want to let you finish, Orin.

23          But just on that point, Martie, if you could

24  bring her order back up again, page 2, and look at --

25          MS. KUTSCHER CLARK:  I just need one minute to

1    do that.

2              MS. STEIN:  As she's doing that, I'd also just

3    flag that the reason why this whole sampling took place

4    was because of the extraordinary scope of ADI, all

5    documents relating to ADI.  And Judge Corely recognized

6    that there were different buckets, different types of

7    documents.  And she wanted us to go through a sampling

8    exercise so that she could provide guidance on what

9    types of documents she thought might be subject to

10   production, both with respect to privilege and work

11   product, but also with respect to the proportionality

12   and the needs of the case, which is --

13             SPECIAL MASTER GARRIE:  I read all the

14   briefing and the back and forth.  We don't need to

15   rehash that.  And I read all of that.

16             My question is different, which is in her

17   order, she explicitly says "Plaintiffs seek materials

18   from the second and third phases that does not involve

19   communications with lawyers or content created by

20   lawyers."

21             What it doesn't say in there and where it is

22   silent, if one were to -- you know, in her -- and

23   through the order, I don't -- and if you can point me

24   to where in the order it does provide insight about

25   internal nonlawyer communications --

```
 1              MR. SNYDER:  Yep.
 2              SPECIAL MASTER GARRIE:  -- where -- because if
 3    you read up above -- but if you just look at those
 4    lines -- or if you want to show me where in that order
 5    it is --
 6              MR. SNYDER:  Sure.  Sure.
 7              Yeah.  I think all that's doing is stating
 8    the party's position, and it does not reflect even
 9    tangentially, much less directly, the Court's guidance.
10              The Court's guidance is in the three
11    categories of documents that she said are producible.
12    And she knew that communications were at play.  She knew
13    that plaintiffs wanted all communications.  And had
14    she -- had she intended her order to direct the
15    production of communications, it would have said so.
16    And it expressly -- or it does not order the production
17    of communications and --
18              SPECIAL MASTER GARRIE:  I agree there's no --
19    that's why we're here; right?  There's no explicit
20    compulsion of the letter.
21              MR. SNYDER:  Right.
22              But an order should be written -- I mean, I
23    can send you the case law, and I don't need to.
24              An order should be read, you know, by its
25    plain terms.  And where -- there's much -- a lot of case
```

Page 25

1    law that says "where a party explicitly requests"

2    something.  And in the order, that material is not

3    ordered produced, that means that it is not subject to

4    production.  Meaning the language you showed us proves

5    our point.  It proves that she considered non-attorney

6    communications, obviously, because the plaintiffs wanted

7    them, but did not order them produced.

8            So there's no fair reading of the order other

9    than that it considered and disposed of the request for

10   nonlawyer communications --

11           SPECIAL MASTER GARRIE:  You then don't read

12   additional materials consistent with this

13   guidance because --

14           MR. SNYDER:  No.  The guidance is three

15   categories.

16           SPECIAL MASTER GARRIE:  I got it.

17           On -- "Facebook shall produce the background

18   and technical reports, audits" --

19           MR. SNYDER:  Yes.

20           SPECIAL MASTER GARRIE:  -- "developer

21   interviews of the six chosen by the parties, as Facebook

22   has offered why those particular documents are

23   privileged."

24           MR. SNYDER:  Right.

25           SPECIAL MASTER GARRIE:  So that's -- okay.  I

                                                    Page 26

1    understand.

2              MR. SNYDER:  Okay.  In other words, the case

3    law is clear, from the Supreme Court cases on down, that

4    where an order disposes of an issue and where parties

5    make arguments for the production of materials or

6    otherwise, and the order does not address that

7    particular, you know, request in its directive, it's

8    considered disposed of and --

9              SPECIAL MASTER GARRIE:  We'll entertain that

10   argument from plaintiffs and from you.

11             I just -- I'm sorry for interrupting you.  And

12   I had questions for plaintiffs, and I held my tongue and

13   I didn't ask.  So I'll hold my tongue and let you finish

14   your summary.  And I apologize.

15             MR. SNYDER:  No worries.

16             SPECIAL MASTER GARRIE:  Because I do have

17   questions for plaintiffs as well so --

18             MR. SNYDER:  Yeah.  I'm winding down.

19             So the bottom line is the judge considered all

20   the arguments, including plaintiffs' argument for all

21   communications, rejected some of our arguments, rejected

22   some of their arguments, and then distilled its guidance

23   into an order to produce reports, audits, and

24   interviews.

25             And in the comments she made prior to issuing

Page  27

1    this order at the -- at the proceeding hearing, she made

2    clear that she was going to issue an order that was

3    going to take into account relevance, proportionality,

4    her in-camera review, and I think what she came up with

5    was, you know, proportionate because she's not saying,

6    "Go through millions and millions of documents and find

7    every memo and communication that was written."

8            If she had intended us to produce non-attorney

9    communications, she would have said so.  She didn't.

10           She said really the opposite, that since facts

11   are what are at issue, we're just going to order

12   reports, audits, and interviews.

13           And by the way, that's going to be onerous

14   enough, as you'll hear, because there's a ton of

15   material to get through.  And then we have to,

16   consistent with her guidance, review it for privilege.

17   We can't just turn them over blindly.  And so there are

18   going to be some timing issues around that.

19           And in the event you order us to produce

20   additional reports, audits, and interviews, you know,

21   we're going to propose a rolling admission -- rolling

22   production process because it's going to take a while

23   for us to get through them.  Martie will explain.  And

24   certainly will take longer than our discovery cutoff.

25           So we're going to need to have, if we're

Page 28

```
 1    ordered to produce more, some leeway on the document
 2    production deadline as it relates to these three
 3    categories of documents.
 4              But if you were to order production of all
 5    communications, then it would -- I think respectfully
 6    it will just -- it sort of gut the process that we spent
 7    so long dealing with Judge Corely, I think the role that
 8    should -- this process should play is with these three
 9    categories of documents, that is, reports, audits, and
10    interviews, what is the most efficient, best process for
11    us to produce those.
12              SPECIAL MASTER GARRIE:  The only other
13    question and then -- oh, sorry.  I'll let you finish and
14    then --
15              MR. SNYDER:  I'm done.  I'm done.
16              SPECIAL MASTER GARRIE:  My question, and I'll
17    give plaintiffs a chance -- I have some questions for
18    plaintiffs, and then plaintiffs will have an opportunity
19    to respond in kind.
20              But one question is this doesn't change our
21    obligations under the Federal Rules of Civil Procedure
22    to produce responsive information; right?
23              So if there are responsive communications to
24    other discovery requests, this order that we're talking
25    about isn't going to narrow or remove those obligations
```

Page 29

```
 1    to make some reasonable good faith effort.  That's not
 2    your position; right?  You're still -- it's not being
 3    narrowed to remove that --
 4              MR. SNYDER:  No, no, no.  No.  No.  In other
 5    words, we believe that if you order us to produce more
 6    documents in these three categories, then -- then
 7    that's -- then I don't think -- other than the
 8    attorney-client and work product objections that we may
 9    have to portions of those documents or maybe the
10    entirety of one -- I have no idea -- I don't think we
11    have any other -- other objections.
12              SPECIAL MASTER GARRIE:  Here, let me ask my
13    question.
14              If there's communications between Facebook
15    and █████ about -- I mean, I read through your -- it was
16    a pretty fairly informative briefing, and the
17    plaintiffs, they included some of these sample reports,
18    and there's clearly, you know -- well, I don't know
19    clearly, but it would appear that there was a lot of
20    work done.
21              MR. SNYDER:  Yes.
22              SPECIAL MASTER GARRIE:  There was
23    communication between █████ examiners -- I'm not sure
24    who --
25              MR. SNYDER:  Yep.
```

Page 30

```
 1              SPECIAL MASTER GARRIE:  -- and a Facebook
 2    employee that was responsible for ████████████████
      ███████████  whatever.
 4              I assume Face- -- somebody at Facebook was
 5    communicating with these people --
 6              MR. SNYDER:  Yes.  Generally -- generally
 7    attorneys were always involved in those communications.
 8              But in a hypothetical event --
 9              And, Alex, you can address this.
10              In a hypothetical event that John at ██████ sent
11    a communication or e-mail to Sally at Facebook where an
12    attorney wasn't copied, that is not within the ambit of
13    Judge Corely's order.  There's no fair reading of that
14    order that -- it's not a technical report, it's not an
15    audit, and it's not an interview.
16              And I think the vast majority, if not the
17    rule, was that attorneys were copied on those
18    communications.
19              But if one -- if some slip through the cracks,
20    they wouldn't be privileged -- they wouldn't be
21    producible because we litigated this issue already in
22    front of Judge Corely, and she spent all that time
23    in camera and came out with what she thought was the
24    proportionate --
25              SPECIAL MASTER GARRIE:  I'm not saying that
```

                                                  Page 31

```
 1    you don't have the -- so, no.  My question isn't whether
 2    or not privilege --
 3              MR. SNYDER:  No.  It's not a privilege issue.
 4              The only things that Judge Corely ordered
 5    produced are technical reports, audits, and
 6    interviews --
 7              SPECIAL MASTER GARRIE:  I read the -- I agree.
 8    I understand that.
 9              My question is under the Federal Rules, if
10    there's a responsive thing to another document -- you
11    guys have a litany of document requests and, I mean -- I
12    don't even -- can't even --
13              MR. SNYDER:  Sure.
14              SPECIAL MASTER GARRIE:  -- keep track of them
15    all unless I use my spreadsheet.
16              If there is responsive communications to --
17    what I'm basically asking is you have Federal Rules of
18    Civil Procedure --
19              MR. SNYDER:  It supersedes -- yes.  This
20    order -- this order disposes of all ADI document issues.
21    So that if a document request that seeks some other
22    category of documents would call for the production of
23    ADI communications, this order trumps it because the
24    judge has ruled that this disposes of all plaintiffs'
25    motions to compel ADI materials.  And one of the motions
```

Page 32

1    to compel that they filed sought the production of all

2    communications.

3              So we would -- the plaintiffs could not find

4    refuge in the Federal Rules of Civil Procedure to obtain

5    ADI communications that would run afoul of or collide

6    with Judge Corely's order, which only said three

7    categories of documents are producible in this case.

8              She didn't say --

9              SPECIAL MASTER GARRIE:  I got it.  I

10   understand what you're saying.

11             MR. SNYDER:  Yeah.  She did not say, "I'm

12   going to spend hours and hours and you're going to spend

13   two years litigating this.  I'm going to issue a final

14   order on ADI.  And then if plaintiffs issue a new

15   document request a month later, they can move to compel

16   ADI materials in connection with that request."  Her

17   intent here was to close the door on ADI.

18             SPECIAL MASTER GARRIE:  All right.  So that's

19   your position.  I just want to make sure I understood

20   your full position.

21             MR. SNYDER:  And also you should know that

22   Judge Corely had non-attorney communications with

23   █████████  before her, during the in-camera review.

24             SPECIAL MASTER GARRIE:  Yeah.  I read the

25   brief.

                                        Page 33

1          MR. LOESER:  Special Master Garrie, there's

2    obviously a lot to respond there.

3          Should I go ahead and start?

4          SPECIAL MASTER GARRIE:  Yeah.  I mean, can I

5    ask -- I'll add a question.

6          Yeah.  You can respond and then I'll ask my

7    questions, either/or.

8          MR. LOESER:  Yeah.

9          Let me start by something -- you know, I'm

10   obviously accustomed to spirited litigation and parties

11   taking positions in litigation that requires some spin

12   and distortion.  But that was a fantastically misleading

13   presentation.  Really stunningly misleading.  There --

14         SPECIAL MASTER GARRIE:  There were adjectives.

15   We're trying to limit them.

16         MR. LOESER:  Yeah.  The order doesn't dispose

17   of the issue of internal communications.  That's just a

18   fabrication.

19         The order issues guidance.  And Facebook is

20   required to produce the information consistent with the

21   guidance.

22         The guidance is that these ADI communications

23   are not privileged.  They are not protected.  They are

24   discoverable.

25         And so I would like to walk through our

Page 34

1   presentation because there's so much that was said that
2   is wrong that needs to be untangled.
3        And I'm really -- you know, I need to step
4   back and breathe for a second because it's really
5   stunning how far we departed from the actual order that
6   Judge Corely issued.
7        Also stunning how far we departed from what
8   Judge Corely has said along the process.
9        You know, Facebook has sort of woven together
10  a series of snippets here and there to come up with
11  something that's really just a fiction, which is that
12  the issue of internal communications has been resolved
13  by the Court.  That is fictional.  That is nonsense.
14  And we will go through -- and I think I'll just walk
15  through the presentation to show you really what
16  happened because what you heard is so far from actual.
17        SPECIAL MASTER GARRIE:  I'm just going to
18  remind everybody that -- and I appreciate zealous
19  advocacy just as much as the next person -- to keep
20  the -- minimize the adjectives.
21        MR. LOESER:  I will.  But, I mean, I must
22  confess, I'm just kind of stunned, and so -- but I do
23  want to walk through and show you --
24        SPECIAL MASTER GARRIE:  Do you need to take a
25  second?

Veritext Legal Solutions
866 299-5127

```
 1              MR. LOESER:  Yeah.  Let's just -- we'll put up
 2    our presentation and --
 3              MR. SNYDER:  Maybe Derek --
 4              MR. LOESER:  I don't need --
 5              SPECIAL MASTER GARRIE:  No, no.  We're going
 6    to --
 7              THE COURT REPORTER:  I'm sorry.  I cannot
 8    write everybody at the same time and I'd like to --
 9              MR. LOESER:  I was just -- Orin, we didn't
10    interrupt you.  Please don't interrupt us.
11              SPECIAL MASTER GARRIE:  Everybody, time out.
12              THE COURT REPORTER:  Okay.  I need to stop.
13              SPECIAL MASTER GARRIE:  Thank you,
14    Court Reporter.
15              So we'll go off the record for 30 seconds.
16                 (Discussion held off the record.)
17              SPECIAL MASTER GARRIE:  We're going to go back
18    on the record.
19              And then if people do need to take a moment,
20    which I fully get and appreciate, there's no issue here.
21    And if we need to set up a separate room for parties to
22    go into to caucus or whatever, we can also set that -- I
23    can set that up as well.
24              So with that said, Court Reporter, back on the
25    record.
```

Page 36

1            And, Derek, if you need a minute, we can take
2     a minute.
3            MR. LOESER:  No.  I'm fine.
4            It's just, Your Honor, we've been doing this
5     for a long time and it's time to just start, like,
6     accurately reporting the record.  And so that's what I'm
7     going to do here.
8            I put up a slide that just shows you the
9     sequence of events, some of which you heard from today.
10    I won't dwell on this slide, but I think it's important
11    to show this process that occurred.
12           And, you know, we requested these documents.
13    There was this episode with the log.  We'll get into
14    actually what happened with that log, and how this
15    notion that that log disposed of internal communications
16    is just wrong.
17           And we go through this long period of time
18    that includes Your Honor strongly encouraging Facebook
19    to produce what obviously should be produced and brings
20    us to today.
21           So, you know, Judge Corely's order, it
22    probably goes without saying at this point, but she did
23    conclude the information the ADI uncovered is directly
24    related to plaintiffs' claims in the MDL action.
25           You know, truer words were never spoken.

1              The ADI investigation was the investigation

2      that resulted from Cambridge Analytica.

3              The investigation, the materials, the

4      communications with third parties, the internal

5      communications, those are -- that just goes to the heart

6      of this case.  That's why we have fought so long and

7      hard to get the information because it's hard to think

8      of anything more central that is fair.

9              So what happened, what actually happened in

10     the ADI order as opposed to what did you just hear

11     happened?

12             What happened is the Court rejected any

13     objections to producing ADI materials based on work

14     product.  And as the Court said, as a general matter,

15     documents generated as a part of that investigation

16     were not created because of litigation.

17             Now, you have to remember, Facebook took the

18     position nothing in ADI was discoverable.  It imposed a

19     categorical privilege on anything, and they lost that

20     argument because it's just wrong.  It's not consistent

21     with the law, and in particular the dual purpose

22     doctrine.

23             The order ordered Facebook to produce

24     materials from the exemplar apps because, quote,

25     "Facebook has offered no special reasons why those

1    particular documents are privileged other than what has

2    been addressed."

3              Your Honor identified that same language that

4    obviously is critical language in the order which is the

5    culmination of all of this fighting and effort and

6    briefing.

7              And then this language that Facebook seems

8    to think doesn't really mean anything is the order

9    contemplated production of additional materials

10   consistent with the guidance offered by the order.

11             Now, one of the things that Judge Corely

12   struggled with through the whole process is how does she

13   adjudicate this issue with exemplars or with samples or

14   with logs and have that applied to the rest of the case?

15             And the answer was this language.  She went

16   through a detailed analysis in her order.  She discussed

17   the law.  She discussed the facts.  She discussed what

18   ADI was.  And she made a number of statements about why

19   it was discoverable.  And then she has this language

20   that requires Facebook to do something and to do

21   something in good faith.  And that is to produce the

22   other materials consistent with the guidance offered by

23   the order.

24             So you heard a lot about what we did seek,

25   what we didn't seek, and that was pretty distorted as

Page 39

1    well.  Here's what we sought:

2         We sought plaintiffs' seek information learned

3    from and generated by the ADI.

4         And then she refers to -- we had discussed

5    these documents in phases.  "Plaintiffs seek material

6    from the second and third phases of the ADI, and does

7    not involve communications with lawyers or content

8    created by lawyers."

9         So the second and third phases were when we

10   didn't want everything from every app that interacted

11   with Facebook.  We wanted the information where

12   Facebook, through this ADI, identified apps or enhanced

13   investigation and enforcement.  That's what we were

14   focused on.  That was a way of culling the documents

15   down to only those that seemed most particularly

16   relevant to our case, which were the ones where they

17   had themselves identified them as being problematic.

18        The Court also made clear, and we made clear

19   repeatedly, plaintiffs are not seeking documents created

20   by counsel, counsel's edits, or any communications with

21   counsel.

22        And, again, language that Your Honor pointed

23   out, what Facebook refused to produce, and as the Court

24   said, "While Facebook has agreed to produce some

25   information, it refuses on privilege grounds to produce

Veritext Legal Solutions
866 299-5127

1    the reports, audits, and interviews and non-attorney

2    communications related to the same."

3            So, again, they were essentially applying the

4    categorical privilege with one exception, which was that

5    they said, but then really didn't complete, the

6    production of all communications with these third

7    parties.

8            So I already -- we started with this because

9    this was your first question, and, again, I won't go

10   through it again, but these are the materials --

11           SPECIAL MASTER GARRIE:  I have a question

12   about this.

13           If you look at your plaintiffs' response, I

14   don't know what -- that was filed -- plaintiffs'

15   response to Facebook's supplemental submission regarding

16   ADI, and if you turn to page 146 -- can you bring that

17   up or someone on your team?

18           MR. LOESER:  Page 146?

19           SPECIAL MASTER GARRIE:  Yeah.

20           Sorry for interrupting.  The question I had --

21           MR. LOESER:  Just one second.

22           We're searching for that document.  I'll pull

23   it up.

24           If you want to ask your question --

25           SPECIAL MASTER GARRIE:  There's language --

                                        Page 41

1    I read through these sample reports, and there's a

2    paragraph that starts with ▮▮▮▮▮▮▮▮▮ I just want

3    to understand the substantive, like -- I work better in

4    the context of actual details.  And in it your

5    request -- so it says ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11        So that's my -- well, when you get it up, I

12   have a series of questions about -- so you -- about the

13   information that you believe is associated with this,

14   your request or your five things; right?

15        MR. LOESER:  Yeah.  I can't -- I don't have it

16   in a format I can -- oh, there we go.  Yeah.  We're just

17   bringing it up now.

18        SPECIAL MASTER GARRIE:  Perfect.  If you could

19   just zoom in so -- I don't know if people have bad eyes

20   like me, but -- all right.

21        So you see where it says ▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 42

```
 1                    Do you see that sentence?
 2                    MR. LOESER:  Yes.
 3                    SPECIAL MASTER GARRIE:  Are you looking for
 4      how they knew that information -- when you say "the
 5      underlying information," are you looking for what infor-
 6      -- is this the ████   Are you looking for the information
 7      that was provided to make these conclusions?
 8                    Because then it goes on to say -- is that what
 9      you're getting at?
10                    Because then it says, ████████████████████
11      ████████████████████████████████████████████████████████
12      ████████████████████████████████████
13                    Then it, like -- so they got data from
14      somewhere; right?
15                    And then it says, ████████████████████████
16      ████████████████████████████████████████████████████████
17      ████████████████████████████████████████████████████████
18      ████████████████████████████████████████████████████████
19      ████████████████████████████████████████
20                    So are you looking for the technical
21      analysis -- ████████████████████████████████████████████
22      ████████████████████████████████
23                    Like what I'm a little confused -- I'm just
24      looking for tangible examples of when you say
25      "associated communications and documents"; right?
```

Page 43

1          Somebody had to give ███████ the information for

2      ██████ to then do the analysis, to then provide this

3      report with ████████████████████████████████████

4      ███████████████████████████████

5          And my question is:  Is that the information

6      you're seeking?

7          MR. KO:  I can try to respond to this,

8      Special Master Garrie.

9          So the first thing that is clear, to give you

10     a tangible example of what we want, this is a

11     ████████████  memo itself; right?

12         So the first category of documents we seek are

13     all memos created by ████████████  and ██████  which were

14     the two external consultants that Facebook retained for

15     purposes of the ADI.

16         The passage that you're reading, you know,

17     quite candidly shows the relevance of all these

18     memorandum.  And so we're entitled to that in the first

19     instance.  So that's the first tranche of an actual

20     category.

21         As far as your question about what it is

22     related to that passage, the communications regarding --

23     between Facebook, for example, engineers and the

24     consultants at ████████████  about this conclusion

25     are certainly relevant.

                                              Page 44

1            And to give you some context for that -- and
2    this response is something that Mr. Snyder said in his
3    presentation when he said that out of the -- like we
4    have a very limited window, obviously, and knowledge
5    about any of this; right?  We have some privilege
6    logs -- we didn't look at any of the underlying
7    document.  We have privilege logs that identified what
8    these communications were according to Facebook.
9            And based on those exemplar privilege logs, of
10   which there were about 6,000 entries, as far as we can
11   tell, there was a substantial amount of communications
12   just like the type that you had described; right?
13           Communications from Facebook data engineer A
14   to ███████████ individual B, where -- we of course
15   don't know what it says.  But based on our count, we
16   have seen that there are probably about 10 percent of
17   those entries in that privilege log consist of those
18   communications that you identified and Orin talked
19   about.  And Orin said that he believes all of them were
20   attorney communications.  That's just simply not
21   correct.  There was a bevy of communications involved --
22           SPECIAL MASTER GARRIE:  I get -- before we get
23   to who's right and who's wrong, I'm just trying to
24   understand what's being sought.
25           So my question is the communications sought by

                                                   Page 45

```
 1   plaintiffs are those types of -- because if you go back

 2   to Derek's presentation, right, there's these five

 3   buckets.  One, two, and then the other pieces relating

 4   to them.

 5              What I'm trying to understand in a tangible

 6   way is what exactly -- like when you do an investigation

 7   like this, it's a very complicated process, and lawyers

 8   are very involved in parts of this; right?  And then the

 9   engineers may be going back and forth or whatever.

10              I'm just trying to understand where it says

11   "All internal" -- and then it says "All communications

12   with ████████████████ or ████████████████ relating to 1

13   and 2."

14              So I just gave you an example of a memo that

15   ██████ wrote based on data Facebook provided to them.

16   And when you say "all communications," are you looking

17   from the communications from the Facebook engineering

18   team to the ████████████████ team that underlie the basis

19   for the report?

20              I'm trying to understand --

21              MS. WEAVER:  If I may really quickly -- I'd

22   like to just address this really quickly.  This is

23   Lesley.

24              I agree -- and we're looking at the page

25   that -- you're thinking of the page that we just had up
```

Page 46

```
 1    for you, we view this the way that you look at work
 2    papers in an audit report.  What formed the basis of
 3    their conclusions?
 4            And when you look at those requests for logs
 5    and it -- and they conclude they can't determine what
 6    data was taken, we need -- we want to know what data was
 7    made available to the third parties in the call logs.
 8    So we need to get to the documents underlying their
 9    conclusions, just like a work paper.
10            Sorry, David.  Go ahead.
11            MR. KO:  Yeah.  No.  I think that's exactly
12    right.  And I think it's perfectly encapsulated in our
13    Category 3 when we say -- we didn't say all
14    communications period.  We said "All communications
15    relating to categories 1 and 2."
16            And so the example -- I mean, you provided the
17    perfect example, Special Master Garrie.  I mean, the
18    communication from Facebook data engineer -- I keep
19    saying it because it's a good example.  The
20    communication from Facebook data engineer A,
21    communicating about the memo that they are preparing
22    and creating that we saw the culmination of is -- and
23    that communication going to ████employee B, is
24    absolutely relevant and related to that memorandum.
25            So we're only seeking the communications
```

1    related to the memorandum, or in category 2, the

2    communications related to the background technical and

3    audit reports that were prepared in connection with that

4    app.

5               SPECIAL MASTER GARRIE:  If you look above on

6    page 146, if you look above this -- the paragraph above

7    that, that's the second group.

8               But that's fine.  I understand now the

9    clarity.

10              All right.  Go ahead, Counsel Loeser.  I

11   apologize.

12              MR. LOESER:  Yeah.  I do want to make sure I

13   respond to Orin's arguments.

14              One thing that he said that is easy to respond

15   to, there was some reference to these communications and

16   Mr. Snyder suggested that, you know, they always cc'd a

17   lawyer on the communication.

18              Obviously, you know, that's a -- something the

19   Courts have long ago rejected.  You can't just cc a

20   lawyer on something and then it miraculously becomes

21   undiscoverable.

22              If the communication is a factual

23   communication, it's not privileged whether it's cc'd to

24   a lawyer or not.

25              So that's just -- you know, that's just black

Veritext Legal Solutions
866 299-5127

1    letter law.  So just to be clear on that.

2            But I want to get back into this notion of

3    these internal communications and what the order did or

4    did not say about internal communications.

5            There's not one word in the order that you

6    will find that says internal communications about the

7    ADI are not discoverable.  That's just not true.

8            And really when you think about what these

9    communications are, I want to come back to how critical

10   they really are and what the order did say.  And what it

11   said is that as a general matter, documents generated as

12   part of that investigation were not created because of

13   litigation.  That's true for internal communications as

14   well.

15           And the order indicated it encompassed all

16   materials regardless of form that are not created by

17   counsel, counsel edits, or any communications with

18   counsel.

19           And so obviously the internal communications

20   that are not with counsel, whether they to put a cc to

21   lawyers or not, if they're factual in nature, then they

22   are discoverable and they're consistent with the

23   guidance of this order.

24           And just, again, to make clear, the

25   communications were after.  These are not privileged

                                                Page 49

1    communications.  They're not between lawyers.  We've

2    said to Judge Corely and we've said to you, we don't

3    want those communications.

4            We want the factual information relating to

5    the ADI, and that obviously includes these internal

6    communications.

7            And this is a point worth making as well,

8    which are these communications, quote, unquote, facts?

9            And in Facebook's materials, they've suggested

10   there's some contradiction between plaintiffs' request

11   for the underlying facts of the ADI and the request for

12   both the internal communications and the communications

13   with third parties.

14           And, you know, obviously there's not.

15   Communications often relate to or reflect underlying

16   facts.  Communications can also reflect facts about

17   knowledge and state of mind.

18           And as everybody knows who's involved in

19   litigation in the modern era, internal communications,

20   typically in e-mail, though, now in Slack and in chats,

21   are often the strongest evidence in a case and can be

22   ripe with admissions.  That's why they're discoverable.

23   That's why we want them.  And that's why Facebook

24   doesn't want to provide them.

25           Now, I do think it's important to go through

1    this issue with the logging of the call logs, and what

2    happened with the call logs.

3           And Facebook has this idea that because there

4    was a dispute over the logs and that dispute rolled into

5    the eventual order, that this means that all internal

6    communications somehow were ruled out.

7           And that really distorts the process, so I

8    think it's important to step back and walk through the

9    process.

10          And so here's what really happened:

11          In June 2020, plaintiffs requested a briefing

12   process on the motion to compel.  And then in August of

13   2020, Judge Corely requested that Facebook -- requested

14   Facebook to provide a privilege log of ADI materials.

15          The logs were provided.

16          And then plaintiffs were asked to pick frankly

17   from the log -- obviously, we didn't know the content of

18   any of these documents.  We just chose as best we could

19   from the log and we chose 20 documents.

20          And then Judge Corely performed an in-camera

21   review and provided her tentative view on ADI in a

22   hearing in April 2020.

23          So what really happened in April 2020,

24   Judge Corely signaled that she would rule against

25   Facebook on work product, and here's what she said, but

Page 51

```
1    in terms of the ADI team, at least from what I've seen,
2    it looks like a lot of that was just generated there
3    separate that may have been reviewed but would have been
4    done anyway.  That's the heart of the dual purpose
5    determination.
6              And then with regard to these 20 documents,
7    you know, Facebook has sort of come up with a story
8    about what happened with the 20 documents and what it
9    really showed, but there is in fact a record and it is
10   in fact clear what happened.
11             So in the hearing we had in which she
12   discussed the 20 documents, she determined, quote, "A
13   lot of it I don't think is relevant at all."  For
14   example, she said, "So you don't need to know -- you
15   don't need to know like when a request for information
16   was sent," and that plaintiffs wouldn't need those
17   e-mails about "Are you available for this meeting" or
18   "Can we move it?"  "Should you change the weekly
19   report?"
20             So basically we picked these 20 documents from
21   a log.  We didn't know what was the content of the
22   documents.  They were reviewed in camera.  And a lot of
23   the documents were irrelevant because they were just the
24   kind of scheduling back and forth for meetings and the
25   like that it wasn't helpful.
```

Page 52

1          And Judge Corely identified that, and made

2     the point -- she wasn't making some assessment of the

3     underlying factual communications.  She was making an

4     assessment of the log that seemed to have a bunch of

5     stuff that just didn't matter because it wasn't

6     substantive at all.

7          So then Judge Corely ordered the parties to

8     meet and confer to see if they could agree on a

9     production.  And she allowed additional briefing, which

10    was submitted.

11         And Judge Corely issued an order allowing

12    further briefing from Facebook.  In that order she

13    reiterated her view that much of the ADI documentation

14    is discoverable.  "While outside counsel's edits and

15    advice might not be discoverable, the underlying facts

16    are discoverable since Facebook would have conducted the

17    investigation, regardless of any potential legal

18    liability."

19         And here's where we get -- and I apologize for

20    sort of walking through this as slowly as I am but it's

21    important to unwind all of the ways that these events

22    have been distorted to come to this conclusion that

23    somehow she ruled on and ruled out internal

24    communications.

25         So she says, "In particular plaintiffs seek

                                              Page 53

1    documents not created by lawyers from the enhanced

2    examination phase that involve background and technical

3    investigations to identify the potential for data

4    misuse.

5              "They also seek documents from the enforcement

6    phase, including Facebook conducted audits and

7    interviews.

8              "As the Court understands, Facebook has not

9    offered to produce any of this information.  None of

10   these documents were part of the in-camera review the

11   Court earlier conducted."

12             That is a critical acknowledgment that really

13   puts into perspective what this call log process was and

14   what it revealed.  It was a bunch of stuff that just

15   didn't matter that much because it wasn't substantive,

16   and the Court noted that.

17             SPECIAL MASTER GARRIE:  Just one quick

18   question.  Sorry.  Just a quick question.

19             MR. LOESER:  Yeah.

20             SPECIAL MASTER GARRIE:  In her order, I don't

21   know if it's document 736, it says -- and I did read

22   these orders.  It says "This order disposes of" -- if

23   you go back a slide -- "of docket No. 611, 612, and

24   699."

25             And if you look, you're saying 699 at 5.  How

                                                 Page 54

1    does this order impact that?

2            MR. LOESER:  And by "this order," you're

3    talking about the September 8th order?

4            SPECIAL MASTER GARRIE:  Yeah.  September 8th

5    order, yeah.

6            MR. LOESER:  Yeah.

7            What Judge Corely -- the impact of the -- you

8    know, the call log phase was an effort for the Court to

9    understand what was in the -- in these log materials to

10   come to some conclusion as to the substance of what the

11   plaintiffs were seeking, factual information.  It just

12   wasn't helpful for that because there really wasn't

13   substantive communication reflected in most of the

14   materials that were logged.

15           So it didn't in the end really have anything

16   to do with what was ultimately ordered by the Court, in

17   which she did assess substantive factual issues.

18           MR. KO:  And I think just to add on that,

19   Special Master Garrie, I think it's really simple what

20   she meant by that.  She just -- as is evident from the

21   parties back and forth throughout this entire morning,

22   there were many disputes that were created, litigated,

23   and argued before Judge Corely throughout the past two

24   years.  We started arguing this in May of 2020.

25           So all she was doing was saying, look, there's

Page 55

1    all these outstanding motions, all these outstanding

2    arguments, this order was to govern and this order was

3    to be the operative order in which the guidance she was

4    offering was the basis for the parties to work on in

5    terms of what additional documents to produce.

6              Because all the prior orders -- she basically

7    kept saying, like -- and this is really relevant to what

8    Derek was saying and really relevant to this process of

9    the exemplar apps of which Facebook keeps saying, you

10   know, she completely resolved it and nothing in these

11   apps -- or nothing in these privilege logs should be

12   produced.

13             We went through those processes and she found

14   that they weren't helpful to resolving the issue; right?

15             That's why she ordered us to continue

16   conferring and ordered us to continue briefing the issue

17   because we couldn't come to an agreement as to what

18   documents should be produced.

19             And so her final attempt to give us the

20   guidance was the September order.

21             And so, again, to answer your question, what

22   she's doing is she's just simply disposing of all the

23   prior orders, outstanding arguments and pending

24   arguments before her.

25             MR. LOESER:  Yeah.  If we look at the next

                                        Page 56

1    slide, I think this really kind of gets to the heart or

2    your question, Special Master Garrie, and really gets to

3    the heart of Facebook's argument.

4              And Facebook takes this line from the order

5    and the line -- and what Facebook said in its submission

6    was the parties already litigated whether e-mails and

7    attachments Facebook logged previously were

8    discoverable.

9              "Judge Corely conducted an in-camera review

10   and Judge Corely did not order a single one of those

11   communications produced."

12             Now, what this sentence really refers to are

13   the 20 e-mails that she reviewed in camera.  Not every

14   e-mail and attachment that Facebook logged in the

15   exemplar stage.

16             And, in fact, Judge Corely did not find that

17   logging exercise to be useful.  It did not result in a

18   resolution of the parties' dispute, which was

19   plaintiffs' effort to discover the factual information

20   relating to the ADI.

21             And Facebook is trying to take that and

22   generalize and say, "Oh, she used those exemplars to

23   come to a conclusion that none of this is discoverable."

24             And that's just not -- that's just so

25   inaccurate.

1              If you go back and consider what she said

2      about the materials that she reviewed in camera, those

3      were the materials that are largely about scheduling

4      meetings and whether meetings can be moved and the like.

5      They are -- they were not substantive materials from

6      which she was able to conclude and determine what should

7      happen with the factual information plaintiffs were

8      seeking.

9              And so as Mr. Ko just noted, she then moved on

10     to the briefing that resulted in the September 8th order

11     in which she did provide guidance on what the parties

12     should do.

13             And so this idea that this logging exercise

14     somehow resulted in a determination in the September 8th

15     order that you don't get internal communications, it's

16     just -- has nothing to do with what was actually learned

17     from the logging exercise or the role the logging

18     exercise ever played in resolving the ADI issues.

19             It's the September 8th order that resolves

20     those issues.  And it's the guidance that's provided in

21     the order that applies to whether internal

22     communications are discoverable.

23             And, you know, Facebook can say over and over

24     again this issue was litigated and resolved by the

25     order.

Veritext Legal Solutions
866 299-5127

```
 1              The order does not -- there's nothing --
 2     there's not a word in the order that says plaintiffs are
 3     not entitled to these internal communications.  And
 4     there's nothing that happened with the 20 document
 5     logging exercise from which any conclusion can be drawn
 6     about these internal communications because that's
 7     really not what the Court was able to perceive from the
 8     communications.
 9              SPECIAL MASTER GARRIE:  Let me -- let me talk
10     about these exemplar productions, and then we can --
11     we'll continue forward.
12              One question I want to understand, I guess
13     this is for Facebook as well as you, if you look at the
14     pages you were just showing me, that I pointed out on
15     page 140, whatever it is, if you turn to page 132,
16     like -- there's way more -- as I understand this, this
17     report covers way more than six apps.  It covers all the
18     apps, ██████████ which was identified by, at least
19     according to this report, that was flagged on 137 --
20              If you go to page 137, if you load that back
21     up, Counsel Ko, by chance, or whoever loaded it.
22              MR. KO:  Yeah.  I can share it.  I have it up.
23              SPECIAL MASTER GARRIE:  I just want to
24     understand when we're saying exemplars, like this covers
25     the production by Facebook for the six exemplar apps was
```

Page 59

1    for -- I don't to get it wrong, but if you go down to

2    page 137.

3              That was the right document.  You've just

4    gotta go to 137.

5              MR. KO:  Yeah.

6              SPECIAL MASTER GARRIE:  Right there.  On

7    ██████████████████   just zoom in for the -- yeah.

8    Further.  Further.

9              All right.  So this -- it says -- all right.

10   So it says █████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   █████████████████████████████████████   blah, blah,

13   blah, ██████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ███████████████████████████████

17             Then it goes on as saying they ████████████

18   ██████████████████████████████   et cetera, et cetera.

19             And then if you scroll down -- or scroll back

20   up to on page 132, I guess.  Yeah.  132.  It starts 133,

21   I guess.  And you see 133, it says ████████████████████

22   █████████████████████████████████

23             Am I wrong here, Counsel, from Facebook?

24             MR. KO:  Yeah.  That's correct.  I can

25   probably answer that, Special Master.

Page 60

1          So the exemplar process was one in which we

2     selected with Facebook six app developers, many of which

3     developed and created more -- of course more than one

4     app.

5          And so this memorandum is about

6

7

8

9

10

11          MS. STEIN:  Just a correction there.  That's

12     not accurate.

13          There was a sampling of six apps.

14          I think what Mr. Ko is saying is that for some

15     of the apps, the developer at issue had more than one

16     app, and so that may be why

17     █████  But the exercise --

18          SPECIAL MASTER GARRIE:  That was my question.

19          MS. STEIN:  -- was only for six apps.

20          SPECIAL MASTER GARRIE:  Yeah.  So let Facebook

21     answer this.

22          The production that was made was focused on

23     the six exemplar apps?

24          MS. STEIN:  Correct.

25          SPECIAL MASTER GARRIE:  Not the, like --

                                        Page 61

1   because when you add them all up, you blow way through

2   six and then you get into many more.

3           But your intention at Facebook was just the

4   six.  And the reason I ask, because of your prior -- and

5   I'm going to return back to Derek so he can finish his

6   point.

7           I just want to make sure I understood this

8   because when I read through it, right, there's a whole

9   lot of conversation about, you know, each of these, they

10  cover the -- you know, ███████████████████████████████

11  ████████████████████████████  But your focus was only for

12  the six apps.

13          MS. STEIN:  That was what the order was for,

14  was for the six apps sampled.  So that was what we did.

15          MS. KUTSCHER CLARK:  Right.

16          And in order to produce the reports for the

17  six apps, ███████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ██████████████████████

21          SPECIAL MASTER GARRIE:  All right.  Go ahead,

22  Counsel Loeser.

23          Thank you, Facebook.

24          MR. LOESER:  Just a few more minutes,

25  Your Honor, to really kind of come back to what really

                                                Page 62

seems to matter here.

I mean, again, context, these other memos that ██████ and █████ created, obviously their production is consistent with the Court's guidance, and I really don't see that there's much dispute about that.

And as you heard from the parties' presentations, this issue of internal communications is obviously critical. There is no litigation that happens in which the key evidence in the case doesn't come from internal communications about the subject matter of the litigation.

And if Judge Corely had wanted to rule that information out, you would see an order that actually rules it out, and you don't.

But I do want to show you why we are as hung up on this as we are. And it has to do -- Your Honor looked at one of the other memos, and we'll just draw your attention to this ██████████████████████ memo. This is the █████████████████

SPECIAL MASTER GARRIE: I can't see your full screen.

MR. LOESER: What's that?

MS. WEAVER: Can you change the viewer so that the full -- we only see half of the presentation right now, the way that it's being shared.

```
 1            MR. LOESER:  Can you see the -- is that there
 2   now?
 3            Okay.  So here's this ███████████████████
 4   which has a lot of significance to us, particularly
 5   given the DTPA claim and the issues around communicating
 6   videos and sharing what people are watching
 7   inappropriately.
 8            This was a -- a -- obviously really
 9   problematic use of user data and friends' data, and
10   here's the explanation in the memo. ████████████████
11   ███████████████████████████████████████████████████
12   ███████████████████████████████████████████████████
13   ███████████████████████████████████████████████████
14   ████████████████████████████████
15            So obviously a critical issue in this case.
16            And here's what the professionals that
17   Facebook hired had to say about that.
18   ████████████████████████████████████████████████████
19   ████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████
21   ████████████████████████████████████████████████████
22   ████████████████████████████████████████████████████
23   ████████████████████████████████████████████████████
24            And also indicates ████████████████████████
25   ████████████████████████████████████████████████████
```

Page  64



1

2

3

4     And then here's another example from ▮▮▮▮

5

6

7     And under the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8     ▮▮▮▮   it states ▮▮▮▮▮▮▮▮▮▮▮▮

9

10

11

12

13

14

15     So obviously a hotly contested issue in this

16   case is whether the information shared is sensitive or

17   highly sensitive.

18     Here you have a memo in which the

19   professionals hired by Facebook and Facebook identify

20   and indicate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮

22     So normal course of litigation, obviously we

23   would want to know, well, what did Facebook think about

24   that?

25     The ▮▮▮▮ reports revealed that the ▮▮▮▮

Page 65

1

2

3

4

5

6

7          And here's what we don't know.

8          How did Facebook respond internally?  What did

9   DevOps at Facebook say about the abuses uncovered by the

10  ADI?  What did engineering have to say about it?  What

11  did they do about it?

12         We don't know any of that because Facebook has

13  withheld these critical communications.

14         That's why we're fighting about this,

15  Your Honor.

16         The guidance from the order makes clear that

17  there's not a work product protection for these

18  communications, and there's not an attorney-client

19  protection because these are not attorney -- we aren't

20  even asking for the attorney-client communications.  We

21  just want the factual discussion internal to Facebook.

22  And it is critical --

23         SPECIAL MASTER GARRIE:  Can I ask a question?

24         MR. LOESER:  Yes.

25         SPECIAL MASTER GARRIE:  Let me ask a

1    hypothetical.

2            If Facebook got the report from

3    ███████████, and then they read it and then they

4    then make a decision, you know, "Oh, we need" -- this is

5    horrif-" -- whatever.  Okay?

6            Some internal conversation happens.

7    Facebook's counsel's on those communications helping

8    direct that engineering team to figure out what is the

9    appropriate response.

10           You're not seeking those communications, or

11   are you seeking those?

12           MR. LOESER:  We are not seeking communications

13   that relate to the underlying facts.  So if there's a

14   communication among engineers that a Facebook lawyer

15   happens to be on but is a factual conversation, what are

16   you going to do -- what does this mean that they were

17   sharing this information?  Who actually got it?  What

18   did the API call log show?  How did this happen?  Why

19   didn't you stop this earlier?

20           All the things that DevOps, the internal group

21   of Facebook that was supposed to be managing this

22   process, the other purpose, the non-litigation purpose,

23   any factual communication about that is discoverable,

24   whether they went through the -- you know, the exercise

25   that the Courts have rejected time and time again of

1    cc'ing a lawyer on it doesn't matter.

2            What matters is the character of the

3    information being communicated.  If it's factual, it's

4    discoverable.  If it's legal advice, it's not

5    discoverable, and we aren't even seeking it.  You know,

6    maybe we could, but we are not.  We are limited to the

7    facts.

8            And to say that these internal communications

9    aren't facts, I mean, that really doesn't pass the smell

10   test.

11           Of course internal communications relate to

12   facts.  They're internal communications about the facts.

13   That's what we want.  We don't want the internal

14   communications about the lawyer's advice and we're not

15   seeking that.

16           MR. SNYDER:  Would it be helpful if I -- if we

17   responded briefly?

18           MR. LOESER:  I have just one more -- one more

19   thing I want to do here because I think it may help wrap

20   this up, frankly.

21           And -- and that's just -- I'll stop trying to

22   screen share because it's not working.

23           But the question is what do we do now?  How do

24   we move forward?  We've been trying to do this for two

25   years.

1          We got an order from Judge Corely that we

2     thought would be, like we thought a number of times with

3     orders, Facebook would then comply with the order and

4     participate in the ways that it's supposed to and

5     provide the other information that is consistent with

6     the order.

7          Here's what we know that shouldn't even be a

8     matter of dispute, and that is that Facebook should

9     immediately produce the other ███ and ███ memos.

10    That's just a no brainer.  They themselves determined

11    that those memos were responsive to the order.  They

12    produced them for the six apps.  We need the rest of

13    them.

14         Your Honor has raised this issue of these

15    underlying communications relating to the background

16    information relating to the ops.

17         Obviously that information is highly relevant.

18    It is a context for the conclusions reached in the

19    memos.  That information should be produced, if it's

20    factual information.

21         We also believe that Facebook can't claim that

22    it needs more time to review and understand these memos.

23    These lawyers on this Zoom are the ones that engineered

24    this process.  They obviously have all these memos.

25    They don't have look for them.  They know what's in

Page 69

1    every single one of them.  They need to be produced.

2           On the internal communications, Your Honor,

3    we are running out of time, and Facebook should not be

4    allowed to run out the clock.  Those materials, which

5    are clearly consistent with the guidance from the Court

6    and critical evidence in this case, should be produced

7    within 30 days.

8           We have depositions coming up.  I know

9    Facebook doesn't want us to have these things so that we

10   can't use them in depositions.  We're entitled to it,

11   and we want to use the information in depositions.

12          So we would ask that you enter an order that

13   accomplishes those purposes so we can move this forward

14   in a way that Judge Corely clearly intended.

15          SPECIAL MASTER GARRIE:  Well, go ahead,

16   Counsel Snyder, and reply.  I have some questions.

17          MR. SNYDER:  Yeah.  Just briefly.

18          The first point is, you know, everything

19   counsel just said erases the in-camera review process,

20   which was all about the communications they were

21   seeking, and that was the whole point of it.

22          Judge Corely, I don't know how many hours she

23   spent, but she certainly reviewed the non-attorney

24   communications, including those from ███████████

25   and the hypothetical kind of documents that counsel

Page 70

1    referenced.

2            And after doing that, we agreed Judge Corely

3    gave guidance, and there is no guidance saying produce

4    non-attorney communications for the six apps, let alone

5    for the others.

6            And if you look at docket 612, the order, you

7    know, it disposed of the non-attorney communications

8    in-camera review, and the order is clear what is

9    producible.

10           It's not a question of relevance.  It's a

11   question of Judge Corely designing guidance and order

12   that achieved the balance of giving the plaintiffs what

13   they needed and proportionality.  This is why she said

14   on the transcript on April 6th, "A lot of it I don't

15   think is relevant at all."  And then she said, "Some

16   material is privileged and I actually think you don't

17   even need."

18           And then the plaintiffs told her, "We need the

19   underlying facts."

20           And the judge obviously went through the

21   materials and decided that -- that requiring the

22   production of every communication was -- that was the

23   whole point of her order.  She decided it wasn't worth

24   digging through all those communications.

25           You know, 611 and 612 was their motion to

Page 71

```
 1    compel.  She then issues her order.  And now they're
 2    going back to all communications, which would
 3    essentially turn the whole in-camera review process, you
 4    know, into a nullity.  We've been there.  We've done
 5    that.
 6              And what they are going to -- what -- if you
 7    order us to produce it, what they'll get is a lot of
 8    underlying factual material in these audits, reports,
 9    and interviews.
10              There is a massive number of log-in entries
11    just for six apps, a massive number, which obviously
12    informed her thinking and her guidance.
13              Seeing those -- that massive communications
14    for six apps -- what is it, 6,000?
15              MS. KUTSCHER CLARK:  6,000 entries.
16              MR. SNYDER:  -- led her to a proportionate
17    order, which was reports, audits, interviews, not
18    communications.
19              The plaintiffs spilled a lot of ink with some
20    of the same passion and rhetoric they used here, arguing
21    to Judge Corely why all non-attorney communication
22    should be produced.
23              She considered it and rejected it, which is
24    implicit in her order.
25              So they're just coming back for another bite
```

Veritext Legal Solutions
866 299-5127

```
 1   and we've done that, back to ground zero, where they
 2   want all non-attorney communications related to ADI.
 3            Counsel also said something about this case is
 4   about ADI.
 5            This case is not about ADI.  And they're going
 6   to get ADI materials if you order us to produce them
 7   that are going to show all the underlying data.
 8            Mr. Southwell, who is in charge of the
 9   investigation, he knows what's in those reports, audits,
10   and interviews, and it's all the information they're
11   going to need to see the underlying facts.
12            So proportionality would dictate that we not
13   be -- consistent with the judge's order, that we not be
14   required to --
15            SPECIAL MASTER GARRIE:  That was one of my
16   questions.  Yeah, sorry for interrupting.
17            MR. SNYDER:  -- produce all the memos.  Yeah.
18   Because, you know, particularly with the discovery
19   cutoff date, you know, Courts have ruled, you know, in
20   discovery disputes, you know, there are many cases that
21   hold that -- you know, when you get to the end of
22   discovery, you know, you need to exercise particular
23   proportionality and discipline.
24            And, you know, the plaintiffs have wanted from
25   day one everything.
```

Page 73

1    And the judge made I think a very good

2  compromise, even though we disagreed with the outcome of

3  producing anything, that the reports, the audits, and

4  the interviews will be more than enough for what they

5  need.

6    Now, in terms of the process --

7    SPECIAL MASTER GARRIE:  Before you get to the

8  process, I have a question about the reports.  Because I

9  spent quite a bit of time reading through them because

10  you guys decided to attach them all to your motions.

11    And one question I had is if -- I don't know

12  if you have the report up as well.  But if you turn to

13  page 183 of that same report we were just looking at,

14  and I guess maybe this is for you or -- I'm not sure

15  Counsel Southwell or who to address the question to.

16  ███████████████████████████████████████████████

17  ███████████████████████████████████████████████

18    I'm trying to understand and distinguish,

19  ███████████████████████████████████████████████

20  ███████████████████████████████████████████████

21    And if you pull it up for me -- I don't

22  know -- Counsel Kutscher Clark or Counsel Ko, to

23  page 183.

24    MS. KUTSCHER CLARK:  I would need a minute to

25  locate it.  If Counsel Ko has it at his fingertips, we

Page 74

```
 1    would appreciate that.

 2                  SPECIAL MASTER GARRIE:  Okay.  So can you zoom

 3    in?  This is where I'm a little -- I want to just

 4    define, in this -- go up.  Up.  Freeze.

 5                  It says █████████  I assume that's -- I'm

 6    not sure -- an individual or an entity.  █████████

 7    ██████  No idea -- and if you scroll up, you can read

 8    about what they're doing, but --

 9                  MR. SNYDER:  Why don't I have Alex -- yeah.

10                  Alex, do you want to just sort of detail the

11    rest?

12                  MR. SOUTHWELL:  Sure.

13                  But, Mr. Garrie, maybe you could ask the

14    question --

15                  SPECIAL MASTER GARRIE:  Yeah.  Let me get all

16    the way through.

17                  Yeah.  So then you see it says ████████████

18    ████████████████████████████  And if you go up to the

19    page above that, 182, that's that whole page right here,

20    ████████████████████████████████████████████████

21    ███████  et cetera, et cetera; right?  You see what I'm

22    reading, Counsel Southwell?

23                  And this is all under the ████████████████

24    ████████████  Sorry.  So let's start at the top.

25                  Go to 181, which is just up one more page.
```

Page 75

```
1     This is all under the section of ███████████████████

2              So you look at ███████████████        You

3     have this data; right?  And then if you go down, right,

4     see -- well, first, we can start with 181.  Sorry.  181.

5              But you see in there it says ██████████████

6     ████████████   ███████████   ████████████████████████

7              Is that -- I'm confused as to these look

8     like -- I can't differentiate where they are

9     ████████████████████████████████████████████████████████

10    ████████████████████████████████████████████████████████

11    ████████████████   But I don't see the -- like what's that

12    mean?  Like is that included somewhere?

13    ████████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████████

16    ████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████

18             What -- I'm trying to understand ███████████

19    ████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████

22    ████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████

25             MR. SNYDER:  Before Alex responds, you know,
```

Page 76

1    to the extent that the reports, which were part of three

2    categories -- which include -- the three categories

3    contain other material communications, that may well

4    have influenced Judge Corely's decision to limit her --

5    the order to these three categories, meaning to say that

6    as a matter of proportionality, these reports contain a

7    lot of what I'll call, you know, exogenous information.

8    You know, we've done this, we've done that.  They're so

9    descriptive that they capture what might be reflected in

10   millions and millions of pages of so-called work papers

11   or communications that lead -- led up to the reports.

12          Stated another way, if the reports contain

13   things like what you just show, that's a helpful point

14   in our favor and also supporting the reading of the

15   order, which is that the reports are chalk full of

16   information.

17          So there's no need to force Facebook as a

18   matter of proportionality to review literally, you know,

19   millions and millions and millions of documents to see

20   what outside the report could inform the report, if what

21   they're looking at is the underlying facts, particularly

22   in light of the judge's observation at the hearing that

23   a lot of the materials contain privileged information.

24   And she said, "and I don't think you really need."

25          The "I don't think you really need" comment

Page 77

```
 1    makes sense if you read this report because the report
 2    is not just a bare bones --
 3              SPECIAL MASTER GARRIE:  Before we -- let's
 4    stay on this report; right?  So let me --
 5              MR. LOESER:  Can I ask a question?
 6              SPECIAL MASTER GARRIE:  All right.  Before we
 7    get to questions, I want my question answered.
 8              It says ███████████████████████████████████
 9    ████████████████████████████████████████████████████
10    ████████████████████████████████████████████████████
11    ████████████████████████████████████████████████████
12    ████████████████████████████████████████████████████
13              What's that based -- ██████████████████████
14    ██████████████████████████████████ -- I'm just trying
15    to get the context of how one interprets the data in the
16    report like this that I'm looking at here.
17              MS. STEIN:  I think that's an Alex question.
18              MR. SNYDER:  Alex, are you there?
19              MR. SOUTHWELL:  I'm here.
20              MR. SNYDER:  Go ahead.
21              MR. SOUTHWELL:  So without just -- you know,
22    without having reviewed the 400-page report to know
23    exactly what is there, you're asking about ███████████
24    ██████████████████████████████████████████████
25              There may be.  The goal of the reports was
```

Page 78

1    basically to pull together all the information strands

2    into one place so that an assessment, an enhanced

3    examination of the app could be done.

4            I would have to look at specifically where

5    these comments are coming.  From █████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ███████████████████████████████  And that information is

9    pulled together in the report here.

10           MR. SNYDER:  Which means, Mr. Garrie, to the

11   extent the reports are produced, they're going to get a

12   synthesis of what will be in a number of the so-called

13   communications which explains, I think, quite logically

14   why the judge ordered what she did.  The reports --

15           SPECIAL MASTER GARRIE:  Counsel Snyder, I -- I

16   hear the argument.  I'm just --

17           So then my question is:  This looks to me --

18   and I don't want to make any assumptions ████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████  Maybe I'm

21   wrong.

22           But what I'm wondering, it says ██████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

1
2
3           Is that correct, Counsel Southwell?

4           MR. SOUTHWELL:

5

6           SPECIAL MASTER GARRIE:

7

8           MR. SOUTHWELL:

9
10
11
12
13
14
15          SPECIAL MASTER GARRIE:  Yeah.  That's what I'm

16   trying -- I'm trying to connect the dots; right?  So...

17          MR. SNYDER:  So the report reflex

18
19
20
21
22
23          MR. SOUTHWELL:

24

25          MR. SNYDER:  Right.

Page 80

1          So that you don't have to go back to the

2     underlying worksheets or data --

3          SPECIAL MASTER GARRIE:  185.  Just scroll down

4     to 185.

5          So I get your point.  I just want to make sure

6     we're on the exact same -- so keep going down.  Right

7     there.  Freeze.

8          It says █████████████████    █████████████████

9     ████████████████████████████████████████████████████

10    ████████████████████████████████████████████████████

11         I don't even -- I can't do the math.  ██████████

12    ████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████

14         There's underlying data that supports this

15    conclusion -- I'm just trying to understand if

16    there's -- what are the sources of information -- like

17    there's a big difference between looking at, like,

18    petabytes and petabytes of data, right, to get this

19    conclusion, or is there a summary note somewhere where

20    someone did this analysis and pulled it out of the

21    system?

22         MR. SOUTHWELL:  I'm not sure that I follow,

23    Mr. Garrie.

24    ████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████

Page 81

```
1              That's what we're looking at.
2                   SPECIAL MASTER GARRIE:  So this is --
3
4
5
6              Okay?
7                   MS. STEIN:  Are you trying to get -- is your
8    question whether underlying data was e-mailed to
9    and like how they --
10                  SPECIAL MASTER GARRIE:  Yeah.  Provide --
11   yeah.  Like was this shared -- like how did they get
12   this information -- like how did this information come
13   to be?
14                  MR. SOUTHWELL:
15
16                  SPECIAL MASTER GARRIE:  You say "they."  Who's
17   "they"?
18                  MR. SOUTHWELL:          and
19
20
21                  SPECIAL MASTER GARRIE:
22
23                  MR. SOUTHWELL:
24
25                  SPECIAL MASTER GARRIE:
```



Page 82

```
 1            MR. SOUTHWELL:  Yeah.
 2            MR. SNYDER:  ██████████████
 3   However -- whatever buttons you push to extract data
 4   from.
 5            SPECIAL MASTER GARRIE:  I get it.  I get it.
 6   I just want to understand that.
 7            Okay.
 8            MR. SNYDER:  One more point, Mr. Garrie, I
 9   just wanted to make is, in attempting to find some basis
10   to go beyond the order and get so-called underlying
11   information, I'll just -- one of the things counsel said
12   is if during the investigation they found a scoff log
13   app and took some action, you know, we want to know
14   that.
15            The fact is ADI concluded more than two years
16   after this case was filed the entire investigation was
17   conducted -- started after this case was filed.  The
18   investigation was initiated a few days after the first
19   class action -- of the underlying, you know, class
20   actions were filed.
21            So in other words, none of that really is
22   relevant to this case about Facebook's, you know,
23   practices prior to ADI.
24            And so -- so what I understood plaintiffs to
25   be saying before was the underlying data about, you
```

Page 83

1    know, apps that were in violation of our platform rules

2    was of interest to them.

3              And as you can see from these reports, which

4    are chalk full of information, they're going to get that

5    information if you order it produced.

6              So that is consistent with the order and

7    consistent with proportionality, and what you're going

8    to find is that these reports were designed so that

19             SPECIAL MASTER GARRIE:  Can you go down to

20   page 223, just quickly?

21             Because my confusion comes from if you go down

22   to -- right here.

Page 84

```
1
2
3
4
5               All my question is,
6
7
8
9
10              This looks like it's a --
11              MR. SNYDER:
12
13
14
15
16
17
18              And just, again, I keep on going to advocacy.
19      It goes to our point.
20
21              I mean, that's -- that's --
22              SPECIAL MASTER GARRIE:  My other question is:
23      Is this the entire table?  Because it looks -- when the
24      .pdf was generated, there's cutoff there, and you
25      can't -- like, you see the word "completed," it cuts the
```

1    "d" off.

2              You go back up.

3              Zoom in.

4              MR. SNYDER:  That's just a bad copy.  We're

5    not -- I don't think we're -- I don't think --

6              SPECIAL MASTER GARRIE:  I'm not saying you

7    are.  I'm just asking --

8              MR. SOUTHWELL:  This is attached to

9    plaintiffs' filing, I believe.  I'd have to go back to

10   the original source.

11             SPECIAL MASTER GARRIE:  Yeah.  I didn't get

12   the -- I didn't want to ask for the exemplars.  I just

13   didn't know.

14             MR. SNYDER:  Yeah.  It just looks like they

15   cut it off however they --

16             MR. SOUTHWELL:  I think that's everything.  I

17   think it's everything.

18             MR. KO:  That's how we received it.  We

19   received it as .pdf.  This is exactly replicated.

20             MR. SNYDER:  Mr. Garrie, my final point is, in

21   terms of rebuttal, I think -- unless my team has

22   anything else -- it's not as easy as produce all

23   reports.

24             Under the guidance of Judge Corely's order,

25   because she had made -- she made a clear point of saying

```
 1    that there are still attorney-client and work product
 2    protections that -- that are applicable to these
 3    documents, we have to review everything for privilege.
 4    And, you know, even the dual purpose is document by
 5    document.
 6              There's no categorical ruling that every
 7    document --
 8              SPECIAL MASTER GARRIE:  We'll get into that in
 9    a second because I have a set of questions for both
10    parties.
11              So Derek -- or Counsel Ko, you can stop.
12              But I would just ask that you confirm,
13    Counsel Ko, that it is indeed the .pdf is how you got --
14    just for my own edification since I had to read through
15    it all, to make sure that that was -- you got the
16    entirety of it.
17              MR. SOUTHWELL:  Yeah.  I believe --
18              MR. KO:  Again, I think --
19              MR. SOUTHWELL:  ███████████████████████.
20              MR. KO:  Yeah.  And it's -- you can tell from
21    the .pdf, you can see the Bates number, the labels that
22    Facebook put on it at the bottom here.  Here, I'll share
23    it real quickly.
24              But I can confirm for you right now that this
25    is indeed the copy that we received.
```

Page 87

1          MS. WEAVER:  And so one question we have had

2     is are these from a project management system that has a

3     COMs tool that extracted data?  Is that the data source?

4     And could we get it in native or no?

5          MR. KO:  We just received 11 .pdfs in terms of

6     how Facebook responded to Judge Corely's September 8

7     order, and you can see that --

8          SPECIAL MASTER GARRIE:  I have a question

9     about -- we're going to talk about producing reports and

10    those in a second, and the format and other things,

11    which is because of that.

12         My first question regarding that is ███████████

13    ████████████████████████████████████████████████████

14    ███████████████████████████████████  how many

15    actual reports are we talking about?

16         Not pages.  You guys love pages.  But I'd like

17    to know just number of reports.

18         MS. KUTSCHER CLARK:  I don't have the exact

19    number, but I believe it's in the range of ███████████

20    reports.  And they vary tremendously in length.

21         SPECIAL MASTER GARRIE:  I get it --

22         MR. LOESER:  And just for clarification on

23    your question, Special Master Garrie, we're focused on

24    the phase 3 and 3 issues.  So the reports --

25         SPECIAL MASTER GARRIE:  We got it.

Veritext Legal Solutions
866 299-5127

1          So I'm just -- I want to understand -- so
2     we'll round up.
3               ███████████ reports, more or less?
4          MR. SOUTHWELL:  Yeah.  I think it's a little
5     bit higher than that, like maybe ███████ memos.  Those
6     are the memos, reports from ███████that plaintiffs I
7     think are referring to.
8          SPECIAL MASTER GARRIE:  Well, I didn't see
9     anything from -- well, like they referenced ██████
10          MR. SOUTHWELL:  The ████ ones look the same.
11     They're different firms that are doing --
12          SPECIAL MASTER GARRIE:  No, no.  The reason
13     why I ask is in that report we were looking at, they
14     reference the analysis ██████████████████████████
15     ████████████████████████
16          Does anybody know who 13302 is?
17          Off the record.
18          MR. LOESER:  I think that's Orin.
19          MS. KUTSCHER CLARK:  Yeah, that's Orin.
20          SPECIAL MASTER GARRIE:  Back on the record.
21          Okay.  So we have ██████total reports.
22          That includes 1, 2, and 3, that whole funnel
23     thing.  And that's a everything ██████and ██████ did.  It
24     looks like ████████████████████████████████
25     ██████ -- I -- I couldn't exactly tell from the reports,

                                          Page 89

1    but ████████████████████████████████████

2    ████████████████████████████

3              Is that correct?

4              I can be very specific if you want.  We can go

5    back to 141 and I can --

6              THE COURT REPORTER:  I'm sorry.  Who's

7    speaking?

8              SPECIAL MASTER GARRIE:  Special Master Garrie.

9              141.  I think it's page 141 -- it's not 141.

10   It's below.

11             MR. KO:  Special Master Garrie, while you're

12   looking at that, one thing that's important -- an

13   important point to make, Judge Corely never received

14   these reports.  She did not see them.

15             So this idea that Judge Corely knew that just

16   producing these reports would be sufficient and adequate

17   to respond to our request is just false because she's

18   never seen it.

19             The only document she's ever seen are the

20   20 documents from the six exemplar apps that she found

21   were not useful.

22             MS. KUTSCHER CLARK:  If I could respond to

23   that, though.

24             Judge Corely did allow a factual declaration

25   from Mr. Southwell about these materials where he

Veritext Legal Solutions
866 299-5127

```
 1   described these reports and their contents in pretty

 2   great detail.

 3           So I think she had a fairly good understanding

 4   of what they were.

 5           MR. KO:  Did she -- she didn't ever see these

 6   reports?

 7           SPECIAL MASTER GARRIE:  Please don't interpret

 8   my silence as an opportunity to speak.  I'm just looking

 9   for the ████  I know both positions for the record.  I

10   just -- I have my question I want answered, and then

11   feel free to discuss further, if appropriate.

12           MR. SOUTHWELL:  Is it page 137?

13           SPECIAL MASTER GARRIE:  Yeah.  Thank you very

14   much.  Let me just go up and make sure.

15           Yeah.  Page 137.

16           So where it says ████████ on the second

17   bullet.

18           Is it the second bullet?  Yeah --

19           No.  First bullet.  First bullet, last two

20   lines.

21   ████████████████████████████████████

22   ████████████████████████████████████

23   ████████████████████████████████████

24           Was there ████ document that went along with

25   the ████ report?
```

Veritext Legal Solutions
866 299-5127

```
 1              MR. SOUTHWELL:  Are you referring to this
 2   particular report?
 3              No.  There was an ████████████████████
 4   ███████████████████████████████████████████████████
 5   ███████████████████████████████████████████████████
 6              SPECIAL MASTER GARRIE:  This wasn't clear from
 7   the -- okay.
 8              So then when we say ██████ it is the reports,
 9   ████████████████████████████████████████████████████
10              MR. SOUTHWELL:  It's the reports and memos
11   that I think is what plaintiffs are seeking.  Yes.  It's
12   what -- the things that we're looking at right here.
13              MR. SNYDER:  And then, Alex, in terms of
14   audits and interviews by non-attorneys, what's the
15   number of those?
16              MR. SOUTHWELL:  I'd have to look.  █████████
17   ████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████
19   ████████████████████  I mean, that's port of what we
20   would need to review.
21              MR. SNYDER:  Right.
22              SPECIAL MASTER GARRIE:  Okay.  Of the ██████
23   that's the total, how many are in 2 and 3?
24              MR. SOUTHWELL:  Is that a question for me?
25              I don't -- 2 and 3 don't actually make a lot
```

Page 92

```
 1    of sense for what we're talking about here, so not sure
 2    how to answer that.  It's not really a conception that
 3    is logical in talking about the reports.
 4                SPECIAL MASTER GARRIE:  I agree.  But,
 5    Counsel, I believe -- were reports not generated for
 6    group 1?
 7                Initially you described it as a three-phased
 8    approach; right?
 9                So Phase 1 was X and Phase 2 and Phase 3
10    were -- unless plaintiffs, you understood it as --
11                MR. LOESER:  No.  That's Mr. Southwell's own
12    description in his declaration of the phases of the
13    investigation and of the report.
14                So I --
15                SPECIAL MASTER GARRIE:  Yeah.  That's how I
16    read it as well.
17                MR. KO:  And then the memo --
18    Special Master Garrie, as you can see, the memo makes
19    clear ████████████████████████████████
20    ███████████████████████████████████████████████████
21    ███████████████████████████████████████████████████
22    ███████████████████████████████████████████████████
23    ███████████████████████████████████████████████████
24                MR. SOUTHWELL:  Right.
25                MR. LOESER:  We didn't come up with these
```

Page 93

1    phases.  They did.

2              MR. SOUTHWELL:  I -- Mr. Garrie, if I could

3    explain, if you like.

4              SPECIAL MASTER GARRIE:  Yeah.

5              MR. SOUTHWELL:  So the first phase is

6    "Identification."  The second phase is "Enhanced

7    Examination."  That's when we did reports.  The third

8    phase is "Enforcement," which is when we took certain

9    actions with respect to the apps, depending on the

10   results of the reports, which included seeking RFI

11   information from the developers, having back and forth

12   with them about that information.  And then potentially

13   doing audits and interviews and/or taking enforcement

14   action, such as cease and desists, like what we did

15   with ███████████████

16             MS. STEIN:  And just to be --

17             MR. SNYDER:  What was 4?  What was 4, Alex?

18             First is identification, second was enhanced

19   examination, third enforcement.

20             THE WITNESS:  That's it.  There's just three.

21             MR. SNYDER:  Just three.

22             MS. STEIN:  And just to be clear, the

23   communications with developers, as explained to

24   Judge Corely, is a category with -- you know, that -- of

25   documents that were produced.

                                              Page 94

```
 1                    MR. SNYDER:  Right.
 2                    MR. KO:  And we understand they're still being
 3         produced.
 4                    SPECIAL MASTER GARRIE:  Whether they've been
 5         produced or not is not what we're here to discuss.
 6                    But if we look in these reports,  ████████
 7         ███████████████████████████████████████████████████
 8         ███████████████████████████████████████████████████
 9                    All right.  I showed you that one we were
10         looking at about  ███████████████████  and I don't
11         know where to go.
12                    MR. KO:  Right here.
13                    SPECIAL MASTER GARRIE:  No.  It was down.
14                    MR. KO:  I think there was two.
15                    SPECIAL MASTER GARRIE:  So when we say
16         communications with developers, they've already -- well,
17         I don't want to go -- I don't want to -- on second
18         thought, my question -- let me just finish my first
19         thing.
20                    Anything that happened -- while he's pulling
21         that up, anything that happened in enhanced examination
22         got a memo.
23                    Is that it?
24                    So there's  █████ memos that fall within
25         enhanced examination.
```

1           MR. SNYDER:  Well, no.  I mean -- the reports

2   reflect what about the enhanced examinations?

3           SPECIAL MASTER GARRIE:  That's what I'm trying

4   to figure out.

5           MR. SOUTHWELL:  The reports are the enhanced

6   examination.  In other words, once we --

7           MR. SNYDER:  Got it.

8           MR. SOUTHWELL:  -- identified something for

9   enhanced examination, we then conducted the enhanced

10   examination, which was the report and other related

11   activity.

12           SPECIAL MASTER GARRIE:  That's phase -- that's

13   why you said it doesn't make sense because if there's a

14   report, you were already in Phase 2.  So Phase 1 is not

15   relevant.

16           Okay.  Now, the communications that you had

17   with the developers, ███████████████████████████

18   ███████████████████████████████  I thought it

19   was but maybe I misread it.

20           MR. SNYDER:  So, Alex, after there's an

21   enhanced investigation, there's a decision to escalate

22   to enforcement and there's an e-mail sent to a developer

23   or an RFI sent to a developer.

24           And, Mr. Garrie, in a handful of instances, we

25   filed lawsuits against them.  Obviously those are public

                                                    Page 96

1    documents.
2            But, Alex, in the panoply of enforcement
3    activities, there are communications, right, between
4    Facebook or counsel, right, us, and a third party app
5    developer?
6            MR. SOUTHWELL:  Right.  Those all emanated
7    from the ███████████ mailbox, which is the mailbox that
8    was agreed to be searched.
9            Mr. Garrie, you're pointing to an earlier
10   correspondence.  This appears to be just, based on the
11   face of it, from a correspondence from 2012.
12           MR. SNYDER:  Right.
13           MR. SOUTHWELL:  But as a part of the
14   examination and enforcement activity, we would interact
15   with developers through the ███████████ mailbox.
16   That's the mailbox from which third-party correspondence
17   was produced.
18           SPECIAL MASTER GARRIE:  So that's how you're
19   defining communications?
20           MR. SNYDER:  Yeah.
21           So we've already -- to the extent -- so what
22   we're objecting to and what there's debate about is not
23   about once we, after enhanced examination, enter an
24   enforcement phase and deal with third-party --
25   third-party app developers, that we've produced or

                                              Page  97

1    we're producing.

2              What we're objecting to, and we think

3    Judge Corely, you know, ruled on for proportionality

4    reasons, is all of what counsel called worksheets.  It's

5    all of the e-mails and internal correspondence that

6    surrounded and led up to and rolled up into these

7    enhanced examination reports about apps.  That in some

8    cases -- many cases, pull from those so-called work

9    materials and roll them up as relevant into these

10   reports.

11             So the reports reflect and capture a lot of

12   the communications that the plaintiffs seek, we're

13   objecting to -- if there's ██████ reports, my guess is,

14   Alex, there's probably, you know, ████████ documents

15   or some multiple of that, that would surround each of

16   these enhanced examination inquiries.

17             And so that's I think what we're fighting over

18   here right now.

19             Do we have a sense, Alex and team, of the

20   magnitude and scope of those so-called communications or

21   what counsel is calling the work papers that led up to

22   these reports?

23             From my team, do we have a sense of what the

24   volume would be?

25             MR. LOESER:  Haven't they been logged?

```
1              MR. SNYDER:  I don't know.  That's why I'm
2     asking my team.
3              MR. LOESER:  Well, if they've been withheld, I
4     assume they've been logged.
5              MR. SNYDER:  I don't know.
6              SPECIAL MASTER GARRIE:  Time out.  Let his
7     team answer the question.
8              MR. SNYDER:  Do we have a sense, guys?
9     Millions?  Hundreds of thousands?  Alex?
10             MR. SOUTHWELL:  If the question is what was
11    the amount of communication between, for example,
12    Gibson Dunn and Facebook or ████████ and Facebook, it's
13    millions and millions.
14             MR. SNYDER:  Right.  That's what I would
15    think.
16    ████████████████████████████████████████████████████
17    ████████████████████████████████████████████████████
18    ████████████████████████████████████████████████████
19    ████████████████████████████████████████████████████
20             So if what they're looking for, Mr. Garrie, is
21    the underlying facts, they're going to get the
22    underlying facts here in these reports.
23             SPECIAL MASTER GARRIE:  Noted.  All right.
24             MR. SOUTHWELL:  Mr. Garrie, if I could make
25    one additional point about that.
```

Veritext Legal Solutions
866 299-5127

```
1              The conception of audit work papers is not
2        really applicable.  As you can see from the reports,
3
4
5
6
7
8
9
10
11              MR. LOESER:  So, Special Master Garrie, could
12       I just briefly respond to a couple of factual points
13       that I think could be helpful, just to keep in mind, or
14       do you have other questions, and I can.
15              SPECIAL MASTER GARRIE:  I wrote my questions
16       down.
17              Go ahead.
18              MR. LOESER:  Okay.  So first thing I think is
19       really important to understand is that the entire ADI
20       was a retrospective examination.  It was always back
21       looking, it was always back to a period of time within
22       the class period.
23              So the idea that somehow these materials
24       are -- don't matter because they're after the fact,
25       that's just -- that's not true.
```

Page 100

```
 1              The issue of proportionality, there's not one
 2     word in Judge Corely's order about proportionality.
 3     Judge Chhabria had said something about proportionality,
 4     which is that this is a big case and that's not the kind
 5     of argument that would be effective.
 6              Factually, the thing I think that's really
 7     critical to keep in mind is Judge Corely has not seen
 8     any of these reports.
 9              And so when Mr. Snyder talks about the
10     conclusions she drew from the language that you showed
11     in the report we were looking, that's not possible.  She
12     didn't have any of these things so she couldn't have
13     drawn any conclusions from that actual language.
14              And then lastly, Your Honor, we're talking a
15     lot about the underlying information and the
16     ████████████████████████████████████████████████████
17     ████████████████████████████████████████████   And
18     that is important.  But what also is really important
19     and critical is the internal Facebook communications.
20              Facebook has provided not one document from
21     inside Facebook that discusses ██████████████████████████
22     ████████████████████████████████████████████████████████
23     ████████████████████████████████████████████████████████
24              That you've identified -- here is just an
25     example.  ███████████████████████████████████████
```

                                            Page 101

1

2

3

4

5

6          Okay.  That's helpful information and we will

7    be very grateful for an order requiring the production

8    of all these memos.

9          But also what is critical is what is it

10   exactly that Facebook itself said and did with this

11   information?  Because that goes to the heart of the

12   litigation.

13         One of the categories of misconduct here is

14   the failure to police what apps were doing.  And it is

15   critical to know -- and we know nothing, we don't have a

16   single -- Facebook has really effectively eliminated

17   from discovery its own internal conversations about

18   these enhanced examinations and the investigation.  And

19   that's what we need.  That's what they have no plausible

20   credible argument why Facebook -- unlike every other

21   company in the world, there's a special rule for

22   Facebook.

23         And its own discussion of matters at the heart

24   of the litigation, it's allowed to completely conceal?

25   And we're left with what third parties say.  We do want

Veritext Legal Solutions
866 299-5127

```
 1    what third parties said about their misconduct.  But
 2    this whole conversation about the communications with
 3    the app developers, the background data, the questions
 4    you're asking, that's really important, but let's not
 5    lose sight of the volume of information that
 6    presumably -- I mean, maybe it's millions of pages, you
 7    know, if we're just going to make up numbers, but I
 8    really doubt it.
 9              But there are people that are the Facebook
10    professionals that live and work there, engineers,
11    DevOps, and when they got a report like this, it is
12    impossible to believe that they didn't go, "Whoa,
13    there's another Cambridge Analytica" or "I can't believe
14    we did it again" or "Oh, my God, another access to
15    friends data that people didn't authorize."
16              This is a huge problem.  We get that
17    information, and they have no credible basis for denying
18    it.
19              And if Judge Corely had wanted to rule that
20    out, information that lies at the heart of every major
21    litigation in America, she would have said so, and she
22    didn't.  She did not rule that out.
23              And so I just don't want to lose sight of how
24    important that is.
25              SPECIAL MASTER GARRIE:  Understood.
```

Veritext Legal Solutions
866 299-5127

```
 1              Before we go down a rabbit hole here, let me
 2     ask my question and then Counsel Snyder --
 3              Counsel Snyder, you can respond.
 4              MR. SNYDER:  In brief.
 5              Then enforcement issue is not ADI and what we
 6     did after the litigations are filed or what -- the issue
 7     is whether Facebook at the time, the relevant time of
 8     the case, properly enforced its platform -- platform
 9     policies.
10              And so, you know -- and then, you know -- and
11     the -- and if, you know -- I've said from the beginning
12     and I'll say again, you know, this is -- actually
13     there's a certain irony to this madness because they're
14     the most --
15
16
17              You know, I've said before and I'll say it
18     again, there is nothing like Cambridge Analytica.  And
19     the plaintiffs are ultimately -- you know, are going
20     into a dry hole with all of this.
21              Having said that,
22
23
24
25
```

Page 104

1          And if after reviewing all those reports they

2     want -- they say, "We need more with respect to app 6,

3     7, and 8 because we think the reports are insufficient,"

4     you know, I guess they can come back again and ask for

5     that.

6          But, you know, they're going to have a lot of

7     facts to work with on ███████reports, and they're going to

8     see this is a dry well, honestly.

9          So I think that, you know, in terms of

10    proportionality and order of proceedings, that if you're

11    going to order us to produce those three categories, we

12    should start there.

13         And, you know, I think, again, if they want

14    information, you know, it's not -- and it's not going to

15    take a night or even 30 days to do that because even

16    Judge Chhabria ruled, when we were simply reproducing to

17    the plaintiffs, reproducing our FTC productions, meaning

18    we had a file that said "FTC Production," we could have

19    literally just forwarded it to the plaintiffs.

20         But Judge Chhabria said, "No."

21         And when the plaintiffs said, "Well, they

22    could just push forward on that file."

23         And Judge Chhabria said, "No."  They have

24    every right to review those FTC productions for

25    privilege because we produced stuff to the FTC that we

Veritext Legal Solutions
866 299-5127

```
1    wouldn't produce to private plaintiffs because they're
2    our regular.
3              So too here.  We can't just hit forward on
4    █████reports because as you see, embedded in the reports
5    are a lot of information and we're going to have to
6    review them and redact anything and log that may be
7    privileged.  Maybe Southwell sent an e-mail to
8    ████████████████ that is embedded in a report.
9              And so, you know, again, jumping the gun, if
10   you order us to produce reports, we can do it on a
11   rolling basis, but we're going to need to have attorneys
12   put eyes on █████ reports.  And consistent with the
13   guidance the judge gave us, withhold anything that's
14   either work product or attorney-client privilege.
15             SPECIAL MASTER GARRIE:  One of the issues --
16   we can jump into it now --
17             And so, Counsel, is there anything you want to
18   say or -- I have a question or two.
19             MR. LOESER:  We have six reports here.
20   There's not a word redacted or removed because
21   Judge Corely ordered that none of this was privileged
22   or protected by work product.
23             So it's impossible to believe that Facebook
24   genuinely believes it now gets to apply the same
25   rationale for withholding that it was -- was rejected
```

Page 106

1    by Judge Corely and resulted in the production of these

2    memos that we have that don't have anything removed from

3    them because they already have an order saying that work

4    product doesn't apply and none of the information is

5    privileged.

6           So it's -- we can keep -- we can keep

7    constructing reasons for delay, but the fact of the

8    matter is, obviously there was an analysis done by

9    Facebook to produce what we have, and I think it's

10   telling that there's no -- there's nothing removed from

11   them.

12          MR. SNYDER:  Two points:  One, since counsel

13   is an advocate for and a booster of fidelity to the

14   record, Judge Corely did not issue a categorical ruling.

15   She said that, quote, "Facts underlying ADI may be

16   discoverable but" -- in her comments at the hearing

17   that preceded the order, "but not information as

18   attorney-client privilege or attorney-client work

19   product."

20          So the guidance goes to relevance, burden,

21   proportionality, and then document specific privilege

22   concerns.  And if it turns out that ███████reports have

23   no privileged material, or however many you order us to

24   produce, if any, with no redactions.

25          But we have the right to review these

1   materials for privilege, and we'll --

2           SPECIAL MASTER GARRIE:  So with that in mind,

3   right, if -- you have a month -- you have -- you're

4   doing this on a monthly basis, and given the timelines

5   and cutoffs, I don't know if that will work or is

6   practical, given the January cutoff date.

7           MR. SNYDER:  I mean, what I would suggest is,

8   again, plaintiffs' counsel doesn't believe this, they

9   tend to not believe anything I say, but there is -- you

10  know, Mr. Southwell is sitting here, and I can tell you

11  without waiving privilege this is a dry well.  I mean,

12  they're very excited about this well, but it's a dry

13  well.

14          So, I mean, maybe we start -- if you're

15  inclined to order us over our objection to produce

16  reports, which we have to object for the record because

17  we, you know, obviously took a contrary position before

18  Judge Corely's order, all the reports seem excessive.

19  I mean, maybe we produce some -- some percentage of

20  them, if you're a inclined to order that, as opposed to

21  every single one.

22          But if you were to order us to produce them

23  all, it --

24          Martie, I know you've done an analysis of how

25  long you think that would take to do.

                                        Page 108

```
1              MS. KUTSCHER CLARK:  Yeah.  I think in all,
2      given the volume, it would take a few months
3      realistically.  I think at least three, maybe four.  But
4      that would be to get through every single one of them.
5              And as Mr. Snyder said, what we could do is
6      produce on a rolling basis.  So we would get started on
7      them right away and produce them as they're ready to go.
8              And, you know, I'll add that when we dealt
9      with this issue with the FTC productions, plaintiffs
10     pushed back tremendously on the notion that we were
11     going to review everything for privilege.  We didn't
12     withhold anything ultimately that we produced to the
13     FTC.  We just gave it a review.
14             And that's what we're looking at here is we
15     just --
16             SPECIAL MASTER GARRIE:  Judge Chhabria said it
17     and Corely, you know -- if you want to spend the time
18     and effort to review them for privilege, that is your
19     right.  Whether you want to devote the additional
20     resources that it may cost your client, that's their
21     right to incur those costs to meet that.
22             MR. SNYDER:  Want would be the wrong word.  We
23     would be professionally obligated to do it.
24             SPECIAL MASTER GARRIE:  Fair enough, Counsel.
25     Noted for the record.
```

Page 109

```
 1              Is there a list of the ████ like if you were
 2     provided a list of the top ████ apps to get started with
 3     and they gave it to you in tranches of ████████████
 4     or something like that, right, would that -- of
 5     developers.  I'm not talking apps anymore.  I'm talking
 6     developers.  If they gave it to you in tranches of
 7     ████ because I think there's only a -- and correct me
 8     if I'm wrong, but how many were actually in Phase 2,
 9     developers?  Counsel Southwell?
10              MR. SOUTHWELL:  Sorry.  I'm not sure that I
11     follow the question.
12              SPECIAL MASTER GARRIE:  How many developers
13     ended -- app developers were in Phase 2?
14              You made me that spreadsheet.  I just don't
15     have it handy.
16              MR. SOUTHWELL:  I mean, I don't know the
17     number offhand.  I mean, in terms of the ultimate number
18     of suspensions, there were, you know, ████████
19              SPECIAL MASTER GARRIE:  That was Phase 3;
20     right?
21              MR. SOUTHWELL:  -- of developers -- yeah.  So
22     I don't know that number offhand.
23              If you're -- are you referring to a particular
24     spreadsheet that we provided you with that information.
25              SPECIAL MASTER GARRIE:  You provided it, I
```

Page 110

```
 1    believe, in other proceedings, and I thought you might

 2    have that information handy.

 3              But if you don't, that's fine.

 4              MR. SOUTHWELL:  Not off the top of my head,

 5    no.

 6              SPECIAL MASTER GARRIE:  But if plaintiffs --

 7              MR. KO:  Can I ask you a question really

 8    quickly?

 9              Before we go down this road of -- I think it's

10    important to talk about what the ███████ consist of.

11              But before we do so, I think it's also

12    important to go back a step and talk about this process

13    and Facebook's purported or apparent right to look at

14    everything.

15              There's a huge difference between their -- the

16    parallels that they're drawing between the FTC review,

17    of which a privilege dispute was not at issue before

18    Judge Chhabria.

19              And this ADI investigation, which has been two

20    years of litigation about privilege and resulted in the

21    order that Judge Corely issued.  She --

22              SPECIAL MASTER GARRIE:  I understand,

23    Counsel Ko.  But if they want to hire 300 people to

24    review them so they can meet the timeline I set, that's

25    their choice.
```

Page 111

```
 1              MR. KO:  Fair enough.  Yeah.  Fair.
 2              SPECIAL MASTER GARRIE:  I mean, or the
 3    timeline may only require 10.
 4              But the point is, is that if they want to
 5    exercise that, then they shall.
 6              Okay.  Going back.
 7              The question I had was do these reports
 8    encompass all three buckets?  I just want to go back and
 9    reread the buckets.
10              The one, two -- I just want to make sure
11    we're -- the numbers we're getting and kicking around
12    are actually -- so I have a --
13              MS. STEIN:  You mean the different phases?
14              SPECIAL MASTER GARRIE:  Yeah.
15              MR. SNYDER:  So if we identified something
16    worthy of enhanced examination, then it necessarily is
17    going to be in a report.  If an app is not identified,
18    it's a tree falling in the forest that's never heard.
19              So I think, Alex, as I understand it, to the
20    extent we identified an app that was, you know,
21    suspected or believed to have some hair on it, that was
22    subject to enhanced examination, there's a report
23    generated.  And then to the extent we decided to take
24    action, enforcement action through an audit, an
25    interview, or an RFI or a lawsuit, we've already
```

Veritext Legal Solutions
866 299-5127

```
 1   produced or agreed to produce those communications with
 2   third parties.
 3            Is that fair, Alex?
 4            MR. SOUTHWELL:  Yeah.  That's right.
 5            I would just add that if in the identification
 6   detection phase we identified something we just had a
 7   question about, right, didn't even necessarily need to
 8   have hair on it, there was a question and so we wanted
 9   to get to the bottom of it.  And we then went into
10   enhanced examination, did a report, and then we took
11   steps from there.
12            MR. SNYDER:  Imagine ██████████████████  was
13   an app -- I'm just making it up; right -- and it was not
14   identified for any issues, you know, there's not going
15   to be enhanced examination about the ████████  that's a
16   wrong example -- but, you know, I would assume, Alex,
17   ███████████████████████████████████████████████████████
18   ███████████████████████████████████████████████████████
19            So it's --
20            SPECIAL MASTER GARRIE:  I just want to make
21   sure I understand.
22            Reports -- there are █████  of them.  You had
23   millions of apps.  But █████  reports which probably
24   represent ████████████████████████████████  just based
25   on the reports --
```

                                              Page 113

```
 1                MR. SOUTHWELL:  ████████████

 2                SPECIAL MASTER GARRIE:  ████████████   I mean,

 3     I'm not ████████████████████████████████████   I'm not

 4     exactly sure.  But at least more than ████████   It's not

 5     one to one.

 6                But then any audits and interviews, those fall

 7     out of Phase 3 and are in the process of being produced?

 8                Like, are audits and interviews -- how many

 9     are we talking about?

10                MR. SOUTHWELL:  If you're asking about

11     Phase 3, so Phase 3 involved --

12                SPECIAL MASTER GARRIE:  Because you said

13     audits and interviews.

14                MR. SOUTHWELL:  Right.  But there are a few

15     steps to it.

16                There's seeking the information from the

17     developer, and that is the process of RFI and back and

18     forth.  That's what was done through the ████████████

19     mailbox.  That's what's already been produced.  That's

20     the back and forth.

21                Sometimes we did an interview on top of the

22     RFI process that was back and forth.

23                I don't know off the top of my head how many

24     interviews there were.  You know, ████████████████  █████

25     ██████████████████████████████████████  █
```

Page 114

1      ████████████████████████████

2              And then there were also some audits, but I

3      don't have the number off the top of my head.

4              MR. SNYDER:  So only the audits and interviews

5      conducted by nonlawyers we're producing.

6              And so basically all three phases are captured

7      in any production that includes the reports and then

8      those third-party communications between audits or

9      interviews involving non-attorneys.

10             SPECIAL MASTER GARRIE:  When you say audits --

11             MR. KO:  Just a clarifying question.

12             Special Master Garrie, you might be asking the

13     same question, but, you know, we thought that audits

14     were performed by ████████████████  or another third

15     party or perhaps even by a Facebook DevOps individual or

16     at least that individual --

17             SPECIAL MASTER GARRIE:  Well, I have questions

18     about the audits part so table the question.  I'll let

19     you ask the question in one second.  I just want to

20     finish interviews, and then we'll get to audits.

21     ████████████████████████████████████████████████

22     ████████████████████████████████████████████████

23             Is that right, Counsel?  Is that what

24     you're --

25             MR. SOUTHWELL:  Yes.  That's right.

```
 1                 SPECIAL MASTER GARRIE:  Okay.  Now, we're
 2     going to talk about the privilege logs I got in a
 3     second.  I'm going to have some -- I just want to
 4     understand the 99 that we were -- but we'll save that
 5     for once we finish this.
 6                 So interviews, any idea how many will
 7     actually -- I mean, if you conducted it, the privilege
 8     review should be pretty quick; right?  Your name is at
 9     the top as the person --
10                 MR. SOUTHWELL:  Yeah.  I mean, if we're
11     looking for non-attorney conducted interviews, I don't
12     know how many there were.  ███████████████████████████
13     █████
14                 SPECIAL MASTER GARRIE:  And how many --
15                 MR. LOESER:  I'm sorry.  Are these interviews
16     with third parties?  Is that what we're talking about?
17                 SPECIAL MASTER GARRIE:  Any interview.  I
18     think it's -- I read it as any interview.  It's not
19     limited to third parties.  It's any interview they
20     conducted in connection with the enhanced examination
21     process, whether it was with Facebook individuals or if
22     it was with third parties.
23                 Is that not --
24                 You're not distinguishing the two, are you,
25     Counsel Southwell?
```

Page 116

1          MR. SOUTHWELL:  Sorry.  I'm not sure that I

2     followed.

3          MS. KUTSCHER CLARK:  I'm just showing the

4     relevant -- oh, I'm sorry.

5          SPECIAL MASTER GARRIE:  Yeah.  So interview --

6     yeah.  It's on page -- well, it's in several places.

7     Page 1, on line 24 to 26.

8          But -- interviews; right?  If you interviewed

9     a -- let's say you're doing an enhanced examination, and

10    in the enhanced examination they say, blah, blah, blah,

11    whatever.

12         And then you're like, "Oh, we need to talk to

13    the Facebook app team and interview them about some part

14    of the enhanced examination," would that -- an

15    interview being -- you're not saying all interviews were

16    done with third parties, are you?

17         MR. SOUTHWELL:  I think -- I think we are

18    saying that.  That's what -- the interviews were of

19    developers and various people on the developer staff.

20         SPECIAL MASTER GARRIE:  Only third parties?

21    No internal Facebook interviews were conducted?

22         Because you don't distinguish, so I always

23    just assumed it may include both, but you're saying it

24    doesn't.

25         MR. SOUTHWELL:  If we're referring to the

                                              Page 117

1    enforcement phase of the efforts, then --

2              SPECIAL MASTER GARRIE:  No, no, no.  I'm

3    referring to this content.

4              She says -- where is the highlighted -- your

5    motion in her order -- in her order on page 1, I know

6    she summarizes it and I think she does it here, too.

7              Audit -- on page 1 of the order, on line 24 to

8    26.  I don't want there to be any ambiguity here.

9              "While Facebook has agreed to produce some

10   data, it resists disclosure of reports," which is saying

11   there's ████ reports, audits we haven't talked about,

12   "and interviews created or conducted by non-attorneys on

13   the grounds that such documents are protected by" --

14             My question to you is:  Is interviews that

15   Judge Corely's referencing here only to third parties?

16             MS. STEIN:  Is your question whether --

17   whether there were interviews conducted of Facebook

18   employees as opposed to developers?

19             SPECIAL MASTER GARRIE:  Yeah.  Or anybody else

20   that's not, like, developers, privacy people.  Facebook

21   employees.

22             MR. SOUTHWELL:  I'm understanding it to be the

23   third-party interviews, which just to be clear, these

24   were not like depositions with a court reporter or

25   anything like that.  So it's not like there's an

1    interview transcript.

2              SPECIAL MASTER GARRIE:  It's whatever you did

3    in connection with ADI, whether you interviewed

4    employees, whether you interviewed only third parties.

5              All I'm saying is, is the ADI investigation

6    include -- when she says "interviews," does that only

7    include third -- in the ADI investigation, did you

8    interview Facebook employees?

9              MR. SOUTHWELL:  We certainly talked to lots of

10   Facebook employees.  Yes.

11             SPECIAL MASTER GARRIE:  Okay.  And did you

12   make -- but the only people that were interviewing, were

13   they lawyers, or were there any non-attorneys

14   interviewing Facebook employees?

15             MR. SOUTHWELL:  No.  There were only lawyers.

16             SPECIAL MASTER GARRIE:  That's what I thought.

17   I just -- I mean, I just -- I don't want there to be --

18   Counsel Snyder, you're muted.

19             MR. SNYDER:  Let me be very clear because this

20   is an important part of our investigation protocol.

21             To the extent Facebook employees were queried,

22   interview is the wrong word.  It's having a conversation

23   with your client.

24             MR. SOUTHWELL:  Right.

25             MR. SNYDER:  It wasn't like Alex or the team

Veritext Legal Solutions
866 299-5127

```
 1    sat down and said, "Tell us what you did with this app."
 2              If there was a question about something, there
 3    would be ongoing attorney-client communications about
 4    it.
 5              And ████ and ████ were not the point of
 6    contact to have those kinds of substantive conversations
 7    with the client.  Alex or one of the many lawyers on his
 8    team were the ones who did that.
 9              SPECIAL MASTER GARRIE:  I mean, I --
10              MR. SNYDER:  There was a team of associates
11    and partners.  And when there was -- when there was a
12    need to talk to a client, we the lawyers did that.
13              SPECIAL MASTER GARRIE:  Okay.  So how many
14    interviews are we talking about, whether -- so --
15              MR. SNYDER:  The word "interview" is
16    respectfully the wrong word.
17              Alex -- I mean, it would be if someone had a
18    question about something, they would call them up and
19    they would get information from the client to inform
20    Alex and his team's judgment about whether to enhance an
21    examination, whether to make an enforcement, you know, a
22    decision.  But that's core attorney-client privileged
23    communication.  They're not interviews.
24              SPECIAL MASTER GARRIE:  Let's be clear,
25    Counsel Snyder, I'm not saying it's not core
```

 1   attorney-client privilege.  I'm just trying to --
 2   Judge Corely says this concept of interviews and audits.
 3           I get reports.  And I just want to understand
 4   for purposes of my order, what are interviews?  Because
 5   what I don't want to do is make more privileged
 6   discussion that isn't necessary.
 7           MR. SNYDER:  We didn't conduct interviews of
 8   client -- of our clients.  We had ongoing discussions
 9   with our clients.
10           Alex, am I correct?
11           MR. SOUTHWELL:  Yeah.  I think what she's
12   referring to is the interviews with the developers as
13   part of the enforcement phase of the investigation.
14           MR. SNYDER:  Yeah.  We were only investigating
15   third-party developers that we needed to have
16   discussions with our clients to inform our analysis of
17   the app developers, we did.  But that was, like,
18   conversations we were having with our in-house
19   attorneys.  They were iterative --
20           SPECIAL MASTER GARRIE:  I agree with you.  I
21   just wanted to make sure there's no ambiguity here
22   because I don't want to revisit the issue.
23           MR. SNYDER:  Okay.  Thank you.
24           SPECIAL MASTER GARRIE:  And then with audits,
25   what -- can you -- how many audits -- or what -- what is

Veritext Legal Solutions
866 299-5127

```
 1    an audit?  Because the six apps that we -- exemplars we
 2    got that were provided to the -- to me as Special Master
 3    in the briefing and that were produced pursuant to
 4    Corely's order, I didn't see any audits.
 5              MR. SOUTHWELL:  That's right.  There were no
 6    audits related to those six apps.  ███████████████████
 7    ███████████████████████████████████████████  They
 8    generally entailed --
 9              SPECIAL MASTER GARRIE:  How many?
10              MR. SOUTHWELL: █████████████████████████████
11    ████████████████████████████████████████████████████
12    ████████████████████████████████████████████████████
13              SPECIAL MASTER GARRIE:  ██████████████
14              MR. SOUTHWELL:  ██████████    ███████
15              SPECIAL MASTER GARRIE:  I know.  But I'm just
16    rounding up.
17              ███████████████
18              MR. SOUTHWELL:  █████   ████████████   ████████████
19    ██████████████████
20              SPECIAL MASTER GARRIE:  ███████████████
21              MR. SOUTHWELL:  Yeah.  ████████████████    And
22    they generally entailed either ████████████████████████
23    ████████████████████████████████████████████████████
24    ████████████████████████████████████
25              They took all various shapes and sizes.  They
```

Page 122

```
 1    were all different.
 2              SPECIAL MASTER GARRIE:  Is an audit a formal
 3    document, I guess is what I need to -- when we say the
 4    concept of audit, how are we differentiating between
 5    audit -- everything that's not a report is an audit?
 6    I'm trying to understand.  Because you have
 7    communications, you have audits, you have interviews,
 8    and you have reports.
 9              MR. SNYDER:  An audit is -- is a -- an
10    interview is, "Hey, we want to ask you some questions."
11              An audit is, "We'd like to see this kind of
12    information."  And each one needs to be spoke.  There's
13    no --
14              Alex; correct?
15              I think this is right.  There's no template
16    audit.  And an audit is a very broad term to refer to
17    we want to look into certain things.
18              An RFI is a broad term to say we want this
19    information.
20              Alex, what's the difference between an audit
21    and an RFI?
22              MR. SOUTHWELL:  So an RFI is we are collecting
23    information from the developer.  ███████████
24    ████████████████████████████████████████████████████
      can't understand from your app's purpose how that
```

Page 123

1

2

3

4

5

6             An audit, as an example, would be they -- a

7    developer confirms that perhaps at some early stage they

8    had information, they pulled some information by

9    mistake, and they didn't need it, and we wanted to

10   confirm that they had deleted it.

11

12

13

14

15

16

17

18          MR. SNYDER:

19

20

21

22

23          MR. SOUTHWELL:

24

25

                                            Page 124

1              MR. KO:  So, Special master Garrie, can I

2    chime in on something that was very relevant to us and

3    why I think Judge Corely talked about audits and

4    interviews in particular?

5              And if you would -- I'm happy to share my

6    screen.  But I'm reading from Mr. Southwell's

7    declaration about ADI where he describes audits and

8    interviews in connection with the ADI process.

9              SPECIAL MASTER GARRIE:  You can share your

10   screen.  I read it, and I have my printed version.  But

11   you can share your screen.

12             MR. KO:  So you see here, this is

13   Southwell's -- Mr. Southwell's words, obviously not

14   ours, but he says in the enforcement phase, "If we

15   determine that information request response is

16   inadequate, we may have attempted various additional

17   methods of engagement with the developer, including

18   conducting interviews or requesting audits of data

19   security or storage infrastructure."

20             It sounds like you have seen that.  But that

21   is -- I mean, we're not making up the fact that they

22   conducted interviews or, you know --

23             SPECIAL MASTER GARRIE:  No, no, no.  I know.

24   I just want -- I just didn't want there to -- I read it

25   and I fully understood it.  Just for purposes of -- I

Veritext Legal Solutions
866 299-5127

```
 1   didn't want there to be any confusion that -- because
 2   there's been a lot of discussion about the internal
 3   communications at Facebook.  I want to just draw a
 4   distinction about interview communications, that they
 5   only included interviews that Counsel Southwell
 6   specifies in his declaration as it relates to ADI.
 7           Separate and apart, counsel made other
 8   inquiries.  That was the purpose of my line of
 9   questioning.
10           MR. KO:  Yeah.  And I guess I was responding
11   to Mr. Snyder's comment about how they don't do
12   interviews.
13           SPECIAL MASTER GARRIE:  He did interviews of
14   third parties and Counsel Southwell did acknowledge that
15   they did interviews of third parties.
16           My question is if they interviewed Facebook
17   employees in connection with the construct of interviews
18   in the ADI investigation because of the request
19   regarding internal communications from plaintiffs
20   previously?
21           MR. SOUTHWELL:  Yeah.  The reference in my
22   declaration there was interviews with third-party
23   developers, ███████████████████████████
24           SPECIAL MASTER GARRIE:  Noted.
25           Okay.  So we're looking at ███████ audits.
```

Page 126

```
 1    And then each audit has tied to an app.  So there's
 2    ██████ reports, ████████ audits, and ████████████
 3    ████████████████████ interviews that weren't conducted
 4    by attorneys ████████.
 5              Is that accurate, Counsel Southwell?
 6              MR. SOUTHWELL:  Yeah.  I think I'd like to
 7    just double-check the numbers roughly but I think that
 8    sounds accurate.
 9              Yes.  I mean, in terms of interviews conducted
10    by non-attorneys, ████████████████████.  In terms
11    of audits, I think it's ██████████████████████████.
12              MR. SNYDER:  And in terms of reports, ████████
13    ████.
14              MR. SOUTHWELL:  Right.
15              SPECIAL MASTER GARRIE:  One other question I
16    had of Counsel Kutscher Clark, can you bring up page 6?
17              MS. KUTSCHER CLARK:  Page 6 of Judge Corely's
18    order?
19              SPECIAL MASTER GARRIE:  Order.  Yeah.
20              MS. KUTSCHER CLARK:  Okay.
21              SPECIAL MASTER GARRIE:  And then I'll let
22    Counsel Snyder, if you have any final questions or
23    remarks, and then counsel for plaintiffs.
24              On page 6, looking at lines 9 to 15 -- more
25    like 9 to 11, yeah, right there.  "Facebook suggestion
```

Veritext Legal Solutions
866 299-5127

```
 1    that these materials may also be protected by the
 2    attorney-client privilege is unpersuasive."
 3            Now, she didn't -- when she says this, she
 4    didn't actually have any of the ADI reports and makes
 5    this ruling.  I just want to make sure I understood.
 6            MS. KUTSCHER CLARK:  Correct.
 7            MR. SNYDER:  Yeah.  That's right.
 8            SPECIAL MASTER GARRIE:  "Plaintiffs are not
 9    seeking documents created by counsel, counsel's edits,
10    or any communications with counsel."
11            MR. SNYDER:  Right.  And then she -- then she
12    goes on to talk about non-attorneys interviews,
13    non-attorneys audits.  And I think that's the dividing
14    line.  And even there she acknowledges it could be
15    attorney work product, although I think in most cases it
16    won't be.
17            SPECIAL MASTER GARRIE:  It says "Facebook has
18    not explained how an non-attorney's interview or audit
19    of a developer would be protected from discovery by the
20    attorney-client privilege under federal law.  At best,
21    such material would be attorney work product.  For the
22    reasons explained above, it's not under" -- "it is not
23    under the totality of the circumstances here given
24    Facebook's business"...
25            Okay.  All right.  So then -- and that's what
```

1   your -- where your -- the argument you made,

2   Counsel Snyder, or part of that argument was looking at

3   that; right?

4           MR. SNYDER:  That, and informed by the judge's

5   comments in the hearing where she said that "A lot of it

6   I don't think is relevant at all," and then she said,

7   "Some of the materials are," quote, "privileged."  And

8   then again she said that "The facts underlying ADI may

9   be privileged," and then she said, quote,

10  "attorney-client privilege or attorney client's work

11  product," you know, "including edits from attorneys and

12  advice."

13          So what the judge is saying is because the

14  plaintiffs said "We're not looking for attorneys'

15  communications," that gave the judge the ability to make

16  the ruling that she did, which is non-attorney reports,

17  non-attorney audits, and non-attorney interviews.  And

18  so that's the framework that she -- she's created.

19          And just frankly, I don't think --

20          Alex, correct me if I'm wrong.

21          -- that many, if any, of the materials will be

22  work product.  I mean, some might, to the extent that ██

23  ████████████████████████████████████████████████

24  ████████████████  and there may be some, you know, that are

25  work product but --

Page 129

 1              SPECIAL MASTER GARRIE:  But the reports
 2    themselves would still be responsive?
 3              MR. SNYDER:  Responsive, but -- you know, but
 4    to the extent there's, you know, planning for
 5    litigation, there might be a work product privilege
 6    there, but...
 7              SPECIAL MASTER GARRIE:  You only used five or
 8    six out of the --
 9              MR. SNYDER:  Yeah.  That's fine.  Exactly.
10              MS. STEIN:  Right.
11              And just to be clear, I mean, obviously our
12    view litigated to Judge Corely is that these materials
13    were categorically work product.
14              What Mr. Snyder is referring to is when we do
15    our individual review, we're looking for individual
16    concerns about privilege or work product in the
17    document-by-document basis, not sort of the more global
18    work product issue from these materials being prepared
19    at the direction of counsel.
20              MR. SNYDER:  Right.
21              That's been resolved by Judge Corely and under
22    compulsion, you know, we're going to produce, you know,
23    whatever is the ultimate order on this non-attorney
24    report audit interview rubric.
25              SPECIAL MASTER GARRIE:  All right.

```
 1    Counsel Snyder, actually, I have a question -- two other
 2    questions.
 3           In plaintiffs' brief, you reference these 99
 4    documents that were on the privilege log that are being
 5    withheld for privilege.
 6           And then I -- you've provided me the
 7    spreadsheets --
 8           MR. SNYDER:  Yes.
 9           SPECIAL MASTER GARRIE:  -- five spreadsheets.
10           Counsel for plaintiffs, do you know -- I think
11    you uploaded them; correct?
12           MR. KO:  Yeah.  That's correct.  Six.
13           SPECIAL MASTER GARRIE:  Six.  Sorry.
14           MR. KO:  Spreadsheets.
15           SPECIAL MASTER GARRIE:  I only looked at the
16    five I got, only five of the six that I looked at.
17           Can you bring up one of the spreadsheets?  Any
18    one of them would be fine.  And just explain to me
19    your -- the issue and the argument a little further?
20           MR. KO:  Sure.  I'm happy to.
21           I don't know -- I think you were intending to
22    address that question to plaintiffs and not Orin but I
23    could be --
24           SPECIAL MASTER GARRIE:  Yeah, to plaintiffs.
25    Sorry.  It's to plaintiffs.  You're the ones who
```

Veritext Legal Solutions
866 299-5127

1    discussed it.

2              MR. KO:  Right.

3              Let me bring up the privilege log.

4              The simple point was this:  Because

5    Judge Corely had indicated that all reports needed to be

6    produced, and they had said -- and they -- Facebook had

7    produced six reports, we weren't -- this is a very

8    simple issue.  We weren't sure if they complied with the

9    order or whether or not more reports needed to be

10   produced.  Because based on a review of the privilege

11   log, there were references to additional reports.

12             SPECIAL MASTER GARRIE:  Can you bring up --

13   can you -- yeah.  So I looked at the privilege log.  Can

14   you bring that up?  Because I just want to understand --

15   so you highlight them in yellow, which by the way, thank

16   you, when sorting by Excel makes it a lot faster.

17             MR. KO:  Right.

18             SPECIAL MASTER GARRIE:  So you want to walk

19   through one of them, just so I understand?

20             MR. KO:  Sure.

21             So here's entry row 560 in which the

22   description is given that there is a report conveying

23   legal advice and that it relates to findings with

24   counsel and an investigation was conducted in

25   anticipation of and in response to litigation and

1    regulatory inquiries in order to address legal and

2    compliance risk.

3              I mean, that's a pretty general boilerplate

4    description.  But there's a report there.  So the simple

5    point is that if the order was compelling all background

6    and technical reports, as described in Mr. Southwell's

7    declaration, we are not sure and what we cannot tell

8    based on these privilege logs that Facebook created and

9    provided whether or not we got all the reports.  Because

10   there's a difference between the six background reports

11   that we got and other reports that are described in the

12   privilege log --

13             MR. SNYDER:  I can address that.

14             MR. KO:  -- of which there were 99 that we

15   counted.

16             MR. SNYDER:  That's really -- that's an easy

17   one.

18             So the order directed us to produce background

19   technical reports prepared by non-attorneys to the

20   extent that Alex Southwell wrote a report.  So, quote,

21   unquote, that's really a -- that's just another word for

22   an attorney-client privileged legal communication that

23   was sent by Alex or between -- to the client.

24             It's not a report in the sense of the order,

25   which is background and technical reports prepared by

Veritext Legal Solutions
866 299-5127

1    non-attorneys.  This entry says that it falls outside

2    the order because it says that it was prepared by

3    Gibson Dunn.

4              And then relatedly, you know, plaintiffs

5    challenge now all entries on privilege logs that don't

6    include the name of an attorney, 400 of more than 6,000

7    entries.

8              You know, Judge Corely allowed the plaintiffs

9    to choose 20 privilege log entries for a review.

10             They submitted -- we submitted simultaneous

11   briefing.  And she did an in-camera review of the log

12   documents, and -- you know, and didn't order us to

13   produce a single one.

14             So I think that -- I think that there's --

15   there should be no concern that we have not complied

16   with the order.

17             And to the extent we called reports

18   Gibson Dunn documents or communications to the client,

19   we obviously didn't produce those.

20             But that's, you know, core attorney-client

21   communications, not the underlying facts, which is what

22   plaintiffs have said they wanted, but the legal advice

23   given by Gibson Dunn to the client.

24             MR. KO:  Well, what's interesting about that,

25   Special Master Garrie, is that, again, the description

                                          Page 134

```
 1   is fairly boilerplate, as you've seen.
 2            We can't even tell -- like, with respect to
 3   these six apps -- or six memoranda, which they construed
 4   clearly as either a background or technical report,
 5   because obviously Judge Corely -- since she didn't see
 6   the memoranda, she didn't say that they had to produce
 7   that specific memoranda.
 8            What she did is she said, "Please produce the
 9   background and technical reports as described in
10   Mr. Southwell's declaration."
11            We're not even sure whether or not these six
12   memoranda were actually logged on their 6,000 whatever,
13   and their six -- you know, six exemplar apps.  Because
14   it's not like they said in their description that this
15   is an ████ there's an ███ memo or a █████ memo
16   summarizing all the findings based on the audits and the
17   interviews that they conducted in the written memoranda
18   internally and the interviews that were done; right?
19            They just have general references to reports.
20            So we don't know -- it's just a simple -- it's
21   a simple ask to them.  Mr. Southwell says, "We've
22   created all these background and technical reports.  We
23   created all these other written memoranda."
24            And then you compare that and contrast that
25   with their privilege logs, which simply state here's a
```

Page 135

1    report and then the, you know, general boilerplate

2    language contains legal advice is protected, blah, blah,

3    blah.

4            But clearly, we -- there's no articulate --

5    there's no clear basis or clear identification of these

6    six memoranda.

7            So it does raise an interesting point that

8    Orin is suggesting that everything was on there and this

9    is -- there's some sort of difference between the two.

10           I can't really tell based on the descriptions.

11           MR. LOESER:  It seemed like a simple ask and

12   simple answer.  Are these reports that were produced on

13   the log?

14           MR. SNYDER:  I'm not sure what counsel is

15   asking.

16           These are privilege logs from the sampling

17   exercise, not to the -- it is nothing generic about a

18   description that says legal advice from Gibson Dunn --

19   that's legal advice from Gibson Dunn.

20           Those were not produced and are not within the

21   order.

22           Why doesn't -- Martie, why don't you amplify

23   and answer that question.

24           MS. KUTSCHER CLARK:  Yeah.

25           I -- so these privilege logs were about

1    something completely different.  And the way they were
2    prepared was very different than what we're now talking
3    about.
4            The parties had agreed to these six exemplar
5    apps.  We agreed to a set of 26 custodians.  We then
6    collected from those 26 custodians any document hitting
7    on the name of the app, the app ID that related in any
8    way to ADI.  We logged all of those communications and
9    any attachments to those communications.
10           So, yes, there were some documents attached to
11   those communications that got labeled on a privilege log
12   as a report, but that's something very different than
13   these background and technical reports that were
14   prepared by the consulting experts at █████ and ██████.
15           And that's what Mr. Southwell was referring to
16   in his declaration to Judge Corely.  Because after we
17   had done this whole logging exercise, plaintiffs said
18   that's what they were seeking.  They said they wanted
19   the reports prepared by the outside experts.  And
20   Mr. Southwell submitted a declaration about those
21   reports.
22           But that's -- it's just a completely different
23   thing than what we were logging at the time.
24           MS. STEIN:  Yes.  And I think that Mr. Ko had
25   put language on the screen earlier that said that

1    Judge Corely recognized that the background and

2    technical reports were not part of the logging exercise.

3              MR. LOESER:  Well, we didn't have any ability

4    to identify from the -- we wouldn't know.

5              But I guess the question I have -- yeah.  The

6    question for you, Special Master Garrie, and a question

7    for Facebook is are the reports logged?  I mean, are

8    they logged or not?

9              SPECIAL MASTER GARRIE:  Well, one second.

10             You will -- good news -- get a log of all the

11   reports in some fashion or another.

12             So when they say -- when you say logged, they

13   haven't produced them yet; right?  So I don't know where

14   they would be logged.  Maybe I'm not understanding.

15             Have these reports -- these reports haven't

16   been produced.  Is that --

17             MR. LOESER:  They have a privilege log.  This

18   is kind of the point, there's this privilege log --

19             SPECIAL MASTER GARRIE:  Okay.  Wait.  So now

20   we're going to the privilege --

21             MR. LOESER:  Well, it's -- well, maybe we

22   don't need to go there.  It's just that this is sort of

23   part of the confusion from what Orin just said, which

24   is, you know, there were these 99 -- in the logs we sent

25   you, there are 99 that relate to reports.  And we have

Veritext Legal Solutions
866 299-5127

1    no idea if that includes any of these ███████ or ███████

2    memos.

3              Maybe Facebook can just tell us.  It seems

4    like an easy question.

5              MS. STEIN:  Well, as Mr. Garrie -- as

6    Special Master Garrie orders us to produce additional

7    background and technical reports, we're going to do

8    that.  We produced the ones for the six exemplar apps.

9              I'm really not sure what the issue is.  We'll

10   comply with whatever.

11             MR. LOESER:  The issue is we heard a lot of

12   argument --

13             SPECIAL MASTER GARRIE:  Counsel, one second.

14             I just need to think about everything that was

15   just said, and then I will determine who's going to

16   talk.  Just give me 30 seconds to think about it all.

17             Okay.  I have a question, and then I'll let --

18             Martie, you can respond -- or Counsel Stein.

19   Sorry.

20             On the privilege -- my question I guess for --

21   the privilege logs that you're referring to, plaintiffs,

22   who -- where do they -- what is their origin?  It's

23   related to the six exemplar app exercise; right?

24             MR. KO:  Correct.

25             So their origin is when we were trying to

1    litigate this issue in the summer of 2020 and we wanted

2    an order from Judge Corely saying that, "No.  Facebook

3    is not entitled to a categorical privilege," she said,

4    "I need some context.  I need to rule based on some --

5    either some documents or a privilege log based on those

6    documents."

7             Therefore, setting in motion this

8    identification of six apps, 25 custodians, as Martie

9    correctly identified, and a production in December of

10   last year of these six exemplar privilege logs.

11            The point that we are trying to make is --

12            SPECIAL MASTER GARRIE:  I get it.  I get it.

13   Let me ask my next question.

14            So then when there's a report being referenced

15   in this privilege log, it's not -- when it says the

16   Gibson Dunn report -- or what is the exact words?  If

17   you bring it up, I can read it to you but...

18            Actually, I have it up on my screen.  Give me

19   a second.

20            Where it says ███████████████████████

21   ██████████████████████████████████████████

22   ██████████████████████████████████████

23   ███████████  blah, blah, blah, your question that you're

24   asking is does this include -- are they referring to the

25   ████████  reports when they say "report"?

Page 140

1              Is that your question, plaintiffs?

2              MR. KO:  It's a little broader than that

3     because are these reports -- what are these reports and

4     do they include the ███ and ███reports?

5              SPECIAL MASTER GARRIE:  Well, that's two parts

6     of the question.

7              So your first question is what are these

8     reports?

9              And I believe Counsel Snyder said there are

10    reports that Gibson Dunn wrote in connection with

11    providing legal process.

12             Your second question is are these -- are

13    these -- do these, when you cite these reports, also

14    reference ███ and ███reports?

15             Is that right then?

16             MR. KO:  Correct.

17             Do they include the background and technical

18    reports, including the ███ and ███ memoranda that were

19    produced and ordered by Judge Corely?

20             MR. SNYDER:  You know, we probably shouldn't

21    call them reports.  I mean, they're attorney-client

22    communications, giving legal advice to the client about

23    what action, if any, to take with respect to an app.

24             So call them reports, call them legal

25    communications.  You know, the fact that they're called

                                            Page 141

1    reports shouldn't be overinterpreted --

2            SPECIAL MASTER GARRIE:  Let me -- I think

3    that's the source of confusion.

4            MR. SNYDER:  Yeah.

5            I -- you know, we should have written -- and

6    I'm sure -- we don't really write reports to clients as

7    a law firm.  We write e-mails and sometimes memos.  I

8    never heard, you know, of a report necessarily.  Maybe

9    you make a report to a board sometimes.

10           But, Alex, correct me if I'm wrong, that's a

11   very loose word to describe what might be an e-mail or

12   an oral communication to a client about, "Hey, what are

13   we going to do with this app?"

14           Is that correct?

15           MR. SOUTHWELL:  Yeah.  That's right.  I mean,

16   I'd have to go back and look at what these are.

17           I mean, also, I think timingwise, didn't this

18   log come before the background and technical reports

19   were produced?

20           MS. KUTSCHER CLARK:  Yes.  Yes.

21           MR. SOUTHWELL:  Yeah.

22           I mean, look, there were one -- there is

23   essentially one technical background investigation

24   report for this app ████, and it was produced.

25   Plaintiffs have it.  So whether it was previously on a

                                            Page 142

1   log, I don't know.  But they have -- they have that

2   report.

3         MS. WEAVER:  So when it says ████████████

4   ██████████████████████████████ in line 269 there, what

5   is that?  That does sound like a formal report system

6   that does not say privilege.

7         MR. SOUTHWELL:  I have no idea what that means

8   sitting here today.

9         MS. WEAVER:  So that doesn't look just like an

10  e-mail and it doesn't sound privileged because it would

11  otherwise have said "attorney-client communication."

12        MR. SOUTHWELL:  This is --

13        SPECIAL MASTER GARRIE:  Wait, wait, wait.

14        MR. SOUTHWELL:  -- a document part of a

15  family.  It's part of a family.  So you have to see the

16  whole family.

17        MS. STEIN:  I mean, this seems like a huge

18  frolic and detour given plaintiffs repeatedly saying

19  that they weren't seeking Gibson Dunn's advice to

20  clients.  This is all supposed to be about

21  non-Gibson Dunn advice and work product.  So, you know,

22  this seems like a --

23        MS. KUTSCHER CLARK:  Yeah.

24        And the context here is really important.  I

25  mean, again, the way these logs were prepared was we

Veritext Legal Solutions
866 299-5127

1    gathered virtually any e-mail from 26 custodians that

2    hit on an app's name, and then we logged all of those

3    e-mails and any attachments to them.

4            So, sure, we logged things that were described

5    as reports.  Maybe in some instances report wasn't the

6    most apt term that should have been used.  Sitting here,

7    I don't know every single one of them is.

8            But, you know, these were random attachments

9    in a lot of these instances to privileged e-mails, and

10   they're a very different thing than the reports we're

11   talking about at this point and that we wound up

12   producing a year later.

13           We would need to look at every single one of

14   them to know exactly what every single one of them was,

15   but they're not what we're talking about at this point.

16           SPECIAL MASTER GARRIE:  May I be so bold to

17   suggest that we avoid using the word "report" in a

18   privilege log on a going-forward basis and use if it's

19   a memo to file, if it's an e-mail, if it's whatever.

20   Because the word report, interview, and audit all have

21   very distinct meanings at this point of the litigation

22   that mean different things and --

23           But with that said, Counsel Loeser, what were

24   you going to say?

25           MR. LOESER:  Yeah.  I think just one point on

                                              Page 144

1   this and then maybe can steer ourselves back to the

2   September 8th order, which is really I think what should

3   be guiding us here.

4          And that is this log is created at a time when

5   Facebook was asserting a work product and

6   attorney-client privilege, which Judge Corely has

7   rejected.

8          And so just a final, you know, parting thought

9   on this log, it needs to be updated to reflect the

10  Court's order and the guidance provided.

11         So if there are things on their log that they

12  previously asserted were privileged or subject to work

13  product at a time before there was a ruling on that, now

14  there's a ruling, so, you know, Facebook needs to go

15  back and look, and if they need to update their log to

16  reflect that ruling, then they should.

17         And while they're doing that, maybe they want

18  to take out the word "report."

19         MS. STEIN:  Can I respond to that,

20  Special Master Garrie?

21         SPECIAL MASTER GARRIE:  One response, and then

22  we're going to return back to what we're here to cover.

23         MS. STEIN:  Yeah.

24         The response is that Judge Corely adjudicated

25  that privilege log and didn't order us to produce

Page 145

1  anything from the privilege log.  So from our
2  perspective, what's on the privilege log stays in the
3  privilege log.  And that's all I'll say.
4          SPECIAL MASTER GARRIE:  If you're going to
5  produce -- time out, Counsel.  Sorry, Counsel.  Just one
6  second.
7          If you produce a document that you previously
8  designated as privilege and you keep it on your
9  privilege log, are you going to update your privilege
10  log to reflect the fact that you produced the document?
11          MS. STEIN:  Whatever -- we will --
12  Special Master Garrie, we will follow -- we have a very
13  elaborate privilege log protocol, and I will certainly
14  not profess to know the ins and outs of that but, you
15  know, we will --
16          SPECIAL MASTER GARRIE:  I mean, in your
17  privilege log protocol, there's this whole process that
18  you have mapped out to address this very situation.
19          MS. STEIN:  Correct.  So we will --
20          SPECIAL MASTER GARRIE:  In actually
21  excruciating detail.
22          MS. STEIN:  Excruciating detail.
23          SPECIAL MASTER GARRIE:  So I think
24  Counsel Loeser's point was that just to make sure --
25  reminding everybody, because he's doing his job as a

                                        Page 146

```
 1    team player, that the privilege protocol exists and it's
 2    necessary all parties continue to follow what they
 3    committed to early on.
 4              With that said, we're going to revert back.
 5              I would highly encourage the parties to do
 6    their best to resolve all privilege disputes in whatever
 7    way humanly possible.
 8              With that said, I will -- I will issue an
 9    order accordingly, but before I do, I think --
10              Who's sharing, just so I'm on the --
11              MR. LOESER:  We're sharing the order,
12    Your Honor, because we're hoping to have a minute to
13    just go back to it when you're done with your comments.
14              SPECIAL MASTER GARRIE:  No, no.  I was just --
15    perfect.
16              But Counsel Snyder is going to --
17              Do you have any comments?  If you wouldn't
18    mind stop sharing and then you're welcome to your
19    closing comments, and then I will issue -- I will take
20    the hearing, look at the transcript, and then issue --
21              MR. SNYDER:  You're asking me to go first?
22              SPECIAL MASTER GARRIE:  Yes, sir.
23              MR. SNYDER:  Okay.
24              SPECIAL MASTER GARRIE:  Unless you want to go
25    last because --
```

Veritext Legal Solutions
866 299-5127

1          MR. SNYDER:  No.  I have -- I have another

2     call because I thought we were ending at 3:00 so I

3     apologize.  I have a board meeting at -- in five

4     minutes.

5          So, look, I think I've said everything that

6     needs to be said.  I think the plaintiffs have made

7     clear they want the underlying facts.

8          We think the order is clear that what that

9     means is non-attorney audits, reports, and interviews.

10    And if you order us to produce some or all of those,

11    they're going to have their underlying facts.

12         We clearly think that the judge has excluded

13    from her order the millions and millions and millions of

14    pages of so-called underlying communications; that that

15    would be not only overkill but, like, trying to kill an

16    ant with a -- with a -- you know, an elephant.

17         I think that some kind of -- we don't think

18    all the reports necessarily should be ordered.  If

19    you're inclined to have us produce reports, we think a

20    smaller number, but at a bare minimum, a rolling

21    production, you know, where we are able to produce in

22    iterative fashion.  Because there's going to need to be

23    I privilege log, and hopefully the privilege log will be

24    not as onerous because there's not a lot of privileged

25    material in there.  But until we dig into the reports,

Page 148

1   we're not going to know that.

2           So, you know, if we're going to be ordered to

3   produce more materials, you know, we would first say

4   all the reports aren't necessary, but if you think all

5   the reports are necessary, we should maybe produce ███

6   in the first instance.  Plaintiffs can look at them and

7   see whether, you know, there's anything in there that

8   leads them to believe that producing every single one

9   is -- is necessary.  And we can -- we can reconvene at

10  that point.  Maybe we can give you 10 -- a sample of 10

11  of them randomly, and you can look at them.  I think you

12  you'll see pretty quickly that, again, this is a dry

13  well and doesn't justify, you know, extending discovery

14  deadlines or imposing the burden and cost of reviewing

15  every single one of them.

16          So Martie, Deb, anything else that you want to

17  add to that?

18          MS. STEIN:  No.  Not from me.

19          MS. KUTSCHER CLARK:  No.  Thanks.

20          SPECIAL MASTER GARRIE:  Counsel for

21  plaintiffs, whenever you're ready.

22          MR. LOESER:  Thank you, Special Master Garrie,

23  and thank you again for devoting your Saturday to this

24  joyful topic.

25          We're going to screen the order.

                                        Page 149

1           I do want to again just reiterate -- and I

2    know you're thorough in reading all of the records, and

3    I really encourage you to read the transcripts and the

4    discussion of the logging exercise.

5           It's a fiction to suggest that the logging

6    exercise resulted in Judge Corely ruling based on the

7    logs that internal communications are not available.

8           The logging exercise was ultimately not

9    helpful because the communications covered by the logs

10   were not substantive.

11          And so the judge moved on to another approach

12   to dealing with this issue, which was the briefing

13   resulting in the September 8th order.

14          I think that -- that would be really

15   abundantly clear to you if you look at the transcripts

16   and just follow through how that conversation went.

17          But if you look at the order itself at page 2,

18   there are two issues -- two legal arguments addressed by

19   the order.

20          The first is work product.  And so if you go

21   to page 2 of the last paragraph before "Analysis," what

22   she writes is "Plaintiffs seek material from the second

23   and third phases that does not involve communications

24   with lawyers or content created by lawyers.  While

25   Facebook has agreed to produce some information, it

Page 150

1    refuses on privilege grounds to produce the reports,

2    audits, and interviews, and non-attorney communications

3    related to the same."

4              So that's what was before the Court.

5              And on the work product issue, if you go to

6    the following page -- or I'm sorry.  If you go to

7    page 5, at the bottom of the page, she concludes her

8    discussion of work product.  And here's what she says,

9    at the bottom of the page:

10             "It is inconceivable that Facebook would not

11   have initiated a speedy, large scale subject matter

12   specialist investigation into app data misuse in the

13   absence of potential litigation.  Such assertion could

14   only be true if the Court found that Facebook was lying

15   to the public when it stated that the purpose of the ADI

16   was to root out bad apps and secure Facebook's platform

17   so that consumers could have faith in the company.

18             "Facebook unsurprisingly does not offer any

19   evidence to support such a finding."

20             That's the conclusion of the work product

21   discussion which concerned those communications that we

22   identified up above.

23             They include internal communications.

24             Then the next argument Facebook made was an

25   attorney-client privilege argument.  And she addressed

                                          Page 151

1    that with regard to the particular documents that were

2    relevant to that discussion and to Facebook's argument.

3    And she concludes that the attorney-client privilege

4    doesn't apply to the -- to the non-attorney interview or

5    audit of developer and that information.

6            That is the conclusion of the attorney-client

7    issue.  It resolves the question of the documents for

8    which Facebook was asserting attorney-client.

9            Facebook was not asserting an attorney-client

10   privilege to internal nonlawyer communications.  There

11   was never -- there's not even any conceivable or

12   credible basis for that.

13           And so then when you get to the end, you have

14   these two rulings:  One on work product, one on

15   privilege.  And she orders a production of documents.

16   And if you go down to the conclusion, she orders the

17   production of these -- the particular reports that we've

18   spent a lot of time going through, and then has this

19   language about additional materials consistent with the

20   guidance.

21           That guidance covers everything that

22   plaintiffs were seeking, that includes internal

23   communications.

24           There's not a word in this order that says

25   we're not entitled to those communications.

Page 152

1           And it would be bizarre in modern day

2     litigation to infer from the absence of any discussion

3     ruling it out that we're not entitled to this

4     information that Facebook doesn't even argue is

5     privileged because it can't possibly be, and is

6     discussed in the work product discussion and found not

7     to be protected by work product.

8           So when we're done with all of this, you step

9     back and you look at what is Facebook saying?

10          Okay.  They're not really saying, we don't get

11    these memos because they know that we do because they've

12    already produced them.

13          As far as the audit report and background

14    information, you know, we spent enough time on that.

15    It's obviously consistent with her guidance because she

16    describes it, so it's discoverable.

17          And then you get to the internal

18    communications.  And all they're saying about that is

19    they infer from the absence of any discussion that this

20    critical piece of discovery, the only information we

21    would have in which Facebook itself discusses these

22    critical investigative reports is somehow not there by

23    some inference.

24          And, again, I encourage you to read the

25    process that we went through to get to this order, and

1    to look at the discussion in the transcripts.  You will

2    see that that inference that Facebook has created is

3    wrong.  It's not supported by the record.  And it's

4    clearly not supported by the Federal Rules of Evidence.

5              So those are my remarks.  I really appreciate

6    this time and this effort, Your Honor.  I think that

7    clearly the parties have had full opportunity to explore

8    these issues with you now, and if you have any other

9    questions, I'm sure we'll stay here all day to answer

10   them.

11             SPECIAL MASTER GARRIE:  Good news, no more

12   questions.

13             MS. WEAVER:  I'd like to make one more comment

14   as well, just in light of some of the arguments that

15   Mr. Snyder made today.

16             We made this argument in front of

17   Judge Corely.  We haven't made it to you.

18             To the extent that Facebook at any point in

19   time is going to raise as a defense that it thoroughly

20   conducted an investigation and as a shield to a

21   negligence claim, then this entire year's long exercise

22   of assertion of privilege will have been in vain

23   because, of course, they cannot use the investigation

24   as a sword and a shield.

25             And Judge Corely expressly acknowledged that

Veritext Legal Solutions
866 299-5127

1    in the hearing.

2          So we are all here today to figure out how to

3    parse their assertions of privilege.  But they should

4    not be coming back on the merits ever saying that this

5    is a dry well or that they conducted a thorough

6    investigation, et cetera.

7          SPECIAL MASTER GARRIE:  Well, the good news is

8    that -- wait, wait, wait.  Time out.

9          The good news is that's for Judge Corely and

10   Judge Chhabria to figure out and not me, so I will note

11   that for the record.  Far beyond my pay grade.  And I

12   will let them figure -- I will let Judge Corely and

13   Judge Chhabria resolve that issue.

14         I thank everybody for your time.  This was

15   very informative and helpful for me.

16         Does the court reporter need any --

17         We'll go off the record.

18         MR. SNYDER:  I just need to reserve rights on

19   that issue, which I've done.

20         SPECIAL MASTER GARRIE:  Yeah, yeah.  Let's go

21   back -- back on the record.

22         Go ahead, Counsel Snyder.

23         MR. SNYDER:  I'll just reserve all of our

24   rights to Ms. Weaver's comments, and we can agree to

25   disagree.

Page 155

```
 1              SPECIAL MASTER GARRIE:  Sounds great.
 2              As I said before, not before me as
 3    Special Master.  And I'll leave it to Judge Chhabria
 4    and Judge Corely to -- if that becomes -- for them to
 5    deal with.
 6              We will go off the record.
 7              Court Reporter, do we have everything?
 8                (Discussion held off the record.)
 9              SPECIAL MASTER GARRIE:  Well, when you get it
10    to the parties --
11              Could one of the parties just send me a copy
12    of the rough when you guys get it?
13              MS. WEAVER:  Yes.  Absolutely.
14        (Whereupon, proceedings adjourned at 12:10 p.m.)
15                        ---o0o---
16
17
18
19
20
21
22
23
24
25
```

Page 156

```
1    STATE OF CALIFORNIA        )
                                )
2    COUNTY OF YOLO             )
3                         ---oOo---
4           I, Katy E. Schmidt, a Certified Shorthand
5    Reporter, do hereby certify:
6           That said proceedings were taken before me at
7    the time and place therein set forth and were taken down
8    by me in shorthand and thereafter transcribed into
9    typewriting under my direction and supervision;
10          I further certify that I am neither counsel
11   for, nor related to, any party to said proceedings, and
12   am not in any way interested in the outcome thereof.
13          In witness whereof, I have hereunto subscribed
14   my name.
15   Dated: December 8, 2021
16
17
18
19
20
21
22   Katy E. Schmidt
     RPR, RMR, CRR, CSR 13096
23
24
25
                                                 Page 157
```

**[& - account]**

| & | 2 | | 8 |
|---|---|---|---|

**&**   3:9,16

**1**

**1**   8:7 13:7 42:6,22
  46:12 47:15 89:22
  93:6,9 96:14
  117:7 118:5,7
**1.0.**   81:9
■
**10**   45:16 100:5
  112:3 149:10,10
**10166**   3:19
**106,000**   43:11
■
**11**   88:5 127:25
**12**   18:9
**12,000,900**   81:12
**1201**   3:7
**12:10**   156:14
**12th**   3:11
**13096**   1:24 2:25
  157:22
**132**   59:15 60:20,20
**133**   60:20,21
**13302**   89:16
**137**   59:19,20 60:2
  60:4 91:12,15
**140**   59:15
**141**   90:5,9,9,9
**146**   41:16,18 48:6
**15**   61:8 127:24
**1600**   3:11
**17**   61:7,8,8
**17973**   157:21
**181**   75:25 76:4,4
**182**   75:19
**183**   74:13,23
**185**   81:3,4

**2**   8:7 18:6,8 23:24
  46:13 47:15 48:1
  89:22 92:23,25
  93:9 96:14 110:8
  110:13 150:17,21
**20**   51:19 52:6,8,12
  52:20 57:13 59:4
  90:20 134:9
**200**   3:18
**2011**   78:12
**2012**   85:14 97:11
**2019**   11:20
**2020**   51:11,13,22
  51:23 55:24 140:1
**2021**   1:14 2:24 4:2
  157:15
**212.351.4000**   3:19
**213,000**   42:9,24
**223**   84:20
**24**   117:7 118:7
**25**   140:8
**26**   117:7 118:8
  137:5,6 144:1
**269**   143:4

**3**

**3**   47:13 88:24,24
  89:22 92:23,25
  93:9 110:19 114:7
  114:11,11
**30**   36:15 70:7
  105:15 139:16
**300**   111:23
**3200**   3:7
**3:00**   148:2

**4**

**4**   1:14 2:24 4:2
  94:17,17
**400**   78:22 85:14
  134:6

**415.445.4003**   3:12
**47th**   3:18
**4980290**   1:25
**4th**   8:22

**5**

**5**   54:25 151:7
■
**555**   3:11
**560**   132:21

**6**

**6**   88:19 105:2
  127:16,17,24
**6,000**   22:2,13
  45:10 72:14,15
  134:6 135:12
**60**   11:17
**600**   85:20
**611**   54:23 71:25
**612**   54:23 71:6,25
**699**   54:24,25
**6th**   71:14

**7**

**7**   105:3
■
**736**   54:21
**75**   110:1
■

**8**

**8**   88:6 105:3
  157:15
**8th**   7:12 55:3,4
  58:10,14,19 145:2
  150:13

**9**

**9**   18:8,18 127:24
  127:25
**98101-3052**   3:8
**99**   113:17 116:4
  131:3 133:14
  138:24,25
**99.9**   113:17
**994607**   3:12
**9:06**   2:24

**a**

**a.m.**   2:24
**abide**   7:13 20:23
**abided**   11:10
**ability**   129:15
  138:3
**able**   58:6 59:7
  64:21 148:21
**absence**   151:13
  153:2,19
**absolutely**   47:24
  156:13
**abundantly**
  150:15
**abused**   102:5
**abuses**   66:9
**access**   42:7,24
  43:22 64:13,20,21
  65:9 103:14
**accommodate**   4:9
**accomplishes**
  70:13
**account**   28:3

Page 1

[accurate - app]

**accurate**  61:12
  127:5,8
**accurately**  37:6
**accustomed**  34:10
**achieved**  71:12
**acknowledge**
  126:14
**acknowledged**
  14:24 154:25
**acknowledges**
  128:14
**acknowledgment**
  54:12
**action**  37:24 83:13
  83:19 94:14
  112:24,24 141:23
**actionable**  17:20
**actions**  83:20 94:9
**activities**  97:3
**activity**  96:11
  97:14
**actual**  35:5,16
  42:4 44:19 88:15
  101:13
**add**  34:5 55:18
  62:1 109:8 113:5
  149:17
**additional**  18:3
  21:2 26:12 28:20
  39:9 53:9 56:5
  62:18 99:25
  109:19 125:16
  132:11 139:6
  152:19
**address**  27:6 31:9
  46:22 74:15
  131:22 133:1,13
  146:18
**addressed**  39:2
  61:16 150:18
  151:25

**addressing**  15:14
**adele**  3:6
**adequate**  90:16
**adi**  4:15,15,15
  6:21 7:1,10 8:8
  9:11,23 12:1,14
  13:8,12,13,17 14:6
  14:10,18 15:3,13
  19:11 24:4,5
  32:20,23,25 33:5
  33:14,16,17 34:22
  37:23 38:1,10,13
  38:18 39:18 40:3
  40:6,12 41:16
  44:15 49:7 50:5
  50:11 51:14,21
  52:1 53:13 57:20
  58:18 60:10 66:10
  73:2,4,5,6 83:15
  83:23 100:19
  104:5 107:15
  111:19 119:3,5,7
  125:7,8 126:6,18
  128:4 129:8 137:8
  151:15
**adjectives**  5:1
  34:14 35:20
**adjourned**  156:14
**adjudicate**  39:13
**adjudicated**
  145:24
**admission**  28:21
**admissions**  50:22
**adpi**  81:8
**advice**  15:11 53:15
  68:4,14 129:12
  132:23 134:22
  136:2,18,19
  140:20 141:22
  143:19,21

**advise**  11:16
**advised**  15:3
**advocacy**  35:19
  85:18
**advocate**  107:13
**afoul**  33:5
**ago**  11:21 48:19
**agree**  11:23 12:6
  19:13 25:18 32:7
  46:24 53:8 93:4
  121:20 155:24
**agreed**  18:19
  40:24 71:2 97:8
  113:1 118:9 137:4
  137:5 150:25
**agreement**  56:17
**ahead**  34:3 47:10
  48:10 62:21 70:15
  78:20 100:17
  155:22
**alex**  3:18 31:9
  75:9,10 76:25
  78:17,18 92:13
  94:17 96:20 97:2
  98:14,19 99:9
  112:19 113:3,16
  119:25 120:7,17
  120:20 121:10
  123:14,20 129:20
  133:20,23 142:10
**allow**  64:12 90:24
**allowed**  53:9 70:4
  82:3 100:10
  102:24 134:8
**allowing**  53:11
**amalgamation**
  80:18
**ambiguity**  118:8
  121:21
**ambit**  17:25 31:12

**america**  103:21
**amount**  45:11
  99:11
**amplify**  136:22
**analysis**  19:4
  39:16 43:21 44:2
  44:3 65:8 81:20
  89:14 107:8
  108:24 121:16
  140:22 150:21
**analytica**  11:17
  38:2 66:4 103:13
  104:18
**andler**  23:17
**angeles**  4:1
**anne**  3:11
**answer**  5:10 39:15
  56:21 60:25 61:21
  93:2 99:7 136:12
  136:23 154:9
**answered**  78:7
  91:10
**answers**  76:17,19
**ant**  148:16
**anticipation**  16:9
  132:25
**anybody**  5:5,18
  89:16 118:19
**anymore**  110:5
**anyway**  52:4
**apart**  126:7
**api**  42:6,22 43:15
  44:4 64:19,22
  65:7 67:18
**apologize**  27:14
  48:11 53:19 148:3
**app**  11:18 14:21
  40:10 43:10,21
  48:4 60:13,18
  61:2,4,5,9,10,16
  64:11,13,18,20,23

[app - audit]

64:24 65:1,2,6,8
66:1,3 75:20
76:11 78:8,9,10,11
79:3,23,24 82:3
83:13 84:11,14
85:13 88:13 92:5
93:22 97:4,25
99:18 101:17,22
102:3,4 103:3
105:2 110:13
112:17,20 113:13
117:13 120:1
121:17 124:17,19
124:20,25 127:1
129:23 137:7,7
139:23 141:23
142:13,24 151:12
**app's** 65:9 123:25
124:1 144:2
**apparent** 111:13
███████████████
**appeal** 76:6
**appear** 30:19
123:24
**appearances** 3:1
**appeared** 3:3,15
**appears** 9:21
76:10 85:11,11
97:10
**apple** 15:17
**applicable** 87:2
100:2
**application** 60:11
**applied** 39:14
**applies** 58:21
**apply** 16:18
106:24 107:4
152:4
**applying** 41:3

**appreciate** 35:18
36:20 75:1 154:5
**approach** 20:25
93:8 150:11
**appropriate** 7:3
15:23 20:25 67:9
80:20 91:11
**apps** 7:15 8:24
9:13 12:25 13:10
17:6 19:16 38:24
40:12 56:9,11
59:17,18,25 60:22
61:8,8,13,15,19,23
62:12,14,17,17,18
64:10 69:12 71:4
72:11,14 76:6
78:10,10 84:1
88:14 90:20 94:9
98:7 102:14 110:2
110:5 113:17,18
113:23,24 122:1,6
135:3,13 137:5
139:8 140:8
151:16
**april** 51:22,23
71:14
**apt** 144:6
**area** 122:11
**argue** 153:4
**argued** 55:23
**arguing** 55:24
72:20
**argument** 27:10
27:20 38:20 57:3
79:16 101:5
102:20 129:1,2
131:19 139:12
151:24,25 152:2
154:16
**arguments** 11:11
27:5,20,21,22

48:13 56:2,23,24
150:18 154:14
**articulate** 136:4
**asked** 7:24 11:21
14:21 51:16
**asking** 15:20
32:17 66:20 78:23
86:7 99:2 103:4
114:10 115:12
136:15 140:24
147:21
**assert** 21:5
**asserted** 145:12
**asserting** 145:5
152:8,9
**assertion** 17:19
151:13 154:22
**assertions** 155:3
**assess** 55:17
**assessment** 53:2,4
79:2
**associated** 42:13
43:25 64:11
**associates** 120:10
**assume** 31:4 75:5
85:14,20 99:4
113:16
**assumed** 117:23
**assuming** 15:22
**assumptions** 79:18
**attach** 74:10
**attached** 85:21
86:8 137:10
**attaches** 17:15
**attachment** 57:14
**attachments** 57:7
137:9 144:3,8
**attempt** 6:10
56:19
**attempted** 125:16

**attempting** 83:9
**attention** 63:18
**attorney** 7:7 15:5
15:5 16:16 17:14
18:23 21:6,6,10
22:11,12,14,16,17
26:5 28:8 30:8
31:12 33:22 41:1
45:20 66:18,19,20
70:23 71:4,7
72:21 73:2 87:1
106:14 107:18,18
116:11 120:3,22
121:1 124:16
128:2,15,20,21
129:10,10,16,17
129:17 130:23
133:22 134:6,20
141:21 143:11
145:6 148:9 151:2
151:25 152:3,4,6,8
152:9
**attorney's** 82:19
128:18
**attorneys** 7:9
12:20,20,21 16:4
31:7,17 92:14,17
106:11 115:9,22
118:12 119:13
121:19 127:4,10
128:12,13 129:11
129:14 133:19
134:1
**audit** 31:15 47:2
48:3 84:13 100:1
112:24 118:7
122:1 123:2,4,5,5
123:9,11,16,16,20
124:6,20,21 127:1
128:18 130:24
144:20 152:5

Veritext Legal Solutions
866 299-5127

[audit - bullet]

153:13

**audits** 8:3 12:20
17:24 18:23 21:20
22:1 26:18 27:23
28:12,20 29:9
32:5 41:1 54:6
72:8,17 73:9 74:3
84:13 92:14 94:13
114:6,8,13 115:2,4
115:8,10,13,18,20
118:11 121:2,24
121:25 122:4,6,7
123:7 125:3,7,18
126:25 127:2,11
128:13 129:17
135:16 148:9
151:2

**augment** 84:12

**august** 51:12

**auld** 3:9

**author** 143:4

**authorize** 103:15

**automated** 85:1

**available** 5:25
47:7 52:17 92:19
150:7

**avenue** 3:7,18

**avoid** 144:17

**b**

**b** 45:14 47:23
104:24

**back** 4:17 11:2
18:14 20:14 23:24
24:14 35:4 36:17
36:24 46:1,9 49:2
49:9 51:8 52:24
54:23 55:21 58:1
59:20 60:19 62:5
62:25 72:2,25
73:1 81:1 85:13
86:2,9 89:20 90:5

94:11 100:5,8,20
100:21 101:16
102:1 105:4
109:10 111:12
112:6,8 114:17,20
114:22 124:4
142:16 145:1,15
145:22 147:4,13
153:9 155:4,21,21

**background** 8:2
12:19 17:23 19:15
26:17 48:2 54:2
69:15 103:3 133:5
133:10,18,25
135:4,9,22 137:13
138:1 139:7
141:17 142:18,23
153:13

**bad** 42:19 86:4
151:16

**balance** 71:12

**ball** 5:13,21 22:7,8

**bare** 78:2 148:20

**based** 5:12 38:13
45:9,15 46:15
61:7 78:13 97:10
113:24 132:10
133:8 135:16
136:10 140:4,5
150:6

**basically** 32:17
52:20 56:6 79:1
115:6

**basis** 7:2 9:2 16:13
46:18 47:2 56:4
83:9 103:17
106:11 108:4
109:6 130:17
136:5 144:18
152:12

**bates** 87:21

**bear** 6:9

**beginning** 104:11

**believe** 17:17 22:7
30:5 42:13 69:21
80:5 86:9 87:17
88:19 93:5 103:12
103:13 106:23
108:8,9 111:1
141:9 149:8

**believed** 112:21

**believes** 45:19
106:24

**benjamin** 3:7

**best** 4:9 29:10
51:18 128:20
147:6

**better** 42:3

**bevy** 45:21

**beyond** 13:1 62:19
83:10 155:11

**bfalaw.com** 3:13

**bible** 84:10 99:18

**big** 22:19 81:17
101:4

**birthdays** 65:11

**bit** 6:8 74:9 89:5

**bite** 15:17 72:25

**bizarre** 153:1

**black** 48:25

**blah** 60:12,12,13
79:25,25 80:1
117:10,10,10
136:2,2,3 140:23
140:23,23

**blanket** 15:6 16:18

**bleichmar** 3:9

**blindly** 28:17

**blow** 62:1

**board** 142:9 148:3

**bogus** 20:8

**boilerplate** 133:3
135:1 136:1

**bold** 144:16

**bones** 78:2

**booster** 107:13

**bottom** 10:21 11:2
27:19 87:22 113:9
151:7,9

**brainer** 69:10

**breathe** 35:4

**brief** 33:25 104:4
131:3

**briefed** 22:25

**briefing** 6:20,23
13:11 24:14 30:16
39:6 51:11 53:9
53:12 56:16 58:10
122:3 134:11
150:12

**briefly** 13:7 68:17
70:17 100:12
101:23

**bring** 18:11 23:24
41:16 127:16
131:17 132:3,12
132:14 140:17

**bringing** 42:17

**brings** 37:19

**broad** 21:21
123:16,18

**broader** 141:2

**broadly** 21:13,16

**brought** 23:16

**bucket** 90:2

**buckets** 11:3,9
12:10,17,25 17:11
20:3 21:18 24:6
46:3 112:8,9

**bullet** 91:17,18,19
91:19

Veritext Legal Solutions
866 299-5127

[bunch - client]

**bunch** 14:21 53:4 54:14 100:5
**burden** 16:8 107:20 149:14
**business** 60:12 128:24
**buttons** 83:3

**c**

**c** 104:24
**cadence** 4:5
**california** 3:12 4:1 157:1
**call** 32:22 47:7 51:1,2 54:13 55:8 67:18 77:7 120:18 129:23 141:21,24 141:24 148:2
**called** 77:10 79:12 83:10 98:4,8,20 134:17 141:25 148:14
**calling** 98:21
**calls** 42:5,7,10,22 42:24,25 43:10,12 43:18,19,21 44:4 65:7
**cambridge** 11:17 38:2 66:4 103:13 104:18
**camera** 12:3 13:10 22:15 23:1,6 28:4 31:23 33:23 51:20 52:22 54:10 57:9 57:13 58:2 70:19 71:8 72:3 134:11
**candidate** 124:19
**candidates** 113:18
**candidly** 44:17
**canvas** 78:9
**caps** 42:8

**capture** 77:9 98:11
**captured** 115:6
**cari** 3:6
**case** 24:12 25:23 25:25 27:2 33:7 38:6 39:14 40:16 50:21 63:9 64:15 65:16 66:4,4 70:6 73:3,5 83:16,17,22 85:12 101:4 104:8
**cases** 27:3 73:20 98:8,8 128:15
**categorical** 38:19 41:4 87:6 107:14 140:3
**categorically** 17:10 130:13
**categories** 11:4 16:12,15 21:3 25:11 26:15 29:3 29:9 30:6 33:7 47:15 77:2,2,5 84:18 102:13 105:11
**category** 8:9 9:9 32:22 44:12,20 47:13 48:1 60:13 94:24
**caucus** 36:22
**cc** 48:19 49:20
**cc'd** 48:16,23
**cc'ing** 68:1
████████████
**central** 38:8
**certain** 65:1 94:8 104:13 123:17
**certainly** 5:13 9:24 28:24 44:25 70:23 76:10 119:9 122:18 146:13

**certified** 157:4
**certify** 157:5,10
**cetera** 60:18,18 75:21,21 155:6
**chalk** 77:15 84:4
**challenge** 134:5
**chance** 18:11 29:17 59:21
**change** 29:20 52:18 63:23
**character** 68:2
**charge** 73:8
**chats** 50:20
**check** 85:1 127:7
**chhabria** 101:3 105:16,20,23 109:16 111:18 155:10,13 156:3
**chime** 125:2
**choice** 111:25
**choose** 134:9
**choosing** 14:12
**chose** 51:18,19
**chosen** 16:23 17:6 19:17 26:21
**circumstances** 128:23
**circumventing** 65:2
**cite** 141:13
**cites** 18:20
**civil** 29:21 32:18 33:4
**claim** 64:5 69:21 154:21
**claims** 37:24
**clarification** 88:22
**clarify** 76:24
**clarifying** 115:11
**clarity** 48:9

**clark** 3:17 10:11 14:4 18:10,12 23:25 62:15 72:15 74:22,24 88:18 89:19 90:22 109:1 117:3 127:16,17 127:20 128:6 136:24 142:20 143:23 149:19
**class** 83:19,19 100:22 104:22,23 104:24
**clear** 7:6 9:14 16:2 17:18 27:3 28:2 40:18,18 44:9 49:1,24 52:10 66:16 71:8 86:25 92:6 93:19 94:22 118:23 119:19 120:24 130:11 136:5,5 148:7,8 150:15
**clearly** 11:3 12:17 30:18,19 70:5,14 95:7 135:4 136:4 148:12 154:4,7
**client** 7:7 15:5 16:16 17:14 21:6 30:8 42:8 66:18 66:20 87:1 106:14 107:18,18 109:20 119:23 120:3,7,12 120:19,22 121:1,8 124:15,16,24 128:2,20 129:10 133:22,23 134:18 134:20,23 141:21 141:22 142:12 143:11 145:6 151:25 152:3,6,8,9

Page 5

[client's - confer]

client's 129:10
clients 121:8,9,16
  142:6 143:20
clock 70:4
close 33:17
closing 147:19
████████████
codified 80:21
  124:21,23
collected 22:24
  137:6
collecting 14:10
  123:22
collection 80:24
collide 33:5
column 87:19
com 113:12
come 35:10 49:9
  52:7 53:22 55:10
  56:17 57:23 62:25
  63:9 82:12 93:25
  105:4 142:18
comes 84:21
coming 64:23 70:8
  72:25 79:5 155:4
comment 77:25
  80:11,12 85:9
  126:11 154:13
comments 27:25
  79:5 107:16 129:5
  147:13,17,19
  155:24
committed 65:3
  147:3
communicated
  68:3
communicating
  31:5 47:21 64:5
communication
  9:15,16 12:15
  22:17 28:7 30:23

31:11 47:18,20,23
48:17,22,23 55:13
67:14,23 71:22
72:21 84:23 96:18
99:11 120:23
133:22 142:12
143:11
communications
  7:7,8 8:4,5,7 9:11
  9:20,22 14:7,10
  15:1,25 16:5
  18:23 21:10,13,16
  21:20 22:14,16
  23:14,18,20 24:19
  24:25 25:12,13,15
  25:17 26:6,10
  27:21 28:9 29:5
  29:23 30:14 31:7
  31:18 32:16,23
  33:2,5,22 34:17,22
  35:12 37:15 38:4
  38:5 40:7,20 41:2
  41:6 43:25 44:22
  45:8,11,13,18,20
  45:21,25 46:11,16
  46:17 47:14,14,25
  48:2,15 49:3,4,6,9
  49:13,17,19,25
  50:1,3,6,8,12,12
  50:15,16,19 51:6
  53:3,24 57:11
  58:15,22 59:3,6,8
  63:7,10 66:13,18
  66:20 67:7,10,12
  68:8,11,12,14
  69:15 70:2,20,24
  71:4,7,24 72:2,13
  72:18 73:2 74:17
  74:19,20 76:9,19
  76:21,23 77:3,11
  78:14,24 79:13

80:2,7 85:5,7,14
94:23 95:7,16
96:16 97:3,19
98:12,20 101:16
101:19 102:1
103:2 113:1 115:8
120:3 123:7 126:3
126:4,19 128:10
129:15 134:18,21
137:8,9,11 141:22
141:25 148:14
150:7,9,23 151:2
151:21,23 152:10
152:23,25 153:18
company 102:21
  151:17
compare 135:24
compel 7:11 13:21
  15:13 22:20 32:25
  33:1,15 51:12
  72:1
compelling 133:5
complete 41:5
completed 85:25
completely 56:10
  102:24 137:1,22
compliance 133:2
complicated 46:7
complied 132:8
  134:15
comply 69:3
  139:10
comprehensive
  80:23
compromise 74:2
compulsion 20:21
  20:23 25:20
  130:22
coms 88:3
conceal 102:24

conceivable
  152:11
concept 121:2
  123:4
conception 93:2
  100:1
concern 134:15
concerned 151:21
concerning 14:21
concerns 107:22
  130:16
conclude 37:23
  47:5 58:6
concluded 7:2
  83:15
concludes 151:7
  152:3
conclusion 44:24
  53:22 55:10 57:23
  59:5 81:15,19
  151:20 152:6,16
conclusions 43:7
  47:3,9 69:18
  89:15 101:10,13
conduct 104:14
  121:7
conducted 11:18
  12:20,21 13:10
  17:24,24 22:15
  53:16 54:6,11
  57:9 83:17 92:17
  96:9 114:25 115:1
  115:5,21 116:7,11
  116:20 117:21
  118:12,17 125:22
  127:3,9 132:24
  135:17 140:22
  154:20 155:5
conducting 125:18
confer 7:20 53:8

Veritext Legal Solutions
866 299-5127

[conferring - course]

**conferring** 56:16
**confess** 35:22
**confirm** 87:12,24
  124:10,12
**confirms** 124:7
**confused** 43:23
  76:7
**confusion** 84:21
  126:1 138:23
  142:3
**connect** 80:16
**connection** 33:16
  48:3 116:20 119:3
  125:8 126:17
  141:10
**consider** 17:12
  58:1
**considered** 21:9
  26:5,9 27:8,19
  72:23
**consist** 45:17
  111:10
**consistent** 7:17,25
  8:10 10:1 18:4
  20:3 21:2,7 26:12
  28:16 34:20 38:20
  39:10,22 49:22
  63:4 69:5 70:5
  73:13 84:6,7
  106:12 152:19
  153:15
**construct** 126:17
**constructing**
  107:7
**construed** 135:3
██████████████
**consumer** 1:3 2:3

**consumers** 151:17
**contact** 120:6
**contain** 14:20 77:3
  77:6,12,23
**contains** 136:2
**contemplated** 39:9
**content** 16:6 24:19
  40:7 51:17 52:21
  76:6 118:3 150:24
**contents** 91:1
**contested** 65:15
**context** 11:14 42:4
  45:1 63:2 69:18
  78:15 140:4
  143:24
**continue** 13:15
  56:15,16 59:11
  147:2
**contradiction**
  50:10
**contrary** 108:17
**contrast** 135:24
**conversation**
  23:10 62:9 67:6
  67:15 103:2
  119:22 150:16
**conversations**
  102:17 120:6
  121:18
**conveying** 132:22
**copied** 31:12,17
**copy** 86:4 87:25
  156:11
**core** 120:22,25
  134:20
**corely** 6:23 7:1
  10:23 11:4 12:2,5
  12:23 13:4,9
  14:11,19 15:24
  18:2 21:9,16 22:8
  22:15 23:1,4 24:5

29:7 31:22 32:4
33:22 35:6,8
39:11 50:2 51:13
51:20,24 53:1,7,11
55:7,23 57:9,10,16
63:12 69:1 70:14
70:22 71:2,11
72:21 84:15 90:13
90:15,24 94:24
98:3 101:7 103:19
106:21 107:1,14
109:17 111:21
121:2 125:3
130:12,21 132:5
134:8 135:5
137:16 138:1
140:2 141:19
145:6,24 150:6
154:17,25 155:9
155:12 156:4
**corely's** 4:23 7:25
  8:25 10:2,7 12:18
  15:19 17:18 31:13
  33:6 37:21 77:4
  86:24 88:6 101:2
  108:18 118:15
  122:4 127:17
**correct** 19:25
  45:21 60:24 61:24
  80:3 90:3 110:7
  121:10 123:14
  128:6 129:20
  131:11,12 139:24
  141:16 142:10,14
  146:19
**correction** 61:11
**correctly** 140:9
**correspondence**
  12:1 78:24 97:10
  97:11,16 98:5

**cost** 109:20 149:14
**costs** 109:21
**counsel** 5:4,5,15
  5:18,18,22 10:4
  11:11 18:10 23:12
  40:20,21 48:10
  49:17,17,18,20
  59:21 60:23 62:22
  70:16,19,25 73:3
  74:15,22,22,25
  75:22 79:15 80:3
  80:19 83:11 87:11
  87:13 92:4 93:5
  95:7 97:4 98:4,21
  104:2,3 106:17
  107:12 108:8
  109:24 110:9
  111:23 115:23
  116:25 119:18
  120:25 126:5,7,14
  127:5,16,22,23
  128:9,10 129:2
  130:19 131:1,10
  132:24 136:14
  139:13,18 140:21
  141:9 144:23
  146:5,5,24 147:16
  149:20 155:22
  157:10
**counsel's** 40:20
  53:14 67:7 128:9
**count** 45:15 61:8
**counted** 133:15
**county** 157:2
**couple** 4:18 6:20
  6:23 13:17 100:12
  129:23
**course** 20:23
  45:14 61:3 65:22
  68:11 154:23

[court - developed]

court   4:5,6 27:3
35:13 36:7,12,14
36:24 38:12,14
40:18,23 54:8,11
54:16 55:8,16
59:7 70:5 90:6
118:24 151:4,14
155:16 156:7
court's   25:9,10
63:4 145:10
courts   48:19 67:25
73:19
cover   6:2,3 20:7
62:10 145:22
covered   62:17
150:9
covers   59:17,17,24
152:21
cracks   31:19
created   16:6 24:19
38:16 40:8,19
44:13 49:12,16
54:1 55:22 61:3
63:3 89:14 92:4
118:12 128:9
129:18 133:8
135:22,23 145:4
150:24 154:2
creating   47:22
creation   102:4
credible   102:20
103:17 152:12
critical   39:4 49:9
54:12 63:8 64:15
66:13,22 70:6
101:7,19 102:9,15
153:20,22
cross   76:5 78:10
crr   1:24 2:25
157:22

crutcher   3:16
crux   9:21
csr   1:24 2:25
157:22
culling   40:14
culmination   39:5
47:22
custodians   137:5,6
140:8 144:1
cut   86:15
cutoff   28:24 73:19
85:24 108:6
cutoffs   108:5
cuts   85:25

d

d   86:1
daniel   3:6
data   42:23 43:13
43:17 44:3 45:13
46:15 47:6,6,18,20
54:3 64:9,9,21
73:7 76:3 78:15
79:6 80:4,6 81:2
81:14,18 82:8,20
82:23,25 83:2,3,25
88:3,3 103:3,15
118:10 122:23
124:13 125:18
151:12
database   124:12
datas   42:6
date   14:1,3 73:19
108:6
dated   157:15
dating   85:13
david   3:5 47:10
davis   3:11
day   73:25 85:2
153:1 154:9
days   70:7 83:18
105:15

deadline   29:2
deadlines   149:14
deal   97:24 156:5
dealing   29:7
150:12
dealt   109:8
deb   149:16
debate   9:10,21
97:22
deborah   3:17
december   1:14
2:24 4:2 140:9
157:15
decent   114:24
decided   71:21,23
74:10 112:23
decision   67:4 77:4
96:21 120:22
declaration   90:24
93:12 125:7 126:6
126:22 133:7
135:10 137:16,20
deemed   85:16
defendants   3:14
defense   154:19
define   75:4
defined   21:17
64:25
defining   97:19
defunct   60:11
delay   107:7
deleted   124:10
delineating   76:21
demand   12:1
demanded   13:8
denying   103:17
departed   35:5,7
depending   94:9
deployed   92:5
depositions   70:8
70:10,11 118:24

derek   3:5 5:8
11:24 23:21 36:3
37:1 56:8 62:5
87:11
derek's   46:2
describe   142:11
described   45:12
91:1 93:7 133:6
133:11 135:9
144:4
describes   125:7
153:16
describing   140:20
description   93:12
132:22 133:4
134:25 135:14
136:18
descriptions
136:10
descriptive   77:9
designated   146:8
designed   11:15
64:11 84:8
designing   71:11
▮▮▮▮▮▮▮▮
detail   75:10 91:2
140:22 146:21,22
detailed   39:16
details   42:4 65:12
detection   113:6
determination
52:5 58:14
determine   43:17
47:5 58:6 125:15
139:15
determined   52:12
69:10
detour   143:18
▮▮▮▮▮▮▮▮
developed   60:16
61:3,7 91:23

[developer - downloader]

**developer** 8:3
11:19 26:20 61:6
61:15 62:18 88:13
92:5 96:18,22,23
97:5 114:17
117:19 123:23,24
124:7 125:17
128:19 152:5
**developers** 14:21
60:13 61:2 85:6
94:11,23 95:8,16
96:17 97:15,25
101:17 103:3
110:5,6,9,12,13,21
117:19 118:18,20
121:12,15,17
122:23 126:23
129:23
**devops** 66:9 67:20
103:11 115:15
**devote** 109:19
**devoting** 149:23
**dictate** 73:12
**difference** 81:17
111:15 123:20
133:10 136:9
**different** 24:6,6,16
60:22 89:11
112:13 123:1
137:1,2,12,22
144:10,22
**differentiate** 76:8
**differentiating**
123:4
**difficult** 64:22
**dig** 148:25
**digging** 71:24
**direct** 5:6,19 25:14
67:8
**directed** 18:2
82:19 133:18

**direction** 92:4
130:19 140:23
157:9
**directive** 27:7
**directly** 15:24
25:9 37:23 78:9
**disabled** 78:11
**disagree** 155:25
**disagreed** 74:2
**disagreement**
17:22
**discipline** 73:23
**disclosure** 118:10
**discover** 57:19
**discoverable** 11:9
12:7,12,25 13:12
14:20 15:4 19:12
34:24 38:18 39:19
49:7,22 50:22
53:14,15,16 57:8
57:23 58:22 67:23
68:4,5 107:16
153:16
**discovery** 28:24
29:24 73:18,20,22
102:17 128:19
149:13 153:20
**discuss** 91:11 95:5
**discussed** 39:16,17
39:17 40:4 52:12
132:1 153:6
**discusses** 101:21
153:21
**discussion** 4:12
36:16 66:21
102:23 121:6
126:2 150:4 151:8
151:21 152:2
153:2,6,19 154:1
156:8

**discussions** 121:8
121:16
**dispose** 34:16
**disposed** 26:9 27:8
37:15 71:7
**disposes** 14:5 27:4
32:20,24 54:22
**disposing** 56:22
**dispute** 8:20,22
51:4,4 57:18 63:5
69:8 111:17
**disputes** 22:20
55:22 73:20 147:6
**distilled** 27:22
**distinct** 144:21
**distinction** 126:4
**distinguish** 74:18
117:22
**distinguishing**
116:24
**distorted** 39:25
53:22
**distortion** 34:12
**distorts** 51:7
**distribution** 143:4
**dividing** 128:13
**dloeser** 3:8
**docket** 18:21,21
19:1 54:23 71:6
**doctrine** 7:3 15:7
16:11 38:22
**document** 11:21
12:15 22:3 29:1
32:10,11,20,21
33:15 41:22 45:7
54:21 59:4 60:3
87:4,5,7 90:19
91:24 101:20
107:21 123:3
130:17,17 137:6
143:14 146:7,10

**documentation**
53:13
**documents** 11:4
12:10,12 13:8
16:8,12,14 17:7,9
17:11,20 19:9,18
20:2 21:2,4,22
22:25 24:5,7,9
25:11 26:22 28:6
29:3,9 30:6,9
32:22 33:7 37:12
38:15 39:1 40:5
40:14,19 43:25
44:12 47:8 49:11
51:18,19 52:6,8,12
52:20,22,23 54:1,5
54:10 56:5,18
70:25 77:19 84:18
87:3 90:20 94:25
97:1 98:14 118:13
128:9 131:4
134:12,18 137:10
140:5,6 152:1,7,15
**doing** 24:2 25:7
37:4 55:25 56:22
71:2 75:8 89:11
94:13 102:14
108:4 117:9
145:17 146:25
**domains** 76:13
**door** 33:17
**doses** 84:17
**dot** 19:16,16,16
113:12
**dots** 80:16
**double** 127:7
**doubt** 103:8

Veritext Legal Solutions
866 299-5127

[dozen - exactly]

**draw** 63:17 126:3
**drawing** 111:16
**drawn** 59:5
  101:13
**drew** 101:10
**dry** 104:20 105:8
  108:11,12 149:12
  155:5
**dtpa** 64:5
**dual** 7:4 16:10
  38:21 52:4 87:4
**due** 43:15
**dunn** 3:16 99:12
  134:3,18,23
  136:18,19 140:16
  140:21 141:10
  143:21
**dunn's** 143:19
**dwell** 37:10

**e**

**e** 1:23 2:25 4:17
  13:12,14 31:11
  50:20 52:17 57:6
  57:13,14 82:8
  84:23 85:20 96:22
  98:5 100:4,7
  106:7 142:7,11
  143:10 144:1,3,9
  144:19 157:4,22
**earlier** 54:11
  67:19 97:9 101:25
  137:25
**early** 124:7 147:3
**easily** 102:5
**easy** 48:14 86:22
  133:16 139:4
**edification** 87:14
**edits** 15:10 40:20
  49:17 53:14 128:9
  129:11

**education** 65:11
**effective** 101:5
**effectively** 102:16
**efficient** 29:10
**effort** 30:1 39:5
  55:8 57:19 109:18
  154:6
**efforts** 7:20,21
  118:1
**egregious** 104:14
**either** 34:7 106:14
  122:22 135:4
  140:5
**elaborate** 146:13
**elephant** 148:16
**eliminated** 102:16
**elite** 143:3
**emanated** 97:6
**embedded** 76:9
  85:8 106:4,8
**employee** 31:2
  47:23
**employees** 118:18
  118:21 119:4,8,10
  119:14,21 126:17
**enabled** 78:12
**encapsulated**
  47:12
**encompass** 112:8
**encompassed**
  49:15
**encourage** 147:5
  150:3 153:24
**encouraged** 9:4
**encourages** 102:4
**encouraging** 37:18
**ended** 110:13
**enforce** 11:8
**enforceable** 17:20
**enforced** 75:20
  78:8 79:23,25

104:8
**enforcement**
  40:13 54:5 75:23
  76:1,2,14 79:8
  80:8,14 85:12
  94:8,13,19 96:22
  97:2,14,24 104:5
  112:24 118:1
  120:21 121:13
  124:25 125:14
**engagement**
  125:17
**engineer** 45:13
  47:18,20
**engineered** 69:23
**engineering** 46:17
  66:10 67:8
**engineers** 44:23
  46:9 67:14 103:10
**enhance** 120:20
**enhanced** 40:12
  54:1 79:2 94:6,18
  95:21,25 96:2,5,9
  96:9,21 97:23
  98:7,16 99:18
  102:18 112:16,22
  113:10,15,18
  116:20 117:9,10
  117:14
**entailed** 122:8,22
**enter** 6:11 70:12
  97:23
**entertain** 27:9
**entire** 55:21 83:16
  85:23 100:19
  154:21
**entirely** 8:10 10:1
**entirety** 30:10
  87:16
**entitled** 9:22 44:18
  59:3 70:10 140:3

152:25 153:3
**entity** 75:6
**entries** 22:2,13
  45:10,17 72:10,15
  134:5,7,9
**entry** 85:20
  132:21 134:1
**episode** 37:13
**era** 50:19
**erases** 70:19
**escalate** 96:21
**escalated** 93:23
**escalation** 93:20
**esq** 3:5,5,6,6,7,10
  3:10,11,16,17,17
  3:18
**essentially** 7:19
  20:17 41:3 72:3
  142:23
**et** 60:18,18 75:21
  75:21 155:6
**event** 28:19 31:8
  31:10
**events** 37:9 53:21
**eventual** 51:5
**everybody** 35:18
  36:8,11 50:18
  146:25 155:14
**everybody's** 10:17
**evidence** 50:21
  63:9 70:6 151:19
  154:4
**evident** 55:20
**exact** 81:6 88:18
  140:16
**exactly** 6:16 8:15
  8:16 46:6 47:11
  78:23 86:19 89:25
  102:10 114:4
  130:9 144:14

Veritext Legal Solutions
866 299-5127

[examination - factual]

examination 54:2
79:3 94:7,19
95:21,25 96:6,9,10
97:14,23 98:7,16
99:18 100:20
112:16,22 113:10
113:15,18 116:20
117:9,10,14
120:21
examinations 96:2
102:18
examiner 85:10
examiners 30:23
85:16
example 44:10,23
46:14 47:16,17,19
52:14 65:4 66:1
99:11 101:25,25
113:16 124:6
examples 43:24
excel 132:16
exception 41:4
exceptional 22:5
excessive 108:18
excited 108:12
excluded 148:12
excruciating
146:21,22
executive 10:21
60:21
exemplar 7:15
8:24 9:13 19:16
38:24 45:9 56:9
57:15 59:10,25
61:1,23 74:20
90:20 135:13
137:4 139:8,23
140:10
exemplars 12:23
39:13 57:22 59:24
85:8 86:12 122:1

exercise 12:3
22:24 24:8 57:17
58:13,17,18 59:5
61:17 62:20 67:24
73:22 112:5
136:17 137:17
138:2 139:23
150:4,6,8 154:21
exhibit 6:12
exist 12:23
exists 82:14 147:1
exogenous 77:7
expectation 64:25
experts 137:14,19
explain 8:13 9:5
28:23 94:3 124:2
124:3 131:18
explained 94:23
128:18,22
explains 79:13
explanation 9:17
64:10 124:4
explicit 25:19
explicitly 24:17
26:1
explore 154:7
explorer 64:19
expressed 13:11
expressly 25:16
154:25
extending 149:13
extensive 12:3
13:10 22:22,24
extent 12:22 16:16
17:18 20:2,19
21:1,24 77:1
79:11 80:20 97:21
112:20,23 119:21
129:22 130:4
133:20 134:17
154:18

external 44:14
extract 83:3
extracted 88:3
extraordinary
24:4
eyes 42:19 106:12

f

fabrication 34:18
face 10:17 31:4
97:11
facebook 1:3 2:3
5:2,17,19 6:25
7:13,19,21,24 8:4
9:4,12,17,22 11:16
16:7,19,23 17:19
18:19 19:15,17
26:17,21 30:14
31:1,4,11 34:19
35:9 37:18 38:17
38:23,25 39:7,20
40:11,12,23,24
44:14,23 45:8,13
46:15,17 47:18,20
50:23 51:3,13,14
51:25 52:7 53:12
53:16 54:6,8 56:9
57:4,5,7,14,21
58:23 59:13,25
60:18,23 61:2,20
62:3,23 64:11,12
64:17 65:19,19,23
66:8,9,12,21 67:2
67:14,21 69:3,8,21
70:3,9 76:20
77:17 80:18 87:22
88:6,14 97:4
99:12,12 101:19
101:20,21 102:10
102:16,20,22
103:9 104:7
106:23 107:9

115:15 116:21
117:13,21 118:9
118:17,20 119:8
119:10,14,21
126:3,16 127:25
128:17 132:6
133:8 138:7 139:3
140:2,21 145:5,14
150:25 151:10,14
151:18,24 152:8,9
153:4,9,21 154:2
154:18
facebook's 8:20
41:15 43:11,19
50:9 57:3 67:7
82:23 83:22
111:13 128:24
151:16 152:2
fact 52:9,10 57:16
83:15 100:24
107:7 125:21
141:25 146:10
facts 11:5 12:7
13:12 14:20,21
15:1,3,8 17:13
19:11 23:13 28:10
39:17 50:8,11,16
50:16 53:15 67:13
68:7,9,12,12 71:19
73:11 76:22,23
77:21 84:10,16
85:17 99:21,22
105:7 107:15
129:8 134:21
148:7,11
factual 7:10 11:14
12:11 16:4,20
48:22 49:21 50:4
53:3 55:11,17
57:19 58:7 66:21
67:15,23 68:3

[factual - further]

69:20 72:8 90:24
100:12
factually  101:6
failure  102:14
fair  26:8 31:13
38:8 109:24 112:1
112:1 113:3
fairly  4:19 9:17
30:16 91:3 135:1
faith  22:5 30:1
39:21 151:17
fall  95:24 114:6
falling  112:18
falls  134:1
false  90:17
family  143:15,15
143:16
fans  85:2
fantastically  34:12
far  35:5,7,16
44:21 45:10
153:13 155:11
fashion  138:11
148:22
faster  132:16
fault  85:3
favor  77:14
federal  29:21 32:9
32:17 33:4 128:20
154:4
feel  91:11
▮▮▮▮▮▮▮
fiction  35:11 150:5
fictional  35:13
fidelity  107:13
fielding  5:8
fig  20:7
fighting  39:5
66:14 98:17
figure  67:8 96:4
155:2,10,12

file  15:17 85:12
105:18,22 144:19
filed  11:17 33:1
41:14 83:16,17,20
96:25 104:6,15
filing  86:9
filings  13:23
final  15:14 33:13
56:19 86:20
127:22 145:8
finally  14:24 15:12
find  28:6 33:3 49:6
57:16 83:9 84:8
finding  151:19
findings  132:23
135:16
fine  37:3 48:8
111:3 130:9
131:18
fingertips  74:25
finish  23:22 27:13
29:13 62:5 95:18
115:20 116:5
firm  11:15 142:7
firms  89:11
first  4:21 5:20 8:5
41:9 44:9,12,18,19
64:19 70:18 76:4
83:18 88:12 91:19
91:19 94:5,18
95:18 100:18
141:7 147:21
149:3,6 150:20
five  42:14 46:2
100:4 130:7 131:9
131:16,16 148:3
flag  24:3
flagged  59:19
floor  3:18 5:23
focus  62:11

focused  4:18,18
40:14 61:22 88:23
follow  81:22
110:11 146:12
147:2 150:16
followed  117:2
following  20:24
151:6
fonti  3:9
force  77:17
forensic  82:18
forest  112:18
form  11:22 49:16
75:17 76:17
formal  123:2
143:5
format  42:16
88:10
formed  47:2
forth  4:17 24:14
46:9 52:24 55:21
94:11 100:5,8
101:16 114:18,20
114:22 124:5
157:7
fortunately  10:25
forward  17:17
59:11 68:24 70:13
105:22 106:3
144:18
forwarded  105:19
fought  38:6
found  11:4 12:11
16:7 56:13 83:12
90:20 104:14,23
151:14 153:6
four  109:3
framework
129:18
frankly  51:16
68:20 129:19

free  75:17,18
76:17 91:11
freeze  75:4 81:7
friday  4:2
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
friend  43:22
friends  64:9,14
65:10 66:2 81:9
103:15
frolic  143:18
front  31:22 154:16
▮▮▮▮▮▮▮
ftc  105:17,18,24
105:25 109:9,13
111:16
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
▮▮▮▮▮▮▮
full  33:20 63:20,24
77:15 84:4 154:7
fully  36:20 125:25
funnel  89:22
further  53:12 60:8
60:8 91:11 102:3
131:19 157:10

Veritext Legal Solutions
866 299-5127

[gallery - good]

| g | | | |
|---|---|---|---|
| **gallery** 64:13 | 110:19,25 111:6 | **genuinely** 106:24 | 111:12 112:8 |
| **games** 9:18 | 111:22 112:2,14 | **getting** 18:16 43:9 | 124:11 138:22 |
| **garrie** 4:4,13 5:10 | 113:20 114:2,12 | 95:10 112:11 | 142:16 145:14 |
| 5:15,22,25 6:11,19 | 115:10,12,17 | **gibson** 3:16 99:12 | 147:13,21,24 |
| 8:12 10:3,14 | 116:1,14,17 117:5 | 134:3,18,23 | 150:20 151:5,6 |
| 13:16,20 14:25 | 117:20 118:2,19 | 136:18,19 140:16 | 152:16 155:17,20 |
| 16:21 17:2 18:3,5 | 119:2,11,16 120:9 | 140:21 141:10 | 155:22 156:6 |
| 18:14,18 19:13,21 | 120:13,24 121:20 | 143:19,21 | **goal** 78:25 |
| 20:9,13 23:19 | 121:24 122:9,13 | **gibsondunn.com** | **god** 103:14 |
| 24:13 25:2,18 | 122:15,20 123:2 | 3:20 | **goes** 37:22 38:5 |
| 26:11,16,20,25 | 124:14 125:1,9,23 | **give** 10:8,20 18:12 | 43:8 60:17 85:19 |
| 27:9,16 29:12,16 | 126:13,24 127:15 | 29:17 44:1,9 45:1 | 102:11 107:20 |
| 30:12,22 31:1,25 | 127:19,21 128:8 | 56:19 139:16 | 128:12 |
| 32:7,14 33:9,18,24 | 128:17 130:1,7,25 | 140:18 149:10 | **going** 6:7,14 9:19 |
| 34:1,4,14 35:17,24 | 131:9,13,15,24 | **given** 15:11 17:6 | 15:23 17:17 19:23 |
| 36:5,11,13,17 | 132:12,18 134:25 | 64:5 108:4,6 | 28:2,3,11,13,18,21 |
| 41:11,19,25 42:18 | 138:6,9,19 139:5,6 | 109:2 128:23 | 28:22,25 29:25 |
| 43:3 44:8 45:22 | 139:13 140:12 | 132:22 134:23 | 33:12,12,13 35:17 |
| 47:17 48:5 54:17 | 141:5 142:2 | 143:18 | 36:5,17 37:7 46:9 |
| 54:20 55:4,19 | 143:13 144:16 | **gives** 64:20 | 47:23 62:5 67:16 |
| 57:2 59:9,23 60:6 | 145:20,21 146:4 | **giving** 71:12 | 72:2,6 73:5,7,11 |
| 61:18,20,25 62:21 | 146:12,16,20,23 | 141:22 | 79:11 81:6 84:4,7 |
| 63:20 66:23,25 | 147:14,22,24 | **global** 130:17 | 84:10,14 85:18 |
| 70:15 73:15 74:7 | 149:20,22 154:11 | **go** 4:16 8:13 11:13 | 88:9 99:21 103:7 |
| 75:2,13,15 78:3,6 | 155:7,20 156:1,9 | 13:17 18:14,17,21 | 104:19 105:6,7,11 |
| 79:10,15 80:6,15 | **gather** 100:3 | 19:1,4 20:13 | 105:14 106:5,11 |
| 81:3,23 82:2,10,16 | **gathered** 144:1 | 22:23 24:7 28:6 | 109:11 112:6,17 |
| 82:21,25 83:5,8 | **gathering** 100:3,6 | 34:3 35:14 36:15 | 113:14 116:2,3 |
| 84:19 85:22 86:6 | **general** 10:15 | 36:17,22 37:17 | 130:22 138:20 |
| 86:11,20 87:8 | 38:14 49:11 133:3 | 41:9 42:16 46:1 | 139:7,15 142:13 |
| 88:8,21,23,25 89:8 | 135:19 136:1 | 47:10 48:10 50:25 | 144:18,24 145:22 |
| 89:12,20 90:8,8,11 | **generalize** 57:22 | 54:23 58:1 59:20 | 146:4,9 147:4,16 |
| 91:7,13 92:6,22 | **generally** 31:6,6 | 60:1,4 62:21 | 148:11,22 149:1,2 |
| 93:4,15,18 94:2,4 | 104:15 122:8,22 | 70:15 75:4,18,25 | 149:25 152:18 |
| 95:4,13,15 96:3,12 | **generated** 38:15 | 76:3,10,13,15,16 | 154:19 |
| 96:24 97:9,18 | 40:3 49:11 52:2 | 76:16 78:20 81:1 | **good** 5:9 18:17 |
| 99:6,20,23,24 | 82:5 85:24 93:5 | 83:10 84:9,19,21 | 22:5 30:1 39:21 |
| 100:11,15 103:25 | 99:17 112:23 | 86:2,9 90:4 91:14 | 47:19 74:1 91:3 |
| 106:15 108:2 | **generating** 93:21 | 95:11,17 99:19 | 138:10 154:11 |
| 109:16,24 110:12 | **generic** 42:7,23 | 100:17 103:12 | 155:7,9 |
| | 136:17 | 104:1 109:7 111:9 | |

Veritext Legal Solutions
866 299-5127

[gorgias - ignored]

gotta 60:4
gould 3:7
govern 56:2
grade 155:11
granted 65:1,8
 81:10
graph 42:5,22
 64:19
grateful 102:7
great 91:2 156:1
greatest 80:22
 99:19
ground 73:1
grounds 18:22
 40:25 118:13
 151:1
group 48:7 67:20
 93:6
groups 65:12
guess 59:12 60:20
 60:21 74:14 98:13
 105:4 123:3
 126:10 138:5
 139:20
guidance 7:18
 20:4 21:7 24:8
 25:9,10 26:13,14
 27:22 28:16 34:19
 34:21,22 39:10,22
 49:23 56:3,20
 58:11,20 63:4
 66:16 70:5 71:3,3
 71:11 72:12 86:24
 106:13 107:20
 145:10 152:20,21
 153:15
guiding 145:3
gun 106:9
gut 29:6

guys 19:22 32:11
 74:10 88:16 99:8
 156:12

**h**

hair 112:21 113:8
half 63:24
handful 96:24
handy 110:15
 111:2
happen 58:7 67:18
happened 14:9
 35:16 37:14 38:9
 38:9,11,12 51:2,10
 51:23 52:8,10
 59:4 95:20,21
happens 63:8 67:6
 67:15
happy 5:13 125:5
 131:20
hard 38:7,7
head 23:5 111:4
 114:23 115:3
 122:12
headlong 21:14
hear 5:15 28:14
 38:10 79:16
heard 9:24 35:16
 37:9 39:24 63:6
 112:18 139:11
 142:8
hearing 1:13 2:23
 4:14 14:2 23:4
 28:1 51:22 52:11
 77:22 107:16
 129:5 147:20
 155:1

heavy 84:17

held 1:11 4:12
 27:12 36:16 156:8
hello 84:25
help 68:19
helpful 10:10
 52:25 55:12 56:14
 68:16 77:13
 100:13 102:6
 150:9 155:15
helping 67:7
hereunto 157:13
hey 123:10 142:12
hide 22:7,8
high 60:15 91:21
higher 89:5
highlight 132:15
highlighted 118:4
highly 65:9,17,21
 66:1,5 69:17
 147:5
hire 111:23
hired 64:17 65:19
historically 43:16
history 10:25 13:7
 65:10,11 75:24
 76:1,2,14 79:8
 80:8,14
hit 106:3 144:2
hits 80:22 99:19
hitting 137:6

hold 27:13 73:21
hole 104:1,20
honestly 105:8
honor 8:19 9:24
 14:24,25 37:4,18
 39:3 40:22 62:25
 63:16 66:15 69:14
 70:2 101:14
 147:12 154:6

hope 6:2
hopefully 148:23
hoping 76:24
 147:12
horrif 67:5
hotly 65:15
hours 33:12,12
 70:22
house 121:18
html 84:24
huge 103:16
 111:15 143:17
humanly 147:7

hung 63:15
hypothetical 31:8
 31:10 67:1 70:25
 85:15

**i**

idea 30:10 51:3
 58:13 75:7 90:15
 100:23 116:6
 139:1 143:7
identification 94:6
 94:18 113:5 136:5
 140:8
identified 12:17
 39:3 40:12,17
 45:7,18 53:1
 59:18 60:14 91:21
 96:8 101:24
 112:15,17,20
 113:6,14 140:9
 151:22
identifies 12:10
identify 54:3
 65:19 138:4
ignored 7:19
 15:20

Veritext Legal Solutions
866 299-5127

[imagine - interviews]

**imagine** 113:12
**immediate** 9:8
**immediately** 69:9
**impact** 55:1,7
**imperative** 9:7
**implicated** 61:10
**implicit** 19:20
 20:1 72:24
**important** 9:25
 10:1 14:16 15:16
 16:2 37:10 50:25
 51:8 53:21 90:12
 90:13 100:19
 101:18,18 103:4
 103:24 111:10,12
 119:20 143:24
**imposed** 38:18
**imposing** 149:14
**impossible** 103:12
 106:23
**inaccurate** 57:25
**inadequate** 125:16
**inappropriate**
 65:20
**inappropriately**
 64:7
**inclined** 108:15,20
 148:19
**include** 77:2
 117:23 119:6,7
 134:6 140:24
 141:4,17 151:23
**included** 30:17
 62:18 76:12 94:10
 126:5
**includes** 37:18
 50:5 89:22 115:7
 139:1 152:22
**including** 10:7
 11:18 14:6 27:20
 54:6 65:10 70:24

125:17 129:11
 141:18
**inconceivable**
 151:10
**inconsistent** 21:14
**incur** 109:21
**indicate** 65:20
**indicated** 49:15
 132:5
**indicates** 64:24
**individual** 45:14
 75:6 115:15,16
 130:15,15
**individuals** 116:21
**infer** 153:2,19
**inference** 153:23
 154:2
**influenced** 77:4
**infor** 43:5
**inform** 77:20
 120:19 121:16
**information** 7:10
 8:9 9:4,13 15:4
 18:20 19:12 29:22
 34:20 37:23 38:7
 40:2,11,25 42:13
 43:4,5,6 44:1,5
 50:4 52:15 54:9
 55:11 57:19 58:7
 63:13 65:9,16,21
 66:2,5 67:17 68:3
 69:5,16,17,19,20
 70:11 73:10 77:7
 77:16,23 79:1,8
 80:18,24 81:16
 82:12,12,14,15
 83:11 84:4,5
 94:11,12 100:3,4,6
 101:15 102:6,11
 103:5,17,20
 105:14 106:5

107:4,17 110:24
 111:2 114:16
 120:19 123:12,19
 123:23 124:8,8,14
 125:15 150:25
 152:5 153:4,14,20
**informative** 30:16
 155:15
**informed** 72:12
 129:4
**infrastructure**
 125:19
**inherent** 19:20
**initially** 93:7
**initiated** 83:18
 151:11
**ink** 72:19
**inquiries** 98:16
 126:8 133:1
**inquiring** 122:23
**ins** 146:14
**inserted** 74:16
**inside** 101:21
**insight** 24:24
**instance** 5:20
 44:19 149:6
**instances** 96:24
 144:5,9
**instruction** 7:20
**insufficient** 105:3
**intended** 25:14
 28:8 70:14 80:12
**intending** 131:21
**intent** 33:17
**intention** 62:3
**interact** 97:14
**interacted** 40:10
**interest** 84:2
**interested** 157:12
**interesting** 134:24
 136:7

**interests** 65:13
**interim** 23:3
**internal** 8:4 9:22
 11:15 24:25 34:17
 35:12 37:15 38:4
 46:11 49:3,4,6,13
 49:19 50:5,12,19
 51:5 53:23 58:15
 58:21 59:3,6 63:7
 63:10 66:21 67:6
 67:20 68:8,11,12
 68:13 70:2 79:19
 98:5 101:19
 102:17 117:21
 126:2,19 150:7
 151:23 152:10,22
 153:17
**internally** 66:8
 135:18
**interpret** 91:7
**interpretation**
 4:22
**interprets** 78:15
**interrupt** 36:10,10
**interrupting** 18:7
 27:11 41:20 73:16
**interview** 31:15
 112:25 114:21
 116:17,18,19
 117:5,13,15 119:1
 119:8,22 120:15
 123:10 126:4
 128:18 130:24
 144:20 152:4
**interviewed** 117:8
 119:3,4 126:16
**interviewing**
 119:12,14
**interviews** 8:4
 12:21 17:24 18:23
 21:19 22:1 26:21

Page 15

[interviews - know]

27:24 28:12,20
29:10 32:6 41:1
54:7 72:9,17
73:10 74:4 84:12
92:14,18 94:13
114:6,8,13,24
115:4,9,20,21
116:6,11,15 117:8
117:15,18,21
118:12,14,17,23
119:6 120:14,23
121:2,4,7,12 123:7
125:4,8,18,22
126:5,12,13,15,17
126:22 127:3,9
128:12 129:17
135:17,18 148:9
151:2
**invalidate**  15:20
**invested**  10:22
**investigated**  93:22
102:3
**investigating**
121:14
**investigation**
11:15,19,23 12:8
14:23 38:1,1,3,15
40:13 46:6 49:12
53:17 60:14 73:9
79:20 80:11 83:12
83:16,18 84:16
92:5 93:13,21
96:21 102:18
111:19 119:5,7,20
121:13 126:18
132:24 142:23
151:12 154:20,23
155:6
**investigations**
54:3

**investigative**
153:22
**investigators**
82:19
**involve**  16:5 21:21
24:18 40:7 54:2
150:23
**involved**  31:7
45:21 46:8 50:18
114:11
**involving**  115:9
**irony**  104:13
**irrelevant**  52:23
**issue**  4:19 6:21
9:10 12:12,24
15:2,12 20:24
27:4 28:2,11
31:21 32:3 33:13
33:14 34:17 35:12
36:20 39:13 51:1
56:14,16 58:24
61:15 63:7 64:15
65:15 69:14 101:1
104:5,6 107:14
109:9 111:17
121:22 124:20,22
130:18 131:19
132:8 139:9,11
140:1 147:8,19,20
150:12 151:5
152:7 155:13,19
**issued**  7:12 12:9
15:12 35:6 53:11
111:21
**issues**  6:2 15:15
28:18 32:20 34:19
55:17 58:18,20
64:5 72:1 88:24
106:15 113:14
150:18 154:8

**issuing**  27:25
**items**  7:24 8:5,7
**iterative**  121:19
148:22

**j**

**jams**  1:1,13 2:1,23
**january**  108:6
**job**  1:25 146:25
**john**  31:10
**joyful**  149:24
**judge**  6:23 7:1,25
8:25 10:2,5,7,23
11:4 12:2,5,18,23
13:4,9 14:11,19
15:19,24 17:18
18:2 20:22 21:9
21:16 22:8,15
23:1,4,17 24:5
27:19 29:7 31:13
31:22 32:4,24
33:6,22 35:6,8
37:21 39:11 50:2
51:13,20,24 53:1,7
53:11 55:7,23
57:9,10,16 63:12
69:1 70:14,22
71:2,11,20 72:21
74:1 77:4 79:14
84:15 86:24 88:6
90:13,15,24 94:24
98:3 101:2,3,7
103:19 105:16,20
105:23 106:13,21
107:1,14 108:18
109:16 111:18,21
118:15 121:2
125:3 127:17
129:13,15 130:12
130:21 132:5
134:8 135:5
137:16 138:1

140:2 141:19
145:6,24 148:12
150:6,11 154:17
154:25 155:9,10
155:12,13 156:3,4
**judge's**  73:13
77:22 129:4
**judgment**  120:20
**jump**  6:7,14
106:16
**jumping**  6:8 106:9
**june**  51:11 78:12
**justify**  149:13

**k**

**kathryn**  2:24 4:7
4:11
**katy**  1:23 157:4,22
**keep**  32:14 35:19
47:18 81:6 85:18
100:13 101:7
107:6,6 146:8
**keeps**  56:9
**keller**  3:4
**kellerrohrback.c...**
3:8
**kept**  56:7
**key**  7:16 63:9
**kicking**  112:11
**kill**  148:15
**kind**  23:5 29:19
35:22 52:24 57:1
62:25 70:25 80:21
101:4 123:11
138:18 148:17
**kinds**  120:6
**knew**  25:12,12
43:4 90:15
**know**  4:8 10:19
11:13 12:9 14:2,3
15:10,17 17:17
18:7 20:7,17,18,19

**[know - literally]**

20:20 21:1,21,21 22:9 23:12 24:22 25:24 27:7 28:5 28:20 30:18,18 33:21 34:9 35:3,9 37:12,21,25 41:14 42:19 44:16 45:15 47:6 48:16,18,25 50:14 51:17 52:7 52:14,15,21 54:21 55:8 56:10 58:23 61:7 62:9,10 65:23 66:7,12 67:4,24 68:5 69:7 69:25 70:8,18,22 71:7,25 72:4 73:18,19,19,20,21 73:22,24 74:11,22 76:25 77:7,8,18 78:21,22 83:13,13 83:19,22 84:1 85:3,13 86:13 87:4 88:17 89:16 91:9 94:24 95:11 98:3,14 99:1,5,17 102:2,3,15,15 103:7 104:10,10 104:11,12,17,19 104:22 105:4,6,9 105:13,14 106:9 108:5,10,17,24 109:8,17 110:16 110:18,22 112:20 113:14,16 114:23 114:24 115:13 116:12 118:5 120:21 122:11,12 122:15 125:22,23 129:11,24 130:3,4 130:22,22 131:10 131:21 134:4,8,12

134:20 135:13,20 136:1 138:4,13,24 141:20,25 142:5,8 143:1,21 144:7,8 144:14 145:8,14 146:14,15 148:16 148:21 149:1,2,3,7 149:13 150:2 153:11,14

**knowledge**  45:4 50:17

**known**  80:18

**knows**  50:18 73:9

**ko**  3:5 44:7 47:11 55:18 58:9 59:21 59:22 60:5,24 61:14 74:22,25 86:18 87:11,13,18 87:20 88:5 90:11 91:5 93:17 95:2 95:12,14 111:7,23 112:1 115:11 125:1,12 126:10 131:12,14,20 132:2,17,20 133:14 134:24 137:24 139:24 141:2,16

**kutscher**  3:17 10:11 14:4 18:10 18:12 23:25 62:15 72:15 74:22,24 88:18 89:19 90:22 109:1 117:3 127:16,17,20 128:6 136:24 142:20 143:23 149:19

**l**

**labeled**  137:11

**labels**  87:21

**laid**  4:10

**language**  7:16 21:8 26:4 39:3,4,7 39:15,19 40:22 41:25 43:11,19 101:10,13,22 136:2 137:25 152:19

**large**  4:19 84:17 122:7 151:11

**largely**  58:3 115:21

**lastly**  101:14

**laufenberg**  3:6

**law**  11:15 25:23 26:1 27:3 38:21 39:17 49:1 128:20 142:7

**lawyer**  48:17,20 48:24 67:14 68:1 80:12

**lawyer's**  68:14

**lawyers**  16:5,6 24:19,20 40:7,8 46:7 49:21 50:1 54:1 69:23 114:25 119:13,15 120:7 120:12 150:24,24

**lead**  77:11

**leads**  149:8

**leaf**  20:7

**learned**  40:2 58:16

**leave**  156:3

**led**  11:16 72:16 77:11 98:6,21

**leeway**  29:1

**left**  102:25

**legal**  11:15 53:17 68:4 132:23 133:1 133:22 134:22 136:2,18,19 140:20,21 141:11 141:22,24 150:18

**length**  88:20

**lengthy**  6:22

**lesley**  3:10 5:4 46:23

**letter**  25:20 49:1

**letting**  10:19

**level**  84:25

**liability**  53:18

**lies**  103:20

**light**  10:6 11:1 77:22 154:14

**likes**  65:13

**limit**  34:15 77:4

**limited**  5:1 45:4 68:6 116:19

**limiting**  21:25

**limits**  11:9

**line**  10:8,21 11:2 18:18 27:19 57:4 57:5 117:7 118:7 126:8 128:14 143:4

**lines**  18:8 25:4 91:20 127:24

**link**  82:25

**linking**  78:9

**list**  110:1,2

**listed**  22:21 78:24

**lists**  43:22

**litany**  4:16 32:11 62:11

**literally**  77:18 105:19

Veritext Legal Solutions
866 299-5127

[litigate - managing]

litigate 140:1
litigated 11:12
  12:2 31:21 55:22
  57:6 58:24 130:12
litigating 14:17
  33:13
litigation 1:4 2:4
  16:9 34:10,11
  38:16 49:13 50:19
  63:8,11 65:22
  67:22 102:12,24
  103:21 111:20
  130:5 132:25
  144:21 151:13
  153:2
litigations 104:6
little 43:23 75:3
  89:4 131:19 141:2
live 103:10
llp 3:4,9,16
load 59:20
loaded 59:21
locate 74:25
location 65:11
loeser 3:5 5:5,9,22
  5:24 6:14 34:1,8
  34:16 35:21 36:1
  36:4,9 37:3 41:18
  41:21 42:15 43:2
  48:10,12 54:19
  55:2,6 56:25
  62:22,24 63:22
  64:1 66:24 67:12
  68:18 78:5 88:22
  89:18 93:11,25
  98:25 99:3 100:11
  100:18 106:19
  116:15 136:11
  138:3,17,21
  139:11 144:23,25
  147:11 149:22

loeser's 146:24
log 22:2,13 37:13
  37:14,15 45:17
  51:14,17,19 52:21
  53:4 54:13 55:8,9
  67:18 72:10 83:12
  106:6 131:4 132:3
  132:11,13 133:12
  134:9,11 136:13
  137:11 138:10,17
  138:18 140:5,15
  142:18 143:1
  144:18 145:4,9,11
  145:15,25 146:1,2
  146:3,9,10,13,17
  148:23,23
logged 22:24
  43:16 55:14 57:7
  57:14 98:25 99:4
  135:12 137:8
  138:7,8,12,14
  144:2,4
logging 12:3 13:9
  14:10 51:1 57:17
  58:13,17,17 59:5
  137:17,23 138:2
  150:4,5,8
logical 93:3
logically 79:13
logs 12:16 16:1
  22:13 39:14 45:6
  45:7,9 47:4,7 51:1
  51:2,4,15 56:11
  116:2 133:8 134:5
  135:25 136:16,25
  138:24 139:21
  140:10 143:25
  150:7,9
long 6:5 8:18 9:3
  9:24 10:25 29:7
  37:5,17 38:6

48:19 108:25
  154:21
longer 28:24
  124:13
look 13:5 18:6,8
  18:18,21 19:1,2
  23:24 25:3 41:13
  45:6 47:1,4 48:5,6
  54:25 55:25 56:25
  59:13 69:25 71:6
  76:2,7,14 79:4,7
  89:10 92:16,18
  95:6 111:13
  123:17 142:16,22
  143:9 144:13
  145:15 147:20
  148:5 149:6,11
  150:15,17 153:9
  154:1
looked 63:17
  101:22 131:15,16
  132:13
looking 20:6 43:3
  43:5,6,20,24 46:16
  46:24 74:13 77:21
  78:16 81:17 82:1
  89:13 90:12 91:8
  92:12 95:10 99:20
  100:21 101:11
  109:14 116:11
  126:25 127:24
  129:2,14 130:15
looks 52:2 76:22
  78:11 79:17 84:23
  84:24 85:10,23
  86:14 89:24
loose 142:11
los 4:1
lose 103:5,23
lost 11:12 38:19

lot 14:13 25:25
  30:19 34:2 39:24
  52:2,13,22 62:9
  64:4 71:14 72:7
  72:19 77:7,23
  92:25 98:11
  101:15 105:6
  106:5 126:2 129:5
  132:16 139:11
  144:9 148:24
  152:18
lots 100:7 119:9
love 88:16
lweaver 3:13
lying 151:14

m

madness 104:13
magistrate 20:22
magnitude 98:20
mail 4:17 31:11
  50:20 57:14 84:23
  96:22 100:7 106:7
  142:11 143:10
  144:1,19
mailbox 97:7,7,15
  97:16 114:19
mailed 82:8
mails 13:12,14
  52:17 57:6,13
  85:20 98:5 100:4
  142:7 144:3,9
major 103:20
majority 31:16
  42:2,5,21
making 5:25 17:3
  50:7 53:2,3
  113:13 125:21
managed 65:12
management 88:2
managing 67:21

[manner - methodology]

**manner** 100:10
**mapped** 146:18
**martie** 3:17 14:3
  22:12 23:23 28:23
  108:24 136:22
  139:18 140:8
  149:16
**massive** 72:10,11
  72:13 79:20
**master** 1:13 2:23
  4:4,13 5:10,15,22
  5:25 6:11,19 7:17
  8:12 10:3,14 11:8
  13:16,20 16:21
  17:2 18:5,14,18
  19:13,21 20:9,13
  23:19 24:13 25:2
  25:18 26:11,16,20
  26:25 27:9,16
  29:12,16 30:12,22
  31:1,25 32:7,14
  33:9,18,24 34:1,4
  34:14 35:17,24
  36:5,11,13,17
  41:11,19,25 42:18
  43:3 44:8 45:22
  47:17 48:5 54:17
  54:20 55:4,19
  57:2 59:9,23 60:6
  60:25 61:18,20,25
  62:21 63:20 66:23
  66:25 70:15 73:15
  74:7 75:2,15 78:3
  78:6 79:15 80:6
  80:15 81:3 82:2
  82:10,16,21,25
  83:5 84:19 85:22
  86:6,11 87:8 88:8
  88:21,23,25 89:8
  89:12,20 90:8,8,11
  91:7,13 92:6,22

93:4,15,18 94:4
  95:4,13,15 96:3,12
  97:18 99:6,23
  100:11,15 103:25
  106:15 108:2
  109:16,24 110:12
  110:19,25 111:6
  111:22 112:2,14
  113:20 114:2,12
  115:10,12,17
  116:1,14,17 117:5
  117:20 118:2,19
  119:2,11,16 120:9
  120:13,24 121:20
  121:24 122:2,9,13
  122:15,20 123:2
  125:1,9,23 126:13
  126:24 127:15,19
  127:21 128:8,17
  130:1,7,25 131:9
  131:13,15,24
  132:12,18 134:25
  138:6,9,19 139:6
  139:13 140:12
  141:5 142:2
  143:13 144:16
  145:20,21 146:4
  146:12,16,20,23
  147:14,22,24
  149:20,22 154:11
  155:7,20 156:1,3,9
**material** 6:21 9:25
  16:20 26:2 28:15
  40:5 71:16 72:8
  77:3 84:9 107:23
  128:21 148:25
  150:22
**materials** 4:15 6:5
  7:1,2,4,10,15,17
  9:8 11:9 12:7,11
  12:15,22,24 14:14

14:20 15:14 16:1
  16:4 23:8 24:17
  26:12 27:5 32:25
  33:16 38:3,13,24
  39:9,22 41:10
  49:16 50:9 51:14
  55:9,14 58:2,3,5
  70:4 71:21 73:6
  77:23 90:25 98:9
  100:23 108:1
  128:1 129:7,21
  130:12,18 149:3
  152:19
**math** 81:11
**matt** 3:10
**matter** 38:14
  49:11 53:5 54:15
  63:1,10 68:1 69:8
  77:6,18 85:17
  100:24 107:8
  151:11
**matters** 68:2
  102:23
**mdl** 37:24
**mean** 19:4 25:22
  30:15 32:11 34:4
  35:21 39:8 47:16
  47:17 63:2 67:16
  68:9 76:12 85:21
  92:19 96:1 103:6
  104:23 108:7,11
  108:14,19 110:16
  110:17 112:2,13
  114:2 116:7,10
  119:17 120:9,17
  125:21 127:9
  129:22 130:11
  133:3 138:7
  141:21 142:15,17
  142:22 143:17,25
  144:22 146:16

**meaning** 26:4 77:5
  105:17
**meanings** 144:21
**means** 26:3 51:5
  79:10 143:7 148:9
**meant** 7:4 55:20
**mediation** 23:16
**meet** 7:20 53:8
  109:21 111:24
**meeting** 52:17
  148:3
**meetings** 52:24
  58:4,4
**melamed** 3:10
**members** 122:22
**memo** 28:7 44:11
  46:14 47:21 63:18
  64:10 65:18 93:17
  93:18 95:22
  101:22 135:15,15
  144:19
**memoranda** 8:1
  135:3,6,7,12,17,23
  136:6 141:18
**memorandum**
  44:18 47:24 48:1
  60:10 61:5 93:21
**memos** 8:23 9:3
  44:13 61:10 63:2
  63:17 69:9,11,19
  69:22,24 73:17
  89:5,6 92:10
  95:24 102:8 107:2
  139:2 142:7
  153:11
**merits** 155:4
**met** 16:7
**metadata** 143:4
**methodology**
  60:16 91:22 92:4
  92:9

Veritext Legal Solutions
866 299-5127

[methods - nutshell]

**methods** 125:17
**million** 81:12
  98:14
**millions** 21:21,22
  21:22 28:6,6
  77:10,10,19,19,19
  99:9,13,13 103:6
  113:23 148:13,13
  148:13
**mind** 50:17 100:13
  101:7 108:2
  147:18
**minimize** 35:20
**minimum** 148:20
**minute** 23:25 37:1
  37:2 74:24 147:12
**minutes** 62:24
  148:4
**miraculously**
  48:20
**misconduct**
  102:13 103:1

**misleading** 34:12
  34:13
**misread** 96:19
**mistake** 124:9
**misuse** 54:4
  151:12
**misused** 66:3
**mobile** 64:10
**mockery** 19:7
**model** 89:15,24
**modern** 50:19
  153:1
**moment** 14:16
  36:19

**month** 9:6 33:15
  108:3
**monthly** 108:4
**months** 14:9 22:23
  22:23 78:12 109:2
**morning** 5:9 55:21
**motion** 7:11 13:13
  13:20 15:18,21
  22:20 51:12 71:25
  118:5 140:7
**motions** 14:6,6
  15:13 32:25,25
  56:1 74:10
**move** 33:15 52:18
  68:24 70:13
**moved** 58:4,9
  150:11
**moving** 4:14
**multiple** 12:5
  98:15
**muted** 119:18

**n**

**name** 81:8 116:8
  134:6 137:7 144:2
  157:14
**narrow** 11:24
  29:25
**narrowed** 30:3
**narrowing** 20:10
  20:11
**native** 78:9 88:4
**nature** 49:21
  100:6
**necessarily** 16:10
  16:11 112:16
  113:7 124:21
  142:8 148:18
**necessary** 121:6
  147:2 149:4,5,9
**need** 4:7,11 5:21
  6:3,3 14:15,23

20:19 23:8,11,12
  23:25 24:14 25:23
  28:25 35:3,24
  36:4,12,19,21 37:1
  47:6,8 52:14,15,16
  67:4 69:12 70:1
  71:17,18 73:11,22
  74:5,24 77:17,24
  77:25 84:9,15,15
  92:20 102:19
  105:2 106:11
  113:7 117:12
  120:12 123:3
  124:9 138:22
  139:14 140:4,4
  144:13 145:15
  148:22 155:16,18
**needed** 71:13
  99:17 121:15
  132:5,9
**needs** 24:12 35:2
  69:22 123:12
  145:9,14 148:6
**negligence** 154:21
**neither** 9:5 157:10
**never** 37:25 90:13
  90:18 112:18
  142:8 152:11
**new** 3:19,19 15:18
  17:19 33:14
**news** 138:10
  154:11 155:7,9
**night** 105:15
**node** 42:9,24
  43:18
**non** 12:20,20,21
  15:9 16:4 18:23
  21:10 22:11,14,16
  22:17 26:5 28:8
  33:22 41:1 67:22
  70:23 71:4,7

72:21 73:2 92:14
  115:9 116:11
  118:12 119:13
  127:10 128:12,13
  128:18 129:16,17
  129:17 130:23
  133:19 134:1
  143:21 148:9
  151:2 152:4
**nonlawyer** 24:25
  26:10 152:10
**nonlawyers** 17:23
  17:24,25 115:5
**nonsense** 35:13
**normal** 65:22
**normally** 64:21
**north** 13:6
**note** 8:19 16:2
  81:19,24 155:10
**noted** 54:16 58:9
  99:23 109:25
  126:24
**notes** 65:14
**notion** 37:15 49:2
  109:10
**november** 8:22
  11:20
**nullity** 72:4
**number** 11:10
  39:18 43:21 69:2
  72:10,11 79:12
  81:9,24 87:21
  88:17,19 92:15
  110:17,17,22
  114:24 115:3
  122:7,10,12 127:3
  127:10 148:20
**numbers** 103:7
  112:11 127:7
**nutshell** 6:18

[o0o - overkill]

**o**

**o0o**   1:2 2:2 3:21
  4:3 156:15 157:3
**oakland**   3:12
**object**   108:16
**objecting**   97:22
  98:2,13
**objection**   108:15
**objections**   30:8,11
  38:13
**objective**   11:1
**obligated**   109:23
**obligations**   29:21
  29:25
**observation**   77:22
**observing**   124:12
**obtain**   33:4
**obviously**   8:25
  16:9 18:3 20:3,17
  20:21 21:2,4 26:6
  34:2,10 37:19
  39:4 45:4 48:18
  49:19 50:5,14
  51:17 61:9 63:3,8
  64:8,15 65:15,22
  69:17,24 71:20
  72:11 96:25 107:8
  108:17 125:13
  130:11 134:19
  135:5 153:15
**occurred**   37:11
**offending**   84:14
**offer**   151:18
**offered**   16:13,24
  19:17 20:4 26:22
  38:25 39:10,22
  54:9
**offering**   56:4
**offhand**   110:17,22
**oh**   29:13 42:16
  43:16 57:22 67:4

103:14 117:4,12
  122:18,18
**okay**   5:22 6:14
  20:11 26:25 27:2
  36:12 64:3 67:5
  75:2 82:6 83:7
  89:21 92:7,22
  96:16 100:18
  102:6 112:6 116:1
  119:11 120:13
  121:23 126:25
  127:20 128:25
  138:19 139:17
  147:23 153:10
**omnibus**   15:14
**once**   84:13 85:2
  96:6 97:23 116:5
**onerous**   28:13
  148:24
**ones**   40:16 69:23
  82:5 89:10 120:8
  131:25 139:8
**ongoing**   120:3
  121:8
**online**   65:11
**open**   12:24
**operating**   10:15
**operation**   100:10
**operative**   56:3
**opportunity**   29:18
  91:8 154:7
**opposed**   38:10
  108:20 118:18
**opposite**   28:10
**ops**   69:16
**oral**   142:12
**order**   4:23 6:24,25
  7:11,14,14,25 8:10
  8:25 9:8 10:2,7
  11:3,8,10,13 12:9
  12:14,18 13:17,22

13:25 14:1,3,5
  15:12,14,19,21,25
  17:18,21 18:4,6,7
  18:8 19:7,8,11
  20:4,23 21:3,9,10
  21:14,23,24 22:16
  22:22 23:1,24
  24:17,23,24 25:4
  25:14,16,22,24
  26:2,7,8 27:4,6,23
  28:1,2,11,19 29:4
  29:24 30:5 31:13
  31:14 32:20,20,23
  33:6,14 34:16,19
  35:5 37:21 38:10
  38:23 39:4,8,10,16
  39:23 49:3,5,10,15
  49:23 51:5 53:11
  53:12 54:20,22
  55:1,2,3,5 56:2,2,3
  56:20 57:4,10
  58:10,15,19,21,25
  59:1,2 62:13,16
  63:13 66:16 69:1
  69:3,6,11 70:12
  71:6,8,11,23 72:1
  72:7,17,24 73:6,13
  77:5,15 83:10
  84:5,6 86:24 88:7
  101:2 102:7
  105:10,11 106:10
  107:3,17,23
  108:15,18,20,22
  111:21 118:5,5,7
  121:4 122:4
  127:18,19 130:23
  132:9 133:1,5,18
  133:24 134:2,12
  134:16 136:21
  140:2 145:2,10,25
  147:9,11 148:8,10

148:13 149:25
  150:13,17,19
  152:24 153:25
**ordered**   12:23
  13:9 16:12 21:1
  21:13 22:3,9 26:3
  29:1 32:4 38:23
  53:7 55:16 56:15
  56:16 79:14
  106:21 141:19
  148:18 149:2
**orders**   13:17
  20:22,24 54:22
  56:6,23 69:3
  139:6 152:15,16
**origin**   139:22,25
**original**   86:10
**orin**   3:16 23:20,22
  36:9 45:18,19
  89:18,19 131:22
  136:8 138:23
**orin's**   48:13
**osnyder**   3:20
**outcome**   74:2
  157:12
**output**   90:1
███████████████
█████
**outs**   146:14
**outside**   53:14
  77:20 134:1
  137:19
**outstanding**   56:1
  56:1,23
**overall**   60:7 93:19
  122:7
**overdue**   6:5 9:3
**overinterpreted**
  142:1
**overkill**   148:15

Veritext Legal Solutions
866 299-5127

| p | | | |
|---|---|---|---|
| **p.m.** 156:14 | **particularly** 40:15 | 118:20 119:12 | **place** 6:4 24:3 79:2 |
| **page** 18:6,8 23:24 | 64:4 73:18 77:21 | **perceive** 59:7 | 157:7 |
| 41:16,18 46:24,25 | 84:13 | **percent** 45:16 | **places** 117:6 |
| 48:6 59:15,15,20 | **parties** 4:22 7:16 | 113:17,17 | **plain** 25:25 |
| 60:2,20 74:13,23 | 15:3 19:17 26:21 | **percentage** 108:19 | **plaintiffs** 3:2 4:25 |
| 75:19,19,25 78:22 | 27:4 34:10 36:21 | **perfect** 42:18 | 5:6 7:6 10:11,24 |
| 84:20 85:2,4 90:9 | 38:4 41:7 47:7 | 47:17 147:15 | 11:21 12:6 14:11 |
| 91:12,15 117:6,7 | 50:13 53:7 55:21 | **perfectly** 47:12 | 14:12,18,23 15:13 |
| 118:5,7 127:16,17 | 56:4 57:6,18 | **performed** 51:20 | 16:3 17:7 21:12 |
| 127:24 150:17,21 | 58:11 63:6 66:6 | 115:14 | 22:6 23:12,13 |
| 151:6,7,7,9 | 87:10 101:17 | **period** 37:17 | 24:17 25:13 26:6 |
| **pages** 21:22 59:14 | 102:25 103:1 | 47:14 81:13 | 27:10,12,17,20 |
| 77:10 88:16,16 | 113:2 116:16,19 | 100:21,22 | 29:17,18,18 30:17 |
| 103:6 148:14 | 116:22 117:16,20 | **permission** 65:8 | 32:24 33:3,14 |
| **panoply** 97:2 | 118:15 119:4 | 81:10 82:3 123:24 | 37:24 40:2,5,19 |
| **paper** 47:9 | 126:14,15 137:4 | 124:1 | 41:13,14 46:1 |
| **papers** 8:21 47:2 | 147:2,5 154:7 | **permissions** 65:1 | 50:10 51:11,16 |
| 77:10 98:21 100:1 | 156:10,11 | 65:2,7 81:8 | 52:16 53:25 55:11 |
| **paragraph** 20:1 | **parting** 145:8 | **person** 35:19 | 57:19 58:7 59:2 |
| 42:2 48:6 150:21 | **partners** 120:11 | 116:9 | 71:12,18 72:19 |
| **parallels** 111:16 | **parts** 46:8 141:5 | **perspective** 54:13 | 73:24 83:24 86:9 |
| **park** 3:18 | **party** 8:7 9:11,15 | 146:2 | 89:6 92:11 93:10 |
| **parse** 155:3 | 26:1 64:19 97:4 | **petabytes** 81:18 | 98:12 104:19 |
| **part** 19:3,4 38:15 | 97:16,24,25 102:1 | 81:18 | 105:17,19,21 |
| 49:12 54:10 62:19 | 115:8,15 118:23 | **phase** 54:2,6 55:8 | 106:1 108:8 109:9 |
| 77:1 79:6,7 80:9 | 121:15 126:22 | 88:24 93:9,9,9 | 111:6 126:19 |
| 80:11 92:5,9 | 157:11 | 94:5,6,8 96:12,14 | 127:23 128:8 |
| 97:13 115:18 | **party's** 25:8 | 96:14 97:24 110:8 | 129:14 131:3,10 |
| 117:13 119:20 | **pass** 5:21 68:9 | 110:13,19 113:6 | 131:22,24,25 |
| 121:13 129:2 | **passage** 44:16,22 | 114:7,11,11 118:1 | 134:4,8,22 137:17 |
| 138:2,23 143:14 | **passed** 9:6 | 121:13 125:14 | 139:21 141:1 |
| 143:15 | **passion** 72:20 | **phased** 93:7 | 142:25 143:18 |
| **participate** 69:4 | **pay** 155:11 | **phases** 24:18 40:5 | 148:6 149:6,21 |
| **particular** 5:12 | **pdf** 85:24 86:19 | 40:6,9 93:12 94:1 | 150:22 152:22 |
| 16:14 17:8 19:18 | 87:13,21 | 112:13 115:6 | **planning** 130:4 |
| 26:22 27:7 38:21 | **pdfs** 88:5 | 150:23 | **platform** 84:1 |
| 39:1 53:25 62:18 | **pending** 56:23 | **pick** 51:16 | 102:4 104:8,8 |
| 73:22 84:11 85:13 | **people** 31:5 36:19 | **picked** 52:20 | 151:16 |
| 92:2 110:23 125:4 | 42:19 64:6 85:3 | **piece** 153:20 | **plausible** 102:19 |
| 152:1,17 | 100:5 103:9,15 | **pieces** 46:3 | **play** 9:18 25:12 |
| | 111:23 117:19 | | 29:8 |

**played** 58:18
**player** 147:1
**please** 4:8 36:10
  85:1 91:7 124:1
  135:8
**plus** 11:20
**point** 20:15 23:23
  24:23 26:5 37:22
  50:7 53:2 62:6
  70:18,21 71:23
  77:13 78:11 81:5
  83:8 85:19 86:20
  86:25 90:13 99:25
  112:4 120:5 132:4
  133:5 136:7
  138:18 140:11
  144:11,15,21,25
  146:24 149:10
  154:18
**pointed** 40:22
  59:14
**pointing** 97:9
**points** 5:12 44:3
  100:12 107:12
**police** 102:14
**policies** 104:9
**political** 65:14
**pops** 76:6
**port** 92:19
**portions** 30:9
**position** 4:25 5:2
  6:18 7:21 8:21
  11:2 20:18 21:12
  25:8 30:2 33:19
  33:20 38:18
  108:17
**positions** 34:11
  91:9
**possession** 124:13
**possible** 5:1,1
  101:11 147:7

**possibly** 153:5
**post** 64:12
**potential** 53:17
  54:3 151:13
**potentially** 60:14
  61:9,10 65:1
  91:21 94:12
**practical** 108:6
**practices** 83:23
**preceded** 107:17
**precisely** 6:9 8:13
  14:22 66:3
**preference** 65:14
**prepared** 8:1 10:5
  12:19 16:4,8
  17:23 48:3 130:18
  133:19,25 134:2
  137:2,14,19
  143:25
**preparing** 47:21
**presence** 65:11
**presentation** 6:6
  6:12 10:6,12,13
  18:15 20:14 34:13
  35:1,15 36:2 45:3
  46:2 63:24
**presentations** 63:7
**presenting** 10:16
  10:16
**presents** 10:18
**presumably** 15:18
  79:5 103:6
**pretty** 22:4 30:16
  39:25 91:1 104:16
  116:8 133:3
  149:12
**previously** 9:16
  57:7 126:20
  142:25 145:12
  146:7

**primary** 60:12
**printed** 125:10
**prior** 14:6 27:25
  56:6,23 62:4
  83:23
**prioritization**
  60:15 91:22 92:3
**privacy** 1:3 2:3
  64:25 65:3 118:20
**private** 106:1
**privilege** 12:16
  15:5 16:1,16,19
  17:19 18:22 21:5
  21:6 24:10 28:16
  32:2,3 38:19
  40:25 41:4 45:5,7
  45:9,17 51:14
  56:11 87:3 105:25
  106:14 107:18,21
  108:1,11 109:11
  109:18 111:17,20
  116:2,7 121:1
  128:2,20 129:10
  130:5,16 131:4,5
  132:3,10,13 133:8
  133:12 134:5,9
  135:25 136:16,25
  137:11 138:17,18
  138:20 139:20,21
  140:3,5,10,15
  143:6 144:18
  145:6,25 146:1,2,3
  146:8,9,9,13,17
  147:1,6 148:23,23
  151:1,25 152:3,10
  152:15 154:22
  155:3
**privileged** 7:7
  11:6 14:14 15:9,9
  15:10 16:14 17:9
  17:12,14 19:10,19

20:3 23:8 26:23
  31:20 34:23 39:1
  48:23 49:25 71:16
  77:23 106:7,21
  107:5,23 120:22
  121:5 129:7,9
  133:22 143:10
  144:9 145:12
  148:24 153:5
**privileges** 16:17
**probably** 6:8
  37:22 45:16 60:25
  88:14 98:14
  113:23 141:20
**problem** 103:16
**problematic** 40:17
  64:9 102:2
**procedural** 13:7
**procedure** 29:21
  32:18 33:4
**proceeding** 15:23
  28:1
**proceedings** 1:12
  105:10 111:1
  156:14 157:6,11
**process** 6:22 11:8
  14:17 17:16 22:6
  28:22 29:6,8,10
  35:8 37:11 39:12
  46:7 51:7,9,12
  54:13 56:8 61:1
  67:22 69:24 70:19
  72:3 74:6,8 80:10
  80:12 111:12
  114:7,17,22
  116:21 124:11
  125:8 140:22
  141:11 146:17
  153:25
**processes** 56:13

Veritext Legal Solutions
866 299-5127

[produce - question]

**produce**  6:25 7:17
7:24 9:4,20 16:15
18:20,22 19:15
20:18,22 21:1,13
26:17 27:23 28:8
28:19 29:1,11,22
30:5 34:20 37:19
38:23 39:21 40:23
40:24,25 54:9
56:5 62:16 69:9
71:3 72:7 73:6,17
86:22 105:11
106:1,10 107:9,24
108:15,19,22
109:6,7 113:1
118:9 130:22
133:18 134:13,19
135:6,8 139:6
145:25 146:5,7
148:10,19,21
149:3,5 150:25
151:1
**produced**  6:5 8:11
8:24 9:12,16
12:22 13:2,14
16:1,13 21:4,17
22:4,17 23:2 26:3
26:7 32:5 37:19
56:12,18 57:11
61:6 69:12,19
70:1,6 72:22
79:11 84:5 94:25
95:3,5 97:17,25
105:25 109:12
113:1 114:7,19
122:3 132:6,7,10
136:12,20 138:13
138:16 139:8
141:19 142:19,24
146:10 153:12

**producible**  18:1
20:2,5 25:11
31:21 33:7 71:9
**producing**  38:13
74:3 88:9 90:16
98:1 115:5 144:12
149:8
**product**  7:3,5 15:5
15:7 16:11,17
17:14 21:7 24:11
30:8 38:14 51:25
66:17 87:1 106:14
106:22 107:4,19
128:15,21 129:11
129:22,25 130:5
130:13,16,18
143:21 145:5,13
150:20 151:5,8,20
152:14 153:6,7
**production**  7:14
9:1,8 12:14 20:20
21:11,25 24:10
25:15,16 26:4
27:5 28:22 29:2,4
32:22 33:1 39:9
41:6 53:9 59:25
61:22 63:3 71:22
102:7 105:18
107:1 115:7 140:9
148:21 152:15,17
**productions**  18:4
22:9,11,12,12
59:10 105:17,24
109:9
**profess**  146:14
**professionally**
109:23
**professionals**
64:16 65:19
103:10

**profile**  1:4 2:4
**project**  88:2 100:9
**promoting**  76:5
78:10
**properly**  104:8
**proportionality**
21:23,24 24:11
28:3 71:13 73:12
73:23 77:6,18
84:7 98:3 101:1,2
101:3 105:10
107:21
**proportionate**
28:5 31:24 72:16
**propose**  28:21
**protected**  7:5
16:11 34:23
106:22 118:13
128:1,19 136:2
153:7
**protection**  66:17
66:19
**protections**  87:2
**protocol**  119:20
146:13,17 147:1
**proves**  26:4,5
**provide**  24:8,24
44:2 50:24 51:14
58:11 69:5 82:10
90:1
**provided**  43:7
46:15 47:16 51:15
51:21 58:20 60:17
82:5 101:20 110:2
110:24,25 122:2
131:6 133:9
145:10
**providing**  141:11
**proving**  16:8
**public**  96:25
151:15

**publishing**  60:11
**pull**  41:22 74:21
79:1,6 98:8
**pulled**  79:9 81:20
124:8
**pulling**  79:19
95:20
**purported**  111:13
**purpose**  4:5 7:4
16:10 38:21 52:4
67:22,22 87:4
123:25 124:1
126:8 151:15
**purposes**  5:7
44:15 70:13 121:4
125:25
**pursuant**  122:3
**push**  83:3 105:22
**pushed**  109:10
**put**  6:6 10:12
21:18 36:1 37:8
49:20 76:19,23
85:17 87:22 90:2
101:21 106:12
137:25
**puts**  54:13

| q |
|---|

**queried**  82:15,19
82:21,22 119:21
**query**  43:11,19
81:25
**querying**  124:12
**question**  6:16 8:14
16:22 18:5 24:16
29:13,16,20 30:13
32:1,9 34:5 41:9
41:11,20,24 44:5
44:21 45:25 54:18
54:18 56:21 57:2
59:12 61:18 66:23
68:23 71:10,11

[question - rehash]

| | r |
|---|---|

74:8,11,15 75:14
78:5,7,17 79:17
82:8 85:5,22 88:1
88:8,12,23 91:10
92:24 95:18 99:7
99:10 104:2
106:18 110:11
111:7 112:7 113:7
113:8 115:11,13
115:18,19 118:14
118:16 120:2,18
124:14 126:16
127:15 131:1,22
136:23 138:5,6,6
139:4,17,20
140:13,23 141:1,6
141:7,12 152:7
**questioning** 126:9
**questions** 5:6,8,11
5:13 14:22 23:21
27:12,17 29:17
34:7 42:12 70:16
73:16 78:7 87:9
100:14,15 103:3
115:17 123:10
127:22 131:2
154:9,12
**quick** 54:17,18
61:8 116:8
**quickly** 46:21,22
84:20 87:23 111:8
149:12
**quite** 44:17 74:9
79:13
**quizzes** 102:4
**quote** 14:13 15:3
38:24 42:7 50:8
52:12 107:15
129:7,9 133:20

**r**

**rabbit** 104:1
**raise** 136:7 154:19
**raised** 69:14
**ran** 89:24
**random** 144:8
**randomly** 149:11
**range** 88:19
**rationale** 106:25
**rationalize** 11:25
**reached** 69:18
**read** 8:25 13:23
18:6 19:2,8,22
24:13,15 25:3,24
26:11 30:15 32:7
33:24 42:1 54:21
62:8 67:3 75:7
78:1 87:14 93:16
116:18 125:10,24
140:17 150:3
153:24
**reading** 26:8 31:3
31:13 44:16 74:9
75:22 77:14 102:2
125:6 150:2
**ready** 109:7
149:21
**real** 87:23
**realistically** 109:3
**realized** 14:19
**really** 8:22 9:9,18
23:11,12,14 28:10
34:13 35:3,4,11,15
39:8 41:5 46:21
46:22 49:8,10
51:7,10,23 52:9
54:12 55:12,15,19
56:7,8 57:1,2,12
59:7 61:7 62:25
62:25 63:4 64:8
64:18 68:9 77:24

77:25 83:21 93:2
100:2,19 101:6,18
101:23 102:16
103:4,8 111:7
133:16,21 136:10
139:9 142:6
143:24 145:2
150:3,14 153:10
154:5
**reason** 16:14,24
16:25 17:8 19:18
24:3 62:4 89:12
**reasonable** 30:1
**reasons** 38:25
93:19,22 98:4
107:7 128:22
**rebuttal** 86:21
**received** 86:18,19
87:25 88:5 90:13
**recognition** 15:8
**recognized** 24:5
138:1
**recommendation**
124:15,16
**recommendations**
124:24,25
**reconsideration**
15:21
**reconvene** 149:9
**record** 4:12 10:7
10:25 13:5 20:20
36:15,16,18,25
37:6 52:9 89:17
89:20 91:9 107:14
108:16 109:25
154:3 155:11,17
155:21 156:6,8
**records** 150:2
**redact** 20:7 21:5
106:6

**redacted** 106:20
**redactions** 107:24
**refer** 123:16
**reference** 48:15
89:14 126:21
131:3 141:14
**referenced** 21:8
23:4 71:1 80:9
89:9 140:14
**references** 132:11
135:19
**referencing**
118:15
**referring** 13:23
80:14 89:7 92:1
110:23 117:25
118:3 121:12
130:14 137:15
139:21 140:24
**refers** 40:4 57:12
**reflect** 25:8 50:15
50:16 96:2 98:11
145:9,16 146:10
**reflected** 55:13
77:9
**reflection** 80:10
**reflex** 80:17
**refuge** 33:4
**refused** 40:23
**refuses** 18:22
40:25 151:1
**regard** 52:6 152:1
**regarding** 18:3
41:15 44:22 88:12
124:19 126:19
**regardless** 49:16
53:17
**regular** 106:2
**regulatory** 133:1
**rehash** 24:15

Veritext Legal Solutions
866 299-5127

**[reiterate - resolved]**

**reiterate**  150:1
**reiterated**  53:13
**rejected**  12:2 13:4
  27:21,21 38:12
  48:19 67:25 72:23
  106:25 145:7
**rejection**  15:7
**relate**  50:15 67:13
  68:11 138:25
**related**  4:15 8:6,8
  9:11 18:24 37:24
  41:2 44:22 47:24
  48:1,2 73:2 96:10
  122:6 137:7
  139:23 151:3
  157:11
**relatedly**  134:4
**relates**  11:22 29:2
  124:1 126:6
  132:23
**relating**  7:10,15
  8:5 11:5 12:10
  13:8 24:5 46:3,12
  47:15 50:4 57:20
  69:15,16
**relationship**  65:12
**relevance**  13:11
  28:3 44:17 71:10
  82:20 107:20
**relevant**  12:6
  14:13 23:7 40:16
  44:25 47:24 52:13
  56:7,8 69:17
  71:15 83:22 85:16
  96:15 98:9 104:7
  117:4 125:2 129:6
  152:2
**relief**  5:2 11:7
  15:18
**religious**  65:13

**relying**  17:3
**remarks**  127:23
  154:5
**remember**  38:17
**remind**  35:18
**reminding**  146:25
**remove**  29:25 30:3
**removed**  106:20
  107:2,10
**repeat**  4:7
**repeatedly**  40:19
  143:18
**replicated**  86:19
**reply**  70:16
**report**  31:14 43:17
  44:3 46:19 47:2
  52:19 59:17,19
  60:11 61:16 67:2
  74:12,13,16,19
  76:9,21,23 77:20
  77:20 78:1,1,4,16
  78:22 79:9 80:17
  80:21,21 85:17
  89:13 91:25 92:2
  93:13 96:10,14
  101:11 103:11
  106:8 112:17,22
  113:10 123:5
  124:18,19,21
  130:24 132:22
  133:4,20,24 135:4
  136:1 137:12
  140:14,16,20,25
  142:8,9,24 143:2,3
  143:5 144:5,17,20
  145:18 153:13
**reported**  1:22
**reporter**  4:5,6
  36:7,12,14,24 90:6
  118:24 155:16
  156:7 157:5

**reporter's**  1:12
**reporting**  37:6
  79:7
**reports**  8:3,3
  12:19 17:23 18:22
  19:16 21:19 22:1
  26:18 27:23 28:12
  28:20 29:9 30:17
  32:5 41:1 42:1
  48:3 62:16,17
  65:25 72:8,17
  73:9 74:3,8 77:1,6
  77:11,12,15 78:25
  79:11,14 84:3,8
  85:8 86:23 88:9
  88:15,17,20,24
  89:3,6,21,25 90:14
  90:16 91:1,6 92:8
  92:10 93:3,5 94:7
  94:10 95:6 96:1,5
  98:7,10,11,13,22
  99:16,22 100:2
  101:8 104:25
  105:1,3,7 106:4,4
  106:10,12,19
  107:22 108:16,18
  112:7 113:22,23
  113:25 115:7
  118:10,11 121:3
  123:8 127:2,12
  128:4 129:16
  130:1 132:5,7,9,11
  133:6,9,10,11,19
  133:25 134:17
  135:9,19,22
  136:12 137:13,19
  137:21 138:2,7,11
  138:15,15,25
  139:7 140:25
  141:3,3,4,8,10,13
  141:14,18,21,24

  142:1,6,18 144:5
  144:10 148:9,18
  148:19,25 149:4,5
  151:1 152:17
  153:22
**repositories**  82:24
  83:2
**represent**  113:24
**reproducing**
  105:16,17
**request**  11:25
  14:18 26:9 27:7
  32:21 33:15,16
  42:5,14 50:10,11
  52:15 82:3 90:17
  125:15 126:18
**requested**  37:12
  43:18 51:11,13,13
**requesting**  125:18
**requests**  13:3 26:1
  29:24 32:11 43:15
  47:4 64:23
**require**  8:15,25
  100:4 112:3
**required**  6:25 7:14
  8:14 13:14 34:20
  73:14
**requires**  34:11
  39:20
**requiring**  71:21
  102:7
**reread**  112:9
**reserve**  155:18,23
**resists**  118:10
**resolution**  57:18
**resolve**  147:6
  155:13
**resolved**  13:13
  15:13 22:19,20
  35:12 56:10 58:24
  130:21

Veritext Legal Solutions
866 299-5127

[resolves - sample]

**resolves** 58:19
  152:7
**resolving** 15:15
  22:21 56:14 58:18
**resources** 109:20
**respect** 24:10,11
  94:9 105:2 135:2
  141:23
**respectfully** 29:5
  120:16
**respond** 29:19
  34:2,6 44:7 48:13
  48:14 66:8 90:17
  90:22 100:12
  104:3 139:18
  145:19
**responded** 68:17
  88:6
**responding** 126:10
**responds** 76:25
**response** 41:13,15
  45:2 67:9 75:6
  125:15 132:25
  145:21,24
**responsible** 31:2
**responsive** 29:22
  29:23 32:10,16
  69:11 130:2,3
**rest** 9:2 19:23
  39:14 69:12 75:11
**result** 21:25 57:17
  124:22
**resulted** 38:2
  58:10,14 107:1
  111:20 150:6
**resulting** 6:23
  150:13
**results** 94:10
**retained** 44:14
**retrieved** 42:6,23

**retrospective**
  100:20
**return** 62:5
  145:22
**revealed** 54:14
  65:25
**reveals** 66:1
**revenue** 62:10
**revert** 147:4
**review** 12:4 13:10
  22:15 23:1,6 28:4
  28:16 33:23 51:21
  54:10 57:9 69:22
  70:19 71:8 72:3
  75:5 77:18 80:10
  80:11 87:3 92:20
  105:24 106:6
  107:25 109:11,13
  109:18 111:16,24
  116:8 130:15
  132:10 134:9,11
**reviewable** 75:18
**reviewed** 14:11
  19:9 52:3,22
  57:13 58:2 70:23
  78:22
**reviewer's** 80:10
**reviewing** 105:1
  149:14
**revisit** 121:22
**rfi** 94:10 96:23
  112:25 114:17,22
  123:18,21,22
**rhetoric** 72:20
**right** 4:13 14:8
  17:10 18:21,25
  19:25 20:16 21:5
  22:2 25:19,21
  26:24 29:22 30:2
  33:18 42:14,20
  43:14,25 44:11

45:5,12,23 46:2,8
  47:12 48:10 56:14
  60:3,6,9,9 62:8,15
  62:21 63:24 75:19
  75:21 76:3,3,15,15
  76:16 78:4,6
  79:24 80:9,16,25
  81:6,18,25,25
  84:22 87:24 92:9
  92:12,21 93:8,20
  93:20,24 95:1,9,12
  97:3,4,6,12 98:18
  99:14,23 105:24
  107:25 108:3
  109:7,19,21 110:4
  110:20 111:13
  113:4,7,13 114:14
  115:23,25 116:8
  117:8 119:24
  122:5 123:15
  127:14,25 128:7
  128:11,25 129:3
  130:10,20,25
  132:2,17 135:18
  138:13 139:23
  141:15 142:15
**rights** 155:18,24
**ripe** 50:22
**risk** 60:15,15
  91:16,21,22 92:3
  133:2
**risks** 11:16
**rmr** 1:24 2:25
  157:22
**road** 111:9
**rohrback** 3:4
**role** 29:7 58:17
**roll** 98:9
**rolled** 51:4 80:19
  98:6

**rolling** 5:14 28:21
  28:21 106:11
  109:6 148:20
**room** 36:21
**root** 151:16
**rough** 156:12
**roughly** 127:7
**round** 89:2
**rounding** 122:16
**rounds** 6:23
**row** 132:21
**rpr** 1:24 2:25
  157:22
**rs** 76:6
**rubric** 130:24
**rule** 7:4 10:15
  31:17 51:24 63:12
  102:21 103:19,22
  140:4
**ruled** 32:24 51:6
  53:23,23 73:19
  98:3 105:16
**rules** 29:21 32:9
  32:17 33:4 63:14
  84:1 154:4
**ruling** 13:13 15:2
  16:18 17:9 87:6
  107:14 128:5
  129:16 145:13,14
  145:16 150:6
  153:3
**rulings** 152:14
**run** 33:5 70:4
**running** 70:3
**runs** 21:14

**s**

**sally** 31:11
**sample** 12:16 13:9
  14:11 17:6 30:17
  42:1 149:10

Veritext Legal Solutions
866 299-5127

[sampled - sides]

sampled  62:14
samples  39:13
sampling  12:3
  22:24 24:3,7
  61:13 62:19
  136:16
sat  120:1
satisfactory  124:3
saturday  1:14
  2:23 6:2 149:23
save  116:4
saw  47:22
saying  13:12 19:9
  19:21 28:5 31:25
  33:10 37:22 47:19
  54:25 55:25 56:7
  56:8,9 59:24
  60:17 61:14 71:3
  83:25 86:6,25
  107:3 117:15,18
  117:23 118:10
  119:5 120:25
  129:13 140:2
  143:18 153:9,10
  153:18 155:4
says  14:5 16:23,25
  19:1,11 24:17
  26:1 42:5,21
  43:10,15 45:15
  46:10,11 49:6
  53:25 54:21,22
  59:2 60:9,10,21
  75:5,17 76:5,10
  78:8 79:22,23
  81:8 91:16 118:4
  119:6 121:2
  125:14 128:3,17
  134:1,2 135:21
  136:18 140:15,20
  143:3 151:8
  152:24

scale  100:9 151:11
scheduling  52:24
  58:3
schmidt  1:23 2:25
  157:4,22
scoff  83:12
scope  4:22 14:17
  24:4 98:20
scratch  10:24
scratching  23:5
screen  63:21 68:22
  125:6,10,11
  137:25 140:18
  149:25
scroll  60:19,19
  75:7 80:13 81:3
se  19:10
searched  97:8
searching  41:22
seattle  3:8
second  6:10 18:13
  24:18 35:4,25
  40:6,9 41:21 48:7
  87:9 88:10 91:16
  91:18 94:6,18
  95:17 115:19
  116:3 138:9
  139:13 140:19
  141:12 146:6
  150:22
seconds  36:15
  139:16
section  65:13 76:1
secure  151:16
security  125:19
see  10:17 16:23,25
  17:16 42:21 43:1
  53:8 60:21 61:6
  63:5,13,20,24 64:1
  73:11 75:17,21
  76:4,5,11,15,16

77:19 79:7 84:3
  85:25 87:21 88:7
  89:8 90:14 91:5
  92:19 93:18 100:2
  105:8 106:4 122:4
  123:11 125:12
  135:5 143:15
  149:7,12 154:2
seeing  72:13
seek  24:17 39:24
  39:25 40:2,5
  44:12 53:25 54:5
  98:12 150:22
seeking  6:9,17,21
  7:7,8,9 8:16,16
  16:3 40:19 44:6
  47:25 55:11 58:8
  67:10,11,12 68:5
  68:15 70:21 92:11
  94:10 114:16
  128:9 137:18
  143:19 152:22
seeks  15:18 21:24
  32:21
seen  22:9 45:16
  52:1 90:18,19
  101:7 125:20
  135:1
selected  60:13
  61:2
send  25:23 156:11
sense  78:1 93:1
  96:13 98:19,23
  99:8 133:24
sensitive  65:9,16
  65:17,21 66:2,5
sent  31:10 52:16
  96:22,23 106:7
  133:23 138:24
sentence  20:2 43:1
  57:12

separate  36:21
  52:3 126:7
september  7:12
  14:5 55:3,4 56:20
  58:10,14,19 88:6
  145:2 150:13
sequence  37:9
series  35:10 42:12
serious  65:3
service  60:12
set  6:22 11:14
  36:21,22,23 79:19
  87:9 111:24 137:5
  157:7
setting  140:7
shape  11:22
shapes  122:25
share  59:22 64:14
  68:22 87:22
  101:23 125:5,9,11
shared  63:25
  65:16 82:11
sharing  64:6 65:20
  66:5 67:17 147:10
  147:11,18
shed  10:6 11:1
shield  154:20,24
shorthand  157:4,8
show  6:8 25:4
  35:15,23 37:11
  63:15 67:18 73:7
  77:13
showed  26:4 52:9
  95:9 101:10
showing  59:14
  117:3
shows  21:9 37:8
  44:17
side  5:6,17
sides  5:3

Veritext Legal Solutions
866 299-5127

sight 103:5,23
sign 64:19
signaled 51:24
signature 157:21
significance 64:4
significant 10:22
silence 91:8
silent 24:22
simple 55:19
132:4,8 133:4
135:20,21 136:11
136:12
simply 8:15 45:20
56:22 105:16
135:25
simultaneous
134:10
single 11:21 12:14
22:3,16 23:2
57:10 70:1 102:16
108:21 109:4
134:13 144:7,13
144:14 149:8,15
sir 147:22
sit 80:2
sitting 108:10
143:8 144:6
situation 146:18
six 7:15 8:24 9:13
12:23 13:1,9 17:6
18:25 19:3,16,22
26:21 59:17,25
61:2,13,19,23 62:2
62:4,12,14,17,19
69:12 71:4 72:11
72:14 90:20
106:19 122:1,6
130:8 131:12,13
131:16 132:7
133:10 135:3,3,11
135:13,13 136:6

137:4 139:8,23
140:8,10
sizes 122:25
skepticism 13:11
sketchy 64:18
slack 50:20
slide 6:7 13:7 37:8
37:10 54:23 57:1
slip 31:19
slowly 53:20
small 43:21
122:10 127:3,10
smaller 148:20
smell 68:9
snippets 35:10
snyder 3:16 5:18
5:20 10:4,5,20
13:19,25 14:8
17:1,5 18:16 19:6
19:14,25 20:12,16
23:4 25:1,6,21
26:14,19,24 27:2
27:15,18 29:15
30:4,21,25 31:6
32:3,13,19 33:11
33:21 36:3 45:2
48:16 68:16 70:16
70:17 72:16 73:17
75:9 76:25 78:18
78:20 79:10,15
80:17,25 83:2,8
85:11 86:4,14,20
92:13,21 94:17,21
95:1 96:1,7,20
97:12,20 99:1,5,8
99:14 101:9 104:2
104:3,4 107:12
108:7 109:5,22
112:15 113:12
115:4 119:18,19
119:25 120:10,15

120:25 121:7,14
121:23 123:9
124:18 127:12,22
128:7,11 129:2,4
130:3,9,14,20
131:1,8 133:13,16
136:14 141:9,20
142:4 147:16,21
147:23 148:1
154:15 155:18,22
155:23
snyder's 126:11

sold 102:5
somebody 31:4
44:1
sorry 5:4,17 10:19
13:16 18:7 20:13
20:14 27:11 29:13
36:7 41:20 47:10
54:18 73:16 75:24
76:4 90:6 110:10
116:15 117:1,4
131:13,25 139:19
146:5 151:6
sort 10:20 15:22
29:6 35:9 52:7
53:20 75:10 79:6
79:19 89:24
130:17 136:9
138:22
sorting 132:16
sought 5:3 8:17
11:7 33:1 40:1,2
45:24,25
sound 143:5,10
sounds 125:20
127:8 156:1

source 84:9 86:10
88:3 142:3
sources 81:16
southwell 3:18
73:8 74:15 75:12
75:22 78:19,21
80:3,4,8,23 81:22
82:14,18,23 83:1
86:8,16 87:17,19
89:4,10 90:25
91:12 92:1,10,16
92:24 93:24 94:2
94:5 95:7 96:5,8
97:6,13 99:10,24
106:7 108:10
110:9,10,16,21
111:4 113:4 114:1
114:10,14 115:25
116:10,25 117:1
117:17,25 118:22
119:9,15,24
121:11 122:5,10
122:14,18,21
123:22 124:23
126:5,14,21 127:5
127:6,14 133:20
135:21 137:15,20
142:15,21 143:7
143:12,14
southwell's 93:11
125:6,13,13 133:6
135:10
spanish 65:5
speak 4:5 65:5
91:8
speaking 90:7
special 1:13 2:23
4:4,13 5:10,15,22
5:25 6:11,19 7:17
8:12 10:3,14 11:8
13:16,20 16:13,21

Veritext Legal Solutions
866 299-5127

[special - submitted]

16:24,25 17:2
18:5,14,18 19:13
19:18,21 20:9,13
23:19 24:13 25:2
25:18 26:11,16,20
26:25 27:9,16
29:12,16 30:12,22
31:1,25 32:7,14
33:9,18,24 34:1,4
34:14 35:17,24
36:5,11,13,17
38:25 41:11,19,25
42:18 43:3 44:8
45:22 47:17 48:5
54:17,20 55:4,19
57:2 59:9,23 60:6
60:25 61:18,20,25
62:21 63:20 66:23
66:25 70:15 73:15
74:7 75:2,15 78:3
78:6 79:15 80:6
80:15 81:3 82:2
82:10,16,21,25
83:5 84:19 85:22
86:6,11 87:8 88:8
88:21,23,25 89:8
89:12,20 90:8,8,11
91:7,13 92:6,22
93:4,15,18 94:4
95:4,13,15 96:3,12
97:18 99:6,23
100:11,15 102:21
103:25 106:15
108:2 109:16,24
110:12,19,25
111:6,22 112:2,14
113:20 114:2,12
115:10,12,17
116:1,14,17 117:5
117:20 118:2,19
119:2,11,16 120:9

120:13,24 121:20
121:24 122:2,9,13
122:15,20 123:2
125:1,9,23 126:13
126:24 127:15,19
127:21 128:8,17
130:1,7,25 131:9
131:13,15,24
132:12,18 134:25
138:6,9,19 139:6
139:13 140:12
141:5 142:2
143:13 144:16
145:20,21 146:4
146:12,16,20,23
147:14,22,24
149:20,22 154:11
155:7,20 156:1,3,9
**specialist**  151:12
**specific**  7:14,24
  16:3 43:18 90:4
  107:21 135:7
**specifically**  79:4
**specifies**  126:6
**speedy**  151:11
**spend**  6:3 33:12,12
  109:17
**spent**  11:24 14:9
  29:6 31:22 70:23
  74:9 152:18
  153:14
**spilled**  72:19
**spin**  34:11
**spirited**  34:10
**spoke**  123:12
**spoken**  37:25
**spreadsheet**  32:15
  110:14,24
**spreadsheets**
  131:7,9,14,17

**staff**  117:19
**stage**  57:15 124:7
**star**  13:6
**start**  5:10,13 10:24
  34:3,9 37:5 75:24
  76:4 105:12
  108:14
**started**  23:11 41:8
  55:24 83:17 109:6
  110:2
**starts**  18:19 42:2
  60:20
**state**  4:25 5:2 7:21
  50:17 135:25
  157:1
**stated**  12:5 77:12
  151:15
**statement**  17:3
**statements**  39:18
**states**  20:21 65:8
**stating**  25:7
**status**  87:19
**statuses**  65:14
**stay**  78:4 154:9
**stays**  146:2
**steer**  145:1
**stein**  3:17 5:18
  22:13 24:2 61:11
  61:19,24 62:13
  78:17 82:7 94:16
  94:22 112:13
  118:16 130:10
  137:24 139:5,18
  143:17 145:19,23
  146:11,19,22
  149:18
**step**  35:3 51:8
  111:12 153:8
**steps**  113:11
  114:15

**stop**  36:12 67:19
  68:21 87:11
  147:18
**storage**  125:19
**store**  78:10
**story**  52:7
**strands**  79:1
**street**  3:11
**strongest**  50:21
**strongly**  9:3 37:18

**struggled**  39:12
**stuff**  53:5 54:14
  104:23 105:25
**stunned**  35:22
**stunning**  35:5,7
**stunningly**  34:13
**styling**  15:21
**subject**  24:9 26:3
  63:10 112:22
  124:20 145:12
  151:11
**submission**  41:15
  57:5
**submissions**  13:24
**submitted**  8:21
  22:25 53:10

Veritext Legal Solutions
866 299-5127

[submitted - think]

134:10,10 137:20
subscribed   157:13
substance   55:10
substantial   45:11
substantially
   127:11
substantive   42:3
   53:6 54:15 55:13
   55:17 58:5 120:6
   150:10
succinctly   4:25
sued   129:23
sufficient   90:16
suggest   108:7
   144:17 150:5
suggested   48:16
   50:9
suggesting   136:8
suggestion   127:25
suite   3:7,11
summarizes   118:6
summarizing
   135:16
summary   10:21
   27:14 60:7,21
   81:19,24,25 93:19
summer   140:1
supersedes   32:19
supervision   157:9
supplemental
   41:15
support   78:14
   151:19
supported   154:3,4
supporting   77:14
supports   81:14
supposed   67:21
   69:4 143:20
supreme   27:3
sure   6:1 13:25
   14:1 25:6,6 30:23

32:13 33:19 48:12
   62:7 74:14 75:6
   75:12 81:5,22
   82:5 84:24 85:6
   87:15 91:14 93:1
   110:10 112:10
   113:21 114:4
   117:1 121:21
   128:5 131:20
   132:8,20 133:7
   135:11 136:14
   139:9 142:6 144:4
   146:24 154:9
surround   98:15
surrounded   98:6
suspected   112:21
suspensions
   110:18
sustainable   16:17
████████████
sword   154:24
synthesis   79:12
synthesized   80:19
system   81:21
   82:15,20,22 88:2
   143:5
systems   85:1

t

table   76:19 85:23
   115:18
tables   82:4
take   8:14,20 10:12
   10:16 28:3,22,24
   35:24 36:19 37:1
   57:21 105:15
   108:25 109:2
   112:23 141:23
   145:18 147:19
taken   47:6 76:20
   102:5 157:6,7

takes   57:4
talk   4:22 9:24
   17:16 23:17 59:9
   88:9 111:10,12
   116:2 117:12
   120:12 128:12
   139:16
talked   21:19 45:18
   118:11 119:9
   125:3
talking   23:20
   29:24 55:3 88:15
   93:1,3 101:14
   110:5,5 114:9
   116:16 120:14
   137:2 144:11,15
talks   101:9
tangentially   25:9
tangible   43:24
   44:10 46:5
████████████
tbd   127:2
team   41:17 46:18
   46:18 52:1 67:8
   80:20 86:21 98:19
   98:23 99:2,7
   117:13 119:25
   120:8,10 122:23
   147:1
team's   120:20
technical   8:3
   12:19 17:23 19:15
   26:18 31:14 32:5
   42:9 43:20 48:2
   54:2 133:6,19,25
   135:4,9,22 137:13
   138:2 139:7
   141:17 142:18,23
technology   6:10
tell   8:15 19:6
   45:11 87:20 89:25

108:10 120:1
   133:7 135:2
   136:10 139:3
telling   107:10
template   123:15
templates   60:18
tend   108:9
tentative   51:21
term   42:8,9
   123:16,18 144:6
terms   25:25 52:1
   56:5 74:6 86:21
   88:5 92:13,18
   105:9 110:17
   127:9,10,12
test   68:10
thank   5:24,24 10:3
   36:13 62:23 91:13
   121:23 132:15
   149:22,23 155:14
thanks   149:19
thereof   157:12
thing   8:19 11:23
   22:19 32:10 44:9
   48:14 68:19 89:23
   90:12 95:19
   100:18 101:6
   137:23 144:10
things   4:16 6:1,7
   8:13 15:9 32:4
   39:11 42:14 62:11
   67:20 70:9 77:13
   83:11 88:10 92:12
   101:12 102:2
   123:17 144:4,22
   145:11
think   4:19 6:5 9:7
   10:6,9 11:1 13:6
   14:13,15 16:2
   17:6,17 20:25
   22:2,4,5 23:8 25:7

Veritext Legal Solutions
866 299-5127

28:4 29:5,7 30:7
30:10 31:16 35:14
37:10 38:7 39:8
47:11,12 49:8
50:25 51:8 52:13
55:18,19 57:1
61:14 65:23 68:19
71:15,16 74:1
77:24,25 78:17
79:13 80:13 81:11
86:5,5,16,17,21
87:18 89:4,7,18
90:9 91:3 92:11
92:17 95:14 98:2
98:17 99:15
100:13,18 101:6
102:3 104:15,22
105:3,9,13 107:9
108:25 109:1,3
110:7 111:9,11
112:19 114:25
116:12,18 117:17
117:17 118:6
121:11 122:19
123:15 125:3
127:6,7,11 128:13
128:15 129:6,19
131:10,21 134:14
134:14 137:24
139:14,16 142:2
142:17 144:25
145:2 146:23
147:9 148:5,6,8,12
148:17,17,19
149:4,11 150:14
154:6
**thinking** 46:25
72:12
**thinks** 80:20
**third** 3:7 8:7 9:11
9:15 24:18 38:4

40:6,9 41:6 47:7
50:13 66:6 94:7
94:19 97:4,16,24
97:25 101:17
102:1,25 103:1
113:2 115:8,14
116:16,19,22
117:16,20 118:15
118:23 119:4,7
121:15 126:14,15
126:22 150:23
**thorough** 150:2
155:5
**thoroughly** 154:19
**thought** 21:16
23:7 24:9 31:23
69:2,2 95:18
96:18 111:1
115:13 119:16
145:8 148:2

**three** 11:3,9 12:10
12:17,25 16:12,15
17:11,22 21:3
25:10 26:14 29:2
29:8 30:6 33:6
77:1,2,5 84:17
88:13 93:7 94:20
94:21 104:15
105:11 109:3
112:8 115:6
**tied** 127:1
**time** 6:3 8:18 9:25
10:22 15:2 31:22
36:8,11 37:5,5,17
67:25,25 69:22
70:3 74:9 81:13
99:6 100:21 104:7

104:7 109:17
137:23 145:4,13
146:5 152:18
153:14 154:6,19
155:8,14 157:7
**timeline** 111:24
112:3
**timelines** 108:4
**times** 12:5 69:2
75:20 78:9 79:25
**timing** 28:18
**timingwise** 142:17
**title** 93:20
**today** 4:14 5:25
7:23 12:13 37:9
37:20 143:8
154:15 155:2
**told** 14:12 71:18
84:15
**ton** 28:14
**tongue** 27:12,13
**tool** 79:19 88:3
**top** 10:8 75:24
110:2 111:4
114:21,23 115:3
116:9 122:12
**topic** 149:24
**tortured** 9:17
**total** 89:3,21 92:23
**totaling** 42:9,24
43:11
**totality** 128:23
**trace** 64:22
**track** 32:14 79:20
**traded** 4:17
**tranche** 44:19
**tranches** 110:3,6
**transcribed** 157:8
**transcript** 1:12
71:14 119:1
147:20

**transcripts** 150:3
150:15 154:1
**tree** 112:18
**tremendously**
88:20 109:10
**true** 9:14 49:7,13
100:25 151:14
**truer** 37:25
**trumps** 32:23
**try** 44:7
**trying** 20:9 22:7,8
34:15 45:23 46:5
46:10,20 57:21
68:21,24 74:18
76:18,20 78:14
80:16,16 81:15
82:7 96:3 121:1
123:6 139:25
140:11 148:15
**turn** 28:17 41:16
59:15 72:3 74:12
**turns** 107:22
**two** 6:22 8:5 10:23
11:20,24 19:8,22
21:15 33:13 44:14
46:3 55:23 68:24
83:15 91:19 95:14
104:15 106:18
107:12 111:19
112:10 116:24
131:1 136:9 141:5
150:18,18 152:14
**type** 4:6 45:12
75:18
**types** 14:19 24:6,9
46:1
**typewriting** 157:9
**typically** 50:20
124:23

Page 32

Veritext Legal Solutions
866 299-5127

**[u0400 - we've]**

| u |
| --- |

**ultimate** 110:17
130:23
**ultimately** 6:24
55:16 104:19
109:12 150:8
**uncovered** 37:23
66:9
**underlaying** 80:1
**underlie** 46:18
**underlies** 80:22
**underlying** 7:9
11:5 12:7,11 15:1
15:3,8 16:4,20
19:11 23:14 43:5
45:6 47:8 50:11
50:15 53:3,15
67:13 69:15 71:19
72:8 73:7,11
76:22,22 77:21
80:1,4 81:2,14
82:8 83:10,19,25
84:16,16 85:16
99:21,22 101:15
107:15 129:8
134:21 148:7,11
148:14
**underscores** 22:5
**understand** 20:10
20:15 23:6 27:1
32:8 33:10 42:3
45:24 46:5,10,20
48:8 55:9 59:12
59:16,24 69:22
74:18 76:18,20
81:15 83:6 85:1,7
89:1 95:2 100:19
111:22 112:19
113:21 116:4
121:3 123:6,25

132:14,19
**understanding**
21:20 91:3 118:22
138:14
**understands** 54:8
**understood** 33:19
62:7 83:24 93:10
103:25 125:25
128:5
**undiscoverable**
48:21
**united** 20:21
**unpersuasive**
128:2
**unquote** 50:8
133:21
**unsuccessful** 7:22
**unsurprisingly**
151:18
**untangled** 35:2
**unwind** 53:21
**update** 145:15
146:9
**updated** 145:9
**uploaded** 131:11
**use** 6:10 32:15
64:9 70:10,11
144:18 154:23
**useful** 57:17 90:21
**user** 1:3 2:3 42:6,8
42:9,23,24 43:18
64:9 65:12 82:5
**users** 43:22 64:12
64:13,24 65:10,10
66:2 81:10 82:4
95:10

| v |
| --- |

**vain** 154:22
**valid** 17:20
**variety** 6:7 7:1

**various** 60:18
117:19 122:23,25
125:16
**vary** 88:20
**vast** 31:16
**version** 42:6,22
81:8,9 125:10
**versus** 82:5

**view** 47:1 51:21
53:13 130:12
**viewer** 63:23
**violation** 65:3 84:1
**virtually** 2:24
92:17 144:1
**volume** 98:24
103:5 109:2

| w |
| --- |

**wait** 138:19
143:13,13,13
155:8,8,8
**waiving** 108:11
**walk** 6:6 10:21
13:3,6 34:25
35:14,23 51:8
132:18
**walking** 53:20
**want** 5:12 9:18,19
10:24 23:22 25:4
33:19 35:23 40:10
41:24 42:2 44:10
47:6 48:12 49:2,9
50:3,4,23,24 59:12
59:23 62:7 63:15
65:23 66:21 68:13
68:13,19 70:9,11
73:2 75:3,10 78:7
79:18 81:5 83:6

83:13 85:6 86:12
89:1 90:4 91:10
95:17,17 102:25
103:23 105:2,13
106:17 109:17,19
109:22 111:23
112:4,8,10 113:20
115:19 116:3
118:8 119:17
121:3,5,22 123:10
123:17,18 125:24
125:24 126:1,3
128:5 132:14,18
145:17 147:24
148:7 149:16
150:1
**wanted** 4:21,24
14:25 20:14 23:13
23:15 24:7 25:13
26:6 40:11 63:12
73:24 83:9 103:19
113:8 121:21
124:9 134:22
137:18 140:1
**warned** 75:20 78:8
79:23,25
**warrant** 76:11
**washington** 3:8
**watching** 64:6
**way** 10:9 11:22
14:12 28:13 40:14
43:15 46:6 47:1
59:16,17 62:1
63:25 70:14 75:16
77:12 132:15
137:1,8 143:25
147:7 157:12
**ways** 53:21 69:4
122:24
**we've** 6:21 7:24
10:5 11:10 16:13

Page 33

[we've - zoom]

17:8 37:4 50:1,2
68:24 72:4,4 73:1
77:8,8 97:21,25
112:25 135:21
152:17
**weaver** 3:10 5:4,8
46:21 63:23 88:1
143:3,9 154:13
156:10
**weaver's** 155:24
**web** 75:18
**weekly** 52:18
**weeks** 4:18
**welcome** 147:18
**went** 39:15 56:13
67:24 71:20 91:24
101:16 113:9
150:16 153:25
**whereof** 157:13
**whoa** 103:12
**winding** 27:18
**window** 45:4
**withheld** 66:13
99:3 131:5
**withhold** 106:13
109:12
**withholding** 7:2
9:2 106:25
**witness** 94:20
157:13
**won** 7:11
**wondering** 79:22
**word** 49:5 59:2
85:25 101:2
106:20 109:22
119:22 120:15,16
133:21 142:11
144:17,20 145:18
152:24
**words** 17:13 27:2
30:5 37:25 83:21

96:6 125:13
140:16
**work** 7:3,5,16 10:9
10:23 15:5,7
16:11,17 17:14
18:2 19:8,23 21:6
21:15 24:10 30:8
30:20 38:13 42:3
47:1,9 51:25 56:4
65:10 66:17 77:10
87:1 92:9 98:8,21
100:1,7 103:10
105:7 106:14,22
107:3,18 108:5
128:15,21 129:10
129:22,25 130:5
130:13,16,18
143:21 145:5,12
150:20 151:5,8,20
152:14 153:6,7
**worked** 44:4
**working** 11:24
68:22
**worksheets** 81:2
98:4
**world** 102:21
**worries** 27:15
**worth** 50:7 71:23
**worthy** 112:16
**wound** 144:11
**woven** 35:9
**wrap** 68:19
**wrapped** 124:15
**write** 36:8 142:6,7
**writes** 19:14
150:22
**writing** 79:24,24
**written** 25:22 28:7
135:17,23 142:5
**wrong** 20:6 35:2
37:16 38:20 45:23

60:1,23 79:21
109:22 110:8
113:16 119:22
120:16 129:20
142:10 154:3
**wrote** 46:15
100:15 133:20
141:10

**x**

**x** 81:12 93:9

**y**

**yeah** 10:14 13:19
17:5 18:16 20:12
25:7 27:18 33:11
33:24 34:4,6,8,16
36:1 41:19 42:15
42:16 47:11 48:12
54:19 55:4,5,6
56:25 59:22 60:5
60:7,20,24 61:20
70:17 73:16,17
75:9,15,17 80:15
82:10,11 83:1
86:11,14 87:17,20
89:4,19 91:13,15
91:18 93:15 94:4
97:20 109:1
110:21 112:1,14
113:4 116:10
117:5,6 118:19
121:11,14 122:18
122:21 126:10,21
127:6,19,25 128:7
130:9 131:12,24
132:13 136:24
138:5 142:4,15,21
143:23 144:25
145:23 155:20,20
**year** 14:18 140:10
144:12

**year's** 154:21
**years** 6:20,22
10:23 11:21,24
19:8 21:15 33:13
55:24 68:25 83:15
111:20
**yellow** 132:15
**yep** 25:1 30:25
**yolo** 157:2
**york** 3:19,19

**z**

**zealous** 35:18
**zero** 73:1
**zoom** 1:11 3:3,15
42:19 60:7 69:23
75:2 86:3

Page 34