Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: March 23, 2022<br>Hearing Time: 1:00 p.m. |

## PLAINTIFFS' STATEMENT

Plaintiffs have noticed a welcome change in Facebook's approach to communication since the parties' February 10, 2022 Case Management Conference. Counsel has been more willing to provide information to Plaintiffs in discovery mediation sessions and in meet and confers. The tonal shift, however, has not yet been accompanied by a sufficient acceleration of Facebook's compliance with its discovery obligations.

Excepting documents related to the App Developer Investigation, which the Court ordered Facebook to produce within 21 days, Facebook has produced only 251 documents since the last Case Management Conference. Documents have still not been produced from numerous relevant repositories. Facebook also continues to delay deposition scheduling, which lags behind the schedule established by the Special Master by months. Most troubling, Facebook has proposed that it provide corporate designees to provide testimony under Rule 30(b)(6), for topics identified by Plaintiffs in December 2021, in late May and early June 2022. This is far too late for Plaintiffs to use information learned during those depositions to conduct necessary follow-up targeted discovery or depose additional fact witnesses identified during the testimony. In sum, forward progress in the case remains too slow to meet the June cutoff. Plaintiffs remain concerned that Facebook will seek to use production delays to interfere with Plaintiffs' ability to complete necessary discovery.

**ADI.** As reflected in Facebook's statement, it informed Plaintiffs that production of ADI-related documents was complete pursuant to the Special Master's ADI order. During a meet and confer this morning, Facebook informed Plaintiffs that though the ADI continued into 2020, Facebook's collection and production of documents for certain ADI custodians ended in August 2019. Plaintiffs do not agree that production of ADI-related documents pursuant to the Special Master's order is complete. Specifically, the order did not limit collection by time period.

Regardless, Facebook has promised Plaintiffs that it will look into whether additional communications and related documents from these custodians exist and will be produced. Facebook has also stated that it will ask the Special Master to clarify his order, and Plaintiffs are amenable to consider a proposed clarification.

**Named Plaintiff data.** Facebook has still not produced documents reflecting Named Plaintiff data since Judge Corley entered Discovery Order No. 9 in October 2020, with the lone exception of a supplemental production of documents available from one Named Plaintiff's download your information tool—documents already available to the Named Plaintiff herself. Since the last CMC, the Special Master conducted a third, lengthy hearing to understand the systems and sources that maintain user data and the burden of production from each. *See* ECF No. 867. He also ordered Facebook to submit a written response to a series of questions. *Id.* Facebook provided written responses on March 7, which provided more information than Facebook had cumulatively provided in response to Plaintiffs' inquiries over the past two years and addressed topics including technical documentation of how Facebook generates a Do It Yourself file for a user and the content of a user's DYI file; the systems that interact with the Hive, a database containing user information; the internal identifiers Facebook users to track users across its platform; the sources from which Graph API pulls user data; and agreements relating to user data with Netflix, Microsoft, and YouTube.

Plaintiffs appreciate and support the Special Master's process, which is likely to be the most efficient way of identifying, collecting, and producing responsive materials at this late date. However, Facebook's document production in response to Plaintiffs' request for the information it has about the eight Named Plaintiffs remains incomplete. This information is relevant both to the merits of the case and to class certification. Plaintiffs intend to show that the Facebook's general practices and procedures for collecting and using information collected and inferred

about the Named Plaintiffs is the same as it is for all Facebook users. Thus, it is critical that Facebook produce this information without further delay.

**Production from centralized repositories.** Plaintiffs have spent years seeking production of highly relevant documents, such as financial documents or contracts, that can be collected from centralized sources. *See, e.g.*, ECF No. 556-1 at 3 (Oct. 29, 2020 proposal by Plaintiffs for Facebook to produce documents from repositories). After the last CMC, the parties engaged in discovery mediation during which Facebook *finally* agreed to search for relevant information from seven sources or repositories of information in ways that are not limited by custodial collections. However, Facebook has indicated it will take 60 days to complete production from these sources. As a result, production will not be substantially complete until May 4. This delay will substantially and unfairly limit Plaintiffs' time to review and analyze these documents, and use them in depositions. Thus, while Facebook has agreed to produce long sought documents, their delayed production will prejudice Plaintiffs ability to conduct discovery.

**Zuckerberg/Sandberg Custodial Documents.** Pursuant to the Special Master's order, Facebook produced a sample of documents collected from Mark Zuckerberg's and Sheryl Sandberg's custodial files on March 1, 2022 and the parties have exchanged proposed search strings to be run across their custodial collections. ECF No. 815. The Special Master conducted a hearing about the parties proposed search strings on March 11, during which he asked for Facebook to provide richness analytics for each term proposed by either party. Facebook responded that it could not complete production by the March 29 deadline the Special Master had imposed to complete the production of Zuckerberg's and Sandberg's documents. Indeed, on March 15 Facebook stated that, due to its internal review environment and its vendor's limited capabilities, it will not be able to return the richness reports until March 29. It is unclear when Facebook contemplates completing this production. It is difficult to believe that one of the

world's most sophisticated technology companies cannot proceed more quickly. Plaintiffs are prejudiced by this delay.

**Information required to understand documents produced.** Facebook produced the "Method Table," which contains summary data logging the volume of API calls made by each app each day from 2011 to present. The apps in the table are identified by application ID number, not by name. In February, Facebook agreed to reproduce the table with the corresponding app names for each third party app and other omitted information. It still has not done so. Without this information, Plaintiffs' ability to analyze and make sense of the Method Table is substantially compromised.

**Depositions.** Depositions continue to lag the schedule set forth by the Special Master. Plaintiffs have only been able to depose nine Facebook witnesses with only three more depositions scheduled by the end of March, even though the Special Master's deposition protocol permitted 10 depositions by January 31 and another 15 by March 31. Further, while the parties are close to agreement on the remaining number of depositions Plaintiffs may schedule, it is increasingly unlikely that Facebook will be able to schedule them by the end of the fact discovery cutoff. Most troubling is Facebook's delay in scheduling its testimony pursuant to Rule 30(b)(6), threshold depositions necessary to make intelligent choices about further depositions and discovery. Plaintiffs provided Facebook a list of topics in December. It took until March 11 for Facebook to offer dates, which it proposed at the end of May and in early June. Since Plaintiffs seek 30(b)(6) depositions in part to identify other fact witnesses they should depose and other targeted document sets that concern their claims, the delay is highly prejudicial.

### FACEBOOK'S STATEMENT

We believe the parties are continuing to make progress toward completing fact discovery by the June 17 deadline set by the Court. In this statement, we provide an update on issues we

believe are most important to meeting that deadline, including issues the Court identified as areas of concern during the last case management conference. While we do not agree with plaintiffs' characterization of the record on those issues, we plan to address that in response to plaintiffs' motion for sanctions, and therefore focus on the parties' ongoing efforts to resolve the issues.

**A.    ADI Documents**

On March 3, 2022, Facebook completed its production of ADI documents pursuant to the Special Master's orders dated December 20, 2021 (Dkt.776), and January 31, 2022 (Dkt. 871). Facebook requested a meet and confer with plaintiffs to discuss potential additional productions, since the January 31, 2022 order is limited to "custodians that the parties have identified and collected" (Dkt. 871 ¶ 20), and some custodians had only been collected through August 2019. On the meet and confer, Facebook proposed that the parties request that the Special Master amend his order to address this issue, and said they would conduct additional collections for these custodians and produce responsive documents, if any.

**B.    Named Plaintiff Data**

Proceedings before the Special Master confirmed that Facebook has produced significant volumes of named plaintiff data from its DYI system for all three categories of "discoverable user data" identified by Judge Corley in Discovery Order No. 9 (Dkt. 557), and made significant progress on the sole remaining issue identified in Judge Corley's latest order: "what, if any, data from [systems other than the DYI system] should be produced consistent with [FRCP 26(b)]." Dkt. 807 at 4. To facilitate prompt resolution of that issue, Facebook made multiple written submissions and made five witnesses available for two hearings totaling nearly 10 hours, which the Special Master recognized during a March 9, 2022 hearing:

> I first want to just officially on the record recognize and thank Facebook for accommodating an accelerated timeline for a very complex set of problems . . . [I] recognize that two weeks isn't a lot of time to answer all of the questions, or even a month to answer in detail the technical questions that I've asked. So the answers and data that has been provided is very helpful. I want to thank Facebook for making that effort, making the engineering resources available. It's certainly helping to expedite things along.

Trans. of March 9, 2022 Hearing at 6:21-7:11.

Facebook has also been meeting and conferring with plaintiffs in an attempt to negotiate a resolution of this issue, which stems from the parties' competing definitions of user data that is "shared with or made accessible to" third parties. Plaintiffs' view is that user data is "shared with or made accessible to" third parties even if no data about that user is actually "disclosed to," "obtained by," or "made available to" any third party. For example, plaintiffs want all data that is used by Facebook's internal machine learning models to deliver ads on Facebook's platform. According to plaintiffs, that data is "shared with or made accessible to" advertisers, even though advertisers do not obtain or have access to it and don't even know which users receive their ads. Plaintiffs' view is inconsistent with their claims, which require user data to be "disclosed to" or "obtained by" third parties, and with Pretrial Order No. 9 describing the "principal allegations" of these "data-sharing" claims as including Facebook's alleged failure to prevent third parties from "selling or otherwise misusing" user data. It is hard to understand how third parties can sell or misuse data that is not "disclosed to" or "obtained by" them. Plaintiffs' Statement at 2-3. Still, Facebook remains hopeful that the parties can reach a negotiated resolution of this issue.

**C.     Depositions**

To date, 16 depositions have been taken, 13 more are scheduled, and 9 are in the process of being scheduled. Facebook has taken depositions for five of the eight named plaintiffs, though plaintiffs still have not fully complied with orders compelling production of documents and information relevant to those depositions. The parties have also been negotiating 30(b)(6) topics, and meeting and conferring on additional depositions to be taken before the June 17 deadline. Plaintiffs seek 25 additional depositions and Facebook has agreed to 20.

**D.     Apex Materials**

On March 1, 2022, Facebook timely complied with the Special Master's order to search for "relevant non-duplicative communications and documents" for Mark Zuckerberg and Sheryl Sandberg, and to "provide a statistically significant sample of the results of the search and a list of the search strings used." Dkt. 768-3 at ¶ 4(a). Facebook's proposed strings hit on about 86,000 documents (with families). Plaintiffs proposed 36 additional strings, which hit on more

than 770,000 documents because they drew in, for example, all documents including the word "agreement" within 15 words of "partner, app, or mobile." The Special Master held a hearing on March 11, and on March 15 ordered plaintiffs to "identify the[ir] ten highest priority search strings" and to otherwise "narrow" their proposed strings. Dkt. 881.

E.   **Discovery Motion Practice**

The Special Master decided four motions since the Parties' last joint status update, three of which were also briefed during this period and one of which remains pending. The Special Master (1) rejected plaintiffs' challenge to privilege redactions to 129 emails, finding all "were properly designated as privileged," except for one email (Dkt. 827 ¶ 10); (2) rejected plaintiffs' demand for physical production of privileged source code, finding "an inspection with suitable protections is an appropriate method to disclose the trade secret documents at issue" (*id*. at ¶ 9); (3) granted Facebook's motion to compel named plaintiffs' documents (Dkt. 834); and (4) granted Facebook's motion to compel responses to interrogatories regarding the named plaintiffs (Dkt. 845). Plaintiffs' motion to compel production of materials created in connection with an assessment completed under Facebook's 2020 consent decree with the FTC remains pending.

F.   **Privilege Log**

Facebook plans to serve a privilege log on Plaintiffs for all documents withheld from production before the substantial completion deadline by the March 17 deadline.

G.   **Other Discovery Issues**

Through discussions among counsel and two mediation sessions totaling nearly 10 hours, the parties made substantial progress on many other issues. For example, despite the parties having agreed on searches Facebook would perform in response to plaintiffs' RFPs, rather than declare impasse which would have resulted in briefing, Facebook agreed to conduct additional document searches, the vast majority of which go far beyond the parties' initial agreements

## PLAINTIFFS' RESPONSE TO FACEBOOK'S STATEMENT[1]

**Named Plaintiff data.** In asserting that it should not be required to produce information about the Named Plaintiffs because such information is not shared, Facebook launches an improper collateral attack on four orders rejecting this argument. ECF No. 807 at 2-3 (Jan. 12, 2022) ("Facebook must produce data about the Named Plaintiffs . . . even though Facebook insisted that such data were not shared with third parties"); *see also* ECF No. 557 at 1-2 (Discovery Order No. 9, Oct. 10, 2020); ECF No. 602 at 1-2 (Discovery Order No. 12, Jan. 15, 2021); ECF No. 780-1 at 006 (Special Master's Dec. 17, 2021 order). It is troubling that Facebook once again raises this meritless argument. Whether Facebook shared Named Plaintiff data (including derived or inferred information) with third parties is a highly factual issue within the proper scope of discovery. It implicates Facebook's contractual promise not to "give your content or information to advertisers without your consent." ECF No. 298, Appendix A at 6; *see id.* at 28 (it would be improper to develop a dossier for targeting). It also implicates data reciprocity, another undisclosed use of restricted user data. *See id.* at 8. Whether Facebook made users' data available to third parties without their consent is relevant to Plaintiffs' breach of contract claim, among others. Facebook has not identified any production it is withholding on the basis of its view of what was "shared."

**Discovery Motion practice.** Plaintiffs supplement Facebook's description of recent discovery motion practice. Since the last CMC, the Special Master denied reconsideration of ordered production related to the "Secret Sauce" report, ECF No. 846, and issued four more orders and conducted two more hearings regarding Plaintiffs' motion to compel Named Plaintiff data, ECF Nos. 844, 855, 864, 867. Further, while the Special Master denied 124 of Plaintiffs' privilege challenges, he upheld Plaintiffs' 4,974 challenges to the assertion of source code privilege. ECF No. 872. Also, on the eve of Plaintiffs' motion, Facebook withdrew 104 additional privilege assertions.

---

[1] Plaintiffs address most of the issues in Facebook's statement in their affirmative submission. Regarding depositions, Plaintiffs cancelled a single deposition following Facebook's production of additional documents showing that other witnesses were more relevant. Facebook also states that Plaintiffs seek 25 more depositions and that it has offered 20. The actual numbers are 35 and 30. Regardless, Plaintiffs anticipate the parties will reach agreement soon.

## FACEBOOK'S RESPONSE TO PLAINTIFFS' STATEMENT

A. **ADI Documents**. As Facebook explained in its statement, and to plaintiffs proactively and in the spirit of transparency, we believe we have completed production under the Special Master's ADI orders and are proposing to do more.

B. **Named Plaintiffs Data**. The meaning of "sharing" data with third parties and the discoverability of named plaintiff data that is not "shared" with third parties are distinct issues. Only the latter issue has been litigated and only to determine "what, if any, data from [systems other than the DYI system] should be produced consistent with [FRCP 26(b)]." Dkt. 807 at 4. The former issue is addressed here, not to litigate that issue, but to explain how far afield we are from anything relevant to a "data-sharing" claim, which is further illustrated by Plaintiffs' own statement, describing the information they seek as showing "Facebook's general practices and procedures for collecting and using information."

C. **Depositions.** Plaintiffs have taken 11 depositions, not 9, and their complaints about delay ring hollow. Plaintiffs cancelled a deposition and have not provided names for at least 20 individuals they say they want to depose. And several deponents are third party witnesses. On the 30(b)(6) deposition, plaintiffs emailed a list of 30(b)(6) topics for discussion on December 23, 2021, that did not comply with the Special Master's deposition protocol. We objected and asked plaintiffs to follow the protocol. Plaintiffs did not respond and we did not hear anything further until they sent a formal 30(b)(6) notice on March 1, 2022. The parties met and conferred about the notice the very next day.

D. **Apex Materials**. Facebook is simply following the Special Master's process.
**Other Discovery Issues.** Facebook has produced documents from centralized sources, hundreds of contracts, and financial materials created to respond to plaintiffs' requests. On the additional searches Facebook agreed to conduct, which again go above and beyond what the parties previously agreed to, Facebook agreed to start producing any responsive documents within two weeks and complete production within 60 days. One of those additional searches involves the Method table (80 GB of data), which Facebook anticipates producing in one week.

Dated: March 16, 2022

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By: */s/ Derek W. Loeser*
    Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

BLEICHMAR FONTI & AULD LLP

By: */s/ Lesley E. Weaver*
    Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Rosemarie T. Ring*

Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

Rosemarie T. Ring (SBN 220769)
rring@gibsondunn.com
Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of March, 2022, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver