**AMENDED TRANSCRIPT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
IN RE:  FACEBOOK, INC.,       )  No. 18MD02843-VC
   CONSUMER PRIVACY USER      )
   PROFILE LITIGATION,        )
_____)
```

San Francisco, California
Wednesday, March 30, 2022

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 2:10 - 2:29 = 19 MINUTES

APPEARANCES:

For Plaintiffs:
    Bleichmar, Fonti & Auld, LLP
    555 12th Street, Suite 1600
    Oakland, California 94607
BY: LESLEY E. WEAVER, ESQ.
    ANNE KATHLEEN DAVIS, ESQ.

    Keller Rohrback, LLP
    1201 Third Avenue, Suite 3200
    Seattle, Washington 98101
BY: DEREK W. LOESER, ESQ.
    DAVID J. KO, ESQ.
    CARI CAMPEN LAUFENBERG, ESQ.

(APPEARANCES CONTINUED ON NEXT PAGE.)

```
 1  APPEARANCES:  (Cont'd.)
 2  For Plaintiffs:
                              Keller Rohrback, LLP
 3                            300 Lakeside Drive, Suite 1000
                              Oakland, California 94612
 4                       BY:  BENJAMIN B. GOULD, ESQ.
 5  For Defendant:
                              Gibson, Dunn & Crutcher, LLP
 6                            333 South Grand Avenue
                              Los Angeles, California 90071
 7                       BY:  DEBORAH L. STEIN, ESQ.
 8                            Gibson, Dunn & Crutcher, LL
                              200 Park Avenue
 9                            New York, New York 10166
                         BY:  ORIN SNYDER, ESQ.
10
                              Gibson, Dunn & Crutcher, LLP
11                            555 Mission Street, Suite 3000
                              San Francisco, California
12                               94105
                         BY:  ROSEMARIE T. RING, ESQ.
13
                              Gibson, Dunn & Crutcher, LLP
14                            2100 McKinney Avenue
                              Suite 1100
15                            Dallas, Texas 57201
                         BY:  RUSSELL H. FALCONER, ESQ.
16
    Facebook General Counsel: Meta Platforms, Inc.
17                            1601 Willow Road
                              Menlo Park, California 94025
18                       BY:  SANDEEP SOLANKI, ESQ.
19
    Transcribed by:           Echo Reporting, Inc.
20                            Contracted Court Reporter/
                              Transcriber
21                            echoreporting@yahoo.com
22
23
24
25
```

1  Wednesday, March 30, 2022                              2:10 p.m.
2                       P-R-O-C-E-E-D-I-N-G-S
3                              --oOo--
4         THE CLERK:  Calling case number 18-MD-2843, In Re:
5  Facebook, Inc., Consumer Privacy User Profile Litigation.
6      Counsel, please state your appearances for the record,
7  starting with the Plaintiffs.
8         MR. LOESER (via Zoom):  Good afternoon, your
9  Honor.  Derek Loeser from Keller Rohrback.  With me is Cari
10 Laufenberg and David Ko, who was on camera a moment ago, is
11 now sitting next to me, Ben Gould as well.
12        THE COURT:  Hello, everyone.
13        MS. WEAVER (via Zoom):  Good morning, your Honor.
14 Lesley Weaver of Bleichmar Fonti, also for the Plaintiffs;
15 and with me is Anne Davis of my firm.
16        THE COURT:  Hello.
17        Is anybody here from Facebook?
18        MS. RING (via Zoom):  I guess it's our turn.
19        MR. SNYDER (via Zoom):  Yes.  I was muted.  I was
20 muted, Judge.  Sorry.  Good afternoon, Judge.  Nice to see
21 you.  It's Orin Snyder.  I'm here with my colleagues, Rose
22 Ring, Deborah Stein, Russell Falconer, and our good friend
23 and client, Sandeep Solanki.
24        THE COURT:  Hello, everyone.
25        Okay.  So, how can I be helpful, if at all, at

1 this point?  Mr. Loeser?
2          MR. LOESER:  Sure.  I'm happy to start, your
3 Honor.  And, first of all, having the conferences is
4 helpful, just as a starting place because conferences are --
5 are very helpful for the parties, gets everyone to pay
6 attention to issues that need to be resolved.  It gives us a
7 chance to tell you what's going on.
8      To start, I would just like to tell you that there's
9 been a -- a significant change in how Facebook communicates
10 with the Plaintiffs since the last hearing.  Ms. Ring has --
11 has joined the effort, you know; and Plaintiffs have had a
12 number of cooperative and helpful conversations with her.  I
13 just want to -- to note that, because I think it's important
14 to recognize.  We think it's a good sign for how things are
15 going to go in the future.
16      That said, we do have some serious concerns about the
17 pace of discovery still, the status of productions that are
18 not yet complete; and I think it's important to talk about
19 them because they impact the schedule and what we think
20 should happen with your Honor's -- hopefully with your
21 Honor's blessing on what should happen with the schedule.
22      And, so, if your Honor would find it useful, I can walk
23 through the open issues just briefly and then come back to
24 the schedule at the end of my remarks.
25          THE COURT:  Sure.

1          MR. LOESER:  Okay.  So, your Honor knows well the
2  struggles the Plaintiffs have had with the ADI production;
3  and at the last hearing, you ordered completion of the ADI
4  production within 21 days of the hearing.  That --
5          THE COURT:  Do you want me to just order that all
6  ADI documents be produced up to the current day as opposed
7  to limit it to August of 2019 or whatever the date was?
8          MR. LOESER:  Yes, your Honor.
9          THE COURT:  Just order that right now?
10         MR. LOESER:  We would like that to happen.  I
11 think it --
12         THE COURT:  Okay.  That's so ordered.  What --
13 what day?  When do you want them turned over by?
14         MR. LOESER:  Well, we would like them turned over
15 as quickly as humanly possible.  And, you know, I think we
16 probably have to hear from Facebook on how much more there
17 is but, you know, as quickly as they need to do it.  We need
18 the documents.  We need them quickly.
19         MS. RING:  Your Honor, we -- we met and conferred
20 with Plaintiffs, as you know from our statement I'm sure.
21 We reached out to Plaintiffs and raised this issue.  We
22 didn't wait until this hearing to start doing the additional
23 collections, and we talked yesterday, and we said we could
24 do it in 30 days.  So, we would -- we won't wait for the 30
25 days, but we think it could take 30 days, and that's why we

1 asked for that.  And, as Mr. Loeser said, they'd like it
2 sooner than that; and that is certainly our intention.
3             THE COURT:  All right.  Production is due in 21
4 days.
5       Next issue.
6             MR. LOESER:  Okay.  The next issue is the named
7 Plaintiff data.  Again, your Honor is fully familiar with
8 our struggles getting the information for the named
9 Plaintiffs.  Special Master Gary has done a masterful job
10 managing that process.  There was an order issued on March
11 22nd requiring Facebook to produce a significant amount of
12 information.  That is in the works.  We don't have the
13 information yet.  There was a deadline in early April.
14 Facebook asked us to grant them a 10-day extension or not --
15 not oppose it, because of a medical issue with one of their
16 attorneys which, of course, we said yes.  And, so, we're
17 waiting for that information.
18       We don't know the volume that ultimately will be
19 produced.  You know, as your Honor knows, it's a long time
20 coming, and we look forward to it.  We need the information
21 for a whole lot of reasons, and we're in a place now where
22 we think it's moving forward.  We hope we're going to get
23 everything that we need, but we don't yet have it.
24             THE COURT:  I mean, I'm not sure there's anything
25 for me to order, and -- and there's not a reason for me to

1  step in on that right now.
2        Do you agree with that?
3            MR. LOESER:  I agree, your Honor.
4            THE COURT:  Okay.
5            MR. LOESER:  It's just it's another significant
6  event that isn't completed yet, which is why I'm --
7            THE COURT:  Okay.
8            MR. LOESER:  The next category of information,
9  your Honor, are the productions from the centralized
10 repositories.  It's -- you know, in he world of discovery
11 talk --
12           THE COURT:  I --
13           MR. LOESER:  Yes.
14           THE COURT:  I apologize for interrupting.  I just
15 had a thought.  On the -- on the documents, on the -- on the
16 ADI stuff, you know, I -- I said 21 days.  I'm a little
17 concerned that spring break is coming up for people and
18 their families, and I'm concerned about messing that up.
19 And, so, I'm wondering if I should say -- I'm wondering if
20 it would be helpful if I should say 21 -- 28 days instead of
21 21 days.
22           MS. RING:  Your Honor, we would appreciate it.  We
23 will work toward 21 days, though.
24           THE COURT:  Okay.  We'll say 28 days.
25           MS. RING:  Thank you.

1          THE COURT: Okay. Sorry. Go ahead.
2          MR. LOESER: Okay. On the centralized
3 repositories, you know, there's custodial production; and
4 then there's this concept of noncustodial production. These
5 are documents that aren't tied to any particular individual,
6 like financial documents, documents that value user data,
7 monetization information. It's -- it's critical
8 information; and we've been stymied for a long time in
9 getting the information. We had a very productive
10 mediation, discovery mediation over this. Facebook agreed
11 to produce from seven sources that we had been seeking.
12 That production was slated to commence on March 21st. It
13 will supposedly be completed by May 6th.
14    At present, we've only received 35 documents from that.
15 So, we're hoping that there's an acceleration. You know, we
16 -- we accepted the completion date of May 6th. We're still
17 willing to accept it, but we really wanted a rolling
18 production, and we hope that Facebook can get on with the
19 rolling production and get us those documents.
20          THE COURT: Okay.
21          MR. LOESER: The next category -- and, your Honor,
22 it will make sense by the time I get through. There's only
23 a few more categories, why I'm going through all this with
24 you. But there's the -- the Zuckerberg and Sandberg
25 custodial documents. Your Honor probably saw in our prior

1 statements we had an extensive debate, briefing on that.
2 Plaintiffs prevailed.  They were -- Facebook was ordered to
3 add them as custodians.  The special master set in motion a
4 process for agreeing on search terms.  The parties have not
5 been able to agree on those terms.  So, it will be -- we're
6 at impasse.  The special master will be, no doubt, deciding
7 on that.
8     I raise it only because that production has not yet
9 commenced.  We expect it will be a pretty significant
10 production based on some of the search term conversations.
11 So, that's something that needs to get going and will add a
12 significant number of documents to the -- to the production.
13         THE COURT:  Okay.
14         MR. LOESER:  And then the last issue, your Honor,
15 is depositions.  We heard you before about jumping in and
16 taking depositions even though production wasn't completed.
17 We launched into that.  At present, we've taken 12
18 depositions and defended 6.  Fourteen more depositions are
19 currently calendared.  Sixteen more are being discussed.
20     And what that means, your Honor, is there's just a
21 tremendous number of depositions still to go.  The parties
22 have had a fair amount of conversation about what is the
23 right number of depositions; and through the special master
24 process, I believe Facebook's last position was 55
25 depositions of Facebook is what they're willing to allow.

1 And, so, if you just take that number and put aside any
2 argument you have about it, that means there's about 43
3 depositions to go.  That doesn't include the 30(b)(6)
4 depositions, which will take a couple of days; and it
5 doesn't include the 5 to 10 third party depositions that we
6 intend to take.  And this is kind of the rub.
7      By my look at the calendar, there's 79 days left in
8 discovery.  There's 55 business days, and -- and we're
9 looking at taking, you know, upwards of 55 or so
10 depositions; and there's just, frankly, not enough time.
11      So, we have started taking depositions even though we
12 don't have documents.  That means that -- that means we may
13 need to retake certain depositions.  And we think that under
14 the circumstances and kind of given how we got where we got,
15 the Plaintiffs had tried to take depositions earlier.  We
16 were not able to.  And now we just have a tremendous amount
17 to do.  We still don't have a lot of documents.  We need to
18 have time to review the productions.  Our experts need to
19 look at them.
20      And, so, with all that by way of background, your
21 Honor, we would suggest that adding three months to the
22 schedule would allow us to not be prejudiced by how we got
23 where we got on the depositions and give us enough time to
24 complete.
25      We have conferred with Facebook.  I'm sure they have

1 something to say about it, but they do not oppose the
2 extension of the schedule to allow for that, for depositions
3 to occur and all the dates that follow from the discovery
4 cutoff to extend (indiscernible) that time.
5     THE COURT: Okay.  I have a small question and
6 then a big question.  The small question is you were talking
7 in your -- in your case management statement about the
8 30(b)(6) depositions.
9     MR. LOESER: Yes.
10     THE COURT: And we need to take those promptly
11 because they may identify other fact witnesses that -- who
12 you may need to depose.  And you said that you were having
13 trouble getting those scheduled.  Would you like me to order
14 dates for those depositions right now?
15     MR. LOESER: So, the good news, your Honor, is
16 that -- and this is, again, testament to the more
17 cooperative conversations we've been able to have with
18 Facebook -- Facebook has agreed to allow those depositions
19 to occur in April, and we're working on the dates now.  So,
20 we think that that issue has taken care of itself since we
21 filed the case management statement.
22     THE COURT: Okay.
23     MR. LOESER: We expect that there's a lot of
24 issues that -- that need to be covered by those depositions.
25 We expect that there won't be any problem having witnesses

1 prepared to testify about those issues and some good news to
2 report on that front.
3          THE COURT:  Okay.  That is good news at least so
4 far, although the depositions haven't happened yet.
5      In terms of your request, you know, to push back the
6 case schedule another three months, I mean, I -- I
7 sympathize with what you're saying because, you know, we're
8 here -- all indications are we're here because of Facebooks,
9 you know, dilatory conduct, right.  And you -- you know,
10 obviously, we can't -- it would be unfair to put you at a
11 disadvantage getting to the close of discovery without
12 getting what you need because of Facebook's dilatory
13 conduct.  But maybe the -- the answer to that, instead of
14 continuing to push the case back, you know, and instead of
15 continuing to extend the discovery cutoff and extend the,
16 you know, deadline for filing a motion for class
17 certification, et cetera, et cetera, I mean, maybe the
18 remedy is just like, you know, evidentiary sanctions, right.
19 I mean, if -- if Facebook is unable to come forward with
20 evidence, you know, in discovery that it obviously needs to
21 come forward with, maybe all inferences relating to, you
22 know, that discovery is -- should be drawn against Facebook
23 in the class certification proceedings and in the summary
24 judgment proceedings and at trial.  I mean, maybe the jury
25 could be instructed that, you know, because of Facebook's

1 failure to, you know, produce this material, you're to --
2 you know, you should or you can draw an inference against
3 Facebook on this -- on this issue.
4      I mean, would that be -- I mean, aren't we sort of
5 reaching that point where, like, you know, the case is just
6 never going to get adjudicated and you're going to have to
7 continue to have to come back and request extensions of the
8 discovery deadline and, you know, extensions for the class
9 cert motion and all that stuff because you're -- you know,
10 you're just unable to get what you need from Facebook?
11           MR. LOESER:  Your Honor, I don't think it's an
12 either/or situation.  I think that those are issues that
13 we've certainly discussed internally.  We have real concerns
14 about whether issue sanctions are appropriate.  Certainly on
15 the Plaintiffs' data and our ADI, and --   --
16           THE COURT:  And then Plaintiff data is -- those
17 are at the forefront of my mind --
18           MR. LOESER:  Yeah.
19           THE COURT:  -- as I was raising that question.
20 But there could be other -- you know, there could be other
21 issues too.
22           MR. LOESER:  I think from Plaintiff's perspective,
23 it's a perfectly viable path and one that we think is
24 important to consider.  I don't think that replaces our need
25 just from, frankly, a calendaring scheduling issue to have

1 time to take depositions.  Whether Facebook is able to make
2 the productions in a timely way that allows us to take
3 meaningful depositions to me is a bit of a separate issue of
4 to what extent has information not been produced that should
5 have been produced and whether there are issue sanctions
6 that would be appropriate for that.
7     Certainly on class cert, for example, you know, as we
8 stand here right now, we are -- we don't have a lot of the
9 -- I mean, you have to think back several years in this
10 case.  You suggested to the parties that --
11         THE COURT:  More than several years I think.
12         MR. LOESER:  Yeah.
13         THE COURT:  I think it's more than several at this
14 point.
15         MR. LOESER:  It's a while.  I didn't have glasses,
16 and my hair wasn't straight.  But the -- the issue is
17 whether we're going to prove our case through general
18 practices and procedures which, four years later, we don't
19 have the general practices and procedures.  So, I could see
20 a place and an opportunity, whether it's on class cert or
21 other -- other motions to address the issue of issue
22 sanctions.  I still think that it's important that we have
23 the time to complete the deposition.  So, I guess I wouldn't
24 see it as one necessarily obviating the need for the other
25 one.

1          MS. WEAVER:  If I might also, your Honor, I think
2  that --
3          THE COURT:  Has there ever been -- oh, sorry to
4  interrupt, Ms. Weaver.  Let me just ask one question before
5  I forget it.  I mean, have there ever been cases where
6  judgment is simply entered against the Defendant based on
7  dilatory discovery conduct?
8          MR. LOESER:  Absolutely, your Honor.
9          MS. WEAVER:  Yes.
10         MR. LOESER:  It just happened -- you know, we're
11 very involved in the opioids litigation, and there was a
12 discovery abuse by one of the manufacturer defendants and
13 their lawyers and the court in Tennessee issued a
14 terminating sanction, frankly, of liability against the
15 Defendant.  So, it's -- it  happens, and it's an appropriate
16 remedy for serious discovery abuse.
17         MS. RING:  Your Honor, may I speak to that?
18         THE COURT:  Well, I interrupted Ms. Weaver.
19    Ms. Weaver, what -- did you want to say something?
20         MS. WEAVER:  Thank you, just briefly, just to echo
21 what Mr. Loeser said.  I think certainly on the Plaintiff
22 data question, it is complex.  We were hoping initially that
23 it would be an efficient roadmap to class-wide proof.  I
24 think your suggestion -- or your question is really well
25 taken on that, and we might want to reflect on it because we

```
 1  may have a greater capability to focus on the rest of the
 2  discovery to get through if we were to do a hybrid approach.
 3  But, of course, I was going to say that before you asked
 4  your question about the -- the followup.
 5          THE COURT:  Okay.  Ms. Ring, briefly.
 6          MS. RING:  So, your Honor, obviously I am new to
 7  this; but I have practiced my entire career in this
 8  District.  I know you to be a good judge.  I read -- my --
 9  the first thing I read in this case was the transcript of
10  the last CMC.  We will be filing our opposition to the
11  motion for sanctions shortly, and I truly believe that once
12  you see that and the full record -- I've read everything now
13  -- I do not think it's the way it's portrayed.  And,
14  obviously, you will read our opposition; and you will come
15  to your conclusions.  But the Plaintiffs approached us about
16  extending the schedule.  We do not agree for the reason that
17  needs to happen, but we don't oppose it.  But I would ask
18  that we will be filing our oppositions.  Plaintiffs will be
19  filing a reply, and then there will be a hearing, and I
20  truly believe once there's a fuller understanding of what
21  has happened here and how things have unfolded, we will be
22  able to convince you that not only are terminating sanctions
23  not warranted here, but no sanctions are warranted here.
24          THE COURT:  Okay.
25          MS. RING:  But we do not oppose Plaintiff's
```

1  request to put out the schedule.
2          THE COURT: Okay. And, obviously, I will look
3  forward to reading your brief and will, you know, take very
4  seriously what you have to say, even if it might be a little
5  bit of an uphill battle based on everything I've learned
6  thus far.
7      So, that's fine. I -- you know, I really wonder if I
8  will grant another extension as opposed to, you know, just
9  considering terminating sanctions or something. But what
10 you're proposing sounds fine. If you want to submit -- have
11 you submitted -- you haven't submitted a stip, have you?
12         MR. LOESER: No. No.
13         THE COURT: Why don't you go ahead and do that by
14 -- by Friday, and I'll -- I'll sign that, assuming nothing
15 jumps out at me as especially problematic there.
16         MR. LOESER: Okay. Thank you, your Honor.
17         THE COURT: Okay. Anything else to discuss right
18 now?
19         MR. LOESER: Nothing for the Plaintiffs, your
20 Honor.
21         MR. SNYDER: No, your Honor.
22         THE COURT: Okay. Thank you.
23         ALL: Thank you.
24     (Proceedings adjourned at 2:29 p.m.)
25

18

# CERTIFICATE OF TRANSCRIBER

  I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

  I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

*[signature]*

Echo Reporting, Inc., Transcriber

Thursday, March 31, 2022