# FACEBOOK EXHIBIT K

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

```
 1                              JAMS
 2                            ---o0o---
 3    IN RE: FACEBOOK INC.,              )
      CONSUMER PRIVACY USER              )
 4    PROFILE LITIGATION                 )
      _____)
 5
 6
 7
 8
 9
10
11                        HELD VIA ZOOM
12            REPORTER'S TRANSCRIPT OF PROCEEDINGS:
13               JAMS Special Master Hearing
14               Saturday, December 4, 2021
15
16
17
18
19
20
21
22    REPORTED BY:
23    Katy E. Schmidt
24    RPR, RMR, CRR, CSR 13096
25    Job No.: 4980290
```

Page 1

```
 1   variety of materials from the ADI.  Judge Corely
 2   concluded that the basis for withholding the materials
 3   which was the work product doctrine was not appropriate;
 4   that the dual purpose rule meant that the materials were
 5   not protected by work product.
 6             Plaintiffs had also made clear that we were
 7   not seeking attorney-client privileged communications.
 8   We weren't seeking communications to or from the
 9   attorneys.  And instead, we were seeking the underlying
10   factual information and materials relating to the ADI.
11             We won that motion to compel.  The order was
12   issued on September 8th.
13             Facebook has had since then to abide by the
14   order.  The order required production of specific
15   materials relating to the six exemplar apps and then had
16   this key language to the parties to work with you as
17   Special Master to produce other materials consistent
18   with the guidance.
19             Facebook had essentially ignored that
20   instruction.  Many efforts to meet and confer on this,
21   many efforts to get Facebook to state a position, all
22   unsuccessful.
23             So here's where we are today.  These are the
24   specific items we've asked Facebook to produce that are
25   consistent with Judge Corely's order.
```

Page 7

```
 1                  Their demand for ADI correspondence was
 2   already litigated, and Judge Corely rejected it after an
 3   extensive sampling and logging exercise and in-camera
 4   review.
 5                  Judge Corely stated multiple times, and
 6   plaintiffs even agree, that the only relevant and
 7   discoverable materials are underlying facts about the
 8   investigation.
 9                  She also issued an order that, as we all know,
10   identifies three buckets of documents relating to
11   underlying factual materials that she found
12   discoverable.  Those are the documents at issue here
13   today.
14                  She didn't order production of a single ADI
15   document or communication or other materials from our
16   sample privilege logs.
17                  So the three buckets are clearly identified in
18   Judge Corely's order.
19                  One, background and technical reports prepared
20   by non-attorneys, audits conducted by non-attorneys,
21   and then interviews conducted by non-attorneys.  And we
22   already produced these materials to the extent they
23   exist for the six exemplars, as Judge Corely ordered.
24                  And the only open issue is whether materials
25   in these three buckets are discoverable for other apps
```

```
 1   beyond the six.  And if they are, how and when they
 2   should be produced.
 3             All the other requests, as I'll walk through
 4   now, have already been rejected but Judge Corely.
 5             So if you look at the record, which is -- I
 6   think has to be our north star, we can walk through
 7   briefly the procedural history here.  And slide 1, I
 8   said they demanded all documents relating to ADI.
 9             Judge Corely ordered a sample logging for six
10   apps.  She conducted in-camera review with extensive
11   briefing.  She expressed skepticism about the relevance
12   of ADI e-mails, saying only that facts are discoverable.
13   And then she -- she resolved the ADI motion, ruling that
14   e-mails are not required to be produced.
15             And let's continue.
16             SPECIAL MASTER GARRIE:  Sorry.  Before you
17   go -- what order was -- so there's a couple ADI orders.
18   There's --
19             MR. SNYDER:  Yeah.
20             SPECIAL MASTER GARRIE:  -- one on the motion
21   to compel.
22             So when you say order, which one are you
23   referring to?  Because I did read the -- your filings
24   and submissions.
25             MR. SNYDER:  Sure.  The -- the -- the order
```

Page 13

1  that -- I'm not sure what the date of the order was.  I
2  know when the hearing was.
3             Martie, do you know the date of the order?
4             MS. KUTSCHER CLARK:  Yes.  It's the most
5  recent September order which says that it disposes of
6  all of the prior ADI motions, including the motions for
7  communications.
8             MR. SNYDER:  Right.
9             So what happened is after we spent months
10 collecting and logging the ADI communications,
11 Judge Corely reviewed a sample of those, of plaintiffs
12 choosing, by the way, and then she told plaintiffs,
13 quote, "A lot of it I don't think is relevant at all."
14 And then she said, "Some materials are privileged and I
15 actually think you don't even need."
16            And this was an important moment in the -- in
17 this process because after litigating the scope of the
18 plaintiffs' ADI request for more than a year,
19 Judge Corely realized that these weren't the types of
20 materials that contain discoverable facts; that is,
21 facts concerning app developers.  And she asked a bunch
22 of questions.  She said, "What precisely is it that the
23 plaintiffs need from the investigation?"
24            And they finally acknowledged, Your Honor --
25 Your Honor -- Mr. Garrie, that what they wanted was the

Page 14

1           MR. SNYDER:  Yes.
2           SPECIAL MASTER GARRIE:  Is that what -- when
3   you're making the statement, is that what you're relying
4   on?
5           MR. SNYDER:  Yeah.  Well, it's that we had
6   only given her six sample apps chosen I think by the
7   plaintiffs, and as to those documents that we gave, she
8   said we've -- we have no reason why those particular
9   documents are privileged.  So she made that ruling,
10  which is her right.  But she didn't say categorically
11  that all of our documents within these three buckets
12  are not privileged because she didn't consider them.
13          In other words, she said the facts are not
14  privileged but attorney-client work product still
15  attaches.
16          And you'll see when we talk about the process
17  going forward, we believe, you know, and I think
18  Judge Corely's order makes clear, that to the extent
19  Facebook still has an assertion of privilege over new
20  documents, those are valid, actionable, and enforceable
21  under this order.
22          So the three -- there's no disagreement that
23  background technical reports prepared by nonlawyers,
24  audits conducted by nonlawyers, and interviews conducted
25  by nonlawyers, are within -- are within the ambit of

1  what is producible.
2              And Judge Corely directed us to work with
3  you, Mr. Garrie, obviously regarding any additional
4  productions but consistent with her order.  So --
5              SPECIAL MASTER GARRIE:  This is my question:
6  So I read her order and I -- when you look at page 2 of
7  the order, I don't know -- sorry for interrupting you --
8  but if you look at page 2 of the order, on lines 9 to
9  12, this is where I -- where --
10             Counsel Kutscher, if you could -- Clark, if
11 you could bring it up by chance, or I can --
12             MS. KUTSCHER CLARK:  Yes.  If you give me one
13 second.
14             SPECIAL MASTER GARRIE:  And we'll go back to
15 the presentation.
16             MR. SNYDER:  Yeah.  And while she's getting
17 it -- there we go.  Good.
18             SPECIAL MASTER GARRIE:  If you look at line 9
19 where it starts with "While Facebook has agreed to
20 produce some information," and then she cites the
21 docket, right, and you go look at the docket, "it
22 refuses on privilege grounds to produce the reports,
23 audits, and interviews and non-attorney communications
24 related to the same."
25             She doesn't say that it's to the six; right?

```
 1                 MR. SNYDER:  Yep.
 2                 SPECIAL MASTER GARRIE:  -- where -- because if
 3     you read up above -- but if you just look at those
 4     lines -- or if you want to show me where in that order
 5     it is --
 6                 MR. SNYDER:  Sure.  Sure.
 7                 Yeah.  I think all that's doing is stating
 8     the party's position, and it does not reflect even
 9     tangentially, much less directly, the Court's guidance.
10                 The Court's guidance is in the three
11     categories of documents that she said are producible.
12     And she knew that communications were at play.  She knew
13     that plaintiffs wanted all communications.  And had
14     she -- had she intended her order to direct the
15     production of communications, it would have said so.
16     And it expressly -- or it does not order the production
17     of communications and --
18                 SPECIAL MASTER GARRIE:  I agree there's no --
19     that's why we're here; right?  There's no explicit
20     compulsion of the letter.
21                 MR. SNYDER:  Right.
22                 But an order should be written -- I mean, I
23     can send you the case law, and I don't need to.
24                 An order should be read, you know, by its
25     plain terms.  And where -- there's much -- a lot of case
```

Page 25

```
 1   law that says "where a party explicitly requests"
 2   something.  And in the order, that material is not
 3   ordered produced, that means that it is not subject to
 4   production.  Meaning the language you showed us proves
 5   our point.  It proves that she considered non-attorney
 6   communications, obviously, because the plaintiffs wanted
 7   them, but did not order them produced.
 8           So there's no fair reading of the order other
 9   than that it considered and disposed of the request for
10   nonlawyer communications --
11           SPECIAL MASTER GARRIE:  You then don't read
12   additional materials consistent with this
13   guidance because --
14           MR. SNYDER:  No.  The guidance is three
15   categories.
16           SPECIAL MASTER GARRIE:  I got it.
17           On -- "Facebook shall produce the background
18   and technical reports, audits" --
19           MR. SNYDER:  Yes.
20           SPECIAL MASTER GARRIE:  -- "developer
21   interviews of the six chosen by the parties, as Facebook
22   has offered why those particular documents are
23   privileged."
24           MR. SNYDER:  Right.
25           SPECIAL MASTER GARRIE:  So that's -- okay.  I
```

```
 1   understand.
 2          MR. SNYDER:  Okay.  In other words, the case
 3   law is clear, from the Supreme Court cases on down, that
 4   where an order disposes of an issue and where parties
 5   make arguments for the production of materials or
 6   otherwise, and the order does not address that
 7   particular, you know, request in its directive, it's
 8   considered disposed of and --
 9          SPECIAL MASTER GARRIE:  We'll entertain that
10   argument from plaintiffs and from you.
11          I just -- I'm sorry for interrupting you.  And
12   I had questions for plaintiffs, and I held my tongue and
13   I didn't ask.  So I'll hold my tongue and let you finish
14   your summary.  And I apologize.
15          MR. SNYDER:  No worries.
16          SPECIAL MASTER GARRIE:  Because I do have
17   questions for plaintiffs as well so --
18          MR. SNYDER:  Yeah.  I'm winding down.
19          So the bottom line is the judge considered all
20   the arguments, including plaintiffs' argument for all
21   communications, rejected some of our arguments, rejected
22   some of their arguments, and then distilled its guidance
23   into an order to produce reports, audits, and
24   interviews.
25          And in the comments she made prior to issuing
```

```
 1   to make some reasonable good faith effort.  That's not
 2   your position; right?  You're still -- it's not being
 3   narrowed to remove that --
 4            MR. SNYDER:  No, no, no.  No.  No.  In other
 5   words, we believe that if you order us to produce more
 6   documents in these three categories, then -- then
 7   that's -- then I don't think -- other than the
 8   attorney-client and work product objections that we may
 9   have to portions of those documents or maybe the
10   entirety of one -- I have no idea -- I don't think we
11   have any other -- other objections.
12            SPECIAL MASTER GARRIE:  Here, let me ask my
13   question.
14            If there's communications between Facebook
15   and ▮ about -- I mean, I read through your -- it was
16   a pretty fairly informative briefing, and the
17   plaintiffs, they included some of these sample reports,
18   and there's clearly, you know -- well, I don't know
19   clearly, but it would appear that there was a lot of
20   work done.
21            MR. SNYDER:  Yes.
22            SPECIAL MASTER GARRIE:  There was
23   communication between ▮ examiners -- I'm not sure
24   who --
25            MR. SNYDER:  Yep.
```

```
 1              And if after reviewing all those reports they
 2    want -- they say, "We need more with respect to app 6,
 3    7, and 8 because we think the reports are insufficient,"
 4    you know, I guess they can come back again and ask for
 5    that.
 6              But, you know, they're going to have a lot of
 7    facts to work with on ███ reports, and they're going to
 8    see this is a dry well, honestly.
 9              So I think that, you know, in terms of
10    proportionality and order of proceedings, that if you're
11    going to order us to produce those three categories, we
12    should start there.
13              And, you know, I think, again, if they want
14    information, you know, it's not -- and it's not going to
15    take a night or even 30 days to do that because even
16    Judge Chhabria ruled, when we were simply reproducing to
17    the plaintiffs, reproducing our FTC productions, meaning
18    we had a file that said "FTC Production," we could have
19    literally just forwarded it to the plaintiffs.
20              But Judge Chhabria said, "No."
21              And when the plaintiffs said, "Well, they
22    could just push forward on that file."
23              And Judge Chhabria said, "No."  They have
24    every right to review those FTC productions for
25    privilege because we produced stuff to the FTC that we
```

Page 105

```
 1    wouldn't produce to private plaintiffs because they're
 2    our regular.
 3              So too here.  We can't just hit forward on
 4    ▓▓▓ reports because as you see, embedded in the reports
 5    are a lot of information and we're going to have to
 6    review them and redact anything and log that may be
 7    privileged.  Maybe Southwell sent an e-mail to
 8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that is embedded in a report.
 9              And so, you know, again, jumping the gun, if
10    you order us to produce reports, we can do it on a
11    rolling basis, but we're going to need to have attorneys
12    put eyes on ▓▓▓ reports.  And consistent with the
13    guidance the judge gave us, withhold anything that's
14    either work product or attorney-client privilege.
15              SPECIAL MASTER GARRIE:  One of the issues --
16    we can jump into it now --
17              And so, Counsel, is there anything you want to
18    say or -- I have a question or two.
19              MR. LOESER:  We have six reports here.
20    There's not a word redacted or removed because
21    Judge Corely ordered that none of this was privileged
22    or protected by work product.
23              So it's impossible to believe that Facebook
24    genuinely believes it now gets to apply the same
25    rationale for withholding that it was -- was rejected
```