# FACEBOOK EXHIBIT AA

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley Weaver (Cal. Bar No.191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF NAMED PLAINTIFFS' CONTENT AND INFORMATION**<br><br>Judge: Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I.  PLAINTIFFS' SEPARATE STATEMENT.................................................................. 1

II.  INTRODUCTION ......................................................................................... 1

III.  RELEVANT BACKGROUND ............................................................................. 3

    A.  The Discovery Requests ........................................................................ 3

    B.  Facebook's Response ............................................................................ 3

    C.  The Resulting Briefing and Orders ........................................................... 4

    D.  Facebook's Deficient Response to Judge Corley's Orders.............................. 5

    E.  Facebook Has Discoverable Information That It Has Declined to Produce.............. 6

    F.  Plaintiffs' Unsuccessful Attempts to Mediate This Issue................................. 7

IV.  ARGUMENT.............................................................................................. 8

    A.  The Court Has Already Determined the Information Plaintiffs Seek Is Relevant—
        Whether or Not Facebook Claims That It Has Been Shared. ...................... 8

    B.  Whether the Named Plaintiffs' Information Was Shared Is a Contested Question on
        Which Plaintiffs Are Entitled to Evidence, Not Assertion ........................... 9

    C.  Facebook Has Failed to Substantiate a Disproportionate Burden in Identifying the
        Data It Possesses Relating to Nine People............................................. 11

    D.  Plaintiffs Have Made Proposals to Reduce the Burden of Production on Facebook... 13

V.  CONCLUSION.............................................................................................13

I.    **PLAINTIFFS' SEPARATE STATEMENT**

Pursuant to ¶ 6 of the Protocol for Resolving Discovery Disputes—Order No. 1, Dkt. No. 733, Plaintiffs' Separate Statement is provided as Attachment A to this Motion to Compel.

II.   **INTRODUCTION**

There are no questions more central to this litigation than what information Facebook has collected about users, what it does with that information, and specifically what it shares or makes accessible to third parties. Plaintiffs have sought to learn from the outset of discovery what Facebook has collected, analyzed and how it is used. Decl. of Derek W. Loeser, Ex. 1.[1] In 2019, Plaintiffs asked Facebook to identify the data sources containing information about the Named Plaintiffs (at the time there were thirty). Finally, last year Plaintiffs brought a motion to compel, limiting the request to just nine Named Plaintiffs. After consulting with Judge Chhabria, Judge Corley ruled on "the proper scope of discovery related to the data Facebook accumulates about the named Plaintiffs." Discovery Order No. 9 at 1. She found the following types of user-related information to be relevant:

- Data collected from a user's on-platform activity;
- Data obtained from third parties regarding a user's off-platform activities; and
- Data inferred from a user's on or off-platform activity.

*Id.* at 1-2.

Notwithstanding the Court's Order, Facebook continues to improperly impose its narrow view of relevance on the scope of discovery, producing almost no information that falls into the second and third categories that Judge Corley enumerated. In fact, it has failed to produce any new documents with the Named Plaintiffs' information since Discovery Order No. 9 issued.

Instead, Facebook limited its production to the first category—and almost exclusively from Facebook's "Download Your Information" ("DYI") tool. This tool, which did not operate until 2010, allows users to access and review some of their own platform activity, for a portion of

---

[1] Further references to "Ex. __" will be to Exhibits to the Declaration of Derek W. Loeser.

the Class Period.[2] The DYI tool excludes significant other information collected and inferred by Facebook about users, including information collected from off-platform activity and information inferred from data Facebook collects about the users.

Facebook has asserted repeatedly that Plaintiffs have conceded that they are entitled only to information that has been shared with third parties. But Plaintiffs are not required to accept Facebook's own position on what was or was not shared or made accessible. That would allow Facebook to determine unilaterally what sharing or made accessible means in this highly technical context, and then, based on its own interpretation, determine what information should be discovered and presented to the jury. These are ultimate issues of fact that a factfinder, not Facebook, must decide. Plaintiffs are not required to take Facebook's answers on trust, and, as Plaintiffs will explain in detail, they have good reasons not to do so.

Discovery Order No. 9 is not limited to "shared" information. Judge Corley refused to limit Plaintiffs' 30(b)(6) deposition to questions about shared information, Ex. 6, and expressly held that "whether particular user data is not shared, not admissible, or not monetized, is not a valid reason to object to a particular deposition question," Ex. 7.

In correspondence and other papers, Facebook has suggested that it would be unduly burdensome to produce all of the information required by Judge Corley's order. These suggestions have vaguely gestured in the direction of a burden argument rather than expressly claiming or demonstrating that one actually exists. The first step in understanding if there is a burden is identifying the data sources for all data, however collected, relating to the Named Plaintiffs, including inferred data. Plaintiffs ask that Facebook be ordered to identify the following aspects of those data sources: (1) the name of the database or data log; (2) a description of the data source's purpose and function; (3) information about the default retention status of the data source (at a minimum, whether it is retained and for how long); (4) information about the current retention status of the data source (at a minimum, whether it is retained and for how long);

---

[2] Plaintiffs have been only been able to find categories of information included in DYI from 2012 to present. Thus, there are arbitrary, temporal limitations in this data collection in addition to substantive.

and (5) where the current retention status differs from default retention status, the date the change was implemented. Following the identification of these data sources, Plaintiffs will work with Facebook and the Special Master to develop an efficient discovery plan to produce the relevant information associated with the Named Plaintiffs, sufficient to establish, on a classwide basis, Facebook's common practices throughout the Class Period. It will then be for the factfinder to determine if Facebook's use of that data, including sharing, selling, or making it available to third parties, was consistent with the promises Facebook made to Class member.[3]

## III.    RELEVANT BACKGROUND

### A.    The Discovery Requests

On November 25, 2019, Plaintiffs' served Requests for Production Nos. 9-13, which seek documents relating to the Named Plaintiffs.[4] Ex. 1 at 12-13. In brief, Request No. 9 seeks all documents relating to each of the Named Plaintiffs; Request No. 10 seeks documents sufficient to show the categories of content and information Facebook collects, tracks, and maintains about them; and Requests Nos. 11-13 seek documents identifying third parties that were able to access information about the Named Plaintiffs. On July 16, 2020, Plaintiffs also served Interrogatories 16-17, which sought the identify of all third parties and business partners that had access to Named Plaintiffs' content and information, as well the specific content and information that was accessed. Ex. 2.

### B.    Facebook's Response

In response to these requests, Facebook produced more than one million pages of individual user data it maintained relating to the Named Plaintiffs from the DYI tool. *E.g.*, Ex. 3 at 1. Facebook acknowledges that its production is entirely limited to the information the Named Plaintiffs themselves shared on Facebook. *Id.* Virtually all of it is available in the DYI Tool. Facebook produced no other information about the Named Plaintiffs, even though during the

---

[3] Plaintiffs reserve the right to address on reply relevant facts disclosed for the first time in conjunction with Facebook's Motion for a Protective Order Against Production of API Call Logs, filed the same day as this brief.

[4] The requests define "documents" broadly, consistent with its usage in Federal Rule of Civil Procedure 34(a)(1)(A). *Id.* at 8.

months of negotiations over this issue, Facebook informed Plaintiffs and acknowledged to the Court that it has substantial amounts of data about the Named Plaintiffs Ex. 10 at 8:10-13 ("There is other – there's Facebook-generated information, information generated by third parties, information received from third parties. We have not represented that that is comprehensively included in our production."); *see also id.* at 10:1-21 (Facebook explaining to Court that producing all the data and tables associated with a Named Plaintiff would be a "multiweek endeavor").

### C.    The Resulting Briefing and Orders

Because Facebook improperly limited its production in response to Plaintiffs' RFPs 9-13 to information from the DYI tool, Plaintiffs filed a motion last September to compel discovery related to these requests. Ex. 4. Plaintiffs asked the Court to compel production of sensitive information Facebook derives and collects from business partners, app developers, apps, and other sources. This request included "native, appended and behavioral data" and purportedly anonymized data that could be connected to the Named Plaintiffs. *Id.* at 7-11.

On October 8, 2020, Facebook responded to Plaintiffs' cross-motion. Ex. 3 (Dkt. No. 537). Facebook conceded that its production was limited to information derived from the Named Plaintiffs' activity on the platform. Facebook contended that all information related to the Named Plaintiffs that they did not themselves share on Facebook was outside the scope of the case; that all information not shared through one of the four theories of the case was not within the scope of the case; that Plaintiffs were not entitled to all data collected from third parties about the Named Plaintiffs; that the Stored Communications Act and Video Protection Privacy Act claims did not require the production of additional data Facebook had collected about the Named Plaintiffs; and that Facebook could not reasonably collect any of the additional information Plaintiffs sought. *Id.* at 6-10.

On October 29, 2020, Judge Corley issued Discovery Order No. 9, resolving the dispute by rejecting Facebook's contentions. Ex. 5 (Dkt. No. 557). Notably, Judge Corley "consult[ed] with the district court" before ruling "that discovery is not as limited as Facebook contends." *Id.*

at 1. Judge Corley held that "the discoverable user data at issue includes" three categories of information: "[1] Data collected from a user's on-platform activity; [2] Data obtained from third parties regarding a user's off-platform activities; and [3] Data inferred from a user's on or off-platform activity." *Id.* at 2.

On December 11, 2020, Judge Corley issued Discovery Order No. 11, further clarifying the scope of discoverable user data at issue. Ex. 6 (Dkt. No. 588). In advance of upcoming testimony from its corporate designee, Facebook sought a ruling that "user data not shared with or accessible to third parties is not relevant" and that "because Facebook does not share inferred user data, the inferred user data Facebook maintains is not relevant." *Id.* at 1. In response, Judge Corley recognized that how Facebook "specifically uses this data is an open question," provided that "[w]hat is needed now is more detail about Facebook's collection and use of user data," and ordered Facebook to provide a corporate designee to testify "regarding the discoverable user data as articulated by Discovery Order No. 9." *Id.*

On January 15, 2021, Judge Corley issued Discovery Order No. 12, providing more guidance about the scope of the upcoming corporate testimony. Ex. 7 (Dkt. No. 602). In light of continued disagreement about the scope of the testimony about user data, Judge Corley held that "whether particular user data is not shared, not admissible, or not monetized, is not a valid reason to object to a particular deposition question." *Id.* at 1-2.[5]

### D.      Facebook's Deficient Response to Judge Corley's Orders

Judge Corley's orders have not so far resulted in production of additional documents responsive to Requests for Production Nos. 9-13, and it does not appear that such productions are forthcoming. In fact, Facebook's most recent position, provided in an April 1, 2021 letter, Ex. 8, repeats the positions it took before Discovery Order No. 9 was issued. In the letter, Facebook

---

[5] Judge Corley also provided that, "[i]f the deponent is unable or unprepared to answer particular questions, that can be addressed with further, more targeted, 30(b)(6) depositions if needed." *Id.* at 2. Facebook's designees, Konstantinos Papamiltiadis and Amy Lee, were unable or unprepared to answer numerous questions about the specific issues on which Judge Corley ordered testimony: discoverable user data as defined by Discovery Order No. 9 "and how Facebook monetizes—directly or indirectly—and thus values user data." *Id.* at 1. Consistent with Discovery Order No. 12, Plaintiffs will seek additional corporate testimony on these topics.

1    again contended that data collected but not shared is irrelevant. *Id.* at 3. It also again conceded

2    that Facebook's production related to the Named Plaintiffs largely reflected information collected

3    from their on-platform activity, and that virtually all of it was available to the Named Plaintiffs

4    themselves through the DYI tool. *Id.* at 2.

5         Facebook also misleadingly asserted that Plaintiffs conceded information not shared is not

6    relevant, *id.* at 4, neglecting to note that the parties have long disputed the factual and legal

7    question of what information is shared. Relatedly, Facebook misleadingly paraphrased Discovery

8    Order No. 9 to limit discoverable information related to the Named Plaintiffs to information that

9    was shared with third parties, *id.*, ignoring Judge Corley's conclusion that "[h]ow [Facebook]

10   specifically uses this data is an open question," Ex. 6 (Dkt. No. 588) at 1. Finally, Facebook

11   stated that Facebook had completed its production of discoverable user data before Discovery

12   Order No. 9. *Id.* at 4-5.

13        Similarly, Facebook has objected to Plaintiffs' Interrogatories 16-17, which asks

14   Facebook to identify the content and information accessed by which third parties. Ex. 2.

15   Facebook has claimed that it was investigating what information it could produce in response to

16   these Interrogatories, but thus far has produced none.

17        **E.    Facebook Has Discoverable Information That It Has Declined to Produce**

18        Facebook *does* have plenty of information on the Named Plaintiffs that falls into Judge

19   Corley's second and third categories. Facebook told the Court as much last year. Ex. 10 at 8, 10.

20   And ███████████████████████████████████████████████

21   ██████████████████████████████████████ *See* Ex. 11 (FB-CA-MDL-

22   00213424-439). ████████████████████████████

23   ████████████████████████████████████████████

24   ██████████████████████████████████████

25   ████████████████████████████████████

26   ██████████████████████████████████████████

27   ████████████████████████████████████████████

28

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ██████████████████████

4     What's more, Facebook connects and integrates information generated from on-platform

5 activity with information about users that it has obtained from third parties and off-platform

6 activity. This is clear not only from internal documents, *see* Ex. 11 (FB-CA-MDL-00213424); Ex.

7 12 (FB-CA-MDL-00149613); Ex. 13 (FB-CA-MDL-00203262), but also from patent applications

8 and publicly reported information. One application published on July 6, 2017 plainly shows how

9 Facebook can associate its own profile of a user with media consumption data generated off-

10 platform. Ex. 14. Indeed, Plaintiffs have learned from investigative journalists—not Facebook—

11 that Facebook creates internal categories queried by third parties who pay Facebook for the

12 privilege of accessing users based on them. ProPublica identified some of these categories in

13 2016, which include Dissociative identity disorder, Specific social phobia, Becet's disease, Fetal

14 alcohol spectrum disorder, and Why Did I Get Married?, among more than 50,000 others.[6]

15     None of this information has been produced for the Named Plaintiffs.

16     **F.    Plaintiffs' Unsuccessful Attempts to Mediate This Issue**

17     Plaintiffs have attempted to resolve this issue repeatedly, including through mediation.

18 During the mediation sessions, and in related communications, Facebook's asserted that

19 production of all information that could be associated with the Named Plaintiffs was untenable. In

20 response, Plaintiffs repeatedly asked for information that would assist the parties in limiting the

21 burden of production on Facebook. Plaintiffs' requests included, but are not limited to:

22 • On July 9, 2021, Plaintiffs asked Facebook for a data model for the Named Plaintiffs'
23   data, a list of the APIs and SDK calls used to access the data model for the Named
     Plaintiffs, a list of third parties permitted to make the API and SDK calls against the
24   Named Plaintiffs' data. Ex. 15. Facebook did not respond.

25 • On July 18, 2021, Plaintiffs provided further clarification regarding the information

26 ───────────────
27 [6] Information available for download at Facebook Ad Categories (propublica.org) (Row 378:
   Dissociative identity disorder; Row 436: Specific social phobia; Row 592: Becet's disease; Row
28 669: Fetal alcohol spectrum disorder; Row 1000: Why Did I Get Married?).

requested in their July 9, 2021 communication. *Id.* Facebook did not respond.

- On September 10, 2021, Plaintiffs asked for the complete production of information Facebook has collected about the Named Plaintiffs or an explanation of what specific information it is withholding. Ex. 16. Facebook did not respond.

Finally, on October 6, 2021, the Special Master declared impasse on the issue of "Production of Named Plaintiffs' data in compliance with Dkt. No. 557."

## IV.   ARGUMENT

### A.   The Court Has Already Determined the Information Plaintiffs Seek Is Relevant—Whether or Not Facebook Claims That It Has Been Shared.

About a year ago, after several months of negotiations, the parties submitted briefs to Judge Corley on whether the information about users' activities on the Facebook platform was the only kind of relevant information. On this issue, Judge Corley sided with Plaintiffs, "rul[ing]" that "the discoverable user data at issue includes" not only (1) "[d]ata collected from a user's on-platform activity," but also (2) "[d]ata obtained from third parties regarding a user's off-platform activities," and (3) "[d]ata inferred from a user's on or off-platform activity." Discovery Order No. 9 at 2. Facebook has produced almost no discovery in the second or third categories encompassed by Judge Corley's order.

Facebook, pointing largely to the parties' briefs, has argued that information within the second and third categories listed by Judge Corley is relevant only if it has been shared with a third party. This argument is erroneous for several independently sufficient reasons.

*First*, this argument contradicts the plain language of Discovery Order No. 9. In listing the three categories of discoverable user information, Judge Corley did not require the information to have been shared with a third party. Facebook should not be allowed to read such a requirement into the order, particularly in light of the fact - recognized by Judge Corley – that how Facebook uses information is an "open issue."

*Second*, Facebook's argument ignores what happened in the immediate aftermath of Discovery Order No. 9. After the order was issued, Facebook told Plaintiffs that it had already produced all the information related to the Named Plaintiffs that had been shared with third parties. *See* Ex. 17 (Hr'g Tr. 17-18 (Dec. 9, 2020)). Plaintiffs suggested that a 30(b)(6) deposition

on users' information would be appropriate. *See id.* at 28-29. The Court agreed. *See id.* at 29-30; Discovery Order No. 11 at 1-2.

Then, when the parties were not able to agree on the topics for the 30(b)(6) deposition, Judge Corley issued Discovery Order No. 12 on January 15, 2021. There, she stated that one of the topics was "discoverable user data as defined by Discovery Order No. 9." Discovery Order No. 12 at 1. And she noted that "whether particular user data *is not shared*, not admissible, or not monetized, *is not a valid reason to object to a particular deposition question*." *Id.* at 1-2 (emphasis added).

Thus, when Facebook asserted that it had already turned over all the discoverable information defined by Discovery Order No. 9, Corley did not allow Facebook to limit discovery to what it claimed had been shared. Rather, she recognized that Plaintiffs were entitled to test Facebook's claims about how users' information was shared, used, and monetized. That is precisely what Plaintiffs are requesting through this motion.

### B.   Whether the Named Plaintiffs' Information Was Shared Is a Contested Question on Which Plaintiffs Are Entitled to Evidence, Not Assertion

Plaintiffs are not required to accept Facebook's contention that other information was not shared. This is so for several reasons.

*First*, there is evidence that Facebook shared information in Judge Corley's other two categories—information inferred about a user and information about a user's off-platform activities—with third parties. An email exchange between two directors at Facebook touches on about what ████████████████████████████████████████████████████████████████████ Ex. 18. The exchange identifies that information: (1) ████████████████████████ (2) ████████████████████████████████████ and (3) ███████████████████████ ██████████████████████████████████████████████████████████████████████ *Id.* Note that the second and third kinds of information fall neatly into Judge Corley's second and third categories. While Facebook has called this email discussion "hypothetical," it seems best read—and at the very least it is *reasonable* to read it—as describing Facebook's actual practices.

1    Moreover, in connection with its ADI, Facebook asked app developers ▮▮▮▮▮▮

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮ Ex. 23 (FB-CA-MDL-00377690, question 18) (emphasis added). This

4    question strongly suggests that Facebook was shared inferred data with app developers. Finally,

5    there is location-related metadata associated with posts made by Named Plaintiffs that is

6    accessible to third parties but that has not been produced and is not available through Facebook's

7    DYI tool.[7]

8        *Second*, internal documents demonstrate that Facebook itself does not know what

9    information may have been shared with third parties. ▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮ Ex. 19 (FB-CA-MDL-0195247); *see also* Ex. 20 at 6:2-4 ("What we cannot produce --

15   because it's simply not recorded, it's not the way our platform is constructed – is what data was

16   actually shared . . . .") (statement of Mr. Snyder). Indeed, Facebook had to launch its ADI to

17   determine which third parties are taking what content and information about its users. *See*

18   *generally* Ex. 23 (FB_CA-MDL-00377690). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see id.*, Question 10), and ▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*, Question 11). ▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮ (*id.*, Question 12), and ▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮ (*id.*, Question 13). As a result, Facebook is trying to identify for itself

25   what user information was shared and through what channels. It is difficult to credit Facebook's

26

27   [7] Documents produced by reveal that third-party applications could obtain this metadata about

28   users. *See* Ex. 21 (FB-CA-MDL-01938268). Such sharing with applications also extended to data and metadata about users' friends. *Id.*

1    assertion that it has produced all shared information when it is still in the midst of an elaborate

2    investigation seeking to determine what information what information it shared with third parties.

3         *Third*, the question of what information Facebook shared is *the* central issue in this case.

4    For instance, one of Plaintiffs' claims—and indeed the fourth category of misconduct recognized

5    by Judge Chhabria—is whether Facebook properly monitored user content and information, and

6    in particular whether it had sufficient safeguards in place to ensure that user content and

7    information would not be disclosed without consent. Foundational to that claim is determining

8    what information was made accessible to third parties in the first place.

9         *Fourth*, requiring Plaintiffs to defer to Facebook's own account of its practices contradicts

10   the whole point of discovery. *See, e.g.*, *Stein v. Farmers Ins. Co. of Ariz.*, No.

11   319CV00410DMSAHG, 2020 WL 7240318, at *3 (S.D. Cal. Dec. 8, 2020) (declining to require

12   policy holder to depend only on "the statements and testimony of the insurer's employees as to

13   the evaluations and motivations of the insurer"); *Fed. Indus., Inc. v. Cameron Techs. US, Inc.*,

14   No. CV 07-1098-VBF(CTX), 2008 WL 11343314, at *3 (C.D. Cal. Oct. 16, 2008) (party was

15   "entitled to probe the veracity of and support for [the other's] claim" of damages and causation).

16   If Facebook is so confident that this information was in fact not shared or made accessible, then it

17   should have no problem disclosing this information to defend its position.

18        *Fifth*, Facebook's claim about what it did and did not share or make accessible raises the

19   question what sharing information means. From the beginning of this case, the parties have

20   disputed what it means to share information. The definition of what it means to share users'

21   information in the context of this case—where the sharing does not include anything physical,

22   and where information can be provided to third parties without ever leaving Facebook's

23   systems—is likely to remain contested through summary judgment, if not trial, and will be

24   informed by the discovery Plaintiffs seek here.

25        **C.      Facebook Has Failed to Substantiate a Disproportionate Burden in
              Identifying the Data It Possesses Relating to Nine People.**
26

27        Once a party seeking discovery has established that the discovery is relevant, the party

28   resisting discovery bears the burden of showing "why the discovery is irrelevant, overly broad, or

1   unduly burdensome or oppressive, and thus should not be permitted." *Proofpoint, Inc. v. Vade*

2   *Secure, Inc.*, No. 19CV04238MMCRMI, 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020)

3   (citing *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC (RMI), 2020 WL 6591210,

4   at *4 (N.D. Cal. Nov. 11, 2020); *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D.

5   431, 434 (N.D. Cal. 2014); *Dominguez v. Schwarzenegger*, No. C 09-2306 CW (JL), 2010 WL

6   3341038, at *3 (N.D. Cal. Aug. 25, 2010)). This is a "heavy burden." *Dairy v. Harry Shelton*

7   *Livestock, LLC*, No. 18-CV-06357-RMI, 2021 WL 4476778, at *1 (N.D. Cal. Sept. 30, 2021).

8   The party resisting discovery cannot rest on an assertion of burden, but "must actually

9   demonstrate the nature of the burden" with affidavits or other evidence. *Dish Network, LLC. v.*

10   *Jadoo TV, Inc.*, No. CV 18-9768-FMO (KSX), 2020 WL 2070990, at *3 (C.D. Cal. Feb. 28,

11   2020).

12       Here, Facebook asserts that producing all the information that could be associated with the

13   Named Plaintiffs is disproportionately burdensome, but in more than a year of conferring, it has

14   not provided any evidence for that assertion. Moreover, if there really is a burden associated with

15   Plaintiffs' request, it is because █████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████

17   ███████  Plaintiffs, who are merely seeking the information Facebook has that can be associated

18   with the Named Plaintiffs, should not be worse off because of Facebook's own data architecture

19   decisions. *See, e.g.*, *Lou v. Ma Labs., Inc.*, No. 12-CV-05409 WHA (NC), 2013 WL 12328278, at

20   *2 (N.D. Cal. Mar. 28, 2013) ("The Court finds that the burden defendants claim excuses them

21   from producing such documents is of their own making, and thus not compelling. . . .

22   [D]efendants are the master of their own record keeping."), *clarified on denial of reconsideration*,

23   No. 12-CV-05409 WHA NC, 2013 WL 1615785 (N.D. Cal. Apr. 15, 2013).

24       Judge Chhabria's early admonition to Facebook about burden is relevant here: "[T]here is

25   often a lot of talk about proportionality and whatnot. This is a big case. It is a significant issue. . .

26   . [T]his is not the type of case where we are going to be saying: Well, that might end up—that

27   effort might end up uncovering some relevant information; but, you know, it is just too expensive

28

or difficult, and so we are not going to make Facebook do it." Ex. 22 at 29:3-10.

**D.    Plaintiffs Have Made Proposals to Reduce the Burden of Production on Facebook**

Nevertheless, Plaintiffs have identified a series of ways Facebook could provide preliminary information that would enable the parties to meaningfully confer regarding the possibility of agreeing on a less burdensome production. Specifically, Plaintiffs have asked for production of a data model for the Named Plaintiffs' information. Ex. 15. Plaintiffs have asked Facebook to provide a list of the APIs and SDK calls used to access the Named Plaintiffs' data model. *Id.* Plaintiffs have asked for a list of third parties permitted to make such API and SDK calls against the Named Plaintiffs' data. *Id.* Plaintiffs have asked for schemas identifying how the Named Plaintiffs' information is received, stored, and shared. *Id.* Plaintiffs have asked for snapshots in time of all information Facebook had that is capable of being associated with the Named Plaintiffs on three specific dates: December 17, 2019; May 20, 2021; and August 18, 2021. Plaintiffs have even asked Facebook to simply identify the information it can associate with the Named Plaintiffs that it is not producing, so that the parties' dispute can be defined by a common understanding of the information at issue. Ex. 16.

Although Facebook has responded to these proposals with silence, Plaintiffs believe there is still a productive path forward. To understand the burden associated with the information Plaintiffs are requesting, Facebook should be ordered to identify all data sources that may contain information relating to the Named Plaintiffs.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiffs move to compel Facebook to identify all data sources that may contain information relating to the Named Plaintiffs, including but not limited to their profiles and identifiers. Specifically, Plaintiffs request that Facebook provide: (1) the name of the database or data log; (2) a description of the data source's purpose and function; (3) information about the default retention status of the data source (at a minimum, whether it is retained and for how long); (4) information about the current retention status of the data source (at a minimum, whether it is retained and for how long); and (5) where current retention status differs from

1    default retention status, the date the change was implemented. For each data source, Facebook

2    should provide, at a minimum: (1) the data schema; (2) definitions and descriptions of each field;

3    (3) tool(s) which Facebook use to search each data source; and (4) instruction sets and manuals

4    for all tools identified as being used by Facebook to search any data source identified in this step.

5    With the Special Master's assistance, the parties can use this information to develop an efficient

6    discovery plan going forward.

7    Dated: October 18, 2021                                   Respectfully submitted,

8    KELLER ROHRBACK L.L.P.                              BLEICHMAR FONTI & AULD LLP

9    By:      */s/ Derek W. Loeser*                      By:      */s/ Lesley E. Weaver*
10             Derek W. Loeser                                    Lesley E. Weaver

11   Derek W. Loeser (admitted *pro hac vice*)          Lesley E. Weaver (SBN 191305)
     Cari Campen Laufenberg (admitted *pro hac vice*)   Anne K. Davis (SBN 267909)
12   David Ko (admitted *pro hac vice*)                 Matthew S. Melamed (SBN 260272)
     Adele A. Daniel (admitted *pro hac vice*)          Angelica M. Ornelas (SBN 285929)
13   Benjamin Gould (SBN 250630)                        Joshua D. Samra (SBN 313050)
     1201 Third Avenue, Suite 3200                      555 12th Street, Suite 1600
14   Seattle, WA 98101                                  Oakland, CA 94607
     Tel.: (206) 623-1900                               Tel.: (415) 445-4003
15   Fax: (206) 623-3384                                Fax: (415) 445-4020
     dloeser@kellerrohrback.com                         lweaver@bfalaw.com
16   claufenberg@kellerrohrback.com                     adavis@bfalaw.com
     dko@kellerrohrback.com                             mmelamed@bfalaw.com
17   adaniel@kellerrohrback.com                         aornelas@bfalaw.com
     bgould@kellerrohrback.com                          jsamra@bfalaw.com
18
19   Christopher Springer (SBN 291180)
     801 Garden Street, Suite 301
20   Santa Barbara, CA 93101
     Tel.: (805) 456-1496
21   Fax: (805) 456-1497
     cspringer@kellerrohrback.com
22
23   *Plaintiffs' Co-Lead Counsel*

24

25

26

27

28