GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
　osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
　klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
　rring@gibsondunn.com
Martie Kutscher (SBN 302650)
　mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
　dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
　jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF ORIN SNYDER IN SUPPORT OF OPPOSITION OF FACEBOOK, INC., GIBSON, DUNN & CRUTCHER LLP, AND ORIN SNYDER TO PLAINTIFFS' MOTION FOR SANCTIONS** |

**DECLARATION OF ORIN SNYDER**

I, Orin Snyder, declare as follows:

1. I am a partner of Gibson, Dunn & Crutcher LLP, and lead counsel for Defendant Facebook, Inc. I submit this declaration in support of Facebook's opposition to Plaintiffs' Motion for Sanctions. I have personal knowledge of the matters set forth herein, and if called to testify, I could and would competently testify thereto.

2. I have been practicing law for more than 35 years. I started my career in private practice, served for almost five years as a federal prosecutor, and have been in private practice continuously since leaving public service. I have appeared in courts throughout the country for clients of all kinds, from individuals, to large corporations, to start-up companies, to non-profit organizations, to advocacy groups, to pro bono organizations, to public officials, and more. From the earliest days of my career, I have been conscious of the critical importance of a lawyer's duty of candor to the tribunal. My duty of candor is central to who I am as a lawyer and as a person. My duty to act as an advocate for my client is equally unwavering, but my advocacy never interferes with my duty of candor. In my more than 35 years of practice, I have never been sanctioned.

3. This has been a hard-fought case. From our very first appearance before this Court, it was apparent that the parties had vastly different views of the merits of the asserted claims and the metes and bounds of permissible discovery. It did not surprise me when the parties wound up contesting numerous discovery issues. As Facebook's lead counsel, I believe Facebook's positions at all times have been legally justified, factually supported, and thus reasonably likely to prevail. We did not fight just for the sake of fighting. And at no time—not once ever—did Facebook take a position in a discovery dispute for the purpose of impeding or slowing discovery. I am mortified the Court has formed an impression, even a preliminary impression, that my law firm or I may have acted otherwise. The concept of stonewalling discovery is as foreign to me and my team as it is abhorrent to the Court. Again, we never took a position on a single discovery issue for the purpose of impeding discovery.

4. In seeking sanctions against me personally, Plaintiffs' motion focuses on a handful of specific comments I made to the Court. I address each directly.

**The March 2020 Conference**

5. Page 1 of Plaintiffs' motion attacks statements I made during a telephonic status conference in March 2020 that Facebook and Gibson Dunn were eager to produce documents because I believed the documents we would produce would enable us to win this case. When I told the Court we intended to comply with our discovery obligations, it was true, and it remains true today. My goal in every case is to comply with my client's discovery obligations to the full extent so that the case can proceed to the merits. I simply do not play discovery games. I never have and I never will. And while I could not have known at the time I made that statement that we were on the doorstep of a two-year pandemic that would uproot the personal and professional lives of my colleagues at Gibson Dunn and Facebook, I believe that I and everyone on our team did the very best we could in these difficult and trying circumstances. And I can absolutely assure the Court we never acted with any dilatory purpose. Likewise, I believed in March 2020 that the documents we intended to produce (and have since produced) would support Facebook's defenses, and it remains my opinion today that the documents, including the ADI documents, bear out my view that Plaintiffs' case lacks merit.

**The December 4, 2021 Hearing**

6. Plaintiffs' motion also says (at 21–22) there was no support for an argument I made during a three-hour hearing before the Special Master on Saturday, December 4, 2021. In argument, I said there was "a lot of case law" supporting Facebook's position that by granting only some of the relief Plaintiffs requested in their motion to compel production of certain ADI documents, Judge Corley's September 2021 ruling had implicitly denied the other relief Plaintiffs had requested in their motion. My statement that there was a lot of case law was correct. The Ninth Circuit case Facebook later cited in its briefing before the Special Master—*California Department of Social Services v. Leavitt*—specifically supports (and cites three additional Ninth Circuit cases recognizing) the principle that a request for discovery can be "implicitly denied" by an order that does "not explicitly address the request for discovery." *See* 523 F.3d 1025, 1031–32 & n.9 (9th Cir. 2008). Plaintiffs have argued that this case is distinguishable, but I don't believe their proffered distinctions matter to the principle for which we cited the case. I am also aware of additional authority, including from the United States Supreme Court, standing for the more general proposition that relief not expressly granted can be

"implicitly rejected" even by an order that does not "expressly rule upon" the requested relief. *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 8 n.10 (1984); *see also, e.g.*, *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004) (a "district court's failure to address [a party's] arguments may be properly construed as an implicit denial of those arguments"). When I referred to case law from the Supreme Court on down, I was thinking of the general proposition described above. I did not have a specific case in mind, and that is why I did not identify any particular case by name or citation. When Facebook subsequently moved for reconsideration of the Special Master's ADI ruling and appealed that ruling to Judge Corley, we relied on the Ninth Circuit's *Leavitt* case, both in our motion papers and at the appeal hearing, because it was the most directly on-point authority in the discovery context. I believed then, and believe now, that it most specifically supported our position. Our briefs did not cite, or ask the Special Master to rely on, the more general Supreme Court authority or other authority (although we certainly could have for the more general proposition). In the end, Judge Corley mooted the entire issue when she clarified at the January 11, 2022 appeal hearing that she had not intended for her September 2021 order to also deny Plaintiffs' request for production of ADI-related communications.

7.    Plaintiffs also fault me (at 18–20) for that hearing being "long-delayed" by 23 days—from November 11, 2021 (the date it was originally scheduled) to December 4, 2021 (the date it went forward). Special Master Garrie scheduled the hearing for Thursday, November 11, in an order he issued on October 26, 2021. That November 11 date, however, overlapped with a key date in another case —specifically, the date of my cross-examination of a key witness in a jury trial in the New York Supreme Court. The New York trial, as Plaintiffs acknowledge, had been on calendar for more than six months by the time the Special Master entered his order. *See* Plaintiffs' Exhibit 21. In light of my irreconcilable conflict, I promptly asked the Special Master to adjourn the hearing to a date that would not conflict with my previously scheduled trial. In an effort to avoid delaying the hearing any more than necessary, I offered to make myself available for the hearing on a weekend day. The Special Master kindly accommodated my schedule and continued the hearing to Saturday, December 4. I was deeply grateful for that accommodation. At no point during that scheduling process did Plaintiffs allege, or the Special Master suggest, that my request to continue the hearing had been made to cause

delay or for any other improper purpose. And during my trial, which lasted approximately one month, I did everything I could to ensure my trial commitments would not impede the timely progress of this case. While I was in trial, I remained in touch with my team via e-mail, phone, and text. I also participated in the entirety of the parties' first settlement mediation with Judge Gandhi, which also occurred on a Saturday (November 20), during another week in which the New York trial was taking place.

**The Alleged "False Narrative"**

8. Finally, at various points (pages 2 and 42–47 ), Plaintiffs' motion argues that I created a "false narrative" about discovery—in particular, during a January 19, 2022 hearing before the Special Master—by expressing the following opinions: that Plaintiffs have sought discovery that is irrelevant and not proportional to the needs of the case, that Plaintiffs are not interested in concluding discovery and moving to the merits, and that the Special Master should impose limits on the discovery process. Those statements honestly and accurately reflected my opinions about this case when I made them, and they continue to reflect my opinions today. While I am firmly of the belief that every plaintiff is entitled to prosecute his or her case unless and until it is dismissed, I am equally firm in my belief that a substantial portion of the discovery these plaintiffs have pursued has been disproportionate to the scope and needs of this case. I recall the telephonic hearing in March 2020 when the Court posited that the documents Facebook had produced to the FTC "would cover the vast majority of the documents that the Plaintiffs would want in this litigation," asked Plaintiffs, "Am I wrong about that?", and heard no objection or push-back. (ECF 391 at 4:14:16.) Yet even after Facebook produced those documents within a matter of months, Plaintiffs have since spent the last two years seeking voluminous additional discovery, much of which is, in my opinion, not relevant to this case. At no point during those two years, however, has it been our purpose or intent to deprive Plaintiffs of discovery to which they are lawfully entitled. Rather, my purpose in making the statements that Plaintiffs now criticize was simply to advocate for my client, and advance my client's interests, by persuading the Special Master or the Court that Plaintiffs were not lawfully entitled to all of the discovery they were seeking because it was either irrelevant, disproportionate to the needs of the case, or both. And in many instances, our advocacy succeeded. Facebook has won many discovery disputes, defeating a number of Plaintiffs'

motions to compel outright and limiting the relief awarded to Plaintiffs on many other occasions; successfully preserving certain important claims of attorney-client privilege and trade-secret privilege; and obtaining reconsideration, on proportionality grounds, in the disputes over both ADI and named plaintiff data that meaningfully narrowed Facebook's production obligations and enabled Facebook to timely comply with various production deadlines.  Where we litigated and prevailed on discovery matters, we did so based on our good faith belief that limiting or clarifying various of Plaintiffs' discovery requests was in the legitimate best interests of our client.  And where we litigated a discovery issue and did not prevail, in each instance we believed in the utmost good faith that our arguments were meritorious and likely to succeed.  In short, the statements I made at the hearing on January 19, 2022, accurately and honestly reflect my opinions about how discovery has progressed in this case, and I believe the record bears out that those opinions were reasonable and well-founded.

9.  It is my sincere belief that we have complied with all of the various discovery orders and deadlines in this case, and I can also say that we have redoubled our efforts since we heard the Court's comments at the case management conference in February, adding experienced partners and associates to the case to make sure that we continue meeting all of Facebook's obligations in this case and, whenever possible, speed up the production of any remaining documents and information.  We also recently approached Plaintiffs to voluntarily produce additional materials beyond those subject to a recent discovery order.  We will continue to approach our obligations in this case with vigor and in good faith, and with the professionalism that this Court justifiably expects.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed on April 11, 2022, at New York, New York.

_____
Orin Snyder