# Exhibit 10

Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

IN RE FACEBOOK, INC., CONSUMER )
PRIVACY USER PROFILE           )
LITIGATION.                    )
                               )   **NO. 18-md-02843 VC (JSC)**
                               )
_____)

                    San Francisco, California
                    Tuesday, April 6, 2021


              **TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**


**APPEARANCES BY ZOOM WEBINAR:**

For Plaintiffs:
                    KELLER ROHRBACK LLP
                    1201 Third Avenue - Suite 3200
                    Seattle, Washington  98101
              BY:   **DEREK W. LOESER, ATTORNEY AT LAW**
                    **CARI C. LAUFENBERG, ATTORNEY AT LAW**
                    **DAVID J. KO, ATTORNEY AT LAW**

                    KELLER ROHRBACK LLP
                    801 Garden Street
                    Santa Barbara, California  93101
              BY:   **CHRISTOPHER L. SPRINGER, ATTORNEY AT LAW**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

```
 1   APPEARANCES BY ZOOM WEBINAR:   (CONTINUED)

 2   For Plaintiffs:
                             BLEICHMAR, FONTI & AULD LLP
 3                           555 12th Street - Suite 1600
                             Oakland, California  94607
 4                   BY:   LESLEY E. WEAVER, ATTORNEY AT LAW
                           MATTHEW S. MELAMED, ATTORNEY AT LAW
 5                         ANNE K. DAVIS, ATTORNEY AT LAW

 6   For Defendant:
                             GIBSON, DUNN & CRUTCHER LLP
 7                           200 Park Avenue
                             New York, New York  10166
 8                   BY:   ORIN SNYDER, ATTORNEY AT LAW

 9                           GIBSON, DUNN & CRUTCHER LLP
                             555 Mission Street - Suite 3000
10                           San Francisco, California  94105
                     BY:   MARTIE P. KUTSCHER CLARK, ATTORNEY AT LAW
11
                             GIBSON, DUNN & CRUTCHER LLP
12                           2100 McKinney Avenue - Suite 1100
                             Dallas, Texas  75201
13                   BY:   RUSSELL H. FALCONER, ATTORNEY AT LAW

14                           GIBSON, DUNN & CRUTCHER LLP
                             333 South Grand Avenue
15                           Los Angeles, California  90071
                     BY:   DEBORAH L. STEIN, ATTORNEY AT LAW
16
     Also Present:          Judge Gail Andler, JAMS
17                          Discovery Mediator

18

19

20

21

22

23

24

25
```

| | |
|---|---|

**Tuesday - April 6, 2021**                                    **9:00 a.m.**

                         **P R O C E E D I N G S**

                              **---000---**

    **THE CLERK:**  Court is now in session.  The Honorable
Jacqueline Scott Corley presiding.

   Calling Civil action 3:18-md-2843, In Re Facebook, Inc.,
Consumer Privacy User Profile Litigation.

   And you can start.

    **MR. LOESER:**  Good morning, Your Honor.  Derek Loeser
from Keller Rohrback with Cari Laufenberg, David Ko, and Chris
Springer also from Keller Rohrback.

    **THE COURT:**  Good morning.

    **MS. WEAVER:**  Good morning, Your Honor.  Leslie Weaver
of Bleichmar, Fonti & Auld with Matt Melamed and Anne Davis.

    **THE COURT:**  Good morning.

    **MR. SNYDER:**  Good morning, Your Honor, and good
morning, Judge Andler.  This is Orin Snyder from Gibson Dunn.
With me on the Zoom conference are Deborah Stein, Russell
Falconer, and Martie Kutscher Clark.  I think that's it for our
group.

    **THE COURT:**  Yes.  That's all I see.  Good morning.

    **MR. SNYDER:**  Good morning.

    **JUDGE ANDLER:**  Good morning, Your Honor.  Gail Andler
from JAMS.

    **THE COURT:**  Good morning, Judge Andler.

1    there's anything else, about the ADI documents, the app

2    developer investigation documents.

3        And sort of let me tell you what my thinking is about

4    that, and I did review the Massachusetts Supreme -- the Supreme

5    Judicial Court -- I can't remember -- the highest court of

6    Massachusetts decision; and my view is -- and also I think I

7    have the benefit, which they didn't have, at looking at some

8    documents in camera -- my view is, and this is what I'm going

9    to tell you my tentative view is, is that certainly the

10   investigation was done in anticipation of litigation, but also

11   I can't conceive of how it wouldn't have been done otherwise as

12   well; right?

13       I mean, Facebook wasn't going to let -- well, because they

14   said it.  When they said to the public and to their users

15   "We're doing this to protect you," they didn't say "But our

16   primary purpose was to protect our shareholders"; right?

17       I mean, if they were immune from liability, they still

18   would have gone and looked back even though the platform had

19   changed; right?  There are some apps that were suspended

20   because they were -- or you considered them to be bad actors or

21   concerned about that, and I think that would have been done.

22       All that's to say, though, there certainly are going to be

23   documents in there that are, A, attorney-client privilege; or,

24   B, attorney work product.  For example, if Gibson Dunn made

25   edits to requests for information or those kinds of things,

1    that's classic work product that's not going to be

2    discoverable.  Any advice that was given is not going to be

3    discoverable.

4        But in terms of the ADI team, at least from what I've

5    seen, it looks like a lot of that was just generated there

6    separate that may have then been reviewed but would have been

7    done anyway.

8        But also the way I was looking at it in looking through

9    and looking at those documents is that a lot of it I don't

10   think is relevant at all, and so what I wanted to know from

11   plaintiffs -- and this I sort of was thinking about it after

12   reading the Massachusetts case where the AG did much more

13   targeted discovery, and sort of get a sense from the plaintiffs

14   because I think this will be helpful.

15       Because I'm afraid I'm just going to rule on these 20

16   documents and then we're going to be back here with every

17   single document.  I don't think plaintiffs need every single

18   document.  There's certain information, like you say, that you

19   need and maybe it's not even going to be privilege.  There's

20   going to be other information that may be privilege and I

21   actually think you don't even need.

22       So what is it precisely that the plaintiffs need from that

23   investigation?

24           MR. KO:  Your Honor, this is David Ko.  I can speak to

25   that first.

1   I think to directly answer that question, what we need and

2   what we've asked for and what we've identified in our brief are

3   the facts underlying the investigation that relate to our

4   claims, and in particular which apps were in violation or in

5   potential violation of which Facebook policies and over what

6   period of time these entities were in violation of these

7   policies and the specific conduct that caused them to be in

8   violation.  And that's obviously relevant to our claims

9   regarding whether or not Facebook allowed third parties to

10  access user information and whether Facebook properly monitored

11  the disclosure of this information as they claim they did.

12      And so that really relates big picture, you know, our

13  argument that the facts underlying these communications are

14  what we're really seeking.  That really I think responds to

15  your question most directly.

16      THE COURT:  Right.  So you don't need to know -- you

17  don't need to know, like, when a request for information was

18  sent.  I know you've been provided responses to those so I

19  don't think I'm saying anything.  You don't even know when it

20  was sent or re-sent or when the response was received or any of

21  those kinds of things.  You want -- well, you have been

22  provided with the responses -- right? -- and the actual

23  requests that went out.

24      MR. KO:  Correct.

25      THE COURT:  And -- okay.

 1          All right.  So let me hear from Facebook.  With that in

 2   mind in terms of your privilege log, how does that change that

 3   or does it, or maybe you already understood that?

 4          **MS. KUTSCHER CLARK:**  Your Honor, it's a little bit

 5   difficult because this is the first time we're hearing this

 6   request.  To date we have never received an information

 7   request.  We just received a request for all of the ADI

 8   documents.  So I think this is definitely something we would

 9   need to think about a little bit more.

10          I think what might make sense is if plaintiffs want to

11   issue a request, then we can look at it in context; but what

12   was a little bit tricky in the briefing was we were dealing

13   with a request for all of the ADI documents and then plaintiffs

14   said, "Well, give us the underlying facts," but we had never

15   received a specific request for specific facts.

16          **MR. KO:**  Your Honor, I think that's a

17   mischaracterization.  I think we've asked repeatedly about this

18   information.  You know, we've conferred about ADI, as you know,

19   for well -- almost over a year now and we presented these

20   issues to Your Honor last June.  You know, you accurately

21   ordered this privilege log to make sure that you had the proper

22   context.

23          And throughout those discussions, we have asked over and

24   over again that we obtain the actual facts underlying this

25   investigation; and if there's any doubt about this, this is

1   obviously included in our briefing.  We made it clear that

2   that's what we wanted in our briefing and, in fact, we put it

3   in our proposed order.  So I'm a bit surprised that

4   Ms. Kutscher Clark believes that this is the first time that --

5          **THE COURT:**  All right.  This is good because it's

6   giving Judge Andler a hint of why I thought a discovery

7   mediator would be useful.

8      So let me ask you this:  Do you need information, then,

9   about apps that were investigated but Facebook in the end took

10  no action against?

11         **MR. KO:**  Yeah.  That's why I was very precise in

12  saying that there could have been a potential violation.  We

13  need to know that -- we need to know the thought process, if

14  you will.  I mean, not the privileged information but to the

15  extent there was an escalation but not an enforcement, that is

16  still relevant because that relates to whether or not they're

17  actually and accurately monitoring the disclosure of this

18  information as they suggest.

19         **THE COURT:**  Okay.

20         **MS. KUTSCHER CLARK:**  Your Honor, I think we need an

21  actual discovery request.  I hear everything Mr. Ko is saying,

22  and of course we've discussed this extensively, but we do not

23  have any interrogatories asking for information like this.

24  Right now what I'm hearing is "We want all of the facts

25  underlying ADI," and that's a difficult thing to respond to.

1    So I think this needs to start with an actual request in

2    writing that we can look at and evaluate, and then we can

3    narrow it from there.  But, you know, a request for any

4    information underlying ADI or, for instance, Mr. Ko is saying

5    any violation of a Facebook policy, Facebook has a lot of

6    policies.  Some of those policies might be relevant here, some

7    of them might not be.  So I think we need to see an actual

8    request that we can evaluate.

9         **MR. SNYDER:**  Martie, can I jump in here?

10    Judge, we agree that a narrowing makes a lot of sense and

11    we're asking for a discovery request not to have form over

12    substance or to delay but to facilitate and hopefully we can

13    cut through all this because I think what you said makes

14    absolute sense.

15    For example, we've already given them the suspensions

16    list.  That, they have.  Escalations -- you know, a lot of the

17    escalations involved my firm and legal advice; some did, some

18    didn't.  So if we see -- you know, "all the facts" is very

19    vague.  We don't know what that means because we have thousands

20    of facts -- millions of facts, because we had investigators

21    looking at all myriad of things.  So as precise a request as

22    they can make, then we can hopefully cut through a lot of this

23    and give them the nonprivilege stuff that is responsive and

24    relevant.

25    I mean, we really want to get through this ADI piece, but

 1  right now we're kind of shooting in the dark because all facts

 2  underlying the investigation, having been involved in that

 3  investigation, I don't know what that means.  I really don't.

 4        **THE COURT:**  That's not what they're -- I understand

 5  that.

 6        So then my next question is, because you had suggested,

 7  I'm prepared then to rule on the motion but Facebook had

 8  said -- and, as I said, my tentative view is I don't

 9  necessarily agree with the Massachusetts -- well, I think we

10  all agree about the dual purpose doctrine and what the

11  Ninth Circuit rule is with respect to that.  The Massachusetts

12  court kind of -- kind of applied the same rule.  I mean, they

13  at one point did use the same rule, and without really any

14  analysis sort of came to the conclusion that it was -- well,

15  I'm not sure what it was.  I'm not sure they were applying the

16  same rule as the Ninth Circuit.

17        So I'm prepared to issue a ruling, but I wanted to ask

18  Facebook about what they're -- I don't know what more you would

19  say, but I want to make sure it's fair because I understand --

20  it's clear that this investigation was set up with the intent

21  to make it privileged.  That's clear.  That's not dispositive,

22  but that's clear.  So given that, I do want to make sure that

23  they are able to fairly present it, and so that's why --

24        **MR. SNYDER:**  Because I would respectfully disagree

25  with the following:  I think that because when it was set up,

1  it was set up for the reason you said because we wanted to

2  assure our users that the platform, you know, was safe and had

3  been safe in the past, but it was not set up so that we can --

4  so that we can shroud it in a privilege.  It was set up -- it

5  was set up in a privilege way because we understood that to the

6  extent we have to take enforcement action, it would require,

7  you know, legal advice and the lawyers were embedded in and

8  involved in, you know, hundreds and hundreds of decisions on a

9  weekly, daily basis about escalation, about all manner of the

10  investigation.

11      So it wasn't just that lawyers were put in to make it

12  privilege.  Lawyers were embedded in.  In fact, we set up the

13  investigation because it required legal advice at every turn.

14      **THE COURT:**  That may be what you're saying.  I don't

15  know that I have seen -- I don't know that I have --

16      **MR. SNYDER:**  I can --

17      **THE COURT:**  I don't know that I've seen that.  That's

18  why I want to ask:  Is there anything else that you want to

19  present in an admissible format as opposed to the attorney --

20      **MR. SNYDER:**  Yes.  What I would like to do,

21  Your Honor, because my partner Alex Southwell was literally

22  living in Palo Alto with a number of my partners and associates

23  for weeks if not months, in the guts of this investigation,

24  again, not as a fig leaf but as lawyers practicing law and

25  advising the client, I think it would be helpful for the Court

1   in its determination for us to put in an affidavit where we can

2   outline in a nonprivilege way the extent to which legal advice

3   was involved at every step in the investigation.

4        That might even be helpful to the plaintiffs in then

5   identifying what it is they want to know because, as I said,

6   all of the -- all -- I don't know what percentage but a

7   substantial number of the decisions made by the investigators

8   on the field were made sitting next to lawyers, texting,

9   e-mailing with lawyers, at every turn.  Hundreds -- I haven't

10   seen our privilege log, but it must be tens if not hundreds of

11   thousands of entries of iterative discussions between my team

12   and the investigators because they were living together for

13   months and months and months doing this investigation hand in

14   glove, hand in hand, shoulder to shoulder.

15        THE COURT:  Yeah, but don't forget what the test is in

16   the Ninth Circuit is dual purpose and would the investigation

17   have occurred anyway; and it's inconceivable to me that if

18   Facebook had been immune from liability, that they wouldn't

19   have gone in and investigated the apps to see if there were any

20   other bad actors there.

21        That's just -- that's just inconceivable to me that, of

22   course, they would have gone in and investigated those apps;

23   and, therefore, my view is that those facts discovered, the

24   facts, not the advice given, the facts would be discoverable.

25   So I'm just saying that's what my view is, but I will allow you

1    to submit an affidavit.

2         And I know before I said no affidavits, but now having

3    looked at it all, I think that that would be a mistake --

4              **MR. SNYDER:**  Thank you.

5              **THE COURT:**  -- an error on my part to rule

6    definitively on that without doing that.  And then, of course,

7    I'll let -- but, as you said, a nonprivileged affidavit.

8              **MR. SNYDER:**  Yes, Your Honor.

9              **MR. KO:**  And, Your Honor, will we be allowed to

10   respond to that affidavit?

11             **THE COURT:**  Yes.  You're going to get to see it and

12   then you're going to get to respond.

13             **MR. KO:**  Because I think just to preview what -- you

14   know, Mr. Snyder, what I hear him saying is simply because of

15   the volume, that somehow this is all privilege.  But as you

16   correctly pointed out, both the dual purpose and the facts

17   underlying the investigation is what we are entitled to.

18        And it's clear -- I mean, I get -- I understand that it

19   was a massive investigation, but just the sheer fact that it

20   involved lots of communications does not take away from the

21   fact that we would be entitled to the underlying facts

22   regarding the escalation of these apps and the subsequent

23   enforcement to the extent that was done.  And so that's what we

24   are seeking and I think it's pretty clear what we would be

25   entitled to here.

1          **MS. WEAVER:**  Your Honor, if I can --

2          **THE COURT:**  That will shorten the privilege log if you

3    only did the sample privilege log for six apps greatly; right?

4    None of those e-mails about "Are you available for this

5    meeting?" or "Can we move it?" or "Should you change the weekly

6    report so that it has this information?"

7          **MR. SNYDER:**  No.

8          **THE COURT:**  You don't need any of that; right?  You

9    just want the facts.  You just want what's in the report.

10         **MR. LOESER:**  Your Honor, I'm going to raise my hand,

11   and I have a question about this affidavit.

12       And if the notion is that Facebook is going to submit the

13   affidavit of a lawyer, I'm wondering how that works in this

14   case.  That would appear to, then, be a witness.

15       And one of the central claims is a failure to monitor, and

16   I'm a little -- I guess I'm confused as to how a lawyer

17   testifying in this action about the work that that lawyer did,

18   some of which would be privilege, some would not, wouldn't be a

19   waiver of the attorney-client privilege or at least introduce a

20   lawyer as a witness.  And I'm just throwing that question out

21   there wondering how that works.

22         **THE COURT:**  I don't know.  This is a perfect thing I

23   think for you-all to discuss with Judge Andler; right?  So --

24   and I appreciate, Mr. Loeser, you being very candid about that.

25   Essentially you're, like, warning them, "Just because we're

```
 1   sitting here doesn't mean if you submit some affidavit, that
 2   we're not going to argue there's some waiver."  And I
 3   appreciate you being transparent about that, and Facebook will
 4   have to think about that -- have to think about that.
 5        And of course, then, there is the issue in Massachusetts
 6   the court did hold that it was work product but that, you know,
 7   the fact work product was discoverable in any event.  And so
 8   maybe this is a way of working through that as well and getting
 9   that information.  And you could, for example, show
10   Judge Andler a lot of those documents.
11        MS. WEAVER:  Your Honor, and on a related note, you
12   know, to the extent that Facebook is raising as a defense in
13   this action to the negligence claims and the invasion of
14   privacy that they investigated and maintained users privacy,
15   we're entitled to discovery.  So it's akin to the waiver
16   argument but it exists whether or not they put in a declaration
17   by a lawyer.  If Facebook is going to rely on the investigation
18   as a defense, we should get discovery of it.
19        THE COURT:  Well, that is -- sure.  Of course.  But I
20   don't know if that's the case.  They'll have to make that
21   decision.  Yeah, they'll have to make that decision.
22        Okay.  So there we are.  I've punted everything I think
23   except that within a week Facebook has to tell you which
24   deposition transcripts they're producing and which ones they
25   are not.
```

1        And, Judge Andler, it would be great if you were able to

2   join us on all of these hearings.  I think that would be

3   useful.

4        **JUDGE ANDLER:**  I'd be happy to.  I just have to have

5   notice so that my case manager can let the counsel in my

6   arbitrations and mediations that are scheduled through 2022

7   know that we will have a later start in those sessions.  So it

8   will be pretty easy for Matt to do that.  So if counsel just

9   give enough notice, I'm happy to do that.

10       **THE COURT:**  And we'll be by video.

11       **JUDGE ANDLER:**  Great.

12       **THE COURT:**  For as long as the Administrative Office

13   of the U.S. Courts allow us to be by video, we will be by

14   video.

15       **JUDGE ANDLER:**  Thank you.

16       **THE COURT:**  So I'm hoping that will be permanent.

17       **JUDGE ANDLER:**  Thank you.

18       **THE COURT:**  So why --

19       **MR. LOESER:**  A lot of people agree with you,

20   Your Honor.

21       **THE COURT:**  Yeah.  No, I know.  Yeah.  I have a lot of

22   these cases right now that I'm managing that have attorneys

23   from all across the country and it just makes so much sense,

24   unless you're an airline.

25       So shall we meet again in, say, three weeks you think?

```
 1              MR. SNYDER:  Sounds good.

 2              THE COURT:  Yeah.  How about April 27th?  And is

 3    8:30 better?

 4         Let me ask Judge Andler.  We can start earlier at 8:30 if

 5    that's better.

 6              JUDGE ANDLER:  That's usually much better for me if

 7    it's not inconvenient for counsel and the Court.

 8              THE COURT:  I think we've done that.  Why don't we do

 9    April 27th, then, at 8:30 a.m.  And I expect between now and

10    then you will meet and mediate your little cases.

11         All right.  Great.  Thanks, everyone.  I hope you have a

12    vaccine plan if you don't already have a vaccine.  Soon it will

13    be open to everyone.

14              ALL:  Thank you, Your Honor.

15              JUDGE ANDLER:  Thank you, Counsel, and we will be in

16    touch so we can set something up.

17                   (Proceedings adjourned at 9:37 a.m.)

18                          ---oOo---

19

20

21

22

23

24

25
```

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Wednesday, April 7, 2021

8

9

10

11    _____

12          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                   U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25