# Exhibit 20

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

**BLEICHMAR
FONTI & AULD LLP**

**KELLER
ROHRBACK**
L A W   O F F I C E S   ◆   L . L . P .

September 10, 2021

**VIA ELECTRONIC MAIL**

Martie Kutscher Clark
Gibson Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
mkutscherclark@gibsondunn.com

Russell H. Falconer
Gibson Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
rfalconer@gibsondunn.com

Deborah L. Stein
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
dstein@gibsondunn.com

Colin B. Davis
Gibson Dunn & Crutcher LLP
3161 Michelson Drive,
Irvine, CA 92612-4412 USA
cdavis@gibsondunn.com

Laura C. Mumm
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
lmumm@gibsondunn.com

Re:   *In re Facebook, Inc. Consumer Privacy User Profile*,
        Northern District of California Case No. 3:18-md-02843-VC

Dear Counsel:

At the mediators' request, we send this message as a final attempt to avoid impasse on Facebook's production of the named plaintiffs' data.  We look forward to your response on September 16.

At its core, this case is about what "content and information" (Facebook's term for data and information as set forth in its own terms of service) Facebook took from Plaintiffs, what Facebook told Plaintiffs it would do with their content and information and what Facebook *actually* did with it.  This includes, but is not limited to, sharing it with third parties, negligently allowing third parties to take it and use it for improper purposes and failing to monitor third parties' use, which is precisely what occurred with Cambridge Analytica and Dr. Kogan, the scandal that sparked these consolidated actions.  Facebook asserts it disclosed all its practices as to users' content and information and that users consented to those practices.  To test this assertion, Plaintiffs need to understand whether Facebook's actions matched the conduct Facebook describes in its terms of service and privacy policies.

Gibson Dunn & Crutcher LLP                        **KELLER ROHRBACK L.L.P.**
September 10, 2021                          **BLEICHMAR FONTI & AULD LLP**
Page 2

Plaintiffs opened discovery in this case with the modest request that Facebook describe and identify the kinds of data it has collected on only the nine Named Plaintiffs, as opposed to the hundreds of millions of class members in this action. We have simply asked: what did Facebook collect about users and what did it do with it? RFP No. 9 seeks all documents Facebook has relating to the Named Plaintiffs, including the content and information collected about each of them.. RFP No. 10 seeks documents sufficient to identify the categories of "content and information" Facebook collects, tracks, and maintains about each Named Plaintiff. It has been Plaintiffs' hope that this modest request could serve as a road map for class-wide discovery.

In Discovery Order No. 9, Judge Corley agreed. She identified the proper scope of discovery related to the data Facebook accumulates about the Named Plaintiffs as: (1) data collected from a user's on-platform activity; (2) data obtained from third parties regarding a user's off-platform activity; and (3) data inferred from a user's on- or off-platform activity. Dkt. No. 557.

To date, Facebook has not produced data from categories 2 or 3. Such a production would include Facebook's profiles of the Named Plaintiffs, and data Facebook acquires through its agreements with business partners, including data it bought and sold about Named Plaintiffs from data brokers in the heart of the Class Period. The parties have conferred and communicated at length about this issue, both before and after Judge Corley's order.

Instead, Facebook continues to limit discovery to category 1. Facebook has repeatedly told Plaintiffs it has "produced the information contained in the DYI file for each of the Named Plaintiffs, plus certain additional information (such as a spreadsheet containing data tracking how Plaintiffs adjusted their Facebook privacy settings)." *E.g.*, Apr. 1, 2021 letter at 2 (attached). The external tool that Facebook created to share with Plaintiffs some small subset of the information Facebook collects about them does not meet the scope of discovery Judge Corley identified or even address the heart of Plaintiffs' claims in this case. Plaintiffs know what they shared on the platform. But Plaintiffs do not know what Facebook collects, infers, embeds and tracks to create data sets about the Plaintiffs. Plaintiffs want to see those data sets and they want to know how Facebook uses them. Plaintiffs can then compare those actions to Facebook's disclosures and the parties can have a meaningful dialogue about the scope of consent.

Because of Facebook's secrecy and refusal to be transparent, there is a significant information asymmetry. Thus, it is impossible for Plaintiffs to identify with specificity the full scope of information Facebook has not produced about the Named Plaintiffs. But some internal Facebook documents give a clue to the types of information it collects about users. For example, Dep. Ex. 3 (attached) defines three broad categories of data Facebook "receive[s] about people": native data, appended data, and behavioral data. *See* Ex. 3 at FB-CA-MDL-00213424. For those types of data, Facebook identifies categories of data it explicitly collects,

Gibson Dunn & Crutcher LLP                                    **KELLER ROHRBACK L.L.P.**
September 10, 2021                                        **BLEICHMAR FONTI & AULD LLP**
Page 3

implicitly collects, and infers.  It appears that the Named Plaintiffs' data Facebook has produced is limited to information in the explicit collection category: profile information; posts, likes, shares; and location (checkins).  Facebook has *not* produced all of the Named Plaintiffs' data it implicitly collects—██████████████████████████████████████████.  And Facebook has *not* produced the Named Plaintiffs' data it infers—████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████Nor has Facebook disclosed the extent to which it shares or makes accessible some or all of this data to third parties and what it does to monitor third parties' use of it.

The document at Bates No. FB-CA-MDL-00178902 provides further insight into the types of information Facebook collects about its users that it has not produced (limited to the Named Plaintiffs) here.  Summarizing the value proposition of being able to read data from Facebook's platform, Sam Lessin writes: ████████████████████████████████ ████████████████████████████████████████████████████████████ ████ Among the data Lessin says Facebook has about each user is ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ While the context for these descriptions is ██████████████████████████████████████████████████ ████████████████ the descriptions quoted above reflect the data Facebook actually collects on its users. Facebook has *not* produced aggregated data about the Named Plaintiffs' friends, derived data about the Named Plaintiffs, Facebook's opinions of the Named Plaintiffs, or data provided by third parties to the graph about the Named Plaintiffs.

Facebook's patents also lend a clue into the kinds of data collects.  For example, Facebook holds a patent titled "Determining user Personality Characteristics From Social Network System Communications and Characteristics" (U.S. Patent No. 9740752), which can be used to identify personality characteristics (e.g., extroversion, agreeableness, conscientiousness, emotional stability, and openness), which can be targeted by marketers on Facebook. Another patent, "Receiving Information About a User from a Third Party Application Based On Action Types" describes how "linguistic data and non-linguistic data associated with the user" are used "in a trained model to predict one or more personality characteristics for the user." These "inferred personality characteristics are stored in connection with the user's provide, and may be used for targeting, ranking, selecting versions of products, and various other purposes." (U.S. Patent 8732802B2 at 2). Examples of personality characteristics include: "extroversion, agreeableness, conscientiousness, emotional stability, and

Gibson Dunn & Crutcher LLP
September 10, 2021
Page 4

**KELLER ROHRBACK L.L.P.**
**BLEICHMAR FONTI & AULD LLP**

openness." The patent further explains that "[e]ach user of the social networking system is associated with a user profile, which is stored in the user profile store. A user profile includes declarative information about the user that was explicitly shared by the user, and may also include profile information inferred by the social networking system. In one embodiment, a user profile includes multiple data fields, each field describing one or more attributes of the corresponding user of the social networking systems."  Each of these patents identify the types of information about Facebook users, including the Named Plaintiffs, that Plaintiffs have sought but which Facebook has not yet produced.  These references are not intended to be complete. Rather, they are only included for the purpose of providing examples of Facebook acknowledging the existence of some aspects of the data Plaintiffs seek.

If Facebook will not make a complete production of all data it has collected about these nine people, Facebook must identify what it is withholding and why.  And even if Facebook does make a complete production, the parties must confer in advance of the production in order to agree on the form of those productions, given the complexities with the kinds of data collected, inferred, aggregated and used.

Regards,

Derek W. Loeser
dloeser@kellerrohrback.com

Lesley E. Weaver
lweaver@bfalaw.com

# ATTACHMENT A

.

| From: | Simone LiTrenta </O=THEFACEBOOK/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=SIMONEL051> |
|---|---|
| Sent: | Thursday, May 08, 2014 4:34 PM |
| To: | Matt Scutari; Rob Sherman; Emily Sharpe; Emily Vacher; Maritza Johnson; Travis Bright |
| Cc: | Erin Egan |
| Subject: | Offsite presentation |
| Attachments: | Combined papers.docx |

Hey, all.  Attached is the combined doc of privacy team papers that Marne will be sending out with the rest of global policy team papers.

Now on to the slide deck☺.  If someone has started slides already and can share the format with the group so we can make the look and feel uniform, that would be great.  If someone is a PPT genius and wants to take the lead on combining finished slides into one deck and making minor changes, let me know.  Otherwise, please save your slides to the folder for slides and I can combine.

https://www.dropbox.com/sh/hquhjw021dr3qty/AADBwXtmeiNZJRBZR6-xjlgia

Erin would like to review the slide on the plane Monday morning.  If everyone can finish their slides by COB Friday/Saturday, I can get them to her Sunday night.

If you would like to discuss your slides with Erin, please let me know ASAP and I will find time manana.

Simone

**Exhibit
FB 0003**

30(b)(6)-Data (Papamiltiadis)

1

# ATTACHMENT B

.

| | |
|---|---|
| **From:** | Douglas Purdy </O=THEFACEBOOK/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=DOUGLAS PURDY> |
| **Sent:** | Thursday, August 30, 2012 10:17 AM |
| **To:** | Sam Lessin |
| **Cc:** | Mike Vernal |
| **Subject:** | Re: Platform Business Model Framing |

I am on vacation this week (still), but happy to help.

That said, in wonder if you should just take the pen on the deck moving forward so I can have a day off and not be the bottle neck?

I can send you want I have so far in an hour when I get back to a computer.

On Aug 30, 2012, at 10:11 AM, "Sam Lessin" <sl@fb.com> wrote:

1. Sorry I wasn't clearer about my plans / being out.  That is my bad guys / didn't mean to leave this hanging (obviously super important)
2. Doug, really glad you are framing this up / working on this …
3. Here are my notes on where things are from Friday, I think a lot of it is covered below but I just want to make sure we are in sync here, are presenting all the hard questions for this offsite



Confidential

FB-CA-MDL-00178902



2

Confidential



Confidential                                                                                    FB-CA-MDL-00178904

**From:** Douglas Purdy <dmp@fb.com>
**Date:** Wednesday, August 29, 2012 12:47 AM
**To:** Mike Vernal <vernal@fb.com>
**Cc:** Sam Lessin <sl@fb.com>
**Subject:** Re: Platform Business Model Framing

working on this.

going to see the attached to frame things up.

On Aug 28, 2012, at 6:15 PM, Mike Vernal <vernal@fb.com> wrote:

Doug - as context, we're having an mteam offsite on Tue + Wed of next week to talk about three-year-plan stuff, and one of the discussions we're going to have is █████████████████████████

Sam is at burning man (not sure when he gets back), and we left it a little ambiguous about who was pulling together what, so I'd like to at least get started pulling together a deck that we can use to frame the conversation.  Can you ask the PMs to pull together a few slides?

Ideally, I think we want to cover:



Not sure of the best framing (and I'm a little feverish right now), but it would be good to at least start pulling this together. ███████████████████████████████████ Otherwise, I think you/PMs have most/all the context.

████████████████████████████████

4

FB-CA-MDL-00178905



I think Sam is probably the right person to write-up ███████████ but the rest I think the PMs have the context on.

-mike

**Confidential**

**FB-CA-MDL-00178906**