# Exhibit 81

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
　osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
　klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
　mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
　dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
　jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:19-CV-04591-VC<br><br>**FACEBOOK'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES 15–16**<br><br>Discovery Special Master: Daniel Garrie, Esq. |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PROCEDURAL BACKGROUND ................................................................................. 1

III. ARGUMENT .................................................................................................................. 3

    A. Interrogatories 15 and 16 seek relevant and important information. ................. 3

    B. Interrogatories 15 and 16 are not unduly burdensome. ...................................... 5

    C. Plaintiffs' privacy objection is baseless. ............................................................. 6

IV. CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AML Group Ltd. v. McCrane Inc.*,
    No. C 13-01716, 2014 WL 2735019 (N.D. Cal. June 15, 2014) ...................................................... 5

*Athwal v. Nijjer*,
    No. C17-00740, 2018 WL 1156233 (W.D. Wash. Mar. 5, 2018) ................................................... 6

*Bartech Sys. Int'l v. Mobile Simple Sols., Inc.*,
    No. 2:15-cv-02422, 2018 WL 834589 (D. Nev. Feb. 12, 2018) .................................................... 6

*Benedict v. Hewlett-Packard Co.*,
    No. 13–CV–0119, 2013 WL 3215186 (N.D. Cal. June 25, 2013) ................................................. 7

*Bond v. Arrowhead Reg'l Med. Ctr.*,
    No. ED CV 11–2057, 2013 WL 12330716 (C.D. Cal. Aug. 12, 2013) ........................................ 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................................................ 4

*Computer Task Grp., Inc. v. Brotby*,
    364 F.3d 1112 (9th Cir. 2004) ....................................................................................................... 6

*Hassan v. Facebook, Inc.*,
    No. 19-cv-01003, 2019 WL 3302721 (N.D. Cal. July 23, 2019) .................................................. 4

*Rijhwani v. Wells Fargo Home Mortg., Inc.*,
    No. C 13–05881, 2015 WL 848554 (N.D. Cal. 2015) .................................................................. 6

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) .............................................................................................. 4

*In re Subpoena to PayPal Holdings, Inc.*,
    No. 20-mc-80041, 2020 WL 3073221 (N.D. Cal. June 10, 2020) ................................................ 3

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................................. 3

Fed. R. Civ. P. 33 ................................................................................................................................. 5

## I.  INTRODUCTION

Facebook moves to compel responses to interrogatories seeking basic information about Plaintiffs' fundamental theory of misconduct in this case—that apps and devices used by Plaintiffs' Facebook "friends" gained unauthorized access to Plaintiffs' allegedly private Facebook data through Plaintiffs' connections with those friends.  Specifically, Facebook's Interrogatories 15 and 16 ask Plaintiffs to identify, to the best of their knowledge, those friends Plaintiffs know used apps and devices that Plaintiffs claim gained access to Plaintiffs' private Facebook information.  There is no question that this information is relevant for at least two purposes: (1) it is probative of whether Plaintiffs' information was actually disclosed to third parties as Plaintiffs claim, and (2) it reflects Plaintiffs' knowledge about the alleged vulnerability of their information and the seriousness with which they treated the purported risk of disclosure after learning of the vulnerability.  Information about Plaintiffs' own knowledge is in Plaintiffs' exclusive possession, which is one reason why Facebook cannot obtain the responsive information on its own, contrary to Plaintiffs' arguments.  By the same token, Facebook has made clear that Plaintiffs are not required to investigate each of their friends' use of apps and devices—they need only identify the friends and corresponding apps and devices of which they are already aware.  As a result, Plaintiffs' main objection—that it would be too much work for Plaintiffs to analyze the app and device usage of each of their friends—is inapplicable to these requests.  Facebook is not asking Plaintiffs to do that.

Plaintiffs also assert an objection that the interrogatories violate their privacy rights and the privacy rights of third parties.  How these interrogatories violate anyone's privacy rights is not apparent, and Plaintiffs have never attempted to explain.  Even if there were a legitimate privacy concern, it can be managed under the protective order and does not warrant a wholesale refusal to respond.

For these reasons, Plaintiffs should be compelled to provide full and complete substantive responses to Interrogatories 15 and 16 without further delay.

## II.  PROCEDURAL BACKGROUND

Facebook served its Third Set of Interrogatories on August 31, 2021, which include Interrogatories 15–16 at issue here.  In general, Interrogatories 15–16 ask Plaintiffs to identify, to

1  their knowledge, certain apps and devices that their Facebook friends used between January 1, 2007
2  and December 31, 2019 (the "Relevant Time Period").  Ex. A.  The apps and devices are drawn from
3  Facebook's responses to Plaintiffs' interrogatories seeking identification of Facebook's "Business
4  Partners" and "whitelisted" third parties.  *See id.* at 3, ¶¶ 7-8.

5        Ten days before Plaintiffs' responses to these requests were due, Plaintiffs sought a three-
6  week extension, which Facebook granted.  Most Plaintiffs served their objections and responses to
7  the interrogatories on October 21, 2021.  Plaintiff King served an amended response on November 1
8  and Plaintiff Bell served his response on December 28 pursuant to a further extension.  Plaintiffs
9  objected that Interrogatories 15–16 are "unduly burdensome and not proportional to the needs of the
10 case" including "to the extent that the information sought . . . is otherwise equally accessible to
11 Defendant as to Plaintiff"; and "unduly violate[] Plaintiff's and/or third parties' right(s) to privacy."
12 Facebook emailed Plaintiffs on October 28, 2021 to schedule a time to meet and confer regarding
13 Plaintiffs' responses to the August 31 discovery. Plaintiffs did not respond, so Facebook sent a
14 second email on November 4.  Ex. B.  A conference was scheduled for November 8, which was
15 moved to November 9.  Ex. C.

16       The parties discussed Interrogatory No. 15 and 16 during the conference on November 9.
17 Plaintiffs questioned the relevance of the interrogatories, though they had not timely objected to the
18 requests as not relevant, and argued that Facebook already knew the answers because it knows
19 Plaintiffs' friends and which apps those friends used.  Facebook described the relevance of the
20 requests (discussed below) and pointed out that the information sought, including Plaintiffs' own
21 knowledge of their friends' app and device usage, is not necessarily known to Facebook.  Facebook
22 also explained that it was seeking only Plaintiffs' actual knowledge at the time of the requests, and
23 not asking Plaintiffs to undertake an investigation to identify the apps and devices used by their
24 Facebook friends.  Plaintiffs stated they would consider Facebook's position and respond.  Swanson
25 Decl., ¶ 3.

26       Facebook sent a letter on December 13, 2021 to follow up on the November 9 meet and
27 confer call reiterating its explanation of relevance and requesting, again, a response from Plaintiffs.
28 Ex. D.  Facebook then identified Interrogatories 15–16 as an issue for mediation on December 16.  At

the mediation, Plaintiffs refused to discuss their position on these interrogatories on the grounds that they were still preparing a response to Facebook's December 13 letter, despite having learned Facebook's position more than a month before at the November 9 conference.

Plaintiffs finally provided a response on January 4, 2022, stating that they would "continue to stand on their objections for the reasons set forth in their responses and objections to Facebook's requests as well as our meet and confer discussions on the subject." Ex. E. Facebook submitted the issue for impasse, which the Special Master declared on January 13, setting January 19 as the deadline for Facebook to file a motion to compel. This deadline was later extended to January 21.

### III.   ARGUMENT

Facebook is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs bear the burden to show "that discovery should not be allowed." *In re Subpoena to PayPal Holdings, Inc.*, No. 20-mc-80041, 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020) (citation omitted). Here, Facebook's Interrogatories 15 and 16 seek undeniably relevant information on an issue that goes to the heart of Plaintiffs' theory of wrongdoing in this case. These requests are proportional to the needs of the case and do not impose an undue burden on plaintiffs. Indeed, any burden of responding is minimal. Plaintiffs' privacy objection is also baseless and should be overruled.

**A.   Interrogatories 15 and 16 seek relevant and important information.**

Plaintiffs do not appear to dispute that the requests at issue seek relevant information. Nor could they. Plaintiff's fundamental theory of liability is that third-party-app developers and device makers who partnered with Facebook gained access not only to the app and device users' Facebook data, but also to the Facebook data of the app and device users' Facebook friends, without their knowledge or permission. *See* Dkt. 298 at 6-7. For that to occur, Plaintiffs' "friends" had to have actually used apps or devices that accessed Plaintiffs' Facebook data through the friend connection. Interrogatories 15 and 16 simply ask Plaintiffs to identify the friends and corresponding apps and devices that facilitated the unauthorized access Plaintiffs allege in this action, to the extent they know. If the answer is "none," they should so state.

These requests are also relevant for another independent reason beyond identifying the information needed to prove unauthorized disclosure actually occurred. The requests ask for identification of the friends and corresponding apps and devices only "*[i]f You know that during the Relevant Time Period one or more of Your Facebook Friends has used*" one of the listed apps or devices. Ex. A. In other words, these interrogatories seek information about Plaintiffs' personal knowledge of their friends' usage of apps and devices that allegedly expose Plaintiffs' private information. Plaintiffs' personal knowledge of such usage is intrinsically relevant in two ways.

*First*, Plaintiffs cannot suffer a compensable injury to their privacy interests unless they have at least a reasonable basis to believe that their private information was actually disclosed to a third party without their permission. *See Hassan v. Facebook, Inc.*, No. 19-cv-01003, 2019 WL 3302721, at *2-3 (N.D. Cal. July 23, 2019) (dismissing public-disclosure-of-private facts claim where plaintiff failed to adequately allege disclosure). Speculation that such disclosure *might* have occurred because Plaintiffs' Facebook friends *might* have used an app that *might* have had the ability to access Plaintiffs' Facebook data, which then *might* have actually sought and gained such access, does not amount to an actual and concrete injury required for standing in federal court. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (theories of standing that "rel[y] on a highly attenuated chain of possibilities" do not establish injury in fact); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 879-82 (N.D. Ill. 2014) (applying *Clapper* and dismissing claims predicated on speculative allegations of data disclosure). Accordingly, it is important for Facebook to establish what Plaintiffs personally knew about the alleged vulnerability of their Facebook data.

*Second*, even if knowledge of the mere *possibility* of a privacy breach is sufficient in theory to demonstrate a concrete injury, Facebook is entitled to test whether the individual plaintiffs in this case actually suffered such an injury. Plaintiffs' knowledge and understanding of the activities of their "friends" is relevant to the credibility of their claims that Facebook disclosed their *private* information that they had shared on social media and such disclosure actually caused harm. The jury might expect, for example, that a plaintiff who claims a palpable invasion of privacy from disclosure of political opinions they had already shared with hundreds of "friends" would have made some effort to learn whether their friends' activities could expose this purportedly private and sensitive

4

Gibson, Dunn & Crutcher LLP

information.  Indeed, a plaintiff who feels genuine distress at the thought that a third party might know as much about their political views as the hundreds of other Facebook contacts with whom the person voluntarily shared such information could be expected to have reached out to these contacts to ensure they understood the confidentiality of the information and to minimize risk of further exposure.  By contrast, a plaintiff who, contrary to the litigation position of class counsel, feels untroubled by such a disclosure—perhaps because information they broadcast on social media was not confidential to begin with—would be expected to carry on using Facebook as usual without making any special effort to find out if third parties could actually gain access to the information through their friends.  Whether Plaintiffs actually know if any of their friends used apps or devices that exposed Plaintiffs' confidential information—because Plaintiffs made some effort to find out when they learned about the basis for their claims—is highly probative of this credibility issue.

### B. Interrogatories 15 and 16 are not unduly burdensome.

Plaintiffs' primary argument seems to be that these interrogatories pose a disproportionate burden on Plaintiffs because Facebook already knows which apps Plaintiffs' friends used, and responding would require a plaintiff with 300 friends to answer "approximately 35,000 interrogatories." Ex. E.  This argument misconceives the purpose and relevance of Interrogatories 15 and 16 and vastly overstates the burden of responding.  And, Plaintiffs did not object to the interrogatories as "compound" in their verified responses and objections, which they appear to be doing now.

The interrogatories are plainly not compound.  An interrogatory does not become compound simply because the responding party may have to refer to multiple sources of information to answer it.  *AML Group Ltd. v. McCrane Inc.*, No. C 13-01716, 2014 WL 2735019, at *1 (N.D. Cal. June 15, 2014) (rejecting argument that an interrogatory was compound because it referred to lists of numerous purchase orders).  Rather, an interrogatory is compound if it contains subparts directed to multiple separate and distinct lines of inquiry.  *Id.*  That is not the case here.  Regardless, Plaintiffs long ago waived any objection that these interrogatories are compound and thus exceed the numerical limit.  "Generally, in the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by [Fed. R. Civ. P. 33] constitutes a waiver of any

objection." *Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13–05881, 2015 WL 848554, at *1 (N.D. Cal. 2015) (citation omitted); *see also Bartech Sys. Int'l v. Mobile Simple Sols., Inc.*, No. 2:15-cv-02422, 2018 WL 834589, at *14 (D. Nev. Feb. 12, 2018) (finding that a party waived its untimely objection that an interrogatory was "a compound question and exceeds the allowable limit"). Plaintiffs never made a timely compound objection, and there is no reason, let alone good cause, for them to have waited until nearly five months after Facebook served the interrogatories to raise this objection.

But even if Plaintiffs' calculation of "approximately 35,000 interrogatories" was intended merely to illustrate the purported burden, Plaintiffs get it wrong. The text of the interrogatories makes clear that Facebook seeks Plaintiffs' own existing knowledge about their friends' app and device usage. To avoid any chance of misunderstanding, Facebook's counsel reiterated at the November 9 meet-and-confer that Facebook is not asking Plaintiffs to commence an investigation of the app usage of each and every one of their friends, and that they need only respond based on their present personal knowledge. Swanson Decl. ¶ 3. The burden of such a response is minimal, and largely comes down to what Plaintiffs can personally recollect.

Plaintiffs' argument that Facebook can ascertain the responsive information for itself misses the point for the same reason. Facebook does not know what Plaintiffs knew or learned about their friends' use of apps and devices. And even if Facebook could theoretically find out for itself which apps and devices each of Plaintiffs' friends used during the Relevant Time Period, Facebook's ability to obtain some responsive information from other sources "does not excuse [Plaintiffs'] failure to fulfill their discovery obligations." *Athwal v. Nijjer*, No. C17-00740, 2018 WL 1156233, at *7 (W.D. Wash. Mar. 5, 2018) (citing *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004)).

### C.    Plaintiffs' privacy objection is baseless.

Plaintiffs contend that Interrogatories 15 and 16 "unduly violate[] Plaintiff's and/or third parties' right(s) to privacy." Ex. F. Plaintiffs refused to explain the rationale for this objection at the November 9 meet-and-confer, and none is apparent. As an initial matter, any privacy-based objection is in severe tension with Plaintiffs' assertion that "Facebook already has access to the information

responsive to this request." Ex. E. It is hard to see how either Plaintiffs or third parties could suffer any privacy-based harm by Plaintiffs' disclosure to Facebook of information to which Plaintiffs assert Facebook already has access.

Even taken at face value, Plaintiffs' privacy-based objections fail. As for Plaintiffs' own "right[] to privacy," it is unclear how the interrogatories in question that seek information about whether Plaintiffs' Facebook friends used certain apps could infringe on any legitimate privacy interest held by Plaintiffs. To the extent any such interest is implicated, however, the confidentiality protective order in this case mitigates any privacy concerns. *Benedict v. Hewlett-Packard Co.*, No. 13–CV–0119, 2013 WL 3215186, at *2 (N.D. Cal. June 25, 2013) (collecting cases in which courts relied on protective orders to adequately protect privacy interests). And in any event, Plaintiffs placed their privacy at issue. They cannot be permitted to accuse Facebook of violating their privacy by disclosing vaguely described information while withholding discovery about that information that Facebook needs to defend itself.

As for "third parties' right(s) to privacy," it is also unclear what third-party privacy interests would justify a blanket refusal to respond to a valid discovery request. To the extent that Plaintiffs' Facebook friends' use of the apps in question implicates any legitimate privacy interest held by Plaintiffs' Facebook friends, any reasonable concerns can be addressed with appropriate confidentiality designations under the protective order. *Bond v. Arrowhead Reg'l Med. Ctr.*, No. ED CV 11–2057, 2013 WL 12330716, at *3 (C.D. Cal. Aug. 12, 2013) (holding that "a protective order would strike the appropriate balance between the need for the information and the privacy interests of third parties").

## IV.   CONCLUSION

Plaintiffs do not dispute that Interrogatories 15 and 16 seek relevant, discoverable information. Plaintiffs' refusal to provide substantive answers is based largely, if not entirely, on their misconception that responding will take a substantial amount of work. Plaintiffs should not be able to avoid discovery on the ground that answering is difficult, but in this instance, Plaintiffs are simply wrong about the purported burden. Facebook seeks only the information Plaintiffs already know about the apps and devices used by their Facebook friends during the relevant time period.

Therefore, the burden is minimal.  Plaintiffs' nonsensical privacy objection should also be disregarded.  Facebook respectfully requests that its Motion to Compel be granted.

Dated:  January 21, 2022                **GIBSON, DUNN & CRUTCHER, LLP**

By: */s/ Deborah Stein*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*