# Exhibit 82

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' OPPOSITION TO FACEBOOK'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES 15-16**<br><br>Judge: Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br><br>JAMS Ref. No.: 1200058674 |

### I.    INTRODUCTION

Plaintiffs oppose Facebook's Motion to Compel responses to Interrogatories 15 and 16. These interrogatories ask Plaintiffs to aver, based on their own personal knowledge, which of 118 entities each of their Facebook Friends used. This is information Facebook already has.

Interrogatory No. 15 asks the Named Plaintiffs whether any of their Facebook Friends used any of 65 listed devices, apps, or services, and, if so, to identify by name each Friend and each device, app, and service they used.  Interrogatory No. 16 asks the Plaintiffs whether any of their Friends used any of 52 listed apps, and, if so, to identify by name each Friend and each app used by that Friend. Facebook is ideally placed to identify each of the Plaintiffs' Friends who

used any of the listed devices, apps, or services in any way that implicated Facebook user content and information.

Facebook asserts that the requested information is relevant for two purposes. First, Facebook asserts the information "is probative of whether Plaintiffs' information was actually disclosed to third parties as Plaintiffs' claim." Facebook's Motion to Compel Responses to Interrogatories 15–16 at 1. Plaintiffs agree that this information is relevant, but it is Facebook, not Named Plaintiffs, that has it. Indeed, Plaintiffs have spent hundreds of hours over the past three years in the attempt to confer with, mediate, and compel Facebook to produce this information. It hasn't.

Second, Facebook asserts that the requested information would "reflect[] Plaintiffs' knowledge of the alleged vulnerability of their information and the seriousness with which they treated the purported risk of disclosure after learning of the vulnerability." *Id.* But Interrogatories 15 and 16 do not appear to concern known "vulnerabilit[ies]." As Facebook concedes, the list of devices, apps, and services in those interrogatories come from Facebook's responses to Plaintiffs' Interrogatory Nos. 14 and 27, which concern Business Partners and Whitelisted third parties. Declaration of Alexander P. Swanson in Support of Facebook's Motion to Compel Responses to Interrogatories 15–16, Ex. A., at 6–7. Facebook provided these responses on November 20, 2020. *See id.* at 3. How were Plaintiffs to know about the "vulnerabilit[ies]" of their Friends' use of such devices, apps, and services when they were not disclosed? Moreover, Facebook designated the list of Whitelisted third parties (and what they were Whitelisted for) "Highly Confidential—Attorneys' Eyes Only," thereby preventing counsel from disclosing the response to Named Plaintiffs. While Facebook seeks to understand what actions the Named Plaintiffs took to address the risk of disclosure of their information by their Friends, it has prevented the Named Plaintiffs from understanding what the risks were.

These interrogatories would require Plaintiffs to answer tens of thousands of individual questions. Specifically, Plaintiffs would have to consider, for each Friend, whether, to Plaintiffs' knowledge, the Friend used each of the 118 entities, regardless of whether the Friend even used

the entity in connection with Facebook. Plaintiffs' knowledge over this thirteen-year timeframe is likely to be spotty at best—particularly as compared to Facebook's definitive records. Given the importance and size of this case, Plaintiffs are more than willing to expend extensive time responding to discovery; however, time spent responding to these interrogatories would not be proportionate, particularly given the negligible relevance and Facebook's possession of the underlying information. Under Rule 26(b), Special Master Garrie should DENY Facebook's motion to compel.

## II.     BACKGROUND

Facebook seeks to compel responses to two interrogatories. Interrogatory 15 reads: "If You know that during the Relevant Time Period one or more of Your Facebook Friends has used a Device, App, or service made available by any entity listed in Exhibit A, identify by name each such Facebook Friend and each such Device, App, or service used by that Facebook Friend." Swanson Decl., Ex. A., at 6–7. Interrogatory 16 similarly reads: "If You know that during the Relevant Time Period one or more of Your Facebook Friends has used an App listed in Exhibit B, identify by name each such Facebook Friend and each such App used by that Facebook Friend." *Id.*, Ex. A, at 7.

Exhibit A, incorporated in Interrogatory 15, identifies 66 entities. *Id.*, Ex. A to Ex. A. Exhibit B, incorporated in Interrogatory 16, identifies 52 entities. *Id.* Ex. B. to Ex. A.

Plaintiffs objected to the interrogatories, among other grounds, as "overbroad, unduly burdensome, and not proportionate to the needs of the case"; because the information sought was available to Facebook; and "to the extent that Facebook has not yet provided information and has not yet produced documents in response to Plaintiffs' discovery requests." Swanson Decl., Ex. B at 8–10. Although Facebook mentions offhand that Plaintiffs did not timely object to relevance, it does not pursue that argument, and spends much of its brief on relevance. In any event, by objecting to the interrogatory on grounds that it was not proportionate, Plaintiffs necessarily objected as to relevance. *See* Fed. R. Civ. P. 26(b)(1) (proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

## III.     LEGAL STANDARD

Under Rule 26, "the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The court, however, 'must limit the frequency or extent of discovery otherwise allowed' if '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" *Harris v. Best Buy Stores, L.P.*, No. 417CV00446HSGKAW, 2017 WL 3948397, at *1–2 (N.D. Cal. Sept. 8, 2017) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

## IV.     ARGUMENT

### A.  Responses to these Interrogatories would not be probative of any matter in dispute

#### 1.     Facebook's own information will demonstrate whether disclosure actually occurred

Facebook asserts that the information is relevant first because it "identif[ies] the information needed to prove unauthorized disclosure actually occurred." Motion at 4. A Plaintiff's personal belief as to which Friends used certain apps or devices is irrelevant to whether unauthorized disclosure "actually occurred." Whether unauthorized disclosure "actually occurred" is relevant, but the inquiry will turn on what information Facebook actually disclosed about Plaintiffs through their Friends' apps and devices—evidence derived from the records of Facebook and third parties, not from a Plaintiff's own beliefs about what Facebook may have

done with the Plaintiff's content and information.

### 2.     The authorities Facebook cites do not place Plaintiffs' personal knowledge at issue

Facebook next asserts that "it is important for Facebook to establish what Plaintiffs personally knew about the alleged vulnerability of their Facebook data." Motion at 4.  In support, Facebook cites cases dismissing claims on standing and 12(b)(6) grounds. None of the three cases Facebook cites speak to the relevance of "what Plaintiffs personally knew."

*Hassan* dismissed the *pro se* plaintiffs' privacy claims with leave to amend because plaintiffs did not explain what made their information private, among other deficiencies. *Hassan v. Facebook, Inc.*, No. 19-cv-01003, 2019 WL 3302721, at *2–3 (N.D. Cal. July 23, 2019). The plaintiffs did amend, *id.* at Dkt. 35, but before that court could rule, *Hassan* was related to this case and reassigned to Judge Chhabria. Here, Judge Chhabria has explained that a "privacy invasion is no less an Article III injury simply because the plaintiffs are left to guess precisely which companies (other than Facebook) were involved." Order on Motion to Dismiss, Dkt. 298, at 18. How could Plaintiffs have alleged more? Until discovery reveals it, Plaintiffs have no way of knowing what information Facebook disclosed to which entities. Hence, at least until discovery is complete and Plaintiffs are permitted to evaluate the evidence, Plaintiffs' personal beliefs are irrelevant to the standing inquiry. *See also id.* at 20 (discussing the reasonable expectation of privacy and explaining that "[b]ecause courts presume success on the merits when evaluating standing, these are not standing issues in privacy cases.").

*Clapper* held that the plaintiffs "theory of future injury" was too speculative to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). In that case, the plaintiffs asserted standing based on the "reasonable likelihood that their communications will be acquired . . . at some point in the future" and on the expenditures they made "based on hypothetical future harm." *Id.* at 401–02. Relying on *Clapper*, *Strautins* rejected "possibility of future injury" as the basis for standing in a data breach case. *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 875 (N.D. Ill. 2014). The claims remaining here, however, do not turn on risk of future harm. *See* Order on Motion to Dismiss, Dkt. 298, at 13 (rejecting Plaintiffs' standing theory

related to risk of future harm). Instead, Plaintiffs' remaining claims turn on the actual disclosure of Plaintiffs' information: "that the plaintiffs' sensitive information was disseminated to third parties in violation of their privacy [] is sufficient to confer standing." *Id.* at 14. Because this case now turns on actual disclosure, and not future risk of harm, *Clapper* and *Strautins* do not speak to the evidence at issue.

In any event, these cases do not suggest that standing or 12(b)(6) inquiries turn on Plaintiffs' personal knowledge before the close of discovery. Such a rule would make no sense. The list of devices, apps, and services in Interrogatories 15 and 16 come from Facebook's responses to Plaintiffs' Interrogatory Nos. 14 and 27, which concern Business Partners and Whitelisted third parties. *See* Swanson Decl., Ex A., at 3. Facebook provided those responses on November 20, 2020. *See id.* How were Plaintiffs to know about the "vulnerabilit[ies]" of their Friends' use of such devices, apps, and services when they were not disclosed? Even now, Facebook has designated the list of Whitelisted third parties (and what they were Whitelisted for) "Highly Confidential—Attorneys' Eyes Only," thereby preventing counsel from disclosing the response to Plaintiffs. *See* Special Master's Email re Plaintiffs' request that Named Plaintiffs be granted access (by email Dec. 9, 2021).  While Facebook seeks to understand what actions Plaintiffs took to address the risk of disclosure of their information by their Friends, it prevented, and has continued to prevent, Plaintiffs from understanding what those vulnerabilities were.

### 3.    The Interrogatories do not seek evidence of Plaintiffs' efforts

Finally, Facebook suggests that the information is relevant because it is probative of whether Plaintiffs "made some effort to learn whether their Friends' activities could expose this purportedly private and sensitive information." But Facebook's interrogatories do not ask about such efforts. Moreover, if Facebook wanted to know what efforts Plaintiffs had made, it could have asked Plaintiffs at their depositions. *See* Fed. R. Civ. P. 26(b)(2)(C)) (court must limit discovery if it can be "obtained from some other source that is more convenient, less burdensome, or less expensive"). It has not asked a single question about these interrogatories.

**B.  The interrogatories demand an effort not proportional to the needs of this case**

The hours it would take to respond to these interrogatories far outweigh the scant accurate discovery that will be gained—particularly since Facebook possesses definitive records about the apps and devices used by Plaintiffs' Friends. Plaintiffs acknowledge that the Interrogatories do not require them to "commence an investigation of the app usage of each and every one of their friends." Motion at 6. Still, these interrogatories would have each Plaintiff consider, from memory, any Friend who ever appeared on his or her Friend list, then consider each of the 118 entities in Exhibits A and B. For a Plaintiff with 300 Facebook Friends, multiplying a Plaintiff's Friends with the entities would yield over 35,000 individual questions for a Plaintiff to consider. Many of those questions would be overbroad, as the interrogatories are not confined to which entities a Friend used in connection with Facebook. Facebook attempts to foist this burden on Plaintiffs even though Facebook and Facebook alone possesses complete information about which third parties obtained Plaintiffs' content and information *from Facebook*. Facebook cannot refuse to provide this information to Plaintiffs and at the same time demand that Plaintiffs speculate about what third parties may have received Plaintiffs' information from Facebook

To the extent Facebook merely wants to discover which entities or apps Plaintiffs' Friends used, its own records are a more accurate and complete source. Facebook cites *Athwal* for the proposition that "Facebook's ability to obtain some responsive information from other sources 'does not excuse [Plaintiffs'] failure to fulfill their discovery obligations.'" Motion at 6 (citing *Athwal v. Nijjer*, No. C17-00740, 2018 WL 1156233, at *7 (W.D. Wash. Mar. 5, 2018)). But Facebook omits a key word from *Athwal*'s statement: that a party "already had some of the information sought . . . ***alone*** does not excuse [its] failure to fulfill their discovery obligations." *Athwal*, 2018 WL 1156233, at *7. Here, it is not just that Facebook possesses the information it seeks from Plaintiffs, but that Plaintiffs are a best an incomplete source of the information, since Plaintiffs cannot be expected to know or be required to discover what apps and devices Plaintiffs' Friends used.  Given the scant accurate information that is likely to result from the

time-consuming process Facebook's dubious requests would require, the discovery Facebook seeks is not proportional and better sought from a reliable source—Facebook's own records. Facebook's ability obtain the information it seeks is an additional "consider[ation]" that makes responding to these Interrogatories disproportionate under the Rule 26(b) factors, and harassing.

## V.   CONCLUSION

Special Master Garrie should DENY Facebook's motion.

Dated: January 27, 2022                                        Respectfully submitted,


KELLER ROHRBACK L.L.P.                         BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*                          By:    */s/ Lesley E. Weaver*
           Derek W. Loeser                                              Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)          Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*)   Anne K. Davis (SBN 267909)
David Ko (admitted *pro hac vice*)                 Matthew S. Melamed (SBN 260272)
Adele A. Daniel (admitted *pro hac vice*)          Angelica M. Ornelas (SBN 285929)
Benjamin Gould (SBN 250630)                        Joshua D. Samra (SBN 313050)
1201 Third Avenue, Suite 3200                      555 12th Street, Suite 1600
Seattle, WA 98101                                  Oakland, CA 94607
Tel.: (206) 623-1900                               Tel.: (415) 445-4003
Fax: (206) 623-3384                                Fax: (415) 445-4020
dloeser@kellerrohrback.com                         lweaver@bfalaw.com
claufenberg@kellerrohrback.com                     adavis@bfalaw.com
dko@kellerrohrback.com                             mmelamed@bfalaw.com
adaniel@kellerrohrback.com                         aornelas@bfalaw.com
bgould@kellerrohrback.com                          jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*