# PLAINTIFFS' EXHIBIT 88

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

```
 1                        JAMS
 2                       ---o0o---
 3   IN RE: FACEBOOK INC.,         )
     CONSUMER PRIVACY USER         )
 4   PROFILE LITIGATION            )
     _____ )
 5
 6
 7
 8
 9
10
11                    HELD VIA ZOOM
12          REPORTER'S TRANSCRIPT OF PROCEEDINGS:
13               JAMS Special Master Hearing
14               Saturday, December 4, 2021
15
16
17
18
19
20
21
22   REPORTED BY:
23   Katy E. Schmidt
24   RPR, RMR, CRR, CSR 13096
25   Job No.: 4980290
```

Page 1

```
 1                         JAMS
 2                        ---o0o---
 3   IN RE: FACEBOOK INC.,           )
     CONSUMER PRIVACY USER           )
 4   PROFILE LITIGATION              )
     _____)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23         JAMS Special Master Hearing on Saturday,
24   December 4, 2021, at 9:06 a.m., virtually before Kathryn
25   E. Schmidt, RPR, RMR, CRR, CSR 13096.
```

Page 2

```
 1   related to the memorandum, or in category 2, the
 2   communications related to the background technical and
 3   audit reports that were prepared in connection with that
 4   app.
 5           SPECIAL MASTER GARRIE:  If you look above on
 6   page 146, if you look above this -- the paragraph above
 7   that, that's the second group.
 8           But that's fine.  I understand now the
 9   clarity.
10           All right.  Go ahead, Counsel Loeser.  I
11   apologize.
12           MR. LOESER:  Yeah.  I do want to make sure I
13   respond to Orin's arguments.
14           One thing that he said that is easy to respond
15   to, there was some reference to these communications and
16   Mr. Snyder suggested that, you know, they always cc'd a
17   lawyer on the communication.
18           Obviously, you know, that's a -- something the
19   Courts have long ago rejected.  You can't just cc a
20   lawyer on something and then it miraculously becomes
21   undiscoverable.
22           If the communication is a factual
23   communication, it's not privileged whether it's cc'd to
24   a lawyer or not.
25           So that's just -- you know, that's just black
```

Page 48

```
 1    letter law.  So just to be clear on that.
 2             But I want to get back into this notion of
 3    these internal communications and what the order did or
 4    did not say about internal communications.
 5             There's not one word in the order that you
 6    will find that says internal communications about the
 7    ADI are not discoverable.  That's just not true.
 8             And really when you think about what these
 9    communications are, I want to come back to how critical
10    they really are and what the order did say.  And what it
11    said is that as a general matter, documents generated as
12    part of that investigation were not created because of
13    litigation.  That's true for internal communications as
14    well.
15             And the order indicated it encompassed all
16    materials regardless of form that are not created by
17    counsel, counsel edits, or any communications with
18    counsel.
19             And so obviously the internal communications
20    that are not with counsel, whether they to put a cc to
21    lawyers or not, if they're factual in nature, then they
22    are discoverable and they're consistent with the
23    guidance of this order.
24             And just, again, to make clear, the
25    communications were after.  These are not privileged
```

Page 49

```
 1   communications.  They're not between lawyers.  We've
 2   said to Judge Corely and we've said to you, we don't
 3   want those communications.
 4              We want the factual information relating to
 5   the ADI, and that obviously includes these internal
 6   communications.
 7              And this is a point worth making as well,
 8   which are these communications, quote, unquote, facts?
 9              And in Facebook's materials, they've suggested
10   there's some contradiction between plaintiffs' request
11   for the underlying facts of the ADI and the request for
12   both the internal communications and the communications
13   with third parties.
14              And, you know, obviously there's not.
15   Communications often relate to or reflect underlying
16   facts.  Communications can also reflect facts about
17   knowledge and state of mind.
18              And as everybody knows who's involved in
19   litigation in the modern era, internal communications,
20   typically in e-mail, though, now in Slack and in chats,
21   are often the strongest evidence in a case and can be
22   ripe with admissions.  That's why they're discoverable.
23   That's why we want them.  And that's why Facebook
24   doesn't want to provide them.
25              Now, I do think it's important to go through
```

```
 1    this issue with the logging of the call logs, and what
 2    happened with the call logs.
 3              And Facebook has this idea that because there
 4    was a dispute over the logs and that dispute rolled into
 5    the eventual order, that this means that all internal
 6    communications somehow were ruled out.
 7              And that really distorts the process, so I
 8    think it's important to step back and walk through the
 9    process.
10              And so here's what really happened:
11              In June 2020, plaintiffs requested a briefing
12    process on the motion to compel.  And then in August of
13    2020, Judge Corely requested that Facebook -- requested
14    Facebook to provide a privilege log of ADI materials.
15              The logs were provided.
16              And then plaintiffs were asked to pick frankly
17    from the log -- obviously, we didn't know the content of
18    any of these documents.  We just chose as best we could
19    from the log and we chose 20 documents.
20              And then Judge Corely performed an in-camera
21    review and provided her tentative view on ADI in a
22    hearing in April 2020.
23              So what really happened in April 2020,
24    Judge Corely signaled that she would rule against
25    Facebook on work product, and here's what she said, but
```

```
 1   in terms of the ADI team, at least from what I've seen,
 2   it looks like a lot of that was just generated there
 3   separate that may have been reviewed but would have been
 4   done anyway.  That's the heart of the dual purpose
 5   determination.
 6             And then with regard to these 20 documents,
 7   you know, Facebook has sort of come up with a story
 8   about what happened with the 20 documents and what it
 9   really showed, but there is in fact a record and it is
10   in fact clear what happened.
11             So in the hearing we had in which she
12   discussed the 20 documents, she determined, quote, "A
13   lot of it I don't think is relevant at all."  For
14   example, she said, "So you don't need to know -- you
15   don't need to know like when a request for information
16   was sent," and that plaintiffs wouldn't need those
17   e-mails about "Are you available for this meeting" or
18   "Can we move it?"  "Should you change the weekly
19   report?"
20             So basically we picked these 20 documents from
21   a log.  We didn't know what was the content of the
22   documents.  They were reviewed in camera.  And a lot of
23   the documents were irrelevant because they were just the
24   kind of scheduling back and forth for meetings and the
25   like that it wasn't helpful.
```

Page 52

```
 1              And Judge Corely identified that, and made
 2   the point -- she wasn't making some assessment of the
 3   underlying factual communications.  She was making an
 4   assessment of the log that seemed to have a bunch of
 5   stuff that just didn't matter because it wasn't
 6   substantive at all.
 7              So then Judge Corely ordered the parties to
 8   meet and confer to see if they could agree on a
 9   production.  And she allowed additional briefing, which
10   was submitted.
11              And Judge Corely issued an order allowing
12   further briefing from Facebook.  In that order she
13   reiterated her view that much of the ADI documentation
14   is discoverable.  "While outside counsel's edits and
15   advice might not be discoverable, the underlying facts
16   are discoverable since Facebook would have conducted the
17   investigation, regardless of any potential legal
18   liability."
19              And here's where we get -- and I apologize for
20   sort of walking through this as slowly as I am but it's
21   important to unwind all of the ways that these events
22   have been distorted to come to this conclusion that
23   somehow she ruled on and ruled out internal
24   communications.
25              So she says, "In particular plaintiffs seek
```

```
 1   documents not created by lawyers from the enhanced
 2   examination phase that involve background and technical
 3   investigations to identify the potential for data
 4   misuse.
 5            "They also seek documents from the enforcement
 6   phase, including Facebook conducted audits and
 7   interviews.
 8            "As the Court understands, Facebook has not
 9   offered to produce any of this information.  None of
10   these documents were part of the in-camera review the
11   Court earlier conducted."
12            That is a critical acknowledgment that really
13   puts into perspective what this call log process was and
14   what it revealed.  It was a bunch of stuff that just
15   didn't matter that much because it wasn't substantive,
16   and the Court noted that.
17            SPECIAL MASTER GARRIE:  Just one quick
18   question.  Sorry.  Just a quick question.
19            MR. LOESER:  Yeah.
20            SPECIAL MASTER GARRIE:  In her order, I don't
21   know if it's document 736, it says -- and I did read
22   these orders.  It says "This order disposes of" -- if
23   you go back a slide -- "of docket No. 611, 612, and
24   699."
25            And if you look, you're saying 699 at 5.  How
```

1  slide, I think this really kind of gets to the heart or
2  your question, Special Master Garrie, and really gets to
3  the heart of Facebook's argument.
4          And Facebook takes this line from the order
5  and the line -- and what Facebook said in its submission
6  was the parties already litigated whether e-mails and
7  attachments Facebook logged previously were
8  discoverable.
9          "Judge Corely conducted an in-camera review
10 and Judge Corely did not order a single one of those
11 communications produced."
12         Now, what this sentence really refers to are
13 the 20 e-mails that she reviewed in camera.  Not every
14 e-mail and attachment that Facebook logged in the
15 exemplar stage.
16         And, in fact, Judge Corely did not find that
17 logging exercise to be useful.  It did not result in a
18 resolution of the parties' dispute, which was
19 plaintiffs' effort to discover the factual information
20 relating to the ADI.
21         And Facebook is trying to take that and
22 generalize and say, "Oh, she used those exemplars to
23 come to a conclusion that none of this is discoverable."
24         And that's just not -- that's just so
25 inaccurate.

1                 If you go back and consider what she said
2     about the materials that she reviewed in camera, those
3     were the materials that are largely about scheduling
4     meetings and whether meetings can be moved and the like.
5     They are -- they were not substantive materials from
6     which she was able to conclude and determine what should
7     happen with the factual information plaintiffs were
8     seeking.
9                 And so as Mr. Ko just noted, she then moved on
10    to the briefing that resulted in the September 8th order
11    in which she did provide guidance on what the parties
12    should do.
13                And so this idea that this logging exercise
14    somehow resulted in a determination in the September 8th
15    order that you don't get internal communications, it's
16    just -- has nothing to do with what was actually learned
17    from the logging exercise or the role the logging
18    exercise ever played in resolving the ADI issues.
19                It's the September 8th order that resolves
20    those issues.  And it's the guidance that's provided in
21    the order that applies to whether internal
22    communications are discoverable.
23                And, you know, Facebook can say over and over
24    again this issue was litigated and resolved by the
25    order.

Page 58

1          The order does not -- there's nothing --
2     there's not a word in the order that says plaintiffs are
3     not entitled to these internal communications.  And
4     there's nothing that happened with the 20 document
5     logging exercise from which any conclusion can be drawn
6     about these internal communications because that's
7     really not what the Court was able to perceive from the
8     communications.
9          SPECIAL MASTER GARRIE:  Let me -- let me talk
10    about these exemplar productions, and then we can --
11    we'll continue forward.
12          One question I want to understand, I guess
13    this is for Facebook as well as you, if you look at the
14    pages you were just showing me, that I pointed out on
15    page 140, whatever it is, if you turn to page 132,
16    like -- there's way more -- as I understand this, this
17    report covers way more than six apps.  It covers all the
18    apps, ▮▮▮▮▮, which was identified by, at least
19    according to this report, that was flagged on 137 --
20          If you go to page 137, if you load that back
21    up, Counsel Ko, by chance, or whoever loaded it.
22          MR. KO:  Yeah.  I can share it.  I have it up.
23          SPECIAL MASTER GARRIE:  I just want to
24    understand when we're saying exemplars, like this covers
25    the production by Facebook for the six exemplar apps was