# EXHIBIT 3

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3    _____

 4    IN RE FACEBOOK                )

      CONSUMER PRIVACY USER         )

 5    PROFILE LITIGATION            )

      _____)

 6                                  ) Case No. 18-md-02843-

                                    )         VC-JSC

 7    This document relates to:     )

                                    )

 8    ALL ACTIONS                   )

      _____)

 9

10

11

12

13

14              REPORTER'S VIDEOCONFERENCE

15              TRANSCRIPT OF PROCEEDINGS

16           BEFORE THE HON. DANIEL GARRIE

17              Wednesday, January 19, 2022

18

19

20

21

22    Reported by:

      JOANNA BROADWELL

23    CSR No. 10959

24    Job No.  5032584

25    PAGES 1 - 47
```

Page 1

1    special master's ruling?

2         MR. SWANSON:  Correct.

3         THE COURT:  Or you are at an impasse.  All right.

4    RFPs 27, 29 on redactions related to Tyler King.  Is

5    there a way to mediate that?

6         MR. SWANSON:  We haven't discussed these

7    specifically with Plaintiffs.  It came up in

8    Mr. Springer's email earlier this month.  And I think it

9    is possible.  We disagree that the information that it

10   is suggested be redacted, should be redacted.

11        MR. SNYDER:  Mr. Garrie, we had asked for this

12   conference initially.  And I think the way this

13   conference began is illustrative of why we asked for the

14   conference.  It was not to -- obviously you have the

15   absolute right to raise any issues and conduct it

16   obviously as you determine appropriate.

17        We had asked for this conference not to discuss

18   individual discovery issues that are not yet ripe, many

19   of which are in Defendant's agenda to you, but for a

20   broader -- what we think is a much more important

21   reason.  So --

22        THE COURT:  I am just doing the housekeeping.

23        MR. SNYDER:  Yeah, but that is our point.  The

24   housekeeping is our point.  And whenever I can be heard,

25   you know, it has to do with the overall conduct and

Veritext Legal Solutions
866 299-5127

1    our productions are deficient.  It is that the

2    allegations in this case are codified.  They're clear.

3    And at this pace, in this process with you, Mr. Garrie

4    and the plaintiffs, the plaintiffs are doing what

5    plaintiffs rarely do, which is they have no interest in

6    a substantial completion discovery date.

7          They're going to say it is because we are hiding

8    documents, blah, blah, blah, blah, blah.  It is

9    nonsense.  They don't have a winning case now.  When we

10   move for summary judgment, when we move for class cert

11   they're going to lose.  They know that.

12         MR. LOESER:  Is that helpful, Special Master

13   Garrie?

14         MR. SNYDER:  Excuse me, excuse me, excuse me.

15   When Mr. Loeser when you did that last time Judge Corley

16   ordered you not to --

17         THE COURT:  Counsel Snyder, Counsel Snyder,

18   Counsel, Counsel, one second.

19         MR. SNYDER:  It is always Mr. Loeser who starts

20   with the name-calling, every hearing.

21         THE COURT:  Counsel Snyder, Counsel Snyder.  Let

22   me say for everybody, please address your arguments to

23   me and just curb your comments until one side is

24   finished.  If I have questions I will do my best not to

25   interrupt, but direct your arguments to me.

Page 10

1        Counselor Snyder?

2        MR. SNYDER:  The problem we're having, we've been

3    mired in the document discovery dispute since November

4    of 2019 before the pandemic began.  We need, we are

5    entitled to, and the Court will expect finality in the

6    conclusion to the document discovery process.  Without

7    that this process, as we have said in our last appeal,

8    is not only going to up-end the schedule but will turn

9    this discovery process into an iterative ongoing

10   multiyear, beyond today project.  That's where we are

11   heading.

12       And the reason we're heading from, the reason

13   we're heading there is because right now they cannot

14   defend their case on the merits.  So they do not want --

15   usually plaintiffs want to end discovery and get to

16   trial.  They don't want the clock to end.  And so right

17   now with what they're asking us to produce, document

18   discovery will go through calendar year 2022.  That is

19   the logical consequence of what they're asking for.

20       They're fine with that, and they defend it by

21   saying we're hiding documents.  We need to do four

22   things, we think, to keep the case on schedule.  Right

23   now we have a schedule that brings the close of all

24   discovery June.  And until and unless Judge Chhabria

25   changes that schedule, which I think he would be loathe

Veritext Legal Solutions
866 299-5127

1   to do, we need to have this process proceed in

2   conformity with the schedule.  And the process is now a

3   runaway train where the schedule will be impossible,

4   impossible, to honor.

5        So there are four ways that we believe this

6   process can and should facilitate honoring and

7   compliance with Judge Chhabria's scheduling order.  Yes.

8   The first is to stop re-litigating disputes that you and

9   Judge Corley already decided and agreements were

10  reached.  We're having a tremendous amount of trouble

11  moving forward because at every opportunity they reopen

12  past wounds.  Search string issues, we have 30 new

13  RFP --

14       THE COURT:  Counselor Snyder, I understand and

15  appreciate your frustration.  And are you referring to

16  the one, two, three, four that you identified in your

17  joint agenda?

18       MR. SNYDER:  Yes, Your Honor.  This case -- I

19  have never seen a case like this.  This case is out of

20  control.  The plaintiffs will not stop.  We just got 30

21  RFPs that expanded on 60 that we have, 30 new RFPs that

22  are broader versions of the 60 we spent two years

23  negotiating.  This will not stop unless you stop it.

24  This will not stop unless you stop it.  And if you don't

25  stop it --

Page 12

1            THE COURT:  Counselor, I understand.  I hear you.

2            MR. SNYDER:  Let me just finish.  If you don't

3     stop it, and you are the boss, we have two remedies.  We

4     can appeal it or we can do what we're going to say when

5     we are before the Judge.  Judge, if you want this case

6     to go on another two years in fact discovery, there are

7     no facts that they can get where they will win the case.

8     We may then just be delayed by two more years.

9            But Judge, this discovery process ain't going to

10    end by June of 2020 because we think the special master

11    process has been -- I am not going to use a bad word --

12    has been converted into -- by the plaintiffs into this

13    roving, ongoing, every month they get to send us another

14    30 or 40 or 60 requests.  In my experience judges or

15    master special judges say no mas, no mas.  You are done.

16            THE COURT:  Nobody has made any request for no

17    mas on either side.  But I hear you.  So I appreciate

18    your position, and I do want to hear from Plaintiff.  I

19    mean, both parties, and I have told both sides here,

20    feel free to make motions for fees if you feel it is

21    unduly burdensome, if you think it is unreasonable.  You

22    have to ask for relief for the relief to be granted.  I

23    can't sue sponte.  I don't feel comfortable sue sponte

24    saying no more X, Y, Z or A, B C, because frankly I

25    didn't know about the brand-new RFPs you just got or

Page 13

```
 1    those things you were just alluding to.

 2           So I am more than happy if you want to bring a

 3    motion or raise the issue and so on and so forth to hear

 4    it.  And I understand and appreciate your frustration,

 5    but ultimately Judge Corley and Judge Chhabria are the

 6    ones you are going to have to go to.  And I appreciate

 7    both sides' perspectives here, and I am going to hear

 8    from Plaintiff on it.  And I appreciate it.

 9           MR. SNYDER:  He just ordered us to turn over

10    documents that will take us a year to turn over.  How is

11    that process consistent with the schedule?  I do think

12    that this process should be informed by the overarching

13    schedule.  And if we now have to produce and search for

14    and produce every ADI communication, quote, unquote,

15    that is going to take a year with hundreds of lawyers.

16    And if that's what you intend -- just illustratively.

17           And there is no sense in this process that there

18    is a scheduling order that is a federal court order that

19    we have to comply with that we can't comply with because

20    June 30th is a couple of weeks away, and they just sent

21    us 30 new RFPs.

22           MR. LOESER:  That is actually not true.

23           THE COURT:  Counselor Loeser, one second.

24           With the ADI I think I provided further

25    clarification to counsel Kutscher-Clark around that.
```

Page 14

1    And feel free to ask for further clarification.  It is

2    not my intention for you to search everywhere for

3    everything for those communications.  It's just a search

4    for what the existing custodians -- what Judge Corley

5    has said, like, should be provided to the parties.

6          And I should have -- I recognize I should have

7    put in that my --

8          MR. SNYDER:  I am not intending to raise any

9    specific issue today.  I think what I am asking --

10         THE COURT:  Okay.

11         MR. SNYDER:  -- is how can we all -- how can we

12   work in this process within the scheduling order that is

13   operative.  And if the plaintiffs say that that order is

14   no longer operative because we have been criminal in our

15   document production and scofflaws in our document

16   production, and they are going to tell Judge Chhabria

17   that they need another six months until we come into

18   compliance for our documents, at least we know what the

19   plaintiff's game is.

20         But we're operating in a make-believe world where

21   they have dozens and dozens of documents issues that

22   have no -- there is no end even in sight.  And I am not

23   on top of these issues.  My team is.  But they tell me

24   that we're nowhere near close to the end.  But the end

25   is Friday or next Friday.

Page 15

1           MR. LOESER:  I guess Ms. Kutscher-Clark would

2     have to be more specific.  There is -- oftentimes they

3     claim a production request isn't specifically enough to

4     cover some issue.  And so we're asked to provide another

5     one.  I don't know what Mr. Snyder is talking about with

6     all these new requests.  The last RFPs were August 30th.

7           THE COURT:  Okay.  So before we get into the

8     weeds of the RFPs and the other things, there is two

9     general guiding principles.  A, I agree on efficiency,

10    and I do agree on not having to reinvent the wheel.

11    With that said, both sides can make motions for fees or

12    for something to remedy the situation.

13          The parties agreed to a process to mediate before

14    you brought it before the special master.  And little

15    did I know there would be so many issues.  Because if I

16    did I certainly wouldn't have made it the process I did

17    at the time.  But we are where we are.  And frankly,

18    like with the RFPs or with the privilege log which is a

19    great example, the parties agreed to a privilege

20    protocol.  And the net/net is you negotiate, is you

21    negotiate it, you agree to it, and you should follow it.

22          If you don't think it is appropriate or will

23    apply, then make a motion to seek relief to have it

24    modified.  And if there is a compelling reason for it to

25    be modified state such.  But, you know, it's going to

Veritext Legal Solutions
866 299-5127

1    have to be pretty compelling, to be very frank about it,

2    because as both sides point out, you have been at this

3    for several years, right?

4         But that is different than the ADI and the other

5    things that I had the chance to read Judge Corley's

6    orders on, right, with regard to those things.  But I

7    mean -- and I appreciate your position, and, I mean,

8    frankly -- and I see your point, Counsel Kutscher-Clark.

9         But I think with specificity will come -- because

10   I actually read the RFPs, and I wasn't aware as to

11   what -- and I actually had to go through and print off

12   all sets to figure out and dates, right, because there

13   are five sets of RFPs with different dates, and looking

14   at them and I understand your position, and they were, I

15   believe, indeed served in August, if that is correct, I

16   believe at some point.  And there is back and forth.

17        And I am happy to make rulings, but they need to

18   be brought before me for me to put them to bed.  But

19   without you raising the issue I can't do a whole lot

20   with it.  I can't sue sponte, unfortunately.  I don't

21   have the same authority as Judge Chhabria or Judge

22   Corley that sue sponte can say, you know, say no more of

23   this, no more of that, right?

24        MS. WEAVER:  If I may be heard, I haven't yet had

25   an opportunity.  I would like to propose we can maybe be

Page 21

1   think that would be incredibly constructive, and we

2   could just get ruling from you that could help guide how

3   to make decisions and what to raise and what not to

4   raise.

5        But we would just like to move through this.

6   There is a lot to do.  There is a lot to do and a lot of

7   complex cases, we're all capable as lawyers of refining

8   these issues and accepting your rulings so we can move

9   forward.  We think we could that here.

10        MS. STEIN:  Respectfully, one of the --

11        THE COURT:  Everybody is talking.

12        Counselor Snyder, the floor is yours.

13        MR. SNYDER:  Let me just say one thing.  Here is

14   the problem.  And maybe we do a lose or pay process.

15   The issue -- the 27, which will balloon into 56 as it

16   inevitably does which will bloom into 87 which it

17   inevitably does.  And remember, they told Judge Corley

18   discovery is just getting started, is what they said,

19   four years into the case.

20        They fall into two categories, these 27 or more.

21   They've already been resolved, discussed and agreed

22   upon, one.  Two, their new requests in four years have

23   never been made.  And they are coming from left field,

24   right field, the dugout, the saloon down the street into

25   the ballpark for the first time weeks -- days, a month

Page 23

1    before the substantial completion cutoff.  So that is

2    the whack-a-mole moving forward.

3            When we go through the 27, which will be 56 by

4    time they get to you, you will see many -- most of one

5    of those two buckets, already discussed and agreed and

6    resolved and relate to requests that have never been

7    made before.  And maybe we should say $10,000 fine.

8            THE COURT:  How do you figure that, Counselor

9    Snyder?

10           MR. MELAMED:  May I respond?

11           MR. SNYDER:  Anyone who brings to you a $100,000

12   fine, half paid by the lawyers and half paid by the

13   client, I'm kind of making it up, if they raise issues

14   that have already been litigated and requests never

15   made, let's see how fast that list of 27 after it

16   balloons to 56 comes down to five.

17           MR. MELAMED:  I have an idea.

18           THE COURT:  Time out.  Time out.  Counselor

19   Loeser -- Counselor Melamed and Counselor Loeser, I am

20   happy to hear you, but I promised Counselor Stein next,

21   and I am going to honor that, and then Counselor Stein

22   and then Counsel Melamed.  But I feel like this is sort

23   of devolving, and I will entertain the remaining three

24   comments, and then I am going to weigh in here.  But I

25   appreciate, Counselor Snyder, your frustration --

Page 24

1   proposing solutions here.

2       He referred to the list of issues, the 27 current

3   issues as either reflecting issues that have already

4   been litigated and resolved or never having been raised

5   first.  Some of those 27 issues are issues that Facebook

6   raised; it is a joint submission.

7       Of the issues the Plaintiffs raised they include

8   a number of issues related to non-custodial ESI.

9   Non-custodial ESI, he is correct, it has been raised.

10  It was raised I believe at the first discovery

11  mediation.  It was raised in meet and confers years ago.

12  And they have not been resolved.

13      We do not have a binary answer whether Facebook

14  is willing to consider production from these

15  non-custodial sources and if so, how they will do that.

16  And if not, then we would have impasse.  So that

17  includes things like the capabilities log where you sat

18  in -- sorry, capabilities tool where you sat in on a

19  deposition where a deponent described how that was used

20  and that that reported things like the white-listed

21  capabilities to which entities were provided.

22      It includes the non-custodial internal financial

23  systems where to date Facebook has produced one-off

24  selective documents related to monetization of user

25  information.  So I don't expect them to agree on our

Veritext Legal Solutions
866 299-5127

1    position on this necessarily.  I just want to correct

2    the record to say that these are not issues that have

3    been raised and resolved, nor are they new issues.  They

4    are issues that have been raised and raised continuously

5    by Plaintiffs and not yet resolved.

6            MR. SNYDER:  That is my point.

7            THE COURT:  Counselor Snyder, Counselor Snyder.

8    I appreciate it, but it's Counselor Loeser's turn and

9    then I will give you the last and then --

10           MR. SNYDER:  30 seconds.  After he goes I have 30

11   seconds.  That's all.

12           THE COURT:  Okay.  Counsel Loeser -- I'm sorry.

13   Counsel Melamed.  Were you done?  Apologies.

14           MR. MELAMED:  No worries.  I have nothing more.

15   Thank you.

16           MR. ROBERTS:  It is important in these

17   conferences to try to make them useful.  There is a

18   court reporter, so it is important that the record be

19   accurate.  The problem I have with a lot of what

20   Mr. Snyder is saying is that it is just so departed from

21   the reality.

22           I understand his frustration if we file a bunch

23   of motions to compel and they were unfounded and they

24   were baseless, and he wanted to seek fees because we

25   bothered.  But we filed something like eight of them,

Page 28

1   departed-from-reality version which violated your

2   directive, but I am used to it by now and it is humorous

3   by this point.  I will just say prior counsel's comments

4   prove our exact point for requesting this conference.

5   He acknowledged and admitted that years ago they raised

6   this non-custodial ESI point.  They raised it in

7   mediation.  But guess what they didn't do?  They didn't

8   make a motion.

9        And now eight days before the substantial

10  completion date they want, I guess, to tee it up to you

11  sometime in February or March.  I don't know when.  No

12  mas.  They've had years to move on that.  They didn't.

13  Strike three.

14       MR. MELAMED:  To be clear, we attempted to move

15  on this back in the spring.

16       MR. SNYDER:  Let me finish, please.  This is my

17  point.  They've got hundreds of issues on the board.  At

18  some point you have to call it.  They didn't call it.

19  You should.  And I am happy to take make the motion.

20  Tell them no mas, you had years to bring this.  You

21  didn't.  That is the first point.

22       The second point, just for the record, my job is

23  not to keep documents away from them.  My job is to

24  comply with Judge Corley's order and get this case

25  resolved on the merits.  And in the process we produced

Page 30