# EXHIBIT 10

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT FACEBOOK, INC.**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor |

PROPOUNDING PARTY:   Plaintiffs

RESPONDING PARTY:   Facebook

SET NUMBER:   Two (2)

Plaintiffs hereby propound the following requests for production of documents to Defendant Facebook, Inc. ("Facebook"), pursuant to Federal Rules of Civil Procedure 26 and 34, and request that Facebook produce the documents and electronically-stored information set forth herein within thirty (30) days of service of these requests, at Bleichmar Fonti & Auld LLP, 555 12th Street, Suite 1600, Oakland, CA 94607.

## **INSTRUCTIONS**

1.    You shall respond to these requests for the production of documents in a manner consistent with the Federal Rules of Civil Procedure and the following instructions:

2.    In responding to each document request, furnish all responsive documents available at the time of production, including documents in your possession, custody or control, and in the possession, custody or control of your agents, employees, partners, representatives, subsidiaries, affiliates, investigators, or by your attorneys or their agents, employees or investigators.

3.    If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, the identity of all persons having knowledge or who had knowledge of the document and describe in full the circumstances surrounding its disposition from your possession or control.

4.    This is a continuing request for the production of documents and requires supplemental responses as provided for in the Federal Rules of Civil Procedure. If, after making your initial production, you (or any other persons acting on your behalf) obtain or become aware

of any further documents responsive to any document request, you are required to produce such additional documents to plaintiffs. Each supplemental response shall be served on plaintiffs no later than thirty days after the discovery of the further information.

5.      You shall produce the original of each document described below or, if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

6.      Documents shall be produced as kept in the regular course of business together with the original folders, binders, boxes or other containers in which they were maintained.

7.      All documents or things that respond in whole or in part to any portion of these requests are to be produced in their entirety, including attachments and their enclosures.

8.      Documents attached to each other should not be separated.

9.      Documents not otherwise responsive to any particular document request shall be produced if such documents mention, discuss, refer to, or explain the documents called for by any document request, or if such documents are attached to documents called for by any document request.

10.     Documents shall be produced in such fashion as to identify the custodian of each document.

11.     Identify the source of each document produced, by identifying: (a) all of the person(s) who possessed the document; (b) the positions or titles of any such individuals; and (c) all of the divisions and departments where each document was located. If you are unable to determine the individual(s) who possessed the document, identify the department and division where the document was located when produced.

12.     If you claim any form of privilege, whether based on statute or otherwise, as a ground for not producing any document, state the following:

    a.   The date of the document;

    b.   The name, the present or last known home and business address, the telephone numbers, the title (or position), and the occupation of those individuals who prepared, produced, reproduced or who were recipients of said document;

    c.   A description of the document sufficient to identify it without revealing the information for which the privilege is claimed;

    d.   The nature of the privilege asserted;

    e.   The factual basis upon which you claim any such privilege;

    f.   The location of the document; and

    g.   The custodian of the document.

13.     To the extent you object to any document request, you must provide specific responses as to what portion of the request you object to and state expressly why you will not respond to such request in sufficient detail to permit the Court to determine the validity of the objection. Responsive documents to which your objection does not apply should be produced.

14.     If you claim that all or any part of any document request, the Definitions, or Instructions is vague or ambiguous, please identify the specific language you consider vague or ambiguous and state the interpretation of the language in question you used to frame your response.

15.     Each document requested herein is to be produced in its entirety and without deletion or excision, regardless of whether you consider the entire document to be relevant or responsive to any document request. If you have removed, excised or deleted any portion of a

document, stamp the word "REDACTED" on each page of the document that you have redacted. Redactions should be included on the privilege log described in Instruction No. 13, above.

16.     One copy of each document should be produced. A document that varies in any way from the original or from any other copy, including drafts or a document with handwritten notations or deletions constitutes a separate document and must be produced, whether or not the original is in your possession, custody or control. Color (*i.e.*, not black and white) originals should be produced in color. If any identical copy cannot be produced for any reason (*e.g.*, faint writing, erasures, etc.), produce the original.

17.     Indicate the origin of each document and number each document with consecutive Bates numbers.

## **DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows and shall be used in construing the meaning of these requests for the production of documents.

1.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include all others, as appropriate, in the context.

2.     The present tense of a verb includes its past tense, and vice versa.

3.     "And" and "or" are to be construed conjunctively and disjunctively, as necessary, to bring within the scope of this request for production all responses that might otherwise be construed to be outside its scope.

4.     "Any" and "all" mean each and every.

5.     "App" means an interactive software application developed to utilize the core technologies of the Facebook social networking platform.

6.     "App Developer Investigation" or "ADI" means (as described in paragraph seven of the Chen Declaration) Facebook's investigation to determine "whether there has been misuse

of data in violation of Facebook's policies and associated legal liabilities, in connection with the first version of the [Facebook] Platform."

7.      "Apps Others Use" means the setting used to prevent the disclosure of personal information to third party App Developers through Facebook's API, as described in paragraphs 366 to 368 of the FAC.

8.      "App Settings" means settings that a User can alter or accept to limit Third Parties from accessing or obtaining Users' Content and Information, including Apps Others Use, Granular Data Permissions, Platform Opt Out, and the like.

9.      "Chen Declaration" means the Declaration of Stacy Chen in Support of Respondent's Opposition to the Attorney General's Petition, *Attorney General Maura Healy v. Facebook, Inc.*, No. 1984CV02597-BFS-1 (Mass. Super Ct., Suffolk Cty.).

10.     "Communication" means the transmittal (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, but is not limited to, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, messages sent on Facebook Messenger, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, electronic mail or email, and postings of any type.

11.     "Computer System" or "Computer Systems" include(s), but is not limited to, any server (whether physical or virtual), desktop computer, tablet computer, point of sale system, smart phone, cellular telephone, networking equipment, internet site, intranet site, and the software programs, applications, scripts, operating systems, or databases used to control, access, store, add, delete, or modify any information stored on any of the foregoing non-exclusive list.

12.     "Content and Information" refers to the definition in footnote 2 of the FAC, referring to "content" and "information" as Facebook's Statements of Rights and

Responsibilities have defined those terms. In brief, Facebook has generally used "information" to mean facts and other information about Users, including the actions they take, and "content" to mean anything Users post on Facebook that would not be included in the definition of "information." Content and Information also includes both personally identifiable content and information and anonymized content and information that is capable of being de-anonymized. *See* FAC ¶¶ 223-224. Content and Information includes data that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular User, including:

    a. Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

    b. Characteristics of protected classifications under California or federal law.

    c. Commercial information, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

    d. Biometric information.

    e. Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an Internet Web site, application, or advertisement.

    f. Geolocation data.

    g. Audio, electronic, visual, thermal, olfactory, or similar information.

    h. Professional or employment-related information.

     i.   Education information, defined as information that is not publicly available personally identifiable information as defined in the Family Educational Rights and Privacy Act (20 U.S.C. section 1232g, 34 C.F.R. Part 99).

     j.   Inferences drawn from any of the information identified in this paragraph to create a profile, dossier, or similar collection of information about a consumer reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes.

13.    "Document" or "Documents" is defined to include any Document, ESI, or Electronic Media stored in any medium, and is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)(1)(A), including, but not limited to, electronic or computerized data compilations, Communications, electronic chats, instant messaging, documents created through Workplace by Facebook, encrypted or self-destructing messages, messages sent via Facebook messenger, email Communications, other electronically stored information from Personal computers, sound recordings, photographs, and hard copy Documents maintained in your Personal files.

14.    "Electronic Media" means any magnetic, optical, or other storage media device used to record ESI including but not limited to computer memory, hard disks, floppy disks, flash memory devices, CDs, DVDs, Blu-ray discs, cloud storage (*e.g.*, DropBox, Box, OneDrive, or SharePoint), tablet computers (*e.g.*, iPad, Kindle, Nook, or Samsung Galaxy), cellular or smart phones (*e.g.*, BlackBerry, iPhone, or Samsung Galaxy), personal digital assistants, magnetic tapes of all types, or any other means for digital storage and/or transmittal.

15.    "Electronically Stored Information" or "ESI" means information that is stored in Electronic Media, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes, but is not limited to, metadata,

system data, deleted data, fragmented data, data pertaining to or maintained in Apps, database contents, and computer code.

16.     "FAC" refers to the First Amended Consolidated Complaint filed February 22, 2019, ECF No. 257.

17.     "Facebook," "Defendant," "You," or "Your" shall mean Facebook, Inc. and any of its executives, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors or bankers), and any other Person purporting to act on its behalf. In the case of business entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, these defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf.

18.     "FTC Consent Order" shall refer to the July 27, 2012 Federal Trade Commission Consent Order in *In the Matter of Facebook, Inc.*, No. C-4365.

19.     "Granular Data Permissions" means the setting through which the User accessing an App may limit the categories of Content and Information an App Developer may collect.

20.     "Identify," with respect to Documents, means to give, to the extent known, the (a) type of Document; (b) general subject matter; (c) date of the Document; (d) author(s); (e) addressee(s); and (f) recipient(s).

21.     "Including" means "including but not limited to," or "including, without limitation." Any examples which follow these phrases are set forth to clarify the request, definition or instruction but not to limit the request.

22.     "Internal Policy" or "Internal Policies" mean any formal or informal policy, procedure, rule, guideline, collaborative document, directive, instruction, or practice, whether written or unwritten, that You expect Your employees to follow in performing their jobs.

23.     "Misuse of Data," when used as a capitalized phrase, means the use by an App of a User's Content or Information that was broader or different than the use of that content or information only in connection with the person that gave the permission to the App to access such User's Content or Information.

24.     "Named Plaintiffs" means Steven Akins, Jason Ariciu, Samuel Armstrong, Anthony Bell, Bridgett Burk, Brendan Carr, John Doe, Terry Fischer, Shelly Forman, Paige Grays, Mary Beth Grisi, Tabielle Holsinger, Taunna Lee Johnson, Olivia Johnston, Tyler King, Ashley Kmieciak, William Lloyd, Gretchen Maxwell, Scott McDonnell, Ian Miller, Jordan O'Hara, Bridget Peters, Kimberly Robertson, Scott Schinder, Cheryl Senko, Dustin Short, Tonya Smith, Mitchell Staggs, Charnae Tutt, Barbara Vance-Guerbe, and Juliana Watson.

25.     "Person" or "Persons" means any natural Person or any business, legal or governmental entity or association.

26.     "Platform" refers to the services, tools, and products provided by Facebook to third parties to create their own applications and services that access data in Facebook.

27.     "Platform Opt Out" means the setting a User may access to choose that his or her Content and information is not accessed or obtained by any Apps or websites on Facebook's Platform.

28.     "Privacy Controls" means the audience selectors that control what information in a User's profile can be viewed by other Users, and includes Profile Privacy Settings, Profile Privacy Controls, Publisher Privacy Controls, and the like.

29.     "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, but not limited to, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

30.     "Third Parties" include the following:

    a.     Apps, App Developers, Whitelisted Apps, and Business Partners, as those terms are used in the FAC;

    b.     Any person that develops an application, software experience, game, or website that accesses Content and Information from Facebook's API or other Facebook software; and

    c.     Any person with which Facebook has or had an integration partnership.

31.     "User(s)" means individuals who maintain a Facebook account and can generally access the typical Facebook experience through website or mobile applications.

32.     Capitalized terms and acronyms not specifically defined herein have the same definition as in the FAC.

## RELEVANT TIME PERIOD

The relevant time period for each Document Request is January 1, 2007 through the present (the "Relevant Time Period"), unless otherwise specifically indicated. Each Document Request shall be interpreted to include all documents and information that relate to the Relevant Time Period or otherwise specified period, even if such documents or information were prepared or published outside of the Relevant Time Period or otherwise specified period. If a document prepared before or after this period is necessary for a correct or complete understanding of any

document covered by a request, you must produce the earlier or subsequent document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 6**

All Documents provided to or received from any governmental entity or regulator in the United States and United Kingdom in response to any formal or informal inquiry or investigation relating to whether Users' Content and Information was accessed or obtained by any Third Parties without proper consent or authorization, including but not limited to all inquiries or investigations arising out of the Cambridge Analytica Scandal, the FTC Consent Order, and any inquiry or investigation related to the settlement agreement with the FTC announced on July 24, 2019.

**REQUEST FOR PRODUCTION NO. 7**

All organizational charts, personnel directories, or other documents sufficient to show Your organizational structure, including:

(a)       the identity of subsidiaries, affiliates, and joint ventures, and your ownership interest, control of, or participation in any subsidiary or affiliate or joint venture related to agreements, engineering, access, use, transmission, receipt, collection or analysis of Facebook Users' Content and Information by Third Parties;

(b)       the organization of any division, department, unit or subdivision of your company that has responsibilities relating to agreements, engineering, access, use, transmission, receipt, collection or analysis of Users' Content and Information by Third Parties; and

(c)       the names, titles, job descriptions, and employment periods for your present and former employees who has or had responsibilities relating to agreements, engineering, access,

use, transmission, receipt, collection or analysis of Users' Content and Information by Third

Parties; and

(d)      the names, titles, job descriptions, and employment periods of Your present or

former directors, officers, or senior managers, as well as any secretaries or administrative

assistants assigned to these directors, officers, or senior managers.

**REQUEST FOR PRODUCTION NO. 8**

All versions (including each updated or amended version thereof) of Facebook's

"Platform Policies," which have been called the "Developer Principles and Policies," the

"Platform Guidelines," or the "Developer Terms of Service" (collectively, the "Platform

Policies").

**REQUEST FOR PRODUCTION NO. 9**

All Documents relating to each of the Named Plaintiffs, including but not limited to all

Content and Information collected about each of them or gained from business relationships or

any other source.

**REQUEST FOR PRODUCTION NO. 10**

For each of the Named Plaintiffs, Documents sufficient to show the categories of Content

and Information Facebook collects, tracks, and maintains about them.

**REQUEST FOR PRODUCTION NO. 11**

Documents sufficient to identify all Third Parties to which Facebook granted access to

Named Plaintiffs' Content and Information, what categories of Content and Information

Facebook granted access to, how Facebook allowed these Third Parties to access the Named

Plaintiffs' Content and Information, and the business purpose of all such access.

**REQUEST FOR PRODUCTION NO. 12**

Documents relating to any partnerships or agreements Facebook entered into with Third Parties for access to Named Plaintiffs' Content and Information.

**REQUEST FOR PRODUCTION NO. 13**

For all Third Parties to which Facebook granted access to Named Plaintiffs' Content and Information, Documents sufficient to show any use by Third Parties of such Content and Information not in connection with the User that granted the permission to the Third Party or inconsistent with Facebook's agreement with that Third Party.

**REQUEST FOR PRODUCTION NO. 14**

Documents sufficient to show the monetary or retail value of each named Plaintiff's Content and Information to Facebook, updated to reflect whenever Facebook's terms of service changed, including the calculation of revenue earned by Facebook for each Named Plaintiff based upon bartering or selling access to such Named Plaintiff's Content and Information.

**REQUEST FOR PRODUCTION NO. 15**

Documents sufficient to show the money or any other thing of value, including but not limited to money or any other thing of value paid in exchange for targeted advertising, that Facebook received in exchange for each Named Plaintiff's Content and Information, which entities paid Facebook, and when such payments were made.

**REQUEST FOR PRODUCTION NO. 16**

Documents sufficient to show the monetary or retail value of Users' Content and Information to Facebook, including all monthly, quarterly, and annual financial reporting relating to same, and including but not limited to the calculation of average revenue per user, any changes to such monetary or retail value relating to changes to Facebook's terms of service, and any financial reporting of Content and Information as an asset.

**REQUEST FOR PRODUCTION NO. 17**

All Documents relating to Facebook's assessment of the monetary or retail value of Users' Content and Information to Users (as distinct from value to Facebook), including analyses for providing compensation to Users for their Content and Information, including but not limited to Users compensated in connection with the Onavo or Research app.

**REQUEST FOR PRODUCTION NO. 18**

All Documents that have been transmitted to Users by Facebook relating to whether Users' Content and Information was accessed or obtained by Third Parties.

**REQUEST FOR PRODUCTION NO. 19**

All Documents supporting the escalation of those Apps escalated to Phase Two of ADI for Enhanced Examination and/or Phase Three of ADI for Enforcement and designated as follows in the Chen Declaration ¶ 34:

> (d) each [A]pp to which a request for information was sent; (e) each [A]pp for which an interview was sought with the developer; (f) each [A]pp for which a remote or onsite audit was requested to be conducted; (g) each [A]pp for which actual misuse was found and identification of that misuse; (h) each [A]pp that was banned for actual misuse; and (i) each [A]pp that was banned for failing to cooperate with Facebook's investigation.

Facebook has described identification of these Apps as non-privileged and has already produced it to the Massachusetts Attorney General's Office. *See* Chen Declaration ¶ 35.

**REQUEST FOR PRODUCTION NO. 20**

The list of Apps that Facebook provided to the Massachusetts Attorney General's Office and that the Chen Declaration ¶ 35 describes as "the subject of external actions or

communications with third parties, including the growing list of Apps Facebook has suspended as part of the [ADI], whether because of policy violations or because of their refusal to cooperate with Facebook's investigation."

**REQUEST FOR PRODUCTION NO. 21**

Communications between Facebook and Third Parties relating to the ADI, including but not limited to Communications that Facebook provided to the Massachusetts Attorney General's Office. *See* Chen Declaration ¶ 37.

**REQUEST FOR PRODUCTION NO. 22**

All "Privacy Risk Assessment[s]," and notes or agenda relating to Facebook's "focused subject-matter-specific meetings," "focused subject-matter-specific discussions," "weekly intra- and inter-team meetings," and "Privacy Summit[s]," as detailed in "Facebook's Privacy Program Overview" included in any PricewaterhouseCoopers LLP ("PwC") assessment report prepared pursuant to the FTC Consent Order.

**REQUEST FOR PRODUCTION NO. 23**

Unredacted versions and Documents in support of the assessment reports, including the Initial Assessment Report and Biennial Reports, prepared by PwC pursuant to the FTC Consent Order.

**REQUEST FOR PRODUCTION NO. 24**

Documents sufficient to identify all Third Parties to which Facebook granted access to Users' Content and Information not generally available through Platform pursuant to partnerships or agreements between Facebook and those Third Parties.

**REQUEST FOR PRODUCTION NO. 25**

All Documents relating to agreements or partnerships described in Request No. 24.

**REQUEST FOR PRODUCTION NO. 26**

For each of the Third Parties that Facebook entered into partnerships or agreements with as described in Request No. 24, Documents sufficient to identify:

- The fields, kinds, or categories of Content and Information that were accessed or obtained by such Third Parties;

- How each such Third Party accessed or obtained the Content and Information of Users;

- How each such Third Party used the Content and Information accessed or obtained;

- Where the Content and Information obtained by such Third Parties currently resides and who has access to it.

**REQUEST FOR PRODUCTION NO. 27**

Documents sufficient to show all forms and formats in which Facebook transmitted to Third Parties information concerning Users' liking, viewing, retrieving, or otherwise requesting or obtaining videos on, using, or by means of the Facebook Platform.

**REQUEST FOR PRODUCTION NO. 28**

All Documents relating to Internal Policies by Facebook on the monitoring of Third Parties' compliance with Facebook's Platform Policy, Data Policy, or SRR.

**REQUEST FOR PRODUCTION NO. 29**

All Documents relating to Internal Policies by Facebook on the enforcement of Facebook's Platform Policy, Data Policy, or SRR against Third Parties.

**REQUEST FOR PRODUCTION NO. 30**

All Documents relating to measures and controls, including proposed measures and controls, put in place by Facebook to prevent Third Parties from violating Facebook's Platform Policy, Data Policy, or SRR.

**REQUEST FOR PRODUCTION NO. 31**

All Documents relating to Facebook's audits, inquiries, and investigations of Third Parties investigating compliance with any provisions of Facebook's Platform Policy, Data Policy, or SRR regarding the access, use, transmission, receipt, collection and analysis of Users' Content and Information on and off the Platform.

**REQUEST FOR PRODUCTION NO. 32**

All Documents Concerning Misuse of Data, including investigations, examinations, inquiries, or audits—or Communications regarding such investigations, examinations, inquiries, or audits—regarding Misuse of Data prior to the deprecation of Graph API v.1.0.

**REQUEST FOR PRODUCTION NO. 33**

Documents sufficient to show the notice that Facebook provided to Users regarding modifications to Facebook's SRR or Data Policy, and all Communications related thereto.

**REQUEST FOR PRODUCTION NO. 34**

All Documents relating to the conditioning of Third Parties' access to Users' Content and Information on the purchase of Mobile App Install Ads, payment of Content and Information in-kind (referred internally as Reciprocity or Data Reciprocity), or other payment.

**REQUEST FOR PRODUCTION NO. 35**

Documents relating to the manner in which a Facebook User could control how his or her data was shared through their Privacy Controls and App Settings throughout the Relevant Time Period, including but not limited to screenshots of the Facebook website and the Facebook mobile application.

**REQUEST FOR PRODUCTION NO. 36**

All Documents concerning User testing, evaluation and analysis of Facebook's Privacy

Controls and App Settings during the Relevant Time Period, including but not limited to design

documents, correspondence, analyses, and reports.

Dated: November 25, 2019                          Respectfully submitted,


KELLER ROHRBACK L.L.P.                            BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*                      By:    */s/ Lesley E. Weaver*
       Derek W. Loeser                                   Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)         Lesley E. Weaver (SBN 191305)
Lynn Lincoln Sarko (admitted *pro hac vice*)      Anne K. Davis (SBN 267909)
Gretchen Freeman Cappio (admitted *pro hac vice*) Joshua D. Samra (SBN 313050)
Cari Campen Laufenberg (admitted *pro hac vice*)  555 12th Street, Suite 1600
Benjamin Gould (SBN 250630)                       Oakland, CA 94607
1201 Third Avenue, Suite 3200                     Tel.: (415) 445-4003
Seattle, WA 98101                                 Fax: (415) 445-4020
Tel.: (206) 623-1900                              lweaver@bfalaw.com
Fax: (206) 623-3384                               adavis@bfalaw.com
dloeser@kellerrohrback.com                        jsamra@bfalaw.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com


*Plaintiffs' Co-Lead Counsel*