# EXHIBIT 30

**Pages 1 - 53**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline S. Corley, Magistrate Judge

IN RE: FACEBOOK, INC. CONSUMER )
PRIVACY USER PROFILE LITIGATION.) **NO. 18-MD-02843 VC (JSC)**
                                 )

San Francisco, California
Wednesday, December 9, 2020

**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                    KELLER ROHRBACK LLP
                    1201 Third Avenue - Suite 3200
                    Seattle, Washington  98101
              BY:   **DEREK LOESER, ATTORNEY AT LAW**
                    **CARI LAUFENBERG, ATTORNEY AT LAW**
                    **DAVID J. KO, ATTORNEY AT LAW**

                    BLEICHMAR, FONTI & AULD LLP
                    555 12th Street - Suite 1600
                    Oakland, California  94607
              BY:   **LESLEY E. WEAVER, ATTORNEY AT LAW**
                    **ANNE K. DAVIS, ATTORNEY AT LAW**
                    **MATTHEW P. MONTGOMERY, ATTORNEY AT LAW**
                    **ANGELICA M. ORNELAS, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Reported By:       Marla F. Knox, RPR, CRR, RMR
                   United States Official Court Reporter

1 seek valuation documents about very particular types of
2 valuations.
3     They are asking about documents how Facebook values
4 individual pieces of user data; how Facebook values the named
5 Plaintiffs' data.
6     What we have been telling Plaintiffs -- and we have
7 investigated this extensively -- is that Facebook simply
8 doesn't value information that way.  So to the best of our
9 knowledge there wouldn't be responsive materials.
10     The other issue here is that the RFPs ask for documents
11 sufficient to show this type of information.
12     So we are running the search strings because typically
13 when you don't think there are documents about something
14 specific and you are asking for documents specific --
15 sufficient to show that information, you run search strings.
16 So you figure out if they are there.
17     And that's what we are trying to do; run the search
18 strings.  Figure out if there are any documents that show the
19 extensive valuation.  We don't think there are.
20     From our perspective, we think the first step here is to
21 run the search strings.  See if they return anything seeking
22 the type of information Plaintiffs are seeking, and then we can
23 take it from there.
24     The other issue we are having is that after Plaintiffs
25 sought that type of information, they did send us the letter

1   Okay.

2           **MS. WEAVER:** Yep.

3           **THE COURT:** So the next issue is the named Plaintiffs'
4   data. And here I actually am kind of confused because Facebook
5   suggested that there may not be any data other than what they
6   have already produced. And then I don't understand why (video
7   freeze interruption.)

8           **MS. KUTSCHER CLARK:** Right, Your Honor.
9       So, as we noted in our submission, we learned for the
10  first time in Plaintiffs' sur-reply brief on the named
11  Plaintiffs' data that what they are really seeking is only data
12  about the named Plaintiffs that was shared with third parties.
13      And for us seeing that in the sur-reply brief was a really
14  big aha moment because we had spent literally hundreds of hours
15  meeting and conferring about data that is never shared outside
16  of Facebook.
17      So now that we understand what they are really seeking is
18  the type of data that is actually shared or made accessible to
19  third parties, we have been taking a much closer look at what
20  would be responsive to that. And as we currently understand,
21  what has been produced really does cover that universe.
22      But we obviously want to be a hundred percent sure that
23  that is correct, and we are talking about a 13-year period, so
24  it is a very long time.
25      So we have been conducting a very careful investigation

1   within the company to be a hundred percent sure that the
2   materials produced to date reflect the full scope of any data
3   that could have been shared or made accessible to third parties
4   about the named Plaintiffs since 2007.
5       And if we do come across anything additional, we will
6   obviously report that to Plaintiffs and discuss a production
7   format with them, but to date we have not come across anything
8   that has not been produced already that could have even
9   potentially been shared with third parties.
10      **MR. LOESER:** Your Honor, if I may, I think there will
11  probably be multiple comments in response to that statement.
12  That makes no sense to us at all.
13      First of all, the question of their brief, which they
14  quote in their statement, talks about information, in fact,
15  shared. And what our brief said in our reply was information
16  shared or made accessible.
17      And we were very careful to use that language, "made
18  accessible," because Facebook has said for a long time that it
19  doesn't keep records of what it actually shares, which seemed
20  hard to believe to us.
21      But in order to avoid a semantic game, we also included
22  the reference to "made accessible" because whether it was
23  shared, whether they have records of it, if it was put in a
24  place or utilized in a way where third parties had access to
25  it, that substantially expands the universe of potential