# EXHIBIT 57

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

Martie Kutscher Clark
Direct: +1 650.849.5348
Fax: +1 650.849.5048
MKutscherClark@gibsondunn.com

April 5, 2020

VIA ELECTRONIC MAIL

Lesley Weaver
Matthew Montgomery
Anne Davis
Bleichmar Fonti & Auld LLP
555 12th Street
Suite 1600
Oakland, CA 94607

Re:     *In re Facebook, Inc. Consumer Privacy User Profile*, Northern District of California
        Case No. 3:18-md-02843-VC

Counsel:

We write in response to your letter dated March 30, regarding the parties' March 27 meet and confer.

**Discovery Procedure.**  We are pleased that the parties have reached an agreement on a protocol for discovery disputes.  We were, however, disappointed that Plaintiffs used their meet and confer letter—sent on the eve of that agreement—to distort the record regarding the parties' dispute negotiations.  Contrary to your assertion, Facebook was fully prepared to discuss Plaintiffs' process proposal during our discussion on March 27.  However, Plaintiffs advised Facebook for the first time during that call that they wished to adopt the dispute protocol used in *JUUL* in full, without the substantial modifications to that agreement Plaintiffs had proposed previously.  Between February 8 and March 26, Facebook had provided Plaintiffs three letters detailing its concerns about Plaintiffs' earlier proposal and the provisions we believed necessary for any dispute protocol in this case.  Once Plaintiffs withdraw their prior proposal and sought to adopt the *JUUL* protocol in full, Facebook suggested that it redline the *JUUL* protocol to include additional provisions appropriate for this case.  We did this, and the parties reached an agreement.  Now that the protocol has been entered, we sincerely hope that we can put this issue to rest.

**Privilege Logs**.  You state that the parties are at an impasse with respect to privilege logs because during our meet and confer Facebook did not agree immediately to Plaintiffs' proposal that the parties produce privilege logs within 45 days of each production.  Judge Chhabria has already rejected the structure that Plaintiffs propose and ordered the parties "to

# GIBSON DUNN

Lesley Weaver
April 5, 2020
Page 2

confer further and devise a system that allows Facebook sufficient time to prepare meaningful privilege logs without unduly delaying the proceedings." (Dkt. 381.)  Since February, Facebook has requested four separate times that Plaintiffs meet and confer with us regarding alternate structures to govern the deadline for privilege logs, suggesting three alternate proposals for the parties to consider.  To date, Plaintiffs have declined to engage in a discussion regarding these proposals.  We do not believe the approximately 2-minute conversation we had on March 27 regarding privilege logs—during which Plaintiffs offered their 45-day proposal on a take-it-or-leave-it basis[1]—complies with Judge Chhabria's order. Please meet and confer with us regarding our three alternate proposals.  As suggested previously, the parties should discuss:  (i) adopting specific deadlines for interim privilege logs; (ii) producing privilege logs on a rolling basis tied to certain document-review benchmarks; or (iii) producing privilege logs, in good faith, on a rolling basis, once a threshold number of documents have been produced.

**Organizational Materials.**  You state that the parties are at an impasse with respect to the organizational materials produced in the *LLE One* action.  On March 26, we sent you a lengthy letter once again offering to create organizational materials for custodians relevant to this action and asked you to work with Facebook to identify a reasonable list of custodians for that purpose.  To the extent that reporting line information was created for and produced in the *LLE One* action for any custodians who overlap with the custodians the parties select for that purpose, we do not object to further producing the reporting line information that was created for those individuals in *LLE One*.  We will not, however, reproduce wholesale reporting line information created for use in an unrelated action.  We again encourage you to work with Facebook to identify a reasonable set of custodians for whom we can create reporting line information for use in this case.

**FTC Correspondence.**  Facebook confirms that it has produced to Plaintiffs the FTC's document demands from its pre-2012 and 2018-2019 investigations and all correspondence (i) defining the scope of those demands and (ii) what Facebook agreed to produce in response to the demands.  Facebook does not have correspondence with the FTC regarding search terms and custodians going beyond the materials produced to Plaintiffs previously.

**2019 PwC Report.**  Facebook agrees to produce the report that PwC issued in 2019.

---

[1]  We further note that Plaintiffs provided a materially different privilege log proposal in their most recent draft ESI protocol proposal, which ties privilege log deadlines to depositions.  To date, the parties have never met and conferred regarding that proposal, which—as detailed in our letter dated March 14—would be logistically impossible for the parties to comply with, particularly given Plaintiffs' suggestion that the parties take nearly 180 depositions in this case.

**GIBSON DUNN**

Lesley Weaver
April 5, 2020
Page 3

**Documents Produced to Regulators**.  Facebook confirms that it did not withhold materials from its March 31st production in response to RFP 6 on the basis of the relevant time period.

**New Plaintiffs.**  Plaintiffs clarified during our March 27 meet and confer that the new U.S. Named Plaintiffs they wish to add would not "substitute" existing Named Plaintiffs—Plaintiffs simply seek to add additional Named Plaintiffs to the case.  When we asked why additional Named Plaintiffs are necessary, highlighting that there are already 25 Named Plaintiffs in the case, Plaintiffs stated that the reasons they seek to add additional Named Plaintiffs are privileged.

Although Facebook would like to understand why Plaintiffs seek to expand the already-large set of Named Plaintiffs in this action, Facebook will not oppose a motion Plaintiffs may file in the near term to add additional "U.S." existing Plaintiffs to the case.  If additional Named Plaintiffs are added to this case, Facebook requests that Plaintiffs provide Facebook within 14 days' of their addition information sufficient to identify their Facebook accounts.[2]  Facebook does, however, reserve all rights to seek any and all appropriate relief, including dismissal, resulting from any prejudice that may arise from Plaintiffs' late addition of Named Plaintiffs, including, but not limited to, any prejudice that may arise with respect to the preservation of relevant materials.  Facebook continues to object to Plaintiffs' request to substitute its current U.K. Named Plaintiff—who, to date, has declined to participate in litigation activities—given that it would be entirely improper to include U.K. class members in a Rule 23 class.

**Spoliation.**  As we discussed on our March 27 call, we are continuing to evaluate any spoliation issues concerning the Named Plaintiffs, and if we identify specific instances of spoliation, we will bring them to your attention.  In the meantime, counsel should remind their clients of their obligation to preserve evidence and to refrain from any efforts to delete or otherwise destroy materials related to the case.

**RFPs 14-17.**  Although Facebook calculates average per-user revenue, Facebook has explained to Plaintiffs that it does not engage in the types of valuations described by RFPs 14-17.  In response, Plaintiffs further expanded the scope of these RFPs to demand various categories of financial documents, including marketing and business plans, documents prepared for venture capitalists and potential investors, and documents underlying Facebook's public reporting of revenues.  The categories of materials Plaintiffs have identified as potentially responsive to RFPs 14-17 are extraordinarily broad, have no clear

---

[2]  Such information must consist of one of the categories of user information identified in Facebook's First Set of Interrogatories to the Named Plaintiffs as sufficient to identify the Named Plaintiffs' accounts.

**GIBSON DUNN**

Lesley Weaver
April 5, 2020
Page 4

relationship to Plaintiffs' claims, and concern Facebook's highly-sensitive business and financial information.

       Facebook asked Plaintiffs in February how the materials they seek relate to the claims at issue in the case.  Plaintiffs could not provide a coherent answer.  Facebook asked again in its letter dated February 24 how the materials Plaintiffs seek relate to Plaintiffs' remaining claims and suggested at minimum that Plaintiffs propose search terms to locate targeted materials.  Plaintiffs declined to respond for nearly 6 weeks.  In an April 3 letter, Plaintiffs suggest vaguely that the financial documents they seek relate to "damages," "motive," and "intent," and—once again—move the target as to the materials they request.  Facebook is evaluating Plaintiffs' revised position and will respond in due course.

Regards,

Martie Kutscher Clark

cc:  Derek Loeser, Cari Laufenberg, David Ko