# EXHIBIT 1

*DRAFT - FOR DISCUSSION PURPOSES*

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' SECOND AMENDED NOTICE OF DEPOSITION OF DEFENDANT FACEBOOK, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** under Federal Rules of Civil Procedure 26 and 30(b)(6), Plaintiffs, by their counsel, will take the deposition of Defendant Facebook, Inc. ("Facebook") at 9:00 a.m. ongoing, beginning January 11, 2022, subject to the parties' discussions. Please take notice that due to the disruptions to travel and accompanying shelter-in-place orders caused by the COVID-19 outbreak, the deposition of Facebook will occur via remote means on and will be coordinated by Veritext Legal Solutions, with a business address at 101 Montgomery St., Suite 450, San Francisco, CA 94104. Contact Veritext's calendar team at ahenderson@veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical assistance you may require to assist with carrying

*DRAFT - FOR DISCUSSION PURPOSES*

out the virtual deposition. Alternatively, if circumstances permit and the parties agree, the matter may be taken in whole or part in-person and virtually. Those who wish to appear in the physical presence of another do so at their own election; however, this noticing party is not requiring the in-person physical attendance of counsel, the witness or any other party to this action.

The deposition will be taken before a person authorized by law to administer oaths under Federal Rules of Civil Procedure 28(a) and shall continue from one day to the next, excluding Sundays and holidays, until the examination is completed.

Pursuant to Rule 30(b)(6), Defendant is hereby notified of its duty to designate one or more officers, directors, managing agents or other persons most knowledgeable or qualified to testify on its behalf concerning the matters set forth below. Each such designee produced to testify has an affirmative duty to have first reviewed all Documents, reports, and other matters known or reasonably known or available to Facebook and to familiarize himself or herself with all potential witnesses known or reasonably available to provide informed, binding answers at the deposition. Defendant Facebook shall inform Plaintiffs of such designations(s) at a reasonable time prior to the deposition(s), but no later than 7 days before the deposition(s), by setting forth the identity of the person(s) designated to testify with respect to the matters specified below. The deposition will continue on the day noticed and for additional days, if necessary, excluding Sundays and holidays, until completed.

Under Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant is requested to produce the documents responsive to the requests listed on Schedule B no fewer than five days before the deposition is to take place.

Plaintiffs reserve the right to notice and conduct additional Rule 30(b)(6) depositions of Defendant on separate, non-duplicative topics.

*DRAFT - FOR DISCUSSION PURPOSES*

**NOTICE IS FURTHER GIVEN** that Plaintiffs reserve the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or, in the alternative, video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that Plaintiffs reserve the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment. Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer in the State of California. Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the purposes of providing the oath/affirmation to the deponent and capturing the proceeding. Plaintiffs further reserve the right to utilize the following: (1) Record the deposition utilizing audio or video technology; (2) Instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in Realtime; (3) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.  Please contact the noticing attorney no less than five (5) calendar days prior to the deposition to provide all necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, for those who will attend and/or participate in the deposition in order that participation and connection can be

*DRAFT - FOR DISCUSSION PURPOSES*

arranged and details provided sufficiently in advance of the proceeding(s).  A list of all parties or attorneys for parties on whom this Notice of Deposition is being served is shown on the accompanying proof of service.


Dated: December 23, 2021


KELLER ROHRBACK L.L.P.

By:  */s/ Derek W. Loeser*
     Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

BLEICHMAR FONTI & AULD LLP

By:  */s/ Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*DRAFT - FOR DISCUSSION PURPOSES*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a true and correct copy of:

- **PLAINTIFFS' SECOND AMENDED NOTICE OF DEPOSITION OF DEFENDANT FACEBOOK, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

via Email on this 23rd day of December, 2021 to the person(s) set forth below:

Laura Mumm
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
osnyder@gibsondunn.com
lmumm@gibsondunn.com

Martie Kutscher-Clark
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA
MKutscherClark@gibsondunn.com

Russell Falconer
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
rfalconer@gibsondunn.com

Deborah Stein
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
dstein@gibsondunn.com

Colin B. Davis
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
cdavis@gibsondunn.com

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at Oakland, California, on December 23, 2021.

*/s/ NAME*
NAME

## SCHEDULE A

### I.   DEFINITIONS AND RULES OF CONSTRUCTION

In the event of any conflict or ambiguity between the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question.

1.      "API" refers to an application programming interface.

2.      "App" means an interactive software application developed to utilize the core technologies of the Facebook social networking platform.

3.      "App Developer" refers to any person or company that develops an App, software experience, game, plugin, or website that accesses User Data from Facebook's APIs or other Facebook software.

4.      "App Publisher" refers to any person or company who publishes an App on Facebook's platform.

5.      "App Settings" means the selectors on the Facebook App that purported to allow Facebook Users to prevent their Content and Information from being shared with applications. *See* SACC ¶¶ 310-321.

6.      "Business Plan" means any plan created or prepared by Facebook regarding Facebook's historical and future business strategy, including but not limited to Facebook's historical and future operations, and Facebook's historical and future financial positions.

7.      "Communication" means any contact, oral or documentary, formal or informal, at any time or place or under any circumstances whatsoever, whereby information of any nature is transmitted or transferred, including correspondence, and references to notes, letters, memorandum, e-mail, reports, or any other document by which information is passed or

*DRAFT - FOR DISCUSSION PURPOSES*

conveyed from one individual or entity to another.

8.      "Computer System" or "Computer Systems" include(s), but is not limited to, any server (whether physical or virtual), desktop computer, tablet computer, point of sale system, smart phone, cellular telephone, networking equipment, internet site, intranet site, and the software programs, applications, scripts, operating systems, or Databases used to control, access, store, add, delete, or modify any information stored on any of the foregoing non-exclusive list.

9.      "Content and Information" refers to the definition in footnote 2 of the Second Amended Consolidated Complaint ("SACC"), referring to "content" and "information" as Facebook's Statements of Rights and Responsibilities have defined those terms. In brief, Facebook has generally used "information" to mean facts and other information about Users, including the actions they take, and "content" to mean anything Users post on Facebook that would not be included in the definition of "information." Content and Information also includes both personally identifiable user data and anonymized Data or information that is capable of being de-anonymized. *See* SACC ¶¶ 263-264. Content and Information includes but is not limited to Personal Information.

10.     "Data" or "Information" refers to Personal Information (defined herein), Content and Information, and Data collected and derived about Users, including information ordered relevant in the Court's October 29, 2020 Order, Dkt. No. 557 ("Discovery Order No. 9"), which defines the discoverable User Data at issue in this case to include "Data collected from a user's on-platform activity; Data obtained from third parties regarding a user's off-platform activities; and Data inferred from a user's on or off-platform activity."

11.     "Data Brokers" refer to companies that specialize in collecting personal Data or Data about companies, mostly from public records but sometimes sourced privately, and selling

*DRAFT - FOR DISCUSSION PURPOSES*

or licensing such information to third parties for a variety of uses.

12.     "Default" means the Privacy Setting or App Setting that Facebook selected for Users, and which required Users to take affirmative steps to change.

13.     "Document(s)" includes any data, document, ESI, or electronic media stored in any medium and is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34 and Federal Rules of Evidence 101(4)(6), and 1101, including, but not limited to programming source code, electronic or computerized data compilations, any writing, drawing, graph, chart, photography, phonorecord, Communications, electronic chats, instant messaging (including ephemeral ones), encrypted or self-destructing messages, email Communications, notebooks, diaries, reports, logs, digitally encoded Data, Database, graphic, other electronically stored information from Personal computers, sound recordings, photographs, hard copy Documents. and/or other Data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof, and all copies bearing notations and marks not found on the original. The term "Document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries, or divisions thereof, and their officers, directors, employees, agents and attorneys), including drafts. Without limiting the term "control" as used in the preceding sentence, a Person is deemed to be in control of a document if the Person has the right or ability to secure the document or a copy thereof from another Person having actual possession thereof, including, but not limited to, work product contracted by You from others. Documents that are identical but in the possession of more than one Person or entity are separate documents

*DRAFT - FOR DISCUSSION PURPOSES*

within the meaning of this term. Also, a draft or non-identical copy is a separate document within the meaning of this term.

14.     "Discovery Order No. 9" refers to the Court's October 29, 2020 Order, Dkt. No. 557, that defined the discoverable data at issue in this case to include "Data collected from a user's on-platform activity; Data obtained from third parties regarding a user's off-platform activities; and Data inferred from a user's on or off-platform activity."

15.     "Electronically-Stored Information" or "ESI" means the complete original and any non -identical copy (whether different from the original because of notations, different metadata, or otherwise) of any electronically created or stored information, including, but is not limited to, the following:

    a.  All items covered by Fed. R. Civ. P. 34(a)(1)(A);

    b.  Information or Data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.), system data, deleted data, fragmented data, data pertaining to or maintained in Apps, database contents, and computer code;

    c.  Internal or external web sites, intranets and extranets;

    d.  Output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, Database files, unorganized data, charts, graphs and outlines, e-mail, instant messaging, SMS, MMS, or other text messaging,, Facebook Messenger, WhatsApp, AOL Instant Messenger (or similar programs), and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted - items folder), word- processing

*DRAFT - FOR DISCUSSION PURPOSES*

files, spreadsheets, databases, presentation files, video recordings, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device, bulletin board programs, screenshots/screengrabs, screen sharing recordings, webcasts, screencasts, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic Data exists in an active file, a deleted file, or file fragment;

e. Activity listings of electronic mail receipts and/or transmittals; and

f. Any and all items stored on computer memories, hard disks, floppy disks, CDROM, magnetic tapes of all types, microfiche, flash memory devices, CDs, DVDs, Blu-ray discs, cloud storage (e.g., DropBox, Box, OneDrive, or SharePoint), or on any other media for digital Data storage, or transmittal, such as, but not limited to, personal digital assistants, (e.g., iPhones), cellular or smart phones (e.g., iPhones, tablets, BlackBerrys, iPhone, or Samsung Galaxy), personal digital assistants, or any other means for digital storage and/or transmittal and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

8.    "Friend" refers to a User whose Data or Information became accessible to a Third Party because they were Facebook friends with another User. "Friends" is the plural of Friend.

16.    "Including" means "including but not limited to," or "including, without limitation." Any examples which follow these phrases are set forth to clarify the request, definition, or instruction but not to limit the topic.

*DRAFT - FOR DISCUSSION PURPOSES*

17.     "Integration Partnership" refers to any Facebook Partner for whom the purpose of the partnership was to support the functionality of the Facebook App on a device or platform.

18.     "Marketing Plan" means any plan created or prepared by Facebook regarding Facebook's historical and future marketing or advertising strategy.

19.     "Partner(s)" refers to the definition provided in Order re: Business Partners Discovery Dispute (Dkt. No. 608), as confirmed in the Special Master's Order re: Business Partners, issued November 2, 2021, Whitelisted Partners (as defined herein) and includes persons, apps and entities who accessed user information directly as well as those who were able to target users based on information derived about them by Facebook.

20.     "Personal Information" under California law at Cal. Civ. Code § 1798.140(o)(1) is information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular User, such as:

      a.  Identifiers such as a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, social security number, driver's license number, passport number, or other similar identifiers.

      b.  Characteristics of protected classifications under California or federal law.

      c.  Commercial information, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

      d.  Biometric information.

      e.  Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a

*DRAFT - FOR DISCUSSION PURPOSES*

consumer's interaction with an Internet Web site, application, or advertisement.

    f.   Geolocation Data.

    g.   Audio, electronic, visual, thermal, olfactory, or similar information.

    h.   Professional or employment-related information.

    i.   Education information, defined as information that is not publicly available personally identifiable information as defined in the Family Educational Rights and Privacy Act (20 U.S.C. section 1232g, 34 C.F.R. Part 99).

    j.   Inferences drawn from any of the information identified in this paragraph to create a profile, dossier, or similar collection of information about a consumer reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes.

21.    "Policies and Procedures" includes any formal or informal policy, procedure, rule, guideline, internal manuals, collaborative document, directive, instruction, or practice, whether written or unwritten, that You expect Your principals, directors, officers and employees to follow in performing their jobs.

22.    "Users' Privacy Settings" means the audience selectors on the Facebook App that purported to allow Facebook users to control with whom their information was shared.

23.    The "Special Master's Order Re: Plaintiffs' Motion to Compel Production of Plaintiff Data" refers to the order of that named issued by the Special Master on November 29, 2021.

24.    "Third Parties" include the following:

    a.   Apps, App Developers, App Publishers, Whitelisted Partners, and Partners;

    b.   Data Brokers;

*DRAFT - FOR DISCUSSION PURPOSES*

      c.   Any person or company with which Facebook has or had an integration

          partnership; and

      d.   Advertisers, to the extent these are not already covered in prior categories above.

25.     "Terms of Service" refers to the documents to which a User or Third Party must agree to in order to use or access Facebook.

9.     "User" means a person who maintains or has maintained a Facebook account in the United States. "Users" is the plural of User.

10.     "Use Case" refers the purpose for an entity to obtain User Data.

11.     "API Version" refers to both major version and minor version of an API (*e.g.* Version 2.0 is different from Version 2.1).

26.     "Whitelisted Partners" includes any entity or person whose access to Users' Data as defined herein continued after Facebook announced such access was ending in 2015. "Whitelist," "Whitelisted", or "Whitelisting" refers to this practice.

27.     "You" or "your" or "Facebook" or "Defendant" means Defendant Facebook, Inc., together with your predecessors, successors, parents, subsidiaries, divisions or affiliates (foreign or domestic), and their respective current and former officers, directors, agents, attorneys, accountants, employees, partners, managers, members or other persons occupying similar positions or performing similar functions, and all persons acting or purporting to act on its behalf.

28.     Words used in the plural include the singular, and words used in the singular include the plural.

## II.    RELEVANT TIME PERIOD

Unless otherwise specified or agreed upon by the parties, the relevant time period for

*DRAFT - FOR DISCUSSION PURPOSES*

purposes of this Notice is January 1, 2007 through the present.

## III.   MATTERS FOR TESTIMONY

1.      [4.0 hours] Your organizational structure, including (i) the names of departments or other organizational designations within Facebook, their functions, and their structure within Facebook and (ii) employees in each department (including their responsibilities and chain of command), as (i) and (ii) relate to:

   a.   The calculation of revenues, gross profits, net profits, goodwill, impairments and assets recognized by Facebook relating to Users' Data or Information, including but not limited to Facebook's public reporting of same;

   b.   The process for drafting, evaluating, approving, modifying, issuing and monitoring the effectiveness of the Statement of Rights and Responsibilities, Data Use Policies, Privacy Policies, disclosures, public statements, Facebook messages or posts by CEO Zuckerberg, Sandberg or any Facebook executive that concern: (i) the sharing of Users' Data or Information with Third Parties, (ii) the use of Users' Data or Information by Third Parties, including identification of those responsible for these functions; and (iii) Cambridge Analytica or inquiries, investigations, public response, media reports, regulatory or governmental hearings into concerns arising out of the Cambridge Analytica scandal; and

   c.   Communications with shareholders, financial stakeholders, regulatory or governmental entities, and the public arising out of the Cambridge Analytica scandal.

*DRAFT - FOR DISCUSSION PURPOSES*

2.      [4.0 hours ] Identification, by category, of the type of Data or Information to which Facebook sold, made accessible, available or allowed Third Parties to target Users, including:

> a.  The types of User Data or Information Facebook shared, made accessible or targeted;
>
> b.  The purposes for which such Data or Information was shared, made accessible or targeted;
>
> c.  The format or formats through which it is shared, made accessible or targeted; and
>
> d.  How Facebook ensured Third Parties' Use of such Data or Information is limited to the Use Case.

3.      [3.5 hours] An overview of the processes of developing Privacy or App Settings or other controls made available to Users to prevent or limit their Data or Information from being accessed by Third Parties, including the dates during which each such Privacy or App Setting or other controls were available, the Data and Information covered by each Setting or control, and the Default setting for each, including:

> a.  How Privacy or App Settings or other privacy designations associated with Users' Data and Information were (or were not) communicated to Third Parties such that Third Parties could comply with them;
>
> b.  Processes, reviews, investigations, inquiries, studies, analyses, and Communications relating to Users' Privacy or App Settings, their efficacy, including user experience, customer service, internal regulators, whether internal or by third parties; and

*DRAFT - FOR DISCUSSION PURPOSES*

      c.   Facebook's monitoring and enforcement of contractual terms with Third Parties regarding their use of Users' Data or Information, including enforcement of Policies regulating access to such Data or Information beyond the Use Case.

    4.   [3.0 hours] Facebook's processes of pseudonymization, de-identification, re-identification, association, and deletion of User Data and Information.

    5.   [5.0 hours] The development of Friend Sharing, including but not limited to: its purpose and identification of those involved in its development; how the technology functioned; the APIs and permissions associated with Friend Sharing; the communication of this technology to users, including the drafting of Facebook's Terms of Service, SRR and Data and Privacy Policies relating Friend sharing; and the revenue impact and net profits for Facebook relating to Friend sharing throughout the Class Period.

    6.   The decision to Whitelist particular apps or partners, and how Facebook determined which entities to Whitelist, including:

      a.   The most efficient way to identify each Whitelisted entity (including but not limited to apps and partners) throughout the Class Period; the purpose of such Whitelisting; what Data or Information each Whitelisted entity had access to; for what period of time; and whether the access granted exceeded the Use Case;  and when such Whitelisting ceased; and calls logs or any other tracking of third-party Whitelisted apps or partners that had access to and made use of Friend Sharing APIs and permissions;

      b.   The most efficient way to establish payments, revenues, exchanged value, actual or promised, Facebook received for permitting Whitelisting capabilities, and the revenues and net profits Facebook recognized related to Whitelisting throughout

*DRAFT - FOR DISCUSSION PURPOSES*

the Class Period, including the evaluation of the benefits, including goodwill,

barter or exchange benefits; and

 c. Identification of those with decision-making responsibility relating to whitelisting

  throughout the Class Period, beginning with those with final and decisive

  authority.

7. [1.0 hours] The methods, tools, technologies, databases, project management tools, task

lists, or other internal sources Facebook used to track Third Parties and Data Brokers, including:

 a. The type and purpose of Data and Information Facebook received;

 b. The type and purpose of Data and Information Facebook provided;

 c. The Payments, consideration, actual or promised, Facebook provided or received

  for engaging in such exchanges; and

 d. The evaluation of the Benefits to Facebook of the information provided or

  received for engaging in such exchanges.

8. [3.0 hours] Video content and information relating to video content, requested or

obtained, available to or accessed, interacted with, or shared by users on or via the Facebook

platform, specifically:

 a. The amount of such content and how the amount of such content has changed or

  varied over time;

 b. the records or information that Facebook has regarding such content and users'

  access to, interactions with or sharing of such content;

 c. Actions taken or decisions made by Facebook in order to enable users to access,

  interact with, or share such content, and when such actions were taken or

  decisions were made;

d.  Access by Third Parties to Data and Information related to users' access to, interaction with, or sharing of video content on or via the Facebook platform, and whether and how such access has changed or varied over time, including but not limited to APIs, permissions and capabilities providing access to Facebook users' video related content and information; and

e.  Which persons employed at any time by Facebook have the most knowledge related to the topics listed in paragraphs a through d above.

9.  Facebook's calculation of revenues, gross profits, and net profits recognized by Facebook relating to Users' Data or Information, including but not limited to how Facebook monetized User Data or Information, how Facebook quantified the value of sharing User Data or Information, and Facebook's business and marketing strategy regarding the monetization and quantification of User Data or Information.

## **<u>SCHEDULE B</u>**

Pursuant to Fed. R. Civ. P. 30(b)(5) and 34, Plaintiffs request the production of or identification by Bates number of the following within 30 days of service of this request at the offices of the undersigned:

1.      All documents which deponent has consulted or reviewed or plans to consult in preparation for their deposition and has relied upon or will rely upon for testimony on the above deposition topics.

2.      A curriculum vitae for each person Facebook designates to testify on behalf of Defendant Facebook.