Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: VIA VIDEOCONFERENCE<br>Hearing Date: June 9, 2022<br>Hearing Time: 2:30 pm |

## PLAINTIFFS' STATEMENT

Plaintiffs are pursuing the discovery they need to prove their case. Since the last case management conference, some of that discovery continues to be delayed or outright impeded. Facebook's portion of this joint statement asserts that Plaintiffs are somehow responsible for these difficulties. But Plaintiffs are not the reason that Facebook has still not completed its production of ADI documents. Plaintiffs did not offer 30(b)(6) designees but then put undisclosed limitations on their testimony. Nor did Plaintiffs serve a privilege log that, based on a statistically significant sample, mostly contains unjustified assertions of privilege. Plaintiffs are focused on procuring evidence supporting class certification and the merits of their claims within this Court's ordered case management schedule.[1]

**1.     Rule 30(b)(6) depositions.** At the last hearing, Plaintiffs expressed optimism that 30(b)(6) depositions would be completed in April. Despite Plaintiffs' efforts, the depositions did not start until May, and testimony remains to be taken on at least five topics. Facebook has indicated it will not be possible to complete 30(b)(6) depositions before July. Plaintiffs ask that Facebook be ordered to produce all documents related to outstanding 30(b)(6) depositions by June 15 and to complete 30(b)(6) depositions by the end of June.

During the 30(b)(6) depositions taken so far, Plaintiffs learned for the first time of improper limitations Facebook placed on the scope of testimony. As a result, Facebook's designees have not been prepared to testify about noticed topics central to the case. And although Plaintiffs are required to disclose the documents they will use in 30(b)(6) depositions three days before each deposition, the designees have not been prepared to discuss many of them.

Plaintiffs briefly summarize the problems encountered in the depositions of each of the first four 30(b)(6) designees:

- Facebook's designee on its policies, including its enforcement efforts and monitoring of

---

[1] For the Court's reference, Plaintiffs intended to attach the parties' discovery tracker dated May 27, which documents the status of the current and past discovery disputes. Facebook has objected to this attachment, so Plaintiffs have deferred providing this to the Court.

third parties' use of user data, declined to testify about the circumstances in which Facebook enforced its policies, ECF No. 934-3 at 7, even though the notes prepared for use during her deposition (and only produced after it) include concrete facts about how Facebook applied its policies to third-party apps and the number of enforcement actions taken from 2012 to 2021, FB-CA-MDL-03132829–38. Based in part on Facebook's refusal to answer questions and counsel's improper instructions not to answer based on scope, Plaintiffs immediately moved for sanctions, and the parties stipulated to the relief Plaintiffs sought. ECF No. 936.

- Facebook's designee on friend sharing and whitelisting, including the "revenues and net profits . . . related to whitelisting," was not prepared to testify on multiple relevant issues, including: documents identified in advance discussing the format for selecting partners for continued access to friend or other publicly deprecated data permissions; how Facebook classifies and values partners, analyses prepared by Facebook assessing potential revenue if partners stopped using Facebook due to its deprecation of friend sharing and other data permissions; and whether Facebook could isolate its revenue from whitelisted partners. Cross Tr. 269–274, 289–293, 324–25, 379–391. Plaintiffs stress that *this* designee was designated to testify about revenue from whitelisting, so it is deeply misleading to say that "another witness has been designated on that topic." *Infra* p. 7.

- Facebook's designee on association and deletion of user data was not prepared to testify on association, only deletion, nor regarding Facebook's understanding of "personal information," Clark Tr. 217–18, which informs Facebook's promise to anonymize certain information shared with third parties. The Special Master instructed Facebook to "find a witness that can define what personal information is." *Id.* at 245. Plaintiffs have asked Facebook to produce a witness to provide this testimony. Facebook has not yet responded.

- Facebook's designee on the calculation of revenues was not prepared to testify about payments Facebook makes to third parties for user data, which establishes market prices for such data, Lee Tr. at 200–02, even though Plaintiffs had specifically notified Facebook of its intent to ask about these payments before the deposition. Plaintiffs have requested further testimony and document production related to these payments. Facebook has not yet responded.

These problems have arisen despite Plaintiffs' consistent efforts to meet and confer. They served a draft 30(b)(6) notice on December 23, 2021 and sought at that time to meet and confer. Facebook did not substantively respond until after Plaintiffs served the operative 30(b)(6) notice on March 1, 2022, despite Plaintiffs' repeated attempts to confer. It is thus false for Facebook to claim that Plaintiffs have failed to discuss the notice. Rather, it was Facebook that did not provide objections until March 29, the day before the last case management conference. On

receiving the objections, *Plaintiffs immediately conferred with Facebook*, which assured Plaintiffs that the objections were "boilerplate," "really nothing," and would not limit the scope of the topics. Based on these assurances, Plaintiffs reported their expectation that the 30(b)(6) depositions would proceed in April and that witnesses would be prepared to testify about the noticed issues. Hr'g Tr. at 11:15–21, 11:25–12:1 (Mar. 30, 2022).

On April 25, Facebook took back its assurances that its objections would not limit the scope of testimony but provided no specifics. Instead, it promised to provide a comprehensive statement about the scope of 30(b)(6) testimony and its concerns about each topic, but did not do so before the depositions began. Since that time, Plaintiffs have conferred with Facebook for more than 20 hours. Facebook's claims otherwise are not true.

Facebook criticizes Plaintiffs' 30(b)(6) notice for inquiring into targeted advertising, which it asserts is outside the scope of this case. But the evidence—including internal Facebook communications—indicates that Facebook, without users' permission, shared users' non-public information with third parties to profit through targeted advertising. Further, evidence related to targeted advertising bears directly on damages. *See* Cross Dep. Tr. at 383–84, 390–91.

**2.     ADI.** Facebook is in violation of Court orders regarding the production of ADI documents. On February 10, the Court directed Facebook to produce all ADI-related documents within 21 days. Hr'g Tr. at 13 (Feb. 10, 2022). Twenty-eight days later, Facebook told Plaintiffs it had completed the ADI production. ECF No. 923, Ex. 71.

In late March or early April, however, Facebook first told Plaintiffs of limitations on its ADI production. It had not searched all custodians, had used obviously deficient search terms (e.g., "ADI" and "App Developer Investigation" were not used), and searched for documents from truncated period. *See* ECF No. 923, ¶¶ 5–10. Plaintiffs were surprised to learn of these limitations. Plaintiffs expected, for example, that Facebook would search "*all*" custodians, since that is what the Special Master's order required. ECF No. 828 at 5, ¶ 20 (emphasis added). The "26 ADI custodians" that Facebook instead searched, *infra* p. 8, did not represent all custodians and had been used earlier for a distinct and limited purpose. *See* ECF No. 513 & Ex. A.

Facebook eventually agreed to cure the deficiencies. ECF No. 923, ¶ 11.

Meanwhile, the Court directed Facebook to produce all ADI-related documents by April 27. *See* Hr'g Tr. at 7 (Mar. 30, 2020). Facebook did not meet that deadline. By April 27, Facebook had completed production of ADI documents only from a limited subset of custodians. It recently told Plaintiffs that production would be complete by June 15. The ten-week delay has caused a waterfall of other delays, including delays in resolving privilege disputes and scheduling and taking depositions.

**3. Privilege overdesignation.** Through February 2022, Facebook had logged 22,071 documents as privileged. In March, it served a log that included 233,544 new entries. Given that the March log was an order of magnitude larger than the previous logs, the parties agreed to a new process to resolve disputes. Plaintiffs challenged certain categories of withheld documents, and Facebook reviewed a random sample of 3,062 unique documents within those categories. This exercise led Facebook to wholly withdraw its privilege claims over 1,938 of the documents (63%), produce 331 redacted documents, and withdraw work-product designation for 17— thereby altering the designation of nearly 75% of the sample. Given this overdesignation, Facebook agreed to re-review each of the remaining 233,544 documents. This has so far resulted in the de-designation of more than 10,000 documents, with review and de-designation ongoing.

Facebook's overdesignation of documents has significantly delayed the case. While Plaintiffs appreciate that Facebook appears to be producing these documents now, their improper withholding has prejudiced (and will prejudice) Plaintiffs. For example on Sunday, May 22, two days before the deposition of former Facebook employee Douglas Purdy, Facebook produced 1,744 documents of his documents that had been erroneously withheld as privileged.

**4. Financial information.** Since 2019, Plaintiffs have sought production of information about the revenue Facebook receives as a result of allowing third parties access to user data. Until recently, Facebook repeatedly denied that such information existed, including in on-the-record statements made to Judge Corley. It is, again, simply false for Facebook to claim that Plaintiffs "were silent" about financial information "for a year." *Infra* p. 9. Plaintiffs raised

this issue multiple times throughout 2021 and 2022. On March 4, Facebook agreed to search again, and began producing documents—which do, in fact, exist—on April 15. Facebook has not told Plaintiffs when production will be complete. Facebook should be ordered to complete this production by July 1, 2022.

**5.     VPPA documents.** Plaintiffs first requested VPPA-related documents in November 2019. In August 2021, Plaintiffs served Facebook with RFPs narrowly focused on VPPA issues. For those requests suited to targeted searches, Facebook only started producing responsive documents on May 16 but has not yet said when it will complete production. For another VPPA-related request, Facebook first proposed custodians and search terms on May 17, and Plaintiffs responded on May 24, with agreement not yet reached. Note that it was *Facebook* that proposed custodians and search terms, not Plaintiffs; it is odd for Facebook to complain about its own proposal. Facebook's proposal also shows that its previous VPPA search was inadequate. Indeed, it identified 56 custodians for the new VPPA search, and only 11 previously. Meanwhile, Plaintiffs have been delayed in taking testimony from a 30(b)(6) designee on the VPPA; a few days ago, Facebook told Plaintiffs that a deposition could not occur until July. Facebook should be ordered to complete production of VPPA-related documents within two weeks and to provide a witness to testify by the end of June.

**6.     Named Plaintiffs' data.** The Special Master is overseeing the inquiry into production of Named Plaintiffs' data. Facebook has not produced any additional Named Plaintiff data since the Special Master's inquiry began. Today in deposition Plaintiffs learned that Facebook withheld 52 snapshots of Named Plaintiff data available since 2021. Plaintiffs further learned that Facebook has put in cold storage key data identified by Facebook as responsive to the litigation hold in this action, and asserts data in cold storage is too burdensome to produce.

**7.     Status of document production generally.** On February 3, Facebook told the Court it had met the January 31 substantial-completion deadline under the then-operative case schedule, having produced 624,420 documents. ECF No. 829 at 7, 11. Since then, it has produced an additional 315,337 documents. Production is ongoing.

## FACEBOOK'S STATEMENT

"Delay, obstruction, and sanctionable conduct."  Since the February case management conference ("CMC"), this is Plaintiffs' common refrain on all discovery issues.  In response, Facebook has essentially abandoned attempts to hold Plaintiffs to the scope of discovery dictated by this Court and the Federal Rules of Civil Procedure.  While the resulting flood of additional discovery will not make a difference on class certification or the merits, it has unfortunately (and ironically) fueled Plaintiffs' strategy of claiming discovery misconduct at every turn and made it nearly impossible to negotiate reasonable compromises—on any issue.[2]  Facebook hopes Plaintiffs will refocus and work more cooperatively, but discovery in this case will end on time.  Below are updates since the joint case management statement filed before the CMC in March.

### A.      Rule 30(b)(6) Depositions

Since the last CMC, Plaintiffs have taken eight fact depositions (17 to date) and six 30(b)(6) depositions (eight to date), and Facebook has now deposed all of the named Plaintiffs.

Plaintiffs claim that, following the March CMC, Facebook "took back" assurances that its objections to the 30(b)(6) notice would not limit the scope, and point to "problems" they say are occurring in depositions despite their "consistent efforts" to meet and confer.  Facebook made no such assurances, and what the so-called "problems" result from a 30(b)(6) notice that is not reasonably particularized, Plaintiffs' demands that Facebook set dates while refusing to meet and confer on the topics, and, having now (finally and not for anything near the 20 hours they claim) agreed to meet and confer, Plaintiffs' refusal to focus the topics in a way that, like their theories of liability, relate to data sharing and enforcement with respect to app developers, whitelisted apps, and business partners.  Dkt. At 298 at 6-10.  Instead, Plaintiffs have taken the position that the topics cover *all user data* collected, stored, and/or used by Facebook, regardless of whether it was shared with or made accessible to app developers, whitelisted apps, or business partners, including data used only by Facebook's internal systems for targeted advertising.

---

[2]      Plaintiffs' desire to attach the mediation tracker for the supposed purpose of updating the Court on the status of discovery disputes underscores this strategy.

Plaintiffs ignored Facebook when it raised issues about the draft 30(b)(6) notice, served the notice in March 2022, and then threatened to take the issue to the Court if Facebook did not agree to set dates immediately.  To date, four Facebook witnesses have spent over 300 hours preparing for and providing substantive testimony on their designated topics over six days:

- Friend sharing and whitelisting.  The witness has testified for two days and will be deposed for a third day next week.  He has testified to friend sharing, including the sensitivity of friend-permissions (Tr. at 28:2-12"), and on whitelisting for over five hours as Plaintiffs' counsel acknowledged in describing their "lengthy discussion about whitelisting . . . ." (*Id.* at 227:13-16).  As Plaintiffs are well aware, another witness has been designated to address financial analyses.

- Monitoring and enforcement.  The witness testified about Facebook's monitoring and enforcement practices since 2007 (Tr. at 310:20-315:15), as well as how Facebook decided whether and how to enforce on particular developers or applications (see, e.g., *id.* at 323:18-326:13, 327:16-328:20, 333:20-334:17, 335:13-336:7).  That she could not testify to specific enforcement actions over a 15-year period (of which there were millions) is not unreasonable and consistent with the topic which calls for "[a]n *overview*."

- Pseudonymization, de-identification, re-identification, association, and deletion.  Facebook reasonably understood this topic to relate to deletion, as opposed to "association" of user data generally, because all of the other terms are part of Facebook's deletion framework.  As for the definition of "personal information," after repeatedly asking the witness to define that term as used in the CPPA, Plaintiffs asked the witness for his own definition, to which he responded by trying to explain that he was concerned about divulging privileged communications with counsel (Trans. at 222:22-23).  Facebook is not refusing to provide this information.

- Monetization.  Plaintiffs' questions about alleged payments by Facebook to third parties for user data is outside the scope of the designated topic which covers Facebook's calculation of revenues, gross profits, and net profits relating to user data, including monetization of user data and how Facebook quantified the value of sharing user data.

Plaintiffs refused to limit, or even discuss, the scope of a 30(b)(6) notice that, on its face, lacks reasonable particularity, and Facebook capitulated to their demands to schedule depositions without any meet and confer to avoid discovery disputes, and, for the same reason, agreed to resolve the sanctions motion Plaintiffs filed following the first 30(b)(6) deposition.  The motion was filed *after* Facebook offered to address all of the issues raised by Plaintiffs, and Plaintiffs refused to resolve it unless Facebook agreed to 100 hours of 30(b)(6) testimony (instead of the 21 hours previously agreed to by the parties).  In retrospect, perhaps Facebook should have stood on its objections.  But the parties are now starting to meet and confer, which Facebook hopes will facilitate identifying and resolving areas of dispute in advance of depositions.

**B.    ADI Documents**

Facebook has completed production of documents under the Special Master's ADI orders as modified by the Court with respect to the relevant time period ("ADI orders"), and has agreed to additional productions, that Plaintiffs argue are covered by the ADI orders, by June 15.

Between January 21 and March 3, 2022, Facebook produced all required ADI documents (i.e., document constituting the facts of the investigation, including background and technical reports, audits, non-attorney developer interviews, and disposition memoranda), as well as all required ADI-related communications, even though the Special Master's order on ADI-related communications had only issued on January 31, 2022.

Facebook alerted Plaintiffs that, while the Special Master's order was limited to custodians the parties previously identified and collected, those collections covered a certain time period and were conducted using app/app developer names.  During the March CMC, the parties asked this Court to extend the time period "through the present," which the Court did and ordered Facebook to complete production by April 27.   Facebook also offered to negotiate additional search terms with Plaintiffs. Facebook met the April 27 deadline by assembling a team of over 900 attorneys, who spent over 70,000 hours collecting, processing, and reviewing 1.35 million documents.

In response, Plaintiffs took the position that, in addition to the 26 ADI custodians which the parties had stipulated to in proceedings before Judge Corley, the ADI orders cover all of the 78 other MDL custodians, more than quadrupling the number of custodians from 25 to 78.  Again, to avoid discovery disputes, Facebook agreed to Plaintiffs' demand and to complete producing documents for what Plaintiffs called "exemplar" MDL custodians by June 3, and the remaining MDL custodians by June 15.  This effort has required over 600 attorneys and 70,000 hours to collect, process, and review over 2 million documents.

As for Plaintiffs' claim that the ADI productions have "caused a waterfall of further delays," the parties reached a mutual agreement, based on many factors, to postpone certain depositions.  It is simply not true to say those postponements were due to ADI productions.

### C.     Financial Information

Facebook has never denied that it has financial information, only that it does not have the type of financial information Plaintiffs are seeking—documents that "value" of user data.  As Plaintiffs know, Judge Corley allowed Plaintiffs to take a Rule 30(b)(6) deposition to "narrow" their requests for financial information.  *See* Dec. 9, 2020 Hr'g Tr. at 3-14.  Plaintiffs took that deposition in February 2021.  A year later, during a mediation session in February 2022, Plaintiffs asked Facebook to search for specific types of financial information.  Facebook agreed to conduct those searches and produced more than 6,500 documents.

### D.     VPPA Documents

What Plaintiffs describe as delay in producing video-related documents is actually another attempt by Facebook to avoid further discovery disputes by agreeing to demands that are in fact an attempt to avoid discovery rulings by Judge Corley.  As an initial matter, Facebook has already produced 35,000 video-related documents.  These documents were identified through search strings negotiated by the parties and ordered by Judge Corley.  Judge Corley required Plaintiffs to narrow their proposed search strings from 455 to 75 (*see* Dkt. 517 at 4; Dkt. 522), and issued multiple orders resolving disputes and rejecting Plaintiffs' repeated efforts to reopen her orders.  *See* Dkt. 555; Dkt. 654; 11/5/2020 Trans. at 4:13-15 ("Let's just start with something.  I resolved – for the first 38 custodians, we resolved the search terms."); 12/9/2020 Trans. at 7:9-10 ("I guess I don't really understand.  I mean, the [search string] limit was there to require [you] to prioritize.").  Judge Corley made clear, "we need the search string stuff to come to finality. . . I want[] to make sure that we're not going seriatim."  9/4/2020 Trans. at 7:16-8:10.

On August 30, 2021, a month after the Special Master was appointed, Plaintiffs served the document requests at issue, many of which overlap with those for which Judge Corley ruled on search strings.  Facebook initially objected based on Judge Corley's prior rulings, but recently agreed to reopen search string negotiations for these requests to avoid further discovery disputes.  Plaintiffs are demanding search strings resulting in hundreds of thousands of documents.

### E.      Privilege Log

On April 29, 2022, Plaintiffs challenged nine categories of documents on the privilege log As Plaintiffs know, there are 89,637 entries, not 233,544, eliminating duplicates and "near-dupes." Facebook reviewed samples within one week and notified Plaintiffs that it was de-designating a significant percentage of the sample.  Facebook immediately began a full re-review of the log, which will be complete by June 3 for document categories Plaintiffs identified as high priority, and by June 10 for the rest, subject to a small subset of documents.  Plaintiffs' contentions about impacts on the Purdy deposition and deposition scheduling are disingenuous.  De-designation rates decreased.  Further 653 of the 1744 of the Purdy documents were near-duplicates, which Plaintiffs know because, as a courtesy, Facebook provided a spreadsheet to streamline their review; and, as explained above, depositions were rescheduled by mutual agreement based on many factors.

### F.      Named Plaintiff Data

As Judge Corley explained in her most recent order on this issue, the purpose of the ongoing proceedings before the Special Master is to determine "what, if any, data from [systems other than DYI] should be produced consistent with [FRCP 26(b)]."  Dkt. 807 at 4.  Facebook continues to believe its productions to date, which include all three categories of "discoverable user data" identified by Judge Corley in Discovery Order No. 9 (Dkt. 557), meet this standard, but submitted a proposal agreeing to search for and produce additional data.  Facebook has also agreed to most of Plaintiffs' demands in their response to the proposal to further facilitate resolution of this issue.  As for Plaintiffs' complaints about data in cold storage and "snapshots," Facebook previously sought (and won) a protective order relating to other data in cold storage, so that could have come as a surprise, and they assume "snapshots" are responsive.

### G.      Status of discovery

Facebook's productions after the January 31, 2022 substantial completion deadline are the result of (1) the Special Master's ADI order issued on the same date; and (2) Facebook's attempt to avoid further discovery disputes by agreeing to demands by Plaintiffs that are neither relevant nor proportional to the needs of this case.

Dated: June 3, 2022                                       Respectfully submitted,

KELLER ROHRBACK L.L.P.                      BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*                      By:    */s/ Lesley E. Weaver*
       Derek W. Loeser                                        Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)        Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*)  Anne K. Davis (SBN 267909)
David J. Ko (admitted *pro hac vice*)             Matthew S. Melamed (SBN 260272)
Benjamin Gould (SBN 250630)                       Angelica M. Ornelas (SBN 285929)
Adele Daniel (admitted *pro hac vice*)            Joshua D. Samra (SBN 313050)
1201 Third Avenue, Suite 3200                     555 12th Street, Suite 1600
Seattle, WA 98101                                 Oakland, CA 94607
Tel.: (206) 623-1900                              Tel.: (415) 445-4003
Fax: (206) 623-3384                               Fax: (415) 445-4020
dloeser@kellerrohrback.com                        lweaver@bfalaw.com
claufenberg@kellerrohrback.com                    adavis@bfalaw.com
dko@kellerrohrback.com                            mmelamed@bfalaw.com
bgould@kellerrohrback.com                         aornelas@bfalaw.com
adaniel@kellerrohrback.com                        jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: /s/ *Rosemarie T. Ring*

Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Rosemarie T. Ring (SBN 220769)
rring@gibsondunn.com
Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of June, 2022, at Oakland, California.

/s/ Lesley E. Weaver
Lesley E. Weaver