Pages 1 - 57

                        UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

IN RE:                          )
                                )
     FACEBOOK, INC.,            )
     CONSUMER PRIVACY USER      )   **NO. 3:18-MD-02843-VC**
     PROFILE LITIGATION         )
                                )
_____ )
                                )
This document relates to:       )
                                )
     ALL ACTIONS.               )
_____ )


                                San Francisco, California
                                Thursday, June 9, 2022

     **<u>TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS</u>**

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For the Plaintiffs:
                                KELLER ROHRBACK, LLP
                                1201 Third Avenue
                                Suite 3200
                                Seattle, Washington 98101
                                BY: **DEREK WILLIAM LOESER**
                                **CARI CAMPEN LAUFENBERG**
                                **DAVID J. KO**
                                **ADELE AILEEN DANIEL**
                                **EMMA MARGUERITE WRIGHT**
                                **ATTORNEYS AT LAW**


(APPEARANCES CONTINUED ON FOLLOWING PAGE)


TRANSCRIPTION SERVICE BY:       Dipti Patel, CET-997
                                Liberty Transcripts
                                7306 Danwood Drive
                                Austin, Texas 78759
                                (847) 848-4907

**APPEARANCES VIA ZOOM VIDEOCONFERENCE: (CONTINUED)**

For the Plaintiffs:

                    KELLER ROHRBACK, LLP
                    300 Lakeside Drive, Suite 1000
                    Oakland, California 94612
                    **BY: BENJAMIN BLYSTAD GOULD**
                    **ATTORNEY AT LAW**

                    BLEICHMAR FONTI & AULD LLP
                    555 12th Street, Suite 1600
                    Oakland, California 94607
                    **BY: LESLEY ELIZABETH WEAVER**
                    **ANNE KATHLEEN DAVIS**
                    **MATTHEW SETH MELAMED**
                    **ATTORNEYS AT LAW**

For the Defendants:

                    GIBSON, DUNN & CRUTCHER LLP
                    555 Mission Street, Suite 3000
                    San Francisco, California 94105
                    **BY: ROSEMARIE THERESA RING**
                    **ATTORNEY AT LAW**

                    GIBSON, DUNN & CRUTCHER LLP
                    200 Park Avenue
                    New York, New York 10166
                    **BY: ORIN SNYDER**
                    **ATTORNEY AT LAW**

                    GIBSON, DUNN & CRUTCHER LLP
                    333 South Grand Avenue
                    Los Angeles, California 90071
                    **BY: DEBORAH LYNN STEIN**
                    **ATTORNEY AT LAW**

                    GIBSON, DUNN & CRUTCHER LLP
                    2100 McKinney Avenue, Suite 1100
                    Dallas, Texas 75201
                    **BY: RUSSELL HARRIS FALCONER**
                    **ATTORNEY AT LAW**

                    GIBSON, DUNN & CRUTCHER LLP
                    1881 Page Mill Road
                    Palo Alto, California 94304
                    **MARTIE KUTSCHER-CLARK**
                    **ATTORNEY AT LAW**

3

| | |
|---|---|
| 1 | **Thursday - June 9, 2022** |

**2:50 P.M.**

1    **Thursday - June 9, 2022**                                    **2:50 P.M.**

2                          **P R O C E E D I N G S**

3                                ---O0O---

4        **THE CLERK:**  Now calling Civil Case 18-2843, In re Facebook,

5    Inc. Consumer Privacy User Profile Litigation.

6        Will counsel please state your appearances for the record

7    starting with the plaintiff?

8        **MR. LOESER:**  Good afternoon, Your Honor.  It's Derek Loeser

9    from Keller Rohrback, and with me is Cari Laufenberg, David Ko,

10   and also in the room are Emma Wright and Adele (indiscernible) --

11       **THE COURT:**  Also in the room are who?  Sorry, I couldn't --

12   you were sort of muffled there at the end.

13       **MR. LOESER:**  Adele Daniel and Emma Wright.

14       **THE COURT:**  Okay.  Hi, everyone.

15       **MR. LOESER:**  And I see Ben Gould, as well, from Keller

16   Rohrback.

17       **MS. WEAVER:**  Good afternoon, Your Honor.  Lesley Weaver of

18   Bleichmar Fonti & Auld.  And from my firm with me are Anne Davis

19   and Matt Melamed.

20       **THE COURT:**  Hello.

21       **MS. RING:**  Good afternoon, Your Honor.  Rose Ring from

22   Gibson Dunn.  I have here first Sandeep Solanki from Facebook and

23   also with me from Gibson is Orin Snyder, Deb Stein, Marty Clark,

24   and I'm looking all over.  What else?  Russ Falconer.

25       **THE COURT:**  Russ Falconer.

4

1      **MS. RING:**  Thank you.  A lot of boxes.

2      **THE COURT:**  All right.  Hello everybody.

3      So let's maybe start with Mr. Loeser, and you can give us a

4      summary of where we are.

5      **MR. LOESER:**  Sure.  Thank you, Your Honor.

6      And, you know, I heard in an earlier hearing the last four

7      years of being described as the last four wonderful years.  And I

8      don't think I could fairly describe the last four years as being

9      wonderful years.

10      The good news is we are making progress.  We've taken a lot

11      of depositions.  We have a lot more scheduled including of senior

12      management.  And we're getting documents that we didn't get

13      before.  So that is good news.

14      You could tell from the statements that there's still a

15      number of what plaintiffs view as problems.  We understand that

16      Facebook is working hard.  It does take a long time to solve a

17      lot of problems that were created over several years of creating

18      those problems.  So it's good news that there is some progress,

19      but I do think it's important to highlight some instances where

20      we believe that the problems remains, in some situations the

21      problems have gotten worse.

22      And what we really need and what we really want are some

23      firm deadlines with some consequences.  We remain concerned about

24      the schedule.  Your Honor had raised a question at the last

25      conference about, you know, at some point what happens if enough

1    time has passed and we still don't have what we need.  We have no

2    interest in changing the schedule.  We think enough time has

3    passed for these issues, and we'll get what we get and we'll seek

4    the relief that we need to if we don't get what we think we

5    should.

6         The first issue, Your Honor, perhaps should be the shortest.

7    That's ADI.  Two orders have been entered by the Court.  ADI is

8    still not -- production is still not completed by the defendants.

9    In the latest conversations, the defendants indicated that they

10   would complete their ADI production by June 15th.  We think the

11   Court should enter an order requiring completion by that date.

12        We are concerned about --

13        **THE COURT:**  Could I ask a question about that?

14        **MR. LOESER:**  Yeah.

15        **THE COURT:**  I seem to recall that I already issued an order

16   requiring completion of the production of the ADI documents by

17   some prior date, didn't I?

18        **MR. LOESER:**  You did, Your Honor.  April --

19        **THE COURT:**  And before that, didn't Judge Corley issue an

20   order requiring production of the ADI documents by a certain

21   date?

22        And I'm just trying to figure out like what's the point of

23   continuing to issue orders requiring the production of ADI

24   documents by a certain date and then seeing that date passed --

25   pass and then issuing another order requiring production of the

6

1    ADI documents by that -- by a new date.  What is the point of

2    continuing to do that?

3        **MR. LOESER:**  Plaintiffs wholeheartedly agree.  And there's

4    two points.  One point is we still do want the documents.

5    They're very valuable in the case.  They're very compelling.

6    And, B, we do think you should issue -- basically, I mean you

7    could issue an order finding them in contempt of the April 27th

8    order if not the order before that.

9        And so another suggestion that I think makes sense would be

10   an order to show cause why Facebook should not be found in

11   contempt of your prior order.

12       We also think that the topic of issue sanctions come up when

13   we seek relief for the prejudicial delay that has occurred here.

14   We do intend to discuss the ADI production along with that.  But

15   for immediate purposes, Your Honor, I agree with you that issuing

16   orders just so they can be ignored doesn't do anyone any good.

17       And so the reason why we want the deadline to complete the

18   documents is we really do want the documents, but we do think

19   that Your Honor should enforce the orders that have already been

20   entered and there should be some consequences for Facebook not

21   complying with that.

22       **MS. RING:**  Your Honor?

23       **THE COURT:**  Okay.

24       **MS. RING:**  Your Honor, may I speak to that, please?

25       **THE COURT:**  Yeah.  Sure.  Go ahead.

1      **MS. RING:**  Thank you.

2          I realize I think the term you used last time was an uphill

3      battle here, and I feel it.  But I have to say this is not being

4      described to you in the way that this has actually unfolded.  And

5      this is truly a case of, you know, we -- first of all, Judge

6      Corley's order required the production of ADI documents related

7      to a sample.  That production was finished months ago, within a

8      month of her issuing that order.

9          The only two orders that we're talking about now are the two

10     subsequent orders issued by the Special Master.  The first was

11     December 20th, and that covered the ADI investigation documents.

12     The second was January 31st, which that's the first order

13     requiring the production of ADI communications in this case.  The

14     first one.  That was less than two weeks before the February CMC.

15         I see your face, and this is exactly the point.  So I

16     realize I'm still relatively new to this, but --

17     **THE COURT:**  I mean Judge Corley and the Special Master have

18     been banging their heads against a wall on this ADI issue for I

19     think years now.

20         **MS. RING:**  Well, it's not -- so even dating back to Judge

21     Corley's order, which her order, it was a sampling exercise.  It

22     had to do with six apps.  The order she issued was to produce the

23     documents related to those six apps, which we did.  Then the

24     later orders were issued by the Special Master just not even six

25     months ago.

1    And so we have been by the first order -- again, the

2    December order was for the investigation documents, the technical

3    and background reports, the audits, et cetera, the documents

4    showing the investigation, then the ADI communications.  The

5    first order requiring production of those was at the end of

6    January.  And you did issue then an order --

7    **THE COURT:**  What's the date today?

8    **MS. RING:**  June --

9    **THE COURT:**  Ninth, I think.  I think it's June --

10   **MS. RING:**  June 9th.

11   But -- okay, but, please, on -- after those two orders

12   issued by March 3rd, Facebook had produced all of the ADI, all of

13   the required ADI investigation documents and communications by

14   March 3rd.  And this is truly a case of no good deed goes

15   unpunished.

16   When that order on January 31st, Your Honor, it said all

17   custodians that the parties have identified and collected, past

18   tense.  Those custodians were ADI custodians, 26 of them.  And

19   the collections were done through August 2019 using search terms,

20   using the app names and Ids.

21   When we were going through the production to comply with

22   that January 31st order, we saw that reading the Special Master's

23   orders which referred to collections that had already happened,

24   there was a whole background here.  And the idea was that there

25   were no additional collections so that we could comply with it

1    quickly, which we did.

2         When I saw that, this is after I came on the case, I

3    affirmatively raised this with plaintiffs and said, you know, the

4    collections only went through the August 19th.  I'm not sure

5    anyone was aware of that.  I want to make you aware of that and

6    seek clarification from the Special Master.

7         Then we had a CMC with you, another one, in March.  And we

8    raised this with you, and you said, great, I will do it right now

9    and now it's going to be through the present.  And then you

10   ordered that production to be completed by April 27th, which we

11   did.  We went back and collected all of the documents up to the

12   present and negotiated new search terms with plaintiffs, new

13   topical search terms with plaintiffs, which included ADI, okay.

14   So they got --

15        **THE COURT:**  And I was curious how -- I found that amusing

16   that I guess you all -- I don't know whose fault it was, but you

17   all went back and realized that when you were searching for

18   documents relating to the app developer investigation, you didn't

19   use the term "app developer investigation."

20        **MS. RING:**  We used all the app names and numbers.  And when

21   you use ADI, you get all the scheduling emails, all the emails

22   that just say, hey, have you heard of ADI.  I mean we were trying

23   to do something that, you know, was targeted.

24        And so -- but we raised that.  I said -- you know, I went to

25   plaintiffs affirmatively and said, hey, this is what we did, I

1    just want to make -- you know, this is what was done, I should

2    say, to -- they were collected in the past.  And plaintiffs said,

3    not surprisingly, no, we'd like to use all new search terms. We

4    said fine.

5         Then we finished that production and on May -- by April 27th

6    as you ordered.  When we were talking more, then plaintiffs came

7    back and said, oh you know what, instead of the ADI custodians,

8    we'd also like to do -- we'd also like you to do the same thing

9    for all of the MDL custodians, which quadrupled the number of

10   custodians.  And in an effort to not come back to you with

11   anything else, we said okay.

12        So as a result, we had 900 lawyers reviewing all of those

13   documents, okay, and that is the June 3rd production plaintiffs

14   are referring to.  They now say, and I wrote this down because I

15   just -- I can't get over this.  They said, the limited set of

16   custodians that were for a distinct and limited purpose.  That

17   distinct and limited purpose was the proceedings before Judge

18   Corley on ADI.  And the parties stipulated to those custodians.

19   They are the ADI custodians, which it makes sense then that if

20   you're doing an ADI production that you would use ADI custodians.

21        Plaintiffs then inform me that, no, we don't think that

22   should hold anymore.  We don't think we should use complete -- we

23   think we should go beyond what Judge Corley ordered, and we

24   should do this for all the MDL custodians.

25        **THE COURT:**  I'm pretty confident the plaintiffs --

1      **MS. RING:**  78.

2      **THE COURT:**  I'm pretty confident the plaintiffs did not say

3  to you we should go beyond what Judge Corley ordered and expand

4  the list of --

5      **MS. RING:**  Your Honor, they did.  They said -- I said,

6  listen, I understand that when you were before Judge Corley, you

7  used these 26 ADI custodians.  Yes, we did, but we don't like

8  that.  We think we should do it for all the MDL custodians.  And

9  I said okay.  But as a result, instead of 26 custodians, now all

10  of a sudden we had 78 additional custodians.

11      It has resulted -- again, we've reviewed millions of

12  documents, scheduling emails, you name it.  And we hired 900

13  attorneys to get that done, and we did.  And we finished it June

14  3rd for -- the MDL custodians, too, were split into two buckets

15  -- the exemplar MDL custodians and the straggler MDL custodians.

16  We are done with the exemplar MDL Custodians, and only the

17  stragglers remain, and those will be done on June 15th.

18      So, Your Honor, again, I really and truly feel this is no

19  good deed foes unpunished.  We raised -- I raised this because I

20  did not want any mor disputes about ADI.  I did not want later

21  for plaintiffs to accuse us of not having told them that we only

22  used logically the ADI custodians.

23      And in response, they wanted us to do everything, which we

24  did.  So now they have everything.

25      **THE COURT:**  Okay.

1     **MS. RING:**  And --

2     **THE COURT:**  Well, you know, we are not going to have a long

3     discovery hearing today.

4     **MS. RING:**  Yeah.

5     **THE COURT:**  I want to -- what I would like to do is sort of,

6     you know, continue getting an update from Mr. Loeser about sort

7     of where we are and what is needed.  And then we can talk about

8     where we are and what is needed.  We're not going to adjudicate,

9     you know, any allegations of misconduct today on this hearing.

10    I've got sort of -- you know, I'll just say it now.

11        I mean part of the reason that I moved the hearing date on

12    the motion for sanctions is because I was anticipating, you know,

13    additional problems like this.  And I think, you know, it's

14    probably better to adjudicate all of the alleged discovery

15    misconduct sort of in one fell swoop in September.

16        And we need to figure out a way for the plaintiffs to

17    supplement their motion for sanctions and, of course, for

18    Facebook to respond so that all of it can be teed up for the

19    hearing in September.  So -- and that would include, by the way,

20    this -- you know, the conduct relating to the 30(b)(6)

21    depositions that has taken place so far, I assume.

22        But anyway, so, Mr. Loeser, why don't you continue and we'll

23    sort of make a list of the things that you think you need from me

24    right now understanding -- you mentioned issuing an order to show

25    cause, you know, about holding Facebook in contempt.  I mean I

1    think that it probably would be appropriate just to give you an

2    opportunity to supplement your sanctions motion that's scheduled

3    to be heard on September 1st and sort of adjudicate all those

4    issues of potential misconduct at the same time.

5        Does that -- is that inadequate from your standpoint, Mr.

6    Loeser?

7        **MR. LOESER:**  I think it's a good plan.  I would just say the

8    one concern I have is that that still leaves us without a date.

9    I know Ms. Ring just said they completed on June 3rd.  I don't

10   believe they've completed the ADI production.  There's more --

11       **THE COURT:**  Well, I mean maybe the answer is that I ordered

12   it completed on -- no, I think Ms. Ring said that all the rest of

13   it will be turned over by June 15th.  I think I --

14       **MS. RING:**  That's right.

15       **THE COURT:**  Right.

16       And so, I mean, maybe the answer is I order them to complete

17   the -- again, I feel like I've been ordering this for a while and

18   everybody's been ordering this for a while, but order them to

19   complete the ADI production by June 15th.  And you know, then, on

20   September 1st, we can talk about how many orders they didn't

21   comply with over this long period.

22       **MR. LOESER:**  I think that sounds sensible, Your Honor.  And

23   obviously, we have a lot to say about what you just heard, but

24   I'll hold off and we can deal with that when we're adjudicating

25   that issue.

14

1      **THE COURT:**  I think that makes the most sense.  Just in the

2  interest of, you know, trying our best to, you know, get

3  discovery, you know, accomplish something in discovery here, you

4  know.

5      **MR. LOESER:**  I agree, Your Honor.  And I agree it's been a

6  tremendous struggle.

7      **THE COURT:**  Okay.  So you want me to order Facebook to

8  complete the ADI production by June 15th?

9      **MR. LOESER:**  With a parenthesis saying that doesn't somehow

10  provide you a dispensation for what should have happened a long

11  time ago.

12      **THE COURT:**  That is not necessary.

13      **MR. LOESER:**  Okay.

14      I think that's a good approach, Your Honor.

15      **THE COURT:**  Okay.  So I will order Facebook to complete the

16  ADI production by June 15th.

17      All right.  What else?

18      **MR. LOESER:**  The next issue is a new issue, and that's the

19  privilege log.  And, frankly, this has been -- I don't want to

20  overuse the word "remarkable" in this case, but this has been

21  very remarkable.  After the February case management conference,

22  Facebook provided an updated privilege log.

23      Prior to that conference, Facebook had logged 21,937

24  documents over the three-plus years of the litigation.  After

25  that conference, they provided a new log, and the logs are an

1   iterative process that's supposed to happen, you know, as the

2   documents are produced.

3       The new log covering I believe the period from the end of

4   January through the date of the new log in March, they added

5   233,544 completely withheld documents to that log -- you know,

6   many multiples of what had been logged previously.  And we were

7   pretty shocked by that, and so we --

8       **THE COURT:**  I mean they point out that a lot of those logs

9   were -- ended up being duplicates or near duplicates, right?

10      **MR. LOESER:**  Yeah.  Unfortunately, when you completely --

11      **THE COURT:**  I'm not sure it changes the point, but --

12      **MR. LOESER:**  Yes.

13      **THE COURT:**  -- I wonder if you're exaggerating the point.

14      **MR. LOESER:**  No.  Because when we received the log, the

15  documents are completely withheld.  We have no idea what is or

16  isn't a duplicate.  And so what we got was a log of 233,000-plus

17  documents on it.  So it's nice to now learn that there's some

18  duplicated on there, but that's not what we knew when the log was

19  provided.

20      **THE COURT:**  I understand that.  But in terms of assessing --

21      **MR. LOESER:**  Yeah.

22      **THE COURT:**  -- how many, you know, documents they improperly

23  identified as privileged, it doesn't seem fair to count the

24  duplicates.  And it doesn't seem like you need to because even if

25  you eliminate the duplicates, it seems like many many documents

1    were improperly withheld as privileged and improperly designated

2    --

3        **MR. LOESER:**  I think that's right.  Yeah.  We did learn

4    along the way that I think it's some 80 something thousand

5    documents or -- so you have a huge log, many times the size of

6    the log before.  We raised that.  We went through the Special

7    Master process with -- the mediation process, which is something

8    I do want to make sure we come back and talk about because that's

9    been tremendously helpful, as well.

10       And we came up with a protocol for dealing with such a large

11   log, which Facebook agreed to sample the log.  They drew their

12   sample.  And after looking at their sample, they decided to

13   withdraw about 63 percent of the documents from the sample and

14   produce the documents.  And then they also added to that another

15   10 percent or so that they produced.

16

17       So basically, most of the documents that they sampled, the

18   vast majority were not privileged.  And so -- and that's a huge

19   problem.  It's a huge number of documents.  These are -- we're

20   starting to get the documents now.  They've produced, I think,

21   about 45,000 of the documents.  And so these are wrongfully

22   withheld documents that were overdesignated.

23       And it's the same problem we keep having when we go take

24   depositions.  We don't have documents for some deps.  We get

25   documents a few days before others.  And it's just prejudicial.

1    That's not what -- the log is not like a resting place while you

2    wait to decide whether to produce critical documents.  It's

3    supposed to be for privilege documents.  And most of the

4    documents that they put on their log aren't.

5         So we've had lots of meet and confers about this.  Facebook

6    has agreed that it will completely redo its entire privilege log

7    and will produce the documents that it designates.  There was a

8    conference today that I was not on.  I understand Facebook

9    proposed completing that process by June 24th.  We think that's

10   too long.

11        This never should have happened.  We want all of those

12   documents by June 15th.  If they can't complete a re-review, then

13   just produce the documents and claw back the ones that are

14   privileged.  But it's just another situation where we should not

15   continually be put in a position of having to deal with the

16   consequences of actions that never should have occurred in the

17   first place.

18        So I don't know why they did it.  You would think after the

19   February conference, this would be something they'd be

20   particularly careful not to create new problems, but this is a

21   new problem and it needs a quick solution.

22        **THE COURT:**  Well, so what you're saying is you want me to

23   order them to produce -- to complete the privilege log by June

24   15th, to redo the privilege log by June 15th.  And to th extent

25   they're not able to do so, they just need to turn over all

1    responsive documents and then claw back anything that was

2    privileged.  That's what you're asking for?

3        **MR. LOESER:**  That is what I'm asking.  I think that's an

4    appropriate resolution to the issue.

5        **THE COURT:**  In the grand scheme of things, what -- like how

6    significant is the difference between June 15th and June 24th?

7        **MR. LOESER:**  Well, I guess that's -- depends on what happens

8    between June 15th and June 24th.  But, you know --

9        **THE COURT:**  Well, I mean what I was asking is I don't -- I

10   sort of lost track of which depositions are scheduled when or --

11       **MR. LOESER:**  Yeah.

12       **THE COURT:**  -- you know, how it might impact, you know, the

13   30(b)(6) depositions that are -- you know, that are scheduled.

14   You know, that's sort of what I'm wondering.

15       **MR. LOESER:**  Yeah.  And there are depositions --

16       **MS. RING:**  Those had been prioritized and addressed.

17   Derek, sorry.  Go ahead.

18       **MR. LOESER:**  There are depositions that are scheduled.  And,

19   you know, if Your Honor was inclined to give them a little extra

20   time, which frankly is a phrase I hate to have leave my lips

21   anymore, that just means we might have to once again think about

22   retaking depositions that occur in the interval.

23       You know, it's -- I'll give you an example.  We took a

24   deposition of a Facebook person and on Sunday, they de-designated

25   1,800 documents for the deposition that started Tuesday morning.

19

1    That's not helpful.  That's just a bunch of documents --

2        **THE COURT:**  You said they de-designated.  They had

3    previously designated those documents as privileged, and they

4    then on Sunday two days before the deposition produced the

5    documents to you and said that --

6        **MR. LOESER:**  They did.  And --

7        **THE COURT:**  -- they're non-privileged?

8        **MR. LOESER:**  We have told them that, you know, we want these

9    documents and we sure want them for people whose depositions are

10   happening.  So I get it that they're trying to look in their

11   overdesignation pile and pull out the ones that relate to the

12   depositions that are about to happen, but that just sort of

13   describes for you the challenge that plaintiffs face when they do

14   that.

15       **THE COURT:**  Right.

16       **MR. LOESER:**  So --

17       **THE COURT:**  Well, you know, as I said last time, I'm very --

18   you know, very open to, you know, allowing you to take, you know,

19   additional depositions or retake depositions to the extent, you

20   know, necessary to alleviate any potential, you know, prejudice

21   as a result of turning over documents late or at the eleventh

22   hour or whatever.

23       And so, you know, you know that you can always request that.

24   But I mean I think absent some very specific reason why the 24th

25   is not adequate, I would just propose to order them to produce a

1    revised privilege log or a new privilege log by June 24th.

2         And if they're -- you know, if they have -- if the privilege

3    log they produce is -- if they're unable to complete it by the

4    24th, then they're ordered to turn over all the documents and,

5    you know, seek to claw back any privileged documents.

6         And if they -- again, if they -- if you believe they violate

7    that order, you can -- you know, you can include it in a

8    supplemental submission in support of your sanctions motion that

9    will be heard on September 1st.

10        **MR. LOESER:**  I think that also is a good plan.

11        I guess the one clarification on the 24th, they should

12   produce all of the documents that they have now decided are not

13   actually privileged.

14        **THE COURT:**  I assume -- yeah.  And I didn't say that, but I

15   assume that is included in that.  So yes.

16        **MR. LOESER:**  Okay.

17        So the next issue, Your Honor, is the plaintiff data issue.

18   As Your Honor wells knows, this is something that the Special

19   Master has been working through for a while.  He's done a

20   tremendous amount of work which --

21        **THE COURT:**  Seems like it.

22        **MR. LOESER:**  -- which we greatly appreciate.  We have a

23   whole lot more information than we had before he started that

24   process.

25        We have a new concern which is a serious concern that's the

1    subject of a brief that we just filed which was that we finally

2    were able to take the preservation 30(b)(6).  And during that

3    deposition, we learned about a -- information about named

4    plaintiffs that hadn't been previously disclosed collected by a

5    tool that was never disclosed and a tool that the witness

6    testified was normally used by Facebook to collect information

7    about users.

8         And this is something that I don't think there's anything

9    frankly for you to do right now.  This is in the hands of the

10   Special Master.  We will be seeking additional relief for that.

11   This is a fight we've had with Facebook for years about Facebook

12   claiming that this DYI tool which is the tool that provides

13   information that Facebook users themselves can get from Facebook

14   is incomplete.

15        And this really is a concerning fact that you will

16   definitely see us if the -- I mean testimony was corporate

17   testimony.  And as this unfolds through the Special Master, this

18   obviously will be something that will be addressed in the

19   supplemental -- supplement to our sanctions motion.

20        **THE COURT:**  Okay.  What else?

21        **MR. LOESER:**  The last issue -- actually, it's not the last

22   issue, I'm sure you wish it was the last issue, but the 30(b)(6)

23   depositions.  You know, you saw two pretty divergent views of

24   what's happened with the 30(b)(6) depositions.

25        Here's the course of events.  We served a draft notice in

1   December of last year that had the topics.  We really wanted to

2   talk to Facebook about the topics so there wouldn't be any issues

3   with the topics.  The wouldn't engage.  And then in March, we

4   served the actual notice after the February conference.  We had

5   conversations with Facebook about the time for each topic.  We

6   heard no objection to any of the topics.

7        Right before the last status conference, Facebook served

8   objections to the topics.  We called them because we were quite

9   surprised to see the objections.  We had a conversation in which

10  we were assured that the objections were boilerplate and they

11  wouldn't stop any testimony.

12       And then roll forward to the first deposition which was the

13  subject of the sanctions motion, and there was a lot of

14  limitations placed on --

15       **THE COURT:**  Sanctions motion, you're talking about the

16  sanctions motion that you filed in front of the Special Master?

17       **MR. LOESER:**  Yes.

18       **THE COURT:**  And then the Facebook stipulated to paying your

19  attorney's fees and stipulated to reproducing this person for the

20  deposition?

21       **MR. LOESER:**  And a lot of other -- let me go back because I

22  went too quickly and so I want to make sure the history is laid

23  out.  Yes.

24       When we finally started taking 30(b)(6) depositions, we

25  heard for the very first time from Facebook during the deposition

1    of a bunch of limitations placed on the witness's testimony.

2    There was also a whole lot of conduct during that deposition that

3    caused us to file the sanctions motion regarding Facebook and its

4    counsels' conduct.  Facebook stipulated to all the relief that we

5    were seeking, including our attorneys' fees.

6         And the stipulation also had provisions for how to prevent

7    arriving at a deposition and learning for the first time about

8    limitations that had been imposed on the preparation of the

9    witness.

10        **THE COURT:**  And this was Hendricks (phonetic), right?  Ms.

11   Hendricks was the deponent?

12        **MR. LOESER:**  Yes.

13        **THE COURT:**  When did this deposition take place?

14        **MR. LOESER:**  It was on May 5th.

15        **THE COURT:**  May 5th, okay.  So --

16        **MR. LOESER:**  That was the first 30(b)(6) --

17        **THE COURT:**  When was our last case management conference?

18        **MR. LOESER:**  I believe it was --

19        **THE COURT:**  -- where I invited you to file a sanctions

20   motion?

21        **MR. LOESER:**  The initial -- the invitation was in February.

22   And then the -- there was a conference after that that was in --

23        **THE COURT:**  Okay.

24        **MS. RING:**  March.

25        **MR. LOESER:**  -- I believe March 8th.  Is that right?

24

1      **THE COURT:**  March was when Ms. Ring came in and said

2   everything's going to be okay now because I'm here?

3      **MR. LOESER:**  Yeah, that's the one.

4      **THE COURT:**  Okay.

5      **MR. LOESER:**  And -- so, anyway, I'm not describing it very

6   well, but it's been a bit of a train wreck.  And the problem has

7   been we didn't know Facebook was going to have problems with the

8   topics that were identified in the notices.  We found out at the

9   first deposition.  And the parties have had lots of conferences

10  since then to make sure witnesses come prepared.

11     The problem is that witnesses have been prepared to talk

12  about a whole lot of topics, and we have corporate testimony on a

13  number of topics.  But in each deposition, there have been topics

14  for which the witnesses have not been prepared.  What that means

15  is we have to then ask Facebook for another witness to come back

16  and testify about that topic.  And so that draws this out.

17     And you may recall that we had what we thought was an

18  agreement with Facebook to complete all 30(b)(6) depositions in

19  April.  Your Honor noted how valuable those depositions are

20  because that's where you learn about other people who you need to

21  depose and corporate positions.  We couldn't complete them in

22  April.  We couldn't complete them in May.  And now they're

23  running into June, and there's one topic that Facebook says it

24  won't provide anybody until July.

25     So what we would like to do, Your Honor, is we want an order

1   requiring Facebook to present witnesses for all topics that are

2   in our notice by June 30th.  And should Facebook have any

3   concerns about the topics, we have been providing them with very

4   very detailed descriptions of the testimony we intend to take and

5   we will continue to do that.

6       We also give them -- this is highly unusual.  The protocol

7   requires us to provide Facebook three days before the deposition

8   with every document we intend to use as an exhibit at the

9   deposition.  So we have been doing that.  So there's no reason

10  for these witnesses not to come and be able to testify.  We just

11  think we need to get one.

12      **THE COURT:**  Okay.  So just to be clear, other than ordering

13  -- requiring Facebook to produce all of these 30(b)(6) witnesses

14  by -- for deposition by no later than June 30th, were you asking

15  for something else?  If so, I didn't quite understand.

16      **MR. LOESER:**  That's all we're asking for, Your Honor.  The

17  rules are pretty clear on what the witnesses are supposed to be

18  able to do.  If the witnesses continue not able to do that, then

19  again, that's something you'll be hearing from us further in the

20  sanctions supplement.

21      **MS. RING:**  Your Honor this is another I would really

22  appreciate being heard on, especially since you said I came in to

23  fix this.  Look, I don't think it's helpful to have a back-and-

24  forth on -- I totally disagree with the way that the progression

25  of this has been described.

1    There has -- the issue that we are facing is the same one

2    that plaintiffs are forcing further issues by asking you to issue

3    an order requiring all of these depositions to be completed by

4    June 30th, which is --

5        **THE COURT:**  Could I -- before we get to the timing, and

6    regardless of -- you know, I mean I understand you're saying you

7    disagree with his description of the progression of events.  But

8    just putting aside for a moment the progression of how we got

9    here on these 30(b)(6) depositions, I mean I'm looking at, you

10   know, what happened in Ms. Hendricks' deposition.

11       And I just don't understand -- so this deposition took place

12   in, you know, May.  You know, we had this conference in February

13   in which I expressed, you know, grave concern that Facebook was

14   committing serious discovery misconduct and litigation

15   misconduct.

16       And, you know, we started talking about the issue of not

17   just monetary sanctions but, you know, potentially issue

18   sanctions.  And we, you know, talked about Mr. Solanki being, you

19   know, present for everything.

20       And then I'm looking at this -- you know, what happened in

21   this deposition in May with, you know, your lawyer instructing --

22   you know, with the witness refusing to answer questions and the

23   lawyer instructing the witness not to answer questions.  I just

24   don't understand how that could have happened.

25       **MS. RING:**  So --

27

1    **THE COURT:**  Regardless of the progression of how we got to

2    that deposition, how could that have -- and I understand that

3    Facebook, you know, there was -- the plaintiffs filed a motion

4    for sanctions with the Special Master, and Facebook agreed to pay

5    the plaintiffs' attorneys' fees and agreed to -- I believe agreed

6    to reproduce the witness.

7        But I just don't understand how that could have happened,

8    you know, in May of this year.

9    **MS. RING:**  May I?

10   **THE COURT:**  Yeah.

11   **MS. RING:**  Your Honor, and this is not rehash the

12   progression.  I won't do that.  But the issues that it created

13   which are these are incredibly broad 30(b)(6) topics.  When -- I

14   was on this call myself.  When I asked we need to talk about

15   this, we need to focus these to understand what you're actually

16   seeking from these witnesses, after the February conference, and

17   this is what I her a lot, if we don't agree to what plaintiffs

18   are demanding, then they're going to tell you.

19       And so I'm trying to avoid issues going back to you.  So we

20   said, okay, fine, we'll schedule the depositions.  We're not sure

21   what the scope is.  They're so incredibly broad.  And speaking of

22   what the law is clear on, the law is clear for a 30(b)(6) it must

23   be particularized.  Otherwise, you can't prepare the witness

24   adequately.

25       They basically want, and I wrote this down --

1    **THE COURT:**  But I -- look --

2       **MS. RING:**  But I'll get to -- I will get to the point on the

3    sanctions.  I appreciate what you're asking.

4       We are -- that should not have happened.  And in my view, it

5    reflects the frustration that has been created by the lack of any

6    meaningful meet and confer or meeting of the minds between the

7    parties.  And we did not -- we could have --

8       **THE COURT:**  I mean was there --

9       **MS. RING:**  -- and should have responded to that frustration

10   more constructively.  It was wrong.  And that is why we resolved

11   it right away.  And when Mr. Loeser says that that's why they had

12   to file the motion, they didn't have to file the motion.  We went

13   to them immediately and said -- we agreed to everything they

14   wanted and said, look, we're sorry this is -- we are all

15   frustrated, this should not have happened.  We should not have

16   responded in the way that we did to that frustration.  Let's try

17   to make it better.  And they filed the motion anyway.

18      And that's fine.  That's the prerogative to do that.  And

19   then before agreeing to resolve it, they then made us agree to

20   give them 100 hours of 30(b)(6) testimony, which we did.  I've

21   never even heard of such a thing, okay.  They had negotiated 21

22   hours.  Now they have 100.

23      So basically, it's just a "yes" fest.  So that's fine.  But

24   I do want -- in all seriousness, I am very sorry that that

25   happened in May.  That should not have happened.  And I hope that

1  you take the fact that we just resolved it.  We paid them money.

2  We've given them 100 hours of deposition testimony, which I've

3  never even heard of.  We want to move on from it and do it in a

4  constructive way, and that's what we've been trying to do.

5      And when in the absence of a meaningful meet and confer, we

6  have now been trying to send letters before every deposition to

7  say what our understanding of the scope is and what our

8  understanding of the limitations are.  And, yes, plaintiffs do

9  provide us documents sometimes before these depositions.

10 Sometimes there are hundreds of them three days before the

11 deposition.

12     We can't get through all of them.  We do our best, you know,

13 but there -- in a case this complicated as this, there are always

14 going to be issues in 30(b)(6).  There's no question about it.

15 But they have been amplified here because of the inability and

16 for whatever reason -- they think it's our fault, we think it's

17 their fault -- to have meaningful meet and confers.

18     And in my experience, now my four months of experience on

19 this, it is because the plaintiffs will not agree to any kind of

20 limitation.  And so it's very hard in the face of that to prepare

21 a witness to testify on every single thing Facebook has ever done

22 in the last 15 years.  It's very hard.  It's impossible.  We are

23 doing our best.  So --

24     **THE COURT:**  That does not -- I'm looking at that deposition

25 that took place on May 5th or whatever date it was.  That is not

1    doing your best.  I'm sorry.  But, you know, that is not close to

2    doing your best.

3        **MS. RING:**  May I ask are you talking -- when you're saying

4    looking at the deposition, are you looking at plaintiffs'

5    sanctions motion or the actual transcript of the deposition

6    because --

7        **THE COURT:**  Well, let's talk about that.

8        **MS. RING:**  -- we didn't get a chance to respond.

9        **THE COURT:**  Right.  Right.

10       **MS. RING:**  Right?

11       **THE COURT:**  Let's talk about that for a second because this

12   is more of a housekeeping matter, but it's an important

13   housekeeping matter.  And that relates to, you know, the issue of

14   sealing.

15       So if you look, for example, at the plaintiffs' -- we have

16   the plaintiffs' -- we have the stipulation that the Special

17   Master signed ordering you to pay their attorneys' fees for this

18   deposition.  And then you have --

19       **MR. LOESER:**  We're waiting, by the way.

20       **THE COURT:**  What?

21       **MR. LOESER:**  We're still waiting.  I'll send Ms. Ring my

22   address, but we don't have the check.

23       **THE COURT:**  Oh, for the check?

24       **MS. RING:**  I'll Venmo you, Derek.

25       **THE COURT:**  And does Facebook have its own currency yet?

1    Maybe you can use that.

2         **MS. RING:**  Oh, good idea.  I don't think they would take it.

3         **THE COURT:**  Probably not.

4         So, you know, then you have the -- you know, all of this

5    stuff needs to be on the docket, right.  All of the stuff

6    relating to these discovery disputes needs to be on the docket,

7    and we can have further discussion about what's the best way to

8    get them on the docket.

9         Maybe it's just that when the plaintiffs file their

10   supplemental, you know, motion for sanctions, they make sure

11   everything's that they need included is included, and then

12   Facebook can make sure in its response that everything it needs

13   included is included.  But, you know, right now we have this --

14   you know, we have the plaintiffs' motion for sanctions.

15        And I believe as of now, there's -- some of it is still

16   redacted.  So, for example, this exchange on Page 4 of the motion

17   where, you know, the plaintiffs' lawyer is trying to ask Ms.

18   Hendricks these questions and then, you know, we have these

19   objections from Facebook's lawyer and then this instruction from

20   Facebook's lawyer not to -- to the witness to not answer the

21   question.

22        And, you know, I mean I gather that's one example of, you

23   know, many inappropriate things that happened at this deposition.

24   But in the motion, currently it's redacted.  And I guess it's --

25   you know, I wanted to have a little bit of a conversation about,

1    you know, whether we can avoid so many redactions on these

2    papers, right.

3         And then the deposition transcript has also been filed,

4    right, but I believe that it's currently redacted in its

5    entirety.  In this motion for sanctions, it's so obvious that

6    this stuff should not be redacted.  I mean I understand why the

7    plaintiffs did it, right.  The plaintiffs did it because I guess

8    the entire deposition transcript was designated as confidential.

9    And so, you know, this excerpt from the deposition transcript

10   needed to be redacted, filed provisionally under seal.

11        But I'm just wondering, like -- you know, and then the whole

12   -- and then the entire deposition transcript is redacted, I

13   believe, as of now.  Is that correct?

14        **MS. RING:**  It is, Your Honor.  But it's a process where it's

15   just -- it's designated and then we go back and go through it and

16   very careful pursuant to your prior instructions.

17        **THE COURT:**  Right.

18        But I'm just wondering I mean is there a way -- I mean maybe

19   the answer is no.  But is there a way, you know, in a situation

20   like this where it's so obvious that this stuff should not be

21   redacted and, you know, this case is a matter of public interest.

22   And Facebook -- frankly, Facebook's litigation conduct is a

23   matter of public interest.

24        You know, is there a way to avoid filing these things with

25   these redactions?  I mean it's just -- maybe it's too hard to do

33

1    it, you know, before the fact of the filing.  But, you know, you

2    look at this passage that I just described, and it's so obvious

3    that it shouldn't be redacted.  I mean maybe the answer now is I

4    just deny the motion to seal and then order you to file

5    unredacted versions on the docket.

6         But is there an easier way to do this when in situations

7    like this when it's so obvious -- for example, I'm looking at

8    Page 9 of the sanctions motion, and the following words are

9    redacted: "Whether the third parties actually access data because

10   the actions of third parties did not go to Facebook policies or

11   procedures or processes that were developed in order to monitor

12   third parties."

13        And then Ms. Hendricks testified that she wasn't required to

14   prepare on the topics counsel had deemed excluded.  I mean that

15   so obviously shouldn't be redacted.  Is there anything we can do

16   to sort of deal with that at the front end and prevent those

17   redacted versions from going on the docket?

18        **MS. RING:**  So, Your Honor, I have to admit I don't know the

19   full history of what the parties have discussed or what the Court

20   has ordered about these redactions.  I think that in this

21   situation, the issue was definitely one of timing in that this

22   motion was filed within 24 hours of the deposition, right, so

23   there was --

24        **THE COURT:**  And the transcript is --

25        **MS. RING:**  Right.

1    **THE COURT:**  The transcript is designated confidential --

2    **MS. RING:**  Right.

3    **THE COURT:**  -- in its entirety at the outset and so -

4    **MS. RING:**  At the end of the depo, right.  And so then there

5    wasn't an opportunity no matter how fast we worked to get that

6    done by the time this motion was filed. But, you know, look, I

7    have to talk to Facebook and I have to -- but I'm happy to talk

8    to plaintiffs.

9         Maybe there are situations where we can stipulate for some

10   limited purpose like that when there's such a quick turnaround

11   and there's just not time to review the full transcript and go

12   through the whole process.

13   **THE COURT:**  Yeah.  I mean -- and I understand that the

14   sealing stuff is really hard for the lawyers.

15   **MS. RING:**  Yeah.

16   **THE COURT:**  I do understand that.  And I don't want to

17   create -- you know, I don't want to create, you know, unnecessary

18   work for anybody.

19        But I just wanted to sort of share my, you know, sort of

20   sentiment that, you know, a lot of stuff is getting filed on the

21   docket that is initially redacted that all you need to do is

22   glance at it for half a second to see that there's no business

23   redacting that stuff.  And, you know, I would love for there to

24   be a way to, you know, avoid redacting it in the first place.

25   Maybe there's not.  But I wanted to raise that frustration.

1      **MR. LOESER:**  Your Honor?

2      **MS. RING:**  We're willing to -- I mean, sorry, go ahead.

3      **MR. LOESER:**  No, go ahead.

4      **MS. RING:**  We're willing to discuss that, Your Honor.  It

5   wasn't -- again, I think on this particular issue was one of

6   timing.  There just was no opportunity to try to go back and

7   review the whole transcript before the motion was filed.  But

8   maybe there are ways to --

9      **THE COURT:**  But --

10     **MS. RING:**  -- shortcut.

11     **THE COURT:**  Yeah.  I mean maybe.  But in any event, you

12  know, it will be important to have, you know, these -- you know,

13  all of this stuff on the docket, you know, and as part of the

14  record because, like I said, it is a matter of public concern and

15  it relates to, you know, Facebook's litigation conduct which will

16  be the top subject of this motion that will be heard in

17  September.

18     **MS. WEAVER:**  Your Honor, if I might?

19     One way that courts do deal with that is to have a filing

20  provisionally under seal and then a certain number of days by

21  which the party who wishes to have the material sealed has to

22  respond five days.

23     **THE COURT:**  Right.  Well, that's -- and that's what happened

24  in this case.  But I'm asking if -- what I was asking is if

25  there's a way to sort of avoid having to go through that process

1  in a situation where something so obviously should not be
2  redacted and all you need to do is glance at it for half a second
3  to realize that it shouldn't be redacted.
4      **MR. LOESER:**  Well, Your Honor, one --
5      **THE COURT:**  I just know because it requires you to do more
6  meeting and conferring at the front end and you already hate each
7  other so much that (indiscernible) would be impossible.
8      **MR. LOESER:**  Hate is a strong word.
9      **MS. RING:**  We don't hate each other.
10     **MR. LOESER:**  I will say one thing you could do is to
11 accelerate the process.  You know there is an obligation when
12 saying something needs to be redacted to have a good basis for
13 doing so.  So there --
14     **THE COURT:**  Yeah, but I also understand that in the case of
15 a deposition, you know, it takes time to go through the
16 deposition and figure out what really needs to be redacted and
17 what doesn't.
18     **MR. LOESER:**  That's true.
19     There are -- just for clarity, there's different levels of
20 confidentiality designations, and one of the levels is Attorneys'
21 Eyes Only, which is supposed to be reserved for a very narrow --
22 trade secrets, things like that.
23     And I do think while Facebook is evaluating this process, I
24 think it should also evaluate the use of Attorneys' Eyes Only
25 designations for deposition transcripts, which is a burden and an

1    obstacle for the plaintiffs and seems unnecessary.  And it's

2    something that I think to be pretty quickly determined, like we

3    shouldn't have to wait 60 days to find out if the whole

4    deposition was Attorneys' Eyes Only trade secret protected or

5    something like that.

6         So I throw that into the pot of things for Facebook to

7    consider.

8         **THE COURT:**  Well, I think -- I mean I think that the -- the

9    sealing issue as it relates to this Hendricks deposition, I think

10   it's properly teed up.  I think that, you know, you filed a bunch

11   of stuff provisionally under seal, and then Facebook filed a

12   response if I remember correctly saying, you know, most of this

13   stuff can be unredacted and there are just a couple of little

14   things that we need redacted.

15        And so I think that's teed up now, and I can act on that.

16   And we can get most of this stuff unredacted.  But I was just

17   raising the concern about whether any of it could be done at the

18   front end.  So anyway, think about that.

19        But, you know, the upshot is, once again, I mean the conduct

20   in this deposition appears very problematic and it will, I

21   assume, be part of, you know, the supplemental motion that the

22   plaintiffs filed.  I know that Facebook has already agreed to pay

23   the attorneys' fees, but it's still -- I mean we still need to be

24   tallying up the various, you know, acts of litigation misconduct

25   that Facebook has committed.

1       So anyway --

2           **MS. RING:**  Allegedly, Your Honor.

3           **THE COURT:**  Well, on this one --

4           **MS. RING:**  Plaintiffs are definitely tallying it up.

5           **THE COURT:**  On this one --

6           **MS. RING:**  Plaintiffs are definitely tallying it up.  Don't

7       worry.

8           **THE COURT:**  In this one, I don't think -- for this

9       deposition, I don't think we need to use the word "allegedly."

10          **MS. RING:**  Okay.  That's fair.

11          **THE COURT:**  So that's fine.  So the -- oh, let's get back to

12      the dates, Ms. Ring.  So Mr. Loeser is asking me to order all of

13      the 30(b)(6) witnesses to be produced by June 30th.  And --

14          **MS. RING:**  And I was asking please don't do that only

15      because I think it will compound the issue that I was trying to

16      describe.

17          I have not personally been on a case before where -- you

18      know, we've been trying to -- we've identified, I've lost track

19      now, but maybe nine witnesses trying to identify those that

20      actually have the best knowledge of particular topics or aspects

21      of topics.  And the topics are so broad and ill-defined that it's

22      very hard to prepare a witness to address them.

23          And if we push forward without any acknowledgment of that,

24      we end up having depositions where the whole time is spent

25      complaining about they can't answer this question, they can't

1    answer that question.

2         **THE COURT:**  But when were these 30(b)(6) notices served?

3         **MS. RING:**  March.

4         **THE COURT:**  Okay.

5         **MS. RING:**  March.

6         **THE COURT:**  Right.  But it's -- I mean, again, we're in June

7    now, right?

8         **MS. RING:**  Yes.

9         **THE COURT:**  I mean is this a problem -- this is a rhetorical

10   question, but my question is, is this a problem of your client

11   not being cooperative with you or is that part of the problem?

12        **MS. RING:**  It is not.

13        **THE COURT:**  You know --

14        **MS. RING:**  It is not.  And that's why I say -- I ask please

15   don't order these depositions to go forward June 30th because it

16   is -- again, the topics are so broad and ill-defined.

17        I mean these witnesses -- I wrote these, you know, stats

18   down because we've had seven depositions -- since the last CMC,

19   it's been two months.  We've had seven depositions.  Witnesses

20   have provided 40 hours of testimony on six of the ten topics, and

21   they've spent over 500 hours preparing for them.

22        The ones that remain -- the only ones we've asked to go into

23   July are very specific, okay.  One of them concerns targeted

24   advertising which, Your Honor, that has been -- in my view, that

25   is the reason for the dispute over the named plaintiff data.  And

it's been a very difficult issue, I think a legitimate issue that
Facebook raised.

But in any event, we've given up.  It's fine.  We're going
to give it to them.  But it's a very particularized topic that's
very hard to get your arms around, and we've asked -- you know,
we did offer a date for that one, by the way, June 13th.  You
know, we didn't hear back so then we offered July dates which
plaintiffs responded to and accepted.  So I'm surprised to hear
them asking now for an earlier date.

The other one is for the video.  And this is one that we did
address in our statement.  I'm sure you saw it.  But that is one
that, again, we could have just objected.  I mean Judge Corley --
the parties went through what seemed from the outside a horrible
process to go through and identify all the custodians and
identify all the search terms.

And there were many search terms that were for video, and
that was supposed to be done, over.  A month after the Special
Master was appointed, oh, there are suddenly new video document
requests for which now plaintiffs want new search terms after
Judge Corley shut that down several times.  So now we have new
search terms.  We're collecting from new custodians.

There are hundreds of thousands of documents now that
because of plaintiff's search terms they want us to review, and
they say we want them before the deposition.  That's why the
deposition is -- we've proposed dates in July because we cannot

1    get through the hundreds of thousands of new documents that,

2    again, we could have just stood on our objection but we didn't.

3    We said fine, we'll do it.

4        **THE COURT:**  So what are the 30(b)(6) depositions that you

5    are proposing take place in July?

6        **MS. RING:**  The advertising related ones, Your Honor, and the

7    video.  All of the others have either occurred or are set to

8    occur in June.  The only two we'd ask --

9        **THE COURT:**  And so those are --

10       **MS. WEAVER:**  (Indiscernible).

11       **MS. RING:**  I'm sorry.  That's not true.  I'm sorry.

12       Sorry, Liz.  That's true.

13       There's also one more topic -- Topic 5, I believe -- which

14   concerns basically this was -- this is one that we put on hold by

15   mutual agreement because it was the topic of the proceedings

16   before the Special Master concerning named plaintiffs' data.

17   Plaintiffs now a week or two ago said we should take this off

18   hold because we're not getting to the end of those proceedings,

19   thankfully, and so we've been meeting and conferring over the

20   scope of that topic.

21       When we had that meet and confer, it was described as all

22   systems relating to how data comes into Facebook, how it is

23   sorted, used, how derivative data is created for any purpose, and

24   how data flows out of Facebook.  So it's basically everything.

25       So we need to narrow this topic.  It is going to be

1   impossible to identify 100 witnesses who could testify to such a

2   thing.  So that's the other one that's going into July.  And if

3   we're forced -- you know, if we're forced to do it by the end of

4   June, we're going to be right back here with more complaints of

5   how we did not have a prepared witness, we did not have agreement

6   on what the topics covered.

7        We can reach agreement, and we can get a witness who can

8   actually testify on these topics.  But we need until, you know,

9   July.  And we've proposed dates in the middle of July.

10       There's still three months left of discovery.  This is not

11   delay.  This is not because Facebook has ever said no.  Since I

12   joined this case, Facebook hasn't said no to one thing I've

13   asked.  This is because, again, for the video, we've got huge new

14   document requests --

15       **THE COURT:**  I'm tempted to ask if they've responded to all

16   of your calls, but I'm not going to ask that.

17       **MS. RING:**  Yes, they do, and my texts.  Yes.  Yes.

18       **MR. LOESER:**  Your Honor, maybe we need to hit rewind here

19   for a second on this 30(b)(6) deposition.  Maybe this will help

20   finish this part of the conversation.

21       Plaintiffs get no value out of a 30(b)(6) deposition with an

22   unprepared witness.  That's why we sent them a notice in

23   December.  As of March we had heard nothing about any problems

24   they had with the topics.  The deposition started, it was clear

25   --

1      **MS. RING:** Your Honor?

2      **MR. LOESER:** I'm sorry, Ms. Ring.

3      **MS. RING:** That's not true. I'm sorry.

4      **MR. LOESER:** There are a lot of things you said that were

5 untrue, but I didn't interrupt you (indiscernible).

6      **MS. RING:** Well -- yes, okay.

7      **MR. LOESER:** So there were -- it became clear at the very

8 first deposition that when Facebook prepared the witness, it made

9 decisions about what the witness would and wouldn't be prepared

10 for. We don't have to guess about whether that's true because

11 Facebook's lawyer decided to say that on the record in the middle

12 of the deposition all the things he did and didn't prepare the

13 witness for.

14      That set in motion a process where we provided even more

15 information. We are now telling Facebook in advance of the

16 deposition -- we're sending a detailed email saying these are the

17 specific things we want to talk about, and then we sent the

18 documents. And in the very first deposition, there was a large

19 number of documents because, frankly, the parties forgot that we

20 were supposed to exchange the documents.

21      But in the subsequent ones, like in the deposition that I

22 took, I think there was something like 35 documents or 50

23 documents. And then after a couple of days of this, for the last

24 day which hasn't happened yet, I told Facebook's lawyer these are

25 the remaining four documents, like literally I want the witness

44

1    to be familiar with these documents.  I want him to be able to

2    say what Facebook's position is on these documents.

3         And, frankly, the plaintiffs are willing to be that

4    specific, and we have provided so much notice because we really

5    want to know Facebook's actual corporate testimony on these

6    topics.  So we meet and confer and meet and confer and we will

7    still do that.  But we need to complete these depositions.

8         Now if Rose is making an impassioned plea for a little more

9    time, okay, you know, we can go into July for things that should

10   have been done in April.  But the problem is we have depositions

11   we've taken in which we're now sending them letters saying these

12   are whatever number of topics that the witness wasn't ready for,

13   give us another witness to answer these questions.

14        So we need a deadline.  We need a time at which we'd get

15   their testimony because, as Your Honor well knows, these are the

16   depositions which inform us of who else to depose.  And we're

17   taking all these depositions of people before we've had the

18   30(b)(6) on the topic.

19        So that's the problem we're in.  Ms. Ring, I understand her

20   concerns about wanting to make sure the witnesses are prepared.

21   We want these witnesses prepared.  We just are running out of

22   time.  So if we need to have a couple of more weeks to get it

23   done, fine, but let's get it done.  Let's not keep dragging this

24   out forever with witnesses that can't answer questions.

25        And, frankly, Facebook needs to figure out a better way to

1  have their witnesses prepared to provide Facebook's position on

2  the documents we're providing to these witnesses, and that has

3  not happened over and over again.

4  **THE COURT:**  Well, so it sounds like for now what I should do

5  is just order, again, that, you know, the 30(b)(6) depositions be

6  completed by June 30th with the exception of these three and that

7  these three -- the advertising, the video, and Topic 5 -- I don't

8  know what's the best way to describe Topic 5 -- but that those

9  three be completed by what date?  July 21st?

10  **MS. RING:**  Plaintiff just asks for days the week of the --

11  Your Honor, if you could, we would like this to end, also, okay.

12  **THE COURT:**  Yeah.  So July 21st --

13  **MS. RING:**  So July 30th.

14  **THE COURT:**  July 21st will be the deadline for completion of

15  those three -- we'll make it July 22nd since that's a Friday,

16  completion of those additional three 30(b)(6) depositions.

17  **MS. WEAVER:**  Your Honor, there's an additional problem that

18  Mr. Loeser alluded to which is, for example, on Topics 4 and

19  Topic 10, the witnesses showed up and they provided testimony on

20  some topics but not others.  So we immediately wrote letters

21  saying please give us -- so those are additional depositions that

22  have not even been scheduled.  Like on Topic 10 --

23  **THE COURT:**  Right.  But I mean don't those need to take

24  place in June, as well?

25  **MS. WEAVER:**  That would be -- as long as with that

1    clarification, we're fine with that, Your Honor.

2        **MS. RING:**  Your Honor, look, some of these -- I don't think

3    you want to hear the details of this, and we'll just take it back

4    to the mediator and the Special Master.  But, you know, it's not

5    fair to say that these witnesses are not prepared to testify

6    about documents.  These are 30(b)(6) depositions.  If you ask a

7    witness what did -- who has nothing to do with the documents --

8        **THE COURT:**  Hold on a second.  So I thought we were sort of

9    in agreement that all 30(b)(6) depositions need to be completed

10   by the end of June and -- with the exception of these three which

11   will be completed by July 22nd.

12       What -- so meaning after July 22nd, there will be no more

13   30(b)(6) depositions unless, again, somebody doesn't -- you know,

14   the lawyers instruct the witnesses not to answer questions or

15   there's some other failure on the part of Facebook that requires,

16   you know, the depositions to be taken yet again.

17       Why do we need to talk about anything else relating to the

18   30(b)(6) depositions at this point?

19       **MS. RING:**  I'll take my cue from you and stop.

20       **THE COURT:**  Okay.

21       **MS. RING:**  I was just --

22       **THE COURT:**  So --

23       **MS. RING:**  Well, actually, I'm sorry.  I do think this is

24   important to address.  I was trying to account for the

25   circumstance where if there are, believe it or not, Your Honor,

1    situations where plaintiffs are asking for something that we

2    don't think is covered by the topic.

3        So plaintiffs will say then we have not finished all the

4    30(b)(6)s because they want a witness on X, and we say X is not

5    covered by the topic.  So our view in that case would be we are

6    done, and plaintiffs' view is we are not done.  So --

7        **THE COURT:**  And that needs to be addressed by this Special

8    Master and then if --

9        **MS. RING:**  Agreed.

10       **THE COURT:**  -- he rules and you disagree, appeal it to me.

11       **MS. RING:**  Agreed.  Thank you.

12       **MR. LOESER:**  The process.

13       Okay.  Your Honor, I am at my last issue, which --

14       **THE COURT:**  Okay.

15       **MR. LOESER:**  -- (indiscernible) here, and that is documents

16   pertaining to financial information.  We got a --

17       **THE COURT:**  Documents pertaining to what?

18       **MR. LOESER:**  Financial information.

19       **THE COURT:**  Oh, yeah.

20       **MR. LOESER:**  Damages information.

21       We had this as an odyssey to get this information.  We are

22   finally starting to receive some information about revenue that

23   relates to matters at issue in the case claims, for example,

24   revenue obtained by Facebook as a result of whitelisting certain

25   plaintiffs.

1    We have tried for -- we heard all kinds of reasons why the

2    information didn't exist or it wasn't relevant.  And, finally, in

3    April, Facebook agreed to go back and search a series of non-

4    custodial sources for this information, which we're thankful that

5    we're finally getting some information.  But the production is

6    not complete, and it needs to be complete.  And it should be

7    completed by July 15th.

8    It's just we've waited long enough.  I think Facebook should

9    be able to provide that.  And before anyone speaks, I notice

10   there's one other document issue that we can group with this,

11   which is the VPPA documents -- the Video Privacy Protection Act

12   claims that I do want to briefly address because Ms. Ring

13   mentioned it.

14   And so with the Court's permission, I'll address that, and

15   then Ms. Rose can -- Ms. Ring can perhaps respond to both of

16   those.

17   **THE COURT:**  Go ahead.

18   **MR. LOESER:**  So we served discovery requests that included

19   VPPA information in November of 2019.  There was a process with

20   Judge Corley which I'm sure was torture for all involved on

21   search terms relating to those requests.  As often is the case,

22   in a case when you get information, we eventually served

23   additional requests that related to and called for certain VPPA

24   information.  We did that in August of 2021.

25   Facebook recently -- nothing happened with those requests

1    for a long time.  Facebook recently proposed additional

2    custodians and search terms.  So this was a Facebook proposal for

3    additional custodians and search terms to provide the information

4    called for by those requests.  That process has gone back and

5    forth for the parties discussing that, and this is just simply

6    another area of discovery.

7         These requests, obviously, call for relevant information.

8    It's information we don't yet have, and it's information that

9    Facebook has.  We just need a deadline.  And so we would like

10   that discovery completed by June 20th.

11        So now I am truly at the end of my list.

12        **THE COURT:**  So you want the VP -- you want me to order the

13   VPPA documents produced by June 20?

14        **MR. LOESER:**  Yes.  And I should say -

15        **THE COURT:**  And --

16        **MR. LOESER:**  -- that the reason why I gave you that date was

17   that originally that deposition we wanted it done by -- the

18   deposition by June 30th.  So if the deposition is happening on

19   July 21st, I suppose that to be fair to Facebook, they could

20   perhaps have another week or two to complete the document

21   production relating to that deposition.

22        **THE COURT:**  Okay.  So, sorry, VPPA documents produced by

23   June 20 and then you said financial information to be produced by

24   when?

25        **MR. LOESER:**  July 15th.  And we can say given when the VPPA

1    deposition will not occur, for both of those things completed by

2    July 15th.

3         **THE COURT:**  For both of those things July 15th?

4         **MR. LOESER:**  Yeah.

5         **THE COURT:**  So not June 20th?  I'm confused.

6         **MR. LOESER:**  I'm confused, too, at this point.

7         Let's -- it really depends on when the deposition --

8         **MS. RING:**  Let me try to clear it up.

9         **MR. LOESER:**  It's when the deposition is going to happen.

10   So if the VPPA deposition is happening on July 21st, it would be

11   nice to have those documents three weeks before the deposition.

12   So whatever date that is, we want those documents.

13        **THE COURT:**  July 1st.

14        **MR. LOESER:**  July 1st, it is.

15        **MS. RING:**  Can I get to address that before it's a deadline?

16        **THE COURT:**  Sure.

17        **MS. RING:**  Thank you.

18        So I'll start with the VPPA documents.  And I think I

19   described already there was a process with Judge Corley.  I

20   understand Mr. Loeser is saying now we learn things through

21   documents and then we can serve more discovery requests.  Of

22   course, that's true.

23        But Facebook had produced 35,000 video-related documents

24   before -- you know, it has already produced 35,000 video-related

25   documents.  These additional requests and to hear now Mr. Loeser

51

1    say -- I mean I don't know if plaintiffs are now suggesting they

2    don't want these additional custodians and search terms because

3    that is the cause of the delay.

4        **MR. LOESER:**  Oh, we do.

5        **MS. RING:**  They are hitting on hundreds of thousands of

6    documents that, again, to avoid any further disputes, we just

7    agreed to do.  And it's not true to say we -- we objected as

8    saying this goes beyond what Judge Corley ruled.

9        **THE COURT:**  I don't think --

10       **MS. RING:**  We sent a lot of --

11       **THE COURT:**  I don't think you're doing a good job of

12   avoiding further disputes because we're sitting here disputing

13   everything but go on.

14       **MS. RING:**  Well, no.  We are -- we're not doing it fast

15   enough.  We're agreeing to everything.  They're just -- notice,

16   Judge, they're just asking you for dates.  They're not asking --

17   we're doing it.  We're agreeing, and I'm just telling you what's

18   humanly possible.

19       And so we are now getting hundreds of thousands of more

20   video documents which we could have stood on our objections, but

21   we didn't.  I mean the reality is, look, the team -- you know,

22   with this many documents to review, I understand they need them

23   in advance of the deposition and that is indeed why we're into

24   July now is because of these documents and our agreement to

25   produce them.

1        But I think we need at least until -- and, again, we're

2    negotiating dates for this video deposition.  And if we have

3    until the 21st, I think if they get them a couple of weeks in

4    advance, I mean we are -- to have 1,000 lawyers reviewing

5    documents to try to give them everything they want, it's been a

6    huge lift.

7        And I think, you know, to say two weeks before that video

8    deposition really ought to be enough time.  They already have

9    35,000 video documents.

10        **THE COURT:**  July 6th.

11        **MS. RING:**  Okay.  Thank you.

12        **MR. LOESER:**  Your Honor, every time I hear about 900 or

13    1,000 lawyers, I realize why this case feels like when my car got

14    t-boned.

15        **THE COURT:**  When your car what?

16        **MS. RING:**  I don't get it.

17        **MR. LOESER:**  I was at a stop light a couple of years ago and

18    someone drove into the side of my car.  And every time I hear

19    about 1,000 lawyers working on this case for Facebook, it reminds

20    me of the feeling of having my car get hit by another car.

21        I can't believe -- if there are really 1,000 lawyers working

22    on this case, that's -- if only the plaintiffs had 1,000 lawyers

23    working on their case.

24        **MS. RING:**  They're document reviewers, Derek, and that's

25    what it takes.

53

1       **THE COURT:**  Maybe we should have them all -- should we have

2   them all appear at the next case management conference?

3       **MS. RING:**  No.

4       **MR. LOESER:**  A lot have been asking, Your Honor.

5       **MS. WEAVER:**  One wonders if the number of lawyers compared

6   to the number of documents the plaintiffs are getting, I think

7   maybe was the point, but that's fine.

8       **THE COURT:**  Okay.  So are we done?

9       **MS. WEAVER:**  Your Honor, I did want to address the deadline

10  on the financial documents because we do -- that is something

11  that we've teed up.  And I can't remember, honestly, what Mr.

12  Loeser asked for.

13      We do have a deposition coming up, another 30 -- you know, a

14  followup on the 30(b)(6) on these categories that were not

15  covered.  So what was the deadline that Your Honor wrote down for

16  the financial documents?

17      **MR. LOESER:**  I believe it was July 15th.

18      **MS. WEAVER:**  That is a little late.

19      **MR. LOESER:**  That's too late?

20      **MS. WEAVER:**  Sorry.

21      **THE COURT:**  I don't think -- that's what Mr. Loeser asked

22  for, but in the case management statement, you asked for July

23  1st.

24      **MS. WEAVER:**  That would be more helpful, I think, Your

25  Honor.  July 1st.

54

1       **MR. LOESER:**  I revise my request.

2       **THE COURT:**  Okay.  Financial documents have to be turned

3   over by July 1st.

4       **MR. LOESER:**  Your Honor, that is the end of my list.  I

5   think I would be remiss not to say that I appreciate the Court's

6   attention to this.  I also want to express my appreciation for

7   the discovery mediator and for Special Master Garrie who have

8   worked tirelessly through a number of issues.

9       We really wanted the Court to see that tracker so the Court

10  could see and have a record of the work that the parties are

11  doing and the number of disputes that are being addressed; not

12  all of them resulting in conflict, some of them being resolved.

13  But extraordinary efforts by both the mediator and Special Master

14  Garrie -- Judge Ander and Special Master Garrie.  And we really

15  appreciate those efforts, as well, even though --

16      **THE COURT:**  And --

17      **MR. LOESER:**  -- we had to pay for it.

18      **THE COURT:**  When should we meet again?  When should we have

19  another status conference so that I can set more production

20  deadlines?

21      **MR. LOESER:**  Well, what was the interval between this one

22  and the last one?  Six weeks?

23      **THE COURT:**  Not long enough.

24      **MR. LOESER:**  Yeah.  Why don't we say a month?

25      **MS. RING:**  I'm not sure we -- I think it was -- the last one

1    was the end of March, so April, May -- I mean like ten -- two and

2    a half months.  Maybe another -- maybe two months.

3         **MR. LOESER:**  I suggest six --

4         **MS. RING:**  Well --

5         **MS. WEAVER:**  I actually propose like the third week in July

6    so we can see if these other deadlines were complied with and how

7    things have worked out.

8         **THE COURT:**  Yeah, that's probably -- well, I was going to

9    suggest the 14th just based on my schedule because I'm not

10   available the following week.

11        **MR. LOESER:**  July 14th sounds good to the plaintiffs.

12        **MS. RING:**  Your Honor, the amount of effort that -- I mean

13   to go back and forth in the middle of trying to finish these

14   30(b)(6) depositions, I'm sure you'll hear about it if there's a

15   problem.  And there is not going to be a problem.

16        I just -- this is -- I don't think this is helpful to the

17   process, but we don't oppose it.  I think we could just --

18        **THE COURT:**  What about like -- I understand what you're

19   saying about, you know, the problem with having to do this during

20   the -- you know, as you're trying to wrap up these productions

21   and the 30(b)(6) depositions and stuff.  So, you know, what about

22   like August 4th?

23        **MS. RING:**  That works for us.  And we can report to you that

24   --

25        **MR. LOESER:**  Unfortunately --

1    **MS. RING:**  -- we're all done.

2    **MR. LOESER:**  -- we have -- unfortunately, I may not be in

3    the country.  If we could do it before July 28th, that would be

4    -- maybe the 27th of July or sometime that week if acceptable.

5    **THE COURT:**  How about the 26th?

6    **MR. LOESER:**  Perfect.  I say that for myself.  I guess

7    others should probably pipe in if it works for them.

8    **MS. WEAVER:**  That's fine here.

9    **THE COURT:**  26th at like, you know, 1 p.m.

10   **MR. LOESER:**  Okay.

11   **THE COURT:**  Okay.

12   **MS. RING:**  Yes, Your Honor.

13   **MR. LOESER:**  That will be our next status conference.

14   And just to be -- I want to make sure we are totally clear

15   and haven't had any miscommunications.  The 30(b)(6) depositions

16   where the people -- you know, people like Ms. Hendricks who

17   didn't -- you know, refused to answer questions and stuff like

18   that or maybe they weren't adequately prepared on topics or the

19   plaintiffs believe they weren't adequately prepared on topics,

20   the order is that those need to be completed by the end of June,

21   redone by the end of June, as well.

22   **MS. RING:**  Yes, Your Honor.

23   **THE COURT:**  Okay.  All right.  Very good.  We'll see you

24   next time.

25   **MR. LOESER:**  Thank you for your patience, Your Honor.

57

1      **MS. RING:**  Thank you, Your Honor.

2      (Proceedings adjourned at 4:02 p.m.)

3                    ---oOo---

4

5

6

7

8

9

10

11

12

13

14

15              **C E R T I F I C A T E**

16      I certify that the foregoing is a correct transcript from

17  the official electronic sound recording of the proceedings in the

18  above-entitled matter.

19

20

21  *Dipti Patel*

22  _____

23  DIPTI PATEL, CET-997

24  LIBERTY TRANSCRIPTS                    Date: June 11, 2022

25