GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
    rring@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
Heather L. Richardson (SBN 246517)
    hrichardson@gibsondunn.com
Colin B. Davis (SBN 273942)
    cdavis@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **DECLARATION OF COLIN B. DAVIS IN SUPPORT OF FACEBOOK, INC.'S ADMINISTRATIVE MOTION TO ADDRESS NEW REQUESTS FOR PRODUCTION OF FINANCIAL DOCUMENTS** |

I, Colin B. Davis, declare:

1.      I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendant Facebook, Inc.  I am a member in good standing of the Bar of the State of California and a member in good standing of the Bar of this Court.  I submit this declaration in support of Facebook's Administrative Motion to Address New Requests for Production of Financial Documents.  I have personal knowledge of the facts set forth in this declaration, except where noted otherwise, and, if called to do so, could and would testify competently thereto.

2.      On June 9, 2022, during a case management conference, this Court ordered Facebook to complete production of "financial documents" Plaintiffs previously requested by July 1, 2022, in advance of a continued Rule 30(b)(6) deposition on the following topic:

> Facebook's calculation of revenues, gross profits and net profits recognized by Facebook relating to Users' Data or Information, including but not limited to how Facebook monetized User Data or Information, how Facebook quantified the value of sharing User Data or Information, and Facebook's business and marketing strategy regarding the monetization and quantification of User Data or Information.

3.      On June 15, 2022, the parties met and conferred concerning Plaintiffs' requests for production of financial documents.  During the meet and confer, and in a letter the next day, Plaintiffs requested that Facebook produce financial documents "showing the revenue Facebook received from all third parties whose access to data was limited as part of the ADI process," and "[d]ocuments reflecting revenues associated with third parties who were whitelisted."

4.      Plaintiffs took the position that these requests were not new because Plaintiffs previously requested documents regarding the overall financial impact of ADI and whitelisting *on the Company*.  Facebook explained that it had not identified documents showing the former—although it has produced detailed reports showing the Company's overall financial position over time—but that it would agree to generate documents responsive to the latter, which were new requests.  Facebook also explained that it would try to generate these materials by the July 1, 2022 deadline for Plaintiffs' previous requests, but that it anticipated it would be "extraordinarily difficult" to do so.

5.      On June 29, 2022, Facebook determined that, despite diligent efforts, it could not generate new documents responsive to Plaintiffs' new requests by July 1, 2022, and asked Plaintiffs to

Gibson, Dunn & Crutcher LLP

submit a joint request to the Court seeking a new deadline applicable to the new requests.  Plaintiffs refused.

6.      Facebook has diligently sought to collect and produce financial information and documents requested by Plaintiffs.  When Plaintiffs sought the production of seven categories of financial documents in February 2022, Facebook conducted an extensive search and produced by May 6 more than 2,000 additional financial documents responsive to Plaintiffs' requests.

7.      After taking a monetization-focused Rule 30(b)(6) deposition on May 19, Plaintiffs requested the production of additional financial documents.  Facebook responded by agreeing to search for and produce various specific categories of information and requesting to meet and confer with Plaintiffs about others.

8.      On June 15, 2022, the parties met and conferred concerning Plaintiffs' requests.

9.      In a June 16, 2022 letter, Plaintiffs revised certain requests, stating that, regarding the ADI, they sought "1) Documents showing the revenue Facebook received from all third parties whose access to data was limited as part of the ADI process, and 2) Documents showing a comprehensive revenue analysis of changes to third parties' access to information as a result of ADI."  The same letter also purported to "reiterate[] [Plaintiffs'] longstanding request for … [d]ocuments reflecting revenues associated with third parties who were whitelisted."

10.     On June 23, 2022, Facebook responded to Plaintiffs' June 16 letter.  Facebook made clear in its response that it disagreed that the information Plaintiffs sought regarding whitelisted applications had been requested previously.  And, more broadly, Facebook explained that it was "unaware of any preexisting materials responsive" to Plaintiffs' new ADI- or whitelisting-related revenue requests.  Id.  Nonetheless, "in the spirit of compromise and to avoid unnecessary dispute," Facebook volunteered "to generate materials to respond to Plaintiffs' specific requests" regarding the purported revenue impacts by entity of the ADI and whitelisting, while noting that "generating those materials [would be] a time-consuming process that will be extraordinarily difficult to complete by July 1."  Specifically, Facebook agreed to "undertak[e] the time-consuming process of generating materials sufficient to show revenues attributable to app developers whose access was limited or removed as a result of the ADI process, if any, for the period from 2017-2020," and to "generat[e]

materials sufficient to show revenues attributable to app developers identified in Facebook's response to Plaintiffs' Interrogatory No. 27 [regarding whitelisting], if any, during the putative class period."

11.     Facebook has made diligent efforts to collect and produce the financial documents and information Plaintiffs requested following the May 19 Rule 30(b)(6) deposition.  In addition to meeting and conferring with Plaintiffs' counsel and exchanging correspondence, a team of lawyers from Gibson, Dunn & Crutcher and in-house Facebook lawyers have conducted at least sixteen interviews of twenty-five additional Facebook employees to locate and/or generate, as applicable, the documents and information that Plaintiffs seek.  As a result of these efforts, which are ongoing, Facebook expects to produce a significant quantity of additional financial documents and information sought by Plaintiffs by the July 1 deadline set by this Court.

12.     With respect to Facebook's voluntary agreement to generate documents responsive to Plaintiffs' new requests, seeking documents relating to the financial impacts of ADI and whitelisting by entity, however, Facebook requires additional time.  As Facebook explained to Plaintiffs, no responsive documents exist, but Facebook is working to generate documents responsive to Plaintiffs' requests.  But generating these materials—which attempt to capture the advertising revenue attributable to app developers or individual apps—is a complicated, multi-step process requiring the dedication of significant resources.

13.     First, Facebook must identify the developer of each app impacted by the ADI process or that received whitelisted access to certain features.

14.     Second, Facebook must manually run queries using search terms (*e.g.*, searching for "Amazon") to identify the relevant corporate entity(ies) associated with each app developer identified in the first step that provided advertising revenue to Facebook.

15.     Third, Facebook must review each entity identified by this query to determine if it actually is affiliated with the relevant app developer (*e.g.*, "Amazon.com, Inc.") or whether it is instead an unrelated entity with a similar name (*e.g.*, "John Smith's Personal Amazon Store" or "Save the Amazon Coalition").

16.     Fourth, once the list of relevant entities is generated, Facebook must query its revenue records to determine the revenue, if any, attributable to each entity over the relevant time period.  Given

the lengthy time period at issue and the amount of revenue data Facebook maintains, this last step requires running queries across vast amounts of data.

17. To date, Facebook has been unable to successfully complete this last step; the queries either have resulted in errors or have timed out without returning useful results. Facebook is in the process of attempting to develop a technical solution to allow the necessary queries to run successfully, and it is optimistic that it will succeed in achieving a method for doing so, but it cannot guarantee immediate success.

18. On June 29, 2022, Facebook met and conferred with Plaintiffs to inform them of these issues, but Plaintiffs would not agree to stipulate to a new date for production of these documents.

19. During the June 29, 2022 meet-and-confer, I informed Plaintiffs' counsel of Facebook's intention to file this administrative motion absent a stipulation between the parties. Specifically, I inquired whether Plaintiffs' counsel would stipulate to a new deadline for production of the recently requested financial documents. Later on June 29, 2022, Plaintiffs' counsel responded by email indicating that Plaintiffs would not agree to stipulate to a new deadline.

20. Plaintiffs have previously indicated their willingness to take additional Rule 30(b)(6) testimony regarding monetization after the July 1 deadline for production of financial documents, and the parties have been discussing a date for that continued deposition in early August (after Plaintiffs declined to accept dates offered by Facebook in late July).

21. The requested order to address new requests for production of financial documents will not, by itself, alter the schedule of this action.

I declare under the penalty of perjury under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of June, 2022 at Wilmington, Delaware.

*/s/ Colin B. Davis*
Colin B. Davis