# EXHIBIT B
# Redacted Version of Document Sought to be Sealed

 

May 26, 2022

**VIA ELECTRONIC MAIL**

Martie Kutscher Clark
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
mkutscherclark@gibsondunn.com

Russell H. Falconer
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
rfalconer@gibsondunn.com

Deborah L. Stein
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
dstein@gibsondunn.com

Colin B. Davis
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive,
Irvine, CA 92612-4412
cdavis@gibsondunn.com

Laura C. Mumm
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
lmumm@gibsondunn.com

Rosemarie Ring
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
rring@gibsondunn.com

Robert C. Blume
Gibson, Dunn & Crutcher LLP
1801 California Street
Denver, CO 80202-2642
rblume@gibsondunn.com

  Re: *In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
    Northern District of California Case No. 3:18-md-02843-VC
    Follow-up Request Regarding Topic 10 Deposition: Request for Further
    Testimony and Documents

Dear Counsel,

  This letter concerns the May 19, 2022 30(b)(6) deposition of Facebook's corporate designee Amy Lee. Facebook designated Ms. Lee to testify on Topic 10:

> Facebook's calculation of revenues, gross profits, and net profits recognized by Facebook relating to Users' Data or Information, including but not limited to how Facebook monetized User Data or Information, how Facebook quantified the value of sharing User Data or Information, and Facebook's business and marketing strategy regarding the monetization and quantification of User Data or Information.

Plaintiffs seek additional document production, and testimony regarding those missing documents, on several areas germane to this Topic, and also seek testimony from a corporate witness on significant topics for which Ms. Lee was not prepared.

### A.  Renewed Request for Production of Financial Documents.

For years, Plaintiffs have been seeking production of documents from Facebook relating to seven primary categories of financial documents. On May 16, 2022, Plaintiffs sent an email identifying not only those documents, but topics Plaintiffs intended to cover. This email reiterated the seven categories of documents Plaintiffs have been seeking all along.

To help focus witness preparation, Plaintiffs include here the seven categories of revenue information the parties have previously discussed in the context of Facebook's search for financial documents, including, but not limited to, how Facebook monetizes data acquired about users by sharing it, matching it with other data, making it available through APIs, etc.

These topics, provided before and most recently on February 23, 2022, include:

(1) Financial/economic impact of transition to API v1 to v2 and other APIs, including, but not limited to impact of deprecating friends and read permissions, and the impact of whitelisting apps and partners;

(2) Financial/economic impact of expanding or limiting privacy restrictions (including changing privacy controls available to users), or limiting or expanding access to user data via whitelisting apps and partners, including Facebook's calculation of partners' revenues to Facebook throughout the Class Period, and the impact of cutting their access to data off, or suspending them from the platform;

(3) Marketing and business plans (including any internal financial plans, presentations, or onboarding materials) related to the valuation/quantification/monetization of Facebook user data, including how Facebook uses off-platform user data to track conversions used in calculating revenue;

(4) Documents and materials Facebook prepared for any third party re quantification of Facebook data and/or user content and information, including in connection w/ 2012 IPO;

(5) Documents related to any payments made to third parties for access or use of user data (e.g., Onavo, paying data brokers for data, etc.);

(6) Financial impact of third parties accessing or using Facebook user content and information in ways that violate Facebook platform policies (including, but not limited to, e.g., documents supporting Facebook's positions in Rankwave lawsuit in which it valued the amount of data Rankwave was wrongfully obtaining); and,

(7) Documents supporting Facebook's public reporting of revenues and Facebook's, including but not limited to, average revenue per user (ARPU), lifetime value of users (LTV), user engagement, active users, and the information relating to users Facebook made available to third parties to generate those revenues.

Facebook's production of documents responsive to these requests prior to the deposition was insufficient. For example, in the deposition, Plaintiffs marked a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from 2018 at Exhibit 364. Plaintiffs request that Facebook produce all similar revenue reports for the Class Period.

We further reiterate our ongoing request that Facebook identify, by bates number, the documents it has produced that fall within the above seven categories.

In addition, Ms. Lee testified that the following information should be available:

1. Source documents used in the calculation of Exhibit 372 and documents related to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ms. Lee testified to relating to Exhibit 372;

2. Documents sufficient to identify the revenue impact of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Exhibit 373;

3. Documents relating to Facebook's analysis of the revenue impact of any changes implemented after the Cambridge Analytica scandal;

4. Documents relating to payments that Facebook has made or is making to any third parties for user data or information derivative of user data, whether used for measurement or any other purpose including but not limited to Onavo, Viewpoints, Nielsen or any other third party; and,

5. Documents used to prepare Ms. Lee for her testimony, which stated refreshed her recollection. Lee Dep. Tr. 68:10-15.

B. **Additional Testimony.**

Plaintiffs will seek testimony of Facebook on these documents once they are produced.

In addition, Plaintiffs will expressly seek testimony regarding "how Facebook monetizes data acquired about users by sharing it, matching it with other data, making it available through APIs, etc.," which Plaintiffs' May 16 email also expressly identified.

The email summarized what Plaintiffs have discussed with Facebook on numerous occasions, for years, regarding financial information that Plaintiffs seek. This includes documents relating to any payments made to third parties for access or user of user data (e.g., Onavo, paying data brokers for data, etc.). However, Facebook still has not produced documents

quantifying these payments, and the witness testified that she was unprepared to discuss these topics at all. *Id*. at 200:25-201:4; 202:6-11. The witness was similarly unprepared to testify regarding a key document identifying in part [REDACTED]. *Id*. at 192:8-18; 195:14-18; 198:20-21. This document was plainly identified in Plaintiffs' May 16 email. Again, Facebook never communicated to Plaintiffs prior to the deposition that it would not prepare the witness on these topics, and Facebook still has not provided deposition dates for the excluded topics. *See* May 18, 2022 Email from Lesley Weaver to Colin Davis.

Finally, consistent with the request we made nearly 18 months ago, please provide the document Facebook prepared and produced the night before the first Amy Lee 30(b)(6) deposition in February 2021 for the entire class period. As you know, this document only covered revenue by channel for 2012-2017. There is no basis for Facebook to continue withholding this financial information for the entire class period.

Please provide a firm production date for these documents as well as a deposition date. To the extent Facebook refuses to provide these documents or testimony, please let us know, either way, by May 31, 2022.

Plaintiffs are available to meet and confer at your convenience.

Regards,

Lesley E. Weaver
lweaver@bfalaw.com