Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*
*Additional counsel listed on signature page*

Orin Snyder (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035
osnyder@gibsondunn.com

Deborah Stein (SBN 224570)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.:  213.229.7000
Fax:  213.229.7520
dstein@gibsondunn.com

*Attorneys for Defendant Facebook, Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  VIA VIDEOCONFERENCE<br>Hearing Date:  July 26, 2022<br>Hearing Time: 1:00 p.m. |

## PLAINTIFFS' STATEMENT

Plaintiffs continue to press for long overdue discovery. Facebook continues to blame Plaintiffs for Facebook's discovery abuse. That much remains the same. But progress is being made. The deadlines set by the Court at the last Case Management Conference have helped, though much discovery work remains to be done. This work includes approximately 35 more depositions and the production of substantial additional documents and information from Facebook and third parties—including the long-awaited production of Named Plaintiff data and Facebook's financial documents. Plaintiffs anticipate completing fact discovery within the Court's ordered current case management schedule, with the exception of a handful of depositions, discussed further below. However, Facebook's discovery delays have limited the time Plaintiffs have to review and analyze information with their experts in advance of the expert report deadline. To cure this prejudice, Plaintiffs believe an extension of the expert report deadline and subsequent deadlines affected by that extension will be necessary.

Plaintiffs have submitted to chambers the most recent discovery mediation issue tracker, used by the parties and the Discovery Mediators to track the progress of discovery disputes so that the Court is fully informed of the pending and resolved discovery disputes.

**1. General status of depositions.** Since the June 9 conference, Plaintiffs have taken seven more fact depositions, for a total of 24 fact witness depositions; and deposed two more 30(b)(6) designees, for a total of seven 30(b)(6) designees over twelve days. Over the next two months, Plaintiffs intend to take at least two dozen more fact depositions (16 are already scheduled) and approximately 10 more 30(b)(6) depositions. With the assistance of the discovery mediators, the parties have agreed that Plaintiffs may depose Mark Zuckerberg for 6 hours, Sheryl Sandberg for 5 hours, and Javier Olivan for 3 hours. Plaintiffs also intend to move to depose certain key witnesses—Rob Sherman, Allison Hendrix, Eddie O'Neil, Ime Archibong, and Konstantinos Papamiltiadis—for more than seven hours. Currently, depositions are scheduled through September 20, several days after the September 16 fact discovery deadline. The parties will seek leave from the Court to take these late depositions.

2.     **Rule 30(b)(6) depositions.** At the last hearing, the Court ordered that all 30(b)(6) depositions be completed by June 30, 2022, except those concerning advertising, the VPPA, and Topic 5, which the Court ordered to be completed by July 22. Dkt. No. 941. With the assistance of the Special Master, the parties have been working to schedule and take depositions to meet this deadline. The 30(b)(6) depositions on topics 2, 4, 6, 7 and 8 were completed by June 30, except where those topics concerned targeted advertising or data brokers. Moreover, Plaintiffs have sought additional responses to questions on topics 2, 6, 7 and 8 that the designee was not prepared to answer, which the parties are seeking to resolve through an exchange of written questions and answers, with the possibility of additional, limited, oral testimony. Facebook has answered some of Plaintiffs' written questions, and the parties' briefing on questions Facebook objected to and refused to answer was filed with the Special Master on July 15. Facebook complains about this follow-up process but it was necessitated by Facebook's designees' inability to testify meaningfully about myriad matters for which they were designated to testify.

The efforts to meet the Court's deadline have been further complicated by Facebook's iterative parsing of many topics among numerous witnesses, identifying numerous designees for the same topics over multiple days, at times months apart. For example, for just one topic, Facebook designated four different witnesses. One of the designees was deposed in May, with the deposition retaken in June, another was deposed in June, one will be deposed tomorrow, and the fourth likely in August. Further, witnesses have been unprepared to address questions within the scope of the topics, including questions about documents Plaintiffs provided to Facebook before the deposition to assist its preparation. The 30(b)(6) depositions on the topics of data brokers (across numerous noticed topics), VPPA (topic 9) and Named Plaintiff data (topic 5) are scheduled for July 20, 21 and 22. Given the present deposition schedule and Facebook's delayed production of financial documents, the parties intend to jointly seek leave from the Court to extend the deadline to complete the 30(b)(6) depositions on topics 10 and targeted advertising as soon after July 22 as is feasible.

Facebook asserts it has undertaken massive efforts to prepare and defend its designees,

and that it has acquiesced to Plaintiffs' requests with regard to the 30(b)(6) testimony sought to avoid further disputes. But it was Facebook's misconduct during the 30(b)(6) deposition process, and its agreement to resolve Plaintiffs' sanctions motion concerning that misconduct, that resulted in a stipulation for additional hours of 30(b)(6) testimony. Further, Facebook's contention that it says "yes" to everything Plaintiffs ask for is false. The disputes on the mediation tracker make that point. Moreover, the information Facebook is now saying "yes" to and has recently or is just now producing should have been produced years ago. Its statement seeks plaudits for undertaking remedial efforts required by its discovery malfeasance.

3. **Production of ADI Documents.** At the last hearing, the Court ordered that Facebook complete production of ADI-related documents by June 15. Dkt. No. 941. Facebook represented to Plaintiffs that it met this deadline. However, based on emails exchanged with Facebook on July 13, Plaintiffs now understand that Facebook will be making an additional production of more than 1,200 ADI documents previously withheld as privileged. Facebook's assertion that it properly complied with each of the "ADI orders" is false. Its non-compliance is documented in Plaintiffs' sanctions motion and will be further documented in their supplement. Nor is it true Facebook made "additional" productions "to avoid further disputes." Rather, those productions resulted from the Court's orders.

In addition, Plaintiffs' 30(b)(6) depositions of two auditors involved in the ADI process, one represented by Facebook's outside counsel, have been delayed because those third parties took the position that the Special Master's and Court's orders regarding the production of ADI documents did not pertain to them. The Special Master clarified that the order applied. At least one of the auditors has indicated that it will be producing substantially more than 100,000 new documents in the near future. Plaintiffs do not yet know the size or timing of the forthcoming production from the other auditor.

4. **Production of financial information.**  Plaintiffs propounded discovery requests seeking financial information from Facebook in 2019. As of July 1, 2022, Facebook had produced roughly 13,000 responsive documents, but more than 10,000 of those were junk files.

At the last hearing, the Court ordered that Facebook produce financial documents by July 1. Dkt. No. 941. Facebook produced some financial documents by July 1, but sought relief from completing production by the deadline due to its need for more time to process and analyze certain documents related to revenue generated from advertisers. The Court entered Facebook's proposed order, which extends the deadline for completing production of financial documents until July 22, 2022. Dkt. No. 959.

5. **Production of VPPA documents.** At the last hearing, the Court ordered that Facebook produce VPPA documents by July 6. Dkt. No. 941. Plaintiffs are reviewing the production and will follow up to address any deficiencies. Facebook's assertion that Plaintiffs made these requests to circumvent a ruling by Judge Corley is baseless. Plaintiffs are entitled to take discovery on a claim upheld by this Court.

6. **Production of Named Plaintiff data.** The Special Master continues to ably navigate the parties through the Named Plaintiff data inquiry—crucial information which Plaintiffs have sought for over 2 years. On July 1, the Special Master issued an Order establishing deadlines for production of certain information by Facebook and further submissions from the parties. On July 8, Facebook produced a list of the apps each of the Named Plaintiffs' friends used via Facebook Login, and Facebook has agreed to supplement this information with the app IDs. On July 13, Facebook made a production of the Named Plaintiffs' objects and associations from its TAO database and their audience controls. Additional productions of Named Plaintiffs data are due July 18 and August 1. By August 8, the parties must each identify 250 tables from the Hive database that Facebook will search for Named Plaintiff data; the production deadline for that data is not set. The order also sets forth a process for identification and briefing regarding searching those selected tables which Facebook preserved in cold storage, which it contends makes them inaccessible.

Given that production from this multi-year inquiry is only just beginning and is unlikely to be complete until well into September, Plaintiffs are concerned about their ability to analyze this data in the limited time before the October 21 exchange of initial expert reports.

Facebook again asserts that this information is not relevant because Plaintiffs have not shown that any user data was shared or made accessible to third parties. This issue has already been litigated and Facebook's position has been repeatedly rejected. Further, Plaintiffs note that Facebook has not been a reliable source on relevance. For example, it asserted that the ADI had no relevance to Plaintiffs' claims and that the DYI files contained all the data Facebook collected on the Named Plaintiffs. The evidence has proven these assertions to be untrue.

7. **Privilege over-designation.** At the last hearing, the Court ordered that Facebook produce a revised privilege log and all documents it has de-designated as not privileged by June 24. Dkt. No. 941. Facebook provided its amended privilege log on June 24 but issued a corrected amended privilege log on July 8. By July 5, Facebook had produced close to 65,000 documents formerly withheld as privileged. Facebook continues to identify hundreds of documents that were de-designated and "not produced [] in error," according to the July 2 Mediation Tracker.

8. **Overall document production.** Since June 3, the date of the last Case Management Statement, Facebook has produced 197,629 documents. Facebook has now produced 512,966 documents since the initial January 31 substantial completion deadline.

9. **Scheduling.** For the reasons discussed above, Plaintiffs seek an extension of the deadline for initial expert disclosures. Plaintiffs are happy to meet and confer with Facebook on an appropriate adjustment to that deadline and other deadlines in the case management schedule impacted by that adjustment. Plaintiffs do not believe Facebook's proposal that the parties cross-brief class certification and summary judgement is appropriate and will meet and confer with Facebook about its proposal.

**FACEBOOK'S STATEMENT**

After nearly two and a half years, fact discovery is finally coming to an end. Except for privilege log issues that Facebook timely and fully addressed, all of Plaintiffs complaints about discovery are due to circumstances of Plaintiffs' own making (serving notices for Rule 30(b)(6) depositions that do not identify topics with reasonable particularity and refusing to provide that particularity through the meet and confer process), or based on continued misrepresentations of the discovery record in this case as to what should have been produced by the January 31, 2022 substantial completion deadline and what has been produced since. Facebook addresses these points below to correct the record, but focuses on providing updates relevant to the close of fact discovery and a proposed briefing schedule to move the case forward, since that is where the extent of Plaintiffs' continuing misrepresentation and misuse of the discovery process in this case will become clear.

**A.      Close of Fact Discovery**

Fact discovery closes on September 16, 2022. In advance of the last case management conference, the parties identified and the provided updates on the following remaining discovery: (1) Rule 30(b)(6) depositions, (2) ADI documents, (3) financial documents, (4) video documents, (5) privilege log, and (6) named plaintiff data. Except for named plaintiff data, which is the subject proceedings before the Special Master, the Court set deadlines for this discovery. As explained below, these deadlines have been met except for timing issues created by new requests from Plaintiffs, the need to seek rulings from the Special Master, and scheduling conflicts.

Rule 30(b)(6) Depositions. Plaintiffs have taken nearly 70 hours of 30(b)(6) depositions. Because the noticed topics purport to cover every aspect of Facebook's data practices over the last 15 years, regardless of whether data was shared or made accessible to third parties, Facebook has had to produce 14 witnesses who have collectively spent more than 500 hours preparing for these depositions with the assistance of over 30 Gibson Dunn attorneys and in-house counsel who have devoted well over 5,000 hours to this work. What Plaintiffs refer to as "Facebook's iterative parsing of many topics among numerous witnesses" is a direct result of their own failure

to comply with Rule 30(b)(6)'s reasonable particularity requirement. As for the supposed inability of Facebook's witnesses to answer Plaintiffs' questions, the parties' current efforts to address these issues through written questions and answers underscores that the source of the problem is Plaintiffs' constant and continuing overreach. Plaintiffs claimed that one of Facebook's 30(b)(6) designees, who they deposed for approximately 30 hours over 5 days, had not answered certain questions they asked during his deposition and asked for written responses and even more live testimony.

During a hearing before the Special Master to resolve any outstanding issues on 30(b)(6) depositions, the Special Master and the parties agreed on a process by which Plaintiffs would provide questions to which Facebook would respond in writing with the Special Master making clear to Plaintiffs that, "[t]his isn't a whole new round of [questions]," id. at 19:25-20:1, and "[i]f it turns out that it's a field-of-dreams thing[], it will be axed." *Id*. at 29:11-12. The following week, Plaintiffs sent 143 questions to Facebook, including sub-parts, nearly half of which had not been asked during the deposition and many of which had already been fully answered. Notwithstanding this overreach, Facebook answer 57 questions of the questions and the Special Master is currently considering briefing on whether and how to address the remaining questions.

ADI Documents. Following Judge Corley's order holding that ADI was not protected by the work product doctrine as a general matter and ordering (1) Facebook to produce investigation documents for six exemplar apps (which Facebook did within one week), and (2) the parties to "work with the Special Master regarding production of additional materials consistent with the guidance offered," the Special Master issued two orders—one on *December 20, 2021* requiring production of the remaining ADI investigation documents, and one on *January 31, 2022* requiring production of ADI-related communications on January 31, 2022 ("ADI Orders"). On March 3, 2022, Facebook completed its production of ADI documents under the ADI Orders.

Since that time, Facebook has collected and produced additional ADI-related communications for custodians beyond those agreed to during the ADI proceedings before Judge Corley (more than quadrupling the number of custodians) and using entirely new search strings.

Plaintiffs now claim that these additional ADI productions show that Facebook did not comply with the March 3, 2022 production deadline for the ADI Orders, a claim that is not only baseless but unfair given that Facebook affirmatively raised these scope issues with Plaintiffs and then agreed to their demands for additional collections that far exceed the relevance or proportionality standards of Rule 26.

Finally, Plaintiffs' complaints about the production of ADI documents by two auditors involved in the ADI process are also baseless. As Plaintiffs know, Facebook consented to resolution of the issue on an expedited basis immediately after it was raised, and it had no impact at all on production of the documents which were still being reviewed.

Privilege Log. Facebook completed its review of the 89,638 privilege log entries discussed at the last CMC on June 3 for document categories Plaintiffs identified as high priority, and on June 10 for the remaining documents. Facebook served an amended privilege log and a supplemental production of de-designated documents on June 24, as ordered by the Court, followed by a small production on July 5 of documents inadvertently omitted from the June 24 production (approximately 1% of the de-designated documents). Facebook has also worked with Plaintiffs to address their technical questions about the amended log and associated productions.

Financial Documents. On July 1, Facebook completed production of financial documents and filed an administrative motion with the Court requesting a July 22 deadline for new requests from Plaintiffs for financial information that Facebook agreed to produce by needed additional time to create because no documents reflecting the requested information existed. The Court granted Facebook's request, and Facebook is working to meet the July 22 deadline.

Video Documents. On July 6, Facebook completed production of documents responsive to Plaintiffs' Fifth Set of RFPs related to video (RFPs 72-78). Plaintiffs claim that these documents should have been produced before the January 31, 2022 substantial completion deadline is baseless. As previously explained, these RFPs were an attempt to avoid discovery rulings made by Judge Corley, to which Facebook initially objected on that basis and then agreed to respond to avoid further discovery disputes.

Named Plaintiff Data.  The parties are in the process of complying with an order from the Special Master adopting Facebook's proposal in full on the issue of "what, if any, data from [systems other than DYI] should be produced consistent with [FRCP 26(b)]."  Dkt. 807 at 4.  Facebook continues to believe that its productions to date, which include all three categories of "discoverable user data" identified by Judge Corley in Discovery Order No. 9 (Dkt. 557), meet this standard.  But Facebook nevertheless proposed producing additional named plaintiffs data and is doing so now, even though Plaintiffs have not shown that any of the data was shared or made accessible to third parties so as to be relevant to their claims.

Document Production Generally.  Plaintiffs suggest that Facebook misrepresented compliance with the January 31, 2022 substantial completion deadline because it has produced over 500,000 documents since that date.  The vast majority of these documents are ADI-related communications which Facebook was not ordered to produce until January 31, 2022, and, after completing its production on March 3, 2022, agreed to additional productions for a vastly expanded list of custodians and search strings demanded by Plaintiffs as explained above.  Moreover, whereas Plaintiffs are quick to point out so-called "junk" files to complain about the volume of financial documents produced, such references are conspicuously absent when it serves their purpose.  What plaintiffs call "junk" files are embedded images, produced in accordance with the ESI protocol in this matter, and account for 34% of the documents produced after January 31, 2022.

**B.     Class Certification and Summary Judgment For Named Plaintiffs**

Now that fact discovery is coming to a close, the case can and should move forward.  While the Court's April 6, 2022 scheduling order (Dkt. 908) provides a date by which the class certification hearing must occur, there is no briefing schedule for class certification or summary judgment on named plaintiff standing which is a "jurisdictional element that must be satisfied prior to class certification."  *Nelsen v. King Cnty*, 895 F.2d 1248, 1249 (9th Cir. 1990);[1] Dkt. 298

---

[1] *See Easter v. American West Financial*, 381 F.3d 948, 962 (9th Cir. 2004) ("district court correctly addressed the issue of standing before it addressed the issue of class certification."); *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *2 (N.D. Cal. Aug.

at 17 n.6 ("Facebook will be given an opportunity to attempt to knock out individual named plaintiffs on standing grounds at a later stage."). Facebook proposes the following schedule:

| Event | Deadline |
|---|---|
| Close of Fact Discovery (except discovery regarding documents withheld as privileged) | September 16, 2022 |
| Initial Expert Disclosures for both sides (excluding experts relating to damages whose testimony is not relevant to class certification) | October 21, 2022 |
| Motion for Class Certification | October 21, 2022 |
| Limited Motion for Summary Judgement re Named Plaintiff Standing | October 21, 2022 |
| Rebuttal Expert Disclosures for both sides (with exception noted above) | ~~November 18, 2022~~December 16, 2022 |
| Opposition to Motion for Class Certification | December 16, 2022 |
| Opposition to Limited Motion for Summary Judgement re Named Plaintiff Standing | December 16, 2022 |
| Close of Expert Discovery (with exception noted above) | January 13, 2023 |
| Reply ISO Motion for Class Certification | January 27, 2022 |
| Reply ISO Limited MSJ re Named Plaintiff Standing | January 27, 2022 |
| Last day for hearing on class certification | March 17, 2023 |

---

15, 2016) ("Court thus must consider [the named plaintiff's] standing to pursue his proposed class-wide declaratory, injunctive, and damages relief before anything else."); *See Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) (addressing motion for summary judgment before class certification motion, noting that "Article III standing must be determined prior to consideration of the requirements for class certification."); *Larsen v. Trader Joe's Co.,* No. C 11-05188 SI., 2012 WL 5458396 at *4 (N.D. Cal. June 14, 2012) (dismissing claim and explaining that "before a class can be certified, the named plaintiffs must have standing individually"); *In re Abbott Labs. Norvir Anti-Trust Litig.*, No. 04-CV-1511-CW, 2007 WL 1689899, at *2 (N.D. Cal. June 11, 2007) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

Dated: July 19, 2022

KELLER ROHRBACK L.L.P.

By:    */s/ Derek W. Loeser*
       Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Emma M. Wright (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com
ewright@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By:    */s/ Lesley E. Weaver*
       Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

GIBSON, DUNN, & CRUTCHER LLP

By: */s/ Rosemarie T. Ring*

Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Rosemarie T. Ring (SBN 220769)
rring@gibsondunn.com
Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of July, 2022, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver