# EXHIBIT 97-B
## Redacted Version of Document Sought to be Sealed

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Heather L. Richardson
Direct: +1 213.229.7409
Fax: +1 213.229.6409
HRichardson@gibsondunn.com

Client: 30993-00116

June 16, 2022

**VIA JAMS ACCESS**

Dear Special Master Garrie,

      Below Facebook responds to the Special Master's JAMS message dated June 10, 2022 stating "Facebook is to respond to the issues regarding production of Named Plaintiff data in ▇▇▇▇ and the ▇ Hive tables raised in Plaintiff's June 6, 2022 brief."

      After months of proceedings, the parties submitted proposals regarding the production of additional Named Plaintiff data. The Special Master held a hearing on May 17, 2022, during which he identified three areas of disagreement. On May 24, 2022, the Special Master ordered the parties to submit simultaneous briefing on those issues, but rather than address them, Plaintiffs focused on new issues based on supposed "new evidence." Plaintiffs' "new evidence" is largely irrelevant to these proceedings, and Plaintiffs also misconstrue and misinterpret the testimony they cite. Specifically, Plaintiffs point to data a witness testified was preserved from a system called ▇▇▇▇ and Hive. Even though the witness did not testify that the preserved data is Named Plaintiff data or Named Plaintiff data that has not been made available to Plaintiffs, they assume that is the case and based on those assumptions make false accusations and an unprecedented demand for affidavits from more than a dozen attorneys. Facebook addresses each of these issues in turn below.

1. ▇▇▇▇

      ▇▇▇▇ is a tool created to respond to law-enforcement subpoenas, https://www.facebook.com/safety/groups/law/guidelines/, which are not at issue in this case. Law enforcement can request information in response to lawful subpoenas, through Facebook's Law Enforcement Online Request System. Law enforcement subpoenas must be narrowly tailored and particularized, and the relevant categories of data (and only those) are provided through ▇▇▇▇▇▇▇▇ is not designed or intended for use by Facebook users or in private litigation. That said, Facebook preserved data from ▇▇▇▇ in connection with this case out of an abundance of caution.

      To be clear, ▇▇▇▇ data largely overlaps with data already produced. Nonetheless, Facebook agrees to produce Named Plaintiff data preserved from ▇▇▇▇ for current named plaintiffs. Facebook addresses Plaintiffs' accusations below:

      **DYI.** Plaintiffs say testimony about ▇▇▇▇ undermines statements that DYI is the "most complete compilation of data associated with the Named Plaintiffs' accounts" because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ There is no inconsistency.

      DYI is the "most complete compilation of data associated with the Named Plaintiffs' accounts." In fact, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

      Data associated with a user's account preserved in a ▇▇▇▇ snapshot largely tracks a subset of the data in DYI or otherwise available to the user. In some instances data in ▇▇▇▇ and DYI ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(neither of which are relevant to these Named Plaintiff data proceedings). For (1) an example is that a ▮▮▮▮▮ For (2) an example is that Facebook ▮▮▮▮▮

In Discovery Order No. 9, Judge Corley identified three categories of "discoverable user data" about the Named Plaintiffs: (1) data collected from a user's on-platform activity, (2) data obtained from third parties regarding a user's off-platform activities, and (3) data inferred from a user's on or off-platform activity. Data about other users and analyses prepared for law enforcement do not fall into these categories. Facebook also cannot produce other users' data without their consent, consistent with its obligations to those users, including under the Stored Communications Act.

▮▮▮ Plaintiffs say Facebook withheld ▮▮▮ snapshots. This is false. Facebook produced snapshots of the Named Plaintiffs' ▮▮▮ (attached as **Exhibit A**).

▮▮▮ Plaintiffs say that, unlike DYI, ▮▮▮ contains information about ▮▮▮ As explained above, the ▮▮▮ snapshot of an account contains information about ▮▮▮ that is not Named Plaintiff data. This data does not fall into any of the three categories identified in Discovery Order No. 9.

▮▮▮. Plaintiffs say Facebook withheld Named Plaintiff data from the ▮▮▮ snapshots about ▮▮▮ This is wrong. A user's DYI file contains information about their own activity in Groups and on Pages. The ▮▮▮ snapshots contain ▮▮▮

▮▮▮ Plaintiffs suggest Facebook withheld Named Plaintiff data from ▮▮▮ snapshots about ▮▮▮ This is also wrong. Like DYI, a ▮▮▮ snapshot of a user's account ▮▮▮ The cited testimony refers to snapshots of advertising ▮▮▮ This is a consumer class action, and Business Pages are not at issue. In any case, the categories of data in a snapshot of an ▮▮▮ overlap almost entirely with categories of data in DYI. ▮▮▮

**Format.** Plaintiffs say deposition testimony shows a ▮▮▮ than DYI. Plaintiffs misconstrue the testimony. The witness explained the specific categories of ▮▮▮ data provided in response to a subpoena can be produced to law enforcement as ▮▮▮, while DYI is "lots of individual files." Trans. at 51:19-23. DYI contains multiple files so a user can download individual categories and easily navigate the results. For litigation, individual files are also more usable. Most DYI files produced in this case are tens of thousands of pages; some are hundreds of thousands of pages. If Facebook produced the data as ▮▮▮, it would be extremely difficult to navigate and use.

\* \* \*

Again, Facebook will produce the Named Plaintiff data preserved in ▮▮▮ for current Named Plaintiffs. As disclosed previously, Facebook added new categories of data to the DYI system since producing certain Named Plaintiffs' DYI data. Facebook explained months ago that it is "happy to produce updated versions of DYI files . . . but has understood that Plaintiffs are not interested in additional DYI data, since it is 'already available to Plaintiffs.'" *See, e.g.* Dkt. 911 at 35 n.22. Although Plaintiffs have not responded, Facebook will produce updated DYI files, to avoid any confusion as to what data is available to users.

### 2. Hive Tables

Facebook's corporate designee testified that Facebook preserved various Hive tables in connection with this and related litigation. Plaintiffs leap to the conclusion that all of these tables contain Named Plaintiff data and say Facebook improperly failed to disclose the tables. Again, even though Plaintiffs' assumptions are wrong, Facebook agrees to produce the schema (i.e. column names) for preserved tables containing user identifiers and will meet and confer with Plaintiffs regarding a production of Named Plaintiff data from those tables. This overlaps with information and data Facebook already agreed to provide. Below Facebook addresses Plaintiffs' accusations about preserved Hive tables.

**Named Plaintiff Data.** Plaintiffs say Facebook should have disclosed a list of preserved Hive tables because such a list would have identified the most relevant Named Plaintiff data. This is wrong. Tables in Hive were preserved in connection with this litigation and related litigation for a number of reasons, many of which have nothing to do with Named Plaintiff data. Of the ■ tables identified, a minority contain user identifiers, and several of those tables were put on hold in connection with Facebook's April 18, 2022 proposal to produce categories of data requested or referenced by Plaintiffs.

**Searchability**. Plaintiffs say testimony that Hive tables can be searched by ■ or ■ undermines prior representations that Plaintiffs' requests would require searching "millions of disaggregated data sets." There is no inconsistency.

The cited statements concern a broader demand that Plaintiffs narrowed. Plaintiffs initially requested every data point at Facebook that might relate back to a Named Plaintiff in any way, including aggregated/fully anonymized data. Facebook explained that satisfying this request would be technically infeasible as it would require reverse engineering the underlying sources of data in millions of tables that are not reasonably capable of being identified to a user. For example, a table could log the number of Facebook users who log into Facebook each hour, to track peak activity for capacity budgeting, without any data about which users logged in each hour. Given the breadth of the request, Facebook explained "[e]ven a large team of engineers working full time for several years likely could not" "identify all of the information plaintiffs seek." That is true.

Before the Special Master, the parties have discussed a narrower set of data that is capable of being associated with a user's account—tables that contain user identifiers.

**Cold Storage**. Plaintiffs say testimony that "offline" tables can be searched undermines representations about the searchability of data in cold storage. The testimony referred to Hive, not cold storage. As Facebook has explained, Hive is "a data system that is used for offline data storage and analysis," *see* 5/11/2022 Submission p. 2, unlike TAO, which supports the online production environment. Plaintiffs also say testimony undermines representations that data in cold storage cannot be produced. Facebook did not represent that data in cold storage cannot be produced. It argued it should not be required to restore tables consisting of hundreds of petabytes of data, in part because it had accessible (and agreed to produce), summary versions of the data. The Special Master agreed. *See* Nov. 8, 2021 Order Re: Facebook's Motion For Protective Order Against Production of API Call Logs.

### 3. Request for Affidavits from Counsel

Based on the accusations above, Plaintiffs make an unprecedented demand for affidavits from Facebook's in-house legal team and Gibson Dunn partners to have worked on this matter regarding Facebook's production of preserved Named Plaintiff data. There is no basis for a request of this nature, which is based on Plaintiffs' mischaracterizations of the record, and has nothing to do with the outstanding areas of dispute regarding the parties' Named Plaintiff data proposals. In any case, Plaintiffs received corporate testimony about Facebook's preservation efforts, and, as explained above, agrees to produce data preserved in sources to which the witness testified. This request should be denied.

Sincerely,

/s/ Heather L. Richardson

Heather L. Richardson

# EXHIBIT A

# Ex. A
# Filed Under Seal