GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED** |

SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED
CASE NO 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

I, Deborah Stein, hereby declare as follows:

1. I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Facebook, Inc. ("Facebook") in the above-captioned matter. I am a member in good standing of the State Bars of California and New York. I submit this supplemental declaration in support of Facebook's Amended Statement in Support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Materials Should Be Sealed. I make this supplemental declaration on my own knowledge, and I would testify to the matters stated herein under oath if called upon to do so.

2. Attached as **Exhibit 1** is a true and correct **unredacted** copy of Plaintiffs' Supplemental Brief in Support of Sanctions.

3. Attached as **Exhibit 2** is a true and correct **redacted** copy of Plaintiffs' Supplemental Brief in Support of Sanctions.

4. Attached as **Exhibit 3** is a true and correct **unredacted** copy of the Declaration of Lesley E. Weaver in Support of Plaintiffs' Supplemental Brief in Support of Sanctions.

5. Attached as **Exhibit 4** is a true and correct **redacted** copy of the Declaration of Lesley E. Weaver in Support of Plaintiffs' Supplemental Brief in Support of Sanctions.

6. Attached as **Exhibits 98-A, 102–104-A, 112-A, 119-A, 123–125-A, 129-A, and 139-A** are a true and correct **unredacted** copy of Plaintiffs' Exhibits 98, 102–104, 112, 119, 123–125, 129, and 139.

7. Attached as **Exhibits 98-B, 102–104-B, 112-B, 119-B, 123–125-B, 129-B, and 139-B** are a true and correct **redacted** copy of Plaintiffs' Exhibits 98, 102–104, 112, 119, 123–125, 129, and 139.

8. Facebook proposes redacting confidential information regarding its data systems and Facebook's proprietary data storage and processing practices.[1] How Facebook stores, manages, tracks, preserves, deletes, and processes data for billions of users across its data systems are key components of its business that set it apart and ahead of its competitors. I understand that, if publicly disclosed, Facebook's competitors could take advantage of this information to improve their own methods for managing high volumes of user data or for tracking and storing user data across data systems, to Facebook's competitive disadvantage. Hackers and other bad actors also could use this information to better understand Facebook's data systems and target specific repositories of data, potentially harming both Facebook and its users.

9. Facebook proposes redacting confidential information regarding its tool for responding to law-enforcement requests for user records, including the name of the tool, the types of data it contains, the delta between the data within the tool and DYI, and the format in which data from the tool is produced.[2] I understand that public disclosure of details about this tool would reveal confidential information regarding Facebook's internal operations that could be used by bad actors to attempt to circumvent and evade Facebook's enforcement strategies and current and future lawful governmental criminal investigations. I further understand that public disclosure of Facebook's internal processes related to the tool could provide confidential information to competitors about how Facebook tracks and stores data across its systems, to Facebook's competitive disadvantage.

---

[1] Pls. Supp. Br. at i, 12–14, 20 (Dkt. 988-3); Weaver Decl. at ¶¶ 4, 53 (Dkt. 988-6); Exs. 95 at Tr. at 69:11–25 (Dkt. 988-13); 96 at 1–4 (Dkt. 988-14); 97 at 1, 3 (Dkt. 988-15); 98 at Tr. at 88:20–21, 23, 89:3, 90:1–2, 11, 14–15, 20, 22, 91:7, 131:2–3, 8, 17, 329:12–25, 330:1–12, 334:6, 335:9, 11–12, 14, 20, 24, 336:2, 8, 337:23–24, 5–7, 12 (Dkt. 988-16); 102 at 1–3 (Dkt. 988-19); 103 at Tr. at 131:24, 132:5–8, 10–11, 25, 133:1–2, 134:20–21, 136:25, 217:1–9, 15–18 (Dkt. 988-20); 104 at Internal Ex. H at Tr. at 131:24, 132:5–8, 10–11, 25, 133:1–2, 25, 134:20–21, 136:25, Internal Ex. M at 2 (Dkt. 988-21); 119 at 7 (Dkt. 988-36); 125 at 3 (Dkt. 988-42); 129 at 1, internal attachment at 1–28 (Dkt. 988-46).

[2] Pls. Supp. Br. at i, 14–17 (Dkt. 988-3); Weaver Decl. at ¶ 5 (Dkt. 988-6); Exs. 95 at Tr. at 40:2–6, 8–20, 23–24, 41:6–7, 15–18, 20-25, 42:1–19, 22 (Dkt. 988-13); 96 at 2–3 (Dkt. 988-14); 97 at 1–2, Internal Ex. A (Dkt. 988-15).

2
SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED
CASE NO 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

10. Facebook proposes redacting confidential and competitively sensitive information regarding its business programs, strategies, decisions, and partners, including confidential technical details of how Facebook develops and uses data to target advertisements to the most relevant users.[3] This information also includes confidential strategic discussions regarding Facebook's existing and potential future business models and strategies, as well as confidential information regarding the identities of and negotiations with entities with which I understand Facebook has a business relationship. I am informed and believe that, if publicly disclosed, this information could harm Facebook's relationships with these entities and undercut Facebook's ability to negotiate with competitors of these entities. I am further informed and believe that public disclosure of confidential information regarding Facebook's business models could allow Facebook's competitors to use this information developed at Facebook's expense to improve or develop their own competing techniques, to Facebook's competitive disadvantage. Additionally, I am informed and believe that public disclosure of confidential information regarding Facebook's business strategies could allow Facebook's competitors to copy these strategies, developed at Facebooks expense, to more effectively compete with Facebook. Finally, Facebook's ability to serve advertisements to its users effectively is an essential aspect of its business and I am informed and believe that, if publicly disclosed, this information could allow Facebook's competitors to improve their serve of advertisements to Facebook's competitive disadvantage.

---

[3] Pls. Supp. Br. at 24, 31–32 (Dkt. 988-3); Exs. 98 at Tr. at 69:20–22, 25, 70:1–4, 8–23, 88:9–13, 144:25, 145:1–13, 158:14–17 (Dkt. 988-16); 102 (Dkt. 988-19); 104 at Internal Ex. G at Tr. at 611:1–3, 6–8, 10, 12–15, 19–20, 25, 612:1, 616:18–19, 21–22 (Dkt. 988-21); 105 at Tr. at 266:11–13, 18–20, 268:2–3, 20–23, 269:2–6, 270:1–2, 273:5–8, 14–15, 281:25–282:6 (Dkt. 988-22); 106 at Tr. at 92:1–2, 4, 7–12, 20, 22–23, 25, 94:1–9, 13, 19–22, 24–25, 101:15–17, 24, 104:1–4, 25, 105:1–4, 7, 9–10, 24–25, 118:2–3, 9–11, 14, 17–19, 119:2–3, 19–20, 161:1–5, 9–10, 13, 20, 23–25, 163:2–4, 9–11, 13–15, 24–25, 164:1–3, 6–8, 12–15, 21–23, 165:1–3, 8–10, 13–14, 168:15–16, 19–20, 24–25, 169:1, 6–7, 20–21, 23–25, 170:1–5, 7, 14–16, 182:4–12, 19–21, 24–25, 224:2, 4, 11–22, 226:6–7, 11–12, 14, 24–25, 240:3–6, 10–11, Internal Ex. 0007 at 1–3, Internal Ex. 0013 at 1–5 (Dkt. 998-23); 109 at 3 (Dkt. 998-26); 112 at 2–7 (Dkt. 988-29); 119 at 6 (Dkt. 988-36); 123 at 1–2, 6, 9, 16–19, 23, 28 (Dkt. 988-40); 124 at 4 (Dkt. 988-41); 139 at 1–2 (Dkt. 988-55).

3
SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED
CASE NO 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

11. Facebook also asks the Court to permanently seal certain confidential information regarding Facebook employees, including the names of certain employees, email addresses, and performance evaluations.[4] If these names were disclosed publicly, competitors would have access to confidential information regarding Facebook's employees.

12. Facebook proposes to seal confidential information regarding Facebook's privacy and platform policy enforcement practices, including Facebook's decision-making process for evaluating apps and developers that may be violating its policies.[5] I understand that public disclosure of details regarding Facebook's policy-enforcement efforts would reveal confidential information regarding Facebook's internal operations that could be used by bad actors to attempt to circumvent and evade Facebook's enforcement strategies, potentially harming Facebook and its users.

13. Facebook asks the Court to seal confidential documents because they were created during this litigation as part of a confidential mediation process to aid in the parties' negotiations and because they contain confidential and sensitive information.[6] These documents also include information about current and former Facebook employees, which could enable the public and competitors to deduce information about confidential aspects of Facebook's business, such as which employees and departments are working on particular confidential matters. Public access to this information could cause Facebook competitive harm and could lead competitors to attempt to recruit critical Facebook employees. These documents also contain other confidential and competitively sensitive information, such as the highly confidential information regarding certain business relationships with third parties and about ADI discussed above.

---

[4] Weaver Decl. at ¶ 46 (Dkt. 988-6); Exs. 98 at Tr. at 88:4–6, 9–13 (Dkt. 988-16); 112 at 1–5 (Dkt. 988-29); 122 (Dkt. 988-39); 123 at 1–37 (Dkt. 988-40); 124 at 1, 3, 4 (Dkt. 988-41); 139 at 1 (Dkt. 988-55).

[5] Ex. 112 at 1–2, 4 (Dkt. 988-29).

[6] Exs. 104 at Internal Ex. C (Dkt. 988-21); 130 (Dkt. 988-47); 131 (Dkt. 988-48); 132 (Dkt. 988-49); 133 (Dkt. 988-50); 134 (Dkt. 988-51).

4
SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED
CASE NO 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2022 in Los Angeles, California.

                                                    */s/ Deborah Stein*
                                                    Deborah Stein

5
SUPPLEMENTAL DECLARATION OF DEBORAH STEIN IN SUPPORT OF FACEBOOK, INC.'S AMENDED STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED
CASE NO 3:18-MD-02843-VC

Gibson, Dunn & Crutcher LLP