# EXHIBIT 103-B

## Redacted Version of

## Document Sought to be Sealed

```
1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3
   IN RE:  FACEBOOK, INC.,        MDL No. 2843
4  CONSUMER USER PROFILE          Case No.
   LITIGATION                     18-md-02843-VC-JSC
5  _____
6  This document relates to:
7  ALL ACTIONS
8
   _____
9
10
11
12      ZOOM DEPOSITION OF FACEBOOK's 30(b)(6)
13   CORPORATE REPRESENTATIVE - MICHAEL PATRICK CLARK
14  (Reported Remotely via Video & Web Videoconference)
15       Denver, Colorado (Deponent's location)
16             Wednesday, May 18, 2022
17                   Volume I
18
19
20
   STENOGRAPHICALLY REPORTED BY:
21  REBECCA L. ROMANO, RPR, CSR, CCR
    California CSR No. 12546
22  Nevada CCR No. 827
    Oregon CSR No. 20-0466
23  Washington CCR No. 3491
24  JOB NO. 5210145
25  PAGES 1 - 251
```

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3

    IN RE:  FACEBOOK, INC.,      MDL No. 2843

 4  CONSUMER USER PROFILE        Case No.

    LITIGATION                   18-md-02843-VC-JSC

 5  _____

 6  This document relates to:

 7  ALL ACTIONS

 8

    _____

 9

10

11

12

13

14

15           DEPOSITION OF MICHAEL PATRICK CLARK,

16  taken on behalf of the Plaintiffs, with the

17  deponent located in Denver, Colorado, commencing at

18  10:07 a.m., Wednesday, May 18, 2022, remotely

19  reported via Video & Web videoconference before

20  REBECCA L. ROMANO, a Certified Shorthand Reporter,

21  Certified Court Reporter, Registered Professional

22  Reporter.

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
1                    APPEARANCES OF COUNSEL
2      (All parties appearing via Web videoconference)
3
4      For the Plaintiffs:
5           BLEICHMAR FONTI & AULD LLP
6           BY:  LESLEY E. WEAVER
7           BY:  MATTHEW MELAMED
8           BY:  JOSHUA SAMRA
9           Attorney at Law
10          555 12th Street
11          Suite 1600
12          Oakland, California 94607
13          (415) 445-4003
14          lweaver@bfalaw.com
15          jsamra@bfalaw.com
16
17
18
19
20
21
22
23
24
25     /////
```

Page 3

```
 1                   APPEARANCES OF COUNSEL
 2    (All parties appearing via Web videoconference)
 3
 4    For the Plaintiffs:
 5         KELLER ROHRBACK L.L.P.
 6         BY:  DAVID KO
 7         BY:  CARI CAMPEN LAUFENBERG
 8         BY:  DEREK W. LOESER
 9         Attorneys at Law
10         1201 Third Avenue
11         Suite 3200
12         Seattle, Washington 98101
13         (206) 623-1900
14         dko@kellerrohrback.com
15         claufenberg@kellerrohrback.com
16         dloeser@kellerrohrback.com
17
18
19
20
21
22
23
24
25    /////
```

```
 1                    APPEARANCES OF COUNSEL
 2     (All parties appearing via Web videoconference)
 3
 4     For Facebook, Inc.:
 5          GIBSON, DUNN & CRUTCHER LLP
 6          BY:  ROBERT C. BLUME
 7          BY:  MIKE M. ULMER
 8          Attorneys at Law
 9          1801 California Street
10          Suite 4200
11          Denver, Colorado 80202-2642
12          (303) 298-5735
13          rblume@gibsondunn.com
14          mulmer@gibsondunn.com
15
16
17
18
19
20
21
22
23
24
25     /////
```

Page 5

```
 1              APPEARANCES OF COUNSEL(cont'd)
 2    (All parties appearing via Web videoconference)
 3
 4    For Facebook, Inc.:
 5         GIBSON, DUNN & CRUTCHER LLP
 6         BY:  ROSEMARIE T. RING
 7         Attorney at Law
 8         555 Mission Street
 9         Suite 3000
10         San Francisco, California 94105-0921
11         (415) 393-8247
12         rring@gibsondunn.com
13    and
14         BY:  MARTIE KUTSCHER CLARK
15         Attorney at Law
16         1881 Page Mill Road
17         Palo Alto, California 94304-1211
18         (650) 849-5348
19         mkutscherclark@gibsondunn.com
20
21
22
23
24
25    /////
```

Page 6

```
 1              APPEARANCES OF COUNSEL(cont'd)
 2    (All parties appearing via Web videoconference)
 3
 4         JAMS
 5         BY:  DANIEL B. GARRIE
 6         Special Master
 7         555 W. 5th Street
 8         32nd Floor
 9         Los Angeles, California 90013
10         (213) 253-9706
11         dgarrie@jamsadr.com
12
13
14
15
16    ALSO PRESENT:
17         Ian Chen, Associate General Counsel,
18    Meta Platforms
19         John Macdonell, Videographer
20
21
22
23
24
25    /////
```

Veritext Legal Solutions
866 299-5127

```
 1    know as a result of conversations with counsel, I'd        01:27:47

 2    instruct you not to answer.

 3            THE DEPONENT:  I only know that because

 4    it was part of the conversation with counsel.

 5            MS. WEAVER:  Rob, your position is you            01:28:03

 6    telling him who knows about the datr cookie is

 7    privileged; is that right?

 8            MR. BLUME:  No.  Your question was, who

 9    gave the information with regard to this letter

10    about datr -- datr cookies.  That's privileged.          01:28:12

11            MS. WEAVER:  Okay.

12            MR. BLUME:  To the extent he knows that

13    information from discussions with counsel.

14        Q.  (By Ms. Weaver)  You're not prepared to

15    testify about the datr cookie, is that right,            01:28:23

16    Mr. Clark?

17            MR. BLUME:  Object -- objection.  Form.

18            THE DEPONENT:  I'm not prepared to

19    testify about the datr cookie as a representative

20    of Facebook.  Only from personal experience.            01:28:39

21        Q.  (By Ms. Weaver)  And you, from personal

22    experience, don't -- well, strike that.

23            Do you know how -- what -- strike that.

24            Do you know how the datr cookie

25    identifies a Web browser?                                01:28:52
```

Page 129

```
 1          A.   It -- I'm not prepared to answer that as        01:28:55

 2     part of testifying as a representative of Facebook.

 3     But in my personal experience, that -- the

 4     datr cookie is a generated unique identifier to a

 5     browser.  How that occurs and -- and exactly the       01:29:09

 6     content in it, I do not know.

 7          Q.   Who would know?

 8          A.   I -- I -- I am not prepared to testify to

 9     that as a representative of Facebook.  In my

10     personal experience, I don't have a specific name      01:29:25

11     that I would know that would know that part of the

12     process.

13          Q.   Can you -- can you identify anybody that

14     you work with at Facebook who knows how the datr

15     cookie functions?                                      01:29:41

16          A.   As of -- I -- I didn't prepare for that

17     as part of my testimony as a representative of

18     Facebook.  But in my personal experience, I -- I

19     would go look up who I would need to, to go have

20     that conversation.  I don't -- I don't know a name     01:29:59

21     offhand.

22          Q.   Okay.  Do you know -- okay.  Strike that.

23               What is the fpb cookie?

24          A.   I didn't specifically prepare for that as

25     part of my testimony representing Facebook.  But in    01:30:14
```

Veritext Legal Solutions
866 299-5127

```
 1    my personal experience and -- I -- I would refer to        01:30:17

 2    the -- I would refer to the filing for that detail.

 3           The underscore FB cookie is set on the

 4    third-party domain only if the advertiser/publisher

 5    has installed the Facebook pixel business tool and         01:30:28

 6    opted into the use of these cookies.

 7           The cookie has its own -- or has a

 8    browser identifier and -- and in the epoch time

 9    when the cookie was created.  And then for

10    additional details, there's documentation on the          01:30:43

11    external developer Facebook side.

12       Q.   And you said the epoch time?

13           It's a little unclear.  I just didn't

14    understand what you said.

15       A.   The -- yeah, it's -- it's E-P-O-C-H.              01:31:01

16    It's -- it's a time commonly used in -- in computer

17    languages and UNIX time systems.  The -- the time

18    since -- and I should know it offhand -- but

19    sometime in 1969 or 1970, and the number of

20    seconds that's --                                          01:31:21

21       Q.   Sorry.  It's just that I couldn't

22    understand you and it didn't come through on the

23    transcript.  That's fine.

24           Okay.  What is the ████████████████?

25           MR. BLUME:  Objection.  Form.  Scope.              01:31:34
```

Page 131

```
 1              THE DEPONENT:  I didn't prepare to          01:31:37

 2    specifically talk about that as a representative of

 3    Facebook.

 4              But in my personal experience, those are

 5    the cookies that are used for ████████████████    ████████

 ▮    ████████████████████████████████████.  And so

 7    that's -- that's where ████████████████

 ▮    ████████████████████

 9    Q.   (By Ms. Weaver)  Do third parties

10    transmit the Facebook user ID through ████████      ████████

▮     ████████████

12    A.   I didn't specifically prepare to talk to

13    that as a representative of Facebook.

14              But in my personal experience, those

15    cookies are only scoped to Facebook.com.  So third    01:32:15

16    parties should not have access to that.

17    Q.   They are not supposed to have access to

18    the Facebook user ID is your testimony?

19              MR. BLUME:  Objection.  Form.  And scope.

20              THE DEPONENT:  I didn't specifically        01:32:34

21    prepare for that as part of my testimony.

22              But in my personal experience, that --

23    that question is very, very generic and -- and --

24    and inaccurate.

25              What I had stated before is the ████████    01:32:46
```

Page 132

1   the ███████████████████████████████      ██████████

2   ██████████████, and third parties are not

3   authorized or should not have access to those

4   cookies in the browser as they're scoped to

5   Facebook.com.                                   01:33:07

6           And to further reiterate, that is why we

7   have third-party application-scoped IDs and other

8   kinds of IDs, so that we don't give third parties

9   the canonical Facebook user ID.

10       Q.  (By Ms. Weaver)  You're referring to the   01:33:26

11  ASID; is that correct?

12       A.  That is correct.

13       Q.  Okay.  We'll come back to that.

14           Why did Facebook create -- well, strike

15  that.                                           01:33:35

16           You said that the -- the fbc cookie is

17  used for authentication.

18           How does that function?

19           MR. BLUME:  Objection.  Form.  Beyond the

20  scope.                                          01:33:46

21           THE DEPONENT:  That -- that wasn't what I

22  said.  I didn't specifically prepare for that as

23  part of my testimony.

24           But in my personal experience, the

25  xs/c_user and xs c_user cookies are what are used   01:33:56

                                            Page 133

```
 1    for authentication and identify for users logged        01:34:03

 2    in.

 3            The_fbc cookie is a cookie that is set on

 4    third-party domain only if the advertiser and

 5    publisher has installed the Facebook pixel business     01:34:15

 6    tool.  And it is set only if the click originated

 7    from the Facebook service.

 8            For instance, when clicking on an ad in

 9    Facebook newsfeed.  And the_fbc cookie contains an

10    encrypted user ID.                                       01:34:32

11       Q.   (By Ms. Weaver)  And who encrypts the

12    user ID?

13            MR. BLUME:  Objection.  Form.  Scope.

14            THE DEPONENT:  I didn't prepare for that

15    as part of my testimony.                                 01:34:43

16            In my personal experience, I don't know.

17       Q.   (By Ms. Weaver)  Okay.  And so just

18    the record -- so the record is clear, you did not

19    prepare to testify regarding the fpb cookie,

20    the_fbc cookie, the ████████████████████       ██████████

      ██████████████████  or fr cookies; is that right?

22            MR. BLUME:  Objection.  And to the extent

23    the question asks for preparation beyond topic 4 is

24    beyond the scope.

25            THE DEPONENT:  I did not.  As a -- as a        01:35:19
```

Page 134

```
1    representative of Facebook, I didn't prepare for          01:35:20

2    that topic.

3         Q.   (By Ms. Weaver)  And did you prepare for

4    whether or not those cookies contained information

5    such as fbid, fbtype or URL?                              01:35:26

6              MR. BLUME:  Same objection.

7         Q.   (By Ms. Weaver)  Are you answering the

8    question?

9         A.   As a part of my preparation, as a

10   representative of Facebook, I did not prepare for         01:36:03

11   that.

12        Q.   Did you prepare to discuss the datr

13   cookie?

14             MR. BLUME:  Objection, to the extent the

15   question seeks information beyond topic 4 is beyond       01:36:17

16   the scope.

17             THE DEPONENT:  As a part of my

18   representation as a representative of Facebook, I

19   did not prepare for that.  But did share -- from my

20   personal experience.                                     01:36:30

21             MS. WEAVER:  Okay.  We'll move on.

22        Q.   (By Ms. Weaver)  Do you know who at

23   Facebook would be qualified to discuss those

24   cookies?

25             MR. BLUME:  Objection.  Form.                  01:36:47
```

Page 135

```
 1              THE DEPONENT:  As a representative of --        01:36:52

 2    as my preparation as a representative of Facebook

 3    for this testimony, I didn't prepare for that.

 4              In my personal experience, I -- I do not

 5    have a name.                                              01:37:03

 6         Q.   (By Ms. Weaver)  Okay.  Going back to

 7    Exhibit 348.

 8              Let me just ask a question.  You

 9    testified a moment ago that there was a binder in

10    the room that you used to prepare -- prepare that        01:37:21

11    included Exhibit 349; is that right?

12         A.   Yes.

13         Q.   And you reviewed and -- and recalled that

14    it referenced cookies, right?

15         A.   That is correct.                               01:37:45

16         Q.   Did -- did you discuss whether you would

17    testify regarding those cookies?

18              MR. BLUME:  Objection.  Form.

19              THE DEPONENT:  I did not.

20         Q.   (By Ms. Weaver)  Okay.  Going back to          01:37:59

21    348.

22              Do you see that there's a reference in

23    the first paragraph -- I'm sorry.  Okay.

24              There's a sentence that says "This means

25    we need to ███████████████████████████ -              01:38:20
```

Veritext Legal Solutions
866 299-5127

```
 1    record.  It's 1:53 p.m.                          01:53:34

 2            MR. BLUME:  So with regard to topic 4,

 3    which speaks to the processes related to deletion,

 4    pseudonymization, de-identification,

 5    re-identification association and deletion of user  01:53:48

 6    data and information, as that relates to cookies,

 7    Mr. Clark is prepared to discuss whether Facebook

 8    uses cookies as identifiers; specifically,

 9    identifiers for users.  And if so, how Facebook

10    treats those cookies within the deletion framework.  01:54:07

11            It was -- it is -- it's our position that

12    to discuss the processes of that deletion

13    framework, to talk about the specific cookies, what

14    they are specifically, what information they get is

15    beyond the scope.                                  01:54:25

16            He's certainly prepared to talk about how

17    the framework -- deletion framework deals with

18    cookies, to the extent those cookies are

19    identifiers.  But not any specific cookie or its

20    purpose or the information it gets.                01:54:37

21            SPECIAL MASTER GARRIE:  He can do the

22    high level, but getting into the technical ways of

23    how the cookies operationally work within the

24    different frameworks he describes is beyond the

25    scope.                                            01:54:48
```

Page 145

```
1              Is that what -- the gist of what we're        01:54:49

2     getting at?

3              MR. BLUME:  Well, let -- let me clarify.

4              He can talk about the -- the details of

5     how the deletion framework deals with cookies to      01:54:55

6     the -- to the extent cookies are -- are

7     identifiers.  But what is specific cookie seeks --

8              SPECIAL MASTER GARRIE:  That's what I

9     mean.  The specific cookies that were emailed or

10    identified by plaintiffs, they identified a subset    01:55:08

11    of specific cookies, those interworkings of how

12    those specific cookies interoperate with those

13    frameworks is -- he is not prepared to testify

14    about.

15             MR. BLUME:  Except to the extent that         01:55:21

16    they --

17             SPECIAL MASTER GARRIE:  The technical.

18             MR. BLUME:  Right.

19             Except to the extent that those cookies

20    are considered identifiers and -- and are part of     01:55:26

21    the process.

22             It doesn't matter what the specific

23    cookie is, as far as the deletion framework.  Every

24    cookie would be treated the same way.  And he's

25    prepared to talk about how the deletion framework     01:55:41
```

Page 146

```
 1    deals with cookies as -- en masse.  But any          01:55:43

 2    specific cookies, he -- is beyond -- we would argue

 3    is beyond the scope.

 4          They're all treated the same way.  Every

 5    cookie is treated the same way within the processes  01:55:55

 6    of pseudonymization, de-identification,

 7    re-identification, associations, deletion.  It

 8    doesn't matter which cookie.  They're all treated

 9    the same.

10          MS. WEAVER:  So if I may --                     01:56:09

11          (Simultaneously speaking.)

12          SPECIAL MASTER GARRIE:  Didn't -- didn't

13    he testify --

14          MS. WEAVER:  The topic includes

15    association.  We identified, for example, the named  01:56:13

16    plaintiffs' DYI files complaining -- containing

17    datr cookies precisely so we could understand what

18    data and information that's in the description.

19    User data and information is expressed through

20    those cookies, which the witness said and is         01:56:33

21    factually correct, are identifiers.

22          So Facebook is collecting and tracking

23    through the datr cookie which websites users visit,

24    and I -- I attempted to get testimony about that

25    today after sending --                               01:56:48
```

Page 147

```
 1              SPECIAL MASTER GARRIE:  But he --          01:56:50

 2              MS. WEAVER:  -- an email two weeks ago

 3       to -- only to find out in the deposition that in

 4       preparation here, counsel has not had the person

 5       prepare on any of those cookies.                  01:57:00

 6              SPECIAL MASTER GARRIE:  Well, one sec.  I

 7       don't want to -- let's not go down a rabbit hole

 8       here because that's where we're heading and we

 9       still have deposition left.

10              At the end of the day, prepared or not,    01:57:11

11       we can take that offline at a separate point.  The

12       bottom line is the witness that's here now isn't

13       prepared to speak about those specific technical

14       cookies that are associated with this specific

15       topic, as it relates to how you just described it.  01:57:28

16       It is what it is, right?

17              MS. WEAVER:  Yup, I understand.

18              SPECIAL MASTER GARRIE:  But --

19              MR. BLUME:  Hold on.  Hold on.

20              Just to be clear, he's prepared to         01:57:36

21       testify about whether Facebook uses the datr cookie

22       as an identifier.  That's -- so he can speak to

23       that.

24              SPECIAL MASTER GARRIE:  But those were --

25              MR. BLUME:  And then if so, how -- what's  01:57:44
```

Page 148

```
 1    that?                                              01:57:47

 2             SPECIAL MASTER GARRIE:  Where -- where

 3    I'm confused is those cookies she's referring to

 4    are those, those things, like this is -- those are

 5    the specific cookies that consist of what you're    01:57:53

 6    talking about.  So where I --

 7             MR. BLUME:  Right.

 8             SPECIAL MASTER GARRIE:  -- where I'm

 9    getting confused is, those cookies that she

10    identified -- that are identified by plaintiffs     01:58:02

11    are -- I don't think all -- but a subset of the

12    exact topic you're talking about.  But --

13             MR. BLUME:  Any facts --

14             SPECIAL MASTER GARRIE:  -- those are

15    technical tools --                                  01:58:12

16             MR. BLUME:  Well, but if -- if -- yeah.

17    Are the -- are -- is the following cookie -- does

18    Facebook consider the following cookie to be an

19    identifier.  If yes, how does -- how does Facebook

20    deal with it within the deletion framework.         01:58:22

21             He's prepared to answer those questions.

22    But the -- but if -- if -- but the specific --

23    if -- if Facebook doesn't consider a specific

24    cookie to be an identifier, then it's not caught up

25    within the deletion framework, which is what he's   01:58:34
```

```
 1    here to testify about.                          01:58:37

 2              MS. WEAVER:  So he's only here about

 3    deletion.  But the topic talks about association of

 4    user data and information.  That's what the topic

 5    says.                                            01:58:44

 6              MR. BLUME:  The processes of -- the --

 7    the processes of pseudonymization,

 8    de-identification, re-identification, association

 9    and deletion of --

10              MS. WEAVER:  Of --                     01:58:54

11              MR. BLUME:  -- of user data --

12              MS. WEAVER:  -- user data.

13              MR. BLUME:  -- within that -- it's the

14    process --

15              MS. WEAVER:  Association of user data and  01:58:58

16    information --

17              SPECIAL MASTER GARRIE:  No, let me -- let

18    me --

19              MS. WEAVER:  Yeah.

20              SPECIAL MASTER GARRIE:  The part         01:59:01

21    that I -- so what she's saying is that those

22    cookies are used to associate with specific users

23    by Facebook as tools.  And she's asking him

24    specific questions about those cookies that are

25    believed and been represented, I believe, to      01:59:14
```

Page 150

```
1    associate user activity or make the association of        01:59:17

2    a Facebook user and their activity.  Those specific

3    subset of cookies.  And then --

4            MR. BLUME:  Yes.  If Facebook --

5            SPECIAL MASTER GARRIE:  -- association is        01:59:29

6    done via that cookie.

7            MR. BLUME:  If Facebook -- if Facebook

8    considers the particular cookie to be an identifier

9    associated with a user and that -- and is part of

10   that process, he's -- he is happy to talk about it.      01:59:40

11           SPECIAL MASTER GARRIE:  But he can talk

12   about those cookies.

13           MR. BLUME:  He -- he can -- he can answer

14   the question whether -- whether Facebook considers

15   those cookies to be identifiers.  It says --            01:59:49

16           (Simultaneously speaking.)

17           SPECIAL MASTER GARRIE:  But to know how

18   they -- she wants -- the question is how does

19   Facebook associate.  How is that Facebook -- maybe

20   I'm missing something.  But I believe what's being      01:59:59

21   asked is how is that association done by Facebook

22   with those cookies.  Like what is the process

23   through which -- technical process through which

24   Facebook makes an association.

25           Maybe I'm misreading or mishearing what          02:00:13
```

Page 151

```
 1    plaintiffs are asking about.  And my question is,        02:00:16

 2    can he talk about how -- maybe I'm

 3    misunderstanding.

 4           Is he prepared to testify about the

 5    technical process of how Facebook makes those            02:00:25

 6    associations?

 7           MR. BLUME:  To the extent the -- by

 8    "association," you mean identify -- identifiers?

 9    In other words --

10           SPECIAL MASTER GARRIE:  The user.                 02:00:42

11           MR. BLUME:  -- did he identify a user and

12    how that -- how that information is then captured

13    within these processes, as set forth in topic 4,

14    yes.

15           SPECIAL MASTER GARRIE:  So if we open up          02:00:52

16    the cookie, we can -- he can walk us through how

17    that cookie makes those associations?

18           MR. BLUME:  No.  He can identify whether

19    or not these cookies are considered by Facebook to

20    be identifiers, generally.  Not how they work.  But      02:01:04

21    whether they are in the process, in the deletion

22    framework, considered to be identifiers.  In other

23    words, used to identify the user.

24           SPECIAL MASTER GARRIE:  Okay.  The

25    specific --                                              02:01:14
```

Page 152

```
 1              MS. WEAVER:  I think -- well, we can save      02:01:15
 2     for another day --
 3              SPECIAL MASTER GARRIE:  The technical --
 4     he's not --
 5              MS. WEAVER:  -- because it seems very          02:01:17
 6     clear that despite the fact that plaintiffs
 7     identified specific pages pulled out of the DYI
 8     file with datr cookies associated with the named
 9     plaintiffs, this witness does not -- according to
10     the instructions of counsel, doesn't interpret the   02:01:34
11     datr cookie to be an identifier for users.  And for
12     that reason, this witness is not prepared to
13     testify on that topic.
14              MR. BLUME:  Well, you never asked -- you
15     never asked him that question.  Ask him that         02:01:47
16     question.
17              MS. WEAVER:  Either way -- Rob, you
18     excluded your preparation --
19              MR. BLUME:  No, ask him the question.
20              THE COURT REPORTER:  Hold on.  Hold on.       02:01:52
21     Hold on.
22              SPECIAL MASTER GARRIE:  No, you guys are
23     doing this again.  Time out.  Time out.
24              We'll go off the record and I'll reset
25     everything.  And I will take time away from -- take   02:02:00
```

Page 153

```
 1    time and add time, so we may end up at zero.              02:02:02

 2            But the point being is stop and listen to

 3    each other.  The net/net is that what Counsel Blume

 4    is saying, the question you just asked,

 5    Counsel Weaver, you can ask the question and hear         02:02:13

 6    the answer.

 7            Did I miss that, Counsel Blume?

 8            MR. BLUME:  That's correct.  No, that is

 9    absolutely correct.

10            SPECIAL MASTER GARRIE:  And then based --         02:02:22

11    based on that answer, Counsel Weaver, you may

12    find --

13            MS. WEAVER:  I think he said that's

14    incorrect.

15            MR. BLUME:  No, I said that's absolutely          02:02:28

16    correct.  Ask him if he considers the datr cookie

17    to be an identifier.  If so, how it fits in the

18    process.  And ask for --

19            MS. WEAVER:  But the question is

20    whether -- sorry.                                         02:02:36

21            The question is whether it's associated

22    with user data and information.  That's the topic.

23            MR. BLUME:  The --

24            MS. WEAVER:  Facebook's process of

25    association of user data and information.                 02:02:46
```

Page 154

```
1              MR. BLUME:  And -- and for purposes of        02:02:52

2    pseudonymization, de-identification,

3    re-identification, that association is identifiers.

4    And so asking if it's -- if he considers it for

5    purposes of the deletion framework, which is what      02:03:02

6    he's here to testify, whether it's considered an

7    identifier.  If it is, it fits into the process.

8    If it's not, then it doesn't.  He's here to talk

9    about that deletion, de-identification,

10   pseudonymization and association with regard to        02:03:15

11   those that -- and within that process.  Just ask

12   him the ordinary question.

13              SPECIAL MASTER GARRIE:  That's a broad

14   question.

15              MS. WEAVER:  I'll just -- Special Master,    02:03:23

16   I don't want to waste any more time.  It's very

17   difficult to take depositions and have arguments

18   like this in the middle of a dep.  So let's --

19              MR. BLUME:  I agree.

20              MS. WEAVER:  -- refer this to a different    02:03:32

21   time.  And I would just note -- have you pay

22   attention, Rob, to the Oxford comma.  In topic --

23   in topic 4, there's a comma after association.

24              SPECIAL MASTER GARRIE:  Wait.  Wait.

25              MS. WEAVER:  All of those topics are         02:03:42
```

```
 1    individual.                                           02:03:43

 2              SPECIAL MASTER GARRIE:  I think -- I

 3    think you made a good point.  We're not

 4    accomplishing anything here.

 5              MS. WEAVER:  Right.                          02:03:48

 6              SPECIAL MASTER GARRIE:  I give 15

 7    minutes --

 8              MR. BLUME:  Right.

 9              SPECIAL MASTER GARRIE:  -- back to

10    plaintiffs here because this was at my request.       02:03:50

11              I was just trying to see if we could

12    avoid the downstream issue that looks inevitable,

13    to come.  So we will -- we will put a pin in it and

14    I will -- we will -- we will figure if it is

15    appropriate or whether it was or was not, or so on    02:04:06

16    and so forth.

17              I was hoping it would be resolved herein,

18    but it does not seem foreseeable.

19              MR. BLUME:  Well, not -- yeah.

20              SPECIAL MASTER GARRIE:  I understand,        02:04:15

21    Counsel Blume, your position.  I fully get it.  I

22    understand, Counsel Weaver, your position.  I

23    realize there's a fundamental issue there that will

24    not be resolved during this break.

25              So everybody should go get lunch, and we    02:04:25
```

Page 156

```
 1    will resume -- I was duly hopeful that I was            02:04:26

 2    misreading what I thought, but it is fine --

 3              MR. BLUME:  Well, welcome your -- this

 4    question, as you --

 5              SPECIAL MASTER GARRIE:  I mean, I thought      02:04:42

 6    that -- you know, fair enough.  I think there's

 7    just a -- so we can take a break.  Everybody get

 8    lunch.  And we'll put a pin in it and we'll resume.

 9              MS. WEAVER:  Okay.  When do we want to

10    get -- come back?                                       02:04:50

11              MS. LAUFENBERG:  We're still on the

12    record, by the way.

13              THE COURT REPORTER:  Can we go off?

14              THE VIDEOGRAPHER:  Sure.  We're off the

15    record.  It's 2:05 p.m.                                 02:05:01

16              (Recess taken.)

17              THE VIDEOGRAPHER:  We're back on the

18    record.  It's 2:55 p.m.

19         Q.   (By Ms. Weaver)  Hello, Mr. Clark.

20              Did you have a good lunch?                    02:55:21

21         A.   I did.

22         Q.   Okay.  You know that you're still under

23    oath, right?

24         A.   That is correct.

25         Q.   Okay.  I'd like to ask you to just turn       02:55:29
```

Page 157

```
 1    ███████████████████████████████                    05:02:54

 2    Instead, it is a ████████████████████████

 █    ██████████████████████████ can make ████

 █    ████████████████████████████████ as per

 5    our ███████████████████████                         05:03:10

 6              "It is ██████████████████████████

 █    █████████████████████████ because of its

 8    ████  even though it █████████████████████

 █    █████████████████████████████████ ."

10         Q.   Personal --                               05:03:37

11         A.   "For example" --

12         Q.   I'm sorry.

13              Go ahead.

14         A.   "For" -- I'm just reading it slow to make

15    sure -- "For example, ████████████████ is a         05:03:42

16    ██████████████████████████████████████████

 █    ██████████████████ in such a way that it could

18    ████████████████████████████████ ."

19         Q.   Do you have an understanding that the

20    definition of personal information, under the       05:04:08

21    CCPAA, is any information that can be reasonably

22    linked or associated with an individual?

23              MR. BLUME:  Objection.  Calls for a legal

24    conclusion.  Form.

25              THE DEPONENT:  I -- I -- I -- that one, I   05:04:42
```

Page 217

```
 1    can't answer that.  But I can answer that I believe        05:04:43

 2    that's part of why we make UII even broader.

 3         Q.   (By Ms. Weaver)  Broader than what?

 4         A.   Specific -- when you get to the

 5    definition of UII meaning both types of data, but          05:04:55

 6    combinations of types of data.

 7         Q.   Okay.  As you sit here today, can you

 8    state what personal information is under the CCPAA,

 9    as referenced in this document?

10         MR. BLUME:  Objection.  Form.  Scope.               05:05:18

11    Calls for a legal conclusion.

12         THE DEPONENT:  I -- I can't quote the

13    CCPA off the top of my head.

14         Q.   (By Ms. Weaver)  So you don't know what

15    the definition of "is personal information under          05:05:28

16    the CCPA" as referenced in this document?

17         A.   As -- as I just am seeing this document

18    for myself, I -- I'm familiar with personal

19    information under CCPA, but just don't -- don't

20    have that analysis or didn't prepare for -- to          05:05:45

21    answer that question.

22         Q.   Do you know what personal infor- -- how

23    personal information is defined under the CCPA?

24         MR. BLUME:  Objection.  Calls for a legal

25    conclusion.  Form.  And scope.                           05:06:03
```

Page 218

```
 1              THE DEPONENT:  I -- I don't know how to        05:06:15

 2      answer that.

 3              I -- in -- in my personal experience, I

 4      would work with product counsel and counsel.  And

 5      in that definition, I -- I -- as I said, I did not    05:06:24

 6      prepare to have an answer for that today.

 7          Q.  (By Ms. Weaver)  Okay.  So it's really --

 8      this really is very simple.  It's a yes-or-no

 9      question.

10              As you sit here today, can you define         05:06:33

11      personal information under the CCPA?

12              MR. BLUME:  Same objections.

13              THE DEPONENT:  I'm -- I'm truly

14      struggling to answer that, but -- I have prepared

15      context.  But I can't answer yes or no to that.      05:06:43

16          Q.  (By Ms. Weaver)  Isn't the answer "no,"

17      that you don't know, as you sit here today, how

18      CCPA defines personal information?

19          A.   I do in my personal experience and as I

20      work as a product manager day-to-day, but I do so    05:06:57

21      with guidance and direction from counsel.  And I --

22      I didn't -- I don't have a prepared answer or

23      didn't prepare to answer it in this context.

24          Q.   Well, what is your personal understanding

25      of what personal information is under the CCPA?      05:07:11
```

Page 219

```
1          A.   As I said, I've worked with counsel on        05:07:32

2     that.  I just -- I don't have it at the end of the

3     day for you.

4               If -- if you'd like to put it up, I can

5     read what it is.  I just -- I don't have that         05:07:40

6     answer right here in front of me.

7          Q.   Okay.  So that's fine.

8               So the answer is you don't know, right?

9               MR. BLUME:  Same objections.

10              THE DEPONENT:  As a representative of          05:07:52

11    Facebook, I didn't prepare to answer that.  In my

12    personal experience, I work with it.  But I -- I

13    just -- I can't articulate it right now.  So I --

14         Q.   (By Ms. Weaver)  So the answer is, as you

15    sit here right now, you don't know what the            05:08:11

16    definition of personal information under the CCPA

17    is, correct?

18              In your personal or in the corporate

19    capacity; is that right?

20              MR. BLUME:  Objection.  Scope.               05:08:21

21              You can answer yes or no in your personal

22    capacity.

23              THE DEPONENT:  In -- in my personal

24    capacity, I work with product counsel on a regular

25    basis on the definition of what personal              05:08:31
```

Page 220

```
 1    information is under CCPA, which is a long and        05:08:33

 2    nuanced answer in the context of working with that

 3    data every day, because I have come up with and

 4    developed that definition under guidance and

 5    direction of counsel.                                 05:08:45

 6             In my personal experience, I -- I -- I

 7    did not prepare to answer that question, so I

 8    cannot answer that I don't know.

 9        Q.   (By Ms. Weaver)  Okay.  Well, so -- we

10    have a 30(b)(6) deposition here.  You've asked for    05:09:03

11    this document that refers to personal information

12    under CCPA, which is part of the definition of UII,

13    which is within the scope of what data is deleted,

14    and I'm just answering -- I'm just asking, for

15    the jury, can you tell me today, as you sit here,     05:09:20

16    how does Facebook define personal information?

17             MR. BLUME:  Objection.  Form.  And scope.

18    And calls for a legal conclusion under the CCPA.

19             THE DEPONENT:  And I -- I really am

20    trying to be responsive.  And that's why I'm making   05:09:39

21    sure that it's on the record that I'm answering

22    that I don't know.  In --

23        Q.   (By Ms. Weaver)  Okay.

24        A.   -- preparation for this, I came prepared

25    to answer the things related to question 4.  And      05:09:48
```

Page 221

```
1    am -- am not counsel and can't make a legal          05:09:52

2    conclusion to that.

3        Q.   I'm not asking for a legal conclusion.

4            I am asking for Facebook's understanding

5    of what personal information is.                      05:10:03

6        A.   And as -- as I've already identified, it

7    wasn't in the scope of what I prepared in the

8    context of this deposition for the jury.

9            MS. WEAVER:  And, Rob, why is it that you

10   think the definition of personal information is not   05:10:23

11   within the scope of user data and information?

12           MR. BLUME:  It's defined in the CCPA,

13   which is a statute, and that is the definition.

14   Whether he can articulate it word for word or

15   whether he refers to the CCPA's definition is what    05:10:37

16   it is under the statute.

17           MS. WEAVER:  I believe this is what --

18           (Simultaneously speaking.)

19           MR. BLUME:  That is the definition --

20           MS. WEAVER:  Rob, if you listen to the        05:10:46

21   question -- because you're objecting off point.

22           Could you please read back --

23           MR. BLUME:  Your -- your question was --

24           SPECIAL MASTER GARRIE:  All right.  Stop.

25   We are not going off the rails.  We are way too far   05:10:52
```

Page 222

| | | |
|---|---|---|
| 1 | into this today. | 05:10:55 |
| 2 | So read the question back. | |
| 3 | Counsel Blume, if you want to respond, and you feel | |
| 4 | you're responding, please do so.  And we'll note | |
| 5 | the objection for the record and we will then move | 05:11:05 |
| 6 | forward. | |
| 7 | MS. WEAVER:  The question is at page 196, | |
| 8 | line 9. | |
| 9 | MR. BLUME:  Can you read it again? | |
| 10 | SPECIAL MASTER GARRIE:  196. | 05:11:31 |
| 11 | MR. BLUME:  The question I have is -- | |
| 12 | MS. WEAVER:  I'm sorry.  It's line 3. | |
| 13 | MR. BLUME:  Yeah, I'm -- I'm -- you're | |
| 14 | asking me -- I'm happy to read the question. | |
| 15 | "So the answer is, here right now, you | 05:11:37 |
| 16 | don't know what the definition of personal | |
| 17 | information is" -- | |
| 18 | MS. WEAVER:  Rob. | |
| 19 | MR. BLUME:  -- "under the CCPA; is that | |
| 20 | correct?" | 05:11:44 |
| 21 | That's the question. | |
| 22 | MS. WEAVER:  Rob, it's line 3. | |
| 23 | I'm not asking for a legal conclusion. | |
| 24 | This is the question:  What is Facebook's | |
| 25 | understanding of what personal information is? | 05:11:51 |

Page 223

```
 1                MR. BLUME:  He said it was the CCPA.  And        05:11:55

 2     that's a statute that you're --

 3                (Simultaneously speaking.)

 4                MS. WEAVER:  Okay.  But you're not

 5     testifying, Mr. Blume --                                    05:11:59

 6                SPECIAL MASTER GARRIE:  Wait.  Wait.

 7     Everybody just -- for some reason you guys

 8     interpret my silence as a permission to keep

 9     talking.

10                The objection is pending.  I hear it.           05:12:06

11     And we will go from there.

12                Counsel Weaver, what was -- so I'm

13     looking at this.  You asked a question to the

14     witness.  The witness -- all right.  It says "I'm

15     not asking for a legal conclusion.  I'm asking for        05:12:25

16     Facebook's understanding of what the personal

17     information.

18                And then there's an answer.

19                And what is your -- your -- and then --

20     so help -- walk -- work with me.                          05:12:36

21                So what is the issue, Counsel Weaver?

22                MS. WEAVER:  I would like an answer to

23     the question of what Facebook's understanding of

24     personal information is.

25                SPECIAL MASTER GARRIE:  Okay.  That is         05:12:46
```

Page 224

```
 1      the question that is pending to the witness.           05:12:48

 2              Is there an objection, Counsel Blume?

 3              MR. BLUME:  The objection is to the

 4      extent it calls for a legal conclusion.

 5              SPECIAL MASTER GARRIE:  Noted --              05:13:00

 6              MR. BLUME:  That is -- that's -- that's

 7      my objection.

 8              SPECIAL MASTER GARRIE:  Noted for the

 9      record.

10              Mr. Clark, please answer the question to     05:13:06

11      the best of your ability.

12              THE DEPONENT:  To -- to the best of my

13      ability, as a representative of Facebook, I -- I

14      didn't prepare for that in -- in the context of

15      answering No. 4.                                     05:13:18

16              In my personal experience, the definition

17      that I have, I have gotten in working under

18      guidance and direction of counsel for the sake of

19      product work.  And -- and I -- I don't know what I

20      can say and what I can't say.                        05:13:39

21              I'm -- if -- if I were asked and even if

22      I were read is the CCPA definition of this, this,

23      then I could give an observation or factual answer,

24      I could answer that.  But understanding implies

25      much more --                                         05:14:03
```

Page 225

```
 1              SPECIAL MASTER GARRIE:  Counsel Weaver,     05:14:05
 2    you can follow --
 3              THE DEPONENT:  -- than what I had
 4    prepared.
 5              SPECIAL MASTER GARRIE:  Go ahead.  Sorry.   05:14:08
 6    I didn't mean to interrupt.
 7              THE DEPONENT:  Oh, than -- than what I
 8    had prepared for.
 9              SPECIAL MASTER GARRIE:  Counsel Weaver.
10              MS. WEAVER:  This is a fundamental         05:14:18
11    question to the case and relates directly to the
12    data that is deleted and collected by Facebook.
13              What is Facebook's definition of personal
14    information?
15              I'm not asking for a legal conclusion.     05:14:27
16    I'm just asking --
17              SPECIAL MASTER GARRIE:  Hey.
18              MS. WEAVER:  Yeah.
19              SPECIAL MASTER GARRIE:  The witness
20    testified he's not prepared to answer that on       05:14:33
21    behalf of Facebook as the witness -- I mean, I can
22    read you back what he said, but -- I mean --
23              MS. WEAVER:  Okay.  Well, I'll move on.
24    Sanctionable.
25        Q.   (By Ms. Weaver)  Looking at this           05:14:49
```

Page 226

```
 1    deposition.                                        05:31:14

 2           MR. BLUME:  Refresh his recollection.

 3    Okay.  Presumably, if he didn't know it before the

 4    deposition, then it wouldn't be refreshed.  But

 5    okay.                                              05:31:24

 6           And Mr. Garrie, if I could be heard for a

 7    moment.

 8           SPECIAL MASTER GARRIE:  Yes.  Do you want

 9    the witness to stay?

10           MR. BLUME:  It doesn't matter.             05:31:34

11           SPECIAL MASTER GARRIE:  Okay.

12           MS. WEAVER:  It might matter to him.

13           MR. BLUME:  He can go, if he wants.

14           THE DEPONENT:  I'll be back.

15           MR. BLUME:  I just -- I just want to make   05:31:44

16    sure that we're not chasing --

17           THE VIDEOGRAPHER:  Did you want -- did

18    you want to go off the record or keep this on?

19           MR. BLUME:  On -- on the record, please.

20           THE VIDEOGRAPHER:  On the record.  Okay.    05:31:53

21           MR. BLUME:  To make sure that we're not

22    chasing windmills here.

23           The definition of personal information,

24    under the CCPA, which is the cite in this document

25    specifically, is about 330 words with three        05:32:06
```

Page 239

```
 1    sections and ten subsections referencing no fewer        05:32:13

 2    than three other statutes, including the California

 3    constitution.

 4            And so to expect any witness, even a

 5    30(b)(6) witness, to recite all of that by memory        05:32:25

 6    is an unreasonable request when the definition,

 7    quote, personal information, close quote, as is set

 8    forth in Exhibit 359 has a specific cite as to what

 9    it means per the -- under the CCPA.  And the CCPA,

10    as I mentioned, has a very long and complicated         05:32:47

11    definition of what that means.

12            And so claiming that he should not -- he

13    should be able to recite it by memory, I think, is

14    unreasonable.  And it is also -- I will also note,

15    as he testified to all day, the term "personal          05:33:04

16    information" is not a necessary -- the definition

17    of that is not necessary to understand this

18    document.  It's a comparative reference with the

19    definition cited, should that comparison need to be

20    made.  But does not define the terms used by            05:33:21

21    Facebook, which is UII and/or user data.

22            Thank you.

23            We have nothing further.

24            SPECIAL MASTER GARRIE:  Well, I -- yeah,

25    I -- again, I was just -- I was just processing         05:33:39
```

```
1    what was said.                                          05:33:41

2              Okay.  Noted for the record.

3              But the definition of how Facebook

4    defines personal information, I would go with being

5    a critical concept for the -- the case as its          05:34:00

6    entirety.  And so for Facebook, it may -- I'll

7    leave it to the parties, having read the

8    stipulation to -- having reserved all the time and

9    allocated accordingly -- to have this conversation

10   among themselves, but I would -- I would encourage     05:34:21

11   the idea of producing a witness that can define how

12   Facebook defines personal -- personal --

13             MR. BLUME:  If I may, Your Honor --

14             SPECIAL MASTER GARRIE:  -- information.

15             MR. BLUME:  Yeah.  If I may --              05:34:36

16             MS. WEAVER:  You're interrupting him.

17             MR. BLUME:  How -- if I may, personal

18   information is defined by Facebook as it sets forth

19   in Exhibit 359.  That is the definition under the

20   CCPA.  Facebook does not use the term "personal       05:34:45

21   information."  That's why we -- it -- as the

22   witness said, the Facebook term for that -- for

23   something that subsumes personal information is

24   UII.  That is the term that Facebook uses.  And

25   it's important to note, that as the document --       05:35:03
```

Veritext Legal Solutions
866 299-5127

```
 1                SPECIAL MASTER GARRIE:  But --           05:35:07

 2                MR. BLUME:  -- says, UII does not

 3      directly map to personal information, so...

 4                SPECIAL MASTER GARRIE:  Well, that's --

 5      that's where I got confused.                       05:35:11

 6                So if someone who does know the CCPA and

 7      the different articles and can recite it to you, I

 8      have a serious concern with the very construct that

 9      it subsumes the definition of personal information,

10      so I would expect that Facebook --                 05:35:21

11                MR. BLUME:  Well --

12                (Simultaneously speaking.)

13                SPECIAL MASTER GARRIE:  -- can product a

14      witness -- don't interrupt me again.  You interrupt

15      me again and we will have a problem.               05:35:27

16                MR. BLUME:  Okay.

17                SPECIAL MASTER GARRIE:  Okay.  Thank you.

18                MR. BLUME:  Okay.

19                SPECIAL MASTER GARRIE:  Thank you very

20      much.                                              05:35:34

21                So what I'm trying -- and what I was

22      saying is that it subsumes the definition.

23      Thereby, they must have some understanding of what

24      constitutes personal information.

25                I have reviewed countless exhibits and   05:35:44
```

| | |
|---|---|
| 1 | materials your client has produced referencing | 05:35:47 |
| 2 | personal information as a term and a concept. |
| 3 | Whether or not you personally want to take a |
| 4 | position on behalf of your client that they have no |
| 5 | position as to what personal information is in the | 05:35:58 |
| 6 | 786-plus documents that I can cite to you that use |
| 7 | the term "personal information" is a bit |
| 8 | disconcerting to me. |
| 9 | But with that even said, I still expect |
| 10 | that Facebook would feel incentivized to provide a | 05:36:12 |
| 11 | witness that could attest to how it defines the |
| 12 | concept of personal information, which is subsumed |
| 13 | by this broader construct.  Because I can't exactly |
| 14 | understand how they are differentiating the two. |
| 15 | And I read the exhibit and I heard the testimony. | 05:36:28 |
| 16 | So I advise you to take this under |
| 17 | advisement accordingly before I order it.  And I |
| 18 | will encourage you again that whatever witness -- |
| 19 | if he's not prepared to testify as to how Facebook, |
| 20 | as a corporate representative, defines personal | 05:36:45 |
| 21 | information, that's noted for the record and will |
| 22 | be reflected accordingly as one of your comments. |
| 23 | We're done.  We're off the record. |
| 24 | MR. BLUME:  All right.  I do not mean -- |
| 25 | SPECIAL MASTER GARRIE:  Thank you very | 05:36:58 |

Page 243

```
 1    much.                                                05:36:58

 2              MR. BLUME:  I did not mean subsumed.  I

 3    meant to read the document, which is directly --

 4    does not directly map to personal information.

 5    That is how we define the term.                      05:37:06

 6              SPECIAL MASTER GARRIE:  Right.  I know.

 7    But it -- so I've read the documents, actually, all

 8    of them.  And there is -- if Facebook's position is

 9    they cannot define what personal information is,

10    that is fine.                                         05:37:21

11              (Simultaneously speaking.)

12              MR. BLUME:  That's not --

13              SPECIAL MASTER GARRIE:  They can go on

14    the record -- all that was asked is how Facebook

15    defined personal information and he said he is not   05:37:28

16    prepared to testify to that.

17              I said that is fine.  Right.  I said that

18    is fine.  I understand it was a concept of that

19    document.  But the question was a broader question

20    asked by the attorney and the witness stated that   05:37:40

21    they were not prepared -- maybe there was

22    confusion.  Maybe there wasn't.  Fine.

23              My point is, is Facebook would -- I would

24    recommend find a witness that can define how

25    Facebook, the company, defines personal              05:37:55
```

Veritext Legal Solutions
866 299-5127

```
 1    information.  That's it.                        05:37:58

 2            There's no further conversation.

 3            MR. BLUME:  Under- -- understood.

 4            And with all due respect, it's -- he --

 5    all he said was he couldn't reflect -- he couldn't    05:38:05

 6    testify to the definition under the CCPA, which is

 7    how it's referenced in this document.  That is his

 8    testimony.

 9            SPECIAL MASTER GARRIE:  Well, there was

10    actually multiple -- there -- there -- well, it     05:38:17

11    doesn't matter.  The testimony is captured for the

12    record and -- and I read 196, line 3, accordingly,

13    with the subsequent six lines of answers, as well

14    as the four other references.

15            But that's neither here nor there.  And I    05:38:27

16    will leave it in the hands of counsel to review it.

17            All I'm saying to Facebook is, find a

18    witness that can define what personal information

19    is, if there is not an agreement on this.  Because

20    I get a lot of briefs from everybody citing to this    05:38:43

21    constructs of personal information and not personal

22    information, as does Judge Chhabria.  And if your

23    client doesn't have a definition, we'd all like to

24    know.

25            So with that in mind, we're going to go     05:38:55
```

Page 245

```
1    off the record.  Call it a wrap for the day and we        05:38:58

2    will continue forward with other depositions.

3    That's all I'm telling for the record.  Okay.  All

4    done.

5              THE VIDEOGRAPHER:  Okay.  We're off the          05:39:11

6    record.  It's 5:39 p.m.

7              (TIME NOTED:  5:39 p.m.)

8

9

10

11

12                        ---o0o---

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 246