# EXHIBIT 12
**Redacted Version of**

**Document Sought to be Sealed**

# Exhibit B

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' RESPONSE TO FACEBOOK'S OBJECTIONS TO 30(b)(6) TOPICS 2, 6, 7, 8 WRITTEN QUESTIONS**<br><br>Judge: Hon. Vince Chhabria<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674 |

**Briefing for Cross Topics 6 & 7[1]**

**A.     General responses**

**1.     Plaintiffs were not required to have asked the precise question**

*Response on objections to Topics 2 & 8 questions 5, 7a, 8a(iii), 9b, 12 & 12e, 15 & 15i, 16a-d, 20a, 20f(i), 20i(i), 20o(i)(1), 20o(vi)(1), and 20o(vii)(1) & (vii) (1)(a), and Topics 6 & 7 questions 1, 1a–h, 1j–k, 2a–q, 3–5, 6b, 8, 8b–d, 9–10, 10a–b, 16.*

Simon Cross was unprepared to testify on many portions of Topics 2, 8, 6 and 7.Before moving to compel Facebook's testimony, as Plaintiffs were entitled to do, Plaintiffs agreed to provide written questions to Facebook to answer. Facebook now contends it can avoid those questions because Plaintiffs did not ask the precise question at issue during Cross's deposition. This objection is manufactured.. Facebook did not assert it while the deposition was ongoing (when Plaintiffs could have cured it), and it does not arise under federal law. *See* Fed. R. Civ. P. 30(b)(6).

Asking the questions would have been futile. Plaintiffs' transcript citations, which satisfy Special Master Garrie's instruction, demonstrate that Cross was not prepared on the general subject matter of the questions. (Facebook does not contend that Cross could have answered the questions if asked.[2]) Plaintiffs were not required to ask follow-up questions of an unprepared witness. For example, Topics 6 & 7 questions 1 and 1a-h ask why third parties received extended or exempted access to friend information after 2017. Facebook objects that Plaintiffs did not ask about these specific apps. But Plaintiffs did ask several questions about why apps received extended access generally. *See, e.g.*, Cross Tr. at 689:17–23. Cross testified he was "not sure how each of these extensions was – was granted." *Id.* Why would Plaintiffs have wasted time with more specific follow-up? Facebook cannot avoid answering these relevant questions on grounds that Plaintiffs didn't ask questions Cross demonstrated he couldn't have answered during the deposition.

**2.     Rule 30(b)(6) requires Facebook to investigate and respond to Plaintiffs' questions**

*Response on objections to Topics 2 & 8 questions 9a-b, 12e, and 15i, and Topics 6 & 7 questions 1a–1h, 2a–q, 4, 5, 8e*

Plaintiffs volunteered specific written questions in part to relieve Facebook's asserted burden concerns. Facebook now objects to these questions as burdensome. It is Rule 30(b)(6), and not Plaintiffs' questions, that impose that burden. A "corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition." *Bowoto v. ChevronTexaco Corp.,* No. C 99–02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006).

---

[1] Attachment A is Plaintiffs' numbered questions. Attachment B is Facebook's answers and objections.

[2] If Facebook now contends that Cross was in fact prepared to answer these questions, then responding at this time should present no burden.

This duty requires corporations "to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Adidas Am., Inc. v. TRB Acquisitions LLC*, 324 F.R.D. 389, 394 (D. Or. 2017) (quotation omitted). Because a corporate designee is "speaking for the corporation, and not as an individual," Rule 30(b)(6) "imposes a significant duty upon the organization to educate the deponent prior to the deposition." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2009 WL 3809815, at *3 (N.D. Cal. Nov. 10, 2009). The duty is necessary "to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial. This would totally defeat the purpose of the discovery process." *Id.* (quotation omitted).

Proper preparation requires significant time and effort. "Even if the documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Molex v. City & Cty. of San Francisco*, No. C-4:11-1282-YGR KAW, 2012 WL 1965607, at *2 (N.D. Cal. May 31, 2012). Concerns about "memory contests" are relieved here because Facebook is providing written responses. In many instances, moreover, Plaintiffs requested a subset of information (for example, information about a few apps) to reduce the burden. Accordingly, Facebook's generalized "burden" objections are no excuse; Rule 30(b)(6) depositions require such efforts.

### 3. Facebook must provide corporate testimony
*Response on objections to Topics 6 & 7 questions 1, 9–10, 11–12, 14–16*

Facebook objects that certain questions were answered, citing excerpts that Cross specified as "personal capacity testimony." Facebook also tells Plaintiffs to pose their questions to a non-corporate deponent. Facebook's objections deeply misunderstand Rule 30(b)(6). Rule 30(b)(6) entitles Plaintiffs to Facebook's *corporate* testimony on relevant topics. *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 2395941, at *1–2 (N.D. Cal. May 19, 2015). Cross's personal testimony, or personal testimony from another witness, cannot satisfy Facebook's duty. Therefore, such testimony cannot excuse Facebook from answering Plaintiffs' questions in a corporate capacity.

This objection subverts the very purpose of Rule 30(b)(6). Rule 30(b)(6) is designed to "'curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge' of relevant facts." *Black Horse Lane Assoc. v. Dow Chem. Corp.*, 228 F.3d 275, 303 (3d Cir. 2000) (quotation omitted). Bandying is not a theoretical concern in this case. For example, Cross recommended that Plaintiffs' counsel direct certain questions to Jackie Chang, including as to the meaning of "Future integrations in planning." Cross Tr. 267:13–24. Plaintiffs' counsel had asked Chang, and she disclaimed any knowledge. *See, e.g.*, Chang Tr. 103:17–20 (Q: . . . And the third bullet is: "Future integrations in planning." Do you know what that refers to? A. I don't remember.). Rule 30(b)(6) is designed to correct, not exacerbate, this problem; Facebook cannot rely on other fact witnesses to bridge Cross's gaps.

Whether Cross personally drafted the document or verified the interrogatory is irrelevant. "The duty to prepare a Rule 30(b)(6) designee goes beyond matters personally known to the witness or to matters in which the designated witness was personally involved." *Great Am. v.*

*Vegas Construction*, 251 F.R.D. 534, 539 (D. Nev. 2008) (collecting cases). "It is not expected that the designee have personal knowledge as to all relevant facts; however, the designee must become educated and gain the requested knowledge to the extent reasonably available." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486–87 (N.D. Cal. 2012) (quotation omitted). Therefore, Facebook cannot object on grounds that its 30(b)(6) designee did not, for example, personally sign the interrogatory (Topics 6 & 7 question 1) or create the PowerPoint (Topics 6 & 7 questions 11–12, 14–16). In sum, only corporate testimony will suffice, and the Special Master should order Facebook answer these questions in its corporate capacity.

### 4. The Designee Must Answer Questions Even If Facebook Objects Because They Are Beyond The Scope Of The Notice

*Response on objections to Topics 2 & 8 questions 20l (and all subparts), 20m (and all subparts), 20o(vii), (i)-(ii) & (ii)(1)-(2), and Topics 6 & 7 questions 6, 6a–b, 8, 8a–e.*

Each of the Topic 2 and 8 questions Facebook objects to as out of scope concern general descriptions of the types of values that could be entered into columns in the Capabilities Tool, as well as related questions concerning how the value system was created, who created it, and what the values mean. Though Facebook objects that these questions do not seek "the type and categories of information in the spreadsheets based on a representative sample," that is, in fact, precisely what they seek. Facebook's scope objections for Topic 6 & 7 questions are addressed individually below.

But even if these questions *are* outside of the scope of the topics, Facebook's designee is still must answer them to the best of his ability. Objections based on questions exceeding the scope of the 30(b)(6) notice "cannot be used to limit what is asked of the designated witness at a deposition." *UniRam Technology, Inc. v. Monolithic Sys. Tech, Inc.,* No. C 04-1268, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007); *see also, e.g.*, *Baird v. Blackrock Inst. Trust Co., N.A.*, No. 17cv01892, 2019 WL 365845, at *1 (N.D. Cal. Jan. 30, 2019) (citing cases). Rather,"[t]he 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Id.* The only exceptions to the general rule requiring a deponent, including at 30(b)(6) designee, to answer questions is where preventing testimony is "necessary to preserve a privilege, enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 366 (N.D. Cal. 2000). None of those circumstances are at issue here.

Nothing distinguishes these rules in the context of Rule 31. Indeed, Rule 31(a)(4) directly contemplates questions directed at an organization "in accordance with Rule 30(b)(6)." Because there is no instruction otherwise in the Rule, the committee notes, or the governing caselaw, the rules applicable to objections in 30(b)(6) depositions apply to such testimony elicited via Rule 31. If Facebook believes the questions are beyond the scope of the notice, it may state its objection with its written response, as it would during in-person 30(b)(6) testimony. That would preserve its ability to "request from the trial judge jury instructions that such answers were merely the answers or opinions of individual fact witnesses, not admissions of the party." *Detoy*, 196 F.R.D. at 367.

**5.     Plaintiffs Are Entitled to Discovery in the Form They Seek**

*Facebook objects to Topics 2 & 8 questions 20f and f(i) and Topics 6 & 7 questions 6 & 6(a) by stating that the information is better sought through another discovery device.*

This is an improper objection. Facebook has not identified any basis permitting it to select the form in which Plaintiffs seek information through discovery. Two of these questions, which are related, are aimed at identifying the documents that are the source of the information Plaintiffs seek, which will streamline Facebook's ability to produce them quickly.  See Topics 2 and 8 questions 20f and 20f(i) (questions about documents reflecting the process of creating the ▮▮▮▮▮▮▮▮▮▮ reflected in Column Z of the Capability Table). Thus, Facebook's proposal that Plaintiffs seek these via document request is not only improper but would merely delay their inevitable production. Facebook would have 30 days to respond to those document requests, and those requests may require additional meet and confers before production. Facebook's request that Plaintiffs first serve formal requests for this information fetishizes process over the production of obviously relevant materials.

Regarding the other three questions, Facebook proposes that Plaintiffs serve contention interrogatories. Not only is it Plaintiffs' prerogative to seek evidence in the manner of their choosing, but the number of interrogatories are limited by Rule 33. Posing these questions as interrogatories would reduce Plaintiffs' ability to seek other discovery through interrogatories. Facebook may have up to 30 days to respond, which would further delay its response. Moreover, Facebook may choose to lodge a series of other objections in response to any such interrogatories, delaying the response time still further.

## B.     Additional question-specific responses

### 1.     Topics 2 and 8 Questions

**5**. Facebook objects that this is a production question that should be directed to counsel. Plaintiffs disagree. Counsel's representations are not at issue. Rather, Facebook should provide testimony regarding whether the ▮▮▮▮▮▮▮▮ documents produced reflect what is available internally. Further, if the produced documents do not include all information available internally, Facebook should testify regarding what is missing.

**7a**. Facebook objects that the question is unclear. That objection only makes sense if preceding question number 7 is ignored. In context, the question is clear.

**12, 12e, 15, 15i.** Facebook objects on the ground that the ▮▮▮▮▮▮▮▮▮▮ Tables do not contain data from the relevant time period. Plaintiffs disagree. Moreover, even crediting Facebook's position, information about what Facebook was later able to capture about user information requested by and shared with third parties will help illustrate what it did not capture earlier.

### 2.     Topics 6 and 7 Questions

**1.** This question was not answered. This question seeks the "case by case" reasoning for the apps that received access to friend information after 2017. Cross's answers did not provide case-by-case reasoning. His answers may explain why "some" of these apps were granted access in the first place, but they do not explain why the apps continued to receive access after 2017—two years after the May 2015 "breaking change."

**1a–h.** These questions are not unduly burdensome. They do not ask Facebook to investigate every entity with access to friend information. Although Plaintiffs believe they are entitled to such information, Plaintiffs specified these apps in order to reduce Facebook's burden.

**1k.** Cross did not directly answer this question. Facebook must investigate and answer this straightforward, relevant question in its corporate capacity.

**2.** Facebook has not answered this question for each app. Cross provided general answers for "some" apps. Cross did not explain why Facebook gave extensions to preserve some user experiences, but not others. Moreover, if Facebook's interrogatory responses are correct, then this question does not ask for information about very many applications.

**2a–q.** Plaintiffs identified specific apps in order to alleviate Facebook's burden, even though Plaintiffs believe they are entitled to this information for all apps with private API access.

**3.** Facebook's objections do not bar testimony in the context of a deposition. Plaintiffs seek to understand whether Facebook provided friend information to apps, experiences, or integrations developed after April 2014. If the question indeed covers many apps, Plaintiffs are entitled to that information.

**4.** Cross was unable to testify as to the contracts that existed for private APIs. Cross Tr. 606:7-22. Plaintiffs do not seek a legal conclusion but rather an understanding of which third parties with extended or exempted access to friend information after 2014 lacked a contract with Facebook that addressed that access.

**5.** Topic 6 includes "the revenue impact and net profits for Facebook relating to Friend Sharing." The term "relating to" is broad. Contrary to Facebook's interpretation, the term does not comprise solely this-for-that exchanges. This question is not unduly burdensome. This information is relevant to Plaintiffs' claims, and it is inconceivable that FB cannot quickly and easily identify revenue received from whitelisted third parties. Indeed, Exhibit shows FB doing just that identification for certain third parties. *See* Cross Tr. 651:9–653:23.

**6, 6a–b.** The term "breach of trust" is a term Facebook used in its own communications. Cross Tr. 666:16–25. Plaintiffs are entitled to Facebook's position. "A Rule 30(b)(6) deponent testifies as to . . . the corporation['s] subjective beliefs and opinions and interpretation of documents and events." *Stevens v. Corelogic, Inc*., No. 14CV1158, 2016 WL 397936, at *3 (S.D. Cal. Feb. 2, 2016) (quotation omitted). Questions about Facebook's position on its Topics 6 & 7 conduct are necessarily within the scope of those topics.

**7.** Facebook's cited excerpts do not answer this question. Vague testimony on "a number of discussions" and "one of those reasons" is incomplete, unless Facebook's answer is "no." Plaintiffs seek testimony from this witness because the ADI investigation began in 2018; this question asks about Facebook's contemporaneous knowledge.

**8.** This question falls within Topic 7, which calls for testimony on whitelisted apps or partners "and whether the access granted exceeded the Use Case." Plaintiffs would accept an corporate answer from Facebook's ADI 30(b)(6) witness.

**8a.** This question falls within Topic 7, which calls for testimony on whitelisted apps or partners "and whether the access granted exceeded the Use Case." Cross did not answer this question: Cross described a process to determine whether access should continue, not an investigation of how apps had exceeded the use case.

**8b–d.** This question falls within Topic 7, which calls for testimony on whitelisted apps or partners "and whether the access granted exceeded the Use Case." Facebook should respond to the extent its answer does not solely pertain to ADI.

**8e.** Facebook objects that deponent cannot know "how each of thousands of potential third parties may have used user data." As an initial matter, Plaintiffs seek Facebook's knowledge, not Simon Cross's individual knowledge. In any event, this question asks about just one app. This question falls within Topic 7, which calls for testimony on whitelisted apps or partners "and whether the access granted exceeded the Use Case," i.e., whether the third party misused the data.

**9.** Cross provided an incomplete answer, merely "attempt[ing] to enumerate some examples." Plaintiffs request complete, corporate testimony.

**10.** As Facebook's cited excerpts reveal, Cross was "not aware of the details of" the identification and would "actually be speculating" to confirm any further. "A party producing a Rule 30(b)(6) witness must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *Louisiana Pac.*, 285 F.R.D. at 486–87. Plaintiffs made this task easier on Facebook by providing documents in advance. Cross should have been prepared to provide corporate testimony on this document. Plaintiffs are entitled to an informed answer.

**11.** As Facebook's cited excerpts reveal, Cross said that to answer the question he would "actually be speculating." Personal speculation does not satisfy Rule 30(b)(6),

**12.** As Facebook's cited excerpts reveal, Cross was "not fully aware of" the factors that prompted the audit. Instead, he could only share his "personal perspective" on "one of the drivers." As explained above, under Rule 30(b)(6), this incomplete, personal testimony does not suffice.

**13.** This question was not answered. Cross does not answer the question in the excerpts Facebook cites in its objections: "Reduc[ing]" and "managing" the capability-app pairs is not the same as reviewing them in an audit.

**16.** Plaintiffs repeatedly sought corporate testimony on the meaning of strategic partner, a term Facebook uses repeatedly. Cross himself was a "Strategic Partner Manager." Plaintiffs are entitled to informed corporate testimony on the meaning of a phrase used in critical documents explaining how FB made whitelisting decisions.

# Exhibit A

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **QUESTIONS FOR FACEBOOK'S 30(B)(6) DESIGNEE TO TESTIFY ON TOPICS 2(A), 2(C), 6, 7, AND 8** |

**A.  Questions for Facebook's 30(b)(6) designee to testify on Topics 2(a), 2(c), and 8. Plaintiffs are willing to accept written responses for each of the questions on these specific topics.**

*Issue for additional testimony:*
*Actions related to tracking user data undertaken in response to the FTC consent decree*
*Questions:*

1. Facebook's designee testified that the ▮▮▮▮▮ was developed in response to obligations imposed ▮▮▮▮▮▮▮▮▮▮. June 20, 2022 Dep. Tr. at 763:24-764:1.

    a. Which provision of which ▮▮▮▮▮▮ was the ▮▮▮▮ developed in response to?

2. Facebook's designee testified that it redesigned how apps got access to capabilities around 2018 or 2019 in response to concerns raised by the Cambridge Analytica situation and the ▮▮▮▮▮▮▮. *Id.* at 978:1-25.

    a. Which provision of which FTC consent decree was this redesign in response to?

3. Facebook's designee testified that Column I ("████████a") of Exhibit 429 (the Capabilities Table) refers to ███████████████████████. June 22, 2022 Dep. Tr. at 1022:14-24.

   a. Which provision of which ████████ provides the definition of what it means for Facebook to ████████?

4. Facebook's designee testified that Column AD ("████████████") of Exhibit 429 (the Capabilities Table) refers to an "████████████████████████████." *Id.* at 1086:3-1087:16.

   a. Which provision of which ████████ does the "████████████████ ████████████" reference?

*Issue for additional testimony:*
████████████ *and other means to track API calls*
*Questions:*

5. Do the ████████ documents produced to Plaintiffs, Bates Nos. FB-MDL-MTHD-00001-FB-MDL-MTHD-00080, include all available information contained in the ████████

6. Does the ████████ indicate the number of API calls made by each third party for user data?

   a. If so, for what time period?

7. From 2007-present, what is the complete list of ways Facebook recorded information about API calls made by third parties for user data?

   a. For each, please identify the other types of information, in addition to API calls made by third parties for user data, reflected in that way of recording the information.

*Issue for additional testimony:*
*Connecting API methods pertaining to user data to API calls.*
*Questions:*

8. Facebook's designee testified that, when an API call is made, there is a system ████ ████████████████████████████████████ to create the ████████ June 20, 2022 Dep. Tr. at 934: 5-10.

   a. Is there a resource available internally at Facebook that indicates the ████████ that is ████████████ that a Third Party can make?

      i. If so, what is the name of that resource?

      ii.  Does the resource exist in a form that can be produced as a standalone document?

           1.  If not, can the information in that resource that associates API calls with ███████ be extracted?

     iii.  On an annual basis, how many API call/███████ pairs did Facebook maintain, from 2007-present?

*Issue for additional testimony:*
*All ways third parties could access user data.*
*Questions:*

9. Facebook's designee testified it's possible Facebook made user data available to third parties over other means than via Facebook Platform. June 20, 2022 Dep. Tr. at 740:18-744:4.

   a. Please list the ways, other than via Platform or email, that Facebook provided user data for third parties. *See id.* at 743:12-17 (testimony that Facebook was not aware of any "major ways" other than via Platform and email that Facebook would have shared data with third parties).

   b. For each such way — and for email — please identify by category:

         i.  the type of information made available to third parties;

        ii.  the recipients of the information; and

       iii.  the time period during which that type of information was made available to those recipients in that way.

*Issue for additional testimony:*
*For the ███████, the columns in those tables, a description of the information contained in those columns, and the time period reflected by the information in each column.*
*Questions:*

For the first time in this litigation, Facebook disclosed the existence and baseline contents of the ███████. June 20, 2022 Dep. Tr. at 758:5-767:19. Facebook's designee testified that the ████████████████████████████. *Id.* at 762:11-13. Facebook's designee testified that the ████████████████████████████████████████████. *Id.* at 764:17-20. Facebook's designee testified that each was ███████ and ████████████. *Id.* at 759:3-4 (███████), 764:23-25 (███████).

10. Do the ███████ contain information concerning the time period before they became operational? *Id.* at 759: 5-8.

   b. If so, what time period is covered by the data in the ███████?

QUESTIONS FOR FACEBOOK'S          3          MDL No. 2843
30(B)(6) DESIGNEE TO TESTIFY          CASE No. 18-MD-02843-VC-JSC
ON TOPICS 2(A), 2(C), 6, 7, AND 8

11. Was there anything preventing the ████████ from being created ████████? *Id.* at 759:12-761:25.

    c. If so, what prevented the ████████ from being created ████████?

    d. For each thing identified as preventing the ████████ from being created ████████, please identify the time period for which that thing would have prevented the ████████ from being created.

12. Please identify each column in the ████████. *See id.* at 762:14-763:7.

    e. For each column, please describe the information it contains.

13. Do the ████████ contain information concerning the time period before they became operational?

    f. If so, what time period is covered by the data in the ████████?

14. Was there anything preventing the ████████ from being created ████████? *Id.* at 765:9-18.

    g. If so, what prevented the ████████ from being created ████████?

    h. For each thing identified as preventing the ████████ from being created ████████, please identify the time period for which that thing would have prevented the ████████ from being created.

15. Please identify each column in the ████████. *See id.* at 766:6-767:11; 786:10-786:25.

    i. For each column, please describe the information it contains.

*Issue for additional testimony:*
*Ways other than Facebook Login for Third Parties to access user tokens.*
*Questions:*

16. Facebook's designee testified that Facebook Login is the "primary" way by which apps get an access token for a user. June 20, 2022 Dep. Tr. at 874:3-5. It also testified that ████████████████████████████████████████. *Id.* at 875:18-876:1. What other ways did Third Parties get access tokens for users, from 2007-present? For each:

    a. What was the time period during which Third Parties could get access tokens in that way?

    b. What categories of Third Parties could get user tokens in that way?

    c. Why did Facebook enable Third Parties to get user tokens in that way?

QUESTIONS FOR FACEBOOK'S           4           MDL No. 2843
30(B)(6) DESIGNEE TO TESTIFY           CASE NO. 18-MD-02843-VC-JSC
ON TOPICS 2(A), 2(C), 6, 7, AND 8

d. If Facebook stopped enabling Third Parties to get user tokens in that way, why?

*Issue for additional testimony:*
*Follow-up questions regarding the Capabilities Tool*
*Questions:*

17. Facebook's designee testified that, before the Capabilities Tool existed, Facebook used a tool called Pearly Gates to manage some API whitelists and ███████████████ ███████████████████ June 20, 2022 Dep. Tr. at 944:14-23. Does Facebook still have all of the information that was contained in Pearly Gates? *Id.* at 945:1-7.

a. If so:

i. Where is that information now kept?

b. If not:

i. Does Facebook have any of the information that was contained in Pearly Gates?

1. If so, what types of information does Facebook have, where is that information kept, and what time period does it reflect?

2. For any information that was contained within Pearly Gates that Facebook no longer has, when did Facebook delete, destroy, or otherwise lose access to that information?

18. Regarding Exhibit 427:

a. Facebook's designee testified that the Capabilities Tool ██████████████ ████████████████████████. *Id.* at 952:13-953:20. When did this change occur?

b. Facebook's designee testified that there's a ████████████████ associated with an █████████████. How many █████████████ exist? *Id.* at 958:2-19.

c. Facebook's designee testified that the ████████████████ referenced the ███ ███ tool, called the Launch Manager. How long has the Launch Manager been used at Facebook? *Id.* at 960:17-963:10.

d. Facebook's designee testified that it was not sure what the ████████████ ████████ tracks. What does that column track? *Id.* at 963:14-20.

19. Regarding Exhibit 428:

a. What the type of information is identified by column B, "████ *Id.* at 969:2-19.

20. Regarding Exhibit 429:

    a.    Facebook's designee testified repeatedly that numerous columns were added to this document in or around 2018 or 2019. For each, what was the reason it was added at or around those dates?

    b.    How are the entries in Column G, "███████████" populated and filled? June 21, 2022 Dep. Tr. at 1020:9-1021:1.

    c.    Who is responsible for entering the text in Column H, "███████████"? *Id.* at 1021:7-20.

    d.    Why is Column H blank for certain entries? *Id.* at 1021:21-1022:13.

    e.    How does the ███████ team determine whether a given capability ███████ ███ as documented in Column I, "███████████"? *Id.* at 1022:14-20, 1024:23-1025:1.

    f.    Is there any documentation of the process the ███████ team uses to determine whether a given capability ███████████, as documented in Column I? *Id.* at 1022:14-20, 1024:23-1025:1.

        i.    If so, what documents reflect the process?

    g.    What does it mean if the entry "████ is reflected in Column M, "███████████"? *Id.* at 1036:6-1037:19.

    h.    Please describe what the information in Column O, "███████████," reflects? *Id.* at 1038:15-1039:11.

        i.    Are there any circumstances where information is not entered in Column O? *Id.* at 1039:6-11.

        ii.    If so, what are the circumstances?

    i.    In the context of Column P, ███████████████ what are ███████████? *Id.* at 1039:22-1040:23.

        i.    Is that definition of ███████████ consistent with the general definition of that term when used by Facebook in other contexts?

    j.    What does a "████ value in Column Q, "███████████," indicate? *Id.* at 1042:17-1043:12.

    k.    Are the decisions that ███████ made to determine whether to approve a capability captured in Exhibit 429?

QUESTIONS FOR FACEBOOK'S
30(B)(6) DESIGNEE TO TESTIFY
ON TOPICS 2(A), 2(C), 6, 7, AND 8
    6    
MDL No. 2843
CASE No. 18-MD-02843-VC-JSC

      i.  If so, where?

     ii.  If not, are they captured elsewhere in the Capabilities Tool? Where?

l.  What are the entries that can be reflected in Column S, "████████████████"? *Id.* at 1045:7-17, 1046:19-1048:6.

      i.  What does each such entry mean? *Id.*

     ii.  Was anyone involved in the ████████████████ prior to ██████ that resulted in the entries in Column S? *Id.* at 1045:23-1046:3.

          1.  If so, who?

          2.  For each person identified above, when were they involved in the ████████████████ that resulted in the entries in Column S?

m.  Who were the people responsible for entering the content in Column W, ████████████████? *Id.* at 1050:10-1051:1.

      i.  What time period was each of these people responsible for entering content in Column W?

n.  What is meant by the ellipsis in Row 2, Column W of Exhibit 429? *Id.* at 1051:2-12.

o.  Regarding the six potential values in Column Z, ████████"—████████████ █—

      i.  Does ████████████? *Id.* at 1073:13-15.

          1.  What does "████ mean in the context of a ████████?

     ii.  Does ████████████? *Id.* at 1073:16-21.

          1.  What does "████████" mean in the context of a ████████?

    iii.  Does ████████████████? *Id.* at 1074:21-1075:5?

          1.  What does "██████████████" mean in the context of a ████████?

          2.  How is ████████████████ different from ████████████ in the context of a ████████ *Id.* at 1075:10-13.

     iv.  Does ████████████? *Id.* at 1075:18-23.

QUESTIONS FOR FACEBOOK'S         7         MDL No. 2843
30(B)(6) DESIGNEE TO TESTIFY              CASE NO. 18-MD-02843-VC-JSC
ON TOPICS 2(A), 2(C), 6, 7, AND 8



1. What does " ▮▮▮▮ mean in the context of a ▮▮▮▮ *Id.* at 1076:2-22.

v. Does ▮▮▮▮▮ *Id.* at 1076:11-22.

    1. What does ▮▮ mean in the context of a ▮▮▮▮

    2. How does " ▮▮ differ from ▮▮▮▮ in the context of a ▮▮ *Id.* at 1076:14-15?

vi. Does ▮▮▮▮▮? *Id.* at 1072:4-5.

    1. What does ▮▮ mean in the context of a ▮▮▮▮?

vii. Who created this ▮▮▮ taxonomy? *Id.* at 1076:23-1077:22.

    1. Are there any documents reflecting the process of creating this ▮▮ ▮▮ taxonomy?

        a. If so, what are they?

    2. Are there any documents that explain the final ▮▮ taxonomy?

        a. If so, what are they?

p. Do the entries in Column AA, ▮▮▮▮▮▮ comprehensively reflect which ▮▮▮▮ was ▮▮▮▮▮▮ each capability listed in the full version of this document? *Id.* at 1078:4-12, 1081:5-13.

    i. If not, was information reflecting which ▮▮▮▮ was ▮▮▮▮▮▮ each capability logged somewhere else? *Id.* at 1081:24-1082:6.

    ii. If so, where?

**B.**    **Questions for Facebook's 30(b)(6) designee to testify on Topics 6 and 7. Plaintiffs are requesting written responses for each of the questions on these specific topics except where indicated.**

*Issue for additional testimony:*
*Specific reasons that apps had extended access to nonpublic friend data after 2014 (for each app and partner to which such access was granted).*
*Questions:*

1. Why did the third parties that received extended or exempted access to friend information after 2017 receive that access? Tr. 687:17–690:23

QUESTIONS FOR FACEBOOK'S        8        MDL No. 2843
30(B)(6) DESIGNEE TO TESTIFY        CASE NO. 18-MD-02843-VC-JSC
ON TOPICS 2(A), 2(C), 6, 7, AND 8

a. Why was the access revoked?

b. When did ██████ access to friend information end?

c. Why did ████████████████████ receive an extension for friend information until ████████?

d. Why did ██████████ receive access to friend information until ██████████

e. Why did ██████████ receive access to friend information until ██████████?

f. Why did ██████████ receive access to friend information until ██████████?

g. Why did ████████████ receive access to friend information until ██████████?

h. Why did ████████████ receive access to friend information until ██████████ ████████

i. Did Facebook use the template described in Exhibit 407, or similar template, to determine whether to ████████████████████████? Tr. 645:1–648:1

j. To the extent Facebook used such a template, or similar, explain the reason why Facebook requested the information identified on Slide 18 (████████████████ ████████████████████████).

k. Did Facebook obtain revenue information from product managers or others for the purpose of evaluating whether ████████████████████████████? Tr. 653:7–654:6.

2. What were the specific reasons apps had extended access to nonpublic friend data after 2014? Tr. 706:4–14

a. Why did ██████ receive access to private APIs?

b. Why did ████████████ receive access to private APIs?

c. Why did ██████ receive access to private APIs?

d. Why did ██████████ receive access to private APIs?

e. Why did ████████ receive access to private APIs?

f. Why did ████████ receive access to private APIs?

g. Why did ████████ receive access to private APIs?

h. Why did ████ ████████ receive access to private APIs?

i. Why did ███████████ receive access to private APIs?

j. Why did ██████████████ Slots receive access to private APIs?

k. Why did ████████████ receive access to private APIs?

l. Why did ██████████ receive access to private APIs?

m. Why did ████████ receive access to private APIs?

n. Why did ██████ receive access to private APIs?

o. Why did ██████████ receive access to private APIs?

p. Why did ██████████ receive access to private APIs?

q. Why did ██████ receive access to private APIs?

3. Which of the ████████████████████████████████, and ██████████████████████ that required Facebook to provide access to friend information were developed after April 2014?

4. Which third parties had extended or exempted access to friend information after 2014 that was ███████████████████? Tr. 195:12.

5. For each third party that was provided access to friend sharing via whitelisting after Facebook announced that friend sharing permissions would be deprecated (4/2014), identify all revenue received by Facebook from the third party. Include ad spend, or any other source of revenue or payment received, by year from 2007 to the present. Tr. 1216:8–20.

*Issue for additional testimony:*
*Whether Facebook believed that continuing to share nonpublic friend data with third parties after 2014 was a ███████████████████.*

**ORAL TESTIMONY REQUESTED**
*Questions:*

6. What is Facebook's position on whether there was a ███████████t relating to friend data? Tr. 667:9–11

a. What is Facebook's position on whether it made a ████████ relating to providing access to friend data after May 2015?

b. Does Facebook believe that it adequately informed users that it would continue to share their information with third parties through their friends after May 2015?

*Issue for additional testimony:*

*Whether apps with access to nonpublic friend data (including, but not limited to, through extensions, exemptions, user_posts, Events API, Pages API, and Group APIs, and newsfeed) after 2014 exceeded the use case, and what Facebook did, if anything, to investigate.*
*Questions:*

7. Was Facebook aware that friends permissions were often called by apps in ways that exceed the use case for the app? Tr. 22:11–15.

8. Were all third parties with access to nonpublic friend information after May 2015 ███████████████████████████████? Tr. 1167:16–1169:18.

   a. Apart from the ADI, what did Facebook do to investigate if and how apps with access to nonpublic friend data after 2014 exceeded the use case?

   b. Did Facebook do anything above and beyond its usual enforcement efforts to determine whether entities with access to nonpublic friend information after May 2015 exceeded the use case?

   c. Why, or why not?

   d. If so, what did Facebook do?

   e. Did ██████ misuse friend information received after 2015?

*Issue for additional testimony:*
*Facebook's reasons and processes for managing and reducing risk from private APIs that emitted friend data in and after 2018.*
*Questions:*

9. What are the ███████████████? Tr. 616:21–617:19

10. Did Facebook identify ██████ private API application pairs that included ███████? Tr. 619:5–15.

    a. As of 2018, did Facebook know the full access of partners to all existing private APIs?

    b. As of 2018, did Facebook track the █████████████████████ ████████ relevant to access to friend data?

11. What is a private API application pair? Tr. 6:19–16–620:8.

12. What events prompted Facebook to █████████████████████ and how they ████████████████████████████████? Tr. 621:9–622:2.

13. Why didn't Facebook review private APIs in an ███████████████████ ██████████████████? Tr. 623:17–11.

14. What are questionable private API app pairs? Tr. 624:20–625:14.

15. What does hi/low value of API usage mean? Tr. 625:18–626:7.

16. What does the term "strategic partners" mean in the context of determining which apps to continue to whitelist for private APIs? Tr. 631:7–632:3.

Dated: June 29, 2022

Respectfully submitted,

KELLER ROHRBACK L.L.P.

BLEICHMAR FONTI & AULD LLP

By:  */s/ Derek W. Loeser*
     Derek W. Loeser

By:  */s/ Lesley E. Weaver*
     Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele A. Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

*Plaintiffs' Co-Lead Counsel*

# Exhibit B

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| Question | Response |
|---|---|
| *Actions related to tracking user data undertaken in response to the* ███████████ *Questions:* | |
| Facebook's designee testified that the ████████ was developed in response to obligations imposed by the ████ ██████████. June 20, 2022 Dep. Tr. at 763:24-764:1.<br><br>Which provision of which████████████████ was the ████ ████ developed in response to? | Facebook will respond in writing. |
| Facebook's designee testified that it redesigned how apps got access to capabilities around 2018 or 2019 in response to concerns raised by the Cambridge Analytica situation and the ████████████████. *Id.* at 978:1-25.<br><br>Which provision of which ████████████ was this redesign in response to? | Facebook will respond in writing. |
| Facebook's designee testified that Column AD (██████████████ of Exhibit 429 (the Capabilities Table) refers to an ██████████████████████████." *Id.* at 1086:3-1087:16.<br><br>Which provision of which FTC order does the "██████ ████████████████" reference? | Facebook will respond in writing. |
| ████████ *and other means to track API calls* | |
| Do the ████████ documents produced to Plaintiffs, Bates | Objection. Plaintiffs have not identified a deposition question |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| Nos. FB-MDL-MTHD- 00001-FB-MDL-MTHD-00080, include all available information contained in the ████ ████? | asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. This is a production question that should be directed to Facebook's counsel. |
| Does the ████████ indicate the number of ████ made by each third party for user data? | Facebook will respond in writing. |
| From 2007-present, what is the complete list of ways Facebook recorded information about ███████████████ █████? | Objection in part. Plaintiffs did not ask this question in the deposition. Plaintiffs asked ██████████████████████ ███████████████████████ █████ 770:18-773:21. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. Facebook will respond with additional information in writing. |
| For each, please identify the other types of information, in addition to █████████████ reflected in that way of recording the information. | Objection. Plaintiffs have not identified a deposition question asked that Cross did not answer. The question is unclear. |
| *Connecting API methods pertaining to user data to API calls.* | |
| Facebook's designee testified that, when an █████ is made, there is a system which takes that ████████ and determines | Facebook will respond in writing |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| which ███████████████████████<br><br>Is there a resource available internally at Facebook that indicates the ██████████████████████<br>████████████████ | |
| If so, what is the name of that resource? | Facebook will respond in writing |
| Does the resource exist in a form that can be produced as a standalone document? | Facebook will respond in writing |
| If not, can the information in that resource that associates ███<br>████████████████ be extracted? | Facebook will respond in writing |
| On an annual basis, how many ████████████████ did Facebook maintain, from 2007-present? | Objection. Plaintiffs have not identified a deposition question asked that Mr. Cross did not answer. |
| *All ways third parties could access user data.* | |
| Facebook's designee testified it's possible Facebook made user data available to third parties over other means than via Facebook Platform. June 20, 2022 Dep. Tr. at 740:18- 744:4.<br><br>Please list the ways, other than via Platform or email, that Facebook provided user data for third parties. *See id.* at 743:12-17 (testimony that Facebook was not aware of any "major ways" other than via Platform and email that Facebook would have shared data with third parties). | Objection. Mr. Cross answered this question. User data was made available  through the Developer Platform and he wasn't aware of any other systematic or major way that user information was provided to third parties.  It would not be reasonable or possible to try to talk to thousands of employees (or former employees) over a 15 year period to see if there was ever any minor exception.  This case is about sharing friend data through the Developer Platform, not any and all user data of any sort.  Any potential minimal relevance of such information is far outweighed by the burden on Facebook of providing such information. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| For each such way — and for email — please identify by category:<br><br>the type of information made available to third parties;<br>the recipients of the information; and<br>the time period during which that type of information was made available to those recipients in that way. | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Mr. Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Mr. Cross testified user data was made available through the Developer Platform and he wasn't aware of any other systematic or major way that user information was provided to third parties. It would not be reasonable or possible to try to talk to thousands of employees (or former employees) over a 15 year period or review millions of emails to see if there was ever any minor exception. This case is about sharing friend data through the Developer Platform, not any and all user data of any sort. Any potential minimal relevance of the requested information is far outweighed by the burden on Facebook of providing such information. |
| *For the* ███████████ *the columns in those tables, a description of the information contained in those columns, and the time period reflected by the information in each column.* | |
| Do the ████████ contain information concerning the time period before they became operational? *Id.* at 759: 5-8 | Facebook will respond in writing. |
| If so, what time period is covered by the data in the ██████ ██████? | Facebook will respond in writing. |
| Was there anything preventing the ████████ from being created before 2019? Id. at 759:12-761:25 | Facebook will respond in writing. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| If so, what prevented the ▮▮▮▮ from being created before 2019? | Facebook will respond in writing. |
| For each thing identified as preventing the ▮▮▮▮ from being created before 2019, please identify the time period for which that thing would have prevented the ▮▮▮▮ from being created. | Facebook will respond in writing. |
| Please identify each column in the ▮▮▮▮. *See id.* at 762:14-763:7 | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. Additionally, this question seeks irrelevant information. The ▮▮▮▮ does not contain data during the relevant time period in this case. |
| For each column, please describe the information it contains. | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. Additionally, this question seeks irrelevant, burdensome information. The ▮▮▮▮ does not contain data during the relevant time period in this case. |
| Do the ▮▮▮▮ contain information concerning the time period before they became operational? | Facebook will respond in writing. |
| If so, what prevented the ▮▮▮▮ from being created before 2019? | Facebook will respond in writing. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| For each thing identified as preventing the ▮▮▮▮ from being created before 2019, please identify the time period for which that thing would have prevented the ▮▮▮▮ from being created. | Facebook will respond in writing. |
| Please identify each column in the ▮▮▮▮. *See id.* at 766:6-767:11; 786:10-786:25. | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, the ▮▮▮▮ does not contain data during the relevant time period in this case. |
| For each column, please describe the information it contains. | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question seeks irrelevant, burdensome information. The ▮▮▮▮ does not contain data during the relevant time period in this case. |
| *Ways other than Facebook Login for Third Parties to access user tokens.* | |
| Facebook's designee testified that Facebook Login is the "primary" way by which apps get an access token for a user. June 20, 2022 Dep. Tr. at 874:3-5. It also testified that | Facebook will provide a written response. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| ███████ is another way for ████████ ████ Id. at 875:18-876:1. What other ways did get █████████ for users, from 2007-present? | |
| What was the time period during which ████████ could get ██████ in that way? | Objection. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask this question of the methods Mr. Cross identified. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| What categories of ████████ could get ██████ in that way? | Objection. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask this question of the methods Mr. Cross identified. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| Why did Facebook enable ████████ to get ██████ in that way? | Objection. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask this question of the methods Mr. Cross identified. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| If Facebook stopped enabling ████████ to get ██████ in that way, why? | Objection. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask this question of the methods Mr. Cross identified. During the June |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| *Follow-up questions regarding the Capabilities Tool* | |
| Facebook's designee testified that, before the Capabilities Tool existed, Facebook used a tool called Pearly Gates to manage some API whitelists and ███████████████. June 20, 2022 Dep. Tr. at 944:14-23.<br><br>Does Facebook still have all of the information that was contained in Pearly Gates? Id. at 945:1-7. | Facebook will provide a written response. |
| If so: Where is that information now kept? | Facebook will provide a written response. |
| If not: Does Facebook have any of the information that was contained in Pearly Gates? | Facebook will provide a written response. |
| If so (if Facebook has any information in Pearly Gates), what types of information does Facebook have, where is that information kept, and what time period does it reflect? | Facebook will provide a written response. |
| For any information that was contained within Pearly Gates that Facebook no longer has, when did Facebook delete, destroy, or otherwise lose access to that information? | Facebook will provide a written response. |
| Facebook's designee testified that the Capabilities Tool changed to ███████████████████████ | Facebook will provide a written response. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| ████████████████████ Id. at 952:13-953:20. When did this change occur? | |
| Facebook's designee testified that there's a list of ████ ████████. How many ████ exist? Id. at 958:2-19. | Facebook will provide a written response. |
| Facebook's designee testified that the ██████████, called the ████████. How long has the Launch Manager been used at Facebook? Id. at 960:17-963:10. | Facebook will provide a written response. |
| Facebook's designee testified that it was not sure what the ████████ column tracks. What does that column track? Id. at 963:14-20. | Facebook will provide a written response. |
| What is the type of information is identified by column B, "████? Id. at 969:2-19. | Facebook will provide a written response. |
| Facebook's designee testified repeatedly that numerous columns were added to this document in or around 2018 or 2019. For each, what was the reason it was added at or around those dates? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| How are the entries in Column G, "████████," populated and filled? June 21, 2022 Dep. Tr. at 1020:9-1021:1. | Facebook will provide a written response. |
| Who is responsible for entering the text in Column H, ████████"? Id. at 1021:7-20. | Facebook will provide a written response. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| Why is Column H blank for certain entries? Id. at 1021:21-1022:13. | Facebook will provide a written response. |
| How does the ███████ team determine whether a given ███████ as documented in Column I, "███████████"? Id. at 1022:14-20, 1024:23- 1025:1. | Facebook will provide a written response. |
| Is there any documentation of the process the ███████ team uses to determine whether a given ██████████ as documented in Column I? Id. at 1022:14-20, 1024:23-1025:1. | <u>Objection</u>. This question is better suited to a document request, not a Rule 30(b)(6) deposition. |
| If so, what documents reflect the process? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. This question is better suited to a document request, not a Rule 30(b)(6) deposition. |
| What does it mean if the entry "████ is reflected in Column M, ███████████"? Id. at 1036:6-1037:19. | Facebook will provide a written response. |
| Please describe what the information in Column O, ██████████ reflects? Id. at 1038:15-1039:11. | Facebook will provide a written response. |
| Are there any circumstances where information is not entered in Column O? Id. at 1039:6-11. | Facebook will provide a written response. |
| If so, what are the circumstances? | Facebook will provide a written response. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| In the context of Column P, ███████████ what are ████████ <br> Id. at 1039:22-1040:23. | Facebook will provide a written response. |
| Is that definition of ███████ consistent with the general definition of that term when used by Facebook in other contexts? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. The question is unclear. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| What does a "████ value in Column Q, ████████████" indicate? Id. at 1042:17-1043:12. | Facebook will provide a written response. |
| Are the decisions that ████████ made to determine whether to ████████████ captured in Exhibit 429? | Facebook will provide a written response. |
| If so, where? | Facebook will provide a written response. |
| If not, are they captured elsewhere in the Capabilities Tool? Where? | Facebook will provide a written response. |
| What are the entries that can be reflected in Column S, ████████████? <br> Id. at 1045:7-17, 1046:19-1048:6. | Facebook will provide a written response. |
| What does each such entry mean? *Id.* | <u>Objection</u>. This was not asked during the deposition. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | Tr. at 26-27, 28-29.<br><br>The question also seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
|---|---|
| Was anyone involved in the ▮▮▮▮▮▮▮▮ prior to ▮▮ ▮▮ that resulted in the entries in Column S? Id. at 1045:23-1046:3. | <u>Objection</u>. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
| If so, who? | <u>Objection</u>. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| For each person identified above, when were they involved in the ███████████ that resulted in the entries in Column S? | Objection. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
| Who were the people responsible for entering the content in Column W, ████████████████? Id. at 1050:10-1051:1. | Objection. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
| What time period was each of these people responsible for entering content in Column W? | Objection. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
| What is meant by the █████ in Row 2, Column W of Exhibit 429? Id. at 1051:2-12. | Facebook will provide a written response. |
| Regarding the six potential values in Column Z, "█████ | Objection. Cross answered this question. 1073:13-15. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| ██████████████ <br><br> Does █ indicate a ████ *Id.* at 1073:13-15. | |
| What does "████ mean in the context of a ██████? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask Cross what "████ means in the context of a ████████. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| Does █ indicate████████ *Id.* at 1073:16-21. | Facebook will provide a written response. |
| What does ██████████" mean in the context of a ██████ | Facebook will provide a written response. |
| Does █ indicate███████████? Id. at 1074:21-1075:5? | Facebook will provide a written response. |
| What does ██████████████" mean in the context of a ████████ | Facebook will provide a written response. |
| How is ████████████" different from ██████████ in the context of a ████████ Id. at 1075:10-13. | Facebook will provide a written response. |
| Does █ indicate██████ Id. at 1075:18-23. | Facebook will provide a written response. |
| What does ████████ mean in the context of a ████████ Id. at 1076:2-22. | Facebook will provide a written response. |
| Does █ indicate████ Id. at 1076:11-22. | Facebook will provide a written response. |
| What does "████ mean in the context of a ████████ | Facebook will provide a written response. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| How does " ▮ differ from " ▮ in the context of a ▮ ▮ Id. at 1076:14-15? | Facebook will provide a written response. |
| Does ▮ indicate ▮ Id. at 1072:4-5. | <u>Objection</u>. Cross provided this information during the deposition. 1072:4-5. |
| What does " ▮ mean in the context of a ▮ ? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. Plaintiffs did not ask Cross what "low" means in the context of a risk level. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |
| Who created this ▮ ? Id. at 1076:23-1077:22. | <u>Objection</u>. Seeks information beyond the scope of the notice. On June 3, 2022, Plaintiffs' clarified the limited scope of the intended questioning on the capabilities table: "Plaintiffs do not expect Facebook's designee to be fully familiar with the entirety of [the tables identified as exhibits]. Rather, Plaintiffs expect the designee to be able to describe the type and categories of information in the spreadsheets based on a representative sample." |
| Are there any documents reflecting the process of creating this ▮ ? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. This is more appropriate as a document request. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| If so, what are they? | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross did not answer. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>This is more appropriate as a document request. |
| Are there any documents that explain the final ██████ ██████ | <u>Objection</u>. Mr. Cross answered this question (1072:8-1073:12) and no further testimony was sought. |
| If so, what are they? | <u>Objection</u>. Mr. Cross answered this question (1072:8-1073:12) and no further testimony was sought. |
| Do the entries in Column AA, "█████████ comprehensively reflect which type of ██████ ██████████████ listed in the full version of this document? *Id*. at 1078:4-12, 1081:5-13. | Facebook will provide a written response. |
| If not, was information reflecting which type of ██████ ████████████████ logged somewhere else? *Id*. at 1081:24-1082:6. | Facebook will provide a written response. |
| If so, where? | Facebook will provide a written response. |
| Questions for Facebook's 30(b)(6) designee to testify on Topics 6 and 7. Plaintiffs are requesting written responses for each of the questions on these specific topics except where indicated. BUT SEE LANGUAGE TO INCORPORATE BELOW | |
| *Specific reasons that apps had extended access to nonpublic friend data after 2014 (for each app and partner to which such access was granted).* | |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| Why did the third parties that received extended or exempted access to friend information after 2017 receive that access? Tr. 687:17–690:23 | Objection:  The cited testimony does not ask this question; it references an interrogatory response that the witness did not verify.  This question has been asked and sufficiently answered.  Plaintiffs have repeatedly asked Mr. Cross for the reasons that apps had extended access.  Mr. Cross has provided substantial testimony on this question over his five days of deposition testimony.  He explained that whitelisting decisions were made on a case by case basis.  Tr. 562:15-24.  He explained that some apps were given continued access to the data of a user's friends "based on whether or not the user experience would be broken if the deprecation timeline was followed or whether or not there would be other risks for the developer of the deprecation being enforced on the general time frame."  Tr. 188:7-12.  He further explained "that the extensions granted to applications to access API Version 1 and the friend permissions were limited to cases where the user experience would be significantly degraded if they weren't given extra time or there was some form of legal and regulatory risk to the partner if the extension was not granted for a period of time."  Tr. 192:3-9; 186:2-191:15.  Additionally, Mr. Cross testified that there were "Integration[] partners who had built experiences that were on unusual devices, operating systems, and set-top boxes and so on that required, in order to function . . . permissions which – APIs that were not generally available."  Tr. 193:24-196:20.  Finally, Mr. Cross testified that revenue was not taken into account in making whitelisting decisions and that payments were not received for whitelisting.  Tr. 1179:12-1181:22; 1207:5-11; 1208:5-1213:22; 1171:5-10. |
| Why was the access revoked? | Objection:  Plaintiffs did not ask for this information during the deposition.  During the June 24 hearing, Special Master Garrie |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Answering this question would be unduly burdensome, as it would require Facebook to, within less than two weeks, engage in an app-by-app analysis that plaintiffs did not request in the deposition, and which would not be appropriate for a deposition. |
| When did ▮▮▮▮ access to friend information end? | Objection: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never contemplated in the deposition. |
| Why did ▮▮▮▮▮▮▮▮▮▮ receive an extension for friend information until June 2018? | Objection: Plaintiffs did not ask this question or ask for this level of granularity during the deposition; plaintiffs only asked "So that's access to these friend permissions that was more than six months after the deprecation of those permissions; is that right?" During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | that was never sought in the deposition. |
|---|---|
| Why did ▮▮▮▮▮ receive access to friend information until June 2018? | <u>Objection</u>:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮▮ receive access to friend information until June 2018? | <u>Objection</u>:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮▮ receive access to friend information until June 2018? | <u>Objection</u>:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

|  |  |
|---|---|
|  | Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ████████ receive access to friend information until June 2018? | Objection: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ████████ receive access to friend information until March 2018? | Objection: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Did Facebook use the template described in Exhibit 407, or similar template, to determine whether to continue to allow access to certain APIs? Tr. 645:1–648:1 | Facebook will respond in writing. |
| To the extent Facebook used such a template, or similar, | Objection: Plaintiffs did not ask for this information during the |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| explain the reason why Facebook requested the information identified on Slide 18 ████████ ███████████████ | deposition |
| Did Facebook obtain revenue information from product managers or others for the purpose of evaluating whether to continue to provide access to certain APIs? Tr. 653:7–654:6. | <u>Objection</u>: Plaintiffs did not ask for this information during the deposition; plaintiffs cite to a discussion where Mr. Cross was unable to interpret what the phrase "revenue attribution" meant in the context of a specific slidedeck. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Furthermore, Mr. Cross has testified repeatedly that third parties were not whitelisted for access to friend data because of ad spend or revenue more generally. Tr. 1179:12-1181:22; 1207:5-11; 1208:5-1213:22. |
| What were the specific reasons apps had extended access to nonpublic friend data after 2014? Tr. 706:4–14 | <u>Objection</u>: This question has been asked and answered. Plaintiffs have repeatedly asked Mr. Cross for the reasons that apps had extended access. Mr. Cross has provided substantial testimony on this question over five days. He explained that whitelisting decisions were made on a case by case basis. Tr. 562:15-24. He explained that some apps were given continued access to the data of a user's friends "based on whether or not the user experience would be broken if the deprecation timeline was followed or whether or not there would be other risks for the developer of the deprecation being enforced on the general time frame." Tr. 188:7-12. He further explained "that the extensions granted to applications to access API Version 1 and the friend permissions was limited to cases where the user |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | experience would be significantly degraded if they weren't given extra time or there was some form of legal and regulatory risk to the partner if the extension was not granted for a period of time." Tr. 192:3-9; 186:2-191:15. Additionally, Mr. Cross testified that there were "Integration[] partners who had built experiences that were on unusual devices, operating systems, and set-top boxes and so on that required, in order to function . . . permissions which – APIs that were not generally available." Tr. 193:24-196:20. Finally, Mr. Cross testified that revenue was not taken into account in making whitelisting decisions and that payments were not received for whitelisting. Tr. 1179:12-1181:22; 1207:5-11; 1208:5-1213:22; 1171:5-10. |
| Why did ███████ receive access to private APIs? | <u>Objection</u>: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. <br><br> Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ███████ receive access to private APIs? | <u>Objection</u>: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▇ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▇ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▇ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ███████ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ██████ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ████████ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮▮▮ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮▮▮▮▮ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮▮▮ receive access to private APIs? | <u>Objection</u>:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▮▮▮▮ receive access to private APIs? | <u>Objection</u>:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| Why did ▆▆ receive access to private APIs? | <u>Objection</u>: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
|---|---|
| Why did ▆▆▆ receive access to private APIs? | <u>Objection</u>: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Why did ▆▆▆▆ receive access to private APIs? | <u>Objection</u>: Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | that was never sought in the deposition. |
|---|---|
| Why did ███ receive access to private APIs? | Objection:  Plaintiffs did not ask for this level of granularity during the deposition; plaintiffs did not mention this entity at all. During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer. *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is unduly burdensome in requiring Facebook to, within two weeks, conduct an app-by-app analysis that was never sought in the deposition. |
| Which of the business integrations, media integrations, search integrations, and specialized consumer experiences that required Facebook to provide access to friend information were developed after April 2014? | Objection:  Plaintiffs did not ask for this information during the deposition, in fact plaintiffs provide no citation at all for this question.<br><br>The question is compound, confusing, and unduly burdensome. The question improperly calls for a narrative response and would require Facebook to investigate the development dates of many individual apps/experiences over the course of 8 years and then cross-reference Facebook's contractual agreements with said apps/experiences. |
| Which third parties had extended or exempted access to friend information after 2014 that was not governed by contract? Tr. 195:12. | Objection:  Plaintiffs did not ask for this information during the deposition; plaintiffs cite to Mr. Loeser's questions regarding all the reasons Facebook provided access to friend data after the transition to Graph API v2.<br><br>This question is also unduly burdensome, as it would require Facebook to, within less than two weeks, conduct individual |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | contractual analysis for many third parties over an 8 year period. This was not sought in the deposition.<br><br>Furthermore, it calls for a legal conclusion as to whether extended or exempted access to friend information after 2014 was governed by contract. |
|---|---|
| For each third party that was provided access to friend sharing via whitelisting after Facebook announced that friend sharing permissions would be deprecated (4/2014), identify all revenue received by Facebook from the third party. Include ad spend, or any other source of revenue or payment received, by year from 2007 to the present. Tr. 1216:8–20. | Objection:  Plaintiffs did not ask for this information during the deposition; they only asked whether Mr. Cross conducted an independent investigation as part of his deposition preparation to determine what revenue, if any, whitelisted partners had paid to Facebook after 2014.  Tr. 1216:8–20.  During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer.  *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>Additionally, this question is beyond the scope of the deposition, as it asks for all revenue received by Facebook from a third party, <u>irrespective </u>of whether that revenue was received in exchange for whitelisting.  That is not covered by Topics 2, 6, 7 or 8.<br><br>Furthermore, Mr. Cross has testified repeatedly that third parties were not whitelisted for access to friend data because of ad spend or revenue more generally.  Tr. 1179:12-1181:22; 1207:5-11; 1208:5-1213:22.<br><br>This question is also unduly burdensome, as it would require Facebook to, within less than two weeks, conduct individual investigations of all potential sources of revenue for many third |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | parties over an eight year span. |
|---|---|
| *Whether Facebook believed that continuing to share nonpublic friend data with third parties after 2014 was a mistake or breach of trust.* | |
| QUESTIONS BELOW: ORAL TESTIMONY SOUGHT | |
| What is Facebook's position on whether there was a breach of trust relating to friend data? Tr. 667:9–11 | Objection: This question calls for a legal conclusion, is argumentative, and is an improper question for a 30(b)(6) witness. On June 24, we also noted for Plaintiffs that this question is inappropriate for a deposition and suggested sending a contention interrogatory instead.<br><br>This question is also outside the scope of both Topics 6 and 7, which seek information about the "*development* of Friend Sharing," and the "*decision to whitelist particular apps or partners*." Neither topic calls for an after-the-fact "position" to be taken regarding a material legal issue in the case. |
| What is Facebook's position on whether it made a mistake relating to providing access to friend data after May 2015? | Objection: This question calls for a legal conclusion, is argumentative, and is an improper question for a 30(b)(6) witness. On June 24, we also noted for Plaintiffs that this question is inappropriate for a deposition and suggested sending a contention interrogatory instead.<br><br>This question is also outside the scope of both Topics 6 and 7, which seek information about the "*development* of Friend Sharing," and the "*decision to whitelist particular apps or partners*." Neither topic calls for an after-the-fact "position" to be taken regarding a material legal issue in the case. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| Does Facebook believe that it adequately informed users that it would continue to share their information with third parties through their friends after May 2015? | Objection:  Plaintiffs did not ask for this information during the deposition.  During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer.  *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>This question is also outside the scope of both Topics 6 and 7, which seek information about the "*development* of Friend Sharing," and the "*decision to whitelist particular apps or partners*." Neither topic calls for an after-the-fact position to be taken regarding a material legal issue in the case; i.e., the adequacy of disclosures.<br><br> As indicated in our May 28 scope letter, Mr. Cross was designated to testify to Topic 6 "except as that topic relates to communications to users about friend sharing (including any communication via Facebook's Terms of Service, SRR, and/or Data and Privacy Policies related to friend sharing." |
| *Whether apps with access to nonpublic friend data (including, but not limited to, through extensions, exemptions, user_posts, Events API, Pages API, and Group APIs, and newsfeed) after 2014 exceeded the use case, and what Facebook did, if anything, to investigate.* | |
| Was Facebook aware that friends permissions were often called by apps in ways that exceed the use case for the app? Tr. 22:11–15. | Objection:  This question has been asked and answered.  Mr. Cross explained that, around 2013, "there was a number of discussions about how apps were using the information they got via the API. One of those reasons would have been that there were some questions about how that information was being used." Tr. 82:7-24<br><br>Furthermore, this question is better suited for the upcoming ADI |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | deposition. |
|---|---|
| Were all third parties with access to nonpublic friend information after May 2015 investigated as part of Facebook's ADI investigation? Tr. 1167:16–1169:18. | <u>Objection</u>:  Plaintiffs did not ask Mr. Cross about the ADI during the deposition; plaintiffs only asked generally "what examination has Facebook done to determine whether apps whitelisted for access to APIs that emit friend data exceeded the use case for the apps after 2014," which Mr. Cross answered.<br><br>This issue is outside the scope of the issues Mr. Cross is designated to testify on.  As we indicated in our May 28 scope letter, Mr. Cross was designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  Mr. Cross has already provided substantial testimony on Platform Integrity.  Tr. 810:23-812:6; 819:21-821:5; 828:11-830:18.<br><br>This question is solely about ADI.  Plaintiffs should ask it in the upcoming ADI deposition. |
| Apart from the ADI, what did Facebook do to investigate if and how apps with access to nonpublic friend data after 2014 exceeded the use case? | <u>Objection</u>:  Asked and answered.  Mr. Cross testified that "the partnerships team reviewed the applications and -- and either removed access to private APIs and whitelists or determined that the -- the application had the appropriate level of access."  Tr. 1167:22-1168:1.  Mr. Cross further explained that "It was a process in 2018 and early 2019 to assess apps that had been granted additional access to information and -- and determine whether or not that access should continue."  1168:3-6.<br><br>This issue is outside the scope of the issues Simon Cross is designated to testify on.   As we indicated in our May 28 scope |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | letter, Cross was designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  Mr. Cross has already provided substantial testimony on Platform Integrity.  Tr. 810:23-812:6; 819:21-821:5; 828:11-830:18. |
| Did Facebook do anything above and beyond its usual enforcement efforts to determine whether entities with access to nonpublic friend information after May 2015 exceeded the use case? | <u>Objection</u>:  Plaintiffs did not ask for this information during the deposition.  During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer.  *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>This issue is outside the scope of the issues Simon Cross is designated to testify on.   As we indicated in our May 28 scope letter, Cross was designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  Mr. Cross has already provided substantial testimony on Platform Integrity.  Tr. 810:23-812:6; 819:21-821:5; 828:11-830:18.<br><br>Furthermore, Plaintiffs are going to take a deposition on ADI. |
| Why, or why not? | <u>Objection</u>:  Plaintiffs did not ask for this information during the deposition.  During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer.  *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>This issue is outside the scope of the issues Simon Cross is designated to testify on.   As we indicated in our May 28 scope letter, Cross was designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  Mr. Cross has already provided substantial testimony on Platform Integrity.  Tr. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

|  |  |
|---|---|
|  | 810:23-812:6; 819:21-821:5; 828:11-830:18.<br><br>Furthermore, Plaintiffs are going to take a deposition on ADI. |
| If so, what did Facebook do? | Objection:  Plaintiffs did not ask for this information during the deposition.  During the June 24 hearing, Special Master Garrie advised that for each question raised, Plaintiffs should reference the testimony where they believe Mr. Cross was unable to answer.  *See* June 24 Hr'g Tr. at 26-27, 28-29.<br><br>This issue is outside the scope of the issues Simon Cross is designated to testify on.   As we indicated in our May 28 scope letter, Crosswas designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  Mr. Cross has already provided substantial testimony on Platform Integrity.  Tr. 810:23-812:6; 819:21-821:5; 828:11-830:18.<br><br>Furthermore, Plaintiffs are going to take a deposition on ADI. |
| Did ▮▮▮▮ misuse friend information received after 2015? | Objection:  This issue is outside the scope of the issues Simon Cross is designated to testify on.  It is not reasonable to require the deponent to know how each of thousands of potential third parties may have used user data.  As we indicated in our May 28 scope letter, Cross was designated to testify on Topic 2(d) only to the extent it relates to Platform Integrity.  It is unreasonable to expect Mr. Cross to be able to testify as to any specific investigation into a single entity.  Mr. Cross has already provided substantial testimony on Platform Integrity more generally.  Tr. 810:23-812:6; 819:21-821:5; 828:11-830:18. |
| *Facebook's reasons and processes for managing and reducing risk from private APIs that emitted friend data in and after 2018.* | |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| What are the risks from private APIs? Tr. 616:21–617:19 | Objection:  Asked and answered.  Mr. Cross testified that "there's a number of potential risks – from private APIs" and that he "can attempt to enumerate some examples." Tr. 616:24-617:6.  Mr. Cross then stated that "there a number of -- as I said, a number of private APIs. One of the risks for an ███████ is that it allowed developers to ██████ ███████████████ in order to allow a user to log in to an experience on a device. And an app that had that capability, there were a number of risks around making sure that the ███████████████████████ and that the ███████████████████████ So that would be one -- ██████ from one type of -- of ██████ Tr. 617:7-19.  He continues," So we talked about this in a -- in a previous testimony around some of the reasons for the changes to the public API surface area. We'd had concerns from users that they were not always aware how their information was being used by -- by applications, and so in the case of private APIs, we would want to make sure that information was being used appropriately." Tr. 618:6-13.  No further testimony was sought. |
| Did Facebook identify ██████ private API application pairs that included ██████? Tr. 619:5–15. | Objection:  Asked and answered.  Mr. Cross testified that "I'm -- the author was KP. I -- I don't know how these data were compiled or collected.  But from rating the slide, somebody at Facebook, KP, seems to have identified ██████ API -- API application pairs that met some definition of -- of ██ which I'm not aware of the details of." Tr. 619:9-15.  Mr. Cross then provides additional explanation "So private API is a -- is an ambiguous term, and so I think he may have used a -- he may be referring to a different technical term. So I would actually be speculating if I -- if I confirmed that -- understanding -- if I |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | confirmed. My understanding, speaking -- you know, trying to do my best here and trying to give you the best answer I can -- is that -- I understand him to be referring to capability app pairs. So that -- that -- that's my understanding of what he'd be referring to. But private APIs is a little bit ambiguous in this context." Tr. 619:18-620:8. No further testimony about identifying 2,300 private API application pairs was sought.<br><br>Plaintiffs are scheduled to depose Konstantinos Papamiltiadias (KP) in August, so there is no need to depose another Facebook employee on this issue. |
| As of 2018, did Facebook know the full access of partners to all existing private APIs? | Objection: Plaintiffs did not ask for this information during the deposition and have not identified a deposition question asked that Mr. Cross did not answer. |
| As of 2018, did Facebook track the contracts and applicable contractual obligations relevant to access to friend data? | Objection: Plaintiffs did not ask for this information during the deposition and have not identified a deposition question asked that Mr. Cross did not answer. |
| What is a private API application pair? Tr. 6:19–16–620:8. | Objection: Asked and answered. When plaintiffs asked "And what is 'a private API application pair,'" Mr. Cross explained that "private API is a -- is an ambiguous term, and so I think he may have used a -- he may be referring to a different technical term. So I would actually be speculating if I -- if I confirmed that -- understanding -- if I confirmed. My understanding, speaking -- you know, trying to do my best here and trying to give you the best answer I can -- is that -- I understand him to be referring to capability app pairs. So that -- that -- that's my understanding of what he'd be referring to. But private APIs is a |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| | little bit ambiguous in this context." Tr. 619:18-620:8. No further testimony about what constitutes a "private API application pair" was sought.<br><br>Plaintiffs are scheduled to depose Konstantinos Papamiltiadias (KP) in August, so there is no need to depose another Facebook employee on this issue. |
| What events prompted Facebook to audit and understand the existing APIs and how they were being used as well as to develop new processes and practices for controlling changes to APIs going forward? Tr. 621:9–622:2. | <u>Objection</u>: Asked and answered. When plaintiffs asked "what events prompted that audit," Mr. Cross explained that "So probably a number of factors that went into the -- the decision-making that I, you know, have not fully -- I'm not fully aware of. So I can't answer fully as to what that was -- what drove that decision-making. But, again, what I can share from my personal perspective is this is after the Cambridge Analytica story broke, and -- and I would -- my understanding is that was one of the drivers for improving development practices around APIs."<br><br>Plaintiffs are scheduled to depose Konstantinos Papamiltiadias (KP) in August, so there is no need to depose another Facebook employee on this issue. |
| Why didn't Facebook review private APIs in an audit of why that app has that capability and whether or not it should continue to have that capability? Tr. 623:17–11. | <u>Objection</u>. Cross answered this question by explaining that "there was an effort in 2013 to reduce the number of capability app pairs which existed, and so I think this is -- it's not right to characterize this as 'not done' and 'done.' There were -- have been a number of efforts over a number of years to attempt to manage the -- the set of private APIs." 624:5-11. |

*Facebook's Responses to Plaintiffs' Requests for*
*Additional Testimony on Topics 2, 6, 7, and 8*
*July 2, 2022*

| | |
|---|---|
| What are questionable private API app pairs? Tr. 624:20–625:14. | <u>Objection</u>. This question was asked in the context of a slide deck prepared by Konstantinos Papamiltiadias (KP), so if Plaintiffs want to know how he meant to use the term, they should ask him in his deposition. Plaintiffs are scheduled to depose Mr. Papamiltiadias in August, so there is no need to depose another Facebook employee on this issue. |
| What does hi/low value of API usage mean? Tr. 625:18–626:7. | <u>Objection</u>. This question was asked in the context of a slide deck prepared by Konstantinos Papamiltiadias (KP), so if Plaintiffs want to know how he meant to use the term, they should ask him in his deposition. Plaintiffs are scheduled to depose Mr. Papamiltiadias in August, so there is no need to depose another Facebook employee on this issue. |
| What does the term "strategic partners" mean in the context of determining which apps to continue to whitelist for private APIs? Tr. 631:7–632:3. | <u>Objection</u>. Plaintiffs have not identified a deposition question asked that Cross could not answer. In the context of the use of the phrase "strategic partners" in a slide deck prepared by an individual employee, Plaintiffs asked "[w]ho at Facebook could tell me whether there's a subset of partners called 'strategic partners' at Facebook? In response, Cross explained that "I don't think there's a standard definition for 'strategic partner[.]'" 632:4-6, 13-14. Plaintiffs did not separately seek testimony regarding the meaning of the term "strategic partners" in the context of determining which apps to whitelist for private APIs. |