

September 22, 2022

**VIA ECF**

The Honorable Vince Chhabria
United States District Judge
San Francisco Courthouse, Courtroom 4 (17th Floor)
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:  *In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
           Northern District of California, Case No. 3:18-md-02843-VC
           Letter brief regarding follow-up questions on sanctions

Dear Judge Chhabria:

      This letter brief responds to the two questions the Court posed at the September 15 hearing on sanctions. Plaintiffs summarize the context and content of the questions, answer the questions, and then emphasize the importance of fully accounting for all costs and fees caused by the discovery misconduct here.

**A.**      **The context of the two questions**

      The parties have reached a class action settlement in principle. Notice of Settlement in Principle, ECF No. 1014. The contemplated settlement will create a nonreversionary common fund for the benefit of the class. *See* Hr'g Tr. ("Sanctions Tr.") at 20:5–6 (Sept. 15, 2022). Out of this fund will come any award of fees and costs that the Court may approve. *Id.* The agreement in principle to settle the case was reached without settling the motion for sanctions. *Id.* at 7:6–19, 17:4–6.

      At the September 15 hearing on sanctions, the Court asked about the relationship between the class settlement and any sanctions that might be awarded. *Id.* at 9:12–25. Plaintiffs said that if the Court should award attorneys' fees and costs as sanctions, those fees and costs would be credited against the fees and costs that they will receive from the common fund. *See id.* at 10:1–12:16. To be precise, Plaintiffs envision the sanctions being allocated to the class directly, as payment of fees by an opposing party or lawyer are properly credited to the party—here, the class—and not the party's lawyer. *See infra* § C.2. But the effect would be the same as a credit: the net amount that the class pays in fees and costs would be reduced by any sanctions awarded.

      To illustrate, consider two scenarios, one in which sanctions are not imposed and one in which they are.

      In the scenario without sanctions, a settlement creates a common fund of $100, and the plaintiffs successfully seek attorneys' fees representing 25% of the fund plus costs of $10.

Plaintiffs' counsel receive $25 in fees. Of the remaining $75, $10 go to costs, and the remainder—$65—is distributed to the class.

Now consider an otherwise identical scenario where the court imposes $10 in sanctions, representing $5 in costs and $5 in fees. Total attorneys' fees would remain $25, which still comprises 25% of the $100 common fund. But since the $5 in fees from the sanctions would be allocated to the class, the net amount of fees paid by the class would be only $20. Similarly, costs awarded from the settlement fund would remain $10. But since the $5 in costs from the sanctions would be allocated to the class, the net amount of costs paid by the class would be only $5. The net amount of fees and costs paid by the class would then be $25, and the amount of money available to distribute to the class would be $75. Thus, the imposition of $10 in sanctions would increase the amount of money available to distribute to the class by $10.

**B.    The two questions**

The discussion of how the sanctions would be allocated prompted two questions on which the Court has requested letter briefs. First, "what is the point of awarding attorneys' fees as compensation to Plaintiffs' Counsel if they would already be getting their fees as part of a class action settlement?" Sanctions Tr. at 105:16–19. Second, "[i]f I wish to consider imposing punitive sanctions on Facebook and Gibson Dunn, . . . what should the process be?" *Id.* at 105:22–24.

**C.    Question one: What is the point of awarding attorneys' fees as compensation to Plaintiffs' counsel if they would already be getting their fees as part of the class action settlement?**

As Plaintiffs understand it, there are several underlying concerns captured by this question, each of which Plaintiffs will address separately:

- If Plaintiffs' counsel will end up getting the same amount of fees anyway, then would sanctions force Gibson Dunn or Facebook to pay for their misconduct? *See id.* at 11:7–14.

- Even if the sanctions would force Gibson Dunn or Facebook to pay more than they otherwise would, does the fact that Plaintiffs' counsel will be receiving the same total fees mean that the sanctions are not compensatory? *See id.* at 13:6–13.

- Is there any argument that the sanctions would be punitive rather compensatory and therefore require the Court to provide procedural guarantees applicable to criminal cases? *See id.* at 13:14–23.

    **1. If Plaintiffs' counsel will end up getting the same amount of fees anyway, then would sanctions force Gibson Dunn or Facebook to pay for their misconduct?**

Yes. Any monetary sanction that the Court may impose on either Gibson Dunn, Facebook, or both will force them to compensate the class by paying more than they otherwise would. That is the very purpose of the sanctions.

This conclusion is clearest in the case of Gibson Dunn. Because Gibson Dunn will not be responsible for any portion of the settlement's common fund, any monetary sanctions imposed on Gibson Dunn would necessarily force it to pay money that it otherwise would not pay.

The same conclusion holds true for Facebook as well. For while the contemplated settlement will require Facebook to create a nonreversionary common fund for the class, the parties explicitly agreed *not* to resolve any possible sanctions in their settlement in principle. As a result, any monetary sanctions this Court may impose on Facebook would be paid *in addition to* the settlement amount. An award of sanctions would necessarily force Gibson Dunn or Facebook to pay more.

**2. Even if the sanctions would force Gibson Dunn or Facebook to pay more than they otherwise would, does the fact that Plaintiffs' counsel will be receiving the same total fees mean that the sanctions are not compensatory?**

No. The monetary sanctions are compensatory because they will benefit the class by reimbursing it for costs and fees incurred as a result of the sanctionable misconduct. The defining trait of compensatory sanctions is simply their measure—whether the sanctions are calibrated to offset damage caused by the sanctioned misconduct. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). The fact that the sanctions will end up benefiting the class rather than counsel does not make them any less compensatory.

In fact, it is normally expected that monetary sanctions will benefit a party rather than the party's attorney. As the most recent *Restatement of the Law Governing Lawyers* notes, the default rule is that "payments that the law requires an opposing party or that party's lawyer to pay as attorney-fee awards or sanctions are credited to the client, not the client's lawyer." *Restatement (Third) of the Law Governing Lawyers* § 38(3)(b) (2000); *see also* 1 Robert L. Rossi, *Attorneys' Fees* § 6:12 (3d ed. June 2022 update) ("The general rule is that in the absence of agreement, fees allowed as costs or expenses in an action belong to the client, the party litigant, and not to the party's attorney."). Indeed, an agreement that allows an attorney to keep both a contractual fee and a fee award, without offsetting the award against the contractual fee, "is presumptively unreasonable."[1] *Restatement (Third) of the Law Governing Lawyers* § 38 cmt. f.

The Ninth Circuit has also effectively recognized that most sanctions are paid to a party rather than the party's attorney. It stated, in a case involving a fee-shifting statute, that "[d]irect payment to the attorney is the exception, not the rule." *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 756 (9th Cir. 2011). This statement applies equally to statutory or rule-based sanctions authorities; the court was pointing to a background rule that applies to any provision that authorizes an award of fees. *See id.* ("[I]n the absence of explicit instructions from

---

[1] That presumptive unreasonableness helps to explain why district courts have imposed sanctions that explicitly *ordered* attorneys to credit the sanction award against what the client would otherwise have to pay. *Eriksen v. Dennett*, No. CIV. 207CV00230DB, 2008 WL 54039, at *1 (D. Utah Jan. 3, 2008); *Swain v. Encore Med. Corp.*, No. CIVA 3:04-174, 2006 WL 3692593, at *4 (W.D. Pa. Dec. 12, 2006); *Stengel v. Kawasaki Heavy Indus., Ltd.*, 116 F.R.D. 263, 269 (N.D. Tex. 1987).

Congress awarding fees to the attorney, direct payment to the attorney should not be presumed.").

The default rule, then, is for a monetary sanction to go to a party rather than the party's attorneys. And Plaintiffs are not aware of *any* authority suggesting that this extraordinarily common practice results in sanctions that are anything more or less than compensatory.

In fact, post-*Goodyear* authority is to the contrary. It suggests that when courts assess whether a sanction of attorneys' fees is properly compensatory, they should *not* ask how the sanctions will affect any attorney's total compensation. Rather, courts should simply ask whether those fees are tied to legal work that would not have done in the absence of the sanctioned misconduct.

The key precedent in this area is *Liebowitz v. Bandshell Artist Management*, 6 F.4th 267 (2d Cir. 2021). There, the district court imposed a monetary sanction on a plaintiff who had violated multiple orders and repeatedly lied to the court. The amount of the sanction represented a reasonable fee for the work that the defendant's attorneys had to perform as a result of the misconduct. *See id.* at 285–86. The complication, however, was that the defendant was represented *pro bono* and "had disclaimed the right to collect any fees." *Id.* at 279. Thus, the district court—invoking its inherent authority and 28 U.S.C. § 1927—ordered that the sanction be payable to the court. *Id.* at 280.

The Second Circuit held that the sanction was compensatory rather than punitive, even though the sanction would not go into the pockets of either the defendant or its attorneys. The sanction was compensatory simply because it was equal to a reasonable fee for the work that defendant's counsel had to perform as a result of the sanctioned misconduct:

> Judge Furman based the measure of sanctions on what amount would have been sufficient to compensate [the defendant] had its lawyers charged a reasonable attorney's fee based on their ordinary hourly rates. The fact that [the defendant] and its lawyers will not collect this amount from [plaintiff's counsel] does not transform this amount into a punitive sanction nor entitle Appellants to process they would not be due had [the defendant's] lawyers not chosen to waive their fees. [The defendant's] lawyers still incurred losses as a result of the misconduct in question.

*Id.* at 286 n.23. The Second Circuit's reasoning in *Liebowitz* shows that any monetary sanctions the Court may impose here will be compensatory—not because of how they may affect the total fees that Plaintiffs' counsel actually receive, but because they will be measured by the extra work that Plaintiffs' counsel had to perform due to Facebook's and Gibson Dunn's discovery misconduct.

### 3. Is there any argument that the sanctions would be punitive rather than compensatory and therefore require the Court to provide procedural guarantees applicable to criminal cases?

What has already been said shows that the answer to this question is no. But one other foundational consideration also indicates that monetary sanctions are compensatory rather than punitive so long as they are measured by the extra work and expense occasioned by the discovery misconduct, irrespective of who will ultimately pocket them.

The constitutional line between what is compensatory and what is punitive is intended to protect the sanctioned party from paying "an additional amount as punishment for [its] misbehavior" without the "procedural guarantees applicable in criminal cases." *Goodyear*, 137 S. Ct. at 1186. This restriction on punitive monetary sanctions represents a right that belongs to the sanctioned party and is for that party's benefit. *Cf. Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (noting, as a "cardinal principle[] of our constitutional order," the "personal nature of constitutional rights" (quotation and citation omitted)); *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (holding that a public defender lacked direct standing because "[n]o court . . . has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants"). Whether a monetary sanction is punitive or compensatory, therefore, turns on whether the amount of the sanction represents the costs and fees caused by the misconduct, which is compensatory, or represents some larger amount, which is punitive.

Finally, the Court should reject any argument that it would be punitive for Facebook to pay sanctions in addition to the settlement fund. The settlement does not resolve any entitlement to sanctions. The settlement fund simply represents the amount of money that Facebook will pay to resolve the class's legal claims, which are distinct, both legally and factually, from any discovery misconduct that Facebook committed during this litigation. Because compensating the class for their legal claims does not compensate the class for discovery misconduct, it would not be punitive for Facebook to pay additional money to compensate the class for discovery misconduct.

It is true that if a party is made to pay additional money in the form of compensatory sanctions, that additional money will have the effect of deterring future misconduct. Such a deterrent effect, however, does not transform a compensatory monetary sanction into a punitive sanction, any more than the deterrent effect of an award of compensatory damages in a tort case turns that civil award into a criminal fine. *See, e.g.*, *Carlson v. Green*, 446 U.S. 14, 21 (1980) ("It is almost axiomatic that the threat of damages has a deterrent effect . . . ."). As the Ninth Circuit noted in the course of deciding that a contempt sanction was civil rather than criminal, "deterrence is one of the purposes served by compensatory and punitive awards alike." *Nat'l Abortion Fed. v. Ctr. for Med. Progress*, 926 F.3d 534, 538 (9th Cir. 2019), *cert. denied sub nom. Cooley v. Nat'l Abortion Fed.*, 140 S. Ct. 905 (2020).

**D.  Question two: What procedures are required if punitive sanctions are to be imposed on Gibson Dunn or Facebook?**

The Ninth Circuit has held that when a district court imposes a sanction that is punitive in nature, "it must provide the same due process protections that would be available in a criminal contempt proceeding." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001). These are "the right to be advised of the charges, the right to a disinterested prosecutor, the right to assistance of counsel, a presumption of innocence, proof beyond a reasonable doubt, the privilege against self-incrimination, the right to cross-examine witnesses, the opportunity to present a defense and call witnesses, and the right to a jury trial if the fine or sentence imposed will be serious." *Id.* (citations omitted).

**E.  Once the Court defines the sanctionable misconduct, it should allow for a full accounting of the fees and costs caused by that misconduct.**

When Plaintiffs initially moved for sanctions earlier this year, they focused much more on showing that sanctions should be imposed than on the amount of those sanctions. Plaintiffs' request for fees and costs was and is conservative. *See* Corr. Mot. for Sanctions at 25, 42, ECF No. 1050-1 (noting the "conservative" nature of the amount requested); Decl. of Lesley E. Weaver and Derek W. Loeser in Supp. of Mot. for Sanctions ¶ 12, ECF No. 873-5 ("Plaintiffs are not currently seeking to recover all of the fees and costs that Plaintiffs incurred as a result of Facebook and Gibson Dunn's discovery abuse."). Plaintiffs also indicated they would supplement the motion with additional fee information at the appropriate juncture. *See* Corr. Suppl. Br. in Supp. of Sanctions at 8, 17, 26, 30, 36, ECF No. 1050-3; *see also* Reply in Supp. of Mot. for Sanctions at 26, ECF No. 1050-2.

As noted above, every dollar in sanctions will be one more dollar available to the class. It would be in the class's best interest, therefore, for the Court to allow Plaintiffs to submit a full accounting of the fees and costs resulting from any discovery misconduct that the Court determines is sanctionable. This would be most efficiently done after the Court issues an order delineating that misconduct.

Sincerely,

Derek W. Loeser
dloeser@kellerrohrback.com

Lesley E. Weaver
lweaver@bfalaw.com


cc:   Service-FB-CA_MDL@gibsondunn.com