GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
  rring@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK, INC., GIBSON, DUNN & CRUTCHER LLP, AND ORIN SNYDER'S RESPONSE TO TIMELINES SUBMITTED BY PLAINTIFFS AT THE SEPTEMBER 15, 2022 HEARING** |

Pursuant to the Court's order (Dkt. 1057), Facebook, Gibson Dunn, and Orin Snyder submit this response to "timelines" Plaintiffs gave to the Court at the September 15, 2022 hearing.

Plaintiffs' "timelines" are actually additional argument and omit critical context, particularly with respect to ADI and named plaintiff data ("NP data") including discovery hearings before Judge Corley, related court orders and filings, and discovery mediations.  As we have acknowledged, there were far too many disputes and far too few compromises, but we truly believe this omitted context shows that the resulting delay in resolving discovery disputes was not due to misconduct.  Just a month before the February 10, 2022 CMC, Judge Corley described the ongoing Special Master proceedings as being consistent with her ADI and NP data orders.  Dkt. 806 at 1 ("The Special Master's order is exactly what this Court's ADI Order contemplated."); Dkt. 807 at 4 (The Special Master is "work[ing] with the parties to determine what, if any, [NP data] from these systems should be produced consistent with [Rule 26]").  While Judge Corley rejected Facebook's appeals, she also rejected Plaintiffs' suggestion of that they were improper:  "I'm just going to stop you there. . . . They do have a right to appeal.  And Special Master Garrie responded and narrowed his orders in response to their motions for reconsideration.  So I don't think you can make an argument that there was anything bad faith about that at all because he responded to it. . . .  And they haven't appealed every order . . . [or] every aspect of every order. . . . I couldn't let that stand uncorrected.  I don't think that's fair."  Dkt. 830-3 at 54:6-23

As explained below, the omitted context reveals a pattern: (1) Plaintiffs seek "all" documents on a topic, (2) Facebook objects, in part, based on privilege, relevance, and/or proportionality, (3) Judge Corley and/or discovery neutrals try to narrow the issues, (4) the parties meet and confer and are generally unable to reach agreement, (5) Judge Corley rules on threshold legal issues (privilege for ADI and discoverability for NP data), and (6) the parties litigate remaining issues before the Special Master.  As we expressed to the Court during the motion hearing, we are very sorry for the role we played in this pattern and the resulting delay.  During the February 10, 2022 CMC, we saw the Court's frustration, we learned from it, and we immediately committed to a different approach.

**Named Plaintiff Data**.  Plaintiffs' NP data timeline omits relevant context.  Between *July and October 2020*, Judge Corley worked with the parties to narrow Plaintiffs' request for NP data,

and, by August 2020, concluded it was "a chicken-and-egg problem" and ordered the parties to "adjudicate that dispute as to discoverability," Dkt. 541 at 14:20-17:20, which she further explained was "just a legal question" and "not proportionality or over-breadth," Dkt. 509 at 5:18-22.  Plaintiffs said they wanted "only a holding that the sensitive data Facebook collected [about named plaintiffs] and *shared* with third parties is relevant" and "[did] not contend that information that was not shared is relevant." Dkt. 547-2 at 9.  On October 29, 2020, Judge Corley issued Discovery Order No. 9.

Between *October 2020 and April 2021*, consistent with her description of the issue decided in Discovery Order No. 9 (discoverability, not proportionality), Judge Corley's subsequent hearings and orders make clear that *discovery* on the three categories of data identified in the order is a distinct issue from *production* of "all data" in those categories.  In December 2020, Judge Corley ordered a Rule 30(b)(6) deposition to address the parties' "disconnect" (Dkt. 589 at 29:23-30:14) on the meaning of "shared or made accessible" by allowing Plaintiffs to ask questions about data in the three categories, even if Facebook said it was not shared or made assessible, to "verify the representation that yes, we collect this information . . . but it is not made accessible to third parties." *Id.* at 35:3-5; *id.* at 34:22-35:1 (emphasis added) ("[N]o doubt the deponent will talk about information that they collect but don't share . . . *And then we will talk about whether that is responsive or not*."); Dkt. 588 ("What is needed now is more detail about Facebook's collection and use of user data so future discovery requests can be tailored to . . . data that is potentially responsive to Plaintiffs' discovery requests.").  In February 2021, Plaintiffs took the deposition, and rather than tailor their requests, wrote to Facebook in March "renew[ing]" their demand for production of "all data and information relating to the Named Plaintiffs."  Dkt. 914-8 at 1-2.  In April, Facebook responded (again) that it had produced data it believed could have been shared or made accessible.  Dkt. 914-9 at 6.

Between *April and October 2021*, Plaintiffs did not respond to Facebook's letter and raised the issue as an "impasse topic" in discovery mediation in July 2021.  In October 2021, the mediators declared impasse and authorized briefing to the Special Master.  Dkt. 916-4 ¶ 10.

Between *October 2021 and July 2022*, the parties litigated the remaining issues before the Special Master.  Plaintiffs filed a motion to compel Facebook "to identify all data sources that may contain information relating to the Named Plaintiffs" (as opposed to production of "all" such data).

Dkt. 780-1 at 0320-21. On November 29, 2021, the Special Master granted the motion, *id.* at 0109, and held numerous hearings over the next eight months after which he issued his July 1, 2022 order, adopting in full Facebook's proposal for what is essentially a sampling exercise. Dkt. 981-3. Plaintiffs' argument that Facebook violated Discovery Order No. 9 contradicts Judge Corley's January 12, 2022 order, describing these Special Master proceedings as determining "what, if any" additional NP data should be produced under Rule 26, and explaining that the Special Master, "with his technical expertise, is well-positioned to review the evidence and determine whether systems may contain *shared* Named Plaintiffs' data . . . [and] whether the production of potentially *shared* Named Plaintiffs' data is feasible and proportional to the needs of the case." Dkt. 807 at 4 (emphasis added). This is fully consistent with Judge Corley's description, in September 2020, of the issue decided in Discovery Order No. 9 (discoverability, not proportionality), and her subsequent order allowing a Rule 30(b)(6) deposition which recognized the distinction between *discovery* and *production* of data in these three categories. Whether data is shared or made accessible does not preclude discovery on this data, as Plaintiffs sought in their motion to compel before the Special Master, but, as the references to "shared" and "potentially shared" data in her January 12, 2022 order show, it is relevant to determining whether production of data in those categories is proportional to the needs of the case.

**ADI**. Plaintiffs' ADI timeline omit relevant context. Between *June 2020 and January 2021*, Judge Corley worked with the parties to narrow Plaintiffs' request for "all" ADI documents and to decide privilege issues in context by ordering a sampling process for ADI communications. *E.g.* Dkt. 476 at 36:8-37:7; Dkt. 513; Dkt. 602. Between *January and April 2021*, based on her review of sample ADI communications, Judge Corley told Plaintiffs, "I don't think [you] need every single document," and asked: "So what it is precisely that the Plaintiffs need from the investigation?" Dkt. 657 at 17:15-23. Plaintiffs responded: "[T]he facts underlying the investigation . . . the facts underlying these communications are what we're really seeking." *Id*. 18:1-15. On this basis, Judge Corley ordered the parties to meet and confer on "whether they can agree to production of a narrow set of documents," which the parties did in mediation between *April and June 2021*, reporting to Judge Corley "significant progress toward a negotiated resolution of Plaintiffs' request for ADI materials," Dkts. 655 ¶ 3, 662 ¶ 3, 671 ¶ 1. In June 2021, those efforts failed, and Judge Corley

ordered a joint brief on the status of the dispute. Dkt. 693 ¶ 2. On *July 26, 2021*, Judge Corley issued an order explaining the background and status of the dispute in which she described Facebook's current proposal and Plaintiffs' rejection of it as excluding background and technical reports, audits and interviews. Dkt. 711. On *September 8, 2021*, Judge Corley issued her ADI order, holding that ADI was not, as a general matter, work product, ordering Facebook to produce (for six sample apps) background and technical reports, audits, and interviews, and directing the parties to work with the Special Master on production of additional ADI documents. Dkt. 736 at 7.

Between *October and January 2021*, the parties worked with the Special Master on production of additional ADI documents, litigating attorney-client privilege issues not addressed in Judge Corley's ADI order and proportionality. After the parties filed briefs in late October 2021, Plaintiffs reported to Judge Corley that "the [special master] process is working I think as you intended" (Dkt. 750 at 4:5-6), and, in early December 2021, the Special Master held a hearing and issued production orders—order for ADI investigation documents became final on December 20, 2021, and order for ADI communications become final on January 31, 2022. Dkt. 766; Dkt. 917-8. Facebook then produced the documents under compulsion, as required to avoid a privilege waiver in another jurisdiction which had reached a different conclusion on the privilege issue.

The above context is particularly important to understanding why Facebook would argue that it believed production of ADI communications was not consistent with Judge Corley's ADI order. Judge Corley ordered a sampling of ADI communications, and based on her review, ordered the parties to meet and confer on whether they could agree on production of "facts underlying the investigation," and then ordered Facebook to produce documents Plaintiffs said prevented an agreement—background and technical reports, audits, and interviews. While we certainly would take a different approach in retrospect, Judge Corley, who guided this process, described it as "a mistake," Dkt. 830 at 11:22, and rejected Plaintiffs' suggestion that Facebook's reconsideration motions and appeal asserting this argument were pursued in bad faith, *id*. at 54:6-23.

**Privilege Log.** Plaintiffs' timeline wrongly implies the process of reviewing and producing de-designated documents was not completed until late July 2021 based on a "cross-reference spreadsheet." As Plaintiffs know, that spreadsheet was provided as a courtesy and the vast majority

of review and production was completed between May 11 and June 24.  Dkt. 1016-4 ¶ 13, 15.

**30(b)(6) Depositions.**  As an initial matter, as addressed in briefing and at the motion hearing, Plaintiffs have not moved for sanctions based on 30(b)(6) depositions.  Plaintiffs' timeline also omits and misrepresents relevant context.  As we have explained, Facebook responded to the draft 30(b)(6) notice Plaintiffs emailed on December 23, 2021.  At least three times, we asked Plaintiffs to revise the draft notice to comply with the Special Master's deposition protocol and the FRCP, which they did not do.  After Plaintiffs served the formal notice on March 1, 2022, they took the position that, unless we agreed to produce a witness for every topic, as written, they would take the issue to the Court.  It is also untrue that the Special Master "grant[ed] the relief sought" in Plaintiffs' sanctions motion filed after the Hendrix deposition.  As we have acknowledged, some of the conduct during that deposition was not appropriate.  Facebook immediately contacted Plaintiffs and agreed to all of the relief they said they wanted.  Plaintiffs nevertheless filed the sanctions motion.  Dkt. 935.  The following week, the parties stipulated to the relief previously agreed to and Plaintiffs withdrew the motion.  The Special Master simply entered that stipulated order.  Dkt. 936.

**Financial Documents.**  Plaintiffs' timeline wrongly states that Facebook did not produce any financial documents until February 2021.  In early 2020, Facebook produced SEC filings and other financial documents that were part of its FTC productions.  Dkt. 589 at 9:12-23.  Also, as Plaintiffs know, Judge Corley issued her first order on search strings in late 2020, and production of documents hitting on those search strings started after that and throughout 2021.  Plaintiffs' timeline also wrongly states that, after February 2022, Facebook produced documents it earlier stated did not exist.  These documents, many of which were created for Plaintiffs, were not responsive to their requests.

**Named Plaintiff Depositions.**  Plaintiffs' timeline omits that postponed because Plaintiffs had not amended their initial disclosures to provide a damages theory or responded to significant discovery requests, and only after the discovery mediators granted Facebook leave to file a motion to compel, which was later granted.  Dkts. 834, 845.

**Quips.**  Plaintiffs' timeline omit a year of work with Judge Corley to identify the documents Facebook would collect and review, covering 81 custodians and 140 search strings resulting in a review set of about 6 million documents, which includes Quips.

| | | |
|---|---|---|
| 1 | DATED: September 22, 2022 | */s/ Rosemarie T. Ring* |
| 2 | | Rosemarie T. Ring (SBN 220769) |
| 3 | | GIBSON, DUNN & CRUTCHER LLP |
| | | rring@gibsondunn.com |
| 4 | | 555 Mission Street, Suite 3000 |
| | | San Francisco, CA 94105-0921 |
| 5 | | Telephone: 415.393.8200 |
| | | Facsimile: 415.393.8306 |
| 6 | | *Attorneys for Defendant Facebook Inc.* |