GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
  rring@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**FACEBOOK, INC., GIBSON, DUNN & CRUTCHER LLP, AND ORIN SNYDER'S BRIEF IN RESPONSE TO THE COURT'S QUESTIONS AT THE SEPTEMBER 15, 2022 HEARING** |

Pursuant to the Court's order at the September 15, 2022 hearing on Plaintiffs' motion for sanctions, Facebook, Gibson Dunn, and Orin Snyder submit this letter brief addressing the following questions: (1) would a fee award paid from a common fund in a class settlement transform a sanctions award that is otherwise compensatory into one that is punitive in nature, and would it be permissible to deduct a compensatory sanctions award from a fee award to be paid from a common fund in a class settlement so that the class receives a larger recovery? (9/15/22 Tr. at 105:16-24; 111:4-16); and (2) for punitive sanctions, what procedural protections are required and would Facebook and its counsel invoke those protections? (*id.* at 105:22–107:5).

On the first question, we do not believe that a fee award paid from a common fund in a class settlement would transform a sanctions award that is otherwise compensatory into one that is punitive in nature. We also do not see any reason why any compensatory sanctions award cannot be deducted from a fee award to be paid from a common fund, as Plaintiffs' counsel say they intend to do.

On the second question, the imposition of punitive sanctions would require procedural protections akin to those afforded in a criminal contempt proceeding. We cannot agree to waive those protections without knowing what punitive sanctions might be awarded and what form the anticipated class action settlement and fee award will take. That said, we understand the Court's concern to be potential arguments that a fee award paid from a common fund in a class settlement transforms a sanctions award that is otherwise compensatory into one that is punitive in nature. While we continue to believe that no sanctions are warranted, and that Plaintiffs have not established the amount of any fees incurred as a result of any alleged discovery misconduct with the particularity required to support an award of fees that would be compensatory, we do not intend to argue before this Court or on appeal that a fee award paid from a common fund in the parties' anticipated class settlement would transform any sanctions award that is otherwise compensatory into one that is punitive in nature.

**I.    The Proposed Settlement Would Not Render An Otherwise Compensatory Monetary Sanction Punitive.**

If the Court were to award monetary sanctions that are compensatory in nature, we do not believe that an award of fees as a percentage of a common fund in the anticipated class settlement would render those sanctions punitive in nature.  The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense," and "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those who benefited by the suit."  *Boeing Co. v. Gemert*, 444 U.S. 472, 478 (1980).  For this reason, a fee award as a percentage of a common fund reflects the benefit produced for the class and, unlike a fee based on a lodestar, is not limited to time actually spent by counsel litigating the case.  *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination [of a proper percentage]: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases."); *cf. In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ("Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.").

Moreover, unlike a sanctions award, an award of fees as a percentage of a common fund would be paid by the class, not by Facebook.  As one leading treatise explains, "[c]ommon fund fee awards are . . . different than statutory fee-shifted awards" because "the former are treated by courts as fees paid by clients while the latter are viewed as fees paid by adversaries."  5 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 15:53 (6th ed.); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("[I]n common fund cases, a variant of the usual rule applies and

the winning party pays his or her own attorneys' fees; in fee-shifting cases, the usual rule is rejected and the losing party covers the bill."). Because "the prevailing plaintiffs are paying *their own* attorney's fees, not shifting those costs to their losing adversary," *Newberg & Rubinstein on Class Actions* § 15:53 (emphasis added), any compensation paid to Plaintiffs' counsel out of a common fund would not be attributable to Facebook for purposes of determining whether the fee award goes "further than to redress the wronged party 'for losses sustained,'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Rather, in a common fund settlement, as is agreed to in principle here, Facebook would be paying money into a common fund as compensation for the class's claims, and the class would then pay its attorneys for their service via a distribution from the common fund.

Facebook and its counsel also do not see any reason why it would not be permissible to deduct the amount of any compensatory sanctions award of fees from a fee award to be paid from a common fund in a class settlement, as Plaintiffs say they intend to do here. Indeed, since doing so would result in the class receiving a larger share of the settlement fund, it would seem to strengthen arguments that the settlement is fair, reasonable, and adequate in support of settlement approval.

Finally, to the Court's question about how to serve the goal of deterrence when parties settle a case in which a sanctions motion is pending, this case demonstrates that even the threat of sanctions by a federal court impacts how cases are litigated. As we expressed during the September 15, 2022 hearing, there were far too many discovery disputes in this case and far too few compromises, and, after the Court invited Plaintiffs to file a sanctions motion in the February 9, 2022 CMC, we abandoned what we believed were meritorious positions to avoid further disputes. The Court's ability to deter what it might conclude is discovery misconduct therefore does not depend on the imposition of sanctions, whether compensatory or punitive in nature.

## II. For Punitive Sanctions, Procedures Akin To Those Governing Criminal Contempt Proceedings Are Required.

"[W]hen a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001). Because "substantial punitive sanctions [are] enough like criminal contempt to warrant the same due process protections," *id.*, courts have required due process safeguards afforded a party in criminal contempt proceedings when issuing punitive sanctions of even a few thousand dollars, *see, e.g.*, *Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) ("$63,687.50 is an extraordinary amount for such non-compensatory sanctions. We've held that non-compensatory sanctions of that magnitude are akin to criminal contempt and may be imposed only by following the procedures applicable to criminal cases."); *Bobrick Washroom Equip., Inc. v. American Specialties, Inc.*, 2013 WL 12129368, at *5 (C.D. Cal. Feb. 20, 2013) ("When a court, relying on its inherent powers, imposes monetary sanctions not to compensate the injured party, but rather to vindicate its authority or deter future misconduct, such damages exceeding roughly $5,000 are 'akin to criminal contempt and may be imposed only by following the procedures applicable to criminal cases[.]'").

The procedural protections required in the criminal contempt setting turn on the nature of the alleged misconduct. "Our jurisprudence in the contempt area has attempted to balance the competing concerns of necessity and potential arbitrariness by allowing a relatively unencumbered contempt power when its exercise is most essential, and requiring progressively greater procedural protections when other considerations come into play." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994). As a result, "petty, direct contempts in the presence of the court traditionally have been subject to summary adjudication," *id.* at 832, whereas "further procedural protections are afforded for contempts occurring out of court, where the considerations justifying expedited procedures do not pertain," *id.* at 833. In these latter cases, "[a]n individual charged with

an indirect criminal contempt is entitled to the right to be advised of the charges; the right to a disinterested prosecutor; the right to assistance of counsel; a presumption of innocence; proof beyond a reasonable doubt; the privilege against self-incrimination; the right to cross-examine witnesses; the opportunity to present a defense and call witnesses; and the right to a jury trial if the fine or sentence imposed will be serious." *F.J. Hanshaw Enters.*, 244 F.3d at 1139.

Here, the alleged discovery violations occurred outside the presence of the Court, do not require immediate resolution in light of the impending settlement, and implicate complicated factual questions developed across 197 pages of briefing. *See Bagwell*, 412 U.S. at 833–34 ("Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding. Such contempts do not obstruct the court's ability to adjudicate the proceedings before it, and the risk of erroneous deprivation from the lack of a neutral factfinder may be substantial."). Under these circumstances, the procedural protections outlined in *F.J. Hanshaw Enterprises* would be required before the Court may impose punitive sanctions.

While Facebook and its counsel continue to believe that no sanctions are warranted and that Plaintiffs have failed to establish the amount of any fees incurred as the result of any alleged discovery misconduct with the particularity required to support an award of fees that would be compensatory, they do not believe that a fee award paid from a common fund in a class settlement would transform a sanctions award that is otherwise compensatory into one that is punitive in nature such that these due process protections would be required, so long as the Court ensures that any sanction "is 'calibrated to the damages caused by' the bad-faith acts on which it is based." *Goodyear*, 137 S. Ct. at 1186 (cleaned up). To the extent the Court wishes to impose *additional* sanctions as a penalty, however, it would need to afford the protections available in criminal contempt proceedings. *See id.* ("A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the

misconduct—then it crosses the boundary from compensation to punishment."); *Lu v. United States*, 921 F.3d 850, 861 (9th Cir. 2019) ("*Goodyear* clarified that when awarding attorneys' fees as a sanction for bad faith conduct, a district court must identify the conduct that abused the judicial process and, applying *Goodyear*'s but-for standard, identify only those expenses that the wronged party would not have incurred but for the misconduct.").

At the September 15, 2022 hearing, the Court asked whether Facebook and its counsel would invoke these procedural protections if the Court were to consider punitive sanctions. As explained above, while Facebook and its counsel cannot agree to waive in advance these fundamental protections without knowing what sanctions might be awarded and what form the anticipated class action settlement and fee award will take, we do not believe, and will not argue in this Court or on appeal, that a class action fee award renders a sanctions fee award punitive rather than compensatory.

DATED: September 22, 2022

/s/ *Rosemarie T. Ring*

Rosemarie T. Ring (SBN 220769)

GIBSON, DUNN & CRUTCHER LLP
rring@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Defendant Facebook Inc.*

105726642.12