| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*) | Lesley E. Weaver (SBN 191305) |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| 1201 Third Avenue, Suite 3200 | 555 12th Street, Suite 1600 |
| Seattle, WA 98101 | Oakland, CA 94607 |
| Tel.: (206) 623-1900 | Tel.: (415) 445-4003 |
| Fax: (206) 623-3384 | Fax: (415) 445-4020 |
| dloeser@kellerrohrback.com | lweaver@bfalaw.com |

*Plaintiffs' Co-Lead Counsel*

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEES AND COSTS SOUGHT AS SANCTIONS**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor |

## I.     INTRODUCTION

In response to the Court's invitation, ECF No. 1073, this brief addresses the reasonableness of the fees and costs incurred as a result of two categories of misconduct: misconduct associated with the App Developer Investigation (ADI) and misconduct associated with the Named Plaintiffs' data.

Except for the declaration submitted along with this brief, much of the evidence and argument supporting Plaintiffs' fees and costs is already part of the record. This brief, therefore, will discuss and apply the legal standard of *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), and gather references to relevant evidence and argument in a single place.

## II.     ARGUMENT

### A.     Legal standard

Should the Court sanction Facebook, Gibson Dunn, or both for their misconduct, Plaintiffs are entitled to fees and costs "incurred because of the misconduct at issue." *Goodyear*, 137 S. Ct. at 1186. Such an award is "the sum total of the fees [and costs] that, except for the misbehavior, would not have accrued." *Id.* at 1187.

A district court "has broad discretion to calculate fee awards under that standard." *Id.* at 1184. In assessing an award, courts "need not, and indeed should not, become green-eyeshade accountants." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "'The essential goal' . . . is 'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox*, 563 U.S. at 838). "Accordingly, a district court 'may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* (quoting *Fox*, 563 U.S. at 838). Thus, a court has the discretion to "decide . . . that all (or a set percentage) of a particular category of expenses . . . were incurred solely because of" the misconduct. *Id.*

"[F]or guidance on the reasonableness of fees," courts assessing sanctions look "to the lodestar amount, which is presumptively reasonable." *In re Personalweb Techs., LLC Pat. Litig.*, No. 18-md-02834-BLF, 2021 WL 796356, at *5 (N.D. Cal. Mar. 2, 2021) (citations omitted) (applying *Goodyear* to patent infringement litigation fees under 35 U.S.C. § 285). "The rates

prevailing in [this] district for 'similar services by lawyers of reasonably comparable skill, experience, and reputation' . . . furnish the proper measure" of reasonable hourly rates; this comparison "extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation.'" *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 893, 895 n.11 (1984)); *see also Harper v. Nevada Prop. 1, LLC*, 552 F.Supp.3d 1033, 1053 (D. Nev. 2021) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)) ("The Court may also rely on its own familiarity with the rates in the community to analyze those sought in the pending case.").

**B.   Plaintiffs' process of reviewing records and substantiating hours**

As noted above, this Court has broad discretion in determining the reasonableness of the hours claimed, discretion that extends to "us[ing] estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Here, in accordance with the Court's instructions, Plaintiffs have substantiated the number of hours claimed with billing records. Plaintiffs have also furnished a detailed explanation of how they collected and reviewed billing records to ensure that those records are informative for the Court and accurately reflect hours spent because of the misconduct. J. Decl. of Derek W. Loeser and Lesley E. Weaver Regarding Fees and Costs Incurred Due to Sanctionable Misconduct ("Accompanying Decl.") ¶¶ 4–20; *see Bruner v. City of Phoenix*, No. CV-18-00664-PHX-DJH, 2020 WL 554387, at *11 (D. Ariz. Feb. 4, 2020) (crediting attorneys' declaration "that the billing entries have been 'edited based on [their] billing judgment to eliminate any unnecessary, administrative, duplicative and excessive time entries.'").

Facebook's misconduct delayed this case considerably, but delay itself is imperfectly correlated with increased hours spent. To show that the time they seek is compensable, Plaintiffs have therefore not relied on delay. Rather, the records Plaintiffs are submitting have been carefully reviewed to ensure they comply with the but-for standard of *Goodyear*. Put differently, Plaintiffs have made every effort to ensure that the billed time resulted specifically from the relevant discovery misconduct, rather than from discovery more generally or from delays that

PLS.' SUPPL. BRIEF RE FEES AND                           2                           MDL NO. 2843

were not associated solely with the relevant discovery misconduct. Accompanying Decl. ¶ 5. Thus, the records Plaintiffs are submitting represent only a portion of the time Plaintiffs spent on discovery related to ADI and the Named Plaintiffs' data. For example, Plaintiffs have not sought compensation for reviewing ADI and Named Plaintiff documents produced by Facebook, nor any other work that Plaintiffs believe would have been necessary in the absence of misconduct. *Id.* ¶¶ 5, 7 & n.1.

The fees and costs identified in this submission are a small fraction of Plaintiffs' total fees and costs in this case. *Id.* ¶ 5. To be clear, Plaintiffs believe that the general approach that Facebook and Gibson Dunn took to this litigation greatly delayed progress and increased fees and costs well beyond what is sought in this submission. The fees and costs sought here, however, are limited to what would not have been incurred absent the two categories of sanctionable misconduct that the Court identified in its order.

**C.    Misconduct associated with the ADI**

The fees incurred because of Facebook's ADI-related misconduct fall into three periods.

### 1.   *April 7, 2021 to September 8, 2021*

At an April 6, 2021 hearing, Judge Corley told the parties that, as she saw it, privilege for the ADI turned on the dual-purpose doctrine. Under this doctrine, the work-product privilege does not shield documents generated by an investigation that would have been done in substantially the same form even without anticipated litigation. Judge Corley was certain that "the [ADI] was done in anticipation of litigation," but, given Facebook's public statements about the ADI, she could not "conceive of how it wouldn't have been done otherwise." ECF No. 928-4, Ex. 5 to the Joint Declaration in Supp. of Pls.' Mot. for Sanctions, at 16:9–12.[1] While she said she was prepared to rule on the privilege motion, she agreed to give Facebook an opportunity to present more evidence. *See id.* at 22:6–23, 23:18–19. After allowing attorney Snyder to speak at length, however, she cautioned Facebook not to "forget what the test is": "would the

---

[1] Unless otherwise noted, citations of exhibits are to the exhibits attached to ECF No. 873-5, the Joint Declaration of Derek W. Loeser and Lesley E. Weaver in Support of Plaintiffs' Motion for Sanctions.

investigation have occurred anyway[?]" *Id.* at 24:15–17. At the hearing, she deemed it "just inconceivable" that it would not have occurred anyway. *Id.* at 24:21.

After this April 6, 2021 hearing, then, Facebook knew what Judge Corley believed the dispositive issue to be, and that it was "inconceivable" that she would rule in Facebook's favor if Facebook did not address the dual-purpose doctrine. But Facebook did *not* address the doctrine in the Southwell Declaration it finally submitted in August 2021, *see* ECF No. 736 at 6, and it did not appeal Judge Corley's ruling in September. Facebook acted in bad faith in causing the delay that began on April 7, 2021, the day after the hearing before Judge Corley, and ended on September 8, the day Judge Corley ruled on privilege. *See* ECF No. 1050-1, Pls.' Corr. Mot. for Sanctions, at 15–17; ECF No. 1050-2, Pls.' Reply in Supp. of Mot. for Sanctions, at 7–9. The hours that Plaintiffs were forced to spend on the ADI dispute during that period were caused by Facebook's misconduct, would not have been spent otherwise, and are compensable.

  2. *September 9, 2021 to January 31, 2022*

In her ADI privilege ruling, Judge Corley directed the parties "to work with the Special Master regarding production of additional materials consistent with the guidance offered by this Order." ECF No. 736 at 7. As Plaintiffs have detailed elsewhere, Facebook disobeyed this directive, delayed matters unnecessarily, and raised arguments it knew were frivolous. *See* ECF No. 1050-1 at 18–24; ECF No. 1050-2 at 3–7. It was this bad-faith misconduct that forced Plaintiffs to spend time on the ADI dispute from September 9, 2021, the day after Judge Corley's ruling, until January 31, 2022, when the Special Master issued his final order on the ADI. That time is fully compensable.

  3. *After February 1, 2022*

After February 1, 2022, Plaintiffs incurred fees associated with Facebook's inadequate search for ADI documents, a search that violated the Special Master's order and was not disclosed for several months. *See* ECF No. 1050-3, Pls.' Corr. Suppl. Br. in Supp. of Sanctions, at 5–7. Because of this misconduct, Plaintiffs incurred fees they would not have otherwise incurred (*e.g.*, meeting and conferring at length with opposing counsel, informing the Court of

the issue).

### D.  Misconduct associated with the Named Plaintiffs' data

There are two periods during which Plaintiffs incurred fees because of the misconduct associated with the Named Plaintiffs' data.

#### 1.  *November 28, 2020 to January 31, 2022*

On October 29, 2020, Judge Corley issued an order delineating the scope of discoverable user data.[2] ECF No. 557. As Plaintiffs have explained elsewhere, Facebook violated Judge Corley's order and did so in bad faith. *See* ECF No. 1050-1 at 30–32; ECF No. 1050-2 at 14–17. This bad-faith misconduct required Plaintiffs to incur fees in fruitless attempts at obtaining further discovery. *See, e.g.*, ECF No. 928-21, Ex. 30 at 17–18; ECF No. 906-8, Ex. 32 at 6; ECF No. 906-10, Ex. 33 at internal exhibits 15, 16; ECF No. 906-18, Ex. 60 at 1. This stonewalling culminated in motion practice and an order from the Special Master—which Facebook then unsuccessfully appealed—confirming that Judge Corley had meant what she said. *See* ECF No. 1050-1 at 32–34. The work associated with that motion practice and appeal was necessary only because of Facebook's bad-faith misconduct.

#### 2.  *After February 1, 2022 to November 16, 2022*

After February 1, 2022, Plaintiffs continued to incur fees as a result of Facebook's misrepresentations about and delayed search for Named Plaintiffs' data. Facebook persisted in asserting that only Named Plaintiffs' data that was shared with third parties was discoverable, despite the orders referenced above. Further, it insisted that the Download Your Information files contained all of the Named Plaintiffs' data, only to disclose for the first time in June and July 2022 that it had preserved data from 137 Hive tables pursuant to a litigation hold in this matter and that it had another source of Named Plaintiffs' data that used a tool called Switchboard that had more information that were not included in the Download Your Information files. *See* ECF

---

[2] The sanctions period begins on November 28, 2020 to give Facebook a "grace period" of 30 days from Judge Corley's order. To put it differently, the sanctions period assumes that if Facebook had not engaged in misconduct, compliance with Judge Corley's order would have begun 30 days thereafter. This assumption is generous to Facebook.

No. 1050-3 at 12–16. As a result of Facebook's bad-faith failure to disclose this information, Plaintiffs incurred fees they would not otherwise have incurred, such as preparing submissions for and participating in highly technical hearings conducted by the Special Master concerning the sources of information Facebook should search for Named Plaintiffs' data and the burdens associated with such searches.

### E.     Fees incurred in seeking sanctions

Plaintiffs incurred fees associated with seeking sanctions (*e.g.*, gathering evidence, preparing briefs, participating in the hearing). Seeking sanctions was an enormous undertaking due to the duration and complexity of discovery and the extent of Facebook's misconduct. *See generally* Accompanying Decl. ¶¶ 46–53. To argue for sanctions, Plaintiffs submitted three briefs comprising 110 pages. In support of those briefs, they filed three detailed declarations by co-lead counsel, to which were attached a total of 142 exhibits.

Under the inherent power, 28 U.S.C. § 1927, and Rule 37(b), time spent seeking sanctions is compensable, since that time would not have been spent but for the misconduct. *See, e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) ("fees-on-fees" compensable under § 1927); *Harper*, 552 F.Supp.3d at 1047 (same, with respect to inherent authority); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17cv1943-LAB-LL, 2019 WL 3769191, at *10 n.11 (S.D. Cal. Aug. 9, 2019) (same, with respect to Rule 37(b)).

While Plaintiffs sought sanctions for several different categories of misconduct, Plaintiffs, in the present submission, have endeavored to include only time spent seeking sanctions for misconduct arising from the ADI and the Named Plaintiffs' data. *See* Accompanying Decl. ¶¶ 54–55.

Plaintiffs also incurred fees in preparing this brief and the accompanying declaration. They have been careful not to seek fees for any work that duplicated what was already done in connection with the earlier sanctions briefing. *Id.* ¶ 56.

### F.     Costs incurred because of misconduct

Facebook's discovery misconduct caused Plaintiffs to incur substantial expenses for

Judge Gail Andler's services as discovery mediator, and for Daniel Garrie's services both as discovery mediator and Special Master. In March 2021, when Judge Corley suggested that the parties retain a discovery mediator, the disputes related to ADI and the Named Plaintiffs' data were two of the (if not *the* two) most significant unresolved discovery disputes. Accompanying Decl. ¶¶ 60, 62. This remained the case when Plaintiffs pressed for a Special Master in June 2021, and the Court appointed one the next month. *Id.* ¶¶ 61, 63. It is more likely than not, therefore, that the parties would not have retained the discovery mediators, and the Court would not have appointed the Special Master, without the misconduct associated with the ADI and the Named Plaintiffs' data.

In the present submission, however, Plaintiffs have separated out those JAMS costs immediately related to the ADI and Named Plaintiffs' data disputes—the disputes that resulted from Facebook's misconduct, for which the Court has requested Plaintiffs' fees and costs. *See id.* Exs. 10, 11. Plaintiffs' careful process of collecting, reviewing, and selecting relevant JAMS costs is described in detail in the accompanying declaration. *Id.* ¶¶ 64–76.

### III.   CONCLUSION

For the reasons given above, Plaintiffs respectfully request that the Court, as sanctions for Facebook's and Gibson Dunn's misconduct associated with the ADI and the Named Plaintiffs' data, order that a total of $2,049,137.28 in fees and costs be paid, representing $435,803.00 in fees incurred due to misconduct associated with the ADI; $655,160.00 in fees incurred due to misconduct associated with the Named Plaintiffs' data; $693,676.50 in fees incurred in seeking sanctions for those two categories of misconduct; and $264,497.78 in costs incurred due to those two categories of misconduct.

| | |
|---|---|
| Dated: November 18, 2022 | Respectfully submitted, |

KELLER ROHRBACK L.L.P.

By:   */s/ Derek W. Loeser*
     Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice)*
Benjamin Gould (SBN 250630)
Emma M. Wright (admitted *pro hac vice)*
Daniel Mensher (admitted *pro hac vice)*
Michael Woerner (admitted *pro hac vice)*
Matthew Gerend (admitted *pro hac vice)*
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com
ewright@kellerrohrback.com
dmensher@kellerrohrback.com
mwoerner@kellerrohrback.com
mgerend@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

BLEICHMAR FONTI & AULD LLP

By:   */s/ Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on November 18, 2022, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Sarah Skaggs*
Sarah Skaggs