GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
    rring@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | CASE NO. 3:18-MD-02843-VC <br><br> **FACEBOOK, INC., GIBSON, DUNN & CRUTCHER LLP, AND ORIN SNYDER'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEES AND COSTS SOUGHT AS SANCTIONS** |

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ........................................................................................................................ 4

I.   Plaintiffs Have Failed to Demonstrate That Any ADI Fees or Costs Resulted
     from the Alleged Misconduct. ................................................................................... 4

     a.   Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred
          Between April 7, 2021 and Sept. 8, 2021. .......................................................... 5

     b.   Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred
          Between September 9, 2021 and January 31, 2022. ............................................ 7

     c.   Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred from
          February 1, 2022 Forward. ............................................................................... 11

II.  Plaintiffs Have Failed to Demonstrate That Any Fees or Costs Associated with
     NP Data Resulted from Alleged Misconduct. ......................................................... 12

     a.   Plaintiffs Are Not Entitled to Recover NP Data Fees and Costs Incurred
          Between November 28, 2020 and January 31, 2022. ......................................... 13

     b.   Plaintiffs Are Not Entitled to Recover NP Data Fees and Costs Incurred
          February 2022 to Present. .................................................................................. 16

III. Plaintiffs' Request for Fees and Costs Exceeds the Scope of Their Sanctions
     Motion. ................................................................................................................... 17

IV.  The Fees and Costs Plaintiffs Seek Are Unreasonable and Excessive. ..................... 20

CONCLUSION ................................................................................................................... 23

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackermann v. Carlson Indus., LLC*,
2004 WL 3708670 (C.D. Cal. Mar. 8, 2004) ...................................................................21

*Arceo v. Salinas*,
2017 WL 4959590 (E.D. Cal. Nov. 1, 2017) ...................................................................20

*Att'y Gen. v. Facebook, Inc.*,
164 N.E.3d 873 (Mass. 2021) .......................................................................................8

*Brown v. Google LLC*,
2022 WL 2789897 (N.D. Cal. July 15, 2022) .................................................................12

*Carr v. Tadin, Inc.*,
51 F. Supp. 3d 970 (S.D. Cal. 2014) .............................................................................21

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ....................................................................................21

*Citizens for Free Speech, LLC v. County of Alameda*,
2019 WL 11005503 (N.D. Cal. Jan. 14, 2019) ..................................................................4

*Fox v. Vice*,
563 U.S. 826 (2011) ...................................................................................................4

*Gauchat-Hargis v. Forest River, Inc.*,
2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ..................................................................21

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ...............................................................................20, 21

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178 (2017) ....................................................................................1, 2, 3, 12

*In re Grand Jury*,
No. 21-1397 (U.S.) .....................................................................................................8

*Hansberry v. Lee*,
311 U.S. 32 (1940) ................................................................................................3, 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..............................................................................................4, 20

*Lu v. United States*,
921 F.3d 850 (9th Cir. 2019) .......................................................................................10

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*McCown v. City of Fontana,*
   565 F.3d 1097 (9th Cir. 2009)...................................................................................20

*Optrics Inc. v. Barracuda Networks Inc.,*
   2021 WL 411349 (N.D. Cal. Feb. 4, 2021) ..............................................................3

*In re Personalweb Techs., LLC Patent Litig.,*
   2021 WL 796356 (N.D. Cal. Mar. 2, 2021)...........................................................3, 4

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,*
   281 F. Supp. 3d 833 (N.D. Cal. 2017) ....................................................................21

*Samsung Elecs. Co. v. Panasonic Corp.,*
   2019 WL 4439489 (N.D. Cal. Mar. 6, 2019) .............................................................4

*Sullinger v. Sullinger,*
   2021 WL 9182907 (N.D. Ohio June 28, 2021) ..........................................................4

*Superior Consulting Servs., Inc. v. Steeves-Kiss,*
   2018 WL 2183295 (N.D. Cal. May 11, 2018) ...........................................................4

*Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.,*
   834 F.2d 833 (9th Cir. 1987)...................................................................................20

**Rules**

Civ. Local Rule 37-4 ...................................................................................18, 19

Civ. Local Rule 7-2(b) ...................................................................................2, 19

Fed. R. Civ. P. 7(b) .......................................................................................2, 19

Fed. R. Civ. P. 37 ..............................................................................................18

Gibson, Dunn &
Crutcher LLP

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

**INTRODUCTION**

Nearly nine months ago, Plaintiffs filed a motion for sanctions seeking $854,195.72 in fees and costs relating to three discovery topics: ADI, named plaintiff data ("NP data"), and named plaintiff depositions.  *See* Dkt. 879.  Now, in response to the Court's order to "submit billing records for the attorney's fees incurred as a result of the alleged misconduct associated with" ADI and NP data, Dkt. 1073, Plaintiffs seek $2,049,137.28 in fees and costs—more than *double* what they sought in their motion and more than one-third of which is for the sanctions motion itself.  Dkt. 1079 at 7.  Since the issue of sanctions was first raised by the Court during the February 10, 2022 case management conference, Facebook and Gibson Dunn have tried (and, whatever happens here, will continue to try) to regain the Court's confidence and to learn from this experience, which has taken a toll on everyone involved, both personally and professionally, in ways the Court will never know.  As explained in briefing and during the motion hearing, while Facebook and Gibson Dunn understand (and regret) that there were too many disputes and too few compromises on discovery issues in this case, those issues were nuanced and technically complex, resulting in a pattern and processes that took longer than anyone anticipated or wanted: the parties had opposite views and could not find middle ground; Judge Corley and the discovery neutrals attempted to narrow the issues, but ultimately that narrowing required Judge Corley to rule on threshold issues; and the Special Master then conducted proceedings to resolve remaining issues of relevance, burden, and proportionality.  Facebook and Gibson Dunn participated in these processes, asserting positions that they believed were consistent with orders issued by Judge Corley and the Special Master throughout.  Accordingly, the Court should deny Plaintiffs' sanctions motion, but, at a minimum, should reject or substantially reduce Plaintiffs' exorbitant request for fees and costs, as both procedurally improper and facially unreasonable.

*First*, Plaintiffs have not demonstrated that any of the fees and costs they seek are the result of alleged misconduct by Facebook or Gibson Dunn.  Plaintiffs acknowledge that they are not entitled to recover fees for "delays" and can seek only fees incurred "because of . . . misconduct," meaning those which, "'except for the conduct, would not have accrued,'" Dkt. 1079 at 1–2 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-87 (2017)), but do nothing to

1

demonstrate that their claimed fees and costs "were incurred because of, and *solely* because of," any alleged misconduct. *Goodyear*, 137 S. Ct. at 1189 (emphasis added). At bottom, Plaintiffs' request is premised on the contention that Judge Corley resolved the issues of (1) what ADI documents should be produced in April 2021 when she provided her "tentative view" during a discovery conference on Facebook's general assertion of work product over the ADI; and (2) what *additional* NP data should be produced through her holding in Discovery Order 9, and that Facebook and Gibson Dunn are to blame for all further proceedings on those topics. But Judge Corley's "tentative view" on ADI was followed by additional orders directing further briefing on the issue and then a ruling rejecting Facebook's general assertion of work product over the ADI, ordering production of certain ADI documents for six apps from the sampling exercise leading to that ruling, and directing the parties to "work with the Special Master regarding production of additional materials consistent with the guidance offered by this Order." Dkt. No. 736, at 7. Likewise, Discovery Order 9 did not require the production of NP data, but instead addressed the scope of permissible discovery, leaving remaining issues of proportionality to be decided by the Special Master, as confirmed by Judge Corley in a subsequent hearing on NP data and by the Special Master's NP data order requiring production of what is essentially a sample of NP data. Accordingly, the ADI and NP data proceedings for which Plaintiffs seek fees and costs were not the result of any alleged misconduct (much less *solely* because of it), but instead reflect the nuanced and highly-technical nature of these issues resulting in a phased resolution, beginning with orders from Judge Corley resolving threshold issues and then Special Master proceedings on remaining issues of relevance and proportionality.

**Second**, Plaintiffs' fees request is procedurally improper. Both the Federal Rules and this Court's Local Rules require a party to file a *motion* specifying both the relief sought and the grounds for that relief. *See* Fed. R. Civ. P. 7(b); Civ. Local Rule 7-2(b). While Plaintiffs filed a motion for sanctions, their purported "supplemental brief" requests $1,194,941.56 in entirely new relief not identified in that motion. And it seeks fees for entire categories of conduct—including nearly $700,000 in fees on fees—that Plaintiffs never so much as hinted at prior to its most recent filing. This is not merely a technical violation. Absent compliance with the rules governing motions practice, Facebook and its counsel lack the fair notice and opportunity to respond that form the

Gibson, Dunn &
Crutcher LLP

1    foundation of due process.  *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

2         **Third**, Plaintiffs do not satisfy their burden of demonstrating that the requested fees are

3    reasonable.  They make no effort to justify their hourly rate.  And their billing records are replete

4    with unnecessary and unreasonable entries, as documented in the accompanying declaration of Gary

5    Greenfield, an expert on legal fees.  This clear overbilling includes more than ███████████████

6    ███████     that lasted approximately five hours on the record, as well as numerous instances of ██

7    ███████████████████████████████████████████.  Awarding such unreasonable and

8    unnecessary fees as a sanction would violate the *Goodyear* standard.

9                                          **LEGAL STANDARD**

10        As Plaintiffs correctly acknowledge (Dkt. 1079 at 1), their request for fees and costs is

11   governed by the framework that the Supreme Court established in *Goodyear Tire & Rubber Co. v.*

12   *Haeger*, 137 S. Ct. 1178, 1186 (2017).  Under that framework, the Court must first determine

13   whether the requested fees were "incurred *because of* the misconduct at issue."  *Goodyear*, 137 S. Ct.

14   at 1186 (emphasis added).  This test is designed to ensure that any sanctions award is "compensatory

15   rather than punitive in nature."  *Id.*  A sanction is compensatory only if it "go[es] no further than to

16   redress the wronged party 'for losses sustained'" as a result of the sanctionable conduct.  *Id.*

17        To determine whether attorney's fees were incurred "because of" that conduct, courts apply

18   "a but-for test: The complaining party (here, [Plaintiffs]) may recover 'only the portion of his fees

19   that he would not have paid but for' the misconduct."  *Id.* at 1187.  And crucially, "[t]his but-for

20   causation standard generally demands that a district court assess and allocate *specific litigation*

21   *expenses* . . . to determine whether *a given legal fee*—say, for taking a deposition or drafting a

22   motion—would or would not have been incurred in the absence of the sanctioned conduct."  *Id.*

23   (emphases added).

24        If the court concludes that a given fee was incurred "because of" the sanctionable conduct, it

25   must then determine whether the *amount* of the fee requested is reasonable.  *See In re Personalweb*

26   *Techs., LLC Patent Litig.*, 2021 WL 796356, at *5 (N.D. Cal. Mar. 2, 2021); *Optrics Inc. v.*

27   *Barracuda Networks Inc.*, 2021 WL 411349, at *8 (N.D. Cal. Feb. 4, 2021).  Reasonableness is

28   determined "by conducting a lodestar analysis of the hours expended and the hourly rate charged."

*Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at \*1 (N.D. Cal. May 11, 2018).

And importantly, "[t]he number of hours is based only on the amount of time '*reasonably expended*

on the litigation' and excludes 'hours that are excessive, redundant, or otherwise unnecessary.'" *In re*

*Personalweb Techs.*, 2021 WL 796356, at \*5 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34

(1983)) (emphasis added).

At both stages of the analysis, the fee applicant bears the burden. *See Samsung Elecs. Co. v.*

*Panasonic Corp.*, 2019 WL 4439489, at \*3 n.5 (N.D. Cal. Mar. 6, 2019) (noting "Panasonic's failure

to meet its 'but for' burden"); *Sullinger v. Sullinger*, 2021 WL 9182907, at \*1 (N.D. Ohio June 28,

2021) ("Carol bears the burden to prove the requested fees would have been unnecessary but-for

Plaintiffs' bad-faith conduct."); *Citizens for Free Speech, LLC v. County of Alameda*, 2019 WL

11005503, at \*10 (N.D. Cal. Jan. 14, 2019) ("The fee applicant bears the initial burden of proving

that the proposed number of hours to use in the lodestar calculation is reasonable."). This includes

the burden to present sufficient evidence to substantiate the requested fees. *See Fox v. Vice*, 563 U.S.

826, 838 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit

appropriate documentation to meet 'the burden of establishing entitlement to an award.'").

**ARGUMENT**

**I.**   **Plaintiffs Have Failed to Demonstrate That Any ADI Fees or Costs Resulted from the Alleged Misconduct.**

Plaintiffs have failed to show that any of the fees or costs they seek in connection with ADI

were incurred as a result of alleged misconduct. The Court should deny Plaintiffs' ADI fee request for

this reason alone.

Plaintiffs seek $435,803 in fees and nearly ███████████ relating to ADI disputes,

based on the contention that *no* further negotiation or litigation about the production of ADI

documents should have been necessary after April 6, 2021, because during a discovery conference on

that date Judge Corley expressed her "tentative view" that ADI served a "dual purpose." Dkt. 657 at

16:9, 24:16. Judge Corley did not, however, order production of any ADI documents at the April 6

conference and recognized that privilege, relevancy, and burden issues remained unresolved.

Regarding privilege, Judge Corley stated: "[T]here certainly are going to be documents in

there that are, A, attorney-client privilege; or, B, attorney work product," and those categories of documents "are not going to be discoverable." *Id.* 16:22–17:3. With respect to relevance and proportionality, Judge Corley observed, "looking at those documents . . . a lot of it I don't think is relevant at all," "the [Massachusetts] AG did much more targeted discovery," and "I don't think plaintiffs need every single document." *Id.* at 17:8-18. She asked: "So what is it precisely that the plaintiffs need from that investigation?" *Id.* at 17:22-23. Plaintiffs responded that they needed "the facts underlying the investigation that relate to our claims." *Id.* at 18:1–4.

Far from ordering Facebook to produce all ADI documents, this exchange put the parties on notice that "a lot" of ADI documents were not relevant and that work remained to determine which ADI documents should be produced. In their original motion (Dkt. 1050-1 at 15-17), Plaintiffs argued that Facebook engaged in "foot dragging" and "delay" in working through those issues, but their fee request (Dkt. 1079 at 1-3) correctly acknowledges they are entitled to recover only fees and costs they would not have incurred but for misconduct and are not entitled to recover for work Plaintiffs would have done anyway but believe should have been completed on a more accelerated timeline. Despite this acknowledgement, Plaintiffs appear to seek recovery for nearly ***all*** work relating to ADI after April 6, 2021 (other than document review, which is the only task they identify as not included, *id.*).

### a. Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred Between April 7, 2021 and Sept. 8, 2021.

Plaintiffs seek approximately ███████ in attorney fees and ███████ in JAMS costs for work relating to ADI between April 7, 2021 and September 8, 2021. This period predates any order requiring production of ADI documents, and the fees Plaintiffs seek are for litigation activity (including negotiations between the parties that Plaintiffs reported to Judge Corley were going well) that are not the result of any misconduct.

***Fees and costs related to ADI-negotiations***. Plaintiffs seek more than ███████ in attorney fees and ███████ in JAMS costs relating to the parties' negotiation of the ADI issue between April and July 2021. On April 23, 2021, the Parties jointly reported to Judge Corley: "The parties made significant progress toward a negotiated resolution of Plaintiffs' request for ADI materials. The parties

5

Gibson, Dunn &
Crutcher LLP

agree to pursue a negotiated resolution of this issue (in lieu of a court order) at this time, and they will continue to work with Judge Andler to do so." Dkt. 662 at 2. On May 17, 2021, they again reported "progress toward resolving or narrowing" the dispute. Dkt. 671. Plaintiffs would not have agreed "to pursue a negotiated resolution of [the ADI] issue (in lieu of a court order)" had they thought Judge Corley conclusively resolved the dispute in their favor. That statement confirms that Judge Corley's guidance on April 6, 2021 left open a number of issues that created risks for both sides, and the parties agreed to reach a compromise.

Between April and June 2021, the parties' ADI negotiations focused almost exclusively on a request from Plaintiffs that Facebook produce specific data about apps suspended during ADI (as opposed to existing ADI documents), which, at the time, Plaintiffs described as the "underlying facts" they sought from the investigation. Dkt. 699 at 1-2. After Facebook agreed to provide a large amount of data about these apps, Plaintiffs abandoned the request and instead demanded investigatory reports and internal communications. *Id.* Plaintiffs are not entitled to recover for these negotiations, which they voluntarily entered and drove.

***Joint letter ordered by Judge Corley.*** On June 23, 2021, Judge Corley ordered the parties to complete their ADI negotiations by July 2, 2021, or to submit a joint letter to the Court addressing what Facebook agreed to provide and any additional information Plaintiffs were seeking. Dkt. 693. The parties submitted a joint letter in which Plaintiffs abandoned their request for data about suspended apps (dismissing it as having "little utility") and instead sought "an order requiring production of communications and documents related to Phases 2 and 3 of the investigative process . . . as well as the summary reports [Facebook's] consultants and/or the DevOps team created." Dkt. 699 at 5. Plaintiffs are not entitled to recover fees in connection with this letter (█████████████████ ████████████████), which was ordered by Judge Corley, and did not result from any alleged misconduct. To the contrary, Plaintiffs' shift in position unwound significant progress that the parties had made toward a negotiated agreement regarding ADI.

***June 24, 2021 CMC.*** Plaintiffs seek approximately ████ in attorney fees as part of their ADI request ████████████████████████████████, where ADI was not

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

mentioned in the parties' ███ statement (Dkt. 686) or at the conference (Dkt. 705).  Plaintiffs are not entitled to collect these fees, which also raise serious questions about Plaintiffs' billing practices.  The transcript of the ███████████ (*id.*) indicates the conference lasted 26 minutes (from 2:22 pm until 2:48), but lead counsel recorded ████████████████ ████████████████████████ Dkt. 1080 Ex. 4 at 2.  Another attorney recorded ██████████████████████████████████████████████████ ████████████████████████████████████████ Dkt. 1080 Ex. 3 at 4.

*Southwell Declaration.*  Despite seeking fees for a much broader set of tasks (as outlined above), the only alleged "misconduct" between April and September 2021 that Plaintiffs mention in their fee request (Dkt. 1079 at 3-4) is Facebook's submission of a declaration on August 2, 2021 that Plaintiffs say should have (but did not) discuss the Ninth Circuit's "dual purpose" doctrine, in light of Judge Corley's guidance that the "dual purpose" doctrine would apply to the ADI dispute.  The order calling for the declaration (Dkt. 711 at 3) did not instruct Facebook to provide a legal analysis of the dual-purpose doctrine.  The order instead granted a request from Facebook to submit evidence supporting its claim of privilege over materials Plaintiffs requested in the parties' July 2, 2021 letter brief, Dkt. 699 at 3, and rejected Facebook's request to submit an additional legal brief about those materials, Dkt. 711 at 3.

Given the Court expressly rejected Facebook's request to submit legal argument, and consistent with Local Rule 7-5 (which states "[a]n affidavit or declaration may contain only facts . . . and must avoid conclusions and argument"), the Southwell Declaration provided facts Facebook believed established work product protections over ADI documents.  Facebook's compliance with Judge Corley's instructions and the Local Rules cannot be a basis for sanctions.  Plaintiffs are not entitled to recover for work relating to reviewing or responding to the declaration, which was in no respect a sanctionable submission.

### b. Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred Between September 9, 2021 and January 31, 2022.

On September 8, 2021 Judge Corley issued the first ADI Order that required Facebook to produce documents, providing Facebook two weeks to produce "background and technical reports,

7

audits, and developer interviews" for "six exemplar apps [previously] chosen by the parties," (which Facebook did) and directing the parties to "work with the Special Master regarding production of additional materials consistent with the guidance offered by [the] Order." Dkt. 736 at 7. In accordance with this express directive from Judge Corley, the Special Master worked with the parties over several months and issued his final ADI order on January 31, 2022. Dkt. 870-3. Plaintiffs argue (Dkt. 1079 at 4) that ADI-related fees and costs incurred from September 2021 through January 2022 are "fully compensable," because Facebook "delayed" the Special Master proceedings and made "frivolous" arguments. On this basis Plaintiffs seek nearly ███████ in attorney fees and approximately ███████ in JAMS costs. But Plaintiffs do not demonstrate that any of these fees or costs are directly attributable to any misconduct. Nor could they. The proceedings before the Special Master were *ordered* by Judge Corley to further execute her order, many of the fees and costs Plaintiffs seek are for motions to reconsider filed by Facebook that the Special Master *granted*, and Judge Corley rejected Plaintiffs' position that reconsideration motions and an appeal for which they now seek to recover were brought in bad faith.

   *Alleged delays*. Citing their original motion (Dkt. 1050-1 at 18-24), Plaintiffs claim Facebook caused delay between Judge Corley's September 8, 2021 Order and a Special Master Hearing held on December 4, 2021, because Facebook (1) did not make a proposal to produce additional ADI documents and; (2) requested a hearing continuance to accommodate counsel's trial schedule. As discussed in Facebook's prior briefing, this conduct is not sanctionable. Facebook could not make a proposal to produce ADI documents beyond what Judge Corley ordered without potentially waiving its claim of privilege on appeal in this case and in other jurisdictions, including in Massachusetts, where the Supreme Judicial Court affirmed Facebook's privilege assertion over ADI materials. *See Att'y Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 878, 881 (Mass. 2021). Facebook had a good-faith basis for protecting this privilege claim, which has only been confirmed by the Supreme Court's recent announcement that it will consider the scope of the "dual purpose" doctrine later this Term. *See In re Grand Jury*, No. 21-1397 (U.S.). Nor was it sanctionable for Facebook to request a hearing continuance. If the Special Master believed the request was unfounded, he could have denied it.

Plaintiffs also fail to identify any fees or costs they would not have incurred *but for* alleged delays during these proceedings.  In view of Judge Corley's instructions that the parties work with the Special Master on additional ADI productions, Dkt. 736 at 7, Plaintiffs would have incurred the same attorneys' fees and JAMS costs even if the Special Master proceedings had occurred more quickly. That includes fees and costs Plaintiffs seek to recover for: ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████. This work is not compensable as a sanction under the *Goodyear* framework.

**Alleged "frivolous arguments."**  Plaintiffs next argue they are entitled to recover fees and costs because Facebook advanced "frivolous" arguments at the December 4, 2021 Special Master hearing and in later reconsideration motions and on appeal to Judge Corley.  *See* Dkt. 1079 at 4, citing Dkt. 1050-1 at 20-24.  For this argument, Plaintiffs point to Facebook's position that the Special Master should reject Plaintiffs' request for internal ADI communications, because Judge Corley had already rejected the request.  While Judge Corley did not agree with this position, Facebook advanced it in good faith, in light of the sampling exercise involving ADI communications leading up to Judge Corley's September 8, 2021 ruling, which did not require production of a single ADI communication.

On February 5, 2021, Plaintiffs moved to compel ADI communications and other materials. Dkt. 611.  After reviewing a sample of ADI communications selected by Plaintiffs, Judge Corley observed they included communications that were "A, attorney-client privilege; [and], B, attorney work product," Dkt. 657 at 16:22–17:3, and "a lot of it I don't think is relevant at all," *id.* at 17:8-10.  She did not issue a ruling on the communications at the time, noting:  "I'm afraid I'm just going to rule on these 20 documents and then we're going to be back here with every single document."  *Id.* at 17:15-17.

Three months later, on July 2, 2021, Plaintiffs asked Judge Corley to order Facebook to produce ADI investigation materials and ADI communications. Dkt. 699 at 3-5.  On September 8, 2021, Judge Corley issued a ruling that resolved all pending ADI motions (including the February 5 and July 2 motions).  The order required Facebook to produce ADI investigation materials for a set of six exemplar apps, did not order production of any ADI communications, and instructed the parties to "work with

9

the Special Master regarding production of additional materials consistent with the guidance offered by [the] Order." Dkt. 736 at 7.  In context, Facebook understood Judge Corley to have found ADI investigation documents, which included background and technical reports, interviews, and audits, to satisfy Plaintiffs' request for "underlying facts" from ADI, and the review of ADI communications, many of which she previously identified as privileged and/or not relevant, to not be reasonable or proportionate.  Judge Corley stated this understanding was "a mistake," Dkt. 830-3 at 11:20-22, but rejected Plaintiffs' view that Facebook advanced arguments in bad faith in seeking reconsideration and appealing the Special Master's ADI orders, *id.* at 54:6-23.

Plaintiffs also do not identify any fees or JAMS costs they would not have incurred *but for* Facebook's position that Judge Corley rejected Plaintiffs' request for ADI communications.  Plaintiffs are not entitled fees or costs for any litigation activities, without "engag[ing] in 'the grind of segregating individual expense items . . .' to determine which fees 'would not have been incurred except for the misconduct,'" which they make no effort to do.  *Lu v. United States*, 921 F.3d 850, 860 (9th Cir. 2019).

Facebook's argument on ADI communications was not the only issue addressed during the December 4, 2021 Special Master hearing, which covered all outstanding ADI arguments.  Dkt. 794-2.  Nor was the ADI-communications argument the reason for the Special Master's December 8, 2021 Order Regarding Production of ADI materials, which resolved the Parties' ADI disputes and dedicated only one of 16 paragraphs to the argument Plaintiffs challenge.  *See* Dkt. 804-3 at 383-4 ¶ 12.  That argument similarly was not the "sole[]" or "but for" reason for any fees or costs Plaintiffs incurred in connection with Facebook's December 15, 2021 Reconsideration Motion, which sought reconsideration of the Special Master's December 8, 2021 Order on five grounds and was successful.  *Id.* at 0006-25.  In response to Facebook's motion, the Special Master amended his order on December 20, 2021 to address administrability issues and legal errors Facebook raised.  *Id.* at 0001-5.

The ADI-communications argument also was not the sole reason for any work Plaintiffs performed in response to Facebook's appeal to Judge Corley, which similarly raised multiple arguments.  Dkt. 778.  Plaintiffs did not submit a written response to Facebook's notice of appeal,[1] and

---

[1]    The Court's Rule 53 Order (Dkt. 709) did not permit a response.  Plaintiffs, however, moved to

10

Gibson, Dunn &
Crutcher LLP

Plaintiffs would have needed to prepare for and attend the January 11, 2022 appeal hearing (which concerned multiple appeals) even if Facebook had not raised this argument. Dkt. 809. Plaintiffs' counsel presented only a few minutes of argument regarding ADI at the hearing. After breaching the Protective Order two times, Judge Corley found counsel "struck out." *Id.* at 21:23-25.

For each of these activities, Plaintiffs have made no effort to apportion any expenses from these activities they believe were caused directly by the purported misconduct. Instead, they have simply lumped together ADI-related fees and costs irrespective of whether they were caused by any allegedly sanctionable conduct. Plaintiffs also should not be awarded fees and costs for work performed between September 2021 and January 2022 on the submitted invoices but which Plaintiffs do not even claim have any connection to misconduct, including work in connection with ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████. *See* Dkt. 1080 Ex. 3 at 10; Ex. 4 at 6.

### c. Plaintiffs Are Not Entitled to Recover ADI Fees and Costs Incurred from February 1, 2022 Forward.

Plaintiffs seek more than ████████ in fees and more than ████████ in JAMS costs for the period during which Facebook produced ADI documents under the Special Master's ADI orders. Plaintiffs seem to request all ADI-related fees (except for those relating to document review), in addition to JAMS costs, incurred during this time, on the basis that Facebook's search for ADI documents was supposedly "inadequate." Dkt. 1079 at 4.

As addressed in Facebook's supplemental opposition (Dkt. 1052-2 at 8-13), there was nothing inadequate, let alone sanctionable, about Facebook's search for ADI documents. Facebook conducted a reasonable search in response to the Special Master's January 31 order, requiring production of ADI communications for "all custodians that the parties have identified and collected," and it completed the productions it believed to be called for by that order by March 3, 2022 (four

---

strike portions of three notices of appeal Facebook filed on December 23, 2021 on the basis that the single-page notices exceeded the scope/length of the notice allowed under the Rule 53 Order. Dkt. 783.

weeks later). *Id.* at 8-10.  Facebook then reached out to Plaintiffs "to discuss . . . categories of ADI documents [it believed were] not called for by the [Special Master's] orders."  Dkt. 998-3 ¶ 28. Facebook ultimately agreed, without any additional litigation, to extensive further searches and productions covering all materials Plaintiffs believed the orders reached, and Facebook dedicated an overwhelming volume of resources to do so.  Dkt. 1052-2 at 10-13.  As the Court observed at the September 15, 2022 hearing, Plaintiffs "seem to be blaming Facebook for . . . not [initially] using the right search terms where . . . it is the responsibility of both sides to figure out what the right search terms are."  Dkt. 1060 at 51:3-8.  Facebook was transparent with Plaintiffs about the searches it used for its productions, and once Plaintiffs requested additional searches, Facebook worked collaboratively with Plaintiffs to apply them.  Dkt. 1052-2 at 10-13.  These efforts reflected good-faith efforts to cooperate, not misconduct.

Plaintiffs also seem to argue that Facebook waited too long to invite them to participate in crafting ADI searches and therefore is liable for Plaintiffs' fees and costs.  As an initial matter, Plaintiffs could have raised this issue with Facebook at any time, but chose not to, and therefore cannot now seek fees based on that decision.  Plaintiffs are also entitled to recover only for "fees [that] were incurred because of, ***and solely because of***, the misconduct at issue."  *Goodyear*, 137 S.Ct. at 1189 (emphasis added).  They may not recover in connection with negotiating additional ADI searches merely because they believe these negotiations should have happened earlier.  *See, e.g.*, *Brown v. Google LLC*, 2022 WL 2789897, at *2 (N.D. Cal. July 15, 2022) (a party may not recover fees for work they would have done absent misconduct).

## II.   Plaintiffs Have Failed to Demonstrate That Any Fees or Costs Associated with NP Data Resulted from Alleged Misconduct.

The Court should similarly deny Plaintiffs' request for fees and costs incurred in connection with NP data, as they do not establish any were incurred as a result of alleged misconduct.

Plaintiffs seek $655,160.00 in attorney fees and more than ██████ in JAMS costs for litigation relating to NP data.  In seeking more than ████, which appears to include all litigation relating to NP data from November 2020 forward, Plaintiffs suggest no work at all was necessary to identify what data Facebook should produce after Judge Corley issued Discovery Order 9 in October

2020. But Judge Corley's hearings and orders contradict that position, as they distinguish between "discoverability" (which Discovery Order 9 addressed) and "production" (which Discovery Order 9 did not address). They also make clear that additional proceedings were intended to address the latter issue and determine "what, if any, additional data" "should be produced consistent with [Rule 26(b).]" Dkt. 807 at 4. Plaintiffs are not entitled to recover fees and costs as a sanction for this work, which would have been necessary regardless of any purported misconduct. In fact, after six months of technical proceedings, the Special Master adopted—over Plaintiffs' objection—a proposal by Facebook to produce a data sample, not "all" data relating to the Named Plaintiffs' accounts as Plaintiffs previously asserted Discovery Order 9 required.

### a. Plaintiffs Are Not Entitled to Recover NP Data Fees and Costs Incurred Between November 28, 2020 and January 31, 2022.

Plaintiffs seek approximately ███████ in attorney fees and ██████ in JAMS costs from November 2020 through January 2022, on the basis that Facebook "violated" Discovery Order 9, thereby causing unnecessary work and motion practice. There was no violation of Discovery Order 9, and Plaintiffs are wrong that the litigation of issues relating to NP data would not have occurred but for purportedly sanctionable conduct.

*Rule 30(b)(6) deposition.* In the briefing underlying Discovery Order 9, Plaintiffs said they wanted "only a holding that the sensitive data Facebook collected [about named plaintiffs] and *shared* with third parties is relevant" and "[did] not contend that information that was not shared is relevant." Dkt. 547-2 at 9. After issuing Discovery Order 9, Judge Corley ordered a Rule 30(b)(6) deposition to address the parties' "disconnect" (Dkt. 589 at 29:23-30:14) on the meaning of "shared or made accessible" by allowing Plaintiffs to ask questions about data in the three categories she found discoverable, even if Facebook said it was not shared or made accessible, to "verify the representation that yes, we collect this information . . . but it is not made accessible to third parties." *Id.* at 35:3-5. Judge Corley confirmed the deposition was intended to address responsiveness and proportionality, explaining "the deponent will talk about information that they collect but don't share . . . And then we will talk about whether that is responsive or not" (*id.* at 34:22-35:1) and that "more detail" "is needed" so "future discovery requests can be tailored to . . . data that is potentially

13

Gibson, Dunn &
Crutcher LLP

1   responsive" (Dkt. 588 at 1).

2       Remarkably, Plaintiffs seek reimbursement for more than 

3

4

5

6

7

8

9   , stating: "I don't want to talk about your

10  notice. That was way beyond what I had in mind." Dkt. 603 at 17:12-16. Plaintiffs are not entitled

11  to recover for this work (which was obviously excessive), and which was not caused by any

12  misconduct by Facebook, and was in response to an order by Judge Corley to conduct a Rule 30(b)(6)

13  deposition to resolve questions Discovery Order 9 left open.

14      ***Mediation and motion practice***. In March 2021, Judge Corley suggested the parties retain a

15  discovery mediator to "help" the parties "talk [things] through" (Dkt. 635 at 15:5), encourage the

16  parties to "negotiate" their "laments and complaints" (*id*. at 14:20, 14:10), and facilitate productive

17  communication. The parties retained the Honorable Gail Andler (Dkt. 644), who later asked Daniel

18  Garrie to assist in mediating technical issues. From that point forward, the scope of relevant,

19  responsive, and proportional NP data was negotiated before the mediators and later litigated before

20  Mr. Garrie, who was appointed Special Master in July 2021. Dkt. 709.

21      In April 2021, Facebook responded to Plaintiffs' renewed request for "all data and

22  information relating to the Named Plaintiffs," Dkt. 914-8 at 1-2, stating it had produced data it

23  believed could have been shared or made accessible, Dkt. 914-9 at 6. Plaintiffs did not respond and

24  raised the issue as an "impasse topic" in discovery mediation in July 2021. In response to requests

25  Plaintiffs made in mediation, Facebook produced information about its data systems and how user

26  data is stored in Facebook's systems, but Plaintiffs did not use this information to "tailor" their

27  requests and made (another) request for "all data" relating to the Named Plaintiffs. Dkt. 813 at 0339.

28  ---
    [2]  The witness was on the record for 5 hours and 8 minutes. *See* Dkt. 1060-1.

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

Facebook then asked whether Plaintiffs were seeking data that had not been shared, but Plaintiffs did not respond, and in October 2021, the mediators authorized briefing to the Special Master. Dkt. 916-4 ¶ 10.

Before the Special Master, Plaintiffs moved to compel Facebook "to identify all data sources that may contain information relating to the Named Plaintiffs" (as opposed to production of "all" such data). Dkt. 813 at 0320-21. On November 29, 2021, the Special Master granted the motion, *id.* at 0109. Facebook moved for reconsideration on various grounds, *id.* at 0009, and the Special Master narrowed his order on December 17, 2021, *id.* at 0001. Facebook appealed that final order, Dkt. 780, and Judge Corley heard the appeal (along with others) on January 11 and she issued an order affirming the Special Master's order on January 12, 2022, Dkt. 807.

None of these litigation activities were the result of any alleged misconduct. Neither Judge Corley nor the Special Master found Facebook to be in violation of Discovery Order 9 or stated the order required Facebook to produce all data relating to the Named Plaintiffs. Before the Special Master, Plaintiffs did not even ask for such a ruling; they moved to compel Facebook to identify all data sources that might contain information relating to the Named Plaintiffs. Dkt. 813 at 0320-21. ███████████████████████████████████████ is particularly unfounded because this was not the request the parties negotiated and mediated before Plaintiffs' filed (which was Plaintiffs' request for all data relating to the Named Plaintiffs, not information about Facebook's data systems). *See* Dkt. 813 at 0338-40. Plaintiffs similarly are not entitled to recover for Facebook's successful motion for reconsideration of the Special Master's November 29, 2021 Order or its appeal to Judge Corley, both of which Judge Corley recognized were brought in good faith. Dkt. 830-3 at 54:6-23 ("I'm just going to stop you there. . . . They do have a right to appeal. And Special Master Garrie responded and narrowed his orders in response to their motions for reconsideration. So I don't think you can make an argument that there was anything bad faith about that at all because he responded to it. . . . And they haven't appealed every order . . . [or] every aspect of every order. . . . I couldn't let that stand uncorrected. I don't think that's fair.")

Judge Corley's January 12, 2022 Order implicitly rejects Plaintiffs' view that Facebook violated Discovery Order 9, describing additional proceedings before the Special Master as

determining "what, if any" additional NP data "should be produced consistent with [Rule] 26(b)," and explaining that the Special Master, "with his technical expertise, is well-positioned to review the evidence and determine whether systems may contain *shared* Named Plaintiffs' data . . . [and] whether the production of *potentially shared* Named Plaintiff data is *feasible and proportional* to the needs of the case." Dkt. 807 at 4 (emphasis added).  This ruling again confirms that Discovery Order 9 left open issues regarding relevance, burden, and proportionality.

### b. Plaintiffs Are Not Entitled to Recover NP Data Fees and Costs Incurred February 2022 to Present.

Plaintiffs ask for almost ██████ in attorney fees and ████ in JAMS costs incurred from February 1, 2022 to present, for work after Judge Corley's January 12, 2022 Order, to determine "what, if any" additional NP data should be produced under Rule 26.  Dkt. 807 at 4.  During this period, the parties engaged in lengthy, technical proceedings before the Special Master, through which he explored—at Plaintiffs' request—"all data sources that may contain information relating to the Named Plaintiffs."  Dkt. 813 at 0320-21.  Plaintiffs say they are entitled to fees and costs associated with these proceedings, because they resulted from "Facebook's misrepresentations about and delayed search for Named Plaintiffs' data."  Dkt. 1079 at 5.  But Plaintiffs requested this work. While Plaintiffs likely did not appreciate what that work would entail, or how complicated or technical it would be, they do not identify any misrepresentations or delays by Facebook during this period, and the proceedings *confirmed* Plaintiffs were wrong in arguing Facebook violated Discovery Order 9 by not producing all data relating to the Named Plaintiffs.

After exploring 149 Facebook data systems, reviewing technical documentation about Facebook's system architecture, and interviewing numerous Facebook engineers, *see* Dkt. 1016-4 ¶¶ 2-3, the Special Master did not identify any violation of Discovery Order 9 or data Facebook should have, but did not, produce earlier.  Rather, the Special Master adopted a proposal from Facebook (over Plaintiffs' objection) to produce a sample of additional data points.  *Compare* Dkt. 981-4 at 10–11 (.pdf pagination), with *id.* at 781-85 (Facebook's May 30, 2022 proposal), and 823-25 (Facebook's June 16, 2022 submission offering to produce additional data).  The Special Master did not find any of this data had been shared with third parties, nor did he find Facebook

1  improperly withheld data under an unduly restrictive view of "sharing," as Plaintiffs had argued.

2        Plaintiffs say (Dkt. 1079 at 5) that Facebook is also responsible for fees and costs relating to

3  NP data issues after February 2022 because Facebook did not timely disclose that it preserved certain

4  data tables from its Hive system (for purposes other than preserving NP data) and snapshots of the

5  Named Plaintiffs' accounts from a system called Switchboard (which contained a subset of data

6  categories Facebook preserved and produced from its DYI system years before).  Plaintiffs have not

7  identified any Named Plaintiff data from these sources that Facebook did not produce (or provide

8  access to) previously, other than that user device cookies appear in DYI in a hashed format (the last

9  several digits appear as asterisks) while the same device cookies are not hashed in the Switchboard

10  snapshots.  Facebook produced the Plaintiffs' DYI snapshots, which included hashed cookie

11  identifiers, in early 2020, and at no point did Plaintiffs request from Facebook the full alphanumeric

12  identifiers for any cookies that appeared in those files.  This immaterial distinction is nothing more

13  than a post hoc attempt to manufacture a shortfall in the DYI snapshots.  Third parties cannot even

14  request user cookies from Facebook.

15        Plaintiffs' fee request also includes work performed during this period that had no connection

16  to resolving the NP data issue, including work Plaintiffs performed to ██████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  ███████████████████████████  None of these fees

22  or costs are recoverable as sanctions.

## III.  Plaintiffs' Request for Fees and Costs Exceeds the Scope of Their Sanctions Motion.

24        On March 14, 2022, Plaintiffs filed their motion for sanctions, seeking $240,067 in fees for

25  alleged ADI-related misconduct, Dkt. 879 at 26, $385,085 in fees for alleged misconduct related to

26  Named Plaintiffs' data, *id.* at 37, and $196,288.72 in costs, *id.* at 3.  But Plaintiffs failed to include

27  billing records to substantiate their requested fees and costs, notwithstanding the Local Rules' clear

28  instruction that, "[w]hen . . . a party moves for an award of attorney fees or other form of sanction

17

under Fed. R. Civ. P. 37, the motion must . . . [b]e accompanied by competent declarations which . . . itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." Civ. L. R. 37-4. Last month, the Court instructed Plaintiffs to correct this deficiency, ordering that they "submit billing records for the attorney's fees incurred as a result of the alleged misconduct associated with the App Developer Investigation and the named plaintiff data." Dkt. 1073. The Court did not authorize Plaintiffs to submit billing records in connection with other "costs," such as JAMS fees.

Rather than substantiate the fees sought in their sanctions motion, however, Plaintiffs filed what amounts to an entirely new motion for sanctions. For example, they nearly double the fees sought for ADI and NP data—from $240,067 to $435,803 for alleged ADI-related misconduct (an increase of ***more than 81%***), *compare* Dkt. 879 at 26, *with* Dkt. 1079 at 7, and from $385,085 to $655,160 for Named Plaintiffs' data (an increase of ***more than 70%***), *compare* Dkt. 879 at 37, *with* Dkt. 1079 at 7—despite the fact that fewer than nine months elapsed between the two filings. Plaintiffs seek to recover fees for alleged misconduct related to ADI and NP data that was not discussed in their original motion and raised only in a supplemental filing. *See, e.g.*, Dkt. 1079 at 5 (seeking fees incurred after Facebook "disclose[d] for the first time in June and July 2022 that it had preserved data from 137 Hive tables pursuant to a litigation hold in this matter and that it had another source of Named Plaintiffs' data that used a tool called Switchboard that had more information that were not included in the Download Your Information files."). This is in keeping with Plaintiffs' practice throughout the sanctions litigation of shifting their grounds and theories for recovery with each filing. *See* Dkt. 988 at 5–6 (outlining Plaintiffs' changing grounds for sanctions).

But that is not all. Plaintiffs for the first time allege (Dkt. 1079 at 6-7) that the discovery mediators and Special Master were *appointed because of* Facebook's misconduct and then rely on this new argument to substantiate their request to recuperate ***$264,497.78*** in JAMS fees. In the three prior briefs Plaintiffs filed in support of sanctions, they never once argued these neutrals were appointed due to misconduct, and Facebook has had no opportunity to address this meritless contention. In fact, Judge Corley suggested that the parties retain a discovery mediator, making clear

she was not "ordering" one, to "help" the parties "talk [things] through" (Dkt. 635 at 15:5), and "negotiate" their "laments and complaints" (*id*. at 14:20, 14:10).  The parties jointly and voluntarily agreed to do so.  The Special Master was later appointed, Dkt. 709, at Plaintiffs' request on the basis that it would make the mediation proceedings more efficient, Dkt. 705 at 5:16-7:21.  In any case, as discussed in Section I, the JAMS costs Plaintiffs seek to recover for these neutrals is not compensable because it did not result from any wrongdoing in connection with ADI or NP data.

Plaintiffs also for the first time seek "fees associated with seeking sanctions (*e.g.*, gathering evidence, preparing briefs, participating in the hearing." Dkt. 1079 at 6.  They have never so much as *hinted* at these fees in any of their prior filings, yet now claim they are entitled to $693,676.50 in fees on fees, *id.* at 7—representing **more than 81%** of the amount they originally sought as sanctions.  And this supposedly represents only 60% of the total fees Plaintiffs claim to have incurred in seeking sanctions; in total they say they incurred over one million dollars in briefing this motion.

All told, Plaintiffs now seek **$2,049,137.28** in fees and costs—a **more than 139% increase** over the $854,195.72 sought in their original motion.  *Compare* Dkt. 879 at 3, *with* Dkt. 1079 at 7.  These new fees should be rejected for several reasons.

**First,** Plaintiffs' newly requested fees are procedurally improper.  *See* Dkt. 879.  The Federal Rules of Civil Procedure are clear that "[a] request for a court order must be made by motion," and that the "motion must . . . (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."  Fed. R. Civ. P. 7(b).  This Court's Local Rules provide that "a motion must contain . . . a concise statement of what relief or Court action the movant seeks; and . . . the points and authorities in support of the motion."  Civ. L. R. 7-2(b).  But Plaintiffs' purported "supplemental brief" seeks relief that is not among the "relief sought" in any motion—including approximately $1.2 million in fees and costs above and beyond what they sought in the original motion.  And it seeks those fees and costs on grounds that have not been properly presented in a motion—including for purportedly sanctionable conduct occurring after the motion for sanctions was filed, and for fees incurred drafting and litigating sanctions.

**Second,** and relatedly, Plaintiffs' newly requested fees raise serious due process concerns.  "[N]otice and opportunity to be heard . . . are requisite to the due process which the Constitution

19

prescribes." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *see also Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833, 833 (9th Cir. 1987) (holding that "the imposition of Rule 11 sanctions by the district court without affording [the party] prior notice and a meaningful opportunity to be heard violates due process"). But waiting until *months* after briefing has closed to request more than $1.2 million in new fees and costs, as Plaintiffs have done here, "does not provide defendants proper notice, and deprives them of an opportunity to respond." *Arceo v. Salinas*, 2017 WL 4959590, at *3 (E.D. Cal. Nov. 1, 2017). It is no response that Facebook was provided the opportunity to "file a supplemental brief addressing the *reasonableness* of those fees," Dkt. 1073 (emphasis added), because Facebook has not had a full and fair opportunity to address the antecedent question whether Plaintiffs are even *entitled* to their newly requested fees and costs—for example, whether those fees are attributable to misconduct. And the lack of legal argument from Plaintiffs supporting their newly requested fees and costs simply compounds the problem.

**Third**, these fees are facially unreasonable. Plaintiffs' original motion sought approximately $850,000 in fees and costs purportedly attributable to ADI and Named Plaintiffs' data since November 28, 2020—a full *year and a half* earlier. *See* Dkt. 879 at 37. Yet Plaintiffs claim they incurred nearly the same amount in just *nine months* since then. Moreover, the roughly $700,000 Plaintiffs spent litigating just two of the sanctions issued they raised is wholly out of proportion to the $850,000 that, until a few weeks ago, they sought to recover. Plaintiffs do not attempt to explain how these clearly exorbitant fees and costs could possibly be considered reasonable. And, as detailed below, even a cursory review of Plaintiffs' billing records confirms that they are not.

## IV.    The Fees and Costs Plaintiffs Seek Are Unreasonable and Excessive.

Plaintiffs' requested fees are unreasonable and excessive. In determining whether a fee request is reasonable, district courts "should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). Courts may exclude such hours in one of two ways. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). First, the court "may conduct an 'hour-by-hour analysis of the fee request,' and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Id.* Second, "when faced with a massive fee application the

district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (quotations omitted).  Under either approach, Plaintiffs' fee request should substantially be reduced.

Plaintiffs' fee request is not only excessive on its face, but is unsupported by Plaintiffs' billing records.  As set forth in the accompanying declaration of Gary Greenfield—an experienced expert on litigation fees—and as discussed below, Plaintiffs' fee request includes hundreds of hours that are excessive and otherwise unnecessary.  At a minimum, Plaintiffs' requested fees should be significantly reduced to address Plaintiffs' overstaffing, excessive conferencing, and duplication.

The Ninth Circuit recognizes that fees may be reduced "if the case was overstaffed and hours are duplicated."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  "Courts often discount or altogether exclude hours claimed for intraoffice and administrative e-mails and other intraoffice communications when such communications are the result of overstaffing or inflationary billing practices."  *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 982 (S.D. Cal. 2014) (applying an across-the-board reduction of 13% in light of excessive conferencing); *see also Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 855 (N.D. Cal. 2017) (reducing claimed hours by 50% in light of "excessive" conferencing); *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, at *2 (E.D. Cal. Sept. 9, 2013) (noting that "many courts" have "reduced fee awards for time spent in 'interoffice conferences' or other internal communications"); *Ackermann v. Carlson Indus., LLC*, 2004 WL 3708670, at *2 (C.D. Cal. Mar. 8, 2004) ("The overstaffing of this case resulted in an excessive number of conferences between lawyers, preparation of memoranda, review of memoranda, and e-mail commentary concerning conferences and memoranda.").

Here, Plaintiffs' billing records are replete with ████████████████████████████ ████████████████████████████████████████████████ As set forth in the Greenfield declaration and supporting exhibits, Plaintiffs billed ████████████ ████████████████████████████████████████████████ ██████████.  *See* Declaration of Gary Greenfield ("Greenfield Decl."), ¶¶ 25-27, Exs. 5, 6.  In

21



addition, Plaintiffs

. *See id.*, ¶¶ 28-34, Exs. 10, 11. Examples include:

- Dkt. 1080 Ex. 5 at 1-3; Dkt. 1080 Ex. 6 at 1-2.

- *Id.*, Exs. 3 at 1, 4 at 1.

- . *Id.*, Exs. 3 at 1, 4 at 1.

- . *Id.*, Exs. 3 at 2–3, 4 at 1.

- *Id.*, Exs. 3 at 3, 4 at 1.

- *Id.*, Exs. 5 at 10–11, 6 at 4.

- . *Id.*, Exs. 3 at 9, 4 at 5.

- *Id.*, Exs. 5 at 17–18, 6 at 5.

- . *Id.*, Exs. 3 at 3, 4 at 1.

- *Id.*, Exs. 7 at 2, 8 at 6.

- . *Id.*, Exs. 7 at 2–3, 8 at 6–7.

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP

1        *Id.*, Exs. 7 at 9–10, 8 at 10.

2      •

3        . *Id.*, Exs. 7 at 16–17, 8 at 15–16.

4        These examples are just a small sample of Plaintiffs' overbilling. Plaintiffs' billing records

5 are cluttered with entries involving                              . Not

6 including the block-billed entries,

7       . *See* Greenfield Decl., Ex. 6. Similarly,

8   .

9 *Id.*, ¶ 31, Ex. 10.[3] While Plaintiffs have not met their burden to recover any fees as sanctions, if the

10 Court awards any fees, it should exclude any fees for activities that were overstaffed or apply a

11 significant across-the-board reduction to account for Plaintiffs' overstaffing, excessive conferencing,

12 and duplication of work.

13                                       **CONCLUSION**

14        For reasons set forth in prior briefing and oral argument, the Court should deny Plaintiffs'

15 sanctions motion, but, at a minimum, should reject or substantially reduce Plaintiffs' exorbitant

16 request for fees and costs, as both procedurally improper and facially unreasonable.

17

18 DATED: December 7, 2022                   */s/ Rosemarie T. Ring*

19                                           Rosemarie T. Ring (SBN 220769)

20                                           GIBSON, DUNN & CRUTCHER LLP

21                                           rring@gibsondunn.com
                                          555 Mission Street, Suite 3000

22                                           San Francisco, CA 94105-0921
                                          Telephone: 415.393.8200

23                                           Facsimile: 415.393.8306

24                                           *Attorneys for Defendant Facebook Inc.*

25

26

27      [3]   Indeed, in some instances, Plaintiffs are seeking fees in connection with mediations and Special

28      Master proceedings that are not reflected in the JAMS invoices. *See* Greenfield Decl., ¶ 36, Ex. 12.

Gibson, Dunn &
Crutcher LLP