UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF GARY GREENFIELD IN SUPPORT OF FACEBOOK, INC., GIBSON, DUNN & CRUTCHER LLP, AND ORIN SNYDER'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING FEES AND COSTS SOUGHT AS SANCTIONS** |

1

I, Gary Greenfield, declare:

1.       This Declaration is being filed in support of the Response of Defendant Facebook, Inc. ("Defendant") to Plaintiff's Supplemental Brief Regarding Fees and Costs Sought as Sanctions (the "Supplemental Brief re Fees") in *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, United States District Court for the Northern District of California, No. 3:18-02843-VC (the "Action").  I have personal knowledge of the matters set forth herein, and, if called upon to testify, could and would competently testify thereto.

2.       I have been retained by Gibson, Dunn & Crutcher LLP ("Gibson Dunn") to provide my analysis, conclusions and opinions regarding the legal fees and costs sought as sanctions by Plaintiffs.

## I.       My Background

3.       I am the founder of Litigation Cost Management (LCM), based in Oakland, California. LCM commenced business in 1991.  LCM is in the business of consulting regarding legal fee-related issues.  As part of our business, we regularly conduct analyses of both legal and expert witness fees in litigation regarding the reasonableness, appropriateness and allocation of time, fees and expenses being sought, as well as hourly rates.  We also consult with clients regarding how to manage their outside litigation more effectively and efficiently.  LCM works with both law firms and clients of law firms in undertaking its analyses and consulting about effective litigation management.

4.       Prior to starting LCM in January, 1991, I was a partner in the law firm of Shartsis, Friese & Ginsburg in San Francisco, California, where I was a litigator for fifteen years, having become a partner in the firm in 1981.  During my career at my former law firm, I handled general commercial litigation, from pre-filing preparation and negotiations through trials and appeals.  I handled litigation of varying types, including breach of contract, constitutional law, securities, fraud, bankruptcy litigation, intellectual property, unfair competition, and civil rights litigation.  I represented both plaintiffs and defendants.  I handled both contingency cases and cases where we were compensated on an hourly basis.  I graduated from UC Berkeley School of Law School in 1975 and received my undergraduate degree from Stanford University in 1971.  Attached hereto as

Exhibit 1 is my Curriculum Vitae.

5.      Since LCM was founded, I have conducted several hundred analyses of the legal fees and expenses in cases of various types and sizes, as well as the expert witness fees in certain cases. These have included individual actions, multi-party suits and class actions.  The cases have included the full range of civil litigation, such as patent, copyright, trademark, real property, False Claims Act, ERISA bankruptcy, tax, breach of contract, securities, antitrust, environmental, Public Records Act, insurance coverage and bad faith, discrimination, disability, civil rights, constitutional law, inverse condemnation, personal injury and products liability cases.  I have myself been personally involved in, conducted analysis in and supervised each of these analyses.

6.      I have been retained on numerous occasions, both by parties seeking legal fees and parties opposing requests for legal fees, to testify in person and in writing about the reasonableness and appropriateness of legal fees and rates being sought in various cases throughout California and nationally.  As part of my work on these projects, I have prepared and submitted numerous reports on attorneys' fees issues in the form of declarations, reports under Rule 26 of the Federal Rules of Civil Procedures and reports in arbitrations.

7.      I have qualified and testified as an expert witness in litigation (trials or arbitrations) regarding legal and expert witness fees on at least twenty-five occasions, again both on behalf of parties seeking to recover their attorneys' fees and parties opposing requests for attorneys' fees.

8.      I was appointed a Special Master to analyze and report to the San Francisco Superior Court regarding the fees and expenses of various law firms and experts in an insurance company conservation proceeding (the state court equivalent of a bankruptcy proceeding under federal law) before that Court.

9.      As part of my work, I also consult with law firms and clients of law firms regarding law firm billing practices, effective litigation management, and legal bill analysis and auditing procedures.

10.      I have lectured and conducted seminars for clients and law firms in each of these areas.  I have taught or been a speaker at a number of programs regarding analysis of legal fees, legal

bill auditing and litigation management.  I have been a lecturer for the National Association of Legal Fee Analysis.

11.     For purposes of my analyses in the various cases I have been retained in and my consulting work, LCM has received and I have analyzed the time entries, billing rates and expenses billed in many hundreds of cases, involving law firms and law firm offices across the country.  I also receive and review bills and rate information in cases beyond those I work on as an expert in litigation.  As a result, I have reviewed the billing practices and billing rates of hundreds of firms and thousands of lawyers and non-lawyers providing services in California and across the country, including in the San Francisco Bay Area.  I have also reviewed databases of rates and surveys of billing rates published by legal periodicals and assembled by other legal consultants, including the Valeo Partners database, the Thomson Reuters Legal Billing Report, the Wolters Kluwer Real Rate Report, the ALM Survey of Law Firm Economics, the National Law Journal Billing Report, the National Association of Legal Fee Analysis and others**.**  I also regularly review cases and articles dealing with attorneys' fees, litigation management issues, and billing rates being charged in the legal industry.  As a result, I am familiar with typical and commonly accepted billing practices among law firms, as well as the rates typically charged by lawyers of various experience levels and expertise, both in the San Francisco Bay Area and nationally.

12.     Because of the work I have done, analyses I have undertaken in other cases, and cases, materials and literature I regularly review in the legal fee area, I am also familiar with the common and normal processes used by courts in analyzing the reasonableness of fees and billing rates.

## II.     Materials Reviewed and Consultations with Defendant's Counsel

13.     In order to undertake the analyses set forth in this Declaration, I have received for review the materials set out on Exhibit 2 hereto, including the Motion for Sanctions (the "Motion") and the accompanying Declarations, Defendant's Opposition and the accompanying Declarations, Plaintiffs' Reply Brief (the "Reply"), Plaintiffs' and Defendant's Supplemental Briefs (the "Supplemental Briefs"), and Plaintiffs' Supplemental Brief re Fees and accompanying Declaration ("Declaration re Fees"), including the time entries and invoices accompanying the Supplemental

4

DECLARATION  OF GARY GREENFIELD IN RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

Brief re Fees.

14.     I have also consulted with and obtained information about various aspects of the proceedings from Defendant's counsel.

### III.     Testimony in Last Four Years and Compensation

15.     Attached hereto as Exhibit 3 is a list of my testimony in trial, arbitrations or depositions in the last four years.

16.     I am being compensated for my testimony at the rate of $600 per hour.  We are also being paid a fixed fee for creation of the LCM database and all computer-related work.

### IV.     Creation of LCM Database

17.     In order to facilitate my analysis of the fees sought on this Motion, as we do in most of our cases, LCM created a database of the law firm time entries filed by Plaintiffs' counsel in support of the Motion.  A number of the analyses attached as Exhibits to this Declaration were generated from that database.  Attached as Appendix A for reference purposes is a report of all the Plaintiffs' counsel's time entries by date and attached as Appendix B is a report of all the time entries organized by biller.

### V.     The Motion for Sanctions

18.     Plaintiffs are seeking to recover sanctions against Defendant and Defendant's counsel for alleged misconduct in the Action.  Plaintiffs are seeking $1,090,963 for work related to the Named Plaintiff Data ("NP Data") and the APP Developer Investigation ("ADI"), and $693,676.50 in connection with this Motion, totaling $1,784,639.50 in fees.[1]  They are also seeking $264,497.78 for fees they paid to JAMS.

19.     I have been asked to provide my analysis, conclusions and opinions regarding the reasonableness of the fees and costs sought by Plaintiffs, and to provide analyses of the time entries to assist Defendant's counsel in their Response to the Supplemental Brief re Fees.

### VI.     Analysis

20.     First, it should be noted that this is not the type of fee-shifting case where the party

---

[1]     A table reflecting the hours recorded and sought, and the fees sought, overall and in the sanction category, is set forth on Exhibit 4.

seeking to recover fees has been paying the bills on an on-going basis during the course of the case, and has managed the case and reviewed and paid the bills, often with adjustments, without certainty of reimbursement.  In those types of cases, the client has a major incentive to control the fees to keep the representation cost-effective because it is itself paying the fees and may not be reimbursed in whole or part by the opponent in the case.[2]  Similarly, the law firm in those types of cases has an incentive to keep the representation as cost-effective as possible because the client may not pay fees or expenses it considers unnecessary or unreasonable.

21.     In cases like the instant case, the clients are not paying the fees, so they have less incentive (and probably lack the expertise) to manage the case from a cost standpoint.  Nor does the law firm necessarily have an incentive to keep the time billed as low as possible .  In my opinion, in this case, the law firms did not carefully manage the litigation from a cost standpoint, which resulted in substantially unreasonable and excessive fees, nor did they use billing judgment in how the case was ultimately "billed."[3]

22.     In analyzing the time and fees in cases, one cannot evaluate the time of every (or even most) activities and projects.  All the information that would be necessary is not available to the person undertaking the analysis (the opponent, the court, or an analyst such as myself), there is not sufficient time to undertake such a review in a case of any magnitude, and, in my opinion, one cannot assess the time required for most large or even moderate-sized projects in a case of this type by only reviewing the file and time entries.[4]  In addition, where there is "block-billing," as in this case, quantifying the time in individual activities can be difficult and often impossible.[5]

---

[2]   This is common, for example, in insurance coverage cases where an insured is seeking its fees from an insurance company, and cases where the prevailing party is entitled to recover fees under statutes such as California Civil Code Section 1717.

[3]   While Plaintiffs' counsel were not billing their client, for convenience, I will use the term "billed" to refer to the recording of the time which has been ultimately sought by Plaintiffs.

[4]   There are cases where one can review work product and compare it to the time entries, and I have done so in many cases, typically by looking at how billers handled small projects and the time billed to see if there was a pattern or practice of inflating time on small projects which likely carried over to large projects.  However, the block-billing by many of the billers on this case, as discussed later in the text, and the magnitude of the case, made that type of analysis here impractical.

[5]   Block-billing is the practice of combining the time entries for various tasks (typically for a whole day) into one entry and combining the time for all the activities without showing the time for the

6

23.     Thus, in evaluating the fees and expenses in cases, I look for what I call "red flags"--indicia of overbilling or unreasonable time recorded or sought.  Where one sees a pattern or practice that is resulting in excessive or unreasonable time in areas of a case where it can be analyzed, it is reasonable to conclude that the same practices exist in the other areas of the case that one cannot as easily analyze.  That in turn is an indication that the overall time and fees in a case are substantially inflated and unreasonable.

### A.     Fees for the Motion for Sanctions

24.     The amount billed in connection with the Motion ▮▮▮▮▮▮▮ is itself an indication of substantial overbilling.  As the Supreme Court stated in *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) ("*Hensley*"), and as noted by Plaintiffs themselves (Declaration re Fees, para. 7), "[A] request for attorney's fees should not result in a major litigation."  Yet Plaintiffs' counsel billed ▮▮▮▮▮▮▮, an extraordinarily high amount for *any* motion, let alone a motion for fees.  Plaintiffs' counsel reduced the fees sought for the sanctions portion of the Motion by ▮▮ to $693,676.50.  However, even the reduced amount is, in my opinion, substantially excessive.[6]  I have reviewed the fees in hundreds of fee motions in which fees have been sought for the fee motions themselves, a number of which have been class actions, and a motion for fees is normally in the range of $50,000 to $150,000.  Even were that range doubled, it would not come remotely close to the ▮▮ ▮▮▮▮▮ billed here or even the $693,676.50 sought after plaintiffs' ▮▮ adjustment.

### B.     Conferences Among the Law Firm Personnel

25.     One area that I attempt to analyze is the billing of conferences among the law firm personnel.  Communications among law firm personnel is essential in complex (or any) litigation, and there is nothing inappropriate in law firm personnel communicating with each other, whether through telephone calls, meetings, or emails, and billing for the time involved.  Nor is it inappropriate

---

individual tasks.  This is a common practice among law firms, but makes precisely quantifying the time for individual tasks difficult, if not impossible.  Block-billing has been discussed and criticized in many court cases, articles in legal periodicals and continuing education programs, and, as a result, lawyers and law firms—particularly those that seek fees on a regular basis as Plaintiffs' counsel apparently does here—are well aware of the quantification problems it causes.  Some of the billers block-billed some or all of their time in this case; others did not.

[6]  The reduction was not a reduction because the fees were excessive, but rather an attempt to estimate the time related to the issues for which sanctions are being sought.

for all the billers involved in the communications to be billing the time, as long as it is reasonable and billing judgment is used in how it is ultimately billed.  However, because multiple people are billing for the same activity, and it is often difficult to ascertain the time involved, particularly where there is block-billing, it is an area that can easily be abused and result in excessive and unreasonable fees being billed so it is an area where use of billing judgment is particularly important.

26.     To analyze the time here, we ran a report of the time entries that referenced conferences, emails, telephone calls, meetings, and other terms that are often used to describe communications.  Attached hereto as Exhibit 5 is the database report that shows the result of that search.  We then ran a report that attempted to remove from Exhibit 5 the block-billed entries.[7]  I then reviewed the report and attempted to remove those entries that did not appear to reflect communications among the law firm personnel, such as entries for conferences with Judge Andler or Special Master Garrie, attendance at a status conference, communications with Defendant and other such entries.  The result is a report primarily of non-block-billed entries that reflect communications among Plaintiffs' counsel.  Attached as Exhibit 6 is the report reflecting that analysis.

27.     The fees billed in Exhibit 6 total over ██████ .  That is an enormous amount of conferencing among law firm personnel given that the total fees being sought on this Motion are $1,784,639.50 (the fees in Exhibit 6 totaling just over █ percent of the fees sought).[8]  But that is not even the entire picture.  The entries in Exhibit 6 are only a subset of the entries in Exhibit 5, and there are ████████████████████ in Exhibit 5 that are not included in Exhibit 6 because they are part of the block-billed entries.  The fees billed in Exhibit 5 total ████████ .  While, like Exhibit 6,  Exhibit 5 contains some entries that are ████████████████████████████ ████████████████████ considering the time entries in the two Exhibits together, it appears that somewhere between ████████████████ was billed here for ████████████

---

[7]  In this case, we did that by searching on the use of a semi-colon in the entry since that is most frequently how the tasks in block-billed entries are separated.

[8]  Sometimes search reports do not present an accurate picture of the work in the entries, and here there are some entries, such as for conferences with opposing counsel, that are not for conferencing among the law firm personnel, but my review of the Exhibit indicates that the overwhelming majority of the entries do in fact reflect communications among Plaintiffs' lawyers.

1  ████████████ --as much as ████████ of the total fees being sought. That is an astonishing

2  amount of conferencing and in my opinion is substantially unreasonable and inappropriate.

3        **C.**    **Multiple Biller Attendance at Litigation Events**

4      28.    Other areas I analyzed also reflect what appears to be substantial overbilling.  One

5  area I typically review in evaluating how the work was being handled overall is the attendance at

6  certain types of litigation events, such as hearings and depositions.  I do this in part because it is

7  feasible to identify or estimate the amount of time that has been billed for the various activities and

8  by whom.  I thus looked at the number of people attending various litigation events in this case and

9  the time and fees that were billed.

10      29.    The time entries reflect a number of discovery mediations and other proceedings

11  before Judge Andler and Special Master Garrie, two hearings before Judge Chhabria, and the Rule

12  30(b)(6) deposition of K. Papamiltiadis, an employee of Defendant.  I reviewed the time entries

13  involved in each.

14      30.    With regard to the hearing on this Motion on September 15, 2022, ████ ██████

15  ████████████████████████████████████  See Exhibit 7 hereto.  The ████ ████████

16  ████████████████  ████████████████████████████████████████████████████████

17  ████████ [9]  In addition, ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████

19  ████.  See Exhibit 8 hereto.  ████████████████████████████████████████████████

20  ████████████████████ [10]  Thus, ████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████ [11]

23  _____

24  [9] ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████

26  [10] ████████████████████████████████████████████████████████████████████████.

27  [11] There is nothing inappropriate in having multiple billers attend hearings, depositions, or other
events in person or remotely (putting aside the cost of any travel). It is often a valuable
experience.  The issue is the appropriateness of *billing* for the time of any personnel whose
presence is not necessary.

31.     With regard to the discovery mediations and other proceedings before Judge Andler and Special Master Garrie, ███████████████████████████████████████.  See Exhibit 9 hereto.  Of these sessions:

a.   ███████████████████████████████;

b.   ████████████████████████████████;

c.   ███████████████████████████████;

d.   █████████████████████████████████████;

e.   ███████████████████████████████████; and

f.   ███████████████████████████████.

See Exhibit 10 hereto.  Thus, ████████████████████████████████████████

████████████████████████████████.  Obviously, it was Plaintiffs' counsel's general practice to send a number of lawyers, and often a large number, to the discovery mediations and other proceedings.  While Plaintiffs' counsel did send only one or two people to certain of these proceedings, in my opinion, the overall manner in which Plaintiffs' counsel handled these proceedings in terms of staffing was unreasonable.

32.     As another example of what appears to be substantial overstaffing and therefore overbilling, ██████████████████████████████████████████████████.  See Exhibit 11 hereto.

33.     In short, Plaintiffs' counsel's general practice was to send a substantial number of billers to litigation events and bill for their time where, based on my understanding of the case, it was not reasonable.  While I am aware that the case involved technical issues and extensive disputes regarding what information was reasonable to seek and what was available, and at times it may have been necessary to have particular billers who were familiar with the facts relating to an issue attend a discovery mediation who otherwise might not have attended, that does not justify the general level of biller attendance indicated in Plaintiffs' counsel's time entries.

34.     The amount of time billed discussed above (the time spent on the Motion, the amount billed for communicating among Plaintiffs' counsel's personnel, and the multiple biller attendance at

10

various litigation events) not only reflects excessive time being spent, but also in my opinion a lack of billing judgment in terms of what should have been billed and what should have been written off, reflecting in part the impact of the lack of a client check on the time and fees. As stated by the Court in *Hensley*, it is incumbent on firms seeking fees from their opponent to exercise the same billing judgment in what they seek from opponents in a motion as they do when billing their own clients. 461 U.S. at 434.  In my opinion, that did not happen here.

> **D.     Errors in the Time Entries**

35.     We identified a number of errors in the bills.  While it is not unusual for people to make mistakes in their time entries and bills, particularly in a large matter (it is not uncommon for example for a time entry to be billed to the wrong client), a large number of errors calls into question the reliability of the bills overall and the methodology by which they were created.

36.     For example, ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████.  See Exhibit 12 hereto.[12]  It is difficult to see how this would occur if the billers were, as represented by counsel in their Joint Declaration, recording their time contemporaneously with the work being done.  Declaration re Fees, para. 4.

37.     There were a number of errors in the calculations of the fees as well. They are set forth on Exhibit 13 hereto. ██████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████.  However, on certain occasions, the fees sought were not the product of the compensable time multiplied by the billing rate.[13] The Fees-Calc. column on Exhibit 13 shows the amount that *should* have been billed, based on the compensable time in Plaintiffs' counsel's time entries  multiplied by the appropriate billing rate.  Sometimes the amount actually billed and sought

---

[12] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████

[13] Sometimes they were the product of the time spent multiplied by the rate, even though the compensable time was different.  Other times, we could not determine how the fees sought were calculated.

11

(as reflected in the Fees column of Plaintiffs' counsel's time entries and on Exhibit 13) was higher than what should have been billed (as reflected in the Fees-Calc. column on Exhibit 13), and sometimes it was lower. ███████████████████████████████████████████████████████ ███████████████████████████████████████████. See Exhibit 13.

38.     Obviously, any errors must be accounted for in any fee award, but they also undercut the overall reliability of the system by which Plaintiffs' counsel were creating their time entries

## VII.    Summary

39.     As stated above, it is impossible to review all the work in a case of this type to determine if it was reasonably billed.  However, my analysis of the foregoing areas--in particular of the time related to the Motion itself, the amount of time billed for communications among the law firm personnel, and the attendance by multiple billers at various proceedings throughout the course of the case--indicates that the time billed was not reasonable and that there were patterns and practices that caused the time and therefore the resulting fees to be substantially inflated over what was reasonable and that likely carried over to other aspects of the case which cannot be as readily analyzed.  Furthermore, in my opinion, plaintiffs' counsel has not exercised appropriate billing judgment in what they have ultimately sought on this Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 7, 2022 in Alameda County, California.

_____
Gary Greenfield

DECLARATION  OF GARY GREENFIELD IN RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL BRIEF RE: FEES AND COSTS SOUGHT AS SANCTIONS
CASE NO. 3:18-MD-02843-VC

Litigation Cost Management **List of Appendices** <u>Meta - MDL</u>

| A | All Time Entries by Date |
|---|--------------------------|
| B | All Time Entries by Biller |

# APPENDIX A

## [FILED UNDER SEAL]

# APPENDIX B

# [FILED UNDER SEAL]

Litigation Cost Management                    **List of Exhibits**                                    <u>Meta - MDL</u>

| 1  | Curriculum Vitae of Gary Greenfield |
|----|--------------------------------------|
| 2  | Materials Reviewed |
| 3  | Testimony in Last Four Years |
| 4  | Motion for Sanctions Timeline |
| 5  | Communications Among Plaintiffs' Counsel |
| 6  | Communications Among Plaintiffs' Counsel (Non-Blocked Billed Entries) |
| 7  | Attendance at September 15, 2022 Hearing |
| 8  | Travel - September 15, 2022 Hearing |
| 9  | Discovery Mediations and Special Master Proceedings |
| 10 | Number of Attendees at Discovery Mediations and Special Master Proceedings |
| 11 | Attendance at Rule 30(b)(6) Papamiltiadis Deposition |
| 12 | Billing for Attendance at Discovery Mediations Which Did Not Occur |
| 13 | Time Entry Calculation Errors |

# EXHIBIT 1

<u>CURRICULUM VITAE</u>

GARY GREENFIELD
Litigation Cost Management
1736 Franklin Street
Suite 700
Oakland CA 94612
Telephone (Office):   510-834-1555
Telephone (Cell):   510-882-1600
ggreenfield@litcost.com

<u>PROFESSIONAL EXPERIENCE</u>

<u>LITIGATION COST MANAGEMENT</u>

<u>January 1, 1991 to date</u>--Founder of Litigation Cost Management, a consulting firm which specializes in legal and expert fee analysis and consulting with clients respecting improving the management of their litigation.

> <u>Special Master</u>
>
> Appointed Special Master by San Francisco Superior Court to analyze fees and expenses of lawyers and expert witnesses
>
> <u>Expert consultant/witness</u>
>
> Qualified and testified in numerous court proceedings and arbitrations regarding attorneys' fees issues
>
> <u>Litigation management/auditing training and consulting</u>
>
> Consulting and training for both clients and law firms in litigation management and cost control and legal bill analysis

<u>OTHER LEGAL EXPERIENCE</u>

<u>October 1, 1975, to December 31, 1990</u>--Litigator in San Francisco law firm of Shartsis, Friese & Ginsburg.   Handled complex litigation of various types, covering all stages of cases including trials in state and federal courts.   Became partner on January 1, 1981.

EDUCATION

University of California, Berkeley, School of Law--J.D., 1975.   Member, California Law Review.   Order of the Coif.

Stanford University--B.A., 1971.   Phi Beta Kappa. Degree with Distinction.

ARTICLES

"An Auditor Speaks to Law Firms," The Recorder, August 16, 1991

"Audits Often Signal a Management Failure," Illinois Legal Times, September 1991

"Five Early Warning Signs of Potential Overbilling," The Recorder, October 24, 1991

"Estimating the Cost of a Case," Corporate Legal Times, January, 1992

"Litigation Management:   It's All in the Mind," Committee on Corporate Counsel Newsletter (ABA Section of Litigation), February, 1992

"Keep High Litigation Costs Off Your Case," Public Risk, February, 1992

"How One Company Uses In-House Audits," Corporate Legal Times, June 1992

"Litigation Management: What Law School Never Taught You," California Lawyer, July, 1992

"Harnessing the Cost of Legal Bills," Risk Management, January, 1993

"Strategies for Reducing Your Legal Bills," Small Business Reports, June, 1993

"Efficient Litigation: An Ethical Imperative?"   The American Lawyer, April, 1994

"Fee Fight (Using A Legal Fee Auditor in Billing Disputes)," Los Angeles/San Francisco Daily Journal, February 28, 1997

"Legal Bill Auditing–Problems and Perspectives," Law Governance Review, Autumn, 1997

<u>SEMINARS AND WORKSHOPS CONDUCTED (Partial List)</u>

<u>American Management Association</u>--Two-day seminars in effective litigation management

<u>Western Bankers' Association</u>--Multiple workshops across California on effective litigation management

<u>Continuing Professional Education, Inc.</u>--Seminars in legal bill auditing and litigation management for financial professionals

<u>OTHER SPEAKING ENGAGEMENTS (Partial List)</u>

ABA National Litigation Institute ("Applying TQM in Litigation")

Practising Law Institute ("Litigation Management Supercourse")

Los Angeles County Bar Association ("All About Fees")

National Association of Government Guaranteed Lenders

California Redevelopment Association

Public Risk Management Association

<u>RETENTIONS (Partial List)</u>

*Golden Eagle Insurance Company Conservation Proceeding* –Appointed Special Master by Superior Court of San Francisco to analyze attorney and expert witness fees sought to be reimbursed from insurance company estate in insurance company conservation proceeding

*Moonlight Fire Litigation* – Retained by Department of Justice for State of California to analyze approximately $14 million in attorneys' fees sought in litigation stemming from Moonlight Fire

*Fox Paine & Company*–Retained by party seeking recovery of approximately $24 million in attorneys' fees and expenses in insurance coverage action stemming from dispute between former partners in a private equity firm

*Health Net, Inc.*—Retained by medical insurer regarding recovery in insurance coverage litigation of approximately $80,000,000 in attorneys' fees and expenses incurred in defending three class actions

*JP Morgan Stearns*—Analysis of approximately $50 million in attorneys' fees and expenses incurred in defending regulatory proceedings and civil litigation stemming from alleged securities law violations

*County of Los Angeles* – Retained to analyze expert witness fees incurred in litigation to recover insurance proceeds for losses from major earthquake

*Executive Life Insurance Company Conservation Proceeding* – retained by the California Department of Insurance to investigate allegations of billing fraud made against the Department's outside counsel in insurance company conservation proceeding

*Bank of America Escheat Litigation* – retained to assist the Department of Justice for the State of California in developing a claims process to handle hundreds of expected claims for attorneys' fees and expenses from various law firms and public entities in litigation against the Bank of America over funds which the State alleged were improperly retained by the Bank

# EXHIBIT 2

Materials Received for Review

- 2022-08-22 Supplemental Opposition Brief.pdf
- 2022-04-12 Stein Declaration (highlighted)_SEALED.pdf
- 2022-04-12 [912] Snyder Decl ISO Opp Response to Motion for Sanctions.pdf
- 2022-04-11 [911] Opp Response re Motion for Sanctions.pdf
- Schwing Declaration.pdf
- Ring Decl.pdf
- Richardson Declaration.pdf
- Protective Order.pdf
- Pl Reply Motion Sanctions Weaver, Loeser Decl_SEALED.pdf
- Ex. 11 JAMS Mediation Fees NP Data.pdf
- Ex. 10 JAMS SM Fees NP Data.pdf
- Ex. 9 JAMS Fees.pdf
- Ex. 2 BFA Profiles.pdf
- Ex. 1 KR Profiles.pdf
- Ex 08 - KR Time Related to Sanctions.pdf
- Ex 07 - BFA Time Related to Sanctions.pdf
- Ex 06 - KR Time Related to Named Pl Data.pdf
- Ex 05 - BFA Time Related to Named Pl Data.pdf
- Ex 04 - KR Time Related to ADI.pdf
- Ex 03 - BFA Time Related to ADI.pdf
- Docket.pdf
- Docket - 2022-12-05.pdf
- Dkt. 1080 2022.11.18 Loeser_Weaver Declaration ISO Fees.pdf
- Dkt. 1079 2022.11.19 Ps Supp Brief re Sanctions Fees.pdf
- 2022-09-15 Sanctions Hearing Transcript.pdf
- 2022-08-08 [988-6] - Weaver Decl ISO Sanctions.pdf
- 2022-08-08 [988-5] - Ko Decl ISO Sanctions.pdf
- 2022-08-08 [988-4] - Laufenberg, Melamed Decl ISO Sanctions.pdf
- 2022-08-08 [988-3] - Plaintiffs' Suppl Brief ISO Sanctions.pdf
- 2022-04-25 Pl Reply Motion Sanctions_SEALED.pdf
- 2022-03-14 Corrected Pls Omnibus Motion for Sanctions.pdf
- 2022-03-11 Loeser-Weaver Declaration ISO Sanctions.pdf
- 2022-02-10 CMC Hearing Transcript.pdf
- 2020_08_04 [491] Second Amended Consolidated Complaint.pdf

# EXHIBIT 3

Trial, Arbitration and Deposition Testimony (Last Four Years)

1.    *Bobrick Washroom Equipment Inc., v. Traveler's Property Casualty Insurance Company, JAMS Arbitration No. 1220052287*

2.    *Monterey Military Housing LLC, et al. v. Ambac Assurance Company,* Superior Court of the State of California, County of Monterey, No. 15CV000599

3.    *Wilbur-Ellis LLC v. Ironshore Specialty Insurance Company,* JAMS Arbitration No. 100089776 (

4.    *Shartsis Friese LLP v. Gary P. Downs and Impact Development Group, LLC,* Jams Arbitration No. 1100089602

5.    *Health Net, Inc. v. American International Specialty Lines Insurance Company, et al.*, Superior Court of the State of California, Los Angeles County, No. BC357436

6.    *IAC/InterActiveCorp v. Illinois National Insurance Company, et al., American Arbitration Association,* No. 01-18-0002-6761

7.    *Fox Paine & Company, et al. v. Equity Risk Partners, Inc.,* Supreme Court of the State of New York, County of Westchester, No. 52607/20

8.    *Webcor-Obayashi Joint Venture v. Zurich American Insurance Company,* United States District Court, Northern District of California, No. 3:19-cv-07799-SI

9.    *Heritage Fields El Toro, LLC v. AIG Specialty Insurance Company,* Superior Court for the State of California, County of Orange, No. 30-2018-01033608-CU-IC-CXC

10.   *Romero v. Geico Casualty Company,* San Francisco Superior Court, No. CGC-19-576933

# EXHIBITS 4-13

## [FILED UNDER SEAL]