# Defendant's Exhibit 26

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
    osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Kristin A. Linsley (SBN 154148)
    klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
    mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
    jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS**<br><br>**HEARING REQUESTED** |

Gibson, Dunn & Crutcher LLP

Motion For Reconsideration Of Special Master's Order Regarding Production Of Adi Related Documents
Case No. 3:18-MD-02843-VC

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    I.     Facebook seeks reconsideration of the Tentative Order's ruling that ADI-related communications among non-attorneys are discoverable. ................................ 3

          A.     Judge Corley considered and rejected Plaintiffs' request for ADI-communications and instead found discoverable three specific buckets of "underlying fact[ual]" materials. ................................................................. 4

          B.     Contrary to Judge Corley's guidance, the Special Master ordered Facebook to produce large volumes of ADI communications. ......................... 6

    II.    Facebook seeks reconsideration of the production timeline required by the Tentative Order because it would be impossible for Facebook to comply with. .......... 8

    III.   Facebook seeks reconsideration of the Tentative Order's requirement that Facebook produce documents that are not relevant to the live claims and defenses in this case. .............................................................................................. 11

    IV.   Facebook seeks reconsideration of any requirement that Facebook produce materials over which it asserts privilege without the Special Master having conducted the document-by-document *in camera* review that Ninth Circuit authority requires. ....................................................................................................... 12

    V.    Facebook seeks reconsideration of the Tentative Order's holding that Facebook must produce attorney audits and "all memoranda" prepared by its consulting experts. ..................................................................................................................... 14

CONCLUSION ............................................................................................................. 15

Gibson, Dunn & Crutcher LLP

MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

1
2

# TABLE OF AUTHORITIES

**Cases**

Page(s)

3
4

*Attorney General v. Facebook, Inc.*,
   164 N.E.3d 873 (Mass. 2021) ........................................................................7, 12

5
6

*California Dep't of Soc. Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008)..................................................................................5

7

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,
   402 F. Supp. 3d 855 (N.D. Cal. 2019) ...................................................................13

8
9

*Fosbre v. Las Vegas Sands Corp.*,
   2016 WL 183476 (D. Nev. Jan. 14, 2016) .............................................................13

10
11

*Leon v. Cnty. of San Diego*,
   202 F.R.D. 631 (S.D. Cal. 2001)............................................................................11

12

*In re High-Tech Emp. Antitrust Litig.*,
   2013 WL 772668 (N.D. Cal. Feb. 28, 2013) ..........................................................13

13
14

*In re Lidoderm Antitrust Litig.*,
   2016 WL 861019 (N.D. Cal. Mar. 7, 2016) ...........................................................13

15
16

*In re Grand Jury*,
   13 F.4th 710 (9th Cir. 2021)...................................................................................13

17

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) ...............................................................................13

18
19

*In re Gen. Motors LLC Ignition Switch Litig.*,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015) ......................................................................13

20
21

*Pearson v. Ariz.*,
   2020 WL 5544373 (D. Ariz. Sept. 16, 2020) .........................................................13

22

*Phoenix Techs. Ltd. v. VMware, Inc.*,
   195 F. Supp. 3d 1096 (N.D. Cal. 2016) .................................................................13

23
24

*Pitkin v. Corizon Health, Inc.*,
   2017 WL 6496565 (D. Or. Dec. 18, 2017) ............................................................13

25

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 WL 2644243 (N.D. Ill. June 27, 2019) .........................................................13

26
27

*Todd v. STAAR Surgical Co.*,
   2015 WL 13388227 (C.D. Cal. Aug. 21, 2015).....................................................13

28

Gibson, Dunn &
Crutcher LLP

MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

*United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*,
   475 F. Supp. 3d 45 (D. Mass. 2020) .............................................................................................13

# INTRODUCTION

Facebook respectfully seeks reconsideration of the Special Master's December 8, 2021 Tentative Order re: Production of ADI Related Documents ("Tentative Order").[1]  Complying with the Tentative Order would require a massive and overbroad collection and review of ADI materials that would likely take *thousands* of attorney hours to complete.  Undertaking that process would run counter to Judge Corley's guidance and basic proportionality principles, and completing it on the timeframe the Tentative Order requires is literally impossible.

This case is not about ADI and how it was conducted.  It is about long-deprecated forms of data-sharing that ended before ADI even began.  Judge Corley recognized that communications about how ADI was conducted were not relevant and potentially privileged and limited ADI discovery accordingly to certain documents she found to contain "underlying facts" that ADI uncovered.  The Tentative Order does the opposite, throwing a bomb into the discovery process without any concern for relevance, privilege, burden, or proportionality.  By opening up the case to a massive ADI review with just six weeks before the substantial completion deadline, the Tentative Order would hamstring this litigation in months of additional discovery on a sideshow topic.  The Tentative Order should be modified to reflect Judge Corley's guidance that the ADI productions should be limited to relevant underlying factual materials and proportionate to the needs of this case.

After working with the parties for nearly two years to focus Plaintiffs' ADI requests, Judge Corley identified three categories of materials for Facebook's ADI production and made clear that the production should be tailored and proportionate.  The Tentative Order would upend Judge Corley's guidance by requiring a colossal collection and review of ADI communications far beyond the scope Judge Corley contemplated and the proportionality principles articulated in Rule 26.  After a burdensome sampling exercise and *in camera* review of ADI correspondence among non-attorneys, Judge Corley did not order Facebook to produce a single ADI communication.  Instead, she found: "a lot of it" not "relevant at all" and found some materials to be "privilege[d]."  Apr. 6, 2021 Hr'g Tr. (Ex. B) at 17:8–21.  Recognizing that Plaintiffs' overbroad request for ADI communications was

---

[1] Under the Special Master's briefing protocol (Protocol for Resolving Discovery Disputes – Order No. 1, JAMS Ref. No. 1200058674, Aug. 20, 2021), the Special Master's rulings are "tentative" and "become final" only "[i]n the absence of a timely request for reconsideration."  *Id.* ¶¶ 7-8.  The Special Master granted Facebook an extension of one day, until December 15, 2021, to file this reconsideration motion.

Gibson, Dunn & Crutcher LLP

1

MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

1   unworkable, infeasible, and unrealistic, Judge Corley instead guided the parties toward a limited

2   production of three categories of underlying factual materials.  *Id*. at 18:13-15; *id*. at 18:1-4.  The

3   Tentative Order blows far beyond those boundaries and unwinds Judge Corley's guidance.

4         The Tentative Order is also impossible to comply with.  Under the Tentative Order, within

5   two weeks of a request from Plaintiffs, Facebook could have to conduct a detailed review of many

6   thousands of communications relating to up to **32,000 apps**, and assess which relate in any way to an

7   investigatory report prepared by outside experts at the direction of counsel.  This would be a

8   gargantuan and disproportionate undertaking.  The review would require ***thousands*** of attorney hours

9   and could be completed accurately only by attorneys who have significant experience with ADI.  A

10  similar review for just **six apps** required more than 300 attorney hours from attorneys who worked on

11  ADI.  The review the Tentative Order contemplates would be many orders of magnitude larger, and it

12  would only be the start.  The Tentative Order opens the door for endless large, rapid-fire reviews.

13        Judge Corley did not intend ADI productions to cause a multi-month expenditure of such

14  proportions.  The Tentative Order's sweeping language erases nearly two years of work to focus the

15  universe of discoverable ADI documents, and it disregards Judge Corley's care and calibration in

16  identifying three categories of materials that she found potentially discoverable and proportionate.

17        The Tentative Order also conflicts directly with the Massachusetts Supreme Judicial Court's

18  recent holding that ADI communications are privileged, and runs afoul of authority requiring a

19  document-by-document *in camera* review before ordering a party to produce documents over which

20  it asserts privilege.  The Special Master has not reviewed any communications he ordered Facebook

21  to produce, and Judge Corley—who did—stated that many appeared to be privileged and irrelevant.

22        Facebook respectfully asks the Special Master to reconsider his ruling and instead confine

23  Facebook's ADI production obligations to the three categories of ADI materials Judge Corley

24  ordered Facebook to produce under compulsion on the basis that they concern "underlying facts": (i)

25  background and technical reports prepared by consulting experts; (ii) audits conducted by non-

26  attorneys, and (iii) interviews conducted by non-attorneys.  In the event that the Special Master does

27  not reconsider or modify the Tentative Order, Facebook respectfully requests a stay of the order

28  pending appeal to Judge Corley.  Facebook requests a hearing on this motion.

Gibson, Dunn & Crutcher LLP

2

Motion For Reconsideration Of Special Master's Order Regarding Production Of ADI Related Documents
Case No. 3:18-MD-02843-VC

## ARGUMENT

**I.    Facebook seeks reconsideration of the Tentative Order's ruling that ADI-related communications among non-attorneys are discoverable.**

Facebook respectfully seeks reconsideration of the Special Master's finding that "Judge Corley's order does not exclude non-attorney internal Facebook communications, communications with [Facebook's consulting experts], or communications with third party app developers from the scope of ADI documents to be produced."  Tentative Order ¶ 12.

When Facebook first raised to Judge Corley the massive volume of ADI-related communications and the myriad privilege issues they implicate, Judge Corley made clear that any ADI production would be proportionate and limited to relevant, non-privileged documents going to the "underlying facts."  She did not order that every single underlying document be produced. Rather, she observed correctly that many of the documents were not relevant or necessary.

Judge Corley worked with the parties to design a sampling exercise so that she could provide guidance on which ADI-related materials would be discoverable.  After an *in camera* review of sample ADI communications among non-attorneys (of Plaintiffs' choosing), Judge Corley did not order production of a single communication.  Instead, she recognized that many of the materials she reviewed were not relevant and that many were privileged.  Ex. B at 17:15-21.  In response, Plaintiffs insisted they did not need ADI communications and limited their request:  "[T]he facts underlying these communications are what we're really seeking."  *Id*. at 18:13-15; id. at 18:1-4.   The parties then spent months negotiating and litigating which "underlying facts" from ADI Facebook would produce, all with the understanding that communications were off the table.

Judge Corley ultimately found three specific categories of ADI materials potentially discoverable on the basis that they could contain "underlying facts"—(i) background and technical reports prepared by outside experts, (ii) audits of app developers conducted by non-attorneys, and (iii) interviews of app developers conducted by non-attorneys.  The Tentative Order blows past these categories and would require Facebook to conduct an enormously burdensome collection and review of nearly all ADI communications relating to up to 32,000 apps—and to produce many volumes of those communications within a matter of days.  That is simply not possible.

**A.      Judge Corley considered and rejected Plaintiffs' request for ADI-communications.**

1.      Plaintiffs initially demanded that Facebook produce all ADI-related documents and communications.  Understanding there were potentially millions of privileged documents within the scope of Plaintiffs' request and in an effort to avoid unnecessary burdens on the parties and the Court, Judge Corley asked the parties to identify a sample of materials so that she could provide guidance on which materials she believed to be privileged.  July 13, 2020 Hr'g Tr. (Ex. C) at 44:23–48:8.

2.      The parties agreed to a sampling exercise for materials connected with six exemplar apps.[2]  Dkt 513-1 (Ex. D).  The parties agreed to 26 ADI custodians.  Facebook collected and reviewed all communications from those custodians hitting on the six apps' names or ID numbers, then produced non-privileged documents and logged privileged communications.  *Id.*  Facebook's logs contained over 6,000 entries.  Dkt. 599 (Ex. E) at 4; Southwell Decl. ¶ 17.  Completing this sampling process for just six apps took more than **300 attorney hours**.  Southwell Decl. ¶ 17.

3.      Plaintiffs ultimately moved to compel all entries on Facebook's exemplar privilege logs that did not list an attorney as an author or recipient (i.e. non-attorney communications).  Judge Corley ordered Plaintiffs to select 20 of those entries for *in camera* review and ordered the parties to submit simultaneous briefs regarding the 20 documents.  Dkt. 602 (Ex. F) ¶ A; Jan. 15, 2021 Hr'g Tr. (Ex. G) at 4:15–11:19; *id.* at 12:13–15.[3]  She did not permit declarations.  *Id.*

4.      **After conducting an *in camera* review of the 20 non-attorney communications Plaintiffs chose, Judge Corley did not order a single communication (or attachment) produced.**  Judge Corley stated:  "[A] lot of it I don't think is relevant at all"—some materials are "privilege[d] and I actually think you don't even need."  Ex. B at 17:8–21.  Judge Corley expressed a preliminary view that "underlying facts" from ADI would be discoverable, Dkt. 711 (Ex. I) at 1, but that "there are certainly going to be documents in there that are "(a) attorney-client privilege[d]; or (b) attorney work product."  Ex. B at 16:22–24.  She then explained that she was not inclined to issue a ruling on

---

[2] The parties agreed to two apps that were investigated but not suspended, two apps that were investigated and suspended for non-compliance with the investigation, and two apps that were investigated and suspended not only for non-compliance with the investigation.

[3] Plaintiffs' Motion To Compel Production of Documents Related To Facebook's App Developer Investigation—which demanded productions of the materials Judge Corley reviewed *in camera*, along with all other non-attorney communications from ADI—is Docket Number 611-2 (Ex. H) in this case.

Gibson, Dunn &
Crutcher LLP

the 20 documents she reviewed because any ruling could not resolve the parties' broader privilege dispute, and the parties would likely be back before the Court on "every single document." *Id.* at 17:15–21.

5.      After declining to order production of non-attorney ADI communications, Judge Corley pressed Plaintiffs to focus and narrow their request.  She asked them "what . . . precisely [it is] that the plaintiffs need from th[e] investigation." Ex. B at 17:22–23.  Plaintiffs clarified they did not actually seek the materials they challenged and selected for *in camera* review, which consisted of non-attorney ADI communications, and instead sought the underlying facts:  "[T]he facts underlying these communications are what we're really seeking." *Id.* at 18:13–15; *id.* at 18:1–4.  In reliance on that representation, the parties mediated Plaintiffs' request for "facts" for more than three months.

6.      When the parties did not resolve the dispute in mediation, Judge Corley ordered the parties to submit a joint letter brief.  Dkt. 693 (Ex. J).  She then issued an order reflecting her understanding that Plaintiffs no longer sought communications from ADI.  Ex. I.  She explained, Plaintiffs sought "background and technical investigations" and "Facebook conducted audits and interviews." *Id.* at 2–3.  Judge Corley even confirmed that "[n]one of the documents [Plaintiffs seek] were part of the *in camera* review the Court earlier conducted"—which focused exclusively on ADI-communications among non-attorneys of Plaintiffs' choosing. *Id.* at 3.  Further emphasizing that she did not intend ADI communications to remain in scope, Judge Corley permitted Facebook to submit a single declaration in support of its position that the specific "investigatory materials" she described Plaintiffs to be seeking were privileged. *Id.*; *see also* Dkt. 720 (Declaration of Alexander H. Southwell) (Ex. K).  She did not permit or require additional declarations about Facebook's claim of privilege over other types of ADI materials, including millions of individual communications.

7.      On September 8, 2021 Judge Corley issued an order resolving the parties' ADI privilege dispute. *See* Dkt. 736 at 7 (Ex. L).  The order stated that Facebook refused to produce "reports, audits and interviews, *non-attorney communications*" and "dispose[d] of Docket No[.] 611"—Plaintiffs' prior motion to compel non-attorney ADI communications. *Id.* at 2, 7 (emphasis added).  In doing so, Judge Corley did not order production of any ADI-related communications. *Id.* at 7.  When a party has moved to compel materials, and a court resolves the motion without granting

the request, the request is presumed denied. *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1031 (9th Cir. 2008) ("The court did not expressly discuss the request to authorize discovery, but also did not order discovery, thereby implicitly denying the request.").

8.      **Instead of ordering Facebook to produce ADI communications, Judge Corley ordered Facebook to produce three categories of materials for the six exemplar apps the parties had chosen previously**: "background and technical reports, audits and developer interviews." Ex. L at 7. Judge Corley reasoned that she was ordering production of these materials because "Facebook has offered no special reasons why those particular documents are privileged." *Id.* She further stated that "Facebook has not explained how a non-attorney's interview or audit of a developer would be protected from discovery by the attorney-client privilege." *Id.* at 6.

9.      Judge Corley ordered the "parties to work with the Special Master regarding production of additional materials *consistent with the guidance offered by [her] Order*." Ex. L at 7 (emphasis added). The clear implication was that she expected the parties to work with the Special Master to determine if Facebook should produce the same categories of materials for additional apps.

**B.      Contrary to Judge Corley's guidance, the Special Master ordered Facebook to produce large volumes of ADI communications.**

10.     The Special Master's Tentative Order states that "Judge Corley's order does not exclude non-attorney internal Facebook communications, communications with [Facebook's consulting experts], or communications with third party app developers from the scope of ADI documents to be produced." Tentative Order ¶ 12. This holding guts Judge Corley's ruling, is inconsistent with the Federal Rules of Civil Procedure, and contravenes a recent decision from the Massachusetts Supreme Judicial Court.

11.     Judge Corley worked with the parties for *years* to focus Plaintiffs' ADI requests on a reasonable, workable, and proportionate set of materials. To accomplish this, she ordered a lengthy, time-consuming, and burdensome sampling exercise and conducted an *in camera* review of non-attorney communications that Plaintiffs selected. **After completing that process, Judge Corley did not order production of a single ADI communication**.

12.     The entire point of the sampling exercise and *in camera* review was to allow Judge

Corley to assess whether there was a relevant, proportionate, and non-privileged set of ADI-related communications that were discoverable.  She determined no such communications existed.  Instead— after reviewing a sample of non-attorney communications—she observed that many were irrelevant and others privileged.  Ex. B at 17:8–21.  Recognizing that the burden of review would be disproportionate to the limited benefits of production, she steered the parties away from ADI communications and declined to provide guidance on the 20 non-attorney communications she reviewed.  Judge Corley reasoned that even addressing 20 documents could not provide useful guidance, and she would end up needing to review *all* non-attorney ADI communications *in camera*. *Id.* at 17:15–17.  This would not have been reasonable, workable, or useful, given her finding that "a lot of" the material was not "relevant at all" and that many would be privileged.  *Id.* at 17:8–21.

13.     The Tentative Order ignores Judge Corley's guidance and the proportionality requirement in Rule 26, and sends the parties back to square one.  It would allow Plaintiffs to again demand that Facebook review essentially **all** ADI-related communications, requiring an astronomical collection and review that would take many months and thousands of attorney hours to complete.

14.     This is the outcome Judge Corley sought to prevent.  Her guidance was designed to ensure that ADI would not hijack and further delay this case.  To move the process forward, Judge Corley focused the parties on three categories of underlying factual materials and avoided ordering a review of millions of irrelevant and privileged communications.  If Judge Corley thought it would be fruitful for Facebook to review additional ADI communications beyond the thousands Facebook reviewed for the parties' sampling exercise, she would have ordered that long ago.

15.     The Tentative Order also conflicts with the Massachusetts Supreme Judicial Court's holding in *Attorney General v. Facebook,* Inc., 164 N.E.3d 873 (Mass. 2021) (Ex. M).  There, the court reversed a ruling about the privileged nature of ADI (including non-attorney communications) and held:  "[A]ny confidential communications relating to ADI among Facebook, Gibson Dunn, and other members of the ADI team would almost certainly be privileged."  Ex. M at 888.

16.     Facebook respectfully asks the Special Master to reconsider its ruling that Judge Corley's order "does not exclude non-attorney internal Facebook communications [or] communications with [Facebook's consulting experts]," and to modify the Tentative Order to clarify

that Facebook's ADI production obligations are limited to the categories of underlying factual materials Judge Corley found potentially discoverable and ordered Facebook to produce for the six exemplar apps under compulsion: (i) background and technical reports prepared by outside consultants, (ii) interviews conducted by non-attorneys, and (iii) audits conducted by non-attorneys.

## II. Facebook seeks reconsideration of the production timeline required by the Tentative Order because it would be impossible for Facebook to comply with.

To the extent the Special Master does not reconsider his ruling that ADI communications are discoverable, Facebook respectfully seeks reconsideration of the production schedule the Tentative Order requires, which would be impossible for Facebook to comply with. Under the Tentative Order, within two weeks of receiving a request for ADI communications, Facebook could be required to collect and review communications relating to up to **32,000 apps**, and assess which—if any—are "in connection with" an investigatory report prepared by Facebook's outside experts. This could require Facebook to collect and conduct a detailed review of **tens or hundreds of thousands of documents within a matter of days**—a process that would take **thousands** of attorney hours.

To the extent this process is designed to provide a sample of ADI communications to assess whether they are relevant, the parties already conducted such a sampling exercise. Judge Corley found that the non-attorney communications relating to six apps the parties chose were largely irrelevant and that production of ADI communications was simply was not workable. The burdens and infeasibility of the Special Master's Tentative Order underscore that conclusion.

1.      The Tentative Order requires Facebook to produce ADI materials "on a rolling weekly basis," beginning with "reports for which related audits and non-attorney interviews are available." Tentative Order ¶ 13. As explained in the accompanying declaration of Alexander H. Southwell, Facebook would need at least three to five weeks to begin these rolling productions so that it can collect the materials, train reviewers, and carry out the review—all of which would take more time around the holidays. Southwell Decl. ¶ 5. Once Facebook's review begins, it estimates that it would then require at least three months to complete rolling productions of all background and technical reports, audits conducted by non-attorneys, and interviews conducted by non-attorneys. *Id.* ¶ 6.

2.      Nor would that colossal project be the end. After Facebook makes an initial

Gibson, Dunn & Crutcher LLP

production of background and technical reports, the Tentative Order allows Plaintiffs to request all "non-attorney internal Facebook communications, communications with [Facebook's consulting experts], or communications with third party app developers in connection with a statistically significant sample of the reports provided." Tentative Order ¶ 14. Facebook must then produce those communications within "ten business days," and—after reviewing the materials—Plaintiffs may request more "upon a showing of relevance." Tentative Order ¶ 15-16.

3. The Sisyphean schedule the Tentative Order requires is impractical and impossible to comply with. The Tentative Order requires Facebook to prioritize production of background and technical reports for apps "for which related audits and non-attorney interviews are available." Tentative Order ¶ 13.[4] There are approximately 80 such reports associated with audits Facebook conducted. Southwell Decl. ¶ 10.[5] Given the relatively low number of reports associated with apps for which audits are available, a statistically significant sample of the reports may be all of them.[6]

4. The approximately 80 reports for which there are related audits alone **concern more than 32,000 apps**. *Id.* The ADI team did not collect and store communications by app or by report. *Id.* ¶ 8. As a result, Facebook would need to locate and collect all ADI-related communications relating to more than 32,000 apps and then conduct a careful analysis of whether each of those communications relates in any way to one of the reports. *Id.*

5. If Facebook were to produce all 80 reports for which there are related audits in its first rolling production, the volume of communications Facebook would have to collect and review within two weeks would be in the order of tens of thousands (or even hundreds of thousands) of documents. *Id.* ¶ 12. Even though the Tentative Order would require production of only certain types of communications, this would not meaningfully narrow the universe of documents Facebook would need to collect and review. *Id.* To determine which non-attorney communications are "in connection with" a particular report, Facebook would need to recreate the history of its investigation of each app addressed by that report, figure out exactly what steps were taken to prepare the report, and then

---

[4] As discussed below, unlike Judge Corley's Order, the Tentative Order does not distinguish between attorney audits and non-attorney audits. *See infra* at 14.

[5] Facebook is continuing to assess what, if any, interviews and related reports fall within the Order, which could potentially increase the number of reports and associated apps at issue. Southwell Decl. ¶ 10.

[6] Ambiguity as to the statistically significant sample the order describes is likely to cause prolonged disputes.

Gibson, Dunn & Crutcher LLP

assess which communications relate to those steps. *Id.* This would require reviewing a substantial volume of attorney communications in order to assess which non-attorney communications were "in connection with" each report.[7] Under the Tentative Order, Facebook could be required to complete this analysis *in less than two weeks* for more than **32,000 apps**. That is an impossible task.

6.  Not only would the Tentative Order require Facebook to review a massive volume of materials, Facebook could not expedite its review by hiring contract reviewers. Attorneys who are not familiar with ADI would not be able to accurately analyze which ADI communications were "in connection with" a particular report. Attorneys who have significant familiarity with ADI would need to conduct the review, which would constrain how quickly Facebook could complete it. *Id.* ¶ 13. The ADI was complex and nuanced, and detailed familiarity with ADI would be required to recreate the steps that were taken to prepare each background and technical report and review accurately whether particular communications were in connection with that process. *Id.* ¶¶ 12–13.

7.  Making the review even more difficult and onerous, many, if not all, ADI-related communications "in connection with" a background or technical report would also contain attorney advice or work product that would need to be reviewed carefully for privilege and quality checked for accuracy and consistency across communications. *Id.* ¶ 16.

8.  The Tentative Order's requirement that Facebook complete all of this work in just two weeks is not possible. The sampling exercise Facebook conducted for **six apps** involved review of approximately 6,000 communications, and more than 300 Gibson Dunn attorney hours were spent to collect, review, produce, and log them. *Id.* ¶ 17. A similar review for more than 32,000 additional apps would likely take many months, and certainly cannot be completed within 10 business days.

9.  Facebook respectfully asks the Special Master to reconsider his ruling that, at Plaintiffs' request, Facebook must produce within ten business days communications associated with "a statistically significant sample of the reports [in Facebook's initial production]."

10. If the Special Master believes that he would benefit from considering a sample of ADI communications to assess relevance and privilege, Facebook would (at the Special Master's request)

---

[7] Indeed, when Facebook briefed to Judge Corley its claim of privilege over the 20 non-attorney communications Plaintiffs selected for review *in camera*, many of Facebook's explanations of why particular non-attorney communications were privileged referred back to attorney communications that provided relevant context. Dkt. 613 (Ex. N) at 11–15, 17–19.

Gibson, Dunn & Crutcher LLP

submit *in camera* the 20 non-attorney communications from the six exemplar apps Plaintiffs selected for Judge Corley to review.  The parties' sampling exercise from those apps was designed and conducted specifically to allow the Court to provide guidance on which ADI materials may be relevant and which may be privileged.  Collecting, reviewing, and logging those materials took more than 300 hours from Gibson Dunn attorneys, Southwell Decl. ¶ 17—in addition to substantial time from Facebook's in-house legal team and vendors.  Facebook then invested significant additional time to brief to Judge Corley why the 20 non-attorney communications from that exercise Plaintiffs selected for her review were privileged.  There is no reason to repeat that work.  To the extent the Special Master would benefit from reviewing non-attorney communications *in camera* beyond the 20 Plaintiffs selected for Judge Corley to review, any such communications should come from the materials Facebook already collected, reviewed, and logged for the six exemplar apps.

## III.     Facebook seeks reconsideration of the Tentative Order's requirement that Facebook produce documents that are not relevant to the live claims and defenses in this case.

Facebook respectfully seeks reconsideration of the Tentative Order's requirement that Facebook produce documents even if they are not relevant.  As Judge Chhabria and the Special Master have reminded Plaintiffs repeatedly, and as the law and Federal Rules make crystal clear, Facebook can only be required to produce documents that are relevant to the live claims and defenses in this case.

1.     The Tentative Order would require Facebook to produce certain ADI communications.  Tentative Order ¶ 14–15.  Then, if Plaintiffs can demonstrate these produced communications are relevant, Plaintiffs may request additional communications.  *Id* ¶ 16.  That process is backwards.  Plaintiffs are not entitled to materials that are not relevant.  *Leon v. Cnty. of San Diego*, 202 F.R.D. 631, 634 (S.D. Cal. 2001) ("The threshold issue in any discovery dispute is determining whether the requested discovery meets the requirements of [Rule 26] regarding relevance.").

2.     As Judge Chhabria and the Special Master have recognized previously, Facebook—as the producing party—is entitled to make relevance determinations, and Plaintiffs are not entitled to discovery regarding materials that are not relevant.  *See* Mar. 5, 2020 Hr'g Tr. (Ex. O) at 7:23–8:10 ("[Facebook] would never be required to do a log of the stuff that they pulled out and determined was irrelevant or non-responsive to your request."); Supplemental Order Regarding The Use Of TAR

¶¶ 2, 4, 16, JAMS Ref. No. 1200058674, Oct. 9, 2021 (Ex. P) (denying Plaintiffs' request for Facebook to use TAR and denying Plaintiffs participation in Facebook's relevancy determinations). The Special Master's Tentative Order undermines this basic principle, particularly given Judge Corley's finding that many of the documents at issue are entirely irrelevant. Ex. B at 17:8–21.

      3.     Facebook respectfully seeks reconsideration of the Tentative Order to the extent it requires Facebook to produce materials that are not relevant to the case.

**IV.     Facebook seeks reconsideration of any requirement that Facebook produce materials over which it asserts privilege without the Special Master having conducted the document-by-document *in camera* review that Ninth Circuit authority requires.**

      To the extent the Special Master intended to order Facebook to produce (and not merely to log) ADI communications over which it asserts privilege, Facebook respectfully seeks reconsideration of that holding. It is not clear whether the Tentative Order requires Facebook to *produce* ADI communications that Plaintiffs request even if Facebook asserts privilege over those communications, or whether it allows Facebook to log privileged communications consistent with the parties' Privilege Protocol. ADI was a legal investigation designed and led at all stages by attorneys in order to advise Facebook on its legal risks (including in this litigation and related actions) and communications from the investigation are privileged. To the extent the Special Master intended to issue a blanket ruling requiring Facebook to produce massive volumes of communications over which it has asserted privilege, that holding conflicts directly with controlling authority.

      1.     The Massachusetts Supreme Judicial Court recently considered whether ADI communications (including non-attorney communications) are privileged. That court held that "any confidential communications relating to ADI among Facebook, Gibson Dunn, and other members of the ADI team would almost certainly be privileged." Ex. M at 888.

      2.     While Facebook disagrees, Judge Corley found that the ADI served a dual legal and business purpose. Dkt. 736 at 6. Judge Corley recognized that certain non-attorney communications she reviewed *in camera* appeared to be privileged. Ex. B at 17:8–21, 18:1-4, 18:13-15. She also recognized that Plaintiffs would not be entitled to ADI materials to the extent they include work product or attorney advice. *Id.* at 16:22–25.

12

Gibson, Dunn & Crutcher LLP

MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

3.     A long line of Ninth Circuit authority holds that a court must assess "dual purpose" materials for privilege *in camera* and on a document-by-document basis.  courts in the Ninth Circuit consistently apply the "because of" test to determine whether specific documents are entitled to work product protection and the "primary purpose" test to determine whether they are protected by the attorney-client privilege.  *See Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016) (describing "because of" test); *In re Grand Jury*, 13 F.4th 710, 716–17 (9th Cir. 2021) (adopting "primary purpose" test for dual purpose documents).[8]

4.     Neither the "primary purpose" test for attorney-client communications nor the "because of" test for attorney work product allows for a categorical ruling that materials from a dual-purpose investigation are discoverable.  Both tests require a fact-intensive analysis of whether specific documents served a legal purpose.[9]  This requires either a document-by-document inquiry or a sampling of the relevant types of documents to determine which types of materials served a legal purpose.[10]  This is also consistent with Judge Corley's view that the Court could not fully resolve the parties' dispute regarding attorney-client privilege for ADI-related communications based on an *in*

---

[8]  In the context of dual-purpose investigations, documents are considered privileged if legal advice was a primary purpose, or "one of the significant purposes of [the] attorney-client communication" at issue.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014) (emphasis added); *see also Todd v. STAAR Surgical Co.*, 2015 WL 13388227, at *10 (C.D. Cal. Aug. 21, 2015) (conclusions reached by consultant retained by law firm were protected work product because work, while "related to routine business matters, was being channeled through [the law firm] so that it could provide legal advice . . . in anticipation of litigation"); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) (documents underlying investigation created by outside law firm were privileged and work product because "an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal investigations would threaten to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law"); *Pearson v. Ariz.*, 2020 WL 5544373, at *3 (D. Ariz. Sept. 16, 2020) (investigation report was protected work product despite the defendant's concession that "it would have investigated the incident underlying this case regardless of whether litigation was anticipated"); *Pitkin v. Corizon Health, Inc.*, 2017 WL 6496565, at *4 (D. Or. Dec. 18, 2017) (holding investigation report and supporting documents were privileged, even though the investigation was required under corporate policies and contracts, because "at least one primary purpose of the investigation was to assess the situation from a legal perspective, provide legal guidance, and prepare for possible litigation and/or administrative proceedings"); *United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 65 (D. Mass. 2020) (holding, after *in camera* review, that investigation report prepared by law firm was attorney-client privileged); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at *3 (N.D. Ill. June 27, 2019) (finding internal investigation documents privileged, but only after *in camera* review of each document).

[9]  *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 2013 WL 772668, at *8 (N.D. Cal. Feb. 28, 2013) (finding sample 17 documents reviewed *in camera*—out of 166 total documents—privileged, but declining to rule on remaining withheld documents); *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 183476, at *7–10 (D. Nev. Jan. 14, 2016) (granting *in camera* review of sample of 190 documents, noting that privilege of a dual-purpose document "can only be determined by evaluating the communication itself").  .

[10] *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 868–76 (N.D. Cal. 2019) (in challenge of over 4,000 privileged documents, court reviewed a sample *in camera* and appointed special master to decide future privilege disputes); *In re Lidoderm Antitrust Litig.*, 2016 WL 861019, at *7 (N.D. Cal. Mar. 7, 2016) (analyzing sample documents *in camera* "to provide guidance [on] . . . ongoing assertions of privilege").

MOTION FOR RECONSIDERATION OF SPECIAL MASTER'S ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC

*camera* review of 20 communications among non-attorneys.  Ex. B at 17:15–21.

5.     Facebook cannot be ordered to produce privileged materials without the Special Master conducting such an analysis and applying the "primary purpose" and "because of" tests to those materials.  Facebook respectfully asks the Special Master to reconsider his Tentative Order to the extent he is ordering production of communications over which Facebook is asserting privilege, without conducting the *in camera* review that the Ninth Circuit requires.

## V.     Facebook seeks reconsideration of the Tentative Order's holding that Facebook must produce attorney audits and "all memoranda" prepared by its consulting experts.

Facebook respectfully seeks reconsideration of the Tentative Order's holding that "all memoranda prepared by [Facebook's consulting experts]" and "all audits," including attorney audits, "are within the scope of Judge Corley's order."  Tentative Order ¶ 11.  Judge Corley's Order does not find discoverable "all audits" or "all memoranda" by Facebook's consulting experts.  With respect to audits, Judge Corley's Order states: "Plaintiffs are not seeking documents created by counsel, counsel's edits, or any communications with counsel.  Facebook has not explained how a non-attorney's interview or audit of a developer would be protected from discovery by the attorney-client privilege."  Ex. L at 6.  As for memoranda, Judge Corley's Order describes as discoverable two specific types of memoranda prepared by these experts: "background and technical reports."  *Id.*

1.     Judge Corley's Order is clear that she is ordering Facebook to produce only non-attorney audits.  Her order states "Plaintiffs are not seeking documents created by counsel, counsel's edits, or any communications with counsel."  Ex. L at 6.  She also explained that she was ordering Facebook to produce certain audit reports because "Facebook has not explained how a non-attorney's interview or audit of a developer would be protected from discovery by the attorney-client privilege."  *Id.*  There is no fair way to read this ruling to find attorney audits to be within the scope of Judge Corley's Order.  Nor has Facebook had an opportunity to create a record regarding attorney audits given that Plaintiffs did not seek these materials, as Judge Corley recognized.

2.     Judge Corley's order also does not find every single memorandum prepared by Facebook's consulting experts discoverable.  Her Order refers specifically to two types of memoranda prepared by Facebook's consulting experts—"background and technical reports."

Gibson, Dunn &
Crutcher LLP

3.      During the December 4 hearing before the Special Master, the parties and the Special Master discussed production of memoranda prepared by outside experts.  Consistent with Judge Corley's prior guidance, the only "memoranda" discussed at the hearing were the "background and technical reports" prepared by Facebook's consulting experts that Judge Corley had ordered produced—not a separate category of materials.  Southwell Decl. ¶ 4.

4.      Other memoranda prepared by Facebook's consulting experts are outside the scope of Judge Corley's guidance and the scope of documents she ordered the Special Master to work with the parties to produce.  Facebook has never had an opportunity to submit briefing or an evidentiary record regarding the other types of memoranda that its outside experts created or to demonstrate that these materials contain privileged information and work product.  *Id.*  Nor has the Special Master or Judge Corley conducted an *in camera* review of the other types of memoranda Facebook's experts prepared in order to analyze privilege under the "primary purpose" and "because of" tests.

5.      Facebook respectfully asks the Special Master to reconsider his order that Facebook produce these materials.  Facebook should not be ordered to produce additional types of memoranda that Judge Corley did not identify as potentially discoverable and for which Facebook has not had an opportunity to develop a record demonstrating privilege. At minimum, Facebook must be provided an opportunity to submit briefing and an evidentiary record regarding its claim of privilege over memoranda prepared by its outside experts beyond those addressed by Judge Corley, as neither the parties nor Judge Corley have ever previously addressed these materials.

## CONCLUSION

Facebook respectfully asks the Special Master to reconsider his ruling.  In the event that the Special Master does not reconsider or modify the Tentative Order, Facebook respectfully requests a stay of the order pending appeal to Judge Corley.  Facebook requests a hearing on this motion.

Gibson, Dunn &
Crutcher LLP

15
Motion For Reconsideration Of Special Master's Order Regarding Production Of Adi Related Documents
Case No. 3:18-MD-02843-VC

Dated:  December 15, 2021

**GIBSON, DUNN & CRUTCHER, LLP**

By: */s/ Orin Snyder*
Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn & Crutcher LLP

Motion For Reconsideration Of Special Master's Order Regarding Production Of Adi Related Documents
Case No. 3:18-MD-02843-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS. | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF ALEXANDER SOUTHWELL IN SUPPORT OF FACEBOOK'S MOTION FOR RECONSIDERATION** |

Gibson, Dunn & Crutcher LLP

I, Alexander H. Southwell, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of New York. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP. I submit this declaration in support of Facebook's Motion for Reconsideration.  I make this declaration on my own knowledge, and I would testify to the matters stated herein under oath if called upon to do so.

2.     I led the Gibson Dunn team engaged to develop and conduct the App Developer Investigation ("ADI"), and my team worked with FTI Consulting and Stroz Friedberg to investigate millions of apps as part of the ADI.

3.     On December 8, 2021, the Special Master ordered Facebook to produce on a rolling weekly basis various materials created as part of the ADI, including "all memoranda prepared by FTI Consulting or Stroz Friedberg and all background reports, technical reports, audits, and non-attorney developer interviews in connection with the ADI."  Order ¶ 13.  The Order requires Facebook to begin its productions of materials with those relating to apps for which audits and/or non-attorney interviews are available.  *Id.*

4.     When discussing "memoranda" prepared by FTI Consulting or Stroz Friedberg at the hearing on December 4, 2021, we discussed the background and technical reports prepared by FTI Consulting or Stroz Friedberg, which Judge Corley had ordered produced for six apps in her September 8, 2021 Order.  We did not discuss any other categories or types of "memoranda," largely because that was not part of Judge Corley's order.  Other memoranda created by FTI Consulting and Stroz Friedberg contain privileged information and attorney work product, and were drafted under the specific direction of Gibson Dunn for the purposes of allowing Gibson Dunn to assess and advise Facebook on potential legal risks.

5.     The Special Master's order instructs Facebook to produce materials on a rolling basis each week, but does not state when those productions are to begin.  Facebook would need at least three

to five weeks to begin producing an initial collection of the materials described by the order—including background and technical reports and audits and interviews conducted by non-attorneys. These materials are not currently collected in a document-review platform. Collection of these materials would likely require multiple weeks to complete and may involve collecting from varied document repositories, sources, and custodians. Then they would need to be transferred into a document-review platform. Uploading the background and technical reports to a database for review on a rolling basis would likely require at least two-four days to complete for each group of documents collected from a particular repository, source, or custodian.

6.      Once the materials are uploaded to a review platform they will need to be reviewed. I believe there are over 2,800 background reports and 4,800 technical reports, each of which varies in length from dozens to many hundreds of pages. ADI materials are nuanced and unique, and Facebook will need to staff and train a review team to review them. It would likely take at least two to three weeks to recruit and train reviewers (it will be more difficult to recruit and staff reviewers around the holidays) and then for them to review the first set of materials required for production under the Special Master's order. Additional time will likely be required to recruit and train a review team with enough members to review the substantial volume of total reports. I am informed and aware that, at the same time that this review would be conducted, Facebook is separately completing a review of many millions of documents in connection with other document requests that have been issued in this case. This separate review places further constraints on the resources of our vendors, the senior attorneys who are needed to manage and quality check the review, and the in-house attorneys at Facebook. In total, a preliminary estimate, without the benefit of testing and subject to change, is at least three months to complete a review of all of the background and technical reports (once the reviewers begin), even if we are able to recruit and train a review team of say thirty attorneys.

Gibson, Dunn & Crutcher LLP

7.     The tentative order further states that "within five days of receiving the first rolling production from Facebook, Plaintiffs may request all non-attorney internal Facebook communications, communications with FTI Consulting or Stroz Friedberg, or communications with third party app developers in connection with a statistically significant sample of the reports provided," and that Facebook must provide such communications within ten business days.  Order ¶¶ 14–15.

8.     It would not be feasible for Facebook to produce all such communications within ten days of receiving such a request.  The ADI team did not collect and store communications organized by report.  Providing communications in connection with a given report created as part of the ADI would require Facebook to collect all ADI-related communications and then identify and conduct a careful analysis of whether each communication relates in any way to one of the reports.  The time to complete this process would vary widely depending on the report and it could take weeks to identify and review communications related to a relatively simple report and far more for more complex reports, as explained more below.

9.     It is my understanding that the Special Master's order requires communications to be collected and produced from the 26 ADI-related custodians to which the parties agreed previously.  The complete inboxes of these custodians have not been collected, except for the 3 ADI custodians who are among the other 81 custodians in this case.  These custodians' inboxes would need to be collected, uploaded to a review database, and searched for ADI-related communications that refer to any of the apps referenced in the first set of reports Facebook produces.

10.    Under the Special Master's order, Facebook's first production would include background and technical reports associated with apps for which Facebook also has audits and/or interviews conducted by non-attorneys.  There are around 80 background and technical reports associated with the audits Facebook conducted that concern around ten developers and over 32,000 apps.  Given the quick timing of Facebook's reconsideration motion, we are continuing to assess what,

Gibson, Dunn &
Crutcher LLP

if any, interviews and related reports fall within the Order, which could potentially increase the number of reports and associated apps.

11.    I estimate that reviewing ADI-related communications referencing the over 32,000 apps addressed by Facebook's audits alone, to identify any communications "in connection with" the background and technical reports that address those apps, could take months.

12.    First, I estimate the volume of communications would, at minimum, be in the order of tens of thousands (perhaps hundreds of thousands) of documents.  When Facebook previously collected and reviewed ADI communications associated with just six apps, the review involved approximately 6,000 documents.[1]  I recognize that the tentative order contemplates production specifically of non-attorney internal Facebook communications or communications with Facebook's consulting experts. As a practical matter, this limitation would not significantly narrow the number of communications Facebook would need to collect and review.  In order to accurately assess which non-attorney communications may be "in connection" with a particular report, Facebook would likely need to assess most, if not all, ADI related communications regarding the apps referenced in each report to get a full picture of the work that went into each report and which non-attorney communications relate to that work.  Put differently, understanding the context of isolated non-attorney communications will require assessing surrounding attorney communications that the Special Master has not ordered produced.  My team also found this to be true during the parties' prior sampling exercise for the six exemplar apps. When we briefed to Judge Corley Facebook's claim of privilege over the 20 non-attorney communications Plaintiffs selected for review in camera, we frequently needed to review large numbers of attorney communications to understand the full context of non-attorney communications, and we

---

[1] This number is distinct from the number of entries that appeared on Facebook's logs for two reasons.  First, Facebook produced any non-privileged materials from that review.  Second, Facebook produced a separate privilege log for each of the six apps that were part of the sampling exercise.  When a document referenced more than one of the six apps, it appeared on the privilege log created for each app that it referenced.

Gibson, Dunn & Crutcher LLP

referred Judge Corley to certain attorney communications to help her understand the context of the non-attorney communications Plaintiffs had selected for her review.  Dkt. 613 at 11–15, 17–19.

13.     Second, significant familiarity with the ADI would be required to review accurately whether communications were in connection with a background and/or technical report.  The ADI was complex and nuanced, and—in my experience and professional judgment—only attorneys who worked on the ADI would be able to accurately review communications to determine if they were "in connection with" a particular background or technical report.  Communications in connection with a report often times would not say so explicitly and may not even explicitly reference the ADI.  Conversely, apps and developers that were the subject of a background or technical report created as part of the ADI will commonly appear in communications with ADI custodians that were not in connection with an ADI background and/or technical report.  To understand whether particular communications were "in connection with" a report, the reviewer will need to understand the context of each report, the types of communications that may have occurred around each individual report (which would have varied based on the circumstances), and be able to distinguish carefully among ADI-related communications that were related to reports, ADI-related communications that were not related to reports, and communications about apps addressed by reports that were not related to ADI at all.

14.     For example, because the ADI covered millions of apps, many of which were active on the Facebook Platform while the ADI was ongoing, communications from different Facebook stakeholders about and with developers of these apps would have been common.  Such communications would likely have included some of the ADI custodians, but many of even these communications may not have been related to the ADI but instead would have been related to other Facebook purposes and initiatives.  Reviewers with deep, personal knowledge of the ADI would be needed in order to accurately distinguish these materials.

Gibson, Dunn &
Crutcher LLP

15.     There are currently two Gibson Dunn associates who have the required familiarity with the ADI to conduct this review accurately.  Two other attorneys who have the requisite familiarity to conduct this review are on leave and will not return to the firm until at least late January.

16.     Moreover, many, if not most, ADI related communications "in connection with" a background or technical report, would contain attorney advice or attorney work-product that would need to be reviewed carefully for privilege, redacted, and carefully quality checked for accuracy and consistency across communications.  Gibson Dunn reviewed and relied on background and technical reports to create work product and provide legal advice to Facebook and to direct FTI Consulting and Stroz Friedberg to take action in furtherance of the investigation for the purpose of assessing litigation risk.  Communications "in connection with" background and technical reports in most cases will relate directly to Gibson Dunn's work-product and advice.

17.     More than 300 Gibson Dunn attorney hours were spent to collect, review, produce, and log documents and communications for the six exemplar apps.  More than 90% of that time was from attorneys with deep, personal familiarity with ADI.  The privilege logs that Facebook prepared for just 6 apps, contained more than 6,000 entries.  Conducting a similar review for 32,000 apps could potentially require Facebook to logs tens (or hundreds) of thousands of documents and require hundreds of thousands of attorney hours (accounting for many millions of dollars of billable hours) to complete.

\*       \*       \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 15, 2021 in New York, New York.

Alexander H. Southwell

DECLARATION OF ALEXANDER SOUTHWELL IN SUPPORT OF FACEBOOK'S MOTION FOR RECONSIDERATION
CASE NO. 3:18-MD-02843-VC

Gibson, Dunn &
Crutcher LLP