# Defendant's Exhibit 35

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | MDL NO. 2843<br>CASE NO. 3:18-MD-02843-VC-JSC<br><br>**FACEBOOK'S MOTION FOR RECONSIDERATION OF SUPPLEMENTAL ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS**<br><br>Judge: Hon. Vince Chhabria<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br><br>JAMS Ref. No.: 1200058674 |

Gibson, Dunn &
Crutcher LLP

FACEBOOK'S MOTION FOR RECONSIDERATION OF SUPPLEMENTAL ORDER REGARDING PRODUCTION OF ADI RELATED
DOCUMENTS
CASE NO. 3:18-MD-02843-VC-JSC

**INTRODUCTION**

Facebook respectfully seeks reconsideration of the Special Master's Supplemental Order Regarding Production of ADI Related Documents.  The order, as written, purports to require Facebook to collect and review millions of documents that were not part of the ADI discovery dispute delegated by Judge Corley to the Special Master, and then to produce those documents even if they are irrelevant and regardless of proportionality and burden.  The order also appears to require production of attorney-client-privileged and work-product documents unless they satisfy an improperly narrow legal standard.  The order should be reconsidered and modified because it: imposes a disproportionate burden on Facebook that will stretch document discovery onward for at least one more year; improperly narrows the scope of attorney-client privilege and work-product protection; and requires production of irrelevant documents.  If the Special Master did not intend these results, and merely sought to devise a process to determine a subset of documents to be produced, Facebook respectfully requests that the Special Master amend his order to make that clear.  At a minimum, Facebook respectfully requests further clarifying instructions.

After years of litigation on the issue, the Special Master ordered Facebook to produce "***all documents relating to the ADI***, including communications that include attorneys as listed recipients or cc'd except for documents created for the sole and specific purpose of obtaining legal advice from attorneys." Ex. A ¶ 18.  That order reflects several basic legal errors, and if it becomes final, it will bog this case down in at least one more year of discovery.  Judge Corley never suggested that *all* documents relating to ADI were discoverable.  If she had, the parties would not have spent two years working to narrow this issue before the Court, and there would have been no need for Judge Corley to delegate anything to the Special Master.  To the contrary, Judge Corley stated that many of the ADI-related materials that she reviewed *in camera* were either irrelevant or could be protected by the attorney-client privilege or work-product doctrine for document-specific reasons.

Read literally, the Special Master's instruction to review "all" ADI-related documents and then produce any that are not "for the sole and specific purpose of obtaining legal advice from attorneys" could require Facebook to collect and review **millions of documents**[1]—a process that would impose wildly

---

[1]  As addressed in Section IV, the Special Master issued a later instruction regarding the intended scope of his order that requires clarification.

Gibson, Dunn & Crutcher LLP

disproportionate burdens on Facebook, inconsistent with Rule 26.  To be clear, this case is not about ADI.  But Facebook is already producing hundreds of thousands of pages of ADI-related materials (largely under compulsion) that reveal the "underlying facts" uncovered by the investigation.  Judge Corley recognized that the remaining materials—which largely show the day-to-day workings of an investigation conducted *after* this lawsuit was filed—are of marginal, if any, relevance to this case.  Ex. B at 17:9–10 (stating that "a lot of it" was not "relevant at all"); Ex. C at 10:11–20 (describing ADI documents as not "at the heart of the matter at all" and "nothing").  But the Special Master's order sweeps in all of these documents, including ones Plaintiffs were no longer even seeking—such as attorney communications that Judge Corley specifically stated were not at issue (and thus did not delegate to the Special Master).  To the extent the Special Master did not intend that result, Facebook respectfully requests clarification

Worse, collecting and reviewing a massive volume of irrelevant and largely privileged materials will not even be the end.  The process will balloon even further if Plaintiffs challenge Facebook's privilege logs, as they have consistently done.  Ninth Circuit law (and the Court's guidance) requires a document-by-document analysis, and Facebook has never had an opportunity to submit argument and evidence to substantiate the vast majority of its individualized privilege assertions.  With the substantial completion deadline less than two weeks away, the productions contemplated under the order—and the minefield of privilege disputes the parties and the Special Master would have to navigate—will prolong discovery in this case for at least one more year.  Facebook respectfully requests the Special Master reconsider his supplemental order or issue further clarifying instructions.

**BACKGROUND**

**I.     Facebook engaged Gibson Dunn to conduct an internal investigation.**

In March 2018, facing lawsuits and regulatory scrutiny after news reports about Cambridge Analytica, Facebook's in-house legal team hired Gibson Dunn to conduct a retrospective internal investigation.  The investigation, known as the "App Developer Investigation" or "ADI," focused on developers and apps that were active on Facebook before Facebook changed its platform in 2014 to reduce data access.  ADI's core goal was to identify and assess legal risks posed by apps that had previously had access to large amounts of information before Facebook changed its platform policies and to provide legal advice to Facebook about legal challenges those apps might present in this litigation and other related cases.

Gibson Dunn, alongside in-house counsel, managed and oversaw all stages of the investigation, which took several years and encompassed millions of apps.  Southwell Decl. ¶ 5.

## II.   Plaintiffs initially sought all materials relating to ADI, and Judge Corley pushed them to narrow their request in light of privilege and relevance concerns.

Plaintiffs initially demanded Facebook produce *all* ADI-related documents.  *See* Ex. D at 17; *see also* Ex. E at 40:11–12.  Facebook agreed to produce communications with third parties, but objected to producing materials protected under the attorney-client privilege and work-product doctrine and explained that a demand for all ADI-related materials called for a burdensome collection and review of millions of documents.  Facebook did not object to producing documents relating to its regular, real-time platform enforcement efforts and has produced many thousands of such documents.

Judge Corley urged the parties to develop a sampling exercise that would allow her to provide guidance about which ADI-related materials would be discoverable.  This exercise, which addressed communications relating to just *six* of the millions of apps ADI addressed, took more than **300 attorney hours** from Gibson Dunn attorneys and resulted in privilege logs containing more than 6,000 entries.  Ex. F ¶ 17; Southwell Decl. ¶ 5.  Plaintiffs moved to compel all of the entries that did not list an attorney as an author or recipient—about 400 entries—and Judge Corley allowed Plaintiffs to select 20 of those entries for *in camera* review.  Ex. G ¶ A.

After an *in camera* review, Judge Corley determined that "there certainly are going to be documents in there that are, A, attorney-client privilege; or, B, attorney work product," and that those documents were "not going to be discoverable."  Ex. B at 16:22–17:3.  She observed that "a lot of it" was not "relevant at all" and Plaintiffs did not need "every single document."  *Id.* at 17:9–10, 16–18.  Judge Corley did not issue a ruling on the 20 documents before her, reasoning that any ruling could not resolve the broader privilege dispute and that the parties would likely be back on "every single document."  *Id.* at 17:15–21.  She pressed Plaintiffs to narrow their request.  *Id.* at 17:22–23.  Plaintiffs responded that they only needed "the facts underlying the investigation that relate to our claims."  *Id.* at 18:1–4, 18:13–14.

## III.   The parties spent months mediating and litigating "underlying facts."

The parties mediated what "underlying facts" meant without success.  Judge Corley then ordered a joint letter brief, Ex. H, and issued an order, noting that Plaintiffs sought "documents (not created by

lawyers) from the 'Enhanced Examination phase' that involve background and technical investigations to identify the potential for data misuse" and "documents from the 'Enforcement phase,' including Facebook conducted audits and interviews." Ex. I at 2–3. She also noted that "[n]one of these documents were part of the *in camera* review the Court earlier conducted," which had focused on ADI-related communications. *Id.* at 3. Judge Corley allowed Facebook to submit a "declaration with supporting exhibits in support of its assertion that these investigatory materials are privileged from discovery." *Id.* Aside from that single declaration, Facebook has never been permitted to provide an evidentiary record in support of its claims of privilege over any other ADI materials.

### IV.   Judge Corley issued an order narrowing the dispute.

Judge Corley then issued another order resolving the dispute. She ordered Facebook to produce three buckets of materials she believed to contain underlying facts from the six apps used for the sampling exercise: "background and technical reports," non-attorney audits, and non-attorney developer interviews. Ex. J at 7. She reasoned that "Facebook has offered no special reasons why *those particular documents* are privileged." *Id.* (emphasis added). She also made clear, however, that Plaintiffs were only seeking documents "from the second and third phases [of ADI] that *do[] not involve communications with lawyers or content created by lawyers*," and that "Plaintiffs [were] *not seeking documents created by counsel, counsel's edits, or any communications with counsel*." *Id.* at 2, 6 (emphases added). Judge Corley concluded by ordering the parties to "work with the Special Master regarding production of additional materials *consistent with the guidance offered by [her] Order*." *Id.* at 7 (emphasis added).

### V.   The Special Master issued an order requiring Facebook to provide the documents from the sampling exercise for another *in camera* review, and Judge Corley affirmed.

Before the Special Master, Plaintiffs demanded, for all apps investigated, the categories of documents Judge Corley identified (background and technical reports, non-attorney audits, and non-attorney interviews), and also "all memoranda prepared by [Facebook's consulting experts] related to ADI of all apps it investigated or investigated at Facebook's direction, . . . [attorney] audits, and [attorney] developer interviews, and internal Facebook communications regarding these materials." Ex. K at 5; *see also* Ex. L at 1. The parties were unable to reach agreement, and the Special Master ordered short summaries of the outstanding disputes. He did not take briefing or evidence.

On December 8, the Special Master issued an order finding "all memoranda prepared by [Facebook's consulting experts] and all background reports, technical reports, audits, and developer interviews in connection with the ADI are within the scope of Judge Corley's order" and that her order "does not exclude non-attorney internal Facebook communications, communications with FTI Consulting or Stroz Friedberg, or communications with third party app developers from the scope of ADI documents to be produced, but rather only addresses reports, audits, and interviews." Ex. M ¶¶ 11–12.

The Special Master further found "additional information regarding the relevance of such communications is necessary to determine whether such communications should be produced." *Id.* ¶ 12. The order required Facebook to "produce, on a rolling weekly basis, all memoranda prepared by FTI Consulting or Stroz Friedberg and all background reports, technical reports, audits, and non-attorney developer interviews in connection with the ADI," beginning with "the reports for which related audits and non-attorney interviews are available." *Id.* ¶ 13.   After receiving the first production, Plaintiffs could "request all non-attorney internal Facebook communications, communications with FTI Consulting or Stroz Friedberg, or communications with third party app developers in connection with a statistically significant sample of the reports provided." *Id.* ¶ 14.   Facebook would then have ten days to produce documents in response, and Plaintiffs could "request additional ADI related communications upon a showing that the communications are relevant." *Id.* ¶¶ 15–16.

Facebook did not challenge the portions of the Special Master's ruling requiring it to produce background and technical reports for all apps and non-attorney interviews and audits, as these holdings were consistent with Judge Corley's instructions.  Facebook moved for reconsideration, however, as to the portions of the order that required production of privileged materials outside of the categories Judge Corley ordered produced and portions of the order that imposed unreasonable burdens.  *See* Ex. N.  Facebook explained that the Special Master's order could require Facebook, within two weeks, to collect and review communications relating to more than **32,000** apps to determine whether they were "in connection with" an investigatory report prepared by Facebook's outside experts—a process that would take thousands of attorney hours.  *See id.* at 8–11.  Facebook also explained many of the documents would not be relevant. *See id.* at 11–12.  Finally, Facebook pointed to Ninth Circuit authority requiring document-by-document *in camera* review of the materials over which Facebook asserted privilege.  *See id.* at 12–14.

5

Gibson, Dunn &
Crutcher LLP

On December 20, the Special Master issued an amended order.  That order still required rolling productions.  But instead of allowing Plaintiffs to make requests for communications, it required Facebook to "provide to Special Master Garrie for *in camera* review[] all ADI related communications pertaining to the six exemplar applications"—the materials from the prior sampling exercise.  Ex. O ¶ 16.  Facebook provided those materials for the Special Master's *in camera* review and appealed to Judge Corley.[2]

On January 12, Judge Corley issued an opinion.  She affirmed the Special Master's findings that her prior order "d[id] not exclude non-attorney internal Facebook communications with [Facebook's consulting experts]" and that "additional information regarding the relevance of [internal ADI] communications is necessary to determine whether such communications should be produced."  Ex. P ¶ 1 (quoting Ex. Q).  She explained her prior order found that "ADI played a dual purpose" such that "the attorney work-product privilege did not protect all material," and that "[t]he guidance offered by the Court's ADI Order was that ADI-related documents are not protected by the work-product or attorney-client privilege in the absence of specific showings."  *Id.*; *see also* Ex. C at 7:8–10 ("I never ruled that attorney work product or attorney-client privilege communications had to be produced.").  Judge Corley also affirmed the Special Master's findings that memoranda prepared by experts and audits conducted by non-attorneys were within the scope of her prior order,[3] but said she did not read the Special Master's order to "include[] the production of attorney audits."  Ex. P at ¶¶ 2–3.

## VI.    The Special Master ordered Facebook to produce "all documents relating to the ADI."

On January 10, 2022—two days before Judge Corley issued her opinion, and five days after Facebook re-submitted the 6,000 documents for the Special Master's *in camera* review in the preferred format—the Special Master issued a supplemental order.   Despite the burden issues Facebook demonstrated in its motion for reconsideration, and without Plaintiffs requesting it, the Special Master

---

[2]  Facebook initially provided the Special Master these materials on Dec. 24.  The Special Master later indicated that he would prefer a different format.  The documents were provided to Special Master in a new format on Jan. 5.  *See* Declaration of Martie Kutscher ¶ 2.

[3]   There may have been some confusion regarding Facebook's appeal of the Special Master's finding about discoverable "memoranda."  *See* Ex. O ¶ 13.  It appears Judge Corley may have understood Facebook to have been appealing the Special Master's finding that *background and technical* reports were within the scope of Judge Corley's prior order.  *See id.* ¶ 2.  Facebook was not appealing that aspect of the finding; rather, it was appealing the finding insofar as it would require production of reports *other than* the background and technical reports described in Judge Corley's prior order.

Gibson, Dunn & Crutcher LLP

*expanded* the materials at play to *all* ADI-related documents.  The order found "pursuant to Judge Corley's Order Granting Motion to Compel ADI Materials, documents prepared in connection with the ADI are not protected from discovery as attorney work product because the documents served a business purpose separate from litigation." Ex. A ¶ 15.  The Special Master said he reviewed "a substantial portion" of the 6,000 documents Facebook provided five days earlier and that "a substantial number of the documents are relevant to the case and not protected by privilege." *Id.* ¶ 17.  He cited six documents for this assertion; two are identical to each other, FB-ADI-INCAMERA-0000000005.pdf; FB-ADI-INCAMERA-0000000084.pdf, and another is a report Facebook already produced, FB-ADI-INCAMERA-0000000262.pdf.  Based on these findings, the Special Master ordered Facebook to produce "all documents relating to the ADI, including communications that include attorneys as listed recipients or cc'd except for documents created for the sole and specific purpose of obtaining legal advice from attorneys." *Id.* ¶ 18.

## ARGUMENT

The Special Master's order encompassing "all documents relating to the ADI" is a shocking departure from the history of this dispute and reflects several basic legal errors.  *First*, the order enormously expands the universe of materials at issue and imposes a disproportionate burden on Facebook that will prolong discovery for at least another year.  *Second*, in violation of Ninth Circuit law, the order creates a minefield of unbriefed privilege and work-product issues that require document-by-document examination and uses the wrong legal standard to assess privilege.  *Third*, the order improperly requires Facebook to collect, review, and produce untold numbers of irrelevant materials.  Facebook respectfully requests the Special Master reconsider his order, or—at minimum—clarify its scope.

I.    **The Special Master's order backtracks on more than one year of forward progress and imposes a disproportionate burden to collect and review millions of documents.**

Read literally, the order backtracks on years of work to focus the scope of ADI-related discovery and exceeds the authority delegated to the Special Master.  Under Judge Corley's guidance, Plaintiffs narrowed their initial request for "all" ADI-related materials to only "the facts underlying the investigation that relate to [their] claims." Ex. B at 17:9–10, 18:1–4.  Judge Corley later explained that Plaintiffs were only seeking documents "from the second and third phases [of ADI] that do[] not involve communications with lawyers or content created by lawyers" and were "not seeking documents created by counsel,

counsel's edits, or any communications with counsel." Ex. J at 2, 6.  A literal reading of the Special Master's order would stretch far beyond that—it requires collection and review of "*all* documents relating to the ADI [from all phases of the investigation], *including communications that include attorneys as listed recipients or cc'd*." Ex. A ¶ 18 (emphases added).  By requiring collection and review of "all documents relating to the ADI," the order exceeds the authority delegated by Judge Corley, exceeds what Plaintiffs requested, and will take the parties back to square one.

That broadside approach runs afoul of basic proportionality protections.  *See* Fed. R. Civ. P. 26(b)(1).  It is not "good enough to hope that the information sought might lead to the discovery of admissible evidence." *Gilead Scis. v. Merck*, 2016 WL 146574, at *1 (N.D. Cal. 2016).  "Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Id.*

The vast majority of the documents at issue would not advance the litigation.  As Judge Corley has twice expressed, the relevance of many ADI-related materials (especially communications) is marginal at best. Ex. B at 17:9–10 ("a lot of it" was not "relevant at all"); Ex. C at 10:11–20 (describing ADI documents as not "at the heart of the matter at all" and "nothing").  And Facebook has already produced (or is in the process of producing) the most relevant documents.  Facebook has produced more than 30,000 pages of ADI materials consisting of a broad range of communications with app developers about ADI.  *See* Ex. R (describing 22 topics included in produced communications with app developers).  And as required under the Special Master's prior ADI order, Facebook is reviewing and producing (under protest) the background and technical reports prepared by outside experts for *all* apps, as well as non-attorney audits and interviews. *See* Ex. O ¶ 15.  These materials provide the "underlying facts" ADI uncovered about historic app activity during the period relevant to this case.  Facebook has also produced many thousands of documents regarding Facebook's regular, real-time platform enforcement efforts.

The remaining materials covered by the Special Master's order are largely internal communications about the inner workings of an investigation conducted after the lawsuit was filed, and the burden imposed by collecting and reviewing all of them would be enormous.  Even ignoring the need for potential litigation over privilege issues, collection and review of "all documents relating to the ADI" would blow far past the substantial completion deadline (January 31).  Review and logging of just **6,000** documents pertaining to

8

Gibson, Dunn & Crutcher LLP

Facebook's Motion for Reconsideration of Supplemental Order Regarding Production of ADI Related Documents
Case No. 3:18-MD-02843-VC-JSC

1   just **six** apps for the sampling exercise took **300 attorney hours**.  Southwell Decl. ¶ 5.  That would pale in

2   comparison to the tens of thousands of hours it would take to collect and review *all* ADI-related documents,

3   which span a three-phase and multi-year investigation into millions of apps.

4          The process would be even more burdensome considering privilege issues.  Of the 6,000 documents

5   reviewed as part of the sampling exercise, Plaintiffs identified only 400 without an attorney as a direct

6   author or recipient.  Ex. G ¶ A.  Because ADI was designed and overseen by Gibson Dunn and Facebook's

7   in-house counsel, an overwhelming portion of the millions of documents will involve communications with

8   attorneys or otherwise reflect advice from attorneys.  Facebook would need to analyze, log, and (if

9   necessary) litigate privilege issues for these documents.

10         Holding this case hostage and requiring Facebook to expend tens of thousands of attorney hours to

11   squeeze one more drop from ADI—by collecting and reviewing materials consisting largely of internal

12   email traffic and details about how ADI was conducted *after this lawsuit was filed*—would impose a vastly

13   disproportionate burden and guarantee that discovery stretches into 2023.  Facebook respectfully requests

14   the Special Master limit his order to exclude, at a minimum, documents from ADI's first phase and

15   "documents created by counsel, counsel's edits, [and] any communications with counsel"—materials

16   Plaintiffs said they were not seeking.  Ex. J at 6; *see also id.* at 2.

17         Facebook recognizes the Special Master may not have intended his order to sweep so broadly.  At

18   the January 11, 2022 hearing, Judge Corley praised what she understood to be an effort by the Special

19   Master to carefully parse the 6,000 documents Facebook provided him in camera.  *See* Ex. C at 13:19–22.

20   If the Special Master did not intend for Facebook to immediately embark on a gargantuan effort to collect,

21   review, and log millions of additional ADI documents—and intended to first provide tailored guidance

22   regarding specific materials based on his review—Facebook respectfully requests that the Special Master

23   amend his order to allow a process for him to provide that guidance, with the benefit of briefing and an

24   evidentiary record on any documents he believes may be discoverable.

25   **II.     Facebook seeks reconsideration of the order's privilege and work-product rulings.**

26         Ninth Circuit precedent clearly establishes the "primary purpose" test to assess attorney-client

27   privilege, and the "because of" test to assess work product.  The Special Master's "sole and specific

28   purpose" test departs from those standards.  Ninth Circuit law also requires a document-by-document

Gibson, Dunn &
Crutcher LLP

review before ordering production of a broad collection of materials over which a party has asserted privilege, but the Special Master's call that Facebook produce "all documents relating to the ADI" except for "documents created for the sole and specific purpose of obtaining legal advice from attorneys" skips over that process.  Facebook respectfully requests that the Special Master (a) revise his privilege carve-out to reflect the Ninth Circuit's "primary purpose" and "because of" privilege standards, and (b) reconsider his categorical finding that ADI-related documents cannot be protected work-product.

### a.  The Special Master's ruling requires production of privileged materials.

The order says Facebook's production must "includ[e] communications that include attorneys as listed recipients or cc'd except for documents created for the sole and specific purpose of obtaining legal advice from attorneys." Ex. A ¶ 18.  The Special Master's "sole and specific purpose" test is not the proper test to assess privilege and is at odds with the premise of a "dual-purpose" investigation.  In dual-purpose cases, the test for attorney-client privilege is the "primary purpose" test.  *In re Grand Jury*, 13 F.4th at 716–17.  The test for work-product protection is the "because of" test.  *Richey*, 632 F.3d at 567–68.  Those standards must govern any privilege carve-out, not the Special Master's "sole and specific purpose" test.  Any privilege determinations that the Special Master made under an incorrect legal standard must also be revisited.  *Cf. Quin v. Cnty. of Kauai*, 733 F.3d 267, 270 (9th Cir. 2013) (court "necessarily abuses its discretion when it bases its decision on an erroneous legal standard").

### b.  The Special Master failed to conduct the required document-specific analysis.

The Special Master found that "documents prepared in connection with the ADI are not protected from discovery as attorney work product." Ex. A ¶ 15.  This categorical finding is problematic because Judge Corley made clear that particular documents may qualify as work product for document-specific reasons.  *See, e.g.*, Ex. P ¶ 1.  Facebook respectfully disagrees with Judge Corley's dual-purpose finding and maintains that ADI was conducted for the purpose of providing legal advice.  *Accord Att'y Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 888 (Mass. 2021) (concluding that ADI qualifies as "an internal investigation that is undertaken to gather facts for the purposes of providing legal advice" and noting that "any confidential communications relating to the ADI among Facebook, Gibson Dunn, and other members of the ADI team would almost certainly be privileged").  But even under Judge Corley's dual-purpose finding, Ninth Circuit precedent requires each document to be scrutinized individually to assess whether

Gibson, Dunn & Crutcher LLP

10

FACEBOOK'S MOTION FOR RECONSIDERATION OF SUPPLEMENTAL ORDER REGARDING PRODUCTION OF ADI RELATED DOCUMENTS
CASE NO. 3:18-MD-02843-VC-JSC

1   it falls on the legal or business side of the divide.

2          Under the "primary purpose" test, "courts look at whether the primary purpose of the

3   communication is to give or receive legal advice." *In re Grand Jury*, 13 F.4th at 714.[4]  Under the "because

4   of" test, documents "are deemed prepared because of litigation if in light of the nature of the document

5   and the factual situation in the particular case, the document can be fairly said to have been prepared or

6   obtained because of the prospect of litigation."  *Richey*, 632 F.3d at 568 (quotation marks and citation

7   omitted).  Neither one of those tests allows for a categorical ruling that materials from a dual-purpose

8   investigation are discoverable.  Rather, both require fact-intensive analyses of whether each particular

9   document served a legal end, which "can only be determined by evaluating [each] communication."

10  *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 183476, at *7 (D. Nev. Jan. 14, 2016).[5]

11         Judge Corley's guidance confirms this.  After reviewing 20 documents *in camera* and explanatory

12  briefing on each, Judge Corley declined to issue a ruling and explained that any ruling on those documents

13  could not resolve the parties' broader dispute and could necessitate litigation over "every single

14  document."  Ex. B at 17:15–21.  To resolve the parties' later dispute over certain investigatory materials

15  prepared by outside experts, Judge Corley allowed Facebook to submit a "declaration with supporting

16  exhibits in support of its assertion that *these investigatory materials* are privileged from discovery."  Ex.

17

18  [4]    In the context of dual-purpose investigations, documents should also be considered privileged if legal advice was "one of
    the significant purposes of [the] attorney-client communication".  *In re Kellogg Brown & Root*, 756 F.3d 754, 759–60 (D.C. Cir.

19  2014); *see also Todd v. STAAR Surgical*, 2015 WL 13388227, at *10 (C.D. Cal. 2015) (conclusions reached by consultant
    retained by law firm were protected work product because work, while "related to routine business matters, was being channeled

20  through [the law firm] so that it could provide legal advice . . . in anticipation of litigation"); *In re Gen. Motors*, 80 F. Supp. 3d
    521, 530 (S.D.N.Y. 2015) (documents underlying investigation created by outside law firm were privileged and work product

21  because "an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal
    investigations would threaten to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law");

22  *Pearson v. Ariz.,* 2020 WL 5544373, at *3 (D. Ariz. 2020) (investigation report was protected work product despite defendant's
    concession that "it would have investigated the incident underlying this case regardless of whether litigation was anticipated");

23  *Pitkin v. Corizon*, 2017 WL 6496565, at *4 (D. Or. 2017) (holding investigation report and supporting documents were
    privileged, even though investigation was required under corporate policies and contracts, because "at least one primary purpose

24  of the investigation was to assess the situation from a legal perspective, provide legal guidance, and prepare for possible litigation
    and/or administrative proceedings"); *United States v. Mass. Gen. Hosp.*, 475 F. Supp. 3d 45, 65 (D. Mass. 2020) (holding, after

25  *in camera* review, that investigation report prepared by law firm was attorney-client privileged); *Smith-Brown v. Ulta*, 2019 WL
    2644243, at *3 (N.D. Ill. 2019) (finding internal investigation documents privileged after *in camera* review of each document).

26  [5]    *See also, e.g.*, *Dolby Lab'ys Licensing v. Adobe*, 402 F. Supp. 3d 855, 868–76 (N.D. Cal. 2019) (in challenge of
    over 4,000 privileged documents, court reviewed a sample *in camera* and appointed special master to decide future

27  privilege disputes); *In re Lidoderm*, 2016 WL 861019, at *7 (N.D. Cal. 2016) (analyzing sample documents *in
    camera* "to provide guidance [on] . . . ongoing assertions of privilege"); *In re High-Tech Emp. Antitrust Litig.*, 2013

28  WL 772668, at *8 (N.D. Cal. 2013) (finding sample 17 documents reviewed *in camera*—out of 166 total
    documents—privileged, but declining to rule on remaining withheld documents).

I (emphasis added).  She ordered production because she found that "Facebook has offered no special reasons why *those particular documents* are privileged." Ex. J at 7 (emphasis added).  Judge Corley's opinion just last week stated that "[t]he guidance offered by the Court's ADI Order was that ADI-related documents are not protected by the work-product or attorney-client privilege *in the absence of specific showings of actual work-product*." Ex. P ¶ 1 (emphasis added); *id.* ("[T]he Court's ruling rejecting Facebook's broad attorney work-product claim means that such communications are not privileged *absent some other special showing as to specific communications*." (emphasis added)).  Facebook must be allowed to make those "specific showings" through briefing and an evidentiary record for particular documents.  For each of the 20 documents Judge Corley reviewed *in camera*, she allowed Facebook to submit one page of briefing and other context.

The order, by contrast, rejects work-product protection *wholesale*, finding that "pursuant to Judge Corley's Order granting Motion to Compel ADI Materials, documents prepared in connection with the ADI are not protected from discovery as attorney work product because the documents served a business purpose separate from litigation." Ex. A ¶ 15.  But that is not what Judge Corley held, and any holding *categorically* rejecting work-product protection without considering individual documents is contrary to caselaw. *See, e.g.*, *Fosbre*, 2016 WL 183476, at *7.  Judge Corley found that "ADI played a dual purpose." Ex. P ¶ 1.  Based on that finding, she left it to the Special Master to "specifically consider[] Facebook's additional privilege contentions." Ex. P ¶ 3; *see also* Ex. C at 19:12–14 ("What I had was Facebook's, you know, swinging-for-the-fences argument that every single thing part of the ADI was privileged, and that argument I rejected.").  She specifically stated that she did not read the Special Master's amended order on ADI materials to "include[] the production of attorney audits." Ex. P ¶ 3; *see also id.*  The Special Master's call for "all documents related to the ADI" is at odds with established authority and Judge Corley's expectation, and his finding that *no* ADI-related materials are protected under the work-product doctrine is flatly contrary to Judge Corley's statement that "there certainly are going to be documents in there that are . . . attorney work product." Ex. B at 16:22–17:3.

Even with respect to the 6,000 communications the Special Master had five days to consider, the privilege analysis was necessarily incomplete.  The Special Master found, based on his review of "a substantial portion" of those documents, "a substantial number of the documents are . . . not protected by

privilege." Ex. A ¶ 17.  But the Special Master did not have a list of which individuals involved in those communications were attorneys, and even outside counsel often used "@fb.com" email addresses.  Nor did the Special Master have briefing or declarations to provide context and substantiate claims of privilege over particular documents (as Judge Corley did)—which could demonstrate, for example, that a particular email was sent at the direction of counsel.  These considerations, and many others implicit in ADI, highlight the need for individualized analysis after an opportunity to submit argument and evidence to substantiate Facebook's privilege claims.[6]  It is also why the parties have a robust privilege protocol that provides for briefing on specific challenged documents.  Ex. S ¶¶ D(1)–(4).  To the extent Plaintiffs seek production of particular documents, given Judge Corley's dual-purpose determination, Facebook must be allowed to present particularized, document-specific reasons and declarations for the Special Master to consider during a document-by-document *in camera* review.

Again, to the extent the Special Master sought to devise a process to provide tailored guidance based on the 6,000 documents he reviewed—with an evidentiary record and briefing—so that he could determine a subset of documents to be produced, Facebook respectfully requests clarification.

**III.    The Special Master's order improperly orders production of irrelevant materials.**

"The threshold issue in any discovery dispute is determining whether the requested discovery meets the requirements of [Rule 26] regarding relevance." *Leon v. San Diego*, 202 F.R.D. 631, 634 (S.D. Cal. 2001).  Facebook is entitled to assess relevance as to individual documents.  *See Han v. Futurewei Techs., Inc.*, 2011 WL 4344301, at *5 (S.D. Cal. Sept. 15, 2011); *see also* Ex. T at 7:23–8:10 (Judge Chhabria permitting a relevance review even of documents produced to the FTC).  The Special Master's blanket production order of "all documents relating to the ADI" (with a narrow privilege carve-out) violates the threshold relevance requirement in the Federal Rules.

This case is not about ADI.  It is about long-defunct forms of data sharing that ended before ADI began.  The backwards-looking ADI exercise has only tangential relevance—if any—to this case.  When Judge Corley reviewed documents from the sampling exercise *in camera*, she found "a lot of it" not to be

---

[6] The Special Master's order that Facebook collect and review "all" ADI-related materials also runs counter to Judge Corley's more limited understanding of the task the Special Master was undertaking.  *Compare* Ex. C at 18:23–24 ("He has not ordered production of attorney communications."), *with* Ex. A ¶ 18 ("Facebook is to produce all documents relating to the ADI, including communications that include attorneys as listed recipients or cc'd except for documents created for the sole and specific purpose of obtaining legal advice from attorneys.").

"relevant at all." Ex. B at 17:9–10.  She reiterated that view last week, stating the documents she reviewed "weren't at the heart of the matter at all" and "were nothing." Ex. C at 10:11–20.  Even Plaintiffs admitted that the materials from the sampling exercise "were not particularly relevant." *Id.* at 16:10–11.  These are the same documents the Special Master reviewed.

Based on a review of certain documents from 6,000 relating to six apps, the Special Master reached a contrary view and concluded "a substantial number of the documents are relevant"—citing four unique documents that had not been produced. Ex. A ¶ 17.  That finding contradicts Judge Corley's finding based on her review of a subset of the exact same documents, and the Special Master is not authorized to overrule Judge Corley.  In any event, that finding does not justify blanket production of *all* documents relating to ADI without an individualized relevance review.

Facebook respectfully requests that the Special Master reconsider his order and make clear that irrelevant documents are not discoverable.

## IV.    At a minimum, the Special Master should clarify the order's scope.

Read literally, the Special Master's ruling would require collection and review of every single document relating to ADI.  Even though Facebook may not be required to produce many of those documents for privilege reasons, a privilege carve-out cannot mitigate the burdens imposed by collection, review, and logging.  The Special Master's order would require, for example, collection and review of emails from Gibson Dunn attorneys to Facebook's in-house counsel discussing the Special Master's order and drafts and related work product for briefing submitted to Judge Corley and the Special Master.

Based on recent communications, Facebook does not understand the Special Master to have intended such an unbounded scope.  On January 12, the Special Master stated in a JAMS message: "For the avoidance of doubt, the Supplemental ADI Order and the other ADI Orders do not add any new custodians." Ex. U.  It is not clear whether the Special Master intended to cabin Facebook's review to the materials already in Facebook's review set.  If that is not what the Special Master intended, even limiting the order to current custodians may require new collections, and would certainly require new search strings, if Facebook must find literally "all" documents relating to ADI.

As the Special Master is aware, the parties spent more than one year litigating the custodians and search strings that would be used to identify materials for Facebook's review.  That process resulted in 81

custodians and more than 140 search strings that yielded a review set of nearly six million documents. Plaintiffs have taken the position that their RFPs 31 and 32 request all documents relating to ADI.[7]  Ex. D at 17.  The parties negotiated, and Judge Corley ordered, dozens of search strings in connection with these specific RFPs, which alone hit on hundreds of thousands of documents.

To the extent the Special Master's instruction regarding the scope of his order meant that he did not intend for Facebook to collect additional materials to comply with his order, Facebook respectfully requests that the Special Master clarify that his order applies only to the documents in Facebook's review set that hit on by the dozens of search strings ordered for RFPs 31 and 32.

## CONCLUSION

Facebook respectfully requests that if the Special Master did not intend his order to reach literally "all documents relating to" ADI and intends to provide further, specific guidance based on the 6,000 documents that he reviewed, that he amend his order to make that clear.  Otherwise, Facebook requests that the Special Master adjust the additional ADI materials he is compelling Facebook to produce by (1) excluding, at a minimum, documents from the first phase of ADI, documents created by counsel, counsel's edits, and communications with counsel; (2) making clear that ADI-related documents must be analyzed for attorney-client privilege and work-product protection on a document-by-document basis, and revise the privilege carve-out to reflect the Ninth Circuit's privilege standards; and (3) making clear that irrelevant documents need not be produced.  Even if the Special Master declines to reconsider his ruling, Facebook respectfully requests clarification that it only compels production of documents in Facebook's review set that hit on by the search strings ordered for RFPs 31 and 32.

[7]   RFP 31 seeks:  "All Documents relating to Facebook's audits, inquiries, and investigations of Third Parties investigating compliance with any provisions of Facebook's Platform Policy, Data Policy, or SRR regarding the access, use, transmission, receipt, collection and analysis of Users' Content and Information on and off the Platform." RFP 32 seeks:  "All Documents Concerning Misuse of Data, including investigations, examinations, inquiries, or audits—or Communications regarding such investigations, examinations, inquiries, or audits—regarding Misuse of Data prior to the deprecation of Graph API v.1.0."

Gibson, Dunn & Crutcher LLP

Dated:  January 19, 2022

**GIBSON, DUNN & CRUTCHER, LLP**

By:  */s/ Orin Snyder*

Orin Snyder (*pro hac vice*)
osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Deborah Stein (SBN 224570)
dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Joshua S. Lipshutz (SBN 242557)
jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

Russell H. Falconer
rfalconer@gibsondunn.com
2001 Ross Avenue Suite 2100
Dallas, TX 75201
Telephone:  214.698.3170

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

Gibson, Dunn &
Crutcher LLP

FACEBOOK'S MOTION FOR RECONSIDERATION OF SUPPLEMENTAL ORDER REGARDING PRODUCTION OF ADI RELATED
DOCUMENTS
CASE NO. 3:18-MD-02843-VC-JSC

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

9
10

IN RE: FACEBOOK, INC. CONSUMER
PRIVACY USER PROFILE LITIGATION

11
12

This document relates to:

13
14

ALL ACTIONS.

15

CASE NO. 3:18-MD-02843-VC

**DECLARATION OF ALEXANDER**
**SOUTHWELL IN SUPPORT OF**
**FACEBOOK'S MOTION FOR**
**RECONSIDERATION**

16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

I, Alexander H. Southwell, hereby declare as follows:

1.      I am an attorney licensed to practice law in the State of New York. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP. I submit this declaration in support of Facebook's Motion for Reconsideration of the Special Master's January 10, 2022 Supplemental Order Regarding Production of ADI Related Documents.  I make this declaration on my own knowledge, and I would testify to the matters stated herein under oath if called upon to do so.

2.      I led the Gibson Dunn team engaged to develop and conduct the App Developer Investigation ("ADI"), and my team worked with FTI Consulting and Stroz Friedberg to investigate millions of apps as part of the ADI.

3.      On January 10, 2022, the Special Master ordered Facebook to produce "all documents relating to the ADI, including communications that include attorneys as listed recipients or cc'd except for documents created for the sole and specific purpose of obtaining legal advice from attorneys." Order ¶ 18.

4.      "[A]ll documents relating to the ADI" have not been collected previously.  Based on my knowledge of the investigation, I believe there could be millions of documents that relate to ADI in some manner.  Because ADI was designed and overseen by Gibson Dunn and Facebook's in-house counsel, I understand that the vast majority of those documents relating to ADI will involve communications with attorneys or otherwise reflect advice from attorneys, and will be privileged.

5.      When Facebook previously collected and reviewed ADI communications associated with just six apps, the review involved approximately 6,000 documents.  More than 300 Gibson Dunn attorney hours were spent to collect, review, produce, and log documents and communications for those six apps.  In total, ADI addressed millions of apps.

*       *       *

1          I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct. Executed on January 19, 2022 in New York, New York.

3

4

5

6                                                   Alexander H. Southwell

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

2

3

4

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

5

6

7

8

9

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Facebook, Inc.*

10

11

12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

13

14

15

16

17

18

IN RE: FACEBOOK, INC. CONSUMER
PRIVACY USER PROFILE LITIGATION,


This document relates to:

ALL ACTIONS

CASE NO. 3:18-MD-02843-VC

**DECLARATION OF MARTIE
KUTSCHER IN SUPPORT OF
FACEBOOK, INC.'S MOTION FOR
RECONSIDERATION OF
SUPPLEMENTAL ORDER REGARDING
PRODUCTION OF ADI RELATED
DOCUMENTS**

19

20

21

22

23

24

25

26

27

28

1    I, Martie Kutscher, hereby declare as follows:

2    1.    I am an associate at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record

3    for Facebook, Inc. ("Facebook") in the above-captioned matter.  I am a member in good standing of

4    the State Bars of California, New Jersey, and New York.  I submit this declaration in support of

5    Facebook's Motion for Reconsideration of Supplemental Order Regarding Production of ADI Related

6    Documents.  I make this declaration on my own knowledge, and I would testify to the matters stated

7    herein under oath if called upon to do so.

8    2.    On December 24, 2021, Facebook provided the Special Master for in camera review the

9    approximately 6,000 ADI communications that Facebook previously collected and reviewed for the

10   ADI-sampling exercise the parties conducted relating to six exemplar apps.  The Special Master later

11   indicated that he would prefer the materials in a different format.  Facebook provided the Special

12   Master the materials in an alternate format on December 31, 2021.  The Special Master followed up

13   with a subsequent request for the materials in a different format.  Ultimately, Facebook provided the

14   Special Master the documents in the format in which he indicated he wished to review them on January

15   5, 2022.

16   3.    I declare under penalty of perjury under the laws of the United States of America that

17   the foregoing is true and correct.

18

19   Executed on January 19, 2022 in Palo Alto, California.

20

21                                              /s/  Martie Kutscher

22                                              Martie Kutscher

23

24

25

26

27

28

1