# Plaintiffs' Supplemental Exhibit 109

 

April 29, 2022

**VIA ELECTRONIC MAIL**

| | |
|---|---|
| Martie Kutscher Clark<br>Gibson Dunn & Crutcher LLP<br>1881 Page Mill Road<br>Palo Alto, CA 94304-1211<br>mkutscherclark@gibsondunn.com | Russell H. Falconer<br>Gibson Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>rfalconer@gibsondunn.com |
| Deborah L. Stein<br>Gibson Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>dstein@gibsondunn.com | Colin B. Davis<br>Gibson Dunn & Crutcher LLP<br>3161 Michelson Drive,<br>Irvine, CA 92612-4412 USA<br>cdavis@gibsondunn.com |
| Laura C. Mumm<br>Gibson Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>lmumm@gibsondunn.com | Rosemarie Ring<br>Gibson Dunn & Crutcher LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105<br>rring@gibsondunn.com |

Amanda C. Machin
Gibson Dunn & Crutcher LLP
1050 Connecticut Avenue, N.D.,
Washington, DC 20036-5306
AMachin@gibsondunn.com

    Re: *In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
        Northern District of California Case No. 3:18-md-02843-VC

Dear Counsel:

    This letter and accompanying spreadsheet provide Plaintiffs' Response to certain entries on Facebook's Fourth Amended Categorical Privilege Log. Please note that the accompanying spreadsheet only includes entries for which Plaintiffs challenge Facebook's assertion of privilege.

    Facebook served its Fourth Amended Categorical Privilege Log (the "Log") on March 17, 2022, which contained 233,544 new entries (182,112 new entries not including lesser-included entries). On April 1, 2022, Facebook provided Plaintiffs with a list of in-house and outside counsel that appear on the Log. On April 11, 2022, Facebook provided full recipient information for a number of entries on the Log, as well as corrected ProdBegAttach information

for certain documents. On April 12, 2022, Facebook provided full recipient information for additional documents on the Log. On April 22, 2022, Facebook produced a response to certain of Plaintiffs' 1,738 challenges to Facebook's Third Amended Categorical Privilege Log, which de-designated and provided additional information for certain documents included on the Log. In addition, on April 22, 2022, Facebook produced in full certain documents that had been identified as redacted on the Log, revised the Log to list certain documents as withheld in full, produced for the first time 1,604 redacted documents that were originally listed on the Log, and removed the Attorney Work Product designation for three documents where Facebook had no assertion of attorney-client privilege. Plaintiffs note that Facebook has not produced those documents.[1] Please produce those documents by Friday, May 6, 2022.

On April 26, 2022, Facebook produced additional metadata (file names and email subjects) belonging to the documents on the Log.

Plaintiffs' Response to the Log includes fields updated by Plaintiffs, reflecting Plaintiffs' current understanding of the information communicated by Facebook on April 11, April 12, April 22, and April 26.[2] Plaintiffs have evaluated the entries on Facebook's Fourth Amended Categorical Privilege Log and the updated information provided by Facebook and determined that 87,094 entries are deficient, as indicated in Column T of Plaintiffs' Response.[3]

\*\*\*

Pursuant to Paragraph 3 of the Parties' Stipulation Regarding Facebook's Categorical Privilege Log, Plaintiffs identify the following categories of documents as prioritized challenges:

1.  **Documents sent to a distribution list for which Facebook has not provided the membership:** Plaintiffs challenge Facebook's assertion of attorney-client privilege over documents that were disclosed to email distribution lists whose members are unknown. Without the names and job descriptions of persons on these distribution lists, Plaintiffs cannot reasonably evaluate whether the withheld document was "within the sphere of corporate privilege[.]" *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007) ("[N]o privilege can be maintained for communications that were shared with a group of unidentified persons[.]"). Plaintiffs challenge 6,104 entries on this basis.

2.  **Documents disclosed to third parties:** Plaintiffs challenge Facebook's assertion of attorney-client privilege over documents that were disclosed to a third party, thereby "destroy[ing] the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1075 n.6 (N.D. Cal. 2002) ("If an e-mail with otherwise privilege attachments is sent to a third party, Chevron

---

[1] The Bates numbers for those documents are: FB-MDL-PRIV-00000002; FB-MDL-PRIV-00000004; and FB-MDL-PRIV-00000005.

[2] Further, this log omits the entries that have been resolved pursuant to Special Master Garrie's March 3, 2022 Order Regarding Plaintiffs' Motion to Compel Documents Facebook Designated as Privileged, Dkt. 872.

[3] Plaintiffs also challenge any lesser-included version of these 87,094 entries on the same basis as described in the attached spreadsheet.

loses the privilege with respect to that e-mail *and all of the attached e-mails*.") (emphasis in original). Plaintiffs challenge 6,180 entries on this basis.

3. **Documents distributed to over 100 recipients which were not sent by an attorney:** Plaintiffs challenge Facebook's assertion of attorney-client privilege over documents shared by non-attorneys to over 100 recipients. These documents were so widely distributed that the confidentiality required for attorney-client privilege to apply has been broken. *See, e.g.*, *In re Examination of Privilege Claims*, Nos. MC15-15-JPD, C12-2091-JCC, 2016 WL 11164791 (W.D. Wash. May 20, 2016) ("The Court previously ruled that the Project Raven PowerPoint decks were so broadly distributed to Accenture and Avanade employees who did not need to review the legal advice contained therein that the attorney-client privilege was waived."); *Stevens v. Corelogic, Inc.*, No. 14-cv-1158-BAS(JLB), 2016 WL 397936, *5 (S.D. Cal. Feb. 2, 2016) (finding that legal compliance policies were not privileged because they were distributed widely within the corporation). Further, the large number of nonlegal personnel to whom these documents were distributed indicate that they were not created for the primary purpose of securing or receiving legal advice. *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d at 1070. Plaintiffs challenge 2,128 entries on this basis.

4. **Documents described by Facebook Privilege Description #3 (relating to Graph API v2):** As evidenced by a number of documents, decisions regarding whitelisting app developers to allow for certain API permissions to continue under Graph API v2 were business-driven determinations. *See, e.g.*, FB-CA-MDL-01688681 (indicating that for some apps, friend_* permissions will need to be extended past the 6-month window provided by the release of Graph v2 due to contractual reasons or "just because they can't move quickly enough i.e. devices & in-car"); FB-CA-MDL-00202372 (indicating that setting criteria for valid extension/exemption cases for access to new whitelists in Graph v2 will be managed by non-legal actors Monica Walsh and Simon Cross). For documents where Facebook asserts attorney-client privilege, but where no attorneys appear to have been active participants in the communication (i.e., no attorney custodians, senders, or direct recipients), Facebook has not made a showing that the documents were made for the primary purpose of generating legal advice. *Chevron*, 241 F. Supp. at 1070. Additionally, given that this category relates to a business purpose, documents are not protected work product. *Phoenix Techs. Ltd.*, 195 F. Supp. 3d at 1105. Plaintiffs challenge 1,424 entries on this basis.

5. **Documents described by Facebook Privilege Description #4 (relating to integration partnerships):** Facebook's integration partners were provided with tremendous amounts of user data in order to facilitate the business partnership between those partners and Facebook. *See, e.g.*, FB-CA-MDL-00179356. For documents where Facebook asserts attorney-client privilege, but where no attorneys appear to have been active participants in the communication (i.e., no attorney custodians, senders, or direct recipients), Facebook has not made a showing that the documents were made for the primary purpose of generating legal advice. *Chevron*, 241 F. Supp. at 1070. Given that this category relates to a business purpose, documents are not protected work product. *Phoenix Techs. Ltd.*, 195 F. Supp. 3d at 1105. Plaintiffs challenge 2,541 entries on this basis.

6. **Documents described by Facebook Privilege Description #10 (regarding the App Developer Investigation):** As the Court has acknowledged, the App Developer Investigation had a dual business and legal purpose. ECF No. 736. Facebook's internal audits, including Project Ethan and Project Denzel, were done in the regular course of business, as evidenced by the creation of the DevOps Investigation team for the purpose of continuing internal auditing. For documents where Facebook asserts attorney-client privilege, but where no attorneys appear to have been active participants in the communication (i.e., no attorney custodians, senders, or direct recipients), Facebook has not made a showing that the documents were made for the primary purpose of generating legal advice. *Chevron*, 241 F. Supp. at 1070. Given that this category relates to a business purpose, documents are not protected work product. *Phoenix Techs. Ltd.*, 195 F. Supp. 3d at 1105. Plaintiffs challenge 1,192 entries on this basis.

7. **Documents described by Facebook Privilege Description #13 (relating to privacy and/or platform policies):** Plaintiffs challenge Facebook's assertion of attorney-client privilege and work product protection over documents in this category. Facebook's privacy and platform policies are central to the operation of Facebook's business, and policy updates were regularly done in the ordinary course of business. As these topics relate to business operations, not legal advice, the documents are improperly designated as attorney-client privileged. *Chevron*, 241 F. Supp. at 1070 ("[P]rivilege does not protect an attorney's business advice."). Also, since these documents relate to both a business and legal purpose, they are not protected work product. *See Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1105 (N.D. Cal. 2016) (holding that dual purpose documents were not protected work product because they served a business purpose independent of litigation). Further, as stated in Plaintiffs' April 7, 2022 letter, this category is overbroad because it contains at least three sub-parts, leaving Plaintiffs with insufficient detail to assess Facebook's claim of privilege. *See Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013) (explaining the categorical privilege log "must still describe the documents with sufficient detail so that the other party and court can assess the claim of privilege"). Plaintiffs challenge 41,025 entries on this basis.

8. **Documents described by Facebook Privilege Description #15 (regarding Facebook's internal investigation into Aleksandr Kogan, thisisyourdigitallife, Cambridge Analytica, and related entities accused of accessing user data):** Plaintiffs challenge Facebook's assertion of attorney-client privilege and work product protection over documents in this category. Facebook's investigation into Kogan, thisisyourdigitallife, Cambridge Analytica, and related entities, were performed for a business purposes, such as protecting users' data and ensuring users' trust. *See, e.g.*, Dkt. 736 (finding that Facebook's investigation into app developers was "to generate trust in its site—a classic business purpose."). Indeed, Facebook and CEO Mark Zuckerberg shared numerous updates with its users regarding Facebook's response to the Cambridge Analytica scandal as well as its follow up mitigation and remediation efforts.[4] Facebook has not made a showing that the documents were made for the primary purpose of generating legal advice. *Chevron*, 241 F. Supp. 2d at 1076. Given that this category relates to a

---

[4] *E.g.*, Paul Grewal, *Suspending Cambridge Analytica and SCL Group From Facebook*, META (Mar. 16, 2018), https://about.fb.com/news/2018/03/suspending-cambridge-analytica/; Mark Zuckerberg, Facebook (Mar. 21, 2018), https://www.facebook.com/zuck/posts/10104712037900071.

business purpose, documents are not protected work product. *Phoenix Techs. Ltd.*, 195 F. Supp. 3d at 1105. Plaintiffs challenge 8,291 entries on this basis.

9.　**Documents described by Facebook Privilege Description #11 (regarding Facebook's efforts to enforce its Platform Policy against app developers who potentially were in violation of the Platform Policy):** Plaintiffs challenge Facebook's assertion of attorney-client privilege and work product protection over documents in this category. Facebook provides no detail about the provision of the policy being enforced, the underlying facts gathered in support of the enforcement, or the third parties at issue. *See Franco-Gonzalez*, 2013 WL 8116823 at *6. Further, Facebook's enforcement efforts against third party developers were performed for business purposes, such as protecting users' data and securing Facebook's platform. Facebook has not made a showing that the documents were made for the primary purpose of generating legal advice. *Chevron*, 241 F. Supp. 2d at 1076. Given that these documents relate to a business purpose, Facebook has not shown that these documents are protected work product. *Phoenix Techs. Ltd.*, 195 F. Supp. 3d at 1105. Plaintiffs challenge 7,319 entries on this basis.

\*\*\*

Consistent with paragraph 5 of the Stipulation and [Proposed] Order Regarding Facebook's Categorical Privilege Log, Plaintiffs expect Facebook's response to Plaintiffs' Categorical Challenges by no later than May 6, 2022. Plaintiffs are available to meet and confer regarding these challenges at your convenience.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Sincerely,

Emma Wright　　　　　　　　　　　　　　　　　　　　　Joshua Samra
ewright@kellerrohrback.com　　　　　　　　　　　　　　jasmra@bfalaw.com