# Plaintiffs' Reply Exhibit 86

| | |
|---|---|
| **From:** | Mumm, Laura C. <LMumm@gibsondunn.com> |
| **Sent:** | Wednesday, January 12, 2022 7:52 PM |
| **To:** | Matt Melamed; Daniel Garrie; Gail Andler (judgeandler@icloud.com) |
| **Cc:** | Kutscher Clark, Martie; Lesley Weaver; Derek Loeser; Snyder, Orin; Falconer, Russ; Stein, Deborah L.; Cari Laufenberg; Chris Springer; Anne Davis; Buongiorno, Matt; Swanson, Alexander; David Ko |
| **Subject:** | RE: In re Facebook - Impasse Issues |
| **Attachments:** | Ex. A.pdf; Ex. B.pdf; Ex. C.pdf; FB_Spreadsheet re Potential Impasse Issues (FB Reply).xlsx |

Judge Andler and Special Master Garrie,

Thank you for the opportunity to respond to Plaintiffs' proposed impasse issues. As a preliminary matter, it is improper for Plaintiffs to seek declarations of impasse on issues that have never been discussed with Facebook or mediated. Under Local Rule 37-1(a), the parties are required to meet and confer before a discovery dispute can be briefed. There are obvious reasons for this requirement, which ensures that parties do not waste resources by briefing issues where there is no actual disagreement or merely a misunderstanding. The meet and confer process is "meant to encourage parties to (1) talk with each other, see each other's positions, try to find areas of compromise, and work out disputes amongst themselves, and (2) narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court." *Sayta v. Martin*, 2019 WL 1102989, at *2 (N.D. Cal. Mar. 8, 2019). The meet and confer requirement also ensures that a party cannot unilaterally force costly and unnecessary litigation on issues where no ripe dispute lies. Plaintiffs should not be permitted to end-run this requirement and the mediation process by raising issues for the first time in briefing. And Plaintiffs' suggestion that Facebook provide a check-the-box answer as to whether it will capitulate to each of Plaintiffs' demands cannot satisfy the actual discussion and process envisioned by Rule 37-1(a), which (again) is intended to narrow disputes and resolve misunderstandings. As detailed below, there is no pending dispute as to the items raised by Plaintiffs, and for many Facebook cannot even deduce what information Plaintiffs are seeking. Facebook separately provides these responses in the chart Plaintiffs circulated.

**Facebook's Sources of Custodial and Non-Custodial ESI.** Facebook does not understand the parties to be in dispute as to the particular data sources or RFPs cited. As detailed below, the majority of the data sources Plaintiffs raise are sources from which Facebook has already produced or agreed to produce; others are sources the parties have never discussed and from which Facebook does not know what Plaintiffs are seeking. Plaintiffs have not articulated what they need from these sources or even how further collections from these sources would be reasonable or proportionate. Facebook addresses each of these sources in turn below.

Custodial Collections. Plaintiffs say that Facebook has produced only emails and chats for its custodians. This is not correct. As Plaintiffs know, Facebook has searched, collected, reviewed and/or produced documents from more than a dozen custodial data sources, including Tasks, Wikis, and Quips (discussed below). Specifically, in June 2020, the parties' stipulated—and the Court ordered—that Facebook would disclose custodial document sources for its 81 custodians as part of 8 custodian "Groups" on a rolling basis beginning that month. *See* Dkt. 461 at 2. Facebook complied, disclosing the custodial document sources that would be collected—including, among other things, Quip, Wikis, Tasks, and Workplace Groups—on a bi-weekly basis over several months. *See* Exs. A and B. Facebook's productions include thousands of documents from these sources, including several that Plaintiffs have recently used as exhibits at depositions conducted by Plaintiffs, *e.g.*, Ex. 27 to Chang Deposition (Quip); Ex. 36 to Zarashaw Deposition (FB WorkPlace Group Page), and Facebook's productions are ongoing. As Facebook agreed to and is collecting/producing from these sources, there is no dispute here.

Non-Custodial Collections of Tasks, Wikis, Quip, and Workplace Groups: Plaintiffs say Facebook has not collected and reviewed documents from Tasks, Wikis, Quip, and Workplace Groups (as well as DropBox, Google Drive and G Suite, Zoho, SharePoint, and OneDrive, which Plaintiffs mention in an aside), which Plaintiffs characterize as being non-

1

custodial sources. These are *custodial* sources, and Facebook has collected, reviewed, and produced from them from each of its 81 custodians to the extent each custodian maintained relevant materials in those sources. Plaintiffs have received thousands of documents from these sources, including more than 25,000 documents with "[tasks]" in the subject line, and Plaintiffs have relied on documents from these sources in their depositions. Plaintiffs also have not identified any deficiencies in Facebook's productions in response to the RFPs cited that would be remedied by additional collections from these sources. There is no dispute here.

Further Non-Custodial Sources: Plaintiffs also identify a series of additional non-custodial sources they indicate Facebook should produce from, without identifying any specific deficiencies in Facebook's productions to be remedied. As a result, Facebook does not know what Plaintiffs believe to be in dispute, and Facebook is not aware of a dispute. As with Facebook's custodial collections, this issue was also the source of a prior agreement, with which Facebook complied fully. Specifically, while the parties were still in negotiations as to Facebook's custodians, Judge Corley ordered the parties to agree to an interim schedule by which non-custodial collections would be conducted for Plaintiffs' second set of RFPs. *See* Dkt. 404. The parties agreed to exactly which RFPs would be subject to non-custodial collections, the sources that would be searched, and a schedule for Facebook's productions, which Facebook complied with. *See* Ex. C. As to Plaintiffs' later RFPs, Judge Corley made clear that Plaintiffs do not get two bites at the apple for every RFP (Dec. 9, 2020 Hr'g Tr. at 7:9-14)—if the parties have agreed upon search terms for an RFP, Plaintiffs cannot also demand wide-ranging non-custodial collections. Rather, they must identify specific requests that require targeted collections from particular sources. Each time Plaintiffs have raised the issue of non-custodial collections–including in sessions with the mediators–Facebook has invited Plaintiffs to collaborate on a process of identifying specific RFPs that require non-custodial collections and agree upon an appropriate timeline and sources for those collections. Plaintiffs did not engage in those conversations, but instead continued to raise broad data sources they wanted searched without tethering them to specific targeted collections and RFPs that required them. Absent cooperation by Plaintiffs, Facebook has worked to meet its production obligations on an appropriate timeline on its own. Plaintiffs may not now declare impasse about a list of random data sources at the eleventh hour, weeks before the substantial completion deadline, and without having made any effort to cooperate with Facebook about the targeted collections they sought and without identifying any actual gaps in Facebook's productions, which are ongoing.

With regard to the specific "non-custodial" data sources raised, none are the subject of dispute:

- **Facebook's internal financial systems and departmental files.** Facebook does not understand what Plaintiffs are referring to in relation to Facebook's "financial systems and departmental files." Regardless, Facebook has not categorically refused to produce financial information: rather, Facebook has agreed to produce materials in response to Plaintiffs' RFPs 44 to 49, and 51 and is investigating whether materials responsive to Plaintiffs' RFPs 80 to 84 (which were issued in late October and the parties are still negotiating) exist. With regard to Plaintiffs' RFPs Nos. 14-17, Facebook has repeatedly informed Plaintiffs that documents responsive to these RFPs do not exist, as Facebook does not prepare valuations of user data in the manner described. Judge Corley granted Plaintiffs a 30(b)(6) on Facebook's monetization of user data so that Plaintiffs could identify what types of valuation Facebook does engage in and specifically request those materials. *See* Dec. 9, 2020 Hr'g Tr. at 7:13-17. Plaintiffs have not identified any specific analyses they seek as a result of that deposition. If they do, Facebook would be happy to engage in a productive conversation about them. There is presently no dispute here.

- **Launch Manager / Privatron**: The parties have never previously mediated or discussed Plaintiffs' request for materials from the Launch Manager or Privatron, and Facebook does not know what Plaintiffs are seeking. There is no pending dispute as to these sources.

- **The Capabilities Tool**. Plaintiffs indicate that they seek production from the Capabilities Tool in order to determine "what apps have access to what capabilities, when the capabilities were granted, and the identity of who approved or removed an app for the capability." Plaintiffs have already requested this information in their Interrogatories (particularly Rog Nos. 15 and 27), which Facebook has fully responded to over the course of more than 500 pages of responses. Plaintiffs have not issued any additional interrogatories seeking information regarding app access to capabilities, or otherwise indicated what discovery they need on this issue that would not be cumulative and duplicative of the Interrogatory responses Facebook already provided. If they do,

2

Facebook would be happy to engage in a productive conversation about them. There is presently no dispute here.

- **Centralized Research Repositories**. Plaintiffs have never previously raised these "Repositories" with Facebook and have not identified any deficiencies with Facebook's productions relating to its internal research related to user privacy and related settings, which are ongoing. We do not understand what Plaintiffs are seeking from these sources and suspect their complaint may be the result of confusion, rather than a disagreement between the parties. There is no pending dispute as to these sources.

- **Contracts Database and SalesForce**. Plaintiffs have also never raised these databases with Facebook. Facebook made an appropriately targeted collection of potentially relevant contracts with third parties and produced them in January 2020 and Plaintiffs have not identified any deficiencies with this production. In addition, Facebook has produced tens of thousands of documents and more than 500 pages of Interrogatory responses relating to its relationships with third parties, and Plaintiffs have not identified any deficiencies in those productions. There is no dispute as to the scope of Facebook's productions related to its third-party relationships. As a result we do not know what Plaintiffs are even seeking from these sources and do not understand there to be a dispute.

Protiviti and Ongoing Reporting to the FTC. Plaintiffs have never raised the issue of Protiviti's audit to Facebook, although they appear to have already received a version by submitting a FOIA request to the FTC. Rather, they subpoenaed Protiviti directly, and Protiviti objected to the subpoena. It appears Plaintiffs' dispute is with Protiviti, not Facebook. Regardless, Plaintiffs have not actually requested these materials from Facebook. Even if they had, the parties previously reached an agreement regarding which materials Facebook would reproduce from government actions, and they previously litigated to Judge Corley the scope of what additional materials would be provided. We do not presently understand there to be a dispute given that Plaintiffs have not raised this issue with Facebook in connection with any of Plaintiffs' RFPs, and we have difficulty understanding how there could be a dispute given that the scope of Facebook's productions of materials provided to the government was resolved long ago.

Eugene Sperling and TSD Communications. These issues concern new RFPs that Plaintiffs served recently, after the parties had finalized their custodian and search strings, and that remain under negotiation. As we understand, even though the Special Master and Judge Corley have already weighed in on what materials would be produced from Mr. Zuckerberg and Ms. Sandberg, Plaintiffs have served new RFPs that seek all communications with Mr. Sperling and TSD Communications (and advisor and PR firm with which Ms. Sandberg interacted) relating to the four theories of liability in this case in order to justify demanding additional productions of Sheryl Sandberg's custodial documents. These RFPs are impermissibly broad, simply seeking documents relevant to the "four theories" here without any specificity, and seek to undermine the Special Master's and Judge Corley's prior rulings. *See* Fed. R. Civ. P. 34 (requiring a party to detail with "reasonable particularity" the discovery sought); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) ("All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." (internal quotations omitted)); *Calleros v. Rural Metro of San Diego, Inc.*, 2018 WL 1744599, at *7 (S.D. Cal. Apr. 11, 2018) (denying discovery request seeking " all documents related to the litigation" for failure to meet the reasonable particularity standard under Rule 34). The parties have separately litigated the issue of Ms. Sandberg's custodial documents and Facebook, the parties' proposed protocols regarding collection of Ms. Sandberg's materials are pending before the Special Master, and Facebook will comply with any order issued by the Special Master on this issue. Plaintiffs should not be permitted to relitigate this issue.

Respectfully submitted,
Laura


**Laura C. Mumm**

GIBSON DUNN

3

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2404 • Fax +1 212.817.9504
LMumm@gibsondunn.com • www.gibsondunn.com

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Saturday, January 8, 2022 2:13 AM
**To:** Daniel Garrie <DGarrie@jamsadr.com>; Mumm, Laura C. <LMumm@gibsondunn.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>
**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** RE: In re Facebook - Impasse Issues

**[WARNING: External Email]**

Counsel:

At the request of the discovery mediators, we're clarifying our request concerning the issues below.

We have attached a spreadsheet identifying: (1) the topic Plaintiffs seek production about or the non-custodial ESI source Plaintiffs seek production from and (2) the RFPs to which we believe the topic or non-custodial ESI document sources are responsive. The spreadsheet also contains a third column, which asks whether Facebook will agree to produce documents responsive to the topic or search the source for responsive documents.

Please indicate "Yes" or "No" in the third column and return your answers by Wednesday, January 12. Neither further explanation nor any discussion of proposed methodology or timing is required.

Thank you,
Matt

---

**From:** Daniel Garrie <DGarrie@jamsadr.com>
**Sent:** Wednesday, January 5, 2022 7:58 AM
**To:** Mumm, Laura C. <LMumm@gibsondunn.com>; Matthew Melamed <mmelamed@bfalaw.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>; Daniel Garrie <DGarrie@jamsadr.com>
**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** RE: In re Facebook - Impasse Issues

Dear Ms. Mumm,
I spoke with Judge Andler and we request that for each issue that you do not believe to be at impasse and therefore wish to mediate, please identify the specific issue with reference to the particular discovery request and response, quoted verbatim, and set forth a proposal for compromise under mediation confidentiality.

Please provide this no later than 12 pm PST Monday.

You may provide this confidentially ex parte.

Judge Gail Andler (Ret.) and Daniel Garrie

---

**From:** Mumm, Laura C. <LMumm@gibsondunn.com>
**Sent:** Wednesday, January 5, 2022 10:06 AM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Daniel Garrie <DGarrie@jamsadr.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>
**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** RE: In re Facebook - Impasse Issues

Special Master Garrie,

Facebook would appreciate an opportunity to either mediate these issues or respond to Mr. Melamed's email before the mediators consider whether there is an impasse, as there are several factual inaccuracies below that are significant to whether these issues present ripe disputes.

Regards,
Laura

**Laura C. Mumm**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2404 • Fax +1 212.817.9504
LMumm@gibsondunn.com • www.gibsondunn.com

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Tuesday, January 4, 2022 9:04 PM
**To:** Daniel Garrie <DGarrie@jamsadr.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>
**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Mumm, Laura C. <LMumm@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** RE: In re Facebook - Impasse Issues

**[WARNING: External Email]**

Dear Judge Andler and Special Master Garrie,

This submission identifies the discovery requests and additional context relating to the issues not at impasse, per the Discovery Mediators' decision on December 23. In order to make this submission easier to read, Plaintiffs describe the relevant discovery requests below and attach the full text of the discovery requests to this email.

1. **Certain Non-Custodial ESI**

Facebook maintains numerous sources of non-custodial ESI containing highly probative information relevant to the claims and defenses in this case, and not duplicative of documents produced from custodial files. Plaintiffs explain below the RFPs seeking the information from each source and the basis for stating that the source contains relevant information. Facebook has refused to search for and produce relevant information collected from any of these sources.

A. **Source: Facebook's internal financial systems and departmental files**.

Discovery Requests:

- Plaintiffs' RFP Nos. 17, 44-51, and 80-81 relate to the value of users' data, the revenue earned from users' interactions on Facebook, the value received by third parties that had access to users' data, the costs associated with granting third parties access to users' data, and the financial impact of changes to Facebook's data policies.

- Plaintiffs' RFPs 14-16 and 82-84, which specifically relate to the value to Facebook of the Named Plaintiffs' content and information.

B. **Sources: LaMa (Launch Manager)** is "the one platform used by all teams for Privacy" and the location where "Policy Decisions" related to privacy review "are documented . . . and tied to regulations and commitments." FB-CA-MDL-01956383; FB-CA-MDL-01956620 at page 23. **Privatron (or Launch Cal)** is where "documentation of the Privacy XFN's decisions was historically stored." FB-CA-MDL-01794751 at 4754.

Discovery Requests:

- RFP Nos. 12, 24, 25, and 26, which concern data partners' access to users' audience-restricted content and information. RFPs 27 and 75, which concern the personally identifiable information Facebook made available to third parties.

- RFPs 28-32, 52-56, 63, 67, and 70, which concern Facebook's privacy decisions and monitoring/enforcement against third parties relating to their access to users' audience-restricted content and information.

- RFPs 35 and 38, which concern privacy settings and controls made available to users or Facebook employees.

- RFPs 36 and 57-59, which concern studies or testing of Facebook's privacy settings and controls.

- RFPs 53 and 79, which concern Facebook's Privacy Programs.

- RFPs 60-61, which concern users' privacy setting selection process.

- RFP 64, which concerns the training materials or guidelines provided to third parties regarding querying users' audience-restricted content and information.

**C. Source: Tasks** is Facebook's internal tool used to track projects across a variety of issue areas. For example, Facebook used Tasks to track "[i]ndividual privacy decisions," decisions to "[m]anually approve All Mutual Friends APIs for key partners ahead of general launch," enable apps to migrate to Graph 2.0 while "still access[ing] the full friendlist" via whitelist, document capabilities via the Capability Tool, temporarily grant the app Tinder access to all friends APIs, "[c]larify policies around platform scraping for politics," and cease "allowing random third parties to exploit all users via over-broad application whitelisting." FB-CA-MDL-01794751 at 4754, FB-CA-MDL-00227585, FB-CA-MDL-00227597, FB-CA-MDL-00227857, FB-CA-MDL-00231009, FB-CA-MDL-00266765, FB-CA-MDL-01537735. According to Eugene Zarakhovsky's testimony, Tasks is searchable.

Discovery Requests:

- Tasks are likely, if not certain, to include documents responsive to virtually all of Plaintiffs' RFPs.

**D. Source**: **Wikis**. Facebook makes ubiquitous use of internal Wikis. For example, Other documents reference a "Developer Operations Wiki page" that "provides specific links to the various DevOps pillars (i.e., teams) including Review, Enforcement, Investigations, Experience, Education, and Launch & Readiness"; a DevOps FAQ Wiki Page; and a DevOps Enforcement Wiki page that provides "a general overview of the team and its goals" as well as "links to additional pages with more information about DevOps Enforcement." FB-CA-MDL-01792881 at 2884.

Discovery Requests:

- RFPs 25 and 30, which relate to agreements and partnerships with third parties to which Facebook transmitted user content and information.

- RFP 27, which relates to the forms and formats in which Facebook transmitted information concerning users' interactions with videos.

- RFPs 28-30, 52, 56, and 63, which relate to Facebook's internal policies regarding third party compliance with their contractual obligations to Facebook and the controls Facebook established to detect misuse of user content and information.

- RFPs 57 and 59, which relate to analyses of users' expectations of privacy.

- RFPs 72-73 and 77, which relate to the ways in which Facebook enabled users to upload and engage with videos.

**E. Source: Quip** is document-sharing platform with search functionality. Internal documents reveal that Facebook made extensive use of Quip to create relevant shared documents. For example, employees used Quip to a list of partner's apps that need to be whitelisted for Graph v1.0 even after migration to Graph v2.0; to identify capabilities and documenting what each capability does; sharing a proposal to limit clear abuse of the Post Search API; to draft "reactive messaging for the UserID changes" Facebook is "making to Pages API"; to identify "Hard Questions – Cambridge" including "what we did when we found out about such a grave violation of terms: did we take legal action? Did we alert the ppl whose info was misused?"; and to develop a communications plan regarding Facebook's suspension of Cambridge Analytica. FB-CA-MDL-00227740 at 7741, FB-CA-MDL-00227857, FB-CA-MDL-00231045, FB-CA-MDL-00270397 at 0400, FB-CA-MDL-00277470, FB-CA-MDL-01140562.

Discovery Requests:

- Quip is likely, if not certain, to include documents responsive to virtually all of Plaintiffs' RFPs.

**F. Sources:** The **Capabilities Tool** listed what apps have access to what capabilities, when the capabilities were granted, and the identity of who approved or removed an app for the capability. (Capabilities are "features of Platform that are available only to whitelisted apps." Exhibit 32 at 1739.) The **Whitelist Log** was the precursor to the Capabilities Tool.

Discovery Requests:

- RFPs 24-26 and 68, which relate to third party access to user content and information that was not available by default.

**G. Source:** Facebook maintained one or more **centralized research repositories**. Internal documents identify SRT, which included a "Research Hub" where "Research Review," "Publication Review," and "Collaboration Review." It stands to reason that Facebook used similar or precursor repositories where it maintained the research it conducted.

Discovery Requests:

- RFPs 56-59 and 62, which relate to Facebook's research on user privacy and relevant policies.

**H. Source:** The **contracts database** containing agreements with third parties, including data brokers, partners, and advertisers. FB-CA-MDL-00155844. Facebook has produced limited contracts, but does not appear to have produced contracts with all business partners and developers related to whitelisting, capabilities, or other where access to user data was governed by contract.

Discovery Requests:

- RFPs 11-16, 25, 27, and 34, which concern agreements with third parties to which Facebook granted access to users' audience restricted content and information.

**I. Source:** Facebook maintained records of its partnerships in **Salesforce.** Salesforce is "the canonical lit of managed accounts, companies, and their apps"; because it was important for Facebook's "collective understanding of which companies/apps/developers have access to what, why, and who in FB owns that risk," it was important to ensure that such third parties were "listed in Salesforce against an Account, with at least one person from FB listed as a point of contact." FB-CA-MDL-00199729 at 9730, FB-CA-MDL-01128793 at 8793.

Discovery Requests:

- RFPs 24, 25, and 68, which relate to third party access to user content and information that in ways that was not generally available to all third parties.
- RFPs 47-49, which relate to the value of data received from or provided to third party partners.

**J. Sources:** Facebook employees made extensive use of **internal Facebook and Workplace groups** to communicate about probative information. Several documents that appear to contain information from these sources have been produced because a custodian had selected to sync new group posts with their email or because they were included as an attachment to another communication. These limited documents identify a Platform Whitelist Approvers group to which employees posted requests that developers be whitelisted for certain capabilities; a Developer Relations group discussion regarding the need for a third party to have a contract before granting it the capability to use "private APIs"; a Platform Integrity Questions and Feedback (POPPI) group, the purpose of which was to provide a single place to discuss integrity issues such as violations of platform policies; an Open Graph Feedback group where participants discussed implementation of video services; and a Platform XFN group where participants discussed the need for users to be able to turn platform

off because, according to Zarakhovsky, the only way to ensure that a user's information was not being shared without their permission was to have no friends or turn off platform. Dep. Exs. 33, 35, 36, 38, 46.

Discovery Requests:

>Internal Facebook and Workplace groups were used to address a wide range of information, including discussions that are likely responsive to nearly all of Plaintiffs RFPs.

*Note: Though substantial, this is not a complete list of non-custodial sources that contain probative information. Others include DropBox, Google Drive and G Suite, Zoho, SharePoint, and OneDrive. Further, this submission does not focus on or include non-custodial sources of ESI containing Named Plaintiffs' data and ADI-related documents, which are the subjects of recent orders issued by the Special Master.*

Plaintiffs' Proposal: To the extent the Special Master requires more information to ask that Facebook search for and produce documents from these sources of non-custodial ESI, Plaintiffs request that they be permitted to brief the issues on an expedited basis, with all briefing to be completed by January 21.

2. **Scope of Custodial Production**

Facebook has also limited its production of custodial production to custodial emails and chats identified through the use of search strings. With the limited exception of documents that appear to have been collected and produced in earlier actions, and which have been reproduced here, Facebook has not produced any other custodial documents. While Facebook represented that it conducted custodial interviews, it has not informed Plaintiffs whether any other sources of documents, such as documents stored on directories or local drives, text or other messaging services, communications through Facebook Messenger or Workplace Messenger, or other potentially relevant sources of custodial documents exist for the individual custodians. Instead, for each custodial group, Facebook identified "potential sources of relevant ESI." As with non-custodial ESI, Facebook's discovery obligation with respect to custodial ESI is not limited to the production of documents identified through the search of email and chat files.

Discovery Requests:

- Custodial production is likely to contain documents relevant to all of Plaintiffs' discovery requests to which custodial documents are responsive.

Plaintiffs' Proposal: To the extent the Special Master requires more information to ask that Facebook identify to Plaintiffs, search for, and produce documents from additional sources of custodial documents, Plaintiffs request that they be permitted to brief the issues on an expedited basis, with all briefing to be completed by January 28.

3. **Protiviti & Ongoing Reporting to the FTC**

In or around late June 2021, third party Protiviti produced a privacy audit of Facebook pursuant to the FTC's 2012 Consent Order, as modified in 2020. In response to Plaintiffs' FOIA request, the FTC produced the report, but it is almost entirely redacted. Among the few unredacted lines, Protiviti noted that "gaps and weaknesses" remain in Facebook's response to and compliance with the FTC's 2012 Consent Order. Plaintiffs have sought the report and underlying documents from Protiviti, which stated it would consider producing them only if Facebook and the FTC approved their production. Plaintiffs also seek the production of documents provided to the FTC, including under section VII, Mandated Privacy Program of the Consent Order as modified in 2019, that have not yet been produced to Plaintiffs.

Discovery Requests:

- RFPs 6, 43, and 67, which seek reports and correspondence from any formal or informal investigation by governmental regulators over third parties access to users' content and information, or arising from Facebook's settlement agreement with the FTC announced on July 24, 2019.

- RFPs 31, 52, 53, 55, 56, 59, and 67, which seek documents relating to monitoring, audits, or inquiries about data misuse.

Plaintiffs' Proposal: To the extent the Special Master requires more information to ask that Facebook produce the unredacted Protiviti privacy audit, underlying documents, and any additional documents provided to the FTC pursuant to the Consent Order, Plaintiffs request that they be permitted to brief the issues on an expedited basis, with all briefing to be completed by February 4.

**4. Eugene Sperling**

Plaintiffs seek the production of communications with Eugene Sperling. On March 22, 2018, Sandberg and Sperling exchanged five emails about Sandberg's first public interview about the Cambridge Analytica scandal. In response to Sperling's concern that it appeared she was "dodging responsibility" by focusing on "'bad actors,'" Sandberg wrote: "The single biggest issue we face – and I really need everyone to know this – is that there were a MILLION developers with access to the data. We are going to have many, many, many more moments like this in the next months and year." FB-CA-MDL-01184406.

Discovery Requests:
- RFP 88, which seeks communications with Sperling to the extent they concern matters or conduct relevant to the four categories of misconduct identified by Judge Chhabria's order on Facebook's motion to dismiss.

*Note: Plaintiffs served a subpoena on Sperling for such communications, but has temporarily held off on seeking compliance with the subpoena in order to seek the responsive documents from Facebook.*

Plaintiffs' Proposal: To the extent the Special Master requires more information to ask that Facebook produce relevant communications with Eugene Sperling, Plaintiffs request that they be permitted to brief the issues on an expedited basis, with all briefing to be completed by February 11.

**5. TSD Communications**

Two employees of TSD Communications, David Dreyer and Eric London, were copied on the email from Eugene Sperling discussed above. In addition, Facebook appears to have retained TSD Communications for "strategic communications advice to Facebook" regarding "messaging, training, media response, and strategic planning around issues relating to Facebook policy issues." FB-CA-MDL-01818272.

Discovery Requests:
- RFP 86, which seeks communications with TSD Communications to the extent they concern matters or conduct relevant to the four categories of misconduct identified by Judge Chhabria's order on Facebook's motion to dismiss.

*Note: Plaintiffs served a subpoena on TSD for responsive documents, but has held off on moving to compel production in order to seek the documents from Facebook.*

<u>Plaintiffs' Proposal</u>: To the extent the Special Master requires more information to ask that Facebook produce relevant communications with TSD Communications, Plaintiffs request that they be permitted to brief the issues on an expedited basis, with all briefing to be completed by February 11.

Respectfully,
Matt

Matthew S. Melamed
Bleichmar Fonti & Auld LLP
555 12th Street, Suite 1600
Oakland, CA 94607
(415) 445-4003
www.bfalaw.com

---

**From:** Daniel Garrie <DGarrie@jamsadr.com>
**Sent:** Thursday, December 23, 2021 4:20 PM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>
**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Mumm, Laura C. <LMumm@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** Re: In re Facebook - Impasse Issues

Counsel,

We have reviewed your submission and we declare impasse on Cambridge Analytica and Secret Sauce and deny the others. For the items at impasse the Plaintiffs are the moving party and the timing is to be reduced by two days for each phase.

For the items not at impasse, the Plaintiffs are to identify a particular discovery request for which documents were not provided or which was not fully answered, as we have started earlier.

Please confirm receipt and provide the revised schedule.


Daniel Garrie and Judge Andler



Get Outlook for Android

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Thursday, December 23, 2021 2:54:31 PM
**To:** Daniel Garrie <DGarrie@jamsadr.com>; Gail Andler (judgeandler@icloud.com) <judgeandler@icloud.com>

**Cc:** Kutscher Clark, Martie <MKutscherClark@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Snyder, Orin <OSnyder@gibsondunn.com>; Falconer, Russ <RFalconer@gibsondunn.com>; Stein, Deborah L. <DStein@gibsondunn.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; Chris Springer <cspringer@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>; Mumm, Laura C. <LMumm@gibsondunn.com>; Swanson, Alexander <ASwanson@gibsondunn.com>; David Ko <dko@kellerrohrback.com>
**Subject:** In re Facebook - Impasse Issues

Dear Special Master Garrie and Judge Andler,

Plaintiffs believe the parties are at impasse regarding the issues listed below. We respectfully request that impasse be declared for each and that expedited and staggered briefing schedules be established that commence shortly after end of the holiday détente. Please note that this is not a complete list of issues where Plaintiffs believe the parties are at impasse.

1. **Certain Non-Custodial ESI**
   - Plaintiffs seek production of relevant documents and information from DropBox, Google Drive, Quip, Internal Tasks, Privatron, FB Workplace Groups, FB Wikis, Zoho, G Suite, Sharepoint, Hive, LaMa, OneDrive, research shared drive, contracts database, Salesforce database, and finance database.
   - *When Plaintiffs addressed Tasks and Quip during Mr. Zarakhovsky's deposition, Special Master Garrie stated that we should raise them in this manner.*
2. **Scope of Custodial Production Sources**
   - Plaintiffs seek production of custodial documents beyond the current limitations. Current production is limited to custodial email and chats, which are the only sources of ESI against which the parties agreed to apply search terms. Among other sources, Plaintiffs seek the production of relevant texts, documents from local or shared directories, hard copy documents, and other sources of relevant custodial documents.
3. **Protiviti & subsequent reporting to FTC**
   - Plaintiffs seek production of the privacy audit conducted by Protiviti in or around late June 2021, which noted "gaps and weaknesses" remain in Facebook's response to and compliance with of the FTC's 2012 Consent Order as modified in 2020, as well as any other reports or assessments conducted by Protiviti. Thought the FTC produced the audit to Plaintiffs in response to their FOIA request, the produced version is redacted in near entirety.
   - Plaintiffs also seek the production of documents provided to the FTC, including under section VII, Mandated Privacy Program of the Consent Order as modified, that have not yet been produced to Plaintiffs.
4. **TSD Communications**
   - Plaintiffs seek the production of all documents relating to and communications with TSD Communications concerning any matters or conduct related to the four categories of misconduct.
5. **Eugene Sperling**
   - Plaintiffs seek the production of communications with Eugene Sperling concerning any matters or conduct related to the four categories of misconduct.
6. **Case studies and presentations relating to work by Facebook involving Cambridge Analytica**
   - Plaintiffs seek all case studies and presentations (whether complete or incomplete, including drafts of part or all of the case studies or presentations) that address in any manner work by Facebook on behalf of the Trump campaign or any PAC, including MANO, active in the 2016 Presidential Campaign, in which during such work Facebook interacted in any way with Cambridge Analytica, or any groups, organizations, shell companies, or other entities affiliated with Cambridge Analytica.
7. **All versions of the Secret Sauce memo**

- Plaintiffs seek production of all iterations of the "Secret Sauce" memorandum. Facebook produced one version, which was incomplete and noted that it was a living document that would be updated and adapted over time.

Thank you,
Matt


Matthew S. Melamed
Bleichmar Fonti & Auld LLP
555 12th Street, Suite 1600
Oakland, CA 94607
(415) 445-4003
www.bfalaw.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.