Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC-JSC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT DECLARATION OF DEREK W. LOESER AND LESLEY E. WEAVER IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND EXHIBITS 1 TO 55 THERETO**<br><br>Judge: Hon. Vince Chhabra<br>Hon. Jacqueline Scott Corley<br>Special Master Daniel Garrie<br>Courtroom: 4, 17th Floor<br>Hearing Date: May 5, 2022<br>Hearing Time: 10:00 a.m. |

I, Derek W. Loeser, and I, Lesley E. Weaver, declare and state as follows:

1.      Derek W. Loeser is a partner at the law firm of Keller Rohrback L.L.P. and Lesley E. Weaver is a partner at the law firm of Bleichmar Fonti & Auld LLP. We are Co-Lead Counsel for Plaintiffs in the above-captioned matter.

2.      We have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

3.      This declaration submits testimony and evidence to support the costs and attorney fees sought in the present motion. Where testimony or evidence is submitted by only one of the above declarants, this declaration so states.

4.      This declaration is structured as follows. It first discusses certain substantive facts underlying Plaintiffs' motion. *See infra* § I. It then discusses the attorneys and legal professionals for whom fees are sought.  *See infra* § II. Next, it substantiates the attorneys' fees and costs claimed for each of the categories of misconduct discussed in the accompanying motion for sanctions. *See infra* §§ III–VII. It then authenticates the attached exhibits. *See infra* § VIII.

5.      Should the Court require it, co-lead counsel are ready to submit contemporary time records for *in camera* inspection to further substantiate the fees sought.

## I.      SUBSTANTIVE TESTIMONY

6.      Since Plaintiffs first served the request for production seeking ADI documents in November 2019, they have met and conferred with Facebook concerning the issue at least 11 times; filed a motion to compel in February 2021 and additional briefs related to the motion in July and August 2021; engaged in extended mediation sessions led by the discovery mediators in the attempt to resolve the dispute; and argued the issue before Judge Corley, Special Master Garrie, and Judge Corley again. Between them, Judge Corley and Special Master Garrie have issued six orders on the production of ADI documents.

7.      Since Plaintiffs served the requests for production seeking the Named Plaintiffs' data in November 2019, they have met and conferred with Facebook concerning the issue at least ten times, filed a motion to compel in September 2020, engaged in extended mediation sessions

led by the discovery mediators in the attempt resolve the dispute, filed another motion to compel in October 2021, and argued the issue before Judge Corley in October 2020 and January 2022. Between them, Judge Corley and Special Master Garrie have issued more than a dozen orders related to the Named Plaintiffs' data, starting with Judge Corley's October 2020 order defining the scope of discoverable data, and the Special Master has recently conducted three half- or full-day hearings with Facebook employees to determine where Facebook stores the Named Plaintiffs' data. The Special Master's inquiry remains ongoing. As of the date of this filing, Facebook has not produced any documents reflecting the Named Plaintiffs' data that were not already accessible to them before they filed suit.

8.  In March 2020, Plaintiffs asked whether Facebook could produce developer manuals or other documents describing Facebook's data architecture, to allow Plaintiffs to understand the content and organization of locations that contained information about the Named Plaintiffs and other class members. On more than one occasion, Facebook's response, through Gibson Dunn associates, was to tell Plaintiffs to "Google" such information. Plaintiffs explained that the existence of a handful of publicly available documents did not relieve Facebook of its obligation to produce documents in its own possession, particularly when counsel was pointing to 2020 documents that did not sufficiently describe Facebook's architecture during the full Class Period. Counsel disregarded these arguments.

9.  Beginning in early January 2022, the Special Master issued further orders and held a series of hearings to get more information about where and how Facebook stored data about the Named Plaintiffs. First, he ordered Mr. Pope to appear at a hearing to answer questions. Order ¶ 23, Jan. 6, 2022, ECF No. 793. In the hearing, Mr. Pope admitted that he did not have personal knowledge of most of the assertions in his declaration.

10.  The first hearing the Special Master held after the February 10, 2022 case management conference revealed that the earlier Pope Declaration had little bearing on the questions the Special Master had asked Facebook to provide. It identified 149 data sources that, as it turns out, have little relation to what Plaintiffs seek. After that first hearing, Special Master

Garrie issued a series of questions to Facebook, set a hearing date for the next month, and invited Plaintiffs to submit questions. Within two weeks of Special Master Garrie's order, one of Facebook's counsel provided a nine-page letter that provided more and clearer information than it had provided before. Counsel's letter revealed identifiers, data sources and information never before provided to the Plaintiffs.

## II.    RELEVANT ATTORNEYS AND LEGAL PROFESSIONALS

11.    This litigation has required the work of a large team of attorneys, professionals and staff from both Keller Rohrback and Bleichmar Fonti & Auld, who collectively have billed time in the millions of dollars. Facebook's and Gibson Dunn's conduct has caused extensive delay and the needless increase of the time and expense necessary to conduct discovery in this case. If instead of obstructing discovery and dragging out discovery disputes, Facebook and Gibson Dunn had acted appropriately, the litigation to date would have taken far less time, and required far less involvement of the Court, Special Master and discovery mediators.

12.    Plaintiffs are not currently seeking to recover all of the fees and costs that Plaintiffs incurred as a result of Facebook and Gibson Dunn's discovery abuse. The pages required to describe all of these misadventures would be inordinate. Instead, Plaintiffs have selected the most egregious discovery abuses, involving the most important issues. Even as to these issues, Plaintiffs are not seeking to recover all of the time incurred with regard to the issue from the outset of the case. Instead, Plaintiffs focus on particular time period in which the conduct was the most damaging to Plaintiffs' ability to progress the litigation. For this time, Plaintiffs seek reimbursement of **$647,907.00** and reimbursement of associated costs of **$196,288.72** for a total of **$854,195.72** as set forth in greater detail below. These totals do not include fees incurred on this motion, which Plaintiffs will include in a subsequent filing.

### A.    Keller Rohrback

13.    This section of the declaration is submitted by Derek W. Loeser.

14.    The Keller Rohrback attorneys and legal professionals for whose work compensation is sought are:

    A.    Derek W. Loeser, a partner with over 27 years of professional experience whose current hourly rate is $1,100;

    B.    Cari Campen Laufenberg, a partner with over 18 years of professional experience whose current hourly rate is $1,010;

    C.    David Ko, a partner with over 15 years of professional experience whose currently hourly rate is $815;

    D.    Benjamin Gould, a partner with over 15 years of professional experience whose current hourly rate is $815;

    E.    Christopher Springer, an associate attorney with over 7 years of professional experience whose current hourly rate is $650;

    F.    Adele A. Daniel, an associate attorney with approximately five years of professional experience whose current hourly rate is $585;

    G.    Emma Wright, an associate attorney with approximately two years of professional experience whose current hourly rate is $550;

    H.    Katja C. Tunkkari, a paralegal with over 3 years of professional experience whose current hourly rate is $300.

**B.**    **Bleichmar Fonti & Auld**

15.    This section of the declaration is submitted by Lesley E. Weaver.

16.    The BFA attorneys and legal professionals for whose work compensation is sought are:

    A.    Lesley E. Weaver, a partner at BFA with more than 25 years of professional experience whose currently hourly rate is $1,050;

    B.    Anne Davis, a partner at BFA with more than 13 years of professional experience whose current hourly rate is $800;

    C.    Matthew Melamed, a partner at BFA with more than 13 years of professional experience whose current hourly rate is $800;

D.      Matthew Montgomery, formerly Of Counsel at BFA with more than 27 years of experience whose hourly rate is $875;

E.      Angelica Ornelas, an associate at BFA with more than 10 years of professional experience whose current hourly rate is $690;

F.      Joshua Samra, an associate at BFA with more than 6 years of professional experience whose current hourly rate is $605;

G.      Janelle Moody, a projects associate at BFA with more than 25 years of professional experience whose current hourly rate is $475;

H.      Katherine Sullivan, a projects associate at BFA with more than 20 years of professional experience whose current hourly rate is $475;

I.      Anthony Bertero, a staff associate at BFA with more than 10 years of professional experience whose current hourly rate is $450;

J.      Karyn Erickson, a staff associate at BFA with more than 10 years of professional experience whose current hourly rate is $325;

### III.     FEES CAUSED BY ADI-RELATED MISCONDUCT

17.     Plaintiffs litigated issues related to the ADI from the first discovery request in November 2019 through the present. Substantial time and costs have been expended on that effort. For purposes of this motion, Plaintiffs seek reimbursement for the work performed between April 7, 2021 to January 31, 2022.

| Total Hours | Total Fees |
|-------------|------------|
| 315.8       | $240,067.00 |

**A.      April 7, 2021 to September 8, 2021**

**1.      Fees: Keller Rohrback timekeepers**

18.     Derek W. Loeser worked 7.5 hours on the ADI dispute during this period, including reviewing and revising briefs, submissions, and communications; participating in discovery mediation; reviewing orders or communications from the court or mediators;

reviewing submissions or communications from Facebook; and conferring with colleagues regarding various issues arising from the ADI matter.

19.     Cari Campen Laufenberg worked 13.8 hours on the ADI dispute during this period, including reviewing, drafting, and revising briefs, submissions, and communications; participating in discovery mediation; reviewing orders or communications from the court or mediators; reviewing submissions or communications from Facebook; and conferring with colleagues regarding various issues arising from the ADI matter.

20.     David Ko worked 18.0 hours on the ADI dispute during this period, including drafting, reviewing, and revising briefs, submissions, and communications; participating in discovery mediation; reviewing orders or communications from the court or mediators; performing legal research; reviewing submissions or communications from Facebook; and conferring with colleagues regarding various issues arising from the ADI matter.

21.     Benjamin Gould worked 13.3 hours on the ADI dispute during this period, including outlining, drafting, and revising briefs and submissions; reviewing submissions from Facebook; performing legal research; and conferring with colleagues regarding various issues arising from the ADI matter.

**2.  Fees: Bleichmar Fonti & Auld timekeepers**

22.     Lesley E. Weaver worked 14.0 hours on the ADI dispute during this period, including drafting and revising communications to mediators and Facebook; participating in discovery mediation; drafting and revising briefs and submissions; reviewing and analyzing submissions from Facebook; reviewing and analyzing court order; and conferring with colleagues regarding various issues arising from the ADI matter.

23.     Anne K. Davis worked 7.5 hours on the ADI dispute during this period, including communicating with the discovery mediators, preparing for and participating in discovery mediation; reviewing and analyzing communications from and submissions by Facebook; drafting and revising briefs, submissions, and communications; and conferring with colleagues regarding various issues arising from the ADI matter.

24.     Matthew Melamed worked 22.8 hours on the ADI dispute during this period, including preparing for and participating in discovery mediation, communicating with the discovery mediators and Facebook, drafting briefs and submissions, analyzing court orders, and conferring with colleagues regarding various issues arising from the ADI matter.

25.     Joshua Samra worked 8.2 hours on the ADI dispute during this period, including reviewing and analyzing Facebook submissions and communications, drafting submissions and communications, preparing for and participating in discovery mediation, reviewing relevant public documents and documents produced in discovery, and conferring with colleagues regarding various issues arising from the ADI matter.

26.     Janelle Moody worked 10.5 hours on the ADI dispute during this period, including participating in discovery mediation, reviewing and analyzing relevant documents produced in discovery, and drafting and revising communications or submissions to Facebook or the discovery mediators.

27.     Karyn Erickson worked 6.8 hours on the ADI dispute during this period, including drafting and revising portion of submission and conferring with colleagues regarding ADI-related issues.

28.     Anthony Bertero worked 10.2 hours on the ADI dispute during this period, including conferring with colleagues regarding various issues arising from the ADI matter.

**B.      September 9, 2021 to January 31, 2022**

**1.   Fees: Keller Rohrback timekeepers**

29.     Derek W. Loeser worked 35.8 hours on the ADI dispute during this period, including drafting and revising communications with and submissions to the Special Master, reviewing communications and orders from the Special Master, preparing for and participating in the ADI hearing before the Special Master, and conferring with colleagues regarding various issues arising from the ADI matter.

30.     Cari Campen Laufenberg worked 20.2 hours on the ADI dispute during this period, including drafting, reviewing, and revising communications with and submissions to the

Special Master; reviewing communications and submissions from Facebook; preparing for the ADI hearing before the Special Master; and conferring with colleagues regarding various issues arising from the ADI matter.

31.     David Ko worked 17.9 hours on the ADI dispute during this period, including reviewing communications from and documents produced by Facebook; drafting, reviewing, and revising communications with and submissions to the Special Master; reviewing orders and communications from the Special Master; preparing for the ADI hearing before the Special Master; and conferring with colleagues regarding various issues arising from the ADI matter.

32.     Benjamin Gould worked 25.7 hours on the ADI dispute during this period, including drafting and revising communications with and submissions to the Special Master, preparing and revising Plaintiffs' presentation for the ADI hearing before the Special Master; conducting legal research; and conferring with colleagues regarding various issues arising from the ADI matter.

33.     Adele A. Daniel worked 21.0 hours on the ADI dispute during this period, including reviewing communications with and from, and submissions by, Facebook; reviewing communications or orders from the Special Master; preparing Plaintiffs' presentation for the ADI hearing before the Special Master; and conferring with colleagues regarding various issues arising from the ADI matter.

**2.     Fees: Bleichmar Fonti & Auld timekeepers**

34.     Lesley E. Weaver worked 15.2 hours on the ADI dispute during this period, including preparing for the ADI hearing in front of the Special Master, reviewing and analyzing communications or orders from the Special Master, drafting and revising communications or submissions, and conferring with colleagues regarding various issues arising from the ADI matter.

35.     Anne K. Davis worked 24.1 hours on the ADI dispute during this period, including reviewing documents produced in discovery, communicating with Facebook, drafting and revising submissions, analyzing orders and communications of the Special Master, preparing

for and attending the ADI hearing in front of the Special Master, performing record/factual research related to ADI dispute, and conferring with colleagues regarding various issues arising from the ADI matter.

36.     Matthew Melamed worked 20.9 hours on the ADI dispute during this period, including communicating with Facebook, reviewing and revising submissions, preparing for and attending the ADI hearing in front of the Special Master, reviewing and analyzing submissions and filings from Facebook, reviewing the draft presentation for the ADI hearing, and conferring with colleagues regarding various issues arising from the ADI matter.

37.     Joshua Samra worked 2.4 hours on the ADI dispute during this period, including drafting submissions, analyzing court rules, analyzing orders and communications, and conferring with colleagues regarding various issues arising from the ADI matter.

### IV.     FEES CAUSED BY MISCONDUCT RELATED TO THE NAMED PLAINTIFFS' DATA

38.     Plaintiffs litigated issues related to the Named Plaintiff data from the first discovery request in November 2019 through the present. Substantial time and costs have been expended on that effort. For purposes of this motion, Plaintiffs seek reimbursement for the work performed between November 29, 2020 to January 31, 2022, as a result of discovery misconduct related to the parties' dispute over production of the named Plaintiffs' data.

39.     Plaintiffs ask that the following fees be awarded from misconduct related to the dispute over the named Plaintiffs' data:

| Total Hours | Total Fees |
|:---:|:---:|
| 457.8 | $384,085.00 |

### A.     Fees: Keller Rohrback timekeepers

40.     Derek W. Loeser worked 41.6 hours on the data dispute during this period, including reviewing materials and conferring with colleagues in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, factual and legal research,

reviewing and revising briefs and submissions, and conferring with colleagues regarding various issues arising from the data dispute.

41.     Cari Campen Laufenberg worked 46.9 hours on the data dispute during this period, including conferring with colleagues in preparation for and attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, reviewing and revising briefs, collecting and organizing materials in support of briefs, performing factual/record research, reviewing communications and orders from the Special Master, and conferring with colleagues regarding various issues arising from the data dispute.

42.     David Ko worked 14.8 hours on the data dispute during this period, including conferring with colleagues in preparation for and attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee, attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, reviewing and analyzing communications and orders from the Special Master, reviewing and analyzing submissions from Facebook, drafting portions of submissions, and conferring with colleagues regarding various issues arising from the data dispute.

43.     Benjamin Gould worked 52.8 hours on the data dispute during this period, including drafting, reviewing, and revising briefs; performing factual/record research; performing legal research; collecting and reviewing materials in support of submissions; and conferring with colleagues regarding various issues arising from the data dispute.

44.     Adele A. Daniel worked 39.2 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, drafting briefs, collecting materials in support of briefs, revising briefs, and conferring with colleagues regarding various issues arising from the data dispute.

45.     Christopher Springer worked 23.8 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data.

**B.    Fees: Bleichmar Fonti & Auld timekeepers**

46.    Lesley E. Weaver worked 79.9 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, examining Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, reviewing and revising submissions, preparing for and participating in discovery mediation, and conferring with colleagues regarding various issues arising from the data dispute.

47.    Anne K. Davis worked 50.1 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, drafting submissions, performing legal and factual research, reviewing and revising submissions, and participating in and following up on discovery mediation.

48.    Matthew Melamed worked 34.8 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, attending the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, communicating with consulting experts, preparing for discovery mediation, performing record/factual research, drafting and revising submissions, reviewing Facebook's communications and submissions, and conferring with colleagues regarding various issues arising from the data dispute.

49.    Matthew Montgomery worked 9.9 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data.

50.    Angelica Ornelas worked 8.1 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data.

51.     Joshua Samra worked 44.2 hours on the data dispute during this period, including reviewing documents and preparing materials in preparation for the deposition of Facebook's Fed. R. Civ. P. 30(b)(6) designee regarding plaintiff data, analyzing and reviewing briefing, performing record/factual research, and reviewing analyzing the Special Master's orders.

## V.     FEES CAUSED BY MISCONDUCT RELATED TO DEPOSITIONS

52.     Plaintiffs seek fees related to (1) the briefing and appeal of Facebook's motion to take the depositions of the former named Plaintiffs; and (2) Facebook's January 18, 2022 cancellation of Plaintiffs' depositions.

53.     Plaintiffs ask that the following fees be awarded for misconduct related to depositions:

| Attorney Hours | Legal Professional Hours | Total Hours | Total Fees |
|:---:|:---:|:---:|:---:|
| 32.8 | 1.2 | 34.0 | $26,240.00 |

### A.     Fees Related to the Briefing and Appeal of Facebook's Motion

#### 1.   Keller Rohrback timekeepers

54.     Cari Campen Laufenberg worked 2.9 hours on reviewing and revising Plaintiffs' response to Facebook's motion to depose the former Plaintiffs, preparing for argument on Facebook's appeal of that motion, and conferring with colleagues regarding the motion, response, and appeal.

55.     David Ko worked 0.5 hours on reviewing and analyzing the Special Master's order regarding the former named Plaintiffs' depositions, and on conferring with colleagues regarding the order and issues arising from it.

56.     Benjamin Gould worked 18.0 hours on performing research for, outlining, drafting, revising, conferring with colleagues regarding, and overseeing the finalization and filing of the response to Facebook's motion to depose the former Plaintiffs.

#### 2.   Bleichmar Fonti & Auld timekeepers

57.     Anne K. Davis worked 1.3 hours on reviewing, revising, and conferring with colleagues regarding, the response to Facebook's motion to depose the former Plaintiffs.

58.     Matthew Melamed worked 2.4 hours on reviewing and revising the response to Facebook's motion to depose the former Plaintiffs.

**B.      Fees Related to Facebook's Cancellation of Plaintiffs' Depositions**

**1.   Keller Rohrback timekeepers**

59.     Cari Campen Laufenberg worked 2.1 hours on conferring with colleagues regarding the deposition cancellations and on tasks related to the scheduling and cancellation of the depositions.

60.     Katja C. Tunkkari worked 1.2 hours on tasks related to the scheduling and cancellation of the depositions.

**2.   Bleichmar Fonti & Auld timekeepers**

61.     Lesley Weaver worked 2.5 hours on tasks related to the scheduling and cancellation of the depositions.

62.     Angelica Ornelas worked 1.5 hours on tasks related to the scheduling and cancellation of the depositions.

63.     Katherine Sullivan worked 1.6 hours on tasks related to the scheduling and cancellation of the depositions.

**VI.     FEES CAUSED BY MISCONDUCT AT THE JANUARY 19, 2022 SPECIAL MASTER HEARING**

64.     The transcript of the January 19, 2022 hearing before the Special Master indicates that the hearing began at 2:05 pm and ended at 3:05 pm, thus lasting an hour.

65.     The transcript also indicates that Derek W. Loeser, Lesley E. Weaver, Cari Laufenberg, Anne K. Davis, David Ko, Matthew Melamed, Benjamin Gould, Emma Wright, and Christopher Springer all attended on behalf of Plaintiffs.[1]

66.     Plaintiffs thus ask that the following fees be awarded for misconduct related to the January 19, 2022 hearing in front of the Special Master:

---

[1] The transcript indicates that Sarah Skaggs, a paralegal, attended. Plaintiffs are not seeking fees for her time.

| Attorney Hours | Total Hours | Total Fees |
|:---:|:---:|:---:|
| 9.0 | 9.0 | $7,515 |

## VII.   COSTS PAID TO JAMS

67.     Keller Rohrback and Bleichmar Fonti & Auld have also incurred substantial costs in connection with payments made to JAMS for services provided by Judge Gail Andler as discovery mediator, and Daniel Garrie, both as a discovery mediator and a Special Master.

68.     The parties agreed to obtain the services of Judge Andler and Daniel Garrie in March 2021. The parties agreed to split the costs for Judge Andler and Mr. Garrie's services evenly.

69.     Since March 2021, Keller Rohrback and Bleichmar Fonti & Auld have paid JAMS a total of **$697,191.86** for their portion of the services provided by Judge Andler and Mr. Garrie in this case.

70.     While Plaintiff believe that there is ample justification to require Facebook and its counsel to pay the entire cost of JAMS, through this motion, Plaintiffs seek reimbursement of costs paid to JAMS solely related to the three primary categories identified above: ADI, Named Plaintiffs' Data, and Plaintiffs' Depositions.

71.     Since March 2021, JAMS has provided Keller Rohrback and Bleichmar Fonti & Auld with two sets of bills – one for services rendered by Judge Andler and Mr. Garrie as discovery mediators, and another for services rendered by Mr. Garrie as Special Master. In connection with his role as Special Master, and at the approval of both parties, Special Master Garrie also retained the services of a law clerk, Michael Mann.

72.     For invoices Keller Rohrback and Bleichmar Fonti & Auld received and paid in connection with Judge Andler and Mr. Garrie's role as discovery mediators, Plaintiffs seek reimbursement of **$43,823.39**. These amounts represent the time Judge Andler and Mr. Garrie spent as discovery mediators on issues involving ADI, Named Plaintiffs' Data, and Plaintiffs' Depositions. This time includes reviewing the parties' mediation submissions and agendas,

preparing for mediation sessions, attending mediation sessions, reviewing the parties' correspondences, and communicating directly with the parties.

73.     For invoices Keller Rohrback and Bleichmar Fonti & Auld received and paid in connection with Mr. Garrie's role as Special Master, Plaintiffs seek reimbursement of **$152,465.33**. These amounts represent the time Mr. Garrie and his law clerk Michael Mann spent in connection with Mr. Garrie's role as Special Master adjudicating disputes on issues involving ADI, Named Plaintiffs' Data, and Plaintiffs' Depositions. This time includes reviewing the parties' briefs and exhibits, preparing for hearings, conducting hearings, conducting research, drafting and issuing orders, and reviewing *in camera* documents submitted by Facebook.

74.     The total amount of these two categories of costs invoiced and paid to JAMS is **$196,288.72**.

75.     While many of the invoices provided by JAMS specifically identify whether the task by Judge Andler, Mr. Garrie, and Mr. Mann involved ADI, Named Plaintiffs' Data, and Plaintiffs' Depositions, some of the entries do not always specify whether the task involved a particular issue. The parties' agendas and submissions to Judge Andler and Mr. Garrie, however, specify whether these issues were raised. Thus, for descriptions provided by JAMS that do not specify an issue, Plaintiffs are able to determine whether that time entry involved ADI, Named Plaintiffs' Data, and Plaintiffs' Depositions.

76.     Many of the entries also involved time incurred on more than one issue. For example, Judge Andler and Mr. Garrie reviewed submissions involving ADI, Named Plaintiffs' Data, or Plaintiffs' Deposition, and other issues Plaintiffs do not seek sanctions for in this brief. In such situations, Plaintiffs have conservatively divided the issue for which Plaintiffs seek sanctions for by the total amount of issues subject to the description.

77.     The total amount of costs incurred by Plaintiffs on all time entries provided by JAMS involving ADI, Named Plaintiffs' Data, and/or Plaintiffs' Deposition equals $233,448.14 for Judge Andler and Mr. Garrie's time as mediators, and $166,756.75 for Mr. Garrie's time as Special Master. The total of these two amounts equals $400,204.89. Thus, by applying the

methodology identified in the preceding paragraph, Plaintiffs' request for **$196,288.72** represents 49% of all of the time spent by Judge Andler, Mr. Garrie, and Mr. Mann in connection with ADI, Named Plaintiffs' Data, and Plaintiffs' Deposition.

78.     Plaintiffs' request for reimbursement of **$196,288.72** represents 28% of the total amount paid by Keller Rohrback and Bleichmar Fonti & Auld to JAMS for services rendered by Judge Andler and Mr. Garrie.

79.     Attached hereto as Exhibit 1 is a true and correct copy of all statements JAMS provided to Plaintiffs from March 2021 to February 2022.

## VIII.   EXHIBITS

80.     Attached hereto as Exhibit 2 is a true and correct copy of excerpts from Mar 5, 2020 Hearing Transcript.

81.     Attached hereto as Exhibit 3 is a true and correct copy of excerpts from January 19, 2022 Special Master Hearing Transcript.

82.     Attached hereto as Exhibit 4 is a true and correct copy of excerpts from April 17, 2020 Hearing Transcript.

83.     Attached hereto as Exhibit 5 is a true and correct copy of excerpts from April 6, 2021 Hearing Transcript.

84.     Attached hereto as Exhibit 6 is a true and correct copy of excerpts from March 4, 2021 Hearing Transcript.

85.     Attached hereto as Exhibit 7 is a true and correct copy of excerpts from April 27, 2021 Hearing Transcript.

86.     Attached hereto as Exhibit 8 is a true and correct copy of excerpts from June 24, 2021 Hearing Transcript.

87.     Attached hereto as Exhibit 9 is a true and correct copy of a March 23, 2021 letter from Deborah Stein to Co-Lead Counsel.

88.     Attached hereto as Exhibit 10 is a true and correct copy of Plaintiffs' Second Set of Requests for Production to Defendant Facebook, Inc. (RFP 19).

89.     Attached hereto as Exhibit 11 is a true and correct copy of Defendant Facebook, Inc.'s Responses and Objections to Plaintiffs' Second Set of Requests for Production (RFP 19).

90.     Attached hereto as Exhibit 12 is a true and correct copy of excerpts from June 19, 2020 Hearing Transcript.

91.     Attached hereto as Exhibit 13 is a true and correct copy of excerpts from July 13, 2020 Hearing Transcript.

92.     Attached hereto as Exhibit 14 is a true and correct copy of an email from Melamed to Andler et al., May 7, 2021 3:53 pm.

93.     Attached hereto as Exhibit 15 is a true and correct copy of an email from Kutscher Clark to Weaver et al., June 8, 2021 4:53 pm.

94.     Attached hereto as Exhibit 16 is a true and correct copy of an email from Ko to Snyder et al. (Sept. 24, 2021, 7:49 pm).

95.     Attached hereto as Exhibit 17 is a true and correct copy of Pls.' Statement Concerning ADI Issues at 1, Oct. 22, 2021.

96.     Attached hereto as Exhibit 18 is a true and correct copy of Special Master's Order Regarding Outstanding ADI Issues, October 26, 2021.

97.     Attached hereto as Exhibit 19 is a true and correct copy of excerpts from December 4, 2021 Hearing Transcript.

98.     Attached hereto as Exhibit 20 is a true and correct copy of an email from Orin Snyder to Special Master Daniel Garrie (Nov. 2, 2021, 3:54 pm).

99.     Attached hereto as Exhibit 21 is a true and correct copy of Stip. and Order, *Rad v. IAC/Interactivecorp*, No. 654038/2018 (N.Y. Sup. Ct. Mar. 11, 2021) (setting trial).

100.    Attached hereto as Exhibit 22 is a true and correct copy of JAMS Message from Daniel Garrie to Orin Snyder (Nov. 10, 2021 8:37 pm).

101.    Attached hereto as Exhibit 23 is a true and correct copy of an email from Kutscher Clark to Loeser, Nov. 11, 2021.

102.     Attached hereto as Exhibit 24 is a true and correct copy of excerpts from January 11, 2022 Hearing Transcript.

103.     Attached hereto as Exhibit 25 is a true and correct copy of Facebook's Motion for Reconsideration of Special Master's Order Regarding Production of ADI Related Documents, December 15, 2021.

104.     Attached hereto as Exhibit 26 is a true and correct copy of Special Master's Amended Order Regarding Production of ADI Related Documents, December 22, 2021.

105.     Attached hereto as Exhibit 27 is a true and correct copy of Special Master's Supplemental Order Regarding Production of ADI Related Documents, January 10, 2022.

106.     Attached hereto as Exhibit 28 is a true and correct copy of excerpts from February 10, 2022 Hearing Transcript.

107.     Attached hereto as Exhibit 29 is a true and correct copy of excerpts from August 14, 2020 Hearing Transcript.

108.     Attached hereto as Exhibit 30 is a true and correct copy of excerpts from December 9, 2020 Hearing Transcript.

109.     Attached hereto as Exhibit 31 is a true and correct copy of excerpts from Deposition Transcript of Konstantinos Papamiltiadis, February 23, 2021.

110.     Attached hereto as Exhibit 32 is a true and correct copy of a letter from Deborah Stein, April 1, 2021.

111.     Attached hereto as Exhibit 33 is a true and correct copy of Declaration Of Derek W. Loeser in Support of Plaintiffs' Motion To Compel Production Of Named Plaintiffs' Content And Information, Exs. 15 and 16, October 18, 2021.

112.     Attached hereto as Exhibit 34 is a true and correct copy of Plaintiffs' Motion To Compel Production Of Named Plaintiffs' Content And Information, October 18, 2021.

113.     Attached hereto as Exhibit 35 is a true and correct copy of Special Master's Order re Production of Plaintiff Data, January 18, 2022.

114.     Attached hereto as Exhibit 36 is a true and correct copy of excerpts from Deposition Transcript of Tyler King, December 20, 2021.

115.     Attached hereto as Exhibit 37 is a true and correct copy of excerpts from Deposition Transcript of Anthony Bell, March 8, 2022.

116.     Attached hereto as Exhibit 38 is a true and correct copy of excerpts from Deposition Transcript of Jordan O'Hara, March 4, 2022.

117.     Attached hereto as Exhibit 39 is a true and correct copy of excerpts from Deposition Transcript of Cheryl Senko, December 10, 2021.

118.     Attached hereto as Exhibit 40 is a true and correct copy of excerpts from September 4, 2020 Hearing Transcript.

119.     Attached hereto as Exhibit 41 is a true and correct copy of an email from Kelly E. Herbert to Daniel Garrie et al. (Oct. 25, 2021 5:01 pm).

120.     Attached hereto as Exhibit 42 is a true and correct copy of a letter from Matthew Melamed to Counsel for Facebook at 2 (Nov. 3, 2021).

121.     Attached hereto as Exhibit 43 is a true and correct copy of a letter from Deborah L. Stein to Co-Lead Counsel at 1 (Nov. 9, 2021).

122.     Attached hereto as Exhibit 44 is a true and correct copy of an email from Daniel Garrie to Martie Kutscher Clark (Nov. 17, 2021, 6:42 pm)

123.     Attached hereto as Exhibit 45 is a true and correct copy of an email from Lesley Weaver to Daniel B. Garrie et al. (Nov. 22, 2021, 11:49 am).

124.     Attached hereto as Exhibit 46 is a true and correct copy of an email from Matt Buongiorno to Lesley Weaver et al. (Nov. 23, 2021, 1:17 pm).

125.     Attached hereto as Exhibit 47 is a true and correct copy of an email from Cari Laufenberg to Matt Buongiorno (Nov. 23, 2021, 4:51 pm)

126.     Attached hereto as Exhibit 48 is a true and correct copy of an email from Matt Buongiorno to Cari Laufenberg et al. (Nov. 29, 2021, 7:37 pm).

127.     Attached hereto as Exhibit 49 is a true and correct copy of an email from Matt Buongiorno to Daniel B. Garrie et al. (Nov. 23, 2021, 4:59 pm).

128.     Attached hereto as Exhibit 50 is a true and correct copy of Facebook's Motion to Depose Former Named Plaintiffs ((Dec. 6, 2021).

129.     Attached hereto as Exhibit 51 is a true and correct copy of Plaintiffs' Response to Defendant's Motion to Depose Former Named Plaintiffs (Dec. 9, 2021).

130.     Attached hereto as Exhibit 52 is a true and correct copy of Special Master's Order re: Depositions of Former Named Plaintiffs.

131.     Attached hereto as Exhibit 53 is a true and correct copy of an email from Buongiorno to Counsel (Jan. 18, 2022, 3:42 pm).

132.     Attached hereto as Exhibit 54 is a true and correct copy of an email from Buongiorno to Weaver (Jan. 31, 2022).

133.     Attached hereto as Exhibit 55 is a true and correct copy of Named Plaintiffs' Amended Initial Disclosures (Jan. 14, 2022).

134.     Attached hereto as Exhibit 56 is a true and correct copy of correspondence from one of Facebook's counsel, Martie Kutscher Clark, dated February 24, 2020.

135.     Attached hereto as Exhibit 57 is a true and correct copy of correspondence from attorney Kutscher Clark, dated April 5, 2020.

136.     Attached hereto as Exhibit 58 is a true and correct copy of the transcript of the case management conference held in this action on March 5, 2020.

137.     Attached hereto as Exhibit 59 is a true and correct copy of the transcript of the discovery hearing held in this action on January 15, 2021.

138.     Attached hereto as Exhibit 60 is a true and correct copy of correspondence from Derek W. Loeser and Lesley E. Weaver to counsel for Facebook, dated March 1, 2021.

139.     Attached hereto as Exhibit 61 is a true and correct copy of Facebook's Opposition to Plaintiffs' Motion to Compel the Content and Information of the Named Plaintiffs, dated October 28, 2021.

140.     Attached hereto as Exhibit 62 is a true and correct copy of correspondence from David Ko to counsel for Facebook, dated February 25, 2022.

141.     Attached hereto as Exhibit 63 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-00149613.

142.     Attached hereto as Exhibit 64 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-00203262.

143.     Attached hereto as Exhibit 65 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-00213424.

144.     Attached hereto as Exhibit 66 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-02014142.

145.     Attached hereto as Exhibit 67 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-02630229.

146.     Attached hereto as Exhibit 68 is a true and correct copy of a document produced by Facebook in this action beginning with Bates number FB-CA-MDL-02552090.


We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge.


Executed on March 11, 2022.


By:_____          By:_____
         Derek W. Loeser                              Lesley E. Weaver

At: _____Seattle, Washington_____          At: _____Oakland, California_____