```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3   _____
 4   IN RE FACEBOOK                )
     CONSUMER PRIVACY USER         )
 5   PROFILE LITIGATION            )
     _____)
 6                                 ) Case No. 18-md-02843-
                                   )           VC-JSC
 7   This document relates to:     )
                                   )
 8   ALL ACTIONS                   )
     _____)
 9
10
11
12
13
14             REPORTER'S VIDEOCONFERENCE
15              TRANSCRIPT OF PROCEEDINGS
16           BEFORE THE HON. DANIEL GARRIE
17              Wednesday, January 19, 2022
18
19
20
21
22   Reported by:
     JOANNA BROADWELL
23   CSR No. 10959
24   Job No.  5032584
25   PAGES 1 - 47
```

Page 1

```
 1   special master's ruling?
 2          MR. SWANSON:  Correct.
 3          THE COURT:  Or you are at an impasse.  All right.
 4   RFPs 27, 29 on redactions related to Tyler King.  Is
 5   there a way to mediate that?
 6          MR. SWANSON:  We haven't discussed these
 7   specifically with Plaintiffs.  It came up in
 8   Mr. Springer's email earlier this month.  And I think it
 9   is possible.  We disagree that the information that it
10   is suggested be redacted, should be redacted.
11          MR. SNYDER:  Mr. Garrie, we had asked for this
12   conference initially.  And I think the way this
13   conference began is illustrative of why we asked for the
14   conference.  It was not to -- obviously you have the
15   absolute right to raise any issues and conduct it
16   obviously as you determine appropriate.
17          We had asked for this conference not to discuss
18   individual discovery issues that are not yet ripe, many
19   of which are in Defendant's agenda to you, but for a
20   broader -- what we think is a much more important
21   reason.  So --
22          THE COURT:  I am just doing the housekeeping.
23          MR. SNYDER:  Yeah, but that is our point.  The
24   housekeeping is our point.  And whenever I can be heard,
25   you know, it has to do with the overall conduct and
```

```
 1  our productions are deficient.  It is that the
 2  allegations in this case are codified.  They're clear.
 3  And at this pace, in this process with you, Mr. Garrie
 4  and the plaintiffs, the plaintiffs are doing what
 5  plaintiffs rarely do, which is they have no interest in
 6  a substantial completion discovery date.
 7          They're going to say it is because we are hiding
 8  documents, blah, blah, blah, blah, blah.  It is
 9  nonsense.  They don't have a winning case now.  When we
10  move for summary judgment, when we move for class cert
11  they're going to lose.  They know that.
12          MR. LOESER:  Is that helpful, Special Master
13  Garrie?
14          MR. SNYDER:  Excuse me, excuse me, excuse me.
15  When Mr. Loeser when you did that last time Judge Corley
16  ordered you not to --
17          THE COURT:  Counsel Snyder, Counsel Snyder,
18  Counsel, Counsel, one second.
19          MR. SNYDER:  It is always Mr. Loeser who starts
20  with the name-calling, every hearing.
21          THE COURT:  Counsel Snyder, Counsel Snyder.  Let
22  me say for everybody, please address your arguments to
23  me and just curb your comments until one side is
24  finished.  If I have questions I will do my best not to
25  interrupt, but direct your arguments to me.
```

1           Counselor Snyder?
2           MR. SNYDER:  The problem we're having, we've been
3   mired in the document discovery dispute since November
4   of 2019 before the pandemic began.  We need, we are
5   entitled to, and the Court will expect finality in the
6   conclusion to the document discovery process.  Without
7   that this process, as we have said in our last appeal,
8   is not only going to up-end the schedule but will turn
9   this discovery process into an iterative ongoing
10  multiyear, beyond today project.  That's where we are
11  heading.
12          And the reason we're heading from, the reason
13  we're heading there is because right now they cannot
14  defend their case on the merits.  So they do not want --
15  usually plaintiffs want to end discovery and get to
16  trial.  They don't want the clock to end.  And so right
17  now with what they're asking us to produce, document
18  discovery will go through calendar year 2022.  That is
19  the logical consequence of what they're asking for.
20          They're fine with that, and they defend it by
21  saying we're hiding documents.  We need to do four
22  things, we think, to keep the case on schedule.  Right
23  now we have a schedule that brings the close of all
24  discovery June.  And until and unless Judge Chhabria
25  changes that schedule, which I think he would be loathe

Page 11

```
 1   to do, we need to have this process proceed in
 2   conformity with the schedule.  And the process is now a
 3   runaway train where the schedule will be impossible,
 4   impossible, to honor.
 5         So there are four ways that we believe this
 6   process can and should facilitate honoring and
 7   compliance with Judge Chhabria's scheduling order.  Yes.
 8   The first is to stop re-litigating disputes that you and
 9   Judge Corley already decided and agreements were
10   reached.  We're having a tremendous amount of trouble
11   moving forward because at every opportunity they reopen
12   past wounds.  Search string issues, we have 30 new
13   RFP --
14         THE COURT:  Counselor Snyder, I understand and
15   appreciate your frustration.  And are you referring to
16   the one, two, three, four that you identified in your
17   joint agenda?
18         MR. SNYDER:  Yes, Your Honor.  This case -- I
19   have never seen a case like this.  This case is out of
20   control.  The plaintiffs will not stop.  We just got 30
21   RFPs that expanded on 60 that we have, 30 new RFPs that
22   are broader versions of the 60 we spent two years
23   negotiating.  This will not stop unless you stop it.
24   This will not stop unless you stop it.  And if you don't
25   stop it --
```

```
 1              THE COURT:  Counselor, I understand.  I hear you.
 2              MR. SNYDER:  Let me just finish.  If you don't
 3    stop it, and you are the boss, we have two remedies.  We
 4    can appeal it or we can do what we're going to say when
 5    we are before the Judge.  Judge, if you want this case
 6    to go on another two years in fact discovery, there are
 7    no facts that they can get where they will win the case.
 8    We may then just be delayed by two more years.
 9              But Judge, this discovery process ain't going to
10    end by June of 2020 because we think the special master
11    process has been -- I am not going to use a bad word --
12    has been converted into -- by the plaintiffs into this
13    roving, ongoing, every month they get to send us another
14    30 or 40 or 60 requests.  In my experience judges or
15    master special judges say no mas, no mas.  You are done.
16              THE COURT:  Nobody has made any request for no
17    mas on either side.  But I hear you.  So I appreciate
18    your position, and I do want to hear from Plaintiff.  I
19    mean, both parties, and I have told both sides here,
20    feel free to make motions for fees if you feel it is
21    unduly burdensome, if you think it is unreasonable.  You
22    have to ask for relief for the relief to be granted.  I
23    can't sue sponte.  I don't feel comfortable sue sponte
24    saying no more X, Y, Z or A, B C, because frankly I
25    didn't know about the brand-new RFPs you just got or
```

```
 1   those things you were just alluding to.
 2           So I am more than happy if you want to bring a
 3   motion or raise the issue and so on and so forth to hear
 4   it.  And I understand and appreciate your frustration,
 5   but ultimately Judge Corley and Judge Chhabria are the
 6   ones you are going to have to go to.  And I appreciate
 7   both sides' perspectives here, and I am going to hear
 8   from Plaintiff on it.  And I appreciate it.
 9           MR. SNYDER:  He just ordered us to turn over
10   documents that will take us a year to turn over.  How is
11   that process consistent with the schedule?  I do think
12   that this process should be informed by the overarching
13   schedule.  And if we now have to produce and search for
14   and produce every ADI communication, quote, unquote,
15   that is going to take a year with hundreds of lawyers.
16   And if that's what you intend -- just illustratively.
17           And there is no sense in this process that there
18   is a scheduling order that is a federal court order that
19   we have to comply with that we can't comply with because
20   June 30th is a couple of weeks away, and they just sent
21   us 30 new RFPs.
22           MR. LOESER:  That is actually not true.
23           THE COURT:  Counselor Loeser, one second.
24           With the ADI I think I provided further
25   clarification to counsel Kutscher-Clark around that.
```

Page 14

```
 1   And feel free to ask for further clarification.  It is
 2   not my intention for you to search everywhere for
 3   everything for those communications.  It's just a search
 4   for what the existing custodians -- what Judge Corley
 5   has said, like, should be provided to the parties.
 6          And I should have -- I recognize I should have
 7   put in that my --
 8          MR. SNYDER:  I am not intending to raise any
 9   specific issue today.  I think what I am asking --
10          THE COURT:  Okay.
11          MR. SNYDER:  -- is how can we all -- how can we
12   work in this process within the scheduling order that is
13   operative.  And if the plaintiffs say that that order is
14   no longer operative because we have been criminal in our
15   document production and scofflaws in our document
16   production, and they are going to tell Judge Chhabria
17   that they need another six months until we come into
18   compliance for our documents, at least we know what the
19   plaintiff's game is.
20          But we're operating in a make-believe world where
21   they have dozens and dozens of documents issues that
22   have no -- there is no end even in sight.  And I am not
23   on top of these issues.  My team is.  But they tell me
24   that we're nowhere near close to the end.  But the end
25   is Friday or next Friday.
```

Page 15

```
 1              MR. LOESER:  I guess Ms. Kutscher-Clark would
 2      have to be more specific.  There is -- oftentimes they
 3      claim a production request isn't specifically enough to
 4      cover some issue.  And so we're asked to provide another
 5      one.  I don't know what Mr. Snyder is talking about with
 6      all these new requests.  The last RFPs were August 30th.
 7              THE COURT:  Okay.  So before we get into the
 8      weeds of the RFPs and the other things, there is two
 9      general guiding principles.  A, I agree on efficiency,
10      and I do agree on not having to reinvent the wheel.
11      With that said, both sides can make motions for fees or
12      for something to remedy the situation.
13              The parties agreed to a process to mediate before
14      you brought it before the special master.  And little
15      did I know there would be so many issues.  Because if I
16      did I certainly wouldn't have made it the process I did
17      at the time.  But we are where we are.  And frankly,
18      like with the RFPs or with the privilege log which is a
19      great example, the parties agreed to a privilege
20      protocol.  And the net/net is you negotiate, is you
21      negotiate it, you agree to it, and you should follow it.
22              If you don't think it is appropriate or will
23      apply, then make a motion to seek relief to have it
24      modified.  And if there is a compelling reason for it to
25      be modified state such.  But, you know, it's going to
```

1    have to be pretty compelling, to be very frank about it,
2    because as both sides point out, you have been at this
3    for several years, right?
4            But that is different than the ADI and the other
5    things that I had the chance to read Judge Corley's
6    orders on, right, with regard to those things.  But I
7    mean -- and I appreciate your position, and, I mean,
8    frankly -- and I see your point, Counsel Kutscher-Clark.
9            But I think with specificity will come -- because
10   I actually read the RFPs, and I wasn't aware as to
11   what -- and I actually had to go through and print off
12   all sets to figure out and dates, right, because there
13   are five sets of RFPs with different dates, and looking
14   at them and I understand your position, and they were, I
15   believe, indeed served in August, if that is correct, I
16   believe at some point.  And there is back and forth.
17           And I am happy to make rulings, but they need to
18   be brought before me for me to put them to bed.  But
19   without you raising the issue I can't do a whole lot
20   with it.  I can't sue sponte, unfortunately.  I don't
21   have the same authority as Judge Chhabria or Judge
22   Corley that sue sponte can say, you know, say no more of
23   this, no more of that, right?
24           MS. WEAVER:  If I may be heard, I haven't yet had
25   an opportunity.  I would like to propose we can maybe be

```
 1   think that would be incredibly constructive, and we
 2   could just get ruling from you that could help guide how
 3   to make decisions and what to raise and what not to
 4   raise.
 5          But we would just like to move through this.
 6   There is a lot to do.  There is a lot to do and a lot of
 7   complex cases, we're all capable as lawyers of refining
 8   these issues and accepting your rulings so we can move
 9   forward.  We think we could that here.
10          MS. STEIN:  Respectfully, one of the --
11          THE COURT:  Everybody is talking.
12          Counselor Snyder, the floor is yours.
13          MR. SNYDER:  Let me just say one thing.  Here is
14   the problem.  And maybe we do a lose or pay process.
15   The issue -- the 27, which will balloon into 56 as it
16   inevitably does which will bloom into 87 which it
17   inevitably does.  And remember, they told Judge Corley
18   discovery is just getting started, is what they said,
19   four years into the case.
20          They fall into two categories, these 27 or more.
21   They've already been resolved, discussed and agreed
22   upon, one.  Two, their new requests in four years have
23   never been made.  And they are coming from left field,
24   right field, the dugout, the saloon down the street into
25   the ballpark for the first time weeks -- days, a month
```

1  before the substantial completion cutoff.  So that is
2  the whack-a-mole moving forward.
3          When we go through the 27, which will be 56 by
4  time they get to you, you will see many -- most of one
5  of those two buckets, already discussed and agreed and
6  resolved and relate to requests that have never been
7  made before.  And maybe we should say $10,000 fine.
8          THE COURT:  How do you figure that, Counselor
9  Snyder?
10         MR. MELAMED:  May I respond?
11         MR. SNYDER:  Anyone who brings to you a $100,000
12  fine, half paid by the lawyers and half paid by the
13  client, I'm kind of making it up, if they raise issues
14  that have already been litigated and requests never
15  made, let's see how fast that list of 27 after it
16  balloons to 56 comes down to five.
17         MR. MELAMED:  I have an idea.
18         THE COURT:  Time out.  Time out.  Counselor
19  Loeser -- Counselor Melamed and Counselor Loeser, I am
20  happy to hear you, but I promised Counselor Stein next,
21  and I am going to honor that, and then Counselor Stein
22  and then Counsel Melamed.  But I feel like this is sort
23  of devolving, and I will entertain the remaining three
24  comments, and then I am going to weigh in here.  But I
25  appreciate, Counselor Snyder, your frustration --

1    proposing solutions here.
2            He referred to the list of issues, the 27 current
3    issues as either reflecting issues that have already
4    been litigated and resolved or never having been raised
5    first.  Some of those 27 issues are issues that Facebook
6    raised; it is a joint submission.
7            Of the issues the Plaintiffs raised they include
8    a number of issues related to non-custodial ESI.
9    Non-custodial ESI, he is correct, it has been raised.
10   It was raised I believe at the first discovery
11   mediation.  It was raised in meet and confers years ago.
12   And they have not been resolved.
13           We do not have a binary answer whether Facebook
14   is willing to consider production from these
15   non-custodial sources and if so, how they will do that.
16   And if not, then we would have impasse.  So that
17   includes things like the capabilities log where you sat
18   in -- sorry, capabilities tool where you sat in on a
19   deposition where a deponent described how that was used
20   and that that reported things like the white-listed
21   capabilities to which entities were provided.
22           It includes the non-custodial internal financial
23   systems where to date Facebook has produced one-off
24   selective documents related to monetization of user
25   information.  So I don't expect them to agree on our

1  position on this necessarily.  I just want to correct
2  the record to say that these are not issues that have
3  been raised and resolved, nor are they new issues.  They
4  are issues that have been raised and raised continuously
5  by Plaintiffs and not yet resolved.
6         MR. SNYDER:  That is my point.
7         THE COURT:  Counselor Snyder, Counselor Snyder.
8  I appreciate it, but it's Counselor Loeser's turn and
9  then I will give you the last and then --
10        MR. SNYDER:  30 seconds.  After he goes I have 30
11 seconds.  That's all.
12        THE COURT:  Okay.  Counsel Loeser -- I'm sorry.
13 Counsel Melamed.  Were you done?  Apologies.
14        MR. MELAMED:  No worries.  I have nothing more.
15 Thank you.
16        MR. ROBERTS:  It is important in these
17 conferences to try to make them useful.  There is a
18 court reporter, so it is important that the record be
19 accurate.  The problem I have with a lot of what
20 Mr. Snyder is saying is that it is just so departed from
21 the reality.
22        I understand his frustration if we file a bunch
23 of motions to compel and they were unfounded and they
24 were baseless, and he wanted to seek fees because we
25 bothered.  But we filed something like eight of them,

Page 28

```
 1   departed-from-reality version which violated your
 2   directive, but I am used to it by now and it is humorous
 3   by this point.  I will just say prior counsel's comments
 4   prove our exact point for requesting this conference.
 5   He acknowledged and admitted that years ago they raised
 6   this non-custodial ESI point.  They raised it in
 7   mediation.  But guess what they didn't do?  They didn't
 8   make a motion.
 9           And now eight days before the substantial
10   completion date they want, I guess, to tee it up to you
11   sometime in February or March.  I don't know when.  No
12   mas.  They've had years to move on that.  They didn't.
13   Strike three.
14           MR. MELAMED:  To be clear, we attempted to move
15   on this back in the spring.
16           MR. SNYDER:  Let me finish, please.  This is my
17   point.  They've got hundreds of issues on the board.  At
18   some point you have to call it.  They didn't call it.
19   You should.  And I am happy to take make the motion.
20   Tell them no mas, you had years to bring this.  You
21   didn't.  That is the first point.
22           The second point, just for the record, my job is
23   not to keep documents away from them.  My job is to
24   comply with Judge Corley's order and get this case
25   resolved on the merits.  And in the process we produced
```