```
                                                 Pages 1 - 64

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

  BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

IN RE: FACEBOOK, INC. CONSUMER     )
PRIVACY USER PROFILE LITIGATION.   )  NO. 18-MD-2843 VC (JSC)
                                      San Francisco, California
                                      Monday, July 13, 2020

         TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS

APPEARANCES:

For Plaintiffs:
                       BLEICHMAR FONTI & AULD LLP
                       555 12th Street
                       Suite 1600
                       Oakland, California  94607
                 BY:   LESLEY E. WEAVER, ESQ.
                       ANNE K. DAVIS, ESQ.
                       MATTHEW MONTGOMERY, ESQ.

                       KELLER RORHBACK, LLP
                       1201 Third Avenue
                       Suite 3200
                       Seattle, Washington  98101
                 BY:   DEREK W. LOESER, ESQ.
                       DAVID J. KO, ESQ.
                       CARI C. LAUFENBERG, ESQ.

                       GIRARD SHARP LLP
                       601 California Street
                       Suite 1400
                       San Francisco, California  94108
                 BY:   ANGELICA M. ORNELAS, ESQ.


Reported By:    BELLE BALL, CSR 8785, CRR, RDR
                Official Reporter, U.S. District Court


     (Appearances continued, next page)
```

1    For example, let's assume hypothetically in 2012 there was
2 some app that did something that the investigation uncovered.
3 We then, as part of our investigative protocol, communicated
4 with that app.  Call it App X.  We wrote them a letter.  That
5 letter will be produced  and they will then have the name of
6 that app.  And any communications with that app.
7    In one or two instances, only, we actually -- I think one,
8 maybe, we filed a lawsuit against a company.  That is all
9 public.
10    After they review those documents, we can take -- we can
11 then meet and confer, and there can be a live dispute.  Right
12 now, there is no live dispute other than they say they want
13 everything.  And they are focusing on a Massachusetts Superior
14 Court ruling.  And as we told the Court -- which -- which --
15 which was a motion to compel by the Massachusetts Attorney
16 General regarding a completely different -- substantially
17 different document requests than plaintiffs.
18    We objected to that request in Massachusetts because, as
19 framed, it did invade attorney/client privilege, work product,
20 and the like.  The Superior Court ruled against us.
21    But Facebook took that up to the Supreme Judicial Court in
22 Massachusetts, and they granted the extraordinary review of the
23 Superior Court's work product determination.  That is in
24 litigation.  And so nothing that's happening in Massachusetts
25 should either bind or control here.

1  privileged are obviously relevant and responsive to our
2  requests regarding their enforcement policies.  And so that's
3  what we're asking.
4      And that's what the disconnect is here, Your Honor.
5          **THE COURT:**  So is it Facebook's position that, for
6  example, any communications among engineers that didn't
7  involve attorneys, because they all come under the umbrella of
8  this lawyer-directed investigation, they're privileged?
9          **MR. SNYDER:**  Your Honor, the engineers were all
10 working.  There were internal legal teams, external legal
11 teams.  And everything that was done within the rubric of this
12 investigation is at the direction of counsel.
13     Let me make another point though, Your Honor, just to be
14 clear --
15         **THE COURT:**  So that's --
16         **MR. SNYDER:**  Yes.  Yes.
17         **THE COURT:**  I just want know if that's a yes.
18         **MR. SNYDER:**  Yes, yes.
19         **THE COURT:**  All right.  So --
20         **MR. SNYDER:**  But Your Honor, here's what plaintiffs
21  have failed to mention.
22     This so-called "ADI," which is really an internal legal
23 investigation, is separate and apart from Facebook's normal and
24 regular enforcement activities.
25         Facebook has an enforcement team.  And all it does is

1   enforce the rules and regulations and policies on the platform.
2   That enforcement team works with engineers on a regular basis,
3   and -- and is not done at the -- in the ordinary course, under
4   the direction of counsel.
5       And we have produced and will produce numerous documents,
6   because plaintiffs have asked for them, concerning our ordinary
7   enforcement activities which do involve engineers and policy
8   people.  And that stands in sharp contrast to the legal
9   investigation that my firm conducted.
10      And so -- and Martie, I don't know what the volume of
11  those documents are, but they are fairly voluminous.
12          **THE COURT:**  Okay.  But what I guess I don't
13   understand, at some point you're going to have to produce a
14   privilege log.  Because just because you say they're
15   privileged doesn't mean that the plaintiffs have to accept
16   that.
17      So I'm trying -- so when -- when do you intend to do that?
18          **MS. KUTSCHER CLARK:**  If I could respond briefly,
19   because I think there's a little bit of a misunderstanding
20   here.
21      The concern we're having at the moment is the requests
22  we're receiving from plaintiffs keeps changing.  When we came
23  before the Court last time, we were under the impression that
24  the plaintiffs were seeking the materials that the
25  Massachusetts AG'd requested.  So we went back and we talked to

1           **MR. SNYDER:** Right.

2           **THE COURT:** The question, though, because it's not --
3    so they're not seeking the stuff that's clearly privileged, so
4    you don't have to worry about that. And I don't even think
5    that ever really even needs to be logged, because that would
6    be a waste of time.

7           But with respect to the other stuff, there's arguments
8    there. Both ways. Privilege is not clear, and there's
9    arguments both ways.

10          And so the question is then, how, how -- I certainly --
11   it's not -- I can't adjudicate that right now, like just
12   generally out there. It has to be done in context. Right?

13          So maybe the thing to do -- I do, I have to say, I just
14   think, Mr. Loeser, I understand, but we're not in a great rush,
15   you noticed, so -- is start reviewing those documents, and then
16   see -- we can take a subset. Because the way I'm going to be
17   able to adjudicate this is take some exemplars, and rule, and
18   then the parties then can use that and apply it. Right? You
19   don't need the log of every single document.

20          So maybe what you do is you take a particular app, or you
21   get some names or something, right, and we focus on that
22   subset, and I adjudicate that. That's not going to resolve the
23   privilege for everything, but it will be a roadmap that the
24   parties can then apply. But I think we are going to need a
25   certain set -- I want it to be in context of a particular

1  document.  So the question is:  How do we get there.
2      And I don't think we necessarily need to wait until all
3  the production is done.  I don't think that is the case.  The
4  parties should get together and decide on, you know -- I don't
5  know what it is that the plaintiffs think necessarily are
6  there.  Maybe Facebook can come up with -- I don't know -- a
7  hundred documents that you're going to log.
8           **MR. SNYDER:**  We can also be helpful, Your Honor.
9   And, and -- because the vast majority -- I think it's
10   99 percent, but that's just from what my partner, you know,
11   has allowed to.
12      Since the vast majority are people we wrote to and
13  suspended because they didn't write back to us, you know, maybe
14  we can highlight a couple of ones where we had further
15  activity, they wrote back to us, we engage with them.
16      And then we can go behind the curtain, so to speak, on
17  your exemplar idea, and we can take a look at what our work
18  product and attorney/client activity was behind the contain,
19  look at what engineers were doing, and then figure out how to
20  tee up a privilege exemplar for handful of apps.
21           **THE COURT:**  Well, and for example, Mr. Loeser brought
22   up like policy (audio interference), things like that.  That's
23   not going to be particular to an app.
24      But maybe plaintiffs can point out, you know, because
25  what's --

1       **MS. STEIN:** Your Honor, on the schedule, if -- if we
2  could build in a little bit more time between when can we
3  get -- sort of do the initial exchange, and then when we do
4  the final exchange, I think that would be helpful.
5       It's just -- the schedule has proven a little bit tight as
6  we have to sort of work through issues, often with our client,
7  and get approvals.  It would -- right now, we typically have a
8  24-hour turnaround.
9       **THE COURT:** So what would you propose?
10      **MS. STEIN:** I think 48 hours would be better, or at
11  least 36 hours.
12      **THE COURT:** Ms. Weaver, can you work something out
13  with them?
14      **MS. WEAVER:** Yes, of course.  That's no problem.
15      **THE COURT:** Okay.  Whatever you guys work out is fine
16  with me.
17      **MS. STEIN:** Thank you.
18      **MS. KUTSCHER CLARK:** Your Honor, one more timing
19  request.
20      We're starting to find that during our meet-and-confers,
21  we're sort of returning a little bit to the game of
22  whack-a-mole we were all playing before we started meeting with
23  you.  And we're finding that we're having a little bit of
24  difficulty focusing and making progress, due to the sheer
25  number of issues that are on meet-and-confer agendas, and being

1 discussed.
2    And we're just hoping that perhaps we could have a little
3 bit of guidance limiting the number of issues, or at least
4 focusing the number of issues, so that we can make sure we are
5 moving forward with those things, and not spinning our wheels
6 on 15 things instead of making progress on five.
7       **MS. WEAVER:** May I respond to that, Your Honor?
8       **THE COURT:** Yes.
9       **MS. WEAVER:** We believe that it has been very narrow.
10 We haven't raised any pressures of issues that we haven't
11 previously -- like ADI, there are a number of issues that we
12 have, in fact, been sitting on.
13    We understand -- we worked would with them to give them
14 six weeks to do this first set of search terms.  But certainly,
15 there are all kinds of issues -- deposition protocols, all
16 kinds of things -- that we have been waiting on.  So I'm really
17 kind of baffled by that.  And I don't know what issues we have
18 been raising.
19    I do think it's true that Facebook asks us to send them a
20 detailed email before each meet-and-confer on the topics we
21 wish to discuss, which we have been doing.
22    So this is a little bit out of left field to me, but we
23 are really trying to work with the system here.
24       **THE COURT:** Okay.  I don't know what I can do, sort
25 of out of context.