**Pages 1 - 57**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER  )<br>PRIVACY USER PROFILE LITIGATION, )<br>_____ ) | **NO. 18-MD-02843 VC (JSC)**<br><br>San Francisco, California<br>Tuesday, January 11, 2022 |

**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES**:

For Plaintiffs:       KELLER ROHRBACK LLP
                      1201 Third Avenue, Suite 3200
                      Seattle, Washington 98101
                 **BY: DEREK W. LOESER, ESQ.**
                      **CARI C. LAUFENBERG, ESQ.**
                      **DAVID J. KO, ESQ.**

                      BLEICHMAR, FONTI & AULD LLP
                      555 12th Street, Suite 1600
                      Oakland, California 94607
                 **BY: LESLEY E. WEAVER, ESQ.**
                      **ANNE K. DAVIS, ESQ.**
                      **MATTHEW P. MELAMED, ESQ.**

For Defendant:        GIBSON, DUNN & CRUTCHER LLP
                      200 Park Avenue
                      New York, New York 10166-0193
                 **BY: ORIN SNYDER, ESQ.**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**




Reported by:  Katherine Powell Sullivan, CSR #5812, CRR, RMR
              Official Reporter - U.S. District Court

1  additional productions consistent with the Court's guidance.
2      Our concern at this point is the Special Master's order
3  brings the parties all the way back to square one.  It's
4  bringing back into the case every single ADI document, the
5  requests that we worked with the Court for two years to narrow.
6      I think the Court will remember that we did a very
7  complicated, long, burdensome sampling process specifically so
8  that the Court could provide guidance on what, if any, ADI
9  communications were discoverable.
10      And plaintiffs were permitted to select communications
11 that they wished for the Court to review in camera.  We
12 submitted those communications for the Court to review in
13 camera.  And after reviewing those documents, the Court did not
14 order any of them produced.
15      Instead, at a hearing last April, you advised the parties
16 that you found many of the communications, in your words, to be
17 not at all relevant and that many of them were likely
18 privileged.
19      Where we are now is the Special Master has held all of
20 those communications are potentially back in play.  And this is
21 problematic not only for legal reasons, not only because it
22 unwinds the work and this Court's guidance, but it also really
23 throws a bomb in the discovery process right before the
24 substantial completion deadline.
25      When we collected and reviewed the documents for six apps,

only six apps, it took 300 attorney hours to do that work.

ADI looked at millions of apps. If we were now ordered and an order was upheld that we had to collect and review, log, produce every single communication from ADI, that would take, charitably, at least a year, if not longer. It's a tremendous amount.

**THE COURT:** Isn't what the Special Master said is that he requires more information to determine relevance and whether such communication should be produced?

That's what he said in the order that you've appealed.

**MS. KUTSCHER CLARK:** Correct. And we provided the Special Master all of the communications from the six exemplar apps. And last night we received another order that said --

**THE COURT:** Not in front of me. Not in front of me.

So what I have in front of me is his order in response to your motion for reconsideration --

**MS. KUTSCHER CLARK:** Correct.

**THE COURT:** -- which apparently was well taken, because he did narrow his order considerably, and he said that he required more information to determine relevance and whether such communications should be produced.

But, as I understand, it's Facebook's position that no communications should be produced, that it's those six -- nothing; right? Because you're appealing that order.

**MS. KUTSCHER CLARK:** Yes, Your Honor. And it's our

1  position that communications are categorically out of play at
2  this point.
3      We did a very long exercise to work through this so that
4  the Court could provide guidance on communications.  The Court
5  issued an order in September that stated it disposed of
6  plaintiffs' motion to compel ADI communications, and it did not
7  order any produced.
8      Again, the Court had also stated that many were not
9  relevant and many were privileged.  And we are now -- we're
10 really back --
11     **THE COURT:**  I don't know that I recall saying that
12 they were privileged.  I mean, basically, the 20 or so odd that
13 the parties presented to me weren't at the heart of the matter
14 at all.  They were nothing.  A lot of them were like between,
15 you know, saying, oh, let's meet or do something and that there
16 were other underlying data.
17     And what I had thought from reviewing it was, A, why is
18 Facebook even fighting some of this?  It's fighting over
19 nothing.  Perhaps there's a way for the parties to agree that
20 the underlying data could be produced.
21     **MS. KUTSCHER CLARK:**  Right.
22     **THE COURT:**  And not attorney -- and the parties met
23 and conferred and were unable to come to agreement.  So then I
24 had to issue the opinion as to whether the ADI was attorney
25 work product and, therefore, privileged.

1     And I held it was not because Facebook told the entire
2 world, told all their members, that they were conducting this
3 investigation to root out any problem apps and make sure it was
4 safe for their customers.  That's what they told them.
5     And, as I recall, I said in my order to find in favor of
6 Facebook I would have to find that Facebook was lying when they
7 said that to their users.  I don't find that they were lying,
8 and you didn't argue that you were lying.
9     So that's my understanding of how it went, which is why I
10 asked if you could point me to a written order in which I said
11 that communications are forever out of play, that you can't
12 have them, that the discovery is limited forever to those six
13 apps.
14     It's not an iterative process at all as to those six apps.
15 I don't recall that being in a written order.
16         **MS. KUTSCHER CLARK:**  Your Honor, there's a general
17 presumption that when a party makes a request for specific
18 materials and the Court resolves the request without ordering
19 those materials produced, the request has been denied.
20         **THE COURT:**  Okay.  I just want to say you should not
21 litigate based on that presumption.  That is not how it works.
22 I wouldn't do that.  That's a mistake.
23         **MS. KUTSCHER CLARK:**  We understand.
24     And, again, Your Honor, one of our biggest concerns is
25 that when we were before the Court last April, after we had

```
 1  it's a little tricky today because he has now ordered every
 2  single document to be produced.  But, from our perspective,
 3  this further review never should have happened.  We did all
 4  this work with the Court previously.  There was no reason to
 5  unwind all of that.
 6      And, again, we had understood the focus on underlying
 7  facts, the focus on the specific types of documents prepared by
 8  non-attorneys, that involved factual information, to be what
 9  plaintiffs were requesting and what the Court had asked -- the
10  Court -- the Court had asked plaintiffs to focus on.  And if
11  we -- you know, at this point, if we were to dive back into
12  communications, we see no way that it would not significantly
13  delay the case.
14      And, again, I'm just going to briefly mention that the
15  Special Master has now ordered Facebook to produce every single
16  document from ADI, including attorney communications, which we
17  will separately appeal.  But if we were required to do that, I
18  don't see how it would not delay the case for at least another
19  year while we collect, review, and analyze millions of
20  additional documents.
21          **THE COURT:**  Okay.
22          **MR. LOESER:**  Your Honor, if I may, very briefly?
23          **THE COURT:**  No, Mr. Loeser.  I'm sorry.  You struck
24  out for today.  Someone else is going to have to argue.  I'm
25  sorry.  I'm sorry.
```

1  guardrails from this Court unless we're going to, you know,
2  wake up in June and, I can assure you, Your Honor, we're going
3  to be in the quicksand and the goalposts are going to be back
4  and forth.
5      And sometimes enough is enough.  And we're in a position
6  now, we're in no man's land, honestly.  We just don't know
7  where this is going to end, where it's going to go.
8      Now we have hearings before the Special Master, and the
9  process that was intended to streamline, make more efficient,
10 and focus on proportionality is kind of out of control, with
11 all due respect.  That's our concern.
12     And so we're not asking Your Honor necessarily to
13 replicate or intrude on the special master process, but I do
14 think it would be very helpful from you or Judge Chhabria to
15 give the special master process a structure with which to apply
16 a framework on proportionality and the like.  Because right now
17 it's just -- it's really a little bit a free-ranging process
18 with no guardrails whatsoever.
19          **THE COURT:**  Ms. Stein, did you want to add anything?
20          **MS. STEIN:**  Only just to close, Your Honor.
21     In keeping with what Mr. Snyder said, one of the important
22 guardrails that I think Special Master Garrie needs to be
23 comfortable with is that the only discoverable data in this
24 case regarding the named plaintiffs is data that was shared or
25 made accessible.  And that is from plaintiffs' mouth.  And we

1  relied on that for the past year, and for this to change now
2  would be completely prejudicial.
3          **THE COURT:**  Okay.  All right.  Let's move on to the
4  last motion with respect to the deposition of the five formerly
5  named plaintiffs.
6      I guess I want to know why Facebook needs their
7  depositions now before having taken the depositions of the
8  named plaintiffs.
9      And I guess what's interesting about this case is there's,
10 what, like potentially 300 million, maybe more, I don't know,
11 users in the class that Facebook has access to.  Right?
12     You could go -- if you want to make -- I understand the
13 standing argument.  And since June, it is now crystal clear
14 that all members of the class have to have standing.
15     Why do you need these five formerly named plaintiffs when,
16 presumably, you have access to lots and lots and lots and lots
17 of these consumers?
18         **MS. KUTSCHER CLARK:**  Your Honor, we wanted to start
19 with these five former named plaintiffs because we think
20 they're the most appropriate absent class members to start with
21 because they actually inserted themselves into the case.
22         **THE COURT:**  So I'm going to stop you there.  I'm going
23 to stop you there because nobody cited it, but I actually ruled
24 on this.  And I said named plaintiffs who withdraw, they're the
25 opposite of having inserted themselves, right.  They've

1  actually taken themselves out.  It's not like they've submitted
2  a declaration.  They weren't identified on initials.
3       So I'm really focusing on need.  Why do you need it?  Now,
4  there might be a reason why, based on the depositions that you
5  take of the named plaintiffs.  You haven't done that.  And the
6  two that you have, I don't have anything in front of me.
7       But -- and there could be a need if a defendant, for
8  example, didn't have access to other members of the class.  I
9  could certainly see that.  But, in general, right, we don't
10 order discovery of absent class members.  That's the rule.
11      And there are exceptions, for example, if you've inserted
12 yourself.  You're identified as a person on initial
13 disclosures.  If you're a named plaintiff, obviously, you have
14 to be -- or you submit a declaration, become a witness in the
15 case.  But we don't have that.
16          **MS. KUTSCHER CLARK:**  Your Honor, respectfully, these
17 absent -- these former named plaintiffs are uniquely situated
18 because all of them have reserved their right to rejoin the
19 case.  And this was an issue we had discussed with the Court
20 about a year ago, before they withdrew.
21      Plaintiffs had originally asked for an order allowing them
22 to simply de-prioritize certain named plaintiffs who would not
23 have to participate in discovery but could then serve as class
24 members later.
25      We objected to that saying these plaintiffs really need to

1  swim or cut bait -- fish or cut bait, because if they want the
2  ability to later serve as a class rep, we need the ability to
3  take whatever discovery we might need about them.
4      Ultimately, at a hearing, I think it was probably last
5  February, March, the Court encouraged Facebook to enter a
6  stipulation allowing the voluntary withdrawal of these
7  plaintiffs, reserving their right to rejoin, stating that
8  Facebook wouldn't be waiving any rights.
9      And we entered a stipulation with the understanding that
10 we were not waiving our rights to take discovery from these
11 individuals so long as they were reserving their right to
12 rejoin.
13     **THE COURT:**  So reserving their right, I know lawyers
14 always do that.  Blah, blah, blah, reserve the right.  It's
15 meaningless, right, because Judge Chhabria is going to decide
16 whether at some point they could be added.
17     And if discovery has closed, that would be a really good
18 argument that Facebook could make:  No, you can't substitute in
19 these people because discovery has closed and it will delay it.
20     Right?  Isn't Judge Chhabria going to decide?  And,
21 certainly, if he were to decide, yes, I'll let them come in,
22 we'd have to reopen discovery, and you'd get to take their
23 depositions of that.
24     So what I'm looking for is why you need it now.  You don't
25 need it for that because if they came back in -- if he allowed

1  them to come back in, which is a big if, right, given how
2  old -- as Mr. Snyder pointed out -- how old the case is, you
3  would get it then.
4      So why do you need it now?
5      **MS. KUTSCHER CLARK:**  Your Honor, we need it now
6  because we're building our arguments about the differences
7  between the current named plaintiffs --
8      **THE COURT:**  Okay.  I'm going to stop you there.
9      **MS. KUTSCHER CLARK:**  -- and some of the absent class
10 members.
11     **THE COURT:**  I'm going to stop you there.  You have
12 access to 299 million users.  Why do you need these five?  I
13 mean, you can get them from anyone.
14    And, frankly, these other people would be better for you.
15 They're all members of the class.  They're all members of the
16 putative class; right?  So why these?
17     **MS. KUTSCHER CLARK:**  If plaintiffs would not object to
18 Facebook deposing other absent class members, I think we'd be
19 in a different situation.  But plaintiffs have taken the
20 position that the only class members Facebook may depose are
21 the nine, soon to be eight, I believe, current named
22 plaintiffs.
23     **THE COURT:**  No, that's a different matter.  What I'm
24 saying is, are you saying that Facebook couldn't voluntarily
25 get declarations?  I mean, defendants do this -- you've done

1  it's eight, I don't know.  Maybe they're dropping.  Ms. Weaver
2  said eight.  It went from ten to nine to now eight.  You have
3  them; right?
4       **MS. STEIN:**  We want to show that absent class
5  members -- that members of the class who are not named
6  plaintiffs do not have standing as well.
7       **THE COURT:**  This is what I'm going to do.  I mean,
8  your argument would apply in every single class action, and I
9  don't think the courts are ready to go there; right.  That's
10 not the rule.
11      I'm going to deny it without prejudice.  You take the
12 depositions of the named plaintiffs and see if you can develop
13 something.  I don't see it.  I don't see it here, but maybe
14 there's something I'm missing that I don't know.
15      But there isn't anything that's been articulated as to why
16 you would need it and why the rule -- the rule that we don't
17 generally do absent-class-member discovery absent a special
18 showing, which hasn't been made.
19      **MS. STEIN:**  Your Honor, I don't think that these
20 former named plaintiffs fall into the bucket of absent class
21 members because they have inserted themselves.
22      Part of the rule is, have they inserted themselves.
23 They've inserted themselves.  They reserved the right to come
24 back in.  Those are people who have been engaged in the case,
25 who wanted to seek relief in the case, who are unwilling to say

1    to this Court that they don't want to remove themselves.  They
2    haven't said they want to remove themselves.
3         They haven't said we want to remove themselves because.
4    They said we -- we aren't willing to cut bait and say we will
5    not serve as a named plaintiff.  And I think that's a very,
6    very significant distinction, Your Honor.
7         **THE COURT:**  Okay.  I disagree.  We all know why they
8    did that, because their lawyers told them.  Because in case
9    some of the named plaintiffs get knocked out, then they have a
10   well that they could go to, to see if Judge Chhabria would
11   allow them to amend and come in.
12        It happens all the time; right?  And sometimes judges give
13   leave to amend to do that and sometimes they don't.
14        The question is whether you've shown -- you haven't made
15   any showing.  And, again, I disagree as to "inserted
16   themselves."  They've actually withdrawn from the case.
17   They've withdrawn.  They're not a witness.  They're nothing.
18        Now, if they reinsert themselves, if Judge Chhabria allows
19   them at some point to do it, that's a different matter.  Right?
20   I mean -- and he certainly would never do that and not allow
21   you to depose them.  That just wouldn't happen, and you know
22   that.  So I just don't see it.
23        But I do think it's possible, after you take those
24   depositions, that maybe there is some reason, I don't know,
25   that I'm not thinking of.  So I'll deny it without prejudice,

1  but the showing, I don't think, has been made yet.
2      So let me --
3          **MS. KUTSCHER CLARK:** Your Honor, if I could -- oh, I'm
4  sorry.
5          **THE COURT:** No, go ahead, because I was going to turn
6  to a different subject.
7          **MS. KUTSCHER CLARK:** I just wanted to add one point,
8  that there really is --
9          **MS. STEIN:** Sorry, Mr. Snyder just needs to be
10 readmitted.
11     I apologize for interrupting you, Martie.
12         **THE COURT:** I swear it was not me who removed him.
13         **MS. KUTSCHER CLARK:** Judge Corley, I understand that
14 there are cases where a named plaintiff has participated in a
15 case briefly, withdraws their claims, and then the defendant is
16 not permitted to take discovery of that individual.
17     But generally, on a higher level, there really is a firm
18 distinction in the case law between general absent class
19 members and former named plaintiffs.
20     And, generally, when you look at the case law, the
21 standard is much different for former named plaintiffs.  And
22 the 2former named plaintiffs standard typically looks at
23 whether you're seeking to harass the individual, whether the
24 individual inserted themselves into the case, and whether
25 there's relevant information to obtain from that person.

1           And all of those factors are met here, and the case --

2           **THE COURT:**  No, I disagree.  I don't know why you need
3    it.  I don't.  Your argument is, if you're a former named
4    plaintiff, we get the deposition, period, full stop, because
5    you've given me no reason why what you have at your disposal,
6    which is the depositions of the eight or nine named plaintiffs,
7    and all those other users out there who you can get
8    declarations from, are not sufficient.

9           So that's it.  That's -- that's -- I'm not persuaded.  I'm
10   denying it without prejudice.  But you have to give me -- the
11   only reason you're giving me is they're a former named
12   plaintiff.

13          I agree with you that if you take those depositions of the
14   eight then you can articulate some reason why depositions of
15   absent class members could be useful, that those are the people
16   you should first turn to, right, because they already have
17   inserted themselves into the litigation, having initially
18   agreed to be a named plaintiff.

19          And, to boot, this case is different because they withdrew
20   not because they got cold feet, because the plaintiffs,
21   frankly, were complaining about the burden of answering
22   interrogatories.  So I agree.

23          And, by the way, so I'm not saying that, because they
24   withdrew, they never can.  The circumstances here were because
25   plaintiffs were complaining about the burden.  I said, well,

```
 1   then don't put up 24.  Whoever puts up 24 named plaintiffs
 2   anyway?  Right?  That's not workable and it's not going to
 3   happen.
 4        So I agree with you, Ms. Clark, those are the people we
 5   would turn to first, but we're not there yet to turn to because
 6   you haven't shown me anything other than that they are formerly
 7   named plaintiffs, and I don't think that's sufficient.
 8        All right.  Okay.  So the last thing I want to address, I
 9   want to issue an order about giving you some structure for
10   scheduling depositions to help -- help you with the deponents
11   and help each side.
12        So what I'm proposing -- I don't know what your protocol
13   says, but when a party requests a deposition, that the other
14   side have seven days to provide dates.  That's regardless of
15   whether you're going to object to the deposition at all.
16        You provide the dates, and then that will give you some
17   time to work out the objections with the Special Master.  Okay?
18   If it's a nonparty, then you have two weeks to provide dates.
19        If the nonparty can't -- isn't cooperating or you can't
20   get in contact with them, as sometimes happens with former
21   employees, then the requesting party then can start assuming
22   that they're not being represented by the other side and do
23   what they need to do to schedule that.
24        I think this will help you with your deponents because you
25   say, The Judge has issued an order, we have to give dates in
```

1  just doesn't seem to be any urgency in terms of getting to
2  repose.
3      And proportionality, you know, obviously, is the word of
4  the day in the federal judiciary, as it must be on discovery
5  issues. And we just would respectfully request some general
6  guidance on how Mr. Garrie, who has not been a judge, where
7  Judge Andler has, that he view -- he was originally our
8  technical expert, he became a Special Master. You recall we
9  asked Judge Andler to co-serve for this precise reason. No
10 disrespect intended, but he is not someone who seems to be
11 focused on the judicial interests, the institutional interest,
12 and, frankly, our interest in getting some repose here as
13 opposed to an open-ended discovery process.
14     **THE COURT:** You know, I heard you before, Mr. Snyder,
15 but I have to say, as I said to Ms. Clark, his order asking for
16 the high-level description is exactly how you get to
17 proportionality, yet Facebook appealed that portion of his
18 order.
19     All right. But I've heard you. I'll take that into
20 consideration.
21     Rather than set a next date, what I suggest you do is,
22 when you believe a next date would be useful -- and I may set a
23 hearing date if there are additional appeals, but if there's
24 something else before then, just contact Ms. Means. And in the
25 era of Zoom, which we don't appear to be leaving anytime soon,