# Exhibit 59

# Filed Under Seal

Pages **1 - 32**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

```
                              )
IN RE:  FACEBOOK, INC.        )   NO. 18-MD-02843 VC (JSC)
        CONSUMER PRIVACY USER )
        PROFILE LITIGATION.   )
                              )
_____)
```

San Francisco, California
Friday, January 15, 2021

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:

KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, Washington  98101
BY:  **DEREK W. LOESER, ATTORNEY AT LAW**
**CARI C. LAUFENBERG, ATTORNEY AT LAW**
**DAVID KO, ATTORNEY AT LAW**
**CHRIS SPRINGER, ATTORNEY AT LAW**


BLEICHMAR, FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, California  94607
BY:  **LESLEY E. WEAVER, ATTORNEY AT LAW**
**MATTHEW MONTGOMERY, ATTORNEY AT LAW**
**ANGELICA M. ORNELAS, ATTORNEY AT LAW**
**ANNE K. DAVIS, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported Remotely By:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official U.S. Reporter

1   **APPEARANCES VIA ZOOM:**   (CONTINUED)

2   For Defendant:

3                             GIBSON, DUNN & CRUTCHER LLP
                          333 South Grand Avenue
                          Los Angeles, California 90017

4                  BY:   **DEBORAH L. STEIN, ATTORNEY AT LAW**

5                             GIBSON, DUNN & CRUTCHER LLP
                          2001 Ross Avenue, Suite 2100

6                             Dallas, Texas 75201
               BY:   **RUSSELL H. FALCONER, ATTORNEY AT LAW**

7

8                             GIBSON, DUNN & CRUTCHER LLP
                          1050 Connecticut Avenue, NW
                          Washington, D.C.  20036

9                  BY:   **JOSHUA S. LIPSHUTZ, ATTORNEY AT LAW**

10                            GIBSON, DUNN & CRUTCHER LLP
                          555 Mission Street, Suite 3000

11                            San Francisco, California  94105
               BY:   **MARTIE P. KUTSCHER CLARK**

12                            **ATTORNEY AT LAW**

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    Friday, January 15, 2021                        8:30 a.m.

 2                        P R O C E E D I N G S

 3                           ---o0o---

 4         THE CLERK:  Court is now in session.  The Honorable

 5    Jacqueline Scott Corley presiding.

 6         Calling Civil Action 18-MD-2843, In Re:  Facebook, Inc.

 7    Consumer Privacy User Profile.

 8         Counsel, starting with plaintiffs, can you please state

 9    your appearance.

10         MS. WEAVER:  Good morning.  It's Lesley Weaver of

11    Bleichmar, Fonti & Auld.  And today with me I have Anne Davis,

12    Matt Montgomery, and Angelica Ornelas.

13         MR. LOESER:  Good morning, Your Honor.  Derek Loeser

14    from Keller Rohrback with Cari Laufenberg and David Ko and

15    Chris Springer, also from Keller Rohrback.

16         MS. STEIN:  Good morning, Your Honor.  Deborah Stein

17    for Facebook from Gibson Dunn.  I'm here with Josh Lipshutz,

18    Russ Falconer, and Martie Kutscher.

19         THE COURT:  Good morning.

20         Okay.  Just so you know, I have a criminal matter at 9:00;

21    so we're going to hit sort of the high points.

22         Let's start with the ADI because, as I understood it, this

23    was sort of different from the other privilege log because

24    Facebook has taken the position that because all these

25    documents, interviews -- I don't know what the ADI is -- were
```

1  created as part of a lawyer-directed investigation, they're

2  privileged.

3       So I don't -- I don't think it's premature in the sense

4  now that you've gone through the stip, the process that the

5  parties agreed to, you were able to narrow it down.  I think

6  now is the time to -- and plaintiffs have focused on, I guess,

7  their e-mails or memos, or whatever it would be, in which

8  there's no attorney on the string, on that.  And so I think

9  that's ripe to go forward.

10      I don't know what meeting and conferring will do.  As you

11 explained, you put very detailed explanations of why it's

12 privileged.  Either they don't believe you or, what's often the

13 case, they want confirmation.  Right?  So that's why we'll do

14 some samples.

15      So what I was going to suggest -- sometimes when we do

16 these, if the parties need guidance, including the party

17 claiming they're privileged, I let each side pick any number.

18 I don't see why Facebook should maybe pick any.  It really

19 should be I just think plaintiff.  I was going to say pick 20.

20      And then let's just get simultaneous briefs because, while

21 I do this all the time, I know with respect to investigations,

22 it'd be nice to bring me up to speed on the state of the law

23 with respect to that and privilege.  And then I'll review them.

24      So that would be my proposal.

25          MS. STEIN:  All right.  Thank you, Your Honor.

1          I think the issue here is that while this exercise started

2    as, you know, what I think was intended by plaintiffs to be

3    some sort of categorical challenge to investigate -- to an

4    investigation, the way this has played out in the privilege log

5    is that we've logged about 6,000 entries.  Plaintiffs have said

6    they want to challenge anything that doesn't have a lawyer on

7    it.  But the logs look very much like you would expect an

8    ordinary privilege log to look like, where the entries that

9    they're challenging facially say things like, you know, "E-mail

10   revealing advice from Gibson Dunn concerning the structure of a

11   legal investigation," you know, things like that; "E-mail

12   summarizing advice from Gibson Dunn" or from someone from

13   Facebook in-house counsel.  So it's not necessarily something

14   that is any different than you would ordinarily see.

15        And we feel that plaintiffs haven't -- are just saying:

16   We want to challenge everything.  But there really isn't a

17   rhyme or reason that connects it to how this started out as a

18   challenge to whether this investigation was privileged.

19          **THE COURT:**  Well, they've now challenged 400 out of

20   6,000.  So that's good.  That's narrowed -- right? --

21   considerably.

22        And I think whenever there's not a lawyer on it --

23   right? -- that's always more on the edges.  That's more on the

24   edges.  So I think that the showing sufficient to allow the

25   *in camera* review is there.  I feel more comfortable when I have

1    it in context and I can see it.  That's why I say just do a

2    sample, and then that should be the end of the matter.

3         **MS. KUTSCHER CLARK:**  Your Honor, if I can add to that,

4    I think a concern we have about jumping directly into briefing,

5    particularly if the briefing is going to be simultaneous, is we

6    don't actually really know what we're briefing at this point.

7    We don't know what plaintiffs' position is.  We don't know why

8    they think these particular documents are not privileged.

9         Each one of these documents, the way they're logged --

10   and, you know, we've looked at them carefully -- they're

11   summarizing legal advice; they're conveying legal advice.  This

12   isn't -- you know, we're not standing on a work

13   product assertion.

14        **THE COURT:**  No, no.  But it's your burden.  It's your

15   burden; so you know what to brief.  Whatever it is that meets

16   your burden.  Right?  It's your burden.  It's not their burden.

17   It's your burden to show that they're privileged.  So --

18        **MS. STEIN:**  Yes, Your Honor.  And --

19        **THE COURT:**  -- whatever the case law is, whatever it

20   is that says just because an attorney isn't -- which you did a

21   little bit -- isn't on the string doesn't mean, if it's

22   conveying legal advice -- it shouldn't be very long.

23        **MS. STEIN:**  So just for clarity, Your Honor, is what

24   you're asking for for briefing where plaintiffs challenge

25   certain entries, they pick certain entries that they want to

challenge; we respond why we believe our log has made the
showing that we're entitled to show; and then Your Honor will
decide who's right on the law and decide which ones, if any,
you're going to review *in camera*?

    **THE COURT:**  Well, I think I'll just review them all
*in camera* with the briefs and then decide:  Yes, the privilege
was appropriately invoked.

    And then that should be the end of the matter.  Right?  I
don't then expect -- if, let's say, all 20 I believe were
properly invoked, that should be the end of the matter because
plaintiff should really be picking the 20 out of the 400 that
they feel most strongly might not be privileged.  Right?  So
it's sort of an exemplar in that state.

    If I don't agree, well, then it becomes more complicated.
Right?

    **MS. STEIN:**  Right.  I guess sort of a parallel
question is that, because this is in the context of an
investigation, I suspect we may want to provide supporting
information.  You may not be able to tell, Your Honor, from the
face -- some of the documents, I think you will be able to see
that it's revealing direct attorney communications or whatnot.
Others may be something that was at the direction of counsel
which may require context.

    **THE COURT:**  But isn't that on the log that you already
provided to them, or did you just say -- I don't think you

1    attached -- did you just say "Direction of counsel" with

2    identifying the counsel or...

3              **MS. STEIN:**  I think it depends on the entry,

4    Your Honor.  But given that this was an attorney-driven

5    investigation, I would -- I just don't know what kind of

6    additional information Your Honor might want for us to support

7    that aspect.

8              **THE COURT:**  Whatever you think meets your burden,

9    that's all.

10             **MS. STEIN:**  Thank you.

11             **THE COURT:**  Whatever you think you need, or maybe more

12   than you think you need, to meet your burden.  Right?

13        **MR. KO:**  Your Honor, this is David Ko on behalf of

14   plaintiffs.

15        And thank you for that.  I think that's what we've been

16   wanting to do, quite frankly, since last spring and summer, to

17   give you --

18             **THE COURT:**  I'm going to stop you, Mr. Ko.

19        **MR. KO:**  Okay.

20             **THE COURT:**  You should retract the last thing you

21   said.  Not productive.  Not helpful.  Okay?

22        **MR. KO:**  Sounds good.  Scratch that from the record.

23   I fulfill my New Year's resolution.

24        But let me ask for some context -- or some clarification

25   on the 20, because with respect to the 400 entries that we have

1  identified to Facebook, those include both parent documents and

2  attachments.

3      So our assumption would be the 20 -- the 20, you know,

4  exemplars that we propose to you would be both -- you know, one

5  document or one communication would be both the parent and the

6  attachment or attachments.  So --

7          **THE COURT:**  Yeah.  There were 400 entries.  So 20

8  entries.

9      **MR. KO:**  Well, I guess that's what I was hoping to get

10  clarification on, Your Honor, because the 400 comprises

11  documents that reflect both the parent and the underlying

12  attachments.

13          **THE COURT:**  You mean a single entry would comprise

14  both?

15      **MR. KO:**  Well, no.  There would -- for example, there

16  could be seven entries that relate to one document.

17      So the way that Facebook has logged these materials, they

18  include -- for example, if there's an e-mail and then a

19  diagram, you know, they claim that there's a diagram that was

20  attached to the e-mail that is also privileged.  And then

21  there's also another attachment -- because oftentimes in

22  e-mails we attach one or more attachments -- and then there's a

23  spreadsheet.  So what they've done is they've separately logged

24  those.  So --

25          **THE COURT:**  That's okay.  20 entries.

1       And look, if it turns out one of the entries involving an

2   e-mail, I say, "Oh, not privileged," well, then you're going to

3   have a discussion anyway; and maybe something then that was

4   attached, if it's not in your 20, we'll have a discussion

5   about.

6       Just 20 entries.

7           **MR. KO:**  Understood.  Thank you, Your Honor.

8           **MR. MONTGOMERY:**  Okay.  Your Honor, before we move on,

9   quick question.

10      How long do you want the briefs?

11          **THE COURT:**  I don't think they should be long.  I

12  mean, I'm thinking, like, ten pages.  But you tell me because

13  it's -- I don't know.

14          **MS. WEAVER:**  Ten pages is fine.  We can do that.  And

15  when would you --

16          **THE COURT:**  Well, let me ask Facebook because it is

17  their burden.

18          **MS. STEIN:**  Thank you, Your Honor.

19      I think it's -- because we don't necessarily know what's

20  being challenged, it's a little bit up in the air.  I think

21  we'll probably need more than ten pages for 20 documents

22  because we may need to provide --

23          **THE COURT:**  Okay.  So one page -- no more than one

24  page per document.  I don't mean -- just 20 total.  Right?  You

25  can divide it up any way you want among the 20 entries, but 20

```
 1   total.
 2            MS. WEAVER:  Your Honor, the one thing I would ask --
 3            THE COURT:  Yeah.
 4            MS. WEAVER:  -- is that if we are -- if they are
 5   putting in declarations that we're seeing for the first time,
 6   plaintiffs would like an opportunity to respond to any new
 7   information that's provided.
 8       I mean, to your point --
 9            THE COURT:  I don't want declarations.  I don't want
10   declarations.
11            MS. WEAVER:  Okay.
12            THE COURT:  I want the log of the entries.  I want
13   what was logged for the entries.  And then I want briefs, like
14   the argument.
15            MS. WEAVER:  Okay.
16            THE COURT:  No declarations.
17            MR. MONTGOMERY:  Okay.
18            THE COURT:  I want to make this simple.  If we need
19   more, then we can get more at the time.
20            MR. MONTGOMERY:  Last question, I promise, on ADI.
21       We proposed filing our brief on January 29th.  Is that
22   still a deadline the Court wants us to hold to?
23            THE COURT:  Well, that seems a little soon.  I don't
24   know.  When are you going to identify -- when are the
25   plaintiffs going to identify the 20?
```

1          **MR. MONTGOMERY:**  We could do it within seven days; so

2    by next Friday.

3          **THE COURT:**  Okay.  So that would be the 22nd.  So

4    I think a brief by the 29th might be a little -- how about the

5    5th?  Does that work, Ms. Stein?

6          **MS. STEIN:**  For plaintiffs to submit an opening brief

7    on the 5th?

8          **THE COURT:**  No.  I thought we were just going to have

9    simultaneous briefs.

10          **MS. STEIN:**  I think that's going to be a little bit

11    fast for us, Your Honor, if we've just found out what the

12    entries are.

13          **THE COURT:**  That's two weeks.  Well, no, because you

14    already logged them.  Right?  It's merely putting down into

15    more paper the analysis that's already been done because

16    they've already been logged.

17          I mean, and also, I thought this was going on in other

18    cases and this is not new or -- ADI.  I mean, we've known this

19    is at issue.  You know.  You have your argument as to why

20    they're privileged.  I assume somewhere in a file, virtual,

21    there's a memo, quite thorough, with all the law and anything.

22    It just needs to be turned into a brief.

23          So I think the 5th would be fine.  That's two weeks.

24          But if you can identify, Mr. Montgomery, before the 22nd,

25    that would be helpful.

1          **MR. MONTGOMERY:**  We will try to do so, Your Honor.

2          **THE COURT:**  I mean, same thing.  It shouldn't take --

3    I mean, you've had those.  You've analyzed them.  It's the 400

4    to the 20.

5          Okay.  All right.  So that takes care of the ADI.

6          And then I'll have argument if I need it.  If I need

7    something more, I will.  I promise.  I don't want to make a

8    decision that I'm not comfortable with.

9          Okay.  So the 30(b)(6) deponent, so I did read the notice

10   and Facebook's letter.  And then now plaintiff has another

11   proposal -- I guess you're -- I don't know, Ms. Stein, you seem

12   to be the lead today -- just more generally.

13         I mean, the idea was -- right?  We went through this whole

14   exercise about the scope of discovery.  Long, long months.  And

15   then Facebook was saying:  Well, actually, we've already

16   produced everything within that scope.  And so that's sort of

17   like, let's just cut to it.  Right?

18         And so what about plaintiffs' proposal in the statement

19   now, just those three topics, which is essentially the topic:

20   What is it that you -- what information do you gather about

21   users?  What do you do with it?

22         **MS. STEIN:**  Well, Your Honor --

23         **THE COURT:**  And how do you monetize it?

24         **MS. STEIN:**  -- that's what we endeavored to do in the

25   letter that we sent plaintiffs, was to take those three topics

1    and put some more meat on the bones of what we would be

2    preparing a witness on, because the topics, as Your Honor

3    proposed, which really is exactly what our letter fleshes

4    out --

5          **THE COURT:**  Well, except this.  I don't mean to

6    interrupt you, because we're done at 9:00.  Except that your

7    letter is more like a topic and a directive.  Right?  "Data was

8    not sold."  It's sort of almost like a directive to the witness

9    will testify.

10         No.  The witness will testify as to what the witness

11   knows.  And that may be what you believe, but that's not the

12   topic, that data was not sold.  The topic is:  How do they

13   monetize it? wherever that may lead.  It may lead that the data

14   was not sold.  Right?

15         But the problem I had with the letter was it jumped to the

16   conclusion as to -- not the topic, as to what it was going to

17   be, almost like a directive.

18         But if you take what plaintiff says and yours and you take

19   out the directives, then I think that's -- then you are on the

20   same page.

21         **MS. STEIN:**  Yes.  Your Honor, I don't think we were

22   intending to direct a witness on anything.  I think what we

23   were trying to do was explain, you know, more -- in more

24   particularity what a witness -- the subjects within this that a

25   witness was going to be focused on, because we obviously need

 1  to be able to prepare witnesses -- one or more witnesses to

 2  meaningfully testify.

 3       And the topics, just the three big categories could go in

 4  a lot of different places.  And I think the fact that

 5  plaintiffs' notice looks different from what we thought this

 6  was is a good reason for that.

 7       So, I mean, we certainly didn't intend to be suggesting

 8  that we were directing a witness to testify --

 9            **THE COURT:**  Well, I'm just looking at Topic 4, how

10  Facebook monetized user data.  First, data was not sold.

11       No, that's not the topic.  That's not what their question

12  is.  Their question is:  How did they monetize it? wherever it

13  may lead.

14       And a lot of this is coming from because you guys have

15  made representations, all in good faith, all what you've been

16  told.  Right?  And so now it's like, okay, where is it coming

17  from?

18       So I don't even know, actually -- this is just sort of a

19  preliminary initial "Let's get started," because we seem to

20  be -- like, I just couldn't figure out how to break through all

21  this stuff.

22            **MS. STEIN:**  Sure.

23            **THE COURT:**  So I don't even know that the -- and if

24  the witness is asked something they can't answer, then they

25  can't answer.  Right?  That's okay.  Then we know.  Like, it's

1   exploratory in that sense.  So --

2            **MS. STEIN:**  Right.  We --

3            **MR. LOESER:**  Your Honor --

4            **MS. STEIN:**  -- just wanted -- we just wanted to make

5   sure, Your Honor, what we were trying to avoid for any

6   30(b)(6).  We have an obligation to prepare, and we want to

7   make sure that everyone's on the same page and we get there and

8   we don't spend the day fighting about the scope of the

9   deposition.

10       So what we were trying to do in our letter was really just

11   say:  Hey, here's what we're prepping the witness on, the

12   subjects.  Here's how we understand it.  You know, if there's

13   some disagreement on this, if we're missing something, let us

14   know.

15       We do not expect -- we don't want this to be a directive,

16   Your Honor.  You know, that's not the intention.  It was sort

17   of more of a blueprint of how we were going to be focusing,

18   you know, with our client on what questions needed to be

19   answered, but, you know, certainly not a directive.

20            **MR. LOESER:**  Your Honor?

21            **THE COURT:**  Yes.

22            **MR. LOESER:**  Derek Loeser.  If I could be heard for a

23   moment.

24       This topic -- you know, there's no sense talking about the

25   past.  I know Your Honor isn't interested in it.  So I'll just

1   try and be practical here.

2       We have an order.  The order indicates what the subjects

3   are.  You issued another order indicating that there needed to

4   be a 30(b)(6) notice.  We took the three topics that were the

5   subject of Discovery Order Number 9 and we reduced them to very

6   concrete, very specific topics.  They track directly to the

7   order.

8           THE COURT:  You mean, you're talking about your

9   notice, or are you talking about what's in your CMC statement?

10          MR. LOESER:  I'm talking about our notice and why

11  we --

12          THE COURT:  Okay.  I don't want to talk about your

13  notice.  That was way beyond what I had in mind too.

14          MR. LOESER:  Okay.

15          THE COURT:  That was way beyond what I had in mind.

16  So I don't want to talk about your notice.

17      Because you put something in your CMC statement.  I want

18  to talk about that --

19          MR. LOESER:  Okay.  What we put in our --

20          THE COURT:  -- what you put in your CMC statement.

21          MR. LOESER:  Right.  What we put in our statement was:

22  We're happy to go back to just having a deposition that is

23  defined by those three topics.  But what we'd like to avoid is

24  having a deposition in which most of the deposition is spent

25  fighting with Facebook about whether we get to ask all of the

```
 1   questions we want to about those three topics.  And so --

 2        THE COURT:  You can ask.  They may not be able to

 3   answer.  So it would be best to spend your time on what the

 4   witness is able to answer.

 5        MR. LOESER:  And --

 6        THE COURT:  This is not -- it doesn't come up against

 7   anything or anything like that.  It's like an exploratory --

 8   frankly, I wish I could be there and ask the questions because

 9   I want to know.

10        MR. LOESER:  Well, Your Honor, you are --

11        MS. WEAVER:  We wouldn't mind, Your Honor.

12        MR. LOESER:  -- invited.

13        THE COURT:  I'm not.  But I will --

14        MR. LOESER:  You are welcome.

15        THE COURT:   I'm not.  You can hire a special master

16   for that, if you want.

17        MR. LOESER:  I guess here's what I'm trying --

18        MS. KUTSCHER CLARK:  Your Honor, I --

19        MR. LOESER:  We have a letter from them, which is like

20   a bit of a maze, and it says what is and is not going to be the

21   subject of this testimony.

22        I disagree and we all on the plaintiff side wholeheartedly

23   disagree with the various and many and confusing limitations

24   their letter describes.

25        If what that letter indicates is that when we go to the
```

1  deposition, those are the objections that they're going to make

2  and they're going to follow the roadmap that they have put in

3  their letter about what they're not going to allow the witness

4  to testify to, I think that that would be -- it's highly

5  inefficient.  Also, it would just be completely inappropriate,

6  given the scope of the -- just the general three topics that

7  the witness is supposed to be testifying about.  That's kind of

8  the practical problem that we see.

9       And we're happy to go ahead and go take the deposition,

10  but I fear that what we're going to get is, where they've set

11  forth in this detailed letter this path, this narrow path that

12  they want this witness to travel, it's just going to be a huge

13  problem because the path has nothing to do with the areas that

14  we're entitled to take discovery.

15       **THE COURT:**  The problem is, we're never going to get

16  to that depo if I leave it to you all just to negotiate the

17  scope.  We're never.  It'll be five months from now until it

18  gets there.  It just needs to get started and get there.

19       I mean, maybe -- I think the place to start, actually, is

20  for Facebook to identify:  Here's the general topics.

21       I mean, they're not -- it shouldn't -- it's not -- this is

22  pretty basic stuff in some sense.  Right?  This is to get at

23  the basic.  Like, one of the main questions is user data, what

24  is collected and what is done with it.  Right?  That's it.

25  That's it.

1    And so there have been representations that have been made

2    that the stuff that's been produced is all.  So there are

3    people there.

4    So, Facebook, identify to plaintiffs who's going to be the

5    deponent.  Right?

6    That'll then let you know somewhat what that person knows

7    or doesn't know.  And then the same thing with the

8    monetization.

9    I think that's a start, and then you go and we'll see what

10   we get.  And if you don't get what I think you should get, no

11   one's going anywhere; we can come back and do it again.  This

12   is just to try to break through that logjam and get started.

13        MR. LOESER:  I hear that, Your Honor, and I appreciate

14   that.  And obviously, we will jump right in and try and do

15   that.  I think Facebook obviously understands that this is a

16   witness that's supposed to be prepared to testify, and so

17   hopefully the witness comes prepared to testify about the full

18   range of topics that these issues relate to.

19        THE COURT:  Well, that's what Ms. Stein said.  That's

20   why she sent the letter, because they understand that they have

21   to prepare the witness to testify.

22        MR. LOESER:  But --

23        MS. STEIN:  That's exactly --

24        MR. LOESER:  -- I mean, I don't want to bore -- you

25   know, I'm sorry to -- we can move on; but what the letter says

1    is what they're going to prepare the witness to testify about.

2          **THE COURT:**  That's what I said.  Isn't that what I

3    said at the beginning?  That's what I said.  They heard it.

4    I'm confident that they heard it, that that's not going -- that

5    that's not going to happen.

6          For example, it can't be -- I'll give you an example.

7          Well, did you gather this type of -- did you gather this

8    type of information about users?

9          No.  The witness can't answer that because that

10   information wasn't shared.

11         Right?

12         **MR. LOESER:**  Okay.

13         **THE COURT:**  That's a different question.  The question

14   is what did they gather, and then what was shared.

15         **MS. STEIN:**  Right.

16         **THE COURT:**  Whether it was shared or not.  Right?

17   Ms. Stein is shaking --

18         **MS. STEIN:**  Right.

19         **THE COURT:**  -- her head "yes."

20   We're all --

21         **MS. STEIN:**  Right.

22         **THE COURT:**  -- on the same --

23         **MR. LOESER:**  Right.  And so --

24         **MS. STEIN:**  We understand --

25         **MR. LOESER:**  -- by the same --

1          **MS. STEIN:**  -- that, and that was what our letter was

2     intended to communicate, that they would get to ask questions

3     about the scope of what was collected and then they would

4     narrow it down to find out what was shared or accessed.

5          But Mr. Loeser identified our concern, Your Honor, is that

6     they're primed to say that our witness isn't prepared.  And we

7     really -- we take this seriously.  It's important.  We know

8     it's binding on the company.  And so we want to do the best

9     that we can to, you know, make everyone happy here.

10         You know, we will take Your Honor's topics.  Our letter

11    should not be viewed as a directive.  If there's something that

12    plaintiffs looked at and think is missing, you know, we should

13    discuss that before the depositions so that we know and we can

14    make sure the witness is prepared.

15         But we were trying to cover the -- in doing this letter,

16    we were trying to cover the landscape of everything.  And,

17    you know, I'm sorry some of it sounded like a directive.  We

18    were just really trying to flesh out what we thought this

19    meant.  And the categories of things that we listed of what was

20    collected, we think that's everything.  So we were just really

21    trying to be comprehensive here so that we were all on the same

22    page.

23         **THE COURT:**  So, Mr. Loeser, if you look at the topics

24    from their letter, as opposed to what's underneath, does that

25    cover -- I think that covers everything.

1          **MS. WEAVER:**  I think, Your Honor --

2          **MR. LOESER:**  Well, not really.  I mean, the topics

3   identify the categories that are indicated in the Court's

4   orders; but then there's this complicated roadmap about what is

5   and isn't going to be testified about.

6          **THE COURT:**  That's why I said if you just look at the

7   topics, that covers everything -- right? -- the topics.

8          **MR. LOESER:**  Well, I believe that the topics identify

9   the categories that are set forth in the order.  So --

10         **THE COURT:**  Okay.

11         **MR. LOESER:**  -- yes, those are the topics.

12         **THE COURT:**  There we are.  So that's the guidance.

13   That's what the witness should be prepared to testify to.

14      And as I said, and Facebook said they understand.  That

15   Facebook believes something wasn't shared or that the purpose

16   ultimately wouldn't be admissible is not a reason not to answer

17   the question.  Right?

18         **MR. LOESER:**  Okay.  And so we're not --

19         **THE COURT:**  It's discovery --

20         **MR. LOESER:**  -- doing things --

21         **THE COURT:**  -- as to what user was -- what information

22   was collected, what did they do with it, how, why.

23      And then, where that leads to, what the consequence of

24   that is, who knows?

25         **MR. LOESER:**  So let me just --

1    **THE COURT:**  Great.

2    **MR. LOESER:**  Not to beat a dead horse, to use a bad

3    metaphor here, but the -- I'll just read a statement in their

4    letter, and I think that this will provide clarification on

5    what will happen with that.

6    Page 3 of their letter, at the bottom of the page, there's

7    a statement (reading):

8    "Facebook does not intend for its designee to

9    provide details regarding the categories of

10   information it may have received from third parties,

11   except as described below."

12   Well, we're not going to limit our questioning to the

13   narrow scope that this letter seems to suggest the witness will

14   be testifying about.

15   And I think what Your Honor is saying is we're just

16   focused on the main topics; we don't need to worry about the

17   limitations set forth in this letter because the witness will

18   be prepared to testify about the full topic; and it's

19   testimony -- Facebook will not have made the decision not to

20   prepare the witness to testify to this limitation that's set

21   forth in this letter.

22   **THE COURT:**  Well, I guess the question is "details."

23   Right?  Details, I don't know what that means, "details,"

24   versus sort of categories or things like that.  If we're going

25   to go into details about all those, then you're going to run

```
 1   out of time.  So -- right?
 2       It's sort of a high-level: Genesis of it was, again, that
 3   Facebook's representation, after we went through all this
 4   briefing about the scope of discovery as to plaintiffs' user
 5   information, that they had, in fact, produced all of
 6   plaintiffs' user information.  So, that is shared.
 7       So let's now find out what is it that they collect about
 8   users.
 9           MR. LOESER:  Okay.  I hear Your Honor.
10           THE COURT:  Whether it be from a third party, whether
11   it be from their own -- whatever it is.  Whatever it is.  What
12   is it?
13       And categories.  Right?  If there's a particular detail,
14   they're not going to be able to go into details about -- I
15   don't know -- which apps or this or that or that.  Right?  This
16   is just --
17           MR. LOESER:  No.  I hear that.
18           THE COURT:  -- high level.
19           MR. LOESER:  And I agree with you.
20           MS. WEAVER:  Your Honor --
21           MS. KUTSCHER CLARK:  And, Your Honor --
22           MR. LOESER:  All I'm talking --
23           MS. WEAVER:  You're right.  Let's get started.  We'd
24   love a date, and we will take this deposition according to your
25   direction.
```

1   And so if Ms. Stein wants to identify who they'll be

2   producing, we're ready, you know, early February to take this

3   deposition.

4        **THE COURT:**  Well, I don't know about -- in February.

5       But, Ms. Kutscher Clark, you were trying to say something.

6        **MS. KUTSCHER CLARK:**  Oh.  I just wanted to assure

7   the Court that the type of language surrounding the type of

8   detail that would be testified to is really intended to zoom in

9   on what's relevant here.

10       The idea was, to the extent the deponent, for instance,

11   testifies that particular data is used only for a security

12   feature, you know, to make sure that there isn't a security

13   breach on the platform, they don't then need to go into detail,

14   for instance, about how that security feature operates.

15       That's all we're intending to convey there.  Let's get to

16   the types of data and the types of uses that are actually

17   relevant here, and, of course, we'll provide testimony about

18   that.  But if it's clearly outside the scope of what we're

19   talking about in this case, a high-level explanation should be

20   sufficient.

21        **THE COURT:**  Okay.  I don't think Mr. Loeser disagrees

22   with that.

23        **MR. MONTGOMERY:**  Before Your Honor has to leave us,

24   can I just clarify that we're talking about, really, two

25   depositions:  one deposition about the monetization and one

1  deposition about data?

2       **THE COURT:**  Yeah.  I mean, I don't know.  It seems

3  like the data would be the longer deposition.  Right?

4       **MR. MONTGOMERY:**  I think we're anticipating, you know,

5  a full day for each, if that's permissible by the Court.

6       **MS. STEIN:**  That sounds -- for, you know, a 30(b)(6)

7  and when -- on two topics, when you often get seven hours for

8  one 30(b)(6), like, we understand these are important topics,

9  but, you know, I think two full days is, you know, a little bit

10  of overkill here.  I think, you know, a few hours --

11       **THE COURT:**  Ten hours.

12       **MS. STEIN:**  -- each for an --

13       **THE COURT:**  Ten hours.  Ten hours.  And I would think

14  that plaintiffs would want most of it to go to the user

15  information.  I mean, that -- I mean, seven hours for that

16  I think you could do easily.  I don't know.  Maybe not.  I

17  don't know.

18      Ten hours.

19       **MS. WEAVER:**  We will take the deposition, and we will

20  report back.

21       **THE COURT:**  But not in -- ten hours over two days,

22  though -- right? -- not one day.  Or even more.  However you

23  want to do it.

24      Okay.  Excellent.

25       **MS. STEIN:**  And, Your Honor, just for clarification,

1  you know, I understand that plaintiffs want the identities of

2  these witnesses.  I don't know them yet.  I don't know who --

3       **THE COURT:**  Oh, no, no, no.  I understand you don't.

4  No, no.  They didn't -- I actually brought that up.

5       I just thought, when you tell them, then that gives them

6  comfort -- right? -- that you're not taking the engineer from

7  wherever.  Right?  You're actually -- there are people within

8  Facebook who actually know this information -- right? -- that

9  they're high enough up that they have the big picture.

10      **MS. STEIN:**  Right.

11      **THE COURT:**  So my thinking was that when you share

12 that name, that'll give them some comfort that the person will

13 be -- when you say "be prepared" -- right? -- it's like you

14 can't tell them what -- you can prepare them in the sense of

15 what they should prepare to testify.  They're going to have to

16 know or do the gathering to know.

17      **MS. STEIN:**  Correct, Your Honor.

18      One thing that I would just appreciate some clarification

19 on.  These witnesses are not being deposed in their personal

20 capacity right now.  So I just want to make sure that we're not

21 going to be -- you know, by giving them the names in advance,

22 we're not going to be seeing e-mails that these people are

23 being shown and impeached and whatnot; that this is a

24 deposition to get information from them, but not to start a

25 whole cross-examination of them in their personal capacity.

1     **MS. WEAVER:**  Deb, we agree with that, except to the

2     extent if it relates to the topic of the deposition, we may

3     introduce -- obviously, we'll be introducing exhibits and if a

4     deponent's name has to be on it.

5         But we agree, not personal capacity.  This is a

6     corporate deposition, both of them.

7         **THE COURT:**  There may be e-mails.  Right?  There's

8     documents they reviewed that lead them to believe that there

9     was other user information that was collected about users.

10    Right?  So they will probably show the deponent one of those

11    e-mails and say:  Well, doesn't this mean this?  Right?

12        **MS. STEIN:**  Yes, Your Honor.

13        **THE COURT:**  That would be the objective.

14        **MS. STEIN:**  I normally -- unless someone is also being

15    deposed in their personal capacity, I normally don't share the

16    name of a 30(b)(6) deponent in advance of a deposition.  So I

17    just don't want this to sort of get turned into something that

18    is not a 30(b)(6) deposition.

19        **THE COURT:**  Okay.  It won't.  All right?  And there'll

20    be a record.  So no worries.

21        **MS. WEAVER:**  And is Your Honor planning on providing

22    dates for the depositions?

23        **THE COURT:**  No.  I said it needs to happen by -- in

24    February.

25        **MS. WEAVER:**  Okay.  Is this a leap year?

1    (Laughter.)

2    **THE COURT:**  I don't think so.

3    **MS. WEAVER:**  I think not.

4    **MS. STEIN:**  It's an odd year; so I don't think so.

5    **MS. WEAVER:**  Sorry, Deb.  No February 29th.

6    **THE COURT:**  Okay.  I have a change of plea.

7    Just let me give some guidance as to deposition

8    transcripts or written discovery.  I mean, clearly, anything

9    that Facebook has said under oath about relevant topics is

10   relevant.  And I would think discovery, unless there's some

11   privilege I'm not aware of -- right?  So if they did an

12   interrogatory answer on a relevant topic, that's discoverable.

13   **MS. STEIN:**  Your Honor, this is a very serious issue

14   for us, especially because this is in the context of government

15   investigations.  And we're dealing with government entities who

16   often don't even want us to get the transcript because it's

17   their investigation.  So, you know, having this clone discovery

18   issue about what's going on in government investigations is a

19   very significant issue, and respectfully --

20   **THE COURT:**  Well, that's different than -- that's

21   different than an interview.  I thought what was in the letter

22   was depositions.

23   **MS. WEAVER:**  Your Honor, it's both depositions and the

24   FTC, who has unequivocally stated in this proceeding that they

25   do not object to us receiving information.  We have the FTC's

```
 1   written letters that ask for sworn responses to substantive
 2   answers.
 3              THE COURT:  So, okay.  Let me just, because I'm --
 4              MS. WEAVER:  We just want --
 5              THE COURT:  I'm just giving guidance.  I'm not ruling.
 6   I'm just giving guidance because it's not ripe and presented to
 7   me.
 8        My guidance is, for example, if -- it's almost like Jencks
 9   material.  Right?
10              MS. WEAVER:  Right.
11              THE COURT:  If a witness made statements on the
12   topics, if they're going to be a witness in the case, if
13   they're going to be deposed, then I think it's certainly
14   relevant what they said under oath in another case on the same
15   topics.  Right?  Not if it was unrelated.  And the same thing
16   with interrogatory responses.  And then I gave a caveat, which
17   is, unless there's some privilege of which I'm not aware.
18        That's all.  That's just the guidance that I'm giving.
19              MS. WEAVER:  Okay.  We will bring it before you if we
20   can't resolve it.
21              THE COURT:  Okay.  I guess we need a next date.  What
22   is today?  Today is the 15th.
23        How about February 24th at 8:30?  Maybe you'll have taken
24   that depo, and I'm sure there'll be lots to discuss.
25                          (Laughter.)
```

1          MS. WEAVER:  That's fine here.

2          MS. STEIN:  That's fine, Your Honor.

3          MR. LOESER:  We will all be so knowledgeable by then,

4     Your Honor.

5                         (Laughter.)

6          THE COURT:  It's true.  I wish I could take the depo.

7     I would.

8          MR. LOESER:  You really are invited.  We'll send

9     you --

10         MS. WEAVER:  You know, some judges have done things

11    like that.

12         THE COURT:  Yeah.  I wish I had time, but no time.

13       All right.  Thank you very much.

14         MS. STEIN:  Thank you, Your Honor.

15         MS. WEAVER:  Thank you, Your Honor.

16         MR. LOESER:  Thank you, Your Honor.

17              (Proceedings adjourned at 9:05 a.m.)

18                         ---o0o---

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Monday, January 18, 2021

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official Reporter, U.S. District Court