# Exhibit A

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843 <br> Case No. 18-md-02843-VC |
| This document relates to: <br><br> ALL ACTIONS | **PLAINTIFFS' MOTION FOR PERMISSION TO SERVE 30(B)(6) NOTICE ON FACEBOOK REGARDING FTC COMPLAINTS AND CONSENT ORDERS** <br><br> Judge: Hon. Vince Chhabria <br> Special Master Daniel Garrie <br><br> JAMS Ref. No.: 1200058674 |

## I.      INTRODUCTION

Pursuant to the Amended Order Establishing Deposition Protocol ("Deposition Protocol"), ECF No. 789. Plaintiffs seek permission to serve a notice on Facebook for Rule 30(b)(6) testimony concerning the FTC's investigation of Facebook, *In the Matter of Facebook, Inc.* Specifically, Plaintiffs seek testimony about specific allegations in the FTC's complaints filed in 2012 and 2019, and the consent order entered in 2012 and modified in 2020. The proposed notice is attached as Exhibit 1.

## II.      BACKGROUND

The Deposition Protocol states that each party may serve one Rule 30(b)(6) deposition notice on the other. ECF No. 789 at 8–9. On July 27, 2022, Plaintiffs served a notice seeking a Rule 30(b)(6) regarding the FTC complaints and consent orders. Ex. 1. During an August 4, 2022 meet and confer, Facebook informed Plaintiffs of its belief that they had violated the Deposition Protocol because they had already served a Rule 30(b)(6) notice. Later the same day, Plaintiffs withdrew the notice.

The Deposition Protocol permits the service of additional 30(b)(6) notices based on a showing of good cause to the Special Master. ECF No. 789 at 8. It also requires the parties to confer in good faith about the matters for examination before serving a notice. *Id.* at 9. The parties have done so. They conferred in good faith about the matters for examination during a video meet and confer on August 4, and in email communications on August 4, August 5, and August 8, in which Plaintiffs explained the reasons that good cause exists for this testimony. Ex. 2. Plaintiffs believe good cause exists for testimony on the issues identified in the draft notice. Facebook disagrees.

## III.      GOOD CAUSE EXISTS TO DEPOSE FACEBOOK ABOUT THE FTC COMPLAINTS AND CONSENT ORDERS

A court may grant additional depositions where the discovery south is relevant to the parties' claims or defenses and not unreasonably cumulative, duplicative, or burdensome. *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1687156, at *2 (N.D. Cal. May 26, 2022). Because the testimony Plaintiffs seek from Facebook about the FTC complaints and consent orders meets those requirements, Plaintiffs have established good cause.

First, the subject matter of the testimony Plaintiffs seek is plainly relevant. Judge Chhabria characterized Plaintiffs' allegations in this case to be that Facebook "(i) made sensitive user information available to countless companies and individuals without the consent of the users; and (ii) failed to prevent those same companies and users from selling or otherwise misusing the information." ECF No. 298 at 1.

That characterization dovetails with the FTC's summaries of its 2012 and 2019 complaints. In announcing the proposed settlement of its 2012 complaint, the FTC said: "The social networking service Facebook has agreed to settle Federal Trade Commission charges that it deceived consumers by telling them they could keep their information on Facebook private, and then

repeatedly allowing it to be shared and made public."[1] And in announcing the settlement of its 2019 complaint, the FTC said: "Facebook, Inc. will pay a record-breaking $5 billion penalty, and submit to new restrictions and a modified corporate structure that will hold the company accountable for the decisions it makes about its users privacy, to settle allegations that the company . . . deceiv[ed] users about their ability to control the privacy of their personal information." "In addition," the FTC continued, "the FTC alleges that Facebook took inadequate steps to deal with apps that it knew were violating its platform policies."

Notably, however, Facebook neither admitted nor denied any of the factual allegations in either FTC complaint. *See* 2012 consent order at 1 (the "Consent Agreement is for settlement purposes only and does not constitute an admission by the Respondent that the law has been violated as alleged in such Complaint, other than jurisdictional facts, are true"); 2020 consent order at 2, ¶ 5 ("Respondent neither admits nor denies any of the allegations in the Complaint, except as specifically stated in the Decision and Order"; the only facts admitted are those necessary to establish jurisdiction). Facebook has therefore never had to answer whether the FTC's allegations, which dovetail with Plaintiffs' allegations, are true. Plaintiffs' notice identifies the specific paragraphs in the FTC complaints that they seek testimony about.

The consent orders are similarly relevant. For example, the FTC's announcement of the 2012 consent order states that it requires Facebook to obtain express consent before sharing their information beyond their privacy settings and to maintain of a comprehensive privacy program to protect consumers' information. Plaintiffs are entitled to ask whether and how these provisions, and others that relate to Plaintiffs' allegations, were implemented. And the FTC's announcement of what would become the 2020 consent order states that, among other relevant aspects, it "overhauls the way the company makes privacy decisions" and will require Facebook to "exercise greater oversight over third-party apps." Plaintiffs are entitled to ask whether the provisions implementing the overhaul changed, what was done previously, and how the "greater oversight" informs the lesser oversight that occurred before the order's entry.

Facebook asserts that Plaintiffs fail to demonstrate good cause because it believes that the Special Master's March 18 order forecloses discovery relating to its new privacy policy. Ex. 2. The order concerned Plaintiffs' request for the production of documents related to the third-party independent privacy assessments submitted to the FTC pursuant to the 2020 consent order. ECF No. 886. It did not concern Facebook's understanding of how the requirements imposed by the 2020 consent order differ from what it was doing before. In other contexts, courts have routinely found that facts concerning a later time period can be informative about an earlier state of affairs. *See, e.g.*, *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 73 (2d Cir. 2001) (post-class period information may be relevant to determining what a defendant knew or should have known during the class period). The changes Facebook was forced to make by the 2020 consent order will shed light on its failures before that order's entry. Nor does it foreclose Plaintiffs from asking about Facebook's efforts to implement the new privacy policy, which will reveal whether the violations at the heart of this case remained ongoing.

---

[1] The 2011 and 2012 complaints are substantively identical. The former was filed in conjunction with a proposed consent order, the latter with the approved consent order.

Moreover, Facebook's second affirmative defense, mootness/ripeness, is explicitly based on the 2020 consent order. *See* ECF No. 373 at 124–125 (referring to the 2019 Consent Decree, which is the consent order that was entered in 2020 via court order). Since the affirmative defense puts the 2020 consent order at issue, testimony about it is appropriate. *See* Fed. R. Civ. P. 26(b)(1) (unless otherwise limited by the court, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *Nippon Sigmax Co., Ltd v. Kranos Corp.*, 2021 WL 2634823, at *4 (C.D. Cal. June 25, 2021) ("To make out their affirmative defenses, defendants bear the burden of production during discovery and the burden of persuasion at trial.").

Facebook has also objected to providing testimony on procedural grounds. First, it asserted that the notice is untimely. It is not. Discovery remains ongoing and there is nothing improper about seeking additional 30(b)(6) testimony for good cause. Further, contrary to Facebook's recitation, Judge Chhabria did not order a June 30 cutoff for 30(b)(6) testimony during the June 9 case management conference. Rather, the entire discussion during the case management hearing concerned the cutoff for testimony on issues identified in Plaintiffs' March notice. June 9, 2022 Hr'g Tr. at 39:2–3; *see generally id.* at 21:21–47:11. Indeed, Plaintiffs had already served a second 30(b)(6) notice on document preservation for which Plaintiffs had indicated their need for additional testimony. The deadline for that testimony was not discussed by either side.

Facebook's other reasons for avoiding testimony on part or all of the noticed topics are meritless. It points to the fact that Plaintiffs have already deposed PricewaterhouseCoopers, Facebook's privacy auditor under the 2012 consent order, as a reason that it should not have to provide testimony. But PwC's testimony is its own, and cannot be offered on behalf of Facebook. Moreover, PwC testified that Facebook did not provide PwC with certain information it requested and that Facebook made its own representations to the FTC regarding the biennial assessments performed by PwC. *See, e.g.*, the July 26, 2022 PricewaterhouseCoopers Rule 30(b)(6) Dep. Tr., Ex. 3 at 94:11–95:9. PwC therefore could not testify about the information Facebook failed to provide or about what Facebook told the FTC.

Facebook also contends that the notice is redundant of Topics 1.B and 2.B from the March 30(b)(6) notice, but that is simply inaccurate. And Facebook proports to express concern that all of the testimony it would have to offer would necessarily be privileged. But Plaintiffs simply interested in the truth about the FTC's allegations and facts about the consent orders. Further, Facebook has waived any claim of attorney-client privilege over these materials by raising the 2020 consent order in its second affirmative defense. *Natural-Immunogenics Corp. v. Newport Trial Group*, 2018 WL 6138160 (C.D. Cal. 2018); *see Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (privilege of communications with counsel regarding a securities filing waived when the party intended to rely on advice of counsel to establish the reasonableness of the filing).

## IV.   CONCLUSION

Plaintiffs have established good cause to depose Facebook about the specifically identified paragraphs and provisions of FTC complaints and consent orders identified in Exhibit 1.

Dated: August 10, 2022

Respectfully submitted,

KELLER ROHRBACK L.L.P.

BLEICHMAR FONTI & AULD LLP

By:  */s/ Derek W. Loeser*
     Derek W. Loeser

By:  */s/ Lesley E. Weaver*
     Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Emma M. Wright (admitted *pro hac vice*)
Daniel Mensher (admitted *pro hac vice*)
Michael Woerner (admitted *pro hac vice*)
Matthew Gerend (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com
ewright@kellerrohrback.com
dmensher@kellerrohrback.com
mwoerner@kellerrohrback.com
mgerend@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained

from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of August, 2022, at San Jose, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

# EXHIBIT 1

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' AMENDED NOTICE OF DEPOSITION OF DEFENDANT FACEBOOK, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) REGARDING THE FTC COMPLAINTS AND CONSENT ORDERS** |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** under Federal Rules of Civil Procedure 26 and 30(b)(6), Plaintiffs, by their counsel, will take the deposition of Defendant Facebook, Inc. ("Facebook"), at a date and time to be determined by the parties. Please take notice that due to the disruptions to travel and accompanying shelter-in-place orders caused by the COVID-19 outbreak, the deposition of Facebook will occur via remote means on and will be coordinated by Veritext Legal Solutions, with a business address at 101 Montgomery St., Suite 450, San Francisco, CA 94104. Contact Veritext's calendar team at ahenderson@veritext.com to retrieve the necessary credentials to access the remote deposition, as well as information related to any technical

assistance you may require to assist with carrying out the virtual deposition. Alternatively, if circumstances permit and the parties agree, the matter may be taken in whole or part in-person and virtually. Those who wish to appear in the physical presence of another do so at their own election; however, this noticing party is not requiring the in-person physical attendance of counsel, the witness, or any other party to this action.

The deposition will be taken before a person authorized by law to administer oaths under Federal Rules of Civil Procedure 28(a) and shall continue from one day to the next, excluding Sundays and holidays, until the examination is completed.

Pursuant to Rule 30(b)(6), Defendant is hereby notified of its duty to designate one or more officers, directors, managing agents or other persons most knowledgeable or qualified to testify on its behalf concerning the matters set forth below. Each such designee produced to testify has an affirmative duty to have first reviewed all Documents, reports, and other matters known or reasonably known or available to Facebook and to familiarize himself or herself with all potential witnesses known or reasonably available to provide informed, binding answers at the deposition. Defendant Facebook shall inform Plaintiffs of such designations(s) at a reasonable time prior to the deposition(s), but no later than seven (7) days before the deposition(s), by setting forth the identity of the person(s) designated to testify with respect to the matters specified below. The deposition will continue on the day noticed and for additional days, if necessary, excluding Sundays and holidays, until completed.

Under Federal Rules of Civil Procedure 30(b)(2) and 34, Defendant is requested to produce the documents responsive to the requests listed on Schedule B no fewer than five days before the deposition is to take place.

Plaintiffs reserve the right to notice and conduct additional Rule 30(b)(6) depositions of

Defendant on separate, non-duplicative topics.

**NOTICE IS FURTHER GIVEN** that Plaintiffs reserve the right to conduct this deposition utilizing the secure web-based deposition option afforded by Veritext or, in the alternative, video teleconferencing (VTC) services or telephonically to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone. Also take notice that Plaintiffs reserve the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment. Both the court reporter and digital reporter are authorized to administer the oath and serve as the deposition officer in the State of California. Take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the purposes of providing the oath/affirmation to the deponent and capturing the proceeding. Plaintiffs further reserve the right to utilize the following: (1) Record the deposition utilizing audio or video technology; (2) Instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in Realtime; (3) Exhibit Capture (picture-in-picture) technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) To conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that in lieu of a paper set of exhibits they may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript. Please contact the noticing attorney no less than five (5) calendar days prior to the deposition to provide all necessary credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, for those who will attend and/or participate

in the deposition in order that participation and connection can be arranged and details provided

sufficiently in advance of the proceeding(s). A list of all parties or attorneys for parties on whom

this Notice of Deposition is being served is shown on the accompanying proof of service.

Dated: July 27, 2022

KELLER ROHRBACK L.L.P.

By:     /s/ Derek W. Loeser
        Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David J. Ko (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Adele Daniel (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
bgould@kellerrohrback.com
adaniel@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

BLEICHMAR FONTI & AULD LLP

By:     /s/ Lesley E. Weaver
        Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 180196)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of:

- **PLAINTIFFS' AMENDED NOTICE OF DEPOSITION OF DEFENDANT FACEBOOK, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) REGARDING THE FTC COMPLAINTS AND CONSENT ORDERS**

via Email on this 27th day of July, 2022 to the person(s) set forth below:

Rosemarie Ring
Austin V. Schwing
Kristin A. Linsley
Brian M. Lutz
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
rring@gibsondunn.com
aschwing@gibsondunn.com
KLinsley@gibsondunn.com
BLutz@gibsondunn.com

Deborah Stein
Brooke Myers Wallace
Heather L. Richardson
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
dstein@gibsondunn.com
bwallace@gibsondunn.com
hrichardson@gibsondunn.com

Orin Snyder
Kelly E. Herbert
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
osnyder@gibsondunn.com
kherbert@gibsondunn.com

Russell Falconer
Matt Buongiorno
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
rfalconer@gibsondunn.com
mbuongiorno@gibsondunn.com

Colin B. Davis
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
cdavis@gibsondunn.com

Martie Kutscher-Clark
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA
MKutscherClark@gibsondunn.com

Joshua Seth Lipshutz
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Ave NW
Washington, D.C.
jlipshutz@gibsondunn.com

I declare under penalty of perjury pursuant to the laws of the United States of America that

the foregoing is true and correct.

Executed at Seattle, Washington on July 27, 2022.

/s/ Sarah Skaggs
Sarah Skaggs

**SCHEDULE A**

**I.     DEFINITIONS AND RULES OF CONSTRUCTION**

In the event of any conflict or ambiguity between the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question.

1.      The "2011 Complaint" refers to the complaint filed by the FTC in *In the Matter of Facebook, Inc.*, Docket No. C-4365.

2.      The "2012 Order" refers to the FTC's Decision and Order against Facebook in Docket No. C-4365, entered on July 27, 2012.

3.      The "2019 Complaint" refers to the complaint filed by the United States of America against Facebook in the matter *United States of America v. Facebook, Inc.*, No. 1:19-cv-02184-TJK (D.D.C.), filed on July 24, 2019.

4.      The "2020 Order" refers to the FTC's Order Modifying Prior Decision and Order in Docket No. C-4365, entered on April 27, 2020.

5.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term pursuant to Fed. R. Civ. P. 34(a)(1)(A), and includes, without limitation, any writing, drawing, graph, chart, photography, phonorecord, Electronically-Stored Information (as defined herein) or digitally encoded data, database, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof, and all copies bearing notations and marks not found on the original. The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors,

successors, affiliates, subsidiaries, or divisions thereof, and their officers, directors, employees, agents, and attorneys). Without limiting the term "control" as used in the preceding sentence, a Person is deemed to be in control of a document if the Person has the right or ability to secure the document or a copy thereof from another Person having actual possession thereof, including, but not limited to, work product contracted by You from others. Documents that are identical but in the possession of more than one Person or entity are separate documents within the meaning of this term. Also, a draft or non-identical copy is a separate document within the meaning of this term.

6.       "Facebook Privacy Program" has the same meaning as provided by Facebook (*see, e.g.*, FB-CA-MDL-00149128 at 00149137-00149139) and means the program established by Facebook pursuant to the 2012 Order to: (a) address privacy risks related to the development, management, and use of new and existing products; and (b) protect the privacy and confidentiality of information Facebook receives from or about consumers.

7.       "FTC" means the Federal Trade Commission.

8.       "Including" means "including but not limited to," or "including, without limitation." Any examples which follow these phrases are set forth to clarify the request, definition, or instruction but not to limit the topic.

9.       "You" or "your" or "Facebook" or "Defendant" means Defendant Facebook, Inc., together with your predecessors, successors, parents, subsidiaries, divisions, or affiliates (foreign or domestic), and their respective current and former officers, directors, agents, attorneys, accountants, employees, partners, managers, members, or other persons occupying similar positions or performing similar functions, and all persons acting or purporting to act on its behalf.

10.       Words used in the plural include the singular, and words used in the singular include

the plural.

## II.     RELEVANT TIME PERIOD

Unless otherwise specified or agreed upon by the parties, the relevant time period for purposes of this Notice is January 1, 2007 through the present.

## III.    MATTERS FOR TESTIMONY

TOPIC 1:

The allegations in the 2011 Complaint and the 2019 Complaint, specifically:

A.  From the 2011 Complaint, Paragraphs 10-18 (Facebook's Deceptive Privacy Settings); 19-29 (Facebook's Unfair and Deceptive December 2009 Privacy Changes); 30-33 (Scope of Platform Applications' Access to Facebook Users' Information); 34-42 (Facebook's Disclosure of User Information to Advertisers); and 43-49 (Facebook's Deceptive Verified Apps Program).

B.  From the 2019 Complaint, Paragraphs 2-14 (Nature of the Case); 19-33 (The Commission Order); 35-50 (Facebook's Desktop Privacy Settings Failed to Disclose That Users' Privacy Choices Would Be Undermined by Default Settings That Allowed Facebook to Share Users' Data with Third-Party Developers of Their Friends' Apps); 51-66 (Facebook's Desktop "Apps others use" and "Platform" Settings Also Undermined Users' Privacy Choices); 67-80 (Facebook's Mobile Privacy Settings Also Deceived Users); 81-87 (Facebook Was Aware That Giving Millions of Third-Party Developers Access to Affected Friend Data Posed Privacy Risks); 88-91 (Financial Considerations Influenced Facebook's Decisions Regarding Whether to Restrict Third-Party Developers' Access to User Data); 92-100 (Facebook Falsely Announced That Third-Party Developers Would No Longer Be Able to Access Affected Friend Data); 101-105 (Facebook's Privacy Checkup Did Not Tell Users That

Sharing with Their Friends Allowed Third-Party Developers to Access Their Profile Information); 106-113 (Facebook Finally Removed General Access to Affected Friend Data but Granted Special Access to Affected Friend Data to Certain Developers Without Telling Users); 114-127 (Facebook Failed to Implement and Maintain Appropriate Safeguards and Controls Over Third-Party Developers' Access to User Data); and 155-186 (Violations of the Commission Order).

## TOPIC 2:

Facebook's compliance with the 2012 and 2020 FTC Orders, including:

A. Sections I of the 2012 and 2020 Orders, that Facebook shall not misrepresent the extent to which it maintains the privacy or security of Covered Information;

B. Sections II of the 2012 and 2020 Orders, including regarding Facebook's disclosure obligations to users, and Facebook's obligation to obtain the user's affirmative express consent;

C. Facebook's Privacy Program implemented pursuant to Sections IV of the 2012 Order and VII of the 2020 Order;

D. The independent assessments, as required by Sections V of the 2012 Order and XIII of the 2020 Order;

E. Facebook's recordkeeping, specifically the records Facebook is required to create pursuant to Sections VI of the 2012 Order and XIV of the 2020 Order;

F. Facebook's reports to the FTC regarding its compliance with the 2012 and 2020 Orders, as required by Sections IX of the 2012 Order and XI of the 2020 Order; and

G. Facebook's reporting to the FTC regarding Covered Incident Reports, pursuant to Section IX of the 2020 Order.

## <u>SCHEDULE B</u>

Pursuant to Fed. R. Civ. P. 30(b)(5) and 34, Plaintiffs request the production of or identification by Bates number of the following, at least seven (7) calendar days before testimony on one or more of the deposition topics identified in Schedule A, via e-mail or file transfer:

1.      All documents which the person Facebook designates to testify on its behalf has consulted or reviewed or plans to consult in preparation for the deposition and has relied upon or will rely upon for testimony concerning the above deposition topics.

2.      A curriculum vitae for the person Facebook designates to testify on its behalf.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Nadler, Michael <MNadler@gibsondunn.com> |
| **Sent:** | Wednesday, August 10, 2022 12:06 PM |
| **To:** | Matthew Melamed; Wallace, Brooke Myers; Machin, Amanda C.; Buongiorno, Matt |
| **Cc:** | *** Service-FB-CA_MDL; Lesley Weaver; Derek Loeser; Anne Davis; Cari Laufenberg; David Ko; Benjamin Gould; Josh Samra |
| **Subject:** | RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders |

Matt,

The record below speaks for itself and does not reflect a good-faith effort by Plaintiffs to meet and confer as required under the discovery protocol and Rule 30(b)(6).  If Plaintiffs unilaterally insist upon filing another premature brief, like Plaintiffs' now-withdrawn notice that brief will also be procedurally improper.

Judge Andler and Special Master Garrie's email of yesterday makes clear that the parties may still mediate disputes before resorting to briefing.  Accordingly, we request to mediate the propriety of Plaintiffs' proposed additional 30(b)(6) deposition notice.  As made clear by Judge Andler and Special Master Garrie, if Plaintiffs "do[ ] not agree to mediate an issue in good faith," Plaintiffs "may not seek a Declaration of Impasse" and move ahead to briefing.  Please let us know your availability.

Thanks,

Mike

**Michael Nadler**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2306 • Cell +1 347.978.3187
MNadler@gibsondunn.com • www.gibsondunn.com

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Tuesday, August 9, 2022 8:38 PM
**To:** Nadler, Michael <MNadler@gibsondunn.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

[WARNING: External Email]

Michael,

Plaintiffs believe we have made our bases for seeking this deposition clear.  All of the testimony being sought is relevant to Plaintiffs' claims and/or Facebook's defenses, and none of it is unreasonably cumulative, duplicative, or burdensome.

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1687156, at *2 (N.D. Cal. May 26, 2022). As such, Plaintiffs believe we have established good cause for this deposition.

Facebook needn't agree, but we have provided more than enough information for it to take a position. Please let us know <u>by noon Pacific tomorrow</u>. If you do not agree to provide the testimony Plaintiffs seek, we plan to seek resolution on an expedited basis.

Thanks,
Matt

---

**From:** Nadler, Michael <MNadler@gibsondunn.com>
**Sent:** Tuesday, August 9, 2022 12:37 PM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

Matt,

Thank you for your response.  Please see our further responses and questions below in-line using red text.  We need to have a better understanding of Plaintiffs' position and the basis for that position on the issues identified below.  We are conducting this meet-and-confer via email at Plaintiffs' request and consider it to be ongoing, as we are unable to provide Facebook's final position until we have received answers to the questions we posed.  We appreciate your attention to this matter and will endeavor to get you a final decision promptly once our questions have been addressed.

Thanks

Mike
*********************

1. How is service of a new 30(b)(6) notice regarding the FTC timely?  Service of the notice at this juncture comes after Judge Chabbria's June 30th cut-off for 30(b)(6) testimony (with specific enumerated exceptions not applicable here), which was just reaffirmed in the parties' recent stipulation concerning 30(b)(6) deadlines.  If Plaintiffs thought this was necessary, instead of waiting until after the July CMC with Judge Chhabria to serve the now withdrawn notice, why didn't Plaintiffs serve this notice or raise this issue earlier?

   Judge Chhabria's order that 30(b)(6) testimony be complete by June 30 was limited to certain topics in a single notice. Further, as Facebook notes, he identified exceptions to that deadline even as to topics in that notice.  Thus, while we understand Facebook to take the position that service of the FTC notice is improper based on the June CMC, we disagree. Regarding timing, discovery remains open and there is nothing improper about when Plaintiffs raised the issue. What is Plaintiffs' basis for asserting that Judge Chhabria's order was limited to only those topics in the March 2021 notice?  Please let us know if there is some discussion in the record that Plaintiffs believe supports that view.

2. The discovery protocol provides that each side is entitled to one 30(b)(6) deposition as of right.  Why is there good cause for Plaintiffs to now serve a third 30(b)(6) notice?

   Good cause exists because the subject matter on which Plaintiffs seek testimony is highly relevant to the case. If "good cause" simply required relevance, it would render the discovery protocol's "good cause" requirement meaningless as the parties would presumably not serve 30(b)(6) notices for topics that they did not believe were relevant.  Unless the Plaintiffs view is they are entitled to continue serving an unlimited number of 30(b)(6)

notices on any relevant topic, we reiterate, why is there good cause for serving a third 30(b)(6) notice on topics that were not previously noticed?

3.  Plaintiffs have long been aware of the FTC matters, have already served two 30(b)(6) notices, and have taken dozens of depositions.  Why doesn't that constitute adequate opportunity to have already obtained evidence concerning the FTC actions and compliance efforts?

    ==Plaintiffs seek, and believe they are entitled to, Facebook's testimony regarding the FTC complaints and compliance orders.==  Stating Plaintiffs' belief that Plaintiffs are entitled to discovery does not answer the question.  Fed. R. Civ. P. 26(b)(2)(C)(ii) provides that courts "must limit the frequency or extent of discovery" if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Why haven't Plaintiffs had such opportunity already?  Relatedly, is there something specific that Plaintiffs claim necessitates "Facebook's testimony regarding the FTC complaints and compliance orders" now that Plaintiffs were unable to identify earlier as part of the prior 30(b)(6) notices?

4.  To the extent these issues are relevant, why aren't other more efficient and less burdensome methods of discovery (including fact witness depositions, interrogatories, and requests for admission) sufficient?  Why is Rule 30(b)(6) testimony necessary for these topics?  Moreover, many of Topic 2's enumerated subtopics substantially overlap with previously noticed topics on which Plaintiffs have already taken discovery.  Why are the noticed topics not duplicative of Plaintiffs' earlier 30(b)(6) topics?

    ==Plaintiffs seek, and believe they are entitled to, Facebook's testimony regarding the FTC actions and compliance efforts.  The issues are not duplicative of prior topics. Indeed, Facebook, which has taken to communicating its understanding of the 30(b)(6) topics in advance of testimony, has not once identified the FTC complaints or consent orders as issues its designees are prepared to testify about.==  Restating Plaintiffs' belief does not answer the question.  What is the basis for Plaintiffs' belief that they are "entitled to[ ] Facebook's testimony", as opposed to discovery using the identified processes?  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (courts "must limit the frequency or extent of discovery" if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.").  Moreover, Plaintiffs have identified PwC's independent assessments of Facebook's compliance with the 2012 consent decree as exhibits that they intended to use in connection with previously noticed 30(b)(6) deposition topics.  If Plaintiffs now contend that Facebook's compliance was not at issue in prior 30(b)(6) depositions, why were those documents provided by Plaintiffs for use in those earlier depositions?  To the extent that Topic 2 substantively overlaps with previously noticed topics, is it Plaintiffs' position that Facebook should be required to re-produce earlier 30(b)(6) deponents to address these topics again?

    1.  To provide two representative (but non-exhaustive) examples:

        1. Topic 2.E addresses "reports to the FTC regarding [Facebook's] compliance with the 2012" consent decree, but Plaintiffs have already taken a 30(b)(6) deposition of PricewaterhouseCoopers, the independent assessor that authored those reports.

           ==PricewaterhouseCoopers' testimony is its own, and cannot be offered on behalf of Facebook. Corporate testimony from Facebook regarding its knowledge of the reports prepared by PwC is completely distinct from PwC's third-party perspective of these reports. Further, PwC's testimony confirmed, among other things, that Facebook (i) did not provide PwC with certain information it requested about the FTC's investigation in 2019, (ii) did not provide PwC with representations regarding the Privacy Program as requested, and (iii) made its own representations to the FTC about the biennial assessments performed by PwC.==  What is the basis for Plaintiffs' belief that they are "entitled to Facebook's testimony", as opposed to the testimony of other parties and individuals concerning the underlying facts?  Without conceding the accuracy of Plaintiffs' characterizations of PwC testimony, why isn't the testimony of fact witnesses and PwC sufficient?  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (courts "must limit the frequency or extent of discovery" if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

2. Topic 2.B addresses "Facebook's compliance with" its "disclosure obligations to users," while previously noticed Topic 1.b addressed Facebook's "process for drafting, evaluating, approving, modifying, issuing and monitoring the effectiveness of the Statement of Rights and Responsibilities, Data Use Policies, Privacy Policies, disclosures, public statements, Facebook messages or posts by . . . any Facebook executive that concern: (i) the sharing of Users' Data or Information with Third Parties[ or] (ii) the use of Users' Data or Information by Third Parties."

The core of that topic addresses Facebook's process related to its disclosures to users. The FTC complaints and consent orders address numerous other issues. Setting aside whether the FTC complaints also address "other issues," do Plaintiffs dispute that the previously noticed disclosure topic substantially overlaps with Plaintiffs' proposed  Topic 2.B?  Plaintiffs' response does not address the question posed.

2. What is the distinction that Plaintiffs believe exists that would render the more recently noticed topics not redundant of the previously noticed topics?

Plaintiffs have already substantially addressed the distinctions above.  However, Plaintiffs are not interested in arguing semantics. If Facebook is willing to concede that the topics in the proposed notice at issue are within topics already noticed, that is fine so long as Facebook makes a designee to testify on the aspects of the FTC complaints and orders Plaintiffs have identified in the separate proposed notice.  Plaintiffs appear to misunderstand Facebook's position.  Fed. R. Civ. P. 26(b)(2)(C)(i) provides that courts "must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative."  In light of that rule, to the extent that there is substantive overlap, do Plaintiffs believe that they are entitled to further 30(b)(6) testimony on previously noticed topics?  If so, why?

5. How would discovery targeting Facebook's understanding of the FTC's allegations and compliance efforts— which necessarily implicate discussions with counsel relating to interactions with the FTC and interpretation of the consent orders—not call for testimony that is largely protected by attorney-client privilege and/or the work-product doctrine?

Plaintiffs are not interested in privileged information, unless the privilege is waived or Facebook seeks to use the privileged information as a defense.  Rather, Plaintiffs are interested in the FTC's allegations in identified paragraphs and the specifics of Facebook's understanding of and compliance with the identified provisions of the consent orders.  We note that Plaintiffs have not disagreed with the factual predicate that Facebook's understanding of the FTC's allegations and compliance efforts call for privileged and/or work-product protected information.  Accordingly, when Plaintiffs reiterate that Plaintiffs are interested in Facebook's "understanding", why does that not call for the privileged information Plaintiffs claim not to be interested in?

6. Regarding Topic 1, why are the FTC's allegations relevant?

The 2012 allegations are cited in Plaintiffs' complaint and, more generally, dovetail with Plaintiffs' allegations.  The 2019 allegations, filed after Plaintiffs' complaint, support the allegations in Plaintiffs' complaint. The complaints at issue were drafted by the FTC, not Facebook.  To the extent Plaintiffs' believe the FTC's allegations are relevant, what is the relevance of Facebook's testimony, as opposed to the FTC's?

7. Regarding Topic 2, why is Facebook's compliance with FTC consent decrees relevant when there is no private right of action for failure to comply with a consent decree?  For instance, Plaintiffs' Topic 2.E seeks testimony concerning "Facebook's recordkeeping" in connection with "records Facebook is required to create" pursuant to the consent decrees.  Why is Facebook's recordkeeping pursuant to FTC consent decrees relevant to Plaintiffs' causes of action?

Among other things, the consent orders establish certain duties owed to users.  Plaintiffs' negligence claim incorporates those duties. Facebook's failure to comply with consent orders is a violation of its duties. Is it Plaintiffs' position that their negligence claim is tantamount to a private right of action for violation of an FTC consent decree?  If not, please clarify.   If so, please provide authority so that we may evaluate that proposition.

8.  Regarding Topic 2, you state that Plaintiffs "disagree" that "the Special Master's ruling regarding Protiviti documents forecloses testimony about the 2019 FTC . . . consent order."

    1.  As noted below, we think that is an overly narrow reading of Special Master Garrie's earlier ruling, in which he held that issues relating to the "new, redesigned privacy policy that Facebook implemented in 2020, years after the relevant time period for this matter," are "unlikely to have much if any probative value" and therefore discovery concerning them would not be justified in light of the "require[d] amount of time and money" that it would necessitate. Dkt. 886 ¶ 8. Accordingly, we reiterate our request that you please explain the reasoning behind Plaintiffs' apparent belief that there is good cause for requiring 30(b)(6) testimony on Facebook's compliance with the 2020 consent decree?

        As you note, Plaintiffs have provided an explanation. In addition, Facebook has identified the 2020 consent order as an affirmative defense. (Facebook's affirmative defense calls it the 2019 consent order, which refers to the date Facebook and the FTC agreed to its provisions; 2020 is the date is was entered. The parties are referring to the same provisions.)  Plaintiffs are entitled to discovery into Facebook's affirmative defenses. It is fine if Facebook disagrees. If so, Plaintiffs will move the Special Master for relief.  To be clear, Plaintiffs have not provided an explanation.  Reiterating Plaintiffs' disagreement does not suffice, does not explain the basis for Plaintiffs' position, and does not constitute conferring in good faith as required by the discovery protocol.  Accordingly, Facebook asks again: what is the basis for Plaintiffs' reading of Special Master Garrie's earlier ruling?

    2.  Regardless, please explain why Special Master Garrie's ruling does not apply, at minimum, to Plaintiffs' Topic 2.E expressly seeking testimony regarding reports on Protiviti's assessments or Plaintiffs' Topic 2.F which relates to a provision of the 2020 consent decree without identifying any analogous provision of the 2012 consent decree?

        The same answer applies.  See response above.  Plaintiffs have not addressed this question.  Please do so.

9.  Both listed topics are followed by several enumerated subtopics.  Do Plaintiffs intend for the scope of the topics to be limited to the enumerated sub-topics?

    1.  For instance, Topic 1.A does not reference paragraphs 1-9 or 50-63 of the 2011 Complaint—are those meant to be included within the scope of Topic 1's reference to "The allegations in the 2011 Complaint", or do Plaintiffs seek testimony only on the paragraphs that are specifically referenced?

        Plaintiffs' enumerated subtopics are intended to identify the specific paragraphs they ask Facebook to prepare the designee to testify about.  If other paragraphs are implicated by that testimony, Plaintiffs reserve the right to ask about the other paragraphs.  Facebook interprets Plaintiffs' reservation of rights to mean Plaintiffs believe the entirety of the FTC complaints and consent decrees are within the scope of their proposed notice.  Please let us know if that is incorrect.

    2.  The same question applies to those portions of the 2019 complaint, 2012 consent decree, and 2020 consent decree that are not expressly enumerated.

        The same answer applies. See response above.

10. How many hours of testimony do Plaintiffs seek on these topics?

        Up to 7 hours, with the ability to seek more by agreement, by a showing of good cause, or if the Special Master decides on his own that Plaintiffs should get more.  Thank you.

**Michael Nadler**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2306 • Fax +1 212.817.9507
MNadler@gibsondunn.com • www.gibsondunn.com

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Tuesday, August 9, 2022 1:00 PM
**To:** Nadler, Michael <MNadler@gibsondunn.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

**[WARNING: External Email]**

Michael,

Please provide a response by 1 pm Pacific today. If we don't receive one, Plaintiffs will prepare a motion for permission to serve the notice.

Thank you,
Matt

---

**From:** Matthew Melamed
**Sent:** Monday, August 8, 2022 10:59 AM
**To:** Nadler, Michael <MNadler@gibsondunn.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <LWeaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <ADavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <JSamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

Thanks, Michael.  I've pasted Facebook's questions below, along with Plaintiffs' answers (which are highlighted).  Please let us know by the end of today whether Facebook will agree to accept service of the notice Plaintiffs withdrew in full.

Matt

1. How is service of a new 30(b)(6) notice regarding the FTC timely?  Service of the notice at this juncture comes after Judge Chabbria's June 30th cut-off for 30(b)(6) testimony (with specific enumerated exceptions not applicable here), which was just reaffirmed in the parties' recent stipulation concerning 30(b)(6) deadlines.  If Plaintiffs thought this was necessary, instead of waiting until after the July CMC with Judge Chhabria to serve the now withdrawn notice, why didn't Plaintiffs serve this notice or raise this issue earlier?

   Judge Chhabria's order that 30(b)(6) testimony be complete by June 30 was limited to certain topics in a single notice. Further, as Facebook notes, he identified exceptions to that deadline even as to topics in that notice.  Thus, while we understand Facebook to take the position that service of the FTC notice is improper based on the June CMC, we disagree. Regarding timing, discovery remains open and there is nothing improper about when Plaintiffs raised the issue.

2. The discovery protocol provides that each side is entitled to one 30(b)(6) deposition as of right.  Why is there good cause for Plaintiffs to now serve a third 30(b)(6) notice?

Good cause exists because the subject matter on which Plaintiffs seek testimony is highly relevant to the case.

3. Plaintiffs have long been aware of the FTC matters, have already served two 30(b) notices, and have taken dozens of depositions.  Why doesn't that constitute adequate opportunity to have already obtained evidence concerning the FTC actions and compliance efforts?

Plaintiffs seek, and believe they are entitled to, Facebook's testimony regarding the FTC complaints and compliance orders.

4. To the extent these issues are relevant, why aren't other more efficient and less burdensome methods of discovery (including fact witness depositions, interrogatories, and requests for admission) sufficient?  Why is Rule 30(b)(6) testimony necessary for these topics?  Moreover, many of Topic 2's enumerated subtopics substantially overlap with previously noticed topics on which Plaintiffs have already taken discovery.  Why are the noticed topics not duplicative of Plaintiffs' earlier 30(b)(6) topics?

Plaintiffs seek, and believe they are entitled to, Facebook's testimony regarding the FTC actions and compliance efforts.  The issues are not duplicative of prior topics. Indeed, Facebook, which has taken to communicating its understanding of the 30(b)(6) topics in advance of testimony, has not once identified the FTC complaints or consent orders as issues its designees are prepared to testify about.

1. To provide two representative (but non-exhaustive) examples:

1. Topic 2.E addresses "reports to the FTC regarding [Facebook's] compliance with the 2012" consent decree, but Plaintiffs have already taken a 30(b)(6) deposition of PricewaterhouseCoopers, the independent assessor that authored those reports.

PricewaterhouseCoopers' testimony is its own, and cannot be offered on behalf of Facebook. Corporate testimony from Facebook regarding its knowledge of the reports prepared by PwC is completely distinct from PwC's third-party perspective of these reports. Further, PwC's testimony confirmed, among other things, that Facebook (i) did not provide PwC with certain information it requested about the FTC's investigation in 2019, (ii) did not provide PwC with representations regarding the Privacy Program as requested, and (iii) made its own representations to the FTC about the biennial assessments performed by PwC.

2. Topic 2.B addresses "Facebook's compliance with" its "disclosure obligations to users," while previously noticed Topic 1.b addressed Facebook's "process for drafting, evaluating, approving, modifying, issuing and monitoring the effectiveness of the Statement of Rights and Responsibilities, Data Use Policies, Privacy Policies, disclosures, public statements, Facebook messages or posts by . . . any Facebook executive that concern: (i) the sharing of Users' Data or Information with Third Parties[ or] (ii) the use of Users' Data or Information by Third Parties."

The core of that topic addresses Facebook's process related to its disclosures to users. The FTC complaints and consent orders address numerous other issues.

2. What is the distinction that Plaintiffs believe exists that would render the more recently noticed topics not redundant of the previously noticed topics?

Plaintiffs have already substantially addressed the distinctions above.  However, Plaintiffs are not interested in arguing semantics. If Facebook is willing to concede that the topics in the proposed notice at issue are within topics already noticed, that is fine so long as Facebook makes a designee to testify on the aspects of the FTC complaints and orders Plaintiffs have identified in the separate proposed notice.

5. How would discovery targeting Facebook's understanding of the FTC's allegations and compliance efforts— which necessarily implicate discussions with counsel relating to interactions with the FTC and interpretation of the consent orders—not call for testimony that is largely protected by attorney-client privilege and/or the work-product doctrine?

Plaintiffs are not interested in privileged information, unless the privilege is waived or Facebook seeks to use the privileged information as a defense.  Rather, Plaintiffs are interested in the FTC's allegations in identified paragraphs and the specifics of Facebook's understanding of and compliance with the identified provisions of the consent orders.

6.  Regarding Topic 1, why are the FTC's allegations relevant?

The 2012 allegations are cited in Plaintiffs' complaint and, more generally, dovetail with Plaintiffs' allegations.  The 2019 allegations, filed after Plaintiffs' complaint, support the allegations in Plaintiffs' complaint.

7.  Regarding Topic 2, why is Facebook's compliance with FTC consent decrees relevant when there is no private right of action for failure to comply with a consent decree?  For instance, Plaintiffs' Topic 2.E seeks testimony concerning "Facebook's recordkeeping" in connection with "records Facebook is required to create" pursuant to the consent decrees.  Why is Facebook's recordkeeping pursuant to FTC consent decrees relevant to Plaintiffs' causes of action?

Among other things, the consent orders establish certain duties owed to users.  Plaintiffs' negligence claim incorporates those duties. Facebook's failure to comply with consent orders is a violation of its duties.

8.  Regarding Topic 2, you state that Plaintiffs "disagree" that "the Special Master's ruling regarding Protiviti documents forecloses testimony about the 2019 FTC . . . consent order."

1.  As noted below, we think that is an overly narrow reading of Special Master Garrie's earlier ruling, in which he held that issues relating to the "new, redesigned privacy policy that Facebook implemented in 2020, years after the relevant time period for this matter," are "unlikely to have much if any probative value" and therefore discovery concerning them would not be justified in light of the "require[d] amount of time and money" that it would necessitate.  Dkt. 886 ¶ 8.  Accordingly, we reiterate our request that you please explain the reasoning behind Plaintiffs' apparent belief that there is good cause for requiring 30(b)(6) testimony on Facebook's compliance with the 2020 consent decree?

As you note, Plaintiffs have provided an explanation. In addition, Facebook has identified the 2020 consent order as an affirmative defense. (Facebook's affirmative defense calls it the 2019 consent order, which refers to the date Facebook and the FTC agreed to its provisions; 2020 is the date is was entered. The parties are referring to the same provisions.)  Plaintiffs are entitled to discovery into Facebook's affirmative defenses. It is fine if Facebook disagrees. If so, Plaintiffs will move the Special Master for relief.

2.  Regardless, please explain why Special Master Garrie's ruling does not apply, at minimum, to Plaintiffs' Topic 2.E expressly seeking testimony regarding reports on Protiviti's assessments or Plaintiffs' Topic 2.F which relates to a provision of the 2020 consent decree without identifying any analogous provision of the 2012 consent decree?

The same answer applies.

9.  Both listed topics are followed by several enumerated subtopics.  Do Plaintiffs intend for the scope of the topics to be limited to the enumerated sub-topics?

1.  For instance, Topic 1.A does not reference paragraphs 1-9 or 50-63 of the 2011 Complaint—are those meant to be included within the scope of Topic 1's reference to "The allegations in the 2011 Complaint", or do Plaintiffs seek testimony only on the paragraphs that are specifically referenced?

Plaintiffs' enumerated subtopics are intended to identify the specific paragraphs they ask Facebook to prepare the designee to testify about.  If other paragraphs are implicated by that testimony, Plaintiffs reserve the right to ask about the other paragraphs.

2.  The same question applies to those portions of the 2019 complaint, 2012 consent decree, and 2020 consent decree that are not expressly enumerated.

The same answer applies.

10. How many hours of testimony do Plaintiffs seek on these topics?

Up to 7 hours, with the ability to seek more by agreement, by a showing of good cause, or if the Special Master decides on his own that Plaintiffs should get more.

---

**From:** Nadler, Michael <MNadler@gibsondunn.com>
**Sent:** Monday, August 8, 2022 8:29 AM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

Matt,

Following up on our correspondence of Friday, where Plaintiffs insisted on corresponding by email, please find below several questions we have concerning the withdrawn 30(b)(6) notice regarding FTC issues.  We look forward to Plaintiffs' written responses, which will help us further evaluate whether Facebook will object to the proposed deposition or will provide a corporate representative.

1. How is service of a new 30(b)(6) notice regarding the FTC timely?  Service of the notice at this juncture comes after Judge Chabbria's June 30th cut-off for 30(b)(6) testimony (with specific enumerated exceptions not applicable here), which was just reaffirmed in the parties' recent stipulation concerning 30(b)(6) deadlines.  If Plaintiffs thought this was necessary, instead of waiting until after the July CMC with Judge Chhabria to serve the now withdrawn notice, why didn't Plaintiffs serve this notice or raise this issue earlier?

2. The discovery protocol provides that each side is entitled to one 30(b)(6) deposition as of right.  Why is there good cause for Plaintiffs to now serve a third 30(b)(6) notice?

3. Plaintiffs have long been aware of the FTC matters, have already served two 30(b)(6) notices, and have taken dozens of depositions.  Why doesn't that constitute adequate opportunity to have already obtained evidence concerning the FTC actions and compliance efforts?

4. To the extent these issues are relevant, why aren't other more efficient and less burdensome methods of discovery (including fact witness depositions, interrogatories, and requests for admission) sufficient?  Why is Rule 30(b)(6) testimony necessary for these topics?  Moreover, many of Topic 2's enumerated subtopics substantially overlap with previously noticed topics on which Plaintiffs have already taken discovery.  Why are the noticed topics not duplicative of Plaintiffs' earlier 30(b)(6) topics?

   1. To provide two representative (but non-exhaustive) examples:

      1. Topic 2.E addresses "reports to the FTC regarding [Facebook's] compliance with the 2012" consent decree, but Plaintiffs have already taken a 30(b)(6) deposition of PricewaterhouseCoopers, the independent assessor that authored those reports.

      2. Topic 2.B addresses "Facebook's compliance with" its "disclosure obligations to users," while previously noticed Topic 1.b addressed Facebook's "process for drafting, evaluating, approving, modifying, issuing and monitoring the effectiveness of the Statement of Rights and Responsibilities, Data Use Policies, Privacy Policies, disclosures, public statements, Facebook messages or posts by . . . any Facebook executive that concern: (i) the sharing of Users' Data or Information with Third Parties[ or] (ii) the use of Users' Data or Information by Third Parties."

2. What is the distinction that Plaintiffs believe exists that would render the more recently noticed topics not redundant of the previously noticed topics?

5. How would discovery targeting Facebook's understanding of the FTC's allegations and compliance efforts—which necessarily implicate discussions with counsel relating to interactions with the FTC and interpretation of the consent orders—not call for testimony that is largely protected by attorney-client privilege and/or the work-product doctrine?

6. Regarding Topic 1, why are the FTC's allegations relevant?

7. Regarding Topic 2, why is Facebook's compliance with FTC consent decrees relevant when there is no private right of action for failure to comply with a consent decree?  For instance, Plaintiffs' Topic 2.E seeks testimony concerning "Facebook's recordkeeping" in connection with "records Facebook is required to create" pursuant to the consent decrees.  Why is Facebook's recordkeeping pursuant to FTC consent decrees relevant to Plaintiffs' causes of action?

8. Regarding Topic 2, you state that Plaintiffs "disagree" that "the Special Master's ruling regarding Protiviti documents forecloses testimony about the 2019 FTC . . . consent order."

    1. As noted below, we think that is an overly narrow reading of Special Master Garrie's earlier ruling, in which he held that issues relating to the "new, redesigned privacy policy that Facebook implemented in 2020, years after the relevant time period for this matter," are "unlikely to have much if any probative value" and therefore discovery concerning them would not be justified in light of the "require[d] amount of time and money" that it would necessitate.  Dkt. 886 ¶ 8.  Accordingly, we reiterate our request that you please explain the reasoning behind Plaintiffs' apparent belief that there is good cause for requiring 30(b)(6) testimony on Facebook's compliance with the 2020 consent decree?

    2. Regardless, please explain why Special Master Garrie's ruling does not apply, at minimum, to Plaintiffs' Topic 2.E expressly seeking testimony regarding reports on Protiviti's assessments or Plaintiffs' Topic 2.F which relates to a provision of the 2020 consent decree without identifying any analogous provision of the 2012 consent decree?

9. Both listed topics are followed by several enumerated subtopics.  Do Plaintiffs intend for the scope of the topics to be limited to the enumerated sub-topics?

    1. For instance, Topic 1.A does not reference paragraphs 1-9 or 50-63 of the 2011 Complaint—are those meant to be included within the scope of Topic 1's reference to "The allegations in the 2011 Complaint", or do Plaintiffs seek testimony only on the paragraphs that are specifically referenced?

    2. The same question applies to those portions of the 2019 complaint, 2012 consent decree, and 2020 consent decree that are not expressly enumerated.

10. How many hours of testimony do Plaintiffs seek on these topics?

Thanks,

Mike

**Michael Nadler**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2306 • Fax +1 212.817.9507
MNadler@gibsondunn.com • www.gibsondunn.com

---

**From:** Nadler, Michael <MNadler@gibsondunn.com>
**Sent:** Friday, August 5, 2022 2:41 PM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>

**Cc:** \*\*\* Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

Matt,

Key members of our team are not available today due to other commitments, including the Bella Leone deposition in this case.  We continue to believe that speaking on Monday would be more efficient and productive than emailing, but interpret your email of last night as declining our invitation to speak by phone.  Please let us know if that is not the case and we can find a time to speak.  Otherwise, we will plan to be in touch on Monday by email addressing substantive issues with your proposed notice.

As to the lone substantive issue we have discussed, Special Master Garrie's March 18th ruling was clear: issues relating to the "new, redesigned privacy policy that Facebook implemented in 2020, years after the relevant time period for this matter," are "unlikely to have much if any probative value" and therefore discovery concerning them would not be justified in light of the "require[d] amount of time and money" that it would necessitate.  Dkt. 886 ¶ 8.  In light of that, can you please explain the reasoning behind Plaintiffs' apparent belief that there is good cause for requiring 30(b)(6) testimony on Facebook's compliance with the 2020 consent decree?

Thanks,

**Michael Nadler**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2306 • Fax +1 212.817.9507
MNadler@gibsondunn.com • www.gibsondunn.com

---

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Friday, August 5, 2022 1:07 AM
**To:** Nadler, Michael <MNadler@gibsondunn.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** \*\*\* Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

[WARNING: External Email]

I'm sorry, Michael.  I misunderstood.  I thought Facebook was clear that it would not agree to put forward a designee to testify on the topics as written.

However, this is easily resolved. During the last discovery mediation, the Discovery Mediators made clear that meet and confers may take place via email.  Given the parties' schedules—the deposition tomorrow, the sanctions brief due Monday, the multiple depositions next week—and the short time remaining before the fact discovery cutoff, this is an opportune time to meet and confer by email.

We would like to serve a notice for corporate testimony that is identical to the issues that were set forth in the notice we withdrew. We disagree with Facebook's position, stated today, that the Special Master's ruling regarding Protiviti documents forecloses testimony about the 2019 FTC complaint and consent order. We also disagree with your characterization of the issues as overly broad or as an excessive number of topics.  Plaintiffs could would have been justified in serving a single, broader topic seeking testimony about the FTC investigations, complaints, and orders reflected on this FTC webpage: https://www.ftc.gov/legal-library/browse/cases-proceedings/092-3184-182-3109-c-4365-facebook-inc-matter. That would have encompassed the specific testimony we described, but also much more.  Instead, we limited the notice to specific paragraphs in the two complaints and two consent orders. These topics are well-within the scope of the case. That, in sum, is Plaintiffs' position.

Please let us know by the end of day tomorrow whether Facebook will agree to provide a designee to testify on those topics. (That should be more than enough time to get input from other members of your team, but if you need another day, just let us know.) If so, great—we'll re-serve the notice. If not, that's fine, too—we can ask the Special Master for permission to do so.

Thanks,
Matt

---

**From:** Nadler, Michael <MNadler@gibsondunn.com>
**Sent:** Thursday, August 4, 2022 9:06 PM
**To:** Matthew Melamed <mmelamed@bfalaw.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** RE: Facebook -- 30(b)(6) notice re FTC complaints and consent orders

Matt,

Thank you for agreeing to withdraw the procedurally deficient notice.

To be clear, however, our discussion focused on procedural issues, and we did not discuss the improperly noticed topics, with the sole exception that we pointed out Special Master Garrie has already ruled Facebook's compliance with the 2020 FTC consent decree irrelevant to this case because it postdates the events in question.  There was no discussion of the other topics.  Indeed, you expressly asked if Facebook would agree to consider today's meet-and-confer to satisfy all meet-and-confer requirements, and we said that it did not because there was no meaningful discussion of the proposed "matters for examination", which is what the parties must "confer [about] in good faith . . . in advance of a Party serving a Rule 30(b)(6) deposition notice." Dkt. 789 ¶ 4. You further asked us if other members of our team would need to be present for such a conversation, and we assured you that they would.  Facebook is willing—and Plaintiffs are required—to have that conversation.  It has not happened yet. If you would like to propose times that work for you on Monday to discuss (in light of tomorrow's deposition), we will endeavor to be as flexible as possible with scheduling that call.

**Michael Nadler**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2306 • Cell +1 347.978.3187
MNadler@gibsondunn.com • www.gibsondunn.com

**From:** Matthew Melamed <mmelamed@bfalaw.com>
**Sent:** Thursday, August 4, 2022 10:58 PM
**To:** Nadler, Michael <MNadler@gibsondunn.com>; Wallace, Brooke Myers <bwallace@gibsondunn.com>; Machin, Amanda C. <AMachin@gibsondunn.com>; Buongiorno, Matt <MBuongiorno@gibsondunn.com>
**Cc:** *** Service-FB-CA_MDL <Service-FB-CA_MDL@gibsondunn.com>; Lesley Weaver <lweaver@bfalaw.com>; Derek Loeser <dloeser@kellerrohrback.com>; Anne Davis <adavis@bfalaw.com>; Cari Laufenberg <claufenberg@kellerrohrback.com>; David Ko <dko@kellerrohrback.com>; Benjamin Gould <bgould@KellerRohrback.com>; Josh Samra <jsamra@bfalaw.com>
**Subject:** Facebook -- 30(b)(6) notice re FTC complaints and consent orders

[WARNING: External Email]

Counsel,

Thank you for informing us of your belief that Plaintiffs improperly served the 30(b)(6) motion seeking testimony on the FTC complaints and consent orders.  Plaintiffs withdraw the notice.

During today's meet and confer, we also discussed whether Facebook would be willing to produce a designee to testify about the issues set forth in the notice, and Facebook responded that it would not.  Thus, the parties have now met and conferred in good faith regarding the matters on which Plaintiffs seek testimony.

Plaintiffs will file a motion with the Special Master seeking permission to serve the 30(b)(6) notice on the FTC complaints and consent orders.

Thank you,
Matt

Matthew S. Melamed
Bleichmar Fonti & Auld LLP
555 12th Street, Suite 1600
Oakland, CA 94607
www.bfalaw.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# EXHIBIT 3

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3

 4   IN RE:  FACEBOOK, INC.,      MDL No. 2843

 5   CONSUMER USER PROFILE        Case No.

 6   LITIGATION                   18-md-02843-VC-JSC

     _____

 7   This document relates to:

 8   ALL ACTIONS

     _____

 9    **CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER**

10

11         ZOOM DEPOSITION OF PwC's 30(b)(6)

12      CORPORATE REPRESENTATIVE - CAROLYN HOLCOMB

13   (Reported Remotely via Video & Web Videoconference)

14       New York, New York (Deponent's location)

15               Tuesday, July 26, 2022

16                    Volume 1

17

18   STENOGRAPHICALLY REPORTED BY:

19   REBECCA L. ROMANO, RPR, CSR, CCR

20   California CSR No. 12546

21   Nevada CCR No. 827

     Oregon CSR No. 20-0466

22   Washington CCR No. 3491

23   JOB NO. 5244212

24

25   PAGES 1 - 261
```

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3

4    IN RE:  FACEBOOK, INC.,      MDL No. 2843

5    CONSUMER USER PROFILE        Case No.

6    LITIGATION                   18-md-02843-VC-JSC

7    _____

8    This document relates to:

9    ALL ACTIONS

10   _____

11

12

13

14          DEPOSITION OF CAROLYN HOLCOMB, taken on

15   behalf of the Plaintiffs, with the deponent located

16   in New York, commencing at

17   10:13 a.m., Tuesday, July 26, 2022, remotely

18   reported via Video & Web videoconference before

19   REBECCA L. ROMANO, a Certified Shorthand Reporter,

20   Certified Court Reporter, Registered Professional

21   Reporter.

22

23

24

25
```

Page  2

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
1                    APPEARANCES OF COUNSEL

2

3    (All parties appearing via Web videoconference)

4

5    For the Plaintiffs:

6         KELLER ROHRBACK L.L.P.

7         BY:  DAVID KO

8         Attorney at Law

9         1201 Third Avenue

10        Suite 3200

11        Seattle, Washington 98101

12        (206) 623-1900

13        dko@kellerrohrback.com

14   and

15        BLEICHMAR FONTI & AULD LLP

16        BY:  ANNE K. DAVIS

17        Attorney at Law

18        555 12th Street

19        Suite 1600

20        Oakland, California 94607

21        (415) 445-4003

22        adavis@bfalaw.com

23

24

25   /////
```

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1                    APPEARANCES OF COUNSEL

 2

 3    (All parties appearing via Web videoconference)

 4

 5    For Facebook, Inc.:

 6          GIBSON, DUNN & CRUTCHER LLP

 7          BY:  MICHAEL L. NADLER

 8          Attorney at Law

 9          200 Park Avenue

10          New York, New York 10166-0193

11          (212) 351-2356

12          mnadler@gibsondunn.com

13    and

14          BY:  EZRA BROWN

15          Attorney at Law

16          811 Main Street

17          Suite 3000

18          Houston, Texas 77002-6117

19          (346) 718-6676

20          ebrown@gibsondunn.com

21

22

23

24

25    /////
```

Page 4

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1              APPEARANCES OF COUNSEL(cont'd)

 2

 3   (All parties appearing via Web videoconference)

 4

 5   For PwC and the Deponent:

 6         KING & SPALDING

 7         BY:  MICHAEL R. PAUZE

 8         Attorney at Law

 9         1700 Pennsylvania Avenue, NW

10         Suite 900

11         Washington, D.C. 20006

12         (202) 737-0500

13         mpauze@kslaw.com

14   and

15         BY:  J. EMMETT MURPHY

16         BY:  EMILY T. CHEN

17         Attorneys at Law

18         1185 Avenue of the Americas

19         34th Floor

20         New York, New York 10036

21         (212) 556-2100

22         jemurphy@kslaw.com

23         echen@kslaw.com

24

25   /////
```

Page 5

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1              APPEARANCES OF COUNSEL(cont'd)

 2

 3    (All parties appearing via Web videoconference)

 4

 5         JAMS

 6         BY:  DANIEL B. GARRIE

 7         Special Master

 8         555 W. 5th Street

 9         32nd Floor

10         Los Angeles, California 90013

11         (213) 253-9706

12         dgarrie@jamsadr.com

13

14

15    ALSO PRESENT:

16         Ian Chen, Associate General Counsel,

17    Litigation and Regulatory at Meta

18         John Macdonell, Videographer

19         Brendan Snodgrass, Litigation and Enforcement

20    Attorney, PwC

21         Anne-Marie Vitale, Partner at PwC

22

23

24

25    /////
```

Page 6

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

1    heart of the privacy program; is it not?                    12:16:06

2         A.   It is one of the components that Facebook

3    was required to design the program to cover.

4         Q.   And it was not just one of the

5    components, but it's a primary feature, an                   12:16:26

6    important feature of Facebook's comprehensive

7    privacy program, correct?

8              MR. NADLER:  Objection.  Vague.

9              THE DEPONENT:  I'd just say it's one of

10   the two requirements.                                        12:16:39

11        Q.   (By Mr. Ko)  And how would you describe

12   its importance to Facebook's privacy program?

13        A.   I would say it's a component of the

14   program.

15        Q.   PwC's authority to review and evaluate             12:17:07

16   Facebook's privacy program was based on this

17   consent decree and no other source, correct?

18        A.   Correct.

19        Q.   And it's also fair to say that the

20   publicly known investigation that's referred to in          12:17:24

21   the 2019 report by PwC was in connection with the

22   original 2012 consent decree, correct?

23        A.   I didn't quite follow that.

24        Q.   Well, the -- the -- fair enough.

25             Go back to -- I'm sorry to jump around so          12:17:44

                                                          Page 91

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1    much, but let's focus on the 2019 PwC report.        12:17:47

 2            In that report, at the bottom of page

 3    5 that we discussed a moment ago, there's a

 4    reference made to "the publicly reported

 5    investigation by the FTC."                           12:18:16

 6            Do you recall that?

 7       A.   Yes.

 8       Q.   And that publicly reported

 9    investigation -- my question was that publicly

10    reported investigation by the FTC relates to the     12:18:25

11    original 2012 consent decree agreed upon by

12    Facebook and the FTC, correct?

13            MR. NADLER:  Objection.  Vague.

14            THE DEPONENT:  My understanding was that

15    that investigation was an investigation of           12:18:45

16    Facebook's privacy program.

17       Q.   (By Mr. Ko)  And that privacy program was

18    the same comprehensive privacy program that

19    Facebook was required to create pursuant to the

20    2012 consent decree, correct?                        12:18:59

21       A.   I just don't know the details of the

22    investigation, so I'm just not sure what -- what

23    all they might have been discussing or

24    investigating, other than knowing it was a privacy

25    program.                                             12:19:15
```

Page 92

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1        Q.   Fair enough.  And I'm not asking you to      12:19:18

 2   step into the shoes of the FTC.

 3             But in terms of your and PwC's

 4   understanding of this investigation, did it relate

 5   to or did it not relate to the original 2012          12:19:30

 6   consent decree?

 7             MR. NADLER:  Objection.  Vague.

 8             MR. PAUZE:  David, I think that's been

 9   asked and answered now.

10             But you can go again.                       12:19:41

11             THE DEPONENT:  Related to the privacy

12   program that Facebook had created, so I -- I just

13   know that's what the FTC was asking about.

14        Q.   (By Mr. Ko)  And that privacy program

15   that Facebook had created, they created it pursuant   12:19:58

16   to the FTC consent decree in 2012, correct?

17             MR. PAUZE:  Objection.  Asked and

18   answered.

19             You can answer again.

20             THE DEPONENT:  I think Facebook had a       12:20:11

21   privacy program before they had an order, so that's

22   the reason I distinguish that.

23        Q.   (By Mr. Ko)  Sure.  Fair enough.

24             The comprehensive privacy program that

25   was identified in the consent decree in 2012, was     12:20:25
```

Page 93

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | there a separate privacy program that PwC was aware | 12:20:33 |
| 2 | of throughout the relevant time period? | |
| 3 |     A.   No. | |
| 4 |         MR. NADLER:  Objection.  Vague. | |
| 5 |     Q.  (By Mr. Ko)  There was one privacy | 12:20:41 |
| 6 | program that existed throughout the relevant time | |
| 7 | period that PwC was involved in providing | |
| 8 | independent assessment reports to Facebook, | |
| 9 | correct? | |
| 10 |     A.   I'm not aware of any other. | 12:20:52 |
| 11 |     Q.   So as we discussed a moment ago or a few | |
| 12 | minutes ago, Facebook did not provide you with any | |
| 13 | details regarding this publicly reported | |
| 14 | investigation by the FTC related to the Facebook | |
| 15 | privacy program, correct? | 12:21:27 |
| 16 |     A.   Yes, correct. | |
| 17 |     Q.   And -- and PwC's charter and retention by | |
| 18 | Facebook was to audit and evaluate the privacy | |
| 19 | program, correct? | |
| 20 |     A.   Was to assess it, yes. | 12:21:43 |
| 21 |     Q.   Assess. | |
| 22 |         And despite the fact that PwC's charter | |
| 23 | was to assess Facebook's privacy program, Facebook | |
| 24 | did not provide PwC with any details regarding the | |
| 25 | FTC investigation, correct? | 12:22:01 |

Page 94

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

```
 1       A.   Yes.                                  12:22:10

 2       Q.   Does that make any sense to you?

 3       A.   I'm not sure whether -- I think my only

 4  answer is that they didn't provide it.  We asked

 5  for it.                                         12:22:23

 6       Q.   And you asked for it because it was

 7  obviously related to your assessment of the privacy

 8  program, correct?

 9       A.   Yes.

10       Q.   But Facebook withheld information from  12:22:33

11  PwC about the privacy program that PwC was retained

12  to assess?

13            MR. PAUZE:  Objection.

14            MR. NADLER:  Objection.  Misstates

15  testimony.                                      12:22:44

16            MR. PAUZE:  Objection.  David, I think

17  we've covered this grounds.  Asked and answered.

18            But you can answer yet again.

19            THE DEPONENT:  They withheld information

20  about the FTC's information.                    12:22:55

21       Q.   (By Mr. Ko)  And just so I get my

22  question clearly on the record.

23            Facebook specifically withheld

24  information from PwC about the privacy program that

25  PwC was retained to assess?                     12:23:11
```

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

1          MR. NADLER:  Objection.  Asked and          12:23:14

2     answered and misstates her testimony.

3          MR. KO:  Please allow me to finish my

4     question.

5          Q.  (By Mr. Ko)  Facebook withheld          12:23:23

6     information from PwC about the privacy program that

7     PwC was retained to assess, correct?

8          MR. NADLER:  Objection.  Misstates her

9     testimony.  Asked and answered.

10          THE DEPONENT:  No.  I would say the          12:23:42

11     information they did not provide was about the

12     investigation.

13          Q.  (By Mr. Ko)  Okay.  So was there certain

14     information about its privacy program that Facebook

15     did, in fact, disclose to PwC during this time          12:23:53

16     period?

17          A.  You said was there information about the

18     privacy program that they did disclose?

19          Q.  Actually, let's turn to the specific

20     assertions.  That'll probably be helpful.          12:24:12

21          In connection with topic 3 --

22          MR. PAUZE:  Hey, David, hold on a second.

23     I think I lost my connection here.

24          Give me a minute.

25          MR. KO:  You did freeze there for a          12:24:27

Page 96

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

1        I, Rebecca L. Romano, a Registered

2   Professional Reporter, Certified Shorthand

3   Reporter, Certified Court Reporter, do hereby

4   certify:

5        That the foregoing proceedings were taken

6   before me remotely at the time and place herein set

7   forth; that any deponents in the foregoing

8   proceedings, prior to testifying, were administered

9   an oath; that a record of the proceedings was made

10  by me using machine shorthand which was thereafter

11  transcribed under my direction; that the foregoing

12  transcript is true record of the testimony given.

13       Further, that if the foregoing pertains to the

14  original transcript of a deposition in a Federal

15  Case, before completion of the proceedings, review

16  of the transcript [X] was [ ] was not requested.

17       I further certify I am neither financially

18  interested in the action nor a relative or employee

19  of any attorney or any party to this action.

20       IN WITNESS WHEREOF, I have this date

21  subscribed my name this 29th day of July, 2022.

22

23

24       Rebecca L. Romano, RPR, CCR

25       CSR. No 12546

Page 257

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

1    MICHAEL R. PAUZE. Attorney at Law

2    mpauze@kslaw.com

3                                          July 29, 2022

4    RE: Facebook, Inc. Consumer Privacy User Profile Litigation

5    JULY 26, 2022, CAROLYN HOLCOMB, JOB NO. 5244212

6

7    The above-referenced transcript has been

8    completed by Veritext Legal Solutions and

9    review of the transcript is being handled as follows:

10   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

11      to schedule a time to review the original transcript at

12      a Veritext office.

13   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

14      Transcript - The witness should review the transcript and

15      make any necessary corrections on the errata pages included

16      below, notating the page and line number of the corrections.

17      The witness should then sign and date the errata and penalty

18      of perjury pages and return the completed pages to all

19      appearing counsel within the period of time determined at

20      the deposition or provided by the Code of Civil Procedure.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.

                                              Page 258

CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

1    xx Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127