# Exhibit F

| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*) | Lesley E. Weaver (SBN 191305) |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| 1201 Third Avenue, Suite 3200 | 555 12th Street, Suite 1600 |
| Seattle, WA 98101 | Oakland, CA 94607 |
| Tel.: (206) 623-1900 | Tel.: (415) 445-4003 |
| Fax: (206) 623-3384 | Fax: (415) 445-4020 |
| dloeser@kellerrohrback.com | lweaver@bfalaw.com |

*Plaintiffs' Co-Lead Counsel*

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER ON PLAINTIFFS' MOTION TO COMPEL ADDITIONAL PRODUCTION OF QUIPS, TASKS, AND GROUPS**<br><br>Judge: Hon. Vince Chhabria<br>Special Master Daniel Garrie<br><br>JAMS Ref. No.: 1200058674 |

Plaintiffs file this motion for reconsideration of the Special Master's Order on Plaintiffs' Motion to Compel Additional Production of Quips, Tasks, and Groups. Plaintiffs believe the order unfairly punishes them for Facebook's refusal since 2020 to talk about productions from these sources of relevant documents. The Order ensures that Facebook will benefit from what Plaintiffs believe is sanctionable behavior, as reflected in their supplemental sanctions brief filed with the Court.

The relief sought in Plaintiffs' motion, reflected in the Order at ¶ 5, was reasonable and proportionate to the litigation. Quips, Tasks, and Facebook/Workplace Groups are sources of documents identified as relevant sources of information at the nascent stage of discovery. As an exhibit to their motion, Plaintiffs attached their proposal regarding search strings, RFPs, and other sources of ESI from November 4, 2020. Ex. 5. That proposal reflected that *Facebook* had identified "Quip," "Internal Tasks," and "FB Workplace Groups" a "sources of relevant ESI for which it has not proposed that search terms be applied." *Id.* at 3. Plaintiffs therefore proposed that Facebook "provide a proposal for collecting and producing responsive information from" these sources by November 20, 2020. *Id.* Facebook refused to do so.

Nor did it do so after that. Plaintiffs sought to mediate the production of Quips, Tasks, and Facebook/Workplace Groups with the Discovery Mediators. On April 30, 2021, Plaintiffs submitted a statement to the Discovery Mediators stating that "Facebook refuses to discuss the collection of non-email, non-chat ESI," including "Quip, Internal Tasks," and "FB Workplace Groups." Ex. 1 at 3. Nevertheless, Facebook continued its refusal to engage in those discussions. On August 13, 2021, Plaintiffs again asked to mediate Facebook's failure to discuss the "[p]roduction of non-custodial ESI, including . . . Tasks, Quip, [and] Walls from relevant Facebook Groups." Ex. 2. at 1. Again, Facebook refused to engage.

Finally, as the Special Master is well aware, the parties addressed the issue repeatedly during weekly meet and confers, with Facebook trickling out incomplete, often contradictory information. As reflected in mediation trackers submitted to the Special Master in his role as one of the Discovery Mediators, Facebook offered to provide a letter explaining its collection and production process for Quips, Tasks, and Facebook/Workplace Groups. But Facebook didn't provide the letter for months, and when it did, the description was wafer thin. *See* Ex. 6. Facebook stated that the documents had been collected based on reasonable and diligent investigations, but said next to nothing about what those investigations had entailed. *Id.*

In response to Plaintiffs' motion, Facebook has foisted its burden onto Plaintiffs. Tell us what you're missing, it said, and we'll look for it. *See* Facebook's Opposition at 2 ("Given Facebook's substantiated efforts, to justify a further search, Plaintiffs bear the burden to provide concrete evidence pointing to the existence of missing documents.") (quotation marks and citation omitted). But the "substantiated efforts" were not discussed with Plaintiffs. This violated the ESI protocol, which required the parties to "meet and confer concerning search methodologies" and "engage in a cooperative, iterative process to ensure relevant, responsive documents are likely discovered in any ESI search." ECF No. 416 at 5, 6.

Moreover, it is clear that Facebook's "substantiated efforts" were insufficient. As Plaintiffs' motion pointed out, more than 38,000 documents reference a Quip, but only about 3,500

were produced. Plaintiffs' Motion at 1. Nearly every deposition has been impeded by Facebook failure to produce relevant Quips or Tasks. The Order notes Facebook's contention that Plaintiffs failed to substantiate the alleged gaps in Facebook's production, having not identified the probative documents that have not been produced and not cataloguing each of the 38,000 references to Quip in produced documents. Order at ¶ 4. This is the upside down. Plaintiffs cannot identify what they don't have. That's why collection and review protocols are so important. Even so, Plaintiffs' supplemental sanctions brief identifies examples of highly probative Quips that do not appear to have been produced. ECF No. 984 at 31–32 (referencing Exs. 123, 124, and 139).

However, because Facebook successfully ran the clock down before Plaintiffs could brief the issue, Plaintiffs acknowledge the time remaining before the fact discovery cutoff is insufficient for Facebook to conduct a full and complete collection and review of Quips, Tasks, and Facebook/Workplace Groups. Having delayed so long, it is now too late for Facebook to do what it should have started doing years ago within the remaining time.

That is why Plaintiffs sought leave to file a reply. As a compromise, they wanted to ensure that all Quips or Tasks referenced in any deposition exhibit were produced, whether or not Plaintiffs specifically identified the missing document and asked for its production. And Plaintiffs wanted to ensure that Facebook did a full collection and review of the Quips and Tasks associated with just 14 key custodians out of 83. This is a substantially less burdensome ask than Plaintiffs made in their opening brief, and—frankly—a substantially smaller collection and review than Plaintiffs believe appropriate and proportionate to the needs of the case.

Yet the Order denied even that compromise. Again, it credited Facebook's contention that Plaintiffs didn't provide evidence showing specific deficiencies in the production of Quips or Tasks from these individuals. *Id.*, ¶¶ 8, 10. Again, this burden shifting is improper. By analogy, it is as if Facebook produced a smattering of email based on unspecific collection methods such as "interviews with knowledgeable persons" and the "collection of [email] accounts for document custodians who identified [email] as a potentially relevant data source," (*see* Ex. 6 at 1 (quotes from Facebook's letter explaining its collection of Quips)), and then, when Plaintiffs asked for a more complete collection based on a transparent process, Facebook asserted that such a collection was improper because Plaintiffs hadn't identified specific emails that were missing.

Plaintiffs ask the Special Master to reconsider the Order and grant the relief Plaintiffs sought in their reply. First, Facebook should produce all Tasks or Quips referenced in any exhibit marked during a deposition in this case. This should be an ongoing obligation until fact depositions are complete. Second, Facebook should produce all responsive Tasks or Quips to which Mark Zuckerberg, Sheryl Sandberg, Javier Olivan, Andrew Bosworth, Chris Cox, Ime Archibong, Eddie O'Neil, Allison Hendrix, Simon Cross, Eugene Zarakhovsky, Erin Egan, Vladimir Federov, or Konstantinos Papamiltiadis were subscribers. This is much less than is proportional to the needs of the case, but reflects the reality that fact discovery is almost over.

| | |
|---|---|
| Dated: August 20, 2022 | Respectfully submitted, |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| By:  */s/ Derek W. Loeser* <br>         Derek W. Loeser | By:  */s/ Lesley E. Weaver* <br>         Lesley E. Weaver |

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
Emma M. Wright (admitted *pro hac vice*)
Daniel Mensher (admitted *pro hac vice*)
Michael Woerner (admitted *pro hac vice*)
Matthew Gerend (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com
ewright@kellerrohrback.com
dmensher@kellerrohrback.com
mwoerner@kellerrohrback.com
mgerend@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of August, 2022, at Oakland, California.

                */s/ Lesley E. Weaver*
                Lesley E. Weaver