# Exhibit H

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION, <br><br> This document relates to: <br><br> ALL ACTIONS | **MDL NO. 2843** <br><br> CASE NO. 3:18-MD-02843-VC-JSC <br><br> HON. VINCE CHHABRIA <br> HON. JACQUELINE SCOTT CORLEY <br> COURTROOM 4 – 17TH FLOOR <br> SPECIAL MASTER, DANIEL GARRIE, ESQ. <br><br> **AMENDED ORDER ON PLAINTIFFS' MOTION TO COMPEL ADDITIONAL PRODUCTION OF QUIPS, TASKS, AND GROUPS** |

1. Pending before the Special Master is Plaintiffs' Motion to Compel Additional Production of Quips, Tasks, and Groups.

**BACKGROUND**

2. On July 22, 2022, after a series of meet and confers between the parties, Facebook provided a letter to Plaintiffs describing the steps taken to collect Quips, Tasks, and Groups.[1]

3. On August 5, 2022, Plaintiffs filed the present motion, in which Plaintiffs sought an order from the Special Master compelling Facebook (1) to produce all non-privileged Quips referenced in documents produced to Plaintiffs; and to collect all Quips associated with custodians whose Quips were previously identified by custodial interview, run the previously identified search strings for each such custodian against their collected Quips, and produce all non-privileged Quips surfaced by the search strings; (2) to run all of the parties' previously identified search strings against all documents in the Task repository and produce all nonprivileged Tasks surfaced by the search strings; and (3) to run all of the parties' previously identified search strings against all documents in the Workplace system and produce all nonprivileged conversations surfaced by the search strings. See Exhibit A (Plaintiffs' Motion). Plaintiffs argued that the above additional production is necessary because Facebook's July 22, 2022 letter "provided enough information to confirm that Facebook's processes for collection and production were nowhere near proportionate to the needs of the case." Id. at 1.

4. On August 12, 2022, Facebook submitted their opposition in which they argue that Facebook's collection and production of Quips, Tasks, and Groups was reasonable and Plaintiffs' requested relief is neither reasonable nor proportional. See Exhibit B (Facebook's Opposition). Facebook described the processes by which Quips, Tasks, and Groups were collected and produced, citing to declarations from Ricardo Brums (Forensic Technology Lead on Facebook's eDiscovery &

---

[1] Quips, Tasks, and Groups are tools Facebook employees use internally to collaborate on documents and communicate about company matters.

**AMENDED ORDER ON PLAINTIFFS' MOTION TO COMPEL ADDITIONAL PRODUCTION OF QUIPS, TASKS, AND GROUPS**

Information Governance team) and Mark Clews (Senior Managing Director of Facebook's vendor Ankura Consulting's Data and Technology Practice):

> For MDL custodians who identified Quip as a potentially relevant data source, all Quips associated with their accounts were identified and either reviewed with the custodians to identify and collect potentially relevant Quips or were collected in full. (*Id.* ¶ 5.) For MDL custodians who confirmed that Tasks were linked to their email, Tasks were collected through email. (*Id.* ¶ 13.) For MDL custodians who did not confirm that their Tasks were linked to their email, Tasks were collected from the Tasks system. (*Id.*) For MDL custodians who identified Workplace groups as a potentially relevant data source, Workplace groups that they created or had access to were identified and reviewed with the custodians to identify and collect potentially relevant Workplace groups. (*Id.* ¶ 19.) Almost 60,000 documents were produced from Quips, Tasks, and Workplace groups. (Clews Decl. ¶ 9.) See Exhibit B, at 2.

Facebook also argues that Plaintiffs failed to substantiate the alleged gaps in Facebook's production that warrant the relief Plaintiffs seek. Id. at 2 ("Plaintiffs cite to a handful of relevant and responsive Quips, Tasks, and Groups to claim that there must be more "probative" documents that have not been produced. […] Plaintiffs also point to the number of "references" to Quips in produced documents, but that says nothing about the uniqueness of the references or content, or relevance of the documents referencing them."). Facebook agreed to produce individually identified Quips, Tasks, and Groups.

5. With leave from the Special Master, Plaintiffs submitted a reply to Facebook's opposition in which Plaintiffs changed their requested relief to production of (1) all responsive Tasks or Quips where key leaders and decision makers such as Mark Zuckerberg, Sheryl Sandberg, Javier Olivan, Andrew Bosworth, Chris Cox, Ime Archibong, Eddie O'Neil, Allison Hendrix, Simon Cross, Eugene Zarakhovsky, Erin Egan, Vladimir Federov, and Konstantinos Papamiltiadis are subscribers; and (2) all Tasks or Quips referenced in an exhibit marked during a deposition in this case. See Exhibit C (Plaintiffs' Reply).

6. With leave from the Special Master, Facebook submitted a surreply in which Facebook

**AMENDED ORDER ON PLAINTIFFS' MOTION TO COMPEL ADDITIONAL PRODUCTION OF QUIPS, TASKS, AND GROUPS**

argues that (1) Plaintiffs' reply should be stricken because "Plaintiffs incorrectly represented that Facebook had not offered to search for and produce links to Quips, Tasks, and Workplace groups, then sand-bagged Facebook with an entirely different request for relief than the motion demanded"; (2) Plaintiffs' reply failed to show that the original collections were unreasonable; and (3) Plaintiffs fail to establish that collection of all responsive Quips and Tasks from 11 specified individuals is proportional or likely to yield unique, relevant documents. See Exhibit D (Facebook's Surreply). Facebook reiterated that Facebook agreed to produce requested Quips and Tasks referenced in deposition exhibits. Id.

7. On August 18, 2022, the Special Master issued an Order on Plaintiffs' Motion to Compel Additional Production of Quips, Tasks, and Groups. See Exhibit E.

8. On August 20, 2022, Plaintiffs filed a Motion for Reconsideration of the Order on Plaintiffs' Motion to Compel Additional Production of Quips, Tasks, and Groups. See Exhibit F (Plaintiffs' Motion for Reconsideration). Among other things, Plaintiffs argue that Facebook's collection and production of Quips was insufficient because there are references in previously produced documents to probative Quips that have not been produced. Id. Plaintiffs support this assertion by referencing Plaintiffs' Supplemental Brief in Support of Sanctions in which Plaintiffs identify three examples of probative Quips referenced in previously produced documents where the Quips were not produced. See Exhibit G (Plaintiffs' Supplemental Brief in Support of Sanctions) at 31-32. For example, Plaintiffs reference Exhibit 123 to their Supplemental Brief in Support of Sanctions, which is an April 2018 Quip titled "Policy H1 2018 Quip of Quips" that references 23 other Quips. While Plaintiffs note that they were able to locate some of the referenced Quips, Plaintiffs state that many of the Quips referenced in this document do not appear to have been produced, including "CA [Cambridge Analytica] Updates," "Cambridge Analytica General," "Cambridge Analytica Numbers [April 4]," "CubeYou, YouAreWhatYouLike, Cambridge University [April 7]," and "Privacy Improvements Over Time." See CA-MDL-META 0000163270; Exhibit G (Plaintiffs' Supplemental Brief in Support of Sanctions) at 32.

**AMENDED ORDER ON PLAINTIFFS' MOTION TO COMPEL ADDITIONAL PRODUCTION OF QUIPS, TASKS, AND GROUPS**

This is just one of many documents referencing Quips where Plaintiffs claim the Quips have not been produced. See Exhibit G at 31 ("Facebook employees frequently link to Quips in produced documents. Despite their obvious relevance to this case, however, the overwhelming majority of Quips identified in the documents do not appear to have been produced.").

## FINDINGS

9. Special Master Garrie finds that Plaintiffs have demonstrated that Facebook's production of Quips is deficient such that additional collection and review is likely to result in identifying additional unique and relevant Quips and Tasks. Once a reasonable search has been performed, it is the moving party's burden to identify evidence demonstrating a specific deficiency. See *In re: Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003); *Winn-Dixie Stores v. E. Mushroom Mktg. Coop.*, 2020 WL 3498161, at *4 (E.D. Pa. June 29, 2020); *Uschold v. Carriage Svcs.*, 2019 WL 8298261, *4 (N.D. Cal. Jan. 22, 2019) ("to be both relevant and proportional to the needs of the case, a party seeking [discovery on discovery] 'must show a specific deficiency in the other party's production'"). The Special Master finds that Plaintiffs have provided evidence demonstrating that there are specific deficiencies in Facebook's production of Quips. As noted in paragraph 8 above, Plaintiffs cited three examples of produced documents referencing Quips that do not appear to have been produced. See Exhibit G at 31-32. The Special Master finds that these deficiencies demonstrate that Facebook's processes for collecting and reviewing Quips and Tasks likely resulted in relevant Quips and Tasks not being produced.

10. The Special Master finds that Facebook has agreed to produce requested Quips and Tasks referenced in deposition exhibits.

## ORDER

11. No later than September 6, 2022, Facebook is to produce all relevant, unique, and non-

privileged Tasks and Quips where Mark Zuckerberg, Sheryl Sandberg, Javier Olivan, Andrew Bosworth, Chris Cox, Ime Archibong, Eddie O'Neil, Allison Hendrix, Simon Cross, Eugene Zarakhovsky, Erin Egan, Vladimir Federov, or Konstantinos Papamiltiadis are subscribers.

IT IS SO ORDERED.

August 23, 2022

_____
Daniel Garrie
Discovery Special Master