| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*) | Lesley E. Weaver (SBN 191305) |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| 1201 Third Avenue, Suite 3200 | 555 12th Street, Suite 1600 |
| Seattle, WA 98101 | Oakland, CA 94607 |
| Tel.: (206) 623-1900 | Tel.: (415) 445-4003 |
| Fax: (206) 623-3384 | Fax: (415) 445-4020 |
| dloeser@kellerrohrback.com | lweaver@bfalaw.com |

*Plaintiffs' Co-Lead Counsel*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843 <br> Case No. 18-md-02843-VC |
| This document relates to: <br><br> ALL ACTIONS | **PLAINTIFFS' [PROPOSED] REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF REGARDING FEES AND COSTS SOUGHT AS SANCTIONS** <br><br> Judge: Hon. Vince Chhabria <br> Courtroom: 4, 17th Floor |

Plaintiffs briefly discuss why their requested fees are appropriate, contrary to what Facebook asserts in its response to Plaintiffs' supplemental brief on fees and costs.

Plaintiffs note at the outset that the *de minimis* errors that Facebook has found do not call the integrity of Plaintiffs' underlying billing practices into question. Nevertheless, Plaintiffs take these errors extremely seriously, and are submitting corrected spreadsheets *in camera*, bringing the total amount of fees sought for discovery misconduct from $1,784,639.50 to $1,773,042.50, a difference of 0.6%.

A. **Contrary to Facebook's assertion, Plaintiffs stated that they would seek fees incurred for seeking sanctions.**

Facebook complains that Plaintiffs had never "so much as *hinted*" that they were seeking fees for time spent seeking sanctions. Resp. to Pls.' Suppl. Br. at 19 (Dkt. 1083-4). This is untrue. Plaintiffs informed Facebook in their initial sanctions filing that they intended to seek fees incurred on the sanctions motion. *See* Joint Decl. of Derek W. Loeser and Lesley E. Weaver in Supp. of Pls.' Mot. for Sanctions at 3 (Dkt. 873-5) ("These totals do not include fees incurred on this motion, which Plaintiffs will include in a subsequent filing.").

B. **The inaccuracies Facebook's expert identifies do not call into question the accuracy or integrity of Plaintiffs' underlying billing.**

Facebook's expert points to two kinds of error that he says call into question the reliability of Plaintiffs' billing.

The first is that Plaintiffs billed for discovery mediations and hearings that supposedly never occurred. That is simply wrong. Rather, five entries were misdated by one or two days. This means that there was either a clerical error in entering the time or an error in transposing the time to an Excel file. This does *not* show that Plaintiffs billed time for discovery mediations or hearings that never occurred. In other words, it does not call into question the substantive accuracy of Plaintiffs' billing. This table discusses each of the five entries:

| Date of Entry | Hours Billed | Notes |
|---|---|---|
| 6/12/21 | 1.6 | This entry relates to what Judge Andler called a "Zoom session" held on June 11, not June 12. |
| 6/13/21 | 3 | This entry relates to a mediation session on June 11, not June 13. |

| 8/19/21 | 4.2 | This entry relates to a hearing on August 18, not August 19. |
| 8/21/21 | 4.2 | This entry relates to a hearing on August 18, not August 21. |
| 3/11/22 | 2.5 | This entry relates to a hearing on March 9, not March 11. |

Second, Facebook's expert points to errors in the calculation of fees. He is correct that there were errors in 12 time entries out of the 1,800 entries submitted. Those errors totaled $11,597, or about 0.6% of the overall fees sought. And the errors, while regrettable, do not call into question the accuracy or integrity of Plaintiffs' billing.

The inaccuracies come from errors in the spreadsheet formula applied to those entries. The expert identifies four errors in Keller Rohrback's entries. Each of the entries concern a single discovery mediation session. Because multiple topics were mediated at this session, Keller Rohrback apportioned the original billing entries to reflect time spent only on sanctions-related issues. That is, the *individual* entries are limited to compensable time only. Unfortunately, Plaintiffs erred in calculating *total* hours by using the original billing entries, rather than the apportioned time—the time that was spent on the sanctions-related issues. This is the source of the error. It comes solely from Plaintiffs' adjustment of billing entries for the purpose of seeking sanctions, rather than any inaccuracy in the underlying billing.

The inaccuracies in Bleichmar Fonti & Auld's calculations also stemmed from sanctions-related adjustments of time. However, these inaccuracies actually resulted in *underbilling*: rather than seeking $6,499 for the entries in question, Plaintiffs sought $3,251. Most importantly, the errors in each of the eight entries are due to Plaintiffs' diligent efforts to identify only the portion of the total time in each entry that related to sanctionable misconduct. Unfortunately, instead of multiplying the sanctions-related time by the billing rate, it was multiplied by the lodestar amount for the entry's original unadjusted time. To illustrate, one entry reflected that that an attorney billed 0.5 hours, only 0.3 of which was sanctions-related. Instead of multiplying 0.3 by the attorney's billing rate, Plaintiffs mistakenly multiplied 0.3 by the unadjusted lodestar figure for the entry. This error caused underbilling when the entry was less than one hour, and caused overbilling when the entry was more than one hour. The error does not reflect any problem with underlying record-keeping. Plaintiffs regret these errors and will not replicate them.

**C.    To argue that Plaintiffs seek excessive fees, Facebook misrepresents Plaintiffs' billing records.**

Facebook also argues that the fees Plaintiffs seek are excessive. The centerpiece of this argument are examples of what Facebook calls "inflat[ed]" billing or "overstaffing." Resp. to Pls.' Suppl. Br. at 22–23. At best, Facebook's descriptions of Plaintiffs' billing records do not supply the context necessary to see why the billing was reasonable. At worst, the descriptions give an outright misleading account of the legal work. Below, Plaintiffs summarize what is wrong with each of Facebook's descriptions.

*30(b)(6) deposition on February 23, 2021.* Facebook criticizes Plaintiffs for having six lawyers bill for this deposition, but these entries were reasonable. This was the first deposition in the case and was the culmination of more than a year of disputes, months of briefing, and three orders by Judge Corley (Dkts. 557, 588, 602) about Named Plaintiffs' data. It was the first opportunity Plaintiffs had to probe Facebook, rather than its attorneys, about the types of user data Facebook collected and how that data was used. The topic was exceedingly complex, particularly at this early stage when the information asymmetry between the parties was at its peak. The deposition had also been preceded by a multitude of meet-and-confer sessions with Facebook and extensive work with consulting experts on user-data issues, with which each of the six billing lawyers had been involved. These lawyers assisted the deposing attorney by supplying questions via text and during breaks or participating in substantive meetings during the breaks about further lines of questioning that were informed by the testimony. All of this said, Facebook had four attorneys (including in-house counsel) present at this deposition, and Plaintiffs would be willing in this instance to bill for the same number should the Court believe that is appropriate.

*Discovery mediation sessions in 2021 generally.* Several of Facebook's examples concern discovery mediation sessions, which began in April 2021. As with all of their entries, Plaintiffs carefully reviewed their entries for these sessions and estimated the portion of the time related to ADI and Named Plaintiff data.

Hanging over all of these sessions was the imperative need to make some progress in a discovery process that had gone seriously awry. The sessions were thus of critical importance.

The billing attorneys' attendance at these sessions was necessary, as multiple attorneys from both sides attended these sessions and were often called upon to provide a broad range of information to the mediators and opposing counsel. For that reason, lawyers with knowledge of different aspects of this case were needed. Plaintiffs could not risk impeding progress in discovery, which was stalled, by not having lawyers on hand who could respond to Facebook's arguments and the mediators' questions.

*April 21, 2021 discovery mediation.* This was the very first substantive discovery mediation (the first session was April 15, but it was largely procedural and used to set an agenda for the all-day session). It is therefore understandable that all primary litigating attorneys for both parties attended, which they did.

*April 30, 2021 discovery mediation.* This session also lasted a full day, and not all attorneys who attended were present for its entirety. *See* J. Decl. of Derek W. Loeser and Lesley E. Weaver Regarding Fees and Costs (Dkt. 1080), Ex. 3 at 1.

*May 7, 2021 discovery mediation.* The hours that Facebook says were billed for *attending* this session include hours spent *preparing* for that session.

**Billing on October 18, 2021.** Facebook is simply incorrect in characterizing these entries as concerning "multiple conference calls." The entries all relate to crafting and drafting a reply brief in support of Plaintiffs' motion to compel further Named Plaintiffs' data due on October 18. This was therefore an all-hands-on-deck day. It represented the last opportunity Plaintiffs had to convince Special Master Garrie that this discovery, which was both groundbreaking and critical the case, was warranted. The entries reflect necessary work: drafting, revising, researching, discussing, finalizing and overseeing the filing of the reply. Given the paramount importance of the filing, Plaintiffs' billing was wholly reasonable.

*December 4, 2021 ADI hearing.* Similarly, the importance of this lengthy Saturday hearing cannot be overstated. After months of delay by Facebook, Plaintiffs finally had an opportunity to explain why further production of ADI documents was necessary. At the time of the hearing, Facebook had produced a sum total of 11 documents in response to Judge Corley's

ADI Order, issued on September 8, 2021. Dkt. 736. All of the lawyers who were present at this hearing had engaged in meet-and-confer sessions or research relating to ADI, and they were on hand if the Special Master had specific questions.

*January 14, 2022 hearing.* This was the hearing in which Special Master Garrie asked questions of Facebook employee David Pope to learn more about where and how Facebook stored the Named Plaintiffs' data. This was only the second time Plaintiffs had the opportunity to learn directly from a Facebook witness specific information about how its systems handled such data. Again, all of the attorneys present at this hearing were involved in and had engaged in extensive discussions with Gibson Dunn about the Named Plaintiffs' data. In light of the importance, breadth, and complexity of the issues, five lawyers were necessary, and Plaintiffs' billing was reasonable.

*Billing on June 11, 2021.*[1] To describe these entries as "conference calls" is inaccurate. The ex parte mediation session held that day centered on the acute concerns that Plaintiffs had about the lack of progress on ADI and other discovery issues, the approach Facebook and Gibson Dunn were taking to discovery, and what Plaintiffs considered a counterproductive recent letter from Facebook to the mediators. The session also preceded an ex parte submission to the mediators that raised similar concerns. Facebook's count of hours and lawyers includes both preparation for and participation in the mediation session. Given the strategic importance of the mediation session, the June 11 entries are perfectly reasonable in both number of attorneys involved and number of hours billed.

*Billing on March 8 and 9, 2022.* These dates fell on three and two days, respectively, before Plaintiffs' sanctions motion was due and therefore reflect another all-hands-on-deck effort. Once again, the entries that Facebook dismissively refers to as "conference calls" were strategic discussions about the details of the sanctions motion, including what time to seek reimbursement for. Facebook also appears to be including work on the motion itself, or on its

---

[1] Facebook refers to "February 11, 2022," but the pages it cites do not contain records for that date. Nor do there appear to be billing records for that date that correspond with Facebook's description. From the pages cited, it appears that Facebook is referring to June 11, 2021.

supporting papers, in its definition of "conference calls."

***Billing on July 26, 2022.*** This was the day the Court held a case management conference and ordered the Plaintiffs to file a supplemental sanctions brief by August 8. In light of the extremely short timetable for the supplemental brief, it was wholly appropriate for counsel, in groups, to discuss the issues to be covered by the brief, the division of assignments among the attorneys, and the general logistical issues involved in drafting the brief, a supporting declaration, and gathering supporting evidence. All of this took time. These entries are completely appropriate. Moreover, as with the other entries discussed above, Plaintiffs have not sought all fees incurred during this important meeting; rather, Plaintiffs only seek that portion of the time related to ADI and Named Plaintiff data. Plaintiffs, therefore, have been careful to seek no more than the time incurred on the specific issued flagged by the Court.

***Billing on September 19, 2022.*** This was the Monday following the hearing on Plaintiffs' motion for sanctions. At that hearing, the Court had asked for a letter brief on the allocation of any fees or costs awarded as sanctions. The entries on this date record time spent on that letter brief, which had important implications for the amount of the Class's ultimate recovery and for any request for fees and costs that Co-Lead Counsel might make from the settlement's common fund. The entries record (among other things) necessary discussions about the letter brief and the body of law discussed in it. This was an important question posed by the Court, and Plaintiffs took the time to research it thoroughly and provide the Court with a substantive response.

**D.     Gibson Dunn's billing records could provide help in determining whether Plaintiffs' billing was appropriate.**

Plaintiffs' records reflect the time and effort that was required to effectively litigate this case against a defendant with exceedingly deep pockets—one that appeared to instruct its counsel to spare little, if any, expense in litigating this case, especially in discovery related to Named Plaintiffs' data and ADI.  Should the Court have questions about Plaintiffs' billing, it might consider requesting that Gibson Dunn produce its billing records for the same mediation sessions, hearings, and depositions for which Plaintiffs seek reimbursement.

Dated: December 14, 2022

KELLER ROHRBACK L.L.P.

By: */s/ Derek W. Loeser*
     Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
David Ko (admitted *pro hac vice*)
Adele A. Daniel (admitted *pro hac vice)*
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By: */s/ Lesley E. Weaver*
     Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Matthew S. Melamed (SBN 260272)
Angelica M. Ornelas (SBN 285929)
Joshua D. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*