GIBSON, DUNN & CRUTCHER LLP
Orin Snyder (*pro hac vice*)
  osnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Kristin A. Linsley (SBN 154148)
  klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
  rring@gibsondunn.com
Austin V. Schwing (SBN 211696)
  aschwing@gibsondunn.com
Martie Kutscher (SBN 302650)
  mkutscherclark@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

GIBSON, DUNN & CRUTCHER LLP
Deborah Stein (SBN 224570)
  dstein@gibsondunn.com
Heather L. Richardson (SBN 246517)
  hrichardson@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua S. Lipshutz (SBN 242557)
  jlipshutz@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

*Attorneys for Defendant Facebook, Inc.,*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**DECLARATION OF STEVEN ELIA IN SUPPORT OF SETTLEMENT** |

I, Steven Elia, declare and state as follows:

1. This declaration is made in support of the proposed settlement in the above-referenced action. I understand that as part of finalizing the settlement, Plaintiffs seek additional information regarding particular practices at issue in the litigation ("Lawsuit").

2. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

3. I am a Software Engineering Manager at Meta Platforms, Inc. ("Meta") responsible for leading a team that works on the Developer Platform. I previously worked on early forms of the Graph API. I also previously led the Developer Platform Foundation organization, comprised of teams that support API development, internal governance, web and mobile SDK integrations, and the integrity and security of developer products. I have knowledge and expertise relating to, among other pertinent facts, the function and operation of APIs, the systems and controls for third party access to data, and capabilities and permissions emitting user data.

4. An "API" is an "application programming interface" and refers to a way for two or more computer programs, applications, or pieces of software to communicate with each other.

5. I understand the terms "friend data" or "friend information" to refer to data or information associated with an app user's friend(s), as opposed to being associated with the individual user who installed an app. I understand the concept known as "friend sharing" to involve a user sharing his or her friend's data with a third party by virtue of that user installing and using an app instead of the friend providing that information to the third party himself/herself.

6. I understand that one of Plaintiffs' questions is whether Meta still permits third parties to access "friend information" (as that term is defined above) without explicit authorization from the user whose data is being emitted via their friend.

7. Depending on the time period, a variety of friend information was available on the Facebook Developer Platform through certain permissions. A "permission" refers to a user giving an

app authorization to access certain information associated with their account via Facebook Login. Before they were deprecated, friend permissions (also known as "friend_* permissions") allowed apps on the Facebook Developer Platform to access certain information about an app user's friends.

8. Graph API Version 1 allowed apps on the Facebook Developer Platform to request friend permissions from users. Those friend permissions allowed apps to make API calls for certain information about users' friends.

9. At the F8 developer conference on April 30, 2014, Meta (at that time known as Facebook) announced that it intended to deprecate Graph API Version 1 and to roll out Graph API Version 2.

10. Graph API Version 2 did not have friend permissions. Generally, existing apps had one year to transition to Graph API Version 2. That is, apps created prior to April 30, 2014 with access to Graph API Version 1 continued to have access to Version 1 until April 30, 2015, and therefore had access to friend permissions during that transition time. Apps created after April 30, 2014 did not have access to Graph API Version 1, and therefore never had access to friend permissions through Graph API Version 1.

11. After April 30, 2015, approximately 60 apps were "whitelisted" to continue using Graph API Version 1, which included friend permissions. "Whitelisting" in this context refers to adding an app to a list that provides those apps certain features and tools on the Facebook Developer Platform that deviates from the customary features that most other apps have.

12. In this context, the approximately 60 apps that were whitelisted to continue using Graph API Version 1 had continued access to friend permissions. These apps included, among other entities, IMDb, Coffee Meets Bagel, Endomondo, Hinge, Skype, Nike, and Spotify. Whitelisting for Graph API Version 1 (which included friend permissions) is no longer occurring, and Meta has no plans to change that.

13. In addition to these approximately 60 apps that were whitelisted for Graph API Version 1, certain other third parties were given access to "capabilities" that gave them the ability to obtain friend information.[1] A "capability" is a specific implementation of a whitelist, again referring to a way for the behavior of the Facebook Platform to deviate from what most apps have.

14. On March 28, 2018, I reviewed and approved a code change that disabled friend permissions for all apps, such that even if any apps remained on a whitelist for friend permissions, if the whitelisted app made a call for friend information gated by a permission, no such data would be returned.

15. In 2018-2020, several capabilities—including ones that could be accessed by the aforementioned third parties—were deprecated or otherwise modified to return no friend information. For example, Plaintiffs have inquired about the current status of the read_stream permission and the thunderhill and titan_api capabilities. They have all been deprecated as to third parties. Specifically, read_stream became publicly unavailable beginning on October 9, 2017 and a whitelist for it was available until January 17, 2020; thunderhill was available until December 4, 2019; and titan_api was available until November 1, 2019. Plaintiffs have also asked about the current status of Social Context APIs. On April 30, 2019, Meta deprecated the use of Social Context APIs; and as of July 30, 2019, Facebook connections that requested the "context" field would fail.

16. As stated above, Meta disabled friend permissions for all third-party apps. Meta has further undertaken a comprehensive effort to identify all capabilities permitting access to APIs capable of emitting private friend information and deprecated all of them as to third parties. Meta has no plans to re-enable friend permissions for third parties, or to revive or restore capabilities permitting third parties' access to private friend information.

---

[1] A few of the apps that were whitelisted for Graph API Version 1 also received such capabilities, but as described in Paragraph 14-17, those capabilities have been deprecated or otherwise modified to return no friend information.

17. As a result of both Meta's efforts to identify all capabilities permitting access to APIs capable of emitting private friend information and the specific steps taken to disable friend permissions for all third-party apps, to the best of my knowledge and understanding, Meta does not still permit third parties to access any friend information without explicit authorization from the user whose data is being emitted via their friend. I am unaware of any exception to this, and Meta does not presently intend to change this. Apps can still obtain "friend-related" information, but only if that friend has also expressly authorized the app through permissions (such that the app would be able to directly obtain that friend's data as a direct user).

18. I further understand that Plaintiffs are seeking confirmation that Meta no longer makes the following APIs, capabilities and permissions available to third parties: friends_videos, auto_granted_friends_videos, friends_posts, auto_granted_friends_posts, user_actions.video, friends_actions.video, auto_granted_friends_likes, friends_likes, auto_granted_user_likes, mutal_likes, read_mailbox, and titan_api. These APIs, capabilities and permissions have all been expressly deprecated as to third parties, and Meta has no plans to change this. I do not believe there is another action, capability, or permission that makes users' friends' videos or the friends' likes, interactions, or comments on videos available to third parties, unless the friend also installs and engages with the app, in which case the app is receiving that information not because of the friend relationship, but rather because of his/her own interaction with the app.

19. I understand that Plaintiffs have asked about the status of the user_likes permission. This permission does not give likes on a video. Instead, this permission allows an app to read a list of all Facebook Pages that a user has liked. The user must separately grant this permission to the third party for it to obtain access to this information. The user_likes permission does not permit a user to share their friends' likes of Facebook Pages with third parties.

20. I further understand that Plaintiffs are seeking information regarding user_posts, user_videos, auto_granted_user_videos, Video/comments, and Video/reactions. These permissions, capabilities, and APIs never permitted third-party developers to access users' watches of videos. Auto_granted_user_videos has been deprecated, and Meta does not intend to change this. The user_posts and user_videos permissions and the comments and reaction APIs no longer permit third-party apps to access users' reactions or comments on a video posted to a user's profile unless the user who reacted or commented on the video also logs into the app.

21. Finally, I understand Plaintiffs have asked about the earliest time users would have been able to upload videos to the Facebook Platform, and the earliest time third parties would have been able to access information associated with videos on the Facebook Platform. My understanding is that the Facebook Platform has enabled users to upload video files, and that third parties have had the ability to access information associated with videos on the Facebook Platform, since 2007.

22. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: December 15, 2022      By: _____
                                   Steven Elia