# Plaintiffs' Exhibit 95

CONFIDENTIAL

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3
 4   IN RE:  FACEBOOK, INC.,      MDL No. 2843
 5   CONSUMER USER PROFILE        Case No.
 6   LITIGATION                   18-md-02843-VC-JSC
     _____
 7   This document relates to:
 8   ALL ACTIONS
     _____
 9
10                   **CONFIDENTIAL**
11
12      ZOOM DEPOSITION OF FACEBOOK's 30(b)(6)
13       CORPORATE REPRESENTATIVE - MICHAEL DUFFEY
14   (Reported Remotely via Video & Web Videoconference)
15       Palo Alto, California (Deponent's location)
16               Wednesday, June 2, 2022
17                      Volume I
18
19   STENOGRAPHICALLY REPORTED BY:
20   REBECCA L. ROMANO, RPR, CSR, CCR
21   California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 5234611
25   PAGES 1 - 194
```

Page 1

CONFIDENTIAL

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
    IN RE:  FACEBOOK, INC.,       MDL No. 2843
 4  CONSUMER USER PROFILE         Case No.
    LITIGATION                    18-md-02843-VC-JSC
 5  _____
 6  This document relates to:
 7  ALL ACTIONS
 8
    _____
 9
10
11
12
13
14
15            DEPOSITION OF MICHAEL DUFFEY, taken on
16  behalf of the Plaintiffs, with the deponent located
17  in Palo Alto, California, commencing at
18  9:14 a.m., Wednesday, June 3, 2022, remotely
19  reported via Video & Web videoconference before
20  REBECCA L. ROMANO, a Certified Shorthand Reporter,
21  Certified Court Reporter, Registered Professional
22  Reporter.
23
24
25
                                                Page 2
```

```
 1              APPEARANCES OF COUNSEL
 2    (All parties appearing via Web videoconference)
 3
 4    For the Plaintiffs:
 5         BLEICHMAR FONTI & AULD LLP
 6         BY:   LESLEY E. WEAVER
 7         BY:   ANNE K. DAVIS
 8         BY:   JOSHUA SAMRA
 9         Attorneys at Law
10         555 12th Street
11         Suite 1600
12         Oakland, California 94607
13         (415) 445-4003
14         lweaver@bfalaw.com
15         adavis@bfalaw.com
16         jsamra@bfalaw.com
17
18
19
20
21
22
23
24
25    /////
```

Page 3

```
 1                APPEARANCES OF COUNSEL
 2    (All parties appearing via Web videoconference)
 3
 4         KELLER ROHRBACK L.L.P.
 5         BY:   CARI CAMPEN LAUFENBERG
 6         BY:   DEREK W. LOESER
 7         Attorneys at Law
 8         1201 Third Avenue
 9         Suite 3200
10         Seattle, Washington 98101
11         (206) 623-1900
12         claufenberg@kellerrohrback.com
13         dloeser@kellerrohrback.com
14
15    For Facebook, Inc.:
16         GIBSON, DUNN & CRUTCHER LLP
17         BY:   RUSSELL H. FALCONER
18         Attorney at Law
19         2001 Ross Avenue
20         Suite 2100
21         Dallas, Texas 75201
22         (214) 698-3170
23         rfalconer@gibsondunn.com
24
25    /////
```

Page 4

```
 1            APPEARANCES OF COUNSEL(cont'd)
 2    (All parties appearing via Web videoconference)
 3
 4    For Facebook, Inc.:
 5         GIBSON, DUNN & CRUTCHER LLP
 6         BY:  YEKATERINA REYZIS
 7         Attorney at Law
 8         333 South Grand Avenue
 9         Los Angeles, California 90071-3197
10         (213) 229-7907
11         yreyzis@gibsondunn.com
12    and
13         BY:  DAYNA ZOLLE HAUSER
14         BY:  HANNAH REGAN-SMITH
15         Attorneys at Law
16         1801 California Street
17         Suite 4200
18         Denver, Colorado 80202-2642
19         (303) 298-5700
20         dzhauser@gibsondunn.com
21         hregan-smith@gibsondunn.com
22
23
24
25    /////
```

Page 5

CONFIDENTIAL

```
 1          APPEARANCES OF COUNSEL(cont'd)
 2    (All parties appearing via Web videoconference)
 3
 4    For Facebook, Inc.:
 5         GIBSON, DUNN & CRUTCHER LLP
 6         BY:  ROSEMARIE T. RING
 7         Attorney at Law
 8         555 Mission Street
 9         Suite 3000
10         San Francisco, California 94105-0921
11         (415) 393-8247
12         rring@gibsondunn.com
13
14         JAMS
15         BY:  DANIEL B. GARRIE
16         Special Master
17         555 W. 5th Street
18         32nd Floor
19         Los Angeles, California 90013
20         (213) 253-9706
21         dgarrie@jamsadr.com
22
23
24
25    /////
```

Page 6

```
 1                APPEARANCES(cont'd)
 2   (All parties appearing via Web videoconference)
 3
 4   ALSO PRESENT:
 5        Ian Chen, Associate General Counsel,
 6   Meta Platforms
 7        John Macdonell, Videographer
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25   /////
```

Page 7

```
 1              MR. FALCONER:  Objection.  Form.              10:02:37

 2              THE DEPONENT:  Switchboard and DYI are

 3    very similar in the information that is captured in

 4    a snapshot.  Switchboard has some additional

 5    information that DYI doesn't pertaining to Facebook    10:03:03

 6    groups and advertising accounts.

 7         Q.   (By Ms. Weaver)  And specifically, does

 8    Switchboard contain relating to Facebook groups and

 9    advertising accounts that DYI does not?

10         A.   My understanding is that DYI doesn't have    10:03:49

11    information related to whether a user is an

12    administrator of a particular Facebook group.  I

13    don't believe DYI has information related to a

14    user's advertising accounts.

15         Q.   And when you say "a user's advertising       10:04:13

16    accounts," what do you mean?

17         A.   If a user is selling ads on Facebook.

18         Q.   So for the record, Switchboard has

19    information regarding users' advertisers' accounts

20    that are used to sell ads on Facebook; is that         10:04:46

21    correct?

22         A.   I'm not -- I'm not sure of the exact

23    information relating to advertising accounts in

24    Switchboard.  That would be a question for the law

25    enforcement response team.                             10:05:06
```

| | | |
|---|---|---|
| 1 | Q. What is the law enforcement response | 10:05:07 |
| 2 | team? | |
| 3 | A. That -- that team is -- is -- receives | |
| 4 | subpoenas and requests from law enforcement | |
| 5 | regarding individual users at Facebook. | 10:05:31 |
| 6 | Q. And why does the law enforcement response | |
| 7 | team use Switchboard as opposed to DYI tool? | |
| 8 | MR. FALCONER: Objection. Beyond the | |
| 9 | scope of the notice. | |
| 10 | And, Mr. Duffey, again, I'll just caution | 10:05:49 |
| 11 | you: Don't reveal any privileged communications | |
| 12 | you may have had in the course of your work at the | |
| 13 | company in answering that question. | |
| 14 | THE DEPONENT: I don't know -- I don't | |
| 15 | know the -- the -- all of the reasons why the law | 10:06:17 |
| 16 | enforcement response team uses Switchboard. I know | |
| 17 | that Switchboard was a tool used by that team | |
| 18 | before DYI. The ability to download your | |
| 19 | information was available to users. | |
| 20 | I -- I -- I think that it -- the law | 10:06:39 |
| 21 | enforcement response team can produce records to | |
| 22 | law enforcement in response to subpoena in a more | |
| 23 | usable way than DYI has available to it as a | |
| 24 | download. | |
| 25 | Q. (By Ms. Weaver) And when you say "in a | 10:07:07 |

```
 1   more usable way," what do you mean?                  10:07:08

 2        A.   In a, you know -- like a PDF record.

 3        Q.   And does the Switchboard tool also have

 4   the ability to retrieve information not contained

 5   in DYI that would include, for example, deleted     10:07:36

 6   posts or other kinds of activity that is not

 7   captured by the DYI tool, setting aside the two

 8   examples that you earlier identified?

 9        A.   I don't believe so, no.  If a user

10   deletes -- Switchboard, similar to DYI, is a        10:08:01

11   snapshot of -- for a particular day and time.  If a

12   user were to delete a post, for instance, and we

13   take the Switchboard snapshot after a post is

14   deleted, that would not be captured in Switchboard,

15   no.                                                 10:08:29

16        Q.   Does the law enforcement response team

17   use any tools other than Switchboard to collect and

18   provide information about users in response to

19   subpoenas?

20             MR. FALCONER:  Objection.  Beyond the     10:08:42

21   scope of the notice.

22             THE DEPONENT:  I don't know.

23        Q.   (By Ms. Weaver)  Who would know?

24             MR. FALCONER:  Same objection.

25             THE DEPONENT:  Somebody -- somebody on    10:09:03
```

Page 42

| | | |
|---|---|---|
| 1 | Q. Can you identify which data in Hive was | 11:09:42 |
| 2 | placed on legal hold for this case? | |
| 3 | A. No, I can't. | |
| 4 | Q. Can anyone? | |
| 5 | A. Can you -- can we go back two questions | 11:10:09 |
| 6 | ago? Just so I -- I understand the question. | |
| 7 | Q. Yeah. No problem. | |
| 8 | Let me try it this way. Was any data in | |
| 9 | Hive placed on legal hold for this case? | |
| 10 | A. Yes. | 11:10:33 |
| 11 | Q. What data in Hive was placed on legal | |
| 12 | hold for this case? | |
| 13 | A. I understand that there are 137 Hive | |
| 14 | tables placed on legal hold for the | |
| 15 | Cambridge Analytica matter. We don't maintain a | 11:10:51 |
| 16 | description or -- a description of the fields or | |
| 17 | Hive tables that have been placed be on hold. | |
| 18 | If -- if I were to -- you know, needed to | |
| 19 | understand what data from those 137 tables, that | |
| 20 | would be a -- a question for the E-discovery data | 11:11:34 |
| 21 | science team. | |
| 22 | Q. It is possible for Facebook to identify | |
| 23 | those 137 Hive tables, correct? | |
| 24 | A. Yes. Our data science team could | |
| 25 | identify those tables. | 11:11:53 |