# Defendant's Exhibit 55

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION
GENERAL CHANCERY SECTION

---

PEOPLE OF THE STATE OF ILLINOIS,
ex rel. Kimberly M. Foxx, State's Attorney
of Cook County, Illinois,

                *Plaintiff*,

    v.

FACEBOOK, INC., a Delaware corporation,
SCL GROUP LIMITED, and
CAMBRIDGE ANALYTICA, LLC,

                *Defendants*.

Case No. 2018 CH 03868

Calendar 03

Honorable Allen P. Walker

---

## MEMORANDUM OF OPINION

This matter comes to be heard on Defendant, Facebook, Inc.'s, Motion to Dismiss Plaintiff's Complaint pursuant to 735 ILCS 5/2-301 and 735 ILCS 5/2-615 or, in the Alternative, Stay Proceedings pursuant to 735 ILCS 5/2-619(a)(3). The matter has been fully briefed and argued before the Court. Defendant Facebook, Inc.'s motion to dismiss pursuant to 735 ILCS 5/2-301 and 735 ILCS 2-615 regarding personal jurisdiction is denied. Facebook's motion to dismiss pursuant to 735 ILCS 5/2-619(a)(3) is denied.  Defendant Facebook Inc.'s motion to dismiss pursuant to 735 ILCS 5/2-615 for failure to state a claim is granted without prejudice.

### BACKGROUND

Plaintiff, the State of Illinois, brings this action under the Illinois Consumer Fraud and Deceptive Trade Practices Act (the "ICFA"), 815 ILCS 505, *et seq*. against Defendants, Facebook, Inc. ("Facebook"), and Cambridge Analytica, LLC ("Cambridge Analytica"), a data analytics company, for alleged misuse of Facebook users' sensitive personal information.

Facebook is a Delaware company, with its principal place of business in Menlo Park, California[1]. As of 2008, Facebook has been a registered business with the Illinois Secretary of State. First formed in 2004 as a friends' sharing website for college students, Facebook developed into a global online social media and social networking service with more than 2.3 billion monthly users worldwide. Facebook's online social networking platforms permit its users to publish and

---

[1] The facts recited herein are derived from Plaintiffs' Complaint and the exhibits attached thereto, and are accepted as true for purposes of Defendant's Motion to Dismiss.  *Kedzie & 103rd Currency Exchange v. Hodge*, 156 Ill. 2d. 112, 115 (1993).

share personal information, from photos and videos to education and work histories, to political and religious affiliations. Users also share their "likes/dislikes" on a myriad of things.

Facebook's social networking platforms allows third-party ("3P") programmers to develop applications that can interface with other services and Facebook's online users. Through the Facebook Software Development Kit ("SDK"), 3P developers can add Facebook-related features to their applications, websites, or services. When 3P developers incorporate these features into their products, the developer's service can interact with Facebook and its users. A user must click through the appropriate permissions to allow the 3P's application to collect that user's and their *friends'* group data. Facebook also offers platforms for 3P advertisers and commercial content developers to market targeted online ads or programs to its users.

Defendant, Cambridge Analytica, LLC, is a Delaware limited liability company, organized with offices in Washington, D.C. and New York City. Established in 2013 as an entity within SCL Group (a UK private limited company), Cambridge is a political consulting firm that provides its customers with data analytics. In 2018, Cambridge Analytica offered to pay Facebook users to download and use a "personality quiz app" entitled *thisisyourdigitallife*. The app is alleged to have not only mined information about the user, but also the user's Facebook friends who had not agreed to use the app. Additionally, the data collected by Cambridge Analytica was allegedly used to create "psychographic profiles" for the 2016 United States presidential election, in which Cambridge Analytica obtained Facebook users' names, education, birthdays, and political tendencies.

On March 23, 2018, Plaintiff filed a three-count complaint (the "Complaint") against Defendants alleging: (1) a violation of the IFCA against Cambridge Analytica, Count I; (2) a violation of the IFCA by Facebook, Count II; and (3) entitlement to declaratory and injunctive relief, Count III. Plaintiff alleged that Facebook represented to its users that their personal data would be protected in accordance with its policies, when, in fact, it permitted third parties, such as Cambridge Analytica, to collect data despite its user agreements and misappropriate user information.

On April 19, 2019, Facebook filed a 2-619.1 motion to dismiss the Complaint. Facebook asserted, among other things, that it is not subject to personal jurisdiction in this Court. Following oral argument on the motion, the Court granted Plaintiff leave to amend the Complaint to cure any potential deficiencies. On October 3, 2019, Plaintiff filed its First Amended Complaint (the "FAC").

On October 31, 2019, Facebook filed a 2-619.1 motion to dismiss the FAC, this time with prejudice. This fully briefed motion is presently before the Court.

## 2-619.1 MOTION TO DISMISS STANDARD

A combined motion to dismiss pursuant to section 2-619.1 of the Illinois Code of Civil Procedure allows a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. 735 ILCS 5/2-619.1 (West 2018); *Illinois Non-Profit Risk Management Ass'n v. Human Service Center*, 378 Ill. App. 3d 713, 719 (4th Dist. 2008).

## SECTION 2-619 STANDARD

Section 2-619 allows for disposal of issues of law or easily proved issues of fact. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). A section 2-619 motion admits all well-pleaded facts in the complaint but does not admit conclusions of law or conclusions of fact unsupported by specific allegations. *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 21. "A section 2-619 motion admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matter that appear on the face of the complaint or are established by external submissions that act to defeat the plaintiff's claim." *Hager v. II In One Contractors, Inc.*, 342 Ill. App. 3d 1082, 1086 (1st Dist. 2003). In reviewing a section 2-619 motion to dismiss, the court must construe all documents presented in the light most favorable to the non-moving party, and, if no disputed issue of material fact is found, the court should grant the motion. *Id.* However, if it cannot be determined with reasonable certainty that the defense exists, the motion to dismiss should be denied. *Saxon Mortgage. Inc. v. United Financial Mortgage. Corp.*, 312 Ill. App. 3d 1098, 1104 (1st Dist. 2000). A motion brought under 2-619 must satisfy a rigorous standard and can be granted only where "no set of facts can be proven that would support the plaintiff's cause of action." *Nosbaum v. Martini*, 312 Ill. App. 3d 108, 113 (1st Dist. 2000).

There are nine (9) enumerated bases for dismissal under section 2-619. 735 ILCS 5/2-619 (West 2018). Section 2-619(a)(3) of the Illinois Code of Civil Procedure provides that a "defendant may, within the time for pleading, file a motion for dismissal of the action *or for other appropriate relief* upon…[the fact] that there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2014) (emphasis added). Other appropriate relief includes the issuance of a stay of a cause of action if "there is another action pending between the same parties for the same cause." *Id.* The movant bears the burden of establishing by clear and convincing evidence that the two actions involve the "same parties" and the "same cause." *Northbrook Property & Casualty Insurance Co. v. GEO International Corp.*, 317 Ill. App. 3d 78, 80 (1st Dist. 2000). Section 2-619(a)(3) is a procedural device designed to avoid duplicative litigation. *Quantum Chemical Corp. v. Hartford Steam Boiler Inspection & Insurance Co.*, 246 Ill. App 3d 557, 560 (3d Dist. 1993).

However, "even when the threshold requirements for 'same parties' and 'same cause' are met, Section 2-619(a)(3) relief is not mandatory." *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 495 (1st Dist. 2000). "Instead, the trial court has discretion to determine whether both actions should proceed through the weighing of several factors." *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 34.

**SECTION 2-615 STANDARD**

A section 2-615 motion to dismiss, on the other hand, challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The motion does not raise affirmative factual defenses, but rather alleges only defects on the face of the complaint. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). The court must consider, in a light most favorable to the plaintiff, if the complaint is sufficient to state a cause of action upon which relief can be granted. *Id.* This determination requires an examination of the complaint as a whole, not its distinct parts. *Lloyd v. County of Du Page*, 303 Ill. App. 3d 544, 552 (2d Dist. 1999). In reviewing the sufficiency of a complaint, a court must accept all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Burger King Corp.*, 222 Ill. 2d at 429. A complaint is deficient when it fails to allege facts necessary for recovery. *Chandler v. Ill. Cent. R. R.*, 207 Ill. 2d 331, 348 (2003). A court should not dismiss a cause of action unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 921 (1st Dist. 2007).

**DISCUSSION**

As a preliminary matter, the Court notes that Facebook seeks dismissal pursuant to 735 ILCS 5/2-301 and 2-615, arguing that it is not subject to specific personal jurisdiction in this Court. Plaintiff counters that Facebook waived its personal jurisdiction claim by (1) filing for a substitution of judge as of right pursuant to 735 ILCS 5/2-1001(a)(2) prior to filing their motion to dismiss, and (2) seeking a stay in federal court after Facebook previously removed the case.  As such, the Court deems it necessary to first address Plaintiff's arguments regarding the waiver issue.

## I.   *Dismissal Pursuant to Section 2-301 and 2-615 – Waiver of Personal Jurisdiction*

Plaintiff argues that Facebook twice waived its challenge to the Court's exercise of personal jurisdiction by: (1) filing for a substitution of judge as of right prior to filing their motion to dismiss, and (2) seeking a stay in federal court after Facebook previously removed the case.

First, Plaintiff contends that Facebook's decision to file a motion for substitution of judge as of right prior to the motion to dismiss was improper. According to Plaintiff, 735 ILCS 5/2-301(a-6) requires a party to raise an objection to personal jurisdiction before filing "any other . . . motion." Moreover, Plaintiff asserts that while Section 301(a-6) articulates certain exceptions to this general rule, there is no exception for a motion for substitution of judge pursuant to 735 ILCS 5/2 1001(a)(2).  As such, Plaintiff insists that Facebook waived its opportunity to object to personal jurisdiction when it failed to simultaneously assert its objection when it filed its motion for substitution of judge.

Next, Plaintiff argues that Facebook's request for a stay in federal court constitutes another example of a "motion" Facebook filed prior to its motion to dismiss where it asserted its personal jurisdiction defense. Accordingly, Plaintiff contends that Facebook's failure to raise objections to

4

personal jurisdiction concurrently or before the motion to dismiss resulted in a type of forum shopping that 735 ILCS 5/2-301(a-6) was meant to prevent.

Facebook responds that Plaintiff asserted its arguments regarding waiver for the first time in Plaintiff's response to Facebook's second motion to dismiss.  By failing to raise the waiver arguments in opposition to Facebook's first motion to dismiss, Facebook contends Plaintiff's arguments are waived. Additionally, Facebook argues it did not waive its challenge to this Court's exercise of personal jurisdiction because the motion for substitution of judge was *pro forma*. Further, Facebook points out that Plaintiffs fail to cite any authority to support their position, and thus, Facebook should not be forced to relinquish its statutory right in order to proceed with its objections.

Regarding Plaintiff's argument that Facebook's request for a stay in federal court constituted a waiver of any objections to personal jurisdiction, Facebook asserts that under Fed. R. Civ. P. 12(h)(1), personal jurisdiction is waived only if a defendant fails to raise the defense in their initial motion to dismiss or responsive pleading. Moreover, Facebook argues merely seeking to stay litigation in federal court does "not waive [the] defense of lack of personal jurisdiction," citing *Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675, 678 (11th Cir. 2009).

This Court finds that Facebook waived its challenge to personal jurisdiction by filing a motion for substitution of judge pursuant to 735 ILCS 5/2-1001(a)(2). The language pursuant to 735 ILCS 5/2-301(a-6) clearly states:

> A party filing *any other* pleading *or motion* prior to the filing of a motion objecting to the court's jurisdiction over the party's person as set forth in subsection (a) *waives all objections to the court's jurisdiction over the party's person* prospectively, unless the initial motion filed is one of the following:
>
> **(1)** A motion for an extension of time to answer or otherwise plead; or
> **(2)** A motion filed under Section 2-1301, 2-1401, or 2-1401.1

735 ILCS 5/2-301(a-6) (West 2018) (emphasis added).

The Court agrees with Plaintiff that a motion for substitution for judge as of right is, in fact, a motion pursuant to 735 ILCS 5/2-1001(a)(2) that is not provided for in the exceptions to 735 ILCS 5/2-301. If the party objecting to jurisdiction files a motion outside the exceptions listed in 735 ILCS 5/2 301(a-6), then the party waives all objections to the court's jurisdiction over that party. See *Resurgence Capital, LLC v. Kuznar*, 2017 IL App (1st) 161853, ¶ 1.

When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Elliott*, 2014 IL 115308, ¶ 11. "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 33. While Facebook argues that a motion for

substitution of judge pursuant to 735 ILCS 5/2-1001(a)(2) is merely *pro forma*, the plain and ordinary language of 735 ILCS 5/2-301(a-6) provides no caveats for such *pro forma* motions. Rather, the plain and ordinary language in 735 ILCS 5/2-301(a-6) reveals no other exceptions except for the listed motions within it. If the legislature meant to exempt motions for substitution of judge as of right, then it certainly could have added 735 ILCS 5/2-1001(a)(2) to the list in 735 ILCS 5/2-301(a-6), but it did not do so. This Court recognizes the long-standing practice of finding that filing a motion not listed in 735 ILCS 5/2-301 before any jurisdictional issues are raised as constituting waiver of such jurisdictional issues. See generally *BAC Home Loans Servicing*, 2014 IL 116311 at ¶ 37 (there is a "long-standing rule that a party may waive a defect in jurisdiction over the person by proceeding without objection.").

In *Resurgence Capital*, the defendant had filed a petition for sanctions, a motion for substitution of judge as of right, a reply to the plaintiff's response to the petition for sanctions, a petition for discovery, and an objection to and request to strike the plaintiff's sur-reply to the petition for sanctions all before he filed a motion to dismiss. *Resurgence Capital, LLC v. Kuznar*, 2017 IL App (1st) 161853, ¶ 24. While his motion to dismiss was based on insufficiency of service of process and ultimately a lack of personal jurisdiction, the court in *Resurgence Capital* determined the defendant had waived all personal jurisdiction pursuant to the plain terms of 735 ILCS 5/2-301(a) and (a-5) by previously filing such motions.[2] *Id*. While the defendant in *Resurgence* Capital filed many more motions before raising its objections to personal jurisdiction than Facebook has done in the present case, the Illinois Appellate Court still recognized in *Resurgence Capital* that a motion for substitution of judge as of right is among those motions that will waive personal jurisdiction objections if filed prior to raising of such personal jurisdiction objections. *Id*.

Here, it is true that Facebook merely filed a singular motion—motion for substitution of judge as of right—prior to filing its motion dismiss containing personal jurisdiction objections. However, Facebook, in the filing of that motion, consented to this Court's jurisdiction according to 735 ILCS 5/2-301(a-6).

The Court notes that Facebook filed its motion for substitution of judge as of right on April 12, 2019. Facebook then filed its motion to dismiss the complaint, asserting its personal jurisdiction objection for the first time, on April 19, 2019. Facebook could have filed its motion for substitution of judge as of right concurrently with its motion to dismiss, but instead filed its motion to dismiss seven (7) days after it had filed its motion for substitution of judge as of right. Alternatively, Facebook could have filed a motion for substitution of judge as of right *after* it objected to personal jurisdiction in its motion to dismiss. Because Facebook failed to utilize either of these options, the Court finds that it waived its objections to personal jurisdiction.

---

[2] When the *Resurgence Capital* decision was issued, 735 ILCS 5/2-301 was worded slightly differently from the current version of the same statute applicable today; however, it read in a substantially similar way as it stated the following: "If the objecting party files a responsive pleading or a motion (other than a motion for an extension of time to answer or otherwise appear) prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person." 735 ILCS 5/2-301(a-5) (LexisNexis 2016).

Additionally, the Court finds that the question of whether Plaintiff should have presented this argument in response to Facebook's first motion to dismiss is immaterial. Plaintiff presented its waiver argument in response to Facebook's second motion to dismiss, which is presently before this Court. Moreover, Facebook fails to cite any authority to support its position that a party may not subsequently assert a waiver argument if it did not assert the argument in a prior motion to dismiss an earlier complaint.

Lastly, because this Court finds that Facebook has waived its personal jurisdiction objections by filing its motion for substitution of judge as of right, this Court need not address the alleged waiver of personal jurisdiction through Facebook's filing of a stay in federal court after it removed the case. Accordingly, this Court finds that it has personal jurisdiction over Facebook in this matter.

Having addressed the overarching jurisdictional issue, the Court now turns to Facebook's arguments for dismissal pursuant to Section 2-615 for failure to state a claim.

## II.    *Dismissal Pursuant to Section 2-615 - Failure to State a Claim Under ICFA*

Facebook argues that this Court should dismiss Plaintiff's FAC pursuant to 735 ILCS 5/2-615 because Plaintiffs fail to state a claim under the ICFA. According to Facebook, to establish an ICFA claim, Plaintiff had to allege: "(1) a deceptive act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on that act or promise; and (3) that the deception occurred during a course of conduct involving trade or commerce," citing *People ex rel. Madigan v. United Constr. of Am., Inc.*, 2012 IL App (1st) 120308, ¶ 16. Facebook notes that Plaintiff's FAC fails to satisfy the first prong of an ICFA claim. Facebook contends an ICFA fails when consumers "kn[o]w the truth," citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002). Facebook argues that "full and accurate disclosure" cannot "conceal, suppress, or hide any material facts," citing *Krause v. GE Capital Mortg. Serv., Inc.*, 314 Ill. App. 3d 376, 388 (1st Dist. 2000).

Facebook argues that its Data Use Policy accurately informed its users of the data-sharing process:

> Just like when you share information by email or elsewhere on the web, information you share on Facebook can be re-shared. This means that if you share something on Facebook, anyone who can see it can share it with others, including the games, applications, and websites they use. . . . If you have made [particular] information public, then the application can access [that information] just like anyone else.

Ex. 2 at 40.

7

Accordingly, Facebook insists that it did not deceive its users because they were made aware of its Data Use Policy. Moreover, absent specific allegations by Plaintiff as to what is misleading about Facebook's statements regarding user control over data-sharing with apps, Facebook contends there is no ICFA claim.

Moreover, Facebook notes that Plaintiff's FAC alleges that Facebook shared with users its policies that: (1) third-party applications may "not directly or indirectly transfer any data [they] receive from [Facebook] to (or use such data in connection with) any ad network, ad exchange, data broker, or other advertising related toolset, even if a user consents to that transfer or use," and (2) that applications use user information "only in connection with the person that gave the permission [to access the information], and no one else." FAC at ¶¶ 50, 53. However, Facebook contends that these statements *do* accurately inform users about the contractual obligations that third-party app developers assume, and highlights that Facebook made no guarantee that such third-party app developers would not somehow violate those policies.

While the FAC alleges that Facebook mislead users about how it would monitor third-party applications, Facebook argues that it never promised to control the actions of third parties through audits or other limitations. Facebook asserts that an ICFA claim is not "cognizable . . . in the absence of any claimed affirmative misstatement," citing *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 40. Facebook contends that the Plaintiff "has not pled that Facebook *lacked the ability to* require applications to delete data, limited applications' access to data, or audited applications . . . Facebook *did* avail itself of these tools." Mot. at ¶ 13.

Further, Facebook argues that the FAC's allegation regarding Facebook's failure to inform users of the Cambridge Analytica events also does not state an ICFA claim.  Facebook emphasizes that the events regarding Cambridge Analytica's actions were made public in 2015 via an article by the Guardian and that no one was actually deceived as a result of the omission. Facebook additionally argues that the Personal Information Protection Act ("PIPA"), 815 ILCS 530/1, would be the relevant statute under which to bring a claim, as it is more specific than the ICFA and controls when data breaches need to be disclosed. Because the Plaintiff has not alleged violations under PIPA, Facebook argues the Plaintiff should not be allowed to allege data breach claims under the more generalized provisions of ICFA.

Plaintiff responds by arguing that they have sufficiently pled a violation of the ICFA because they have alleged that Facebook's users did not know that Cambridge Analytica had exfiltrated their data. Plaintiff points out that the FAC states that that "Cambridge Analytica's business practices were largely a secret to the general public." FAC at ¶ 60. While acknowledging that the Guardian's article did cover the incident in 2015, Plaintiff asserts that it is not reasonable to assume that such article would put every affected Facebook user on notice of the incident. Plaintiff refers to the swarm of coverage that took place in 2018 after lawsuits regarding the incident began to take place, resulting in Facebook's Mark Zuckerberg's public apology for breaching user trust.

Plaintiff additionally argues that PIPA is not the applicable statute in this instance. Although Plaintiff agrees that the more specific statute should apply where two statutes are applicable, Plaintiff contends that PIPA is *not applicable.* Plaintiff also argues that the ICFA and PIPA are not in conflict, and because the ICFA is the applicable statute, the Illinois Supreme Court has determined the ICFA is to be liberally construed. Plaintiff, citing *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 24, argues the FAC need only show that Facebook's statements as a whole give the impression of being misleading. However, maintaining its position that Facebook's statements *individually* are misleading, Plaintiff quotes language from Facebook's Data Use Policy that was stated in the FAC:

> If you are a developer or operator of a Platform application or website, the following additional terms apply to you:
> You [developers] will only request data you need to operate your application. . .
> You will not directly or indirectly transfer any data you receive from us to (or use such data in connection with) any ad network, ad exchange, data broker, or other advertising related toolset, even if a user consents to that transfer or use.
> You will not sell user data. . .
> We can require you to delete user data if you use it in a way that we determine is inconsistent with users' expectations.
> We can limit your access to data. . .
> To ensure your application is safe for users, we can audit it

FAC at ¶ 50.

According to Plaintiff, these statements show user privacy settings would not control how their data was shared once in the hands of third-party app developers. According to Plaintiff, these statements give the impression that Facebook would take further steps to exercise enforcement powers. Plaintiff reiterates that facts are to be taken in the light most favorable to it, and therefore, it is reasonable to conclude that an ordinary Facebook user would understand Facebook's disclosures would keep such user's data safe from third-party app developers.

Facebook replies that PIPA is the applicable statute because PIPA lays out specific circumstances in which companies are to notify Illinois residents in the case of a data breach. Facebook reads the FAC as supporting the theory of the case that a data breach occurred, as it refers to Cambridge Analytica's acquisition of user data as a "breach." FAC at ¶¶ 6, 104, 127. If such a data breach occurred, Facebook contends that Plaintiff should bring its alleged claim under PIPA and not ICFA, which is the more general consumer statute.

In terms of Plaintiff's misrepresentation claim, Facebook emphasizes that the FAC's allegations still do not allege an intent to deceive its users. While Facebook acknowledges the FAC states that Facebook's "statements were intended to deceive," this statement is not supported by any factual allegations to support it. Instead, Facebook contends this statement is conclusory. Facebook points out that Plaintiff concedes that Facebook's statements are not facially false, but rather, merely attempts to argue that the "net impression" of the statements allegedly reveal they

are misleading. Facebook refutes Plaintiff's reading of *Aliano*, because in that case, the "net impression" test was used exclusively in interpretating advertisement representations. Facebook contends that the "net impression" test has not ever been used outside of this context, citing *Schreib v. Walt Disney Co.*, 2006 WL 573008, at *3 (Ill. App. Ct. Feb. 1, 2006) and *Garcia v. Overland Bond & Inv. Co.*, 282 Ill. App. 3d 486, 491 (1st Dist. 1996). Additionally, Facebook contends that it instructed its users on how to secure their data via its application settings, and that it in no way guaranteed that it would take any particular action against third-party app developers who ultimately misused user data. Regardless, Facebook argues that it did, in fact, take action against Cambridge Analytica by requiring Cambridge Analytica to verify that it deleted user data.

This Court will first address whether the Plaintiff's allegations have been brought under the proper statute. While Facebook reads the FAC as alleging a data breach occurred, the FAC's allegations are focused on Facebook's alleged misrepresentations to its users. This Court agrees with Plaintiff that PIPA and ICFA are not in conflict, and, as PIPA is not applicable to Plaintiff's allegations, the ICFA is the applicable statute. While the Illinois Supreme Court has reiterated that the ICFA was not intended to apply to fraudulent actions that take place outside of Illinois, the ICFA itself does not contain any geographic limitations. See *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 181 (2005). Plaintiff's FAC does not state any facts that show Facebook's alleged misrepresentations occurred specifically at Illinois and instead relies on its assertions that those misrepresentations affected residents in Illinois. While Plaintiff does not show how Illinois residents were *uniquely* affected in comparison to other citizens throughout the country, the FAC does at least allege that Illinois residents suffered harm due to Facebook's actions. Therefore, this Court finds that Plaintiff properly brought its allegations under the ICFA.

At the motion to dismiss stage, under 735 ILCS 5/2-615, a court should not dismiss a cause of action unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. *Redelmann*, 375 Ill. App. 3d at 921. Under the ICFA, Illinois law provides that the elements of a claim for consumer fraud are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade and commerce. *Connick*, 174 Ill. 2d at 501; 815 ILCS 505/10(a) (West 2012). While Plaintiff attempts to argue that the FAC need only provide this Court with a "net impression" that Facebook made misrepresentations to its users, case law indicates otherwise. Facebook correctly distinguishes the "net impression" test in *Aliano*, the only case cited by Plaintiff in support of this argument, as being primarily used in evaluating advertising representations. In *Aliano*, the court stated that "[i]t is well established that ***the test to be used in interpreting advertising*** is the net impression that is likely to make on the general populace." *Aliano*, 2013 IL App (1st) 120242 at ¶ 24 (emphasis added). Other cases employing the net impression test have done so in the context of claims involving representations in advertisements. *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 219 (1978) (plaintiff consumer brought suit against defendant alleging defendant violated the Consumer Fraud and Deceptive Practices Act by engaging in false advertising); *Garcia v. Overland Bond & Inv. Co.*, 282 Ill. App. 3d 486, 488 (1996) (plaintiff brought an ICFA claim against a car dealer with allegations that he advertised and sold defective cars); *People ex rel. Hartigan v. Maclean Hunter Publ'g Corp.*, 119 Ill. App. 3d 1049, 1051 (1983) (plaintiff brought

ICFA claim based on publisher's advertisements of vehicle pricing manual). The Court finds that Plaintiff's FAC merely provides Facebook's policies as evidence of misrepresentation and Plaintiff has not sufficiently alleged that Facebook *advertised* in any specific way that it would guarantee the safety of user data. Therefore, in this instance, the net impression test is not applicable.

The FAC states that "Facebook represented to its Illinois users that their personal data would be protected in accordance with its SRR and Data Use Policies. . ." FAC at ¶ 123. While the Plaintiff points to language in Facebook's User Policy and Data Use Policy, Plaintiff concedes that these statements are not facially false. Facebook's Data Use Policy consistently includes language such as "can" and "we determine" that implies a permissive option for Facebook to take––not a mandatory action that is laid out. Whether or not these statements are facially false is separate from whether these statements could be used to deceive users into believing that their data was completely safe.

This Court finds that FAC as it currently stand does not provide a plausible basis to coclude that a reasonable person reading these policies might believe that their data was guaranteed to be safe from third-party app developers, especially third-party developers who might violate Facebook's Data Use Policy. Instead, Facebook repeatedly states in its policies that it is not responsible for the actions of third parties and thus when the FAC states that "those statements were intended to deceive consumers," the Court is not provided with further facts on how that would be the case. While the FAC states that Facebook "did essentially nothing" to investigate, it does not allege that Facebook has a duty to do more than it has done. Facebook's relevant policies only indicate the enforcement available to it and Facebook makes no guarantee as to how it will proceed in such investigations. The FAC acknowledges that Facebook did, in fact, use its enforcement against Cambridge Analytica by requiring that Cambridge Analytica delete its acquired data. That action was specifically laid out in the Data Use Policy that allowed Facebook to "delete user data if [used] in a way that [Facebook] determine[s] is inconsistent with users' expectations." FAC at ¶ 50.

Further, the FAC fails establish the second element of an ICFA claim, namely that Facebook intended for its users to rely on any alleged misrepresentations. A complaint alleging a violation of Consumer Fraud Act must be pled with the same specificity as that required under common law fraud." *Id.* Here, while the FAC alleges that Facebook's statements "intended to deceive consumers," Plaintiff does not state facts that support that allegation. Indeed, Plaintiff acknowledges that it was Cambridge Analytica who "intentionally violated Facebook's policies," which begs the question of how Facebook could have intended to deceive its users when it was itself was deceived. FAC at ¶ 103. In fact, this action by Facebook seems to contradict that Facebook intended to deceive users. Facebook's policies were clearly violated by Cambridge Analytica, which was admitted to in the FAC, and thus the FAC is contradictory when alleging that Facebook "permitted third parties, including Cambridge Analytica, to collect and harvest its user's personal data. . ." FAC at ¶ 125. By having a policy in place, Facebook could not intend for Cambridge Analytic to violate it. Thus, the FAC fails to set forth allegations that Facebook intended that its users would rely on the alleged misrepresentations.

As Plaintiff's FAC fails to sufficiently plead (1) a deceptive act or promise by Facebook, and (2) that Facebook intended for its users to rely on any deceptive act or promise, the Court finds that Plaintiff has failed to state a cause of action under the ICFA.  Accordingly, the Court grants Facebook's motion to dismiss pursuant to Section 2-615 without prejudice.  Moreover, having granted Facebook's motion pursuant to 2-615, the Court denies Facebook's 2-619(a)(3) request to stay proceedings in light of actions pending elsewhere.

## CONCLUSION

Defendant, Facebook, Inc.'s, motion to dismiss pursuant to 735 ILCS 5/2-301 and 735 ILCS 5/2-615 regarding personal jurisdiction is denied. Facebook's motion to dismiss pursuant to 735 ILCS 5/2-619(a)(3) is denied.  Defendant Facebook Inc.'s motion to dismiss pursuant to 735 ILCS 5/2-615 for failure to state a claim is granted without prejudice. This matter is set for status on April 20, 2021 at 10:00am.

Allen Price Walker
ENTERED:
Associate Judge

Mar. 08, 2021

_____
Circuit Court - 2071
Allen P. Walker

DATED: March 2, 2021

12