# Defendant's Exhibit 72

CONFIDENTIAL - PURSUANT TO THE PROTECTIVE ORDER

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3
 4   IN RE:  FACEBOOK, INC.,     MDL No. 2843
 5   CONSUMER USER PROFILE       Case No.
 6   LITIGATION                  18-md-02843-VC-JSC
     _____
 7   This document relates to:
 8   ALL ACTIONS
     _____
 9
10       **CONFIDENTIAL - PURSUANT TO THE PROTECTIVE ORDER**
11
12          ZOOM DEPOSITION OF FACEBOOK's 30(b)(6)
13          CORPORATE REPRESENTATIVE - ISABELLA LEONE
14       (Reported Remotely via Video & Web Videoconference)
15          Seattle, Washington (Deponent's location)
16                  Friday, August 5, 2022
17                         Volume 1
18
19   STENOGRAPHICALLY REPORTED BY:
20   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
21   Nevada CCR No. 827
     Oregon CSR No. 20-0466
22   Washington CCR No. 3491
23   JOB NO. 5345580
24
25   PAGES 1 - 369
```

Page 1

```
 1        Q.   (By Ms. Weaver)  No, that's fair.  That's      08:08:51

 2   fine.

 3             Just trying to understand -- you actually

 4   yourself created the document; is that right?

 5        A.   Yes.                                           08:08:57

 6        Q.   Okay.  And when you -- you wrote

 7   "Approximately 36 hours with counsel."

 8             Do you see that?

 9        A.   Yes.

10        Q.   Which counsel are you referring to?            08:09:09

11        A.   Gibson Dunn.  So Matt Benjamin and the

12   broader team.

13        Q.   And who else other than Mr. Benjamin?

14        A.   Martie Phuntso.  Matt -- Matt Buongiorno,

15   the other Matt.  Rose Ring and Naima Farrell.            08:09:23

16        Q.   Okay.  And anyone else?

17        A.   I don't believe so from the Gibson Dunn

18   team.  And then Ian Chen, our -- my -- the -- the

19   Meta lawyer who's also on the call.

20        Q.   Okay.  Did you meet with any other             08:09:42

21   lawyers during those 36 hours?

22        A.   No.

23        Q.   Okay.  Did you meet with any lawyers to

24   prepare at all?

25        A.   No, not aside from these lawyers.              08:09:53
```

Page 16

| | | |
|---|---|---|
| 1 | Q.  Okay.  Sometimes I'm asking you questions | 08:09:56 |
| 2 | and it may seem curious to you.  But again, we're | |
| 3 | laying foundation for a record that I'm just trying | |
| 4 | to make sure that I'm not missing something. | |
| 5 | When did you meet with counsel during | 08:10:08 |
| 6 | those 36 hours? | |
| 7 | A.  Those have been divided up over multiple | |
| 8 | weeks.  I think originally, towards the end of May, | |
| 9 | and then sessions over time that varied between an | |
| 10 | hour and three to four hours long.  And I don't | 08:10:23 |
| 11 | remember the exact number of sessions. | |
| 12 | Q.  And during those sessions, did counsel | |
| 13 | provide you with documents? | |
| 14 | A.  We discussed the documents for this | |
| 15 | deposition.  And then as well as documents from my | 08:10:37 |
| 16 | prep, whether that was external -- Facebook | |
| 17 | documents or documents that -- that we worked | |
| 18 | through about the products or anything relevant. | |
| 19 | Q.  And when you say "the external," what did | |
| 20 | you mean? | 08:10:54 |
| 21 | A.  Sorry.  I mean, articles such as like our | |
| 22 | help center or our news blog posts, areas where | |
| 23 | we've discussed our targeting and ranking | |
| 24 | externally.  And then as well as our internal | |
| 25 | references about those products as well. | 08:11:08 |

CONFIDENTIAL - PURSUANT TO THE PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | Q. And when you say "internal references," | 08:11:10 |
| 2 | what are you referring to? | |
| 3 | A. For example -- I'm trying to think of a | |
| 4 | good example that makes sense. | |
| 5 | I -- I'm -- I can double-check. I think | 08:11:30 |
| 6 | we used an internal wiki, which is kind of like our | |
| 7 | version of how we -- how -- how our internal, like | |
| 8 | way of documenting for teams to reference. | |
| 9 | And similar if -- if any internal | |
| 10 | announcements that were relevant. So I -- I | 08:11:49 |
| 11 | believe looking at like an internal announcement | |
| 12 | that helps us get our sales teams in -- prepared | |
| 13 | for an external announcement. So that's the -- | |
| 14 | that's an example of -- of an internal document | |
| 15 | that I looked at. | 08:12:04 |
| 16 | Q. Got it. | |
| 17 | And for the internal documents, did you | |
| 18 | provide those to counsel to discuss or did they | |
| 19 | provide them to you? | |
| 20 | MR. BENJAMIN: Objection to form. | 08:12:14 |
| 21 | MS. WEAVER: Let me ask differently. | |
| 22 | Q. (By Ms. Weaver) Did you provide any of | |
| 23 | those internal documents to prepare for your | |
| 24 | deposition? | |
| 25 | MR. BENJAMIN: Objection. Form. | 08:12:23 |

Page 18

| | | |
|---|---|---|
| 1 | THE DEPONENT:  I'm -- did I provide them | 08:12:26 |
| 2 | to my counsel or in our conversations, or look at | |
| 3 | them during those sessions? | |
| 4 | I'm not totally sure what you mean. | |
| 5 | Q.  (By Ms. Weaver)  Did -- did you yourself | 08:12:35 |
| 6 | identify any internal documents that you used to | |
| 7 | prepare for this deposition? | |
| 8 | A.  Without anyone else?  No, I -- I don't | |
| 9 | think so. | |
| 10 | Q.  Okay.  So the materials that you used to | 08:12:48 |
| 11 | prepare were largely, if not exclusively, curated | |
| 12 | by the attorneys; is that right? | |
| 13 | MR. BENJAMIN:  Objection to form. | |
| 14 | Misstates. | |
| 15 | THE DEPONENT:  I -- they weren't | 08:13:06 |
| 16 | exclusively from the legal team.  They could have | |
| 17 | been from the groups and the people we also worked | |
| 18 | on with my prep, our employees that aren't lawyers. | |
| 19 | Q.  (By Ms. Weaver)  And did you provide any | |
| 20 | documents to prepare? | 08:13:19 |
| 21 | MR. BENJAMIN:  Objection.  Form. | |
| 22 | THE DEPONENT:  I -- I don't believe I | |
| 23 | did, no. | |
| 24 | Q.  (By Ms. Weaver)  And how many documents | |
| 25 | did the team that you met with provide? | 08:13:28 |

Page 19

| | | |
|---|---|---|
| 1 | A.   The legal team or when -- | 08:13:34 |
| 2 |      (Simultaneously speaking.) | |
| 3 | Q.   (By Ms. Weaver)  The nonlegal -- | |
| 4 | A.   The nonlegal team -- | |
| 5 | Q.   Sorry. | 08:13:39 |
| 6 | A.   Go ahead. | |
| 7 | Q.   That's my fault.  I apologize. | |
| 8 |      How many documents did the nonlegal team | |
| 9 | identify and provide for you to use in preparation | |
| 10 | for this deposition? | 08:13:51 |
| 11 |      MR. BENJAMIN:  Objection.  Form.  Vague. | |
| 12 |      THE DEPONENT:  I -- I think -- I can | |
| 13 | think of like one document that -- that one of | |
| 14 | the -- one of the people I was speaking to | |
| 15 | referenced, and then I looked for that document. | 08:14:08 |
| 16 | Q.   (By Ms. Weaver)  And what document was | |
| 17 | that? | |
| 18 | A.   It was one of the sales announcements | |
| 19 | that I referenced ahead of an external | |
| 20 | announcement. | 08:14:17 |
| 21 | Q.   And did you find it useful in terms of | |
| 22 | preparing for your deposition? | |
| 23 | A.   Not particularly, to be honest. | |
| 24 | Q.   And why is that? | |
| 25 | A.   It didn't have -- it -- it didn't really | 08:14:28 |

Page 20

```
 1    give me the information I was looking for.              08:14:31

 2         Q.   Okay.  And what was the information you

 3    were looking for?

 4         A.   I was trying to understand what was an

 5    update we made in our targeting tools and it didn't    08:14:39

 6    actually describe it particularly in detail.  So it

 7    was not a very ref- -- helpful reference.

 8         Q.   Got it.

 9              And what year was the update that you

10    were thinking of?                                       08:14:53

11         A.   It was --

12              MR. BENJAMIN:  Objection to form.

13              THE DEPONENT:  Sorry.

14              MR. BENJAMIN:  Sorry, Isabella.

15              Objection.  Form.                             08:15:02

16              THE DEPONENT:  It was 20- -- 2013 or

17    2014.

18         Q.   (By Ms. Weaver)  And did you find the

19    answer that you were looking for with regard to

20    this update in 2013 and 2014?                           08:15:16

21         A.   Yes, I did.

22              MR. BENJAMIN:  Objection.

23         Q.   (By Ms. Weaver)  And -- and what was the

24    issue, if you don't mind explaining?

25         A.   Yeah, absolutely.                             08:15:26
```

Page 21

| | | |
|---|---|---|
| 1 | We had -- it was actually related to one | 08:15:27 |
| 2 | of the documents you -- you -- that's -- that was | |
| 3 | part of the deposition, the exhibits.  It was | |
| 4 | related to the -- the removal of our reach | |
| 5 | estimates. | 08:15:40 |
| 6 | Q.   Okay.  We'll return to that in a bit | |
| 7 | because I think what I want to do is try to be a | |
| 8 | little more methodical and talk about definitions, | |
| 9 | et cetera. | |
| 10 | Returning back to Exhibit 1 for just a | 08:15:53 |
| 11 | moment, you said -- you wrote here that you spent | |
| 12 | eight hours preparing on your own; is that right? | |
| 13 | A.   Yes. | |
| 14 | Q.   What did you do to prepare on your own? | |
| 15 | A.   I largely reread the documents that were | 08:16:05 |
| 16 | submitted, and then read the -- the -- the | |
| 17 | documents that the legal team had put together as | |
| 18 | well. | |
| 19 | Q.   Okay.  And when you wrote, "documents | |
| 20 | from Plaintiffs," did you mean the documents that | 08:16:18 |
| 21 | we identified for the deposition? | |
| 22 | A.   (Deponent nods head.) | |
| 23 | Q.   Okay. | |
| 24 | A.   Those as well as just the -- I -- I'm not | |
| 25 | sure if it make a difference, but the ones | 08:16:30 |

Page 22