| | |
|---|---|
| **RAÚL TORREZ, Attorney General**<br>P. Cholla Khoury<br>Jacqueline N. Ortiz<br>Judy Paquin<br> Assistant Attorneys General<br>P.O. Drawer 1508<br>Santa Fe, NM 87504<br>Tel: (505) 490-4060<br>*ckhoury@nmag.gov*<br>*jortiz@nmag.gov*<br>*jpaquin@nmag.gov*<br><br>David M. Berger (SBN 277526)<br>**GIBBS LAW GROUP LLP**<br>1111 Broadway, Suite 2100<br>Oakland, California 94607<br>Telephone: (510) 350-9700<br>Facsimile: (510) 350-9701<br>*dmb@classlawgroup.com* | **DICELLO LEVITT LLC**<br>Adam J. Levitt<br>Amy E. Keller<br>Ten North Dearborn St., Sixth Floor<br>Chicago, IL 60602<br>Tel.: (31) 214-7900<br>*alevitt@dicellolevitt.com*<br>*akeller@dicellolevitt.com*<br><br>Corban Rhodes (*pro hac vice* forthcoming)<br>485 Lexington Avenue, Suite 1001<br>New York, NY 10017<br>Tel.: (646) 933-1000<br>*crhodes@dicellolevitt.com* |

*Attorneys for Proposed Plaintiff-Intervenor State of New Mexico*

*[additional counsel on signature page]*

**IN THE UNITED STATES DISTRICT COURT<br>FOR THE NORTHERN DISTRICT OF CALIFORNIA<br>SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Case No. 3:18-MD-02843-VC<br><br>**STATE OF NEW MEXICO'S MOTION TO INTERVENE** |

**NOTICE OF MOTION**

Pursuant to Fed. R. Civ. P. 24, the State of New Mexico (the "State") moves to intervene in this action as of right. Fed. R. Civ. P. 24(a)(2). In the alternative, the State moves for permissive intervention. Fed. R. Civ. P. 24(b)(1)(B). This motion is based on the accompanying Declaration of Corban Rhodes ("Rhodes Decl."), the pleadings and papers on file herein, and the accompanying points and authorities.

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS.................................................................................................. 2

III. ARGUMENT ...................................................................................................................... 4

   A. New Mexico has a Right to Intervene Under Federal Rule of Civil Procedure 24(a)............. 4

      1. The State's motion is timely. ...................................................................................... 5

      2. The State has a "significantly protectable interest" related to this case............................ 6

      3. The disposition of this action may impair the State's ability to protect its interests. ....... 6

      4. The State's interests are not adequately represented by the parties to the action. ............ 7

   B. If the Court determines that the State does not have a right to intervene, it should grant permissive intervention under Rule 24(b). .................................................................... 8

IV. CONCLUSION................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arakaki v. Cayetano*,
 324 F.3d 1078 (9th Cir. 2003) ................................................................................................ 6

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
 712 F.3d 1349 (9th Cir. 2013) ................................................................................................ 9

*Christensen v. Hillyard, Inc.*,
 No. 13-CV-04389 NC, 2014 WL 3749523 (N.D. Cal. July 30, 2014) .................................... 7

*In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*,
 536 F.3d 980 (9th Cir. 2008) .................................................................................................. 4

*Glass v. UBS Fin. Serv., Inc.*,
 2007 WL 474936 (N.D. Cal. Jan.17, 2007) ............................................................................ 5

*Prete v. Bradbury*,
 438 F.3d 949 (9th Cir. 2006) ............................................................................................. 5, 6

*State of New Mexico ex rel. Raúl Torrez v. Facebook, Inc.*,
 No. D-101-cv-2021-00132 (Santa Fe Cty.) ............................................................ 1, 2, 3, 4, 8

*Roberts v. Heim*,
 No. C 84-8069 TEH, 1991 WL 427888 (N.D. Cal. Aug. 28, 1991) ........................................ 7

*United States v. Carpenter*,
 298 F.3d 1122 (9th Cir. 2002) ................................................................................................ 5

*Willner v. Manpower Inc.*,
 No. 11-CV-02846-JST, 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) .................................... 7

**Statutes**

New Mexico Unfair Practices Act ............................................................................................ 2, 8

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................................. 4, 5, 8, 9

# I. INTRODUCTION

The State of New Mexico has no interest in upending the carefully negotiated proposed settlement between the parties to this action (the "MDL Action"). However, earlier today, Facebook for the first time explicitly took the position that certain claims asserted in the State's action pending in a New Mexico court, *State of New Mexico ex rel. Raúl Torrez v. Facebook, Inc.*, No. D-101-cv-2021-00132 (Santa Fe Cty.) (the "New Mexico Action"), <u>will be released</u> by the Class Action Settlement Agreement and Release, ECF No. 1096-2 (the "Settlement Agreement") filed in this action. Therefore, because this Court's resolution of the pending motion for preliminary approval of the Settlement Agreement will impact the State's rights to bring its own claims, and because no party to the MDL Action represents New Mexico's interests, nor would any party be prejudiced by the State's intervention in this matter, the Court should grant the State of New Mexico's motion to intervene in order to protect and preserve its rights.

The State asks to be heard—briefly—at the March 2, 2023 hearing regarding the motion for preliminary approval of the Settlement Agreement, to ensure that any release of claims approved and ordered by this Court does not inadvertently or otherwise release claims raised in the State's parallel action pending in New Mexico against Defendant Meta.[1] Accordingly, the State seeks clarification that the Settlement Agreement does <u>not</u> release any of the State's claims. The State's request is consistent with the Court's Standing Order for Civil Cases ("Standing Order"), which states that "[a]bsent extraordinary circumstances, the Court will not enjoin current or future litigation in other courts based on conduct covered by [a class action settlement] release." Standing Order ¶ 57. Perhaps such an order would not normally be necessary in light of the Court's Standing Order guidance, but in light of Facebook's position here, the State believes that it is warranted.

---

[1] "Meta" and "Facebook" are used interchangeably herein, as the company is sometimes referred to by one or the other name.

## II.  STATEMENT OF FACTS

The State of New Mexico, by and through its Attorney General, brought suit on January 21, 2021 against Meta, Inc. (f/k/a Facebook, Inc.), in the New Mexico Action arising out of substantially the same facts and circumstances as those at issue in the MDL Action.  *See* Rhodes Decl. Ex. A (Complaint from the New Mexico Action).  The State alleged that Facebook violated the New Mexico Unfair Practices Act through misrepresentations, omissions, and other deceptive trade practices concerning, *inter alia*, the access that third party app developers had to New Mexico Facebook users' personal data.  *Id.*  These allegations arose from information that came to light beginning in 2018 regarding the Cambridge Analytica scandal, with which this Court is very familiar.  *Id.* at ¶ 4.  The New Mexico Action seeks statutory civil penalties, injunctive relief, and restitution.  *Id.* at ¶ 35.

The State became aware of the Settlement Agreement in this Action when it was filed on December 22, 2022.  The Settlement Agreement contains no direct reference to the claims brought by the State of New Mexico.  The definition of "Released Claims" in the Settlement Agreement is as follows:

> "Released Claims" means, with respect to Settlement Class Members, any and all claims, demands, rights, damages, arbitrations, liabilities, obligations, suits, debts, liens, and causes of action pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, regulation, decree, or order) of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including known or unknown claims as of the Notice Date by all of the Releasing Parties that were asserted or could have been asserted based on, relating to, or arising out of the identical factual predicate as the allegations in the Action, including but not limited to sharing or otherwise making accessible user data and data about users' friends with/to third parties (including but not limited to third-party developers, whitelisted parties, business partners, advertisers, and data brokers), and monitoring and enforcement of third parties' access to and use and/or sharing of user data with other third parties. This release expressly excludes relief arising out of the pending motion for sanctions in the Action at ECF Nos. 879, 911, 922, 984, and 999. The Parties reserve all rights, including appellate rights, to challenge orders regarding the pending motion for sanctions. The definition of "Released Claims" shall be construed as broadly as

> possible under Ninth Circuit law to effect complete finality over this Action. For the avoidance of doubt, the Parties agree that nothing in the Plan of Allocation or any other provision contained herein shall in any way limit the scope of the Release.

ECF No. 1096-2 at ¶ 73. On its face, the definition of "Released Claims" could arguably include claims brought by the State of New Mexico in the New Mexico Action; however, "Released Claims" is somewhat limited in that it only applies to "Settlement Class Members," defined as "any and all persons who fall within the definition of the Settlement Class," which in turn is defined to include "all Facebook users in the United States during the Class Period," subject to certain exclusions not relevant here. ECF No. 1096-2 at ¶¶ 47, 46. The State of New Mexico is not itself, of course, a "Facebook user." However, Facebook's conduct with respect to hundreds of thousands of New Mexico citizens who are Facebook users forms the basis of the State's complaint against Facebook in the New Mexico Action. Rhodes Decl. Ex. A.

Additionally, the Northern District of California's Procedural Guidance for Class Action Settlements requires Facebook to, within one day of the filing of the preliminary approval motion, notify "any plaintiffs with pending litigation … asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement." The State received no such notification from Facebook. Rhodes Decl. ¶ 4.

On January 13, 2023, the State sent Meta a letter, through its counsel in both the MDL Action and the New Mexico Action,[2] (i) noting that it had not received any such notice that Facebook "believe[s] may be released by virtue of the settlement," and (ii) seeking to confirm that "Meta agrees unequivocally that the Settlement Agreement does not release or otherwise impact any of the State's claims raised in the State's Action, and that Meta will not raise any arguments in any future proceeding to the contrary." Rhodes Decl. ¶ 3.

---

[2] Meta is represented by Gibson Dunn in both actions, and by at least some of the same attorneys in both cases, including the Gibson Dunn attorney to whom the letter was addressed, Mr. Russ Falconer.

STATE OF NEW MEXICO'S
MOTION TO INTERVENE                3                CASE NO. 3:18-MD-02843-VC

More than six weeks later, Meta has just this morning informed the State that its position is essentially the opposite—namely, that the Settlement Agreement *will* extinguish certain relief sought by the State in the New Mexico Action, at a minimum. Additionally, Meta has "reserve[d] all rights" with respect to whether the Settlement Agreement operates to extinguish *all* of New Mexico's claims. To be precise, Meta has stated its position as follows:

> To the extent that the State of New Mexico seeks to recover in *parens patriae* **or otherwise seeks restitution** on behalf of New Mexico consumers, Facebook anticipates taking the position that the release in **the proposed MDL settlement (if granted final approval by the MDL court) operates to release that claim. To the extent the State seeks to recover other relief (e.g., civil penalties), Facebook reserves all rights**.

Rhodes Decl. Ex. B (February 28, 2023 email from Meta's counsel) (emphasis added).

The State of New Mexico filed this Motion to Intervene immediately upon learning of Facebook's position, because the State believes it is imperative that the Court be aware of Facebook's interpretation of the Settlement Agreement as it considers whether to grant preliminary approval of that same agreement, so that it can take all appropriate measures to ensure that the Court does not inadvertently release claims raised against Facebook in other cases and jurisdictions.

### III. ARGUMENT

"Intervention is governed by Fed. R. Civ. Proc. 24(a) and (b)." *In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 536 F.3d 980, 984 (9th Cir. 2008). Here, New Mexico is entitled to intervene as of right under Rule 24(a)(2). In the alternative, this Court should permit New Mexico to intervene under Rule 24(b)(1)(b).

**A.  New Mexico has a Right to Intervene Under Federal Rule of Civil Procedure 24(a)(2).**

New Mexico has a right to intervene under Fed. R. Civ. P. 24(a)(2). That rule provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who: […] (2) claims

> an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

This Court examines four factors to determine whether an applicant should be permitted to intervene as a matter of right under Rule 24(a)(2): (1) the intervention motion is timely; (2) the movant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect its interests; and (4) the existing parties may not adequately represent the movant's interests. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).  The State easily satisfies each of these factors.

**1. The State's motion is timely.**

The State plainly meets the timeliness factor. The State first learned of Facebook's position that the State's claims will be released by the Settlement Agreement ***earlier today***.  Rhodes Decl. C. That is timely by any measurement. *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 474936 at *3 (N.D. Cal. Jan.17, 2007) ("Where a proposed intervenor seeks to intervene for purposes of objecting to a proposed settlement, timeliness generally is measured from the date the proposed intervenor received notice that the proposed settlement was contrary to its interest."); *see also United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (finding motion to intervene timely where proposed intervenors "acted as soon as they had notice that the proposed settlement was contrary to their interests").

The State's motion is especially timely here because the State proactively sought to clarify Facebook's position more than six weeks ago, despite Facebook's failure to provide the required notice under the Northern District of California Procedural Guidance for Class Action Settlements. After Facebook failed to respond to the State's request for clarification, the State followed up with

Facebook's counsel on at least three separate occasions, both in writing and over the phone, to demand a response. Rhodes Decl. ¶¶ 5–7. In short, there is nothing more the State could reasonably have done to raise this issue with Facebook and its counsel, or to raise it with this Court, in a timely fashion.

For the same reasons, the State's Motion to Intervene satisfies this Court's requirements for "other emergency relief" under the Court's Standing Order, because the State has "made every reasonable effort to notify the opposing party and the opposing party's counsel, at the earliest possible time, of its intent to seek emergency relief." Standing Order ¶ 4; Rhodes Decl. ¶ 9.

**2. The State has a "significantly protectable interest" related to this case.**

Facebook also cannot argue that the State lacks a "significantly protectable interest" related to this case, where it has taken the express position that the State's claims will be released by the Settlement Agreement, and therefore are directly impacted by how this Court rules on the pending motion for preliminary approval of the Settlement Agreement. The Ninth Circuit has found a "significant protectable interest" to be held by proposed intervenors with a far less direct interest in the outcome of the proceedings than the State has here. *See Prete*, 438 F.3d at 954–55 (discussing cases finding that "public interest group[s] may have a protectable interest in defending the legality of a measure it had supported").

**3. The disposition of this action may impair the State's ability to protect its interests.**

Similarly, the State also meets the third requirement, because the disposition of this action "may as a practical matter" impair or impede its ability to safeguard its protectable interests. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). If the proposed settlement does indeed release New Mexico's claims against the Defendant, this directly results in the State's inability to protect the interests of its citizens.

Because the State is a non-party, it clearly must be permitted to intervene in order to be

heard as to why the terms of the Settlement Agreement should not be interpreted as one of the parties, Defendant Facebook, would read it, *i.e.* to extinguish certain claims or forms of relief brought by the State in another jurisdiction without its consent. There are no extraordinary circumstances that would warrant extinguishing the State's claims pending in other courts via the release in the Settlement Agreement in this case. Facebook's position is also contrary to the law in this District, where courts have frequently rejected attempts to read settlement agreement language that broadly. *See, e.g.*, *Roberts v. Heim*, No. C 84-8069 TEH, 1991 WL 427888, at *5 (N.D. Cal. Aug. 28, 1991) (finding that the parties "may release only those claims for which s/he is certified," meaning class counsel must have "authority to settle the claims at issue" in order to release those claims); *Christensen v. Hillyard, Inc.*, No. 13-CV-04389 NC, 2014 WL 3749523 (N.D. Cal. July 30, 2014) ("[T]he settlement agreement suffers from an obvious deficiency in that it includes a release of class claims that is overly broad."); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) (same).

Additionally, as a practical matter, the State expects that the Court will want to hear and consider its position, not to mention *Facebook's* position about its interpretation of the Settlement Agreement, before ruling on preliminary approval of the Settlement Agreement and a class-wide notice program that will go out to millions of Class Members. Presumably that notice will go out to many New Mexico citizens, and the notice should accurately describe the Settlement Agreement and its impact on the rights of Class Members, including with respect to other pending litigation. In order for New Mexico to properly defend its interests and continue its pending litigation in state court, it must have the opportunity to be heard regarding the effect the proposed settlement may have on its claims. Therefore, the State meets the third Rule 24(a)(2) factor.

**4. The State's interests are not adequately represented by the parties to the action.**

Finally, the State's interests are not adequately represented by the parties to this action. The

burden on a proposed intervenor to demonstrate inadequate representation is "minimal," and is satisfied by a showing that representation of its interests "*may be*" inadequate. *Id.* at 1086 (quotation marks and citation omitted; emphasis added). Three factors are relevant to that inquiry: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* All three of those factors weigh strongly in favor of granting the State's motion to intervene here.

Clearly Facebook does not represent the State's interest as it is an adverse party seeking to extinguish the State's claims. Separately, the Class Plaintiffs and their counsel in this action have not participated in the New Mexico Action, nor do their claims here include any violations of the New Mexico Unfair Practices Act, the sole count alleged in the Complaint in the New Mexico Action. And Class Plaintiffs have their own fiduciary duties to the Class. In short, the State of New Mexico must be allowed to speak for itself here.

**B.    If the Court determines that the State does not have a right to intervene, it should grant permissive intervention under Rule 24(b).**

In the alternative, this Court should exercise its discretion to grant the State permission to intervene under Rule 24(b). That rule provides in pertinent part that, "On timely motion, the court may permit anyone to intervene who […] (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Generally, permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (quotation marks and citation omitted). In determining whether to exercise its discretion to grant permissive

intervention, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The State meets the requirements for permissive intervention here.

First, jurisdiction is present because there is diversity between the State of New Mexico and the California-based Defendant Facebook. Second, New Mexico's motion is timely, as explained above. Third, also for the reasons described above, this case squarely presents common questions of law and fact between New Mexico's claims and the main action, namely, concerning the viability of the State's claims subsequent to a judicial bar order enforcing the terms of the Settlement Agreement. Finally, the original parties to the MDL will suffer no conceivable prejudice. For all of these reasons, in the unlikely event it finds intervention as of right lacking, this Court should exercise its discretion to allow the State of New Mexico to intervene.

## IV. CONCLUSION

The State of New Mexico respectfully requests that its motion to intervene be granted so that it may be heard at the preliminary approval hearing scheduled for March 2, 2023, and so that the Court may grant such other relief as it deems appropriate and just in order to ensure that the claims raised by the State in another jurisdiction are not deemed released by the Settlement Agreement or this Court's orders relating thereto.

Respectfully submitted,

**RAÚL TORRES,**
**NEW MEXICO ATTORNEY GENERAL**

**By and through counsel:**

*/s/ David M. Berger*
David M. Berger (SBN 277526)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
dmb@classlawgroup.com

|   |   |
|---|---|
| 1 |   |
| 2 | P. Cholla Khoury<br>Jacqueline N. Ortiz |
| 3 | Judy Paquin<br>   Assistant Attorneys General |
| 4 | 408 Galisteo Street<br>Villagra Building |
| 5 | Santa Fe, New Mexico 87501<br>Tel: (505) 490-4052 |
| 6 | Email:  ckhoury@nmag.gov<br>           jortiz@nmag.gov |
| 7 |            jpaquin@nmag.gov |
| 8 | *And by special commission:* |
| 9 | Adam J. Levitt<br>Amy E. Keller |
| 10 | **DiCELLO LEVITT LLC**<br>Ten North Dearborn Street, Sixth Floor |
| 11 | Chicago, Illinois 60602<br>Tel: (312) 214-7900 |
| 12 | Email: alevitt@dicellolevitt.com<br>           akeller@dicellolevitt.com |
| 13 |   |
| 14 | */s/ Corban Rhodes*<br>Corban Rhodes (*pro hac vice* forthcoming) |
| 15 | **DiCELLO LEVITT LLC**<br>485 Lexington Ave., Tenth Floor |
| 16 | New York, NY 10017<br>Tel: (646) 933-1000 |
| 17 | Email: crhodes@dicellolevitt.com |
| 18 | Marcus J. Rael, Jr. |
| 19 | Jessica Nixon<br>**ROBLES, RAEL AND ANAYA, P.C** |
| 20 | 500 Marquette Avenue NW, Suite 700<br>Albuquerque, New Mexico 87102 |
| 21 | Tel: (505) 242-2228<br>Email: marcus@roblesrael.com |
| 22 |            jnixon@roblesrael.com |
| 23 | *Attorneys for Proposed Plaintiff-Intervenor, the* |
| 24 | *State of New Mexico* |
| 25 |   |
| 26 |   |
| 27 |   |
| 28 |   |

## ATTESTATION

I, David M. Berger, attest that for all conformed signatures indicated by a "/s/," the signatory has concurred in the filing of this document.

Dated: February 28, 2023

*/s/ David M. Berger*
David M. Berger