# Exhibit E

Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **DECLARATION OF JILL DESSALINES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Judge:  Hon. Vince Chhabria<br>Courtroom:  4, 17th Floor<br>Hearing Date: September 7, 2023<br>Hearing Time: 1:00 p.m. |

I, Jill Dessalines, declare as follows:

## I.      INTRODUCTION

1.      I was retained by Bleichmar Fonti & Auld LLP and Keller Rohrback L.L.P. ("Lead Counsel") to review, analyze and evaluate time records in connection with *In Re: Facebook, Inc. Consumer Privacy User Profile Litigation,* MDL No. 2843, Case No. 18-md-02843-VC-JSC (N.D. Cal.) ("Lawsuit") and opine on the reasonableness of the amount of time spent in prosecuting the Lawsuit.  I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards.  I have personal knowledge of the information it contains, and, if called as a witness, I could and would testify competently to that information. My initial compensation for this service was a flat fee that was agreed to and paid before I commenced any work on this matter.  I was subsequently compensated with a second flat fee for conducting additional analysis.  My compensation is in no way dependent on the opinions I express nor on the Court's determination of how much to award in attorneys' fees.

## II.     MY BACKGROUND AND EXPERTISE

2.      I am admitted to practice law in the State of California and have been an active member in good standing continuously since 1986. I graduated from Howard University School of Communications with a B.A. with honors, and graduated from Georgetown University Law Center with a J.D. in 1985. My C.V. is attached as Exhibit A.

3.      For the first 12 years of my practice, I represented large corporate clients in products liability, real estate, banking, employment and complex business litigation. Through that experience, I learned how to efficiently and effectively litigate cases from inception through trial, in keeping with the budgetary and case management requirements of my corporate clientele.

4.      In 1997 I began working in McKesson Corporation's Law Department as an in-house counsel, and for the next 17 years rose through the ranks from Senior Counsel, to Assistant General Counsel, to Vice President and ultimately to Senior Vice President.  During that time I was responsible for the management of hundreds of litigation and anticipated litigation matters involving billions of dollars in controversy in a wide variety of matters including products liability, mass tort, patent

infringement, class actions, trade secret, privacy, employment, and other business litigation. I was responsible for managing the defense of several large MDL matters primarily involving cases alleging pharmaceutical products liability, and I also managed the prosecution of several large patent infringement cases in which McKesson was plaintiff. In addition, I ran the Law Department's E-Discovery Group, as well as the General Counsel's Technology Organization, both of which familiarized me with large case data collection, review, processing and analysis.

5.      One of my responsibilities throughout my tenure at McKesson Corporation was the supervision of outside counsel in litigation matters that I managed. This supervision generally included devising high level strategy for each matter; negotiating fee agreements and overseeing case budgets; monitoring and enforcing adherence to case management and billing policies; reviewing, editing and approving work product; reviewing, analyzing and approving or rejecting and negotiating monthly bills for outside counsel fees and costs; serving as liaison between outside counsel and McKesson business executives; accompanying and counseling McKesson employees at depositions and hearings; and serving as client representative at mediations, settlement conferences, arbitrations and trials.

6.      For example, I managed the Fen-Phen pharmaceutical products liability litigation, which at the time was the largest MDL in history. In that case, I managed a National Coordinating Counsel team as well as all the local counsel in the jurisdictions of the coordinated cases. I also managed the Vioxx and Oxycontin MDLs and many other mass tort cases involving thousands of plaintiffs, dozens of counsel and billions of dollars in controversy, as well as many large plaintiff patent infringement cases, multi-defendant patent infringement cases and class actions. While the number of billers in these cases and many others varied depended on the particular matter, it was not unusual for me to review the time entries of 10 – 20 billers on one matter.

7.      Due to my earlier experience litigating and trying cases, I understand how to efficiently prosecute or defend a case, how to staff matters utilizing the most appropriate resource for each particular task, and in what sequence and to what degree to pursue strategic case objectives in order to deliver optimum results for reasonable costs.

8.      I performed the task of reviewing and analyzing monthly fee bills on an almost daily basis for 17 years.  Through that experience, I became skilled at assessing how much time should be spent on litigation tasks ranging from pre-filing investigation through pleadings, discovery, dispositive motions, class certification, mediation and settlement process, pre-trial proceedings and trial. I also honed my ability to determine the appropriate number and experience levels of lawyers and legal support to efficiently staff a matter; as well as how each task should be allocated among staff members for best and most efficient results.

9.      While I developed several techniques for assessing the reasonableness of outside counsel time that had general applicability across all cases I managed, I also considered the specific facts and circumstances of each matter in determining the issue of reasonableness.  Some of the factors that influenced my assessment were the complexity of the legal or factual issues presented, the novelty of the claims or defenses, the activities of the opposing counsel, the pace of the case scheduling order, the number of witnesses and documents, the amount in controversy, and the degree to which the goals of the litigation were effectively attained.

## III.    MY METHODOLOGY

10.     In order to understand the underlying facts, major claims and defenses, the degree of adversarial activity and the case schedule I reviewed the documents described in Exhibit B. I also reviewed the experience level and role of each biller as described in Exhibit C.[1]

11.     I prepared a timeline of case activities in order to determine if the sequencing of time spent and the duration of each task category were reasonable, efficient and appropriate.

12.     I reviewed the time entries comprising the time billed by Lead Counsel from March 2018 through May 2023 organized in spreadsheets containing 97,997 individual time entries.  I reviewed these time entries sequentially, sorted by task category and by biller.

---

[1] I was not asked to review the experience level or roles of billers whose time was submitted by other firms in this action.  The time they submitted was minimal by comparison to the time submitted by Lead Counsel.  My analysis of time submitted by other firms in this action is limited to whether each billing entry appears to have been appropriate, efficient, and effective, and not redundant or otherwise something that should not be included.  That analysis is below in ¶ 27.

13.     I reviewed the total hours billed by Lead Counsel in the Lawsuit[2], and evaluated the ratio between time spent by partners, associates, and support staff in the task groupings identified in Exhibit D and referred to below in Paragraph 16. This was one of the factors that permitted me to assess whether the staffing was appropriate to drive efficiency and reasonable billing practices.

14.     I analyzed each time entry from all task categories in several ways, including total time spent by biller, time spent for each task, time billed in task category groups compared to total time billed, and evaluated these time entries for redundancies, appropriateness, efficiency and effectiveness in achieving case goals.

15.     In my experience, task categories can vary by matter, and the assignment of time within them can vary because similar tasks can appropriately be classified differently by different billers. The task categories used by Lead Counsel included the following: 1. Lead Counsel Calls/Meetings, 2. Participating Counsel Calls/Meetings, 3. Lead Counsel Duties, 4. Case Management, 5. MDL Status Conferences; 6. Court Appearances, 7. Research, 8. Discovery, 9. Document Review, 10. Litigation Strategy; 11. Depositions, 12. Pleadings and Motions, 13. Experts, 14. Settlement, 15. Trial Preparation, and 16. Trial. Due to the overlap in many of these categories such as Lead Counsel Duties and Litigation Strategy, or Document Review, Discovery and Depositions, evaluating the proportionality of these task categories to total billing was not a useful analysis, because tasks were subject to more than one billing category with the result that similar tasks could be classified differently by different billers.

16.     Instead, I grouped these pre-existing task categories and analyzed them as follows: Group 1 - Lead Counsel Calls/Meetings, Participating Counsel Calls/Meetings, Lead Counsel Duties, Case Management and Litigation Strategy; Group 2 – MDL Status Conferences and Court Appearances; Group 3 – Research (which was primarily investigative in nature), Discovery, Document Review and Depositions; Group 4 – Pleadings and Motions; Group 5 – Experts, Trial Preparation and Trial and Group 6 – Settlement. The task groupings I used are attached as Exhibit D.

---

[2] Similarly, due to the relatively small number of billing entries by the firms referenced in ¶ 27, I did not need to divide my analysis by task groups identified in Exhibit D.

17.     In my experience, the amount of time devoted to discovery in a complex case is usually somewhere in the range of 50 – 70% of total time billed. Discovery in this case accounted for 79.7% of total time billed. My review of the case documents identified in Exhibit B revealed that the discovery practice in this case was highly unusual because of the number of discovery disputes and the extent to which defendant sought to prevent disclosure of information sought. For this reason, the ratios that I typically employ to determine how much time was spent on any given task category as compared to total time billed was not a useful analysis, as it was so heavily skewed toward the discovery effort.

18.     Over the course of the 17 years that I reviewed outside counsel fee bills, I focused on several factors that tended to negatively impact efficiency and reasonableness, including but not limited to the following: a) Inappropriate staffing; b) Excessive time spent on tasks; c) Administrative tasks and overhead billed as legal tasks; d) Improper sequencing of tasks; e) Insufficient description of tasks performed; f) Time billed for researching rudimentary legal knowledge that should already be known by an experienced legal professional (such as the amount of advance notice for a standard court filing required under the local rules); and g) Travel time devoid of legal work, except when the need to travel is caused by factors outside of counsel's control, such as the client choosing to use non-local counsel or multiple counsel in different locations.

19.     Of all of these factors, I have found that appropriate staffing is most important to the efficiency and reasonableness of time billed. Lean, appropriately-led and deployed staffing drives efficiency. Appropriate staffing requires the core leadership team to have a clear strategy that guides implementation of the sequenced litigation goals, provides the facility to pivot based on the fluid needs of the litigation and creates a cadence and composition of team meetings and other group endeavors to permit timely and efficient utilization and sharing of information. The team should employ a mix of partners and associates/support staff that permits the partners to both manage the disciplined implementation of workstreams by associates and support staff, as well as to actively pursue the goals of the litigation themselves. There should be clear lines of responsibility for the workstreams, and the tasks assigned to team members should be appropriate for their level of expertise and billing rates. For these reasons, I pay special attention to the composition of the core team, the wider team, the

workstreams, the frequency and duration of team meetings, and the number of attendees at depositions, mediations and court appearances.

20.    Following my review of time entries and my analysis of those entries I found inappropriate, I calculated the ratio between this questioned time and total time billed to assess the degree of inappropriate time billed by Lead Counsel. In my experience, a typical ratio acceptable by large corporate consumers of legal services is in the range of 10%, meaning that a reduction of that amount is considered fairly standard and not an indication of overbilling by outside counsel. This ratio may also indicate the degree of the efficiency and efficacy by outside counsel, because it shows the extent to which time was spent executing on litigation strategy without undue extraneous activity.

21.    I did not use AI or other software programs designed to analyze time entries in my review or analysis, although I made significant use of the sorting, sum and averaging functions of the excel spreadsheets reviewed. In my experience, evaluating the appropriateness and reasonableness of time devoted to litigation matters is not solely performed by reliance on mathematical calculations, though they can be useful in informing opinions about how a case was prosecuted or defended. Rather, the entirety of the litigation environment must be considered, including any constraints arising from court orders, adversary behavior, the number of documents and witnesses, the complexity of legal issues, and the degree to which counsel achieved a favorable result, among other factors. Consequently, while my methodology reflects the use of some mathematical calculations, I also considered nuances gleaned from the specific litigation environment in this matter, as informed by my experience.

## IV.    FINDINGS

22.    Lead Counsel submitted time of 96 billers in the Lawsuit, which included 36 dedicated document reviewers. The core team billers for Lead Counsel are Co-Lead Counsel Lesley Weaver and Derek Loeser and their partners and associates. The core billers from Ms. Weaver's firm, Bleichmar Fonti & Auld, are Ms. Weaver, Anne Davis, Joshua Samra, and Matthew Melamed. The core billers from Mr. Loeser's firm, Keller Rohrback, are Mr. Loeser, Cari Laufenberg, Christopher Springer, Emma Wright, David Ko, Benjamin Gould, and Adele Daniel. Each of these partners or associates billed more than 2,000 hours during the litigation.

23.     Lead Counsel expended 149,179.4 total hours prosecuting the Lawsuit; which included 5,869.1 hours (3.9% of total hours)[3] in Group 1 tasks (Lead Counsel Calls/Meetings, Participating Counsel Calls/Meetings, Lead Counsel Duties, Case Management and Litigation Strategy); 1,241.9 hours (.83% of total hours) in Group 2 tasks (MDL Status Conferences and Court Appearances); 118,946.1 hours (79.7% of total hours) in Group 3 tasks (Research, Discovery, Document Review and Depositions); 15,951.4 hours (10.6% of total hours) in Group 4 tasks (Pleadings and Motions); 794.2 hours (.53% of total hours) in Group 5 tasks (Experts, Trial Preparation and Trial) and 6,376.7 hours (4.2% of total hours) in Group 6 tasks (Settlement).

24.     Of the total time Lead Counsel billed, 24.4% was billed by partners and 75.6% by associates and support staff. In Group 1, 65.7% of time billed was by partners and 34.3% by associates and support staff. In Group 2, 85.6% of time billed was by partners and 14.4% by associates and support staff. In Group 3, 15.6% of time billed was by partners and 84.4% by associates and support staff. In Group 4, 52.3% of time billed was by partners and 47.7% by associates and support staff. In Group 5, 77.3% of time billed was by partners and 22.7% by associates and support staff. In Group 6, 62.0% of time billed was by partners and 38.0% by associates and support staff.

25.     Lead Counsel obtained a total of 2,135,905 documents consisting of 10,010,281 pages. Of this total, Lead Counsel reviewed and analyzed 732,376 documents, an average of 14.6 documents per biller, per hour. The average file size of each document per biller reviewed was 59.61Kb.

26.     The total time I suggested that Lead Counsel exclude equaled 560 hours. The total time I suggested that Lead Counsel exclude was .37% of total time billed. Of the time that I suggest Lead Counsel exclude, 20.8% was billed by partners and 79.1% by associates and support staff. The minimal amount of time I suggested be deleted fell into the following categories: administrative tasks, excessive time, insufficient description, presumed knowledge and duplication.

27.     I also reviewed the time of five law firms (Schonbrun Seplow Harris Hoffman & Zeldes LLP, Gustafson Gluek PLLC, Motley Rice LLC, and Cohen Milstein Sellers & Toll PLLC) whom the Court approved to perform limited work of representing their clients as Named Plaintiffs.  An additional

---

[3] Percentages total less than 100 because statistics were calculated only to one-tenth.

law firm, Lowenstein Sandler LLP, performed bankruptcy work, also with the approval of the Court. These firms billed a total of 778.55 hours in this Lawsuit. I determined that 29.3 of these hours were inappropriate and recommended their deletion, reflecting 3.7% of total time billed by these firms. The total time from these five firms accounted for .52% of Lead Counsel time and did not impact my statistical analysis above.

## V.   CONCLUSIONS

28.     Based on my review and analysis of the above-described time records, the experience level and expertise of the billers attached as Exhibit C and the list of case documents attached here as Exhibit B, I have reached the opinion that this Lawsuit was prosecuted with a very high degree of efficiency and with reasonable amounts of time spent on its overall prosecution.

29.     When assessing the factors impacting the manner in which Lead Counsel deployed resources in prosecuting the Lawsuit, I noted that the Court limited the number of law firms directly supporting the litigation to the two Lead Counsel firms, with the narrow exceptions identified above. In my experience, a multidistrict litigation of this complexity would sometimes have three or four law firms fulfilling that role, along with a steering and/or executive committee comprised of multiple firms supporting lead counsel. The impact of this limitation was significant and multifaceted. Because Lead Counsel were required to handle a large number of workstreams with a relatively small number of billers, they were forced to be efficient due to reduced opportunities to devote excessive time to litigation tasks.  On the other hand, this resource compression also required regular substantive team meetings to coordinate the implementation of strategic decisions and to guide workstreams. The fact that there were a relatively small number of core billers meant that several billers were required to attend court hearings, mediations, meetings (both internal and with opposing counsel), and depositions in order to contribute their knowledge of the workstreams for which they were responsible. More billers responsible for fewer workstreams would have resulted in fewer billers attending these case events, but would also likely have resulted in a lower level of efficiency.

30.     Taking into account these facts, as well as the other aspects in the litigation environment mentioned above, I reached the opinion that the number of meetings, their average length, and multiple

billers attending certain hearings, mediations and depositions was reasonable and necessary to the efficient prosecution of the Lawsuit.

31.     I have reached the opinion that the travel time billed by Lead Counsel in connection with the Lawsuit was reasonable. While under normal circumstances I would suggest the deletion of travel time devoid of legal work, here the appointment of two lawyers from different cities required this travel (which, in any event, was minimal for a case of this magnitude and length). Travel time spent going to and from court hearings and mediations was also reasonable in light of the fact that Lead Counsel came from two different cities, and travel to team meetings and strategy sessions was also reasonable for the reasons set out in Paragraphs 28 and 29.

32.     I have reached the opinion that the ratio of partner time to associate and support staff time across all task categories was reasonable and appropriate.  Utilization of the proper level of expertise was a key driver of efficient case management and significantly impacted the reasonableness of Lead Counsel's hours. Partner time accounted for 24.4% of total time billed, with associates and support staff accounting for 75.6%, which is an optimal proportion for deployment of legal talent. In addition, the fact that only 20.9% of the time I suggested be deleted was partner time; while 79.1% was for associate and support staff time, indicates that the core leadership team operated with a high degree of efficiency.

33.     The fact that I suggested the deletion of a mere .37% of Lead Counsel time demonstrates the extreme efficiency with which this case was prosecuted. As stated earlier, an edit rate of 10% is fairly standard in my experience, so less than 1% of edited time, out of nearly 98,000 time entries, is significant.

34.     I have reached the opinion that Lead Counsel achieved the goals of the Lawsuit to an exceptional degree.

*     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  19 day of June, 2023.

_Jill Dessalines_
_____
Jill Dessalines

4870-0985-5594, v. 4

# EXHIBIT A

**JILL DESSALINES**
**(510) 938-1896**
**jill.dessalines@gmail.com**

**PROFESSIONAL SUMMARY:**

Over the course of my 37 year legal career, I have tried complex cases for Fortune 100 corporate clients, navigated the law firm environment from first year lawyer to Managing Shareholder, moved in-house to a Fortune 7 corporation and there managed multi-billion dollar matters, devised high-level strategy in class actions, privacy, patent, mass tort, regulatory and commercial litigation and rose to the rank of Senior Vice President by earning the trust and respect of my colleagues and cross-functional partners.

Throughout my journey, I have sponsored and mentored countless others, and use my strategic skills and experience to coach clients on how to successfully navigate their law firm and in-house environments and develop and maintain corporate business relationships.

I leverage my deep knowledge of litigation strategy, business motivations and outside counsel management to advise others on how to best position their matters for maximum effect. Based on my extensive experience creating and managing legal fees, I also assist others in assessing the reasonableness of attorney's fees.

**EDUCATION:**

**Georgetown University Law Center** - Washington, D.C.
　　　J.D., May 1985
**Howard University, School of Communications** - Washington, D.C.
　　　 B.A., *cum laude*, May 1981
　　　 Major: Broadcast Management

**EXPERIENCE:**

**Strategic Advice for Successful Lawyers**
President – 2016 to present
　　　Provide consulting services to corporate legal departments, law firms, general counsel and other legal executives on how to effectively develop business, navigate environments and take their careers to the next level.

**12 Stones Developments Corporation**
Board Chair – 2018 to present
　　　Board leader to real estate development corporation focused on the provision of workforce housing in Nashville, Tennessee

**Prometheus Partners**
Chief Litigation Strategist – 2014 to present
      Master litigation strategist providing insight and advice on critical litigation issues.

**McKesson Corporation** - San Francisco, California
Senior Vice President - 2014;
Vice President and Chief Counsel, Corporate Affairs – 2012 to 2014
Chief Litigation Counsel - McKesson Technologies, Inc. - 2008 to 2012
Assistant General Counsel - 2000 to 2012
Senior Counsel – 1997 to 1999
      Supervised outside counsel and advised senior executives on multimillion dollar litigation on a nationwide basis for world's largest healthcare supply, information and care management company.  Worked with external auditors in preparation and updating of public company reports.  Implemented litigation policy on healthcare regulatory, customer and supplier disputes, intellectual property, privacy, trade secret, employment and other complex business litigation.  Founder of company-wide intellectual property committee responsible for devising comprehensive strategy and developing portfolio consistent with overall IP policy.  Lead e-discovery group, created and oversaw strategic technology program for General Counsel Organization. Managed staff of 10 direct reports, including attorneys.

**The Law Office of Robert H. Alexander, Jr., p.c.** - Oklahoma City, Oklahoma
Managing Director - 1993 to 1996
      Represented exclusively Fortune 500 corporate clientele in manufacturers' product liability defense, wrongful termination defense and general business litigation. Supervised and trained all junior attorneys in firm. Responsible for management of firm support staff and integrally involved in every aspect of law firm management including budgeting, establishment and implementation of firm office and labor policies and long-term business planning.

**Cox, Castle & Nicholson** - Los Angeles, California
Senior Associate - 1988 to 1993
      Represented real estate developers, contractors, brokers, investors and lenders in matters of general business litigation, construction defect litigation, developer and contractor liability, lender liability and remedies and enforcement of real property contracts before state and federal courts.

**Barton, Klugman & Oetting** - Los Angeles, California
Associate - 1986 to 1988
      Represented banking institutions, insurance carriers, conducted general business litigation and attorney malpractice defense.

**Friedemann, Stone, LaScala, Keto & Fingal** - Orange, California
Associate - 1985 to 1986

Conducted real estate, investment securities and general business litigation before state and federal courts; provided real estate transactional services.

**PROFESSIONAL LICENSES**:

Washington, D.C. 1985 (inactive); California 1986; Oklahoma 1993 (inactive)

**PUBLICATIONS:**

"Adapt or Die: Law Firms in Tomorrow's Economy" (5-part series), Law 360, October 28, 2016 to November 3, 2016

"My Milkshake is Better Than Yours: Disruption and the Mid-Size Law Firm" (2-part series), Law 360, May 24/25, 2017

"Bucking Tradition: NewLaw and the Coming Millennials" Law 360, June 26, 2017

"The Power of Self-Investment and the Myth of Meritocracy, LinkedIn, June 26, 2017

"Solotasking: It's Time to Slow Down" LinkedIn, December 19, 2017

"Everybody's Talking At Me" LinkedIn, April 4, 2018

"Strength + Passion = Purpose: How To Craft Your Narrative" LinkedIn, October 11, 2018

"Knowing When to Leave" LinkedIn, May 11, 2019

"How to Manage in a Crisis" LinkedIn, March 26, 2020

"Training People How to Treat You" LinkedIn, December 19, 2020

"Is it Really the Great Resignation, Or are People Minding their Own Business? LinkedIn, October 18, 2021

**SPEAKING ENGAGEMENTS:**

Business Development for Women Lawyers – AmLaw 100 Presentation; April/ May 2023
How to Meet the Challenges of Each Phase of Your Career, BWLLC, July 2022
How to Remain Seen and Engaged in a Virtual Environment, BWLNC, May 2022
Hybrid Networking Panel, California Minority Counsel Program, September 2021
Leadership Panel Discussion; The Belonging Project July 2021
Business Development Habits to Maximize Client Relationships; DF Alliance: Leadership Symposium, October 2020
Managing in a Crisis - AmLaw 100 Firm; March 2020
Managing Multiple Projects Successfully - AmLaw 100 Firm; March 2020

Creating Your Career Roadmap and Business Plan - AmLaw 100 Firm; January 2020
How to Negotiate Compensation - AmLaw 100 Firm; October 2019
Establishing Good Business Development Habits - AmLaw 100 Firm; September 2019
How to Ask for Business - AmLaw 100 Firm; September 2019
Effective Management of In-House Counsel - AmLaw 100 Firm; July 2019
Deciphering Corporate Power Dynamics - AmLaw 100 Firm; June 2019
Perfecting Your Elevator Pitch; Why Your Narrative Matters – Panel Discussion, Kerwin
Associates September 2018
The Matrix Client Development Technique: Deepening Your Client Relationships –
      AmLaw 100 Firm; September 2018
How to Negotiate Credits – AmLaw 100 Firm; August 2018
How to Close the Deal – AmLaw 100 Firm; July 2018
Making the Impactful Pitch – AmLaw 100 Firm; June 2018
Engaging in High Payoff Activities – AmLaw 100 Firm; May 2018
Panel Discussion on Executive Coaching; Put me In Coach - Association of
      Corporate Counsel – General Counsel Readiness Review; – May 2018
Optimizing your Firm Resources for Business Development – AmLaw 100 Firm; April
      2018
How to Build and Grow Client Relationships – AmLaw 100 Firm; March 2018
Understanding Your Corporate Clients' Reality – AmLaw 200 Firm; May 2018
Business Development Coach for Annual Conference Attendees – California Minority
Counsel Program; October 2017
Disruptive Innovation in the Legal Industry – AmLaw 200 Firm; January 2017
ABA Section of Litigation – The New Reality of Litigation Management; October
      2016

**LITIGATION HISTORY:**

<u>The Police Retirement System of St. Louis, etc. v. Granite Construction Inc., etc.,</u>
U.S.D.C. – ND California, Case No. 3:19-cv-04744-WHA  - expert consultant on
reasonableness of attorney's fees in securities class action
<u>In reL Facebook, Inc. Consumer Privacy User Profile Litigation,</u> U.S.D.C. – ND
California, MDL No. 2843, Case No. 18-md-02843-VC-JSC – expert consultation on
reasonableness of attorney's fees in privacy class action

**PROFESSIONAL AND COMMUNITY ORGANIZATIONS AND AWARDS**:

**American Bar Association –** Co-Chair Litigation Mgt., Corporate Counsel Committee
**Bar Association of San Francisco** – Corporate Counsel Section Co-Chair 2011 – 2014;
Board 2002 – 2005; Judiciary Chair 2000 – 2002
**Black Women Lawyers of Northern California** – Past President 2006 - 2008
**United Negro College Fund** - Executive Board 1999 – 2010
**Allen E. Broussard Scholarship Foundation** - Board of Directors 1998 – 2014
**Big Brothers / Big Sisters of the East Bay** - Board of Directors 1999 - 2002
**California Diversity Council 2012 Multicultural Leadership Award** - 2012
**Named One of California's Top 10 In-House Counsel by <u>Daily Journal</u>** - 2012

# EXHIBIT B

**Documents Reviewed by Jill Dessalines**

Application for Lead Counsel submissions by Weaver and Loeser

Motion to Dismiss

Second Amended Complaint

Case Management Schedules

Motion for Limited Discovery

Discovery Orders 1 – 13

Joint Stipulation on ESI Protocol

Pretrial Orders 4, 8, 11, 13, 20, 30, 33, 36, 37, 41, 42

Special Master Orders re discovery disputes

Deposition Schedules with Number and Identity of Deponents

Selected Discovery Letters regarding disputes

Various Motions to Compel

Order following 4-6-21 Discovery Conference

Order following 6-23-21 Discovery Conference

Order following 3-9-22 Discovery Conference

Order following 5-17-22 Discovery Conference

Motion for Sanctions briefing

Order for Sanctions

Motion for Preliminary Approval of Settlement briefing

Order Certifying Settlement Class; Preliminary Approval

# EXHIBIT C

**In Re: Facebook, Inc. Consumer Privacy User Profile Litigation**

**Class Counsel Timekeepers**

| Professional | Firm | Prof Type | Year of First Bar Admission | Years of Practice as of 2023 | Billing Rate | Total Time Billed | Total Lodestar |
|---|---|---|---|---|---|---|---|
| Aldridge, Emily | BFA | Associate | 2014 | 9 | $ 625.00 | 607.00 | $ 379,375.00 |
| Bard, Robert J. | KR | Discovery Analyst | 1982 | 41 | $ 480.00 | 576.70 | $ 276,816.00 |
| Bertero, Anthony | BFA | Staff Associate | 2012 | 11 | $ 450.00 | 3,344.00 | $ 1,504,800.00 |
| Bleichmar, Javier | BFA | Partner | 1999 | 24 | $ 1,150.00 | 148.40 | $ 170,660.00 |
| Bradley, Vera L. | KR | Discovery Analyst | 2017 | 6 | $ 475.00 | 513.10 | $ 243,722.50 |
| Cibulka, Britt | BFA | Special Projects Associate | 2002 | 20 | $ 470.00 | 74.30 | $ 34,921.00 |
| Coleman, Timothy | BFA | Staff Associate | 1992 | 30 | $ 470.00 | 797.30 | $ 374,731.00 |
| Cullen, Mark | KR | Discovery Analyst | 2014 | 9 | $ 475.00 | 246.00 | $ 116,850.00 |
| Culpepper, DeAnna | KR | Paralegal | n/a | 4 | $ 260.00 | 1,544.50 | $ 401,570.00 |
| Curran, Whitney | KR | Discovery Analyst | 2004 | 19 | $ 480.00 | 1,752.40 | $ 841,152.00 |
| Daniel, Adele A. | KR | Attorney | 2018 | 5 | $ 650.00 | 2,490.80 | $ 1,619,020.00 |
| Dao, William | KR | Discovery Analyst | 2016 | 7 | $ 480.00 | 1,525.20 | $ 732,096.00 |
| Davis, Anne | BFA | Partner | 2009 | 14 | $ 895.00 | 6,105.20 | $ 5,464,154.00 |
| Dillman, Jason | KR | Paralegal | n/a | 23 | $ 425.00 | 436.90 | $ 185,682.50 |
| Erickson, Karyn | BFA | Staff Associate | 2008 | 15 | $ 460.00 | 2,095.50 | $ 963,930.00 |
| Evans, John | KR | Paralegal | n/a | 14 | $ 330.00 | 1,844.90 | $ 608,817.00 |
| Fay, Alexandra V. | KR | Discovery Analyst | 2021 | 2 | $ 475.00 | 431.30 | $ 204,867.50 |
| Fierro, Eric | KR | Partner | 2009 | 14 | $ 875.00 | 968.00 | $ 847,000.00 |
| Fonti, Joseph | BFA | Partner | 2000 | 23 | $ 1,150.00 | 154.60 | $ 177,790.00 |
| Garfield, Christopher | KR | Discovery Analyst | 2005 | 18 | $ 480.00 | 4,495.70 | $ 2,157,936.00 |
| Garland, David | KR | Discovery Analyst | 2002 | 21 | $ 475.00 | 2,026.70 | $ 962,682.50 |
| Geisheimer, Ann | KR | Discovery Analyst | 2001 | 22 | $ 475.00 | 1,652.90 | $ 785,127.50 |
| Gerend, Matthew M. | KR | Partner | 2010 | 13 | $ 795.00 | 151.60 | $ 120,522.00 |
| Gonzalez, Sandy | BFA | Associate | 2020 | 3 | $ 665.00 | 61.80 | $ 41,097.00 |
| Gotto, Alex | KR | Paralegal | n/a | 8 | $ 330.00 | 262.20 | $ 86,526.00 |
| Gotto, Maxwell | KR | Paralegal | n/a | 5 | $ 305.00 | 294.20 | $ 89,731.00 |
| Gould, Benjamin B. | KR | Partner | 2007 | 16 | $ 895.00 | 2,503.60 | $ 2,240,722.00 |
| Graver, Christopher T. | KR | Partner | 1990 | 33 | $ 1,095.00 | 131.10 | $ 143,554.50 |
| Guglielmelli, Joseph | BFA | Staff Associate | 1982 | 40 | $ 495.00 | 668.80 | $ 331,056.00 |
| Horowitz, Amy | BFA | Staff Associate | 2004 | 18 | $ 395.00 | 165.80 | $ 65,491.00 |

**In Re: Facebook, Inc. Consumer Privacy User Profile Litigation**

**Class Counsel Timekeepers**

| Professional | Firm | Prof Type | Year of First Bar Admission | Years of Practice as of 2023 | Billing Rate | Total Time Billed | Total Lodestar |
|---|---|---|---|---|---|---|---|
| Jones, Kris C. | KR | Discovery Analyst | 2007 | 16 | $ 475.00 | 987.90 | $ 469,252.50 |
| Kilner, Paige | KR | Paralegal | n/a | 11 | $ 350.00 | 52.70 | $ 18,445.00 |
| King, Kevin | BFA | Staff Associate | 2009 | 13 | $ 395.00 | 148.80 | $ 58,776.00 |
| Kish, Charles M. | KR | Discovery Analyst | 1997 | 26 | $ 480.00 | 222.90 | $ 106,992.00 |
| Ko, David | KR | Partner | 2006 | 17 | $ 895.00 | 2,672.20 | $ 2,391,619.00 |
| Koo, Jooyoung | BFA | Projects Associate | 2013 | 10 | $ 525.00 | 148.60 | $ 78,015.00 |
| Korkhov, Tanya X. | KR | Attorney | 2001 | 22 | $ 660.00 | 243.90 | $ 160,974.00 |
| Korkhov, Tanya X. | KR | Attorney | 2001 | 22 | $ 440.00 | 185.00 | $ 81,400.00 |
| Kruse, Jordan | KR | Discovery Analyst | 2011 | 12 | $ 475.00 | 555.70 | $ 263,957.50 |
| LaDuca, Kimberly W. | KR | Attorney | 2014 | 7 | $ 400.00 | 55.30 | $ 22,120.00 |
| Lantz, Benjamin J. | KR | Partner | 1995 | 28 | $ 475.00 | 711.00 | $ 337,725.00 |
| Laufenberg, Cari Campen | KR | Partner | 2003 | 20 | $ 1,095.00 | 5,170.50 | $ 5,661,697.50 |
| Law, Julie | BFA | Paralegal | n/a | 7 | $ 385.00 | 486.50 | $ 187,302.50 |
| Lee, Zachary | BFA | Staff Associate | 1997 | 25 | $ 425.00 | 4,476.10 | $ 1,902,342.50 |
| Lenaburg, Harry J. | KR | Discovery Analyst | 1979 | 44 | $ 475.00 | 1,274.20 | $ 605,245.00 |
| Loeser, Derek W. | KR | Partner | 1994 | 29 | $ 1,200.00 | 3,887.10 | $ 4,664,520.00 |
| Long, Vanessa | KR | Discovery Analyst | 2017 | 6 | $ 475.00 | 953.50 | $ 452,912.50 |
| Mai, Luan | KR | Discovery Analyst | 2013 | 10 | $ 415.00 | 277.30 | $ 115,079.50 |
| Mankowski, Andrew | KR | Discovery Analyst | 1993 | 30 | $ 475.00 | 3,871.00 | $ 1,838,725.00 |
| Markham, Cynthia | BFA | Staff Associate | 2013 | 12 | $ 435.00 | 957.60 | $ 416,556.00 |
| Matteson, Eric N. | KR | Discovery Analyst | 2012 | 11 | $ 480.00 | 538.70 | $ 258,576.00 |
| McAdoo, Lori | KR | Paralegal | n/a | 27 | $ 395.00 | 801.80 | $ 316,711.00 |
| Melamed, Matthew | BFA | Partner | 2008 | 15 | $ 895.00 | 3,681.90 | $ 3,295,300.50 |
| Mensher, Ian J. | KR | Attorney | 2007 | 16 | $ 595.00 | 174.90 | $ 104,065.50 |
| Mittenthal, Robert | KR | Paralegal | n/a | 41 | $ 425.00 | 1,015.20 | $ 431,460.00 |
| Montgomery, Matthew | BFA | Of Counsel | 1996 | 26 | $ 740.00 | 1,293.80 | $ 957,412.00 |
| Moody, Janelle | BFA | Projects Associate | 2003 | 20 | $ 525.00 | 5,850.30 | $ 3,071,407.50 |
| Moran, Renee | KR | Paralegal | n/a | 9 | $ 260.00 | 65.30 | $ 16,978.00 |
| Morowitz, Rachel E. | KR | Attorney | 2018 | 5 | $ 525.00 | 74.60 | $ 39,165.00 |

In Re: Facebook, Inc. Consumer Privacy User Profile Litigation

Class Counsel Timekeepers

| Professional | Firm | Prof Type | Year of First Bar Admission | Years of Practice as of 2023 | Billing Rate | Total Time Billed | Total Lodestar |
|---|---|---|---|---|---|---|---|
| Myhr, Elizabeth | KR | Paralegal | n/a | 12 | $ 255.00 | 89.80 | $ 22,899.00 |
| Onaga, Naomi | BFA | Staff Associate | 2003 | 20 | $ 425.00 | 3,891.30 | $ 1,653,802.50 |
| Ornelas, Angelica | BFA | Associate | 2012 | 11 | $ 760.00 | 1,384.00 | $ 1,051,840.00 |
| Pacheco, Tessa | KR | Discovery Analyst | 2015 | 8 | $ 475.00 | 2,788.50 | $ 1,324,537.50 |
| Parrilla, Cavin | KR | Paralegal | n/a | 11 | $ 330.00 | 307.90 | $ 101,607.00 |
| Patrikios, Peter | BFA | Projects Associate | 2007 | 16 | $ 525.00 | 568.80 | $ 298,620.00 |
| Perez, Gayle C. | KR | Discovery Analyst | 2005 | 18 | $ 475.00 | 75.90 | $ 36,052.50 |
| Riel, Edward | BFA | Staff Associate | 2003 | 20 | $ 460.00 | 3,091.20 | $ 1,421,952.00 |
| Robertson, Kelsey | BFA | Paralegal | n/a | 7 | $ 350.00 | 474.20 | $ 165,970.00 |
| Saas, Hildja | KR | Discovery Analyst | 2006 | 17 | $ 440.00 | 1,776.10 | $ 781,484.00 |
| Sakthivel, Ravi K. | KR | Discovery Analyst | 2005 | 18 | $ 475.00 | 1,137.20 | $ 540,170.00 |
| Samra, Joshua | BFA | Associate | 2016 | 7 | $ 665.00 | 5,907.50 | $ 3,928,487.50 |
| Sarko, Lynn Lincoln | KR | Partner | 1981 | 42 | $ 1,320.00 | 438.40 | $ 578,688.00 |
| Scown, S.L. | KR | Paralegal | n/a | 3 | $ 295.00 | 72.30 | $ 21,328.50 |
| Simnowitz, Sara | BFA | Special Counsel | 2002 | 21 | $ 860.00 | 1,759.70 | $ 1,513,342.00 |
| Smith, Tyrone | KR | Discovery Analyst | 2008 | 15 | $ 480.00 | 2,466.00 | $ 1,183,680.00 |
| Springer, Christopher L. | KR | Partner | 2013 | 10 | $ 695.00 | 4,849.40 | $ 3,370,333.00 |
| Strakosch, Margaret | BFA | Projects Associate | 2018 | 15 | $ 525.00 | 3,614.70 | $ 1,897,717.50 |
| Strosky, Beth M. | KR | Attorney | 2001 | 22 | $ 475.00 | 219.90 | $ 104,452.50 |
| Sullivan, Kasey | BFA | Projects Associate | 2000 | 23 | $ 525.00 | 3,171.60 | $ 1,665,090.00 |
| Sum, Sylvia | BFA | Staff Associate | 2000 | 23 | $ 470.00 | 3,084.70 | $ 1,449,809.00 |
| Tamondong, Cesar | BFA | Paralegal | n/a | 19 | $ 350.00 | 201.00 | $ 70,350.00 |
| Tate, Ken L. | KR | Discovery Analyst | 2014 | 9 | $ 475.00 | 208.00 | $ 98,800.00 |
| Teller, Ralph | KR | Discovery Analyst | 1980 | 43 | $ 475.00 | 3,130.70 | $ 1,487,082.50 |
| Terlap, Michael F. | KR | Paralegal | n/a | 1 | $ 320.00 | 129.00 | $ 41,280.00 |
| Tiezazu, Y. Tizzy | KR | Paralegal | n/a | 6 | $ 305.00 | 491.20 | $ 149,816.00 |
| Trimble, Lynne | KR | Discovery Analyst | 1995 | 28 | $ 480.00 | 4,885.40 | $ 2,344,992.00 |
| Tsurudome, Glen | BFA | Staff Associate | 2005 | 18 | $ 495.00 | 2,764.50 | $ 1,368,427.50 |
| Tuato'o, Jennifer | KR | Paralegal | n/a | 24 | $ 425.00 | 4,204.70 | $ 1,786,997.50 |

**In Re: Facebook, Inc. Consumer Privacy User Profile Litigation**

**Class Counsel Timekeepers**

| Professional | Firm | Prof Type | Year of First Bar Admission | Years of Practice as of 2023 | Billing Rate | Total Time Billed | Total Lodestar |
|---|---|---|---|---|---|---|---|
| Tunkkari, Katja | KR | Paralegal | n/a | 4 | $ 330.00 | 2,102.10 | $ 693,693.00 |
| Ulmer, Daniel | BFA | Projects Associate | 2011 | 12 | $ 395.00 | 1,360.40 | $ 537,358.00 |
| Wax, David | BFA | Staff Associate | 2006 | 17 | $ 460.00 | 85.50 | $ 39,330.00 |
| Weaver, Lesley | BFA | Partner | 1997 | 26 | $ 1,150.00 | 4,814.40 | $ 5,536,560.00 |
| Weiler, Matthew | BFA | Associate | 2004 | 19 | $ 655.00 | 835.90 | $ 547,514.50 |
| Williams, Franklyn | BFA | Senior Projects Associate | 2007 | 16 | $ 545.00 | 656.80 | $ 357,956.00 |
| Willott, Brenna L. | KR | Discovery Analyst | 2012 | 11 | $ 480.00 | 445.90 | $ 214,032.00 |
| Wilson, S. Carolyn | KR | Discovery Analyst | 2014 | 9 | $ 440.00 | 130.90 | $ 57,596.00 |
| Wright, Emma M. | KR | Attorney | 2020 | 3 | $ 595.00 | 2,659.10 | $ 1,582,164.50 |
| | | | | | | **149,179.40** | **$ 90,522,944.00** |

4879-5953-3419, v. 1

# EXHIBIT D

**Task Groups**

Task Group 1 = Lead Counsel Calls/Meetings, Participating Counsel Calls/Meetings, Lead Counsel Duties, Case Management, Litigation Strategy

Task Group 2 = MDL Status Conferences, Court Appearances

Task Group 3 = Research, Discovery, Document Review, Depositions

Task Group 4 = Pleadings and Motions

Task Group 5 = Experts, Trial Preparation, Trial

Task Group 6 = Settlement

**4886-1679-8826, v. 1**