Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

*Additional counsel listed on signature page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: September 7, 2023<br>Hearing Time: 1:00 p.m. |

**<u>TABLE OF CONTENTS</u>**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND AND SUMMARY OF DEVELOPMENTS SINCE
       PRELIMINARY APPROVAL ................................................................................3

       A.     Summary of Settlement....................................................................................3

            1.     Settlement benefits...............................................................................3

            2.     Class definition ...................................................................................3

            3.     Released claims....................................................................................4

            4.     Fees, costs, and service awards...........................................................4

       B.     Notice and Administration ..............................................................................4

            1.     The notice program .............................................................................4

            2.     Claims, Opt Outs, and Objections.......................................................6

       C.     Other Relevant Events Since Preliminary Approval ...............................7

III.    THE SETTLEMENT MERITS FINAL APPROVAL .............................................8

       A.     Factors Considered at the Preliminary Approval Stage Still Support Final
            Approval ..........................................................................................................8

            1.     The strengths and risks of Plaintiffs' case ....................................9

            2.     Further litigation would be expensive, complex, and lengthy ...................9

            3.     The risks of certifying a class and maintaining the case as a class
                 action................................................................................................10

            4.     The relief offered in the Settlement is more than adequate ...................10

            5.     The Settlement is informed by extensive discovery .................................10

            6.     Experienced and skilled class counsel believe the Settlement is an
                 outstanding result ............................................................................11

            7.     There are no governmental participants in the Settlement.........................11

       B.     Class Members' Reactions to the Settlement Have Been Overwhelmingly
            Positive..........................................................................................................11

    1.   Class Members have made an extraordinary number of claims ...............11

C.  The Few Objections Received Do Not Undermine the Conclusion that the
    Settlement is Fair, Reasonable, and Adequate ........................................................13

    1.   Objections that do not provide required information................................14

    2.   Objection from claims aggregator ClaimClam .........................................14

    3.   Objections relating to the Settlement amount...........................................16

    4.   Objections relating to the failure to make Facebook change its
         behavior........................................................................................................18

    5.   Objections relating to notice ......................................................................19

    6.   Objections because settlement ends discovery .........................................20

    7.   Objections due to failure to require data deletion ....................................20

    8.   Objections related to no admission of guilt ..............................................21

    9.   Objections that reinforce the Settlement's adequacy................................22

    10.  Objections concerning the requested service award ................................22

    11.  Objections that do not apply ......................................................................23

IV.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................24

V.   CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ............................................................................13

*In re Anthem, Inc. Data Breach Litig.*,
  237 F.R.D. 299 (N.D. Cal. 2018) .........................................................................12

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................18

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) ...............................................................................8

*In re Apple Inc. Device Performance Litig.*,
  No. 5:18-md-02827, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ......................11

*Betorina v. Randstad US, L.P.*,
  No. 3:15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)................11

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................12

*Churchill Village v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .........................................................................12, 13

*Cotter v. Lyft, Inc.*,
  176 F. Supp. 3d 930 (N.D. Cal. 2016) ..................................................................8

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................8

*Cruz v. Sky Chefs*,
  No. C-12-02705 DMR, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)..................13

*Dist. of Columbia v. Facebook, Inc.*,
  No. 2018-CA-008715-B, 2023 WL 4131594 (D.C. Super. June 1, 2023) ..............7

*In re: EpiPen Marketing, Sales Practices and Antitrust Litig.*,
  MDL No. 2785, 2021 WL 5369798 (D. Kan. Nov. 17, 2021) ...............................23

*In re Facebook Biometric Information Privacy Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021) ..................................................................12

*In re Facebook Internet Tracking Litig.*,
    No. 5:12-md-02314-EJD, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ..........................12

*In the Matter of Facebook, Inc.*,
    No. C-4365, Order to Show Cause Why the Commission Should Not Modify
    the Order and Enter the Proposed New Order (F.T.C. May 3, 2023), available
    at https://www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-
    Show-Cause-(Redacted-Public).pdf..........................................................................................19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................8

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ..................................................................................................4

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-cv-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ...................................18

*Jabbari v. Wells Fargo & Co.*,
    No. 15-CV-02159-VC, 2017 WL 5157608 (N.D. Cal. July 8, 2017), *aff'd sub*
    *nom. Jabbari v. Farmer*, 813 F. App'x 259 (9th Cir. 2020)...................................................20

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...............................................................................................18

*Martin v. Sysco Corp.*,
    No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878 (E.D. Cal. July 19, 2019)......................11

*Mendoza v. Hyundai Motor Co.*,
    No. 5:15-cv-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017)..................................12

*Moore v. Verizon Commn's Inc.*,
    Case No. C: 09-1823.................................................................................................................14

*In re TikTok, Inc., Consumer Privacy Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) .....................................................................................12

*In re TracFone Unlimited Service Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................................................14

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab.*
    *Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 2212780 (N.D. Cal. May 17, 2017) ..........................12

*In re Yahoo! Inc. Consumer Data Security Breach Litig.*,
    No. 16-md-02752-LHK, 2020 WL 3212811 (N.D. Cal. July 22, 2020) ................................12

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
    No. 16-md-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ................................22

*In re Zoom Video Commn's, Inc. Privacy Litig.*,
  No. 3:20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ..................................12

**Statutes**

California Consumer Privacy Act, Cal. Civ. Code § 1798.105 .....................................................21

Video Privacy Protection Act ..........................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

<u>**NOTICE OF MOTION**</u>

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, September 7, 2023, at 1:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Vince Chhabria, Courtroom 4, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs hereby move the Court for approval of the settlement class and final settlement approval. Plaintiffs' motion is based on this notice, the accompanying Memorandum in Support; the Declaration of Derek W. Loeser and Lesley E. Weaver in Support of Plaintiffs' Motion for Final Settlement Approval ("Co-Lead Counsel Decl.") and the exhibits thereto, including the Declaration of Steven Weisbrot of Angeion Group, LLC in Support of Motion for Final Approval of Class Action Settlement ("Weisbrot Final Approval Decl.") (Ex. 1) and the Declaration of Jenny Shawver of Angeion Group, LLC re: ClaimClam Communications ("Shawver Decl.") (Ex. 2); the Declaration of Steven Weisbrot of Angeion Group, LLC re: Settlement Administration Protocol & Notice Plan ("Weisbrot Preliminary Approval Decl.") (Dkt. 1096-2); the Declaration of Jay C. Gandhi in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Gandhi Decl.") (Dkt. 1096-4); the Declaration of Lynn A. Baker in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Baker Decl.") (Dkt. 1096-5); the Named Plaintiff declarations in support of preliminary settlement approval (Dkt. 1096-8); the Declaration of William B. Rubenstein in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Awards ("Rubenstein Decl.") (Dkt. 1140-6); the Declaration of Brian Fitzpatrick in Support of Plaintiffs' Motion and Motion for Attorneys' Fees, Expenses, and Service Awards ("Fitzpatrick Decl.") (Dkt. 1140-7); the Declaration of Yacine Brahimi re: Meta's Notice of Settlement ("Brahimi Decl.") (Dkt. 1142); the complete files and records in this action; and such other evidence as the Court may allow.[1]

---

[1] Plaintiffs previously filed a [Proposed] Order Granting Final Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(2); Awarding Attorneys' Fees, Expenses, and Named Plaintiff Service Awards. Dkt. 1096-2, Ex. 1-G. Plaintiffs will file a revised proposed final approval order as required to address any issues identified by the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.        Whether the Settlement Class should be certified under Rule 23(b)(3); and

2.        Whether the Settlement should receive final approval under Rule 23(e)(2).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.        INTRODUCTION

This Settlement provides an excellent outcome for the Class. The non-reversionary

Settlement Fund of $725 million is the largest data privacy class action settlement ever and the

most Facebook has ever paid to resolve a private action. The outcome is extraordinary in light of

the developing state of the law on privacy, including precedent relating to standing for privacy

claims, consent, and theories of damages arising from Facebook's actions.

Plaintiffs now move for final Settlement approval. In granting preliminary approval, this

Court reviewed the Settlement with the same level of scrutiny as it would at the final stage and

found that it was "fair, reasonable, and adequate" under Rule 23(e)(2). Order Certifying

Settlement Class; Granting Preliminary Approval of Class Action Pursuant to Federal Rule of

Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice ("Preliminary

Approval Order"), Dkt. 1130 at 1. Since the Court's grant of preliminary approval, events have

confirmed that final approval should likewise be granted.

Plaintiffs' notice program has been robust, reaching 93.43% of the estimated Class, with

an average notice frequency of 3.16 times per Class Member. More than 50 million unique

visitors have visited the Settlement Website to date, and almost 15 million Facebook members

have expressed support for the settlement by filing claims. To the best of counsel's knowledge,

this is among the largest number of claims in a class action settlement. In contrast, to date, only

about 0.008% of estimated Class Members have opted out, and only about 0.000017% of the

estimated Class has objected. The objections are addressed below, and most concern issues not related to the case and none are sufficient to prevent approval of this settlement.

No State Attorney General has objected to the settlement to date, despite this Court's express order providing them opportunity to do so in advance of preliminary approval. Dkt. 1127 at 2-3. And major media entities, including the *New York Times*, CNN, the *Washington Post*, *Today*, CNBC, and many others, have directly encouraged participation. Weisbrot Final Approval Decl., ¶ 27 & Ex. I. Based on the current number of non-duplicative claims, and if the Court grants Plaintiffs' request for fees, expenses, and service awards, Class Members will recover an average of approximately $35 per person. (This is a preliminary average only—the amount each individual valid claimant receives may be significantly less or more depending on the total number of valid claims received, the amount of time other claimants were on Facebook during the Class Period, as well as the Settlement Administrator's final costs for notice and administration services.) Notably, Class Members who have been on Facebook the longest will receive more than those who were on for a short time. This is meaningful relief for users who did not pay out of pocket to use Facebook, especially in light of the legal and factual risks associated with continuing to litigate this case—risks highlighted by another court's entry of summary judgment last month in a similar case against Facebook.

Plaintiffs respectfully request that the Court certify the Settlement Class and grant final approval of the Settlement.

II.     **BACKGROUND AND SUMMARY OF DEVELOPMENTS SINCE PRELIMINARY APPROVAL**

A.     **Summary of Settlement**

1.     **Settlement benefits**

The Settlement creates a non-reversionary Settlement Fund of $725 million. The Net Settlement Fund—the Settlement Fund less costs, fees, expenses, and service awards—will be distributed to Class Members who timely submit valid claims. The proposed Plan of Allocation uses "allocation points" to divide the Net Settlement Fund among Authorized Claimants. For each calendar month at any time during the Class Period during which the Authorized Claimant was a Facebook user with an activated account, one allocation point is assigned. The Net Settlement Fund is then allocated to each Authorized Claimant pro rata based on each Authorized Claimant's share of all allocation points assigned.

In addition to these monetary benefits, Co-Lead Counsel required that Facebook provide confirmatory discovery and declarations attesting that the data-sharing practices that Plaintiffs have challenged have either stopped or are subject to monitoring under a 2020 consent decree between Facebook and the FTC. These changes and the FTC's monitoring program are discussed in the declarations of two current Facebook employees, Steven Elia and Elizabeth Dunphy, that were submitted along with the motion for preliminary approval. Dkts. 1094, 1095. They were also summarized in the declaration by Co-Lead Counsel. Dkt. 1096-1, ¶¶ 117-150. The cessation of friend sharing and the whitelisting practices are particularly meaningful, given the importance of those issues in this action.

2.     **Class definition**

The Settlement Class is defined as "all Facebook users in the United States during the Class Period," which runs from May 24, 2007 through December 22, 2022, inclusive. Dkt. 1130

at 1. There are limited exclusions from the Class of people connected to Facebook, counsel, and others who have participated in or overseen this litigation. *See id.* at 2.

### 3.    Released claims

The Settlement releases specified parties, including Meta and its current and former directors and officers, from all the claims asserted as part of this MDL as well as claims that have not been asserted but "aris[e] out of the identical factual predicate as the allegations" in the Action. Settlement Agreement ¶ 73; *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

### 4.    Fees, costs, and service awards

In a separate motion, Class Counsel have requested an award of 25% of the Settlement as attorneys' fees, which yields a modest lodestar multiplier of 1.99, reimbursement of expenses reasonably incurred in this litigation, and service awards of $15,000 for each of the eight Named Plaintiffs. Dkt. 1139.

## B.    Notice and Administration

### 1.    The notice program

The Notice program has been extensive and successful. The Settlement Administrator calculates that 93.43% of the Class received notice an average of 3.16 times each. Weisbrot Final Approval Decl. ¶ 9.[2] This far exceeds the 70% reach characterized as a "high percentage" by the Federal Judicial Center. *See* Weisbrot Preliminary Approval Decl., Ex. 1-B ¶ 14. It also exceeds the Settlement Administrator's pre-notice estimate. Weisbrot Final Approval Decl. ¶ 9.

To achieve these results, the Notice Plan engaged in a multimedia notice campaign. This included the successful delivery of individual in-app notice to 685 million Facebook accounts.

---

[2] The reach percentage figures, as well as the other percentages calculated in the Notice and Administration section, are based on a target audience of 253,524,000 individuals in the United States. Weisbrot Preliminary Approval Decl. ¶¶ 19-21.

Brahimi Decl., ¶ 4.[3] The in-app notices were viewed by 164.7 million Facebook users, and 29.5 million Facebook users clicked through to the Settlement Website. *Id.* ¶ 5. The Settlement Administrator also ran digital banner and social media advertisements, oversaw a paid campaign on Google to direct people searching for information about the Settlement to the Settlement website, ran publication notice in both *USA Today* and *People Magazine*, posted listings about the Settlement on websites that aggregate information about class-action settlements, and worked with a social media legal influencer to publicize the Settlement. Weisbrot Final Approval Decl. ¶¶ 9-26. In addition, due to the prominence of this case, there was a large volume of unpaid and unsolicited media coverage of the Settlement, further disseminating notice. *Id.* ¶ 27 & Ex. I. The *New York Times*, CNN, the *Washington Post*, *Today*, CNBC, and many others ran full articles, unsolicited, on their websites describing the Settlement, identifying the Class, and giving instructions on how to submit claims. *Id.*

As a result of the notice program, more than 53 million unique visitors have visited the Settlement Website so far. *Id.* ¶ 36.[4] The Settlement Website contains the Long-Form Notice, Claim Form, Opt-Out Form, Objection Form, a frequently asked questions page, a contact us page, and key filings and orders related to the Settlement. *Id.* ¶¶ 28-30. As of July 10, 2023, the Settlement Administrator had received (and responded to) more than 145,000 emails, the interactive voice response system had received more than 29,000 calls, more than 1,955,000 visitors to the Settlement Website had engaged with the chatbot, and the Settlement

---

[3] Notice was distributed to more account holders than Class Members because, according to Facebook, some individuals may be associated with more than one Facebook account. Each individual Facebook user may only submit (and receive payment for) one claim.

[4] Google Analytics creates a unique ID, stored in a browser's cookies, which is used to determine the number of unique visitors to a website. Unique visitors represent how many of these unique IDs access the Settlement Website. Weisbrot Final Approval Decl. n.3.

Administrator had mailed a copy of the Long Form Notice and/or a Claim Form to each of the 2,559 individuals who requested one or both.[5] *Id.* ¶¶ 29-30, 32, 38.

In addition, notice has been issued substantially in the manner and form set forth in the Settlement Agreement. In consultation with the Settlement Administrator and Facebook, Plaintiffs made one amendment to the Claim Form. Dkts. 1134, 1136. The amendment ensured a proper allocation of funds pursuant to the Plan of Allocation, by enabling Class Members who had deleted an account, and then activated a new account, to file a claim for the full time they had active Facebook accounts. Dkt. 1134 at 1. All claimants who had submitted a claim before the claim-form amendment received an email that enabled them to easily amend their claim. *Id.*; Weisbrot Final Approval Decl. ¶ 34 & Ex. O.

### 2.        Claims, Opt Outs, and Objections

The claims process has demonstrated the Class's positive response to the Settlement. As of July 10, 15,835,711 claims have been submitted. Weisbrot Final Approval Decl. ¶ 39. The Settlement Administrator conducted an initial review and determined that 960,313 of these claims are duplicative, and will assess the remaining 14,875,398 claims to ensure they are valid, including evaluating them for potential fraud. *Id.* ¶ 40. Further, a relatively high percentage of the Class has submitted claims. Based on an estimated Class of 250 million, the claims rate is already almost 6%—a rate that is well above claims rates approved in other large settlements.

---

[5] In addition, Plaintiffs' counsel has directly received email or telephone communications from 1,604 individuals about the Settlement. Co-Lead Counsel Decl. ¶ 3. The vast majority of the communications concern questions about whether the person is a Class Member, how to file a claim, and other settlement-related information. *Id.* Counsel has responded to each of the communications except where the person did not provide accurate contact information; where, after multiple attempts, the person's voicemail was still full; or, in one instance, where the communication appeared to present safety concerns. *Id.* ¶ 4.

*See infra* § III.B; *cf.* Weisbrot Preliminary Approval Decl. n.11 (estimating the expected number of claims submissions to between 1% and 2%).

In contrast to the large number of claims, a tiny percentage of the estimated Class has opted out or objected.[6] As of July 10, 2023, the Settlement Administrator has received 19,514 unique requests for exclusion. Weisbrot Final Approval Decl. ¶ 41. This number represents less than 0.008% of the estimated Class and is less than 0.14% of the number of claims. Even fewer people have objected. Only 43 objections have been filed to date, meaning that only 0.000017% of the estimated Class has filed an objection, reflecting 0.00029% of the claims received. The substance of the few objections received by July 10 is addressed below in § III.F.

## C.     Other Relevant Events Since Preliminary Approval

On June 1, 2023, the D.C. Superior Court granted summary judgment in Facebook's favor in a case based on nearly identical facts. The summary judgment order further demonstrates the risks Plaintiffs would have faced if litigation continued, and further demonstrates the fairness, reasonableness, and adequacy of the Settlement.

In that case, the D.C. Attorney General alleged that "Facebook failed to honor its promise to protect user data, instead exerting lax oversight and enforcement of third-party applications" in "five categories: (1) friend-sharing, (2) integration partnerships, (3) enforcement, (4) privacy settings, and (5) data-misuse disclosures, specifically involving Cambridge Analytica." *Dist. of Columbia v. Facebook, Inc.*, No. 2018-CA-008715-B, 2023 WL 4131594, at *2 (D.C. Super. June 1, 2023). In granting summary judgment, the court presiding over that case held that Facebook had accurately disclosed that engaged in friend sharing and had clearly disclosed that it may not enforce against third-party applications' misuse of Facebook user data. *Id.* at *4-9. The

---

[6] The opt out and objection deadline is July 26, 2023. Dkt. 1130 ¶¶ 15-16.

order granting Facebook's motion for summary judgment spotlights the risks to Plaintiffs and the Class of continuing to litigate the case.

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

To approve a class action settlement, a court must determine that the settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 780 (9th Cir. 2022) (quoting Fed. R. Civ. P. 23(e)(2)); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016). Because this Settlement was reached before class certification, it requires extra scrutiny. *Apple Device Performance*, 50 F.4th at 776; *see Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) ("the district court must apply a 'higher standard of fairness'" to settlements reached before class certification) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

This Court addresses a number of factors to determine whether a settlement is fair, reasonable, and adequate, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Cotter*, 193 F. Supp. 3d at 1035 (quoting *Hanlon*, 150 F.3d at 1026). Evaluation of these factors, as well as other considerations, strongly supports final approval.

### A.    Factors Considered at the Preliminary Approval Stage Still Support Final Approval

In considering whether to grant preliminary approval to the Settlement, the Court reviewed it with the same level of scrutiny as it is required to do now. Preliminary Approval Order ¶ 1. Plaintiffs' Preliminary Approval Motion addressed at length all but one of the factors

set forth above in § III. The Court's previous findings have been supported and not contravened in the intervening time since preliminary approval was granted. The remaining factor—the reaction of the class members to the proposed settlement—also supports final approval.

### 1.      The strengths and risks of Plaintiffs' case

The strengths and risks of Plaintiffs' case remain the same as they were at preliminary approval. Prelim. Mot. at 19-34. The strengths and risks that apply with equal weight to all claims (*id.* at 20, 34), and the strengths and risks specific to the contract-related claims (*id.* at 21-23), the Video Privacy Protection Act claim (*id.* at 23-26), the Stored Communications Claim (*id.* at 26-27), the negligence claim (*id.* at 27-28), the deceit-by-concealment claim (*id.* at 28-29), the privacy-based torts (*id.* at 29-30), the deprioritized claims (*id.* at 30-32), and the dismissed claims (*id.* at 33) are all subject to the same analysis as before. *See also* Rubenstein Decl. ¶¶ 44-46 (assessing the riskiness of the case); Fitzpatrick Decl. ¶ 26 (same).

Some of the risks have been further illuminated by the recent order entering summary judgment in *D.C. v. Facebook*, discussed above. Had litigation continued, Facebook would have been certain to raise this order as persuasive authority supporting summary judgment in its favor on Plaintiffs' contract-based claims, negligence claim, deceit-by-concealment claim, and the privacy-based torts.

### 2.      Further litigation would be expensive, complex, and lengthy

In moving for preliminary approval, Plaintiffs explained that further litigation would require additional expenses for depositions, testifying experts, and what would likely be a months-long trial. All these expenses would ultimately be deducted from the Class's recovery (if any). Prelim. Mot. at 34. Final approval is also supported by the additional complexity that would result from further litigation—including the need for extensive expert analysis on

technical issues, the use of aggregate information to prove Plaintiffs' claims, and the challenges of addressing class certification and summary judgment for 11 claims over a nearly 15-year period on behalf of a huge class. *Id.* at 35. Absent a settlement, the litigation would likely continue for many years before resolution. *Id.*

### 3. The risks of certifying a class and maintaining the case as a class action

Similarly significant are the risks associated with certifying a class and maintaining the case as a class action through trial. *Id.* at 35-36. While Plaintiffs would likely be able to certify a class for at least some of the claims based on Facebook's general practices, individualized issues could pose problems for other claims. *Id.*; *see* Fitzgerald Decl. ¶ 26 (addressing risks of certifying a class for litigation purposes).

### 4. The relief offered in the Settlement is more than adequate

The Settlement's relief is fair, reasonable, and adequate. The Settlement Fund of $725 million is as much as, and possibly more than, the amount produced by a realistic discount of the maximum recovery available at trial. Prelim. Mot. at 21-34, 37. Empirical analysis from expert declarations filed in support of Class Counsel's motion for attorneys' fees also support the conclusion that the relief here is substantial. *See* Rubenstein Decl. ¶ 47 ($725 million is in the top 1% of all common fund settlements and is therefore "an extraordinary sum"); Fitzpatrick Decl. ¶ 26 (concluding "that $725 million is more than fair value for the class's claims").

### 5. The Settlement is informed by extensive discovery

The Settlement has been informed by extensive, voluminous discovery (including confirmatory discovery) that allowed Plaintiffs to make a thorough evaluation of the strengths and weaknesses of their claims, and the fairness, reasonableness, and adequacy of the Settlement. Prelim. *See* Prelim. Mot. at 38-46.

6. **Experienced and skilled class counsel believe the Settlement is an outstanding result**

Co-Lead Counsel are highly experienced in consumer class actions and believe that the Settlement is an exceptional result. *Id.* at 46; *see also* Gandhi Decl. ¶ 20 (crediting counsels' "expertise and experience in these types of complex class actions").

7. **There are no governmental participants in the Settlement**

Because there are no governmental participants in this case or in the Settlement, this factor does not apply. *Betorina v. Randstad US, L.P.*, No. 3:15-cv-03646-EMC, 2017 WL 1278758, at *9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 3253878, at *6 (E.D. Cal. July 19, 2019). Moreover, the Court invited State Attorneys General to object to the proposed Settlement or request alteration to the Notice. Dkt. 1127. None did.

B. **Class Members' Reactions to the Settlement Have Been Overwhelmingly Positive**

Since the Class had not yet received notice when Plaintiffs moved for preliminary approval, this was the only factor Plaintiffs have not previously addressed. Even before the August 25 claims deadline, the results to date already demonstrate the Class's overwhelming support for the Settlement.

1. **Class Members have made an extraordinary number of claims**

Though 47 days remain before the claims deadline, more than 14.8 million Class Members have already submitted non-duplicative claims. Weisbrot Final Approval Decl. ¶ 40. The number of claims is not merely a function of the Class's size. About 6% percent of eligible Class Members have filed claims, a claims rate much higher than rates other courts have found sufficient to support final approval in data-privacy and data-breach cases. *See, e.g.*, *In re Apple*

*Inc. Device Performance Litig.*, No. 5:18-md-02827, 2023 WL 2090981, at *8 (N.D. Cal. Feb. 17, 2023) (approving a settlement with a 3.6% claims rate); *In re Facebook Internet Tracking Litig.*, No. 5:12-md-02314-EJD, 2022 WL 16902426, at *8 (N.D. Cal. Nov. 10, 2022) (approving a settlement with a claims rate approaching 2%); *In re Zoom Video Commn's, Inc. Privacy Litig.*, No. 3:20-cv-02155-LB, 2022 WL 1593389, at *4 (N.D. Cal. Apr. 21, 2022) (approving a settlement with a claims rate of about 1%); *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (approving a settlement with a 1.4% claims rate for the national subclass); *In re Yahoo! Inc. Consumer Data Security Breach Litig.*, No. 16-md-02752-LHK, 2020 WL 3212811, at *20 (N.D. Cal. July 22, 2020) (approving a settlement with a 0.6% claims rate); *In re Anthem, Inc. Data Breach Litig.*, 237 F.R.D. 299, 329 (N.D. Cal. 2018) (approving a settlement with a 1.8% claims rate); *but see In re Facebook Biometric Information Privacy Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021) (claims rate of 22% in a case concerning a single claim with statutory damages that was at a procedurally advanced stage, and where the single-state class was substantially smaller).

Whereas about 6% of the estimated Class has submitted claims, only 19,514 Class Members have opted out of the Settlement—just 0.008% of the estimated Class. Weisbrot Final Approval Decl. ¶ 41. This is a low percentage of opt outs; courts routinely grant final approval in settlements with more. *See, e.g.*, *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval when 0.56% of the class opted out); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 2212780, at *10 (N.D. Cal. May 17, 2017) (approving a settlement with a 0.11% opt out rate); *Mendoza v. Hyundai Motor Co.*, No. 5:15-cv-01685-BLF, 2017 WL 342059, at *8 (N.D. Cal. Jan. 23, 2017) (approving a settlement with a 0.017% opt out rate); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving a settlement where 4.86% of

the class requested exclusion). The low opt-out rate is particularly notable given the notice

program, in which more than 93% of Class Members received notice, and Facebook successfully

noticed more than 685 million account holders directly. Weisbrot Final Approval Decl. ¶ 9;

Brahimi Decl. ¶ 4.

### C. The Few Objections Received Do Not Undermine the Conclusion that the Settlement is Fair, Reasonable, and Adequate

To date, Plaintiffs have received 43 objections to the settlement. That is only 0.000017%

of the Class, or about 1 in every 5,800,000 estimated Class Members, a vanishingly small

proportion.[7] "A court may appropriately infer that a class action settlement is fair, adequate, and

reasonable when few class members object to it." *Cruz v. Sky Chefs*, No. C-12-02705 DMR,

2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014); *see Churchill Village*, 361 F.3d at 577

(affirming settlement approval where there were 45 objectors out of 90,000 notified class

members, an objection rate of 0.05%——almost 3,0000 times larger than the objection rate here).

However, "it is the nature of a settlement, as a highly negotiated compromise . . . that '[i]t may

be unavoidable that some class members will always be happier with a given result than others.'"

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). Below, Plaintiffs address each of the

objections and comments they received through July 10.

---

[7] Objections must be filed with the Court and are due by July 26. Dkt. 1130, ¶¶ 15-16. The Court has forwarded all objections filed with the Court as it receives them to Plaintiffs. Plaintiffs have filed all objections received as of July 10, *see* Dkt. 1144, and will file any further objections received after that date by July 30. Dkt. 1131. Additionally, a small number of objections have been sent directly to the Settlement Administrator or counsel, who have responded to these objectors and instructed them how to properly file their objections. *See* Preliminary Approval Order ¶ 15.

### 1.     Objections that do not provide required information

Eight of the objections fail to provide information required for consideration and cannot be considered.

Among other information, objection nos. 3, 16, 26, 33, 35, and 36 fail to state whether the objector used Facebook during the Class Period.[8] Dkt. 1144-1, objs. 3, 16, 26, 33, 35, 36. Because these objections fail to establish a basis for determining whether Class Members made them, they should not be considered. *See, e.g.*, *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (only class members have standing to object to a proposed class settlement). Though the Court "require[s] only substantial compliance with the[] requirements for submitting an objection," these objections do not meet that threshold. Preliminary Approval Order ¶ 15.

Two other objections, nos. 13 and 14, fail to provide any reason for objecting. *Id.* objs. 13, 14. Objections that do not identify any reason for objecting necessarily cannot, and therefore should not, be considered. *Cf. Moore v. Verizon Commn's Inc.*, Case No. C: 09-1823 SBA, 2013 WL 4610764, at *10 (N.D. Cal. Aug. 28, 2013) (overruling objections that do not provide a reason for objecting).

### 2.     Objection from claims aggregator ClaimClam

Objection no. 38 is filed by Zimin Hang concerning his role as CEO of a company called Communion Inc. (d/b/a ClaimClam). Dkt. 1144-1, obj. 38. Mr. Hang describes ClaimClam as "a company that helps class members to participate in consumer class actions." *Id.* In exchange for that assistance, ClaimClam charges Class Members 15% of their recovery as well as unspecified costs. *See* Co-Lead Counsel Decl., Ex. 3 (exemplar "Authorized Agent Agreement" and "Terms

---

[8] Objection no. 33 was also filed again as objection no. 39.

of Service" used by ClaimClam in conjunction with a claim it sought to file in this case). Mr. Hang objects to the Settlement because the Settlement Administrator has rejected 45 claims ClaimClam sought to file on behalf of individuals other than Mr. Hang. Mr. Hang has indicated that he has approximately 1,000 additional claims that he would like to file in similar fashion. Shawver Decl., Ex. A.

After consulting with the parties, the Settlement Administrator rejected the claims because, in violation of Settlement Agreement ¶ 98, they: (i) were signed by Mr. Hang, not the individual claimant; and (ii) requested payment be made to ClaimClam, not the individual claimant. Shawver Decl., Ex. A. Mr. Hang subsequently re-submitted the claims with the claimants' individual signatures, but each claim continued to use ClaimClam's payment information. *Id*. The Settlement Administrator again consulted with the parties, again rejected the claims, and asked Mr. Hang to inform each of the claimants that they could file claims via the Settlement Website. *Id.*

In addition to the failure to meet the Settlement Agreement's requirements, Plaintiffs are concerned that ClaimClam seeks to profit from Class Members' recovery in exchange for an unnecessary service. Mr. Hang asserts the refusal to accept these claims creates due process concerns because some people are not able to file claims themselves "due to personal reasons, medical issues, or limited access to the internet, for example." Dkt. 1144-1, obj. 38. But, whereas Class Members can request that the Settlement Administrator provide them claim forms via U.S. mail, *see* Weisbrot Final Approval Decl. ¶ 38 (noting that it has sent Class Members claim forms on request), ClaimClam's process is conducted wholly online and requires more time than filling

out the claim form available on the Settlement Website.[9] Mr. Hang relies on *Snyder v. Ocwen Loan Servicing, LLC*, which accepted late-filed claims from an individual who was "the proprietor of a then-nascent business specializing in assisting class members in consumer class actions exercise their rights to submit claims or opt-out of such litigation." No. 1:14-cv-08461, 2019 WL 2103379, at *3 (N.D. Ill. May 14, 2019). The claim form in *Ocwen*, however, does not appear to have requested that claimants provide payment information and therefore does not present the circumstance that exists here. *See* Co-Lead Counsel Decl., Ex. 4.

To be clear, Plaintiffs believe these claims should be considered by the Settlement Administrator. Plaintiffs therefore respectfully request that the Court order ClaimClam to submit to the Settlement Administrator claim forms from individuals who have signed up for the service and may be Class Members that are revised to include payment information that enables payment to be made directly to the individual claimants, not to ClaimClam. If ClaimClam cannot do so, Plaintiffs respectfully request that the Court order it to provide the claim forms to the Settlement Administrator along with all known contact information it has for each of the claimants, so that the Settlement Administrator can follow up with the claimants to ensure it can make payment of valid claims directly to those claimants.

However the Court resolves this objection, it is not a reason to reject the Settlement.

### 3.    Objections relating to the Settlement amount

Eleven objectors say the $725 million settlement amount is too low.

- Objection no. 12 calls the amount "a slap in the face to the millions of Facebook users whose privacy was repeatedly violated and personal data used to destabilize social and democratic institutions around the world." Dkt. 1144-1, obj. 12.

---

[9] According to ClaimClam's website, signing up for its service takes "7+ minutes." https://claimclam.typeform.com/fileclaim?utm_source=website. Plaintiffs believe this is likely longer than it takes to submit a claim on the Settlement Website.

- Objections no. 20 and 21, submitted by the same person, ask for payment of $100 million to the objector. *Id.*, objs. 20 & 21.

- Objection no. 25 objects that "the potential restitution per person harmed is not adequate for compensatory purposes," that the total Settlement "does not exceed the revenues derived from the dangerous privacy practices," and that, without more, "there will be a grave miscarriage of justice." *Id.*, obj. 25.

- Objection no. 24 wants "the full settlement amount without sharing with other Facebook users." *Id.*, obj. 24.

- Objection no. 32 states the "belie[f] that that the amount offered is inadequate to compensate for the damages done." (This objector also fails to state whether they used Facebook during the Class Period.) *Id.*, obj. 32.

- Objections no. 33 and no. 39, filed by the same individual, seek $700,000 individually due to the amount of irreparable harm Meta caused him by allowing access to his personal data by third parties without his consent. *Id.*, obj. 33.

- Objection no. 37 seeks "joinder" and asks for $4,000,000 in relief. *Id.*, obj. 37.

- Objection no. 42 says it is unfair that only the Settlement Class Representatives are being "highly compensated for their claims." *Id.*, obj. 42.[10]

- Objection no. 43 states the belief that "the settlement is too low a value for estimated participation settlement offer." *Id.*, obj. 43.

The objectors who seek recovery of the full settlement amount, $10 million, $4 million, and $700,000 individually fail to provide a reasonable basis for these amounts, and Class Counsel is unaware of any. It appears that these objectors' interest is in securing an unsupported personal windfall, not in achieving a better result for the Class. Like anyone in the Class who does not wish to be bound by the Settlement, these individuals may opt out and bring their own actions in which they seek these amounts.

While Class Counsel understand why some objectors may want a larger Settlement, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest

---

[10] To the extent this objection can be understood as a criticism of the requested service award amounts, Plaintiffs address that concern below in § III.C.10.

hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quotation and citation omitted). The compromise here—reached after years of hard-fought litigation—yields an unprecedented recovery: $725 million is the largest ever data privacy settlement, or the largest amount Facebook has ever paid in private litigation. *See* Prelim. Mot. at 12; Rubenstein Decl. ¶¶ 1, 45, 47; *cf. In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (issuing final approval and noting favorably that $115 million was the largest settlement ever reached in a U.S. data breach class action).

In addition, these objections unduly discount the value of "a timely, certain, and meaningful cash recovery" on one hand, while on the other ignoring the "significant additional costs" and delay associated with continuing the litigation, in which a larger (or any) recovery is uncertain. *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015). As Plaintiffs have explained, the delays and expenses of continued litigation would be substantial (*supra* § III.D.2; Prelim. Mot. at 34-35), and the risks of continued litigation are real and may have prevented any recovery at all (*supra* § III.D.1; Prelim. Mot. at 19-34, 35-37). "That certain Class Members evaluate the risks differently, or would prefer to go to trial despite those risks, does not prevent the Court from granting final approval to the Settlement." *High-Tech*, 2015 WL 5159441, at *7.

### 4. Objections relating to the failure to make Facebook change its behavior

Plaintiffs have received two objections concerning the failure to make Facebook change its behavior.

- Objection no. 4 says that Facebook's guarantees to protect consumers in the future remain unclear to the majority of the population. Dkt. 1144-1, obj. 4.

- Objection no. 28 says that the Settlement does not address the ongoing use of personally identifiable information ("PII") that was collected without the full knowledge and consent of Class Members. Dkt. 1144-1, obj. 28.

Class Counsel take these concerns seriously, and indeed they were the subject of considerable negotiation before the parties executed the final Settlement Agreement on December 22, 2022.

Regarding ongoing use of users' PII, Facebook remains under continued scrutiny by the Federal Trade Commission. Specifically, the FTC continues to monitor whether Facebook is sharing of user data without appropriate user authorization, and how Facebook has improved its monitoring of third parties' use of such data. *See* Prelim. Mot. at 38 n.19; *see also In the Matter of Facebook, Inc.*, No. C-4365, Order to Show Cause Why the Commission Should Not Modify the Order and Enter the Proposed New Order (F.T.C. May 3, 2023), available at

[https://www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-Show-Cause-(Redacted-Public).pdf](https://www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-Show-Cause-(Redacted-Public).pdf).

Moreover, Class Counsel demanded discovery sufficient to assure the Class that the practices at issue in this litigation have ceased. After extensive negotiation, Class Counsel required, as a condition of the Settlement, that Facebook provide sworn declarations establishing that it ceased the practices that gave rise to the claims in this case. *See id.* at 38-44. Among other things, Facebook no longer discloses friend data, no longer discloses information about users' video activities, and has substantially improved its oversight program to ensure third parties do not misuse Facebook user data. Declaration of Steven Elia in Support of Settlement, Dkt. 1094; Declaration of Elizabeth Dunphy in Support of Settlement, Dkt. 1095. These public declarations were submitted under oath and penalty of perjury.

### 5.       Objections relating to notice

One objection, no. 9, stated that the objector had not received proper notice and therefore could not submit a claim or participate in the Settlement. Plaintiffs' counsel contacted this objector to help her submit a claim. She indicated that she would formally withdraw the objection by submitting a letter to the Court.

### 6.  Objections because settlement ends discovery

According to objection no. 2, the objector "feel[s] that" the Settlement is simply Facebook's "effort to prevent further discovery to avoid incurring additional civil and potentially criminal actions." If this objector is concerned that the settlement will allow Facebook to evade responsibility for wrongdoing different than the kind at issue here, she need not be. The settlement releases only those claims asserted here or those claims that could be asserted based on an identical factual predicate. It does not extinguish Facebook's liability for other courses of misconduct.

If the objector believes that Plaintiffs have taken insufficient discovery on the kinds of misconduct that they have alleged, that belief is not well founded. Settlement was reached only after Plaintiffs had taken a great deal of discovery on a wide range of relevant misconduct, uncovering evidence that helped them negotiate a favorable settlement. *See generally* Dkt. 1140; *see also* Dkt. 1139 at 4-10. Objection no. 2 does not point to any kind of discovery that Plaintiffs failed to take but that she believes could have materially increased the settlement's value. And if further discovery "is itself a benefit of pursuing litigation," that benefit "must be weighed against the costs of further proceedings and the risk of forfeiting a recovery of real value to the injured class members." *Jabbari v. Wells Fargo & Co.*, No. 15-CV-02159-VC, 2017 WL 5157608, at *1 (N.D. Cal. July 8, 2017), *aff'd sub nom. Jabbari v. Farmer*, 813 F. App'x 259 (9th Cir. 2020). Here, for all the reasons discussed above, the "balance of costs and benefits" weighs in favor of this settlement. *Id.*

### 7.  Objections due to failure to require data deletion

Plaintiffs received one objection requesting that Facebook delete their data in its entirety. Dkt. 1144-1, obj. 3. This objection did not include the objector's name and did not state whether

the objector was ever a Facebook user. As such, the Court cannot consider this specific objection. *See supra* § III.C.1. Nevertheless, Plaintiffs address the substance of the objection.

The allegations in this case concern Facebook's improper dissemination of user data, not its improper collection of data. *See* Dkt. 298 at 1 (Plaintiffs allege that Facebook: "(i) made sensitive user information available to countless companies and individuals without the consent of the users; and (ii) failed to prevent those same companies and individuals from selling or otherwise misusing the information"). Moreover, Facebook also already provides each user the ability to delete their account, which "permanently delete[s]" the user's "profile, photos, posts, videos, and everything else you've added," except certain information shared with friends (which is stored in their accounts).[11] Here, the objector needs only to make this request for Facebook to delete it. And it requires developers of apps that access Facebook user data to "provide a way for users to request that their data be deleted."[12] (If the objector is a California resident, they can also request that Facebook delete their information under the California Consumer Privacy Act, Cal. Civ. Code § 1798.105.)

### 8.    Objections related to no admission of guilt

Plaintiffs received six objections from Class Members who want the Settlement to provide for criminal liability or require Facebook to admit it illegally shared information. *See* Dkt. 1144-1, objs. 2, 11, 34 (wanting Facebook to be found criminally liable); *id.*, objs. 11, 31 (wanting Facebook to admit illegality); *see id.*, objs. 8, 10 (in their entirety, the objections state: "illegally sharing info").

---

[11] Permanently Delete Your Facebook Account, https://www.facebook.com/help/2245628975 55674 (last visited July 11, 2023).

[12] Data Deletion Request Callback, https://developers.facebook.com/docs/development/create-an-app/app-dashboard/data-deletion-callback/ (last visited July 11, 2023).

Because this is a civil action, criminal liability is not at issue. Regarding an admission of illegality (or, more generally, an admission of wrongdoing), these responses ignore that requiring an admission of wrongdoing "would defeat an important purpose of settlement, and therefore render settlements less attractive to the parties, if the settlement agreement were required to include admissions of wrongdoing by the defendants." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752-LHK, 2020 WL 4212811, at *16 (N.D. Cal. July 22, 2020) (quotation marks and citation omitted).

### 9. Objections that reinforce the Settlement's adequacy

One objection seeks a larger allocation of the Settlement Fund for those who were on Facebook longer. Dkt. 1144-1, obj. 15. That is precisely what the Plan of Allocation contemplates. Plan of Allocation, Dkt. 1096-3 ¶ 5; *see* Prelim. Mot. at 37-38; Declaration of Lynn A. Baker in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1), Dkt. 1096-5. Thus, this objection misunderstands the allocation process and the heart of the objection is addressed already. Another objection states that Class Members should be able to file a claim for a different reason or in a different lawsuit. Dkt. 1144-1, obj. 4. Nothing in the Settlement or Release prevents them from doing so.

### 10. Objections concerning the requested service award

Objection no. 22 concerns the $15,000 that Plaintiffs requested as service awards for each of the eight Settlement Class Representatives. *See* Dkt. 1144-1, obj. 22 (objecting to the service awards "of $10-$15,000"). Plaintiffs note that this objection does not impact Settlement approval. The Court may deny Plaintiffs' request for service awards or reduce their amount and still approve the Settlement.

As noted in Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Expenses, and Service Awards, the total of $120,000 they seek in service awards constitutes only 0.0165% of the total Settlement, a percentage approved by the Ninth Circuit approved in another case. Dkt. 1139 at 30 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015)); *cf. id.* n. 10 (citing cases approving service awards of $15,000 or more for class representatives in other cases who participated in ways comparable to the Settlement Class Representatives here).

Objection no. 22 relies on a decision at "case 217-md-02785-DDC-TJJ, DOCUMETNT 2506, filed 11.17.21, page 6 of 23," which is characterized as denying requests for $5,000 service awards. Dkt. 1144-1, obj. 22. That is not entirely accurate. The court in that case awarded $5,000 service awards, the full amount requested, to each class representative that spent at least 60 hours working on the case. *In re: EpiPen Marketing, Sales Practices and Antitrust Litig.*, MDL No. 2785, 2021 WL 5369798, at *8 (D. Kan. Nov. 17, 2021). Some class representatives spent as much as 200 hours on the case, while some spent as few as 20, and the court reduced awards only for those who contributed fewer than 60 hours so that they did not receive a windfall. *Id.*

No such concern is present here. Each of the Settlement Class Representatives spent more than 100 hours on the case. *Compare In re: EpiPen*, 2021 WL 5369798, at *8, *with* Dkt. 1139 at 30 (each of the proposed service award recipients here spent more than 100 hours on this action). Moreover, the total service awards requested in that case were $175,000 and constituted 0.05% of the settlement amount—much more than here. *In re: EpiPen Marketing, Sales Practices and Antitrust Litig.*, MDL No. 2785, 2021 WL 5369798, at *7 (D. Kan. Nov. 17, 2021).

## 11.   Objections that do not apply

The plurality of objections are not applicable for various reasons:

- One objection contends Cambridge Analytica violated the First Amendment. Dkt. 1144-1, obj. 1. That claim was not alleged and is not released by the Settlement.

- One objection wants the Settlement to mandate that Facebook make the platform "PG-17" in light of nudity. *Id.*, obj. 7. The case does not concern nudity.

- One objection wants to amend the Complaint to assert (unstated) individual claims. *Id.*, obj. 33. The nature of the Class Action is that it includes all individual claims covered by the Release.

- Several objections address issues with individual accounts, such as account restrictions enacted by Facebook or wanting to reinstate hacked accounts. *Id.*, objs. 6, 17, 30. The case does not concern account restrictions or seek to reinstate accounts.

- Several objections want redress for being "scammed" through Facebook by third parties. *Id.*, objs. 18, 19; *see* obj. 40 (asserting that individuals who "received my information" made a movie about the objector that grossed around $500,000, and that an African attorney contacted the objector "to try to get me to do some illegal activity" in exchange for money). The case does not concern scams perpetrated through Facebook or with Facebook data by third parties.

- Several objections are difficult for Plaintiffs to understand, such as objections concerning account restrictions imposed by Facebook, seeking a "1983 Right Facebook information," raising issues with the IRS, asserting national security concerns. *Id.*, objs. 5 and 29 (submitted by the same objector), 16, 19, 27. The case does not concern these issues.

- Some objections are not objections at all. *See id.*, obj. 23 (objecting because "I was sent a notification on my Facebook feed"); objs. 36, 41 (requesting joinder).

## IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In the Preliminary Approval Order, the Court found that, for settlement purposes, on a preliminary basis: the proposed Settlement Class satisfied was sufficiently numerous to satisfy Rule 23(a)(1); that there were common questions of law and fact sufficient to satisfy Rule 23(a)(2); that the claims of the proposed Settlement Class Representatives were typical of the claims of the Settlement Class and therefore satisfied Rule 23(a)(3); and that Class Counsel and the Settlement Class Representatives would (and had) fairly and adequately represent the interests of the Class and satisfied Rule 23(a)(4). Preliminary Approval Order ¶¶ 3-4. The Court

also preliminarily found that common questions predominate over individual questions and that a

class action is superior to other methods for adjudicating the case, and therefore that the case

satisfies Rule 23(b)(3). *Id.* at 1 (predominance and superiority), ¶ 3 (predominance). And the

Court preliminarily appointed Co-Lead Counsel as Class Counsel based its evaluation under

Rule 23(g). *Id.* ¶ 4.

There have been no changes that would affect the Court's analysis of Rule 23(a),

23(b)(3), or 23(g) between the date Plaintiffs filed their Preliminary Approval Motion and now.

Other than the limited and unpersuasive objections addressed above in § III.C, Class Counsel is

not aware of any other concerns expressed about the Settlement, the proposed Class

Representatives, or proposed Class Counsel. Plaintiffs therefore respectfully ask the Court to

certify the Settlement Class, appoint the Named Plaintiffs as Settlement Class Representatives,

and appoint Co-Lead Counsel as Settlement Class Counsel.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court certify the Settlement Class and grant final

approval to the Settlement.


Dated: July 11, 2023                                    Respectfully submitted,


KELLER ROHRBACK L.L.P.                         BLEICHMAR FONTI & AULD LLP

By:    */s/ Derek W. Loeser*                    By:    */s/ Lesley E. Weaver*
       Derek W. Loeser                                  Lesley E. Weaver

Derek W. Loeser (admitted *pro hac vice*)       Lesley E. Weaver (SBN 191305)
Cari Campen Laufenberg (admitted *pro hac vice*) Anne K. Davis (SBN 267909)
David Ko (admitted *pro hac vice*)              Matthew S. Melamed (SBN 260272)
Adele A. Daniel (admitted *pro hac vice*)       Angelica M. Ornelas (SBN 285929)
Benjamin Gould (SBN 250630)                     Joshua D. Samra (SBN 313050)
Emma M. Wright (admitted *pro hac vice*)        1330 Broadway, Suite 630
Daniel Mensher (admitted *pro hac vice*)        Oakland, CA 94612

Michael Woerner (admitted *pro hac vice*)
Matthew Gerend (admitted *pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
dko@kellerrohrback.com
adaniel@kellerrohrback.com
bgould@kellerrohrback.com
ewright@kellerrohrback.com
dmensher@kellerrohrback.com
mwoerner@kellerrohrback.com
mgerend@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Eric Fierro (admitted *pro hac vice*)
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088
Fax: (602) 248-2822
efierro@kellerrohrback.com

Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
mmelamed@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Co-Lead Counsel*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of July, 2023, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

**CERTIFICATE OF SERVICE**

I, Julie Law, hereby certify that on July 11, 2023, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ *Julie Law*
Julie Law