UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION,<br><br>This document relates to:<br><br>ALL ACTIONS | CASE NO. 3:18-MD-02843-VC<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(E)(2)** |

1  WHEREAS, Plaintiffs Steven Akins, Jason Ariciu, Anthony Bell, Bridgett Burk, Terry Fischer, Tyler King, Jordan O'Hara, and Cheryl Senko (together, "Settlement Class Representatives"), and Defendant Facebook, Inc., now known as Meta Platforms, Inc. ("Meta") (collectively the "Parties"), entered into a Class Action Settlement Agreement and Release (the "Settlement Agreement") on December 22, 2022 (Dkt. No. 1096-2), which, together with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this Action and for its dismissal with prejudice;

WHEREAS, by Order dated March 29, 2023, the Court granted preliminary approval of the Settlement between the Parties in the Action, ordering notice to Settlement Class Members through both in-app notice and publication notice through a comprehensive media plan, and providing Settlement Class Members with an opportunity either to exclude themselves from the Settlement Class or to object to the Settlement (Dkt. No. 1130);

WHEREAS, by Order dated March 29, 2023, the Court also provisionally certified the Settlement Class for settlement purposes only, finding that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that the Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class (*id.*);

WHEREAS, the Court held a Final Approval Hearing on September 7, 2023, to consider approval of this Settlement (Dkt. No. 1173);

WHEREAS, the Court has considered the Settlement Agreement, the record in this Action, and the Parties' arguments and authorities;

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:

1.  All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise herein or in the Court's Order Granting Preliminary Approval of the Settlement.

2.  The Court has jurisdiction over this Action and the Parties.

**Notice, Class Certification, and Class Representation**

3.  The Court finds that the Notice Plan constituted the best notice practicable under the

circumstances to all Settlement Class Members and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4. All objections to the Notice Plan are overruled. The Court finds that as of July 11, 2023, more than 93% of the target audience of 253 million Americans had received notice, each with an average frequency of more than 3 times. Dkt. No. 1145 at 4-6; Dkt. No. 1145-2 ¶ 9. The notices were written in sufficiently plain language and "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quotation and citation omitted).

5. The Court confirms the finding in its Preliminary Approval Order that, for purposes of the Settlement only, all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied. It therefore certifies the following Settlement Class:

> All Facebook users in the United States between May 24, 2007, and December 22, 2022, inclusive.

Excluded from the Settlement Class are (i) Meta and its employees, alleged co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; (ii) counsel for any plaintiff whose case was consolidated into this MDL and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; (iii) individuals who submitted timely and valid exclusion requests, each of whom is included on the list provided by the Settlement Administrator attached as Exhibit A hereto; (iv) the Discovery Mediators, Special Master, and Settlement Mediator who participated in this case and their staff; and (v) the Judges and Court staff to whom this Action is or was assigned.

6. The Court overrules the objection to the Class definition. Dkt. No. 1155. Only natural persons can create Facebook accounts, and accordingly only natural persons who set up accounts can file claims. The Class definition is therefore clear about whether it includes non-natural persons. The process for filing a claim was thoroughly explained in the notice process, which involved providing the name, email address or phone number of the person who established the account. The Court also disagrees with objectors who argue that there are any conflicts within the Class that require subclassing or changes to the class definition. Dkt. No. 1147.

7. The Court confirms its previous appointment of Steven Akins, Jason Ariciu, Anthony Bell, Bridgett Burk, Terry Fischer, Tyler King, Jordan O'Hara, and Cheryl Senko as Settlement Class Representatives. The Court finds that these Settlement Class Representatives have fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class.

8. The Court confirms its previous appointment of Class Counsel as counsel representing the Settlement Class under Federal Rule of Civil Procedure 23(g). The Court finds that Class Counsel have fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class.

9. The Court confirms its earlier appointment of Angeion Group to serve as the Settlement Administrator and finds that it thus far has fulfilled its duties under the Settlement. The Court orders that the Settlement Administrator be paid in accordance with the Settlement Agreement.

## Approval of the Settlement under Rule 23(e)

10. Pursuant to Federal Rule of Civil Procedure 23(e), the Court, applying the heightened scrutiny appropriate to settlements reached prior to a ruling on class certification, hereby grants final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members. The Court grants final approval based on the following factors, among other things:

    a. Class Counsel and the Settlement Class Representatives ably protected and furthered the best interests of the Class at every step in this action. The benefits they have provided the Class, under the circumstances of this case, merit the fees, costs, and service awards made in the Court's separate Order on attorneys' fees, costs, expenses, and service awards.

    b. There is no fraud or collusion underlying this Settlement, and it was reached as a result of extensive arm's length negotiations. Courts often intone that the involvement of a mediator cuts in favor of a conclusion that the settlement is reasonable. Usually, that is based on the unproven and dubious assumption that mediators are trying to broker a fair settlement, as opposed to simply trying to broker a settlement. And the Court has rejected many settlements reached with

|   |   |
|---|---|
| 1 | the assistance of a mediator. Nonetheless, in this particular case, the Court is |
| 2 | aware, based on communications with mediator Jay Gandhi, that his |
| 3 | involvement was critical in brokering a fair settlement. In addition, District |
| 4 | Judge Jacqueline Scott Corley, who previously presided over discovery disputes |
| 5 | in this matter, was involved in brokering the settlement. In addition to the |
| 6 | involvement of these mediators, the Court has performed its own, independent |
| 7 | analysis of the Settlement's fairness, reasonableness, and adequacy pursuant to |
| 8 | Federal Rule of Civil Procedure 23(e)(2). *See Briseño v. Henderson*, 998 F.3d |
| 9 | 1014, 1022 (9th Cir. 2021). |

c. The Settlement provides excellent relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would likely be complex, expensive, and lengthy. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's approval of a settlement where class counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

d. The $725 million Settlement provides substantial benefits for the Class in light of the strengths and weaknesses of the claims asserted. Class Counsel and the Court have carefully evaluated those strengths and weaknesses. Dkt. No. 1096 at 19-36. Based on the stage of the proceedings and the amount of investigation and discovery completed, the Parties have developed an extensive factual record with which to evaluate their chances of success at trial and the proposed Settlement.

e. The support of Class Counsel and the Settlement Class Representatives, who have participated in this litigation and evaluated the proposed Settlement, also

favor final approval. *See Class Plaintiffs*, 955 F.2d at 1294; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

  f. The Settlement's methods of processing claims and distributing funds to Class Members are fair and adequate.

  g. The Settlement treats Class Members equitably.

11. Some objectors take the position that the Settlement Fund is too small compared to Meta's market capitalization, total profits, or total revenue, or that the Fund does not fairly reflect the culpability of Meta's actions. *E.g.*, Dkt. No. 1158, Objs. 45, 50, 53. Meta's total financial resources, however, are not directly relevant to Plaintiffs' likely recovery under their claims. To the extent these points are relevant to punitive damages, "courts generally determine fairness . . . based on how [the settlement] compensates the class for past injuries, without giving much, if any, consideration to [punitive] damages." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (discussing treble antitrust damages). Punitive damages are inherently unpredictable. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 3:15-md-02672-CRB, 2017 WL 2212783, at *24 (N.D. Cal. May 17, 2017). In addition, an assessment of whether punitive damages are appropriate would need to take into account the $5 billion settlement paid by the company to the FTC for the conduct alleged in this case, and the fact that the company agreed to prospective relief with the FTC.

12. Objectors Feldman, Mahaney, and Fortman argue that the amount of the Settlement is inadequate given the potential recovery under the Video Privacy Protection Act, or VPPA. Dkt. No. 1147 at 4-9; Dkt. No. 1160-1, Obj. 56 at 5-7. While the recovery theoretically available under the VPPA is very large, the Objectors do not discuss any of the risks involved in proceeding with the claim, aside from potential due-process issues raised by statutory damages. Plaintiffs acknowledge that they would face significant legal risks and potential difficulties of proof in this case if the litigation were to continue. Dkt. No. 1096 at 23-25. These risks and difficulties, aside from the due-process arguments that Meta could raise against a massive award of statutory damages, have been reasonably accounted for in Plaintiffs' analysis of the value of the VPPA claim and make the Settlement Fund a highly favorable result for the Class. Because the objections arguing otherwise do not account at all for the

risks presented by the VPPA claims, other than the due-process risks, they are without merit and are overruled.

**<u>Plan of Allocation</u>**

13. The Court adopts the Parties' proposed Plan of Allocation for purposes of allocating the Net Settlement Fund. The Plan of Allocation uses "allocation points" to divide the Net Settlement Fund among Class Members with valid claims, and allocation points are assigned based on how many months a user has had an activated account on the Facebook platform. Meta has confirmed that there is a positive correlation between the length of time users have been on the platform and the degree to which third parties had access to users' information. Thus, the Plan of Allocation is designed to roughly track the probable extent to which third parties had access to Class Members' private information, which the Court finds to be a rational and fair basis on which to allocate the Net Settlement Fund.

14. Meta is unable to supply information that might enable a more precise measure of third-party access (e.g., the number or identity of third parties that had access to each individual user's information through that user's friends, how many friends each user had at various points during the Class Period, or how much or how often each user's information was accessed). Dkt. No. 1096-1, ¶ 108; Dkt. No. 1096-5 ¶ 17. Under these circumstances, the Plan of Allocation is fair, reasonable, and adequate. The Court also notes that which permissions particular apps had over time, changes to users' privacy settings during the Class Period, data about deactivated or deleted accounts, and what specific information was called and returned in response to those calls are nearly impossible to determine.

15. The Court overrules all objections to the Plan of Allocation. One objection proposes that the Plan of Allocation attempt to account for the number of friends each user had over the Class Period by using the current number of each user's friends as a proxy. Dkt. No. 1154 at 8. But there is no evidence that a user's current number of friends is a reasonable proxy for historical friends. The number of friends can vary over time, the rate of change in a user's friend count can also vary over time, and the number of friends alone is not an accurate gauge of whether information was improperly shared. In this context, the proposal to use friends as an allocation metric would add complexity and inaccuracy to the Plan of Allocation without sufficient benefit.

16. The same objection also argues that the Plan of Allocation should give less weight to

6

ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(E)(2) - CASE NO. 3:18-MD-02843-VC

1   time on the platform after 2020 on the ground that Meta has represented that friend sharing ceased
2   thereafter. Dkt. No. 1154 at 10. There is no reason to believe, however, that third-party misuse of
3   already disclosed data ceased in 2020. In addition, Plaintiffs' VPPA claim challenged practices other
4   than "friend sharing." And finally, the Plan of Allocation provides that users who signed up after 2020
5   will, in fact, receive less money than those who signed up earlier. Using time on the platform as a
6   metric is a reasonable proxy for harm. For these reasons, the Plan of Allocation's method of allocating
7   funds is reasonable and fair.

8         17.    Objectors Feldman and Mahaney argue that the Plan of Allocation is inadequate because
9   it fails to accord increased value to the claims of Class Members who signed up before 2009. They
10  argue that the Court's ruling on the motion to dismiss determined that for such Class Members, Meta's
11  consent defense to sharing friend data with apps did not prevail as a matter of law at the pleading stage.
12  Dkt. No. 1147 at 10. This argument fails to acknowledge that Meta's consent defense to the VPPA
13  claim did not prevail for the full Class Period, at least at the pleading stage. The Court's ruling on the
14  motion to dismiss, moreover, merely ruled that Meta's consent defense did not prevail as a matter of
15  law given what was before the Court on Meta's motion to dismiss under Rule 12(b)(1) and 12(b)(6).
16  Meta retained its ability to press that defense at summary judgment or trial. Finally, Plaintiffs point to
17  discovery that may suggest that users who signed up both before and after 2009 did not consent to the
18  way in which Facebook shared friend data with apps. Plaintiffs have stated that, if litigation had
19  continued, they would have moved to amend their complaint to reflect that discovery. For all of these
20  reasons, Objectors Feldman and Mahaney's objection to the Plan of Allocation is overruled as
21  meritless. For the same reasons, to the extent the objection argues that Plaintiffs have not accurately
22  evaluated the Class's claims, or that there is an intraclass conflict that requires separate representation,
23  the Court overrules the objection.

### Releases

25        18.    Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive remedy
26  for any and all Released Claims of the Releasing Parties; and (ii) the Releasing Parties shall have, fully,
27  finally and forever released, relinquished, and discharged every Released Claim, and to have
28  covenanted not to pursue any or all Released Claims against any Released Party, as set forth in the

Settlement Agreement, Dkt. No. 1096-2 ¶¶ 72-74. Likewise, upon the Effective Date, Defendant and each of the other Released Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim relating to the institution or prosecution of the Action by Settlement Class Representatives, Class Counsel and the Settlement Class. *Id.* ¶ 75. Accordingly, the Settlement shall terminate the Action. Notwithstanding the foregoing, the release shall not include any claims related to the enforcement of the Settlement, Pretrial Order No. 10 (Protective Order), or Plaintiffs' pending motion for sanctions, including but not limited to Dkt. Nos. 122, 878, 911, 922, 984, 1000, 1008, 1061, 1063, 1079, and 1104.

19. The Court overrules all objections to the scope of the Releases. The scope of Released Claims complies with *Hesse v. Sprint Corp.*, under which a settlement agreement may release only those claims that are "based on the identical factual predicate as that underlying the claims in the settled class action." 598 F.3d 581, 590 (9th Cir. 2010) (quotation and citation omitted). The scope of the Released Parties is reasonable for the reasons given by Plaintiffs. Dkt. No. 1161 at 14-16. For example, the concern that Meta subsidiaries Threads or Instagram are improperly released has no merit, for this action does not allege that those entities engaged in the specific harms that were the focus of this action. There are no specific allegations relating to Instagram or Threads. Concrete application of the language of the Releases to specific actions is a task committed to the courts presiding over those actions, not to this Court.

**Fees, Costs, Expenses, and Service Awards**

20. The Court finds that an award of attorneys' fees and expenses is appropriate pursuant to Federal Rule of Civil Procedure 23(e)(2)(C)(iii) and therefore approves such award in an amount, manner, and timing as set forth in the Court's separate Order on Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards.

21. Lead Counsel shall distribute the Attorneys' Fees and Expenses Award among Class Counsel and non-class counsel the Court approved for limited work. *See* Dkt. No. 433. The amount of the distribution shall be calculated by Class Counsel, subject to the Court's oversight, in accordance with Dkt. No. 121. No other counsel will be entitled to an independent award of attorneys' fees or expenses.

22. The Court finds that the payment of Service Awards to the Settlement Class Representatives is fair and reasonable and therefore approves such payment as set forth in the Court's separate Order on Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. Dkt. No. 1139.

23. Ten percent of Class Counsel's awarded attorneys' fees shall remain in the Settlement Fund until after Class Counsel files a Post-Distribution Accounting, as described herein, and the Court authorizes the release to Class Counsel of the attorneys' fees remaining in the Settlement Fund.

### **Other Matters**

24. To the extent not specifically addressed above or at the hearing on the motion for final approval, and after careful consideration of them, the Court overrules all the objections to the Settlement.

25. The Court has reviewed the list of individuals who have opted out of the Settlement provided by the Settlement Administrator following the Final Approval Hearing, attached hereto as Exhibit A, and approves that list.

26. The Action, and all claims asserted against all Defendants, including Non-Prioritized Claims and Non-Prioritized Defendants,[1] therein, are settled and dismissed on the merits with prejudice.

27. Consummation of the Settlement shall proceed as described in the Settlement Agreement, and the Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the instance of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

28. In the event that any applications for relief are made, such applications shall be made to the Court. To avoid doubt, the Final Judgment applies to and is binding upon the Parties, Non-Prioritized Defendants, the Settlement Class Members, and their respective heirs, successors, and assigns.

---

[1] *See generally* Second Amended Consolidated Complaint, Dkt. No. 491.

29. The Settlement and this Order are not admissions of liability or fault by Meta or the Released Parties, or a finding of the validity of any claims in the Action or of any wrongdoing or violation of law by Meta or the Released Parties. To the extent permitted by law, neither this Order, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by, the Released Parties.

30. Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order in a proceeding to consummate or enforce the Settlement or this Order, or to defend against the assertion of released claims in any other proceeding, or as otherwise required by law.

31. As provided in the Settlement Agreement, the Parties shall file a post-distribution accounting in accordance with this Northern District's Procedural Guidance for Class Action Settlements within 21 days after the substantial completion of the Net Settlement Fund's distribution ("Post-Distribution Accounting"), and payment of Attorneys' Fees or Expenses and/or Service Awards to Class Settlement Representatives, if any. The Post-Distribution Accounting shall include information on when distributions were made to Class Members, the number of Class Members who were sent payments, the method(s) of payment to class members, the total funds distributed, the average and median distribution to Class Members, the largest and smallest distributions to Class Members, the number and value of attempted distributions to Class Members, general information about efforts made to contact Class Members regarding attempted distributions, any significant or recurring concerns communicated by Class Members since final approval, the administrative costs, and any other material facts about settlement administration. The Parties may request a continuance of the deadline for the Post-Distribution Accounting if the information required as part of the accounting is not yet available.

32. With the Post-Distribution Accounting, class counsel shall submit a proposed order releasing the remainder of the attorneys' fees.

33. Promptly after the Effective Date, Class Counsel shall notify the Court and ask the Court to require submission of the Post-Distribution Accounting no later than 180 days after the Effective Date, and sooner if possible. The compliance deadline is intended to ensure the timely filing of the Post-Distribution Accounting. The Parties may request a continuance of this deadline if distribution of

the Net Settlement Fund has not been substantially completed 14 days before the compliance deadline.

**Chart of Significant Settlement Administration Dates**

| Event | Date |
|---|---|
| Commencement of individual notice | April 12, 2023 |
| Completion of individual notice | May 11, 2023 |
| Deadline for objections | July 26, 2023 |
| Deadline for opt-outs | July 26, 2023 |
| Claims deadline | August 25, 2023 |
| Estimated date of commencement of distribution | 90 days after the Effective Date |
| Estimated date of substantial completion of distribution | 165 days after the Effective Date |

**IT IS SO ORDERED.**

DATED: October 10, 2023

Hon. Vince Chhabria
United States District Judge