Derek W. Loeser (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com

Lesley E. Weaver (SBN 191305)
BLEICHMAR FONTI & AULD LLP
1330 Broadway, Suite 630
Oakland, California 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com

Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

Christopher Chorba (SBN 216692)
Timothy W. Loose (SBN 241037)
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520

*Plaintiffs' Class Counsel*
*Additional counsel listed on signature page*

*Attorneys for Defendant Meta Platforms, Inc., Inc.*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **JOINT STATUS REPORT REGARDING SETTLEMENT ADMINISTRATION AND DISTRIBUTION**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor |

The Parties provide the following interim report to the Court regarding the status of the Settlement allocation process and the commencement of distribution. Distribution of settlement benefits is estimated to commence on a rolling basis later this month, subject to consultation with the Court regarding distributions using prepaid Mastercards.

A.      **Relevant Background**

   1.      **Appointment of the Claims Administrator**

Pursuant to the Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice, Dkt. 1130 ("Preliminary Approval Order"), Angeion was appointed to serve as the Settlement Administrator and ordered to establish an escrow account as a qualified settlement fund, "supervise and administer the notice procedures, establish and operate the Settlement Website, administer the claims processes, distribute cash payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement." *Id.* at 4-5. As set forth in Plaintiffs' Motion to Certify a Settlement Class and Grant Preliminary Settlement Approval, Dkt. 1096 ("Preliminary Approval Motion"), Class Counsel proposed Angeion Group, LLC ("Angeion") as the Settlement Administrator after a competitive bidding process that included consultation with Meta. *Id.* at 67. The main factors in selecting Angeion were Angeion's experience in administering large, complex settlements; Angeion's ability to satisfy Meta's requirements for securely safeguarding class member data from Meta necessary to implement the settlement; price; and Angeion's proposal for increasing claims participation rates. *See* Declaration of Steven Weisbrot ("Weisbrot Decl.") ¶¶ 37–43.

   2.      **Brief Overview of the Claims and Settlement Allocation Process**

The notice program in this action was highly successful. More than 93 percent of the Settlement Class received notice three or more times. Pls.' Mot. for Final Settlement Approval, Dkt. 1145 at 4. More than 19 million Settlement Class Members submitted validated claims for Settlement Benefits. Weisbrot Decl. ¶ 55.

Angeion originally estimated the notice and administration costs at between $3,500,000 and $4,225,000, based on an "estimated number of claims submissions between 1% and 2%." Declaration of Steven Weisbrot of Angeion Group, LLC Re: Settlement Administration Protocol & Notice Plan submitted in support of the Preliminary Approval Motion on December 22, 2022, Dkt. 1096-2, Ex. B ("Angeion Preliminary Approval Declaration") at ¶ 61, n.11. Angeion noted that "[a]ctual costs may vary based on deviations from these assumptions." *Id.* Claims were, in fact, higher than initially estimated. As a result, the notice and administration costs increased to $9.26 million based on the actual, higher claims submissions rate Angeion agreed that this $9.26 million would serve as a not-to-exceed cap on all notice and administration costs.

On May 22, 2025, Class Counsel advised the Court that all appeals were exhausted and the settlement was final. Dkt. 1226. Since that time, Angeion has completed its calculation and determination of the allocation of Settlement benefits to each Settlement Class Member. Given the large number of claims and the complexity of the allocation process, Class Counsel directed Angeion to retain an independent third party accounting firm to test and verify the accuracy of the claims process and allocation calculations, and that third party accounting firm has since completed its review, affirmed those processes, and confirmed the amounts calculated for distribution. Class Counsel Declaration in Support of Joint Status Report ("Class Counsel Decl.") ¶ 9.

While the distribution of Settlement benefits is estimated to commence later this month, given that more than two years have elapsed while the case was on appeal, the Parties anticipate there will be a second distribution to account for unclaimed or unredeemed Settlement benefits. Angeion has reported to Class Counsel that of the approximately 19 million Settlement Class Members who submitted validated claims, approximately 8 percent selected direct deposit through Automated Clearing House ("ACH"); approximately 6 percent selected paper check; approximately 22 percent selected PayPal; approximately 20 percent selected Venmo; approximately 16 percent selected Zelle, and approximately 28 percent selected prepaid Mastercard. Class Counsel Decl. ¶ 8.

With respect to the prepaid Mastercard option, the Angeion Preliminary Approval Declaration discusses the different digital payment options available to Settlement Class Members, stating that "[a] prepaid card serves the interests of the unbanked and underbanked," with approximately 22% of American adults being either unbanked or underbanked and approximately 6% of adults being "completely unbanked, meaning that no one in the household ha[s] a checking or savings account and are, therefore, reliant on alternative financial service products." Angeion Preliminary Approval Declaration ¶ 52.[1]

Approximately 5.3 million out of roughly 19 million Settlement Class Members with validated claims selected the prepaid Mastercard option. Weisbrot Decl. ¶ 55. Class members are not charged an activation fee. However, there are inactivity fees of 95 cents per month (per cardholder) if the card is not used for 12 consecutive months. *Id.* ¶¶ 28, 29 n.6.

### 3. Discussions Relating to Prepaid Mastercards

On April 24, 2025, a complaint was filed against Angeion and other settlement administrators that included allegations regarding prepaid Mastercard payments. Class Action Complaint, Dkt. 1, *Baker v. Angeion Group, LLC, et al.*, No. 2:25-cv-02079-KBH (E.D. Pa.). In particular, the *Baker* complaint alleges, *inter alia*, that Angeion receives undisclosed compensation from revenue sharing agreements with the processor that distributes the prepaid Mastercards to class members. *See id.* at 2. The day after this complaint was filed, Class Counsel reached out to Angeion to determine whether such undisclosed revenue sharing was at issue in the context of this Settlement. Through subsequent discussions, Class Counsel learned that Angeion has a master services agreement with Blackhawk, the prepaid Mastercard distributor. Angeion states that under that master agreement, Angeion receives an undisclosed sum that does not result in any increased cost to the Settlement Fund and does not reduce the funds available to be distributed to the

---

[1] *See also* Weisbrot Decl. ¶¶ 15–17 (according to a 2023 report by the Federal Reserve, approximately 14% of American adults were underbanked and approximately 4% of American households were completely unbanked); FDIC, *FDIC Survey Finds 96 Percent of U.S. Households Were Banked in 2023*, https://fdic.gov/news/press-releases/2024/fdic-survey-finds-96-percent-us-households-were-banked-2023.

Settlement Class Members. *See* Weisbrot Decl. ¶ 52. Class Counsel and Meta were not informed or aware of this agreement between Angeion and Blackhawk prior to these discussions. Angeion's position is that it was not required to disclose it. *Id.* ¶ 44. In these subsequent discussions, the Parties requested a copy of Angeion's agreement with Blackhawk. Angeion has not provided it, but has agreed to submit it to the Court for *in camera* inspection. *See id.* ¶ 54. Because of this, the Parties cannot speak to the contents of that agreement. Class Counsel Decl. ¶ 11.[2]

Class Counsel have engaged in extensive discussions with Angeion regarding potential alternatives, including modifications to the prepaid Mastercard payment option to require activation of the Mastercards prior to funds leaving the QSF, as well as alternative payment options such as paper checks in lieu of a prepaid Mastercard option. Those negotiations resulted in the terms presented in Option 1 below.

Concurrently, Class Counsel began soliciting proposals from other firms that provide settlement payment and administration services to obtain competing bids for distribution and the remaining administration services. The lengthy negotiations involved exploring alternatives to using prepaid Mastercards as well as modifying how cards might be used. Class Counsel also considered funding the cards through other potential providers who have not previously been involved in class action distribution; that avenue was not successful. Class Counsel Decl. ¶ 15. The terms Class Counsel negotiated from competing bidders included ensuring that, if the prepaid Mastercards were not activated, the funds would remain in the QSF and would therefore be available for re-distribution, among other terms. In addition, Class Counsel solicited a bid from Huntington Bank, the entity holding the QSF, to provide options for pre-paid Mastercards that would require activation prior to funds leaving the QSF. One bid offered to share revenue from prepaid cards with the Class. *Id.* ¶ 16. In the end, additional prepaid Mastercard alternatives were

---

[2] Class Counsel believes that if undisclosed revenue sharing had occurred during the actual distribution of the Net Settlement Fund, it would have contravened the provisions of the Settlement Agreement that "[a]ll . . . Notice and Administration Costs . . . shall be paid from the Settlement Fund," Dkt. 1096-2 at ¶ 62, and that "[t]he Settlement Administrator's fees and costs, including the costs of notice, will be paid as described in . . . th[e] Settlement Agreement," *id.* at ¶ 86.

submitted, additional bids were collected for non-prepaid Mastercard distribution alternatives, and Angeion also revised its proposal. The lengthy, iterative process refined the various bids so they could be compared "apples to apples." The final responses to Plaintiffs' RFP process are summarized in Exhibit A to the Class Counsel Declaration. *Id.* ¶ 17.[3]

Class Counsel provided Meta with the competing bids and Angeion's proposals. The Parties have engaged in a thorough discussion of the proposed benefits and costs associated with the prepaid Mastercard payment method as well as alternative payment methods. Based on the Parties' review and analysis, the following are the potential payment options for Settlement Class Members who selected the prepaid Mastercard option that the Parties believe warrant the Court's consideration.

      a.      **Option 1: Proceeding with Prepaid Mastercards[4]**

With Option 1, there would be no additional administration costs. Settlement Class Members who selected prepaid Mastercards would receive payment through prepaid Mastercard by email, subject to the following conditions to ensure that Settlement Class Members who selected this payment method receive as much of the Net Settlement Fund as possible:

First, no funds would leave the QSF until a Settlement Class Member registers the prepaid Mastercard.[5] Settlement Class Members who selected this payment method would receive an email with the prepaid Mastercard information and have 90 days to register the prepaid Mastercard, during which period they would receive multiple reminder emails to register the prepaid Mastercard.[6]

---

[3] Should the Court find submission of the competing bids helpful, the Parties propose submission for *in camera* review upon request. Also, because of the competitive nature of the bids, Plaintiffs respectfully request that the exhibit summarizing these bids be sealed.

[4] This option is described in Exhibit A to the Class Counsel Declaration as Angeion Option 3. *See* Class Counsel Decl. Ex. A.

[5] For instance, an email that was sent but not received by a Settlement Class Member (such as an email that was flagged as spam) would not result in funds leaving the QSF.

[6] As with checks, which also have a 90 day negotiation period pursuant to the Settlement Plan of Allocation, Dkt. 1096-3 at 4, payments not negotiated during this period would be processed in accordance with the procedures for residual funds, *id.* at 5.

Second, because the funds would be retained in the QSF until claimed, those funds would continue to earn interest in the QSF during that time, rather than being held (and earning interest) by the prepaid Mastercard vendor.

Third, Settlement Class Members would receive numerous emails reminding them to register their prepaid Mastercards (if they haven't done so already), as well as emails reminding them to use the funds in their prepaid Mastercards if they have registered but not used the balance in their cards. Likewise, those emails will recommend that Settlement Class Members transfer their card balances to an electronic wallet to increase the likelihood that their Settlement benefits are fully used, and that any inactivity fees are avoided.

Fourth, Settlement Class Members will incur no activation or other fees unless they do not use the prepaid Mastercards for 12 consecutive months. Fees would only occur if a person takes the affirmative step of registering the card, but then does nothing with the funds for more than one year. However, if Settlement Class Members incur any inactivity fees and subsequently use their prepaid Mastercards, the inactivity fees that they have incurred will be automatically refunded.

With this option, Angeion would continue to provide Settlement administration and distribution services subject to its previous bid and the cap to which it previously agreed. However, Angeion would receive undisclosed compensation from Blackhawk. Weisbrot Decl. ¶ 52.

### b.     Option 2: Settlement Class Members Choosing Another Payment Option or Being Sent a Check by Default[7]

With Option 2, the prepaid Mastercard payment option would be eliminated in its entirety. Settlement Class Members who selected that payment option would receive a new notice by email through which they would be asked to choose one of the remaining payment options—direct deposit through ACH, paper check, PayPal, Venmo, or Zelle. This group of Settlement Class Members would have 30 days to provide the additional required information for their newly selected alternative payment option (e.g., bank account number; Venmo / Zelle / PayPal account

---

[7] In Exhibit A to the Class Counsel Declaration, this option relates to the Simpluris and EisnerAmper bids. *See* Class Counsel Decl., Ex. A.

email or phone number; or mailing address) and would receive multiple reminder emails during that time. The initial notice as well as the reminder emails will advise these Settlement Class Members that, if they do not respond to this notice, they will be sent a check by mail to the address they provided during the Claim process. All Settlement Class Members who submitted Claims were required to provide a valid mailing address in their Claim Form. *See* Claim Form, Dkt. 1114-2 at 2. However, Angeion previously estimated that there are 385,000 unverified addresses for which additional outreach and confirmation will be necessary if they are unresponsive, incurring additional costs. Additionally, as the cost of mailing checks is higher than the cost of making electronic payments, there will be additional costs imposed with this option.

With this option, Angeion would continue to serve as the Settlement Administrator. However, Angeion's bid for providing electronic distribution services that do not include a prepaid Mastercard option was significantly higher than those received from other firms. Class Counsel Decl., Ex. A. The Parties could contract with one of the other firms from which Class Counsel solicited bids to provide the distribution services.

### B.    The Parties' Statements Regarding the Distribution Options

The Parties have worked cooperatively and collaboratively once the additional information came to light, and they have devoted substantial time investigating the issues, analyzing potential solutions, and negotiating options to ensure that settlement funds reach the intended recipients. Although the Parties generally agree on the factors in favor of and against each of the options, they have different perspectives as to which of these options they recommend, for the reasons set forth below.

#### 1.    Plaintiffs' Analysis and Recommendation

Plaintiffs recognize that proceeding with Option 1 has its benefits. Those include avoiding the cost and expense of re-noticing those who selected the pre-paid Mastercards as well as delivering funds to Settlement Class Members as expeditiously as possible following the lengthy appeals process. Further, any change to the Settlement Administrator's role in distribution may

entail additional inefficiencies and costs. And it may also be true that prepaid Mastercards offer important solutions in certain cases.

But Option 2 is a good alternative. In this scenario, Settlement Class Members who selected the prepaid Mastercard payment option would receive notice by email through which they could choose another payment option, as well as multiple reminder emails. Settlement Class Members who do not respond to this notice and reminder emails will receive a check by mail to the address they provided during the Claim process.

Class Counsel believe this option is likely to reach at least as many Settlement Class Members who selected the prepaid Mastercard option, because email is the method through which those Settlement Class Members would otherwise receive the prepaid Mastercards. Moreover, if they do not respond to the email notice, they will receive a check at their mailing address, which all Class Members were required to provide in the Claim Form. It is true that a portion of the Class will require additional outreach. The Plan of Allocation provides that if a check to a Settlement Class Member is returned as undeliverable, the Settlement Administrator will attempt to obtain a new mailing address for that Settlement Class Member and effect a second mailing. Plan of Allocation, Dkt. 1096-3 at 4. This method may in fact reach more Settlement Class Members than Option 1, because they will receive multiple emails as well as one or more mailings if they do not respond to those emails. And of course, if these checks are not cashed, all funds remain in the QSF for redistribution and are also accruing interest for the benefit of the Class until in the hands of class members.

Although this option will likely occasion some delay for those individuals who selected the prepaid Mastercard option, the payments for Settlement Class Members who selected other payment options could proceed as soon as this issue is resolved. Because of the size of the Class, distribution was always expected to occur on a rolling basis. While other distributions are ongoing, Settlement Class Members who selected the prepaid Mastercard option would receive a notice to select another payment method as soon as this issue is resolved—and by responding to that notice (or not responding within 30 days) would receive payment shortly thereafter.

Option 2 also cures the nondisclosure problem. Had all of the terms about the prepaid Mastercards been disclosed in 2020, the Court, the Parties and the Class could have made fully informed decisions. But the terms were not disclosed. Because of this, the Parties were not able to evaluate this distribution method with a full understanding of its costs and benefits. Further, Angeion was selected as administrator without that full disclosure. And Angeion's continued refusal either to forego the undisclosed compensation it will receive from Blackhawk, or even disclose the payment structure, makes it difficult for Class Counsel to fully evaluate or accept Option 1. Class Counsel Decl. ¶ 13. Had Angeion either agreed to forego the additional compensation or provide a rebate to the Class, Class Counsel would be reporting a successful resolution of this issue.[8] This would have been a reasonable solution under the circumstances. But given that this is not an available course of action, Option 2 is a good alternative.

### 2. Meta's Analysis and Recommendation

Meta understands the reasoning behind Class Counsel's concerns with keeping prepaid Mastercards, but believes it is in the best interests of Settlement Class Members to pursue Option 1 and keep those cards, because this approach maximizes class participation and honors Settlement Class Members' choices, while also reducing expenses and minimizing delay. The Parties selected the option of prepaid cards because there are many benefits to this payment option, especially for Settlement Class Members without a bank account. These cards are convenient, and 5.4 million Settlement Class Members selected this option. Ultimately, with the enhancements that the Settlement Administrator has agreed to provide (on top of the existing features of the cards), and Angeion's assurance that its compensation is unrelated to any activity (or inactivity) on the cards, prepaid Mastercards remain the best choice for the following reasons:

**i. Ensures a timely distribution**. The distribution of all payment methods is scheduled to commence this month. *See* Dkt. 1182 at 12. Given the volume of payments, Angeion must

---

[8] In fact, one of the competing proposals obtained by Class Counsel offered to credit comparable revenue sharing to the QSF. Class Counsel requested that Angeion credit its revenue sharing to the QSF. Angeion declined to do so. Class Counsel Decl. ¶ 13.

distribute funds in waves, over a 75-day period. Angeion already collected all necessary information from Settlement Class Members to issue the prepaid cards. Retaining this option avoids further delay in providing compensation to Settlement Class Members. No additional information needs to be collected, no additional notice needs to be given, no new payment method needs to be selected, and there is no need to wait for, or chase, a response. The Settlement Class already had to wait for payment through a baseless appeal; further delay is unwarranted given the enhancements that the parties negotiated.

        **ii. Honors Settlement Class Member choice**. Among the several different payment options, nearly one quarter of the Settlement Class Members chose prepaid cards. Therefore, continuing distribution with these prepaid cards honors a choice that the Parties already agreed to provide Class Members. Removing this option now could lead to consumer frustration and/or confusion, especially where they will be asked to make a new selection and provide new information (like a bank account or mailing address). Asking for this kind of information at this stage of the process may be viewed skeptically by some Class Members who made their selection long ago, and may have chosen the prepaid card option precisely because they did not wish to provide bank account or mailing address information.

        **iii. Promotes accessibility and convenience**. Prepaid Mastercards offer numerous conveniences over other payment methods. First, prepaid cards eliminate barriers for those without bank accounts. In 2023, more than four percent of U.S. households were "unbanked," meaning no one in the household had a checking or savings account at a bank or credit union, while more than 14 percent of adults were "underbanked," meaning they have a bank account but also use an alternative financial service product. *See* Weisbrot Decl. ¶¶ 15–16. Prepaid cards avoid the hassle and inconvenience of non-banking Settlement Class Members having to create a financial account to cash the benefit, and they also allow users to avoid check-cashing fees for those without accounts. Settlement Class Members having to switch to alternative payment methods could face barriers to easily redeeming their payments. Second, prepaid cards are easily redeemed. They can be used anywhere that Mastercard is accepted. Alternatively, they can be

deposited immediately into a bank account, or for those without bank accounts, instantly transferred to other payment channels such as PayPal, Venmo, and Apple Wallets.

    **iv. Maximizes Settlement Class Member participation**. Logistically, switching from prepaid cards to another payment method would be highly challenging and risks reducing the number of valid claims. Switching would require another round of notice to approximately 5 million people, and would require those individuals to respond both with their selection of payment method and the information needed to effectuate that transfer. Even setting a default rule that those who do not respond will be mailed a check is an imperfect option. Angeion reports that approximately 385,000 mailing addresses from Settlement Class Members who selected prepaid Mastercards cannot be validated. Among that group, those who do not select an alternative payment and instead receive default paper checks risk being lost if they fail to respond and a valid mailing address is not identified. The Settlement Administrator will need to conduct additional outreach and investigation to obtain valid mailing addresses for this group, which could number in the hundreds of thousands of Settlement Class Members, significantly increasing costs and carrying a risk that these individuals never receive payment. For those Class Members who are eventually sent a check, not all of them may have a bank, presenting an additional hurdle that they will need to overcome to deposit payment.

    **v. Minimizes administrative costs**. Changing the distribution method will require additional expenses, but prepaid cards have some unique cost benefits. Unlike checks, which require costs for re-issuance and re-mailing when uncashed, the administrative fees associated with prepaid cards fees are only assessed to Settlement Class Members who do not timely redeem or use their cards (despite repeated reminders). For prepaid cards that are never registered or activated, there will be no cost and the funds will remain in the QSF. Rather than spread the costs of administering these prepaid cards across the entire class, the fees rest only with those who create cost for the payment card issuer—and even in those circumstances, the fees are refunded when the prepaid cards are used. Only registered but unused amounts, and those not used despite reminders, are subject to escheatment under state laws. Accordingly, the total cost of this method of

distribution is variable, and with the enhancements, likely to be less than any of the additional costs that would be incurred with a different option.

Meta relies upon Angeion's representation that Angeion's compensation does not depend—and never has depended—on the redemption rate of prepaid cards. But the enhancements are important to underscore because they benefit Class Members, improve the distribution process, and will minimize any administrative fees associated with inactivity.

**i. Multiple reminders**. Angeion has proposed a multi-stage, personalized email campaign to prepaid card claimants to claim and use their prepaid cards, including before and after any fees are assessed. The parties will work with Angeion to ensure the maximum redemption rate.

**ii. Fee refunds**. Settlement Class Members who take the step of activating their cards, but do not use their prepaid cards in the first 12 months and incur inactivity fees, may have those fees refunded if they use the prepaid card thereafter. Angeion will remind these Settlement Class Members of inactivity fee assessments, which the Parties expect will encourage these people to redeem their prepaid cards. A Settlement Class Member does not need to contact Blackhawk or Angeion to receive a fee refund; the refund will occur automatically after the prepaid card is used.

**iii. Keeping funds in Qualified Settlement Fund (QSF)**. Rather than disbursing funds upon creation of the prepaid cards, there will only be disbursements from the QSF after the Settlement Class Member affirmatively takes a step to register the prepaid card. In other words, recipients will need to activate the prepaid card before money leaves the QSF. This sequence will ensure that the QSF will retain the principal and interest, and that cards are sent only to active users who are likely to use the card upon receipt. The registration process will also ensure that each Settlement Class Member receives the email with the activation link, and will provide another opportunity for Angeion to follow up with those who do not register.

**iv. Angeion does not receive Settlement Class Member funds**. Angeion represents that it has no incentive to discourage the use of the cards, as reflected in its agreement to several additional enhancements and extra administrative work without any corresponding increase in administration costs to the class.

Given these existing benefits and proposed enhancements, and notwithstanding recent critiques, Meta respectfully submits that retaining this payment method is best for class members.

**C.     Conclusion**

The Parties share the goal of ensuring that Settlement Class Members receive all funds set aside for class distribution in the most fair and efficient manner possible. Regardless of which option is selected, the Parties seek to ensure Angeion's continued cooperative collaborative work in the smooth administration of the Settlement.

Dated: August 14, 2025

KELLER ROHRBACK L.L.P.

By:     */s/ Derek W. Loeser*
       Derek W. Loeser

Derek W. Loeser (admitted *pro hac vice*)
Cari Campen Laufenberg (admitted *pro hac vice*)
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
bgould@kellerrohrback.com

Christopher Springer (SBN 291180)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP

By:     */s/ Lesley E. Weaver*
       Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1330 Broadway, Suite 630
Oakland, CA 94612
Tel.: (415) 445-4003
Fax: (415) 445-4020
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

*Plaintiffs' Class Counsel*

Dated: August 14, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Christopher Chorba*
Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: 202.955.8500
Fax: 202.467.0539
jlipshutz@gibsondunn.com

Christopher Chorba (SBN 216692)
Timothy W. Loose (SBN 241037)
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520

*Attorneys for Defendant Meta Platforms, Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2025, at Oakland, California.


                        */s/ Lesley E. Weaver*
                        Lesley E. Weaver