| | |
|---|---|
| Derek W. Loeser (admitted *pro hac vice*) | Lesley E. Weaver (SBN 191305) |
| KELLER ROHRBACK L.L.P. | BLEICHMAR FONTI & AULD LLP |
| 1201 Third Avenue, Suite 3200 | 1330 Broadway, Suite 630 |
| Seattle, WA 98101 | Oakland, CA 94612 |
| Tel.: (206) 623-1900 | Tel.: (415) 445-4003 |
| Fax: (206) 623-3384 | Fax: (415) 445-4020 |
| dloeser@kellerrohrback.com | lweaver@bfalaw.com |

*Plaintiffs' Class Counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: FACEBOOK, INC. CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>ALL ACTIONS | **CLASS COUNSEL DECLARATION IN SUPPORT OF JOINT STATUS REPORT REGARDING SETTLEMENT ADMINISTRATION AND DISTRIBUTION**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor |

I, Derek W. Loeser, and I, Lesley E. Weaver, declare and state as follows:

1. Derek W. Loeser is a partner at the law firm of Keller Rohrback L.L.P. ("Keller Rohrback") and Lesley E. Weaver is a partner at the law firm of Bleichmar Fonti & Auld LLP ("Bleichmar Fonti & Auld"). We are Class Counsel for Plaintiffs in the above-captioned matter. We submit this declaration in support of the Joint Status Report Regarding Settlement Administration and Distribution (the "Status Report").

2. We have personal knowledge of the information contained herein, and, if either of us is called as a witness, we each could and would testify competently thereto.

3. Angeion was appointed to serve as the Settlement Administrator and ordered to establish an escrow account as a qualified settlement fund, "supervise and administer the notice procedures, establish and operate the Settlement Website, administer the claims processes, distribute cash payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement." *See* Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)(1); and Approving Form and Content of Class Notice, Dkt. 1130 ("Preliminary Approval Order") at 4-5.

4. Class Counsel proposed Angeion Group, LLC ("Angeion") as the Settlement Administrator after a competitive bidding process that included consultation with Meta. *See* Plaintiffs' Motion to Certify a Settlement Class and Grant Preliminary Settlement Approval ("Preliminary Approval Motion"), Dkt. 1096 at 67. The main factors in selecting Angeion Angeion's experience in administering large, complex settlements; Angeion's ability to satisfy Meta's requirements for securely safeguarding class member data from Meta necessary to implement the settlement; price; and Angeion's proposal for increasing claims participation rates.

5. The notice program in this Settlement was highly successful. More than 93% of the Settlement Class received notice three or more times. *See* Pls.' Mot. for Final Settlement

Approval, Dkt. 1145 at 4. More than 19 million Settlement Class Members submitted validated claims for Settlement Benefits.

6. Angeion originally estimated the notice and administration costs at between $3,500,000 and $4,225,000, based on an "estimated number of claims submissions between 1% and 2%." *See* Declaration of Steven Weisbrot of Angeion Group, LLC Re: Settlement Administration Protocol & Notice Plan submitted in support of the Preliminary Approval Motion on December 22, 2022, Dkt. 1096-2 ("Angeion Preliminary Approval Declaration") at ¶ 61, fn. 11. Angeion noted that "[a]ctual costs may vary based on deviations from these assumptions." *Id.* Claims were, in fact, higher than initially estimated. As a result, the notice and administration costs increased to $9.26 million based on the actual, higher claims submissions. Angeion agreed that this $9.26 million would serve as a not-to-exceed cap on all notice and administration costs.

7. On May 22, 2025, Class Counsel advised the Court that all appeals were exhausted and the settlement was final. *See* Dkt. 1226.

8. Angeion has reported that of the approximately 19 million Settlement Class Members who submitted validated claims, approximately 8 percent selected direct deposit through Automated Clearing House ("ACH"); approximately 6 percent selected paper check; approximately 22 percent selected PayPal; approximately 20 percent selected Venmo; approximately 16 percent selected Zelle, and approximately 28 percent selected prepaid Mastercard.

9. Given the large number of claims and the complexity of the allocation process, Class Counsel directed Angeion to retain an independent third party accounting firm to test and verify the accuracy of the claims process and allocation calculations, and that third party accounting firm has since completed its review, affirmed those processes, and confirmed the amounts calculated for distribution.

10. On April 24, 2025, a complaint was filed against Angeion and other settlement administrators that included allegations regarding prepaid Mastercard payments. Class Action Complaint, Dkt. 1, *Baker v. Angeion Group, LLC, et al.*, No. 2:25-cv-02079-KBH (E.D. Pa.).

The day after this complaint was filed, Class Counsel reached out to Angeion to determine whether such undisclosed revenue sharing was at issue in the context of this Settlement. Through subsequent discussions, Class Counsel learned that Angeion has a master services agreement with Blackhawk, the prepaid Mastercard vendor. Class Counsel was not informed or aware of this agreement between Angeion and Blackhawk prior to these discussions.

11. The Parties requested a copy of Angeion's agreement with Blackhawk. Angeion has not provided it, but has agreed to submit it to the Court for *in camera* inspection. Because of this, Class Counsel cannot speak to the contents of that agreement.

12. Class Counsel have engaged in extensive discussions with Angeion regarding potential options through which their concerns could be addressed, including modifications to the prepaid Mastercard payment option to require activation of the Mastercards prior to funds leaving the QSF, as well as alternative payment options such as a paper check in lieu of a prepaid Mastercard option.

13. In these discussions, Class Counsel have requested that Angeion forego receiving any additional compensation from Blackhawk. Class Counsel also proposed that Angeion pay any additional compensation it is to receive from Blackhawk to the Class. Angeion has not agreed to either proposal.

14. Class Counsel also negotiated with Angeion and achieved modifications to the prepaid Mastercard payment option. This includes requiring that no funds dedicated to the Mastercards leave the QSF until a Settlement Class Member has activated a card as well as requiring that Settlement Class Members are repeatedly contacted to urge them to activate the cards and claim their funds. Class Counsel also negotiated alternative payment options such as a paper check in lieu of a prepaid Mastercard option.

15. Concurrently, Class Counsel began soliciting proposals from other firms that provide settlement payment and administration services to obtain competing bids for distribution and remaining administration services. The lengthy negotiations involved exploring alternatives to using prepaid Mastercards as well as modifying how cards might be used. Class Counsel also

considered funding the cards through other potential providers who have not previously been involved in class action distribution. That avenue was not successful.

16. The terms Class Counsel negotiated from competing bids included ensuring that, if the prepaid Mastercards were not activated, the funds would remain in the QSF and would therefore be available for re-distribution, among other terms. In addition, Class Counsel solicited a bid from Huntington Bank, the entity holding the QSF, to provide options for pre-paid Mastercards that would require activation prior to funds leaving the QSF. One bid offered to share revenue from prepaid cards with the Class.

17. In the end, additional prepaid Mastercard alternatives were submitted, additional bids were collected for non-prepaid Mastercard distribution alternatives, and Angeion also revised its proposal. The lengthy, iterative process refined the various bids so they could be compared "apples to apples." A summary of the final responses to Plaintiffs' RFP process are attached hereto as **Exhibit A**. Because these submissions are competitive and confidential, Plaintiffs seek to seal Exhibit A.

18. Class Counsel provided Meta with the competing bids and Angeion's proposals. The Parties have engaged in a thorough discussion of the proposed benefits and costs associated with the prepaid Mastercard payment method as well as alternative payment methods.

19. Despite months of negotiations attempting to resolve this issue, Class Counsel and Angeion have not been able to reach an agreement through which Angeion would provide prepaid Mastercards without financially benefitting from its previously undisclosed agreement with Blackhawk.

\* \* \*

We declare under penalty of perjury that the foregoing is true and correct and to the best of our knowledge.

Dated: August 14, 2025

By: _____
Derek W. Loeser

By: _____
Lesley E. Weaver