1   UNITED STATES DISTRICT COURT

2   NORTHERN DISTRICT OF CALIFORNIA

3   SAN FRANCISCO DIVISION

4

5

6   *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*,

MDL No. 2843

7   Case No. 3:18-md-02843-VC

This document relates to:

8   **DECLARATION OF STEVEN WEISBROT, ESQ.**

9   ALL ACTIONS

Judge: Hon. Vince Chhabria
10  Courtroom: 4, 17th Floor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Steven Weisbrot, Esq., declare under penalty of perjury and state as follows:

1.       I am the President and Chief Executive Officer at the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). As this Court is aware, Angeion specializes in designing, developing, analyzing, and implementing large-scale, unbiased legal notification and settlement administration plans. I have worked on thousands of class action settlements during my career.

2.       I have personal knowledge of the matters stated in this declaration. In forming my opinions regarding notice and settlement administration in this action, I have drawn from my extensive class action experience as well as that of my team.

3.       The purpose of this declaration is to describe in greater detail the mechanics of prepaid digital payment cards (also known as "E-Mastercards") offered as a payment option in this Settlement[1] and explain why offering E-Mastercards as a distribution option in the Settlement may best meet the needs of certain Settlement Class Members. This declaration also will provide context regarding the preexisting business arrangement between Angeion and the pre-paid digital payment solutions vendor, Blackhawk Engagement Solutions[2] ("Blackhawk"), that makes this option available to the Settlement Class at no charge to the Settlement Fund apart from that disclosed by Angeion. It also addresses proposed refinements and enhanced communications Angeion has discussed with counsel for the Parties to encourage as many Settlement Class Members who have already elected to receive pre-paid digital payment cards to use their cards.

A.    **Background**

4.       The Settlement achieved by the Parties in this case is complex and will involve the distribution to over 19 million Settlement Class Members of a non-reversionary cash settlement common fund in the amount of $725 million.

5.       As part of the Court's March 29, 2023, Preliminary Approval Order (ECF No. 1130), the Court appointed Angeion to serve as the Settlement Administrator.

6.       As Settlement Administrator, Angeion was directed to effectuate the Court-

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Class Action Settlement Agreement and Release (ECF No. 1096-2).
[2] https://blackhawknetwork.com/solutions/payments

DECLARATION
3:18-MD-02843-VC

approved Notice Plan, process claims, and otherwise administer the Settlement in coordination with Class Counsel and counsel for Meta and pursuant to the terms of the Settlement Agreement.

7.      The Preliminary Approval Order directed Angeion to supervise and administer the notice procedures, establish and operate the Settlement Website, administer the claims processes, distribute cash payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement.

8.      The Preliminary Approval Order imposed other administrative duties and further directed Angeion to take precautions to ensure the security and privacy of Settlement Class Member information.

9.      In consultation with counsel for the Parties and pursuant to the Notice Plan approved by the Parties and the Court, Angeion provided comprehensive notice to the Settlement Class through in-app notification as well as a robust media campaign consisting of print publication, social media notice, programmatic display advertising, and search engine marketing, among other forms of notice.

10.      In the Court's October 10, 2023, Final Approval Order (ECF No. 1182), the Court confirmed its earlier appointment of Angeion to serve as Settlement Administrator, found that Angeion had fulfilled its duties under the Settlement, and authorized certain amounts to be disbursed from the settlement common fund in accordance with the Settlement Agreement. No objector to the Settlement Agreement objected to the appointment of Angeion as Settlement Administrator or the terms of the appointment.

11.      Angeion has complied, and is complying, with all requirements of the Court's Preliminary and Final Approval Orders.

**B.      The Pre-Paid Digital Payment Card Option Presented to Settlement Class Members**

12.      Pursuant to the Settlement Administration Protocol & Notice Plan adopted and ordered by the Court, the Settlement Class Members are able to select from a variety of payment options for distribution, including paper checks and a number of different digital payment options, including PayPal, Venmo, Zelle, ACH transfers, and a virtual pre-paid Mastercard.

13.     As explained in my Declaration of December 22, 2022 (ECF No. 1096-2, at Ex. B), the various digital payment options are reliable, secure, and meet evolving claimant preferences and contemporary payment methodologies.

14.     The Settlement Website offered five digital distribution methods from which Settlement Class Members could choose, including Prepaid Mastercard, PayPal, Venmo, Direct Deposit, and Zelle.

15.     As further explained in my Declaration of December 22, 2022, a pre-paid digital payment card option provides an important alternative to other payment options because, among other things, it serves the interests of the unbanked and underbanked members of the Settlement Class. According to a 2023 report by the Federal Reserve, 4.2 percent of U.S. households, representing about 5.6 million households, were "unbanked," meaning no one in the household had a checking or savings account at a bank or credit union.[3]

16.     A household is considered "underbanked" if it had a checking or savings account at a bank or credit union but in the past 12 months had used at least one of eight nonbank financial services. In 2023, 14.2 percent of adults, representing about 19 million households, were "underbanked," in that they have a bank account but also, and more often or more easily, use an alternative financial service product.

17.     The unbanked and underbanked rates are higher among lower-income households; less-educated households; Black, Hispanic, and American Indian or Alaska Native households; working-age households with a disability; households with income that varied a lot from month to month; and single-parent households.

18.     The pre-paid digital payment card product is also the easiest to supply to Settlement Class Members. To request a pre-paid digital payment card, Settlement Class Members need only provide an email address. No bank information or other digital payment account information is required. Moreover, the card option makes funds available to Settlement Class Members more promptly than paper checks (which must be sent via U.S. mail).

---

[3] Federal Deposit Insurance Corporation, 2023 FDIC National Survey of Unbanked and Underbanked Households, https://www.fdic.gov/analysis/household-survey/index.html (last visited August 4, 2025).

DECLARATION
3:18-MD-02843-VC

19.     The pre-paid digital payment card product offered to Settlement Class Members in this case has many of the features of pre-paid digital payment cards offered outside the class action context, but also includes certain additional consumer-friendly features designed specifically for class action usage, including:

     a.     No activation or load fees;

     b.     The ability of the cardholder to transfer balances at any time and at no cost to the cardholder;

     c.     No inactivity fees to the cardholder until after 12 consecutive months of inactivity;

     d.     Proactive email reminder to cardholders at 11 months to encourage use; and,

     e.     Refund of inactivity fees if the cardholder re-engages through a use of value on the card following service fee assessment.

20.     According to the 2025 Annual Report on Digital Payments in Class Actions and Mass Torts, pre-paid digital payment card products like the one offered to Settlement Class Members were the most popular digital payment methods across class actions and mass torts in 2024.[4]

## C.     <u>Angeion Receives No Portion of Inactivity Fees or Unused Card Balances</u>

21.     Angeion directs the distribution of funds from the Settlement Fund to Settlement Class Members via digital payment options through enterprise-wide agreements with two vendors: Digital Disbursements[5] and Blackhawk.

22.     Digital Disbursements was responsible for establishing and implementing the payment election feature on the Settlement Website that allowed Settlement Class Members to select their preferred payment method from the menu of digital payment options made available as part of the Settlement. At the time of distribution, Digital Disbursements will facilitate digital payments to Settlement Class Members through Venmo, PayPal, Zelle, and ACH/Direct Deposit.

---

[4] https://www.westernalliancebancorporation.com/sites/default/files/2025-04/2025-digital-payments-research-report.pdf, at 18.
[5] https://www.digitaldisbursements.com/

DECLARATION
3:18-MD-02843-VC

23.     Blackhawk is the digital payment solutions vendor engaged to facilitate and manage pre-paid digital payment cards issued by the bank to Settlement Class Members.

24.     I am aware that concerns have been raised about the type of pre-paid digital payment cards made available to Settlement Class Members in this case, including because of recently filed litigation and press reports concerning whether digital payment card issuers may take unused balances into revenue and share some portion of that alleged revenue with settlement administrators.

25.     Angeion does not receive any portion of unused digital payment card balances from the digital payment card issuer or any other source.

26.     It is my understanding that, under the current distribution plan approved by the Court, once money is withdrawn from the class settlement fund and loaded onto a pre-paid digital payment card in the name of a specific cardholder and an email notification is successfully delivered to the cardholder, the funds belong to the cardholder. Upon receipt, Settlement Class Members can use their digital payment card to complete purchases wherever virtual Mastercard is accepted. Settlement Class Members also can choose to transfer the existing balance loaded to their digital payment card to another account at any time (via Zelle, ACH, Venmo, or PayPal) for no fee.

27.     In accordance with my understanding of generally applicable laws and regulations, the Settlement Website disclosed to Settlement Class Members that after a 12-month period of inactivity on a digital payment card, the digital payment card will incur inactivity service fees from the card issuer on any remaining balance until activity resumes.

28.     The Settlement Website described information relating to the E-Mastercard, including the following information concerning inactivity and other fees:

DECLARATION
3:18-MD-02843-VC

1

**Prepaid Mastercard Fee**

2

3

| Monthly fee | Per Purchase | ATM Withdrawal | Cash Reload |
|---|---|---|---|
| $0.00 | $0.00 | NA | NA |

ATM Balance Inquiry (in network or out-of-network)    NA

Customer service (automated or live agent)    $0.00

Inactivity (after 12 months with no transactions)    $0.95 per month

**We charge 3 other types of fees.** Here are some of them

Foreign Transaction Fee    2%

Card Replacement Fee, standard delivery    $6.95

No overdraft/credit feature.

Register your card for FDIC insurance eligibility and other protections. For general information about prepaid accounts visit *cfpb.gov/prepaid*. For details and conditions for all fees and services call **844-340-1929 (toll free in USA); 682-324-9995 (outside USA)** or visit **www.MyPrepaidCenter.com.**

18    29.    Similarly, during the bid process leading to the selection of a settlement

19  administrator in this case, Angeion shared with Class Counsel a very similar disclosure

20  concerning the fees associated with individual Settlement Class Members' use of the digital

21  payment card option[6]:

---

[6] Note that the schedule of fees in paragraph 28 includes only the inactivity service fee of $0.95 per month because the amounts to be distributed here fall below the $100.00 threshold for greater inactivity service fees.

DECLARATION
3:18-MD-02843-VC

| Monthly fee | Per Purchase | ATM Withdrawal | Cash Reload |
|---|---|---|---|
| **$0.00** | **$0.00** | **NA** | **NA** |

| | |
|---|---|
| ATM Balance Inquiry (in network or out-of-network) | NA |
| Customer service (automated or live agent) | $0.00 |
| Inactivity (after 12 months with no transactions) (fee based on value of card at time of issue) | $0.95 per month (for cards up to $100) |
| | $2.95 per month (for cards from $100.01 to $500) |
| | $4.95 per month (for cards over $500) |

**We charge 4 other types of fees.** Here are some of them

| | |
|---|---|
| Convert to Plastic Fee | $3.00 |
| Foreign Transaction Fee | 2% |

No overdraft/credit feature.

Register your card for FDIC insurance eligibility and other protections. For general information about prepaid accounts visit *cfpb.gov/prepaid*. For details and conditions for all fees and services call **888-371-2109 (toll free in USA); 339-234-6451 (outside USA)** or visit **www.MyPrepaidCenter.com**.

30.     Settlement Class Members who elected to receive a digital payment card can avoid inactivity service fees simply by using the value of the card at least once every twelve months or by transferring all or part of the value of the card to another account via Zelle, ACH, Venmo, or PayPal.[7]

31.     It is also my understanding that any inactivity service fees charged by the issuing bank against the balance on a dormant pre-paid digital payment card will be restored and added back to the value of the card if Blackhawk determines, through a periodic review of account activity, that the Settlement Class Member re-engages through a use of value on the card

---

[7] A "Card Replacement Fee" only would be incurred by Settlement Class Members who choose to request a physical card as opposed to using the virtual card provided by email. A "Foreign Transaction Fee" only would be incurred by Settlement Class Members who choose to use the card for foreign transactions.

DECLARATION
3:18-MD-02843-VC

following service fee assessment. This will be done automatically by the prepaid card provider. This feature, in addition to those noted above, makes the pre-paid digital card offered as a payment option to Settlement Class Members more consumer-friendly than other types of payment or gift cards available on the market.

32.     In any case, no portion of any inactivity service fee applied to any Settlement Class Member's card is paid to Angeion.

33.     Blackhawk is responsible for managing any unspent balances at the conclusion of any applicable dormancy period under state law. It is my understanding that any such balances escheat to the applicable state, to the extent required under the state's unclaimed property laws, in the name of the cardholder and are not retained by Blackhawk.

34.     In other words, it is my understanding that unused funds remaining on any digital payment card will always remain the property of the cardholder and will at no time revert to the Settlement Fund, to Blackhawk, or to Angeion.

35.     Under the current distribution program approved by the Court, at the time of distribution, Settlement Class Members who have elected the digital payment card option will receive an email with additional information about their digital payment cards. That email can be customized consistent with any updated communications plan that counsel for the Parties and the Court may direct, including basic information about the use of their card, such as a reminder that balances on their card can be transferred as described above and that balances will be subject to inactivity fees if they do not use their card for more than a year.

36.     The timing and/or extent to which Settlement Class Members use their funds received on a prepaid card or by any other payment method has no impact on Angeion's revenue or the compensation from the Settlement Fund in this Settlement.

**D.     Angeion Disclosed All Charges to the Settlement Fund**

37.     Following competitive bidding from three prospective settlement administrators, the Parties jointly proposed Angeion as the Settlement Administrator. (ECF No. 1096 at 55; Settlement Agreement, ECF No. 1096-2, at ¶ 45).

38.     In the Motion for Preliminary Approval (ECF No. 1096), Class Counsel noted

DECLARATION
3:18-MD-02843-VC

1    Angeion's extensive data security measures to securely manage Settlement Class Members' data

2    and stated that the Parties would not have selected Angeion absent their comfort with its

3    procedures for securely managing Settlement Class Member data.

4        39.    As part of the bid process, Angeion agreed to significant pricing concessions,

5    including (a) waiver of my notice expert fees, including for in-person testimony (if requested) and

6    all travel expense reimbursement, (b) a fixed fee for online claims intake, (c) reduced distribution

7    rates, and (d) a discount of 15% for all Angeion staff billable rates. Angeion agreed to these

8    pricing concessions with the understanding that it could rely on its enterprise-wide agreements

9    with vendors to provide administration services for the Settlement.

10       40.    As part of the bid process, Angeion provided various Schedules of Fees and

11   Charges reflecting its estimates of the approximate cost to the Settlement Fund to provide notice

12   and administration services for the Settlement based on certain core assumptions.

13       41.    Angeion agreed to provide a "maximum" capped bid of the amounts to be charged

14   to the Settlement Fund once the administration protocol was finalized.

15       42.    In my Declaration of December 22, 2022, I addressed the anticipated charges to

16   the Settlement Fund for the cost of administration, stating: "Angeion estimates that the

17   approximate cost to provide notice and administration services (including escrow fees) to be

18   between $3,500,000 and $4,225,000. The pricing details underlying the administration estimates

19   are competitively sensitive. Upon request, Angeion will provide its itemized estimate to the Court

20   for in camera review." ECF No. 1096-2, at Ex. B ¶ 61.

21       43.    In the Motion for Preliminary Approval (ECF No. 1096), Class Counsel stated that

22   the anticipated charges to the settlement fund for issuing notice and administering the settlement

23   were "more than reasonable when compared to the value of the Settlement and in light of the size

24   of the Settlement Class," noting that the high end of costs would amount to only 0.58% of the

25   Settlement Fund.

26       44.    I have never understood Angeion to be subject to any legal obligation to provide

27   information about each of its revenue sources, business relationships, or profit margins, and

28   Angeion accurately described its charges to the Settlement Fund.

DECLARATION
3:18-MD-02843-VC

**E.**     **Angeion's Preexisting Contract with Blackhawk**

45.     Blackhawk is a California-based distributor of third-party branded payment cards, gift cards, and other payment solutions. Its website reports that Blackhawk processes annual transactions in excess of $28 billion.[8]

46.     Angeion has found Blackhawk to be a proven, established, and reliable vendor for large, complex class distributions. Using established companies with strong operational abilities like Blackhawk is important to maximize the privacy and financial information of Settlement Class Members and for the smooth distribution of settlement funds.

47.     Prior to Angeion's engagement as Settlement Administrator for this case, Angeion and Blackhawk negotiated an arm's length master service contract setting out the general terms for any future engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. Blackhawk and Angeion have since executed amendments to the master services agreement (the agreement, as amended, the "Statement of Work).

48.     Among other terms, the Statement of Work includes a representation by Blackhawk warranting that it is responsible for compliance with all applicable statutes, rules, laws, and regulations governing: (i) the assessment of fees associated with such pre-paid digital payment cards; and (ii) any unclaimed property laws applicable to balances remaining on such cards.

49.     Without Angeion's enterprise-level arrangements with Blackhawk and other vendors, Angeion would incur higher costs and enjoy less flexibility to offer competitive pricing for its services and tailored solutions meeting the unique needs of a given settlement (including this Settlement), to the detriment of settlement class members. Angeion would also not be able to negotiate for more pro-consumer pre-paid card features. These types of master service contracts are common in the industry.

50.     Angeion continuously surveys the market to identify alternative providers for its vendor needs, including digital payment cards. This includes assessment of potential vendors' reliability in, among other things, meeting settlement deadlines, making successful distributions

---

[8] https://blackhawknetwork.com/company

to class members, safeguarding class member data, and providing competitive pricing. Angeion has not identified any provider able to offer a similarly reliable and consumer-friendly product on terms that are as competitive as those offered by Blackhawk. For these reasons, we recommended and continue to recommend using Blackhawk in this Settlement.

51.     Because Angeion and Blackhawk deal with each other at arm's length, I have no personal knowledge of the details of Blackhawk's underlying business model. However, Angeion's ongoing business relationship with Blackhawk and the volume of repeat business between them has allowed Angeion to negotiate favorable terms to provide efficient and cost-effective distribution services. In particular, pursuant to its preexisting Statement of Work with Angeion, Blackhawk makes its sophisticated digital payment card option available to Settlement Class Members at no charge to the Settlement Fund, and without charging for certain other costs and services Blackhawk would potentially otherwise charge.

52.     Pursuant to the Statement of Work, Blackhawk has agreed to compensate Angeion in connection with each settlement for which Blackhawk acts as Angeion's subcontractor. That agreement thus would apply to the Settlement in this case. The compensation to Angeion does not result in any increased cost to the Settlement Fund and does not reduce the funds available to be distributed to the Settlement Class Members.

53.     The timing and/or extent to which Settlement Class Members who elect the digital payment card option actually use the funds on the card has no impact on Angeion's compensation from Blackhawk. In other words, Angeion's compensation is in no way dependent on Settlement Class Members using the digital payment cards they receive as part of the Settlement, and Angeion intends to work with the Parties to ensure that as many Settlement Class Members as possible who have already elected to receive digital payment cards use them.

54.     The settlement administration industry is very competitive, and the Statement of Work between Angeion and Blackhawk constitutes competitively sensitive business information, the public disclosure of which would harm Angeion's ability to compete in the marketplace. If the Court so directs, Angeion will share a copy of the Statement of Work with the Court for *in camera* review.

DECLARATION
3:18-MD-02843-VC

**F.      Current Status of the Distribution Plan and Proposed Plan Adjustments**

55.      Out of more than 19 million Settlement Class Members who have submitted claims to recover from the Settlement Fund, approximately 5.3 million Settlement Class Members reviewed their options and selected the pre-paid digital payment card as their preferred choice.

56.      The average cost per approved claim Angeion will charge to the Settlement Fund is expected to be less than $0.49 per claim. In other words, the expected cost per approved claim is less than the cost of a stamp.

57.      Based on Angeion's analysis of digital election data from other settlements, we project that if the Settlement were to be amended to exclude digital payment cards from the distribution options, that change would significantly increase the percentage of Settlement Class Members requesting a paper check. Disbursements using paper checks are among the least efficient and most costly methods of disbursing class settlement funds, and would drive up the administration costs to the Settlement Fund in both the initial distribution efforts and all post-issuance activity, including processing undelivered mail, reissuance activities and communications, and reconciliation activity. These paper-check-related costs would be borne by the Settlement Fund and thus diminish the amount of funds available to distribute to Settlement Class Members, in contrast to the fees associated with pre-paid digital payment cards, which in addition to being avoidable are assessed to particular cardholders (not the Settlement Fund) based on how they choose to use (or not use) their cards. In addition, as described above, eliminating payment cards from the settlement would deprive Settlement Class Members of their chosen payment option and would adversely affect unbanked and underbanked Settlement Class Members.

58.      Angeion believes that the features of the pre-paid digital payment cards described above are fully compliant with applicable laws and regulations and provide Settlement Class Members with a useful method by which they may choose to receive disbursements from the Settlement Fund. Notwithstanding Angeion's view (and the approximately 5.3 million Settlement Class Members who elected to receive disbursements from the Settlement Fund via pre-paid digital payment card), Angeion has undertaken in good faith to address certain issues raised by

DECLARATION
3:18-MD-02843-VC

1    Class Counsel surrounding the pre-paid digital payment cards.

2        59.    Over the past several months, Angeion has engaged in extensive dialogue with

3    Class Counsel and considered a variety of options to address operational and economic issues

4    they have raised regarding the use of pre-paid digital payment cards. One option we have

5    proposed to the Parties is a refinement to the pre-paid card program, in which an electronic

6    registration by the Settlement Class Member would be required prior to funding the digital

7    payment card. Only upon registration by the Settlement Class Member would funds be transferred

8    from the Settlement Fund to Blackhawk. Prior to registration and transfer, funds would remain in

9    the Settlement Fund and continue to accrue interest on behalf of the Settlement Class. While this

10   procedure adds operational and accounting efforts to the distribution process and requires

11   Settlement Class Members to take a further step before receiving funds, this registration

12   requirement would create a record that the Settlement Class Member has acknowledged receipt of

13   the pre-paid card in addition to the successful delivery of the payment notification email. Angeion

14   has agreed to incur the costs of implementing this refinement without additional charges to the

15   Settlement Fund.

16       60.    Angeion has also proposed to undertake an expanded communications campaign

17   to encourage Settlement Class Members to use the cards, reinforce for the Settlement Class

18   Members the beneficial features of the digital payment card option, promote engagement, and

19   generally remind Settlement Class Members of inactivity fee assessments. The proposed

20   campaign includes multi-stage, personalized reminder emails, optional social media targeting, and

21   a second-chance protocol for any failed distributions. Angeion has agreed to incur the costs of

22   expanded communications as the Parties may reasonably request without additional charges to the

23   Settlement Fund.

24       61.    Angeion has offered to complete administration through the first distribution at the

25   previously agreed "not to exceed" amount of $9.26 million, which includes postage and other

26   passthrough expenses, charged to the Settlement Fund, without any increase in costs charged to

27   the Settlement Fund for the proposed expanded communication campaign and adjustment to the

28   registration requirement described above, and without altering the substantive benefits available

DECLARATION
3:18-MD-02843-VC

to the class.

62.     This approach would ensure choice and continuity for Settlement Class Members, and avoid disruption and delay of the distribution process for Settlement Class members, which is just about to begin. Any modification of the distribution payment options would require reassessment of Angeion's fee.[9]

63.     Angeion remains committed to completing its task of administering the Settlement in cooperation with the Parties in a manner that appropriately balances the interests of the Settlement Class, mitigates potential risks, and ensures Settlement Class Members receive their payments efficiently, securely, and with robust support. Making any material change to the payment options available to Settlement Class Members might require additional notice, would jeopardize the upcoming distribution deadlines, and result in significant additional cost and expense for Angeion and the Settlement Class.

64.     Angeion has been preparing diligently for many months to execute on the existing distribution protocol approved by the Court. Angeion is presently prepared to move forward with that Court-approved distribution plan, including with the operational updates and enhanced communications plan described above.


I declare under penalty of perjury that the foregoing is true and correct.

Steven Weisbrot, Esq.

Dated:
 8/14/25

---

[9] As Angeion noted in the various Schedules of Fees and Charges it submitted during the bid process, its estimates of the approximate cost to the Settlement Fund to provide notice and administration services for the Settlement were contingent on proceeding with Angeion's recommended pay menu, which included the pre-paid digital payment card option.

DECLARATION
3:18-MD-02843-VC